## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY

Eastern District of Kentucky
FILED

OCT 2 6 2004

LESLIE G WHITMER
CLERK U S DISTRICT COURT

LAWRENCE W. BUNCH,
Individually and on Behalf of All
Others Similarly Situated, and on
Behalf of the W. R. Grace & Co.
Employee Savings and
Investment Plan and the Grace
Stock Fund,
22 Carriage Hill Drive
Erlanger, KY 41018

AND

JERRY L. HOWARD, SR.
Individually and on Behalf of All
Others Similarly Situated, and on
Behalf of the W. R. Grace & Co.
Employee Savings and
Investment Plan and the Grace
Stock Fund,
970 Shield Shinkle Road
Williamsburg, KY 41097

AND

DAVID MUELLER
Individually and on Behalf of All
Others Similarly Situated, and on
Behalf of the W. R. Grace & Co.
Employee Savings and
Investment Plan and the Grace
Stock Fund
55 Gorman Lane, Apt. C
Cincinnati, Ohio 45215

                    Plaintiffs,

        vs.

W. R. GRACE & CO.
7500 Grace Drive
Columbia, MD 21044

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No.

Judge

**CLASS ACTION COMPLAINT
FOR BREACH OF FIDUCIARY
DUTY AND JURY DEMAND**

Registered Agent:                )
Prentice-Hall Corporation      )
System, Inc.,                    )
84 State Street                  )
Boston, MA  02109          )
                                     )

**AND**                                )
                                     )

**W.R. GRACE INVESTMENT AND**  )
**BENEFITS COMMITTEE**      )
7500 Grace Drive               )
Columbia, MD  21044     )
                                     )

**AND**                                )
                                     )

**FRED E. FESTA**               )
7500 Grace Drive               )
Columbia, MD  21044     )
                                     )

**AND**                                )
                                     )

**PAUL J. NORRIS**              )
7500 Grace Drive               )
Columbia, MD  21044     )
                                     )

**AND**                                )
                                     )

**ROBERT M. TAROLA**        )
7500 Grace Drive               )
Columbia, MD  21044     )
                                     )

**AND**                                )
                                     )

**JOHN F. AKERS**              )
7500 Grace Drive               )
Columbia, MD  21044     )
                                     )

**AND**                                )
                                     )

**HENRY FURLONG BALDWIN**  )
7500 Grace Drive               )
Columbia, MD  21044     )
                                     )

**AND**                                )

**RONALD C. CAMBRE**                    )
7500 Grace Drive                        )
Columbia, MD  21044                     )
                                        )
**AND**                                 )
                                        )
**MARYE ANNE FOX**                      )
7500 Grace Drive                        )
Columbia, MD  21044                     )
                                        )
**AND**                                 )
                                        )
**JOHN J. MURPHY**                      )
7500 Grace Drive                        )
Columbia, MD  21044                     )
                                        )
**AND**                                 )
                                        )
**THOMAS A. VANDERSLICE**               )
7500 Grace Drive                        )
Columbia, MD  21044                     )
                                        )
**AND**                                 )
                                        )
**FIDELITY MANAGEMENT TRUST**           )
**COMPANY**                             )
82 Devonshire Street                    )
Mailzone: V5B                           )
Boston, MA  02109                       )
                                        )
Registered Agent:                       )
Custodian of Records                    )
Fidelity Investments                    )
82 Devonshire Street, V5B               )
Boston, MA  02109                       )
                                        )
**AND**                                 )
                                        )
**STATE STREET BANK AND**               )
**TRUST COMPANY**                       )
225 Franklin Street                     )
Boston, MA  02110                       )

Registered Agent:                            )
State Street Investigations                  )
225 Franklin Street                          )
Boston, MA  02110                            )
                                             )
**AND**                                      )
                                             )
**STATE STREET GLOBAL ADVISORS**  )
State Street Financial Center                )
One Lincoln Street                           )
Boston, MA  02111-2900                       )
                                             )
                         Defendants.         )

_____

## INTRODUCTION

This case is brought as a class action on behalf of approximately 10,000 present and former employees of W. R. Grace & Co. ("Grace" and/or "Company"), who made an investment with their own retirement savings in the stock of W. R. Grace and who, against their wishes, their decisions and their direct investment intent, were deprived of that ownership.  The Company, its directors and officers and its investment advisors and plan trustees all participated in the taking of the Class members' property and investment opportunities.  The Class members lost nearly $40 million of their money, as a result of (1) the deceptive inducements of the Company, and (2) the dereliction of the Company directors' duties and the outrageous self-interest and conflicts of the State Street Bank & Trust Company ("State Street").

The W. R. Grace & Co. Employees Savings and Investment Plan (the "Plan"), into which the Class members' money was deposited, had at all times a clear, explicit and written intent -- to provide the Grace employees an opportunity to invest in several investment opportunities, including in the Company's common shares.  Each of the W.

4

R. Grace employees in the Class, using his/her own money, consciously decided to make and retain that investment. It was his/her investment risk and his/her investment strategy that was used in making the decision. The Plan had no advisor with the authority to make any investment other than the Grace common stock.

Without any Class member being given any opportunity to object or opt out, all of the Grace common stock in the Plan was sold as a block for $3.50 per share by State Street or State Street Global Advisors ("State Street Global"). Astonishingly in the days following, the very same State Street or State Street Global that had said the investment was "imprudent" purchased the same or a similar block of Grace common stock within 30 days of the employees' forced liquidation. It is clear that the Company and State Street or State Street Global knew the Grace stock when purchasable as a block represented a tremendously attractive investment. After State Street or State Street Global or its affiliate bought the block, the value of the stock increased nearly 300% in less than 120 days. The divestment of the Class members' shares of Grace stock in the Plan thereby deprived the Class members of their rightfully deserved profit.

Plaintiffs, Lawrence W. Bunch, Jerry L. Howard, Sr., and David Mueller (collectively "Plaintiffs"), directly on behalf of themselves and other similarly situated shareholders of the Grace, bring this action against Grace, Grace's Executive Officers and Board of Directors, the Investment and Benefits Committee, Fidelity Management Trust Company ("Fidelity"), State Street, and State Street Global, and alleges as follows:

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this action pursuant to ERISA, 29 U.S.C. §1132(e)(1), which grants to United States District Courts jurisdiction over claims of this type.

2.     This Court has personal jurisdiction over Defendants because, as required by ERISA, 29 U.S.C. §1132(e)(2), one or more of the Defendants may be found in this District.   The Court also has personal jurisdiction over Defendants because the Company has offices in Wilder, Campbell County, Kentucky.  Defendants systematically and continuously do business in this state and the case arises out of Defendants' acts within this state.

3.     Venue is proper pursuant to ERISA, 29 U.S.C. §1132(e)(2), because Defendants administer the Plan in this District, some or all of the actionable conduct for which relief is sought occurred in this District and one or more of the Defendants may be found in this District.

## NATURE OF ACTION

4.     This is a federal class action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1132, brought on behalf of the W. R. Grace Savings & Investment Plan (the "Plan"), and the participants and beneficiaries of the Plan to remedy Defendants' breaches of fiduciary duty under ERISA.  The Plan is designated as a 401(k)-compliant retirement plan operated and established by the Company, certain Officers of the Company, the Company's Investment and Benefits Committee, the Plan's Trustee and the Company's Board of Directors (collectively, the

"Defendants"). This civil enforcement action seeks relief on behalf of the Plan and all participants and beneficiaries of the Plan.

5.     The Company describes itself as a leading global supplier of catalyst and silica products, specialty construction chemicals, building materials, and sealants and coatings.   The Company has more than 6,000 employees and annual sales of approximately $2 billion, and has operations in nearly 40 countries, including local facilities in Norwood, Ohio and Wilder, Kentucky.

6.     The Company provided its employees with the opportunity to participate in the Plan, which permitted employees a convenient way to save regularly by purchasing common stock of the Company and other investments. Participants were permitted to save from 2 to 16 percent of their pay through regular payroll deductions and could elect to invest in Company stock through the Grace Stock Fund or in a variety of mutual funds and similar accounts. As an additional incentive to participate in the Plan, matching Company contributions were deposited in the employee stock plan and invested primarily in Grace common stock. The Company originally matched 50 percent -- and later 100 percent -- of the employees' savings, up to and including the first 6 percent of their pay saved, with the Company's matching contributions initially being used to buy only more Grace common stock and vesting immediately.

7.     The Class members are those Company employees who were able to, and did elect to, invest their savings in Grace common stock.

8.     The Plan prospectus states that:

> the purpose of the Plan is to encourage eligible employees
> to obtain additional financial security, to supplement
> retirement income through savings on a regular, long-term
> basis and to share in the Company's performance through

*ownership of the Company's Common Stock. . .* (emphasis added)

9.    The Grace Stock Fund was created by the Investment and Benefits Committee of the Board of Directors of the Company.  The Investment and Benefits Committee of the Board was exclusively responsible for the management and operation of the employees' investments in the Plan, and had the full, exclusive and discretionary authority to determine eligibility for benefits and to interpret the terms of the Plan.

10.    On March 17, 2003, the Company announced to all Plan participants that effective April 21, 2003, they would not be permitted to make additional savings deposits into the Grace Stock Fund.  The participants were not able to block this change and were informed by the Company that this change was necessary and would limit the participants' exposure due to the approaching March 31, 2003, deadline for filing of claims in the bankruptcy court in the Company's pending Chapter 11 reorganization.

11.    On April 2, 2003, the Company announced that effective April 14, 2003, it would convert to "Real-Time Trading" of Company stock within the Savings and Investment Plan, with the cash reserves that existed in the Grace Stock Fund as of April 9, 2003 being credited to the fund's participants on a pro-rata basis into the Fixed Income Fund, one of the funds available in the Plan.

12.    On December 8, 2003, the Company announced that it had retained State Street Global as the new and exclusive investment manager for the Grace Stock Fund within the Grace Savings & Investment Plan, effective December 15, 2003.  The Company admitted that substantial conflicts had existed and continued to exist in the management of the savings Plan.  The Company also said the change was necessary to avoid even more conflicts that would arise as a result of the Chapter 11 bankruptcy.

The Company then delegated the duty to manage to State Street or State Street Global, which both the Company and State Street and State Street Global claimed was an independent third party.  Contrary to the clear language of the Plan and its previous representations to its employees, the Company allowed State Street or State Street Global to claim the authority, regardless of the Company's previous inducements and the choices made by the Plan participants, to suspend participant trading in Company stock.

13.    Despite the representations to its employees and the clear language of the Plan, on February 27, 2004, the Company stated that State Street or State Street Global was authorized to sell all or a portion of the participants' investment in the Grace Stock Fund, and that, based on the Company's authority given to State Street or State Street Global, State Street or State Street Global commenced a program to sell the Grace stock.  The Company further confirmed that the participants could not talk to or direct any inquiries to State Street or State Street Global, nor direct State Street, State Street Global or Fidelity to stop selling their investment in the Grace Stock Fund.  Again, the participants in the Plan were powerless to block the effect of the transfer of management even though all of the money belonged to the participants.

14.    On April 12, 2004, the Company announced that, under the selling program initiated by State Street or State Street Global, more than 7.9 million shares of Grace stock held in the Plan were sold.  This volume of sales of Grace stock resulted in the Plan ceasing to be subject to certain federal and state securities law protections for the purchase, sale or transfer of the stock.  As such, and in contravention of the clear language of the Plan, State Street or State Street Global then sold the remaining block

9

of Grace stock - approximately 7.2 million shares - in a private sale to D. E. Shaw, a New York-based investment and technology development firm, for $3.50 per share.

15.    The Company represented to its employees that Grace common stock was no longer a prudent investment, in order to justify its disgorgement of the Grace Stock Fund and eventual sale by State Street or State Street Global of the Grace common stock.

16.    A short time later, however, through a related party transaction, State Street or State Street Global or an affiliate became the owner of millions of shares of Grace stock. The Grace stock was trading on the open market at $2.96 when State Street purchased more than 7,900,000 shares.  Within 90 days after the sale of State Street or State Street Global of the shares of Grace stock held for the benefit of the Class members, the Grace stock was trading on the open market for nearly $9.00 a share.

17.    The Company disregarded its legal responsibility to follow the applicable rules and regulations that governs investment managers, and by electing State Street or State Street Global to take over as investment manager and fiduciary, failed to act solely in the best interests of all Plan participants collectively.

18.    Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves, a class of all persons similarly situated and on behalf of the Plan.  Defendants are entities and persons acting in a fiduciary capacity or who assumed a fiduciary role in relation to the Plan.

## THE PARTIES

19.    Plaintiff Lawrence W. Bunch is a resident of the Commonwealth of Kentucky.  Mr. Bunch is a current employee of W. R. Grace & Co. and is a participant in the Plan within the meaning of ERISA, 29 U.S.C. §1002(7) & (8).  Mr. Bunch suffered losses in his 401(k) account as a result of Defendants' breaches of fiduciary duty.

20.    Plaintiff Jerry L. Howard, Sr. is a resident of the Commonwealth of Kentucky.  Mr. Howard is a former employee of W. R. Grace & Co. and is a participant in the Plan within the meaning of ERISA, 29 U.S.C. §1002(7) & (8).  Mr. Howard suffered losses in his 401(k) account as a result of Defendants' breaches of fiduciary duty.

21.    Plaintiff David Mueller is a resident of the State of Ohio.  Mr. Mueller is a current employee of W. R. Grace & Co. and is a participant in the Plan within the meaning of ERISA, 29 U.S.C. §1002(7) & (8).  Mr. Mueller suffered losses in his 401(k) account as a result of Defendants' breaches of fiduciary duty.

22.    Defendant W. R. Grace & Co. is a Connecticut corporation, which operates a facility at 112 North Street, Wilder, Kentucky.  W. R. Grace describes itself as a leading global supplier of catalyst and silica products, specialty construction chemicals, building materials, sealants and coatings.  W. R. Grace's common stock is traded on the New York Stock Exchange under the symbol "GRA".  Until W. R. Grace abdicated this responsibility to State Street, W. R. Grace was the Plan's Sponsor and Administrator as defined by ERISA, and on information and belief, has at all times acted in regard to the Plan in a fiduciary capacity in exercising authority or control respecting with management or disposition of the Plan assets, in accordance with ERISA, 29

11

U.S.C. §1002(21), in its own name and acting through the Company's Employees' Benefit Committee. W. R. Grace is also a party in interest to the Plan within the meaning of ERISA, 29 U.S.C. §1002(14).

23.    W. R. Grace is the Plan's Sponsor and Administrator as defined by ERISA, and on information and belief, has at all times acted in regard to the Plan in a fiduciary capacity in exercising authority or control respecting the management or disposition of the Plan's assets in accordance with ERISA, 29 U.S.C. §1002(21), in its own name and acting through the Company's Employees' Benefit Committee. In particular but without limitation:

    (a)    W. R. Grace at all times exercised discretion as to whether to make matching employer contributions into the Plan, described below, in cash or in stock, and discretion as to whether to sell Grace common stock to the trustees for investment by the Plan;

    (b)    W. R. Grace, as the Plan's Sponsor, established the only investment available to the Plan's participants;

    (c)    W. R. Grace imposed restrictions on the Grace Stock Fund, depriving Plaintiffs and Class members of the opportunity to exercise control over their assets.

    (d)    On information and belief and in anticipation of further discovery, W. R. Grace deprived the Plan participants of their right and ability to exercise independent judgment as to the type of investment vehicle and amount of their contribution to the Grace Stock Fund by transferring all decisions to State Street.

24.    W. R. Grace was responsible for the appointment and ongoing monitoring and review of the performance of the trustee, Fidelity, and the Plan's fiduciaries, including State Street Bank and Trust Company and State Street Global Advisors.

25.    Defendant W. R. Grace Investment and Benefits Committee ("Committee") of W. R. Grace & Co. was the Plan Administrator and was a fiduciary with regard to the Plan. The Committee was responsible for the general administration and interpretation of the Plan and for carrying out the Plan's provisions including decisions as to the investment of Plan assets.

26.    Defendant Fred E. Festa served as President and Chief Operating Officer of the Company. On information and belief, in these capacities Festa has exercised discretionary authority or control with respect to the management of the Plan and authority or control respecting the disposition of its assets and is a fiduciary to the Plan under the terms of ERISA.

27.    Defendant Paul J. Norris served as Chairman and Chief Executive Officer of the Company. On information and belief, in these capacities Norris has exercised discretionary authority or control with respect to the management of the Plan and authority or control respecting the disposition of its assets and is a fiduciary to the Plan under the terms of ERISA.

28.    Defendant Robert M. Tarola served as Senior Vice President and Chief Financial Officer of the Company. On information and belief, in these capacities Tarola has exercised discretionary authority or control with respect to the management of the Plan and authority or control respecting the disposition of its assets and is a fiduciary to the Plan under the terms of ERISA.

29.    Defendant John F. Akers served as a Director of the Company.   On information and belief, in this capacity Aker has exercised discretionary authority or control with respect to the management of the Plan and authority or control respecting the disposition of its assets and is a fiduciary to the Plan under the terms of ERISA.

30.    Defendant Henry Furlong Baldwin served as a Director of the Company. On information and belief, in this capacity Baldwin has exercised discretionary authority or control with respect to the management of the Plan and authority or control respecting the disposition of its assets and is a fiduciary to the Plan under the terms of ERISA.

31.    Defendant Ronald C. Cambre served as a Director of the Company.   On information and belief, in this capacity Cambre has exercised discretionary authority or control with respect to the management of the Plan and authority or control respecting the disposition of its assets and is a fiduciary to the Plan under the terms of ERISA.

32.    Defendant Marye Anne Fox served as a Director of the Company.   On information and belief, in this capacity Fox has exercised discretionary authority or control with respect to the management of the Plan and authority or control respecting the disposition of its assets and is a fiduciary to the Plan under the terms of ERISA.

33.    Defendant John J. Murphy served as a Director of the Company.   On information and belief, in this capacity Murphy has exercised discretionary authority or control with respect to the management of the Plan and authority or control respecting the disposition of its assets and is a fiduciary to the Plan under the terms of ERISA.

34.    Defendant Thomas A. Vanderslice served as a Director of the Company. On information and belief, in this capacity, Vanderslice has exercised discretionary

authority or control with respect to the management of the Plan and authority or control respecting the disposition of its assets and is a fiduciary to the Plan under the terms of ERISA.

35.    Defendant Fidelity Management Trust Company ("Fidelity") is a Massachusetts corporation, operating its principal office at 82 Devonshire Street, Mailzone: V5B, Boston, Massachusetts 02109.    Fidelity provides global investment management services to corporate and public retirement funds and other institutional investors.  Fidelity was retained by the Committee and entered into a trust agreement with the Company specifying the Trustee's duties under the Plan.  As Trustee, Fidelity is a fiduciary with respect to the Plan.

36.    Defendant State Street Bank and Trust Company ("State Street") is a Massachusetts corporation and the principal subsidiary of State Street Boston Corporation, operating its principal office at 225 Franklin Street, Boston, Massachusetts 02110.  State Street describes itself as a $32 billion diversified financial services holding company, and combines information technology with corporate banking, trust, investment management and securities processing capabilities in support of both institutional and corporate clients worldwide.

37.    Defendant State Street Global Advisors ("State Street Global") is the investment management arm of State Street Corporation and, with more than $1.2 trillion in institutional assets under management, is the largest asset manager in the United States.

38.    The Defendants referenced above in Paragraphs 19-37 are referred to herein as the "Individual Defendants".

39.    On information and belief and in anticipation of further discovery, Defendants W. R. Grace, the W. R. Grace Investment and Benefits Committee, Fidelity, and the Individual Defendants exercised discretionary authority respecting the Plan's management and/or administration within the meaning of ERISA, 29 U.S.C. §1002(21)(A), particularly in light of the alleged status of the Plan under ERISA §404(c) and its regulations, and are or were during relevant times fiduciaries of the Plan based on actions alleged herein.  These actions included, but were not limited to, the issuance of communications directed to the Plan's participants concerning the revenue, earnings and financial condition of the Company which affected present or potential assets or investments of the Plan and decisions of the participants.

## W. R. GRACE SAVINGS AND INVESTMENT PLAN

40.    The W. R. Grace Savings and Investment Plan ("Plan") is a savings plan covering employees of the Company and its subsidiaries.

41.    At all times relevant, the Plan was and continued to be a "defined contribution plan" within the meaning of ERISA, 29 U.S.C. §1002(34), and an "eligible individual account plan" within the meaning of ERISA, 29 U.S.C. §1107(d)(3).  Further, the Plan was and continued to be a qualified cash or deferred arrangement within the meaning of the Internal Revenue Code §401(k), 29 U.S.C. §401(k).

42.    At all relevant times, W. R. Grace was the Plan's sponsor.

43.    At all relevant times, Defendants acted as fiduciaries of the Plan pursuant to ERISA, 29 U.S.C. §1102(21)(A).    Defendants, W. R. Grace, the W. R. Grace Investment and Benefits Committee, Fidelity, and the Individual Defendants exercised

discretionary authority or control over the management or administration of the Plan or control in the management or disposition of the Plan's assets.

44.     The Plan is administered, in part, by the W. R. Grace Investment and Benefit Committee ("Committee). The Committee has the responsibility for managing the W. R. Grace Stock Fund and for selecting the investment funds available for employee directed investments. Certain administrative and discretionary functions are also performed by the directors, officers or employees of the Company or its subsidiaries.

45.     The Trustee of the Plan, Fidelity, holds the investments of the Plan in trust on behalf of the participants and beneficiaries.

46.     Since September 1, 1976, employees were given the opportunity to participate in the Plan by electing to have their contributions invested in Grace Stock Fund, which consists of W. R. Grace common stock or a number of other mutual funds. Company matching contributions, however, were only invested in the Grace Stock Fund.

47.     Upon information and belief and in anticipation of further discovery, and at all times relevant, Defendants, W. R. Grace, the W. R. Grace Investment and Benefits Committee, Fidelity, and the Individual Defendants, conducted numerous Company meetings in which they encouraged participants to invest their monies in W. R. Grace common stock. As a result of these Defendants' failure to disclose financial information, the Defendants', W. R. Grace, the W. R. Grace Investment and Benefits Committee, Fidelity, and the Individual Defendants, statements about State Street's or State Street Global's alleged right to sell all of the Grace stock despite the election of the

participants, and the Defendants', W. R. Grace, the W. R. Grace Investment and Benefits Committee, Fidelity, and the Individual Defendants, statements about the risks associated with investing in Company stock at these meetings, Plaintiffs and Class members were deprived of the opportunity to make informed decisions with respect to the investment of their own money -- their own retirement savings.

48.    The wholesale sale of Company stock by State Street or State Street Global resulted in substantial retirement fund losses to Plaintiffs and Class members. Defendants' actions (or lack thereof) deprived Plaintiffs and Class members of the opportunity to exercise control over the Plan's assets because they did not have the opportunity to prevent the sale of their investments in the Grace stock, in direct contradiction to the stated goals and intent of the Plan and their personal investment choices.

49.    Plaintiffs and Class members were prohibited from exercising any independent control over the Company's unilateral decision to transfer all management to State Street or State Street Global and were further prohibited from exercising any independent control over State Street's or State Street Global's decision to sell off all of the participants' investments in the Grace Stock Fund.

50.    Accordingly, Defendants are not relieved of their fiduciary duties under ERISA, 29 U.S.C. §1104(c).

## DEFENDANTS' BREACHES OF FIDUCIARY DUTY

51.    ERISA is a comprehensive statute covering virtually all aspects of employee benefit plans, including retirement savings plans, such as the Plan and its predecessor plans:

> *It is hereby declared to be the policy of this Act to protect interstate commerce and the interest of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.*

ERISA §2(b), 29 U.S.C. §1001(b).

52.    Under ERISA, those responsible for plan management and oversight stand in a fiduciary relationship in relation to plan participants.  Pursuant to ERISA, a "fiduciary" is defined broadly to include all persons or entities that are able to exercise discretionary authority or control over the management of a plan or its assets.

53.    ERISA requires strict fidelity and loyalty in the execution of a plan's management pursuant to 29 U.S.C. §1102(21).  In addition, ERISA imposes on plan management a fiduciary duty of prudence, requiring those responsible for plan management to:

> *discharge his [or her] duties with respect to a plan solely in the interest of the participants and their beneficiaries . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.*

29 U.S.C. §1104(a)(1).    ERISA also imposes on those responsible for plan management a duty of loyalty, requiring the fiduciary to:

> *discharge his [or her] duties with respect to a plan solely in the interest of the participants and their beneficiaries and . . . for the exclusive purpose of . . . providing benefits to the participants and their beneficiaries.* Id.

54.    Defendants' fiduciary duties of loyalty, due care and prudence include a duty to disclose and inform participants of any material adverse information about the

Company. When a plan is composed of various investment funds, such as the W. R. Grace 401(k) Plan, this duty to inform and disclose also includes (a) the duty to impart to the plan's participants material information which the fiduciary knows or should know is sufficient to apprise the average plan participant of the risks associated with investing in any particular investment; and (b) a duty to convey complete and accurate information material to the circumstances of the plan participants and their beneficiaries. The disclosure duties and fiduciary duties imposed on plan management by ERISA were designed to reduce the disparity in access to company information that exists between the fiduciaries and the participants and their beneficiaries.

55.    ERISA imposes on plan fiduciaries the duty, *inter alia*, to adhere to the terms of the plan, including those purposes established in the plan document as, in this instance:

> *to encourage eligible employees to obtain additional financial security, to supplement retirement income through savings on a regular long-term basis and to share in the company's performance through ownership of the company's common stock.*

56.    Other duties imposed upon those who are fiduciaries under ERISA by virtue of their exercise of authority or control respecting the management or disposition of plan assets include, but are not limited to:

(a)    The duty to investigate and evaluate the merits of decisions affecting the use and disposition of plan assets;

(b)    The duty to evaluate all investment decisions with "an eye single" to the interests of plan participants and beneficiaries;

(c)    The duty to avoid placing themselves in a position where their acts as officers, directors or employees of the corporation will prevent their functioning with

the complete loyalty to participants demanded of them as trustees of a pension plan, and, if they find themselves in such a position, to seek independent, unconflicted advance;

(d)    To the extent that a party is responsible for appointing and removing named fiduciaries, the duty to monitor those persons who have been named; and

(e)    The duty, if a directed trustee, to act only upon those directions which are consistent with the terms of the plan and with ERISA.

57.    Defendants breached their fiduciary duties of loyalty, due care, and prudence with respect to the Plan's use of Company stock as a plan investment because, among other reasons, the Plan's investment in Company common stock was a primary investment vehicle for the participants and represented the participants' own monies derived from their employment with the Company.

58.    Defendants breached their duties of loyalty, due care, and prudence, which required Defendants to avoid conflicts of interest and to resolve them promptly should they occur.  Under ERISA, a fiduciary must always act for the sole benefit of the participants and their beneficiaries.  Defendants breached their duty of loyalty by failing to avoid conflicts of interest and to resolve such conflicts promptly when they did occur. Defendants transferred all management of the Grace Stock Fund to State Street, whereafter upon information and belief, the stock was sold not to a disinterested third party, but rather to State Street or to an affiliate.

59.    Defendants breached their duties of loyalty, due care, and prudence, wherein Defendants deprived all participants of the opportunity to exercise control over

their own investments in the Grace Stock Fund because the Company improperly delegated apparent duties to State Street or State Street Global for exceeding the terms of the Plan and the participants' stated and implied investment instructions.

60.    As a result of Defendants' breach of their fiduciary duties owed to Plaintiffs and Class members as set forth herein, the Plan suffered substantial losses and Plaintiffs and Class members were thereby harmed.

## CLASS ACTION ALLEGATIONS

61.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all W. R. Grace Stock Plan participants and entities who owned shares of W. R. Grace's publicly traded common stock through the Grace Stock Plan during the period from September 1, 1976 to September 15, 2004 ("Class Period"). Excluded from the Class are those individuals identified as Defendants and members of their immediate families, their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest during the Class Period.

62.    The Class consists of thousands of persons located throughout the United States. Class members are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. The exact number and identity of Class members can be determined through discovery. Based upon public information, there were in excess of 10,000 participants in the Grace Stock Fund.

22

63.    There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to Class members which predominate over questions which may affect individual Class members include:

(a)    Whether ERISA applies to the claims at issue here;

(b)    Whether Defendants owe and owed fiduciary duties to Class members;

(c)    The nature of the fiduciary duties Defendants owe or owed to Class members;

(d)    Whether Defendants breached their fiduciary duties under ERISA; and

(e)    The extent of harm sustained by Class members and the appropriate measure of relief.

64.    Plaintiffs' claims are typical of those of the Class because Plaintiffs and Class members suffered similar harm as a result of Defendants' unlawful and wrongful conduct.  Absent a class action, Class members may not receive restitution or other appropriate relief and will continue to suffer losses, and these violations of law will proceed without remedy.

65.    Plaintiffs are committed to pursuing this action and have retained counsel experienced in class action litigation of this nature.  Plaintiffs will fairly and adequately represent the interests of the Class and Plaintiffs have no interests which conflict with those of the Class.

66.    The prosecution of separate actions by Class members would create a risk of establishing incompatible standards of conduct for Defendants.    Individual actions may, as a practical matter, be dispositive of the interests of the Class.

67.    A class action is the superior method for fair and efficient adjudication of this controversy.  The likelihood that individual Class members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Plaintiffs' counsel, highly experienced in class actions, sees no difficulty in the management of this case as a class action.

68.    Plaintiffs will fairly and adequately protect and represent the interests of all Class members.  Plaintiffs have retained Stanley M. Chesley, Esq. and James R. Cummins, Esq., and the firm of Waite, Schneider, Bayless & Chesley Co., L.P.A., as legal counsel.  Counsel for Plaintiffs are competent and experienced in class action litigation, complex business litigation, and securities litigation.  Counsel for Plaintiffs are likewise competent to seek to recover damages from Defendants as a result of Defendants' misconduct, including damages for breached of fiduciary duties, fraud, negligence, and punitive damages.

69.    A class pursuant to Rule 23(B)(1)(a) is appropriate because the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct.  Plaintiffs' claims involve similar issues of fact and law; the impact and effect of Defendants' actions, misstatements, misrepresentations, and omissions regarding W. R. Grace's investments; the duties

owed by Defendants to Plaintiffs and other Class members; and damages suffered by Plaintiffs and other Class members as a result of Defendants' actions and omissions.

70.    A class pursuant to Rule 23(B)(1)(b) is appropriate to avoid adjudications with respect to individual Class members which would, as a practical matter, substantially impair or impede the ability of other members not party to the individual adjudications to protect their interests.  Further, such a class is appropriate because the class members are so numerous and because the costs to litigate each claim individually would be so great that Class members would effectively be denied an opportunity to pursue their rights against Defendants.

71.    A class pursuant to Rule 23(B)(2) is appropriate because the Defendants have acted or failed and refused to act on grounds generally applicable to the entire class, thereby making appropriate the award of damages with respect to the class as a whole.  Defendants' actions, misstatements, misrepresentations and omissions equally affected the individual members of the class, and apply to all members of the class.

72.    A class pursuant to Rule 23(B)(3) is appropriate because the questions of law or fact common to members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.    Defendants' actions, misstatements, misrepresentations and omissions applied to and impacted equally the individual members of the class.  Further, Plaintiffs and other Class members were similarly damaged by the Defendants' actions, misstatements, misrepresentations, and omissions.

73.    As a result of Defendants' failure to disclose and inform, Plaintiffs and Class members suffered losses, the exact amount of which will be determined at trial. Defendants are personally liable to Plaintiffs and Class members for these losses.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

A.    Determining that this is a proper class action to be certified under Rule 23 of the Federal Rules of Civil Procedure;

B.    Declaring that Defendants have violated the duties, responsibilities and obligations imposed upon them as fiduciaries and co-fiduciaries and that they violated the ERISA disclosure requirements as described above;

C.    Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure;

D.    Awarding Plaintiffs, Class members and the Plan restitution and/or remedial relief;

E.    Awarding Plaintiffs, Class members and the Plan pre-judgment and post-judgment interest, as well as their reasonable attorneys' fees, expert witness fees and other costs; and

F.    Awarding such other relief as this Court may deem just and proper.

### JURY DEMAND

With the filing of this Complaint, Plaintiffs demand a trial by jury.

Respectfully Submitted,

WAITE, SCHNEIDER, BAYLESS
  & CHESLEY CO., LPA


Stanley M. Chesley (#11810)
1513 Fourth & Vine Tower
1 West Fourth Street
Cincinnati, Ohio 45202
Telephone:  (513) 621-0267
Facsimile:  (513) 621-0262/381-2375
E-mail address:  stanchesley@wsbclaw.com
Attorney for Plaintiffs


AND


James R. Cummins (#87599)
1513 Fourth & Vine Tower
1 West Fourth Street
Cincinnati, Ohio 45202
Telephone:  (513) 621-0267
Facsimile:  (513) 621-0262/381-2375
E-mail address:  jcummins@wsbclaw.com
Attorney for Plaintiffs