- 56 -

For purposes of this Section 4.09 and Section 4.10, if an Eligible Employee who is classified as a highly compensated employee participates in more than one plan providing matching contributions or after tax contributions maintained by the Company or an entity under common control with the Company (under section 414(b) or (c) of the Code), the contributions made under all such plans shall be aggregated; provided, however, that in no event shall Company contributions made to the ESOP portion of the Trust Fund after June 30, 1989 with respect to any such highly compensated employee be aggregated with any other matching contributions or after-tax contributions made to such other plan unless such other plan is an employee stock ownership plan (as defined in section 4975(e)(7) of the Code).

With respect to Plan Years commencing after December 31, 1986 and ending prior to January 1, 1989, the requirements of section 401(m) of the Code only applied to the Savings Plan.  The contribution percentage of each Eligible Employee during such period was equal to his After Tax Contributions and Company contributions under Section 4.01 made with respect to him (zero in the case of an Eligible Employee for whom no such contributions were being made) divided by his Compensation for the Plan Year.

In the event this Plan is aggregated with another plan or plans for purposes of Sections 401(a)(4) and 410(b) of the Code (other than the Average Benefits Test of Section 410(b)(2)(A)(ii) of the Code), all Before Tax Contributions made under such plans shall be treated as

GR 001717

- 57 -

made under a single plan for purposes of the actual deferral percentage test of Section 401(k)(3) of the Code and all After Tax Contributions and Company contributions (as set forth in Section 4.01) made under such plans shall be treated as made under a single plan for purposes of the actual contribution percentage test of Section 401(m)(2) of the Code.  In the event this Plan is permissively aggregated with another plan or plans for purposes of Section 401(k) or 401(m) of the Code, such aggregated plans must also satisfy Sections 401(a)(4) and 410(b) of the Code as if such aggregated plans were a single plan. Notwithstanding the foregoing, the ESOP and Non-ESOP portions of the Plan may not be aggregated.

Notwithstanding the foregoing, effective for Plan Years beginning on or after January 1, 2001, for purposes of this Section 4.09, the contribution percentage for Eligible Employees who are classified as other employees shall be the Plan Year of reference.

4.10    For each Plan Year, the contribution percentage of the Eligible Employees who are classified as highly compensated employees (determined under Section 4.09(c), which considers contributions and Compensation for the Plan Year of reference) shall not exceed the greater of (A) or (B) below (and any necessary adjustments shall be made as set forth in Section 4.11):

(A)    The contribution percentage for the prior Plan Year of the Eligible Employees who are classified as

- 58 -

other employees (determined under Section 4.09(d)),
multiplied by 1.25, or

(B)     The lesser of:

( i) the contribution percentage for the prior Plan
Year of the Eligible Employees who are
classified as other employees (determined
under Section 4.09(d)), multiplied by 2, or

(ii) the contribution percentage for the prior Plan
Year of the Eligible Employees who are
classified as other employees (determined
under Section 4.09(d)), plus 2%.

Notwithstanding the foregoing, effective for Plan Years
beginning on or after January 1, 2001, for purposes of
this Section 4.10, the contribution percentage for
Eligible Employees who are classified as other employees
shall be the Plan Year of reference.


4.11    In the event that the contribution percentage under the
Savings Plan of the Eligible Employees who are classified
as highly compensated employees for the  Plan Year exceeds
the maximum percentage permitted under Section 4.10 (less
such additional percentage as may be determined by the
Administrative Committee) based on estimated or exact
calculations, a leveling method shall be applied under
which the requested or actual 401(m) contributions for the
Plan Year of the Eligible Employee(s) who are classified

- 59 -

as highly compensated employees and who have the greatest
dollar amount of 401(m) contributions for the Plan Year
shall be reduced, in total, by the amount of the Excess
401(m) Contributions.  For purposes of this Section 4.11,
"Excess 401(m) Contributions" shall mean, with respect to
any Plan Year, the excess of (a) the aggregate amount of
401(m) contributions actually taken into account in
computing the numerator of the contribution percentage of
highly compensated employees for the Savings Plan for such
year, over (b) the maximum amount of such contributions
permitted by the contribution percentage test of Section
4.10 for the Savings Plan (determined by hypothetically
reducing 401(m) contributions made on behalf of highly
compensated employees in order of their contribution
percentages, beginning with the highest of such
percentages, and continuing this process until the
contribution percentage test is satisfied).  For purposes
of reducing the 401(m) contributions of any highly
compensated employee, the amount of Excess 401(m)
Contributions will be allocated first to the 401(m)
contributions of the highly compensated employee with the
highest actual dollar amount of 401(m) contributions, to
equal the dollar amount of the 401(m) contributions of the
highly compensated employee with the next highest dollar
amount; however, a lesser reduction will be applied if
such lesser reduction results in an allocation of the
total Excess 401(m) Contributions.  This process will
continue in descending order until all the Excess 401(m)
Contributions with respect to the Savings Plan have been
allocated.

- 60 -

In the event that the contribution percentage under the
ESOP of the Eligible Employees who are classified as
highly compensated employees for the Plan Year exceeds the
maximum percentage permitted under Section 4.10 (less such
additional percentage as may be determined by the
Administrative Committee) based on estimated or exact
calculations, a leveling method will be applied under
which the requested or actual 401(m) contributions for the
Plan Year of the Eligible Employee(s) who are classified
as highly compensated employees and who have the greatest
dollar amount of 401(m) contributions for the Plan Year
shall be reduced by the amount of the Excess ESOP 401(m)
Contributions.  For purposes of this Section 4.11, "Excess
ESOP 401(m) Contributions" shall mean, with respect to any
Plan Year, the excess of (a) the aggregate amount of
401(m) contributions actually taken into account in
computing the numerator of the contribution percentage of
highly compensated employees for the ESOP for such Plan
Year, over (b) the maximum amount of such contributions
permitted by the contribution percentage test of Section
4.10 for the ESOP (determined by hypothetically reducing
401(m) contributions made on behalf of highly compensated
employees in order of their contribution percentages,
beginning with the highest of such percentages, and
continuing this process until the contribution percentage
test is satisfied).  For purposes of reducing the 401(m)
contributions of any highly compensated employee, the
amount of Excess ESOP 401(m) Contributions will be
allocated first to the 401(m) contributions of the highly
compensated employee with the highest actual dollar amount
of 401(m) contributions, to equal the dollar amount of the

- 61 -

401(m) contributions of the highly compensated employee with the next highest dollar amount; however, a lesser reduction will be applied if such lesser reduction results in an allocation of the total Excess ESOP 401(m) Contributions.  This process will continue in descending order until all the Excess ESOP 401(m) Contributions with respect to the ESOP have been allocated.

The provisions of this Section 4.11 shall be applied in such a manner as to require a reduction of unmatched After Tax Contributions prior to a reduction of matched After Tax Contributions and Company contributions. Additionally, Company contributions shall be reduced or distributed prior to After Tax Contributions which are eligible for matching under Section 4.01.

Notwithstanding the foregoing, in no event shall the Company fail to make any matching contribution to the Plan required under Section 4.01.

4.12    Any amount by which a Participant's requested or actual After Tax Contribution or projected or actual Company contribution is reduced for a Plan Year shall not be contributed to the Plan, or if contributed, shall be refunded to him as an Excess Aggregate Contribution with any earnings allocable thereto no later than the end of the Plan Year after the Plan Year in which such amount was contributed to the Plan (and if possible, no later than March 15 of the Plan Year after the Plan Year in which such amount was contributed.  Amounts required to be refunded under this Section 4.12 shall be refunded in

GR  001722

- 62 -

accordance with the provisions of section 401(m)(6) of the
Code and Treasury Regulations promulgated thereunder.

Notwithstanding anything herein to the contrary, effective
July 1, 1989 and for Plan Years beginning prior to January
1, 2001, projected Company contributions which would
otherwise be made to the ESOP portion of the Trust Fund
but which are required to be reduced in accordance with
Section 4.11 shall, to the extent possible, be contributed
to the Savings Plan portion of the Trust Fund.  In such
event, the calculation of the Savings Plan contribution
percentage of each Eligible Employee who is classified as
a highly compensated employee under Section 4.10(c) and
who is affected by such reduction shall be modified so as
to equal the sum of his After Tax Contributions and that
portion of Company contributions under Section 4.01 made
with respect to him which cannot be contributed to the
ESOP as a result of the limitations imposed under Section
4.10 (zero in the case of an Eligible Employee for whom no
such contributions are being made) divided by his
Compensation for the Plan Year.  In addition, the
provisions of Section 4.11 shall be applied to such
modified Savings Plan contribution percentage in such a
manner as to require a reduction of unmatched After Tax
Contributions prior to a reduction of matched After Tax
Contributions and Company contributions.

Amounts refunded as Excess Aggregate Contributions
pursuant to this Section 4.12 shall be adjusted for income
or loss.  Subject to Sections 4.09(c) and (d) of the Plan,
the income or loss allocable to Excess Aggregate

- 63 -

Contributions is equal to the sum of the following:  (i)
the income or loss allocable to 401(m) contributions under
the Savings Plan and 401(m) contributions under the ESOP,
as applicable, for the Plan Year multiplied by a fraction,
the numerator of which is such Participant's Excess
Aggregate Contributions for the Plan Year, and the
denominator is equal to the sum of the Participant's
account balance attributable to 401(m) contributions under
the Savings Plan and 401(m) contributions under the ESOP,
as applicable, as of the beginning of the Plan Year plus
the Participant's After Tax Contributions under the
Savings Plan and 401(m) contributions under the ESOP, as
applicable, for the Plan Year, and (ii) 10% of the amount
determined under (i) above multiplied by the number of
whole calendar months between the end of the Plan Year and
the date of distribution, counting the month of
distribution if distribution occurs after the 15th of such
month.

4.13   The following provisions of the Plan shall be applied in
the following order:

    (i)   Section 3.02,3.03 and 4.01 of the Plan;

    (ii)   Sections 4.06, 4.07 and 4.08 of the Plan;

   (iii)   Sections 3.10 and 3.11 of the Plan;

    (iv)   Sections 4.11 and 4.12 of the Plan.

4.14   For each Plan Year commencing after December 31, 1988 and
prior to January 1, 2002, and subject to the sunset
provisions of Section 901(a) of the Economic Growth and
Tax Relief Reconciliation Act of 2001, except as the

GR 001724

- 64 -

effect of such sunset provisions may be modified by subsequent law, during which (i) the actual deferral percentage of the Eligible Employees who are classified as highly compensated employees (determined under Section 3.08(c)) exceeds 1.25 multiplied by the actual deferral percentage of the Eligible Employees who are classified as other employees (determined under Section 3.08(d)), and (ii) the contribution percentage of the Eligible Employees who are classified as highly compensated employees (determined under Section 4.09(c)) exceeds 1.25 multiplied by the contribution percentage of the Eligible Employees who are classified as other employees (determined under Section 4.09(d)), the sum of the actual deferral percentage and the contribution percentage of the Eligible Employees who are classified as highly compensated employees (determined under Section 3.08(c) and Section 4.09(c), respectively) shall not exceed the sum of (A) and (B) below (after any necessary adjustments have been made as set forth in Sections 3.10 and 3.11 and Sections 4.11 and 4.12, respectively):

(A)    1.25, multiplied by the greater of:

        (i) the actual deferral percentage of the Eligible Employees who are classified as other employees (determined under Section 3.08(d)), or

        (ii) the contribution percentage of the Eligible Employees who are classified as other

- 65 -

employees (determined under Section 4.09(d)), plus

(B)     The lesser of:

(i) 2%, plus the lesser of (a) the actual deferral percentage of the Eligible Employees who are classified as other employees (determined under Section 3.08(d)), or (b) the contribution percentage of the Eligible Employees who are classified as other employees (determined under Section 4.09(d)), or

(ii) 2, multiplied by the lesser of (a) the actual deferral percentage of the Eligible Employees who are classified as other employees (determined under Section 3.08(d)) or (b) the contribution percentage of the Eligible Employees who are classified as other employees (determined under Section 4.09(d)).

The provisions of this Section 4.14 shall be applied separately to (i) the sum of the actual deferral percentage under the Savings Plan and the contribution percentage under the ESOP of the Eligible Employees who are classified as highly compensated employees and (ii) the sum of the actual deferral percentage and the contribution percentage under the Savings Plan of such highly compensated employees.

GR 001726

- 66 -

4.15   In the event that the sum of the actual deferral
        percentage under the Savings Plan and the contribution
        percentage under the ESOP of the Eligible Employees who
        are classified as highly compensated employees for any
        Plan Year commencing after December 31, 1988 exceeds the
        maximum aggregate percentage permitted under Section 4.14,
        based on estimated or exact calculations, then the
        following provisions of the Plan will be applied in the
        following order to the extent necessary to satisfy the
        requirements of that section:

                (i) Sections 3.10 and 3.11;
                (ii) Sections 4.11 and 4.12.

        In the event that the sum of the actual deferral
        percentage and the contribution percentage under the
        Savings Plan of the Eligible Employees who are classified
        as highly compensated employees for any Plan Year
        commencing after December 31, 1988 exceeds the maximum
        aggregate percentage permitted under Section 4.14 based on
        estimated or exact calculations, then the following
        provisions of the Plan will be applied in the following
        order to the extent necessary to satisfy the requirements
        of that section:

                (i)   Sections 4.11 and 4.12, as they relate to
                      After-Tax Contributions;
                (ii)  Sections 3.10 and 3.11 (except to the extent
                      that Before Tax Contributions are considered
                      as an After Tax Contribution under Section
                      3.11 and are thus included in (i) above;

GR 001727

- 67 -

    (iii)  Sections 4.11 and 4.12, as they relate to
           Company contributions.

GR 001728

- 68 -

## Section 5

Investment Provisions

5.01    The Trustee has established the following Investment Funds
        for investment of contributions under the Savings Plan, in
        accordance with the directions of the Investment
        Committee:

        Fixed Income Fund, which is invested in fixed income
        securities or obligations, interest bearing bank accounts,
        or in guaranteed income funds established or maintained by
        insurance companies.

        Fidelity Blue Chip Growth Fund, which is a mutual fund
        managed by Fidelity Management & Research Company
        ("FMRC").

        Grace Common Stock Fund, which is invested only in Grace
        Stock or, pending investment in such stock, in investments
        of a short-term nature, subject to Section 5.11.

        Fidelity Balanced Fund, which is a mutual fund managed by
        FMRC;

        Fidelity Growth and Income Portfolio, which is a mutual
        fund managed by FMRC;

        Fidelity Contrafund, which is a mutual fund managed by
        FMRC;

- 69 -

Fidelity OTC Portfolio, which is a mutual fund managed by
FMRC;

Fidelity Investment Grade Bond Fund which is a mutual fund
managed by FMRC;

Fidelity US Bond Index Fund which is a mutual fund managed
by FMRC;

PIMCO Total Return Fund, which is a mutual fund managed by
Pacific Investment Management Company;

INVESCO Equity Income Fund, which is a mutual fund managed
by INVESCO Funds Group, Inc.;

Spartan US Equity Index Fund which is a mutual fund
managed by FMRC;

Franklin Small Cap Growth Fund-A, which is a mutual fund
managed by Franklin Advisors, Inc.;

JP Morgan Institutional US Small Company Fund, which is a
mutual fund managed by JP Morgan;

American Century International Growth Fund, which is a
mutual fund managed by American Century Investment
Management, Inc.;

Spartan International Index Fund which is a mutual fund
managed by FMRC;

- 70 -

Templeton Foreign Fund A, which is a mutual fund managed
by Templeton Global Advisors Limited;

Fidelity Freedom Income Fund which is a mutual fund
managed by FMRC;

Fidelity Freedom 2000 Fund which is a mutual fund managed
by FMRC;

Fidelity Freedom 2010 Fund which is a mutual fund managed
by FMRC;

Fidelity Freedom 2020 Fund which is a mutual fund managed
by FMRC;

Fidelity Freedom 2030 Fund which is a mutual fund managed
by FMRC;

Fidelity Low-Priced Stock Fund which is a mutual fund
managed by FMRC;

Spartan Extended Market Index Fund which is a mutual fund
managed by FMRC;

Spartan Total Market Index Fund which is a mutual fund
managed by FMRC;

Fidelity Diversified International Fund which is a mutual
fund managed by FMRC;

GR  001731

- 71 -

Fidelity Europe Fund which is a mutual fund managed by
FMRC;

Fidelity Equity-Income Fund which is a mutual fund managed
by FMRC.

Any other Investment Fund properly authorized for
investment of contributions under the Saving Plan.

Effective July 1, 1989, Grace New York has established the
ESOP for the investment of (i) Company contributions made
to the Plan after June 30, 1989 and before January 1,
2001, (ii) the portion of each Participant's and Inactive
Participant's Savings Plan Account attributable to Company
contributions that is invested in the Former Fund C on
June 30, 1989 and transferred as of July 1, 1989 to the
ESOP portion of the Trust Fund, and (iii) the portion of
each Participant's and Inactive Participant's Savings Plan
Account attributable to Supplemental Contributions,
Before-Tax Contributions, After-Tax Contributions and
Rollover Contributions that was invested in the Former
Fund C on December 31, 1988 and any subsequent dates that
may from time to time be designated by the Investment
Committee and transferred to the ESOP portion of the Trust
Fund.  The Trustee shall invest the assets of the ESOP
portion of the Trust Fund primarily in of Grace Stock.
The Trustee may also invest the assets of the ESOP portion
of the Trust Fund in such other investments as the
Investment Committee deems appropriate or desirable or
such assets may be held temporarily in cash.  The
Investment Committee may direct the Trustee to invest and

GR 001732

- 72 -

hold up to 100% of the assets of the ESOP portion of the Trust Fund in Grace Stock.

5.02   After the Conversion Period, Before Tax Contributions, After Tax Contributions and Rollover Contributions shall each be invested in multiples of 5% in the Investment Funds and, in the case of Rollover Contributions only, in the ESOP portion of the Trust Fund, pursuant to the election of the Participant.  Such election shall continue until changed by the Participant.  Effective January 1, 2001, Company contributions shall be invested in multiples of 5% in the Investment Funds pursuant to the election of the Participant, which election shall continue until changed by the Participant.

5.03   After the Conversion Period, a Participant may change any election pursuant to Section 5.02 on any Business Day to another election permitted under Section 5.02 effective on the Business Day on which the Participant notifies the Recordkeeper of such change by telephonic instruction, if such notice is received by the Recordkeeper before the latest time of day agreed to by Grace and the Recordkeeper for same day processing; otherwise, such change will be effective on the immediately succeeding Business Day.

5.04   After the Conversion Period, a Participant, Inactive Participant, or a former Participant who has incurred a Termination of Service may, on any Business Day, elect to transfer all or a portion (in multiples of 5%, or in whole dollar amounts) of the existing balance of his Account in an Investment Fund among any of the other Investment Funds

GR  001733

- 73 -

attributable to the following categories of contributions
separately: (i) Before Tax Contributions, (ii) After Tax
Contributions, (iii) Supplemental Contributions, (iv)
Rollover Contributions, and effective January 1, 2001,
Company contributions.  Such transfer shall occur on the
Business Day on which the Participant, Inactive
Participant, or former Participant notifies the
Recordkeeper of such transfer election by telephonic
instruction, if such notice is received by the
Recordkeeper before the latest time of day agreed to by
Grace and the Recordkeeper for same day processing;
otherwise, such change will be effective on the
immediately succeeding Business Day.

5.05    Cash dividends and the cash proceeds of any other
distributions received on Grace Stock held in the Grace
Common Stock Fund within the Savings Plan shall be
invested in Grace Stock.  For periods after June 30, 1989,
cash dividends paid on Grace Stock that is credited to
Participant and Inactive Participant ESOP Accounts shall
be applied by the Trustee towards the purchase of
additional shares of Grace Stock or held in cash reserves,
unless the Board of Directors shall direct that such
dividends be paid to Participants and Inactive
Participants (i) by the Company or (ii) by the Plan within
90 days after the end of the Plan Year in which the
dividends are received on Grace Stock held within the ESOP
portion of the Trust Fund.

5.06    Except to the extent that the provisions of Section
12.04(b) are applicable to a tender offer, each

- 74 -

Participant and Inactive Participant may direct the
Trustee as to the manner in which Grace Stock credited to
his Account is to be voted.  Before each annual or special
meeting of its shareholders, Grace shall furnish to each
Participant and Inactive Participant who has a balance in
the Grace Common Stock Fund and/or, for periods after
June 30, 1989, an ESOP Account notice of the date and
purpose of such meeting, such notice to be given at the
time and in substantially the manner such notice is given
to Grace shareholders generally.  Grace shall request from
each such Participant and Inactive Participant
instructions as to the voting at that meeting of the Grace
Stock credited to the Participant's or Inactive
Participant's Account, which instructions shall be totaled
by or on behalf of Grace and forwarded to the Trustee.  If
the Participant or Inactive Participant furnishes such
instructions within the time specified in the notice, the
Trustee shall vote such Grace Stock in accordance with the
Participant's or Inactive Participant's instructions.  All
Grace Stock credited to Participant and Inactive
Participant Accounts as to which the Trustee does not
receive instructions as specified above shall be voted by
the Trustee in the manner, and in the proportion, as it
votes Grace Stock as to which it has received instructions
from Participants and Inactive Participants, as specified
above.  A Participant or Inactive Participant shall be
deemed to have given instructions for purposes of this
Section 5.06 if such Participant or Inactive Participant
signs, but does not otherwise mark, a form of proxy,
provided that the form of proxy specifies the manner in

- 75 -

which the Grace Stock covered by a signed but unmarked
form of proxy shall be voted.

5.07  With respect to periods prior to October 1, 2000 (see
Section 5.11 below), after the Conversion Period, a
Participant or Inactive Participant who has attained age 50,
may, one time during each Plan Year, elect to transfer to
one or more of the Investment Funds within the Savings Plan
all or a portion (in multiples of 5% or in whole dollar
amounts) of his Account balance invested in the ESOP and
Grace Common Stock Fund which is attributable to Company
contributions pursuant to Section 4.01.  Any such transfer
will occur on the Business Day on which the Participant
notifies the Recordkeeper of such transfer election by
telephonic instruction, if such notice is received by the
Recordkeeper before the latest time of day agreed to by
Grace and the Recordkeeper for same day processing;
otherwise, such change will be effective on the immediately
succeeding Business Day.  The foregoing provisions of this
Section 5.07 shall also apply to a former Participant who
has incurred a Termination of Service, regardless of
attained age, except that any such former Participant may
make investment transfer elections on any Business Day
without regard to the once per year limitation set forth
above.

5.08  Effective as of July 1, 1993 (i.e., the commencement of
the Conversion Period), the Account balances credited to
the Former Funds shall be transferred to the Investment
Funds in accordance with the following:

- 76 -

(1)     Former Fund A transferred to Fixed Income Fund;

(2)     Former Fund B transferred to Fidelity Blue Chip
        Growth Fund;

(3)     Former Fund C transferred to Grace Common Stock
        Fund;

(4)     Former Fund D transferred to Fidelity Balanced
        Fund.

5.09   Effective immediately after (and as a result of) the NMC
       Disposition in September 1996:

       (a)     With respect to each Participant's, Inactive
               Participant's and former Participant's interest in
               Grace Stock credited to the ESOP, the Trustee shall
               receive a certain number of shares of American
               Depository Shares of Fresenius Medical Care
               ("ADS's") and of shares of Fresenius National
               Medical Care preferred stock ("Preferred").  Those
               shares shall be sold by the Trustee within 90 days
               after they are received and the proceeds shall be
               reinvested in Grace Stock, which shall be credited
               to the Participant's, Inactive Participant's or
               former Participant's (as the case may be) interest
               in the ESOP.

       (b)     With respect to each Participant's, Inactive
               Participant's and former Participant's interest in
               Grace Stock credited to the Grace Common Stock

GR 001737

- 77 -

Fund, the Trustee shall receive a certain number of
ADS's and shares of Preferred.  The shares of
Preferred shall be sold by the Trustee within 90
days after they are received and the proceeds shall
be reinvested in Grace Stock, which shall be
credited to the Participant's, Inactive
Participant's or former Participant's (as the case
may be) interest in the Grace Common Stock Fund.
The ADS's shall be credited to the ADS Fund within
the account of the Participant, Inactive
Participant or former Participant (as the case may
be), which shall be an additional Investment Fund
under the Savings Plan.  The Participant, Inactive
Participant or former Participant shall have the
same elections with respect to the ADS Fund, as
with other Investment Funds, specified in Section
5.03 and 5.04; except that (i) the Participant,
Inactive Participant or former Participant shall
not be permitted to direct that any amounts be
credited to the ADS Fund from any other Investment
Fund (including, but not limited to, amounts in any
other Investment Fund attributable to amounts
previously transferred from the ADS Fund to any
other Investment Fund) or from any contributions
made to the Plan by or on behalf of the
Participant, and (ii) the ADS Fund shall be
terminated as of December 31, 1998 and all ADS's
remaining therein shall be liquidated, and any
amount remaining in that Fund on that date shall be
transferred to the Fixed Income Fund for the

- 78 -

Participant, Inactive Participant or former
Participant.

5.10         Effective immediately after (and as a result of)
the Cryovac Disposition in March 1998:

(a)    With respect to each Participant's, Inactive
Participant's and former Participant's interest in
Grace Stock credited to the ESOP, the Trustee shall
receive a certain number of shares of Sealed Air
Corporation ("SAC Common Stock") and of shares of
Sealed Air Corporation preferred stock ("SAC
Preferred").  Those shares shall be sold by the
Trustee within 90 days after they are received and
the proceeds shall be reinvested in Grace Stock,
which shall be credited to the Participant's,
Inactive Participant's or former Participant's (as
the case may be) interest in the ESOP.

(b)    With respect to each Participant's, Inactive
Participant's and former Participant's interest in
Grace Stock credited to the Grace Common Stock
Fund, the Trustee shall receive a certain number of
SAC Common Stock shares and shares of SAC
Preferred. The shares of SAC Common Stock shall be
credited to the SAC Common Stock Fund, and the
shares of SAC Preferred shall be credited to the
SAC Preferred Stock Fund, within the account of the
Participant, Inactive Participant or former
Participant (as the case may be), which shall be an
additional Investment Fund under the Savings Plan.

GR 001739

- 79 -

The Participant, Inactive Participant or former Participant shall have the same elections with respect to the SAC Common Stock Fund and SAC Preferred Stock Fund, as with other Investment Funds, specified in Section 5.03 and 5.04; except that (i) the Participant, Inactive Participant or former Participant shall not be permitted to direct that any amounts be credited to the SAC Common Stock Fund or the SAC Preferred Stock Fund from any other Investment Fund (including, but not limited to, amounts in any other Investment Fund attributable to amounts previously transferred from the SAC Common Stock Fund or the SAC Preferred Stock Fund to any other Investment Fund) or from any contributions made to the Plan by or on behalf of the Participant, and (ii) the SAC Common Stock Fund and the SAC Preferred shall be terminated as of (or as soon as practicable after) December 31, 2000 and all SAC Common Stock and SAC Preferred Stock remaining therein shall be liquidated, and any amount remaining in either Fund after such liquidation shall be transferred to the Fixed Income Fund for the Participant, Inactive Participant or former Participant.

5.11    Effective October 1, 2000, a Participant or Inactive Participant may, on any Business Day during a Plan Year, elect to transfer to one or more of the Investment Funds within the Savings Plan all or a portion (in multiples of 5% or in whole dollars amounts) of his Account Balance

GR 001740

- 80 -

invested in the ESOP and Grace Common Stock Fund
which is attributable to Company contributions
pursuant to Section 4.01. Any such transfer will
occur on the Business Day on which the Participant
notifies the Recordkeeper of such transfer election
by telephonic instruction, if such notice is
received by the Recordkeeper before the latest time
of day agreed to by Grace and the Recordkeeper for
same day processing; otherwise, such change will be
effective on the immediately succeeding Business
Day. The foregoing provisions of this Section 5.11
shall also apply to a former Participant who has
incurred a Termination of Service.

Effective as of the close of business April 9,
2003, the short term investments in the Grace
Common Stock Fund and the ESOP shall be liquidated
and the proceeds immediately transferred to the
Fixed Income Fund, and credited to each Savings
Plan Account, on a pro-rata basis, in accordance
with the interest in those Funds of each affected
Participant, Inactive Participant or former
Participant, as of that date. Effective April 10,
2003, all transactions involving the Grace Common
Stock Fund and the ESOP shall be suspended. During
such suspension, these two Funds shall be merged
into one fund, called the "Grace Stock Fund".

5.12    The "Grace Stock Fund" shall be comprised of only
Grace Stock, and no short-term investments. The
Grace Stock Fund shall account separately for the

GR 001741

- 81 -

portion of the Fund attributable to the ESOP and earnings and losses thereon.

5.13      As of April 14, 2003, the suspension specified in Section 5.11 shall end and all transactions involving Grace Stock within the Grace Stock Fund initiated on and after that date (including all transactions initiated by Participants) shall be executed directly to the open market, in accordance with the rules and procedures established by the Trustee (or its designee), including the application of brokerage commissions to such transitions.

5.14      Effective April 17, 2003, the Grace Stock Fund shall cease to accept any contributions or allocations to that Fund, whether or not such contribution or allocation is directed by a Participant, Inactive Participant or former Participant, and whether or not such a contribution or allocation is directed to the ESOP Account within the Fund or the other portion of the Fund. As of that date, all contributions designated for, or directed to, the Grace Stock Fund shall be redirected to the Fixed Income Fund.

GR 001742

- 82 -

## Section 6

Valuation of Accounts

6.01    As of December 31, 1991, the dollar value of the balance
        of the Account of each Participant, Inactive Participant,
        former Participant or beneficiary in the Former Funds A,
        B, C and D within the Savings Plan and the ESOP shall be
        determined based upon the provisions of Section 6 of the
        Plan then in effect.

6.02    After December 31, 1991, the balances of Participants,
        Inactive Participants, former Participants or
        beneficiaries in each Former Fund and Investment Fund and
        in the ESOP shall be valued on each Business Day.  The
        value of each such balance on each Business Day shall
        equal the unit price established for the Investment Fund
        (or the ESOP) multiplied by the units credited to that
        balance.

        On each Business Day, the Trustee will establish a
        separate unit price for each Investment Fund and the ESOP
        by dividing the total market value of each Investment Fund
        and the ESOP by the total number of units outstanding in
        that Fund or the ESOP.  In the event that any shares of
        Grace Stock held in the ESOP portion of the Trust Fund are
        not traded on a national securities exchange on a
        particular Business Day, such shares shall be valued in
        good faith by an independent appraiser selected by the
        Trustee.

GR 001743

- 83 -

6.03    The Administrative Committee shall deliver or mail to each
       person in respect of whom an Account is maintained a
       statement setting forth the balance of the Savings Plan
       Account of such person in the Investment Funds not less
       frequently than once in each Plan Year.  After June 30,
       1989, such statement shall include the balance of such
       person's ESOP Account.

GR  001744

- 84 -

## Section 7

### Vesting

7.01    Each Participant and Inactive Participant shall be fully
and immediately vested in that portion of his Account
which is attributable to his Before Tax, After Tax, Basic,
Supplemental, and Rollover Contributions and to Company
contributions pursuant to Section 4.01.

7.02    Notwithstanding the provisions of Section 7.01 relating to
the fully vested status of Company contributions, Company
contributions made with respect to periods prior to
January 1, 1987 became fully vested after the expiration
of two full Plan Years following the close of the Plan
Year for which such Company contributions were made.

In the event that a Participant or Inactive Participant
terminated service prior to January 1, 1989 and before
attaining a 100% Vested Interest in his Account and
received a single lump sum payment of his Account, any
non-vested portion of his Account was forfeited as of the
last day of the month coincident with or next following
the date of such termination.  If any such Participant or
Inactive Participant elected to defer receiving a single
lump sum distribution of his Account until the first day
of the Plan Year next following his Termination of
Service, any non-vested portion of his Account was
forfeited as of the last day of the Plan Year in which his
Termination of Service occurred (unless such Participant
or Inactive Participant was re-employed by an Employing

- 85 -

Unit in a status covered by the Plan prior to such last day).  If any such Participant or Inactive Participant elected to receive installment payments of his Account, any non-vested portion of his Account was forfeited, or will be forfeited, as of the last day of the Plan Year coincident with the fifth consecutive One-Year Break in Service (unless such Participant or such Inactive Participant was re-employed, or is re-employed, by an Employing Unit in a status covered by the Plan prior to such fifth consecutive One-Year Break in Service).  Any amount forfeited hereunder was used, or will be used, to reduce Company contributions under Section 4.01.

GR 001746

- 86 -

## Section 8

Distribution of Vested Interest

8.01    Retirement, Disability or Other Termination of Service

Upon his Disability Date or on the date of Retirement or
other Termination of Service, a Participant or Inactive
Participant who is not eligible to elect or who does not
elect to defer the distribution of his Account in
accordance with Section 8.04 may elect, at any time prior
to his Disability Date or the date of his Retirement or
other Termination of Service, to receive his Vested
Interest in any one of the following forms of benefit:

(a)    a single lump sum payment in cash equal to the
value of his Vested Interest determined as of the
Business Day on which the Recordkeeper processes
his distribution election form, which date is on or
after his Disability Date or the date of his
Retirement or other Termination of Service, as the
case may be, with actual payment to be made as soon
as practicable thereafter.

(b)    annual or quarterly installment payments in cash of
his Vested Interest, if such Vested Interest
(without regard to any amount attributable to
rollover contributions and earnings allocable
thereto within the meaning of Code sections 402(c),
403(a)(4), 403(b)(8), 408(d)(3)(A)(ii) and
457(e)(16), with respect to distributions made

GR 001747

- 87 -

after January 1, 2002) exceeds $5,000 (or $3,500,
with respect to a former Participant who terminates
active participation under the Plan on or prior to
March 30, 1998) over a period that shall not exceed
twenty years (or such other period as may have been
designated under a designation by an Employee prior
to January 1, 1984 (satisfying any requirements of
the Internal Revenue Service) of a method of
distribution which complies with the provisions of
the Code as in effect on December 31, 1983),
commencing as of the first Business Day of the
first calendar quarter commencing after the date of
Retirement, the Disability Date or the date of
other Termination of Service of the Participant or
Inactive Participant, in which event his Vested
Interest shall remain in the Investment Funds in
which such interest is invested on the applicable
date and in the ESOP, unless and until his
investment election is changed in accordance with
Sections 5.04 and/or 5.07.  In such event the value
of the first installment payment shall be
determined on the first Business Day of the first
calendar quarter commencing after the former
Participant's Retirement, Disability Date or other
Termination of Service occurred.  The remaining
Vested Interest shall be valued as of the first
Business Day of each subsequent calendar quarter
(or, in the case of an annual installment, as of
the first Business Day of that calendar quarter
which is one year after the previous installment),
and the amount of the installment payment shall

GR 001748

- 88 -

equal the value of such remaining Vested Interest multiplied by a fraction the numerator of which is 1 and the denominator of which is the number of remaining installment payments to be made (including the installment payment in question). Notwithstanding the foregoing, any Participant or Inactive Participant who terminated service (other than on a Disability Date or on account of Retirement) prior to January 1, 1991 and elected to receive his Account in annual or quarterly installment payments shall commence receiving such installment payments as of the first day of the Plan Year after the Participant or Inactive Participant incurs 5 consecutive One-Year Breaks in Service.

(C)     monthly, quarterly or annual installment payments of a level amount in cash, of his Vested Interest, if such Vested Interest (without regard to any amount attributable to rollover contributions and earnings allocable thereto within the meaning of Code sections 402(c), 403(a)(4), 403(b)(8), 408(d)(3)(A)(ii) and 457(e)(16), with respect to distributions made after January 1, 2002) exceeds $5,000 (or $3,500, with respect to a former Participant who terminates active participation under the Plan on or prior to March 30, 1998), commencing as of the first Business Day of the first calendar month, quarter or year (as applicable) commencing after the date of Retirement, the Disability Date or the date of

GR 001749

- 89 -

other Termination of Service of the Participant or
Inactive Participant and after the appropriate
election has been processed, in which event his
undistributed Vested Interest shall remain in the
Investment Funds in which such interest is invested
on the applicable date and in the ESOP, unless and
until his investment election is changed in
accordance with Sections 5.04 and/or 5.07.

In the event that the Vested Interest of a Participant or
Inactive Participant (without regard to any amount attributable
to rollover contributions and earnings allocable thereto within
the meaning of Code sections 402(c), 403(a)(4), 403(b)(8),
408(d)(3)(A)(ii) and 457(e)(16), with respect to distributions
made after January 1, 2002) equals $5,000 (or $3,500, with
respect to a former Participant who terminates active
participation under the Plan on or prior to March 30, 1998) or
less as of the Business Day coincident with or next following his
Disability Date or date of Retirement or other Termination of
Service, the Participant's entire Vested Interest shall be
distributed as soon as practicable after his Disability Date or
the Date of his Retirement or other Termination of Service, as
the case may be, in the form of a single lump sum payment in
cash, unless such Participant or Inactive Participant elects to
defer receipt of such a single lump sum payment until the first
Business Day of the Plan Year next following the Plan Year in
which his Retirement, Disability Date or other Termination of
Service occurred. In either case, the value of the single lump
sum distributed to the Participant shall be equal to the value of
his Vested Interest determined as of the Business Day on which
the Recordkeeper processes his distribution election for.

- 90 -

8.02    Death

       If a Participant, Inactive Participant or former
       Participant shall die before the distribution of his
       entire Vested Interest has commenced or been completed,
       the balance of such Vested Interest determined as of the
       Business Day on which the Recordkeeper processes the
       applicable distribution form following the Participant's
       date of death shall be distributed as soon as practicable
       thereafter to his beneficiary as provided in Section 8.03.

8.03    Except as provided below, each Participant, Inactive
       Participant, or former Participant shall designate a
       person or persons as his beneficiary or beneficiaries to
       receive the death benefits provided in Section 8.02.  Such
       designation shall be made by written notice to the
       Administrative Committee, and may be changed in similar
       manner.  In the event that no beneficiary shall have been
       designated or the last designated beneficiary shall not be
       living at the time that death benefits become payable, the
       death benefits will be paid to the estate of the
       Participant, Inactive Participant or former Participant.
       Notwithstanding any other provision of the Plan, effective
       August 23, 1984, in the case of a Participant, Inactive
       Participant, or former Participant who is married at the
       time of his death, such beneficiary shall automatically be
       his spouse (and no other person designated by him shall be
       entitled to any benefits in respect of him under the
       Plan), unless another beneficiary or an additional
       beneficiary is named with the consent of such spouse.

GR 001751

- 91 -

8.04    If the value of a Participant's or Inactive Participant's
        Vested Interest (without regard to any amount attributable
        to rollover contributions and earnings allocable thereto
        within the meaning of Code sections 402(c), 403(a)(4),
        403(b)(8), 408(d)(3)(A)(ii) and 457(e)(16), with respect
        to distributions made after January 1, 2002) determined as
        of the Business Day coincident with or next following the
        date of his Termination of Service exceeds $5,000 (or
        $3,500, with respect to a former Participant who
        terminates active participation under the Plan on or prior
        to March 30, 1998) and his Account is immediately
        distributable, the former Participant or Inactive
        Participant must consent to any distribution of his
        Account.  For purposes of this Section 8.04, an Account is
        immediately distributable if any part of such Account
        could be distributed before a Participant or Inactive
        Participant attains age 65.  The consent of the former
        Participant or Inactive Participant shall be obtained
        within the 90-day period ending on the annuity starting
        date.  The annuity starting date is the first day of the
        first period for which an amount is paid as an annuity or
        any other form.  The Administrative Committee shall, not
        less than 30 days and not more than 90 days prior to the
        annuity starting date, notify a Participant or Inactive
        Participant of the right to defer the distribution of his
        Account until the last day of the Plan Year in which the
        Participant or Inactive Participant attains age 70-1/2.
        However, distribution may commence less than 30 days after
        the notice described in the preceding sentence is given,
        provided the Administrative Committee clearly informs the
        Participant or Inactive Participant that he has a right to

- 92 -

a period of at least 30 days after receiving the notice to
consider the decision of whether or not to elect a
distribution (and, if applicable, a particular
distribution option), and the Participant or Inactive
Participant (with any applicable spousal consent) after
receiving the notice, affirmatively elects a distribution;
provided that such a distribution shall commence no
earlier than 7 days after such notice is provided.  A
former Participant who has made an election to defer the
distribution of his Account under this Section 8.04 may
elect to receive a distribution of his Account as a single
lump sum payment in cash or in annual or quarterly
installments as of a date earlier than the applicable
dates described in the sentence before the preceding
sentence.  In this event, any such former Participant who
elects a single lump sum payment in cash shall receive the
value of his Vested Interest determined as of the Business
Day on which the Recordkeeper processes his distribution
election, with actual payment to be made as soon as
practicable thereafter.  Alternatively, any such former
Participant who elects annual or quarterly installments
shall receive the first such installment, based on the
value of his Vested Interest determined as of the first
Business Day of the first calendar quarter after his
election to receive an earlier distribution is received by
the Administrative Committee, with actual payment to be
made as soon as practicable thereafter.  The remaining
Vested Interest of such former Participant shall be valued
as of the first Business Day of each subsequent calendar
quarter (or, in the case of an annual installment, as of
the first Business day of that calendar quarter which is

- 93 -

one year after the previous installment), and the amount
of the installment payment shall equal the value of such
remaining Vested Interest multiplied by a fraction, the
numerator of which is 1 and the denominator of which is
the number of remaining installment payments to be made
(including the installment payment in question).

8.05    A Participant, Inactive Participant, or beneficiary, who
receives a single lump sum payment may elect to receive
that portion of his Vested Interest in the Grace Common
Stock Fund and, for periods after June 30, 1989, the value
of his ESOP Account, in the aggregate, payable to him in
whole shares of Grace Stock plus cash for any fractional
share.

8.06    Except as otherwise provided under regulations of the
Internal Revenue Service, and subject to Section 8.04 of
the Plan, the payment of benefits under the Plan to a
former Participant shall be made or commence, as the case
may be, not later than the 60th day after the close of the
latest of three Plan Years: (1) the Plan Year in which the
Participant attains age 65, (2) the Plan Year in which the
tenth anniversary of the Participant's commencement of
participation in the Plan occurs, and (3) the Plan Year in
which the Participant has a Termination of Service.

Notwithstanding any other provision of the Plan, any
benefit payable to a Participant or former Participant who
terminates service other than by death shall be paid, or
commence to be paid, not later than April 1 of the
calendar year following the later of (i) the calendar year

GR 001754

- 94 -

in which he attains age 70-1/2, or (ii) the calendar year
in which he terminates service (for non 5% owners), and
shall be payable over the period of his life or the lives
of him and a designated beneficiary, or a period not
extending beyond his life expectancy or their life
expectancies, and the benefit, if any, payable after his
death shall be payable at least as rapidly as under the
method of distribution then applicable at the time of the
Participant's death.  If the Participant dies before
benefits commence under the Plan, such benefits shall be
payable within 5 years after the death of the Participant,
or over the life of a designated beneficiary, or over a
period not extending beyond the life expectancy of a
designated beneficiary, and such benefits shall commence
within one year after the Participant's death, but need
not commence before the date that the Participant would
have attained age 70-1/2, in the case of a designated
beneficiary who is the Participant's spouse.  Upon the
death of such spouse, the foregoing rules shall apply as
if such spouse were the Participant.

Notwithstanding any other provisions of the Plan, with
respect to distributions under the Plan made on or after
September 1, 2001 for calendar years beginning on or after
January 1, 2001, the Plan will apply the minimum
distribution requirements of section 401(a)(9) of the
Internal Revenue Code in accordance with the regulations
under section 401(a)(9) that were proposed on January 17,
2001 (the 2001 Proposed Regulations).  If the total amount
of required minimum distributions made to a Participant
for 2001 prior to September 1, 2001 are equal to or

- 95 -

greater than the amount of the required minimum
distributions determined under the 2001 Proposed
Regulations, then no additional distributions are required
for such Participant for 2001 on or after such date. If
the total amount of required minimum distributions made to
a Participant for 2001 prior to September 1, 2001 are less
than the amount determined under the 2001 Proposed
Regulations, then the amount of required minimum
distributions for 2001 on or after such date will be
determined so the total amount of required minimum
distributions for 2001 is the amount determined under the
2001 Proposed Regulations. This amendment shall continue
in effect until the last calendar year beginning before
the effective date of the final regulations under section
401(a)(9) or such other date as my be published by the
Internal Revenue Service.

8.07    Notwithstanding the other provisions of Section 8 of the
Plan, a Participant or Inactive Participant may change an
election under Section 8.01 of the Plan with respect to
the form or timing of the distribution of his Vested
Interest one time during the period after the date of his
Retirement, his Disability Date, or the date of his other
Termination of Service (except by death) and prior to the
date as of which his Vested Interest is to be paid or
commence to be paid.  Such change of an election may be
made at such time, with such effective date, and on such
form as may be prescribed by the Administrative Committee.

In addition, a former Participant or Inactive Participant
who has commenced receiving a distribution of his Vested
Interest in the form of installment payments may

- 96 -

accelerate the distribution of such Vested Interest by electing to receive a single lump sum payment in cash equal to the value of such remaining Vested Interest determined on the Business Day on which the Recordkeeper processes his distribution election.

8.08    Notwithstanding any other provision of the Plan, a distribution made on account of the following may only be made in the form of a lump sum:

(1)    on account of the sale or other disposition by the Company, or any corporation or other entity regarded as under common control with the Company pursuant to Code section 414(b)(1), of substantially all of the assets (within the meaning of section 409(d)(2) of the Code) used by the Company or other such entity in a trade or business, with respect to an individual who continues employment with the corporation acquiring such assets; or

(2)    on account of the sale or other disposition by the Company or other such entity of the Company's or other such entity's interest in a subsidiary (within the meaning of section 409(d)(3) of the Code) with respect to an individual who continues employment with such subsidiary.

8.09    Eligible Rollover Distributions

(A)    This Section applies to distributions made on or

- 97 -

after January 1, 1993. Notwithstanding any
provision of the Plan to the contrary that would
otherwise limit a distributee's election under the
Plan, a distributee may elect, at the time and in
the manner prescribed by the Administrative
Committee, to have any portion of an eligible
rollover distribution that is equal to at least
$500 paid directly to an eligible retirement plan
specified by the distributee in a direct rollover.

(B)    Eligible Rollover Distribution:  An eligible
rollover distribution is any distribution of all or
any portion of the balance to the credit of the
distributee, except that any eligible rollover
distribution does not include:  any distribution
that is (or is treated as under Treasury Regulation
1.402(c)-2T) one of a series of substantially equal
periodic payments (not less frequently than
annually) made for the life (or life expectancy) of
the distributee or the joint lives (or joint life
expectancies) of the distributee and the
distributee's designated beneficiary, or for a
specified period of ten years or more; any
distribution to the extent such distribution is
required under section 401(a)(9) of the Code; the
portion of any other distribution(s) that is not
includible in gross income (determined without
regard to the exclusion for net unrealized
appreciation with respect to employer securities);
any other distribution(s) that is reasonably
expected to total less than $200 during a year; and

- 98 -

any hardships withdrawal made after December 31, 1998. For distributions made on or after January 1, 2002, a portion of a distribution shall not fail to be an eligible rollover distribution merely because the portion consists of amounts that are not includable in gross income.  However, such portion may be transferred only to an individual retirement account or annuity described in Code section 408(a) or (b), or to a qualified defined contribution plan described in Code section 401(a) or 403(a) that shall separately account for the portion of such distribution which is includible in gross income and the portion of such distribution which is not so includible.

(C)    Eligible retirement plan:  An eligible retirement plan is an individual retirement account described in section 408(a) of the Code, an individual retirement annuity described in section 408(b) of the Code, an annuity plan described in section 403(a) of the Code, or a qualified trust described in section 401(a) of the Code, that accepts the distributee's eligible rollover distribution. For distributions made on or after January 1, 2002, an eligible retirement plan shall also mean an annuity contract described in Code section 403(b) and an eligible plan under Code section 457(b) which is maintained by a state, or any agency or instrumentality of a state or political subdivision of a state and which agrees to separately account for amounts transferred into such plan from this

GR 001759

- 99 -

Plan.  Notwithstanding any other provision of this
Section 8.09, for distributions made on or after
January 1, 2002, the definition of eligible
retirement plan shall also apply in the case of a
distribution to a surviving spouse, or to a former
spouse who is the alternate payee under a qualified
domestic relations, as defined in Code section
414(q). For distributions made before January 1,
2002, in the case of an eligible rollover
distribution to the surviving spouse, an eligible
retirement plan is an individual retirement account
or individual retirement annuity.

(D)    Distributee:  A distributee includes an employee or

former employee.  In addition, the employee's or

former employee's surviving spouse and the

employee's or former employee's spouse or former

spouse who is the alternate payee under a qualified

domestic relations order, as defined in section

414(p) of the Code, are distributees with regard to

the interest of the spouse or former spouse.

(E)    Direct rollover:  A direct rollover is a payment by

the Plan to the eligible retirement plan specified

by the distributee.

GR  001760

- 100 -

8.10 Distributions to former Participants of the Grace Drilling
Money Purchase Pension Plan ("Grace Drilling Plan") and the
HOMCO International, Inc. Employees' Profit Sharing
Investment Savings and Retirement Plan ("HOMCO Plan").

Notwithstanding any other provisions of this Section 8, a
Plan Participant whose Account includes amounts transferred
from the Grace Drilling Plan or the HOMCO Plan (hereinafter
referred to as the "Grace Drilling Transferred Amount" and
"HOMCO Transferred Amount" respectively and as the
"Transferred Amounts," collectively), may elect (in addition
to the other options available under this Section 8) at any
time prior to his or her Disability Date, or the date of his
or her Retirement or other Termination of Service, whichever
occurs first, to receive that portion of his or her Vested
Interest in the Grace Drilling Transferred Amount or HOMCO
Transferred Amount, plus earnings on either, in any one of
the following forms of benefit described below, with respect
to the applicable transferred amount.

(a)  Participants Entitled to a Grace Drilling Transferred
Amount.  For purposes of this Section 8.10, a
Participant with such a Transferred Amount will be
deemed to have reached Normal Retirement Age with
respect to the Grace Drilling Transferred Amount, and
earnings thereon, as of (i) the first day of any month
after attainment of age 60 or (ii) as of the first day
of any month following the attainment of age 55 and
completion of ten years of service, whichever occurs
first.

GR 001761

- 101 -

Unless an optional form of benefit is selected pursuant
to a qualified election within the 90-day period ending
on the annuity starting date, a married Participant's
vested Grace Drilling Transferred Amount and earnings
thereon will be paid in the form of a qualified joint
and survivor annuity and an unmarried Participant's
vested Grace Drilling Transferred Amount and earnings
thereon will be paid in the form of a life annuity.

A Participant with a Grace Drilling Transferred Amount
may elect to receive that portion of his or her Vested
Interest representing the Grace Drilling Transferred
Amount, plus earnings thereon, in any one of the
following optional forms of benefit as described below:

 (1) A lump sum distribution, provided that if the
   Participant is married, his or her spouse
   must consent to this form of distribution.

 (2) Installment distributions, provided that if
   the Participant is married, his or her spouse
   must consent to this form of distribution.
   With such consent, the Participant may elect
   monthly or annual installments, where the
   installment payments will be equal payments
   over a 5, 10 or 15 year period, as selected
   by the Participant.  If the Participant dies
   after the installment payments have
   commenced, any remaining payments due will be
   paid to the Participant's beneficiary.
   Installment payments will commence as soon as

- 102 -

administratively practicable, but in no event more that one year following the Participant's Disability Date, Retirement or other Termination of Service, whichever occurs first.

(3) Optional Annuity Forms. A Participant may elect to have the Grace Drilling Transferred Amount, plus earnings thereon, converted to a life annuity, provided that if the Participant is married, his or her spouse must consent to this form of distribution. With such consent, the following forms of annuity are available to the Participant:

(i) Monthly payments for the Participant's life, with no death benefits.

(ii) Monthly payments for the Participant's life with payments guaranteed for a period of 5, 10, or 15 years as the Participant selects. If the Participant dies before the end of the period selected, payments will continue to the designated beneficiary until the end of that period.

(iii) Monthly payments for the Participant's life, with 100%, 75%, 66-2/3%, or 50% (selected by the Participant) of the payment continuing after the

- 103 -

Participant's death for the rest of the
life of the designated beneficiary.

(b)  Participants entitled to a HOMCO Transferred
Amount. Unless an optional form of benefit is
selected pursuant to a qualified election within
the 90-day period ending on the annuity starting
date, a married Participant's vested HOMCO
Transferred Amount and earnings thereon will be
paid in the form of a qualified joint and survivor
annuity and an unmarried Participant's vested
HOMCO Transferred Amount and earnings thereon will
be paid in the form of a life annuity.

A Participant may elect to have his or her HOMCO
Transferred Amount, plus earnings thereon,
distributed as a lump sum distribution, provided
that if the Participant is married, his or her
spouse must consent to this form of distribution.

(c)  Qualified Joint and Survivor Annuity or Pre-Retirement
Survivor Annuity.  Notwithstanding any other provisions
of the Plan, the following provisions shall apply with
respect to distributions of Transferred Amounts and
earnings thereon made under this section 8.10.

Should a Participant die, while married, prior to the
starting date of the distribution of benefits but on or
after the earliest retirement age, then for the
purposes of determining eligibility for the Joint and
Survivor Annuity benefits stated above, the starting

GR 001764

- 104 -

date of distribution of benefits shall be deemed to
have occurred one day prior to his date of death.

Notwithstanding the above, the Participant may elect,
subject to the consent of his spouse, in accordance
with the following procedures not to receive a
Qualified Joint and Survivor Annuity(or life annuity if
the Participant is not married or the consent of his
spouse is not required), in which case the manner of
distribution shall be other than a Qualified Joint and
Survivor Annuity:  No less than thirty days nor more
than ninety days before the starting date of any
payment of Accrued Benefits to the Participant under
the Plan in satisfaction of the Qualified Joint and
Survivor Annuity requirement, the Plan Administrator
shall provide the Participant with notification, in
non-technical terms, of the availability of a Qualified
Joint and Survivor Annuity, and on request, with a
dollar amount of the annuity payment with and without
election.  The written notification initially given to
the Participant shall include a written explanation of
(i) the terms and conditions of the Qualified Joint and
Survivor Annuity,  (ii) the Participant's right to
make, and the effect of an election to waive the
Qualified Joint and Survivor Annuity benefit, (iii)
the rights of the Participant's spouse as to the
election, and (iv)  the rights to make , and the effect
of, a revocation of such an election.  During said
thirty to ninety day period, the Participant shall be
provided with a period in which to elect in writing not
to receive a Qualified Joint and Survivor Annuity.

GR 001765

- 105 -

Such election may be changed by the Participant during
the election period.

(1)  Notwithstanding the provisions of Section 8,
Transferred Amounts and earnings hereon will be
distributed to the Participant in the Form of a
Qualified Pre-Retirement Survivor Annuity to the
extent that such benefits are distributed on
account of the Participant's death and the
Participant was married at the time of his or her
death.

Notwithstanding the above, the Participant may
elect, subject to the consent of his or her
spouse, in accordance with the following
procedures, not to receive a Qualified Pre-
Retirement Survivor Annuity: no later than the
first day of the Plan Year in which the
Participant attains the age of thirty-two and
ending the with the close of the Plan Year
preceding the Plan Year in which the Participant
attains the age of thirty-five, a written
explanation with respect to the Qualified Pre-
Retirement Survivor Annuity comparable to that
required for the Qualified Joint And Survivor
Annuity shall be provide to the Participant.  If
an individual is not a Participant in the Plan
during the time prescribed in the preceding
sentence, the Participant shall be provided with a
written explanation of the Qualified Pre-
Retirement Survivor Annuity not later than the

GR 001766

- 106 -

date he or she becomes a Participant in the Plan,
in accordance with the applicable Treasury
Regulations.  Beginning with the first day of the
Plan Year in which the Participant attains the age
of thirty-five and ending on the date of the
Participant's death, the Participant shall have
the right to elect to decline the Qualified Pre-
Retirement Survivor Annuity, subject to consent of
his or her spouse. Notwithstanding the preceding
sentence, the Plan may permit an earlier waiver
(subject to consent of spouse), provided that a
written explanation of the Qualified Pre-
Retirement Survivor Annuity is given to the
Participants and such waiver becomes invalid upon
the beginning of the Plan Year in which the
Participant attains the age of thirty-five.
During the "applicable election period," which
begins on the first day of the plan year in which
the Participant attains age 35 and ends on the
date of his/her death, the Participant may revoke
a previously made waiver at any time and any
number of times; provided, however, that the last
election made prior to the date of the
Participant's death shall be irrevocable.

(2)    When "consent of spouse" is required under this
section, the spouse of the Participant must
consent in writing to the applicable election, and
must acknowledge the effect of the election, and
the consent and acknowledgment must be witnessed
by a member of the Administrative Committee or a

GR  001767

- 107 -

notary public.  The consent of the spouse shall
not be necessary if it is established to the
satisfaction of the Administrative Committee that
there is no spouse, that spouse cannot reasonably
located, or for such other reasons as Treasury
Regulations may prescribe.  The consent of the
spouse or reasons for not requiring such consent
shall be applicable only to the spouse. If the
spouse o of a Participant becomes locatable or if
a Participant marries or remarries it shall be the
duty of the Participant to bring that fact to the
attention of the Administrative Committee.  If a
Participant so notifies the Administrative
Committee, the Administrative Committee shall
then, if applicable, proceed to make available to
such spouse the consent procedures described in
this section.

(3)  The benefit to the surviving spouse under the
Qualified Pre-Retirement Survivor Annuity shall
begin within a reasonable time, but in any event,
no later than 90 days, after the Participant's
death.

(d)  Definitions.  Notwithstanding any other provision of the
Plan, the following definitions shall apply for the
purposes of this Section 8.10:

(1)  Qualified Joint and Survivor Annuity is an annuity
for the life of the Participant with a survivor
annuity for the life of the spouse, which is equal

- 108 -

to one-half of the amount of the annuity payable
during the joint lives of the participant and his
spouse, the actuarial equivalent of the vested
Transferred Amount plus earnings thereon of the
Participant.

(2)  Qualified Pre-Retirement Survivor Annuity is a
survivor annuity for the life of the surviving
spouse of the Participant which is the actuarial
equivalent of the vested Transferred Amount plus
earnings thereon of the Participant.

This provision shall be effective for Drilling Participants as of
December 1, 1994; and effective for HOMCO Participants as of
December 1, 1993.

- 109 -


## Section 9


Withdrawals During Employment


9.01  (1)  The provisions of Section 9 shall apply to
           Participants and Inactive Participants who have not
           incurred a Termination of Service.

      (2)  With respect to a Participant's or Inactive
           Participant's Vested Interest other than the
           portion of his Account attributable to Before Tax
           Contributions and to Company contributions subject
           to the restrictions of Section 9.01(5)(f), a
           Participant or Inactive Participant may withdraw
           all or part thereof as of the Business Day on which
           the Recordkeeper processes his withdrawal request.

      (3)  With respect to the portion of a Participant's or
           Inactive Participant's Account attributable to
           Before Tax Contributions, a Participant or Inactive
           Participant who satisfies the requirements of
           Section 9.05 may withdraw all or part thereof as of
           the Business Day on which the Recordkeeper
           processes his withdrawal request.  Notwithstanding
           the foregoing, any earnings on Before Tax
           Contributions which are credited to a Participant's
           Account after December 31, 1988 may not be
           withdrawn on account of hardship as defined in
           Section 9.05.

      (4)  Partial withdrawals may only be made in multiples

GR 001770

- 110 -

of $100.  Any withdrawal under the Plan is subject
to a minimum withdrawal amount of $500.  No
withdrawal of any contributions or earnings may
exceed the value of the Account attributable
thereto, if less, on the Business Day on which the
Recordkeeper processes the Participant's
withdrawal request form.

(5)     Withdrawals under Section 9.01(2) shall be made
only in the following order of priority, and only
after the funds of a higher priority have been
completely withdrawn shall funds of the next
following priority be withdrawn:

(a)   Supplemental Contributions and Rollover
Contributions made prior to January 1, 1992,
and earnings, up to the Non-Taxable Balance

(b)   Rollover Contributions made on or after
December 31, 1992 and earnings, up to the
Non-Taxable Balance

(c)   After Tax Contributions made on or before
December 31, 1986, up to the Non-Taxable
Balance

(d)   At the election of the Participant or
Inactive Participant having a Supplemental
Contribution and/or Rollover Contribution
balance (including earnings thereon) in
excess of the Non-Taxable Balance, either (i)
Supplemental Contributions and/or Rollover
Contributions, and earnings thereon, if any
or (ii) After Tax Contributions made on or

GR  001771

- 111 -

after January 1, 1987 and earnings thereon, if any

(e)  After Tax Contributions made on or before December 31, 1986 and earnings thereon, in excess of the Non-Taxable Balance

(f)  Company contributions under Section 4.01 and earnings thereon, if any; provided, however, that no such Company contributions under Section 4.01 may be withdrawn until such Company contributions under Section 4.01 have remained in the plan for at least twenty-four (24) months after the Business Day on which such Company contributions were credited to his Account.

A Participant or Inactive Participant covered under (d) above may elect to receive an amount withdrawn under (i) or (ii).  In the event that no election is made, (i) shall apply.  In the event that the amount withdrawn exceeds the amount withdrawn under (i) or (ii) (whichever is elected), the balance shall be taken from (i) or (ii) (whichever was not elected).

9.02  Amounts withdrawn pursuant to Section 9.01 will be paid as soon as practicable after the Recordkeeper receives the Participant's or Inactive Participant's withdrawal request.  In the case of withdrawals from the Grace Common Stock Fund and the ESOP, distributions shall be made in cash unless the Participant or Inactive Participant elects to receive in lieu thereof whole

- 112 -

shares of Grace Stock, plus cash for any fractional share.

9.03    Each Participant or Inactive Participant withdrawing funds pursuant to Section 9.01(2) shall be ineligible to receive Company contributions under Section 4.01 of the Plan for the following periods after the effective date of such withdrawal (but nevertheless shall remain eligible to make After Tax Contributions or Before Tax Contributions, or both, during such periods):

| Category of Withdrawal | Proportion | Period During Which Company Contributions under Section 4.01 Are Suspended |
|---|---|---|
| Supplemental Contributions and Earnings Thereon | All or Part | None |
| After Tax Contributions and Earnings Thereon | All or Part | 3 months |
| Company Contributions under Section 4.01 and Earnings Thereon (subject to the restrictions of Section 9.01(5)(f)) | All or Part | None |

9.04    Amounts withdrawn with respect to a category of contributions and earnings thereon pursuant to Section 9.01(2) or (3) shall be deducted from the Investment Funds and the ESOP in the following order of priority, and only when amounts invested in Investment Funds of a higher priority have been completely withdrawn shall

GR 001773

- 113 -

amounts invested in Investment Funds of the next
following priority be withdrawn:

(1)     Fidelity Contrafund

(2)     Fidelity OTC Portfolio

(3)     Fidelity Blue Chip Growth Fund

(4)     Fidelity Growth & Income Portfolio

(5)     Fidelity Balanced Fund

(6)     Fidelity Investment Grade Bond Fund

(7)     Fidelity US Bond Index Fund

(8)     PIMCO Total Return Fund

(9)     INVESCO Equity Income Fund

(10)    Spartan US Equity Index Fund

(11)    Franklin Small Cap Growth Fund-A

(12)    JP Morgan Institutional US Small Company Fund

(13)    American Century International Growth Fund

(14)    Spartan International Index Fund

(15)    Templeton Foreign Fund A

(16)    Fidelity Freedom Income Fund

(17)    Fidelity Freedom 2000 Fund

(18)    Fidelity Freedom 2010 Fund

(19)    Fidelity Freedom 2020 Fund

(20)    Fidelity Freedom 2030 Fund

(21)    Fidelity Low-Priced Stock Fund

(22)    Spartan Extended Market Index Fund

(23)    Spartan Total Market Index Fund

(24)    Fidelity Diversified International Fund

(25)    Fidelity Europe Fund

(26)    Fidelity Equity-Income Fund

(27)    Fixed Income Fund

(28)    Grace Common Stock Fund

- 114 -

(29)    ESOP

The amount of a withdrawal will be based on the value of the amount attributable to such category of contributions and earnings credited to the Participant or Inactive Participant in each such Investment Fund within the Savings Plan and the ESOP on the Business Day on which the Recordkeeper processes the Participant's or Inactive Participant's withdrawal request.

9.05    Amounts may be withdrawn pursuant to Section 9.01(3) only (i) where a Participant or Inactive Participant has attained at least age 59-1/2, or (ii) where a Participant or Inactive Participant incurs a hardship; provided that such amounts may be withdrawn in the case of hardship only after all available amounts have first been withdrawn pursuant to Section 9.01(2) and only to the extent that they are necessary to satisfy the hardship after the Participant or Inactive Participant has applied all other financial resources reasonably available to him (if any) to satisfy such hardship.  For purposes of this Section 9.05, a distribution is on account of hardship if the distribution is for any of the following reasons:

> (a)    Expenses for medical care (within the meaning of Section 213 of the Code) that (i) were previously incurred by the Participant or Inactive Participant, his spouse or dependents and which are not reimbursed by insurance or otherwise, or

- 115 -

    (ii) are necessary for such individuals to obtain such medical care; or

(b)    Costs directly related to the purchase of a principal residence for the Participant or Inactive Participant (excluding mortgage payments); or

(c)    Payment of tuition and related educational expenses for the next twelve (12) months of post-secondary education for the Participant or Inactive Participant, his spouse, children or dependents; or

(d)    Payments necessary to prevent the eviction of the Participant or Inactive Participant from his principal residence or foreclosure on the mortgage of the principal residence of the Participant or Inactive Participant; or

(e)    Any other reason which, in the Administrative Committee's determination, has produced an immediate and heavy financial need.

Any Participant or Inactive Participant who suffers a hardship, as defined in this Section 9.05, may request a withdrawal pursuant to Sections 9.01(3) and (4) by written notice to the Administrative Committee setting forth the amount requested and the facts establishing the

- 116 -

existence of the hardship; provided that, effective
January 1, 2004, such Participant must request such a
withdrawal by written notice to Fidelity.  Upon receipt
of a withdrawal request on account of hardship, the
Administrative Committee (or Fidelity, as appropriate)
shall determine whether a financial hardship exists.  If
the Administrative Committee (or Fidelity, as
appropriate) determines that such a hardship does exist,
it shall further determine what portion of the amount
requested, if any, is required to meet the need created
by the hardship.  The determination of the existence of a
financial hardship and the amount necessary to meet the
need created by such hardship shall be made by the
Administrative Committee (or Fidelity, as appropriate) in
accordance with uniform and non-discriminatory standards
and on the basis of all relevant facts and circumstances.
 In the event that a Participant or Inactive Participant
requests a hardship withdrawal for any reason other than
those set forth in (a) through (d) above, or the
Administrative Committee (or Fidelity, as appropriate) is
unable to determine that the amount requested for
withdrawal is necessary to satisfy a financial hardship
that is described in (a) through (d) above, based on the
supporting documentation, including written
certifications, furnished to it by the Participant or
Inactive Participant, then (i) the Participant's Before
Tax Contributions and After Tax Contributions will be
suspended for a period of six months (twelve (12) months
for hardship distributions before January 1, 2002),
beginning with the first day of the month immediately
following the date of the withdrawal payment, (ii) the

GR 001777

- 117 -

Participant shall be ineligible to receive Company
contributions under Section 4.01 for such period and
(iii) the Participant's Before Tax Contributions for his
taxable year immediately following the taxable year of
the hardship withdrawal shall be limited to $7,000 (as
automatically adjusted for increases in the cost of
living as prescribed by the Secretary of the Treasury for
such next taxable year) less the amount of the
Participant's Before Tax Contributions for the taxable
year of the hardship withdrawal.

If, after January 1, 2004, Fidelity is unable or
unwilling to make the hardship determinations specified
above, or if there is any appeal of such a Fidelity
determination, then the Administrative Committee shall
decide each such determination, and its determinations
shall be final and binding on all parties.

9.06     Notwithstanding any other provision of Section 9 to the
contrary, a Participant that is subject to taxes on
personal income under the laws of any country (other than
the United States), including, but not limited to, the
United Kingdom, shall be permitted to give an undertaking
that would restrict his ability to receive an in-service
withdrawal under the provisions of this Section 9 with
respect to any portion of the Company contributions and
Before Tax Contributions made to the Plan on his behalf,
if, and to the extent that, such an undertaking is
necessary in order to assure that the Participant will
not be subject to tax by that country on those
contributions.  Any such undertaking shall be effective

GR 001778

- 118 -

as of the date that the Plan Administrator agrees to
observe the terms of such undertaking; and, as of that
date, the undertaking shall be incorporated as part of
the Plan by this reference.

9.07    Withdrawals By Former Participants

(a)    The provisions of this Section 9.07 shall apply to
any former Participant who has elected to defer
the distribution of his Account in accordance with
Section 8.04.  With respect to such a former
Participant's Vested Interest in his Account
(other than the portion of his Account
attributable to Before Tax Contributions, and to
Company contributions that have not been in the
Plan for at least two full Plan Years after the
Plan Year for which such Company contributions are
made and earnings on such contributions), such a
former Participant may withdraw all or part
thereof as of the Business Day on which the
Recordkeeper processes his withdrawal request.
Such a former Participant shall be permitted to
withdraw all or a portion of his Before Tax
Contributions if he has attained age 59-1/2.
Notwithstanding the foregoing, a former
Participant shall not be permitted to make any
withdrawal:  (i) on account of hardship as defined
in Section 9.05 or (ii) if he is receiving
installment payments from the Plan.

(b)    Amounts withdrawn pursuant to Section 9.07 will be

- 119 -

paid as soon as practicable after the Recordkeeper
receives the former Participant's withdrawal
request.   In the case of withdrawals from the
Grace Common Stock Fund and the ESOP,
distributions shall be made in cash unless the
former Participant elects to receive in lieu
thereof whole shares of Grace Stock, plus cash for
any fractional share.

GR  001780

- 120 -

## Section 10

### Payment of Benefits

10.01  If the Administrative Committee receives evidence
       satisfactory to it that a person entitled to receive any
       benefit under the Plan is physically or mentally
       incompetent to receive such benefit and to give a valid
       release therefore, or is a minor, and that another person
       or an institution is then maintaining or has custody of
       such person, unless claim shall have been made therefor
       by a duly appointed guardian, committee or other legal
       representative, the Administrative Committee may
       authorize payment of such benefit to such other person or
       institution and the release of such other person or
       institution shall be a valid and complete discharge for
       the payment of such benefit.

10.02  Every person before becoming entitled to any benefits
       under the Plan shall furnish the Administrative Committee
       with such information as it may require, including, but
       not limited to, proof of age relating to himself and any
       person named as a beneficiary.

10.03  The benefits under the Plan shall be payable solely from
       the Trust Fund and each Participant, Inactive Participant
       or former Participant or other person who shall claim the
       right to any payment under the Plan shall be entitled to
       look only to that fund for such payment.  No liability
       for the payment of benefits or any other payments under
       the Plan shall be imposed upon the Investment Committee,

- 121 -

the Administrative Committee, the Company, or the officers, directors or stockholders of the Company.

10.04  Except as expressly provided in the Plan, no Participant, Inactive Participant, former Participant or other person entitled to benefits may withdraw or receive any monies from the Trust Fund.

10.05  Effective July 1, 1993, any check that is not cashed within six months of its issuance will be cancelled, and the assets attributable thereto shall be used to offset plan expenses; provided, however, that a new check shall be reissued if and when the original check is presented for payment.

GR 001782

- 122 -

Section 11

Re-Employment

11.01    In the event a former Participant shall resume employment
         (within the meaning of the Department of Labor Regulation
         section 2530.203-3) by an Employing Unit in a status
         covered by the Plan after having previously terminated
         employment by Retirement or otherwise, any distribution
         or installment payment to be made to him as of a Business
         Day occurring on or after the date he resumes such
         employment shall not be made to him except upon
         subsequent application of the provisions of Section 8.

11.02    In the event of Termination of Service of an Employee and
         subsequent re-employment by an Employing Unit in a status
         covered by the Plan, Years of Service and Hours of
         Service before and after such termination shall be
         aggregated for purposes of determining eligibility.  Such
         aggregation shall occur on the date of re-employment.

11.03    Upon re-employment by an Employing Unit in a status
         covered by the Plan prior to a One-Year Break in Service
         (in the case of re-employment prior to January 1, 1985)
         or prior to 5 consecutive One-Year Breaks in Service (in
         the case of re-employment on or after January 1, 1985), a
         former Participant or Inactive Participant whose service
         was terminated prior to January 1, 1989 and before
         attaining a 100% Vested Interest in his Account may
         reinstate the dollar value (at the time of the
         forfeiture) of the shares of Grace Stock (or, if such

- 123 -

forfeiture occurred prior to May 25, 1988, the dollar
value of the shares of common stock of Grace Connecticut)
(or other amount) in the Former Fund C or the Grace
Common Stock Fund which was forfeited upon such
Termination of Service, or upon the valuation of his
Account in the case of a deferred lump sum distribution,
by repaying in cash the total dollar value of the actual
distribution (other than Rollover Contributions)
previously made to him (including the value of any Grace
Stock (or, if such distribution occurred prior to May 25,
1988, the total value of the shares of common stock of
Grace Connecticut)) distributed to him, within five years
after the date of re-employment.  In the event of such
repayment, there shall be credited to the Participant or
Inactive Participant (as of the Business Day on which the
repayment is received by the Trustee):

   (i)   an amount in the Fixed Income Fund equal to the
         dollar amount previously held in the Investment
         Funds (except the Grace Common Stock Fund) or the
         Former Funds A, B, C or D attributable to After
         Tax, Before Tax, Supplemental, or Company
         contributions pursuant to Section 4.01 repaid by
         the Participant;

  (ii)   an amount in the Grace Common Stock Fund within
         the Savings Plan equal to the dollar value (at the
         time of forfeiture) of the Grace Stock (or, if
         such forfeiture occurred prior to May 25, 1988,
         the dollar value of the shares of common stock of
         Grace Connecticut) (or other amount) forfeited by

GR 001784

- 124 -

the Participant.

11.04   In the event of re-employment by an Employing Unit in a
status covered by the Plan of a former Participant who
terminated service prior to attaining a 100% Vested
Interest in his Account, elected to receive installment
payments, and incurred a One-Year Break in Service (in
the case of re-employment prior to January 1, 1985) or 5
consecutive One-Year Breaks in Service (in the case of
re-employment on or after January 1, 1985), no
reinstatement of the dollar amount forfeited by him upon
such Breaks in Service shall be permitted and the balance
standing to his credit upon re-employment shall
constitute a separate account in which he is fully
vested.

11.05   If a Participant commences U.S. military service (in 1994
or thereafter), including service with the National
Guard, and he applies to become reemployed by the Company
within a specified time after that service ends (see
below), he will be permitted to make contributions to the
Plan to account for the period that he was in the service
("Make-Up Contributions"), which will be in addition to
the contributions that he may make under the other
provisions of the Plan. The Make-Up Contributions shall
not be in excess of the amount which the Participant
would otherwise have been permitted to make to the Plan
if he was continuously employed by the Company while he
was in the service. Any Make-Up Contributions must be
made within the period that begins on the date the
Participant commences reemployment with the Company and

- 125 -

ends 5 years later. (However, if the Participant's period of service was less than 1 2/3 years, then the period for Make-Up Contributions will commence on the date he commences reemployment but the period's length will only be 3 times the length of the period of his military service.)

In order for this provision to apply, the Participant must apply for reemployment with the Company within the period specified as follows:

| Period Of Military Service | Required Reemployment Application Date |
| --- | --- |
| Less than 31 days | The beginning of next regularly scheduled work period after military service ends |
| 31 to 180 days | Within 14 days of the date military service ended |
| More than 180 days | Within 90 days of the date military service ended |

Also, this provision shall not apply to an individual who serves in the U.S. military service for greater than 5 years.

Notwithstanding any provision of the Plan to the contrary, contributions, benefits, and service credit with respect to qualified military service will be provided in accordance with Code section 414(u).

- 126 -


## Section 12


## Administration of the Plan


12.01   A Trust Fund shall be established by a Trustee or
        Trustees appointed from time to time by the Board of
        Directors.  All assets of the Plan shall be deposited in
        the Trust Fund.  The corpus and income of the Trust Fund
        shall be used to provide benefits under the Plan and to
        defray the reasonable expenses of Plan administration and
        no part thereof shall be used for or diverted to purposes
        other than for the exclusive benefit of Participants,
        Inactive Participants and their beneficiaries, except as
        provided in Section 4.04.  Effective July 1, 1989, the
        Trustee of the Plan was appointed as the Trustee of the
        ESOP portion of the Trust Fund.


12.02   The Trustee or Trustees shall have sole authority to
        purchase or sell Grace Stock required for the purposes of
        the Plan from or to any person, including the Company,
        except that (i) no such stock shall be purchased from or
        sold to the Company for the account of the Grace Common
        Stock Fund and (ii) no commission shall be charged with
        respect to a purchase of Grace Stock from the Company for
        the account of the ESOP.  The Trustee or Trustees also
        shall take all action necessary to implement any
        investment determinations of the Investment Committee or
        of the Investment Manager(s) and shall conform to
        procedures established by the Administrative Committee
        for disbursement of funds of the Plan.  The Trustee or
        Trustees shall not be liable for any act performed while

GR 001787

- 127 -

subject to directions of the Investment Committee, the
Investment Manager(s) or the Administrative Committee
made in accordance with the terms of the Plan.

12.03  An Investment Committee (or any appropriate designee of
that Committee) shall be appointed from time to time by
the Board of Directors (or its designee) to serve at its
pleasure. The Investment Committee may authorize any
member of the Investment Committee or any agent or other
designee to execute or deliver any instrument or make any
payment on its behalf and/or to take other actions on its
behalf; and the Committee (or such member, agent or other
designee) may employ counsel and agents and such
clerical, accounting and actuarial services as any of
them may require.  A majority of the members of the
Investment Committee shall constitute a quorum for the
transaction of business, and the action of a majority of
the members present at a meeting shall constitute the
action of the Investment Committee.  In lieu thereof the
action of a majority of the members of the Investment
Committee expressed in writing without a meeting shall
constitute the action of the Investment Committee.
Effective June 14, 1995, the Investment Committee shall
be the Investment and Benefits Committee as created by
the Board of Directors as of that date.

12.04  (a)    The Investment Committee shall have the authority
and discretion to manage that portion of the assets of
the Trust Fund comprising Fixed Income Fund except that
it may appoint one or more Investment Managers (as
defined by ERISA section 3(38)) who shall have the

- 128 -

authority and discretion to manage that portion of the
assets of the Trust Fund comprising the Fixed Income
Fund.  In exercising the authority and discretion
contained in this subsection, the Investment Committee
and Investment Manager(s) shall be limited only to the
extent provided in Section 5.01 for the investment of the
Fixed Income Fund.  The Investment Committee shall also
have the authority to select and change the Investment
Funds available hereunder.  The Investment Committee
shall not retain the authority to manage the Grace Stock
Fund, to the extent that an Independent Investment
Manager has been retained to manage that Fund, in
accordance with Section 12.04(b).

(b)    The Investment Committee shall also have the
authority to appoint one or more Independent Investment
Managers who shall have the authority and discretion to
manage the Grace Stock Fund, provided that any proceeds
from Grace Stock sold from the Fund at the direction of
the Independent Investment Manager shall be allocated to
the Fixed Income Fund and the Independent Investment
Manager shall not have any authority or discretion to
manage those proceeds upon such allocation.
Notwithstanding any other provision of the Plan to the
contrary, during any such appointment, the Independent
Investment Manager shall have the following authority and
duties:

    (i)    the continuous authority and duty to
            determine the extent that the continued
            retention of shares of Grace Stock within

- 129 -

the Grace Stock Fund is not consistent with
the applicable provisions of the Employee
Retirement Income Security Act ("ERISA"),
and to take actions in this regard that it
deems appropriate; including the authority
to dispose of Grace Stock held within the
Grace Stock Fund and to close the Grace
Stock Fund to participant trading;

(ii)    the authority to direct trades of Grace
Stock through dealers or firms that it
selects; and

(iii)   the duty and authority to vote the Grace
Stock within the Grace Stock Fund in a
manner it decides is appropriate in its sole
discretion, in the event of a tender offer
(as defined in Section 17.01) or other event
that would have substantially the same
effect as a disposition of substantially all
of the assets of Grace, but only to the
extent it determines that failure to
exercise such authority would be
inconsistent with the applicable provisions
of ERISA.

The Investment Committee shall also have the authority to
amend the Trust, and enter into any other agreements it
deems necessary to effectuate an appointment of an
Independent Investment Manager for the Grace Stock Fund.
If any provision of this Plan is inconsistent with any
provision of the Trust, as amended to effectuate the

- 130 -

retention of an Independent Investment Manager, the Trust provision shall control.

12.05  Grace shall have prepared annually for the Investment Committee and the Board of Directors a report giving a summary of the assets and liabilities of the Plan and a brief account of the operation of the Plan for the preceding year, and any further information which the Investment Committee may deem advisable or which either Board of Directors may require.

12.06  The general administration of the Plan and the responsibility for carrying out its provisions (excluding any decisions as to investment and reinvestment of the Trust Fund) shall be placed in an Administrative Committee (or any appropriate designee of that Committee) consisting of not less than three persons who shall be appointed from time to time by the Board of Directors of Grace (or its designee) to serve at its pleasure.  The Administrative Committee may authorize any member of the Administrative Committee or any agent or other designee to make any payment on its behalf and/or to take other actions on its behalf; or to execute or deliver any instrument or do any act on its behalf; and may employ counsel and agents and such clerical, accounting and actuarial services as any of them may require.  Effective June 14, 1995, the Administrative Committee shall be the Investment and Benefits Committee as created by the Board of Directors as of that date.

- 131 -

12.07   The Administrative Committee shall hold meetings upon
        such notice, at such place and at such time as it may
        determine.  A majority of the members of the
        Administrative Committee shall constitute a quorum for
        the transaction of business, and the action of a majority
        of the members present at a meeting shall constitute the
        action of the Administrative Committee.  In lieu thereof,
        the action of a majority of the members of the
        Administrative Committee expressed in writing without a
        meeting shall constitute the action of the Administrative
        Committee.

12.08   Subject to the limitations of the Plan, the
        Administrative Committee from time to time shall adopt
        administrative rules and regulations and prescribe such
        processes, forms and applications as are appropriate to
        the administration of the Plan.  The Administrative
        Committee (or its designee) shall have full and exclusive
        authority to construe the terms of the Plan, to determine
        entitlement to allocations of contributions and to
        distributions of benefits to Participants, Inactive
        Participants, Beneficiaries and all other persons and to
        adjudicate all disputed claims for benefits filed under
        the Plan.  Every finding, decision and determination made
        by the Administrative Committee (or its designee) shall,
        to the full extent permitted by law, be final and binding
        upon all parties, except to the extent found by a court
        of competent jurisdiction to constitute an abuse of
        discretion.

- 132 -

12.09    The Administrative Committee shall determine the
         procedures to be followed in connection with the
         disbursement of the funds of the Plan.

12.10    The Investment Committee, the Administrative Committee
         and any Company, and any member, director, officer or
         employee thereof, shall be entitled to rely conclusively
         on all tables, valuations, certificates, opinions and
         reports which shall be furnished by any expert who shall
         be employed or engaged by Grace, the Investment Committee
         or the Administrative Committee.

12.11    The Administrative Committee (or its designee), in
         accordance with DOL Reg. §2560.503-1, has the authority
         to determine eligibility for participation and the
         amount and kind of benefits payable to any Participant,
         Spouse, or beneficiary, and interpretation of the Plan.

         (a)    Each person who claims entitlement to any right or
                benefit under the Plan, or his duly authorized
                representative (a "Claimant"), may submit a claim
                for benefits under the Plan.  All claims shall be
                submitted in writing to the Administrative Committee
                and shall be accompanied by such information and
                documentation as the Administrative Committee
                determines is required to make a ruling on the
                claim.  Upon receipt of a claim hereunder, the
                Administrative Committee shall consider the claim
                and shall render a decision and communicate the same
                to the Claimant:

GR 001793

- 133 -

    (1)   the   specific   reason(s)   for   the   adverse determination;

    (2)   reference to the specific Plan provisions on which the determination is based;

    (3)   a description of any additional material or information necessary for the Claimant to perfect the claim and an explanation of why such material or information is necessary; and

    (4)   a description of the Plan's appeal procedures and the time limits applicable to such procedures, including a statement of the Claimant's right to bring a civil action under Section 502(a) of ERISA following an adverse benefit determination on review.

(b)   <u>Appeals Procedure</u>.  When there is an adverse benefit determination of a claim, the Claimant or duly authorized representative shall have the right to file an appeal with the Administrative Committee as provided in ERISA §503 and DOL Reg. §2560.503-1.

GR 001794

- 134 -

## Section 13

Certain Rights and Obligations

13.01   It is the intention that the Plan continue and that
        contributions be made regularly each year, but all
        contributions under the Plan shall be voluntary, and not
        a legal obligation.

13.02   The Plan may be terminated at any time by the Board of
        Directors.  Upon termination, partial termination or
        complete discontinuance of contributions, the rights of
        all Participants and Inactive Participants (as to whom
        the Plan has terminated in the case of a partial
        termination) to the amounts credited to their Accounts
        shall be fully vested and nonforfeitable.

13.03   (a)   In the event of the divestment (as defined
              hereafter) of a Company or an Employing Unit (and,
              consequently, the employees of such Company or
              Employing Unit), the authorization of such Company
              or Employing Unit to participate in the Plan shall
              be automatically withdrawn.  For purposes of
              Section 13.03, a divestment of a Company or an
              Employing Unit occurs when (1) substantially all
              the assets of such Company or such Employing Unit
              are sold or transferred to an entity which is not
              treated as the same "employer" as Grace under
              either section 414(b) or (c) of the Code, or (2) a
              Company is merged into an entity which is not
              treated as the same "employer" as Grace under

GR 001795

- 135 -

either section 414(b) or (c) of the Code, or (3) all or part of the stock of (or other equity interest in) a Company is sold or transferred with the consequence that the Company is no longer treated as the same "employer" as Grace under either section 414(b) or (c) of the Code.  In the event of such a divestment, the Employees of such Company or Employing Unit shall cease to be Participants in the Plan and shall be deemed to have incurred a Termination of Service as of the date of such divestment.

(b)    Any Company may, with the consent of the Board of Directors, withdraw from the Plan at any time, and the Board of Directors may in its discretion at any time withdraw the authorization of any Company or any Employing Unit to participate in the Plan.  In the event of such a withdrawal, the Employees of such Company or Employing Unit shall cease to be eligible to participate in the Plan as of the date of the withdrawal.

13.04   In the case of any merger or consolidation with, or transfer of assets or liabilities of the Plan to any other plan, each Participant will be entitled to receive (if the Plan then terminated) a benefit immediately after the merger, consolidation, or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before such merger, consolidation, or transfer (if the Plan had then terminated).

GR 001796

- 136 -

13.05    The establishment of the Plan shall not be construed as
        conferring any legal rights upon an Employee or any
        person for a continuation of employment, nor shall it
        interfere with the rights of the Company to discharge any
        Employee and to treat him without regard to the effect
        which such treatment might have upon him under the
        provisions of the Plan.

GR 001797

- 137 -

## Section 14

Amendments

14.01   Grace reserves the right at any time and from time to
time by action of its Board of Directors or its designee
to modify or amend in whole or in part any or all of the
provisions of the Plan; provided, that no modification or
amendment may be made which will deprive any Participant,
Inactive Participant, former Participant or other person
receiving a benefit, of any benefit under the Plan to
which he would otherwise be entitled by reason of the
accumulated funds held under the Plan on his account at
that time, and provided that no such modification or
amendment shall make it possible for any part of the
funds of the Plan to be used for, or diverted to,
purposes other than the exclusive benefit of
Participants, Inactive Participants, former Participants
and other persons entitled to benefits under the Plan
(except as provided in Section 4.04).  Notwithstanding
the foregoing, any modification or amendment of the Plan
which is deemed necessary or appropriate to bring the
plan into conformity with the Code or regulations
thereunder may be made (retroactively if necessary) in
order to qualify the Plan under the Code and regulations
thereunder.

- 138 -


## Section 15


Non-Alienation of Benefits

15.01   No benefit under the Plan shall be subject in any manner
        to anticipation, alienation, sale, transfer, assignment,
        pledge, encumbrance or charge, and any attempt so to
        anticipate, alienate, sell, transfer, assign, pledge,
        encumber or charge the same shall be void; nor shall any
        such benefit be in any manner liable for or subject to
        the debts, contracts, liabilities, engagements or torts
        of the person entitled to such benefit.  Notwithstanding
        the foregoing, the Plan shall comply with a valid Federal
        tax levy which is enforced against a Participant's or
        Inactive Participant's Account under section 6331 of the
        Code and shall not be liable in any manner to any person
        for effectuating such compliance.

15.02   If any Participant, Inactive Participant, former
        Participant or any other person entitled to benefits
        under the Plan becomes bankrupt or makes an assignment
        for the benefit of creditors, or in any way suffers a
        lien or judgment against his personal assets to exist or
        attempts to anticipate, alienate, sell, transfer, assign,
        pledge, encumber or charge any benefit under the Plan,
        then such benefit shall, in the discretion of the
        Administrative Committee, cease and terminate, and in
        that event the Administrative Committee may hold or apply
        the same or any part thereof to or for the benefit of
        such Participant, Inactive Participant or former
        Participant, his spouse, descendants (including any

GR 001799

- 139 -

person adopted by such person or his descendants, and
descendants of such adopted persons), other dependents,
other persons or any of them, in such manner and in such
proportion as the Administrative Committee may think
proper.

15.03    Notwithstanding the provisions of Section 15.01 and
15.02, the Administrative Committee shall comply with the
provisions of any qualified domestic relations order
described in section 414(p) of the Code and shall
establish a procedure to determine the qualified status
of domestic relations orders and to administer distribu-
tions under qualified domestic relations orders.
Specifically, in the event that a qualified domestic
relations order requires the immediate distribution of
any portion of a Participant's or Inactive Participant's
Account to an alternate payee prior to the earlier of the
date on which the Participant or Inactive Participant
incurs a Termination of Service or the date on which he
attains the "earliest retirement age," as defined in
section 414(p)(4)(B) of the Code, the Administrative
Committee shall comply with such order.  Furthermore, in
the event that a qualified domestic relations order
requires the division of a Participant's or Inactive
Participant's Account for the benefit of an alternate
payee, a separate Account shall be established for such
alternate payee and such alternate payee shall thereafter
be subject to all of the provisions of the Plan including
the provisions of Sections 5.04 and 5.07 regarding
transfers among the Plan's investment funds and Section 9
regarding withdrawals, as if the alternate payee were an

GR 001800

- 140 -

Inactive Participant, except that such alternate payee
shall not be eligible to receive a distribution under
Section 8 of the Plan until the earlier of the date on
which the Participant or Inactive Participant incurs a
Termination or Service or the date on which he attains
the "earliest retirement age," as defined in section
414(p)(4)(B) of the Code.

GR 001801

- 141 -

## Section 16

### Top-Heavy Provisions

16.01 If the Plan becomes top-heavy (as defined in Section 416(g) of the Code) with respect to any Plan Year on account of the accrued benefits of key employees (as defined in section 416(i) of the Code), then the provisions set forth in Section 16.06, 16.07, 16.08 and 16.09 shall become applicable.

16.02 The Plan is required to be aggregated for purposes of Section 16 with (i) each other plan maintained by the Company in which a key employee participates, and (ii) each other plan maintained by the Company which enables any plan in which a key employee participates to meet the requirements of section 401(a)(4) or section 410 of the Code.

16.03 As elected by the Company, the Plan is permitted to be aggregated for purposes of Section 16 with one or more other plans maintained by the Company which satisfy the requirements of section 401(a)(4) and section 410 of the Code when considered together with the Plan and those other plans required to be aggregated under Section 16.02.

16.04 The determination date with respect to a Plan Year is (i) the last day of the preceding Plan Year, or (ii) in the case of the first Plan Year, the last day of such Plan Year.

- 142 -

16.05   For purposes of Section 16, the present value of an
        accrued benefit is the sum of the account balance as of
        the most recent valuation date occurring within a
        12-month period ending on the determination date and an
        adjustment for contributions due as of the determination
        date as described in the section 416 regulations.

16.06   If the Plan is deemed top-heavy with respect to a Plan
        Year, the following provisions shall apply to Company
        contributions (excluding salary reduction contributions
        prior to January 1, 1985, but including such
        contributions on and after January 1, 1985) under the
        Plan in respect of such a Plan Year for a Participant who
        is not a key employee and who is employed by the Company
        on the last day of the Plan Year and for an Employee of
        an Employing Unit who is not a key employee, is eligible
        to participate in the Plan, and has elected not to
        participate in the Plan:  such Company contributions (and
        forfeitures) shall be equal to the greater of (i) the
        Company contributions (and forfeitures) which would
        otherwise be made without regard to Section 16, or (ii)
        3% of his compensation from the Company paid during such
        Plan Year (or lesser percentage contributed for a key
        employee determined under the section 416 regulations).
        For Plan Years beginning on or after January 1, 2002,
        employer matching contributions shall be taken into
        account for purposes of satisfying the minimum
        contribution requirements of Code section 416(c)(2) and
        the Plan.  The preceding sentence shall apply with
        respect to matching contributions under the Plan or if

GR  001803

- 143 -

the Plan provides that a minimum contribution requirement shall be met in another plan, such other Plan.  Employer matching contributions that are used to satisfy the minimum contribution requirements shall be treated as matching contributions for purposes of the actual contribution percentage test and other requirements of Code section 401(m).  If such a Participant is also a participant in a defined benefit plan maintained by the Company which is also top-heavy, Section 16.06 shall not apply, and instead the top-heavy provisions of such defined benefit plan shall apply to him.

16.07    For Plan Years beginning before 1989, if the Plan is deemed top-heavy with respect to a Plan Year, compensation taken into account under the Plan shall not exceed the amount determined under section 416(d) of the Code; provided, however, that no benefit accrued prior to a Plan Year in which the Plan was top-heavy shall be reduced by virtue of the limitation herein.

16.08    If the Plan is deemed top-heavy with respect to a Plan Year beginning prior to January 1, 2000, the denominators of the defined benefit and defined contribution fractions applicable with respect to a Participant under section 415(e) of the Code shall be determined by substituting the factor "1.0" for the factor "1.25" therein, and by substituting the amount "$41,500" for the amount "$51,875" in the denominator of the defined contribution fraction in the event that the transition fraction under section 415(e)(6) of the Code is used.  Notwithstanding the foregoing, the accrued benefit of a Participant as of

- 144 -

the end of the Plan Year prior to the Plan Year in which the Plan is deemed top-heavy shall not be reduced on account of Section 16.08.

16.09    For purposes of Section 16, the Company includes any other corporation, trade, or business treated as the same "employer" as the Company under section 414(b),(c), or (m) of the Code.

GR 001805

- 145 -

## Section 17

### Tender Offers

17.01   The provisions of this Section 17 shall apply in the
event that any entity, either alone or in conjunction
with others, makes a tender or exchange offer for, a
request or invitation for tenders of, or otherwise offers
to purchase or solicits offers to sell Grace Stock, which
offer, request, invitation or solicitation is made to
holders of Grace Stock generally (herein jointly and
severally referred to as a "tender offer"); except to the
extent that the provisions of Section 12.04(b) are
applicable to the tender offer.

17.02   The Trustee may not take any action in response to a
tender offer except as otherwise provided in this Section
17.  The Trustee shall promptly furnish to each
Participant and Inactive Participant who has shares of
Grace Stock credited to his Account notice of any tender
offer, including instructions as to how the Participant
or Inactive Participant is to give directions to the
Trustee in response to such tender offer.  Each
Participant and Inactive Participant may, at any time and
from time to time during the pendency of a tender offer,
(i) direct the Trustee to sell, offer to sell, exchange
or otherwise dispose of all or any portion of the Grace
Stock credited to such Participant's or Inactive
Participant's Account or (ii) withdraw or revoke any such
direction, in accordance with the terms of such tender
offer and the provisions of this Section 17; provided,

GR 001806

- 146 -

however, that such directions from any individual
Participant or Inactive Participant shall be confidential
and shall not be divulged by the Trustee to anyone,
including the Company or any director, officer, employee
or agent of the Company, it being the intent of this
provision of this Section 17.02 to ensure that the
Company (and its directors, officers, employees and
agents) cannot determine the direction given by any
Participant or Inactive Participant.  Such directions
shall be in such form and shall be filed in such manner
and at such time as the Trustee may reasonably prescribe
in accordance with the terms of such tender offer.

17.03  The Trustee shall, in the manner and within the time
prescribed by the terms of the tender offer, tender,
sell, offer to sell, submit for exchange or otherwise
dispose of the Grace Stock credited to Participant or
Inactive Participant Accounts in accordance with the
directions given (and not withdrawn or revoked) under
Section 17.02.  The proceeds of a disposition directed by
a Participant or Inactive Participant from his Account
under this Section 17 shall continue to be held in his
Account and be governed by the provisions of Section
17.05 and other applicable provisions of the Plan.  Such
proceeds may, in the discretion of the Trustee,
constitute one or more separate investment funds under
the Plan governed, nevertheless, by the provisions of
Section 17.05 and other applicable provisions of the
Plan.

GR 001807

- 147 -

17.04    To the extent to which a Participant or Inactive
Participant does not direct the Trustee, or issues
invalid directions to the Trustee, pursuant to Section
17.02, such Participant or Inactive Participant shall be
deemed to have directed the Trustee that such shares
remain invested in Grace Stock subject to all provisions
of the Plan.

17.05    Grace may direct the substitution of new employer
securities for Grace Stock or for the proceeds of any
disposition of Grace Stock to the extent provided in the
Plan.  Pending the substitution of new employer
securities or the termination of the Plan and Trust, the
Trust Fund may be invested in such securities as Grace
(or other fiduciary identified by Grace for such purpose)
may from time to time direct; provided, however, in the
absence of any direction from Grace or other fiduciary,
the Trustee may invest the cash proceeds in short-term
securities issued by the United States of America or any
agency or instrumentality thereof or any other
investments of a short-term nature, including corporate
obligations or participations therein and interim
collective or common investment funds.

17.06    In the case of Grace Stock held within the Trust Fund
that has not been credited to Participant or Inactive
Participant Accounts, the Trustee shall, in the manner
and within the time prescribed by the terms of the tender
offer, tender, sell, offer to sell, submit for exchange
or otherwise dispose of only that number of shares of
such stock that bears the same ratio to the total number

GR 001808

- 148 -

of such shares as the number of shares credited to
Participant and Inactive Participant Accounts for which
the Trustee has received valid directions (which have not
been withdrawn or revoked) from Participants and Inactive
Participants pursuant to Section 17.02 bears to the total
number of shares credited to Participant and Inactive
Participant Accounts.  The proceeds of a disposition of
Grace Stock made under this Section 17.06 pursuant to a
tender offer shall be held by the Trustee subject to the
provisions of the trust instrument, the Plan and any
applicable loan agreement.

GR  001809

- 149 -

## Section 18

Loans

18.01   A Participant may apply, pursuant to the procedure
        established in accordance with Section 18.04 for a loan
        from his Account.  Loans shall be made available to all
        Participants on a reasonably equivalent basis, subject to
        the following:

        (1)    Each loan shall be evidenced by a negotiable
               promissory note;

        (2)    Each loan shall bear a reasonable rate of interest;

        (3)    Each loan shall be adequately secured; provided that
               no loan may be secured, in whole or in part, by
               property other than the Participant's Account;

        (4)    No loan to a Participant shall exceed the value of
               the vested Account balance of the Participant at the
               time the loan is made;

        (5)    No loan to any Participant can be made to the extent
               that such loan when added to the outstanding balance
               of all other loans to the Participant would exceed
               the lesser of (a) $50,000 reduced by the excess, if
               any, of the highest outstanding balance of loans
               during the one-year period ending on the day before
               the loan is made, over the outstanding balance of
               loans from the Plan on the date the loan is made; or

- 150 -

(b) one-half the present value of the Participant's
nonforfeitable accrued benefit under the Plan or, if
greater, the total accrued benefit up to $10,000;
and for purposes of this clause (5), all loans from
all plans qualified under Code section 401(a) of the
Company or an affiliate of the Company shall be
aggregated;

(6)    Each loan must, by its terms, require that repayment
of principal and interest be amortized in level
payments, not less frequently than quarterly, over a
period not extending beyond five years from the date
of the loan; provided that the repayment term may be
extended to a period not exceeding 20 years if the
loan is used to acquire a dwelling unit which within
a reasonable time (determined at the time the loan
is made) will be used as the principal residence of
the Participant; and

(7)    No loan, shall be made available to "highly
compensated employees" (as defined by Code section
414(q) and the regulations thereunder) in an amount
greater than the amount made available to other
Employees.

- 151 -

18.02   (1)   If a Participant requests a loan, the funds to be
              loaned shall be taken from the accounts, and the
              Investment Funds, in the order specified below:

| | |
|---|---|
| 1.  before-tax savings account | 1.  Fidelity Contrafund |
| 2.  Company contribution account | 2.  Fidelity OTC Portfolio |
| 3.  after-tax savings made after December 31, 1986 and related earnings | 3.  Fidelity Blue Chip Growth Fund |
| 4.  after-tax savings made before January 1, 1987 and related earnings | 4.  Fidelity Growth & Income Portfolio |
| 5.  rollover account | 5.  Fidelity Balanced Fund |
| 6.  supplemental account | 6.  Fixed Income Fund |
| | 7.  ADS Fund |
| | 8.  Grace Stock Fund |
| | 9.  Company Contribution Fund |

        (2)   Loan repayments (including interest) shall be
              credited to the Participant's Account in the
              following order:

              1.   supplemental account
              2.   rollover account
              3.   after-tax savings made before January 1, 1987
              4.   after-tax savings made after December 31, 1986

GR 001812

- 152 -

    5.  Company contribution account

    6.  before-tax savings account

18.03  The promissory note executed by the Participant shall be held by the Trustee as an asset of the Account.  Any loss caused by default on a Participant's loan obligation shall be borne solely by that Account.  Anything herein to the contrary notwithstanding, in the event of such a default, foreclosure on the promissory note and attachment of security will not occur until a distributable event occurs under the Plan with respect to the Participant involved.

18.04  The Administrative Committee shall prepare a written document setting forth the following information regarding loans from the Plan and such other information as the Administrative Committee deems relevant:

    (1)    The identity of the person or positions authorized to administer the loan program;

    (2)    A procedure for applying for loans;

    (3)    The basis on which loans will be approved or denied;

    (4)    Limitations (if any) on the types and amount of loans offered;

    (5)    The procedure under the program for determining a reasonable rate of interest;

    (6)    The events constituting default and the steps that

GR  001813

- 153 -

will be taken to preserve Plan assets in the event of such default; and

(7)    The minimum loan amount.

The provisions of that document are incorporated herein by this reference; provided, however, that if any provision of that document conflicts with any other provision of the Plan, the other Plan provision shall control.

18.05    Following a Participant's death, the provisions of this Section 18 shall apply to the Participant's beneficiary as if the beneficiary were the Participant, but only if that beneficiary is a "party in interest" (as defined in section 3(14) of ERISA).

18.06    The provisions of this Section 18 shall apply to a former Participant as if that former Participant were a Participant, but only if that former Participant is a "party in interest" (as defined in section 3(14) of ERISA).

GR 001814

EXHIBIT A


Following is a list of transactions suspended during the Transition Period:

1)   Transfers of existing Account balances between Funds (and, if applicable, the ESOP);

2)   Changes with regard to the allocation of contributions among the Funds;

3)   Distributions of lump-sum distributions; and

4)   Distributions of installment payments.


The following provisions are effective for the period after the Transition Period and prior to the commencement of the Conversion Period:

The sum of Before Tax Contributions and After Tax Contributions to a Participant's Savings Plan Account (and, separately the Rollover Contributions to a Participant's or Inactive Participant's Savings Plan Account) shall initially be invested in whole or in part (in multiples of 5%) in Former Fund A, Former Fund B, Former Fund C, or Former Fund D within the Savings Plan and, in the case of Rollover Contributions only, in the ESOP portion of the Trust Fund, pursuant to the election of the Participant.  Such election shall continue until changed by the Participant.

GR 001815

A Participant may change any election pursuant to this paragraph on any Business Day to another election permitted under this paragraph effective on the Business Day on which the Participant notifies the Recordkeeper of such change by telephonic instruction, if such notice is received by the Recordkeeper before the latest time of day agreed to by Grace and the Recordkeeper for same day processing; otherwise, such change will be effective on the immediately succeeding Business Day.

A Participant, Inactive Participant, or a former Participant who has incurred a Termination of Service may, on any Business Day, elect to transfer all or a portion (in multiples of 5%, or in whole dollar amounts) of the existing balance of his Account in Former Fund A, Former Fund B, Former Fund C, or Former Fund D within the Savings Plan, among any of the other Former Funds within the Savings Plan attributable to the following categories of contributions separately: (i) Before Tax Contributions and After Tax Contributions, in the aggregate, and (ii) Supplemental Contributions and Rollover Contributions, in the aggregate. Such transfer shall occur on the Business Day on which the Participant, Inactive Participant, or former Participant notifies the Recordkeeper of such transfer election by telephonic instruction, if such notice is received by the

Recordkeeper before the latest time of day agreed to by Grace and the Recordkeeper for same day processing; otherwise, such change will be effective on the immediately succeeding Business Day.

A Participant or Inactive Participant who has attained age 50, may, one time during each Plan Year, elect to transfer to Former Funds A, B, C and/or D within the Savings Plan all or a portion (in multiples of 5% or in whole dollar amounts) of his Account Balance invested in the ESOP and Former Fund C, in the aggregate, which is attributable to Company contributions pursuant to Section 4.01 (as effective after the Transition Period but before the Conversion Period), and/or to transfer all or a portion (in multiples of 5% or in whole dollar amounts) of his Account Balance invested in Former Fund A, Former Fund B and/or Former Fund D within the Savings Plan as a result of a previous investment transfer from the ESOP and Former Fund C to any of the other Former Funds within the Savings Plan (except Former Fund C) and/or to the ESOP. Any such transfer will occur on the Business Day on which the Participant notifies the Recordkeeper of such transfer election by telephonic instruction, if such notice is received by the Recordkeeper before the latest time of day agreed to by Grace and the Recordkeeper for same day processing; otherwise, such change will be effective on the immediately succeeding Business Day. The foregoing

GR 001817

provisions of this paragraph shall also apply to a former Participant who has incurred a Termination of Service, regardless of attained age, except that any such former Participant may make investment transfer elections on any Business Day without regard to the once per year limitation set forth above.

GR 001818

EXHIBIT B

Following is a list of transactions suspended during the
Conversion Period:

1)    Transfers of existing Account balances between Former
      Funds and/or Investment Funds (and/or, if applicable,
      the ESOP);

2)    Distributions of lump-sum distributions; and

3)    Distributions of withdrawals.

GR 001819