Master Trust Agreement

Between

W.R. Grace & Co.

And

Fidelity Management Trust Company

---

## W.R. GRACE & CO. SAVINGS PLAN

## MASTER TRUST

---

Dated as of July 1, 1993

GR  001183

## TABLE OF CONTENTS

**Section**                                                                                        **Page**

1   Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

2   Trust . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

3   Exclusive Benefit and Reversion of
     Sponsor Contributions  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

4   Disbursements  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6
     (a) Directions from Administrator
     (b) Limitations

5   Investment of Trust  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6
     (a) Selection of Investment Options
     (b) Available Investment Options
     (c) Participant Direction
     (d) Mutual Funds
     (e) Sponsor Stock
     (f) Notes
     (g) Investment Committee Selected Investments
     (h) Reliance of Trustee Directions
     (i) Trustee Powers

6   Recordkeeping and Administrative Services to Be Performed . . . .   21
     (a) General
     (b) Accounts
     (c) Inspection and Audit
     (d) Effect of Plan Amendment
     (e) Returns, Reports and Information
     (f) Allocation of Plan Interests

7   Compensation and Expenses  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

8   Directions and Indemnification  . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24
     (a) Identity of Administrator and Named Fiduciary
     (b) Directions from Sponsor or Administrator
     (c) Directions from Investment Committee
     (d) Co-Fiduciary Liability
     (e) Indemnification
     (f) Survival

9   Resignation or Removal of Trustee  . . . . . . . . . . . . . . . . . . . . . . . . . .   26
     (a) Resignation
     (b) Removal

10  Successor Trustee  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   26
     (a) Appointment
     (b) Acceptance
     (c) Corporate Action

11  Termination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   27

GR  001184

**TABLE OF CONTENTS**
(Continued)

| Section | | Page |
|---|---|---|
| 12 | Resignation, Removal, and Termination Notices . . . . . . . . . . . . . . . . | 27 |
| 13 | Duration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 28 |
| 14 | Amendment or Modification . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 28 |
| 15 | General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 28 |

(a) Performance by Trustee, its Agents or Affiliates
(b) Delegation by Employer
(c) Entire Agreement
(d) Waiver
(e) Successors and Assigns
(f) Partial Invalidity
(g) Section Headings

| 16 | Governing Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 29 |

(a) Massachusetts Law Controls
(b) Trust Agreement Controls

| 17 | Plan Qualification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 30 |

## Schedules

A.  Recordkeeping and Administrative Services
B.  Fee Schedule
C.  Investment Options
D.  Sponsor's Authorization Letter
E.  Named Fiduciary's Authorization Letter
F.  IRS Determination Letter or Opinion of Counsel
G.  Existing GICs
H.  Telephone Exchange Procedures
I.  Plan Designation Form
J.  Fixed Income Fund Operating Procedures

GR 001185

TRUST AGREEMENT, dated as of the first day of July, 1993, between W.R. GRACE & CO., a New York corporation, having an office at One Town Center Road, Boca Raton, FL 33489 (the "Sponsor"), and FIDELITY MANAGEMENT TRUST COMPANY, a Massachusetts trust company, having an office at 82 Devonshire Street, Boston, Massachusetts 02109 (the "Trustee").

## WITNESSETH:

WHEREAS, the Sponsor is the sponsor of the W.R. Grace & Co. Salaried Employees Savings and Investment Plan, the W.R. Grace & Co. Hourly Employees Savings and Investment Plan, the employee stock ownership plans within those plans, and the Grace Energy Corporation Employees Savings and Investment Plan; and

WHEREAS, certain affiliates and subsidiaries of the Sponsor maintain, or may in the future maintain, qualified defined contribution plans for the benefit of their eligible employees; and

WHEREAS, the Sponsor desires to establish a single trust to hold all of the assets of the Plans and of such other tax-qualified defined contribution plans maintained by the Sponsor, or any of its subsidiaries or affiliates, as are designated by the Sponsor as being eligible to participate therein; and

WHEREAS, the Trustee is willing to hold and invest the aforesaid plan assets in trust pursuant to the provisions of this Trust Agreement, which trust shall constitute a continuation, by means of an amendment and restatement, of each of the prior trusts from which plan assets are transferred to the Trustee; and

1

WHEREAS, the Trustee is willing to hold and invest the aforesaid plan assets in trust among several investment options selected by the Investment Committee; and

WHEREAS, the Trustee is willing to perform recordkeeping and administrative services for the Plans if the services are purely ministerial in nature and are provided within a framework of plan provisions, guidelines and interpretations conveyed in writing to the Trustee by the Administrator.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual covenants and agreements set forth below, the Sponsor and the Trustee agree as follows:

Section 1. <u>Definitions</u>. The following terms as used in this Trust Agreement have the meaning indicated unless the context clearly requires otherwise:

(a)  "Administrative Committee" shall mean the committee designated by the Sponsor, and as constituted from time to time, which has the responsibility for administering each Plan and shall be deemed for purposes of ERISA to be the plan administrator and the named fiduciary for plan administration.

(b)  "Administrator" shall mean the Administrative Committee.

(c)  "Agreement" shall mean this Trust Agreement, as the same may be amended and in effect from time to time.

(d)  "Code" shall mean the Internal Revenue Code of 1986, as it has been or may be amended from time to time.

(e)  "Employer" shall mean the Sponsor and each subsidiary or affiliate of the Sponsor having employees who are Participants in a Plan.

(f)  "ERISA" shall mean the Employee Retirement Income Security Act of 1974, as it has been or may be amended from time to time.

2

GR 001187

(g)    "Existing GICs" shall mean each guaranteed investment contract to be held in the Trust that was entered into by the Investment Committee prior to the effective date of this Agreement and specifically identified on Schedule "G" attached hereto.

(h)    "FBSI" shall mean Fidelity Brokerage Services, Inc., an affiliate of the Trustee.

(i)    "GICs" shall mean guaranteed investment contracts.

(j)    "Investment Committee" shall mean the committee, designated by the Sponsor, which has the responsibility (i) for investing the assets of the Plans and, with respect to Plans where Participants have the right to direct the assets allocated to their accounts among investment options, for selecting those investment options, (ii) for assuring that the Plans do not violate any provision of ERISA limiting the acquisition or holding of Sponsor Stock or other property of the Sponsor, (iii) for the appointment and removal of investment advisors, if any, and (iv) for other matters described herein; and the Investment Committee shall be deemed for purposes of ERISA to be the named fiduciary for Plan investments.

(k)    "Mutual Fund" shall mean any investment company advised by Fidelity Management & Research Company or any of its affiliates.

(l)    "Participant" shall mean, with respect to a Plan, any employee (or former employee) with an account under such Plan, which has not yet been fully distributed and/or forfeited, and shall include the designated beneficiary(ies) with respect to the account of any deceased employee (or deceased former employee) until such account has been fully distributed and/or forfeited.

(m)    "Plans" shall mean the W.R. Grace & Co. Salaried Employees Savings and Investment Plan, the W.R. Grace & Co. Hourly Employees Savings and Investment Plan, the employee stock ownership plans within those plans, and the Grace Energy Corporation Employees Savings and Investment Plan, and such other tax-qualified, defined contribution plans which are maintained by the Sponsor or any of its subsidiaries or affiliates for the benefit of their eligible employees and for which the Trust has been designated as the funding medium by the Sponsor in writing to the Trustee, such designation to be in

3

the form of the Plan Designation Form attached hereto as Schedule "I". Each reference to "a Plan" or "the Plan" in this Agreement shall mean and include the Plan or Plans to which the particular provision of this Agreement is being applied or all Plans, as the context may require.

(n) "Reporting Date" shall mean the last day of each calendar quarter during the term of this Agreement, the date as of which the Trustee resigns or is removed pursuant to Section 9 and the date as of which this Agreement terminates pursuant to Section 11.

(o) "Sponsor" shall mean W.R. Grace & Co., a New York corporation, or any successor to all or substantially all of its businesses which, by agreement, operation of law or otherwise, assumes the responsibility of the Sponsor under this Agreement.

(p) "Sponsor Stock" shall mean the common stock of the Sponsor or such other publicly-traded stock of the Sponsor, or any of its affiliates, which meets the requirements of section 407(d)(5) of ERISA with respect to the Plan.

(q) "Trust" shall mean the W.R. Grace & Co. Savings Plan Master Trust, being the trust established by the Sponsor and the Trustee pursuant to the provisions of this Agreement.

(r) "Trustee" shall mean Fidelity Management Trust Company, a Massachusetts trust company and any successor to all or substantially all of its trust business as described in Section 10(c). The term Trustee shall also include any successor trustee appointed pursuant to Section 10 to the extent such successor agrees to serve as Trustee under this Agreement.

Section 2. Trust. The Sponsor hereby establishes the Trust, with the Trustee. The Trust shall consist of an initial contribution of money or other property acceptable to the Trustee in its sole discretion, made by the Sponsor or transferred from a previous trustee under the Plans, such additional sums of money and Sponsor Stock as shall from time to time be delivered to the Trustee under a Plan, all investments made therewith and

4

GR 001189

proceeds thereof, and all earnings and profits thereon, less the payments that are made by the Trustee as provided herein, without distinction between principal and income. The Trustee hereby accepts the Trust on the terms and conditions set forth in this Agreement. In accepting this Trust, the Trustee shall be accountable for the assets received by it, subject to the terms and conditions of this Agreement.

Section 3. Exclusive Benefit and Reversion of Sponsor Contributions.

(a)    Except as provided in this Section 3, no part of the Trust allocable to a Plan may be used for, or diverted to, purposes other than the exclusive benefit of the Participants in the Plans or their beneficiaries and defraying reasonable administrative expenses of administering the Plans and the Trust, prior to the satisfaction of all liabilities with respect to the Participants and their beneficiaries.

(b)    The Trustee shall return the amounts as provided in this Section 3 upon notification from the Sponsor or the Administrative Committee that the event or events giving rise to such a return of contribution has occurred:

(i)    In the case of contributions made by the Sponsor prior to the receipt of an initial favorable determination letter from the Internal Revenue Service ("IRS") with respect to the Plan, those contributions and all earnings thereon within one year after the IRS refuses in writing to issue such a letter.

(ii)    In the case of any portion of a contribution made by the Sponsor by mistake of fact, that portion of the contribution within one year after the payment of that portion of the contribution.

(iii) In the case of any portion of a contribution made by the Sponsor and disallowed by the IRS as a deduction under section 404 of the Internal Revenue Code of

5

1986, that portion of the contribution within one year after the IRS disallows the deduction in writing.

(c)     Earnings attributable to the contributions returnable under sub-paragraphs (ii) or (iii) shall not be returned to the Sponsor, and any losses attributable to those contributions shall reduce the amount returned.

Section 4. Disbursements.

(a)     Directions from Administrative Committee. The Trustee shall make disbursements in the amounts and in the manner that the Administrative Committee or its designee directs from time to time in writing. The Trustee shall have no responsibility to ascertain whether any direction received by the Trustee from the Administrative Committee or its designee is in compliance with the terms of the Plan or of any applicable law or the effect of any direction for tax purposes or otherwise; nor shall the Trustee have any responsibility to see to the application of any disbursement.

(b)     Limitations. The Trustee shall not be required to make any disbursement under a Plan in excess of the net realizable value of the assets of the Trust allocable to such Plan at the time of the disbursement. The Trustee shall not be required to make any disbursement in cash unless the Administrative Committee or its designee has provided a written direction as to the assets to be converted to cash for the purpose of making the disbursement.

Section 5. Investment of Trust.

(a)     Selection of Investment Options. The Trustee shall have no responsibility for the selection of investment options under the Trust and shall not render investment advice to any person in connection with the selection of such options.

(b)     Available Investment Options. The Investment Committee shall direct the Trustee regarding: (i) the investment of assets of the Trust during the the transfer of Plan

6

GR 001191

assets to the Trust and the transfer of Participant records from a prior recordkeeper to the Trust ("Participant recordkeeping reconciliation period"), (ii) the investment options that will be available to accept Participant directed investment allocations with respect to a Participant's Plan account, with respect to Plans that provide for Participant investment direction and (iii) the investment of the assets of Plans that do not permit Participant direction, subject to the following restrictions regarding the investments available with respect to the assets of the Trust.

The Investment Committee may select only the following as investments or investment options: (i) Mutual Funds, (ii) Sponsor Stock, (iii) notes evidencing loans to Participants in accordance with the terms of the applicable Plan, (iv) GICs chosen by the Investment Committee, (v) Existing GICs, and (vi) collective investment funds maintained by the Trustee for qualified plans; provided, however, that the Investment Committee hereby directs the Trustee to hold such Existing GICs and GICs chosen by the Investment Committee until the Investment Committee directs otherwise, it being expressly understood that such direction is given in accordance with section 403(a) of ERISA; and provided, further, that the Trustee shall be considered a fiduciary with investment discretion only with respect to Plan assets that are invested in collective investment funds maintained by the Trustee for qualified plans. The investment options initially selected by the Investment Committee are identified on Schedules "A" and "C" attached hereto. The Investment Committee may add additional investment options upon mutual amendment of this Trust Agreement and the Schedules thereto to reflect such additions.

(c)     Participant Direction. Each Participant shall direct the Trustee to invest the assets of his Plan account in one or more of the available investment options, in accordance with the provisions of the applicable Plan, with respect to those Plans that provide for participant direction. Such directions may be made by Participants by the telephone exchange system maintained for such purposes by the Trustee or its agent, in accordance with written Telephone Exchange Guidelines attached hereto as Schedule "H".

7

Any directions made by a Participant using the telephone exchange system shall be treated in the same manner as a direction made in writing by the Investment Committee for purposes of Section 8 hereof; provided that the Trustee shall indemnify the Sponsor, the Administrative Committee and the Investment Committee pursuant to Section 8(e) with respect to the proper execution of such directions. In the event that the Trustee fails to receive a proper direction, the assets shall be invested in the investment option set forth for such purpose on Schedule "C", until the Trustee receives a proper direction.

(d)  <u>Mutual Funds</u>. The Sponsor hereby acknowledges that it has received from the Trustee a copy of the prospectus for each Mutual Fund selected by the Investment Committee as a Plan investment option. Trust investments in Mutual Funds shall be subject to the following limitations:

(i)  <u>Execution of Purchases and Sales</u>. Purchases and sales of Mutual Funds (other than for exchanges) shall be made on the date on which the Trustee receives from the Sponsor in good order all information and documentation necessary to accurately effect such purchases and sales (or in the case of a purchase, the subsequent date on which the Trustee has received a wire transfer of funds necessary to make such purchase). Exchanges of Mutual Funds shall be made in accordance with the Telephone Exchange Guidelines attached hereto as Schedule "H".

(ii)  <u>Voting</u>. At the time of mailing of notice of each annual or special stockholders' meeting of any Mutual Fund, the Trustee shall send a copy of the notice and all proxy solicitation materials to each Participant who has shares of the Mutual Fund credited to the Participant's accounts, together with a voting direction form for return to the Trustee or its designee. The Participant shall have the right to direct the Trustee as to the manner in which the Trustee is to vote the shares credited to the Participant's accounts (both vested and unvested). The Trustee shall vote the shares as directed by the Participant. The Trustee shall not vote shares for which it has received no directions from the Participant. During the Participant recordkeeping reconciliation

8

period, the Sponsor shall have the right to direct the Trustee as to the manner in which the Trustee is to vote the shares of the Mutual Funds in the Trust. With respect to all rights other than the right to vote, the Trustee shall follow the directions of the Participant and if no such directions are received, the directions of the Investment Committee. The Trustee shall have no further duty to solicit directions from Participants or the Sponsor.

(e)    Sponsor Stock. Trust investments in Sponsor Stock shall be made via the W.R. Grace Common Stock Fund and the Company Contribution ESOP Stock Fund (individually, the "Fund"). Each Fund shall consist of shares of Sponsor Stock and short-term liquid investments, including the commingled money market fund, Fidelity Employee Benefit U.S. Government Reserves Portfolio, maintained by the Trustee, necessary to satisfy the Fund's cash needs for transfers and payments. A cash target range shall be determined in conjunction with the Administrator for the cash portion of the Fund. The Trustee is responsible for ensuring that the actual cash held in the Fund falls within the agreed upon range over time. Each Participant's proportional interest in the Fund shall be measured in units of participation, rather than shares of Sponsor Stock. Such units shall represent a proportionate interest in all of the assets of the Fund, which includes shares of Sponsor Stock, short-term investments and, at times, receivables for dividends and/or Sponsor Stock sold and payables for Sponsor Stock purchased. A Net Asset Value ("NAV") per unit will be determined daily for each unit outstanding of the Fund. The return earned by the Fund will represent a combination of the dividends paid on the shares of Sponsor Stock held by the Fund, gains or losses realized on sales of Sponsor Stock, appreciation or depreciation in the market price of those shares held, and interest on the short-term investments held by the Fund. Dividends received by the W.R. Grace Common Stock Fund are reinvested in additional shares of Sponsor Stock. Dividends paid to the Trust on shares of Sponsor Stock held in the Company Contribution ESOP Stock Fund shall be allocated to a separate account (the "Dividends Account") within the Trust. The assets of the Dividends Account shall be invested in the Fidelity Employee Benefit U.S. Government Reserves Portfolio. The interest credited to the Dividends

9

GR 001194

Account shall be reinvested in the Company Contribution ESOP Stock Fund on a monthly basis. The Trustee shall make such payments from the Dividends Account at such time or times, and to such entity designated by the Administrator as paying agent for such dividends, as Administrator shall direct in writing. The Sponsor acknowledges that any cash so paid to the paying agent shall be held in trust by such paying agent until disbursed to Participants in accordance with the terms of Plan. The Trustee shall have no responsibility for tax reporting of such dividends. Investments in Sponsor Stock shall be subject to the following limitations:

(i) <u>Leveraging</u>. The Sponsor acknowledges that no outstanding loan exists for the Company Contribution ESOP Stock Fund. If the Sponsor pledges Sponsor Stock to be held in that Fund as collateral for a loan, the Sponsor agrees that this Agreement and the fees described on Schedule "B" shall be amended as agreed to by the Sponsor and the Trustee.

(ii) <u>Acquisition Limit</u>. Pursuant to the Plan, the Trust may be invested in Sponsor Stock to the extent necessary to comply with investment directions under Section 5(c) of this Agreement.

(iii) <u>Fiduciary Duty</u>. The Trustee shall not be responsible for monitoring the suitability under the fiduciary duty rules of section 404(a)(1) of ERISA (as modified by section 404(a)(2) of ERISA) of acquiring and holding Sponsor Stock. The Trustee shall not be liable for any loss which arises from the directions of the Investment Committee with respect to the acquisition and holding of Sponsor Stock, unless it is clear that the actions to be taken by the Trustee under those directions would be prohibited by the foregoing fiduciary duty rules or would be contrary to the terms of the Plan or this Agreement.

(iv) <u>Execution of Purchases and Sales</u>. (A) Purchases and sales of Sponsor Stock (other than for telephone exchanges described in Schedule "H") shall be made

10

GR 001195



on the open market on the date on which the Trustee receives from the Investment Committee in good order all information and documentation necessary to accurately effect such purchases and sales (or, in the case of purchases, the subsequent date on which the Trustee has received a wire transfer of the funds necessary to make such purchases). Exchanges of Sponsor Stock shall be made in accordance with the Telephone Exchange Guidelines attached hereto as Schedule "G". Such general rules shall not apply in the following circumstances:

(1)    If the Trustee is unable to determine the number of shares required to be purchased or sold on such date; or

(2)    If the Trustee is unable to purchase or sell the total number of shares required to be purchased or sold on such date as a result of market conditions; or

(3)    If the Trustee is prohibited by the Securities and Exchange Commission, the New York Stock Exchange, or any other regulatory body from purchasing or selling any or all of the shares required to be purchased or sold on such date.

In the event of the occurrence of the circumstances described in (1), (2), or (3) above, the Trustee shall purchase or sell such shares as soon as possible thereafter and shall determine the price of such purchases or sales to be the average purchase or sales price of all such shares purchased or sold, respectively. The Trustee may follow directions from the Investment Committee to deviate from the above purchase and sale procedures provided that such direction is made in writing by the Investment Committee.

(B) <u>Use of an Affiliated Broker</u>. The Investment Committee hereby authorizes the Trustee to use Fidelity Brokerage Services, Inc. ("FBSI"), an

11

GR 001196



affiliate of the Trustee, to provide brokerage services in connection with any purchase or sale of Sponsor Stock in accordance with directions from Participants or the Investment Committee. FBSI shall execute such directions directly or through its affiliate, National Financial Services Company ("NFSC"). The provision of brokerage services shall be subject to the following:

(1)    As consideration for such brokerage services, the Sponsor agrees that FBSI shall be entitled to remuneration under this authorization provision in the amount of three and one-half cents ($.035) commission on each share of Sponsor Stock. Any change in such remuneration may be made only by a signed agreement between Sponsor and Trustee.

(2)    Following the procedures set forth in Department of Labor Prohibited Transaction Class Exemption 86-128 ("PTCE 86-128"), the Trustee will provide the Sponsor with the following documents: (1) a description of FBSI's brokerage placement practices; (2) a copy of PTCE 86-128; and (3) a form by which the Sponsor may terminate this authorization to use a broker affiliated with the Trustee. The Trustee will provide the Sponsor with such termination form annually, as well as an annual report which summarizes all securities transaction-related charges incurred by the Trust, and the Trust's annualized turnover rate.

(3)    Any successor organization of FBSI, through reorganization, consolidation, merger or similar transactions, shall, upon consummation of such transaction, become the successor broker in accordance with the terms of this authorization provision.

(4)    The Trustee and FBSI shall continue to rely on this authorization provision until notified to the contrary. The Investment Committee reserves the right to terminate this authorization upon sixty (60) days written

12

notice to FBSI (or its successor) and the Trustee.



   (v) <u>Securities Law Reports</u>. The Sponsor shall be responsible for filing all reports required under Federal or state securities laws with respect to the Trust's ownership of Sponsor Stock, including, without limitation, any reports required under section 13 or 16 of the Securities Exchange Act of 1934, and shall immediately notify the Trustee in writing of any requirement to stop purchases or sales of Sponsor Stock pending the filing of any report. The Trustee shall provide to the Sponsor such information on the Trust's ownership of Sponsor Stock as the Sponsor may reasonably request in order to comply with Federal or state securities laws.

   (vi) <u>Voting and Tender Offers</u>. Notwithstanding any other provision of this Agreement the provisions of this Section shall govern the voting and tendering of Sponsor Stock. The Sponsor, after consultation with the Trustee, shall provide and pay for all printing, mailing, tabulation and other costs associated with the voting and tendering of Sponsor Stock.

   (A) <u>Voting</u>.

   (1) When the issuer of the Sponsor Stock files preliminary proxy solicitation materials with the Securities and Exchange Commission, the Sponsor shall cause a copy of all materials to be simultaneously sent to the Trustee. Based on these materials the Trustee shall prepare a voting instruction form. At the time of mailing of notice of each annual or special stockholders' meeting of the issuer of the Sponsor Stock, the Sponsor shall cause a copy of the notice and all proxy solicitation materials to be sent to each Participant with an interest in Sponsor

13

GR 001198

Stock held in the Trust, together with the foregoing voting instruction form to be returned to the Trustee or its designee. The form shall show the proportional interest in the number of full and fractional shares of Sponsor Stock credited to the Participant's accounts held in the Fund. The Sponsor shall provide the Trustee with a copy of any materials provided to the Participants and shall certify to the Trustee that the materials have been mailed or otherwise sent to Participants.

(2) Each Participant with an interest in the Fund shall have the right, acting in the capacity of a named fiduciary within the meaning of section 402 of ERISA, to direct the Trustee as to the manner in which the Trustee is to vote (including not to vote) that number of shares of Sponsor Stock reflecting such Participant's proportional interest in the Fund (both vested and unvested). Directions from a Participant to the Trustee concerning the voting of Sponsor Stock shall be communicated in writing, or by mailgram or similar means. These directions shall be held in confidence by the Trustee and shall not be divulged to the Sponsor, or any officer or employee thereof, or any other person. Upon its receipt of the directions, the Trustee shall vote the shares of Sponsor Stock reflecting the Participant's proportional interest in the Fund as directed by the Participant. The Trustee shall vote shares of Sponsor Stock reflecting a Participant's proportional interest in the Fund for which it has received no direction from the Participant in the same proportion as those shares for which the Trustee has received Participant voting instruction.

(3) The Trustee shall vote that number of shares of Sponsor Stock not credited to Participants' accounts which is determined by multiplying the total number of shares not credited to Participants' accounts by a fraction of which the numerator is the number of shares of Sponsor Stock reflecting such Participants' proportional interest in the Fund credited to Participants' accounts for which the Trustee received voting directions from Participants and of which the denominator

14

GR 001199



is the total number of shares of Sponsor Stock reflected in the proportional interests of all Participants under the Plan. The Trustee shall vote those shares of Sponsor Stock not credited to Participants' accounts which are to be voted by the Trustee pursuant to the foregoing formula in the same proportion on each issue as it votes those shares reflecting Participants' proportional interest in the Fund for which it received voting directions from Participants. The Trustee shall not vote the remaining shares of Sponsor Stock not credited to Participants' accounts.

(B)  Tender Offers.

(1)  Upon commencement of a tender offer for any securities held in the Trust that are Sponsor Stock, the Sponsor shall notify each Participant with an interest in such Sponsor Stock of the tender offer and utilize its best efforts to timely distribute or cause to be distributed to the Participant the same information that is distributed to shareholders of the issuer of Sponsor Stock in connection with the tender offer, and, after consulting with the Trustee, shall provide and pay for a means by which the Participant may direct the Trustee whether or not to tender the Sponsor Stock reflecting such Participant's proportional interest in the Fund (both vested and unvested). The Sponsor shall provide the Trustee with a copy of any material provided to the Participants and shall certify to the Trustee that the materials have been mailed or otherwise sent to Participants.

(2)  Each Participant shall have the right to direct the Trustee to tender or not to tender some or all of the shares of Sponsor Stock reflecting such Participant's proportional interest in the Fund (both vested and unvested). Directions from a Participant to the Trustee concerning the tender of Sponsor Stock shall be communicated in writing, or by mailgram or such similar means as is agreed upon by the Trustee and the Sponsor under the preceding paragraph. These directions

15

GR 001200

shall be held in confidence by the Trustee and shall not be divulged to the Sponsor, or any officer or employee thereof, or any other person except to the extent that the consequences of such directions are reflected in reports regularly communicated to any such persons in the ordinary course of the performance of the Trustee's services hereunder. The Trustee shall tender or not tender shares of Sponsor Stock as directed by the Participant. The Trustee shall not tender shares of Sponsor Stock reflecting a Participant's proportional interest in the Fund for which it has received no direction from the Participant.

(3) The Trustee shall tender that number of shares of Sponsor Stock not credited to Participants' accounts which is determined by multiplying the total number of shares of Sponsor Stock not credited to Participants' accounts by a fraction of which the numerator is the number of shares of Sponsor Stock reflecting Participants' proportional interests in the Fund for which the Trustee has received directions from Participants to tender (which directions have not been withdrawn as of the date of this determination) and of which the denominator is the total number of shares of Sponsor Stock reflected in the proportional interests of all Participants under the Plan.

(4) A Participant who has directed the Trustee to tender some or all of the shares of Sponsor Stock reflecting the Participant's proportional interest in the Fund may, at any time prior to the tender offer withdrawal deadline, direct the Trustee to withdraw some or all of the tendered shares reflecting the Participant's proportional interest, and the Trustee shall withdraw the directed number of shares from the tender offer prior to the tender offer withdrawal deadline. Prior to such withdrawal deadline, if any shares of Sponsor Stock not credited to Participants' accounts have been tendered, the Trustee shall redetermine the number of shares of Sponsor Stock that would be tendered under Section

16

GR 001201

5(e)(vi)(B)(3) if the date of the foregoing withdrawal were the date of determination, and withdraw from the tender offer the number of shares of Sponsor Stock not credited to Participants' accounts necessary to reduce the amount of tendered Sponsor Stock not credited to Participants' accounts to the amount so redetermined. A Participant shall not be limited as to the number of directions to tender or withdraw that the Participant may give to the Trustee.

(5) A direction by a Participant to the Trustee to tender shares of Sponsor Stock reflecting the Participant's proportional interest in the Fund shall not be considered a written election under a Plan by the Participant to withdraw, or have distributed, any or all of the shares of Sponsor Stock credited to his Plan account. The Trustee shall credit to each proportional interest of the Participant from which the tendered shares were taken the proceeds received by the Trustee in exchange for the shares of Sponsor Stock tendered from that interest. Pending receipt of directions from the Participant or the Named Fiduciary, as provided in the Plan, as to which of the remaining investment options the proceeds should be invested in, the Trustee shall invest the proceeds in the investment option described in Schedule "C":

(vii) Shares Credited. For all purposes of this Section, the number of shares of Sponsor Stock deemed "credited" or "reflected" to a Participant's proportional interest on any day shall be determined as of the last preceding business day. The trade date is the date the transaction is valued.

(viii) General. With respect to all rights other than the right to vote, the right to tender, and the right to withdraw shares previously tendered, in the case of Sponsor Stock credited to a Participant's proportional interest in the Fund, the Trustee shall follow the directions of the Participant and if no such directions

17

are received, the directions of the Investment Committee. Except as provided herein, the Trustee shall have no duty to solicit directions from Participants. With respect to all rights other than the right to vote and the right to tender, in the case of Sponsor Stock not credited to Participants' accounts, the Trustee shall follow the directions of the Investment Committee.

(ix) Conversion. All provisions in this Section 5(e) shall also apply to any securities received as a result of a conversion of Sponsor Stock.

(f)    Notes. The Administrator shall act as the Trustee's agent for the purpose of holding all trust investments in Participant loan notes and related documentation and as such shall (i) maintain physical custody of and keep safe the notes and other loan documents, (ii) collect and remit all principal and interest payments to the Trustee, (iii) keep the proceeds of such loans separate from the other assets of the Administrator and clearly identify such assets as Plan assets, and (iv) cancel and surrender the notes and other loan documentation when a loan has been paid in full. To originate a Participant loan, the Participant shall direct the Trustee as to the type of loan to be made from the Participant's individual account. Such directions shall be made by Participants by the telephone exchange system maintained for such purpose by the Trustee or its agent. The Trustee shall determine, based on the current value of the Participant's account, the amount available for the loan. Based on the quarterly interest rate supplied by the Administrator in accordance with the terms of the Plan, the Trustee shall advise the Participant of such interest rate, as well as the installment payment amounts. The Trustee shall forward the loan document to the Participant for execution and submission for approval to the Administrator. The Administrator shall have the responsibility for approving the loan and instructing the Trustee to send the loan proceeds to the Administrator or to the Participant if so directed by the Administrator. In all

18

cases, such instruction by the Administrator shall be made within thirty (30) days of the Participant's initial request (the origination date).

(g)    Investment Committee Selected Investments. The Investment Committee hereby agrees to notify the Trustee prior to any new GIC purchase to ensure that the Trustee is capable of recordkeeping such GIC in accordance with Schedule "J". In order to provide the necessary cash to effectuate exchanges and redemptions from the Fixed Income Fund ("GIC") under a Plan, the Sponsor agrees that the Plan shall maintain a liquidity reserve allocated to that Fund in a commingled money market fund ("Fidelity Employee Benefit U.S. Government Reserves Portfolio") maintained by the Trustee within the Fidelity Group Trust for Employee Benefit Plans (the "Group Trust"). The Sponsor hereby (i) agrees to the Plan's participation in the Group Trust, a group trust maintained by the Trustee for qualified plans, for purposes of liquidity under the Plan's Fixed Income Fund and (ii) acknowledges that it has received from the Trustee a copy of the terms of the Group Trust and the terms of the Declaration of Separate Fund for the Fidelity Employee Benefit U.S. Government Reserves Portfolio of the Group Trust.

(h)    Reliance of Trustee on Directions. (i) The Trustee shall not be liable for any loss which arises from any Participant's exercise or non-exercise of rights under this Agreement regarding the assets credited to the Participant's account.

(ii)    The Trustee shall not be liable for any loss which arises from the Investment Committee's exercise or non-exercise of rights under this Section 5, unless it was clear that the actions to be taken by the Trustee under the Investment Committee's directions were prohibited by the fiduciary duty rules of Section 404(a) of ERISA or were contrary to the terms of the Plan or this Agreement.

19

(i)    Trustee Powers.  The Trustee shall have the following powers and authority:

(i)    Subject to paragraphs (b), (c), (d) and (e) of this Section 5, to sell, exchange, convey, transfer, or otherwise dispose of any property held in the Trust, by private contract or at public auction.  No person dealing with the Trustee shall be bound to see to the application of the purchase money or other property delivered to the Trustee or to inquire into the validity, expediency, or propriety of any such sale or other disposition.

(ii)    Subject to paragraphs (b) and (c) of this Section 5, to invest in GICs and short term investments (including interest bearing accounts with the Trustee or money market mutual funds advised by affiliates of the Trustee) and in collective investment funds maintained by the Trustee for qualified plans, in which case the provisions of each collective investment fund in which the Trust is invested shall be deemed adopted by the Investment Committee and the provisions thereof incorporated as a part of this Trust as long as the fund remains exempt from taxation under Sections 401(a) and 501(a) of the Internal Revenue Code of 1986, as amended.

(iii) To cause any securities or other property held as part of the Trust to be registered in the Trustee's own name, in the name of one or more of its nominees, or in the Trustee's account with the Depository Trust Company of New York and to hold any investments in bearer form, but the books and records of the Trustee shall at all times show that all such investments are part of the Trust.

(iv)    To keep that portion of the Trust in cash or cash balances as the Investment Committee or Sponsor may, from time to time, deem to be in the best interest of the Trust.

20

(v)    To make, execute, acknowledge, and deliver any and all documents of transfer or conveyance and to carry out the powers herein granted.

(vi) To settle, compromise, or submit to arbitration any claims, debts, or damages due to or arising from the Trust; to commence or defend suits or legal or administrative proceedings; to represent the Trust in all suits and legal and administrative hearings; and to pay all reasonable expenses arising from any such action, from the Trust if not paid by the Sponsor.

(vii)    To employ legal, accounting, clerical, and other assistance as may be required in carrying out the provisions of this Agreement and to pay their reasonable expenses and compensation from the Trust if not paid by the Sponsor.

(viii)    To do all other acts although not specifically mentioned herein, as the Trustee may deem necessary to carry out any of the foregoing powers and the purposes of the Trust.

Section 6.  Recordkeeping and Administrative Services to Be Performed.

(a)    General.  The Trustee shall perform those recordkeeping and administrative functions described in  Schedule "A" attached hereto.  These recordkeeping and administrative functions shall be performed within the framework of the Administrator's written directions regarding the Plan's provisions, guidelines and interpretations.

(b)    Accounts.  The Trustee shall keep accurate accounts of all investments, receipts, disbursements, and other transactions hereunder, and shall report the value of the assets held in the Trust as of each Reporting Date.  Within thirty (30) days following each Reporting Date or within sixty (60) days in the case of a Reporting Date caused by the resignation or removal of the Trustee, or the termination of this

21

GR 001206

Agreement, the Trustee shall file with the Administrative Committee or its designee a written account setting forth all investments, receipts, disbursements, and other transactions effected by the Trustee between the Reporting Date and the immediately prior Reporting Date, and setting forth the value of the Trust as of the Reporting Date. Except as otherwise required under ERISA, upon the expiration of six (6) months from the date of filing such account with the Sponsor, the Trustee shall have no liability or further accountability to anyone with respect to the propriety of its acts or transactions shown in such account, except with respect to such acts or transactions as to which the Sponsor shall within such six (6) month period file with the Trustee written objections.

(c)    Inspection and Audit.  All records generated by the Trustee in accordance with paragraphs (a) and (b) shall be open to inspection and audit, during the Trustee's regular business hours prior to the termination of this Agreement, by the Sponsor or any person designated by the Sponsor.  Upon the resignation or removal of the Trustee or the termination of this Agreement, the Trustee shall provide to the Sponsor, at no expense to the Sponsor, in the format regularly provided to the Sponsor, a statement of each Participant's accounts as of the resignation, removal, or termination, and the Trustee shall provide to the Sponsor or the Plan's new recordkeeper such further records as are reasonable, at the Sponsor's expense.

(d)    Effect of Plan Amendment.  A confirmation of the current qualified status of each Plan is attached hereto as Schedule "F".  The Trustee's provision of the recordkeeping and administrative services set forth in this Section 6 shall be conditioned on the Sponsor delivering to the Trustee a copy of any amendment to a Plan as soon as administratively feasible following the amendment's adoption, with, if requested, an IRS determination letter or an opinion of counsel substantially in the form of Schedule "F" covering such amendment, and on the Sponsor providing the Trustee on a

22

GR  001207

timely basis with all the information the Sponsor deems necessary for the Trustee to perform the recordkeeping and administrative services and such other information as the Trustee may reasonably request.

(e) <u>Returns, Reports and Information</u>. Except as otherwise provided on Schedule "A", the Trustee shall not be responsible for the preparation and filing of returns, reports, and information required of the Trust or Plan by law. The Trustee shall provide the Sponsor or Administrator with such information as the Sponsor or Administrator may reasonably request to make these filings. The Sponsor or Administrator shall also be responsible for making any disclosures to Participants required by law including, without limitation, such disclosures as may be required under federal or state truth-in-lending laws with regard to Participant loans, except as otherwise provided in this Agreement or the Schedules hereto.

(f) <u>Allocation of Plan Interests</u>. All transfers to, withdrawals from, or other transactions regarding the Trust shall be conducted in such a way that the proportionate interest in the Trust of each Plan and the fair market value of that interest may be determined at any time. Whenever the assets of more than one Plan are commingled in the Trust or in any investment option, the undivided interest therein of each such Plan shall be debited or credited (as the case may be) (i) for the entire amount of every contribution received on behalf of such Plan, every benefit payment, or other expense attributable solely to such Plan, and every other transaction relating only to such Plan; and (ii) for its proportionate share of every item of collected or accrued income, gain or loss, and general expense, and of any other transactions attributable to the Trust or that investment option as a whole.

Section 7. <u>Compensation and Expenses</u>. Within thirty (30) days of receipt of the Trustee's bill, which shall be computed and billed in accordance with Schedule "B," attached hereto and made a part hereof, the Sponsor shall send to the Trustee a payment

23

in such amount. All expenses of the Trustee relating directly to the acquisition and disposition of investments constituting part of the Trust, and all taxes of any kind whatsoever that may be levied or assessed under existing or future laws upon or in respect of the Trust or the income thereof, shall be a charge against and paid from the appropriate Participants' accounts.

Section 8. Directions and Indemnification.

(a)    Identity of Administrative Committee and Investment Committee. The Trustee shall be fully protected in relying on the individuals or persons named as members of the Administrative Committee and the Investment Committee or the individuals or persons authorized to act on their behalf which are contained in Authorization Letters in the form of Schedules "D" and "E" attached hereto or on a Plan Designation Form in accordance with Schedule "I" attached hereto or such other individuals or persons as the Sponsor may notify the Trustee in writing.

(b)    Directions from Sponsor or Administrative Committee. Whenever the Sponsor or Administrative Committee provides a direction to the Trustee, the Trustee shall not be liable for any loss arising from the Trustee's execution of such direction if the direction is in writing (or is oral and immediately confirmed in writing) signed by any individual whose name and signature have been submitted (and not withdrawn) in writing to the Trustee by the Sponsor in the form attached hereto as Schedule "D", provided the Trustee reasonably believes the signature of the individual to be genuine. Such direction may also be made via Electronic Data Transfer (EDT) in accordance with procedures agreed to by the Sponsor and the Trustee; provided, however, that the Trustee shall be fully protected in relying on such direction as if it were a direction made in writing by the Sponsor. The Trustee shall have no responsibility to ascertain any direction's (i) accuracy, (ii) compliance with the terms of the Plan or any applicable law, or (iii) effect for tax purposes or otherwise.

24

GR 001209

(c)  <u>Directions from Investment Committee</u>. Whenever the Investment Committee provides a direction to the Trustee, the Trustee shall not be liable for any loss arising from the direction (i) if the direction is in writing (or is oral and immediately confirmed in writing) signed by any individual whose name and signature have been submitted (and not withdrawn) in writing to the Trustee by the Investment Committee in the form attached hereto as Schedule "E" and (ii) if the Trustee reasonably believes the signature of the individual to be genuine, unless it is clear that the actions to be taken by the Trustee under the direction would be prohibited by the fiduciary duty rules of section 404(a) of ERISA or would be contrary to the terms of a Plan or this Agreement.

(d)  <u>Co-Fiduciary Liability</u>. In any other case, the Trustee shall not be liable for any loss arising from any act or omission of another fiduciary under the Plan except as provided in section 405(a) of ERISA. Without limiting the foregoing, the Trustee shall have no liability for the acts or omissions of any predecessor or successor trustee.

(e)  <u>Indemnification</u>. (i) The Sponsor shall indemnify the Trustee against, and hold the Trustee harmless from, any and all loss, damage, penalty, liability, cost, and expense, including without limitation, reasonable attorneys' fees and disbursements, ("Damages") that are incurred by, imposed upon, or asserted against the Trustee by reason of any claim, regulatory proceeding, or litigation arising from any act done or omitted to be done by any individual or person with respect to the Plan or Trust, excepting only any and all Damages arising from the Trustee's "negligence" (as defined below), bad faith or willful misconduct.

(ii)  The Trustee shall indemnify the Sponsor, the Investment Committee and the Administrative Committee against and hold the Sponsor, the Investment Committee and the Administrative Committee harmless from any and all Damages that are incurred by, imposed upon, or asserted against any of them resulting from the Trustee's "negligence" (as defined below), bad faith or willful misconduct.

25

GR 001210

(iii)  For purposes of this subsection (e), "negligence" shall mean the failure to use reasonable diligence and the degree of skill and judgement possessed by one experienced in furnishing trustee services and recordkeeping services to savings plans of similar size and characteristics of the Plans.

(f)    Survival.  The provisions of this Section 8 shall survive the termination of this Agreement.

Section 9.  Resignation or Removal of Trustee.

(a)    Resignation.  The Trustee may resign at any time upon sixty (60) days' notice in writing to the Sponsor, unless a shorter period of notice is agreed upon by the Sponsor.

(b)    Removal.  The Investment Committee or the Sponsor may remove the Trustee at any time upon sixty (60) days' notice in writing to the Trustee, unless a shorter period of notice is agreed upon by the Trustee.

Section 10.  Successor Trustee.

(a)    Appointment.  If the office of Trustee becomes vacant for any reason, the Sponsor or the Investment Committee may in writing appoint a successor trustee under this Agreement.  The successor trustee shall have all of the rights, powers, privileges, obligations, duties, liabilities, and immunities granted to the Trustee under this Agreement.  The successor trustee and predecessor trustee shall not be liable for the acts or omissions of the other with respect to the Trust.

(b)    Acceptance.  When the successor trustee accepts its appointment under this Agreement, title to and possession of the Trust assets shall immediately vest in the successor trustee without any further action on the part of the predecessor trustee.  The predecessor trustee shall execute all instruments and do all acts that reasonably may be

26

GR 001211

necessary or reasonably may be requested in writing by the Investment Committee or the successor trustee to vest title to all Trust assets in the successor trustee or to deliver all Trust assets to the successor trustee.

(c)     Corporate Action.  Any successor of the Trustee or successor trustee, through sale or transfer of the business or trust department of the Trustee or successor trustee, or through reorganization, consolidation, or merger, or any similar transaction, shall, upon consummation of the transaction, become the successor trustee under this Agreement.

Section 11.  Termination.  This Agreement may be terminated at any time by the Investment Committee or the Sponsor upon sixty (60) days' notice in writing to the Trustee.  On the date of the termination of this Agreement, the Trustee shall forthwith transfer and deliver to such individual or entity as the Sponsor or the Investment Committee shall designate, all cash and assets then constituting the Trust.  If, by the termination date, the Sponsor or the Investment Committee has not notified the Trustee in writing as to whom the assets and cash are to be transferred and delivered, the Trustee may bring an appropriate action or proceeding for leave to deposit the assets and cash in a court of competent jurisdiction.  The Trustee shall be reimbursed by the Sponsor for all costs and expenses of the action or proceeding including, without limitation, reasonable attorneys' fees and disbursements.

Section 12.  Resignation, Removal, and Termination Notices.  All notices of resignation, removal, or termination under this Agreement must be in writing and mailed to the party to which the notice is being given by certified or registered mail, return receipt requested, to the Chairman of the Investment Committee, c/o Daniel M. Murtaugh, W.R. Grace & Co., One Town Center Road, Boca Raton, FL 33486, and to the Trustee c/o John M. Kimpel, Fidelity Investments, 82 Devonshire Street, Boston, Massachusetts 02109, or to such other addresses as the parties have notified each other of in the foregoing manner.

27

Section 13. <u>Duration</u>. This Trust shall continue in effect without limit as to time, subject, however, to the provisions of this Agreement relating to amendment, modification, and termination thereof.

Section 14. <u>Amendment or Modification</u>. This Agreement and Schedules hereto may be amended or modified at any time and from time to time only by an instrument executed by both the Investment Committee and the Trustee. Notwithstanding the foregoing, to reflect increased operating costs the Trustee may once each calendar year amend Schedule "B" without the consent of the Sponsor or the Investment Committee upon one hundred-eighty (180) days written notice to the Sponsor.

Section 15. <u>General</u>.

(a)    <u>Performance by Trustee, its Agents or Affiliates.</u>  The Sponsor acknowledges and authorizes that the services to be provided under this Agreement shall be provided by the Trustee, its agents or affiliates, including Fidelity Investments Institutional Operations Company or its successor, and that certain of such services may be provided pursuant to one or more other contractual agreements or relationships.

(b)    <u>Delegation by Employer</u>. By authorizing the assets of any Plan as to which it is an Employer to be deposited in the Trust, each Employer, other than the Sponsor, hereby irrevocably delegates and grants to the Sponsor full and exclusive power and authority to exercise all of the powers conferred upon the Sponsor and each Employer by the terms of this Agreement, and to take or refrain from taking any and all action which such Employer might otherwise take or refrain from taking with respect to this Agreement, including the sole and exclusive power to exercise, enforce or waive any rights whatsoever which such Employer might otherwise have with respect to the Trust, and irrevocably appoints the Sponsor as its agent for all purposes under this Agreement. The Trustee shall have no obligation to account to any such Employer or to follow the instructions of or otherwise deal with any such Employer, the intention being that the Trustee shall deal solely with

28

the Sponsor.

(c)    Entire Agreement. This Agreement and the Schedules hereto contain all of the terms agreed upon between the parties with respect to the subject matter hereof.

(d)    Waiver. No waiver by either party of any failure or refusal to comply with an obligation hereunder shall be deemed a waiver of any other or subsequent failure or refusal to so comply.

(e)    Successors and Assigns. The provisions of in this Agreement shall inure to the benefit of, and shall bind, the successors and assigns of the respective parties.

(f)    Partial Invalidity. If any term or provision of this Agreement or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Agreement, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

(g)    Section Headings. The headings of the various sections and subsections of this Agreement have been inserted only for the purposes of convenience and are not part of this Agreement and shall not be deemed in any manner to modify, explain, expand or restrict any of the provisions of this Agreement.

Section 16.  Governing Law.

(a)    Controlling Law. With respect to the activities of the Trustee, the validity, construction, effect and administration of this Agreement shall be governed by and interpreted in accordance with the banking laws of the Commonwealth of Massachusetts, in all other respects this Agreement shall be governed by and interpreted in accordance with

29

the laws of the State of New York; except to the extent those laws are superseded under section 514 of ERISA.

(b)    Trust Agreement Controls.  The Trustee is not a party to any Plan, and in the event of any conflict between the provisions of the Plan and the provisions of this Agreement with respect to the activities of the Trustee, the provisions of this Agreement shall control.

Section 17.  Plan Qualification.  The Sponsor shall be responsible for verifying that while any assets of a particular Plan are held in the Trust, the Plan (i) is qualified within the meaning of section 401(a) of the Code; (ii) is permitted by existing or future rulings of the United States Treasury Department to pool its funds in a group trust; and (iii) permits its assets to be commingled for investment purposes with the assets of other such plans by investing such assets in this Trust.  If any Plan ceases to be qualified within the meaning of section 401(a) of the Code, the Sponsor shall notify the Trustee as promptly as is reasonable.  Upon receipt of such notice, the Trustee shall promptly segregate and withdraw from the Trust, the assets which are allocable to such disqualified Plan, and shall dispose of such assets in the manner directed by the Sponsor.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized officers as of the day and year first above written.

Attest: _____
Secretary

W.R. GRACE & CO.

By _____
Vice President

Attest: _____
Assistant Clerk

FIDELITY MANAGEMENT TRUST COMPANY

By _____  6/30/93
Senior Vice President

30

GR 001215

Schedule "A"

## RECORDKEEPING & ADMINISTRATIVE SERVICES

### Administration

* Establishment and maintenance of Participant account and election percentages.

* Maintenance of eight plan investment options:
    - Fixed Income Fund (GIC)
    - Fidelity Blue Chip Growth
    - Fidelity Contrafund
    - Fidelity OTC Portfolio
    - Fidelity Growth & Income Portfolio
    - W.R. Grace Common Stock Fund
    - Company Contribution ESOP Stock Fund
    - Fidelity Balanced Fund

* Maintenance of the following money classifications:
    For the W.R. Grace & Co. Salaried Employees Savings and Investment Plan:
    - Before-tax Savings
    - Company Match
    - New Start After-tax
    - Pre-1987 After-tax
    - Supplemental Contribution
    - Rollover

    For the W.R. Grace & Co. Hourly Employees Savings and Investment Plan:
    - Before-tax Savings
    - Company Match
    - New Start After-tax
    - Pre-1987 After-tax
    - Rollover

    For the Grace Energy Employees Savings and Investment Plan:
    - Before-tax Savings
    - Company Match
    - New Start After-tax
    - Pre-1987 After-tax
    - Supplemental Contribution
    - Company NRG
    - Supplemental S. Flow
    - Company S. Flow
    - Rollover

. The Trustee will provide only the recordkeeping and administrative services set forth on this Schedule "A" and no others.

### Processing

* Weekly processing of contribution data.
* Daily processing of transfers and changes of future allocations.
* Weekly processing of withdrawals.

31



### Other

* Preparation of: monthly trial balance, annual administrative reports, quarterly Participant statements, annual report of microfiche reflecting year-end balances, annual dividend pass-through tape, and 1099-Rs
* Processing of Participant loans
* Preparation of employee communications describing available investment options, including multimedia informational materials and group presentations, as agreed to by the Administrator and the Trustee.
* Miscellaneous ad hoc reports as agreed to by the Sponsor and the Trustee

W.R. GRACE & CO.                          FIDELITY MANAGEMENT TRUST COMPANY

By _William T. Monroe_  6/15/93          By _____  6/30/93
                        Date               Senior Vice President        Date

32

GR  001217

Schedule "B"
## FEE SCHEDULE

| | |
|---|---|
| . Annual Participant Fee | $28.00 per participant*, billed and payable quarterly. |
| . Loan Fee | Establishment fee of $35.00 per loan account; annual fee of $15.00 per loan account. |
| . New Participant Enrollment | $5.00 per nonparticipating employee record. |
| . Return of Excess Fee | $25.00 per participant, a one-time charge per calculation and check generation. |

. Other Fees: separate charges for optional use of remote access, 401(k) and 401(m) testing, extraordinary expenses resulting from large numbers of simultaneous manual transactions or from errors not caused by Fidelity, or for reports not contemplated in this Agreement, except for reports agreed to by the Sponsor and the Trustee. The Administrator may withdraw reasonable administrative fees from the Trust by written direction to the Trustee.

* This fee will be imposed pro rata for each calendar quarter, or any part thereof, that it remains necessary to maintain a participant's account(s) as part of the Plan's records, e.g., vested, deferred, forfeiture, top-heavy and terminated participants who must remain on file through calendar year-end for 1099-R reporting purposes.

## GIC Fees

| | |
|---|---|
| . GIC Accounting Fee | .02% per year on all GIC assets. |

## Trustee Fees

. To the extent that assets are invested in Sponsor Stock, .10% of such assets in the Trust payable pro rata quarterly on the basis of such assets as of the calendar quarter's last valuation date, subject to a $30,000 maximum annually.


W.R. GRACE & CO.                      FIDELITY MANAGEMENT TRUST COMPANY

By _William T. Monroe_ 6/10/93      By _____ 6/30/93
                        Date        Senior Vice President              Date


33

GR 001218

Schedule "C"

## INVESTMENT OPTIONS

In accordance with Section 5(b), the Investment Committee hereby directs the Trustee that Participants' individual accounts may be invested in the following investment options:

- Fixed Income Fund (GIC)
- Fidelity Blue Chip Growth
- Fidelity Contrafund
- Fidelity OTC Portfolio
- Fidelity Growth & Income Portfolio
- W.R. Grace Common Stock Fund
- Company Contribution ESOP Stock Fund
- Fidelity Balanced Fund

The investment option referred to in Section 5(c) and Section 5(e)(vi)(B)(5) shall be the Fixed Income Fund ("GIC").

W.R. GRACE & CO.

By _William T. Monroe_  _6/15/93_
        Date

34

GR 001219

**GRACE**

Schedule "D"

William L. Monroe, Vice President
**Human Resources**

W. R. Grace & Co.
One Town Center Road
Boca Raton, FL 33486-1010

June 16, 1993

Ms. Jacqueline W. McCarthy
Fidelity Investments Institutional Operations Company
82 Devonshire Street
Boston, Massachusetts 02109

Dear Ms. McCarthy:

This letter is sent to you in accordance with Section 8(b) of the Trust Agreement, dated as of July 1, 1993, between W. R. Grace & Co. and Fidelity Management Trust Company (the "Trust").  We hereby designate N. J. Mattera and J. A. Longo as the individuals who may provide directions on behalf of the Administrative Committee (as defined in the attached Schedule "I") and the Sponsor (as defined by the Trust) with respect to administrative matters upon which Fidelity Management Trust Company shall be fully protected in relying in accordance with the Trust.  Only one such individual need provide any direction.  The signature of each designated individual is set forth below and certified to be such.

You may rely upon each designation and certification set forth in this letter until we deliver to you written notice of a change with respect to any such designation or certification.

Very truly yours,

W. R. Grace & Co.

By _W. L. Monroe_
W. L. Monroe
Vice President

J. A. Longo

N. J. Mattera

GR 001220

JUN-16-93 WED 10:21    PENSION ADMINISTRATION    FAX NO. 4073821416    P. 02

# GRACE

**Schedule "E"**

W. R. Grace & Co.
One Town Center Road
Boca Raton, FL 33486-1010

**June 16, 1993**

(407) 362-2000

Ms. Jacqueline W. McCarthy
Fidelity Investments Institutional Operations Company
82 Devonshire Street
Boston, Massachusetts 02109

Dear Ms. McCarthy:

This letter is sent to you in accordance with Section 8(c) of the Master Trust Agreement, dated as of July 1, 1993, between W. R. Grace & Co. and Fidelity Management Trust Company (the "Trust"). We hereby designate G. P. Jenkins and S. Olila as the individuals who may provide investment direction on behalf of the Investment Committee of the W. R. Grace & Co. Profit Sharing and Savings and Investment Plans. In addition, we designate D. M. Murtaugh and P. M. Fouchet as the individuals who may provide direction on behalf of the Investment Committee, for the purpose of maintaining adequate cash reserves. Fidelity Management Trust Company shall be fully protected in relying upon any such direction, in accordance with the Trust. Only one such individual need provide any direction. The signature of each designated individual is set forth below and certified to be such.

You may rely upon each designation and certification set forth in this letter until we deliver to you written notice of a change with respect to any such designation or certification.

Very truly yours,

Investment Committee of the W. R.
Grace & Co. Profit Sharing and
Savings and Investment Plans

By _____
         G. P. Jenkins
         Chairman

_____
P. M. Fouchet

_____
G. P. Jenkins

_____
D. M. Murtaugh

_____
S. Olila

GR  001221

**GRACE**

**Schedule "F"**

John Forgach
Benefits Counsel

W. R. Grace & Co.
One Town Center Road
Boca Raton, FL 33486-1010

(407) 362-1654
Fax: (407) 362-1635

June 18, 1993

Jacqueline W. McCarthy
Fidelity Institutional Retirement
 Services Company
82 Devonshire Street - A8B
Boston, MA 02109

Dear Ms. McCarthy:

You have asked me, as Benefits Counsel of W. R. Grace & Co., to render an opinion regarding certain matters with respect to the following employee benefit plans maintained by W. R. Grace & Co. ("Grace"): the Grace Salaried Employees Savings and Investment Plan (the "Salaried Plan"), the Grace Hourly Employees Savings and Investment Plan (the "Hourly Plan"), the employee stock ownership plans that are part of those Plans and the Grace Energy Corporation Savings and Investment Plan (collectively, the "Grace Plans").

In connection with this opinion, I have reviewed the Grace Plans, the Master Trust Agreement dated July 1, 1993 by and between Grace and Fidelity Management Trust Company, registration statements with respect to the Grace Plans filed under the Securities Act of 1933, as amended (the "Securities Act"), and such other documents as I have deemed necessary for the opinions hereinafter expressed.

Based on the foregoing, I am of the opinion that:

1. Each Grace Plan complies in all material respects with the qualification requirements of section 401(a) of the Internal Revenue Code of 1986, as amended (the "Code").

2. Each Grace Plan is an "eligible individual account plan" (as defined under section 407(d)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA")) and that the shares of common stock of Grace held and to be purchased under the Grace Plans are "qualifying employer securities" (as defined under section 407(d)(5) of ERISA).

GR 001222

- 2 -

3.   The Grace Plans are registered under the Securities Act.

Also, enclosed is a copy of the most recent determination letters received from the Internal Revenue Service (the "Service") with respect to the Salaried Plan and Hourly Plan.

Each of the Grace Plans will be submitted to the Service on a timely basis for a determination that the Grace Plans comply with the applicable provisions of the Tax Reform Act of 1986 and subsequent legislation.

Sincerely,

John Forgach

JF/dk
attachments

GR  001223

artment of the Treasury
rnal Revenue Service

O BOX 1680                          In reply refer to:  11210011
OOKLYN, NY  11202-0000              NOV. 25, 1985    LTR 835C
                                    13-5114230P
                                                      02230


R GRACE & CO
% B A MILLER
RACE PLAZA 1114 AVE OF AMERICAS
EW YORK, NY  10036


istrict Office Code and
ase Serial Number: 135217020 EP
ame of Plan: Salaried Employee Savings &
             Investment Plan
plication Form: 5301
mployer Identification Number: 13-5114230
Plan Number: 123
File Number: 130004403

Dear Applicant:

Based on the information supplied, we have made a favorable
d termination on your application identified above.  Please keep
     letter in your permanent records.

Continued qualification of the plan will depend on its effect in
operation under its present form.  (See section 1.401-1(b)(3) of the
Income Tax Regulations.)  The status of the plan in operation will be
reviewed periodically.

The enclosed document describes some events that could occur after
you receive this letter that would automatically nullify it without
specific notice from us.  The document also explains how operation of
the plan may affect a favorable determination letter, and contains
information about filing requirements.

This letter relates only to the status of your plan under the
Internal Revenue Code.  It is not a determination regarding the
effect of other Federal or local statutes.

This letter relates to the amendments adopted on Jan. 18, 1985, May
17, 1985 & May 22, 1985.  This letter shall serve as a determination
that this plan is qualified under section 401(k)of the Internal
Revenue Code.

All correspondence should be sent to the address on the front of
this letter.

f you have any questions, please contact M. Goldberg at
8-780-6129.

```
                                                          11210011
                               NOV. 25, 1985    LTR 835C
                               13-5114230P
                                                           02231
```

```
 R GRACE & CO
 % B A MILLER
RACE PLAZA 1114 AVE OF AMERICAS
EW YORK, NY   10036
```

```
                    Sincerely yours,



                      ... J. Jennings
                      District Director
```

Enclosure(s):
Opwpb 515
Pub. 794

**Internal Revenue Service**

**District Director**

G.P.O. BOX 1680
BROOKLYN, NY  11202

Date:    FEB 13 1989

W R GRACE & CO
 C/O D A HULBERT
GRACE PLAZA 1114 AVE OF THE AMERICA
NEW YORK, NY  10036-7794

Employer Identification Number:
   13-3461988
File Folder Number:
   130004242
Person to Contact:
   STUART FIELDS
Contact Telephone Number:
   (718) 780-6154
Plan Name:
 W R GRACE & CO HOURLY EMPLOYEES
 SAVINGS & INVESTMENT PLAN
Plan Number: 100

Dear Applicant:

     Based on the information supplied, we have made a favorable determination on your application identified above.  Please keep this letter in your permanent records.

     Continued qualification of the plan will depend on its effect in operation under its present form.  (See section 1.401-1(b)(3) of the Income Tax Regulations.)  The status of the plan in operation will be reviewed periodically.

     The enclosed document describes the impact of Notice 86-13 and some events that could occur after you receive this letter that would automatically nullify it without specific notice from us.  The document also explains how operation of the plan may affect a favorable determination letter, and contains information about filing requirements.

     This letter relates only to the status of your plan under the Internal Revenue Code.  It is not a determination regarding the effect of other Federal or local statutes.

     This determination is subject to your adoption of the proposed amendments submitted in your or your representative's letter dated Dec 16 & 29, 1988. The proposed amendments should be adopted on or before the date prescribed by the regulations under Code section 401(b).

     This determination letter is applicable for the amendment(s) adopted on May 25, 1988.

     This determination letter is applicable for the plan adopted on January 1, 1987.

Letter 835(DO/CG)

GR 001226

-2-

GRACE & CO

If you have any questions concerning this matter, please contact the
person whose name and telephone number are shown above.

                        Sincerely yours,

                        Eugene D. Alexander
                        District Director

Enclosures:
Publication 794
PWBA 515

Letter 835(DO/CG)

GR 001227

Schedule "G"

## EXISTING GICs

In accordance with Section 5(b), the Investment Committee hereby directs the Trustee to continue to hold the following Existing GICs until such time as the Investment Committee directs otherwise:

- Contract Issuer:      New England
  Effective Date:       7/16/86
  Contract #:           #4501

- Contract Issuer:      Prudential
  Effective Date:       10/15/86
  Contract #:           #5540

- Contract Issuer:      Prudential
  Effective Date:       5/27/87
  Contract #:           #5680

- Contract Issuer:      Metropolitan
  Effective Date:       12/31/87
  Contract #:           #9474-2

- Contract Issuer:      Metropolitan
  Effective Date:       1/13/89
  Contract #:           #10348-0

- Contract Issuer:      Metropolitan
  Effective Date:       10/4/89
  Contract #:           #11170-9

- Contract Issuer:      Prudential
  Effective Date:       10/25/90
  Contract #:           #6657

- Contract Issuer:      Prudential
  Effective Date:       9/5/91
  Contract #:           #6657

- Contract Issuer:      Metropolitan
  Effective Date:       10/92
  Contract #:           #13332

W.R. GRACE & CO.

By William J. Monroe    6/15/93
                        Date

38

GR 001228

- 2 -

We hereby further certify that each Employer (as defined by the Trust Agreement) is bound by Section 15(b) of said Trust Agreement.

The member of the Administrative Committee who is authorized to provide Fidelity with direction with respect to administrative matters is J. A. Longo.  In addition, N. J. Mattera is also authorized to provide Fidelity with direction with respect to such matters.

The members of the Investment Committee who are authorized to provide Fidelity with direction with respect to investment matters are G. P. Jenkins and S. Ollila.  In addition, D. M. Murtaugh and P. M. Fouchet are also authorized to provide Fidelity with direction with respect to such matters for the purpose of maintaining adequate cash reserves.

You may rely upon the foregoing designations and certifications until we deliver to you written notice of a change in the information set forth therein.

Very truly yours,

W. R. Grace & Co.

By _W. L. Monroe_
W. L. Monroe
Vice President

Schedule "H"

## TELEPHONE EXCHANGE PROCEDURES

The following telephone exchange procedures are currently employed by Fidelity Investments Retirement Services Company (FIRSCO).

Telephone exchange hours are 8:30 a.m. (EST) to 8:00 p.m. (EST) on each business day. A "business day" is any day on which the New York Stock Exchange is open.

FIRSCO reserves the right to change these telephone exchange procedures at its discretion, provided that, no change shall become effective unless the Administrator receives 30 days prior notice describing the change.

### Mutual Funds

#### Exchanges Between Mutual Funds

Participants may call on any business day to exchange between the mutual funds. If the request is received before 4:00 p.m. (EST), it will receive that day's trade date. Calls received after 4:00 p.m. (EST) will be processed on a next day basis.

### Fixed-Income Fund

#### Exchanges Between Mutual Funds and Fixed Income Fund

Participants who wish to exchange between a mutual fund and the Fixed Income Fund may call on any business day. If the request is received before 4:00 p.m. (EST), it will receive that day's trade date. Calls received after 4:00 p.m. (EST) will be processed on a next day basis.

#### Exchange Restrictions

Participants will not be permitted to make direct transfers between a GIC Fund and a competing fund. Participants who wish to exchange between the Fixed Income Fund and a competing fund (within the meaning of the GICs or Existing GICs held in the Fixed Income Fund), must first exchange into a non-competing fund for a period of 180 days.

### W.R. Grace Common Stock Fund
### Company Contribution ESOP Stock Fund

#### Exchanges Between Mutual Funds and W.R. Grace Common Stock Fund or Company Contribution ESOP Stock Fund

Participants may call on any business day to exchange between the mutual funds and the W.R. Grace Common Stock Fund or the Company Contribution ESOP Stock Fund. If the request is received before 4:00 p.m. (EST), it will receive that day's trade date. Calls received after 4:00 p.m. (EST) will be processed on a next day basis.

#### Exchanges Between Fixed Income Fund and W.R. Grace Common Stock Fund or Company Contribution ESOP Stock Fund

Participants who wish to between a Fixed Income Fund and the W.R. Grace Common Stock Fund or the Company Contribution ESOP Stock Fund may call on any business day. If

39

GR 001230

the request is received before 4:00 p.m. (EST), it will receive that day's trade date. Calls received after 4:00 p.m. (EST) will be processed on a next day basis.

## Exchange Restrictions

It is the intention of the Trustee to maintain a sufficient liquidity reserve in the W.R. Grace Common Stock Fund and the Company Contribution ESOP Stock Fund to meet exchange, redemption or withdrawal requests. However, if there is insufficient liquidity in either Fund to allow for same day exchanges, the Trustee will be required to sell shares of Sponsor Stock to meet the exchange requests. If this occurs, the subsequent exchange into other Plan investment options will take place five (5) business days later.

W.R. GRACE & CO.

By _William T. Monroe_  6/15/93
       Date

40

GR  001231



**SCHEDULE "I" – *Authorized Signers for Plan(s) Added to a Master Trust***

*[Sponsor's Letterhead]*

Ms. Rebecca Hays
Fidelity Investments Institutional Operations Company, Inc.
300 Puritan Way – MM3H
Marlborough, Massachusetts  01752-3078

*[Name of Plan Being Added to Master Trust]*

Dear Ms. Hays:

This letter is sent to you in accordance with the terms of the Trust Agreement dated as of the [     ] day of [     ], 200__, between [         ] and Fidelity Management Trust Company.

The plan identified above is a tax-qualified defined contribution plan which meets the requirements of Section 21 of said Trust Agreement and which is maintained by the Sponsor, or one of its subsidiaries or affiliates (as identified below), for the benefit of its eligible employees. The above-referenced plan is hereby designated as a "Plan" for purposes of said Trust Agreement. The following individuals or entities are the Administrator and Named Fiduciary(ies) of said Plan(s) (if different from those previously identified by the Sponsor).



Plans  Administrator                                           Named Fiduciary(ies)

[signature of designated individual]                        [signature of designated individual]
[name of designated individual]                             [name of designated individual]


[signature of designated individual]                        [signature of designated individual]
[name of designated individual]                             [name of designated individual]


[signature of designated individual]                        [signature of designated individual]
[name of designated individual]                             [name of designated individual]


The signer(s) of this letter hereby further certify(ies) that each Employer with respect to the foregoing Plan has authorized the assets of such Plan to be deposited in the Trust and, as a result, is bound by Section 19(b) of said Trust Agreement.

You may rely upon the foregoing designations and certifications until we deliver to you written notice of a change in any of the information set forth therein.

Very truly yours,

[SPONSOR]

GR  001232

By: _____

[SPONSOR OF ADDED PLAN, if different]

By: _____

GR 001233

Schedule "J"

## SCHEDULE OF OPERATING PROCEDURES
## FOR THE FIXED INCOME FUND
## OF THE W.R GRACE AND COMPANY SAVINGS AND INVESTMENT PLANS.

I.    Description of Investment Option

The Fixed Income Fund will be comprised of units in the Fidelity Employee Benefit U.S. Government Reserves Portfolio ("STIF"), and the following Guaranteed Investment Contracts ("GICs") purchased prior to the effective date of the Trust Agreement between the Trustee and the Sponsor.

| | |
|---|---|
| The New England - 4501 | Metropolitan Life - 11170-9 |
| Prudential - 5540 | Prudential - 6657   9.75% |
| Prudential - 5680 | Prudential - 6657   10.20% |
| Metropolitan Life - 9474-2 | Prudential - 6657   8.45% |
| Metropolitan Life - 10348-0 | Prudential - 6657   8.90% |
| Metropolitan Life - 13332 | |

II.    Investment Option Transactions

All transactions for the Fixed Income Fund will be coordinated by the Trustee based on the procedures outlined in this document.

III.    Valuation

The Trustee will value the Fixed Income Fund on a daily basis and produce a blended mil rate to reflect the net income earned by the Fixed Income Fund.

IV.    Money Movement

All money transfers to and from the Fixed Income Fund will be made through the STIF portion of the Fixed Income Fund. Plan level transactions representing

cumulative participant level transactions will update nightly to the STIF portion to ensure "same day" settlement of all transactions.

V.    Cash Management

The Sponsor will maintain 3% of the Fixed Income Fund in the STIF portion. The Trustee will monitor the cash flows and the balance of the STIF portion. If the STIF balance exceeds 3%, the Trustee will transfer the excess to the current open window contract. If the STIF balance falls below 3%, the Trustee will request money from the GIC carriers on a LIFO basis to replenish the balance to 3%.

VI.   GIC Placements

The Sponsor will inform the GIC carrier of the Trustee's role as authorized transactor and will direct the GIC carrier to send the Trustee an interest accrual schedule and monthly statements on an on-going basis.

The Sponsor will complete and return to the Trustee a contract purchase memo before 4 p.m. EST ten days prior to any contract funding. The Trustee is then responsible for wiring the funds and any subsequent cash flow out of the STIF portion to the new GIC.

The Sponsor will send any contractual documents for the new GIC to the Trustee for execution. The documents must be accompanied by a letter, signed by an authorized representative of the Sponsor, directing the Trustee to execute the document.

VII.  GIC Maturities

The proceeds from a maturing GIC will be transferred to the STIF portion for subsequent reinvestment in the Fixed Income Fund. The Trustee will provide wiring instructions to the GIC carrier.

VIII. Reconciliation

The Fidelity Participant Recordkeeping System (FPRS) will be reconciled to the Managed Income Portfolio Accounting System (GUIDE) on a daily and monthly basis. The GIC portion will be reconciled to the carrier balances on a monthly basis.

IX.    Fee Collection for Accounting Services

Accounting fees will be deducted from the earnings of the Fixed Income Fund.
the Trustee will collect its fees monthly.

X.    Changes to the Schedule

This Schedule may be amended or modified at any time and from time to time
only by an instrument executed by both the Trustee and the Sponsor.

Fidelity Management Trust Company          W.R. Grace & Co.

By: _6/30/93_____          By: ___6/15/93_____
           Date                         Date

GR  001236

## AMENDMENT TO TRUST AGREEMENT BETWEEN
## FIDELITY MANAGEMENT TRUST COMPANY AND
## W.R. GRACE & CO.

THIS AMENDMENT, effective as of the date first signed below, by and between Fidelity Management Trust Company (the "Trustee") and W.R. Grace & Co. (the "Sponsor");

WITNESSETH:

WHEREAS, the Trustee and the Sponsor heretofore entered into a Trust Agreement dated July 1, 1993, with regard to the W.R. Grace & Co. Salaried Employees Savings and Investment Plan, the W.R. Grace & Co. Hourly Employees Savings and Investment Plan, and the employee stock ownership plans within those plans (individually and collectively, the "Plan"); and

WHEREAS, the Trustee and the Sponsor now desire to amend said Trust Agreement as provided for in Section 14 thereof;

NOW THEREFORE, in consideration of the above premises, the Trustee and the Sponsor hereby amend the Trust Agreement by:

(1)    Restating Section 4(e) <u>Sponsor Stock,</u> in its entirety, as follows:

(e)    <u>Sponsor Stock.</u>  Trust investments in Sponsor Stock shall be made via the W.R. Grace Common Stock Fund (Employee) and the W.R. Grace Company Contribution Stock Fund (Employer) (individually and collectively, the "Stock Fund"). Investments in the Stock Fund shall consist primarily of shares of Sponsor Stock. The Stock Fund shall also include cash or short-term liquid investments, in accordance with this paragraph, in amounts designed to satisfy daily participant exchange or withdrawal requests. Such holdings will include Colchester Street Trust: Money Market Portfolio: Class I or such other Mutual Fund or commingled money market pool as agreed to in writing by the Sponsor and Trustee. The Named Fiduciary shall, after consultation with the Trustee, establish and communicate to the Trustee in writing a target percentage and drift allowance for such short-term liquid investments. Subject to its ability to execute open-market trades in Sponsor Stock or to otherwise trade with the Sponsor, the Trustee shall be responsible for ensuring that the short-term investments held in the Stock Fund falls within the agreed-upon range over time. Each participant's proportional interest in the Stock Fund shall be measured in units of participation, rather than shares of Sponsor Stock. Such units shall represent a proportionate interest in all of the assets of the Stock Fund, which includes shares of Sponsor Stock, short-term investments and at times, receivables and payables (such as receivables and payables arising out of unsettled stock trades). The Trustee shall determine a daily net asset value ("NAV") for each unit outstanding of the Stock Fund. Valuation of the Stock Fund shall be based upon: (a) the New York Stock Exchange ("NYSE") closing price of the stock; or (b) if unavailable, the latest available price as reported by the principal national securities exchange on which the Sponsor Stock is traded (the "Closing Price"); or (c) if neither is available, the price determined in good faith by the Trustee. The NAV shall be adjusted for gains or losses realized on sales of Sponsor Stock, appreciation or depreciation in the value of those shares owned, dividends paid on Sponsor Stock to the extent not used to purchase additional units of the Stock Fund for affected participants, and interest on the short-term investments held by the Stock Fund, payables and receivables for pending stock trades, receivables for dividends not yet distributed, and payables for other expenses of the Stock Fund, including principal obligations, if any, and expenses that, pursuant to Sponsor direction, the Trustee accrues or pays from the Stock Fund. At the direction of the Sponsor, the NAV may also be adjusted for commissions on purchases and sales of Sponsor Stock.

(i)    <u>Acquisition Limit</u>.  Pursuant to the Plan, the Trust may be invested in Sponsor Stock to the extent necessary to comply with investment directions in accordance with this Agreement.  The Sponsor shall be responsible for providing specific direction on any acquisition limits required by the Plan or applicable law.

(ii)    <u>Fiduciary Duty</u>.

(A)    The Named Fiduciary shall continually monitor the suitability under the fiduciary duty rules of section 404(a)(1) of ERISA (as modified by section 404(a)(2) of ERISA) of acquiring and holding Sponsor Stock.  The Trustee shall not be liable for any loss or expense which arises from the directions of the Named Fiduciary with respect to the acquisition and holding of Sponsor Stock, unless it is clear on their face that the actions to be taken under those directions would be prohibited by the foregoing fiduciary duty rules or would be contrary to the terms of this Agreement.

(B)    Each participant with an interest in Sponsor Stock (or, in the event of the participant's death, his beneficiary) is, for purposes of this Section 4(e)(ii), hereby designated as a "named fiduciary" (within the meaning of Section 403(a)(1) of ERISA), with respect to a pro rata portion of allocated shares not purchased at the direction of participants, and such participant (or beneficiary) shall have the right to direct the Trustee as to the manner in which the Trustee is to vote or tender such shares.

(iii)    <u>Purchases and Sales of Sponsor Stock</u>.  Unless otherwise directed by the Sponsor in writing pursuant to directions that the Trustee can administratively implement, the following provisions shall govern purchases and sales of Sponsor Stock.

Purchase and sales of Sponsor Stock shall be made on the open market in accordance with the Trustee's standard trading guidelines, as they may be amended by the Trustee from time to time, as necessary to honor exchange and withdrawal activity and to maintain the target cash percentage and drift allowance for the Stock Fund, provided that:

(A)    If the Trustee is unable to purchase or sell the total number of shares required to be purchased or sold on such day as a result of market conditions; or

(B)    If the Trustee is prohibited by the Securities and Exchange Commission, the New York Stock Exchange or principal exchange on which the Sponsor Stock is traded, or any other regulatory body from purchasing or selling any or all of the shares required to be purchased or sold on such day, then the Trustee shall purchase or sell such shares as soon thereafter as administratively feasible.

(iv)    <u>Execution of Purchases and Sales of Units</u>.  Unless otherwise directed in writing pursuant to directions that the Trustee can administratively implement, purchases and sales of units shall be made as follows:

(A)    Subject to subparagraphs (B) and (C) below, purchases and sales of units in the Stock Fund (other than for exchanges) shall be made on the date on which the Trustee receives from the Administrator in good order all information, documentation, and wire transfers of funds (if applicable), necessary to accurately effect such transactions.   Exchanges of units in the Stock Fund shall be made in accordance with the Exchange Guidelines attached hereto as Schedule "H".

(B)    Aggregate sales of units in the Stock Fund on any day shall be limited to the Stock Fund's Available Liquidity for that day.  For these purposes, Available Liquidity shall mean the amount of short-term investments held in the fund decreased by any outgoing cash for expenses

GR 001238

then due, payables for loan principal, and obligations for pending stock purchases, and increased by incoming cash (such as contributions, exchanges in, loan repayments) and to the extent credit is available and allocable to the Stock Fund, receivables for pending stock sales. In the event that the requested sales exceed the Available Liquidity, then transactions shall be processed giving precedence to distributions, loans and withdrawals, on a first-in first-out (FIFO) basis, as provided in Schedule "L" (the "Specified Hierarchy"). So long as the Stock Fund is open for such transactions, sales of units that are requested but not processed on a given day due to insufficient Available Liquidity shall be suspended until Available Liquidity is sufficient to honor such transactions in accordance with the Specified Hierarchy.

(C)     The Trustee shall close the Stock Fund to sales or purchases of units, as applicable, on any date on which trading in the Sponsor Stock has been suspended or substantial purchase or sale orders are outstanding and cannot be executed.

(v)     <u>Securities Law Reports</u>. The Named Fiduciary shall be responsible for filing all reports required under Federal or state securities laws with respect to the Trust's ownership of Sponsor Stock, including, without limitation, any reports required under section 13 or 16 of the Securities Exchange Act of 1934, and shall immediately notify the Trustee in writing of any requirement to stop purchases or sales of Sponsor Stock pending the filing of any report. The Trustee shall provide to the Named Fiduciary such information on the Trust's ownership of Sponsor Stock as the Named Fiduciary may reasonably request in order to comply with Federal or state securities laws.

(vi)     <u>Voting and Tender Offers</u>. Notwithstanding any other provision of this Agreement the provisions of this Section shall govern the voting and tendering of Sponsor Stock. The Sponsor shall provide and pay for all printing, mailing, tabulation and other costs associated with the voting and tendering of Sponsor Stock. The Trustee, after consultation with the Sponsor, shall prepare the necessary documents associated with the voting and tendering of sponsor stock.

(A)     <u>Voting</u>.
(1)     When the issuer of Sponsor Stock prepares for any annual or special meeting, the Sponsor shall notify the Trustee at least thirty (30) days in advance of the intended record date and shall cause a copy of all proxy solicitation materials to be sent to the Trustee. If requested by the Trustee, the Sponsor shall certify to the Trustee that the aforementioned materials represents the same information that is distributed to shareholders of Sponsor Stock. Based on these materials the Trustee shall prepare a voting instruction form and shall provide a copy of all proxy solicitation materials to be sent to each Plan participant with an interest in Sponsor Stock held in the Trust, together with the foregoing voting instruction form to be returned to the Trustee or its designee. The form shall show the proportional interest in the number of full and fractional shares of Sponsor Stock credited to the participant's accounts held in the Stock Fund.

(2)     Each participant with an interest in the Stock Fund shall have the right to direct the Trustee as to the manner in which the Trustee is to vote (including not to vote) that number of shares of Sponsor Stock reflecting such participant's proportional interest in the Stock Fund (both vested and unvested). Directions from a participant to the Trustee concerning the voting of Sponsor Stock shall be communicated in writing, or by such other means as is agreed upon by the Trustee and the Sponsor. These directions shall be held in confidence by the Trustee and shall not be divulged to the Sponsor, or any officer or employee thereof, or any other person except to the extent that the consequences of such directions are reflected in reports regularly communicated to any such persons in the ordinary course of the performance of the Trustee's services hereunder. Upon its receipt of the directions, the Trustee shall vote the shares of Sponsor

3

GR 001239

Stock reflecting the participant's proportional interest in the Stock Fund as directed by the participant. Except as otherwise required by law, the Trustee shall vote shares of Sponsor Stock credited to a participant's account for which it has received no direction from the participant in the same proportion on each issue as it votes those shares credited to participants' accounts for which it has received voting directions from participants.

(3)    Except as otherwise required by law, the Trustee shall vote that number of shares of Sponsor Stock not credited to participants' accounts in the same proportion on each issue as it votes those shares credited to participants' accounts for which it received voting directions from participants.

(B)    Tender Offers.

(1)    Upon commencement of a tender offer for any securities held in the Trust that are Sponsor Stock, the Sponsor shall timely notify the Trustee in advance of the intended tender date and shall cause a copy of all materials to be sent to the Trustee. The Sponsor shall certify to the Trustee that the aforementioned materials represent the same information distributed to shareholders of Sponsor Stock. Based on these materials and after consultation with the Sponsor the Trustee shall prepare a tender instruction form and shall provide a copy of all tender materials to be sent to each plan participant with an interest in the Stock Fund, together with the foregoing tender instruction form, to be returned to the Trustee or its designee. The tender instruction form shall show the number of full and fractional shares of Sponsor Stock that reflect the participants proportional interest in the Stock Fund (both vested and unvested).

(2)    Each participant with an interest in the Stock Fund shall have the right to direct the Trustee to tender or not to tender some or all of the shares of Sponsor Stock reflecting such participant's proportional interest in the Stock Fund (both vested and unvested). Directions from a participant to the Trustee concerning the tender of Sponsor Stock shall be communicated in writing, or by such other means as is agreed upon by the Trustee and the Sponsor. These directions shall be held in confidence by the Trustee and shall not be divulged to the Sponsor, or any officer or employee thereof, or any other person except to the extent that the consequences of such directions are reflected in reports regularly communicated to any such persons in the ordinary course of the performance of the Trustee's services hereunder. The Trustee shall tender or not tender shares of Sponsor Stock as directed by the participant. Except as otherwise required by law, the Trustee shall not tender shares of Sponsor Stock reflecting a participant's proportional interest in the Stock Fund for which it has received no direction from the participant.

(3)    Except as otherwise required by law, the Trustee shall tender that number of shares of Sponsor Stock not credited to participants' accounts in the same proportion as the total number of shares of Sponsor Stock credited to participants' accounts for which it has received instructions from Participants.

(4)    A participant who has directed the Trustee to tender some or all of the shares of Sponsor Stock reflecting the participant's proportional interest in the Stock Fund may, at any time prior to the tender offer withdrawal date, direct the Trustee to withdraw some or all of the tendered shares reflecting the participant's proportional interest, and the Trustee shall withdraw the directed number of shares from the tender offer prior to the tender offer withdrawal deadline. Prior to the withdrawal deadline, if any shares of Sponsor Stock not credited to participants' accounts have been tendered, the Trustee shall redetermine the number of shares of Sponsor Stock that would be tendered under Section 4(e)(v)(B)(3) if the date of the foregoing withdrawal were the date of determination, and withdraw from the tender offer the number of shares of Sponsor Stock not credited to participants' accounts necessary to reduce the amount of tendered Sponsor Stock not

4

credited to participants' accounts to the amount so redetermined. A participant shall not be limited as to the number of directions to tender or withdraw that the participant may give to the Trustee.

(5)     A direction by a participant to the Trustee to tender shares of Sponsor Stock reflecting the participant's proportional interest in the Stock Fund shall not be considered a written election under the Plan by the participant to withdraw, or have distributed, any or all of his withdrawable shares. The Trustee shall credit to each proportional interest of the participant from which the tendered shares were taken the proceeds received by the Trustee in exchange for the shares of Sponsor Stock tendered from that interest. Pending receipt of directions (through the Administrator) from the participant or the Named Fiduciary, as provided in the Plan, as to which of the remaining investment options the proceeds should be invested in, the Trustee shall invest the proceeds in the investment option described in Schedule "C".

(vii)     General. With respect to all rights other than the right to vote, the right to tender, and the right to withdraw shares previously tendered, in the case of Sponsor Stock credited to a participant's proportional interest in the Stock Fund, the Trustee shall follow the directions of the participant and if no such directions are received, the directions of the Named Fiduciary. The Trustee shall have no duty to solicit directions from participants. With respect to all rights other than the right to vote and the right to tender, in the case of Sponsor Stock not credited to participants' accounts, the Trustee shall follow the directions of the Named Fiduciary.

(viii)     Conversion. All provisions in this Section 4(e) shall also apply to any securities received as a result of a conversion of Sponsor Stock.

(2)     Deleting all references in the Trust Agreement and Schedules thereto to the Sealed Air Common Stock Fund (Employee) and the Sealed Air Preferred Stock Fund (Employee).

(3)     Amending Schedule "H" Telephone Exchange Procedures, by deleting the "W.R. Grace Common Stock Fund Company Contribution ESOP Stock Fund" section and replacing it in its entirety, as follows:

### Stock Fund

Provided that the Stock Fund is open for purchases and sales of units, the following rules will govern exchanges:

I.     **Exchanges From Mutual Funds and/or Fixed Income Fund to the Stock Fund**

Participants may contact Fidelity on any day to exchange from mutual funds and/or the Fixed Income Fund into the Stock Fund. If the request is confirmed before the close of the market (generally, 4:00 p.m. ET) on a business day, it will receive that day's trade date. Requests confirmed after the close of the market on a business day (or on any day other than a business day) will be processed on a next business day basis.

II.     **Exchanges From the Stock Fund to Mutual Funds and/or Fixed Income Fund**

Participants may contact Fidelity on any day to exchange from the Stock Fund to a mutual fund or the Fixed Income Fund. If Fidelity accepts the request conditionally

5

before the close of the market (generally 4:00 p.m. ET) on any business day and Available Liquidity is sufficient to honor the trade after Specified Hierarchy rules are applied, it will receive that day's trade date. Requests accepted conditionally after the close of the market on any business day (or on any day other than a business day) will be processed on a next business day basis, subject to Available Liquidity for such day after application of Specified Hierarchy rules. If Available Liquidity on any day is insufficient to honor the trade after application of Specified Hierarchy rules, it will be suspended until Available Liquidity is sufficient, after application of specified hierarchy rules, to honor such trade, and it will receive the trade date and Closing Price of the date on which it was processed.

(4) Adding a new Schedule "L" <u>Available Liquidity Procedures for Unitized Sponsor Stock Fund</u>, as attached hereto.

IN WITNESS WHEREOF, the Trustee and the Sponsor have caused this Amendment to be executed by their duly authorized officers effective as of the day and year first signed below.

**W.R. GRACE & CO.**

**FIDELITY MANAGEMENT TRUST COMPANY**

By: _Martin Hunter_
    MARTIN HUNTER   Date 2/6/01
    ASSISTANT TREASURER

By: _Arlene Gedder 3/2/01_
    Vice President    Date

6

GR 001242



## SCHEDULE "L"

### AVAILABLE LIQUIDITY PROCEDURES FOR UNITIZED SPONSOR STOCK FUND

The following procedures shall govern sales of the Sponsor Stock Fund requested for a day on which Available Liquidity is insufficient:

1. Loans, withdrawals and distributions will be aggregated and placed first in the hierarchy. If Available Liquidity is sufficient for the aggregate of such transactions, all such loans, withdrawals and distributions will be honored.

2. If Available Liquidity has not been exhausted by the aggregate of loans, withdrawals and distributions, then all remaining transactions involving a sale of units in the Sponsor Stock Fund shall be grouped on the basis of when such requests were received, in accordance with standard procedures maintained by the Trustee for such grouping as they may be amended from time to time. To the extent of Available Liquidity, all transactions in a group shall be honored, on a FIFO basis. If Available Liquidity is insufficient to honor all transactions within a group, then none of such transactions in the group shall be honored. For the purposes of this section a group shall mean those transaction requests which are received within a specific time interval as determined under the Trustee's batch process.

3. Transactions not honored on a particular day due to insufficient Available Liquidity shall be honored, using the hierarchy specified above, on the next business day on which there is Available Liquidity.

7

GR 001243

FIRST AMENDMENT TO THE MASTER TRUST AGREEMENT
BETWEEN W. R. GRACE & CO. AND
FIDELITY MANAGEMENT TRUST COMPANY

WHEREAS, W. R. Grace & Co. ("Grace") and Fidelity Management Trust Company

(the "Trustee") became parties to the Master Trust Agreement between Grace and the

Trustee (the "Agreement"), effective as of July 1, 1993; which Agreement constitutes an

amendment and restatement of the trust agreement entered into by Grace and The

Northern Trust Company; and

WHEREAS, Section 14 of the Agreement provides that the Investment Committee

and the Trustee may amend the Agreement at any time; and

WHEREAS, the Investment Committee and the Trustee desire to amend the

Agreement;

NOW THEREFORE, the Agreement is amended effective July 1, 1993 as follows:

1.    Section 1(j) is amended to read as follows:

"'Investment Committee' shall mean the committee,

designated by the Sponsor, which has responsibility (i) for

investing the assets of the Plans and, with respect to Plans

where Participants have the right to direct the assets

allocated to their accounts among investment options, for

selecting those investment options, (ii) for the appointment

and removal of investment advisors, if any, and (iii) for other

matters described herein; and the Investment Committee

shall be deemed for purposes of ERISA to be the named

fiduciary for Plan investments."

2.    Section 1(o) is amended to read as follows:

"'Sponsor' shall mean W.R. Grace & Co., a New York corporation, or any successor to all or substantially all of its businesses which, by agreement, operation of law or otherwise, assumes the responsibility of the Sponsor under this Agreement.   The Sponsor has the responsibility for assuring that the Plans do not violate any provision of ERISA limiting the acquisition or holding of Sponsor Stock or other property of the Sponsor."

3.    Section 5(e)(iii) is amended by replacing the term 'Investment Committee' in that Section with the phrase 'Administrative Committee or Sponsor'".

Investment Committee

By _____

Fidelity Management Trust Company

By _____
Senior Vice President

- 2 -

GR 001245

SECOND AMENDMENT TO THE
MASTER TRUST AGREEMENT BETWEEN
FIDELITY MANAGEMENT TRUST COMPANY AND
W. R. GRACE & CO.


WHEREAS, W. R. Grace & Co. ("Grace") and Fidelity Management Trust Company (the "Trustee") became parties to the Master Trust Agreement between Grace and the Trustee (the "Agreement"), effective as of July 1, 1993; which Agreement constitutes an amendment and restatement of the trust agreement entered into by Grace and The Northern Trust Company; and

WHEREAS, Section 14 of the Agreement provides that the Investment Committee and the Trustee may amend the Agreement at any time; and

WHEREAS, the Investment Committee and the Trustee desire to amend the Agreement;

THEREFORE, the Agreement is amended effective July 1, 1993 as follows:

By adding the following paragraph to the end of Section 5(b):

> The Trust also shall consist of shares of TSL Holdings Inc. common stock and a Tandon Corp. Computer purchase coupon transferred from the previous trustee under the Plans. The Sponsor hereby directs the Trustee that such assets have no current value. The Sponsor further directs the Trustee to hold these securities until the Sponsor assigns a value to the securities and directs the Trustee as to the disposition of such assets. The Sponsor shall be solely responsible for the valuation of such assets held in the Trust.


INVESTMENT COMMITTEE                    FIDELITY MANAGEMENT TRUST COMPANY

By _____ 7/27/93           By _____ 8/20/93
   Chairman          Date                 Senior Vice President    Date

GR  001246

THIRD AMENDMENT TO THE
MASTER TRUST AGREEMENT BETWEEN
FIDELITY MANAGEMENT TRUST COMPANY AND
W. R. GRACE & CO.

WHEREAS, W. R. Grace & Co. ("Grace") and Fidelity Management Trust Company (the "Trustee") became parties to the Master Trust Agreement between Grace and the Trustee (the "Agreement"), effective as of July 1, 1993; which Agreement constitutes an amendment and restatement of the trust agreement entered into by Grace and The Northern Trust Company; and

WHEREAS, Section 14 of the Agreement provides that the Investment Committee and the Trustee may amend the Agreement at any time; and

WHEREAS, Grace has informed the Trustee that, effective 12/1/93, the Grace Energy Corporation Employees Savings and Investment Plan will be merged with and into the W. R. Grace & Co. Salaried Employees Savings and Investment Plan and the participants of the Grace Energy Corporation Employees Savings and Investment Plan will then become participants of the W. R. Grace & Co. Salaried Employees Savings and Investment Plan; and

WHEREAS, the Investment Committee and the Trustee desire to amend the Agreement:

NOW THEREFORE, the Agreement is amended effective December 1, 1993 as follows::

(1)     Deleting all references to the Grace Energy Corporation Employees Savings and Investment Plan effective 12/1/93.

(2)     Amending the money classifications for the W. R. Grace & Co. Salaried Employees Savings and Investment Plan on Schedule "A" to include the following:

        Company Match GEC
        Company NRG

IN WITNESS WHEREOF, Grace and the Trustee have caused this Third Amendment to be executed by their duly authorized officers effective as of the day and year first above written.

INVESTMENT COMMITTEE

By _Lloyd Jenkins_  _4/15/93_
                       Date
_Chairman, Investment_
_Committee_

FIDELITY MANAGEMENT
TRUST COMPANY

By _____  _11/29/93_
  Senior Vice President       Date

GR 001247



FOURTH AMENDMENT TO THE
MASTER TRUST AGREEMENT BETWEEN
FIDELITY MANAGEMENT TRUST COMPANY AND
W.R. GRACE & CO.

THIS FOURTH AMENDMENT, dated as of the first day of May, 1994, by and between Fidelity Management Trust Company (the "Trustee") and W.R. Grace & Co. (the "Sponsor");

WITNESSETH:

WHEREAS, the Trustee and the Sponsor heretofore entered into a master trust agreement dated July 1, 1993, with regard the W.R. Grace & Co. Salaried Employees Savings and Investment Plan, W.R. Grace & Co. Hourly Employees Savings and Investment Plan, and the employee stock ownership plans within those plans (collectively and individually, the "Plan"); and

WHEREAS, the Trustee and the Sponsor now desire to amend said master trust agreement as provided for in Section 14 thereof;

NOW THEREFORE, in consideration of the above premises the Trustee and the Sponsor hereby amend the master trust agreement by:

(1)    Amending and restating the Annual Participant Fee on Schedule "B", to read as follows:

Annual Participant Fee                   $26.00 per participant*,
                                         billed and payable quarterly.

IN WITNESS WHEREOF, the Trustee and the Sponsor have caused this Fourth Amendment to be executed by their duly authorized officers effective as of the day and year first above written.

INVESTMENT COMMITTEE                     FIDELITY MANAGEMENT
                                         TRUST COMPANY

By _____              By _____ 6/13/94
   Chairman,        Date                    Senior Vice President    Date
   Investment Committee

GR 001248



FIFTH AMENDMENT TO TRUST AGREEMENT BETWEEN
FIDELITY MANAGEMENT TRUST COMPANY AND
W.R. GRACE & CO.

THIS FIFTH AMENDMENT, dated as of the first day of March, 1996, by and between Fidelity Management Trust Company (the "Trustee") and W.R. Grace & Co. (the "Sponsor");

WITNESSETH:

WHEREAS, the Trustee and the Sponsor heretofore entered into a Trust Agreement dated July 1, 1993, with regard to the W.R. Grace & Co. Salaried Employees Savings and Investment Plan, the W.R. Grace & Co. Hourly Employees Savings and Investment Plan, and the employee stock ownership plans within those plans(collectively and individually, the "Plan"); and

WHEREAS, the Trustee and the Sponsor now desire to amend said trust agreement as provided for in Section 14 thereof;

NOW THEREFORE, in consideration of the above premises the Trustee and the Sponsor hereby amend the trust agreement by:

(1)     Amending and restating the Annual Participant Fee on Schedule "B", to read as follows:

Annual Participant Fee:            $22.00 per participant*, billed and payable quarterly.

IN WITNESS WHEREOF, the Trustee and the Sponsor have caused this Fifth Amendment to be executed by their duly authorized officers effective as of the day and year first above written.

W.R. GRACE & CO.
~~INVESTMENT~~ COMMITTEE
ADMINISTRATIVE

By: _Joseph Mayo_  3-18-96
                            Date

FIDELITY MANAGEMENT TRUST COMPANY

By: _____ 4/8/96
Vice President                    Date

GR 001249

SIXTH AMENDMENT TO TRUST AGREEMENT BETWEEN
FIDELITY MANAGEMENT TRUST COMPANY AND
W.R. GRACE & CO.

THIS SIXTH AMENDMENT, dated as of the eleventh day of November, 1996, by and between Fidelity Management Trust Company (the "Trustee") and W.R. Grace & Co. (the "Sponsor");

WITNESSETH:

WHEREAS, the Trustee and the Sponsor heretofore entered into a Trust Agreement dated July 1, 1993, with regard to the W.R. Grace & Co. Salaried Employees Savings and Investment Plan, the W.R. Grace & Co. Hourly Employees Savings and Investment Plan, and the employee stock ownership plans within those plans (collectively and individually, the "Plan"); and

WHEREAS, the Sponsor has notified the Trustee that, effective September 27, 1996, it has replaced the W.R. Grace Common Stock Fund and the Company Contribution ESOP Stock Fund with the W.R. Grace Common Stock Fund, the Fresenius ADS Fund, the FNMC Preferred (Employee) Fund, the Company Contribution Fund and the FNMC Preferred (Company) Fund; and

WHEREAS, the Trustee and the Sponsor now desire to amend said Trust Agreement as provided for in Section 14 thereof;

NOW THEREFORE, in consideration of the above premises, the Trustee and the Sponsor hereby amend the Trust Agreement as follows:

(1)    **Effective upon the execution of this Sixth Amendment**, all references to "Fidelity Employee Benefit U.S. Government Reserves Portfolio" shall be replaced with "Fidelity Institutional Cash Portfolios: Money Market Portfolio: Class I or such other Mutual Fund or commingled money market pool as agreed to by the Sponsor and Trustee."

(2)    Section 5(g) is amended by adding the following paragraph after the last paragraph of said section:

The Investment Committee shall have the right to direct the Trustee as to the manner in which the Trustee is to vote the shares held in Fidelity Institutional Cash Portfolios: Money Market Portfolio: Class I or such other Mutual Fund or commingled money market pool as agreed to by the Sponsor and Trustee.

(3)    Amending Section 4 by adding the following as Section 4(c):

Participant Withdrawal Requests.  The Sponsor hereby directs that, pursuant to the Plan, a participant withdrawal request (in-service or full withdrawal) may be made by the participant via telephone and the Trustee shall process such request only after the identity of the participant is verified by use of a personal identification number ("PIN")

GR 001250

and social security number. The Trustee shall process such withdrawal in accordance with the written guidelines provided by the Sponsor.

(4)    **Effective September 27, 1996**, amending Section 5(e) by restating the first paragraph in its entirety as follows:

(e) <u>Sponsor Stock</u>. Trust investments in Sponsor Stock shall be made via the W.R. Grace Common Stock Fund, the Company Contribution Stock Fund, the Fresenius ADS Fund, the FNMC Preferred (Employee) Fund and the FNMC Preferred (Company) Fund (individually, the "Stock Fund"). All of the Stock Funds may include short-term liquid investments, including Fidelity Institutional Cash Portfolios: Money Market Portfolio: Class 1 or such other Mutual Fund or commingled money market pool as agreed to by the Sponsor and Trustee, necessary to satisfy each Stock Fund's cash needs for transfers and payments. In addition to short-term liquid investments, each of the Stock Funds shall consist of the following: the W.R. Grace Common Stock Fund shall consist of shares of Sponsor Stock; the Company Contribution Stock Fund shall consist of shares of Sponsor Stock and, for a limited period, American Depository Shares (ADS) of Fresenius AG; the Fresenius ADS Fund shall consist of Fresenius ADSs; the FNMC Preferred (Employee) Fund shall consist of FNMC Preferred Stock; and the FNMC Preferred (Company) Fund shall consist of FNMC Preferred Stock.

The Sponsor hereby directs the Trustee, in accordance with Section 8(c), to begin to liquidate the FNMC Preferred (Employee) Fund on October 9, 1996, and invest the proceeds in the W.R. Grace Common Stock Fund, and to begin to liquidate the FNMC Preferred (Company) Fund on October 9, 1996, and invest the proceeds in the Company Contribution Stock Fund. The parties hereto agree that the Trustee shall have no discretionary authority with respect to this sale and transfer directed by the Sponsor. Any variation from the procedure described herein may be instituted only at the express written directions of the Sponsor.

A cash target range shall be maintained in each Stock Fund. Such target range may be changed as agreed to in writing by the Sponsor and the Trustee. The Trustee is responsible for ensuring that the actual cash held in the Stock Fund falls within the agreed upon range over time.

Each participant's proportional interest in the Stock Fund shall be measured in units of participation, rather than shares of Sponsor Stock. Such units shall represent a proportionate interest in all of the assets of the Stock Fund, which includes shares of Sponsor Stock, short-term investments and at times, receivables for dividends and/or Sponsor Stock sold and payables for Sponsor Stock purchased. A Net Asset Value ("NAV") per unit will be determined daily for each unit outstanding of the Stock Fund. The return earned by the Stock Fund will represent a combination of the dividends paid on the shares of Sponsor Stock held by the particular Stock Fund, gains or losses realized on sales of Sponsor Stock, appreciation or depreciation in the market price of those shares owned, and interest on the short-term investments held by the particular Stock Fund.

Dividends received by the W.R. Grace Common Stock Fund are reinvested in additional shares of Sponsor Stock. Dividends paid to the Trust on shares of Sponsor Stock held in the Company Contribution Stock Fund shall be allocated to a separate account (the "Dividends Account") within the Trust. The assets of the Dividends Account shall be invested in Fidelity Institutional Cash Portfolios: Money Market Portfolio: Class 1 or such other Mutual Fund or commingled money market pool as agreed to by the Sponsor and Trustee. The interest credited to the Dividends Account shall be reinvested in the Company Contribution Stock Fund on a monthly basis. The Trustee shall make such payments from the Dividends Account at such time or times, and to such entity designated by the Administrator as paying agent for such dividends, as the Administrator shall direct in writing. The Sponsor acknowledges that any cash so paid to the paying agent shall be held in trust by such paying agent until disbursed to Participants in accordance with the terms of the Plan. The Trustee shall have no responsibility for the tax reporting of such dividends. Investments in Sponsor Stock shall be subject to the following limitations:

(5)     Amending Section 5(e)(iv)(B) by restating the first sentence in its entirety as follows:

(B)  Use of an Affiliated Broker.  The Investment Committee hereby directs the Trustee to use Fidelity Brokerage Services, Inc. ("FBSI"), an affiliate of the Trustee, to provide brokerage services in connection with the purchase or sale of Sponsor Stock in accordance with directions from Participants or the Investment Committee.

(6)     Amending and restating Section 5(f), in its entirety, to read as follows:

(f)     Notes.  The Administrator shall act as the Trustee's agent for the participant loan notes and as such shall (i) collect and remit all principal and interest payments to the Trustee and (ii) keep the proceeds of such loans separate from the other assets of the Administrator and clearly identify such assets as Plan assets. To originate a participant loan, the Plan participant shall direct the Trustee as to the term and the amount of the loan to be made from the participant's individual account. Such directions shall be made by Plan participants by use of the telephone exchange system maintained for such purpose by the Trustee or its agent. The Trustee shall determine, based on the current value of the participant's account on the date of the request and any guidelines provided by the Sponsor, the amount available for the loan. Based on the monthly interest rate specified by the Sponsor in accordance with the terms of the Plan, the Trustee shall advise the participant of such interest rate, as well as the installment payment amounts. The Trustee shall distribute the loan note with the proceed check to the participant. The Trustee shall also distribute truth-in-lending disclosure to the participant. To facilitate recordkeeping, the Trustee may destroy the original of any promissory note made in connection with a loan to a participant under the Plan, provided that the Trustee first creates a duplicate by a photographic or optical scanning or other process yielding a reasonable facsimile of the promissory note and the Plan participant's signature thereon, which duplicate may be reduced or enlarged in size from the actual size of the original promissory note.



(7)    Amending the "investment options" portion of Schedules "A" and "C" by deleting the Company Contribution ESOP Stock Fund and adding the following:

      Company Contribution Stock Fund
      Fresenius ADS Fund (frozen to new investment - fund to expire by 12/31/98)
      FNMC Preferred (Employee) Fund (frozen - fund to expire by 10/31/96)
      FNMC Preferred (Company) Fund (frozen- fund to expire by 10/31/96)

(8)    Amending and restating the third bullet under the "Processing" section of Schedule "A" to read as follows:

    *    Daily processing of in-service withdrawals and terminations (full distributions) via telephone due to specific circumstances previously authorized by the Sponsor.

    IN WITNESS WHEREOF, the Trustee and the Sponsor have caused this Sixth Amendment to be executed by their duly authorized officers effective as of the day and year first above written.

W.R. GRACE & CO.                  FIDELITY MANAGEMENT TRUST COMPANY
ADMINISTRATIVE COMMITTEE

By: _Joseph Loyo_ 5-14-97    By: _Sue B Lewis_ 5/23/97
                    Date     Vice President           Date

GR 001253

SEVENTH AMENDMENT TO TRUST AGREEMENT BETWEEN
FIDELITY MANAGEMENT TRUST COMPANY AND
W.R.GRACE & CO.

THIS SEVENTH AMENDMENT, dated as of the first day of March, 1998, by and between Fidelity Management Trust Company (the "Trustee") and W.R. Grace & Co. (the "Sponsor");

WITNESSETH:

WHEREAS, the Trustee and the Sponsor heretofore entered into a Trust Agreement dated July 1, 1993, with regard to the W.R. Grace & Co. Salaried Employees Savings and Investment Plan, the W.R. Grace & Co. Hourly Employees Savings and Investment Plan, and the employee stock ownership plans within those plans (collectively and individually, the "Plan"); and

WHEREAS, the Trustee and the Sponsor now desire to amend said Trust Agreement as provided for in Section 14 thereof;

NOW THEREFORE, in consideration of the above premises the Trustee and the Sponsor hereby amend the Trust Agreement by:

(1)     Amending Section 5(i), <u>Trustee Powers</u>, by adding the following new subsection (ix):

(ix)     <u>Common or Collective Trusts</u>. To invest all or any part of the assets of the Trust Fund in any collective investment trust or group trust which then provides for the pooling of the assets of plans described in Section 401(a) of ERISA and exempt from tax under Section 501(a) of the Internal Revenue Code ("Code"), or any comparable provisions of any future legislation that amends, supplements, or supersedes those sections, provided that such collective investment trust or group trust is exempt from tax under the Code or regulations or rulings issued by the IRS; the provisions of the document governing such collective investment trusts or group trusts, as it may be amended from time to time, shall govern any investment therein and are hereby made a part of this Plan document and its corresponding Trust Agreement.

(2)     Amending the "Annual Participant Fee" section of Schedule "B" by restating as follows:

**Effective January 1, 1998:**

Annual Participant Fee                    $12 per participant*, billed and payable quarterly.

(3)     Amending Schedule "B" by adding a new "Note" section as follows:

<u>Note</u>: These fees have been negotiated and accepted based on the following Plan characteristics: two plans in the relationship, total current plan assets of $800.9 million, current participation of 10,300 participants, current GIC assets of $339.1 million, current stock assets of $224.2 million, total Fidelity managed Mutual Fund assets of $237.6

GR 001254

million and positive projected net cash flows.  Fees will be subject to revision if these Plan characteristics change significantly by either falling below or exceeding current or projected levels.  Fees also have been based on the use of up to 10 investment options, and such fees will be subject to revision if additional investment options are added.


IN WITNESS WHEREOF, the Trustee and the Sponsor have caused this Seventh Amendment to be executed by their duly authorized officers effective as of the day and year first above written.

W.R. GRACE & CO.

By _William T. Monroe__ 2/5/98
      _Sharon Fein_      Date
                        2/6/98

FIDELITY MANAGEMENT TRUST COMPANY

By _____  3/3/98
      Vice President        Date

2

GR  001255

EIGHTH AMENDMENT TO TRUST AGREEMENT BETWEEN
FIDELITY MANAGEMENT TRUST COMPANY AND
W.R.GRACE & CO.

THIS EIGHTH AMENDMENT, dated as of the thirty first day of March, 1998, by and
between Fidelity Management Trust Company (the "Trustee") and W.R. Grace & Co. (the
"Sponsor");

WITNESSETH:

WHEREAS, the Trustee and the Sponsor heretofore entered into a Trust Agreement dated July
1, 1993, with regard to the W.R. Grace & Co. Salaried Employees Savings and Investment Plan, the
W.R. Grace & Co. Hourly Employees Savings and Investment Plan, and the employee stock
ownership plans within those plans (collectively and individually, the "Plan"); and

WHEREAS, the Trustee and the Sponsor now desire to amend said Trust Agreement as
provided for in Section 14 thereof;

NOW THEREFORE, in consideration of the above premises the Trustee and the Sponsor
hereby amend the Trust Agreement by:

(1)    Amending the first Paragraph of Section 5(e) Sponsor Stock, in its entirety, as follows:

(e) Sponsor Stock. Trust investments in Sponsor Stock shall be made via the
W.R Grace Common Stock Fund, the Company Contribution Stock Fund, the Fresenius ADS
Fund, the FNMC Preferred (Employee) Fund, the FNMC Preferred (Company) Stock Fund,
the Sealed Air Common Stock Fund, and the Sealed Air Preferred Stock Fund (individually,
the "Stock Fund"). All of the Stock Funds may include short-term liquid investments,
including Fidelity Institutional Cash Portfolios: Money Market Portfolio: Class 1 or such
other Mutual Fund or commingled money market pool as agreed to by the Sponsor and
Trustee, necessary to satisfy each Stock Fund's cash needs for transfers and payments. In
addition to short-term liquid investments, each of the Stock Funds shall consist of the
following: the W.R. Grace Common Stock Fund shall consist of shares of Sponsor Stock; the
Company Contribution Stock Fund shall consist of shares of Sponsor Stock and, for a limited
period, American Depository Shares (ADS) of Fresenius AG; the Fresenius ADS Fund shall
consist of Fresenius ADSs; the FNMC Preferred (Employee) Fund shall consist of FNMC
Preferred Stock; the FNMC Preferred (Company) Fund shall consist of FNMC Preferred
Stock; the Sealed Air Common Stock Fund shall consist of Sealed Air Common Stock; and the
Sealed Air Preferred Stock Fund shall consist of Sealed Air Preferred Stock. Dividends
received by the Sealed Air Common Stock Fund and/or the Sealed Air Preferred Stock Fund
are allocated to participant investments in the Fixed Income Fund.

(2)    By adding the following sentence to the end of Section 5(e)(VI)(B)(5)(viii):

With respect to any conversion rights associated with Sealed Air Preferred Stock, the
Trustee shall follow solely the directions of the Investment Committee.

GR 001256

(3)    Amending Section 5(i), <u>Trustee Powers</u>, by adding a new subsection (x) as follows:

(x)  To borrow funds from a bank not affiliated with the Trustee in order to provide sufficient liquidity to process Plan transactions in a timely fashion; provided that the cost of such borrowing shall be allocated in a reasonable  fashion to the investment fund(s) in need of liquidity.

(4)    Amending the "investment options" section of  Schedules "A" and "C"  to add the following:

    *   Sealed Air Common Stock Fund  (frozen to new investments)
    *   Sealed Air Preferred Stock Fund  (frozen to new investments)

(5)    Amending Schedule "H" <u>Telephone Exchange Procedures</u>, to add the following provisions governing the Sealed Air Common Stock Fund and the Sealed Air Preferred Stock Fund:

**Sealed Air Common Stock Fund; Sealed Air Preferred Stock Fund**

**I.      Exchanges Between Investment Options and the Sealed Air Common Stock Fund;
Sealed Air Preferred Stock Fund**

Subject to the Exchange Restrictions set forth below, participants may call on any business day to exchange between the Sealed Air Common Stock Fund and/or the Sealed Air Preferred Stock Fund and the other available Investment Options.  If the request is received before 4:00 p.m. (ET), it will receive that day's trade date.  Calls received after 4:00 p.m. (ET) will be processed on a next business day basis.

**II.     Exchange Restrictions**

Participants will not be permitted to exchange into the Sealed Air Common Stock Fund and/or the Sealed Air Preferred Stock Fund.

IN WITNESS WHEREOF, the Trustee and the Sponsor have caused this Eighth Amendment to be executed by their duly authorized officers effective as of the day and year first above written.

W.R. GRACE & CO.        FIDELITY MANAGEMENT TRUST
ADMINISTRATIVE COMMITTEE    COMPANY

By _____  6/2/98    By _____  8/5/99
        Date      Vice President      Date

2

GR  001257

### NINTH AMENDMENT TO TRUST AGREEMENT BETWEEN
### FIDELITY MANAGEMENT TRUST COMPANY AND
### W.R. GRACE & CO.

THIS NINTH AMENDMENT, dated as of the first day of November, 1999, by and between Fidelity Management Trust Company (the "Trustee") and W.R. Grace & Co. (the "Sponsor");

### WITNESSETH:

WHEREAS, the Trustee and the Sponsor heretofore entered into a Trust Agreement dated July 1, 1993, with regard to the W.R. Grace & Co. Salaried Employees Savings and Investment Plan, the W.R. Grace & Co. Hourly Employees Savings and Investment Plan, and the employee stock ownership plans within those plans (collectively and individually, the "Plan"); and

WHEREAS, the Trustee and the Sponsor now desire to amend said Trust Agreement as provided for in Section 14 thereof;

NOW THEREFORE, in consideration of the above premises the Trustee and the Sponsor hereby amend the Trust Agreement by:

(1)     Amending the "Other" Section of Schedule "A" to add the following bullet point:

\* Change of Address by Telephone: The Trustee shall allow terminated and retired participants to make address changes via Fidelity's toll-free telephone service.

IN WITNESS WHEREOF, the Trustee and the Sponsor have caused this Ninth Amendment to be executed by their duly authorized officers effective as of the day and year first above written.

**W.R. GRACE & CO.**
~~ADMINISTRATIVE COMMITTEE~~

By _Elyse Napoli Filon_  10/15/99
                        **Date**

**FIDELITY MANAGEMENT TRUST COMPANY**

By _Carolyn Redder_ 10/29/99
  Vice President      **Date**

GR 001258



### TENTH AMENDMENT TO TRUST AGREEMENT BETWEEN
### FIDELITY MANAGEMENT TRUST COMPANY AND
### W.R. GRACE & CO.

THIS TENTH AMENDMENT, dated as of the first day of November, 1999, by and between Fidelity Management Trust Company (the "Trustee") and W.R. Grace & Co. (the "Sponsor");

### WITNESSETH:

WHEREAS, the Trustee and the Sponsor heretofore entered into a Trust Agreement dated July 1, 1993, with regard to the W.R. Grace & Co. Salaried Employees Savings and Investment Plan, the W.R. Grace & Co. Hourly Employees Savings and Investment Plan, and the employee stock ownership plans within those plans (collectively and individually, the "Plan"); and

WHEREAS, the Sponsor has made available to Plan participants investment options including Stock Funds; and

WHEREAS, beginning in the first calendar quarter of 1998, the Sponsor from time to time has directed the Trustee to liquidate the assets held in certain Stock Funds and to offer new Stock Funds to Plan participants; and

WHEREAS, the parties now desire to update the Trust Agreement provisions regarding Sponsor Stock to accurately reflect the current Stock Fund investment options available to Plan participants and to make certain other changes to the Trust Agreement; and

WHEREAS, the Trustee and the Sponsor now desire to amend said Trust Agreement as provided for in Section 14 thereof;

NOW THEREFORE, in consideration of the above premises the Trustee and the Sponsor hereby amend the Trust Agreement by:

(1)    Amending the first Paragraph of Section 5(e) Sponsor Stock, in its entirety, as follows:

(e) Sponsor Stock. Trust investments in Sponsor Stock shall be made via the W.R Grace Common Stock Fund (Employer), the W.R. Grace New Common Stock Fund (Employee), the Sealed Air Common Stock Fund (Employee), and the Sealed Air Preferred Stock Fund (Employee)(individually, each a "Stock Fund"). All of the Stock Funds may include short-term liquid investments, including Fidelity Institutional Cash Portfolios: Money Market Portfolio: Class I or such other Mutual Fund or commingled money market pool as agreed to by the Sponsor and Trustee, necessary to satisfy each Stock Fund's cash needs for transfers and payments. In addition to short-term liquid investments, each of the Stock Funds shall consist of the following: the W.R. Grace Common Stock Fund (Employer) and the W.R. Grace New Common Stock Fund (Employee) shall consist of shares of Sponsor Stock; the Sealed Air Common Stock Fund (Employee) shall consist of Sealed Air Common Stock; and the Sealed Air Preferred Stock Fund (Employee) shall consist of Sealed Air Preferred Stock. Dividends, if any, received by the Sealed Air Common Stock Fund (Employee) and/or the Sealed Air Preferred Stock Fund (Employee) are allocated to participant investments in the Fixed Income Fund.

(2)    Amending the "investment options" section of Schedules "A" and "C" to add the following:

*   Sealed Air Common Stock Fund (Employee) (frozen to new investments)
*   Sealed Air Preferred Stock Fund (Employee) (frozen to new investments)

(3)    Amending Schedule "H" Telephone Exchange Procedures, to add the following provisions governing the Sealed Air Common Stock Fund and the Sealed Air Preferred Stock Fund:

**Sealed Air Common Stock Fund (Employee); Sealed Air Preferred Stock Fund (Employee)**

**I.    Exchanges Between Investment Options and the Sealed Air Common Stock Fund (Employee); Sealed Air Preferred Stock Fund (Employee)**

Subject to the Exchange Restrictions set forth below, participants may call on any business day to exchange between the Sealed Air Common Stock Fund (Employee) and/or the Sealed Air Preferred Stock Fund (Employee) and the other available Investment Options. If the request is received before 4:00 p.m. (ET), it will receive that day's trade date. Calls received after 4:00 p.m. (ET) will be processed on a next business day basis.

**II.    Exchange Restrictions**

Participants will not be permitted to exchange into the Sealed Air Common Stock Fund (Employee) and/or the Sealed Air Preferred Stock Fund (Employee).

(4)    **Effective December 21, 1998,** amending Section 5. Investment of Trust, to add a new subsection (h) as follows, and by relettering all subsequent subsections accordingly.

(h) Outside Managed Separate Investment Funds.

(i) This subsection is intended to authorize appointment of an investment manager as contemplated in Section 402(c)(3) of ERISA.

Sponsor may appoint an investment manager with respect to some or all of the assets of the Plan. The appointment of the investment manager shall be made by an officer of Sponsor or other named fiduciary authorized by a resolution of Sponsor's Board of Directors, or its designee, to make such appointments. The authority of the investment manager shall not begin until Trustee receives from Sponsor notice satisfactory to Trustee that the investment manager has been appointed and that the investment manager has acknowledged in writing that with respect to the relevant assets of the Fund he or she or it is a fiduciary with respect to the Plan within the meaning of ERISA. The investment manager's authority shall continue until Trustee receives similar notice that the appointment has been rescinded. By notifying Trustee of the appointment of an investment manager, Sponsor shall be deemed to warrant that such investment manager meets the requirements of Section 3(38) of ERISA, but Trustee

2

GR 001260

may demand independent evidence that any investment manager meets those requirements.

The assets with respect to which a particular investment manager has been appointed shall be segregated from all other assets held by Trustee under this Agreement and the investment manager shall have the duty and power to direct Trustee in every aspect of their investment. The Trustee shall follow the directions of an investment manager regarding the investment and reinvestment of the Trust, or such portion thereof as shall be under management by the investment manager, and shall be under no duty or obligation to review any investment to be acquired, held or disposed of pursuant to such directions nor make any recommendations with respect to the disposition or continued retention of any such investment. The Trustee shall have no liability or responsibility for acting without question on the direction of, or failing to act in the absence of any direction from an investment manager, unless the Trustee has knowledge that by such action or failure to act it will be participating in or undertaking to conceal a breach of fiduciary duty by that investment manager. Upon request, Trustee shall execute appropriate powers of attorney authorizing an investment manager appointed hereunder to exercise the powers and duties of the investment manager.

Trustee may rely upon any order, certificate, notice, direction or other documentary confirmation purporting to have been issued or given by an investment manager which Trustee believes to be genuine and to have been issued or given by such investment manager.

An investment manager shall certify, at the request of the trustee, the value of any securities or other property held in any fund managed by such investment manager, and such certification shall be regarded as a direction with regard to such valuation. The Trustee shall be entitled to conclusively rely upon such valuation.

Any oral direction shall be followed by a written confirmation as soon as practical. Trustee shall follow the procedures established by Sponsor to validate such oral directions.

(5)   **Effective December 21, 1998,** restating Schedule "J" in its entirety, as attached hereto.


IN WITNESS WHEREOF, the Trustee and the Sponsor have caused this Ninth Amendment to be executed by their duly authorized officers effective as of the day and year first above written.

**W.R. GRACE & CO.**
~~ADMINISTRATIVE COMMITTEE~~

**FIDELITY MANAGEMENT TRUST COMPANY**

By _Elyse Napoli F. Cu 10/25/99_
                    Date

By _Carolyn Balder 11/13/99_
Vice President              Date

3

GR 001261

## SCHEDULE "J"

### OPERATING PROCEDURES FOR THE FIXED INCOME FUND OF THE
### W.R. GRACE & CO. SAVINGS AND INVESTMENT PLANS

I.     **Description of Investment Option**

The Fixed Income Fund (the "Portfolio") may be comprised of existing investment contracts including synthetic investment contracts, units in the Colchester Street Trust: Money Market Portfolio Class I ("STIF") and additional assets to be purchased by Dwight Asset Management Company (the "External Manager") on behalf of the Portfolio.

II.     **Investment Option Transactions**

All accounting transactions for the Portfolio will be coordinated by Fidelity Management Trust Company (the "Trustee") based on the procedures outlined in this document.

III.     **Valuation**

The Trustee will value the entire Portfolio, at a net asset value of $1 per share, on a daily basis and produce a blended mil rate. For purposes of this agreement, the mil rate is the prior day's interest rate earned on net equity. The External Manager may purchase investments that the Trustee may not be able to value. The Trustee will identify securities that it is unable to value, and provide the External Manager with a list of such securities prior to settlement date of the securities. In such cases, the External Manager agrees that it will be solely responsible for securing valuation from an independent third-party broker ("Broker"). The External Manager accepts responsibility for ensuring that accurate and complete valuation information is forwarded to the Trustee.

IV.     **Custody**

The Trustee provides custody services for synthetic investment contracts pursuant to an arrangement with Bankers Trust Company which acts as sub-custodian. This custody arrangement is intended for fixed income assets purchased in conjunction with benefit responsive wrap contracts allowing the combined asset or "synthetic" to be carried at contract value. Custody statements will be mailed to the External Manager and wrap contract issuers (with each issuer receiving only the details of securities that the issuer is wrapping) monthly, typically by the tenth (10th) business day of the following month.

W.R. Grace & Co., (the "Plan Sponsor "), or its designee, shall have the authority and discretion to exercise or abstain from exercising any option, right, or privilege attaching to any asset in the Portfolio, including without limitation the authority to vote in person or by proxy at corporate or other meetings, and to participate in or consent to any voting trust, reorganization, dissolution, merger, or other action affecting any asset in the Portfolio and to direct the Trustee to make payments in connection therewith.

Alternatively, the Trustee and Plan Sponsor may mutually agree to other custody arrangements for specific investments (e.g., CDC BRIC Synthetics) as the need arises.

4

## V.    Money Movement

All money transfers to and from the Portfolio will be made through the STIF.  A STIF transaction summary will be sent monthly by the Trustee to the External Manager after month end, typically by the tenth (10th) business day of the subsequent month.

## VI.    Cash Management

For liquidity purposes, a STIF balance of approximately 1.5% of the Portfolio will be maintained. The Trustee will send a daily facsimile to the External Manager indicating STIF balances.  Based on the daily STIF balances the External Manager will direct the Trustee, via telephone, e-mail or facsimile, to either move money into the STIF or take money out of the STIF. The External Manager will determine which assets shall be liquidated and wire such funds to the Trustee.  The External Manager may call the Trustee at any time to obtain the daily STIF account balance. The STIF percentage may be unilaterally modified by the Trustee if it is determined that the STIF cash policy is not sufficient to maintain cash liquidity in a daily environment.

## VII.    New Placements

As soon as practicable before funding a new investment, but no later than 2:30 PM ET the day before settlement, the External Manager shall provide the Trustee with contract documentation (binder, confirmation, or trade ticket) regarding the respective investment purchases.  Such documentation should include a description of the investment and an interest rate illustration.

In addition, the External Manager shall send a letter, signed by an authorized representative, directing the Trustee to execute any new investment contract documents on behalf of the Plan. In case of investment contracts, the External Manager shall notify new contract issuers that the Trustee must receive a monthly issuer statement no later than ten (10) business days after the end of the month.

If a new investment purchase does not meet the operational requirements of the Trustee, then the Trustee reserves the right to: (1) request operational changes which conform to the Trustee's valuation requirements, or (2) refuse to value the new investment.

The External Manager must also notify all new issuers  that the Trustee is authorized to make transactions and receive monthly issuer statements by the tenth (10th) business day of each month.

## VIII.    Investment Contract Maturities and Payments

The proceeds from investment contracts held in the Portfolio will be transferred to the STIF portion of the Portfolio for subsequent reinvestment.  The transfer of proceeds will be initiated by the issuer and processed by the Trustee based upon the payout schedule provided by the External Manager in the contract documentation.  Should the payout schedule change, the External Manager will inform the Trustee as soon as possible.  The Trustee will provide wiring instructions to the appropriate issuer. Issuer-to-issuer transfers will be allowed only if the transfer is to the same issuer.

GR  001263

IX.     **Reconciliation**

The Fidelity Participating Recordkeeping System ("FPRS") will be reconciled to the Managed Income Portfolio Accounting System ("GUIDE") on a daily and monthly basis.  The investment contracts will be reconciled to the issuer balances on a monthly basis.

A copy of the Trust Asset Statement for the Portfolio will be mailed to the Plan Sponsor typically by the tenth (10th) business day of the subsequent month.

X.     **Fee Collection for Accounting & Custody Services**

Accounting fees for the Portfolio will be accrued daily against the earnings of the Portfolio and deducted monthly from the STIF.

Custody fees for the Portfolio will be borne by the Portfolio.

XI.     **Changes to the Operating Procedures**

Other than as indicated in Section VI, this Schedule may be amended or modified by a written instrument executed by the Trustee and Plan Sponsor.

**W.R. GRACE & CO.**

By: _Elyse Napeh Filen_ 10/28/99
                    Date

**FIDELITY MANAGEMENT TRUST COMPANY**

By: _Carolyn Redder_ 11/13/99
                    Date

GR 001264

*Grace 5*



W.R. Grace & Co.
7500 Grace Drive
Columbia, Maryland 21044

September 20, 1999

Mr. Kurt Market
Fidelity Investments
300 Puritan Way, MM3H
Marlborough, MA  01752-3078

Dear Mr. Market:

This letter is sent to you in accordance with Section 8(c) of the Master Trust Agreement, dated as of July 1, 1993, between W.R. Grace & Co. and Fidelity Management Trust Company (the "Trust"), and it supersedes the last letter sent to you in accordance with that Section, dated November 18, 1998.  Effective the time you receive this letter, we hereby designate , as the individuals who may provide investment direction on behalf of the Investment Committee, and, as the individuals who may provide direction on behalf of the Investment Committee, for the purpose of maintaining adequate cash reserves.  Fidelity Management Trust Company shall be fully protected in relying upon such direction, in accordance with the Trust.  Only one such individual need provide any direction. The signature of each designated individual is set forth below and certified to be such.

You may rely upon each designation and certification set forth in this letter until we deliver to you written notice of a change with respect to any such designation or certification.

Very truly yours,
Investment and Benefits Committee

By: *Robert M. Tarola*

*Eileen Walsh*
Eileen Walsh

*David Nakashige*
David Nakashige

*Elyse Napoli*
Elyse Napoli



## ELEVENTH AMENDMENT TO TRUST AGREEMENT BETWEEN
## FIDELITY MANAGEMENT TRUST COMPANY AND
## W.R.GRACE & CO.

THIS ELEVENTH AMENDMENT, dated as of the first day of July, 2000, by and between Fidelity Management Trust Company (the "Trustee") and W.R. Grace & Co. (the "Sponsor");

### WITNESSETH:

WHEREAS, the Trustee and the Sponsor heretofore entered into a Trust Agreement dated July 1, 1993, with regard to the W.R. Grace & Co. Salaried Employees Savings and Investment Plan, the W.R. Grace & Co. Hourly Employees Savings and Investment Plan, and the employee stock ownership plans within those plans (collectively and individually, the "Plan"); and

WHEREAS, the Trustee and the Sponsor now desire to amend said Trust Agreement as provided for in Section 14 thereof;

NOW THEREFORE, in consideration of the above premises the Trustee and the Sponsor hereby amend the Trust Agreement by:

(1)    Amending Section 5(b), Available Investment Options, by redefining "Mutual Funds" as follows:

(i) securities issued by investment companies advised by Fidelity Management & Research Company ("Fidelity Mutual Funds") and certain securities issued by registered investment companies not advised by Fidelity Management & Research Company ("Non-Fidelity Mutual Funds") (collectively referred to as "Mutual Funds").

(2)    Amending Section 5(d), Mutual Funds, by inserting the following sentence before the first sentence:

All transactions involving Non-Fidelity Mutual Funds shall be done in accordance with the Operational Guidelines for Non-Fidelity Mutual Funds attached hereto as Schedule "K".

(3)    Amending and restating the "investment options" section of Schedules "A" and "C" as follows:

- Fixed Income Fund (GIC)
- Fidelity Blue Chip Growth Fund
- Contrafund®
- Fidelity OTC Portfolio
- Fidelity Growth & Income Portfolio
- Fidelity Balanced Fund
- Fidelity Diversified International Fund
- Fidelity Equity-Income Fund
- Fidelity Europe Fund
- Fidelity Freedom Income Fund®
- Fidelity Freedom 2000 Fund®
- Fidelity Freedom 2010 Fund®



W.R. Grace & Co.- LPS
Eleventh Amendment

GR 001266

- Fidelity Freedom 2020 Fund®
- Fidelity Freedom 2030 Fund®
- Fidelity Investment Grade Bond Fund
- Fidelity Low-Priced Stock Fund
- Fidelity U.S. Bond Index Fund
- Spartan® Extended Market Index Fund
- Spartan® International Index Fund
- Spartan® U.S. Equity Index Fund
- Spartan® Total Market Index Fund
- W.R. Grace Common Stock Fund
- Company Contribution Stock Fund
- Sealed Air Common Stock Fund (frozen to new investments)
- Sealed Air Preferred Stock Fund (frozen to new investments)
- Sealed Air Common Stock Fund (Employee) (frozen to new investments)
- Sealed Air Preferred Stock Fund (Employee) (frozen to new investments)
- Franklin Small Cap Fund I – Class A
- INVESCO Equity Income Fund
- PIMCO Total Return Fund
- Templeton Foreign Fund A
- J.P. Morgan Institutional U.S. Small Company Fund
- American Century International Growth Fund *EW*

(4)    Amending Schedule "B" by adding "Non-Fidelity Mutual Funds" as follows:

| Non-Fidelity Mutual Funds: | Non-Fidelity Mutual Fund vendor shall pay service fees directly to Fidelity Investments Institutional Operations Company equal to a percentage (generally 25 or 35 basis points) of plan assets invested in such Non-Fidelity Mutual Funds. |
|---|---|

(5)    Adding Schedule "K", Operational Guidelines for Non-Fidelity Mutual Funds, as attached.


IN WITNESS WHEREOF, the Trustee and the Sponsor have caused this Eleventh Amendment to be executed by their duly authorized officers effective as of the day and year first above written.


**W.R. GRACE & CO.**                    **FIDELITY MANAGEMENT TRUST**
**ADMINISTRATIVE COMMITTEE**            **COMPANY**


By _Eileen Walsh_  6/9/00            By _Carolyn Redder_ 6/28/00
                    **Date**            Vice President            **Date**

GR 001267



Schedule "K"

## OPERATIONAL GUIDELINES FOR NON-FIDELITY MUTUAL FUNDS

### Pricing

By 7:00 p.m. Eastern Time ("ET") each Business Day, the Non-Fidelity Mutual Fund Vendor (Fund Vendor) will input the following information ("Price Information") into the Fidelity Participant Recordkeeping System ("FPRS") via the remote access price screen that Fidelity Investments Institutional Operations Company, Inc. ("FIIOC"), an affiliate of the Trustee, has provided to the Fund Vendor: (1) the net asset value for each Fund at the Close of Trading, (2) the change in each Fund's net asset value from the Close of Trading on the prior Business Day, and (3) in the case of an income fund or funds, the daily accrual for interest rate factor ("mil rate"). FIIOC must receive Price Information each Business Day (a "Business Day" is any day the New York Stock Exchange is open). If on any Business Day the Fund Vendor does not provide such Price Information to FIIOC, FIIOC shall pend all associated transaction activity in the Fidelity Participant Recordkeeping System ("FPRS") until the relevant Price Information is made available by Fund Vendor.



### Trade Activity and Wire Transfers

By 7:00 a.m. ET each Business Day following Trade Date ("Trade Date plus One"), FIIOC will provide, via facsimile, to the Fund Vendor a consolidated report of net purchase or net redemption activity that occurred in each of the Funds up to 4:00 p.m. ET on the prior Business Day. The report will reflect the dollar amount of assets and shares to be invested or withdrawn for each Fund. FIIOC will transmit this report to the Fund Vendor each Business Day, regardless of processing activity. In the event that data contained in the 7:00 a.m. ET facsimile transmission represents estimated trade activity, FIIOC shall provide a final facsimile to the Fund Vendor by no later than 9:00 a.m. ET. Any resulting adjustments shall be processed by the Fund Vendor at the net asset value for the prior Business Day.

The Fund Vendor shall send via regular mail to FIIOC transaction confirms for all daily activity in each of the Funds. The Fund Vendor shall also send via regular mail to FIIOC, by no later than the fifth Business Day following calendar month close, a monthly statement for each Fund. FIIOC agrees to notify the Fund Vendor of any balance discrepancies within twenty (20) Business Days of receipt of the monthly statement.

W.R. Grace & Co.- LPS                          3
Eleventh Amendment

GR  001268



For purposes of wire transfers, FIIOC shall transmit a daily wire for aggregate purchase activity and the Fund Vendor shall transmit a daily wire for aggregate redemption activity, in each case including all activity across all Funds occurring on the same day.

### Participant Communications

The Fund Vendor shall provide internally-prepared fund descriptive information approved by the Funds' legal counsel for use by FIIOC in its written participant communication materials. FIIOC shall utilize historical performance data obtained from third-party vendors (currently Morningstar, Inc., FACTSET Research Systems and Lipper Analytical Services) in telephone conversations with plan participants and in quarterly participant statements. The Sponsor hereby consents to FIIOC's use of such materials and acknowledges that FIIOC is not responsible for the accuracy of such third-party information. FIIOC shall seek the approval of the Fund Vendor prior to retaining any other third-party vendor to render such data or materials under this Agreement.

### Compensation

FIIOC shall be entitled to fees as set forth in a separate agreement with the Fund Vendor.



W.R. Grace & Co.- LPS                    4
Eleventh Amendment

GR  001269



## TWELFTH AMENDMENT TO TRUST AGREEMENT BETWEEN FIDELITY MANAGEMENT TRUST COMPANY AND W.R. GRACE & CO.

THIS TWELFTH AMENDMENT, dated as of the fifteenth day of December, 2000, by and between Fidelity Management Trust Company (the "Trustee") and W.R. Grace & Co. (the "Sponsor");

### WITNESSETH:

WHEREAS, the Trustee and the Sponsor heretofore entered into a Trust Agreement dated July 1, 1993, with regard to the W.R. Grace & Co. Salaried Employees Savings and Investment Plan, the W.R. Grace & Co. Hourly Employees Savings and Investment Plan, and the employee stock ownership plans within those plans (collectively and individually, the "Plan"); and

WHEREAS, the Trustee and the Sponsor now desire to amend said Trust Agreement as provided for in Section 14 thereof;

NOW THEREFORE, in consideration of the above premises the Trustee and the Sponsor hereby amend the Trust Agreement by:

(1)    Amending Section 8(e)(ii), Indemnification to add the following.

The Trustee shall indemnify the Sponsor against and hold the Sponsor harmless from any and all such loss, damage, penalty, liability, cost, and expense, including without limitation, reasonable attorney's fees and disbursements, that may be incurred by, imposed upon, or asserted against the Sponsor solely as a result of a) any defects in the investment methodology embodied in the target asset allocation or model portfolio provided through Fidelity PortfolioPlanner, except to the extent that any such loss, damage, penalty, liability, cost or expense arises from information provided by the participant, the Sponsor or third parties; or b) any prohibited transactions resulting from the provision by the Trustee of Fidelity PortfolioPlanner.

(2)    Adding a new Section 18, Electronic Services, as follows:

Section 18.  Electronic Services.

(a)    The Trustee may provide communications and services ("Electronic Services") and/or software products ("Electronic Products") via electronic media, including, but not limited to Fidelity Plan Sponsor WebStation. The Sponsor and its agents agree to use such Electronic Services and Electronic Products only in the course of reasonable administration of or participation in the Plan and to keep confidential and not publish, copy, broadcast, retransmit, reproduce, commercially exploit or otherwise redisseminate the Electronic Products or Electronic Services or any portion thereof without the Trustee's written consent, except, in cases where Trustee has specifically notified the Sponsor that the Electronic Products or Services are suitable for delivery to Sponsor's plan participants, for non-commercial personal use by participants or beneficiaries with respect to their participation in the plan or for their other retirement planning purposes.



W.R. Grace & Co.- LPS
Twelfth Amendment

(b)     The Sponsor shall be responsible for installing and maintaining all Electronic Products, (including any programming required to accomplish the installation) and for displaying any and all content associated with Electronic Services on its computer network and/or Intranet so that such content will appear exactly as it appears when delivered to Sponsor.  All Electronic Products and Services shall be clearly identified as originating from the Trustee or its affiliate.  The Sponsor shall promptly remove Electronic Products or Services from its computer network and/or Intranet, or replace the Electronic Products or Services with updated products or services provided by the Trustee, upon written notification (including written notification via facsimile) by the Trustee.

(c)     All Electronic Products shall be provided to the Sponsor without any express or implied legal warranties or acceptance of legal liability by the Trustee, and all Electronic Services shall be provided to the Sponsor without acceptance of legal liability related to or arising out of the electronic nature of the delivery or provision of such Services.  Except as otherwise stated in this Agreement, no rights are conveyed to any property, intellectual or tangible, associated with the contents of the Electronic Products or Services and related material.  The Trustee hereby grants to the Sponsor a non-exclusive, non-transferable revocable right and license to use the Electronic Products and Services in accordance with the terms and conditions of this Agreement.

(d)     To the extent that any Electronic Products or Services utilize Internet services to transport data or communications, the Trustee will take, and Sponsor agrees to follow, reasonable security precautions, however, the Trustee disclaims any liability for interception of any such data or communications. The Trustee reserves the right not to accept data or communications transmitted via electronic media by the Sponsor or a third party if it determines that the media does not provide adequate data security, or if it is not administratively feasible for the Trustee to use the data security provided. The Trustee shall not be responsible for, and makes no warranties regarding access, speed or availability of Internet or network services, or any other service required for electronic communication.  The Trustee shall not be responsible for any loss or damage related to or resulting from any changes or modifications to the Electronic Products or Services after delivering it to the Sponsor.

(3)     Amending the "Other" section of Schedule "A" by adding the following bullet point:

- Fidelity PortfolioPlanner$^{SM}$, an internet-based educational service for participants that generates target asset allocations and model portfolios customized to investment options in the Plan(s) based upon methodology provided by Strategic Advisers, Inc., an affiliate of the Trustee.  The Sponsor acknowledges that it has received the ADV Part II for Strategic Advisers, Inc. more than 48 hours prior to executing the Trust amendment.

(4)     Amending the "Other Fees" section of Schedule "B" as follows:

- Other Fees: separate charges for optional use of remote access, 401(k) and 401(m) testing, non-discrimination testing, extraordinary expenses resulting from large numbers of simultaneous manual transactions, from errors not caused by Fidelity,



W.R. Grace & Co.- LPS
Twelfth Amendment

2

reports not contemplated in this Agreement, corporate actions, or the provision of communications materials in hard copy which are also accessible to participants via electronic services in the event that the provision of such material in hard copy would result in an additional expense deemed to be material. The Administrator may withdraw reasonable administrative fees from the Trust by written direction to the Trustee.

IN WITNESS WHEREOF, the Trustee and the Sponsor have caused this Twelfth Amendment to be executed by their duly authorized officers effective as of the day and year first above written.

**W.R. GRACE & CO.**
~~ADMINISTRATIVE COMMITTEE~~

By _Martin Hunter_     _12-4-00_
                        **Date**

**FIDELITY MANAGEMENT TRUST COMPANY**

By _[signature]_  _12/29/00_
**Vice President**        **Date**

W.R. Grace & Co.- LPS
Twelfth Amendment

3

GR 001272


# GRACE

Schedule "E"

W.R. Grace & Co.
7500 Grace Drive
Columbia, Maryland 21044

November 29, 2000

Mr. Kurt Market
Fidelity Investments
300 Puritan Way, MM3H
Marlborough, MA  01752-3078

Dear Mr. Market:

This letter is sent to you in accordance with Section 8(c) of the Master Trust Agreement, dated as of July 1, 1993, between W.R. Grace & Co. and Fidelity Management Trust Company (the "Trust"), and it supersedes the last letter sent to you in accordance with that Section, dated November 18, 1998. Effective the time you receive this letter, the Grace Investment and Benefits Committee hereby designates the below-listed individuals as those who may provide direction to Fidelity on behalf of the Committee (which is the "investment fiduciary" of the Trust), including (but not limited to) direction regarding Trust investments and directions regarding the maintenance of adequate cash reserves related to any unitized company stock fund within the Trust Fidelity Management Trust Company shall be fully protected in relying upon such direction, in accordance with the Trust. Only one such individual need provide any direction. The signature of each designated individual is set forth below and certified to be such.

You may rely upon each designation and certification set forth in this letter until we deliver to you written notice of a change with respect to any such designation or certification.

Very truly yours,
Investment and Benefits Committee

By: _____

_____
Martin Hunter

_____
Ren Lapidario

Y:\cfoard\letters\mastertrustagreement.doc

GR 001273



## THIRTEENTH AMENDMENT TO TRUST AGREEMENT BETWEEN FIDELITY MANAGEMENT TRUST COMPANY AND W.R. GRACE & CO.

THIS THIRTEENTH AMENDMENT, dated as of the first day of May, 2002, by and between Fidelity Management Trust Company (the "Trustee") and W.R. Grace & Co. (the "Sponsor");

### WITNESSETH:

WHEREAS, the Trustee and the Sponsor heretofore entered into a Trust Agreement dated July 1, 1993, with regard to the W.R. Grace & Co. Salaried Employees Savings and Investment Plan, the W.R. Grace & Co. Hourly Employees Savings and Investment Plan, and the employee stock ownership plans within those plans (collectively and individually, the "Plan"); and

WHEREAS, the Trustee and the Sponsor now desire to amend said Trust Agreement as provided for in Section 14 thereof;

NOW THEREFORE, in consideration of the above premises the Trustee and the Sponsor hereby amend the Trust Agreement by:

(1)  Amending the "investment options" section of Schedules "A" and "C" by adding the following:

- Fidelity Freedom 2040 Income Fund

IN WITNESS WHEREOF, the Trustee and the Sponsor have caused this Thirteenth Amendment to be executed by their duly authorized officers effective as of the day and year first above written.

W.R. GRACE & CO.
ADMINISTRATIVE COMMITTEE

FIDELITY MANAGEMENT TRUST
COMPANY

By _Martin Hunter_    5/2/2002
MARTIN HUNTER       Date
VP FINANCE - TREASURY

By _[signature]_ 6/30/02
FMTC Authorized Signatory   Date

## FOURTEENTH AMENDMENT TO TRUST AGREEMENT BETWEEN
## FIDELITY MANAGEMENT TRUST COMPANY AND
## W.R. GRACE & CO.

THIS FOURTEENTH AMENDMENT, dated as of the ninth day of April, 2003, by and between Fidelity Management Trust Company (the "Trustee") and W.R. Grace & Co. (the "Sponsor");

### WITNESSETH:

WHEREAS, the Trustee and the Sponsor heretofore entered into a Trust Agreement dated July 1, 1993, with regard to the W.R. Grace & Co. Salaried Employees Savings and Investment Plan, the W.R. Grace & Co. Hourly Employees Savings and Investment Plan, and the employee stock ownership plans within those plans (collectively and individually, the "Plan"); and

WHEREAS, the Sponsor has informed the Trustee that *effective January 1, 2002*, the W.R. Grace & Co. Hourly Employees Savings and Investment Plan has merged with and into the W.R. Grace & Co. Salaried Employees Savings and Investment Plan; and

WHEREAS, the Sponsor has informed the Trustee that *effective January 1, 2002*, the name of the W.R. Grace & Co. Salaried Employees Savings and Investment Plan has changed to the "W.R. Grace & Co. Savings and Investment Plan"; and

WHEREAS, the Sponsor has informed the Trustee that effective at the close of market (4:00 p.m. ET) on April 9, 2003, the assets of the (unitized) W.R. Grace Common Stock Fund (Employee) and the assets of the (unitized) W.R. Grace Company Contribution Stock Fund (Employer) are frozen to all participant transactions and incoming contributions; and

WHEREAS, the Sponsor now desires, and hereby directs the Trustee, in accordance with 8(c), on April 9, 2003, to use the short-term liquid investments in the W.R. Grace Common Stock Fund (Employee) and the W.R. Grace Company Contribution Stock Fund (Employer) to purchase units of the Fixed Income Fund and to allocate such units pro rata to the accounts of the participants in the Stock Funds. The parties hereto agree that the Trustee shall have no discretionary authority with respect to this transfer directed by the Sponsor. Any variation from the procedure described herein may be instituted only at the express written directions of the Sponsor; and

WHEREAS, the Sponsor now desires, and hereby directs the Trustee to reallocate all participant balances in the underlying shares of Sponsor Stock held in the (unitized) W.R. Grace Common Stock Fund (Employee) and the (unitized) W.R. Grace Company Contribution Stock Fund (Employer) on April 11, 2003 into the W.R. Grace Common Stock Fund (Real Time Trading option). The new W.R. Grace Common Stock Fund (Real Time Trading option) will be available for participant transactions on April 14, 2003. The parties hereto agree that the Trustee shall have no discretionary authority with respect to this transfer directed by the Sponsor. Any variation from the procedure described herein may be instituted only at the express written directions of the Sponsor; and

WHEREAS, the Sponsor has informed the Trustee that effective at the close of the market (4:00 p.m. ET) on April 18, 2003, the assets of the W.R. Grace Common Stock Fund are frozen to all participant transactions and incoming contributions, and

W.R. Grace – LPS, Trust
Fourteenth Amendment

WHEREAS, the Trustee and the Sponsor now desire to amend said Trust Agreement as provided for in Section 14 thereof;

NOW THEREFORE, in consideration of the above premises, the Trustee and the Sponsor hereby amend the Trust Agreement by:

(1)     *Effective January 1, 2002*, replacing all references to the "W.R. Grace & Co. Salaried Employees Savings and Investment Plan" and the "W.R. Grace & Co. Hourly Employees Savings and Investment Plan" with the "W.R. Grace & Co. Savings and Investment Plan."

(2)     *Effective January 1, 2002*, restating the first WHEREAS clause in its entirety, as follows:

    WHEREAS, the Sponsor is the sponsor of the W.R. Grace & Co. Savings and Investment Plan (the "Plan"); and

(3)     *Effective January 1, 2002*, restating Section 1(m), in its entirety, as follows:

    (m)   "Plan" shall mean the W.R. Grace & Co. Savings and Investment Plan.

(4)     *Effective April 11, 2003*, restating Section 5(e), Sponsor Stock, in its entirety, as follows:

    (e)    **Sponsor Stock.**
Trust investments in Sponsor Stock shall be made via the Stock Fund.

       (i)    **Acquisition Limit.**
Pursuant to the Plan, the Trust may be invested in Sponsor Stock to the extent necessary to comply with investment directions under this Agreement. The Sponsor shall be responsible for providing specific direction on any acquisition limits required by the Plan or applicable law.

       (ii)    **Fiduciary Duty.**

          (A)    The Named Fiduciary shall continually monitor the suitability of the Trust acquiring and holding Sponsor Stock, under the fiduciary duty rules of section 404(a)(1) of ERISA (as modified by section 404(a)(2) of ERISA). The Trustee shall not be liable for any loss, or expense, which arises from the directions of the Named Fiduciary with respect to the acquisition and holding of Sponsor Stock, unless it is clear on their face that the actions to be taken under those directions would be prohibited by the foregoing fiduciary duty rules or would be contrary to the terms of this Agreement.

          (B)    Each Participant with an interest in Sponsor Stock (or, in the event of the Participant's death, his beneficiary) is, for purposes of this section 5(e)(ii), hereby designated as a "named fiduciary" (within the meaning of section 403(a)(1) of ERISA), with respect to shares of Sponsor Stock allocated to his or her account and such Participant (or beneficiary) shall have the right to direct the Trustee as to the manner in which the Trustee is to vote or tender such shares.

       (iii)    **Purchases and Sales of Sponsor Stock for Batch Activity.**
Unless otherwise directed by the Sponsor in writing pursuant to directions that the Trustee can administratively implement, the following provisions shall govern purchases and sales of Sponsor Stock

W.R. Grace – LPS, Trust
Fourteenth Amendment

2

for contributions, loan repayments, distributions, loans, withdrawals, or any other purchase or sale of
Sponsor Stock related to a transaction that the Sponsor has directed the Trustee in writing to implement
on a batch basis ("batch activity").

        (A)    Open Market Purchases and Sales. Purchases and sales of Sponsor
Stock shall be made on the open market in accordance with the Trustee's standard trading guidelines, as
they may be amended from time to time, as necessary to honor batch activity. Such general rules shall
not apply in the following circumstances;

        (1)    If the Trustee is unable to purchase or sell the total number of
shares required to be purchased or sold on such day as a result of market conditions; or

        (2)    If the Trustee is prohibited by the SEC, the NYSE or principal
exchange on which the Sponsor Stock is traded, or any other regulatory or judicial body from purchasing
or selling any or all of the shares required to be purchased or sold on such day.
In the event of the occurrence of a circumstance described in (1) or (2) above, the Trustee shall purchase
or sell such shares as soon thereafter as administratively feasible, and shall determine the price of such
purchases or sales to be the average purchase or sales price of all such shares purchased or sold,
respectively. The Trustee may follow written directions from the Named Fiduciary to deviate from the
above purchase and sale procedures.

        (iv)    Purchases and Sales of Sponsor Stock for Participant-Initiated Exchanges
("Real Time" Trading)

Unless otherwise directed by the Sponsor in writing pursuant to directions that the Trustee can
administratively implement, the following provisions shall govern purchases and sales of Sponsor Stock
for Participant-initiated exchanges.

        (A)    Purchases and Sales of Sponsor Stock. Purchases and sales of Sponsor
Stock associated with individual Participant-initiated exchanges into or out of the Stock Fund shall be
made on the open market pursuant to order types selected by the Participant in accordance with the
Trustee's procedures for "Real Time Trading." The Sponsor may instruct the Trustee to limit the order
types available to Participants.

        (1)    Automated Order Entry. Sponsor Stock trades associated with
Participant-initiated exchanges shall be sent to market as soon as administratively feasible during regular
trading hours via an electronic order entry system, unless such trade is treated as a block trade. Such
electronic order entry system shall be deemed an Electronic Service for purposes of Section 18 of this
Agreement.

        (2)    Limitations on Trades; Cancellation of Exchange Requests.
Trades rejected under rules of the applicable securities exchange will not be executed. The Trustee will
not submit orders (or will cancel orders) for stock trades that violate the Trustee's procedures for "Real
Time Trading". The Trustee shall not submit any trade order associated with a Participant-initiated
exchange at any time when the Sponsor Stock Fund has been closed to such activity. Trades associated
with Participant-initiated exchanges shall not be transacted at any time when the regular market is closed,
or when the SEC, the NYSE or principal exchange on which the Sponsor Stock is traded, or any other
regulatory or judicial body has prohibited purchases or sales of any or all of the shares requested by be
traded pursuant to the Participant-initiated exchange. An exchange requested by the Participant shall be



rejected or cancelled, as the case may be, to the extent any accompanying trade is not submitted, not executed or cancelled.

        (B)    <u>Reserve Requirements for Exchanges Into Stock Fund and Corrective Sales</u>. The Participant's ability to initiate exchanges into the Stock Fund shall be subject to standard reserve requirements applicable to the investment options used to fund the exchange, as established by the Trustee from time to time (or such higher reserve requirements as may be established by the Sponsor in written direction to the Trustee). Requests to exchange into the Sponsor Stock Fund that exceed such reserves, and accompanying trade orders, may be rejected or cancelled. In the event that a buy trade associated with a request to exchange into Sponsor Stock is executed, and the Participant does not have sufficient assets in the designated investment option to fund the trade, the Trustee will liquidate investment options (including those held in other sources eligible for liquidation) in the affected Participant's account pro rata. In the event that the Participant does not have sufficient assets in any other investment option, the Trustee shall initiate a corrective sale, and shall debit the costs of such corrective trade from the Participant's account.

        (C)    <u>Fractional Shares</u>. Participants will be entitled to exchange out fractional shares in the Stock Fund only in connection with a request to exchange out the entire balance of their Stock Fund holdings (or the entire balance in a particular source, as applicable). Fractional shares will be transacted at the price determined by the stock trade order selected by the Participant.

        (v)    <u>Use of an Affiliated Broker</u>.
For all purchases and sales of Sponsor Stock on the open market, whether Participant-initiated or otherwise, the Named Fiduciary hereby directs the Trustee to use FBSLLC to provide brokerage services. Subject to the provisions of this agreement, FBSLLC shall execute such trades directly or through any of its affiliates. The provision of brokerage services shall be subject to the following:

        (1)    As consideration for such brokerage services, the Named Fiduciary agrees that FBSLLC shall be entitled to remuneration under this direction provision in the amount of $0.034 commission on each share of Sponsor Stock. Any increase in such remuneration may be made only by written agreement between the Named Fiduciary and Trustee.

        (2)    Any successor organization of FBSLLC, through reorganization, consolidation, merger or similar transactions, shall, upon consummation of such transaction, become the successor broker in accordance with the terms of this direction provision. FBSLLC may assign its rights and obligations under this agreement to any affiliate, provided that the assignee is bound by the terms hereof, including the provisions concerning remuneration.

        (3) The Trustee and FBSLLC shall continue to rely on this direction provision until notified to the contrary. The Named Fiduciary reserves the right to terminate this direction upon written notice to FBSLLC (or its successors or assigns) and the Trustee, in accordance with Section 12 of this Agreement.

        (4) The Plan Sponsor acknowledges that FBSLLC (and its successors and assigns) may rely upon this Trust Agreement in establishing an account in the name of the Trustee for the Plan or its Participants, and in allowing each Participant to exercise limited trading authorization over such account, to the extent of his or her individual account balance in the Sponsor Stock Fund subject to Participant direction.



W.R. Grace – LPS, Trust
Fourteenth Amendment

4

GR 001278

### (vi)  Securities Law Reports.

The Named Fiduciary shall be responsible for filing all reports required under Federal or state securities laws with respect to the Trust's ownership of Sponsor Stock, including, without limitation, any reports required under section 13 or 16 of the Securities Exchange Act of 1934, and shall immediately notify the Trustee in writing of any requirement to stop purchases or sales of Sponsor Stock pending the filing of any report. The Trustee shall provide to the Named Fiduciary such information on the Trust's ownership of Sponsor Stock as the Named Fiduciary may reasonably request in order to comply with Federal or state securities laws.

### (vii)  Voting and Tender Offers.

Notwithstanding any other provision of this Agreement the provisions of this Section shall govern the voting and tendering of Sponsor Stock. The Sponsor shall pay for all printing, mailing, tabulation and other costs associated with the voting and tendering of Sponsor Stock. The Trustee, after consultation with the Sponsor, shall prepare the necessary documents associated with the voting and tendering of Sponsor Stock.

#### (A)  Voting.

(1)  When the issuer of Sponsor Stock prepares for any annual or special meeting, the Sponsor shall notify the Trustee at least thirty (30) days in advance of the intended record date and shall cause a copy of all proxy solicitation materials to be sent to the Trustee. If requested by the Trustee the Sponsor shall certify to the Trustee that the aforementioned materials represents the same information distributed to shareholders of Sponsor Stock. Based on these materials, the Trustee shall prepare a voting instruction form and shall provide a copy of all proxy solicitation materials to be sent to each Participant with an interest in Sponsor Stock held in the Trust, together with the foregoing voting instruction form to be returned to the Trustee or its designee. The form shall show the number of full and fractional shares of Sponsor Stock credited to the Participant's accounts.

(2)  Each Participant with an interest in the Sponsor Stock held in the Trust shall have the right to direct the Trustee as to the manner in which the Trustee is to vote (including not to vote) that number of shares of Sponsor Stock credited to the Participant's accounts (both vested and unvested). Directions from a Participant to the Trustee concerning the voting of Sponsor Stock shall be communicated in writing, or by such other means as agreed upon by the Trustee and the Sponsor. These directions shall be held in confidence by the Trustee and shall not be divulged to the Sponsor, or any officer or employee thereof, or any other person except to the extent that the consequences of such directions are reflected in reports regularly communicated to any such person in the ordinary course of the performance of the Trustee's services hereunder. Upon its receipt of the directions, the Trustee shall vote the shares of Sponsor Stock as directed by the Participant. Except as otherwise required by law, the Trustee shall vote shares of Sponsor Stock credited to a Participant's account for which it has received no direction from the Participant in the same proportion on each issue as it votes those shares credited to Participants' account for which it received voting directions from Participants.

(3)  Except as otherwise required by law, the Trustee shall vote that number of shares of Sponsor Stock not credited to Participants' accounts in the same proportion on each issue as it votes those shares credited to Participants' accounts for which it received voting directions from Participants.

#### (B)  Tender Offers.

GR 001279

(1)     Upon commencement of a tender offer for any securities held in the Trust that are Sponsor Stock, the Sponsor shall timely notify the Trustee in advance of the intended tender date and shall cause a copy of all materials to be sent to the Trustee. The Sponsor shall certify to the Trustee that the aforementioned materials represent the same information distributed to shareholders of Sponsor Stock. Based on these materials and after consultation with the Sponsor, the Trustee shall prepare a tender instruction form and shall provide a copy of all tender materials to be sent to each Participant with an interest in the Stock Fund, together with the foregoing tender instruction form, to be returned to the Trustee or its designee. The tender instruction form shall show the number of full and fractional shares of Sponsor Stock credited to the Participants account (both vested and unvested).

(2)     Each Participant with an interest in the Stock Fund shall have the right to direct the Trustee to tender or not to tender some or all of the shares of Sponsor Stock credited to the Participant's accounts (both vested and unvested). Directions from a Participant to the Trustee concerning the tender of Sponsor Stock shall be communicated in writing, or such other means as is agreed upon by the Trustee and the Sponsor. These directions shall be held in confidence by the Trustee and shall not be divulged to the Sponsor, or any officer or employee thereof, or any other person except to the extent that the consequences of such directions are reflected in reports regularly communicated to any such persons in the ordinary course of the performance of the Trustee's services hereunder. The Trustee shall tender or not tender shares of Sponsor Stock as directed by the Participant. Except as otherwise required by law, the Trustee shall not tender shares of Sponsor Stock credited to a Participant's accounts for which it has received no directions from the Participant.

(3)     Except as otherwise required by law, the Trustee shall tender that number of shares of Sponsor Stock not credited to Participants' accounts in the same proportion as the total number of shares of Sponsor Stock credited to Participants' accounts for which it received instructions from Participants.

(4)     A Participant who has directed the Trustee to tender some or all of the shares of Sponsor Stock credited to the Participant's accounts may, at any time prior to the tender offer withdrawal date, direct the Trustee to withdraw some or all of the tendered shares, and the Trustee shall withdraw the directed number of shares from the tender offer prior to the tender offer withdrawal deadline. Prior to the withdrawal deadline, if any shares of Sponsor Stock not credited to Participants' accounts have been tendered, the Trustee shall redetermine the number of shares of Sponsor Stock that would be tendered under Section 5(e)(vii)(B)(3) if the date of the foregoing withdrawal were the date of determination, and withdraw from the tender offer the number of shares of Sponsor Stock not credited to Participants' accounts necessary to reduce the amount of tendered Sponsor Stock not credited to Participants' accounts to the amount so redetermined. A Participant shall not be limited as to the number of directions to tender or withdraw that the Participant may give to the Trustee.

(5)     A direction by a Participant to the Trustee to tender shares of Sponsor Stock credited to the Participant's accounts shall not be considered a written election under the Plan by the Participant to withdraw, or have distributed, any or all of his withdrawable shares. The Trustee shall credit to each account of the Participant from which the tendered shares were taken the proceeds received by the Trustee in exchange for the shares of Sponsor Stock tendered from that account. Pending receipt of directions (through the Administrator) from the Participant or the Named Fiduciary, as provided in the Plan, as to which of the remaining investment options the proceeds should be invested in, the Trustee shall invest the proceeds in the investment option described in Schedule "C".

W.R. Grace – LPS, Trust
Fourteenth Amendment

6

GR 001280

      (viii)  <u>General.</u>

With respect to all shareholder rights other than the right to vote, the right to tender, and the right to withdraw shares previously tendered, in the case of Sponsor Stock, the Trustee shall follow the procedures set forth in subsection (A), above.

      (ix)  <u>Conversion.</u>

All provisions in this Section 5(e) shall also apply to any securities received as a result of a conversion of Sponsor Stock.

(5)    *Effective April 11, 2003*, amending the "investment options" sections of Schedules "A" and "C" to remove the following:

    -  Company Contribution Stock Fund

(6)    *Effective April 21, 2003*, amending the "investment options" sections of Schedules "A" and "C" to remove the reference to the "W.R. Grace Common Stock Fund" and replacing it with the following:

    •  W.R. Grace Common Stock Fund **(frozen to new contributions and exchanges in)**

(7)    *Effective April 11, 2003*, restating the "Trustee Fees" section in its entirety as follows:

**Stock Administration Fee:**

    To the extent that assets are invested in Sponsor Stock, .15% of such assets in the Trust payable pro rata quarterly on the basis of such assets as of the calendar quarter's last valuation date, but no less than $20,000 nor more than $50,000 per year.

(8)    Amending the "Non-Fidelity Mutual Funds" section of Schedule "B" as follows:

Non-Fidelity Mutual Funds:

Non-Fidelity Mutual Fund vendors shall pay fees directly to Fidelity Investments Institutional Operations Company, Inc. (FIIOC) or its affiliates equal to such percentage (generally 25 to 50 basis points) of plan assets invested in such Non-Fidelity Mutual Funds as may be disclosed periodically, or, in the case of the following investment options, in the amounts listed below:

-  American Century International Growth Fund: 0 basis points.

-  J.P. Morgan Institutional U.S. Small Company Fund: 25 basis points.

W.R. Grace – LPS, Trust
Fourteenth Amendment

7

Unless otherwise noted, disclosure shall be posted and updated quarterly on Plan Sponsor Webstation at https://psw.fidelity.com or a successor site.

(9)   Restating the last sentence of Schedule "C" in its entirety, as follows:

The Named Fiduciary directs that the investment option referred to in Section 5(c) and Section 5(e)(vii)(B)(5) shall be the Fixed Income Fund (GIC).

(10)   *Effective April 11, 2003*, restating Schedule "H", in its entirety, as attached hereto.

IN WITNESS WHEREOF, the Trustee and the Sponsor have caused this Fourteenth Amendment to be executed by their duly authorized officers effective as of the day and year first above written.

W.R. GRACE & CO.                          FIDELITY MANAGEMENT TRUST
                                          COMPANY

By _____                 By _____
                    Date                  FMTC Authorized Signatory   Date

## SCHEDULE "H"

### EXCHANGE GUIDELINES

The following exchange guidelines are currently employed by FIIOC.

Participants may initiate exchanges, via a Fidelity Participant service representative, from 8:30 a.m. (ET) to 8:00 p.m. ET on any day that the New York Stock Exchange is open (a "Business Day"). Participants may initiate exchanges, subject to the rules listed below for the Stock Fund, via VRS and the internet (NetBenefits℠), virtually 24 hours a day.

FIIOC reserves the right to change these exchange guidelines at its discretion.

Note: The NYSE's normal closing time is 4:00 p.m. (ET); in the event the NYSE closes before such time or alters such closing time, all references below to 4:00 p.m. (ET) shall mean the actual or altered closing time of the NYSE.

Exchanges shall be subject to plan rules, and the exchange guidelines provided below shall apply to sources and funds to the extent eligible for Participant-directed purchases and/or sales.

### Mutual Funds

#### Exchanges Between Mutual Funds

Participants may call on any Business Day to exchange between the mutual funds. If the request is confirmed before 4:00 p.m. (ET), it will receive that day's trade date. Requests confirmed after 4:00 p.m. (ET) will be processed on a next Business Day basis.

### Fixed Income Fund

**I.**   **Exchanges Between Mutual Funds and Fixed Income Fund**

Participants may call on any Business Day to exchange between a mutual fund and the Fixed Income Fund. If the request is confirmed before 4:00 p.m. (ET), it will receive that day's trade date. Requests confirmed after 4:00 p.m. (ET) will be processed on a next Business Day basis.

**II.**   **Exchange Restrictions**

Participants will not be permitted to make direct transfers between the Fixed Income Fund and a competing fund (within the meaning of the GICs or the Existing GICs held in the Fixed Income Fund). Participants who wish to exchange between the Fixed Income Fund and a competing fund must first exchange into a non-competing fund for a period of 180 days.

W.R. Grace – LPS, Trust
Fourteenth Amendment

9

**Sponsor Stock**

The following rules apply to any Participant-initiated exchange unless the Sponsor has directed the Trustee in writing to treat such exchanges as batch activity.

**I.   Exchanges from Mutual Funds or Fixed Income Fund into Sponsor Stock**

Participants who wish to initiate an exchange may contact Fidelity at any time listed above. Exchanges from a mutual fund or the Fixed Income Fund into Sponsor Stock will be processed after execution of the buy trade, at the next calculated NAV of the Mutual Fund or Fixed Income Fund.

Sponsor Stock will be reflected in the Participant's individual account in the Plan on the Business Day following execution of the trade.

*As of April 21, 2003, no exchanges into Sponsor Stock will be permitted.*

**II.   Exchanges from Sponsor Stock into Mutual Funds or Fixed Income Fund**

Participants who wish to initiate an exchange out of Sponsor Stock into Mutual Funds or Fixed Income Fund may contact Fidelity at any time listed above.

Exchanges out of Sponsor Stock will be processed after execution of the sell trade. The subsequent exchange into the Mutual Fund or Fixed Income Fund will be processed upon settlement day of the sell trade, at the last calculated NAV for such date.

The Mutual Fund of Fixed Income Fund shares will be reflected in the Participant's account on the following Business Day.

**III.   Exchange Restrictions**

All exchange requests involving Sponsor Stock must be made in shares of stock, even if the Plan allows for percentage and dollar amount exchanges. If a Participant wishes to exchange out his or her entire balance in Sponsor Stock (or, if applicable, his or her entire balance in Sponsor Stock in a single source), the associated trade must be placed in whole shares, and fractional shares will be processed at the price determined by the Participant-directed trade. Exchange requests accompanied by certain order types may not be accepted outside of normal trading hours. Trade requests accompanying exchange requests that do not adhere to the Trustee's standard guidelines, or that would violate securities exchange rules, may result in rejection or cancellation of the associated exchange request.

Exchanges from one stock fund to another, or from a Participant-directed brokerage account to Sponsor Stock are not permitted.

Exchanges into Sponsor Stock shall be subject to minimum reserves on the investment option used to fund the exchange, as established by the Trustee from time to time (or such higher

GR 001284



reserves as the Sponsor directs in writing).  Exchanges in excess of the minimum reserve are prohibited.

**W.R. GRACE & CO.**

By: _Robert M. Tarola_

Name:    Robert M. Tarola

Title:    CFO / Benefits Committee

Date:    April 11, 2003

GR 001285

# FIFTEENTH AMENDMENT TO TRUST AGREEMENT BETWEEN
# FIDELITY MANAGEMENT TRUST COMPANY AND
# W.R. GRACE & CO.

This **FIFTEENTH AMENDMENT**, dated as of the fifteenth day of December, 2003, by and between Fidelity Management Trust Company (the "Trustee") and W.R. Grace & Co. (the "Sponsor");

## WITNESSETH:

WHEREAS, the Trustee and the Sponsor heretofore entered into a Trust Agreement dated July 1, 1993, as subsequently amended, with regard to the W.R. Grace & Co. Savings and Investment Plan (the "Plan"); and

WHEREAS, the Investment Committee has the power to appoint an investment manager with respect to some or all of the assets of the Trust; and

WHEREAS, the Investment Committee desires to appoint an investment manager with respect to the assets of the Stock Fund (the "Investment Manager"), such investment manager to have the power to dispose of the assets of the Stock Fund and to take certain other actions as specified herein but only to the extent that (a) the Investment Manager determines that the continued holding of such assets in the Stock Fund would not be consistent with the provisions of ERISA (within the meaning of Section 404(a)(1)(D) of ERISA) and (b) such sales are permitted under applicable securities and other law. The Trustee shall have no responsibility to determine whether the Investment Manager's directions regarding the Stock Fund are consistent with ERISA or other applicable law; and

WHEREAS, the Trustee and the Sponsor now desire to further amend such Trust Agreement as provided for in Section 14 thereof;

NOW, THEREFORE, in consideration of the above premises, the Trustee and the Sponsor hereby amend the Trust Agreement by:

1.    Restating Section 1(j), "Investment Committee," in its entirety, as follows:

(j)    "Investment Committee" shall mean the committee designated by the Sponsor which has the responsibility (i) for investing the assets of the Plans and, with respect to Plans where Participants have the right to direct the assets allocated to their accounts among investment options, for selecting those investment options, (ii) for assuring that the Plans do not violate any provisions of ERISA limiting the acquisition or holding of Sponsor Stock or other property of the Sponsor (except to the extent that such responsibility has been delegated to an investment manager), (iii) for the appointment and removal of investment managers or investment advisers, if any, and (iv) for other matters described

GR 001286

herein; and the Investment Committee shall be deemed for purposes of ERISA to be the named fiduciary for Plan investments.

2.    Restating clause (A) of subsection (ii), <u>Fiduciary Duty</u>, of Section 5(e), <u>Sponsor Stock</u>, in its entirety, as follows:

(A)    The Investment Manager shall be responsible to monitor the appropriateness of the Trust continuing to hold Sponsor Stock in the Stock Fund in accordance with the provisions of subsection (ix) of this Section 5(e). The Trustee shall not be liable for any loss or expense that arises from the directions of the Investment Manager with respect to the continued holding of such Sponsor Stock.

3.    Restating the first sentence of subsection (v), <u>Use of an Affiliated Broker</u>, of Section 5(e), <u>Sponsor Stock</u>, in its entirety, as follows:

For all purchases and sales of Sponsor Stock on the open market pursuant to either subsection (iii) or subsection (iv) above, the Named Fiduciary hereby directs the Trustee to use FBSLLC to provide brokerage services.

4.    Restating the first sentence of subsection (vii), <u>Voting and Tender Offers</u>, of Section 5(e), <u>Sponsor Stock</u>, in its entirety, as follows:

Notwithstanding any provision of this Agreement other than subsection (ix) of this Section 5(e), this provision of this subsection (vii) shall govern the voting and tendering of Sponsor Stock.

5.    By renumbering subsection (ix), <u>Conversion</u>, of Section 5(e), <u>Sponsor Stock</u>, as subsection (x) and inserting new subsection (ix), <u>Investment Manager</u>, as follows:

(ix)    <u>Investment Manager</u>

The Investment Committee may appoint an Investment Manager (within the meaning of Section 3(38) of ERISA) with respect to the Sponsor Stock held in the Stock Fund who shall manage the Stock Fund in accordance with investment guidelines established in connection with the appointment. The Trustee shall have no responsibility for establishing the investment guidelines or monitoring the Investment Manager's compliance with the investment guidelines. At any time that the appointment of such an Investment Manager is in effect the provisions of this subsection (ix) shall be in effect and, to the extent of any conflict between the provisions of this subsection (ix) and the provisions of any other section of this Agreement (including without limitation, the provisions of the other subsections of this Section 5(e)), the provisions of this subsection (ix) shall control.

(A)    The Investment Manager shall have the authority to determine the appropriateness of the Trust's retention or sale of the shares of Sponsor Stock held in the Stock Fund. In accordance with the Operating Guidelines attached in Schedule "M", the Sponsor shall direct where assets received as a result of the

2



liquidation of the Stock Fund shall be invested. However, nothing herein shall preclude the Trustee from effecting transactions pursuant to subsections (iii) and (iv) of this Section 5(e), unless the Investment Manager has directed the Trustee to suspend trading under either subsection. Subject to the foregoing, the Investment Manager may cause the Trust to dispose of all or any portion of such shares of Sponsor Stock at any time.

(B)    Any such dispositions of Sponsor Stock by the Investment Manager (and the allocation of the net proceeds thereof) shall be effected pursuant to the Operating Procedures attached hereto as Schedule "M". Any such net proceeds shall be immediately withdrawn from the Stock Fund and invested by the Trustee in accordance with such Operating Procedures. The Investment Manager may direct such trades directly through such dealers, commission merchants, brokers or other persons or firms as the Investment Manager may select.

(C)    If the Investment Manager determines that the Stock Fund shall be closed to participant trading, the Investment Manager shall make such decisions as are necessary to implement this determination. Such decisions shall include determining the manner and timing of termination of the Stock Fund and the orderly liquidation of its assets.

(D)    The Investment Manager will not have any authority, responsibility or obligation to vote, or to tender (or not) in response to a tender offer, any of the shares of Sponsor Stock held in the Stock Fund, it being understood that all such shares will be voted or tendered by the Trustee pursuant to the provisions of subsection (vii) of this Section 5(e). Notwithstanding the foregoing or any other provision hereof to the contrary, in the event of a tender offer or in the event of a vote that relates to a proposed merger or other transaction the approval of which would have substantially the same effect as a sale or other disposition of substantially all of the assets of the Sponsor or of the shares of Sponsor Stock held in the Stock Fund, the Investment Manager may, in certain circumstances, have the discretionary authority to direct the Trustee (i) to tender all such shares or (ii) to vote all such shares in favor of such merger or other transactions provided that the Investment Manager shall notify the Trustee that it may exercise such discretionary authority as soon as administratively practicable prior to any such vote or tender.

(E)    Whenever the Investment Manager provides a direction to the Trustee, the Trustee shall not be liable for any loss or expense arising from the direction (i) if the direction is contained in a writing (or is oral and immediately confirmed in a writing) signed by any individual whose name and signature have been submitted (and not withdrawn) in writing to the Trustee by the Investment Manager in the form attached hereto as Schedule "L", and (ii) if the Trustee reasonably believes the signature of the individual to be genuine, unless it is clear on the direction's face that the actions to be taken under the direction would be prohibited by the fiduciary duty rules of Section 404(a) of ERISA or would be contrary to the terms of this Agreement. Such direction may be made via letter of

3

direction or such other means set forth in Schedule "L", attached hereto; provided, however, that the Trustee shall be protected in relying on such direction as if it were a direction made in writing by the Investment Manager. The Trustee shall provide the Investment Manager such information regarding the Trust's ownership of Sponsor Stock, including without limitation the trading activity effected by the Trustee pursuant to subsection (iii) and (iv) of this Section 5(e), as the Investment Manager reasonably requests. In the event that the Trustee has sought direction from the Investment Manager and the Investment Manager has failed to provide the Trustee with the necessary direction, the Trustee shall notify the Sponsor and seek direction from the Sponsor.

(F)    In the event the Investment Manager resigns or is removed, the duties and responsibilities delegated to the Investment Manager under this subsection (ix) will immediately become the duties of the Investment Committee. The Sponsor shall notify the Trustee as soon as administratively feasible of any such resignation or removal.

(G)    The Sponsor shall have the initial responsibility to advise participants of relevant changes to the Stock Fund by reason of the appointment of an Investment Manager. The Investment Manager has the responsibility to notify the Sponsor of any relevant changes to the Stock Fund. The Investment Manager shall have the responsibility for causing the participants to be notified of any relevant directions given pursuant to this Section 5(e) as the Investment Manager deems necessary in order to fulfill its duties under the Investment Guidelines. In the event that the Investment Manager has not communicated or has indicated that it does not intend to communicate a direction given pursuant to this section that the Trustee deems necessary in order to fulfill its duties under this Agreement, the Trustee shall notify the Sponsor. If requested by the Investment Manager or the Sponsor, or if the Trustee otherwise determines a communication is necessary, the Trustee will communicate the change, direction or other appropriate information to Participants and the Sponsor or the Trust shall bear all costs for said communication.

(H)    The Trustee shall accept direction from the Investment Manager only with regard to the duties and responsibilities set forth herein with regard to the Stock Fund.

(I)    The Sponsor may direct the Trustee to pay from the Trust any reasonable expenses incurred by the Investment Manager including the compensation of the Investment Manager. Any such direction shall include a direction as to the manner in which such expenses shall be allocated across Participant accounts.

6.    Amending Section 8(e), Indemnification, to add the following paragraph:

(iv)    The Sponsor shall indemnify the Trustee against, and hold the Trustee harmless from any and all loss, damage, penalty, liability, cost and expense, including without limitation, reasonable attorney's fees and disbursements

4

GR 001289

("Losses"), that may be incurred by, imposed upon, or asserted against the Trustee by reason of any claim, regulatory proceeding, or litigation arising from any act done or omitted to be done by the Investment Manager with regard to the Stock Fund, excepting only any and all Losses arising primarily from the Trustee's negligence, gross negligence, willful misconduct or bad faith.

7.    Amending Schedule "B" to add the following:

Investment Manager trading of Sponsor Stock:  For each instance where the Investment Manager initiates a trade through its own brokers in accordance with Schedule "M", a fee of $500 shall be due and payable by the Sponsor or the Trust to the Trustee.

8.    Restating Schedule "L" in its entirety, as attached hereto.

9.    Adding Schedule "M" as attached hereto.

IN WITNESS WHEREOF, the Trustee and the Plan Sponsor have caused this Fifteenth Amendment to be executed by their duly authorized officers effective as of the day and year first above written.

W.R. GRACE & CO.                    FIDELITY MANAGEMENT TRUST COMPANY

By: ___W B mc Sawan___             By: _____
                                         FMTC Authorized Signatory

Date: ___12/8/03___                 Date: ___12/19/03___

GR 001290



STATE STREET GLOBAL ADVISORS

State Street Financial Center
One Lincoln Street
Boston, MA 02111-2900

### Schedule "L" – Directions From Investment Manager

January 26, 2004

Ms. Rebecca Ethier
Fidelity Investments
300 Puritan Way - MM3H
Marlborough, MA 01752-3078

W.R. Grace & Co. Salaried Employees Savings and Investment Plan

Dear Ms. Ethier:

Pursuant to W.R. Grace & Co.'s appointment of State Street Bank & Trust Company ("SSBT Fiduciary") as an Investment Manager with regard to the W.R. Grace Common Stock Fund as an investment option in the above referenced plans, via an engagement agreement dated December 15, 2003, of which W.R. Grace & Co. is the Sponsor, this letter identifies the individuals authorized to give direction to Fidelity Management Trust Company ("Fidelity") with regard to the W.R. Grace & Co. Common Stock Fund, and the method by which Fidelity will accept such direction.

I hereby designate myself, Sydney Marzeotti, Kelly Driscoll and Peaches Kenneally as the individuals who may provide directions on behalf of the Investment Manager, and upon which Fidelity may rely. Only one such individual need provide any direction. The signature of each designated individual is set forth below and certified to be such.

You may rely upon each designation and certification set forth in this letter until we deliver to you written notice of the termination of authority of a designated individual.

Fidelity will accept direction via a written instruction executed by one of the individuals designated herein, which may be delivered via fax. Fidelity will also accept oral and email direction, provided that such direction is immediately confirmed in a properly executed writing, which may be delivered by fax.

Very truly yours,

Monet T. Ewing
Principal

Sydney Marzeotti

Peaches Kenneally

Kelly Driscoll



GR 001291

Schedule "M"

**OPERATING PROCEDURES FOR THE W.R GRACE COMMON STOCK** (the "Shares") **IN THE W.R. GRACE SAVINGS AND INVESTMENT PLAN** (the "Plan").

**THESE PROCEDURES**, dated as of the first day of November, 2003 between **W.R. GRACE & CO.** (the "Sponsor"), **STATE STREET BANK AND TRUST COMPANY** (the "Investment Manager") and **FIDELITY MANAGEMENT TRUST COMPANY** (the "Trustee") shall apply exclusively for any sales of W.R. Grace shares held in the W.R. Grace Stock Fund (the "Stock Fund") held in the Plan by the Investment Manager through its trading desk (each a 'Trade").

**Section 1.**      **Definitions.**

(a)      "Business Day" shall mean any day the New York Stock Exchange ("NYSE") is open for business.

(b)      "Trade Date" shall mean each Business Day on which the Investment Manager sells shares through its trading desk.

(c)      "Trade Date Plus One" shall mean each Business Day on which the Investment Manager shall provide to the Trustee information regarding sale activity that occurred in the Fund up to 4:00 p.m. ET on the prior Business Day.

(d)      "Settlement Date" shall mean each Business Day on which the proceeds will be received from the sale of shares.

**Section 2.**      **Notification**

(1) The Investment Manager shall notify the Trustee of any Trades executed on the Trade Date by 12:00 Noon, ET on Trade Date Plus One. The notification shall be provided via e-mail and facsimile transmission to:

Email: ICSTOCK@Fidelity.com
Fax:   (859)291-6188

The notification shall include:

Number of Shares Sold
Trade Date
Settlement Date
Price
Gross Proceeds
Commission
SEC Fees
Net Proceeds
Trading Broker and ID
DTC #
Special Broker Instructions

(2) If there are multiple Trades on any given Business Day, a separate e-mail and facsimile shall be provided for each Trade. The Investment Manager shall also provide a weighted average price net of

7

GR  001292

commissions and fees (the "Net Average Price") for all Trades executed on a Business Day by 12:00 Noon, ET on Trade Date Plus One. The Net Average Price shall be provided via e-mail and facsimile transmission to:

Email: ICSTOCK@Fidelity.com
Fax:   (859)291-6188

If the Investment Manager fails to provide or provides an incorrect Net Average Price, the Trustee shall not be responsible for any monetary losses incurred by participants as a result of such failure or incorrect price and W.R. Grace shall be responsible for such losses, unless the Investment Manager is responsible for such losses pursuant to the terms of its engagement.

**Section 3.**     **Settlement.**

(1) Upon receipt of notification from the Investment Manager of a Trade, the Trustee shall prepare a form for delivery to the Depository Trust Company (DTC) to transfer the required shares in order to allow a Trade to be settled. This notification shall include:

Number of Shares Sold
Trade Date
Settlement Date
Price
Gross Proceeds
Commission
SEC Fees
Net Proceeds
Trading Broker and ID
DTC #
Special Broker Instructions

(2) Based on the notification provided, on Settlement Date, DTC will deliver the appropriate number Shares to the broker and the Plan account will be credited with cash equal to the net proceeds.

(3) In the event that a Trade does not settle on the Settlement Date indicated by the Investment Manager or if the Trustee receives notification from DTC that a Trade cannot be settled, the Trustee shall notify the Investment Manager. The Trustee and the Investment Manager shall exercise reasonable best efforts to resolve the issue.

Trustee's Standing Wire Instructions:

**Broker #: 226**
**Agent Bank: NFS LLC**
**Agent Bank #: 95077**
**Internal Account#: 773-000680**

GR  001293



**Section 4.      Allocation.**

(1) On the Business Day following Settlement Date (the "Allocation Date"), the Trustee shall allocate the net proceeds received from the Trade to all participants who hold shares in the Stock Fund on the Allocation Date. All participant directed transactions that will be processed on the Allocation Date will be taken into account when determining the number of shares in the Stock Fund held by each participant on the Allocation Date ("Adjusted Plan Shares").

(2) Each participant's balance in the Stock Fund will be reduced by a number of shares equal to such participant's plan shares on the Allocation Date multiplied by a fraction; the numerator of which is the number of shares sold by the Investment Manager on the corresponding Trade Date and the denominator is the sum of the Adjusted Plan Shares of all participants.

(3) The transaction will be processed as an exchange from the Stock Fund to the Fixed Income Fund as of the Settlement Date. When only one Trade has been executed on a Business Day, the price used will be calculated by the Trustee based on the Net Proceeds received on Settlement Date divided by the number of Shares sold in that transaction. The Net Average Price provided by the Investment Manager will be used when multiple Trades are executed on a given Business Day.

(4) On the Business Day following the Allocation Date, the Trustee shall audit the Allocation transaction.

**Section 5.   Fund Closing**

(1) It is anticipated that participants will not be restricted from initiating transactions within the Stock Fund despite the ability of the Investment Manager to sell shares held in the Stock Fund. However, certain circumstances, including market conditions or a material decrease in the number of shares held by the Stock Fund may necessitate that participants be restricted from requesting transactions in the Stock Fund.

(2) On any given Business Day that the Investment Manager enters a Trade or aggregate Trades in excess of twenty-five percent (25%) of the shares held in the Stock Fund, the Investment Manager shall notify W.R. Grace and the Trustee.

(3) The Investment Manager shall determine based on the relevant circumstances whether the W.R. Grace Stock Fund in the Plan should be closed to participant transactions and in such event, provide such direction to the Trustee.

(4) If the Investment Manager determines that the Fund shall not be closed to participant transactions and the Trustee is unable to settle a Trade because there are an insufficient number of shares held in the Stock Fund, W.R. Grace shall be responsible for all monetary losses incurred by the Plan or the Trustee due to the Trustee's inability to settle the Trade unless either (i) the Investment Manager is responsible pursuant to the terms of its engagement or (ii) the Trustee is responsible pursuant to the terms of this Agreement.

This agreement may be executed in any number of counterparts, each of which shall be deemed an original but all of which together shall constitute one instrument, which may be sufficiently evidenced by any counterpart.



GR  001294

The above procedures and conditions are hereby confirmed by all parties.

**FIDELITY MANAGEMENT TRUST COMPANY**

By: _Rebecca Hays Ethier_

Name: _Rebecca Hays Ethier_

Title: _Director, Contracts_

Date: _12/19/03_

**W.R. GRACE & CO.**

By: _W B McGowan_

Name: W. Brian McGowan

Title: Senior Vice President

Date: 12/15/03

**STATE STREET BANK AND TRUST COMPANY**

By: _Monet Ewing_

Name: _Monet Ewing_

Title: _Vice - President_

Date: _12/12/03_

10

GR 001295

**SIXTEENTH AMENDMENT TO TRUST AGREEMENT BETWEEN
FIDELITY MANAGEMENT TRUST COMPANY AND
W.R. GRACE & CO.**

This **SIXTEENTH AMENDMENT**, dated as of the first day of January, 2005, by and between Fidelity Management Trust Company (the "Trustee") and W.R. Grace & Co. (the "Sponsor");

WITNESSETH:

WHEREAS, the Trustee and the Sponsor heretofore entered into a Trust Agreement dated July 1, 1993, as subsequently amended, with regard to the W.R. Grace & Co. Savings and Investment Plan (the "Plan"); and

WHEREAS, the Trustee and the Sponsor now desire to further amend such Trust Agreement as provided for in Section 14 thereof;

NOW, THEREFORE, in consideration of the above premises, the Trustee and the Sponsor hereby amend the Trust Agreement by:

(1)    Restating the "Annual Participant Fee" section of Schedule "B" as follows:

Annual Participant Fee:        $3 per participant*, billed and payable quarterly.

(2)    Restating the "Non-Fidelity Mutual Funds" section of Schedule "B" as follows:

Non-Fidelity Mutual Funds:    Fees paid directly to Fidelity Investments Institutional Operations Company, Inc. (FIIOC) or its affiliates by Non-Fidelity Mutual Fund vendors shall be posted and updated quarterly on Plan Sponsor Webstation at http://psw.fidelity.com or a successor site.

IN WITNESS WHEREOF, the Trustee and the Plan Sponsor have caused this Sixteenth Amendment to be executed by their duly authorized officers effective as of the day and year first above written.

W.R. GRACE & CO.                    FIDELITY MANAGEMENT TRUST COMPANY

By: _____                By: _____
    W. Brian McGowan                     FMTC Authorized Signatory

Date: _____12/31/04_____             Date: _____1/24/05_____

GR 001296

## SEVENTEENTH AMENDMENT TO TRUST AGREEMENT BETWEEN
## FIDELITY MANAGEMENT TRUST COMPANY AND
## W.R. GRACE & CO.

This **SEVENTEENTH AMENDMENT**, dated as of the first day of February, 2005, by and between Fidelity Management Trust Company (the "Trustee") and W.R. Grace & Co. (the "Sponsor");

WITNESSETH:

WHEREAS, the Trustee and the Sponsor heretofore entered into a Trust Agreement dated July 1, 1993, as subsequently amended, with regard to the W.R. Grace & Co. Savings and Investment Plan (the "Plan"); and

WHEREAS, the Trustee and the Sponsor now desire to further amend such Trust Agreement as provided for in Section 14 thereof;

NOW, THEREFORE, in consideration of the above premises, the Trustee and the Sponsor hereby amend the Trust Agreement by:

(1)    Amending the "investment options" section of Schedules "A" and "C" to add the following:

-    Goldman Sachs Mid Cap Value Fund – Class A
-    Goldman Sachs Small Cap Value Fund – Institutional Class

IN WITNESS WHEREOF, the Trustee and the Plan Sponsor have caused this Seventeenth Amendment to be executed by their duly authorized officers effective as of the day and year first above written.

W.R. GRACE & CO.                           FIDELITY MANAGEMENT TRUST COMPANY

By: _Robert M. Tarola_                      By: _____
                                            FMTC Authorized Signatory

Date: _February 3, 2005_                    Date: _2/18/05_

W.R. Grace & Co.
Qualified Trust Agreement
Seventeenth Amendment

GR 001297