W. R. GRACE & CO.
SAVINGS AND INVESTMENT PLAN

The W. R. Grace & Co. Salaried Employees Savings and
Investment Plan (the "Plan") was originally established by W. R.
Grace & Co., a Connecticut corporation ("Grace Connecticut"), as
of September 1, 1976.  The Plan was amended effective July 1,
1983 in order for Participants to elect the salary deferrals
permitted under section 401(k) of the Code.  The Plan was amended
from time to time thereafter by Grace Connecticut, the last such
amendments being effective as of January 1, 1987 and July 1,
1987.

As a result of a corporate reorganization whereby Grace
Connecticut became a subsidiary of W. R. Grace & Co., a New York
corporation ("Grace New York") (and was renamed "W. R. Grace &
Co.-Conn."), Grace Connecticut amended the Plan effective May 25,
1988 and Grace New York adopted the Plan, as amended, with
respect to its eligible employees and assumed the sponsorship of
the Plan on behalf of itself and its participating subsidiaries
as of such date.

Grace New York thereafter amended the Plan effective
January 1, 1989 and effective July 1, 1989, to, among other
things, establish an employee stock ownership plan (within the
meaning of section 4975(e)(7) of the Internal Revenue Code of
1986, as amended) which forms a portion of the Plan.  Grace New
York again amended the Plan effective July 1, 1990, January 1,
1992, June 30, 1993, and January 1, 1994.

The Plan has also been amended to, among other things,
comply with the provisions of the Tax Reform Act of 1986 and
subsequent legislation.

Effective September 27, 1996, as a result of a transaction whereby National Medical Care, Inc. became part of Fresenius Medical Care AG ("Fresenius"), Grace New York also became part of Fresenius, and the Plan became sponsored by a Delaware corporation, renamed W. R. Grace & Co. ("Grace-I").

To reflect the changes indicated in the immediately preceding paragraph, Grace further amended the Plan, effective as of September 27, 1996 (or such other date as provided in an applicable Benefits Committee Request or other date provided in the Plan).

Grace further amended the Plan, as set forth herein, effective January 1, 1997 (or such other date as provided in an applicable Benefits Committee Request or other date provided in the Plan), unless otherwise expressly provided in the Plan; which amendments are intended to (among other things) comply with the Small Business Job Protection Act of 1996 ("SBJPA") and the Uniformed Service Employment and Reemployment Rights Act of 1994 ("USERRA").

Effective March 31, 1998, as a result of a transaction whereby the Cryovac business of Grace-I became part of Sealed Air Corporation, Grace I also became part of Sealed Air Corporation and the Plan became sponsored by a Delaware corporation, renamed W. R. Grace & Co. ("Grace").

To reflect the changes indicated in the immediately preceding paragraph, Grace further amended the Plan, as set forth herein, effective as of March 31, 1998 (or such other date as provided in an applicable Benefits Committee Request or other date provided in the Plan).

To reflect changes associated with the "Closing Agreement" between Grace and the Internal Revenue Service (involving the Grace Drilling Plan and the HOMCO Plan), Grace further amended the Plan, as set forth herein, on April 20, 2000, with effective dates as set forth herein.

To reflect changes related to changes in eligibility, matching contributions and ability to reallocate Company contributions, Grace further amended the Plan, as set forth herein, effective October 1, 2000.

To reflect changes related to company match provisions, Grace further amended the Plan, effective, January 1, 2001, as set forth herein.

To reflect the adoption of the new minimum distribution rules, under the January 17, 2000 IRS proposed regulations, Grace further amended the Plan, effective September 1, 2001, as set forth herein.

To reflect the adoption of amendments to comply in good faith with certain provisions of the Economic Growth and Tax Relief Reconciliation Act of 2001, the Plan is further amended as set forth herein, effective for Plan Years beginning after December 31, 2001 (or such other date as provided herein).

Effective at the beginning of the Plan Year commencing January 1, 2002, the W.R. Grace & Co. Savings and Investment Plan for Hourly Employees is being merged into the W.R. Grace & Co. Savings and Investment Plan for Salaried Employees, and the name of the Plan is changed to the W.R. Grace & Co. Savings and Investment Plan for Salaried Employees to the W.R. Grace & Co. Savings & Investment Plan, effective immediately after such merger.

As specified above, the Plan is amended and restated, as set forth herein, to comply with changes in the law applicable to tax-qualified pension plans, including but not limited to SBJPA and USERRA, effective January 1, 1997 (or such other date as provided herein) and to reflect the merger of the W.R. Grace & Co. Savings and Investment Plan for Hourly Employees into the W.R. Grace & Co. Savings and Investment Plan for Salaried Employees and the new name of the Plan, effective at the beginning of the Plan Year commencing January 1, 2002.

## EXHIBIT A

Following is a list of transactions suspended during the Transition Period:

1) Transfers of existing Account balances between Funds (and, if applicable, the ESOP);

2) Changes with regard to the allocation of contributions among the Funds;

3) Distributions of lump-sum distributions; and

4) Distributions of installment payments.

The following provisions are effective for the period after the Transition Period and prior to the commencement of the Conversion Period:

The sum of Before Tax Contributions and After Tax Contributions to a Participant's Savings Plan Account (and, separately the Rollover Contributions to a Participant's or Inactive Participant's Savings Plan Account) shall initially be invested in whole or in part (in multiples of 5%) in Former Fund A, Former Fund B, Former Fund C, or Former Fund D within the Savings Plan and, in the case of Rollover Contributions only, in the ESOP portion of the Trust Fund, pursuant to the election of the Participant. Such election shall continue until changed by the Participant.

GR 001501

A Participant may change any election pursuant to this paragraph on any Business Day to another election permitted under this paragraph effective on the Business Day on which the Participant notifies the Recordkeeper of such change by telephonic instruction, if such notice is received by the Recordkeeper before the latest time of day agreed to by Grace and the Recordkeeper for same day processing; otherwise, such change will be effective on the immediately succeeding Business Day.

A Participant, Inactive Participant, or a former Participant who has incurred a Termination of Service may, on any Business Day, elect to transfer all or a portion (in multiples of 5%, or in whole dollar amounts) of the existing balance of his Account in Former Fund A, Former Fund B, Former Fund C, or Former Fund D within the Savings Plan, among any of the other Former Funds within the Savings Plan attributable to the following categories of contributions separately: (i) Before Tax Contributions and After Tax Contributions, in the aggregate, and (ii) Supplemental Contributions and Rollover Contributions, in the aggregate. Such transfer shall occur on the Business Day on which the Participant, Inactive Participant, or former Participant notifies the Recordkeeper of such transfer election by telephonic instruction, if such notice is received by the

Recordkeeper before the latest time of day agreed to by Grace and the Recordkeeper for same day processing; otherwise, such change will be effective on the immediately succeeding Business Day.

A Participant or Inactive Participant who has attained age 50, may, one time during each Plan Year, elect to transfer to Former Funds A, B, C and/or D within the Savings Plan all or a portion (in multiples of 5% or in whole dollar amounts) of his Account Balance invested in the ESOP and Former Fund C, in the aggregate, which is attributable to Company contributions pursuant to Section 4.01 (as effective after the Transition Period but before the Conversion Period), and/or to transfer all or a portion (in multiples of 5% or in whole dollar amounts) of his Account Balance invested in Former Fund A, Former Fund B and/or Former Fund D within the Savings Plan as a result of a previous investment transfer from the ESOP and Former Fund C to any of the other Former Funds within the Savings Plan (except Former Fund C) and/or to the ESOP. Any such transfer will occur on the Business Day on which the Participant notifies the Recordkeeper of such transfer election by telephonic instruction, if such notice is received by the Recordkeeper before the latest time of day agreed to by Grace and the Recordkeeper for same day processing; otherwise, such change will be effective on the immediately succeeding Business Day. The foregoing

GR 001503

provisions of this paragraph shall also apply to a former Participant who has incurred a Termination of Service, regardless of attained age, except that any such former Participant may make investment transfer elections on any Business Day without regard to the once per year limitation set forth above.

EXHIBIT B

Following is a list of transactions suspended during the Conversion Period:

1) Transfers of existing Account balances between Former Funds and/or Investment Funds (and/or, if applicable, the ESOP);

2) Distributions of lump-sum distributions; and

3) Distributions of withdrawals.

# TABLE OF CONTENTS

<u>Section</u>                                                                           <u>Page</u>


Purpose of the Plan--------------------------------          --

  1        Definitions--------------------------------------           1

  2        Participation-----------------------------------           22

  3        Employee Contributions-------------------------           29

  4        Company Contributions--------------------------           42

  5        Investment Provisions--------------------------           66

  6        Valuation of Accounts--------------------------           79

  7        Vesting-----------------------------------------           81

  8        Distribution of Vested Interest----------------           83

  9        Withdrawals During Employment------------------          106

 10        Payment of Benefits----------------------------          116

 11        Re-Employment----------------------------------          118

 12        Administration of the Plan---------------------          122

 13        Certain Rights and Obligations-----------------          128

 14        Amendments-------------------------------------          131

 15        Non-Alienation of Benefits---------------------          132

 16        Top-Heavy Provisions---------------------------          135

 17        Tender Offers----------------------------------          139

 18        Loans------------------------------------------          143

GR 001506

1

## Section 1

### Definitions

The following words and phrases used herein shall have the following meanings unless a different meaning is plainly required by the context.

1.01    Account:

>  The account reflecting the interest of each Participant, Inactive Participant and former Participant in the Plan, which, effective July 1, 1989, is comprised of both a Savings Plan Account and an ESOP Account.

1.02    Administrative Committee:

>  The Administrative Committee provided for in Section 12.06 of the Plan (including such Committee's designee).

1.03    After Tax Contribution(s):

>  The sum of (i) contributions made by a Participant as provided in Section 3.03 of the Plan, and (ii) Basic Contributions.

GR 001507

2

1.04    Basic Contribution(s):

   The contributions made by a Participant prior to
   July 1, 1983 under Section 3.01 of the Plan as in
   effect prior thereto.

1.05    Before Tax Contribution(s):

   The contributions made by the Company in accordance
   with the election of the Participant as provided in
   Section 3.02 of the Plan.

1.06    Board of Directors:

   The Board of Directors of Grace.

1.07    Business Day:

   Each day that the New York Stock Exchange is open
   for business.

1.08    Code:

   Internal Revenue Code of 1986, as amended.

1.09    Company:

   Grace, Grace Connecticut, and any other corporation
   or other trade or business (owned or controlled by
   Grace New York prior to September 27, 1996; or

GR  001508

3

owned or controlled by Grace Connecticut prior to
May 25, 1988) one or more divisions or departments
of which from time to time shall be authorized by
the Board of Directors to participate in the Plan
(or which were authorized by Grace Connecticut to
participate in the Plan prior to May 25, 1988) and
which shall have adopted the Plan.

1.10    Compensation:

(1)    Compensation is defined as wages and salaries for
personal services actually rendered in the course
of employment with the Company to the extent that
the amounts are includable in gross income
(including, but not limited, to commissions paid
salesmen, compensation for services on the basis of
a percentage of profits, incentive compensation,
tips and bonuses (but excluding long-term incentive
bonuses and retention bonuses)).  Compensation
shall exclude reimbursements or other expense
allowances, fringe benefits, moving expenses,
deferred compensation, welfare benefits, and the
Company's cost for any employee benefit plan,
including the Plan.  Compensation shall also
exclude the following:

(a)    Employer contributions to a plan of deferred
compensation which are not includable in the
employee's gross income for the taxable year
in which contributed, or employer
contributions under a simplified employee

GR 001509

4

pension to the extent such contributions are deductible by the employee, or any distributions from a plan of deferred compensation;

(b)     Amounts realized from the exercise of a non-qualified stock option, or when restricted stock (or property) held by the employee either becomes freely transferable or is no longer subject to a substantial risk of forfeiture;

(c)     Amounts realized from the sale, exchange or other disposition of stock acquired under a qualified stock option; and

(d)     other amounts which received special tax benefits, or contributions made by the employer (whether or not under a salary reduction agreement) towards the purchase of an annuity contract described in section 403(b) of the Code (whether or not the contributions are actually excludable from the gross income of the employee).

Notwithstanding anything herein to the contrary, Compensation shall include any amount contributed by the Company pursuant to a salary reduction agreement and which is not includable in the gross income of the employee under sections 125, 402(e)(3), 402(h), or 403(b)(or under section 132(f) for Plan Years on and

GR 001510

5

after January 1, 2001) of the Code.

(2)    In the case of a Foreign Based Eligible Employee,
       compensation shall be determined by the
       Administrative Committee using as a guideline to be
       uniformly and consistently applied that
       compensation which would have been received by a
       Participant if his services had been performed in a
       similar position in the United States for Grace or
       Grace Connecticut.

(3)    Effective January 1, 1989, Compensation taken into
       account under the Plan with respect to any Employee
       for a Plan Year shall not exceed $200,000 (as
       automatically adjusted for increases in the cost of
       living as prescribed by the Secretary of the
       Treasury). Effective January 1, 1994, compensation
       taken into account under the Plan with respect to a
       Plan Year shall not exceed $150,000 (as adjusted by
       the Commissioner for increases in the cost of
       living in accordance with section 401(a)(17)(B) of
       the Internal Revenue Code). Effective January 1,
       2002, Compensation taken into account under the
       Plan with respect to any Employee for a Plan Year
       shall not exceed $200,000 (as automatically
       adjusted for increase in the cost of living as
       prescribed by the Secretary of Treasury). For Plan
       Years before January 1, 1997, in determining the
       Compensation of a Participant for purposes of this
       limitation, the rules of section 414(g)(6) of the
       Code shall apply, except in applying such rules,

GR 001511

6

the term "family" shall include only the spouse of
the Participant and any lineal descendants of the
Participant who have not attained age 19 before the
close of the Plan Year.

1.11    Continuous Employment:

Any period of employment with the Company, or any
corporation or other trade or business controlled by Grace
(or, prior to September 27, 1996, W. R. Grace & Co., a New
York corporation; or, prior to May 25, 1988, by Grace
Connecticut) pursuant to Section 414(b) or (c) of the Code
or any other entity affiliated with the Company, or
required to be aggregated with the Company pursuant to
section 414(m) or section 414(o) of the Code, respectively
(during the period of such controlled status, affiliation
or required aggregation), commencing on the Employee's
date of hire.

1.12    Conversion Period:

The period beginning on June 30, 1993 and ending on
July 16, 1993 during which certain Plan
transactions were suspended as a result of
transferring the assets of the Trust Fund to
Fidelity Management Trust Company and changing the
investment options available under the Plan.  (A
description of these suspended transactions is
attached hereto as Exhibit B).

1.13    Cryovac Disposition

GR 001512

7

The transaction whereby control of the Cryovac
business (such business, the "Cryovac Business")
was separated from control of substantially all of
the other businesses conducted by Grace-I, and
whereby Grace commenced control and ownership,
directly or indirectly, of all of the Non-Cryovac
Businesses of Grace-I.

1.14    Disability Date:

(1)    The earlier of (i) the date on which a Participant
or Inactive Participant receives a disability award
under the Social Security Act, or (ii) the date on
which a Participant or Inactive Participant is
certified as disabled under a long term disability
income plan maintained by the Company.

(2)    In all other cases, the date on which the
Administrative Committee determines that a
Participant or Inactive Participant is unable to
perform the customary duties of his regular job
with the Company, and will continue to be unable to
so perform for a period of time which is expected
to be protracted, due to a physical or mental
disability.  This determination is to be made only
after the Participant or Inactive Participant has
submitted himself to an examination by a physician
provided by or acceptable to the Administrative
Committee.

GR  001513

8

(3)      For purposes of Section 402(e)(4)(A) of the Code, a Participant or Inactive Participant shall be considered to have separated from service on his Disability Date.

1.15   Early Retirement Date:

The date of the Participant's or Inactive Participant's Termination of Service, provided it occurs on or after his 55th birthday and prior to his 65th birthday, or on or after his 50th birthday in the case of Participants and Inactive Participants who are subject to the early retirement provisions of section 5.14 or Section 5.15 of the W. R. Grace & Co. Retirement Plan for Salaried Employees or section 3.14 of the W. R. Grace & Co. Supplemental Executive Retirement Plan.

1.16   Effective Date of the Plan:

(1)      The Effective Date of this amended and restated Plan is January 1, 1997 (or such other date as provided herein).  The Effective Date of the Plan as originally adopted by Grace Connecticut is September 1, 1976.

(2)   The Effective Date of the Plan for each Employing Unit authorized to participate in the Plan after September 1, 1976 shall be the effective date of such participation.

GR 001514

9

1.17    Eligible Employee:

An Employee eligible to participate in the Plan as
provided in Section 2.01.

1.18    Employee:

Any person who is employed by the Company or any
other entity required to be aggregated with the
Company under sections 414(b), (c), (m) or (o) of
the Code.

For purposes of the requirements of section
414(n)(3) of the Code, a "leased employee" who is
not excluded under the safe harbor provisions of
section 414(n)(5) of the Code shall be treated as
an Employee, but any such "leased employee" shall
not be an Eligible Employee unless specifically so
designated by the Company. A "leased employee" is
any person (other than an employee of the Company)
who pursuant to an agreement between the Company
and any other person (leasing organization) has
performed services for the Company (or for the
Company and related persons determined in
accordance with §414(n)(6) of the Code) on a
substantially full-time basis for a period of at
least one year, and such services are performed
under the primary direction or control of a Company
(for Plan Years beginning prior to January 1, 1997,
are of a type historically performed by employees
in the business field of a Company).

GR  001515

10

1.19    Employing Unit:

A division or department of the Company authorized
by the Board of Directors to participate in the
Plan (including any division or department of the
Company authorized by Grace Connecticut to
participate in the Plan prior to May 25, 1988).

1.20    ESOP:

Effective July 1, 1989, the stock bonus portion of
the Plan which constitutes an employee stock
ownership plan under section 4975(e)(7) of the
Code.

1.21    ESOP Account:

The amounts credited to each Participant, Inactive
Participant or former Participant under the ESOP,
separately reflecting Company contributions made after
June 30, 1989 and before January 1, 2001 under Section
4.01 (including Company contributions that were
transferred from Former Fund C within the Savings Plan to
the ESOP in accordance with Section 5.01), and
Supplemental Contributions, After-Tax Contributions,
Before-Tax Contributions and Rollover Contributions that
were invested in Former Fund C within the Savings Plan and
subsequently transferred to the ESOP in accordance with
Section 5.01, each with any earnings, interest and
dividends, and profits and losses, realized or unrealized
thereon.

GR 001516

11

1.22    Foreign Based Eligible Employee:

An Employee eligible to participate in the Plan as
provided in Section 2.01(2).

1.23    Foreign Subsidiary:

Any foreign entity in which the Company directly or
through one or more entities has at least a 10%
interest in the voting stock or profits thereof and
with respect to which the Company has entered into
an agreement with the U.S. Secretary of the
Treasury or his delegate as defined in section
3121(l) of the Code providing social security
coverage of U.S. citizens and U.S. resident
employees.

1.24    Former Funds:

The available investment options under the Plan
prior to the commencement of the Conversion Period,
including Former Funds A, B, C and D.

1.25    Grace:

W. R. Grace & Co., a Delaware corporation.

1.26    Grace Connecticut:

W. R. Grace & Co.-Conn., a Connecticut corporation,
which is a subsidiary of Grace.  All references

GR 001517

12

herein to "Grace Connecticut" which relate to
periods prior to May 25, l988, shall mean W. R.
Grace & Co., a Connecticut corporation.

1.27   Grace Stock:

Shares of common stock of Grace, including
fractional shares.

1.28   Hour of Service:

With respect to each Plan Year (or other applicable
computation period) an Employee will be credited with an
Hour of Service for the following:

(1)   Each hour for which an Employee is paid or entitled
to payment by the Company for the performance of
duties.

(2)   Each hour up to a maximum of 50l hours for which an
Employee is paid or entitled to payment by the
Company on account of a period of time during which
no duties are performed due to vacation, holiday,
illness, incapacity (including disability), layoff,
jury duty, military duty or leave of absence.

(3)   Each hour not otherwise credited for which back
pay, irrespective of mitigation of damages, has
been either awarded or agreed to by the Company.

Notwithstanding the foregoing, the Hours of Service of a

GR 001518

13

salaried Employee exempt from the overtime provisions of
the Fair Labor Standards Act shall be calculated, for
purposes of determining a Year of Service and a One-Year
Break in Service, by crediting him with 45 Hours of
Service for any calendar week in which he has at least one
Hour of Service.  This provision shall be effective as of
May 1, 1979 with respect to all relevant computation
periods (before or after such date) for exempt salaried
Employees who terminate, retire or are re-employed on or
after such date.

The foregoing shall be determined in accordance with the
provisions of Labor Department Regulations Sections
2530.200(b)-2(b) and (c) and Section 2530.200(b)-3(e)(6),
where applicable.

Hours of Service for purposes of determining eligibility
and a One-Year Break in Service shall include hours during
any period of Continuous Employment.

1.29    Inactive Participant:

(1)     Any Participant who ceases to be an Eligible
        Employee but whose Continuous Employment has not
        been terminated.

(2)     Any Participant who is not currently making After
        Tax Contributions and is not currently electing to
        have Before Tax Contributions made on his behalf.

14

(3)     Unless otherwise expressly provided in the Plan,
        the term "Inactive Participant" shall include an
        alternate payee for whom an Account is required to
        be established and maintained within the Plan by
        the terms of a qualified domestic relations order
        described in section 414(p) of the Code.

1.30    Investment Committee:

        The Investment Committee as provided in Section
        12.03 (including such Committee's designee).

1.31    Investment Funds:

        The available investment options under the Plan
        after the commencement of the Conversion Period
        (but not including the ESOP) which are described in
        Section 5.

1.32    Investment Manager:

        An Investment Manager as provided in Section 12.04.

1.33    NMC Disposition:

        The transaction whereby control of the business
        conducted by Grace's National Medical Care, Inc.
        subsidiary (such businesses, the "NMC Businesses")
        was separated from control of substantially all of
        the other businesses conducted by W. R. Grace & Co.
        (a New York corporation), which included a

15

distribution, with respect to each share of its
common stock, of one share of Grace, which directly
or indirectly owns or controls the Non-NMC
Businesses.

1.34    Non-Taxable Balance:

The amount of a Participant's contributions to the
Plan (not previously withdrawn) in which he has a
cost basis for tax purposes, as of December 31,
1986.

1.35    One-Year Break in Service:

Any Plan Year during which an Employee fails to
complete more than 500 Hours of Service due to a
Termination of Service.  A One-Year Break in
Service shall occur at the close of business on the
last day of any such Plan Year.

For purposes of determining a One-Year Break in
Service in the case of an absence commencing on or
after January 1, 1985, an Employee shall also be
credited with a number of Hours of Service equal to
such Employee's normal working hours (or 8 hours
per workday if this cannot be determined) (up to a
maximum of 501 hours) during which the Employee was
absent from work on account of pregnancy,
childbirth, adoption, or related child care (as
described in sections 410(a)(5)(E) and 411(a)(6)(E)
of the Code).  Such hours shall be credited in the

16

Plan Year in which such absence begins if such
hours are needed to prevent a One-Year Break in
Service in such Plan Year.  Otherwise such hours
shall be credited in the next succeeding Plan Year.

1.36    Participant:

Any person participating in the Plan as provided in
Section 2.

1.37    Plan:

W. R. Grace & Co. Savings and Investment Plan  (for
periods before January 1, 2002, W. R. Grace & Co.
Salaried Employees Savings and Investment Plan) as
set forth herein and as from time to time amended.

1.38    Plan Year:

The twelve-month period commencing on each January
1st and terminating on the following December 31st,
except that the first Plan Year shall be the
four-month period commencing on September 1, 1976
and terminating on December 31, 1976.

1.39    Qualified Domestic Subsidiary:

A domestic corporation:

(1)    Eighty (80) percentum or more of the
outstanding voting stock of which is owned

GR 001522

17

by the Company;

(2)     Ninety-five (95) percentum or more of its
gross income for the 3 year period
immediately preceding the close of its
taxable year which ends on or before the
close of the taxable year of the Company (or
for such part of such period during which
the Corporation was in existence) was
derived from sources outside the United
States; and

(3)     Ninety (90) percentum or more of its gross
income for such period (or such part) was
derived from the active conduct of a trade
or business.

1.40    Recordkeeper:

The entity retained by Grace as of January 1, 1992
to maintain the books and records of the Plan and
to make distributions of Plan benefits, and any
successor(s) thereto.

1.41    Retirement:

Termination of Service (other than by death) on an
Early Retirement Date or a Retirement Date.

18

1.42    Retirement Date:

> The date of the Participant's or Inactive
> Participant's Termination of Service, provided it
> occurs on or after his 65th birthday.

1.43    Rollover Contribution(s):

> The contributions made by a Participant as
> described in Section 3.13 of the Plan.

1.44    Savings Plan:

> The portion of the Plan that does not constitute an
> employee stock ownership plan under section
> 4975(e)(7) of the Code.  Prior to July 1, 1989, the
> Plan was comprised entirely of the Savings Plan.

1.45    Savings Plan Account:

> The amounts credited to each Participant, Inactive
> Participant, or former Participant under the
> Savings Plan, separately reflecting Supplemental
> Contributions, After Tax Contributions, Before Tax
> Contributions, Rollover Contributions and Company
> contributions made to the Plan after December 31,
> 2000, each with any earnings, interest and
> dividends, and profits or losses, realized or
> unrealized, thereon (other than any such amounts
> that were invested in Former Fund C and
> subsequently transferred from the Savings Plan to

GR 001524

19

the ESOP in accordance with Section 5.01).

1.46    Supplemental Contributions:

The contributions made by a Participant prior to
July 1, 1983 under Section 3.02 of the Plan as in
effect prior thereto, and the contributions
transferred from the W. R. Grace & Co. Retirement
Plan for Salaried Employees as described in Section
3.14.

1.47    Termination of Service:

Termination of Continuous Employment as determined
by the Company from its service records.

Notwithstanding any different treatment provided
under a parallel provision of any other employee
benefit plan maintained by the Company, in the
event that an Employee ceases to render actual
services to the Company (and any affiliate
thereof), no amount paid to him (whether in a lump
sum or in periodic installments) on or after
cessation of services on account of severance shall
be regarded as compensation under the Plan (except
to the extent otherwise required by law).

1.48    Three Months of Service:

Three consecutive, full calendar months, beginning
with the first day of the calendar month following

20

(or coincident with) the Employee's date of hire,
during which the Employee has completed at least
250 Hours of Service.

1.49    Transition Period:

The period beginning on December 31, 1991 and
ending on April 1, 1992 during which certain Plan
transactions were suspended as a result of the
transfer of the books and records of the Plan from
Grace (and its designees) to the Recordkeeper.  (A
list of these suspended transactions and a
description of certain other matters related to the
Transition Period is attached hereto as Exhibit A.)

1.50    Trust Fund:

The fund established under Section 12.01.

1.51    Trustee:

The Trustee or Trustees provided for in Section
12.01.

1.52    Vested Interest:

That portion of an Account in which a participant
has a fully vested and nonforfeitable right, as
provided in Section 7.

21

1.53    Year of Service:

>           The consecutive twelve-month period beginning on
            the Employee's date of hire or any Plan Year
            subsequent to such date of hire (beginning with the
            Plan Year which includes the first anniversary of
            the Employee's date of hire) in which the Employee
            has completed at least 1,000 Hours of Service.

1.54        Effective July 1, 1989, where a provision in the
            text of the Plan is intended to apply to the entire
            Plan, the term "Plan" is used.  Where a provision
            is intended to apply to one portion of the Plan,
            but not the other, the term "ESOP" or "Savings
            Plan", as the case may be, is used.

1.55        Masculine pronouns used herein shall refer to men
            or women or both and nouns and pronouns when stated
            in the singular shall include the plural and when
            stated in the plural shall include the singular,
            wherever appropriate.

1.56        Any reference in the Plan to a "Section" shall
            refer to a Section of the Plan unless otherwise
            specified.

GR 001527

22

## Section 2

Participation

2.01   An Eligible Employee is:

(1)      Any salaried Employee of an Employing Unit, or any
         salesman paid on a commission basis by an Employing
         Unit, who has completed Three Months of Service
         (or, for periods prior to October 1, 2000, one Year
         of Service), other than an Employee with respect to
         whom compensation, retirement benefits, hours of
         work or conditions of employment are determined
         through good faith bargaining with a recognized
         bargaining agent (subject to collective bargaining)
         or an Employee actively participating in another
         savings and investment plan maintained or
         contributed to by the Company or any subsidiary of
         the Company.

         With respect to any Eligible Employee who has
         completed Three Months of Service (but not one Year
         of Service) on or prior to October 1, 2000, such
         Eligible Employee shall be eligible to commence
         participation in the Plan, as of October 1, 2000.

         Notwithstanding the forgoing, for periods
         commencing on or after October 1, 2000, any
         salaried Employee of an Employing Unit, or any
         salesman paid on a commission basis by an Employing

23

Unit, other than an Employee with respect to whom
compensation, retirement benefits, hours of work or
conditions of employment are determined through
good faith bargaining with a recognized bargaining
agent (subject to collective bargaining) or an
Employee actively participating in another savings
and investment plan maintained or contributed to by
the Company or any subsidiary of the Company, who
does not satisfy the requirements of either of the
first two paragraphs of this Section 2.01(1) prior
to completing one Year of Service, shall be an
Eligible Employee when he or she has completed one
Year of Service.

The limitations of this Section 2.01(1) with
respect to the exclusion of hourly Employees from
participation in the Plan shall not apply to those
hourly Employees who, as a result of the merger of
the Hourly Plan (as defined in Section 2.11) with
this Plan, become Participants or Inactive
Participants in this Plan as the result of such
merger, as more fully described in Section 2.11.


(2)     Any citizen or resident of the United States who is
        a salaried Employee or salesman paid on a
        commission basis of (1) a Foreign Subsidiary or (2)
        a Qualified Domestic Subsidiary, as described
        respectively in sections 406(a) and 407(a) of the
        Code, and for whom no contributions under a funded
        plan of deferred compensation are provided by the

GR 001529

24

Foreign Subsidiary, Qualified Domestic Subsidiary, or any other person with respect to the remuneration paid by such Foreign Subsidiary or Qualified Domestic Subsidiary, and who has completed one Year of Service.

Notwithstanding the foregoing, an individual who is not a Participant in the Plan at the time he is hired by a foreign subsidiary or qualified domestic subsidiary is not an Eligible Employee.

(3)  Notwithstanding Section 2.01(1), effective at the beginning of the Plan Year commencing January 1, 2002, any hourly Employee of an Employing Unit (other than an Employee actively participating in another savings and investment plan maintained or contributed to by the Company or any subsidiary of the Company) who has completed Three Months of Service shall be an Eligible Employee. The designation of an Employing Unit may restrict eligibility to those hourly Employees thereof who are covered under a specified collective bargaining agreement, or who are not covered under any such agreement.

Any hourly Employee of an Employing Unit, who does not satisfy the requirements of the preceding paragraph prior to completing one Year of Service, shall be an Eligible Employee when he or she has completed one Year of Service.

25

2.02   Each Employee eligible to participate in the Plan shall be
       so notified by the Company and shall elect to participate
       or not to participate by signing such forms as the
       Administrative Committee may require which forms shall be
       delivered to the Administrative Committee within 30 days
       after such notice of eligibility.  Failure to elect
       affirmatively to participate in the Plan within 30 days
       after such notice of eligibility shall be an election not
       to participate.

2.03   Any Employee who becomes eligible to participate and who
       elects to participate within the time provided shall
       become a Participant as of the first day of the month
       coincident with or next following his eligibility date.

2.04   Each Eligible Employee who elects not to become a
       Participant when first eligible may at any time after his
       eligibility date elect to become a Participant by signing
       such forms as the Administrative Committee may require.
       Such an Eligible Employee shall become a Participant (by
       electing to have the Company make Before Tax Contributions
       on his behalf under Section 3.02 or otherwise) as of the
       first day of the month which follows by at least 30 days
       the date such forms as the Administrative Committee may
       require are delivered to that Committee.

2.05   Any other provision of the Plan to the contrary
       notwithstanding:

GR 001531

26

(i)     each Eligible Employee who is not a Participant as
        of May 24, 1993, may elect to become a Participant
        effective July 1, 1993, provided that the Eligible
        Employee makes that election by submitting the
        appropriate form to the Administrative Committee on
        or after May 24, 1993, but before June 19, 1993
        (the "Open Enrollment Period:); and

(ii)    each Participant may elect to have the Company
        start to make, or increase, Before Tax
        Contributions on his behalf under Section 3.02,
        effective July 1, 1993, provided that the
        Participant makes that election by submitting the
        appropriate form to the Administrative Committee
        during the Open Enrollment Period.

2.06    If a Participant terminates his Continuous Employment for
        any reason, his participation shall terminate.

2.07    Notwithstanding Section 2.06, an interruption in service
        in case of an authorized leave of absence, will not be
        considered a Termination of Service for purposes of the
        Plan, but no After Tax Contributions or Before Tax
        Contributions may be made during the periods of absence
        unless the Participant receives Compensation during such
        periods.

27

2.08    If a Participant is transferred to service with a division
        of the Company or any of its subsidiaries or affiliates
        not covered by the Plan or is transferred to an employment
        status not covered by the Plan, he shall be considered an
        Inactive Participant, and no After Tax Contributions or
        Before Tax Contributions may be made until he again
        becomes an Eligible Employee.

2.09    In the event that the Company shall acquire the control of
        any organization by purchase of assets or stock, merger,
        amalgamation, consolidation or any other similar event,
        the Board of Directors (or its Benefits Committee or any
        officer of Grace who has been authorized to acquire such
        organization by the Board of Directors) may authorize such
        organization to participate in the Plan upon agreement
        that contributions shall be made as required under the
        Plan, shall determine to what extent, if any, credit for
        service with such organization shall be granted as to the
        employees of such organization for the purpose of
        determining eligibility hereunder, whether a plan
        maintained by such organization shall be merged into the
        Plan and the treatment of assets of such plan in
        connection with such merger.

2.10    The former Dearborn Chemical Company Salaried Employees
        Savings and Investment Plan (and the assets and account
        balances thereunder) was merged into this Plan effective
        July 5, 1989.  The former HOMCO International, Inc. Profit
        Sharing, Investment Savings, and Retirement Plan; Grace
        Offshore Company Employees Profit Sharing Plan; and Grace
        Energy Corporation Employees Savings and Investment Plan

28

(and the assets and account balances under each) were merged into this Plan effective December 31, 1993.  The former Grace Drilling Co. Money Purchase Plan (and the assets and account balances thereunder) was merged into this Plan effective October 1, 1994.

2.11    The former W.R. Grace & Co. Hourly Employees Savings and Investment Plan ("Hourly Plan") was merged into this Plan effective at the beginning of the Plan Year commencing January 1, 2002.  An individual who is a participant, inactive participant or former participant under the Hourly Plan as of the time of such merger shall become a Participant, Inactive Participant or former Participant, as applicable, under this Plan as of the time of such merger.  Provided, however, that an individual whose rights to benefits payable under the Hourly Plan have, prior to January 1, 2002, commenced, been paid in full (either directly or by distribution of an appropriate annuity contract from an insurer) or been forfeited to the extent not paid shall have his benefits determined under the Hourly Plan as in effect at the time of distribution, except as otherwise specifically provided in this Plan.

29

## Section 3

## Employee Contributions

3.01    Each Participant shall elect to have the Company make
        Before Tax Contributions on his behalf in accordance with
        Section 3.02, or shall elect to make After Tax
        Contributions to the Plan in accordance with Section 3.03,
        or both.

        Effective for Plan Years commencing on or after January 1,
        2002, Participants eligible to make elective deferrals
        under this Plan and who have attained age 50 before the
        close of the Plan Year shall be eligible to make catch-up
        contributions in accordance with, and subject to the
        limitations of, section 414(v) of the Code.  Such catch-up
        contributions shall not be taken into account for purposes
        of the provisions of the Plan implementing the required
        limitations of Section 402(g) and 415 of the Code.  The
        Plan shall not be treated as failing to satisfy the
        provisions of the Plan implementing the requirements of
        Section 401(k)(3), 401(k)(11), 401(k)(12), 410(b), or 461
        of the Code, as applicable, by reason of the making of
        such catch-up contributions.

3.02    During a period specified by the Administrative Committee
        prior to the later of (1) the beginning of each Plan Year
        or (2) the date that an Eligible Employee first becomes a
        Participant under Section 2 (subject to Section 2.04) or
        Section 11.02 (upon reemployment), a Participant may
        request that the Company reduce his Compensation in

30

respect of periods during such Plan Year that he is a
Participant in the Plan by an amount equal to a whole
percentage, between 2% and 16% inclusive, of such
Compensation and contribute such amount to his Account
under the Plan as a Before Tax Contribution.
Notwithstanding the foregoing, such Before Tax
Contributions under this Plan and all other plans,
contracts, or arrangements of the Company shall not exceed
$7,000 (as automatically adjusted for increases in the
cost of living as prescribed by the Secretary of the
Treasury) for a Plan Year (determined without regard to
certain amounts paid in 1987 in respect of 1986 services).
 In the event that a Participant participates in more than
one cash or deferred arrangement under section 401(k) of
the Code (or other elective deferral arrangement covered
under section 402(g)(3) of the Code) and contributions
under all such arrangements exceed the foregoing
limitation, he shall so inform the Administrative
Committee and shall indicate the amount of his Before Tax
Contributions to be refunded to him from the Plan as an
Excess Deferral no later than March 1 of the Plan Year
next following the Plan Year in which such Before Tax
Contributions were made, and such refund of such Before
Tax Contributions (and earnings, if any, thereon) shall be
made to him no later than April 1 of such Plan Year.

Amounts refunded as Excess Deferrals pursuant to this
Section 3.02 shall be adjusted for income or loss.  The
income or loss allocable to the Excess Deferrals is equal
to the sum of the following:  (i) the income or loss for
the taxable year of the individual allocable to the

GR 001536

31

Participant's Before Tax Contributions multiplied by a fraction, the numerator of which is such Participant's Excess Deferral for the taxable year, and the denominator is equal to the sum of the Participant's account balance attributable to Before Tax Contributions as of the beginning of the taxable year, plus the Participant's Before Tax Contributions for the taxable year, and (ii) 10% of the amount determined under (i) above multiplied by the number of whole calendar months between the end of the Plan Year and the date of distribution, counting the month of distribution if distribution occurs after the 15th of such month.

3.03    A Participant who has elected to have the Company make Before Tax Contributions on his behalf under Section 3.02 may also elect to contribute as After Tax Contributions an amount equal to a whole percentage of his Compensation between 1% and 16% inclusive, not in excess of the amount by which 16% exceeds the percentage of his Compensation represented by Before Tax Contributions for the Plan Year. A Participant who has not elected to have the Company make Before Tax Contributions on his behalf under Section 3.02 may elect to contribute as After Tax Contributions an amount equal to a whole percentage of his Compensation between 2% and 16% inclusive.

3.04    Subject to Section 3.02 of the Plan, a Participant may elect to increase or decrease his rate of Before Tax Contributions as of the first date of any month (but not more frequently than once every 3 months) with no changes during a Plan Year that are effective after September 1.

32

Such elections shall be effective on the first day of the month next following the date that the Administrative Committee receives notice from him.  Notwithstanding the foregoing, the provisions of this Section 3.04 shall not apply to any suspension of Before Tax Contributions which results from a withdrawal made pursuant to Section 9.01(3) on account of hardship (as defined in Section 9.05).

3.05    Subject to Section 3.03 of the Plan, a Participant may elect to increase or decrease his rate of After Tax Contributions effective on the first day of any month, provided that the Administrative Committee receives prior notice from him in writing, and provided further that such increase or decrease cannot be made more frequently than once every three months, except that the foregoing restriction shall not extend beyond the end of any Plan Year.  Notwithstanding the foregoing, a Participant may suspend his After Tax Contributions effective the last day of any month by giving written notice to the Administrative Committee at any time prior to such effective date.  If a Participant has suspended his After Tax Contributions, he may resume his After Tax Contributions on the first day of any month which is at least three full calendar months after the date the suspension commenced (except that the foregoing restriction shall not extend beyond the end of any Plan Year) by giving written notice to the Administrative Committee as determined by the date such notice is received by the Administrative Committee.  For purposes of this Section 3.05, an Eligible Employee who does not become a Participant in the Plan when first eligible shall

33

not be deemed to have made an election with respect to
After Tax Contributions until the Administrative Committee
receives notice from him in writing of such an election.

3.06    After Tax Contributions shall be deducted by the Company
from the Compensation of each Participant.  Before Tax
Contributions shall be withheld by the Company from the
Compensation of each Participant, subject to Section 3.10.

3.07    A Participant shall be an Inactive Participant during a
period when (1) no Before Tax Contributions are being made
on his behalf and (2) he is not currently making After Tax
Contributions.

3.08    During the period prior to the beginning of each Plan
Year, or from time to time thereafter, or both, the
Company shall make estimated calculations, as set forth
below, with respect to such Plan Year required by section
401(k) of the Code, and after the end of such Plan Year,
shall make exact calculations, as set forth below:

(a)    Each Eligible Employee shall be classified as
either a (i) "highly compensated employee" or an
(ii) "other employee".  For purposes hereof, a
"highly compensated employee" means any Eligible
Employee who performs service for the Company
during the Plan Year and (A) who during the twelve
(12) month period immediately preceding the Plan
Year of reference received compensation from the
Company in excess of $80,000 (as adjusted pursuant
to the Code) or (B) who during such preceding Plan

GR 001539

34

Year, or the Plan Year of reference, owned 5% or
more of the equity of the Company.  In applying
this definition, the special rules of section
414(q) of the Code and the aggregation rules of
sections 414(b), (c), (m) and (o) of the Code shall
be taken into account.  For purposes hereof,
"compensation" means compensation as set forth in
Section 4.05 of the Plan (with the modifications
set forth in section 414(q) of the Code).  For
purposes hereof, an "other employee" means any
Eligible Employee who is not classified as a highly
compensated employee.

(b)    For each Eligible Employee who is classified as an
other employee, a deferral ratio shall be
calculated equal to his Before Tax Contributions
for the Plan Year preceding the Plan Year of
reference (for Plan Years prior to January 1, 1997,
the Plan Year of reference) (zero in the case of an
Eligible Employee for whom no Before Tax
Contributions are being made) divided by his
Compensation for such Plan Year. Notwithstanding
the foregoing, effective for Plan Years beginning
on or after January 1, 2001, for purposes of this
Section 3.08(b), the deferral ratio shall be the
ratio for the Plan Year of reference.

(c)    For each Eligible Employee, who is classified as a
highly compensated employee, a deferred ratio shall
be calculated equal to his Before Tax Contributions

35

for the Plan Year of reference (zero in the case of an Eligible Employee for whom no Before Tax Contributions are being made) divided by his compensation for the Plan Year of reference.   An actual deferral percentage shall be calculated equal to the average of the deferral ratios for all such Eligible Employees.

3.09   For each Plan Year, the actual deferral percentage of the Eligible Employees who are classified as highly compensated employees (determined under Section 3.08(c), which considers contributions and Compensation for the Plan Year of reference) shall not exceed the greater of (A) or (B) below (and any necessary adjustments shall be made as set forth in Section 3.10):

(A)   The actual deferral percentage for the prior Plan Year (for Plan Years prior to January 1, 1997, the Plan Year of reference) of the Eligible Employees who are classified as other employees (determined under Section 3.08(b)), multiplied by 1.25, or

(B)   The lesser of:

(i)   the actual deferral percentage for the prior Plan Year (for Plan Years prior to January 1, 1997, the Plan Year of reference) of the Eligible Employees who are classified as other employees (determined under Section 3.08(b)), multiplied by 2, or

36

(ii)    the actual deferral percentage for
        the prior Plan Year (for Plan Years
        prior to January 1, 1997, the Plan
        Year of reference) of the Eligible
        Employees who are classified as
        other employees (determined under
        Section 3.08(b)), plus 2%.

Notwithstanding the foregoing, effective for Plan Years
beginning on or after January 1, 2001, for purposes of this
Section 3.09, the actual deferral percentage for Eligible
Employees who are classified as other employees shall be the
actual deferral percentage for the Plan Year of reference.

3.10   In the event that the actual deferral percentage of the
       Eligible Employees who are classified as highly
       compensated employees for the Plan Year exceeds the
       maximum percentage permitted under Section 3.09 (less such
       additional percentage as may be determined by the
       Administrative Committee) based on estimated or exact
       calculations, the requested or actual Before Tax
       Contribution for the Plan Year of the Eligible Employee(s)
       who are classified as highly compensated employees and who
       are deferring the greatest dollar amount as Before Tax
       Contributions for the Plan Year shall have such
       contributions reduced until such time as the requirements
       of this Section 3.10 are satisfied.

3.11   Any amount by which a Participant's requested or actual
       Before Tax Contribution is reduced for a Plan Year shall
       be treated in the manner set forth below as elected by

37

such Participant.  A Participant may elect to receive such
amount in cash as part of his current Compensation or may
elect to have such amount considered as an After Tax
Contribution as determined under Section 3.03 of the Plan.
 In the event that a Participant elects to receive the
amount by which his Before Tax Contributions are required
to be reduced in cash, such amount shall not be
contributed to the Plan, or if contributed, shall be
refunded with any earnings allocable thereto as an Excess
Contribution (and any Company contribution associated with
such refunded Excess Contribution, including any earnings
allocable thereo, shall be forfeited).  Before Tax
Contributions which are to be refunded or considered as an
After Tax Contribution under this Section 3.11 shall be so
refunded or considered in accordance with section
401(k)(8) of the Code and Treasury Regulations promulgated
thereunder no later than the end of the Plan Year after
the Plan Year in which such amount was contributed to the
Plan (and if possible, no later than March 15 of the Plan
Year after the Plan Year in which such amount was
contributed).  Before Tax Contributions which are
considered as an After Tax Contribution under this Section
3.11 will continue to be regarded as Before Tax
Contributions for purposes of Section 9 of the Plan
regarding withdrawals.

38

Amounts refunded as Excess Contributions and Company
contributions forfeited pursuant to this Section 3.11
shall be adjusted for income or loss.  The income or loss
allocable to an Excess Contribution is equal to the sum of
the following:  (i) the income or loss allocable to the
Participant's Before Tax Contributions for the Plan Year
multiplied by a fraction, the numerator of which is such
Participant's Excess Contribution for the year, and the
denominator is equal to the sum of the Participant's
account balance attributable to Before Tax Contributions
as of the beginning of the Plan Year, plus the
Participant's Before Tax Contributions for the Plan Year,
and (ii) 10% of the amount determined under (i) above
multiplied by the number of whole calendar months between
the end of the Plan Year and the date of the distribution,
counting the month of distribution if distribution occurs
after the 15th of such month.  The income or loss
allocable to forfeited Company contributions shall be
determined in a similar manner, substituting the term
"Company contributions" wherever "Before Tax
Contributions" appears.

3.12    No contributions may be made by a Participant who

   (1)    is not receiving Compensation,

   (2)    is no longer an Eligible Employee, or

   (3)    is an Inactive Participant.

3.13    A Participant or Inactive Participant (and, effective
        July 19, 1993, an Employee who would be an Eligible
        Employee except that he has not yet completed the

GR 001544

39

eligibility requirements of Section 2.01) may at any time
file with the Administrative Committee a request to permit
him to make a Rollover Contribution (as defined below).

The Administrative Committee shall have the sole discretion
(which shall be exercised in a non-discriminatory manner) as
to whether to permit such a Rollover Contribution, and may,
as a condition of its approval, require the Participant or
Inactive Participant or other individual to furnish such
evidence as the Administrative Committee deems appropriate
that the amount to be paid qualifies as a Rollover
Contribution under the law.  A Rollover Contribution means a
contribution to the Plan of an amount constituting a
"rollover amount" or "rollover contribution" under sections
402(a)(5), 408(d)(3), or 403(a)(4) of the Code.
Notwithstanding the foregoing, a Participant may not include
in a Rollover Contribution any "qualified voluntary employee
contribution" as defined in section 219(e)(2) of the Code as
in effect on December 31, 1986.  Effective January 1, 2002,
subject to sections 401(a)(31) and 402 of the Code, a
Rollover Contribution shall include (A) a direct rollover
from (1) a qualified plan described in section 401(a) or
403(a) of the Code, including after-tax contributions; (2)
an annuity contract described in section 403(b) of the Code,
excluding after-tax contributions; (3) an eligible plan
under section 457(b) of the Code which is maintained by a
state, political subdivision of a state, or any agency or
instrumentality of a state or political subdivision of a
state; (B) a Rollover Contribution (other than a direct
rollover) shall include a Participant contribution of an
eligible rollover distribution from (1) a qualified plan

GR 001545

40

described in section 401(a) or 403(a) of the Code; (2) an
annuity contract described in section 403(b) of the Code;
(3) an eligible plan under section 457(b) of the Code which
is maintained by a state, political subdivision of a state,
or any agency or instrumentality of a state or political
subdivision of a state; and (C) the Plan shall accept a
participant rollover contribution from an individual
retirement account described in section 408(a) or 408(b) of
the Code that is eligible to be rolled over and would
otherwise be includible in gross income.  The Plan shall
separately account for any portion of a Rollover
Contribution consisting of after-tax contributions.

Effective January 1, 2002, subject to the provisions of
section 402(c)(9) of the Code, if a distribution
attributable to an Eligible Employee is paid to the spouse
of such employee after his death, this Section 3.13 shall
apply to such distribution in the same manner as if the
spouse were the employee.

A Participant's Rollover Contribution shall be 100% vested
and nonforfeitable at all times.  A Rollover Contribution
shall be credited to a Participant's Account and shall be
invested in such Investment Fund and/or, for periods after
June 30, 1989, in the ESOP, as the Participant may
designate.

3.14    In the event that an Employee who was a "participant" in
        the W. R. Grace & Co. Retirement Plan for Salaried
        Employees elected to transfer to the Plan the amount of
        his "accumulated contributions" and "interest" thereunder

41

pursuant to section 5.11 of such plan (or section 5.08 of
the W. R. Grace & Co. Retirement Plan for Clerical Hourly
Employees of Lake Charles Plant), the amount of his
"accumulated contributions" is considered as Supplemental
Contributions to his Account as of the "valuation date"
coincident with or next following the date of such
transfer (except for purposes of Sections 4.06 and 4.07 of
the Plan) and the amount of his "interest" is considered
as earnings on Supplemental Contributions in his Account
as of such "valuation date," and both amounts are 100%
vested and nonforfeitable at all times, are invested in
such Investment Fund(s) within the Savings Plan as the
Employee designated, and are subject to the provisions of
the Plan relating to Supplemental Contributions, and
earnings thereon, respectively.

GR 001547

42

## Section 4

## Company Contributions

4.01    Subject to the other provisions of Section 4, for each
        month during which the Plan is in effect, the Company
        shall contribute to the Trust Fund an amount which when
        added to forfeitures, if any, will be equal to 100% (and
        for periods prior to January 1, 2001, 75%; and for periods
        prior to October 1, 2000, 50%) of the lesser of (A) the
        aggregate amount of each Participant's After Tax
        Contributions and Before Tax Contributions, or (B) 6% of
        such Participant's Compensation, for the corresponding
        month.  No contributions will be made with respect to
        Participants' other contributions or his Compensation in
        excess of such 6%.  The amount of Before-Tax Contributions
        and Company contributions pursuant to this Section 4.01
        shall not exceed the maximum amount deductible under
        section 404 of the Code.

        For periods after January 1, 2001, all Company
        contributions shall be made to the Savings Plan portion of
        the Trust Fund.  With respect to Company contributions
        made to a Participant's Account after that date, Company
        contributions shall be allocated to Investment Funds in
        accordance with the Participant's investment election with
        regard to the Participant's Before Tax contributions, or
        if no such elections is effective, in accordance with the
        investment election with regard to the Participant's After
        Tax contributions.

43

For periods after June 30, 1989, but before January 1,
2001, all Company contributions shall be made to the ESOP
portion of the Trust Fund, subject to the provisions of
Section 4.12.  Such contributions may be made in cash or
in Grace Stock; provided, however, that Company
contributions shall be made in Grace Stock, to the extent
that the Company incurs an "immediate allocation loan" or
loans described in section 133(b)(1)(B) of the Code to
finance its contributions to the ESOP, in which event, the
Grace Stock acquired with the proceeds of such loan or
loans shall be transferred to the ESOP within 30 days of
the date on which interest begins to accrue on such loans.
 The Trustee may apply cash contributions made by the
Company towards the purchase of Grace Stock from the
Company or any other source for the account of the ESOP;
provided, however, that in no event shall a commission be
charged with respect to a purchase of Grace Stock from the
Company for the account of the ESOP.  In the event that
the Company shall make a contribution of Grace Stock that
is treasury stock or authorized but unissued stock to the
ESOP portion of the Trust Fund or the Trustee shall
purchase Grace Stock from the Company for the account of
the ESOP and Grace Stock is then traded on a national
securities exchange, the value of such shares shall be the
average of the closing prices of Grace Stock, as reported
on the New York Stock Exchange composite tape, for the 20
consecutive trading days immediately preceding the date of
the contribution or purchase.  Grace Stock contributed to
or purchased by the Plan under this Section 4.01 shall be
valued in good faith by an independent appraiser selected
by the Trustee as of the date of the contribution or

44

purchased in the event that shares of Grace Stock are not then traded on a national securities exchange.

4.02    The Company also shall contribute during each Plan Year such amounts as are reinstated pursuant to Section 11.03.

4.03    In addition to the contributions to be made pursuant to Sections 4.01 and 4.02, the Company shall pay all expenses reasonably incurred in administering the Plan, to the extent such expenses are not paid by the Trust Fund.

4.04    All contributions made to the Plan by the Company shall be irrevocable, except that contributions made by a mistake of fact or that are not deductible under section 404 of the Code shall be returned to the Company, without interest, within one year after the payment of the contribution, or the disallowance of the deduction (to the extent disallowed), whichever is applicable. Contributions shall be held in the Trust Fund to be used in accordance with the provisions of the Plan in providing the benefits and defraying the reasonable expenses of Plan administration, and neither such contributions nor any income therefrom shall be used for or diverted to purposes other than for the exclusive benefit of Participants, Inactive Participants, and former Participants and their beneficiaries under the Plan except as provided above, and except that any forfeitures arising under Section 7.02 on account of a Termination of Service that occurred prior to January 1, 1989 were used or shall be used to reduce Company contributions otherwise payable, in accordance with Sections 4.01 and 4.02.

45

4.05   Annual Additions (as defined below) to the Account of a
       Participant or Inactive Participant for a Plan Year shall
       not exceed the lesser of:

       (1)    $30,000 (or, for Plan Years beginning prior to
              January 1, 1995, 25% of the dollar limitation
              applicable to defined benefit plans under section
              415(b)(l)(A) of the Code, if greater), each as
              automatically adjusted to reflect increases in the
              cost of living as prescribed by the Secretary of
              the Treasury, or effective for Plan Years beginning
              on or after January 1, 2002, $40,000, as adjusted
              for increases in the cost of living under Section
              415(d) of the Code; or

       (2)    25% of the total section 415 "compensation" (as
              defined below) of such Participant or Inactive
              Participant from the Company and effective for Plan
              Years beginning on or after January 1, 2002, 100%
              of the section 415 "compensation" of the
              Participant or Inactive Participant of the Company.

       Annual Additions (with respect to a Plan Year beginning on
       or after January 1, 1987) means the sum of (i) Company
       contributions (including forfeitures under Section 7.02 in
       lieu thereof) pursuant to Section 4.01, (ii) Before Tax
       Contributions, (except, for limitation years beginning
       after December 31, 2001, to the extent permitted under
       Section 3.01 of the Plan relating to catch up
       contributions and Section 414(v) of the Code) (iii) After
       Tax Contributions, and (iv) amounts described in sections

GR 001551

46

415(l)(1) and 419A(d)(2) of the Code.  Effective for Plan
Years beginning on or after January 1, 2002, the limit in
section 4.05(2) of the Plan shall not apply to any
contribution for medical benefits after separation from
service (within the meaning of section 401(h) or section
419A(f)(2) of the Code) which is otherwise treated as an
annual addition.

For purposes hereof, compensation means a participant's
wages and salaries for personal services actually rendered
in the course of employment with the Company to the extent
that the amounts are includable in gross income
(including, but not limited, to commissions paid salesmen,
compensation for services on the basis of a percentage of
profits, incentive compensation, tips and bonuses (but
excluding long-term incentive bonuses)).In addition,
effective for Plan Years beginning on or after January 1,
1998, compensation shall include any amount contributed by
the Company pursuant to a salary reduction agreement and
which is not includible in gross income under sections
125, 402(g)(3), 402(h), or 403(b), or effective January 1,
2001, section 132(f), and effective January 1, 2002,
414(v).  Other amounts not included in compensation for
purposes of this Section include:

(a)     Employer contributions to a plan of deferred
        compensation (except as otherwise provided above)
        which are not includable in the employee's gross
        income for the taxable year in which contributed,
        or employer contributions under a simplified
        employee pension to the extent such contributions

GR 001552

47

are deductible by the employee, or any
distributions from a plan of deferred compensation;

(b)    Amounts realized from the exercise of a non-
qualified stock option, or when restricted stock
(or property) held by the employee either becomes
freely transferable or is no longer subject to a
substantial risk of forfeiture;

(c)    Amounts realized from the sale, exchange or other
disposition of stock acquired under a qualified
stock option; and

(d)    other amounts which received special tax benefits,
or contributions made by the employer (whether or
not under a salary reduction agreement) towards the
purchase of an annuity contract described in
section 403(b) of the Internal Revenue code
(whether or not the contributions are actually
excludable from the gross income of the employee).

4.06   If the Annual Additions limitation set forth in Section
4.05 would be exceeded with respect to a Participant, such
Participant's After Tax Contributions, if any, with
respect to such Plan Year shall be reduced and refunded
and deemed not to have been made, to the extent necessary
to satisfy the limitations of Section 4.05.

If such limitation would then still be exceeded, such
Participant's Before Tax Contributions, if any, with
respect to such Plan Year shall be reduced and refunded

GR 001553

48

and deemed not to have been made, to the extent necessary to satisfy the limitations of Section 4.05.

If such limitation would then still be exceeded, the Company contribution allocated to such Participant pursuant to Section 4.01 for such Plan Year shall be reduced so that it does not exceed the maximum allocation permitted by Section 4.05. Such excess amount in a Participant's Account shall be used to reduce Company contributions for the next limitation year (and succeeding limitation years, as necessary) for such Participant if he is a Participant as of the end of such limitation year, but if he is not, such excess amount shall be held unallocated in an Annual Additions suspense account for such limitation year and reallocated in the next limitation year to the remaining Participants in accordance with the regular allocation provisions of the Plan and shall reduce Company contributions for such limitation year.

The resolution of the Board of Directors (or, prior to May 25, 1988, the board of directors of Grace Connecticut) adopting this Plan as amended shall be deemed to be a resolution adopting the Plan Year as the "limitation year" (as defined in Internal Revenue Service Regulation section 1.415-2) for purposes of the Plan.

4.07   In the event that any Participant or Inactive Participant is also covered under another qualified defined contribution plan sponsored by the Company or an affiliated corporation or other trade or business

GR 001554

49

(defined, for this purpose only, in accordance with section 415(h) of the Code), the foregoing limitations shall be applied to each plan separately and on an aggregate basis.

4.08   This Section 4.08 shall only be effective for Plan Years commencing before December 31, 1999, and shall have no effect for Plan Years beginning after that date.  In the event any Participant or Inactive Participant is also covered by the W. R. Grace & Co. Retirement Plan for Salaried Employees, the limitations set forth in section 415(e) of the Code shall be applied in accordance with the provisions of such plan.  In the event any Participant or Inactive Participant is also covered under a qualified defined benefit retirement plan (other than the W. R. Grace & Co. Retirement Plan for Salaried Employees) sponsored by the Company (which shall also include an affiliated corporation or other trade or business as defined in accordance with section 415(h) of the Code), then the sum of (a) and (b) below shall not exceed 100%:

(a)   The percentage attributable to all qualified defined benefit retirement plans sponsored by the Company determined by dividing (i) the Company provided portion of the projected annual benefit of the Participant or Inactive Participant under all such defined benefit retirement plans (whether or not terminated), determined as of the close of the Plan Year, by (ii) the lesser of (A) the product of 1.25, multiplied by the dollar limitation in effect under section 415(b)(1)(A) of the Code for such

GR 001555

50

Plan Year, or (B) the product of 1.4, multiplied by
the amount which may be taken into account under
section 415(b)(1)(B) of the Code with respect to
such Participant or Inactive Participant for such
Plan Year.

(b)    The percentage determined by dividing (i) the sum
of the Annual Additions (as currently and
previously defined in Section 4.05) under all
defined contribution plans (whether or not
terminated) sponsored by the Company as of the
close of the Plan Year, by (ii) the sum, (a) for
such Plan Year and for each prior Plan Year of
service with the Company ending after December 31,
1982, of the lesser of (A) the product of 1.25,
multiplied by the dollar limitation in effect under
section 415(c)(1)(A) of the Code for such Plan Year
(determined without regard to section 415(c)(6) of
the Code) or (B) the product of 1.4, multiplied by
the amount which may be taken into account under
section 415(c)(1)(B) of the Code with respect to
such Participant for such Plan Year, and (b) for
prior Plan Years of service with the Company ending
on or before December 31, 1982, the maximum amount
of Annual Additions which could have been made to
the Account of such Participant or Inactive
Participant under section 415(c) of the Code (as in
effect as of December 31, 1982) for the Plan Year
ended December 31, 1982, multiplied by a
"transition fraction" whose numerator is the lesser
of (I) $51,875 or (II) 1.4 multiplied by 25% of the

51

total section 415 "compensation" (as defined in
Section 4.05) of such Participant or Inactive
Participant for the Plan Year ended December 31,
1981, and whose denominator is the lesser of (I)
$41,500 or (II) 25% of the total section 415
"compensation" (as defined in Section 4.05) of such
Participant or Inactive Participant for the Plan
Year ended December 31, 1981.

In the event that the 100% limit specified herein is
exceeded for any Participant or Inactive Participant, the
Company contributions pursuant to Section 4.01 (including
forfeitures in lieu thereof), Before Tax Contributions,
and After Tax Contributions shall be reduced to comply
with such limits in the order and manner specified in
Section 4.06.

Notwithstanding the provisions of this Section 4.08, in
the event that the sum of a Participant's percentages
under (a) and (b) above exceeds 100% as of December 31,
1982, and as of December 31, 1986, an amount shall be
subtracted from the numerator of the fraction under (b)
above (not exceeding such numerator) in accordance with
Internal Revenue Service regulations so that such sum does
not exceed 100% with respect to Plan Years beginning on
and after January 1, 1983 and January 1, 1987,
respectively.

4.09    During the period prior to the beginning of each Plan
Year, or from time to time thereafter, or both, the
Company shall make estimated calculations, as set forth

52

below, with respect to such Plan Year required by section 401(m) of the Code, and after the end of such Plan Year, shall make exact calculations, as set forth below:

(a)     Each Eligible Employee shall be classified as provided in Section 3.08(a).

(b)     The calculations under this Section 4.09 shall take into account the "401(m) contributions" for such Eligible Employee.  For purposes of this Section 4.09, "401(m) contributions" shall mean (i) for the ESOP, (A) for each Plan Year commencing after December 31, 1988 and prior to January 1, 2001, the amount of Company contributions made under Section 4.01, and (B) for each Plan Year commencing after December 31, 2000, zero; and (ii) for the Savings Plan, (A) for each Plan Year commencing after December 31, 1988 and prior to January 1, 2001, the amount of the Eligible Employee's After Tax Contributions, and (B) for each Plan Year commencing after December 31, 2000, the sum of the amount of the Eligible Employee's After Tax Contributions and the amount of Company contributions made under Section 4.01

(c)     For each Plan Year commencing after December 31, 1988 and prior to January 1, 2001, a separate contribution percentage shall be calculated under the ESOP and the Savings Plan for each Eligible Employee.  For each Plan Year commencing after December 31, 2000, a contribution percentage shall

53

not be calculated for the ESOP. With respect to
each Eligible Employee, who is classified as an
other employee, for each Plan Year for which a
separate contribution percentage is calculated for
the ESOP: the ESOP contribution percentage shall
be equal to (i) for Plan Years commencing prior to
January 1, 1997, the amount of the 401(m)
contributions with respect to the Eligible Employee
for the Plan Year of reference (zero in the case of
an Eligible Employee for whom no such contributions
are being made) divided by his Compensation for the
Plan Year of reference, and (ii) for Plan Years
commencing on or after January 1, 1997,the amount
of the 401(m) contributions with respect to the
Eligible Employee for the Plan Year preceding the
Plan Year of reference (zero in the case of an
Eligible Employee for whom no such contributions
are being made) divided by his Compensation for the
Plan Year preceding the Plan Year of reference.
With respect to each Eligible Employee, who is
classified as a highly compensated employee, for
each Plan Year for which a separate contribution
percentage is calculated for the ESOP: the ESOP
contribution percentage shall be equal to the
amount of the 401(m) contributions with respect to
the Eligible Employee for the Plan Year of
reference (zero in the case of an Eligible Employee
for whom no such contributions are being made)
divided by his Compensation for the Plan Year of
reference. With respect to each Eligible Employee,
who is classified as an other employee: the

GR 001559

54

Savings Plan contribution percentage shall be equal
to (i) for Plan Years commencing prior to January
1, 1997, the amount of the 401(m) contributions
with respect to the Eligible Employee for the Plan
Year of reference (zero in the case of an Eligible
Employee for whom no such contributions are being
made) divided by his Compensation for the Plan Year
of reference, and (ii) for Plan Years commencing on
or after January 1, 1997, the amount of the
Eligible Employee's 401(m) contributions (zero in
the case of an Eligible Employee who is not making
After Tax Contributions) for the Plan Year
preceding the Plan Year of reference divided by his
Compensation for the Plan Year preceding the Plan
Year of reference. With respect to each Eligible
Employee, who is classified as a highly compensated
employee: the Savings Plan contribution percentage
shall be equal to the amount of the Eligible
Employee's 401(m) contributions (zero in the case
of an Eligible Employee who is not making After Tax
Contributions) for the Plan Year of reference
divided by his Compensation for the Plan Year of
reference.

(d)     For each Plan Year commencing after December 31,
1988, a separate contribution percentage shall be
calculated under the ESOP and the Savings Plan for
the Eligible Employees who are classified as highly
compensated employees which shall be equal to the
average of the contribution percentages, as
determined in (c) above, for all such Eligible

55

Employees under the ESOP for the Plan Year of
reference and the average of the contribution
percentages, as determined in (c) above, for all
such Eligible Employees under the Savings Plan for
the Plan Year of reference.  A contribution
percentage shall not be calculated under the ESOP
for a Plan Year beginning on or after January 1,
2001.

(e)     For each Plan Year commencing after December 31,
1988, a separate contribution percentage shall be
calculated under the ESOP and the Savings Plan for
the Eligible Employees who are classified as other
employees which shall be equal to the average of
the contribution percentages, as determined in (c)
above for such Plan Year, for all such Eligible
Employees under the ESOP for the Plan Year and the
average of the contribution percentages, as
determined in (c) above for such Plan Year, for all
such Eligible Employees under the Savings Plan for
the Plan Year.  A contribution percentage shall not
be calculated under the ESOP for a Plan Year
beginning on or after January 1, 2001.

For purposes of this Section 4.09 and Section 4.10, if an
Eligible Employee who is classified as a highly
compensated employee participates in more than one plan
providing matching contributions or after tax
contributions maintained by the Company or an entity under
common control with the Company (under section 414(b) or
(c) of the Code), the contributions made under all such

56

plans shall be aggregated; provided, however, that in no
event shall Company contributions made to the ESOP portion
of the Trust Fund after June 30, 1989 with respect to any
such highly compensated employee be aggregated with any
other matching contributions or after-tax contributions
made to such other plan unless such other plan is an
employee stock ownership plan (as defined in section
4975(e)(7) of the Code).

With respect to Plan Years commencing after December 31,
1986 and ending prior to January 1, 1989, the requirements
of section 401(m) of the Code only applied to the Savings
Plan.  The contribution percentage of each Eligible
Employee during such period was equal to his After Tax
Contributions and Company contributions under Section 4.01
made with respect to him (zero in the case of an Eligible
Employee for whom no such contributions were being made)
divided by his Compensation for the Plan Year.

In the event this Plan is aggregated with another plan or
plans for purposes of Sections 401(a)(4) and 410(b) of the
Code (other than the Average Benefits Test of Section
410(b)(2)(A)(ii) of the Code), all Before Tax
Contributions made under such plans shall be treated as
made under a single plan for purposes of the actual
deferral percentage test of Section 401(k)(3) of the Code
and all After Tax Contributions and Company contributions
(as set forth in Section 4.01) made under such plans shall
be treated as made under a single plan for purposes of the
actual contribution percentage test of Section 401(m)(2)
of the Code.  In the event this Plan is permissively

57

aggregated with another plan or plans for purposes of Section 401(k) or 401(m) of the Code, such aggregated plans must also satisfy Sections 401(a)(4) and 410(b) of the Code as if such aggregated plans were a single plan. Notwithstanding the foregoing, the ESOP and Non-ESOP portions of the Plan may not be aggregated.

Notwithstanding the foregoing, effective for Plan Years beginning on or after January 1, 2001, for purposes of this Section 4.09, the contribution percentage for Eligible Employees who are classified as other employees shall be the Plan Year of reference.

4.10    For each Plan Year, the contribution percentage of the Eligible Employees who are classified as highly compensated employees (determined under Section 4.09(c), which considers contributions and Compensation for the Plan Year of reference) shall not exceed the greater of (A) or (B) below (and any necessary adjustments shall be made as set forth in Section 4.11):

   (A)    The contribution percentage for the prior Plan Year of the Eligible Employees who are classified as other employees (determined under Section 4.09(d)), multiplied by 1.25, or

   (B)    The lesser of:

58

( i)  the contribution percentage for the prior Plan
      Year of the Eligible Employees who are
      classified as other employees (determined
      under Section 4.09(d)), multiplied by 2, or

(ii)  the contribution percentage for the prior Plan
      Year of the Eligible Employees who are
      classified as other employees (determined
      under Section 4.09(d)), plus 2%.

     Notwithstanding the foregoing, effective for Plan Years
beginning on or after January 1, 2001, for purposes of this
Section 4.10, the contribution percentage for Eligible Employees
who are classified as other employees shall be the Plan Year of
reference.

4.11   In the event that the contribution percentage under the
       Savings Plan of the Eligible Employees who are classified
       as highly compensated employees for any Plan Year
       commencing after December 31, 1988 exceeds the maximum
       percentage permitted under Section 4.10 (less such
       additional percentage as may be determined by the
       Administrative Committee) based on estimated or exact
       calculations, the requested or actual 401(m) contributions
       for the Plan Year of the Eligible Employee(s) who are
       classified as highly compensated employees and who (i) for
       Plan Years prior to January 1, 1997, have the highest
       percentage of 401(m) contributions for the Plan Year and
       (ii) for Plan Years beginning on or after January 1,
       1997, are credited with the greatest dollar amount of

59

401(m) contributions for the Plan Year shall have such
401(m) contributions reduced until such time as the
requirements of this Section 4.11 are satisfied.

In the event that the contribution percentage under the
ESOP of the Eligible Employees who are classified as
highly compensated employees for each Plan Year commencing
after December 31, 1988 exceeds the maximum percentage
permitted under Section 4.10 (less such additional
percentage as may be determined by the Administrative
Committee) based on estimated or exact calculations, the
401(m) contributions of each Eligible Employee(s) who are
classified as highly compensated employees and who (i) for
Plan Years prior to January 1, 1997, have the highest
percentage of 401(m) contributions for the Plan Year and
(ii) for Plan Years beginning on or after January 1, 1997,
are credited with the greatest dollar amount of 401(m)
contributions for the Plan Year shall have such
contributions reduced to the extent required to enable the
ESOP to satisfy the requirements of the first sentence of
this Section 4.11.

The provisions of this Section 4.11 shall be applied in
such a manner as to require a reduction of unmatched After
Tax Contributions prior to a reduction of matched After
Tax Contributions and Company contributions.
Additionally, Company contributions shall be reduced or
distributed prior to After Tax Contributions which are
eligible for matching under Section 4.01.

Notwithstanding the foregoing, in no event shall the

60

Company fail to make any matching contribution to the Plan
required under Section 4.01.

4.12   Any amount by which a Participant's requested or actual
       After Tax Contribution or projected or actual Company
       contribution is reduced for a Plan Year shall not be
       contributed to the Plan, or if contributed, shall be
       refunded to him as an Excess Aggregate Contribution with
       any earnings allocable thereto no later than the end of
       the Plan Year after the Plan Year in which such amount was
       contributed to the Plan (and if possible, no later than
       March 15 of the Plan Year after the Plan Year in which
       such amount was contributed.  Amounts required to be
       refunded under this Section 4.12 shall be refunded in
       accordance with the provisions of section 401(m)(6) of the
       Code and Treasury Regulations promulgated thereunder.

       Notwithstanding anything herein to the contrary, effective
       July 1, 1989 and for Plan Years beginning prior to January
       1, 2001, projected Company contributions which would
       otherwise be made to the ESOP portion of the Trust Fund
       but which are required to be reduced in accordance with
       Section 4.11 shall, to the extent possible, be contributed
       to the Savings Plan portion of the Trust Fund.  In such
       event, the calculation of the Savings Plan contribution
       percentage of each Eligible Employee who is classified as
       a highly compensated employee under Section 4.10(c) and
       who is affected by such reduction shall be modified so as
       to equal the sum of his After Tax Contributions and that
       portion of Company contributions under Section 4.01 made
       with respect to him which cannot be contributed to the

GR 001566

61

ESOP as a result of the limitations imposed under Section
4.10 (zero in the case of an Eligible Employee for whom no
such contributions are being made) divided by his
Compensation for the Plan Year.  In addition, the
provisions of Section 4.11 shall be applied to such
modified Savings Plan contribution percentage in such a
manner as to require a reduction of unmatched After Tax
Contributions prior to a reduction of matched After Tax
Contributions and Company contributions.

Amounts refunded as Excess Aggregate Contributions
pursuant to this Section 4.12 shall be adjusted for income
or loss.  Subject to Sections 4.09(c) and (d) of the Plan,
the income or loss allocable to Excess Aggregate
Contributions is equal to the sum of the following:  (i)
the income or loss allocable to 401(m) contributions under
the Savings Plan and 401(m) contributions under the ESOP,
as applicable, for the Plan Year multiplied by a fraction,
the numerator of which is such Participant's Excess
Aggregate Contributions for the Plan Year, and the
denominator is equal to the sum of the Participant's
account balance attributable to 401(m) contributions under
the Savings Plan and 401(m) contributions under the ESOP,
as applicable, as of the beginning of the Plan Year plus
the Participant's After Tax Contributions under the
Savings Plan and 401(m) contributions under the ESOP, as
applicable, for the Plan Year, and (ii) 10% of the amount
determined under (i) above multiplied by the number of
whole calendar months between the end of the Plan Year and
the date of distribution, counting the month of
distribution if distribution occurs after the 15th of such

62

month.

4.13    The following provisions of the Plan shall be applied in
        the following order:

                (i)     Section 3.02,3.03 and 4.01 of the Plan;
                (ii)    Sections 4.06, 4.07 and 4.08 of the Plan;
                (iii)   Sections 3.10 and 3.11 of the Plan;
                (iv)    Sections 4.11 and 4.12 of the Plan.

4.14    For each Plan Year commencing after December 31, 1988 and
        prior to January 1, 2002, and subject to the sunset
        provisions of Section 901(a) of the Economic Growth and
        Tax Relief Reconciliation Act of 2001, except as the
        effect of such sunset provisions may be modified by
        subsequent law, during which (i) the actual deferral
        percentage of the Eligible Employees who are classified as
        highly compensated employees (determined under Section
        3.08(c)) exceeds 1.25 multiplied by the actual deferral
        percentage of the Eligible Employees who are classified as
        other employees (determined under Section 3.08(d)), and
        (ii) the contribution percentage of the Eligible Employees
        who are classified as highly compensated employees
        (determined under Section 4.09(c)) exceeds 1.25 multiplied
        by the contribution percentage of the Eligible Employees
        who are classified as other employees (determined under
        Section 4.09(d)), the sum of the actual deferral
        percentage and the contribution percentage of the Eligible
        Employees who are classified as highly compensated
        employees (determined under Section 3.08(c) and Section
        4.09(c), respectively) shall not exceed the sum of (A) and

63

(B) below (after any necessary adjustments have been made as set forth in Sections 3.10 and 3.11 and Sections 4.11 and 4.12, respectively):

(A)    1.25, multiplied by the greater of:

      (i) the actual deferral percentage of the Eligible Employees who are classified as other employees (determined under Section 3.08(d)), or

      (ii) the contribution percentage of the Eligible Employees who are classified as other employees (determined under Section 4.09(d)), plus

(B)    The lesser of:

      (i) 2%, plus the lesser of (a) the actual deferral percentage of the Eligible Employees who are classified as other employees (determined under Section 3.08(d)), or (b) the contribution percentage of the Eligible Employees who are classified as other employees (determined under Section 4.09(d)), or

64

(ii) 2, multiplied by the lesser of (a) the actual
deferral percentage of the Eligible Employees
who are classified as other employees
(determined under Section 3.08(d)) or (b) the
contribution percentage of the Eligible
Employees who are classified as other
employees (determined under Section 4.09(d)).

The provisions of this Section 4.14 shall be applied
separately to (i) the sum of the actual deferral
percentage under the Savings Plan and the contribution
percentage under the ESOP of the Eligible Employees who
are classified as highly compensated employees and (ii)
the sum of the actual deferral percentage and the
contribution percentage under the Savings Plan of such
highly compensated employees.

4.15   In the event that the sum of the actual deferral
percentage under the Savings Plan and the contribution
percentage under the ESOP of the Eligible Employees who
are classified as highly compensated employees for any
Plan Year commencing after December 31, 1988 exceeds the
maximum aggregate percentage permitted under Section 4.14,
based on estimated or exact calculations, then the
following provisions of the Plan will be applied in the
following order to the extent necessary to satisfy the
requirements of that section:

(i) Sections 3.10 and 3.11;
(ii) Sections 4.11 and 4.12.

GR 001570

65

In the event that the sum of the actual deferral percentage and the contribution percentage under the Savings Plan of the Eligible Employees who are classified as highly compensated employees for any Plan Year commencing after December 31, 1988 exceeds the maximum aggregate percentage permitted under Section 4.14 based on estimated or exact calculations, then the following provisions of the Plan will be applied in the following order to the extent necessary to satisfy the requirements of that section:

(i)     Sections 4.11 and 4.12, as they relate to After-Tax Contributions;

(ii)    Sections 3.10 and 3.11 (except to the extent that Before Tax Contributions are considered as an After Tax Contribution under Section 3.11 and are thus included in (i) above;

(iii)   Sections 4.11 and 4.12, as they relate to Company contributions.

66

## Section 5

Investment Provisions

5.01    The Trustee has established the following Investment Funds
        for investment of contributions under the Savings Plan, in
        accordance with the directions of the Investment
        Committee:

        Fixed Income Fund, which is invested in fixed income
        securities or obligations, interest bearing bank accounts,
        or in guaranteed income funds established or maintained by
        insurance companies.

        Fidelity Blue Chip Growth Fund, which is a mutual fund
        managed by Fidelity Management & Research Company
        ("FMRC").

        Grace Common Stock Fund, which is invested only in Grace
        Stock or, pending investment in such stock, in investments
        of a short-term nature.

        Fidelity Balanced Fund, which is a mutual fund managed by
        FMRC;

        Fidelity Growth and Income Portfolio, which is a mutual
        fund managed by FMRC;

        Fidelity Contrafund, which is a mutual fund managed by
        FMRC;

GR 001572

67

Fidelity OTC Portfolio, which is a mutual fund managed by FMRC;

Fidelity Investment Grade Bond Fund which is a mutual fund managed by FMRC;

Fidelity US Bond Index Fund which is a mutual fund managed by FMRC;

PIMCO Total Return Fund, which is a mutualfund managed by Pacific Investment Management Company;

INVESCO Equity Income Fund, which is a mutual fund managed by INVESCO Funds Group, Inc.;

Spartan US Equity Index Fund which is a mutual fund managed by FMRC;

Franklin Small Cap Growth Fund-A, which is a mutual fund managed by Franklin Advisors, Inc.;

JP Morgan Institutional US Small Company Fund, which is a mutual fund managed by JP Morgan;

American Century International Growth Fund, which is a mutual fund managed by American Century Investment Management, Inc.;

Spartan International Index Fund which is a mutual fund managed by FMRC;

68

Templeton Foreign Fund A, which is a mutual fund managed by Templeton Global Advisors Limited;

Fidelity Freedom Income Fund which is a mutual fund managed by FMRC;

Fidelity Freedom 2000 Fund which is a mutual fund managed by FMRC;

Fidelity Freedom 2010 Fund which is a mutual fund managed by FMRC;

Fidelity Freedom 2020 Fund which is a mutual fund managed by FMRC;

Fidelity Freedom 2030 Fund which is a mutual fund managed by FMRC;

Fidelity Low-Priced Stock Fund which is a mutual fund managed by FMRC;

Spartan Extended Market Index Fund which is a mutual fund managed by FMRC;

Spartan Total Market Index Fund which is a mutual fund managed by FMRC;

Fidelity Diversified International Fund which is a mutual fund managed by FMRC;

Fidelity Europe Fund which is a mutual fund managed by

GR 001574

69

FMRC;

Fidelity Equity-Income Fund which is a mutual fund managed by FMRC.

Any other Investment Fund properly authorized for investment of contributions under the Saving Plan.

Effective July 1, 1989, Grace New York has established the ESOP for the investment of (i) Company contributions made to the Plan after June 30, 1989 and before January 1, 2001, (ii) the portion of each Participant's and Inactive Participant's Savings Plan Account attributable to Company contributions that is invested in the Former Fund C on June 30, 1989 and transferred as of July 1, 1989 to the ESOP portion of the Trust Fund, and (iii) the portion of each Participant's and Inactive Participant's Savings Plan Account attributable to Supplemental Contributions, Before-Tax Contributions, After-Tax Contributions and Rollover Contributions that was invested in the Former Fund C on December 31, 1988 and any subsequent dates that may from time to time be designated by the Investment Committee and transferred to the ESOP portion of the Trust Fund. The Trustee shall invest the assets of the ESOP portion of the Trust Fund primarily in of Grace Stock. The Trustee may also invest the assets of the ESOP portion of the Trust Fund in such other investments as the Investment Committee deems appropriate or desirable or such assets may be held temporarily in cash. The Investment Committee may direct the Trustee to invest and hold up to 100% of the assets of the ESOP portion of the

GR 001575

70

Trust Fund in Grace Stock.

5.02   After the Conversion Period, Before Tax Contributions, After Tax Contributions and Rollover Contributions shall each be invested in multiples of 5% in the Investment Funds and, in the case of Rollover Contributions only, in the ESOP portion of the Trust Fund, pursuant to the election of the Participant. Such election shall continue until changed by the Participant. Effective January 1, 2001, Company contributions shall be invested in multiples of 5% in the Investment Funds pursuant to the election of the Participant, which election shall continue until changed by the Participant.

5.03   After the Conversion Period, a Participant may change any election pursuant to Section 5.02 on any Business Day to another election permitted under Section 5.02 effective on the Business Day on which the Participant notifies the Recordkeeper of such change by telephonic instruction, if such notice is received by the Recordkeeper before the latest time of day agreed to by Grace and the Recordkeeper for same day processing; otherwise, such change will be effective on the immediately succeeding Business Day.

5.04   After the Conversion Period, a Participant, Inactive Participant, or a former Participant who has incurred a Termination of Service may, on any Business Day, elect to transfer all or a portion (in multiples of 5%, or in whole dollar amounts) of the existing balance of his Account in an Investment Fund among any of the other Investment Funds attributable to the following categories of contributions

71

separately: (i) Before Tax Contributions, (ii) After Tax Contributions, (iii) Supplemental Contributions, (iv) Rollover Contributions, and effective January 1, 2001, Company contributions.  Such transfer shall occur on the Business Day on which the Participant, Inactive Participant, or former Participant notifies the Recordkeeper of such transfer election by telephonic instruction, if such notice is received by the Recordkeeper before the latest time of day agreed to by Grace and the Recordkeeper for same day processing; otherwise, such change will be effective on the immediately succeeding Business Day.

5.05    Cash dividends and the cash proceeds of any other distributions received on Grace Stock held in the Grace Common Stock Fund within the Savings Plan shall be invested in Grace Stock.  For periods after June 30, 1989, cash dividends paid on Grace Stock that is credited to Participant and Inactive Participant ESOP Accounts shall be applied by the Trustee towards the purchase of additional shares of Grace Stock or held in cash reserves, unless the Board of Directors shall direct that such dividends be paid to Participants and Inactive Participants (i) by the Company or (ii) by the Plan within 90 days after the end of the Plan Year in which the dividends are received on Grace Stock held within the ESOP portion of the Trust Fund.

5.06    Each Participant and Inactive Participant may direct the Trustee as to the manner in which Grace Stock credited to his Account is to be voted.  Before each annual or special

72

meeting of its shareholders, Grace shall furnish to each
Participant and Inactive Participant who has a balance in
the Grace Common Stock Fund and/or, for periods after
June 30, 1989, an ESOP Account notice of the date and
purpose of such meeting, such notice to be given at the
time and in substantially the manner such notice is given
to Grace shareholders generally.  Grace shall request from
each such Participant and Inactive Participant
instructions as to the voting at that meeting of the Grace
Stock credited to the Participant's or Inactive
Participant's Account, which instructions shall be totaled
by or on behalf of Grace and forwarded to the Trustee.  If
the Participant or Inactive Participant furnishes such
instructions within the time specified in the notice, the
Trustee shall vote such Grace Stock in accordance with the
Participant's or Inactive Participant's instructions.  All
Grace Stock credited to Participant and Inactive
Participant Accounts as to which the Trustee does not
receive instructions as specified above shall be voted by
the Trustee in the manner, and in the proportion, as it
votes Grace Stock as to which it has received instructions
from Participants and Inactive Participants, as specified
above.  A Participant or Inactive Participant shall be
deemed to have given instructions for purposes of this
Section 5.06 if such Participant or Inactive Participant
signs, but does not otherwise mark, a form of proxy,
provided that the form of proxy specifies the manner in
which the Grace Stock covered by a signed but unmarked
form of proxy shall be voted.

5.07  With respect to periods prior to October 1, 2000 (see

73

Section 5.11 below), after the Conversion Period, a
Participant or Inactive Participant who has attained age
50, ·may, one time during each Plan Year, elect to transfer
to one or more of the Investment Funds within the Savings
Plan all or a portion (in multiples of 5% or in whole
dollar amounts) of his Account balance invested in the
ESOP and Grace Common Stock Fund which is attributable to
Company contributions pursuant to Section 4.01.  Any such
transfer will occur on the Business Day on which the
Participant notifies the Recordkeeper of such transfer
election by telephonic instruction, if such notice is
received by the Recordkeeper before the latest time of day
agreed to by Grace and the Recordkeeper for same day
processing; otherwise, such change will be effective on
the immediately succeeding Business Day.  The foregoing
provisions of this Section 5.07 shall also apply to a
former Participant who has incurred a Termination of
Service, regardless of attained age, except that any such
former Participant may make investment transfer elections
on any Business Day without regard to the once per year
limitation set forth above.

5.08    Effective as of July 1, 1993 (i.e., the commencement of
the Conversion Period), the Account balances credited to
the Former Funds shall be transferred to the Investment
Funds in accordance with the following:

   (1)    Former Fund A transferred to Fixed Income Fund;

   (2)    Former Fund B transferred to Fidelity Blue Chip
          Growth Fund;

74

(3)    Former Fund C transferred to Grace Common Stock
       Fund;

(4)    Former Fund D transferred to Fidelity Balanced
       Fund.

5.09    Effective immediately after (and as a result of) the NMC
        Disposition in September 1996:

(a)    With respect to each Participant's, Inactive
       Participant's and former Participant's interest in
       Grace Stock credited to the ESOP, the Trustee shall
       receive a certain number of shares of American
       Depository Shares of Fresenius Medical Care
       ("ADS's") and of shares of Fresenius National
       Medical Care preferred stock ("Preferred").  Those
       shares shall be sold by the Trustee within 90 days
       after they are received and the proceeds shall be
       reinvested in Grace Stock, which shall be credited
       to the Participant's, Inactive Participant's or
       former Participant's (as the case may be) interest
       in the ESOP.

(b)    With respect to each Participant's, Inactive
       Participant's and former Participant's interest in
       Grace Stock credited to the Grace Common Stock
       Fund, the Trustee shall receive a certain number of
       ADS's and shares of Preferred.  The shares of
       Preferred shall be sold by the Trustee within 90
       days after they are received and the proceeds shall
       be reinvested in Grace Stock, which shall be

GR 001580

75

credited to the Participant's, Inactive
Participant's or former Participant's (as the case
may be) interest in the Grace Common Stock Fund.
The ADS's shall be credited to the ADS Fund within
the account of the Participant, Inactive
Participant or former Participant (as the case may
be), which shall be an additional Investment Fund
under the Savings Plan.  The Participant, Inactive
Participant or former Participant shall have the
same elections with respect to the ADS Fund, as
with other Investment Funds, specified in Section
5.03 and 5.04; except that (i) the Participant,
Inactive Participant or former Participant shall
not be permitted to direct that any amounts be
credited to the ADS Fund from any other Investment
Fund (including, but not limited to, amounts in any
other Investment Fund attributable to amounts
previously transferred from the ADS Fund to any
other Investment Fund) or from any contributions
made to the Plan by or on behalf of the
Participant, and (ii) the ADS Fund shall be
terminated as of December 31, 1998 and all ADS's
remaining therein shall be liquidated, and any
amount remaining in that Fund on that date shall be
transferred to the Fixed Income Fund for the
Participant, Inactive Participant or former
Participant.

5.10        Effective immediately after (and as a result of)
            the Cryovac Disposition in March 1998:

GR 001581

76

(a)     With respect to each Participant's, Inactive
        Participant's and former Participant's interest in
        Grace Stock credited to the ESOP, the Trustee shall
        receive a certain number of shares of Sealed Air
        Corporation ("SAC Common Stock") and of shares of
        Sealed Air Corporation preferred stock ("SAC
        Preferred").  Those shares shall be sold by the
        Trustee within 90 days after they are received and
        the proceeds shall be reinvested in Grace Stock,
        which shall be credited to the Participant's,
        Inactive Participant's or former Participant's (as
        the case may be) interest in the ESOP.

(b)     With respect to each Participant's, Inactive
        Participant's and former Participant's interest in
        Grace Stock credited to the Grace Common Stock
        Fund, the Trustee shall receive a certain number of
        SAC Common Stock shares and shares of SAC
        Preferred. The shares of SAC Common Stock shall be
        credited to the SAC Common Stock Fund, and the
        shares of SAC Preferred shall be credited to the
        SAC Preferred Stock Fund, within the account of the
        Participant, Inactive Participant or former
        Participant (as the case may be), which shall be an
        additional Investment Fund under the Savings Plan.
        The Participant, Inactive Participant or former
        Participant shall have the same elections with
        respect to the SAC Common Stock Fund and SAC
        Preferred Stock Fund, as with other Investment
        Funds, specified in Section 5.03 and 5.04; except
        that (i) the Participant, Inactive Participant or

GR  001582

77

former Participant shall not be permitted to direct
that any amounts be credited to the SAC Common
Stock Fund or the SAC Preferred Stock Fund from any
other Investment Fund (including, but not limited
to, amounts in any other Investment Fund
attributable to amounts previously transferred from
the SAC Common Stock Fund or the SAC Preferred
Stock Fund to any other Investment Fund) or from
any contributions made to the Plan by or on behalf
of the Participant, and (ii) the SAC Common Stock
Fund and the SAC Preferred shall be terminated as
of (or as soon as practicable after) December 31,
2000 and all SAC Common Stock and SAC Preferred
Stock remaining therein shall be liquidated, and
any amount remaining in either Fund after such
liquidation shall be transferred to the Fixed
Income Fund for the Participant, Inactive
Participant or former Participant.

5.11       Effective October 1, 2000, a Participant or
Inactive Participant may, on any Business Day
during a Plan Year, elect to transfer to one or
more of the Investment Funds within the Savings
Plan all or a portion (in multiples of 5% or in
whole dollars amounts) of his Account Balance
invested in the ESOP and Grace Common Stock Fund
which is attributable to Company contributions
pursuant to Section 4.01.  Any such transfer will
occur on the Business Day on which the Participant
notifies the Recordkeeper of such transfer election
by telephonic instruction, if such notice is

78

received by the Recordkeeper before the latest time of day agreed to by Grace and the Recordkeeper for same day processing; otherwise, such change will be effective on the immediately succeeding Business Day.  The foregoing provisions of this Section 5.11 shall also apply to a former Participant who has incurred a Termination of Service.

GR 001584

79

## Section 6

## Valuation of Accounts

6.01    As of December 31, 1991, the dollar value of the balance
        of the Account of each Participant, Inactive Participant,
        former Participant or beneficiary in the Former Funds A,
        B, C and D within the Savings Plan and the ESOP shall be
        determined based upon the provisions of Section 6 of the
        Plan then in effect.

6.02    After December 31, 1991, the balances of Participants,
        Inactive Participants, former Participants or
        beneficiaries in each Former Fund and Investment Fund and
        in the ESOP shall be valued on each Business Day.  The
        value of each such balance on each Business Day shall
        equal the unit price established for the Investment Fund
        (or the ESOP) multiplied by the units credited to that
        balance.

        On each Business Day, the Trustee will establish a
        separate unit price for each Investment Fund and the ESOP
        by dividing the total market value of each Investment Fund
        and the ESOP by the total number of units outstanding in
        that Fund or the ESOP.  In the event that any shares of
        Grace Stock held in the ESOP portion of the Trust Fund are
        not traded on a national securities exchange on a
        particular Business Day, such shares shall be valued in
        good faith by an independent appraiser selected by the
        Trustee.

80

6.03    The Administrative Committee shall deliver or mail to each
        person in respect of whom an Account is maintained a
        statement setting forth the balance of the Savings Plan
        Account of such person in the Investment Funds not less
        frequently than once in each Plan Year.  After June 30,
        1989, such statement shall include the balance of such
        person's ESOP Account.

GR 001586

81

## Section 7

Vesting

7.01   Each Participant and Inactive Participant shall be fully
       and immediately vested in that portion of his Account
       which is attributable to his Before Tax, After Tax, Basic,
       Supplemental, and Rollover Contributions and to Company
       contributions pursuant to Section 4.01.

7.02   Notwithstanding the provisions of Section 7.01 relating to
       the fully vested status of Company contributions, Company
       contributions made with respect to periods prior to
       January 1, 1987 became fully vested after the expiration
       of two full Plan Years following the close of the Plan
       Year for which such Company contributions were made.

       In the event that a Participant or Inactive Participant
       terminated service prior to January 1, 1989 and before
       attaining a 100% Vested Interest in his Account and
       received a single lump sum payment of his Account, any
       non-vested portion of his Account was forfeited as of the
       last day of the month coincident with or next following
       the date of such termination.  If any such Participant or
       Inactive Participant elected to defer receiving a single
       lump sum distribution of his Account until the first day
       of the Plan Year next following his Termination of
       Service, any non-vested portion of his Account was
       forfeited as of the last day of the Plan Year in which his
       Termination of Service occurred (unless such Participant
       or Inactive Participant was re-employed by an Employing

GR 001587

82

Unit in a status covered by the Plan prior to such last day).  If any such Participant or Inactive Participant elected to receive installment payments of his Account, any non-vested portion of his Account was forfeited, or will be forfeited, as of the last day of the Plan Year coincident with the fifth consecutive One-Year Break in Service (unless such Participant or such Inactive Participant was re-employed, or is re-employed, by an Employing Unit in a status covered by the Plan prior to such fifth consecutive One-Year Break in Service).  Any amount forfeited hereunder was used, or will be used, to reduce Company contributions under Section 4.01.

GR 001588

83

## Section 8

## Distribution of Vested Interest

8.01     Retirement, Disability or Other Termination of Service

Upon his Disability Date or on the date of Retirement or
other Termination of Service, a Participant or Inactive
Participant who is not eligible to elect or who does not
elect to defer the distribution of his Account in
accordance with Section 8.04 may elect, at any time prior
to his Disability Date or the date of his Retirement or
other Termination of Service, to receive his Vested
Interest in any one of the following forms of benefit:

(a)     a single lump sum payment in cash equal to the
value of his Vested Interest determined as of the
Business Day on which the Recordkeeper processes
his distribution election form, which date is on or
after his Disability Date or the date of his
Retirement or other Termination of Service, as the
case may be, with actual payment to be made as soon
as practicable thereafter.

(b)     annual or quarterly installment payments in cash of
his Vested Interest, if such Vested Interest
(without regard to any amount attributable to
rollover contributions and earnings allocable
thereto within the meaning of Code sections 402(c),
403(a)(4), 403(b)(8), 408(d)(3)(A)(ii) and
457(e)(16), with respect to distributions made

GR 001589

84

after January 1, 2002) exceeds $5,000 (or $3,500,
with respect to a former Participant who terminates
active participation under the Plan on or prior to
March 30, 1998) over a period that shall not exceed
ten years (or such other period as may have been
designated under a designation by an Employee prior
to January l, 1984 (satisfying any requirements of
the Internal Revenue Service) of a method of
distribution which complies with the provisions of
the Code as in effect on December 31, l983),
commencing as of the first Business Day of the
first calendar quarter commencing after the date of
Retirement, the Disability Date or the date of
other Termination of Service of the Participant or
Inactive Participant, in which event his Vested
Interest shall remain in the Investment Funds in
which such interest is invested on the applicable
date and in the ESOP, unless and until his
investment election is changed in accordance with
Sections 5.04 and/or 5.07.  In such event the value
of the first installment payment shall be
determined on the first Business Day of the first
calendar quarter commencing after the former
Participant's Retirement, Disability Date or other
Termination of Service occurred.  The remaining
Vested Interest shall be valued as of the first
Business Day of each subsequent calendar quarter
(or, in the case of an annual installment, as of
the first Business Day of that calendar quarter
which is one year after the previous installment),
and the amount of the installment payment shall

GR 001590

85

equal the value of such remaining Vested Interest
multiplied by a fraction the numerator of which is
1 and the denominator of which is the number of
remaining installment payments to be made
(including the installment payment in question).
Notwithstanding the foregoing, any Participant or
Inactive Participant who terminated service (other
than on a Disability Date or on account of
Retirement) prior to January 1, 1991 and elected to
receive his Account in annual or quarterly
installment payments shall commence receiving such
installment payments as of the first day of the
Plan Year after the Participant or Inactive
Participant incurs 5 consecutive One-Year Breaks in
Service.

(C)    monthly, quarterly or annual installment payments
of a level amount in cash, of his Vested Interest,
if such Vested Interest (without regard to any
amount attributable to rollover contributions and
earnings allocable thereto within the meaning of
Code sections 402(c), 403(a)(4), 403(b)(8),
408(d)(3)(A)(ii) and 457(e)(16), with respect to
distributions made after January 1, 2002) exceeds
$5,000 (or $3,500, with respect to a former
Participant who terminates active participation
under the Plan on or prior to March 30, 1998),
commencing as of the first Business Day of the
first calendar month, quarter or year (as
applicable) commencing after the date of
Retirement, the Disability Date or the date of

86

other Termination of Service of the Participant or
Inactive Participant and after the appropriate
election has been processed, in which event his
undistributed Vested Interest shall remain in the
Investment Funds in which such interest is invested
on the applicable date and in the ESOP, unless and
until his investment election is changed in
accordance with Sections 5.04 and/or 5.07.

In the event that the Vested Interest of a Participant or
Inactive Participant (without regard to any amount
attributable to rollover contributions and earnings
allocable thereto within the meaning of Code sections
402(c), 403(a)(4), 403(b)(8), 408(d)(3)(A)(ii) and 457
(e)(16), with respect to distributions made after January
1, 2002) equals $5,000 (or $3,500, with respect to a
former Participant who terminates active participation
under the Plan on or prior to March 30, 1998) or less as
of the Business Day coincident with or next following his
Disability Date or date of Retirement or other Termination
of Service, the Participant's entire Vested Interest shall
be distributed as soon as practicable after his Disability
Date or the Date of his Retirement or other Termination of
Service, as the case may be, in the form of a single lump
sum payment in cash, unless such Participant or Inactive
Participant elects to defer receipt of such a single lump
sum payment until the first Business Day of the Plan Year
next following the Plan Year in which his Retirement,
Disability Date or other Termination of Service occurred.
In either case, the value of the single lump sum
distributed to the Participant shall be equal to the value

GR 001592

87

of his Vested Interest determined as of the Business Day
on which the Recordkeeper processes his distribution
election form.

8.02    Death

If a Participant, Inactive Participant or former
Participant shall die before the distribution of his
entire Vested Interest has commenced or been completed,
the balance of such Vested Interest determined as of the
Business Day on which the Recordkeeper processes the
applicable distribution form following the Participant's
date of death shall be distributed as soon as practicable
thereafter to his beneficiary as provided in Section 8.03.

8.03    Except as provided below, each Participant, Inactive
Participant, or former Participant shall designate a
person or persons as his beneficiary or beneficiaries to
receive the death benefits provided in Section 8.02.  Such
designation shall be made by written notice to the
Administrative Committee, and may be changed in similar
manner.  In the event that no beneficiary shall have been
designated or the last designated beneficiary shall not be
living at the time that death benefits become payable, the
death benefits will be paid to the estate of the
Participant, Inactive Participant or former Participant.
Notwithstanding any other provision of the Plan, effective
August 23, 1984, in the case of a Participant, Inactive
Participant, or former Participant who is married at the
time of his death, such beneficiary shall automatically be
his spouse (and no other person designated by him shall be

88

entitled to any benefits in respect of him under the Plan), unless another beneficiary or an additional beneficiary is named with the consent of such spouse.

8.04    If the value of a Participant's or Inactive Participant's Vested Interest (without regard to any amount attributable to rollover contributions and earnings allocable thereto within the meaning of Code sections 402(c), 403(a)(4), 403(b)(8), 408(d)(3)(A)(ii) and 457(e)(16), with respect to distributions made after January 1, 2002) determined as of the Business Day coincident with or next following the date of his Termination of Service exceeds $5,000 (or $3,500, with respect to a former Participant who terminates active participation under the Plan on or prior to March 30, 1998) and his Account is immediately distributable, the former Participant or Inactive Participant must consent to any distribution of his Account.  For purposes of this Section 8.04, an Account is immediately distributable if any part of such Account could be distributed before a Participant or Inactive Participant attains age 65.  The consent of the former Participant or Inactive Participant shall be obtained within the 90-day period ending on the annuity starting date.  The annuity starting date is the first day of the first period for which an amount is paid as an annuity or any other form.  The Administrative Committee shall, not less than 30 days and not more than 90 days prior to the annuity starting date, notify a Participant or Inactive Participant of the right to defer the distribution of his Account until the last day of the Plan Year in which the Participant or Inactive Participant attains age 70-1/2.

GR 001594

89

However, distribution may commence less than 30 days after
the notice described in the preceding sentence is given,
provided the Administrative Committee clearly informs the
Participant or Inactive Participant that he has a right to
a period of at least 30 days after receiving the notice to
consider the decision of whether or not to elect a
distribution (and, if applicable, a particular
distribution option), and the Participant or Inactive
Participant (with any applicable spousal consent) after
receiving the notice, affirmatively elects a distribution;
provided that such a distribution shall commence no
earlier than 7 days after such notice is provided.  A
former Participant who has made an election to defer the
distribution of his Account under this Section 8.04 may
elect to receive a distribution of his Account as a single
lump sum payment in cash or in annual or quarterly
installments as of a date earlier than the applicable
dates described in the sentence before the preceding
sentence.  In this event, any such former Participant who
elects a single lump sum payment in cash shall receive the
value of his Vested Interest determined as of the Business
Day on which the Recordkeeper processes his distribution
election, with actual payment to be made as soon as
practicable thereafter.  Alternatively, any such former
Participant who elects annual or quarterly installments
shall receive the first such installment, based on the
value of his Vested Interest determined as of the first
Business Day of the first calendar quarter after his
election to receive an earlier distribution is received by
the Administrative Committee, with actual payment to be
made as soon as practicable thereafter.  The remaining

GR 001595

90

Vested Interest of such former Participant shall be valued
as of the first Business Day of each subsequent calendar
quarter (or, in the case of an annual installment, as of
the first Business day of that calendar quarter which is
one year after the previous installment), and the amount
of the installment payment shall equal the value of such
remaining Vested Interest multiplied by a fraction, the
numerator of which is 1 and the denominator of which is
the number of remaining installment payments to be made
(including the installment payment in question).

8.05    A Participant, Inactive Participant, or beneficiary, who
receives a single lump sum payment may elect to receive
that portion of his Vested Interest in the Grace Common
Stock Fund and, for periods after June 30, 1989, the value
of his ESOP Account, in the aggregate, payable to him in
whole shares of Grace Stock plus cash for any fractional
share.

8.06    Except as otherwise provided under regulations of the
Internal Revenue Service, and subject to Section 8.04 of
the Plan, the payment of benefits under the Plan to a
former Participant shall be made or commence, as the case
may be, not later than the 60th day after the close of the
latest of three Plan Years: (1) the Plan Year in which the
Participant attains age 65, (2) the Plan Year in which the
tenth anniversary of the Participant's commencement of
participation in the Plan occurs, and (3) the Plan Year in
which the Participant has a Termination of Service.

Notwithstanding any other provision of the Plan, any

GR 001596

91

benefit payable to a Participant or former Participant who
terminates service other than by death shall be paid, or
commence to be paid, not later than April 1 of the
calendar year following the later of (i) the calendar year
in which he attains age 70-1/2, or (ii) the calendar year
in which he terminates service (for non 5% owners), and
shall be payable over the period of his life or the lives
of him and a designated beneficiary, or a period not
extending beyond his life expectancy or their life
expectancies, and the benefit, if any, payable after his
death shall be payable at least as rapidly as under the
method of distribution then applicable at the time of the
Participant's death.  If the Participant dies before
benefits commence under the Plan, such benefits shall be
payable within 5 years after the death of the Participant,
or over the life of a designated beneficiary, or over a
period not extending beyond the life expectancy of a
designated beneficiary, and such benefits shall commence
within one year after the Participant's death, but need
not commence before the date that the Participant would
have attained age 70-1/2, in the case of a designated
beneficiary who is the Participant's spouse.  Upon the
death of such spouse, the foregoing rules shall apply as
if such spouse were the Participant.

Notwithstanding any other provisions of the Plan, with
respect to distributions under the Plan made on or after
September 1, 2001 for calendar years beginning on or after
January 1, 2001, the Plan will apply the minimum
distribution requirements of section 401(a)(9) of the
Internal Revenue Code in accordance with the regulations

92

under section 401(a)(9) that were proposed on January 17,
2001 (the 2001 Proposed Regulations). If the total amount
of required minimum distributions made to a Participant
for 2001 prior to September 1, 2001 are equal to or
greater than the amount of the required minimum
distributions determined under the 2001 Proposed
Regulations, then no additional distributions are required
for such Participant for 2001 on or after such date. If
the total amount of required minimum distributions made to
a Participant for 2001 prior to September 1, 2001 are less
than the amount determined under the 2001 Proposed
Regulations, then the amount of required minimum
distributions for 2001 on or after such date will be
determined so the total amount of required minimum
distributions for 2001 is the amount determined under the
2001 Proposed Regulations. This amendment shall continue
in effect until the last calendar year beginning before
the effective date of the final regulations under section
401(a)(9) or such other date as my be published by the
Internal Revenue Service.

8.07    Notwithstanding the other provisions of Section 8 of the
Plan, a Participant or Inactive Participant may change an
election under Section 8.01 of the Plan with respect to
the form or timing of the distribution of his Vested
Interest one time during the period after the date of his
Retirement, his Disability Date, or the date of his other
Termination of Service (except by death) and prior to the
date as of which his Vested Interest is to be paid or
commence to be paid. Such change of an election may be
made at such time, with such effective date, and on such

GR 001598

93

form as may be prescribed by the Administrative Committee. In addition, a former Participant or Inactive Participant who has commenced receiving a distribution of his Vested Interest in the form of installment payments may accelerate the distribution of such Vested Interest by electing to receive a single lump sum payment in cash equal to the value of such remaining Vested Interest determined on the Business Day on which the Recordkeeper processes his distribution election.

8.08   Notwithstanding any other provision of the Plan, a distribution made on account of the following may only be made in the form of a lump sum:

(1)     on account of the sale or other disposition by the Company, or any corporation or other entity regarded as under common control with the Company pursuant to Code section 414(b)(1), of substantially all of the assets (within the meaning of section 409(d)(2) of the Code) used by the Company or other such entity in a trade or business, with respect to an individual who continues employment with the corporation acquiring such assets; or

(2)     on account of the sale or other disposition by the Company or other such entity of the Company's or other such entity's interest in a subsidiary (within the meaning of section 409(d)(3) of the Code) with respect to an individual who continues employment with such subsidiary.

GR 001599

94

8.09    Eligible Rollover Distributions

    (A)    This Section applies to distributions made on or
        after January 1, 1993.  Notwithstanding any
        provision of the Plan to the contrary that would
        otherwise limit a distributee's election under the
        Plan, a distributee may elect, at the time and in
        the manner prescribed by the Administrative
        Committee, to have any portion of an eligible
        rollover distribution that is equal to at least
        $500 paid directly to an eligible retirement plan
        specified by the distributee in a direct rollover.

    (B)    Eligible Rollover Distribution:  An eligible
        rollover distribution is any distribution of all or
        any portion of the balance to the credit of the
        distributee, except that any eligible rollover
        distribution does not include:  any distribution
        that is (or is treated as under Treasury Regulation
        1.402(c)-2T) one of a series of substantially equal
        periodic payments (not less frequently than
        annually) made for the life (or life expectancy) of
        the distributee or the joint lives (or joint life
        expectancies) of the distributee and the
        distributee's designated beneficiary, or for a
        specified period of ten years or more; any
        distribution to the extent such distribution is
        required under section 401(a)(9) of the Code; the
        portion of any other distribution(s) that is not
        includible in gross income (determined without
        regard to the exclusion for net unrealized

GR 001600

95

appreciation with respect to employer securities);
any other distribution(s) that is reasonably
expected to total less than $200 during a year; and
any hardships withdrawal made after December 31,
1998. For distributions made on or after January 1,
2002, a portion of a distribution shall not fail to
be an eligible rollover distribution merely because
the portion consists of amounts that are not
includable in gross income. However, such portion
may be transferred only to an individual retirement
account or annuity described in Code section 408(a)
or (b), or to a qualified defined contribution plan
described in Code section 401(a) or 403(a) that
shall separately account for the portion of such
distribution which is includible in gross income
and the portion of such distribution which is not
so includible.

(C)    Eligible retirement plan:  An eligible retirement
plan is an individual retirement account described
in section 408(a) of the Code, an individual
retirement annuity described in section 408(b) of
the Code, an annuity plan described in section
403(a) of the Code, or a qualified trust described
in section 401(a) of the Code, that accepts the
distributee's eligible rollover distribution. For
distributions made on or after January 1, 2002, an
eligible retirement plan shall also mean an annuity
contract described in Code section 403(b) and an
eligible plan under Code section 457(b) which is
maintained by a state, or any agency or

96

instrumentality of a state or political subdivision of a state and which agrees to separately account for amounts transferred into such plan from this Plan.  Notwithstanding any other provision of this Section 8.09, for distributions made on or after January 1, 2002, the definition of eligible retirement plan shall also apply in the case of a distribution to a surviving spouse, or to a former spouse who is the alternate payee under a qualified domestic relations, as defined in Code section 414(q). For distributions made before January 1, 2002, in the case of an eligible rollover distribution to the surviving spouse, an eligible retirement plan is an individual retirement account or individual retirement annuity.

(D)    Distributee:  A distributee includes an employee or former employee.  In addition, the employee's or former employee's surviving spouse and the employee's or former employee's spouse or former spouse who is the alternate payee under a qualified domestic relations order, as defined in section 414(p) of the Code, are distributees with regard to the interest of the spouse or former spouse.

97

    (E)    Direct rollover:  A direct rollover is a payment by the Plan to the eligible retirement plan specified by the distributee.

8.10 Distributions to former Participants of the Grace Drilling Money Purchase Pension Plan ("Grace Drilling Plan") and the HOMCO International, Inc. Employees' Profit Sharing Investment Savings and Retirement Plan ("HOMCO Plan").

Notwithstanding any other provisions of this Section 8, a Plan Participant whose Account includes amounts transferred from the Grace Drilling Plan or the HOMCO Plan (hereinafter referred to as the "Grace Drilling Transferred Amount" and "HOMCO Transferred Amount" respectively and as the "Transferred Amounts," collectively), may elect (in addition to the other options available under this Section 8) at any time prior to his or her Disability Date, or the date of his or her Retirement or other Termination of Service, whichever occurs first, to receive that portion of his or her Vested Interest in the Grace Drilling Transferred Amount or HOMCO Transferred Amount, plus earnings on either, in any one of the following forms of benefit described below, with respect to the applicable transferred amount.

    (a)    Participants Entitled to a Grace Drilling Transferred Amount.  For purposes of this Section 8.10, a Participant with such a Transferred Amount will be deemed to have reached Normal Retirement Age with respect to the Grace Drilling Transferred Amount, and

98

earnings thereon, as of (i) the first day of any month
after attainment of age 60 or (ii) as of the first day
of any month following the attainment of age 55 and
completion of ten years of service, whichever occurs
first.

Unless an optional form of benefit is selected pursuant
to a qualified election within the 90-day period ending
on the annuity starting date, a married Participant's
vested Grace Drilling Transferred Amount and earnings
thereon will be paid in the form of a qualified joint
and survivor annuity and an unmarried Participant's
vested Grace Drilling Transferred Amount and earnings
thereon will be paid in the form of a life annuity.

A Participant with a Grace Drilling Transferred Amount
may elect to receive that portion of his or her Vested
Interest representing the Grace Drilling Transferred
Amount, plus earnings thereon, in any one of the
following optional forms of benefit as described below:

(1)  A lump sum distribution, provided that if the
     Participant is married, his or her spouse
     must consent to this form of distribution.

(2)  Installment distributions, provided that if
     the Participant is married, his or her spouse
     must consent to this form of distribution.
     With such consent, the Participant may elect
     monthly or annual installments, where the
     installment payments will be equal payments

GR 001604

99

over a 5, 10 or 15 year period, as selected
by the Participant.  If the Participant dies
after the installment payments have
commenced, any remaining payments due will be
paid to the Participant's beneficiary.
Installment payments will commence as soon as
administratively practicable, but in no event
more that one year following the
Participant's Disability Date, Retirement or
other Termination of Service, whichever
occurs first.

(3)   Optional Annuity Forms.  A Participant may
elect to have the Grace Drilling Transferred
Amount, plus earnings thereon, converted to a
life annuity, provided that if the
Participant is married, his or her spouse
must consent to this form of distribution.
With such consent, the following forms of
annuity are available to the Participant:

(i)   Monthly payments for the Participant's
life, with no death benefits.

(ii)  Monthly payments for the Participant's
life with payments guaranteed for a
period of 5, 10, or 15 years as the
Participant selects.  If the Participant
dies before the end of the period
selected, payments will continue to the
designated beneficiary until the end of

GR  001605

100

that period.

(iii) Monthly payments for the Participant's
life, with 100%, 75%, 66-2/3%, or 50%
(selected by the Participant) of the
payment continuing after the
Participant's death for the rest of the
life of the designated beneficiary.

(b)   Participants entitled to a HOMCO Transferred
Amount. Unless an optional form of benefit is
selected pursuant to a qualified election within
the 90-day period ending on the annuity starting
date, a married Participant's vested HOMCO
Transferred Amount and earnings thereon will be
paid in the form of a qualified joint and survivor
annuity and an unmarried Participant's vested
HOMCO Transferred Amount and earnings thereon will
be paid in the form of a life annuity.

A Participant may elect to have his or her HOMCO
Transferred Amount, plus earnings thereon,
distributed as a lump sum distribution, provided
that if the Participant is married, his or her
spouse must consent to this form of distribution.

(c)  Qualified Joint and Survivor Annuity or Pre-Retirement
Survivor Annuity.  Notwithstanding any other
provisions of the Plan, the following provisions
shall apply with respect to distributions of
Transferred Amounts and earnings thereon made under

101

this section 8.10.

Should a Participant die, while married, prior to the
starting date of the distribution of benefits but on or
after the earliest retirement age, then for the
purposes of determining eligibility for the Joint and
Survivor Annuity benefits stated above, the starting
date of distribution of benefits shall be deemed to
have occurred one day prior to his date of death.

Notwithstanding the above, the Participant may elect,
subject to the consent of his spouse, in accordance
with the following procedures not to receive a
Qualified Joint and Survivor Annuity (or life annuity if
the Participant is not married or the consent of his
spouse is not required), in which case the manner of
distribution shall be other than a Qualified Joint and
Survivor Annuity:  No less than thirty days nor more
than ninety days before the starting date of any
payment of Accrued Benefits to the Participant under
the Plan in satisfaction of the Qualified Joint and
Survivor Annuity requirement, the Plan Administrator
shall provide the Participant with notification, in
non-technical terms, of the availability of a Qualified
Joint and Survivor Annuity, and on request, with a
dollar amount of the annuity payment with and without
election.  The written notification initially given to
the Participant shall include a written explanation of
(i) the terms and conditions of the Qualified Joint and
Survivor Annuity,  (ii) the Participant's right to
make, and the effect of an election to waive the

GR 001607

102

Qualified Joint and Survivor Annuity benefit, (iii)
the rights of the Participant's spouse as to the
election, and (iv)  the rights to make , and the effect
of, a revocation of such an election.   During said
thirty to ninety day period, the Participant shall be
provided with a period in which to elect in writing not
to receive a Qualified Joint and Survivor Annuity.
Such election may be changed by the Participant during
the election period.

(1)     Notwithstanding the provisions of Section 8,
        Transferred Amounts and earnings hereon will be
        distributed to the Participant in the Form of a
        Qualified Pre-Retirement Survivor Annuity to the
        extent that such benefits are distributed on
        account of the Participant's death and the
        Participant was married at the time of his or her
        death.

        Notwithstanding the above, the Participant may
        elect, subject to the consent of his or her
        spouse, in accordance with the following
        procedures, not to receive a Qualified Pre-
        Retirement Survivor Annuity: no later than the
        first day of the Plan Year in which the
        Participant attains the age of thirty-two and
        ending the with the close of the Plan Year
        preceding the Plan Year in which the Participant
        attains the age of thirty-five, a written
        explanation with respect to the Qualified Pre-
        Retirement Survivor Annuity comparable to that

GR 001608

103

required for the Qualified Joint And Survivor
Annuity shall be provide to the Participant.  If
an individual is not a Participant in the Plan
during the time prescribed in the preceding
sentence, the Participant shall be provided with a
written explanation of the Qualified Pre-
Retirement Survivor Annuity not later than the
date he or she becomes a Participant in the Plan,
in accordance with the applicable Treasury
Regulations.  Beginning with the first day of the
Plan Year in which the Participant attains the age
of thirty-five and ending on the date of the
Participant's death, the Participant shall have
the right to elect to decline the Qualified Pre-
Retirement Survivor Annuity, subject to consent of
his or her spouse. Notwithstanding the preceding
sentence, the Plan may permit an earlier waiver
(subject to consent of spouse), provided that a
written explanation of the Qualified Pre-
Retirement Survivor Annuity is given to the
Participants and such waiver becomes invalid upon
the beginning of the Plan Year in which the
Participant attains the age of thirty-five.
During the "applicable election period," which
begins on the first day of the plan year in which
the Participant attains age 35 and ends on the
date of his/her death, the Participant may revoke
a previously made waiver at any time and any
number of times; provided, however, that the last
election made prior to the date of the
Participant's death shall be irrevocable.

GR 001609

104

(2)  When "consent of spouse" is required under this
     section, the spouse of the Participant must
     consent in writing to the applicable election, and
     must acknowledge the effect of the election, and
     the consent and acknowledgment must be witnessed
     by a member of the Administrative Committee or a
     notary public.  The consent of the spouse shall
     not be necessary if it is established to the
     satisfaction of the Administrative Committee that
     there is no spouse, that spouse cannot reasonably
     located, or for such other reasons as Treasury
     Regulations may prescribe.  The consent of the
     spouse or reasons for not requiring such consent
     shall be applicable only to the spouse. If the
     spouse o of a Participant becomes locatable or if
     a Participant marries or remarries it shall be the
     duty of the Participant to bring that fact to the
     attention of the Administrative Committee.  If a
     Participant so notifies the Administrative
     Committee, the Administrative Committee shall
     then, if applicable, proceed to make available to
     such spouse the consent procedures described in
     this section.

(3)  The benefit to the surviving spouse under the
     Qualified Pre-Retirement Survivor Annuity shall
     begin within a reasonable time, but in any event,
     no later than 90 days, after the Participant's
     death.

(d)  Definitions.  Notwithstanding any other provision of

GR 001610

105

the Plan, the following definitions shall apply for
the purposes of this Section 8.10:

(1)    Qualified Joint and Survivor Annuity is an annuity
       for the life of the Participant with a survivor
       annuity for the life of the spouse, which is equal
       to one-half of the amount of the annuity payable
       during the joint lives of the participant and his
       spouse, the actuarial equivalent of the vested
       Transferred Amount plus earnings thereon of the
       Participant.

(2)    Qualified Pre-Retirement Survivor Annuity is a
       survivor annuity for the life of the surviving
       spouse of the Participant which is the actuarial
       equivalent of the vested Transferred Amount plus
       earnings thereon of the Participant.

This provision shall be effective for Drilling Participants as of
December 1, 1994; and effective for HOMCO Participants as of
December 1, 1993.

GR 001611

106

## Section 9

## Withdrawals During Employment

9.01   (1)    The provisions of Section 9 shall apply to
               Participants and Inactive Participants who have not
               incurred a Termination of Service.

       (2)    With respect to a Participant's or Inactive
               Participant's Vested Interest other than the
               portion of his Account attributable to Before Tax
               Contributions and to Company contributions subject
               to the restrictions of Section 9.01(5)(f), a
               Participant or Inactive Participant may withdraw
               all or part thereof as of the Business Day on which
               the Recordkeeper processes his withdrawal request.

       (3)    With respect to the portion of a Participant's or
               Inactive Participant's Account attributable to
               Before Tax Contributions, a Participant or Inactive
               Participant who satisfies the requirements of
               Section 9.05 may withdraw all or part thereof as of
               the Business Day on which the Recordkeeper
               processes his withdrawal request.  Notwithstanding
               the foregoing, any earnings on Before Tax
               Contributions which are credited to a Participant's
               Account after December 31, 1988 may not be
               withdrawn on account of hardship as defined in
               Section 9.05.

       (4)    Partial withdrawals may only be made in multiples

GR  001612