107

of $100.  Any withdrawal under the Plan is subject to a minimum withdrawal amount of $500.  No withdrawal of any contributions or earnings may exceed the value of the Account attributable thereto, if less, on the Business Day on which the Recordkeeper processes the Participant's withdrawal request form.

(5)     Withdrawals under Section 9.01(2) shall be made only in the following order of priority, and only after the funds of a higher priority have been completely withdrawn shall funds of the next following priority be withdrawn:

(a)     Supplemental Contributions and Rollover Contributions made prior to January 1, 1992, and earnings, up to the Non-Taxable Balance

(b)     Rollover Contributions made on or after December 31, 1992 and earnings, up to the Non-Taxable Balance

(c)     After Tax Contributions made on or before December 31, 1986, up to the Non-Taxable Balance

(d)     At the election of the Participant or Inactive Participant having a Supplemental Contribution and/or Rollover Contribution balance (including earnings thereon) in excess of the Non-Taxable Balance, either (i) Supplemental Contributions and/or Rollover Contributions, and earnings thereon, if any or (ii) After Tax Contributions made on or

GR 001613

108

after January 1, 1987 and earnings thereon, if any

(e)  After Tax Contributions made on or before December 31, 1986 and earnings thereon, in excess of the Non-Taxable Balance

(f)  Company contributions under Section 4.01 and earnings thereon, if any; provided, however, that no such Company contributions under Section 4.01 may be withdrawn until such Company contributions under Section 4.01 have remained in the plan for at least twenty-four (24) months after the Business Day on which such Company contributions were credited to his Account.

A Participant or Inactive Participant covered under (d) above may elect to receive an amount withdrawn under (i) or (ii).  In the event that no election is made, (i) shall apply.  In the event that the amount withdrawn exceeds the amount withdrawn under (i) or (ii) (whichever is elected), the balance shall be taken from (i) or (ii) (whichever was not elected).

9.02  Amounts withdrawn pursuant to Section 9.01 will be paid as soon as practicable after the Recordkeeper receives the Participant's or Inactive Participant's withdrawal request.  In the case of withdrawals from the Grace Common Stock Fund and the ESOP, distributions shall be made in cash unless the Participant or Inactive Participant elects to receive in lieu thereof whole

109

shares of Grace Stock, plus cash for any fractional share.

9.03    Each Participant or Inactive Participant withdrawing funds pursuant to Section 9.01(2) shall be ineligible to receive Company contributions under Section 4.01 of the Plan for the following periods after the effective date of such withdrawal (but nevertheless shall remain eligible to make After Tax Contributions or Before Tax Contributions, or both, during such periods):

| Category of Withdrawal | Proportion | Period During Which Company Contributions under Section 4.01 Are Suspended |
|---|---|---|
| Supplemental Contributions and Earnings Thereon | All or Part | None |
| After Tax Contributions and Earnings Thereon | All or Part | 3 months |
| Company Contributions under Section 4.01 and Earnings Thereon (subject to the restrictions of Section 9.01(5)(f)) | All or Part | None |

9.04    Amounts withdrawn with respect to a category of contributions and earnings thereon pursuant to Section 9.01(2) or (3) shall be deducted from the Investment Funds and the ESOP in the following order of priority, and only when amounts invested in Investment Funds of a higher priority have been completely withdrawn shall amounts invested in Investment Funds of the next

GR 001615

110

following priority be withdrawn:

(1)    Fidelity Contrafund

(2)    Fidelity OTC Portfolio

(3)    Fidelity Blue Chip Growth Fund

(4)    Fidelity Growth & Income Portfolio

(5)    Fidelity Balanced Fund

(6)    Fidelity Investment Grade Bond Fund

(7)    Fidelity US Bond Index Fund

(8)    PIMCO Total Return Fund

(9)    INVESCO Equity Income Fund

(10)   Spartan US Equity Index Fund

(11)   Franklin Small Cap Growth Fund-A

(12)   JP Morgan Institutional US Small Company Fund

(13)   American Century International Growth Fund

(14)   Spartan International Index Fund

(15)   Templeton Foreign Fund A

(16)   Fidelity Freedom Income Fund

(17)   Fidelity Freedom 2000 Fund

(18)   Fidelity Freedom 2010 Fund

(19)   Fidelity Freedom 2020 Fund

(20)   Fidelity Freedom 2030 Fund

(21)   Fidelity Low-Priced Stock Fund

(22)   Spartan Extended Market Index Fund

(23)   Spartan Total Market Index Fund

(24)   Fidelity Diversified International Fund

(25)   Fidelity Europe Fund

(26)   Fidelity Equity-Income Fund

(27)   Fixed Income Fund

(28)   Grace Common Stock Fund

(29)   ESOP

GR 001616

111

The amount of a withdrawal will be based on the value of the amount attributable to such category of contributions and earnings credited to the Participant or Inactive Participant in each such Investment Fund within the Savings Plan and the ESOP on the Business Day on which the Recordkeeper processes the Participant's or Inactive Participant's withdrawal request.

9.05    Amounts may be withdrawn pursuant to Section 9.01(3) only (i) where a Participant or Inactive Participant has attained at least age 59-1/2, or (ii) where a Participant or Inactive Participant incurs a hardship; provided that such amounts may be withdrawn in the case of hardship only after all available amounts have first been withdrawn pursuant to Section 9.01(2) and only to the extent that they are necessary to satisfy the hardship after the Participant or Inactive Participant has applied all other financial resources reasonably available to him (if any) to satisfy such hardship. For purposes of this Section 9.05, a distribution is on account of hardship if the distribution is for any of the following reasons:

        (a)    Expenses for medical care (within the meaning of Section 213 of the Code) that (i) were previously incurred by the Participant or Inactive Participant, his spouse or dependents and which are not reimbursed by insurance or otherwise, or (ii) are necessary for such individuals to obtain such medical care; or

112

(b)    Costs directly related to the purchase of a
       principal residence for the Participant or
       Inactive Participant (excluding mortgage
       payments); or

(c)    Payment of tuition and related educational
       expenses for the next twelve (12) months of
       post-secondary education for the
       Participant or Inactive Participant, his
       spouse, children or dependents; or

(d)    Payments necessary to prevent the eviction
       of the Participant or Inactive Participant
       from his principal residence or foreclosure
       on the mortgage of the principal residence
       of the Participant or Inactive Participant;
       or

(e)    Any other reason which, in the
       Administrative Committee's determination,
       has produced an immediate and heavy
       financial need.

Any Participant or Inactive Participant who suffers a
hardship, as defined in this Section 9.05, may request a
withdrawal pursuant to Sections 9.01(3) and (4) by
written notice to the Administrative Committee setting
forth the amount requested and the facts establishing the
existence of the hardship.  Upon receipt of a withdrawal
request on account of hardship, the Administrative
Committee shall determine whether a financial hardship

GR 001618

113

exists.  If the Administrative Committee determines that
such a hardship does exist, it shall further determine
what portion of the amount requested, if any, is required
to meet the need created by the hardship.  The
determination of the existence of a financial hardship
and the amount necessary to meet the need created by such
hardship shall be made by the Administrative Committee in
accordance with uniform and non-discriminatory standards
and on the basis of all relevant facts and circumstances.
  In the event that a Participant or Inactive Participant
requests a hardship withdrawal for any reason other than
those set forth in (a) through (d) above, or the
Administrative Committee is unable to determine that the
amount requested for withdrawal is necessary to satisfy a
financial hardship that is described in (a) through (d)
above, based on the supporting documentation, including
written certifications, furnished to it by the
Participant or Inactive Participant, then (i) the
Participant's Before Tax Contributions and After Tax
Contributions will be suspended for a period of six
months (twelve (12) months for hardship distributions on
or after January 1, 2002), beginning with the first day
of the month immediately following the date of the
withdrawal payment, (ii) the Participant shall be
ineligible to receive Company contributions under Section
4.01 for such period and (iii) the Participant's Before
Tax Contributions for his taxable year immediately
following the taxable year of the hardship withdrawal
shall be limited to $7,000 (as automatically adjusted for
increases in the cost of living as prescribed by the
Secretary of the Treasury for such next taxable year)

114

less the amount of the Participant's Before Tax
Contributions for the taxable year of the hardship
withdrawal.

9.06    Notwithstanding any other provision of Section 9 to the
contrary, a Participant that is subject to taxes on
personal income under the laws of any country (other than
the United States), including, but not limited to, the
United Kingdom, shall be permitted to give an undertaking
that would restrict his ability to receive an in-service
withdrawal under the provisions of this Section 9 with
respect to any portion of the Company contributions and
Before Tax Contributions made to the Plan on his behalf,
if, and to the extent that, such an undertaking is
necessary in order to assure that the Participant will
not be subject to tax by that country on those
contributions.  Any such undertaking shall be effective
as of the date that the Plan Administrator agrees to
observe the terms of such undertaking; and, as of that
date, the undertaking shall be incorporated as part of
the Plan by this reference.

9.07    Withdrawals By Former Participants

(a)    The provisions of this Section 9.07 shall apply to
any former Participant who has elected to defer
the distribution of his Account in accordance with
Section 8.04.  With respect to such a former
Participant's Vested Interest in his Account
(other than the portion of his Account
attributable to Before Tax Contributions, and to

115

Company contributions that have not been in the
Plan for at least two full Plan Years after the
Plan Year for which such Company contributions are
made and earnings on such contributions), such a
former Participant may withdraw all or part
thereof as of the Business Day on which the
Recordkeeper processes his withdrawal request.
Such a former Participant shall be permitted to
withdraw all or a portion of his Before Tax
Contributions if he has attained age 59-1/2.
Notwithstanding the foregoing, a former
Participant shall not be permitted to make any
withdrawal: (i) on account of hardship as defined
in Section 9.05 or (ii) if he is receiving
installment payments from the Plan.

(b)    Amounts withdrawn pursuant to Section 9.07 will be
paid as soon as practicable after the Recordkeeper
receives the former Participant's withdrawal
request. In the case of withdrawals from the
Grace Common Stock Fund and the ESOP,
distributions shall be made in cash unless the
former Participant elects to receive in lieu
thereof whole shares of Grace Stock, plus cash for
any fractional share.

116

## Section 10

### Payment of Benefits

10.01    If the Administrative Committee receives evidence
         satisfactory to it that a person entitled to receive any
         benefit under the Plan is physically or mentally
         incompetent to receive such benefit and to give a valid
         release therefore, or is a minor, and that another person
         or an institution is then maintaining or has custody of
         such person, unless claim shall have been made therefor
         by a duly appointed guardian, committee or other legal
         representative, the Administrative Committee may
         authorize payment of such benefit to such other person or
         institution and the release of such other person or
         institution shall be a valid and complete discharge for
         the payment of such benefit.

10.02    Every person before becoming entitled to any benefits
         under the Plan shall furnish the Administrative Committee
         with such information as it may require, including, but
         not limited to, proof of age relating to himself and any
         person named as a beneficiary.

10.03    The benefits under the Plan shall be payable solely from
         the Trust Fund and each Participant, Inactive Participant
         or former Participant or other person who shall claim the
         right to any payment under the Plan shall be entitled to
         look only to that fund for such payment.  No liability
         for the payment of benefits or any other payments under
         the Plan shall be imposed upon the Investment Committee,

GR 001622

117

the Administrative Committee, the Company, or the officers, directors or stockholders of the Company.

10.04    Except as expressly provided in the Plan, no Participant, Inactive Participant, former Participant or other person entitled to benefits may withdraw or receive any monies from the Trust Fund.

10.05    Effective July 1, 1993, any check that is not cashed within six months of its issuance will be cancelled, and the assets attributable thereto shall be used to offset plan expenses; provided, however, that a new check shall be reissued if and when the original check is presented for payment.

GR 001623

118

## Section 11

Re-Employment

11.01   In the event a former Participant shall resume employment
        (within the meaning of the Department of Labor Regulation
        section 2530.203-3) by an Employing Unit in a status
        covered by the Plan after having previously terminated
        employment by Retirement or otherwise, any distribution
        or installment payment to be made to him as of a Business
        Day occurring on or after the date he resumes such
        employment shall not be made to him except upon
        subsequent application of the provisions of Section 8.

11.02   In the event of Termination of Service of an Employee and
        subsequent re-employment by an Employing Unit in a status
        covered by the Plan, Years of Service and Hours of
        Service before and after such termination shall be
        aggregated for purposes of determining eligibility.   Such
        aggregation shall occur on the date of re-employment.

11.03   Upon re-employment by an Employing Unit in a status
        covered by the Plan prior to a One-Year Break in Service
        (in the case of re-employment prior to January 1, 1985)
        or prior to 5 consecutive One-Year Breaks in Service (in
        the case of re-employment on or after January 1, 1985), a
        former Participant or Inactive Participant whose service
        was terminated prior to January 1, 1989 and before
        attaining a 100% Vested Interest in his Account may
        reinstate the dollar value (at the time of the
        forfeiture) of the shares of Grace Stock (or, if such

119

forfeiture occurred prior to May 25, 1988, the dollar
value of the shares of common stock of Grace Connecticut)
(or other amount) in the Former Fund C or the Grace
Common Stock Fund which was forfeited upon such
Termination of Service, or upon the valuation of his
Account in the case of a deferred lump sum distribution,
by repaying in cash the total dollar value of the actual
distribution (other than Rollover Contributions)
previously made to him (including the value of any Grace
Stock (or, if such distribution occurred prior to May 25,
1988, the total value of the shares of common stock of
Grace Connecticut)) distributed to him, within five years
after the date of re-employment.  In the event of such
repayment, there shall be credited to the Participant or
Inactive Participant (as of the Business Day on which the
repayment is received by the Trustee):

   (i)   an amount in the Fixed Income Fund equal to the
dollar amount previously held in the Investment
Funds (except the Grace Common Stock Fund) or the
Former Funds A, B, C or D attributable to After
Tax, Before Tax, Supplemental, or Company
contributions pursuant to Section 4.01 repaid by
the Participant;

   (ii)   an amount in the Grace Common Stock Fund within
the Savings Plan equal to the dollar value (at the
time of forfeiture) of the Grace Stock (or, if
such forfeiture occurred prior to May 25, 1988,
the dollar value of the shares of common stock of
Grace Connecticut) (or other amount) forfeited by

GR 001625

120

the Participant.

11.04   In the event of re-employment by an Employing Unit in a
status covered by the Plan of a former Participant who
terminated service prior to attaining a 100% Vested
Interest in his Account, elected to receive installment
payments, and incurred a One-Year Break in Service (in
the case of re-employment prior to January 1, 1985) or 5
consecutive One-Year Breaks in Service (in the case of
re-employment on or after January 1, 1985), no
reinstatement of the dollar amount forfeited by him upon
such Breaks in Service shall be permitted and the balance
standing to his credit upon re-employment shall
constitute a separate account in which he is fully
vested.

11.05   If a Participant commences U.S. military service (in 1994
or thereafter), including service with the National
Guard, and he applies to become reemployed by the Company
within a specified time after that service ends (see
below), he will be permitted to make contributions to the
Plan to account for the period that he was in the service
("Make-Up Contributions"), which will be in addition to
the contributions that he may make under the other
provisions of the Plan.  The Make-Up Contributions shall
not be in excess of the amount which the Participant
would otherwise have been permitted to make to the Plan
if he was continuously employed by the Company while he
was in the service.  Any Make-Up Contributions must be
made within the period that begins on the date the
Participant commences reemployment with the Company and

GR 001626

121

ends 5 years later. (However, if the Participant's period of service was less than 1 2/3 years, then the period for Make-Up Contributions will commence on the date he commences reemployment but the period's length will only be 3 times the length of the period of his military service.)

In order for this provision to apply, the Participant must apply for reemployment with the Company within the period specified as follows:

| Period Of Military Service | Required Reemployment Application Date |
|---|---|
| Less than 31 days | The beginning of next regularly scheduled work period after military service ends |
| 31 to 180 days | Within 14 days of the date military service ended |
| More than 180 days | Within 90 days of the date military service ended |

Also, this provision shall not apply to an individual who serves in the U.S. military service for greater than 5 years.

Notwithstanding any provision of the Plan to the contrary, contributions, benefits, and service credit with respect to qualified military service will be provided in accordance with Code section 414(u).

122

## Section 12

### Administration of the Plan

12.01   A Trust Fund shall be established by a Trustee or
        Trustees appointed from time to time by the Board of
        Directors.  All assets of the Plan shall be deposited in
        the Trust Fund.  The corpus and income of the Trust Fund
        shall be used to provide benefits under the Plan and to
        defray the reasonable expenses of Plan administration and
        no part thereof shall be used for or diverted to purposes
        other than for the exclusive benefit of Participants,
        Inactive Participants and their beneficiaries, except as
        provided in Section 4.04.  Effective July 1, 1989, the
        Trustee of the Plan was appointed as the Trustee of the
        ESOP portion of the Trust Fund.

12.02   The Trustee or Trustees shall have sole authority to
        purchase or sell Grace Stock required for the purposes of
        the Plan from or to any person, including the Company,
        except that (i) no such stock shall be purchased from or
        sold to the Company for the account of the Grace Common
        Stock Fund and (ii) no commission shall be charged with
        respect to a purchase of Grace Stock from the Company for
        the account of the ESOP.  The Trustee or Trustees also
        shall take all action necessary to implement any
        investment determinations of the Investment Committee or
        of the Investment Manager(s) and shall conform to
        procedures established by the Administrative Committee
        for disbursement of funds of the Plan.  The Trustee or
        Trustees shall not be liable for any act performed while

GR 001628

123

subject to directions of the Investment Committee, the
Investment Manager(s) or the Administrative Committee
made in accordance with the terms of the Plan.

12.03    An Investment Committee (or any appropriate designee of
that Committee) shall be appointed from time to time by
the Board of Directors (or its designee) to serve at its
pleasure. The Investment Committee may authorize any
member of the Investment Committee or any agent or other
designee to execute or deliver any instrument or make any
payment on its behalf and/or to take other actions on its
behalf; and the Committee (or such member, agent or other
designee) may employ counsel and agents and such
clerical, accounting and actuarial services as any of
them may require. A majority of the members of the
Investment Committee shall constitute a quorum for the
transaction of business, and the action of a majority of
the members present at a meeting shall constitute the
action of the Investment Committee.  In lieu thereof the
action of a majority of the members of the Investment
Committee expressed in writing without a meeting shall
constitute the action of the Investment Committee.
Effective June 14, 1995, the Investment Committee shall
be the Investment and Benefits Committee as created by
the Board of Directors as of that date.

12.04    The Investment Committee shall have the authority and
discretion to manage that portion of the assets of the
Trust Fund comprising Fixed Income Fund except that it
may appoint one or more Investment Managers who shall
have the authority and discretion to manage that portion

124

of the assets of the Trust Fund comprising the Fixed
Income Fund.  In exercising the authority and discretion
contained in this Section, the Investment Committee and
Investment Manager(s) shall be limited only to the extent
provided in Section 5.01 for the investment of the Fixed
Income Fund.  The Investment Committee shall also have
the authority to select and change the Investment Funds
available hereunder.

12.05  Grace shall have prepared annually for the Investment
Committee and the Board of Directors a report giving a
summary of the assets and liabilities of the Plan and a
brief account of the operation of the Plan for the
preceding year, and any further information which the
Investment Committee may deem advisable or which either
Board of Directors may require.

12.06  The general administration of the Plan and the
responsibility for carrying out its provisions (excluding
any decisions as to investment and reinvestment of the
Trust Fund) shall be placed in an Administrative
Committee (or any appropriate designee of that Committee)
consisting of not less than three persons who shall be
appointed from time to time by the Board of Directors of
Grace (or its designee) to serve at its pleasure.  The
Administrative Committee may authorize any member of the
Administrative Committee or any agent or other designee
to make any payment on its behalf and/or to take other
actions on its behalf; or to execute or deliver any
instrument or do any act on its behalf; and may employ
counsel and agents and such clerical, accounting and

GR 001630

125

actuarial services as any of them may require.  Effective
June 14, 1995, the Administrative Committee shall be the
Investment and Benefits Committee as created by the Board
of Directors as of that date.

12.07   The Administrative Committee shall hold meetings upon
such notice, at such place and at such time as it may
determine.  A majority of the members of the
Administrative Committee shall constitute a quorum for
the transaction of business, and the action of a majority
of the members present at a meeting shall constitute the
action of the Administrative Committee.  In lieu thereof,
the action of a majority of the members of the
Administrative Committee expressed in writing without a
meeting shall constitute the action of the Administrative
Committee.

12.08   Subject to the limitations of the Plan, the
Administrative Committee from time to time shall adopt
administrative rules and regulations and prescribe such
processes, forms and applications as are appropriate to
the administration of the Plan.  The Administrative
Committee (or its designee) shall have full and exclusive
authority to construe the terms of the Plan, to determine
entitlement to allocations of contributions and to
distributions of benefits to Participants, Inactive
Participants, Beneficiaries and all other persons and to
adjudicate all disputed claims for benefits filed under
the Plan.  Every finding, decision and determination made
by the Administrative Committee (or its designee) shall,
to the full extent permitted by law, be final and binding

126

upon all parties, except to the extent found by a court of competent jurisdiction to constitute an abuse of discretion.

12.09   The Administrative Committee shall determine the procedures to be followed in connection with the disbursement of the funds of the Plan.

12.10   The Investment Committee, the Administrative Committee and any Company, and any member, director, officer or employee thereof, shall be entitled to rely conclusively on all tables, valuations, certificates, opinions and reports which shall be furnished by any expert who shall be employed or engaged by Grace, the Investment Committee or the Administrative Committee.

12.11   The Administrative Committee (or its designee), in accordance with DOL Reg. §2560.503-1, has the authority to determine eligibility for participation and the amount and kind of benefits payable to any Participant, Spouse, or beneficiary, and interpretation of the Plan.

   (a)   Each person who claims entitlement to any right or benefit under the Plan, or his duly authorized representative (a "Claimant"), may submit a claim for benefits under the Plan. All claims shall be submitted in writing to the Administrative Committee and shall be accompanied by such information and documentation as the Administrative Committee determines is required to make a ruling on the claim. Upon receipt of a claim hereunder, the

GR 001632

127

Administrative Committee shall consider the claim and shall render a decision and communicate the same to the Claimant:

(1)    the specific reason(s) for the adverse determination;

(2)    reference to the specific Plan provisions on which the determination is based;

(3)    a description of any additional material or information necessary for the Claimant to perfect the claim and an explanation of why such material or information is necessary; and

(4)    a description of the Plan's appeal procedures and the time limits applicable to such procedures, including a statement of the Claimant's right to bring a civil action under Section 502(a) of ERISA following an adverse benefit determination on review.

(b)    <u>Appeals Procedure</u>.  When there is an adverse benefit determination of a claim, the Claimant or duly authorized representative shall have the right to file an appeal with the Administrative Committee as provided in ERISA §503 and DOL Reg. §2560.503-1.

GR 001633

128

## Section 13

Certain Rights and Obligations

13.01   It is the intention that the Plan continue and that
        contributions be made regularly each year, but all
        contributions under the Plan shall be voluntary, and not
        a legal obligation.

13.02   The Plan may be terminated at any time by the Board of
        Directors.  Upon termination, partial termination or
        complete discontinuance of contributions, the rights of
        all Participants and Inactive Participants (as to whom
        the Plan has terminated in the case of a partial
        termination) to the amounts credited to their Accounts
        shall be fully vested and nonforfeitable.

13.03   (a)      In the event of the divestment (as defined
                 hereafter) of a Company or an Employing Unit (and,
                 consequently, the employees of such Company or
                 Employing Unit), the authorization of such Company
                 or Employing Unit to participate in the Plan shall
                 be automatically withdrawn.  For purposes of
                 Section 13.03, a divestment of a Company or an
                 Employing Unit occurs when (1) substantially all
                 the assets of such Company or such Employing Unit
                 are sold or transferred to an entity which is not
                 treated as the same "employer" as Grace under
                 either section 414(b) or (c) of the Code, or (2) a
                 Company is merged into an entity which is not
                 treated as the same "employer" as Grace under

GR 001634

129

either section 414(b) or (c) of the Code, or (3)
all or part of the stock of (or other equity
interest in) a Company is sold or transferred with
the consequence that the Company is no longer
treated as the same "employer" as Grace under
either section 414(b) or (c) of the Code.  In the
event of such a divestment, the Employees of such
Company or Employing Unit shall cease to be
Participants in the Plan and shall be deemed to
have incurred a Termination of Service as of the
date of such divestment.

(b)    Any Company may, with the consent of the Board of
Directors, withdraw from the Plan at any time, and
the Board of Directors may in its discretion at
any time withdraw the authorization of any Company
or any Employing Unit to participate in the Plan.
In the event of such a withdrawal, the Employees
of such Company or Employing Unit shall cease to
be eligible to participate in the Plan as of the
date of the withdrawal.

13.04  In the case of any merger or consolidation with, or
transfer of assets or liabilities of the Plan to any
other plan, each Participant will be entitled to receive
(if the Plan then terminated) a benefit immediately after
the merger, consolidation, or transfer which is equal to
or greater than the benefit he would have been entitled
to receive immediately before such merger, consolidation,
or transfer (if the Plan had then terminated).

GR 001635

130

13.05   The establishment of the Plan shall not be construed as
        conferring any legal rights upon an Employee or any
        person for a continuation of employment, nor shall it
        interfere with the rights of the Company to discharge any
        Employee and to treat him without regard to the effect
        which such treatment might have upon him under the
        provisions of the Plan.

GR 001636

131

## Section 14

### Amendments

14.01    Grace reserves the right at any time and from time to
time by action of its Board of Directors or its designee
to modify or amend in whole or in part any or all of the
provisions of the Plan; provided, that no modification or
amendment may be made which will deprive any Participant,
Inactive Participant, former Participant or other person
receiving a benefit, of any benefit under the Plan to
which he would otherwise be entitled by reason of the
accumulated funds held under the Plan on his account at
that time, and provided that no such modification or
amendment shall make it possible for any part of the
funds of the Plan to be used for, or diverted to,
purposes other than the exclusive benefit of
Participants, Inactive Participants, former Participants
and other persons entitled to benefits under the Plan
(except as provided in Section 4.04).   Notwithstanding
the foregoing, any modification or amendment of the Plan
which is deemed necessary or appropriate to bring the
plan into conformity with the Code or regulations
thereunder may be made (retroactively if necessary) in
order to qualify the Plan under the Code and regulations
thereunder.

GR 001637

132

## Section 15

Non-Alienation of Benefits

15.01   No benefit under the Plan shall be subject in any manner
        to anticipation, alienation, sale, transfer, assignment,
        pledge, encumbrance or charge, and any attempt so to
        anticipate, alienate, sell, transfer, assign, pledge,
        encumber or charge the same shall be void; nor shall any
        such benefit be in any manner liable for or subject to
        the debts, contracts, liabilities, engagements or torts
        of the person entitled to such benefit.  Notwithstanding
        the foregoing, the Plan shall comply with a valid Federal
        tax levy which is enforced against a Participant's or
        Inactive Participant's Account under section 6331 of the
        Code and shall not be liable in any manner to any person
        for effectuating such compliance.

15.02   If any Participant, Inactive Participant, former
        Participant or any other person entitled to benefits
        under the Plan becomes bankrupt or makes an assignment
        for the benefit of creditors, or in any way suffers a
        lien or judgment against his personal assets to exist or
        attempts to anticipate, alienate, sell, transfer, assign,
        pledge, encumber or charge any benefit under the Plan,
        then such benefit shall, in the discretion of the
        Administrative Committee, cease and terminate, and in
        that event the Administrative Committee may hold or apply
        the same or any part thereof to or for the benefit of
        such Participant, Inactive Participant or former
        Participant, his spouse, descendants (including any

GR 001638

133

person adopted by such person or his descendants, and descendants of such adopted persons), other dependents, other persons or any of them, in such manner and in such proportion as the Administrative Committee may think proper.

15.03   Notwithstanding the provisions of Section 15.01 and 15.02, the Administrative Committee shall comply with the provisions of any qualified domestic relations order described in section 414(p) of the Code and shall establish a procedure to determine the qualified status of domestic relations orders and to administer distributions under qualified domestic relations orders. Specifically, in the event that a qualified domestic relations order requires the immediate distribution of any portion of a Participant's or Inactive Participant's Account to an alternate payee prior to the earlier of the date on which the Participant or Inactive Participant incurs a Termination of Service or the date on which he attains the "earliest retirement age," as defined in section 414(p)(4)(B) of the Code, the Administrative Committee shall comply with such order.  Furthermore, in the event that a qualified domestic relations order requires the division of a Participant's or Inactive Participant's Account for the benefit of an alternate payee, a separate Account shall be established for such alternate payee and such alternate payee shall thereafter be subject to all of the provisions of the Plan including the provisions of Sections 5.04 and 5.07 regarding transfers among the Plan's investment funds and Section 9 regarding withdrawals, as if the alternate payee were an

134

Inactive Participant, except that such alternate payee shall not be eligible to receive a distribution under Section 8 of the Plan until the earlier of the date on which the Participant or Inactive Participant incurs a Termination or Service or the date on which he attains the "earliest retirement age," as defined in section 414(p)(4)(B) of the Code.

GR 001640

135

## Section 16

Top-Heavy Provisions

16.01  If the Plan becomes top-heavy (as defined in Section 416(g) of the Code) with respect to any Plan Year on account of the accrued benefits of key employees (as defined in section 416(i) of the Code), then the provisions set forth in Section 16.06, 16.07, 16.08 and 16.09 shall become applicable.

16.02  The Plan is required to be aggregated for purposes of Section 16 with (i) each other plan maintained by the Company in which a key employee participates, and (ii) each other plan maintained by the Company which enables any plan in which a key employee participates to meet the requirements of section 401(a)(4) or section 410 of the Code.

16.03  As elected by the Company, the Plan is permitted to be aggregated for purposes of Section 16 with one or more other plans maintained by the Company which satisfy the requirements of section 401(a)(4) and section 410 of the Code when considered together with the Plan and those other plans required to be aggregated under Section 16.02.

16.04  The determination date with respect to a Plan Year is (i) the last day of the preceding Plan Year, or (ii) in the case of the first Plan Year, the last day of such Plan Year.

136

16.05   For purposes of Section 16, the present value of an
        accrued benefit is the sum of the account balance as of
        the most recent valuation date occurring within a
        12-month period ending on the determination date and an
        adjustment for contributions due as of the determination
        date as described in the section 416 regulations.

16.06   If the Plan is deemed top-heavy with respect to a Plan
        Year, the following provisions shall apply to Company
        contributions (excluding salary reduction contributions
        prior to January 1, 1985, but including such
        contributions on and after January 1, 1985) under the
        Plan in respect of such a Plan Year for a Participant who
        is not a key employee and who is employed by the Company
        on the last day of the Plan Year and for an Employee of
        an Employing Unit who is not a key employee, is eligible
        to participate in the Plan, and has elected not to
        participate in the Plan:  such Company contributions (and
        forfeitures) shall be equal to the greater of (i) the
        Company contributions (and forfeitures) which would
        otherwise be made without regard to Section 16, or (ii)
        3% of his compensation from the Company paid during such
        Plan Year (or lesser percentage contributed for a key
        employee determined under the section 416 regulations).
        For Plan Years beginning on or after January 1, 2002,
        employer matching contributions shall be taken into
        account for purposes of satisfying the minimum
        contribution requirements of Code section 416(c)(2) and
        the Plan.  The preceding sentence shall apply with
        respect to matching contributions under the Plan or if
        the Plan provides that a minimum contribution requirement

GR 001642

137

shall be met in another plan, such other Plan. Employer
matching contributions that are used to satisfy the
minimum contribution requirements shall be treated as
matching contributions for purposes of the actual
contribution percentage test and other requirements of
Code section 401(m). If such a Participant is also a
participant in a defined benefit plan maintained by the
Company which is also top-heavy, Section 16.06 shall not
apply, and instead the top-heavy provisions of such
defined benefit plan shall apply to him.

16.07   For Plan Years beginning before 1989, if the Plan is
deemed top-heavy with respect to a Plan Year,
compensation taken into account under the Plan shall not
exceed the amount determined under section 416(d) of the
Code; provided, however, that no benefit accrued prior to
a Plan Year in which the Plan was top-heavy shall be
reduced by virtue of the limitation herein.

16.08   If the Plan is deemed top-heavy with respect to a Plan
Year beginning prior to January 1, 2000, the denominators
of the defined benefit and defined contribution fractions
applicable with respect to a Participant under section
415(e) of the Code shall be determined by substituting
the factor "1.0" for the factor "1.25" therein, and by
substituting the amount "$41,500" for the amount
"$51,875" in the denominator of the defined contribution
fraction in the event that the transition fraction under
section 415(e)(6) of the Code is used. Notwithstanding
the foregoing, the accrued benefit of a Participant as of
the end of the Plan Year prior to the Plan Year in which

GR 001643

138

the Plan is deemed top-heavy shall not be reduced on
account of Section 16.08.

16.09    For purposes of Section 16, the Company includes any
other corporation, trade, or business treated as the same
"employer" as the Company under section 414(b),(c), or
(m) of the Code.

GR 001644

139

## Section 17

### Tender Offers

17.01    The provisions of this Section 17 shall apply in the
event that any entity, either alone or in conjunction
with others, makes a tender or exchange offer for, a
request or invitation for tenders of, or otherwise offers
to purchase or solicits offers to sell Grace Stock, which
offer, request, invitation or solicitation is made to
holders of Grace Stock generally (herein jointly and
severally referred to as a "tender offer").

17.02    The Trustee may not take any action in response to a
tender offer except as otherwise provided in this Section
17.  The Trustee shall promptly furnish to each
Participant and Inactive Participant who has shares of
Grace Stock credited to his Account notice of any tender
offer, including instructions as to how the Participant
or Inactive Participant is to give directions to the
Trustee in response to such tender offer.  Each
Participant and Inactive Participant may, at any time and
from time to time during the pendency of a tender offer,
(i) direct the Trustee to sell, offer to sell, exchange
or otherwise dispose of all or any portion of the Grace
Stock credited to such Participant's or Inactive
Participant's Account or (ii) withdraw or revoke any such
direction, in accordance with the terms of such tender
offer and the provisions of this Section 17; provided,
however, that such directions from any individual
Participant or Inactive Participant shall be confidential

GR 001645

140

and shall not be divulged by the Trustee to anyone,
including the Company or any director, officer, employee
or agent of the Company, it being the intent of this
provision of this Section 17.02 to ensure that the
Company (and its directors, officers, employees and
agents) cannot determine the direction given by any
Participant or Inactive Participant.  Such directions
shall be in such form and shall be filed in such manner
and at such time as the Trustee may reasonably prescribe
in accordance with the terms of such tender offer.

17.03    The Trustee shall, in the manner and within the time
prescribed by the terms of the tender offer, tender,
sell, offer to sell, submit for exchange or otherwise
dispose of the Grace Stock credited to Participant or
Inactive Participant Accounts in accordance with the
directions given (and not withdrawn or revoked) under
Section 17.02.  The proceeds of a disposition directed by
a Participant or Inactive Participant from his Account
under this Section 17 shall continue to be held in his
Account and be governed by the provisions of Section
17.05 and other applicable provisions of the Plan.  Such
proceeds may, in the discretion of the Trustee,
constitute one or more separate investment funds under
the Plan governed, nevertheless, by the provisions of
Section 17.05 and other applicable provisions of the
Plan.

17.04    To the extent to which a Participant or Inactive
Participant does not direct the Trustee, or issues
invalid directions to the Trustee, pursuant to Section

GR 001646

141

17.02, such Participant or Inactive Participant shall be deemed to have directed the Trustee that such shares remain invested in Grace Stock subject to all provisions of the Plan.

17.05 Grace may direct the substitution of new employer securities for Grace Stock or for the proceeds of any disposition of Grace Stock to the extent provided in the Plan.  Pending the substitution of new employer securities or the termination of the Plan and Trust, the Trust Fund may be invested in such securities as Grace (or other fiduciary identified by Grace for such purpose) may from time to time direct; provided, however, in the absence of any direction from Grace or other fiduciary, the Trustee may invest the cash proceeds in short-term securities issued by the United States of America or any agency or instrumentality thereof or any other investments of a short-term nature, including corporate obligations or participations therein and interim collective or common investment funds.

17.06 In the case of Grace Stock held within the Trust Fund that has not been credited to Participant or Inactive Participant Accounts, the Trustee shall, in the manner and within the time prescribed by the terms of the tender offer, tender, sell, offer to sell, submit for exchange or otherwise dispose of only that number of shares of such stock that bears the same ratio to the total number of such shares as the number of shares credited to Participant and Inactive Participant Accounts for which the Trustee has received valid directions (which have not

GR 001647

142

been withdrawn or revoked) from Participants and Inactive Participants pursuant to Section 17.02 bears to the total number of shares credited to Participant and Inactive Participant Accounts.  The proceeds of a disposition of Grace Stock made under this Section 17.06 pursuant to a tender offer shall be held by the Trustee subject to the provisions of the trust instrument, the Plan and any applicable loan agreement.

GR 001648

143

## Section 18

Loans

18.01   A Participant may apply, pursuant to the procedure
        established in accordance with Section 18.04 for a loan
        from his Account.  Loans shall be made available to all
        Participants on a reasonably equivalent basis, subject to
        the following:

        (1)    Each loan shall be evidenced by a negotiable
               promissory note;

        (2)    Each loan shall bear a reasonable rate of interest;

        (3)    Each loan shall be adequately secured; provided that
               no loan may be secured, in whole or in part, by
               property other than the Participant's Account;

        (4)    No loan to a Participant shall exceed the value of
               the vested Account balance of the Participant at the
               time the loan is made;

        (5)    No loan to any Participant can be made to the extent
               that such loan when added to the outstanding balance
               of all other loans to the Participant would exceed
               the lesser of (a) $50,000 reduced by the excess, if
               any, of the highest outstanding balance of loans
               during the one-year period ending on the day before
               the loan is made, over the outstanding balance of
               loans from the Plan on the date the loan is made; or

144

(b) one-half the present value of the Participant's nonforfeitable accrued benefit under the Plan or, if greater, the total accrued benefit up to $10,000; and for purposes of this clause (5), all loans from all plans qualified under Code section 401(a) of the Company or an affiliate of the Company shall be aggregated;

(6) Each loan must, by its terms, require that repayment of principal and interest be amortized in level payments, not less frequently than quarterly, over a period not extending beyond five years from the date of the loan; provided that the repayment term may be extended to a period not exceeding 20 years if the loan is used to acquire a dwelling unit which within a reasonable time (determined at the time the loan is made) will be used as the principal residence of the Participant; and

(7) No loan, shall be made available to "highly compensated employees" (as defined by Code section 414(q) and the regulations thereunder) in an amount greater than the amount made available to other Employees.

145

18.02  (1)   If a Participant requests a loan, the funds to be
loaned shall be taken from the accounts, and the Investment
Funds, in the order specified below:

| | |
|---|---|
| 1.  before-tax savings account | 1.  Fidelity Contrafund |
| 2.  Company contribution account | 2.  Fidelity OTC Portfolio |
| 3.  after-tax savings made after December 31, 1986 and related earnings | 3.  Fidelity Blue Chip Growth Fund |
| 4.  after-tax savings made before January 1, 1987 and related earnings | 4.  Fidelity Growth & Income Portfolio |
| 5.  rollover account | 5.  Fidelity Balanced Fund |
| 6.  supplemental account | 6.  Fixed Income Fund |
| | 7.  ADS Fund |
| | 8.  Grace Stock Fund |
| | 9.  Company Contribution Fund |

(2)   Loan repayments (including interest) shall be
credited to the Participant's Account in the
following order:

1.  supplemental account
2.  rollover account
3.  after-tax savings made before January 1, 1987
4.  after-tax savings made after December 31, 1986
5.  Company contribution account

GR 001651

146

6.  before-tax savings account

18.03   The promissory note executed by the Participant shall be
        held by the Trustee as an asset of the Account.  Any loss
        caused by default on a Participant's loan obligation shall
        be borne solely by that Account.  Anything herein to the
        contrary notwithstanding, in the event of such a default,
        foreclosure on the promissory note and attachment of
        security will not occur until a distributable event occurs
        under the Plan with respect to the Participant involved.

18.04   The Administrative Committee shall prepare a written
        document setting forth the following information regarding
        loans from the Plan and such other information as the
        Administrative Committee deems relevant:

        (1)    The identity of the person or positions authorized
               to administer the loan program;

        (2)    A procedure for applying for loans;

        (3)    The basis on which loans will be approved or denied;

        (4)    Limitations (if any) on the types and amount of
               loans offered;

        (5)    The procedure under the program for determining a
               reasonable rate of interest;

        (6)    The events constituting default and the steps that
               will be taken to preserve Plan assets in the event

GR  001652

147

of such default; and

(7)   The minimum loan amount.

The provisions of that document are incorporated herein by
this reference; provided, however, that if any provision
of that document conflicts with any other provision of the
Plan, the other Plan provision shall control.

18.05   Following a Participant's death, the provisions of this
Section 18 shall apply to the Participant's beneficiary as
if the beneficiary were the Participant, but only if that
beneficiary is a "party in interest" (as defined in
section 3(14) of ERISA).

18.06   The provisions of this Section 18 shall apply to a former
Participant as if that former Participant were a
Participant, but only if that former Participant is a
"party in interest" (as defined in section 3(14) of
ERISA).