# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KERI EVANS, et al., ) <br><br> Plaintiffs, ) <br><br> v. ) <br><br> JOHN F. AKERS, et al., ) <br><br> Defendants. ) <br> ———————————————————— ) <br> LAWRENCE W. BUNCH, et al., ) <br><br> Plaintiffs, ) <br><br> v. ) <br><br> W. R. GRACE & CO., et al., ) <br><br> Defendants. ) | **Consolidated Under** <br> **Case No. 04-11380-WGY** |

## ANSWER OF GRACE DEFENDANTS TO EVANS COMPLAINT

Defendants John F. Akers, Ronald C. Cambre, Marye Anne Fox, John J. Murphy, Paul J. Norris, Thomas A. Vanderslice, H. Furlong Baldwin, Investments and Benefits Committee ("IBC"), Administrative Committee ("AC"), Brenda Gottlieb, W. Brian McGowan, Michael Piergrossi, Robert M. Tarola, Eileen Walsh, David Nakashige, Elyse Napoli, Martin Hunter, and Ren Lapadario (collectively, the "Grace Defendants"), by and through their undersigned counsel, for their Answer to the First Amended Complaint for Violations of the Employee Retirement Income Security Act of 1974 of Keri Evans and Timothy Whipps (the "Evans Complaint"), state as follows:

## PREFATORY NOTES[*]

This section contains four bulleted paragraphs containing a narrative purporting to describe the nature of the action, and therefore requires no response. To the extent a response is required, all of the allegations in this section are hereby denied.[1]

## INTRODUCTION

1.    Paragraph 1 describes the nature of the action, and requires no response. To the extent a response is required, the Grace Defendants deny all allegations in paragraph 1.

2.    The Grace Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the first two sentences of paragraph 2, and those allegations are, therefore, denied. The Grace Defendants admit that W. R. Grace & Co. ("Grace") is the sponsor of the W. R. Grace & Co. Savings and Investment Plan (the "Plan"), and that Grace's common stock was one of the Plan's investment alternatives for at least some part of the period from July 1, 1999 to April 19, 2004. The Grace Defendants deny the remaining allegations in paragraph 2.

3.    The Grace Defendants admit that plaintiffs were employed by Grace and were participants in the Plan during at least some part of the period from July 1, 1999 to April 19, 2004. The Grace Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 3 and they are, therefore, denied.

---

[*] For reference purposes, the Grace Defendants utilize the same headings as plaintiffs in responding to the Evans Complaint. The Grace Defendants use of such headings is not an admission by the Grace Defendants of the truth of any allegations contained in these headings, and they specifically deny any allegations contained in such headings.

[1] The Grace Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of footnote 1, and they are, therefore, denied. The Grace Defendants deny the remaining allegations in footnote 1.

4.    The Grace Defendants admit that plaintiffs are purporting to make the allegations described in paragraph 4, but deny all such allegations.

5.    The Grace Defendants admit that plaintiffs are purporting to make the allegations described in paragraph 5, but deny all such allegations.

6.    The Grace Defendants admit that plaintiffs are purporting to make the allegations described in paragraph 6, but deny all such allegations.

7.    The Grace Defendants admit that plaintiffs are purporting to make the allegations described in paragraph 7, but deny all such allegations.

8.    The Grace Defendants admit that plaintiffs are purporting to make the allegations described in paragraph 8, but deny all such allegations.

9.    The Grace Defendants admit that plaintiffs are purporting to make the allegations described in paragraph 9, but deny all such allegations.

10.    The Grace Defendants admit that the plaintiffs purport to bring this action under ERISA on behalf of the Plan and all allegedly affected participants and beneficiaries of the Plan, but deny that a class action is either necessary or appropriate.  The Grace Defendants further deny the remaining allegations in paragraph 10.

## JURISDICTION AND VENUE

11.    The Grace Defendants admit that this Court has subject matter jurisdiction over this action.

12.    The Grace Defendants admit that venue is proper in this Court. [2]

---

[2] The Grace Defendants deny that Grace Performance Chemicals has twenty-one manufacturing sites in Cambridge, Massachusetts, but admit the remaining allegations in footnote 2.

3

## PARTIES

### Plaintiffs

13.    The Grace Defendants admit that Keri Evans was employed by Grace and was a "participant" in the Plan, as defined in ERISA § 3(7), 29 U.S.C. § 1102(7), for at least some part of the period from July 1, 1999 to April 19, 2004.  The Grace Defendants further admit that Evans held stock in the Plan during at least some part of the period from July 1, 1999 to April 19, 2004.

14.    The Grace Defendants admit that Timothy Whipps was employed by Grace and was a "participant" in the Plan, as defined in ERISA § 3(7), 29 U.S.C. § 1102(7), for at least some part of the period from July 1, 1999 to April 19, 2004.  The Grace Defendants further admit that Whipps held stock in the Plan during at least some part of the period from July 1, 1999 to April 19, 2004.

### Defendants

### Board of Directors/"Defendant Directors"

15.    The Grace Defendants admit that John F. Akers served on Grace's Board of Directors (the "Board") during at least some part of the period from July 1, 1999 to April 19, 2004.  The Grace Defendants further admit that the Board had the authority to appoint the members of the IBC but deny the remaining allegations in paragraph 15.

16.    The Grace Defendants admit that Ronald C. Cambre served on the Board during at least some part of the period from July 1, 1999 to April 19, 2004.  The Grace Defendants further admit that the Board had the authority to appoint the members of the IBC but deny the remaining allegations in paragraph 16.

4

17.    The Grace Defendants admit that Marye Anne Fox served on the Board during at least some part of the period from July 1, 1999 to April 19, 2004. The Grace Defendants further admit that the Board had the authority to appoint the members of the IBC but deny the remaining allegations in paragraph 17.

18.    The Grace Defendants admit that John J. Murphy served on the Board during at least some part of the period from July 1, 1999 to April 19, 2004. The Grace Defendants further admit that the Board had the authority to appoint the members of the IBC but deny the remaining allegations in paragraph 18.

19.    The Grace Defendants admit that Paul J. Norris served on the Board and as Grace's Chief Executive Officer during at least some part of the period from July 1, 1999 to April 19, 2004. The Grace Defendants futher admit that the Board had the authority to appoint the members of the IBC but deny the remaining allegations in paragraph 19.

20.    The Grace Defendants admit that Thomas A. Vanderslice served on the Board during at least some part of the period from July 1, 1999 to April 19, 2004. The Grace Defendants further admit that the Board had the authority to appoint the members of the IBC but deny the remaining allegations in paragraph 20.

21.    The Grace Defendants admit that H. Furlong Baldwin served on the Board during at least some part of the period from July 1, 1999 to April 19, 2004. The Grace Defendants further admit that the Board had the authority to appoint the members of the IBC but deny the remaining allegations in paragraph 21.

**Investment and Benefits Committee**

22.    The Grace Defendants admit that the IBC was charged with certain defined fiduciary duties under the terms of the Plan relating to the investment of Plan assets. To the

5

extent paragraph 22 characterizes or incorporates the Plan, the Grace Defendants aver that the best evidence of the contents of the Plan is the Plan itself, and any allegations in paragraph 22 inconsistent therewith are denied. The Grace Defendants deny the remaining allegations in paragraph 22.

23.     The Grace Defendants admit that Robert M. Tarola ("Tarola") served as Senior Vice President and Chief Financial Officer of Grace, and was a member of the IBC, during at least some part of the period from July 1, 1999 to April 19, 2004. The Grace Defendants deny the remaining allegations in paragraph 23.

24.     The Grace Defendants deny the allegations in paragraph 24.

25.     The Grace Defendants deny the allegations in paragraph 25.

26.     The Grace Defendants deny the allegations in paragraph 26.

27.     The Grace Defendants deny the allegations in paragraph 27.

28.     The Grace Defendants deny the allegations in paragraph 28.

**Administrative Committee**

29.     The Grace Defendants aver that, effective June 14, 1995, the "Administrative Committee" described in the Plan became the IBC, and that the IBC then established a new committee, also called the Administrative Committee (referred to herein as the "AC"), to which it delegated certain limited fiduciary responsibilities, not including responsibility for the management and disposition of the Plan's assets. The Grace Defendants further admit that the AC was the "plan administrator" as defined in ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), and that the AC and its members may have been fiduciaries of the Plan, within the meaning of ERISA, but only insofar as they had and exercised discretionary authority and control with respect to management and administration of the Plan, and only to the extent of the matters with

respect to which they exercised such discretionary authority and control. The Grace Defendants deny the remaining allegations in paragraph 29.[3]

30.    The Grace Defendants admit that, during at least some part of the period from July 1, 1999 to April 19, 2004, Brenda Gottlieb ("Gottlieb") served as the Chairman of the AC and signed Grace's 2000 and 2001 Form 11-K in that capacity. The Grace Defendants deny the remaining allegations in paragraph 30.

31.    The Grace Defendants admit that, during at least some part of the period from July 1, 1999 to April 19, 2004, W. Brian McGowan ("McGowan") was a member of the IBC and served as Grace's Vice President of Corporate Administration. The Grace Defendants deny the remaining allegations in paragraph 31.

32.    The Grace Defendants admit that Michael Piergrossi signed Grace's Form 5500 annual reports for the W. R. Grace & Co. Salaried Employees Savings & Investment Plan for fiscal year 2000, the W. R. Grace & Co. Hourly Employees Savings & Investment Plan for fiscal years 2000 and 2001, and the W. R. Grace & Co. Savings & Investment Plan for fiscal years 2002, 2003, and 2004. The Grace Defendants deny the remaining allegations in paragraph 32.

**Investment Manager**

33.    The allegations in paragraph 33 pertain to another defendant and, accordingly, no response from the Grace Defendants is required.

34.    The allegations in paragraph 34 pertain to another defendant and, accordingly, no response from the Grace Defendants is required.

35.    The allegations in paragraph 35 pertain to another defendant and, accordingly, no response from the Grace Defendants is required.

---

[3] To the extent footnote 3 contains factual allegations, the Grace Defendants deny those allegations.

## THE PLAN

### The Nature of the Plan

36.   The Grace Defendants admit that the Plan is an "employee pension benefit plan," as defined in ERISA § 3(2)(A), 29 U.S.C § 1002(2)(A).  The second sentence of paragraph 36 describes the nature of the relief sought by the plaintiffs and requires no response; however, the Grace Defendants deny that the plaintiffs are entitled to any relief whatsoever.

37.   The Grace Defendants admit the allegations in paragraph 37, except for averring that the effective date of the merger was January 1, 2002 rather than December 31, 2001.[4]

38.   The Grace Defendants aver that the best evidence of the contents of the 2004 SPD is the 2004 SPD itself, and any allegations in this paragraph inconsistent therewith are denied.[5]

39.   The Grace Defendants admit the allegations in paragraph 39.

### History of the Plan

40.   The Grace Defendants admit the allegations in the first sentence of paragraph 40. With respect to the balance of paragraph 40,[6] the Grace Defendants aver that the best evidence of the contents of the Plan is the Plan document itself, and any allegations in this paragraph inconsistent therewith are denied.[7]

---

[4] Footnote 4 contains a statement purporting to describe the nature of the action, and, therefore, requires no response.  To the extent a response is required, the Grace Defendants deny all allegations in footnote 4.

[5] The Grace Defendants admit that the Evans Complaint refers to SPDs by their year, and deny the remaining allegations in footnote 5.

[6] With respect to footnote 6, the Grace Defendants admit that the plaintiffs have attempted to address only a portion of the history of the Plan, and that there is additional information that the plaintiffs omit, including a number of past Plan amendments.

[7] With respect to footnote 7, the Grace Defendants admit that the plaintiffs purport to refer to Plan documents by their year.

**The Structure of the Plan**

41.    The Grace Defendants aver that the best evidence of the contents of the Plan's 2003 Summary Plan Description ("2003 SPD") is the 2003 SPD itself, and any allegations in paragraph 41 inconsistent therewith are denied.

42.    The Grace Defendants aver that the best evidence of the contents of the 2003 SPD and the 2004 SPD are the 2003 and 2004 SPDs themselves, and any allegations in paragraph 42 inconsistent therewith are denied.

43.    The Grace Defendants admit that the Plan's assets were held in a master trust. The Grace Defendants aver that the best evidence of the contents of the Plan and the Plan's 2002 Summary Plan Description ("2002 SPD") are the Plan and the 2002 SPD themselves, and any allegations in paragraph 43 inconsistent therewith are denied.

44.    The Grace Defendants admit that Fidelity Management Trust Company is the trustee of the Plan.[8]

45.    The Grace Defendants admit that under the terms of the Trust Agreement, the IBC is responsible for directing Fidelity with regard to the investment of Plan assets, except to the extent that an independent investment manager has been appointed to manage the Plan's assets.

46.    The Grace Defendants deny the allegations in paragraph 46.

47.    The Grace Defendants admit the allegations in the first sentence of paragraph 47. The Grace Defendants further aver that the best evidence of the contents of the 2004 SPD and the 2001 Salaried SPD are the 2004 SPD and the 2001 Salaried SPD themselves, and any allegations in paragraph 47 inconsistent therewith are denied.[9]

---

[8] The Grace Defendants admit that Fidelity has been dismissed from this action without prejudice, as recited in footnote 8.

[9] With respect to footnote 9, the Grace Defendants admit that, effective June 14, 1995, the "Administrative Committee" described in the Plan became the IBC, and that the IBC then established a new committee, also called

48.    The Grace Defendants admit the allegations in paragraph 48.

**Participant Contributions**

49.    The Grace Defendants aver that the best evidence of the contents of the Plan is the Plan itself, and any allegations in paragraph 49 inconsistent therewith are denied.

50.    The Grace Defendants admit that the Plan offered participants a number of investment options.  The Grace Defendants further aver that the best evidence of the contents of the 2002 SPD is the 2002 SPD itself, and any allegations in paragraph 50 inconsistent therewith are denied.

**Company Contributions**

51.    The Grace Defendants admit the allegations in paragraph 51.

52.    The Grace Defendants admit that during at least some part of the period from July 1, 1999 to April 19, 2004, Grace matched 100 percent of participants' savings up to the first 6 percent of pay saved.  The Grace Defendants further aver that the best evidence of the contents of the 1998 Salaried SPD is the 1998 Salaried SPD itself, and any allegations in paragraph 52 inconsistent therewith are denied.

53.    The Grace Defendants deny the allegations in the first sentence of paragraph 53. The Grace Defendants further aver that the best evidence of the contents of the 2001 Salaried SPD and the 2002 SPD is the 2001 Salaried SPD and 2002 SPD themselves, and any allegations in paragraph 53 inconsistent therewith are denied.

54.    The Grace Defendants admit that, prior to January 1, 2001, company matching contributions were made to the employee stock ownership plan ("ESOP") portion of the Trust

---

the Administrative Committee (referred to herein as the "AC"), to which it delegated certain limited fiduciary responsibilities, not including responsibility for the management and disposition of the Plan's assets.

Fund established to hold the assets of the Plan, and that such contributions were made in cash. The Grace Defendants deny the remaining allegations in paragraph 54.

55.    The Grace Defendants aver that the best evidence of the contents of the Plan is the Plan itself, and any allegations in paragraph 55 inconsistent therewith are denied.

56.    The Grace Defendants admit that until January 1, 2001, Company matching contributions were invested primarily in Grace common stock. The Grace Defendants further aver that the best evidence of the contents of the 1998 Salaried SPD is the 1998 Salaried SPD itself, and any allegations in paragraph 56 inconsistent therewith are denied.

57.    The Grace Defendants deny the allegations in the first sentence of paragraph 57. The Grace Defendants further aver that the best evidence of the contents of the 1998 Salaried SPD is the 1998 Salaried SPD itself, and any allegations in paragraph 57 inconsistent therewith are denied.

58.    The Grace Defendants admit the allegations in the first sentence of paragraph 58. The Grace Defendants further aver that the best evidence of the contents of the 2001 Salaried SPD is the 2001 Salaried SPD itself, and any allegations in paragraph 58 inconsistent therewith are denied.

**The Plan's Investment in Grace Securities**

59.    The Grace Defendants admit that, during at least some portion of the period from July 1, 1999 to April 19, 2004, the Plan offered participants the opportunity to invest in Grace common stock, including a period of time after the Plan required that company matching contributions be invested primarily in Grace stock. The Grace Defendants deny the remaining allegations in paragraph 59.

60.     The Grace Defendants aver that the best evidence of the contents of the 1998 Salaried SPD is the 1998 Salaried SPD itself, and any allegations in paragraph 60 inconsistent therewith are denied.

61.     The Grace Defendants admit that, at some point during the period from July 1, 1999 to April 19, 2004, Grace permitted participants to divest their Company matching contributions out of Grace stock into other investments, if they so wished. The Grace Defendants further aver that the best evidence of the contents of the January 2000 edition of Grace Benefit News is the January 2000 edition of Grace Benefit News itself, and any allegations in paragraph 61 inconsistent therewith are denied.

62.     The Grace Defendants aver that the best evidence of the contents of a December 15, 2000 letter to Plan participants from Defendant Norris is the letter itself, and any allegations in paragraph 62 inconsistent therewith are denied.

63.     The Grace Defendants admit that investments in Grace stock were permitted in 2001, but deny the characterization of such fact contained in the first sentence of paragraph 63. The Grace Defendants further aver that the best evidence of the contents of the 2001 Summary of Material Modifications ("SMM") is the 2001 SMM itself, and any allegations in paragraph 63 inconsistent therewith are denied. The Grace Defendants deny the remaining allegations in paragraph 63.

64.     The Grace Defendants deny the first sentence of paragraph 64. The Grace Defendants further aver that the best evidence of the contents of the Plan is the Plan itself, and any allegations in paragraph 64 inconsistent therewith are denied. The Grace Defendants deny the remaining allegations in paragraph 64.

65.    The Grace Defendants admit that as of December 31, 1999, the Hourly Plan and Salaried Plan, combined, held approximately 9,328,844 shares of Grace stock and that, as of that date, these shares were trading on the market at an aggregate price of approximately $62,835,218. The Grace Defendants further admit that as of December 31, 2002, the Plan held approximately 23,703,537 shares of Grace stock; that, as of that date, these shares were trading on the market at an aggregate price of approximately $24,101,477; that the value of the Grace stock held by the Plan decreased approximately 38% between December 31, 2002 and December 31, 1999; and that the number of shares held by the Plan increased approximately 40% between December 31, 1999 and December 31, 2002. The Grace Defendants deny the remaining allegations in paragraph 65.

66.    The Grace Defendants aver that the best evidence of the contents of a March 17, 2003 memo from Defendant McGowan to all participants in the Plan is the memo itself, and any allegations in this paragraph inconsistent therewith are denied. The Grace Defendants deny that the March 17, 2003 memo is attached to the Evans Complaint as Exhibit N, deny plaintiffs' characterization of the memo, and further deny the remaining allegations in paragraph 66.[10]

67.    The Grace Defendants aver that the best evidence of the contents of the Plan is the Plan itself, and any allegations in paragraph 67 inconsistent therewith are denied.

68.    The Grace Defendants deny the allegations in paragraph 68.[11]

69.    The Grace Defendants deny the allegations in the first sentence of paragraph 69. The remaining allegations in paragraph 69 pertain to another defendant and, accordingly, no

---

[10] The Grace Defendants deny the allegations in the first sentence of footnote 10. The Grace Defendants further aver that the best evidence of the contents of a March 26, 2003 letter to Plan participants from Defendant McGowan is the letter itself, and any allegations in footnote 10 inconsistent therewith are denied. The Grace Defendants deny the remaining allegations in footnote 10.

[11] The Grace Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in footnote 11, and they are, therefore, denied.

response from the Grace Defendants is required. To the extent a response is necessary, the Grace Defendants deny the remaining allegations in paragraph 69.

70.    The Grace Defendants admit that Grace issued a press release on February 27, 2004, and aver that the best evidence of the contents of the press release is the press release itself. Any allegations in paragraph 70 inconsistent therewith are denied. The Grace Defendants deny the remaining allegations in paragraph 70.

71.    The allegations contained in paragraph 71 pertain to another defendant and, accordingly, no response from the Grace Defendants is required. To the extent a response is necessary, the Grace Defendants aver that the best evidence of the February 27, 2004 communication to the Plan's participants from Defendant State Street is the communication itself, and any allegations in paragraph 71 inconsistent therewith are denied, as are the remaining allegations in paragraph 71.

72.    The allegations contained in paragraph 72 pertain to another defendant and, accordingly, no response from the Grace Defendants is required. To the extent a response is necessary, the Grace Defendants aver that the best evidence of the February 27, 2004 communication to the Plan's participants from Defendant State Street is the communication itself, and any allegations in paragraph 72 inconsistent therewith are denied, as are the remaining allegations in paragraph 72.

73.    The Grace Defendants admit that Grace issued a press release on April 12, 2004, but aver that the best evidence of the contents of the press release is the press release itself, and any allegations in paragraph 73 inconsistent therewith are denied.[12]

---

[12] The allegations in footnote 12 pertain to another defendant and, accordingly, no response from the Grace Defendants is required. To the extent a response is necessary, the Grace Defendants admit that the referenced allegations are contained in the Bunch complaint, but deny the truth of such allegations.

74.    The Grace Defendants aver that the best evidence of the contents of the 2004 SPD is the 2004 SPD itself, and any allegations in this paragraph inconsistent therewith are denied.

## DEFENDANTS' FIDUCIARY STATUS

75.    The Grace Defendants deny the allegations in paragraph 75.

76.    The Grace Defendants deny the allegations in paragraph 76.

77.    Paragraph 77 contains legal conclusions to which no response is required.  To the extent this paragraph may be construed to include factual allegations, the Grace Defendants aver that the best evidence of the contents of the Plan's operative documents are the operative documents themselves, and any allegations in paragraph 77 inconsistent therewith are denied.

78.    The Grace Defendants admit the allegations in the first sentence of paragraph 78 but deny the remaining allegations in this paragraph.

**Director Defendants**

79.    The Grace Defendants admit that the Board is charged with certain limited fiduciary duties under the Plan, but deny the remaining allegations in paragraph 79.

80.    The Grace Defendants admit that the Board held the authority to appoint members of the IBC, but deny the remaining allegations in paragraph 80.

81.    The Grace Defendants deny the allegations in paragraph 81.

**Investment and Benefits Committee**

82.    The first sentence of paragraph 82 constitutes a legal conclusion to which no response is required.  The Grace Defendants further aver that the best evidence of the contents of the W. R. Grace & Co. Savings & Investment Plan Investment Policy Statement, Adopted March 1, 2004 ("Policy Statement"), is the Policy Statement itself, and any allegations in paragraph 82 inconsistent therewith are denied.  To the extent this paragraph purports to re-allege the

allegations of the foregoing paragraphs, the Grace Defendants incorporate by reference their responses to those paragraphs. The Grace Defendants deny the remaining allegations in paragraph 82.

83.    The Grace Defendants admit that the IBC had the power to appoint investment managers, but deny the remaining allegations in paragraph 83.

**Administrative Committee**

84.    The Grace Defendants admit that the AC served as a fiduciary of the Plan for at least part of the period from July 1, 1999 to April 19, 2004. The Grace Defendants further aver that the best evidence of the contents of the Plan is the Plan itself, and any allegations in paragraph 84 inconsistent therewith are denied.

**State Street**

85.    The first sentence of paragraph 85 is a legal conclusion to which no response is required. The Grace Defendants further aver that the best evidence of the contents of the Engagement Agreement dated November 24, 2003 between State Street, Grace, and the IBC is the agreement itself, and any allegations in paragraph 85 inconsistent therewith are denied.

86.    The Grace Defendants aver that the best evidence of the contents of the December 8, 2003 letter from McGowan to Plan participants is the letter itself, and any allegations in paragraph 86 inconsistent therewith are denied. The Grace Defendants deny the remaining allegations in paragraph 86.

**Additional Fiduciary Aspects of Defendants' Actions/Inactions**

87.    Paragraph 87 contains legal conclusions to which no response is required. To the extent this paragraph may be construed to include factual allegations, the Grace Defendants deny those allegations.

88.     The Grace Defendants admit that certain statements were made about Grace and its securities in SEC filings, press releases and other communications but deny that these statements were made by any of the Grace Defendants acting in a fiduciary capacity. The Grace Defendants further deny all remaining allegations in paragraph 88.

## CLASS ACTION ALLEGATIONS

89.     The Grace Defendants admit that the plaintiffs purport to bring this action on behalf of themselves and all others similarly situated, but deny that a class action is either necessary or appropriate.[13]

90.     The Grace Defendants admit that the number of putative class members, as the putative class has been defined by the plaintiffs, exceeds one thousand persons. The Grace Defendants deny the remaining allegations in paragraph 90.

91.     Paragraph 91 contains legal conclusions to which no response is required. To the extent this paragraph may be construed to include factual allegations, the Grace Defendants deny those allegations.

92.     The Grace Defendants deny that the Grace Defendants engaged in any wrongful conduct in violation of federal law as complained of in the Evans Complaint, but are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 92 and they are, therefore, denied.

93.     The Grace Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 93 and they are, therefore, denied.

---

[13] To the extent footnote 13 contains factual allegations, the Grace Defendants deny all such allegations.

17

94.     Paragraph 94 contains legal conclusions to which no response is required.  To the extent this paragraph may be construed to include factual allegations, the Grace Defendants deny those allegations.

## DEFENDANTS' CONDUCT

**A.**     **Grace Stock was an Imprudent Investment for the Plan Background**

95.     The Grace Defendants admit the allegations in paragraph 95.

96.     The Grace Defendants admit the allegations in paragraph 96.

97.     The Grace Defendants admit that Grace sold Monokote® 4 and Monokote® 5, which were spray-applied fireproofing materials used to protect structural steel.  The Grace Defendants deny the remaining allegations in paragraph 97.

98.     The Grace Defendants deny the allegations in the first sentence of paragraph 98; aver that the best evidence of the contents of the article appearing on www.seattlepi.nwsource .com regarding W. R. Grace & Co. is the article itself, and deny any allegations in this paragraph inconsistent therewith; and are without knowledge or information sufficient to form a belief as to the truth of the allegations in the last sentence of paragraph 98, which are, therefore, denied.  The Grace Defendants further submit that the allegations in the second and third sentences of paragraph 98 are scandalous, scurrilous, inflammatory, immaterial, and irrelevant to any issue in this action and are included solely for the purpose of prejudicing the factfinder.  These allegations should, therefore, be stricken and are hereby denied.

**Asbestos-Related Litigation**

99.     The Grace Defendants admit the first sentence of paragraph 99.  The Grace Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph 99, and they are, therefore, denied.

18

100.    The Grace Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 100 and they are, therefore, denied.

101.    The Grace Defendants deny the allegations in paragraph 101.[14]

102.    The Grace Defendants admit that Grace has been named as a defendant in asbestos-related litigation, but aver that in most cases it was neither the only nor the primary defendant. The Grace Defendants further admit that Grace supplied vermiculite for "Zonolite" attic insulation and that it is a defendant in Zonolite-related suits. The Grace Defendants deny the remaining allegations in paragraph 102.

103.    The Grace Defendants admit that Grace has been named as a defendant in lawsuits related to vermiculite. The Grace Defendants further admit that Grace operated a vermiculite mine in Libby, Montana from 1963 to 1990. The Grace Defendants deny the remaining allegations in paragraph 103.

104.    The Grace Defendants admit that in 2003 Grace was ordered by a federal court to pay the federal government approximately $54.5 million related to the investigation and clean up in Libby, Montana, but aver that this decision is still subject to appeal. The Grace Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph 104 and they are, therefore, denied. The Grace Defendants deny the remaining allegations in paragraph 104.[15]

---

[14] The Grace Defendants deny the allegations in the last sentence of footnote 14, but are otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations in footnote 14 and they are, therefore, denied.

[15] Footnote 15 contains legal conclusions to which no response is required. If a response is necessary, the Grace Defendants deny all of the allegations in footnote 15.

**Effects of the Asbestos-Related Suits on the Asbestos Industry**

105. The Grace Defendants admit that the United States Supreme Court issued decisions in *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997), and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999). The balance of paragraph 105 contains legal conclusions to which no response is required. If a response is required, the Grace Defendants deny all of the remaining allegations in paragraph 105.[16]

106. The Grace Defendants deny the allegations in paragraph 106.[17]

107. The Grace Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 107, and they are, therefore, denied. The Grace Defendant further deny the remaining allegations in paragraph 107.

108. The Grace Defendants admit that, on February 22, 2000, Babcock & Wilcox filed for Chapter 11 bankruptcy protection in the U. S. Bankruptcy Court for the Eastern District of Louisiana, and admit that the price at which Grace stock was trading on the market decreased between February 22, 2000 and February 24, 2000. The Grace Defendants deny the remaining allegations in paragraph 108.

109. The Grace Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 109 and they are, therefore, denied.

110. The Grace Defendants admit that Owens Corning Corporation filed for Chapter 11 bankruptcy protection on October 5, 2000, and admit that the price at which Grace stock was trading on the market decreased between October 5, 2000 and October 6, 2000. The Grace

---

[16] Footnote 16 contains legal conclusions to which no response is required. If a response is necessary, the Grace Defendants deny all of the allegations in footnote 16.

[17] The Grace Defendants admit that the price of Grace stock on July 1, 1999 was $19.19 per share and that the price of Grace stock was not more than $19 per share between July 1, 1999 and April 19, 2004. The Grace Defendants deny the remaining allegations in footnote 17.

Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 110 and they are, therefore, denied.[18]

111.    The Grace Defendants admit that Armstrong World Industries, Inc. filed for Chapter 11 bankruptcy protection on December 6, 2000, and admit that the price at which Grace stock was trading on the market decreased between December 6, 2000 and December 7, 2000. The Grace Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 111 and they are, therefore, denied.[19]

112.    The Grace Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 112 and they are, therefore, denied.

### Grace's Improper Accounting of Asbestos-Related Claims

113.    The Grace Defendants deny the allegations in paragraph 113.

114.    The Grace Defendants admit the allegations in the first sentence of paragraph 114. The Grace Defendants further aver that the best evidence of the contents of the 1999 10-K is the 1999 10-K itself, and any allegations in this paragraph inconsistent therewith are denied.

115.    The Grace Defendants aver that the best evidence of the contents of the 2000 10-K is the 2000 10-K itself, and any allegations in this paragraph inconsistent therewith are denied.

116.    The Grace Defendants admit that Grace's decision to file for Chapter 11 bankruptcy protection was made in response to asbestos-related claims against Grace, but deny the remaining allegations in paragraph 116.

117.    The Grace Defendants aver that the best evidence of the contents of the 2001 10-K is the 2001 10-K itself, and any allegations in this paragraph inconsistent therewith are denied.

---

[18] The Grace Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in footnote 18 and they are, therefore, denied.

[19] The Grace Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in footnote 19 and they are, therefore, denied.

**Asbestos Claims Threaten Grace's Financial Health**

118.   The Grace Defendants deny the allegations in paragraph 118.

119.   The Grace Defendants admit the allegations in paragraph 119.

120.   The Grace Defendants deny the allegations in paragraph 120.[20]

121.   The Grace Defendants deny the allegations in paragraph 121.

122.   The Grace Defendants deny the allegations in paragraph 122.

**B.   Defendants Knew or Should have Known that the Grace Funds and/or Grace stock were not Prudent Plan Investments**

123.   The Grace Defendants deny the allegations in paragraph 123.

124.   The Grace Defendants deny the allegations in paragraph 124.

125.   The Grace Defendants deny the allegations in paragraph 125.

126.   The Grace Defendants deny the allegations in paragraph 126.

127.   The Grace Defendants deny the allegations in paragraph 127.

128.   The Grace Defendants deny the allegations in paragraph 128.

129.   The Grace Defendants deny the allegations in paragraph 129.

**C.   Defendants Regularly Communicated with Plan Participants Concerning Grace Stock Yet Failed to Disclose the Imprudence of Investment of Plan assets in Grace Stock**

130.   The Grace Defendants deny the allegations in paragraph 130.

131.   The Grace Defendants deny the allegations in paragraph 131.

**D.   Defendants Suffered From Conflicts of Interest**

132.   The Grace Defendants admit that at least some of Grace's directors and officers of

Grace received stock grants or stock options as compensation during the period from July 1,

1999 to April 19, 2004.

---

[20] The Grace Defendants deny the allegations in the footnote to paragraph 120.

133.    The Grace Defendants deny the allegations in paragraph 133.

134.    The Grace Defendants admit that some of the Defendants had no choice in tying their compensation to the price of Grace stock, but deny the remaining allegations in paragraph 134.

135.    The Grace Defendants deny the allegations in paragraph 135.

## CLAIMS FOR RELIEF UNDER ERISA

136.    The Grace Defendants deny the allegations in paragraph 136.

137.    Paragraph 137 contains legal conclusions to which no response is required.

138.    Paragraph 138 contains legal conclusions to which no response is required.

139.    Paragraph 139 contains legal conclusions to which no response is required.

140.    Paragraph 140 contains legal conclusions to which no response is required.

141.    To the extent paragraph 141 contains legal conclusions, no response is required. The Grace Defendants admit that the plaintiffs purport to bring this action under the authority of ERISA § 502(a)(2) for Plan-wide relief under ERISA § 409(a), but deny the remaining allegations contained in paragraph 141.

## COUNT I

### Failure to Prudently and Loyally Manage the Plan's Assets (Breaches of Fiduciary Duties in Violation of ERISA § 404 by All Defendants)

142.    The Grace Defendants incorporate by reference their responses to the previous paragraphs of the Evans Complaint as if fully set forth herein.

143.    The Grace Defendants deny the allegations in paragraph 143.

144.    The Grace Defendants deny the allegations in paragraph 144.

145.     The first and second sentences of paragraph 145 contain legal conclusions to which no response is required.  The Grace Defendants deny the remaining allegations in paragraph 145.

146.     The Grace Defendants deny the allegations in paragraph 146.

147.     Paragraph 147 contains legal conclusions to which no response is required.

148.     The Grace Defendants deny the allegations in paragraph 148.

149.     The Grace Defendants deny the allegations in paragraph 149.

150.     Paragraph 150 contains legal conclusions to which no response is required.

151.     The Grace Defendants deny the allegations in paragraph 151.

152.     The Grace Defendants deny the allegations in paragraph 152.

153.     The Grace Defendants deny the allegations in paragraph 153.

154.     The Grace Defendants deny the allegations in paragraph 154.

155.     The Grace Defendants deny the allegations in paragraph 155.

## COUNT II

**Failure to Monitor the Investment and Benefits Committee Defendants and State Street Provide them with Accurate Information (Breaches of Fiduciary Duties in Violation of ERISA § 404 by Director Defendants)**

156.     The Grace Defendants incorporate by reference their responses to the previous paragraphs of the Evans Complaint as if fully set forth herein.

157.     The Grace Defendants deny the allegations in paragraph 157.

158.     The Grace Defendants admit that the Board held the authority to appoint certain fiduciaries, but deny the remaining allegations in paragraph 158.

159.     The Grace Defendants deny the allegations in paragraph 159.

160.     Paragraph 160 contains legal conclusions to which no response is required.

161.     The Grace Defendants deny the allegations in paragraph 161.

162.    The Grace Defendants deny the allegations in paragraph 162.

163.    The Grace Defendants deny the allegations in paragraph 163.

164.    The Grace Defendants deny the allegations in paragraph 164.

165.    The Grace Defendants deny the allegations in paragraph 165.

## COUNT III

**Failure to Provide Complete and Accurate Information to Plan Participants
and Beneficiaries (Breaches of Fiduciary Duties in Violation of ERISA §§ 404
and 405 by the Investment and Benefits Committee, Administrative
Committee and the Director Defendants)**

166.    The Grace Defendants incorporate by reference their responses to the previous

paragraphs of the Evans Complaint as if fully set forth herein.

167.    The Grace Defendants deny the allegations in paragraph 167.

168.    The Grace Defendants deny the allegations in paragraph 168.

169.    Paragraph 169 contains legal conclusions to which no response is required.  To

the extent it may be construed to include factual allegations, the Grace Defendants deny those

allegations.

170.    The Grace Defendants deny the allegations in paragraph 170.

171.    The Grace Defendants deny the allegations in paragraph 171.

172.    The Grace Defendants deny the allegations in paragraph 172.

173.    The Grace Defendants deny the allegations in paragraph 173.

174.    The Grace Defendants deny the allegations in paragraph 174.

175.    The Grace Defendants deny the allegations in paragraph 175.

176.    The Grace Defendants deny the allegations in paragraph 176.

177.    The Grace Defendants deny the allegations in paragraph 177.

## COUNT IV

### Breach of Fiduciary Duty to Avoid Conflicts of Interest (Breaches of Fiduciary Duties in Violation of ERISA §§ 404 and 405 by All Defendants)

178.    The Grace Defendants incorporate by reference their responses to the previous paragraphs of the Evans Complaint as if fully set forth herein.

179.    The Grace Defendants deny the allegations in paragraph 179.

180.    Paragraph 180 contains legal conclusions to which no response is required.

181.    The Grace Defendants deny the allegations in paragraph 181.

182.    The Grace Defendants deny the allegations in paragraph 182.

183.    The Grace Defendants deny the allegations in paragraph 183.

184.    The Grace Defendants deny the allegations in paragraph 184.

### SECTION 404(c) DEFENSE INAPPLICABLE

185.    The Grace Defendants deny the allegations in paragraph 185.

186.    The Grace Defendants deny the allegations in paragraph 186.

187.    Paragraph 187 contains legal conclusions to which no response is required.

188.    The Grace Defendants deny the allegations in paragraph 188.

189.    Paragraph 189 contains legal conclusions to which no response is required.  To the extent paragraph 189 may be construed to include factual allegations, the Grace Defendants deny those allegations.

190.    The Grace Defendants deny the allegations in paragraph 190.

### CAUSATION

191.    The Grace Defendants deny the allegations in paragraph 191.

192.    The Grace Defendants deny the allegations in paragraph 192.

193.    The Grace Defendants deny the allegations in paragraph 193.

194.   The Grace Defendants deny the allegations in paragraph 194.

## REMEDY FOR BREACHES OF FIDUCIARY DUTY

195.   The Grace Defendants deny the allegations in paragraph 195.

196.   The Grace Defendants deny the allegations in paragraph 196.

197.   Paragraph 197 contains legal conclusions to which no response is required.

198.   Paragraph 198 contains legal conclusions to which no response is required.  To the extent it may be construed to include factual allegations, the Grace Defendants deny those allegations.

199.   The Grace Defendants deny the allegations in paragraph 199, and specifically deny that the plaintiffs are entitled to any of the relief sought or any relief whatsoever.

200.   The Grace Defendants deny the allegations in paragraph 200.

## PRAYER FOR RELIEF

The Grace Defendants deny all of the allegations in the section beginning with the word "WHERFORE," and specifically deny that the plaintiffs are entitled to any of the relief sought, or any relief whatsoever.

The Grace Defendants further deny each and every allegation of the Evans Complaint not specifically admitted herein to be true.

## JURY DEMAND

The Grace Defendants deny that the plaintiffs are entitled to a trial by jury.

## AFFIRMATIVE DEFENSES

Without admitting that the following affirmative defenses are in fact affirmative defenses or that the Grace Defendants have the burden of proof on any of these affirmative defenses, the Grace Defendants state as follows:

### First Affirmative Defense

The Evans Complaint fails to state a claim upon which relief can be granted, in whole or in part.

### Second Affirmative Defense

The plaintiffs' claims are barred, in whole or in part, because the plaintiffs lack standing to bring this action.

### Third Affirmative Defense

The plaintiffs' claims are barred, in whole or in part, by the statute of limitations.

### Fourth Affirmative Defense

The plaintiffs' claims are barred, in whole or in part, by the doctrine of laches.

### Fifth Affirmative Defense

The plaintiffs' claims are barred, in whole or in part, by the doctrines of estoppel, waiver, release, ratification, and/or acquiescence.

### Sixth Affirmative Defense

The plaintiffs, and each of them, have failed to exhaust their administrative remedies.

### Seventh Affirmative Defense

The plaintiffs' claims are barred, in whole or in part, because some or all of the Grace Defendants were not fiduciaries of the Plan.

### Eighth Affirmative Defense

The plaintiffs' claims are barred, in whole or in part, because the Grace Defendants were not performing a fiduciary function with respect to the conduct alleged in the Evans Complaint.

## Ninth Affirmative Defense

The plaintiffs' claims are barred, in whole or in part, because to the extent the Grace Defendants were fiduciaries of the Plan, their limited fiduciary responsibilities did not include the matters complained of in the Evans Complaint, and the Grace Defendants did not breach their fiduciary duties as to those responsibilities.

## Tenth Affirmative Defense

The plaintiffs' claims are barred, in whole or in part, because they have failed to overcome the presumption that the Grace Defendants acted consistently with their fiduciary duties under ERISA when they acted in accordance with the terms of the Plan.

## Eleventh Affirmative Defense

The plaintiffs' claims are barred, in whole or in part, to the extent they concern matters of plan design and/or settlor functions.

## Twelfth Affirmative Defense

The plaintiffs' claims are barred, in whole or in part, because the alleged fiduciary conduct at issue in the Evans Complaint was performed, in whole or in part, by an independent entity for which the Grace Defendants are not responsible and for which the Grace Defendants cannot be held liable.

## Thirteenth Affirmative Defense

The plaintiffs' claims are barred, in whole or in part, because any losses or damages alleged by the plaintiffs were not caused by any alleged breach of fiduciary duty by the Grace Defendants or any other act or omission by the Grace Defendants.

### Fourteenth Affirmative Defense

The plaintiffs' claims are barred, in whole or in part, because any losses or damages suffered by the plaintiffs were proximately caused by the plaintiffs' own acts and omissions, by acts or omissions by entities other than the Grace Defendants, and/or by economic causes and events not related to any alleged breaches of fiduciary duty and from matters over which the Grace Defendants had no control.

### Fifteenth Affirmative Defense

The plaintiffs' claims are barred, in whole or in part, by ERISA § 404(c), 29 U.S.C. § 1104(c).

### Sixteenth Affirmative Defense

The plaintiffs' claims are barred, in whole or in part, by plaintiffs' failure to mitigate damages.

### Seventeenth Affirmative Defense

The plaintiffs' claims are barred, in whole or in part, because any alleged statements or omissions at issue in the Evans Complaint were not made in a fiduciary capacity.

### Eighteenth Affirmative Defense

The plaintiffs' claims are barred, in whole or in part, because any alleged statements made by the Grace Defendants that may have been made in a fiduciary capacity were not false when made, were not material, and the plaintiffs cannot show that they relied on any such statements.

### Nineteenth Affirmative Defense

The plaintiffs' claims are barred, in whole or in part, because the truth of the matters complained of in the Evans Complaint was timely disseminated in the market.

### Twentieth Affirmative Defense

The plaintiffs' claims are barred, in whole or in part, because the Grace Defendants did not know, and in the exercise of reasonable care could not have known, of the existence of the facts allegedly giving rise to liability.

### Twenty-First Affirmative Defense

The plaintiffs' claims are barred, in whole or in part, by the plaintiffs' assumption of the risk.

### Twenty-Second Affirmative Defense

The plaintiffs' claims are barred, in whole or in part, to the extent they attempt to use ERISA fiduciary duties to expand the disclosure obligations under the federal securities laws and/or to impose liability arising out of or related to disclosures made or disseminated under the federal securities laws.

### Twenty-Third Affirmative Defense

The plaintiffs' allegations which give rise to their claims are not pled with sufficient particularity under the Federal Rules of Civil Procedure.

### Twenty-Fourth Affirmative Defense

The plaintiffs have received all benefits due them under the terms of the Plan.

### Twenty-Fifth Affirmative Defense

The plaintiffs' claims are barred under the doctrine of unclean hands.

### Twenty-Sixth Affirmative Defense

The plaintiffs' claims are barred, in whole or in part, because Grace stock was not an imprudent investment during the period alleged in the Evans Complaint.

### Twenty-Seventh Affirmative Defense

The plaintiffs' claims are barred to the extent they allege a failure to diversify, because nondiversification was prudent under the circumstances.

The Grace Defendants reserve the right to amend their answer and to assert additional defenses and/or to supplement, alter or change their answer and defenses upon the discovery of more definitive facts and upon the completion of its continuing investigation and discovery.

WHEREFORE, having fully answered the Evans Complaint in this matter, and denying that the plaintiffs are entitled to any relief, the Grace Defendants respectfully request that this Court enter judgment for the Grace Defendants, dismissing the Evans Complaint with prejudice and awarding the Grace Defendants their costs, attorneys' fees, and such other relief as this Court deems appropriate.

Dated:  January 24, 2006

Respectfully submitted,

*Matthew C. Hurley*

William W. Kannel (BBO# 546724)
(wkannel@mintz.com)
Donna M. Evans (BBO# 554613)
(dmevans@mintz.com)
Matthew C. Hurley (BBO# 643638)
(mchurley@mintz.com)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY and
POPEO, P.C.
One Financial Center
Boston, MA 02111
Telephone:  (617) 542-6000
Facsimile:  (617) 542-2241

- and -

Carol Connor Flowe
Caroline Turner English
Gretchen Dixon
ARENT FOX PLLC
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 857-6054
Facsimile: (202) 857-6395

*Counsel for John F. Akers, Ronald C. Cambre, Marye Anne Fox, John J. Murphy, Paul J. Norris, Thomas A. Vanderslice, H. Furlong Baldwin, Investments and Benefits Committee ("IBC"), Administrative Committee ("AC"), Brenda Gottlieb, W. Brian McGowan, Michael Piergrossi, Robert M. Tarola, Eileen Walsh, David Nakashige, Elyse Napoli, Martin Hunter, and Ren Lapadario*