**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

KERI EVANS,

                 Plaintiff,

v.

JOHN F. AKERS, *et al.*

                 Defendants.

LAWRENCE W. BUNCH, *et al.*

                 Plaintiffs,

v.

W.R. GRACE & CO., *et al.*

                 Defendants.

Consolidated as:
Case No. 04-11380-WGY

## MEMORANDUM IN SUPPORT OF STATE STREET BANK AND TRUST COMPANY'S MOTION TO DISMISS PLAINTIFFS' COMPLAINTS

State Street Bank and Trust Company ("State Street"), a defendant in the above-captioned consolidated actions, hereby respectfully moves this Court for an Order pursuant to Fed. R. Civ. P. 12(b)(6) dismissing all claims against it.[1]

---

[1] State Street Global Advisors ("SSgA"), an unincorporated division of State Street, was also named as a defendant in both complaints. This motion seeks dismissal of the claims against SSgA in both actions as well. All references to "State Street" shall, unless otherwise indicated, refer equally to SSgA.

**TABLE OF CONTENTS**

**Page**

INTRODUCTION AND BACKGROUND ................................................................. 1

FACTUAL BACKGROUND ................................................................................... 4

    A.    State Street Was Not Engaged As Investment Manager For The Plan Until December 2003, At The Tail End Of The Class Periods In Both Actions ............ 4

    B.    The Claims of Fiduciary Breach in the Evans Complaint Rest On Conduct In Which State Street Was Not Involved ............................................................. 5

    C.    The Single Claim Of Fiduciary Breach In Bunch Does Not Competently Allege Any ERISA Breach By State Street .......................................................... 9

ARGUMENT ......................................................................................................... 11

    A.    Standard of Review .............................................................................................. 11

    B.    State Street Cannot Be Held Liable Under ERISA For Breaches Of Fiduciary Duty Alleged To Have Occurred Before It Became A Fiduciary Of The Plan ......................................................................................................... 12

    C.    The Evans Complaint Contains No Allegation That State Street Breached Any Fiduciary Duties After It Became Investment Manager To The Plan ........ 14

    D.    Evans' Claims Of Co-Fiduciary Liability Also Fail Against State Street ........... 16

    E.    The Evans Complaint Must Also Be Dismissed Against State Street Because There Was No Loss To The Plan During The Period In Which State Street Was The Plan's Investment Manager ................................................ 17

    F.    The Single Bunch Claim Neither States A Cause Of Action Under ERISA Nor Can Be Sustained In Light Of The Public Record ........................................ 18

CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*Bannistor v. Ullman*, 287 F.3d 394, 405 (5th Cir. 2002) ............................................................. 13

*Beauchem v. Rockford Products*, 01 C.A. 50134, 2004 U.S. Dist. LEXIS 2091, *9
(N.D. Ill. February 6, 2004) ....................................................................................................... 12

*Beddall v. State Street Bank and Trust Co.,* 137 F.3d 12, 17 (1st Cir. 1998) ................... 4, 12, 16

*Brandt v. Grounds*, 687 F.2d 895, 898-899 (7th Cir. 1982) ....................................................... 16

*Brugos v. Nannenga*, 2:03-CV-547 RM, 2005 U.S. Dist. LEXIS 12624 (N.D. Ind.
June 24, 2004) ........................................................................................................................... 13

*Crowley v. Corning, Inc.*, 234 F. Supp. 2d 222, 230 (W.D.N.Y. 2002) ..................................... 15

*DiFelice v. U.S. Airways, Inc.*, 397 F. Supp. 2d 758, Case No. 1:04cv889, 2005
U.S. Dist. LEXIS 24914, *37 (E. D. Va. Oct. 19, 2005) ......................................................... 19

*Dura Pharmaceuticals, Inc. v. Broudo*, 125 S. Ct. 1627, 1634, 161 L.Ed.2d 577,
588 (2005) ................................................................................................................................. 18

*Feinstein v. Resolution Trust Corp.*, 942 F.2d 34,  (1st Cir. 1991) ........................................... 20

*Friend v. Sanwa Bank Cal.,* 35 F.3d 466, 469 (9th Cir. 1994) .................................................. 17

*Herrington v. Household Int'l, Inc.*, C.A. 02-C-8257, 2004 U.S. Dist. LEXIS
5461, *29-30 (N.D. Ill. Mar. 31, 2004)................................................................................... 17

*Hill v. Bellsouth Corp.*, 313 F. Supp. 2d 1361, 1368 (N. D. Ga. 2004).................................... 19

*Hunt v. Magnell*, 758 F. Supp. 1292, 1300 (D. Minn. 1991)...................................................... 17

*In re:  Cytyc Corp. Sec. Litig.*, Fed. Sec. L. Rep. (CCH) P93,225, 2005 U.S. Dist.
LEXIS 6166, *45 fn. 35 (D. Mass. March 1, 2005) .............................................................. 9, 12

*In re:  Enron Corp., Securities, Derivative & ERISA Litigation (Tittle v. Enron
Corp.)*, C.A. H-01-3913 (S.D. Tex. Aug. 30, 2002) ............................................................... 19

*In re:  Lernout & Hauspie Secs. Litig. v. Lernout*, 286 B.R. 33, 37 (Bankr. D.
Mass. 2002)............................................................................................................................... 12

*In re:  McKesson HBOC, Inc. ERISA Litig.,* C.A. C-00-20030 RMW,  2002 U.S.
Dist. LEXIS 19473, *55-56 (N.D. Cal. Sept. 30, 2002) ................................................... 17, 20

*In re:  Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 473-474 (S.D. N.Y. 2005)....................... 19

*In re:  Providian Fin. Corp. ERISA Litig.*, No. C 01-05027 CRB, 2002 U.S. Dist.
LEXIS 25676, at **3-4 (N.D. Cal. Nov. 14, 2002) ................................................................ 15

*In re:  Reliant Energy ERISA Litig.*, 336 F. Supp. 2d 646, 668-669 (S.D. Tex.
2004) ......................................................................................................................................... 18

*In re:  Schering-Plough Corp. ERISA Litig.*, 420 F.3d 231 (3rd Cir. 2005)............................... 18

*In re:  Sears, Roebuck & Co. ERISA Litigation*, C. A. 02-C-8324  2004 U.S. Dist.
LEXIS 3241, *24 (N.D. Ill. Mar. 3, 2004)............................................................................. 17

*In re:  Sprint Corp. ERISA Litig.*, 388 F. Supp. 2d 1207, 1221-1224 (D. Kan.
2004) ......................................................................................................................................... 18

*In re:  Xcel Energy, Inc.*, 312 F. Supp. 2d 1165, 1179-1180 (D. Minn. 2004)........................... 18

*Kamenstein v. Jordan Marsh Co.*, 623 F. Supp. 1109, 1111-1112 (D. Mass. 1985).................. 17

-1-

*Keach v. U.S. Trust Company, N.A.*, 240 F.Supp.2d 840, 844 (C.D. Ill. 2002)...................... 13, 19

*Kuper v. Iovenko*, 66 F.3d 1447, 1457 (6th Cir. 1995); *Stein v. Smith*, 270 F. Supp. 2d 157 (D. Mass. 2003)........................................................................................................ 18

*Lalonde v. Textron, Inc.*, 369 F.3d 1, 6-7 (1st Cir. 2004) .......................................................... 18

*Massachusetts Laborers' Health and Welfare Fund v. Philip Morris, Inc.*, 62 F. Supp. 2d 236, 240 (D. Mass. 1999), *quoting Shaw v. Digital Equip. Corp.*, 82 F. 3d 1194, 1216 (1st Cir. 1996)................................................................................ 12

*Metzler v. Graham*, 112 F.3d 207, 209 (5th Cir. 1997) .............................................................. 19

*Mira v. Nuclear Measurements Corp.,* 107 F.3d 466 (7th Cir. 1997) ......................................... 17

*Moench v. Robertson*, 62 F.3d 553, 571-572 (3d Cir. 1995) ...................................................... 18

*Springate v. Weighmasters Murphy, Inc.*, C.V. 01-03551 DT (CTx), 2001 U.S. Dist. LEXIS 25670, *19 (C.D. Cal. June 25, 2001) ............................................. 14, 15

*State St. Bank & Trust Co. v. Denman Tire Corp.*, C.A. 98-12251-RWZ, 2000 U.S. Dist. LEXIS 22659, *10 (D. Mass. Feb. 14, 2000) ....................................... 14

*Stein v. Smith*, 270 F. Supp. 2d 157 (D. Mass. 2003) .................................................................. 18

*Steinman v. Hicks*, 252 F.Supp.2d 746, 755 (C.D. Ill. 2003)............................................... 13, 17

*Steinman v. Hicks*, 352 F.3d 1101, 1106 (7th Cir. 2003); *In re: Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 473-474 (S.D. N.Y. 2005)......................................... 19

*Trustees of Automotive Employee Benefit Trust v. Haskvitz,* 784 F. Supp. 1416, 1420-21 (D. Minn. 1992) ................................................................................ 17

*Watson v. Deaconess Waltham Hospital, Caregroup, Inc.*, 298 F.3d 102 (1st Cir. 2002) .................................................................................................. 13

## STATUTES

15 U.S.C. § 78m(f)(1) ................................................................................................................ 11

29 U.S.C. § 1109(b) ................................................................................................................. 3, 4

## RULES

Fed. R. Civ. P. 12(b)(6)............................................................................................................... 1

Fed. R. Civ. P. 8(a) ...................................................................................................................... 4

## INTRODUCTION AND BACKGROUND

This action consists of two complaints, the first filed in this Court by plaintiff Keri Evans and Timothy Whipps on behalf of themselves and an alleged class of participants in and beneficiaries of the W. R. Grace & Co. Employees Savings and Investment Plan (the "Plan") and all others similarly situated (Case No. 04-11380-WGY) (the "*Evans* Action"), and the second originally brought in the United States District Court for the Eastern District of Kentucky by plaintiffs Lawrence W. Bunch, Jerry L. Howard, Sr., and David Mueller on behalf of themselves and an alleged class of participants in and beneficiaries of the same Plan (originally filed as Case No. 05-11602-MLW) (the "*Bunch* Action").[2]

The complaints in both actions allege breaches of fiduciary duty under the Employee Retirement Income Savings Act ("ERISA") against a number of overlapping defendants (including State Street) in connection with the investment in, holding and eventual divestment of W. R. Grace & Co. common stock ("Grace Stock") by the Plan.[3]

---

[2] By Order dated June 21, 2005, the United States District Court for the Eastern District of Kentucky transferred venue of the *Bunch* Action to this Court. Op. & Order, July 21, 2005. By Order dated August 23, 2005, this Court consolidated the *Bunch* Action with the *Evans* Action. Paperless Order, August 23, 2005. State Street files this motion to dismiss all claims against it in both actions.

[3] The complaints in the two actions are mirror images. In *Evans* the defendants are accused of breaching fiduciary duties under ERISA for *investing* and *permitting Plan participants to invest* Plan assets in a fund comprised of Grace Stock and for *failing to divest* the Plan of its holdings in Grace Stock prior to April 2004. In *Bunch* virtually the same group of defendants are accused of breaching ERISA fiduciary duties for *divesting* the Plan of holdings of Grace Stock beginning in February 2004 and for *preventing* Plan participants from making further investments of their individual account balances into Grace Stock in March 2003. *Compare Evans* Action, First Amended Complaint for Violations of the Employee Retirement Income Security Act of 1974, filed Dec. 19, 2005 (the "*Evans* Complaint") ¶¶ 89-94 *with Bunch* Action, Class Action Complaint for Breach of Fiduciary Duty and Jury Demand, filed Oct. 26, 2004 (the *Bunch* Complaint"), ¶¶ 10-15.

Neither complaint states a claim against State Street. State Street was not involved with the Plan in any capacity throughout most of the time periods covered by the allegations in the complaints.[4] State Street was retained as an investment manager in December 2003 by the Investment and Benefits Committee of W. R. Grace & Co. and the debtors and debtors-in-possession in the W. R. Grace & Co. proceedings under Chapter 11 of the United States Bankruptcy Code pending in the United States Bankruptcy Court for the District of Delaware solely to evaluate the appropriateness of the Plan's retention or sale of Grace Stock. Approximately two months later, State Street determined that the Plan should be divested of the Grace Stock and commenced that sale, which was completed in April 2004.

The claims against State Street in *Evans* must be dismissed because the conduct alleged in that action (that the Plan fiduciaries violated ERISA by continuing to invest Plan assets in Grace Stock and offering Grace Stock as a Plan investment during the purported class period while allegedly failing to provide adequate information to participants) occurred *before* State Street became an investment manager for the Plan in December 2003 and did not involve acts or omissions of State Street. Under Section 409 of ERISA, "No fiduciary shall be liable with respect to a breach of fiduciary duty under this title if such breach was committed before he became a fiduciary …." 29 U.S.C. § 1109(b). Indeed, it was State Street who, after being retained to evaluate the Plan's holdings of Grace Stock and after conducting an appropriate review, recommended and carried out the divestment of Grace Stock from the Plan. State Street

---

[4] The purported class in *Evans* consists of all Plan participants and beneficiaries at any time between July 1, 1999 and April 19, 2004 whose accounts included investments in Grace Stock. *Evans* Complaint ¶ 89. The purported class in *Bunch* consists of all Plan participants and entities who owned shares of Grace Stock through the Plan during the period September 1, 1976 to September 15, 2004. *Bunch* Complaint, ¶ 61.

cannot be held liable for breach of fiduciary duty for recommending and carrying out the very action that the plaintiffs in *Evans* assert the Plan's fiduciaries were duty-bound to take.[5]

An additional, independent grounds for dismissal of *Evans* exists here, because during the period in which State Street acted as an investment manager, the Plan suffered no loss, and thus the plaintiffs can allege no harm resulting from any conduct by State Street.

The single claim against State Street in *Bunch* must be dismissed because it depends on a proposition that finds no support in ERISA: that fiduciaries are flatly prohibited, in the exercise of their duty of prudence, from divesting an ERISA "401(k)" plan of assets they deem no longer appropriate for the plan to hold, including assets that plan participants previously elected to invest in company stock. Indeed, as the claims in the *Evans* complaint illustrate, plan fiduciaries face significant potential liability for failing to take such action when prudence so dictates. Because ERISA cannot be read to place plan fiduciaries in such an impossible position, the theory of liability on which *Bunch* is premised does not state a claim. Even if ERISA permitted a cause of action of the sort contemplated in *Bunch,* this complaint fails to properly plead any breach of fiduciary duty by State Street. Specifically, the portion of the *Bunch* complaint entitled "Defendants' Breaches of Fiduciary Duty" (paragraphs 51-60) consists of little more than a recitation of various duties allegedly arising under ERISA, followed by self-serving assertions and legal conclusions without specific factual support. This manner of pleading fails to meet the standards of Fed. R. Civ. P. 8(a) that a complaint must contain "a short and plain statement of the

---

[5] While this Court, in evaluating the claims on a motion to dismiss, assumes that all well-pleaded facts are true, State Street does not intend to imply, and has no reason to believe, that the conduct of the other Defendants, either pre-dating or following State Street's involvement, breached any fiduciary duty under ERISA.

claim showing that the pleader is entitled to relief" and is fatal to plaintiffs' claim here.  Finally,

to the extent that the *Bunch* complaint asserts liability against State Street for alleged self

dealing, those conclusory allegations are flatly refuted by the public record.  Accordingly, the

*Bunch* Complaint fails to state a permissible claim against State Street and must be dismissed on

that ground as well.

## **FACTUAL BACKGROUND**

### A.    **State Street Was Not Engaged As Investment Manager For The Plan Until December 2003.**

As alleged in both the *Evans* and *Bunch* complaints, Grace hired State Street to be

investment manager of the Plan effective December 15, 2003.  *Evans* Complaint ¶ 86; *Bunch*

Complaint ¶ 12.  *See also Evans* Complaint, Exhibit U (announcing retention of State Street as

investment manager effective December 15, 2003).[6]  On February 27, 2004, State Street took

steps to begin a divestment of the Plan's holdings of Grace stock.  *Evans* Complaint ¶ 71 and

Exh. R thereto; *Bunch* Complaint ¶ 13.  This divestment was completed on April 12, 2004.

*Evans* Complaint ¶ 73 and Exh. S thereto; *Bunch* Complaint ¶ 14.  The complaints contain no

allegation that State Street played any role in decisions to invest or hold Plan assets in Grace

Stock, manage Plan assets, or disseminate information regarding the Plan's investments – the

core allegations on which *Evans* bases its claims of fiduciary breach – before it was retained.

Nor does the *Bunch* complaint specify how State Street's involvement in the divestment of Grace

Stock from the Plan constitutes a breach of any duty under ERISA.

---

[6] In considering this motion, the Court can review documents appended to the complaint as
exhibits and referenced or incorporated by reference therein.  *Beddall v. State Street Bank and
Trust Co.,* 137 F.3d 12, 17 (1st Cir. 1998).

-4-

**B.** **The Claims of Fiduciary Breach in the *Evans* Complaint Rest On Conduct In Which State Street Was Not Involved.**

The *Evans* Complaint, following a familiar pattern, alleges breaches by "Defendants" of fiduciary duty by those involved in Plan management and administration during the purported "Class Period" (July 1, 1999 to April 19, 2004). Specifically, Plaintiffs allege that "Defendants allowed the heavy imprudent investment of Plan assets in Grace securities throughout the Class Period despite the fact that they clearly knew or should have known that such investment was imprudent due to, as explained below in detail, the perilous condition of the Company." *Evans* Complaint ¶ 9. Among the "facts" that "Defendants" knew or "should have known" were "(1) setbacks in earlier asbestos litigation, (2) the rising number of newly-filed asbestos-related suits during the Class Period and (3) the Company's under-funding of its asbestos litigation reserves/funds." *Evans* Complaint ¶ 9.

Aside from being identified and alleged to be a fiduciary, the *Evans* Complaint rarely mentions State Street and alleges almost no actions by State Street regarding this alleged "imprudent investment." The sum of the allegations of actual actions by State Street are that:

- State Street sent a notice to participants in the Plan on January 26, 2004, advising each "to consider carefully the advisability of his or her continued investment in the Grace Stock Fund[.]" *Evans* Complaint ¶ 69 and Exh. P thereto.

- On February 27, 2004, State Street "determined that it would be prudent to begin complete divestment of the Plan's holdings of Grace common stock." *Evans* Complaint ¶¶ 70, 121 and Exh. Q thereto. On this date, sent a communication to participants in the Plan explaining that it had determined that holding all of the Shares of Grace Stock in the Grace Stock Fund was "no longer consistent with ERISA[.]" *Evans* Complaint ¶ 71 and Exh. R thereto. This

-5-

communication also explained why the Plan documents did not "prevent State Street from selling" the Grace Stock and detailed the participants' option for reinvesting their "current account balance in the Grace Stock Fund[.]" *Evans* Complaint ¶ 72 and Exh. R thereto.

•     As announced in a Grace press release, on April 12, 2004, State Street sold a substantial remainder of all Grace shares to a single buyer at $3.50 per share.[7] *Evans* Complaint ¶ 73 and Exh. S thereto.

•     The 2004 Summary Plan Description explained that as of April 15 and 16, 2004, all the stock within the Grace Stock Fund was sold at the direction of State Street and that after a short delay for a settlement period all proceeds from the sale were deposited into the plan's Fixed Income Fund and that the Grace Stock Fund ceased to exist. *Evans* Complaint ¶ 74.

The remaining allegations are directed generally against "Defendants," but it is plain from the face of the complaint that these allegations involve conduct by others (*e.g.,* decisions to invest Plan assets in Grace Stock and the dissemination of information regarding the company) in which State Street did not participate, occurring before State Street was engaged as investment manager in December 2003.  *See, e.g.,* Complaint ¶¶ 9, 125 & 129 (addressing "Defendants" actions in allowing investment of Plan assets in Grace Stock and failing to divest the Plan of Grace Stock).

---

[7] The *Evans* Complaint, amended since the time these actions were consolidated, now refers to an allegation in the *Bunch* Complaint – entirely refuted by public Securities and Exchange Commission ("SEC") records – that State Street sold those shares to itself for a profit.  *See Evans* Complaint, note 12 and ¶ 182.  These unsupported and insupportable allegations are discussed below, in connection with the grounds for dismissing the *Bunch* Complaint.

The four counts in the *Evans* complaint (only two of which are directed against State Street) assert liability for conduct that occurred well before State Street became investment manager to the Plan and in which State Street had no role.[8]

Count I ("Failure to Prudently and Loyally Manage the Plan's Assets") is directed against all Defendants and alleges that during the Class Period "Defendants knew or should have known that Grace securities were not suitable and appropriate investments for the Plan as described herein." *Evans* Complaint ¶ 148. The *Evans* Complaint further alleges that "at times during the Class Period, these fiduciaries permitted Company matching/employer contributions to be made in Grace securities, including Grace preferred common stock in the Grace ESOP Stock Fund." *Evans* Complaint ¶ 149. The *Evans* Complaint then alleges that "during the Class Periods, despite their knowledge of the imprudence of the investment, the Defendants failed to take ***any meaningful*** steps to prevent the Plan, and indirectly the Plan's participants and beneficiaries, from suffering losses as a result of the Plan's investment in the Grace securities[.]" *Id.* (emphasis in original). Count I also alleges that defendants "breached their co-fiduciary obligations[.]" *Evans* Complaint ¶ 151. As noted, State Street was not retained until December 2003 (in the final few months of the alleged Class Period in *Evans*) and within months after its engagement and following its evaluation of the Plan's holdings, State Street recommended that the Plan adopt the policy of no longer investing in Grace securities, which the *Evans* Complaint states would have been the recommendation of a "reasonably prudent fiduciary[.]" *Evans*

---

[8] Count II ("Failure to Monitor the Investment and Benefits Committee Defendants and State Street Provide Them with Accurate Information") is only directed at the "Director Defendants." Count III ("Failure to Provide Complete and Accurate Information to Plan Participants and Beneficiaries") is directed at the "Investment and Benefits Committee, Administrative Committee and the Director Defendants."

Complaint ¶ 146.  In other words, State Street took the steps that *Evans* alleges that the

"Defendant" fiduciaries were obligated to take under ERISA, and Count I states no claim against

State Street for having done so.

Count IV ("Breach of Duty to Avoid Conflicts of Interest") is directed at all defendants

and alleges that they all "breached their duty to avoid conflicts of interest and to promptly

resolve them[.]"  *Evans* Complaint ¶ 181.  Count IV alleges that the failure to resolve their

conflicts of interest included failing to "timely engage independent fiduciaries"; failing to "notify

appropriate federal agencies . . . of the facts and transactions which made Grace securities an

unsuitable investment for the Plan"; failing to "take such other steps as were necessary to ensure

that participants' were loyally and prudently served"; failing to "draw[] attention to the

Company's inappropriate practices"; and "placing the interests of the Company above the

interest of the participants[.]"  *Id*.  Although ostensibly brought against State Street, none of

these allegations could possibly apply to State Street's actions.  As noted, State Street was not

retained until December 2003 (in the final few months of the alleged Class Period in *Evans*) and

within months after its engagement and following its evaluation of the Plan's holdings, State

Street recommended divestment of Grace stock from that the Plan.[9]

Finally, the *Evans* Complaint alleges no loss to the Plan that is or could be attributed to

the actions of State Street following its engagement as investment manager effective December

15, 2003.  The market value of Grace Stock *increased* during that portion of the alleged Class

Period, from $2.50 on December 8, 2003, the date Grace announced that State Street would be

---

[9] As noted in footnote 7, *supra,* the *Evans* Complaint seeks to assert a "conflict of interest" claim against State Street in Count IV, using specious allegations of "self-dealing" from the *Bunch* Action.  *See Evans* Complaint, ¶ 182.  There are no *facts* to support these allegations, and they are entirely refuted by the SEC records discussed in detail below.

retained as investment manager for the Plan to $3.03 on April 19, 2004, the last day of the alleged Class Period.[10]  State Street sold the final block of Grace Stock to a single buyer on April 12, 2004 for $3.50 per share.  *Evans* Complaint ¶ 73; *Bunch* Complaint ¶ 14.  This price was higher than any closing price for Grace Stock throughout the month of April 2004.  *See* Grace Stock Price Chart, accompanying State Street's Request for Judicial Notice.

**C.     The Single Claim Of Fiduciary Breach In *Bunch* Does Not Competently Allege Any ERISA Breach By State Street.**

The complaint in *Bunch,* while not a model of clarity, appears to charge that ERISA prohibits the very action that *Evans* alleges is required – *i.e.,* complete divestment of Grace Stock from the Plan as soon as that investment purportedly became imprudent.  The ten paragraphs of the *Bunch* complaint entitled "Defendants' Breaches Of Fiduciary Duty" contain primarily generalized enumerations of alleged fiduciary duties under ERISA and conclusory statements that "Defendants" breached "their duties of loyalty, due care and prudence."  *Bunch* Complaint ¶¶ 51-60.  The only allegations that appear to implicate State Street in any alleged "breaches" are that, in divesting the Plan of Grace Stock, "Defendants deprived all participants of the opportunity to exercise control over their own investments in the Grace Stock Fund" and that "Defendants transferred all management of the Grace Stock Fund to State Street, whereafter upon information and belief, the stock was sold not to a disinterested third party, but rather to State Street or to an affiliate."  *Bunch* Complaint ¶¶ 58-59.

---

[10] The Court can take judicial notice of the value of publicly traded securities for purposes of a motion to dismiss.  *In re:  Cytyc Corp. Sec. Litig.*, Fed. Sec. L. Rep. (CCH) P93,225, 2005 U.S. Dist. LEXIS 6166, *45 fn. 35 (D. Mass. March 1, 2005) (holding that "it is appropriate to take judicial notice of the sales price [of stock] during the class period on a motion to dismiss.");  *See* State Street's Request for Judicial Notice in Support of Its Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaints.

As discussed below, the ERISA case law runs in directly the opposite direction from the premise apparently underlying the primary substantive fiduciary breach insufficiently alleged in these paragraphs: ERISA vests those responsible for managing plan assets with some degree of discretion and the obligation to use due care when exercising that discretion. In the case of a plan (such as the one here) the terms of which instruct investment in company stock, many courts have held that the fiduciaries' decision to follow those instructions enjoys a presumption of prudence. However, the case law suggests that those fiduciaries face the risk of substantial, *personal* liability for failing to exercise reasonable care and overriding those instructions to divest the plan of company stock when retaining the investment would be deemed imprudent. Indeed, the entire premise of the *Evans* action is that Plan fiduciaries were required by ERISA to do so in this case. *See Evans* Complaint, ¶ 129. *Bunch*'s opposite position – that plan fiduciaries *breach* ERISA when exercising prudence to divest the plan of company stock because to do so "deprives" participants of "control" over their investment -- simply finds no support in the law. The *Bunch* complaint fails to allege specifically and competently any fiduciary breach by State Street, fails to meet the standards of Fed. R. Civ. P. 8(a) and must be dismissed under Fed. R. Civ. P. 12(b)(6).

Finally, the unsubstantiated allegation in *Bunch,* made "upon information and belief," that upon divestment the Grace Stock was sold to "State Street or to an affiliate" is a bald, unsupported assertion that is flatly contradicted by the public record. State Street, as an institutional investment manager managing over $100 million in securities, is required by Section 13(f) of Securities Exchange Act of 1934, as amended, to file a Form 13F quarterly with the SEC disclosing its holdings. *See* 15 U.S.C. § 78m(f)(1); *see also* Declaration of Elizabeth Shea ("Shea Decl."), ¶ 3, filed as Exhibit A herewith. State Street's Form 13F filings with the

-10-

SEC demonstrate that, by the end of the Second Quarter of 2004 (*i.e.,* by June 2004), the listed

assets for State Street did *not* include the millions of shares of Grace Stock previously held in,

but subsequently sold out of, the Grace Plan.[11]  If State Street (as alleged without any support by

the *Bunch* Complaint) had purchased those securities from the Plan, the millions of shares of

Grace Stock divested from the Plan in the First Quarter of 2004 would have appeared as an asset

of State Street on the Form 13F covering the Second Quarter of 2004.  Shea Decl., ¶ 7.  They do

not.

## ARGUMENT

As the foregoing shows, neither *Evans* nor *Bunch* properly alleges any breach of ERISA

by State Street, and the claims against it in both complaints must therefore be dismissed pursuant

to Fed. R. Civ. P. 12(b)(6).

## A.     Standard of Review.

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a court must take all

well-pleaded facts as true, but it need not credit a complaint's 'bald assertions or legal

conclusions.'"  *Massachusetts Laborers' Health and Welfare Fund v. Philip Morris, Inc.*, 62 F.

Supp. 2d 236, 240 (D. Mass. 1999), *quoting Shaw v. Digital Equip. Corp.*, 82 F. 3d 1194, 1216

(1st Cir. 1996).  "Conclusions that are not supported by the facts that are alleged in the complaint

'deserve no deference.'  More particularly, summary legal conclusions that are contradicted or

'belied by the facts alleged' maybe disregarded."  *Id*. (internal citations omitted).

---

[11] The Court can take judicial notice of public filings made with the U.S. Securities and Exchange Commission ("SEC").  *In re:  Lernout & Hauspie Secs. Litig. v. Lernout*, 286 B.R. 33, 37 (Bankr. D. Mass. 2002) ("This Court may take judicial notice of this SEC filing pursuant to Fed. R. Evid. 201, which defendants had the opportunity to address."); *See* State Street's Request for Judicial Notice in Support of Its Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaints.

"When a complaint's factual allegations are expressly linked to – and admittedly dependent upon – a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it deciding a motion to dismiss under Rule 12(b)(6)." *Beddall v. State Street Bank and Trust Co.*, 137 F. 3d 12, 17 (1st Cir. 1998) . Moreover, on a motion to dismiss, the Court can appropriately take judicial notice of the share price of publicly-traded stock during the purported class period, *In re: Cytyc Corp. Sec. Litig.*, Fed. Sec. L. Rep. (CCH) P93,225, 2005 U.S. Dist. LEXIS 6166, *45 fn. 35 (D. Mass. March 1, 2005), as well as public filings made with the SEC. *In re: Lernout & Hauspie Secs. Litig. v. Lernout*, 286 B.R. 33, 37 (Bankr. D. Mass. 2002) ("This Court may take judicial notice of this SEC filing pursuant to Fed. R. Evid. 201, which defendants had the opportunity to address."). Applying these standards to the two complaints in this consolidated action, it is clear that neither properly states a claim against State Street.

B.    **State Street Cannot Be Held Liable Under ERISA For Breaches Of Fiduciary Duty Alleged To Have Occurred Before It Became A Fiduciary Of The Plan.**

Plaintiffs in *Evans* seek relief under Section 409(a), which provides that a fiduciary may be held liable for breaches of fiduciary duty. *See Evans* Complaint ¶¶ 97-98. However, Section 409(b) of ERISA specifically declares that "[n]o fiduciary shall be liable with respect to a breach of fiduciary duty under this title if such breach was committed before he became a fiduciary …." 29 U.S.C. § 1109(b); *see also Beauchem v. Rockford Products*, 01 C.A. 50134, 2004 U.S. Dist. LEXIS 2091, *9 (N. D. Ill. February 6, 2004) ("ERISA expressly states no fiduciary shall be liable for a breach committed before he became a fiduciary or after he ceased to be one. 29 U.S.C. § 1109(b). Allowing a fiduciary to be liable for failing to correct a breach committed by

prior fiduciaries would destroy the protection of section 1109(b).").[12]  Accordingly, the Evans

Complaint cannot state a claim for breach of fiduciary duty against State Street for events that

are alleged to have occurred *before* State Street became an investment manager to the Plan on

December 15, 2003.

Courts, citing Section 409(b), regularly reject claims against alleged fiduciaries asserting

liability for conduct that occurred before the defendants acquired fiduciary status.  *See e.g.,*

*Bannistor v. Ullman*, 287 F.3d 394, 405 (5th Cir. 2002) (declining to find "the Officer Appellants

liable . . . because they had no such power, and they assumed their duties long after the loan was

implemented.").[13]

In *Brugos v. Nannenga*, 2:03-CV-547 RM, 2005 U.S. Dist. LEXIS 12624 (N. D. Ind.

June 24, 2004), two fiduciaries, after being sued for breaches of fiduciary duties to a pension

plan, brought claims for indemnification and contribution against the plan trustee.  The court

dismissed the action against the trustee because the underlying claim for which the fiduciaries

sought indemnification and contribution was based on alleged breaches occurring during the

initial stages of the transaction at issue, before the trustee became a fiduciary of the plan.  *Id.* at

13-14.  Because under Section 409(b) there were no facts that could make the trustee liable for

---

[12] The First Circuit's holding in *Watson v. Deaconess Waltham Hospital, Caregroup, Inc.*, 298 F.3d 102 (1st Cir. 2002) does not alter this fundamental provision of ERISA.  In *Watson*, the First Circuit merely held that Section 409(b) does not preclude a later fiduciary from expressly assuming by contract the ERISA obligations of a former fiduciary.  *Id.* at 110-111.  There is no allegation here that State Street assumed the liabilities of a former fiduciary of the Plan.

[13] *See also Steinman v. Hicks*, 252 F.Supp.2d 746, 755 (C. D. Ill. 2003) (holding that certain defendants "cannot be held liable for fiduciary breaches because they "did not become members of the ADM Plans' Committee until after the MMC Plan was terminated and its assets distributed,"); *Keach v. U.S. Trust Company, N.A.*, 240 F.Supp.2d 840, 844 (C. D. Ill. 2002) ("ERISA makes clear that no fiduciary can be held liable for any breach of fiduciary duty that occurred either before he became a fiduciary or after he ceased to be a fiduciary.").

-13-

fiduciary breaches occurring before the trustee became involved with the plan, the court dismissed the claim. *Id*.

As detailed above, the three counts of fiduciary breach alleged in the *Evans* Complaint are directed to purported conduct dating from the beginning of the purported Class Period (July 1, 1999), some four and a half years before State Street was appointed as investment manager. The complaint contains no allegation -- nor could it allege -- that State Street was involved in that purported conduct. Accordingly, the claims of fiduciary breach against State Street must be dismissed. *See State Street Bank and Trust Co. v. Denman Tire Corp.*, C.A. 98-12251-RWZ, 2000 U.S. Dist. LEXIS 22659, *10 (D. Mass. Feb. 14, 2000) (holding that plaintiff had "no claim against State Street for conduct that occurred prior to the acquisition" because before that State owed plaintiff "no fiduciary, contractual, or statutory duties"), *aff'd,* 240 F.3d 83 (1st Cir. 2001). *See also Springate v. Weighmasters Murphy, Inc.*, C.V. 01-03551 DT (CTx), 2001 U.S. Dist. LEXIS 25670, *19 (C. D. Cal. June 25, 2001) (holding that even if the alleged conduct "constituted fiduciary acts," they "occurred after the alleged failure to diversify Plan assets" and "[t]hus Defendant could not be liable for this alleged breach of fiduciary duty.").

**C.    The *Evans* Complaint Contains No Allegation That State Street Breached Any Fiduciary Duties After It Became Investment Manager To The Plan.**

State Street was engaged as an investment manager effective December 15, 2003 to evaluate the Plan's holdings of Grace Stock and determine whether any action should be taken to divest the Plan of those holdings. Within two months (*i.e.,* by February 27, 2004), State Street recommended a "complete divestment" of the Plan's holdings of Grace Stock. Evans Complaint ¶ 71; *see also* Bunch Complaint ¶ 13. The *Evans* Complaint makes no allegation that this recommendation was imprudent, or that State Street breached any fiduciary duty under ERISA in

-14-

carrying out the terms of its engagement. Thus, even if State Street could be deemed a fiduciary

of the Plan after it was retained in December 2003, there is no allegation that State Street

engaged in any of the alleged acts – failure to disseminate adequate information, imprudent

investment in Grace Stock dating from the beginning of the Class Period, and failure to take acts

to divest the Plan of Grace Stock at that time – on which *Evans* bases its claims of breach. *See*

*Crowley v. Corning, Inc.*, 234 F. Supp. 2d 222, 230 (W. D. N. Y. 2002) (explaining that the

complaint made "no specific allegations that the Committee members actually possessed the

'adverse information'" and thus its "conclusory allegations and lacking any factual assertions for

support" failed to state a claim). *See also Springate v. Weighmasters Murphy, Inc., supra* .

To the extent *Evans* seeks to sweep State Street within the scope of its claims by asserting

them against all "Defendants," without differentiation, this generalized manner of pleading fails

the basic requirements of Fed. R. Civ. P. 8(a), and dismissal is warranted. Specifically, given

that the *Evans* claims against "Defendants" are, on their face, directed to alleged conduct that

occurred long before State Street was engaged as investment manager and in which State Street

is not alleged to have participated, more is required to place State Street on notice of the nature

of the claims against it. *See, e.g., In re: Providian Fin. Corp. ERISA Litig.*, No. C 01-05027

CRB, 2002 U.S. Dist. LEXIS 25676, at **3-4 (N. D. Cal. Nov. 14, 2002) (dismissing complaint

because "plaintiffs have lumped the various classes of defendants into an undifferentiated mass

and alleged that all of them violated all of the asserted fiduciary duties. The resulting cause of

action is so general that it fails to put the various defendants on notice of the allegations against

them.").

**D.**     *Evans'* **Claims Of Co-Fiduciary Liability Also Fail Against State Street.**

For the same reasons, State Street cannot be held liable as a "co-fiduciary" under Section 405(a) of ERISA, 29 U.S.C. § 1105(a) as alleged in Count I of the *Evans* Complaint.  Co-fiduciary liability is a "shorthand rubric under which one ERISA fiduciary may be liable for the failings of another fiduciary."  *Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 18 (1st Cir. 1998) .  A party may be liable as a "co-fiduciary" if the party is a fiduciary and either (1) knowingly participates in or conceals another fiduciary's breach, (2) in the exercises of his own fiduciary functions enables another fiduciary to commit a breach, or (3) learns about such a breach and fails to make reasonable efforts to remedy it.  *Id.* at 18-19 (*citing* 29 U.S.C. § 1105(a)).

Here, there is no allegation that State Street knowingly participated in or concealed another fiduciary's breach, enabled another's fiduciary breach, or learned about and failed to remedy such a breach.  Moreover, there is no allegation, and could be no allegation, that State Street failed, in the exercise of any fiduciary responsibility, to prevent the conduct on which *Evans* bases its primary claims of fiduciary breach:  the continued investment in Grace Stock during the period (beginning from the start of the Class Period) in which that investment is alleged to have become imprudent.  *See generally Brandt v. Grounds*, 687 F.2d 895, 898-899 (7th Cir. 1982) (rejecting co-fiduciary liability under 29 U.S.C. § 1105(a)(2) "since the statute only creates co-fiduciary liability for violations of 29 U.S.C. § 1104(a)(1) which occur in the fiduciary's performance of its 'specific responsibilities which give rise to [its] status as a fiduciary.'").  Accordingly, no claim of "co-fiduciary liability" under Section 405 of ERISA can be sustained against State Street, and Count III of the *Evans* Complaint must be dismissed.

-16-

*Evans* does not cure this defect by purporting to direct these claims generally against all "Defendants," a technique that also fails the requirements of Fed. R. Civ. P. 8(a).  *See, e.g., In re: Sears, Roebuck & Co. ERISA Litigation*, C. A. 02-C-8324  2004 U.S. Dist. LEXIS 3241, *24 (N.D. Ill. Mar. 3, 2004) (dismissing co-fiduciary claim where plaintiffs "impermissibly lumped all Defendants together without explaining how a particular Defendant enabled another fiduciary to commit a breach or took no reasonable effort to remedy a knowledge or the breach.").[14]

**E.    The *Evans* Complaint Must Also Be Dismissed Against State Street Because There Was No Loss To The Plan During The Period In Which State Street Was The Plan's Investment Manager.**

To establish liability for breach of fiduciary duty under Section 409 of ERISA, a plaintiff must show a causal nexus between the breach of fiduciary duty alleged and losses incurred by the Plan.  *See Mira v. Nuclear Measurements Corp.,* 107 F.3d 466 (7th Cir. 1997) (holding that a trustee is liable for a breach of fiduciary duty only to the extent that the breach causes losses).[15]

---

[14] *See also, Herrington v. Household Int'l, Inc.*, C.A. 02-C-8257, 2004 U.S. Dist. LEXIS 5461, *29-30 (N. D. Ill. Mar. 31, 2004) (holding that conclusory allegations did "not even meet the liberal requirements under the notice pleading standard" because there were "not sufficient facts to provide Defendants with notice of the operative facts which would pertain to a co-fiduciary liability claim."); *In re:  McKesson HBOC, Inc. ERISA Litig.*, C.A. C-00-20030 RMW,  2002 U.S. Dist. LEXIS 19473, *55-56 (N. D. Cal. Sept. 30, 2002) (dismissing co-fiduciary claim where the plaintiffs' allegations were insufficient to put each defendant on notice of what he, she, or it had done to give rise to liability).

[15] *See also, Friend v. Sanwa Bank Cal.,* 35 F.3d 466, 469 (9th Cir. 1994) (recognizing that "ERISA holds a trustee liable for a breach of fiduciary duty only to the extent that losses to the plan result from the breach."); *Steinman v. Hicks*, 252 F. Supp. 2d 746, 760 (C.D. Ill.  2003) ("[P] roof of a causal connection . . . is required between a breach of fiduciary duty and the loss alleged.") (internal citations and quotations omitted); *Trustees of Automotive Employee Benefit Trust v. Haskvitz,* 784 F. Supp. 1416, 1420-21 (D. Minn. 1992) ("Absent a loss, plaintiffs' claim must fail, regardless of whether the trustees acted improperly.").  *See also Hunt v. Magnell*, 758 F. Supp. 1292, 1300 (D. Minn. 1991) ("allegations that particular assets declined in value are, standing alone, insufficient to state a claim of fiduciary breach under ERISA."); *Kamenstein v. Jordan Marsh Co.*, 623 F. Supp. 1109, 1111-1112 (D. Mass. 1985) (requiring an employee to establish that he was somehow prejudiced by the employer's ERISA violations).  *Cf. Dura*

As noted above, from the time State Street was retained as investment manager until the end of the alleged *Evans* Class Period, the value of the Grace Stock held in the Plan *increased* in value. Accordingly, the *Evans* Complaint contains no allegation, and could not allege, that State Street caused or contributed to any loss to the Plan. Because no causal nexus is alleged or exists between the purported Plan losses alleged in *Evans* and any conduct of State Street, the claims against State Street must be dismissed.

**F.    The Single *Bunch* Claim Neither States A Cause Of Action Under ERISA Nor Can Be Sustained In Light Of The Public Record.**

The *Bunch* claim fails against State Street for several reasons. First, the proposition underlying its claim of breach – that in recommending divestment of the Plan divest Grace Stock, "Defendants deprived all participants of the opportunity to exercise control over their own investments in the Grace Stock Fund" (*Bunch* Complaint ¶ 58) – finds no support in ERISA. Instead, as both the *Evans* complaint and numerous other recent actions brought by 401(k) plan participants and beneficiaries around the country graphically illustrate, plan fiduciaries face exposure to claims of liability for allegedly *failing* to take immediate action to divest plans of company stock investments claimed by the plaintiffs to be imprudent. *See, e.g, In re: Schering-Plough Corp. ERISA Litig.*, 420 F.3d 231 (3rd Cir. 2005); *Kuper v. Iovenko*, 66 F.3d 1447, 1457 (6th Cir. 1995).[16] The claims of liability in those cases are predicated on the notion – endorsed

---

*Pharmaceuticals, Inc. v. Broudo*, 125 S. Ct. 1627, 1634, 161 L.Ed.2d 577, 588 (2005) ("Our holding about plaintiffs' need to *prove* proximate causation and economic loss leads us also to conclude that plaintiffs' compliant here failed to adequately *allege* these requirements.").

[16] *See also, Stein v. Smith*, 270 F. Supp. 2d 157 (D. Mass. 2003); *In re: Reliant Energy ERISA Litig.*, 336 F. Supp. 2d 646, 668-669 (S.D. Tex. 2004); *In re: Xcel Energy, Inc.*, 312 F. Supp. 2d 1165, 1179-1180 (D. Minn. 2004); *In re: Sprint Corp. ERISA Litig.*, 388 F. Supp. 2d 1207, 1221-1224 (D. Kan. 2004); *cf. Lalonde v. Textron, Inc.*, 369 F.3d 1, 6-7 (1st Cir. 2004); *Moench v. Robertson*, 62 F.3d 553, 571-572 (3d Cir. 1995); *Steinman v. Hicks*, 352 F.3d 1101, 1106 (7th

by the U.S. Department of Labor in *In re: Enron* – that in appropriate cases plan fiduciaries have

an obligation to *override* both express plan terms and the investment elections of the participants

and divest the plan of company stock where that stock has become an imprudent investment. *See*

Amended Brief of the Secretary of Labor as *Amicus Curiae* Opposing the Motion to Dismiss, *In*

*re: Enron Corp., Securities, Derivative & ERISA Litigation (Tittle v. Enron Corp.)*, C.A. H-01-

3913 (S.D. Tex. Aug. 30, 2002). If this is a correct statement of the developing law under

ERISA, the proposition in *Bunch* that fiduciaries can also be held liable for exercising their

discretion and taking this action creates an impossible "Catch-22" for fiduciaries: the same

conduct is deemed both required and prohibited, and no action would be sufficient to avoid some

measure of liability. To state this proposition is to refute it. The claims in *Bunch* must be

dismissed as contrary to the requirements of ERISA.[17]

    Second, *Bunch's* suggestion "upon information and belief" that State Street engaged in

self-dealing by causing the Plan's Grace Stock to be sold to "State Street or to an affiliate"

(*Bunch* Complaint ¶ 59) is nothing more than an unsupported, bald assertion that fails the

---

Cir. 2003); *In re: Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 473-474 (S. D. N. Y. 2005); *Hill v. Bellsouth Corp.*, 313 F. Supp. 2d 1361, 1368 (N. D. Ga. 2004).

[17] The *Bunch* plaintiffs cannot properly premise an "imprudent divestment" claim on the mere fact that the price of Grace Stock has *risen* since the date of divestment. *See e.g., Metzler v. Graham*, 112 F.3d 207, 209 (5th Cir. 1997) ("Prudence is evaluated at the time of the investment without the benefit of hindsight."); *DiFelice v. U.S. Airways, Inc.*, 397 F. Supp. 2d 758, Case No. 1:04cv889, 2005 U.S. Dist. LEXIS 24914, *37 (E. D. Va. Oct. 19, 2005) ("ERISA fiduciaries with responsibility for selecting and terminating plan investment options for plan participants are required to exercise investment judgment in the context of constantly changing, complex financial markets. In doing so, these fiduciaries are entitled to substantial latitude and their judgment must not be assessed using 20/20 hindsight."); *Keach v. U. S. Trust Company, N.A.*, 313 F. Supp. 2d 818, 867 (C. D. Ill. 2004) ("Again, the fiduciary's duty of care requires prudence, not prescience, and the appropriateness of an investment is to be determined from the perspective of the time of the investment was made, not from hindsight.") (internal citations and quotations omitted).

requirements of Rule 8(a) and is subject to dismissal under Rule 12(b)(6).  To survive a motion

to dismiss, a complaint must contain more than conclusory statements or claims of liability

unsupported by any facts.  *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34,  (1st Cir. 1991)

(dismissing plaintiffs' claim as "nothing more than a conclusory assertion which need not be

honored under Rule 12(b)(6)."); *see also In re: McKesson HBOC, Inc. ERISA Litigation*, C.A. C-

00-20030 RMW, 2002 U.S. Dist. LEXIS 19473, *38 (N. D. Cal. Sept. 30, 2002)   ("The court

need not accept conclusory allegations as true on a motion to dismiss where those allegations do

not follow from the description of the facts as alleged.").  The *Bunch* complaint cites to no facts

to support this allegation.  Moreover, these bald allegations are flatly contradicted by publicly-

available SEC records of which the Court can take judicial notice.  *See e.g. In re:  Lernout &

Hauspie Secs. Litig. v. Lernout*, 286 B.R. 33, 37 (Bankr. D. Mass. 2002) ("This Court may take

judicial notice of this SEC filing pursuant to Fed. R. Evid. 201, which defendants had the

opportunity to address.").  As shown in State Street's Form 13F filings, by the end of the Second

Quarter of 2004, State Street's managed holdings of Grace Stock did not include the "millions of

shares" alleged by the *Bunch* complaint.  *See* Shea Decl., ¶ 7 and Exhs. 1-2 thereto.

Accordingly, this single claim against State Street must be dismissed.

## CONCLUSION

For the foregoing reasons, State Street respectfully requests that all claims against it in

this consolidated action be dismissed with prejudice.

Dated:  January 24, 2006                Respectfully submitted,

                                        STATE STREET BANK AND TRUST COMPANY

                                        By its counsel,


                                        ___/s/ Sean T. Carnathan_____
                                        Sean T. Carnathan (BBO #636889)
                                        (scarnathan@ocmlaw.net)
                                        O'CONNOR, CARNATHAN, MACK LLC
                                        8 New England Executive Park, Suite 310
                                        Burlington, MA 01803
                                        Telephone: (781) 359-9000
                                        Facsimile: (781) 359-9001

                                        -and-

                                        Scott M. Flicker
                                        (scottflicker@paulhastings.com)
                                        PAUL, HASTINGS, JANOFSKY & WALKER LLP
                                        875 15th Street, NW
                                        Washington, DC 20005
                                        Telephone: (202) 551-1700
                                        Facsimile: (202) 551-1705