## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LAWRENCE W. BUNCH, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **Consolidated as:** |
| v. | ) | **Case No. 04-11380-WGY** |
| | ) | |
| W.R. GRACE & CO., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF FIDELITY MANAGEMENT TRUST COMPANY'S MOTION TO DISMISS

Fidelity Management Trust Company ("FMTC") does not belong in this case. The Complaint pending before this Court alleges breaches of fiduciary duties imposed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA") and seeks to recover losses on behalf of a defined contribution plan sponsored by W.R. Grace & Co. ("Grace" or the "Company"). Plaintiffs allege that FMTC, in its capacity as a directed trustee of the W.R. Grace & Co. Employees Savings and Investment Plan (the "Plan"), breached its fiduciary obligations by following a direction to sell Grace common stock.

As discussed below, the decision to sell the Grace common stock was made by State Street Bank and Trust Company or State Street Global Advisors ("State Street"), an independent investment manager. Where, as here, an independent investment manager has authority or control over the Plan's assets, ERISA provides that "*no trustee [such as FMTC] shall be liable* for the acts or omissions of such investment manager or managers, or be under an obligation to

invest or otherwise manage any asset of the plan which is subject to the management of such investment manager." ERISA § 405(d)(1) (emphasis added).  Accordingly, as a matter of law, FMTC had no responsibility or liability for that decision to sell the Grace common stock, and the Complaint as to FMTC must be dismissed.

## I.    STANDARD OF REVIEW

The claims asserted here against FMTC must be dismissed if, based on the allegations in the Complaint and referenced materials, plaintiffs can prove no set of facts that would entitle them to relief.  *Edes v. Verizon Communs.*, 417 F.3d 133, 137 (1st Cir. 2005).  When a complaint's factual allegations are expressly linked to and dependent upon a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss.  *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 16 (1st Cir. 1998) (concluding that a trust agreement for an ERISA plan was properly before the court on a motion to dismiss).

## II.    THE FACTS ALLEGED

### A.    The W.R. Grace & Co. Savings and Investment Plan

According to the governing documents referred to in the Complaint, the Plan permits participants to elect to contribute a portion of their salary to a retirement account (Compl. ¶ 6) and also provides for employer matching contributions.  (*Id.*)  Participants "direct" how to allocate their participant contributions among several investment alternatives identified in the Plan documents (*id.*; Trust Agreement[1] § 5(c)), including a fund that invests in securities of Grace as well as a number of other investment options.  Plaintiffs allege that under the Plan, employer matching contributions were initially used only to buy Grace common stock.  (Compl. ¶ 6.)  The

---

[1]  The Complaint explicitly refers to the Trust Agreement.  (*See* Compl. ¶ 35.)  A true and correct copy of the Trust Agreement referred to in the Complaint is attached as Exhibit A.  *See Beddall*, 137 F.3d at 16.

Plan is an "eligible individual account plan" ("EIAP") as defined in ERISA § 407(d)(3), 29

U.S.C. § 1107(d)(3), which is relieved of the statutory duty of diversification and permitted to

hold large concentrations of assets in employer securities such as Grace stock. *See* ERISA §

404(a)(2), 29 U.S.C. § 1104(a)(2) (Compl. ¶ 41.)

### B.    The W.R. Grace Common Stock Fund

The W.R. Grace Common Stock Fund ("Grace Stock Fund") is the Plan's investment

option that holds publicly traded securities of W.R. Grace & Co. as well as a small portion of

short-term liquid investments. (Trust Agreement § 5(e).). Participants investing in the Grace

Stock Fund own a proportionate interest of units in the Grace Stock Fund rather than owning

individual shares of Grace stock. (*Id.*) The governing plan documents mandate that the Grace

Stock fund be offered as an investment option to participants. (Trust Agreement at Schedule C.)

### C.    The Trust Agreement

At all relevant times, FMTC functioned as a directed trustee of the Plan. As directed

trustee, FMTC has "no responsibility for the selection of investment options" under the Plan.

(Trust Agreement § 4(a).) The Trust Agreement provides that FMTC "shall not be responsible

for monitoring the suitability . . . of acquiring and holding [Grace] stock." (*Id.* § 5(e)(iii); *see

also id.* at Fourteenth Amendment (amending Section 5 to state that "the Named Fiduciary shall

continually monitor the suitability of the Trust acquiring and holding Sponsor Stock") .) The

Complaint alleges that State Street is the investment manager for the Plan. (Compl. ¶ 12.) The

Trust Agreement authorizes FMTC to follow the directions of the Plan's investment manager

and makes clear that FMTC, as directed trustee, has "no liability or responsibility" for acting on

the direction of the investment manager. (*Id.* at Tenth Amendment.)

### D.    Plaintiffs' Allegations

The Complaint alleges that the Plan sold approximately 7.2 million shares of Grace stock for $3.50 per share, that the price of Grace stock then increased to almost $9.00 per share, and that the Plan participants were not allowed to stop the sale of Grace stock by the Plan. (Compl. ¶ 14-16.)  According to the Complaint, the sale of Grace stock that was initiated by State Street or State Street Global Advisors, an investment manager appointed by the Investment Committee, resulted in "substantial" loss to the Plan when the price of Grace stock subsequently increased.[2] (*Id.* ¶ 48.)  The Complaint further alleges that the Company "disregarded its legal responsibility . . . by selecting State Street or State Street Global to take over as investment manager and fiduciary." (*Id.* ¶ 17.)

The Complaint raises a single claim for breach of fiduciary duty under ERISA, asserting essentially that FMTC honored the instruction of the Plan's investment manager, State Street, to sell shares of Grace Common Stock. (*Id.* ¶ 58.)  Although the Complaint also alleges that defendants "fail[ed] to disclose financial information," the Complaint does not identify what, if any, information FMTC allegedly withheld. (*Id.* ¶ 47.)

### III.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST FMTC FOR BREACH OF FIDUCIARY DUTY.

The central focus of the Complaint relates to the decision of State Street or State Street Global Advisors to sell shares of Grace stock after it was appointed as the exclusive investment manager of the Plan.  The Complaint alleges that Grace retained State Street Global "as the new and exclusive investment manager for the Grace Stock Fund," effective December 15, 2003 (Compl. ¶ 12), and that State Street "[took] over as investment manager and fiduciary . . ." (*Id.* ¶

---

[2]  FMTC does not intend to imply that the conduct of the other Defendants breached any fiduciary duty under ERISA.

17.)  Once that appointment was made, all discretion and authority for managing the assets of the Grace Stock Fund – including the decision to sell Grace stock – vested in State Street.  Whatever FMTC's fiduciary obligations as directed trustee may have been prior to December 15, 2003, FMTC certainly had no fiduciary responsibility regarding the disposition of Plan assets after that appointment.  As such, the breach of fiduciary claims against FMTC must be dismissed.

Section 403(a) of ERISA requires ERISA plan assets to be held in trust by one or more trustees.  The trustee, who may be named in the trust agreement or appointed by a "named fiduciary," has "exclusive authority and discretion" to manage and control plan unless:  (1) the trustee is subject to the "direction" of a named fiduciary or (2) when "authority to manage, acquire, or dispose" of plan assets is delegated by the named fiduciary to an investment manager.  *Id.* § 403(a)(1)-(2).

According to the Complaint, the named fiduciary elected the second option, delegating the authority to manage, acquire or dispose of plan assets to an investment manager.  (Compl. ¶ 12.)  *See* ERISA §§ 403(a)(2); 402(c)(3) (the named fiduciary "may appoint an investment manager or managers to manage (including the power to acquire and dispose of ) any assets of the plan").  Where the named fiduciary appoints an investment manager, "no trustee shall be liable for the acts or omissions of such investment manager or managers, or be under an obligation to invest or otherwise manage any asset of the plan which is subject to the management of such investment manager."  ERISA § 405(d)(1); *see also Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1219 (2d Cir. 1987) ("Under Section 405(d)(1), once such an appointment has been made, the trustees cannot be held liable for any act or omission of that investment manager so far as the assets entrusted to the manager are concerned.").

As discussed above, both the Complaint and the Trust Agreement make clear that the named fiduciary, the Investment Committee, retained FMTC as directed trustee of the Plan. Moreover, there is no question that Grace appointed State Street as the "exclusive investment manager for the Grace Stock Fund" (Compl. ¶ 12) and delegated "exclusive discretionary authority" to State Street to manage the assets of the Plan. Once that delegation was complete, FMTC, as directed trustee, had no obligation with respect to the disposition of Plan assets. *See* ERISA § 405(d)(1). "Whatever [FMTC's] powers may have been in the absence of a duly appointed investment manager, no fiduciary duty . . . survived that appointment." *Beddall*, 137 F.3d at 24. Moreover, FMTC also lacked any *authority* to act with respect to the investment of plan assets because the named fiduciary delegated "exclusive authority" over the Grace Stock Fund to State Street. Not only was FMTC not obliged to take action relating to the sale of Grace stock, it had no authority to do so.

ERISA provides one exception to the rule against holding directed trustees liable for directions of investment managers and that exception is not present or alleged in this case. Specifically, the directed trustee may be responsible for fiduciary breaches involving assets controlled by an investment manger if the directed trustee runs afoul of the co-fiduciary liability provisions set out in ERISA § 405(a). ERISA § 405(d)(1). *See also In re Enron Sec., Deriv. & ERISA Litig.,* 284 F.Supp. 2d 511, 584 (S.D. Tex. 2003) ("[U]nder § 405(d)(1) the trustee has no liability for breaches of duty occurring under the investment manager's management and control unless the trustee knowingly participates in or conceals a breach of duty . . ."). Here the Complaint is devoid of any reference to ERISA § 405(a)(1), presumably because there is no good faith basis to contend that FMTC had actual knowledge of any breach by State Street and participated in or concealed the purported breach. Finally, although the Complaint suggests that

State Street may have had a conflict of interest by selling Grace stock to a State Street affiliate, nothing in the Complaint suggests that FMTC had any conflict of interest. (Compl. ¶ 58.)

Accordingly, because the Investment Committee retained State Street and vested State Street with exclusive authority to manage the Grace Stock Fund, Plaintiffs' claim against FMTC fails as a matter of law.

## IV.    CONCLUSION

For the foregoing reasons, FMTC respectfully requests that this Court enter an order dismissing with prejudice all claims asserted against it in the Complaint.

Dated:  January 24, 2006

Respectfully submitted,

/s/ John A.D. Gilmore
John A.D. Gilmore (BBO #193060)
DLA PIPER RUDNICK GRAY CARY US LLP
One International Place, 21st Floor
Boston, Massachusetts 02110-2600
Telephone: (617) 406-6022
Facsimile: (617) 406-6122

Robert N. Eccles (*pro hac vice* application pending)
Gary S. Tell (*pro hac vice* application pending)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC  20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

***Attorneys for Defendant Fidelity Management Trust Co.***

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party via First-Class mail on January 24, 2006.

/s/ John A.D. Gilmore
John A.D. Gilmore