Master Trust Agreement

Between

W.R. Grace & Co.

And

Fidelity Management Trust Company

---

## W.R. GRACE & CO. SAVINGS PLAN

## MASTER TRUST

---

Dated as of July 1, 1993

FMTC WRG 00001

## TABLE OF CONTENTS
### (Continued)

| **Section** | **Page** |
|---|---|
| 12   Resignation, Removal, and Termination Notices ................. | 27 |
| 13   Duration ........................................... | 28 |
| 14   Amendment or Modification ............................. | 28 |
| 15   General ............................................. | 28 |
|     (a) Performance by Trustee, its Agents or Affiliates | |
|     (b) Delegation by Employer | |
|     (c) Entire Agreement | |
|     (d) Waiver | |
|     (e) Successors and Assigns | |
|     (f) Partial Invalidity | |
|     (g) Section Headings | |
| 16   Governing Law ....................................... | 29 |
|     (a) Massachusetts Law Controls | |
|     (b) Trust Agreement Controls | |
| 17   Plan Qualification .................................... | 30 |

### Schedules

A.   Recordkeeping and Administrative Services
B.   Fee Schedule
C.   Investment Options
D.   Sponsor's Authorization Letter
E.   Named Fiduciary's Authorization Letter
F.   IRS Determination Letter or Opinion of Counsel
G.   Existing GICs
H.   Telephone Exchange Procedures
I.   Plan Designation Form
J.   Fixed Income Fund Operating Procedures

FMTC WRG 00002

TRUST AGREEMENT, dated as of the first day of July, 1993, between W.R. GRACE & CO.,

a New York corporation, having an office at One Town Center Road, Boca Raton, FL 33489

(the "Sponsor"), and FIDELITY MANAGEMENT TRUST COMPANY, a Massachusetts trust company,

having an office at 82 Devonshire Street, Boston, Massachusetts 02109 (the "Trustee").


WITNESSETH:


WHEREAS, the Sponsor is the sponsor of the W.R. Grace & Co. Salaried Employees

Savings and Investment Plan, the W.R. Grace & Co. Hourly Employees Savings and

Investment Plan, the employee stock ownership plans within those plans, and the Grace

Energy Corporation Employees Savings and Investment Plan; and


WHEREAS, certain affiliates and subsidiaries of the Sponsor maintain, or may in the

future maintain, qualified defined contribution plans for the benefit of their eligible

employees; and


WHEREAS, the Sponsor desires to establish a single trust to hold all of the assets

of the Plans and of such other tax-qualified defined contribution plans maintained by

the Sponsor, or any of its subsidiaries or affiliates, as are designated by the Sponsor

as being eligible to participate therein; and


WHEREAS, the Trustee is willing to hold and invest the aforesaid plan assets in

trust pursuant to the provisions of this Trust Agreement, which trust shall constitute a

continuation, by means of an amendment and restatement, of each of the prior trusts from

which plan assets are transferred to the Trustee; and


1

FMTC WRG 00003

WHEREAS, the Trustee is willing to hold and invest the aforesaid plan assets in trust among several investment options selected by the Investment Committee; and

WHEREAS, the Trustee is willing to perform recordkeeping and administrative services for the Plans if the services are purely ministerial in nature and are provided within a framework of plan provisions, guidelines and interpretations conveyed in writing to the Trustee by the Administrator.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual covenants and agreements set forth below, the Sponsor and the Trustee agree as follows:

Section 1. _Definitions_. The following terms as used in this Trust Agreement have the meaning indicated unless the context clearly requires otherwise:

(a) "Administrative Committee" shall mean the committee designated by the Sponsor, and as constituted from time to time, which has the responsibility for administering each Plan and shall be deemed for purposes of ERISA to be the plan administrator and the named fiduciary for plan administration.

(b) "Administrator" shall mean the Administrative Committee.

(c) "Agreement" shall mean this Trust Agreement, as the same may be amended and in effect from time to time.

(d) "Code" shall mean the Internal Revenue Code of 1986, as it has been or may be amended from time to time.

(e) "Employer" shall mean the Sponsor and each subsidiary or affiliate of the Sponsor having employees who are Participants in a Plan.

(f) "ERISA" shall mean the Employee Retirement Income Security Act of 1974, as it has been or may be amended from time to time.

2

FMTC WRG 00004

(g)   "Existing GICs" shall mean each guaranteed investment contract to be held in the Trust that was entered into by the Investment Committee prior to the effective date of this Agreement and specifically identified on Schedule "G" attached hereto.

(h)   "FBSI" shall mean Fidelity Brokerage Services, Inc., an affiliate of the Trustee.

(i)   "GICs" shall mean guaranteed investment contracts.

(j)   "Investment Committee" shall mean the committee, designated by the Sponsor, which has the responsibility (i) for investing the assets of the Plans and, with respect to Plans where Participants have the right to direct the assets allocated to their accounts among investment options, for selecting those investment options, (ii) for assuring that the Plans do not violate any provision of ERISA limiting the acquisition or holding of Sponsor Stock or other property of the Sponsor, (iii) for the appointment and removal of investment advisors, if any, and (iv) for other matters described herein; and the Investment Committee shall be deemed for purposes of ERISA to be the named fiduciary for Plan investments.

(k)   "Mutual Fund" shall mean any investment company advised by Fidelity Management & Research Company or any of its affiliates.

(l)   "Participant" shall mean, with respect to a Plan, any employee (or former employee) with an account under such Plan, which has not yet been fully distributed and/or forfeited, and shall include the designated beneficiary(ies) with respect to the account of any deceased employee (or deceased former employee) until such account has been fully distributed and/or forfeited.

(m)   "Plans" shall mean the W.R. Grace & Co. Salaried Employees Savings and Investment Plan, the W.R. Grace & Co. Hourly Employees Savings and Investment Plan, the employee stock ownership plans within those plans, and the Grace Energy Corporation Employees Savings and Investment Plan, and such other tax-qualified, defined contribution plans which are maintained by the Sponsor or any of its subsidiaries or affiliates for the benefit of their eligible employees and for which the Trust has been designated as the funding medium by the Sponsor in writing to the Trustee, such designation to be in

3

the form of the Plan Designation Form attached hereto as Schedule "I". Each reference to "a Plan" or "the Plan" in this Agreement shall mean and include the Plan or Plans to which the particular provision of this Agreement is being applied or all Plans, as the context may require.

(n)  "Reporting Date" shall mean the last day of each calendar quarter during the term of this Agreement, the date as of which the Trustee resigns or is removed pursuant to Section 9 and the date as of which this Agreement terminates pursuant to Section 11.

(o)  "Sponsor" shall mean W.R. Grace & Co., a New York corporation, or any successor to all or substantially all of its businesses which, by agreement, operation of law or otherwise, assumes the responsibility of the Sponsor under this Agreement.

(p)  "Sponsor Stock" shall mean the common stock of the Sponsor or such other publicly-traded stock of the Sponsor, or any of its affiliates, which meets the requirements of section 407(d)(5) of ERISA with respect to the Plan.

(q)  "Trust" shall mean the W.R. Grace & Co. Savings Plan Master Trust, being the trust established by the Sponsor and the Trustee pursuant to the provisions of this Agreement.

(r)  "Trustee" shall mean Fidelity Management Trust Company, a Massachusetts trust company and any successor to all or substantially all of its trust business as described in Section 10(c). The term Trustee shall also include any successor trustee appointed pursuant to Section 10 to the extent such successor agrees to serve as Trustee under this Agreement.

Section 2.  Trust.  The Sponsor hereby establishes the Trust, with the Trustee. The Trust shall consist of an initial contribution of money or other property acceptable to the Trustee in its sole discretion, made by the Sponsor or transferred from a previous trustee under the Plans, such additional sums of money and Sponsor Stock as shall from time to time be delivered to the Trustee under a Plan, all investments made therewith and

4

FMTC WRG 00006

proceeds thereof, and all earnings and profits thereon, less the payments that are made by the Trustee as provided herein, without distinction between principal and income. The Trustee hereby accepts the Trust on the terms and conditions set forth in this Agreement. In accepting this Trust, the Trustee shall be accountable for the assets received by it, subject to the terms and conditions of this Agreement.

Section 3. Exclusive Benefit and Reversion of Sponsor Contributions.

(a)    Except as provided in this Section 3, no part of the Trust allocable to a Plan may be used for, or diverted to, purposes other than the exclusive benefit of the Participants in the Plans or their beneficiaries and defraying reasonable administrative expenses of administering the Plans and the Trust, prior to the satisfaction of all liabilities with respect to the Participants and their beneficiaries.

(b)    The Trustee shall return the amounts as provided in this Section 3 upon notification from the Sponsor or the Administrative Committee that the event or events giving rise to such a return of contribution has occurred:

(i)    In the case of contributions made by the Sponsor prior to the receipt of an initial favorable determination letter from the Internal Revenue Service ("IRS") with respect to the Plan, those contributions and all earnings thereon within one year after the IRS refuses in writing to issue such a letter.

(ii)    In the case of any portion of a contribution made by the Sponsor by mistake of fact, that portion of the contribution within one year after the payment of that portion of the contribution.

(iii) In the case of any portion of a contribution made by the Sponsor and disallowed by the IRS as a deduction under section 404 of the Internal Revenue Code of

5

FMTC WRG 00007

1986, that portion of the contribution within one year after the IRS disallows the deduction in writing.

(c)  Earnings attributable to the contributions returnable under sub-paragraphs (ii) or (iii) shall not be returned to the Sponsor, and any losses attributable to those contributions shall reduce the amount returned.

Section 4. Disbursements.

(a)  Directions from Administrative Committee. The Trustee shall make disbursements in the amounts and in the manner that the Administrative Committee or its designee directs from time to time in writing. The Trustee shall have no responsibility to ascertain whether any direction received by the Trustee from the Administrative Committee or its designee is in compliance with the terms of the Plan or of any applicable law or the effect of any direction for tax purposes or otherwise; nor shall the Trustee have any responsibility to see to the application of any disbursement.

(b)  Limitations. The Trustee shall not be required to make any disbursement under a Plan in excess of the net realizable value of the assets of the Trust allocable to such Plan at the time of the disbursement. The Trustee shall not be required to make any disbursement in cash unless the Administrative Committee or its designee has provided a written direction as to the assets to be converted to cash for the purpose of making the disbursement.

Section 5. Investment of Trust.

(a)  Selection of Investment Options. The Trustee shall have no responsibility for the selection of investment options under the Trust and shall not render investment advice to any person in connection with the selection of such options.

(b)  Available Investment Options. The Investment Committee shall direct the Trustee regarding: (i) the investment of assets of the Trust during the the transfer of Plan

6

FMTC WRG 00008

assets to the Trust and the transfer of Participant records from a prior recordkeeper to the Trust ("Participant recordkeeping reconciliation period"), (ii) the investment options that will be available to accept Participant directed investment allocations with respect to a Participant's Plan account, with respect to Plans that provide for Participant investment direction and (iii) the investment of the assets of Plans that do not permit Participant direction, subject to the following restrictions regarding the investments available with respect to the assets of the Trust.

The Investment Committee may select only the following as investments or investment options: (i) Mutual Funds, (ii) Sponsor Stock, (iii) notes evidencing loans to Participants in accordance with the terms of the applicable Plan, (iv) GICs chosen by the Investment Committee, (v) Existing GICs, and (vi) collective investment funds maintained by the Trustee for qualified plans; provided, however, that the Investment Committee hereby directs the Trustee to hold such Existing GICs and GICs chosen by the Investment Committee until the Investment Committee directs otherwise, it being expressly understood that such direction is given in accordance with section 403(a) of ERISA; and provided, further, that the Trustee shall be considered a fiduciary with investment discretion only with respect to Plan assets that are invested in collective investment funds maintained by the Trustee for qualified plans. The investment options initially selected by the Investment Committee are identified on Schedules "A" and "C" attached hereto. The Investment Committee may add additional investment options upon mutual amendment of this Trust Agreement and the Schedules thereto to reflect such additions.

(c)    Participant Direction.  Each Participant shall direct the Trustee to invest the assets of his Plan account in one or more of the available investment options, in accordance with the provisions of the applicable Plan, with respect to those Plans that provide for participant direction.  Such directions may be made by Participants by the telephone exchange system maintained for such purposes by the Trustee or its agent, in accordance with written Telephone Exchange Guidelines attached hereto as Schedule "H".

7

FMTC WRG 00009

Any directions made by a Participant using the telephone exchange system shall be treated in the same manner as a direction made in writing by the Investment Committee for purposes of Section 8 hereof; provided that the Trustee shall indemnify the Sponsor, the Administrative Committee and the Investment Committee pursuant to Section 8(e) with respect to the proper execution of such directions. In the event that the Trustee fails to receive a proper direction, the assets shall be invested in the investment option set forth for such purpose on Schedule "C", until the Trustee receives a proper direction.

(d)    Mutual Funds.  The Sponsor hereby acknowledges that it has received from the Trustee a copy of the prospectus for each Mutual Fund selected by the Investment Committee as a Plan investment option.  Trust investments in Mutual Funds shall be subject to the following limitations:

(i)    Execution of Purchases and Sales.  Purchases and sales of Mutual Funds (other than for exchanges) shall be made on the date on which the Trustee receives from the Sponsor in good order all information and documentation necessary to accurately effect such purchases and sales (or in the case of a purchase, the subsequent date on which the Trustee has received a wire transfer of funds necessary to make such purchase).  Exchanges of Mutual Funds shall be made in accordance with the Telephone Exchange Guidelines attached hereto as Schedule "H".

(ii)    Voting.  At the time of mailing of notice of each annual or special stockholders' meeting of any Mutual Fund, the Trustee shall send a copy of the notice and all proxy solicitation materials to each Participant who has shares of the Mutual Fund credited to the Participant's accounts, together with a voting direction form for return to the Trustee or its designee. The Participant shall have the right to direct the Trustee as to the manner in which the Trustee is to vote the shares credited to the Participant's accounts (both vested and unvested). The Trustee shall vote the shares as directed by the Participant. The Trustee shall not vote shares for which it has received no directions from the Participant. During the Participant recordkeeping reconciliation

8

FMTC WRG 00010

period, the Sponsor shall have the right to direct the Trustee as to the manner in which the Trustee is to vote the shares of the Mutual Funds in the Trust. With respect to all rights other than the right to vote, the Trustee shall follow the directions of the Participant and if no such directions are received, the directions of the Investment Committee. The Trustee shall have no further duty to solicit directions from Participants or the Sponsor.

(e)    Sponsor Stock. Trust investments in Sponsor Stock shall be made via the W.R. Grace Common Stock Fund and the Company Contribution ESOP Stock Fund (individually, the "Fund"). Each Fund shall consist of shares of Sponsor Stock and short-term liquid investments, including the commingled money market fund, Fidelity Employee Benefit U.S. Government Reserves Portfolio, maintained by the Trustee, necessary to satisfy the Fund's cash needs for transfers and payments. A cash target range shall be determined in conjunction with the Administrator for the cash portion of the Fund. The Trustee is responsible for ensuring that the actual cash held in the Fund falls within the agreed upon range over time. Each Participant's proportional interest in the Fund shall be measured in units of participation, rather than shares of Sponsor Stock. Such units shall represent a proportionate interest in all of the assets of the Fund, which includes shares of Sponsor Stock, short-term investments and, at times, receivables for dividends and/or Sponsor Stock sold and payables for Sponsor Stock purchased. A Net Asset Value ("NAV") per unit will be determined daily for each unit outstanding of the Fund. The return earned by the Fund will represent a combination of the dividends paid on the shares of Sponsor Stock held by the Fund, gains or losses realized on sales of Sponsor Stock, appreciation or depreciation in the market price of those shares held, and interest on the short-term investments held by the Fund. Dividends received by the W.R. Grace Common Stock Fund are reinvested in additional shares of Sponsor Stock. Dividends paid to the Trust on shares of Sponsor Stock held in the Company Contribution ESOP Stock Fund shall be allocated to a separate account (the "Dividends Account") within the Trust. The assets of the Dividends Account shall be invested in the Fidelity Employee Benefit U.S. Government Reserves Portfolio. The interest credited to the Dividends

9

FMTC WRG 00011

Account shall be reinvested in the Company Contribution ESOP Stock Fund on a monthly basis. The Trustee shall make such payments from the Dividends Account at such time or times, and to such entity designated by the Administrator as paying agent for such dividends, as Administrator shall direct in writing. The Sponsor acknowledges that any cash so paid to the paying agent shall be held in trust by such paying agent until disbursed to Participants in accordance with the terms of Plan. The Trustee shall have no responsibility for tax reporting of such dividends. Investments in Sponsor Stock shall be subject to the following limitations:

(i) <u>Leveraging</u>. The Sponsor acknowledges that no outstanding loan exists for the Company Contribution ESOP Stock Fund. If the Sponsor pledges Sponsor Stock to be held in that Fund as collateral for a loan, the Sponsor agrees that this Agreement and the fees described on Schedule "B" shall be amended as agreed to by the Sponsor and the Trustee.

(ii) <u>Acquisition Limit</u>. Pursuant to the Plan, the Trust may be invested in Sponsor Stock to the extent necessary to comply with investment directions under Section 5(c) of this Agreement.

(iii) <u>Fiduciary Duty</u>. The Trustee shall not be responsible for monitoring the suitability under the fiduciary duty rules of section 404(a)(1) of ERISA (as modified by section 404(a)(2) of ERISA) of acquiring and holding Sponsor Stock. The Trustee shall not be liable for any loss which arises from the directions of the Investment Committee with respect to the acquisition and holding of Sponsor Stock, unless it is clear that the actions to be taken by the Trustee under those directions would be prohibited by the foregoing fiduciary duty rules or would be contrary to the terms of the Plan or this Agreement.

(iv) <u>Execution of Purchases and Sales</u>. (A) Purchases and sales of Sponsor Stock (other than for telephone exchanges described in Schedule "H") shall be made

10

on the open market on the date on which the Trustee receives from the Investment Committee in good order all information and documentation necessary to accurately effect such purchases and sales (or, in the case of purchases, the subsequent date on which the Trustee has received a wire transfer of the funds necessary to make such purchases). Exchanges of Sponsor Stock shall be made in accordance with the Telephone Exchange Guidelines attached hereto as Schedule "G". Such general rules shall not apply in the following circumstances:

(1)    If the Trustee is unable to determine the number of shares required to be purchased or sold on such date; or

(2)    If the Trustee is unable to purchase or sell the total number of shares required to be purchased or sold on such date as a result of market conditions; or

(3)    If the Trustee is prohibited by the Securities and Exchange Commission, the New York Stock Exchange, or any other regulatory body from purchasing or selling any or all of the shares required to be purchased or sold on such date.

In the event of the occurrence of the circumstances described in (1), (2), or (3) above, the Trustee shall purchase or sell such shares as soon as possible thereafter and shall determine the price of such purchases or sales to be the average purchase or sales price of all such shares purchased or sold, respectively. The Trustee may follow directions from the Investment Committee to deviate from the above purchase and sale procedures provided that such direction is made in writing by the Investment Committee.

(B) <u>Use of an Affiliated Broker</u>. The Investment Committee hereby authorizes the Trustee to use Fidelity Brokerage Services, Inc. ("FBSI"), an

11

FMTC WRG 00013

affiliate of the Trustee, to provide brokerage services in connection with any purchase or sale of Sponsor Stock in accordance with directions from Participants or the Investment Committee. FBSI shall execute such directions directly or through its affiliate, National Financial Services Company ("NFSC"). The provision of brokerage services shall be subject to the following:

(1)    As consideration for such brokerage services, the Sponsor agrees that FBSI shall be entitled to remuneration under this authorization provision in the amount of three and one-half cents ($.035) commission on each share of Sponsor Stock. Any change in such remuneration may be made only by a signed agreement between Sponsor and Trustee.

(2)    Following the procedures set forth in Department of Labor Prohibited Transaction Class Exemption 86-128 ("PTCE 86-128"), the Trustee will provide the Sponsor with the following documents: (1) a description of FBSI's brokerage placement practices; (2) a copy of PTCE 86-128; and (3) a form by which the Sponsor may terminate this authorization to use a broker affiliated with the Trustee. The Trustee will provide the Sponsor with such termination form annually, as well as an annual report which summarizes all securities transaction-related charges incurred by the Trust, and the Trust's annualized turnover rate.

(3)    Any successor organization of FBSI, through reorganization, consolidation, merger or similar transactions, shall, upon consummation of such transaction, become the successor broker in accordance with the terms of this authorization provision.

(4)    The Trustee and FBSI shall continue to rely on this authorization provision until notified to the contrary. The Investment Committee reserves the right to terminate this authorization upon sixty (60) days written

12

FMTC WRG 00014

notice to FBSI (or its successor) and the Trustee.

(v) <u>Securities Law Reports</u>. The Sponsor shall be responsible for filing all reports required under Federal or state securities laws with respect to the Trust's ownership of Sponsor Stock, including, without limitation, any reports required under section 13 or 16 of the Securities Exchange Act of 1934, and shall immediately notify the Trustee in writing of any requirement to stop purchases or sales of Sponsor Stock pending the filing of any report. The Trustee shall provide to the Sponsor such information on the Trust's ownership of Sponsor Stock as the Sponsor may reasonably request in order to comply with Federal or state securities laws.

(vi) <u>Voting and Tender Offers</u>. Notwithstanding any other provision of this Agreement the provisions of this Section shall govern the voting and tendering of Sponsor Stock. The Sponsor, after consultation with the Trustee, shall provide and pay for all printing, mailing, tabulation and other costs associated with the voting and tendering of Sponsor Stock.

(A) <u>Voting</u>.

(1)    When the issuer of the Sponsor Stock files preliminary proxy solicitation materials with the Securities and Exchange Commission, the Sponsor shall cause a copy of all materials to be simultaneously sent to the Trustee. Based on these materials the Trustee shall prepare a voting instruction form. At the time of mailing of notice of each annual or special stockholders' meeting of the issuer of the Sponsor Stock, the Sponsor shall cause a copy of the notice and all proxy solicitation materials to be sent to each Participant with an interest in Sponsor

13

FMTC WRG 00015

Stock held in the Trust, together with the foregoing voting instruction form to be returned to the Trustee or its designee. The form shall show the proportional interest in the number of full and fractional shares of Sponsor Stock credited to the Participant's accounts held in the Fund. The Sponsor shall provide the Trustee with a copy of any materials provided to the Participants and shall certify to the Trustee that the materials have been mailed or otherwise sent to Participants.

(2)    Each Participant with an interest in the Fund shall have the right, acting in the capacity of a named fiduciary within the meaning of section 402 of ERISA, to direct the Trustee as to the manner in which the Trustee is to vote (including not to vote) that number of shares of Sponsor Stock reflecting such Participant's proportional interest in the Fund (both vested and unvested). Directions from a Participant to the Trustee concerning the voting of Sponsor Stock shall be communicated in writing, or by mailgram or similar means. These directions shall be held in confidence by the Trustee and shall not be divulged to the Sponsor, or any officer or employee thereof, or any other person. Upon its receipt of the directions, the Trustee shall vote the shares of Sponsor Stock reflecting the Participant's proportional interest in the Fund as directed by the Participant. The Trustee shall vote shares of Sponsor Stock reflecting a Participant's proportional interest in the Fund for which it has received no direction from the Participant in the same proportion as those shares for which the Trustee has received Participant voting instruction.

(3)    The Trustee shall vote that number of shares of Sponsor Stock not credited to Participants' accounts which is determined by multiplying the total number of shares not credited to Participants' accounts by a fraction of which the numerator is the number of shares of Sponsor Stock reflecting such Participants' proportional interest in the Fund credited to Participants' accounts for which the Trustee received voting directions from Participants  and of which the denominator

14

FMTC WRG 00016

is the total number of shares of Sponsor Stock reflected in the proportional interests of all Participants under the Plan. The Trustee shall vote those shares of Sponsor Stock not credited to Participants' accounts which are to be voted by the Trustee pursuant to the foregoing formula in the same proportion on each issue as it votes those shares reflecting Participants' proportional interest in the Fund for which it received voting directions from Participants. The Trustee shall not vote the remaining shares of Sponsor Stock not credited to Participants' accounts.

(B) <u>Tender Offers</u>.

(1) Upon commencement of a tender offer for any securities held in the Trust that are Sponsor Stock, the Sponsor shall notify each Participant with an interest in such Sponsor Stock of the tender offer and utilize its best efforts to timely distribute or cause to be distributed to the Participant the same information that is distributed to shareholders of the issuer of Sponsor Stock in connection with the tender offer, and, after consulting with the Trustee, shall provide and pay for a means by which the Participant may direct the Trustee whether or not to tender the Sponsor Stock reflecting such Participant's proportional interest in the Fund (both vested and unvested). The Sponsor shall provide the Trustee with a copy of any material provided to the Participants and shall certify to the Trustee that the materials have been mailed or otherwise sent to Participants.

(2) Each Participant shall have the right to direct the Trustee to tender or not to tender some or all of the shares of Sponsor Stock reflecting such Participant's proportional interest in the Fund (both vested and unvested). Directions from a Participant to the Trustee concerning the tender of Sponsor Stock shall be communicated in writing, or by mailgram or such similar means as is agreed upon by the Trustee and the Sponsor under the preceding paragraph. These directions

15

FMTC WRG 00017

shall be held in confidence by the Trustee and shall not be divulged to the Sponsor, or any officer or employee thereof, or any other person except to the extent that the consequences of such directions are reflected in reports regularly communicated to any such persons in the ordinary course of the performance of the Trustee's services hereunder. The Trustee shall tender or not tender shares of Sponsor Stock as directed by the Participant. The Trustee shall not tender shares of Sponsor Stock reflecting a Participant's proportional interest in the Fund for which it has received no direction from the Participant.

(3)  The Trustee shall tender that number of shares of Sponsor Stock not credited to Participants' accounts which is determined by multiplying the total number of shares of Sponsor Stock not credited to Participants' accounts by a fraction of which the numerator is the number of shares of Sponsor Stock reflecting Participants' proportional interests in the Fund for which the Trustee has received directions from Participants to tender (which directions have not been withdrawn as of the date of this determination) and of which the denominator is the total number of shares of Sponsor Stock reflected in the proportional interests of all Participants under the Plan.

(4)  A Participant who has directed the Trustee to tender some or all of the shares of Sponsor Stock reflecting the Participant's proportional interest in the Fund may, at any time prior to the tender offer withdrawal deadline, direct the Trustee to withdraw some or all of the tendered shares reflecting the Participant's proportional interest, and the Trustee shall withdraw the directed number of shares from the tender offer prior to the tender offer withdrawal deadline. Prior to such withdrawal deadline, if any shares of Sponsor Stock not credited to Participants' accounts have been tendered, the Trustee shall redetermine the number of shares of Sponsor Stock that would be tendered under Section

16

FMTC WRG 00018

5(e)(vi)(B)(3) if the date of the foregoing withdrawal were the date of determination, and withdraw from the tender offer the number of shares of Sponsor Stock not credited to Participants' accounts necessary to reduce the amount of tendered Sponsor Stock not credited to Participants' accounts to the amount so redetermined. A Participant shall not be limited as to the number of directions to tender or withdraw that the Participant may give to the Trustee.

(5) A direction by a Participant to the Trustee to tender shares of Sponsor Stock reflecting the Participant's proportional interest in the Fund shall not be considered a written election under a Plan by the Participant to withdraw, or have distributed, any or all of the shares of Sponsor Stock credited to his Plan account. The Trustee shall credit to each proportional interest of the Participant from which the tendered shares were taken the proceeds received by the Trustee in exchange for the shares of Sponsor Stock tendered from that interest. Pending receipt of directions from the Participant or the Named Fiduciary, as provided in the Plan, as to which of the remaining investment options the proceeds should be invested in, the Trustee shall invest the proceeds in the investment option described in Schedule "C":

(vii) <u>Shares Credited</u>. For all purposes of this Section, the number of shares of Sponsor Stock deemed "credited" or "reflected" to a Participant's proportional interest on any day shall be determined as of the last preceding business day. The trade date is the date the transaction is valued.

(viii) <u>General</u>. With respect to all rights other than the right to vote, the right to tender, and the right to withdraw shares previously tendered, in the case of Sponsor Stock credited to a Participant's proportional interest in the Fund, the Trustee shall follow the directions of the Participant and if no such directions

17

FMTC WRG 00019

are received, the directions of the Investment Committee. Except as provided herein, the Trustee shall have no duty to solicit directions from Participants. With respect to all rights other than the right to vote and the right to tender, in the case of Sponsor Stock not credited to Participants' accounts, the Trustee shall follow the directions of the Investment Committee.

(ix) <u>Conversion</u>. All provisions in this Section 5(e) shall also apply to any securities received as a result of a conversion of Sponsor Stock.

(f)    <u>Notes</u>. The Administrator shall act as the Trustee's agent for the purpose of holding all trust investments in Participant loan notes and related documentation and as such shall (i) maintain physical custody of and keep safe the notes and other loan documents, (ii) collect and remit all principal and interest payments to the Trustee, (iii) keep the proceeds of such loans separate from the other assets of the Administrator and clearly identify such assets as Plan assets, and (iv) cancel and surrender the notes and other loan documentation when a loan has been paid in full. To originate a Participant loan, the Participant shall direct the Trustee as to the type of loan to be made from the Participant's individual account. Such directions shall be made by Participants by the telephone exchange system maintained for such purpose by the Trustee or its agent. The Trustee shall determine, based on the current value of the Participant's account, the amount available for the loan. Based on the quarterly interest rate supplied by the Administrator in accordance with the terms of the Plan, the Trustee shall advise the Participant of such interest rate, as well as the installment payment amounts. The Trustee shall forward the loan document to the Participant for execution and submission for approval to the Administrator. The Administrator shall have the responsibility for approving the loan and instructing the Trustee to send the loan proceeds to the Administrator or to the Participant if so directed by the Administrator. In all

18

FMTC WRG 00020

cases, such instruction by the Administrator shall be made within thirty (30) days

of the Participant's initial request (the origination date).

 

    (g)   Investment Committee Selected Investments. The Investment Committee hereby

agrees to notify the Trustee prior to any new GIC purchase to ensure that the

Trustee is capable of recordkeeping such GIC in accordance with Schedule "J". In

order to provide the necessary cash to effectuate exchanges and redemptions from the

Fixed Income Fund ("GIC") under a Plan, the Sponsor agrees that the Plan shall

maintain a liquidity reserve allocated to that Fund in a commingled money market

fund ("Fidelity Employee Benefit U.S. Government Reserves Portfolio") maintained by

the Trustee within the Fidelity Group Trust for Employee Benefit Plans (the "Group

Trust"). The Sponsor hereby (i) agrees to the Plan's participation in the Group

Trust, a group trust maintained by the Trustee for qualified plans, for purposes of

liquidity under the Plan's Fixed Income Fund and (ii) acknowledges that it has

received from the Trustee a copy of the terms of the Group Trust and the terms of

the Declaration of Separate Fund for the Fidelity Employee Benefit U.S. Government

Reserves Portfolio of the Group Trust.

 

    (h)   Reliance of Trustee on Directions. (i) The Trustee shall not be liable for

any loss which arises from any Participant's exercise or non-exercise of rights

under this Agreement regarding the assets credited to the Participant's account.

 

      (ii)   The Trustee shall not be liable for any loss which arises from the

Investment Committee's exercise or non-exercise of rights under this Section 5, unless it

was clear that the actions to be taken by the Trustee under the Investment Committee's

directions were prohibited by the fiduciary duty rules of Section 404(a) of ERISA or were

contrary to the terms of the Plan or this Agreement.

19

FMTC WRG 00021

(i)    _Trustee Powers_.  The Trustee shall have the following powers and authority:

(i)    Subject to paragraphs (b), (c), (d) and (e) of this Section 5, to sell, exchange, convey, transfer, or otherwise dispose of any property held in the Trust, by private contract or at public auction.  No person dealing with the Trustee shall be bound to see to the application of the purchase money or other property delivered to the Trustee or to inquire into the validity, expediency, or propriety of any such sale or other disposition.

(ii)    Subject to paragraphs (b) and (c) of this Section 5, to invest in GICs and short term investments (including interest bearing accounts with the Trustee or money market mutual funds advised by affiliates of the Trustee) and in collective investment funds maintained by the Trustee for qualified plans, in which case the provisions of each collective investment fund in which the Trust is invested shall be deemed adopted by the Investment Committee and the provisions thereof incorporated as a part of this Trust as long as the fund remains exempt from taxation under Sections 401(a) and 501(a) of the Internal Revenue Code of 1986, as amended.

(iii) To cause any securities or other property held as part of the Trust to be registered in the Trustee's own name, in the name of one or more of its nominees, or in the Trustee's account with the Depository Trust Company of New York and to hold any investments in bearer form, but the books and records of the Trustee shall at all times show that all such investments are part of the Trust.

(iv)  To keep that portion of the Trust in cash or cash balances as the Investment Committee or Sponsor may, from time to time, deem to be in the best interest of the Trust.

20

**FMTC WRG 00022**

(v)    To make, execute, acknowledge, and deliver any and all documents of transfer or conveyance and to carry out the powers herein granted.

(vi) To settle, compromise, or submit to arbitration any claims, debts, or damages due to or arising from the Trust; to commence or defend suits or legal or administrative proceedings; to represent the Trust in all suits and legal and administrative hearings; and to pay all reasonable expenses arising from any such action, from the Trust if not paid by the Sponsor.

(vii)    To employ legal, accounting, clerical, and other assistance as may be required in carrying out the provisions of this Agreement and to pay their reasonable expenses and compensation from the Trust if not paid by the Sponsor.

(viii)    To do all other acts although not specifically mentioned herein, as the Trustee may deem necessary to carry out any of the foregoing powers and the purposes of the Trust.

Section 6.  Recordkeeping and Administrative Services to Be Performed.

(a)    General.  The Trustee shall perform those recordkeeping and administrative functions described in  Schedule "A" attached hereto.  These recordkeeping and administrative functions shall be performed within the framework of the Administrator's written directions regarding the Plan's provisions, guidelines and interpretations.

(b)    Accounts.  The Trustee shall keep accurate accounts of all investments, receipts, disbursements, and other transactions hereunder, and shall report the value of the assets held in the Trust as of each Reporting Date. Within thirty (30) days following each Reporting Date or within sixty (60) days in the case of a Reporting Date caused by the resignation or removal of the Trustee, or the termination of this

21

FMTC WRG 00023

Agreement, the Trustee shall file with the Administrative Committee or its designee a written account setting forth all investments, receipts, disbursements, and other transactions effected by the Trustee between the Reporting Date and the immediately prior Reporting Date, and setting forth the value of the Trust as of the Reporting Date. Except as otherwise required under ERISA, upon the expiration of six (6) months from the date of filing such account with the Sponsor, the Trustee shall have no liability or further accountability to anyone with respect to the propriety of its acts or transactions shown in such account, except with respect to such acts or transactions as to which the Sponsor shall within such six (6) month period file with the Trustee written objections.

(c)    Inspection and Audit.  All records generated by the Trustee in accordance with paragraphs (a) and (b) shall be open to inspection and audit, during the Trustee's regular business hours prior to the termination of this Agreement, by the Sponsor or any person designated by the Sponsor.  Upon the resignation or removal of the Trustee or the termination of this Agreement, the Trustee shall provide to the Sponsor, at no expense to the Sponsor, in the format regularly provided to the Sponsor, a statement of each Participant's accounts as of the resignation, removal, or termination, and the Trustee shall provide to the Sponsor or the Plan's new recordkeeper such further records as are reasonable, at the Sponsor's expense.

(d)    Effect of Plan Amendment.  A confirmation of the current qualified status of each Plan is attached hereto as Schedule "F". The Trustee's provision of the recordkeeping and administrative services set forth in this Section 6 shall be conditioned on the Sponsor delivering to the Trustee a copy of any amendment to a Plan as soon as administratively feasible following the amendment's adoption, with, if requested, an IRS determination letter or an opinion of counsel substantially in the form of Schedule "F" covering such amendment, and on the Sponsor providing the Trustee on a

22

FMTC WRG 00024

timely basis with all the information the Sponsor deems necessary for the Trustee to perform the recordkeeping and administrative services and such other information as the Trustee may reasonably request.

(e)    Returns, Reports and Information.  Except as otherwise provided on Schedule "A", the Trustee shall not be responsible for the preparation and filing of returns, reports, and information required of the Trust or Plan by law.  The Trustee shall provide the Sponsor or Administrator with such information as the Sponsor or Administrator may reasonably request to make these filings.  The Sponsor or Administrator shall also be responsible for making any disclosures to Participants required by law including, without limitation, such disclosures as may be required under federal or state truth-in-lending laws with regard to Participant loans, except as otherwise provided in this Agreement or the Schedules hereto.

(f)    Allocation of Plan Interests.  All transfers to, withdrawals from, or other transactions regarding the Trust shall be conducted in such a way that the proportionate interest in the Trust of each Plan and the fair market value of that interest may be determined at any time.  Whenever the assets of more than one Plan are commingled in the Trust or in any investment option, the undivided interest therein of each such Plan shall be debited or credited (as the case may be) (i) for the entire amount of every contribution received on behalf of such Plan, every benefit payment, or other expense attributable solely to such Plan, and every other transaction relating only to such Plan; and (ii) for its proportionate share of every item of collected or accrued income, gain or loss, and general expense, and of any other transactions attributable to the Trust or that investment option as a whole.

Section 7.  Compensation and Expenses.  Within thirty (30) days of receipt of the Trustee's bill, which shall be computed and billed in accordance with Schedule "B," attached hereto and made a part hereof, the Sponsor shall send to the Trustee a payment

23

FMTC WRG 00025

in such amount. All expenses of the Trustee relating directly to the acquisition and disposition of investments constituting part of the Trust, and all taxes of any kind whatsoever that may be levied or assessed under existing or future laws upon or in respect of the Trust or the income thereof, shall be a charge against and paid from the appropriate Participants' accounts.

Section 8. <u>Directions and Indemnification</u>.

(a)    <u>Identity of Administrative Committee and Investment Committee</u>. The Trustee shall be fully protected in relying on the individuals or persons named as members of the Administrative Committee and the Investment Committee or the individuals or persons authorized to act on their behalf which are contained in Authorization Letters in the form of Schedules "D" and "E" attached hereto or on a Plan Designation Form in accordance with Schedule "I" attached hereto or such other individuals or persons as the Sponsor may notify the Trustee in writing.

(b)    <u>Directions from Sponsor or Administrative Committee</u>. Whenever the Sponsor or Administrative Committee provides a direction to the Trustee, the Trustee shall not be liable for any loss arising from the Trustee's execution of such direction if the direction is in writing (or is oral and immediately confirmed in writing) signed by any individual whose name and signature have been submitted (and not withdrawn) in writing to the Trustee by the Sponsor in the form attached hereto as Schedule "D", provided the Trustee reasonably believes the signature of the individual to be genuine. Such direction may also be made via Electronic Data Transfer (EDT) in accordance with procedures agreed to by the Sponsor and the Trustee; provided, however, that the Trustee shall be fully protected in relying on such direction as if it were a direction made in writing by the Sponsor. The Trustee shall have no responsibility to ascertain any direction's (i) accuracy, (ii) compliance with the terms of the Plan or any applicable law, or (iii) effect for tax purposes or otherwise.

24

FMTC WRG 00026

(c) <u>Directions from Investment Committee</u>. Whenever the Investment Committee provides a direction to the Trustee, the Trustee shall not be liable for any loss arising from the direction (i) if the direction is in writing (or is oral and immediately confirmed in writing) signed by any individual whose name and signature have been submitted (and not withdrawn) in writing to the Trustee by the Investment Committee in the form attached hereto as Schedule "E" and (ii) if the Trustee reasonably believes the signature of the individual to be genuine, unless it is clear that the actions to be taken by the Trustee under the direction would be prohibited by the fiduciary duty rules of section 404(a) of ERISA or would be contrary to the terms of a Plan or this Agreement.

(d) <u>Co-Fiduciary Liability</u>. In any other case, the Trustee shall not be liable for any loss arising from any act or omission of another fiduciary under the Plan except as provided in section 405(a) of ERISA. Without limiting the foregoing, the Trustee shall have no liability for the acts or omissions of any predecessor or successor trustee.

(e) <u>Indemnification</u>. (i) The Sponsor shall indemnify the Trustee against, and hold the Trustee harmless from, any and all loss, damage, penalty, liability, cost, and expense, including without limitation, reasonable attorneys' fees and disbursements, ("Damages") that are incurred by, imposed upon, or asserted against the Trustee by reason of any claim, regulatory proceeding, or litigation arising from any act done or omitted to be done by any individual or person with respect to the Plan or Trust, excepting only any and all Damages arising from the Trustee's "negligence" (as defined below), bad faith or willful misconduct.

(ii) The Trustee shall indemnify the Sponsor, the Investment Committee and the Administrative Committee against and hold the Sponsor, the Investment Committee and the Administrative Committee harmless from any and all Damages that are incurred by, imposed upon, or asserted against any of them resulting from the Trustee's "negligence" (as defined below), bad faith or willful misconduct.

25

FMTC WRG 00027

(iii)  For purposes of this subsection (e), "negligence" shall mean the failure to use reasonable diligence and the degree of skill and judgement possessed by one experienced in furnishing trustee services and recordkeeping services to savings plans of similar size and characteristics of the Plans.

(f)    Survival.  The provisions of this Section 8 shall survive the termination of this Agreement.

Section 9.  Resignation or Removal of Trustee.

(a)    Resignation.  The Trustee may resign at any time upon sixty (60) days' notice in writing to the Sponsor, unless a shorter period of notice is agreed upon by the Sponsor.

(b)    Removal.  The Investment Committee or the Sponsor may remove the Trustee at any time upon sixty (60) days' notice in writing to the Trustee, unless a shorter period of notice is agreed upon by the Trustee.

Section 10.  Successor Trustee.

(a)    Appointment.  If the office of Trustee becomes vacant for any reason, the Sponsor or the Investment Committee may in writing appoint a successor trustee under this Agreement.  The successor trustee shall have all of the rights, powers, privileges, obligations, duties, liabilities, and immunities granted to the Trustee under this Agreement.  The successor trustee and predecessor trustee shall not be liable for the acts or omissions of the other with respect to the Trust.

(b)    Acceptance.  When the successor trustee accepts its appointment under this Agreement, title to and possession of the Trust assets shall immediately vest in the successor trustee without any further action on the part of the predecessor trustee.  The predecessor trustee shall execute all instruments and do all acts that reasonably may be

26

FMTC WRG 00028

necessary or reasonably may be requested in writing by the Investment Committee or the successor trustee to vest title to all Trust assets in the successor trustee or to deliver all Trust assets to the successor trustee.

(c)   Corporate Action.  Any successor of the Trustee or successor trustee, through sale or transfer of the business or trust department of the Trustee or successor trustee, or through reorganization, consolidation, or merger, or any similar transaction, shall, upon consummation of the transaction, become the successor trustee under this Agreement.

Section 11.  Termination.  This Agreement may be terminated at any time by the Investment Committee or the Sponsor upon sixty (60) days' notice in writing to the Trustee.  On the date of the termination of this Agreement, the Trustee shall forthwith transfer and deliver to such individual or entity as the Sponsor or the Investment Committee shall designate, all cash and assets then constituting the Trust.  If, by the termination date, the Sponsor or the Investment Committee has not notified the Trustee in writing as to whom the assets and cash are to be transferred and delivered, the Trustee may bring an appropriate action or proceeding for leave to deposit the assets and cash in a court of competent jurisdiction.  The Trustee shall be reimbursed by the Sponsor for all costs and expenses of the action or proceeding including, without limitation, reasonable attorneys' fees and disbursements.

Section 12.  Resignation, Removal, and Termination Notices.  All notices of resignation, removal, or termination under this Agreement must be in writing and mailed to the party to which the notice is being given by certified or registered mail, return receipt requested, to the Chairman of the Investment Committee, c/o Daniel M. Murtaugh, W.R. Grace & Co., One Town Center Road, Boca Raton, FL 33486, and to the Trustee c/o John M. Kimpel, Fidelity Investments, 82 Devonshire Street, Boston, Massachusetts 02109, or to such other addresses as the parties have notified each other of in the foregoing manner.

27

FMTC WRG 00029

Section 13. <u>Duration</u>. This Trust shall continue in effect without limit as to time, subject, however, to the provisions of this Agreement relating to amendment, modification, and termination thereof.

Section 14. <u>Amendment or Modification</u>. This Agreement and Schedules hereto may be amended or modified at any time and from time to time only by an instrument executed by both the Investment Committee and the Trustee. Notwithstanding the foregoing, to reflect increased operating costs the Trustee may once each calendar year amend Schedule "B" without the consent of the Sponsor or the Investment Committee upon one hundred-eighty (180) days written notice to the Sponsor.

Section 15. <u>General</u>.

(a)   <u>Performance by Trustee, its Agents or Affiliates</u>. The Sponsor acknowledges and authorizes that the services to be provided under this Agreement shall be provided by the Trustee, its agents or affiliates, including Fidelity Investments Institutional Operations Company or its successor, and that certain of such services may be provided pursuant to one or more other contractual agreements or relationships.

(b)   <u>Delegation by Employer</u>. By authorizing the assets of any Plan as to which it is an Employer to be deposited in the Trust, each Employer, other than the Sponsor, hereby irrevocably delegates and grants to the Sponsor full and exclusive power and authority to exercise all of the powers conferred upon the Sponsor and each Employer by the terms of this Agreement, and to take or refrain from taking any and all action which such Employer might otherwise take or refrain from taking with respect to this Agreement, including the sole and exclusive power to exercise, enforce or waive any rights whatsoever which such Employer might otherwise have with respect to the Trust, and irrevocably appoints the Sponsor as its agent for all purposes under this Agreement. The Trustee shall have no obligation to account to any such Employer or to follow the instructions of or otherwise deal with any such Employer, the intention being that the Trustee shall deal solely with

28

FMTC WRG 00030

the Sponsor.

(c)    Entire Agreement. This Agreement and the Schedules hereto contain all of the terms agreed upon between the parties with respect to the subject matter hereof.

(d)    Waiver. No waiver by either party of any failure or refusal to comply with an obligation hereunder shall be deemed a waiver of any other or subsequent failure or refusal to so comply.

(e)    Successors and Assigns. The provisions of in this Agreement shall inure to the benefit of, and shall bind, the successors and assigns of the respective parties.

(f)    Partial Invalidity. If any term or provision of this Agreement or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Agreement, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

(g)    Section Headings. The headings of the various sections and subsections of this Agreement have been inserted only for the purposes of convenience and are not part of this Agreement and shall not be deemed in any manner to modify, explain, expand or restrict any of the provisions of this Agreement.

Section 16. Governing Law.

(a)    Controlling Law. With respect to the activities of the Trustee, the validity, construction, effect and administration of this Agreement shall be governed by and interpreted in accordance with the banking laws of the Commonwealth of Massachusetts, in all other respects this Agreement shall be governed by and interpreted in accordance with

29

FMTC WRG 00031

the laws of the State of New York; except to the extent those laws are superseded under section 514 of ERISA.

(b)    Trust Agreement Controls.  The Trustee is not a party to any Plan, and in the event of any conflict between the provisions of the Plan and the provisions of this Agreement with respect to the activities of the Trustee, the provisions of this Agreement shall control.

Section 17.  Plan Qualification.  The Sponsor shall be responsible for verifying that while any assets of a particular Plan are held in the Trust, the Plan (i) is qualified within the meaning of section 401(a) of the Code; (ii) is permitted by existing or future rulings of the United States Treasury Department to pool its funds in a group trust; and (iii) permits its assets to be commingled for investment purposes with the assets of other such plans by investing such assets in this Trust.  If any Plan ceases to be qualified within the meaning of section 401(a) of the Code, the Sponsor shall notify the Trustee as promptly as is reasonable.  Upon receipt of such notice, the Trustee shall promptly segregate and withdraw from the Trust, the assets which are allocable to such disqualified Plan, and shall dispose of such assets in the manner directed by the Sponsor.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized officers as of the day and year first above written.

W.R. GRACE & CO.

Attest: _____    By _____
Secretary                             Vice President

FIDELITY MANAGEMENT TRUST COMPANY

Attest: _____    By _____
Assistant Clerk                        Senior Vice President

30

FMTC WRG 00032

Schedule "A"

## RECORDKEEPING & ADMINISTRATIVE SERVICES

### Administration

*   Establishment and maintenance of Participant account and election percentages.

*   Maintenance of eight plan investment options:
    - Fixed Income Fund (GIC)
    - Fidelity Blue Chip Growth
    - Fidelity Contrafund
    - Fidelity OTC Portfolio
    - Fidelity Growth & Income Portfolio
    - W.R. Grace Common Stock Fund
    - Company Contribution ESOP Stock Fund
    - Fidelity Balanced Fund

*   Maintenance of the following money classifications:
    For the W.R. Grace & Co. Salaried Employees Savings and Investment Plan:
    - Before-tax Savings
    - Company Match
    - New Start After-tax
    - Pre-1987 After-tax
    - Supplemental Contribution
    - Rollover

    For the W.R. Grace & Co. Hourly Employees Savings and Investment Plan:
    - Before-tax Savings
    - Company Match
    - New Start After-tax
    - Pre-1987 After-tax
    - Rollover

    For the Grace Energy Employees Savings and Investment Plan:
    - Before-tax Savings
    - Company Match
    - New Start After-tax
    - Pre-1987 After-tax
    - Supplemental Contribution
    - Company NRG
    - Supplemental S. Flow
    - Company S. Flow
    - Rollover

.   The Trustee will provide only the recordkeeping and administrative services set forth on this Schedule "A" and no others.

### Processing

*   Weekly processing of contribution data.
*   Daily processing of transfers and changes of future allocations.
*   Weekly processing of withdrawals.

31

FMTC WRG 00033

**Other**

* Preparation of: monthly trial balance, annual administrative reports, quarterly
  Participant statements, annual report of microfiche reflecting year-end balances,
  annual dividend pass-through tape, and 1099-Rs
* Processing of Participant loans
* Preparation of employee communications describing available investment options,
  including multimedia informational materials and group presentations, as agreed to by
  the Administrator and the Trustee.
* Miscellaneous ad hoc reports as agreed to by the Sponsor and the Trustee

W.R. GRACE & CO.                          FIDELITY MANAGEMENT TRUST COMPANY

By _William T. Monroe_ 6/15/93            By _____ 6/30/93
                        Date                 Senior Vice President        Date

32

FMTC WRG 00034

Schedule "B"
## FEE SCHEDULE

| | |
|---|---|
| . Annual Participant Fee | $28.00 per participant*, billed and payable quarterly. |
| . Loan Fee | Establishment fee of $35.00 per loan account; annual fee of $15.00 per loan account. |
| . New Participant Enrollment | $5.00 per nonparticipating employee record. |
| . Return of Excess Fee | $25.00 per participant, a one-time charge per calculation and check generation. |

. Other Fees: separate charges for optional use of remote access, 401(k) and 401(m) testing, extraordinary expenses resulting from large numbers of simultaneous manual transactions or from errors not caused by Fidelity, or for reports not contemplated in this Agreement, except for reports agreed to by the Sponsor and the Trustee. The Administrator may withdraw reasonable administrative fees from the Trust by written direction to the Trustee.

* This fee will be imposed pro rata for each calendar quarter, or any part thereof, that it remains necessary to maintain a participant's account(s) as part of the Plan's records, e.g., vested, deferred, forfeiture, top-heavy and terminated participants who must remain on file through calendar year-end for 1099-R reporting purposes.

## GIC Fees

. GIC Accounting Fee                    .02% per year on all GIC assets.

## Trustee Fees

. To the extent that assets are invested in Sponsor Stock, .10% of such assets in the Trust payable pro rata quarterly on the basis of such assets as of the calendar quarter's last valuation date, subject to a $30,000 maximum annually.


W.R. GRACE & CO.                        FIDELITY MANAGEMENT TRUST COMPANY

By _William T. Monroe_  6/10/93        By _____  6/30/93
                        Date            Senior Vice President            Date


33

FMTC WRG 00035

Schedule "C"

## INVESTMENT OPTIONS

In accordance with Section 5(b), the Investment Committee hereby directs the Trustee that Participants' individual accounts may be invested in the following investment options:

- Fixed Income Fund (GIC)
- Fidelity Blue Chip Growth
- Fidelity Contrafund
- Fidelity OTC Portfolio
- Fidelity Growth & Income Portfolio
- W.R. Grace Common Stock Fund
- Company Contribution ESOP Stock Fund
- Fidelity Balanced Fund

The investment option referred to in Section 5(c) and Section 5(e)(vi)(B)(5) shall be the Fixed Income Fund ("GIC").


W.R. GRACE & CO.

By _William T. Monroe_  6/5/93
                        Date

34

FMTC WRG 00036

William L. Monroe, *Vice President*
**Human Resources**

# GRACE

**Schedule "D"**

W. R. Grace & Co.
One Town Center Road
Boca Raton, FL 33486-1010

June 16, 1993

Ms. Jacqueline W. McCarthy
Fidelity Investments Institutional Operations Company
82 Devonshire Street
Boston, Massachusetts 02109

Dear Ms. McCarthy:

 This letter is sent to you in accordance with Section 8(b) of the Trust Agreement, dated as of July 1, 1993, between W. R. Grace & Co. and Fidelity Management Trust Company (the "Trust"). We hereby designate N. J. Mattera and J. A. Longo as the individuals who may provide directions on behalf of the Administrative Committee (as defined in the attached Schedule "I") and the Sponsor (as defined by the Trust) with respect to administrative matters upon which Fidelity Management Trust Company shall be fully protected in relying in accordance with the Trust. Only one such individual need provide any direction. The signature of each designated individual is set forth below and certified to be such.

 You may rely upon each designation and certification set forth in this letter until we deliver to you written notice of a change with respect to any such designation or certification.

Very truly yours,

W. R. Grace & Co.

By _____
  W. L. Monroe
  Vice President

_____
J. A. Longo

_____
N. J. Mattera

**GRACE**

Schedule "E"

W. R. Grace & Co.
One Town Center Road
Boca Raton, FL 33486-1010

(407) 362-2000

June 18, 1993

Ms. Jacqueline W. McCarthy
Fidelity Investments Institutional Operations Company
82 Devonshire Street
Boston, Massachusetts 02109

Dear Ms. McCarthy:

    This letter is sent to you in accordance with Section 8(c) of the Master Trust Agreement, dated as of July 1, 1993, between W. R. Grace & Co. and Fidelity Management Trust Company (the "Trust"). We hereby designate G. P. Jenkins and S. Olila as the individuals who may provide investment direction on behalf of the Investment Committee of the W. R. Grace & Co. Profit Sharing and Savings and Investment Plans. In addition, we designate D. M. Murtaugh and P. M. Fouchet as the individuals who may provide direction on behalf of the Investment Committee, for the purpose of maintaining adequate cash reserves. Fidelity Management Trust Company shall be fully protected in relying upon any such direction, in accordance with the Trust. Only one such individual need provide any direction. The signature of each designated individual is set forth below and certified to be such.

    You may rely upon each designation and certification set forth in this letter until we deliver to you written notice of a change with respect to any such designation or certification.

Very truly yours,

Investment Committee of the W. R. Grace & Co. Profit Sharing and Savings and Investment Plans

By _____
    G. P. Jenkins
    Chairman

_____
P. M. Fouchet

_____
G. P. Jenkins

_____
D. M. Murtaugh

_____
S. Olila

FMTC WRG 00038

# GRACE

**Schedule "F"**

John Forgach
Benefits Counsel

W. R. Grace & Co.
One Town Center Road
Boca Raton, FL 33486-1010

(407) 362-1654
Fax: (407) 362-1635

June 18, 1993

Jacqueline W. McCarthy
Fidelity Institutional Retirement
 Services Company
82 Devonshire Street - A8B
Boston, MA 02109

Dear Ms. McCarthy:

You have asked me, as Benefits Counsel of W. R. Grace & Co., to render an opinion regarding certain matters with respect to the following employee benefit plans maintained by W. R. Grace & Co. ("Grace"): the Grace Salaried Employees Savings and Investment Plan (the "Salaried Plan"), the Grace Hourly Employees Savings and Investment Plan (the "Hourly Plan"), the employee stock ownership plans that are part of those Plans and the Grace Energy Corporation Savings and Investment Plan (collectively, the "Grace Plans").

In connection with this opinion, I have reviewed the Grace Plans, the Master Trust Agreement dated July 1, 1993 by and between Grace and Fidelity Management Trust Company, registration statements with respect to the Grace Plans filed under the Securities Act of 1933, as amended (the "Securities Act"), and such other documents as I have deemed necessary for the opinions hereinafter expressed.

Based on the foregoing, I am of the opinion that:

1.  Each Grace Plan complies in all material respects with the qualification requirements of section 401(a) of the Internal Revenue Code of 1986, as amended (the "Code").

2.  Each Grace Plan is an "eligible individual account plan" (as defined under section 407(d)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA")) and that the shares of common stock of Grace held and to be purchased under the Grace Plans are "qualifying employer securities" (as defined under section 407(d)(5) of ERISA).

FMTC WRG 00039

- 2 -

3.   The Grace Plans are registered under the Securities Act.

Also, enclosed is a copy of the most recent determination letters received from the Internal Revenue Service (the "Service") with respect to the Salaried Plan and Hourly Plan.

Each of the Grace Plans will be submitted to the Service on a timely basis for a determination that the Grace Plans comply with the applicable provisions of the Tax Reform Act of 1986 and subsequent legislation.

Sincerely,

John Forgach

JF/dk
attachments

FMTC WRG 00040

:nt.......
Revenue Service

X 1680
.YN, NY   11202-0000

In reply refer to:  11210011
NOV. 25, 1985    LTR 835C
13-5114230P
                          02230

RACE & CO
A MILLER
 PLAZA 1114 AVE OF AMERICAS
ORK, NY   10036

:ict Office Code and
 Serial Number: 135217020 EP
 of Plan: Salaried Employee Savings &
          Investment Plan
ication Form: 5301
oyer Identification Number: 13-5114230
 Number: 123
 Number: 130004403

 Applicant:

d on the information supplied, we have made a favorable
:rmination on your application identified above.  Please keep
: letter in your permanent records.

:inued qualification of the plan will depend on its effect in
cation under its present form.  (See section 1.401-1(b)(3) of the
ome Tax Regulations.)  The status of the plan in operation will be
iewed periodically.

 enclosed document describes some events that could occur after
 receive this letter that would automatically nullify it without
cific notice from us.  The document also explains how operation of
 plan may affect a favorable determination letter, and contains
.ormation about filing requirements.

.s letter relates only to the status of your plan under the
:ernal Revenue Code.  It is not a determination regarding the
:ect of other Federal or local statutes.

is letter relates to the amendments adopted on Jan. 18, 1985, May
, 1985 & May 22, 1985.  This letter shall serve as a determination
at this plan is qualified under section 401(k)of the Internal
venue Code.

l correspondence should be sent to the address on the front of
is letter.

: you have any questions, please contact M. Goldberg at
.8-780-6129.

FMTC WRG 00041

NOV. 25, 1985          LTR 835C
13-5114230P
                                    02231

GRACE & CO
A MILLER
E PLAZA 1114 AVE OF AMERICAS
YORK, NY   10036

                        Sincerely yours,

                        J. J. Jennings
                        District Director

losure(s):
pb 515
. 794

FMTC WRG 00042

P.O. BOX 1680
BROKLYN, NY 11202

te:        FEB 13 1989

R GRACE & CO
70 D A HULBERT
ACE PLAZA 1114 AVE OF THE AMERICA
W YORK, NY 10036-7794

Employer Identification Number:
    13-3461988
File Folder Number:
    1300/4242
Person to Contact:
    STUART FIELDS
Contact Telephone Number:
    (718) 780-6194
Plan Name:
    W R GRACE & CO HOURLY EMPLOYEES
    SAVINGS & INVESTMENT PLAN
Plan Number: 100

ear Applicant:

    Based on the information supplied, we have made a favorable determination
n your application identified above.  Please keep this letter in your perman-
ent records.

    Continued qualification of the plan will depend on its effect in operation
under its present form.  (See section 1.401-1(b)(3) of the Income Tax Regula-
tions.)  The status of the plan in operation will be reviewed periodically.

    The enclosed document describes the impact of Notice 86-13 and some events
that could occur after you receive this letter that would automatically nullify
it without specific notice from us.  The document also explains how operation
of the plan may affect a favorable determination letter, and contains informa-
tion about filing requirements.

    This letter relates only to the status of your plan under the Internal
Revenue Code.  It is not a determination regarding the effect of other Federal
or local statutes.

    This determination is subject to your adoption of the proposed amendments
submitted in your or your representative's letter dated Dec 16 & 29, 1988.
The proposed amendment should be adopted on or before the date prescribed by
the regulations under Code section 401(b).

    This determination letter is applicable for the amendment(s) adopted on
May 25, 1988.

    This determination letter is applicable for the plan adopted on
January 1, 1987.

                                                Letter 835(DO/CG)

**FMTC WRG 00043**

-2-

W. GRACE & CO

If you have any questions concerning this matter, please contact the
rson whose name and telephone number are shown above.

Sincerely yours,

Eugene D. Alexander
District Director

nclosures:
ublication 794
WEA 515

Letter 835(DO/CG)

FMTC WRG 00044

Schedule "G"

## EXISTING GICs

    In accordance with Section 5(b), the Investment Committee hereby directs the Trustee to continue to hold the following Existing GICs until such time as the Investment Committee directs otherwise:

- Contract Issuer:    New England
  Effective Date:    7/16/86
  Contract #:    #4501

- Contract Issuer:    Prudential
  Effective Date:    10/15/86
  Contract #:    #5540

- Contract Issuer:    Prudential
  Effective Date:    5/27/87
  Contract #:    #5680

- Contract Issuer:    Metropolitan
  Effective Date:    12/31/87
  Contract #:    #9474-2

- Contract Issuer:    Metropolitan
  Effective Date:    1/13/89
  Contract #:    #10348-0

- Contract Issuer:    Metropolitan
  Effective Date:    10/4/89
  Contract #:    #11170-9

- Contract Issuer:    Prudential
  Effective Date:    10/25/90
  Contract #:    #6657

- Contract Issuer:    Prudential
  Effective Date:    9/5/91
  Contract #:    #6657

- Contract Issuer:    Metropolitan
  Effective Date:    10/92
  Contract #:    #13332

W.R. GRACE & CO.

By _William J. Monroe_  6/15/93
                      Date

38

FMTC WRG 00045

- 2 -

We hereby further certify that each Employer (as defined by the Trust Agreement) is bound by Section 15(b) of said Trust Agreement.

The member of the Administrative Committee who is authorized to provide Fidelity with direction with respect to administrative matters is J. A. Longo. In addition, N. J. Mattera is also authorized to provide Fidelity with direction with respect to such matters.

The members of the Investment Committee who are authorized to provide Fidelity with direction with respect to investment matters are G. P. Jenkins and S. Ollila. In addition, D. M. Murtaugh and P. M. Fouchet are also authorized to provide Fidelity with direction with respect to such matters for the purpose of maintaining adequate cash reserves.

You may rely upon the foregoing designations and certifications until we deliver to you written notice of a change in the information set forth therein.

Very truly yours,

W. R. Grace & Co.

By W. M. Monroe
W. L. Monroe
Vice President

FMTC WRG 00046

Schedule "H"

## TELEPHONE EXCHANGE PROCEDURES

The following telephone exchange procedures are currently employed by Fidelity Investments Retirement Services Company (FIRSCO).

Telephone exchange hours are 8:30 a.m. (EST) to 8:00 p.m. (EST) on each business day. A "business day" is any day on which the New York Stock Exchange is open.

FIRSCO reserves the right to change these telephone exchange procedures at its discretion, provided that, no change shall become effective unless the Administrator receives 30 days prior notice describing the change.

### Mutual Funds

### Exchanges Between Mutual Funds

Participants may call on any business day to exchange between the mutual funds. If the request is received before 4:00 p.m. (EST), it will receive that day's trade date. Calls received after 4:00 p.m. (EST) will be processed on a next day basis.

### Fixed-Income Fund

### Exchanges Between Mutual Funds and Fixed Income Fund

Participants who wish to exchange between a mutual fund and the Fixed Income Fund may call on any business day. If the request is received before 4:00 p.m. (EST), it will receive that day's trade date. Calls received after 4:00 p.m. (EST) will be processed on a next day basis.

### Exchange Restrictions

Participants will not be permitted to make direct transfers between a GIC Fund and a competing fund. Participants who wish to exchange between the Fixed Income Fund and a competing fund (within the meaning of the GICs or Existing GICs held in the Fixed Income Fund), must first exchange into a non-competing fund for a period of 180 days.

### W.R. Grace Common Stock Fund
### Company Contribution ESOP Stock Fund

### Exchanges Between Mutual Funds and W.R. Grace Common Stock Fund or Company Contribution ESOP Stock Fund

Participants may call on any business day to exchange between the mutual funds and the W.R. Grace Common Stock Fund or the Company Contribution ESOP Stock Fund. If the request is received before 4:00 p.m. (EST), it will receive that day's trade date. Calls received after 4:00 p.m. (EST) will be processed on a next day basis.

### Exchanges Between Fixed Income Fund and W.R. Grace Common Stock Fund or Company Contribution ESOP Stock Fund

Participants who wish to between a Fixed Income Fund and the W.R. Grace Common Stock Fund or the Company Contribution ESOP Stock Fund may call on any business day. If

FMTC WRG 00047

the request is received before 4:00 p.m. (EST), it will receive that day's trade date. Calls received after 4:00 p.m. (EST) will be processed on a next day basis.

### Exchange Restrictions

It is the intention of the Trustee to maintain a sufficient liquidity reserve in the W.R. Grace Common Stock Fund and the Company Contribution ESOP Stock Fund to meet exchange, redemption or withdrawal requests. However, if there is insufficient liquidity in either Fund to allow for same day exchanges, the Trustee will be required to sell shares of Sponsor Stock to meet the exchange requests. If this occurs, the subsequent exchange into other Plan investment options will take place five (5) business days later.


W.R. GRACE & CO.

By _William T. Monroe_ 6/13/93
       Date

40

FMTC WRG 00048

Schedule "J"

# SCHEDULE OF OPERATING PROCEDURES
## FOR THE FIXED INCOME FUND
### OF THE W.R GRACE AND COMPANY SAVINGS AND INVESTMENT PLANS.

I.    Description of Investment Option

The Fixed Income Fund will be comprised of units in the Fidelity Employee
Benefit U.S. Government Reserves Portfolio ("STIF"), and the following
Guaranteed Investment Contracts ("GICs") purchased prior to the effective date
of the Trust Agreement between the Trustee and the Sponsor.

| | |
|---|---|
| The New England - 4501 | Metropolitan Life - 11170-9 |
| Prudential - 5540 | Prudential - 6657    9.75% |
| Prudential - 5680 | Prudential - 6657    10.20% |
| Metropolitan Life - 9474-2 | Prudential - 6657    8.45% |
| Metropolitan Life - 10348-0 | Prudential - 6657    8.90% |
| Metropolitan Life - 13332 | |

II.    Investment Option Transactions

All transactions for the Fixed Income Fund will be coordinated by the Trustee
based on the procedures outlined in this document.

III.    Valuation

The Trustee will value the Fixed Income Fund on a daily basis and produce a
blended mil rate to reflect the net income earned by the Fixed Income Fund.

IV.    Money Movement

All money transfers to and from the Fixed Income Fund will be made through the
STIF portion of the Fixed Income Fund. Plan level transactions representing

**FMTC WRG 00049**

cumulative participant level transactions will update nightly to the STIF portion to ensure "same day" settlement of all transactions.

## V.   Cash Management

The Sponsor will maintain 3% of the Fixed Income Fund in the STIF portion. The Trustee will monitor the cash flows and the balance of the STIF portion. If the STIF balance exceeds 3%, the Trustee will transfer the excess to the current open window contract. If the STIF balance falls below 3%, the Trustee will request money from the GIC carriers on a LIFO basis to replenish the balance to 3%.

## VI.   GIC Placements

The Sponsor will inform the GIC carrier of the Trustee's role as authorized transactor and will direct the GIC carrier to send the Trustee an interest accrual schedule and monthly statements on an on-going basis.

The Sponsor will complete and return to the Trustee a contract purchase memo before 4 p.m. EST ten days prior to any contract funding. The Trustee is then responsible for wiring the funds and any subsequent cash flow out of the STIF portion to the new GIC.

The Sponsor will send any contractual documents for the new GIC to the Trustee for execution. The documents must be accompanied by a letter, signed by an authorized representative of the Sponsor, directing the Trustee to execute the document.

## VII.   GIC Maturities

The proceeds from a maturing GIC will be transferred to the STIF portion for subsequent reinvestment in the Fixed Income Fund. The Trustee will provide wiring instructions to the GIC carrier.

## VIII.   Reconciliation

The Fidelity Participant Recordkeeping System (FPRS) will be reconciled to the Managed Income Portfolio Accounting System (GUIDE) on a daily and monthly basis. The GIC portion will be reconciled to the carrier balances on a monthly basis.

**FMTC WRG 00050**