IX.    Fee Collection for Accounting Services

Accounting fees will be deducted from the earnings of the Fixed Income Fund. the Trustee will collect its fees monthly.

X.    Changes to the Schedule

This Schedule may be amended or modified at any time and from time to time only by an instrument executed by both the Trustee and the Sponsor.

_____
Fidelity Management Trust Company

_____
W.R. Grace & Co.

By: _____
            Date

By: _____
            Date

FMTC WRG 00051

## AMENDMENT TO TRUST AGREEMENT BETWEEN
## FIDELITY MANAGEMENT TRUST COMPANY AND
## W.R. GRACE & CO.

THIS AMENDMENT, effective as of the date first signed below, by and between Fidelity Management Trust Company (the "Trustee") and W.R. Grace & Co. (the "Sponsor");

WITNESSETH:

WHEREAS, the Trustee and the Sponsor heretofore entered into a Trust Agreement dated July 1, 1993, with regard to the W.R. Grace & Co. Salaried Employees Savings and Investment Plan, the W.R. Grace & Co. Hourly Employees Savings and Investment Plan, and the employee stock ownership plans within those plans (individually and collectively, the "Plan"); and

WHEREAS, the Trustee and the Sponsor now desire to amend said Trust Agreement as provided for in Section 14 thereof;

NOW THEREFORE, in consideration of the above premises, the Trustee and the Sponsor hereby amend the Trust Agreement by:

(1)     Restating Section 4(e) Sponsor Stock, in its entirety, as follows:

(e)     Sponsor Stock. Trust investments in Sponsor Stock shall be made via the W.R. Grace Common Stock Fund (Employee) and the W.R. Grace Company Contribution Stock Fund (Employer) (individually and collectively, the "Stock Fund"). Investments in the Stock Fund shall consist primarily of shares of Sponsor Stock. The Stock Fund shall also include cash or short-term liquid investments, in accordance with this paragraph, in amounts designed to satisfy daily participant exchange or withdrawal requests. Such holdings will include Colchester Street Trust: Money Market Portfolio: Class I or such other Mutual Fund or commingled money market pool as agreed to in writing by the Sponsor and Trustee. The Named Fiduciary shall, after consultation with the Trustee, establish and communicate to the Trustee in writing a target percentage and drift allowance for such short-term liquid investments. Subject to its ability to execute open-market trades in Sponsor Stock or to otherwise trade with the Sponsor, the Trustee shall be responsible for ensuring that the short-term investments held in the Stock Fund falls within the agreed-upon range over time. Each participant's proportional interest in the Stock Fund shall be measured in units of participation, rather than shares of Sponsor Stock. Such units shall represent a proportionate interest in all of the assets of the Stock Fund, which includes shares of Sponsor Stock, short-term investments and at times, receivables and payables (such as receivables and payables arising out of unsettled stock trades). The Trustee shall determine a daily net asset value ("NAV") for each unit outstanding of the Stock Fund. Valuation of the Stock Fund shall be based upon: (a) the New York Stock Exchange ("NYSE") closing price of the stock; or (b) if unavailable, the latest available price as reported by the principal national securities exchange on which the Sponsor Stock is traded (the "Closing Price"); or (c) if neither is available, the price determined in good faith by the Trustee. The NAV shall be adjusted for gains or losses realized on sales of Sponsor Stock, appreciation or depreciation in the value of those shares owned, dividends paid on Sponsor Stock to the extent not used to purchase additional units of the Stock Fund for affected participants, and interest on the short-term investments held by the Stock Fund, payables and receivables for pending stock trades, receivables for dividends not yet distributed, and payables for other expenses of the Stock Fund, including principal obligations, if any, and expenses that, pursuant to Sponsor direction, the Trustee accrues or pays from the Stock Fund. At the direction of the Sponsor, the NAV may also be adjusted for commissions on purchases and sales of Sponsor Stock.

FMTC WRG 00052

(i)    <u>Acquisition Limit</u>. Pursuant to the Plan, the Trust may be invested in Sponsor Stock to the extent necessary to comply with investment directions in accordance with this Agreement. The Sponsor shall be responsible for providing specific direction on any acquisition limits required by the Plan or applicable law.

(ii)    <u>Fiduciary Duty</u>.

(A)    The Named Fiduciary shall continually monitor the suitability under the fiduciary duty rules of section 404(a)(1) of ERISA (as modified by section 404(a)(2) of ERISA) of acquiring and holding Sponsor Stock. The Trustee shall not be liable for any loss or expense which arises from the directions of the Named Fiduciary with respect to the acquisition and holding of Sponsor Stock, unless it is clear on their face that the actions to be taken under those directions would be prohibited by the foregoing fiduciary duty rules or would be contrary to the terms of this Agreement.

(B)    Each participant with an interest in Sponsor Stock (or, in the event of the participant's death, his beneficiary) is, for purposes of this Section 4(e)(ii), hereby designated as a "named fiduciary" (within the meaning of Section 403(a)(1) of ERISA), with respect to a pro rata portion of allocated shares not purchased at the direction of participants, and such participant (or beneficiary) shall have the right to direct the Trustee as to the manner in which the Trustee is to vote or tender such shares.

(iii)    <u>Purchases and Sales of Sponsor Stock</u>. Unless otherwise directed by the Sponsor in writing pursuant to directions that the Trustee can administratively implement, the following provisions shall govern purchases and sales of Sponsor Stock.

Purchase and sales of Sponsor Stock shall be made on the open market in accordance with the Trustee's standard trading guidelines, as they may be amended by the Trustee from time to time, as necessary to honor exchange and withdrawal activity and to maintain the target cash percentage and drift allowance for the Stock Fund, provided that:

(A)    If the Trustee is unable to purchase or sell the total number of shares required to be purchased or sold on such day as a result of market conditions; or

(B)    If the Trustee is prohibited by the Securities and Exchange Commission, the New York Stock Exchange or principal exchange on which the Sponsor Stock is traded, or any other regulatory body from purchasing or selling any or all of the shares required to be purchased or sold on such day, then the Trustee shall purchase or sell such shares as soon thereafter as administratively feasible.

(iv)    <u>Execution of Purchases and Sales of Units</u>. Unless otherwise directed in writing pursuant to directions that the Trustee can administratively implement, purchases and sales of units shall be made as follows:

(A)    Subject to subparagraphs (B) and (C) below, purchases and sales of units in the Stock Fund (other than for exchanges) shall be made on the date on which the Trustee receives from the Administrator in good order all information, documentation, and wire transfers of funds (if applicable), necessary to accurately effect such transactions. Exchanges of units in the Stock Fund shall be made in accordance with the Exchange Guidelines attached hereto as Schedule "H".

(B)    Aggregate sales of units in the Stock Fund on any day shall be limited to the Stock Fund's Available Liquidity for that day. For these purposes, Available Liquidity shall mean the amount of short-term investments held in the fund decreased by any outgoing cash for expenses

FMTC WRG 00053

then due, payables for loan principal, and obligations for pending stock purchases, and increased by incoming cash (such as contributions, exchanges in, loan repayments) and to the extent credit is available and allocable to the Stock Fund, receivables for pending stock sales. In the event that the requested sales exceed the Available Liquidity, then transactions shall be processed giving precedence to distributions, loans and withdrawals, and otherwise on a first-in first-out (FIFO) basis, as provided in Schedule "L" (the "Specified Hierarchy"). So long as the Stock Fund is open for such transactions, sales of units that are requested but not processed on a given day due to insufficient Available Liquidity shall be suspended until Available Liquidity is sufficient to honor such transactions in accordance with the Specified Hierarchy.

(C)     The Trustee shall close the Stock Fund to sales or purchases of units, as applicable, on any date on which trading in the Sponsor Stock has been suspended or substantial purchase or sale orders are outstanding and cannot be executed.

(v)     <u>Securities Law Reports</u>. The Named Fiduciary shall be responsible for filing all reports required under Federal or state securities laws with respect to the Trust's ownership of Sponsor Stock, including, without limitation, any reports required under section 13 or 16 of the Securities Exchange Act of 1934, and shall immediately notify the Trustee in writing of any requirement to stop purchases or sales of Sponsor Stock pending the filing of any report. The Trustee shall provide to the Named Fiduciary such information on the Trust's ownership of Sponsor Stock as the Named Fiduciary may reasonably request in order to comply with Federal or state securities laws.

(vi)     <u>Voting and Tender Offers</u>. Notwithstanding any other provision of this Agreement the provisions of this Section shall govern the voting and tendering of Sponsor Stock. The Sponsor shall provide and pay for all printing, mailing, tabulation and other costs associated with the voting and tendering of Sponsor Stock. The Trustee, after consultation with the Sponsor, shall prepare the necessary documents associated with the voting and tendering of sponsor stock.

(A)     <u>Voting</u>.
(1)     When the issuer of Sponsor Stock prepares for any annual or special meeting, the Sponsor shall notify the Trustee at least thirty (30) days in advance of the intended record date and shall cause a copy of all proxy solicitation materials to be sent to the Trustee. If requested by the Trustee, the Sponsor shall certify to the Trustee that the aforementioned materials represents the same information that is distributed to shareholders of Sponsor Stock. Based on these materials the Trustee shall prepare a voting instruction form and shall provide a copy of all proxy solicitation materials to be sent to each Plan participant with an interest in Sponsor Stock held in the Trust, together with the foregoing voting instruction form to be returned to the Trustee or its designee. The form shall show the proportional interest in the number of full and fractional shares of Sponsor Stock credited to the participant's accounts held in the Stock Fund.

(2)     Each participant with an interest in the Stock Fund shall have the right to direct the Trustee as to the manner in which the Trustee is to vote (including not to vote) that number of shares of Sponsor Stock reflecting such participant's proportional interest in the Stock Fund (both vested and unvested). Directions from a participant to the Trustee concerning the voting of Sponsor Stock shall be communicated in writing, or by such other means as is agreed upon by the Trustee and the Sponsor. These directions shall be held in confidence by the Trustee and shall not be divulged to the Sponsor, or any officer or employee thereof, or any other person except to the extent that the consequences of such directions are reflected in reports regularly communicated to any such persons in the ordinary course of the performance of the Trustee's services hereunder. Upon its receipt of the directions, the Trustee shall vote the shares of Sponsor

3

FMTC WRG 00054

Stock reflecting the participant's proportional interest in the Stock Fund as directed by the participant. Except as otherwise required by law, the Trustee shall vote shares of Sponsor Stock credited to a participant's account for which it has received no direction from the participant in the same proportion on each issue as it votes those shares credited to participants' accounts for which it has received voting directions from participants.

        (3)      Except as otherwise required by law, the Trustee shall vote that number of shares of Sponsor Stock not credited to participants' accounts in the same proportion on each issue as it votes those shares credited to participants' accounts for which it received voting directions from participants.

        (B)      <u>Tender Offers</u>.

        (1)      Upon commencement of a tender offer for any securities held in the Trust that are Sponsor Stock, the Sponsor shall timely notify the Trustee in advance of the intended tender date and shall cause a copy of all materials to be sent to the Trustee. The Sponsor shall certify to the Trustee that the aforementioned materials represent the same information distributed to shareholders of Sponsor Stock. Based on these materials and after consultation with the Sponsor the Trustee shall prepare a tender instruction form and shall provide a copy of all tender materials to be sent to each plan participant with an interest in the Stock Fund, together with the foregoing tender instruction form, to be returned to the Trustee or its designee. The tender instruction form shall show the number of full and fractional shares of Sponsor Stock that reflect the participants proportional interest in the Stock Fund (both vested and unvested).

        (2)      Each participant with an interest in the Stock Fund shall have the right to direct the Trustee to tender or not to tender some or all of the shares of Sponsor Stock reflecting such participant's proportional interest in the Stock Fund (both vested and unvested). Directions from a participant to the Trustee concerning the tender of Sponsor Stock shall be communicated in writing, or by such other means as is agreed upon by the Trustee and the Sponsor. These directions shall be held in confidence by the Trustee and shall not be divulged to the Sponsor, or any officer or employee thereof, or any other person except to the extent that the consequences of such directions are reflected in reports regularly communicated to any such persons in the ordinary course of the performance of the Trustee's services hereunder. The Trustee shall tender or not tender shares of Sponsor Stock as directed by the participant. Except as otherwise required by law, the Trustee shall not tender shares of Sponsor Stock reflecting a participant's proportional interest in the Stock Fund for which it has received no direction from the participant.

        (3)      Except as otherwise required by law, the Trustee shall tender that number of shares of Sponsor Stock not credited to participants' accounts in the same proportion as the total number of shares of Sponsor Stock credited to participants' accounts for which it has received instructions from Participants.

        (4)      A participant who has directed the Trustee to tender some or all of the shares of Sponsor Stock reflecting the participant's proportional interest in the Stock Fund may, at any time prior to the tender offer withdrawal date, direct the Trustee to withdraw some or all of the tendered shares reflecting the participant's proportional interest, and the Trustee shall withdraw the directed number of shares from the tender offer prior to the tender offer withdrawal deadline. Prior to the withdrawal deadline, if any shares of Sponsor Stock not credited to participants' accounts have been tendered, the Trustee shall redetermine the number of shares of Sponsor Stock that would be tendered under Section 4(e)(v)(B)(3) if the date of the foregoing withdrawal were the date of determination, and withdraw from the tender offer the number of shares of Sponsor Stock not credited to participants' accounts necessary to reduce the amount of tendered Sponsor Stock not

4

FMTC WRG 00055

credited to participants' accounts to the amount so redetermined. A participant shall not be limited as to the number of directions to tender or withdraw that the participant may give to the Trustee.

(5)    A direction by a participant to the Trustee to tender shares of Sponsor Stock reflecting the participant's proportional interest in the Stock Fund shall not be considered a written election under the Plan by the participant to withdraw, or have distributed, any or all of his withdrawable shares. The Trustee shall credit to each proportional interest of the participant from which the tendered shares were taken the proceeds received by the Trustee in exchange for the shares of Sponsor Stock tendered from that interest. Pending receipt of directions (through the Administrator) from the participant or the Named Fiduciary, as provided in the Plan, as to which of the remaining investment options the proceeds should be invested in, the Trustee shall invest the proceeds in the investment option described in Schedule "C".

(vii)    General. With respect to all rights other than the right to vote, the right to tender, and the right to withdraw shares previously tendered, in the case of Sponsor Stock credited to a participant's proportional interest in the Stock Fund, the Trustee shall follow the directions of the participant and if no such directions are received, the directions of the Named Fiduciary. The Trustee shall have no duty to solicit directions from participants. With respect to all rights other than the right to vote and the right to tender, in the case of Sponsor Stock not credited to participants' accounts, the Trustee shall follow the directions of the Named Fiduciary.

(viii)    Conversion. All provisions in this Section 4(e) shall also apply to any securities received as a result of a conversion of Sponsor Stock.

(2)    Deleting all references in the Trust Agreement and Schedules thereto to the Sealed Air Common Stock Fund (Employee) and the Sealed Air Preferred Stock Fund (Employee).

(3)    Amending Schedule "H" Telephone Exchange Procedures, by deleting the "W.R. Grace Common Stock Fund Company Contribution ESOP Stock Fund" section and replacing it in its entirety, as follows:

### Stock Fund

Provided that the Stock Fund is open for purchases and sales of units, the following rules will govern exchanges:

I.    **Exchanges From Mutual Funds and/or Fixed Income Fund to the Stock Fund**

Participants may contact Fidelity on any day to exchange from mutual funds and/or the Fixed Income Fund into the Stock Fund. If the request is confirmed before the close of the market (generally, 4:00 p.m. ET) on a business day, it will receive that day's trade date. Requests confirmed after the close of the market on a business day (or on any day other than a business day) will be processed on a next business day basis.

II.    **Exchanges From the Stock Fund to Mutual Funds and/or Fixed Income Fund**

Participants may contact Fidelity on any day to exchange from the Stock Fund to a mutual fund or the Fixed Income Fund. If Fidelity accepts the request conditionally

FMTC WRG 00056

before the close of the market (generally 4:00 p.m. ET) on any business day and Available Liquidity is sufficient to honor the trade after Specified Hierarchy rules are applied, it will receive that day's trade date. Requests accepted conditionally after the close of the market on any business day (or on any day other than a business day) will be processed on a next business day basis, subject to Available Liquidity for such day after application of Specified Hierarchy rules. If Available Liquidity on any day is insufficient to honor the trade after application of Specified Hierarchy rules, it will be suspended until Available Liquidity is sufficient, after application of specified hierarchy rules, to honor such trade, and it will receive the trade date and Closing Price of the date on which it was processed.

(4) Adding a new Schedule "L" <u>Available Liquidity Procedures for Unitized Sponsor Stock Fund</u>, as attached hereto.


IN WITNESS WHEREOF, the Trustee and the Sponsor have caused this Amendment to be executed by their duly authorized officers effective as of the day and year first signed below.


**W.R. GRACE & CO.**

**FIDELITY MANAGEMENT TRUST COMPANY**

By: _Martin Hunter_
    MARTIN HUNTER   Date 2/6/01
    ASSISTANT TREASURER

By: _Carolee S. Redker_ 3/2/01
    Vice President        Date

6

FMTC WRG 00057

## SCHEDULE "L"

### AVAILABLE LIQUIDITY PROCEDURES FOR UNITIZED SPONSOR STOCK FUND

The following procedures shall govern sales of the Sponsor Stock Fund requested for a day on which Available Liquidity is insufficient:

1.  Loans, withdrawals and distributions will be aggregated and placed first in the hierarchy. If Available Liquidity is sufficient for the aggregate of such transactions, all such loans, withdrawals and distributions will be honored.

2.  If Available Liquidity has not been exhausted by the aggregate of loans, withdrawals and distributions, then all remaining transactions involving a sale of units in the Sponsor Stock Fund shall be grouped on the basis of when such requests were received, in accordance with standard procedures maintained by the Trustee for such grouping as they may be amended from time to time. To the extent of Available Liquidity, all transactions in a group shall be honored, on a FIFO basis. If Available Liquidity is insufficient to honor all transactions within a group, then none of such transactions in the group shall be honored. For the purposes of this section a group shall mean those transaction requests which are received within a specific time interval as determined under the Trustee's batch process.

3.  Transactions not honored on a particular day due to insufficient Available Liquidity shall be honored, using the hierarchy specified above, on the next business day on which there is Available Liquidity.

FMTC WRG 00058

FIRST AMENDMENT TO THE MASTER TRUST AGREEMENT
BETWEEN W. R. GRACE & CO. AND
FIDELITY MANAGEMENT TRUST COMPANY

WHEREAS, W. R. Grace & Co. ("Grace") and Fidelity Management Trust Company (the "Trustee") became parties to the Master Trust Agreement between Grace and the Trustee (the "Agreement"), effective as of July 1, 1993; which Agreement constitutes an amendment and restatement of the trust agreement entered into by Grace and The Northern Trust Company; and

WHEREAS, Section 14 of the Agreement provides that the Investment Committee and the Trustee may amend the Agreement at any time; and

WHEREAS, the Investment Committee and the Trustee desire to amend the Agreement;

NOW THEREFORE, the Agreement is amended effective July 1, 1993 as follows:

1.    Section 1(j) is amended to read as follows:

"'Investment Committee' shall mean the committee, designated by the Sponsor, which has responsibility (i) for investing the assets of the Plans and, with respect to Plans where Participants have the right to direct the assets allocated to their accounts among investment options, for selecting those investment options, (ii) for the appointment and removal of investment advisors, if any, and (iii) for other matters described herein; and the Investment Committee shall be deemed for purposes of ERISA to be the named fiduciary for Plan investments."

FMTC WRG 00059

2.    Section 1(o) is amended to read as follows:

"'Sponsor' shall mean W.R. Grace & Co., a New York corporation, or any successor to all or substantially all of its businesses which, by agreement, operation of law or otherwise, assumes the responsibility of the Sponsor under this Agreement.   The Sponsor has the responsibility for assuring that the Plans do not violate any provision of ERISA limiting the acquisition or holding of Sponsor Stock or other property of the Sponsor."

3.    Section 5(e)(iii) is amended by replacing the term 'Investment Committee' in that Section with the phrase 'Administrative Committee or Sponsor'".

Investment Committee

By _____

Fidelity Management Trust Company

By _____
Senior Vice President

- 2 -

SECOND AMENDMENT TO THE
MASTER TRUST AGREEMENT BETWEEN
FIDELITY MANAGEMENT TRUST COMPANY AND
W. R. GRACE & CO.


WHEREAS, W. R. Grace & Co. ("Grace") and Fidelity Management Trust Company (the "Trustee") became parties to the Master Trust Agreement between Grace and the Trustee (the "Agreement"), effective as of July 1, 1993; which Agreement constitutes an amendment and restatement of the trust agreement entered into by Grace and The Northern Trust Company; and

WHEREAS, Section 14 of the Agreement provides that the Investment Committee and the Trustee may amend the Agreement at any time; and

WHEREAS, the Investment Committee and the Trustee desire to amend the Agreement;

THEREFORE, the Agreement is amended effective July 1, 1993 as follows:

By adding the following paragraph to the end of Section 5(b):

> The Trust also shall consist of shares of TSL Holdings Inc. common stock and a Tandon Corp. Computer purchase coupon transferred from the previous trustee under the Plans. The Sponsor hereby directs the Trustee that such assets have no current value. The Sponsor further directs the Trustee to hold these securities until the Sponsor assigns a value to the securities and directs the Trustee as to the disposition of such assets. The Sponsor shall be solely responsible for the valuation of such assets held in the Trust.


INVESTMENT COMMITTEE

By _____ 7/27/93
    Chairman          Date

FIDELITY MANAGEMENT TRUST COMPANY

By _____ 8/20/93
    Senior Vice President   Date

FMTC WRG 00061

THIRD AMENDMENT TO THE
MASTER TRUST AGREEMENT BETWEEN
FIDELITY MANAGEMENT TRUST COMPANY AND
W. R. GRACE & CO.

WHEREAS, W. R. Grace & Co. ("Grace") and Fidelity Management Trust Company (the "Trustee") became parties to the Master Trust Agreement between Grace and the Trustee (the "Agreement"), effective as of July 1, 1993; which Agreement constitutes an amendment and restatement of the trust agreement entered into by Grace and The Northern Trust Company; and

WHEREAS, Section 14 of the Agreement provides that the Investment Committee and the Trustee may amend the Agreement at any time; and

WHEREAS, Grace has informed the Trustee that, effective 12/1/93, the Grace Energy Corporation Employees Savings and Investment Plan will be merged with and into the W. R. Grace & Co. Salaried Employees Savings and Investment Plan and the participants of the Grace Energy Corporation Employees Savings and Investment Plan will then become participants of the W. R. Grace & Co. Salaried Employees Savings and Investment Plan; and

WHEREAS, the Investment Committee and the Trustee desire to amend the Agreement:

NOW THEREFORE, the Agreement is amended effective December 1, 1993 as follows::

(1)     Deleting all references to the Grace Energy Corporation Employees Savings and Investment Plan effective 12/1/93.

(2)     Amending the money classifications for the W. R. Grace & Co. Salaried Employees Savings and Investment Plan on Schedule "A" to include the following:

Company Match GEC
Company NRG

IN WITNESS WHEREOF, Grace and the Trustee have caused this Third Amendment to be executed by their duly authorized officers effective as of the day and year first above written.

INVESTMENT COMMITTEE

By _____  11/15/93
_____  Date
Chairman, Investment
Committee

FIDELITY MANAGEMENT
TRUST COMPANY

By _____  11/29/93
Senior Vice President    Date

FOURTH AMENDMENT TO THE
MASTER TRUST AGREEMENT BETWEEN
FIDELITY MANAGEMENT TRUST COMPANY AND
W.R. GRACE & CO.

THIS FOURTH AMENDMENT, dated as of the first day of May, 1994, by and between Fidelity Management Trust Company (the "Trustee") and W.R. Grace & Co. (the "Sponsor");

WITNESSETH:

WHEREAS, the Trustee and the Sponsor heretofore entered into a master trust agreement dated July 1, 1993, with regard the W.R. Grace & Co. Salaried Employees Savings and Investment Plan, W.R. Grace & Co. Hourly Employees Savings and Investment Plan, and the employee stock ownership plans within those plans (collectively and individually, the "Plan"); and

WHEREAS, the Trustee and the Sponsor now desire to amend said master trust agreement as provided for in Section 14 thereof;

NOW THEREFORE, in consideration of the above premises the Trustee and the Sponsor hereby amend the master trust agreement by:

(1)   Amending and restating the Annual Participant Fee on Schedule "B", to read as follows:

Annual Participant Fee                          $26.00 per participant*,
                                                billed and payable quarterly.

IN WITNESS WHEREOF, the Trustee and the Sponsor have caused this Fourth Amendment to be executed by their duly authorized officers effective as of the day and year first above written.

INVESTMENT COMMITTEE                    FIDELITY MANAGEMENT
                                         TRUST COMPANY

By _____            By _____  6/13/94
    Chairman,              Date            Senior Vice President    Date
    Investment Committee

FMTC WRG 00063

FIFTH AMENDMENT TO TRUST AGREEMENT BETWEEN
FIDELITY MANAGEMENT TRUST COMPANY AND
W.R. GRACE & CO.

THIS FIFTH AMENDMENT, dated as of the first day of March, 1996, by and between Fidelity Management Trust Company (the "Trustee") and W.R. Grace & Co. (the "Sponsor");

WITNESSETH:

WHEREAS, the Trustee and the Sponsor heretofore entered into a Trust Agreement dated July 1, 1993, with regard to the W.R. Grace & Co. Salaried Employees Savings and Investment Plan, the W.R. Grace & Co. Hourly Employees Savings and Investment Plan, and the employee stock ownership plans within those plans(collectively and individually, the "Plan"); and

WHEREAS, the Trustee and the Sponsor now desire to amend said trust agreement as provided for in Section 14 thereof;

NOW THEREFORE, in consideration of the above premises the Trustee and the Sponsor hereby amend the trust agreement by:

(1)    Amending and restating the Annual Participant Fee on Schedule "B", to read as follows:

Annual Participant Fee:                $22.00 per participant*, billed and payable quarterly.

IN WITNESS WHEREOF, the Trustee and the Sponsor have caused this Fifth Amendment to be executed by their duly authorized officers effective as of the day and year first above written.

W.R. GRACE & CO.                FIDELITY MANAGEMENT TRUST COMPANY
INVESTMENT COMMITTEE
ADMINISTRATIVE

By: _Joseph Mayo_  _3-18-96_     By: _____  _4/8/96_
                        Date          Vice President          Date

FMTC WRG 00064

SIXTH AMENDMENT TO TRUST AGREEMENT BETWEEN
FIDELITY MANAGEMENT TRUST COMPANY AND
W.R. GRACE & CO.

THIS SIXTH AMENDMENT, dated as of the eleventh day of November, 1996, by and between
Fidelity Management Trust Company (the "Trustee") and W.R. Grace & Co. (the "Sponsor");

WITNESSETH:

WHEREAS, the Trustee and the Sponsor heretofore entered into a Trust Agreement dated July 1,
1993, with regard to the W.R. Grace & Co. Salaried Employees Savings and Investment Plan, the W.R.
Grace & Co. Hourly Employees Savings and Investment Plan, and the employee stock ownership plans
within those plans (collectively and individually, the "Plan"); and

WHEREAS, the Sponsor has notified the Trustee that, effective September 27, 1996, it has
replaced the W.R. Grace Common Stock Fund and the Company Contribution ESOP Stock Fund with
the W.R. Grace Common Stock Fund, the Fresenius ADS Fund, the FNMC Preferred (Employee) Fund,
the Company Contribution Fund and the FNMC Preferred (Company) Fund; and

WHEREAS, the Trustee and the Sponsor now desire to amend said Trust Agreement as provided
for in Section 14 thereof;

NOW THEREFORE, in consideration of the above premises, the Trustee and the Sponsor hereby
amend the Trust Agreement as follows:

(1)     **Effective upon the execution of this Sixth Amendment,** all references to "Fidelity
        Employee Benefit U.S. Government Reserves Portfolio" shall be replaced with "Fidelity
        Institutional Cash Portfolios: Money Market Portfolio: Class I or such other Mutual
        Fund or commingled money market pool as agreed to by the Sponsor and Trustee."

(2)     Section 5(g) is amended by adding the following paragraph after the last paragraph of
        said section:

        The Investment Committee shall have the right to direct the Trustee as to the manner in
        which the Trustee is to vote the shares held in Fidelity Institutional Cash Portfolios:
        Money Market Portfolio: Class I or such other Mutual Fund or commingled money
        market pool as agreed to by the Sponsor and Trustee.

(3)     Amending Section 4 by adding the following as Section 4(c):

        Participant Withdrawal Requests. The Sponsor hereby directs that, pursuant to the Plan,
        a participant withdrawal request (in-service or full withdrawal) may be made by the
        participant via telephone and the Trustee shall process such request only after the
        identity of the participant is verified by use of a personal identification number ("PIN")

and social security number. The Trustee shall process such withdrawal in accordance with the written guidelines provided by the Sponsor.

(4)     **Effective September 27, 1996**, amending Section 5(e) by restating the first paragraph in its entirety as follows:

(e)  <u>Sponsor Stock</u>.  Trust investments in Sponsor Stock shall be made via the W.R. Grace Common Stock Fund, the Company Contribution Stock Fund, the Fresenius ADS Fund, the FNMC Preferred (Employee) Fund and the FNMC Preferred (Company) Fund (individually, the "Stock Fund").  All of the Stock Funds may include short-term liquid investments, including Fidelity Institutional Cash Portfolios: Money Market Portfolio: Class 1 or such other Mutual Fund or commingled money market pool as agreed to by the Sponsor and Trustee, necessary to satisfy each Stock Fund's cash needs for transfers and payments.  In addition to short-term liquid investments, each of the Stock Funds shall consist of the following:  the W.R. Grace Common Stock Fund shall consist of shares of Sponsor Stock; the Company Contribution Stock Fund shall consist of shares of Sponsor Stock and, for a limited period, American Depository Shares (ADS) of Fresenius AG; the Fresenius ADS Fund shall consist of Fresenius ADSs; the FNMC Preferred (Employee) Fund shall consist of FNMC Preferred Stock; and the FNMC Preferred (Company) Fund shall consist of FNMC Preferred Stock.

The Sponsor hereby directs the Trustee, in accordance with Section 8(c), to begin to liquidate the FNMC Preferred (Employee) Fund on October 9, 1996, and invest the proceeds in the W.R. Grace Common Stock Fund, and to begin to liquidate the FNMC Preferred (Company) Fund on October 9, 1996, and invest the proceeds in the Company Contribution Stock Fund.  The parties hereto agree that the Trustee shall have no discretionary authority with respect to this sale and transfer directed by the Sponsor. Any variation from the procedure described herein may be instituted only at the express written directions of the Sponsor.

A cash target range shall be maintained in each Stock Fund.  Such target range may be changed as agreed to in writing by the Sponsor and the Trustee.  The Trustee is responsible for ensuring that the actual cash held in the Stock Fund falls within the agreed upon range over time.

Each participant's proportional interest in the Stock Fund shall be measured in units of participation, rather than shares of Sponsor Stock.  Such units shall represent a proportionate interest in all of the assets of the Stock Fund, which includes shares of Sponsor Stock, short-term investments and at times, receivables for dividends and/or Sponsor Stock sold and payables for Sponsor Stock purchased.  A Net Asset Value ("NAV") per unit will be determined daily for each unit outstanding of the Stock Fund. The return earned by the Stock Fund will represent a combination of the dividends paid on the shares of Sponsor Stock held by the particular Stock Fund, gains or losses realized on sales of Sponsor Stock, appreciation or depreciation in the market price of those shares owned, and interest on the short-term investments held by the particular Stock Fund.

**FMTC WRG 00066**

Dividends received by the W.R. Grace Common Stock Fund are reinvested in additional shares of Sponsor Stock. Dividends paid to the Trust on shares of Sponsor Stock held in the Company Contribution Stock Fund shall be allocated to a separate account (the "Dividends Account") within the Trust. The assets of the Dividends Account shall be invested in Fidelity Institutional Cash Portfolios: Money Market Portfolio: Class 1 or such other Mutual Fund or commingled money market pool as agreed to by the Sponsor and Trustee. The interest credited to the Dividends Account shall be reinvested in the Company Contribution Stock Fund on a monthly basis. The Trustee shall make such payments from the Dividends Account at such time or times, and to such entity designated by the Administrator as paying agent for such dividends, as the Administrator shall direct in writing. The Sponsor acknowledges that any cash so paid to the paying agent shall be held in trust by such paying agent until disbursed to Participants in accordance with the terms of the Plan. The Trustee shall have no responsibility for the tax reporting of such dividends. Investments in Sponsor Stock shall be subject to the following limitations:

(5)    Amending Section 5(e)(iv)(B) by restating the first sentence in its entirety as follows:

(B) Use of an Affiliated Broker. The Investment Committee hereby directs the Trustee to use Fidelity Brokerage Services, Inc. ("FBSI"), an affiliate of the Trustee, to provide brokerage services in connection with the purchase or sale of Sponsor Stock in accordance with directions from Participants or the Investment Committee.

(6)    Amending and restating Section 5(f), in its entirety, to read as follows:

(f)    Notes. The Administrator shall act as the Trustee's agent for the participant loan notes and as such shall (i) collect and remit all principal and interest payments to the Trustee and (ii) keep the proceeds of such loans separate from the other assets of the Administrator and clearly identify such assets as Plan assets. To originate a participant loan, the Plan participant shall direct the Trustee as to the term and the amount of the loan to be made from the participant's individual account. Such directions shall be made by Plan participants by use of the telephone exchange system maintained for such purpose by the Trustee or its agent. The Trustee shall determine, based on the current value of the participant's account on the date of the request and any guidelines provided by the Sponsor, the amount available for the loan. Based on the monthly interest rate specified by the Sponsor in accordance with the terms of the Plan, the Trustee shall advise the participant of such interest rate, as well as the installment payment amounts. The Trustee shall distribute the loan note with the proceed check to the participant. The Trustee shall also distribute truth-in-lending disclosure to the participant. To facilitate recordkeeping, the Trustee may destroy the original of any promissory note made in connection with a loan to a participant under the Plan, provided that the Trustee first creates a duplicate by a photographic or optical scanning or other process yielding a reasonable facsimile of the promissory note and the Plan participant's signature thereon, which duplicate may be reduced or enlarged in size from the actual size of the original promissory note.

(7)    Amending the "investment options" portion of Schedules "A" and "C" by deleting the Company Contribution ESOP Stock Fund and adding the following:

> Company Contribution Stock Fund
> Fresenius ADS Fund (frozen to new investment - fund to expire by 12/31/98)
> FNMC Preferred (Employee) Fund (frozen - fund to expire by 10/31/96)
> FNMC Preferred (Company) Fund (frozen- fund to expire by 10/31/96)

(8)    Amending and restating the third bullet under the "Processing" section of Schedule "A" to read as follows:

> *    Daily processing of in-service withdrawals and terminations (full distributions) via telephone due to specific circumstances previously authorized by the Sponsor.

IN WITNESS WHEREOF, the Trustee and the Sponsor have caused this Sixth Amendment to be executed by their duly authorized officers effective as of the day and year first above written.

W.R. GRACE & CO.                          FIDELITY MANAGEMENT TRUST COMPANY
ADMINISTRATIVE COMMITTEE

By: _Joseph Coyne_  5-14-97       By: _Luc B Lewis_  5/23/97
                        Date       Vice President              Date

FMTC WRG 00068

SEVENTH AMENDMENT TO TRUST AGREEMENT BETWEEN
FIDELITY MANAGEMENT TRUST COMPANY AND
W.R.GRACE & CO.

THIS SEVENTH AMENDMENT, dated as of the first day of March, 1998, by and between
Fidelity Management Trust Company (the "Trustee") and W.R. Grace & Co. (the "Sponsor");

WITNESSETH:

WHEREAS, the Trustee and the Sponsor heretofore entered into a Trust Agreement dated July 1,
1993, with regard to the W.R. Grace & Co. Salaried Employees Savings and Investment Plan, the W.R.
Grace & Co. Hourly Employees Savings and Investment Plan, and the employee stock ownership plans
within those plans (collectively and individually, the "Plan"); and

WHEREAS, the Trustee and the Sponsor now desire to amend said Trust Agreement as provided
for in Section 14 thereof;

NOW THEREFORE, in consideration of the above premises the Trustee and the Sponsor hereby
amend the Trust Agreement by:

(1)    Amending Section 5(i), Trustee Powers, by adding the following new subsection (ix):

   (ix)    Common or Collective Trusts.  To invest all or any part of the assets of the Trust
           Fund in any collective investment trust or group trust which then provides for the
           pooling of the assets of plans described in Section 401(a) of ERISA and exempt
           from tax under Section 501(a) of the Internal Revenue Code ("Code"), or any
           comparable provisions of any future legislation that amends, supplements, or
           supersedes those sections, provided that such collective investment trust or group
           trust is exempt from tax under the Code or regulations or rulings issued by the
           IRS;  the provisions of the document governing such collective investment trusts
           or group trusts, as it may be amended from time to time, shall govern any
           investment therein and are hereby made a part of this Plan document and its
           corresponding Trust Agreement.

(2)    Amending the "Annual Participant Fee" section of Schedule "B" by restating as
       follows:

       **Effective January 1, 1998:**

       Annual Participant Fee                $12 per participant*, billed and payable quarterly.

(3)    Amending Schedule "B" by adding a new "Note" section as follows:

       Note:  These fees have been negotiated and accepted based on the following Plan
       characteristics: two plans in the relationship, total current plan assets of $800.9 million,
       current participation of 10,300 participants, current GIC assets of $339.1 million, current
       stock assets of $224.2 million, total Fidelity managed Mutual Fund assets of $237.6

**FMTC WRG 00069**

million and positive projected net cash flows. Fees will be subject to revision if these Plan characteristics change significantly by either falling below or exceeding current or projected levels. Fees also have been based on the use of up to 10 investment options, and such fees will be subject to revision if additional investment options are added.

IN WITNESS WHEREOF, the Trustee and the Sponsor have caused this Seventh Amendment to be executed by their duly authorized officers effective as of the day and year first above written.

W.R. GRACE & CO.

FIDELITY MANAGEMENT TRUST COMPANY

By _William T. Monroe_ 2/5/98
   _Sharon Fein_   Date
              2/6/98

By _____ 3/3/98
   Vice President     Date

2

FMTC WRG 00070

EIGHTH AMENDMENT TO TRUST AGREEMENT BETWEEN
FIDELITY MANAGEMENT TRUST COMPANY AND
W.R.GRACE & CO.

THIS EIGHTH AMENDMENT, dated as of the thirty first day of March, 1998, by and between Fidelity Management Trust Company (the "Trustee") and W.R. Grace & Co. (the "Sponsor");

WITNESSETH:

WHEREAS, the Trustee and the Sponsor heretofore entered into a Trust Agreement dated July 1, 1993, with regard to the W.R. Grace & Co. Salaried Employees Savings and Investment Plan, the W.R. Grace & Co. Hourly Employees Savings and Investment Plan, and the employee stock ownership plans within those plans (collectively and individually, the "Plan"); and

WHEREAS, the Trustee and the Sponsor now desire to amend said Trust Agreement as provided for in Section 14 thereof;

NOW THEREFORE, in consideration of the above premises the Trustee and the Sponsor hereby amend the Trust Agreement by:

(1)     Amending the first Paragraph of Section 5(e) <u>Sponsor Stock</u>, in its entirety, as follows:

(e)  <u>Sponsor Stock</u>.  Trust investments in Sponsor Stock shall be made via the W.R Grace Common Stock Fund, the Company Contribution Stock Fund, the Fresenius ADS Fund, the FNMC Preferred (Employee) Fund, the FNMC Preferred (Company) Stock Fund, the Sealed Air Common Stock Fund, and the Sealed Air Preferred Stock Fund (individually, the "Stock Fund").  All of the Stock Funds may include short-term liquid investments, including Fidelity Institutional Cash Portfolios: Money Market Portfolio: Class 1 or such other Mutual Fund or commingled money market pool as agreed to by the Sponsor and Trustee, necessary to satisfy each Stock Fund's cash needs for transfers and payments.  In addition to short-term liquid investments, each of the Stock Funds shall consist of the following:  the W.R. Grace Common Stock Fund shall consist of shares of Sponsor Stock; the Company Contribution Stock Fund shall consist of shares of Sponsor Stock and, for a limited period, American Depository Shares (ADS) of Fresenius AG; the Fresenius ADS Fund shall consist of Fresenius ADSs; the FNMC Preferred (Employee) Fund shall consist of FNMC Preferred Stock; the FNMC Preferred (Company) Fund shall consist of FNMC Preferred Stock; the Sealed Air Common Stock Fund shall consist of Sealed Air Common Stock; and the Sealed Air Preferred Stock Fund shall consist of Sealed Air Preferred Stock.  Dividends received by the Sealed Air Common Stock Fund and/or the Sealed Air Preferred Stock Fund are allocated to participant investments in the Fixed Income Fund.

(2)     By adding the following sentence to the end of Section 5(e)(VI)(B)(5)(viii):

With respect to any conversion rights associated with Sealed Air Preferred Stock, the Trustee shall follow solely the directions of the Investment Committee.

FMTC WRG 00071

(3)    Amending Section 5(i), <u>Trustee Powers</u>, by adding a new subsection (x) as follows:

(x)  To borrow funds from a bank not affiliated with the Trustee in order to provide sufficient liquidity to process Plan transactions in a timely fashion; provided that the cost of such borrowing shall be allocated in a reasonable  fashion to the investment fund(s) in need of liquidity.

(4)    Amending the "investment options" section of  Schedules "A" and "C"  to add the following:

* Sealed Air Common Stock Fund  (frozen to new investments)
* Sealed Air Preferred Stock Fund  (frozen to new investments)

(5)    Amending Schedule "H" <u>Telephone Exchange Procedures</u>, to add the following provisions governing the Sealed Air Common Stock Fund and the Sealed Air Preferred Stock Fund:

**Sealed Air Common Stock Fund; Sealed Air Preferred Stock Fund**

**I.    Exchanges Between Investment Options and the Sealed Air Common Stock Fund; Sealed Air Preferred Stock Fund**

Subject to the Exchange Restrictions set forth below, participants may call on any business day to exchange between the Sealed Air Common Stock Fund and/or the Sealed Air Preferred Stock Fund and the other available Investment Options.  If the request is received before 4:00 p.m. (ET), it will receive that day's trade date.  Calls received after 4:00 p.m. (ET) will be processed on a next business day basis.

**II.    Exchange Restrictions**

Participants will not be permitted to exchange into the Sealed Air Common Stock Fund and/or the Sealed Air Preferred Stock Fund.

IN WITNESS WHEREOF, the Trustee and the Sponsor have caused this Eighth Amendment to be executed by their duly authorized officers effective as of the day and year first above written.

W.R. GRACE & CO.                                    FIDELITY MANAGEMENT TRUST
ADMINISTRATIVE COMMITTEE                  COMPANY


By _____  v/2/99          By _____  8/25/99
                              Date                              Vice President                    Date

2

FMTC WRG 00072

NINTH AMENDMENT TO TRUST AGREEMENT BETWEEN
FIDELITY MANAGEMENT TRUST COMPANY AND
W.R.GRACE & CO.


THIS NINTH AMENDMENT, dated as of the first day of November, 1999, by and between Fidelity Management Trust Company (the "Trustee") and W.R. Grace & Co. (the "Sponsor");

WITNESSETH:

WHEREAS, the Trustee and the Sponsor heretofore entered into a Trust Agreement dated July 1, 1993, with regard to the W.R. Grace & Co. Salaried Employees Savings and Investment Plan, the W.R. Grace & Co. Hourly Employees Savings and Investment Plan, and the employee stock ownership plans within those plans (collectively and individually, the "Plan"); and

WHEREAS, the Trustee and the Sponsor now desire to amend said Trust Agreement as provided for in Section 14 thereof;

NOW THEREFORE, in consideration of the above premises the Trustee and the Sponsor hereby amend the Trust Agreement by:

(1)     Amending the "Other" Section of Schedule "A" to add the following bullet point:

* Change of Address by Telephone:  The Trustee shall allow terminated and retired participants to make address changes via Fidelity's toll-free telephone service.

IN WITNESS WHEREOF, the Trustee and the Sponsor have caused this Ninth Amendment to be executed by their duly authorized officers effective as of the day and year first above written.


**W.R. GRACE & CO.**
~~ADMINISTRATIVE COMMITTEE~~

By _Elyn Kept Film_  _10/15/99_
                          **Date**


**FIDELITY MANAGEMENT TRUST COMPANY**

By _____ 10/29/99
   /Vice President            **Date**


**FMTC WRG 00073**

TENTH AMENDMENT TO TRUST AGREEMENT BETWEEN
FIDELITY MANAGEMENT TRUST COMPANY AND
W.R.GRACE & CO.

THIS TENTH AMENDMENT, dated as of the first day of November, 1999, by and between Fidelity Management Trust Company (the "Trustee") and W.R. Grace & Co. (the "Sponsor");

WITNESSETH:

WHEREAS, the Trustee and the Sponsor heretofore entered into a Trust Agreement dated July 1, 1993, with regard to the W.R. Grace & Co. Salaried Employees Savings and Investment Plan, the W.R. Grace & Co. Hourly Employees Savings and Investment Plan, and the employee stock ownership plans within those plans (collectively and individually, the "Plan"); and

WHEREAS, the Sponsor has made available to Plan participants investment options including Stock Funds; and

WHEREAS, beginning in the first calendar quarter of 1998, the Sponsor from time to time has directed the Trustee to liquidate the assets held in certain Stock Funds and to offer new Stock Funds to Plan participants; and

WHEREAS, the parties now desire to update the Trust Agreement provisions regarding Sponsor Stock to accurately reflect the current Stock Fund investment options available to Plan participants and to make certain other changes to the Trust Agreement; and

WHEREAS, the Trustee and the Sponsor now desire to amend said Trust Agreement as provided for in Section 14 thereof;

NOW THEREFORE, in consideration of the above premises the Trustee and the Sponsor hereby amend the Trust Agreement by:

(1)    Amending the first Paragraph of Section 5(e) Sponsor Stock, in its entirety, as follows:

(e) Sponsor Stock. Trust investments in Sponsor Stock shall be made via the W.R Grace Common Stock Fund (Employer), the W.R. Grace New Common Stock Fund (Employee), the Sealed Air Common Stock Fund (Employee), and the Sealed Air Preferred Stock Fund (Employee)(individually, each a "Stock Fund"). All of the Stock Funds may include short-term liquid investments, including Fidelity Institutional Cash Portfolios: Money Market Portfolio: Class I or such other Mutual Fund or commingled money market pool as agreed to by the Sponsor and Trustee, necessary to satisfy each Stock Fund's cash needs for transfers and payments. In addition to short-term liquid investments, each of the Stock Funds shall consist of the following: the W.R. Grace Common Stock Fund (Employer) and the W.R. Grace New Common Stock Fund (Employee) shall consist of shares of Sponsor Stock; the Sealed Air Common Stock Fund (Employee) shall consist of Sealed Air Common Stock; and the Sealed Air Preferred Stock Fund (Employee) shall consist of Sealed Air Preferred Stock. Dividends, if any, received by the Sealed Air Common Stock Fund (Employee) and/or the Sealed Air Preferred Stock Fund (Employee) are allocated to participant investments in the Fixed Income Fund.

FMTC WRG 00074

(2)     Amending the "investment options" section of Schedules "A" and "C" to
        add the following:

        * Sealed Air Common Stock Fund (Employee) (frozen to new investments)
        * Sealed Air Preferred Stock Fund (Employee) (frozen to new investments)


(3)     Amending Schedule "H" Telephone Exchange Procedures, to add the following
        provisions governing the Sealed Air Common Stock Fund and the Sealed Air Preferred
        Stock Fund:

### Sealed Air Common Stock Fund (Employee); Sealed Air Preferred Stock Fund (Employee)

### I.     Exchanges Between Investment Options and the Sealed Air Common Stock Fund (Employee); Sealed Air Preferred Stock Fund (Employee)

Subject to the Exchange Restrictions set forth below, participants may call on any business
day to exchange between the Sealed Air Common Stock Fund (Employee) and/or the Sealed
Air Preferred Stock Fund (Employee) and the other available Investment Options. If the
request is received before 4:00 p.m. (ET), it will receive that day's trade date. Calls received
after 4:00 p.m. (ET) will be processed on a next business day basis.

### II.     Exchange Restrictions

Participants will not be permitted to exchange into the Sealed Air Common Stock Fund
(Employee) and/or the Sealed Air Preferred Stock Fund (Employee).

(4)     **Effective December 21, 1998,** amending Section 5. Investment of Trust, to add a new
        subsection (h) as follows, and by relettering all subsequent subsections accordingly.

        (h) Outside Managed Separate Investment Funds.

                (i) This subsection is intended to authorize appointment of an
        investment manager as contemplated in Section 402(c)(3) of ERISA.

                Sponsor may appoint an investment manager with respect to some or all of the
        assets of the Plan. The appointment of the investment manager shall be made by an
        officer of Sponsor or other named fiduciary authorized by a resolution of Sponsor's
        Board of Directors, or its designee, to make such appointments. The authority of the
        investment manager shall not begin until Trustee receives from Sponsor notice
        satisfactory to Trustee that the investment manager has been appointed and that the
        investment manager has acknowledged in writing that with respect to the relevant assets
        of the Fund he or she or it is a fiduciary with respect to the Plan within the meaning of
        ERISA. The investment manager's authority shall continue until Trustee receives
        similar notice that the appointment has been rescinded. By notifying Trustee of the
        appointment of an investment manager, Sponsor shall be deemed to warrant that such
        investment manager meets the requirements of Section 3(38) of ERISA, but Trustee

2

FMTC WRG 00075

may demand independent evidence that any investment manager meets those requirements.

The assets with respect to which a particular investment manager has been appointed shall be segregated from all other assets held by Trustee under this Agreement and the investment manager shall have the duty and power to direct Trustee in every aspect of their investment. The Trustee shall follow the directions of an investment manager regarding the investment and reinvestment of the Trust, or such portion thereof as shall be under management by the investment manager, and shall be under no duty or obligation to review any investment to be acquired, held or disposed of pursuant to such directions nor make any recommendations with respect to the disposition or continued retention of any such investment. The Trustee shall have no liability or responsibility for acting without question on the direction of, or failing to act in the absence of any direction from an investment manager, unless the Trustee has knowledge that by such action or failure to act it will be participating in or undertaking to conceal a breach of fiduciary duty by that investment manager. Upon request, Trustee shall execute appropriate powers of attorney authorizing an investment manager appointed hereunder to exercise the powers and duties of the investment manager.

Trustee may rely upon any order, certificate, notice, direction or other documentary confirmation purporting to have been issued or given by an investment manager which Trustee believes to be genuine and to have been issued or given by such investment manager.

An investment manager shall certify, at the request of the trustee, the value of any securities or other property held in any fund managed by such investment manager, and such certification shall be regarded as a direction with regard to such valuation. The Trustee shall be entitled to conclusively rely upon such valuation.

Any oral direction shall be followed by a written confirmation as soon as practical. Trustee shall follow the procedures established by Sponsor to validate such oral directions.

(5)     **Effective December 21, 1998**, restating Schedule "J" in its entirety, as attached hereto.


IN WITNESS WHEREOF, the Trustee and the Sponsor have caused this Ninth Amendment to be executed by their duly authorized officers effective as of the day and year first above written.


W.R. GRACE & CO.
~~ADMINISTRATIVE COMMITTEE~~

FIDELITY MANAGEMENT TRUST
COMPANY

By _Reya Napoli lm 10/27/99_                          By _Caralyn Felder 11/13/99_
                        Date              Vice President                        Date

3

FMTC WRG 00076

SCHEDULE "J"

## OPERATING PROCEDURES FOR THE FIXED INCOME FUND OF THE
## W.R. GRACE & CO. SAVINGS AND INVESTMENT PLANS

I.    **Description of Investment Option**

The Fixed Income Fund (the "Portfolio") may be comprised of existing investment contracts including synthetic investment contracts, units in the Colchester Street Trust: Money Market Portfolio Class I ("STIF") and additional assets to be purchased by Dwight Asset Management Company (the "External Manager") on behalf of the Portfolio.

II.   **Investment Option Transactions**

All accounting transactions for the Portfolio will be coordinated by Fidelity Management Trust Company (the "Trustee") based on the procedures outlined in this document.

III.  **Valuation**

The Trustee will value the entire Portfolio, at a net asset value of $1 per share, on a daily basis and produce a blended mil rate. For purposes of this agreement, the mil rate is the prior day's interest rate earned on net equity. The External Manager may purchase investments that the Trustee may not be able to value. The Trustee will identify securities that it is unable to value, and provide the External Manager with a list of such securities prior to settlement date of the securities. In such cases, the External Manager agrees that it will be solely responsible for securing valuation from an independent third-party broker ("Broker"). The External Manager accepts responsibility for ensuring that accurate and complete valuation information is forwarded to the Trustee.

IV.   **Custody**

The Trustee provides custody services for synthetic investment contracts pursuant to an arrangement with Bankers Trust Company which acts as sub-custodian. This custody arrangement is intended for fixed income assets purchased in conjunction with benefit responsive wrap contracts allowing the combined asset or "synthetic" to be carried at contract value. Custody statements will be mailed to the External Manager and wrap contract issuers (with each issuer receiving only the details of securities that the issuer is wrapping) monthly, typically by the tenth (10th) business day of the following month.

W.R. Grace & Co., (the "Plan Sponsor "), or its designee, shall have the authority and discretion to exercise or abstain from exercising any option, right, or privilege attaching to any asset in the Portfolio, including without limitation the authority to vote in person or by proxy at corporate or other meetings, and to participate in or consent to any voting trust, reorganization, dissolution, merger, or other action affecting any asset in the Portfolio and to direct the Trustee to make payments in connection therewith.

Alternatively, the Trustee and Plan Sponsor may mutually agree to other custody arrangements for specific investments (e.g., CDC BRIC Synthetics) as the need arises.

4

FMTC WRG 00077

**V.    Money Movement**

All money transfers to and from the Portfolio will be made through the STIF.  A STIF transaction summary will be sent monthly by the Trustee to the External Manager after month end, typically by the tenth (10th) business day of the subsequent month.

**VI.    Cash Management**

For liquidity purposes, a STIF balance of approximately 1.5% of the Portfolio will be maintained. The Trustee will send a daily facsimile to the External Manager indicating STIF balances.  Based on the daily STIF balances the External Manager will direct the Trustee, via telephone, e-mail or facsimile, to either move money into the STIF or take money out of the STIF. The External Manager will determine which assets shall be liquidated and wire such funds to the Trustee.  The External Manager may call the Trustee at any time to obtain the daily STIF account balance. The STIF percentage may be unilaterally modified by the Trustee if it is determined that the STIF cash policy is not sufficient to maintain cash liquidity in a daily environment.

**VII.    New Placements**

As soon as practicable before funding a new investment, but no later than 2:30 PM ET the day before settlement, the External Manager shall provide the Trustee with contract documentation (binder, confirmation, or trade ticket) regarding the respective investment purchases.  Such documentation should include a description of the investment and an interest rate illustration.

In addition, the External Manager shall send a letter, signed by an authorized representative, directing the Trustee to execute any new investment contract documents on behalf of the Plan. In case of investment contracts, the External Manager shall notify new contract issuers that the Trustee must receive a monthly issuer statement no later than ten (10) business days after the end of the month.

If a new investment purchase does not meet the operational requirements of the Trustee, then the Trustee reserves the right to: (1) request operational changes which conform to the Trustee's valuation requirements, or (2) refuse to value the new investment.

The External Manager must also notify all new issuers  that the Trustee is authorized to make transactions and receive monthly issuer statements by the tenth (10th) business day of each month.

**VIII.    Investment Contract Maturities and Payments**

The proceeds from investment contracts held in the Portfolio will be transferred to the STIF portion of the Portfolio for subsequent reinvestment.  The transfer of proceeds will be initiated by the issuer and processed by the Trustee based upon the payout schedule provided by the External Manager in the contract documentation.  Should the payout schedule change, the External Manager will inform the Trustee as soon as possible.  The Trustee will provide wiring instructions to the appropriate issuer. Issuer-to-issuer transfers will be allowed only if the transfer is to the same issuer.

FMTC WRG 00078

IX.    **Reconciliation**

The Fidelity Participating Recordkeeping System ("FPRS") will be reconciled to the Managed Income Portfolio Accounting System ("GUIDE") on a daily and monthly basis.  The investment contracts will be reconciled to the issuer balances on a monthly basis.

A copy of the Trust Asset Statement for the Portfolio will be mailed to the Plan Sponsor typically by the tenth (10th) business day of the subsequent month.

X.    **Fee Collection for Accounting & Custody Services**

Accounting fees for the Portfolio will be accrued daily against the earnings of the Portfolio and deducted monthly from the STIF.

Custody fees for the Portfolio will be borne by the Portfolio.

XI.    **Changes to the Operating Procedures**

Other than as indicated in Section VI, this Schedule may be amended or modified by a written instrument executed by the Trustee and Plan Sponsor.

**W.R. GRACE & CO.**

By: _____
                              Date

**FIDELITY MANAGEMENT TRUST COMPANY**

By _____ 11/13/99
                              Date

6

FMTC WRG 00079

## ELEVENTH AMENDMENT TO TRUST AGREEMENT BETWEEN FIDELITY MANAGEMENT TRUST COMPANY AND W.R. GRACE & CO.

THIS ELEVENTH AMENDMENT, dated as of the first day of July, 2000, by and between Fidelity Management Trust Company (the "Trustee") and W.R. Grace & Co. (the "Sponsor");

### WITNESSETH:

WHEREAS, the Trustee and the Sponsor heretofore entered into a Trust Agreement dated July 1, 1993, with regard to the W.R. Grace & Co. Salaried Employees Savings and Investment Plan, the W.R. Grace & Co. Hourly Employees Savings and Investment Plan, and the employee stock ownership plans within those plans (collectively and individually, the "Plan"); and

WHEREAS, the Trustee and the Sponsor now desire to amend said Trust Agreement as provided for in Section 14 thereof;

NOW THEREFORE, in consideration of the above premises the Trustee and the Sponsor hereby amend the Trust Agreement by:

(1)    Amending Section 5(b), Available Investment Options, by redefining "Mutual Funds" as follows:

(i) securities issued by investment companies advised by Fidelity Management & Research Company ("Fidelity Mutual Funds") and certain securities issued by registered investment companies not advised by Fidelity Management & Research Company ("Non-Fidelity Mutual Funds") (collectively referred to as "Mutual Funds").

(2)    Amending Section 5(d), Mutual Funds, by inserting the following sentence before the first sentence:

All transactions involving Non-Fidelity Mutual Funds shall be done in accordance with the Operational Guidelines for Non-Fidelity Mutual Funds attached hereto as Schedule "K".

(3)    Amending and restating the "investment options" section of Schedules "A" and "C" as follows:

- Fixed Income Fund (GIC)
- Fidelity Blue Chip Growth Fund
- Contrafund®
- Fidelity OTC Portfolio
- Fidelity Growth & Income Portfolio
- Fidelity Balanced Fund
- Fidelity Diversified International Fund
- Fidelity Equity-Income Fund
- Fidelity Europe Fund
- Fidelity Freedom Income Fund®
- Fidelity Freedom 2000 Fund®
- Fidelity Freedom 2010 Fund®

- Fidelity Freedom 2020 Fund®
- Fidelity Freedom 2030 Fund®
- Fidelity Investment Grade Bond Fund
- Fidelity Low-Priced Stock Fund
- Fidelity U.S. Bond Index Fund
- Spartan® Extended Market Index Fund
- Spartan® International Index Fund
- Spartan® U.S. Equity Index Fund
- Spartan® Total Market Index Fund
- W.R. Grace Common Stock Fund
- Company Contribution Stock Fund
- Sealed Air Common Stock Fund (frozen to new investments)
- Sealed Air Preferred Stock Fund (frozen to new investments)
- Sealed Air Common Stock Fund (Employee) (frozen to new investments)
- Sealed Air Preferred Stock Fund (Employee) (frozen to new investments)
- Franklin Small Cap Fund I – Class A
- INVESCO Equity Income Fund
- PIMCO Total Return Fund
- Templeton Foreign Fund A
- J.P. Morgan Institutional U.S. Small Company Fund
- *American Century International Growth Fund* ~~(initials)~~

(4)    Amending Schedule "B" by adding "Non-Fidelity Mutual Funds" as follows:

| Non-Fidelity Mutual Funds: | Non-Fidelity Mutual Fund vendor shall pay service fees directly to Fidelity Investments Institutional Operations Company equal to a percentage (generally 25 or 35 basis points) of plan assets invested in such Non-Fidelity Mutual Funds. |
|---|---|

(5)    Adding Schedule "K", <u>Operational Guidelines for Non-Fidelity Mutual Funds</u>, as attached.

IN WITNESS WHEREOF, the Trustee and the Sponsor have caused this Eleventh Amendment to be executed by their duly authorized officers effective as of the day and year first above written.

**W.R. GRACE & CO.**
**ADMINISTRATIVE COMMITTEE**

By _Eileen Walsh_    6/9/00
                     **Date**

**FIDELITY MANAGEMENT TRUST COMPANY**

By _Carolyn Redden_    6/28/00
**Vice President**    **Date**

W.R. Grace & Co.- LPS
Eleventh Amendment

2

**FMTC WRG 00081**

Schedule "K"

## OPERATIONAL GUIDELINES FOR NON-FIDELITY MUTUAL FUNDS

### Pricing

By 7:00 p.m. Eastern Time ("ET") each Business Day, the Non-Fidelity Mutual Fund Vendor
(Fund Vendor) will input the following information ("Price Information") into the Fidelity
Participant Recordkeeping System ("FPRS") via the remote access price screen that Fidelity
Investments Institutional Operations Company, Inc. ("FIIOC"), an affiliate of the Trustee, has
provided to the Fund Vendor: (1) the net asset value for each Fund at the Close of Trading, (2)
the change in each Fund's net asset value from the Close of Trading on the prior Business Day,
and (3) in the case of an income fund or funds, the daily accrual for interest rate factor ("mil
rate"). FIIOC must receive Price Information each Business Day (a "Business Day" is any day the
New York Stock Exchange is open). If on any Business Day the Fund Vendor does not provide
such Price Information to FIIOC, FIIOC shall pend all associated transaction activity in the
Fidelity Participant Recordkeeping System ("FPRS") until the relevant Price Information is made
available by Fund Vendor.

### Trade Activity and Wire Transfers

By 7:00 a.m. ET each Business Day following Trade Date ("Trade Date plus One"), FIIOC will
provide, via facsimile, to the Fund Vendor a consolidated report of net purchase or net redemption
activity that occurred in each of the Funds up to 4:00 p.m. ET on the prior Business Day. The report
will reflect the dollar amount of assets and shares to be invested or withdrawn for each Fund. FIIOC
will transmit this report to the Fund Vendor each Business Day, regardless of processing activity. In
the event that data contained in the 7:00 a.m. ET facsimile transmission represents estimated trade
activity, FIIOC shall provide a final facsimile to the Fund Vendor by no later than 9:00 a.m. ET. Any
resulting adjustments shall be processed by the Fund Vendor at the net asset value for the prior
Business Day.

The Fund Vendor shall send via regular mail to FIIOC transaction confirms for all daily activity in
each of the Funds. The Fund Vendor shall also send via regular mail to FIIOC, by no later than the
fifth Business Day following calendar month close, a monthly statement for each Fund. FIIOC
agrees to notify the Fund Vendor of any balance discrepancies within twenty (20) Business Days of
receipt of the monthly statement.

W.R. Grace & Co.- LPS                           3
Eleventh Amendment

**FMTC WRG 00082**

For purposes of wire transfers, FIIOC shall transmit a daily wire for aggregate purchase activity and the Fund Vendor shall transmit a daily wire for aggregate redemption activity, in each case including all activity across all Funds occurring on the same day.

### Participant Communications

The Fund Vendor shall provide internally-prepared fund descriptive information approved by the Funds' legal counsel for use by FIIOC in its written participant communication materials. FIIOC shall utilize historical performance data obtained from third-party vendors (currently Morningstar, Inc., FACTSET Research Systems and Lipper Analytical Services) in telephone conversations with plan participants and in quarterly participant statements. The Sponsor hereby consents to FIIOC's use of such materials and acknowledges that FIIOC is not responsible for the accuracy of such third-party information. FIIOC shall seek the approval of the Fund Vendor prior to retaining any other third-party vendor to render such data or materials under this Agreement.

### Compensation

FIIOC shall be entitled to fees as set forth in a separate agreement with the Fund Vendor.

W.R. Grace & Co.- LPS                    4
Eleventh Amendment

FMTC WRG 00083

TWELFTH AMENDMENT TO TRUST AGREEMENT BETWEEN
FIDELITY MANAGEMENT TRUST COMPANY AND
W.R. GRACE & CO.

THIS TWELFTH AMENDMENT, dated as of the fifteenth day of December, 2000, by and
between Fidelity Management Trust Company (the "Trustee") and W.R. Grace & Co. (the "Sponsor");

WITNESSETH:

WHEREAS, the Trustee and the Sponsor heretofore entered into a Trust Agreement dated July 1,
1993, with regard to the W.R. Grace & Co. Salaried Employees Savings and Investment Plan, the W.R.
Grace & Co. Hourly Employees Savings and Investment Plan, and the employee stock ownership plans
within those plans (collectively and individually, the "Plan"); and

WHEREAS, the Trustee and the Sponsor now desire to amend said Trust Agreement as provided
for in Section 14 thereof;

NOW THEREFORE, in consideration of the above premises the Trustee and the Sponsor hereby
amend the Trust Agreement by:

(1)     Amending Section 8(e)(ii), Indemnification to add the following.

The Trustee shall indemnify the Sponsor against and hold the Sponsor harmless
from any and all such loss, damage, penalty, liability, cost, and expense, including
without limitation, reasonable attorney's fees and disbursements, that may be
incurred by, imposed upon, or asserted against the Sponsor solely as a result of a)
any defects in the investment methodology embodied in the target asset allocation or
model portfolio provided through Fidelity PortfolioPlanner, except to the extent that
any such loss, damage, penalty, liability, cost or expense arises from information
provided by the participant, the Sponsor or third parties; or b) any prohibited
transactions resulting from the provision by the Trustee of Fidelity PortfolioPlanner.

(2)     Adding a new Section 18, Electronic Services, as follows:

Section 18.   Electronic Services.

        (a)     The Trustee may provide communications and services ("Electronic
Services") and/or software products ("Electronic Products") via electronic media,
including, but not limited to Fidelity Plan Sponsor WebStation.  The Sponsor and its
agents agree to use such Electronic Services and Electronic Products only in the course
of reasonable administration of or participation in the Plan and to keep confidential and
not publish, copy, broadcast, retransmit, reproduce, commercially exploit or otherwise
redisseminate the Electronic Products or Electronic Services or any portion thereof
without the Trustee's written consent, except, in cases where Trustee has specifically
notified the Sponsor that the Electronic Products or Services are suitable for delivery to
Sponsor's plan participants, for non-commercial personal use by participants or
beneficiaries with respect to their participation in the plan or for their other retirement
planning purposes.

(b)     The Sponsor shall be responsible for installing and maintaining all Electronic Products, (including any programming required to accomplish the installation) and for displaying any and all content associated with Electronic Services on its computer network and/or Intranet so that such content will appear exactly as it appears when delivered to Sponsor.   All Electronic Products and Services shall be clearly identified as originating from the Trustee or its affiliate.  The Sponsor shall promptly remove Electronic Products or Services from its computer network and/or Intranet, or replace the Electronic Products or Services with updated products or services provided by the Trustee, upon written notification (including written notification via facsimile) by the Trustee.

(c)     All Electronic Products shall be provided to the Sponsor without any express or implied legal warranties or acceptance of legal liability by the Trustee, and all Electronic Services shall be provided to the Sponsor without acceptance of legal liability related to or arising out of the electronic nature of the delivery or provision of such Services.  Except as otherwise stated in this Agreement, no rights are conveyed to any property, intellectual or tangible, associated with the contents of the Electronic Products or Services and related material.  The Trustee hereby grants to the Sponsor a non-exclusive, non-transferable revocable right and license to use the Electronic Products and Services in accordance with the terms and conditions of this Agreement.

(d)     To the extent that any Electronic Products or Services utilize Internet services to transport data or communications, the Trustee will take, and Sponsor agrees to follow, reasonable security precautions, however, the Trustee disclaims any liability for interception of any such data or communications. The Trustee reserves the right not to accept data or communications transmitted via electronic media by the Sponsor or a third party if it determines that the media does not provide adequate data security, or if it is not administratively feasible for the Trustee to use the data security provided. The Trustee shall not be responsible for, and makes no warranties regarding access, speed or availability of Internet or network services, or any other service required for electronic communication.  The Trustee shall not be responsible for any loss or damage related to or resulting from any changes or modifications to the Electronic Products or Services after delivering it to the Sponsor.

(3)    Amending the "Other" section of Schedule "A" by adding the following bullet point:

- Fidelity PortfolioPlanner[SM], an internet-based educational service for participants that generates target asset allocations and model portfolios customized to investment options in the Plan(s) based upon methodology provided by Strategic Advisers, Inc., an affiliate of the Trustee.  The Sponsor acknowledges that it has received the ADV Part II for Strategic Advisers, Inc. more than 48 hours prior to executing the Trust amendment.

(4)    Amending the "Other Fees" section of Schedule "B" as follows:

- Other Fees: separate charges for optional use of remote access, 401(k) and 401(m) testing, non-discrimination testing, extraordinary expenses resulting from large numbers of simultaneous manual transactions, from errors not caused by Fidelity,

W.R. Grace & Co.- LPS                            2
Twelfth Amendment

FMTC WRG 00085

reports not contemplated in this Agreement, corporate actions, or the provision of communications materials in hard copy which are also accessible to participants via electronic services in the event that the provision of such material in hard copy would result in an additional expense deemed to be material. The Administrator may withdraw reasonable administrative fees from the Trust by written direction to the Trustee.

IN WITNESS WHEREOF, the Trustee and the Sponsor have caused this Twelfth Amendment to be executed by their duly authorized officers effective as of the day and year first above written.

**W.R. GRACE & CO.**
**ADMINISTRATIVE COMMITTEE**


By Martin Hunter        12-4-00
                        **Date**


**FIDELITY MANAGEMENT TRUST**
**COMPANY**


By                      12/29/00
    **Vice President**      **Date**


W.R. Grace & Co.- LPS                3
Twelfth Amendment

FMTC WRG 00086

THIRTEENTH AMENDMENT TO TRUST AGREEMENT BETWEEN
FIDELITY MANAGEMENT TRUST COMPANY AND
W.R. GRACE & CO.

THIS THIRTEENTH AMENDMENT, dated as of the first day of May, 2002, by and between Fidelity Management Trust Company (the "Trustee") and W.R. Grace & Co. (the "Sponsor");

WITNESSETH:

WHEREAS, the Trustee and the Sponsor heretofore entered into a Trust Agreement dated July 1, 1993, with regard to the W.R. Grace & Co. Salaried Employees Savings and Investment Plan, the W.R. Grace & Co. Hourly Employees Savings and Investment Plan, and the employee stock ownership plans within those plans (collectively and individually, the "Plan"); and

WHEREAS, the Trustee and the Sponsor now desire to amend said Trust Agreement as provided for in Section 14 thereof;

NOW THEREFORE, in consideration of the above premises the Trustee and the Sponsor hereby amend the Trust Agreement by:

(1)    Amending the "investment options" section of Schedules "A" and "C" by adding the following:

- Fidelity Freedom 2040 Income Fund

IN WITNESS WHEREOF, the Trustee and the Sponsor have caused this Thirteenth Amendment to be executed by their duly authorized officers effective as of the day and year first above written.

**W.R. GRACE & CO.**
**ADMINISTRATIVE COMMITTEE**

By ~~Martin Hunter~~         5/2/2002
    MARTIN HUNTER            Date
    VP FINANCE - TREASURY

**FIDELITY MANAGEMENT TRUST**
**COMPANY**

By ~~Carolyn Redder~~ 6/30/02
   FMTC Authorized Signatory   Date

W.R. Grace & Co.- LPS
Thirteenth Amendment

**FMTC WRG 00087**

FOURTEENTH AMENDMENT TO TRUST AGREEMENT BETWEEN
FIDELITY MANAGEMENT TRUST COMPANY AND
W.R. GRACE & CO.

THIS FOURTEENTH AMENDMENT, dated as of the ninth day of April, 2003, by and between Fidelity Management Trust Company (the "Trustee") and W.R. Grace & Co. (the "Sponsor");

WITNESSETH:

WHEREAS, the Trustee and the Sponsor heretofore entered into a Trust Agreement dated July 1, 1993, with regard to the W.R. Grace & Co. Salaried Employees Savings and Investment Plan, the W.R. Grace & Co. Hourly Employees Savings and Investment Plan, and the employee stock ownership plans within those plans (collectively and individually, the "Plan"); and

WHEREAS, the Sponsor has informed the Trustee that *effective January 1, 2002*, the W.R. Grace & Co. Hourly Employees Savings and Investment Plan has merged with and into the W.R. Grace & Co. Salaried Employees Savings and Investment Plan; and

WHEREAS, the Sponsor has informed the Trustee that *effective January 1, 2002*, the name of the W.R. Grace & Co. Salaried Employees Savings and Investment Plan has changed to the "W.R. Grace & Co. Savings and Investment Plan"; and

WHEREAS, the Sponsor has informed the Trustee that effective at the close of market (4:00 p.m. ET) on April 9, 2003, the assets of the (unitized) W.R. Grace Common Stock Fund (Employee) and the assets of the (unitized) W.R. Grace Company Contribution Stock Fund (Employer) are frozen to all participant transactions and incoming contributions; and

WHEREAS, the Sponsor now desires, and hereby directs the Trustee, in accordance with 8(c), on April 9, 2003, to use the short-term liquid investments in the W.R. Grace Common Stock Fund (Employee) and the W.R. Grace Company Contribution Stock Fund (Employer) to purchase units of the Fixed Income Fund and to allocate such units pro rata to the accounts of the participants in the Stock Funds. The parties hereto agree that the Trustee shall have no discretionary authority with respect to this transfer directed by the Sponsor. Any variation from the procedure described herein may be instituted only at the express written directions of the Sponsor; and

WHEREAS, the Sponsor now desires, and hereby directs the Trustee to reallocate all participant balances in the underlying shares of Sponsor Stock held in the (unitized) W.R. Grace Common Stock Fund (Employee) and the (unitized) W.R. Grace Company Contribution Stock Fund (Employer) on April 11, 2003 into the W.R. Grace Common Stock Fund (Real Time Trading option). The new W.R. Grace Common Stock Fund (Real Time Trading option) will be available for participant transactions on April 14, 2003. The parties hereto agree that the Trustee shall have no discretionary authority with respect to this transfer directed by the Sponsor. Any variation from the procedure described herein may be instituted only at the express written directions of the Sponsor; and

WHEREAS, the Sponsor has informed the Trustee that effective at the close of the market (4:00 p.m. ET) on April 18, 2003, the assets of the W.R. Grace Common Stock Fund are frozen to all participant transactions and incoming contributions, and

W.R. Grace – LPS, Trust
Fourteenth Amendment

FMTC WRG 00088

WHEREAS, the Trustee and the Sponsor now desire to amend said Trust Agreement as provided for in Section 14 thereof;

NOW THEREFORE, in consideration of the above premises, the Trustee and the Sponsor hereby amend the Trust Agreement by:

(1)    *Effective January 1, 2002*, replacing all references to the "W.R. Grace & Co. Salaried Employees Savings and Investment Plan" and the "W.R. Grace & Co. Hourly Employees Savings and Investment Plan" with the "W.R. Grace & Co. Savings and Investment Plan."

(2)    *Effective January 1, 2002*, restating the first WHEREAS clause in its entirety, as follows:

WHEREAS, the Sponsor is the sponsor of the W.R. Grace & Co. Savings and Investment Plan (the "Plan"); and

(3)    *Effective January 1, 2002*, restating Section 1(m), in its entirety, as follows:

(m)   "Plan" shall mean the W.R. Grace & Co. Savings and Investment Plan.

(4)    *Effective April 11, 2003*, restating Section 5(e), Sponsor Stock, in its entirety, as follows:

**(e)   Sponsor Stock.**
Trust investments in Sponsor Stock shall be made via the Stock Fund.

**(i)   Acquisition Limit.**
Pursuant to the Plan, the Trust may be invested in Sponsor Stock to the extent necessary to comply with investment directions under this Agreement. The Sponsor shall be responsible for providing specific direction on any acquisition limits required by the Plan or applicable law.

**(ii)   Fiduciary Duty.**

(A)   The Named Fiduciary shall continually monitor the suitability of the Trust acquiring and holding Sponsor Stock, under the fiduciary duty rules of section 404(a)(1) of ERISA (as modified by section 404(a)(2) of ERISA). The Trustee shall not be liable for any loss, or expense, which arises from the directions of the Named Fiduciary with respect to the acquisition and holding of Sponsor Stock, unless it is clear on their face that the actions to be taken under those directions would be prohibited by the foregoing fiduciary duty rules or would be contrary to the terms of this Agreement.

(B)   Each Participant with an interest in Sponsor Stock (or, in the event of the Participant's death, his beneficiary) is, for purposes of this section 5(e)(ii), hereby designated as a "named fiduciary" (within the meaning of section 403(a)(1) of ERISA), with respect to shares of Sponsor Stock allocated to his or her account and such Participant (or beneficiary) shall have the right to direct the Trustee as to the manner in which the Trustee is to vote or tender such shares.

**(iii)   Purchases and Sales of Sponsor Stock for Batch Activity.**
Unless otherwise directed by the Sponsor in writing pursuant to directions that the Trustee can administratively implement, the following provisions shall govern purchases and sales of Sponsor Stock

FMTC WRG 00089

for contributions, loan repayments, distributions, loans, withdrawals, or any other purchase or sale of Sponsor Stock related to a transaction that the Sponsor has directed the Trustee in writing to implement on a batch basis ("batch activity").

(A)   Open Market Purchases and Sales. Purchases and sales of Sponsor Stock shall be made on the open market in accordance with the Trustee's standard trading guidelines, as they may be amended from time to time, as necessary to honor batch activity. Such general rules shall not apply in the following circumstances:

(1)   If the Trustee is unable to purchase or sell the total number of shares required to be purchased or sold on such day as a result of market conditions; or

(2)   If the Trustee is prohibited by the SEC, the NYSE or principal exchange on which the Sponsor Stock is traded, or any other regulatory or judicial body from purchasing or selling any or all of the shares required to be purchased or sold on such day.
In the event of the occurrence of a circumstance described in (1) or (2) above, the Trustee shall purchase or sell such shares as soon thereafter as administratively feasible, and shall determine the price of such purchases or sales to be the average purchase or sales price of all such shares purchased or sold, respectively. The Trustee may follow written directions from the Named Fiduciary to deviate from the above purchase and sale procedures.

(iv)   Purchases and Sales of Sponsor Stock for Participant-Initiated Exchanges ("Real Time" Trading)

Unless otherwise directed by the Sponsor in writing pursuant to directions that the Trustee can administratively implement, the following provisions shall govern purchases and sales of Sponsor Stock for Participant-initiated exchanges.

(A)   Purchases and Sales of Sponsor Stock. Purchases and sales of Sponsor Stock associated with individual Participant-initiated exchanges into or out of the Stock Fund shall be made on the open market pursuant to order types selected by the Participant in accordance with the Trustee's procedures for "Real Time Trading." The Sponsor may instruct the Trustee to limit the order types available to Participants.

(1)   Automated Order Entry. Sponsor Stock trades associated with Participant-initiated exchanges shall be sent to market as soon as administratively feasible during regular trading hours via an electronic order entry system, unless such trade is treated as a block trade. Such electronic order entry system shall be deemed an Electronic Service for purposes of Section 18 of this Agreement.

(2)   Limitations on Trades; Cancellation of Exchange Requests. Trades rejected under rules of the applicable securities exchange will not be executed. The Trustee will not submit orders (or will cancel orders) for stock trades that violate the Trustee's procedures for "Real Time Trading". The Trustee shall not submit any trade order associated with a Participant-initiated exchange at any time when the Sponsor Stock Fund has been closed to such activity. Trades associated with Participant-initiated exchanges shall not be transacted at any time when the regular market is closed, or when the SEC, the NYSE or principal exchange on which the Sponsor Stock is traded, or any other regulatory or judicial body has prohibited purchases or sales of any or all of the shares requested by be traded pursuant to the Participant-initiated exchange. An exchange requested by the Participant shall be

W.R. Grace – LPS, Trust                    3
Fourteenth Amendment

FMTC WRG 00090

rejected or cancelled, as the case may be, to the extent any accompanying trade is not submitted, not executed or cancelled.

(B)   Reserve Requirements for Exchanges Into Stock Fund and Corrective Sales. The Participant's ability to initiate exchanges into the Stock Fund shall be subject to standard reserve requirements applicable to the investment options used to fund the exchange, as established by the Trustee from time to time (or such higher reserve requirements as may be established by the Sponsor in written direction to the Trustee). Requests to exchange into the Sponsor Stock Fund that exceed such reserves, and accompanying trade orders, may be rejected or cancelled. In the event that a buy trade associated with a request to exchange into Sponsor Stock is executed, and the Participant does not have sufficient assets in the designated investment option to fund the trade, the Trustee will liquidate investment options (including those held in other sources eligible for liquidation) in the affected Participant's account pro rata. In the event that the Participant does not have sufficient assets in any other investment option, the Trustee shall initiate a corrective sale, and shall debit the costs of such corrective trade from the Participant's account.

(C)   Fractional Shares. Participants will be entitled to exchange out fractional shares in the Stock Fund only in connection with a request to exchange out the entire balance of their Stock Fund holdings (or the entire balance in a particular source, as applicable). Fractional shares will be transacted at the price determined by the stock trade order selected by the Participant.

(v)   **Use of an Affiliated Broker.**

For all purchases and sales of Sponsor Stock on the open market, whether Participant-initiated or otherwise, the Named Fiduciary hereby directs the Trustee to use FBSLLC to provide brokerage services. Subject to the provisions of this agreement, FBSLLC shall execute such trades directly or through any of its affiliates. The provision of brokerage services shall be subject to the following:

(1)   As consideration for such brokerage services, the Named Fiduciary agrees that FBSLLC shall be entitled to remuneration under this direction provision in the amount of $0.034 commission on each share of Sponsor Stock. Any increase in such remuneration may be made only by written agreement between the Named Fiduciary and Trustee.

(2)   Any successor organization of FBSLLC, through reorganization, consolidation, merger or similar transactions, shall, upon consummation of such transaction, become the successor broker in accordance with the terms of this direction provision. FBSLLC may assign its rights and obligations under this agreement to any affiliate, provided that the assignee is bound by the terms hereof, including the provisions concerning remuneration.

(3) The Trustee and FBSLLC shall continue to rely on this direction provision until notified to the contrary. The Named Fiduciary reserves the right to terminate this direction upon written notice to FBSLLC (or its successors or assigns) and the Trustee, in accordance with Section 12 of this Agreement.

(4) The Plan Sponsor acknowledges that FBSLLC (and its successors and assigns) may rely upon this Trust Agreement in establishing an account in the name of the Trustee for the Plan or its Participants, and in allowing each Participant to exercise limited trading authorization over such account, to the extent of his or her individual account balance in the Sponsor Stock Fund subject to Participant direction.

W.R. Grace – LPS, Trust
Fourteenth Amendment

4

FMTC WRG 00091

(vi)   Securities Law Reports.

The Named Fiduciary shall be responsible for filing all reports required under Federal or state securities laws with respect to the Trust's ownership of Sponsor Stock, including, without limitation, any reports required under section 13 or 16 of the Securities Exchange Act of 1934, and shall immediately notify the Trustee in writing of any requirement to stop purchases or sales of Sponsor Stock pending the filing of any report. The Trustee shall provide to the Named Fiduciary such information on the Trust's ownership of Sponsor Stock as the Named Fiduciary may reasonably request in order to comply with Federal or state securities laws.

(vii)   Voting and Tender Offers.

Notwithstanding any other provision of this Agreement the provisions of this Section shall govern the voting and tendering of Sponsor Stock. The Sponsor shall pay for all printing, mailing, tabulation and other costs associated with the voting and tendering of Sponsor Stock. The Trustee, after consultation with the Sponsor, shall prepare the necessary documents associated with the voting and tendering of Sponsor Stock.

(A)   Voting.

(1)   When the issuer of Sponsor Stock prepares for any annual or special meeting, the Sponsor shall notify the Trustee at least thirty (30) days in advance of the intended record date and shall cause a copy of all proxy solicitation materials to be sent to the Trustee. If requested by the Trustee the Sponsor shall certify to the Trustee that the aforementioned materials represents the same information distributed to shareholders of Sponsor Stock. Based on these materials, the Trustee shall prepare a voting instruction form and shall provide a copy of all proxy solicitation materials to be sent to each Participant with an interest in Sponsor Stock held in the Trust, together with the foregoing voting instruction form to be returned to the Trustee or its designee. The form shall show the number of full and fractional shares of Sponsor Stock credited to the Participant's accounts.

(2)   Each Participant with an interest in the Sponsor Stock held in the Trust shall have the right to direct the Trustee as to the manner in which the Trustee is to vote (including not to vote) that number of shares of Sponsor Stock credited to the Participant's accounts (both vested and unvested). Directions from a Participant to the Trustee concerning the voting of Sponsor Stock shall be communicated in writing, or by such other means as agreed upon by the Trustee and the Sponsor. These directions shall be held in confidence by the Trustee and shall not be divulged to the Sponsor, or any officer or employee thereof, or any other person except to the extent that the consequences of such directions are reflected in reports regularly communicated to any such person in the ordinary course of the performance of the Trustee's services hereunder. Upon its receipt of the directions, the Trustee shall vote the shares of Sponsor Stock as directed by the Participant. Except as otherwise required by law, the Trustee shall vote shares of Sponsor Stock credited to a Participant's account for which it has received no direction from the Participant in the same proportion on each issue as it votes those shares credited to Participants' account for which it received voting directions from Participants.

(3)   Except as otherwise required by law, the Trustee shall vote that number of shares of Sponsor Stock not credited to Participants' accounts in the same proportion on each issue as it votes those shares credited to Participants' accounts for which it received voting directions from Participants.

(B)   Tender Offers.

FMTC WRG 00092

(1)     Upon commencement of a tender offer for any securities held in the Trust that are Sponsor Stock, the Sponsor shall timely notify the Trustee in advance of the intended tender date and shall cause a copy of all materials to be sent to the Trustee. The Sponsor shall certify to the Trustee that the aforementioned materials represent the same information distributed to shareholders of Sponsor Stock. Based on these materials and after consultation with the Sponsor, the Trustee shall prepare a tender instruction form and shall provide a copy of all tender materials to be sent to each Participant with an interest in the Stock Fund, together with the foregoing tender instruction form, to be returned to the Trustee or its designee. The tender instruction form shall show the number of full and fractional shares of Sponsor Stock credited to the Participants account (both vested and unvested).

(2)     Each Participant with an interest in the Stock Fund shall have the right to direct the Trustee to tender or not to tender some or all of the shares of Sponsor Stock credited to the Participant's accounts (both vested and unvested). Directions from a Participant to the Trustee concerning the tender of Sponsor Stock shall be communicated in writing, or such other means as is agreed upon by the Trustee and the Sponsor. These directions shall be held in confidence by the Trustee and shall not be divulged to the Sponsor, or any officer or employee thereof, or any other person except to the extent that the consequences of such directions are reflected in reports regularly communicated to any such persons in the ordinary course of the performance of the Trustee's services hereunder. The Trustee shall tender or not tender shares of Sponsor Stock as directed by the Participant. Except as otherwise required by law, the Trustee shall not tender shares of Sponsor Stock credited to a Participant's accounts for which it has received no directions from the Participant.

(3)     Except as otherwise required by law, the Trustee shall tender that number of shares of Sponsor Stock not credited to Participants' accounts in the same proportion as the total number of shares of Sponsor Stock credited to Participants' accounts for which it received instructions from Participants.

(4)     A Participant who has directed the Trustee to tender some or all of the shares of Sponsor Stock credited to the Participant's accounts may, at any time prior to the tender offer withdrawal date, direct the Trustee to withdraw some or all of the tendered shares, and the Trustee shall withdraw the directed number of shares from the tender offer prior to the tender offer withdrawal deadline. Prior to the withdrawal deadline, if any shares of Sponsor Stock not credited to Participants' accounts have been tendered, the Trustee shall redetermine the number of shares of Sponsor Stock that would be tendered under Section 5(e)(vii)(B)(3) if the date of the foregoing withdrawal were the date of determination, and withdraw from the tender offer the number of shares of Sponsor Stock not credited to Participants' accounts necessary to reduce the amount of tendered Sponsor Stock not credited to Participants' accounts to the amount so redetermined. A Participant shall not be limited as to the number of directions to tender or withdraw that the Participant may give to the Trustee.

(5)     A direction by a Participant to the Trustee to tender shares of Sponsor Stock credited to the Participant's accounts shall not be considered a written election under the Plan by the Participant to withdraw, or have distributed, any or all of his withdrawable shares. The Trustee shall credit to each account of the Participant from which the tendered shares were taken the proceeds received by the Trustee in exchange for the shares of Sponsor Stock tendered from that account. Pending receipt of directions (through the Administrator) from the Participant or the Named Fiduciary, as provided in the Plan, as to which of the remaining investment options the proceeds should be invested in, the Trustee shall invest the proceeds in the investment option described in Schedule "C".

FMTC WRG 00093

   (viii) <u>General.</u>

With respect to all shareholder rights other than the right to vote, the right to tender, and the right to withdraw shares previously tendered, in the case of Sponsor Stock, the Trustee shall follow the procedures set forth in subsection (A), above.

   (ix) <u>Conversion.</u>

All provisions in this Section 5(e) shall also apply to any securities received as a result of a conversion of Sponsor Stock.

  (5) *Effective April 11, 2003,* amending the "investment options" sections of Schedules "A" and "C" to remove the following:

   - Company Contribution Stock Fund

  (6) *Effective April 21, 2003,* amending the "investment options" sections of Schedules "A" and "C" to remove the reference to the "W.R. Grace Common Stock Fund" and replacing it with the following:

   • W.R. Grace Common Stock Fund **(frozen to new contributions and exchanges in)**

  (7) *Effective April 11, 2003,* restating the "Trustee Fees" section in its entirety as follows:

   **Stock Administration Fee:**

   • To the extent that assets are invested in Sponsor Stock, .15% of such assets in the Trust payable pro rata quarterly on the basis of such assets as of the calendar quarter's last valuation date, but no less than $20,000 nor more than $50,000 per year.

  (8) Amending the "Non-Fidelity Mutual Funds" section of Schedule "B" as follows:

| Non-Fidelity Mutual Funds: | Non-Fidelity Mutual Fund vendors shall pay fees directly to Fidelity Investments Institutional Operations Company, Inc. (FIIOC) or its affiliates equal to such percentage (generally 25 to 50 basis points) of plan assets invested in such Non-Fidelity Mutual Funds as may be disclosed periodically, or, in the case of the following investment options, in the amounts listed below: |
|---|---|

   - American Century International Growth Fund: 0 basis points.

   - J.P. Morgan Institutional U.S. Small Company Fund: 25 basis points.

FMTC WRG 00094

Unless otherwise noted, disclosure shall be
posted and updated quarterly on Plan Sponsor
Webstation at https://psw.fidelity.com or a
successor site.

(9)    Restating the last sentence of Schedule "C" in its entirety, as follows:

The Named Fiduciary directs that the investment option referred to in Section 5(c) and
Section 5(e)(vii)(B)(5) shall be the Fixed Income Fund (GIC).

(10)    *Effective April 11, 2003*, restating Schedule "H", in its entirety, as attached hereto.


IN WITNESS WHEREOF, the Trustee and the Sponsor have caused this Fourteenth Amendment
to be executed by their duly authorized officers effective as of the day and year first above written.


W.R. GRACE & CO.                          FIDELITY MANAGEMENT TRUST
                                          COMPANY


By _Robert M. Tarola_____                 By _____ 10/23/03
                     Date                 FMTC Authorized Signatory    Date


W.R. Grace – LPS, Trust                   8
Fourteenth Amendment

FMTC WRG 00095

SCHEDULE "H"

EXCHANGE GUIDELINES


The following exchange guidelines are currently employed by FIIOC.

Participants may initiate exchanges, via a Fidelity Participant service representative, from 8:30 a.m. (ET) to 8:00 p.m. ET on any day that the New York Stock Exchange is open (a "Business Day"). Participants may initiate exchanges, subject to the rules listed below for the Stock Fund, via VRS and the internet (NetBenefits℠), virtually 24 hours a day.

FIIOC reserves the right to change these exchange guidelines at its discretion.

Note: The NYSE's normal closing time is 4:00 p.m. (ET); in the event the NYSE closes before such time or alters such closing time, all references below to 4:00 p.m. (ET) shall mean the actual or altered closing time of the NYSE.

Exchanges shall be subject to plan rules, and the exchange guidelines provided below shall apply to sources and funds to the extent eligible for Participant-directed purchases and/or sales.

### Mutual Funds

#### Exchanges Between Mutual Funds

Participants may call on any Business Day to exchange between the mutual funds. If the request is confirmed before 4:00 p.m. (ET), it will receive that day's trade date. Requests confirmed after 4:00 p.m. (ET) will be processed on a next Business Day basis.

### Fixed Income Fund

I.    **Exchanges Between Mutual Funds and Fixed Income Fund**

Participants may call on any Business Day to exchange between a mutual fund and the Fixed Income Fund. If the request is confirmed before 4:00 p.m. (ET), it will receive that day's trade date. Requests confirmed after 4:00 p.m. (ET) will be processed on a next Business Day basis.

II.   **Exchange Restrictions**

Participants will not be permitted to make direct transfers between the Fixed Income Fund and a competing fund (within the meaning of the GICs or the Existing GICs held in the Fixed Income Fund). Participants who wish to exchange between the Fixed Income Fund and a competing fund must first exchange into a non-competing fund for a period of 180 days.

W.R. Grace – LPS, Trust
Fourteenth Amendment

9

FMTC WRG 00096

'11/2003 12:38 FAX 15084815644    CONSULTING & COMPLIANCE                ☒011

### Sponsor Stock

The following rules apply to any Participant-initiated exchange unless the Sponsor has directed the Trustee in writing to treat such exchanges as batch activity.

I.    **Exchanges from Mutual Funds or Fixed Income Fund into Sponsor Stock**

Participants who wish to initiate an exchange may contact Fidelity at any time listed above. Exchanges from a mutual fund or the Fixed Income Fund into Sponsor Stock will be processed after execution of the buy trade, at the next calculated NAV of the Mutual Fund or Fixed Income Fund.

Sponsor Stock will be reflected in the Participant's individual account in the Plan on the Business Day following execution of the trade.

*As of April 21, 2003, no exchanges into Sponsor Stock will be permitted.*

II.   **Exchanges from Sponsor Stock into Mutual Funds or Fixed Income Fund**

Participants who wish to initiate an exchange out of Sponsor Stock into Mutual Funds or Fixed Income Fund may contact Fidelity at any time listed above.

Exchanges out of Sponsor Stock will be processed after execution of the sell trade. The subsequent exchange into the Mutual Fund or Fixed Income Fund will be processed upon settlement day of the sell trade, at the last calculated NAV for such date.

The Mutual Fund of Fixed Income Fund shares will be reflected in the Participant's account on the following Business Day.

III.  **Exchange Restrictions**

All exchange requests involving Sponsor Stock must be made in shares of stock, even if the Plan allows for percentage and dollar amount exchanges. If a Participant wishes to exchange out his or her entire balance in Sponsor Stock (or, if applicable, his or her entire balance in Sponsor Stock in a single source), the associated trade must be placed in whole shares, and fractional shares will be processed at the price determined by the Participant-directed trade. Exchange requests accompanied by certain order types may not be accepted outside of normal trading hours. Trade requests accompanying exchange requests that do not adhere to the Trustee's standard guidelines, or that would violate securities exchange rules, may result in rejection or cancellation of the associated exchange request.

Exchanges from one stock fund to another, or from a Participant-directed brokerage account to Sponsor Stock are not permitted.

Exchanges into Sponsor Stock shall be subject to minimum reserves on the investment option used to fund the exchange, as established by the Trustee from time to time (or such higher

FMTC WRG 00097

SIXTEENTH AMENDMENT TO TRUST AGREEMENT BETWEEN
FIDELITY MANAGEMENT TRUST COMPANY AND
W.R. GRACE & CO.

This **SIXTEENTH AMENDMENT**, dated as of the first day of January, 2005, by and between Fidelity Management Trust Company (the "Trustee") and W.R. Grace & Co. (the "Sponsor");

WITNESSETH:

WHEREAS, the Trustee and the Sponsor heretofore entered into a Trust Agreement dated July 1, 1993, as subsequently amended, with regard to the W.R. Grace & Co. Savings and Investment Plan (the "Plan"); and

WHEREAS, the Trustee and the Sponsor now desire to further amend such Trust Agreement as provided for in Section 14 thereof;

NOW, THEREFORE, in consideration of the above premises, the Trustee and the Sponsor hereby amend the Trust Agreement by:

(1)     Restating the "Annual Participant Fee" section of Schedule "B" as follows:

Annual Participant Fee:      $3 per participant*, billed and payable quarterly.

(2)     Restating the "Non-Fidelity Mutual Funds" section of Schedule "B" as follows:

Non-Fidelity Mutual Funds:     Fees paid directly to Fidelity Investments Institutional Operations Company, Inc. (FIIOC) or its affiliates by Non-Fidelity Mutual Fund vendors shall be posted and updated quarterly on Plan Sponsor Webstation at http://psw.fidelity.com or a successor site.

IN WITNESS WHEREOF, the Trustee and the Plan Sponsor have caused this Sixteenth Amendment to be executed by their duly authorized officers effective as of the day and year first above written.

W.R. GRACE & CO.                         FIDELITY MANAGEMENT TRUST COMPANY


By: _____           By: _____
    W. Brian McGowan                         FMTC Authorized Signatory

Date: __12|31|04_____               Date: __1|24|05_____

FMTC WRG 00098

### SEVENTEENTH AMENDMENT TO TRUST AGREEMENT BETWEEN FIDELITY MANAGEMENT TRUST COMPANY AND W.R. GRACE & CO.

This **SEVENTEENTH AMENDMENT**, dated as of the first day of February, 2005, by and between Fidelity Management Trust Company (the "Trustee") and W.R. Grace & Co. (the "Sponsor");

#### WITNESSETH:

WHEREAS, the Trustee and the Sponsor heretofore entered into a Trust Agreement dated July 1, 1993, as subsequently amended, with regard to the W.R. Grace & Co. Savings and Investment Plan (the "Plan"); and

WHEREAS, the Trustee and the Sponsor now desire to further amend such Trust Agreement as provided for in Section 14 thereof;

NOW, THEREFORE, in consideration of the above premises, the Trustee and the Sponsor hereby amend the Trust Agreement by:

   (1)   Amending the "investment options" section of Schedules "A" and "C" to add the following:

-   Goldman Sachs Mid Cap Value Fund – Class A
-   Goldman Sachs Small Cap Value Fund – Institutional Class

IN WITNESS WHEREOF, the Trustee and the Plan Sponsor have caused this Seventeenth Amendment to be executed by their duly authorized officers effective as of the day and year first above written.

W.R. GRACE & CO.                              FIDELITY MANAGEMENT TRUST COMPANY

By: _Robert M. Tarola_                        By: _____
                                              FMTC Authorized Signatory

Date: _February 3, 2005_                      Date: _2/18/05_

W.R. Grace & Co.
Qualified Trust Agreement
Seventeenth Amendment