LEXSEE 2004 U.S. DIST. LEXIS 5461

HERRINGTON, et al., Plaintiffs, v. HOUSEHOLD INT'L, INC., et al., Defendants.

No. 02 C 8257

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

2004 U.S. Dist. LEXIS 5461

March 30, 2004, Decided
March 31, 2004, Docketed

**DISPOSITION:** [*1] Motion to dismiss granted in part and denied in part.

**COUNSEL:** For ARTHUR RAY HERRINGTON, JR., on Behalf of Himself and a Class of Persons Similarly Situated, and on Behalf of the Household International Tax Reduction Investment Plan, plaintiff: Edwin J Mills, Stull, Stull & Brody, New York, NY. Robert D. Allison, Robert D. Allison & Associates, Chicago, IL.

For HOUSEHOLD INTERNATIONAL INC., DAVID A SCHOENHOLZ, W F ALDINGER, defendants: Robert Y. Sperling, Ronald Steven Betman, Catherine W. Joyce, Michael P. Roche, Winston & Strawn LLP, Chicago, IL. Nathan P. Eimer, Adam B. Deutsch, Eimer Stahl Klevorn & Solberg, LLP, Chicago, IL.

For ROBERT J DARNALL, GARY G DILLON, ANTHEA DISNEY, JOHN A EDWARDSON, J DUDLEY FISHBURN, CYRUS F FREIDHEIM, JR, JAMES H GILLIAM, JR, LOUIS E LEVY, GEORGE A LORCH, JOHN D NICHOLS, JAMES B PITBLADO, LARREE M RENDA, S JAY STEWART, STEVEN L MCDONALD, MARY E BILBREY, MICHAEL A DELUCA, defendants: Robert Y. Sperling, Ronald Steven Betman, Catherine W. Joyce, Michael P. Roche, Winston & Strawn LLP, Chicago, IL.

**JUDGES:** Samuel Der-Yeghiayan, United States District Judge.

**OPINIONBY:** Samuel Der-Yeghiayan

**OPINION:**

MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This [*2] matter is before the court on Defendants' Motion to Dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion was filed by Defendants Household International ("Household"), the Administrative and Investment Committee of the Plan and its members Edgar A. Ancona, Mary E. Bilbrey, Michael Carlson, Colin P. Kelly and David A. Schoenholz and William F. Aldinger ("Aldinger"), the Chief Executive Officer and Chairman of Household. For the reasons stated below, the motion is granted in part and denied in part.

BACKGROUND

Plaintiffs Michael Cokenour ("Cokenour") and Arthur Ray Herrington, Jr. ("Herrington") were employees of Defendant Household and participants in the Household Tax Reduction Investment Plan ("Plan"), a tax-qualified 401(k) plan. This action is brought by Plaintiffs on behalf of "all participants in the Plan and their beneficiaries, excluding the Defendants, for whose accounts the fiduciaries of the Plan made or maintained investments in Household stock through the Household Stock Fund between July 23, 2001 and the present."

Defendant Household is a holding company with three heads: (1) consumer, which [*3] includes consumer lending, mortgage services, retail services and auto finance businesses; (2) credit card, which includes domestic Visa and MasterCard businesses; and (3) international, which includes operations in the United Kingdom and Canada. Household is the sponsor of the Plan at issue. Next, the complaint names as defendants, the Administrative and Investment Committee of the Plan ("Committee") and its members Edgar A. Ancona, Mary E. Bilbrey, Michael Carlson, Colin P. Kelly and David A. Schoenholz (collectively, the "Committee Defendants") and Aldinger, the Chief Executive Officer and Chairman of Household.

Case 1:04-cv-11380-WGY    Document 60-4    Filed 01/24/2006    Page 2 of 16

Page 2
2004 U.S. Dist. LEXIS 5461, *

The Plan is an "employee pension benefit plan" within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA") § 3(2)(A), 29 U.S.C. § 1002(2)(A), an "eligible individual account plan," within the meaning of ERISA § 407(d)(3), 29 U.S.C. 1107(d)(3), and a "qualified cash or deferred arrangement" within the meaning of the Internal Revenue Code ("I.R.C.") § 401(k), 26 U.S.C. § 401(k). The Plan is maintained to "enable eligible employees of the Company to acquire [*4] Company Stock and to accumulate funds for their future security by electing to make income deferral contributions and by sharing in Company contributions to the Plan." Plan art. 1.2. "The Plan also constitutes an employee stock ownership plan that is designed to invest primarily in Company Stock and that is intended to meet the applicable requirements of Sections 401(a), 409, and 4975(e)(7) of the [Internal Revenue] Code and Section 407(d)(6) of ERISA." *Id.*

With the Plan in place, eligible Household employees are allowed to contribute to the Plan through deductions from their paychecks. The participating employees may direct the investment of their contributions to one or more of several available Plan funds. These investment options are mostly diversified mutual funds, but participating employees who desire to invest in Company Stock may do so through an investment option designed for that purpose, the Household International, Inc. Common Stock Fund (the "Household Stock Fund"). The Plan requires Household to match the participating employee's contributions at specified percentages by making contributions to the participating employees' accounts in the [*5] Household Stock Fund. These matching contributions can be made either in Household common stock or cash. Plan art. 11.1. The matching contributions are primarily invested in Household Stock, "except for the short term investment of cash." Trust Agreement, art. 9.

In October 2002, Household paid $484 million to settle widespread charges of suspect lending practices. This settlement, described as "the largest consumer settlement in history," resulted in a $525 million charge to Household's earnings. As a result, Household allegedly engaged in improper accounting practices and restated its earnings for at least an eight year period, spanning 1994-2002. The complaint further alleges that this caused an overstatement of pre-tax income by approximately $610 million in defendant Household's favor. On March 18, 2003, things worsened for Household as they consented to an S.E.C. issued Order Instituting Cease and Desist Proceedings, Making Findings and Imposing Cease-and-Desist Order pursuant to Section 21C of the Securities Exchange Act of 1934, relating to Household's account re-aging practices and disclosures. This Order found, in relevant part, that Household restructured a far higher [*6] volume of delinquent loans than its peer lenders, and implemented a policy of automatically restructuring delinquent loans, often without contacting the borrower. The Order thus held that Household failed to accurately disclose its restructuring policies, and the disclosures made were nevertheless materially misleading.

While defendant Household was engaged in this questionable behavior, the fiduciaries of the Plan continued to offer the Household Stock Fund as a 401(k) retirement investment to participating employees. These Plan fiduciaries never withdrew the Household Stock Fund as an option, nor did they choose to make the Household matching contributions in cash rather than Stock, nor did they provide the participating employees with the truth concerning the artificially inflated value of defendant Household Stock and the risks associated with continuing to have more than 60% of the Plan's assets invested in said Stock. As a result of these acts or omissions by the Plan fiduciaries, the Plan, with thousands of participating employees, experienced a loss in the hundreds of millions of dollars once defendant's Household's questionable practices were exposed.

The Plaintiffs filed [*7] a four count class action complaint against the above-named defendants. Count I alleges the Committee Defendants failed to prudently manage the Plan assets by continuing to offer Household Stock as a retirement investment when they knew it was imprudent. Count II alleges the Committee Defendants failed to provide complete and accurate information to Plan participants concerning their retirement investment in Household Stock. Count III alleges that Household and defendant C.E.O. Aldinger failed to properly monitor the Committee Defendants, including by failing to provide them with crucial information regarding the value of Household Stock. Count IV alleges that Household breached its duty to manage Plan assets by continuing to provide the Household matching contributions in Household Stock rather than cash. Defendants responded to each of the four counts by filing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

LEGAL STANDARD

In ruling on a motion to dismiss, the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, [*8] and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). The allegations of a complaint should not be dismissed for a failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). Nonetheless, in

order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High School,* 144 F.3d 448, 454-55 (7th Cir. 1998); *Lucien v. Preiner,* 967 F.2d 1166, 1168 (7th Cir. 1992). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carver,* 286 F.3d 437, 439 (7th Cir. 2002); *Kyle,* 144 F.3d at 455. However, any conclusions pled must "provide the defendant with at least minimal notice of the claim," *Id.,* and the plaintiff cannot satisfy federal [*9] pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claim." *Perkins,* 939 F.2d at 466-67.

## DISCUSSION

### I. Fiduciary Duty

Defendants first argue that none of the Defendants are fiduciaries and thus they cannot have breached a fiduciary duty. Plaintiffs correctly point out that every ERISA plan requires a named fiduciary and that even persons not named as fiduciaries can be considered functional fiduciaries. 29 U.S.C. § 1102(a)(1) & (2); 29 U.S.C. § 1002(21)(A). Also, the definition of fiduciary under ERISA shows that this issue is not as clear cut an issue as Defendants would have this court believe. Section 3(21) of ERISA states the following:

> Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, [*10] with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C § 1002. Plaintiffs allege that the Committee Defendants were named fiduciaries and were responsible for monitoring the investments of the Plan and Plaintiffs have made other allegations of involvement with the Plan in a position of trust. We agree with Plaintiffs that the allegations do not conclusively show that the Defendants were not fiduciaries with respect to the monitoring of the investments and providing a company match. Defendants' arguments in this regard are premature at this juncture. *See Pappas v. Buck Consultants, Inc.,* 923 F.2d 531, 538 (7th Cir. 1991)(indicating that the determination of whether an individual is a fiduciary involves "factual determinations.").

### II. Imprudent Investment of Plan Assets (Count I)

In Count I of the complaint Plaintiffs allege that the Committee Defendants failed to prudently [*11] manage the Plan assets by their continuous offer of Household Stock as a retirement investment and continuing to invest matching contributions in Household Stock, notwithstanding that they knew or should have known such investment was imprudent.

#### A. Whether Plaintiffs State a Claim

Defendants take issue with the conclusory nature of Plaintiffs' allegations in Count I. Pursuant to Federal Rule of Civil Procedure 8(a) a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The notice pleading standard is admittedly liberal, requiring only that notice of the claim be given rather than detailed facts underlying the claim. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168, 122 L.Ed. 2d 517, 113 S.Ct. 1160 (1993).

Plaintiffs allege that the Committee Defendants "knew or should have known" that investing in Household Stock was imprudent. (Comp. 53). Plaintiffs also allege that the Committee defendants were "key" Household employees or officers, appointed by Household's CEO, who exercised their Plan-related behavior in the course and scope of their [*12] employment with Household. (Comp. 38, 41, 42, 47) Defendants contend that the allegations are too vague and do not provide them with notice of the claim against them. Defendants indicate that Plaintiffs were required to explain how the alleged key employees knew that the investments were imprudent and when they acquired the knowledge. Defendants also argue that Plaintiffs were required to explain in more detail the alleged improper conduct of the key employees. We disagree. While a more detailed complaint would have been beneficial for Defendants' understanding of the charges against them and for the court to understand the charges alleged by Plaintiffs, Plaintiffs have met the liberal pleading requirements under the notice pleading standard. Plaintiffs are not required to allege all of the facts for their claim or allege facts to support each element of their claim. *Higgs,* 286 F.3d at 439; *Kyle,* 144 F.3d at 455; *see also Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.* 40 F.3d 247, 251 (7th Cir. 1994)(indicating that under current

Case 1:04-cv-11380-WGY    Document 60-4    Filed 01/24/2006    Page 4 of 16

Page 4
2004 U.S. Dist. LEXIS 5461, *

notice pleading standard in federal courts a plaintiff "need to plead facts that, if true, [*13] establish each element of a 'cause of action,'" that "at this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint," and that "matching facts against legal elements comes later").

Plaintiffs have indicated that the managing employees in question were key employees and that they managed to acquire the knowledge that Household was guilty of predatory lending practices and misstatements. Plaintiffs contend that because the Committee members knew of the practices that the investments made were imprudent. This is sufficient to state a claim. Defendants' assertions that Plaintiffs have not explained exactly what each Defendant did wrong, how they acquired the information, and how they improperly used the information are premature at this juncture. Defendants improperly seek to require the same type of detail in regards to Count I required under Federal Rule of Civil Procedure 9(b) for fraud claims. *See Uni\* Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992)(explaining that the Rule 9(b) particularity requirement requires a plaintiff to plead the "'who, [*14] what, when, and where' of the alleged fraud."). Plaintiffs' allegations are sufficient to withstand a motion to dismiss under the notice pleading standard.

B. Discretion of Committee to Alter Investments

Defendants also claim that Count I cannot state a claim because even if the alleged key employees were aware of the Household practices, the Committee members had no discretion under the Plan to choose not to invest in Household stock. Defendants' argument in this regard is unconvincing. No section in ERISA would be read to require fiduciaries to make investments for a plan if the fiduciary has information that shows that the investment is a poor one. Plaintiffs correctly point out that ERISA states explicitly that fiduciaries are required to act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter." 29 U.S.C.A § 1104(a)(1)(D).
A fiduciary is required to discharge his or her duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity [*15] and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. " 29 U.S.C.A. § 1104(a)(1)(B) Thus the Committee Defendants cannot hide behind the provisions of the Plan. *See Central States. Southeast and Southwest Areas Pension Fund v. Central Transport, Inc*, 472 U.S. 559, 568, 86 L. Ed 2d 447, 105 S. Ct. 2833 (1985)(stating that "trust documents cannot excuse trustees from their duties under ERISA and that trust documents must generally be construed in light of ERISA's policies").

C. Failure to Take Illegal Actions

Defendants also assert that Count I fails to state a claim because even if the Committee Defendants knew of the alleged unlawful practices by Household, Defendant Committee Defendants were prohibited under federal securities law from trading based upon non-public information. Plaintiffs argue that at a minimum the Committee Defendants could have notified the appropriate regulatory agencies of the misstatements by Household, refrained from further investment in Household stocks, or made a public announcement regarding Household's conduct. We are not convinced that such actions could [*16] be required of the Committee Defendants. Had the Committee Defendants done either of the first two alternatives it is possible that the ultimate result would be that the public would learn of or suspect the improper conduct by Household which would generally be the same result as the third alternative. It is possible that had the Committee Defendants followed the suggested conduct they would simply have accelerated the demise of the Household stock held by the fund. Their duty as fiduciaries was to prevent such losses. However, it is not conclusive from the facts before us whether or not the Committee Defendants had viable alternatives that they could have taken. At this stage of the proceedings it is not the burden of Plaintiffs to address all of the potential counter-arguments by Defendants in the complaint We find that Defendants' arguments on this issue are premature and deny the motion to dismiss Count I to the extent that it contains a claim of imprudent management of the Plan assets. *Conley*, 355 U.S. at 45-46 (stating that the allegations of a complaint should not be dismissed for a failure to state a claim "unless it appears beyond doubt that the plaintiff [*17] can prove no set of facts in support of his claim which would entitle him to relief.").

III. Breach of Duty of Loyalty (Count I)

Defendants also argue that we should dismiss the breach of loyalty claim in Count I. Plaintiffs contend that the Committee Defendants had a conflict of interest because they were both on the Committee and were employees of Household. Section 408(c)(3) of ERISA states that "nothing in section 1106 of this title shall be construed to prohibit any fiduciary from . . . serving as a fiduciary in addition to being an officer, employee, agent, or other representative of a party in interest." 29 U.S.C.A § 1108(c)(3). Defendants cite *Cuddington v Northern Indiana Public Service Co.* for the proposition that "just because the Pension Committee is dominated by [the employer's] employees does not automatically

1994). However, such an argument only encourages this court to proceed to the next steps of litigation to assess the evidence and decide if there is sufficient evidence that a conflict exists. Plaintiffs do allege that the compensation of the Committee [*18] Defendants was tied into the Household stock price and the Plan investment in the stock and thus we think that it would be premature to dismiss the breach of loyalty claim based upon a conflict of interest at this juncture.

IV. Misrepresentation Claim (Count II)

In count II, Plaintiffs allege that the Committee Defendants failed to provide complete and accurate information to Plan participants concerning their retirement investment in Household Stock.

A. Applicability of Rule 9(b)

Defendants first argue that Federal Rule of Civil Procedure 9(b) is applicable to Count II because Count II is essentially a fraud claim, or should be treated as one for purposes of this motion and that Plaintiffs have not met the pleading requirements under Rule 9(b). While the notice pleading standard is generally applied in the federal courts, "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity," Fed. R. Civ. P. 9(b), which is accomplished if the plaintiff identifies "the identity of the person making the misrepresentation, the time, place, [*19] and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992)(quoting *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990)). Rule 9(b) has been termed an exception to the otherwise liberal pleading requirements set forth in Rule 8. *Payton v. Rush-Presbyterian-St. Luke's Medical Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999). The justification for a stricter standard of pleading stems from the reality that fraud claims can cause harm to business reputations. *Id.*

At first blush, Count II contains no allegations of fraud, however a closer examination of the complaint leads us to conclude that Rule 9(b) is applicable to Count II. The core of the parties' arguments on this point stem from how they characterize the alleged misrepresentations in Count II. Defendants argue that the alleged misrepresentations at issue are allegations concerning intentional wrongdoing and in response Plaintiffs argue that at most they allege negligent conduct and therefore Rule 9(b) does not operate. Both sides cite *Adamczyk v.* [*20] *Lever Bros. Co.* in which that court held that Rule 9(b) does not apply to negligent misrepresentation claims, but does apply to claims of knowing misrepresentation. 991 F.Supp. 931, 939 (N.D. Ill. 1997).

Plaintiffs allege that the Committee Defendants made misrepresentations because their compensation was connected to Household's stock price, and the Plan's investment supported the stock. (Comp. 111, 112) We agree with Defendants that the allegations in the complaint clearly allege intentional misrepresentations and that Rule 9(b) is applicable. Plaintiffs have not met the heightened pleading requirements under Rule 9(b) and therefore we grant the motion to dismiss Count II to the extent that it alleges intentional misrepresentation.

V. Omission to Disclose Non-Public Information (Count II)

Defendants argue in support of dismissal of Count II that, apart from the misrepresentations alleged in the complaint, the plaintiffs fail to state a claim with respect to the alleged omission to disclose nonpublic information. Plaintiffs argue in response that defendants are improperly characterizing Count II and that defendants had a duty to provide information to the [*21] Plan Participants, and the defendants breached that duty.

Count II states: "Employees never received any information from the Company or any other plan fiduciary that indicated that the Company's stock was not a prudent investment." (Compl. 107, 131). Defendants argue that this allegation, which forms the basis for Plaintiffs' omissions claim, is an attempt to broaden the disclosure requirements far beyond what is required by ERISA § 404, into "a continuous gathering and disclosure of all material nonpublic information about a plan sponsors financial condition." (Def. Reply Brf. at 26). Plaintiffs, for their part, defend this allegedly sweeping disclosure duty by correctly noting a series of cases which held that fiduciaries have a duty to speak when silence would hurt a beneficiary. *See e.g. Franklin v. First Union Corp.*, 84 F. Supp. 2d 720, 735 (E.D. Va. 2000) (fiduciary had "a duty to notify the plaintiffs of the changes in the investment funds in such a manner as to prevent any misinformation to and misleading of the plaintiffs.").

The issue, in its simplest form, thus becomes to what extent plaintiffs can push ERISA § 404's duty of disclosure provisions [*22] beyond its explicit terms, given the facts alleged in this case, to state a claim with respect to the alleged omission to disclose non-public information. The United States Supreme Court has yet to address this question. *Varity Corp. v. Howe*, 516 U.S. 489, 506, 134 L. Ed. 2d 130, 116 S. Ct. 1065 (1996) ("we need not reach the question whether ERISA fiduciaries have any fiduciary duty to disclose truthful information on their own initiative, or in response to employee inquiries"). To resolve the issue, both parties have debated the applicability of a recent Fifth Circuit case dealing with the general issue at hand. *Ehlmann v. Kaiser Foundation Health*

Case 1:04-cv-11380-WGY    Document 60-4    Filed 01/24/2006    Page 6 of 16

Page 6
2004 U.S. Dist. LEXIS 5461, *

The Seventh Circuit has not allowed claims for fiduciary breach based on passive behavior, "unless a fiduciary fails to give a beneficiary material information regarding a plan and the fiduciary's silence is misleading." *Chojnacki v. Georgia-Pacific Corp.*, 108 F.3d 810, 817 (7th Cir. 1997). It is apparent from the face of the complaint that the allegations regarding the omission to disclose nonpublic information encompasses such "passive behavior."

All of the [*23] cases cited by Plaintiffs involved a specific alleged failure to disclose a concrete piece of information, and how that specific failure as to that specific piece of information states a cause of action in light of *Varity Corp*. See, e.g., *McDonald v. Provident Indemnity Life Ins. Co.*, 60 F.3d 234 (5th Cir. 1995) (failure to disclose a new rate schedule); *Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec. Inc.*, 93 F.3d 1171 (3d Cir. 1996) (failure to disclose details regarding the investment advisor); *Bins v Exxon Co. U.S.A.*, 189 F.3d 929 (failure to disclose change in lump sum retirement incentive). These cases are distinguishable because even they do not go as far as plaintiffs are hoping to extend defendants duty to disclose information. More importantly, the *Chojnacki* decision from our Court of Appeals, would seem to restrain this extension of this breach of fiduciary duty based upon "passive behavior." See *Chojnacki*, 108 F.3d at 817.

The disclosure standard urged by Plaintiffs in this case is too broad as it would require defendants to continuously gather and disclose nonpublic information bearing [*24] some relation to the plan sponsor's financial condition. Such a burdensome and unprecedented level of disclosure has not been approved by the Seventh Circuit and for this court to permit such would be to extending the statutory language beyond their plain meaning. Our authority to interpret ERISA's fiduciary provisions is not absolute, but is limited by the text of the statute. In this instance, plaintiff's proposed duty is not found in the text of the statutes or the cases. We also note that as indicated above, that a public disclosure of the wrongdoing or a notification of others that might leak the information to the public would have caused the stock price to fall and the losses would result to the Plan regardless. Therefore, we grant the motion to dismiss Count II to the extent it is based on the alleged omission to disclose nonpublic information.

VI. Failure to Monitor and Provide Accurate Information (Count III)

In count III of the complaint, Plaintiffs allege that Household and Mr. Aldinger breached fiduciary duties under ERISA by failing to monitor the Committee Defendants and to provide them with information. Defendants first assert that Household had no fiduciary [*25] responsibility with respect to the alleged acts or omissions of the Committee Defendants. Secondly, defendants argue that the claim should also be dismissed as Plaintiffs fail to allege any facts showing that Mr. Aldinger or Household breached any duty they might have had to monitor the Committee Defendants. Defendants final argument in support of dismissal states that plaintiffs fail to state a claim against Household or Mr. Aldinger based on their alleged failure to divulge nonpublic information to the Committee Defendants.

At this stage in the opinion, we have held that at this juncture the claims remain against the Committee Defendants except for the claim based on the alleged failure to disclose non-public information and the intentional misrepresentation claim. Defendants acknowledge that Aldinger had the authority under the plan to appoint and remove Committee members. Defendants argue that Aldinger and Household properly monitored the Committee Defendants and argue that the facts alleged do not show that Aldinger and Household failed to act in a reasonable manner. Such an argument includes a factual determination and is premature at this juncture.

Defendants also argue that [*26] Aldinger and Household were not fiduciaries. However, the fact that individuals authorized to monitor administrators of a retirement plan and had "only limited fiduciary responsibilities does not mean that they had no responsibilities whatever." *Leigh v. Engle*, 727 F.2d 113, 135 (7th Cir. 1984). The individuals charged with such monitoring are "fiduciaries responsible for selecting and retaining their close business associates as plan administrators . . . [and cannot] abdicate their duties under ERISA merely through the device of giving their lieutenants primary responsibility for the day to day management of the trust." At the very least a finding that neither Aldinger or Household were fiduciaries is premature at this stage. Therefore, we deny the motion to dismiss Count III to the extent that it alleges a claim based upon Aldinger's and Household's fiduciary duty to monitor the Committee Defendants.

Plaintiffs also allege in Count III that Aldinger and Household failed to disclose non-public information to the Committee Defendants. For the reasons stated above in regards to the similar issue in Count II we grant the motion to dismiss. We also note that Plaintiffs [*27] have not shown that ERISA or the plan placed any such duty on the shoulders of Aldinger or Household.

VII. Breach of Duty to Manage Plan Assets- Matching Contributions (Count IV)

Count IV alleges that Household breached its duty to manage Plan assets by continuing to provide the Household matching contributions in Household Stock rather

Case 1:04-cv-11380-WGY    Document 60-4    Filed 01/24/2006    Page 7 of 16

Page 7
2004 U.S. Dist. LEXIS 5461, *

than cash. Defendants argue that this claim should be dismissed because Household had no discretion to depart from making the match in Company Stock, and that in the absence of such discretion no fiduciary duty could be breached.

As indicated above, a plan fiduciary is not required to follow the plan requirements if the result would be detrimental to the plan. 29 U.S.C.A. § 1104(a)(1)(D); 29 U.S.C.A. § 1104(a)(1)(B). Thus, neither Household nor the Committee Defendants can hide behind the provisions of the Plan.

Plaintiffs assert that Household breached its duty of prudence to Plan participants by continuing to make matching contributions in Household stock. In accordance with our conclusions above, we are not certain that this would be a viable alternative for Household to avoid loss to the [*28] Plan. Such actions could have created suspicion and caused the stock price to fall. However, such a determination is premature at this juncture. Defendants argue that even if Household gave matching cash contributions from Household, the Plan required the Committee Defendants to use the cash contributions to purchase Household stock. However, as indicated above once the Committee Defendants had the cash contributions from Household, they were not necessarily obligated to follow the Plan guidelines if such actions would be detrimental to the Plan. Therefore we deny the motion to dismiss Count IV to the extent that it alleges a breach of a duty of prudence against Household in regards to matching contributions with Household stock.

VIII. Co-Fiduciary Liability (Count I)

Defendants argue that we should dismiss Count I to the extent that it alleges a claim of co-fiduciary liability. Section 1105 of ERISA provides:

> In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: [*29] (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or **(3)** if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C.A. § 1105(a). Plaintiffs allege that the Committee Defendants breached their fiduciary duty by "knowingly undertaking to conceal Household's failure to prudently and loyally manage Plan assets . . . ." (Comp. 122). We find that this conclusory allegation does not even meet the liberal requirements under the notice pleading standard. There are not sufficient facts to provide Defendants with notice of the operative facts which would pertain to a co-fiduciary liability claim. The allegations that all of the Defendants knew of the improper conduct of Household and the Defendants individually acted improperly [*30] does not show that co-fiduciary liability is appropriate. Therefore, we grant Defendants' motion to dismiss the claim based upon co-fiduciary liability.

**CONCLUSION**

Based on the foregoing analysis, we deny the Defendants' motion to dismiss the claim for failure to prudently manage Plan assets in Count I. We deny the Defendants' motion to dismiss the breach of loyalty claim in Count I. We grant the Defendants' motion to dismiss the misrepresentation claim in Count II. We grant the Defendants' motion to dismiss the claim for the alleged omission to disclose non-public information in Count II. We deny the Defendants' motion to dismiss the breach of duty to monitor claim in Count III. We grant the Defendants' motion to dismiss the claim in Count III based upon Aldinger's and Household's failure to disclose non-public information. We deny the Defendants' motion to dismiss the breach of duty to manage the Plan claim regarding matching contributions in Count IV. We also grant the Defendants' motion to dismiss the co-fiduciary liability claim in Count I.

Samuel Der-Yeghiayan

United States District Court Judge

Dated: March 30, 2004

LEXSEE 2004 U.S. DIST. LEXIS 3241

IN RE SEARS, ROEBUCK & CO. ERISA LITIGATION.

No. 02 C 8324

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

2004 U.S. Dist. LEXIS 3241; 32 Employee Benefits Cas. (BNA) 1699

March 2, 2004, Decided
March 3, 2004, Docketed

**DISPOSITION:** [*1] Defendants' Motion to Dismiss denied in part and granted in part. Count V of Plaintiffs' Complaint dismissed.

**COUNSEL:** For BILL KEHR, on behalf of himself and all others similarly situated, plaintiff: Marvin Alan Miller, Jennifer Winter Sprengel, Christopher B Sanchez, Miller Faucher and Cafferty, LLP, Chicago, IL. Steven E Cauley, Curtis L Bowman, J Allen Carney, Tiffany Wyatt, Melissa Beard Glover, Cauley Geller Bowman and Coates, LLP, Little Rock, AK.

For SEARS ROEBUCK & CO, ALAN LACY, PAUL J LISKA, GLENN RICHTER, THOMAS E BERGMANN, defendants: Harold C. Hirshman, Christopher Qualley King, John Claiborne Koski, Elissa Eun Choo Rhee-Lee, Sonnenschein, Nath & Rosenthal, LLP, Chicago, IL. Jeffrey C Fourmaux, Samuel M Bayard, Wachtell, Lipton, Rosen & Katz, New York, HY.

For GREG A LEE, HALL ADAMS, JR, BRENDA BARNES, JAMES R CANTALUPO, DONALD J CARTY, W JAMES FARELL, MICHAEL A MILES, HUGH B PRICE, DOROTHY A TERRELL, RAUL YZAGUIRRE, defendants: Jeffrey C Fourmaux, Samuel M Bayard, Wachtell, Lipton, Rosen & Katz, New York, HY.

**JUDGES:** JOHN W. DARRAH, United States District Judge.

**OPINIONBY:** JOHN W DARRAH

**OPINION:**

MEMORANDUM OPINION AND ORDER

Plaintiffs, participants in a Sears Employee Retirement Income Security Act of 1974 ("ERISA") plan, sued Defendants, Sears, Roebuck & Co., Alan Lacy, Paul Liska, Thomas Bergmann, Greg Lee, and Glen Richter, the Sears Board of Directors, unnamed members of the ERISA plan Investment Committee, and the Investment Committee, for violations of ERISA. Now before the Court is Defendants' Motion to Dismiss Plaintiffs' Amended Complaint. For the following reasons, that motion is granted in part and denied in part.

**LEGAL STANDARD**

In reviewing a motion to dismiss, the court reviews all facts alleged in the complaint and any reasonable inferences drawn therefrom in the light most favorable to the plaintiff. See *Marshall-Mosby v. Corporate Receivables, Inc.* 205 F.3d 323, 326 (7th Cir. 2000). A plaintiff is not required to plead the facts or elements of a claim, with the exceptions found in Federal Rule of Civil Procedure 9. See *Swierkiewicz v. Sorema*, 534 U.S. 506, 511, 152 L. Ed. 2d 1, 122 S. Ct. 992 (2002); *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002). Dismissal is warranted only if "it appears beyond a doubt that the plaintiff can prove no [*3] set of facts in support of his claim which would entitle him to relief." *Conley v Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). The "suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim." *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

Generally, matters outside the pleadings cannot be considered on a motion to dismiss. See, e g.,*R J Corman Derailment Servs. LLC v. Int'l Union, Local Union 150*, 335 F.3d 643, 647 (7th Cir. 2003). However, documents that a defendant attaches to a motion to dismiss may be considered if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Albany Bank & Trust Co v. Exxon Mobil Corp*, 310 F.3d 969, 971 (7th Cir. 2002).

Case 1:04-cv-11380-WGY    Document 60-4    Filed 01/24/2006    Page 9 of 16

Page 2
2004 U.S. Dist. LEXIS 3241, *; 32 Employee Benefits Cas. (BNA) 1699

The facts, for the purposes of this motion, are taken as true from Plaintiffs' Complaint. Plaintiffs, Bill Kehr, Michael G. Cheperka, Kenneth Hawkins, and Margaret Villano, are participants in a 401(k) Savings Plan (the "Plan"). Defendant Sears, Roebuck, and Co. ("Sears") sponsored and administered [*4] the Plan. Another Defendant, the Investment Committee, had the authority to choose the type of investment options, a particular investment style, and make other investment decisions with respect to the Plan. Defendant Alan Lacy was, at all relevant times, the Chief Executive Officer, President, and Chairman of the Board at Sears. The Investment Committee distributed Summary Plan Descriptions and Plan prospectuses to all Plan participants, pursuant to relevant federal statutes.

Defendants -- Paul Liska, Thomas Bergmann, Greg Lee, and Glen Richter -- who, at all relevant times, were high-ranking Sears executive officers, were members of the Investment Committee, along with thirty unnamed fiduciary Defendants (collectively the "Committee Defendants"). The named members of the Investment Committee had substantial knowledge of Sears' business plans, operations, finances, and access to internal company reports and memoranda. These Defendants were also familiar with Sears' accounting and financial practices.

Defendants -- Hall Adams, Jr., Brenda Barnes, James Cantalupo, Donald Carty, W. James Farrell, Michael Miles, Hugh Price, Dorthy Terell, and Raul Yzaguire -- were, at all relevant times, [*5] members of the Sears Board of Directors (collectively the "Director Defendants"). The Sears Board of Directors is the primary personification through which Sears effectuated its Plan-related duties.

*Specific Plan Provisions*

The Plan allows eligible employees to contribute to the Plan through payroll deductions. Participants may then direct their investment into one or more of several funds available under the Plan. One of the available funds is the Company Stock Fund.

The Plan designates Sears as a named fiduciary, but only for the non-investment operations of the Plan. The Plan delegates responsibility for investment decisions to the Investment Committee, including those related to the Sears Stock fund. The Board of Directors is given the authority to appoint members to the Investment Committee. § 1.3.

The Plan also requires that a Company Stock Fund must exist, which is "designed to invest exclusively in [Sears] Company Stock." Plan § 6.8. Sears is required to offer the Company Stock Fund as one of the investment funds offered under the Plan. Plan § 6.1. Employer matching contributions made in cash must be invested in the Company Stock Fund, and Employer contributions [*6] made in Company Stock are held under the Company Stock Fund.

The Employer contributions in the Company Stock Fund cannot be transferred to any other investment except by the participating employee. Plan § 6.3. However, to the extent that the Plan requires matching participant contributions, a certain portion of each Investment Fund, including the Company Stock Fund, may be held in cash or cash equivalents, as considered appropriate by the Investment Committee. Plan § 6.5.

*Sears' Financial Statements*

In financial reports filed with the Securities and Exchange Commission ("SEC"), Sears misrepresented its true financial health and profitability. Specifically, in Sears' 2001 annual report, Sears stated on SEC Form 10-K that its provisions for uncollectible accounts were calculated to be $ 1.344 billion in 2001. Sears also represented that it maintained an adequate allowance for its uncollectible accounts to reflect losses inherent in the owned portfolio. Sears also filed numerous press reports stating that the company was extremely profitable, revenue was up, and earnings were expected to increase.

On May 7, 2002, Sears then filed its first quarter financial report on SEC Form [*7] 10-Q. The report indicated that the provisions for uncollectible accounts increased from $ 190 million to $ 371 million in the first quarter. This change was the result of additional credit card receivable balances recorded when Sears consolidated its securitization structure for financial reporting purposes in the second quarter of 2001. Once again, press reports issued by Sears projected substantial growth. Based on all this information, and in spite of a general economic downturn throughout the country, Sears stock reached $ 59.90 per share in the early summer of 2002.

On August 9, 2002, Sears filed another quarterly Form 10-Q report with the SEC. This report stated that Sears was making a conservative accounting change in determining its uncollectible account allowances. In October of 2002, Sears began to issue a series of reports stating that the financial reports as originally reported for the first and second quarters of 2002 were incorrect. Sears explained that it was amending its previous reports, under interpretive guidance from the SEC. The provision for uncollectible accounts were misstated and were required to be significantly increased, while net operating income was [*8] significantly reduced. Thereafter, Sears filed public statements attesting to similar facts.

Sears also reported similar problems with its credit card division. On October 4, 2002 Sears issued a press

Case 1:04-cv-11380-WGY   Document 60-4   Filed 01/24/2006   Page 10 of 16

Page 3
2004 U.S. Dist. LEXIS 3241, *; 32 Employee Benefits Cas. (BNA) 1699

release stating that Defendant Liska would take over the credit card division. On October 7, 2002, Sears unexpectedly warned that its third quarter earnings would fall below expectations because of a profit slowdown in its credit card division. This forecast was true, and Sears' earnings went down significantly in the third quarter of 2002. In reaction to all of Sears' announcements, Sears stock price dropped significantly. On October 17, 2002, Sears stock dropped from $ 33.95 a share to $ 23.15 a share, on trading of 36 million shares.

Just before the Class Period began, on January 17, 2002, Sears had over $ 1.1 billion of assets, representing one-third of all Plan assets, in the Company Stock Fund. When the stock price dropped, Plaintiffs suffered losses resulting from their own investments in the Company Stock and matching investments made by Sears.

## ANALYSIS

### Plan Investment in Sears Stock Claims

Defendants first argue that Plaintiffs' claims against Sears and the [*9] Committee Defendants based on Plan investments in Sears Stock (Counts I, II, and VI) fail to state a claim. According to Defendants, the Amended Complaint fails to establish that Sears was a fiduciary with respect to investment decisions; and the actions claimed to be in breach of the fiduciary duty were expressly permitted by ERISA and required by the Plan. The Defendants also claim that even if the Committee Defendants had some discretion to override the terms of the Plan, the Complaint fails to establish the Committee Defendants abused their discretion in following Plan terms. Finally, the Defendants argue that Plaintiffs failed to state a claim for a breach of the duty of loyalty.

Sears as a Fiduciary

A claim for a breach of a fiduciary duty under ERISA is only valid against a fiduciary. *Plumb v. Fluid Pump Serv., Inc.*, 124 F.3d 849, 854 (7th Cir. 1997) (*Plumb*). Under ERISA,

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment [*10] advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of the plan.

29 U.S.C. § 1002(21)(A). Under this definition, an entity "may be an ERISA fiduciary for some purposes, but not others." The first place courts look to determine whether a defendant is a fiduciary is the plan documents. *Plumb*, 124 F.3d at 854.

The Sears Plan designates Sears as a named fiduciary for the non-investment operations of the Plan. In addition, while Plan § 1.3 delegates responsibility for Plan investment decisions to the Investment Committee, including those related to the Sears Stock Fund, numerous places in the Plan place an "overarching fiduciary duty" on Sears in discharging "its duties," in accordance with Plan § 13.6. Plaintiffs also allege in their Amended Complaint that Sears, as the Plan administrator, was a fiduciary. Thus, the determination of whether Sears was a fiduciary with respect to investment decisions is a question of fact that [*11] is not properly resolved by a motion to dismiss. Accordingly, to the extent Defendants seek to dismiss Sears as a fiduciary with respect to investment decisions, in Counts I, II, and VI, that motion is denied.

Discretion to Override the Plan

Generally, an Employee Stock Ownership Plan ("ESOP") is an ERISA plan "designed primarily to invest in qualifying employer securities," such as shares of stock in the company sponsoring the plan. 29 U.S.C. § 1107(d)(6)(A). ESOPs are generally exempt from the general duty to diversify plan assets and the duty of prudence insofar as it requires diversification. 29 U.S.C. § 1104(a)(2). Despite this statute, "there may come a time when such investments [in ESOPs] may no longer serve the purpose of the" ERISA plan. *Moench v. Robertson* 62 F.3d 553, 571 (3d Cir. 1995) (*Moench*).

Any inquiry into the investments of an ESOP fiduciary is limited. "An ESOP fiduciary who invests the assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision. However, the plaintiff may overcome that presumption by establishing that the fiduciary [*12] abused its discretion by investing in employer securities." *Moench*, 62 F.3d at 571. Some amount of discretion by the entity controlling the plan is required to invoke a fiduciary duty. *Pohl v. Nat'l Benefits Consultants Inc.*, 956 F.2d 126, 129 (7th Cir. 1992).

Here, the Plan set up a Company Stock Fund, which was "designed to invest exclusively in Company Stock." Plan § 6.8. Sears is required to offer the Company Stock Fund as one of the investment funds offered under the

Case 1:04-cv-11380-WGY   Document 60-4   Filed 01/24/2006   Page 11 of 16

Page 4
2004 U.S. Dist. LEXIS 3241, *; 32 Employee Benefits Cas. (BNA) 1699

in cash are then required to be invested in the Company Stock Fund, and Employer contributions made in Company Stock are held under the Company Stock Fund. The Employer contributions in the Company Stock Fund cannot be transferred to any other investment except by the participating employee. Plan § 6.3.

However, to the extent the Plan requires matching participant contributions, a certain portion of each Investment Fund, including the Company Stock Fund, may be held in cash or cash equivalents, as considered appropriate by the Investment Committee. Plan § 6.5. Moreover, 29 U.S.C. § 1104(a)(1)(D) [*13] only required the Investment Committee to follow the Plan "insofar as such documents and instruments were consistent with the provisions of" ERISA. Plaintiffs allege that "blindly following" the Plan provisions requiring matching contributions to be made in Sears stock would be imprudent, in violation of ERISA fiduciary duties, when the Investment Committee knew or should have known the price of the stock was fraudulently inflated. Accordingly, Plaintiffs have stated a claim against the Investment Committee for causing the Plan to continue to acquire and invest in Company matching contributions of Sears stock.

Plaintiffs have also stated a claim for their remaining investment plan allegations. Plaintiffs have alleged that the Investment Committee knew or should have known the true financial condition of the Sears credit business and that Sears misrepresented this condition. In contrast to Defendants' authority of *Crowley v. Corning, Inc.*, 234 F. Supp. 2d 222, 230 (W.D.N.Y. 2002), Plaintiffs have not simply rested on this allegation. Instead, Plaintiffs' Complaint alleges that some of the members of the Investment Committee were senior executives with substantial knowledge [*14] of the business plans, operations, and finances of Sears. These executives were in a position to know that Sears stock was not a prudent investment because it was inflated through Sears' inaccurate accounting practices. The Investment Committee thereafter kept this knowledge secret and knowingly disseminated material that was inaccurate and misleading to Plan participants.

Defendants also rely on *Hull v. Policy Mgmt. Sys. Corp.*, 2001 U.S. Dist. LEXIS 22343, No. 3:00-778-17, at *25-27 (D.S.C. Feb. 9, 2001), for the proposition that an investment committee cannot be forced to acquire inside information, in violation of federal securities laws, to determine if the stock was irregularly inflated. However, the *Hull* plaintiffs did not allege that the investment committee had actual knowledge of any misinformation. On the contrary, here, the Plaintiffs have specifically alleged that the Investment Committee knew or should have known that investing in Sears stock was imprudent. Under these circumstances, courts have found that defendants cannot escape potential liability on ERISA

breach of duty claims because of any duties they may have under securities laws." *Rankin v. Rots*, 278 F. Supp. 2d 853, 878 (E.D. Mich. 2003) [*15] (*"Rankin"*); see also *In re WorldCom, Inc.*, 263 F. Supp. 2d 745, 765 (S.D.N.Y. 2003) (*"In re WorldCom"*) ("When a corporate insider puts on his ERISA hat, he is not assumed to have forgotten adverse information he may have acquired while acting in his corporate capacity.").

Duty of Loyalty

Plaintiffs have also sufficiently stated a cause of action for breach of the fiduciary duty of loyalty under ERISA. ERISA specifically provides that a sponsor of an employee benefit plan may appoint its own officers to administer the plan. 29 U.S.C. § 1108(c)(3). However, Plaintiffs have alleged that the officers who were appointed to the Investment Committee could not be loyal to Plan participants because the officers' compensation was significantly tied to the price of Sears stock. Therefore, the officers had an incentive to heavily invest the Plan's funds in Sears stock instead of properly informing Plan participants of material negative information concerning the irregularities. Defendants fail to present any authority that these allegations are insufficient to withstand a motion to dismiss.

Concealment Claims

Defendants also argue that [*16] the concealment allegations in Count I should be dismissed because those claims have not been pled with particularity, in accordance with Federal Rule of Civil Procedure 9(b), and that any concealment was not made in a fiduciary capacity. Additionally, Defendants state that Plaintiffs' claims alleging that Defendants failed to disclose non-public information fails to state a claim.

Rule 9(b) applies to ERISA claims that allege misrepresentations. *Cook v. Exelon Corp.*, 2002 U.S. Dist. LEXIS 18125, at *13 (N.D. Ill. Sept. 26, 2002); *Adamczyk v. Lever Bros. Co.*, 991 F. Supp. 931, 939 (N.D. Ill. 1997). To satisfy Rule 9(b), Plaintiffs must allege "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merchant Servs.*, 20 F.3d 771, 777 (7th Cir. 1994).

Plaintiffs' allegations meet these requirements. According to the Complaint, the Investment Committee and its members were making the misrepresentations. The misrepresentations then occurred [*17] in public financial statements filed with the SEC during the class period, with key misrepresentations being made during the first and second quarters of 2002. The alleged misrepresentations stated that Sears' credit card uncollectible ac-

Case 1:04-cv-11380-WGY   Document 60-4   Filed 01/24/2006   Page 12 of 16

Page 5
2004 U.S. Dist. LEXIS 3241, *; 32 Employee Benefits Cas. (BNA) 1699

counts method adequately allowed for losses. Finally, the misrepresentations were communicated to Plaintiffs in financial disclosure statements and prospectuses given to Plan participants.

Defendants also contend that any statement made in SEC filings cannot be said to have been made in a fiduciary capacity. However, whether the Investment Committee, based on their status as Sears officers, knew or should have known of the SEC misrepresentations published by Defendants is a question of fact. *See In re WorldCom, Inc.*, 263 F. Supp. 2d at 765 ("When a corporate insider puts on his ERISA hat, he is not assumed to have forgotten adverse information he may have acquired while acting in his corporate capacity.").

### Failure to Disclose Claims

Defendants argue that absent a specific ERISA requirement mandating a duty to disclose pertinent information, the fiduciary duty provisions of ERISA do not require a plan sponsor to disclose non-public [*18] information. *See Ehlmann v. Kaiser Found. Health Plan*, 198 F.3d 552, 555-56 (5th Cir. 2000). However, Plaintiffs do not simply allege that Defendants failed to disclose non-public information. Instead, Plaintiffs claim that Defendants kept material information secret, while knowingly conveying misleading information that both incorrectly stated the proper accounting of key accounts, such as account receivables, and misstated financial statements. Federal securities laws require that this information must be disseminated to plan participants, and; as mentioned earlier, Defendants may be subject to ERISA liability if they knowingly fail to disclose adverse information. *See In re WorldCom*, 263 F. Supp. 2d at 767, n 14.

Defendants, in addition to their previously discussed arguments, seek to dismiss Count VI, Plaintiffs' failure to diversify claim, for lack of loss causation. Specifically, Count VI seeks recovery exclusively for Sears stock held by the Plan on and after January 17, 2002.

Plaintiffs must allege a causal connection between the alleged breach and the alleged losses incurred by the Plan *See, e.g., McTigue v. City of Chicago* 60 F.3d 381, 382 (7th Cir 1995). [*19] According to Defendants, this causal connection is non-existent. If the Investment Committee, or any other Defendant, knew about the allegedly true financial condition of Sears, that information must be disclosed before the Investment Committee could act on it *See generally United States v. O'Hagan* 521 U.S. 642, 651-52, 138 L. Ed. 2d 724, 117 S. Ct. 2199 (1997). Nothing in ERISA would exempt Defendants from this requirement 29 U.S.C. § 1144(d) Therefore, if Defendants legally disclosed the information and then attempted to sell existing Plan holdings in Sears stock, the price would have dropped anyway; and the Plaintiffs would have suffered losses.

This theory, known as the "efficient capital markets hypothesis," has been embraced by both the Supreme Court and the Seventh Circuit. *Basic, Inc. v. Levinson*, 485 U.S. 224, 246-47, 99 L. Ed. 2d 194, 108 S. Ct. 978 (1988); *West v. Prudential Secs., Inc*, 282 F.3d 935, 938 (7th Cir. 2002) Plaintiffs, however, properly argue that issues of loss causation are factual matters not proper to resolve on a motion to dismiss; thus, Plaintiffs have sufficiently pled loss causation.

Furthermore, Plaintiffs [*20] also allege that publicly known macroeconomic facts were available to Defendants before the start of the class period. According to Plaintiffs, these factors, including increased competition and the general downturn of the economy, indicated there was no reason for the Plan to invest so heavily in Sears stock. Whether these macroeconomic factors existed and their effect on Sears stock are questions of fact. Therefore, Defendants' Motion to Dismiss Count VI is denied.

### *Failure to Monitor*

Defendants next argue that the Complaint fails to state a claim against Sears, Lacy, or the Director Defendants based on their alleged failure to monitor the Investment Committee defendants and provide them with information. First, Defendants contend that the Amended Complaint fails to show Lacy was a fiduciary with respect to monitoring the Committee Defendants. Second, Defendants claim that Plaintiffs fail to plead any of the relevant Defendants breached their fiduciary duties to monitor the Investment Committee. Finally, Defendants argue Plaintiffs fail to state a claim based on Defendants' failure to provide non-public information to the Investment Committee.

Lacy as a Fiduciary

As stated [*21] earlier, a claim for a breach of a fiduciary duty under ERISA is only valid against a fiduciary; and a person may be an ERISA fiduciary for some purposes but not others. *Plumb* 124 F.3d at 854. Under ERISA guidelines, a fiduciary who delegates responsibility or appoints other fiduciaries has a duty to monitor those delegates. 29 C.F.R. § 2509.75-8, FR-17; *see also Ed Miniat, Inc. v. Globe Life Ins Group, Inc* 805 F.2d 732, 736 (7th Cir. 1986) (explaining that corporations may have a duty to monitor the actions of the fiduciaries administering the plan); *Leigh v Engle* 727 F.2d 113, 135 (7th Cir. 1984) (holding that fiduciaries have a duty to monitor their appointees).

Here, Plaintiffs allege that the Plan gave Sears, who acted through its Board of Directors, the authority to

Case 1:04-cv-11380-WGY    Document 60-4    Filed 01/24/2006    Page 13 of 16

Page 6
2004 U.S. Dist. LEXIS 3241, *; 32 Employee Benefits Cas. (BNA) 1699

13. Defendants argue that Plaintiffs allege no facts that show how Lacy or the other Director Defendants functioned as fiduciaries with regard to the appointment or monitoring of the Investment Committee. However, generally, when considering a motion to dismiss, Plaintiffs only [*22] need to place Defendants on notice of the claims. Therefore, Plaintiffs have alleged that Lacy and the other Director Defendants are fiduciaries with respect to monitoring the Investment Committee.

Breach of Duty to Monitor

Defendants next argue that Plaintiffs failed to state a breach of any duty to monitor the Investment Committee. Under 29 C.F.R. § 2509.75-8, FR-17, the duty to monitor requires that:

> at reasonable intervals the performance of ... fiduciaries should be reviewed by the appointing fiduciary in such a manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan.

Here, Plaintiffs allege that the relevant Defendants, the fiduciaries who appointed the Investment Committee members, failed to monitor the performance of the Investment Committee. Specifically, Plaintiffs allege that these Defendants, members of the Board of Directors, knew or should have known that offering the Company Stock Fund was an imprudent investment, and that they should have monitored the Investment Committee and its members. Whether [*23] the relevant Defendants -- Sears, Lacy, and the other Directors -- monitored the Investment Committee to determine if the Committee was not acting consistently with ERISA is a question of fact. Accordingly, Plaintiffs have stated a claim for breach of duty for the failure to monitor the Investment Committee.

Defendants also claim that no breach of the duty to monitor can arise from the failure to provide non-public information to the Investment Committee. However, as discussed earlier, defendants "cannot escape potential liability on ERISA breach of duty claims because of any duties they may have under securities laws." *Rankin,* 278 F. Supp. 2d at 878. This proposition also holds true for Lacy and the other Director Defendants, who Plaintiffs allege had knowledge of the accounting irregularities at Sears. Therefore, Defendants' Motion to Dismiss Count VI on this ground is denied.

*Co-Fiduciary Liability*

A co-fiduciary may be liable for another's breach of fiduciary duty if he: (1) fails to follow his fiduciary duties, thus enabling another fiduciary to commit a breach; and (2) has knowledge of the breach committed by another fiduciary and takes no reasonable efforts [*24] to remedy the breach. 29 U.S.C. § 1105(a)(2)-(3). Thus, as the both sides agree, a primary breach must exist to plead a co-fiduciary liability claim. Here, primary breaches have been upheld against Sears, Lacy, the Director Defendants, the Investment Committee, and the individual Investment Committee members.

Defendants argue that Plaintiffs have impermissibly lumped all Defendants together without explaining how a particular Defendant enabled another fiduciary to commit a breach or took no reasonable efforts to remedy a knowledge of the breach. Plaintiffs allege that all fiduciaries breached their duties, as required under § 1105(a)(2)-(3). However, Count V of Plaintiffs' Complaint does not contain allegations that put Defendants on notice of the particular charges against each Defendant. Accordingly, Count V of Plaintiffs' Complaint is dismissed, with leave to file an Amended Complaint, consistent with Federal Rule of Civil Procedure, with respect to this Count.

*Prohibited Transaction Claim*

Defendants next move to dismiss Plaintiffs' prohibited transaction claim, Count III of the Complaint, in that there are no allegations in the Complaint that state [*25] the Plan purchased shares of Sears stock for more than the market price. In response, Plaintiffs argue that because Defendants purchased stock with knowledge it was inflated, the Plan purchased stock for more than adequate consideration.

Fiduciaries are not permitted to enter into certain prohibited transactions, such as purchasing securities for more than adequate consideration. *See* 29 U.S.C. § 1106-1108. Defendants argue that "in the case of a security for which there is a generally recognized market," adequate consideration means paying "the price of the security prevailing on a national securities exchange." 29 U.S.C. § 1002(18)(A)(i). Defendants further contend the Sears stock was purchased on the New York Stock Exchange. However, Plaintiffs allege the transaction was prohibited because the market price of Sears stock was inflated, without knowledge by the general public of the fair market value of the stock, by Defendants' fraud in manipulating financial reports. This allegation places Defendants on notice of the claim being asserted. Therefore, Defendants' Motion to Dismiss Plaintiffs' prohibited transaction claim is denied. [*26]

CONCLUSION

Case 1:04-cv-11380-WGY   Document 60-4   Filed 01/24/2006   Page 14 of 16

Page 7

2004 U.S. Dist. LEXIS 3241, *; 32 Employee Benefits Cas. (BNA) 1699

For the foregoing reasons, the Defendants' Motion to Dismiss is denied in part and granted in part. Count V of Plaintiffs' Complaint is dismissed, with leave to file an Amended Complaint, consistent with Federal Rule of Civil Procedure, with respect to this count.

Dated: March 2, 2004

JOHN W. DARRAH

United States District Judge

LEXSEE 2002 U.S. DIST. LEXIS 25676

In re PROVIDIAN FINANCIAL CORP. ERISA LITIGATION

No. C 01-05027 CRB

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

2002 U.S. Dist. LEXIS 25676

November 14, 2002, Decided

COUNSEL: [*1] For Ramon J. Holmes, Plaintiff: J. Thomas Hannan, Lovitt & Hannan, Inc., San Francisco, CA. James G. Stranch, III, Branstetter Kilgore Stranch & Jennings, Nashville, TN. Jane B. Stranch, Branstetter Kilgore Stranch & Jennings, Nashville, TN. Lauren E. Wagner, Chitwood & Harley, Atlanta, GA. Lynn Lincoln Sarko, Keller Rohrback L.L.P., Seattle, WA. Paul F. Bennett, Gold Bennett Cera & Sidener LLP, San Francisco, CA. Robert Scott Dreher, The Law Offices of Scott Dreher, San Diego, CA. Robert A. Goodin, Goodin MacBride Squeri, Ritchie & Day LL, San Francisco, CA. Ronald Lovitt, Lovitt & Hannan, Inc., San Francisco, CA. Wayne T. Lamprey, Goodin MacBride Squeri, Ritchie & Day LL, San Francisco, CA.

For Ruth A. Spindler, Plaintiff: Britt Tinglum, Keller Rohrback, L.L.P., Seattle, WA. Derek W. Loeser, Keller Rohrback, LLP, Seattle, WA. J. Thomas Hannan, Lovitt & Hannan, Inc., San Francisco, CA. Lauren E. Wagner, Chitwood & Harley, Atlanta, GA. Lynn Lincoln Sarko, Keller Rohrback L.L.P., Seattle, WA. Paul F. Bennett, Gold Bennett Cera & Sidener LLP, San Francisco, CA. Robert A. Goodin, Goodin MacBride Squeri, Ritchie & Day LL, San Francisco, CA. Ronald Lovitt, Lovitt & Hannan, Inc., San [*2] Francisco, CA. Wayne T. Lamprey, Goodin MacBride Squeri, Ritchie & Day LL, San Francisco, CA.

For J. David Grissom, Shailesh J. Mehta, David R. Alvarez, Defendants: Gregory C. Braden, Alston & Bird LLP, Atlanta, GA. Jessica B. Rudin, Long & levit LLP, San Francisco, CA. Jordan David Eth, Morrison & foerster, San Francisco, CA. Joseph P. McMonigle, Long & Levit LLP, San Francisco, CA. Melvin R. Goldman, Morrison & Foerster, San Francisco, CA. Mia A. Mazza, Morrison & Foerster LLP, San Francisco, CA.

For Leonard D. Schaeffer, Christina L. Darwall, James V. Elliot, Lyle Everingham, F. Warren McFarlan, Ruth M. Owades, Larry D. Thompson, John T. Winborg, David J. Petrini, Defendants: Gregory C. Braden, Alston & Bird LLP, Atlanta, GA.

For Providian Financial Corporation, Defendant: Derek W. Loeser, Keller Rohrback, LLP, Seattle, WA. Gregory C. Braden, Alston & Bird LLP, Atlanta, GA. H. Douglas Hinson, Alston & Bird LLP, Atlanta, GA. Jessica B. Rudin, Long & levit LLP, San Francisco, CA. Jordan David Eth, Morrison & foerster, San Francisco, CA. Joseph P. McMonigle, Long & Levit LLP, San Francisco, CA. Melvin R. Goldman, Morrison & Foerster, San Francisco, CA. Mia A. Mazza, [*3] Morrison & Foerster LLP, San Francisco, CA.

JUDGES: CHARLES R. BREYER, UNITED STATES DISTRICT JUDGE

OPINIONBY: CHARLES R. BREYER

OPINION:

ORDER

Now before the Court is defendants' motion to dismiss the consolidated class action complaint pending against them for breach of the fiduciary duty requirements imposed by the Employee Retirement Income Security Act of 1974 ("ERISA"). This single cause of action is asserted against multiple defendants: (1) Providian Financial Corporation; (2) selected officers of Providian; (3) the individual members of the Providian Board of Directors, including the members of the Human Resources Committee; and (4) the individual members of the Advisory Committee, who are identified as Does 1 to 100.

While Rule 8(a) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim," that statement must be sufficient to put the defendant on notice of the claims against him. See Conley v. Gibson, 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99

(1957) Here, plaintiffs have lumped the various classes of defendants into an undifferentiated mass and alleged that all of them violated all of the asserted fiduciary duties. [*4] The resulting cause of action is so general that it fails to put the various defendants on notice of the allegations against them.

Accordingly, plaintiffs are hereby ORDERED to file an amended complaint that alleges with specificity, for each category of defendants, what fiduciary duties the defendants allegedly had and how the defendants allegedly breached those duties. In particular, the Complaint should make clear what each category of defendants is alleged to have known about the true state of Providian's financial affairs. The amended complaint shall be filed no later than thirty days following issuance of this Order

**IT IS SO ORDERED.**

Dated: November 14, 2002

CHARLES R. BREYER

UNITED STATES DISTRICT JUDGE