LEXSEE 2001 U.S. DIST. LEXIS 25670

**DAN L. SPRINGATE, individually as a devisee of the Will of Fred E. Springate, deceased and as Executor of the Estate of Fred E. Springate, Plaintiff, vs. Weighmasters Murphy, Inc. Money Purchase Pension Plan, Charles E. Murphy, John E. Murphy, Frank Murphy, and Northern Trust Bank of California, N.A., Defendants.**

CASE NO. CV 01-03551 DT (CTx)

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

2001 U.S. Dist. LEXIS 25670

June 25, 2001, Decided
June 25, 2001, Filed; June 26, 2001, Entered

**SUBSEQUENT HISTORY:** Summary judgment granted by Springate v. Weighmasters Murphy, 217 F. Supp. 2d 1007, 2002 U.S. Dist. LEXIS 16234 (C.D. Cal., 2002)

**DISPOSITION:** Plaintiff's Request for Judicial Notice in Opposition to Defendant, Northern Trust's Motion to Dismiss granted. Defendant Northern Trust's Request for Judicial Notice in Support of Motion to Dismiss granted. Defendant Northern Trust's Motion to Dismiss granted.

**COUNSEL:** [*1] For DAN L SPRINGATE, individually as a devisee of the Will of Fred E. Springate, deceased, DAN L SPRINGATE, as Executor of the Estate of Fred E. Springate, plaintiffs: Gary C Nawa, Gary C Nawa Law Offices, Pasadena, CA. Ronald M LaBran, Zeutzius & LaBran Law Offices, Pasadena, CA.

For WEIGHMASTERS MURPHY INC, MONEY PURCHASE PENSION PLAN, CHARLES E MURPHY, JOHN E MURPHY, FRANK MURPHY, defendants: Patricia G Vick, Shardlow & Vick, Pasadena, CA. E W Sheridan, E W Sheridan Law Offices, Long Beach, CA.

For NORTHERN TRUST BANK OF CALIFORNIA N.A., defendant: Joseph C Faucher, Reish Luftman Reicher & Cohen, Los Angeles, CA

For CHARLES E MURPHY, as Administrator of the est Eleanor M Murphy, WEIGHMASTERS MURPHY INC, MONEY PURCHASE PENSION PLAN, CHARLES E MURPHY, JOHN E MURPHY, FRANK MURPHY, counter-claimants: Patricia G Vick, Shardlow & Vick, Pasadena, CA. E W Sheridan, E W Sheridan Law Offices, Long Beach, CA.

For DAN L SPRINGATE, counter-defendant: Gary C Nawa, Gary C Nawa Law Offices, Pasadena, CA. Ronald M LaBran, Zeutzius & LaBran Law Offices, Pasadena, CA.

**JUDGES:** Dickran Tevrizian, Judge, United States District Judge.

**OPINIONBY:** Dickran Tevrizian

**OPINION:**

ORDER GRANTING PLAINTIFF, [*2] DAN L. *SPRINGATE'S REQUEST FOR JUDICIAL* NOTICE IN OPPOSITION TO DEFENDANT, NORTHERN TRUST OF CALIFORNIA, N.A.'S MOTION TO DISMISS; ORDER GRANTING DEFENDANT, NORTHERN TRUST OF CALIFORNIA, N.A.'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS; AND GRANTING WITH PREJUDICE AND WITHOUT LEAVE TO AMEND DEFENDANT NORTHERN TRUST BANK OF CALIFORNIA, N.A.'S MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

I. Background

A. Factual Summary

This action is brought by Plaintiff Dan L. Springate ("Plaintiff") individually as a devisee of the Will of Fred E. Springate and as Executor of the Estate of Fred E. Springate against Weighmaster Murphy, Inc. Money

Case 1:04-cv-11380-WGY    Document 60-6    Filed 01/24/2006    Page 2 of 11

Page 2
2001 U.S. Dist. LEXIS 25670, *

Purchase Pension Plan ("the Plan"), Charles E. Murphy, John E. Murphy, and Frank Murphy ("the Investment Committee"), and Northern Trust Bank of California, N.A. ("Defendant") for violation of the Employee Retirement Income Security Act of 1974 ("ERISA") -- 29 U.S.C. §§ 1104, 1105, and 1132.

The following facts are alleged in the Complaint:

Decedent, Elinora M. Murphy, was a participant in the Plan. (Complaint P7.) In her application [*3] to the Plan, she properly designated Fred Springate as her Named Beneficiary in conformance with the provisions of the Plan. (Id. at P10.) Ms Murphy's interest in the Plan ($ 1,555,317) was 100% vested at the time of her death on May 3, 1999. (Id. at P9.) As a consequence of this designation, Ms. Murphy's vested interest should have been immediately transferred to Fred Springate upon her death. (Id. at P10.) Despite repeated demands, Defendant failed and refused to transfer the funds to Fred Springate as required by the Plan and ERISA. (Id. at P11.)

At the time of Ms. Murphy's death, the Plan was invested approximately as follows: 7% in cash, 37% in a security listed as "MFB NORTHN INSTL FDS DIVERSIFIED GROWTH PORTFOLIO CL A", and 55% in the common stock of UNUMPROVIDENT Corporation. (Id. at P12.) Defendants failed and refused to diversify the assets and holdings of the Plan. (Id. at P13.) In addition, Defendants retained ownership of UNUMPROVIDENT common shares during this period with the specific intent of reducing the value of Ms. Murphy's interest in the Plan to cause Fred Springate financial harm. (Id. at P15.) These actions violated Defendant's duty [*4] of undivided loyalty to the Plan's participants and beneficiaries. (Id.)

On January 21, 1994, Defendant accepted the position of "Trustee" of the Plan. (Id. at P17.) Although labeled a "Directed Trustee" by Article Seven of the Plan and the title of the document, to wit: "Directed Trust for Defined Benefit or Defined Contribution Plans", Article Four of the Trust Agreement reserves for Defendant to right to buy, sell, invest, lease or otherwise exercise control over each and every assets of the Plan. (Id.) In addition, on December 13, 1999, Defendant filed a "Complaint in Intervention [sic]" in the United States District Court for the Central District of California, action No 99-13044 DT (Ctx). (Id. at P18.) These acts by Defendant were not acts of a directed trustee, but rather were acts of an independent trustee. (Id.)

On March 7, 2000, Defendant was dismissed from the Interpleader action it had filed. (Id. at P19.) On May 31, 2000, Defendant deposited the entirety of Ms Murphy's vested interest in the Plan, the sum of $ 515,410.09 with the United States District Court.

As a result of its acts, Defendant caused the value of Ms. Murphy's vested [*5] interest in the Plan to decrease by approximately $ 630,000, in the space of one year and 28 days. (Id. at P20.)

On June 27, 2000, Fred Springate died. (Id. at P22.) On October 27, 2000, Dan Springate was appointed the Executor of the Estate of Fred Springate by the Probate Department of the Superior Court of the State of California for the County of Los Angeles. (Id.) Dan Springate is also the son and one of the heirs of Fred Springate. (Id.)

Plaintiff alleges the following claims for relief in the Complaint:

1. First Claim: recovery of pension benefits due the beneficiary of a plan participant in violation of 29 U.S.C. § 1132(a)(1)(B), ERISA § 502(a)(1)(B), and 29 U.S.C. § 1104(a), *ERISA § 404(a)*;

2. Second Claim: losses caused by failure to diversify plan assets in violation of 29 U.S.C. § 1104(a)(1)(C), ERISA § 404(a)(1)(C);

3. Third Claim: participation in or allowing co-fiduciaries breach of fiduciary obligations and responsibilities in violation of 29 U.S.C. § 1105, ERISA § 405;

4. Fourth Claim: injunction enjoining Investment Committee only, from acting [*6] in any fiduciary capacity in the future under 29 U.S.C. § 1111(a), ERISA § 411(a);

5. Fifth Claim: claim for attorneys fees pursuant to 29 U.S.C. § 1132(g)(1), ERISA § 502(g)(1)

B. Procedural Summary

On April 18, 2001, Plaintiff filed the Complaint.

On April 18, 2001, Plaintiff filed a Notice of Pendency of Other Action pending in the Court of Appeal for the State of California, Second Appellate District, Appeal No. B 143 213, entitled "Eleanor M. Murphy, aka Eleanor Marie Murphy Estate, Defendant and *Appellant* vs *Fred E. Springate Plaintiff* and Respondent" regarding the Probate Action concerning the ownership rights of the decedent's vested interest in the Plan.

On May 8, 2001, Defendants Weighmasters Murphy, Inc. Money Purchase Pension Plan, Charles Murphy, John Murphy, and Frank Murphy filed an Answer to the Complaint.

On May 15, 2001, this Court issued its Order Setting a Scheduling Conference for July 23, 2001.

On May 18, 2001, this Court issued its Standing Order with Regard to Newly Assigned Cases.

On May 29, 2001, Defendant Northern Trust Bank filed a Request for Judicial Notice in support of its M-

tion [*7] to Dismiss the Complaint for Failure to State a Claim Upon Which Relief Can Be Granted, which is currently before this Court.

On May 29, 2001, Defendant Northern Trust Bank filed a Motion to Dismiss the Complaint for Failure to State a Claim Upon Which Relief Can Be Granted, which is currently before this Court.

On May 30, 2001, Defendants Weighmasters Murphy, Inc. Money Purchase Pension Plan, Charles Murphy, John Murphy, and Frank Murphy filed a Stipulation to File First Amended Answer to the Complaint.

On June 4, 2001, Defendants Weighmasters Murphy, Inc. Money Purchase Pension Plan, Charles Murphy, John Murphy, and Frank Murphy filed a First Amended Answer to the Complaint.

On June 11, 2001, Plaintiff filed a Request for Judicial Notice in Opposition to Defendant Northern Trust Bank of California N.A.'s Motion to Dismiss the Complaint for Failure to State a Claim Upon Which Relief Can Be Granted, which is currently before this Court.

## II. Discussion

### A. Requests for Judicial Notice

#### 1. Plaintiff's Request for Judicial Notice

Plaintiff filed a Request for Judicial Notice in Opposition to Defendant's Motion to Dismiss wherein Plaintiff asks this [*8] court to take judicial notice of the following documents: (1) "Plaintiff, Northern Trust Bank of California, N.A.'s Factual Analysis" filed and served on or about February 3, 2000, in United States District Court in Case No. CV 99-13044 DT by defendant herein, Northern Trust Bank; (2) "Order of Dismissal and Discharge of Plaintiff Northern Trust Bank of California, N.A." filed on March 6, 2000, in United States District Court in Case No. CV 99-13044 DT by defendant herein, Northern Trust Bank; and (3) "Notice of Interpleading of Funds Pursuant to Court Order" filed and served on or about May 31, 2000, with incorporated Exhibit attached thereto, in United States District Court in Case No. CV 99-13044 DT by defendant herein, Northern Trust Bank.

A court must take judicial notice if a party requests it and supplies the court with the requisite information. Fed. R. Evid. 201(d). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be [*9] questioned." Fed. R. Evid. 201(b). This Court may take judicial notice of facts outside the pleadings without converting the motion to one for summary judgment. See Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986) (citing Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd., 245 F.2d 67, 70 (9th Cir. 1956)).

This Court may take judicial notice of its own records. See United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980) (courts may take judicial notice of their own records); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980) ("In particular, a court may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases."). As such, this Court grants Plaintiff's request for judicial notice and takes judicial notice of the aforementioned documents.

#### 2. Defendant's Request for Judicial Notice

Defendant Northern Trust Bank filed a Request for Judicial Notice in Support of its Motion to Dismiss the Complaint for Failure to State a Claim Upon Which Relief Can Be Granted wherein Defendant asks this [*10] court to take judicial notice of the following documents: (1) "Complaint in Interpleader" filed December 13, 1999, in United States District Court in Case No. CV 99-13044 DT by defendant herein, Northern Trust Bank; (2) "Order of Dismissal and Discharge of Plaintiff Northern Trust Bank of California, N.A." filed on March 6, 2000, in United States District Court in Case No. CV 99-13044 DT by defendant herein, Northern Trust Bank.

For reasons explained above, this Court grants Plaintiff's request for judicial notice and takes judicial notice of the aforementioned documents.

### B. Standard

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) the Court must assume that plaintiffs' allegations are true, and must construe plaintiffs' complaint in the light most favorable to plaintiffs. United States v. City of Redwood City, 640 F.2d 963, 967 (9th Cir. 1981). Moreover, even if the face of the pleadings indicates that recovery is unlikely, the plaintiff is still entitled to offer evidence in support of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974); Redwood City, 640 F.2d at 967. [*11] Finally, a court may not dismiss complaints pursuant to Fed. R. Civ. P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); Russell v. Landrieu, 621 F.2d 1037, 1039 (9th Cir. 1980).

Generally, orders granting motions to dismiss are without prejudice unless "allegations of other facts consistent with the challenged pleading could not possibly cure the defect." Schreiber Dist. v. Serv-Well Furniture, 806 F.2d 1393, 1401 (9th Cir. 1986).

Case 1:04-cv-11380-WGY   Document 60-6   Filed 01/24/2006   Page 4 of 11

Page 4
2001 U.S. Dist. LEXIS 25670, *

### C. Analysis

In this motion, Defendant Northern Trust Bank of California, N.A. ("Defendant") seeks to dismiss the First, Second, Third, and Fifth Claims for Relief. n1

> n1 The Fourth Claim for Relief, for injunctive relief against the remaining co-defendants, is not directed at Northern Trust, and is therefore not addressed herein.

[*12]

### 1. Dismissal of First Claim is warranted with prejudice and without leave to amend

In the First Claim for Relief, Plaintiff alleges that Defendant failed and refused to honor the Named Beneficiary designation in the Plan. Defendant contends that dismissal of this claim is warranted because they are not the proper defendant under this ERISA claim.

Section 29 U.S.C. § 1132(a)(1)(B) provides, in pertinent part, that "[a] civil action may be brought (1) by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

The Ninth Circuit has held that "ERISA permits suits to recover benefits *only* against the Plan as an entity. . . ." Gibson v. Prudential Ins. Co., 915 F.2d 414, 417 (9th Cir. 1990) (citing Gelardi v. Pertec Computer Co., 761 F.2d 1323, 1324-25 (9th Cir. 1985) (emphasis added)). Here, Defendant is not the Plan entity, and thus it is inappropriate for Plaintiff to seek recovery of Plan benefits from Defendant.

In his opposition, Plaintiff cites [*13] Leonelli v Pennwalt Corp., 887 F.2d 1195, 1199 (2nd Cir. 1989) (emphasis added), for the proposition that "only the plan and the administrators *and trustees* of the plan *in their capacity as such* may be held liable." However, this is not the law in the Ninth Circuit. In addition, this quote is dicta as the Leonelli court was determining whether the plaintiff could amend his complaint to add an ERISA claim. The rule is clearly stated in Gelardi that only the Plan as an entity can be sued. Therefore, this Court dismisses this claim with prejudice and without leave to amend.

### 2. Dismissal of Second Claim is warranted with prejudice and without leave to amend

In the Second Claim for Relief, Plaintiff alleges that Defendant breached their fiduciary duty by failing to diversify Plan assets. Defendant contends that dismissal of this claim is warranted because the Directed Trust Agreement does not give Defendant the power or responsibility to determine where Plan assets are invested.

Section 29 U.S.C. § 1002(21)(A), ERISA § 3(21)(A), provides a functional definition of "fiduciary", stating ". . . a person is a fiduciary with [*14] respect to a plan to the extent (i) he exercises *discretionary authority or discretionary control* respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation. . ., or has any authority or responsibility to do so, or (iii) he has any *discretionary authority or discretionary responsibility in the administration* of such plan." (Emphasis added).

"Under [ERISA § 3(21)(A)], a person. . . has [fiduciary] status only 'to the extent' that he has or exercises the described authority or responsibility." F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1259 (2nd Cir. 1987). "[A] person is a fiduciary only with respect to those aspects of the plan over which he exercises authority or control." Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc., 793 F.2d 1456, 1459-60 (5th Cir. 1986), cert. denied, 479 U.S. 1034, 107 S. Ct. 884, 93 L. Ed. 2d 837 (1987).

In addition to these constructions of the term "fiduciary", ERISA specifically provides that a trustee may [*15] be divested of the functional authority and discretion to manage and control the assets of a plan. Section 29 U.S.C. § 1103(a), ERISA § 403(a), provides in pertinent part, ". . . the trustee . . . shall have exclusive authority and discretion to manage and control the assets of the plan, *except to the extent that (1) the plan expressly provides that the trustee . . . [is] subject to the direction of a named fiduciary who is not a trustee, in which case the trustees shall be subject to proper directions of such fiduciary which are made in accordance with the terms of the plan.* . ." (Emphasis added).

Here, Defendant is a directed trustee. According to the Directed Trust Agreement, titled "Directed Trust for Defined Benefit or Defined Contribution Plans", Defendant does not have the power to determine where Plan assets should be invested, nor does it have a fiduciary duty to review the appropriateness of Plan investments. (See Directed Trust § 3.4.) n2 The responsibility of "monitoring the diversification of the investments" *lies solely with the Investment Committee* (See id. § 1.7.) n3

> n2 "The Investment Committee shall have investment responsibility for assets held in any Separate Account for which an Investment Manager or Investment Trustee has not been retained, has been removed, or is for any reason unwilling

or unable to act. With respect to assets or Separate Accounts for which the Investment Committee has investment responsibility, the *Trustee, acting only as directed by the Investment Committee,* shall enter into such agreements as are necessary to facilitate any investment, . . . The Trustee shall not make any investment review of, or consider the propriety of holding or selling, or vote *any assets for which the Investment Committee has investment* responsibility."

[*16]

n3 "'Investment Committee' means the committee as constituted from time to time which has the responsibility for allocating assets of the Trust Fund among the Separate Accounts and any Trustee Investment Account, for monitoring the diversification of the investments of the Trust Fund, for the appointment and removal of Investment Advisers and shall be deemed for purposes of ERISA to be the named fiduciary for Plan investments."

The *services provided by Defendant are similar* to the custodial services provided by Citibank in Arizona State Carpenters Pension Trust Fund v. Citibank (Arizona), 125 F.3d 715 (9th Cir. 1997). In Citibank, the Ninth Circuit held that Citibank was not a fiduciary by reasoning that "Citibank was bound by the Agreements, and the Agreements gave Citibank no discretionary authority; there was no allocation of managerial responsibility, and Citibank was not permitted to act, and did not act, without the authority of the Trustees or their agents; Citibank was required to follow the investment manager's directions." 125 F.3d at 720

As [*17] in Citibank, Defendant had no duty to the Plan beyond those which the Directed Trust Agreement conferred upon it. To infer any greater duty would be to eviscerate the concept of directed trustee, and to require banks and trust companies to monitor all investments of all ERISA plan clients, regardless of the fees charged for their services.

Plaintiff attempts to establish a fiduciary role for Defendant by alleging that Defendant "specifically reserved to itself in 'Article Four: Powers of the Trustee' of the Trust Agreement the right to buy, sell, invest, lease or otherwise exercise control over each and every asset of the Plan." (See Complaint § 17.) This argument does not prevail, however. Article Four initially provides that *"except as otherwise provided in this agreement,* the Trustee shall hold, manage, care for and protect the assets of the Trust Fund and shall have until actual distribution thereof the following powers . . ." (Emphasis added). Thus, Defendant's powers as directed trustee must be read in conjunction with §§ 1.7 and 3.4, which expressly confer the power and responsibility to invest Plan assets to the Investment Committee. Therefore, Article Four does [*18] not establish a fiduciary duty by Defendant to diversify Plan assets.

Next, while Plaintiff acknowledges that Defendant was a directed trustee, Plaintiff alleges that Defendant became an "independent trustee" by virtue of (1) filing the Interpleader Action, and (2) selling Plan assets to comply with the court order. First, even if Defendant was a fiduciary in connection with filing the Interpleader Action and selling Plan assets to comply with the court order, those acts do not confer broader fiduciary liability upon Defendant to monitor the investment and diversification of Plan assets. "[A] person is a fiduciary 'to the extent that' he performs one or more of the described duties." John Hancock Mutual Life Ins. Co. v. Harris Trust & Saving Bank, 510 U.S. 86, 114 S. Ct. 517, 126 L. Ed. 2d 524 (1993). "Fiduciary status is not an all or nothing proposition; the statutory language indicates that a person is a plan fiduciary only 'to the extent' that he possesses or exercises the requisite discretion and control. Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 18 (1st Cir. 1998).

Second, under section 29 U.S.C. § 1109(b) [*19], ERISA § 409(b), "no fiduciary shall be liable with respect to a breach of fiduciary duty under this title if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary." Accordingly, even if filing the Interpleader Action and selling the Plan assets to comply with the court order constituted fiduciary acts thus establishing Defendant as a fiduciary, these acts occurred after the alleged failure to diversify Plan assets. Thus, Defendant could not be liable for this alleged breach of fiduciary duty.

Plaintiff further argues in his opposition that Defendant's filing of the Interpleader Action evidenced a fiduciary relationship by stating " . . . if [Defendant] were a 'Directed Trustee' it would have had no exposure 'to double or multiple liability'," and thus it was not necessary to file the Interpleader Action. This argument does not prevail, however. When competing claims to Ms. Murphy's Plan benefits were being made, Defendant clearly faced the potential of multiple liability. Defendant was faced with the classic circumstance for which interpleader proceedings were created - competing claimants to a single res. Defendant's acts do not lead to [*20] the conclusion that there existed a fiduciary duty to diversify Plan assets.

In sum, according to the Plan and the Directed Trust Agreement, Defendant does not have the power or re-

sponsibility to determine or monitor where Plan assets are invested. As a result, Defendant has no fiduciary duty to diversify Plan assets. Therefore, this Court dismisses this claim with prejudice and without leave to amend.

### 3. Dismissal of Third Claim is warranted with prejudice and without leave to amend

In the Third Claim for Relief, Plaintiff alleges that Defendant breached the "co-fiduciary" provision under ERISA § 405 by having knowledge of the breaches of fiduciary duty committed by each of their co-fiduciaries. Defendant contends that dismissal of this claim is warranted because Defendant is not a fiduciary.

Section 29 U.S.C. § 1105, ERISA § 405, provides in pertinent part as follows:

> In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
> (1) if he participates [*21] knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
> (2) if, by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

As explained above, Defendant is a directed trustee and not a fiduciary. It follows that Defendant cannot be liable as a co-fiduciary under ERISA. Even if Defendant became a fiduciary by filing the Interpleader Action and liquidating Plan assets to comply with the court order, it would still not be liable since these acts occurred after the alleged breach of fiduciary duty. Therefore, this Court dismisses this claim with prejudice and without leave to amend.

### 4. Dismissal of Fifth Claim is warranted with prejudice and without leave to amend

In the Fifth Claim for Relief, Plaintiff alleges that he has incurred costs and attorneys fees as a direct consequence of the fiduciary breaches committed [*22] by Defendant. Defendant argues that since none of Plaintiff's substantive ERISA claims survive, the claim for attorneys fees must fail.

Section 29 U.S.C. § 1132(g)(1), ERISA § 502(g)(1), provides that "in any action under this title . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."

Since all of Plaintiff's claims against Defendant have been dismissed with prejudice, this Court dismisses this claim with prejudice and without leave to amend.

### 5. Res Judicata Appears to Preclude All Claims

As an alternative ground for granting the motion to dismiss, this Court raises sua sponte the argument that all claims here appear to be barred by the doctrine of res judicata. n4

---

n4 This Court notes that Defendant briefly addresses this issue for the first time in its reply.

---

The original action, Northern Trust Bank of California v. Murphy, Case Number CV 99-13044 DT (Ctx), was an interpleader [*23] action (the "Interpleader Action") brought by Northern Trust against Charles Murphy, as administrator of the estate of Eleanor Murphy; Fred Springate; Weighmasters Murphy, Inc.; and the Weighmasters Murphy, Inc. Money Purchase Pension Plan. On March 7, 2000, this Court entered an order of dismissal and discharge of Northern Trust after Northern Trust had deposited the disputed monies with the Court. The order states that "Plaintiff in Interpleader Northern Trust Bank of California N.A. is hereby dismissed from this action and is *hereby discharged from any further liability as to the claim of Defendants . . .*" (Emphasis added)

"In order to bar a later suit under the doctrine of res judicata, an adjudication must (1) involve the same "claim" as the later suit, (2) have reached a final judgment on the merits, and (3) involve the same parties or their privies." Nordhorn v. Ladish Co., Inc., 9 F.3d 1402, 1404 (9th Cir. 1993). In addition to the doctrine of res judicata, Federal Rule of Civil Procedure 13(a) ("Rule 13(a)") requires a counterclaim to be raised "if it arises out of the same transaction or occurrence that is the [*24] subject matter of the opposing party's claim."

First, the Interpleader Action involved the same claim as the current action. "The Ninth Circuit determines whether or not two claims are the same for purposes of res judicata with reference to the following criteria: (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substan

Case 1:04-cv-11380-WGY    Document 60-6    Filed 01/24/2006    Page 7 of 11

Page 7
2001 U.S. Dist. LEXIS 25670, *

tially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." Id. (quoting Harris v. Jacobs, 621 F.2d 341, 343 (9th Cir. 1980)). Here, all criteria are met. Defendant's rights and interests would be impaired by prosecution of this action since the judgment in the Interpleader action discharged Defendant from any further liability. In addition, since both actions concern the legal rights to Ms. Murphy's Plan assets, substantially the same evidence would be presented in the two actions, the two suits involve infringement of the same right, and the two suits arise out of the same transactional nucleus of facts. [*25]

Second, the Interpleader Action reached a final judgment on the merits. The language of the order dismissing Defendant from Interpleader Action indicates that it was a judgment on the merits by stating that "[Northern Trust is] hereby discharged from any further liability as to the claim of Defendants...."

Third, the Interpleader Action involved the same parties or their privies as the current action. The Ninth Circuit has stated that "for purposes of res judicata, privity exists where two parties represent the interests of the same entity." In re Dominelli, 820 F.2d 313, 317 (9th Cir. 1987) (junior lienholder not permitted to relitigate validity of senior lienholder's interest provision, where that claim had already been decided in suit brought by bankruptcy trustee). Plaintiff brings this action in two capacities: (1) as executor of the estate of Fred Springate and (2) as a devisee of the Will of Fred Springate. Plaintiff's capacity as executor poses no privity question since an executor of an estate stands in the place of the deceased. The issue is whether Plaintiff, as a devisee of the Will, is in privity with Fred Springate. As in Dominelli, both parties [*26] here represent the interests of the same entity. Plaintiff, in his devisee capacity, is representing Fred Springate's legal rights to Ms. Murphy's vested interest in the Plan assets. Thus, Plaintiff is in privity with Fred Springate, and therefore is precluded from bringing this action.

In addition to the doctrine of res judicata, Rule 13(a) precludes these claims. Rule 13(a) makes joinder of counterclaims compulsory if they arise out of the same transaction or occurrence of the opposing party's claim. In Cheiker v. Prudential Ins. Co. of America, 820 F.2d 334 (9th Cir. 1987), the Ninth Circuit held that final judgment in a California interpleader action, involving entitlement to life insurance proceeds, barred a beneficiary's subsequent federal action asserting various contract and tort claims. The Court reasoned that California's compulsory cross complaint statute applied to the interpleader action, and there was no doubt that the beneficiary's federal causes of action arose out of the same transactions as the interpleader action, and thus, the beneficiary's claims should have been raised in the interpleader action. While the Cheiker case deals with a California [*27] statute, that Court noted that interpretation of the statute's terms parallels the interpretation of the same terms found in Rule 13(a). 820 F.2d at 337.

Here, Plaintiff's claims against Defendant should have been raised in the Interpleader Action because they arose out of the same transaction or occurrence. Both actions deal with the legal rights to Ms. Murphy's vested interest in the Plan assets. In addition, if these claims were allowed to be litigated now, the purpose of Rule 13(a) would be defeated by permitting multiple and piecemeal litigation.

Finally, this Court is of the opinion that Plaintiff's present claim is effectively an attempt to surcharge the moving defendant for its role involving assets of the decedent, Elinora M. Murphy, in the underlying state court probate proceedings. As such, the issue of surcharge or accounting should have been raised in the probate department of the Superior Court of the State of California in the County of Los Angeles in the administration of the estate of Elinora M. Murphy, deceased and referenced in the Notice of Pendency of Other Action pending in the Court of Appeal No. B 143 213 entitled "Eleanor M. Murphy, aka Eleanor [*28] Marie Murphy Estate Defendant and Appellant vs. Fred E. Springate, Plaintiff and Respondent."

In sum, all claims appear to be barred by the final judgment in the Interpleader Action and by Rule 13(a)'s compulsory counterclaim provision.

D. Conclusion

In light of the foregoing, this Court grants Plaintiff's Request for Judicial Notice in Opposition to Defendant, Northern Trust of California, N.A.'s Motion to Dismiss; grants Defendant, Northern Trust of California, N.A.'s Request for Judicial Notice in Support of Motion to Dismiss; grants with prejudice and without leave to amend Defendant Northern Trust Bank of California N.A.'s Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted.

*IT IS SO ORDERED.*

DATED: JUN 25 2001

Dickran Tevrizian, Judge

United States District Court

LEXSEE 2000 U S. DIST LEXIS 22659

STATE STREET BANK & AND TRUST CO., ET AL., Plaintiff v. DENMAN TIRE CORPORATION, DENMAN OPERATING CORPORATION, THE DENMAN TIRE CORPORATION PENSION PLAN, EAGLE INDUSTRIES, INC., EAGLE INDUSTRIAL PRODUCTS CORP., THE EAGLE INDUSTRIES, INC. PENSION PLAN, Defendants; DENMAN TIRE CORPORATION, DENMAN OPERATING CORPORATION, THE DENMAN TIRE CORPORATION PENSION PLAN, Third-Party Plaintiffs v. NORTHERN TRUST COMPANY, Third-Party Defendant

CIVIL ACTION 98-12251-RWZ

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

2000 U.S. Dist. LEXIS 22659

February 14, 2000, Decided

**SUBSEQUENT HISTORY:** Judgment entered by State St. Bank & Trust Co. v. Denman Tire Corp., 2000 U.S. Dist. LEXIS 22661 (D. Mass., Mar 14, 2000)
Affirmed by State St. Bank & Trust Co. v. Denman Tire Corp, 240 F.3d 83, 2001 U.S. App. LEXIS 2398 (1st Cir. Mass., 2001)

**DISPOSITION:** Defendant Eagle Plan's motion for summary judgment, defendant EIPC's motion to dismiss crossclaim and defendant Northern Trust'a motion to dismiss third-party complaint granted. Plaintiff's motion for judgment on pleadings dismissing counterclaim granted.

**COUNSEL:** [*1] For State Street Bank & Trust CO., As Trustee, On behalf of the Trust pursuant to the Employee Benefit Plan Trust Agreement between Denman Tire Corporation and State Street Bank and Trust Company, and on behalf of the Trust pursuant to the Master Trust Agreement Between, Plaintiff: Dennis J. Kelly, Burns & Levinson, Boston, MA; Renee Inomata, Burns & Levinson, Boston, MA; Scott M. Flicker, Paul, Hastings, Janofsky & Walker, LLP, Washington, DC

For Denman Tire Corporation, Defendant: Andrew Citron, New York, NY; Anthony A. Scibelli, Scibelli, Whiteley and Stanganelli, LLP, Boston, MA; Brian E. Whiteley, Scibelli, Whiteley and Stanganelli, LLP, Boston, MA; Matthew P. Poppel, Poppel & Associates, Boston, MA.

For Denman Operating Corporation, Defendant: Andrew Citron, New York, NY; Anthony A. Scibelli, Scibelli, Whiteley and Stanganelli, LLP, Boston, MA; Brian E. Whiteley, Scibelli, Whiteley and Stanganelli, LLP, Boston, MA; Matthew P. Poppel, Poppel & Associates, Boston, MA.

For The Denman Tire Corporation Pension Plan, Defendant: Andrew Citron, New York, NY; Anthony A. Scibelli, Scibelli, Whiteley and Stanganelli, LLP, Boston, MA; Brian E. Whiteley, Scibelli, Whiteley [*2] and Stanganelli, LLP, Boston, MA; Matthew P. Poppel, Poppel & Associates, Boston, MA.

For Eagle Industries Inc, Defendant: Andrew C. Porter, Schiff Hardin & Waite, Chicago, IL; Frederick J. Sperling, Schiff Hardin & Waite, Chicago, IL; Laura Steinberg, Sullivan & Worcester LLP, Boston, MA; Natalie S Monroe, Attorney General's Office, Boston, MA; Paul E. Greenwalt, Schiff Hardin & Waite, Chicago, IL.

For Eagle Industrial Products Corporation, Defendant: Andrew C. Porter, Schiff Hardin & Waite, Chicago, IL; Frederick J. Sperling, Schiff Hardin & Waite, Chicago, IL; Laura Steinberg, Sullivan & Worcester LLP, Boston, MA; Natalie S Monroe, Attorney General's Office, Boston, MA; Paul E. Greenwalt, Schiff Hardin & Waite, Chicago, IL.

For The Eagle Industries, Inc Pension Plan, Defendant: Andrew C. Porter, Schiff Hardin & Waite, Chicago, IL; Frederick J. Sperling, Schiff Hardin & Waite, Chicago, IL; Laura Steinberg, Sullivan & Worcester LLP, Boston, MA; Natalie S Monroe, Attorney General's Office, Bos-

Case 1:04-cv-11380-WGY    Document 60-6    Filed 01/24/2006    Page 9 of 11

Page 2
2000 U.S. Dist. LEXIS 22659, *

ton, MA; Paul E. Greenwalt, Schiff Hardin & Waite, Chicago, IL.

For Denman Tire Corporation, Counter Claimant: Andrew Citron, New York, NY; Matthew P. Poppel, Poppel & Associates, [*3] Boston, MA.

For Denman Operating Corporation, Counter Claimant: Andrew Citron, New York, NY; Matthew P. Poppel, Poppel & Associates, Boston, MA.

For The Denman Tire Corporation Pension Plan, Counter Claimant: Andrew Citron, New York, NY; Matthew P. Poppel, Poppel & Associates, Boston, MA.

For State Street Bank & Trust CO., Counter Defendant: Dennis J. Kelly, Burns & Levinson, Boston, MA; Renee Inomata, Burns & Levinson, Boston, MA.

For Denman Tire Corporation, Cross Claimant: Andrew Citron, New York, NY; Matthew P. Poppel, Poppel & Associates, Boston, MA.

For Denman Operating Corporation, Cross Claimant: Andrew Citron, New York, NY; Matthew P. Poppel, Poppel & Associates, Boston, MA.

For The Denman Tire Corporation Pension Plan, Cross Claimant: Andrew Citron, New York, NY; Matthew P. Poppel, Poppel & Associates, Boston, MA.

For Eagle Industrial Products Corporation, Cross Defendant: Laura Steinberg, Sullivan & Worcester LLP, Boston, MA; Natalie S. Monroe, Attorney General's Office, Boston, MA.

For Denman Tire Corporation, Third Party Plaintiff: Andrew Citron, New York, NY; Matthew P. Poppel, Poppel & Associates, Boston, MA.

For Denman Operating [*4] Corporation, Third Party Plaintiff: Andrew Citron, New York, NY; Matthew P. Poppel, Poppel & Associates, Boston, MA.

For Northern Trust Company, ThirdParty Defendant: Judith A. Kelley, Law Office of Judith A. Kelley, Norwood, MA; Nancy G. Ross, McDermott, Will & Emery, Chicago, IL; Steven W. Kasten, McDermott, Will & Emery, Boston, MA.

JUDGES: RYA W. ZOBEL, UNITED STATES DISTRICT JUDGE.

OPINIONBY: RYA W. ZOBEL

**OPINION:**

MEMORANDUM OF DECISION

ZOBEL, D.J.

For purposes of the four motions under consideration, the following facts are undisputed or taken as true. Denman Tire Corporation was once a subsidiary of Eagle Industrial Products Corporation ("EIPC") which was, at all times relevant to this litigation, a wholly-owned subsidiary of Eagle Industries, Inc. n1 In 1996, EIPC agreed to sell Denman Tire to a venture capital group known as Pensler Capital Corporation ("Pensler Capital"). EIPC and Pensler Capital entered into a Stock Purchase Agreement on August 30, 1996. In accordance with the Stock Purchase Agreement, Pensler Capital assigned its rights under the agreement to Newco which merged with and into Denman Tire Corporation ("Denman Tire"). Denman Tire and Denman Operating Corporation [*5] were the successors by assignment to the rights of Pensler Capital. The sale of Denman Tire Corporation was fully consummated by February 5, 1997.

---

n1 In December of 1997 EIPC was dissolved and its assets distributed to Eagle Industries, Inc.

---

Prior to the sale, EIPC and Eagle Industries, Inc. had established an employee pension plan known as the Eagle Industries, Inc. Pension Plan ("Eagle Plan"), and Denman Tire Corporation had established a separate and independent employee pension plan known as the Denman Tire Corporation Pension Plan ("Denman Plan"). The Northern Trust Company ("Northern Trust") served as trustee of a master trust holding assets belonging to each plan.

In or about December of 1995, Eagle Industries directed Northern Trust to transfer the assets of both plans to State Street Bank and Trust Company ("State Street"). While attempting the transfer, Northern Trust mistakenly allocated Eagle Plan assets to the Denman Plan on Plan Accounting Reports and, through these reports, advised Denman Tire, [*6] Denman Operating Corporation and the Denman Plan (collectively, the "Denman Entities") that the Denman Plan owned the misallocated assets ("Disputed Assets"). Beginning in or about May of 1996, State Street took over as trustee of the master trust and adopted Northern Trust's incorrect allocation of assets in its own Plan Accounting Reports. The misallocation of assets was discovered by an independent accountant during an annual audit of the Eagle Plan in July 1997.

Denman Tire and Denman Operating Corporation claim ownership of the misallocated assets on their own

Case 1:04-cv-11380-WGY   Document 60-6   Filed 01/24/2006   Page 10 of 11

Page 3
2000 U.S. Dist. LEXIS 22659, *

tries similarly claims ownership of the assets on behalf of EIPC and the Eagle Plan. To resolve these competing claims, State Street, the trustee for the Denman and Eagle Plans, instituted this interpleader action.

As successors to Pensler Capital's rights, Denman Tire and Denman Operating Corporation claim that Pensler overpaid EIPC to acquire Denman Tire Corporation because Pensler negotiated the acquisition in reliance on Northern Trust's mistaken allocation, as reflected in State Street's Plan Accounting Reports. Thus, the Denman Entities bring a third-party complaint [*7] against Northern Trust for breach of fiduciary duty, a counterclaim against State Street for breach of fiduciary duty, and a cross-claim against EIPC for breach of a warranty in the Stock Purchase Agreement.

**Eagle Plan's Motion for Summary Judgment**

Eagle Plan moves for summary judgment on State Street's interpleader complaint and on the Denman Entities' counterclaim for a declaratory judgment that the Denman Plan owns the Disputed Assets. It is undisputed that an accounting mistake in 1996 caused $ 602,462.44 belonging to the Eagle Plan to be misallocated to the Denman Plan. At issue is the correct placement of these funds. As funds in a pension plan belong only to the plan participants, the misallocated Eagle Plan funds must be returned to the Eagle Plan. Accordingly, Eagle Plan's summary judgment motion is allowed.

EIPC Motion to Dismiss Cross-Claim

The cross-claim brought by Denman Tire and Denman Operating Corporation alleges that EIPC failed to administer the Denman Plan in accordance with ERISA and thereby breached a warranty in the Stock Purchase Agreement with Pensler Capital. Under that agreement, claims for breach of warranty must be asserted [*8] within two years after the closing of the deal. Although Denman Tire unquestionably gave notice of its claim within the two-year period, it failed to assert the claim for breach of warranty until January 7, 1999, well beyond October 1, 1998, the second anniversary of the closing. Thus, EIPC's motion to dismiss is allowed because the cross-claim by Denman Tire and Denman Operating Corporation is time-barred.

Northern Trust's Motion to Dismiss Third-Party Complaint

The Denman Entities' third-party complaint against Northern Trust asserts that the latter breached its fiduciary duties under ERISA when it represented in Plan Accounting Reports that the Denman Plan owned assets that actually belonged to the Eagle Plan. Northern Trusts's motion to dismiss this complaint is allowed for the following reasons.

First, Northern Trust had no relationship, fiduciary or otherwise, with Pensler Capital when it prepared the Plan Accounting Reports. As such, it had no fiduciary duty to Pensler Capital.

Second, Northern Trust was not acting as a fiduciary on behalf of any of the Denman Entities when it prepared the Plan Accounting Reports. It was engaged merely in record keeping and [*9] reporting functions and did not have the discretionary authority which is the *sine qua non* of fiduciary duty under ERISA. The Trust Agreement governing Northern Trust in its role as trustee of the master trust explicitly recognized that Northern Trust did not exercise discretionary authority when performing certain administrative functions for the Denman Plan, including reporting, record keeping, and bookkeeping functions. (Jepson Corporation Master Trust for Retirement Trusts with the Northern Trust Company, § 2.7).

Finally, ERISA limits the remedy for a breach of fiduciary duty to recovery of losses suffered by the plan, but no harm to the Denman Plan has been alleged.

**State Street's Motion to Dismiss Counterclaim**

In their counterclaim, the Denman Entities allege that State Street violated its fiduciary, contractual and statutory duties both when it prepared Plan Accounting Reports that reflected Northern Trust's mistaken allocation of assets, and when it reported that the Disputed Assets were part of the Denman Plan. State Street moves under F.R.C.P. 12(c) for judgment on the pleadings.

The Denman Entities cannot bring a claim against State Street for breach [*10] of fiduciary duty. Once again, ERISA limits the remedy for a breach of fiduciary duty to relief for losses suffered by the plan, but no harm to the Denman Plan has been alleged.

Prior to Pensler Capital's acquisition of Denman Tire Corporation, State Street Bank owed Pensler Capital no fiduciary, contractual, or statutory duties and hence could not have breached those duties. Denman Tire has no claim against State Street for conduct that occurred prior to the acquisition.

After the acquisition, State Street became the Trustee of the Denman Plan pursuant to the February 28, 1997 Employee Benefit Plan Trust Agreement ("Denman Trust") with Denman Tire. However, State Street did not become a guarantor against losses from mistakes made by a predecessor trustee. In fact, the trust agreement expressly provides that "the Trustee need not inquire into the source of any money or property transferred to it nor into the authority or right of the transferor of such money

Trustee." (Denman Trust, § 1.1). Further, the agreement states: "the Trustee shall have no liability for the acts or omissions of any predecessors or successors in office. [*11] " (Denman Trust § 14.14). Thus State Street did not breach its contractual duties.

Finally, State Street breached no statutory duty as it was not acting as a fiduciary on behalf of any of the Denman Entities when it prepared the Plan Accounting Reports. Like Northern Trust, State Street was engaged merely in record keeping and reporting functions and did not have the discretionary authority to warrant categorization as a fiduciary under ERISA. Accordingly, State Street's motion for judgment on the pleadings is granted.

Judgment may be entered in accordance with this opinion.

RYA W. ZOBEL

UNITED STATES DISTRICT JUDGE