IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PAMELA TITTLE, on behalf of herself and a class of persons similarly situated, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. H-01-3913 and Consolidated Cases |
| ENRON CORP., Oregon Corporation, et al., | ) ) | |
| Defendants. | ) ) ) | |

---

**AMENDED BRIEF OF THE SECRETARY OF LABOR AS AMICUS CURIAE OPPOSING THE MOTIONS TO DISMISS**

---

EUGENE SCALIA
Solicitor of Labor

TIMOTHY D. HAUSER
Associate Solicitor
Plan Benefits Security Division

KAREN L. HANDORF
Deputy Associate Solicitor
Plan Benefits Security Division

ELIZABETH HOPKINS
Counsel for Appellate and
Special Litigation
Plan Benefits Security Division

ROBIN SPRINGBERG PARRY
Trial Attorney

G. WILLIAM SCOTT
Senior Trial Attorney

MARK FLYNN
Senior Appellate Attorney
Special Appellate and Supreme
Court Litigation Division

U.S. Department of Labor
Office of the Solicitor
Plan Benefits Security Division
P.O. Box 1914
Washington, D.C. 20013
Phone: (202) 693-5614
Fax:    (202) 693-5610

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................1

ARGUMENT.................................................................................................................2

I.    STANDARD OF REVIEW ...............................................................................2

II.   THE COMPLAINT ADEQUATELY ALLEGES THAT THE
      ADMINISTRATIVE COMMITTEE MEMBERS WERE FIDUCIARIES
      RESPONSIBLE FOR MANAGING PLAN ASSETS AND THAT ENRON, THE
      COMPENSATION COMMITTEE, AND LAY WERE FIDUCIARIES
      RESPONSIBLE FOR MONITORING THE ADMINISTRATIVE
      COMMITTEE.....................................................................................................3

      A.    ERISA Defines Fiduciaries in Functional Terms…………………………3

      B.    The Plaintiffs Have Properly Alleged that the Members of the
            Administrative Committee, the Compensation Committee, Ken Lay and
            Enron were Fiduciaries Without Regard to Their Corporate Status … … .5

III.  PLAINTIFFS ADEQUATELY ALLEGE THAT ENRON, LAY
      AND THE COMPENSATION COMMITTEE BREACHED THEIR
      FIDUCIARY DUTIES BY FAILING TO MONITOR THE ADMINISTRATIVE
      COMMITTEE.....................................................................................................8

      A.    The Plaintiffs have Sufficiently Alleged Fiduciary Liability.......................8

      B.    Plaintiff have Sufficiently Alleged Co-Fiduciary Liability for the Failure
            to Monitor ...................................................................................................13

IV.   PLAINTIFFS SUFFICIENTLY ALLEGE THAT THE ADMINISTRATIVE
      COMMITTEE MEMBERS, AS WELL AS ENRON, LAY AND THE
      COMPENSATION COMMITTEE, BREACHED THEIR FIDUCIARY DUTIES
      TO PROTECT THE PLANS FROM THE LOSSES CAUSED BY ENRON'S
      PERILOUS FINANCIAL CONDITION AND FROM INACCURATE AND
      MISLEADING INFORMATION ABOUT ENRON'S FINANCIAL
      PERFORMANCE ..............................................................................................15

      A.    Plan Fiduciaries Have a Duty Not to Mislead Plan Participants and to
            Correct Misleading Information from others ..............................................15

      B.    Under Fifth Circuit Precedent, the Fiduciaries had a Duty to Disclose
            Information if Necessary for Participants to Protect Their Retirement
            Benefits.......................................................................................................18

C.     The Administrative Committee Members Could
Have Taken a Number of Steps, Consistent With Their Duties Under
Federal Securities Laws, That May Have Protected Participants In
Accordance With the Fiduciary Provisions of ERISA..............................24

V.    PLAINTIFFS' CLAIMS THAT DEFENDANTS IMPRUDENTLY ACQUIRED
AND RETAINED ENRON STOCK FOR THE PLANS ARE NOT DEFEATED
BY PLAN TERMS THAT PROVIDE FOR INVESTMENT IN ENRON
STOCK .........................................................................................................29

A.     Defendants May Be Held Liable for Imprudently
and Disloyally Acquiring and Retaining Enron Stock for the ESOP ........30

B.     Defendants May Be Held Liable for Acquiring
and Retaining Enron Stock in the Savings Plan.......................................33

1.     The Savings Plan Fiduciaries Were Not Required Either by the
Terms of the Savings Plan or Under ERISA to Make Enron Stock
an Investment Alternative for Employee Contributions ...............33

2.     ERISA § 404(c) Does Not Relieve the Fiduciaries of
Responsibility for the Investment in Enron Stock ........................35

VI.   UNDER FIFTH CIRCUIT PRECEDENT, PLAINTIFFS ARE NOT
REQUIRED TO PROVE THAT DEFENDANTS' FIDUCIARY BREACHES
CAUSED THE PLANS' LOSSES; DEFENDANTS HAVE THE BURDEN
OF PROOF ON CAUSATION..............................................................................38

VII.  THE COMPLAINT STATES A CLAIM THAT ADMINISTRATIVE
COMMITTEE MEMBERS, LAY, AND NORTHERN TRUST BREACHED
THEIR FIDUCIARY DUTIES TO THE ENRON SAVINGS PLAN WITH
REGARD TO THE LOCKDOWN PERIOD.........................................................39

A.     Plaintiffs Have Alleged Sufficient Facts for
Purposes of Establishing Article III Standing to
Challenge the Defendants' Conduct in Relation to
the Lockdown Period ................................................................................39

B.     The Complaint Sufficiently Alleges that
Northern Trust was a Fiduciary and that it had Discretionary
Control With Respect to the Lockdown ...................................................44

C.     Even if Northern Trust was Given Written
Instructions Concerning the Lockdown, the
Complaint States a Claim for Relief........................................................47

VIII.    PLAINTIFFS' OFFSET CLAIM IS A CLAIM FOR
EQUITABLE RELIEF UNDER § 502(a)(3)........................................................50

A.    Monetary Relief is Available Against the Administrative
Committee Members Under § 502(a)(3)....................................................51

B.    There is no Bar to Bringing Both § 502(a)(3)
and § 502(a)(1)(B) Claims in the Same Action
when § 502(a)(1)(B) Cannot Provide Complete
Relief…………….....................................................................................53

IX.    PLAINTIFFS SUFFICIENTLY ALLEGED A CLAIM AGAINST
ANDERSEN FOR KNOWING PARTICIPATION IN A FIDUCIARY
BREACH……….........................................................................................56

CONCLUSION………………........................................................................................59

# TABLE OF AUTHORITIES

## CASES

<u>Allison</u> v. <u>Bank One-Denver</u>,
    289 F.3d 1223 (10th Cir. 2002)................................................................36

<u>American Federal of Union Local 102 Health & Welfare Fund</u> v. <u>Equitable Life</u>
    <u>Assurance Society of the U.S.</u>,
    841 F. 2d 658 ........................................................................................4, 14

<u>Anweiler</u> v. <u>American Elec. Power Serv. Corp.</u>,
    3 F.3d 986 (7th Cir. 1993)....................................................................19

<u>Arakelian</u> v. <u>National Western Life Ins. Co.</u>,
    680 F. Supp. 400 (D.D.C. 1987) ..........................................................32

<u>Atwood</u> v. <u>Burlington Indus. Equity, Inc.</u>,
    1994 WL. 698314 (M.D.N.C. Aug. 3, 1994) ........................................10

<u>Bannistor</u> v. <u>Ullman</u>,
    287 F.3d 394 (5th Cir. April 2, 2002) ..................................................5, 6

<u>Barker</u> v. <u>American Mobil Power Corp.</u>,
    64 F.3d 1397 (9th Cir. 1995)................................................................19

<u>Becker</u> v. <u>Eastman Kodak Co.</u>,
    120 F.3d 5 (2nd Cir. 1997)....................................................................15

<u>Bell</u> v. <u>Exec. Committee of the United Food & Commercial Workers Pension</u>
    <u>Plan for Employees</u>,
    191 F. Supp. 2d 10 (D.D.C. Jan. 30, 2002)..........................................5

<u>Benjamin</u> v. <u>Morris</u>,
    No. 97 C6714, 1998 WL 299434 (N.D. Ill. 1998) ...............................55

<u>Bennett</u> v. <u>Spear</u>,
    520 U.S. 154 (1997) .............................................................................41

<u>Berlin</u> v. <u>Michigan Bell Telephone Co.</u>,
    858 F.2d 1154 (6th Cir. 1988)..............................................................15

<u>Bixler</u> v. <u>Central Pennsylvania Teamsters Health & Welfare Fund</u>,
    12 F.3d 1292 (3rd Cir. 1993)...........................................................19, 20

Boudeloche v. Grow Chemical Coatings Corp.,
    728 F.2d 759 (5th Cir.1984)...............................................................................3

Brock v. Self,
    632 F. Supp. 1509 (W.D. La. 1986)...................................................................7

Bussian v. RJR Nabisco,
    223 F.3d 286 (5th Cir. 2000)...........................................................................2, 3

Canale v. Yegan,
    789 F. Supp. 147 (D.N.J. 1992) .......................................................................31

Central States, Southeast and Southwest Areas Pension Fund v. Central Transport
    Inc.,
    472 U.S. 559 (1985) ...............................................................................4, 17, 22, 31

Central Trust Co. v. American Avents Corp.,
    771 F. Supp. 871 (S.D. Ohio 1989)..................................................................31

Chiarelli v. U.S.,
    445 U.S. 222 (1980) .........................................................................................26

Chicago Housing Authority v. J.A. Hannah Inv. Advisory Services, Inc.
    1996 WL 328022...............................................................................................13

Clark v. Amoco Production Co.,
    794 F.2d 967 (5th Cir. 1986)...........................................................................2, 3

Clinton v. City of New York,
    524 U.S. 417 (1998) .........................................................................................43

Confer v. Custom Engineering Co.,
    952 F.2d 34 (3rd Cir. 1991)...............................................................................5

Conley v. Gibson,
    355 U.S. 41 (1957) .............................................................................................2

Coyne & Delany Co. v. Selman,
    98 F.3d 1457 (4th Cir. 1996)...........................................................................8, 9

Davis v. Torvick,
    1996 WL. 266127 (N.D. Cal. 1996)..................................................................38

Department of Commerce v. United States House of Representatives,
    525 U.S. 316 (1999) .........................................................................................43

<u>Dirk</u> v. <u>SEC</u>,
    7463 U.S. 646 (1983) ...........................................................................................26, 28

<u>Dixon</u> v. <u>Northwestern National Bank</u>,
    297 F. Supp. 485 (D. Minn. 1969)...........................................................................52

<u>Donovan</u> v. <u>Bierwirth</u>,
    680 F.2d 263 (2nd Cir.), cert. denied, 459 U.S. 1069 (1982)...........................4

<u>Donovan</u> v. <u>Cunningham</u>,
    716 F.2d 1455 (5th Cir. 1983)...................................................................................31

<u>Eaves</u> v. <u>Penn</u>,
    587 F.2d 453 (10th Cir. 1978)...................................................................................31

<u>Eddy</u> v. <u>Colonial Life Insurance Co. of America</u>,
    919 F.2d 747 (D.C. Cir. 1990) .................................................................................20

<u>Ehlmann</u> v. <u>Kaiser Foundation Health Plan</u>,
    20 F. Supp. 2d 1008 (N.D. Tex. 1998).....................................................................38

<u>Ehlmann</u> v. <u>Kaiser Foundation Health Plan</u>,
    198 F.3d 552 (5th Cir. 2000).....................................................................................22

<u>Ershick</u> v. <u>Greb X-Ray</u>,
    705 F. Supp. 1482 (D. Kan. 1989)............................................................................31

<u>Faircloth</u> v. <u>Lundy</u>,
    91 F.3d. 648 (4th Cir. 1986) cert. denied, 519 U.S. 1077..............................17

<u>Financial Insts. Ret. Fund</u> v. <u>Office of Thrift Supervision</u>,
    964 F.2d 142 (2nd Cir. 1992)....................................................................................43

<u>Fink</u> v. <u>National Savings Bank and Trust Co.</u>,
    772 F.2d 951 (D.C. Cir. 1985) .................................................................................31

<u>FirstTier</u> v. <u>Zeller</u>,
    16 F.3d 907 (8th Cir. 1994)........................................................................................49

<u>Fischer</u> v. <u>Philadelphia Electric Co.</u>,
    994 F.2d 130 (3rd Cir.), <u>cert. denied</u>, 510 U.S. 1020 (1993) .......................15

<u>Fotta</u> v. <u>Trustees of the United Mine Workers of America</u>,
    1998 WL. 884503 (3d. Cir. 1998) (allowing § 502(a)(3)) .............................55

Franklin v. First Union,
     84 F. Supp. 2d 720 (E.D. Va. 2000)...........................................................17

Freund v. Marshall & Ilsley Bank,
     485 F. Supp. 629 (W.D. Wisc. 1979)............................................................7

Fujikawa v. Kim,
     871 F. 2d 1427 (D.N.J. 1992).....................................................................38

Glaziers and Glassworkers Union Local No. 252 Annuity Fund v. Newbridge
     Security, Inc.,
     93 F.3d 1171 (3rd Cir. 1996)...........................................................10, 21, 22

Globe Woolen Co. v. Utica Gas & Electric Co.,
     224 N.Y. 483 (N.Y. 1918)......................................................................17, 18

Gollust v. Mendell,
     501 U.S. 115 (1991) ...............................................................................43, 44

Great-West Life & Annuity Insurance Co. v. Knudson,
     122 S. Ct. 708 (2002) .............................................................................51, 59

Griggs v. E.I. DuPont de Nemours & Co.,
     237 F.3d 371 (4th Cir. 2001)...................................................................18, 19

Harley v. Minnesota Mining & Manufacturing Co.,
     284 F.3d  901 (8th Cir. 2002)....................................................................42

Harris Trust and Savings Bank  v. Salomon Smith Barney, Inc.,
     530 U.S. 238 (2000) ...............................................................................57, 59

Harte v. Bethlehem Steel Corp.,
     214 F.3d 446 (3rd Cir. 2000)....................................................................22

Henry v. Frontier Industries, Inc.,
     Nos. 87-3879 and 87-3898, 1988 WL 132577 (9th Cir. 1988)....................12

Herman v. NationsBank Trust Company (Georgia),
     126 F.3d 1354 (11th Cir. 1997)..............................................................47, 49

Howe v. Varity Corp,
     36 F. 3d 746 (8th Cir.)...............................................................................19

Hudson v. General Dynamics Corp.,
     118 F. Supp. 2d 226 (D. Conn. 2000)......................................................17

In re Cady, Roberts & Co.,
    40 S.E.C. 907, 1961 WL 60638 (Nov. 8, 1961).....................................................25, 26

In re Ikon Office Solutions, Inc. Sec. Litig.,
    86 F. Supp. 2d 481 (E.D. Pa. 2000) ...............................................................32

In re Unisys Corp. Retiree Medical Ben. ERISA Litigation,
    57 F.3d 1235 (3rd Cir. 1995)..........................................................................22

In re Unisys Sav. Plan Litigation,
    74 F.3d 420 (3rd Cir. 1996)............................................................................36

Jackson v. Truck Driver's Union Local 42 Health and Welfare Fund,
    33 F. Supp. 1143 (D. Mass. 1996) ................................................................13

Jefferson National Bank v. Central National Bank of Chicago,
    700 F.2d 1143 (7th Cir. 1983)........................................................................52

Jones v. Greninger,
    188 F.3d 322 (5th Cir. 1999)..........................................................................59

Jordan v. Federal Exp. Corp.,
    116 F.3d 1005 (3rd Cir. 1997)........................................................................22

Kayes v. Pacific Lumber,
    51 F.3d 1449 (9th Cir. 1995)............................................................................6

Koch v. Dwyer,
    No. 98 Civ. 5519 RPF, 1999 WL 528181 (S.D.N.Y 1999) ...................................47, 48

Kramer v. Smith Barney,
    80 F.3d 1080 (5th Cir. 1996)............................................................................5

Kuper v. Iovenko,
    66 F.3d 1447 (6th Cir. 1995)..............................................................31, 33, 38

Laborer's National Pension Fund v. NT Quantitative Advisors, Inc.,
    173 F.3d 313 (5th Cir. 1999)..........................................................................32

Landry v. Air Line Pilots Ass'n Intern. AFL-CIO,
    901 F.2d 404 (5th Cir. 1990)..........................................................................14

Leigh v. Engle,
    727 F.2d 113 (7th Cir. 1984)............................................4, 7, 8, 9, 10, 38

Liss v. Smith,
991 F. Supp. 278 (S.D.N.Y. 1998) ...............................................................8, 9, 10, 13

Lujan v. Defenders of Wildlife,
504 U.S. 555 (1992) ...................................................................................39

Maniace v. Commerce Bank of Kansas City, N.A.,
40 F.3d 264 (8th Cir. 1994), cert. denied, 514 U.S. 111 (1995) ................................49

Martin v. Feilen,
965 F.2d 660 (8th Cir. 1992)................................................................9, 38

Martin v. Harline,
15 E.B.C.1138 (D. Utah 1992)...........................................................10, 13

Martin v. Schwab,
15 E.B.C. 2135, 1992 WL 296531, 4 (W.D. Mo. 1992).............................................6, 8

McCall v. Burlington Northern/Santa Fe Co.,
237 F.3d 506 (5th Cir. 2000), cert. denied, 122 S. Ct. 57 (2001) ...............................56

McDonald v. Provident Indemnity Life Ins. Co.,
60 F.3d 234 (5th Cir. 1995), cert. denied, 516 U.S. 1174 (1996) ..............18, 19, 38, 42

McDonnell Douglas Corp. v. Green,
411 U.S. 792 (1973) ...................................................................................41

McGarry v. Eastern Air. Lines, Inc.,
No. 86-2467-CV-RYSKAMP, 1987 WL 13900 (S.D. Fla. 1987).............................58

McNeese v. Health Plan Marketing, Inc.,
647 F. Supp. 981 (N.D. Ala. 1986)...........................................................7

Mehling v. New York Life Ins. Co.,
163 F. Supp. 2d 502 (E.D. Pa. 2001) .........................................................9

Mertens v. Hewitt Associates,
508 U.S. 248 (1993) ...................................................................................57

Miniat v. Globe Life Ins. Group, Inc.,
805 F.2d 732 (7th Cir. 1987)......................................................................8

Moench v. Robertson,
62 F.3d 553 (3rd Cir. 1995), cert. denied, 516 U.S. 1115 (1996) ....................31, 32, 33

Mullins v. Pfizer, Inc.,
   899 F. Supp. 69 (D. Conn. 1995) ..................................................................18

Musmeci v. Schegmann Gaint Super Markets,
   159 F. Supp. 2d 329 (E.D. La. 2001) ...........................................................7

National Org. for Women, Inc. v. Scheidler,
   510 U.S. 249 (1994) ....................................................................................41

Nobile v. Pension Committee of Pension Plan for Employees of New Rochelle
   Hosp.,
   611 F. Supp. 725 (S.D.N.Y. 1985) ..............................................................52

O'Rourke v. Pitney Bowes,
   1996 WL 539848, 2 (S.D.N.Y. 1996) ...........................................................55

Ostler v. OCE-USA,
   2001 WL 119183 (N.D. Ill. Nov. 4, 2001) ...................................................51

Ream v. Frey,
   107 F.3d 147 (3rd Cir. 1997) ........................................................................52

Reich v. Lancaster,
   55 F.3d 1034 (5th Cir. 1995) ..............................................................7, 44, 58

Rhorer v. Raytheon Engineers,
   181 F.3d 639 (5th Cir. 1999) ........................................................................56

Sandoval v. Simons,
   622 F. Supp. 1174 (C.D. Ill. 1985) ...............................................................12

Secretary v. Gilley,
   209 F.2d 877 (6th Cir. 2002) ........................................................................38

Scheuer v. Rhodes,
   416 U.S. 232 (1974) ......................................................................................3

Silverman v. Mutual Benefit Life Ins. Co.,
   138 F.3d 98 (2nd Cir. 1998), cert. denied, 525 U.S. 876 (1998) .................38

Simeon v. Mount Sinai Medical Center,
   150 F. Supp. 2d 598 (S.D.N.Y. 2001) ..........................................................15

Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises,
   Inc.,

793 F.2d 1456 (5th Cir. 1986).............................................................3, 8, 11

Sosa v. Coleman,
    646 F.2d 991 (5th Cir.1981).........................................................................2, 3

Swierkiewicz v. Sorema N.A.,
    122 S. Ct. 992 (2002).........................................................................2, 41, 42

Tolson v. Avondale,
    141 F.3d 601 (5th Cir. 1998)................................................................56

United States v. Uvalde Consolidated Independent School District,
    625 F.2d 547 (5th Cir. 1980), cert. denied, 451 U.S. 1002 (1981) .............................2

Varity v. Howe,
    516 U.S. 489 (1996) ...................................................15, 22, 53, 55

Vartanian v. Monsanto Co.,
    880 F. Supp. 63 (D. Mass. 1995) ...............................................53

Watson v. Deaconess Waltham Hosp.,
    2002 WL 1789765 (1st Cir. 2002) .................................................19

Whitfield v. Cohen,
    682 F. Supp. 188 ...............................................................10

Whitfield v. Lindemann,
    853 F.2d 1298 (5th Cir. 1988)...................................................58

Whitfield v. Tomasso,
    682 F. Supp. 1287 (E.D.N.Y. 1988)..............................................10

Yeseta v. Baima,
    837 F.2d 380 (9th Cir. 1988).......................................................7

## STATUTES

15 U.S.C. 78j(b) .............................................................................22
15 U.S.C. 77q(a), § 10(b)..................................................................22
29 C.F.R. § 2550.404c-1(b)(2)(B)(1)......................................................35
29 C.F.R. § 2550.404c-1(d)(2)(E).........................................................36
29 U.S.C. § 1002...........................................................................7
29 U.S.C. § 1103(a)........................................................................47
29 U.S.C. § 1104(a)(1)(A) and.............................................................3
29 U.S.C. § 1104(a)(1)...................................................................4, 12
29 U.S.C. § 1104............................................................................18

29 U.S.C. § 1132(a)(1) ..........................................................................53
29 U.S.C. §§ 1132(a)(1)(B) and 1132(a) ...................................................55
29 U.S.C. § 1002(21) ...............................................................................8
29 U.S.C. § 1103 ...................................................................................47
29 U.S.C. § 1104(a) .................................................................................3
29 U.S.C. 1104(a)(1) ..........................................................................30, 31
29 U.S.C. § 1105(a) ...............................................................................15
29 U.S.C. § 1106 ...................................................................................57
29 U.S.C. 1001-1169 ...............................................................................1
17 C.F.R. 240.10b5-1 ............................................................................25
17 C.F.R. 240.10b-5 ........................................................................22, 23
17 C.F.R. 240.10b5-1(a) ........................................................................23
29 C.F.R. § 2509.75-8 at D-4 ..............................................................5, 6
29 C.F.R. § 2550.404c-1 ........................................................................32

## MISCELLANEOUS

57 Fed.Reg. 46,922 ...............................................................................37
Fed. R. Civ. P. 8(a) .............................................................................2, 3
Fed. R. Civ. P. 12(b)(6) ...........................................................................2
Fed. R. Civ. P. 56(e) .............................................................................37
H.R. Rep., No. 93-533, p ........................................................................4
S. Rep. No. 93-127, p ............................................................................4
1 D. Dobbs, Law of Remedies § 4.3(2), at 590-591 (2nd ed. 1993) ...............55
IIA Scott on Trusts § 185, at pp ........................................................46,49
Restatement (Second) of Trusts § 173, cmt. c (1959), ............................12, 17
Restatement (Second) of Trusts § 198(1) (1959) .......................................48
Restatement (Second) of Trusts, § 205, at 458 cmt. a ...............................48
Restatement (Second) of Trusts § 227 comment g .....................................30
76 Am. Jur. 2d Trusts § 667 (2002) .........................................................49
AC Mot. to Dismiss at 3, 21-23, 29 ........................................................21
AC Mot. to Dismiss at pp. 25-29 ............................................................34
AC Reply to Pls. Opp. to Mot. to Dismiss 20 n.21 ...................................38
 Am. Fed. of Unions Local 102 Health ¶ Welfare .......................................4
Olson Mot. to Dismiss at 12 ...........................................................21, 22
U.S. Code Cong. and Admin. News 1974, 4639, 4865 ..................................4
Trust Agreement Art. 1.1 .......................................................................31
S.E.C. Rule 10b ...................................................................................28

**BRIEF OF THE SECRETARY OF LABOR AS AMICUS CURIAE
OPPOSING THE MOTIONS TO DISMISS**

INTRODUCTION

This case was brought by Enron workers who allege that their retirement accounts lost millions of dollars when Enron collapsed in a wave of accounting scandals. The Enron workers were participants in three employee benefit plans sponsored by Enron: (1) the Enron Corp. Savings Plan; (2) the Enron Corp. Employee Stock Ownership Plan (ESOP); and the Cash Balance Plan. They allege that the Defendants were fiduciaries of these employee benefit plans and that, rather than acting prudently and solely in the interest of the plans' participants and beneficiaries, the fiduciaries did nothing to protect the plans from suffering huge losses—even though they knew or should have known that the plans were paying too much for Enron stock and that financial misstatements gravely threatened the integrity of Enron's retirement promises.

The Defendants have moved to dismiss the Complaint, arguing that there is no set of facts that the Plaintiffs have alleged that would make them liable for the losses suffered by the plans and the retirement accounts of these workers. Essentially, they argue that the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001-1169, a statute designed to protect the financial stability of employee benefit plans and the retirement benefits of American workers, imposed no obligation on them as fiduciaries to do anything even if they knew or should have known that it was not in the best interest of the plans or their participants to continue to buy and hold Enron stock.

The Secretary files this amicus brief expressing her view that, based on the allegations in the Complaint, ERISA required the fiduciaries to take action to protect the interests of the plans, their participants and beneficiaries, and that ERISA provides remedies for the failure to have done so. The allegations of the Complaint are sufficient to withstand motions to dismiss, and the

Plaintiffs should be allowed to conduct discovery to prove those allegations.[1]  ERISA's fiduciary obligations are among the "highest known to the law."  Bussian v. RJR Nabisco, 223 F.3d 235, 294 (5th Cir. 2000).  They do not permit fiduciaries to ignore grave risks to plan assets, stand idly by while participants' retirement security is destroyed, and then blithely assert that they had no responsibility for the resulting harm.

ARGUMENT

I.    STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is "viewed with disfavor, and is rarely granted" because of the liberal pleading standard prescribed by Fed. R. Civ. P. 8(a).  Sosa v. Coleman, 646 F.2d 991, 993 (5th Cir. 1981).  Rule 8(a)'s simplified pleading standard "relies on liberal discovery rules and summary judgment motions to define disputed facts and to dispose of unmeritorious claims."  Swierkiewicz v. Sorema, 534 U.S. 506, 508 (2002).  Defendants face a heavy burden in bringing a motion to dismiss for failure to state a claim.  A "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

To qualify for dismissal under Rule 12(b)(6), a complaint must on its face show a bar to relief.  United States v. Uvalde Consolid. Indep. School Dist., 625 F.2d 547, 549 (5th Cir. 1980), cert. denied, 451 U.S. 1002 (1981).  Rule 12(b)(6) is not a substitute for a request for a more definite pleading within the meaning of Fed. R. Civ. P. 8.  Clark v. Amoco Prod. Co., 794 F.2d 967, 970 (5th Cir. 1986).  Nor is a Rule 12(b)(6) dismissal warranted even if the district court

---

[1] The Secretary does not address all of the arguments raised by the motions to dismiss.  The decision to address some, but not all arguments, should not be construed as reflecting on the merits of the arguments that are not addressed.

believes a plaintiff is unlikely to prevail on the merits.  Clark, 794 F.2d at 970 (citing Scheuer v.

Rhodes, 416 U.S. 232, 236 (1974)).  Even if it seems "almost a certainty to the court that the

facts alleged cannot be proved to support the legal claim," the claim may not be dismissed so

long as the complaint states a claim.  Boudeloche v. Grow Chemical Coatings Corp., 728 F.2d

759, 762 (5th Cir. 1984).  This is because it is the "well-established policy of the federal rules that

the plaintiff is to be given every opportunity to state a claim. . . .  [A] court ordinarily should not

dismiss the complaint except after affording every opportunity [for] the plaintiff to state a claim

upon which relief [can] be granted."  Sosa, 646 F.2d at 993 (citations omitted).

II.     THE COMPLAINT ADEQUATELY ALLEGES THAT THE ADMINISTRATIVE
        COMMITTEE MEMBERS WERE FIDUCIARIES RESPONSIBLE FOR MANAGING
        PLAN ASSETS AND THAT ENRON, THE COMPENSATION COMMITTEE, AND
        LAY WERE FIDUCIARIES RESPONSIBLE FOR MONITORING THE
        ADMINISTRATIVE COMMITTEE

        A.      ERISA Defines Fiduciaries in Functional Terms

        ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), imposes broad obligations on fiduciaries for

the protection of participants and beneficiaries.   ERISA §§ 404(a)(1)(A) and (B) provide:

        [A] fiduciary shall discharge his duties with respect to a plan solely in the interest
        of the participant and beneficiaries and:
        (A) for the exclusive purpose of:

                (i) providing benefits to participants and their beneficiaries; and
                (ii) defraying reasonable expenses of administering the plan;

        (B) with the care, skill, prudence, and diligence under the circumstances then
        prevailing that a prudent man acting in a like capacity and familiar with such
        matters would use in the conduct of an enterprise of a like character and with like
        aims.

29 U.S.C. § 1104(a)(1)(A) and (B).  These fiduciary obligations, known as the "duty of loyalty"

and the "duty of care," are among the "highest known to the law."  See, e.g., Bussian, 223 F.3d at

294; Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters., Inc., 793

F.2d 1456, 1468 (5th Cir. 1986), <u>cert</u>. <u>denied</u>, 479 U.S. 1089 (1987).  The "duty of loyalty" requires fiduciaries to act with "complete and undivided loyalty to the beneficiaries of the trust" and with an "eye single to the interests of the participants and beneficiaries."  <u>See</u>, <u>e.g.</u>, <u>Leigh v. Engle</u>, 727 F.2d 113, 123 (7th Cir. 1984), <u>cert</u>. <u>denied</u> <u>sub</u> <u>nom.</u>, <u>Engle v. Estate of Johnson</u>, 479 U.S. 1078 (1989); <u>Donovan v. Bierwirth</u>, 680 F.2d 263, 271 (2nd Cir.), <u>cert</u>. <u>denied</u>, 459 U.S. 1069 (1982).  ERISA's "duty of care" requires each fiduciary to act with the "care, skill, prudence, and diligence under the circumstances then prevailing, that a prudent man acting in a like capacity and familiar with such matters" would employ.  29 U.S.C. § 1104(a)(1)(B).  These duties originate in the common law of trusts, to which Congress specifically looked when legislating ERISA's fiduciary duties.  <u>Central States, Southeast & Southwest Areas Pension Fund v. Central Transp. Inc.</u>, 472 U.S. 559, 570 (1985), <u>citing</u> S. Rep. No. 93-127, p. 29 (1973), 1974 U.S.C.C.A.N. (88 Stat. 832) 4639, 4865 ("The fiduciary responsibility section, in essence, codifies and makes applicable to these fiduciaries certain principles developed in the evolution of the law of trusts."); H.R. Rep., No. 93-533, p. 11 (1973), 1974 U.S.C.C.A.N. (88 Stat. 832) 4649 (identical language).

ERISA provides, in pertinent part, that a person is a fiduciary "to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."  ERISA § 3(21)(A)(i) and (iii).  The term "fiduciary" is liberally construed in keeping with the remedial purpose of ERISA.  <u>American Fed. of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Soc'y of the U.S.</u>, 841 F.2d 658, 662 (5th Cir. 1988).  Fiduciary status extends only to those aspects of the plan over which the fiduciary exercises

authority or control.  Furthermore, fiduciary status is defined not only by reference to particular

titles, but also by the authority which a particular person has or exercises over an employee

benefit plan.  Bannistor v. Ullman, 287 F.3d 394, 401 (5th Cir. 2002).  "Determining whether

someone is a fiduciary is a very fact specific inquiry which is difficult to resolve on a motion to

dismiss."  In re Fruehauf Trailer Corp., 250 Bankr. L. Rep. (CCH) 168, 204 (D. Del. 2000)(citing

Kramer v. Smith Barney, 80 F.3d 1080, 1084 n.2 (5th Cir. 1996), for the proposition that ERISA

fiduciary status is mixed question of fact and law); Bell v. Exec. Comm. of the United Food &

Commercial Workers Pension Plan for Employees, 191 F. Supp. 2d 10, 15 (D.D.C. 2002).

     **B.**     **The Plaintiffs Have Properly Alleged that the Members of the Administrative Committee, the Compensation Committee, Ken Lay and Enron were Fiduciaries Without Regard to Their Corporate Status**

Without question, as the persons and entity charged with responsibility for managing the

plans and their assets, the members of the Administrative Committee were plan fiduciaries.  One

member of the Administrative Committee, Cindy Olson, in an argument adopted by the members

of the Compensation Committee, asserts, however, that she is relieved of fiduciary status because

she was purportedly acting on behalf of Enron and within her capacity as an officer of Enron.

See Olson Brief, at 18; Compensation Committee Reply Brief, at 16 n.15.  The argument rests on

one Third Circuit opinion, Confer v. Custom Engineering Co., 952 F.2d 34, 37 (3rd Cir. 1991),

which held that officers who exercise discretion on behalf of a corporation are not fiduciaries

unless they have individual discretionary roles over plans, thus effectively insulating such

officers to the extent that they are acting for the corporation.  Even if Confer were correct, Olson

would not be absolved of her status as fiduciary.  She was not simply acting on the corporation's

behalf in a corporate capacity, but rather served the plans as an Administrative Committee

member who was directly charged with managing and protecting the plans' assets under the

plans' express terms.  Complaint at ¶ 45.  There is simply no sensible argument that would absolve her of liability for her acts or inaction as a fiduciary.

Confer, however, is not correct.  It is contrary to the Fifth Circuit's decision in Bannistor, which held that company officers were acting both as plan administrators and as representatives of the employer under ERISA.  287 F.3d at 405-407.  Although the Fifth Circuit agreed with the officers that it was error for the bankruptcy court to have assigned them per se fiduciary status based on their role as officers, it nonetheless concluded that the officers were fiduciaries because they had discretionary authority or responsibility in the administration of the plan and thus satisfied ERISA's definition of fiduciary.  Ibid.  Moreover, other courts have expressly rejected Confer, correctly recognizing that such a rule would create an exception for corporate officers that does not exist for any other functional fiduciaries.  See, e.g., Kayes v. Pacific Lumber, 51 F.3d 1449, 1460 (9th Cir.) (rejecting argument based on Confer because it would allow corporations to shield its decisionmakers from personal liability merely by stating in plan documents that their actions are taken on behalf of the company), cert. denied, 516 U.S. 914 (1995); Martin v. Schwab, 15 Employee Ben. Cas. 2135 (BNA), 1992 WL 296531, at *5  (W.D. Mo. 1992)("Defendants' contention they have no individual exposure as fiduciaries [because they were on the Board of Directors] is clearly at odds with the language of the statute. . . .  Congress 'conferred fiduciary status on persons and entities by activity and not by label.'") (citation omitted).  As an Eastern District of Louisiana court recently noted,

> [U]nder the broad scope of the ERISA fiduciary definition, corporate employees and officers who fit under section 1002(21)(A), while nevertheless acting on behalf of a corporate entity, face potential fiduciary liability in their individual capacities with no necessity of piercing the corporate veil. . . . A contrary approach would ignore "[t]he broadly based liability policy underpinning ERISA and its functional definition of 'fiduciary,' " and allow a corporation "to shield its decision-makers from personal liability" in contravention of what Congress intended in ERISA.

Musmeci v. Schwegmann Giant Super Markets, 159 F.Supp.2d 329, 353 (E.D. La. 2001)(citing Kayes).

Defendants' argument is thus inconsistent with the holdings of many courts, which, like the Fifth Circuit, have routinely held officers and directors to be fiduciaries when they have discretionary authority or control over plans. See, e.g., Yeseta v. Baima, 837 F.2d 380, 384-85 (9th Cir. 1988) (corporate officer of plan sponsor which also administered the plan held to be a fiduciary based on his discretionary authority and responsibility in the administration of the plan); Leigh v. Engle, 727 F.2d 113, 134-135 (7th Cir. 1984); Brock v. Self, 632 F. Supp. 1509, 1520, 1521, 1523 (W.D. La. 1986); McNeese v. Health Plan Marketing, Inc., 647 F. Supp. 981, 983-85 (N.D. Ala. 1986); Freund v. Marshall & Ilsley Bank, 485 F. Supp. 629, 641 (W.D. Wisc. 1979). Nor can Confer's approach be reconciled with the statutory language, which explicitly defines a fiduciary as a "person . . . to the extent that he exercises any discretionary authority or discretionary control" over plan management or plan assets. 29 U.S.C. § 1002 (21). This definition contains no exemption for a "person" who is acting on behalf of a corporation; to the extent that such persons have discretionary authority or control over the plan, they are plan fiduciaries regardless of any other role that they play. The exception Olson and the Compensation Committee assert is not only foreclosed by the statutory language and the Fifth Circuit's decision in Bannistor, it also does not accord with the Fifth Circuit's policy of giving "the term fiduciary a liberal construction in keeping with the remedial purpose of ERISA." Reich v. Lancaster, 55 F.3d 1034, 1046 (5th Cir. 1995).

In addition to the members of the Administrative Committee, who were expressly charged with responsibility for managing the plan and their assets, Enron, Lay and the Compensation Committee were also fiduciaries, but by virtue of a somewhat different

7

role.  As persons who had the power to appoint, retain and remove plan fiduciaries,

Complaint at ¶ 777, they had discretionary authority over the management or

administration of a plan under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and were

thus themselves fiduciaries.  Coyne & Delany Co. v. Selman, 98 F.3d 1457, 1465-66 (4th

Cir. 1996); Leigh, 727 F.2d at 134-35; see also Liss v. Smith, 991 F. Supp. 278, 310

(S.D.N.Y. 1998)("It is by now well-established that the power to appoint plan trustees

confers fiduciary status.").  "[C]ase law clearly provides that officers and directors of an

employer who sponsors a pension plan may be fiduciaries to the extent they maintain

authority for the selection, oversight, or retention of plan administrators."  Martin v.

Schwab, 15 Employee Benefits Cas. (BNA) 2135, No. CIV.A. 91-5059-CVSW-1, 1992

WL 296531, at *4 (W.D. Mo. Aug. 11, 1992)(citing cases).  A fiduciary who appoints

trustees has the responsibility and liability for those functions over which he exercises

authority or control, i.e., selection and retention of fiduciaries.  Sommers Drug, 793 F.2d

at 1459-60; 29 C.F.R. § 2509.75-8 at D-4.

III.    PLAINTIFFS ADEQUATELY ALLEGE THAT ENRON, LAY AND THE
        COMPENSATION COMMITTEE BREACHED THEIR FIDUCIARY DUTIES
        BY FAILING TO MONITOR THE ADMINISTRATIVE COMMITTEE

        A.      The Plaintiffs have Sufficiently Alleged Fiduciary Liability

        The "ongoing responsibilities of a fiduciary who has appointed trustees" require that "[a]t

reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the

appointing fiduciary in such a manner as may be reasonably expected to ensure that their

performance has been in compliance with the terms of the plan and statutory standards, and

satisfies the needs of the plan."  29 C.F.R. § 2509.75-8 at FR-17; see also Miniat v. Globe Life

Ins. Group, Inc., 805 F.2d 732, 736 (7th Cir. 1987)(fiduciaries have duty to monitor

administrators they selected).  "[I]mplicit in [a fiduciary's] power to select the Plans' named

fiduciaries is the duty to monitor the fiduciaries' actions, including their investment of plan

assets."  Mehling v. New York Life Ins. Co., 163 F. Supp. 2d 502, 509-10 (E.D. Pa. 2001); see

also Liss, 991 F. Supp. at 311 (fiduciaries who appoint trustees have "the obligation to ensure

that the appointees are performing their fiduciary obligations.").  Thus, an appointing fiduciary

has a duty of oversight to promote compliance with ERISA's fiduciary obligations and to prevent

misconduct or injury.  See, e.g., Leigh, 727 F.2d at 134-35; Coyne, 98 F.3d at 1465; Martin v.

Feilen, 965 F.2d 660 (8th Cir. 1992).

   Plaintiffs allege that Enron itself was charged with responsibility for selecting and

monitoring the members of the Administrative Committee and other fiduciaries, and that Enron,

Lay, and the Compensation Committee Defendants acted as fiduciaries by selecting, appointing

and removing the fiduciaries of the Savings Plan and ESOP.  Complaint at ¶¶ 674, 777.  These

Defendants allegedly failed to ensure that the Administrative Committee monitored the prudence

of the Plans' investment in Enron stock, and allegedly knew or should have known the truth

about Enron's precarious financial condition, but withheld the facts from the Administrative

Committee that had overall responsibility for the Plans' investments.  Complaint at ¶ 675.  As a

result, the Administrative Committee allegedly invested the employer contributions for the

Savings Plan in Enron stock and retained the Enron stock fund as an investment option for

participants without any investigation of the prudence of the investments.  Complaint at ¶ 740.

   These allegations are more than adequate to state a claim for failure to properly oversee

the Administrative Committee in violation of the duties of prudence and loyalty under ERISA

§§ 404(a)(1)(A) and (B), 29 U.S.C. 1104(a)(1)(A) and (B).  Corporate officers who appoint

fiduciaries must "ensure that the appointed fiduciary clearly understands his obligations, that he

9

has at his disposal the appropriate tools to perform his duties with integrity and competence, and that he is appropriately using those tools."  Martin v. Harline, 15 EBC 1138, 1149 (D. Utah 1992).

In accordance with these duties of "surveillance and oversight" (Leigh, 727 F.2d at 135 n.33), the Defendants had an obligation to monitor the Administrative Committee's conduct and to take appropriate action if the Committee was not adequately protecting the interests of the Plans' participants and beneficiaries.  The precise nature of the actions required is a question of fact, dependent on the circumstances.  Liss, 991 F. Supp. at 311 ("The duty to monitor carries with it, of course, the duty to take action upon discovery that the appointed fiduciaries are not performing properly."); Atwood v. Burlington Indus. Equity, Inc., No. 2:92CV00716, 1994 WL 698314, at *13 (M.D.N.C. Aug. 3, 1994); Whitfield v. Tomasso, 682 F. Supp. 1287, 1305 (E.D.N.Y. 1988).  Often, it is enough to remove the appointees.  In other cases, such as this one, however, it may be necessary to take other action, such as freezing investments.  See, e.g., Whitfield v. Cohen, 682 F. Supp. 188, 197 (S.D.N.Y. 1988)(once monitoring fiduciary became aware that trustee was resisting the plan's request for information about plan investments, he should have taken prompt action to protect plan assets by withdrawing the investments if necessary).

In the context of the allegations in this case, the duty to monitor also included the duty to ensure that the appointees had accurate information on Enron's financial condition, particularly in light of the Defendants' own alleged complicity in deceiving the investing public, including the Plans. [2]  Cf. Glaziers and Glassworkers Union Local No. 252 Annuity Fund v. Newbridge

---

[2] According to the Complaint, Lay and other high-ranking corporate officers were selling off their own stock with full knowledge that the company had misstated its finances, but failed to

Sec., Inc., 93 F.3d 1171, 1181-82 (3<sup>d</sup> Cir. 1996) (if securities firm was a fiduciary it had an obligation to disclose to plans that firm's former employee had resigned because of investment improprieties before the plans hired the former employee).   Enron, Lay and the Compensation Committee could not stand by and silently watch the Administrative Committee and other responsible fiduciaries make decisions based on information that obscured the catastrophic financial condition of Enron and the Plan's investments.

In response to the Plaintiffs' allegations, the Defendants note that an individual officer or director is liable as a fiduciary only "to the extent" of his responsibilities as a fiduciary. Sommers Drug Store Co. Employee Profit Sharing Plan v.  Corrigan Enterprises, 793 F.2d 1456, 1459-60 (1986).  Under Sommers Drug, Enron, Lay, and the Compensation Committee are not responsible for fiduciary activities that they did not control and that fell outside the ambit of their fiduciary responsibility.  Their obligation was to select and oversee the Administrative Committee and other fiduciaries, not to perform fiduciary activities delegated to others.

The Defendants err, however, in arguing that Sommers Drug absolves them of responsibility for failing to monitor the Administrative Committee.   Sommers Drug stands for the unexceptional proposition that fiduciaries can only be held liable for conduct that falls within their fiduciary authority, and that they cannot be held directly liable for investment decisions over which they had no control.  Id. at 1459-1460.  In that case, the Fifth Circuit held that fiduciaries with the authority to appoint and remove trustees could not be held liable for a plan's sale of stock based on their presumed control over the plan's assets if the trustees, in fact, exercised control over the sale, rather than the appointing fiduciaries.

---

take any action at all to inform the Administrative Committee of the problems, or to ensure that the participants' interests were protected.  Complaint at ¶¶ 64-92, 272, 681.

The fiduciaries in this case, unlike the fiduciaries in <u>Sommers Drug</u>, are accused of breaching the very obligations that made them fiduciaries: the duties to monitor appointees, ensure that appointee fiduciaries were performing their duties, and take appropriate action in response to the appointees' failures. The Plaintiffs do not seek to hold Enron, Lay, or the Compensation Committee liable for somebody else's misconduct, but rather for their own alleged failure to monitor the Administrative Committee, dissemination of misleading and inaccurate information, and withholding of critical financial information that the Administrative Committee needed to do its job. The opinion in <u>Sommers Drug</u> did not involve such allegations much less resolve them with a blanket rejection of the duty to monitor as now sought by the Defendants.

The Plaintiffs' Complaint states a claim that Enron, Lay, and the Compensation Committee violated their obligation to monitor the appointed trustees to ensure that they were serving the interests of the participants and beneficiaries. If the Defendants failed to monitor the Administrative Committee as alleged, they have breached their duties as fiduciaries. <u>See</u>, <u>e.g.</u>, <u>Henry v. Frontier Industries, Inc.</u>, Nos. 87-3879 and 87-3898, 1988 WL 132577 (9th Cir. 1988)(as board member, defendant had duty to monitor and review performance of appointed trustee to ensure his performance was in compliance with plan and statutory standards); <u>Arakelian v. National Western Life Ins. Co.</u>, 755 F. Supp. 1080, 1084 (D.D.C. 1990)("The fact that all administrative functions of the Plan were delegated to the Plan administrator . . . did not and does not absolve the trustees of their duty to review and insure that the administrator was acting in the best interest of the participants."). <u>Cf.</u> <u>Sandoval v. Simmons</u>, 622 F. Supp. 1174, 1215-16 (C.D. Ill. 1985) (appointing fiduciaries violate their duty of prudence and loyalty under ERISA §404(a)(1)(A), 29 U.S.C. 1104(a)(1)(A), where they fail to create a means to monitor the performance of the plan's appointed trustees).

12

B.    Plaintiffs have Sufficiently Alleged Co-Fiduciary Liability for the Failure to Monitor

Even if the appointing fiduciaries were not liable under § 404 for failure to monitor, the complaint sufficiently alleges that they have co-fiduciary liability for that failure. Under ERISA § 405(a), 29 U.S.C. § 1105(a), a fiduciary is responsible for his co-fiduciaries' breaches if: (1) he knowingly participated in or concealed knowledge of a breach by the other fiduciaries, unless he made reasonable efforts under the circumstances to remedy the breach. Liss, 991 F. Supp. at 311; see also Martin v. Harline, 15 Employee Benefits Cas. (BNA) 1138, 1148-50 (D. Utah Mar. 31, 1992) (fiduciary responsible for appointment and removal of plan's trustee breached duty under § 404(a)(1)(B), 29 U.S.C. 1104(a)(1)(B), to prudently appoint, periodically review, and generally oversee trustee's performance of his responsibilities, and therefore enabled trustee's breaches and is liable for them).  Fiduciaries have a duty to "use reasonable care to prevent a co-trustee from committing a breach of trust or to compel a co-trustee to redress a breach of trust." Restatement (Second) of Trusts § 184 (1987 App.).  A fiduciary's inaction and failure to act promptly to halt another fiduciary's breach can give rise to co-fiduciary liability.  See, e.g., Chicago Housing Authority v. J.A. Hannah Inv. Advisory Service, Inc., 1996 WL 328033 at *5 (N.D. Ill. 1996) (rejecting investment advisor's argument that it cannot be liable for another fiduciary's theft from plans, which advisor knew about for months; advisor may have enabled fiduciary breach); Jackson v. Truck Drivers' Union Local 42 Health and Welfare Fund, 933 F. Supp. 1134, 1141 (D. Mass. 1996)("A fiduciary who becomes aware that a co-fiduciary has breached a fiduciary duty to plan beneficiaries may not escape liability by simply casting a blind eye toward the breach.").

Furthermore, the Fifth Circuit has held that even in cases where Sommers Drug is applied to limit fiduciary liability, it does not limit co-fiduciary liability.

> Moreover, we must stress that although <u>Sommers</u> limited the liability of fiduciaries by the 'to the extent' language of § 3(21)(A), this limitation does not apply to § 1105(a).  To illustrate, even if [a defendant] is only found to be a fiduciary 'to the extent' of appointing and removing the Plan administrator and Trustee, [the defendant] may still be liable, for example, for the breaches of [the appointed fiduciary] if [the defendant] 'participat[ed] knowingly in, or knowingly undert[ook] to conceal, an act or omission of [the appointed fiduciary], knowing such act or omission [was] a breach.'

<u>Landry v. Air Line Pilots Ass'n Intern. AFL-CIO</u>, 901 F.2d 404, 422-23 (5th Cir.), <u>cert.</u> <u>denied</u>, 498 U.S. 895 (1990); <u>see also</u> <u>American Fed. of Unions Local 102 Health & Welfare Fund v.</u> <u>Equitable Life Assurance Soc'y</u>, 841 F.2d 658, 665 (5th Cir.1988) (failure to monitor and remove poorly performing fiduciaries can lead to § 405 liability).  Thus, even if the Court were to find that Lay, Enron or the Compensation Committee were not liable under § 404, 29 U.S.C. § 1104, the Court could find these defendants liable under § 405, 29 U.S.C. § 1105,  if their actions enabled other fiduciaries to breach their duties.

Plaintiffs allege that each of the ERISA Defendants acted as co-fiduciaries within the meaning of § 405, 29 U.S.C. § 1105.  Complaint at ¶ 739.  In this regard, Plaintiffs allege that each Defendant knowingly participated in the fiduciary breaches and enabled their co-fiduciaries to commit breaches by their own failure to comply with their fiduciary duties under § 404, 29 U.S.C. § 1104.  Complaint at ¶¶ 741, 743, 780.  For example, Plaintiffs allege that Enron, Lay and the Compensation Committee withheld material information from the Administrative Committee as to Enron's true financial condition, failed to ensure that the Administrative Committee was monitoring the prudence of Enron stock as a plan investment and contributed to the Committee's failure to monitor the prudence of Enron stock as an investment for both the Savings Plan and the ESOP.  Complaint at ¶ 675.  Because the Plaintiffs have sufficiently alleged that these Defendants enabled the Committee members to breach their fiduciary duties in

violation of ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2), their claim for co-fiduciary liability should not be dismissed.

IV.    PLAINTIFFS SUFFICIENTLY ALLEGE THAT THE ADMINISTRATIVE
       COMMITTEE MEMBERS, AS WELL AS ENRON, LAY AND THE
       COMPENSATION COMMITTEE, BREACHED THEIR FIDUCIARY DUTIES TO
       PROTECT THE PLANS FROM THE LOSSES CAUSED BY ENRON'S PERILOUS
       FINANCIAL CONDITION AND FROM INACCURATE AND MISLEADING
       INFORMATION ABOUT ENRON'S FINANCIAL PERFORMANCE

       A.    Plan Fiduciaries Have a Duty Not to Materially Mislead Plan Participants and to
             Correct Misleading Information from Others

       A fiduciary's duty of loyalty to plan participants under ERISA includes an obligation not

to materially mislead plan participants and beneficiaries.  See, e.g., Berlin v. Michigan Bell

Telephone Co., 858 F.2d 1154, 1163 (6th Cir. 1988); Fischer v. Philadelphia Elec. Co., 994 F.2d

130, 135 (3rd Cir.) ("when a plan administrator speaks, it must speak truthfully"), cert. denied,

510 U.S. 1020 (1993).  This duty of course includes a prohibition on lying.  As the Supreme

Court has stated, "[L]ying is inconsistent with the duty of loyalty owed by all fiduciaries and

codified in section 404(a)(1) of ERISA." Varity v. Howe, 516 U.S. 489, 506 (1996).  Fiduciaries

can also violate their duty of loyalty by misleading participants and beneficiaries, whether

through action, inaction or silence.  See, e.g., Becker v. Eastman Kodak Co., 120 F.3d 5, 9 (2nd

Cir. 1997) (because summary plan description and benefits counselor's advice together amounted

to materially misleading information, fiduciary breached its duty to provide participants with

complete and accurate information); Babcock v. Hartmarx Corp., No. CIV. A. 96-3862, 1997

WL 767658, at *3 (E.D. La. Dec. 9, 1997), rev'd on other grounds, 182 F.3d 336 (5th Cir.

1999)("[D]efendant's silence, inaction and misleading advice constitute a breach of the

defendant's fiduciary duty. . . ."); Simeon v. Mount Sinai Med. Ctr., 150 F. Supp. 2d 598, 604

(S.D.N.Y. 2001); In re Bidermann Indus. U.S.A., Inc., 241 B.R. 76, 90 (Bankr. S.D.N.Y. 1999).

Here Lay and Olson are accused of breaching their fiduciary duty of loyalty by affirmatively misleading plan participants concerning the accounting disaster that was about to engulf the company and cause the plans' holdings to plummet.  For instance, the Complaint alleges that even after receiving Watkins' memo, which warned of a vice-president's concerns that the company could "implode in a wave of accounting scandals," in late August 2001, Lay and Olson continued to encourage employees to invest in Enron stock without telling them of the threat to Enron's financial condition.  Complaint at ¶ 268-71, 689, 691.  Plaintiffs point to a September 2001 meeting at which Lay belittled the "reckless and unfounded rumors about Enron and the financial condition of Enron."  He insisted that the company's financial status was very strong, but he did not inform the employees of the information he had received which indicated that the company's financial status was in jeopardy.  Complaint at ¶¶ 268-272.  Olson, a plan fiduciary, allegedly stood by his side and failed to correct his statements that the employee-participants, whom she was duty-bound to protect, should continue to invest in Enron stock, despite dire warnings about the company's viability that she had personally received from Sherron Watkins, a company Vice-President.  Id. at ¶¶ 691, 705-09.  Plaintiffs further allege that Lay was asked by an employee for confirmation that Enron was not engaged in accounting irregularities, and responded that neither he nor the Board would approve the use of any special purpose vehicles "unless we were convinced both by all our internal officers as well as our external auditor and counsel, that they were both legal and totally appropriate."  Complaint at ¶ 707.  He did not, however, correct this statement by disclosing that "internal officer" Watkins had raised serious concerns about Enron's accounting irregularities and that, in response, Lay had asked "counsel" to determine whether Enron's accounting was in fact legal.  Complaint at ¶¶ 708.  The Complaint additionally alleges that Lay and Olson by their conduct, sought to encourage the

16

participants to invest their plan's assets in Enron stock.  Complaint at ¶ 240-252, 691.  Thus, the

Complaint sufficiently alleges that Lay's and Olson's statements were inaccurate and misleading

at best, and flatly inconsistent with the basic fiduciary obligation of candor and loyalty.

But ERISA fiduciaries are charged with more than the duty to refrain from misleading

plan participants or to correct their own misstatements.  They also have a duty to protect plan

participants from misleading information.  Accordingly, when a fiduciary is aware that

participants have been misinformed about the very stability of their retirement assets, they must

take action to protect the participants.  Complaint at ¶ 240-283.  "A beneficiary, about to plunge

into a ruinous course of dealing, may be betrayed by silence as well as by the spoken word."

Globe Woolen Co. v. Utica Gas & Elec. Co., 224 N.Y. 483, 489 (N.Y. 1918)(Cardozo, J.).[3]

While a "trustee is free to stand aloof, while others act, if all is equitable and fair," he must

disclose the truth or take some other prudent action to protect plan assets "if there is

improvidence or oppression, either apparent on the surface, or lurking beneath the surface, but

visible to his practiced eye."  Globe Woolen, 244 N.Y. at 489.

In some circumstances, the duty of loyalty may require the fiduciary to correct the

inaccurate or misleading information so that the participants and beneficiaries will not be injured

as a result of it.  See Franklin v. First Union, 84 F. Supp. 2d 720, 735 (E.D. Va. 2000) (fiduciary

had "a duty to notify the plaintiffs of the changes in the investment funds in such a manner as to

prevent any misinformation to and misleading of the plaintiffs regarding their options"); Hudson

---

[3] This case pre-dates ERISA but is based in traditional trust law, from which ERISA's fiduciary
duties are drawn.  Central States, 472 U.S. at 570; H. Rep. No. 93-533, 93rd Cong., 2d Sess. 11-
12, reprinted in 1974 U.S.C.C.A.N. (88 Stat. 832) 4639, 4649.  Under the common law of trusts,
beneficiaries are "'always entitled to such information as is reasonably necessary to enable
[them] to enforce [their] rights under the trust or to prevent or redress a breach of trust.'"
Restatement (Second) of Trusts § 173, cmt. c (1959), cited in Faircloth v. Lundy, 91 F.3d 648,
656 (4th Cir. 1996), cert. denied, 519 U.S. 1077 (1997).

v. General Dynamics Corp., 118 F. Supp. 2d 226, 256 (D. Conn. 2000) (recognizing a "'duty to correct,' in the face of a statement demonstrating a material misunderstanding of benefits information, on plan fiduciaries in certain situations."); Mullins v. Pfizer, Inc., 899 F. Supp. 69, 77 (D. Conn. 1995)("If such misrepresentations were made and defendant knew of them, defendant had an affirmative duty to correct material misrepresentations that it knew or should have known plaintiff would rely on.").  An "ERISA fiduciary that knows or should know that a beneficiary labors under a material misunderstanding of plan benefits that will inure to his detriment cannot remain silent—especially when that misunderstanding was fostered by the fiduciary's own material representations or omissions."  Griggs v. E.I. DuPont de Nemours & Co., 237 F.3d 371, 381 (4th Cir. 2001) (citation omitted); see also Davis v. Bowman Apple Products Co., No. CIV.A. 500CV00033,  2002 WL 535068, at *6-7 (W.D. Va. Mar. 29, 2002)(citing Griggs for "duty to correct").  But where plan assets are in danger and participants have been misinformed, silence and inaction are never options.  See Globe Woolen, 244 N.Y. at 489

B.   Under Fifth Circuit Precedent, the Fiduciaries had a Duty to Disclose Information If Necessary for Participants to Protect Their Retirement Benefits

The Fifth Circuit has held that, in some circumstances, fiduciaries may have additional disclosure duties beyond correcting misinformation.  McDonald v. Provident Indemnity Life Insurance Co., 60 F.3d 234, 237 (5th Cir. 1995).  The court has correctly recognized that where fiduciaries are aware of particular threats to plan assets, they may have the duty under ERISA § 404(a), 29 U.S.C. § 1104(a), to disclose to participants material information necessary to protect against these threats.  McDonald, 60 F.3d at 237 ("Section 404(a) imposes on a fiduciary the duty of undivided loyalty to plan participants and beneficiaries, as well as a duty to exercise care, skill, prudence and diligence.  An obvious component of those responsibilities is the duty to

18

disclose material information."). In <u>McDonald</u>, the trustee of a group health insurance plan

failed to inform the employer or its employees who participated in the plan of the health insurer's

new rate schedule. The trustee knew that the new rate schedule would result in prohibitive

premiums for the plan sponsor, a small employer, once it experienced a single catastrophic

claim, and that when this occurred, the employer would not be able to afford to continue

providing health insurance and the employees would lose coverage under the welfare plan. The

Fifth Circuit held that the information was material to the insurer's suitability and the employer's

decision to remain in the multiple employer trust, and therefore the trustee had an obligation to

disclose it and had breached his fiduciary duty by not doing so. <u>Id</u>. at 237.

The <u>McDonald</u> court explained that the impact of the insurer's rate schedule, which

would be prohibitive and cause the plan to lose its insurance and therefore the benefits, was the

type of material fact that the fiduciary had a duty to disclose.   As numerous other circuits have

noted, in circumstances where plan assets are seriously at risk, it is "the core of a fiduciary's

responsibility" to disclose complete and correct material information. <u>Watson v. Deaconess

Waltham Hosp.</u>, 2002 WL 1789765, *8-9 (1st Cir. 2002)(a fiduciary has an obligation to

accurately convey material information to beneficiaries, including material information that the

beneficiary did not specifically request, if there was some particular reason that the fiduciary

should have known that his failure to convey the information would be harmful); <u>Bixler v.

Central Pennsylvania Teamsters Health & Welfare Fund</u>, 12 F.3d 1292, 1300 (3rd Cir. 1993);

<u>Griggs v. E.I. Dupont de Nemours & Co</u>., 237 F.3d 371, 380 (4th Cir. 2001); <u>Krohn v. Huron

Memorial Hosp.</u>, 173 F.3d 542, *548 (6th Cir. 1999); <u>Anweiler v. American Elec. Power Serv.

Corp.</u>, 3 F.3d 986, 991 (7th Cir. 1993); <u>Howe v. Varity Corp.</u>, 36 F.3d 746, 754, (8th Cir.), <u>aff'd</u>,

516 U.S. 489 (1996); <u>Barker v. American Mobil Power Corp.</u>, 64 F.3d 1397, 1403 (9th Cir.

1995); <u>Eddy v. Colonial Life Insurance Co. of America</u>, 919 F.2d 747, 750-51 (D.C. Cir. 1990)("The duty to disclose material information is the core of a fiduciary's responsibility, animating the common law of trusts long before the enactment of ERISA. . . .  A fiduciary has a duty not only to inform a beneficiary of new and relevant information as it arises, but also to advise him of circumstances that threaten interests relevant to the [fiduciary] relationship.  For example, a fiduciary bears an affirmative duty to inform a beneficiary of the fiduciary's knowledge of prejudicial acts by an employer.").  This affirmative duty requires a trustee to inform participants "when the trustee knows that silence might be harmful."  <u>Bixler</u>, 12 F.3d at 1300.  This duty is in accordance with the common law of trusts:  a trustee "is under a duty to communicate to the beneficiary material facts affecting the interest of the beneficiary which he knows the beneficiary does not know and which the beneficiary needs to know for his protection in dealing with a third person."  The Restatement (Second) of Trusts § 173, cmt. d (1959).

This is not to say that fiduciaries must inform plan participants of every transitory corporate event that might have an impact on the stock's price, but it does mean that fiduciaries must take action when they know or should know of potentially ruinous facts, as alleged here.  In <u>McDonald</u>, for example, the court found that the failure to disclose material information constituted a fiduciary breach, because the fiduciary knew or should have known that the consequences of the failure to disclose the information could be disastrous for the plan and its participants.  Similarly, Enron's plan fiduciaries allegedly knew or should have known that the company's financial statements contained untrustworthy and wholly inaccurate information,[4] and that the failure to disclose that information could have grave consequences for Enron's plans and

---

[4] The Complaint alleges that Olson and Lay in particular were aware of this fact, as they had read Watkins' report and had been expressly informed of her concern that the accounting scandals would topple the company, as indeed they did.  Complaint at  ¶¶ 455, 686.

their participants.  In such circumstances, fiduciaries cannot fulfill their vital duties of loyalty

and prudence, the "highest duties known to law," by taking no action to warn or otherwise

protect their plan holdings from the looming threat, a threat that allegedly resulted in the loss of

"hundreds of millions of dollars."  Complaint at ¶ 766.  <u>Ream v. Frey</u>, 107 F.3d 147, 155-56 (3rd

Cir. 1997)(plan trustee that resigned breached duty to act prudently in failing to inform

beneficiaries of the circumstances, when it knew of company's and plan administrator's serious

financial problems).

The fiduciary duty to inform participants of circumstances that severely threaten plan

assets does not require a participant request for information before the duty is activated.  The

Secretary agrees with the Third Circuit that it would be nonsensical to say that

> participants' failure to make a specific request for information somehow alleviated
> any obligation [a fiduciary] would have otherwise had to disclose the very
> information the Funds needed in order to prudently conduct their affairs.  Such a
> result would not only hoist the beneficiary by its own petard, it is contrary to well
> established principles governing the relationship between a fiduciary and
> beneficiary. . . .  Indeed, absent such information, the beneficiary may have no
> reason to suspect that it should make inquiry into what may appear to be a routine
> matter.  If [a party] was a fiduciary, the Funds' failure to request information
> concerning [the issue that threatened plan assets] has no bearing on whether [the
> fiduciary] breached the duties it owed the Funds by not volunteering the
> information.

<u>Glaziers</u>, 93 F.3d at 1181.

This does not mean, of course, that a fiduciary must reveal all information about a

corporate sponsor that bears on employees benefits.  Rather, the duty arises only in those

circumstances where material information is essential to protect the interests of the beneficiaries.

As the Third Circuit has clarified:  "We do not, of course, hold that one who may have attained a

fiduciary status thereby has an obligation to disclose all details of its [business] decisions that

may somehow impact upon the course of dealings with a beneficiary/client."  <u>Glaziers</u>, 93 F.3d
at 1182.

Ehlmann v. Kaiser Foundation Health Plan, 198 F.3d 552 (5th Cir. 2000), is not to the
contrary.  In <u>Ehlmann</u>, a participant requested physician compensation plans and reimbursement
agreements, information which ERISA does not specify that trustees must disclose.  Because
there were no "special circumstances" requiring disclosure, the <u>Ehlmann</u> court distinguished the
requested information from the information it said was disclosable in <u>McDonald</u>.  198 F.3d at
556.  The <u>Ehlmann</u> court described <u>McDonald</u> as a case where "the fiduciary duties of Section
404 required disclosure . . . given the extreme impact that [the information] could have" on the
plan.  <u>Id</u>.  Thus, <u>McDonald</u> is an example of one type of "special circumstance" requiring
disclosure of material information to participants:  where the information is critical to protection
of the plan or plan assets, and failure to communicate it could have disastrous consequences.
Defendants read <u>Ehlmann</u> far too narrowly in saying that it absolves fiduciaries from making any
disclosures other than those specified in the statute.   <u>Ehlmann</u> explicitly recognizes that there are
some circumstances that require disclosure of information beyond that specified in the statute,
such as when the information, as alleged here, could have an "extreme impact" on plans.[5]

---

[5] Indeed, the Supreme Court in <u>Varity</u> rejected the contention that the fiduciaries are only bound
by the specific disclosure provisions of ERISA and the plan instruments, concluding instead that
"the primary function of the fiduciary duty is to constrain the exercise of *discretionary* powers
which are controlled by no other specific duty imposed by the trust instrument or the legal
regime."  516 U.S. at 504 (emphasis added).  <u>See</u> <u>also</u> <u>Jordan v. Federal Express Corp.</u>, 116 F.3d
1005, 1012 (3rd Cir. 1997) (referring to this passage from <u>Varity</u>, noting that "[i]t would appear
that the Supreme Court has also determined that fiduciary duties operate both independently
from and in conjunction with ERISA's specifically delineated requirements.").  Thus, under
<u>Varity</u>, Defendants cannot claim that they have no duties to disclose information beyond that
which strictly complies with the statutory disclosure requirements.  <u>See</u> <u>also</u> <u>Central States</u>, 472
U.S. at 570 ("rather than explicitly enumerating *all* of the powers and duties of trustees and other
fiduciaries, Congress invoked the common law of trusts to define the general scope of their
authority and responsibility"); <u>In re Unisys</u>, 57 F.3d at1264 ("Furthermore, satisfaction by an

The special circumstances present here are analogous to those in <u>McDonald</u>: plaintiffs allege that the fiduciaries here knew or should have known that there was a potentially critical threat to the plan or plan assets. Plaintiffs allege that Enron, Lay, Olson, and the Compensation Committee, knew or should have known about Enron's grave financial condition and withheld that information from the participants and the Administrative Committee. Complaint at ¶¶ 674-675, 701, 703, 704, 709. For example, Plaintiffs allege that the Watkins memo gave Lay and Olson strong reasons to doubt the stability of the company itself and consequently of plans' investment in Enron stock. Complaint at ¶¶ 455, 686. Plaintiffs further allege that Watkins met with Olson personally and reiterated in detail her concerns that the company's accounting improprieties would end in disaster. Complaint at ¶ 701. Moreover, Plaintiffs allege that Olson learned that Fastow wanted Watkins fired for raising these questions in her memo, and that he ordered that Watkins' computer be confiscated. Complaint at ¶ 703. Plaintiffs allege that Olson failed to report this information to participants, other members of the Administrative Committee, plan counsel, or the plan's investments consultant. Complaint at ¶¶ 690-91, 704.[6]

---

employer as plan administrator of its statutory disclosure obligations under ERISA does not foreclose the possibility that the plan administrator may nonetheless breach its fiduciary duty owed plan participants to communicate candidly, if the plan administrator simultaneously or subsequently makes material misrepresentations to those whom the duty of loyalty and prudence are owed."); <u>Harte v. Bethlehem Steel Corp.</u>, 214 F.3d 446, 451, n.6 (3rd Cir.) ("But the fiduciary duty to disclose and explain is not achieved solely by technical compliance with the statutory notice requirements."), <u>cert. dismissed</u>, 531 U.S. 1037 (2000).

[6] Plaintiffs also allege these Defendants allowed and encouraged employees to buy or retain Enron stock while they were selling large quantities of stock that they owned individually. Complaint at ¶¶ 253, 255-56, 272, 681.

C.    <u>The Administrative Committee Members Could Have Taken a Number of Steps,
Consistent With Their Duties Under Federal Securities Laws, That May Have
Protected Participants in Accordance With the Fiduciary Provisions of ERISA</u>

In their motions to dismiss, the Administrative Committee Defendants and Olson have

responded to the Plaintiffs' allegations by arguing, among other things, that they could not have

taken action to protect participants without engaging in insider trading in violation of securities

laws because the information was not public.  See Olson Mot. to Dismiss at 12; AC Mot. to

Dismiss at 28-29.  While they allegedly sold millions of dollars worth of their own Enron stock

during this time period, Complaint at ¶¶ 64-92, 272, 681, they (Olson in particular) contend that

because the information they had or could have obtained about accounting irregularities was not

public, disclosing the information to the participants would have made the Administrative

Committee Member Defendants criminally liable for insider trading, and would have rendered

the participants who traded on the information "tippees" subject to disgorgement of profits.

Olson Mot. to Dismiss at 12-13.  Thus, Olson contends, the Plaintiffs' claim that she "breached

her fiduciary duties by failing to do something that was illegal and utterly impractical, also

should be dismissed."  Olson Reply, at 7.

Liability for insider trading is based on § 17(a) of the Securities Act of 1933, 15 U.S.C.

77q(a), § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. 78j(b), and SEC Rule 10b-5,

17 C.F.R. 240.10b-5.  Section 17(a) provides that "it shall be unlawful for any person in the offer

or sale of securities . . . to employ any device, scheme, or artifice to defraud, or . . . to engage in

any transaction, practice or course of business which operates or would operate as a fraud or

deceit upon the purchaser."  Section 10(b) similarly provides that it shall be unlawful for any

person "to use or employ, in connection with the purchase or sale of any security . . . any

manipulative or deceptive devise or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."  Likewise, SEC Rule 10b-5 makes it unlawful "[t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."  17 C.F.R. 240.10b-5.

Although these provisions do not mention or specifically forbid "insider trading," in the seminal case of In the Matter of  Cady, Roberts & Co., Exchange Act Release No. 34-6668,  40 S.E.C. 907, 1961 WL 60638 (Nov. 8, 1961), the Securities and Exchange Commission recognized that Rule 10b-5 incorporates the affirmative duty imposed by the common law of some jurisdictions on "corporate 'insiders,' particularly officers, directors, or controlling stockholders" to either disclose material nonpublic information before trading or to abstain from trading altogether.  Id. at *3.  The SEC set forth two elements for establishing a 10b-5 violation: "first, the existence of a relationship giving access, directly or indirectly, to information intended to be available only for a corporate purpose and not for the personal benefit of anyone, and second, the inherent unfairness involved where a party takes advantage of such information knowing it is unavailable to those with whom he is dealing."  Id. at *4.  The fraud necessary for establishing a Rule 10b-5 violation arises only where the insider fails to disclose material nonpublic information before trading on it and thus makes "secret profits" at the expense of those to whom he owes a fiduciary duty of loyalty.  Id. at *6 n.31.[7]  The Supreme Court endorsed this

---

[7] The SEC has since adopted a rule regarding insider trading, which states that manipulative and deceptive practices prohibited by Rule 10b-5 "include, among other things, the purchase or sale of a security of any issuer, on the basis of material nonpublic information about the security or issuer, in breach of a duty of trust or confidence."  17 C.F.R. 240.10b5-1(a).  The rule goes on to provide that "a purchase or sale of a security of an issuer is 'on the basis of material nonpublic information about the security or issuer if the person making the purchase or sale was aware of

basic approach in subsequent cases.  <u>Chiarelli</u> v. <u>United States</u>, 445 U.S. 222 (1980); <u>Dirks</u> v.

<u>SEC</u>, 463 U.S. 646 (1983).

Defendants' duty to "disclose or abstain" under the securities laws does not immunize

them from a claim that they failed in their conduct as ERISA fiduciaries.  To the contrary, while

their Securities Act and ERISA duties may conflict in some respects, they are congruent in

others, and there are certain steps they could have taken that would have satisfied both duties to

the benefit of the plans.  First and foremost, nothing in the securities laws would have prohibited

them from disclosing the information to other shareholders and the public at large, or from

forcing Enron to do so.  <u>See</u> <u>Cady, Roberts</u>, 1961 WL 60638, at *3.  The duty to disclose the

relevant information to the plan participants and beneficiaries, which the Plaintiffs assert these

Defendants owed as ERISA fiduciaries, is entirely consistent with the premise of the insider

trading rules:  that corporate insiders owe a fiduciary duty to disclose material nonpublic

information to the shareholders and trading public.  <u>See</u> <u>id</u>. (incorporating common law rule that

insiders should reveal material inside information before trading); <u>see</u> <u>also</u> Plaintiffs' ERISA

Opposition at 39 n.18 (arguing that these Defendants could have publicly disclosed or forced

Enron to disclose before selling the stock).

Second, it would have been consistent with the securities law for the Committee to have

eliminated Enron stock as a participant option and as the employer match under the Savings

Plan.  Indeed, the Complaint alleges that "had Olson and the Committee immediately discontinue

Enron stock as an investment option for new contributions," once Olson had learned

of Watkins' allegations, the "employees would have been prevented from throwing another

---

the material nonpublic information when the person made the purchase or sale."  <u>Id</u>. § 240.10b5-
1(b).

$100 million into Enron stock, as they did between August and December 2, 2001, in large measure because of the continued encouragement" to do so by Lay and the continued investment of the employer match in Enron stock.  Complaint at ¶ 689.  The securities rules do not require an individual never to make any decision based on insider information.  To the contrary, the insider trading rules require corporate insiders to refrain from buying (or selling) stock if they have material, nonpublic information about the stock.  Thus, the "disclose or abstain" securities law rule is entirely consistent with, and indeed contemplates, a decision not to purchase a particular stock.  See Condus v. Howard Sav. Bank, 781 F. Supp. 1052, 1056 (D.N.J. 1992) (it is perfectly legal to retain stock based on inside information; violation of insider trading requires buying or selling of stock).  It would have been entirely consistent with the securities laws for the fiduciaries to have eliminated Enron stock as a participant option and the employer match.  The Administrative Committee had no affirmative duty to injure the plan by continuing to purchase stock that they allegedly knew or should have known was artificially inflated.  Finally, another option would have been to alert the appropriate regulatory agencies, such as the SEC and the Department of Labor, to the misstatements.

Defendant Olson's assertion that a general disclosure (which she decries as "utterly impractical") would have caused more harm to the plans, see Olson Reply, at 7 & n.7, is clearly a factual issue not amenable to disposition on a motion to dismiss.  Indeed, her argument makes the counter-factual assumption that the stock would not ultimately have plummeted in value without regard to the fiduciaries' conduct.  In actual fact, the stock's market high was not permanently sustainable and the plans' stockholdings lost essentially all their value even without disclosure by the fiduciaries.  Moreover, if the improprieties had been disclosed earlier, it is possible that Enron would not have engaged in further corporate malfeasance.  But even if

27

disclosure was not an option, the fiduciaries may have significantly reduced the harm to the plan by eliminating Enron stock as an investment option for participants and by investing the matching employer contributions in something other than Enron stock.  Assuming the truth of the Plaintiffs' allegations, the Savings Plan was purchasing stock at inflated prices as a result of Enron's fraud on the market. Merely by putting a stop to the plan's purchases, the fiduciaries would have avoided much of the losses that resulted when the bottom fell out of the market for Enron stock because the Plan would not have purchased the inflated stock in the first place. According to the Complaint, plan participants expended over $100 million on Enron stock from August to December 2001 alone (the period after Lay and Olson had received the Watkins memo).  Complaint at ¶ 689.

Defendants can point to only one ERISA case, Hull v. Policy Mgmt. Sys. Corp., No. CIV.A.3:00-778-17, 2001 WL 1836286, at *2 (D.S.C. Feb. 9, 2001), to support their argument that any action they could have taken would have violated the insider trading laws. The court in Hull, however, noted that the plaintiffs did not allege that the fiduciaries responsible for investments had any knowledge of any misinformation concerning the company stock or that they participated in the dissemination of information they knew or should have known was misleading.  Moreover, to the extent that the court suggested that fiduciaries of employee benefit plans holding employer stock might be in violation of securities laws if they refrained from additional purchases, the decision is simply wrong.  Compare Dirks, 463 U.S. at 661 (1983)(viewing the Cady, Roberts rule as requiring insiders to disclose the insider information or refrain from trading the stock).

In sum, Plaintiffs have alleged that, instead of taking some action to protect the plan participants, the fiduciaries continued to purchase stock at inflated prices, which proved

unsustainable and ultimately resulted in millions of dollars in additional losses – losses that would not have occurred if the plan had simply not continued to purchase the stock.  While the Administrative Committee arguably could not have sold the plan's Enron stock without full market disclosure, they were neither allowed under ERISA nor required under securities law to do nothing.

V.    PLAINTIFFS' CLAIMS THAT DEFENDANTS IMPRUDENTLY ACQUIRED AND RETAINED ENRON STOCK FOR THE PLANS ARE NOT DEFEATED BY PLAN TERMS THAT PROVIDE FOR INVESTMENT IN ENRON STOCK

Count I of the Complaint alleges that various Defendants violated their fiduciary duties in connection with the acquisition and retention of Enron stock for the Savings Plan and the ESOP. Specifically, Plaintiffs allege that Defendants breached their duty of prudence by, among other things, selecting Enron stock as an investment alternative for participants to direct the investment of their employee contributions to the Savings Plan; inducing the Savings Plan participants to direct that their employee contributions be invested in Enron stock; investing employer contributions to the Savings Plan in Enron stock and accepting Enron stock as employer contributions to that plan; and inducing the Savings Plan and ESOP participants to direct or allow the plans' fiduciaries to maintain the plans' investments in Enron stock.  Complaint at ¶ 740.

Defendants contend that Count I fails to state a claim as a matter of law because the plan documents required them to take the actions Plaintiffs claim breached Defendants' fiduciary duties.  Defendants assert, in other words, that Plaintiffs do not challenge their discretionary acts as fiduciaries, but rather, challenge the design of the plans themselves and the acts of the plan settlers who wrote the plans' provisions.  As discussed below, Defendants' argument is without merit.  The investment and management of plan assets is inherently a fiduciary activity subject to

ERISA's fiduciary duties.  See ERISA § 3(21), 29 U.S.C. § 1102(21), (defining a fiduciary as a person who exercises any authority or control respecting management or disposition of plan assets).  Moreover, in most instances, the plans did not require the Defendants to engage in the challenged conduct.  Even where the plans arguably mandated Defendants' actions, ERISA § 404(a)(1)(D), 29 U.S.C. 1104(a)(1)(D), forbids fiduciaries from following the plan documents if doing so would be imprudent or otherwise violate ERISA.  Therefore, the plan documents do not, as a matter of law, defeat the claims in Count I.

> A.    Defendants May Be Held Liable for Imprudently and Disloyally Acquiring and Retaining Enron Stock for the ESOP

The ESOP plan document provides that "the assets of the Plan will at all times be primarily invested" in Enron stock.  ESOP at Art. VII.  The plan document deems the ESOP to be primarily invested in Enron stock if such stock constitutes 80% or more of the ESOP's assets. Id.  The ESOP Trust states the "Trustee, except as otherwise provided in this Article, shall invest all of the assets of the Trust Fund" in Enron stock.  ESOP Trust at Art. III.  The exceptions permit the Trustee to establish a cash reserve to cover expenses and cash distributions and to invest cash awaiting investment in Enron stock or distribution in short term investment vehicles.

Clearly the Trustee is an ERISA fiduciary when it makes decisions with respect to the investment of the ESOP's assets.  Section 3(21) of ERISA expressly provides that a person is a fiduciary to the extent he "exercises any authority or control respecting management or disposition of [a plan's] assets."  29 U.S.C. § 1002(21).

ERISA § 404(a)(1)(D) required Defendants to follow the terms of the plan document only "insofar as such documents and instruments are consistent with the provisions of [title I] and title IV" of ERISA.  29 U.S.C. § 1104(a)(1)(D).  The Defendants had a duty under § 404(a)(1)(D) to ignore the terms of the plan document where those terms required them to act

imprudently in violation of ERISA § 404(a)(1)(B).  29 U.S.C. § 1104(a)(1)(B).  Central States,

472 U.S. at 568 ("trust documents cannot excuse trustees from their duties under ERISA").  The

Fifth Circuit and other courts have uniformly held that ESOP fiduciaries must act prudently and

solely in the interest of the participants and beneficiaries in deciding whether to purchase or

retain employer securities despite plan language requiring the ESOP to purchase employer

securities.  See, e.g., Donovan v. Cunningham, 716 F.2d 1455, 1467 (5th Cir. 1983), cert. denied,

467 U.S. 1251 (1984) ("Though freed by Section 408 from the prohibited transaction rules,

ESOP fiduciaries remain subject to the general requirements of Section 404");  Kuper v.

Iovenko, 66 F.3d 1447, 1457 (6th Cir. 1995); Moench v. Robertson, 62 F.3d 553, 569 (3rd Cir.

1995), cert. denied, 516 U.S. 1115 (1996); Fink v. National Sav. Bank & Trust Co., 772 F.2d 951

(D.C. Cir. 1985) (ERISA's prudence and loyalty requirements apply to all investment decisions

made by employee benefit plans, including those made by plans that may invest 100% of their

assets in employer stock); Eaves v. Penn, 587 F.2d 453, 459-60 (10th Cir. 1978) ("While an

ESOP fiduciary may be released from certain per se violations on investments in employer

securities . . . in making an investment decision of whether or not a plan's assets should be

invested in employer securities, an ESOP fiduciary, just as fiduciaries of other plans, is governed

by the 'solely in the interest' and 'prudence' tests of §§ 404(a)(1)(A) and (B)"); Canale v. Yegan,

789 F. Supp. 147, 154 (D.N.J. 1992); Ershick v. Greb X-Ray, 705 F. Supp. 1482, 1487 (D. Kan.

1989), aff'd, 948 F.2d 660 (10th Cir. 1991) (plan terms authorizing ESOP fiduciary to invest up to

100% of plan assets in employer stock could be followed only if the investment decision was

prudent); Central Trust Co. v. American Avents Corp., 771 F. Supp. 871, 874-76 (S.D. Ohio

1989) (ESOP trustee properly ignored pass-through voting provisions that would have prevented

sale of an ESOP's stock where the trustee determined that such a sale would be prudent).  This

same rule applies to plans that are not ESOPs. Even if the plan document requires an investment, the fiduciaries must override it if it violates ERISA. Laborer's Nat'l Pension Fund v. Northern Trust Quantitative Advisors, Inc., 173 F.3d 313, 322 (5th Cir.) (investment manager must disregard plan if investing plan assets as required by plan would violate its duty of prudence), cert. denied, 528 U.S. 978 (1999); In re Ikon Office Solutions, Inc. Sec Litig, 86 F.Supp. 481, 492-493 (E.D. Pa. 2000); Arakelian v. National Western Life Ins. Co., 680 F. Supp. 400, 405-406 (D.D.C. 1987); see also Opinion Letter No. 90-05A, 1990 WL 172964, at * 3 (Mar. 29, 1990) (despite plan provisions to contrary, it is responsibility of fiduciaries to determine, based on all the relevant facts and circumstances, the prudence of investing large percentage of plan assets in qualifying employer securities); Opinion Letter No. 83-6A, 1983 WL 22495, at *1-*2 (Jan. 24, 1983) (same).

In Moench, the Third Circuit held that the ESOP fiduciary is "entitled to a presumption that it acted consistently with ERISA" that can be overcome by "establishing that the fiduciary abused its discretion by investing in employer securities." 62 F.3d at 571. To rebut that presumption:

> [P]laintiff may introduce evidence that "owing to circumstances not known to the settlor and not anticipated by him [the making of such investment] would defeat or substantially impair the [purposes] of the trust."

Id., quoting Restatement (Second) of Trusts § 227 c. g. The court also found that:

> [A]s the financial state of the company deteriorates ESOP fiduciaries who double as directors of the corporation often begin to serve two masters. And the more uncertain the loyalties of the fiduciary, the less discretion it has to act.

62 F.3d at 571-72. Furthermore, "[w]hen a fiduciary has dual loyalties, the prudent person standard requires that he make a careful and impartial investigation of all investment decisions." Id. at 571, quoting Martin v. Feilen, 965 F.2d 660, 670 (8th Cir 1992). The Sixth Circuit adopted

the Moench analysis in Kuper, 66 F.3d at 1459.  In the view of these courts, the decision to continue holding employer stock is due some deference in light of the Congressional policy to promote ESOPs, but the fiduciaries are not entitled to the complete pass from liability that the Defendants seek here.  These courts also recognized the paramount importance of  "vigorously enforcing standards of fiduciary responsibility."  Moench, 62 F.3d at 568, quoting Cunningham, 716 F.2d at 1466.

Accordingly, Plaintiffs' claim that Defendants imprudently purchased or retained Enron stock cannot be defeated by the language in the Enron plan document requiring the assets to be primarily invested in Enron stock.  This is true whether or not this court adopts the somewhat more deferential standard of review for such decisions in Moench and Kuper.  Ultimately, the court must decide whether, based on all the facts and circumstances, the Defendants acted prudently, and this decision cannot be appropriately made upon a motion to dismiss for failure to state a claim.

B.     Defendants May Be Held Liable for Acquiring and Retaining Enron Stock in the Savings Plan

1.     The Savings Plan Fiduciaries Were Not Required, Either by the Terms of the Savings Plan or Under ERISA, to Make Enron Stock an Investment Alternative for Employee Contributions

ERISA requires that plan assets be held in trust and that the trustee (or the named fiduciary who directs the trustee) have "exclusive authority and discretion to manage and control the assets of the plan."  ERISA § 403(a).  Here, the Administrative Committee was the named fiduciary with responsibility for plan assets, with the power to direct the trustee who held the Savings Plan assets.  See Savings Plan, Art. XV.2; Trust Agreement, Art. 1.1.[8]  The

---

[8] As explained infra, at 47-49, the status of the trustee as a directed trustee does not eliminate the trustee's liability.

Administrative Committee also had the specific authority to direct the trustee as to the investment in Enron stock "as the Committee may deem appropriate." See Savings Plan, Art. XIII.7(j).

Furthermore, the Savings Plan permitted the participants to direct that their employee contributions be invested in one or more of several investment alternatives that included, during the relevant period, Enron stock. See Savings Plan, Art. V.17. Under the Savings Plan and the Trust Agreement the Administrative Committee was responsible for selecting the investment alternatives. Id.; see Trust Agreement, Art. 4. While the Trust Agreement included the Enron stock fund as an investment fund alternative, it also stated that the Committee had the authority to terminate any existing investment alternatives at any time. Trust Agreement, Art. 4. Thus, under the trust agreement, even though the participants could direct that their employee contributions be invested in Enron stock, the plan's fiduciaries still had fiduciary responsibility for insuring that all of the plan's investments were prudent investments, including the Enron stock. With respect to employer contributions, the Savings Plan provided that such contributions should be primarily in shares of Enron stock, but did not require that all contributions should be so invested. Savings Plan V.16(a).

Thus, even under the terms of the Savings Plan, the Administrative Committee had discretion to eliminate Enron stock as an employee investment option and to invest at least some of the employer contributions in other investments. However, even if the Plan purported to limit the fiduciaries' discretion to some extent, as it arguably did in stating that employer contributions should be invested primarily in Enron stock, Defendants had a duty to disregard the plan where following it would be an imprudent act or would otherwise violate ERISA, as discussed supra, at 30-32.

The Complaint alleges that Defendants acted imprudently in retaining Enron as an investment alternative and inducing participants to select that alternative; therefore, it states a claim with respect to the employee contributions.  Complaint at ¶¶ 687, 691, 740.  Moreover, Count I of the Complaint alleges that the fiduciaries violated ERISA when they purchased and retained Enron stock with employer contributions when they knew or should have known that doing so was imprudent (Complaint at ¶ 740); therefore, it states a claim as to the employer match.

2.      ERISA § 404(c) Does Not Relieve the Fiduciaries of Responsibility for the Investment in Enron Stock

The only circumstances in which ERISA relieves the fiduciary of responsibility for a participant-directed investment is when the plan qualifies as a 404(c) plan.  ERISA § 404(c) applies to individual account plans that are designed and operated so that participants exercise independent control over the assets in their accounts. Under ERISA § 404(c), 29 U.S.C. § 1104(c), a "person who is otherwise a fiduciary" is not liable for losses to the plan resulting from the participant's selection of investments in his own account, provided that the participant exercised control over the investments and the plan met the detailed requirements of a Department of Labor regulation.

The Department of Labor regulation sets forth the circumstances under which a plan qualifies as a 404(c) plan and a participant exercises control.  See 29 C.F.R. § 2550.404c-1.  To qualify as a 404(c) plan, the participants must be provided an "explanation that the plan is intended to constitute a plan described in section 404(c) and [the regulations], and that the fiduciaries of the plan may be relieved of liability for any losses which are the direct and necessary result of investment instructions given by such participant or beneficiary."  29 C.F.R. § 2550.404c-1(b)(2)(B)(1)(i).  Moreover, the regulation contains extensive provisions relating to

35

the acquisition or sale of employer securities.  See 29 C.F.R. § 2550.404c-1(d)(2)(E)(4).  The regulations include, among other things, requirements relating to the dissemination of information to participants on the same basis as to shareholders, pass-through voting rights, and confidentiality of information relating to pass-through voting rights.

Enron argues that the Plaintiffs failed to make any factual allegations in support of their assertion that the Savings Plan does not qualify as a 404(c) plan.  Enron Corp's Motion to Dismiss, at 46.  The Plaintiffs, however, have alleged that the Savings Plan does not qualify as a 404(c) plan because the participants were not informed that it was intended to be one.  See Plaintiffs' Opposition at 33-35.  Moreover, Enron, and not the Plaintiffs, bears the burden of showing that § 404(c) applies.  In re Unisys, 74 F.3d at 446; Allison v. Bank One-Denver, 289 F.3d 1223, 1238 (10th Cir. 2002).  Here, Enron has not established that ERISA § 404(c) applies to the Savings Plan in general or to the choice of  Enron stock as an investment option within the Savings Plan in particular.

At this stage in the proceedings and without any showing at all by Enron, there is no basis to conclude that the Savings Plan qualifies as a 404(c) plan.  Enron has not demonstrated that the participants and beneficiaries were provided with an explanation that the plan was intended to qualify as a 404(c) plan or that the fiduciaries would be relieved of liability for losses under the circumstances set forth in the regulation.  Nor has Enron demonstrated that the Savings Plan meets any of the specific requirements relating to the investment in employer stock.  Absent a showing that the plan qualifies as a 404(c) plan, the fiduciaries retained full fiduciary responsibility for all of the plan's investments, including the Enron stock that the participants directed the Trustee to purchase with their employee contributions.  In re Unisys, 74 F.3d at 443-47.

Even if the Savings Plan were a 404(c) plan, the Defendants could not escape liability if the allegations of the Complaint are true. By its terms, ERISA § 404(c) provides relief from ERISA's fiduciary responsibility provisions that is both conditional and limited in scope. The scope of ERISA § 404(c) relief is limited to losses or breaches "which resulted from" the participant's exercise of control. Section 404(c) plan fiduciaries are still obligated by ERISA's fiduciary responsibility provisions to prudently select the investment options under the Plan and to monitor their ongoing performance. See Advisory Opinion No. 98-04(A) ("In connection with the publication of the final rule regarding participant directed individual account plans, the Department emphasized that the act of designating investment alternatives in an ERISA section 404(c) plan is a fiduciary function to which the limitation on liability provided by section 404(c) is not applicable."); Letter from the Pension and Welfare Benefits Administration, U.S. Department of Labor to Douglas O. Kant, 1997 WL 1824017, at *2 (Nov. 26, 1997)("The responsible plan fiduciaries are also subject to ERISA's general fiduciary standards in initially choosing or continuing to designate investment alternatives offered by a 404(c) plan.").[9] Consequently, if, as alleged, the Defendants violated their fiduciary duties when they continued to offer Enron stock as an investment option, they are personally liable for the losses.

---

[9] The preamble to the regulation notes that "a fiduciary is relieved of responsibility only for the direct and necessary consequences of a participant's exercise of control." See 57 Fed. Reg. 46,922 (1992). A clarifying footnote explains that the act of designating a plan investment option is not a direct and necessary result of any participant direction:

Thus, for example, in the case of look-through investment vehicles [like a GIC], a plan fiduciary has a fiduciary obligation to prudently select such vehicles, as well as a residual fiduciary obligation to periodically evaluate the performance of such vehicles to determine . . . whether they should continue to be available as participant investment options.

Id. at n.27.

VI.    UNDER FIFTH CIRCUIT PRECEDENT, PLAINTIFFS ARE NOT REQUIRED TO
       PROVE THAT DEFENDANTS' FIDUCIARY BREACHES CAUSED THE PLANS'
       LOSSES; DEFENDANTS HAVE THE BURDEN OF PROOF ON CAUSATION

The Administrative Committee Defendants argue that Plaintiffs have not alleged that

Defendants' fiduciary breaches caused the plans' losses.  AC Mot. to Dismiss at pp. 25-29.

Citing cases from the Second and Sixth Circuits, Defendants claim in this regard that Plaintiffs

have the burden of proving causation.[10]  The Fifth Circuit, however, is among the several courts

that have rejected this approach.  In McDonald, the Fifth Circuit held that once a plaintiff proves

a breach of fiduciary duty and a prima facie case of loss to the plan, the burden of persuasion

shifts to the fiduciary to prove that the loss was not caused by the breach of duty.  60 F.3d. at

237; accord Leigh, 727 F.2d at 138-139; Martin v. Feilen, 965 F.2d 660, 671 (8th Cir. 1992); Kim

v. Fujikawa, 871 F.2d 1427, 1430-1431 (9th Cir. 1989); Davis v. Torvick, No. C-93-1343 CW,

1996 WL 266127, at *5 (N.D. Cal. May 2, 1996); see also Ehlmann v. Kaiser Found. Health

Plan, 20 F. Supp. 2d 1008, 1011 (N.D. Tex. 1998) ("[E]ven if Plaintiffs had failed to plead

causation, the burden of proof on that element in an ERISA breach-of-fiduciary case lies with

Defendants."), aff'd, 193 F.3d 552 (5th Cir.), cert. dismissed, 530 U.S. 1291 (2000).  For this

reason, Plaintiffs' purported failure to plead causation provides no basis for dismissal.

---

[10] Silverman v. Mutual Benefit Life Ins. Co., 138 F.3d 98, 105-06 (2nd Cir.), cert. denied, 525
U.S. 876 (1998); Kuper, 66 F.3d at 1459-60; but see Secretary v. Gilley, 209 F.2d 877 (6th Cir.
2002).

VII.    THE COMPLAINT STATES A CLAIM THAT ADMINISTRATIVE COMMITTEE
        MEMBERS, LAY, AND NORTHERN TRUST BREACHED THEIR FIDUCIARY
        DUTIES TO THE ENRON SAVINGS PLAN WITH REGARD TO THE LOCKDOWN
        PERIOD

   A.    Plaintiffs Have Alleged Sufficient Facts for Purposes of Establishing Article III
         Standing to Challenge the Defendants' Conduct in Relation to the Lockdown
         Period

The Administrative Committees (AC Mot. to Dismiss 29-32), Kenneth Lay (Lay Mot. to

Dismiss 18-19), Administrative Committee member Cindy Olson (Olson Mot. to Dismiss 14-16),

and Northern Trust (Northern Trust Mot. to Dismiss 43-44) have moved to dismiss Count II of

the Complaint on the ground that the Plaintiffs have failed to allege personalized injury from the

alleged fiduciary breaches regarding the lockdown period, and hence lack standing under Article

III to maintain the claim.  Count II challenges the Defendants' conduct in relation to a "lockdown

period," during which the plans were switching from one administrator (Northern Trust) to

another (Hewitt Associates) and participants were not permitted to direct any sale of shares in

their accounts.

A party invoking federal jurisdiction bears the burden of establishing the elements of

Article III standing: (1) the plaintiff must have suffered an injury in fact, i.e., an invasion of a

legally protected interest that is concrete and particularized, and actual or imminent; (2) there

must be a causal connection between the injury and the conduct complained of, i.e., the injury

has to be fairly traceable to the challenged conduct of the defendant (and not some third party);

and (3) it must be likely as opposed to merely speculative that an injury will be redressed by a

favorable judgment of the court.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

In this case, Plaintiffs allege that the failure to provide adequate information about the

lockdown, or to postpone the lockdown in light of the news about Enron's unraveling financial

situation, was a fiduciary breach.  They allege that this prevented participants from directing the

sale of Enron stock during this period, and "[a]s a direct result" the plan, and indirectly the participants, suffered loss in the form of the diminished value of the stock during the lockdown period. Complaint at ¶ 754. The count thus plainly alleges that Defendants committed fiduciary breaches that caused loss to the plan and its participants, and the count seeks an order, available under §§ 409(a) and 502(a)(2) of ERISA, 29 U.S.C. §§ 1109(a) and 1132(a)(2), to redress that loss. Complaint at ¶ 760. The Complaint thus plainly alleges the requisites of Article III standing: injury, causation, and redressability.

Defendants argue that Plaintiffs have not alleged a constitutionally adequate personal injury because they have not alleged that they would have directed the sale of their Enron stock during this period.[11] Although Defendants characterize this as a deficiency in the Plaintiffs' pleading of "injury," Defendants' argument instead seems to be directed at the Plaintiffs' allegations of causation, i.e., whether plaintiffs' loss is fairly traceable to the alleged fiduciary breach. Defendants do not dispute, for example, that Plaintiffs allege a decrease in the value of plan-held Enron stock during the lockdown period, and do not (and of course could not) deny

---

[11] Defendants also suggest that the Complaint is deficient because the named Plaintiffs have failed to allege that they were harmed individually. Plaintiffs, however, allege generally that they are members of the class of participants and that their claims are typical of the class. Complaint at ¶ 729. Moreover, the Complaint, including the allegations in Count II, the lockdown claim, contains several specific references to the named Plaintiffs' losses. See Complaint at ¶¶ 750, 754, 756 (alleging with respect to Count II that 'Plaintiffs and the Plans' other participants and beneficiaries" suffered losses) (emphasis added); see also Complaint at ¶¶ 23-42 (describing loss in value of named plaintiffs' plan-held Enron stock).

Some Defendants argue (AC Mot. to Dismiss at 31) that the named Plaintiffs lack standing because they have failed to allege that they complained about the impending lockdown. Defendants do not explain, however, why such complaint is an element of either the ERISA fiduciary breach claim or Article III standing. In any event, Plaintiffs expressly allege that Defendant Northern Trust proceeded with the lockdown "despite the fact that plan participants were complaining about the [l]ockdown in light of Enron's unraveling financial situation." Complaint at ¶ 13.

that this loss in value is an injury cognizable under Article III. Rather they contend that the

fiduciaries' decision to implement the lockdown (as well as any failure to provide adequate

information about it) could not have caused the loss to the participants unless the participants

would have directed the sale of plan-held Enron stock during this period.

Whether Defendants' argument is viewed as addressing injury or causation, the argument

plainly lacks merit because it conflicts with Supreme Court teaching that a plaintiff's burden of

establishing standing at the pleading stage of litigation is "relatively modest." Bennett v. Spear,

520 U.S. 154, 171 (1997). As the Court has explained:

> [E]ach element of Article III standing "must be supported in the same way as any other
> matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree
> of evidence required at the successive stages of the litigation." . . . Thus, while a plaintiff
> must "set forth" . . . "specific facts" to survive a motion for summary judgment, Fed. R.
> Civ. P. 56(e), and must ultimately support any contested facts . . . at trial, "[a]t the
> pleading stage, general factual allegations of injury . . . may suffice, for on a motion to
> dismiss we 'presume . . . specific facts that are necessary to support the claim.'"

Bennett, 520 U.S. at 167-68, quoting Lujan, 504 U.S. at 561; see also National Org. for Women,

Inc. v. Scheidler, 510 U.S. 249, 255 (1994) (complaint must be sustained against motion to

dismiss if there are any facts establishing standing that could be proved consistent with the

complaint's allegations).[12]

Furthermore, it would be particularly inappropriate to impose detailed pleading

requirements, such as Defendants advocate, regarding whether the fiduciary breach caused a loss

---

[12] The Supreme Court's explanation of the pleading requirements for Article III standing is in
keeping with its recent decision in Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002), which,
although it did not address constitutional standing, strongly affirmed the principle of notice
pleading under the Federal Rules of Civil Procedure. The Court held in Swierkiewicz that an
employment discrimination plaintiff need not allege facts in his complaint meeting the
requirements of a prima facie case of discrimination, see McDonnell Douglas Corp. v. Green,
411 U.S. 792 (1973), and that requiring him to do so would be inconsistent with the principle,
embodied in Rule 8(a), Fed. R. Civ. P., that a complaint need only give fair notice of the
plaintiff's claim and the ground upon which it rests. 122 S. Ct. at 998-99.

to the plan and Plaintiffs.  As stated earlier, <u>supra</u>, at 38, under Fifth Circuit precedent, if Plaintiffs carry their burden of establishing a breach and a prima facie case of loss – <u>i.e.</u>, prove that the fiduciaries violated their duties of loyalty or prudence with regard to the lockdown, and that the value of the stock declined during the lockdown period – liability could be established in this case without Plaintiffs' producing evidence that they would have directed the sale of stock, since the burden of persuasion would shift to the Defendants.  <u>McDonald</u>, 60 F.3d at 237.  Thus, it would be inappropriate to require that Plaintiffs' Complaint contain allegations concerning a matter which Defendants may have to prove.  <u>Cf.</u> <u>Swierkiewicz</u>, 122 S. Ct. at 997 (it would be "incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered").[13]

Moreover, to the extent Defendants are arguing that a particular showing of loss to Plaintiffs' individual accounts or benefits, as opposed to a loss to the plan, is a prerequisite to Article III standing, they are in error.   Defendants, for example, rely (AC Mot. to Dismiss 30; NT Mot. to Dismiss 43) on <u>Harley v. Minnesota Mining & Mfg. Co.</u>, 284 F.3d 901, 906 (8th Cir. 2002), which held that a participant in an over-funded defined benefit plan did not have standing to sue under Article III to recover losses to the plan caused by a fiduciary breach, because the plan's surplus was sufficiently large that the loss did not cause actual injury to the participants' interests in the plan (consisting of their accrued benefits).  As Plaintiffs explain (Plaintiffs' NT Opposition 46), <u>Harley</u> is easily distinguishable from this case, which does not involve a defined

---

[13] In their reply brief, the Administrative Committee Defendants quarrel with the application of the burden-shifting principle, noting that it only comes into play once a breach has been established and applies only to the determination of the amount of loss.  AC Reply, at 20 n.21. <u>McDonald</u>, however, states that the burden of proving causation shifts to the breaching fiduciaries.  60 F.3d at 237 (citation omitted).

benefit plan (let alone an overfunded one), but instead involves defined contribution plans that have been decimated by the loss in value of Enron stock.[14]

A participant's interest in the security of his benefits under the plan is sufficiently concrete and personal that an invasion of that interest is a cognizable injury under Article III standing, and falls well within the scope of standing principles articulated by the Supreme Court.[15] Thus, plan participants have Article III standing to recover losses to their plan resulting from a fiduciary breach whenever that recovery contributes to the value or security of the participant's interest in a plan.[16]

---

[14] Harley is not only distinguishable, it is also wrong, both as to its particular holding and its unduly restrictive notion of Article III standing in the ERISA context. See generally Financial Insts. Ret. Fund v. Office of Thrift Supervision, 964 F.2d 142 (2nd Cir. 1992) (participants had Article III standing to bring suit for breach of fiduciary duty even though defined benefit plan at issue was overfunded). Congress provided participants with standing under § 502(a)(2) to obtain plan-based relief for a fiduciary breach under § 409(a), so that they could police their own plans and bring suit to correct violations of the statute that injure plans. A participant is thus entitled to sue not only when the fiduciary breach can be demonstrated to have had a direct adverse effect on the value of the participant's individual benefit, but also when a breach has the effect of decreasing the security of his interest in a plan (and, by the same token, when the security of that interest would be strengthened by providing a remedy authorized by § 409(a)).

[15] See, e.g. Department of Commerce v. United States House of Representatives, 525 U.S. 316, 332 (1999) (resident of Indiana had standing to challenge Census Act based on likelihood challenged procedures would result in decline in the number of Indiana representatives and the consequent dilution of resident's vote); Clinton v. City of New York, 524 U.S. 417, 432 (1998) (potato growers are injured by line item veto of provision that would have given favorable tax treatment to sellers of potato processing plants, resulting in greater willingness to sell plants to potato growers); Gollust v. Mendell, 501 U.S. 115, 123 (1991) (even investor with only one share of stock would have standing to enforce prohibition against insider trading; although recovery inures only to stock issuer's benefit, indirect interest derived through potential marginal increase in the value of one share of stock is enough to confer standing).

[16] Northern Trust also challenges Plaintiffs' standing to litigate the allegations in Count III, regarding the fiduciaries' failure to diversify Savings Plan assets. Count III, however, clearly alleges that there was a fiduciary breach of failure to diversify the plan investments in accordance with the terms of the Plan, "with the result that . . . the Plan was dangerously over-weighted in Enron stock," and that "[a]s a direct and proximate result of [the breach], the Plan, and indirectly the Plaintiffs and the Plan's other participants and beneficiaries suffered losses in the hundreds of millions of dollars." Complaint at ¶¶ 765, 766. The Count seeks restoration of those losses pursuant to Section 409(a). Complaint at ¶ 767. For the reasons given above with

B.  <u>The Complaint Sufficiently Alleges that Northern Trust was a Fiduciary and that It Had Discretionary Control with Respect to the Lockdown</u>

Northern Trust asserts that the Complaint fails to state a claim that it was a fiduciary in connection with the lockdown of the Savings Plan. [17]  The determination of a person's fiduciary status requires specific fact-finding concerning the person's conduct and the surrounding circumstances in each case to decide whether the person exercised the requisite control. <u>Lancaster</u>, 55 F.3d at 1046-50.  Accordingly, fiduciary status generally is not an issue that is appropriate for resolution by a Rule 12(b)(6) motion before discovery.  Moreover, the Complaint alleges facts that, if true, state a claim that Northern Trust had fiduciary control with respect to the lockdown, and breached its obligations under ERISA.

The following facts alleged in the Complaint are undisputed: (1) Northern Trust was the trustee of the Savings Plan and held the plan's assets; (2) plan participants normally could direct Northern Trust to sell Enron stock owned by the plan and allocated to their accounts and to purchase other available investment alternatives; and (3) from October 26 to November 14, 2001, the Savings Plan participants were prevented from selling their shares of Enron stock.  <u>See</u>

---

respect to Count II, these allegations sufficiently allege the constitutional prerequisites of injury, causation, and redressability.  If anything, Northern Trust's arguments about Count III have less to do with Plaintiffs' standing than those raised regarding Count II.  The Count III arguments that Northern Trust raises (NT Mot. to Dismiss 44) -- that the Savings Plan contained a panoply of investment funds, that participants were by plan terms given choice of funds in which to invest, and that Northern Trust played no role in plan design -- are arguments going to the factual merits of the breach of duty claim, rather than to participants' standing.

[17] Although Northern Trust correctly contends that the lockdown, as such, applied solely to the Savings Plan and not to the ESOP, Motion to Dismiss at 32-33, this does not fully join Plaintiffs' argument.  Plaintiffs contend that the ESOP effectively was locked down during this time period because of the plan provision requiring participants to request a cash-out of the ESOP before the 20th of each month or else wait until the end of the following month.  <u>See</u> Response to Motion to Dismiss, at 37-38.   Plaintiffs' argument is that Northern Trust breached its fiduciary duty by following this provision, when it was clearly imprudent to do so.  <u>Id.</u>  Although Northern Trust disputes that it was a fiduciary at all under the ESOP, despite being identified as such in the

NT Brief, at 2, 7.  Count II additionally alleges that Northern Trust had the ability to postpone the lockdown until the price stabilized and that it could have refused to participate in the lockdown; Northern Trust knew or should have known the true facts concerning the value of Enron's volatile stock; it knew that the Savings Plan and the Plan's participants would lose money if they were prevented from selling during the lockdown; and participants had asked for a postponement of the lockdown.  Complaint at ¶¶ 413-16, 723, 755, 759.  As a result of Northern Trust's failure to postpone the lockdown, the Savings Plan allegedly lost hundreds of millions of dollars.  Complaint at ¶ 759.

Thus, the Plaintiffs allege that Northern Trust had the authority to stop the lockdown, was aware that the Savings Plan would lose money if the lockdown proceeded, and had knowledge of a number of red flags that should have alerted it to danger.  These allegations – that Northern Trust knew or should have known that Enron stock was in a precarious condition, had reason to think that Enron's financial condition was about to be uncovered, and knew that at least some participants wanted out – are sufficient to state a claim that Northern Trust had a duty to act, even if it was acting as a "directed trustee"[18] in this matter, as it claims.   The allegations are additionally bolstered by a number of publicly known facts that immediately predated the lockdown, and are recited in the Complaint, as matters of public knowledge that should have been known to Northern Trust (e.g., Enron had just reported that it had lost $618 million and

---

relevant plan document, this appears to be a factual dispute not amenable to resolution at this stage.

[18] Under ERISA § 403(a)(1), a trustee's responsibility for plan assets is lessened if "the plan expressly provides that the trustee or trustees are subject to the direction of a named fiduciary who is not a trustee, in which case the trustees shall be subject to proper directions of such fiduciary which are made in accordance with the terms of the plan and which are not contrary to the Act."  29 U.S.C. § 1103(a)(1).  Thus, the plan must be explicit in order to create a "directed trustee," and such trustee is still bound by the terms of ERISA, including its fiduciary provisions.

written down $1.2 billion of its net worth, and the SEC was opening an investigation of its accounting practices).  Id. at ¶¶ 413, 414, and 416.

Although Northern Trust disputes that it was a fiduciary for the purposes of the lockdown, the Complaint alleges that Northern Trust, in fact, exercised authority and control over the plan assets by imposing the lockdown, thus preventing the participants from selling the Enron shares allocated to their accounts.  Plaintiffs specifically allege that Northern Trust had "the power to stop the lockdowns from going forward as scheduled" but failed to do so.  Id. at ¶ 723.  Thus, the Complaint can fairly be read to assert that Northern Trust exercised discretionary control over the timing and length of the lockdown and that Northern Trust was a fiduciary under § 3(A)(ii) or (iii), 29 U.S.C. § 1002(A)(ii), (iii), as to the lockdown.

Northern Trust's argument that Plaintiffs should not have the opportunity to conduct discovery and prove these allegations because Northern Trust was a "directed" trustee is without merit.  As discussed below, even if Northern Trust were a directed trustee in connection with the lockdown, it could not escape its fiduciary responsibilities by following directions that it knew or should have known were contrary to ERISA or the terms of the plan.  Furthermore, as explained below, there is a factual dispute as to whether Northern Trust was a directed trustee with respect to the investments at issue under the terms of the Plan and Trust Agreement, as set forth in detail in the parties' briefs.  NT Brief, at 9-13, Plaintiffs' Reply, at 27.  Although Northern Trust points to a number of provisions showing that it was subject to direction by the Administrative Committee, the plan documents and trust agreement appear to have given it discretionary authority and control over plan assets and administration in the absence of such direction.  NT Brief, at 9, 11-13, Plaintiffs' Reply, at 12, 17, 26.  At this stage in the proceedings, there is a

factual issue as to the scope of Northern Trust's control over the length and duration of the lockdown that cannot be resolved on a 12(b)(6) motion to dismiss.

C.  Even if Northern Trust was Given Written Instructions Concerning the Lockdown, the Complaint States a Claim for Relief

Even if the Administrative Committee gave written instructions to Northern Trust as to the specific length and timing of the lockdown, the Complaint still states a claim for relief.  The Complaint alleges, apparently in the alternative, that any such lockdown instructions were improper and contrary to ERISA and that Northern Trust knew or should have known that the directions violated ERISA.  Complaint at ¶¶ 750, 755.  Thus, the Complaint adequately states a claim that Northern Trust breached its duties by following a direction that was improper or contrary to ERISA.

ERISA § 403(a), 29 U.S.C. § 1103, provides that the trustee "shall have the exclusive authority and discretion to manage and control the assets of the plan."  ERISA  § 403(a)(1), however, contains an exception to that exclusive authority:

> [T]o the extent that the plan expressly provides that the trustee or trustees are subject to direction of a named fiduciary who is not a trustee, . . . the trustees shall be subject to the proper directions of such fiduciary which are made in accordance with the terms of the plan and which are not contrary to the Act.

ERISA § 403(a)(1), 29 U.S.C. § 1103(a)(1) (emphasis added).  Under this provision, the trustee may not follow the directions of the named fiduciary if they are contrary to the terms of the plan or ERISA.  See Koch v. Dwyer, No. 98 CIV. 5519 RPP, 1999 WL 528181, at *9 (S.D.N.Y. July 22, 1999); Herman v. NationsBank Trust Co. (Georgia), 126 F.3d 1354, 1361-62, 1370 (11th Cir. 1997).

Northern Trust's argument that the trustee need only determine whether it is "clear on its face" that the direction violates the plan or ERISA is wrong and contrary to the language of

§ 403(a)(1). NT Brief, at 22. Under the standard urged by Northern Trust, the trustee would only have a duty to disregard the direction if, for example, the plan document did not authorize the named fiduciary to make such a direction or the transaction was a per se prohibited transaction with a party in interest under § 406(a), 29 U.S.C. § 1106(a). Section 403(a)(1), however, is not so limited and requires the fiduciary to disregard any directions that are "contrary to the Act." Accordingly, even if Northern Trust had no discretionary role under the Savings Plan, as it asserts, it could not follow directions that it knew or should have known were imprudent or disloyal in violation of ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B).

Certainly where, as here, the trustee allegedly already has actual knowledge of the facts and circumstances that cause the direction to violate the prudence or loyalty requirements (without any additional investigation), the trustee has the same duty to disregard the direction that he has if the violation were clear on its face. Koch, 1999 WL 528181, at *10 (neither the statute nor the case law uses a "clear on their face" test; directed trustee can be held liable for following a direction that he knew was imprudent). Congress could not have intended directed trustees to disobey directions that on their face violate ERISA or the plan but to obey directions that they otherwise know violate ERISA.

This interpretation is consistent with the common law of trusts, which imposed a duty of inquiry when there were sufficient red flags to alert the directed trustee to a potential breach:

> [W]here the holder of the power [to direct the trustee] holds it as a fiduciary, the trustee is not justified in complying with his directions if the trustee knows or ought to know that the holder of the power is violating his duty to the beneficiaries as fiduciary in giving the directions. . . .

IIA Scott on Trusts § 185, at pp. 574-55 (4th ed. 1987) (emphasis added).  Essentially, the

common law imposed a duty on the directed trustee to disregard directions where it knew or

should have known that the direction was contrary to fiduciary duties.

This is not to say, however, that a directed trustee has an independent obligation to verify

the prudence of every transaction or to duplicate the work of the plan fiduciaries that have

discretionary authority over the management of plan assets.  See Nationsbank, 126 F.3d at 1361-

62, 1370-71 (directed trustee does not have a direct obligation of prudence under ERISA § 404,

29 U.S.C. § 1104; its obligation is simply "to make sure the directions are proper, in accordance

with the terms of the plan, and not contrary to ERISA," id. at 1371).  See also Maniace v.

Commerce Bank of Kansas City, N.A. v. Zeller, 40 F.3d 264, 267-268 (8th Cir. 1994) (holding

that directed trustee did not act as a fiduciary when following directions of named fiduciary but

was subject to the obligations of ERISA § 403(a)(1)), cert. denied, 514 U.S. 111 (1995); but see

FirsTier Bank, N.A. v. Zeller, 16 F.3d 907, 911 (8th Cir.)(directed trustee had to adhere to the

duty of prudence under ERISA § 404 to inquire into the merits of participant loans, even though

directed by another fiduciary), cert. denied, 513 U.S. 817 (1994).

In this case, the Plaintiffs adequately allege that Northern Trust knew or should have

known that it was imprudent to proceed with the lockdowns.  As set forth in the preceding

section, they allege not only that Northern Trust actually knew that the lockdown was going to

injure participants, but that they were aware of numerous red flags that should have alerted

Northern Trust that the lockdown would put participants' accounts at risk.  Accordingly, the

Complaint cannot be dismissed for failure to state a claim.   Northern Trust may ultimately show

that it neither knew nor should have known that anything was amiss or that the lockdown was

imprudent.  The issue is factual, however, and cannot be resolved on a motion to dismiss for failure to state a claim.

VIII.   PLAINTIFFS' OFFSET CLAIM IS A CLAIM FOR EQUITABLE RELIEF UNDER §
        502(a)(3) OF ERISA

Under the terms of the Cash Balance Plan, the benefits accrued by the Plaintiffs are offset by the market value of stock held in the ESOP as of certain past dates when the stock was worth more than it is today.  As a result of the use of those past stock prices as an offset, retirees receive smaller benefits than they would receive if benefits were offset only by the negligible value of Enron's stock today.  The Plaintiffs allege that because the Administrative Committee knew or should have known that the market value of Enron stock was substantially less than the value set by the plan, "these Defendants had a fiduciary duty to compute each component of the offset according to the true value as opposed to the artificially inflated market price; a duty to refuse to permanently fix a component of the offset on a basis that did not reflect the stock's true value on the relevant dates; and/or a duty to disclose that the price at which components of the offset would be fixed were artificially inflated or otherwise not reflective of the true value of the stock on the relevant dates."  Pl. Mem. in Opp. at 71.  The Defendants argue both that they did not violate any fiduciary duty with regard to the offset and that the loss remedy asserted by the Plaintiffs is unavailable under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3).

It is not clear to the Secretary whether the Plaintiffs' offset argument, as pleaded, is sustainable.  This claim, unlike the others addressed in this brief, appears to raise an issue of plan design, rather than fiduciary conduct or the management of plan assets.  However, Defendants have not simply challenged their liability under the Plaintiffs' complaint, but have argued that § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), would provide no remedy even if there were a fiduciary breach.  Because of the importance of the remedial issue, the Secretary addresses it

here. If the claim is proven, the relief sought fits comfortably within ERISA § 502(a)(3), which provides that a participant or beneficiary may bring a civil action to obtain "appropriate equitable relief." 29 U.S.C. § 1132(a)(3). Moreover, contrary to the Defendants' argument, ERISA allows participants to bring both § 502(a)(3) and § 502(a)(1)(B) claims, in cases where a § 502(a)(1)(B) claim alone cannot provide complete relief.

A.    Monetary Relief is Available Against the Administrative Committee Members Under § 502(a)(3) of ERISA

The Secretary agrees with Plaintiffs that monetary relief against breaching fiduciaries is equitable relief within the meaning of § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), under Great-West v. Knudsen, 122 S. Ct. 708, 712-16 (2002). Indeed, Plaintiffs' ERISA Opposition at pp. 76-82 is largely adapted from an amicus brief the Secretary of Labor filed on appeal in another case, Ostler v. OCE-USA, No. 01-380l, 2001 WL 1191183 (N.D. Ill. Nov. 4, 2001) (appeal to Seventh Circuit voluntarily dismissed and claim paid), and therefore the Secretary need not reiterate Plaintiffs' arguments here. Under the common law, monetary relief from a breaching fiduciary was traditionally, typically, and exclusively available from the courts of equity, and is therefore "equitable" under the reasoning of Great-West. As stated in the Restatement on Trusts (one of the authoritative texts which Great-West urges courts to consult in determining whether relief is equitable), monetary relief against breaching fiduciaries is equitable when it restores the beneficiary to "the position he would have been if the trustee had not committed the breach of trust." Restatement (Second) of Trusts, § 205, at 458 cmt. a.

The Administrative Committee Defendants err when they assert that Plaintiffs cannot bring a claim under § 502(a)(3) because they purportedly could assert an immediate and unconditional right of payment against the fiduciaries and therefore could bring an action at law against the fiduciaries for payment of money allegedly due. Defendants are alluding to a

recognized legal remedy that is available against trustees in certain narrow circumstances not present here.  See Restatement (Second) of Trusts § 198(1) (1959)("If the trustee is under a duty to pay money immediately and unconditionally to the beneficiary, the beneficiary can maintain an action at law against the trustee to enforce payment.").[19]  The Enron participants are not seeking to enforce an unconditional right to monetary payment, and have no remedy at law in any case (§ 502(a)(3) authorizes only "equitable relief" and the Plaintiffs have no cause of action at law for benefits under § 502(a)(1)(B) as set forth below).  Rather, they are seeking relief for fiduciary breaches.  The word "unconditional" in the Restatement is crucial:  it refers to instances in which a trustee undoubtedly owes a sum certain to a beneficiary and has simply refused to pay it.  As one court analyzed,

> It seems to us that the word "unconditionally" [in § 198(1)] was intended to mean without the intervention of equity.  This interpretation is borne out by . . . illustrations which follow the text.  Each of the illustrations presents a situation in which there is no possible need for the intervention of equity, the only question being whether the trustee failed to perform a ministerial act expressly mandated by the trust instrument.  The court's function in such a case is no different from that performed in the interpretation of a contract, or any other document.  The instant case, on the other hand, presents the traditionally equitable question of whether or not the alleged "common law trustee" breached its fiduciary duty.  Unless and until that equitable question is resolved in plaintiffs' favor, the alleged trustee is under no duty to make any payment whatsoever.

Nobile v. Pension Comm. of Pension Plan for Employees of New Rochelle Hosp., 611 F. Supp. 725, 728-29 (S.D.N.Y. 1985).[20]  See also 76 Am. Jur. 2d Trusts § 667 (2002) ("The remedies of

---

[19] While the Secretary does not agree with Defendants that the Plaintiffs have a remedy available at law, it is important to note that Defendants have ignored the Restatement's explicit statement in § 198(1) that these are "[c]oncurrent remedies.  Although the beneficiary can maintain an action at law against the trustee as stated in this Section, he also has equitable remedies against the trustee.  See § 199."  Therefore, even if Defendants were correct that there was a remedy at law here, Plaintiffs could also have a remedy in equity.

[20] The Nobile court also notes that Jefferson Nat'l Bank of Miami Beach v. Central National Bank of Chicago, 700 F.2d 1143, 1149 (7th Cir. 1983), a case relied on by Enron's Administrative Committee Defendants, inexplicably omits the word "unconditionally" from the part of its

the beneficiaries of a testamentary trust against the trustee for a breach of trust are exclusively

equitable; an action by beneficiaries for breach of trust is an equitable proceeding, even if money

damages are the only remedy sought."); Vartanian v. Monsanto Co., 880 F. Supp. 63, 72 (D.

Mass. 1995) ("[C]ourts have uniformly found that 'entitlement to benefits due immediately and

unconditionally' applies only to straightforward breach of contract claims. . . . In this instance, a

complicated claim for breach of a trustee's fiduciary duty – most certainly an equitable claim – is

at the bottom of both plaintiffs'" claims.).

      The Administrative Committee Defendants also err in claiming that monetary relief to an

individual beneficiary, that does not inure to the benefit of the entire trust, is not equitable relief

within the meaning of §§ 502(a)(3) and (5), 29 U.S.C. §§ 1132(a)(3) and (5).  Indeed, Varity

rejects this very argument, holding that "the sort of relief provided by both subsection (5) and, by

implication, subsection (3), would include an award to 'participants and beneficiaries,' rather than

to the 'plan,' for breach of fiduciary obligation."  516 U.S. at 510 (noting that § 502(l) "calculates

a certain civil penalty as a percentage of the sum 'ordered by [the] court to be paid by such

fiduciary . . . to a plan *or its participants and* beneficiaries' under subsection (5)." (emphasis and

ellipses in original)).

      B.    There is no Bar to Bringing Both § 502(a)(3) and § 502(a)(1)(B) Claims in the
              Same Action when § 502(a)(1)(B) Cannot Provide Complete Relief

      The Plaintiffs' offset claim does not seek benefits due under the plan under

§ 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).  Section 502(a)(1)(B) authorizes a cause of action for

breaches of the contractual agreements set forth in the terms of an ERISA plan and provides for

---

opinion that quotes the text of § 198.  This material omission could account for Jefferson Bank's
incorrect interpretation of § 198.  As the Nobile court says of Jefferson Bank and the only other
case cited by the Enron Administrative Committee Defendants, Dixon v. Northwestern Nat'l

remedies in the form of recovery of benefits due under the plan, enforcement of rights under the plan, and a declaration of future rights to benefits under the plan. A § 502(a)(1)(B) claim, and the remedies that provision makes available, are all essentially contractual in nature. Thus, the purpose of § 502(a)(1)(B) is to enforce the contractual terms of the plan and the remedies provided therein are intended to give the claimants the benefit of the bargain embodied in the plan. Significantly, ERISA § 502(a)(1)(B) does <u>not</u> provide a remedy of disgorgement of unjust enrichment or other equitable relief. Success on a claim under § 502(a)(1)(B) often turns on an interpretation of language contained in the plan and requires a showing that participants did not receive benefits promised by the terms of the plan.

The Administrative Committee Defendants are incorrect in stating that Plaintiffs' claim is truly a claim under § 502(a)(1)(B). Plaintiffs' offset claim in Count IV does not seek benefits under the plan; to the contrary, Plaintiffs admittedly have received benefits under the plan calculated using the plan formula, which defined the benefit by reference to the market price of the stock as of specified dates. Plaintiffs argue that the fiduciaries had a duty, under §§ 404(a)(1)(A) and (B), to disregard the plan documents and to compute the offset according to the "true value" of the stock, rather than the artificially inflated value that resulted from the plan formula. Plaintiffs also argue that the fiduciaries had a duty to disclose to participants and beneficiaries that the offset amount was being artificially inflated, and a duty to refuse to permanently fix a component of the offset on a basis that did not reflect the stock's true value on the relevant dates. Complaint at ¶ 773. This does not amount to a "disguised claim for plan benefits." Since Plaintiffs are not seeking benefits in accordance with the formula found in the

<u>Bank</u>, 297 F. Supp. 485 (D. Minn. 1969), "We believe that those cases misread the cited Restatement section, and that their conclusion was unsound." <u>Nobile</u>, 611 F. Supp. at 729.

plan documents, § 502(a)(1)(B) offers them no remedy, and equitable relief under § 502(a)(3) is their only available avenue.

The Administrative Committee Defendants also misread the law by asserting that § 502(a)(3) claims and § 502(a)(1)(B) claims may never be brought in the same action. In fact, it is permissible to assert claims, in the alternative, under both §§ 502(a)(1)(B) and 502(a)(3), 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3). See, e.g., O'Rourke v. Pitney Bowes, No. 95 CIV 10288, 1996 WL 539848, at*2 (S.D.N.Y. Sept. 23, 1996) (motion to dismiss denied because it is not "beyond doubt" that participant can prove no set of facts that would entitle him to relief under § 502(a)(3), although it may ultimately turn out that participant is entitled to legal relief under § 502(a)(1)(B) and therefore not entitled to a § 502(a)(3) remedy); Benjamin v. Morris, No. 97 C 6714, 1998 WL 299434 (N.D. Ill. May 20, 1998) (same); cf. Fotta v. Trustees of the United Mine Workers of America, Nos. 97-3619, 97-3663, 1998 WL 884503, at*5 n.1 (3d. Cir. Dec. 18, 1998) (allowing § 502(a)(3) claim to go forward, court noted that it did not reject § 502(a)(1)(B) as a possible statutory basis but did not need to reach the issue).

Defendants' argument is based on a misreading of Varity, 516 U.S. at 515. Construing ERISA's civil enforcement scheme expansively, the Varity Court held that ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), is a "catch-all" provision guaranteeing individual ERISA plan participants the right to an adequate recovery for breaches of fiduciary duty. 516 U.S. at 509-13. In response to arguments that Plaintiffs would simply dress up benefit claims in § 502(a)(3) clothing in order to avoid the exhaustion of remedies and standard of review applicable to benefit claims, the Court concluded that this would not happen because § 502(a)(3) authorizes only "appropriate" equitable relief. The Court concluded that lower courts would not allow fiduciary

claims to go forward when the Plaintiffs could obtain adequate relief through a benefit claim and, therefore, relief under § 502(a)(3) would not be "appropriate." Id. at 515.

The two cases cited by Defendants, Tolson v. Avondale, 141 F.3d 604 (5th Cir. 1998) and Rhorer v. Raytheon Eng'g, 181 F.3d 639 (5th Cir. 1999), which found that relief was not available under both §§ 502(a)(1)(B) and 502(a)(3), are distinguishable.[21]  In those cases, participants brought suit under both § 502(a)(1)(B) and § 502(a)(3) asserting an erroneous denial of benefits. The court in both cases held that because adequate relief was available under § 502(a)(1)(B), Varity did not allow relief to be obtained under § 502(a)(3).  Here, in contrast, adequate relief is not available under § 502(a)(1)(B).

IX.    PLAINTIFFS SUFFICIENTLY ALLEGED A CLAIM AGAINST ANDERSEN FOR KNOWING PARTICIPATION IN A FIDUCIARY BREACH

In Count I of the Complaint, Plaintiffs allege that various Defendants breached their fiduciary duties under ERISA by accepting, acquiring, and retaining (at their initiative or at the direction of the participants) Enron stock as an investment under the Enron Savings Plan and ESOP.  Complaint at ¶ 740.  Plaintiffs also allege (as clarified in Plaintiffs' ERISA Opposition at 53) that Arthur Andersen LLP (Andersen), although not a plan fiduciary, was a knowing participant in these fiduciary breaches.  Complaint at ¶ 714.  Anderson seeks dismissal on the ground that ERISA does not provide a cause of action for knowing participation in a fiduciary breach under § 404, 29 U.S.C. § 1104.   Whether Anderson is liable as a knowing participant is a factual question that should not be resolved on a motion to dismiss.

---

[21]  Defendants' citation of McCall v. Burlington Northern/Santa Fe Co., 237 F.3d 506, 512 (5th Cir. 2000), cert. denied, 122 S. Ct. 57 (2001) is even more inapposite.  In McCall, the participants simply argued that the Defendants had breached their fiduciary duty by denying them benefits.  Obviously, in such a case, § 502(a)(1)(B) would be the appropriate claim, since denial of a benefit under a plan was the complaint.  In contrast, Plaintiffs in this case assert that granting them the benefits under the formula used in the plan was a breach of fiduciary duty.

The Supreme Court has expressly held that a nonfiduciary party-in-interest who has actual or constructive knowledge of the circumstances that made the fiduciary's actions a breach of duty and participates in that breach can be liable for appropriate equitable relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 248 (2000). Defendant Andersen is therefore incorrect that, under Mertens v. Hewitt Assocs., 508 U.S. 248 (1993), it is "questionable" whether ERISA provides a cause of action against a nonfiduciary for knowing participation in a fiduciary breach of duty. Andersen Mem. at 15. The Court in Harris Trust specifically stated that it was "merely flagging the issue" in its allusion to "knowing participation" in Mertens, which constituted "dictum." Harris Trust, 530 U.S. at 248. After Harris Trust, the viability of such a cause of action can no longer be questioned.

In its Reply Brief, Anderson argues that Harris Trust only applies to cases brought under ERISA § 406, 29 U.S.C. § 1106, not under § 404, 29 U.S.C. § 1104. While Harris Trust, as a factual matter, concerned a claim under § 406, this purported distinction is contrary to the broad language of Harris Trust, which states that "§ 502(a)(3) admits of no limit . . . on the universe of possible defendants . . . the focus, instead, is on redressing the 'act or practice which violates any provision of [ERISA Title I].'" Harris Trust, 530 U.S. at 246 (emphasis added). Title I of ERISA includes § 404 as well as §406. Indeed, the Court noted that § 502(l), 29 U.S.C. § 1132(l), allows the Secretary to assess a civil penalty against any "'other person'" who "'knowing[ly] participat[es] in'" "any . . . violation of . . . part 4 . . . by a fiduciary." 530 U.S. at 248 (ellipses in original, emphasis added). The amount of such penalty, according to the Court, is defined by reference to the amount ordered by a court to be paid by such other person in a suit instituted by the Secretary under subsection (a)(2) or (a)(5). Therefore, the Court reasoned, the "plain

implication is that the Secretary may bring a civil action under § 502(a)(5), 29 U.S.C. § 1132(a)(5), against an 'other person' who 'knowing[ly] participat[es]' in a fiduciary's violation." The plain meaning and logic of this language applies with equal force to violations of § 404 as to § 406 violations, and applies to § 502(a)(3), which is the corollary to §502(a)(5)

The Fifth Circuit, even before Harris Trust, had held that nonfiduciaries who knowingly participated in a breach of trust under § 404, 29 U.S.C. § 1104, could be held liable. Whitfield v. Lindemann, 853 F.2d 1298, 1303 (5th Cir.)(attorney, who was not yet acting as plan counsel at time of fiduciary breach, was liable as nonfiduciary), cert. denied sub nom., Klepak v. Dole, 490 U.S. 1089 (1998).[22]  When the Mertens decision left it unclear whether the Supreme Court would permit recovery against knowing participants, the Fifth Circuit stated that if a knowing participation claim was permissible, it would permit recovery on such a claim. Lancaster, 55 F.3d at 1043, n.9 ("[t]o the extent that liability as a knowing participant to a breach by a fiduciary is a valid theory of recovery, [defendants can be] liable . . . on that basis"). Now that the Harris Trust decision has put to rest the question of whether knowing participation is a valid theory of recovery, there can be no doubt that the Fifth Circuit would again allow it in a § 404 case.

Plaintiffs sufficiently allege that Andersen knowingly participated in the fiduciary breaches of the other Defendants. Plaintiffs allege that Andersen "knowingly participated in the Enron Defendants' breaches of fiduciary duty by actively concealing from the Plan fiduciaries and Plan participants the true financial condition of the Company and the imprudence of investing in Enron stock." Complaint at ¶ 744. This suffices to state a claim that Andersen is

---

[22] Other courts have also held nonfiduciaries liable for knowing participation in a fiduciary violation of § 404. See, e.g., McGarry v. Eastern Air Lines, Inc., No. 86-2497-CV-RYSKAMP, 1987 WL 13900, at *8-9 (S.D. Fla. July 6, 1987).

"an 'other person' who 'knowing[ly] participat[es]' in a fiduciary's violation," as required by the Supreme Court in <u>Harris Trust</u>. 530 U.S. at 248.

Although Andersen also seeks dismissal on the ground that Plaintiffs cannot establish that they are entitled to such relief because they have not alleged that Andersen received payment from the plans or otherwise obtained plan assets, Plaintiffs are entitled to prove any facts or possible theory in support of their claim consistent with the allegations of the Complaint. <u>See generally</u> <u>Jones v. Greninger</u>, 188 F.3d 322, 324 (5th Cir. 1999). As Plaintiffs explain, <u>Great-West</u>, 122 S. Ct. at 708, permits recovery of equitable restitution, and other forms of equitable relief. Plaintiffs' ERISA Opposition at 55. Their Complaint alleges that Andersen received large sums in connection with its provision of services to Enron (which, Plaintiffs allege, constituted knowing participation in a breach) and Plaintiffs should be permitted to prove that these included property that belonged to the plan. If Plaintiffs prove that Andersen obtained such assets pursuant to its knowing participation in the breach, and that in order to prevent unjust enrichment such assets should be deemed to rightfully belong to the plan, the court would be authorized to impose a constructive trust over the assets (or proceeds traceable to such assets), and order Andersen to convey those assets to the plan, along with any profits derived therefrom. <u>See</u> <u>generally</u> 1 D. Dobbs, <u>Law of Remedies</u> § 4.3(2), at 590-591 (2nd ed. 1993).

## CONCLUSION

Defendants variously claim that they had no knowledge of the financial wrongdoings at Enron, no way to gain any knowledge of the financial wrongdoing, no ability to act on participants' behalf, and no responsibility to the participants. Defendants' arguments and excuses cannot be reconciled with ERISA's protection of employees' retirement security. ERISA is unambiguous in what it requires of fiduciaries: they must act to protect the interests of plan

participants and beneficiaries. Such action could consist of disclosing vitally needed information to participants, investigating suspicious circumstances surrounding plans, or freezing further investment in stock that might be heavily overvalued and likely to crash, to name only some examples. Defendants could not fulfill their fiduciary responsibilities by doing nothing at all to safeguard the interests of participants and beneficiaries whom they were duty-bound to protect. Taking the Plaintiffs' allegations as true, as this Court must for purposes of a Rule 12(b)(6) motion, the Complaint states a claim that the Defendants breached their fiduciary duties under ERISA, and that the breaches caused losses to the plaintiffs.

For the foregoing reasons, the Secretary respectfully requests that the Court deny

Defendants' motions to dismiss.


Respectfully submitted,

For the Secretary of Labor:

EUGENE SCALIA
Solicitor of Labor

TIMOTHY D. HAUSER
Associate Solicitor
Plan Benefits Security Division

KAREN L. HANDORF
Deputy Associate Solicitor
Plan Benefits Security Division

ELIZABETH HOPKINS
Counsel for Appellate and Special Litigation
Plan Benefits Security Division


/s/ Robin Springberg Parry
ROBIN SPRINGBERG PARRY
Trial Attorney
WILLIAM SCOTT
Senior Trial Attorney
Plan Benefits Security Division
MARK FLYNN
Senior Appellate Attorney
Special Appellate and Supreme Court Litigation Division
U.S. Department of Labor
Office of the Solicitor
Plan Benefits Security Division
P.O. Box 1914
Washington, DC  20013
phone:  (202) 693-5614
fax:      (202) 693-5610

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of August 2002 a true and correct copy of the foregoing Amended Brief of the Secretary of Labor as Amicus Curiae Opposing the Motions to Dismiss was: (1) served on all counsel on the attached service list electronically via the www.esl.3624.com <http://www.esl.3624.com> web site pursuant to the Court's Orders of June 6, 2002 and August 7, 2002; (2) sent via Fax Machine to:

Ms. Carolyn S. Schwartz
United States Trustee, Region 2
33 Whitehall Street
Twenty-First Floor
New York, NY 10004
(212) 510-0500
(212) 668-2255 Facsimile;

and (3) mailed by first class mail, postage prepaid to:

Dr. Bonnee Linden, Pro Se
Linden Collins Associates
1223 West Broadway, P.O. Box 114
Hewlett, New York 11557

__/s/ G. William Scott_____
G . WILLIAM SCOTT

## SERVICE LIST

Ms. Carolyn S. Schwartz
United States Trustee, Region 2
33 Whitehall Street
Twenty-first Floor
New York, New York  10004
(212) 510-0500
(212) 668-2255 Facsimile

Steve W. Berman
Hagens Berman, LLP
1301 Fifth Avenue, Suite 2900
Seattle, Washington  98101
(206) 623-7292
(206) 623-0594 Facsimile
Email: steve@hagens-berman.com
**Co-Lead counsel for the *Tittle* Plaintiffs**

William S. Lerach
Helen J. Hodges
G. Paul Howes
Milberg Weiss Bershad Hynes & Lerach, LLP
410 B. Street, Suite 1700
San Diego, CA  92101
(619) 231-1058
(619) 231-7423 Facsimile
Email: enron@milberg.com
**Attorneys for the Regents of the University of California and Lead Counsel for the *Newby* Plaintiffs**

Jeremy L. Doyle
Gibbs & Bruns, L.L.P.
1100 Louisiana Street, Suite 5300
Houston, Texas  77002
(713) 650-8805
(713) 750-0903 Facsimile
Email:  jdoyle@gibbs-bruns.com
**Attorney for Robert Belfer, Norman Blake, Ronnie Chan, John Duncan, Joe Foy, Wendy Gramm, Robert Jaedicke, Charles LeMaistre, John Mendelsohn, Jerome Meyer, Paulo Ferraz Pereira, Frank Savage, Charls Walker, John Wakeham, Herbert Winokur**

James E. Colemen, Jr.
Carrington, Coleman, Sloman & Blumenthal,
200 Crescent Court, Suite 1500
Dallas, Texas  75201
(214) 855-3000
(214) 855-1333 Facsimile
Email: deakin@ccsb.com
**Attorneys for Defendant Kenneth Lay**

Robert M. Stern
Kathleen Kelly
O'Melveny & Meyers, L.L.P.
555 13th Street, N.W., Suite 500 West
Washington, D.C.  20004
(202) 383-5328
(202) 383-5414 Facsimile
Email: restern@omm.com
<u>Attorneys for Defendant Jeffrey Skilling</u>

Eric J.R. Nichols
Beck Redden & Secrest
One Houston Center
1221 McKinney Street, Suite 4500
Houston, Texas  77010
(713) 951-3700
(713) 951-3720 Facsimile
Email: enichols@brsfirm.com
**Attorney for Michael J. Kopper, Chewco Investments, L.P. and LJM Cayman, L.P.**

H. Bruce Golden
Golden & Owens, L.L.P.
1221 McKinney Street, Suite 3600
Houston, Texas  77010
(713) 223-2600
(713) 223-5002 Facsimile
Email: golden@goldenowens.com
**Attorneys for Defendant John A. Urquhart**

John J. McKetta, III
Helen Currie Foster
Graves, Dougherty, Hearon & Moody
515 Congress Avenue, Suite 2300
Austin, Texas  78701
(512) 480-2005
(512) 478-1976 Facsimile
Email: mmcketta@gdhm.com
**Attorneys for Defendant Rebecca Mark-Jusbasche**

Rusty Hardin
Rusty Hardin & Associates, P.C.
1201 Louisiana, Suite 3300
Houston, Texas  77002
(713) 652-9000
(713) 652-9800 Facsimile
Email: rhardin@rustyhardin.com
Attorneys for Arthur Andersen, LLP

Sharon Katz
Davis Polk & Wardell
450 Lexington Avenue
New York, New York 10017
(212) 450-4000
(212) 450-3633 Facsimile
Email: andersen.courtpapers@dpw.com
**Attorneys for Arthur Andersen, L.L.P.**

Roger B. Greenberg
Schwartz, Junell, Campbell & Outhout
2000 Two Houston Center
909 Fannin
Houston, Texas  77010
(713) 752-0017
(713) 752-0327 Facsimile
Email: rgreenberg@schwartz-junell.com
**Attorneys for the Regents of the University of California**

Billy Shepherd
Cruse, Scott, Henderson & Allen, L.L.P.
600 Travis Street, Suite 3900
Houston, TX  77002-2910
(713) 650-6600
(713) 650-1720 Facsimile
Email: bshepherd@crusescott.com

Michael D. Warden, Esq.
Sidley Austin Brown & Wood, LLP
1501 K. Street, N.W.
Washington, D.C.  20005
(202) 736-8000
(202) 736-8711 Facsimile
Email: mwarden@sidley.com
**Attorneys D. Stephen Goddard, Jr.**

Anthony C. Epstein
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC  20036-1795
(202) 429-8065
(202) 261-7507 Facsimile
Email: aepstein@steptoe.com
**Attorney for Defendants Philip J. Bazelides,**
**Mary K. Joyce and James S. Prentice**

Abigail K. Sullivan
Bracewell & Patterson, L.L.P.
711 Louisiana Street, Ste. 2900
Houston, TX  77002
(713) 221-1205
(713) 221-2149
Email: asullivan@bracepatt.com
**Attorney for James V. Derrick, Jr.**

Craig Smyser
Smyser Kaplan & Veselka, LLP
700 Louisiana, Ste. 2300
Houston, TX  77002
(713) 221-2330
(713) 221-2320 Facsimile
Email: enronservice@skv.com
**Attorney for Defendant Andrew Fastow**

Mark K. Glasser
Reginald R. Smith
King & Spalding, L.L.P.
1100 Louisiana, Ste. 4000
Houston, TX  77002
(713) 751-3200
(713) 751-3290 Facsimile
Email: mkglasser@kslaw.com
**Attorney for LJM II Co-Investment**

Ms. Linda L. Addison
Fulbright & Jaworski
1301 McKinney, Suite. 5100
Houston, TX  77002-3095
(713) 651-5628
(713) 651-5246 Facsimile
Email: laddison@fulbright.com
**Attorney for The Northern Trust Company and Northern Trust Retirement Consulting LLC**

Barry G. Flynn
Law Office of Barry G. Flynn. P.C.
1300 Post Oak Blvd., Suite 750
Houston, Texas  77056
(713) 840-7474
(713) 840-0311 Facsimile
Email: bgflaw@mywavenet.com
**Attorney for David Duncan**

Robert Hayden Burns
Burns Wooley & Marseglia
1415 Louisiana, Suite 3300
Houston, Texas  77002
(713) 651-0422
(713) 651-0817 Facsimile
Email: hburns@bwmzlaw.com
**Attorneys for Defendant Kristina Mordaunt**

Jack C. Nickens
Nickens Lawless & Flack LLP
600 Travis, Suite 7500
Houston, Texas  77002
(713) 571-9191
(713) 571-9652 Facsimile
Email: trichardson@nlf-law.com
**Attorney for The Estate of J. Clifford Baxter, Deceased, Richard B. Buy, Richard A. Causey, Mark A. Frevert, Joseph M. Hirko, Stanley C. Horton, Steven J. Kean, Mark E. Koenig, Michael S. McConnell, Jeffrey McMahon, J. Mark Metts, Cindy K. Olson, Lou L. Pai, Kenneth D. Rice and Paula Rieker**

Kenneth S. Marks
Susman Godfrey LLP
1000 Louisiana, Suite 3300
Houston, Texas  77002
(713) 651-9366
(713) 654-6666 Facsimile
Email: kmarks@susmangodfrey.com
**Attorney for Enron Corporation**

Charles G. King
King & Pennington, L.L.P.
711 Louisiana St., Suite 3100
Houston, Texas  77002
(713) 225-8404
(713) 225-8488E

Email: cking@kandplaw.com
**Attorney for Goldman Sachs, Salomon Smith Barney, Banc of America Securities**

Paul Vizcarrondo, Jr.
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, NY 10019
(212) 403-1000
(212) 403-2000 Facsimile
Email: pvizcarrondo@wlrk.com
**Attorney for Goldman Sachs, Salomon Smith Barney, Banc of America Securities**

Bernard V. Preziosi, Jr.
Curtis, Mallet-Provost, Colt & Mosle, LLP
101 Park Avenue
New York, NY  10178-0061
(212) 696-6000
(212) 697-1559 Facsimile
Email: bpreziosi@cm-p.com
**Attorney for Defendant Michael C. Odom**

John L. Murchison, Jr.
Vinson & Elkins, L.L.P.
2300 First City Tower
1001 Fannin
Houston, Texas  77002
(713) 758-2222
(713) 758-2346 Facsimile
Email: jmurchison@velaw.com

G. Sean Jez
Fleming & Associates
1330 Post Oak Blvd., Suite 3030
Houston, Texas  77056
(713) 621-7944
(713) 621-9638 Facsimile
Email: enron@fleming-law.com
**Attorney for Individual Plaintiffs**

Mark C. Hansen
Reid M. Figel
Kellogg, Huber, Hansen, Todd & Evans PLLC
1615 M. Street, N.W., Suite 400
Washington, DC  20036
(202) 326-7900
(202) 326-7999 Facsimile
Email:  mhansen@khhte.com
           rfigel@khhte.com
**Attorneys for Defendant Nancy Temple**

Jeffrey C. King
Hughes & Luce, L.L.P.
1717 Main Street, Suite 2800
Dallas,  Texas  75201
(214) 939-5900
(214) 939-6100 Facsimile
Email:  kingj@hughesluce.com
**Attorney for Bruce Willison**

Dr. Bonnee Linden, Pro Se
Linden Collins Associates
1226 West Broadway, P.O. Box 114
Hewlett, New York  11557
[SEND BY MAIL PER DR. LINDEN]

William F. Martson, Jr.
Tonkon Torp LLP
1600 Pioneer Tower
888 SW Fifth Avenue
Portland, OR  97204
(503) 802-2005
(503) 972-3705 Facsimile
Email:  rick@tonkon.com
**Attorney for Ken L. Harrison**

Andrew J. Mytelka
David Le Blanc
GREER, HERZ & ADAMS, L.L.P.
One Moody Plaza, 18th Fl.
Galveston, Texas  77550
(409) 797-3200
(409) 766-6424 Facsimile
Email:  amytelka@greerherz.com
        dleblanc@greerherz.com
        swindsor@greerherz.com
        bnew@greerherz.com
**Attorneys for** *American National* **Plaintiffs**

Gary A. Orseck
Robbins, Russell, Englert Orseck & Untereiner LLP
1801 K. Street, N.W. Suite 411
Washington, DC  20006
(202) 775-4500
(202) 775-4510 Facsimile
Email: gorseck@robbinsrussell.com
**Attorney for Defendant Michael Lowther**

Lynn Lincoln Sarko
Keller Rohrback LLP
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052
(206) 623-1900
(206) 623-3384 Facsimile
Email: lsarko@kellerrohrback.com
**Co-lead counsel for the** *Tittle* **Plaintiffs**

Scott B. Schreiber
Arnold & Porter
555 Twelfth Street, N.W.
Washington, DC  20004-1206
(202) 942-5000
(202) 942-5999 Facsimile
Email: enroncourtpapers@aporter.com
**Attorney for Defendant Thomas Bauer**

Henry F. Schuelke, III
Robert Sutton
Janis, Schuelke & Wechsler
1728 Massachusetts Ave., N.W.
Washington, DC  20036
(202) 861-0600
(202) 861-4750 Facsimile
Email: hsschuelke@janisschuelke.com
        rsutton@janisschuelke.com

**Attorney for Defendant Ben Glisan**

John K. Villa
Williams & Connolly, L.L.P.
725 Twelfth Street, NW
Washington, DC  20005
(202) 434-5000
(202) 434-5705 Facsimile
Email: jvilla@wc.com
**Attorney for Vinson & Elkins, L.L.P., Ronald T. Astin, Joseph Dilg, Michael P. Finch and Max Hendrick III**

James F. Marshall, Esq.
JUDICIAL WATCH, INC.
Western Regional Headquarters
2540 Huntington Drive, Suite 201
San Marino, CA  91108-2601
(626) 287-4540
(626) 237-2003 Facsimile
Email: marshall@attglobal.net
**Attorney for the *Wilt* Plaintiffs**

Taylor M. Hicks
Stephen M. Loftin
HICKS THOMAS & LILIENSTERN, LLP
700 Louisiana, Suite 1700
Houston, Texas  77002
(713) 547-9100
(713) 547-9150 Facsimile
thicks@hicks-thomas.com
sloftin@hicks-thomas.com

Herbert S. Washer
Clifford Chance Rogers & Wells
200 Park Avenue, Suite 5200
New York, NY  10166-0153
(212) 878-8000
(212) 878-8375 Facsimile
herbert.washer@cliffordchance.com
**Attorneys for Merrill Lynch & Co., Inc.**
David H. Braff
Sullivan & Cromwell
125 Broad Street
New York, New York  10004
(212) 558-4000
(212) 558-3588 Facsimile
Email: braffd@sullcrom.com

**Attorneys for Barclays PLC**

Mark F. Pomerantz
Richard A. Rosen
Brad S. Karp
Claudia L. Hammerman
Paul, Weiss, Rifkind, Wharton & Garrison
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3000
(212) 757-3990 (fax)
Email: grp-citi-service@paulweiss.com
**Attorneys for Defendant Citigroup**

Michael Schloss
Senior Trial Attorney
Leslie Canfield Perman
Counsel for General Litigation
U.S. Department of Labor
Office of the Solicitor
Plan Benefits Security Division
200 Constitution Ave., N.W.
Room N-4611
Washington, D.C.  20210
(202) 693-5586
(202) 693-5610 Facsimile
Email: schloss-michael@dol.gov
         Perlman-leslie@dol.gov

Hugh R. Whiting
David E. Miller
Jones, Day, Reavis & Pogue
600 Travis Street, Ste. 6500
Houston, TX  77002
Phone:  832-239-3939
Fax:  832-239-3600
Email:  hrwhiting@jonesday.com
         demiller@jonesday.com
         C.  Attorneys for Lehman Brothers

Harvey Brown
Orgain, Bell & Tucker, L.L.P.
2700 Post Oak Blvd., Suite 1410

Houston, Texas  77056
(713) 572-8772
(713) 572-8766 Facsimile
Email: hgb@obt.com
**Attorneys for Arthur Anderson UK**

Richard W. Clary
Cravath, Swaine & Moore
Worldwide Plaza
825 Eighth Avenue
New York, NY  10019
(212) 474-1227
(212) 474-3700 Facsimile
Email: rclary@cravath.com
**Attorney for Credit Suisse First Boston**

Lawrence D. Finder
Haynes & Boone, LLP
1000 Louisiana Street
Suite 4300
Houston, Texas  77002-5012
(713) 547-2006
(713) 547-2600 Facsimile
Email: finderl@haynesboone.com
**Attorney for Credit Suisse First Boston**

Richard Mithoff
MITHOFF & JACKS
One Allen Center, Penthouse
500 Dallas
Houston, Texas  77002
(713) 654-1122
(713) 739-8085 Fax
Email: enronlitigation@mithoff-jacks.com
        cgall@jenkens.com
        t_rice@stblaw.com
**Attorneys for Defendant J.P. Morgan Chase & Co.**

Jack O'Neill
Jason Norwood
Clements, O'Neill, Pierce, Wilson & Fulkerson, L.L.P.
1000 Louisiana, Suite 1800
Houston, Texas 77002
(713) 654-7607
(713) 654-7690 Facsimile
Email: Sutton@copwf.com
**Attorneys for Joseph Sutton**

Jacalyn Scott
WILSHIRE SCOTT & DYER P.C.
1221 McKinney, Suite 3000
Houston, Texas 77010
(713) 651-1221
(713) 651-0020 Fax
Email: jscott@wsd-law.com
**Attorney for CitiGroup and Salomon Smith Barney**

Roger E. Zuckerman
Steven M. Salky
Zuckerman Spaeder LLP
1201 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 778-1800
(202) 822-8106 Facsimile
Email: djeffrey@zuckerman.com
**Attorneys for Lou L. Pai**

Paul J. Ondrasik, Jr.
F. Michael Kail
Anthony C. Epstein
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 429-3000
(202) 429-3902 Facsimile
Email: pondrasik@steptoe.com
**Attorneys for James G. Barnhart, Keith Crane, William Gulyassy, Roderick Hayslett, Sheila Knudsen, Tod A. Lindholm, Mikie Rath and David Shields**

Barry Abrams
Abrams Scott & Bickley, LLP
Chase Tower 600 Travis, Suite 6601
Houston, Texas 77002
(713) 228-6601
(713) 228-6605 Facsimile
Email: babrams@asbTX.com

**Attorneys for Barcays PLC**

Bruce D. Angiolillo
Thomas C. Rice
Simpson Thacher & Bartlett
425 Lexington Avenue
New York, NY 10017-3954
(212) 455-2000
(212) 455-2502 Facsimile
Email: bangiolillo@stblaw.com
        jyoungwood@stblaw.com
**Attorneys for J.P. Morgan Chase**

James N. Benedict
Clifford Chance Rogers & Wells, L.L.P.
200 Park Avenue, Suite 5200
New York, NY 10166-0153
(212) 878-8000
(212) 878-8375 Facsimile
Email: james.benedict@cliffordchance.com
**Attorneys for Alliance Capital Management, L.P.**

Paul Bessette
Brobeck, Phleger & Harrison LLP
4801 Plaza on the Lake
Austin, TX  78746
(512) 330-4000
(512) 330-4001 Facsimile
Email: bofa@brobeck.com
**Attorneys for Bank of America Corp.**

Lawrence Byrne
White & Case, L.L.P.
1155 Avenue of the Americas
New York, NY  10036
(212) 819-8200
(212) 354-8113 Facsimile
Email: lbyrne@whitecase.com
**Attorneys for Deutsche Bank AG**

Clayton C. Cannon
Stumpf Craddock Massey & Pulman
1400 Post Oak Blvd., Suite 400
Houston, Texas  77056
(713) 871-0919

(713) 874-0408 Facsimile
Email: ccannon@scmplaw.com
**Attorneys for Thomas Bauer**

David L. Carden
Jones, Day, Reavis & Pogue
222 East 41st Street
New York, NY 10017
(212) 326-3939
(212) 755-7306 Facsimile
Email: dlcarden@jonesday.com
**Attorneys for Lehman Brothers**

Michael Connelly
Kent Altsuler
Connelly, Baker, Wotring & Jackson, LLP
700 Louisiana, Suite 1850
Houston, Texas  77002
(713) 980-1710
(713) 980-1731 Facsimile
Email: enron@mto.com
**Attorneys for Kirkland & Ellis**

Robert. E. Cook
Cook & Roach, L.L.P.
Chevron Texaco Heritage Plaza
1111 Bagby, Suite 2650
Houston, Texas  77002
(713) 652-2031
(713) 652-2029
Email: rcook@cookroach.com
**Attorney for Alliance Capital**

Stephen J. Crimmins
Pepper Hamilton LLP
Hamilton Square
600 Fourteenth Street, N.W.
Washington, DC  20005
(202) 220-1200
(202) 220-1665 Facsimile
Email: crimminss@pepperlaw.com
**Attorneys for Kevin P. Hannon**

Michael G. Davies
Hoguet Newman & Regal, LLP
10 East 40th Street
New York, NY 10016
(212) 689-8808
(212) 689-5101 Facsimile
Email: mdavies@hnrlaw.com
**Attorneys for Arthur Andersen-India**

Murray J. Fogler
McDade Fogler Maines, L.L.P.
Two Houston Center
909 Fannin, Suite 1200
Houston, Texas 77010-1006
(713) 654-4300
(713) 654-4343 Facsimile
Email: mfogler@mfml.com
**Attorneys for Lou L. Pai**

Chuck A. Gall
Jenkins & Gilchrist
1445 Ross Avenue, Suite 3200
Dallas, Texas 75202-2799
(214) 855-4338
(214) 855-4300 Facsimile
Email: cgall@jenkens.com
**Attorneys for J.P. Morgan Chase**

Marshall A. Karlan
Gibson, Dunn & Crutcher, L.L.P.
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000
(212) 351-4035 Facsimile
Email: enronlitigation@gibsondunn.com
**Attorneys for Merrill Lynch**
William H. Knull, III
Mayer, Brown, Rowe & Maw
700 Louisiana, Suite 3600
Houston, Texas 77002-2730
(713) 221-1651
(713) 224-6410 Facsimile
Email: cibc-newby@mayerbrownrowe.com
**Attorneys for Canadian Imperial Bank**

Eliot Lauer
Curtis, Mallet-Prevost, Colt & Mosle, LLP
101 Park Avenue
New York, NY  10178-0061
(212) 696-6000
(212) 697-1559 Facsimile
Email: elauer@cm-p.com
**Attorney for Michael C. Odom**

Gregory A. Markel
Brobeck, Phleger & Harrison LLP
1633 Broadway, 47th Floor
New York, NY  10019
(212) 581-1600
(212) 586-7878 Facsimile
Email: bofa@brobeck.com
**Attorneys for Bank of America**

William E. Matthews
1000 Louisiana, Suite 3400
Houston, Texas  77002-5007
(713) 276-5500
(713) 276-5555 Facsimile
Email: wmatthews@gardere.com
**Attorney for Andersen Worldwide**

Robert C. Micheletto
Jones, Day, Reavis & Pogue
77 West Wacker
Chicago, IL  60601-1692
(312) 782-3939
(312) 782-8585 Facsimile
Email: rmicheletto@jonesday.com
**Attorneys for Lehman Brothers**

Elizabeth T. Parker
Pepper Hamilton LLP
3000 Two Logan Square
18th and arch Streets
Philadelphia, PA  19103
(215) 981-4000
(215) 981-4756 Facsimile
Email: parkere@pepperlaw.com
**Attorneys for Kevin P. Hannon**

John W. Spiegel
Ronald L. Olson
Dennis C. Brown
Kevin S. Allred
Kristin L. Myles
Munger, Tolles & Olson
355 S. Grand Avenue, 35th Floor
Los Angeles, CA  90071
(213) 683-9100
(213) 683-5152 Facsimile
Email: enron@mto.com
**Attorneys for Kirkland & Ellis**

Arthur Stock
Berger & Montague, P.C.
1622 Locus St.
Philadelphia, PA 19103
(215) 875-3000
(215) 875-4635 Facsimile
Email: astock@bm.net
**Attorneys for Frank Wilson**

R. Paul Yetter
Yetter & Warden, L.L.P.
909 Fannin, Suite 3600
Houston, Texas  77010
(713) 632-8000
(713) 632-8002
Email: pyetter@yetterwarden.com
**Attorneys for The Florida State Board
of Admin and NYC Pension Funds**