**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| KERI EVANS, <br><br>              Plaintiff, <br><br> v. <br><br> JOHN F. AKERS, *et al.* <br><br>              Defendants. <br><hr> LAWRENCE W. BUNCH, *et al.* <br><br>              Plaintiffs, <br><br> v. <br><br> W.R. GRACE & CO., *et al.* <br><br>              Defendants. | Consolidated as: <br> Case No. 04-11380-WGY |

**STATE STREET BANK AND TRUST COMPANY'S MEMORANDUM
IN OPPOSITION TO THE BUNCH PLAINTIFFS'
FIRST AMENDED MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION AND SUMMARY OF ARGUMENT .................................................1

II. ARGUMENT .........................................................................................................................2

    A. The Legal Standard ..................................................................................................2

    B. Plaintiffs Fail To Articulate Precisely What Claims They Actually Assert, Precluding A Proper Evaluation Of Whether Adjudication On A Classwide Basis Is Appropriate. ...............................................................................3

    C. Whatever Their Theory Of Liability, The Class Defined By The Bunch Plaintiffs Is Grossly Overbroad, Likely Consisting Mostly Of Persons Who Have No Conceivable Claim Of Injury For The Divestment Of Grace Stock That Occurred In 2004 ....................................................................................6

    D. The Bunch Plaintiffs Fail to Satisfy Any Of The Rule 23 Prerequisites For Class Certification. ...............................................................................................8

        1. Plaintiffs Fail to Satisfy the Four Requirements of Fed. R. Civ. P. 23(a) ............................................................................................................9

        2. The Bunch Plaintiffs Fail to Show That This Action Fits Any Provision of Fed. R. Civ. P. 23(b) ........................................................13

III. CONCLUSION ..................................................................................................................15

## TABLE OF AUTHORITIES

Page

### CASES

*Adair v. Johnston*, 221 F.R.D. 573, 577 (M.D. Ala. 2004)..........................................................6

*In re Qwest Savings and Investment Plan ERISA Litigation*, C.A. No. 02-RB-464 (CBS), 2004 U.S. Dist. LEXIS 24693, *9 (D. Colo. Sept. 24, 2004)....................................8

*AmChem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997)..................................................13

*Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 131-132 (1st Cir. 1985) .................................11

*Bowe v. PolyMedica Corp.* (*In re PolyMedica Corp. Sec. Litig.*), 432 F.3d 1, 6 (1st Cir. 2005) .............................................................................................................................2

*Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978)...........................................................2

*DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) ........................................................7

*Edwards v. McCormick*, 196 F.R.D. 487, 492 (S.D. Ohio 2000).................................................8

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974)......................................................2

*Fewlass v. Allyn and Bacon, Inc.*, 83 F.R.D. 161, 165 (D. Mass 1979) ......................................8

*General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982).......................... 2, 11, 12

*In re Eaton Vance Corp. Sec. Litig.*, 220 F.R.D. 162, 171 (D. Mass. 2004)................................2

*In re Ikon Office Solutions, Inc. Sec. Litig.*, 191 F.R.D. 457 (E.D. Pa. 2000)....................... 11, 14

*In re Three Mile Island Litigation*, 95 F.R.D. 164, 166-67 (M.D. Pa. 1982).............................10

*In re Worldcom, Inc. ERISA Litigation*, No. 02 Civ. 4816 DLC, 2004 U.S. Dist. LEXIS 19786, *3-4 (S.D.N.Y. Oct. 5, 2004) ................................................................................14

*Kent v. Sunamerica Life Ins. Co.*, 190 F.R.D. 271, 279 (D. Mass. 2000)....................................6

*Makuc v. American Honda Motor Co.*, 835 F.2d 389, 394 (1st Cir. 1987) .................................2

*Markarian v. Connecticut Mut. Life Ins. Co.*, 202 F.R.D. 60, 63 (D. Mass. 2001).......................8

*McAdams v. Massachusetts Mutual Life Ins. Co.*, Civ. A. 99-30284-FHF, 2002 WL 1067449, *3 (D. Mass. May 15, 2002)............................................................... 10, 11, 12

*O'Neill v. Gourmet Systems of Minnesota, Inc.*, 219 F.R.D. 445, 451 (W.D. Wisc. 2002).............................................................................................................................................8

*Perez v. Metabolife International, Inc.*, 218 F.R.D. 262, 266-267 (S.D. Fla. 2003) ....................6

*Rankin v. Rots*, 220 F.R.D. 511 (E.D. Mich. 2004) ........................................................... 9, 11, 14

*Swody v. Harrah's New Orleans Mgmt. Co.*, C.A. No. 95-4118 c/w 96-0215 SECTION "J", 1996 U.S. Dist. LEXIS 5512, 2 (E.D. La. Apr. 22, 1996)............................14

# TABLE OF AUTHORITIES
## (continued)

**Page**

### STATUTES

29 U.S.C. § 1103(c)(1) .................................................................................................................. 4

### RULES

Fed. R. Civ. P. 23 ..................................................................................................................... 1, 2
Fed. R. Civ. P. 23(b)(1)(A) ......................................................................................................... 13
Fed. R. Civ. P. 23(b)(1)(B) ......................................................................................................... 14

### TREATISES

2 Newberg on Class Actions, § 6:21 (4th ed.) ............................................................................ 12

I.
**INTRODUCTION AND SUMMARY OF ARGUMENT**

Defendant Street Bank & Trust Company ("State Street") submits this memorandum in opposition to the First Amended Motion and Memorandum for Class Certification ("Class Cert. Motion") (Ct. File No. 95-1) filed by plaintiffs Lawrence W. Bunch, Jerry L. Howard, Sr., and David Mueller (collectively, the "Bunch plaintiffs").[1] The Bunch plaintiffs seek to certify a class consisting of "all W.R. Grace Stock Plan participants and entities who owned shares of W.R. Grace's publicly traded common stock through the Grace Stock Plan during the period September 1, 1976 to September 15, 2004" – a period encompassing almost thirty years.

The motion must be denied. Plaintiffs do not come close to articulating a proper basis for class certification under the standards of Fed. R. Civ. P. 23. More fundamentally, plaintiffs have so deliberately muddled the articulation of precisely what they claim in this lawsuit, and thus what class of persons they contend is entitled to relief, that no proper evaluation of their plea for class certification is possible. Whatever they claim, plaintiffs have proffered a class definition that is so broad it would, if allowed, sweep into the case perhaps tens of thousands of individuals (we do not know, because plaintiffs provide no evidence of numerosity) who could have no conceivable claim for relief under any of the theories of liability that have been put forward by plaintiffs at various times in this litigation. Finally, plaintiffs provide the Court with a legal brief that is replete with inapposite and mis-cited authority, and portions appear simply to have been "cut-and-pasted" from another brief for a completely different case (indeed, one asserting

---

[1] State Street Global Advisors ("SSgA"), an unincorporated division of State Street, was also named as a defendant in the complaints filed in this consolidated action. All references to "State Street" shall, unless otherwise indicated, refer equally to SSgA. State Street was dismissed from the action entitled *Evans v. Akers, et al.* See Stipulation and Order of Dismissal (Ct. File No. 67). Accordingly, this memorandum is directed solely at the class certification motion filed by the plaintiffs in the action entitled *Bunch, et al. v. W.R. Grace & Co., et al.* (the "*Bunch* Action").

liability arising out of conduct that is the direct opposite of the facts here).  Far, far more is required to satisfy the "rigorous analysis" mandated by the Supreme Court before a class can be certified under Fed. R. Civ. P. 23.  *General Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 161 (1982).  Plaintiffs have failed to carry their burden for class certification here.

## II.
## ARGUMENT

### A.  The Legal Standard.

To certify a class, a court must conduct a "rigorous analysis" of the character of the claims asserted and measure those claims against the standards of Fed. R. Civ. P. 23.  *General Tel. Co. of the Southwest v. Falcon, supra,* 457 U.S. at 161 (1982).  While the Court should not decide the merits of a case at the class certification stage, *see Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974), a motion to certify "generally involves considerations . . . enmeshed in the factual and legal issues comprising [a] plaintiff's cause of action." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978) (quotations and citations omitted).  *See also Bowe v. PolyMedica Corp. (In re PolyMedica Corp. Sec. Litig.)*, 432 F.3d 1, 6 (1st Cir. 2005) ("[T]he district court was entitled to look beyond the pleadings in its evaluation of the applicability of the fraud-on-the-market presumption of reliance, and its resolution of the class-certification question.").  Thus, in its "rigorous analysis," the Court should determine whether the party seeking certification of the class has carried "the burden of showing that all the prerequisites for a class action have been met." *Makuc v. American Honda Motor Co.*, 835 F.2d 389, 394 (1st Cir. 1987); *see, e.g., In re Eaton Vance Corp. Sec. Litig.*, 220 F.R.D. 162, 171 (D. Mass. 2004) ("In the final analysis, the named plaintiffs have failed to meet their burden of establishing that class certification is appropriate, at least as it pertains to the Institutional and Advisers funds.").

B.  **Plaintiffs Fail To Articulate Precisely What Claims They Actually Assert, Precluding A Proper Evaluation Of Whether Adjudication On A Classwide Basis Is Appropriate.**

Invoking disparate provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), the Bunch plaintiffs have cobbled together a paper-thin complaint against State Street, which was hired in December 2003 as an independent investment manager for the W.R. Grace & Co. ("Grace") Employees Savings and Investment Plan (the "Plan") to evaluate whether the Plan's large holdings of Grace common stock ("Grace Stock") was consistent with the prudence requirements of ERISA. (Grace filed for bankruptcy in April 2001 and remains in bankruptcy today.) State Street ultimately determined that the Plan's holdings of Grace Stock should be sold, and during a two-month period from February to April 2004, accomplished the divestment.

Throughout these proceedings, the Bunch plaintiffs have repeatedly failed to provide a clear and consistent statement of the exact nature of their claims against State Street, but the gravamen appears to be an allegation that State Street violated ERISA's "self-dealing" and "anti-inurement" provisions by selling the Grace Stock not to an independent, third party, but rather to itself or "an affiliate." *Bunch* Complaint, ¶¶ 14-16.

This allegation is flatly untrue. It is based solely on an impossibly crude misreading of Securities and Exchange Commission ("SEC") forms filed quarterly by State Street to report the millions of shares of public securities under management across tens of thousands of client accounts. There is not one iota of proof to support the plaintiffs' "self-dealing" or "anti-inurement" claims.[2] Nor have the plaintiffs demonstrated an interest in discovering the true

---

[2] Indeed, plaintiffs' "anti-inurement" claims under Section 403(c)(1) of ERISA make no sense. That provision mandates that "the assets of a plan shall never inure to the benefit of any *employer* and shall be held for the exclusive purpose of providing benefits to participants in the

facts, having failed to commence any discovery on these claims, notwithstanding that the Rule 16.1 Scheduling Order has been in place for more than six weeks. Should they take discovery in this case, plaintiffs will learn what State Street has been telling them for months: an independent committee at State Street conducted a thorough and searching evaluation of the Plan's holdings of Grace Stock, determined that divestiture was prudent, commenced some sales on the open market in February 2004, and, in April 2004, sold most of the Plan's Grace Stock holdings in a private sale to a third party (D.E. Shaw) at a price that significantly exceeded the stock's New York Stock Exchange closing price during the entire period.

Moreover, having expressly represented in their prior pleadings and in open Court that they assert no claim that the decision to divest the Grace Stock was itself a violation of ERISA,[3]

---

plan and their beneficiaries …." 29 U.S.C. § 1103(c)(1). Of course, State Street is not the "employer" for purposes of the Grace Plan.

[3] *See* Plaintiff Bunch's Memorandum in Opposition to State Street Bank and Trust Company's Motion to Dismiss Plaintiff's Complaint (Ct. File No. 68) at 2 ("[T]he issue is not whether [State Street] could override the Investment Plan as a fiduciary, but whether it can engage in self-dealing and, in this case, materially benefit from the sale."); s*ee also* Plaintiff Bunch's Memorandum in Opposition to Supplemental Submission in Support of State Street Bank and Trust Company's Motion for Judgment in the Bunch Action (Ct. File No. 85) at 2 (same). *And see* Transcript of Proceedings on Motion to Dismiss (March 2, 2006) at 7:15-8:12 (emphasis added):

> THE COURT: [] Are your allegations in this case directed to the alleged repurchase of shares . . . or do you claim that their decision to divest additionally was improper?
>
> MS. WALKER: .. .We are – to answer directly your question, we are solely looking at what appears to be an increase in State Street's holdings after they were – after they took the position to divest the Grace stock fund.
>
> THE COURT: So I take that as a direct answer to my question, that *your claims relate only to the alleged repurchase of shares* of Grace by State Street while they were disposing of these shares.
>
> MS. WALKER: *That is correct, your Honor.*

the Bunch plaintiffs now appear to disavow their earlier positions and claim that State Street is liable (as are, by extension, the Grace defendants) for having made the decision to divest in the first place:

> The Plan into which the Class members' money was deposited and therefore invested, had at all times a clear, explicit and written intent – to provide the W.R. Grace employees an opportunity to invest in several investment opportunities, including in the Company's common shares. Each of the W.R. Grace employees in the Class, using his/her own money, consciously decided to make and retain that investment in the Company. It was his/her investment risk and his/her investment strategy that was used in making the decision. … *Without any Class member being given any opportunity to object or opt out*, all of the Grace common stock in the Plan was sold as a block by State Street. … *The divestment of the Class members' shares of Grace stock in the Plan thereby deprived the Class members of their rightfully deserved profit.*

Class Cert. Motion at 1-2 (emphasis added).

In other words, plaintiffs continue to "hide the ball" in a manner that prevents any clear understanding of the claims of injury they assert and who they contend is injured thereby.[4] As a

---

[4] Plaintiffs' refusal to clarify their claims is manifest. In an effort to determine precisely what those claims are, State Street served Fed. R. Civ. P. 36 Requests for Admission on plaintiffs on April 20, 2006 (the "Requests"). *See* Requests, Exhibit 1 to Declaration of Scott M. Flicker ("Flicker Decl."), filed herewith. In the Requests, State Street requested admission to the following: "You do not allege that the decision to divest the Grace Stock from the Plan made in the first quarter of 2004 was imprudent." Flicker Decl., Exh. 1, Request No. 4. Plaintiffs simply stonewalled, claiming that the phrase "imprudent" is "vague, ambiguous, and may call for a legal conclusion" and refusing to admit or deny the statement. *See* Bunch's Response to Requests, Flicker Decl., Exh. 2 at 5-6. State Street also requested the following admission: "Your claims against State Street are based solely on your allegation that State Street engaged in self-dealing by selling the Grace Stock divested from the Plan to itself or an affiliate." Flicker Decl., Exh. 1, Request No. 6. Plaintiffs responded that the term "engaged in self-dealing" is "vague, ambiguous, and may call for a legal conclusion," and that the phrase "based solely" excludes "Plaintiffs [sic] additional allegations as to State Street which are set forth in Plaintiff's Complaint." Plaintiffs then provided no response at all. Flicker Decl., Exh. 2 at 7. State Street submits that plaintiffs' failure to provide true responses under Fed. R. Civ. P. 36 is flatly inappropriate, and State Street intends to pursue appropriate procedures to bring this matter

matter of law, because plaintiffs have failed to provide a statement of their claims against which to evaluate their application for class-wide relief, the motion must be denied. "Before applying the two-part analysis required by Rule 23(a) and (b)," this Court "must determine whether the scope of the class that plaintiffs seek to certify is appropriate[.]" *Kent v. Sunamerica Life Ins. Co.*, 190 F.R.D. 271, 279 (D. Mass. 2000) (denying class certification because the "proposed class [was] fatally flawed because of this problem of ascertainability.").

C. **Whatever Their Theory Of Liability, The Class Defined By The Bunch Plaintiffs Is Grossly Overbroad, Likely Consisting Mostly Of Persons Who Have No Conceivable Claim Of Injury For The Divestment Of Grace Stock That Occurred In 2004.**

Here, the Bunch plaintiffs seek to certify an absurdly overbroad class consisting of "*[a]ll* W.R. Grace Stock Plan participants and entities who owned shares of W.R. Grace's publicly traded common stock through the Grace Stock Plan *during the period from September 1, 1976 to September 15, 2004*, ('Class Period')" Class Cert. Motion at 1-2 (emphasis added).[5] As noted above, plaintiffs' failure to present a clear statement of their claim is sufficient grounds to deny certification of a class action, because without a proper explication of the claim at issue, there is no way to connect the claims at issue with any proper class definition. "The failure of Plaintiffs to adequately define a class is thus, in itself, sufficient grounds for denial of Plaintiff's Motion." *Perez v. Metabolife International, Inc.*, 218 F.R.D. 262, 266-267 (S.D. Fla. 2003). It is axiomatic that "the class sought to be represented must be adequately defined and clearly ascertainable." *Adair v. Johnston*, 221 F.R.D. 573, 577 (M.D. Ala. 2004) (denying motion for

---

before the Court. For the purposes of this motion, State Street simply asks the Court to take notice of the plaintiffs' deliberate refusal to define their claims.

[5] Plaintiffs except from their class definition only "those individuals identified as Defendants and members of their immediate families, their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest during the Class Period." Class Cert. Motion at 1-2.

class certification and granting summary judgment to defendants) (quoting *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (affirming denial of class certification)). Moreover, here, even if the Court were to accept any one of the plaintiffs' characterizations of the claim, their proffered class is fatally overbroad, insofar as it would sweep in likely thousands of individuals who terminated their participation in the Plan months, years and even decades before the alleged wrongful sale of Grace Stock out of the Plan, as well as current participants who held no shares of Grace Stock through the Plan during the narrow two-month time period at issue.[6] Plaintiffs nowhere explain how, for example, a participant of the Plan who held shares of Grace Stock in 1976, but who has long since terminated, cashed out, and held no position in Grace Stock through the Plan thereafter could have even a remote claim of injury resulting from the divestment of Grace Stock from the Plan in February to April 2004. Moreover, there may be many current Plan participants who held Grace Stock as part of their accounts in the past, but who long since sold those shares in favor of other investments, and who could have suffered no injury when the Plan's Grace Stock was sold in 2004, under any theory plaintiffs have asserted. Plaintiffs simply make zero effort to connect *any* of their disparate theories of liability with the members of such an overbroad class. And there is no connection: the class proffered by plaintiffs bears no relation to the claims.

Where a proposed class includes an untold number of persons who were not injured, class certification should be denied. *See e.g. O'Neill v. Gourmet Systems of Minnesota, Inc.*, 219

---

[6] State Street assumes that, notwithstanding the literal definition proffered by the plaintiffs here, they did not intend to confine the proposed class solely to those participants who held Grace Stock in the Plan during the *entire* 28-year period encompassed therein, but rather intended to cover all participants who held the shares *at any time* "during the Class Period" so described. Class Cert. Motion at 1-2. The ambiguity in the plaintiffs' class description further underscores the lack of sufficient definition to satisfy Rule 23.

F.R.D. 445, 451 (W.D. Wisc. 2002) ("Plaintiff's claim is overly broad because it includes an untold number of persons who are at no risk of suffering the injury about which plaintiff complains."); *Edwards v. McCormick*, 196 F.R.D. 487, 492 (S.D. Ohio 2000) ("Thus, the locus of any specific harm would seem to be within a subset of that group: those people who received communication that actually violated federal or state law. Unless the size of that subset can be reasonably determined or inferred, Plaintiff's proposed definition is too vague for certification."). *See also In re Qwest Savings and Investment Plan ERISA Litigation*, C.A. No. 02-RB-464 (CBS), 2004 U.S. Dist. LEXIS 24693, *9 (D. Colo. Sept. 24, 2004) ("In short, the plaintiffs' allegations are limited to alleged breaches that took place during a certain period of time, and breaches that are relevant to one Plan asset, Qwest stock. However, the plaintiffs' proposed class definition includes Plan participants who were not Plan participants when the alleged breaches of duty occurred, and who did not hold Qwest stock, the only Plan asset at issue in this case. The plaintiff's class definition is over-inclusive."). For this reason alone class certification is improper, and the Court should deny the Motion, without the need to review the various factors set forth in Rule 23.

**D.     The Bunch Plaintiffs Fail to Satisfy Any Of The Rule 23 Prerequisites For Class Certification.**

In addition to the fatal deficiencies posed by their lack of claim definition and their brazen attempt to certify every Grace Stock holder in the Plan since its inception, plaintiffs have filed a "boilerplate" legal brief that falls far short of carrying their burden to show that this case satisfies the four mandatory factors of Rule 23(a) and at least one category of Rule 23(b). *See, e.g., Markarian v. Connecticut Mut. Life Ins. Co.*, 202 F.R.D. 60, 63 (D. Mass. 2001) (denying class certification), *Fewlass v. Allyn and Bacon, Inc.*, 83 F.R.D. 161, 165 (D. Mass 1979) (denying class certification).

As an initial matter, plaintiffs attempt to convince this Court that certification of a class in this case -- alleging improper *divestment* of Plan assets, self-dealing and violations of ERISA's anti-inurement provisions -- is "routine[]" by citing to a series of cases consisting of allegations of imprudent *investment* by plan fiduciaries. Class Cert. Motion at 4-5. But those cases are very different, often involving claims of injury by both present and *former* participants who believe the value of the plan's assets over an extended investment period would have been much higher but for the alleged imprudent investment. *See also* cases cited at Class Cert. Motion at 6-7; *and see* Class Cert. Motion at 9, referring to *Rankin v. Rots,* 220 F.R.D. 511 (E.D. Mich. 2004), an *imprudent investment case,* as "an ERISA case virtually identical to the one here." But plaintiffs' brief does more than merely provide incomplete or misleading citations: in several places it appears simply to reproduce, in "cut-and-paste" fashion, arguments from a brief in some other case, involving entirely different – indeed directly contradictory -- circumstances from those at issue here. The following is a glaring example:

> Here, Plaintiffs' ERISA claims are all based on conduct by Defendants that is "generally applicable to the class." Plaintiffs allege that Defendants breached their fiduciary duties to the Class by, *e.g.,* failing to ensure that Grace stock was a prudent investment for the Plans [the *precise opposite* of one of plaintiffs' apparent theories of liability], failing to monitor the Plan's fiduciaries, and failing to disclose material information regarding the value of Grace stock to the Plan's participants.

Class Cert. Motion at 17 (bracketed information supplied). No such claims are presented by the Bunch plaintiffs, and their motion cannot survive a "rigorous analysis" applying Rule 23's factors to their class claims in this case.

    **1.**    **Plaintiffs Fail to Satisfy the Four Requirements of Fed. R. Civ. P. 23(a).**

The Bunch plaintiffs must satisfy four requirements under Fed. R. Civ. P. 23(a) before the Court can certify a class. These four requirements often are referred to as numerosity,

commonality, typicality, and adequacy. "The first two prerequisites, numerosity and commonality, require the named plaintiffs to show that an identifiable class exists. The second two, typicality and adequacy, require the named plaintiffs to establish that they are appropriate representatives of the proposed class." *McAdams v. Massachusetts Mutual Life Ins. Co.*, Civ. A. 99-30284-FHF, 2002 WL 1067449, *3 (D. Mass. May 15, 2002) (denying class certification) (citation omitted). The Bunch plaintiffs cannot satisfy any of the four Fed. R. Civ. P. 23(a) prerequisites.

> **a.     The plaintiffs have not provided any evidence that joinder of all class members is impracticable.**

Fed. R. Civ. P. 23(a)(1) requires a showing that the class is "so numerous that joinder of all members is impracticable." Here, the plaintiffs make no showing at all. They have offered no evidence -- or even plausible argument – to establish that there is an impracticably large number of past and current participants who owned Grace Stock through the Plan at some point during the 28-year period from 1976 to 2004 and possess unremedied claims of injury arising from the two-month period in 2004 during which the Grace Stock then in the Plan was sold. Plaintiffs' unbounded class definition provides no basis to link the claims of injury to the class as proposed, and thus no way to judge whether the numerosity requirement is met. *See, e.g., In re Three Mile Island Litigation*, 95 F.R.D. 164, 166-67 (M.D. Pa. 1982) (denying class certification on the basis that numerosity could not be shown where there was no way to determine the size of the class as plaintiffs had defined it, and finding that the plaintiffs "failed to establish anything more than that these are possible plaintiffs.").

One thing appears certain: the number of participants who held Grace Stock in the Plan between the operative dates February 27, 2004 and April 12, 2004 is certainly much smaller than the massive class proposed here. "[W]here class members can be easily identified, joinder is

more likely to be practicable" and class certification may well be inappropriate. *McAdams*, 2002 WL 1067449, at *3 (quoting *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 131-132 (1st Cir. 1985) (affirming denial of class certification)). The Bunch plaintiffs have failed to make any showing that joinder of Grace Plan participants allegedly injured by the divestment is impracticable, and class certification should accordingly be denied for failure to satisfy the numerosity requirement of Fed. R. Civ. P. 23(a)(1).

       **b.**     **The Bunch plaintiffs cannot establish questions of law or fact common to the class.**

Pursuant to Fed. R. Civ. P. 23(a)(2), plaintiffs must show that the issues of law and fact are common to the class as a whole. As the Supreme Court observed in *Falcon*: "Class relief is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class.'" *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 155 (1982). Here, no formulation of liability proffered by the plaintiffs presents issues of law or fact common to each and every participant who held Grace Stock in the Plan at any time between September 1, 1976 and September 15, 2004. Indeed, viewed in the context of plaintiffs' attack on the divestment of Grace Stock from the Plan in February-April 2004, none of the questions posed in the motion appear to present questions of law and fact that are common to the untold number of the purported class members spanning the proposed 28-year period. *See* Class Cert. Motion at 8. As noted previously, plaintiffs' citations to *Rankin v. Rots*, 220 F.R.D. 511 (E.D. Mich. 2004) and *In re Ikon Office Solutions, Inc. Sec. Litig.*, 191 F.R.D. 457 (E.D. Pa. 2000), both of which involved allegations of misrepresentation and imprudent *investment,* provide no authority for certification of the class proposed here.

### c. Plaintiffs' proposed class fails the typicality prerequisite.

Fed. R. Civ. P. 23(a)(3) requires that, in order for a class to be certified, the plaintiff must establish that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The typicality requirement is satisfied when "*each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.*" *McAdams*, 2002 WL 1067449, at *4 (emphasis added; citation omitted). "If the pleadings are vague or conclusory, or if they are so generally drawn that they fail to demonstrate typicality, or if they show no relations between the interests of the plaintiff and of the class, then class certification will be denied." 2 *Newberg on Class Actions*, § 6:21 (4th ed.). The claims asserted by named plaintiffs here are impossibly vague, but they all focus on the divestment that took place in 2004. Plaintiffs nowhere explain how those claims can be representative of any injury suffered by participants who held no Grace Stock, or who were not even Plan participants, at the time of the divestment.

As the Supreme Court held in *Falcon,* the "class representative must be part of the class and *possess the same interest* and *suffer the same injury* as the class members." *Falcon*, 457 U.S. at 156 (emphasis added). The motion makes no attempt to connect any interest or injury of the named plaintiffs to the former and current participants who would be swept into their bloated class definition here. Plaintiffs thus fail to satisfy the typicality prerequisite of Fed. R. Civ. P. 23(a)(3).[7]

---

[7] The Bunch plaintiffs additionally do not explain how they can purport, in attacking the *divestment* of Grace Stock from the Plan, to represent the interests of all holders of Grace Stock in the Plan at any time during the proffered 28-year period, when their complaint is consolidated with a second action, seeking to certify a class consisting of many of the same participants, but where the theory of liability is that the Grace Stock should have been sold much, much earlier. *See Evans, et al v. Akers, et al.*, First Amended Complaint for Violations of the Employee Retirement Income Security Act of 1974, filed Dec. 19, 2005.

        **d.**        **The Bunch class representatives cannot adequately protect the interests of the class as their interests are not aligned with the interests of the class as a whole.**

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *AmChem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (affirming decertification of class). The Bunch plaintiffs' proposed class inherently subjects the class representatives and the class as a whole to two fatal conflicts of interest. First, as discussed, the class representatives' interests are not aligned with or parallel to other class members who held no Grace Stock in the Plan between February 27, 2004 and April 12, 2004. Second, the class representatives' pursuit of their claims against State Street will not benefit the entire class proposed. The named plaintiffs appear simply to have invoked the mantle of this 28-year class to make their claims look more impressive, without having done the basic work to determine if, indeed, they are furthering any shared interest of the class as a whole. At the very least, the motion fails to provide any basis to believe that these plaintiffs intend to place the interests of the class ahead of their own, and it can be denied for failure to satisfy the requirements of Rule 28(a)(4).

        **2.**        **The Bunch Plaintiffs Fail to Show That This Action Fits Any Provision of Fed. R. Civ. P. 23(b).**

The disparate and overbroad class proffered by the *Bunch* plaintiffs similarly dooms the motion under Fed. R. Civ. P. 23(b). First, because there is no claim in the case applicable to the class as a whole, State Street is not exposed to an undue risk of "inconsistent or varying adjudications" under Fed. R. Civ. P. 23(b)(1)(A), and there is no showing in the motion that

-13-

adjudications respecting the interests of some of the proposed class embers would impact the interests of other proposed class members, as contemplated by Fed. R. Civ. P. 23(b)(1)(B).[8]

Nor can the Bunch plaintiffs make any showing that State Street "has acted or refused to act on grounds generally applicable to the class," as contemplated by Fed. R. Civ. P. 23(b)(2). Whether an action should be certified under Fed. R. Civ. P. 23(b)(2) "depends on the appropriateness of injunctive or corresponding declaratory relief with respect to the class as a whole." *Dionne v. Bouley*, 757 F.2d 1344, 1356 (1st Cir. 1985) (affirming denial of class certification). Here, again, plaintiffs allege no wrongful conduct by State Street that could affect the proposed class "as a whole."

Finally, the plaintiffs cannot demonstrate that class adjudication is appropriate pursuant to Fed. R. Civ. P. 23(b)(3), because, as previously discussed, common questions of law or fact do not predominate for this class, viewed in the context of the claims asserted here.

---

[8] As previously discussed, the Court need not pause long over plaintiffs' assertion that "in ERISA fiduciary breach cases *like these*, courts routinely certify class under Fed. R. Civ. P. 23(b)(1)." Class Cert. Motion at 4 (emphasis added). None of the cases that Plaintiffs cite for this proposition are anything at all "like" the instant case; indeed, they are wholly inapposite. This case attacks the *divestment* of Grace Stock from the Plan during a two-month period in 2004. The cited cases involve claims that, going back years, the fiduciaries engaged in imprudent investment, misrepresentation, and failures to monitor. *See id., citing In re Worldcom, Inc. ERISA Litigation,* No. 02 Civ. 4816 DLC, 2004 U.S. Dist. LEXIS 19786, *3-4 (S.D.N.Y. Oct. 4, 2004) (alleging among other things that defendants acted imprudently "by continuing to offer WorldCom stock as an investment alternative within the WorldCom ERISA plan when they knew or should have known that such an investment was imprudent. . ."); *Rankin v. Rots, supra,* 220 F.R.D. at 514 (E.D. Mich. 2004) (alleging that defendants acted imprudently "by continuing to invest in Kmart stock at a time when Kmart was in serious decline and which resulted in significant losses to the Plan."); *In re Ikon Office Solutions, Inc. Sec. Litig., supra,* 191 F.R.D. at 460 (E.D. Pa. 2000) (alleging among other things that defendants "acted improperly by investing the company's matching contribution solely in Ikon stock notwithstanding purported knowledge of Ikon's failing financial status, including knowledge of actual fraud perpetrated by the company."); *cf. Swody v. Harrah's New Orleans Mgmt. Co. Inc.,* C.A. No. 95-4118 c/w 96-0215 SECTION "J", 1996 U.S. Dist. LEXIS 5512, 2 (E.D. La. Apr. 22, 1996) (alleging that in the course of certain laying offs "defendants failed to pay severance benefits in violation of ERISA.").

# III.
# CONCLUSION

For the foregoing reasons, the Bunch plaintiffs' motion for class certification must be denied.

Dated:  May 30, 2006        Respectfully submitted,

STATE STREET BANK AND TRUST COMPANY

By its counsel,

 /s/ Sean T. Carnathan
Sean T. Carnathan (BBO #636889)
(scarnathan@ocmlaw.net)
O'CONNOR, CARNATHAN, AND MACK LLC
8 New England Executive Park, Suite 310
Burlington, MA 01803
Telephone: (781) 359-9000
Facsimile: (781) 359-9001

-and-

Scott M. Flicker
(scottflicker@paulhastings.com)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th Street, NW
Washington, DC 20005
Telephone: (202) 551-1700
Facsimile: (202) 551-1705

**CERTIFICATE OF SERVICE**

      I hereby certify that this Memorandum in Opposition to Class Certification and the documents filed in support of it through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on May 30, 2006.


| May 30, 2006 | /s/ Sean T. Carnathan |
|---|---|
| Date | Sean T. Carnathan |