Westlaw.

Not Reported in F.Supp.2d                                                                                            Page 1
Not Reported in F.Supp.2d, 2002 WL 1067449 (D.Mass.), 28 Employee Benefits Cas. 2164
**(Cite as: 2002 WL 1067449 (D.Mass.))**

**H**
United States District Court, D. Massachusetts.
Michael Q. MCADAMS and Farrell D. Odom, on behalf of themselves and all others similarly situated, Plaintiffs
v.
MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, and Mass Mutual Benefits Management, Inc., Defendants
No. Civ.A.99-30284-FHF.

May 15, 2002.

*MEMORANDUM AND ORDER*

FREEDMAN, Senior J.

### I. INTRODUCTION
*1 The plaintiffs, Michael Q. McAdams and Farrell D. Odom on behalf of themselves and on behalf of a class, (collectively "plaintiffs"), are former participants in a deferred compensation plan administered by Massachusetts Mutual Life Insurance Company and Mass Mutual Benefits Management, Inc. (collectively "defendants"). The plaintiffs allege several common law and statutory claims against the defendants arising from their administration of the plan. The plaintiffs now move to certify the class (Doc. No. 57). For the reasons stated below, their motion will be denied.

### II. BACKGROUND
Massachusetts Mutual Life Insurance Company ("MassMutual") is a Massachusetts corporation with its principal place of business in Massachusetts. In January 1970, MassMutual began to administer a deferred compensation plan, the Massachusetts Mutual Life Insurance Company's General Agents Deferred Compensation Plan ("Plan"), as a perquisite to selected General Agents. MassMutual's wholly-owned subsidiary, Mass Mutual Benefits Management, Inc. ("MassMutual Benefits") began serving as the Plan's administrator in 1999. McAdams was a General Agent at MassMutual between 1971 and 1998; Odom served as a General Agent between 1983 and 1998.

General Agents who elected to participate in the Plan entered into a contract drafted by MassMutual, the General Agent Deferred Compensation Agreement ("Agreement"), which sets out the terms and conditions governing the Plan. The form of the Agreement signed by McAdams and Odom is identical; MassMutual drafted the form and its essential terms do not vary. In addition, the Plan was administered in a manner that was uniform among the participants. For instance, the method for calculating gain and loss was standardized for each participant; the same "tax" rate was applied uniformly to each participant's account; and the format of the account statements provided to participating agents was also uniform.

The Plan allowed participating General Agents to defer the receipt of income from certain commissions. Under the Agreement, MassMutual was afforded the discretion to either invest a portion of its assets up to an amount equal in value to the amount in each General Agent's account separately from the company's general reserves, or to retain them in the general reserves. When MassMutual makes separate investments, paragraph 1 of Article V expressly provides that the company is entitled to assess a "tax" charge when determining the rate of gain to be applied to participants' accounts. However, the plaintiffs contend that, if MassMutual does not make separate investments, the terms of the Agreement do not expressly authorize the company to assess a "tax" charge. Although MassMutual rarely, if ever, made separate investments pursuant to the Agreement, it assessed a "tax" charge on the gain credited to participants' accounts.

McAdams started to defer five percent of his commissions in October 1983, and Odom began to defer fifty percent of his commissions in January 1986. According to MassMutual, both McAdams and Odom increased the amount of their deferred compensation on three separate occasions. At some point after 1983, McAdams and Odom learned that a tax charge reduced their income and capital gains, even though MassMutual made no separate investments. In July 1994, McAdams and Odom, along with all the other participating General Agents, received a Memo of new Plan enhancements, which indicated that MassMutual would deduct from their accounts a tax charge of 34.16%, against income and investment gains, both realized and unrealized. MassMutual based this tax charge on the alleged increased costs resulting from the higher taxes on Plan earnings, and the loss of current tax deductions on the contributions that were deferred under the Plan

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-11380-WGY    Document 98-6    Filed 05/30/2006    Page 2 of 13

Not Reported in F.Supp.2d                                                                                       Page 2
Not Reported in F.Supp.2d, 2002 WL 1067449 (D.Mass.), 28 Employee Benefits Cas. 2164
**(Cite as: 2002 WL 1067449 (D.Mass.))**

instead of being paid out to General Agents. In response to complaints from participating General Agents, MassMutual announced in March 1999 its intention to discontinue the "tax" for future deferrals, but refused to refund the "tax" already deducted from the prior deferrals.

*2 McAdams resigned as General Agent of MassMutual in January 1998. In the course of terminating his employment relationship with MassMutual, he signed a "General Release and Agreement." The Release provides, in pertinent part, that McAdams

> agrees to fully and forever discharge MassMutual ... from any and all claims of any nature whatever, known or unknown, fixed or contingent ... from the beginning of time to the date hereof, and more particularly, without in any way limiting the generality of the foregoing, of and from any and all claims arising out of or in any way connected with McAdams' dealings of any sort with MassMutual ... that he ever had, now may have, or that he and his heirs ever may have.

Subsequently, McAdams and Odom instituted an action in this Court on behalf of themselves and on behalf of a class, which consists of all General Agents participating in the Plan. Their complaint alleges several common law and statutory claims arising from MassMutual's administration of the Plan. The plaintiffs now seek certification of a class consisting of all participants in the Plan pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").

III. DISCUSSION

Federal Rule of Civil Procedure 23(a) provides that this Court may certify a class if:
> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Even if these requirements are satisfied, a class action can be maintained only if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). The plaintiffs bear the burden of proving that the requirements of Rule 23 have been satisfied. *Markarian v. Connecticut Mut. Life Ins. Co.*, 202 F.R.D. 60, 63 (D.Mass.2001).

Although the Court may not evaluate the merits of the movants' substantive allegations at this stage, it "must perform a 'rigorous analysis' to ensure that the requirements of Rule 23 have been met." *Cohn v. Massachusetts Mut. Life Ins. Co.*, 189 F.R.D. 209, 212 (D.Conn.1999) (quoting *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982)). In *Falcon,* the Supreme Court stated that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," and affirmed that "[a]ctual, not presumed, compliance with Rule 23(a) remains ... indispensible." *Falcon,* 457 U.S. at 160; *see Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 677 (7th Cir.2001) (rule articulated by *Falcon* "is equally true of Rule 23(b)"), *cert. denied,* 122 S.Ct. 348 (2001). However, when analyzing motions to certify, district courts in this circuit have frequently recognized that "Rule 23(a) should be liberally construed in order not to undermine the policies underlying the class action rule." *Lessard v. Metropolitan Life Ins. Co.,* 103 F.R.D. 608, 610 (D.Me.1984); *see Vigue v. Ives,* 138 F.R.D. 6, 8 (D.Me.1991); 5 Moore's Federal Practice, § 23.03 (3d ed. 2002) (Rule 23 "should be interpreted in light of the various purposes behind it.") Therefore, "[w]hen a court is in doubt as to whether to certify a class action, it should err in favor of allowing a class." *In re Cardizem CD Antitrust Litig.,* 200 F.R.D. 297, 303 (E.D.Mich.2001).

A. *Rule 23(a) Analysis*

*3 Rule 23(a) contains four requirements that must be satisfied before the Court can certify a class: numerosity, commonality, typicality, and adequacy. "The first two prerequisites, numerosity and commonality, require the named plaintiffs to show that an identifiable class exists. The second two, typicality and adequacy, require the named plaintiffs to establish that they are appropriate representatives of the proposed class." *Mulligan v. Choice Mortgage Corp.,* No. Civ. 96-596-B, 1998 WL 544431, at *2 (D.N.H. Aug. 11, 1998). The defendants challenge the plaintiffs' ability to satisfy the commonality, typicality and adequacy requirements. Although the defendants do not challenge the numerosity requirement, "the Court must consider each factor." *In re Cardizem CD Antitrust Litig.,* 200 F.R.D. at 303. The Court, therefore, will begin there.

1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1067449 (D.Mass.), 28 Employee Benefits Cas. 2164
**(Cite as: 2002 WL 1067449 (D.Mass.))**

Page 3

that joinder of all members is impracticable." The First Circuit has weighed in on this requirement:

> The facts and circumstances of each case are to be taken into account to determine numerosity under [Rule] 23(a)(1). While numbers alone are not usually determinative, a very small class may not meet the numerosity requirement because joinder of all members is practicable. Joinder is considered more practicable when all members of the class are from the same geographic area. In addition, where class members can be easily identified, joinder is more likely to be practicable.

*Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 131-32 (1st Cir.1985) (citations omitted), *cert. denied*, 576 U.S. 1172 (1986). The numerosity requirement of Rule 23(a), moreover, "is not a difficult burden to satisfy...." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. at 303. Here, the plaintiffs have identified 117 Plan participants who may become class members; generally, courts have approved of classes which include more than 40 individuals. *See* 5 Moore's Federal Practice, § 23.22[3][a] at 23-63. In addition, the members of the proposed class are widely dispersed geographically, by virtue of being located in at least thirty-three different states. Because the class in this case is so numerous and widely dispersed that joinder of its members is impracticable, the Court concludes that the plaintiffs satisfy the numerosity requirement of Rule 23(a).

2. Commonality

Pursuant to Rule 23(b)(2), there must be "common questions of fact" shared by members of the proposed class. "A common nucleus of operative fact is usually enough to satisfy the commonality requirement...." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir.1992), *cert. denied*, 506 U.S. 1051 (1993). The presence of some factual differences in the claims of the class, moreover, does not preclude a finding of commonality. 5 Moore's Federal Practice, § 23.23[2], at 23-77. Accordingly, this requirement "has been characterized as a 'low hurdle' easily surmounted." *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D.Ill.1992); *see Mulligan*, 1998 WL 544431 at *3.

*4 Here, the Court concludes that the commonality requirement is easily met. As presented by the plaintiffs, the defendants' administration of the Plan gives rise to several questions of fact and law common to this proposed class, including: (1) whether the defendants breached the Agreement as to each Plan participant by the imposition of a "tax" charge on equity-based investments and on the fixed interest investment option; (2) whether the defendants' assessment of a "tax" charge on unrealized appreciation in each Plan participants' account constitutes an appropriate accrual of "tax" charges under the Agreement; (3) whether defendants breached a covenant of good faith and fair dealing by imposing a "tax" charge in each Plan participants' account or by reducing the fixed interest rate credited to Plan participants' accounts by an expense charge; and (4) whether defendants breached a fiduciary duty to Plan participants by imposing a "tax" charge in each Plan participants' account or by reducing the fixed interest rate credited to Plan participants' accounts by an expense charge. These "questions are illustrative rather than exhaustive," but establish the existence of the commonality required by Rule 23. *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 100 F.R.D. 468, 470 (D.Mass.1984).

The defendants protest that neither of the named plaintiffs can establish commonality "because individualized issues of fact ... predominate over any common issues." Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification at 4, 5. This argument, however, reflects a misunderstanding of the commonality test, which "requires only some common questions; *not a predominance of common questions as required under Rule 23(b)(3).*" *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. at 303 (emphasis added). Although courts frequently merge the commonality and predominance requirements, it is nevertheless clear that commonality remains distinct. 5 Moore's Federal Practice, § 23.23[3], at 23-79. Thus, the Court will address the defendants' concerns regarding predominance in its analysis of Rule 23(b)(3).

3. Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Relevant case law and commentary express "some doubt as to the exact meaning of the 'typicality' requirement." 7A Charles Alan Wright et al., Federal Practice and Procedure, Civil 2d, § 1764 (2d ed.1986). Nevertheless, it seems clear that this requirement is designed to ensure that the representative parties adequately represent the interest of all class members, particularly those not present for the litigation. *See id.; General Tel. Co. v. E.E.O.C.*, 446 U.S. 318, 330 (1980) (typicality requirement "is said to limit the class claims to those fairly encompassed by the named plaintiffs' claims.") Accordingly, the requirement is satisfied when "each

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-11380-WGY   Document 98-6   Filed 05/30/2006   Page 4 of 13

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1067449 (D.Mass.), 28 Employee Benefits Cas. 2164
**(Cite as: 2002 WL 1067449 (D.Mass.))**

Page 4

class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 94 (S.D.N.Y.1998); see 5 Moore's Federal Practice, § 23.24[2], at 23-93

*\*5* In this case, all of the plaintiffs' claims revolve around MassMutual's general practice of assessing a "tax" charge against their accounts. In addition, the named plaintiffs' claims arise from the same events and the same conduct as those of prospective class members. Specifically, each Plan participant entered into the same Agreement, and the Plan was administered in a manner that was uniform among all participants. MassMutual utilized the same methodology to calculate gains and losses as to each Plan participant, and although the methodology changed over time, the same method was still applied uniformly to all Plan participants. Finally, the same tax rate was applied uniformly to the account of each Plan participant. Thus, the Court concludes that the plaintiffs' claims are typical of the proposed class. See *Heartland Communications, Inc. v. Sprint Corp.*, 161 F.R.D. 111, 116 (D.Kan.1995) (typicality requirement satisfied by plaintiffs who entered into same contract with Sprint, where same legal theories applied to all plaintiffs, and type of harm suffered by representative plaintiffs is of the same type suffered by proposed class). The plaintiffs concede that there exist differences among the putative class members, including the amounts contributed to each particular account, the specific investment options chosen by each Plan member, and the damages allegedly suffered by each Plan participant due to the conduct of the defendants. However, such distinctions are insufficient to destroy typicality. See *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir.1993) (typicality requirement satisfied by plaintiff who challenged J.C. Penney's "general practice" of overestimating social security benefits in ERISA plans, "despite the fact that four different plans are involved"); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. at 326 (differences in individual damage awards do not preclude class certification).

The defendants, however, vigorously challenge the plaintiffs' ability to show typicality on two fronts. Specifically, they contend that McAdams is barred from pursuing his claims because: (1) he entered into a release, unique to him, in which he released any claims he had against MassMutual; and (2) McAdams and Odom effectively consented to the "tax" imposed by MassMutual, thereby waiving their right to bring a breach of contract claim. The Court will address each argument in turn.

a. Release

The defendants first argue that McAdams entered into a Release in 1998, thus releasing MassMutual from any liability for any claims he may have, including those asserted in this action. This release, they contend, renders McAdams atypical of the class he purports to represent. The plaintiffs counter that the existence of the release does not preclude certification because resolution of this unique defense will not impair the presentation of issues common to all class members.

The First Circuit has recently asserted that the presence of an affirmative defense, such as the existence of a release, should be considered in making class certification decisions. *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 295 (1st Cir.2000); see *Smilow v. Southwestern Bell Mobile Sys., Inc.*, 200 F.R.D. 5, 8 (D.Mass.2001). Accordingly, "[d]efenses that are peculiar to the named plaintiff or a small subset of the plaintiff may destroy the required typicality of the class." *Abt v. Mazda Am. Credit*, No. 98-C-2931, 1999 WL 350738, at \*3 (N.D.Ill. May 19, 1999). Yet the presence of an affirmative defense does not automatically destroy typicality. See *Mowbray*, 208 F.3d at 296 (rejecting "any per se rule that treats the presence of such issues as an automatic disqualifier.") "It is only when a unique defense will consume the merits of the case that a class should not be certified." *Abt*, 1999 WL 350738 at \*3. In other words, "[t]ypicality is destroyed only when such defenses are likely to usurp a significant portion of plaintiff's time and energy, distracting him from representing the interests of other class members." *Id.*; see *Koos v. First Nat'l Bank*, 496 F.2d 1162, 1164 (7th Cir.1974) (holding that when "a major focus of the litigation will be on an arguable defense unique to the named plaintiff ... then the named plaintiff is not a proper class representative."); *Morse v. Bankers Life & Cas. Co.*, No. 99-C-0193, 2000 WL 246245 (N.D.Ill. Feb. 24, 2000); *In re Synthroid Mktg. Litig.*, 188 F.R.D. 287, 291 (N.D.Ill.1999), *called into doubt on other grounds, Szabo*, 249 F.3d at 675; *Riordan v. Smith Barney*, 113 F.R.D. 60, 63 (N.D.Ill.1986); *Lessard*, 103 F.R.D. at 611; *Zeffiro v. First Pennsylvania Banking & Trust Co.*, 96 F.R.D. 567, 570 (E.D.Pa.1983). This is particularly true where "the overriding question common to the class is 'logically prior' to special defenses against the named plaintiff." *Zeffiro*, 96 F.R.D. at 570.

Case 1:04-cv-11380-WGY   Document 98-6   Filed 05/30/2006   Page 5 of 13

Not Reported in F.Supp.2d                                                                   Page 5
Not Reported in F.Supp.2d, 2002 WL 1067449 (D.Mass.), 28 Employee Benefits Cas. 2164
(Cite as: 2002 WL 1067449 (D.Mass.))

*6 Here, the defendants do not even contend that the release issue threatens to become a major focus of the litigation. In the defendants' exhaustively documented brief, they observe that the release itself would be introduced into evidence, but do not suggest that any additional documentary evidence would be required. *See* Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification ("Defendants' Memorandum"), at 8-11. At oral argument, counsel for the defendants suggested that Mr. McAdams' testimony would be required, but he did not identify any additional witnesses or documents on the issue of the validity of the release. *See* Transcript, December 19, 2001, at 15-16. [FN1] Finally, the defendants persuasively argue that the interpretation of general releases is relatively clear under Massachusetts law. *See, e.g., Shuster v. Baskin,* 236 N.E.2d 205, 208 (1968) (requiring that any exclusion from scope of general release must be expressly stated). Accordingly, the Court concludes that evaluating the validity of the McAdams release will not overwhelm this litigation, and therefore cannot preclude the plaintiffs from satisfying the typicality requirement.

> FN1. Although counsel referred to many documents during this portion of his presentation, none appear to relate to the narrow issue of the release. Transcript at 14-20.

The defendants' reliance on *Beaver Falls Thrift Corp. v. Commercial Credit Business Loans, Inc.,* 563 F.Supp. 68, 71 (W.D.Pa.1983), is unavailing. There, the court appears to adopt a per se rule which treats the presence of any legitimate, unique defense as an automatic disqualifier, and the First Circuit in *Mowbray* has expressly disavowed such a rule. *Mowbray,* 208 F.3d at 296 & n. 4. In addition, the court in *Beaver Falls* noted that the question of whether an amendment to the underlying contract constituted a release would require the evaluation of "numerous" oral and written communications, and the testimony of at least two witnesses. *Beaver Falls,* 563 F.Supp. at 72. The release in *Beaver Falls,* therefore, would be a significant issue during the trial of that case, and thus had the potential "for subordination of the interests of the class in favor of the plaintiff's individual case." *Id.* Here, by contrast, the issue of the release does not threaten to distract from the issues common to the class as a whole.

Furthermore, the Court declines the defendants' invitation to rely on *Matthews v. Sears Pension Plan,* No. 95-C-1988, 1996 WL 199746 (N.D.Ill. Apr. 23, 1996). There, the court reasoned that the existence of a release executed by the named plaintiff placed him in a weaker legal position than other members of the class who did not sign releases, a factor which may have persuaded him to settle the case for less than the remaining class members could have negotiated. Even if this Court were to adopt this reasoning, the instant action is factually distinguishable because one of the named plaintiffs, Mr. Odom, is not alleged to have signed a release. Accordingly, if McAdams is allowed to proceed as one of the named parties in this action, the interests of the non-signing class members in this case will be represented by one of the two named class representatives.

b. Consent and/or Waiver

*7 The defendants next observe that McAdams and Odom elected to defer thousands of dollars of compensation even after they learned of the "tax adjustment" imposed by MassMutual. They argue that these elections, in light of their knowledge of the tax adjustment, results in a waiver of their right to recovery for breach of contract. Resolution of this affirmative defense, the defendants contend, will require several discrete "mini-trials" to evaluate each plaintiffs' knowledge and intent regarding their consent to the "tax adjustment." Although this argument has some facial appeal, Massachusetts law does not favor the defendants' position.

"To succeed on the waiver defense, [the defendants] must meet the 'uncompromising' standard for waiver under Massachusetts law: proof of clear, decisive, and unequivocal conduct on the part of an authorized representative indicating that it would not insist on adherence to the agreement." *Dunkin' Donuts, Inc. v. Gay-Stra Donuts, Inc.,* 139 F.Supp.2d 147, 157 (D.Mass.2001); *see D. Federico Co. v. Commonwealth,* 415 N.E.2d 855, 858 (Mass.App.Ct.1981). "Whether or not a waiver has been effected is determined by an objective assessment of the conduct of the party asserted to have surrendered its contractual rights." *Dunkin' Donuts, Inc. v. Panagakos,* 5 F.Supp.2d 57, 60 (D.Mass.1998). The burden of proving waiver, moreover, falls upon the party asserting it. *Id.* at 61.

In interpreting the standard for proving waiver, the Court finds *Panagakos* instructive. There, the company sued to terminate a franchise agreement with the defendant, on the ground that he pleaded guilty to tax fraud in 1994. *Panagakos,* 5 F.Supp.2d at 58-59. The defendant countered that the company had waived its right to terminate the agreement on the

Case 1:04-cv-11380-WGY    Document 98-6    Filed 05/30/2006    Page 6 of 13

Not Reported in F.Supp.2d                                                                              Page 6
Not Reported in F.Supp.2d, 2002 WL 1067449 (D.Mass.), 28 Employee Benefits Cas. 2164
**(Cite as: 2002 WL 1067449 (D.Mass.))**

ground that, even after it learned of his convictions, it allowed the defendant to complete and open another franchise, and accepted his franchise fees without any reservation of rights, among other acts. *Id.* at 61. The court concluded that the defendant had not met his burden because all of the purported indicia of waiver involved the company's silence, and noted: "it is doubtful that mere silence could satisfy [the defendant's] burden of establishing 'clear, decisive, and *unequivocal* conduct on [the company's] part." *Id.* at 61.

Here, the Court concludes that evidence of the plaintiffs' elections to defer income, even with knowledge of the tax increases, is not sufficient to show that they took "affirmative steps to waive [their] contractual right[s]...." *Gav-Stra Donuts, Inc.,* 139 F.Supp.2d at 157. Rather, like the acceptance of franchise fees without reservation and the granting of another franchise in *Panagakos,* mere elections to defer compensation under the Plan are insufficient to show that the plaintiffs unequivocally relinquished their contractual rights. *Panagakos,* 5 F.Supp.2d at 61. Accordingly, this Court concludes that the defendants' "waiver" theory cannot preclude the named plaintiffs from satisfying the typicality requirement in this case. *See Mowbray,* 208 F.3d at 298 (when court finds that issue "which, in theory, requires individualized factfinding is, in fact, highly unlikely to survive typical pretrial screening ... a concomitant finding that the issue neither renders the case unmanageable nor undermines the predominance of common issues generally will be in order.").

*8 The plaintiffs' reliance upon *Accusoft Corp. v. Palo,* 237 F.3d 31 (2001), moreover, misses the mark. There, the parties entered into a settlement agreement allowing the plaintiff to license computer software created by the defendant through August 31, 1996. *Id.* at 37-38. In September 1996, the plaintiff filed a motion seeking to rescind, and be relieved from its obligations under, the settlement agreement in its entirety. *Id.* at 54. The court held that, because the plaintiff accepted benefits under the agreement through the expiration date of the agreement, it "lost any right it may have had to be excused from performance as a result of [the defendant's] contempt." *Id.* at 55; *see* Restatement (Second) of Contracts, § 246 (conduct indicating willingness to honor a contract, despite knowledge that other party failed to perform, "operates as a promise to perform in spite of that non-occurrence."). Clearly, *Accusoft* does not control the outcome of this case. Unlike the facts described in *Accusoft,* the plaintiffs here seek neither rescission of the Agreement, nor relief from their obligation to perform under the Agreement. Rather, they are seeking damages for the defendants' alleged violations of its terms. Indeed, in *Accusoft,* the court strongly suggests that the plaintiff would be permitted to recover damages for the defendant's breach of contract if it could demonstrate adequate evidence of causation. *Id.* at 56-57.

4. Adequacy

The final prerequisite under Rule 23(a) is that the representative parties must "fairly and adequately protect the interests of the class." To ascertain whether the plaintiffs can satisfy this prong of the analysis, the Court must determine: "(1) whether the interests of the representative parties will conflict with the interests of any class members; and (2) whether the representative parties' counsel is qualified, experienced and able to vigorously conduct the proposed litigation." *Mulligan,* 1998 WL 544431, at * 4 (quotations omitted). Here, the Court concludes that the plaintiffs easily satisfy this standard. First, the Court finds no evidence of a potential conflict between the plaintiffs and the other members of the class. With regard to the second part of this test, the Court finds no reason to doubt the representations of the plaintiffs' counsel regarding their experience, resources, and commitment to the vigorous prosecution of this action.

The defendants counter that McAdams is an inadequate representative on the ground that he never investigated whether the tax adjustment to his account has, since the date of the January 1998 release, resulted in economic harm or benefit, when taking into account all possible tax consequences. This argument, however, does not withstand serious scrutiny. As McAdams pointed out in his deposition, the time period between the execution of the release and the present represents "a snapshot of only roughly a fourth of the time of my participation in the plan...." McAdams Transcript at 74. It cannot seriously be argued that his failure to investigate the possible tax advantages of the "tax adjustment" during a limited period of his participation in this plan disqualifies him from adequately representing this class.

*9 Certainly, this is a quite different case from *Ostrof v. State Farm Mutual Automobile Insurance Co.,* 200 F.R.D. 521, 529 (D.Md.2001), relied on by the defendants. There, the court stated that the named plaintiffs could not adequately represent the class because they "displayed limited knowledge and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-11380-WGY    Document 98-6    Filed 05/30/2006    Page 7 of 13

Not Reported in F.Supp.2d                                                                                                   Page 7
Not Reported in F.Supp.2d, 2002 WL 1067449 (D.Mass.), 28 Employee Benefits Cas. 2164
**(Cite as: 2002 WL 1067449 (D.Mass.))**

understanding of this lawsuit." *Ostrof,* 200 F.R.D. at 530. Moreover, the plaintiffs in that case were not familiar with several factual underpinnings of their case for denial of reimbursement for medical bills by an insurance company, such as, which bills had been paid, how much money was being claimed for lost wages, which injury they were being treated for, or what medication they were taking. *See Ostrof,* 200 F.R.D. at 529. Here, by contrast, the defendants do not even argue that McAdams, whose deposition testimony demonstrates perspicacity and a strong understanding of the underlying facts in this case, is similarly impaired. Indeed, such an argument would be difficult to reconcile with their oft-repeated assertion that McAdams "is an extraordinarily sophisticated businessman who is amply capable of protecting his own interests...." See Defendants' Memorandum at 25-27; Defendants' Surreply Memorandum at 12.

Having concluded that the plaintiffs satisfy all four prerequisites of Rule 23(a), the Court next turns to the requirements set forth in Rule 23(b)(3).

*B. Rule 23(b) Analysis*

Pursuant to Rule 23(b)(3), the plaintiffs must show that: (1) common questions of law and fact predominate over questions affecting individual members; and (2) a class action is superior to other available methods of adjudicating the case. Fed.R.Civ.P. 23(b)(3). "These requirements ensure that certification is granted only where the adjudication of common issues in a single action will achieve judicial economies and practical advantages without jeopardizing procedural fairness." *Mulligan,* 1998 WL 544431, at *4.

1. Predominance

The first issue, predominance, "focuses on the number and significance of common questions, as opposed to individual issues." 5 Moore's Federal Practice, § 23.44, at 23-203. Although no precise test has been formulated to guide this analysis, "the Rule requires a pragmatic assessment of the entire action and all the issues involved." *Id.,* § 23.46[1], at 23-206. Accordingly, "common issues are deemed to predominate when the class shares issues of overriding significance, such as a determination of defendant's liability, so that separate adjudication of individual liability claims would be unnecessary." *Mulligan,* 1998 WL at *5 (quotations omitted).

The plaintiffs contend that common questions outweigh any individual issues to be addressed in this litigation, as the same theories of liability are asserted on behalf of all class members, and the same remedies are sought by all class members against the defendants. Specifically, the plaintiffs note that their claims are grounded in a common Agreement and MassMutual's common administration of the same Plan. The defendants argue that resolution of the class members' claims for breach of contract and breach of fiduciary duty will require an individualized, rather than common, determination. The Court will address each contention in turn.

a. Statute of Limitations

*10 First, the defendants argue that several of the plaintiffs' breach of contract and fiduciary duty claims are barred by a six-year statute of limitations. According to the defendants, a highly individualized analysis will be required to ascertain whether the claims of the plaintiffs and the remaining class members are so barred, rendering the case inappropriate for class certification. The plaintiffs counter that the Agreement was signed under seal, and is governed by a twenty-year statute of limitations, which negates the need for an individualized inquiry into the limitations period. The Court agrees with the plaintiffs' central contention, and therefore need not reach their alternative arguments.

Mass. Gen. Laws ch. 4, § 9A ("section 9A") provides, in pertinent part:
> In any written instrument, a recital that such instrument is sealed by or bears the seal of the person signing the same or is given under the hand and seal of the person signing the same, or that such instrument is intended to take effect as a sealed instrument, shall be sufficient to give such instrument the legal effect of a sealed instrument without the addition of any seal of wax....

The Massachusetts courts have consistently held that language such as "signed as a sealed instrument" and "witness our hands and seals hereto" creates a specialty as a matter of law. *See Johnson v. Norton Hous. Auth.,* 375 N.E.2d 1209, 1211 n. 3 (Mass.1978); *Kingston Hous. Auth. v. Sandonato & Boque, Inc.,* 577 N.E.2d 1, 4 (Mass.App.Ct.1991). Here, the body of the Agreement concludes with the following sentence: "IN WITNESS HEREOF, the Company has caused this Agreement to be executed in its corporate name by its duly authorized officer and the General Agent *has hereunto set his hand and seal* on the day and year first above written." Affidavit of Michael Q. McAdams, Exhibit A, at 11

Case 1:04-cv-11380-WGY    Document 98-6    Filed 05/30/2006    Page 8 of 13

Not Reported in F.Supp.2d    Page 8
Not Reported in F.Supp.2d, 2002 WL 1067449 (D.Mass.), 28 Employee Benefits Cas. 2164
**(Cite as: 2002 WL 1067449 (D.Mass.))**

(emphasis added). The plaintiffs assert, and the defendants do not dispute, that the contract was written by MassMutual. See Plaintiffs' Reply Memorandum in Support of Motion for Class Certification at 5. Under this particular set of facts, the Court concludes that the words "set his hand and seal" constitute a sufficient recital that the Agreement is intended to take effect as a sealed instrument. See Thomas v. Webster Spring Co., 638 N.E.2d 51, 51, 53 (Mass.App.Ct.1994). Accordingly, actions brought under the Agreement are subject to a twenty-year statute of limitations. See Mass. Gen. Laws ch. 260, § 1. [FN2]

> FN2. Because each of the plaintiffs' claims arise from the Agreement, the twenty-year limitations period applies to all of the plaintiffs' claims. For instance, the fiduciary duty allegedly owed to the plaintiffs arises from the contractual relationship between the parties. See FDIC v. Gladstone, 44 F.Supp.2d 81, 91-92 (D.Mass.1999). Moreover, the duty of good faith and fair dealing, which is implied within every contract, arises from the agreement. See Anthony's Pier Four, Inc. v. H.B.C. Assocs., 583 N.E.2d 806, 820 (Mass.1991). Accordingly, the twenty-year limitations period for breach of contract under seal applies to the plaintiffs' claims for breach of fiduciary duty and breach of the covenant of good faith and fair dealing.

The defendants contend that the quoted language signifies the parties' intention to create a contract under seal only as to McAdams, and a simple contract as to MassMutual, because only McAdams "set his hand and seal" to the document. It is certainly true that the plain language of the Agreement supports the conclusion urged by the defendants. However, the Court is not persuaded that section 9A permits a contract to be signed under seal only as to one party, but not to both. See Mass. Gen. Laws ch. 4, § 9A. Indeed, the statute speaks of a "sealed instrument," but gives no indication that a contract is under seal with respect to only one or the other party. Id. Moreover, the defendants point to no Massachusetts cases in which a contract was held to be under seal as to only one of the contracting parties.

*11 By contrast, the plaintiffs' position is supported by Thomas v. Webster Spring Co., 638 N.E.2d at 53. There, the plaintiff invented a "novel bedding spring," and assigned the rights to this invention to his employer, the defendant, for good and valuable consideration. Id. at 51. The plaintiff, who had not received any remuneration under the assignment, brought an action to nullify it or for damages. Id. Although the court did not devote any analysis to this issue, it stated that the assignment was sealed because the "signature block to the instrument of assignment recited that *the signatory had 'set his hand and seal,'* i.e., it was a sealed instrument." Id. (emphasis added.) In addition, the defendant argued on appeal that consideration was unnecessary under the assignment, as it "was a sealed instrument (*because of the recital that the assignor [i.e. the plaintiff] had set to it his hand and seal* )...." Id. at 53 (emphasis added). Thus, in Thomas, the Massachusetts Court of Appeals definitively stated (and the defendant agreed) that the contract was a sealed instrument *as to both parties* where, as here, the assignment reflected only that the plaintiff had set forth his hand and seal to the document. In other words, the plaintiff created a sealed instrument, and thus extended his time to sue the defendant, although the defendant did not expressly place the contract under seal. This is exactly the situation presently before this Court.

The defendants also protest that, under the plaintiffs' reading of section 9A, "any party to a contract could bind every other party to the contract to a 20-year statute of limitations by placing his own seal on the contract without notice and without bargaining therefor." MassMutual's Response to Plaintiffs' Supplemental Memorandum, at 6-7. The Court concedes that this argument may have force in a different context. Here, however, McAdams "set his hand and seal" to the Agreement only in the text of the contract, which was drafted by MassMutual. Thus, it is simply implausible that McAdams could have somehow created a sealed instrument "without notice" to MassMutual, the drafting party.

In addition, the defendants cite to Lumbermen's Mut. Cas. Co. v. Pattillo Constr. Co., 323 S.E.2d 649, 650 (Ga.App.Ct.1984) in support of their thesis that a contract under seal may be formed as to one of the parties but not as to the other. This reliance, however, is unavailing. In Lumbermen's Mutual, an amendment to the contract at issue recited at its conclusion, "IN WITNESS WHEREOF, the parties have hereunto set their hands and affixed their seals...." Lumbermen's Mut. Cas. Co., 323 S.E.2d at 650. Although the contract reflected that the appellant placed the word "seal" after its signature, the appellee did not. Id. at 650-51. The court held that the contract was not under seal as to the appellee because it did not contain "both a recital in the body of the instrument of an intention to use a seal and the affixing of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-11380-WGY   Document 98-6   Filed 05/30/2006   Page 9 of 13

Not Reported in F.Supp.2d                                                                                                    Page 9
Not Reported in F.Supp.2d, 2002 WL 1067449 (D.Mass.), 28 Employee Benefits Cas. 2164
**(Cite as: 2002 WL 1067449 (D.Mass.))**

seal or scroll after the signature." *Id.* at 651. Clearly, this case does not reflect the law in Massachusetts, where a recital that the parties intend to seal the contract is sufficient to form a specialty "without the addition of any seal of wax." Mass. Gen. Laws ch. 4, § 9A; see *Johnson*, 375 N.E.2d at 1211 n. 3. [FN3]

> FN3. The defendants' reliance on *Lumbermen's Mutual* is particularly specious, given that it was subsequently reversed by the Georgia Supreme Court, 330 S.E.2d 344 (1985), and vacated by the Court of Appeals of Georgia, 334 S.E.2d 222 (1985).

b. Breach of Fiduciary Duty

*12 Next, the defendants contend that resolution of the plaintiffs' claim for breach of fiduciary duty will be individualized, and thus inappropriate for class certification, for two reasons. First, they argue that the claim must be analyzed under the laws of several different states, and is therefore unsuitable for resolution as a class action. Second, they asseverate that McAdams and Odom were sophisticated businessmen who were capable of protecting their own interests in their dealings with MassMutual. Establishing the presence of a fiduciary relationship, according to the defendants, will require individualized findings of fact as to the relative sophistication of each of the potential class members, thus rendering this action unsuitable for class certification. The Court will address each contention in turn.

i. Choice of Law

To ascertain which law governs the instant fiduciary duty claims, the Court must first address the significance of the choice of law provision in the underlying Agreement. That provision states: "[a]ll questions pertaining to the construction, validity and effect of the provisions of this Agreement shall be determined in accordance with the laws of the Commonwealth of Massachusetts." Affidavit of Michael Q. McAdams, Exhibit A, at 11. The parties agree that the Massachusetts courts have consistently enforced contractual choice-of-law provisions, so long as there exists no serious conflict with the public policy of this jurisdiction. *See, e.g., Roadmaster Indus., Inc. v. Columbia Mfg. Co.*, 893 F.Supp. 1162, 1173 (D.Mass.1995) (collecting cases). In light of this rule, the plaintiffs insist that the laws of Massachusetts should apply to all counts in this action, including the breach of fiduciary claims. The defendants counter that the enforceability of the provision is not at issue here. Rather, they contend that the choice of law provision relates solely to the construction, validity and effect of the underlying Agreement, but not to other aspects of the relationship between the parties. According to the defendants, plaintiffs' fiduciary duty claims sound in tort and, therefore, are not encompassed by this provision.

Even assuming, *arguendo,* that the plaintiffs' claim for breach of fiduciary duty sounds in tort, the Court concludes that it is encompassed by the choice of law provision of the underlying Agreement. [FN4] *See, e.g., Kirley v. Kirley,* 521 N.E.2d 1041, 1043 (Mass.App.Ct.1988) (noting the common law trend "that a breach of fiduciary duty is a tort"), *cert. denied,* 524 N.E.2d 400 (1988). "Whether tort claims are to be governed by forum selection provisions depends upon the intention of the parties reflected in the wording of particular clauses and the facts of each case." *Terra Int'l, Inc. v. Mississippi Chem. Corp.,* 119 F.3d 688, 693 (8th Cir.1997) (quotations omitted), *cert. denied,* 522 U.S. 1029 (1997). Moreover, the federal common law, as articulated by the Court of Appeals for the First Circuit, holds that "contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties." [FN5] *Lambert v. Kysar,* 983 F.2d 1110, 1121-22 (1st Cir.1993). Similarly, it has been held that a choice of law provision should apply to non-contract claims where the basic source of any duty owed by defendants to the plaintiff is derived from the contractual relationship structured by the underlying agreement. *See Banco Popular de Puerto Rico v. Airborne Group PLC,* 882 F.Supp. 1212, 1217 (D.P.R.1995) (interpreting federal law) (citing *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,* 709 F.2d 190, 203 (3d Cir.1983), *cert. denied,* 464 U.S. 938 (1983), *rev'd on other grounds, Lauro Lines v. Chasser,* 490 U.S. 495 (1989)).

> FN4. Even if this Court were to conclude that the claim for breach of fiduciary duty sounds in tort, it would not upset the Court's prior finding, *see supra* at 23 n. 2, that the twenty-year limitations period applies to that claim. *See Barber v. Fox,* 632 N.E.2d 1246, 1249 (Mass.App.Ct.1994) (applying the contract statute of limitations period to, inter alia, a breach of fiduciary duty claim sounding in tort).

> FN5. Because the underlying clause

Case 1:04-cv-11380-WGY    Document 98-6    Filed 05/30/2006    Page 10 of 13

Not Reported in F.Supp.2d                                                                                                Page 10
Not Reported in F.Supp.2d, 2002 WL 1067449 (D.Mass.), 28 Employee Benefits Cas. 2164
**(Cite as: 2002 WL 1067449 (D.Mass.))**

identifies Massachusetts law as controlling, the Massachusetts courts would generally look to Massachusetts law to ascertain the breadth of the forum selection clause. *See Jacobson v. Mailboxes Etc. U.S.A., Inc.,* 646 N.E .2d 741, 743-44 (Mass.1995). However, neither party identifies any Massachusetts cases interpreting the scope of such a clause, and the Court's independent research has identified no cases directly on point. *Compare LaBoeuf v. Bigliazzi,* No 000048B, 2001 WL 881469, at *7 (Mass.Super.Ct. Apr. 10, 2001) (holding that where plaintiff's claim concerns the validity of formation of contract rather than an alleged breach, it does not involve rights and obligations under the contract, and thus forum selection clause does not control). Accordingly, the Court will rely on *Lambert,* interpreting the federal common law, as persuasive authority. *See Jacobson,* 646 N.E.2d at 743 (relying on federal common law regarding enforceability of forum selection clauses).

*13 In this case, the Court concludes that the choice of law provision of the underlying Agreement should be applied to the instant fiduciary duty claim. In their complaint, the plaintiffs allege that the defendants "owed to [the plaintiffs] and each participant in the plan *a fiduciary duty in connection with [the d]efendants' performance of their obligations under the Agreement."* Complaint, at ¶ 76 (emphasis added). Thus, the source of the duty which the defendants allegedly owed to the plaintiffs is derived from the contractual relationship articulated in the Agreement. *See Coastal Steel Corp.,* 709 F.2d at 203. In addition, it is clear that the fiduciary claim involves the same operative facts as do the parallel claims for breach of contract. *See Lambert,* 983 F.2d at 1121-22. Finally, this Court is persuaded by the reasoning of the Supreme Court of California in *Nedlloyd Lines B.V. v. Superior Court,* 834 P.2d 1148, 1155 (Cal.1992) (finding claim for breach of fiduciary duty to be within intended scope of forum selection clause which stated: "This agreement shall be governed by and construed in accordance with Hong Kong law....") There, the court reasoned that sophisticated business parties would attempt "to provide by contract for an efficient and businesslike resolution of possible business disputes," and therefore would not intend "that the laws of multiple jurisdictions would apply to a single controversy having its origin in a single, contract-based relationship." *Id.* at 1154. For these reasons, the Court concludes that the choice of law provision controls, and that Massachusetts law governs the fiduciary duty claim.

ii. Elements of Fiduciary Relationship

Next, the defendants argue that no fiduciary relationship exists in this case because the plaintiffs were sophisticated businessmen who were capable of protecting their own interests in their dealings with MassMutual. Thus, according to the defendants, determining whether McAdams or any of the plaintiffs established a fiduciary relationship with MassMutual, will require individualized findings of fact which render this action unsuitable for class certification. The plaintiffs counter that they intend to prove the existence of a fiduciary relationship based upon the defendants' common administration of the Plan.

Under Massachusetts law, "[a] fiduciary relationship occurs when one party reposes, to the other's knowledge, trust and confidence under circumstances in which the other's failure to make disclosure would be inequitable." *Compagnie de Reassurance d'ile de France v. New England Reinsurance Corp.,* 944 F.Supp. 986, 995 (D.Mass.1996). In general, "fiduciary obligations inhere where one party has a voice in the management of the affairs of another...." *KBQ, Inc. v. E.I. DuPont de Nemours & Co.,* 6 F.Supp.2d 94, 100 (D.Mass.1998). However, a fiduciary relationship does not arise simply because the plaintiff has reposed trust and confidence in a defendant. "Rather, the catalyst which transforms an ordinary business relationship into a fiduciary one is defendant's knowledge of the plaintiff's reliance upon him." *Compagnie de Reassurance,* 944 F.Supp. at 995.

*14 It is by now well established that "[t]he question of whether, in a particular setting, a fiduciary relationship exists is a question of fact." *Indus. Gen. Corp. v. Sequoia Pac. Sys. Corp.,* 44 F.3d 40, 44 (1st Cir.1995). Among the facts, or factors, frequently considered by Massachusetts courts in determining whether a fiduciary relationship exists is whether the party alleging a fiduciary duty "is ... in a position of great disparity or inequality relative to the other party." *Id.* (noting that Massachusetts courts "consider the relation of the parties, the plaintiff's business capacity contrasted with that of the defendant ..."); *see Lewis v. Dime Sav. Bank,* No. Civ. A. 92-4188-F, 1996 WL 754903, at *4 (Mass.Super.Ct. Dec. 27, 1996) (finding that no fiduciary relationship exists between lender and

Case 1:04-cv-11380-WGY    Document 98-6    Filed 05/30/2006    Page 11 of 13

Not Reported in F.Supp.2d                                                                                                         Page 11
Not Reported in F.Supp.2d, 2002 WL 1067449 (D.Mass.), 28 Employee Benefits Cas. 2164
**(Cite as: 2002 WL 1067449 (D.Mass.))**

borrower where latter "was a CPA and an experienced purchaser of real estate for personal and investment purposes."). *But see Compagnie de Reassurance,* 944 F.Supp. at 996 n. 12 (holding that fiduciary relationship existed between reinsured and reinsurer, and observing, "[i]t is irrelevant that ... the parties here were of equal power and highly knowledgeable.") Of particular significance to this case, the Supreme Judicial Court recently held that the plaintiff's "lack of business acumen may be an important consideration" in ascertaining whether a fiduciary relation exists between a stockbroker and customer who entrusts the broker with discretion to manage his investments. *Patsos v. First Albany Corp.,* 741 N.E.2d 841, 850-51 (Mass.2001).

Here, the Court concludes that an individualized determination of the plaintiffs' allegations of a fiduciary duty will be required, rendering the certification of a class inappropriate. In its Memorandum and Order issued December 13, 2000, this Court stated that the plaintiffs' allegations were sufficient to support the existence of a fiduciary relationship because "the defendants maintained the dominant voice in the management of the [plaintiffs'] deferred compensation incomes." *McAdams v. MassMutual Life Ins. Co.,* Civ. A. No. 99-30284-FHF, slip op. at 13 (D.Mass. Dec. 13, 2000). Under the holding of *Patsos,* the plaintiffs' investment acumen may be an "important consideration" in divining whether the defendants assumed general fiduciary obligations. *See Patsos,* 741 N.E.2d at 850. As the defendants point out, the discovery record in this case is replete with evidence of the plaintiffs' specialized training and education, business expertise and success, and specialized knowledge about the Plan. *See* Defendants' Memorandum at 25-26, 31- 32. This evidence is, as the defendants argue, unique to each plaintiff. "Thus, in proving the existence of a fiduciary relationship, each class member will have to prove that he or she 'reposed confidence' in [the defendant], rather than treated his or her transaction as merely an arm's-length dealing between two actors in the marketplace. Proving the existence of such a relationship on a plaintiff-by-plaintiff basis likely would predominate over the resolution of any issues common to the class." *Mulligan,* 1998 WL 544431, at *9 (quotation omitted).

## IV. CONCLUSION

*15 Accordingly, the plaintiffs' motion to certify a class is DENIED.

It is So Ordered.

Not Reported in F.Supp.2d, 2002 WL 1067449 (D.Mass.), 28 Employee Benefits Cas. 2164

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

LEXSEE 1996 U.S. DIST. LEXIS 5512

**RUSSELL M. SWODY, ET AL. versus HARRAH'S NEW ORLEANS MANAGEMENT COMPANY, INC., ET AL.**

CIVIL ACTION NO. 95-4118 c/w 96-0215 SECTION "J"

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA

*1996 U.S. Dist. LEXIS 5512*

**April 22, 1996, Decided**
**April 23, 1996, FILED; April 24, 1996, ENTERED**

**COUNSEL:** [*1] For RUSSELL M SWODY, KAREN ZASTROW, WILLIAM COTTER, plaintiffs: Andrew Phelps Burnside, Norman A. Mott, III, Lloyd Noble Shields, Shields, Mott, et al, New Orleans, LA.

For HARRAH'S NEW ORLEANS MANAGEMENT COMPANY, HARRAH'S ENTERTAINMENT INC., defendants: Daniel Lund, Richard Edward McCormack, Robert Ellsworth Durgin, Montgomery, Barnett, et al, New Orleans, LA. Nancy Scheurwater Hunter, Kristine M. Johnson, Latham & Watkins, Chicago, IL.

**JUDGES:** Patrick E. Carr, UNITED STATES DISTRICT JUDGE

**OPINIONBY:** Patrick E. Carr

**OPINION:**

### ORDER AND REASONS

In these consolidated class actions, plaintiffs move for class certification and for designation of a trial attorney. n1 The matter has been determined without a hearing.

> n1 Both sets of plaintiffs in these consolidated cases filed motions for class certification. The plaintiffs in number 95-4118 withdrew their motion in favor of the motion in 96-215 and joined a motion to name the lead counsel in 96-215 as trial counsel.

> n2 Worker Adjustment and Retraining Notification Act, *29 U.S.C. § 2101* et. seq.

Plaintiffs are former employees of a failed gambling business which involved operations at five locations in New Orleans. Defendants are related entities, allegedly employers, involved in that business. It is alleged that defendants laid off more than 500 employees in August, 1995, and more than 2,500 in November, 1995, and thus engaged in mass layoffs and/or plant closings, and failed to give the 60-days [*2] notice required by the WARN Act n2. It is further alleged that following the November layoffs defendants failed to pay severance benefits in violation of ERISA. n3

> n3 Employee Retirement Income Security Act, *29 U.S.C. § 1001* et seq.

Class actions and class certification are governed by *Fed.R.Civ.P. Rule 23*. Defendants' opposition to certification is based on the merits of the case, but they do not suggest that plaintiffs and the lawsuits do not otherwise satisfy the Rule 23 requirements. In determining the propriety of class certification, the issue is not whether plaintiffs have stated a cause of action or will prevail on the merits, but whether the requirements of Rule 23 are met. n4 Accepting the allegations of the complaint as true, n5 and considering the submissions regarding plaintiffs and counsel, the Court finds that class certification is appropriate.

> n4 *Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178, 94 S. Ct. 2140, 2152-2153, 40 L. Ed. 2d 732 (1974).*

[*3]

n5 *Blackie v. Barrack, 524 F.2d 891, 900-01 (9th Cir.1975).*

This class and the representative plaintiffs satisfy the numerosity, commonality, typicality and representation requirements of Rule 23(a), and the action may be maintained as a class action pursuant to Rule 23(b). The prosecution of separate actions by individual plaintiffs might produce inconsistent results, or results which would dispose of or impede the interests of non-party class members; and common questions of law and fact predominate over any questions affecting only individual class members.

Plaintiffs' motion for class certification is GRANTED, and the Court will conditionally certify one class in these consolidated actions, with three subclasses. Rule 23(c)(1), (4).

IT IS ORDERED that this matter shall be maintained as one class action, consolidated for all purposes, and that the class of plaintiffs is defined as all affected employees who fall within one of the three subclasses, which are:

(1) Affected employees who experienced employment losses because of a plant closing or a mass layoff in August, 1995, for which [*4] 60-days prior written notice was not provided to a representative of the employee or to the employee;

(2) Affected employees who experienced employment losses because of a plant closing or a mass layoff in November, 1995, for which 60-days prior written notice was not provided to a representative of the employee or to the employee;

(3) Employees within the second subclass who did not receive severance benefits.

IT IS FURTHER ORDERED that all counsel in the consolidated cases are co-counsel for the class and that William Lurye is to be listed as trial attorney.

IT IS FURTHER ORDERED that plaintiffs' counsel submit to the Court no later than May 3, 1996, for the Court's approval, a proposed notice to the members of the class pursuant to Rule 23.

New Orleans, Louisiana, this 22nd day of April, 1996.

Patrick E. Carr

UNITED STATES DISTRICT JUDGE