IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KERI EVANS, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>JOHN F. AKERS, et al. )<br>)<br>    Defendants. )<br>_____) | |
| LAWRENCE W. BUNCH, et al. )<br>)<br>)<br>    Plaintiffs, )<br>)<br>v. )<br>)<br>W. R. GRACE & CO., et al. )<br>)<br>    Defendants. )<br>_____) | Consolidated<br>Case No. 04-11380-WGY |

**BUNCH PLAINTIFFS' AMENDED CONSOLIDATED REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF THEIR
MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................ii

I. INTRODUCTION AND SUMMARY OF ARGUMENT........................................1

II. ARGUMENT................................................................................................................4

    A. Bunch Plaintiffs' Choice of Class Period is Entitled to Deference at the Class Certification Stage................................................................................4

    B. The Prerequisite for Rule 23 Class Certification are Satisfied........................5

        1. Plaintiffs Satisfy the Form Requirements of Rule 23(a) .......................5

            a. The Class is So Numerous and Geographically Diverse that Joinder is Impracticable............................................5

            b. The Claims of the Class Involve Common Issues of Law and Fact and are Typical of the Claims of Absent Class Members ................................................................6

            c. Bunch Plaintiffs' Proposed Class Representatives Are Adequately Aligned with the Interests of the Class as a Whole and Will Adequately Protect the Interests of the Class...................................................................................8

        2. Bunch Plaintiffs' Claims Satisfy Rule 23(b).........................................9

III. CONCLUSION..........................................................................................................11

# TABLE OF AUTHORITIES

## CASES

Page(s)

*In re Blech Sec. Litig.*,
    187 F.R.D. 97 (S.D.N.Y. 1999) ........................................................................... 4

*In re AMF Bowling Sec. Litig.*,
    No. 99 Civ. 3023 (DC), 2002 WL 1033826 (S.D.N.Y. May 21, 2002) ............. 4

*Sirota v. Solitran Devices, Inc.*, 673 F.2d 566 (2d Cir. 1982) ............................... 4

*Adair v. Johnston*, 221 F.R.D. 573 (M.D. Ala. 2004) .......................................... 6

*Biben v. Card*, No. 84-0844-CV-W-6, 1986 WL 1199 (W.D. Mo., Jan. 6, 1986) ............. 6

*Krangel v. Golden Rule Resources, Ltd.*, 194 F.R.D. 501 (E.D. Pa 2000) ............ 6, 8, 11

*General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147 (1982) ........................... 7

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283
    (3rd Cir. 1998) .............................................................................................. 8, 11

*In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000) ...... 8

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) .............................................. 11

## RULES

Fed. R. Civ. P. 23 .................................................................................................. 5

Fed. R. Civ. P. 23(a) ............................................................................................. 5

Fed. R. Civ. P. 23(b) ............................................................................................. 9

Fed. R. Civ. P. 23(b)(1) ........................................................................................ 9

Fed. R. Civ. P. 23(b)(1)(A) ................................................................................... 9

Fed. R. Civ. P. 23(b)(1)(B) ................................................................................. 10

Fed. R. Civ. P. 23(b)(2) ...................................................................................... 10

# TABLE OF AUTHORITIES
(continued)

Fed. R. Civ. P. 23(b)(3) ............................................................................................................. 10

Fed. R. Civ. P. 23(b)(4) ............................................................................................................... 8

Fed. R. Civ. P. 23 Comments (1966) ......................................................................................... 10

## TREATISES

1 Newberg on Class Actions, ¶ 3.06 (Second Edition 1985) ....................................................... 6

## I. Introduction and Summary of Argument

Plaintiffs bring this action to protect their interests in their retirement plan and to prevent Defendants W.R. Grace & Co. ("Grace") and its appointed agent State Street Bank & Trust Company ("State Street") from benefiting through a course of self-dealing. State Street, with the implicit if not explicit approval of Grace, used its power as a fiduciary to strip the Grace retirement plan of its Grace stock portfolio. State Street, after assuming control of the Plan, used its delegated authority to dump over 8 million shares of the Plan's holdings in Grace.

Shortly after the sale, State Street used the stock's artificially depressed price as a buying opportunity. Despite claiming that Grace represented a risky and unwise investment, State Street jumped at the chance to profit and purchased large blocks of Grace stock for its benefit and for the benefit of its other clients and customers.

Without question, Defendants, in violation of their statutory ERISA fiduciary duties and responsibilities, participated in an unlawful scheme. Grace, by allowing State Street to divest the retirement plan of a productive and meaningful resource, jeopardized the very purpose of the Plan[1] "to share in the Company's performance through ownership of the Company's common stock". State Street magnified the indignity by benefiting directly from cannibalization of the Plan.

Congress, when it enacted ERISA, intended to provide a remedy to victimized Plan members. Here, Grace and State Street used their positions of power to injure all Plan participants by decreasing the value of the Plan and by benefiting at the expense of all Plan

---

[1] W. R. Grace & Co. Employees Savings and Investment Plan Prospectus ("Plan"), at 2, attached as Exhibit A.

> The purchase of the Plan is to encourage eligible employees to obtain additional financial security, to supplement retirement income through savings on a regular, long-term basis and **to share in the Company's performance through ownership of the Company's Common Stock** . . . (emphasis added)

1

members. This is the precise type of injury that Congress intended ERISA to rectify, and this is the precise type of claim that Class Certification will advance in an economic and efficient manner.

### *Plaintiffs' theory of the case has remained clear and constant*

Defendants, and in particular, State Street, complain that they do not understand Plaintiffs' claims. State Street alleges that Plaintiffs deliberately have refused "to define their claims."[2] This statement defies logic and the record. Indeed, Defendants understood the complaint sufficiently to challenge the sufficiency of Plaintiffs' claims, and they unsuccessfully moved to dismiss the complaint:

> . . .the Court rules that the SEC filings submitted by the Bunch Plaintiffs, see Pl.'s Mem. in Opp'n to State Street's Mot. to Dismiss [Doc. No. 68], Exs. 2-6, establish a genuine issue of material fact as to whether State Street, in its capacity as investment manager for the Grace Stock Fund, breached its fiduciary duty by re-purchasing shares of W. R. Grace & Co. Stock after initiating a divestment of that same stock from the Grace Stock Fund . . .[3]

Despite Defendants' "confusion", Defendants answered Plaintiffs' complaint. Additionally, Defendants could have moved for a more definite statement. Yet, Defendants did not file the motion. Instead, Defendants rely on their "confusion" as a basis to deny the parties, and the court case management benefits inherent in class certification.

Without question, the Bunch Plaintiffs always have articulated their claims as follows:

> State Street, as the agent of W.R. Grace & Co. and as a fiduciary, along with W.R. Grace & Co., to the W. R. Grace & Co. Employees Savings and Investment Plan, breached its ERISA-mandated fiduciary duties in several distinct areas:

---

[2] Defendant State Street's Memorandum in Opposition ("Memo. in Opp.") filed May 30, 2006, at 6.
[3] Memorandum and Order, dated April 5, 2006, Doc. 83. The Court properly converted the motion to a motion for summary judgment because Defendants attached and relied on materials outside of the pleadings to the Motion.

2

- First, in violation of the Plan's stated investment objective State Street with the support of Grace liquidated all of the Grace Stock within the Plan after State Street determined the stock was an "imprudent" investment.

- Second, State Street immediately after liquidating the Plan's Grace holdings began to purchase a large quantity of Grace stock for itself, its clients and/or its investors. State Street made the purchases knowing that Grace stock represented an attractive investment opportunity. Indeed, the value of the Grace stock increased nearly 300% in less than 120 days following the mandatory divestment from the employees and participants of the Plan.

The following chart that tracks the price of Grace stock demonstrates how State Street benefited by selling and repurchasing Grace shares.



Certainly, the undisputed facts support Plaintiffs' theory that Defendants engaged in dishonest behavior. A review of State Street's representations to the Securities and Exchange Commission ("SEC") demonstrates that State Street benefited when it sold and repurchased Grace stock. State Street's initial SEC filing[4] reveals that State Street increased its holdings of Grace by over eight million shares *after* State Street liquidated the Plan of Grace holdings and after State Street restricted the Plan from further investing in the Grace Stock Fund. State Street's curiously amended SEC filing[5], after Plaintiffs initiated this action, also demonstrates that State Street continued to purchase Grace stock after State Street sold the Plan's Grace holdings. Even the confusing amended filing acknowledges that State Street purchased almost 200,000 shares. Under either scenario, State Street purchased and/or held Grace stock in direct violation of ERISA's anti-inurement and self-dealing provisions.

## II. Argument

### A. Bunch Plaintiffs' Choice of Class Period Is Entitled To Deference at the Class Certification Stage

At the class certification stage, the Court "must accept plaintiffs' allegations as true," *In re Blech Sec. Litig.*, 187 F.R.D. 97, 100 (S.D.N.Y. 1999), and may not "resolve substantial issues of fact going to the merits when deciding the scope or time limits of the class." *In re AMF Bowling Sec. Litig.*, No. 99 Civ. 3023 (DC), 2002 WL 1033826, at *1 (S.D.N.Y. May 21, 2002), quoting *Sirota v. Solitran Devices, Inc.*, 673 F.2d 566, 572 (2d Cir. 1982).

Although Defendants possess the documents and information necessary to determine and identify Plan participants, Plaintiffs are willing and eager to work with the Court and Defendants

---

[4] State Streets' 13Fs for the first two quarters of 2004 represented that it purchased 8,241,283 shares of Grace stock, attached as Exhibit A to Plaintiffs' Motion for Class Certification.

[5] The Amended 13F of State Street represented that for the same two quarters, it purchased 188,278 shares of Grace stock, attached as Exhibit B to Plaintiffs' Motion for Class Certification.

to define the class with the necessary parameters to reflect the scope of Defendants' conduct. Thus, notwithstanding the deference afforded to Plaintiffs' claims at this juncture, the Bunch Plaintiffs are willing to revise their definition to clarify the proposed participants. While this Court could accept the class as defined by Plaintiffs in their complaint subject to later modification, Plaintiffs will amend their proposed definition and seek certification of the following Revised Class:

> All W. R. Grace Stock Plan participants and entities who owned shares of W. R. Grace's publicly traded common stock through the Grace Stock Plan at any time from April 14, 2003 through April 30, 2004 ("Class Period"). Excluded from the Class are those individuals identified as Defendants and members of their immediately families, their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest during the Class Period.

This amended definition certainly avoids the objections raised by Grace in its opposition to class certification and most of the objections that State Street raised. This class definition modification, therefore, demonstrates that the Court should grant Plaintiffs' motion for class certification.

**B.    The Prerequisite For Rule 23 Class Certification Are Satisfied**

    **1.    Plaintiffs Satisfy The Form Requirements of Rule 23(a)**

        **a.    The Class Is So Numerous And Geographically Diverse That Joinder Is Impracticable**

The revised class period includes only Plan participants who held Grace Stock, as a Plan participant, at the time State Street and Grace undertook the wholesale divesture of the stock on February 27, 2004 through the completion of the divesture on April 30, 2004. Accordingly, parties and the Court can determine the size of the class. Indeed, Defendants readily must admit that they possess the names and addresses of the Plan participants as of

5

February 27, 2004. Plaintiffs, therefore, easily satisfy the requirement that a class must be "adequately defined and clearly ascertainable".[6]

Although common sense dictates that the size of the class is large, Plaintiffs can meet the standard for numerousity by establishing that Defendants sold a large number of Grace shares during the class period. Courts have long recognized that the number of shares sold during the class period constitutes an accepted indicia of numerousity in cases involving class certification in securities fraud litigation.[7] Similarly courts recognize that geographical diversity of the purchasers of the stock supports class certification.[8] In the *Krangel* securities action[9], the parties agreed that at least 1.8 million shares were sold during the class period and, as such, the court found that plaintiffs easily satisfied the numerosity requirement.

Here, Plaintiffs have demonstrated that Grace and State Street sold in excess of 8 million shares of Grace stock during the class period. The magnitude of the shares sold is prima facie evidence of numerosity. Of course, Defendants cannot, in good faith, argue that the class definition fails to include several hundred, if not several thousand, geographically diverse class members.

        **b.    The Claims Of The Class Involve Common Issues Of Law And Fact And Are Typical Of The Claims Of Absent Class Members**

This matter is the prototypical action that involves common and typical claims. Defendants do not assert, nor could they assert, that Defendants treated any member of the class different from the manner that Defendants treated any other class member. Defendants sold the Plan's holdings in Grace without regard to the class member's individual characteristics. Indeed,

---

[6] *Adair v. Johnston*, 221 F.R.D. 573, 577 (M.D. Ala. 2004).
[7] *Biben v. Card*, No. 84-0844-CV-W-6, 1986 WL 1199, at *3 (W.D. Mo., Jan. 6, 1986)(Attached as Exhibit B)
[8] 1 Newberg on Class Action, ¶ 3.06 at 144-45 ("[A] plaintiff or defendant with a small but geographically diverse class may meet the requirement of Rule 23(a)(1), whereas a centrally located class of similar size might not").
[9] *Krangel v. Golden Rule Resources, Ltd.*, 194 F.R.D. 501, 506 (E.D. Pa. 2000).

6

all members of the class possessed an interest in the Plan's assets. Defendants, moreover, owed an identical fiduciary duty to each class member.

The court, if it applies the standard advocated by State Street to determine commonality, necessarily must find that Plaintiffs meet the commonality requirement. State Street cites as the basic premise for commonality the *Falcon* case in which the Supreme Court observed:

> Class relief is "peculiarly appropriate" when the "issues involved are common to the class as a whole" and when they "turn on questions of law applicable in the same manner to each member of the class."[10]

The common issues before the court inevitably satisfy the *Falcon* standard. In this case, the common issues will focus on whether Defendants are fiduciaries, whether Defendants breached their fiduciary duties by selling and subsequently "repurchasing" Grace stock, and whether Defendants unlawfully benefited from their self-dealing. Each of these matters will involve an analysis and review of Defendants' conduct and will not require the parties to delve into the role and responsibility of class members. Indeed, the class members, by the very nature of being participants in a retirement plan, were passive and did not participate in the decision to buy or sell Grace stock.

The claims of the named Plaintiffs and class representatives clearly are typical of the claims of the class. Plaintiffs, thus, easily satisfy the typicality requirement since their claims arise from the same practice or course of conduct and are based on the same legal theory. Indeed, class treatment is superior because each legal claim made by Plaintiffs mirrors the legal claims each class member has against the Defendants. Here, Plaintiffs' claims involve specific actions taken by Defendants that affect the entire class. Additionally, the legal theories and the facts that the class representatives will advance are identical to the legal theories and facts that the absent class members will use if

---

[10] State Street's Memo. in Opp. at 11, citing *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982).

7

they are required to advance individually their claims. Plaintiffs' claims, therefore, are typical of the class they seek to represent and, by advancing their own interests, they will advance the interests of the class.

### c. Bunch Plaintiffs' Proposed Class Representatives Are Adequately Aligned With The Interests Of The Class As A Whole And Will Adequately Protect The Interests Of The Class.

Each of the proposed class representatives is a current and/or recently retired employee of W. R. Grace. Each class representative participated in the Grace Stock Plan. Additionally, each proposed class representative lost substantial retirement benefits when State Street and Grace emptied the Grace portfolio from of the Plan's assets during the first half of 2004.

The class representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(b)(4). Courts have found that the requirement is not "if the interests of the representative Plaintiffs are not antagonistic to the interests of the proposed class and if the representative Plaintiffs have retained competent counsel."[11] State Street has failed to raise any concerns as to the competency of counsel and has made no inquiry into the appropriateness of the proposed class representatives.

To date, the record confirms that the class representatives have been willing and eager to perform their respective duties and obligations. State Street's counsel noticed each of the three class representatives for their depositions on May 16, 2006. The class representatives made the necessary arrangements to appear at the deposition. Suddenly, and without an explanation, State Street cancelled all three depositions.

---

[11] *Krangel*, at 506, citing *In re Prudential*, 148 F.3d 283 at 312; *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 176-177 (E.D. Pa. 2000)

8

The class representatives also made the effort to answer discovery. Again, however, State Street withdrew its initial set of interrogatories and request for production of documents propounded to Plaintiffs. Following State Street's withdrawal of written discovery and cancellation of the noticed depositions, Plaintiffs' counsel inquired as to State Street's willingness to stipulate to the appropriateness of the proposed class representatives to serve as such in this case. Without explanation, State Street responded by stating "we cannot stipulate to the three named individuals serving as class representatives in this action, nor can we stipulate to the class period set forth in your Complaint." With State Street's apparent lack of interest in developing any foundation for its position that the class representatives are inappropriate, and in recognition of the class representatives' appropriateness to serve, Plaintiffs submit that State Street is hard pressed to claim there are inherent "fatal conflicts of interest".[12]

### 2.  Bunch Plaintiffs' Claims Satisfy Rule 23(b).

Plaintiffs seek certification based on each of the provisions of Rule 23(b). Grace in its opposition did not challenge the appropriateness of applying 23(b) and finding that Plaintiffs satisfied the necessary elements for certification. State Street, in passing, challenges 23(b) by claiming that inconsistent adjudications will not exist, that declaratory or injunctive relief that affects the class as a whole does not exist and that common issues do not predominate. State Street is wrong.

Rule 23(b)(1) certification is appropriate when individual actions likely could affect individual members of the class. In their first brief, Plaintiffs discussed why 23(b)(1) certification is appropriate. State Street chooses to ignore the analysis.

The official comments to Rule 23(b)(1)(A) certainly demonstrate that certification is appropriate. In this case, the litigation involves a collective asset: the Pension Plan. In

---

[12] Defendant State Street's Memo. in Opp., at 13.

9

circumstances involving a collective asset, the official commentators to the Federal Rules of Civil Procedure concluded, "Actions by...a class provide a ready and fair means of achieving unitary adjudication.[13]

Similarly, the official comments to Rule 23(b)(1)(B) demonstrate that certification is appropriate in cases, such as this case, where the class is claiming that defendants breached a collective fiduciary duty. The comments clearly provide that a breach of trust by a fiduciary is an action that qualifies for 23(b)(1)(B) certification.[14]

Each of the cases that Plaintiffs cited in its preliminary brief that State Street references does, in fact, support certification.[15] Although the cited cases involved the purchase of an investment instead of a sale of an investment, the cited cases stand for the proposition that self-dealing and breach of fiduciary duty in connection with an ERISA Plan investment satisfies the necessary elements for 23(b)(1)(B) certification. Indeed, the selling of a security or the purchase of a security is a difference without a distinction. In each case, the fiduciary is performing a role as an investment advisor, and the law does not distinguish between self-dealing as a purchaser and self-dealing as a seller of an investment.

Rule 23(b)(2) certification is appropriate where Plaintiffs are seeking a declaratory judgment. In this case, Plaintiffs certainly are seeking a finding that declares that Defendants violated their fiduciary duties by engaging in a corrupt scheme to benefit themselves at the expense of all members of the class.

Finally, State Street claims that Rule 23(b)(3) does not apply because common questions of law and fact do not predominate. State Street's lack of a serious discussion on this point establishes that the argument is without merit. Here, every issue is a common and predominant

---

[13] See 1966 Comments to Rule 23 of the Federal Rules of Civil Procedure.
[14] See 1966 Comments to Rule 23 of the Federal Rules of Civil Procedure.
[15] See Defendant State Street's Memo. in Opp., at 14.

issue. Indeed, Plaintiffs are challenging a course of conduct that similarly affected each member of the class. The outcome of the common issues will decide the outcome of the litigation.

In analogous securities litigation, courts recognize that the existence of a common course of conduct necessarily results in predominant common issues. For example, one court has held that "the predominance test is readily met in most securities fraud actions."[16] Another court recognized that common questions of law or fact often predominate in securities actions when it stated:

> Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken common sense approach that the class is united by a common interest in determine whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit.[17]

### III.    Conclusion.

For the foregoing reasons, the Bunch Plaintiffs respectfully request that this Court enter an Order:

(1)    that this action be maintained as a class action pursuant to the Federal Rules of Civil Procedure 23;

(2)    certifying the Plaintiffs' Class as defined herein;

(3)    certifying the Movants as the representatives of the Class; and

(4)    appointing Bunch Plaintiffs' Counsel as Class Counsel.

---

[16] *Krangel*, at 506, citing *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 314 (3rd Cir. 1998)
[17] *Krangel*, at 506, citing *Blackie v. Barrack*, 524 F2d 891, 902 (9th Cir. 1975).

11

Respectfully submitted,

BERMAN DEVALERIO PEASE TABACCO
BURT & PUCILLO

/s/ *Jeffrey C. Block*
Jeffrey C. Block
One Liberty Square
Boston, Massachusetts 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194
Email: jblock@bermanesq.com


WAITE, SCHNEIDER, BAYLESS
 & CHESLEY CO., L.P.A.

/s/ *Jane H. Walker*
James R. Cummins
Jane H. Walker
1513 Fourth & Vine Tower
One West Fourth Street
Cincinnati, Ohio 45202
Telephone: (513) 621-0267
Facsimile: (513) 381-2375
E-mail  jcummins@wsbclaw.com
E-mail: janehwalker@wsbclaw.com


*Counsel for Lawrence W. Bunch, Jerry L. Howard, Sr. and David Mueller, Both Individually and Behalf of All Others Similarly Situated*

Dated: June 9, 2006

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 9, 2006, I filed Bunch Plaintiffs' Amended Consolidated Reply Memorandum in Support of Motion for Class Certification through the ECF system. It was sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies were sent to those indicated as non-registered participants on June 9, 2006.

*/s/ Jane H. Walker*
Jane H. Walker