# EXHIBIT A



## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Evans et al., ) | |
|       Plaintiffs, ) | **Cases Consolidated As:** |
| v. ) | **1:04-cv-11380-WGY** |
| Akers et al., ) | |
|       Defendants. ) | |
| Bunch et al., ) | |
|       Plaintiffs, ) | |
| v. ) | |
| W.R. Grace & Co. et al., ) | |
|       Defendants. ) | |

### EVANS PLAINTIFFS' FIRST REQUEST FOR
### PRODUCTION OF DOCUMENTS TO DEFENDANTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure and Local Rule 34.1 of this Court , Plaintiffs Keri Evans and Timothy Whipps ("Evans Plaintiffs"), propound this First Request for Production of Documents upon all Defendants in the *Evans et al. v. Akers et al.* ERISA 401(k) action.  Defendants shall produce all responsive documents and materials for inspection and copying within forty-five days following receipt hereof.

**I.**    **Definitions**

In the event of any conflict or ambiguity between the following definitions, common usage and reference to any cited rules, statutes, or regulations should be used to provide the broadest interpretation of the term in question.

1.    "Administrative Committee" refers to W.R. Grace & Co. Administrative Committee, its individual members and its fiduciary delegates or agents.

2.    "Aon" means Aon Consulting, Inc., Aon Fiduciary Counselors, Inc. or any other branch of Aon Corporation.

3.    "Board" means the Board of Directors of W.R. Grace & Co., including its members.

4.    "Committees" refers to W.R. Grace & Co.'s Administrative Committee and Investment and Benefits Committee and/or similar governing entities (*i.e.* any committee whose members have discretionary authority or control with respect to management or administration of the Plan and/or disposition of Plan assets), and any of their fiduciary delegates collectively.

5.    "Communication" means any oral, written, or electronic utterance, notation, or statement of any nature whatsoever, draft or final, potential or actual, by and to whomever made or attempted to be made, including, but not limited to, correspondence, memoranda, conversations, dialogues, discussions, interviews, consultations, agreements, electronic messages (including electronic-mail, text messages, instant messages, and Company intranet, electronic bulletin board or Internet site posting) and other understandings between two or more Persons.

6.    "Company Contribution Fund" shall have the meaning ascribed to it in the Plan documents.

7.    "Company Stock Fund" refers to the "Grace Common Stock Fund" (as a Plan investment fund alternative) and/or the "Company Contribution Fund," (including the ESOP, if a different entity) and/or the "Grace Stock Fund" and/or all W.R. Grace & Co. securities (W.R. Grace & Co. stock, funds, bonds, etc.), individually and collectively.

2

8.     "Complaint" refers to the Evans Plaintiffs' First Amended Complaint for Violations of the Employee Retirement Income Security Act filed with the Court on December 19, 2005.

9.     "Concerning" means in any way referring to, describing, evidencing, generated or submitted in connection with, received or reviewed in connection with, or constituting.

10.    "Defendants" refers to all of the named defendants in the Evans case and their officers, directors, agents, members, representatives, and attorneys.

11.    "Document" means and includes the original (or, if the information called for cannot be provided as to the original, each and every copy, duplicate and reproduction) of any medium upon which information can be recorded or retrieved, which document is in your custody, possession or control, including, but not limited to, all handwritten, typed, printed, punched, coded, tape recorded, photographed, or otherwise reproduced, printed, recorded or graphic statements, physical objects, communications or other matter, including correspondence, electronic-mails ("e-mails"), text messages, instant electronic messages, letters, telegrams, telexes, TWX's, memoranda, notes, sound recordings, legal instruments, declarations, filings, drafts, plans, diagrams, pictures, circulars, announcements, manuals, brochures, publications, statistical records, desk calendars, appointment books, diaries, computer printouts, data processing program libraries, data processing input and output, computer memories, microfilm, accounts, journals, ledgers, bills, invoices, purchase orders, checks, receipts and the like, and each and every copy, duplicate draft, reproduction, prior draft, excerpt, note and summary of, or prepared from, any of the foregoing which is not identical to the original due to corrections, alterations, notations, initials, deletions, marginal markings, underscoring, conformation or indication of routing, known to you and each and every such document which can be located or

discovered by reasonable diligent efforts. "Document" includes information and data stored in electronic form.

12.     "Employee" means, without limitation, current and former officers, directors, executives, managers, supervisors, department heads, sales personnel, secretaries, clerical staff, messengers, agents, attorneys, representatives or any person acting or authorized to act on behalf of W.R. Grace & Co.

13.     "ERISA" means the Employee Retirement Income Security Act of 1974 and all relevant amendments and modifications thereto.

14.     "ESOP," for the purposes of these requests, refers to the portion of the Plan as described in the Plan documents as the "ESOP."

15.     "Evans Plaintiffs" refers to Keri Evans and Timothy Whipps.

16.     "Fiduciary" refers to any person who exercises, or has authority to exercise, discretion over plan administration, plan assets, or plan investments, who selects, appoints, evaluates, reviews and/or oversees such a person, or who gives investment advice for a fee or other compensation.

17.     "Grace Stock Fund" refers to the Grace Stock Fund as described above and in the Plan documents.

18.     "Individual Defendant" shall mean the following Defendants:  John F. Akers ("Akers"), Ronald C. Cambre ("Cambre"), Marye Anne Fox ("Fox"), John J. Murphy ("Murphy"), Paul J. Norris ("Norris"), Thomas A. Vanderslice ("Vanderslice"), H. Furlong Baldwin ("Baldwin"), Brenda Gottlieb ("Gottlieb"), W. Brian McGowan ("McGowan"), Michael Piergrossi ("Piergrossi"), Robert M. Tarola ("Tarola"), Eileen Walsh ("Walsh"), David

Nakashige ("Nakashige"), Elyse Napoli ("Napoli"), Martin Hunter ("Hunter"), and Ren Lapadario ("Lapadario"), collectively "Individual Defendants."

19.     "Investment Manager" shall have the meaning ascribed to it under ERISA § 3(38). Investment Manager includes, but is not limited to State Street, as defined below and Aon, as defined above.

20.     "Investment and Benefits Committee" refers to Defendant W.R. Grace & Co. Investment and Benefits Committee, its individual members and its fiduciary delegates or agents.

21.     "Meeting" means, without limitation, any assembly, convocation, encounter or contemporaneous presence of two or more persons for any purpose, whether planned, arranged, scheduled or not.

22.     "Named Plaintiffs" refers to Keri Evans and Timothy Whipps.

23.     "Participant" refers to any employee or former employee of W.R. Grace & Co. who is or may become entitled to receive a benefit of any type from the Plans, any person designated by a participant, or by the terms of the Plans, who is or may become entitled to a benefit under the Plans, as well as any employee who met the requirements of being a Plan participant during the relevant time period as defined in the operative Plan documents.

24.     "Person" means any natural person acting in any capacity and/or any entity or organization, including divisions, departments, and other units therein, and shall include, but not be limited to, a public or private corporation, partnership, association, joint venture, committee, proprietorship, trust, estate, any government and/or governmental body, including, but not limited to, any commission, board, bureau and/or agency.

25.     "Plan Trustee" refers to Fidelity Management Trust Company, including its officers, directors, agents, employees, representatives, attorneys or any person or entity acting or authorized to act on their behalf in exercising its fiduciary duties.

26.     "Plan" refers collectively to the W.R. Grace & Co. Savings and Investment Plan, the W.R. Grace & Co. Hourly Employees Savings and Investment Plan (the "Hourly Plan"), the W.R. Grace & Co. Salaried Employees Savings and Investment Plan (the "Salaried Plan") and any and all related/subsidiary plans and predecessors of these plans, in existence during the Relevant Time Period. Any reference to the "Plan" includes each Plan, as though separately listed.

27.     "Relating to" means concerning, pertaining to, relating to, regarding, referring to, describing, evidencing, constituting, reflecting, showing, comprising, considering, discussing, setting forth, studying, analyzing, commenting upon, recommending, alluding to, or mentioning, in whole or in part.

28.     "Relevant Time Period" means January 1, 1994 through the present, unless otherwise indicated in a specific request.

29.     "State Street" refers to State Street Bank and Trust Company and State Street Global Advisors, including their officers, directors, agents, employees, representatives, attorneys or any person or entity acting or authorized to act on their behalf in exercising their fiduciary duties.

30.     "W.R. Grace" or the "Company" refers to W.R. Grace & Co., including any parent companies, corporate predecessors, subsidiary companies, related companies, divisions, operating units, affiliates, agents, officers, directors, employees, or any other person or entity acting or purporting to act on behalf of W.R. Grace & Co.

6

31.    The pronouns "you" or "your" refer to the Defendants and their officers, directors, agents, employees, members, representatives, and attorneys.

## II.    Instructions

1.    In responding to these document requests, the connectives "and" and "or" shall be construed either in the disjunctive or the conjunctive, so as to bring within the scope of the discovery request the broadest range of documents.

2.    These document requests shall be deemed to be continuing, and to require you to supplement your response based upon any documents or other information of which you become aware after you serve your initial response to these requests.

3.    These document requests call for the production of all responsive documents in your possession, custody or control without regard to the physical location of such documents.  If any part of a document is responsive to any request, the whole document should be produced.

4.    In producing documents and other materials, you are requested to furnish all documents or things in your possession, custody or control, regardless of whether such documents or materials are possessed directly by you or your agents, representatives, or by your attorneys or their agents employees, representatives or investigators.

5.    Any alteration of a requested document, including any marginal notes, handwritten notes, underlining, date stamps, received stamps, endorsed or filed stamps, drafts, revisions, modifications and other versions of a final document. is a separate and distinct document and it should be produced.

6.    If you are unable to answer or respond fully to any document request, answer or respond to the extent possible and specify the reasons for your inability to answer or respond in full.

7.      If any document was, but is no longer, in your possession or subject to your control or in existence, state whether it: (a) is missing or lost; (b) has been destroyed; (c) has been transferred, voluntarily or involuntarily, to others; or (d) has otherwise been disposed of.  In each instance, explain the circumstances surrounding the document's disposition and state the date or approximate date thereof.

8.      If you object to any of the definitions or instructions, state your objection(s) in your response and indicate whether you are complying with the direction or instruction in spite of your objection.  If your objection goes to only part of a request, produce all documents which do not fall within the scope of your objection.

9.      The documents produced in response to each Request should be segregated and clearly marked or labeled as to the specific request to which such documents are responsive and are being produced.  Otherwise, such documents shall be produced as they are kept in the usual course of business, including a production of the files from which such documents are taken, along with all other documents residing in those files.

10.     Documents shall be produced in such fashion as to identify the department, branch or office in whose possession it was located and, where applicable, the natural Person in whose possession it was found and the business address of each document's custodian(s).

11.     Documents attached to each other should not be separated.

12.     Documents not otherwise responsive to this discovery request shall be produced if such documents mention, discuss, refer to or explain the documents which are called for by this discovery request, or if such documents are attached to documents called for by this discovery request and constitute routing slips, transmittal memoranda, letters, comments, evaluations or similar materials.

13.    If any document is withheld, in whole or in part, for any reason, including but not limited to, any claim of privilege, whether work-product or attorney-client, confidentiality or trade secret, set forth separately with respect to each such document: (a) the nature of the privilege or ground of confidentiality claimed; (b) the type of document; (c) the authors of the document; (d) the addressees of the document; (e) all persons who received copies of the document; (f) the date of the document; (g) the location of the document, and (h) the general subject matter of the document.

14.    Without in any way limiting the definition of "document" contained in the Federal Rules of Civil Procedure or herein, you are specifically instructed to search all document management systems, computer archives, and/or backup tapes or disks for documents responsive to the following requests, and production of such documents should be made regardless of whether such documents exist in tangible or "hard" copy form.  Production is also sought regardless of whether the user purported to "delete" the document, if such document is capable of being retrieved from archives and/or backup tapes or disks.

15.    If the requested documents are stored electronically or in a computer, please identify the location of each document, the computer program by which the document was created, the computer software program, if any, that compresses the document, and the configuration of the computer on which the document is found.  As used herein, the term "configuration," when used in reference to any computer, includes, but is not limited to, the following information: (1) computer type, brand, model and serial number; (2) brand and version of all software, including operating system, private and custom developed applications, commercial applications, shareware and/or work-in-progress; and (3) communications capability, including asynchronous and/or synchronous, and including, but not limited to, terminal to

mainframe emulation, data download and/or upload capability to mainframe, and computer to computer connections via network, modem, and/or direct connect.

16.    The Plaintiffs in this action were participants in or beneficiaries of an employee benefit plan during the Relevant Time Period.  Accordingly, each of the following document requests should be understood to include documents authored by or exchanged with attorneys referring or relating to the management or administration of that employee benefit plan, including, but not limited to, the management or disposition of the assets of that plan, the investment of assets of that plan, or communications with plan participants and beneficiaries regarding the plan or their benefits under the plan, regardless of whether such documents would be privileged if requested by persons other than participants in or beneficiaries of those plans.

17.    The term "Plan" shall be construed and understood to mean the ERISA defined contribution plans listed in the above definition collectively as well each of those plans individually.

18.    Unless otherwise identified, all requests are restricted to the Relevant Time Period.

### III.    Documents Requested

1.    All documents pertaining or relating to the named Plaintiffs in this action, including: account statements, severance agreements, releases of claims against the Company, or other documentation concerning the terms and/or tenure of their employment, including its cessation, performance reviews, and other employment-related information.

2.    All written instruments (as defined by ERISA § 402(a), 29 U.S.C. § 1102(a)) governing or pertaining to the Plans in effect at any time during the Relevant Time Period, including master Plan documents, Plan restatements, Trust Agreements, Summary(ies) of

10

Material Modifications, Investment Policy Statements, Investment Management Contracts, and all amendments, exhibits, or appendices thereto.

     3.    All summary plan descriptions of the Plans (as defined in ERISA § 102, 29 U.S.C. § 1022) in effect at any time during the Relevant Time Period, any and all summaries or statements of material modification thereto, and any documents, reports, and memoranda utilized in drafting these documents.

     4.    Rules, regulations, bylaws, policies and procedures adopted by the Plan (or any Committee or entity charged with administration of the Plan or whose members have authority or control with respect to disposition and/or investment of Plan assets) governing any aspect of the management or operation of the Plan or any Trust holding the Plan's assets, or the investment of the Plan's assets. Documents requested include those concerning any investment policy of the Plan as a whole or any component thereof, including the Company matching contributions under the Plan and any individual investment fund considered or offered by the Plan.

     5.    With respect to the Plan's Trustee:

       a.    All documents pursuant to which the trust agreement was established and maintained, including, but not limited to, all amendments, riders, descriptions, schedules, attachments, and exhibits thereto;

       b.    All documents or communications directing the Trustee regarding the investment of Plan assets in the Company Stock Fund and all responses to inquiries by Plan participants regarding any issue involving the Company Stock Fund;

       c.    All communications, including, but not limited to, correspondence between the Trustee and Defendants relating to the Plan;

       d.    All documents detailing rules and guidelines to be followed by customer (participant) service representatives hired and/or contracted for by the Company, including employees of the Trustee as they relate to the Company Stock Fund;

    e.   All documents constituting any review or analysis of whether W.R. Grace stock was a prudent investment for the Plan, determination regarding the same, including, but not limited to, any comparison between W.R. Grace stock's performance and the performance of the other investment alternatives available under the Plan;

    f.   Written scripts maintained by Trustee for communication with Plan participants and/or beneficiaries as they pertain to the Company Stock Fund and the identities and titles of the persons responsible for drafting such scripts;

    g.   Records of all Plan-related inquiries made to the Trustee, including any letters from Plan participants and/or beneficiaries, regarding the Company Stock Fund; and

    h.   The tapes or transcriptions of telephone calls made by Plan participants and/or beneficiaries to either the Trustee or W.R. Grace that relate to issues associated with the Company Stock Fund.

6.     All minutes and resolutions (including audio- or video-recordings of such discussions) of the Board which relate in any manner to the Plan, including, but not limited to, any minutes specifically discussing the investment of the Plan's assets, through ongoing and pre-existing Company matching or participant contributions, in the Company Stock Fund or W.R. Grace stock or any material change in the structure, makeup or administration of the Plan.

7.     All prospectuses of the Plan and its investments/investment alternatives, including, but not limited to, the Company Stock Fund and Company Contribution fund, including any prospectuses issued under the Securities Act of 1933, in effect at any time during the Relevant Time Period, including all exhibits, schedules and attachments thereto.

8.     Regularly generated periodic reports of the Plan (annual, quarterly, *etc.*) for the Relevant Period, regardless of the person or entity creating the report; this request includes reports by any advisors or consultants to the Plan, or any fiduciary or party in interest, to review or comment upon the Plan or the Plan's investments.

9.    All communications, directed to the Plan's participants, Company employees, or any other person(s), including e-mail, text messages, instant messages, and notices posted exclusively on an Internet/Intranet site, regarding the Plan, Plan assets or Plan investments or investment options, and any amendment or alteration to any of the Plan's instruments, including any Summary of Material Modification to any document governing the Plans, and any designation, change, substitution, freezing or removal of Plan investment funds or options. This request includes all documents in your possession, even if not authored by you.

10.    All documents which identify the named and *de facto* fiduciaries of the Plan, including but not limited to: (i) documents identifying members of the Committees, including Chairs and/or Secretaries (including documents mandating that members hold specific Offices or positions with the Company); and (ii) documents evidencing the identities and terms of service of any other fiduciary, including, but not limited to, any Trustee of, or Investment Manager for, any of the Plans.

11.    Documents evidencing any delegation of fiduciary responsibilities during the Relevant Time Period, including any delegation on the part of the Company pursuant to its duties and responsibilities regarding the administration of the Plan and its assets; any designation of "named fiduciary" status on outside or in-house persons by the Company, Board of Directors, or Committees; any delegation by the Company, the Board of Directors, or the Committees of all or part of their Plan responsibilities and powers; or any designation of a person as a fiduciary delegate or agent with authority to instruct the Plan Trustee and/or Investment Manager(s) concerning the assets of the Plan.

12.    All reports and governmental filings by, or on behalf of the Plan, including, but not limited to:

a. Filed and draft versions of United States Securities and Exchange Commision ("SEC") forms 11-K, 11-K/A, S-8, and 10-K, 10-K/A, or 10-K405, including schedules, attachments and exhibits thereto, regarding the Plan and/or its policies and assets and any Amendments to the Plan during the Relevant Time Period;

b. United States Internal Revenue Service ("IRS") Forms 5500 and 990, including any schedules, attachments and/or exhibits thereto, filed by the Plan at any time during the Relevant Time Period;

c. All requests for qualification or re-qualification of the Plan by the IRS during the Relevant Time Period;

d. All requests for private letter ruling from the IRS during the Relevant Time Period and the responses, if any, thereto;

e. All requests for opinions or prohibited transaction exemptions, by or from the United States Department of Labor ("DOL") and all correspondence between the Plan or its representatives and the DOL whether or not such correspondence pertains to opinion or exemption requests; this request includes correspondence and documents provided to the Department of Labor pursuant to any investigation of the Plan;

f. Any and all notices, including e-mail, regarding the Plan and any amendment or alteration to any Plan instrument, including any Summary of Material Modification to any document governing the Plan, and any designation and/or removal of the Plan's investment funds or options;

g. All reports, memoranda, opinions, and other documents utilized or relied upon in the drafting or creation of items a through f, above; and

h. All documents and correspondence from the DOL or any other government agency regarding the Plan, including, but not limited to, any DOL or other government agency investigation of the Plan or its sponsor or administrator.

13. Minutes and audio or video recordings of any meetings of the Board, the Committees, Investment Manager(s), or similar governing entity of the Plan, including any investment managers not specifically named herein, (and all committees and subcommittees thereof) during the Relevant Time Period, including all exhibits, attachments, and documents referenced in the minutes, including, but not limited to, any minutes specifically discussing the

14

investment of the Plans' assets through ongoing and pre-existing Company matching and/or participant contributions in the Company Contribution Fund, the Grace Stock Fund and/or W.R. Grace & Co. stock.

14.    All documents that set forth, delineate, describe or relate to the Board's control, whether pursuant to written authority or on a *de facto* basis, of the amount and form of the Company matching contribution.

15.    All documents that relate to the parameters of Defendants' control over the Grace Common Stock Fund to the extent that it primarily invests in Grace Stock, under normal circumstances.  This request includes any documents relating to the term "under normal circumstances" with respect to investment in the Grace Common Stock Fund, including documents that refer to its interpretation, and by whom.

16.    Charters of, governing rules for, or establishment documents including contracts, trust agreements, etc., concerning the Committees, the Investment Manager, the Plan Trustee, the Board and any subcommittees thereof, or any other fiduciary of the Plans and any subcommittees thereof.

17.    All documents that set forth, delineate, describe or relate to the merger of the Administrative Committee into the Investment and Benefits Committee. Please produce all documents concerning the division of duties between the Administrative Committee and the Investment and Benefits Committee, and the inception date and termination date (if applicable) of each Committee.

18.    All documents relating to the process(es) established by Defendants or any other person on behalf of Defendants for monitoring the prudence of W.R. Grace stock as an investment vehicle for the Plan's assets, including all documents evaluating or relating to the

investment performance of W.R. Grace or analyzing the Company's financial condition or the perception of the Company's financial condition by the market.

19.    All documents, including drafts thereof, concerning investment education material, communications, and/or information, pertaining to any Plan investment vehicle, provided or forwarded to Plan participants, including, but not limited to documents that constitute, set forth, discuss, refer, or relate, in whole or in part, to any analyses/review/evaluation of the Plan's investment options, including investments in W.R. Grace stock, the provision of the Company Stock Fund as a Plan Investment Fund, the potential positive and/or negative financial benefits/ramifications of investing in the Company Stock Fund, or the financial performance of the Company Stock Fund.

20.    All documents, including correspondence, memoranda, reports or minutes of meetings of any entity or group of persons including Defendants (formally or informally organized), that relate to: (a) any discussion, communication, consideration, or decision to allow participants to direct the Plan to purchase, sell, or retain shares of any Plan investment option, including the Company Stock Fund/Company stock, in the Plan; (b) the modification, liquidation, or elimination from the Plan of any investment option, including but not limited to the Company Stock Fund/Company stock; (c) the subject and tally of any votes taken in such meetings; or (d) any dissent(s) by members of the Board or the Committees to actions taken concerning the management and administration of the Plan.

21.    All documents that set forth, delineate, describe or relate to the decision (and its implementation) to invest Company contributions according to the investment elections participants made for their own savings, effective January 1, 2001, as described in ¶¶ 57-58 of the Complaint.

22.    All documents that set forth, delineate, describe or relate to the decision (and its implementation) to permit participants to choose the investment of matching company contributions the same way as their own savings, effective January 1, 2000, as described in ¶ 61 of the Complaint.

23.    All documents that set forth, delineate, describe or relate to the decision (and its implementation) to cease accepting contributions or allocations to the Grace Stock Fund, as of April 17, 2003, as described in ¶¶ 64-67 of the Complaint.

24.    All documents that set forth, delineate, describe or relate to the decision (and its implementation) to sell the Grace stock in the Plan, as described in ¶¶ 69-74, including communications between Grace, Defendants and State Street, and communications to Plan participants.

25.    All documents regarding established procedures for proposing, evaluating, and implementing alterations to the Plan, including those describing when such alteration is necessary, or procedures for proposing, evaluating and implementing modifications to the Plan, including adding, evaluating, or removing investment alternatives from the Plan.

26.    All documents, communications or minutes of any meeting(s) of the Board, the Committees, Investment Manager(s), or any other individual(s), committees, or entities charged with fiduciary responsibility for the Plan, concerning the addition or removal of any potential or actual investment alternative(s), including the Company Stock Fund, under the Plan during the Relevant Time Period, including any documents concerning the policies, procedure, and criteria applied in making such decisions.

27.    All documents that set forth or relate to any investment policy of the Plan, and/or any individual investment alternative under the Plan, including the Company Stock

17

Fund/Company stock, including documents relating to the policy, procedure, and criteria used in evaluating such investment options. These documents include any relating to the maintenance and form of Company matching contributions as well as investment options provided for participant contributions.

28.     All regular update communications or benefit updates provided to the Plan's participants during the Relevant Period, including any benefit/Plans newsletters.

29.     All documents that constitute, set forth, discuss, refer, or relate, in whole or in part, to any analysis/review/evaluation of the Plan's investment options, including the Company Stock Fund, during the Relevant Time Period, including all drafts thereof, whether generated by the Company, the Board, the Committee, Investment Manager(s), consultant or similar individual or entity. These documents include any performance reviews of each individual investment alternative provided under the any of the Plan.

30.     All documents that constitute, discuss, refer, or relate, in whole or in part, to any and all communications with legal, financial, accounting or investment advisors, investment managers or consultants with regard to the Plan and/or any of the Plan's investment alternatives, including the Company Stock Fund, or constitute, discuss or refer, in whole or in part, to any discussion among Defendants relating to the decision whether to retain such investment advisors or consultants.

31.     All manuals, policies, guidelines, rules, or other documents relied upon with regard to the administration or management of the Plan, the Plan's assets and the Plan's selection and maintenance of individual Plan investment alternatives during the Relevant Time Period.

32.     All documents that set forth, delineate, describe or relate to the Plan-related responsibilities of the Board, or any committee of the Board, or individual Board member, and

which discuss or refer, in whole or in part, to any action taken by members of the Board or any committee thereof that impacted or concerned the Plan.

33.    All documents that set forth, delineate, describe or relate to any actions taken by the Board to monitor its fiduciary delegates, including the Trustee, the Investment Manager(s), the Investment and Benefits Committee and the Administrative Committee, including any reports generated.

34.    All documents that set forth, delineate, describe or relate to the Plan-related responsibilities of the Administrative Committee, or any committee of the Administrative Committee, or individual Administrative Committee member, including, but not limited to, those which discuss or refer, in whole or in part, to any action taken by members of the Administrative Committee or any committee thereof that impacted or concerned the Plan.

35.    All documents that set forth, delineate, describe or relate to the Plan-related responsibilities of the Investment and Benefits Committee, or any committee of the Investment and Benefits Committee, or individual Investment and Benefits Committee member, including, but not limited to, those which discuss or refer, in whole or in part, to any action taken by members of the Investment and Benefits Committee or any committee thereof that impacted or concerned the Plans.

36.    All documents that set forth, delineate, describe or relate to the relationship of W.R Grace and/or any Defendant(s) and/or the Plan with Aon Consulting, Inc., Aon Fiduciary Counselors, Inc., or any other branch or affiliate of Aon Corporation that provided any services for the Plan during the relevant time period.

37.    All documents that set forth, delineate, describe or relate to the relationship of W.R Grace and/or any Defendant(s) and/or the Plan with State Street Global Advisors, State

Street Corporation, or any other branch of State Street that provided any services for the Plan during the relevant time period.

38.    All documents that relate to the Plan's purchases, sales and/or holdings of the Company Stock Fund or W.R. Grace stock during the Relevant Time Period.

39.    All documents on which fiduciary decisions were based with regard to the Plan's investments in Company Stock, including investment in the Company Stock Fund, provision of the Company Stock Fund as an investment alternative under the Plans, and provision of Company matching contributions in Company stock or the Company Stock Fund (including any "locking," or permitted diversification/"unlocking," of such matching contributions where any limitations were placed or maintained on participants' ability to sell or diversify out of such matching contributions).

40.    All Board resolutions, documents, communications, or minutes of any meeting(s) of the Board, the Committees, or any other W.R. Grace committee(s) charged with fiduciary responsibility for the Plan(s) concerning or discussing the Company Matching Contribution under the Plan, including the amounts and investment vehicles to be utilized, or whether or not to make a Company Matching Contribution within a specific Plan year.

41.    All documents, communications, or minutes of any meeting(s) of the Board or the Committees or any other W.R. Grace committee concerning or discussing the following:

    a.    the decision to allow all Plan participants to diversify or "unlock" the portion of the Company's matching contributions made in W.R. Grace stock;

    b.    the decision to allow Plan participants to continue investing all or part of their matching contributions into the Company Contribution Fund, but not into the Grace Stock Fund; and

    c. the decision to liquidate investments in the Grace Common Stock Fund and the ESOP.

  42. All documents, communications, or minutes of any meeting(s) of the Board, the Committees, Investment Manager(s), or any other individuals or Committees concerning or discussing the business improprieties alleged to have taken place at the Enron Corporation and/or the effect of these alleged improprieties on the value of Enron stock in its employee benefit plans.

  43. All documents, communications, or minutes of any meeting(s) of the Board or the Committees or any other W.R. Grace committee concerning or discussing the Company's liability exposure in asbestos-related litigation, bankruptcy filings by competitors, the impact of U.S. Supreme Court decisions, such as *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) and *Amchem Products, Inc. v. Windsor,* 521 U.S. 591 (1997) on the Company's liability exposure in asbestos related litigation, the significant rise in asbestos related litigation against the Company, and/or the real, actual or potential actual effects of such factors on the Company's financial condition, viability and/or stock price.

  44. All documents, communications, or minutes of any meeting(s), attended by Grace Board members and/or executives, with other manufacturers of asbestos during which the extent of potential asbestos liability for asbestos manufacturers was discussed.

  45. All documents relating to Grace's accounting for its asbestos liability, including its decision to change the period for accruing for asbestos-related bodily injury claims, as described in ¶¶ 113-117 of the Complaint. This request also specifically includes documents describing the initial decision to account for liabilities, how they were tabulated/forecasted, and documents to or from outside experts as well as internal operations.

46.    All documents reflecting asbestos-related litigation tabulation (for cases against the Company), *i.e.*, the number of cases filed, number of cases settled and discussions/analyses surrounding the litigation costs and potential harm to the Company during the relevant time period.

47.    All documents, communications, or minutes of any meeting(s) of any Investment Manager(s) charged with any fiduciary authority for the Plan's investment in W.R. Grace securities, or individuals or entities retained by the Investment Manager(s), concerning or discussing the Company's liability exposure in asbestos related litigation, bankruptcy filings by competitors, the impact of U.S. Supreme Court decisions, such as *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) and *Amchem Products,Inc. v. Windsor,* 521 U.S. 591 (1997) on the Company's liability exposure in asbestos-related litigation, the significant rise in asbestos related litigation against the Company and/or the potential or actual effect of these factors on the Company's financial condition, viability and/or stock prices.

48.    All documents demonstrating the knowledge, or lack of knowledge, of the Individual Defendants of the conduct and activities alleged in the Complaint in paragraphs 95 through 122.

49.    All documents produced in response to any governmental inquiry concerning allegations that Grace engaged in corporate reorganizations to conceal assets and cloud the corporate lines of responsibility from asbestos claimants (as described in ¶ 98 of the Complaint).

50.    All documents produced in response to any governmental inquiry concerning allegations that Grace engaged in questionable accounting practices with regard to its asbestos liabilities.

51.    Documents produced by or to defendants in United States of America v. W.R. Grace et al., No. CR05-07-DWM (D. Mont.), as well as all substantive filings in the case.

52.    Documents produced by defendants in Murphy et al. v. W.R. Grace et al., No. 1:95-cv-09003-JFK-RLE (S.D.N.Y.), as well as all substantive filings in the case.

53.    Documents relating to the Justice Department's 2002 intervention into Grace's bankruptcy proceeding, including documents relating to the Justice Department's allegations that Grace concealed money in new companies it bought and engaged in "fraudulent transfer" of money to protect itself from civil suits.

54.    Documents produced by debtors in In re W.R. Grace & Co. et al., 01-01139-JKF (Bankr. D. Del.), as well as all substantive filings in the case.

55.    Documents concerning and produced in any "Zonolite" insulation litigation(s), including personal injury and property damage suits, including, but not limited to, the class action litigation filed in Spokane Superior Court in March, 2000.

56.    Documents concerning and produced in litigation arising from any asbestos-containing products, including those listed on http://www.graceclaims.com/products.shtml (a copy of which is attached hereto).  This request specifically includes but is not limited to documents produced in In re Asbestos Products Liability Litigation, MDL 875 (E.D. Pa.).

57.    Board minutes, documents, and communications concerning or discussing the Board's review of Plan-related activities of the Committees, Investment Manager(s), the Plan Trustee, or any other committee(s) or individuals charged with fiduciary responsibility for the Plan(s), and any documents pertaining to or describing any regular review schedule or process by the Board concerning such activities of the Committees, the Investment Manager(s), or any other entity (either within Grace or externally) charged with fiduciary responsibility for the Plan(s).

58.     Documents, communications, or meeting minutes concerning or discussing the Plan's investment policy(ies), the performance of the Plan's invested assets, or the prudence of investing the Plan's assets in the Company Contribution Fund, the Grace Stock Fund or any Company Stock Fund or W.R. Grace stock, and any documents pertaining to or describing any regular review schedule or process by the Board of Directors or any committee or subcommittee thereof concerning such Plan investment-related issues.

59.     Documents, communications, or meeting minutes concerning, discussing, reviewing or evaluating the performance or actions of the Committees or its individual members and any documents pertaining to or describing any regular review schedule or process by the Board of Directors concerning the activities of the Committee.

60.     Documents, communications, or meeting minutes concerning, discussing or evaluating the performance of the Plan's investment alternatives, including, but not limited to the Company Stock Fund, including reports, analyses, or consultations from independent/outside investment or legal professionals, and any documents pertaining to or describing any regular review schedule or process by the Committees, Investment Manager(s), and/or the Board concerning such investments.

61.     Documents or communications pertaining to legal advice or investment advice sought or obtained by any Defendant, the Plan, or any fiduciary of the Plan, internally or externally, for use in the administration of the Plans and the investment and management of the Plan's assets during the Relevant Time Period.

62.     All documents, communications, or meeting minutes of the Board or the Committees, or any other W.R. Grace employees or committee concerning the Plan's compliance with any DOL implementing regulations for ERISA § 404(c) as it pertains to liability

24

for participants' investment decisions and all documents disseminated or made available to participants in an attempt to comply with these regulations.

63.     With respect to all Investment Manager(s) (including State Street and Aon) with fiduciary responsibility for any of the Plan's investment options that contained W.R. Grace stock:

a.     All documents pursuant to which any agreement was established and maintained, including, but not limited to, all amendments, riders, descriptions, schedules, attachments, and exhibits thereto;

b.     All documents or communications directing the Investment Manager regarding the investment of the Plan's assets or responses to inquiries by the Plan's participants;

c.     All communications, including, but not limited to, correspondence between the Investment Manager and other Defendants relating to the Plan;

d.     All documents detailing rules and guidelines to be followed by customer (participant) service representatives hired and/or contracted for by the Company, including employees of the Investment Manager;

e.     All documents constituting any review or analysis of whether the Company Stock Fund, the Company Contribution Fund, the Grace Stock Fund or W.R. Grace & Co. stock was a prudent investment for the Plan, any determination regarding the same, including, but not limited to, any comparison between the Company Stock Fund's performance and the performance of the other investment alternatives available under the Plan;

f.     Written scripts maintained by the Board, the Committees, Investment Manager(s), any other Plan administrator, or Trustee for communication with the Plan's participants and/or beneficiaries and the identities and titles of the persons responsible for drafting such scripts;

g.     Records of all Plan-related inquiries made to the Investment Manager, including any letters from the Plan's participants and/or beneficiaries;

h.     The tapes or transcriptions of telephone calls made by any of the Plan's participants and/or beneficiaries to either the Investment Manager or to W.R. Grace & Co.; and

25

i. Any documents, communications, or minutes of meetings of the Board, the Committees or any other W.R. Grace & Company committee or employee charged with fiduciary responsibility for any of the Plan(s) regarding any change in Plan Investment Manager(s) effectuated during the Relevant Time Period.

64. All documents describing or relating to the Individual Defendants' qualifications, training and experience to serve as Plan fiduciaries, including but not limited to all personnel and employment records relating to each Individual Defendant.

65. Any and all contracts, including amendments and/or addendums, with outside or in-house service providers, investment managers or any Plan trustee involved with the provision, evaluation, and maintenance of the Plan's investment options in effect during the Relevant Time Period, including any documents pertaining to the negotiations of the terms of such contracts.

66. All documents that identify any officers and/or managerial level employees working on matters related to the Plan during the Relevant Time Period, their duties and responsibilities related to the Plan, and their respective dates of service with regard to each Plan (where applicable).

67. All Company SEC filings (to the extent not produced in response to request no. 12 above), including, but not limited to, 10-K, 10-Q and 8-K filings (including amended submissions), concerning the Company financial or operational results during the Relevant Time Period and all related public releases, statements, minutes/transcripts of analyst meetings, or prepared statements of Company Directors, Officers or other Company spokesperson(s).

68. All documents relating to actual or potential communications to W.R. Grace & Co. employees and/or Plan participants during the Relevant Period, including the communications themselves, relating to the business/financial performance and/or business/financial health and/or business/financial future prospects of W.R. Grace & Co. during

the Relevant Time Period, including, but not limited to: Company-wide mailings, all Plan-wide mailings, internal newsletters, video conferences, teleconferences, tapes (video and audio) and/or transcripts of oral presentations/speeches/addresses by W.R. Grace Directors, Officers, or executive-level employees, and/or any electronic messages (*e.g.* e-mail, text messages, instant messages, or Internet/Intranet websites containing such communications).

69.    All documents relating to actual or potential communications, including the communications themselves, to W.R. Grace & Co. employees (including Plan Participants) concerning pending and anticipated asbestos-related litigation, the increase in asbestos-related litigation against the Company, the impact of competitor bankruptcies on the Company's liability exposure in asbestos-related litigation, the effect of U.S. Supreme Court decisions on the Company's liability exposure in asbestos-related litigation, and/or the impact of asbestos-related claims on W.R. Grace & Co.'s profitability and its stock prices during the Relevant Period.

70.    Minutes of any meetings during the Relevant Period relating to communications between Defendants, employees and/or the Plan's participants, concerning the business/financial performance and/or business/financial health of W.R. Grace during the Relevant Time Period.

71.    All documents relating to actual or potential communications to the Plan's participants during the Relevant Time Period, including the communications themselves, concerning the provision of the Grace Stock Fund as a Plan Investment Fund, including, but not limited to Company-wide mailings, Plan-wide mailings, internal newsletters, video conferences, and/or electronic messages (*e.g.* e-mail, text messages, instant messages, or Internet/Intranet websites containing such communications).

72.    All documents, including meeting minutes, relating to actual or potential communications to Plan participants during the Relevant Time Period, including the

communications themselves, concerning the financial performance of the Grace Stock Fund, including, but not limited to Company-wide mailings, Plan-wide mailings, internal newsletters, video conferences, and/or electronic messages (*e.g.*, e-mail, text messages, instant messages, or Internet/Intranet sites containing such communications).

73.     All minutes of any meetings during the Relevant Time Period relating to communications between Defendants, Employees and/or Fiduciaries, and the Plans' participants, concerning the financial performance of the Company Stock Fund.

74.     All minutes of any meetings during the Relevant Time Period relating to communications between Defendants, Employees and/or Plan participants, concerning asbestos litigation and liability exposure on Grace.

75.     All documents relating to actual or potential communications, including any meeting minutes of the Board or the Committees or any other W.R. Grace committee to Person(s), to the Plan's participants during the Relevant Period, including the communications themselves, concerning the potential positive and/or negative financial benefits/ramifications of investing in the Company Stock Fund, including, but not limited to Company-wide mailings, Plans-wide mailings, internal newsletters, video conferences, and/or electronic messages (*e.g.*, e-mail, text messages, instant messages, or Internet/Intranet websites containing such communications).

76.     All documents pertaining to any employment, bonus, salary or other compensation agreement(s) between the Company and any of the Individual Defendants, including drafts, communications and minutes of meetings regarding negotiation of such agreements.

77.     All insurance policies, including fiduciary liability policies, and/or other
agreements or understandings in effect during the Relevant Time Period that reflect the terms
under which any Person is or may be insured or indemnified against liability relating to the Plan
or the allegations of Plaintiffs' Complaint.  This request includes elimination of recourse
policies, reservation of rights letters, and any notice of claim or potential claim under such
policies or agreements made at any time during the period

78.     Any fidelity bonds covering any of the Plan's fiduciaries and any notice of claim
or potential claim under such policy or agreement made at any time during the Relevant Period.

79.     Any sharing agreement between the Company and any Person or entity by which
such person or entity may be liable for any judgment on any of the claims alleged in the
Complaint.

80.     All documents relating to the cash amounts and/or number of shares of
W.R. Grace & Co. stock that were made as Matching Contributions by the Company during the
Relevant Time Period to participants' accounts.

81.     All documents that list or describe: (1) the number and identity of persons with
accounts in the Plans and (2) the number and identity of persons invested in W.R. Grace stock in
their Plan account(s) during the Relevant Period.

82.     All documents that set forth, discuss, or describe your document destruction and
retention policies or procedures during the Relevant Time Period, any document retention or
destruction policy with respect to electronic communications (including e-mail, text messages,
instant messages, computer records, disk files and/or other electronic records), and any actual,
suggested or contemplated policy, program, procedure, instruction, direction or request

concerning the destruction, alteration, removal, concealment, non-disclosure, secrecy or confidentiality of any of the documents requested herein.

83.     All documents prepared by or sent to or from each Individual Defendant, including, but not limited to, correspondence, memoranda, e-mails, reports, studies, documents stored on the hard drives of their personal computer(s), concerning liability exposure in asbestos litigation claims, including but not limited to, the increased likelihood of liability exposure given bankruptcy filings by competitors.

84.     With respect to each Individual Defendant:

    a.    All documents concerning his or her investments, including purchases, sales and holdings in W.R. Grace stock during the Relevant Time Period;

    b.    All documents concerning their compensation that was tied in any way to W.R. Grace & Co. stock during the Relevant Time Period, including Company stock options; and

    c.    All documents concerning the efforts of any Individual Defendant to lobby to accelerate or decelerate the vesting of options or grants.

85.     Documents, not produced in response to other Requests, sufficient to identify the daily purchases, sales and holdings of the Company Stock Fund by the Plan during the Relevant Time Period.

86.     Documents, not produced in response to other Requests, sufficient to identify the daily purchases and sales of W.R. Grace & Co. common stock by the Grace Stock Fund and the Company Contribution Fund (and/or ESOP) during the Relevant Time Period.     .

87.     Documents sufficient to identify on a daily basis the closing market price or other indicator of value of each investment option under each Plan, including the Grace Stock Fund and Company Contribution Fund, during the Relevant Time Period.

DATED: May 23, 2006

**GILMAN AND PASTOR, LLP**
David Pastor
60 State Street
37th Floor
Boston, MA 02109
Telephone: 617-742-9700
Facsimile: 617-742-9701

**SCHIFFRIN & BARROWAY, LLP**
Joseph H. Meltzer
Edward W. Ciolko
Katherine B. Bornstein
280 King of Prussia Road
Radnor, PA 19087
Telephone:  (610) 667-7706
Facsimile:   (610) 667-7056

**SLEVIN & HART, P.C.**
Thomas J. Hart
1625 Massachusetts Avenue, N.W.
Suite 450
Washington, D.C. 20036
Telephone: (202) 797-8700

# GRACE Bankruptcy Claims Information Site

*In Re W. R. Grace & Co., et al., Chapter 11, Case No. 01-01139(JJF) (Bankr. D. Del.)*

Home Page    Bar Date Notice    Notice Documents    Product List    Questions & Answers

---

## Grace Product List

A list of the brand names under which the Debtors manufactured or distributed products which may have contained commercially added asbestos, includes, but may not be limited to, the following:

- Ari-Zonolite Board Texture (1961 - 1964);
- Ari-Zonolite Natura
- Ari-Zonolite Oyster White
- Ari-Zonolite Nu-White
- Econo-White 65 and Econo-White 70 -- Econo-White Acoustical Texture; Econo- White Super White
- Hi-Sorb Acoustical Plaster (1966 - 1973) -- XX White Hi-Sorb; Oyster White Hi- Sorb
- Perlcoustic (1966 - 1973)
- Perltex Spray Surfaces (19 ?? - 1973) -- PlasterTex; Perltex Super-40 Spray Surfacer; Perltex Super-40; Gun Coat Spray Surfacer
- Perltex Super-40 Fog (19 ?? - 1973) -- Perltex Fog (Prior to 1968)
- Perltex Super-40 Perltex (19 ?? - 1973) -- Perltex Perlite; Super-40 Perlite
- Perltex Super-40 Polycoarse -- Perltex Polycoarse (Prior to 1988)
- Perltex Super-40 SAV (19 ?? - 1973) -- Perltex SAV; Super-40 SAV
- Prep-Coat #3; Prep-Coat #5
- Satin White
- Spra-Wyt a/k/a Spra-Wyt Finish, Spra-Wyt Acoustical, Spra-Wyt Acoustical Finish
- Vermiculite Acoustical Plaster; Vermiculite Acoustical Plastic
- Versakote -- Prep Coat #4
- Z-Tex (1958 - 1962) -- EX-Tex; Z-Tex 2; Z-Tex 2 Super White
- Zono-Coustic (1960-1973) -- Zono-Coustic 1; Zonocoustic 2; Zonocoustic 3; Zonocoustic Type Z; and Zonocoustic (MK2)
- Zonolite Acoustical Plaster (1945 - 1972) -- Zonolite Acoustical Plastic; Zonolite Board of Education Texture (1962 - 1963) -- Board of Education Hard Texture
- Zonolite Finish Coat (1956 - 1970) -- Decorator's White
- Zonolite Finish Coat (1961 - 1973) -- Decorator's White Extra Hard
- Zonolite Finishing Cement
- Zonolite High Temperature Insulating Cement (1938 - 1971) -- Hi Temp Insulating Cement; Zonolite Hi-Temperature Cement; Zonolite High Temperature Cement
- Zonolite Mono-Kote (MK-1) (1958 - 1962) -- Mono-Kote (generic name)
- Zonolite Mono-Kote 3 (MK-3) (1959 - 1973) -- Mono-Kote (generic name)

- Zonolite Spra-Insulation (1959 - 1973) -- Mono-Kote (MK-2)
- Zonolite Spra-Tex -- Regular (1955 - 1972) -- Zonolite Spra-Tex EH
- Zonolite Spra Tex -- Extra Hard (1961 - 1972)

Home | Bar Date Notice | Notice Documents | Product List | Questions & Answers

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of May, 2006, the Evans Plaintiffs' First Request for Production of Documents to Defendants was served via First Class Mail, postage prepaid on the following:

Carol Connor Flowe
Caroline Turner English
Gretchen Dixon
ARENT FOX PLLC
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 857-6000
Facsimile: (202) 857-6395

*Attorneys for Defendants John F. Akers, Ronald C. Cambre,*
*Marye Anne Fox, John J. Murphy, Paul J. Norris, Thomas A. Vanderslice,*
*H. Furlong Baldwin, Investments and Benefits Committee,*
*Administrative Committee, Brenda Gottlieb, W. Brian McGowan,*
*Michael Piergrossi, Robert M. Tarola, Eileen Walsh, David Nakashige,*
*Elyse Napoli, Martin Hunter, Ren Lapadario, W.R. Grace & Co.,*
*W.R. Grace Investment and Benefits Committee, and Fred E. Festa*

Stanley M. Chesley
James C. Cummins
Jane H. Walker
WAITE, SCHNEIDER, BAYLESS & CHESLEY CO., LPA
1513 Fourth & Vine Tower
1 West Fourth Street
Cincinnati, OH 45202
Telephone: (513) 621-0267
Facsimile: (513) 381-2375

*Attorneys for Plaintiffs Lawrence W. Bunch,*
*Jerry L. Howard, Sr., and David Mueller*

Scott M. Flicker
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th Street, NW
Washington, DC 20005
Telephone: (202) 551-1700
Facsimile: (202) 551-1705
*Attorneys for Defendants State Street Bank &*
*Trust Company and State Street Global Advisors*

Katherine B. Bornstein