# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| Evans et al., | ) | |
| | ) | |
| Plaintiffs, | ) | **Cases Consolidated As:** |
| | ) | **1:04-cv-11380-WGY** |
| v. | ) | |
| Akers et al., | ) | |
| | ) | |
| Defendants. | ) | |
| Bunch et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| W.R. Grace & Co. et al., | ) | |
| | ) | |
| Defendants. | ) | |

## [CORRECTED] REPLY MEMORANDUM IN FURTHER SUPPORT OF EVANS PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# I.    INTRODUCTION

Plaintiffs Keri Evans and Timothy Whipps, (collectively the "Evans Plaintiffs"), respectfully submit this reply memorandum of law in further support of their motion for certification.[1]

Plaintiffs worked for W.R. Grace & Co. (hereinafter "Grace" or the "Company"), and were participants in the Plan pursuant to § 3(7) of ERISA, 29 U.S.C. §1102(7) during the Class Period. Plaintiffs respectfully moved the Court for an order granting certification of the above class under Fed. R. Civ. P. 23(a) and (b)(1) and/or (b)(2). The "Grace Defendants"[2] ("Defendants") filed a Consolidated Opposition to the Evans' Plaintiffs' and Bunch Plaintiffs' separate motions for certification of their respective classes on May 30, 2006 ("Opposition Brief" or "Opp. Br."). This reply will only deal with Defendants' limited opposition to the Evans Plaintiffs' motion.

Defendants have effectively conceded through non-opposition that the Evans Plaintiffs' and their proposed Class satisfy all of the requirements for certification of their proposed class of Plan participants under FED. R. CIV. P. 23(a)(1)-(4), 23(b)(1)-(2) and 23(g) for the majority of the claims brought in the Complaint, including the Evans' Plaintiffs primary claim of imprudent investment of Plan assets.

The Grace Defendants are only challenging the potential certification of Evans Plaintiffs' "misrepresentation" claim, or one-half of Count III of the Complaint which alleges that Defendants breached their duties to the Plan and its participants by disseminating misleading, incomplete, and inaccurate material information to Plan participants through Securities and Exhange Commission

---

[1]  For the sake of brevity, Plaintiffs incorporate herein the factual and legal allegations presented in their (1) First Amended Complaint for Violations of the Employee Retirement Income Security of Act of 1974 ("ERISA") ("Complaint"), filed in this action on December 19, 2005, including Plaintiffs' description of the administration of the Plans and investment of their assets and (2) Corrected Memorandum of Law in Support of Evans Plaintiffs' Motion for Class Certification ("Certification Memorandum" or "Cert. Mem.").

[2] As defined in Opp. Br., p. 1.

filings and other public statements. Defendants' arguments fall apart under even cursory analysis of the overwhelming weight of directly relevant case law.

Defendants sole argument in opposition to Evans Plaintiffs' certification motion, *in toto*, is actually a motion to dismiss the Evans Plaintiffs' Complaint based on the alleged lack of standing of either of Evans Plaintiffs to bring the Complaint's claims on behalf of the Plan pursuant to ERISA §§ 409, 502(a)(2).[3]   Defendants' arguments rest almost exclusively on a recent string of district court decisions, most currently on appeal, which are based, in pertinent part, on a misreading/misapplication of a seminal Fifth Circuit decision on the standing of former participants to bring breach of fiduciary duty actions.   Defendants' reliance on these outlier decisions is sorely misplaced.   An appropriate reading and application of First Circuit jurisprudence, the clear weight or directly relevant ERISA case law, the express opinion of the Department of Labor and the basic purpose and underlying principles of the ERISA statute all directly refute Defendants' positions and support the Evans Plaintiffs' standing to bring the Class' claims on behalf of the Plan.   The Evans Plaintiffs address this argument first.

## II.    ARGUMENT

### A.    Standing to Bring Claims for Breach of ERISA-Mandated Fiduciary Duties

The Evans Plaintiffs have brought this suit pursuant to ERISA 409, 502(a)(2) on behalf of the Plan and a class of Plan participants during a proposed Class Period to, *inter alia*, recover losses to the Plan which resulted from Defendants' imprudent investment of Plan assets and other related fiduciary breaches.   The Evans Plaintiffs and other Class members' retirement savings benefits under the Plan were dictated solely by the value of the Plan's invested assets.   If successful, the Plan will

---

[3] Presumably this "motion" is brought pursuant to FED. R. CIV. P. 12(b)(1), although this is not spelled out in the Opposition Brief.

recover those losses and its assets will be restored to where they would have been if the Defendant-fiduciaries had not breached their ERISA-mandated duties of prudence and loyalty.

As the Plan is a defined contribution plan made up of thousands of individual accounts, recovery of "lost" assets will result in each Plan participant's benefits under the Plan being restored to what they should have been absent Defendants' breaches. The Evans' Plaintiffs were participants in the Plan for most of the proposed Class Period. They held Grace stock in their Plan accounts and their accounts were directly affected by the precipitous drop in value of Grace stock resulting from Defendants' breaches. They did not know of Defendants' fiduciary breaches before receiving their distributions of accumulated Plan benefits upon leaving Grace employ and later "cashing out" their Plan accounts. Defendants' imprudent management of the Plan and its assets during the Class Period caused a severe diminution of Plan assets and therefore caused the Evans' Plaintiffs to receive fewer accumulated benefits upon leaving the Plan then what they were due. If the Plan's assets are restored to where they should have been through this action, so shall the benefits of all affected Plan participants during the Class Period. The Evans Plaintiffs, like all Class members, will therefore receive the amount of benefits due them under the Plan during the Class Period.

Under the letter and spirit of ERISA, the weight of relevant case law and equity, the Evans Plaintiffs clearly have a "colorable claim to benefits" and therefore have standing to bring this suit and serve as representatives of the proposed Class.

## 1.    Statutory and Jurisprudential Framework

"In enacting ERISA, Congress . . . sought 'to protect... the interests of participants in employee benefit plans ... by establishing standards of conduct, responsibility, and obligation for fiduciaries of [such] plans,' and by 'providing for appropriate remedies, sanctions, and *ready access to the Federal courts*.' 29 U.S.C. § 1001(b).(emphasis added). To this end, ERISA's comprehensive civil enforcement scheme provides, in section 502(a)(2), 29 U.S.C. § 1132(a)(2), that '[a] civil action

may be brought' by a plan 'participant' to obtain 'appropriate relief' under the section of ERISA (section 409, 29 U.S.C. § 1109) that makes a breaching plan fiduciary personally liable to the plan for any losses stemming from its breaches.    Brief for the Secretary of Labor as *Amicus Curiae* Supporting Plaintiffs-Appellants, *Vaughn v. Bay Environmental Mgmt.*, No. 05-17100 (9th Cir June 2006)[4] ("DOL Vaughn Brief") (attached as Exhibit A), p. 7-8.[5]

ERISA defines a plan "participant," in pertinent part, as: "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan . . . ."    ERISA § 3(7).

The Supreme Court, in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989) ("*Firestone*"), further discussed the meaning of the term "participant":

> [T]he term "participant" is naturally read to mean either "employees in, or reasonably expected to be in, currently covered employment," *Saladino v. I.L.G.W.U. National Retirement Fund*, 754 F.2d 473, 476 (CA2 1985), or former employees who "have ⋯ a reasonable expectation of returning to covered employment" or who have "a colorable claim" to vested benefits, *Kuntz v. Reese*, 785 F.2d 1410, 1411 (CA9) ( per curiam ), *cert. denied*, 479 U.S. 916 [107 S.Ct. 318, 93 L.Ed.2d 291] (1986). In order to establish that he or she "may become eligible" for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future. "This view attributes conventional meanings to the statutory language since all employees in covered employment and former employees with a colorable claim to vested benefits 'may become eligible.' A former employee who has neither a reasonable expectation of returning to covered employment nor a ***colorable claim to vested benefits***, however,

---

[4]  The Department of Labor ("DOL"), in this recently filed *amicus*, is directly relevant to and strongly supportive of the Evans Plaintiffs' standing analysis presented herein, stating, in general, that former participants of analogous defined contributions plans have standing to bring suit for fiduciary breaches on behalf of those plans pursuant to ERISA §§ 409, 502(a)(2) if they were participants of the plan while the alleged breaches took place.  The DOL's interpretation of the ERISA statute is entitled significant deference. *See generally Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984*), see also Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (U.S. 2003).

[5] The Evans Plaintiffs note that district court decision being appealed in *Vaughn* was cited by Defendants at Opp.  Br., p. 4, n. 2.  It is worth noting that the primary cases supporting Defendants standing argument -- *LaLonde v. Textron*, 418 F. Supp. 2d D. R.I. 2006) and *Hargrave v. TXU Corp.*, 392 F. Supp.2d 785 (N.D. Tex. 2005) --, as well as the *Dickerson v. Feldman*, -- F.Supp.2d ---, 2006 WL 838999 (S.D. N.Y. 2006) decision quoted by Defendants, are also the subject of pending appeals.  *See LaLonde v. Textron, Inc., appeal docketed,* No. 06-1546 (1st Cir Apr. 3, 2006); *Hargrave v. TXU, Corp., appeal docketed*, No. 05-11482 (5th Cir.  Dec. 29, 2005); *Dickerson v. Feldman, appeal docketed*, No. 04-7935 (2nd Cir. April 5, 2006).

> simply does not fit within the [phrase] 'may become eligible.' " *Saladino v. I.L.G.W.U. National Retirement Fund*, *supra*, at 476.

*Vartanian v. Monsanto Co.* 14 F.3d 697, 701 (1st Cir. 1994) (quoting *Firestone*, 489 U.S. at 117-18) (emphasis added).

The Evans Plaintiffs and members of the Class were participants in ERISA defined contribution or individual account plans during the Class Period.  Under such plans, "benefits [are] based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's accounts." ERISA § 3(34). "Thus, the amount of participants' vested benefits in a defined contribution plan increases in direct proportion to any increase in plan assets, and diminishes in proportion to any loss." DOL *Vaughn* Brief, p. 10.

The Evans Plaintiffs' essential claim "is that fiduciary breaches caused losses to the plan, and, because their benefits under these defined contribution plans are linked directly to the performance of the plans' assets, 29 U.S.C. § 1002(34), caused a corresponding diminution in the amount of the benefits that they received upon pay-out. This case is therefore analogous to *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 350 (5th Cir. 1989), where the court correctly held that plaintiffs had standing to sue on behalf of a liquidated defined contribution plan, because if the plaintiffs prove their claim they will be eligible to receive an increased benefit - the additional amount that they would have received at distribution if the defendants had not breached their fiduciary duties."  DOL *Vaughn* Brief, p. 6.[6]

---

[6] The DOL further analyzed/described the logic behind finding former participant standing in actions such as the instant one at p. 10, n. 1, 13:

> The issue is not whether the plaintiffs have brought a claim for benefits, but whether the former employees "may be eligible to receive a benefit," and thus are participants with standing to bring the claim.[The Evans Plaintiffs], who seek to recover losses to their defined contribution plans stemming from alleged fiduciary breaches that took place while they employees, necessarily 'may be eligible to receive a benefit' because any recovered plan assets must be allocated among the individual accounts of the participants and directly affect the amount of benefits they receive."

Therefore, when Defendants characterize the Evans Plaintiffs as having "received their entire benefit from the plan," Opp. Br., p. 5, 6, they, like the primary cases they rely on, miss the basic *gravamen* of the Evans Plaintiffs' (and the Class') claims.

### 2. Application of Relevant First Circuit Precedent Strongly Supports Finding the Evans Plaintiffs have Standing

"The Supreme Court's discussion in *Firestone* of the ERISA term 'participant' was developed outside of the 'standing' context and therefore" does not prescribe the exact contours of a court's standing analysis of every putative plaintiff in an ERISA breach of fiduciary duty action. *Vartanian*, 14 f.3d at 701 (citing *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1221 (5th Cir.1992), *cert. denied*, 506 U.S. 820 (1992) ("*Firestone*··· [cannot] be read to reduce the standing question to a straightforward formula applicable in all cases.").

The *Vartanian* court looked toward the Sixth Circuit and ERISA's legislative history in order to inform its analysis of a former plan participant's potential standing to bring a breach of fiduciary duty claim if the claimed breaches occurred during his/her tenure as a participant. First, the court cited with approval *Astor v. International Business Machines Corp.*, 7 F.3d 533 (6th Cir.1993):

> In determining who is a "participant," for purposes of standing, the definition found in 29 U.S.C. § 1002(7) must be read in the context of traditional concepts of standing, not in the context of adjudicating the ultimate issue of the merits of plaintiffs' claim···. The doctrine of standing is concerned with whether a person is the proper party to request adjudication of a particular issue, whether a person has alleged such a personal stake in the outcome of the justiciable controversy that he should be entitled to obtain

.   .   .

> To hold otherwise would produce the absurd result that when a fiduciary breach cause significant financial losses to a defined contribution plan thereby substantially diminishing the benefits payable to all of the plan's participants, affected employees who stay in the plan can bring an action to recover their lost benefits, while employees who retire and take a diminished distribution can recover nothing at all. That cannot be correct; either all affected employees have a "colorable claim" to recover benefits or none do. Certainly, if two participants with equal account balances incur equal losses on the same date, it would neither promote ERISA's remedial objectives nor comport with its broad definition of "participant," to find that the participant who had not yet retired retains standing to recover the losses sustained in his account, but that the participant who had actually received a retirement distribution, which was reduced to the same extent because of the exact same breach, did not have standing. Nothing in ERISA compels such an arbitrary or illogical result.

its judicial resolution. Standing focuses on a person's effort to get his complaint before a court and not on the issue he wishes to have adjudicated.

\* \* \* \* \* \*

*[The ultimate question is whether the plaintiff is] within the zone of interests ERISA was intended to protect.*

*Vartanian*, 14 F.3d at 701-702 (quoting *Astor*, 7 F.3d at 533, 538-39 (6th Cir.1993), (citations omitted) (emphasis in original); *see also Data Processing Service v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970).

The First Circuit then stated that: "The legislative history of ERISA indicates that Congress intended the federal courts to construe the Act's jurisdictional requirements broadly in order to facilitate enforcement of its remedial provisions:

> The enforcement provisions have been designed specifically to provide both the Secretary [of Labor] and participants and beneficiaries with broad remedies for redressing or preventing violations of the *[Act]···· The intent of the Committee is to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities* under state law or recovery of benefits due to participants.

> S.Rep. No. 127, 93d Cong., 2d Sess., 3 (1974), reprinted in 1974 U.S.C.C.A.N. 4639, 4871 (emphasis added).

*Vartanian*, 14 F.3d at 702;  Indeed, Congress set out to draft the statute with the primary purpose of ensuring "the equitable character of [employee benefit plans] and their financial soundness." *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 570 (1985) (quoting ERISA § 2(a) – Congressional Findings and Declaration of Policy").

In reaching its conclusion to grant standing to a former ERISA plan participant, the *Vartanian* court specifically relied on the fact that the plaintiff, *exactly like* the Evans Plaintiffs, was unaware of defendants' fiduciary breaches until after he had received a lump sum payment of his benefits and left the plan at issue.  *Vartanian*, 14 F.3d at 702.  The court explained its reasoning:

7

> To hold otherwise would imply that when an employer breaches its fiduciary duty to an employee under ERISA, the employee would have standing to sue only if the employee finds out all of the facts constituting the breach prior to his receipt of retirement benefits. Such a holding would enable an employer to defeat the employee's right to sue for a breach of fiduciary duty by keeping his breach a well guarded secret until the employee receives his benefits or, by distributing a lump sum and terminating benefits before the employee can file suit. The employee would have no standing to state a claim under ERISA, even where the employer's breach of fiduciary duty takes the form of misrepresentations that induced the employee to retire and receive the payment of benefits. Congress did not intend such unjust and arbitrary results.

*Vartanian*, 14 F.3d at 702.

Courts in this Circuit have utilized *Vartainian*'s ERISA "zone of interests" analysis to allow former plan participants (and fiduciaries) to bring suit for breaches of fiduciary duty which occurred while they were ERISA plan participants/fiduciaries. *See Sotiropoulos v. Travelers Indem. Co. of Rhode Island*, 971 F. Supp. 52, 54-55 (D. Mass. 1997) (citing *Vartanian* and *Astor*); *Duncan v. Santaniello*, 900 F. Supp. 547, 556-57); *cf. Eggert v. Merrimac Paper Co., Inc. Leveraged Employee Stock Ownership Plan and Trust*, 311 F.Supp.2d 245 (D. Mass. 2004) (allowing former participants of a defined contribution plan to sue plan fiduciaries pursuant to ERISA § 502(a)(2) for not providing an adequate security in a leveraged ESOP to allow full payment of benefits promised under the Plan).[7]

Taking Defendants' arguments to its logical conclusion, all an ERISA plan fiduciary would have to do to avoid ***any*** fiduciary liability for imprudent mismanagement of a plan and its assets is to suspend or terminate the plan and distribute whatever assets are left after being imprudently managed. This liability loophole, discussed in a different form below, cuts against the primary plan participant-protective purpose of ERISA, as noted above. Indeed, the Supreme Court has stated that guarding against the imprudent mismanagement of ERISA plan assets – as Evans Plaintiffs allege in this action – was the "crucible of congressional concern [when it was putting together the ERISA statute] . . and

---

[7]  District courts in other Circuits have cited to favorably and applied the *Vartanian* "zone of interests ERISA was intended to protect" test for evaluating a plaintiff's standing to bring breach of fiduciary claims in analogous situations. *See Gray v. Briggs*, 1998 WL 386177, * (S.D. N.Y. 1998); *Coan v. Kaufman*, 333 F.Supp.2d 14, 22-23 (D. Conn. 2004); *Wright v. Bosch Trucking Co.*, 804 F. Supp. 1069, 1072 (C.D. Ill. 1992).

that ERISA was designed to prevent those abuses in the future." *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 n.8 (1985). Courts in this district have specifically rejected this absurd reading of the participant-protective ERISA statute. *See Jackson v. Truck Drivers' Union Local 42 Health and Welfare Fund*, 933 F. Supp. 1124 (1996), where the Court tersely stated, in response to similar arguments by defendant-fiduciaries:

> The Court does not accept Defendants' reasoning. Read to its logical endpoint, the argument would hold that fiduciaries whose breach renders a plan insolvent and thus cause it to terminate immunize themselves from ERISA liability. "ERISA is a remedial statute designed to fashion anodynes that protect the interests of plan participants and beneficiaries." *Degnan v. Publicker Industries, Inc.*, 83 F.3d 27, 30 (1st Cir.1996). As the Supreme Court recognized in a post- Mertens opinion very recently handed down, "[g]iven these objectives, it is hard to imagine why Congress would want to immunize *1137 breaches of fiduciary obligation that harm individuals by denying injured beneficiaries a remedy." *Varity Corp. v. Howe*, 516 U.S. 489, ----, 116 S.Ct. 1065, 1078, 134 L.Ed.2d 130 (1996). Defendants' crabbed interpretation of §§ 409 and 502(a)(2) would leave plan beneficiaries such as Jackson remediless in the face of the most aggravated breaches of fiduciary duty that cause a plan to fail.

*Jackson*, 933 F.Supp. at 1137.

Indeed, the only directly relevant contrary authority from a First Circuit district court cited by Defendants is *LaLonde v. Textron*, 418 F. Supp. 2d D. R.I. 2006) ("*LaLonde*"). This case is discussed in the next section.

Application of the *Vartanian* "zone of ERISA interests" test to the Evans Plaintiffs, given the words and spirit of the statute, informing Supreme Court precedent and other district court decision, can only find that they have standing to bring their breach claims on behalf of the Plan.

3.    **Clear Weight of Directly Relevant Case Law Supports Evans Plaintiffs' Standing to Bring Suit on Behalf of the Plan for Defendants' Breaches of Fiduciary Duty**

Defendants' arguments against Evans Plaintiffs' standing boils down to the following – former participants of ERISA plans have no standing to bring claims for breaches of fiduciary duty pursuant to ERISA § 409, 502 because they do not have a "colorable claim to vested benefits," as required by *Firestone*, but are "seeking damages." Opp. Br. at 6-7. This conclusion is reached by

Defendants, for all intents and purposes, through a misreading of the seminal *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan*, 883 F.2d 345 (5th Cir. 1989) ("*Sommers*") case; a misreading shared by a recent string of district court opinions in directly analogous actions, two of which provide the backbone of "support" for Defendants' misreading of the law: *Lalonde*, and *Hargrave v. TXU Corp.*, 392 F. Supp.2d 785 (N.D. Tex. 2005) ("*Hargrave*").[8]

### 1.    *Sommers*

In *Sommers*, plaintiffs alleged that the plan's defendant fiduciaries had breached their fiduciary duties under ERISA by undervaluing shares of company stock held by an individual account/defined contribution plan. *Sommers*, 883 F.2d at 347. The Fifth Circuit ruled that plaintiffs – former plan participants who had their plan accounts balances distributed to them -- had standing to pursue the breach of fiduciary duty claims pursuant to ERISA § 502(a)(2) because they claimed that the distributions they had received from the plan did not reflect "the full amount of vested benefits due under the terms of the profit sharing plan, but was less, because the amount received for the shares was less than fair market value." *Id.* at 350.

As part of its analysis, Fifth Circuit in *Sommers* held that "a plaintiff who seeks the recovery for the trust of an unascertainable amount, with no demonstration that the recovery will directly effect payment to him, would state a claim for damages, not benefits." Id. at 350 (emphasis added). In contrast, the *Sommers* court stated that, in the case before them:

> [T]he class representatives claim that the amount received was not the full amount of vested benefits due under the terms of the profit sharing plan, but was less, because the amount received for the shares was less than fair market value. If the class prevailed on its claims, the representatives would be "eligible to receive a benefit" –

---

[8]  Defendants primarily cite/quote *LaLonde*, but it is the discussion/misreading of *Sommers* in the *Hargrave* decision that provides the crucial underpinning which allowed the *LaLonde* court to find that former participants of 401(k) plans such as the Plan did not have standing to sue for imprudent management of Plan assets pursuant to ERISA §§ 409, 502(a)(2) because they were suing for "damages" to the plan in question not "vested benefits." Other cases cited by defendants which involved directly analogous breach of fiduciary duty claims, also directly relied on the *Hargrave* court's analysis of *Sommers* when holding that former participants of the plans at issue had no standing. *See In re RCN Litigation*, 2006 WL 753148 (D. N.J. 2006); *Dickerson v. Feldman*, 2006 WL 838999 (S.D. N.Y. 2006)

the remainder of what was owed them and should have been paid to them at the time they received their lump sum settlement. . . . It is plain that here the class members seek their share of the difference between the price the representatives received for their shares and the fair market value of those shares at the time they were sold. In other words, the representatives have a claim for an ascertainable amount allegedly owed them at the time they received their lump sum. We do not believe that Congress intended to deny such plaintiffs standing to sue under ERISA.

*Id.*

It is here where Defendants and the courts in *LaLonde* and *Hargrave* misconstrue the nature of the "losses" which aggrieved plan participants such as the Evans Plaintiffs seek in these actions, as well as the benefits that would flow to such plan participants from successful prosecution of their ERISA claims.

### 2.    Defendants' Misreading/Misapplication of *Sommers*

As noted above, Defendants and the *LaLonde* court's interpretation of *Sommers* is the heart of their argument. Defendants' primary directly analogous authority is *LaLonde* and the *LaLonde* court's sole and central supporting authority for its view of *Sommers* is *Hargrave*.

The *Hargrave* court found that plaintiffs -- exact analogues of the Evans Plaintiffs for purposes of this standing discussion – bringing breach of fiduciary duty claims on behalf of a defined contribution plan for imprudent investment of Plan assets in employer securities, lacked standing to bring such claims due to their prior receipt of distributions upon leaving the plan. *Hargrave*, 392 F. Supp.2d at 789. The Court's holding was based on critical misreadings of *Sommers* . The *Hargrave* court differentiated *Sommers* as involving an allegation that the plan fiduciaries in *Sommers* had sold the plan's company stock and "held back some of the proceeds for themselves" – engaging in self-dealing through withholding plan assets which should have been distributed to the plaintiffs/former plan participants. *Id.*

The *Hargrave* court thus held that the plaintiffs lacked standing because they did not allege "that benefits were withheld, but that there should have been more benefits to go around." *Id*. at 789-

90.   However, contrary to the *Hargrave* court's analysis, *Sommers* did not involve any allegation of self-dealing by the plan's trustees; the *Sommers* plaintiffs simply alleged that the trustees had failed to act prudently in that they had sold the plan's company stock for less than fair market value. *Sommers*, 883 F.2d at 347.   Thus, "that there should have been more benefits to go around" was precisely the *Sommers* plaintiffs' claim:  they sought the difference between the price that the plan trustees obtained for the stock and the price that the trustees should have obtained for the stock.  In this case, the Evans Plaintiffs seek the difference between the investment returns/participant benefits the Plan (and its individual accounts) would have accumulated and the investment returns/Plan benefits that should have obtained (and distributed to Plan accounts and to participants' requesting full distributions upon leaving the Plan during and after the fiduciary breaches) if the Plan's fiduciaries had exercised of their duties of prudence and loyalty.

Building on the *Hargrave* court, the *LaLonde* court held and Defendants cite as the primary precedent supporting their arguments that:

> **The difference between vested benefits and damages, although not always easy to define, was explained by the court in *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan*, 883 F.2d 345 (5th Cir.1989) as follows:**
>
> Clearly, a plaintiff alleging that his benefits were wrongly computed has a claim for vested benefits. . . . On the other hand, a plaintiff who seeks the recovery for the trust of an unascertainable amount, with no demonstration that the recovery will directly effect payment to him, would state a claim for damages, not benefits.
> *Id.* at 350 **(finding the plaintiffs' claims were for vested benefits because they were "quite close to a simple claim that benefits were miscalculated").**

*LaLonde*, 418 F.Supp.2d at 21 (citing *Sommers*, 883 F.2d at 350). Opp. Br. at 7 (except for the bolded language).

> **In finding that the plaintiffs lacked standing, the *Hargrave* court concluded that, unlike in *Sommers*, the plaintiffs were not alleging that a portion of benefits were held back by the defendants. See *id.* at 789-90. Instead, the thrust of the plaintiffs' claims was that the value of their accounts was less than it should have been as a result of the defendants' imprudent investments. Id. These allegations, the court held, merely state "a claim for 'a sum that possibly could have been earned' if Defendants had made prudent investment decisions"; additional damages that**

**might have accrued, however, "are speculative and cannot be considered as vested under ERISA." Id. at 790; but cf. In re Williams Cos. ERISA Litig., 231 F.R.D. 416, 422-23 (N.D.Okla.2005) (granting class certification despite the fact that two named Plaintiffs were former plan participants alleging that, but for the alleged ERISA violations, their account balances would have been larger at the time of distribution).**

Similarly here, Plaintiffs do not claim that certain vested benefits were withheld or miscalculated, but rather, that Defendants' improper investment decisions concerning Textron stock resulted in a diminished Plan value. The difference between what their accounts actually earned and what they might have earned is not a benefit provided for, or promised under, the terms of the Plan. The remedy Plaintiffs are seeking is not the payment of a vested benefit, but a monetary damage amount for an alleged breach of a fiduciary duty. Ultimately, Plaintiffs received all benefits due to them under the Plan terms when they were transferred . . . At that point, without a reasonable expectation of returning to Textron as employees, and absent a colorable claim to vested benefits, they ceased to be participants under ERISA. Plaintiffs, therefore, do not have standing.

*LaLonde*, 418 F.Supp.2d at 22; Opp. Br. at 8 (Except for the bolded language).

Getting tripped up on the terms "damages" v. "benefits," Defendants and the *LaLonde* court make three critical missteps (understandable as they may be, given the complexity of ERISA jurisprudence): (1) as discussed above, "benefits" for participants in a defined contribution plan are equal to amounts in individual plan accounts invested in ***prudent*** vehicles according to the terms of the Plan and dictates of ERISA; (2) plaintiffs here and in *LaLonde* request replacement of Plan losses (the term "damages" is sometimes utilized to describe such losses, but that does not alter the inherent nature of the mismanaged assets as benefits to Plan participants); and (3) the losses to be recouped by the Plan if plaintiffs are victorious are just as "ascertainable" through expert analysis as the true "fair market value" of the plan assets in *Sommers* which involved stock in a privately-held company.

Simply put, the recovery of losses to a defined contribution plan such as the Plan pursuant to ERISA §§ 409, 502(a)(2) is meant to restore the amount of Plan assets, and therefore participant benefits, that would and should have been there except for Defendants' fiduciary breaches.[9] Indeed,

---

[9]  A number of Circuit court decisions have made clear that losses suffered by ERISA defined contribution plan due to imprudent investment of its assets are also losses to individual plan account holders.  *See Smith v. Sydnor*, 184 f.3d 356, 363 (4th Cir. 1999); *Roth v. Sawyer-Cleator Lumber Co.*, 61 F.3d 599, 605 (8th Cir. 1995); *see generally In re Schering-Plough Corp. ERISA Litigation*, 420 F.3d 231 (3rd Cir. 2005).

the Court in *Delta Star, Inc. v. Patton*, 76 F.Supp. 2d 617 (W.D. Pa.) made clear that recovery by an ERISA defined contribution plan of losses or "damages" caused by fiduciary breaches through a successful ERISA § 502(a)(2) claim would directly affect the level of "benefits" of the participants of the Plan:

> The Delta Star ESOP shall calculate the amount of damages suffered by individual retirees of the Delta Star ESOP due to the diminution in the value of Delta Star's common stock as a result of [the breaching fiduciary's conduct.] Once said amount has been calculated, Delta Star shall pay said amount to the Delta Star ESOP, from the amount ordered to be paid to it by [the breaching fiduciary] in this case. The Delta Star ESOP shall then pay to the individual retirees of the Delta Star ESOP *the additional benefits that were not paid to them under the Delta Star ESOP as a result of [the breaching fiduciary's] conduct.*

*Id.*, at 638 (emphasis added).

As to Defendants' characterization of Evans Plaintiffs' seeking "the recovery for the trust of an unascertainable amount, with no demonstration that the recovery will directly effect payment to him," Opp. Br., p. 7, (*citing LaLonde*, 418 F.Supp.2d at 21 (citing *Sommers*, 883 F.2d at 350), this averment is untenable for two reasons.

First, as is clear from Defendants' own Opposition Brief and Exhibits, both Evans Plaintiffs were participants in the Plan, with accounts invested in Grace stock, through the Class Period until April 2001 and June 2002, respectively. *See* Opp. Br., Exhibits A 1-4 to Declaration of John P. Forgach. On July 1, 1999, the start of the Class Period, Grace stock was trading at $19.19 (price adjusted for dividends and splits). When Plaintiff Whipps left the Plan, on April 27, 2001, Grace stock was trading at $1.56 per share. When Plaintiffs Evans left the Plan, on August 30, 2002, Grace stock was trading at $2.15 per share.[10]  By any measure, both Evans Plaintiffs were affected by

---

[10] Historical Grace share prices were obtained from http://finance.yahoo.com.

Defendants' alleged fiduciary breaches and would be aided by any recovery to the Plan resulting from this suit.[11]

Further, the Evans Plaintiffs would assert that estimating losses from mismanaged Plan assets involving publicly traded vehicles among a portfolio of investments – as would be the case here – is less complex and more "ascertainable" than that involving valuation of a plan's assets which were largely invested in non-public stock of the plan sponsor – as in *Sommers*.

Losses to a plan from breaches of the duty of prudence are measured by comparing the performance of the imprudent investments with the performance of a prudently invested portfolio. *See Cal. Ironworkers Field Pension Trust v. Loomis Sayles & Co.,* 259 F.3d 1036, 1048 (9th Cir. 2001); *Donovan v. Bierwirth,* 754 F.2d 1049, 1056 (2d Cir. 1985)*; Martin v. Feilen,* 965 F.2d 660, 671 (8th Cir. 1992), *cert. denied sub nom. Henss v. Martin,* 506 U.S. 1054 (1993)*; Leigh v. Engle,* 858 F.2d 361, 367 (7th Cir. 1988)*.* The *Defilice v. US Airways, Inc.*, 235 F.R.D. 70, 75 (E.D. Va. 2006) took pains the describe losses to the Plan analogous to those alleged here as being relatively easy to ascertain, stating *"*[t]he loss to the Plan's assets due to U.S. Airway's allegedly imprudent investment are concrete and actual."

The fair market value of a non-publicly traded stock like that at issue in *Sommers* is a matter not so easily established. Indeed, in an earlier decision by the Fifth Circuit in the *Sommers* litigation, the Fifth Circuit discussed at length an expert witness' failure to consider relevant factors when estimating the "fair market value" of the privately held stock at issue. *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.*, 793 F.2d 1456, 1460-1462 (5th Cir. 1986). The Fifth Circuit's detailed dissection/analysis of an expert's valuation methods and assumptions illustrates plainly that estimating the "ascertainable amount" of wrongly valued shares

---

[11] The Evans Plaintiffs further note that they could not have conceivably "brought suit with regard to any wrongdoing *before* they" took their full Plan distribution as Defendants blithely asserted.  Opp. Br., p. 5.  W.R. Grace did not even *begin* to warn Plan participants that Plan investments in Grace stock *may* not be prudent until at least April 9, 2003.  *See* Complaint, p. 20.

of employer stock in a privately-held company defined contribution plan is at least as difficult, and likely more complex, than estimating losses to a publicly held company's defined contribution plan from mismanagement of its assets. *Hargrave*'s critical damages v. benefits distinction is one that makes no difference.

> ### 3.   The Clear Weight of Directly Relevant Authority Refutes Defendants' Misreading/Misapplication of *Sommers*

Until *Hargrave*, the vast majority of directly analogous decisions held that former participants who were participants in a defined contribution/401(k) plan when alleged breaches of fiduciary duty caused losses to plan assets had standing to bring claims on behalf of the Plan for recovery of those losses to the plan pursuant to ERISA §§ 409, 502(a)(2).

A number of these cases specifically cited *Sommers* in upholding former plan participants' standing. *See, e.g., Kuper v. Quantum Chemical Corp.*, 829 F.Supp. 918, (S.D. Oh. 1993) (seminal case applying *Sommers* to a case analogous to instant one where former participants of a defined contribution plan allege that plan assets suffered losses due to the plan's imprudent investment in employer stock and those losses affected the amount of benefits they received upon leaving the Plan. The Court held, in pertinent part:

> [G]iven that the very basis of Plaintiffs' complaint is that the distribution of their ESOP shares did not represent "everything due them under the plan" when their participation terminated, . . . Plaintiffs' claim . . . appear(s) to be . . . factually analogous to the claim allowed in *Sommers*, *supra*, . . . Accordingly, the Court finds that, despite their receipt of all of their ESOP shares from Quantum's benefit plan, Plaintiffs herein do retain at least a "colorable" claim to a "benefit" of some type under the plan. *See Firestone*, 489 U.S. at 117, 109 S.Ct. at 958; 29 U.S.C. § 1002(7)

*Id.* at 923; *see also In re Mutual Funds Investment Litigation*, 403 F.Supp.2d 434, (D. Md. 2005) (discussing the basic holdings of *Sommers* and *Rankin* (discussed below), summarizing them by stating that "[w]hile the defendants correctly note that employers generally cannot force their former employees out of ERISA plans, the motivating principle in these cases is that employees should not forfeit a cause of action under ERISA to recover what is rightfully theirs under their plan by taking a

pay-out of what they incorrectly believe is all that is owed to them at the time. *See Vartanian v. Monsanto Co.*, 14 F.3d 697, 702 (1st Cir.1994)"); *In re Williams Cos. ERISA Litigation*, 231 F.R.D. 416, 422-23 (N.D. Ok. 2005) (certifying an exactly analogous class and holding that certain named plaintiffs, former participants in the plan at issue, were typical of all affected participants.  The Court noted that: Since any recovery from the Plan should be allocated to the accounts of affected participants, including those like Ziegler and Van Sickle who have taken a distribution from the Plan, these Plaintiffs and others similarly situated retain a "colorable claim to benefits" sufficient to confer on them standing to sue under 502(a)(2) and (3) as participants. *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 350 (5th Cir.1989)); *Olson v. Chem-Trend Inc.*, 1995 WL 866221, *4 (E.D. Mich 1995) (holding that: "[a]lthough by redeeming his [ESOP] shares, Plaintiff has 'terminated his right to belong' to the plan, because he alleges Defendant's breach of fiduciary duty caused him to give up rights to benefits still due to him, [plaintiff] . . . has a 'colorable claim to vested benefits,' [plaintiff] has standing to pursue his ERISA claims).

Other courts around the nation have reached similar conclusions in granting analogous former participants standing to bring claims for breach of fiduciary duty on behalf of ERISA plans pursuant to ERISA 409, 502(a)(2).  *See, e.g.*, *Rankin v. Rots*, 220 F.R.D. 511 (E.D. Mich. 2004) (certifying an exactly analogous class and holding that a named plaintiff/former participant was "typical" of the rest of the class and had standing to bring claims on behalf of the defined contribution plan at issue.  The court noted that:

> Here, Rankin had a vested benefit which, if defendants breached their fiduciary duties, might have affected her benefit. She therefore has standing to bring this action on behalf of the Plan. If the Plan prevails, then any recovery would likely affect the amount of Rankin's benefit.

*Id.* at 519. *See also  In re CMS Energy ERISA Litigation*, 225 F.R.D. 539, 544-555 (E.D. Mich 2004); *Sherrill v. Federal-Mogul Corp. Retirement Programs Committee*, 413 F.Supp.2d 842 (E.D. Mich. 2006); *Harpster v. Aarque Management Corp.*, 2005 WL 1719120, *6 (N.D. Oh. 2005)

**B.      Defendants' Arguments Regarding Certification of Plaintiffs' "Misrepresentation" Claim Also Fail**

Contrary to Defendants' specific argument, issues of individual reliance are not germane to this class certification motion.  "It is well established that individual issues of reliance do not thwart class actions."  *Rogers v. Baxter,* No. 04-CV-6476, 2006 WL 794734, at * 4 (N.D. Ill. March 22, 2006) (*citing Riordan v. Smith Barney*, 113 F.R.D. 60, 65 (N.D. Ill. 1986).  As discussed in further detail below, courts, including this Court, have certified class actions where plaintiffs alleged misrepresentation claims in ERISA breach of fiduciary duty cases.  This is particularly true in fact patterns analogous to the instant case where Evans Plaintiffs' misrepresentation claims are based direct and indirect communications from fiduciary Defendants, through SEC filings, press releases, annual reports, and other communications to the Plan's participants, *i.e.*, the communications distributed to the class as a whole as opposed to individual members.  Because the appropriate focus for class certification on this issue stems from Defendants' actions, and the Evans Plaintiffs allege only class-wide misrepresentations, there is no doubt that these claims may be properly certified.

Defendants' flawed argument begins on the wrong foot, because it starts with the assumption that Plaintiffs' conduct is at issue.  In a breach of fiduciary duty claim, it is defendants' conduct, not plaintiffs, that is at issue for class certification.  *Rogers v. Baxter International, Inc.*, 2006 WL 794734, at * 10, citing *In re Ikon Office Solutions, Inc.*, 191 F.R.D. 457, 465(E.D. Pa. 2000).  More importantly, courts have held that "[t]he focus of ERISA breach of fiduciary duty litigation is generally on the actions of the defendant, **even when misrepresentations are alleged, individual inquiry into each of the plaintiffs is not necessary**."  *In re: ADC Telecommunications, ERISA Litig.*, 2005 U.S. Dist. LEXIS 20224, at * 14 (D.Minn. Sept. 15, 2005), citing *In re CMS Energy ERISA Litig.*, 225 F.R.D. 539, 544 (E.D. Mich. 2004) (emphasis added).

While courts acknowledge that individualized issues of materiality or reliance may bar class certification in certain specific instances, they make a distinction between individualized

18

communications to class members and communications disseminated to the class as a whole. *See Rogers v. Baxter,* 2006 WL 794734, at * 4 (finding class certification appropriate where "alleged misrepresentations were made to class members in general and on a class-wide basis").[12]

Indeed, this Court, in a factually analogous case, rejected the argument that individualized issues of materiality and reliance preclude class certification of breach of fiduciary duty claims based on misrepresentation. *See Stein v. Smith*, No. 1:01-CV-10500-WGY, Electronic Endorsement, entered September 15, 2004, "The Objections to the Motion for Class Certification are Overruled and the Report and Recommendations of the Magistrate Judge is Adopted".[13] In *Stein*, the plaintiffs, former employees of Stone & Webster, Inc. ("Stone & Webster"), alleged, *inter alia*, that defendants, alleged fiduciaries of the Stone & Webster employee benefit plan and ESOP, through several "company-wide messages to employees," misrepresented the health of Stone & Webster and the value of its stock. *See Stein* Report and Recommendation, at p. 4 (In fact, Stone & Webster, like Grace, filed for bankruptcy pursuant to Chapter 11). The *Stein* Report and Recommendation certified the class pursuant to Fed. R. Civ. P. 23(b)(1)(A) and (B).

The *Stein* Report and Recommendation noted that commonality is generally a hurdle easily satisfied by merely showing that the named plaintiffs share a single question of fact or law with the prospective class. *Id.* at p. 6-7. The *Stein* Report and Recommendation also held that the existence of some factual differences among class claims will not defeat commonality. *Id.* at p. 7. The *Stein* Report and Recommendation rejected defendants' claims that commonality was lacking because

---

[12] *See also In re CMS Energy ERISA Litig.*, 225 F.R.D. at *12, (acknowledging distinction between statements to individual class members and misrepresentations to the class as a whole); *Furstenau v. AT&T Corp.*, 2004 U.S. Dist. LEXIS 27042 (D.N.J. Sept. 2, 2004); *Nelson v. IPALCO Enter., Inc.*, No. 02-CV-477, 2003 WL 23101792, at *5 (S.D. Ind. Sept. 30, 2003); *In re: ADC Telecomm., ERISA Litig.*, 2005 U.S. Dist. LEXIS 20224, at 14.

[13] Judge Young's Endorsement of Magistrate Judge Alexander's "Report and Recommendation of Plaintiffs' Motion for Class Certification," Docket Entry No. 88, August 4, 2004 ("*Stein* Report and Recommendation").

proof of detrimental reliance rendered plaintiffs' claims inappropriate for class treatment.[14]  *Id.* at p. 8-9. Moreover, the *Stein* Court noted that like *Rankin*, "the alleged misrepresentations were made to the entire class of participants." *Id.*

The facts of the instant case are analogous to *Stein* and *Rankin*.  Here, Plaintiffs have alleged that they and the putative class members share multiple questions of law *and* fact common to all prospective Class members. Cert. Mem., p. 12.  Furthermore, Plaintiffs' misrepresentation claims are based on communications made to the Plan participants, the putative class, as a whole and not to participants on an individualized basis.

**C.    The Proposed Class is Not Overly Broad**

Defendants incorrectly assert that Plaintiffs' proposed class is overbroad because it would include former plan participants who lack standing to pursue an ERISA claim.  As addressed in detail in Section A, above, a thorough review of the applicable case law demonstrates that individuals who are former participants in the plan do indeed have standing to participate in this class action. Accordingly, Defendants' argument on this point is without merit.

Furthermore, Courts can and do regularly approve settlements and plans of funds allocation where former participants were included in the division of relief.  In fact, this Court in *Stein v. Smith*, 1:01-cv-10500-WGY (2005), Docket Entry No. 146, entered an Order and Final Judgment that approved the plaintiffs' plan of allocation to former employees who were former participants in the bankrupt defendants' S&W Employee Investment Plan and S&W Employee Stock Ownership Plan. Under the approved plan of allocation, class members could either "(a) roll-over this or her allocable share . . . into an eligible individual retirement plan or (b) take a cash distribution. . ." *Stein v. Smith*, 1:01-cv-10500-WGY (2005), Docket Entry No. 140, at p. 6.

---

[14] Of note, the *Stein* Court addressed and disregarded defendants' case law purporting that proof of detrimental reliance defeats commonality, which included *Tootle v. Arinc, Inc.*, 222 F.R.D. 88 (D. Md. 2004), a case upon which the Grace Defendants also rely in the instant case to dismiss the Evans Plaintiffs' misrepresentation claims.

### III.    **CONCLUSION**

For the reasons set forth in the Evans Plaintiffs' Certification Memorandum and stated herein, this action should be certified as a class action under Rule 23(a), (b) and (g) of the Federal Rules of Civil Procedure on behalf of the Class described above.

DATED: June 15, 2006                    Respectfully submitted,


_____/s/ David Pastor_____
David Pastor (BBO # 391000)
GILMAN AND PASTOR, LLP
60 State Street, 37th Floor
Boston, MA 02109
Telephone: (617) 742-9700
Facsimile: (617) 742-9701

**[*Proposed Liaison Counsel*]**

            -and-

Joseph H. Meltzer
Edward W. Ciolko
Katherine B. Bornstein
SCHIFFRIN & BARROWAY LLP
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7057

**[*Proposed Class Counsel*]**

            -and-

Thomas J. Hart
SLEVIN & HART, P.C.
1625 Massachusetts Avenue, N.W.,
Suite 450
Washington, D.C. 20036
Telephone: 202-797-8700

***Attorneys for Plaintiffs Keri Evans and Timothy Whipps***