No. 05-17100

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JERRY VAUGHN and THERESA TRAVERS,

Plaintiffs-Appellants,

v.

BAY ENVIRONMENTAL MANAGEMENT, INC., CAESAR NUTI,
DENNIS VARNI, FSC SECURITIES CORPORATION, and
JERROLD N. WEINBERG,

Defendants-Appellees.

On Appeal from the United States District Court
for the Northern District of California

## BRIEF FOR THE SECRETARY OF LABOR AS AMICUS CURIAE
## SUPPORTING PLAINTIFFS-APPELLANTS

HOWARD M. RADZELY
Solicitor of Labor

TIMOTHY D. HAUSER
Associate Solicitor for
Plan Benefits Security

KAREN L. HANDORF
Counsel for Appellate and
Special Litigation

ELIZABETH HOPKINS
Senior Appellate Attorney
U.S. Department of Labor
200 Constitution Ave., N.W.
Room N-4611
Washington, D.C. 20210
(202) 693-5584

22500600006

# TABLE OF CONTENTS

Page

Statement of the issue ............................................................... 1

Interest of the Secretary of Labor ............................................ 1

Statement of the facts.............................................................. 2

Summary of the argument ....................................................... 5

Argument:

      Plaintiffs – who claim that fiduciary breaches caused a
      diminution in the amount of benefits they were paid
      when defendant Bay Environmental terminated the
      defined contribution plans in which they participated –
      have standing under ERISA to bring their suit ...................... 7

    A.    Plaintiffs have a colorable claim that alleged
           fiduciary breaches have affected their plan benefits
           and thus they meet the statutory standing criteria ..................... 9

    B.    Termination of the plans does not destroy standing................ 22

Conclusion ............................................................................... 24

Certificate of compliance......................................................... 25

Certificate of service................................................................ 26

Appendix:
    A.    Cunningham v. Adams, 106 F. App'x 693 (10th Cir. 2004)

    B.    Dickerson v. Feldman, ___ F. Supp. 2d ___, No. 04-7935,
           2006 WL 838999 (S.D.N.Y. Mar. 30, 2006), appeal docketed,
           No. 06-1616 (2d Cir. Apr. 5, 2006)

    C.    Flynn v. Ballinger, No. C 94-0190, 1994 WL 758662
           (N.D. Cal. May 9, 1994), aff'd, 76 F.3d 386 (9th Cir. 1996)

i

Appendix -- continued:

D.    Graden v. Conexant Sys., Inc., No. 05-0695, 2006 WL 1098233
      (D.N.J. Mar. 31, 2006) ), appeal docketed,
      No. 06-2337 (3d Cir. Apr. 27, 2006)

E.    Holtzscher v. Dynegy, Inc., No. 05-3293, 2006 WL 626402
      (S.D. Tex. Mar. 13, 2006) ), appeal docketed,
      No. 06-20297 (5th Cir. Apr. 18, 2006)

F.    In re Admin. Comm. ERISA Litig., No. C03-3302, 2005 WL 3454126
      (N.D. Cal. Dec. 16, 2005)

G.    In re RCN Litig., No. 04-5068, 2006 WL 753149
      (D.N.J. Mar. 21, 2006)

H.    Martin v. Harline, No. 87-NC-115J, 1992 WL 12151224
      (D. Utah Mar. 30, 1992)

## TABLE OF AUTHORITIES

Cases:                                                                                                    Page

Amalgamated Clothing & Textile Workers Union v. Murdock,
    861 F.2d 1406 (9th Cir. 1988) .............................................4 & passim

British Motor Car Distribs., Ltd. v. San Francisco Auto. Indus.
    Welfare Fund,
    882 F.2d 371 (9th Cir. 1989) ............................................... 23

Christopher v. Mobil Oil Corp.,
    950 F.2d 1209 (5th Cir. 1992) ........................................... 15

Crawford v. Lamantia,
    34 F.3d 28 (1st Cir. 1994) ................................................ 17

Cunningham v. Adams,
    106 F. App'x 693 (10th Cir. 2004) .................................16-17

Dickerson v. Feldman,
    ___ F. Supp. 2d ___, No. 04-7935, 2006 WL 838999
    (S.D.N.Y. Mar. 30, 2006), appeal docketed,
    No. 06-1616 (2d Cir. Apr. 5, 2006) ..................................... 18

Donovan v. Mazzola,
    716 F.2d 1226 (9th Cir. 1983) ...........................................21

Firestone Tire & Rubber Co. v. Bruch,
    489 U.S. 101 (1989) ............................................6 & passim

Flynn v. Ballinger,
    No. C 94-0190, 1994 WL 758662
    (N.D. Cal. May 9, 1994), aff'd,
    76 F.3d 386 (9th Cir. 1996)................................................. 4

Gilquist v. Becklin,
    675 F. Supp. 1168 (D. Minn. 1987), aff'd,
    871 F.2d 1093 (8th Cir. 1988) ........................................... 4

Cases – continued:                                                                Page

Graden v. Conexant Sys., Inc.,
    No. 05-0695, 2006 WL 1098233
    (D.N.J. Mar. 31, 2006), appeal docketed,
    No. 06-2337 (3d Cir. Apr. 27, 2006) .............................................17-18

Gruber v. Hubbard Bert Karle Weber, Inc.,
    675 F. Supp. 281 (W.D. Pa. 1987) ......................................22

Horn v. McQueen,
    353 F. Supp. 2d 785 (W.D. Ky. 2004) ................................23

Holtzscher v. Dynegy, Inc.,
    No. 05-3293, 2006 WL 626402
    (S.D. Tex. Mar. 13, 2006), appeal docketed,
    No. 06-20297 (5th Cir. Apr. 18, 2006) ..............................18

In re Admin. Comm. ERISA Litig.,
    No. C03-3302, 2005 WL 3454126
    (N.D. Cal. Dec. 16, 2005) .................................................18

In re Mut. Funds Inv. Litig.,
    403 F. Supp. 2d 434 (D. Md. 2005) ...................................20

In re RCN Litig.,
    No. 04-5068, 2006 WL 753149
    (D.N.J. Mar. 21, 2006) ......................................................18

Kayes v. Pac. Lumber Co.,
    51 F.3d 1449 (9th Cir. 1995) ...............................................5

Kuntz v. Reese,
    785 F.2d 1410 (9th Cir. 1986) ..............................3 & passim

LaLonde v. Textron, Inc.,
    418 F. Supp. 2d 16 (D.R.I. 2006), appeal docketed,
    No. 06-1546 (1st Cir. Apr. 3, 2006) ...................................18

Cases – continued:                                                                                    Page

Martin v. Feilen,
    965 F.2d 660 (8th Cir. 1992) ............................................................... 21

Martin v. Harline,
    No. 87-NC-115J, 1992 WL 12151224
    (D. Utah Mar. 30, 1992)....................................................................... 17

Mitchell v. Mobil Oil Corp.,
    896 F.2d 463 (10th Cir. 1990) ............................................................. 12

Mullins v. Pfizer, Inc.,
    23 F.3d 663 (2d Cir. 1994) .................................................................. 15

Nachman Corp. v. Pension Benefit Guar. Corp.,
    446 U.S. 359 (1980) ............................................................................. 7

Phillips v. Alaska Hotel & Rest. Employees Pension Fund,
    944 F.2d 509 (9th Cir. 1991) ............................................................... 14

Rankin v. Rots,
    220 F.R.D. 511 (E.D. Mich. 2004) ................................................. 19,20

Raymond v. Mobil Oil Corp.,
    983 F.2d 1528 (10th Cir. 1993) ........................................................... 15

Reich v. Valley Nat'l Bank,
    837 F. Supp. 1259 (S.D.N.Y. 1993) .................................................... 17

Secretary of Labor v. Fitzsimmons,
    805 F.2d 682 (7th Cir. 1986) ................................................................. 1

Sommers Drug Stores Co. Employee Profit Sharing
Trust v. Corrigan,
    883 F.2d 345 (5th Cir. 1989) ................................................ 6 & passim

Stanton v. Gulf Oil Corp.,
    792 F.2d 432 (4th Cir. 1986) ............................................................... 15

Cases – continued:                                                                    Page

    Swinney v. Gen. Motors Corp.,
        46 F.3d 512 (6th Cir. 1995) .................................................................... 15

    Wilson v. Bluefield Supply Co.,
        819 F.2d 457 (4th Cir. 1987) ................................................................. 14

    Yancy v. Am. Petrofina, Inc.,
        768 F.2d 707 (5th Cir. 1985) ................................................................. 12

Statutes and regulations:

    Employee Retirement Income Security Act of 1974,
        Title I, 29 U.S.C. §§ 1001 et seq.: ......................................................... 1

        Section 2(b), 29 U.S.C. § 1001(b) ...................................................... 8

        Section 3(7), 29 U.S.C. § 1002(7) ................................................ 6,8,13

        Section 3(34), 29 U.S.C. § 1002(34) .......................................... 6,10,11

        Section 404(a)(1), 29 U.S.C. § 1104(a)(1) .......................................... 3

        Sections 404-409, 29 U.S.C. §§ 1104-1109 ..................................... 1,3

        Section 409, 29 U.S.C. § 1109 ............................................................ 3

        Section 502, 29 U.S.C. § 1132 ............................................................ 5

        Section 502(a)(2), 29 U.S.C. § 1132(a)(2) ............................ 1,3,8,10,18

    Pension Annuitants Protection Act of 1994,
        Pub. L. No. 103-401, 108 Stat. 4172 .................................................... 5

Miscellaneous:                                                                                    Page

H.R. Rep. No. 93-533 (1974), reprinted in
    1974 U.S.C.C.A.N. 4639 ..............................................................20-21

2 Legislative History of the Employee Retirement
    Income Security Act of 1974 (Comm. Print 1976)..............................7

## STATEMENT OF THE ISSUE

The plaintiffs in this case are former employees of Defendant Bay Environmental, who participated in two terminated defined contribution plans sponsored by Bay Environmental. They claim that, prior to termination of these plans, and while they were still employees, the defendants breached their fiduciary duties to the plans and caused resulting losses that diminished their benefits. The question presented is whether, under these circumstances, the plaintiffs have standing to sue on behalf of the plans as "participant[s]" within the meaning of ERISA section 502(a)(2). 29 U.S.C. § 1132(a)(2).

## INTEREST OF THE SECRETARY OF LABOR

The Secretary of Labor has primary authority to interpret and enforce the provisions of Title I of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 et seq. 29 U.S.C. §§ 1104-1109; see also Secretary of Labor v. Fitzsimmons, 805 F.2d 682, 689-94 (7th Cir. 1986) (en banc) (Secretary's interests include promoting the uniform application of the Act, protecting plan participants and beneficiaries, and ensuring the financial stability of plan assets). The Secretary therefore has a strong interest in ensuring that ERISA is not interpreted to deny plaintiffs standing to sue to remedy fiduciary breaches that allegedly caused losses to the defined contribution plans in which they participated, merely because those plans were subsequently terminated and the

plans' assets distributed to the participants. If the allegations of the complaint are correct, there was a loss to the plans occasioned by the breaches of the fiduciaries and a corresponding diminution in the amount of benefits the plaintiffs received when the plans were terminated. Because the plaintiffs thus have a "colorable claim" to increased benefits based on these losses, ERISA cannot be read to deny them standing to sue.

## STATEMENT OF THE FACTS

1.     This ERISA case was brought as a class action by Jerry Vaughn and Theresa Travers, former employees of Defendant Bay Environmental. Excerpts of Record (E.R.) 14. Bay Environmental sponsored two pension plans – the Bay Environmental Pension Plan (Pension Plan) and the Bay Environmental Retirement Plan (Retirement Plan) – both of which were defined contribution or individual account plans under ERISA. E.R. at 14, 16. The Pension Plan was a money purchase plan that did not allow for participant-directed investments, while the Retirement Plan had both a profit-sharing plan component, under which only the employer contributed, and a 401(k) component, under which employees could elect to contribute and could chose among an array of investment options. Vaughn and Travers participated in both plans during the relevant period.

The trustees voted to terminate both plans in 2000 or early 2001 at roughly the same time that the parent company of Bay Environmental was purchased by

2

another company. The plans' investments were then liquidated to cash in August 2001, and the proceeds distributed to plaintiffs some time in 2002. E.R. 15.

The plaintiffs brought suit under ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2), for relief under ERISA sections 404(a)(1) and 409, 29 U.S.C. §§ 1104(a)(1), 1109. E.R. 10-12 ¶¶ 56-67. They allege that the plans' fiduciaries violated their duties in two ways: (1) by failing to transfer the plans' assets from risky equity investments once they knew that the plans would be terminated, into investments more appropriate for the shorter time-horizons (a factor that the fiduciaries were required to consider under the express plan terms) (E.R. 7, 11 ¶¶ 39, 60-61); and (2) by imprudently investing the plans' assets regardless of whether the plans were going to terminate (E.R. 12 ¶¶ 66-67). They claim that the former breaches actually resulted in a reduction of the plans' total assets, while the latter breaches caused losses to the plans in the sense that they had significantly lower returns than they would have earned had their assets been more prudently invested.

The defendants moved to dismiss, arguing that the plaintiffs are not "participants" under ERISA and thus lack standing to bring their suit because the plans were terminated and their proceeds fully distributed to plaintiffs in 2002. Relying on this Court's per curiam decision on rehearing in <u>Kuntz v. Reese</u>, 785 F.2d 1410 (9th Cir. 1986), the defendants argued that the plaintiffs seek only damages, and do not have a colorable claim to benefits.

3

The plaintiffs countered that, unlike the situation in <u>Kuntz</u>, because the plans at issue here were defined contribution plans, the participants' benefits are determined by the value of the plans' assets. Thus, the plaintiffs argued that they have a colorable claim to the increased benefits that would result from a recovery of plan losses from the breaching fiduciaries.

2.    In an order dated September 26, 2005, the district court granted the defendants' motion to dismiss. E.R. 14-19. The court rejected the plaintiffs' attempt to limit the holding of <u>Kuntz</u> to cases where the plaintiffs have received their full benefits under a defined benefit plan. The court noted that neither <u>Kuntz</u> nor any other Ninth Circuit case has distinguished between defined benefit and defined contribution plans in determining standing. E.R. 18. The court instead relied on two district court decisions that applied the <u>Kuntz</u> holding to cases involving defined contribution plans. E.R. 17 (citing <u>Flynn v. Ballinger</u>, No. C 94-0190, 1994 WL 758662, at *2 (N.D. Cal. May 9, 1994), <u>aff'd</u>, 76 F.3d 386 (9th Cir. 1996) (attached as Appendix C to this brief), and <u>Gilquist v. Becklin</u>, 675 F. Supp. 1168, 1170-71 (D. Minn. 1987), <u>aff'd</u>, 871 F.2d 1093 (8th Cir. 1988) (table)).

The district court acknowledged that the Ninth Circuit has limited the applicability of <u>Kuntz</u> and found participant standing in two situations where participants had already been given their benefits. E.R. 16. First, in <u>Amalgamated Clothing & Textile Workers Union v. Murdock</u>, 861 F.2d 1406 (9th Cir. 1988), the

4

Ninth Circuit found standing where plaintiffs sought disgorgement of ill-gotten plan assets from breaching fiduciaries of a terminated plan. Id. Second, in Kayes v. Pacific Lumber Co., 51 F.3d 1449 (9th Cir. 1995), the Ninth Circuit found that plaintiffs had standing under the Pension Annuitants Protection Act of 1994, Pub. L. No. 103-401, 108 Stat. 4172 (codified as amended at 29 U.S.C. 1132), "to seek relief where, as here, a fiduciary breach has occurred involving the purchase of insurance contracts . . . in connection with their termination as plan participants." 51 F.3d at 1455. The district court found, however, that neither of those two exceptions pertained in this case. E.R. 18.

The court thus concluded that "[o]nce Plaintiffs received their lump sum payments from the Plans' assets in 2002, they were no longer 'participants' under ERISA" and therefore "lack standing to pursue their ERISA claims." E.R. 19. Accordingly, the district court granted the defendants' motion to dismiss with prejudice. This appeal followed.

## SUMMARY OF THE ARGUMENT

Plaintiffs have standing under ERISA to sue as former employees who seek to recover losses to be paid to the two Bay Environmental defined contribution plans in which they participated, or to successor trusts set up for that purpose.

1.    ERISA allows plan participants to sue to remedy fiduciary breaches, and it defines "participant" as "any employee or former employee of an employer

. . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer." 29 U.S.C. § 1002(7). The Supreme Court in <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 117-18 (1989), and this Court in <u>Kuntz v. Reese</u>, 785 F.2d 1410 (9th Cir. 1986), have stated that former employees have standing under this definition where they have a "colorable claim" to plan benefits. The plaintiffs have just such a claim here.

The plaintiffs' claim is that fiduciary breaches caused losses to the plan, and, because their benefits under these defined contribution plans are linked directly to the performance of the plans' assets, 29 U.S.C. § 1002(34), caused a corresponding diminution in the amount of the benefits that they received upon pay-out. This case is therefore analogous to <u>Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan</u>, 883 F.2d 345, 350 (5th Cir. 1989), where the court correctly held that plaintiffs had standing to sue on behalf of a liquidated defined contribution plan, because if the plaintiffs prove their claim they will be eligible to receive an increased benefit – the additional amount that they would have received at distribution if the defendants had not breached their fiduciary duties. ERISA's primary remedial goal to protect individual pension rights and to ensure that retirees receive the pensions to which they are entitled requires that former

6

employees who have not received all of the benefits to which they are entitled be able to bring suit to make them whole.

2. Nor is there any significance to the fact that the plans have been terminated. There is no merit to defendants' argument made below that, even if plaintiffs have colorable claims, they cannot sue on behalf of a terminated plan. This Court in <u>Murdock</u>, like the Fifth Circuit in <u>Sommers</u>, found that plaintiffs who have a colorable claim can sue on behalf of a terminated plan. If the plaintiffs here are successful, the district court may set up constructive or successor trusts to distribute the assets to the participants and beneficiaries.

## ARGUMENT

PLAINTIFFS – WHO CLAIM THAT FIDUCIARY BREACHES CAUSED A DIMINUTION IN THE AMOUNT OF BENEFITS THEY WERE PAID WHEN DEFENDANT BAY ENVIRONMENTAL TERMINATED THE DEFINED CONTRIBUTION PLANS IN WHICH THEY PARTICIPATED – HAVE STANDING UNDER ERISA TO BRING THEIR SUIT

Congress enacted ERISA following the economic collapse of the Studebaker-Packard Corporation as a direct response to the inadequacies of the existing pension laws, which failed to ensure that the terminated Studebaker employees received the pensions that they had been promised. <u>Nachman Corp. v. Pension Benefit Guar. Corp.</u>, 446 U.S. 359, 374 (1980) (quoting, 2 <u>Legislative History of ERISA</u> at 1599 (Comm. Print 1976) (statement of Sen. Williams, one of the chief sponsors of the bill)). In enacting ERISA, Congress thus sought "to

protect . . . the interests of participants in employee benefit plans . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries of [such] plans," and by "providing for appropriate remedies, sanctions, <u>and ready access to the Federal courts</u>." 29 U.S.C. § 1001(b) (emphasis added).

To this end, ERISA's comprehensive civil enforcement scheme provides, in section 502(a)(2), 29 U.S.C. § 1132(a)(2), that "[a] civil action may be brought" by a plan "participant" to obtain "appropriate relief " under the section of ERISA (section 409, 29 U.S.C. § 1109) that makes a breaching plan fiduciary personally liable to the plan for any losses stemming from its breaches. Moreover, to serve its broad remedial purposes, the statute broadly defines "participant" as "any employee or former employee of an employer . . . who is or may be eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer." 29 U.S.C. § 1002(7).

As we demonstrate, the plaintiffs here are "participant[s]" within the meaning of the statute because they are "former employees" who claim that they received less than all of the benefits to which they are entitled because the defendants' fiduciary breaches caused losses to the plans. Thus, they may sue under section 502(a)(2) as former employees who seek to recover losses to be paid to the two Bay Environmental defined contribution plans in which they participated (or to successor trusts set up for that purpose).

8

Defendants essentially claim that when former employees receive a payment of benefits – no matter how far short it falls of the benefits to which they are actually entitled – it deprives them of standing to sue under ERISA. That position cannot be squared with the text of ERISA or the Supreme Court's decision in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989), and would produce the absurd result that employees could be deprived of the right to sue simply by giving them a payment of benefits that is less than all of the benefits to which they are entitled. Plaintiffs clearly have standing under ERISA to assert their claim for augmented benefits, and defendants' position must be rejected.

A.    Plaintiffs have a colorable claim that alleged fiduciary breaches have affected their plan benefits and thus they meet the statutory standing criteria

In Firestone , 489 U.S. at 117, the Supreme Court considered the statutory definition of "participant" in the context of a suit to enforce ERISA's plan document disclosure provisions. Citing this Court's decision in Kuntz v. Reese, 785 F.2d 1410 (9th Cir. 1986), the Supreme Court held that, in order to be considered a participant, an employee must either have "a reasonable expectation of returning to covered employment" or "a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." 489 U.S. at 117-18. The plaintiffs here have just such a claim that they received reduced benefits as a result of fiduciary misconduct. This alleged misconduct occurred when plaintiffs were still employees accruing benefits under

9

the plans, and the relief that they seek (restoration of losses to the plans), if granted, would lead to an upward adjustment of the plan benefits that they have received.[1] The plaintiffs thus have colorable claims to benefits under the <u>Firestone</u> criteria.

Significantly, the plaintiffs in this case are participants in two defined contribution or individual account plans. Under such plans, "benefits [are] based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34). Thus, the amount of participants' vested benefits in a defined contribution plan increases in direct proportion to any increase in plan assets, and diminishes in proportion to any losses.

---

[1] Here, the complaint expressly requests that any losses recovered for the plans under section 502(a)(2) be distributed as benefits to the plaintiffs. <u>See</u> E.R. 13 ¶ C (Prayer For Relief) (asking that the court "[o]rder the establishment of a successor trust for benefits owing to participants and beneficiaries whose Plan accounts have been distributed"). It is not necessary, however, for plaintiffs to bring a claim such as this both as a benefits claim and as a claim for plan losses under ERISA section 502(a)(2) in order to have standing. The issue is not whether the plaintiffs have brought a claim for benefits, but whether the former employees "may be eligible to receive a benefit," and thus are participants with standing to bring the claim. Plaintiffs such as Vaughn and Travers, who seek to recover losses to their defined contribution plans stemming from alleged fiduciary breaches that took place while they employees, necessarily "may be eligible to receive a benefit" because any recovered plan assets must be allocated among the individual accounts of the participants and directly affect the amount of benefits they receive.

As participants in ERISA-covered defined contribution plans, the plaintiffs were entitled to a distribution of the earnings in their accounts as managed by plan fiduciaries in accordance with ERISA's fiduciary obligations. If, as the plaintiffs allege, they received smaller distributions than they would otherwise have received as a result of the defendants' fiduciary breaches, they have yet to obtain all of the benefits to which they were entitled under ERISA, and have standing to bring suit as plan participants. In seeking restoration to the Bay Environmental Plans for alleged fiduciary breaches that took place before their disbursement of benefits, the plaintiffs seek amounts that can and should be allocated in a manner that ultimately augments their individual benefits. These amounts are precisely the "benefits" to which a plan participant in a defined contribution plan is entitled under ERISA. 29 U.S.C. § 1002(34). Thus, the plaintiffs have a colorable claim to benefits within the meaning of Firestone and Kuntz that gives them standing to bring a fiduciary breach claim seeking to restore losses to the plans.

Indeed, the plaintiffs in this case have standing to sue for precisely the same reason as the plaintiffs had standing in Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan, 883 F.2d 345, 348-50 (5th Cir. 1989). In Sommers, the court held that plaintiffs who had been participants in a terminated defined contribution, profit-sharing plan had standing to bring an ERISA action against fiduciaries for losses allegedly resulting from the sale of the trust's stock for less

11

than fair market value. The Fifth Circuit reasoned that this claim was akin to a claim by a former participant for miscalculated benefits, and thus concluded that the plaintiffs had a colorable claim to vested benefits even though they had already received a lump-sum distribution from the terminated plan. Id. at 349-50.

The plaintiffs in this case seek relief that clearly could affect the amount of benefits to which they were entitled at plan termination, as did the plaintiffs in Sommers. The plaintiffs were participants in the Pension and Retirement Plans when alleged fiduciary breaches occurred that they claim caused losses to the plans. See E.R. 8 ¶ 48. Just as in Sommers, the plaintiffs here allege that their benefits on termination were adversely affected by the fiduciaries' imprudence and disloyalty and, if the plaintiffs are successful in their suit and losses to the plans are restored, their benefits should be augmented. See E.R. 13 ¶ D (Prayer For Relief).[2] Thus, despite having received benefits on plan termination, the plaintiffs have

---

[2] For this same reason, the claims in this case are easily distinguishable from the claims at issue in the Fifth Circuit's earlier decision in Yancy v. American. Petrofina, Inc., 768 F.2d 707 (1985) and the Tenth Circuit's decision in Mitchell v. Mobil Oil Corp., 896 F.2d 463 (1990). In Yancy, the plaintiff argued that a planned change in the plan's method for calculating lump sum benefits caused him to retire before he otherwise would have, and to forego additional wages and corresponding benefits that he would have earned. 768 F.2d at 708-09. Similarly, the plaintiffs in Mitchell received all the benefits to which they were entitled, but complained that they had been deprived by fiduciary breaches of the opportunity to accrue additional benefits that he would have earned had they remained in employment. 896 F.2d at 474. Thus, unlike the claims for additional benefits made by Vaughn and Travers in this case, the plaintiffs in Yancy and Mitchell indisputably had received all the benefits that were due them, and thus did not have a colorable claim to benefits under Firestone.

colorable claims that they are still "eligible to receive a benefit of any type" from the plans and accordingly are "participant[s]" for purposes of ERISA standing. 29 U.S.C. § 1002(7).

To hold otherwise would produce the absurd result that when a fiduciary breach cause significant financial losses to a defined contribution plan thereby substantially diminishing the benefits payable to all of the plan's participants, affected employees who stay in the plan can bring an action to recover their lost benefits, while employees who retire and take a diminished distribution can recover nothing at all. That cannot be correct; either all affected employees have a "colorable claim" to recover benefits or none do. Certainly, if two participants with equal account balances incur equal losses on the same date, it would neither promote ERISA's remedial objectives nor comport with its broad definition of "participant," to find that the participant who had not yet retired retains standing to recover the losses sustained in his account, but that the participant who had actually received a retirement distribution, which was reduced to the same extent because of the exact same breach, did not have standing. Nothing in ERISA compels such an arbitrary or illogical result.

The district court erroneously believed that because the plans were terminated and the plaintiffs received a final disbursement of vested benefits, their statutory standing is foreclosed by this Court's <u>Kuntz</u> decision. <u>Kuntz</u>, however,

13

involved a defined benefit plan. <u>See</u> <u>Amalgamated Clothing & Textile Workers</u> <u>Union v. Murdock</u>, 861 F.2d 1406, 1410 (9th Cir. 1988) ("In <u>Kuntz</u> we held that plan participants and beneficiaries have no standing to seek <u>monetary</u> <u>damages</u> for breach of fiduciary duty after they receive their contractually defined and vested benefits from an ERISA plan.") (emphasis in original). Such a plan is one that is "designed and administered to provide fixed – or 'defined' – benefits to the participants based on a benefit formula set forth in the Plan." <u>Wilson v. Bluefield</u> <u>Supply Co.</u>, 819 F.2d 457, 459 (4th Cir. 1987); <u>accord</u> <u>Phillips v. Alaska Hotel &</u> <u>Rest. Employees Pension Fund</u>, 944 F.2d 509, 512 (9th Cir. 1991). In that context, this Court held that former employees who, at the time suit was filed, had received all of their vested benefits in a defined benefit plan, but who contended that the defendants had misrepresented their level of benefits, lacked standing under ERISA. <u>Kuntz</u>, 785 F.2d at 1411. There were no allegations in <u>Kuntz</u> that the amount of the plaintiffs' benefits had been reduced or in any way impaired by the alleged fiduciary misconduct. Instead, because the plaintiffs, as participants in a defined benefit plan, received benefits at the correct level on retirement, the court there concluded that, as a factual matter, even "if successful, the plaintiffs' claim would result in a damage award, not in an increase of vested benefits." <u>Id.</u> The plaintiffs had already received every dollar they were entitled to receive under the terms of the plan. In contrast, the plaintiffs here allege that, because fiduciary

14

breaches cause losses to the plans while they were employees accruing benefits under the plans, they did not receive all the benefits to which they were entitled at the time of distribution.

Moreover, as the Fifth Circuit correctly recognized in Sommers, 883 F.2d at 349, Kuntz clearly did not hold, or even imply, that a plaintiff lacks standing whenever he has received a "final" disbursement from a pension plan. In Murdock, 861 F.2d at 1418-19, this Court considered participant standing in the context of plan termination and held that plan fiduciaries could not immunize themselves from liability under ERISA by the expedient of terminating a plan and distributing all actuarially vested benefits. Murdock held that plaintiffs who had received all of their actuarially vested benefits from a terminated defined benefit plan nevertheless had standing to seek a constructive trust over ill-gotten gains obtained by a plan fiduciary through a fiduciary breach prior to termination of the plan and distribution of its benefits. Id. at 1409. [3] The Court concluded that, in

---

[3] Thus, in Murdock, this Court addressed standing in the context of a case where the plaintiffs would still be active employees and participants "but for" the alleged breaches. See Murdock, 861 F.2d at 1418. Other courts of appeals have adopted a similar "but for" test applicable to cases where the plaintiffs claims that the challenged fiduciary breaches led to their status as former plan participants. See Swinney v. Gen. Motors Corp., 46 F.3d 512, 519 (6th Cir. 1995); Mullins v. Pfizer, Inc., 23 F.3d 663, 667-68 (2d Cir. 1994); Christopher v. Mobil Oil Corp., 950 F.2d 1209, 1221 (5th Cir. 1992); but see Raymond v. Mobil Oil Corp., 983 F.2d 1528, 1536 (10th Cir. 1993) (reasoning that "[t]o say that but for [the employer's] conduct, plaintiffs would have standing is to admit that they lack standing"); Stanton v. Gulf Oil Corp., 792 F.2d 432, 435 (4th Cir. 1986) ("The effect of

seeking to recover such ill-gotten gains, the plaintiffs were "participants" seeking to establish their eligibility to "equitably vested" benefits. Id. at 1419.

The same is true of the plaintiffs here, who seek, through the plans or successor trusts, to recover the equitably vested benefits that they would have received at termination but for the defendants' alleged breaches. E.R. 13 ¶ D (Prayer For Relief). The plaintiffs here have every bit as colorable a claim as did the plaintiffs in Murdock that they are entitled to additional benefits, and it would be at least as contrary to ERISA to deny them standing to sue.

Other courts of appeals that have denied standing to former employee-participants in a defined contribution plan have done so where, according to the courts, the plaintiffs suffered no injury and thus no diminution in benefits  See Cunningham v. Adams, 106 F. App'x 693, 696 (10th Cir. 2004) (holding that plaintiff could not demonstrate how he had been injured by the defendant's actions in taking a distribution of the amounts in the defendant's own individual account, and thus could not establish "injury in fact" for purposes of constitutional standing) (attached as Appendix A to this brief); Crawford v. Lamantia, 34 F.3d 28, 33 (1st

---

reading in a 'but for' test is to impose participant status on every single employee who but for some future contingency may become eligible.") (emphasis omitted). While this case does not present a "but for" situation, nor does it involve the recovery of ill-gotten profits, it does present a situation, distinguishable from Kuntz, where former employees are seeking a recovery that ultimately will increase the benefits to which they are entitled.