Cir. 1994) (holding that a former employee who had already received a distribution of all the benefits due him from an employee stock ownership plan (ESOP) had no standing to bring suit against the trustees for purchasing employer stock at an excessive price because "plaintiff ha[d] failed to show that [the] defendants' . . . breach of fiduciary duty had a direct and inevitable effect on <u>his</u> benefits") (emphasis in original).[4] These cases are thus distinguishable from the present matter, where the plaintiffs allegedly have suffered a diminution in benefits.

Recent district court decisions that have held that standing under ERISA does not extend to plaintiffs, like Vaughn, who took distributions of their benefits before filing suit for fiduciary breach, have not accounted for the nature of benefits under a defined contribution plan, and for that reason are wrongly decided. <u>See, e.g.</u>, <u>Graden v. Conexant Sys., Inc.</u>, No. 05-0695, 2006 WL 1098233 (D.N.J. Mar.

---

[4] Any suggestion to the contrary in <u>Crawford</u> notwithstanding, participants in ESOPs do suffer a loss if trustees cause the plan to acquire stock at an inflated price. <u>See</u> <u>Reich v. Valley Nat'l Bank</u>, 837 F. Supp. 1259, 1274 (S.D.N.Y. 1993) (rejecting a similar argument, holding that "[i]f the investment [decision] is not prudent, the fiduciary duty owed by Valley is not to invest"); <u>Martin v. Harline</u>, No. 87-NC-115J, 1992 WL 12151224, at *16 (D. Utah Mar. 30, 1992) (holding that overpayment for employer stock resulted in losses which "include the difference between the price paid by the plan for the shares purchased . . . and the fair market value of the shares, plus interest on the purchase price from the date of each transaction to the present") (attached as Appendix H to the brief). Furthermore, the court in <u>Crawford</u> was wrong to require the plaintiff to show a "direct and inevitable effect on his benefits" in order to establish standing. Under <u>Firestone</u>, in order to establish statutory standing, a litigant need only show that he has a "colorable claim" that there has been an adverse effect on his benefits from the alleged breach.

31, 2006), appeal docketed, No. 06-2337 (3d Cir. Apr. 27, 2006) (attached as Appendix D to this brief); Dickerson v. Feldman, ___ F. Supp. 2d ___, No. 04-7935, 2006 WL 838999 (S.D.N.Y. Mar. 30, 2006), appeal docketed, No. 06-1616 (2d Cir. Apr. 5, 2006) (attached as Appendix B to this brief); In re RCN Litig., No. 04-5068, 2006 WL 753149 (D.N.J. Mar. 21, 2006) (attached at Appendix G to this brief); Holtzscher v. Dynegy, Inc., No. 05-3293, 2006 WL 626402 (S.D. Tex. Mar. 13, 2006), appeal docketed, No. 06-20297 (5th Cir. Apr. 18, 2006) (attached at Appendix E to this brief); LaLonde v. Textron, Inc., 418 F. Supp. 2d 16 (D.R.I. 2006), appeal docketed, No. 06-1546 (1st Cir. Apr. 3, 2006); In re Admin. Comm. ERISA Litig., No. C03-3302, 2005 WL 3454126 (N.D. Cal. Dec. 16, 2005) (attached as Appendix F to this brief).

Moreover, a number of these decisions, including the decision below, incorrectly focus on the distinction between a claim for damages, as in Kuntz, and a claim for benefits, as in Sommers. E.R.18; see also, e.g., Graden, 2006 WL 1098233, at *3-*5. In some sense, all plaintiffs who sue to recover plan losses under ERISA section 502(a)(2) seek "damages" on behalf of the plan. But where plaintiffs claim, as did the plaintiffs in Sommers, and as do the plaintiffs here, that they received less than all of the benefits to which they are entitled as a direct result of a fiduciary breach that caused losses to their plans, they clearly also state a colorable claim for benefits. The same cannot be said of the plaintiffs in Kuntz,

18

however, because by the time that they filed their lawsuit they had already indisputably received every dollar of benefit to which they were entitled; any further recovery they might have obtained would have been in the form of damages only.

Two recent district court decisions have correctly analyzed the issue and concluded that plaintiffs similar to Vaughn do have standing under ERISA. For instance, the court in Rankin v. Rots, 220 F.R.D. 511, 519-20 (E.D. Mich. 2004), held that a former employee of Kmart had standing to bring suit against the bankrupt company's officers and directors alleging breaches of fiduciary duties in connection with Kmart stock held by the company-sponsored 401(k) plan. The court noted that the plaintiff "was a participant in the Kmart plan during the time when the alleged breaches of fiduciary duty occurred." Id. at 519. The court thus declined to hold that the plaintiff lacked standing under such circumstances, noting that such a holding "would permit Kmart to exclude potential class members by simply paying them their vested benefits." Id. at 519-20. Thus, the court correctly recognized that denying standing to a plaintiff in such a case would raise the same kinds of perverse incentives that the court found problematic in Murdock, 861 F.2d at 1418 ("It would be ironic if the very acts of benefit payment and plan termination that allegedly resulted in a fiduciary personally obtaining ill-gotten profits should also serve to deny plan beneficiaries standing to seek a constructive

trust on those profits to redress the fiduciaries' alleged breach of the duty of loyalty.").

Similarly, the District Court of Maryland found that a named plaintiff who "is a former employee who has accepted a lump-sum pay-out (or rollover) of his vested benefits" had standing to sue. In re Mut. Funds Inv. Litig., 403 F. Supp. 2d 434, 441 (2005). Noting that the plaintiffs argued that "the defendants' breaches of fiduciary duty diminished the value of the shares in the mutual fund families in which their retirement accounts were invested, . . . and thus they received less money than they were entitled to when they left the Plans," the court concluded that their claims were closely analogous to those in Sommers and in Rankin. Id. The court thus correctly rejected a reading of the statute that would cause employees to "forfeit a cause of action under ERISA to recover what is rightfully theirs under their plan by taking a pay-out." Id. at 442.

Here the plaintiffs have a colorable claim that the defendants breached their fiduciary duties, thereby causing losses to the plans and a concomitant diminution in the amount of benefits they received on distribution. This fully satisfies the requirements for standing as established by Firestone and Kuntz.

A more cramped reading of ERISA's standing requirements would undermine the remedial goals of ERISA, "[t]he primary purpose of [which] is the protection of individual pension rights." H.R. Rep. No. 93-533, at 1 (1974),

reprinted in 1974 U.S.C.C.A.N. 4639, 4639; see also Martin v. Feilen, 965 F.2d 660, 671 (8th Cir. 1992) (one of ERISA's basic remedies for a breach of fiduciary duty is "to restor[e] plan participants to the position in which they would have occupied but for the breach of trust") (internal quotation marks omitted; court's alteration). As in Murdock, there is no cause to read the term "participant" so as to close the courthouse doors to retirees like the plaintiffs here, who claim that they received diminished pensions because of the defendants' breaches. See Donovan v. Mazzola, 716 F.2d 1226, 1232 (9th Cir. 1983) (fiduciaries personally liable to make good plan losses stemming from breaches where the district court properly concluded that the fiduciaries did not employ "the appropriate methods to investigate the merits of the investment and to structure the investment"). It is inconsistent with ERISA to hold, as the district court did, that retirees who claim that they received less than they were due because of fiduciary breaches with regard to mismanagement of pension plan assets – precisely the type of plaintiffs that the statute was designed to protect and the type of misconduct that the act was designed to prohibit – do not have standing under ERISA to sue. Because such plaintiffs present a colorable claim that they are entitled to additional vested benefits under their defined contribution plans, they have standing under the statute.

B.     Termination of the plans does not destroy standing

Defendants also argued below that even plaintiffs whose claims will lead to additional benefits lack standing if their plan has been terminated. This Court's decision in Murdock disposes of this argument. In Murdock, this Court concluded that plaintiffs had standing to sue, despite the fact that the plan at issue had been terminated. Indeed, in concluding that the suit could go forward, the Court relied, in part, on its view that a constructive trust imposed on the breaching fiduciary's ill-gotten profits in favor of the participants and beneficiaries could be viewed as a "benefit" under the plan sufficient to confer participant standing on the plaintiffs. 861 F.2d at 1417-19.

Similarly, in Sommers, the Fifth Circuit held that the plaintiffs had standing to sue as participants because they alleged that an undervaluation of the employer's stock in the plan resulted in their receipt of a lower amount of benefits than they would have received had the breach not occurred, attaching no significance to the fact that the plan had been terminated. 883 F.2d at 350. Other courts have soundly rejected the argument that participant status is defeated by plan termination. See, e.g., Gruber v. Hubbard Bert Karle Weber, Inc., 675 F. Supp. 281, 284 (W.D. Pa. 1987) ("To deny plaintiffs relief on this basis would reward defendants for the thoroughness of their mismanagement. If defendants wound the victim they may be sued, but kill it and the claim dies with it. Such a construction is absurd and

22

unsupportable."); <u>Horn v. McQueen</u>, 353 F. Supp. 2d 785, 801 n.20 (W.D. Ky.

2004) (allowing the plaintiffs to sue "because the loss to the ESOP, and, by

extension, to the ESOP participants, occurred prior to termination"). Courts

generally have the power to establish a successor trust to hold any recovered assets

where the original trust is no longer in effect, <u>see</u> <u>British Motor Car Distribs., Ltd.</u>

<u>v. San Francisco Auto. Indus. Welfare Fund</u>, 882 F.2d 371, 378-79 (9th Cir. 1989),

or to establish a constructive trust to distribute equitably vested benefits, as the

court did in <u>Murdock</u>. If the plaintiffs here prove their claims, the district court

may set up constructive or successor trusts to distribute any recovery to the

participants and beneficiaries.

CONCLUSION

For the reasons stated above, the Secretary respectfully requests that this Court reverse the decision of the district court dismissing the case.

Respectfully submitted,

HOWARD M. RADZELY
Solicitor of Labor

TIMOTHY D. HAUSER
Associate Solicitor

KAREN L. HANDORF
Counsel for Appellate and
Special Litigation

ELIZABETH HOPKINS
Senior Appellate Attorney
United States Department of Labor
Plan Benefits Security Division
200 Constitution Avenue, N.W.
Room N4611
Washington, D.C. 20013-1914
Phone: (202) 693-5584
Fax:    (202) 693-5610

JUNE 2006

CERTIFICATE OF COMPLIANCE
PURSUANT TO FED. R. APP. P. 32(A)(7)(C) AND CIRCUIT RULE 32-1
FOR CASE NUMBER <u>05-17100</u>

I certify that pursuant to Fed. R. App. P. 29(d) and the Ninth Circuit Rule 32-1, the attached amicus brief is proportionally spaced, has a typeface of 14 points or more and contains 7,000 words or less.

Dated:  June 7, 2006

ELIZABETH HOPKINS
Senior Appellate Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2006, two paper copies of the foregoing Brief for the Secretary of Labor as Amicus Curiae were served using Federal Express, postage prepaid, upon the following counsel of record:

Theresa S Renaker
Cassie Springer-Sullivan
Lewis, Feinberg, Renaker & Jackson, P.C.
1330 Broadway
Suite 1800
Oakland, CA  94612


Nicole A. Diller
D. Ward Kallstrom
Andrew C. Sullivan
Morgan, Lewis & Bockius
One Market, Spear Street Tower
San Francisco, CA  94105


James D. Boughey
Bernard Gehlhar
Reina G. Minoya
Wilson, Elser, Moskowitz, Edelman &
      Dicker, LLP
525 Market Street, 17th Floor
San Francisco, CA  94105-2725

ELIZABETH HOPKINS
Senior Appellate Attorney

# APPENDIX A

## Westlaw.

106 Fed.Appx. 693                                                                          Page 1

106 Fed.Appx. 693, 2004 WL 1776008 (C.A.10 (Okla.)), Pens. Plan Guide (CCH) P 23989D, 33 Employee
Benefits Cas. 1793
**(Cite as: 106 Fed.Appx. 693)**

**C**
Briefs and Other Related Documents
This case was not selected for publication in the
Federal Reporter.Please use FIND to look at the
applicable circuit court rule before citing this
opinion. Tenth Circuit Rule 36.3. (FIND CTA10
Rule 36.3.)
    United States Court of Appeals,Tenth Circuit.
    Edward A. CUNNINGHAM, Plaintiff-Appellant,
                            v.
        Kenneth ADAMS, an individual; Adams
    Investment Company, also doing business as
    Central State Business Forms, an Oklahoma
    corporation, Defendants-Appellees.
                      No. 03-5144.

                    Aug. 10, 2004.

**Background:** Former plan participant filed
complaint under civil enforcement provisions of
Employee Retirement Income Security Act
(ERISA), alleging removing and/or borrowing
money from defined contribution plan violated
anti-inurement provisions of ERISA and alleging he
was terminated in violation of ERISA's
anti-retaliation provision for seeking a history and
accounting of plan. The United States District Court
for the Northern District of Oklahoma entered
summary judgment in favor of defendants, and
plaintiff appealed.

**Holdings:** The Court of Appeals, Henry, Circuit
Judge, held that:

1(1) participant lacked standing to assert claim
under ERISA's anti-inurement provisions based on
transaction in which employer's former president
withdrew his contributions and employer matching
contributions from plan;

2(2) participant failed to establish any other
transactions violated anti-inurement provisions;

3(3) participant failed to establish a prima facie
case of retaliation; and

4(4) striking summary judgment affidavit of
participant's expert witness was not an abuse of
discretion.

Affirmed.

                  West Headnotes

**[1] Labor and Employment 231H ☞632**

231H Labor and Employment
    231HVII Pension and Benefit Plans
        231HVII(K) Actions
            231HVII(K)1 In General
                231Hk632 k. Parties in General;
Standing. Most Cited Cases
Plan participant lacked standing to assert claim
under ERISA's anti-inurement provisions based on
transaction in which employer's former president
withdrew his contributions and employer matching
contributions from plan; president had only
received a distribution of those funds that were in
his own discrete plan account, under defined
contribution structure of plan, such that transaction
had no adverse impact on any other participant.
Employee Retirement Income Security Act of 1974,
§ 403(c)(1), 29 U.S.C.A. § 1103(c)(1).

**[2] Labor and Employment 231H ☞436**

231H Labor and Employment
    231HVII Pension and Benefit Plans
        231HVII(B) Plans in General
            231Hk433 Validity of Plan
                231Hk436 k. "Sole and Exclusive
Benefit" Requirement; Anti-Inurement Rule. Most
Cited Cases
Plan participant failed to establish any transactions

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

106 Fed.Appx. 693                                                                    Page 3

106 Fed.Appx. 693, 2004 WL 1776008 (C.A.10 (Okla.)), Pens. Plan Guide (CCH) P 23989D, 33 Employee
Benefits Cas. 1793
**(Cite as: 106 Fed.Appx. 693)**

defendants and striking the affidavit of Cunningham's expert witness Gary Barnes. We affirm.

### 1. Introduction

Cunningham brought this complaint pursuant to the civil enforcement provisions of the Employee Retirement Income Security Act (ERISA). ERISA § 502(a), 29 U.S.C. § 1132(a). His complaint alleged that defendant Kenneth Adams had violated the anti-inurement provisions of ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1), by removing and/or borrowing money from the Adams Investment Company and Affiliates Employees' Pension Plan (Plan). The complaint further charged that the *695 defendants had terminated him in violation of ERISA's anti-retaliation provision, ERISA § 510, 29 U.S.C. § 1140, for seeking a history and/or accounting of the Plan.

The district court determined that since the Plan was a "defined contribution plan" which provided a separate account for each participant and allocated income, expenses, gains and losses to each individual account, *see* 29 U.S.C. § 1002(34), and since the distribution to Adams was from Adams's own account, the transaction had no adverse impact on Cunningham or any other Plan participant. It further determined that Cunningham could not establish a prima facie case of interference with the exercise of his ERISA rights, because he could not show defendants had any retaliatory intent when they terminated his employment. Finally, the district court concluded Cunningham failed to show that the reason defendants gave for his termination, absence from his assigned work area during working hours, was a pretext for a retaliatory discharge.

### 2. Standard of review

We review a grant of summary judgment *de novo,* applying the same standard as the district court. We examine the record to determine whether any genuine issue of material fact was in dispute; if not,

we determine whether the substantive law was applied correctly, and in so doing we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion. However, where the non moving party will bear the burden of proof at trial on a dispositive issue that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment.
*Neal v. Roche,* 349 F.3d 1246, 1249 (10th Cir.2003) (quotation omitted).

### 3. Anti-inurement claim

Section 403(c)(1) of ERISA provides in part that " the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1). Cunningham's complaint alleges that Adams directed release of funds or borrowed funds from the Plan, but provides no specifics concerning any improper transactions. In their motion for summary judgment, defendants asserted as an undisputed fact that "[p]laintiff's claim under [ERISA] § 403 arises solely out of [a] 1986 distribution to Kenneth Adams [from the Plan]. " Aplt.App., Vol. I at 62 (discussing defendants' undisputed fact No. 30); *see also id.* at 59.

**2 Cunningham did not directly dispute this attempt to limit the factual basis of his claim. *See id.* at 104-05. Elsewhere in his response to the motion for summary judgment, however, Cunningham asserted that his claim was based on *several* allegedly improper transactions or " accounting discrepancies" including: (1) a distribution from the Plan on August 31, 1986, of $341,036.80 by Kenneth Adams; (2) an alleged payout to Adams of $4,808.00 on August 31, 1986; (3) a number of forfeitures and debits allegedly in favor of Adams or of Ken-Ada, a ranch Adams owned; and (4) various other accounting entries reflecting increases or decreases in Plan assets or

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

106 Fed.Appx. 693, 2004 WL 1776008 (C.A.10 (Okla.)), Pens. Plan Guide (CCH) P 23989D, 33 Employee
Benefits Cas. 1793
**(Cite as: 106 Fed.Appx. 693)**

investments without returns reflected in the
accounting ledger. *Id.* at 87-93.

In its order granting summary judgment, the district
court analyzed the August 31, 1986 distribution in
detail. It **\*696** gave short shrift to the other
allegedly improper transactions Cunningham
mentioned, however, concluding that "Cunningham
has not submitted evidence that connects those
transactions to Adams" and that Cunningham failed
to allege that Adams could be held liable more
broadly for the transactions as a Plan fiduciary. *Id.*
at 26 n. 12. In his appellate brief, Cunningham
continues to assert that both the August 31, 1986
distribution and the additional transactions violated
ERISA. Aplt. Opening Br. at 4-5. Giving
Cunningham the benefit of the doubt, we will
consider both the August 31, 1986 distribution and
the additional transactions as the bases asserted for
his § 403(c)(1) claim.

### A. August 31, 1986 distribution

[1] Cunningham's argument concerning the August
31, 1986 distribution boils down to this: he claims
Adams withdrew his contributions and the employer
matching contributions from the Plan, under the
guise of being terminated, when in fact Adams
remained the President and Chairman of the Board
for Adams Investment Company and its affiliates.
The district court found that even if this were true,
Adams had only received a distribution of those
funds that were in his own discrete Plan account,
under the defined contribution structure of the Plan.
Therefore, the court concluded, the distribution "is
really not the concern of Mr. Cunningham because
the transaction had no adverse impact on any other
participant [besides Adams]." Aplt.App. at 26
(emphasis omitted).

In order to have standing to proceed with this
action, Cunningham must show that he was
personally injured or harmed by the challenged
withdrawal. *See generally Piazza v. Ebsco Indus.,
Inc.,* 273 F.3d 1341, 1353-54 (11th Cir.2001);
*Bennett v. Conrail Matched Sav. Plan Admin.
Comm.,* 168 F.3d 671, 678-79 (3d Cir.1999). As

the party invoking federal jurisdiction, it is
Cunningham's burden to demonstrate an injury in
fact sufficient to confer standing. *See Utah Animal
Rights Coalition v. Salt Lake City Corp.,* 371 F.3d
1248, 1255 (10th Cir.2004). For the reasons stated
by the district court, he failed to make this showing
concerning the August 31, 1986 distribution. [FN1]
We therefore affirm the district court's grant of
summary judgment on the anti-inurement claim
concerning the August 31, 1986 distribution.

> FN1. Cunningham does not contest the
> district court's determination that the Plan
> is a defined contribution Plan with
> segregated accounts for participants.
> Aplt. Opening Br. at 15. He asserts that
> this determination is "misleading," but he
> fails to provide any facts to establish any
> injury in fact to himself, reiterating only
> his contention that Adams's "intended
> withdrawal of PLAN funds was
> inappropriate." *Id.*
> In his reply brief, Cunningham
> incorporates by reference a
> mathematically-based argument he made in
> a district court brief, purporting to show
> that the funds distributed to Adams
> exceeded the maximum contributions
> Adams could have made to the Plan
> between January 1, 1983 and August 31,
> 1986, unless Adams was earning in excess
> of $1.5 million per year. Aplt. Reply Br.
> at 1; *see* Aplt.App., Vol. I at 87-89. If
> Adams was distributed more than he was
> entitled to as a Plan participant, this could
> have an adverse effect on other
> participants. As defendants pointed out in
> their district court briefing, however,
> Cunningham's argument is fatally flawed
> because it assumes that the Plan had only
> been in existence since 1983. In fact, the
> Plan was merely a restatement of a Plan
> already in effect since 1978. *See*
> Aplt.App., Vol. II at 275. Therefore, the
> mathematical argument does not establish
> that Adams was distributed more than his
> share of Plan assets.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

106 Fed.Appx. 693                                                                    Page 5

106 Fed.Appx. 693, 2004 WL 1776008 (C.A.10 (Okla.)), Pens. Plan Guide (CCH) P 23989D, 33 Employee
Benefits Cas. 1793
**(Cite as: 106 Fed.Appx. 693)**

### B. Other alleged loans and withdrawals

**\*\*3** The district court found that Cunningham failed
to tie any of the other allegedly suspicious
transactions he mentions to \*697 Adams. It noted,
further, that Cunningham's complaint did not allege
that Adams is a Plan fiduciary who could be held
liable under fiduciary standards for such
transactions.

[2] In response to defendants' motion for summary
judgment, Cunningham presented no evidence
sufficient to survive summary judgment in support
of his theory that the additional transactions
violated ERISA. The evidence he did submit either
referred specifically to the August 31, 1986
distribution, did not refer to any specific
transaction, or represented only speculation about
whether the additional transactions violated ERISA.
*See* Amended Affidavit of Billy Jim Weintz,
Aplt.App. Vol. I at 126 (stating Adams directed
Weintz to withdraw *Adams' contributions* and
company matching contributions from the Plan);
Affidavit of Paul Venamon, *id.* at 213-14 (detailing
unspecified distribution of $200,000 or more to
Adams from Plan); Gary Barnes opinion letter, *id.*
Vol. II at 308 (referring non-specifically to "funds ...
inappropriately transferred to the general operating
account of Adams Investment Company"); Gary
Barnes affidavit, *id.* at 331 (stating that entries "
indicate[ ] *possible* inappropriate actions")
(emphasis added); FN2 Gary Barnes Memorandum
of April 25, 2003 (stating "the reports I have
reviewed are not conclusive" concerning whether
Adams "raided" the Plan), *id.* at 386. By contrast,
defendants presented testimony from an expert
witness whose firm audited the Plan from 1985
through 2001 and who found no dealings between
Adams and the Plan other than the August 31, 1986
distribution. Aplee. Supp.App. at 555-56.

> FN2. In any event, the district court struck
> this affidavit and, as will be seen, we
> uphold its action in doing so.

"To defeat a motion for summary judgment,
evidence, including testimony, must be based on

more than mere speculation, conjecture or surmise."
*Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 875
(10th Cir.2004). Even giving Cunningham the
benefit of every reasonable inference, we conclude
that defendants were entitled to summary judgment
on Cunningham's claim that the additional
transactions constituted improper inurement.FN3

> FN3. In his opening brief, Cunningham
> asserts, citing generally Adams's
> deposition filed under seal, that Adams
> stated "under oath, during his deposition
> testimony, that over a period of time, he
> had made in excess of thirteen (13) loans
> from the PLAN." Aplt. Opening Br. at 12.
> Cunningham further implies that Adams
> has failed to repaid the loans. We have
> reviewed Adams' sealed deposition
> testimony, and it does not say that Adams
> made or obtained any such loans *from the
> Plan. See* Aplt.App., Vol. III at 43-45
> (filed under seal). Cunningham's counsel
> has misstated the record.

### 4. Retaliation claim

[3] Cunningham contends that after he requested an
accounting of the Plan, defendants retaliated by
firing him. He contends this violated ERISA §
510, which provides that "[i]t shall be unlawful for
any person to discharge, fine, suspend, expel,
discipline, or discriminate against a participant or
beneficiary for exercising any right to which he is
entitled under [ERISA]." 29 U.S.C. § 1140.

At the time of Cunningham's discharge, he was the
second shift finishing supervisor for defendant
Central State Business Forms (CSBF) at its facility
in Dewey, Oklahoma. The hours of the second
shift are 3:00 to 11:00 p.m. Cunningham was
required to ensure that production continued
throughout his shift. He was generally required to
remain on company premises during working hours,
but was permitted to leave the premises to deliver
\*698 customer orders to the United Parcel Service
(UPS) office for shipping. Production employees
at CSBF are paid for a full eight-hour shift,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

106 Fed.Appx. 693                                                          Page 6

106 Fed.Appx. 693, 2004 WL 1776008 (C.A.10 (Okla.)), Pens. Plan Guide (CCH) P 23989D, 33 Employee
Benefits Cas. 1793
**(Cite as: 106 Fed.Appx. 693)**

including mealtimes. They do not, however, have a set meal period and are expected to eat lunch at their work stations.

**\*\*4** On May 9, 2001, at approximately 8:00 p.m., during Cunningham's assigned shift, a supervisor at CSBF and another CSBF employee observed Cunningham buying a lottery ticket at a convenience store in Caney, Kansas. Cunningham had gone to Caney after he completed a delivery at UPS. Significantly, the convenience store where he was sighted is located approximately twelve miles *north* of the CSBF facility, across the Kansas state line, while the UPS facility is to the *south*, in Bartlesville, Oklahoma. Moreover, the UPS facility closes at approximately 7:00 p.m., an hour before Cunningham was seen in Caney.

The next day, Mattix reported to John Rose, General Manager at CSBF, that Mattix had seen Cunningham in Caney, Kansas. Rose discussed the matter with Cunningham's supervisor, Bill Mattix, and confirmed that Cunningham did not have permission to be at the convenience store and was not on company business when he was observed in Caney. Rose terminated Cunningham's employment, effective May 16, 2001.

Although Rose discussed the termination with Adams, Adams did not make the decision to terminate Cunningham. Cunningham presented no evidence that Rose discussed the pension plan with Cunningham or that Rose was aware at the time he terminated Cunningham's employment that Cunningham had made any inquiries concerning the Plan. Nor did Cunningham present any evidence that Rose discussed the Plan with Adams.

To prevail under section 510, an employee must demonstrate that the defendant had the specific intent to interfere with his ERISA rights. *See Phelps v. Field Real Estate Co.*, 991 F.2d 645, 649 (10th Cir.1993). The employee can satisfy his burden by relying on either direct or circumstantial proof of the defendant's intent. *See Garratt v. Walker*, 164 F.3d 1249, 1256 (10th Cir.1998) (en banc). Cunningham chose to produce circumstantial evidence of defendants' intent by

employing the well-known, burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See *Gitlitz v. Compagnie Nationale Air Fr.*, 129 F.3d 554, 559 (11th Cir.1997) (applying the *McDonnell Douglas* analysis to a section 510 claim).

Under the *McDonnell Douglas* method, the plaintiff must first establish a prima facie case of discrimination. See *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The district court found that Cunningham failed to establish a prima facie case of retaliation, because the record showed that Rose made the decision to terminate Cunningham's employment and because there was no showing that Adams or Rose even knew of Cunningham's request for an accounting of the Plan at the time of the termination. We agree with that analysis and therefore affirm summary judgment on Cunningham's § 510 retaliation claim.

### 5. Striking of expert witness

[4] The district court struck the summary judgment affidavit of Cunningham's expert witness, Gary Barnes, for three reasons. First, it found that Cunningham had failed to comply with Fed.R.Civ.P. 26(a)(2) because the information Cunningham disclosed about Barnes's testimony **\*699** was incomplete, vague, and unrelated to the opinion given in the affidavit. Second, the district court questioned whether Barnes was qualified as an expert in the area of his testimony. Finally, the court determined that the vast majority of Barnes's affidavit concerned issues that were not properly before the court. The district court concluded that the affidavit was of no assistance to the court in determining the issues, and should therefore be stricken.

**\*\*5** We review a district court's exclusion of evidence for an abuse of discretion. *Cartier v. Jackson*, 59 F.3d 1046, 1048 (10th Cir.1995). In reviewing a court's determination for abuse of discretion, we will not disturb the determination

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

106 Fed.Appx. 693                                                                  Page 7

106 Fed.Appx. 693, 2004 WL 1776008 (C.A.10 (Okla.)), Pens. Plan Guide (CCH) P 23989D, 33 Employee
Benefits Cas. 1793
**(Cite as: 106 Fed.Appx. 693)**

absent a distinct showing it was based on a clearly
erroneous finding of fact or an erroneous conclusion
of law or manifests a clear error of judgment. *Id.*
Having reviewed the district court's decision and the
record under this standard, we find no abuse of
discretion in the district court's decision to strike
Barnes's affidavit.[FN4]

> FN4. The defendants also requested that
> the district court strike Barnes's trial
> testimony; in light of its grant of summary
> judgment, the district court correctly
> determined that this portion of the motion
> was moot.

The judgment of the district court is AFFIRMED.
Appellant's motion to supplement the record is
DENIED.

C.A.10 (Okla.),2004.
Cunningham v. Adams
106 Fed.Appx. 693, 2004 WL 1776008 (C.A.10
(Okla.)), Pens. Plan Guide (CCH) P 23989D, 33
Employee Benefits Cas. 1793

Briefs and Other Related Documents (Back to top)

• 03-5144 (Docket) (Sep. 02, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# APPENDIX B

Westlaw.

--- F.Supp.2d ----                                                         Page 1

--- F.Supp.2d ----, 2006 WL 838999 (S.D.N.Y.), 37 Employee Benefits Cas. 1503
(Cite as: — F.Supp.2d —)

Briefs and Other Related Documents

United States District Court,S.D. New York.
Jeremy DICKERSON, individually and on behalf of
all others similarly situated, Plaintiff,
v.
Sheila FELDMAN, Helen L. Nelling, Susan E.
Bevington, Nancy Stemme, Christopher N. Ast,
Employee Benefits Plan Committee, Pension and
Savings Fund Committee, John Hunter, Robert
Clausen, Robert Potter, Michael E. Miller, Paul H.
Hatfield, J. Patrick Mulcahy, Sally G. Narodnick,
Paul Donovan, Robert H. Jenkins, Frank A. Metz,
Jr., William D. Ruckelshaus, John B. Slaughter,
Philip R. Lochner, Jr., Robert T. Blakely, Northern
Trust Company, and John Does 1-100 Insurance
Company, Defendant.
No. 04 Civ. 7935(LAP).

March 30, 2006.

**Background:** Former participant in employee stock
ownership plan brought putative class action under
the Employee Retirement Income Security Act
(ERISA) against various officers, directors,
employees, and committees of his former employer,
seeking recovery on behalf of plan for losses
sustained by plan as a result of its investment in
employer's common stock. Defendants moved to
dismiss.

**Holdings:** The District Court, Preska, J., held that:

10(1) former participant lacked standing to bring
action under ERISA, and

12(2) dismissal of former participant's cause of
action warranted dismissal of entire putative class
action.

Motions granted.

**[1] Federal Civil Procedure 170A ⟷103.2**

170A Federal Civil Procedure
    170AII Parties
        170AII(A) In General
            170Ak103.1 Standing
                170Ak103.2 k. In General; Injury or
Interest. Most Cited Cases

**Federal Civil Procedure 170A ⟷103.3**

170A Federal Civil Procedure
    170AII Parties
        170AII(A) In General
            170Ak103.1 Standing
                170Ak103.3 k. Causation;
Redressability. Most Cited Cases
The party that invokes federal jurisdiction bears the
burden of showing that it can satisfy the elements of
Article III standing, which are: (1) an injury in fact;
(2) that is causally connected to the defendant; and
(3) that is redressable by the court. U.S.C.A. Const.
Art. 3, § 2, cl. 1.

**[2] Federal Civil Procedure 170A ⟷103.2**

170A Federal Civil Procedure
    170AII Parties
        170AII(A) In General
            170Ak103.1 Standing
                170Ak103.2 k. In General; Injury or
Interest. Most Cited Cases
The elements of Article III standing are
conjunctive, so that a failure of any of the three
elements deprives a plaintiff of standing to maintain
an action in federal court. U.S.C.A. Const. Art. 3, §
2, cl. 1.

**[3] Federal Civil Procedure 170A ⟷103.2**

170A Federal Civil Procedure
    170AII Parties

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                    Page 2

--- F.Supp.2d ----, 2006 WL 838999 (S.D.N.Y.), 37 Employee Benefits Cas. 1503
(Cite as: — F.Supp.2d ——)

170AII(A) In General
   170Ak103.1 Standing
      170Ak103.2 k. In General; Injury or
Interest. Most Cited Cases
If plaintiffs lack Article III standing, a court has no
subject matter jurisdiction to hear their claim.
U.S.C.A. Const. Art. 3, § 2, cl. 1.

**[4] Labor and Employment 231H ☞632**

231H Labor and Employment
   231HVII Pension and Benefit Plans
      231HVII(K) Actions
        231HVII(K)1 In General
          231Hk632 k. Parties in General;
Standing. Most Cited Cases
Even where statutory standing under ERISA is
satisfied, the elements of Article III standing must
still be met. U.S.C.A. Const. Art. 3, § 2, cl. 1;
Employee Retirement Income Security Act of 1974,
§ 2 et seq., 29 U.S.C.A. § 1001 et seq.

**[5] Federal Civil Procedure 170A ☞103.7**

170A Federal Civil Procedure
   170AII Parties
      170AII(A) In General
        170Ak103.7 k. Class Actions. Most Cited
Cases
Article III standing requirements apply equally to
class action lawsuits; if the named plaintiffs are
without standing, the entire class action fails.
U.S.C.A. Const. Art. 3, § 2, cl. 1.

**[6] Federal Civil Procedure 170A ☞164.5**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
        170AII(D)1 In General
          170Ak164.5 k. Effect of Mootness.
Most Cited Cases
Where a plaintiff's stake in the controversy
disappears before there has been an effort to certify
the class action, the action must be dismissed as
moot even if it is capable of repetition but evading
review.

**[7] Federal Civil Procedure 170A ☞164.5**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
        170AII(D)1 In General
          170Ak164.5 k. Effect of Mootness.
Most Cited Cases
Where a named plaintiff has moved for class
certification prior to losing his stake in the
controversy, the action remains alive for purposes
of challenging the denial of class certification.

**[8] Labor and Employment 231H ☞632**

231H Labor and Employment
   231HVII Pension and Benefit Plans
      231HVII(K) Actions
        231HVII(K)1 In General
          231Hk632 k. Parties in General;
Standing. Most Cited Cases
ERISA creates a right of action only for
participants, beneficiaries, and fiduciaries of
benefits plans; if a plaintiff does not fit within these
categories, he lacks standing to sue under ERISA.
Employee Retirement Income Security Act of 1974,
§ 502(a)(3), 29 U.S.C.A. § 1132(a)(3).

**[9] Labor and Employment 231H ☞659**

231H Labor and Employment
   231HVII Pension and Benefit Plans
      231HVII(K) Actions
        231HVII(K)3 Actions to Enforce
Statutory or Fiduciary Duties
          231Hk658 Judgment and Relief
            231Hk659 k. In General. Most
Cited Cases
For breaches of fiduciary duties, relief under
ERISA is limited to recovery that inures to the
benefit of the plan as a whole, not to the benefit of
individual participants. Employee Retirement
Income Security Act of 1974, § 409(a), 29 U.S.C.A.
§ 1109(a).

**[10] Labor and Employment 231H ☞646**

231H Labor and Employment
   231HVII Pension and Benefit Plans
      231HVII(K) Actions
        231HVII(K)3 Actions to Enforce

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                      Page 3

--- F.Supp.2d ----, 2006 WL 838999 (S.D.N.Y.), 37 Employee Benefits Cas. 1503
(Cite as: — F.Supp.2d —)

Statutory or Fiduciary Duties
       231Hk646  k.  Parties  in  General;
Standing. Most Cited Cases
Former participant in employee stock ownership
plan lacked Article III standing to bring action
under ERISA against various officers, directors,
employees, and committees of his former employer,
seeking recovery on behalf of plan for losses
sustained by plan as a result of its investment in
employer's common stock, where former participant
had taken a final distribution of vested benefits and
was no longer covered under the plan, and,
therefore, his alleged injury was not redressable by
the court; former participant had no reasonable
expectation of returning to covered employment,
and he had no colorable claim to vested benefits.
U.S.C.A. Const. Art. 3, § 2, cl. 1; Employee
Retirement Income Security Act of 1974, § 2 et
seq., 29 U.S.C.A. § 1001 et seq.

[11] Federal Civil Procedure 170A ☞103.3

170A Federal Civil Procedure
    170AII Parties
        170AII(A) In General
            170Ak103.1 Standing
                170Ak103.3   k.      Causation;
Redressability. Most Cited Cases
To meet the redressability element of Article III
standing, it must be likely, as opposed to merely
speculative, that the injury will be redressed by a
favorable decision. U.S.C.A. Const. Art. 3, § 2, cl. 1.

[12] Federal Civil Procedure 170A ☞184.5

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)3 Particular Classes Represented
                170Ak184 Employees
                    170Ak184.5  k.  In General. Most
Cited Cases
Dismissal of named plaintiff's cause of action in
putative class action under ERISA warranted
dismissal of entire putative class action, where class
members had no independent legal stake in the
controversy that would allow their claims to survive
despite named plaintiff's lack of standing. Employee
Retirement Income Security Act of 1974, § 2 et

seq., 29 U.S.C.A. § 1001 et seq.

Ronen Sarraf, Sarraf Gentile, LLP, New York City,
for Plaintiff.
Karen Mary Wahle, Robert M. Stern, O'Melveny &
Myers LLP, Washington, DC, Michael John Dell,
Elaine Patricia Golin, Kramer Levin Naftalis &
Frankel, LLP, New York City, for Defendant.

OPINION
PRESKA, District Judge.
*1 Plaintiff Jeremy Dickerson brings this putative
class action under the Employee Retirement Income
Security Act ("ERISA"), 29 U.S.C. § 1109(a),
seeking recovery on behalf of the Solutia Savings
and Investment Plan ("Plan") for losses sustained
by the Plan as a result of investment in the common
stock of Solutia Inc. ("Solutia" or the "Company")
during the period from September 1, 1997 to
December 15, 2003 (the "Class Period"). Plaintiff
alleges that various officers, directors, employees,
and committees of Solutia (the "Solutia Defendants"
) and the Northern Trust Company ("Northern Trust
") violated their fiduciary duties under ERISA by
continuing to invest Plan assets in Solutia stock up
until two days before the Company's bankruptcy in
December 2003, even after they were aware of
Solutia's "precarious financial condition." Compl. ¶
2. He alleges that Solutia stock was "an imprudent
investment since it was both artificially inflated in
price and too speculative to serve as a retirement
investment." Compl. ¶ 2. Defendants move to
dismiss on grounds that Plaintiff lacks standing to
sue and that the complaint fails to state a claim on
which relief may be granted. Because Plaintiff lacks
standing to sue under ERISA, Defendants' motions
to dismiss are granted.

I. Background

On September 1, 1997, the Monsanto Company
spun off its chemicals businesses into an
independent company called Solutia Inc. Compl. ¶
100.[FN1] Plaintiff alleges that Monsanto created
Solutia so that it could unburden itself of
substantial, undisclosed environmental liabilities
associated with various sites that manufactured

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----

--- F.Supp.2d ----, 2006 WL 838999 (S.D.N.Y.), 37 Employee Benefits Cas. 1503
(Cite as: — F.Supp.2d ——)

toxic substances such as PCBs, DDT, and Agent Orange. Compl. ¶¶ 104-05, 158-60. Plaintiff further alleges that the Solutia Defendants knew that Solutia did not have sufficient capital to cover its liabilities, yet caused the plan to continue to invest in Solutia stock, even as Solutia spiraled toward bankruptcy. Compl. ¶¶ 57-65, 214-36. Plaintiff alleges that Northern Trust continued to follow instructions, without inquiry, to invest in Solutia stock, as per employee contribution choices, despite publicly available information that called into question Solutia's viability as a going concern. Compl. ¶¶ 242, 268-74.

The Solutia Plan [FN2] was also established on September 1, 1997, Compl. ¶ 50, to encourage retirement savings for employees and to provide them with an opportunity to acquire ownership interests in the Company. Plan § 1.2. The Plan offered between eight and fourteen investment options during the class period, including the option of investing in the Solutia Stock Fund, which " invests primarily in Solutia common stock and may hold relatively small amounts of cash," to provide liquidity for distributions and for expenses. Compl. ¶ 53, 57; see Plan § 9.2; 2002 Summary Plan Description ("SPD") at 16; Defined Contribution and Employee Stock Ownership Trust Agreement § 5.1 (attached as Ex. F to Stemme Decl.). Solutia matched 60% of each employee's contributions to the Plan, up to a maximum of 8% of eligible pay. Compl. ¶ 51, 61. "Contributions made by the Company pursuant to [its] matching obligations were invested in the Solutia Stock Fund/Company Match Account." Compl. ¶ 60. "Contributions made by Plan participants were held in the Solutia Stock Fund/Employee Stock Account." Compl. ¶ 59. Employees became 100% vested after three years or upon reaching age 65, becoming disabled, or dying. Compl. ¶ 67-69.

*2 Plaintiff was employed by Solutia as a chemical operator from July of 1998 to October of 2003. Compl. ¶ 13. As a participant in the Plan during his employment, Plaintiff held shares of Solutia stock between 1998 and 2003. Compl. ¶ 13. Although the Complaint alleges that Plaintiff "is" a participant in the Plan, Compl. ¶ 13, Plan account statements for Plaintiff show that he took a full and

final distribution of his Plan benefits on July 12, 2004, prior to commencing this action. Stemme Decl. Ex. G. Plaintiff does not dispute this, but argues that he has a colorable claim to vested benefits if this action is successful and a reasonable expectation of returning to covered employment by virtue of a sexual harassment lawsuit he instituted against the Company in the Southern District of Texas. Although Plaintiff alleges that he seeks " back pay, front pay, and a return to covered employment" in the Texas lawsuit, Compl. ¶ 13, a review of the Complaint in *Dickerson v. Solutia, Inc.,* No. G-04-377 (S.D. Tex. filed June 18, 2004) (attached to the Solutia Defendants Mem. of Law as Ex. 1),[FN3] reveals that there is no prayer for a return to covered employment at the now-bankrupt Solutia.

Plaintiff filed his original complaint in this action on October 7, 2004, almost three months after he cashed out of the Plan.

## II. *Discussion*

### A. *Standard of Review*

On these motions to dismiss on the pleadings, the Court accepts the factual allegations in Plaintiff's Second Amended Class Action Complaint and draws all inferences in favor of Plaintiff. *See Karedes v. Ackerley Group,* 423 F.3d 107, 113 (2d Cir.2005). It is well-settled that a case may not be dismissed "unless the court is satisfied that the complaint cannot state any set of facts that would entitle the plaintiff to relief." *Miller v. Wolpoff & Abramson,* 321 F.3d 292, 300 (2d Cir.2003) (citing *Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir.2001)). The Court, however, need not give "credence to plaintiff's conclusory allegations" or legal conclusions offered as pleadings. *Cantor Fitzgerald v. Lutnick,* 313 F.3d 704, 709 (2d Cir.2002) (citing *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001)); *Van Carpals v. S.S. American Harvester,* 297 F.2d 9, 11 n. 1 (1961) (Friendly, J.) ("[I]n federal pleading there is no need to plead legal conclusions; these are for the court to apply.").

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                          Page 5

--- F.Supp.2d ----, 2006 WL 838999 (S.D.N.Y.), 37 Employee Benefits Cas. 1503
**(Cite as: — F.Supp.2d ——)**

On a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court may consider materials of which the plaintiff had notice and relied upon in framing his complaint, as well as materials of which judicial notice may be taken. *See Kavowras v. New York Times,* 328 F.3d 50, 57 (2nd Cir.2003); *Cortec Indus. v. Sum Holding,* 949 F.2d 42, 48 (2d Cir.1991). Where subject matter jurisdiction is challenged, the Court is "free to consider materials extrinsic to the complaint" in deciding the motion to dismiss. *Moser v. Pollin,* 294 F.3d 335, 339 (2d Cir.2002).

### B. Standing

#### 1. Article III

*3 [1][2][3][4] The party that invokes federal jurisdiction bears the burden of showing that it can satisfy the elements of Article III standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Those elements are (1) an injury in fact, (2) that is causally connected to the defendant, and (3) that is redressable by the court. *Id.* at 560-61, 112 S.Ct. 2130. The elements are conjunctive, so that a failure of any of the three elements deprives a plaintiff of standing to maintain an action in federal court. "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care,* 433 F.3d 181, 198 (2d Cir.2005). Even where statutory standing under ERISA is satisfied, the elements of Article III standing must still be met. *Id.* at 199.

[5] Article III standing requirements apply equally to class action lawsuits. *Id.* The Court of Appeals has acknowledged the Supreme Court's holding " that 'if none of the named plaintiffs purporting to represent a class establishes the requisite case or controversy ..., none may seek relief on behalf of himself or any other member of the class.' " *Id.* (quoting *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)). In other words, if the named plaintiffs are without standing, the entire class action fails.

[6][7] Where a plaintiff's stake in the controversy disappears before there has been an effort to certify the class action, the action must be dismissed as moot even if it is "capable of repetition but evading review." *Bd. of Sch. Comm'rs v. Jacobs,* 420 U.S. 128, 129-30, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975). On the other hand, where a named plaintiff has moved for class certification prior to losing his stake in the controversy, the action remains alive for purposes of challenging the denial of class certification. *See United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 404, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980); *Sosna v. Iowa,* 419 U.S. 393, 399 & n. 8, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975).

#### 2. ERISA

[8] ERISA creates a right of action only for participants, beneficiaries, and fiduciaries of benefits plans. 29 U.S.C. § 1132(a)(3); *Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 139-40, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985); *Nechis v. Oxford Health Plans,* 421 F.3d 96 (2d Cir.2005). If a plaintiff does not fit within these categories, he lacks standing to sue under ERISA. *See Connecticut v. Physicians Health Serv.,* 287 F.3d 110, 112 (2d Cir.2002). "Participant" is defined as "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan...." 29 U.S.C. § 1002(7). The Supreme Court has held that "the term participant is naturally read to mean either employees in, or reasonably expected to be in, currently covered employment, or former employees who have ... a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits." *Firestone Tire & Rubber v. Bruch,* 489 U.S. 101, 117, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (citations and internal quotations marks omitted). "A former employee who has neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits, however, simply, does not fit within the phrase 'may become eligible.' " *Id.*

*4 [9] *Firestone* adopted in part the definition of " participant" set out in *Kuntz v. Reese,* 785 F.2d 1410, 1411 (9th Cir.1986), which denied standing

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                      Page 6

--- F.Supp.2d ----, 2006 WL 838999 (S.D.N.Y.), 37 Employee Benefits Cas. 1503
**(Cite as: — F.Supp.2d —)**

to "former employees whose vested benefits under the plan [had] already been distributed in a lump sum." *Kuntz* reasoned that to allow such former plan participants to bring suit would, in effect, create suits for money damages not authorized by ERISA. *Id.* For breaches of fiduciary duties, relief under ERISA is limited to recovery "that inures to the benefit of the plan as a whole," not to the benefit of individual participants. *Russell,* 473 U.S. at 140, 105 S.Ct. 3085; *Lee v. Burkhart,* 991 F.2d 1004, 1009 (2d Cir.1993). Thus, numerous courts have held that a plaintiff lacks standing to sue under ERISA where he has taken a final distribution of vested benefits under a defined contribution plan. *See, e.g., Crawford v. Lamantia,* 34 F.3d 28, 32-33 (1st Cir.1994); *LaLonde v. Textron,* 418 F.Supp.2d 16 (D.R.I.2006); *Hargrave v. TXU Corp.,* 392 F.Supp.2d 785 (N.D.Tex.2005); *Carpenter v. Carroll Pinto,* 374 F.Supp.2d 487, 493-94 (E.D.Va.2005); *Clair v. Harris Trust & Sav. Bank,* No. 96 Civ. 7311, 1998 WL 246482, at *3-4, 1998 U.S. Dist. LEXIS 7123, at *9 (N.D.Ill. Apr. 27, 1998), *aff'd,* 190 F.3d 495 (7th Cir.1999); *Flynn v. Ballinger,* No. 94 Civ. 0190, 1994 WL 758662, *2, 1994 U.S. Dist. LEXIS 19689, at *5-6 (N.D.Cal. May 9, 1994); *Gilquist v. Becklin,* 675 F.Supp. 1168, 1171 (D.Minn.1987), *aff'd mem.,* 871 F.2d 1093 (8th Cir.1988).

### 3. Application

[10] Under the principles of standing doctrine described above, Plaintiff is without standing and this action must be dismissed. Assuming *arguendo* that Plaintiff's allegations are sufficient to meet the first two elements of Article III standing, *i.e.,* an injury in fact causally connected to alleged conduct by the defendants, *Lujan,* 504 U.S. at 560-61, 112 S.Ct. 2130, Plaintiff has not satisfied the redressability element of Article III standing. *Id.* Plaintiff here was a Plan participant up until the time, prior to the commencement of this lawsuit, when he took a final distribution of his vested benefits. As a former participant, Plaintiff is unable to demonstrate that he has an injury that is redressable by this Court because he fails to show either "a reasonable expectation of returning to covered employment or ... a colorable claim to

vested benefits." *Firestone,* 489 U.S. at 117, 109 S.Ct. 948.

#### a. *Plaintiff has no Reasonable Expectation of Returning to Covered Employment*

Plaintiff alleges the legal conclusion that his pending sexual harassment lawsuit in Texas gives him a reasonable expectation of returning to covered employment. Compl. ¶ 13. As noted above in II(A), the Court need not credit that legal conclusion but may consider the Texas complaint on which Plaintiff relies. A review of that complaint reveals that Plaintiff has not specifically sought reinstatement in the Texas case. Plaintiff cannot establish a reasonable expectation of returning to covered employment by pointing to a lawsuit in which he does not seek reinstatement. *See, e.g., Alexander v. Anheuser-Busch,* 990 F.2d 536, 539 (10th Cir.1993) (citing *Mitchell v. Mobil Oil Corp.,* 896 F.2d 463, 474 (10th Cir.1990)) (denying standing where Plaintiff did not seek reinstatement).

*5 [11] To meet the redressability element of Article III standing, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130. Where, as here, Plaintiff has made no specific request to be reinstated to covered employment and the Texas case has been "administratively closed pending Solutia's bankruptcy," Compl. ¶ 13, Plaintiff's return to employment at Solutia is speculative rather than likely. Article III standing cannot be grounded on such speculation. To hold that Plaintiff has standing to sue despite his status as a non-participant without a reasonable expectation of returning to covered employment would be to permit an action for individualized damages rather than an action to recover on behalf of the Plan. Such an action would be contrary to the express language of the statute. *See Kuntz,* 785 F.2d at 1411.

#### b. *Plaintiff has no Colorable Claim to Vested Benefits*

Plaintiff alleges the legal conclusion that he has a "

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                          Page 7

--- F.Supp.2d ----, 2006 WL 838999 (S.D.N.Y.), 37 Employee Benefits Cas. 1503
(Cite as: --- F.Supp.2d ----)

colorable claim to vested benefits," Compl. ¶ 13, and argues that he has such a claim because an award in this action "would be paid to the Plan and then distributed to the plaintiff class as benefits through their Plan accounts." Pl. Mem. of Law at 11. FN4 Again, the Court need not credit the legal conclusion, and the argument overlooks the fact that Plaintiff no longer has a Plan account because he took his final distribution of benefits under the Plan. As noted above in II(B)(3)(b), ERISA authorizes suits for fiduciary breaches to recover on behalf of the plan as a whole, *see* 29 U.S.C. § 1109(a), but not to recover individualized damages payable to former plan participants. If this action were to go forward, the Court would be powerless to craft a remedy in which Jeremy Dickerson, a non-participant in the Plan, would have any stake. Stated colloquially (and mixing metaphors), while Plaintiff may have an axe to grind, he no longer has a dog in this fight.

Plaintiff argues that he, like the plaintiff in *Mullins v. Pfizer*, 23 F.3d 663, 668 (2d Cir.1994), is within the "zone of interests ERISA was intended to protect." Plaintiff's reliance on *Mullins* is misplaced, however, as that case is distinguishable from this action in crucial respects. James Mullins worked at Pfizer for 34 years before retiring at age 57. *Id.* at 665. Shortly after he retired, Pfizer offered a new Voluntary Severance Option ("VSO" ), which offered "benefits in addition to pre-existing Pfizer retirement benefits." *Id.* Mullins alleged that Pfizer "knew and deliberately concealed from [him its] decision, despite its recent public denials, to offer its employees [the VSO]." *Id.* at 666. Thus, Mullins proceeded on the theory that "but for the fact that Pfizer misled him, he would have been a ' participant' in the VSO." *Id.* at 667. The district court dismissed based on, *inter alia,* lack of standing because Mullins was no longer a participant in the Pfizer plan. *Id.* at 667 & n. 1.

*6 The Court of Appeals reviewed the circuit split on the standing issue and held that where an employer misleads an employee about the availability of an enhanced plan, the purpose of ERISA would be frustrated if the employer were permitted " 'through its own malfeasance to defeat the employee's standing.' " *Id.* at 668 (quoting

*Christopher v. Mobil Oil Corp.,* 950 F.2d 1209, 1221 (5th Cir.1992), *cert. denied,* 506 U.S. 820, 113 S.Ct. 68, 121 L.Ed.2d 35 (1992)). Noting the factual similarity between Mullins' allegations and *Vartanian v. Monsanto Co.,* 14 F.3d 697 (1st Cir.1994), the Court of Appeals agreed that the basic standing issue is whether plaintiff is "within the zone of interests ERISA was intended to protect, " *Mullins,* 23 F.3d at 668 (quoting *Vartanian,* 14 F.3d at 701), and remanded the action to the district court to afford plaintiff the opportunity to prove that "but for" defendant's misrepresentations, he would be a participant in the Plan.

Here, Jeremy Dickerson does not allege that he was misled into taking a full payout of his vested benefits or influenced in any way by the actions of Solutia to do so. Indeed, unlike the situation in *Mullins,* all of the facts which Plaintiff alleges were publicly disclosed prior to Dickerson's cashing out of the plan. Thus, the holding of *Mullins* is irrelevant to Plaintiff's case. Prior to commencement of this lawsuit, Plaintiff took himself outside the zone of interests protected by ERISA by cashing out of the Plan and thus becoming a non-participant.

### c. *Standing of the Unnamed Class Members*

[12] As noted above, no class has been certified in this action. The class members have no independent legal stake in the controversy that would allow their claims to survive despite the named Plaintiff's lack of standing. *See Sosna,* 419 U.S. at 399 & n. 8, 95 S.Ct. 553. Accordingly, the dismissal of Jeremy Dickerson's cause of action results in dismissal of the entire class action, including claims asserted on behalf of the unnamed class members.

### *Conclusion*

Because Plaintiff lacks standing, both the Solutia Defendants' and Northern Trust's motions to dismiss (docket nos. 33 and 36) are granted. The Court does not reach Defendants' other arguments.

The Clerk of the Court is directed to mark this

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                Page 8

--- F.Supp.2d ----, 2006 WL 838999 (S.D.N.Y.), 37 Employee Benefits Cas. 1503
**(Cite as: — F.Supp.2d —-)**

action closed and all pending motions denied as moot.

SO ORDERED.

FN1. Reference is to the Second Amended Class Action Complaint dated May 20, 2005.

FN2. The 2002 Plan is attached as Exhibit B to the Declaration of Nancy Stemme, sworn to on June 29, 2005 ("Stemme Decl. "). Although the Plan was amended during the Class Period, the amendments do not affect issues raised in these motions. (Stemme Decl. ¶¶ 2-3).

FN3. Reference is to the Memorandum of Law in Support of the Solutia Defendants' Motion to Dismiss Plaintiff's Second Amended Class Action Complaint. The Court may consider a complaint filed in another case on a Rule 12(b)(1) motion where the plaintiff expressly relies on that complaint to support his claim of jurisdiction. *See Greenblatt v. Gluck,* No. 03 Civ. 597(RWS), 2003 WL 1344953, at *1 n. 1, 2003 U.S. Dist. LEXIS 3846, at *2 n. 1 (S.D.N.Y. Mar. 19, 2003).

FN4. Reference is to Plaintiff's Memorandum of Law in Opposition to the Solutia Defendants' Motion to Dismiss dated August 11, 2005.

S.D.N.Y.,2006.
Dickerson v. Feldman
--- F.Supp.2d ----, 2006 WL 838999 (S.D.N.Y.), 37 Employee Benefits Cas. 1503

Briefs and Other Related Documents (Back to top)

• 2005 WL 2582582 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law of Defendant the Northern Trust Company in Further Support of its Motion to Dismiss The Second Amended Complaint for Failure to State a Claim (Sep. 1, 2005)
• 2005 WL 2582587 (Trial Motion, Memorandum

and Affidavit) Reply Memorandum of Law in Support of the Solutia Defendants' Motion to Dismiss Plaintiff's Second Amended Class Action Complaint (Sep. 1, 2005)
• 2005 WL 2582562 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum of Law in Opposition to the Solutia Defendants' Motion to Dismiss (Aug. 11, 2005)
• 2005 WL 2582577 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum of Law in Opposition to the Northern Trust Company's Motion to Dismiss (Aug. 11, 2005)
• 2005 WL 2157157 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of the Solutia Defendants' Motion to Dismiss Plaintiff's Second Amended Class Action Complaint (Jul. 5, 2005)
• 2005 WL 2157156 (Trial Motion, Memorandum and Affidavit) Memorandum of Law of Defendant the Northern Trust Company in Support of its Motion to Dismiss the Second Amended Complaint for Failure to State a Claim (Jul. 1, 2005)
• 1:04cv07935 (Docket) (Oct. 7, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# APPENDIX C

Westlaw.

Not Reported in F.Supp.                                                          Page 1

Not Reported in F.Supp., 1994 WL 758662 (N.D.Cal.), 18 Employee Benefits Cas. 1926, Pens. Plan Guide (CCH) P 23895H
**(Cite as: Not Reported in F.Supp.)**

**H**
Briefs and Other Related Documents

United States District Court, N.D. California.
Edward J. FLYNN, II, individually and on behalf of
the Edward J. Flynn, II, Individual Retirement
Account, et al., Plaintiffs,
v.
Douglas G. BALLINGER, et al., Defendants.
**No. C 94-0190 SBA.**

May 9, 1994.

*ORDER GRANTING DEFENDANTS' MOTION TO
DISMISS*
ARMSTRONG, District Judge.
**\*1** Plaintiffs are two former employees of Pacific Lithograph Company, Inc., who allege that defendants breached their fiduciary duties under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. [FN1] The parties are presently before the Court on defendants' motion to dismiss for lack of subject matter jurisdiction brought pursuant to Federal Rule of Civil Procedure 12(b)(1). After having read the papers submitted and considered the arguments of the parties, the Court concludes that defendants' motion should be granted.

*BACKGROUND*

Plaintiffs Edward J. Flynn II and Edwin L. Griffith, Jr.[FN2] are former employees of Pacific Lithograph Company, Inc. ("the Company"). During their employment, plaintiffs participated in the Company's Employee Stock Ownership Plan (" ESOP"). An ESOP is a type of ERISA plan that primarily invests in the employer which created the plan.

Plaintiffs' resignation from the Company became

effective on February 28, 1992. In accordance with section 14 of the ESOP, plaintiffs received the Company stock which previously had been credited to their respective ESOP accounts. Plaintiffs then immediately rolled over the stock into their Individual Retirement Accounts. Pursuant to Section 16 of the ESOP, plaintiffs also received a " put option" which permits them to "put" or sell their stock back to the Company. Plaintiffs attempted to do so, however, the Company refused and continues to refuse to honor the put options.

Plaintiffs filed the instant action in this Court on January 19, 1994. They allege that defendants wrongfully caused the Company to refuse to honor the put options and withhold ESOP benefits in breach of their fiduciary duties under ERISA. Defendants presently seek to dismiss the complaint under Rule 12(b)(1) for lack of subject matter jurisdiction. Defendants assert that because plaintiffs have already received all employee benefits to which they were entitled under the ESOP, plaintiffs no longer qualify as ERISA " participants." As such, defendants argue that plaintiffs lack standing to sue under ERISA.

*LEGAL STANDARD*

Federal Rule of Civil Procedure 12(b)(1) permits a party to seek dismissal of an action for lack of subject matter jurisdiction. In adjudicating such a motion, the court is not limited to the pleadings, and may properly consider extrinsic evidence. *See Farr v. United States,* 990 F.2d 451, 454 (9th Cir.), *cert. denied,* 114 S.Ct. 634 (1993). The plaintiff bears the burden of establishing subject matter jurisdiction, and the court presumes lack of jurisdiction until the plaintiff proves otherwise. *See Stock West, Inc. v. Confederated Tribes,* 873 F.2d 1221, 1225 (9th Cir.1989). "Wherever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 2

Not Reported in F.Supp., 1994 WL 758662 (N.D.Cal.), 18 Employee Benefits Cas. 1926, Pens. Plan Guide (CCH)
P 23895H
**(Cite as: Not Reported in F.Supp.)**

matter, the court shall dismiss the action."
Fed.R.Civ.P. 12(h)(3).

### DISCUSSION

"Standing is a necessary element of federal-court jurisdiction." *South Lake Tahoe v. California Tahoe,* 625 F.2d 231, 233 (9th Cir.), *cert. denied,* 449 U.S. 1039 (1980). In order to have standing under ERISA, plaintiff must qualify as a participant, beneficiary, or fiduciary within the meaning of section 502(a) of the statute. *See* 29 U.S.C. § 1132(a) (1985). ERISA defines a "participant" as:
*2 [A]ny employee or former employee of an employer, or any member or former member of an employee organization, *who is or may become eligible to receive a benefit of any type from an employee benefit plan* which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7) (Supp.1994) (emphasis added). A former employee is a "participant" if he or she has a reasonable expectation of returning to covered employment or has a "colorable claim" to vested benefits. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 110, 117 (1989).

A former employee is *not a participant* if his or her vested benefits "have already been distributed in a lump sum, ..." *Kuntz v. Reese,* 785 F.2d 1410, 1411 (9th Cir.) (per curiam), *cert. denied,* 479 U.S. 916 (1986). *Id.* As in *Kuntz,* the plaintiffs in this action have received all of the benefits to which they were entitled under the ESOP. It is undisputed that following their resignations, plaintiffs received the Company stock previously credited to their ESOP accounts along with the corresponding put options. (*See* Com pl. ¶ ¶ 16-17.) As such, they are not entitled to any additional benefits from the ESOP. This Court, therefore, concludes that plaintiffs lack the requisite standing to assert any claims under ERISA. *Kuntz,* 785 F.2d at 1411 ("Former employees who have neither a reasonable expectation of returning to covered employment nor a colorable claim to vested

benefits simply do not fit within the 'may become eligible' language of § 1002(7)").[FN3]

Plaintiffs' attempts to avoid dismissal under *Kuntz* are unavailing. This Court disagrees with their contention that the Company's refusal to honor the put options constitutes a denial of ERISA benefits under the ESOP. As defendants correctly point out, the put options are binding on the Company, not the ESOP. *See* 26 U.S.C. § 409(h)(1)(B) (Sup.1994) (providing ESOP participants the right to demand that *the employer* purchase the employer securities if they are not readily tradable on an established market); 29 C.F.R. § 2550.408b-3(j) (1994) (regulation promulgated under ERISA providing that "*[u]nder no circumstances* may the put option bind the ESOP.") (emphasis added).[FN4] Because the put options are not binding on the ESOP, plaintiffs cannot reasonably expect to " become eligible to receive a benefit of any type from an employee benefit plan." *See* 29 U.S.C. § 1002(7) (Supp.1994).

Equally without merit is plaintiffs' argument that this action falls within the exception to *Kuntz* articulated in *Amalgamated Clothing & Textile Workers Union, AFL-CIO v. Murdock,* 861 F.2d 1406, 1411 (9th Cir.1988). In *Murdock,* the Ninth Circuit found that even though plan participants had received their defined benefits, they nevertheless had standing to sue under ERISA. *Id.* Central to the court's limited holding, however, was the fact that the defendant-fiduciaries allegedly violated their duty of loyalty by placing the plan assets at risk, engaging in self-dealing, and amending the plan so that any ill-gotten profits would be distributed to one of the defendant-fiduciaries. *Id.* at 1418. Because these critical elements are absent from this case, *Murdock* is inapposite. *See Kayes v. Pacific Lumber Co.,* C-89-3500 SBA, 1993 WL 18730 at *2, 1993 U.S.Dist. LEXIS 7280 (N.D.Cal. May 24, 1993) (noting that *Murdock* should be narrowly construed).

### CONCLUSION

*3 Plaintiffs have received all of the benefits to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                 Page 3

Not Reported in F.Supp., 1994 WL 758662 (N.D.Cal.), 18 Employee Benefits Cas. 1926, Pens. Plan Guide (CCH)
P 23895H
**(Cite as: Not Reported in F.Supp.)**

which they are entitled under the ESOP. Because plaintiffs are no longer participants within the meaning of ERISA, they lack standing to assert ERISA claims. Accordingly,

IT IS HEREBY ORDERED THAT defendants' motion to dismiss for lack of subject matter jurisdiction is GRANTED.

IT IS SO ORDERED.

### JUDGMENT

In accordance with this Court's Order Granting defendants' motion to dismiss,

IT IS HEREBY ORDERED THAT final judgment is entered in favor of defendants.

IT IS SO ORDERED.

FN1. The defendants, who are allegedly ERISA fiduciaries, are Douglas G. Ballinger, Byron Geils, Michael J. John, Edward C. Roulades, Williams S. Swindells, and the Pacific Lithograph Company, Inc. Employee Stock Ownership Plan. Pacific Lithograph Company, Inc., is currently in bankruptcy and is not a party to this action.

FN2. Flynn and Griffith bring this action on behalf of themselves and their respective Individual Retirement Accounts.

FN3. Other circuits have followed the rule enunciated in *Kuntz. E.g., Berger v. Edgewater Steel Co.,* 911 F.2d 911, 922 (3rd Cir.1990) (holding that former employees who had received benefits lacked standing under ERISA to sue for the subsequent elimination of those benefits), *cert. denied,* 499 U.S. 520 (1991); *Mitchell v. Mobil Oil Corp.,* 896 F.2d 463, 473-74 (10th Cir.) (holding that plaintiff lacked standing to assert breach of

fiduciary duty under ERISA where he had already received his retirement annuity), *cert. denied,* 498 U.S. 898 (1990).

FN4. During oral argument, counsel for plaintiffs conceded that he could sue the Company directly for refusing to honor the put options. Counsel stated, however, that this was not his preference since the Company is currently in bankruptcy.

N.D.Cal.,1994.
Flynn v. Ballinger
Not Reported in F.Supp., 1994 WL 758662 (N.D.Cal.), 18 Employee Benefits Cas. 1926, Pens. Plan Guide (CCH) P 23895H

Briefs and Other Related Documents (Back to top)

• 3:94cv00190 (Docket) (Jan. 19, 1994)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.