# APPENDIX D

Westlaw.

Slip Copy                                                                         Page 1

Slip Copy, 2006 WL 1098233 (D.N.J.)
(Cite as: Slip Copy)

Briefs and Other Related Documents
Only the Westlaw citation is currently
available.NOT FOR PUBLICATION
United States District Court,D. New Jersey.
Howard GRADEN, Individually and On Behalf of
All Others Similarly Situated, Plaintiff,
v.
CONEXANT SYSTEMS, INC., Dwight W.
Decker, Armando Geday, Michael Vishny,
Balakrishnan S. Iyer, Robert McMullan, Dennis E.
O'Reilly, J. Scott Blouin, and Kerry K. Petry.,
Defendants.
No. Civ. 05-0695.

March 31, 2006.

Lisa J. Rodriguez, Trujillo Rodriguez & Richards,
LLP, Haddonfield, NJ, for Plaintiff.
Gregory B. Reilly, Deborah A. Silodor, Lowenstein
Sandler, PC, Roseland, NJ, for Defendants.

OPINION
CHESLER, District Judge
**\*1** THIS MATTER comes before the Court on
Defendants' Motion to Dismiss pursuant to Federal
Rules of Civil Procedure 12(b)(1), 12(b)(6), 8(a)
and 9(b). As will be discussed below, the Court
concludes that Plaintiff lacks standing to sue under
the provisions of the Employee Retirement Savings
Act of 1979 ("ERISA") and, therefore, GRANTS
Defendants' Motion to Dismiss.

I. Background

Plaintiff is a former participant in the Conexant
Retirement Savings Plan (the "Plan") who directed
some of his investments into Conexant stock. His
central allegation is that Defendants violated their
fiduciary duty to Plan participants by continuing to
allow Conexant stock to be offered as an investment
option to participants in the defined contribution

plan and encouraging Plan participants to invest in
Conexant stock, despite the stock's precipitous
decline following Conexant's merger with
Globespan Virata, Inc. ("Globespan").

Plaintiff claims that investments in Conexant stock "
became imprudent as a result of poor financial and
operating performance of the Company."
(Am.Compl., ¶ 7(c).) Specifically, the Amended
Complaint alleges that Conexant was a poor
investment option for the plan because of problems
with Conexant's merger with Globespan. (*Id.* at ¶
37.) Plaintiff asserts that Defendants made false and
misleading statements about the status of the
Globespan merger and about the merged company's
financial prospects. (*Id.* at ¶¶ 4-5, 37-62.) The
Amended Complaint further alleges that these
purported misstatements artificially inflated the
price of Conexant stock, which "declined
precipitously" when Conexant lowered its financial
projections. (*Id.* at ¶ 5.)

The Amended Complaint contains five counts:
Counts I and II assert a breach of fiduciary duty due
to the failure to prudently and loyally manage Plan
assets; Count III alleges a breach of fiduciary duty
due to the failure to provide complete and accurate
information to the Plan participants and
beneficiaries; Count IV alleges a breach of fiduciary
duty due to an alleged failure to monitor other Plan
fiduciaries; and Count V alleges a breach of
fiduciary duty resulting from transactions that were
prohibited under ERISA § 406.

Plaintiff seeks to represent a class of participants in
or beneficiaries of the Plan from March 1, 2004
through the present (the "putative class period").
(Am.Compl.¶¶ 2, 15, 76.) Plaintiff was a
Conexant employee until September 3, 2002.
(Rosen Decl., Ex. A (Graden Employment
Record).) [FN1] Plaintiff liquidated the balance of his
Plan account in October 2004, four months before
filing the original complaint in this action and ten
months before filing the Amended Complaint. (Am.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 2

Slip Copy, 2006 WL 1098233 (D.N.J.)
(Cite as: Slip Copy)

Compl., ¶ 15; Rosen Decl., Ex. B (Graden 401(k) Plan Statement for October 2004).) The Amended Complaint is brought against Conexant, the Plan sponsor, and various Conexant officers and directors who are alleged to be fiduciaries of the Plan under ERISA.

> FN1. In evaluating a motion to dismiss under rule 12(b)(6), a court may consider any document, such as Graden's employment record, that is "integral to or explicitly relied upon on in the complaint" as well as any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if plaintiff's claims are based on the document." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir.1997) (internal citations omitted); *see also DiFelice v. Aetna U.S. Healthcare,* 346 F.3d 442 (3d Cir.2003).

**\*2** As mentioned earlier, the Plan is a "defined contribution" or "individual account" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34). (Am.Compl., ¶ 25.) The Plan provides for individual accounts for each Participant, and benefits are payable based on the amounts contributed to these accounts, adjusted for any investment gains or losses. *(Id.)* Participants contribute a certain percentage of their salary to the Plan on a pre-tax basis. These amounts are invested among the Participant's choice of investment options available under the Plan. *(Id.* at ¶¶ 26-27.) Among the investment options provided by the Plan is a fund consisting solely of Conexant stock.

All of Plaintiffs' breach of fiduciary duty claims revolve around Defendants' alleged action and inaction with regard to the Conexant stock in the plan. Defendants, in their motion to dismiss, contend that the allegations in Plaintiffs' Amended Complaint fail to assert a viable claim for any breach of fiduciary duty by any defendant. The Court concludes that none of these issues need be reached because Plaintiff is not a plan participant under ERISA and, therefore, does not have standing

to sue for a breach of fiduciary duties under ERISA § 502(a).

## II. Discussion

To have standing to sue under ERISA § 502(a), a plaintiff must be "a participant, beneficiary, or fiduciary" of a plan. 29 U.S.C. § 1132(a). A " participant" is defined by ERISA as "an employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employ." 29 U.S.C. § 1002(7). " In order to establish that he or she [is eligible or] ' may become elegible' for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 117-18, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

Defendants move to dismiss Plaintiff's claims on the ground that he is no longer an employee or Plan participant and, therefore, is not a "participant" under ERISA, 29 U.S.C. § 1002(7). Accordingly, Defendants assert that Plaintiff lacks standing to bring breach of fiduciary duty claims on behalf of the Plan under ERISA, 29 U.S.C. § 1132(a)(2).

The standing of the Plaintiff to bring suit on behalf of the Plan for "appropriate relief" under ERISA hinges on the question of whether he is a " participant" under ERISA. 29 U.S.C. § 1002(7). " The requirement that a claimant be a 'participant' is a subject matter jurisdiction requirement as well as a standing issue." *Katzoff v. Eastern Wire Products Co.,* 808 F.Supp. 96, 98 (D.R.I.1992) (citations omitted). A party is a "participant" under ERISA if he has "either a colorable claim to vested benefits in the Plan or a reasonable expectation of returning to employment at [his former employer where he would again be covered by the Plan]." *Shawley v. Bethlehem Steel Corp.,* 989 F.2d 652, 655-56 (3d Cir.1993) (citing *Sladek v. Bell System Management Pension Plan,* 880 F.2d 972, 979 (7th Cir.1989)).

**\*3** Plaintiff makes no claim that he has any

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 3

Slip Copy, 2006 WL 1098233 (D.N.J.)
**(Cite as: Slip Copy)**

reasonable expectations of returning to Conexant as an employee. His argument is that he has a " colorable claim to vested benefits" that entitle him to standing. In essence, Plaintiff asserts that he has not received all the benefits to which he is entitled, and is seeking a recovery to the Plan of the losses caused by the alleged breaches of fiduciary duty. *See Mass. Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 140, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) (holding that recovery for ERISA breaches inure to the benefit of the Plan as a whole). These benefits would be paid first to the Plan and then distributed to the Plaintiff class as benefits through their Plan accounts.

The problem with the Plaintiff's claim is that, since he has no reasonable expectation of returning to work as an employee, he must have a "colorable claim to *vested* benefits" to have standing to proceed with his case. *Shawley,* 989 F.2d at 655-56 (emphasis added). As will be discussed below, what he is seeking is not, however, a "vested benefit" under ERISA.

The Third Circuit has definitively held that " damages stemming from [an] alleged breach of fiduciary duty does not constitute a "benefit" within the meaning of [29 U.S.C.] § 1002(8)." *Daniels v. Thomas and Betts Corp.,* 263 F.3d 66, 77 (3d. Cir.2001) (citing *Kuntz v. Reese,* 785 F.2d 1410, 1411 (9th Cir.1986). This Court has reached a similar conclusion under facts which are close to those presented in this case. *See In re RCN Litigation,* 2006 WL 753149, *14 (D.N.J. Mar.21, 2006); *McFarland v. Yegan Holdings Corp.,* 1989 U.S. Dist. Lexis 16965, *9-11 (D.N.J. Oct. 6, 1989).

Thus, the key question is whether Plaintiff has a colorable claim to vested benefits or is merely seeking damages. A good deal of light on this issue is shed by the Complaint itself. It indicates that Plaintiff seeks to have Defendants make good on all losses "including lost return on investments that would have resulted from prudent and loyal investment of the Plan's assets," and require Defendants to restore "the full value of all contributions used to make such investments, plus the return that would have been obtained had the assets been prudently invested in the best

performing alternative investment in the Plan." (Am. Compl. p 51, ¶¶ 3, 5.)

As the Fifth Circuit in *Sommers Drug Store Co. Employee Profit Sharing Trust v. Corrigan,* 883 F.2d 345 (5th Cir.1989) noted:
The distinction between "benefits" and "damages" is not clear. This is in part attributable to use of words with overlapping meaning to describe mutually exclusive categories. The statute simply grants rights of recovery only to a distinct and limited type of claim which itself is no more than a suit for damages, albeit personally suffered because participants should have been paid under the plan but were not. Clearly, a plaintiff alleging that his benefits were wrongly computed has a claim for vested benefits. Payment of the sum sought by such a plaintiff will not increase payments due him. On the other hand, a plaintiff who seeks the recovery for the trust of an unascertainable amount, with no demonstration that the recovery will directly effect payment to him, would state a claim for damages, not benefits.

*4 *Id.* at 349-350.

In *Sommers,* the court concluded that where plaintiffs claimed that defendant fiduciaries had redeemed their shares of stock in an ESOP at less than fair market value, plaintiffs had a claim for vested benefits-because they were essentially suing for benefits that were wrongfully withheld. In *Hargrave v. TXU Corp.,* 392 F.Supp.2d 785 (N.D.Tex.2005), the court relied on *Sommers* analysis to conclude that breach of fiduciary duty claims, virtually identical to those asserted here, constituted damages claims. In reaching this holding, the *Hargrave* Court conducted the following analysis:
Plaintiffs' claims in this case are readily distinguishable from the claims made in *Sommers.* In *Sommers,* the plaintiffs argued that the full market value of the plan assets was greater than the amount they received when the assets were distributed. *Sommers,* 883 F.2d at 350. Stated another way, the total value of the plan assets was a certain amount that was calculable, and the plaintiffs argued that they did not receive that full calculable value because the defendants held back

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 4

Slip Copy, 2006 WL 1098233 (D.N.J.)
**(Cite as: Slip Copy)**

some of the proceeds for themselves. The *Sommers* plaintiffs sued to recover the rest of the benefits that were wrongfully withheld. See Id. Thus, the Fifth Circuit concluded that the plaintiffs' claims were in fact for vested benefits rather than for damages. Id.

The named Plaintiffs in this case, by way of contrast, do not allege that the Defendants held back a portion of the benefits of the plan. Rather, they argue that the amount in the entire plan was too small. Specifically, Plaintiffs allege that Defendants' investment in TXU stock resulted in an overall diminution of plan assets, which were then distributed to the Plaintiffs. The allegation is not that benefits were withheld, but that there should have been more benefits to go around. This argument states a claim for "a sum that possibly could have been earned" if Defendants had made prudent investment decisions with respect to plan assets. *See Yancy,* 768 F.2d at 709. The named Plaintiffs have already received all the benefits that accrued under their Thrift Plan accounts. They are now seeking additional damages that *might have* accrued but for Defendants' alleged misconduct. *See Id.* These additional damages are speculative and cannot be considered as vested under ERISA. *See Id.*

Unlike *Sommers,* the named Plaintiffs' argument does not resemble an allegation that benefits were simply miscalculated and cannot be construed as a claim for vested benefits. On the contrary, Plaintiffs are demanding that Defendants make good to the Thrift Plan for the *losses sustained* as a result of the investments in TXU stock. This argument most closely resembles a claim for damages to the plan.

*Id.* at 789-90 (emphasis in original).

This Court believes that the *Hargrave* Court's analysis is correct and applies to this case. As much as one might wish to engage in semantic gymnastics, there is simply no way to conclude that a claim which seeks reimbursement for the "lost return on investments that would have resulted from prudent and loyal investment of plan assets" is one for vested benefits. Nor is there any way to conclude that a claim for "the return that would have been obtained had the assets been prudently invested in the best performing alternative investment in the plan" is anything other than a

claim for damages. Such allegations seek to claim a sum that could possibly be earned if the Defendants did not commit the alleged breaches of fiduciary duty. Additional damages that might have accrued, however, are "speculative and cannot be considered as vested under ERISA." *Hargrave,* 392 F.Supp.2d at 790; *accord Lalonde v. Textron, Inc.,* 2006 WL 519671, *5 (D.R.I. March 1, 2006).

*5 The difference between what the Plaintiffs' account *might have* earned and what it actually earned is not a benefit that is promised for, or promised under, the terms of the Plan. The remedy being sought here is not the payment of a vested benefit, but rather a monetary damage amount for an alleged breach of fiduciary duty. *See Sommers,* 883 F.2d at 350. The Plaintiff received all the benefits due to him when he left Conexant's employment and withdrew from the Plan. "At that point, without the reasonable expectation of returning to [Conexant] as [an] employee[ ], and absent a colorable claim to vested benefits, [he] ceased to be [a] participant[ ] under ERISA." *Lalonde,* 2006 WL 519671 at *5.

The Court recognizes that there are serious and substantial policy arguments which can be made in favor of granting plaintiff standing in a case such as this. *See, e.g., Rankin v. Rots,* 220 F.R.D. 511 (E.D.Mich.2004), *and In Re Mut. Funds Inv. Litig.,* 403 F.Supp.2d 434 (D.Md.2005). The primary argument presented in these opinions is that to find that such former participants lack standing "would permit [defendants] to exclude potential class members by simply paying them their vested benefits. ERISA should not be interpreted to circumvent a plaintiffs' recovery in this way." *In Re Mut. Funds,* 403 F.Supp.2d at 442 (quoting *Rankin,* 220 F.R.D. at 514).

The problem with this approach is that it renders the statutory standing provision a nullity. In effect these courts conclude that, because interpreting the statute as written would deny plaintiffs a remedy, the statute, and its definitive interpretation by the Supreme Court in *Firestone Tire & Rubber,* should be either ignored, or that suits which clearly seek damages should be transformed by judicial legerdemain into suits for "vested benefits." This

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                           Page 5

Slip Copy, 2006 WL 1098233 (D.N.J.)
**(Cite as: Slip Copy)**

Court is satisfied that neither is a proper role for this Court.[FN2]

> FN2. The Court notes that a number of cases have:
> developed an exception to the general rule that a person who terminates his right to belong to a plan cannot be a "participant" in the plan. Specifically, if the employer's breach of fiduciary duty causes the employee to either give up his right to benefits or to fail to participate in a plan, then the employee has standing to challenge that fiduciary breach,
> *Swinney v. Gen. Motors Corp.,* 46 F.3d 512, 519 (6th Cir.1995). Since no such assertion has been made in this case, the Court need not decide whether or not this exception is indeed warranted. *See Adamson v. Armco Inc.,* 44 F.3d 650, 655 (8th Cir.1995) (exception only applies when fiduciary's breach of duty deprives plaintiff of participant status-not where loss of status results from plaintiff's own actions).

Plaintiff also cites to the recent Third Circuit decision *In re Schering-Plough Corporation ERISA Litigation,* 420 F.3d 231 (3d Cir.2005) to support his claim that former Plan participants have standing to pursue ERISA claims against the Plan's fiduciaries for imprudently managing the Plan's assets. The holding in *Schering,* however, is not at issue in the current case. It is well established that any claim for breach of fiduciary duty under ERISA must seek relief for the plan as a whole, rather than for individual plan participants. *See Byrd v. Reliance Standard Life Ins. Co.,* 160 Fed. Appx. 209, n4 (3d Cir.2005) (on ERISA claims for breach of fiduciary duty, "relief is available to the plan, not to individual plan participants") (citing *McMahon v. McDowell,* 794 F.2d 100, 109 (3d Cir.1986); *Alexander v. Whitman,* 114 F.3d 1392, 1397 (3d Cir.1997); *Hein v. Fed. Deposit Ins. Corp.,* 88 F.3d 210, 223 (3d Cir.1996); *Ream v. Frey,* 107 F.3d 147, 151 (3d Cir.1997); *Haberern v. Kaupp Vascular Surgeons, Ltd. Defined Benefit Pension Plan,* 24 F.3d 1491, 1501 (3d Cir.1994)); *In re*

*RCN Litigation,* 2006 WL 753149 at *13-14; *Compton Press, Inc. Employees' Profit Sharing Retirement Plan v. Granada Investments, Inc.,* 1992 WL 566329, *9 (D.N.J. Nov.23, 1992) (holding that a "suit against a benefit plan fiduciary for breach of fiduciary duties may only be brought for the benefit of the plan") (citations omitted).) Under *Schering,* the fact that a given plan is segregated into individual participant accounts does not mean that a loss to a particular account (or group of accounts) is not also a loss to the Plan as a whole. *Schering,* 420 F.3d at 237. Accordingly, the *Schering* Court overturned a district court's holding that prevented plaintiffs from pursuing a derivative action on behalf of an employees' savings plan on the grounds that the plaintiffs were seeking compensation for losses inflicted on only a subset of the plan's accounts and that the plaintiffs were seeking an allocation of damages among individual plan participants' accounts in proportion to the accounts' losses. *Id.* at 234. The *Schering* Court held that "the fact that damages paid to [a] Savings Plan for breaches of fiduciary duties will also indirectly benefit its participants does not bar a derivative action under §§ 1109 and 132(a)(2)." *Id.* at 241 (citing *Smith v. Sydnor,* 184 F.3d 356, 363 (4th Cir.1999).

*6 *Schering* holds that participants may seek damages on behalf of the Plan for alleged breaches of fiduciary duty that had an adverse financial impact to only a subset of the Plan's accounts (namely, those with investments in Conexant securities). It also holds that participants may seek damages on behalf of the Plan which may be appropriately allocated to individual Plan participants' accounts. Both of these issues are precluded by the *Schering* decision. The issue of whether a former employee has standing, under the requirements of *Shawley* to bring suit on behalf of RCN's savings plan, however, was not addressed by the *Schering* Court.

### III. Conclusion

In short, this Court agrees with the *Lalonde* Court " that the distinction between damages and vested benefits is real and the concepts must not be

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 6

Slip Copy, 2006 WL 1098233 (D.N.J.)
**(Cite as: Slip Copy)**

conflated in order to expand participant standing beyond what Congress provided in § 1002(7). 2006 WL 51967, at *5. For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss. An appropriate form of order will follow.

D.N.J.,2006.
Graden v. Conexant Systems, Inc.
Slip Copy, 2006 WL 1098233 (D.N.J.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1042654 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Memorandum of Law in Support of Their Motion to Dismiss (Mar. 10, 2006) Original Image of this Document (PDF)
• 2005 WL 3172591 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of Their Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), 8(a) and 9(b) (Oct. 12, 2005)
• 2005 WL 2510716 (Trial Pleading) Amended Class Action Complaint for Violations of Erisa (Aug. 11, 2005)
• 2005 WL 692304 (Trial Pleading) Class Action Complaint for Violations of Erisa (Feb. 1, 2005)
• 3:05cv00695 (Docket) (Feb. 1, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# APPENDIX E

Westlaw.

Slip Copy                                                                                          Page 1

Slip Copy, 2006 WL 626402 (S.D.Tex.)
**(Cite as: Slip Copy)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,S.D. Texas, Houston
Division.
Dale L. HOLTZSCHER and Sedonna S. Jordan,
Individually and on Behalf of Others Similarly
Situated, Plaintiffs,
v.
DYNEGY, INC., Dynegy, Inc. Benefit Plans
Committee, Louis Dorey, Robert D. Doty, Jr., Alec
G. Dreyer, Andrea Lang, Michael Mott, Milton L.
Scott, and R. Blake Young, Defendants.
**No. Civ.A. H-05-3293.**

March 13, 2006.

Scott Monroe Clearman, Brian Dean Walsh,
Michael D. Myers, McClanahan Clearman LLP,
Thomas R. McDade, McDade & Fogler, Houston,
TX, for Plaintiffs.
Jacks C. Nickens, Nickens Keeton et al., Houston,
TX, Marc E. Levin, Morgan D. Hodgson, Paul J.
Ondrasik, Jr., Ryan Jenny, Steptoe & Johnson LLP,
Washington, DC, for Defendants.

*MEMORANDUM OPINION AND ORDER*
LAKE, J.
**\*1** Plaintiffs, Dale L. Holtzscher and Sedonna S.
Jordan, bring this action pursuant to § 502(a)(2) of
the Employee Retirement Income Security Act
(ERISA), 29 U.S.C. § 1132(a)(2),[FN1] individually
and on behalf of other similarly situated participants
and beneficiaries of the Illinois Power Company
Incentive Savings Plan (the "Plan"), and
representatively on behalf of the Plan,[FN2] against
defendants, Dynegy, Inc. ("Dynegy" or "the
Company"), Dynegy, Inc.'s Benefit Plans
Committee, Louis Dorey, Robert D. Doty, Jr., Alec
G. Dreyer, Andrea Lang, Michael Mott, Milton L.
Scott, and R. Blake Young,[FN3] for breach of
fiduciary duties including the duty not to make
affirmative material misrepresentations, the duty to

disclose and inform, the duty to eliminate
inappropriate investment options, and the duty to
avoid conflicts of interest, and for co-fiduciary
liability and knowing participation in a breach of
fiduciary duty during a proposed class period
beginning on January 1, 2002, and ending on
January 30, 2003.[FN4] Plaintiffs seek monetary
payment to make the Plan whole for losses caused
by breach of defendants' fiduciary duties in
violation of ERISA § 409, 29 U.S.C. § 1109(a),
replacement of the Plan Committee defendants with
independent fiduciaries pursuant to ERISA § 409,
29 U.S.C. § 1109(a), injunctive and other
appropriate equitable relief, reasonable attorneys'
fees and expenses, and interest on some or all of
these amounts.[FN5] Pending before the court are
Defendants' Motion to Dismiss Plaintiffs' Complaint
(Docket Entry No. 19), Defendant Robert D. Doty's
Motion to Dismiss (Docket Entry No. 20), and
Plaintiffs' Motion to Consolidate (Docket Entry No.
27). For the following reasons defendants' motions
to dismiss will be granted, plaintiffs' motion to
consolidate will be denied as moot, and this action
will be dismissed for lack of subject matter
jurisdiction.

FN1. Original Complaint (OC), Docket
Entry No. 1, p. 26 ¶ 106.

FN2. *Id.* at p. 1 ¶ 1.

FN3. *Id.* at pp. 3-6 ¶¶ 9-19.

FN4. *Id.* at pp. 17-25 ¶¶ 60-99.

FN5. *Id.* at p. 27 ¶ 108.

I. *Standard of Review*

Defendants seek dismissal for lack of subject matter
jurisdiction pursuant to Federal Rule of Civil
Procedure 12(b)(1) and for failure to state a claim
for which relief may be granted pursuant to Federal

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                Page 2

Slip Copy, 2006 WL 626402 (S.D.Tex.)
**(Cite as: Slip Copy)**

Rule of Civil Procedure 12(b)(6). When a Rule 12(b)(1) motion is filed together with other Rule 12 motions, the court should address the jurisdictional attack before addressing any attack on the merits. *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir.2001), *cert. denied sub nom Cloud v. United States,* 536 U.S. 960, 122 S.Ct. 2665, 153 L.Ed.2d 839 (2002) (citing *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir.1977) (per curiam) (" Dismissal ... for failure to state a claim is a decision on the merits ... whereas a dismissal on jurisdictional grounds alone is not on the merits.")).

## II. *Rule 12(b)(1) Motion to Dismiss*

Defendants argue that plaintiffs' complaint should be dismissed under Rule 12(b)(1) because plaintiffs lack standing to assert claims on behalf of the Plan and because the court lacks jurisdiction to adjudicate the claims that they have asserted.[FN6]

> FN6. Defendants' Memorandum of Law in Support of their Motion to Dismiss Plaintiffs' Complaint, Docket Entry No. 19, p. 9; Defendant Robert D. Doty's Motion to Dismiss, Docket Entry No. 20, p. 1 (joining the motion to dismiss filed by his co-defendants), and p. 2 (expressly seeking dismissal on grounds that plaintiffs lack standing to bring this action).

### A. Standard of Review

**\*2** Federal courts are courts of limited jurisdiction and, absent jurisdiction conferred by statute or the Constitution, are without power to adjudicate claims. *See Kokkonen v. Guardian Life Insurance Company of America,* 511 U.S. 375, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994); *Howery v. Allstate Insurance Co.,* 243 F.3d 912, 916 (5th Cir.) , *cert. denied,* 534 U.S. 993, 122 S.Ct. 459, 151 L.Ed.2d 377 (2001). A Rule 12(b)(1) motion to dismiss challenges the subject matter jurisdiction of the federal district court. " 'A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." ' *Home Builders*

*Association of Mississippi, Inc. v. City of Madison, Mississippi,* 143 F.3d 1006, 1010 (5th Cir.1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1187 (2d Cir.1996)). "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming,* 281 F.3d at 161 (citing *Barrera-Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir.1996)). All uncontroverted allegations in the complaint must be accepted as true. *Williamson v. Tucker,* 645 F.2d 404, 412 (5th Cir.1981)). The burden of proof for a Rule 12(b)(1) motion is on the party asserting federal jurisdiction. *Id.*

### B. Analysis

Defendants argue that the court lacks subject matter jurisdiction because neither plaintiff has standing to assert claims on behalf of the Plan since neither plaintiff was a Plan participant on September 20, 2005, when this action was filed.[FN7] Plaintiffs argue that they have standing to bring this action because they are former employees who have a colorable claim to vested benefits.[FN8]

> FN7. Defendants' Memorandum of Law in Support of their Motion to Dismiss Plaintiffs' Complaint, Docket Entry No. 19, p. 9; Defendant Robert D. Doty's Motion to Dismiss, Docket Entry No. 20, p. 2.

> FN8. Plaintiffs' Response to Defendants' Motion to Dismiss and Memorandum of Law in Support, Docket Entry No. 24, pp. 7-8.

#### 1. *Undisputed Facts*

The undisputed facts are that both plaintiffs are former employees of Illinois Power Company, a Dynegy subsidiary, who participated in the Plan until their employment ended on September 30,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 3

Slip Copy, 2006 WL 626402 (S.D.Tex.)
**(Cite as: Slip Copy)**

2004, and that the plaintiffs both voluntarily withdrew the full balance of their Plan accounts before filing this action.[FN9]

> FN9. See Declaration of Bethany Spurrier, Exhibit C attached to Memorandum in Support of Defendants' Motion to Dismiss, Docket Entry No. 19, ¶¶ 2-4 (stating that Jordan withdrew the full balance of her Plan accounts on November 16, 2004, and that Holtzscher withdrew the full balance of his Plan accounts on January 7, 2005).

### 2. Standing

Standing is "essential to the exercise of jurisdiction." *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan,* 883 F.2d 345, 349-350 (5th Cir.1989). *See also Rivera v. Wyeth-Ayerst Laboratories,* 283 F.3d 315, 318-319 (5th Cir.2002) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Plaintiffs have brought this action pursuant to 29 U.S.C. § 1132(a)(2), which authorizes a "participant," "beneficiary," or "fiduciary" to bring a civil action for breach of any fiduciary duty proscribed by 29 U.S.C. § 1109. These terms have special meaning under ERISA. "The term 'participant' means any employee or former employee of an employer ... who is or may become eligible to receive a benefit ... from an employee benefit plan ..." 29 U.S.C. § 1002(7). "The term 'beneficiary' means a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). The Supreme Court has held that a former employee "may become eligible" to receive benefits under a qualified plan when he or she has (1) a reasonable expectation of returning to covered employment or (2) a colorable claim to vested benefits. *See Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 958, 103 L.Ed.2d 80 (1989).

*3 When determining whether a former employee has a colorable claim to vested benefits, the Fifth Circuit distinguishes between claims for vested benefits and claims for damages. *See Yancy v.* *American Petrofina, Inc.,* 768 F.2d 707, 708 (5th Cir.1985), and *Sommers,* 883 F.2d at 349-350. Former employees suing for damages do not have standing to sue under ERISA because they have already received the full amount due to them under the terms of the plan. *See Yancy,* 768 F.2d at 708-709. Former employees suing for vested benefits do have standing to sue under ERISA because they have not received the full amount due to them under the terms of the plan. *See Sommers,* 883 F.2d at 349-350.

#### (a) Yancy

In *Yancy,* 768 F.2d at 707, a pension plan participant took early retirement from American Petrofina, and elected to receive his benefits in one lump-sum payment in order to avoid an announced decrease in the interest rate factor used to compute such payments. Over a year later he sued American Petrofina alleging that the change in the method of computing interest caused him to retire early, violated the plan, and breached fiduciary duties imposed by ERISA. The district court granted summary judgment for American Petrofina on grounds that Yancy lacked standing to sue under ERISA. Affirming the district court's conclusion that Yancy lacked standing to bring ERISA claims, the Fifth Circuit explained that

[a] participant or beneficiary is defined as an employee or former employee who is or may be eligible to receive a benefit under the plan. 29 U.S.C. § 1002(7). "This excludes retirees who have accepted the payment of everything owed to them in a lump sum, because these erstwhile participants have already received the full extent of their benefits and are no longer eligible to receive future payments." *Joseph v. New Orleans Electrical Pension & Retirement Plan,* 754 F.2d 628, 630 (5th Cir.1985) ... Yancy accepted his lump sum when he retired prior to the effective date of the amendment. He admits that the lump sum was the full amount due to him under the terms of the plan as in effect when he retired. ERISA does not provide standing for him to come into court over a year later and complain that a change in the plan effective after his retirement forced him to retire early thereby depriving him of several years of income and so

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                           Page 4

Slip Copy, 2006 WL 626402 (S.D.Tex.)
**(Cite as: Slip Copy)**

decreasing his final retirement benefit.

768 F.2d at 708. Explaining that "Yancy's claim is not for an ascertainable amount, but for a [speculative] sum that possibly could have been earned if he had continued working," *id.* at 709, the Fifth Circuit concluded that Yancy lacked standing to pursue an ERISA claim because he had "already received all benefits vested in him prior to his retirement." *Id.*

#### (b) *Sommers*

In *Sommers* a class of plaintiffs filed suit under ERISA alleging breaches of fiduciary duties with respect to the sale of company stock held by a qualified employee benefits plan. 883 F.2d at 347. Asserting that the defendants, in connection with the liquidation and distribution of plan assets, sold the plan's shares of company stock at a price below fair market value, the plaintiffs alleged that the amount of money received from the stock sale and distributed to plan participants did not reflect the full value of the benefits due under the terms of the plan. *See id.* at 350. Citing *Yancy,* 768 F.2d at 707, the defendants argued that the class representatives were not ERISA plan "participants" because they had accepted their vested benefits in a lump-sum payment and, thus, were no longer eligible or likely to become "eligible to receive a benefit" under the plan. *Id.* at 347-348. Stating that in *Yancy* "we had no difficulty concluding that plaintiff's claim was for damages rather than for vested benefits," *id.* at 349, the Fifth Circuit observed that "whether a claim is for vested benefits is not always apparent." *Id.* Explaining that an allegation that benefits were wrongly computed would state a claim for vested benefits, while a claim for recovery of an unascertainable amount, with no demonstration that the recovery will directly affect payment to the claimant, would state a claim for damages, not benefits, *id.* at 349-350, the *Sommers* court described the plaintiffs' claims as falling between the two "poles" of vested benefits and damages, and characterized its task as having to determine which type of recovery the plaintiffs' claims most closely resembled. *Id.* at 350. Reasoning that the plaintiffs' claim was "quite close to a simple claim that

benefits were miscalculated," *id.,* the Fifth Circuit concluded that the plaintiffs' allegations stated a claim for vested benefits, and that the class representatives qualified as "participants" authorized to bring suit under ERISA. *Id.* The Fifth Circuit explained that in that case it was plain that the class members sought "their share of the difference between the price the representatives received for their shares and the fair market value of those shares at the time they were sold." *Id.*

#### 3. *Application of the Law to the Facts*

*\*4 Plaintiffs have alleged breaches of fiduciary duties with respect to shares of stock purchased and held by the Plan. As in *Sommers,* these claims fall between the two "poles" of vested benefits and damages. The court must therefore decide whether the plaintiffs' allegations most closely resemble a claim for vested benefits or for damages. Upon careful consideration, the court concludes that the plaintiffs' allegations more closely resemble a claim for damages than a claim for vested benefits, and that for the reasons explained below, the plaintiffs do not qualify as Plan participants authorized to bring suit under ERISA.

#### (a) Factual Basis to Plaintiffs' Claims

Plaintiffs' claims are based on allegations that defendants made false and misleading statements about Dynegy's revenues, earnings, and operations. Plaintiffs allege that these false and misleading statements inflated the price of Dynegy stock that defendants made available for purchase as a Plan asset, and that they were damaged when the price of Dynegy stock fell once the true nature of Dynegy's finances and operations came to light. The factual allegations asserted in plaintiffs' Original Complaint focus exclusively on the defendants' alleged misconduct, consisting of various breaches of fiduciary duties (including the duty not to make affirmative material misrepresentations, the duty to disclose and inform, the duty to eliminate inappropriate investment options, and the duty to avoid conflicts of interest), during the proposed class period (January 1, 2002, to January 30, 2003).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 5

Slip Copy, 2006 WL 626402 (S.D.Tex.)
**(Cite as: Slip Copy)**

### (b) Nature of Plaintiffs' Claims

Plaintiffs' claims are readily distinguishable from the claims made in *Sommers,* 883 F.3d at 345. In *Sommers* the plaintiffs argued that the full market value of the plan assets was greater than the amount they received when the assets were distributed. *Sommers,* 883 F.2d at 350. In other words, the *Sommers* plaintiffs alleged that the total value of the plan assets was a calculable amount, and that they did not receive that full calculable value because the defendants sold the plan's shares of company stock at a price below fair market value. *Id.* Since the *Sommers* plaintiffs sued to recover the rest of the benefits that were wrongfully withheld, the Fifth Circuit held that the plaintiffs' claims were for vested benefits instead of for damages. *Id.*

Unlike the plaintiffs in *Sommers,* plaintiffs in this case do not allege that the defendants held back a portion of the calculable Plan benefits due to them when they voluntarily withdrew the proceeds of their accounts. Instead, plaintiffs allege that the amount in their Plan accounts available for withdrawal was too small because defendants' false and misleading statements about Dynegy's revenues, earnings, and operations resulted in an overall diminution in value of Plan assets (i.e., Dynegy stock) available for distribution. Since plaintiffs' claims seek compensation for losses sustained as a result of defendants' decision to include Dynegy stock as an asset in Plan accounts, the court concludes that plaintiff's claims are for additional, speculative sums that might have accrued but for the defendants' alleged misconduct, and that these claims more closely resemble claims for damages than claims for vested benefits. *See Sommers,* 883 F.3d at 349-350. *See also Hargrave v. TXU Corp.,* 392 F.Supp.2d 785 (N.D.Tex.2005) (reaching same conclusion on similar facts).

### III. *Conclusions and Order*

\*5 Plaintiffs contend that they have standing to bring this action as former employees who possess a colorable claim to vested benefits, i.e., as " participants" of an ERISA governed Plan. However, Congress has clearly defined "participants" as those

"who may become eligible" to receive benefits under a plan. 29 U.S.C. § 1002(7). The plaintiffs could have sued for damages before they withdrew their funds from the Plan because, at that point, they were still entitled to receive benefits under the Plan. Since, however, plaintiffs made a total withdrawal of their Plan accounts before filing suit, in order to qualify as Plan participants they must show that they have either (1) a reasonable expectation of returning to covered employment, or (2) a colorable claim to vested benefits. *See Firestone,* 109 S.Ct. at 948. Plaintiffs do not argue that they have a reasonable expectation of returning to covered employment, and for the reasons explained above the court concludes that plaintiffs have not stated a claim for vested benefits but, instead, for damages. Since plaintiffs have not stated a claim for vested benefits, the court concludes that plaintiffs lack standing to pursue the ERISA claims alleged in their Original Complaint, and that because plaintiffs lack standing to pursue ERISA claims, the court lacks subject matter jurisdiction over the claims that plaintiffs have asserted in this action. The conclusion that plaintiffs lack standing to pursue ERISA claims obviates the need to consider whether their claims are cognizable under ERISA. Accordingly, Defendants' Motion to Dismiss (Docket Entry No. 19) is GRANTED, the plaintiffs' Motion to Dismiss (Docket Entry No. 20) is GRANTED, and Plaintiffs' Motion to Consolidate (Docket Entry No. 27) is DENIED as MOOT.

S.D.Tex.,2006.
Holtzscher v. Dynegy, Inc.
Slip Copy, 2006 WL 626402 (S.D.Tex.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1203620 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum in Opposition to Plaintiffs' Motion to Consolidate (Mar. 6, 2006) Original Image of this Document (PDF)
• 2006 WL 433402 (Trial Motion, Memorandum and Affidavit) Reply of Defendant Dynegy Inc. and Committee Defendants Dorey, Dreyer, Lang, Mott, Scott and Young to Plaintiffs' Response To Defendants' Motion to Dismiss (Jan. 27, 2006)
• 2006 WL 433398 (Trial Motion, Memorandum

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 626402 (S.D.Tex.)
**(Cite as: Slip Copy)**

and Affidavit) Plaintiffs' Response to Defendants'
Motion to Dismiss and Memorandum of Law in
Support (Jan. 13, 2006)
• 2006 WL 433400 (Trial Motion, Memorandum
and Affidavit) Plaintiffs' Response to Defendant
Robert D. Doty's Motion to Dismiss (Jan. 13, 2006)
• 4:05cv03293 (Docket) (Sep. 20, 2005)
• 2005 WL 3829341 (Trial Pleading) Complaint
(ERISA) (2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# APPENDIX F

Westlaw.

Slip Copy                                                                                           Page 1

Slip Copy, 2005 WL 3454126 (N.D.Cal.), 36 Employee Benefits Cas. 1865
**(Cite as: Slip Copy)**

**C**
Briefs and Other Related Documents

United States District Court,N.D. California.
In re ADMINISTRATIVE COMMITTEE ERISA
LITIGATION
**No. C03-3302 PJH.**

Dec. 16, 2005.

Thomas E. Bilek, Kelly Cox Bilek, Hoeffner &
Bilek, LLP, Houston, TX, Lee Shalov, Thomas G.
Ciarlone, Shalov Stone & Bonner LLP, New York,
NY, Leigh Anne Parker, Weiss & Lurie, Los
Angeles, CA, for Plaintiffs.
James P. Baker, Virginia H. Perkins, Jones Day,
San Francisco, CA, for T. Rowe Price.
David L. Bacon, Thelen Reid & Priest LLP, Los
Angeles, CA, Donald Lawrence Havermann, Jessica
Ruth Bernanke, Morgan Lewis & Bockius LLP,
Washington, DC, Michael C. Hallerud, Ellen M.
Papadakis, Thelen Reid & Priest LLP, San
Francisco, CA, for Counter-Claimants.

ORDER DENYING MOTION FOR CLASS
CERTIFICATION AND DISMISSING
CONSOLIDATED AMENDED COMPLAINT

HAMILTON, J.
*1 Plaintiff Dale Ingle's motion for class
certification came on for hearing before this court
on November 16, 2005. Plaintiff appeared by his
counsel Thomas Bilek, and defendants appeared by
their counsel James P. Baker and David L. Bacon.
Having read the parties' papers and carefully
considered their arguments and the relevant legal
authority, and good cause appearing, the court
hereby DENIES the motion as follows and for the
reasons stated at the hearing.

INTRODUCTION

This is a proposed class action brought under §§
409 and 502 of the Employment Retirement Income
Security Act ("ERISA"), 29 U.S.C. § 1109(a) and §
1132(a)(2), on behalf of all participants in the
Emery Worldwide Savings Plan and the CNF
Transportation, Inc. Thrift and Stock Plan
(collectively, the "Plans") as of August 15, 2001.
The Plans are 401(k) plans that were established
and sponsored by defendants CNF, Inc. ("CNF"),
Emery Worldwide Airlines, Inc. ("EWA"), and
Emery Air Fright Corporation d/b/a Emery
Worldwide ("EWW"), also known as Menlo
Worldwide Forwarding, Inc., as a benefit for their
employees.

The complaint alleges that CNF, EWA, EWW, the
Plans, and the other defendants (the Administrative
Committee of the CNF, Inc. EWW Savings Plan
and the CNF, Inc. Thrift and Savings Plan ("
Administrative Committee"), T. Rowe Price Group,
Inc., T. Rowe Price Trust Company, and T. Rowe
Price Retirement Plan Services, Inc. breached their
fiduciary duties to the Plan participants when they
unilaterally "froze" or shut down access to their
401(k) accounts.

BACKGROUND

This case arises out of the demise of EWA in 2001.
Briefly, EWA operated a fleet of freighter aircraft
used exclusively by EWW. At the time of the events
alleged in the complaint, both EWA and EWW
were wholly-owned subsidiaries of CNF. On August
13, 2001, the Federal Aviation Administration ("
FAA") ordered an immediate suspension of EWA's
operations for 60 days, citing EWA's violations of
air safety regulations. Two months later, on
December 5, 2001, CNF announced that EWA
would permanently cease operating its fleet of
aircraft. All EWA flight crew members were
subsequently furloughed.

The complaint alleges that following the August 13,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 2

Slip Copy, 2005 WL 3454126 (N.D.Cal.), 36 Employee Benefits Cas. 1865
**(Cite as: Slip Copy)**

2001, suspension of operations, the Plan participants (the proposed class members) were notified that their access to the Plans was "frozen" as of August 12, 2001-that is, they could not alter the investment mix to sell their CNF stock, could not withdraw funds from the retirement Plans, could not borrow money from the funds in their accounts, and could not access their account balances or statements over the telephone or the Internet.

Access to the Plans was restored on October 15, 2001. The complaint alleges that during the two-month period that the participants were denied access to their accounts, the value of those accounts dropped significantly, in part because of a decline in the value of CNF stock (which some of the participants held in their 401(k) accounts), and in part because of a decline in the markets generally after September 11, 2001.

**\*2** The original complaint in this action was filed as *Administrative Committee v. Rachford,* case No. C-03-3302, on July 15, 2003. The plaintiff-the Administrative Committee-sought a declaratory judgment that it had not breached its fiduciary duties in connection with the Plans. Named as defendants were Thomas Rachford ("Rachford"), Dale Ingle ("Ingle"), and Haile Yohannes (" Yohannes"), individually and as representatives of a class of furloughed or laid-off EWA employee participants in the Plans. The proposed defendant class was defined in the complaint as consisting of
all participants in one or both of the 401(k) Plans who were laid off by EWA in 2001, who continued to receive employee benefits from EWA for 60 days following their layoffs, for whom EWW Plan and or TASP distributions were not authorized during the 60 day period after their layoffs while they received employee benefits from EWA, and who were not permitted to take new loans out against one or both 401(k) Plans after their layoffs.

Cplt ¶¶ 1, 12, 13, 53.

Approximately three weeks later, on August 8, 2003, Ingle and Christopher Coffey ("Coffey" -another former EWA pilot) filed *Coffey v. CNF* as a proposed class action in the Eastern District of Texas. The proposed plaintiff class was defined as

consisting of "all persons who were participants in or beneficiaries of [the Plans] at any time between August 12, 2001, and October 16, 2001." Plaintiffs alleged two causes of action under 29 U.S.C. § 1104 , one for breach of fiduciary duties, and one for breach of co-fiduciary duties. The defendants in the *Coffey* case were CNF, EWA, EWW, the two Plans, the Administrative Committee of the Plans, and the three T. Rowe Price entities.

On January 9, 2004, the Administrative Committee filed an amended complaint ("FAC") in case No. C-03-3302. In the FAC, the Administrative Committee referenced the *Coffey* case as support for its claim that an actual dispute existed between the parties, which warranted its request for declaratory relief. The FAC contained the same proposed class definition as the original complaint. FAC ¶¶ 14, 15, 56.

After the Texas action was transferred to this district as case No. C-04-4613, the two cases were consolidated. On November 29, 2004, the Administrative Committee filed a motion for certification of a defendant class in case C-03-3302, seeking to have Ingle, Rachford, and Yohannes named as defendant class representatives. The proposed defendant class was defined as
all participants, and their beneficiaries, in one or both of [the 401(k) Plans] who were furloughed or laid off by [EWA] in 2001 due to actions taken by the Federal Aviation Administration, who continued to receive paid health care benefits from EWA for 60 days following their furloughs or layoffs ("the Class Period"), for whom the 401(k) Plan distributions were not authorized during the Class Period while they received paid health care benefits from EWA, and who were not permitted to take new loans against one or both of the 401(k) Plans after their furloughs or layoffs.

**\*3** On the same date, Ingle and Rachford filed a motion to certify a plaintiff class in *Coffey v. CNF,* C-04-4613.[FN1] The proposed class in the *Coffey* case was defined as

     FN1. It isn't clear how or when Rachford

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 3

Slip Copy, 2005 WL 3454126 (N.D.Cal.), 36 Employee Benefits Cas. 1865
**(Cite as: Slip Copy)**

became a named plaintiff in this case, which was originally filed by Ingle and Coffey. It appears that at the time the case was transferred to this district, Ingle and Coffey were the named plaintiffs.

all persons who were participants in or beneficiaries of the Retirement Plans at any time between August 12, 2001, and October 16, 2001 ("the Class Period").

The order consolidating the two cases under No. C-03-3302 was filed on December 20, 2004. On January 7, 2005, the court ordered the parties to realign themselves and file a consolidated amended complaint, and suggested that only one motion for class certification be filed. The realigned parties filed a consolidated amended class action complaint ("CAC") on January 27, 2005. The CAC names Ingle and Rachford as plaintiffs (but not Yohannes or Coffey). Defendants are CNF, EWW, EWA, the two Plans, and the Administrative Committee (collectively, "the CNF defendants"), plus the three T. Rowe Price defendants.

On February 10, 2005, the CNF defendants filed an answer and counterclaim seeking a declaratory judgment that the defendants had not breached their fiduciary duties (identical to the original allegations in *Administrative Committee v. Rachford* ).

On August 15, 2005, Ingle filed the present motion to certify a plaintiff class, with himself as the sole class representative, and defining the proposed class as

all persons who were furloughed on August 12, 2001, and who were also participants in or beneficiaries of the Retirement Plans at any time between August 12, 2001, and October 16, 2001 (" the Class Period") [but excluding any defendant or person related to defendants].

On the same date, the CNF defendants filed a motion to certify a counterclaimant defendant class (substantially identical to the Administrative Committee's previous motion to certify a defendant class) with Rachford, Ingle, and Yohannes as proposed defendant class representatives, and the proposed class defined as all participants in one or

both of the 401(k) Plans who were furloughed by [EWA] in 2001 or 2002 due to actions taken by the Federal Aviation Administration ("FAA") that ultimately resulted in the shutdown of EWA, who continued to receive paid health benefits under the Health Plan for 60 days following the start of their furloughs ("the Class Period"), for whom the 401(k) Plan account distributions were not authorized during the Class Period while they received such employee benefits, and who were not permitted to take new loans against their accounts after the start of their furloughs.

Each side was then directed to file a statement explaining why the court should be required to adjudicate two motions for class certification. They did so, and the court advised the parties that it would consider the plaintiff's motion first, and that it would take up the CNF parties' motion later, "to the extent necessary."

### DISCUSSION

Plaintiff Ingle seeks certification of a class defined as

all persons who were furloughed on August 12, 2001, and who were also participants in or beneficiaries of the Retirement Plans at any time between August 12, 2001, and October 16, 2001 (" the class period").

*4 He argues that all the requirements of Federal Rule of Civil Procedure 23(a) are satisfied, and that the action is appropriate for certification under either Rule 23(b)(1) or Rule 23(b)(2).

Before determining whether a proposed class satisfies the requirements of Rule 23, the court must be satisfied that the named plaintiffs have standing to assert their claims, since the court cannot certify a proposed class if the proposed representatives lack standing to sue. *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Lierboe v. State Farm Mut. Auto. Ins. Co.,* 350 F.3d 1018, 1022 (9th Cir.2003); *Boyle v. Madigan,* 492 F.2d 1180, 1182 (9th Cir.1974). Indeed, "standing is the threshold issue in any suit. If the individual

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 4

Slip Copy, 2005 WL 3454126 (N.D.Cal.), 36 Employee Benefits Cas. 1865
**(Cite as: Slip Copy)**

plaintiff lacks standing, the court need never reach the class action issue." 3 *Newberg on Class Actions* § 3:19, at 400 (4th ed.2002).

ERISA allows "a participant, beneficiary, or fiduciary" to bring a civil action for breach of fiduciary duty. 29 U.S.C. § 1132(a)(2). Thus, Ingle-the proposed class representative-has standing to bring this action only if he is a plan participant, beneficiary or fiduciary. *See Harris v. Provident Life and Accident Ins. Co.,* 26 F.3d 930, 933 (9th Cir.1994) (federal court has no jurisdiction to hear civil action under ERISA that is brought by person who is not a "participant, beneficiary, or fiduciary") (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 27, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)); *see also Curtis v. Nevada Bonding Corp.,* 53 F.3d 1023, 1027 (9th Cir.1995) (claimant's standing to enforce ERISA under 29 U.S.C. § 1132 is prerequisite to subject matter jurisdiction under ERISA).

"The term 'participant' means any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7). In *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court refined the definition of "participant," holding that,

the term "participant" is naturally read to mean either "employees in, or reasonably expected to be in, currently covered employment," or former employees who "have ... a reasonable expectation of returning to covered employment" or who have "a colorable claim" to vested benefits. In order to establish that he or she "may become eligible" for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future.... A former employee who has neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits, however, simply does not fit within the [phrase] 'may become eligible.'

*Id.* at 117-18 (citations and quotations omitted).

Defendants contend that because Ingle was not a

Plan participant at the time of filing of the present action, he does not have standing to assert claims on his own behalf or on behalf of the other proposed class members.[FN2] Defendants assert that Ingle is not a participant because he does not have a " 'colorable claim' to vested benefits," as required under *Firestone.* They argue that rather than seeking "benefits," he is seeking damages for loss of the additional benefits he claims he would have received from his Plan investments but for the defendants' alleged misrepresentations.

> FN2. Rachford, who does not seek to serve as class representative, took a complete distribution of his account in November 2002, also before the complaint in *Coffey* was filed.

**\*5** Ingle maintains, however, that he has a "colorable claim" to vested benefits, arguing that the members of the proposed class had in their retirement accounts "vested benefits" that were improperly withheld from them by defendants. He contends that by calling these benefits "damages" instead of "vested benefits," defendants are simply engaged in a game of semantics. He urges the court to ignore the distinction between "damages" and "vested benefits" at this stage of the litigation.

It is settled in the Ninth Circuit that a person's standing as a plan participant "must be decided as of the time of the filing of the lawsuit." *Harris,* 26 F.3d at 933; *see also Schultz v. PLM Int'l, Inc.,* 127 F.3d 1139, 1142 (9th Cir.1997) (participant status is determined at the time suit is filed); *Crotty v. Cook,* 121 F.3d 541, 547 (9th Cir.1997) (same). The court finds that at the time of the filing of this suit in August 2003, Ingle was not "eligible to receive a benefit" under the Plan, and was therefore not a Plan "participant. At the time Ingle filed suit, he was a former employee of EWA. He thus qualifies as a "plan participant only if he has 'a reasonable expectation of returning to covered employment or [has] a colorable claim to vested benefits." ' *Harris,* 26 F.3d at 933 (quoting *Firestone,* 489 U.S. at 117).

Because EWA-which ceased operations in December 2001-no longer existed at the time the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2005 WL 3454126 (N.D.Cal.), 36 Employee Benefits Cas. 1865
**(Cite as: Slip Copy)**

complaint was filed, Ingle did not have a reasonable expectation of returning to covered employment. And because he had taken a full distribution of the money in his 401(k) account in January 2002, he did not have a colorable claim to vested benefits: his benefits under the Plans had already been distributed to him in full. Because he had neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits, Ingle was not a participant in an ERISA plan at the time he filed suit. He therefore lacked standing to bring a claim under § 1132.

Ingle argues that he falls within a well-recognized exception to the general rule that a former plan participant lacks standing to sue under ERISA. He relies on *Amalgamated Clothing & Textile Workers Union, AFL-CIO v. Murdock,* 861 F.2d 1406, 1418 (9th Cir.1988), where the court held that a former plan participant could sue for breach of fiduciary duty because to preclude him from suing would be to allow the fiduciary to benefit from its scheme to personally profit from the breach of duty of loyalty; and on *Perigo v. Hoffer,* 354 F.Supp.2d 1145, 1147 (E.D.Cal.2005), where the court found that a former plan participant had standing to seek disgorgement of ill-gotten gains that had accrued to defendant as a result of breaches of fiduciary duty. Ingle argues that in this case, he seeks, in essence, the imposition of a constructive trust to strip the defendants of any ill-gotten profits of CNF stock earned from their individual accounts based on allegations of ERISA fiduciary duties.

\*6 In scattered instances, courts have found that individuals who were not plan participants at the time of filing an ERISA action nonetheless had standing. Most of the cases involve a scenario similar to that in the *Amalgamated Clothing* and *Perigo* decisions cited by Ingle-where a court determines that it would be inequitable to allow the fiduciary to personally profit from unlawful gains obtained via the breach of fiduciary duty.[FN3] However, despite Ingle's attempt to make the facts of this case fit into that pattern, the court does not agree that plaintiffs have alleged facts showing " ill-gotten profits" made by defendants as a result of the decision to "freeze" access to the accounts.

FN3. *See Ruocco v. Bateman. Eichler, Hill, Richards, Inc.,* 903 F.2d 1232, 1236 (9th Cir.1990) (in case challenging employer's failure to distribute to plan participants a surplus dividend it received from plan's disability carrier, court ruled that former employee had "colorable claim " of entitlement to share of surplus because he was former plan participant who had contributed financially to the plan); *see also McBride v. PLM Int'l, Inc.,* 179 F.3d 737, 742-44 (9th Cir.1999) (notwithstanding usual rule that former employee who has received full distribution of vested benefits does not have standing to sue as plan " participant," such an employee does have standing to sue for violation of ERISA's whistleblower provision (29 U.S.C. § 1140) , because otherwise, employer could unfairly escape liability for violations of ERISA).

Nor does this case fall into the category of "capable of repetition, yet evading review," as argued by plaintiff's counsel at the hearing. Plaintiff's counsel asserted that the question is controlled by *Acosta v. Pacific Enter.,* 950 F.2d 611 (9th Cir.1992), and referred the court to a headnote that appears at the beginning of that decision.[FN4] However, the *Acosta* decision actually supports defendants' position, not Ingle's. In *Acosta,* a participant in one of various employee benefit plans administered on behalf of a single parent company brought an ERISA action against the trustee of the plans and the parent company, challenging the company's refusal to provide him with a list of names, addresses, and shareholdings beneficially owned by each participant in each of the various plans. (He wished to use the information to solicit votes for a particular candidate in the parent company's corporate directors election.) The district court denied the plaintiff's request for injunctive relief as moot because the election of directors had already occurred. In addition, the court granted summary judgment for the defendants, finding that the plaintiff did not have standing to challenge decisions affecting plans in which he did not participate. *Id.* at 615-16.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                           Page 6

Slip Copy, 2005 WL 3454126 (N.D.Cal.), 36 Employee Benefits Cas. 1865
**(Cite as: Slip Copy)**

FN4. Plaintiff's counsel cited headnote 3 from *Acosta,* in which West Publishing Company summarized a portion of the decision as follows: "Despite general rule that actual controversy must exist at all stages of federal court proceedings, Court of Appeals may nonetheless review claims that implicate practices that are capable of repetition, yet evading review." *Id.* at 612.

The Ninth Circuit found the case not moot, because the plaintiff had indicated that he intended to support candidates in future elections and to seek the support of other participants, and would again seek a list of all participants in any plan maintained by the parent company or its subsidiaries. The court noted that even though the election for which the plaintiff sought the information was over, the controversy was "sufficiently capable of repetition" to preserve the court's jurisdiction. *Id.* at 616 (citation and quotation omitted).[FN5] In addition, however, with regard to the information regarding plans in which the plaintiff was not a participant, the court held that "[i]f an individual does not participate in a specific plan, the fiduciaries of that plan generally have no fiduciary duty to him," and concluded that plaintiff therefore lacked standing under ERISA to bring an action for breach of fiduciary duty in the administration of plan in which he did not participate. *Id.* at 617.

FN5. However, the Ninth Circuit found that defendants had no fiduciary duty to disclose the specific information sought by the plaintiff, as such disclosure was not sufficiently related to the provision of benefits or to defrayment of expenses. *Id.* at 618-19.

*7 The finding that the plaintiff's claim was "capable of repetition, yet evading review" was made in response to the district court's ruling that the plaintiff's claim was moot. The case-or-controversy requirement demands that, through all stages of federal judicial proceedings, the parties continue to have a personal stake in the outcome of the lawsuit. *Caswell v. Calderon,* 363 F.3d 832, 836 (9th Cir.2004). This means that, throughout the

litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision. *Id.; see also City of Erie v. Pap's A.M.,* 529 U.S. 277, 287, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000) (case is moot when issues presented are no longer "live" or parties lack legally cognizable interest in outcome). Here, by contrast, the question is whether Ingle had standing under ERISA § 502(a) in August 2003 to bring a claim for breach of fiduciary duty. *Acosta* supports the proposition that a person who is not a participant in an ERISA plan lacks standing to bring an action for breach of fiduciary duty in the administration of the plan.

Ingle requests that if the court finds that he lacks standing, another plan participant be permitted to seek to represent the proposed class. Under recent Ninth Circuit authority, however, the court finds that that the CAC must be dismissed. In *Lierboe,* the Ninth Circuit considered an appeal of a class certification order. The plaintiff, a resident of Montana who had been injured in a car accident, incurred medical bills that exceeded the limit of the policy for the vehicle in which she was riding. She sought additional coverage under a policy that insured a vehicle owned by her closely-held business. The second policy provided no coverage for any injury sustained by the insured while riding in a vehicle owned by the insured but not covered under the second policy. Plaintiff filed suit, claiming that the insurer's refusal to "stack" more than one policy violated public policy. The suit was filed as a proposed class action. The district court certified the class, but also certified to the Supreme Court of Montana the question whether plaintiff had a "stacking" claim under her policies. *Lierboe,* 350 F.3d at 1020-21.

After the appeal of the class certification appeal had been argued, the Montana Supreme Court ruled that the plaintiff had no "stacking" claim. The Ninth Circuit then held that because the plaintiff could not state a "stacking" claim, it was premature to assess the prerequisites of Rule 23(a) or the standards for compliance under Rule 23(b) because she could not represent others who might have such a claim. The issues of predominance, superiority, typicality, and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                    Page 7

Slip Copy, 2005 WL 3454126 (N.D.Cal.), 36 Employee Benefits Cas. 1865
**(Cite as: Slip Copy)**

so forth "need not be considered if [plaintiff] is not in the subject class." *Id.* at 1022.

The court considered whether "it might be possible that the suit can proceed as a class action with another representative, subject to the district court's assessment whether a substitute representative is adequate for Rule 23 class purposes." *Id.* at 1023. The court concluded that because it was "not a mootness case, in which substitution or intervention might have been possible," the only resolution possible was to remand for dismissal. Thus, The Ninth Circuit vacated the class certification, and remanded the case with instructions to dismiss:

**\*8** We are persuaded by the Seventh Circuit's approach in an analogous case, *Foster v. Center Township of LaPorte County,* 798 F.2d 237, 244-45 (7th Cir.1986), which held that where the sole named plaintiff "never had standing" to challenge a township's poor-relief eligibility guidelines, and where "she never was a member of the class she was named to represent," the case must be remanded with instructions to dismiss.

*Id.*

CONCLUSION

In accordance with the foregoing, the court finds that the class certification motion must be denied for lack of standing of the class representatives, [FN6] and that the consolidated amended complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), for lack of standing under ERISA. *See Cetacean Community v. Bush,* 386 F.3d 1169, 1175 (9th Cir.2004).

> FN6. Despite Ingle's assertions that he seeks recovery on behalf of the Plans, what he appears to be seeking is recovery for himself and the other individual members of the class. The CAC alleges that " [p]laintiffs bring this action on behalf of themselves and every other participant in and beneficiary of the Plans." CAC ¶ 5. Since § 502(a)(2) gives an individual plaintiff standing to seek monetary relief

on behalf of his/her ERISA plan, but not on his/her own behalf, one could therefore also argue on that basis that Ingle lacks standing to bring a claim under § 502(a)(2). However, defendants have not made this argument.

IT IS SO ORDERED.

N.D.Cal.,2005.
In re Administrative Committee Erisa Litigation
Slip Copy, 2005 WL 3454126 (N.D.Cal.), 36 Employee Benefits Cas. 1865

Briefs and Other Related Documents (Back to top)

• 2005 WL 3143467 (Trial Motion, Memorandum and Affidavit) T. Rowe Price Defendants' Opposition to Plaintiff's Motion for Class Certification (Nov. 26, 2005)
• 2004 WL 2160297 (Trial Motion, Memorandum and Affidavit) Plaintiff Administrative Committee's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss under Rules 12(B)(2) and 12(B)(6), Or, in the Alternative, Motion to Transfer Venue (Jan. 30, 2004)
• 2004 WL 2160286 (Trial Pleading) First Amended Complaint (Class Action) (Jan. 9, 2004)
• 3:03cv03302 (Docket) (Jul. 15, 2003)
• 2003 WL 23795978 (Trial Motion, Memorandum and Affidavit) Defendants' Reply to Plaintiff's Amended Opposition to Defendants' Motion to Dismiss under Rules 12(b)(2) and 12(b)(6), Or, in the Alternative, Motion to Transfer Venue (May 12, 2003)
• 2003 WL 23795966 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Plaintiff's Opposition to Defendants' Motion to Dismiss under Rules 12(b)(2) and 12(b)(6), Or, in the Alternative, Motion to Transfer Venue (Jan. 30, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# APPENDIX G

Westlaw.

Slip Copy                                                                                    Page 1

Slip Copy, 2006 WL 753149 (D.N.J.), 37 Employee Benefits Cas. 1809
**(Cite as: Slip Copy)**

**C**
Briefs and Other Related Documents

United States District Court,D. New Jersey.
In re RCN LITIGATION.
**No. 04-5068 (SRC).**

March 21, 2006.

Lisa J. Rodriguez, Trujillo Rodriguez & Richards, LLP, Haddonfield, NJ, for Plaintiff.
Edward Cerasia, II, Peter Michael Avery, Proskauer Rose LLP, Newark, NJ, for Defendants.

OPINION
CHESLER, District Judge
*1 THIS MATTER comes before the Court on Motion to Dismiss Plaintiffs' Consolidated Complaint (docket # 43) brought by Defendants RCN Corporation (the "Company"); former members of RCN's Board of Directors ("Board Defendants"), the RCN Compensation Committee, current and former members of RCN's Compensation Committee ("Compensation Committee Defendants"), current and former members of RCN's 401k Administrative Committee ("Administrative Committee Defendants"), and former RCN employees ("Individual Defendants") Johathan Paules ("Paules") and W. Terrell Winfield Jr. ("Winfield") (collectively, "RCN Defendants"). The Court, having considered the papers submitted and heard oral arguments by the parties, for the reasons set forth below, and for good cause shown, PARTIALLY GRANTS AND PARTIALLY DENIES the RCN Defendants' Motion.

I. BACKGROUND OF THE CASE [FN1]

FN1. Unless otherwise noted, the recitation of the facts in this case are drawn from the allegations contained in the Plaintiffs'

Complaint.

The Plaintiffs in these consolidated cases are current or former participants in RCN Corporation's Savings and Stock Ownership Plan (the "Plan"), and a class of all others similarly situated, during the period between January 12, 1999 through December 21, 2004 (the "Class Period"). The Plan was a defined contribution "employee pension benefit plan," within the meaning of ERISA. 29 U.S.C. § 1002(2)(A). The Plan was managed by a 401K Administrative Committee (the "Administrative Committee") that was comprised of RCN employees appointed by the Company's Board of Directors to administer the Plan on their behalf. Merrill Lynch Trust Company ("MLTC") was appointed by the Administrative Committee to act as the trustee for the Plan. The Plaintiffs brought suit against various defendants, including RCN Corporation, members of the RCN Board of Directors, members of the RCN Compensation Committee and Administrative Committee, two RCN employees, as well as MLTC (collectively "Defendants").

The Board Defendants in this case were all members of RCN's Board of Directors (the "Board") for at least a portion of the Class Period. The following defendants served as members of the RCN Board of Directors for at least a portion of the Class Period and are regarded as Board Defendants: David McCourt, Bruce Godfrey, Michael Mahoney, Michael Adams, Timothy Stoklosa, Eugene Roth, Alfred Fasola, Michael Yanney, Theodore Schell, Michael Katzenstein, and Daniel Tseung. The Board Defendants were responsible for acting on behalf of the Company in appointing members of the RCN Administrative Committee, which administered the Plan.

The Compensation Committee Defendants in this case were all members of the RCN Compensation Committee for at least a portion of the Class Period. The following members of RCN's Board of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.