# Arent Fox
ATTORNEYS AT LAW

September 20, 2006

**Carol Connor Flowe**
202.857.6054 DIRECT
202.857.6395 FAX
flowe.carol@arentfox.com

Honorable William G. Young
Judge, United States District Court
   for the District of Massachusetts
John Joseph Moakley United States Courthouse
1 Courthouse Way
Boston, Mass 02210

      RE:   *Evans v. Akers, et al, Bunch c. W.R. Grace & Co., et al,*
              <u>**Consolidated under Case No. 04-11380-WGY**</u>

Dear Judge Young:

      Arent Fox PLLC represents the Grace Defendants in the above-referenced consolidated cases. There is a hearing scheduled next week, September 28, 2006, on the plaintiffs' respective motions for class certification. The parties' briefs on those motions were filed in May and June 2006.

      Among other things, the Grace Defendants are challenging the standing of the plaintiffs in the *Evans* case because they are former, not current, participants in the W. R. Grace & Co. Savings and Investment Plan. The Grace Defendants respectfully submit for the Court's consideration the attached five cases, all of which were decided after the parties finished briefing this issue, all of which support the Grace Defendants' position on the issue. Specifically, the cases are relevant to argument II.A. (pp. 3-9) in the Grace Defendants' Consolidated Opposition to Motions for Class Certifications, filed on May 30, 2006. Notices of appeal have been filed in several of these cases.

                                         Respectfully submitted,

                                           Carol Connor Flowe

Enclosures

cc:    All counsel of record

Westlaw.

Slip Copy
Slip Copy, 2006 WL 2228978 (E.D.Mich.)
(Cite as: Slip Copy)

Page 1

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,E.D. Michigan,Southern Division.
Eugene LOREN, Danielle Hagemann, and Sally Choe, on behalf of a putative class, Plaintiffs,
v.
BLUE CROSS AND BLUE SHIELD OF MICHIGAN, Defendant.
No. 05-74908.

Aug. 3, 2006.

Stephen F. Wasinger, Stephen F. Wasinger PLC, Royal Oak, MI, John H. Eggertsen, Eggertsen & Associates, P.C., Pittsfield Township, MI, for Plaintiffs.
K. Scott Hamilton, Dickinson Wright, Leo A. Nouhan, Blue Cross & Blue Shield of Michigan, Detroit, MI, Karen B. Benjamin, Robert P. Hurlbert, Dickinson Wright, Bloomfield Hills, MI, for Defendant.

### OPINION AND ORDER

PATRICK J. DUGGAN, District Judge.

*1 Plaintiffs filed this putative class action lawsuit on December 28, 2005, alleging that Defendant Blue Cross and Blue Shield of Michigan ("BCBSM") has engaged in conduct violating its fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1101-1461. Plaintiffs seek to represent a class of all participants and beneficiaries of ERISA self-funded plans for which BCBSM administers claims and/or handles plan assets. Presently before the Court is BCBSM's motion to dismiss Plaintiffs' first amended complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. Specifically, BCBSM argues that the Court lacks subject matter jurisdiction over Plaintiffs' first amended complaint because Plaintiffs' lack statutory and constitutional standing. BCBSM further argues that ERISA's fiduciary provisions do not regulate the alleged misconduct. The Court held a hearing on BCBSM's motion on May 23, 2006.

### I. Standards Applicable to BCBSM's Motion to Dismiss

Although BCBSM only refers to Federal Rule of Civil Procedure 12(b)(6), BCBSM's motion is brought pursuant to Rules 12(b)(1) and (6). Rule 12(b)(1) addresses procedural defects, specifically challenges to a court's subject matter jurisdiction. RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1134 (6th Cir.1996)(recognizing that the various Rule 12 motions to dismiss and the standards applicable to such motions are often confused with each other). Rule 12(b)(6), in comparison, addresses the merits of the plaintiff's complaint, more specifically the legal sufficiency of the plaintiff's case. Id.

When the defendant challenges the sufficiency of the plaintiff's complaint pursuant to Rule 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff, assume that the plaintiff's factual allegations are true, and determine whether the complaint states a valid claim for relief. Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir.1993)(citing Jenkins v. McKeithen, 395 U.S. 411, 421-33, 89 S.Ct. 1843, 1848-49 (1969)). A court may dismiss a claim pursuant to 12(b)(6) motion "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232 (1984)(citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957)). The same standard sometimes, but not always, applies when a defendant files a motion pursuant to Rule 12(b)(1). RMI Titanium Co., 78 F.3d at 1134.

A motion to dismiss for lack of subject matter jurisdiction challenges the federal district court's jurisdiction over the action before it. See Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 1350 at 61. Such motions fall into two categories: facial attacks and factual attacks. United States v. Ritchie, 15 F.3d 592, 598 (6th Cir.1994). As the Sixth Circuit described these two categories of motions:

*2 A facial attack is a challenge to the sufficiency of the pleading itself. On such motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party ... A factual attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction. On such a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-11380-WGY   Document 111   Filed 09/20/2006   Page 3 of 11

Slip Copy                                                                                                     Page 2
Slip Copy, 2006 WL 2228978 (E.D.Mich.)
(Cite as: Slip Copy)

motion, no presumptive truthfulness applies to the factual allegations ... and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.

*Id.* (internal citations omitted)(emphasis in original). It is the plaintiff's burden to demonstrate that the court has jurisdiction over the subject matter. *RMI Titanium Co.*, 78 F3.d at 1134 (citation omitted). In this case, BCBSM is raising a factual attack to this Court's jurisdiction.

## II. Factual and Procedural Summary

BCBSM is a health care corporation organized under the State of Michigan that administers and processes claims for various ERISA welfare benefit plans, including but not limited to self-funded health benefit plans sponsored and maintained by Ford Motor Company ("Ford Plan"), Pfizer Inc. ("Pfizer Plan"), and American Axle & Manufacturing Holdings Inc. ("American Axle Plan"). BCBSM also is the parent company of a health maintenance organization ("HMO") called Blue Care Network ("BCN"). BCBSM has negotiated agreements with various hospitals throughout Michigan with respect to the rates BCBSM will pay to the hospitals for medical services rendered to BCN participants and beneficiaries and participants and beneficiaries in self-funded ERISA plans administered by BCBSM.

Plaintiffs Eugene Loren ("Loren"), Danielle Hagemann ("Hagemann"), and Sally Choe ("Choe")(collectively "Plaintiffs") allege that they are participants in or beneficiaries of the Ford Plan, Pfizer Plan, or American Axle Plan administered by BCBSM. Plaintiffs claim that in its agreements with Michigan hospitals, BCBSM has negotiated rates more favorable to its BCN than to the ERISA plans it administers. Specifically, Plaintiffs claim that BCBSM obtained the consent of the hospitals to accept lower payments from BCN in exchange for BCBSM's promise to pay those hospitals offsetting additional amounts from the self-funded ERISA plans. Plaintiffs allege that BCBSM's conduct constitutes a breach of Sections 404(a)(1) and 406(b) of ERISA, 29 U.S.C. §§ 1104 & 1006, and has led to excessive charges to the self-funded ERISA plans and to Plaintiffs' payment of excessive contributions, deductibles, or co-payments.

## III. Standing

BCBSM contends that Plaintiffs lack statutory standing pursuant to ERISA and constitutional standing within the meaning of the United States Constitution. ERISA specifically sets forth categories of plaintiffs that may bring a civil action under the statute. 29 U.S.C. § 502. Constitutional standing to sue is an aspect of Article III's case-or-controversy requirement. *Northeastern Fla. Chapter, Assoc. Gen. Contractors of Am. v. Jacksonville*, 508 U.S. 656, 663-64, 113 S.Ct. 2297, 2301-02 (1993). Pursuant to Supreme Court and Sixth Circuit precedent, and contrary to BCBSM's assertion, standing "is to be determined as of the time the complaint is filed." *Id.* at 524. " '[J]urisdiction is tested by the facts as they existed when the action [was] brought' ... 'after vesting, it cannot be ousted by subsequent events.' " *Id.* (quoting *Smith v. Sperling*, 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1113 n. 1 (1957)).

*3 There is another aspect of Article III's case-or-controversy requirement, however, for which facts arising after the complaint is filed are material. Pursuant to the doctrine of mootness "an 'actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.' " *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67, 117 S.Ct. 1055, 1068 (1997)(quoting *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 2334 (1975)). When the plaintiff no longer has the requisite personal interest in the outcome of the litigation, the plaintiff's claims become moot. *Chirco v. Gateway Oaks LLC*, 384 F.3d 307, 309 (6th Cir.2004)(citing *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 1951 (1969)). In class action litigation, *"[o]nce a class is certified,* the mooting of the named plaintiff's claim does not moot the action." *Brunet v. City of Columbus*, 1 F.3d 390, 399 (6th Cir.1993) (citations omitted)(emphasis in original). "Where, on the other hand, the named plaintiff's claim becomes moot before certification, dismissal of the action is required." *Id.*

### A. Statutory Standing and Article III Standing

Plaintiffs bring this action pursuant to Sections 502(a)(2) and (3) of ERISA. *See* Am. Compl. ¶ 1. Section 502(a)(2) provides that a civil action may be brought "by the Secretary [of Labor], or by a participant, beneficiary or fiduciary for appropriate relief under section 29 of this title." 29 U.S.C. § 502(a)(2). Section 502(a)(3) provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 502(a)(3). Thus to possess statutory standing to bring this lawsuit, Plaintiffs must be participants or beneficiaries of the self-insured ERISA plans BCBSM administers.

ERISA defines a "participant" as "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan ..." 29 U.S.C. § 1002(7). In *Firestone Tire and Rubber Co. v. Bruch,* the Supreme Court further defined this term as follows:
In our view, the term "participant" is naturally read to mean either "employees in, or reasonably expected to be in, currently covered employment," ... or former employees who "have ... a reasonable expectation of returning to covered employment" or who have a "colorable claim" to vested benefits ... In order to establish that he or she "may become eligible" for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future.

489 U.S. 101, 117-18, 109 S.Ct. 948, 958 (1989)(internal citations omitted). The Sixth Circuit subsequently applied *Bruch* and concluded that employees cease to be "participants" in a plan when they effectively terminate all their rights under the plan and no longer are due any benefits. *Teagardener v. Republic-Franklin Inc. Pension Plan,* 909 F.2d 947, 952 (6th Cir.1990). Subsequent to *Teagardener,* however, the Sixth Circuit advised that " '[i]n determining who is a 'participant,' for purposes of standing, the definition found in 29 U.S.C. § 1002(7) must be read in the context of traditional concepts of standing ...' " *Swinney v. Gen. Motors Corp.,* 46 F.3d 512, 518 (6th Cir.1995)(quoting *Astor v. Int'l Bus. Mach. Corp.,* 7 F.3d 533, 538 (6th Cir.1993)).

*4 Construing the term "participant" in accordance with traditional standing concepts, a majority of Circuit Courts, including the Sixth Circuit, have held that a plaintiff has standing to bring an ERISA action "if the employer's breach of fiduciary duty causes the employee to either give up his right to benefits or to fail to participate in a plan." *Id.* (citations omitted). As the *Swinney* court held, "so long as a former employee would have been in a class eligible to become a member of the plan but for the fiduciary's alleged breach of duty, he 'may become eligible' for benefits under the plan, and is therefore a 'participant' under § 1002(7) for the purpose of standing." *Id.* at 519. The Sixth Circuit provided the following reasoning as to why courts have developed this one exception "to the general rule that a person who terminates his right to belong to a plan cannot be a 'participant' in the plan":
Otherwise, a fiduciary could defeat an employee's standing to bring an ERISA action by duping him into giving up his right to participate in a plan. ERISA should not be construed to permit the fiduciary to circumvent his ERISA-imposed fiduciary duty in this manner.

*Id.* at 518-19 (citing *Christopher,* 950 F.2d at 1221).

ERISA defines a "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

Loren alleges that he is a participant under the American Axle Plan. *See* Am. Compl. ¶ 9. Choe alleges that she is a participant under the Pfizer Plan. *See* Am. Compl. ¶ 11. Hagemann alleges that she is a beneficiary under the Ford Plan. *See* Am. Compl. ¶ 10.

"To satisfy Article III's standing requirements, a plaintiff must show: '(1) it has suffered an 'injury in fact' that is (1) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.' " *Cleveland Branch, NAACP v. City of Parma, Ohio,* 263 F.3d 513, 523-24 (6th Cir.2001)(quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.,* 528 U.S. 167, 180-81, 120 S.Ct. 693, 704 (2000)). In the pending action, Plaintiffs claim injury to themselves, individually, and to their ERISA plans as a result of BCBSM's alleged misconduct. Specifically Plaintiffs allege that as a result of BCBSM's agreements with hospitals requiring the self-funded ERISA plans to pay higher hospital rates to balance the lower rates charged to its BCN, assets of the self-funded ERISA plans have been adversely affected and the costs to the funds' sponsors to maintain health care benefits have increased. *See* Am. Compl. ¶¶ 1, 3, 13-14, 18-21. Plaintiffs further allege that as a result of the increased costs to the plans, the plans have decreased the benefits available to participants and beneficiaries. *See id.* Finally, Plaintiffs allege that their direct contributions toward their health care

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-11380-WGY   Document 111   Filed 09/20/2006   Page 5 of 11

Slip Copy                                                                                                            Page 4
Slip Copy, 2006 WL 2228978 (E.D.Mich.)
(Cite as: Slip Copy)

costs in the form of contributions to the plans, co-pays, and deductibles have been higher as a result of the agreements BCBSM negotiated with the hospitals. *See id.*

### B. Analysis

#### 1. Loren

**\*5** Loren currently is not a participant in a self-insured ERISA plan administered by BCBSM. As of January 1, 2006, Loren, who is a Medicare beneficiary, stopped receiving any insurance coverage from the American Axle Plan administered by BCBSM. *See* Mot. Ex. 1. When Plaintiffs filed their action, however, Loren was a participant in the American Axle Plan. *See* Am. Compl. ¶ 9F. The Court therefore finds that he had statutory standing when the complaint was filed. Nevertheless, Loren's claims have been rendered moot by his withdrawal from the American Axle Plan because he now lacks an interest in the remedies available under ERISA Sections 502(a)(2) and (3).

Any relief obtained pursuant to Section 502(a)(2), which entitles a participant to seek appropriate relief under Section 1109, must "inure[ ] to the benefit of the plan as whole," not the benefit of individual participants. *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144, 105 S.Ct. 3085, 3091 (1985). To reach this interpretation of Section 502(a)(2), the *Russell* Court focused on the language of Section 1109 which provides:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good *to such plan* any losses to the plan resulting from each such breach, and to restore *to such plan* any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate ...

29 U.S.C. § 1109(a) (emphasis added). The Supreme Court held that Section 1109 does not authorize a plaintiff's suit for individual relief in the form of compensatory and/or punitive damages against a fiduciary. *Russell*, 473 U.S. 134, 105 S.Ct. 3085 (1985). Instead, any remedy must protect the entire plan. *Id.* at 142, 105 S.Ct. at 3090. As Loren no longer is a participant in the American Axle Plan, he will not benefit from any relief afforded pursuant to this section.

Unlike the plaintiff in *Rankin v. Rots*-a case relied upon by Plaintiffs-Loren is not entitled to vested benefits from the American Axle Plan and therefore any damages paid to the plan will not flow to him. In *Rankin,* the court held that a former participant in the K-Mart Corporation 401(k) plan had standing under ERISA because, if successful, damages would presumably flow to the plan and in turn to class members as vested retirement benefits they otherwise would have received but for the fiduciary's breach causing loss to the plan's assets. 220 F.R.D. 511, 519-20 (E.D.Mich.2004). Loren, in comparison, is not entitled to any damages BCBSM may be obligated to pay the American Axle Plan as losses to the plan or profits wrongfully gained by BCBSM. Instead, because Loren has no interest in any relief that would inure to the plan, this case is like many where the courts have held "that a plaintiff lacks standing to sue under ERISA where he has taken a final distribution of vested benefits ..." *Dickerson v. Feldman*, 426 F.Supp.2d 130, 2006 WL 838999, at *4 (S.D.N.Y.2006)(cases cited therein); *see also Unaka Co. v. Newman,* No. 2:99-267, 2005 WL 1118065, at * 19-20 (E.D. Tenn. April 26, 2005)(unpublished opinion).

**\*6** Loren also has no interest in the relief available under Section 502(a)(3). This section provides that an action may be brought by a participant "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). As Loren no longer is a participant in the American Axle Plan, he lacks any interest in relief enjoining BCBSM from taking any act or practice with respect to the plan or enforcing the terms of the plan. He also lacks an interest in any equitable relief available under this section.

The Supreme Court has held that "[t]he words of subsection (3)-'appropriate equitable relief' to 'redress' any 'act or practice which violates any provision of this title'-are broad enough to cover individual relief for breach of a fiduciary obligation." *Varity Corp. v. Howe,* 516 U.S. 489, 510, 116 S.Ct. 1065, 1076 (1996). However as the Supreme Court also has held, " 'equitable relief' must mean *something* less than *all* relief." *Mertens v. Hewitt Assoc.,* 508 U.S. 248, 258 n. 8, 113 S.Ct. 2063, 2070 n. 8 (1993)(emphasis in original). Thus in *Great-West Life & Annuity Insurance Co. v. Knudson,* the Court

Case 1:04-cv-11380-WGY   Document 111   Filed 09/20/2006   Page 6 of 11

Slip Copy   Page 5
Slip Copy, 2006 WL 2228978 (E.D.Mich.)
(Cite as: Slip Copy)

concluded that Section 503(a)(3) does not authorize claims for monetary relief not typically available in equity. 534 U.S. 204, 210, 122 S. Ct 708, 712 (2002). Whether the restitution sought "is legal or equitable depends on the 'basis for [the plaintiff's] claim' and the nature of the underlying remedies sought." Id. at 213, 122 S.Ct. at 714 (quoting Reich v. Cont'l Cas. Co., 33 F.3d 754, 756 (7th Cir.1994)). As the Supreme Court explained in Great-West:

In cases in which the plaintiff "could *not* assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him" the plaintiff had a right to restitution *at law* ... In such cases, the plaintiff's claim was considered legal because he sought "to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money." ...

In contrast, a plaintiff could seek restitution *in equity,* ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particularly funds or property in the defendant's possession ... Thus for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.

Id. at 213-214, 122 S.Ct. at 714-15 (internal citations omitted)(emphasis in original).

Loren's claim for compensation for increased co-payments and deductibles allegedly paid as a result of BCBSM's conduct constitutes restitution at law, not equity:

*7 "Almost invariably ... suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of a legal duty."

Great-West Life, 534 U.S. at 210, 122 S.Ct. at 713 (quoting Bowen v. Massachusetts, 487 U.S. 879, 918, 108 S.Ct. 2722 (1988) (Scalia, J., dissenting)). To the extent Loren paid contributions directly to the American Axle Plan, it is purely speculative that any increase in those contributions resulted from BCBSM's alleged misconduct-particularly as the plan sponsor reserved the sole and unilateral right to make changes to the plan and presumably to establish the amount employees must contribute to participate in the plan. Moreover, determining the extent of any injury would be virtually impossible. The damages Plaintiffs claim individually represent payments they may have made to the hospitals or the self-funded plans, but not payments made directly to BCBSM. As such, those payments do not constitute funds in BCBSM's possession which, when restored to Plaintiffs, constitute restitution in equity.

### 2. Hagemann

Since March 1, 2000, Hagemann has been a beneficiary of hospital and medical benefits under an HMO Ford offers its employees-CareChoices S.E. Michigan ("CareChoices"). *See* Mot. Ex. 1. According to BCBSM, CareChoices is not related to BCBSM and in fact is a direct competitor to its HMO. BCBSM states in its motion that it therefore does not provide administrative services to CareChoices and that it does not negotiate the hospital rates that apply to CareChoices' participants and beneficiaries. *See* Mot. at 9. Plaintiffs do not address these factual assertions, but instead argue that CareChoices is part of a single Ford Plan under which various coverage options are available and that the assets of this single Ford Plan are injured by BCBSM's conduct. *See* Resp. at 11.

This Court believes that Plaintiffs' definition of the Ford Plan is overly broad and would expand the category of individuals who may sue a fiduciary under Section 502(a) further than Congress intended. As the Sixth Circuit has stated, "[c]ourts narrowly construe ERISA to permit only the parties specifically enumerated to bring suit." Cob Clearinghouse Corp. v. Aetna U.S. Healthcare, Inc., 362 F.3d 877, 881 (6th Cir.2004) (citations omitted). Under Plaintiffs' theory, every Ford employee receiving health care benefits could bring a civil action against BCBSM, regardless of whether those benefits are provided under a plan with respect to which BCBSM exercises any discretionary authority or control. This greatly expands the category of individuals set forth in Section 502(a) and, as discussed more fully below, simply contradicts ERISA's definition of a "fiduciary."

Hagemann's health benefits-the level of benefits and cost of benefits-are established pursuant to the CareChoices Plan. *See* Mot. Ex. 3. BCBSM is not involved in those determinations and therefore its negotiations with Michigan hospitals with respect to rates for its participants and beneficiaries do not establish the cost of hospital services for members of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-11380-WGY   Document 111   Filed 09/20/2006   Page 7 of 11

Slip Copy                                                                                                                   Page 6
Slip Copy, 2006 WL 2228978 (E.D.Mich.)
(Cite as: Slip Copy)

CareChoices. BCBSM also does not administer claims on behalf of CareChoices participants and beneficiaries. Put simply, BCBSM does not act as a fiduciary with respect to Hagemann's health plan and therefore she lacks standing to bring her claims pursuant to Sections 502(a)(2) or (3).

### 3. Choe

*8 When Plaintiffs' filed their complaint, Choe was a participant in the Pfizer Plan and she remains a participant as of this date. BCBSM argues that Choe lacks standing, however, because it is not a fiduciary with respect to the Pfizer Plan. As BCBSM explains, the Pfizer Plan contracts for administrative services from Horizon Blue Cross Blue Shield of New Jersey ("Horizon"). Horizon is a participant in the Blue Card Program offered through the Blue Cross Blue Shield Association-the trade association for the independent, locally operated Blue Cross Blue Shield entities like Horizon and BCBSM. *See* Mot. At 6. The Blue Card Program enables individuals covered under a contract from one Blue Cross Blue Shield licensed insurance company to receive the same contracted benefits when they obtain health care services while traveling or living in a location covered by a different Blue Cross Blue Shield licensed insurer. *See id.* Through this arrangement, if a Pfizer Plan participant or beneficiary residing in or visiting Michigan seeks medical care from a hospital that is part of the BCBSM hospital network, the hospital's services are paid by the Pfizer Plan pursuant to the hospital's agreement with BCBSM and BCBSM administers the claim. *See* Mot. at 6-8.

Plaintiffs lawsuit is premised on a breach of BCBSM's fiduciary duties. Thus not only must Plaintiffs fall within the category of individuals specifically enumerated in Section 502(a) who may bring suit, but BCBSM must be a fiduciary with respect to each Plaintiff's ERISA plan. As relevant to this case, ERISA defines a "fiduciary" as "someone acting in capacity of manager, administrator, or financial adviser to a 'plan.' " *Pegram v. Herdrich,* 530 U.S. 211, 222, 120 S.Ct. 2143, 2151 (2000). ERISA further provides:
a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). This section focuses on the person's "discretionary authority," "discretionary control," or "discretionary responsibility" over a particular plan. *See Mertens v. Hewitt Associates,* 508 U.S. 248, 262, 113 S.Ct. 2063, 2071 (1993)(stating that ERISA "defines 'fiduciary' not in terms of formal trusteeship, but in *functional terms* of control and authority over the plan."). But even if an entity is an ERISA fiduciary for some purposes, not every action the entity takes is necessarily as a fiduciary:In every case charging breach of ERISA fiduciary duty ... the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.

*9 *Pegram,* 530 U.S. at 225-26, 120 S.Ct. at 2152-53.

In their amended complaint, Plaintiffs assert that BCBSM is a fiduciary with respect to the Pfizer Plan in that it provides administrative services and claims processing for participants and fiduciaries receiving medical services in Michigan. *See* Am. Compl. ¶ 11. BCBSM arguably may have some discretionary responsibility to the Pfizer Plan with respect to its administration of and payment of those claims. Plaintiffs, however, are not alleging a breach of fiduciary duty with respect to that conduct.

Plaintiffs also allege that the claims filed by Michigan hospitals for services rendered to Pfizer Plan participants and beneficiaries are paid "with assets owned by the Pfizer Plan" and therefore BCBSM "has authority and does pay out assets of" or "has control over" the assets of the Pfizer Plan. *See* Am. Compl. ¶¶ 18, 28 & 32. While BCBSM may pay claims for hospital services on behalf of Pfizer Plan participants or beneficiaries, that does not necessarily mean that it possess discretionary authority or control respecting management or disposition of plan assets. In fact, as Plaintiffs specifically provide in their amended complaint, "BCBSM processes medical claims of Michigan hospitals and other health care providers, pays those providers and then bills the 'control plan' [Blue Card Program] for reimbursement, plus a sizeable administrative fee, The 'control plan' then bills the plan sponsor." *See* Am. Compl. ¶ 20. Only Pfizer Plan's fiduciary-Horizon-has the discretionary

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

authority to decide whether to expend plan assets to pay the amount it is billed by the Blue Card Program. In other words, no plan assets are disposed of until and unless Horizon exercises its authority to do so. The Court further notes that the Department of Labor has issued regulations specifically providing that a named fiduciary-Horizon in this case-may not delegate to others, except investment managers, authority or discretion to manage or control plan assets. 29 C.F.R. § 2509.75-8 at FR-15 (interpreting Section 405(c)(1) of ERISA).

Based on the above, the Court finds that BCBSM is not a fiduciary with respect to the Pfizer Plan when it negotiates rates with Michigan hospitals for services provided to participants and beneficiaries of its BCN and self-insured ERISA plans. For that reason, participants and beneficiaries of the Pfizer Plan like Choe lack standing pursuant to Section 502(a) to claim that BCBSM breaches its fiduciary duties to self-insured ERISA plans when it engages in that conduct.

### IV. Conclusion

As the Court concludes that none of the named Plaintiffs have standing to bring their claims against BCBSM, the Court holds that it lacks subject matter jurisdiction to resolve their dispute. The Court therefore will not reach BCBSM's second argument-that Plaintiffs fail to state a claim upon which relief may be granted.

Accordingly,

**IT IS ORDERED,** that Defendant Blue Cross Blue Shield of Michigan's Motion to Dismiss Plaintiffs' First Amended Complaint for Lack of Subject Matter Jurisdiction is **GRANTED.**

E.D.Mich.,2006.
Loren v. Blue Cross and Blue Shield of Mich.
Slip Copy, 2006 WL 2228978 (E.D.Mich.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 655454 (Trial Motion, Memorandum and Affidavit) Plaintiff's Brief in Opposition to Bcbsms' So-Called Emergency Motion for Stay of Magistrate Judge's Order Denying Motion to Quash Subpoenas (Dkt. 21) (Feb. 20, 2006) Original Image of this Document (PDF)
• 2006 WL 655453 (Trial Motion, Memorandum and Affidavit) Defendant Blue Cross and Blue Shield of Michigan's Objections to Magistrate's February 14, 2006 Order Denying Defendant's Motion to Quash Subpoenas (Feb. 17, 2006) Original Image of this Document (PDF)
• 2006 WL 667812 (Trial Motion, Memorandum and Affidavit) Defendant Blue Cross Blue Shield of Michigan's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State A Claim (Feb. 16, 2006) Original Image of this Document (PDF)
• 2006 WL 399927 (Trial Motion, Memorandum and Affidavit) Defendant's Reply Brief in Support of its Motion to Quash Subpoenas (Jan. 31, 2006) Original Image of this Document (PDF)
• 2006 WL 399925 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Brief in Opposition Motion to Quash Subpoenas (Jan. 23, 2006) Original Image of this Document (PDF)
• 2006 WL 399926 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Corrected Brief%n*%n in Opposition to Motion to Quash Subpoenas (Jan. 23, 2006) Original Image of this Document (PDF)
• 2:05cv74908 (Docket) (Dec. 28, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Slip Copy
Slip Copy, 2006 WL 2381056 (D.Md.)
(Cite as: Slip Copy)

Page 1

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Maryland.
In re MUTUAL FUNDS INVEST. LITIG.
Craig Wangberger
v.
Janus Capital Group, Inc., et al.
MDL-15863.
Civil No. JFM-05-2711.

Aug. 15, 2006.

Robert Ira Harwood, Peter William Overs, Jr., Wechsler Harwood LLP, Samuel Kenneth Rosen, Weschler Harwood Halebian and Feffer LLP, New York, NY, for Craig Wangberger.
Mark A. Perry, Paul Blankenstein, Andrew Santo Tulumello, Gibson Dunn and Crutcher LLP, Washington, DC, for Janus Capital Group, Inc.
J. FREDERICK MOTZ, District Judge.
*1 Memo To Counsel Re: *In re Mutual Funds Invest. Litig.*-MDL-15863

Dear Counsel:

I have reviewed the memoranda submitted in connection with defendants' motion to dismiss and to strike the complaint. The motion will be treated as a motion to dismiss and, as such, will be granted.

As you know, on March 1, 2006, I denied similar motions to dismiss in four other cases: *Calderon v. Amvescap PLC*, JFM-04-824; *Corbett v. Marsh & McLennan Cos.*, JFM-04-883; *Walker v. Massachusetts Fin. Servs. Co.*, JFM-04-1758; and *Zarate v. Bank One Corp.*, JFM-04-830.[FN1] In denying the motions, I followed the decision in *In re Mutual Funds Invest. Litig.*, 403 F.Supp.2d 434 (D.Md.2005) ("*Strong*"). In *Strong* Judge Blake found that a former participant in an ERISA plan has standing under Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), to assert a claim against Plan fiduciaries for adverse effects upon his retirement account caused by market timing activities permitted in certain mutual funds that the fiduciaries allegedly knew or should have know were not prudent investments. *Strong*, 403 F.Supp.2d at 441-42.

FN1. On the same date I also decided a motion to dismiss in *Walsh v. Marsh & McLennan Cos., Inc.*, JFM-04-888. However, that case does not present the same standing issue as *Wangberger* and the other four cases because plaintiff Walsh is a current participant in the ERISA plan.

Since the time that Judge Blake issued her opinion in *Strong*, numerous courts have found that former participants in an ERISA plan lack standing under circumstances similar to those presented here. *See Graden v. Conexant Sys., Inc.*, No. 05-0695, 2006 U.S. Dist. LEXIS 16176 at *8 (D.N.J. Mar. 31, 2006); *In re RCN Litig.*, No. 04-5068(SRC), 2006 WL 753149 at *14 (D.N.J. Mar. 21, 2006); *Holtzscher v. Dynegy, Inc.*, No. Civ. A. H-05-3293, 2006 WL 626402 at *5 (S.D.Tex. Mar. 13, 2006); *Lalonde v. Textron*, C.A. No. 02-3348, 2006 WL 519671 at *5 (D.R.I. Mar. 1, 2006); *In re Admin. Comm. ERISA Litig.*, No. C03-3302 PJF, 2005 WL 3454126 at *5 (N.D.Cal. Dec. 16, 2005). Although I believe the question is a close one, I have concluded that these decisions are correct and that I erred in denying the motions to dismiss in *Calderon*, *Corbett*, *Walker*, and *Zarate*. Because the opinions in *Strong* and the cases cited above fully and clearly address the issues, I see no useful purpose in writing separately on them. Suffice it to say I find that the causes of action asserted in this action to be more in the nature of claims for damages than for payment of a vested benefit.[FN2]

FN2. My ruling granting defendants' motion to dismiss in this action should not be read as implying that former participants do not have standing to sue Plan fiduciaries or the Plan itself in the event that a Plan obtains a recovery in an investor class action (by judgment or settlement) and then chooses not to distribute a *pro rata* portion of the recovery to former participants whose retirement accounts held shares in the relevant mutual funds during the class period. If that were to occur, the focus of litigation instituted by a former Plan participant would be upon how to allocate a sum certain among various beneficiaries with conflicting claims, not upon determining the fiduciaries' asserted liability

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

for making imprudent investments-and, in the event of a finding of liability-reducing to a set amount alleged investment losses of inherently inchoate value. These questions are quite different from one another, and former participants may have the right to assure that the Plan or its fiduciaries distribute to them, rather than giving to others or retaining for the Plan itself, benefits that in fairness and good conscience are due to them.

I further note that while I previously expressed the view that deferral of final ruling on the standing question until the summary judgment stage might serve the interest of the orderly and expeditious resolution of this litigation, I have concluded that this view too was misplaced. ERISA plans that held the relevant mutual funds in their portfolios during the class periods are themselves members of putative investor classes, and plaintiffs' counsel in the investor class actions can adequately represent the Plans' claims for losses arising from the allegedly improper market timing activities.[FN3]

FN3. I find unpersuasive defendant's alternative argument that the complaint should be dismissed because it was not authorized under this court's Case Management Order No. 1. If a former participant has standing to assert the claims on behalf of an ERISA plan, it clearly would be in the public interest to resolve particular issues pertaining to those claims as part of this MDL proceeding. The Case Management Order was not intended to suggest to the contrary.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

D.Md.,2006.
In re Mutual Funds Invest. Litig.
Slip Copy, 2006 WL 2381056 (D.Md.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 2579442 (Trial Motion, Memorandum and Affidavit) The Variable Annuity Life Insurance Company's Memorandum in Support of its Motion to Dismiss Paula Beals' First Amended Complaint (Jul. 12, 2006) Original Image of this Document (PDF)
• 2006 WL 1372552 (Trial Pleading) Veras Investment Partners, LLC's Answer to the Alger Consolidated Amended Class Action Complaint (Apr. 21, 2006) Original Image of this Document (PDF)
• 1:05cv02711 (Docket) (Sep. 30, 2005)
• 2005 WL 3731688 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Further Support of the Motion of Theodore C. Sihpol, III for A Stay Pending Resolution of Related Criminal Proceedings (Feb. 7, 2005) Original Image of this Document (PDF)
• 2005 WL 3741563 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Further Support of the Motion of Theodore C. Sihpol, III for a Stay Pending Resolution of Related Criminal Proceedings (Feb. 7, 2005) Original Image of this Document (PDF)
• 2005 WL 3731687 (Trial Motion, Memorandum and Affidavit) Memorandum of Class Plaintiffs, Fund Derivative Plaintiffs and Parent Derivative Plaintiffs in Opposition to the Motion of Theodore C. Sihpol, III for a Stay Pending Resolution of Related Criminal Proceedings (Jan. 21, 2005) Original Image of this Document (PDF)
• 2005 WL 3741562 (Trial Motion, Memorandum and Affidavit) Memorandum of Class Plaintiffs, Fund Derivative Plaintiffs and Parent Derivative Plaintiffs in Opposition to the Motion of Theodore C. Siipol, III for A Stay Pending Resolution of Related Criminal Proceedings (Jan. 21, 2005) Original Image of this Document (PDF)
• 2004 WL 3684655 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of the Motion of Theodore C. Sihpol, III for A Stay Pending Resolution of Related Criminal Proceedings (Dec. 14, 2004) Original Image of this Document (PDF)
• 2004 WL 3686521 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of the Motion of Theodore C. Sihpol, III for A Stay Pending Resolution of Related Criminal Proceedings (Dec. 14, 2004) Original Image of this Document (PDF)
• 2004 WL 3684656 (Trial Motion, Memorandum and Affidavit) Memorandum of Class Plaintiffst Fund Derivative Plaintiffs and Parent Derivative Plaintiffs in Opposition to the Motion of Theodore C. Sihpol, III for a Stay Pending Resolution of Related Criminal Proceedings (2004) Original Image of this Document (PDF)
• 2004 WL 3686523 (Trial Motion, Memorandum and Affidavit) Memorandum of Class Plaintiffs, Fund Derivative Plaintiffs and Parent Derivative Plaintiffs in Opposition to the Motion of Theodore C. Sihpol, Iii for a Stay Pending Resolution of Related Criminal Proceedings (2004) Original Image of this Document (PDF)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy   Page 3
Slip Copy, 2006 WL 2381056 (D.Md.)
**(Cite as: Slip Copy)**

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.