# PART 2

Case 1:04-cv-11380-WGY    Document 111-2    Filed 09/20/2006    Page 1 of 19

Westlaw.

437 F.Supp.2d 750 Page 1
437 F.Supp.2d 750, 38 Employee Benefits Cas. 1467
(Cite as: 437 F.Supp.2d 750)

Briefs and Other Related Documents

United States District Court,S.D. Ohio,
Eastern Division.
In re AEP ERISA LITIGATION, Plaintiff,
This Document Relates To: All Erisa Actions.
No. C2-03-67.

July 12, 2006.

**Background:** Former employee, who had participated in a retirement savings plan governed by the Employee Retirement Income Security Act (ERISA), brought suit against his former employer, its subsidiary and directors, claiming breach of fiduciary duties. Following consolidation of the action with related suits, the employee moved for certification of a class defined as the plan and all participants in the plan for whose individual accounts the plan purchased and/or held shares of the employer's stock fund during a specified time period, as well as an order certifying him as class representative and designating class counsel.

**Holding:** The District Court, Marbley, J., held that the employee lacked standing under ERISA.

Motion denied.

West Headnotes

[1] Labor and Employment 231H ☞646

231H Labor and Employment
　　231HVII Pension and Benefit Plans
　　　　231HVII(K) Actions
　　　　　　231HVII(K)3 Actions to Enforce Statutory or Fiduciary Duties
　　　　　　　　231Hk646 k. Parties in General; Standing. Most Cited Cases
Having divested himself of his holdings in ERISA plan after he filed ERISA suit asserting breach of fiduciary duty, former employee lacked standing to represent class defined as ERISA plan and all participants in the plan for whose individual accounts plan purchased and/or held shares of employer's stock fund during specified time period; former employee had already collected all vested benefits due to him under the plan, as his asserted right to sum that possibly could have been earned by prudent investment decisions sought damages that were too speculative to be considered vested under ERISA. Employee Retirement Income Security Act of 1974, §§ 3(7), 502(a)(2), 29 U.S.C.A. §§ 1002(7), 1132(a)(2).

[2] Labor and Employment 231H ☞646

231H Labor and Employment
　　231HVII Pension and Benefit Plans
　　　　231HVII(K) Actions
　　　　　　231HVII(K)3 Actions to Enforce Statutory or Fiduciary Duties
　　　　　　　　231Hk646 k. Parties in General; Standing. Most Cited Cases
For former employee to have standing as a representative of class defined as ERISA plan and all participants in the plan for whose individual accounts the plan purchased and/or held shares of employer's stock fund during a specified time period, it was not sufficient that he was a plan "participant" at time ERISA suit asserting breach of fiduciary duty was filed; rather, the question was whether his eligibility continued in the face of his plan divestment. Employee Retirement Income Security Act of 1974, §§ 3(7), 502(a)(2), 29 U.S.C.A. §§ 1002(7), 1132(a)(2).

[3] Labor and Employment 231H ☞646

231H Labor and Employment
　　231HVII Pension and Benefit Plans
　　　　231HVII(K) Actions
　　　　　　231HVII(K)3 Actions to Enforce Statutory or Fiduciary Duties
　　　　　　　　231Hk646 k. Parties in General; Standing. Most Cited Cases
For former employee to have standing as representative of class, in ERISA action asserting breach of fiduciary duty, defined as ERISA plan and all participants in the plan for whose individual accounts the plan purchased and/or held shares of the employer's stock fund during a specified time period, it was not sufficient that he was a "participant" during the time the alleged wrong took place, i.e., during the class period; employee had cashed out of the plan of his own volition, not due to any wrongdoing by the employer, and thus, was covered

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

by general rule that former employees who had received full benefits to which plan documents entitled them were no longer "participants" of plan. Employee Retirement Income Security Act of 1974, §§ 3(7), 502(a)(2), 29 U.S.C.A. §§ 1002(7), 1132(a)(2).

**[4] Labor and Employment 231H ⚖️678**

231H Labor and Employment
    231HVII Pension and Benefit Plans
        231HVII(K) Actions
            231HVII(K)5 Actions to Recover Benefits
                231Hk678 k. Parties in General; Standing. Most Cited Cases
Under ERISA, to be a participant eligible for benefits, a claimant must have a colorable claim that he will prevail in a suit for benefits, or that eligibility requirements may be fulfilled in the future. Employee Retirement Income Security Act of 1974, §§ 3(7), 502(a)(2), 29 U.S.C.A. §§ 1002(7), 1132(a)(2).

*751 Edwin J. Mills, Stull, Stull and Brody, New York, NY, Robert G. Cohen, Kegler Brown Hill & Ritter, Columbus, OH, for Kermit D. Bridges.
Robert G. Cohen, Andrew Schatz, Robert A. Izard, Schatz & Nobel, PC, Hartford, CT, for Selena Plentl.
Gerald Scott Leeseberg, Leeseberg & Valentine, Columbus, OH, for John N. Suhayda.
Robert Armand Perez, Sr., Cincinnati, OH, for Lloyd R. Fadem.
James Edward Arnold, Clark Perdue Arnold & Scott, Columbus, OH, for Albert Fadem Trust, Daren A. Cittadine Revocable Trust, James BrannonRobert L. Garber.
Joseph J. Braun, Richard Stuart Wayne, William Kendall Flynn, Cincinnati, OH, Marc A. Topaz, Schiffrin & Barroway, Radnor, PA, for Sheryl J. Goldberg.
Joseph F. Murray, Murray Murphy Moul & Basil, Columbus, OH, for Gary Kosseff.
Richard Stuart Wayne, Strauss & Troy, Cincinnati, OH, for Private Asset Mnagaement, Robert E. Stowers, Barteck Group, Lorine T. Ward, Hedy Roth, Richard Steinmeyer.
Alvin James McKenna, Fred G. Pressley, Jr., Porter, Wright Morris & Arthur, Columbus, OH, George S. Wang, Jennifer T. Barall, Joseph M. McLaughlin, Michael J. Chepiga, Simpson Thacher & Bartlett, LLP, New York, NY, for American Electric Powr Co.
Alvin James McKenna, Bryan R. Faller, Porter Wright Morris & Arthur, Columbus, OH, for E. Linn Draper, Jr., Thomas Shockley, III.

***ORDER AND OPINION***
MARBLEY, District Judge.

**I. INTRODUCTION**

This matter comes before the Court on the Motion for Class Certification by Plaintiff, Kermit D. Bridges ("Bridges" or "Plaintiff").[FN1] Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff seeks to certify a class defined as:

> FN1. Initially, Plaintiff's Motion for Class Certification sought to certify two class representatives, Bridges and Selena Plentl ("Plentl"). Complaint ¶ 8. Because Plentl was unable to attend the deposition in April 2006, she has since withdrawn her request to serve as a class representative. Defs.' Opp. at 6; Pl's Reply at 1. Bridges is, therefore, the sole named plaintiff.

the Plan, and all Participants in the Plan for who individual accounts the Plan purchased and/or held shares of the AEP Stock Fund at any time from December 9, 1998 to December 31, 2002, inclusive (the "Class")
Plaintiff also seeks an order certifying him as the Class Representative and an order designating both Schatz & Nobel, P.C., and Stull, Stull & Brody, as Class Counsel. For the reasons set forth herein, Plaintiff's Motion is **DENIED**.

**II. STATEMENT OF FACTS**

**A. Background**

**1. The Plan**

This is an action filed under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, et. seq. Bridges brings suit on behalf of all other persons similarly situated (the "Participants"),*752 who participated in the American Electric Power System Retirement Savings Plan (together with its predecessors,[FN2] the "Plan"). Plaintiff seeks Plan-wide relief on behalf of the Plan, and on behalf of a class of all Participants in the Plan for whose individual accounts the Plan purchased and/or held shares of the AEP Stock Fund ("Fund")

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

from December 9, 1998 to the present (the "Class").[FN3]

"Defendants"). Plaintiffs bring this action pursuant to § 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2).[FN4]

> FN2. The Central and South West Corporation Retirement Savings Plan ("CSW Plan") is included as a predecessor plan because AEP acquired Central and South West Corporation in 2000. Thereafter, AEPSC, allegedly administered the CSW Plan and offered an AEP stock fund to CSW Plan participants until the CSW Plan merged with the AEP Plan on or about the close of business on December 1, 2002. Collectively, the two plans are referred to herein merely as the "Plan."

> FN3. Plaintiff excludes from the proposed Class, however, Defendants, directors of AEP and AEPSC, members of their immediate families, and the heirs, successors, or assigns of any of the foregoing.

> FN4. Plaintiff's initially also brought suit pursuant to § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), providing:
> A civil action may be brought-...
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate *equitable relief* (I) to redress such violations or (ii) to enforce any provisions of this subchapter to the terms of the plan.
> 29 U.S.C. § 1132(a)(3). In Plaintiff's Reply, however, Plaintiff voluntarily withdrew its § 502(a)(3) claim. Though Plaintiff asserts that it "does not agree with Defendants' theory" that Bridges' deposition testimony demonstrated that he sought only money damages, because in *In re Cardinal Health, Inc. ERISA Litig.*, 424 F.Supp.2d 1002, 1025-26 (S.D.Ohio 2006) (Marbley, J.), this Court dismissed a plaintiff's ERISA § 502(a)(3) claims, which Plaintiff deems to be "indistinguishable from the [§ 502(a)(3)] claims ... asserted in this case," Plaintiff now pursues *only* its § 502(a)(2) claim. Pl.'s Reply at 7.

The Plan is a "defined contribution" or "individual account" Plan ("EIAP") within the meaning of ERISA § 3(34), 29 U.S.C. § 1102(34), in that it provides for individual accounts for each Participant and for benefits based on the amount contributed to each Participant's account. Complaint ¶ 22. The Plan is also a "401(k)" voluntary contribution plan, whereby each Participant directs the Plan: (1) to purchase investments from among the various investment options offered by the Plan; and (2) to allocate those investments to his or her individual account. Complaint ¶ 23. During the Class Period, the Plan provided several investment options to Participants, including the Fund. Id. ¶ 24. The Plan also provides that AEP will make matching contributions in an amount equal to 6% of each Participant's regular compensation. Id. AEP's matching contributions were invested *solely* in the Fund until March 1, 2002, at which point the company allocated them according to each Participant's individual investment choices. Id. ¶ 25.

Defendants are: (1) AEP, a corporation headquartered in Columbus, Ohio; (2) AEPSC, a wholly-owned subsidiary of AEP, also headquartered in Columbus, Ohio, and the alleged sponsor and named fiduciary of the Plan; and (3) Draper and Shockley (together, the "Director Defendants"), two directors of AEP, who allegedly also serve as the principal officers and directors of AEPSC (collectively, with AEP and AEPSC, the

Generally, Plaintiff alleges that Defendants breached their fiduciary duties to the Plan and the Participants, as set forth in ERISA § 404, 29 U.S.C. § 1104, and the Department of Labor ("DOL") Regulations, 29 C.F.R. § 2550. Specifically, Plaintiff makes two independent claims:

*753 1) Defendants breached their fiduciary duties by offering the Fund as one of the investment options of the Plan and permitting the Plan to purchase and hold shares in the Fund when it was imprudent to do so; and

2) Defendants breached their fiduciary duties by negligently making misrepresentations and negligently failing to disclose material information that was necessary for the Participants to make informed decisions concerning Plan assets and the appropriateness of investing in the Fund.

Plaintiff claims that as a result of these breaches, Participants have suffered substantial losses; namely, the Fund lost a substantial portion of its value since the beginning of the Class Period, and the Plan, and by extension, the Participants were deprived of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

value of prudent investment alternatives. As a result, Plaintiff requests the following: (1) actual damages "in the amount of any losses the Plan suffered to be allocated among the Participants' individual accounts in proportion to the accounts' losses"; (2) equitable relief; (3) costs pursuant to 29 U.S.C. § 1132(g); (4) attorneys fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and (5) "[s]uch other relief as the Court may deem equitable and just." See Complaint at 31-32 ("Prayer for Relief").

### 2. Named Plaintiff

Bridges is a resident of the State of West Virginia who worked for AEP for over thirty years before retiring in 1992. Complaint ¶ 8. Bridges was a Participant in the Plan within the meaning of ERISA § 3(7), 20 U.S.C. § 1002(7) throughout the period of his employment. Bridges Dep. at 12. In 2002, Bridges read about a possible class action suit involving Plan holders, and, shortly thereafter, he contacted proposed Class Counsel, Stull, Stull & Brody. Id. at 74:21-75:1. Bridges was listed as a named plaintiff in the Complaint, which was filed in 2003. Complaint ¶ 8. In 2004, Bridges fully divested himself of his Plan holdings. Id. at 54:18-55:7.

### B. Procedural History

Three different ERISA actions were filed in this Court and the Southern District of New York, beginning in December of 2002. On December 29, 2002, the New York case was transferred to this Court, and on July 8, 2003, this Court issued an Order consolidating the cases and appointing lead plaintiff and lead counsel. Plaintiff then filed the Consolidated Amended Complaint on July 23, 2003, and the Amended Complaint on September 8, 2003 (collectively the "Complaint"). Defendants filed their Motion to Dismiss on November 10, 2003, to which Plaintiff responded.

In their Opposition, Defendants argued that Plaintiff had to, but failed to, comply with Rule 23.1 of the Federal Rules of Civil Procedure. This prompted Plaintiff to file a Motion to Strike, or in the alternative, for Leave to File a Response to Defendants' new argument. By Order of April 15, 2004, the Court granted Plaintiff leave and accepted the response attached to Plaintiff's Motion to Strike. On August 10, 2004, this Court denied Defendants' Motion to Dismiss in its entirety. Further, on March 10, 2005, this Court denied Defendants' Motion to Modify the Court's August 10, 2004 Order to Certify under 28 U.S.C. § 1292(b) for Interlocutory Appeal. On October 31, 2005, Plaintiff filed the motion currently at issue. The matter has been fully briefed, and the Court held a class certification hearing on June 27, 2006.

### III. LAW AND ANALYSIS

#### A. Standing as a Jurisdictional Prerequisite

[1] Before proceeding to the merits of Plaintiff's Motion for Class Certification, this Court must address the issue of standing.*754 See Courtney v. Smith, 297 F.3d 455, 467 (6th Cir.2002) (citing Wooden v. Bd. of Regents of Univ. Sys. of Georgia, 247 F.3d 1262, 1287 (11th Cir.2001) (holding that "as a prerequisite to certification, it must be established that the proposed class representatives have standing to pursue the claims as to which classwide relief is sought")); see also, Bertulli v. Indep. Ass'n of Cont'l Pilots, 242 F.3d 290, 294 (5th Cir.2001) (standing is an "inherent prerequisite to the class certification inquiry"); Hargrave v. TXU Corp., 392 F.Supp.2d 785 (N.D.Tex.2005) (deciding whether named plaintiffs had standing before getting to the merits of plaintiffs' class certification motion).

It is undisputed that in 2004, Bridges liquidated his Plan holdings, and that since retiring in 1992, he has no plans to return to work at AEP:
Q: Am I correct you withdrew your funds from the AEP Plan in March 2004?
A: I don't know when ...
Q: Do you recall how much you rolled out?
A: No.
Q: Do you have funds remaining in the AEP Plan?
A: No.
Q: There's no way of you getting back in, is there?
A: I hope not.

Bridges Dep. 54:18-55:7. Defendants assert that after cashing out from the Plan, Bridges no longer qualifies as a "participant" under ERISA, and has, therefore, divested himself of standing to "assert a derivative claim on behalf of the AEP Plan under § 502(a)(2)." [FN5] Bridges counters that he has standing because he was a Participant throughout the purported Class Period (1998 through 2002), and the law requires only that he be a Participant at the time the Complaint was filed, and/or at the time of the alleged wrongdoing.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN5. In their Opposition, in addition to focusing on the *Firestone* "participant" analysis, Defendants also reference a number of cases relating to *derivative* lawsuits under Rule 23.1 of the Federal Rules of Civil Procedure. *See* Defs.' Opp. at 19, n. 10 (citing *Prince v. Palmer*, 148 Fed.Appx. 249, 250-51 (6th Cir.2005); *Lewis v. Chiles*, 719 F.2d 1044, 1047 (9th Cir.1983); *Schilling v. Belcher*, 582 F.2d 995, 999 (5th Cir.1978)). Each of these cases notes that Rule 23.1 requires that: (1) the plaintiff must have owned stock in the defendant corporation at the time of the transaction of which he complains-the "contemporaneous ownership" requirement; and (2) the plaintiff must be a shareholder of the defendant corporation at the time suit is brought. *See, e.g. Schilling*, 582 F.2d at 999.

This Court previously rejected Defendants' argument that Rule 23.1 applies to the instant case in its decision denying Defendants' various motions to dismiss. *See In re AEP ERISA Litig.*, 327 F.Supp.2d 812, 820-21 (S.D.Ohio Aug. 10, 2004) (Marbley, J.). The Court explained, [c]learly the Rule does not apply to *all* derivative suits, as Defendants suggest. The Supreme Court so held in *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 535, n. 11, 104 S.Ct. 831, 78 L.Ed.2d 645 (1984), stating that, "[t]he fact that derivative suits are brought on behalf of a corporation does not mean, however, that all suits brought on behalf of a corporation are derivative." Other courts, likewise, have rejected Defendants' argument and clarified that: [a]lthough this suit may be characterized as "derivative" in the broad sense, it clearly does not fall within the terms of Rule 23.1 ... [Plaintiffs] are suing as plan beneficiaries to enforce the right of the plan against its fiduciaries. When a trust beneficiary brings a derivative suit on behalf of a trust, "the specific provisions of Rule 23.1 are not controlling."
*Id.* at 820-21 (internal citations omitted). Defendants have offered no new precedent and no new facts that would give the Court pause in reconfirming its previous assertion that Plaintiff's failure to comply with Rule 23.1 relieves him of standing to pursue the instant suit. Therefore, the Court finds Defendants' reliance on the above Rule 23.1 derivative suit cases to be misplaced.

**\*755 B. Standing to Bring an ERISA Claim**

**1. Background**

Bridges brings this action pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1332(a), which authorizes a "participant," "beneficiary," or "fiduciary," to bring a civil action for breach of any fiduciary duty proscribed by 29 U.S.C. § 1109. Plaintiff claims to have standing to sue as a "participant" of the Plan. ERISA defines the term "participant" as:
any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive such benefit.

29 U.S.C. § 1002(7).

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court shed light on the definition of an ERISA "participant," explaining:
[t]he term "participant" is naturally read to mean either "employees in, or reasonably expected to be in, currently covered employment," or former employees who "have ... a reasonable expectation of returning to covered employment" or who have "a colorable claim" to vested benefits. In order to establish that he or she "may become eligible for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future". "This view attributes conventional meaning to the statutory language since all employees in covered employment and former employees with a colorable claim to vested benefits 'may become eligible.' A former employee who has neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits, however, simply does not fit within the [phrase] 'may become eligible.' "

*See* 489 U.S. at 117-18, 109 S.Ct. 948.

Soon after the Supreme Court issued its *Firestone* decision, a number of courts, including the Sixth Circuit Court of Appeals, narrowly interpreted

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Firestone* to find that "employees cease to be 'participants' in a plan when they effectively terminate all their rights under [that] plan." *See, e.g. Teagardener v. Republic-Franklin Inc. Pension Plan,* 909 F.2d 947 (6th Cir.1990) (finding that the definition of "participant" must exclude retirees who have accepted the payment of everything else due them in a lump sum because they "have already received the full extent of their benefits and are no longer eligible to receive future payments."); *Joseph v. New Orleans Elect. Pension and Retirement Plan,* 754 F.2d 628, 630 (5th Cir.1985) (retirees who have received lump-sum payouts are not "participants" because they "... have already received the full extent of their benefits and are no longer eligible to receive future payments. Such retirees have no present or future right to Plan funds, and the Plan no longer has any obligation to these individuals."); *Kuntz v. Reese,* 785 F.2d 1410 (9th Cir.1986) (plaintiffs were not participants because "as former employees whose vested benefits under the plan have already been distributed in a lump sum, the Kuntz plaintiffs were not 'eligible to receive a benefit,' and were not likely to become eligible to receive a benefit, at the time that they filed suit.").

In *Swinney v. Gen. Motors Corp.,* however, the Sixth Circuit, finding such a strict interpretation to be contrary to ERISA's stated purpose of protecting employees' rights, reconsidered the issue. 46 F.3d 512, 518 (6th Cir.1995). In *Swinney*, plaintiffs, former General Motors ("GM") *756 employees, sued GM, alleging that the company had breached its fiduciary duties under ERISA, and should, therefore, be estopped from denying plaintiffs certain benefits. *Id.* Because the plaintiffs had already both severed their employment with GM and taken lump-sum payouts, defendants argued that under *Firestone*, Plaintiffs had no standing to bring suit. *Id. at 517-18.* Though, under a narrow reading of *Firestone*, defendants' argument had merit, the *Swinney* court reassessed *Firestone*, and reasoned:

[s]ince our decision in *Teagardener*, however, we have noted that the Supreme Court's definition of the ERISA term "participant" was developed outside of the standing context ... In determining who is a 'participant,' for purposes of standing, the definition found in 29 U.S.C. § 1002(7) must be read *in the context of traditional concepts of standing*, not in the context of adjudicating the ultimate issue of the merits of the plaintiffs' claim ... Thus, while the Supreme Court's definition of "participant" in *Firestone* guides our standing analysis, it is not necessarily dispositive.

46 F.3d at 518 (emphasis added).

Thus, the *Swinney* court developed what has been termed a "but for" exception to the general rule that a person who terminates his right to belong to an ERISA plan can no longer be considered a "participant" in that plan. *Id. at 518.* The court held that under the exception, "if the employer's breach of fiduciary duty causes the employee to either give up his right to benefits or to fail to participate in a plan, then the employee has standing to challenge that fiduciary breach." *Id.*[FN6] After *Swinney,* therefore, this Court finds that an analysis of whether Bridges constitutes a "participant" must be based on more than just a rote application of the *Firestone* analysis.

> FN6. The First, Second, Fifth, and Eighth Circuits have each adopted the "but for" approach employed by the Sixth Circuit in *Swinney. See Vartanian v. Monsanto Co.,* 14 F.3d 697, 702-03 (1st Cir.1994); *Mullins v. Pfizer, Inc.,* 23 F.3d 663, 667-68 (2d Cir.1994); *Christopher v. Mobil Oil Corp.,* 950 F.2d 1209, 1220-21 (5th Cir.1992); *Adamson v. Armco, Inc.,* 44 F.3d 650, 654-55 (8th Cir.1995). The Fourth, Tenth, and Eleventh Circuits, however, adhere to a "contemporaneous ownership rule," rejecting the "but for" approach. *See Stanton v. Gulf Oil Corp.,* 792 F.2d 432, 433 (4th Cir.1986); *Raymond v. Mobil Oil Corp.,* 983 F.2d 1528, 1535 (10th Cir.1993); *Sanson v. Gen. Motors Corp.,* 966 F.2d 618, 619 (11th Cir.1992).

### 2. Plaintiff's Arguments

As a threshold matter, Plaintiff concedes that the only *Firestone* category in which he fits is as a claimant with a "colorable claim for vested benefits." *See* Hrg. Tr. at 7. Where Bridges' suit is rooted in his assertions that Defendants breached their ERISA fiduciary duties, there is no doubt that Bridges' claim is "colorable." *See Kennedy v. Connecticut Gen. Life Ins. Co.,* 924 F.2d 698, 700 (7th Cir.1991) ("the requirement of a colorable claim is not a stringent one .... 'jurisdiction depends on an arguable claim, not on success' and that only if 'any claim ... must be frivolous is this jurisdiction lacking.' "); *see also, Sladek v. Bell Sys. Mgmt. Pension Plan,* 880 F.2d 972, 976-79 (7th Cir.1989); *Andre v. Salem Tech. Servs.,* 797 F.Supp. 1416, 1421 (N.D.Ill.1992) (a claim based on violations of ERISA is clearly rooted in existing ERISA law). Thus, the focus becomes

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

437 F.Supp.2d 750                                                                                                                                           Page 7
437 F.Supp.2d 750, 38 Employee Benefits Cas. 1467
(Cite as: 437 F.Supp.2d 750)

whether Bridges has a viable claim for vested benefits. In other words, if: (1) he will prevail in a suit for benefits; or (2) eligibility requirements will be fulfilled in the future. See *Firestone*, 489 U.S. at 117-18, 109 S.Ct. 948.

#### a. Standing at the Time of Filing

[2] Plaintiff first asserts that to have standing as a class representative, he need *757 only have been a plan "participant" at the time the lawsuit was filed. See Pl.'s Reply at 4. Plaintiff bases his argument on *Morrison v. Marsh & McLennan Cos., Inc. See* 439 F.3d 295 (6th Cir.2006). In *Morrison*, plaintiff, the widow of a former employee of defendant, Marsh & McLennan Companies, Inc. ("M & M"), sued the company pursuant to ERISA § 502(c)(1) claiming that she was entitled to portable life insurance benefits for coverage that her husband had been denied shortly after he had resigned his position, plus statutory penalties for each day M & M had failed to provide her with requested plan documents. *Id.* at 298-99. Plaintiff premised her § 502(c)(1) claim for penalties on the assumption that M & M was obligated to provide her with the plan documents she requested. *Id.* The *Morrison* court found, however, that because plaintiff was neither a plan "participant" nor a plan "beneficiary," she had no standing to sue for relief. *Id.* at 303. Quoting *Firestone*, the court explained that an ERISA "participant" is a "former employee that has ... a colorable claim to vested benefits," and noted that a "colorable claim to vested benefits" is defined as,

> a reasonable claim that (1) a person will prevail in a suit for benefits or that (2) eligibility requirements will be fulfilled in the future[, where *e]ligibility is determined at the time that the lawsuit is filed.*

*Id.* (citing *Firestone*, 489 U.S. at 117, 109 S.Ct. 948) (emphasis added).

Plaintiff premises his entire argument here on the single line of dicta presented above-"eligibility is determined at the time the lawsuit is filed." 439 F.3d at 202. The Court, however, finds Plaintiff's reasoning unpersuasive. First, unlike Bridges, who is purportedly seeking to recover value on behalf of the Plan, the plaintiff in Morrison brought an individual cause of action for benefits under her deceased husband's life insurance plan. Whether she was supposed to receive the plan documents she requested depended on whether she was a "participant" at the time, and her entitlement to recovery under the relevant ERISA statute depended on her standing *at the historical time.* Second, in addition to the obvious factual distinctions, in this case, the question of whether Plaintiff has standing is unrelated to his eligibility at the time he filed suit. It is uncontroverted that Plaintiff was eligible for benefits *at the time* he brought suit; the question, however, is whether his eligibility continues in the face of his Plan divestment.

#### b. Standing During the Wrongdoing

[3] Finding Plaintiff's first argument to be without merit, this Court turns to Plaintiff's second argument, which posits that under *Drennan v. General Motors Corp.*, standing to bring suit is determined at the time of the alleged wrongdoing. 977 F.2d 246 (6th Cir.1992). In *Drennan*, plaintiffs, a class of former General Motors ("GM") who had been laid off when GM closed its Norwood, Ohio plant, sued defendants, GM, alleging that GM had breached its ERISA fiduciary duties by making material misrepresentations to plaintiffs regarding the terms of their buyout. *Id.* At the time of the layoff, GM had two severance plans in effect: (1) the Supplemental Unemployment Plan Separation ("SUB Buyout"), which offered each class member a lump sum payment in consideration for his agreement to voluntarily forfeit his seniority status, employment status and layoff status with GM; and (2) the Voluntary Separation of Employment Program ("VTEP"), which offered each class member a substantially *larger* lump-sum payout in consideration for an employee's agreement to terminate his employment with GM, forfeit his senior status, and relinquish all vested retirement benefits and post-retirement health care benefits. *Id.* at 248. Before deciding to accept the *758 SUB buyout, plaintiffs questioned plant management about their right to participate in the VTEP. *Id.* Though management was allegedly considering the option of plaintiffs' participation in VTEP, they told plaintiffs that they had already decided that the VTEP would be unavailable to plaintiffs. *Id.* Thus, relying on management's statement, plaintiffs opted for the SUB Buyout. *Id.* Shortly after plaintiffs cashed out, however, management announced that the more lucrative VTEP option would be available to *all* GM employees with ten or more years of seniority. *Id.* The crux of plaintiffs' suit was their allegation that GM had misled them into believing that VTEP would remain unavailable, and, therefore, had prevented them from collecting more money upon their termination. *Id.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Initially, GM argued that, under *Firestone,* the plaintiffs had no standing to participate in the VTEP during the period in controversy, and, therefore, GM had no fiduciary responsibility to them. *Id.* at 250. The *Drennan* court disagreed, and found that because the class-members were "eligible to participate in the employee benefit plan," they had standing to bring this suit under ERISA, explaining:

VTEP was a buy-out by GM, of the Class members' vested benefits, including their pension plans. The Class members were eligible for such a plan at the time the asserted breach of fiduciary duty occurred and had no future eligibility requirements to fulfill. Contrary to GM's contentions that the pronouncements of *Firestone* ... limited ERISA standing to employees with vested employee benefits, the *Firestone* Court addressed only the *disclosure requirements* of ERISA, 29 U.S.C. [§ ] 1024(b)(4) as they *applied to former employee participants* and explicitly expressed no view "as to whether the [former employees] were 'participants' with respect to the benefit plans to which they sought information." *Firestone,* 489 U.S. at 118, 109 S.Ct. 948.

*Id.* at 250 (emphasis added).

Plaintiff asserts that the above language demonstrates that in the Sixth Circuit, an ERISA plaintiff need only be a "participant" during the time the alleged wrong took place. He argues that because he was a plan participant throughout the purported class period, he has standing to sue for relief despite his decision to cash out in 2004. This Court finds Plaintiff's reliance on *Drennan* unpersuasive. At the outset, the cases are factually distinguishable. Where the *Drennan* plaintiffs would have chosen the VTEP if not for GM's alleged misrepresentations, in this case, Plaintiff chose to divest himself regardless of any alleged wrongdoing by Defendants during the proposed Class Period. Also, though the *Drennan* plaintiffs sued defendants *after* they had accepted the SUB Buyout, Bridges sued Defendants *before* he cashed out. And, where the *Drennan* plaintiffs were unaware of GM's alleged fraud until *after* they had already lost their plan holdings, Plaintiff knew of AEP's alleged wrongdoing *before* he decided to "roll out."

The Court also disagrees with Plaintiff's assertion that *Drennan* proposes that one need only be a "participant" at the time of wrongdoing. *Drennan* actually posits that where a plaintiff relies on a defendant's misrepresentations in divesting himself of his participant status, he remains eligible to sue defendant for making those representations. Thus, *Drennan,* falls into the category of a *Swinney* "but for" case, wherein courts award former participants standing to sue if "but for" defendant's wrongdoing, plaintiffs would have retained their participant status. Bridges, however, cashed out of the Plan of his own volition, and concedes that he does not fit the "but for" exception. Therefore, stripped of the "but for" exception, Plaintiff*759 is covered by the general rule that former employees who have received the full benefits to which plan documents entitled them are no longer "participants" of the plan. *See Teagardener,* 909 F.2d at 952.

### 3. Standing Despite Divestment

Aside from cases employing the "but for" exception, the Sixth Circuit has not considered the issue of whether a party who has divested himself of his plan holdings loses standing to prosecute the action.[FN7] Courts in other circuits have considered this question and provide guidance.

FN7. Plaintiff relies on two cases, which he argues demonstrate that some federal courts allow standing to a class representative who has divested himself of his plan holdings before bringing suit for a claim on behalf of an ERISA plan. *See Rankin v. Rots,* 220 F.R.D. 511 (E.D.Mich.2004) (finding that plaintiff who divested herself of her Plan holdings had standing to sue for defendants' alleged breaches of fiduciary duty occurring while she was still a plan participant); *In re Mutual Funds Investment Litig.,* 403 F.Supp.2d 434 (D.Md. Dec.6, 2005) (finding that despite plaintiff's "roll-out," he had standing to sue defendants for their alleged breaches of fiduciary duty). This Court, however, finds these cases distinguishable in that where Bridges divested himself of his Plan holdings *after* he had already filed suit, both the *Rankin* and the *Mutual Funds* plaintiffs divested themselves *before* filing suit. Further, both *Rankin* and *Mutual Funds* are "but for" cases. *See, e.g. Swinney,* 46 F.3d at 518. Hence, unlike the *Rankin* and *Mutual Funds* plaintiffs, who were unaware of the nature of defendants' fraud at the time they "rolled out," when Bridges divested himself of his Plan holdings, he did not think he was receiving the full value of his Plan holdings. In fact,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

in bringing suit, he had already affirmed his belief that Defendants had committed misdeeds. Thus, although this Court shares the concerns of both the *Rankin* and *Mutual Funds* courts that ERISA Plan members should not have to forfeit a cause of action by divesting themselves when they were unaware they were being wronged, these cases are inapposite.

*Crawford v. Lamantia* is particularly instructive. 34 F.3d 28 (1st Cir.1994). In *Crawford*, plaintiff, Crawford, filed a complaint charging defendants, trustees of the Arthur D. Little, Inc. ("ADL") Employee Stock Ownership Plan and Trust (the "ESOP"), with a breach of their fiduciary duties under ERISA. 34 F.3d at 30. While Crawford was an employee and an ESOP participant, ADL carried out a "going-private" transaction whereby ADL: (1) acquired all outstanding publicly held shares of ADL stock; (2) canceled all existing shares of ADL stock; (3) reissued "New Shares"; and (4) sold a portion of those New Shares to the ESOP with a $32.8 million loan from ADL, which, in turn would receive bank financing. *Id.* at 30.

Shortly after ADL carried out its "going-private" transaction, ADL informed Crawford, that he would be terminated due to budget cuts. *Crawford*, 34 F.3d at 30. Crawford subsequently negotiated an extension of his salary and benefits until March 24, 1989 to be followed by an "unpaid leave of absence." *Id.* On May 12, 1989, Crawford filed his original *pro se* complaint, and resigned from ADL effect May 18, 1989. Approximately one year after terminating his employment with ADL, Crawford elected to "receive his total vested distribution from the ESOP." *Id.* at 30-31. After "rolling out" his ESOP holdings, however, Crawford hired an attorney and filed an amended complaint asserting a purported class action for "recovery on behalf of the ESOP for breach of fiduciary duty for Trustees' failure to act for the exclusive benefit of the participants and the beneficiaries of the ESOP plan." *Id.* at 31.

The district court granted the ADL defendants' motion for summary judgment, explaining that Crawford lacked standing to pursue his ERISA claim in that: (1) he *760 was not a current employee throughout the litigation, and (2) he had failed to present a "colorable claim for benefits," and Crawford timely appealed. 34 F.3d at 31. On appeal, Crawford argued that "he ha[d] a colorable claim to [vested] benefits as a former employee because 'but for' defendants breach of duty, he would have received additional, vested benefits at the time he received his lump sum payment from the ESOP." *Id.* The First Circuit disagreed, and held that because by the time of Crawford's amended complaint, he had already terminated his employment and collected all vested benefits due him from ESOP, he no longer had a claim for vested benefits. *Id.*

Bridges' claim is distinguishable from Crawford's. First, Bridges, unlike Crawford, was not *terminated;* he retired of his own free will. Second, Bridges filed the Complaint *prior* to cashing out of the Plan; Crawford divested himself of his ESOP shares before he filed his amended complaint. Third, where Bridges' claim is based upon his assertions that Defendants made material misrepresentations about the viability of the Fund and failed to prudently invest his Plan shares, Crawford based his claim on an allegedly imprudent "going-private transaction" pursuant to which ESOP Trustees had bought an excessive number of ADL common stock shares. These distinctions, however, do not detract from *Crawford's* proposition that a plaintiff who divests himself of his plan holdings after bringing suit has already collected all vested benefits due to him under the plan.

### 4. Plaintiff's Claim is Too Speculative to Amount to a Legitimate Claim for "Vested Benefits"

[4] Under ERISA, to be a participant eligible for benefits, a claimant must have a colorable claim that he will prevail in a suit for benefits, or that eligibility requirements may be fulfilled in the future. *See Firestone*, 489 U.S. at 117-18, 109 S.Ct. 948. Thus, if Plaintiff has a legitimate claim for vested benefits, he has standing irrespective of his divestment. *Id.; see, e.g., Swinney*, 46 F.3d at 518 (explaining the "but for" exception and noting that a plaintiff who has divested himself of his plan holdings because of actions by the defendant has standing if he can show that he will prevail in a suit for benefits or that eligibility requirements will be fulfilled in the future); *see also, Rankin*, 220 F.R.D. at 511 (finding that plaintiff who divested herself of her plan holdings still had a colorable claim for vested benefits).

Bridges seeks to recover a share of the value of the Plan, which was allegedly lost due to Defendants' alleged wrongdoing. Bridges asks the Court to compensate the Plan, and therefore, all Participants, for the value their shares lost due to Defendants' allegedly imprudent investing, but he cannot identify that value. Many courts have deemed similar

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

requests for "lost value" to be too speculative to amount to a legitimate claim for "vested benefits." *See, e.g., Crawford,* 34 F.3d at 31 (plaintiff's request that the court use its "equitable powers" to allocate funds to him and other ESOP members who were "cashed out" after defendants' going-private transaction did not establish the value the ESOP lost in the transaction and was deemed to speculative to amount to a legitimate claim for "vested benefits"); *Kuntz,* 785 F.2d at 1411 (finding plaintiffs were not plan participants "[b]ecause, if successful, the plaintiffs' claim would result in a *damages* award, not in an increase of *vested benefit* ") (emphasis added); *Yancy v. Am. Petrofina,* 768 F.2d 707, 709 (5th Cir.1985) (the plaintiff's claim for a sum that could not have been earned "cannot be considered as vested under ERISA"); *LaLonde v. Textron, Inc.,* 418 F.Supp.2d 16 (D.R.I.2006) (finding that where plaintiffs did not claim that certain benefits were **761 withheld or miscalculated, but rather, that Defendants' improper investment decisions concerning defendants' stock resulted in diminished plan value, their claim was not a claim for vested benefits); *Hargrave v. TXU Corp.,* 392 F.Supp.2d 785 (N.D.Tex.2005) (plaintiffs' allegations that the plan had been undervalued was a claim for "additional damages that *might have* accrued but for the Defendants' alleged misconduct"; these damages are too speculative to be considered "vested" under ERISA).

In *Kuntz v. Reese,* plaintiffs, former plan-holders who had already divested themselves of their plan holdings, sued defendants alleging that defendants had misled them as to the amount of benefits properly due under the plan. 785 F.2d at 1411. The Ninth Circuit found that, "because, if successful, the plaintiffs' claim would result in a *damages award,* not in an increase of vested benefits, they [we]re not plan participants." *Id.* (emphasis added). The *Kuntz* court explained that rather than allege that their vested benefits were improperly computed, plaintiffs alleged that defendants had breached their "duty to disclose information about benefits." *Id.* Thus any recoverable damages they would receive in addition to the lump-sum payout they had received upon cashing out their plan holdings, would *not* be "benefits from the plan." *Id.*

In *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan,* the Fifth Circuit expanded upon the *Kuntz* court's distinction between damages and vested benefits. *See* 883 F.2d 345, 349-50 (5th Cir.1989). In *Sommers,* the alleged class of plaintiffs filed an ERISA lawsuit alleging that the defendants had breached their fiduciary duties with respect to the sale of company stock held by the company's qualified employee benefits plan. *Id.* at 347. Specifically, the plaintiffs alleged that the defendants sold the plan's shares of stock in connection with the liquidation and distribution of plan assets, for a price far below the fair market value. *Id.* at 350. In other words, plaintiffs asserted that the amount of money received and distributed to plan participants pursuant to the stock sale, did not reflect the full value of benefits due under the terms of the plan. *Id.*

In determining whether plaintiffs had standing to sue as ERISA participants, the *Sommers* Court noted that the line between "vested benefits" and "damages" is not always clear. *Id.* at 349. Thus, the court attempted to articulate the distinction as follows: an allegation that benefits were wrongly computed clear states a claim for *vested benefits;* on the other hand, a claim for an unascertainable amount, with no demonstration that recovery would directly effect payments to the plaintiff, states a claim for damages. *Id.* at 349-50.[FN8] Applying its distinction, the *Sommers* court reasoned that plaintiffs had essentially stated a claim for the unpaid value of vested benefits (i.e. the value not reflected in the stock's selling price), which were due upon the distribution of **762 plan assets. *Id.* at 350. Thus, the court found the claim "close to a simple claim that benefits were miscalculated," and held that plaintiffs were "participants," having standing under ERISA. *Id.*

> FN8. The *Sommers* court stated:
> The distinction between "benefits" and "damages" is not clear. This is in part attributable to use of words with overlapping meaning to describe mutually exclusive categories. The statute simply grants rights of recovery only to a distinct and limited type of claim which itself is no more than a suit for damages, albeit personally suffered because participants should have been paid under the plan but were not. Clearly, a plaintiff alleging that his benefits were wrongly computed has a claim for vested benefits. Payment of the sum sought by such a plaintiff will not increase payments due him. On the other hand, a plaintiff who seeks the recovery for the trust of an unascertainable amount, with no demonstration that the recovery will directly effect payment to him, would state a claim for damages, not benefits.

*Sommers*, 883 F.2d at 349-50.

In this case, Bridges has alleged breaches of fiduciary duties with respect to Defendants' alleged misrepresentations regarding shares of AEP stock purchased and held by the Plan over the course of the class period. Bridges has already received a lump-sum payment of his shares, and he now seeks *added value,* which he claims was lost due Defendants' wrongdoing. Hence, like plaintiffs' claims in both *Kuntz* and *Sommers,* Plaintiff's claims lies somewhere between the two categories of "vested benefits" and "damages." Plaintiff's requested relief, however, is more similar to the *Kuntz* plaintiff's abstract claim for "lost value" than the *Sommers* plaintiffs' less speculative claims for "miscalculated benefits." Plaintiff is not alleging that a portion of his benefits was withheld by Defendants improperly. Instead, he asserts a right to "a sum that possibly could have been earned if Defendants had made prudent investment decisions." *See also, Hargrave,* 392 F.Supp.2d at 790. These additional damages that *might have* accrued, however, are too speculative to be considered vested under ERISA. *Id.* Thus, this Court will adhere to the rule in *Kuntz* that because Plaintiff's claim is akin to one for *damages* as opposed to greater *benefits,* by divesting himself of his Plan holdings, Plaintiff also divested himself of his participant status.

In enacting ERISA, Congress intended to protect the "interests of participants in employee benefit plans ... by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans." 29 U.S.C. § 1001(b). As a former participant of the Plan suing for damages, Bridges falls between the cracks of those with Congressionally conferred standing under ERISA. Thus, to qualify, Bridges must demonstrate that he has either a reasonable expectation of returning to covered employment or a colorable claim for vested benefits. *See Firestone,* 489 U.S. at 117-18, 109 S.Ct. 948. He has done neither. This Court finds, therefore, that Bridges lacks standing under ERISA § 502(a)(2) to pursue his claim on behalf of the Plan.

### V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Class Certification is **DENIED,** and Plaintiff's claims are dismissed without prejudice.

**IT IS SO ORDERED.**

S.D.Ohio,2006.
In re AEP Erisa Litigation
437 F.Supp.2d 750, 38 Employee Benefits Cas. 1467

Briefs and Other Related Documents (Back to top)

• 2006 WL 1758168 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for a Protective Order (May 1, 2006) Original Image of this Document (PDF)
• 2006 WL 1629425 (Trial Motion, Memorandum and Affidavit) Plaintiff Selena Plentl's Motion for a Protective Order and Memorandum in Support Thereof (Apr. 25, 2006) Original Image of this Document (PDF)
• 2006 WL 1111919 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion to Compel Production of Documents in Response to Plaintiffs' Third Request for Production of Documents and Memorandum in Support Thereof (Mar. 2, 2006) Original Image of this Document (PDF)
• 2005 WL 3659962 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply to Defendants' Response to Plaintiffs' Motion for Class Certification (Nov. 22, 2005) Original Image of this Document (PDF)
• 2005 WL 3659961 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Memorandum of Law in Further Support of Motion to Strike Class Action Allegations and to Stay Further Merits Discovery Pending Resolution of the Class Action Issues (Nov. 14, 2005) Original Image of this Document (PDF)
• 2005 WL 3144920 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to Defendants' Motion to Strike Class Action Allegations and to Stay Further Merits Discovery and in Support of Plaintiffs' Motion to Compel Attendance at Plaintiffs' Rule 30(b)(6) Deposition (Oct. 31, 2005) Original Image of this Document (PDF)
• 2005 WL 3145517 (Trial Motion, Memorandum and Affidavit) Defendants' Motion to Strike Class Action Allegations and to Stay Further Merits Discovery Pending Resolution of the Class Action Issues (Oct. 6, 2005) Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Westlaw.**

Slip Copy                                                                                                          Page 1
Slip Copy, 2006 WL 2355586 (N.D.Ill.), 38 Employee Benefits Cas. 1979
**(Cite as: Slip Copy)**

Briefs and Other Related Documents

United States District Court,N.D. Illinois,Eastern Division.
Bruce G. HOWELL, on behalf of Himself and a Class of Persons Similarly Situated, Plaintiff,
v.
MOTOROLA, INC., et al., Defendants.
**No. 03 C 5044.**

Aug. 11, 2006.

Edwin J. Mills, Stull, Stull & Brody, Joseph H. Weiss, Weiss & Yourman, New York, NY, Bruce C. Howard, Law Offices of Robert D. Allison, Robert D. Allison, Robert D. Allison & Associates, Chicago, IL, for Plaintiff.
Michael A. Warner, Ada W. Dolph, Brian William Barrett, Brian M. Stolzenbach, Camille Annette Olson, Ian H. Morrison, Timothy F. Haley, Alissa L. Gilfand, Allegra R. Rich, James Stephen Poor, Seyfarth Shaw, Chicago, IL, Emily M. Pasquinelli, John C. Massaro, Sarah Kotler, Stephen M. Sacks, Arnold & Porter, Washington, DC, for Defendants.

### *MEMORANDUM OPINION AND ORDER*
REBECCA R. PALLMEYER, District Judge.
*1 This matter comes before the court on a Motion to Intervene by John Endsley ("Endsley" or "Intervenor"). After this court concluded that Bruce Howell ("Howell") lacked standing to represent a class of ERISA plan beneficiaries in this action for breach of fiduciary duty, Plaintiffs proposed another class representative: Endsley. For the reasons explained below, however, the court concludes that Endsley, too, lacks standing. Accordingly, his motion for leave to intervene is denied.

### *BACKGROUND*

On July 21, 2003, a single named Plaintiff, Bruce Howell, filed the initial complaint on behalf of the Motorola, Inc. 401(k) Profit Sharing Plan (the "Plan") and all Participants in the Plan for whose individual accounts the Plan purchased and/or held shares of Motorola common stock during the proposed class period, May 14, 2000 to the present (the "Participants"). The action was filed under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, et. seq. Plaintiffs seek to recover from Defendants [FN1] for breach of fiduciary duty in violation of Sections 502(a)(2) and (3), 29 U.S.C. § § 1132(a)(2)-(3). Specifically, in their amended complaint, filed on October 3, 2003, Plaintiffs allege that Defendants breached their fiduciary duties by: (1) purchasing and holding shares of Motorola common stock when it was imprudent to do so; (2) negligently misrepresenting and failing to disclose materials concerning Plan management and assets; and (3) failing to appoint and monitor appropriate fiduciaries, and failing to provide sufficient information to enable the fiduciaries to fulfill their obligations under ERISA. In September 2004, this court denied Defendants' motion to dismiss, holding, *inter alia,* that Plaintiffs' claim that members of the Board of Directors breached their fiduciary duty to monitor the Profit Sharing Committee of Motorola, Inc., and its members, was sufficient, and that Plaintiffs' allegation that the Board had an affirmative duty to monitor the committee was sufficient, under liberal pleading standards, to state a claim for relief. *Howell v. Motorola, Inc.,* 337 F. Su pp.2d 1079, 1097, 1099 (N.D.Ill.2004).

FN1. Named as Defendants are Christopher B. Galvin (Motorola's Chief Executive Officer and Chairman of the Board of Directors during all or part of the Class Period), Robert L. Growney (Motorola's Chief Operating Officer during all or part of the Class Period), Rick Dorazil (Motorola's Vice President and Director of Global-Rewards Benefits), and Carl F. Koenemann (Motorola's Executive Vice President for Finance and Chief Financial Officer). Also named are members of the Board of Directors: Ronnie C. Chan, H. Laurance Fuller, Anne P. Jones, Donald R. Jones, Judy C. Lewent, Walter E. Massey, Nicholas Negroponte, John E. Pepper Jr., Samuel C. Scott III, Gary L. Tooker, B. Kenneth West, and John A. White. Defendants from the Profit Sharing Committee are David Devonshire, Glenn Gienko, Garth L. Milne, Ron Miller, William P. DeClerck, and Richard Enstrom.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

After a period of discovery, Defendants moved for summary judgment, arguing that the waiver and release signed by Howell at the end of his employment barred him from pursuing this action. On September 30, 2005, this court granted that motion for summary judgment, and struck the motion for class certification without prejudice. *Howell v. Motorola, Inc.,* No. 03-C-5044, 2005 WL 2420410 (N.D.Ill. Sept. 30, 2005). Howell filed a Notice of Appeal with the Seventh Circuit on October 27, 2005. This court assumes the reader's familiarity with its two earlier opinions and will repeat facts here only as necessary for understanding the motion now under consideration.

Endsley filed this motion to intervene as Plaintiff and additional class representative on October 19, 2005.

## FACTS

*2 Endsley is a former Motorola employee; he voluntarily resigned from his position on February 24, 2001. (Ex. A to Defendants' Memorandum in Opposition to Endsley's Motion to Intervene ("Def.'s Opp.").) The Plan is a "defined contribution" plan within in the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34). The Plan provides for individual accounts for each participant, and benefits are payable based on the amount contributed to each Participant's account, adjusted for any gains or losses. (Complaint in Intervention, 16.) Participants direct the Plan to purchase investments from among the investment options available in the Plan and allocate them to Participants' individual accounts. (*Id.*) One of the investment options available to Motorola employees was the Motorola Stock Fund, which consisted solely of Motorola Common Stock. (*Id.* at 17.)

During Plaintiff Endsley's employment with Motorola, he participated in the Motorola, Inc. 401(k) Profit Sharing Plan, and held shares of Motorola common stock in his individual account under the Plan. (Endsley's Motion to Intervene, 2.) After resigning, he received a full distribution under the Plan on or about March 20, 2001. (Ex. B to Def.'s Opp.)

## DISCUSSION

As in the earlier motion for summary judgment involving Howell, the central issue here is Endsley's standing. Under 29 U.S.C. § 1132(a), a "participant," "beneficiary," or "fiduciary" may bring a civil action for a breach of fiduciary duty proscribed by 29 U.S.C. § 1109. A "participant" is defined as "any employee or former employee ... who is or may become eligible to receive a benefit of any type from an employer benefit plan ...." 29 U.S.C. § 1002(7). The Supreme Court has explained that a former employee "may become eligible" to receive benefits under a plan if he has either (1) "a reasonable expectation of returning to covered employment," or (2) a "colorable claim to vested benefits." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 117-118 (1989) (internal citations omitted).

Because Endsley has not alleged he plans to return to covered employment, this court must determine whether he had a "colorable claim to vested benefits" when the suit was brought on July 21, 2003. *Id.; Clair v. Harris Trust and Sav. Bank,* 190 F.3d 495, 497 (7th Cir.1999). The requirement of a colorable claim in the Seventh Circuit "is not a stringent one." *Panaras v. Liquid Carbonic Indus. Corp.,* 74 F.3d 786, 790 (7th Cir.1996). A claim can meet this "low threshold" if it is not "bizarre" or "out of line with existing precedent." *Id.* at 790 (internal quotation and citation omitted). Endsley's claim is founded on the assertion that Defendants breached their ERISA fiduciary duties, and thus meets the low threshold of "colorable." As noted earlier, this court has previously denied Defendants' motion to dismiss this claim. *Howell,* 337 F.Supp.2d 1079.

The more challenging question here is whether Endsley's colorable claim is one for vested benefits. Endsley argues he meets the test in *Firestone* because he is seeking the "benefit" of what his individual account would have earned and what it would have yielded if the account balance in Motorola stock had been invested in the best alternative available under the Plan. Defendants argue that, although styled as a claim for benefits, as discussed below, Endsley is really seeking damages.

*3 Plaintiffs challenge this assertion. They argue, first, that standing is determined at the time of the alleged violation, not at the time this lawsuit was filed. Second, Plaintiffs contend that Endsley's claim is properly understood as one for vested benefits, not damages. Alternatively, Plaintiffs urge that an exception to the "vested benefits" requirement in *Firestone* is applicable to Endsley. The court addresses these arguments in turn.

**I. Standing at the Time of the Alleged Violation**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Plaintiffs first argue that, so long as Endsley had standing to challenge Defendants' conduct at the time of the alleged violation, he is entitled to represent the class. They cite _Flanagan v. Allstate Ins. Co., 213 F.Supp.2d 862 (N.D.Ill.2001)_ (Moran, J.), where plaintiffs, all of whom had left the company prior to May 31, 1999, asserted two claims: First, they alleged that their employer had breached its fiduciary duty by failing to disclose the fact that a new severance package was under consideration at the time they retired. In a second claim, plaintiffs alleged that their employer had violated Section 510 of ERISA by interfering with plaintiffs' attainment of eligibility for the severance payments under consideration. _Id._ at 865-66. The case before this court is distinguishable. The _Flanagan_ plaintiffs' first claim sought the _benefit_ of coverage under a severance plan that they alleged was under consideration at the time of their retirement. _Id._ There is no dispute here about Endsley's coverage under the plan; indeed, he received a distribution from it at the time he resigned. In any event, the _Flanagan_ court was simply ruling on a motion to dismiss; the focus of that court's discussion of the "serious consideration" claim was on whether the employer had any duty to disclose the plan under consideration. _Id._ at 866-67.[FN2]

> FN2. The Seventh Circuit has not decided whether employees are entitled to notice of plan amendments under "serious consideration" by their employer, but Judge Easterbrook, in dicta, has suggested that the "serious consideration" theory ought not be adopted. _See Beach v. Commonwealth Edison Co., 382 F.3d 656, 661 (7th Cir.2004)._

The second ERISA claim in _Flanagan_ was for harassment in violation of § 510 of ERISA, which states that "it shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the [employee benefit] plan ...." 29 U.S.C. § 1140. The court concluded that plaintiffs had established their standing "by alleging that they were constructively discharged for the purpose of minimizing their ERISA benefits from existing plans, as well as preventing future liability." _Flanagan_, 213 F.Supp.2d at 868. In other words, the _Flanagan_ court recognized standing only for those class members who were forced to quit. Endsley has not alleged he was forced to quit as a result of Defendants' alleged breach of fiduciary duty, and thus _Flanagan's_ exception is not applicable.

But Defendants are not necessarily correct in asserting that Intervenor must have been a plan participant at the time the action was commenced in order to have standing. Defendants cite to the Seventh Circuit's decision in _Winchester v. Pension Comm. of Michael Reese Health Plan, Inc., 942 F.2d 1190, 1193 (7th Cir.1991)_ for this proposition, but the court there found that plaintiff lacked standing because her claim that she planned to return to covered employment was insufficient, and because she was seeking money damages, not benefits. Standing may still be appropriate for Intervenor under _Firestone_, even if he was not a plan participant at the time of the suit, if his claim is one for vested benefits rather than damages. The court turns next to that issue.

## II. Damages and Vested Benefits

*4 Neither party has cited controlling authority explaining the vested benefits/damages distinction in the context of this case. The Supreme Court discussed the issue in _Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002)_, where the Court held that a claim for reimbursement brought by an insurance company under 29 U.S.C. § 1132(a)(3) was one for money damages. Because the claim was not equitable in nature, the Court held that the insurance company was not entitled to relief under ERISA. " 'Almost invariably ... suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty.' " _Id._ at 210 (quoting _Bowen v. Massachusetts, 487 U.S. 879, 918-19 (1998)_ (Scalia, J., dissenting)). Defendants here argue that this is precisely what Endsley is seeking: He wants compensation for the loss resulting from Defendants' breach of legal duty. But this is not a remedy available under ERISA § 502(a) to a former employee who has accepted a lump sum payout of plan benefits.

Case law from other jurisdictions is instructive. In _Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan, 883 F.2d 345 (5th Cir.1989)_, plaintiffs filed a class action pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a)(2), alleging that "the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

amount received was not the full amount of vested benefits due under the terms of the profit sharing plan, but was less, because the amount received for the shares was less than fair market value." *Id.* at 350. In differentiating vested benefits from damages, the court stated:

Clearly, a plaintiff alleging that his benefits were wrongly computed has a claim for vested benefits. Payment of the sum sought by such a plaintiff will not increase payments due him. On the other hand, a plaintiff who seeks recovery for the trust of an unascertainable amount, with no demonstration that the recovery will directly effect payment to him, would state a claim for damages, not benefits.

*Id.* The Fifth Circuit held that although plaintiffs' claim fell somewhere between a claim for benefits and a claim for damages, it was closer to a "simple claim that benefits were miscalculated," and thus was for vested benefits. *Id.* The court therefore affirmed a judgment in favor of the plaintiff class. In this case, Endsley is not arguing that his benefits were wrongly computed; rather, he is arguing that the assets of the Plan itself should have been greater than they were.[FN3] Defendants are correct that this claim is best characterized as one for damages from the breach of fiduciary duty, and not for vested benefits from the Plan.

> FN3. Defendants argue that Endsley himself is unable to make any claim of such harm, as he received a distribution from the Plan on March 20, 2001, several days before any public disclosure of the circumstances resulting in a market "correction" of the Motorola share price. Because the court has sustained Defendants' objection to this motion on other grounds, it need not reach this argument.

In *Hargrave v. TXU Corp.*, 392 F.Supp.2d 785 (N.D.Tex.2005), plaintiffs alleged that defendants "purchased TXU stock, on behalf of the Thrift Plan, at an artificially inflated price after making false and misleading statements about the revenues, earnings and operations of TXU Corp." *Id.* at 787. The result of this investment, plaintiffs alleged, was "an overall diminution of plan assets, which were then distributed to the Plaintiffs." *Id.* at 789. In stating a claim for " 'a sum that possibly could have been earned' if Defendants had made prudent investment decisions with respect to plan assets," the court concluded, the plaintiffs were seeking damages. *Id.* at 790. The additional amounts that *"might have* accrued but for the Defendant's alleged misconduct" were "speculative" and not "vested under ERISA." *Id.* at 790 (citations omitted). Accordingly, the court concluded that the plaintiffs lacked standing to represent a class because, like Endsley here, they had received all benefits due to them under the Plan. *See also Vaughn v. Bay Envtl. Mgmt., Inc.*, No. 03-5725, 2005 WL 2373728 at *13 (N.D.Cal. Sept. 26, 2005) (granting a motion to dismiss because a claim for plan losses due to imprudent investments is a claim for "recoverable damages for the breach of fiduciary duty" and not for "vested benefits"). Endsley, like the plaintiffs in *Hargrave,* wants only a sum that possibly could have been earned. This court agrees with the *Hargrave* court that such a claim is for damages.

*5 Plaintiffs argue that the holding in *Hargrave* cannot be squared with this circuit's reasoning in *Panaras.* In *Panaras,* the employer modified its severance plan so as to require a release of claims against the company as a condition to receiving benefits. 74 F.3d at 788. When the plaintiff was involuntarily terminated, he chose not to sign the release. *Id.* He alleged that he was a participant in the old severance plan, and thus not required to sign the release, because he had not been properly informed of the changes as required by ERISA § 502. *Id.* The *Panaras* court held that standing was available to "any former employee who has a colorable claim to *vested benefits* which the employer promised to provide pursuant to the employment relationship and which a non-frivolous argument suggests have accrued to the employee's benefit." *Id.* at 791 (emphasis added). The court's description of plaintiff's theory confirms its understanding that the claim was for vested benefits: "Where violations of ERISA disclosure provisions work a substantive harm on plaintiffs who are denied benefits under the improperly disclosed plan, courts may find that these violations sufficiently taint the employer's denial of severance payments as to warrant ... granting the benefits." *Id.* at 790 (quoting *Veilleux v. Atochem North America, Inc.*, 929 F.2d 74, 76 (2d Cir.1991). It was the benefit of the earlier severance plan that Panaras was seeking, not some undefined amount by which the plan would have been enhanced had the plan administrators invested differently. *Id.* Accordingly, this court is not persuaded by Plaintiffs' assertion that *Panaras* indicates that the damages/vested benefits distinction articulated in *Hargrave* is not applicable in this Circuit. *See also Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 979 (7th Cir.1999) (stating that to satisfy *Firestone,* the plaintiff in *Panaras* had to demonstrate that his claim was both not frivolous and for "vested benefits").

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Moreover, Endsley has conceded he resigned voluntarily. The plaintiff in *Panaras* complained of "the way in which his employer administered the plan which it had provided to cover the *involuntary termination* which he in fact suffered." 74 F.3d at 790 (emphasis added). The court relied on the involuntary termination to distinguish the holding from an earlier holding that plaintiffs could not have a "colorable claim to severance benefits for the simple reason that they had left their employment voluntarily." *Id.* (discussing *Sallee v. Rexnord Corp.*, 985 F.2d 927 (7th Cir.1993)).

In a case not cited by either party, a New Jersey court has addressed a claim similar to Endsley's. In *Graden v. Conexant Sys., Inc.*, No. 05-0695, 2006 WL 1098233 (D.N.J. March 31, 2006), the plaintiff alleged that the plan breached its duty by imprudently investing in Conexant stock, which was declining as a result of a merger with Globespan. *Id.* at *1. Like Endsley, plaintiffs sought the "benefit" of the best performing alternative investment. The court characterized this claim as one for damage, not for benefits, and dismissed it. This court finds the *Graden* court's rationale persuasive:

*6 As much as one might wish to engage in semantic gymnastics, there is simply no way to conclude that a claim which seeks reimbursement for the "lost return on investments that would have resulted from prudent and loyal investment of plan assets" is one for vested benefits. Nor is there any way to conclude that a claim for "the return that would have been obtained had the assets been prudently invested in the best performing alternative investment in the plan" is anything other than a claim for damages.

*Id.* at *4. Other recent decisions are in accord. *See In re AEP ERISA Litig.*, --- F.Supp.2d ----, No. C2-03-67, 2006 WL 1890038 (S.D.Ohio July 12, 2006) (finding former participants' claims for additional damages that *might have* accrued too speculative to be considered vested under ERISA); *Holtzscher v. Dynegy, Inc.*, No. Civ. A. H-05-3293, 2006 WL 626402 (S.D.Tex. Mar. 13, 2006) (claim of former participants for compensation for losses sustained as a result of defendants' false and misleading statements about the company more closely resembles a claim for damages than a claim for vested benefits); *LaLonde v. Textron, Inc.*, 418 F.Supp.2d 16, 21 (D. R.I.2006) (absent evidence that defendant's alleged misconduct was causally connected to their loss of employment, former employees who have received full plan benefits are not "participants" for purposes of standing; to hold otherwise would "effectively eliminate[ ] the distinction between vested benefits and damages). Although Endsley may have a "colorable claim," it is a claim for damages from tortious acts, not for "vested benefits." Once he received his lump sum payment from the Plan's assets in 2002, he ceased to be a "participant" under ERISA. Accordingly, Endsley lacks standing to pursue his ERISA claim.

### III. Exceptions to *Firestone*

Finally, Plaintiffs argue that the court should permit Endsley, a former employee, to bring this claim even if it is not fairly understood as a claim for vested benefits. Plaintiffs are swimming upstream here; courts generally have been strict in interpreting *Firestone's* teaching that a former participant has standing only when he/she is claiming vested benefits. *See, e.g., Teagardener v. Republic-Franklin Inc. Pension Plan*, 909 F.2d 947, 952 (6th Cir.1990) (finding that the definition of "participant" must exclude retirees who have accepted a lump sum payout of benefits because they "have already received the full extent of their benefits and are no longer eligible to receive future payments"). The Seventh Circuit has not yet addressed whether the *Firestone* doctrine always excludes retirees who have accepted lump sum payouts, or whether a more expansive interpretation is acceptable. Plaintiffs here cite several cases that follow the Sixth Circuit's conclusion in *Swinney v. Gen. Motors Corp.*, 46 F.3d 512, 518 (6th Cir.1995), that a rigid interpretation of the *Firestone* rationale is contrary to the purpose of ERISA.

*7 In *Swinney* itself, the plaintiffs brought a suit for breach of fiduciary duty under ERISA § 404, 29 U.S.C. § 1104, after their employer altered its voluntary retirement incentives. Confronted with plaintiffs who had already ended their employment with General Motors and accepted lump sum benefits, the court carved out an exception to the rule in *Firestone* that former employees lack standing to bring ERISA claims for breach of fiduciary duty. The Sixth Circuit held that "if the employer's breach of fiduciary duty causes the employee to either give up his right to benefits or to fail to participate in a plan, then the employee has standing to challenge that fiduciary breach." *Swinney*, 46 F.3d at 518 (citations omitted). Courts refer to the *Swinney* exception as the "but for" exception.[FN4] *Id.* at 519. Under this approach, if an employee would not have retired but for the actions of his employer, he will still have standing to bring a claim under ERISA.

FN4. The "but for" exception has been adopted by the First, Second, Third, Fifth, Sixth, and Eighth Circuits. *See, e.g., Leuthner v. Blue Cross & Blue Shield,* 454 F.3d 120, 2006 WL 1881438 at *8 (3d Cir. July 10, 2006); *Adamson v. Armco, Inc.,* 44 F.3d 650, 654-55 (8th Cir.1995); *Swinney v. Gen. Motors Corp.,* 46 F.3d 512, 518-19 (6th Cir.1995); *Vartanian v. Monsanto Co.,* 14 F.3d 697, 702-03 (1st Cir.1994); *Mullins v. Pfizer, Inc.,* 23 F.3d 663, 667-68 (2d Cir.1994); *Christopher v. Mobil Oil Corp.,* 950 F.2d 1209, 1220-21 (5th Cir.1992). *But see Raymond v. Mobil Oil Corp.,* 983 F.2d 1528, 1536 (10th Cir.1993); *Sanson v. Gen. Motors Corp.,* 966 F.2d 618, 619 (11th Cir.1992); *Stanton v. Gulf Oil Corp.,* 792 F.2d 432 (4th Cir.1986) (rejecting the "but for" theory of ERISA standing). It has not yet been adopted by the Seventh Circuit.

Whether or not the "but for" exception would be recognized by the Seventh Circuit, this court concludes this line of cases is distinguishable from the one at issue here. Endsley has not claimed that the mismanagement and breach of fiduciary duty had any effect on his decision to end his employment with Motorola and accept a lump sum payout of benefits. Instead, Plaintiffs argue that Endsley has standing under a theory adopted by two district courts that have interpreted *Swinney* more expansively. First, in *Rankin v. Rots,* 220 F.R.D. 511 (E.D.Mich.2004), the court held that the plaintiff, a former participant in a Kmart sponsored plan, had standing to sue over allegations that her employer breached its fiduciary duty by including Kmart stock in the plan "at a time when Kmart was in serious decline and which resulted in significant losses to the Plan." *Id.* at 514. The court there was not persuaded by defendants' argument that *Swinney* must be limited to situations in which plan members alleged they gave up their employment as a result of misrepresentations regarding eligibility for benefits. *Id.* "To find that [plaintiff] lacks standing would permit Kmart to exclude potential class members by simply paying them their vested benefits." *Id.* Similarly, in *In re CMS Energy ERISA Litig.,* 225 F.R.D. 539 (E.D.Mich.2004), a subsequent case from the same district as Rankin, the court held that ERISA should not be construed to defeat standing of former participants. The court was unwilling to find class members' claims could be extinguished "simply through payment of vested benefits which were arguably affected through the defendants' alleged breaches of fiduciary duties." *Id.*

The policy argument presented in *Rankin* and followed in *CMS Energy* is that an employer should not be able to exclude potential class members merely by paying them their benefits. *Rankin,* 220 F.R.D. at 514. This court does not find the argument compelling. In *Rankin,* there was no indication that Kmart ended plaintiff's employment so as to avoid a lawsuit. Nor is the court prepared to ignore the distinction between vested benefits and damages recognized by the *Firestone* case. As another federal court has observed, "In effect these courts *[Rankin* and progeny] conclude that, because interpreting the statute as written would deny plaintiffs a remedy, the statute, and its definitive interpretation by the Supreme Court in *Firestone Tire & Rubber,* should be either ignored, or that suits which clearly seek damages should be transformed by judicial legerdemain into suits for 'vested benefits.' " *Graden,* 2006 WL 1098233 at *5. This court agrees, and concludes that Endsley may not proceed here in the absence of any claim for vested benefits.

*8 Finally, the court notes Plaintiffs' reliance on *In re Syncor ERISA Litigation,* 227 F.R.D. 338 (C.D.Cal.2005); that case requires only brief discussion. The court in *Syncor* certified a class of persons who participated in the plan during the relevant class period. But the court did not specifically state whether the plaintiffs remained employed, nor did the court mention whether any plaintiff accepted a lump sum payout like Endsley. In short, the authorities cited by Plaintiffs do not satisfy the court that Endsley is entitled to proceed here even without a claim for vested benefits.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Intervene (97) is denied.

N.D.Ill.,2006.
Howell v. Motorola, Inc.
Slip Copy, 2006 WL 2355586 (N.D.Ill.), 38 Employee Benefits Cas. 1979

Briefs and Other Related Documents (Back to top)

• 2004 WL 2175180 (Trial Motion, Memorandum and Affidavit) Defendants' Supplemental Memorandum in Support of Defendants' Motion to Dismiss (Jun. 7, 2004) Original Image of this

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                      Page 7
Slip Copy, 2006 WL 2355586 (N.D.Ill.), 38 Employee Benefits Cas. 1979
**(Cite as: Slip Copy)**

Document (PDF)
• 2004 WL 2175177 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum in Response to Plaintiff's Motion for Entry of Protective Order Against Unauthorized Use or Disclosure of Confidential Information (May 25, 2004) Original Image of this Document with Appendix (PDF)
• 2004 WL 2175174 (Trial Motion, Memorandum and Affidavit) Defendants' Supplemental Memorandum in Support of Defendants' Motion to Dismiss (Mar. 26, 2004) Original Image of this Document with Appendix (PDF)
• 2004 WL 2175172 (Trial Motion, Memorandum and Affidavit) Amended Memorandum of Law in Support of Plaintiffs' Motion for Class Certification (Mar. 24, 2004) Original Image of this Document with Appendix (PDF)
• 2004 WL 2175169 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Feb. 23, 2004) Original Image of this Document (PDF)
• 2004 WL 2175167 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss the Amended Complaint (Feb. 5, 2004) Original Image of this Document with Appendix (PDF)
• 2003 WL 23800440 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum in Opposition to Defendants' Motion for Protective Order to Stay Discovery Pending Resolution of Motion to Dismiss (Dec. 15, 2003) Original Image of this Document with Appendix (PDF)
• 2003 WL 23800431 (Trial Pleading) Amended Erisa Complaint (Oct. 3, 2003) Original Image of this Document (PDF)
• 2003 WL 23800426 (Trial Pleading) Complaint for Breach of Fiduciary Duty and Violation of Erisa Disclosure Requirements (Jul. 21, 2003) Original Image of this Document with Appendix (PDF)
• 1:03cv05044 (Docket) (Jul. 21, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.