NO. 06-20297

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

DALE L. HOLTZSCHER and SEDONNA S. JORDAN,
Plaintiffs-Appellants,

v.

DYNEGY, INC., ET AL.,
Defendants-Appellees.

_____

APPEAL FROM THE UNITED STATES DISTICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

_____

BRIEF OF AMICUS CURIAE ELAINE L. CHAO,
SECRETARY OF THE UNITED STATES DEPARTMENT OF LABOR
IN SUPPORT OF PLAINTIFFS-APPELLANTS REQUESTING REVERSAL

HOWARD M. RADZELY
Solicitor of Labor

TIMOTHY D. HAUSER
Associate Solicitor

KAREN L. HANDORF
Counsel for Appellate and Special Litigation

MEGAN E. GUENTHER
Trial Attorney
United States Department of Labor
Plan Benefits Security Division
200 Constitution Avenue, N.W., Room 4611
Washington, D.C. 20210
Phone: (202) 693-5586
Fax:    (202) 693-5610

# TABLE OF CONTENTS

Page

STATEMENT OF THE ISSUE................................................................... 1

INTEREST OF THE SECRETARY OF LABOR ...................................... 1

STATEMENT OF THE FACTS................................................................ 2

SUMMARY OF THE ARGUMENT ......................................................... 7

ARGUMENT ............................................................................................. 9

    THE PLAINTIFFS HAVE STANDING UNDER
    ERISA TO BRING THIS SUIT BECAUSE THEY
    HAVE A COLORABLE CLAIM FOR VESTED
    BENEFITS IF THEY PREVAIL ON THEIR
    FIDUCIARY BREACH CLAIMS .................................................... 9

    A.    Plaintiffs meet the requirements for standing
        because they have a colorable claim that they
        will be entitled to additional vested benefits if
        they prevail on their fiduciary breach claims......................... 12

    B.    The plaintiffs have standing under ERISA
        for the same reasons that the plaintiffs in
        Sommers had standing ........................................................... 14

    C.    District courts have properly interpreted
        Sommers to give standing to plaintiffs
        similarly situated to the Holtzscher plaintiffs ........................ 18

    D.    Reading ERISA to deny plaintiffs standing to sue
        once they have received a lump sum distribution
        even if that distribution is diminished as a result
        of a fiduciary breach is contrary to the purposes
        and policies of ERISA ........................................................... 22

CONCLUSION ........................................................................................ 25

i

CERTIFICATE OF SERVICE ....................................................... 26

CERTIFICATE OF COMPLIANCE......................................................... 27

APPENDIX:

    A.    <u>Holtzscher v. Dynegy, Inc.</u>, No. Civ. A. H-05-3293,
2006 WL 626402 (S.D. Tex. Mar. 13, 2006)

    B.    <u>Thompson v. Avondale Indus., Inc.</u>, No. Civ.A 99-3439,
2001 WL 1543497 (E.D. La. Nov. 30, 2001)

    C.    <u>Graden v. Conexant Sys., Inc.</u>, No. 05-0695,
2006 WL 1098233 (D.N.J. Mar. 31, 2006),
<u>appeal docketed</u>, No. 06-2337 (3d Cir. Apr. 27, 2006)

    D.    <u>In re RCN Litig.</u>, No. 04-5068, 2006 WL 753149
(D.N.J. Mar. 21, 2006)

    E.    <u>In re Admin. Comm. ERISA Litig.</u>, No. C03-3302,
2005 WL 3454126 (N.D. Cal. Dec. 16, 2005)

## TABLE OF AUTHORITIES

**Federal Cases**:                                                           Page

Amalgamated Clothing & Textile Workers' Union, AFL-CIO
    v. Murdock,
    861 F.2d 1406 (9th Cir. 1988)..................................................23

Astor v. Int'l Bus. Machs. Corp.,
    7 F.3d 533 (6th Cir. 1993).........................................................13

Christopher v. Mobile Oil Corp.,
    950 F.2d 1209 (5th Cir. 1992)..................................................12

Davis v. D.L. Featherstone,
    97 F.3d 734 (4th Cir. 1996)......................................................12

Dickerson v. Feldman,
    426 F. Supp. 2d 130 (S.D.N.Y.), appeal docketed,
    No. 06-1616 (2d Cir. Apr, 5, 2006).........................................19

Firestone Tire & Rubber Co. v. Bruch,
    489 U.S. 101, 117 (1989) .....................................................passim

Graden v. Conexant Sys., Inc.,
    No. 05-0695, 2006 WL 1098233 (D.N.J. Mar. 31, 2006),
    appeal docketed, No. 06-2337 (3d Cir. Apr, 27, 2006)..........19

Hargrave v. TXU,
    392 F. Supp. 2d 785 (N.D. Tex. 2005), appeal docketed,
    No. 05-11482 (5th Cir. Dec. 29, 2005) ...................................19

Holtzscher v. Dynegy, Inc.,
    No. Civ. A. H-05-3293, 2006 WL 626402
    (S.D. Tex. Mar. 13, 2006) ......................................2,6,17,18,19

In re Admin. Comm. ERISA Litig.,
    No. C03-3302, 2005 WL 3454126
    (N.D. Cal. Dec. 16, 2005) ........................................................19

In re Mut. Funds Investment Litig.,
    403 F. Supp. 2d 434 (D. Md. 2005) ........................................ 18,20,21

In re RCN Litig.,
    No. 04-5068, 2006 WL 753149 (D.N.J. Mar. 21, 2006)........ 19

In re Schering-Plough Corp. ERISA Litig.,
    420 F.3d 231 (3d Cir. 2005).................................................... 24

In re Williams Cos. ERISA Litig.,
    231 F.R.D. 416 (N.D. Okla. 2005)......................................... 18,19,20

Kuntz v. Reese,
    785 F.2d 1410 (9th Cir. 1986) (per curiam)........................... 17

Kuper v. Quantum Chemical Corp.,
    829 F. Supp. 918 (S.D. Ohio 1993), aff'd sub nom.
    Kuper v. Ivenko, 66 F.3d 1447 (6th Cir. 1995) ..................... 19,20

LaLonde v. Textron, Inc.,
    418 F. Supp. 2d 16 (D.R.I. 2006), appeal docketed,
    No. 06-1546 (1st Cir. Apr. 3, 2006)....................................... 19

Martin v. Feilen,
    965 F.2d 660 (8th Cir. 1992).................................................. 22

Milofsky v. American Airlines, Inc.,
    442 F.3d 311 (5th Cir. 2006).................................................. 24

Nachman Corp. v. Pension Benefit Guar. Corp.,
    446 U.S. 359 (1980) ............................................................... 9

Panaras v. Liquid Carbonic Indus. Corp.,
    74 F.3d 786 (7th Cir. 1996).................................................... 12

Rankin v. Rots,
    220 F.R.D. 511 (E.D. Mich. 2004)......................................... 21,22

Secretary of Labor v. Fitzsimmons,
    805 F.2d 682 (7th Cir. 1986) (en banc).................................. 1

Sommers Drug Stores Co. Employee Profit Sharing Trust
    v. Corrigan,
    883 F.2d 345 (5th Cir. 1989)..................................................... passim

Swinney v. General Motors Corp.,
    46 F.3d 512 (6th Cir. 1995)...................................................... 13

Thompson v. Avondale Indus., Inc.,
    No. Civ.A 99-3439, 2001 WL 1543497
    (E.D. La. Nov. 30, 2001) (unpublished) ............................... 18

Vartanian v. Monsanto,
    14 F.3d 697, 702 (1st Cir. 1994) ............................................ 10,13,22

Yancy v. American Petrofina, Inc.,
    768 F.2d 707 (5th Cir. 1985) (per curiam)............................. 6,16,17

**Federal Statutes**:

Employee Retirement Income Security Act of 1974,
    as amended, 29 U.S.C. 1001 et seq.:

    Section 2(b), 29 U.S.C. § 1001(b)........................................... 9

    Section 3(7), 29 U.S.C. § 1002(7)........................................... 8,9,10,13

    Section 3(34), 29 U.S.C. § 1002(34)....................................... passim

    Section 409, 29 U.S.C. § 1109 ................................................ 4,10

    Section 502(a)(2), 29 U.S.C. § 1132(a)(2)............................. passim

    Section 510, 29 U.S.C. § 1140 ................................................ 12

**Other Authorities**:

H.R. Rep. No. 93-533 (1974), reprinted in 1974
U.S.C.C.A.N. 4936................................................................... 22

S. Rep. No. 127, 93rd Cong., 2d Sess. 3 (1974) reprinted in
1974 U.S.C.C.A.N. 4936......................................................... 10

United States General Accounting Office, Answers to Key
Questions about Private Pension, GAO-02-745SP
(Sept. 18, 2002), available at available at
http://www.gao.gov/new.items/d02745sp.pdf. ........................ 3,11,17,23

2 Leg. Hist. 1599-1600 ................................................................... 9

## STATEMENT OF THE ISSUE

The plaintiffs in this case are former employees who participated in a defined contribution plan sponsored by their employer, Illinois Power Company, a subsidiary of Dynegy, Inc. The plaintiffs, who withdrew their accounts from the Illinois Power Company Incentive Savings Plan ("Plan") upon terminating their employment, claim that while the plaintiffs were employed by Illinois Power Company, the defendants breached their fiduciary duties under ERISA, causing losses to the Plan. As a result of the losses, the plaintiffs' distributions were less than they should have been. The question presented is whether, under these circumstances, the plaintiffs have standing to sue on behalf of the plan as "participants" within the meaning of ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2).

## INTEREST OF THE SECRETARY OF LABOR

The Secretary of Labor has primary authority to interpret and enforce the provisions of Title I of ERISA. See Secretary of Labor v. Fitzsimmons, 805 F.2d 682, 689-94 (7th Cir. 1986) (Secretary's interests include promoting the uniform application of the Act, protecting plan participants and beneficiaries, and ensuring the financial stability of plan assets) (en banc). The Secretary therefore has a strong interest in ensuring the proper interpretation of ERISA. Here, the district

court wrongly found that ERISA deprives the plaintiffs of standing to sue merely because the plaintiffs terminated their employment and received distributions of their plan accounts. If the plaintiffs' allegations are correct, the defendants' fiduciary breaches caused losses to the defined contribution plan before the plaintiffs terminated their employment and withdrew from the Plan, and thus the defendants caused a diminution in the amount of benefits the plaintiffs received when they left the Plan. Because this diminution in benefits gives the plaintiffs a "colorable claim" to increased benefits, ERISA cannot be read to deprive the plaintiffs of standing to sue.

## STATEMENT OF THE FACTS

1.    Named plaintiffs Dale L. Holtzscher and Sedonna S. Jordan are former employees of Illinois Power Company, a subsidiary of Dynegy, Inc. Complaint ("Compl.") at ¶¶ 6, 7. The named plaintiffs invested in the Illinois Power Company Incentive Savings Plan until shortly after their employment ended on September 30, 2004. Holtzscher v. Dynegy, Inc., No. Civ. A. H-05-3293, 2006 WL 626402, at *2 (S.D. Tex. Mar. 13, 2006)(attached as Appendix A to this brief). The plaintiffs then voluntarily withdrew their Plan accounts. Id.

The Illinois Power Company Incentive Savings Plan is a defined contribution plan under ERISA § 3(34), 29 U.S.C. § 1002(34), established for the

benefit of employees of Illinois Power Company and Dynegy Midwest Generation, Inc. Compl. at ¶¶ 20, 21. In a defined contribution plan, "benefits [are] based solely upon the amount contributed to the participant's account, and any income, expenses, gains, and losses, and forfeitures of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34).[1] During the time period relevant to this case, employees of Illinois Power Company could make before-tax and after-tax contributions to the Plan, which were invested in one of a number of different funds at the employees' direction. Compl. at ¶¶ 23, 24. One of these funds was an employer stock fund, which invested in Dynegy stock. Id. at ¶ 23.

Illinois Power Company also could make matching and discretionary contributions to the Plan. Compl. at ¶ 25. These matching and discretionary contributions were made in Dynegy stock. Id. Beginning in 2002, once matching and discretionary contributions were deposited in the Plan, employees could

---

[1]     In a defined contribution plan, participants are vested in their own contributions and earnings made on those contributions at all times. A participant becomes vested in employer contributions and earnings made on those contributions when the participant fulfills the plan's criteria—often a requirement that the participant work for the employer for a certain number of years. See United States General Accounting Office, Answers to Key Questions about Private Pension Plans, GAO-02-745SP at 14 (Sept. 18, 2002), available at http://www.gao.gov/new.items/d02745sp.pdf.

redirect these contributions toward other funds within the Plan at any time.  Id. at ¶¶ 26, 27.

Pursuant to ERISA sections 409 and 502(a)(2), 29 U.S.C. §§ 1109 and 1132(a)(2), the named plaintiffs brought this case as a class action against Dynegy, Inc., the Dynegy, Inc. Benefits Plan Committee, which was responsible for Plan administration, and the members of the Dynegy, Inc. Benefits Plan Committee. Compl. at ¶¶ 9-19.  The plaintiffs allege that, as Plan fiduciaries, the defendants breached their duties under ERISA between 2000 and 2002 by knowingly making affirmative misrepresentations to Plan participants about the performance and financial state of Dynegy, Inc., failing to disclose information regarding the true performance of Dynegy, Inc., and continuing to invest plan assets in Dynegy stock and offer Dynegy stock as an investment option for Plan participants while knowing that the price of the stock was artificially inflated because of sham transactions and other questionable business practices that Dynegy engaged in to manipulate energy prices and boost its stock price.  See Plaintiffs' Resp. to Def's Mot. to Dismiss at 2-3; Compl. at ¶¶ 28-46, 64, 67-85.  These fiduciary breaches allegedly caused a loss to the Plan.  Id. at ¶ 102-05.

The defendants moved to dismiss, arguing that the named plaintiffs were not participants in the Plan within the meaning of ERISA and thus lacked standing to sue.  Def's Mem. in Supp. of Mot. to Dismiss at 10.  Under the Supreme Court's

decision in <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 117 (1989),

former employees are plan participants under ERISA if they have "a reasonable

expectation of returning to covered employment or . . . a 'colorable claim' to vested

benefits."  The defendants contended that the plaintiffs, who had no expectation of

returning to covered employment, did not have a colorable claim to vested

benefits.  Instead, the defendants argued that they sought damages, which the

defendants defined as, "some 'speculative' amount above and beyond the full value

of the Plan accounts that [the plaintiffs] voluntarily elected to receive when they

'cashed out' their plan interest."  Def's Mem. in Supp. of Mot. to Dismiss at 12.

Defendants argued that as former employees who withdrew their plan accounts

upon terminating their employment, the plaintiffs had received the full value of

their Plan accounts and thus had no "colorable claim to vested benefits."  <u>Id.</u> at 10-

12.

       The plaintiffs countered that they had a colorable claim to vested benefits

because they had not received all benefits due to them under the Plan.  But for the

defendants' breach of their fiduciary duties, both the total amount of plan assets

and the plaintiffs' accounts would have been greater.  Plaintiffs Resp. to Defs' Mot.

to Dismiss at 9.

       2.     In an order dated March 13, 2006, the district court dismissed the

plaintiffs' claims, holding that the plaintiffs did not have a colorable claim for

vested benefits and, therefore, were not Plan participants with standing to sue

under ERISA. Holtzscher, 2006 WL 626402, at *5. Relying on this Circuit's

decisions in Yancy v. American Petrofina, Inc., 768 F.2d 707, 708 (5th Cir.

1985)(per curiam) and Sommers Drug Stores Co. Employee Profit Sharing Trust v.

Corrigan, 883 F.2d 345, 349-50 (5th Cir. 1989), the court stated that the Fifth

Circuit, in determining whether former employees have a colorable claim for

vested benefits, as required for standing under Firestone, distinguishes between

claims for vested benefits and claims for damages. Holtzscher, 2006 WL 626402,

at *3. According to the district court, while former employees who have received

lump-sum distributions may sue for vested benefits, they do not have standing to

sue for damages because, by receiving their lump-sum distribution, they have

already received the full amount due to them under the plan. Id. The plaintiffs'

claims, the district court ruled, were only claims for damages, not vested benefits.

Id. at *4.

The district court distinguished the plaintiffs' claims from those presented in

Sommers, where the plaintiffs claimed that they did not receive the full amount

that they were due under a terminated defined contribution plan because plan

fiduciaries sold the employer stock in the plan for less than full market value.

Holtzscher, 2006 WL 626402, at **3-4. According to the district court, this

Circuit found the plaintiffs' claims in Sommers were akin to a simple claim that

defendants held back a portion of benefits, and, thus, the plaintiffs' claims were for vested benefits.  Id. at *4.  By contrast, according to the district court, the Holtzscher plaintiffs were not claiming that a portion of their benefits was held back when they withdrew their account balances.  Id.  "Instead plaintiffs allege that the amount in their Plan accounts available for withdrawal was too small because defendants' false and misleading statements about Dynegy's revenues, earnings, and operations resulted in an overall diminution in value of Plan assets (i.e. Dynegy stock) available for distribution."  Id.  The court found these losses, which resulted from the defendants' decision to continue investing in Dynegy stock and offering Dynegy stock to participants as an investment option, were too speculative to be a claim for vested benefits.  Id.  The plaintiffs' claims, according to the court, more closely resembled claims for damages.  Id.  Accordingly, the district court granted the defendants' motion to dismiss and this appeal followed.

## SUMMARY OF THE ARGUMENT

The Plaintiffs have standing under ERISA to sue as former employees who seek to recover losses to be paid to the Illinois Power Company Incentive Savings Plan in which they participated.  ERISA allows plan participants to sue to remedy fiduciary breaches, and it defines "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such

7

employer." 29 U.S.C. § 1002(7). The Supreme Court in <u>Firestone Tire & Rubber</u> <u>Co. v. Bruch</u>, 489 U.S. 101, 117-18 (1989), stated that former employees meet this definition of "participant" where they have a "colorable claim" to plan benefits. The plaintiffs have just such a claim here.

The plaintiffs' claim is that fiduciary breaches caused losses to the Plan, and, because benefits under defined contribution plans are linked directly to the performance of the plans' assets, 29 U.S.C. § 1002(34), caused a corresponding diminution in the amount of the benefits that they received upon pay-out. This case is therefore indistinguishable from <u>Sommers Drug Stores Co. Employee Profit</u> <u>Sharing Trust v. Corrigan</u>, 883 F.2d 345, 350 (5th Cir. 1989), where this Court correctly held that plaintiffs had standing to sue on behalf of a liquidated defined contribution plan, because if the plaintiffs proved their claim they would be eligible to receive an increased benefit – the additional amount that they would have received at distribution if the defendants had not breached their fiduciary duties. ERISA's primary remedial goal to protect individual pension rights and to ensure that retirees receive the pensions to which they are entitled requires that former employees who have not received all of the benefits to which they are entitled be able to bring suit to make them whole. This result is dictated by the terms of the statute, which defines "participant" to include a former employee who

is or may become eligible to receive a benefit. ERISA section 3(7), 29 U.S.C. § 1002(7).

## ARGUMENT

THE PLAINTIFFS HAVE STANDING UNDER ERISA TO BRING THIS SUIT BECAUSE THEY HAVE A COLORABLE CLAIM FOR VESTED BENEFITS IF THEY PREVAIL ON THEIR FIDUCIARY BREACH CLAIMS.

Congress enacted ERISA following the economic collapse of the Studebaker-Packard Corporation as a direct response to the inadequacies of the existing pension laws, which failed to ensure that the terminated Studebaker employees received the pensions that they had been promised. Nachman Corp. v. Pension Benefit Guar. Corp., 446 U.S. 359, 375 (1980), quoting, 2 Leg. Hist. 1599-1600 (Statement of Senator Williams, one of the chief sponsors of the bill) ("the shutdown of Studebaker operations in South Bend, Ind., in 1963," caused 4,500 workers to lose "85 percent of their vested benefits because the plan had insufficient assets to pay its liabilities"). In enacting ERISA, Congress thus sought "to protect . . . the interests of participants in employee benefit plans . . . by establishing standards of conduct, responsibility, and obligations for fiduciaries of [such] plans," and by "providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b) (emphasis added).

"The legislative history of ERISA indicates that Congress intended the federal courts to construe the Act's jurisdictional requirements broadly in order to facilitate enforcement of its remedial provisions." Vartanian v. Monsanto, 14 F.3d 697, 702 (1st Cir. 1994), citing S. Rep. No. 127, 93rd Cong., 2d Sess. 3 (1974), reprinted in U.S.C.C.A.N. 4639, 4871.   To this end, ERISA's comprehensive civil enforcement scheme provides, in section 502(a)(2), 29 U.S.C. § 1132(a)(2), that "a civil action may be brought" by a plan "participant" to obtain "appropriate relief " under ERISA section 409, 29 U.S.C. § 1109.  Section 409 makes a plan fiduciary personally liable to the plan for any losses stemming from fiduciary breaches. Moreover, to serve its broad remedial purposes, the statute expansively defines "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer."  29 U.S.C. § 1002(7).

The plaintiffs are "participants" within the meaning of ERISA because they will be entitled to additional vested benefits if they succeed on their fiduciary breach claim.  The plan at issue here is a defined contribution plan within the meaning of section 3(34) of ERISA, 29 U.S.C. § 1002(34).  In such a plan, "benefits [are] based solely upon the amount contributed to the participant's account, and any income, expenses, gains, and losses, and forfeitures of accounts of other participants which may be allocated to such participant's account."  29

10

U.S.C. § 1002(34). The amount in the participant's account constitutes the participant's vested benefits. <u>See</u> United States General Accounting Office, <u>Answers to Key Questions about Private Pension Plans</u>, GAO-02-745SP at 13 (Sept. 18, 2002), <u>available</u> <u>at</u> http://www.gao.gov/new.items/d02745sp.pdf. Thus, the amount of the participant's vested benefits in a defined contribution plan increases in direct proportion to any increase in plan assets and diminishes in proportion to any losses.

Because the fiduciary breaches alleged by the plaintiffs resulted in fewer assets in the Plan, the plaintiffs received less than they should have when they left the Plan. Thus, they have a colorable claim to vested benefits and standing to sue under section 502(a)(2), as former employees who seek to recover losses to the Illinois Power Company Incentive Savings Plan. A holding to the contrary would mean that when former employees receive payment of benefits from a defined contribution plan that are reduced because of a fiduciary breach -- no matter how far short their payment falls from the benefits they otherwise would have received -- the employees are deprived of standing to sue under ERISA. That position cannot be squared with the text of ERISA, the Supreme Court's decision in <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101 (1989), or this Court's decision in <u>Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan</u>, 883 F.2d 345 (5th Cir. 1989).

11

A.    Plaintiffs meet the requirements for standing because they have a colorable claim that they will be entitled to additional vested benefits if they prevail on their fiduciary breach claims.

In Firestone, 489 U.S. at 117, the Supreme Court considered the statutory definition of "participant" in the context of a suit to enforce ERISA's plan document disclosure provisions.  The Court held that, in order to be considered a participant entitled to plan documents, a former employee must either have "a reasonable expectation of returning to covered employment" or "a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future."  Id. at 117-18.

This Court has recognized the danger of reading Firestone "to reduce the standing question to a straightforward formula applicable in all cases." Christopher v. Mobile Oil Corp., 950 F.2d 1209, 1221 (5th Cir. 1992)(reversing district court's dismissal of ERISA section 510 claims on standing grounds).[2] Similarly, the First Circuit, quoting Christopher, noted that "[t]he Supreme Court's discussion in Firestone of the ERISA term 'participant' was developed outside of the 'standing' context," and should not be read to "frustrate Congress's intention to

_____

[2]    See  also Panaras v. Liquid Carbonic Indus. Corp., 74 F.3d 786, 790-91 (7th Cir. 1996) (finding the Supreme Court's language in Firestone does not support an overly technical and narrow reading of "vested benefits," but instead suggests that the phrase should be interpreted expansively and "[t]he requirement of a colorable claim is not a stringent one"); Davis v. D.L. Featherstone, 97 F.3d 734, 737-38 (4th Cir. 1996) ("[a] claim is colorable if it is arguable and nonfrivolous, whether or not it would succeed on the merits").

12

remove jurisdictional and procedural obstacles to [fiduciary breach] claims."
Vartanian, 14 F.3d at 701-02.  Thus, in determining who should be a "participant"
for standing purposes, courts have read the definition "in the context of traditional
concepts of standing" by determining "whether a person is the proper party to
request adjudication of a particular issue, whether a person has alleged such a
personal stake in the outcome of the justiciable controversy that he should be
entitled to obtain its judicial resolution."  Astor v. Int'l Bus. Machs. Corp., 7 F.3d
533, 538-39 (6th Cir. 1993), quoted in Vartanian, 14 F.3d at 701 and Swinney v.
General Motors Corp., 46 F.3d 512, 518 (6th Cir. 1995).

     Under traditional concepts of standing as well as the language of Firestone,
the term "participant" in 29 U.S.C. §1002(7) must be read to include the plaintiffs
because they have colorable claims to benefits and have a personal stake in the
outcome of the litigation.  The plaintiffs claim that the defendants breached their
fiduciary duties causing a loss to the Plan and, as a result, the plaintiffs did not
receive all the benefits to which they were entitled.  The alleged fiduciary
misconduct occurred when plaintiffs were still employees accruing benefits under
the Plan and, therefore, had a negative impact on the amount of money allocated to
their individual accounts and ultimately paid to them.  The relief that the plaintiffs
seek, restoration of losses to the Plan, if granted, would be allocated to their
individual accounts and lead to an additional distribution.  Their claims are thus

13

colorable claims to vested benefits under the <u>Firestone</u> criteria and meet the traditional requirements for standing.

To hold otherwise would produce the absurd result that when a fiduciary breach causes significant financial losses to a defined contribution plan, thereby substantially diminishing the benefits payable to all of the plan's participants, affected employees who stayed in the plan could bring an action to recover their lost benefits, while employees who retired and took a diminished distribution could recover nothing at all. That result cannot be correct--either all affected employees have a "colorable claim" or none do. Certainly, if two participants with equal account balances incur equal losses on the same date, it would neither promote ERISA's remedial objectives nor comport with its broad definition of "participant," to find that the participant who had not yet retired retains standing to recover the losses sustained in his account, but that the participant who had actually received a retirement distribution, which was reduced to the same extent because of the exact same breach, did not have standing. Nothing in ERISA compels such an arbitrary or illogical result.

B.   The plaintiffs have standing under ERISA for the same reasons that the plaintiffs in <u>Sommers</u> had standing.

This Court has already held that plaintiffs who receive lump-sum distributions from a defined contribution plan have standing to sue as participants

14

if they allege that fiduciary breaches reduced the amount they should have received. Sommers, 883 F.2d at 348-50. In Sommers, the plaintiffs alleged that the defendants sold the shares of employer stock in a defined contribution plan for less than fair market value when terminating the plan, and, as a result, the plaintiffs received less than they should have received. The court likened the plaintiffs' claims to a claim that benefits were miscalculated. Id. at 350. If the plaintiffs prevailed, they would be "'eligible to receive a benefit'—the remainder of what was owed them and should have been paid to them at the time they received their lump sum settlement." Id. Thus, the plaintiffs had a colorable claim to vested benefits and had standing under ERISA, even though they had already received lump-sum distributions from the terminated plan. Id. at 349-50.

As participants in ERISA-covered defined contribution plans, the plaintiffs, both here and in Sommers, were entitled to a distribution of the earnings in their accounts as managed by plan fiduciaries in accordance with ERISA's fiduciary obligations. If, as the plaintiffs here allege, they received smaller distributions than they would otherwise have received as a result of the defendants' fiduciary breaches, they have yet to obtain all of the benefits to which they were entitled under ERISA, and have standing to bring suit as plan participants. In seeking restoration to the Illinois Power Company Incentive Savings Plan for alleged fiduciary breaches that took place before the disbursement of benefits, the

plaintiffs seek amounts that can and should be allocated in a manner that ultimately augments their individual benefits.  These amounts are precisely the "benefits" to which a plan participant in a defined contribution plan is entitled under ERISA.  29 U.S.C. § 1002(34).  Thus, the plaintiffs have a personal stake in the outcome of this litigation and a colorable claim to benefits within the meaning of Firestone and Sommers that gives them standing to bring a fiduciary breach claim seeking to restore losses to the Plan.

The district court read Sommers too narrowly in holding that the plaintiffs did not have standing because they were seeking damages rather than benefits.  The crucial distinction is not whether the claim is for damages, but whether the claim, even if for damages, will result in additional vested benefits -- giving the plaintiffs a sufficient stake in the outcome to satisfy standing requirements.  If the claim will not increase the amount the plaintiff receives from the plan, he does not have standing as a participant.  Sommers, 883 F.2d at 350.  For example, in Yancy, 768 F.2d at 708, an employee retired when his employer announced that it intended to amend its defined benefit retirement plan to use a less favorable interest rate for calculating lump-sum distributions, but gave employees approximately three months to retire under the older, more generous rate.[3]  After retiring before the

_____

[3]    In a defined benefit plan, the participant receives a fixed benefit set forth in the plan document.  The employer is required to make contributions to the plan, and the assets of the plan are invested to insure that there will be sufficient money

amendment went into effect and receiving the full amount due to him under the plan, he sued, alleging that the amendment violated ERISA. Because the plan was a defined benefit plan, even if he had succeeded in proving his claim that the amendment was illegal, it would not have increased the benefits to which he was entitled. He had already received everything he could receive under the terms of the plan.

As the <u>Sommers</u> court explained, Yancy "conceded that the lump sum received was the full amount due under the terms of the plan in effect when [he] retired." <u>Sommers</u>, 883 F.2d at 350; <u>Yancy</u>, 768 F.2d at 708. Instead, he sought the "sum that possibly could have been earned if he had continued working." <u>Id.</u> at 709. Because he would not have received additional benefits if he proved his claim, he did not have a colorable claim to benefits but was instead only seeking damages. <u>See Sommers</u>, 883 F.2d at 350.[4]

The <u>Sommers</u> court distinguished the claims in <u>Yancy</u> from the claims before it, noting that the crucial element in determining whether plaintiffs have a colorable claim for vested benefits is whether the relief sought will increase the

---

in the plan to cover the promised benefits. The amount of the benefit for each participant does not increase or decrease when the plan experiences gains or losses. <u>See</u> GAO-02-745SP at 8-10.

[4]    Similarly, the plaintiffs in <u>Kuntz v. Reese</u>, 785 F.2d 1410, 1411 (9th Cir. 1986)(per curiam) lacked standing because they had received all that was due to them under the plan; their claim that the defendants wrongly told them that the plan entitled them to more would not have increased the amount of benefits they received from their defined benefit plan.

benefits due to them.  <u>Sommers</u>, 883 F.2d at 350.  Yancy's damage claim would
not increase the benefits due to him because he had received all the benefits he was
entitled to under the plan.  <u>Id.</u>  In contrast, the <u>Sommers</u> plaintiffs had a colorable
claim to benefits and thus had standing because they sought "the remainder of what
was owed to them and should have been paid to them at the time they received
their lump sum settlement."  <u>Id.</u>

Where plaintiffs claim, as they did in <u>Sommers</u> and as they do here, that they
received less than all of the benefits to which they are entitled as a direct result of
fiduciary breaches that caused losses to their plans, they clearly also state a
colorable claim for benefits.  Under <u>Sommers</u> they have standing to bring their
claims.

    C.    District courts have properly interpreted <u>Sommers</u> to give standing to
           plaintiffs similarly situated to the <u>Holtzscher</u> plaintiffs.

A number of district courts, both inside and outside the Fifth Circuit, have
interpreted <u>Sommers</u> properly to conclude that plaintiffs similarly situated to the
plaintiffs here have standing to sue for the reasons explained above.  <u>See, e.g.</u>, <u>In re</u>
<u>Mut. Funds Investment Litig.</u>, 403 F. Supp. 2d 434, 441-42 (D. Md. 2005); <u>In re</u>
<u>Williams Cos. ERISA Litig.</u>, 231 F.R.D. 416, 422-23 (N.D. Okla. 2005);
<u>Thompson v. Avondale Indus., Inc.</u>, No. Civ.A 99-3439, 2001 WL 1543497, at *2
(E.D. La. Nov. 30, 2001) (unpublished)(attached as Appendix B to this brief); and

Kuper v. Quantum Chemical Corp., 829 F. Supp. 918, 923 (S.D. Ohio 1993), aff'd

sub nom. Kuper v. Ivenko, 66 F.3d 1447 (6th Cir. 1995).[5]

For example, the Williams Companies' plan, like the Plan here, was a

defined contribution plan that allowed employees to invest their own plan

contributions in employer stock which was matched with employer stock.  In re

Williams Cos. ERISA Litig., 231 F.R.D. at 422-23.  The Williams plaintiffs

claimed that the defendants breached their fiduciary duties by maintaining the

employer stock option when continuing to do so was imprudent.  Relying on

Sommers, the court held that former employees who had taken lump-sum

distributions from the plan had standing, because their account balances would

---

[5]    In addition to the present case, the Northern District of Texas found in
Hargrave v. TXU, 392 F. Supp. 2d 785 (N.D. Tex. 2005), appeal docketed No. 05-
11482 (5th Cir. Dec. 29, 2005), that standing under ERISA does not extend to
plaintiffs whose plan distributions were reduced due to fiduciary breach.  Hargrave
misinterprets this Circuit's decision in Sommers and other Fifth Circuit precedent
in the same way that the district court erred in this case.  Since Hargrave was
issued, a number of other district courts have relied on Hargrave's erroneous
reasoning to deny standing to plaintiffs similarly situated to the Holtzscher and
Hargrave plaintiffs.  See, e.g., Graden v. Conexant Sys., Inc., No. 05-0695, 2006
WL 1098233 (D.N.J. Mar. 31, 2006), appeal docketed, No. 06-2337 (3d Cir. Apr.
27, 2006) (attached as Appendix C to this brief); Dickerson v. Feldman, 426 F.
Supp. 2d 130 (S.D.N.Y. 2006), appeal docketed, No. 06-1616 (2d Cir. Apr. 5,
2006); In re RCN Litig., No. 04-5068, 2006 WL 753149 (D.N.J. Mar. 21, 2006)
(attached as Appendix D to this brief); LaLonde v. Textron, Inc., 418 F. Supp. 2d
16 (D.R.I. 2006), appeal docketed, No. 06-1546 (1st Cir. Apr. 3, 2006); In re
Admin. Comm. ERISA Litig., No. C03-3302, 2005 WL 3454126 (N.D. Cal. Dec.
16, 2005) (attached as Appendix E to this brief).  These decisions rely on the same
erroneous reasoning as the district court decisions in Holtzscher and Hargrave and
are wrongly decided for the reasons described in this brief.

have been larger at the time they took their distributions if there had been no fiduciary breach. The court held that "[s]ince any recovery from the Plan should be allocated to the accounts of the affected participants, including those . . . who have taken a distribution from the Plan, these plaintiffs and others similarly situated retain 'a colorable claim to benefits' sufficient to confer on them standing to sue under 502(a)(2)." Id. at 422.

Similarly, in Kuper, 829 F. Supp. at 923, the court held that former employees who claimed that the amount in their plan, and thus their lump-sum distributions, were diminished because of fiduciary breaches retained a colorable claim to vested benefits and had standing to sue. The court reasoned that "given that the very basis of the Plaintiffs' complaint is that the distribution of their ESOP shares did *not* represent 'everything due them under the plan'. . ., Plaintiffs claim does appear to be more factually analogous to the claim allowed in Sommers." Id.

Likewise, the District Court of Maryland relied on Sommers to find that former employees who had taken lump-sum distributions from various defined contribution plans continued to have colorable claims to vested benefits when they did not receive all the benefits they were due upon withdrawing from the plan as a result of fiduciary breaches. In re Mut. Funds Investment Litig., 403 F. Supp. 2d at 442. The plaintiffs claimed that while the plaintiffs were employed, the plan fiduciaries breached their duties under ERISA by imprudently investing in mutual

20

funds that engaged in after-hours trading.  As a result of these trades, the plaintiffs

alleged that the assets of the plans, and consequently the assets attributed to the

plaintiffs' accounts, were diminished.  The court found that the plaintiffs'

circumstances were analogous to those of the plaintiffs in Sommers and held that

they had standing to bring their fiduciary breach claims.  Such an interpretation

was necessary to prevent employees from forfeiting "a cause of action under

ERISA to recover what is rightfully theirs under their plan by taking a pay-out of

what they incorrectly believe is all that is owed to them." Id.

Finally, in Rankin v. Rots, 220 F.RD. 511 (E.D. Mich. 2004), the court

relied on the same reasoning as Sommers to find that a former Kmart employee

had standing to bring suit against the bankrupt company's officers and directors

alleging breaches of fiduciary duties in connection with Kmart stock held by the

company-sponsored 401(k) plan.  The court noted that the plaintiff "was a

participant in the Kmart plan during the time when the alleged breaches of

fiduciary duty occurred." Id. at 519.  The court thus declined to hold that the

plaintiff lacked standing, noting that such a holding "would permit Kmart to

exclude potential class members by simply paying them their vested benefits." Id.

at 519-20.

    D.    Reading ERISA to deny plaintiffs standing to sue once they have received a lump-sum distribution even if that distribution is diminished as a result of a fiduciary breach is contrary to the purposes and policies of ERISA.

Affirming the district court's cramped reading of ERISA's standing requirements would undermine the remedial goals of ERISA, "[t]he primary purpose of [which] is the protection of individual pension rights."  H.R. Rep. No. 93-533 (1974), reprinted in 1974 U.S.C.C.A.N. 4639, 4639; see also Martin v. Feilen, 965 F.2d 660, 671 (8th Cir. 1992) (one of ERISA's basic remedies for a breach of fiduciary duty is "to restor[e] plan participants to the position in which they would have occupied but for the breach of trust").  As in Sommers, there is no cause to read the term "participant" so narrowly as to close the courthouse doors to former employees like the plaintiffs here, who claim that they have not received all that they are due under the plan because of the defendants' breaches.

Such a holding would produce the absurd result that employees could be deprived of the right to sue simply by giving them a payment of benefits that is less than all of the benefits to which they are entitled or terminating the plan all together.  Rankin, 220 F.R.D. at 519-20 (recognizing absurdity of allowing employers to cut off participant status simply by paying some level of benefits); see Vartanian, 14 F.3d at 702 ("Such a holding would enable an employer to defeat the employee's right to sue for a breach of fiduciary duty by keeping his breach a well guarded secret until the employee receive[d]

his benefits or, by distributing a lump sum and terminating benefits before the employee can file suit."); <u>Amalgamated Clothing & Textile Workers' Union, AFL-CIO v. Murdock</u>, 861 F.2d 1406, 1418-19 (9th Cir. 1988)(finding former employees who were receiving benefits due under the plan continued to be participants with standing to sue where necessary to prevent fiduciary from retaining ill-gotten profits).

Moreover, the possibility that employees will leave employment and take lump-sum distributions without realizing that their benefits have been reduced by a fiduciary breach is particularly real in the case of defined contribution plans, like the plan at issue in this case. Defined contribution plans are designed to be portable, meaning that participants can change jobs and take their retirement benefits with them by receiving a distribution of their plan accounts and either rolling the money over into individual retirement accounts or depositing it into their new employer's plan. GAO-02-745SP at 10. Former employees' interest in being paid the full amount that they are owed by the plan is no less great than those of current employees who continue to work and participate in the plan. By holding that these former employees lack standing to sue despite the fact that the benefits they received were allegedly diminished because of fiduciary breaches defeats the purposes of ERISA and endangers employees' retirement security.

The plaintiffs have a "colorable" claim that the defendants breached their duties by, among other actions, imprudently continuing to allow investment of plan assets in

23

Dynegy stock despite knowing that the stock price was artificially inflated, that these breaches caused losses to the Plan, and caused a resulting decrease in the amount of benefits the plaintiffs received when they withdrew their accounts. The plaintiffs seek nothing more and nothing less than the amount they should have received when they withdrew from the Plan. Such a claim is a claim for vested benefits under ERISA. There is no reason to hold that former employees who received less than they should have because of fiduciaries' mismanagement of pension plan assets – precisely the type of plaintiffs that the statute was designed to protect and the type of misconduct that the Act was designed to prohibit – do not have standing under ERISA to sue. Because the plaintiffs present a colorable claim to additional vested benefits under their defined contribution plan, they have standing under the statute.[6]

---

[6]    The plaintiffs' brief also addresses whether the losses the plaintiffs seek are losses to the plan that can be remedied under ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2). Appellant's Br. at 17-22. The plaintiffs rely on this Court's en banc decision in Milofsky v. American Airlines, Inc., 442 F.3d 311 (5th Cir. 2006) and the Third Circuit's decision in In re Schering-Plough Corp. ERISA Litig., 420 F.3d 231, 242 (3d Cir. 2005) to support their arguments. The Secretary believes that the plaintiffs' position and analysis on this issue is correct. Nevertheless, the Secretary notes that the district court did not consider whether the plaintiffs' losses constitute losses to the plan, and thus this Court need not address this issue.

CONCLUSION

For the reasons stated above, the Secretary respectfully requests that this Court reverse the decision of the district case dismissing the case.

Respectfully submitted,

HOWARD M. RADZELY
  Solicitor of Labor

TIMOTHY D. HAUSER
  Associate Solicitor

KAREN L. HANDORF
  Counsel for Appellate and
  Special Litigation


_____
MEGAN E. GUENTHER
Trial Attorney
United States Department of Labor
Plan Benefits Security Division
200 Constitution Avenue, N.W.
Room N4611
Washington, D.C. 20210
Phone: (202) 693-5586
Fax:    (202) 693-5610

JUNE 28, 2006

25

CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2006, two copies of the Brief of Amicus

Curiae Elaine L. Chao, Secretary of the United States Department of Labor in

Support of Plaintiffs-Appellants Requesting Reversal, along with a copy on

diskette in PDF, were served using Federal Express courier serve, postage prepaid,

upon the following counsel of record:

Scott M. Clearman                    Murray J. Fogler
Brian D. Walsh                       McDade Fogler L.L.P.
McClanahan & Clearman, L.L.P.        Two Houston Ctr
4100 Bank of America Center          Suite 1200
700 Louisiana                        909 Fannin
Houston, Texas 77002                 Houston, TX 77010-1006

Michael M. Wilson                    Jack C. Nickens
Wilson Fulkerson, LLP                Nickens, Keeton, Lawless, Farrell &
700 Louisiana, Suite 5200              Flack LLP
Houston, TX 77002                    600 Travis, Suite 7500
                                     Houston, TX  77002

In addition, two copies of the Brief of Amicus Curiae Elaine L. Chao,

Secretary of the United States Department of Labor in Support of Plaintiffs-

Appellants Requesting Reversal, along with a copy on diskette in PDF, were

served via U.S. mail upon the following counsel of record:

Paul J. Ondrasik
Steptoe & Johnson, LLP
1330 Connecticut Avenue, NW
Washington, DC 20036

_____
Megan E. Guenther
Trial Attorney

26

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(a)(7)(B), I certify that the attached Brief of

Amicus Curiae Elaine L. Chao, Secretary of the United States Department of

Labor in Support of Plaintiffs-Appellants Requesting Reversal contains 6,001

words.  This brief has been prepared in a proportionally-spaced typeface using

Microsoft XP in Times New Roman 14-point font size.

_____

Megan E. Guenther
Trial Attorney

Dated:  June 28, 2006

27