Westlaw.

392 F.Supp.2d 785                                                                                                          Page 1
392 F.Supp.2d 785, 36 Employee Benefits Cas. 1652
**(Cite as: 392 F.Supp.2d 785)**

C
Briefs and Other Related Documents

United States District Court,N.D. Texas,Dallas Division.
James Brant HARGRAVE, Patrice Hargrave, Brenda Maynard and Mentha Price, on behalf of the TXU Thrift Plan, and all others similarly situated, Plaintiffs,
v.
TXU CORP., et al., Defendants.
No. 3:02-CV-2573-K.

Sept. 29, 2005.

**Background:** Former thrift plan participants who had totally withdrawn their accounts brought Employee Retirement Income Security Act (ERISA) action against corporation and individual defendants, seeking to recover for breach of fiduciary duty from alleged purchase of company stock on behalf of plan at artificially inflated price after making false and misleading statements about corporation's revenues, earnings and operations. Plaintiffs renewed their motion for class certification.

**Holding:** The District Court, Kinkeade, J., held that plaintiffs lacked standing to sue under ERISA because their claims most closely resembled claims for damages, not for vested benefits.

Motion denied.

West Headnotes

**[1] Federal Civil Procedure 170A ⟺103.7**

170A Federal Civil Procedure
  170AII Parties
    170AII(A) In General
      170Ak103.7 k. Class Actions. Most Cited Cases
Standing is an inherent prerequisite to class certification inquiry. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[2] Labor and Employment 231H ⟺534**

231H Labor and Employment
  231HVII Pension and Benefit Plans
    231HVII(G) Eligibility, Participation, and Coverage
      231Hk533 Who Is an Employee or Participant
        231Hk534 k. In General. Most Cited Cases
One "may become eligible" to receive benefits under qualified plan within meaning of ERISA definition of "participant" when he either (1) has a reasonable expectation of returning to covered employment, or (2) has a colorable claim to vested benefits. Employee Retirement Income Security Act of 1974, § 3(7), 29 U.S.C.A. § 1002(7).

**[3] Labor and Employment 231H ⟺678**

231H Labor and Employment
  231HVII Pension and Benefit Plans
    231HVII(K) Actions
      231HVII(K)5 Actions to Recover Benefits
        231Hk678 k. Parties in General; Standing. Most Cited Cases
In determining whether former employees, or their beneficiaries, have colorable claim for vested benefits under ERISA, important distinction exists between claims for vested benefits and claims for damages; those suing for vested benefits have standing under ERISA because they have not received full amount due to them under terms of benefit plan, whereas those suing for damages do not have standing because they have already received full amount due to them under terms of plan. Employee Retirement Income Security Act of 1974, §§ 3(7, 8), 502(a)(2), 29 U.S.C.A. §§ 1002(7, 8), 1132(a)(2).

**[4] Labor and Employment 231H ⟺699**

231H Labor and Employment
  231HVII Pension and Benefit Plans
    231HVII(K) Actions
      231HVII(K)5 Actions to Recover Benefits
        231Hk698 Judgment and Relief
          231Hk699 k. In General. Most Cited Cases
Allegation that ERISA benefits were wrongly computed clearly states claim for "vested benefits," whereas claim for unascertainable amount, with no demonstration that recovery would directly effect payments to plaintiff, states claim for "damages."

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Employee Retirement Income Security Act of 1974, § 502(a), 29 U.S.C.A. § 1132(a).

[5] Labor and Employment 231H ⚷678

231H Labor and Employment
    231HVII Pension and Benefit Plans
        231HVII(K) Actions
            231HVII(K)5 Actions to Recover Benefits
                231Hk678 k. Parties in General; Standing. Most Cited Cases

Former thrift plan participants who had totally withdrawn their accounts lacked standing to sue as ERISA "participants" or "beneficiaries" to recover for breach of fiduciary duty from alleged purchase of company stock on behalf of plan at artificially inflated price after making false and misleading statements about corporation's revenues, earnings and operations; demand that defendants make good to plan for losses sustained as result of investments in company stock was speculative and most closely resembled claim for damages, not for vested benefits, as it sought amounts which might have accrued but for defendants' alleged misconduct. Employee Retirement Income Security Act of 1974, § § 3(7, 8), 409, 502(a)(2), 29 U.S.C.A. § § 1002(7, 8), 1109, 1132(a)(2).

*786 Jeffrey W. Chambers, Ware Snow Fogel & Jackson, Houston, TX, Edward W. Ciolko, Joseph H. Meltzer, Schiffrin & Barroway, Radnor, PA, Eric G. Calhoun, Lawson Fields & Calhoun, Addison, TX, for Plaintiffs.
David P. Poole, TXU Legal Dept., Patricia S. Gill, Robert K. Wise, Hunton & Williams, Dallas, TX, for Defendants.

*MEMORANDUM OPINION and ORDER*

KINKEADE, District Judge.
Before the Court is the Plaintiffs' Renewed Motion for Class Certification against Defendants TXU Corp. ("TXU") and the Individual Defendants, Erle Nye, Derek C. Bonham, J.S. Farrington, William M. Griffin, Kerney Laday, Jack E. Little, Margaret N. Maxey, J.E. Oesterreicher, Charles R. Perry, Herbert H. Richardson, Peter B. Tinkham, Barbara B. Curry, Diane J Kubin, Kirk R. Oliver, Biggs C. Porter, and Richard Wistrand ("the Defendants"). The Plaintiffs lack standing because their claims are for damages, not for vested benefits. Therefore, the Plaintiffs' Motion is **DENIED**.

**I. Background**

Plaintiffs James Brant Hargrave, Kari Lyn Smith, Patrick Goodenough, and Carl Pfeil filed an initial Motion for Class Certification on February 10, 2004. The Defendants opposed Plaintiffs' original Motion for Class Certification on the grounds that the Plaintiffs were not typical or adequate representatives. Plaintiffs then sought, and the Court granted, leave to amend their complaint to add Patrice Hargrave, Brenda Maynard, and Mentha Price as named Plaintiffs on September 2, 2004. In the order granting leave to amend, the Court denied the Plaintiffs' Original Motion for Class Certification and directed the Plaintiffs to file a new motion. The Plaintiffs then filed this Renewed Motion for Class Certification. The Court entered a stipulation filed by Goodenough and *787 Smith voluntarily dismissing their claims in this action on January 19, 2005.

The Plaintiff's Second Consolidated Amended Class Action Complaint ("Second Amended Complaint") filed under Section 502 of ERISA, 29 U.S.C. § 1132, seeks to recover from TXU for breach of fiduciary duty in violation of Section 404, 29 U.S.C. § 1109. The Second Amended Complaint alleges that TXU and the individual Defendants breached fiduciary duties owed to James Brant Hargrave, Brenda Maynard, Mentha Price, and Patrice Hargrave (the "named Plaintiffs"), and other participants and beneficiaries of the TXU Thrift Plan ("Thrift Plan") in connection with the Thrift Plan's investment in TXU stock. Specifically, Plaintiffs allege that the Defendants purchased TXU stock, on behalf of the Thrift Plan, at an artificially inflated price after making false and misleading statements about the revenues, earnings, and operations of TXU Corp.

Plaintiffs seek an order granting class certification under Fed.R.Civ.P. 23(a), and 23(b)(1), b(2), and/or 23(b)(3), appointing the named Plaintiffs as class representatives and appointing their counsel as class counsel, on behalf of the following class:
All persons who were participants in or beneficiaries of the TXU Thrift Plan at any time between April 26, 2001 and October 11, 2002 and who were invested in the common stock of TXU through the TXU Thrift Plan either via employee contributions or by employer matching or other employer contributions which were eligible to be diversified.

**II. The Named Plaintiffs**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Plaintiffs James Brant Hargrave, Brenda Maynard, and Mentha Price are former employees of TXU and former Thrift Plan participants. James Hargrave's employment with TXU was terminated on March 2, 2002 and he completed a total withdrawal of his Thrift Plan account on March 22, 2002. Brenda Maynard's employment with TXU was terminated on June 1, 2002 and she completed a total withdrawal of her Thrift Plan account on July 24, 2004. Mentha Price's employment with TXU was terminated on September 12, 2002 and she completed a total withdrawal of her Thrift Plan account on January 10, 2003. Finally, Patrice Hargrave is the former spouse of James Hargrave. Ms. Hargrave never worked for TXU. She received a portion of James Hargrave's Thrift Plan account in December 2001, and she completed a total withdrawal of her Thrift Plan account on November 12, 2003.

### III. Legal Standard

#### A. Standing as a Jurisdictional Prerequisite

[1] In this class action case, the Court must determine that the named Plaintiffs have standing to sue before proceeding to the merits of any certification motion. See Bertulli v. Indep. Ass'n of Cont'l Pilots, 242 F.3d 290, 294 (5th Cir.2001) (stating that standing is "an inherent prerequisite to the class certification inquiry"); See also Moore v. Radian Group, Inc., 233 F.Supp.2d 819, 820 (N.D.Tex.2002). In Rivera v. Wyeth-Ayerst Labs, the Fifth Circuit Court of Appeals held that the "district court erred by not demanding" a showing of standing before it certified a class because failure to establish standing deprives the court of jurisdiction to hear the suit. Rivera, 283 F.3d 315, 319 (5th Cir.2002). The court reasoned that even though the certification issue was more straightforward, the district court should have decided standing first, because it went to the court's fundamental power to hear the suit. Id. Rivera directs this Court to resolve whether the named Plaintiffs have standing before considering class *788 certification. The Court, therefore, turns to address the issue of standing.

#### B. Standing to Bring an ERISA Claim

The named Plaintiffs bring this action pursuant to 29 U.S.C. § 1132(a), which authorizes a "participant," "beneficiary," or "fiduciary" to bring a civil action for breach of any fiduciary duty proscribed by 29 U.S.C. § 1109. Plaintiffs claim to have standing to sue as either participants or beneficiaries under the TXU Thrift Plan. Both terms, "participant" and "beneficiary," are given special meaning under the ERISA statute. "A participant or beneficiary is defined as an employee or former employee who is or may be eligible to receive a benefit under the plan." Yancy v. American Petrofina, Inc., 768 F.2d 707, 708 (5th Cir.1985)(citing 29 U.S.C. § 1002(7)). Therefore, whether the named Plaintiffs in this case have standing to sue under ERISA depends on whether they may become eligible to receive benefits under the TXU Thrift Plan. See 29 U.S.C. § 1002(7)-(8).

[2] With respect to former employees, the Supreme Court has stated that one "may become eligible" to receive benefits under a qualified plan when he either (1) has a reasonable expectation of returning to covered employment, or (2) has a colorable claim to vested benefits. See Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 117, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Since none of the named Plaintiffs have a reasonable expectation of returning to covered employment, this Court must determine whether they have a colorable claim for vested benefits under the Thrift Plan.

#### C. Damages Claims Distinguished from Claims for Vested Benefits

[3] When determining whether former employees, or their beneficiaries, have a colorable claim for vested benefits, the Fifth Circuit makes an important distinction between claims for vested benefits and claims for damages. See Yancy, 768 F.2d at 709. Former employees suing for vested benefits have standing under the ERISA statute because they have not received the full amount due to them under the terms of the benefit plan. See Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan, 883 F.2d 345, 349-50 (5th Cir.1989). Former employees suing for damages, however, do not have standing to sue because they have already received the full amount due to them under the terms of the plan. See Yancy, 768 F.2d at 708-09.

[4] In Sommers, the plaintiffs' claims fell between the two "poles" of vested benefits and damages, and the Fifth Circuit was compelled to determine which type of recovery the plaintiffs' claims most closely resembled. See Sommers, 883 F.2d at 350. Although the distinction between vested benefits and

damages is not always clear, the Court articulated the distinction in this way: an allegation that benefits were wrongly computed clearly states a claim for vested benefits; on the other hand, a claim for an unascertainable amount, with no demonstration that recovery would directly effect payments to the plaintiff, states a claim for damages. *Id. at 349-50.*

### D. Analysis of the Sommers Decision

In *Sommers,* the class of plaintiffs filed a lawsuit under ERISA alleging breaches of fiduciary duties with respect to the sale of company stock held by a qualified employee benefits plan. *Sommers,* 883 F.2d at 347. Specifically, the plaintiffs alleged that the defendants sold the plan's shares of stock, in connection with the liquidation and distribution of plan assets, for a price below fair market value. *Id. at 350.* In \*789 other words, the amount of money received and distributed to plan participants, pursuant to the stock sale, did not reflect the full value of the benefits due under the terms of the plan. *See Id.*

In determining whether the plaintiffs had standing to sue as ERISA participants, the *Sommers* Court reasoned that the plaintiffs were essentially stating a claim for the unpaid value of vested benefits (i.e. the value not reflected in the stock's selling price), which were due upon distribution of plan assets. *Id.* at 350. This claim, according to the Court, was "quite close to a simple claim that *benefits were miscalculated;*" and thus, stated a claim for vested benefits. *Id.* (emphasis added). Having determined that the stated claim was for vested benefits, the Court concluded that the plaintiffs had standing to sue as ERISA participants. *Id.*

### IV. Analysis of the Named Plaintiffs' Claims

[5] The named Plaintiffs in this case have alleged breaches of fiduciary duties with respect to shares of stock purchased and held by the TXU Thrift Plan. As in *Sommers,* these claims fall between the two "poles" of vested benefits and damages. This Court must, therefore, decide whether the named Plaintiffs' allegations most closely resemble a claim for vested benefits or for damages. Upon careful consideration, the Court finds that, unlike *Sommers,* the named Plaintiffs' allegations most closely resemble a claim for damages and not for vested benefits. Thus, for the reasons stated below, Plaintiffs' lack standing to bring this claim under ERISA.

The primary thrust of Plaintiffs' claims center around false and misleading statements that Defendants allegedly made in 2001 and 2002 about TXU Corp.'s revenues, earnings, and operations. According to Plaintiffs, these misleading statements resulted in an inflated price of TXU stock, which culminated at $52 per share in March of 2002. The TXU Thrift Plan then purchased hundreds of millions of dollars worth of TXU stock at this artificially inflated price. Plaintiffs allege that they were damaged when the price of TXU stock fell below $20 per share in October of 2002, after the true nature of TXU's finances and operations came to light. According to Plaintiffs, these claims focus exclusively on the Defendants' alleged misconduct, consisting of various breaches of fiduciary duties (including the duty to avoid conflicts and the duty to eliminate inappropriate investment options) made during the Class Period.

Plaintiffs' claims in this case are readily distinguishable from the claims made in *Sommers.* In *Sommers,* the plaintiffs argued that the full market value of the plan assets was greater than the amount they received when the assets were distributed. *Sommers,* 883 F.2d at 350. Stated another way, the total value of the plan assets was a certain amount that was calculable, and the plaintiffs argued that they did not receive that full calculable value because the defendants held back some of the proceeds for themselves. The *Sommers* plaintiffs sued to recover the rest of the benefits that were wrongfully withheld. *See Id.* Thus, the Fifth Circuit concluded that the plaintiffs' claims were in fact for vested benefits rather than for damages. *Id.*

The named Plaintiffs in this case, by way of contrast, do not allege that the Defendants' held back a portion of the benefits of the plan. Rather, they argue that the amount in the entire plan was too small. Specifically, Plaintiffs allege that Defendants' investment in TXU stock resulted in an overall diminution of plan assets, which were then distributed to the Plaintiffs. The allegation is not that benefits\*790 were withheld, but that there should have been more benefits to go around. This argument states a claim for "a sum that possibly could have been earned" if Defendants had made prudent investment decisions with respect to plan assets. *See Yancy,* 768 F.2d at 709. The named Plaintiffs have already received all the benefits that accrued under their Thrift Plan accounts. They are now seeking additional damages that *might have* accrued but for the Defendants' alleged misconduct. *See Id.* These additional damages are speculative and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

cannot be considered as vested under ERISA. *See Id.*

Unlike *Sommers,* the named Plaintiffs' argument does not resemble an allegation that benefits were simply miscalculated and cannot be construed as a claim for vested benefits. On the contrary, Plaintiffs are demanding that Defendants make good to the Thrift Plan for the *losses sustained* as a result of the investments in TXU stock. This argument most closely resembles a claim for damages to the plan.

**V. Conclusion**

As former participants of the TXU Thrift Plan suing for damages, the named Plaintiffs fall between the cracks where Congress has conferred standing under ERISA. Plaintiffs claim to have standing as ERISA participants or beneficiaries. However, Congress has clearly defined "participants" and "beneficiaries" as those "who may become eligible" or "may become entitled" to receive benefits under a plan. 29 U.S.C. § 1002(7)-(8). The named Plaintiffs could have sued for damages before they withdrew their funds from the Thrift Plan because, at that point, they would still be entitled to receive benefits under the plan. Because Plaintiffs have made a total withdrawal of their TXU Thrift Plan accounts, however, they must show that they either (1) have a reasonable expectation of returning to covered employment, or (2) have a colorable claim to vested benefits, in order to qualify as ERISA participants or beneficiaries. *See Firestone,* 489 U.S. at 117, 109 S.Ct. 948. Plaintiffs do not have a reasonable expectation of returning to covered employment and they have not stated a claim for vested benefits. As such, Plaintiffs are not eligible to receive benefits under the Thrift Plan and do not qualify as ERISA participants or beneficiaries. Therefore, this Court must conclude that Plaintiffs lack standing to sue as ERISA participants or beneficiaries.

The Court finds that class certification should be denied in this case because the named Plaintiffs lack standing and, thus, cannot serve as representatives on behalf of the putative class members. The Renewed Motion for Class Certification is DENIED and the Plaintiffs' claims are dismissed without prejudice.

**SO ORDERED.**

N.D.Tex.,2005.
Hargrave v. TXU Corp.
392 F.Supp.2d 785, 36 Employee Benefits Cas. 1652

Briefs and Other Related Documents (Back to top)

• 2005 WL 988329 (Trial Pleading) Memorandum in Support of Plaintiffs' Unopposed Motion to Defer Ruling on Plaintiffs' Renewed Motion for Class Certification (Mar. 25, 2005) Original Image of this Document (PDF)
• 2005 WL 988323 (Trial Motion, Memorandum and Affidavit) Defendants' Motion for Protective Order Staying Discovery and Brief in Support Thereof (Mar. 14, 2005) Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.