Westlaw.

Slip Copy
Slip Copy, 2006 WL 753149 (D.N.J.), 37 Employee Benefits Cas. 1809
**(Cite as: Slip Copy)**

Page 1

C
Briefs and Other Related Documents

United States District Court,D. New Jersey.
In re RCN LITIGATION.
**No. 04-5068 (SRC).**

March 21, 2006.

Lisa J. Rodriguez, Trujillo Rodriguez & Richards, LLP, Haddonfield, NJ, for Plaintiff.
Edward Cerasia, II, Peter Michael Avery, Proskauer Rose LLP, Newark, NJ, for Defendants.

OPINION
CHESLER, District Judge

**\*1** THIS MATTER comes before the Court on Motion to Dismiss Plaintiffs' Consolidated Complaint (docket # 43) brought by Defendants RCN Corporation (the "Company"); former members of RCN's Board of Directors ("Board Defendants"), the RCN Compensation Committee, current and former members of RCN's Compensation Committee ("Compensation Committee Defendants"), current and former members of RCN's 401k Administrative Committee ("Administrative Committee Defendants"), and former RCN employees ("Individual Defendants") Jonathan Paules ("Paules") and W. Terrell Winfield Jr. ("Winfield") (collectively, "RCN Defendants"). The Court, having considered the papers submitted and heard oral arguments by the parties, for the reasons set forth below, and for good cause shown, PARTIALLY GRANTS AND PARTIALLY DENIES the RCN Defendants' Motion.

I. BACKGROUND OF THE CASE [FN1]

> FN1. Unless otherwise noted, the recitation of the facts in this case are drawn from the allegations contained in the Plaintiffs' Complaint.

The Plaintiffs in these consolidated cases are current or former participants in RCN Corporation's Savings and Stock Ownership Plan (the "Plan"), and a class of all others similarly situated, during the period between January 12, 1999 through December 21, 2004 (the "Class Period"). The Plan was a defined contribution "employee pension benefit plan," within the meaning of ERISA. 29 U.S.C. § 1002(2)(A). The Plan was managed by a 401K Administrative Committee (the "Administrative Committee") that was comprised of RCN employees appointed by the Company's Board of Directors to administer the Plan on their behalf. Merrill Lynch Trust Company ("MLTC") was appointed by the Administrative Committee to act as the trustee for the Plan. The Plaintiffs brought suit against various defendants, including RCN Corporation, members of the RCN Board of Directors, members of the RCN Compensation Committee and Administrative Committee, two RCN employees, as well as MLTC (collectively "Defendants").

The Board Defendants in this case were all members of RCN's Board of Directors (the "Board") for at least a portion of the Class Period. The following defendants served as members of the RCN Board of Directors for at least a portion of the Class Period and are regarded as Board Defendants: David McCourt, Bruce Godfrey, Michael Mahoney, Michael Adams, Timothy Stoklosa, Eugene Roth, Alfred Fasola, Michael Yanney, Theodore Schell, Michael Katzenstein, and Daniel Tseung. The Board Defendants were responsible for acting on behalf of the Company in appointing members of the RCN Administrative Committee, which administered the Plan.

The Compensation Committee Defendants in this case were all members of the RCN Compensation Committee for at least a portion of the Class Period. The following members of RCN's Board of Directors are named as defendants who served as members of the Compensation Committee for at least a portion of the Class Period and are included as Compensation Committee Defendants (in addition to being considered Board Defendants): Eugene Roth, Alfred Fasola, Michael Yanney, Theodore Schell, Michael Katzenstein, and Daniel Tseung. The Compensation Committee is a sub-committee of the RCN Board of Directors charged with overseeing RCN's employee compensation plans. The Plaintiffs' Complaint alleges that the Compensation Committee appointed the members of the Administrative Committee.

**\*2** The Administrative Committee Defendants all served as members of the Administrative Committee

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

for at least a portion of the Class Period. The following defendants are regarded as Administrative Committee Defendants: Timothy Stoklosa, John Filipowicz, Deborah Royster, Gretchen Barron, Charlie Blue, Ellen Ito, Patrick Hogan, John Jones, Norman Kushin, Lou Monari, James Saile, Edwin Taliaferro, Keith Terreri, Ricardo Venegas, Blair Worrall, and Joyce Yaccarino. The Administrative Committee members were all RCN employees, who were appointed to administer the Plan on behalf of the Company.

The Individual Defendants, Jonathan Parkes ("Parkes") and William Winfield, Jr. ("Winfield") are both former RCN employees. Parks was employed as RCN's Human Resources Financial Manager for at least part of the class period. Winfield was employed as RCN's General Counsel and Corporate Secretary from November 2002 until April 2004.

The Plaintiffs' investment portfolios in the Plan all included RCN stock. The Plaintiffs are claiming that the Defendants breached their fiduciary duties owed to them by:
• Count I-Continuing to offer RCN common stock as a Plan investment option for participant contributions, using RCN securities for employer contributions to the Plan, and maintaining heavy investment in RCN securities when the stock was "no longer a prudent investment for the Plan" and failing to file a timely claim on behalf of the Plan in RCN's Chapter 11 proceedings. (Compl. at 2, ¶ 5);
• Count II-defendants who were charged with the responsibility to select and monitor other Plan fiduciaries failed to provide these other fiduciaries with material information regarding the prudence of investing in RCN securities and failed to properly monitor and remove other Plan fiduciaries whose performance was deficient. (Compl. at 2, ¶ 6);
• Count III-failing to communicate complete and accurate information to Plan participants regarding the financial state of the Company. (Compl. at 2, ¶ 7);
• Count IV-failing to avoid or ameliorate inherent conflicts of interest. (Compl. at 3, ¶ 8.);
• Respondeat superior liability on RCN for the acts and omissions of their employees. (Compl. at 6, ¶ 22.)

The Plan itself had both a 401(k) component and an Employee Stock Ownership Plan ("ESOP") component. Participants could direct the investment of their individual contributions into various investment options offered by the Plan, as selected by the Administrative Committee. In 2003, the Plan offered twenty-four mutual funds, one common collective trust, three "Global Manager" predetermined portfolios, and the RCN Common Stock Fund as investment options which participants could select. Subject to statutory limitations, employees could contribute between 1% and 50% of their eligible compensation to the Plan on a pre-tax basis. Plan participants could direct how their contributions would be allocated among the various investment options offered as part of the Plan. The Plan also offered matching Employer ESOP contributions. The Company matched employee contributions at a rate of 100% for the first 3.5% of participants' pre-tax contributions.[FN2] The Company would also make profit sharing contributions to the accounts of participants, at the Company's discretion, which were placed into the ESOP portion of the plan.

> FN2. These Company matching contributions vested on a sliding scale based on years of continuous service with the Company. Employees with less than 2 years of service were 0% vested, from 2-3 years of service, they were 25% vested, etc.... Employees were 100% vested after five years of continuous service with the Company.

*3 By year 2000, RCN stock began to decline. By December 21, 2000, RCN stock had fallen 90% from its Class Period high of $72/share to $6.06. On September 26, 2003, the Administrative Committee modified the Plan's structure so that participants were no longer permitted to allocate any contributions to the RCN Stock Fund and also prohibited Plan participants from moving assets from other investments into the RCN Stock Fund (although previous contributions could remain in RCN stock). After January 16, 2004, Company matching contributions were also no longer made in RCN stock, but were made in cash. In May 2004, RCN stock was delisted from the NASDAQ. On May 27, 2004, RCN filed for reorganization under Chapter 11. When RCN announced its formal emergence from Chapter 11 on December 21, 2004, all outstanding shares of RCN stock, including those invested in the RCN Stock Fund, were cancelled.

II. DISCUSSION

The RCN Defendants have moved to dismiss the claims against them under both Fed. R. Civ. P.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

12(b)(1) and 12(b)(6). The RCN Defendants' Rule 12(b)(1) motion challenges the standing of five of the six named Plaintiffs to sue under both Article III and ERISA. The Rule 12(b)(6) motion challenges the sufficiency of the Plaintiffs' Complaint to set forth a legally cognizable claim against the RCN Defendants for breach of any fiduciary duty under ERISA. Because the Court finds sufficient cause to sustain at least some counts of the Plaintiffs' Complaint under Rule 12(b)(6), the Court will also address the RCN Defendants' Rule 12(b)(1) arguments regarding the standing of individual Plaintiffs in this case.[FN3]

FN3. Because standing is a threshold jurisdictional issue, the Court would normally address this issue before any arguments on the merits of the Plaintiffs' claims. See Miller v. Rite Aid Corp., 334 F.3d 335, 340-41 n. 2 (3d Cir.2003). In the present case, however, the RCN Defendants concedes that at least one of the named Plaintiffs has standing, so a favorable ruling on these grounds would not result in dismissal of the case, and the Court would still need to address the merits regardless of the Court's finding on the standing issue. Therefore, the Court will address the merits issues first and then, because some of the merits-based issues survive the RCN Defendants' Rule 12(b)(6) motion, proceed to address the issues of standing raised in the RCN Defendants' Rule 12(b)(1) motion.

A. The RCN Defendants' Motion to Dismiss Under Rule 12(b)(6).

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must presume that all allegations in the Complaint must be taken as true and viewed in the light most favorable to the complainant. See Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir.1998). Resolution of these motions in no way indicates a predisposition by the Court of an issue of contested facts. Fed R. Civ Proc. 12(b)(6). Where, as here, the Complaint at issue attaches or references various documents, the Court is not limited to reviewing the allegations set forth in the body of the Complaint in deciding a motion to dismiss. The Court may properly consider these materials without the need to convert the motion into one for summary judgment. See Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir.1998) (holding court may look to materials outside the complaint in deciding a 12(b)(6) motion where the claims in the complaint "are expressly linked to-and admittedly dependent upon-a document"); Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3rd Cir.1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

*4 The basis for the Plaintiffs' Complaint is the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et. seq., that governs employee benefit plans. "ERISA protects employee pensions and benefit plans by, among other things, 'setting forth certain general fiduciary duties applicable to the management of both pension and non-pension benefit plans.' " In re WorldCom, Inc. ERISA Litigation, 263 F.Supp.2d 745, 757-58 (S.D.N.Y.2003) (quoting Varity Corp. v. Howe, 516 U.S. 489, 496, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996)). As a threshold matter for holding a party liable for a breach of fiduciary duty under ERISA, that party must first be an ERISA fiduciary. ERISA contains a statutory definition of a fiduciary, providing that:

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Under ERISA, fiduciaries are defined "in functional terms of control and authority over the plan." Mertens v. Hewitt Assocs., 508 U.S. 248, 251, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). The "threshold question" in an action charging breach of fiduciary duty under ERISA is "not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, performing a fiduciary function) when taking the action subject to complaint." Pegram v. Herdrich, 530 U.S. 211, 226, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000). Consistent with this standard, the Court will evaluate each of the Plaintiffs' claims in turn.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*1. The Plaintiffs' Complaint Fails to State an ERISA Claim Against the Compensation Committee Defendants for Breach of Fiduciary Duty Under ERISA.*

The Compensation Committee Defendants are a subset of the Board of Directors who were alleged to have been responsible for administering the Company's Equity Incentive Plan, Executive Stock Purchase Plan, and the Plan. (Compl. at 8, ¶ 29.) The Plaintiffs claim, in their Complaint, that they "have reason to believe" that the Compensation Committee "was likely responsible for the fiduciary acts and responsibilities associated with appointing and monitoring members of the [Administrative] Committee." (Compl. at 24, ¶ 94.) This responsibility, the Plaintiffs allege, makes them fiduciaries of the Plan within the meaning of ERISA. (*Id.*)

In determining whether a party is a fiduciary under ERISA, the Court must first examine the terms of the ERISA plan at issue. *Varity Corp., 516 U.S. at 502 (1996).* Article IX of the Plan's administrative documents sets forth the terms for how the Plan was administered. (*See* Def. Br. at Ex. A, RCN 1106.) Under the Plan's terms, the Company appoints a committee (the Administrative Committee) to administer the plan. (*Id.* at § 9.1.) The Administrative Committee consists of one or more RCN employees who serve without compensation at the pleasure of the Company. (*Id.* at § 9.1.) The Company reserved the right to remove any member of the Administrative Committee, at its sole discretion. (*Id.*)

*5 The Administrative Committee, under the Plan, has the power to "adopt rules for the conduct of its business and administration of the Plan as it considers desirable, provided they do not conflict with the Plan." (*Id.* at § 9.2.) The Committee is also granted power to "construe the Plan, correct defects, supply omissions or reconcile inconsistencies to the extent necessary to effectuate the Plan, and such action shall be conclusive." (*Id.* at § 9.4.) The Administrative Committee could also authorize agents to act on its behalf and contract for "legal, actuarial, investment management, medical, accounting, clerical and other services to carry out the Plan." (*Id.* at § 9.3.) Under Article X, the Administrative Committee was further authorized to appoint a Trustee to administer the Plan's funds. (*Id.* at RCN 1108, § 10.1.)

The Compensation Committee Defendants, as per the Plan's governing documents, did not exercise fiduciary responsibility for the Plan under ERISA as the Plaintiffs allege. The Compensation Committee, while a subset of the Board of Directors, was not vested with nor exercised any power or ERISA fiduciary duty regarding the administration of the Plan. Because the Compensation Committee Defendants were not ERISA fiduciaries, they cannot be held liable for breaches of duty under ERISA. Accordingly, the RCN Defendants' motion to dismiss the Plaintiffs' claims against the Compensation Committee Defendants is GRANTED.

The Plaintiffs' Complaint also names the Compensation Committee as a defendant in its own right. (Compl. at 8, ¶ 29.) The Compensation Committee, however, is not, by itself, a legal entity having the capacity to sue or be sued. Accordingly, the RCN Defendants' motion to dismiss the Plaintiffs' claims against the Compensation Committee is GRANTED.

*2. The Plaintiffs' Complaint Fails to State a Claim Against the Individual Defendants for Breach of Fiduciary Duty Under ERISA.*

The Plaintiffs' claims against the two Individual Defendants, Parkes and Winfield, are based on the fact that both of these defendants signed public filings on behalf of the Company. Parkes was employed as RCN's human resources financial manager for at least part of the Class Period. The Plaintiffs' Complaint notes that, in this capacity, Parkes "signed the Company's Form 11-K for the fiscal year ending December 31, 1999 [which was] filed with the SEC on June 28, 2000." (Compl. at 14, ¶ 55.) Winfield was RCN's General Counsel and Corporate Secretary from November 2002 until approximately April 2004. The Plaintiffs' Complaint alleges that Winfield "signed the Company's 2002 11-K as the Plan's Administrator" and "signed the Company's fiscal 2002 Form 5500 IRS/DOL annual report in that capacity." (*Id.* at 15, ¶ 56.) The Plaintiffs cite to the fact that the Individual Defendants signed of these public filings as evidence that they "exercised discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets." (*Id.*)

*6 ERISA liability, however, "arises only from actions taken or duties breached in the performance of ERISA obligations." *In re WorldCom,* 263

F.Supp.2d at 760 (citing *Pegram*, 530 U.S. at 225-26). The filings cited to by the Plaintiffs as the source of the Individual Defendants' ERISA obligations are documents that must be executed to comply with a company's obligations under federal securities and ERISA laws. Although SEC filings may be incorporated by reference in the Plan's summary plan description ("SPD"), "those connections are insufficient to transform those documents into a basis for ERISA claims against their signatories." *Id.* While the Form 5500 IRS/DOL Report is, itself, an ERISA filing, the fiduciary duty associated with filing such a report is to ensure that the report is filed properly and that the information contained in the report is accurate. The Plaintiffs, however, make no allegation that the information in this report was inaccurate or that the report was improperly filed-so there is no allegation that any ERISA duty was breached. Accordingly, the Plaintiffs' claims against the Individual Defendants are DISMISSED.

*3. Count I of the Plaintiffs' Complaint Fails to State a Claim Against the Company or the Board Defendants.*

The Plaintiffs' basis for ERISA liability against the Board Defendants is that they "appoint[ ] the Compensation Committee members and appoint[ ] that committee's Chairman as well." (Compl. at 6, ¶ 23.) As noted above, the Plan documents show that the Company, acting through the Board Defendants, also appointed the members of the Administrative Committee. This appointment power, the Plaintiffs argue, makes "the Board and its members ... fiduciaries of the Plan within the meaning of ERISA in that they exercised discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets." (*Id.* at 6-7, ¶ 23.)

The alleged source of the Company's ERISA liability is that it acted through the Board Defendants, as well as its officers and employees to "perform Plan-related fiduciary functions in the course and scope of their employment." (*Id.* at 6, ¶ 21.) Because the Company retained "effective control over the activities" of these officers and employees through their "authority and discretion to hire and terminate said officers and employees," the Plaintiffs claim that this makes the Company "a fiduciary in their own right." [FN4] (*Id.* at 5-6, ¶ 21-22.)

---

FN4. The Plaintiffs' Complaint also notes a number of other facts in an effort to create an ERISA fiduciary role for the Company with respect to the Plan. For example, the Complaint notes that the Company "may elect to make profit sharing contributions," "had the right to change the Company's matching percentage," and that the Company periodically reviews the Plan to "determine if changes are needed." (Compl. at 21, ¶ 82.) These functions of amending or contributing to the Plan, however, are not functions undertaken in the Company's role of plan administrator and do not implicate ERISA's fiduciary duties. Fiduciary duties attach to the actions of employers " 'only when and to the extent' that they function in their capacity as plan administrators, not when they conduct business that is not regulated by ERISA." *Blaw Knox Retirement Income Plan v. White Consolidated Industries, Inc.*, 998 F.2d 1185, 1189 (3d Cir.1993) (quoting *Paynok v. HMW Indus., Inc.*, 883 F.2d 221, 225 (3d Cir.1989)). As the Third Circuit noted:

Under ERISA, an employer has broad authority to amend a plan, *Hughes Aircraft v. Jacobson*, 525 U.S. 432, 443, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999) (holding that where employer "makes a decision regarding the form or structure of the plan," ERISA's fiduciary duty requirement is not implicated). In amending a plan, the employer is acting as a settlor. *Id.*; *Lockheed Corp. v. Spink*, 517 U.S. 882, 890, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996). There are portions of ERISA which govern plan amendments; for example, under § 1054(g), an amendment may not decrease accrued benefits. However, as long as an amendment does not violate a specific provision of ERISA, "the act of amending a pension plan does not trigger ERISA's fiduciary provisions." See *Hughes Aircraft*, 525 U.S. at 438.

*Bennett v. Conrail Matched Savings Plan Administrative Committee*, 168 F.3d 671, 679 (3d Cir.1999).

The Plaintiffs' contention, however, that the power to appoint and remove the Plan's administrator makes the Company and the Board Defendants ERISA fiduciaries with regards to management of the Plan's assets is misplaced. ERISA allows employers, like RCN, to "wear 'two hats'," one as the Plan's administrator, the other as the Plan's sponsor. *Blaw*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Knox Retirement Income Plan v. White Consol. Indus.*, 998 F.2d 1185, 1189 (3d Cir.1993) (quoting *Payonk v. HMW Indus., Inc.*, 883 F.2d 221, 225 (3d Cir.1989)). ERISA defines a fiduciary "in functional terms of control and authority over the plan." *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 262, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). Fiduciary duties attach to the actions of an employer, " 'only when and to the extent' that they function in their capacity as plan administrators." *Id.* ERISA also allows the allocation of fiduciary duties among various actors and, in most cases, liability for a breach of fiduciary duty is limited to the actor(s) to whom the responsibilities have been so allocated. "[A] plan may expressly provide for procedures (A) for allocating fiduciary responsibilities ... and (B) for named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities." 29 U.S.C. § 1105(c)(1).

*7 It is not contested that the Administrative Committee is "cited as the Plan Administrator" in the Plan's operating documents. (Compl. at 10-11, ¶ 38.) In that role, the "discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets" (Compl. at 6-7, ¶ 23) that is alleged to be the source of the Company and the Board Defendants' ERISA liability under Count I was delegated to and resided with the Administrative Committee.[FN5]

> FN5. The Plaintiffs' Complaint also notes that the Administrative Committee was responsible for providing the investment directions to the Plan's Trustee and empowered to choose which investment options to provide to plan participants. (Compl. at 22, ¶ 86 (citing to Plan documents).)

The only actions undertaken by the Company and the Board Defendants in the capacity as a Plan administrator is that they established the Plan, and its terms, and appointed the members of the Administrative Committee who, in turn, administered the Plan. Following such an allocation of fiduciary duties, the named fiduciary "shall not be liable for an act or omission of such person in carrying out such responsibility" unless the allocation itself was a fiduciary breach or the named fiduciary committed a co-fiduciary breach as to the allocated responsibilities. 29 U.S.C. § 1105(c)(2).

Count I of the Plaintiffs' Complaint, however, alleges a breach of duty that is beyond the appointment or retention of the Administrative Committee. Count I alleges liability for the investment decisions in the Plan and a failure to protect the Plan and its assets when RCN filed for bankruptcy. This responsibility, however, was allocated to the Administrative Committee who had the exclusive authority, under the Plan documents, to manage or dispose of the Plan's assets. (Compl. at 10, ¶ 38 (citing to Compl., Ex. E at 20 (the Plan's SPD).) The question of whether, under ERISA, the Company and the Board Defendants exercised authority or control over the Plan and its assets depends, therefore, on whether the they exercised authority or control over the Administrative Committee. As the Fifth Circuit noted:

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) (1982), states:

[A] person is a fiduciary with respect to a plan *to the extent* (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

(Emphasis added.) The phrase "to the extent" indicates that a person is a fiduciary only with respect to those aspects of the plan over which he exercises authority or control. See *Brandt v. Grounds*, 687 F.2d 895, 897 (7th Cir.1982). For example, if an employer and its board of directors have no power with respect to a plan other than to appoint the plan administrator and the trustees, then their fiduciary duty extends only to those functions. See *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1325 (9th Cir.1985); *Leigh v. Engle*, 727 F.2d 113, 133-35 (7th Cir.1984); 29 C.F.R. § 2509.75-8 D-4 (1985) (Department of Labor interpretation of § 3(21)(A)).

*8 *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan*, 793 F.2d 1456, 1459-60 (5th Cir.1986).

There is no allegation that the Company or the Board Defendants exercised any discretionary authority over the Administrative Committee regarding the administration or disposition of the Plan's assets. The only authority they retained over the Administrative Committee was the power to appoint and remove the Committee's members at will. This means that the Company and the Board Defendants may be deemed ERISA fiduciaries with regards to management of the Plan's assets and investments *only* if it is shown that they exercised control over the decisions of the Administrative Committee regarding the Plan's

management. *Id.* at 1460. Simply because they had the power to appoint and remove members of the Administrative Committee is not enough to plead, as the Plaintiffs attempt to in their Complaint, that they exercised the required control over the management of assets in the Plan. "To permit [such] an inference ... would vitiate the notion of limited fiduciary responsibility established by the 'to the extent' language in ERISA § 3(21)(A)." *Id.* This means that, in order to impose fiduciary responsibility for the management of the Plan's assets on the Company and the Board Defendants, the Plaintiffs would need to allege that these defendants, either through the use of their positions or otherwise, caused the Administrative Committee to relinquish their independent discretion in deciding whether to continue investing Plan assets into RCN securities or whether to file an ERISA-based proof of claim in RCN's bankruptcy proceedings. No such direct exercise of control over the Administrative Committee and its actions, however, is alleged in the Plaintiffs' Complaint.

For the same reason, the Plaintiffs' claim of respondeat superior liability against the Company must also fail. (*See* Compl. at 21, ¶ 80.) "In the context of respondeat superior liability, the issue is whether the principal, by virtue of its de facto control over the agent, had control over the disposition of plan assets." *Bannistor v. Ullman,* 287 F.3d 394, 408 (5th Cir.2002). *See also Crowley ex rel. Corning, Inc. Investment Plan v. Corning, Inc.,* 234 F.Supp.2d 222, 229 (W.D.N.Y.2002). Because the Company is not alleged to have de facto control over the Administrative Committee's management of the Plan's assets, they cannot be held liable for their decisions on behalf of the Plan. *Id.* Accordingly, the RCN Defendants' motion to dismiss Count I of the Plaintiffs' Complaint against the Company and the Board Defendants is GRANTED.

*4. Count I of the Plaintiffs' Complaint Sufficiently States a Claim Against the Administrative Committee Defendants.*

The Administrative Committee Defendants were designated in the Plan's SPD as being "charged with administering the Plan on behalf of the Company." (*Id.* at 10, ¶ 38 (citing to Compl. at Ex. E at 20 (the Plan's SPD).) This creates a fiduciary duty on the part of the Administrative Committee Defendants because they "exercised discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets." (*Id.*

at 11, ¶ 38.) As the designee of the discretionary authority to manage and administer the Plan and its assets, the Administrative Committee Defendants are the main repository for ERISA fiduciary duties relating to the management of the Plan and its assets.

*9 While the RCN Defendants note that, the terms of the Plan "dictated th [at] RCN matching contribution be invested in the RCN ESOP," this is not sufficient to avoid claims that the Administrative Committee breached their fiduciary duty by continuing to make that directed investment. "Even in the context of an ESOP, which is designed to offer employees the opportunity solely to invest in the employer's stock, a fiduciary may be liable for continuing to offer an investment in the employer's securities, at least where the plaintiff can show that circumstances arose which were not known or anticipated by the settlor of the trust that made a continued investment in the company's stock imprudent, and in effect, impaired the purpose for which the trust was established." *In re WorldCom,* 263 F.Supp.2d at 764-65 (citing *Moench v. Robertson,* 62 F.3d 553, 571 (3d Cir.1995)).

The Plaintiffs, in their Complaint, have sufficiently stated a claim for breach of fiduciary duty by the Administrative Committee by alleging that they were obligated to, but did not, act with prudence regarding the continued offering of RCN stock as a Plan investment as well as failing to file a proof of claim prior to the deadline in RCN's Chapter 11 proceedings. The Administrative Committee did, as the Defendants note, discontinue offering RCN stock as a Plan investment on September 15, 2003. (Def. Br. at 33.) The Plaintiffs have, however, adequately alleged that the Administrative Committee should have taken this type of action earlier, but failed to do so. Accordingly, the RCN Defendants' motion to dismiss Count II of the Plaintiffs' Complaint against the Administrative Committee Defendants is DENIED.

*5. Count II of the Plaintiffs' Complaint States a Cognizable Claim Against the Company and the Board Defendants for Breach of Fiduciary Duty Under ERISA, but Fails to State a Claim Against the Other RCN Defendants.*

Count II of the Plaintiffs' complaint alleges that the Company, the Board, and the Administrative Committee Defendants breached their fiduciary duties under ERISA by failing to monitor the Administrative Committee and MLTC when these

designated fiduciaries were "(i) imprudently allowing the Plan to continue offering the RCN stock as an investment alternative for the Plan, and (ii) continuing to allow the Company's matching contribution in RCN stock when it [was] no longer prudent to do so." (Compl. at 57, ¶ 217.) As per the Plan's governing documents, the Company, through the actions of the Board Defendants, appointed the Administrative Committee to administer the Plan. (Def. Br. at Ex. A, RCN 1106, § 9.1.) The Company, through the Board Defendants, retained the power to appoint, retain, and remove members of the Administrative Committee at their discretion. (*Id.*)

This power to appoint, retain, and remove members of the Administrative Committee leaves the Company and Board Defendants with fiduciary duties under ERISA. *See In re Enron Corp. Securities, Derivative & ERISA Litigation,* 284 F.Supp.2d 511, 661 (S.D.Tex.2003) (power to appoint, retain and remove plan fiduciaries makes members of the company's board fiduciaries under ERISA) (citing *Coyne & Delany Co.,* 98 F.3d at 1464-65 ("the power ... to appoint, retain and remove plan fiduciaries constitutes 'discretionary authority' over the management or administration of a plan within the meaning of § 1002(21)(A)"); *Hickman v. Tosco Corp.,* 840 F.2d 564, 566 (8th Cir.1988) ( "Tosco is a fiduciary within the meaning of ERISA ... because it appoints and removes the members of the administrative committee that administers the pension plan."); *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.,* 793 F.2d 1456, 1459-60 (5th Cir.1986); *Leigh v. Engle,* 727 F.2d 113, 133-35 (7th Cir.1984); *Martin v. Feilen,* 965 F.2d 660, 668-70 (8th Cir.1992); *Detroit Terrazzo Contractors Ass'n v. Board of Trustees of B.A.C. Local 32 Ins. Fund,* 176 F.Supp.2d 733, 739-40 (E.D.Mich.2001); ERISA Interpretative Bulletin 75-8, 29 C.F.R. § 2509.75-8(D-4) (members of a board of directors "responsible for the selection and retention of plan fiduciaries" have " 'discretionary authority or discretionary control respecting the management of such plan' and are, therefore, fiduciaries with respect to the plan."). The power to appoint fiduciaries is itself a fiduciary function. *Coyne & Delany Co. v. Selman,* 98 F.3d 1457, 1465 (4th Cir.1996); *Mehling v. New York Life Ins. Co.,* 163 F.Supp.2d 502, 509-10 (E.D.Pa.2001). Implicit in this power is the duty to monitor. *Leigh,* 727 F.2d at 134-35; 29 C.F.R. § 2509.75-8, FR-17. "The duty to monitor carries with it ... the duty to take action upon discovery that the appointed fiduciaries are not performing properly." *Liss v. Smith,* 991 F.Supp. 278, 311 (S.D.N.Y.1998). Because, for the reasons noted above, the Plaintiffs' Complaint sets forth a sufficient claim against the Administrative Committee for breach of their fiduciary duties, the Complaint also sets forth a cognizable claim against the Company and Board Defendants for failure to supervise the Administrative Committee in the performance of these fiduciary duties. Accordingly, the RCN Defendants' motion to dismiss Count II of the Plaintiffs' Complaint against the Company and Board Defendants for failure to monitor the Administrative Committee Defendants is DENIED.

*10 Just as the Company and the Board Defendants have the power to appoint, and remove at will, the Administrative Committee Defendants, the Administrative Committee Defendants have a similar power to appoint and remove MLTC as the Plan's trustee. (Def. Br. at Ex. A, RCN 1108, Article X, § 10.1.) This leaves the Administrative Committee Defendants with a duty to ensure that their appointee, MLTC, complied with their fiduciary duties. For the reasons set forth in a companion Opinion on MLTC's Motion to Dismiss the Plaintiffs' Complaint, however, this Court finds that MLTC did not breach their fiduciary duties to the Plan participants. Accordingly, the Administrative Committee cannot have breached their duty to supervise MLTC in the performance of their fiduciary duties and the RCN Defendants' motion to dismiss Count II of the Plaintiffs' Complaint against the Administrative Committee Defendants is GRANTED.

*6. Count III of the Plaintiffs' Complaint Fails to State a Cause of Action Under ERISA.*

Count III alleges that the RCN Defendants "breached their duty to inform participants by failing to provide complete and accurate information regarding RCN stock, the Company's precarious financial condition, public misrepresentations and inflated forecasts regarding the Company's aggressive expansion" which, in turn, constituted "inaccurate information regarding the soundness of RCN stock." (Compl. at 59, ¶ 227.) To support this claim, the Plaintiffs' Complaint quotes from numerous press releases and other filings made by the Company during the Class Period, including:
• Company comments on a deal with Level 3 Communications in 1999 that the deal was designed to "lower our costs and offer the economies of scale so essential to preserving RCN's status as the low-cost operator in all the markets we serve." (Compl. at 30, ¶ 119.)
• Company press release on March 19, 1999 that,

with $1.25 billion in newly acquired financing, RCN had "more than $2.25 billion in cash and available capital" and had "continued to demonstrate broad and ready access to the capital markets." (*Id.* at 31, ¶ 121.)

• Company press release on October 4, 1999, announcing a $1.65b additional investment in RCN by Vulcan Ventures, Inc., which Defendant McCourt stated would "allow[ ] for continued expansion of the RCN business plan with a partner that shares our vision." (Compl. at 32, ¶ 127.)

• Statements of the Company's $21.5m quarterly losses for 1Q 1999 (Compl. at 31, ¶ 123), $24.7m loss for 2Q 1999 (*id.* at 32, ¶ 125), $32.6m loss for 3Q 1999 (*id.* at 32, ¶ 128), and $54.3m loss for 4Q 1999 (*id.* at 34, ¶ 133.)

As noted above, ERISA liability "arises only from actions taken or duties breached in the performance of ERISA obligations." *In re WorldCom,* 263 F.Supp.2d at 760 (citing *Pegram,* 530 U.S. at 225-26). The Company and the Board Defendants, however, had no duty under ERISA to communicate or otherwise present investment information to Plan participants. Under the terms of the Plan's governing documents, the duty to communicate with Plan participants was assigned to the Administrative Committee. Under Article IX, § 9.5, the Administrative Committee is responsible to "arrange for the filing of all returns, reports, and descriptions of the Plan as required of the Plan Administrator." (Def. Br. at Ex. A, RCN 1106.) Accordingly, the Plaintiffs' are attempting to state a claim for a breach of duty under ERISA where no such duty exists. Therefore, the RCN Defendants' motion to dismiss Count III against the Company and the Board Defendants is hereby GRANTED.

*11 The Administrative Committee, however, was assigned the duty of informing Plan participants as part of its duties as the Plan's administrator. The Administrative Committee, as an ERISA fiduciary "may not knowingly present false information regarding a plan investment option to plan participants. There is no exception to the obligation to speak truthfully when the disclosure concerns the employer's stock." *In re WorldCom, Inc.,* 263 F.Supp.2d at 766. *See also Martinez v. Schlumberger, Ltd.,* 338 F.3d 407, 425 (5th Cir.2003) ( "When an ERISA plan administrator speaks in its fiduciary capacity concerning a material aspect of the plan, it must speak truthfully"); *Mullins v. Pfizer, Inc.,* 23 F.3d 663, 668 (2d Cir.1994) (same). ERISA imposes a "legal duty to disclose to the beneficiary only those material facts, known to the fiduciary but unknown to the beneficiary, which the beneficiary must know for its own protection. The scope of that duty to disclose is governed by ERISA's Section 404(a), and is defined by what a reasonable fiduciary, exercising 'care, skill, prudence and diligence,' would believe to be in the best interest of the beneficiary to disclose." *Glaziers and Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Securities, Inc.,* 93 F.3d 1171, 1182 (3d Cir.1996). *See also Bins v. Exxon Co. U.S.A.,* 189 F.3d 929, 939 (1999) ("We believe that once an ERISA fiduciary has material information relevant to a plan participant or beneficiary, it must provide that information whether or not it is asked a question."), *on rehearing en banc,* 220 F.3d 1042, 1048-49 (9th Cir.2000) (when a proposed change in retirement benefits becomes sufficiently likely and therefore material, the employer has a duty to provide complete and truthful information); *Schmidt v. Sheet Metal Workers' Nat. Pension Fund,* 128 F.3d 541, 546-47 (7th Cir.1997) ("A plan fiduciary may violate its duties ... either by affirmatively misleading plan participants about the operations of a plan, or by remaining silent in circumstances where silence could be misleading."), *cert. denied,* 523 U.S. 1073, 118 S.Ct. 1513, 140 L.Ed.2d 667 (1998). "[The] duty to inform is a constant thread in the relationship between beneficiary and trustee; it entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." *Bixler v. Central Pa. Teamsters Health-Welfare Fund,* 12 F.3d 1292, 1300 (3d Cir.1993). *See also In re Williams Companies ERISA Litigation,* 271 F.Supp.2d 1328, 1343 (N.D.Oka.2003) (holding when defendants are "charged with the fiduciary responsibility to tend to the Plan's investments" that duty encompasses a "duty to provide useful and accurate information to Plan participants, to identify sound investment options.").

These various public statements, forecasts, and filings to the Plan participants and others noted in the Plaintiffs' Complaint, are alleged to have "fostered a positive attitude toward the Company's stock, and/or allowed Participants in the Plan to follow their natural bias towards investment in the equities in their employer." (Compl. at 40-43, ¶ ¶ 161-168.) These positive statements, it is presumed, are in contrast to the continued decline in RCN's stock price during the Class Period, and the Company's eventual bankruptcy. This alleged dichotomy of the Company enthusiastically pursuing an "untenable, 'pie-in-the-sky,' expansion strategy" even while the Company "was slowly sinking under the weight of its

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

obligations" (Compl. at 33, ¶ 131.) is not, however, sufficient to support the Plaintiff's allegations that these communications were somehow "inaccurate, incomplete and materially misleading." (Compl. at ¶ 42, 164.) The Complaint merely looks at these statements in hindsight to support the conclusory allegation that these statements were inaccurate and misleading. It is well established that, in deciding a motion to dismiss, the Court need not "credit a [C]omplaint's 'bald assertions' or 'legal conclusions.' " In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1429-30 (3d Cir.1997) (quoting Glassman v. Computervision Corp., 90 F.3d 617, 628 (1st Cir.1996)). See also Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed.1997) (noting that courts, when examining 12(b)(6) motions, have rejected "legal conclusions," "unsupported conclusions," "unwarranted inferences," "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations"); Crowley v. Corning, Inc., 234 F.Supp.2d 222, 229 (W.D.N.Y.2002) ("A complaint that contains only conclusory allegations and lacking any factual assertions for support fails even the liberal standard of Federal Rule of Civil Procedure 12(b)(6).") (citing De Jesus v. Sears Roebuck & Co., Inc., 87 F.3d 65, 70 (2d Cir.1996)).

*12 The statements cited in the Plaintiffs' Complaint were all made by the Company or officers of the Company-none of whom were acting in the capacity of the Plan's administrator. None of these statements, regardless of truth or falsity, were made in any fiduciary capacity regarding the Plan. Furthermore, the Plaintiffs' Complaint does not allege that members of the Administrative Committee actually possessed any information contrary to these public statements that it failed to disclose to Plan participants, or even demonstrate how these public statements were, in any way, false or misleading at the time they were made. Accordingly, the RCN Defendants' motion to dismiss Count III of the Plaintiffs' Complaint against the Administrative Committee Defendants is GRANTED.

*7. Count IV of the Plaintiffs' Complaint Fails to State a Cause of Action Under ERISA.*

In Count IV, the Plaintiffs allege that the RCN Defendants breached their duty of loyalty to "discharge his/her duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and its beneficiaries." (Compl. at 61, ¶ 236.) RCN's ESOP Plan, like any employer-administered employee stock ownership plan, requires the employer-administer to "wear two hats" and to "administer ESOP investments consistent with the provisions of both a specific employee benefits plan and ERISA." Moench v. Robertson, 62 F.3d 553, 569 (3d Cir.1995). As the Moench Court noted:

[A]s the financial state of the company deteriorates, ESOP fiduciaries who double as directors of the corporation often begin to serve two masters. And the more uncertain the loyalties of the fiduciary, the less discretion it has to act. Indeed, " '[w]hen a fiduciary has dual loyalties, the prudent person standard requires that he make a careful and impartial investigation of all investment decisions." ' Martin v. Feilen, 965 F.2d 660, 670 (8th Cir.1992) (citation omitted). As the Feilen court stated in the context of a closely held corporation:

[T]his case graphically illustrates the risk of liability that ESOP fiduciaries bear when they act with dual loyalties without obtaining the impartial guidance of a disinterested outside advisor to the plan. Because the potential for disloyal self-dealing and the risk to the beneficiaries from undiversified investing are inherently great when insiders act for a closely held corporation's ESOP, courts should look closely at whether the fiduciaries investigated alternative actions and relied on outside advisors before implementing a challenged transaction.

Id. at 670-71. And, if the fiduciary cannot show that he or she impartially investigated the options, courts should be willing to find an abuse of discretion.

Moench, 62 F.3d at 572. The inherent risk of dual loyalties for corporate directors and employees who also serve as administrators for their company's ESOP is to be taken into account as a factor in applying judicial scrutiny to an administrator's decision with regard to their management of ESOP-invested funds. This is not, however, a separate and distinct ERISA duty. This claim is merely a restatement of the Plaintiffs' allegations in Count II- that the RCN Defendants breached their fiduciary duty under ERISA to the Plan's participants by failing to manage the Plan in the best interests of the Plan's participants. Accordingly, the Defendants' motion to dismiss Count IV of the Plaintiffs' Complaint is GRANTED.

**B. The RCN Defendants' Motion to Dismiss Under Rule 12(b)(1) for Lack of Standing.**

*13 It is undisputed that all of the six named

Plaintiffs in this case were both employees of RCN and Plan participants at some point during the Class Period. (Def. Br. at 20.) One of the six named Plaintiffs, Arnold Prashad ("Prashad"), remains a current Plan participant, and his standing in this case is uncontested. (*Id.*) The RCN Defendants, however, raise a standing objection under Fed. R. Civ. Pro. 12(b)(1) with regards to the remaining five named Plaintiffs, Stephanie Thomas ("Thomas"), Harold Hill ("Hill"), Debra Craig ("Craig"), Scott Grassi ("Grassi"), and Robert Maguire ("Maguire") (collectively, the "Former Employee Plaintiffs"). The RCN Defendants move to dismiss the claims of the Former Employee Plaintiffs on the grounds that they are no longer RCN employees or Plan participants and, therefore, not "participants" under ERISA, 29 U.S.C. § 1002(7), and lack standing to bring breach of fiduciary duty claims on behalf of the Plan under ERISA, 29 U.S.C. § 1132(a)(2). (*Id.*)

The Former Employee Plaintiffs' standing to bring suit on behalf of the Plan for "appropriate relief" under ERISA hinges on the question of whether or not they are "participants" under ERISA, 29 U.S.C. § 1002(7). "The requirement that a claimant be a 'participant' is a subject matter jurisdiction requirement as well as a standing issue." Katzoff v. Eastern Wire Products Co., 808 F.Supp. 96, 98 (D.R.I.1992) (citations omitted). A party is a "participant" under ERISA if they "have either a colorable claim to vested benefits in the Plan or a reasonable expectation of returning to employment at [their former employer where they would again be covered by the Plan]." Shawley v. Bethlehem Steel Corp., 989 F.2d 652, 655-56 (3d Cir.1993) (citing Sladek v. Bell System Management Pension Plan, 880 F.2d 972, 979 (7th Cir.1989)).

The Former Employee Plaintiffs make no claim that they have any reasonable expectations of returning to RCN as employees. Their argument is that the Former Employee Plaintiffs have a "colorable claim to vested benefits" that entitle them to standing. (Pl. Br. at 7.) The Former Employee Plaintiffs assert that they have not received all the benefits to which they are entitled, and are seeking a recovery to the Plan of the losses caused by the alleged breaches of fiduciary duty that "would be paid first to the Plan and then distributed to the plaintiff class as benefits through their plan accounts." (Pl. Br. at 10 (citing to 29 U.S.C. § 1109(a) (breaching ERISA fiduciaries must make good any plan losses caused by their breach to the Plan); Mass. Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 140, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) (holding that recovery for ERISA breaches inure to the benefit of the Plan as a whole).

The Plaintiffs cite to the recent Third Circuit decision *In re Schering-Plough Corporation ERISA Litigation,* 420 F.3d 231 (3d Cir.2005) to support their claim that former Plan participants have standing to pursue ERISA claims against the Plan's fiduciaries for imprudently managing the Plan's assets. (Pl. Br. at 7.) The holding in *Schering,* however, is not at issue in the current case. It is well established that any claim for breach of fiduciary duty under ERISA must seek relief for the plan as a whole, rather than for individual plan participants. See Byrd v. Reliance Standard Life Ins. Co., 160 Fed. Appx. 209, n4 (3d Cir.2005) (on ERISA claims for breach of fiduciary duty, "relief is available to the plan, not to individual plan participants") (citing McMahon v. McDowell, 794 F.2d 100, 109 (3d Cir.1986); Alexander v. Whitman, 114 F.3d 1392, 1397 (3d Cir.1997); Hein v. Fed. Deposit Ins. Corp., 88 F.3d 210, 223 (3d Cir.1996); Ream v. Frey, 107 F.3d 147, 151 (3d Cir.1997); Haberern v. Kaupp Vascular Surgeons, Ltd. Defined Benefit Pension Plan, 24 F.3d 1491, 1501 (3d Cir.1994)); Compton Press, Inc. Employees' Profit Sharing Retirement Plan v. Granada Investments, Inc., 1992 WL 566329, *9 (D.N.J. Nov.23, 1992) (holding that a "suit against a benefit plan fiduciary for breach of fiduciary duties may only be brought for the benefit of the plan") (citations omitted).) Under *Schering,* the fact that a given plan is segregated into individual participant accounts does not mean that a loss to a particular account (or group of accounts) is not also a loss to the Plan as a whole. *Schering,* 420 F.3d at 237. Accordingly, the *Schering* Court overturned a district court's holding that prevented plaintiffs from pursuing a derivative action on behalf of an employees' savings plan on the grounds that the plaintiffs were seeking compensation for losses inflicted on only a subset of the plan's accounts and that the plaintiffs were seeking an allocation of damages among individual plan participants' accounts in proportion to the accounts' losses. *Id.* at 234. The *Schering* Court held that "the fact that damages paid to [a] Savings Plan for breaches of fiduciary duties will also indirectly benefit its participants does not bar a derivative action under § § 1109 and 132(a)(2)." *Id.* at 241 (citing Smith v. Sydnor, 184 F.3d 356, 363 (4th Cir.1999).

*14 It is not contested in this case that the Plaintiffs may seek damages on behalf of the Plan for alleged breaches of fiduciary duty that had an adverse financial impact to only a subset of the Plan's accounts (namely, those with investments in RCN

securities). It is also not contested that the Plaintiffs' may seek damages on behalf of the Plan which may be appropriately allocated to individual Plan participants' accounts. Both of these issues are precluded by the *Schering* decision. The issue of whether the Former Employee Plaintiffs have standing, as former employees, under the requirements of *Shawley* to bring suit on behalf of RCN's savings plan, however, was not addressed by the *Schering* Court.

The problem with the Former Employee Plaintiffs' claim is that, since they claim no reasonable expectation of returning to work as RCN employees, they must have a "colorable claim to *vested* benefits" to have standing to proceed with their case. *Shawley, 989 F.2d at 655-56* (emphasis added). What they are seeking is not, however, a "vested benefit" under ERISA. The nature of the Former Employee Plaintiffs' claims is that the value of their accounts in the Plan were less than it should have been as a result of the Defendants' alleged breaches of fiduciary duty. As the Third Circuit has held, "damages stemming from [an] alleged breach of fiduciary duty-does not constitute a 'benefit' within the meaning of [29 U.S.C.] § 1002(8)." *Daniels v. Thomas & Betts Corp., 263 F.3d 66, 77 (3d Cir.2001)* (citing *Kuntz v. Reese, 785 F.2d 1410, 1411 (9th Cir.1986))*. Such an allegation seeks to claim a sum that could possibly been earned if the Defendants did not commit the alleged breaches of fiduciary duty. Additional damages that might have accrued, however, are "speculative and cannot be considered as vested under ERISA." *Hargrave v. TXU Corp., 392 F.Supp.2d 785, 790 (N.D.Tex.2005)*.

The difference between what the Former Employee Plaintiffs' accounts *might have* earned and what they actually earned is not a benefit that is promised for, or promised under, the terms of the Plan. The remedy being sought here is not the payment of a vested benefit, but rather a monetary damage amount for an alleged breach of fiduciary duty. *See Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan, 883 F.2d 345, 350 (5th Cir.1989)*. The Former Employee Plaintiffs received all the benefits due to them when they left RCN's employment and withdrew from the Plan. "At that point, without the reasonable expectation of returning to [RCN] as employees, and absent a colorable claim to vested benefits, they ceased to be participants under ERISA." *Lalonde v. Textron, Inc., 2006 WL 519671, *5 (D.R.I. March 1, 2006)*. Accordingly, the RCN Plaintiffs' motion to dismiss Plaintiffs Thomas, Hill, Craig, Grassi, and Maguire under Fed. R. Civ. Pro. 12(b)(1) for lack of standing to sue as ERISA participants or beneficiaries is GRANTED.

### III. CONCLUSION

*15 For the reasons stated above, and for good cause shown, the Court PARTIALLY GRANTS AND PARTIALLY DENIES the RCN Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted and GRANTS the RCN Defendants' Motion to dismiss Plaintiffs Thomas, Hill, Craig, Grassi, and Maguire pursuant to Rule 12(b)(1) for lack of standing to sue as ERISA participants or beneficiaries. An appropriate form of order will be filed herewith.

D.N.J.,2006.
In re RCN Litigation
Slip Copy, 2006 WL 753149 (D.N.J.), 37 Employee Benefits Cas. 1809

Briefs and Other Related Documents (Back to top)

- 2005 WL 3523046 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Opposition to the RCN Defendants' Motion to Dismiss (Nov. 22, 2005)
- 2005 WL 3523048 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to Merrill Lynch Trust Company FSB's Motion to Dismiss (Nov. 22, 2005)
- 2005 WL 2899216 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Merrill Lynch Trust Company Fsb's Motion to Dismiss Plaintiffs' Consolidated Complaint (Sep. 23, 2005)
- 2005 WL 2899221 (Trial Motion, Memorandum and Affidavit) Rcn Defendants' Memorandum of Law in Support of Their Motion to Dismiss Plaintiffs' Consolidated Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) AND 12(b)(6) (Sep. 23, 2005)
- 2004 WL 2783812 (Trial Pleading) Class Action Complaint for Violations of the Employee Retirement Income Security Act (Oct. 15, 2004)
- 3:04cv05068 (Docket) (Oct. 15, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.