Westlaw.

437 F.Supp.2d 750  
437 F.Supp.2d 750, 38 Employee Benefits Cas. 1467  
**(Cite as: 437 F.Supp.2d 750)**

Page 1

**H**  
Briefs and Other Related Documents

United States District Court,S.D. Ohio,  
Eastern Division.  
In re AEP ERISA LITIGATION, Plaintiff,  
This Document Relates To: All Erisa Actions.  
No. C2-03-67.

July 12, 2006.

**Background:** Former employee, who had participated in a retirement savings plan governed by the Employee Retirement Income Security Act (ERISA), brought suit against his former employer, its subsidiary and directors, claiming breach of fiduciary duties. Following consolidation of the action with related suits, the employee moved for certification of a class defined as the plan and all participants in the plan for whose individual accounts the plan purchased and/or held shares of the employer's stock fund during a specified time period, as well as an order certifying him as class representative and designating class counsel.

**Holding:** The District Court, Marbley, J., held that the employee lacked standing under ERISA.

Motion denied.

West Headnotes

**[1] Labor and Employment 231H €→646**

231H Labor and Employment  
    231HVII Pension and Benefit Plans  
        231HVII(K) Actions  
            231HVII(K)3 Actions to Enforce Statutory or Fiduciary Duties  
                231Hk646 k. Parties in General; Standing. Most Cited Cases  
Having divested himself of his holdings in ERISA plan after he filed ERISA suit asserting breach of fiduciary duty, former employee lacked standing to represent class defined as ERISA plan and all participants in the plan for whose individual accounts plan purchased and/or held shares of employer's stock fund during specified time period; former employee had already collected all vested benefits due to him under the plan, as his asserted right to sum that possibly could have been earned by prudent investment decisions sought damages that were too speculative to be considered vested under ERISA. Employee Retirement Income Security Act of 1974, § § 3(7), 502(a)(2), 29 U.S.C.A. § § 1002(7), 1132(a)(2).

**[2] Labor and Employment 231H €→646**

231H Labor and Employment  
    231HVII Pension and Benefit Plans  
        231HVII(K) Actions  
            231HVII(K)3 Actions to Enforce Statutory or Fiduciary Duties  
                231Hk646 k. Parties in General; Standing. Most Cited Cases  
For former employee to have standing as a representative of class defined as ERISA plan and all participants in the plan for whose individual accounts the plan purchased and/or held shares of employer's stock fund during a specified time period, it was not sufficient that he was a plan "participant" at time ERISA suit asserting breach of fiduciary duty was filed; rather, the question was whether his eligibility continued in the face of his plan divestment. Employee Retirement Income Security Act of 1974, § § 3(7), 502(a)(2), 29 U.S.C.A. § § 1002(7), 1132(a)(2).

**[3] Labor and Employment 231H €→646**

231H Labor and Employment  
    231HVII Pension and Benefit Plans  
        231HVII(K) Actions  
            231HVII(K)3 Actions to Enforce Statutory or Fiduciary Duties  
                231Hk646 k. Parties in General; Standing. Most Cited Cases  
For former employee to have standing as representative of class, in ERISA action asserting breach of fiduciary duty, defined as ERISA plan and all participants in the plan for whose individual accounts the plan purchased and/or held shares of the employer's stock fund during a specified time period, it was not sufficient that he was a "participant" during the time the alleged wrong took place, i.e., during the class period; employee had cashed out of the plan of his own volition, not due to any wrongdoing by the employer, and thus, was covered

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

437 F.Supp.2d 750                                                                                                        Page 2
437 F.Supp.2d 750, 38 Employee Benefits Cas. 1467
**(Cite as: 437 F.Supp.2d 750)**

by general rule that former employees who had received full benefits to which plan documents entitled them were no longer "participants" of plan. Employee Retirement Income Security Act of 1974, §§ 3(7), 502(a)(2), 29 U.S.C.A. §§ 1002(7), 1132(a)(2).

**[4] Labor and Employment 231H ☞678**

231H Labor and Employment
   231HVII Pension and Benefit Plans
      231HVII(K) Actions
         231HVII(K)5 Actions to Recover Benefits
            231Hk678 k. Parties in General; Standing. Most Cited Cases
Under ERISA, to be a participant eligible for benefits, a claimant must have a colorable claim that he will prevail in a suit for benefits, or that eligibility requirements may be fulfilled in the future. Employee Retirement Income Security Act of 1974, §§ 3(7), 502(a)(2), 29 U.S.C.A. §§ 1002(7), 1132(a)(2).

\*751 Edwin J. Mills, Stull, Stull and Brody, New York, NY, Robert G. Cohen, Kegler Brown Hill & Ritter, Columbus, OH, for Kermit D. Bridges.
Robert G. Cohen, Andrew Schatz, Robert A. Izard, Schatz & Nobel, PC, Hartford, CT, for Selena Plentl.
Gerald Scott Leeseberg, Leeseberg & Valentine, Columbus, OH, for John N. Suhayda.
Robert Armand Perez, Sr., Cincinnati, OH, for Lloyd R. Fadem.
James Edward Arnold, Clark Perdue Arnold & Scott, Columbus, OH, for Albert Fadem Trust, Daren A. Cittadine Revocable Trust, James BrannonRobert L. Garber.
Joseph J. Braun, Richard Stuart Wayne, William Kendall Flynn, Cincinnati, OH, Marc A. Topaz, Schiffrin & Barroway, Radnor, PA, for Sheryl J. Goldberg.
Joseph F. Murray, Murray Murphy Moul & Basil, Columbus, OH, for Gary Kosseff.
Richard Stuart Wayne, Strauss & Troy, Cincinnati, OH, for Private Asset Mnagaement, Robert E. Stowers, Barteck Group, Lorine T. Ward, Hedy Roth, Richard Steinmeyer.
Alvin James McKenna, Fred G. Pressley, Jr., Porter, Wright Morris & Arthur, Columbus, OH, George S. Wang, Jennifer T. Barall, Joseph M. McLaughlin, Michael J. Chepiga, Simpson Thacher & Bartlett, LLP, New York, NY, for American Electric Powr Co.
Alvin James McKenna, Bryan R. Faller, Porter Wright Morris & Arthur, Columbus, OH, for E. Linn Draper, Jr., Thomas Shockley, III.

***ORDER AND OPINION***
MARBLEY, District Judge.

**I. INTRODUCTION**

This matter comes before the Court on the Motion for Class Certification by Plaintiff, Kermit D. Bridges ("Bridges" or "Plaintiff").[FN1] Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff seeks to certify a class defined as:

> FN1. Initially, Plaintiff's Motion for Class Certification sought to certify two class representatives, Bridges and Selena Plentl ("Plentl"). Complaint ¶ 8. Because Plentl was unable to attend the deposition in April 2006, she has since withdrawn her request to serve as a class representative. Defs.' Opp. at 6; Pl's Reply at 1. Bridges is, therefore, the sole named plaintiff.

the Plan, and all Participants in the Plan for who individual accounts the Plan purchased and/or held shares of the AEP Stock Fund at any time from December 9, 1998 to December 31, 2002, inclusive (the "Class")
Plaintiff also seeks an order certifying him as the Class Representative and an order designating both Schatz & Nobel, P.C., and Stull, Stull & Brody, as Class Counsel. For the reasons set forth herein, Plaintiff's Motion is **DENIED**.

**II. STATEMENT OF FACTS**

**A. Background**

**1. The Plan**

This is an action filed under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, *et. seq.* Bridges brings suit on behalf of all other persons similarly situated (the "Participants"),\*752 who participated in the American Electric Power System Retirement Savings Plan (together with its predecessors,[FN2] the "Plan"). Plaintiff seeks Plan-wide relief on behalf of the Plan, and on behalf of a class of all Participants in the Plan for whose individual accounts the Plan purchased and/or held shares of the AEP Stock Fund ("Fund")

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

from December 9, 1998 to the present (the "Class").[FN3]

> FN2. The Central and South West Corporation Retirement Savings Plan ("CSW Plan") is included as a predecessor plan because AEP acquired Central and South West Corporation in 2000. Thereafter, AEPSC, allegedly administered the CSW Plan and offered an AEP stock fund to CSW Plan participants until the CSW Plan merged with the AEP Plan on or about the close of business on December 1, 2002. Collectively, the two plans are referred to herein merely as the "Plan."

> FN3. Plaintiff excludes from the proposed Class, however, Defendants, directors of AEP and AEPSC, members of their immediate families, and the heirs, successors, or assigns of any of the foregoing.

The Plan is a "defined contribution" or "individual account" Plan ("EIAP") within the meaning of ERISA § 3(34), 29 U.S.C. § 1102(34), in that it provides for individual accounts for each Participant and for benefits based on the amount contributed to each Participant's account. Complaint ¶ 22. The Plan is also a "401(k)" voluntary contribution plan, whereby each Participant directs the Plan: (1) to purchase investments from among the various investment options offered by the Plan; and (2) to allocate those investments to his or her individual account. Complaint ¶ 23. During the Class Period, the Plan provided several investment options to Participants, including the Fund. Id. ¶ 24. The Plan also provides that AEP will make matching contributions in an amount equal to 6% of each Participant's regular compensation. Id. AEP's matching contributions were invested *solely* in the Fund until March 1, 2002, at which point the company allocated them according to each Participant's individual investment choices. Id. ¶ 25.

Defendants are: (1) AEP, a corporation headquartered in Columbus, Ohio; (2) AEPSC, a wholly-owned subsidiary of AEP, also headquartered in Columbus, Ohio, and the alleged sponsor and named fiduciary of the Plan; and (3) Draper and Shockley (together, the "Director Defendants"), two directors of AEP, who allegedly also serve as the principal officers and directors of AEPSC (collectively, with AEP and AEPSC, the "Defendants"). Plaintiffs bring this action pursuant to § 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2).[FN4]

> FN4. Plaintiff's initially also brought suit pursuant to § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), providing:
> A civil action may be brought-...
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate *equitable relief* (I) to redress such violations or (ii) to enforce any provisions of this subchapter to the terms of the plan.
> 29 U.S.C. § 1132(a)(3). In Plaintiff's Reply, however, Plaintiff voluntarily withdrew its § 502(a)(3) claim. Though Plaintiff asserts that it "does not agree with Defendants' theory" that Bridges' deposition testimony demonstrated that he sought only money damages, because in *In re Cardinal Health, Inc. ERISA Litig.*, 424 F.Supp.2d 1002, 1025-26 (S.D.Ohio 2006) (Marbley, J.), this Court dismissed a plaintiff's ERISA § 502(a)(3) claims, which Plaintiff deems to be "indistinguishable from the [§ 502(a)(3)] claims ... asserted in this case," Plaintiff now pursues *only* its § 502(a)(2) claim. Pl.'s Reply at 7.

Generally, Plaintiff alleges that Defendants breached their fiduciary duties to the Plan and the Participants, as set forth in ERISA § 404, 29 U.S.C. § 1104, and the Department of Labor ("DOL") Regulations, 29 C.F.R. § 2550. Specifically, Plaintiff makes two independent claims:

*753 1) Defendants breached their fiduciary duties by offering the Fund as one of the investment options of the Plan and permitting the Plan to purchase and hold shares in the Fund when it was imprudent to do so; and

2) Defendants breached their fiduciary duties by negligently making misrepresentations and negligently failing to disclose material information that was necessary for the Participants to make informed decisions concerning Plan assets and the appropriateness of investing in the Fund.

Plaintiff claims that as a result of these breaches, Participants have suffered substantial losses; namely, the Fund lost a substantial portion of its value since the beginning of the Class Period, and the Plan, and by extension, the Participants were deprived of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

value of prudent investment alternatives. As a result, Plaintiff requests the following: (1) actual damages "in the amount of any losses the Plan suffered to be allocated among the Participants' individual accounts in proportion to the accounts' losses"; (2) equitable relief; (3) costs pursuant to 29 U.S.C. § 1132(g); (4) attorneys fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and (5) "[s]uch other relief as the Court may deem equitable and just." See Complaint at 31-32 ("Prayer for Relief").

### 2. Named Plaintiff

Bridges is a resident of the State of West Virginia who worked for AEP for over thirty years before retiring in 1992. Complaint ¶ 8. Bridges was a Participant in the Plan within the meaning of ERISA § 3(7), 20 U.S.C. § 1002(7) throughout the period of his employment. Bridges Dep. at 12. In 2002, Bridges read about a possible class action suit involving Plan holders, and, shortly thereafter, he contacted proposed Class Counsel, Stull, Stull & Brody. Id. at 74:21-75:1. Bridges was listed as a named plaintiff in the Complaint, which was filed in 2003. Complaint ¶ 8. In 2004, Bridges fully divested himself of his Plan holdings. Id. at 54:18-55:7.

### B. Procedural History

Three different ERISA actions were filed in this Court and the Southern District of New York, beginning in December of 2002. On December 29, 2002, the New York case was transferred to this Court, and on July 8, 2003, this Court issued an Order consolidating the cases and appointing lead plaintiff and lead counsel. Plaintiff then filed the Consolidated Amended Complaint on July 23, 2003, and the Amended Complaint on September 8, 2003 (collectively the "Complaint"). Defendants filed their Motion to Dismiss on November 10, 2003, to which Plaintiff responded.

In their Opposition, Defendants argued that Plaintiff had to, but failed to, comply with Rule 23.1 of the Federal Rules of Civil Procedure. This prompted Plaintiff to file a Motion to Strike, or in the alternative, for Leave to File a Response to Defendants' new argument. By Order of April 15, 2004, the Court granted Plaintiff leave and accepted the response attached to Plaintiff's Motion to Strike. On August 10, 2004, this Court denied Defendants' Motion to Dismiss in its entirety. Further, on March 10, 2005, this Court denied Defendants' Motion to Modify the Court's August 10, 2004 Order to Certify under 28 U.S.C. § 1292(b) for Interlocutory Appeal. On October 31, 2005, Plaintiff filed the motion currently at issue. The matter has been fully briefed, and the Court held a class certification hearing on June 27, 2006.

### III. LAW AND ANALYSIS

#### A. Standing as a Jurisdictional Prerequisite

[1] Before proceeding to the merits of Plaintiff's Motion for Class Certification, this Court must address the issue of standing.*754 See Courtney v. Smith, 297 F.3d 455, 467 (6th Cir.2002) (citing Wooden v. Bd. of Regents of Univ. Sys. of Georgia, 247 F.3d 1262, 1287 (11th Cir.2001) (holding that "as a prerequisite to certification, it must be established that the proposed class representatives have standing to pursue the claims as to which classwide relief is sought")); see also, Bertulli v. Indep. Ass'n of Cont'l Pilots, 242 F.3d 290, 294 (5th Cir.2001) (standing is an "inherent prerequisite to the class certification inquiry"); Hargrave v. TXU Corp., 392 F.Supp.2d 785 (N.D.Tex.2005) (deciding whether named plaintiffs had standing before getting to the merits of plaintiffs' class certification motion).

It is undisputed that in 2004, Bridges liquidated his Plan holdings, and that since retiring in 1992, he has no plans to return to work at AEP:
Q: Am I correct you withdrew your funds from the AEP Plan in March 2004?
A: I don't know when ...
Q: Do you recall how much you rolled out?
A: No.
Q: Do you have funds remaining in the AEP Plan?
A: No.
Q: There's no way of you getting back in, is there?
A: I hope not.

Bridges Dep. 54:18-55:7. Defendants assert that after cashing out from the Plan, Bridges no longer qualifies as a "participant" under ERISA, and has, therefore, divested himself of standing to "assert a derivative claim on behalf of the AEP Plan under § 502(a)(2)." [FN5] Bridges counters that he has standing because he was a Participant throughout the purported Class Period (1998 through 2002), and the law requires only that he be a Participant at the time the Complaint was filed, and/or at the time of the alleged wrongdoing.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN5. In their Opposition, in addition to focusing on the *Firestone* "participant" analysis, Defendants also reference a number of cases relating to *derivative* lawsuits under Rule 23.1 of the Federal Rules of Civil Procedure. *See* Defs.' Opp. at 19, n. 10 (citing *Prince v. Palmer*, 148 Fed.Appx. 249, 250-51 (6th Cir.2005); *Lewis v. Chiles*, 719 F.2d 1044, 1047 (9th Cir.1983); *Schilling v. Belcher*, 582 F.2d 995, 999 (5th Cir.1978)). Each of these cases notes that Rule 23.1 requires that: (1) the plaintiff must have owned stock in the defendant corporation at the time of the transaction of which he complains-the "contemporaneous ownership" requirement; and (2) the plaintiff must be a shareholder of the defendant corporation at the time suit is brought. *See, e.g. Schilling*, 582 F.2d at 999.

This Court previously rejected Defendants' argument that Rule 23.1 applies to the instant case in its decision denying Defendants' various motions to dismiss. *See In re AEP ERISA Litig.*, 327 F.Supp.2d 812, 820-21 (S.D.Ohio Aug. 10, 2004) (Marbley, J.). The Court explained,

[c]learly the Rule does not apply to *all* derivative suits, as Defendants suggest. The Supreme Court so held in *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 535, n. 11, 104 S.Ct. 831, 78 L.Ed.2d 645 (1984), stating that, "[t]he fact that derivative suits are brought on behalf of a corporation does not mean, however, that all suits brought on behalf of a corporation are derivative." Other courts, likewise, have rejected Defendants' argument and clarified that: [a]lthough this suit may be characterized as "derivative" in the broad sense, it clearly does not fall within the terms of Rule 23.1 ... [Plaintiffs] are suing as plan beneficiaries to enforce the right of the plan against its fiduciaries. When a trust beneficiary brings a derivative suit on behalf of a trust, "the specific provisions of Rule 23.1 are not controlling."

*Id.* at 820-21 (internal citations omitted). Defendants have offered no new precedent and no new facts that would give the Court pause in reconfirming its previous assertion that Plaintiff's failure to comply with Rule 23.1 relieves him of standing to pursue the instant suit. Therefore, the Court finds Defendants' reliance on the above Rule 23.1 derivative suit cases to be misplaced.

*755 **B. Standing to Bring an ERISA Claim**

**1. Background**

Bridges brings this action pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1332(a), which authorizes a "participant," "beneficiary," or "fiduciary," to bring a civil action for breach of any fiduciary duty proscribed by 29 U.S.C. § 1109. Plaintiff claims to have standing to sue as a "participant" of the Plan. ERISA defines the term "participant" as:

any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive such benefit.

29 U.S.C. § 1002(7).

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court shed light on the definition of an ERISA "participant," explaining:

[t]he term "participant" is naturally read to mean either "employees in, or reasonably expected to be in, currently covered employment," or former employees who "have ... a reasonable expectation of returning to covered employment" or who have "a colorable claim" to vested benefits. In order to establish that he or she "may become eligible for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future". "This view attributes conventional meaning to the statutory language since all employees in covered employment and former employees with a colorable claim to vested benefits 'may become eligible.' A former employee who has neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits, however, simply does not fit within the [phrase] 'may become eligible.' "

*See* 489 U.S. at 117-18, 109 S.Ct. 948.

Soon after the Supreme Court issued its *Firestone* decision, a number of courts, including the Sixth Circuit Court of Appeals, narrowly interpreted

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Firestone* to find that "employees cease to be 'participants' in a plan when they effectively terminate all their rights under [that] plan." *See, e.g. Teagardener v. Republic-Franklin Inc. Pension Plan,* 909 F.2d 947 (6th Cir.1990) (finding that the definition of "participant" must exclude retirees who have accepted the payment of everything else due them in a lump sum because they "have already received the full extent of their benefits and are no longer eligible to receive future payments."); *Joseph v. New Orleans Elect. Pension and Retirement Plan,* 754 F.2d 628, 630 (5th Cir.1985) (retirees who have received lump-sum payouts are not "participants" because they "... have already received the full extent of their benefits and are no longer eligible to receive future payments. Such retirees have no present or future right to Plan funds, and the Plan no longer has any obligation to these individuals."); *Kuntz v. Reese,* 785 F.2d 1410 (9th Cir.1986) (plaintiffs were not participants because "as former employees whose vested benefits under the plan have already been distributed in a lump sum, the Kuntz plaintiffs were not 'eligible to receive a benefit,' and were not likely to become eligible to receive a benefit, at the time that they filed suit.").

In *Swinney v. Gen. Motors Corp.,* however, the Sixth Circuit, finding such a strict interpretation to be contrary to ERISA's stated purpose of protecting employees' rights, reconsidered the issue. 46 F.3d 512, 518 (6th Cir.1995). In *Swinney,* plaintiffs, former General Motors ("GM") *756 employees, sued GM, alleging that the company had breached its fiduciary duties under ERISA, and should, therefore, be estopped from denying plaintiffs certain benefits. *Id.* Because the plaintiffs had already both severed their employment with GM and taken lump-sum payouts, defendants argued that under *Firestone,* Plaintiffs had no standing to bring suit. *Id.* at 517-18. Though, under a narrow reading of *Firestone,* defendants' argument had merit, the *Swinney* court reassessed *Firestone,* and reasoned:

[s]ince our decision in *Teagardener,* however, we have noted that the Supreme Court's definition of the ERISA term "participant" was developed outside of the standing context ... In determining who is a 'participant,' for purposes of standing, the definition found in 29 U.S.C. § 1002(7) must be read *in the context of traditional concepts of standing,* not in the context of adjudicating the ultimate issue of the merits of the plaintiffs' claim ... Thus, while the Supreme Court's definition of "participant" in *Firestone* guides our standing analysis, it is not necessarily dispositive.

46 F.3d at 518 (emphasis added).

Thus, the *Swinney* court developed what has been termed a "but for" exception to the general rule that a person who terminates his right to belong to an ERISA plan can no longer be considered a "participant" in that plan. *Id.* at 518. The court held that under the exception, "if the employer's breach of fiduciary duty causes the employee to either give up his right to benefits or to fail to participate in a plan, then the employee has standing to challenge that fiduciary breach." *Id.*[FN6] After *Swinney,* therefore, this Court finds that an analysis of whether Bridges constitutes a "participant" must be based on more than just a rote application of the *Firestone* analysis.

FN6. The First, Second, Fifth, and Eighth Circuits have each adopted the "but for" approach employed by the Sixth Circuit in *Swinney. See Vartanian v. Monsanto Co.,* 14 F.3d 697, 702-03 (1st Cir.1994); *Mullins v. Pfizer, Inc.,* 23 F.3d 663, 667-68 (2d Cir.1994); *Christopher v. Mobil Oil Corp.,* 950 F.2d 1209, 1220-21 (5th Cir.1992); *Adamson v. Armco, Inc.,* 44 F.3d 650, 654-55 (8th Cir.1995). The Fourth, Tenth, and Eleventh Circuits, however, adhere to a "contemporaneous ownership rule," rejecting the "but for" approach. *See Stanton v. Gulf Oil Corp.,* 792 F.2d 432, 433 (4th Cir.1986); *Raymond v. Mobil Oil Corp.,* 983 F.2d 1528, 1535 (10th Cir.1993); *Sanson v. Gen. Motors Corp.,* 966 F.2d 618, 619 (11th Cir.1992).

### 2. Plaintiff's Arguments

As a threshold matter, Plaintiff concedes that the only *Firestone* category in which he fits is as a claimant with a "colorable claim for vested benefits." *See* Hrg. Tr. at 7. Where Bridges' suit is rooted in his assertions that Defendants breached their ERISA fiduciary duties, there is no doubt that Bridges' claim is "colorable." *See Kennedy v. Connecticut Gen. Life Ins. Co.,* 924 F.2d 698, 700 (7th Cir.1991) ("the requirement of a colorable claim is not a stringent one .... 'jurisdiction depends on an arguable claim, not on success' and that only if 'any claim ... must be frivolous is this jurisdiction lacking.' "); *see also, Sladek v. Bell Sys. Mgmt. Pension Plan,* 880 F.2d 972, 976-79 (7th Cir.1989); *Andre v. Salem Tech. Servs.,* 797 F.Supp. 1416, 1421 (N.D.Ill.1992) (a claim based on violations of ERISA is clearly rooted in existing ERISA law). Thus, the focus becomes

whether Bridges has a viable claim for vested benefits. In other words, if: (1) he will prevail in a suit for benefits; or (2) eligibility requirements will be fulfilled in the future. See Firestone, 489 U.S. at 117-18, 109 S.Ct. 948.

### a. Standing at the Time of Filing

[2] Plaintiff first asserts that to have standing as a class representative, he need *757 only have been a plan "participant" at the time the lawsuit was filed. See Pl.'s Reply at 4. Plaintiff bases his argument on Morrison v. Marsh & McLennan Cos., Inc. See 439 F.3d 295 (6th Cir.2006). In Morrison, plaintiff, the widow of a former employee of defendant, Marsh & McLennan Companies, Inc. ("M & M"), sued the company pursuant to ERISA § 502(c)(1) claiming that she was entitled to portable life insurance benefits for coverage that her husband had been denied shortly after he had resigned his position, plus statutory penalties for each day M & M had failed to provide her with requested plan documents. Id. at 298-99. Plaintiff premised her § 502(c)(1) claim for penalties on the assumption that M & M was obligated to provide her with the plan documents she requested. Id. The Morrison court found, however, that because plaintiff was neither a plan "participant" nor a plan "beneficiary," she had no standing to sue for relief. Id. at 303. Quoting Firestone, the court explained that an ERISA "participant" is a "former employee that has ... a colorable claim to vested benefits," and noted that a "colorable claim to vested benefits" is defined as,

a reasonable claim that (1) a person will prevail in a suit for benefits or that (2) eligibility requirements will be fulfilled in the future[, where e]ligibility is determined at the time that the lawsuit is filed.

Id. (citing Firestone, 489 U.S. at 117, 109 S.Ct. 948) (emphasis added).

Plaintiff premises his entire argument here on the single line of dicta presented above-"eligibility is determined at the time the lawsuit is filed." 439 F.3d at 202. The Court, however, finds Plaintiff's reasoning unpersuasive. First, unlike Bridges, who is purportedly seeking to recover value on behalf of the Plan, the plaintiff in Morrison brought an individual cause of action for benefits under her deceased husband's life insurance plan. Whether she was supposed to receive the plan documents she requested depended on whether she was a "participant" at the time, and her entitlement to recovery under the relevant ERISA statute depended on her standing *at the historical time*. Second, in addition to the obvious factual distinctions, in this case, the question of whether Plaintiff has standing is unrelated to his eligibility at the time he filed suit. It is uncontroverted that Plaintiff was eligible for benefits *at the time* he brought suit; the question, however, is whether his eligibility continues in the face of his Plan divestment.

### b. Standing During the Wrongdoing

[3] Finding Plaintiff's first argument to be without merit, this Court turns to Plaintiff's second argument, which posits that under Drennan v. General Motors Corp., standing to bring suit is determined at the time of the alleged wrongdoing. 977 F.2d 246 (6th Cir.1992). In Drennan, plaintiffs, a class of former General Motors ("GM") who had been laid off when GM closed its Norwood, Ohio plant, sued defendants, GM, alleging that GM had breached its ERISA fiduciary duties by making material misrepresentations to plaintiffs regarding the terms of their buyout. Id. At the time of the layoff, GM had two severance plans in effect: (1) the Supplemental Unemployment Plan Separation ("SUB Buyout"), which offered each class member a lump sum payment in consideration for his agreement to voluntarily forfeit his seniority status, employment status and layoff status with GM; and (2) the Voluntary Separation of Employment Program ("VTEP"), which offered each class member a substantially *larger* lump-sum payout in consideration for an employee's agreement to terminate his employment with GM, forfeit his senior status, and relinquish all vested retirement benefits and post-retirement health care benefits. Id. at 248. Before deciding to accept the *758 SUB buyout, plaintiffs questioned plant management about their right to participate in the VTEP. Id. Though management was allegedly considering the option of plaintiffs' participation in VTEP, they told plaintiffs that they had already decided that the VTEP would be unavailable to plaintiffs. Id. Thus, relying on management's statement, plaintiffs opted for the SUB Buyout. Id. Shortly after plaintiffs cashed out, however, management announced that the more lucrative VTEP option would be available to *all* GM employees with ten or more years of seniority. Id. The crux of plaintiffs' suit was their allegation that GM had misled them into believing that VTEP would remain unavailable, and, therefore, had prevented them from collecting more money upon their termination. Id.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Initially, GM argued that, under *Firestone,* the plaintiffs had no standing to participate in the VTEP during the period in controversy, and, therefore, GM had no fiduciary responsibility to them. *Id.* at 250. The *Drennan* court disagreed, and found that because the class-members were "eligible to participate in the employee benefit plan," they had standing to bring this suit under ERISA, explaining:

VTEP was a buy-out by GM, of the Class members' vested benefits, including their pension plans. The Class members were eligible for such a plan at the time the asserted breach of fiduciary duty occurred and had no future eligibility requirements to fulfill. Contrary to GM's contentions that the pronouncements of *Firestone* ... limited ERISA standing to employees with vested employee benefits, the *Firestone* Court addressed only the *disclosure requirements* of ERISA, 29 U.S.C. [§ ] 1024(b)(4) as they *applied to former employee participants* and explicitly expressed no view "as to whether the [former employees] were 'participants' with respect to the benefit plans to which they sought information." *Firestone,* 489 U.S. at 118, 109 S.Ct. 948.

*Id.* at 250 (emphasis added).

Plaintiff asserts that the above language demonstrates that in the Sixth Circuit, an ERISA plaintiff need only be a "participant" during the time the alleged wrong took place. He argues that because he was a plan participant throughout the purported class period, he has standing to sue for relief despite his decision to cash out in 2004. This Court finds Plaintiff's reliance on *Drennan* unpersuasive. At the outset, the cases are factually distinguishable. Where the *Drennan* plaintiffs would have chosen the VTEP if not for GM's alleged misrepresentations, in this case, Plaintiff chose to divest himself regardless of any alleged wrongdoing by Defendants during the proposed Class Period. Also, though the *Drennan* plaintiffs sued defendants *after* they had accepted the SUB Buyout, Bridges sued Defendants *before* he cashed out. And, where the *Drennan* plaintiffs were unaware of GM's alleged fraud until *after* they had already lost their plan holdings, Plaintiff knew of AEP's alleged wrongdoing *before* he decided to "roll out."

The Court also disagrees with Plaintiff's assertion that *Drennan* proposes that one need only be a "participant" at the time of wrongdoing. *Drennan* actually posits that where a plaintiff relies on a defendant's misrepresentations in divesting himself of his participant status, he remains eligible to sue defendant for making those representations. Thus, *Drennan,* falls into the category of a *Swinney* "but for" case, wherein courts award former participants standing to sue if "but for" defendant's wrongdoing, plaintiffs would have retained their participant status. Bridges, however, cashed out of the Plan of his own volition, and concedes that he does not fit the "but for" exception. Therefore, stripped of the "but for" exception, Plaintiff*759 is covered by the general rule that former employees who have received the full benefits to which plan documents entitled them are no longer "participants" of the plan. See *Teagardener,* 909 F.2d at 952.

### 3. Standing Despite Divestment

Aside from cases employing the "but for" exception, the Sixth Circuit has not considered the issue of whether a party who has divested himself of his plan holdings loses standing to prosecute the action.[FN7] Courts in other circuits have considered this question and provide guidance.

FN7. Plaintiff relies on two cases, which he argues demonstrate that some federal courts allow standing to a class representative who has divested himself of his plan holdings before bringing suit for a claim on behalf of an ERISA plan. See *Rankin v. Rots,* 220 F.R.D. 511 (E.D.Mich.2004) (finding that plaintiff who divested herself of her Plan holdings had standing to sue for defendants' alleged breaches of fiduciary duty occurring while she was still a plan participant); *In re Mutual Funds Investment Litig.,* 403 F.Supp.2d 434 (D.Md. Dec.6, 2005) (finding that despite plaintiff's "roll-out," he had standing to sue defendants for their alleged breaches of fiduciary duty). This Court, however, finds these cases distinguishable in that where Bridges divested himself of his Plan holdings *after* he had already filed suit, both the *Rankin* and the *Mutual Funds* plaintiffs divested themselves *before* filing suit. Further, both *Rankin* and *Mutual Funds* are "but for" cases. *See, e.g. Swinney,* 46 F.3d at 518. Hence, unlike the *Rankin* and *Mutual Funds* plaintiffs, who were unaware of the nature of defendants' fraud at the time they "rolled out," when Bridges divested himself of his Plan holdings, he did not think he was receiving the full value of his Plan holdings. In fact,

in bringing suit, he had already affirmed his belief that Defendants had committed misdeeds. Thus, although this Court shares the concerns of both the *Rankin* and *Mutual Funds* courts that ERISA Plan members should not have to forfeit a cause of action by divesting themselves when they were unaware they were being wronged, these cases are inapposite.

*Crawford v. Lamantia* is particularly instructive. 34 F.3d 28 (1st Cir.1994). In *Crawford,* plaintiff, Crawford, filed a complaint charging defendants, trustees of the Arthur D. Little, Inc. ("ADL") Employee Stock Ownership Plan and Trust (the "ESOP"), with a breach of their fiduciary duties under ERISA. 34 F.3d at 30. While Crawford was an employee and an ESOP participant, ADL carried out a "going-private" transaction whereby ADL: (1) acquired all outstanding publicly held shares of ADL stock; (2) canceled all existing shares of ADL stock; (3) reissued "New Shares"; and (4) sold a portion of those New Shares to the ESOP with a $32.8 million loan from ADL, which, in turn would receive bank financing. *Id.* at 30.

Shortly after ADL carried out its "going-private" transaction, ADL informed Crawford, that he would be terminated due to budget cuts. *Crawford,* 34 F.3d at 30. Crawford subsequently negotiated an extension of his salary and benefits until March 24, 1989 to be followed by an "unpaid leave of absence." *Id.* On May 12, 1989, Crawford filed his original *pro se* complaint, and resigned from ADL effect May 18, 1989. Approximately one year after terminating his employment with ADL, Crawford elected to "receive his total vested distribution from the ESOP." *Id.* at 30-31. After "rolling out" his ESOP holdings, however, Crawford hired an attorney and filed an amended complaint asserting a purported class action for "recovery on behalf of the ESOP for breach of fiduciary duty for Trustees' failure to act for the exclusive benefit of the participants and the beneficiaries of the ESOP plan." *Id.* at 31.

The district court granted the ADL defendants' motion for summary judgment, explaining that Crawford lacked standing to pursue his ERISA claim in that: (1) he *760 was not a current employee throughout the litigation, and (2) he had failed to present a "colorable claim for benefits," and Crawford timely appealed. 34 F.3d at 31. On appeal, Crawford argued that "he ha[d] a colorable claim to [vested] benefits as a former employee because 'but for' defendants breach of duty, he would have received additional, vested benefits at the time he received his lump sum payment from the ESOP." *Id.* The First Circuit disagreed, and held that because by the time of Crawford's amended complaint, he had already terminated his employment and collected all vested benefits due him from ESOP, he no longer had a claim for vested benefits. *Id.*

Bridges' claim is distinguishable from Crawford's. First, Bridges, unlike Crawford, was not *terminated;* he retired of his own free will. Second, Bridges filed the Complaint *prior* to cashing out of the Plan; Crawford divested himself of his ESOP shares before he filed his amended complaint. Third, where Bridges' claim is based upon his assertions that Defendants made material misrepresentations about the viability of the Fund and failed to prudently invest his Plan shares, Crawford based his claim on an allegedly imprudent "going-private transaction" pursuant to which ESOP Trustees had bought an excessive number of ADL common stock shares. These distinctions, however, do not detract from *Crawford's* proposition that a plaintiff who divests himself of his plan holdings after bringing suit has already collected all vested benefits due to him under the plan.

**4. Plaintiff's Claim is Too Speculative to Amount to a Legitimate Claim for "Vested Benefits"**

[4] Under ERISA, to be a participant eligible for benefits, a claimant must have a colorable claim that he will prevail in a suit for benefits, or that eligibility requirements may be fulfilled in the future. *See Firestone,* 489 U.S. at 117-18, 109 S.Ct. 948. Thus, if Plaintiff has a legitimate claim for vested benefits, he has standing irrespective of his divestment. *Id.; see, e.g., Swinney,* 46 F.3d at 518 (explaining the "but for" exception and noting that a plaintiff who has divested himself of his plan holdings because of actions by the defendant has standing if he can show that he will prevail in a suit for benefits or that eligibility requirements will be fulfilled in the future); *see also, Rankin,* 220 F.R.D. at 511 (finding that plaintiff who divested herself of her plan holdings still had a colorable claim for vested benefits).

Bridges seeks to recover a share of the value of the Plan, which was allegedly lost due to Defendants' alleged wrongdoing. Bridges asks the Court to compensate the Plan, and therefore, all Participants, for the value their shares lost due to Defendants' allegedly imprudent investing, but he cannot identify that value. Many courts have deemed similar

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

requests for "lost value" to be too speculative to amount to a legitimate claim for "vested benefits." See, e.g., Crawford, 34 F.3d at 31 (plaintiff's request that the court use its "equitable powers" to allocate funds to him and other ESOP members who were "cashed out" after defendants' going-private transaction did not establish the value the ESOP lost in the transaction and was deemed to speculative to amount to a legitimate claim for "vested benefits"); Kuntz, 785 F.2d at 1411 (finding plaintiffs were not plan participants "[b]ecause, if successful, the plaintiffs' claim would result in a *damages* award, not in an increase of *vested benefit*") (emphasis added); Yancy v. Am. Petrofina, 768 F.2d 707, 709 (5th Cir.1985) (the plaintiff's claim for a sum that could not have been earned "cannot be considered as vested under ERISA"); LaLonde v. Textron, Inc., 418 F.Supp.2d 16 (D.R.I.2006) (finding that where plaintiffs did not claim that certain benefits were *761 withheld or miscalculated, but rather, that Defendants' improper investment decisions concerning defendants' stock resulted in diminished plan value, their claim was not a claim for vested benefits); Hargrave v. TXU Corp., 392 F.Supp.2d 785 (N.D.Tex.2005) (plaintiffs' allegations that the plan had been undervalued was a claim for "additional damages that *might have* accrued but for the Defendants' alleged misconduct"; these damages are too speculative to be considered "vested" under ERISA).

In Kuntz v. Reese, plaintiffs, former plan-holders who had already divested themselves of their plan holdings, sued defendants alleging that defendants had misled them as to the amount of benefits properly due under the plan. 785 F.2d at 1411. The Ninth Circuit found that, "because, if successful, the plaintiffs' claim would result in a *damages award*, not in an increase of vested benefits, they [we]re not plan participants." Id. (emphasis added). The Kuntz court explained that rather than allege that their vested benefits were improperly computed, plaintiffs alleged that defendants had breached their "duty to disclose information about benefits." Id. Thus any recoverable damages they would receive in addition to the lump-sum payout they had received upon cashing out their plan holdings, would *not* be "benefits from the plan." Id.

In Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan, the Fifth Circuit expanded upon the Kuntz court's distinction between damages and vested benefits. See 883 F.2d 345, 349-50 (5th Cir.1989). In Sommers, the alleged class of plaintiffs filed an ERISA lawsuit alleging that the defendants had breached their fiduciary duties with respect to the sale of company stock held by the company's qualified employee benefits plan. Id. at 347. Specifically, the plaintiffs alleged that the defendants sold the plan's shares of stock in connection with the liquidation and distribution of plan assets, for a price far below the fair market value. Id. at 350. In other words, plaintiffs asserted that the amount of money received and distributed to plan participants pursuant to the stock sale, did not reflect the full value of benefits due under the terms of the plan. Id.

In determining whether plaintiffs had standing to sue as ERISA participants, the Sommers Court noted that the line between "vested benefits" and "damages" is not always clear. Id. at 349. Thus, the court attempted to articulate the distinction as follows: an allegation that benefits were wrongly computed clear states a claim for *vested benefits;* on the other hand, a claim for an unascertainable amount, with no demonstration that recovery would directly effect payments to the plaintiff, states a claim for damages. Id. at 349-50.[FN8] Applying its distinction, the Sommers court reasoned that plaintiffs had essentially stated a claim for the unpaid value of vested benefits (i.e. the value not reflected in the stock's selling price), which were due upon the distribution of *762 plan assets. Id. at 350. Thus, the court found the claim "close to a simple claim that benefits were miscalculated," and held that plaintiffs were "participants," having standing under ERISA. Id.

---

FN8. The Sommers court stated:
The distinction between "benefits" and "damages" is not clear. This is in part attributable to use of words with overlapping meaning to describe mutually exclusive categories. The statute simply grants rights of recovery only to a distinct and limited type of claim which itself is no more than a suit for damages, albeit personally suffered because participants should have been paid under the plan but were not. Clearly, a plaintiff alleging that his benefits were wrongly computed has a claim for vested benefits. Payment of the sum sought by such a plaintiff will not increase payments due him. On the other hand, a plaintiff who seeks the recovery for the trust of an unascertainable amount, with no demonstration that the recovery will directly effect payment to him, would state a claim for damages, not benefits.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Sommers,* 883 F.2d at 349-50.

In this case, Bridges has alleged breaches of fiduciary duties with respect to Defendants' alleged misrepresentations regarding shares of AEP stock purchased and held by the Plan over the course of the class period. Bridges has already received a lump-sum payment of his shares, and he now seeks *added value,* which he claims was lost due Defendants' wrongdoing. Hence, like plaintiffs' claims in both *Kuntz* and *Sommers,* Plaintiff's claims lies somewhere between the two categories of "vested benefits" and "damages." Plaintiff's requested relief, however, is more similar to the *Kuntz* plaintiff's abstract claim for "lost value" than the *Sommers* plaintiffs' less speculative claims for "miscalculated benefits." Plaintiff is not alleging that a portion of his benefits was withheld by Defendants improperly. Instead, he asserts a right to "a sum that possibly could have been earned if Defendants had made prudent investment decisions." *See also, Hargrave,* 392 F.Supp.2d at 790. These additional damages that *might have* accrued, however, are too speculative to be considered vested under ERISA. *Id.* Thus, this Court will adhere to the rule in *Kuntz* that because Plaintiff's claim is akin to one for *damages* as opposed to greater *benefits,* by divesting himself of his Plan holdings, Plaintiff also divested himself of his participant status.

In enacting ERISA, Congress intended to protect the "interests of participants in employee benefit plans ... by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans." 29 U.S.C. § 1001(b). As a former participant of the Plan suing for damages, Bridges falls between the cracks of those with Congressionally conferred standing under ERISA. Thus, to qualify, Bridges must demonstrate that he has either a reasonable expectation of returning to covered employment or a colorable claim for vested benefits. *See Firestone,* 489 U.S. at 117-18, 109 S.Ct. 948. He has done neither. This Court finds, therefore, that Bridges lacks standing under ERISA § 502(a)(2) to pursue his claim on behalf of the Plan.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Class Certification is **DENIED,** and Plaintiff's claims are dismissed without prejudice.

**IT IS SO ORDERED.**

S.D.Ohio,2006.
In re AEP Erisa Litigation
437 F.Supp.2d 750, 38 Employee Benefits Cas. 1467

Briefs and Other Related Documents (Back to top)

• 2006 WL 1758168 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for a Protective Order (May 1, 2006) Original Image of this Document (PDF)
• 2006 WL 1629425 (Trial Motion, Memorandum and Affidavit) Plaintiff Selena Plentl's Motion for a Protective Order and Memorandum in Support Thereof (Apr. 25, 2006) Original Image of this Document (PDF)
• 2006 WL 1111919 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion to Compel Production of Documents in Response to Plaintiffs' Third Request for Production of Documents and Memorandum in Support Thereof (Mar. 2, 2006) Original Image of this Document (PDF)
• 2005 WL 3659962 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply to Defendants' Response to Plaintiffs' Motion for Class Certification (Nov. 22, 2005) Original Image of this Document (PDF)
• 2005 WL 3659961 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Memorandum of Law in Further Support of Motion to Strike Class Action Allegations and to Stay Further Merits Discovery Pending Resolution of the Class Action Issues (Nov. 14, 2005) Original Image of this Document (PDF)
• 2005 WL 3144920 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to Defendants' Motion to Strike Class Action Allegations and to Stay Further Merits Discovery and in Support of Plaintiffs' Motion to Compel Attendance at Plaintiffs' Rule 30(b)(6) Deposition (Oct. 31, 2005) Original Image of this Document (PDF)
• 2005 WL 3145517 (Trial Motion, Memorandum and Affidavit) Defendants' Motion to Strike Class Action Allegations and to Stay Further Merits Discovery Pending Resolution of the Class Action Issues (Oct. 6, 2005) Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.