# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - -X
             :

In Re:                                         :                   Master File No.
                                         :                   03 Civ. 8335 (WHP)

POLAROID ERISA LITIGATION
                                       :                   MEMORANDUM AND ORDER
- - - - - - - - - - - - - - - - - - - - - - - - - - - -X
             :

This Document Relates to:
ALL ACTIONS                          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, District Judge:

        Plaintiffs Robert Correia ("Correia"), Bradford Pires ("Pires") and Otis Powers

("Powers") (collectively, "Plaintiffs") bring this putative class action pursuant to the Employee

Retirement and Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001, et

seq., alleging various breaches of fiduciary duty concerning the Polaroid Retirement Savings

Plan (the "Plan"). On March 31, 2005, this Court issued a Memorandum and Order denying

Defendants' motion to dismiss except with respect to Plaintiffs' claim that Defendants breached

their fiduciary duties by failing to avoid conflicts of interest (the "March 31 Order").[1] In re

Polaroid ERISA Litigation, 362 F. Supp. 2d 461 (S.D.N.Y. 2005). Plaintiffs now move to certify

a class pursuant to Fed. R. Civ. P. 23. For the reasons set forth below, Plaintiffs' motion is

granted.

---

[1] The Defendants are former Polaroid Plan fiduciaries Andra Bolotin, Judith G. Boynton,
Benjamin C. Byrd III, Janet B. Cramer, Gary DiCamillo ("DiCamillo"), Deirdre J. Evens,
William L. Flaherty, Neal D. Goldman, Harvey Greenberg, Donald M. Halsted III, William
Hubert, John Jenkins, Warren Kantrowitz, Carl L. Lueders, Jeffrey S. Miller, Ralph Norwood,
Philip Ruddick, and Patricia R. Weller (all of these individuals collectively the "Individual
Defendants") and Plan trustee State Street Bank and Trust Company ("State Street"). On July
11, 2006 Plaintiffs filed a Motion for Preliminary Approval of a partial settlement reached with
the Individual Defendants. That motion is currently before this Court sub judice, and does not
affect the decision of Plaintiffs' previously filed motion for class certification.

BACKGROUND

I.    Summary of Plan Terms

Familiarity with the March 31 Order is assumed.  The Plan comprised various

components, of which only the 401(k) and Employee Stock Ownership Plan ("ESOP") are

relevant for purposes of this motion.  (Declaration of Ryan Pierce, dated Oct. 24, 2005 ("Pierce

Decl.") Ex. B: Plan.)  Participants in the 401(k) portion of the Plan could direct a portion of their

compensation into any of 38 investment funds, including the Polaroid Stock Fund, which

consisted of Polaroid stock.  (Declaration of William Hubert, dated Oct. 19, 2005 ("Hubert

Decl.") ¶¶ 2-3, Ex. A: Plan Booklet.)  Participants in the 401(k) had no obligation to invest in the

Polaroid Stock Fund.  (Pierce Decl. Exs. A, B.)  The Employee Stock Ownership Plan ("ESOP")

portion of the Plan was funded entirely by Polaroid and was to invest "primarily" in Polaroid

common stock.  (Pierce Decl. Ex. B.)  Nonetheless, three categories of ESOP participants could

fully diversify and/or liquidate their ESOP accounts:  (1) participants who had left the company;

(2) participants on disability; and (3) participants over 59.5 years old.  (Pierce Decl. Ex. B;

Hubert Decl. ¶ 2.)


II.    The Parties' Relationships

Plaintiffs are former Polaroid employees and former Plan participants.

(Declaration of Amy Williams-Derry, dated Nov. 28, 2005 ("Derry Decl.") Exs. 9-11:

Transcripts of Depositions of Correia, Pires and Powers.)  Plaintiff Correia, along with thousands

of other employees, left Polaroid in the period between 1999 and 2001.  (Declaration of Harvey

Greenberg, dated Oct. 18, 2005 ("Greenberg Decl.") ¶¶ 2-3.)  Many of the departing employees

2

were provided with severance packages, and a majority signed release forms which purported to

release all claims against Polaroid except for claims "for vested accrued benefits" under the Plan.

(Pierce Decl. Ex. U: Correia Termination Letter; Greenberg Decl. ¶¶ 4-7, Ex A: Termination

Letter, Release and Acknowledgement.)  Correia was among those who executed a release,

which provided, in relevant part:

> [Y]ou agree to release all claims you may have against [Polaroid],
> [the Plan] . . . and their directors, trustees, officers, shareholders,
> employees, agents, administrators, successors and assigns,
> including, but not limited to, any claims arising out of or in
> connection with your employment by [Polaroid] or the termination
> of your employment . . . . This release will not preclude claims . . .
> for vested accrued benefits under the . . . [Plan] or benefits of this
> Program as determined by the plan administrators of such Plan[]."

(Pierce Decl. Ex. U.)


III.    The Deterioration of Polaroid's Stock Price

At the beginning of the Class Period, Polaroid stock traded at $25.88 per share.[2]

(Amended Consolidated Complaint, dated Sept. 15, 2004 ("Compl." or "Complaint") ¶ 120.)

However, throughout the Class Period, Polaroid's financial position deteriorated and its stock

price declined.  By November 2001, Polaroid stock traded at $0.24 per share.  (Compl. ¶ 206.)

In December 2001, State Street divested the ESOP of Polaroid stock for an average price per

share of $.0946.  (Compl. ¶ 206.)  The Polaroid Stock Fund was liquidated in December 2002 for

an average price per share of approximately $.01.  (Compl. ¶ 206.)  The scale of these losses was

massive – at the end of 1999, the Plan held over seven million shares of Polaroid common stock,

valued at $138,346,897.  By the end of 2000, the number of Polaroid shares held by the Plan had

---

[2] The "Class Period" is the period between October 1, 1999 and January 15, 2003.  (Compl. ¶ 84.)

increased slightly, but the total value of those shares had plummeted to $45,745,761. (Compl. ¶ 82.)

On August 15, 2002, Polaroid's Board of Directors passed a resolution to terminate the Plan and all Plan assets were distributed. (Declaration of Kevin R. Pond, dated Oct. 19, 2005 ("Pond Decl.") ¶ 4; Ex. C: Minutes of Aug. 15, 2002 Board Meeting.) The parties dispute whether the Plan has since been terminated. (Declaration of Derek W. Loeser, dated Nov. 7, 2005, Ex. 3: Letter from Internal Revenue Service, dated Oct. 9, 2003.)

## DISCUSSION

Plaintiffs' basic allegation is that Defendants breached their fiduciary duties by maintaining the Plan's investments in Polaroid common stock despite (1) their knowledge of certain accounting irregularities; and (2) the precipitous decline in price that the stock had taken. Plaintiffs also claim that DiCamillo failed to monitor other Plan fiduciaries, that Defendants made misleading statements to Plan participants and failed to keep them adequately informed, and that all Defendants are liable for the actions of their co-fiduciaries. Plaintiffs move to certify the following class:

> All persons who were participants in or beneficiaries of the Plan at any time between October 1, 1999 and January 15, 2003 (the "Class Period") and whose accounts included investments in Polaroid Stock.

> Defendants argue that Plaintiffs lack standing to sue under ERISA and, in any

event, cannot satisfy the requirements of Fed. R. Civ. P. 23. This Court considers each of these issues in turn.

I.     Statutory Standing Under ERISA

        ERISA actions seeking damages for breach of fiduciary duty can be brought only

by certain parties under specified conditions. 29 U.S.C. § 1132(a) (titled "Persons empowered to

bring a civil action") provides, in relevant part: "A civil action [for breach of fiduciary duty]

may be brought . . . (2) by the Secretary, or by a participant, beneficiary, or fiduciary for

appropriate relief under Section 1109 of this title." 29 U.S.C. § 1109 provides, in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches
> any of the responsibilities, obligations, or duties imposed . . . by
> this subchapter shall be personally liable to make good to such
> plan any losses to the plan resulting from each such breach, and to
> restore to such plan any profits of such fiduciary which have been
> made through use of assets of the plan by the fiduciary . . . .

In Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134 (1985), the Supreme Court stated that

claims brought under §§ 1132(a)(2) and 1109 may not be made for individual relief, but instead

are "brought in a representative capacity on behalf of the plan." Russell, 473 U.S. at 142 n.9; see

also Lee v. Burkhart, 991 F.2d 1004, 1009 (2d Cir. 1993) (concluding that Russell bars claims

under § 1132(a)(2) where plaintiffs seek damages on their own behalf and not on behalf of the

plan). Thus, to determine whether Plaintiffs have statutory standing under § 1132(a)(2), this

Court must determine: first, whether Plaintiffs are "participant[s] [or] beneficiar[ies]" of the

Plan for purposes of § 1132(a)(2); and second, whether Plaintiffs are truly suing "in a

representative capacity on behalf of the plan." Russell, 473 U.S. at 142 n.9.

     A.     Plaintiffs' Status as Plan Participants

        29 U.S.C. § 1002(7) defines a "participant" as "any employee or former

employee of an employer . . . who is or may become eligible to receive a benefit of any type

from an employee benefit plan . . . ." In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101,

5

117 (1989), the Supreme Court expanded on the statutory definition: "[T]he term 'participant' is naturally read to mean either employees in, or reasonably expected to be in, currently covered employment . . . or former employees who have . . . a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits."

Plaintiffs admit that they have no reasonable expectation of returning to Polaroid as employees. Thus, Defendants argue that former Plan participants whose accounts have been liquidated by definition cannot have "a colorable claim to vested benefits" and thus may not bring suit under § 1132(a)(2). Firestone, 489 U.S. at 117.

The Second Circuit has declined to apply the Firestone standard rigidly in the context of defining a "participant." See Mullins v. Pfizer, Inc., 23 F.3d 663 (2d Cir. 1994). While acknowledging a circuit split on the issue of whether former employees qualify as "participants," Mullins suggested that "the basic standing issue is whether the plaintiff is 'within the zone of interests ERISA was intended to protect.'" Mullins, 23 F.3d at 668 (emphasis in original) (quoting Vartanian v. Monsanto Co., 14 F.3d 697, 701 (1st Cir. 1994)). Applying the "zone of interests" standard, the Court of Appeals concluded that a former employee had standing as a plan participant because he alleged that "but for the fact that [the defendant] misled him, he would have been a participant." Mullins, 23 F.3d at 667 (internal quotation marks omitted). The court reasoned that it would reap an "anomalous effect" to "allow[] a fiduciary through its own malfeasance to defeat the employee's standing." Mullins, 23 F.3d at 668 (internal quotation omitted); see also Christopher v. Mobil Oil Corp., 950 F.2d 1209, 1221 (5th Cir. 1992) (allowing former employee to maintain a claim where he alleged that but for defendant's misconduct, he would still be an employee); but see Raymond v. Mobil Oil Corp.,

6

983 F.2d 1528, 1536-37 (10th Cir. 1993) (rejecting "but for" standard as inconsistent with

Firestone); Stanton v. Gulf Oil Corp., 792 F.2d 432, 435 (4th Cir. 1986) (same).

        The issue in Mullins was whether a defendant could take advantage of its own

wrong to avoid suit under ERISA where it had fraudulently induced a plaintiff to liquidate his

plan account in order to deprive him of benefits to which he would otherwise have been entitled.

However, where the alleged misconduct is less directly linked to plaintiff's decision to terminate

his involvement with the plan, the weight of authority in this circuit still allows former employee

claims to proceed.  See Gray v. Briggs, No. 97 Civ. 6252 (DLC), 1998 WL 386177, at *4-6

(S.D.N.Y. July 7, 1998) (concluding in the context of a claim under § 1132(a)(1) that a former

employee who alleged that distributions received under a defined contribution plan were reduced

because of defendants' breach of fiduciary duty was a "participant" for purposes of ERISA, and

noting approvingly the breadth of the Second Circuit's holding in Mullins); Richards v.

FleetBoston Fin. Corp., 235 F.R.D. 165 (D. Conn. 2006) (finding that former employees who

had liquidated their plan accounts but who sought benefits to which they would have been

entitled prior to retirement were "participants"); O'Connell v. Kenney, No. 03 Civ. 0845 (DJS),

2003 WL 22991732, at *3-4 (D. Conn. Dec. 15, 2003) (holding that the beneficiary of a former

account-holder had standing where the account-holder had received a lump sum payment but

alleged that the amount of the payment had been miscalculated); cf. Dickerson v. Feldman, 426

F. Supp. 2d 130, 135 (S.D.N.Y. 2006) (dismissing putative class action brought under §

1132(a)(2) by a lone former employee who accepted a final distribution of a plan account prior to

filing suit and who alleged misconduct that was already publicly disclosed at the time of the

account's liquidation).

Moreover, although the Second Circuit recently declined to address the issue of whether former employees have standing to sue under § 1132(a)(2), see Coan v. Kaufman, 457 F.3d 250, 255 (2d Cir. 2006), in doing so it noted in dicta that a former employee's claim that a lump sum distribution of a defined contribution account balance would have been greater absent the defendants' breach of fiduciary duty is "[a]rguably . . . [a claim] for benefits – which, if colorable, means that she may become eligible for benefits and thus qualif[y] as a participant under ERISA." Coan, 457 F.3d at 255-256 (internal citations and quotation marks omitted); see also Gray, 1998 WL 386177, at *4-6.

In this action, Plaintiffs do not allege that they would still be Plan participants but for defendants' misconduct. However, they do allege that the distributions they received under a defined contribution plan were reduced because of defendants' breaches of fiduciary duty and that the defendants engaged in numerous misrepresentations and non-disclosures prior to the liquidation of their accounts. See, e.g., Complaint ¶¶ 4-6, 82-83, 121-126, 143-157, 163-180, 192-208. Plaintiffs are also within the zone of interests ERISA was intended to protect. See Gray, 1998 WL 386177, at *4-6 (applying zone of interests test to encompass a former employee); Burke v. Gregory, 356 F. Supp. 2d 179 (N.D.N.Y. 2005) (same). Accordingly, this Court finds that Plaintiffs have standing to sue as Plan "participants" under § 1132(a)(2) despite their status as former employees.

B.     Bringing Suit in a "Representative Capacity"

Defendants argue that Plaintiffs fail to bring their claims "in a representative capacity on behalf of the plan" because (1) the Plan no longer exists, and thus cannot realize any benefits from the suit; and (2) the putative class consists only of those Plan participants whose accounts were invested in Polaroid stock. Moreover, Defendants argue that even if Plaintiffs'

8

claims are brought on behalf of the Plan, the Complaint does not satisfy the pleading

requirements of Fed. R. Civ. P. 23.1 and accordingly must be dismissed.  These arguments are

without merit.

1.    Existence of the Plan

Russell requires suits under § 1132(a)(2) to be brought "in a representative

capacity on behalf of the plan."  473 U.S. at 142 n.9.  There is a factual dispute regarding the

date on which the Plan was finally dissolved, and in particular whether that occurred before or

after the filing of this action.  (See Letter from Steven F. Cherry, dated Nov. 18, 2005; Letter

from Lynn L. Sarko, dated Nov. 28, 2005.)  In any event, as noted, the Second Circuit has stated

that it would be "anomalous" to "allow[] a fiduciary through its own malfeasance to defeat the

employee's standing."  Mullins, 23 F.3d at 668.  And indeed, other courts that have considered

this issue since the Supreme Court's decision in Russell have determined that the dissolution of a

plan should not bar subsequent suits by participants.  See, e.g., Kling v. Fid. Mgmt. Trust Co.,

270 F. Supp. 2d 121, 127 (D. Mass. 2003) ("The fact that the Plan itself no longer exists does not

bar recovery."); Jackson v. Truck Drivers' Union Local 42 Health and Welfare Fund, 933 F.

Supp. 1124, 1136 (D. Mass. 1996) (same); Gruber v. Hubbard, 675 F. Supp. 281, 284 (W.D. Pa.

1987) ("To deny plaintiffs relief [on the basis of an argument that the plan no longer existed]

would reward defendants for the thoroughness of their alleged mismanagement . . . In the

absence of a functioning plan, it is the class of beneficiaries and their rights under this plan

which represent the interests of the plan for the purposes of [§ 1109].").  In light of these

authorities, this Court finds as a matter of law that the dissolution of the Plan – whether it

occurred before or after the filing of this action – cannot insulate Defendants from potential

liability for past breaches of their fiduciary duties.

9

2.    <u>Limitation of the Class to Polaroid Stockholders</u>

Defendants also contend that Plaintiffs are not suing on behalf of the Plan "as a whole" and that their claims are accordingly barred by <u>Russell</u>.  In particular, Defendants argue that because Plaintiffs sue only on behalf of those Plan participants whose accounts were invested in Polaroid stock, any benefits would not accrue to the Plan as a whole, but rather to those individuals who owned Polaroid stock during the Class Period.

Although the Second Circuit has not yet spoken to this issue, Defendants' argument runs against the prevailing grain of authority.  <u>See, e.g.</u>, <u>In re Schering-Plough Corp. ERISA Litig.</u>, 420 F.3d 231, 234-35 (3d Cir. 2005) (holding that where plaintiffs alleged that "the Plan suffered significant losses" and requested that fiduciaries "make good to the Plan the losses to the Plan," they need not "seek[] to recover for all plan participants allegedly injured by the fiduciary breach"); <u>Kuper v. Iovenko</u>, 66 F.3d 1447, 1453 (6th Cir. 1995) (holding that a subclass of plan participants could sue where the remedy sought by plaintiffs "would benefit the plan as a whole and . . . cure any harm that the plan suffered"); <u>Milofsky v. Am. Airlines, Inc.</u>, 442 F.3d 311, 313 (5th Cir. 2006) (per curiam) (declining to dismiss claims by a subset of plan participants who sought to recover losses to a plan); <u>LaRue v. DeWolff, Boberg & Assocs., Inc.</u>, 458 F.3d 359, 363 (4th Cir. 2006) ("[L]iability under [§ 1132(a)(2)] is not limited to losses that accrue to <u>all</u> plan participants – it is, however, limited to plan losses" (emphasis in original).).

In permitting Plaintiffs to proceed, this Court is mindful that the Second Circuit has declined to allow lone plaintiffs or small groups of individuals to sue under § 1132(a)(2). <u>See, e.g.</u>, <u>Strom v. Goldman, Sachs & Co.</u>, 202 F.3d 138, 149 (2d Cir. 1999) (holding that an individual plaintiff could not proceed under § 1132(a)(2) because it affords no remedies to individual beneficiaries); <u>Lee v. Burkhart</u>, 991 F.2d 1004, 1009 (2d Cir. 1993) (noting that

10

"Russell . . . bars [individual] plaintiffs from suing under [§ 1132(a)(2)] because plaintiffs are seeking damages on their own behalf, not on behalf of the Plan."). However, because Plaintiffs assert claims on behalf of a broad class of participants in the Plan, seek damages for injuries suffered by the Plan, and rely on significant weight of authority from outside this Circuit, the Court believes that this case presents distinguishable circumstances.

Defendants' reliance on Fisher v. J.P. Morgan Chase & Co., 230 F.R.D. 370 (S.D.N.Y. 2005) is misplaced. Fisher involved a putative class action in which the court determined that the named plaintiffs lacked standing under § 1132(a)(2) to sue for violations of § 1109 because they asserted claims only on behalf of participants who held shares of the employer's stock and not on behalf of the plan as a whole. However, Fisher was based largely on Strom, Lee and other cases that barred claims by individuals or small groups of plan participants. Fisher also relied heavily on Milofsky v. Am. Airlines, Inc., 404 F.3d 338 (5th Cir. 2005) and In re Schering-Plough Corp. ERISA Litig., 387 F. Supp. 2d 392 (D.N.J. 2004) – both of which were subsequently overturned (Schering-Plough reversed on appeal and Milofsky vacated in a per curiam opinion after a rehearing en banc). See Schering-Plough, 420 F.3d 231; Milofsky, 442 F.3d 311. Therefore, this Court declines to follow Fisher.

      3.     Rule 23.1

The Second Circuit has recently held that the heightened pleading requirements of Rule 23.1 do not apply to plaintiffs in ERISA claims brought under § 1132(a)(2). Coan, 457 F.3d at 257-58 (finding that Rule 23.1 "[b]y its terms . . . does not apply to [§ 1132(a)(2)] suits"). Accordingly, Plaintiffs were under no obligation to comply with Rule 23.1 in this action.

II.    Class Certification Standard

Fed. R. Civ. P. 23 governs class actions. Parker v. Time Warner Entm't Co., 331 F.3d 13, 18 (2d Cir. 2003); accord Benner v. Becton Dickinson & Co., 214 F.R.D. 157, 162 (S.D.N.Y. 2003). The Supreme Court has instructed that district courts are to conduct a "rigorous analysis" to ascertain whether the requirements of Rule 23 have been satisfied. See Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982); accord Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 291 (2d Cir. 1999). Although Rule 23 must be liberally construed, Marisol A. v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997), the party seeking to certify a class bears the burden of establishing the prerequisites of Rule 23. See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997); Caridad, 191 F.3d at 291.

Rule 23 imposes two prerequisites for a class action. First, the party seeking certification must demonstrate that the proposed class meets the four requirements of Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 132-33 (2d Cir. 2001); Caridad, 191 F.3d at 291; Benner, 214 F.R.D. at 162. Second, the party seeking certification must show that the proposed class action falls within one of the types maintainable under Rule 23(b) because: (1) prosecution of separate actions by individual parties would create a risk of either inconsistent adjudications or would be dispositive of the interests of those members not parties to the adjudication; (2) defendants have acted or refused to act on grounds generally applicable to the class; or (3) questions of law or fact common to members of the class predominate, and a class

12

action is superior to other available methods for adjudication. Fed. R. Civ. P. 23(b); Visa, 280

F.3d at 133; Caridad, 191 F.3d at 292; Benner, 214 F.R.D. at 163.

      In considering a motion for class certification, courts must accept the allegations

in the complaint as true. See Shelter Realty Corp. v. Allied Maint. Corp., 574 F.2d 656, 661 n.15

(2d Cir. 1978) ("[I]t is proper to accept the complaint allegations as true in a class certification

motion."); accord Benner, 214 F.R.D. at 163. A court may not examine the merits of the case in

a motion for class certification. Visa, 280 F.3d at 133 (citing Eisen v. Carlisle & Jacquelin, 417

U.S. 156, 177 (1974)); Caridad, 191 F.3d at 291; Bakalar v. Vavra, 237 F.R.D. 59, 63 (S.D.N.Y.

2006). However, a court may consider material outside the pleadings in determining whether

class certification is appropriate. Fox v. Cheminova, Inc., 213 F.R.D. 113, 121-22 (E.D.N.Y.

2003); Kaczmarek v. Int'l Bus. Mach. Corp., 186 F.R.D. 307, 311 (S.D.N.Y. 1999) (citing Sirota

v. Solitron Devices, Inc., 673 F.2d 566, 571 (2d Cir. 1982)). Notwithstanding a court's ability to

look beyond the pleadings, its resolution of a class certification motion may not become "a

preliminary inquiry into the merits of the case." Eisen, 417 U.S. at 177. "In determining the

propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a

cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are

met." Eisen, 417 U.S. at 178 (internal quotation omitted).

    A.    Rule 23(a) Requirements

       1.    Numerosity

      Defendants do not contest that the putative class is numerous. When a class

consists of forty or more members, numerosity is presumed. Consol. Rail Corp. v. Town of

Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995). The proposed class in this action numbers

approximately 8,000 – a number sufficiently high to render joinder of all parties impracticable.

(Declaration of Lynn L. Sarko, dated Sept. 22, 2005 ("Sarko Decl.") ¶¶ 10-11; Exs. 3 & 4: Form

5500 Annual Return/Report of Employee Benefit Plan for 1999 and 2000.) Thus, the putative

class is sufficiently numerous to satisfy the requirements of Rule 23(a). See Koch v. Dwyer, No.

98 Civ. 5519 (RPP), 2001 WL 289972, at *3 (S.D.N.Y. Mar. 23, 2001) (finding putative class of

3,400 members sufficiently numerous in the ERISA context).

　　　　　2.　　Commonality

　　　　　"In general, the question of defendants' liability for ERISA violations is common

to all class members because a breach of a fiduciary duty affects all participants and

beneficiaries." Banyai v. Mazur, 205 F.R.D. 160, 163 (S.D.N.Y. 2002). Defendants do not

contest that the proposed class action raises "questions of law [and] fact common to the class" as

required by Rule 23(a). These issues include whether the Defendants acted as fiduciaries for

purposes of § 1109, what communications they made to members of the class, the truth of those

communications, the state of Defendants' knowledge regarding Polaroid stock, and the actions

(if any) Defendants took to protect the Plan. Accordingly, there are sufficient issues of law and

fact common to the class to justify certification pursuant to Rule 23(a). See Marisol A., 126 F.3d

at 376; In re Global Crossing Sec. and ERISA Litig., 225 F.R.D. 436, 452 (S.D.N.Y. 2004)

(finding allegations that ERISA defendants breached their fiduciary duties in connection with the

administration of an employee benefits plan sufficient to establish common questions of law and

fact).

　　　　　3.　　Typicality

　　　　　Typicality exists where the "claims of [the] representative plaintiffs arise from

[the] same course of conduct that gives rise to claims of the other class members, where the

claims are based on the same legal theory, and where the class members have allegedly been

injured by the same course of conduct as that which allegedly injured the proposed

representatives." In re Oxford Health Plans, 191 F.R.D. 369, 375 (S.D.N.Y. 2000) (citing In re

Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992)). When "the same

[alleged] unlawful conduct was directed at or affected both the named plaintiff and the class

sought to be represented, the typicality requirement is usually met irrespective of minor

variations in the fact patterns underlying individual claims." Robidoux v. Celani, 987 F.2d 931,

936-37 (2d Cir. 1993); Global Crossing, 225 F.R.D. at 452. However, "class certification is

inappropriate where a putative class representative is subject to unique defenses which threaten

to become the focus of the litigation." Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222

F.3d 52, 59 (2d Cir. 2000) (quoting Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce,

Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990) (internal citation omitted)).

       Plaintiffs argue that their claims are typical of the class because they stem from

Defendants' alleged breaches of duty as Plan fiduciaries, because all members of the proposed

class can assert the same legal arguments to establish Defendants' liability, and because suits

under § 1132(a) are brought for plan-wide relief as opposed to individual relief. See, e.g., 29

U.S.C. §§ 1109, 1132(a) (liability for breach of fiduciary duty is "to the plan"); LaRue, 458 F.3d

at 363 ("[L]iability under [§ 1132(a)(2)] is . . . limited to plan losses."). Defendants counter that

the requirements for typicality are not met because a portion of the class signed releases that bar

Plaintiffs' claims and because Plaintiffs had the ability to make individualized investment

decisions with respect to their accounts.

       a.    Effect of Releases

       Although the Second Circuit has never addressed the issue, numerous courts have

held that under ERISA, individuals do not have the authority to release a defined contribution

plan's right to recover for breaches of fiduciary duty.  See, e.g., Bowles v. Reade, 198 F.3d 752,

759-61 (9th Cir. 1999) (finding that a plaintiff could not release claims brought on behalf of a

plan without the consent of the plan); Nelson v. IPALCO Enters., No. IP02-477 (CHK), 2003

WL 23101792, at *6 (S.D. Ind. Sept. 30, 2003) (finding typicality in the context of an ERISA

class action brought on behalf of a plan despite the fact that certain plaintiffs had signed

releases); In re Williams Cos. ERISA Litig., 213 F.R.D. 416 (N.D. Okla. 2005) (finding as a

matter of law that individuals could not release claims brought on behalf of a plan); In re Qwest

Sav. & Inv. Plan ERISA Litig., No. 02-RB-464 (CBS), 2004 U.S. Dist. LEXIS 24647, at *14 (D.

Colo. Sept. 27, 2004) (same).[3]

As discussed above, Plaintiffs assert claims on behalf of the Plan.  Moreover, the

releases at issue in this action appear to contain substantially similar language, and Defendants

do not point to any reason why their validity is unlikely to be subject to treatment on a class-wide

basis.[4]  Accordingly, while this Court is mindful that a motion for class certification is not the

time to address the merits of the case, Caridad, 191 F.3d at 291, Defendants may not invoke the

releases executed by certain class members to defeat typicality.  See Nelson, 2003 WL

23101792, at *6 (noting that "[t]ypicality . . . should be determined with reference to the

---

[3] Defendants rely on Spann v. AOL Time Warner, 219 F.R.D. 307, 319 (S.D.N.Y. 2003) and
Walker v. Asea Brown Boveri, Inc., 214 F.R.D. 58 (D. Conn. 2003).  However, those cases are
inapposite as they did not involve claims brought on behalf of a plan.

[4] Defendants point to the Second Circuit's fact specific, totality of the circumstances test for the
enforceability of releases executed in the ERISA context to support their argument that the
releases undermine typicality.  See Laniok v. Advisory Comm, 935 F.2d 1360, 1368 (2d Cir.
1995).  This is a non sequitor.  To undermine typicality, any waiver would have to encompass
claims brought on behalf of the Plan and, as noted, individual class members did not have the
legal right to execute such releases.

company's actions, not with respect to particularized defenses it may have against certain class members" (internal quotation omitted)).

        b.      Individualized Investment Decisions

Defendants argue that Plaintiffs' claims are not typical because 401(k) participants in the Plan, and certain categories of participants in the ESOP, were responsible for their own account management decisions. Defendants claim that these facts implicate 29 U.S.C. § 1104(c), which relieves fiduciaries of liability when the investment losses resulted from acts or omissions of plan participants. In addition, Defendants argue that a class cannot be certified with respect to Plaintiffs' claims for misrepresentation or failure to disclose because ERISA does not recognize a "fraud on the market" theory. These arguments are unpersuasive.

First, whether the degree of individual control present in the Polaroid Plan is sufficient to implicate § 1104(c) is determined by the administration and structure of the Plan as a whole, and is thus a question common to the class. See In re Enron Corp. Sec. Derivatives & ERISA Litig., 284 F. Supp. 2d 511, 578 (S.D. Tex. 2003). Second, § 1104(c) does not apply to the central claims against Defendants – namely, that they invested ESOP contributions in Polaroid stock and continued to offer Polaroid stock as an investment option for the 401(k) Plan after it was prudent to do so. See In re Enron Corp. Sec. Derivative & ERISA Litig., 284 F. Supp. 2d 511, 576-79 (S.D. Tex. 2003) (finding that even when § 1004(c) applies, fiduciaries are liable for losses that are not attributable to the acts or omissions of plan participants). Third, if Plaintiffs' claims of misrepresentation and nondisclosure are substantiated, § 1104(c) will not apply at all. See In re Unisys Sav. Plan Litig., 74 F.3d 420, 446 (3d Cir. 1996) (noting that for § 1004(c) to apply, fiduciaries must provide plan participants with "complete and accurate information" concerning investment alternatives in order to facilitate individualized control).

Thus, accepting all allegations in the Complaint as true as this Court is required to do on a

motion for class certification, <u>Shelter</u>, 574 F.2d at 661 n.15, § 1104(c) does not provide a basis to

defeat typicality. <u>See</u> <u>Rankin v. Rots</u>, 220 F.R.D. 511, 519 (E.D. Mich. 2004) (finding that a

plaintiff seeking to avoid class certification by invoking individualized defenses "ignores the fact

that the appropriate focus in a breach of fiduciary duty claim is the conduct of the defendants, not

the plaintiffs" (internal quotation omitted)); <u>In re Ikon Office Solutions, Inc. Sec. Litig.</u>, 191

F.R.D. 457, 465 (E.D. Pa. 2000) ("The focus of [the typicality] inquiry is whether the named

representatives rely on a similar legal theory as will the putative class, not whether the parties

behaved identically in response to the alleged breaches of fiduciary duty.").

       Defendants' argument that Plaintiffs' claims for misrepresentation and

nondisclosure inherently require an individualized analysis is also insufficient to defeat

typicality. The Complaint contains allegations of plan-wide misrepresentations and non-

disclosures which, by definition, were not individualized. <u>See, e.g.</u>, Complaint ¶¶ 249, 252. The

class seeks recovery for the Plan as a whole on the basis of these plan-wide misrepresentations

and non-disclosures. Plaintiffs' claims are accordingly typical of those of the class as a whole.

<u>See</u> <u>Rankin</u>, 220 F.R.D. at 522-23 (finding typicality where, "[a]lthough there may be factual

differences as to whether, in the case of voluntary employee contributions, a class member relied

on any alleged misrepresentations, the . . . misrepresentations are alleged to have been made to

the entire class of participants"); <u>IPALCO</u>, 2003 WL 23101792, at *5 (rejecting argument

similar to the one advanced by Defendants here where "relevant representations were distributed

or made available on a class-wide basis"); <u>Ikon</u>, 191 F.R.D. at 464; <u>In re Qwest Sav. & Inv. Plan

ERISA Litig.</u>, No. 02-RB-464 (CBS), 2004 U.S. Dist. LEXIS 24693, at *14-16 (D. Colo. Sept.

27, 2004).

18

For these reasons, the Court finds that Plaintiffs satisfy the typicality requirement of Rule 23(a).

4.    Adequacy

Under Rule 23, adequacy of representation is measured by two standards. First, class counsel must be qualified, experienced and generally able to conduct the litigation. Second, the class members must not have interests that are antagonistic to one another. Drexel, 960 F.2d at 291. Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members. Drexel, 960 F.2d at 291.

Defendants do not contest the adequacy of Plaintiffs' counsel, but assert that the representative Plaintiffs would not "adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In particular, Defendants complain that Powers made offensive statements about minorities, women, and Jews in an internet chat room (and thus cannot adequately represent members of those groups) and that he destroyed documents several days before his deposition. Defendants also argue that none of the Plaintiffs invested in Polaroid stock through their 401(k) accounts, and that accordingly they lack a personal interest in vigorously litigating those claims on behalf of the class. Finally, Defendants argue that Correia and Pires have been little more than spectators in this action, because they have been uninvolved in discovery and lack all but a rudimentary understanding of the nature of this action.

While Powers' bigoted remarks are repugnant to this Court, there is no evidence that he has ever discriminated against minorities, women or Jews in the course of his employment or business affairs, and his interests are aligned with the other members of the class in seeking to maximize recovery on behalf of the Plan. Drexel, 960 F.2d at 291. Similarly, as

discussed above, the central claims in this action do not hinge on whether a particular individual

chose to invest in a 401(k) plan – rather, they focus on the nature of Defendants' conduct. See

Rankin, 220 F.R.D. at 518 ("The fact that [plaintiff] did not voluntarily invest in . . . stock is a

minor distinction in relation to the overarching question of whether defendants violated their

fiduciary duties under ERISA."). Further, the relative lack of involvement of Correia and Pires

does not rise to the high degree of neglect that would be required to render them inadequate class

representatives. See Koch, 2001 WL 289972, at *4 ("[T]he Supreme Court has expressly

disapproved of attacks on the adequacy of a class representative based on the representative's

ignorance" (citing Surowitz v. Hilton Hotels Corp., 383 U.S. 363, 372-74 (1966).).

      The only issue of genuine importance to adequacy focuses on Powers' destruction

of documents relevant to this action, which could give rise to unique defenses. See Baffa, 222

F.3d at 61 (noting that a witness who acts in a manner that may give rise to unique defenses may

not adequately represent a class). However, based on a review of Powers' deposition transcript,

it appears that the need for document retention during litigation has been clarified for him and

that he understands his need to comply. (Pierce Decl. Ex. T.)  Thus, this Court finds that

Plaintiffs satisfy the adequacy requirement of Rule 23(a).

    B.    Rule 23(b) Requirements

    Fed. R. Civ. P. 23(b) provides, in relevant part:

> An action may be maintained as a class action if . . . (1) the
> prosecution of separate actions by or against individual members
> of the class would create a risk of (A) inconvenient or varying
> adjudications with respect to individual members of the class
> which would establish incompatible standards of conduct for the
> party opposing the class, or (B) adjudications with respect to
> individual members of the class which would as a practical matter
> be dispositive of the interests of the other members not parties to

the adjudications or substantially impair or impede their ability to protect their interests.

As noted, this is an action for breach of fiduciary duty brought under § 1132(a)(2) on behalf of the Plan.  Because the allegations in the Complaint implicate misconduct in the management of the Plan as a whole, disparate lawsuits by individual participants would raise the specter of "varying adjudications."  Similarly, allowing multiple actions, each of which would seek the same relief from the Defendants on behalf of the Plan, would potentially prejudice individual class members and would threaten to create "incompatible standards of conduct" for the Defendants.  These are precisely the problems Rule 23(b)(1) was intended to avoid.  Indeed, "ERISA litigation of this nature presents a paradigmatic example of a [Rule 23](b)(1) class." Kolar v. Rite Aid Corp., No. Civ.A. 01-1229, 2003 WL 1257272, at *3 (E.D. Pa. Mar. 11, 2003). Accordingly, this Court finds that certification of the class under Rule 23(b)(1) is appropriate. See Global Crossing, 225 F.R.D. at 453 (certifying class under Rule 23(b)(1) in § 1132(a)(2) action similar to this one); Rankin, 220 F.R.D. at 521-23 (same); Ikon, 191 F.R.D. at 466 (same).

21

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' motion for class certification is granted.  The Court appoints Correia, Pires and Powers as class representatives.  Schiffrin & Barroway, LLP and Keller Rohrback L.L.P. are appointed class counsel.  Curtis V. Trinko is appointed liason counsel.

Dated:    September 29, 2006
          New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

22

*Copies mailed to*:

Lynn Lincoln Sarko, Esq.
Derek Loeser, Esq.
Keller Rohrback L.L.P.
120 Third Avenue, Suite 3200
Seattle, WA 98101
*Co-Lead Counsel for Plaintiffs*

Richard S. Schiffrin, Esq.
Joseph H. Meltzer, Esq.
Schiffrin & Barroway, LLP
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA 19004
*Co-Lead Counsel for Plaintiffs*

Curtis V. Trinko, Esq.
16 West 46th Street, 7th Floor
New York, NY 10036
*Liaison Counsel for Plaintiffs*

Harvey J. Wolkoff, Esq.
Ropes & Gray
One International Place
Boston, MA 02110-2624
*Attorneys for Defendant Gary DiCamillo*

David P. Donovan, Esq.
Wilmer Cutler Pickering Hale & Dorr LLP
1600 Tysons Blvd.
McLean VA 22101
*Attorneys for Defendants Donald Halsted, William L. Flaherty, Judith Boynton, Carl Lueders,
Harvey Greenberg, Benjamin Byrd, John Jenkins, W. Katrowitz, Janet Cramer, Deirdre Evans,
Neal Goldman and William Hubert, Patricia Weller, Andra Bolotin, Jeffrey Miller, Philip
Ruddick and Ralph Norwood*

Terri L. Ross, Esq.
McDermott, Will & Emery
50 Rockefeller Plaza
New York, NY 10020-1605
*Counsel for Defendant State Street Bank & Trust Co.*

23