# EXHIBIT 2

LEXSEE 413 F. SUPP. 2D 842

**JOSEPH SCOTT SHERRILL and KEITH A. SIVERLY, individually and on behalf of all others similarly situated, Plaintiffs, v. FEDERAL-MOGUL CORPORATION RETIREMENT PROGRAMS COMMITTEE; JAMES ZAMOYSKI; RICHARD P. RANDAZZO; RICHARD B. STEWART; JOSEPH BREITENBECK; DAVID A. BOZINSKY; RICHARD A. SNELL; THOMAS W. RYAN; THOMAS P. MARTIN; G. MICHAEL LYNCH; CHARLES G. MCCLURE; FRANK E. MACHER; JOHN J. FANNON; ROBERT S. MILLER, JR.; RODERICK M. HILLS; GEOFFREY H. WHALEN; JOHN DOES 1 TO 25; FEDERAL-MOGUL CORPORATION SALARIED EMPLOYEES' INVESTMENT PROGRAM; COMERICA BANK; and STATE STREET BANK AND TRUST COMPANY, Defendants.**

**Case No. 04-72949**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION**

***413 F. Supp. 2d 842; 2006 U.S. Dist. LEXIS 4978; 36 Employee Benefits Cas. (BNA) 2964***

**February 9, 2006, Decided**

**SUBSEQUENT HISTORY:** Motion to strike granted by *Sherrill v. Federal-Mogul Corp. Ret. Programs Comm., 2006 U.S. Dist. LEXIS 51089 ( E.D. Mich., July 26, 2006)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendants, an employer's retirement program committee and members, a financial institution, and a trust company, filed *Fed. R. Civ. P. 12(b)(6)* motions to dismiss plaintiff former employees' action under *29 U.S.C.S. § § 1132(a)(2)*, *1109* of the Employee Retirement Income Security Act (ERISA), *29 U.S.C.S. § 1001* et seq., claiming breach of fiduciary duty in relation to the employer's Salaried Employees Investment Program (the Plan).

**OVERVIEW:** Plaintiffs, participants in the Plan, alleged that defendants breached their fiduciary duty of prudence by causing ongoing investments to be made in the employer's common stock fund and preferred stock fund after such investments became imprudent due to the setbacks to the employer in asbestos litigation. The court found that plaintiffs stated claims for violation of *29 U.S.C.S. § § 1104(a)(1)(A)*, (B), 1105(a)(2), (3). The court declined to hold the claims time-barred under *29 U.S.C.S. § 1113(2)*. Although the committee and its members attempted to portray their role as involving settlor functions, the court found that the complaint adequately alleged discretionary acts that came within the scope of an ERISA fiduciary duty. Also, plaintiffs alleged a causal link between defendants' actions and harm to the Plan. The court rejected the contentions of the financial institution, as trustee of the Employee Stock Ownership Portion, and of the trust company, as trustee of the master trust and investment manager of the common stock fund, that they were merely "directed trustees" under *29 U.S.C.S. § 1103(a)(1)*. The complaint also satisfied the "enabling" standard of *29 U.S.C.S. § 1105(a)(2)*.

**OUTCOME:** The court denied defendants' motions to dismiss.

**LexisNexis(R) Headnotes**

***Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Causes of Action > Breach of Fiduciary Duty***
[HN1] See *29 U.S.C.S. § 1132(a)(2)*.

***Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Causes of Action > Breach of Fiduciary Duty***

***Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > Personal Liability***
[HN2] See *29 U.S.C.S. § 1109(a)*, (b).

***Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > Fiduciary Responsibilities > General Overview***
***Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > Fiduciary Responsibilities > Prudence***
[HN3] See *29 U.S.C.S. § 1104(a)(1)(A)*, (B).

***Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > Fiduciary Responsibilities > General Overview***
***Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > Fiduciary Responsibilities > Prudence***
[HN4] *29 U.S.C.S. § 1104(a)(1)(A)*, (B) of the Employee Retirement Income Security Act (ERISA), *29 U.S.C.S. § 1001* et seq., imposes an unwavering duty on an ERISA trustee to make decisions with single-minded devotion to a plan's participants and, in so doing, to act as a prudent person would act in a similar situation.

***Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > Cofiduciary Liability***
[HN5] See *29 U.S.C.S. § 1105(a)(2)*, (3).

***Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims***
[HN6] A *Fed. R. Civ. P. 12(b)(6)* motion seeks dismissal for a plaintiff's failure to state a claim upon which relief can be granted. The court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief. To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.

***Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Statutes of Limitations***
[HN7] Under the Employee Retirement Income Security Act (ERISA), *29 U.S.C.S. § 1001* et seq., the victim of a fiduciary breach generally has six years in which to file suit. *29 U.S.C.S. § 1113(1)*. The relevant limitations period may be shortened to three years when the victim had actual knowledge of the breach or violation. *29 U.S.C.S. § 1113(2)*. The United States Court of Appeals for the Sixth Circuit has held that, to trigger the three-year statute of limitations period, a plaintiff must have actual knowledge of the underlying conduct giving rise to the alleged violation. A plaintiff need not have knowledge that the underlying conduct establishes a cognizable ERISA claim. It is not enough that a plaintiff had notice that something was awry; he must have had specific knowledge of the actual breach of duty upon which he sues.

***Civil Procedure > Parties > Capacity of Parties > General Overview***
***Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Causes of Action > Breach of Fiduciary Duty***
[HN8] Plan participants who bring suit under *29 U.S.C.S. § 1132(a)(2)* of the Employee Retirement Income Security Act, *29 U.S.C.S. § 1001* et seq., for breaches of fiduciary duty under *29 U.S.C.S. § 1109* may sue only on behalf of the Plan.

***Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Causes of Action > Breach of Fiduciary Duty***
***Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > General Overview***
[HN9] The United States Court of Appeals for the Sixth Circuit has recognized that employers who are also plan sponsors have dual roles: one as a fiduciary in administering or managing the plan for the benefit of participants and the other as employer in performing settlor functions such as establishing, funding, amending, and terminating the trust. Only discretionary acts of plan management or administration, or those acts designed to carry out the very purposes of the plan, are subject to fiduciary duties under the Employee Retirement Income Security Act, *29 U.S.C.S. § 1001* et seq.

***Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Defects of Form***
***Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements***
***Civil Procedure > Summary Judgment > Motions for Summary Judgment > General Overview***
[HN10] *Fed. R. Civ. P. 8* provides that a complaint must include only a short and plain statement of the claim

showing that the pleader is entitled to relief. *Fed. R. Civ. P. 8(a)(2)*. The United States Supreme Court has noted that this simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. Additionally, the Supreme Court noted in Swierkiewicz that *Fed. R. Civ. P. 8(e)(1)* provides that no technical forms of pleading or motions are required and that *Fed. R. Civ. P. 8(f)* states that all pleadings shall be so construed as to do substantial justice. A defendant can move for a more definite statement under *Fed. R. Civ. P. 12(e)* before responding, and summary judgment under *Fed. R. Civ. P. 56(c)* is the proper procedural tool to dispose of claims lacking merit.

***Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > General Overview***
[HN11] A trustee is relieved of fiduciary obligations under the Employee Retirement Income Security Act, *29 U.S.C.S. § 1001* et seq., regarding a Plan's assets when a Plan designates a named fiduciary to make certain decisions regarding the Plan and the trustee acts at the direction of the named fiduciary.

***Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > General Overview***
[HN12] Under *29 U.S.C.S. § 1103(a)(1)* of the Employee Retirement Income Security Act, *29 U.S.C.S. § 1001* et seq., a directed trustee is subject only to the "proper directions" of the named fiduciary. A directed trustee is not a fiduciary to the extent it does not control the management or disposition of plan assets. A person is a fiduciary only with respect to those aspects of the plan over which he exercises authority or control.

***Civil Procedure > Trials > Jury Trials > Province of Court & Jury***
***Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > Fiduciary Responsibilities > Prudence***
[HN13] Whether a fiduciary acted prudently when faced with a particular set of circumstances is an impalpable concept. The Oxford English Dictionary defines "prudent" as: Of persons (rarely of inferior animals): Sagacious in adapting means to ends; careful to follow the most politic and profitable course; having or exercising sound judgment in practical affairs; circumspect, discreet, worldly-wise. The legislative history of the Employee Retirement Income Security Act (ERISA), *29 U.S.C.S. § 1001* et seq., indicates that Congress intended, in drafting the prudence standard, to place a twofold duty on fiduciaries: to act in his relationship to the Plan's fund as a prudent man in a similar situation and under like conditions would act, and to act consistently with the principles of administering the trust for the exclusive purposes enumerated, and in accordance with the documents and instruments covering the fund unless they are inconsistent with the fiduciary principles of ERISA. Given these standards, the question of whether a defendant acted as a prudent man in a similar situation and under like conditions would act is one that is inherently factual in nature.

***Constitutional Law > Bill of Rights > Fundamental Rights > Trial by Jury in Civil Actions***
[HN14] See U.S. Const. amend. VII.

***Civil Procedure > Trials > Jury Trials > Province of Court & Jury***
***Constitutional Law > Bill of Rights > Fundamental Rights > Trial by Jury in Civil Actions***
[HN15] Federal policy favors jury decisions of disputed fact questions.

**COUNSEL:** [**1] For Joseph Scott Sherrill, individually and on behalf of all others similarly situated, Keith A. Siverly, Plaintiffs: Cornish F. Hitchcock, J. Brian McTigue, Gregory Y. Porter, McTigue Law Firm (Washington), Washington, DC; Daniel A. Bushell, Ellen M. Doyle, Richard A. Finberg, Malakoff, Doyle, Pittsburgh, PA; Michael L. McGlynn (NOT ADMITTED), Stephen P. McGlynn (NOT ADMITTED), McGlynn & McGlynn (Belleville), Belleville, IL; Barry D. Adler, Barry D. Adler, Farmington Hills, MI.

For Federal-Mogul Corporation Retirement Programs Committee, Richard P. Randazzo, Richard B. Stewart, Joseph Breitenbeck, Richard A. Snell, G. Michael Lynch, Charles G. McClure, Frank E. Macher, John J. Fannon, Robert S. Miller, Jr., Roderck M. Hills, Geoffrey H. Whalen, Defendants: Chales C. Jackson, Morgan, Lewis, (Chicago), Chicago, IL; Christopher A. Weals, Morgan, Lewis, (Washington), Washington, DC; Theodore R. Opperwall, Kienbaum, Opperwall, (Birmingham), Birmingham, MI.

For James Zamoyski, Defendant: Chales C. Jackson, Morgan, Lewis, (Chicago), Chicago, IL; Christopher A. Weals, Morgan, Lewis, (Washington), Washington, DC.

For David A. Bozinsky, Defendant: Anne D. Bolling, (NOT ADMITTED), [**2] Russell H. Gore (NOT ADMITTED), Seyfarth Shaw (Washington), Washing-

ton, DC; Chales C. Jackson, Morgan, Lewis, (Chicago), Chicago, IL; Christopher A. Weals, Morgan, Lewis, (Washington), Washington, DC; Theodore R. Opperwall, Kienbaum, Opperwall, (Birmingham), Birmingham, MI.

For Thomas W. Ryan, Defendant: Allegra R. Rich, Seyfarth Shaw (Chicago), Chicago, IL; Anne D. Bolling, (NOT ADMITTED), Russell H. Gore (NOT ADMITTED), Seyfarth Shaw (Washington), Washington, DC; Chales C. Jackson, Morgan, Lewis, (Chicago), Chicago, IL; Christopher A. Weals, Morgan, Lewis, (Washington), Washington, DC; Johnathan S. Polish, Steven A. Miller, Sachnoff & Weaver (Chicago), Chicago, IL; Theodore R. Opperwall, Kienbaum, Opperwall, (Birmingham), Birmingham, MI.

For Thomas P. Martin, Defendant: Allegra R. Rich, Seyfarth Shaw (Chicago), Chicago, IL; Anne D. Bolling, (NOT ADMITTED), Russell H. Gore (NOT ADMITTED), Seyfarth Shaw (Washington), Washington, DC; Chales C. Jackson, Morgan, Lewis, (Chicago), Chicago, IL; Johnathan S. Polish, Steven A. Miller, Sachnoff & Weaver (Chicago), Chicago, IL; Theodore R. Opperwall, Kienbaum, Opperwall, (Birmingham), Birmingham, MI.

For John Does, 1-25, Defendant: [**3] Anne D. Bolling, (NOT ADMITTED), Russell H. Gore (NOT ADMITTED), Seyfarth Shaw (Washington), Washington, DC; Christopher A. Weals, Morgan, Lewis, (Washington), Washington, DC.

For Federal-Mogul Corporation Salaried Employees Investment Program, Defendant: Clifford R. Perry, III, Joseph M. Gagliardo, Laner, Muchin, Chicago, IL; Michael A. Alaimo, Richard W. Warren, Miller, Canfield, (Detroit), Detroit, MI.

For Comerica Bank, Defendant: Anne D. Bolling, (NOT ADMITTED), Russell H. Gore (NOT ADMITTED), Seyfarth Shaw (Washington), Washington, DC; Christopher A. Weals, Morgan, Lewis, (Washington), Washington, DC; James J. Walsh, Bodman (Ann Arbor), Ann Arbor, MI.

For State Street Bank and Trust Company, Defendant: Allegra R. Rich, Seyfarth Shaw (Chicago), Chicago, IL; Anne D. Bolling, (NOT ADMITTED), Russell H. Gore (NOT ADMITTED), Seyfarth Shaw (Washington), Washington, DC; Christopher A. Weals, Morgan, Lewis, (Washington), Washington, DC; Steven W. Kasten, McDermott, Will, (Boston), Boston, MA; Wilber H. Boies, McDermott, Will, (Chicago), Chicago, IL; James D. VandeWyngearde, Richard A. Rossman, Pepper Hamilton (Detroit), Detroit, MI.

For Seyfarth Shaw, Defendant: Anne [**4] D. Bolling, (NOT ADMITTED), Russell H. Gore (NOT ADMITTED), Seyfarth Shaw (Washington), Washington, DC; Christopher A. Weals, Morgan, Lewis, (Washington), Washington, DC.

**JUDGES:** HONORABLE AVERN COHN, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** AVERN COHN

**OPINION:**

[*845] **MEMORANDUM AND ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS**

**TABLE OF CONTENTS**

**I. Introduction**

**II. Background**

**A. The Parties**

1. Plaintiffs

2. Defendants

**B. The Plan**

1. Overview

2. Administration

3. Contributions and Funding

**C. Timeline of Events as Alleged in the First Amended Complaint**

**D. The Lawsuit**

1. Count One

2. Count Two

3. Count Three

**III. Legal Standard**

**IV. Analysis**

**A. The Retirement Committee's Motion to Dismiss**

1. Statute of Limitations

2. Individual Versus Plan Recovery

3. Counts One and Two

a. Parties' Arguments

i. Matching Contributions

ii. Diversification of Matching Contributions

iii. Failure to Disclose Information

b. Analysis

4. Count Three

**B. Ryan and Martin's Motion to Dismiss**

**C. Comerica's Motion to Dismiss** [**5]

1. Standing

2. Comerica as Fiduciary

3. Conversion of Preferred Stock

4. Co-Fiduciary Liability

**D. State Street's Motion to Dismiss**

1. Count One: State Street as a Fiduciary

2. Count Three: Co-Fiduciary Liability

[*846] **V. Conclusion**

**I. Introduction**

This is a case under the Employment Retirement Income Security Act (ERISA), *29 U.S.C. § 1001 et seq.*, claiming breach of fiduciary duty. Plaintiffs Joseph Scott Sherrill (Sherrill) and Keith A. Siverly (Siverly), former employees of Federal-Mogul Corporation, seek recovery on behalf of themselves and others similarly situated who participated in the Federal-Mogul Corporation Salaried Employees Investment Program (the Plan) between July 1, 1999 and October 30, 2002. n1 Sherrill and Siverly name the following as defendants:

. The Federal-Mogul Corporation Retirement Programs Committee (Retirement Committee);

. Individual members of the Retirement Committee;

. John Does 1 through 25, who Sherrill and Siverly say served on the Retirement Committee or otherwise performed discretionary administrative functions with respect to the Plan; [**6] n2

. The Federal-Mogul Corporation Salaried Employees' Investment Program;

. Comerica Bank; and

. State Street Bank and Trust Company.

Sherrill and Siverly summarize their claims against defendants as follows:

> Defendants caused ongoing investments to be made in the [Federal-Mogul Common Stock Fund and Preferred Stock Fund] after such investments became imprudent due to the setbacks to Federal-Mogul Corporation in asbestos litigation and when the Plan's purposes of saving for retirement and accumulating capital could no longer be achieved.

First Amend. Compl. at P1. In essence, plaintiffs say that defendants, as fiduciaries of the Plan, breached their duties under ERISA by continuing to hold and invest in Federal-Mogul Corporation Common and Preferred Stock while Federal-Mogul Corporation's financial condition worsened and ultimately resulted in its filing for Chapter 11 bankruptcy protection on October 1, 2001.

n1 Sherrill and Siverly have filed a Motion for Class Certification that is not before the Court at this time.

n2 To date, plaintiffs have not named the John Doe defendants. Accordingly, the Court will consider only the named defendants in this case. If plaintiffs later seek to add additional defen-

dants, they must move for leave to amend. See Hrg. Tr. at 5:2-4.

[**7]

Before the Court are four motions to dismiss the complaint under *Fed. R. Civ. P. 12(b)(6)*:

. Defendant Federal-Mogul Corporation Retirement Programs Committee's Motion to Dismiss (including individual members of the Retirement Committee) (The Retirement Committee's Motion to Dismiss);

. Defendants Thomas W. Ryan and Thomas P. Martin's Motion to Dismiss (Ryan and Martin's Motion to Dismiss);

. Defendant Comerica Bank's Motion to Dismiss (Comerica's Motion to Dismiss); and

. Defendant State Street Bank and Trust Company's Motion to Dismiss (State Street's Motion to Dismiss).

The motions are DENIED. The reasons follow.

[*847] **II. Background**

**A. The Parties** n3

n3 Factual background relating to the parties is taken from the First Amended Complaint.

**1. Plaintiffs**

**Joseph Scott Sherrill** was a salaried employee of Federal-Mogul Corporation until October 31, 2000 and a participant in the Plan.

**Keith A. Siverly** was a salaried employee [**8] of Federal-Mogul Corporation until November 2000 and a participant in the Plan.

**2. Defendants**

**Federal-Mogul Corporation Retirement Programs Committee** was a fiduciary of the Plan and was designated by Federal-Mogul Corporation to administer all Federal-Mogul pension plans covered by ERISA, including the Plan.

**James Zamoyski** (Zamoyski) was a member of the Retirement Committee since January 1, 1999 and has served as senior vice president and general counsel of Federal-Mogul Corporation since February 1999.

**Richard Randazzo** (Randazzo) was a member of the Retirement Committee and serves as senior vice president of human resources for Federal-Mogul Corporation.

**Richard Stewart** (Stewart) served as manager of Federal-Mogul pension and capital accumulation plans. Plaintiffs do not know if he was a member of the Retirement Committee, but they say he exercised fiduciary responsibility with respect to the Plan.

**Joseph Breitenbeck** (Breitenbeck) was a member of the Retirement Committee and served as Federal-Mogul Corporation's director of compensation and benefits.

**David Bozynski** (Bozynski) was a member of the Retirement Committee and served as Federal-Mogul [**9] Corporation's vice president and treasurer. n4

n4 Defendants say plaintiffs misspelled Bozynski's last name in the caption of the First Amended Complaint.

**Richard Snell** (Snell) was a member of the Retirement Committee and served as Federal-Mogul Corporation's chairman and chief executive officer until November 1, 2000.

**Thomas Ryan** (Ryan) was a member of the Retirement Committee until August 2000 and served as executive vice president and chief financial officer of Federal-Mogul Corporation.

**Thomas Martin** (Martin) was a member of the Retirement Committee and served as assistant treasurer, capital markets, for Federal-Mogul Corporation.

**G. Michael Lynch** (Lynch) was a member of the Retirement Committee and replaced Ryan as vice president and chief financial officer of Federal-Mogul Corporation.

**Charles McClure** (McClure) was a member of the Retirement Committee and served as Federal-Mogul Corporation's president since January 11, 2001, and as its chief executive officer since July 11, 2003. [**10]

**Frank Macher** (Macher) was a member of the Retirement Committee and was Federal-Mogul Corporation's chief executive officer from January 11, 2001 until July 11, 2003. Macher has been chairman of Federal-Mogul Corporation's board of directors since October 1, 2001. n5

n5 It is unclear when McClure and Macher became members of the Retirement Committee. The First Amended Complaint is devoid of any explanation as to (1) what job McClure held before becoming Federal-Mogul's president in January 2001 and its CEO in July 2003 and (2) what job Macher held prior to becoming Federal-Mogul's CEO in January 2001 and its chairman of the board in October 2001. As to the individual members of the Retirement Committee, only those who were members of the Retirement Committee between July 1, 1999 and October 30, 2002, properly can be considered defendants.

[*848] **James Fannon** (Fannon) served as a director of Federal-Mogul Corporation and as a member of the Federal-Mogul Board of Directors' Pension Committee (Pension Committee). [**11]

**Robert Miller, Jr.** (Miller) served as a director of Federal-Mogul Corporation and chairman of the Pension Committee. He also was a member of the Retirement Committee.

**Roderick Hills** (Hills) served as a director of Federal-Mogul Corporation and was a member of the Pension Committee.

**Geoffrey Whalen** (Whalen) served as a director of Federal-Mogul Corporation and has been a member of the Pension Committee since May 2000.

**John Does 1 through 25** are additional individuals or entities who served on the Retirement Committee or otherwise performed discretionary administrative functions with respect to the Plan. n6

n6 As discussed above, John Does no longer are considered defendants. See n.2, supra.

**Comerica Bank** (Comerica) served as the trustee of the Plan's Employee Stock Ownership Portion (ESOP). n7

n7 An ESOP is an ERISA plan that invests primarily in "qualifying employer securities," which typically are shares of stock in the employer that created the plan. *29 U.S.C. § 1107(d)(6)(A).*

[**12]

**State Street Bank and Trust Company** (State Street) served as the trustee of the Plan. On January 4, 1999, the Retirement Committee appointed State Street to serve as investment manager of the Federal-Mogul Common Stock Fund.

Plaintiffs also named **Federal-Mogul Corporation Salaried Employees' Investment Program** as a nominal defendant "only to assure that complete relief can be granted." First Am. Compl. at P27.

**B. The Plan** n8

n8 The current status of the Plan is uncertain; the parties' papers do not explain its status. Accordingly, the Court makes reference to the Plan in the past tense. Additionally, in light of Federal-Mogul's bankruptcy filing under Chapter 11 of the U.S. Bankruptcy Code, contributions to the Plan presumably have ceased.

**1. Overview**

Federal-Mogul Corporation (Federal-Mogul) sponsored the Plan, which was first established in 1960 and modified and restated in 1989 and 2002. It was a defined contribution, tax-qualified, 401(k) plan. The preamble to the Plan states [**13] its purpose:

> The purpose of the Plan is to permit employees to share in the prosperity of Federal-Mogul and provide them with an opportunity to save for their retirement. The Plan includes an employee stock ownership portion within the meaning of *Section 4975(d)(2) of the Internal Revenue Code* which allows employees to acquire an ownership interest in Federal-Mogul and to accumulate capital for their economic benefit.

**2. Administration**

The Plan provided that Federal-Mogul was the named fiduciary and had sole authority to administer the Plan. Art. 11.01. It also provided, however, that Federal-Mogul could delegate the responsibility to [*849] administer the Plan to a committee. Art. 11.02.

> The responsibilities that may be delegated to the Committee include, but are not limited to, construing the language of the Plan, determining eligibility for benefits, selecting professionals as are necessary, authorizing payment of benefits, and au-

> thorizing or accepting a transfer of assets to or from the Plan.

Id. The Plan outlined fiduciary responsibilities as follows:

> Each person who has discretionary authority with respect to either [**14] the administration of the Plan or the management and disposition of trust assets is a fiduciary with respect to the Plan under the Employee Retirement Income Security Act. Each fiduciary must discharge his/her duties solely in the interest of the Participants and their beneficiaries and in accordance with the terms of the Plan document and the Trust instrument. Any fiduciary charged with managing Plan assets must diversify the investment of those assets not invested in Federal-Mogul stock in such a manner as to minimize the risk of large losses, unless it is clearly imprudent to do so. A fiduciary will be in breach of his/her fiduciary duties if the fiduciary fails to carry out these duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

Art. 11.03.

**3. Contributions and Funding**

Eligible employees could participate voluntarily in the Plan by making pre-tax and after-tax contributions with various investment options. The Plan gave participants discretion to determine how to allocate [**15] their own contributions among the various fund options. Art. 9.07.

The Plan held its assets in two separate trusts: (1) the "Master Trust," which held all Plan assets except Federal-Mogul Preferred Stock, and (2) the ESOP, the assets of which were invested exclusively in Federal-Mogul Preferred Stock. Art. 9.02. According to the terms of the Plan, matching contributions by Federal-Mogul were invested exclusively in Federal-Mogul stock. Art. 9.07. n9

> n9 Federal-Mogul amended the Plan in 2001 to cease making matching contributions effective November 1, 2001. Federal-Mogul suspended all activity related to the ESOP preferred stock fund when it filed for bankruptcy on October 1, 2001.

To establish the ESOP, the Plan borrowed funds to purchase shares of Federal-Mogul Series C Convertible Preferred Stock (Preferred Stock). The shares of Preferred Stock were placed in a suspense account until the loan used to purchase the stock was repaid. Art. 8.02. As payments were made on the loan, shares of Preferred Stock were [**16] released from the suspense account and allocated to participants. Art. 8.04.

**C. Timeline of Events as Alleged in the First Amended Complaint**

In the First Amended Complaint, plaintiffs allege the following as critical dates:

| Date | Event |
| --- | --- |
| 1992 | Comerica merges with Manufacturers National Bank of Detroit and assumed the ESOP Trust Agreement. First Amend. Compl. at P28. |
| 1998 | Federal-Mogul began to experience severe financial difficulties, largely due to extraordinary drain on its cash flow caused by mounting asbestos liabilities. Id. at P57. |
| October 9, 1998 | Federal-Mogul announced its acquisition of T & N and Cooper Automotive and their subsidiaries. Id. at P58. |
| January 1, 1999 | All new hires were deemed to have elected to defer 3% |

| Date | Event |
|---|---|
| | of their salaries for investment in the Plan, and a portion of those contributions automatically were invested in the FM Common Stock Fund unless the employee gave contrary directions. Id. at P41. |
| January 4, 1999 | Retirement Committee appointed State Street to serve as investment manager of the Federal-Mogul Common Stock Fund. Id. at P29. |
| June 23, 1999 | Supreme Court issues its decision in Ortiz v. Fibreboard n10Corp. Id. at P61. |
| July 1, 1999 | Class Period Begins. Defendants knew, or should have known, that Federal-Mogul's future was highly uncertain and that investing in the Stock Funds was no longer a prudent retirement option. Id. at P57. |
| | Federal-Mogul shares opened at $ 52.00 per share. Id. at P86. |
| Mid-September 1999 | Federal-Mogul's stock had fallen more than 20% since its June 30, 1999, closing price of $ 52.00. Id. at P66. |
| September 13, 1999 | Federal-Mogul announced that it would not meet its plans for 1999. Id. at P67. |
| September 14, 1999 | Federal-Mogul shares fell almost 23%, to $ 30.38. Id. |
| December 31, 1999 | Federal-Mogul shares had fallen to a closing price of $ 20.12, 66% below their closing price one year earlier of $ 59.50. Id. |
| January 31, 2000 | Federal-Mogul's stock price fell an additional 25% to close at $ 15.13 per share. Id. at P70. |
| March 15, 2000 | Federal-Mogul's Form 10-K filed with the Securities and Exchange Commission acknowledged the high number of asbestos cases pending. Id. at P68. |
| March 15, 2000 | Federal-Mogul announced a restructuring plan to cut 1,500 jobs close facilities. Id. at P70. |
| June 1, 1999 | Federal-Mogul's stock price fell to $ 9.56. Id. |
| October 31, 2000 | Sherrill was a salaried employee of Federal-Mogul until this date. Id. at P6. |
| November 2000 | Siverly was a salaried employee of Federal-Mogul until this date. Id. at P7. |
| December 20, 2000 | All of the ESOP loans were repaid and all shares held by the ESOP Trust had been allocated to participants. Id. at P37. |

| Date | Event |
| --- | --- |
| December 22, 2000 | Participants were allowed to transfer the value of matching contributions already held in the Common Stock Fund to other investments. Id. at P47. |
| December 31, 2000 | Federal-Mogul's stock price closed at $ 2.31 per share, almost 96% below its closing price of $ 53.19 the day before the Supreme Court issued its decision in Ortiz. Id. at P71. |
| July 2, 2001 | Federal-Mogul shares closed at $ 1.57 per share. Id. at P73. |
| July 25, 2001 | Federal-Mogul shares closed at $ 1.49 per share. Id. at P89. |
| July 31, 2001 | Retirement Committee and Federal-Mogul continued to offer the Common Stock Fund for new investments and encouraged additional investments by including the Common Stock Fund as part of the suggested "investment styles" until this date. Id. at P43. After this date, fiduciaries prohibited participants from investing new contributions in the Common Stock Fund or from transferring funds from other investments into the Common Stock Fund. Id. |
| | Through this date, all of Federal-Mogul's matching contributions were invested in the Common Stock Fund or the Preferred Stock Fund. Id. at PP44, 47. |
| | Federal-Mogul shares closed at $ 1.04 per share. Id. at P86. |
| August 31, 2001 | Federal-Mogul shares closed at $ 1.01 per share. Id. at P73. |
| October 1, 2001 | Federal-Mogul files for Chapter 11 bankruptcy protection. Id. at P30. The information brief filed with its bankruptcy petition cited Federal-Mogul's asbestos liability as the reason for the filing. Id. at P74. At the time of the bankruptcy filing, Federal-Mogul employees help approximately 16% of all Federal-Mogul stock, more than half of which was held by the Plan. Id. at P76. |
| October 30, 2002 | Class Period ends. Federal-Mogul retained Aon Fiduciary Counselors, Inc., (Aon) to act as an independent fiduciary with responsibility for the stock funds, including determining whether to continue to offer either fund or to terminate the availability of either fund. Id. at P51. |
| November 2002 | The Plan was again modified so all assets invested in Preferred Stock were spun off into the Federal-Mogul 401(k) investment program. Id. at P40. |

| Date | Event |
| --- | --- |
| | Plan Fiduciaries continued investing employee contributions in the Common Stock Fund until this time. Id. at P43. |
| November 29, 2002 | Federal-Mogul sent a letter to participants in the 401(k) plan signed by Defendant Stewart. The letter informed participants that Federal-Mogul had appointed Aon as the independent fiduciary. Id. at P52. Plaintiffs say this letter was misleading, lulling participants into believing that their interests as participants in the Plan were being represented by an unconflicted fiduciary. Id. at P55. |

[**17]

n10 Plaintiffs say that the Ortiz decision is important because it, along with another decision, *Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)*, ended the ability of asbestos defendants like Federal-Mogul to limit their asbestos liability exposure without filing for bankruptcy protection. First Amend. Compl. at P61.

[*852] Sherrill and Siverly say that Federal-Mogul acquired several companies with asbestos liability in 1998 and shortly thereafter began to experience severe financial difficulties largely because of mounting asbestos liabilities. Sherrill and Siverly say that as asbestos-related claims against Federal-Mogul mounted, Federal-Mogul's stock prices started to fall. For example, during the period relevant to their lawsuit (July 1, 1999 through October 1, 2002), Sherrill and Siverly say that Federal-Mogul's stock price dropped from $ 52.00 per share to $ 1.01 per share:

| Date | n11Price |
| --- | --- |
| July 1, 1999 | $ 52.00 |
| Sept. 14, 1999 | $ 30.38 |
| Dec. 31, 1999 | $ 20.12 |
| Jan. 31, 2000 | $ 15.13 |
| June 2000 | $ 9.56 |
| Dec. 21, 2000 | $ 2.19 |
| Dec. 31, 2000 | $ 2.31 |
| July 2, 2001 | $ 1.57 |
| July 25, 2001 | $ 1.49 |
| July 31, 2001 | $ 1.04 |
| August 31, 2001 | $ 1.01 |

[**18]

n11 In the First Amended Complaint, plaintiffs list Federal-Mogul's stock price as a price per share.

Sherrill and Siverly say that, especially in the wake of the Supreme Court's decision in Ortiz, all defendants were or should have been aware of the "serious financial problems" facing Federal-Mogul because of its growing asbestos liability. They say that, by no later than July 1, 1999, defendants knew or should have known that Federal-Mogul's asbestos liability threatened the company's future and that continuing to hold and invest in Federal-Mogul stock was risky.

**D. The Lawsuit**

Sherrill and Siverly filed the Complaint on September 22, 2003 in the United States District Court for the Southern District of Illinois. On December 2, 2003, Sherrill and Siverly filed the First Amended Complaint.

They bring this suit under *ERISA § 502(a)(2)*, which provides:

> [HN1] (a) Persons empowered to bring a civil action
>
> A civil action may be brought-
>
> . . .
>
> > (2) by the Secretary, or by a participant, [**19] beneficiary or fiduciary for appropriate relief under *section 1109* of this title;

*29 U.S.C. § 1132(a)(2)*. *Section 1109*, which allows an action against a fiduciary, provides:

> [HN2] (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.
>
> . . .
>
> [*853] (b) No fiduciary shall be liable with respect to a breach of fiduciary duty under this subchapter if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary.

*29 U.S.C. § 1109.*

On February 5, 2004, Comerica filed a Motion to Dismiss for Improper Venue, or in the Alternative, to Transfer Venue. Comerica argued that Sherrill and Siverly brought suit in the [**20] wrong venue because (1) the Plan was not administered in the Southern District of Illinois, (2) any alleged breach of fiduciary duty by Comerica did not occur in that district, and (3) Comerica is not found in the Southern District of Illinois. In the alternative, Comerica argued that venue should be transferred to this district for the convenience of the parties and witnesses and for the interests of justice. On July 26, 2004, the district judge in the Southern District of Illinois granted Comerica's motion to transfer venue to this district and denied Comerica's motion to dismiss for improper venue.

The First Amended Complaint makes the following claims, as phrased by Sherrill and Siverly:

> Count One Claim for Relief for Violation of *ERISA § 404* Against the Retirement Committee, Pension Committee Members and SSBT with Respect to the Federal Mogul [sic] Common Stock Fund
>
> Count Two Claim for Relief for Violation of *ERISA § 404* by the Retirement Committee, the Pension Committee Members and Comerica with Respect to the Federal Mogul [sic] Preferred Stock Fund
>
> Count Three Claim for Relief Against all Defendants for Co-Fiduciary Liability in Violation of *ERISA § 405* [**21]

**1. Count One**

With respect to Count One, Sherrill and Siverly say that the Retirement Committee and its individual members, Stewart, and the John Doe defendants violated *ERISA § § 404(a)(1)(A)* and *(B)*, which provide:

> [HN3] (a) Prudent man standard of care
>
> (1) Subject to *sections 1103(c)* and *(d)*, *1342*, and *1344* of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and -
>
> > (A) for the exclusive purpose of:
> >
> > > (i) providing benefits to participants and beneficiaries; and
> > >
> > > (ii) defraying reasonable expenses of administering the plan;

> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

*29 U.S.C. § 1104(a)(1)(A)* and *(B)*. n12

n12 The Sixth Circuit has noted that [HN4] this section of ERISA imposes "an unwavering duty on an ERISA trustee to make decisions with single-minded devotion to a plan's participants and, in so doing, to act as a prudent person would act in a similar situation." *Adams v. Avondale Indus., Inc., 905 F.2d 943, 946 (6th Cir. 1990)* (internal quotation and citation omitted).

[**22]

Sherrill and Siverly allege the following as the factual support for the Retirement Committee and its individual members' alleged ERISA violations:

. Retaining State Street as investment manager of the Master Trust;

. [*854] Failing to monitor State Street's actions and to review the investment guidelines provided to State Street;

. Causing the Plan to continue to offer the Federal-Mogul Common Stock Fund as an investment option between July 1, 1999 and July 31, 2001 when they knew, or should have known, that Federal-Mogul's future was in jeopardy;

. Continuing to invest additional Federal-Mogul matching contributions in the Common Stock Fund between July 1, 1999, and July 31, 2001;

. Restricting participants from transferring their matching contribution balances held in the Common Stock Fund to other investment options between July 1, 1999 and December 22, 2000;

. Failing to conduct an adequate fiduciary review to determine whether the Common Stock Fund was a prudent investment option;

. Failing to provide adequate information to participants and beneficiaries of the Plan with respect to the Common Stock Fund;

. Failing to liquidate the Plan's [**23] holdings in the Common Stock Fund when it became an imprudent investment;

. Failing, until October 2002, to appoint an independent fiduciary to determine whether Federal-Mogul stock was a prudent investment; and

. Failing to adequately protect participants' investments in the Common Stock Fund in Federal-Mogul's bankruptcy proceedings.

Sherrill and Siverly say that the Pension Committee members violated ERISA by:

. Failing to adequately monitor the performance of the Retirement Committee, Stewart, the John Doe defendants, and State Street;

. Failing to prevent the Retirement Committee, Stewart, the John Doe defendants, and State Street from causing the Plan to continue to offer the Common Stock Fund as an investment option between July 1, 1999 and July 31, 2001;

. Failing to monitor and prevent the Retirement Committee, Stewart, the John Doe defendants, and State Street from continuing to invest Federal-Mogul matching contributions in the Common Stock Fund between July 1, 1999 and July 31, 2001;

. Failing to prevent the Retirement Committee, Stewart, the John Doe defendants, and State Street from restricting participants from transferring their [**24] matching contributions held in the Common Stock Fund to other investment options between July 1, 1999 and December 22, 2000;

. After July 1, 1999, failing to communicate information to State Street, the Retirement Committee, and the other defendants;

. Failing to advise the other defendants of the need to liquidate the Plan's holdings in the stock funds when they became imprudent investments;

. Failing, until October 2002, to appoint an independent fiduciary to determine whether the Common Stock Fund was a prudent investment; and

. Failing to adequately protect participants' investments in the stock funds during Federal-Mogul's bankruptcy proceedings.

Sherrill and Siverly say that State Street violated ERISA by:

. [*855] Agreeing to investment guidelines for the investment management of Federal-Mogul stock;

. Causing the Plan to continue to offer the Common Stock Fund as an investment option between July 1, 1999 and July 31, 2001;

. Causing the Plan to continue to invest in Federal-Mogul matching contributions in the Common Stock Fund when it knew or should have known that Federal-Mogul's future was in jeopardy;

. From July 1, 1999 to the present, [**25] failing to provide adequate information to participants and beneficiaries of the Plan with respect to the Common Stock Fund and Federal-Mogul stock; and

. Failing to liquidate the Plan's holdings in the Common Stock Fund when it became an imprudent investment.

**2. Count Two**

As they alleged with respect to Count One, Sherrill and Siverly likewise say that the Retirement Committee and its individual members, Stewart, and the John Doe defendants violated *ERISA § § 404(a)(1)(A)* and *(B)* by:

. Continuing to invest Federal-Mogul matching contributions in the Federal-Mogul Preferred Stock Fund between July 1, 1999 and October 1, 2001;

. Failing to conduct an adequate fiduciary review to determine whether the Preferred Stock Fund and Federal-Mogul stock were prudent investments;

. Failing to direct the ESOP Trustee to convert the Plan's Preferred Stock Fund holdings to common stock and liquidate the shares when Federal-Mogul Preferred Stock became an imprudent investment;

. Failing to appoint an independent fiduciary to oversee investment in the Preferred Stock Fund;

. Failing to override the Plan's restrictions on participants' ability to convert the [**26] Preferred Stock Fund shares to common stock and transfer their balances from the Preferred Stock Fund to other investment options;

. Preventing participants from selling their Preferred Stock after October 2, 2001; and

. Failing to adequately protect participants' ERISA claims and investments in the Preferred Stock Fund in the Federal-Mogul bankruptcy proceedings.

Sherrill and Siverly say that the Pension Committee members violated ERISA by:

. Failing to prevent the Retirement Committee and its individual members, Stewart, the John Doe defendants, and Comerica from continuing to invest Federal-Mogul matching contributions in the Federal-Mogul and Preferred Stock Funds between July 1, 1999 and July 31, 2001;

. Failing to monitor the other defendants' performance with respect to failing to convert the ESOP's investments from the Preferred Stock Fund to other investment options after the Preferred Stock Fund became an imprudent investment;

. Preventing the participants who were current Federal-Mogul employees from selling their Preferred Stock after October 2, 2001; and

. Failing to protect the interests of the Plan's investments in the Preferred [*856] Stock [**27] Fund in Federal-Mogul's bankruptcy proceedings.

Sherrill and Siverly say that Comerica, as trustee of the ESOP, violated ERISA by:

. Continuing to invest Federal-Mogul matching contributions in the Federal-Mogul Preferred Stock Fund between July 1, 1999 and October 1, 2001; and

. From July 1, 1999 to October 1, 2001, failing to convert the Plan's holdings in Federal-Mogul Preferred Stock to common stock and/or to sell those converted shares and reinvest the proceeds for the participants' benefit.

**3. Count Three**

With respect to Count Three, Sherrill and Siverly say that all defendants violated *ERISA § 405(a)(2)* and *(3)* by enabling their co-fiduciaries to violate ERISA and, with knowledge of these alleged breaches, failing to make reasonable efforts to remedy the alleged breaches. *ERISA § 405(a)(2)* and *(3)* provide:

[HN5] (a) Circumstances giving rise to liability

In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

. . .

(2) if, [**28] by his failure to comply with *section 1104(a)(1)* of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

*29 U.S.C. § 1105(a)*.

**III. Legal Standard**

[HN6] A *Fed. R. Civ. P. 12(b)(6)* motion seeks dismissal for a plaintiff's failure to state a claim upon which relief can be granted. "The court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 360 (6th Cir. 2001)*. "To survive a motion to dismiss under *Rule 12(b)(6)*, a 'complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n., 176 F.3d 315, 319 (6th Cir. 1999)* [**29] (quoting *Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988))*.

**IV. Analysis** n13

n13 As an initial matter, the Court is constrained to observe that defendants' motion papers all appear to be attempts to convert what are labeled motions to dismiss into motions for summary judgment. In analyzing the defendants' arguments in support of dismissal, the Court adheres to the analytical guidelines under *Fed. R. Civ. P. 12(b)(6)* and only considers the factual allegations from the First Amended Complaint construed in the light most favorable to Sherrill and Siverly.

**A. The Retirement Committee's Motion to Dismiss** n14

n14 For purposes of this motion, references to the Retirement Committee include those defendants joining in this motion: the Retirement Committee itself, along with Zamoyski, Randazzo, Stewart, Breitenbeck, Bozynski, Snell,

Lynch, McClure, Macher, Fannon, Miller, Hills, and Whalen.

[**30]

**1. Statute of Limitations**

As part of its motion, the Retirement Committee says that any alleged [*857] breaches of fiduciary duty that occurred more than three years before Sherrill and Siverly filed the complaint on September 22, 2003 are time barred by ERISA's statute of limitations because they had actual knowledge of the facts giving rise to their fiduciary breach claims. Accordingly, the Retirement Committee argues that any allegations of fiduciary breaches from the period July 1, 1999 to September 22, 2000 must be dismissed. The Retirement Committee says that Sherrill and Siverly base their claims of fiduciary breach primarily on the declining value of Federal-Mogul stock and defendants' alleged imprudent decision to continue to hold and allow investment in Federal-Mogul stock through the Plan. The Retirement Committee says that when Sherrill and Siverly learned that Federal-Mogul's stock price was declining, they acquired actual knowledge of the basis for their fiduciary breach claims.

Sherrill and Siverly say that the decline of Federal-Mogul's stock price alone does not rise to the level of actual knowledge of wrongdoing sufficient to invoke ERISA's three-year statute of [**31] limitations.

[HN7] Under ERISA, the victim of a fiduciary breach generally has six years in which to file suit. *29 U.S.C. § 1113(1)*. The relevant limitations period may be shortened to three years when the victim "had actual knowledge of the breach or violation." *29 U.S.C. § 1113(2)*. The Sixth Circuit has held that, to trigger the three-year statute of limitations period, a plaintiff must have "actual knowledge of the underlying conduct giving rise to the alleged violation." *Wright v. Heyne, 349 F.3d 321, 331 (6th Cir. 2003)*. A plaintiff need not have knowledge that the underlying conduct establishes a cognizable ERISA claim. Id. "It is not enough that [a plaintiff] had notice that something was awry; he must have had specific knowledge of the actual breach of duty upon which he sues." *Martin v. Consultants & Adm'rs, Inc., 966 F.2d 1078, 1086 (7th Cir. 1992)* (internal quotation and citation omitted).

The cases the Retirement Committee cites in support of this argument were decided on motions for summary judgment and after the development of a more complete record than the Court has before it here. Based [**32] on this record, and after a full and fair reading of the First Amended Complaint, the Court declines to hold that any of Sherrill and Siverly's allegations of fiduciary breaches from the period July 1, 1999 to September 22, 2000 are time barred.

**2. Individual Versus Plan Recovery**

The Retirement Committee also attempts to dismiss the First Amended Complaint in its entirety because, it claims, the First Amended Complaint seeks individual monetary relief on behalf of the plaintiffs and not relief for the Plan. Specifically, the Retirement Committee says that, because Sherrill and Siverly allege that the Retirement Committee failed to warn them of the dangers of investing in Federal-Mogul stock, each Plan participant would be required to show that they failed to act because of a lack of information from the Retirement Committee. In essence, the Retirement Committee says that each Plan participant would have to demonstrate their own reliance and injury to their individual Plan accounts.

[HN8] Plan participants who bring suit under *ERISA § 502(a)(2)* for breaches of fiduciary duty under *ERISA § 409* may sue only on behalf of the Plan. *Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 140-44,* [*858] *105 S. Ct. 3085, 87 L. Ed. 2d 96 (1985)*. [**33] Here, the First Amended Complaint makes clear that Sherrill and Siverly are bringing this action for plan-wide relief. See, e.g., First Am. Compl. at P113 ("Plaintiffs therefore bring this action under the authority of *ERISA § 502(a)(2)* for Plan-wide relief under *ERISA § 409(a)* to recover losses sustained by the SEIP. . . ." (emphasis added)). Any argument the Retirement Committee makes regarding Plan participants being required to demonstrate individual reliance and injury are more appropriately addressed at the class certification stage. The Court will not dismiss on this basis.

**3. Counts One and Two**

**a. Parties' Arguments**

**i. Matching Contributions**

The Retirement Committee's first argument in favor of dismissal of Counts One and Two is that the decision to invest matching and ESOP contributions in Federal-Mogul stock was a settlor function not subject to ERISA's fiduciary standards. The Retirement Committee says that the Plan expressly required that matching and other employer contributions be invested exclusively in Federal-Mogul stock. Accordingly, the Committee argues, no breach of fiduciary claim can be made for failing to override the Plan's [**34] terms.

Sherrill and Siverly say that the First Amended Complaint properly alleges that the Retirement Committee had fiduciary authority over the investment of matching contributions. They say that an ERISA fiduciary is required to follow Plan provisions only when doing so is consistent with the fiduciary's duties. Here, Sherrill and

Siverly say, the Retirement Committee was required to disregard the Plan's provisions when following them became inconsistent with their duties of prudence and loyalty.

**ii. Diversification of Matching Contributions**

The Retirement Committee next maintains that it could not have breached its fiduciary duties by not allowing Plan participants to diversify matching contributions. The Retirement Committee cites paragraph 124(E) of the First Amended Complaint, which alleges that the Retirement Committee breached its fiduciary duties by "restricting participants from transferring their matching contribution balances held in the Common Stock Fund to other investment options between July 1, 1999, and December 22, 2000, even though the Fund had become an imprudent investment." First Amend. Compl. at P124(E). The Retirement Committee says that the availability [**35] of participant-directed investments is a settlor decision not subject to ERISA's fiduciary duty standard.

In response, Sherrill and Siverly say that the Retirement Committee misconstrues the language of paragraph 124(E) of the First Amended Complaint. They say the First Amended Complaint alleges that the Retirement Committee breached their fiduciary duties by requiring Plan participants to invest matching contributions in Federal-Mogul stock when it became an imprudent investment.

**iii. Failure to Disclose Information**

Finally, the Retirement Committee maintains that Counts One and Two should be dismissed because they do not state a claim for breach of fiduciary duty based on the Retirement Committee's alleged failure to disclose information to Plan participants. The Retirement Committee says that the "failure to inform" cannot be the basis for a breach of fiduciary claim where the information at issue otherwise has been provided to the plaintiff. The Retirement [*859] Committee says that plaintiffs do not identify any facts the Defendants failed to provide to Plan participants.

Sherrill and Siverly say the First Amended Complaint is replete with factual allegations relating to information [**36] the Retirement Committee allegedly failed to provide Plan participants. They direct the Court to allegations in the First Amended Complaint where Sherrill and Siverly allege as follows:

> (1) The Retirement Committee breached its fiduciary duties by failing to provide adequate information to participants and beneficiaries of the Plan with respect to the Common Stock Fund and Federal-Mogul stock and the risk of such an investment given the liquidity risks of the Plan's large holding in Federal-Mogul common stock. See First Am. Compl. at P124(G);
>
> (2) The Retirement Committee knew, or should have known, that Federal-Mogul's future was highly uncertain and that Federal-Mogul stock was a highly risky investment. See id. at PP77-84;
>
> (3) The Retirement Committee communicated with participants on several occasions while knowing of the imprudence of investing in Federal-Mogul stock and failed to communicate that information to the participants. See id. at PP88-89, 92, 101;
>
> (4) The Retirement Committee actively encouraged investment in the Common Stock Fund by recommending investment styles that included investments in the Common Stock Fund until August 1, 2001. [**37] See id. at P99; and
>
> (5) The Retirement Committee had reason to know that participants were not aware of the dangers involved in investing in Federal-Mogul stock as the Plan's holdings of company stock had risen to more than eight percent of all Federal-Mogul stock prior to Federal-Mogul's bankruptcy filing. See id. at P102.

**b. Analysis**

[HN9] The Sixth Circuit has recognized that employers who are also plan sponsors have dual roles: "one as a fiduciary in administering or managing the plan for the benefit of participants and the other as employer in performing settlor functions such as establishing, funding, amending, and terminating the trust." *Hunter v. Caliber Sys., Inc., 220 F.3d 702, 718 (6th Cir. 2000).* "Only discretionary acts of plan management or administration, or those acts designed to carry out the very purposes of the plan, are subject to ERISA's fiduciary duties." *Id.*

Despite the Retirement Committee's attempt to circumvent any arguable claim for breach of fiduciary duty by arguing that the conduct of which plaintiffs complain has its genesis in settlor functions and not fiduciary functions, a fair reading of the First Amended Complaint, [**38] viewed in the light most favorable to Sherrill and Siverly, adequately states a claim for breach of fiduciary

duty. Plaintiffs' allegations go beyond simply suggesting that the Retirement Committee failed to override the terms of the Plan. Indeed, Sherrill and Siverly allege that the Retirement Committee, as Plan fiduciaries, failed to take any action that might protect participants' assets in the Plan. These allegations of failing to take action may, after discovery and additional development of the record, reveal factual background relating to the Retirement Committee's discretionary acts of plan management or administration that would come within the scope of an ERISA fiduciary duty.

[*860] Additionally, the Retirement Committee's arguments in support of dismissal largely focus on legal arguments that go beyond analysis of the factual sufficiency of the First Amended Complaint. The moving defendants bring their motions under *Fed. R. Civ. P. 12(b)(6)*, but their arguments in support of dismissing all or a portion of the First Amended Complaint more appropriately should be addressed in a motion under *Fed. R. Civ. P. 56(c)* [**39] . The Court declines to dismiss Counts One and Two as to the Retirement Committee.

**4. Count Three**

With respect to Count Three of the First Amended Complaint, the Retirement Committee says that it fails to state a claim for breach of co-fiduciary liability because (1) the First Amended Complaint fails to satisfy the notice pleading standard under *Fed. R. Civ. P. 8* in that plaintiffs do not allege which defendants' actions enabled other defendants' breaches of fiduciary duty and (2) the First Amended Complaint alleges breaches occurring from July 1, 1999 through October 30, 2002, and certain defendants were not affiliated with Federal-Mogul and/or were not fiduciaries during some of that time period. n15

N15 Specifically, the Retirement Committee says that Snell, Lynch, McClure, Macher, Hills, and Whalen were members of the committee and/or fiduciaries during only part of the time period for which the First Amended Complaint seeks recovery.

Sherrill and Siverly respond [**40] that (1) the facts alleged in the paragraphs 146 through 149 of the First Amended Complaint adequately meets *Rule 8*'s notice pleading standard and puts defendants on notice of their knowledge of other defendants' alleged breaches of fiduciary duty and (2) the First Amended Complaint will be supplemented as necessary because certain additional information related to Count Three is in the exclusive control or possession of defendants.

[HN10] *Rule 8 of the Federal Rules of Civil Procedure* provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." *FED. R. CIV. P. 8(a)(2)*. The Supreme Court has noted that this "simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)*. Additionally, the Supreme Court noted in Swierkiewicz that *Fed. R. Civ. P. 8(e)(1)* provides that "no technical forms of pleading or [**41] motions are required," *id. at 513*, and that *Fed. R. Civ. P. 8(f)* states that "all pleadings shall be so construed as to do substantial justice." *Id. at 514*. A defendant can move for a more definite statement under *Fed. R. Civ. P. 12(e)* before responding, and summary judgment under *Fed. R. Civ. P. 56(c)* is the proper procedural tool to dispose of claims lacking merit. Id.

Given these pleading standards, the First Amended Complaint satisfies *Rule 8*'s dictates. The allegations of Count Three, notably those contained in paragraphs 146 through 149 of the First Amended Complaint, as well as those incorporated by reference through paragraph 143, give sufficient notice to defendants with respect to Sherrill and Siverly's allegations of wrongdoing on the part of defendants and their alleged co-fiduciary liability. To the extent that certain members of the Retirement Committee were not affiliated with Federal-Mogul and/or not fiduciaries during the time period for which Sherrill and Siverly seek relief, plaintiffs, if successful, only would [**42] be entitled to recovery against defendants who [*861] were affiliated with Federal-Mogul and/or fiduciaries within the period July 1, 1999, and October 30, 2002.

**B. Ryan and Martin's Motion to Dismiss** n16

n16 The First Amended Complaint alleges that Ryan and Martin were members of the Retirement Committee. It is unclear why Ryan and Martin brought a separate motion to dismiss and did not join in the Retirement Committee's motion.

Ryan and Martin seek dismissal of the First Amended Complaint in its entirety because, they say, it fails to allege any causal connection between any inaction by defendants and harm or loss to the Plan. Plaintiffs disagree and maintain that they adequately alleged causation in the First Amended Complaint.

Ryan and Martin point to the allegations in the First Amended Complaint with respect to the Supreme Court's decision in *Ortiz v. Fibreboard Corp., 527 U.S. 815, 119 S. Ct. 2295, 144 L. Ed. 2d 715 (1999)*, and how, in light

of Ortiz, defendants were or should have been aware of [**43] financial problems facing Federal-Mogul because of its growing asbestos liability. In the First Amended Complaint, Sherrill and Siverly allege that Ortiz and a prior Supreme Court case, *Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)*, ended the ability of asbestos defendants like Federal-Mogul to limit their liability exposure without filing for bankruptcy because Ortiz and Amchem precluded asbestos defendants from settling asbestos claims on a global scale. See First Am. Compl. at P61. Plaintiffs also allege that in 2000, in the wake of Ortiz, many asbestos defendants like Owens Corning Fibreglass and Bethlehem Steel filed for bankruptcy protection before Federal-Mogul did so in October 2001. Id. at P62. Ryan and Martin say that information alleged in the First Amended Complaint relating to Ortiz and whether defendants knew or should have known about Federal-Mogul's future, the value of Federal-Mogul stock, and Federal-Mogul's forthcoming bankruptcy all was available to the investing public (including Federal-Mogul employees). Accordingly, Ryan and Martin say that defendants did not possess inside information on which [**44] they should have acted to avert harm to the Plan and that they were powerless to avoid plaintiffs' alleged damages.

In their motion papers, Ryan and Martin seek to expand the scope of the Court's standard of review by interjecting legal arguments more appropriate at the summary judgment stage. Accordingly, the Court will not analyze many of the arguments in Ryan and Martin's papers that go beyond simply evaluating the sufficiency of the First Amended Complaint's factual allegations. In support of their motion to dismiss, Ryan and Martin say that plaintiffs have not alleged a causal link between defendants' actions and harm to the Plan. The Court disagrees.

In Count One, Sherrill and Siverly explicitly allege that "as a result of the above-enumerated breaches of duty of loyalty, exclusive purpose and prudence, in violation of *ERISA § 404(a)(1)*, all Defendants to this count caused losses to the SEIP and the accounts of SEIP participants. . . ." First Am. Compl. at P127 (emphasis added). In Count Two, plaintiffs allege that "all Defendants to this count caused losses to the ESOP Portion of the SEIP and the accounts of SEIP participants. . . ." First Am. Compl. at P137 (emphasis [**45] added). Finally, in Count Three, plaintiffs allege that "all Defendants to this count, by failing to comply with their specific fiduciary responsibilities under *ERISA § 404(a)(1)*, enabled their co-fiduciaries to commit violations of ERISA. . . ." First Am. Compl. at P145 (emphasis added). Ryan and Martin's arguments regarding whether the "efficient [*862] capital market hypothesis" applies to this case are not appropriate for purposes of this motion; rather, that is an argument better raised at the summary judgment stage. Likewise, Ryan and Martin's statements in their reply brief that "plaintiffs try to create a fact issue . . . .," see Ryan & Martin Reply Br. at 10, further demonstrates that the parties are arguing a motion to dismiss as if it were a motion for summary judgment. The Court is not concerned with issues of fact at this stage of the litigation. Rather, the Court adheres to the standard of review applicable under *Fed. R. Civ. P. 12(b)(6)*, i.e., evaluating the factual sufficiency of the First Amended Complaint. Given this standard, the Court declines to dismiss Ryan and Martin from this case.

**C. Comerica's Motion to Dismiss** [**46] n17

n17 In addition to its original brief in support of its motion to dismiss, Comerica filed a supplemental brief, the introduction of which states "the purpose of this supplemental brief is to present additional evidence, obtained at the recent depositions of plaintiffs, which supports Comerica's motion to dismiss for lack of standing." In considering a motion to dismiss under *Fed. R. Civ. P. 12(b)(6)*, the Court does not look to material outside the pleadings. Rather, the focus of the Court's inquiry is on the sufficiency of the allegations contained in the First Amended Complaint. If the Court were to consider the arguments and evidence presented in Comerica's supplemental brief, the Court would be required to construe the motion as one for summary judgment under *Fed. R. Civ. P. 56(c)* and give all parties "reasonable opportunity to present all material made pertinent to such motion by *Rule 56*." *FED. R. CIV. P. 12(b)*. The Court declines to do this.

[**47]

**1. Standing**

Comerica first says that Sherrill and Siverly lack standing to sue Comerica because they do not allege that they are participants in the ESOP and they do not allege that they continued to hold Federal-Mogul Preferred Stock until the time Federal-Mogul filed for bankruptcy. Sherrill and Siverly respond that the First Amended Complaint fairly alleges that plaintiffs were invested in the stock funds, which includes Federal-Mogul Preferred Stock. They say that they have standing to sue Comerica because they will receive additional accrued benefits in their individual ESOP accounts if they are successful in their suit against Comerica.

The Court agrees with plaintiffs that the First Amended Complaint adequately alleges that Sherrill and Siverly were participants in the ESOP. The First

Amended Complaint defines the term "Stock Funds" as encompassing the Federal-Mogul Common Stock Fund and Preferred Stock Fund. First Amend. Compl. at P1. Comerica served as trustee of the ESOP, the assets of which were invested in Federal-Mogul Preferred Stock. Id. at P28. With respect to Sherrill, the First Amended Complaint alleges that he was a participant in the Plan and that [**48] his contributions from payroll and Federal-Mogul's matching contributions were invested in the "Stock Funds." Id. at P6. As to Siverly, the First Amended Complaint alleges that he, too, was a participant in the Plan, "which Defendants invested in the Stock Funds. Plaintiff Siverly's account held 746 shares of [Federal-Mogul] stock on or about November 1, 2001." Id. at P7. Given that Sherrill and Siverly defined the term "Stock Funds" to include Federal-Mogul Preferred Stock, a fair reading of the First Amended Complaint establishes that plaintiffs properly alleged their participation in the ESOP. Accordingly, the Court will not dismiss plaintiffs' claims against Comerica on the basis of a lack of standing.

**2. Comerica as Fiduciary**

At the heart of Comerica's argument in support of dismissal is its position [*863] that it is not a fiduciary with respect to the Plan's investments in Federal-Mogul Preferred Stock because it had no discretion with respect to those investments. Comerica says that it was a "directed trustee" such that it had no discretion with respect to the selection or form of investments in the ESOP. See *29 U.S.C. § 1103(a)(1)*. Sherrill [**49] and Siverly say that the Plan documents, specifically the trust agreement governing Comerica's role as trustee of the ESOP (Comerica Trust Agreement), establish that Comerica had considerable discretion over the management and disposition of Federal-Mogul Preferred Stock.

With respect to Comerica's claim that it was a directed trustee and not subject to ERISA's fiduciary duties, the Comerica Trust Agreement is instructive. The Comerica Trust Agreement provided that "The Trustee shall be a Named Fiduciary for investment, management, custody and control of the Trust Fund except to the extent that the Company has appointed an Investment Manager pursuant to this Article." Trust Agmt. Art. V, § 1. While Comerica is correct that [HN11] a trustee is relieved of fiduciary obligations regarding a plan's assets when a plan designates a named fiduciary to make certain decisions regarding the plan and the trustee acts at the direction of the named fiduciary, see, e.g., *Herman v. NationsBank Trust Co. (Georgia), 126 F.3d 1354, 1361 (11th Cir. 1997)*, that is not the case here. Rather, the Comerica Trust Agreement provided that Comerica, the trustee, is the named fiduciary. [**50]

Comerica next says that plaintiffs' claim that Comerica violated ERISA by continuing to invest Federal-Mogul matching contributions in the Federal-Mogul Preferred Stock Fund between July 1, 1999 and October 1, 2001 must fail because Comerica did not purchase any Federal-Mogul Preferred Stock during that period. Additionally, Comerica says that, contrary to what plaintiffs allege in the First Amended Complaint, it could not have ceased investing in Federal-Mogul Preferred Stock without defaulting on the ESOP loan. The First Amended Complaint is devoid of reference to when the ESOP negotiated the loan to purchase Federal-Mogul Preferred Stock. Without further factual development, the Court cannot determine whether Comerica purchased any Preferred Stock during the relevant period (July 1, 1999 to October 1, 2002). With respect to Comerica's argument that it could not have discontinued investing in Federal-Mogul Preferred Stock without defaulting on the ESOP loan, Comerica relies on *Benefits Comm. of Saint-Gobain Corp. v. Key Trust Co. of Ohio, 313 F.3d 919 (6th Cir. 2002)* for the proposition that ERISA cannot require an ESOP trustee to avoid its obligations, such as [**51] repaying the ESOP loan. The issue before the Sixth Circuit in Key Trust was whether the district court properly granted summary judgment to the trustee. Accordingly, the record in *Key Trust* was more extensive than the record before the Court here, which is limited to the First Amended Complaint and the parties' motion papers. This, coupled with language from the Comerica Trust Agreement giving Comerica, inter alia, "exclusive authority and discretion to hold, manage, care for and protect the Trust Fund," Trust Agmt. Art. IV, § 1, and discretion to invest the Trust Fund in property and interest-bearing accounts, id. at Art. IV, § 1(b)(i), (iii), leads to the conclusion that Comerica had discretion with respect to investment of Federal-Mogul Preferred Stock. The question of whether discontinuing such an investment would have caused Comerica to default on the ESOP loan or otherwise violate ERISA is a question properly posed after discovery has occurred, not at the motion to dismiss stage.

[*864] **3. Conversion of Preferred Stock**

Comerica also says that it could not have converted the Preferred Stock into Federal-Mogul Common Stock as plaintiffs suggest. Comerica says [**52] that the Certificate of Designations of Series C ESOP Convertible Preferred Stock, see Comerica Br. Ex. 4, establishes that Comerica only could demand that Federal-Mogul redeem shares of Preferred Stock "when and to the extent necessary for such holder to provide for distributions required to be made under [the Plan]. . . ." Id. at 19. Comerica says that the Certificate of Designations, which created the Federal-Mogul Preferred Stock Comerica held as ESOP trustee, identifies no other circumstance in which

Comerica could insist on redeeming the Preferred Stock. Likewise, Comerica says that the Plan did not allow Comerica to convert the Preferred Stock into common shares in order to hold common shares in the ESOP or to sell any converted common shares.

On March 4, 2004, plaintiffs moved to strike, inter alia, the Certificate of Designations from Comerica's brief, arguing that it is extraneous evidence not permitted to be considered on a motion under *Fed. R. Civ. P. 12(b)(6)* because it was not cited or referenced in the First Amended Complaint. The Court denied plaintiffs' motion on April 20, 2005, finding that the Certificate is [**53] integral to the First Amended Complaint and will be considered for purposes of Comerica's motion to dismiss. While the language of the Comerica Trust Agreement might suggest that Comerica was able to redeem shares of Preferred Stock only to provide distributions as required under the Plan, the Court declines to dismiss this claim without additional factual development.

**4. Co-Fiduciary Liability**

Finally, Comerica argues that plaintiffs failed to state a claim against it in Count Three for breach of its obligations as a co-fiduciary. Paragraph 148 of the First Amended Complaint alleges that Comerica "is a sophisticated financial institution which knew, or should have known, about [Federal-Mogul]'s deteriorating financial condition and its asbestos liability problems. It was aware of other ESOP fiduciaries' breaches with respect to continued investment in Preferred Stock in the ESOP and took no action to correct these breaches." First Am. Compl. at P148. In support of dismissing Count Three, Comerica makes similar arguments it made with respect to Count Two (i.e., that it had no fiduciary duty to "remedy" other fiduciaries' breaches by directing them to cease contributions [**54] to the ESOP and defaulting on the ESOP loan, and that it could not convert Preferred Stock into Federal-Mogul Common Stock). The Court rejected these arguments with respect to Count Two and likewise does so with respect to plaintiffs' allegations against Comerica in Count Three.

**D. State Street's Motion to Dismiss**

**1. Count One: State Street as a Fiduciary**

State Street's primary argument in favor of dismissal is that it had no discretion as to investments in the Federal-Mogul Common Stock Fund and thus did not have fiduciary responsibility for the conduct about which Sherrill and Siverly complain.

State Street was involved with the Plan in two capacities: (1) as trustee of the Master Trust through which the Plan's investment programs were funded, and (2) as the investment manager for the Federal-Mogul Common Stock Fund. State Street says that the documents governing its dual roles, namely the Federal-Mogul Corporation Master Trust for Investment Programs (State Street Trust Agreement) and the Company Stock Fund Investment Manager Agreement (Investment Manager [*865] Agreement), reveal that State Street acted at the direction of others and had no discretion with respect to the [**55] investment of Plan assets or diverting investments from the Federal-Mogul Common Stock Fund.

Plaintiffs say that State Street had discretion with respect to Plan investments through the Investment Manager Agreement. Sherrill and Siverly say that the Investment Manager Agreement is not consistent with ERISA because it caused State Street to invest and retain Plan participant funds in Federal-Mogul common stock after doing so was not a prudent investment. Plaintiffs also disagree with State Street that it was a directed trustee with respect to the State Street Trust Agreement based on the scope of authority they say State Street had.

[HN12] Under *29 U.S.C. § 1103(a)(1)*, a directed trustee is subject only to the "proper directions" of the named fiduciary. A directed trustee is not a fiduciary to the extent it does not control the management or disposition of plan assets. *Grindstaff v. Green, 133 F.3d 416, 426 (6th Cir. 1998)*. "A person is a fiduciary only with respect to those aspects of the plan over which he exercises authority or control." *Id.*

The State Street Trust Agreement provides, inter alia,

> . Federal-Mogul is the fiduciary responsible [**56] for carrying out participant investment directions. State Street Trust Agmt. at § 1.5.
>
> . State Street has no duty to require payment of contributions to the trust fund n18 or to determine that a contribution complies with a participant's investment direction. Id. at § 1.6.
>
> . Federal-Mogul may direct State Street to establish one or more investment accounts within the trust fund. Id. at § 3.1.
>
> . State Street has no liability for loss that may result from division of the trust fund into investment accounts. Id.
>
> . State Street has no liability based on investment of trust fund assets in accordance with participant investment instructions. Id.

. State Street has no liability for the acts or omissions of any investment manager (except to the extent State Street itself as investment manager). Id. at § 3.6.

n18 Under the State Street Trust Agreement, the term "trust fund" refers to all Plan assets held by State Street in the trust pursuant to the provisions of the State Street Trust Agreement. See State Street Trust Agmt. at § 1.1.

[**57]

It is with Section 3.6 that plaintiffs take exception. Plaintiffs say that, because State Street also served as investment manager, it had discretion over the Plan assets. Plaintiffs point to Section 2 of the Investment Manager Agreement, which provides, in pertinent part:

> **2. Discretionary Authority:**
>
> (A) To carry out the objective set forth in Section 3, State Street shall have full discretionary authority to manage the assets in the Account including, without implied limitation, authority to purchase, sell, exchange, convert, trade, and generally to deal in assets of the Account.

Investment Manager Agmt. at § 2(A) (emphasis in original). Section 2(C) of the Agreement provides, in part, that

> State Street is specifically authorized to buy or sell shares of common stock of the Client (hereinafter "Stock") on a national securities exchange or elsewhere, if such purchase or sale cannot be effectuated on the open market.

Id. at § 2(C). Plaintiffs seem to rely on this language in support of their argument [*866] that State Street was not a directed trustee and was subject to fiduciary duties under ERISA. Other provisions of the Investment Manager [**58] Agreement must be considered. For example, Section 3 of the Agreement provides that the Retirement Committee shall furnish State Street with investment guidelines for management of the account and that State Street shall make its investment decisions "consistent within such guidelines." See id. at § 3. The investment guidelines, attached as Exhibit A to the Investment Manager Agreement, provides that the Federal-Mogul Common Stock Fund shall consist of (1) primary investment in Federal-Mogul common stock and (2) liquidity reserves. Section 5 of the Investment Manager Agreement provides, in part, that

> State Street shall be responsible only for managing the Account in good faith and in accordance with the investment guidelines, and shall have no responsibility whatsoever for, and shall incur no liability on account of, (i) diversification or selection of such investment guidelines, (ii) advice on, or management of, any other assets for [the Retirement Committee], except as provided in a separate instrument. . . .

Id. at § 5.

Plaintiffs allege in the First Amended Complaint that State Street violated ERISA by, inter alia, (1) agreeing to investment guidelines [**59] for the investment management of Federal-Mogul stock, (2) causing the Plan to continue to offer the Common Stock Fund as an investment option, (3) causing the Plan to continue to invest in Federal-Mogul matching contributions, and (4) failing to liquidate the Plan's holdings in the Common Stock Fund when it became an imprudent investment. After reviewing the State Street Trust Agreement and the Investment Manager Agreement, the Court concludes that language in both agreements, notably the language in paragraph 2 of the Investment Manager Agreement, suggests that, after development of a complete factual record, plaintiffs may be able to show that State Street possessed the discretion or authority to discontinue offering the Federal-Mogul Common Stock Fund as an investment option. Count One states a claim against State Street.

**2. Count Three: Co-Fiduciary Liability**

Finally, plaintiffs allege that State Street enabled co-fiduciaries to violate ERISA. Accordingly, Sherrill and Siverly argue, State Street breached *ERISA § 405* (providing for co-fiduciary liability). State Street argues, however, that plaintiffs cannot satisfy the standard under the "enabling" subsection of *ERISA § 405* [**60] :

> **(a) Circumstances giving rise to liability**
>
> In addition to any liability which he may have under any other provisions of

> this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> . . .
>
> (2) if, by his failure to comply with *section 1104(a)(1)* of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach.

*29 U.S.C. § 1105(a)(2)* (emphasis in original). As discussed above with respect to plaintiffs' allegations against State Street in Count One, plaintiffs have stated a claim that State Street violated ERISA's fiduciary requirements under *ERISA § 404(a)(1)* by, inter alia, failing to cease investment in the Common Stock Fund. Accordingly, as discovery proceeds and facts are developed, plaintiffs may show that State Street enabled other fiduciaries to commit a [*867] breach of their duties. The Court likewise will not dismiss this count.

**V. Conclusion**

> "*Ad quaestionem facti non respondent* [**61] *judices; ad quaestionem juris non respondent juratores.*" n19

n19 1 SIR EDWARD COKE, COMMENTARY UPON LITTLETON Ch. 12 § 234 (Francis Hargrave & Charles Butler eds., 1853) ("Judges do not answer questions of fact; juries do not answer questions of law.").

The essence of this case is plaintiffs' claim that defendants, acting in their fiduciary capacities, breached their duty of prudence and thus violated ERISA. [HN13] Whether a fiduciary acted prudently when faced with a particular set of circumstances is an impalpable concept. The Oxford English Dictionary defines "prudent" as:

> Of persons (rarely of inferior animals): Sagacious in adapting means to ends; careful to follow the most politic and profitable course; having or exercising sound judgement in practical affairs; circumspect, discreet, worldly-wise.

OXFORD ENGLISH DICTIONARY (2d ed., 1989). The legislative history of ERISA indicates that Congress intended, in drafting the prudence standard, to place a two-fold duty on fiduciaries:

> to [**62] act in his relationship to the plan's fund as a prudent man in a similar situation and under like conditions would act, and to act consistently with the principles of administering the trust for the exclusive purposes previously enumerated, and in accordance with the documents and instruments covering the fund unless they are inconsistent with the fiduciary principles of this section.

H.R. REP. NO. 93-533 (1973), reprinted in 1974 U.S.C.C.A.N. 4639, 4651. Given these standards, the question of whether defendants acted "as a prudent man in a similar situation and under like conditions would act" is one that is inherently factual in nature.

Defendants would like the Court to, as a matter of law, dismiss plaintiffs' claims against them. n20 The Court, however, declines to usurp the province of the trier of fact. The *Seventh Amendment to the United States Constitution* provides that

> [HN14] In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, then according to the rules of the common law.

*U.S. CONST. amend. VII* [**63] . It is well established that [HN15] federal policy favors jury decisions of disputed fact questions. See, e.g., *Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 360, 82 S. Ct. 780, 7 L. Ed. 2d 798 (1962)* (noting that the *Seventh Amendment* fashioned the policy favoring the jury resolving factual disputes); *Coopersville Co-Operative Creamery Co. v. Lemon, 163 F. 145, T.D. 1371 (6th Cir. 1908)* ("it is the peculiar province of a jury to determine disputed questions of fact."). n21 Indeed, [*868] in the context of ERISA fiduciary litigation, other courts have not hesitated to find that the question of prudence is a question of fact and that it is error to decide that question

as a matter of law. See, e.g., *Moench v. Robertson, 62 F.3d 553, 568-71 (3d Cir. 1995)* (holding that a determination as to whether an ERISA fiduciary breached its fiduciary duty should not be made on a motion to dismiss, but only after discovery develops a factual record); *Briskin v. Ernst & Ernst, 589 F.2d 1363, 1368 (9th Cir. 1978)* (holding that it was error for a district court to decide, as a matter of law, whether shareholders acted as reasonably [**64] prudent persons); *Cassin v. Prudential Ins. Co. of Am., Inc., 2004 U.S. Dist. LEXIS 20975, No. 04-2913, 2004 WL 2360023 *1, *3 (S.D.N.Y. 2004)* (holding that whether a defendant exercised discretionary authority sufficient to trigger ERISA's fiduciary requirements is a question of fact that is not appropriately decided on a motion to dismiss).

n20 Dismissing all or a portion of a claim on a *Fed. R. Civ. P. 12(b)(6)* motion implicates a question of law. *Perry v. Am. Tobacco Co., Inc., 324 F.3d 845, 848 (6th Cir. 2003).*

n21 In the context of a criminal case, former Chief Justice Thomas M. Cooley of the Michigan Supreme Court observed that

> The jurors, and they alone, are to judge the facts, and weigh the evidence. The law has established this tribunal, because it is believed that, from its numbers, the mode of their selection, and the fact that the jurors come from all classes of society, they are better calculated to judge of motives, weigh probabilities, and take what may be called a common sense view of a set of circumstances, involving both act and intent, than any single man, however pure, wise and eminent he may be.

*People v. Garbutt, 17 Mich. 9, 27 (1868).*

[**65]

The factual record is this case has not been developed. The arguments the defendants raise in support of their motions to dismiss invoke factual questions that go well beyond evaluating the sufficiency of plaintiffs' allegations in the First Amended Complaint. It is not within the province of the Court to address these factual questions or to, at this early stage of the case, curtail plaintiffs' day in court.

SO ORDERED. n22

n22 Pending is plaintiff's motion for class certification, filed September 16, 2004. The motion has been fully briefed. Before proceeding with it, however, the Court desires to consider precertification motions on the merits. See, e.g., THOMAS E. WILLGING, LAURAL L. HOOPER, & ROBERT J. NIEMIC, AN EMPIRICAL ANALYSIS OF RULE 23 TO ADDRESS THE RULEMAKING CHALLENGES, *71 N.Y.U. L. REV. 74, 104 (1996)*. To that end, the Court will hold a status conference on **Friday, March 17, 2006 at 2:00 P.M.** to chart the future course of the case.

Dated: February 9, 2006 [**66]

s/Avern Cohn

UNITED STATES DISTRICT JUDGE

109NB2

********** Print Completed **********

Time of Request: Tuesday, October 03, 2006  15:14:26 EST

Print Number:    1822:121825205
Number of Lines: 1087
Number of Pages:

Send To:  MELTZER, JOSEPH
          SCHIFFRIN & BARROWAY LLP
          280 KING OF PRUSSIA RD
          RADNOR, PA 19087-5108