**EXHIBIT 5**

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

NO. 06-2337-cv

---

HOWARD GRADEN, Individually and On Behalf of All Others Similarly
Situated,
Plaintiff-Appellant,

v.

CONEXANT SYSTEMS INC., DWIGHT W. DECKER, ARMAND GEDAY,
ROBERT MCMULLAN, MICHAEL VISHNY, J. SCOTT BLOUIN,
BALAKRISHNAN S. IYER, DENNIS E. O'REILLY, KERRY K. PETRY,
BRADLEY W. YATES,
Defendants-Appellees.

---

On Appeal from the United States District Court
for the District of New Jersey

---

**BRIEF OF THE SECRETARY OF LABOR AS AMICUS CURIAE
SUPPORTING PLAINTIFF-APPELLANT AND REQUESTING
REVERSAL**

---

HOWARD M. RADZELY
Solicitor of Labor

TIMOTHY D. HAUSER
Associate Solicitor

KAREN L. HANDORF
Counsel for Appellate and Special Litigation

ELIZABETH S. GOLDBERG
Attorney
U.S. Department of Labor
Office of the Solicitor
200 Constitution Ave., N.W.
Room N-2700
Washington, D.C. 20210
Phone:  (202) 693-5796
Fax:      (202) 693-5774

## TABLE OF CONTENTS

Page

Statement of the issue ................................................................. 1

Interest of the Secretary of Labor ........................................... 1

Statement of the facts ............................................................. 2

Summary of the argument ....................................................... 6

Argument ................................................................................. 7

       The plaintiff has standing under ERISA to bring this
       suit because he has a colorable claim that he is entitled
       to additional vested benefits ............................................. 7

       A.    The plaintiff has standing because he is a former
              employee who is or may become eligible to
              receive additional benefits from the Conexant
              Retirement Savings Plan ........................................... 9

       B.    Reading ERISA to give plaintiffs standing to sue if
              their lump-sum distribution is diminished as a
              result of a fiduciary breach is consistent with the
              purposes and policies of ERISA ............................. 23

Conclusion .......................................................................... 27

i

TABLE OF AUTHORITIES

**Cases**:                                                                Page

Amalgamated Clothing & Textile Workers Union v. Murdock,
        861 F.2d 1406 (9th Cir. 1988) ............................................ 10,24

Daniels v. Thomas & Betts,
        263 F.3d 66 (3d Cir. 2001) .................................................. 5,6,13,14,15

Davis v. D.L. Featherstone,
        97 F.3d 734 (4th Cir. 1996) ................................................ 13

Dickerson v. Feldman,
        426 F. Supp. 2d 130 (S.D.N.Y. 2006), appeal docketed,
        No. 06-1616-cv (2d Cir. Apr. 5, 12006) ............................ 22

Firestone Tire & Rubber Co. v. Bruch,
        489 U.S. 101 (1989) .......................................................... 4,5,7,11,13

Graden v. Conexant Sys., Inc.,
        No. 05-0695, 2006 WL 1098233
        (D.N.J. Mar. 31, 2006), appeal docketed,
        No. 06-2337 (3d Cir. Apr. 27, 2006) ................................ 2 & passim

Hargrave v. TXU Corp.,
        392 F. Supp. 2d 785 (N.D. Tex. 2005), appeal docketed,
        No. 05-11482 (5th Cir. Dec. 29, 2005) ............................. 22,23

Holtzscher v. Dynegy, Inc.,
        No. 05-3293, 2006 WL 626402
        (S.D. Tex. Mar. 13, 2006), appeal docketed,
        No. 06-20297 (5th Cir. Apr. 18, 2006) ............................. 22

In re Admin. Comm. ERISA Litig.,
        No. C03-3302, 2005 WL 3454126
        (N.D. Cal. Dec. 16, 2005) ................................................. 22

In re AEP ERISA Litig.,
    ___ F. Supp. 2d ___, 2006 WL 1890038 (S.D. Ohio
    July 12, 2006) ....................................................................... 22

In re Aquila ERISA Litig.,
    ___ F.R.D. ___, 2006 WL 2289234 (W.D. Mo.
    July 18, 2006) ....................................................................... 22

In re RCN Litig.,
    No. 04-5068, 2006 WL 753149
    (D.N.J. Mar. 21, 2006) ........................................................ 22

In re Williams Cos. ERISA Litig.,
    231 F.R.D. 416 (N.D. Okla. 2005) ...................................... 21

Kuntz v. Reese,
    785 F.2d 1410 (9th Cir. 1986)  (per curiam), rev'g
    Kuntz v. Reese, 706 F.2d 926 (9th Cir. 1985) ................... 20

Kuntz v. Reese,
    706 F.2d 926 (9th Cir. 1985) ............................................... 20

Kuper v. Quantum Chem. Corp.,
    829 F. Supp. 918 (S.D. Ohio 1993), aff'd sub nom.
    Kuper v. Iovenko, 66 F.3d 1447 (6th Cir. 1995) ............... 21

LaLonde v. Textron, Inc.,
    418 F. Supp. 2d 16 (D.R.I. 2006) ....................................... 22

Leuther v. Blue Cross & Blue Shield,
    454 F.3d 120 (3d Cir. 2006) ................................................ 12,13,14

Martin v. Feilen,
    965 F.2d 660 (8th Cir. 1992) ............................................... 23

Mullins v. Pfizer, Inc.,
    23 F.3d 663 (2d Cir. 1994) ................................................. 13

Nachman Corp. v. Pension Benefit Guar. Corp.,
    446 U.S. 359 (1980) ............................................................ 8

Nechis v. Oxford Health Plans,
    421 F.3d 96 (2d Cir. 2005) ................................................. 10

Panaras v. Liquid Carbonic Indus. Corp.,
    74 F.3d 786 (7th Cir. 1996)................................................. 13

Rankin v. Rots,
    220 F.R.D. 511 (E.D. Mich. 2004) ...................................22,24

Secretary of Labor v. Fitzsimmons,
    805 F.2d 682 (7th Cir. 1986) (en banc).............................. 1

Sommers Drug Stores Co. Employee Profit Sharing
    Trust v. Corrigan,
    883 F.2d 345 (5th Cir. 1989) .............................................6 & passim

Thompson v. Avondale Indus., Inc.,
    No. Civ.A 99-3439, 2001 WL 1543497
    (E.D. La. Nov. 30, 2001)..................................................... 21

Vartanian v. Monsanto Co.,
    14 F.3d 697 (1st Cir. 1994) ................................................13,24

Yancy v. American Petrofina, Inc.,
    768 F.2d 707 (5th Cir. 1985)............................................... 20

**Statutes and regulations**:

Employee Retirement Income Security Act of 1974,
    Title I, 29 U.S.C. § 1001 et seq.: ....................................... 1

    Section 2(b), 29 U.S.C. § 1001(b) ...................................... 7

    Section 3(7), 29 U.S.C. § 1002(7)......................................6,8,11,17

    Section 3(8), 29 U.S.C. § 1002(8)....................................... 14

    Section 3(34), 29 U.S.C. § 1002(34)...................................2 & passim

Section 104(b)(4), 29 U.S.C. § 1024(b)(4) ........................ 14

Section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).............. 10

Section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) .............. 10

Section 409, 29 U.S.C. § 1109 ........................................... 3,7

Section 502(a), 29 U.S.C. § 1132(a) .................................. 4

Section 502(a)(2), 29 U.S.C. § 1132(a)(2)........................ 1,3,7,11

**Miscellaneous**:

H.R. Rep. No. 93-533 (1973), reprinted in
    1974 U.S.C.C.A.N. 4639 ......................................... 23

2 Legislative History of ERISA, 1599-1600
    (Comm. Print 1976) .................................................. 8

United States General Accounting Office, Answers to
    Key Questions about Private Pension Rulings
    GAO-02-745SP (Sept. 18, 2002), available at
    http://www.gao.gov/new.items/d02745sp.pdf......... 3,9,19,25

STATEMENT OF THE ISSUE

The plaintiff in this case is a former employee of Conexant Systems, Inc. who participated in a defined contribution plan sponsored by his employer. The plaintiff, who withdrew his account from the Conexant Retirement Savings Plan after terminating his employment, claims that while he was still a plan participant, the defendants breached their fiduciary duties under ERISA and that these breaches caused losses to the plan. As a result of the losses, the plaintiff's distribution was less than it should have been. The question presented is whether, under these circumstances, the plaintiff has standing to sue on behalf of the plan as a plan "participant" within the meaning of ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2).

INTEREST OF THE SECRETARY OF LABOR

The Secretary of Labor has primary authority to interpret and enforce the provisions of Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. The Secretary's interests include promoting the uniform application of the Act, protecting plan participants and beneficiaries, and ensuring the financial stability of plan assets. See Secretary of Labor v. Fitzsimmons, 805 F.2d 682, 689-94 (7th Cir. 1986) (en banc). The Secretary therefore has a strong interest in ensuring the proper interpretation of ERISA, and files this brief as amicus curiae in support of

1

the plaintiff to urge the Court to correct the district court's misinterpretation

of the statute as it relates to the circumstances of this case.

## STATEMENT OF THE FACTS

1.    Named plaintiff Howard Graden is a former employee of

Conexant Systems, Inc. ("Conexant"), which sponsored the Conexant

Retirement Savings Plan (the "Plan"). See Graden v. Conexant Sys., Inc.,

No. 05-0695, 2006 WL 1098233, at *1 (D.N.J. March 31, 2006). During

the time period at issue, Conexant employees could contribute a portion of

their compensation to the Plan. Id. at *2. At the participants' direction,

these contributions were invested in a variety of different funds. Id. One

such fund was the Conexant Stock Fund, which consisted entirely of shares

of Conexant common stock. Amended Complaint ("Amended Compl.") ¶

2. The Plan is a "defined contribution plan" under ERISA section 3(34),

29 U.S.C. § 1002(34). 2006 WL 1098233, at *2. Accordingly, the amount

of benefits that Mr. Graden and other participants are entitled to receive

under the Plan is a function of the investment performance of the particular

funds in which their accounts are invested, rather than a fixed amount

specified by the terms of the Plan.[1]

---

[1] In a defined contribution plan, "benefits [are] based solely upon the amount
contributed to the participant's account, and any income, expenses, gains,
and losses, and any forfeitures of accounts of other participants which may

2

Pursuant to ERISA sections 409 and 502(a)(2), 29 U.S.C. §§ 1109 and 1132(a)(2), Mr. Graden brought this case as a class action against Conexant and various plan officers, directors, administrators, and other fiduciaries. Amended Compl. ¶¶ 17-22. He alleges that the defendants breached their duties under ERISA by continuing to offer Conexant stock as an investment option at a time when it was not prudent to do so. Id. at ¶¶ 7, 58-62. Among other things, he alleges that the price of Conexant stock was artificially inflated because of false and misleading statements about the status of the company's merger with Globespan Virata, Inc. and that, once Conexant lowered its financial projections, the value of its stock declined precipitously. Id. at ¶¶ 52-57. This in turn reduced the value of the Plan's assets and, consequently, resulted in a smaller distribution of vested benefits to Mr. Graden than he would have received if the Plan's assets had been more prudently invested. Id. at ¶¶ 5-6. He further alleges that the

---

be allocated to such participant's account." 29 U.S.C. § 1002(34). Participants are vested in their own contributions and earnings made on those contributions at all times. A participant becomes vested in employer contributions and earnings made on those contributions when the participant fulfills the plan's criteria—often a requirement that the participant work for the employer for a certain number of years. See United States General Accounting Office, Answers to Key Questions about Private Pension Plans, GAO-02-745SP at 14 (Sept. 18, 2002), available at http://www.gao.gov/new.items/d02745sp.pdf.

defendants did not provide participants with accurate information regarding the financial state of Conexant and the Plan. Id. at ¶¶ 64-66.[2]

Defendants moved to dismiss, arguing, inter alia, that Mr. Graden was not a participant within the meaning of ERISA and thus did not have standing to sue. Defs.' Mem. in Supp. of Mot. to Dismiss at 11-14. ERISA section 502(a) limits standing to plan participants, beneficiaries, and fiduciaries (29 U.S.C. § 1132(a)), and under the Supreme Court's decision in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117 (1989), former employees are plan participants only if they have "a reasonable expectation of returning to covered employment or . . . a 'colorable claim' to vested benefits." The defendants contend that Mr. Graden, who had received a distribution of his plan account and had no expectation of returning to covered employment, could not advance a "colorable claim to vested benefits" and therefore lacked standing. Defs.' Mem. in Supp. of Mot. to Dismiss at 13.

Mr. Graden counters that he has a colorable claim to vested benefits because he has not received all of the benefits due to him under the Plan. He claims that the alleged fiduciary violations directly reduced the value of plan assets, and thus the amount of vested benefits he received in distribution. He

_____

[2] The Secretary takes no position on the merits of Mr. Graden's complaint.

seeks to recover the Plan's losses, which "would be paid first to the Plan and then distributed to the Plaintiff class as benefits."  Conexant, 2006 WL 1098233, at *3.  In this manner, the action seeks to ensure that the participants in the Conexant Stock Fund receive all of the benefits that they would have received but for the defendants' breach of their fiduciary duties. Pl.'s Mem. in Opp. to Mot. to Dismiss at 14-19.

     2.    In a decision dated March 31, 2006, the district court granted the defendants' motion to dismiss, holding that the plaintiff was not a plan participant with standing to bring an action under ERISA.  Conexant, 2006 WL 1098233, at *6.  The court based its analysis on the Firestone principle that a former employee is a plan participant, and thus has standing, only if he reasonably expects to return to covered employment or possesses a colorable claim to vested benefits.  Id. at *2.  The court concluded that the plaintiff did not intend to return to employment and accordingly centered its analysis on whether the plaintiff had a claim for vested benefits.  Id. at *3.

     In reaching its holding that Mr. Graden did not have standing, the court drew a distinction between claims for "vested benefits," which former employees have standing to bring, and claims for "damages," which the court held insufficient to support standing.  Conexant, 2006 WL 1098233, at *3 (relying principally on Daniels v. Thomas & Betts, 263 F.3d 66 (3d Cir.

5

2001) and <u>Sommers Drug Store Co. Employee Profit Sharing Trust v. Corrigan</u>, 883 F.2d 345 (5th Cir. 1989)).  Applying the distinction to this case, the court concluded that the plaintiff received all of his vested benefits when he took his distribution from the Plan and that he therefore sought only damages.  <u>Id.</u> at *4-5.  In the court's view, Mr. Graden was not a participant because "the difference between what the Plaintiff's account *might have* earned and what it actually earned is not a benefit that is promised for, or promised under, the terms of the Plan," but instead "a monetary damage amount for an alleged breach of fiduciary duty."  <u>Id.</u> at *5 (emphasis in original).  The court insisted that allowing standing in this case would render ERISA's "statutory standing provision a nullity."  <u>Id.</u>

SUMMARY OF THE ARGUMENT

ERISA allows plan participants to sue on behalf of plans to remedy fiduciary breaches, and it broadly defines "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer."  § 3(7), 29 U.S.C. § 1002(7).  Mr. Graden's claim is that fiduciary breaches caused losses to the Plan, and because vested benefits under defined contribution plans are linked directly to the performance of the plans' assets, 29 U.S.C. § 1002(34), these losses caused a

6

corresponding diminution in the amount of the vested benefits that he

received.  If he prevails on his claim and the Plan recovers its lost assets, Mr.

Graden will be entitled to the payment of additional benefits from the Plan.

As a "former employee" who "is or may become eligible to receive a benefit

of any type," he meets the statutory definition of participant.  Because he has

a "colorable claim" to vested benefits, the plaintiff also meets the Supreme

Court's definition of "participant" in Firestone, 489 U.S. at 116-18.

Accordingly, Mr. Graden has standing under ERISA to bring this claim.

## ARGUMENT

### THE PLAINTIFF HAS STANDING UNDER ERISA TO BRING THIS SUIT BECAUSE HE HAS A COLORABLE CLAIM THAT HE IS ENTITLED TO ADDITIONAL VESTED BENEFITS

In enacting ERISA, Congress sought "to protect . . . the interests of

participants in employee benefit plans . . . by establishing standards of

conduct, responsibility, and obligations for fiduciaries of [such] plans," and

by "providing for appropriate remedies, sanctions, and ready access to the

Federal courts."  Section 2(b), 29 U.S.C. § 1001(b).  To this end, ERISA's

comprehensive civil enforcement scheme provides, in section 502(a)(2), 29

U.S.C. § 1132(a)(2), that "[a] civil action may be brought" by a plan

"participant" to obtain "appropriate relief" under ERISA section 409, 29

U.S.C. § 1109.  Section 409 makes a plan fiduciary personally liable to the

plan for any losses stemming from fiduciary breaches.  The statute

expansively defines "participant" as "any employee or former employee of

an employer . . . who is or may become eligible to receive a benefit of any

type from an employee benefit plan which covers employees of such

employer." 29 U.S.C. § 1002(7).

Congress enacted ERISA following the economic collapse of the

Studebaker-Packard Corporation as a direct response to the inadequacies of

the existing pension laws, which failed to ensure that the terminated

Studebaker employees received the pensions that they had been promised.

Nachman Corp. v. Pension Benefit Guar. Corp., 446 U.S. 359, 375 (1980)

(quoting 2 Legislative History of ERISA 1599-1600 (Comm. Print 1976)

(statement of Sen. Williams, one of the chief sponsors of the bill)).  A

former employee, such as the plaintiff here, who allegedly received less than

he should have received from a plan as a result of fiduciary mismanagement

of plan assets, is precisely the type of plaintiff that the statute was designed

to protect.

A.    The plaintiff has standing because he is a former employee who is or may become eligible to receive additional benefits from the Conexant Retirement Savings Plan

The plaintiff qualifies as a "participant" under the plain terms of the statute because he is a "former employee" who "is or may become eligible to receive" additional benefits from the Conexant Retirement Savings Plan if he succeeds on his fiduciary breach claim. The plan at issue here is a defined contribution plan within the meaning of section 3(34) of ERISA, 29 U.S.C. § 1002(34). In such a plan, "benefits [are] based solely upon the amount contributed to the participant's account, and any income, expenses, gains, and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34). The amount allocated to the participant's account constitutes the participant's vested benefits, and participants are vested in their own contributions and the earning made on those contributions at all times. See United States General Accounting Office, Answers to Key Questions about Private Pension Plans, GAO-02-745SP at 13 (Sept. 18, 2002) ("GAO Report"), available at http://www.gao.gov/new.items/d02745sp.pdf. Thus, the amount of the participant's vested benefits in a defined contribution plan increases in

direct proportion to any increase in overall plan assets and diminishes in direct proportion to any losses.

As a participant in an ERISA-covered defined contribution plan, the plaintiff was entitled to a distribution of the assets and earnings allocated to his account as managed by plan fiduciaries in accordance with ERISA's fiduciary obligations. ERISA protects the interests of plan participants in their retirement benefits by imposing stringent obligations of prudence and undivided loyalty on plan fiduciaries. Section 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B). If, as Mr. Graden alleges, the defendant fiduciaries breached these obligations, the Plan had fewer assets than it should have had and Mr. Graden received a smaller distribution of vested benefits than he was entitled to receive when he withdrew his benefits. In seeking restoration to the Plan for alleged fiduciary breaches that took place before he received his benefits, Mr. Graden seeks amounts that can and should be allocated in a manner that ultimately augments his individual vested benefits.[3] These amounts are precisely the "vested benefits" to which

---

[3] Even though he no longer has a plan account, if Mr. Graden succeeds on his claim, he can obtain the outstanding benefits through a recovery to the Plan and a subsequent establishment, by the district court, of a constructive trust to distribute any recovery to the participants and beneficiaries. See Nechis v. Oxford Health Plans, 421 F.3d 96, 103 (2d Cir. 2005); Amalgamated Clothing & Textile Workers Union v. Murdock, 861 F.2d 1406, 1417-1418 (9th Cir. 1988) (Although the plaintiffs had "received their

a plan participant in a defined contribution plan is entitled under ERISA. 29

U.S.C. § 1002(34). Thus, he is a "former employee" who is or may become

"eligible to receive a benefit of any type" from the Plan in the form of the

amount he would have received had the defendants not breached their

fiduciary duties. 29 U.S.C. § 1002(7). As such, he is a "participant" who

has standing to sue under ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2).

　　Reading the term "participant" to include Mr. Graden is fully

consistent with the Supreme Court's decision in Firestone. In Firestone, the

Supreme Court considered the statutory definition of "participant" in the

context of a suit to enforce ERISA's plan document disclosure provisions.

489 U.S. at 107. The Court held that, in order to be considered a participant

entitled to plan documents, a former employee must either have "a

reasonable expectation of returning to covered employment" or "a colorable

claim that (1) he or she will prevail in a suit for benefits, or that (2)

eligibility requirements will be fulfilled in the future." Id. at 117-18. The

plaintiff here has a colorable claim that he will prevail in a suit for benefits

because he alleges that defendants' fiduciary breaches caused losses to the

Plan and reduced the overall amount of vested benefits that he received.

---

actuarially vested plan benefits," the court found that a constructive trust in
their favor "may be construed as a 'benefit of any type from an employee
benefit plan'").

11

To hold otherwise would produce the absurd result that when a fiduciary breach causes significant financial loss to a defined contribution plan, thereby substantially diminishing the benefits payable to all accounts, participants will have unequal rights:  affected employees who stay in the plan could bring an action to recover their lost benefits, while employees who retired and took a diminished distribution could recover nothing at all. That result cannot be correct – either all affected employees have a "colorable claim" or none do.  Certainly, if two participants with equal account balances incur equal losses on the same date, they should both have standing.  To find that the participant who had not yet retired retains standing, while the participant who retired—and actually suffered the diminished distribution—does not, would neither promote ERISA's remedial objectives nor comport with its broad definition of "participant."  Nothing in ERISA compels such an arbitrary or illogical result.

Indeed, this Circuit has recognized that ERISA's statutory standing provisions should not be read to unduly restrict standing.  Most recently, in Leuthner v. Blue Cross & Blue Shield, this Court emphasized that Congress intended "federal courts to construe [ERISA's] statutory standing requirements broadly in order to facilitate enforcement of its remedial provisions."  454 F.3d 120, 128-29 (3d Cir. 2006).  This Court recognized

12

that ERISA's definition of participant for purposes of standing is essentially a codification of the traditional test which considers whether the plaintiff is within the zone of interest that ERISA was intended to protect. Id. at 126; see also Vartanian v. Monsato Co., 14 F.3d 697, 701 (1st Cir. 1994).[4] Mr. Graden, as a plan participant who allegedly received fewer vested benefits because of a fiduciary breach, plainly falls within the zone of interest ERISA was enacted to protect in its statutory definition of participant.

In contrast to this Court's recognition that the courts are to construe the standing provisions broadly "in order to facilitate enforcement of its remedial provisions," Leuthner, 454 F.3d at 128-29, the district court's decision adopted a cramped approach, which is inconsistent with the remedial purposes and text of the Act. Relying principally on the distinction made in the Daniels and Sommers decisions between "vested benefits" and "damages," the court concluded that the claim here is for "damages," and that Mr. Graden had no colorable claim for additional vested benefits.

---

[4] Other circuits have also broadly construed ERISA's standing provisions. See Panaras v. Liquid Carbonic Indus. Corp., 74 F.3d 786, 790-91 (7th Cir. 1996) (finding that Firestone's requirement of "vested benefits" should be interpreted expansively and that "[t]he requirement of a colorable claim is not a stringent one"); Davis v. D.L. Featherstone, 97 F.3d 734, 737-38 (4th Cir. 1996) ("A claim is colorable if it is arguable and nonfrivolous, whether or not it would succeed on the merits."); Mullins v. Pfizer, Inc., 23 F.3d 663, 667-68 (2d Cir. 1994) (adopting a "but for" exception to Firestone based upon Congress's intent that ERISA afford "broad protection").

13

Although the court relied upon <u>Daniels</u> and <u>Sommers</u> as support,
neither case supports its decision. Indeed, <u>Daniels</u> was not a standing case at
all. In <u>Daniels,</u> the plaintiff received a life insurance benefit payment
following her husband's death. 263 F.3d at 71. Believing that this payment
was inconsistent with the fiduciaries' prior description of the plan terms, she
requested various plan documents to verify her entitlement. <u>Id.</u> After the
fiduciaries failed to provide the documents in a timely manner, she brought
an action alleging a violation of ERISA for failure to provide plan materials
under ERISA section 104(b)(4), 29 U.S.C. § 1024(b)(4), and alleging that
the plan fiduciaries had misled her and her husband about their benefits. <u>Id.</u>
at 76-77. The parties did not challenge Ms. Daniel's standing to bring her
claims, and this Court specifically noted that it was not addressing the
question of standing. <u>Id.</u> at 78 n.6. The court did consider, however,
whether Ms. Daniels was a "beneficiary" in assessing her request for
documents. In terms that parallel the statutory definition of "participant,"
ERISA defines a "beneficiary" as a party "who is or may become entitled to
a benefit." 29 U.S.C. § 1002(8). In considering whether Ms. Daniels was a
"beneficiary," the Court noted that the relief she sought—"damages"
stemming from the defendants' alleged breach of its fiduciary duty to
provide the materials—did not constitute a "benefit" for purposes of her

14

request for documents. 263 F.3d at 78. Even so, the Court found that she should have been given the documents as a "beneficiary" because at the time that she made her request for documents, she reasonably believed she was entitled to additional benefits under the plan, even if she was not, in fact, entitled to the benefits. Thus, consistent with ERISA's remedial purposes, the Court took an expansive approach in determining whether Ms. Daniels had a "colorable claim to vested benefits," and was, accordingly, a plan beneficiary.

The Court's distinction between "benefits" and "damages" in the particular context of Daniels has no bearing on this case. Unlike Mr. Graden, the plaintiff in Daniels did not seek recovery for a loss to the plan that would entitle her to an additional payment of plan benefits, but instead sought damages from the defendants payable solely to her for damages that she, as opposed to the plan, had directly sustained. While this Court in Daniels was correct in characterizing the plaintiff's claim as one for damages, its assessment has no bearing on a claim, like the one here, which would ultimately entitle the plaintiff to more plan benefits.

Similarly, the district court's reliance on Sommers for the proposition that Mr. Graden lacked standing is misplaced. Mr. Graden has standing to bring his action for precisely the same reason that the plaintiffs had standing

in <u>Sommers</u>.  In <u>Sommers</u>, the Fifth Circuit held that plaintiffs, former

participants in a terminated defined contribution profit-sharing plan, had

standing to bring an ERISA action against fiduciaries for losses allegedly

resulting from the sale of the trust's stock for less than fair market value.

Even though the plan had already been terminated and the participants had

received the entire value of their vested account balances, the court reasoned

that the plaintiffs' claim  to recover the plan's losses gave them standing.

Because they had allegedly received reduced distributions as a result of the

fiduciary breach, they had a colorable claim for additional vested benefits.

883 F.2d at 349-50.

Here too, the plaintiff seeks relief that clearly could affect the amount

of vested benefits which he will ultimately receive from the Plan.  Mr.

Graden was a plan participant when the alleged fiduciary breaches occurred

and, as in <u>Sommers</u>, he alleges that the breaches caused a loss to the Plan

which reduced the amount of vested benefits that he received.  <u>See</u> Amended

Compl. ¶ 15.  As in <u>Sommers</u>, the Plan distributed the account balances to

the plan's participants in accordance with the plan terms, but the amounts

were reduced because of fiduciary misconduct.  And, as in <u>Sommers</u>, if Mr.

Graden is successful in his suit and losses to the Plan are restored, his vested

benefits will be augmented.  <u>See</u> Amended Compl. Prayer for Relief.

Thus, this case and <u>Sommers</u> are identical in all legally significant respects. Despite having received payment of vested benefits on plan termination, Mr. Graden, like the plaintiffs in <u>Sommers</u>, has a colorable claim that he is still "eligible to receive a benefit of any type" in the form of an additional recovery from the Plan and, accordingly, is a "participant" for purposes of ERISA standing. 29 U.S.C. § 1002(7).

In its decision, the district court suggests that <u>Sommers</u> is distinguishable because the plaintiffs in that case alleged that the plan had originally held stock which was worth more than its sale price, whereas Mr. Graden alleges that the stock was never worth what the plan paid for it because of Conexant's misstatements. <u>Conexant</u>, 2006 WL 1098233, at *4. This is a distinction without a difference: there is no good reason why participant standing should turn on whether the alleged misconduct involved the sale of too many shares of stock for too little money (<u>Sommers</u>) or the payment of too much money for too little stock (<u>Graden</u>). In either event, a plan asset was exchanged for something less valuable, and the end result was a smaller distribution of vested benefits to the plan's participants. The plans allegedly squandered valuable assets to the detriment of plan participants,

and former employees have a continuing interest in receiving the benefits they would have received but for the breach.[5]

Thus, <u>Graden</u> and <u>Sommers</u> are indistinguishable. In <u>Graden</u> and <u>Sommers</u> alike, the participants received, as vested benefits, every dollar in their accounts as of the date of distribution based on the "income, expenses, gains, and losses" that those accounts had incurred. 29 U.S.C. § 1002(34). In each case, however, they would have received larger distributions of vested benefits but for the alleged fiduciary breaches. <u>Sommers</u> correctly concluded that the claim to recover these additional amounts counts as a colorable claim for additional vested benefits, and the same conclusion applies here.

The district court also erred in concluding that a finding of standing in the context of this case would render the "statutory standing provision a nullity." <u>Conexant,</u> 2006 WL 1098233, at *5. Mr. Graden's standing to

---

[5] Similarly, any purported distinction based on the "speculative" nature of the losses in <u>Graden</u> as opposed to <u>Sommers</u> is unfounded. In either case, the plaintiff would be entitled to a loss recovery only if he proved that the breach caused a particular loss based on competent evidence, presumably including expert testimony. The proper value of the stock in <u>Sommers</u> was a matter of dispute, and the valuation of closely-held stock is hardly a matter of simple arithmetic. Moreover, in the present case, there is little question that current participants could bring an action to recover the Plan's losses, and would be entitled to an allocation of those losses to their accounts if they prevailed. There is no basis in law or logic to treat these current employees differently than former employees who have already incurred a direct reduction in their benefits as a result of the breach.

18

bring this suit stems from his continuing claim to additional benefits from a defined contribution plan. Thus, the present case, like Sommers, is readily distinguishable from cases involving defined benefit plans where the receipt of vested benefits would properly exclude a former employee from bringing a fiduciary breach claim. In a defined benefit plan, the participant is promised a fixed benefit which does not vary depending on the investment performance of the plan.[6] In such cases, once the participant has received a distribution of the promised benefits, he has received every dollar he is entitled to receive under the plan. Any claim he could bring to recover losses to the plan for breaches that occurred before he received his distribution would merely be claims for "damages" to the plan that could not possibly give rise to a "colorable claim for vested benefits" by the plaintiff. The plaintiff has no claim for additional benefits and, accordingly, no cognizable interest or entitlement in any recovery the plan may receive for its losses. Similarly, a plaintiff who has received his full benefit from a defined benefit plan has no interest to be protected by challenging a plan

---

[6] In a defined benefit plan, the employer is required to make contributions to the plan, and the assets of the plan are invested to insure that there will be sufficient money in the plan to cover the promised benefits. The amount of the benefit for each participant does not increase or decrease when the plan experiences gains or losses. See GAO Report 02-745SP at 8-10.

amendment that occurred after his retirement, see Yancy v. American

Petrofina, Inc., 768 F.2d 707 (5th Cir. 1985), or representations made while

he was a participant that did not impact the amount of his vested benefits.

See Kuntz v. Reese, 785 F.2d 1410 (9th Cir. 1986)(per curiam) (rev'g Kuntz

v. Reese, 760 F.2d 926, 929 (9th Cir. 1985)). [7]

As the Fifth Circuit recognized in Sommers, however, the same

cannot be said for a defined contribution plan because the plan's losses

directly translate into reduced benefit payments.[8]  Thus, the district court

erred when it said that "[t]he difference between what the Plaintiff's account

*might have* earned and what it actually earned is not a benefit that is

promised for, or promised under, the terms of the Plan." 2006 WL 1098233,

---

[7] In Yancy, the plaintiff's employer announced that it would amend the fixed benefits and apply a less favorable interest rate for calculating lump-sum distributions. 768 F.2d at 708.  During the three month window between this announcement and its implementation, the plaintiff retired under the older, more generous rate and, after receiving his benefits, sued alleging that the amendment violated ERISA. Id.  In Kuntz, the plaintiffs alleged that the defendants misinformed them as to the amount they would receive in distribution. 760 F.2d  at 929.

[8] To illustrate the difference, if a fiduciary stole from a defined benefit plan, a former employee who received all the benefits he was due upon retirement would not have been harmed by the theft and would not have standing to sue on behalf of the plan to recover the losses.  If the same theft occurred in a defined contribution plan, however, the former employee would have been directly harmed, even though he received everything that was in his (post-theft) account at the time of his retirement, and so should have standing to sue.

at *5 (emphasis in original). In a defined contribution plan, the promised benefit includes, as a matter of definition, "any income, expenses, gains, and losses" allocated to the participant's account. 29 U.S.C. § 1002(34). If the earnings allocated to the participant's account were reduced because of losses stemming from fiduciary misconduct, the participant received less than he should have received from the plan and retains standing to recover the plan's losses.

Indeed, a number of district courts have properly followed Sommers to grant standing to plaintiffs similarly situated to the plaintiff here. See In re Williams Cos. ERISA Litig., 231 F.R.D. 416, 422-23 (N.D. Okla. 2005) (former employees have colorable claims to vested benefits where their account balances would have been larger at the time they took their distributions from a defined contribution plan but for the fiduciary breach); Thompson v. Avondale Indus., Inc., No. Civ.A. 99-3439, 2001 WL 1543497, at *2 (E.D. La. Nov. 30, 2001) (retired employee has standing, despite having accepted the balance of his employee stock ownership plan account, because if successful, his suit will result in additional vested benefits being paid to him); and Kuper v. Quantum Chem. Corp., 829 F. Supp. 918, 923 (S.D. Ohio 1993) (former employees who allege that fiduciary breaches reduced the amount in their defined contribution plan,

21

and thus their lump-sum distributions, retain a colorable claim to vested

benefits and therefore, standing to sue), aff'd sub nom., Kuper v. Iovenko, 66

F.3d 1447 (6th Cir. 1995);  see also In re Aquila ERISA Litig., _ _ F.R.D.

__, 2006 WL 2289234, at *2 (W.D. Mo. July 18, 2006) (former employee

who alleges that imprudent investment by fiduciaries reduced the amount

she received in rolling over her account, retains a vested benefit and thus

standing because if successful, her claim will result in a distribution to the

plan and the payment of a benefit); Rankin v. Rots, 220 F.R.D. 511 (E.D.

Mich. 2004) (former employee has standing where he was a participant in

the defined contribution plan during the time when the alleged breaches of

fiduciary duty occurred).

　　　To be sure, some district courts have misread Sommers to hold that

standing under ERISA does not extend to plaintiffs, like Graden, who took

distributions of their benefits from defined contribution plans before filing

suit for fiduciary breach.[9]  One such case is Hargrave v. TXU Corp., 392 F.

---

[9] See In re RCN Litig., No. 04-5068, 2006 WL 753149 (D.N.J. Mar. 21, 2006); In re AEP ERISA Litig., _ _ F. Supp. 2d _ _, 2006 WL 1890038 (S.D. Ohio July 12, 2006);  Dickerson v. Feldman, 426 F. Supp. 2d (S.D.N.Y. 2006), appeal docketed, No. 06-1616-cv (2d Cir. April 5, 2006); Holtzscher v. Dynegy, Inc., No. 05-3293, 2006 WL 626402 (S.D. Tex. Mar. 13, 2006), appeal docketed, No. 06-20297 (5th Cir. Apr. 18, 2006); LaLonde v. Textron, Inc., 418 F. Supp. 2d 16 (D.R.I. 2006) (settled on appeal);  In re Admin. Comm. ERISA Litig., No. C03-3302, 2005 WL 3454126 (N.D. Cal. Dec. 16, 2005).

Supp. 2d 785 (N.D. Tex. 2005), appeal docketed, No. 05-11482 (5th Cir.

Dec. 29, 2005), which the district court relies heavily on to support its

restricted interpretation of vested benefits. But these decisions, including

Hargave, incorrectly interpret standing requirements because they do not

account for the nature of benefits under a defined contribution plan. In

particular, they disregard the fact that the amount of a participant's vested

benefits in a defined contribution plan increases in direct proportion to any

increase in overall plan assets and decreases in proportion to any losses.

B.    Reading ERISA to give plaintiffs standing to sue if their lump-
      sum distribution is diminished as a result of a fiduciary breach
      is consistent with the purposes and policies of ERISA

Affirming the district court's cramped reading of ERISA's standing

requirements would undermine the remedial goals of ERISA, "[t]he primary

purpose of [which] is the protection of individual pension rights." H.R. Rep.

No. 93-533 (1973), reprinted in 1974 U.S.C.C.A.N. 4639; see also Martin v.

Feilen, 965 F.2d 660, 671 (8th Cir. 1992) (one of ERISA's basic remedies

for a breach of fiduciary duty is "to restor[e] plan participants to the position

in which they would have occupied but for the breach of trust"). As this

Court recognizes, "ERISA's legislative history indicates that Congress

intended the federal courts to construe the statutory standing requirements

broadly in order to facilitate enforcement of its remedial provisions."

Leuthner, 454 F.3d at 128.[10]  It would be inconsistent with Congress's intent

to narrowly read the term "participant" so as to close the courthouse doors to

former employees who, like the plaintiff here, have allegedly not received all

that they are due under their plan.

Such a holding would produce the incongruous result that fiduciaries

could deprive employees of the right to seek redress for serious violations of

ERISA simply by making distributions or terminating the plan altogether.

See Rankin, 220 F.R.D. at 519-20 (recognizing the absurdity of allowing

employers to cut off participant status simply by paying some level of

benefits); Vartanian, 14 F.3d at 702 ("Such a holding would enable an

employer to defeat the employee's right to sue for a breach of fiduciary duty

by keeping his breach a well guarded secret until the employee receive[d]

his benefits or, by distributing a lump sum and terminating benefits before

the employee can file suit."); Amalgamated Clothing & Textile Workers

Union v. Murdock, 861 F.2d 1406, 1418-19 (9th Cir. 1988) ("It would be

ironic if the very acts of benefit payment and plan termination that allegedly

resulted in a fiduciary personally obtaining ill-gotten profits should also

serve to deny plan beneficiaries standing to seek a constructive trust on those

_____

[10] See also Vartanian, 14 F.3d at 702 ("The legislative history of ERISA
indicates that Congress intended the federal courts to construe the Act's
jurisdictional requirements broadly in order to facilitate enforcement of its
remedial provisions.").

profits to redress the fiduciaries' alleged breach of the duty of loyalty").

ERISA should not be read to deny employees the right to recover what is

rightfully theirs under the plan simply because they received a reduced

distribution of their benefits.

Moreover, the possibility that employees will leave employment and

take lump-sum distributions without realizing that their benefits have been

reduced by a fiduciary breach is particularly real in the case of defined

contribution plans, like the plan at issue.  Defined contribution plans are

designed to be portable, meaning that participants can change jobs and take

their retirement benefits with them by receiving a distribution of their plan

accounts.  GAO Report 02-745SP at 10.  Former employees' interest in

being paid the full amount that they are owed by their plan is no less than

that of current employees who continue to work and participate in the plan.

To hold that these former employees lack standing, even if their benefits

were allegedly diminished because of fiduciary breaches, defeats the

purposes of ERISA and endangers employees' retirement security.

Mr. Graden has a "colorable" claim that the defendants breached their

duties by, among other actions, imprudently continuing to allow investment

of plan assets in Conexant stock despite knowing that the stock price was

artificially inflated.  These breaches create a colorable claim to benefits

because, if true, they caused losses to the Plan and a resulting decrease in the

amount of benefits the plaintiff received when he withdrew his account.  The

plaintiff seeks nothing more and nothing less than the amount he should

have received when he withdrew from the Plan.  Such an allegation is a

claim for vested benefits and Mr. Graden, therefore, has standing to bring his

action to enforce ERISA.

CONCLUSION

For the reasons stated above, the Secretary respectfully requests that

this Court reverse the decision of the district court.

Respectfully submitted,

HOWARD M. RADZELY
Solicitor of Labor

TIMOTHY D. HAUSER
Associate Solicitor

KAREN L. HANDORF
Counsel for Appellate and
Special Litigation


/s/ Elizabeth Goldberg
ELIZABETH S. GOLDBERG
Attorney
United States Department of Labor
Office of the Solicitor,
Plan Benefits Security Division
200 Constitution Avenue, N.W.
Room N-2700
Washington, D.C. 20210
Phone: (202) 693-5796
Fax:    (202) 693-5774

SEPTEMBER 1, 2006

27

<u>COMBINED CERTIFICATIONS</u>

1.    **Certification of Bar Membership**

I hereby certify that Karen Handorf, Counsel for Appellate and Special Litigation, U.S. Department of Labor, is a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

2.    **Certification of Word Count**

I hereby certify that this brief complies with the type volume limitation of Fed. R. App. P. 32(a)(7)(B), contains 6132 words, excluding the parts exempted by Fed. R. App. R. 32(a)(7)(B))(iii), and has been prepared in a proportionally-spaced typeface using Microsoft XP in Times New Roman font, 14-point.

3.    **Certification of Service**

I hereby certify that on this 1st day of September, 2006, electronic copies of this brief were sent to the U.S. Court of Appeals for the Third Circuit and the parties of record.  In addition, 10 copies of this brief were mailed to the Court, and 2 copies were mailed, via Federal Express courier service, to the following:

Robert I. Harwood
Jeffrey M. Norton
Wechsler Harwood LLP
488 Madison Avenue, 8th Floor
New York, New York 10022

Lisa J. Rodriguez
Trujillo Rodriguez & Richards, LLP
8 Kings Highway West
Haddonfield, New Jersey 08033

*Attorneys for Plaintiff-Appellant*

Richard A. Rosen, Esq.
Robyn Tarnofsky, Esq.
Paul Weiss Rifkind Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019

Deborah A. Silodor, Esq.
Lowenstein Sandler PC
65 Livingston Avenue
Roseland, NJ 07068

*Attorneys for Defendants-Appellees*

4.    **Certification of Identical Compliance of Briefs**

In hereby certify that the PDF file and the text of the paper version of the brief are identical.

5.    **Certification of Virus Check Service**

I hereby certify that a virus check, using McAfee Security VirusScan Enterprise 7.1.0., was performed on the PDF file and paper version of this brief, and no viruses were found.

6.       **Certification of Notice of Appearance Service**

I hereby certify that a copy of the Notice of Appearance for Elizabeth

Goldberg and a copy of the Notice of Appearance for Karen Handorf were served

on counsel of record via Federal Express.


/s/ Elizabeth Goldberg