# EXHIBIT B

092806m2.txt

1

```
 1              UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF MASSACHUSETTS
 2
                                    Civil Action
 3                                  No. 04-11380-WGY
                                       (Consolidated)
 4

 5    * * * * * * * * * * * * * * * *
                                    *
 6    KERI EVANS, et al.,           *
                                    *
 7              Plaintiffs,         *
                                    *
 8    v.                            *
                                    *
 9    JOHN F. AKERS, et al.,        *
                                    *
10              Defendants.         *
      ─────────────────────────     *
11                                  *   MOTION HEARING
      LAWRENCE W. BUNCH, et al.,    *
12                                  *
                Plaintiffs,         *
13                                  *
      v.                            *
14                                  *
      W.R. GRACE & CO., et al.,     *
15                                  *
                Defendants.         *
16    * * * * * * * * * * * * * * * *
17              BEFORE:  The Honorable William G. Young,
                              District Judge
18    APPEARANCES:
19              GILMAN and PASTOR, LLP (By David Pastor,
           Esq.), 60 State Street, 37th Floor, Boston,
20         Massachusetts 02109
                           - and -
21              SCHIFFRIN & BARROWAY LLP (By Edward W.
           Ciolko, Esq. and Katherine B. Bornstein, Esq.),
22         280 King of Prussia Road, Radnor, Pennsylvania
           19087, on behalf of the Evans Plaintiffs
23
                                    1 Courthouse Way
24                                  Boston, Massachusetts
25                                  September 28, 2006
```

2

```
 1         A P P E A R A N C E S (Cont'd)

 2
              WAITE, SCHENEIDER, BAYLESS & CHESLEY CO.,
```

Page 1

092806m2.txt

3  LPA (By Terrence L. Goodman, Esq. and Jane H.
   Walker, Esq.), 1513 Fourth & Vine Tower, 1 West
4  Fourth Street, Cincinnati, Ohio 45202, on behalf
   of the Bunch Plaintiffs

5

          MINTZ, LEVIN, COHN, FERRIS, GLOVSKY &
6  POPEO, P.C. (By Matthew C. Hurley, Esq.), One
   Financial Center, Boston, Massachusetts 02111
7                      - and -
          ARENT FOX PLLC (By Carol Connor Flowe,
8  Esq.), 1050 Connecticut Avenue, N.W., Washington,
   D.C. 20036
9                      - and -
          DORI KUCHINSKY, In-House Counsel, W.R.
10 Grace & Co., on behalf of All Defendants Except
   State Street Bank & Trust Company and State Street
11 Global Advisors

12         PAUL, HASTINGS, JANOFSKY & WALKER LLP (By
   Scott M. Flicker, Esq.), 875 15th Street, N.W.,
13 Washington, D.C. 20005, on behalf of State Street
   Bank & Trust Company and State Street Global
14 Advisors

15

16

17

18

19

20

21

22

23

24

25

⬜

                                              3

1         THE CLERK:  Calling Civil Action 04-11380, Evans v.

2  Akers.

3         THE COURT:  All right, who represents who here?

4         MR. PASTOR:  David Pastor, your Honor, from Gilman

5  and Pastor, for the Evans plaintiffs.

6         MS. BORNSTEIN:  Katherine Bornstein from Schiffrin

092806m2.txt

7  & Barroway, for the Evans plaintiffs.

8        MR. CIOLKO:  Good afternoon, your Honor.  Edward

9  Ciolko from Schiffrin and Barroway for the Evans plaintiffs.

10        MS. FLOWE:  Carol Connor Flowe on behalf of the

11  Grace defendants, your Honor.

12        MS. KUCHINSKY:  Dori Kuchinsky, on behalf of the

13  Grace defendants, your Honor.

14        MR. FLICKER:  Scott Flicker on behalf of State

15  Street, defendant in the Bunch case.

16        MR. HURLEY:  Matthew Hurley, Mintz Levin, on behalf

17  of the Grace defendants also, your Honor.

18        MR. GOODMAN:  Terry Goodman, your Honor, on behalf

19  of the Bunch plaintiffs in the Bunch case.

20        MS. WALKER:  Jane Walker also on behalf of the

21  Bunch plaintiffs in the Bunch case, your Honor.

22        THE COURT:  All right.  Please be seated.

23        Putting aside the question of class certification

24  which, of course, is the reason you're all here, when have I

25  scheduled this case for trial?

                                                4

1        THE CLERK:  I'm looking.  It was on the running

2  trial list for April of 2007.

3        THE COURT:  Thank you.  Very well.

4        All right.  I think I should, I think it would

5  sharpen it if I turned to the defense first.

6        Why ought I not certify a class as the plaintiffs

7  have requested here?

8        MS. FLOWE:  Your Honor, I can address the Evans

9  complaint --

10        THE COURT:  Yes.

092806m2.txt

11          MS. FLOWE:  -- on that question.  And I would say

12     the primary reason, your Honor, is because the two Evans

13     plaintiffs lack standing to bring this action in the first

14     place.  As we've explained in our opposition --

15          THE COURT:  That's because they will never be

16     coming back to work, is that it?

17          MS. FLOWE:  That's correct.  Because they do not

18     fit within the definition of participant within the meaning

19     of ERISA.  Now --

20          THE COURT:  The case law does not go entirely your

21     way on the issue, does it?

22          MS. FLOWE:  Well, you know, the interesting thing

23     is, your Honor, there's a definite trend.  In the last

24     twelve months there have been twelve standing decisions

25     issued in these so-called stock drop cases.  Eleven of the

                                                     5

1     twelve did in fact go our way.  Only one went the other

2     direction.

3          Now, there are a couple going the plaintiffs way

4     that were, you know, several years ago, maybe even a year

5     and-a-half ago.  But all of the recent cases have gone, with

6     the one exception, in the one direction.  And that

7     direction, your Honor, happens to be consistent with this

8     Court's decision in Nahigian, if I'm pronouncing that

9     correctly, versus Leonard, as well as the First Circuit's

10     decision in Crawford v. Lamantia.  So all of the case law in

11     that context goes our way.

12          The plaintiffs argue, well, but that's contrary to

13     the Department of Labor's view in their reply brief.  Well,

14     it may be that the Department of Labor is filing amicus

                              Page 4

092806m2.txt

15    briefs that take a contrary position.  But the fact of the
16    matter is the Department of Labor also has a stamped
17    regulation on this question which was issued in 1975 and
18    which says that an individual is not a participant if the
19    individual has received from the plan a lump sum
20    distribution or a series of distributions which represent
21    the balance of his or her credit under the plan.  So the
22    litigating position the agency is currently taking is
23    actually consistent to its own regulation.
24         And there's also good policy reasons for the
25    position that we're taking, your Honor.  If people who are

6

1    no longer with the company and who have taken a full
2    distribution of their benefit are participants, for example,
3    then a whole realm of ERISA requirements are going to be
4    imposed on employers and plan administrators with respect to
5    those individuals.  For example, participants are supposed
6    to receive summary plan descriptions periodically.
7    Participants receive various statements from the plan.
8    Participants receive summary annual reports.
9         If these people are participants then plan
10    administrators are going to have to figure out who of the
11    people who have left and taken all of their benefits
12    nevertheless believe they have a colorable claim against the
13    employer and therefore fit within this definition and have
14    to receive these kind of documents.
15         The fact of the matter is ERISA was a compromise, a
16    political compromise among a lot of competing interests, and
17    one of the interests congress was concerned about is not
18    making plans so expensive that employers would either

092806m2.txt

19    terminate them as the law permits them to do or not start

20    them in the first place.

21         We believe this is one of the limitations that

22    congress imposed that only participants in the sense of

23    active participants have standing in these cases.

24         THE COURT:  Go ahead, I'm listening to you.

25         MS. FLOWE:  I guess the final point I would make

                                                        7

1     is, on this particular standing point, is that allowing

2     former participants -- it's particularly troublesome to

3     allow a former participant to be a class representative in

4     this kind of case because their interests conflict in

5     several respects with those of active participants.  An

6     active participant, if they were going to bring such a case,

7     would have to give thought to balancing off whatever benefit

8     they might receive from bringing an action on the perceived

9     wrong versus making the plan so expensive and troublesome

10    for their employer that it might be terminated.  Former

11    participants have no such consideration to take into

12    account.

13         THE COURT:  Well argued.  And let me -- I'm just

14    talking hypothetically.  Suppose I disagree with this and I

15    think there's standing.  Really the other elements of a

16    class action are met, aren't they?

17         MS. FLOWE:  With respect to the prudence claim in

18    the complaint we would acknowledge, yes, they are met.  We

19    do not believe they are met for the misrepresentation claim.

20    The misrepresentation claim is not a claim on behalf of the

21    plaintiffs, it's an individualized claim.  And it's well

22    settled that at least in this context that an affirmative

                            Page 6

092806m2.txt

23    misrepresentation requires proof of reliance.  That's an
24    individualized kind of matter.  It doesn't fit under
25    Rule 23(b)(3) because the common questions don't predominate

8

1    but rather these reliance issues will predominate.
2         THE COURT:  Thank you.
3         MS. FLOWE:  And it doesn't fit under 23(b)(1),
4    because a decision for one participant won't bind anybody
5    else because they've got different facts.
6         THE COURT:  Fairly said.
7         Now, does Bunch want to argue the matter here?  The
8    Bunch -- well, I jumped the case.  You all, you all share in
9    that argument?
10        MR. FLICKER:  Your Honor, we have now been
11   dismissed from the Evans case, so we take no position on the
12   Evans class certification.
13        THE COURT:  And that's all that's before me is
14   class certification in the Evans case.
15        MR. FLICKER:  I believe both sets of plaintiffs in
16   these consolidated cases have filed separate class
17   certification motions.
18        THE COURT:  So you're just here listening then.
19        MR. FLICKER:  I'm listening to the evidence, but
20   when you turn to the Bunch class certification I'll speak.
21        THE COURT:  Well, let's turn to it.
22        MR. FLICKER:  Okay.
23        THE COURT:  I'll hear you.
24        MR. FLICKER:  Your question was why shouldn't we
25   certify a class.  And in Bunch the answer is twofold.

092806m2.txt

9

1    First, the Bunch plaintiffs here had failed to adequately

2    define their claims to permit us to be able to determine

3    what class would be affected by those claims; and secondly,

4    the class definition that they proffered, at least in their

5    motions, is grossly overbroad and the failure to adequately

6    define the class is a basis to dismiss class certification.

7         On the first issue, the issue of what claim are we

8    dealing with here, the defendants in Bunch are focused

9    really on whether we have a class action that will be

10    administrable, and precisely what claims are we going to be

11    adjudicating on behalf of the class that ultimately gets

12    imposed and what it does.  And that is the threshold

13    question we have to address on class certification.

14         We thought, the defendants thought we knew at the

15    conclusion of our last hearing before your Honor what the

16    claim was that Bunch was bringing.  At that time, when the

17    Court permitted us to frame up the case for a possible

18    summary judgment, the Court asked the Bunch plaintiffs to

19    please define exactly what your claim is.  You asked whether

20    it was a claim to attack the decision to divest the Grace

21    plan of the Grace stock, would the plaintiffs focus on that

22    issue or would the plaintiffs focus on its allegation that

23    State Street sold the stock to itself.

24         And in this Court the Bunch plaintiffs stood up and

25    said, your Honor, we are not bringing a claim to attack the

□

10

1    decision to divest the Grace stock out of the plan.  We're

2    focused only on what appears to be State Street's

3    acquisition of shares as a result of the sale.

Page 8

092806m2.txt

4          THE COURT:  I recall it.

5          MR. FLICKER:  When we got the class certification

6    papers, your Honor, we found this motion, we see three

7    different claims asserted there.  There's a claim that the

8    divestment and sale out of the plan was improper.  There's

9    the claim we thought we were dealing with, the self-dealing

10   claim, that State Street somehow sold the stock out of the

11   plan to itself.  That's the case we thought we had.  And a

12   third claim now, that even if State Street didn't sell the

13   stock to itself, that other funds that are managed by State

14   Street or acquire small amounts of Grace stock at the same

15   time, that somehow that's an ERISA violation.

16          Well, your Honor, for us to be able to talk about

17   class certification intelligently, we need to know what

18   claims we're dealing with to know what class is affected.

19          THE COURT:  Thank you.

20          MR. FLICKER:  And, your Honor, on that third claim

21   in particular, if that's the claim that the plaintiffs want

22   to bring here, we haven't had an opportunity even to brief

23   the question of whether that states a claim under ERISA.  I

24   submit it doesn't.  We would like the opportunity to address

25   that at some point in this case before we get to this

[]

                                           11

1    question of whether there's a class to be affected by such a

2    claim.  So, I have a problem with what claim are we dealing

3    with.

4          The second issue, the class definition issue, is

5    similarly difficult because we have a motion by the Bunch

6    plaintiffs that anybody who held Grace stock in this plan

7    over a 28 year period from 1976 to 2004 is a potential class

                               Page 9

092806m2.txt

8   member.  That's an absolutely unadministrable class of

9   course.  But in addition to that, there's a whole group of

10   people in that who would have no standing, no injury, under

11   any of the three species of claim that we've discussed

12   today.  Because if the allegation is that people were

13   injured when the Grace stock was sold out of the plan --

14   and, your Honor, it's in the record that it was sold between

15   February 2004 and April 2004 -- if people are going to stand

16   in the class and say they were injured because they held

17   that stock and it was sold out from under them before the

18   stock went up, it's inconceivable that anybody who was a

19   participant back in 1976, 1980 or 1990 is injured by that

20   unless they were holding the stock during that two month

21   period from February 2004 to April 2004.

22         So the plaintiffs have proffered here a class that

23   doesn't fit any of the potential theories we've discussed.

24   Of course, we need to know which theory we're dealing with

25   before we know whether we've got a class.

12

1         THE COURT:  Thank you.  All right, I'll hear the

2   plaintiffs.

3         MR. GOODMAN:  Thank you, your Honor.

4         Let me address the issue as to the claim and then

5   I'll, with the Court's permission, address the second issue

6   related to the class definition.

7         In terms of the claim, the claim is, as represented

8   to the Court, primarily that there's a self-dealing issue in

9   connection with State Street acquiring a significant

10   interest in Grace stock after it gained control.

11   Essentially there have been two documents filed called 13F's

Page 10

092806m2.txt

12    in federal, with the SEC.  An analysis of those 13F's, the

13    first one indicated that after April 27th or so, when State

14    Street acquired control, it sold out all of the Grace stock

15    that the plan held.  In essence, it sold out eight million

16    shares.

17          THE COURT:  Well, let me ask you this.  Are you

18    claiming -- because I followed his argument, I think.  And I

19    remember the earlier discussions that we've had in this

20    case.  And I thought your claim was this self-dealing by

21    acquisition of this stock.  Is that the claim?

22          MR. GOODMAN:  It's a self-dealing -- yes, that is

23    the claim.  There's some ancillary issues related to it.

24    For example --

25          THE COURT:  But that's the violation?

                                                          13

1           MR. GOODMAN:  The violation, yes, it's self-dealt

2     by acquiring shares of Grace stock.

3           THE COURT:  All right.  Then what do you say about

4     what he, his claim as to the class period, it's a rather

5     limited class period, isn't it?

6           MR. GOODMAN:  It is a rather limited class period.

7     We think we could have defined it broader and we did in an

8     amended complaint, motion for class certification, our reply

9     brief, we did in fact redefine it based on certain facts in

10    connection with the 13F's.

11          Remember, by the way, your Honor, if I understand

12    it correctly, the 13F's, one of which was filed, the amended

13    one was filed after the complaint in this action even began,

14    but in connection with the class certification we have

15    offered an amended definition which is for a very specific

                        Page 11

092806m2.txt

16    and discrete period between April 14th, 2003 through April

17    30th, 2004.  And that period of course -- and that was in

18    our reply brief.  And courts have wide latitude in amending

19    and altering class definitions to fit the appropriate facts

20    even after a motion for class certification, it's within the

21    Court's discretion.  We have offered what we think is a

22    relevant class period that's defensible and clearly it

23    complies with the claim that we've articulated.

24            THE COURT:  All right.  I have a jury out and in my

25    hierarchy of values juries come first.  So, I'm not cutting

                                                           14

1    you off.

2            MR. GOODMAN:  Okay.

3            THE COURT:  You've got some more time.

4            MR. GOODMAN:  Thank you.

5            THE COURT:  About ten minutes left, or eight

6    minutes left.

7            We're going to stop now and we're going to deal

8    with a jury and jury questions.  And can I see counsel in

9    the criminal case.  And, folks, if you won't give up counsel

10    table and the law clerks give up the jury box.

11            (Whereupon the Court held proceedings in an

12    unrelated criminal matter.)

13            THE COURT:  Now, please be seated.

14            Counsel is excused in the criminal case, and the

15    Bunch and Akers case can come back to counsel table.

16            To the Bunch plaintiff who was just arguing, why

17    isn't the proper range of the class those who held the stock

18    in the February through April time period that counsel

19    argued to me.

                        Page 12

092806m2.txt

20          MR. GOODMAN:  Okay, referring to February 2003

21    until April when the shares were sold?

22          THE COURT:  That's, that's what I understand him to

23    be arguing.

24          MR. FLICKER:  Your Honor, excuse me.  I was

25    referring to February 2004.


                                                        15

1          MR. GOODMAN:  Oh, I'm sorry.  February 2004.

2          THE COURT:  Until April of that year.

3          MR. GOODMAN:  The reason --

4          THE COURT:  Yes.  Go ahead.

5          MR. GOODMAN:  The reason we selected the class

6    period as I understand it when we did is for inclusiveness.

7    I understand right around -- we do have the April 30th, 2004

8    end line.  The reason we chose the April 14th, 2003

9    starting point it's my understanding is because a number of

10    events took place right around that time, including Grace

11    announcing that it was choosing another, or consulting, I

12    believe, with Aon and potentially others to serve as

13    investment manager and fiduciary for the plaintiffs.

14          THE COURT:  But there was no self-dealing even on

15    your theory --

16          MR. GOODMAN:  That --

17          THE COURT:  -- until February 2004.

18          MR. GOODMAN:  That is correct.  But we also had

19    part of a claim that relates to Grace as also a defendant in

20    the action.  And in connection with that, Grace made certain

21    actions that tangentially related to that fact and that's I

22    believe the reason it shows up.

23          THE COURT:  Well, it may have tangentially related

                          Page 13

092806m2.txt

24    to it, but if your claim is the self-dealing claim it would
25    seem that the class period should appropriately be limited.

16

1         MR. GOODMAN:  Your Honor, we could live, the Bunch
2    plaintiffs are willing to live with that time frame.  As I
3    said, it's consistent with our theory and what the law
4    provides that the Court always has the discretion to amend
5    and alter class definitions to meet the, meet the new class.
6         THE COURT:  So I do.  All right.  Who wants to
7    argue the standing issue?
8         MR. FLICKER:  Excuse me, your Honor, I have a
9    couple comments on --
10         THE COURT:  You may, but your time is up.  I have
11    briefs here and I'm giving everyone the time that's
12    allotted.  It's not a seminar, it's a motion session.
13         Now, who wants to argue the standing issue?
14         MR. CIOLKO:  Your Honor, it's Edward Ciolko for the
15    plaintiffs in the Evans case.
16         THE COURT:  Yes.
17         MR. CIOLKO:  And I'll be brief because I know we've
18    given you a lot of material.
19         I think my, I think my esteemed colleague argued
20    very well the issue of what the DOL's position and what the
21    case law says when a person receives a lump sum distribution
22    in a plan and receives all the benefits that were due.  But
23    I think what defense, what defense counsel and some of the
24    courts since the Hargrave decision in the Southern District
25    of Texas kind of conflate are receiving the benefits when

17

092806m2.txt

1    they left and receiving what they were due.  And that's why
2    I think, I believe the DOL is so strident.
3            To me, personally it's a matter of statutory
4    construction.  A participant is defined in the statute as
5    someone who is a current or former employer who has or will
6    have claim to benefits.  In this particular type of plan, a
7    defined contribution plan, which companies are turning to
8    more and more these days, what benefits mean specifically in
9    this context, and I apologize for reading, but benefits are
10    based solely upon the amount contributed to the
11    participant's account and any income, expenses, gains and
12    losses thereon.
13            So, what the DOL is saying -- and, frankly, your
14    Honor, the DOL, especially recently, has not always been on
15    the plaintiffs side in these company stock cases.  They
16    recently have given a directive that certain
17    director/trustees of plans are more or less immune, for want
18    of a better word, from fiduciary liability for investments,
19    certain investments.
20            So, for them to come out so strongly in here, it
21    makes it clear that they're not talking about who's a
22    participant in the sense that, of course, when you receive
23    all the benefits you were due that ends your, your
24    participation in the plan, but if you do not receive all the
25    benefits that you were due, of course you remain a

                                                            18

1    participant both under the statutory, statutory
2    construction, basic framework of the statute.
3            And under the Firestone analysis, under the
                              Page 15

092806m2.txt

4    Firestone analysis a former participant can be deemed a
5    participant for the sake of bringing a claim if they have a
6    colorable claim to vested benefits.  And as I said, vested
7    benefits here are what in a defined contribution plan, and
8    specifically here Grace stock, are what the amount should
9    have been in the plan for each of these participants if the
10   plan was prudently and legally managed.
11          And really what it comes down to is before the TXU
12   v. Hargrave case -- Hargrave v. TXU case, the case law was
13   almost unanimously supportive of a former, a, quote,
14   unquote, former participant's ability to sue for breach of
15   fiduciary duty with regards to the misapplication of plan
16   assets.
17          The Kuper case, the Gray v. Briggs case, K-Mart,
18   CMS, and of course even since the kind of recent run,
19   there's been the Federal-Mogul case, another
20   asbestos-related 401(k) case, the argument was made and the
21   Court ignored it in the Eastern District of Michigan.  The
22   Aguila case, Chief Judge Whipple in the Eastern District of
23   Missouri.  The Mutual Funds case.  There are so -- as your
24   Honor said, the cases cut both ways.  But essentially
25   what --


                                                  19

1          THE COURT:  They do.  They do.  Though these are
2    primarily lower court cases.  But she's right, isn't she, it
3    sort of looks like the tide's running the other way here.
4          MR. CIOLKO:  Well, actually, I think it's based
5    on -- and this same kind of -- these company stock cases are
6    relatively new.  And there was a sort of mini-run of this
7    sort a year or two ago about whether -- it's funny

Page 16

092806m2.txt

8    because -- and I would probably do the same thing if I were
9    on the other side.  The claim used to be, well, these aren't
10   really claims on behalf of the plan because in defined
11   contribution plans everybody's an individual.  And the Fifth
12   Circuit bought that for a little while and then of course it
13   reversed itself.  And the Third Circuit in Schering went and
14   said no.  Even though only a subset of individuals might be
15   affected, you really bring it on behalf of the plan.
16   Because it's a defined contribution plan it will trickle
17   down to, any recovery for mismanagement of plan assets will
18   trickle down to current and former participants.
19            So, after three or four decisions at the district
20   court level, after the Moloski decision, that was kind of
21   turned around, and now on the other side you're kind of
22   arguing, well, wait a minute, it's really a plan claim and
23   if you're out of the plan then you have no benefits.  But
24   that's not true either.
25            And really what this is, I think, is kind of a

                                                           20

1    disparate interpretation of the Sommers case.
2            THE COURT:  Should I -- my decision in Nahigian is
3    only a district court decision, and I mean that with no
4    false modesty.  But should I -- what would cause me to
5    rethink what I said there?
6            MR. CIOLKO:  I'm sorry?
7            THE COURT:  Nahigian v. Leonard.
8            MR. CIOLKO:  Right.  Well, your Honor, there's a
9    number of reasons.  One is that I think clearly the statute
10   makes, it's inarguable that a person who did not receive the
11   full benefits because of the actions of the fiduciaries in

                            Page 17

092806m2.txt

12    the defined contribution plan has the ability to sue for
13    losses to that plan to get back their benefits they should
14    have had.  And in a practical sense, your Honor, and I'm
15    sure defense counsel will agree, every one of these cases
16    that settle, and the vast majority of them do, that a new
17    account is created for former participants and they share
18    in, they share in that, they share in whatever recovery of
19    the other plan.
20          THE COURT:  I don't mean to -- well, I guess I do
21    mean to press you on this.  In essence you're saying,
22    respectfully, and perhaps persuasively, what I said in
23    Nahigian is wrong and I should rethink it.
24          MR. CIOLKO:  Yes, your Honor.  And I think maybe it
25    goes to this especially.  It's almost one line in Sommers

21

1    that courts seem to go either way on.  It's the line that
2    says that, that effectively says the plaintiff receives
3    recovery for the trust of an unascertainable amount, no
4    demonstration that the recovery will directly effect payment
5    to him, would state a claim for damages and not benefits.
6    And then courts get involved in what's damages and what's
7    benefits.  But it's clear what the statute means what
8    benefits are.  And it's funny, because until Hargrave v.
9    TXU, which actually I'm counsel in, every court had, every
10   other court, Kuper, had used Sommers to support the ability
11   of a former participant --
12          THE COURT:  Let me cut you off.  I don't mean to be
13   brusque, but I am sticking to the time limits, and for good
14   reason.
15          This has been well argued.  The matter is a serious
Page 18

092806m2.txt

16    matter and I'm going to take it under advisement.

17            Let's understand when I speak now, I speak only to

18    be helpful, because most of these cases settle, and for no

19    other reason.  I'm interested -- I'm taking it under

20    advisement.  I'll decide it when I decide it.

21            In the Bunch case, it looks to me in the Bunch case

22    that a class from February to April should be certified on a

23    self-dealing claim only.  That's it.  Nothing else.  This

24    ancillary business is pretty evanescent.

25            On the -- well, actually there is one more question

                                                              22

1    I want to ask you.

2            On the Evans, on the standing issue, I express no

3    opinion at all, I'm going to take that under advisement.

4    But what do you say, if you got by this, and then she

5    candidly says, well, okay as to the lack of prudence, but

6    certainly not as to misrepresentation.  She's right on that,

7    isn't she?

8            MR. CIOLKO:  No, actually I think she's wrong.  But

9    respectfully so, and it was well argued.  And there's one

10    court, just to put it --

11            THE COURT:  How did she, how could --

12            MR. CIOLKO:  Well, essentially it's not an

13    individual misrepresentation claim.  At the heart of it,

14    it's a duty to disclose claim.  It's a fiduciary breach that

15    the defendants perpetrated.  In other words, they didn't

16    provide adequate information.  You can't prove -- you can't

17    be -- as, as the Tyco court eloquently said, you can't

18    expect somebody to prove reliance on something that wasn't

19    said.

                              Page 19

092806m2.txt

20          THE COURT:  I'm going to, I'm going to stick to my

21     time limits.

22          Thank you.  You have an answer.  I'll take the

23     matter under advisement.

24          Now, there is something I do want to tell you.

25     This case has lain fallow for a while because you people all

                                                   23

1     said, well, we're really talking settlement.  Now, let's

2     understand something.  This case is going to trial next

3     spring.  And while I fully recognize that under Rule 23(f)

4     anyone who doesn't like what I do here can appeal, don't

5     think for a moment that I'm staying anything.  However the

6     dust settles here, if you appeal, you're going to have to

7     get a stay out of the Court of Appeals, not from me.  I have

8     a case to try because it may -- well, actually on the

9     standing thing maybe I don't.  Win on the standing and the

10    cases move on and we can take an appeal.  But if, if there

11    is a case to try, it's on the March 2007 running trial list.

12          THE CLERK:  April.

13          THE COURT:  April.  Thank you.  April 2007.  So

14    don't think that just because you're talking among

15    yourselves that somehow it's going to be talk and then

16    litigate and then talk.

17          Yes, sir?

18          MR. PASTOR:  Your Honor, this goes back to

19    scheduling, as well as what Ms. Smith said in the beginning

20    about the trial date.  There is an order that this Court

21    signed on the 12th of September setting a different

22    schedule.  And --

23          THE COURT:  And what does that say?

                          Page 20

092806m2.txt

24          MR. PASTOR:  Well, it says, for example, fact

25   discovery will commence at the expiration of 60 days or

 

24

1   immediately upon the ruling on the class certification

2   motions, and then there's other dates that follow from that,

3   concluding with the Court will issue an order scheduling

4   trial.

5          THE COURT:  Well, I'm issuing it.  But since -- and

6   I guess I'm disturbed at myself for waffling.  I'll give you

7   until October of next year if you want it, but I'm not

8   horsing around anymore.

9          When do you want to try this case?  Plaintiffs?

10         MR. CIOLKO:  October is fine.

11         THE COURT:  The Bunch plaintiffs is nodding to

12   October.

13         MR. CIOLKO:  October is fine, or sooner.  The

14   sooner the better, your Honor.

15         THE COURT:  Well, are you serious about sooner the

16   better?

17         MR. CIOLKO:  Well, if the case were to go forward,

18   and I believe it should, then yes.  If --

19         THE COURT:  Well, if you lose on standing you're

20   out.  But --

21         MR. CIOLKO:  I'm hopeful, your Honor.

22         THE COURT:  -- something's going forward.  And I

23   think, I think October in a case of this sort --

24         MR. CIOLKO:  Sure.

25         THE COURT:  -- and type is a projection.  But I'm

 

25

092806m2.txt

1    not having periods of settlement.  I'm all for mediation and

2    the like.  But this case now, and I certainly appreciate

3    being corrected, and I stand by my orders, is on the running

4    trial list for October 2007.

5              Thank you very much.

6              MR. CIOLKO:  Thank you, your Honor.

7              THE COURT:  We'll recess.

8              THE CLERK:  All rise.

9              (Whereupon the matter concluded.)

10

11              C E R T I F I C A T E

12

13         I, Donald E. Womack, Official Court Reporter for

14   the United States District Court for the District of

15   Massachusetts, do hereby certify that the foregoing pages

16   are a true and accurate transcription of my shorthand notes

17   taken in the aforementioned matter to the best of my skill

18   and ability.

19

20

21

22   _____
            DONALD E. WOMACK
23         Official Court Reporter
              P.O. Box 51062
24     Boston, Massachusetts 02205-1062
           womack@megatran.com
25

Page 22