UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KERI EVANS and TIMOTHY WHIPPS, on behalf of themselves and a class of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JOHN F. AKERS, RONALD C. CAMBRE MARYE ANNE FOX, JOHN J. MURPHY, PAUL J. NORRIS, THOMAS A. VANDERSLICE, H. FURLONG BALDWIN, INVESTMENTS AND BENEFITS COMMITTEE, ADMINISTRATIVE COMMITTEE, BRENDA GOTTLIEB, W. BRIAN MCGOWAN, MICHAEL PIERGROSSI, ROBERT M. TAROLA, EILEEN WALSH, DAVID NAKASHIGE, ELYSE NAPOLI, MARTIN HUNTER, REN LAPADARIO, and UNKNOWN FIDUCIARY DEFENDANTS 1-100,<br><br>Defendants. | CIVIL ACTION<br>NO. 04-11380-WGY |

MEMORANDUM AND ORDER

YOUNG, J.                                                  December 6, 2006

I.   INTRODUCTION

The Court here considers the propriety of certifying a class consisting of all persons who were participants or beneficiaries of the W.R. Grace & Co. Savings and Investment Plan ("the Plan") at any time between July 1, 1999 and April 19, 2004.

II.  BACKGROUND

    A.   Factual Allegations

W.R. Grace & Co. ("Grace") is a global supplier of catalysts and silica products, speciality construction chemicals and building materials, and container products. Am. Compl. [Doc. No. 53] ¶ 95. Grace has over 6,000 employees, operations in nearly 40 countries, and annual sales of approximately $2,000,000,000. Id.

Grace offered eligible employees the opportunity to participate in a Plan that permitted employees to save a certain percentage of their pay through regular payroll deductions and invest those savings in company stock through the Grace Stock Fund. Id. ¶¶ 42, 50. Matching company contributions were deposited in the employee stock plan and invested in Grace stock. Id. ¶ 56.

After January 1, 2001, however, employees were no longer permitted to invest matching company contributions in Grace stock but could otherwise direct investment of those funds. Id. ¶¶ 58, 61. These changes were made in light of "market uncertainty surrounding companies, like Grace, that have significant asbestos liability." Id. ¶ 62. Employees were still permitted to invest their own savings in Grace stock even as the stock price declined precipitously over the next two years. Id. ¶¶ 63, 65.

Finally, on April 17, 2003, the Grace Stock Fund ceased accepting contributions or allocations. Id. ¶ 67. From that point on, contributions were redirected to the Fixed Income Fund.

Id. Nonetheless, past contributions were not redirected to other funds unless the participant expressly decided to change his investment options. See id. ¶ 69.

On February 27, 2004, Plan fiduciaries informed participants that investment in Grace Stock was "clearly imprudent." Id. ¶ 70. State Street Bank & Trust Company ("State Street"), the fund's investment manager, commenced a program to sell Grace stock. Id. State Street sold all Grace stock by April 16, 2004. Id. ¶ 74. On April 19, 2004, the Grace Stock Fund ceased to exist. Id.

### B.   The Putative Class Action

Keri Evans and Timothy Whipps (the "Plaintiffs") are former employees of Grace who were participants of the Plan during the proposed class period. Id. ¶ 3. They allege that the defendants, as fiduciaries of the Plan, breached their duties to the Plan and Plan participants and beneficiaries in violation of ERISA, particularly with regard to the Plan's various and heavy holdings of Grace stock. Id. ¶ 4.

Specifically, the Plaintiffs allege that the defendants, each having certain responsibilities regarding, or authority over, the management of the investment of Plan assets, breached their fiduciary duties by (1) continuing to offer Grace common stock as a Plan investment option for participant contributions; (2) utilizing Grace securities for employer contributions to the

Plan; and (3) maintaining the Plan's pre-existing heavy investment in Grace securities when the stock was no longer a prudent investment for the Plan. Id. ¶ 5.

The Plaintiffs also allege that certain defendants charged with the selection and monitoring of other Plan fiduciaries failed to (1) provide the "monitored" fiduciaries with material information regarding the imprudence of investing Plan assets in Grace securities; and (2) remove certain such fiduciaries whose deficient performance damaged the Plan and its participants. Id. ¶ 6.

The Plaintiffs further allege that certain defendants failed to communicate to the Plan participants complete and accurate information regarding the Plan's investment in Grace securities sufficient to advise participants of the true risks of investing their retirement savings in Grace stock. Id. ¶ 7.

The Plaintiffs allege that the defendants breached their duty of loyalty to the Plan and its participants by failing to avoid or ameliorate inherent conflicts of interests which crippled their ability to function as independent, single-minded fiduciaries with only the Plan's and its participants' best interests in mind. Id. ¶ 8.

Finally, the Plaintiffs allege that even if certain fiduciaries were not involved in the breach of fiduciary duty, these fiduciaries knew of and did nothing to stop, or even abate,

the particular breach and were therefore liable for breach of their co-fiduciary duties in violation of 29 U.S.C. § 1105. Id.

This action was brought on behalf of the Plan and seeks to recover alleged losses to the Plan under 29 U.S.C. §§ 1109, 1132. Id. ¶ 10.

### III. DISCUSSION

The Plaintiffs face a barrier to their standing to bring the instant action. Although ERISA's remedial purposes are to be interpreted broadly,[1] only participants, beneficiaries, fiduciaries, and the Secretary of Labor may bring a civil action. See 29 U.S.C. § 1132(a). In the present case, "[t]he requirement

---

[1] As the First Circuit explained in Vartanian v. Monsanto Co., 14 F.3d 697, 702 (1st Cir. 1994):
> The legislative history of ERISA indicates that Congress intended the federal courts to construe the Act's jurisdictional requirements broadly in order to facilitate enforcement of its remedial provisions:
>> The enforcement provisions have been designed specifically to provide both the Secretary [of Labor] and participants and beneficiaries with broad remedies for redressing or preventing violations of the [Act] . . . . The intent of the Committee is to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law or recovery of benefits due to participants. S.Rep. No. 127, 93d Cong., 2d Sess., 3 (1974), reprinted in 1974 U.S.C.C.A.N. 4639, 4871 (emphasis added).

that a claimant be a 'participant' is a subject matter jurisdiction requirement as well as a standing issue under ERISA." Katzoff v. Eastern Wire Products Co., 808 F.Supp. 96, 98 (D.R.I. 1992) (citations omitted).

ERISA defines a participant as "any employee or former employee . . . who is or may become eligible to receive a benefit of any type from [the] employee benefit plan." 29 U.S.C. § 1002(7). In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117-18 (1989), the Supreme Court interpreted the term "participant." Former employees, it held, may be considered participants if they have either "a reasonable expectation of returning to covered employment" or "a colorable claim to vested benefits." Id.

The Plaintiffs are no longer employees and they do not plan to return to work for Grace. See Grace Defs.' Opp'n to Mot. to Class Cert. [Doc. No. 99], Ex. A ¶ 5. Nevertheless, the Plaintiffs argue they ought not be denied standing in light of the First Circuit's "expansive" approach to standing and because they have a "colorable claim to benefits." Repl. Mem. in Further Support of Evans Pls.' Mot. for Class Cert. at 3.

The First Circuit's so-called "expansive" approach to standing was articulated in Vartanian. In that case, the court noted that Firestone was not a standing case, permitting continued broad interpretation of the jurisdictional parameters

6

of ERISA in accordance with its remedial nature. 14 F.3d at 701-702. The court adopted a "zone of interest" analysis. Id. at 702 (citing Astor v. Int'l Bus. Machines Corp., 7 F.3d 533, 538-39 (6th Cir. 1993)). As a consequence of that analysis, the First Circuit held that the plaintiff had standing to sue even though he was no longer an employee and had received the distribution of benefits. Id. at 702. The First Circuit explained that employers ought not be able to defeat standing through their own wrongful acts. Id. at 703.

The Plaintiffs in this case ask the Court to read Vartanian broadly. They argue that the breaches of fiduciary duty occurred while they were plan participants. See Corrected Repl. Mem. in Further Supp. of Evans Pls.' Mot. for Class Cert. [Doc. No. 107] at 8. Thus, in their view, denying them standing would allow the defendants to escape responsibility for the losses caused.

The defendants, on the other hand, read Vartanian narrowly. They argue it creates a unique exception to the Firestone definition of participant exclusively in cases where the employee would still be part of the plan (and thus entitled to higher benefit levels) but for the employer's malfeasance. Grace Defs.' Opp'n to Mot. for Class Cert. at 8-9.

The First Circuit's subsequent analysis of this issue is instructive. In Crawford v. Lamantia, 34 F.3d 28 (1st Cir. 1994), decided only seven months after Vartanian, the First

Circuit "cut back sharply on Vartanian's broad approach to ERISA standing by emphasizing literal compliance with the Firestone definition of participant in a standing context." Nahigian v. Leonard, 233 F. Supp. 2d 151, 166 (D. Mass. 2002). In Crawford, a former employee, after receiving his lump sum distribution of benefits, alleged breaches of fiduciary duties of its employer. 34 F.3d at 30-31. The First Circuit held that the plaintiff lacked standing because he had "failed to show that defendants' alleged breach of fiduciary duty had a direct and inevitable effect on [the employee's] benefits." Id. at 33.

With one exception,[2] district courts in the First Circuit have followed Crawford in holding that the Firestone exception applies only when the former employee would still be a participant but for the employer's alleged malfeasance. See, e.g., Lalonde v. Textron, Inc., 418 F. Supp. 2d 16, 19-20 (D.R.I. 2006). The Court follows this approach.

In this case, unlike in Vartanian, there is no evidence suggesting that the Plaintiffs' cessation of employment was casually connected to the defendant's alleged misconduct. Stripped of the Vartanian's "but for" exception, the Plaintiffs

---

[2] See Sotiropoulos v. Travelers Indem. Co. of Rhode Island, 971 F. Supp. 52, 54-55 (D. Mass. 1997) (Ponsor, J.); see also Gray v. Briggs, 1998 WL 386177, No. 97 Civ. 6252(DLC), at *5-6 (S.D.N.Y. July 7, 1998); contra Eggert v. Merrimac Paper Co., Inc. Leveraged Employee Stock Ownership Plan and Trust, 311 F.Supp.2d 245, 254 (D.Mass. 2004) (Collings, M.J.).

are subject to the general rule that former employees, who have received the full benefits to which plan documents entitled them, cannot be participants of a plan. See Lalonde, 418 F. Supp. 2d at 20.

Consequently, the Plaintiffs have standing only if they can assert a colorable claim to vested benefits. Since allegedly all plan assets suffered losses due to the defendants' imprudent investment in Grace stock and those losses directly affected the total of benefits the Plaintiffs received upon leaving the Plan, the Plaintiffs essentially claim they are entitled to "higher benefits" than those they already received.

The defendants argue that the Plaintiffs have asserted a claim not for benefits but for damages to the Plan. Grace Defs.' Opp'n to Mot. for Class Cert. at 6-7. To this end, the defendants cite a number of cases holding that former plan participants who have taken their lump sum distribution lack standing to sue for breaches of fiduciary duties. In Re RCN Litigation, 2006 WL 753149, No. 04-5068 (SRC), at *13-*14 (D.N.J. Mar. 21, 2006); Lalonde, 418 F. Supp. 2d at 20-21; Hargrave v. TXU Corp., 392 F.Supp.2d 785, 788-90 (N.D. Tex. 2005); see also Graden v. Conexant Sys., Inc., 2006 WL 1098233, No. Civ. 05-0695, at *2-*5 (D.N.J. Mar. 31, 2006). The Court finds these cases persuasive.

The distinction between benefits and damages is not easy to articulate. In <u>Sommers Drug Stores Co. Employee Profit Sharing Trust</u> v. <u>Corrigan</u>, 883 F.2d 345, 350 (5th Cir. 1989), the Fifth Circuit tried to explain the difference as follows:

> Clearly, a plaintiff alleging that his benefits were wrongly computed has a claim for vested benefits. Payment of the sum sought by such a plaintiff will not increase payments due him. On the other hand, a plaintiff who seeks the recovery for the trust of an unascertainable amount, with no demonstration that the recovery will directly effect payment to him, would state a claim for damages, not benefits.

In <u>Hargrave</u>, the district court relied on the <u>Sommers</u> analysis to conclude that the breach of fiduciary duty claims, virtually identical to those asserted here, constituted damages claims. In reaching its holding, the court conducted the following analysis:

>    Plaintiffs' claims in this case are readily distinguishable from the claims made in <u>Sommers</u>. In <u>Sommers</u>, the plaintiffs argued that the full market value of the plan assets was greater than the amount they received when the assets were distributed. <u>Sommers</u>, 883 F.2d at 350. Stated another way, the total value of the plan assets was a certain amount that was calculable, and the plaintiffs argued that they did not receive that full calculable value because the defendants held back some of the proceeds for themselves. The <u>Sommers</u> plaintiffs sued to recover the rest of the benefits that were wrongfully withheld. See [i]d. Thus, the Fifth Circuit concluded that the plaintiffs' claims were in fact for vested benefits rather than for damages. Id.
>    The Plaintiffs in this case, by way of contrast, do not allege that the Defendants[] held back a portion of the benefits of the plan. Rather, they argue that the amount in the entire plan was too small. Specifically, Plaintiffs allege that Defendants' investment in TXU stock resulted in an overall diminution of plan assets, which were then distributed to the Plaintiffs. The allegation is not that benefits

10

> were withheld, but that there should have been more benefits to go around. This argument states a claim for "a sum that possibly could have been earned" if Defendants had made prudent investment decisions with respect to plan assets. See Yancy [v. American Petrofina, Inc., 768 F.2d 707, 709 (5th Cir. 1985)]. The Plaintiffs have already received all the benefits that accrued under their Thrift Plan accounts. They are now seeking additional damages that <u>might have</u> accrued but for Defendants' alleged misconduct. See [i]d. These additional damages are speculative and cannot be considered as vested under ERISA. See [i]d.
>
> Unlike Sommers, the Plaintiffs' argument does not resemble an allegation that benefits were simply miscalculated and cannot be construed as a claim for vested benefits. On the contrary, Plaintiffs are demanding that Defendants make good to the Thrift Plan for the <u>losses sustained</u> as a result of the investments in TXU stock. This argument most closely resembles a claim for damages to the plan.

392 F. Supp. 2d at 789-90 (emphases in original). In this way, the distinction between benefits and damages is a real one, and "concepts must not be conflated in order to expand participant standing." Lalonde, 418 F. Supp. 2d at 21.

In the instant case, the Plaintiffs argue that if the fiduciaries had carried out their duties carefully and diligently, then the investment in Grace stock would either have been reduced or limited, and more prudent investments made. This is hardly a claim for vested benefits. Rather, the Plaintiffs seek the "lost return" on the funds that would have resulted from a more prudent and loyal investment of plan assets. These claims are best characterized as claims for damages, and speculative claims at that.

The nature of the defined contribution plan at issue further supports the Court's conclusion. In these types of investment plans, participants can direct their savings to one or more funds available to them. Thus, the Plaintiffs in this case could have avoided their losses merely by moving their savings to other funds. Also, they were not obligated to take their lump sum distributions when they did. They could have taken their benefits before or after the proposed class period.

True, this matter is not without doubt. Some courts have upheld standing on the rationale that denying former employees the opportunity to bring their claims would permit employers to evade responsibility simply by paying such employees their vested benefits. See, e.g., Rankin v. Rots, 220 F.R.D. 511, 519-20 (E.D. Mich. 2004). This reasoning, however, renders obsolete the term "participant" as defined by ERISA and interpreted by the Supreme Court in Firestone. To allow the Plaintiffs to bring a suit for a speculative amount that might have been earned had these fiduciaries acted differently would be to ignore the fact that ERISA allows only former participants who have either a "reasonable expectation of returning to covered employment" or "a colorable claim to vested benefits" to bring suit. Firestone, 489 U.S. at 118. The Plaintiffs lack standing because they do not fall within either of these two categories of former participants permitted to bring suit.

## IV. Conclusion

Since the Plaintiffs lack standing, this Court lacks subject matter jurisdiction. Katzoff, 808 F.Supp. at 98. Since the Plaintiffs lack standing, they may not seek relief on the behalf of the class. O'Shea v. Littleton, 414 U.S. 488, 494 (1974); Britt v. McKenney, 529 F.2d 44, 45 (1st Cir. 1976), cert. denied, 429 U.S. 854. Accordingly, the Motion to Certify Class [Docket No. 89] is DENIED. This case must be, and hereby is, DISMISSED.

SO ORDERED.

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE