IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KERI EVANS,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>JOHN F. AKERS, et al.<br><br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| LAWRENCE W. BUNCH, et al.<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>W. R. GRACE & CO., et al.<br><br>　　　　　Defendants. | )　**Consolidated**<br>)　**Case No. 04-11380-WGY**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### BUNCH PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION OF GRACE DEFENDANTS TO DISMISS

#### INTRODUCTION AND BACKGROUND

Plaintiffs allege that Grace, at all times relevant to this action, served as a fiduciary and that Grace, as a fiduciary, breached its duties directly and assisted in State Street's breach of its fiduciary duty to the Plan Participants. Specifically, Plaintiffs claim that the Grace defendants violated their fiduciary responsibilities by, among other things, failing to act when they learned that State Street intended to liquidate the Plan's investment in Grace stock at an artificially low price, by hindering Plan Participants from

communicating with State Street and discovering that State Street was divesting the Plan of all of the Grace common stock holdings, by failing to monitor State Street's activity and by failing to provide State Street with material information about Grace's financial condition and financial plans that Grace was instituting in connection with its reorganization.

### Grace's Motion to Dismiss Is Not Based on Plaintiffs' Complaint

Notably, the Grace Defendants' do not base their motion on Plaintiffs' complaint. Instead, Grace bases its motion on statements made by Plaintiffs' counsel in connection with arguments advanced by State Street. Grace did not participate at the hearings and remained silent. The statements, however, are consistent with Plaintiffs' complaint and do not change Plaintiffs' theories of liability.

Throughout the litigation, Plaintiffs steadfastly have maintained that State Street engaged in unlawful conduct when it sold the Plan's investment in Grace at an artificially low price. State Street further violated its fiduciary responsibility by selling a large portion of the investment to a favored client and despite representing that Grace was an imprudent investment, by purchasing a significant volume of Grace stock but at the same time purchasing a significant volume of the stock for its own managed funds.

Consistent with Plaintiffs' claims, Plaintiffs allege that Grace is liable for its acts as the Plan's sponsor and administrator by failing to take action to protect the Plan Participants:

    1.    During the selection, appointment, and transfer to a successor investment manager (State Street);

  2. By failing to provide relevant and material financial information that Grace possessed concerning the company and its prospects, particularly when Grace learned that State Street intended to liquidate the Plan's position of Grace: and,

  3. By actively discouraging Plan Participants from communicating with State Street and acquiring information to protect themselves from the precipitous sale that State Street consummated.

Theses legal theories complement Plaintiffs' theory of liability against State Street. Accordingly, for the same reasons that the Court denied State Street's Motion to dismiss, it should deny the Grace Defendants' motion.

### Allegations in Complaint

An examination of Plaintiffs' complaint and the fact that the Court already has denied State Street's motion to dismiss demonstrates that dismissal of the claims against Grace is inappropriate. Plaintiffs allege that Grace, throughout the life of the Stock Plan encouraged its employees to invest their retirement dollars in Grace stock to share in the Company's performance.[1] Plaintiffs allege that the Grace Defendants closed a blind eye to its continuing fiduciary duties when it sought to transfer some but not all of those fiduciary duties to State Street and when Grace permitted State Street to suspend the right of employees to invest in Grace stock.[2] Grace also failed as a fiduciary to provide to State Street, the Plan's newly designated investment manager, material information concerning the company's plans for its reorganization and Grace's analysis of the value of the company. Additionally, Plaintiffs allege that Grace assisted State Street in its self dealing

---

[1] Complaint at ¶ 8.
[2] Complaint at ¶ 12.

3

by announcing that State Street "was authorized to sell all or a portion of the participants' investment in the Grace Stock Fund, and that, based on the Company's authority given to State Street…[State Street] commenced a program to sell the Grace stock."[3]

When Grace delegated investment authority to State Street, Grace understood that an investment in Grace stock was no longer speculative. Indeed, during the period that Grace was delegating responsibility to State Street, Grace in public filings represented that it had quantified and capped its potential outstanding asbestos liability.[4] Thus, Grace had virtually eliminated the fundamental uncertainty for its stock, but failed as a fiduciary to the Plan to convey all of the relevant information that it possessed to State Street so that State Street could make a more informed investment decision. State Street, simultaneously, breached its fiduciary duties with respect to that available financial information by failing to demand from Grace all of the Plans of Reorganization, the calculations of relevant asbestos liability exposure and the bases for the public statement by Grace that its estimate of asbestos liability was certain enough to allow it to make a public disclosure of that potential liability.

Despite knowledge that the price of Grace stock had reached its nadir and that the value of the stock likely would rapidly increase, Grace participated in State Street's misconduct and covered up its failures to the participants as their fiduciary by telling members of the class that State Street acted prudently when it divested the employees' ownership of Grace stock. According to the Complaint,

> The Company represented to its employees that Grace common stock was no longer a prudent investment, in order to justify its disgorgement of the

---

[3] Complaint at ¶ 13.
[4] See Grace Public Filing attached as Exhibit "A".

Grace Stock Fund and eventual sale by State Street…of the Grace common stock.[5]

Certainly, this action of enabling State Street to liquidate holdings in Grace when Grace knew that its stock would increase in value was inconsistent with Grace's pronouncement that the purpose of the stock plan was to "share in the Company's performance." Instead, the "Company disregarded its legal responsibility to follow applicable rules and regulations that govern investment managers, and by electing State Street…to take over as investment manager and fiduciary, **failed to act solely in the best interests of all Plan participants collectively.**"[6] (Emphasis added.).

## ARGUMENT

L. **Plaintiffs by alleging that Grace unlawfully abdicated its fiduciary duty and allowed State Street to self-deal and to liquidate the Plan's holdings in Grace stock have stated a claim for relief.**

Plaintiffs clearly allege that Grace failed to fulfill its ERISA fiduciary responsibilities by allowing State Street to liquidate the Plan's holdings in Grace. Plaintiffs claim that Grace announced to members of the class, in violation of the Plan's terms, that State Street was authorized to sell Grace stock. Plaintiffs further claim that Grace unlawfully assisted State Street by misrepresenting that Grace stock was an imprudent investment when Graces' public filings demonstrated that the company's liabilities had become clearly ascertainable. These actions together with the failure of Grace to monitor State Street after Grace transferred the Plan's assets to State Street creates a classic breach of fiduciary duty and allows Plaintiffs to continue to proceed with this action.

---

[5] Complaint at ¶ 15.
[6] Complaint at ¶ 17.

## Co-Fiduciary Liability

The United States Court of Appeals for the First Circuit succinctly articulated when co-fiduciary liability exists.[7] According to the First Circuit, Grace is liable if State Street violated its fiduciary duty in the following circumstances:

> ERISA renders a fiduciary vulnerable to liability for breaches committed by other fiduciaries in three situations:
>
> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
>
> (2) if, by his failure to comply with ⋯ the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.
>
> 29 U.S.C. § 1105(a).[8]

In this case, Plaintiffs' Complaint makes sufficient allegations to permit the Court to hold Grace liable on at least two breaches. First, by ordering plan participants to refrain from making any inquiry of State Street concerning the sale of Grace stock, Grace participated in the concealment of the breach.[9] Secondly, Grace possessed knowledge that State Street was engaged in unlawful behavior when State Street divested the Plan of all Grace stock. Yet, it failed to make any reasonable effort to remedy the breach. Third, Grace as a fiduciary, failed to provide relevant and material information that could impact State Street's decision-making process. State Street likewise failed to investigate Grace's true situation and Grace's calculations and plans with respect to its reorganization.

---

[7] See *Beddall v. State Street Bank and Trust Co.* 137 F.3d 12, 23 (1st. Cir., 1998). February 27, 1998
[8] 137 F.3d at 23.
[9] Complaint at ¶ 13.

In *Woods v. Southern Co.*,[10] a United States District Court denied a motion, similar to the pending motion, to dismiss. In *Woods*, a plaintiff brought a class action alleging that Plan fiduciaries violated their duties regarding investments. The Plaintiff also alleged that the Plan fiduciaries violated ERISA by failing to monitor appointees and also were subject to ERISA co-fiduciary liability. Defendants sought to dismiss the complaint.

The court in *Woods* concluded that Plaintiffs had met their burden and emphasized the duty of fiduciaries to monitor the activities of people to whom the fiduciary has delegated authority. The court emphasized that the law generally is settled that a fiduciary has a duty to monitor those people and entities to whom it has delegated responsibility.[11] The Court's analysis, moreover, is consistent with the analysis of other courts. "[C]ourts have widely held that an appointing fiduciary has an ongoing duty to monitor its fiduciary appointees."[12]

The *Woods* court held that a court should be reluctant to grant a motion to dismiss involving claims for failure to monitor.[13] The court also emphasized that the duty to monitor includes the duty to keep its appointees informed of all pertinent facts.[14] The court further found that, in addition to the failure to monitor claim, defendants also could be found liable on theory of co-fiduciary liability. The court referenced to 29 U.S.C. §

---

[10] 396 F.Supp.2d 1351
[11] 396 F.Supp.2d at 1373
[12] *In re Sprint Corporation ERISA Litigation*, 388 F.Supp.2d 1207, 1231-32 (D. Kan. 2004). *See* 29 C.F.R. § 2509 .75-8, FR-17 (the duty to monitor requires that:

> [a]t reasonable intervals the performance of ··· fiduciaries should be reviewed by the appointing fiduciary in such a manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan.)

[13] 396 F.Supp.2d at 1374.
[14] 396 F.Supp.2d at 1374.

1105(a) and found that ERISA recognizes co-fiduciary liability. The court held that an allegation that a fidcuciary had knowledge of another fiduciary's unlawful acts satisfied ERISA's pleading requirements.[15]

Similar to the Plaintiff in *Woods*, the Bunch Plaintiffs have satisfied their pleading burden. Plaintiffs claim that Grace had knowledge of State Streets' pending sale of stock but failed to take any corrective action. Additionally, Grace took action to prevent Plan Participants from discovering the truth. Grace simply washed its hands of any responsibility to the Plan Participants and walked away – violating its obligations under ERISA to the Plan Participants. Accordingly, Grace is liable under ERISA for failure to monitor and under theories of co-fiduciary liability.

### **Failure to Monitor**

Other courts that have addressed similar situations involving the attempted delegation of fiduciary duty have held that an ERISA fiduciary has a continuing obligation to monitor or supervise tasks delegated to another person or entity. In *Jackson v. Truck Drivers' Union Local 42*,[16] a medical plan ERISA fiduciary sought to delegate administrative functions to another party. The administrator of the health and welfare fund subsequently denied medical benefits. A plan participant pursued an ERISA claim against the fund, the trustees, and the transferee trust. In particular, the plaintiff alleged that the Plan Trustees' failed to monitor the people to whom it had delegated fiduciary responsibilities.

In *Jackson*, the court concluded that the delegation of fiduciary responsibilities does not immunize an ERISA fiduciary from liability. To the contrary, an ERISA

---

[15] 396 F.Supp.2d at 1379.
[16] 933 F.Supp. 1124 (D. Mass. 1996)

fiduciary retains the obligation to monitor and prevent the delegated fiduciary from injuring plan participants. According to the *Jackson* court, "Notwithstanding a proper delegation of fiduciary duties, therefore, a delegating fiduciary retains an obligation to oversee and monitor the activities of his delegate."[17] Indeed, prior to holding that a fiduciary has a duty to monitor, the *Jackson* court held that a "fiduciary can be held liable for the acts or omissions of his delegate, if *inter alia*, 'he has knowledge of a breach by such other fiduciary [or delegate], unless he makes reasonable efforts under the circumstances to remedy the breach.'"[18]

    Here, Plaintiffs certainly have alleged sufficient facts to establish that Grace is liable for failing to monitor. Clearly, the Court, therefore, can find Grace liable for failing to remedy State Street's breach and for making comments to Plan Participants that assisted State Street to violate its fiduciary duties to the Plan Participants through a sale of all Grace stock at the same time that as it was buying Grace stock for its other investment management clients.

---

[17] 933 F.Supp. at 1141.
[18] 933 F.Supp. at 1141.

## CONCLUSION

For the reasons contained in this Memorandum, the Court should deny the Grace Defendants' Motion to dismiss.

Respectfully submitted,

**BERMAN DEVALERIO PEASE TABACCO BURT & PUCILLO**

/s/ Jeffrey C. Block
Jeffrey C. Block
One Liberty Square
Boston, Massachusetts 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194
Email: jblock@bermanesq.com

**WAITE, SCHNEIDER, BAYLESS & CHESLEY CO., L.P.A.**

/s/ Jane H. Walker
James R. Cummins
Jane H. Walker
1513 Fourth & Vine Tower
One West Fourth Street
Cincinnati, Ohio 45202
Telephone: (513) 621-0267
Facsimile: (513) 381-2375
E-mail jcummins@wsbclaw.com
E-mail: janehwalker@wsbclaw.com

*Counsel for Lawrence W. Bunch, Jerry L. Howard, Sr. and David Mueller, Both Individually and Behalf of All Others Similarly Situated*

Dated: December 11, 2006

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 11, 2006, I filed Bunch Plaintiffs' Opposition to the Grace Defendants' Motion to Dismiss through the ECF system. It was sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies were sent to those indicated as non-registered participants on December 11, 2006.

*/s/ Jane H. Walker*
Jane H. Walker