# PART 3

- 75 -

which the Grace Stock covered by a signed but unmarked form of proxy shall be voted.

5.07 With respect to periods prior to October 1, 2000 (see Section 5.11 below), after the Conversion Period, a Participant or Inactive Participant who has attained age 50, may, one time during each Plan Year, elect to transfer to one or more of the Investment Funds within the Savings Plan all or a portion (in multiples of 5% or in whole dollar amounts) of his Account balance invested in the ESOP and Grace Common Stock Fund which is attributable to Company contributions pursuant to Section 4.01. Any such transfer will occur on the Business Day on which the Participant notifies the Recordkeeper of such transfer election by telephonic instruction, if such notice is received by the Recordkeeper before the latest time of day agreed to by Grace and the Recordkeeper for same day processing; otherwise, such change will be effective on the immediately succeeding Business Day. The foregoing provisions of this Section 5.07 shall also apply to a former Participant who has incurred a Termination of Service, regardless of attained age, except that any such former Participant may make investment transfer elections on any Business Day without regard to the once per year limitation set forth above.

5.08 Effective as of July 1, 1993 (i.e., the commencement of the Conversion Period), the Account balances credited to the Former Funds shall be transferred to the Investment Funds in accordance with the following:

GR 001736

- 76 -

(1)    Former Fund A transferred to Fixed Income Fund;

(2)    Former Fund B transferred to Fidelity Blue Chip Growth Fund;

(3)    Former Fund C transferred to Grace Common Stock Fund;

(4)    Former Fund D transferred to Fidelity Balanced Fund.

5.09   Effective immediately after (and as a result of) the NMC Disposition in September 1996:

(a)    With respect to each Participant's, Inactive Participant's and former Participant's interest in Grace Stock credited to the ESOP, the Trustee shall receive a certain number of shares of American Depository Shares of Fresenius Medical Care ("ADS's") and of shares of Fresenius National Medical Care preferred stock ("Preferred"). Those shares shall be sold by the Trustee within 90 days after they are received and the proceeds shall be reinvested in Grace Stock, which shall be credited to the Participant's, Inactive Participant's or former Participant's (as the case may be) interest in the ESOP.

(b)    With respect to each Participant's, Inactive Participant's and former Participant's interest in Grace Stock credited to the Grace Common Stock

GR 001737

- 77 -

Fund, the Trustee shall receive a certain number of
ADS's and shares of Preferred.  The shares of
Preferred shall be sold by the Trustee within 90
days after they are received and the proceeds shall
be reinvested in Grace Stock, which shall be
credited to the Participant's, Inactive
Participant's or former Participant's (as the case
may be) interest in the Grace Common Stock Fund.
The ADS's shall be credited to the ADS Fund within
the account of the Participant, Inactive
Participant or former Participant (as the case may
be), which shall be an additional Investment Fund
under the Savings Plan.  The Participant, Inactive
Participant or former Participant shall have the
same elections with respect to the ADS Fund, as
with other Investment Funds, specified in Section
5.03 and 5.04; except that (i) the Participant,
Inactive Participant or former Participant shall
not be permitted to direct that any amounts be
credited to the ADS Fund from any other Investment
Fund (including, but not limited to, amounts in any
other Investment Fund attributable to amounts
previously transferred from the ADS Fund to any
other Investment Fund) or from any contributions
made to the Plan by or on behalf of the
Participant, and (ii) the ADS Fund shall be
terminated as of December 31, 1998 and all ADS's
remaining therein shall be liquidated, and any
amount remaining in that Fund on that date shall be
transferred to the Fixed Income Fund for the

GR 001738

- 78 -

Participant, Inactive Participant or former Participant.

5.10    Effective immediately after (and as a result of) the Cryovac Disposition in March 1998:

(a)    With respect to each Participant's, Inactive Participant's and former Participant's interest in Grace Stock credited to the ESOP, the Trustee shall receive a certain number of shares of Sealed Air Corporation ("SAC Common Stock") and of shares of Sealed Air Corporation preferred stock ("SAC Preferred").  Those shares shall be sold by the Trustee within 90 days after they are received and the proceeds shall be reinvested in Grace Stock, which shall be credited to the Participant's, Inactive Participant's or former Participant's (as the case may be) interest in the ESOP.

(b)    With respect to each Participant's, Inactive Participant's and former Participant's interest in Grace Stock credited to the Grace Common Stock Fund, the Trustee shall receive a certain number of SAC Common Stock shares and shares of SAC Preferred. The shares of SAC Common Stock shall be credited to the SAC Common Stock Fund, and the shares of SAC Preferred shall be credited to the SAC Preferred Stock Fund, within the account of the Participant, Inactive Participant or former Participant (as the case may be), which shall be an additional Investment Fund under the Savings Plan.

GR 001739

- 79 -

The Participant, Inactive Participant or former
Participant shall have the same elections with
respect to the SAC Common Stock Fund and SAC
Preferred Stock Fund, as with other Investment
Funds, specified in Section 5.03 and 5.04; except
that (i) the Participant, Inactive Participant or
former Participant shall not be permitted to direct
that any amounts be credited to the SAC Common
Stock Fund or the SAC Preferred Stock Fund from any
other Investment Fund (including, but not limited
to, amounts in any other Investment Fund
attributable to amounts previously transferred from
the SAC Common Stock Fund or the SAC Preferred
Stock Fund to any other Investment Fund) or from
any contributions made to the Plan by or on behalf
of the Participant, and (ii) the SAC Common Stock
Fund and the SAC Preferred shall be terminated as
of (or as soon as practicable after) December 31,
2000 and all SAC Common Stock and SAC Preferred
Stock remaining therein shall be liquidated, and
any amount remaining in either Fund after such
liquidation shall be transferred to the Fixed
Income Fund for the Participant, Inactive
Participant or former Participant.

5.11        Effective October 1, 2000, a Participant or
Inactive Participant may, on any Business Day
during a Plan Year, elect to transfer to one or
more of the Investment Funds within the Savings
Plan all or a portion (in multiples of 5% or in
whole dollars amounts) of his Account Balance

- 80 -

invested in the ESOP and Grace Common Stock Fund
which is attributable to Company contributions
pursuant to Section 4.01.  Any such transfer will
occur on the Business Day on which the Participant
notifies the Recordkeeper of such transfer election
by telephonic instruction, if such notice is
received by the Recordkeeper before the latest time
of day agreed to by Grace and the Recordkeeper for
same day processing; otherwise, such change will be
effective on the immediately succeeding Business
Day.  The foregoing provisions of this Section 5.11
shall also apply to a former Participant who has
incurred a Termination of Service.

Effective as of the close of business April 9,
2003, the short term investments in the Grace
Common Stock Fund and the ESOP shall be liquidated
and the proceeds immediately transferred to the
Fixed Income Fund, and credited to each Savings
Plan Account, on a pro-rata basis, in accordance
with the interest in those Funds of each affected
Participant, Inactive Participant or former
Participant, as of that date.  Effective April 10,
2003, all transactions involving the Grace Common
Stock Fund and the ESOP shall be suspended.  During
such suspension, these two Funds shall be merged
into one fund, called the "Grace Stock Fund".

5.12    The "Grace Stock Fund" shall be comprised of only
Grace Stock, and no short-term investments.  The
Grace Stock Fund shall account separately for the

- 81 -

portion of the Fund attributable to the ESOP and earnings and losses thereon.

5.13    As of April 14, 2003, the suspension specified in Section 5.11 shall end and all transactions involving Grace Stock within the Grace Stock Fund initiated on and after that date (including all transactions initiated by Participants) shall be executed directly to the open market, in accordance with the rules and procedures established by the Trustee (or its designee), including the application of brokerage commissions to such transitions.

5.14    Effective April 17, 2003, the Grace Stock Fund shall cease to accept any contributions or allocations to that Fund, whether or not such contribution or allocation is directed by a Participant, Inactive Participant or former Participant, and whether or not such a contribution or allocation is directed to the ESOP Account within the Fund or the other portion of the Fund. As of that date, all contributions designated for, or directed to, the Grace Stock Fund shall be redirected to the Fixed Income Fund.

- 82 -

Section 6

Valuation of Accounts

6.01    As of December 31, 1991, the dollar value of the balance
        of the Account of each Participant, Inactive Participant,
        former Participant or beneficiary in the Former Funds A,
        B, C and D within the Savings Plan and the ESOP shall be
        determined based upon the provisions of Section 6 of the
        Plan then in effect.

6.02    After December 31, 1991, the balances of Participants,
        Inactive Participants, former Participants or
        beneficiaries in each Former Fund and Investment Fund and
        in the ESOP shall be valued on each Business Day.  The
        value of each such balance on each Business Day shall
        equal the unit price established for the Investment Fund
        (or the ESOP) multiplied by the units credited to that
        balance.

        On each Business Day, the Trustee will establish a
        separate unit price for each Investment Fund and the ESOP
        by dividing the total market value of each Investment Fund
        and the ESOP by the total number of units outstanding in
        that Fund or the ESOP.  In the event that any shares of
        Grace Stock held in the ESOP portion of the Trust Fund are
        not traded on a national securities exchange on a
        particular Business Day, such shares shall be valued in
        good faith by an independent appraiser selected by the
        Trustee.

GR 001743

- 83 -

6.03    The Administrative Committee shall deliver or mail to each
       person in respect of whom an Account is maintained a
       statement setting forth the balance of the Savings Plan
       Account of such person in the Investment Funds not less
       frequently than once in each Plan Year.  After June 30,
       1989, such statement shall include the balance of such
       person's ESOP Account.

GR  001744

- 84 -

## Section 7

### Vesting

7.01    Each Participant and Inactive Participant shall be fully
and immediately vested in that portion of his Account
which is attributable to his Before Tax, After Tax, Basic,
Supplemental, and Rollover Contributions and to Company
contributions pursuant to Section 4.01.

7.02    Notwithstanding the provisions of Section 7.01 relating to
the fully vested status of Company contributions, Company
contributions made with respect to periods prior to
January 1, 1987 became fully vested after the expiration
of two full Plan Years following the close of the Plan
Year for which such Company contributions were made.

In the event that a Participant or Inactive Participant
terminated service prior to January 1, 1989 and before
attaining a 100% Vested Interest in his Account and
received a single lump sum payment of his Account, any
non-vested portion of his Account was forfeited as of the
last day of the month coincident with or next following
the date of such termination.  If any such Participant or
Inactive Participant elected to defer receiving a single
lump sum distribution of his Account until the first day
of the Plan Year next following his Termination of
Service, any non-vested portion of his Account was
forfeited as of the last day of the Plan Year in which his
Termination of Service occurred (unless such Participant
or Inactive Participant was re-employed by an Employing

GR 001745

- 85 -

Unit in a status covered by the Plan prior to such last day).  If any such Participant or Inactive Participant elected to receive installment payments of his Account, any non-vested portion of his Account was forfeited, or will be forfeited, as of the last day of the Plan Year coincident with the fifth consecutive One-Year Break in Service (unless such Participant or such Inactive Participant was re-employed, or is re-employed, by an Employing Unit in a status covered by the Plan prior to such fifth consecutive One-Year Break in Service).  Any amount forfeited hereunder was used, or will be used, to reduce Company contributions under Section 4.01.

GR 001746

- 86 -

### Section 8

Distribution of Vested Interest

8.01    Retirement, Disability or Other Termination of Service

Upon his Disability Date or on the date of Retirement or other Termination of Service, a Participant or Inactive Participant who is not eligible to elect or who does not elect to defer the distribution of his Account in accordance with Section 8.04 may elect, at any time prior to his Disability Date or the date of his Retirement or other Termination of Service, to receive his Vested Interest in any one of the following forms of benefit:

(a)    a single lump sum payment in cash equal to the value of his Vested Interest determined as of the Business Day on which the Recordkeeper processes his distribution election form, which date is on or after his Disability Date or the date of his Retirement or other Termination of Service, as the case may be, with actual payment to be made as soon as practicable thereafter.

(b)    annual or quarterly installment payments in cash of his Vested Interest, if such Vested Interest (without regard to any amount attributable to rollover contributions and earnings allocable thereto within the meaning of Code sections 402(c), 403(a)(4), 403(b)(8), 408(d)(3)(A)(ii) and 457(e)(16), with respect to distributions made

GR 001747

- 87 -

after January 1, 2002) exceeds $5,000 (or $3,500,
with respect to a former Participant who terminates
active participation under the Plan on or prior to
March 30, 1998) over a period that shall not exceed
twenty years (or such other period as may have been
designated under a designation by an Employee prior
to January 1, 1984 (satisfying any requirements of
the Internal Revenue Service) of a method of
distribution which complies with the provisions of
the Code as in effect on December 31, 1983),
commencing as of the first Business Day of the
first calendar quarter commencing after the date of
Retirement, the Disability Date or the date of
other Termination of Service of the Participant or
Inactive Participant, in which event his Vested
Interest shall remain in the Investment Funds in
which such interest is invested on the applicable
date and in the ESOP, unless and until his
investment election is changed in accordance with
Sections 5.04 and/or 5.07.  In such event the value
of the first installment payment shall be
determined on the first Business Day of the first
calendar quarter commencing after the former
Participant's Retirement, Disability Date or other
Termination of Service occurred.  The remaining
Vested Interest shall be valued as of the first
Business Day of each subsequent calendar quarter
(or, in the case of an annual installment, as of
the first Business Day of that calendar quarter
which is one year after the previous installment),
and the amount of the installment payment shall

GR 001748

- 88 -

equal the value of such remaining Vested Interest
multiplied by a fraction the numerator of which is
1 and the denominator of which is the number of
remaining installment payments to be made
(including the installment payment in question).
Notwithstanding the foregoing, any Participant or
Inactive Participant who terminated service (other
than on a Disability Date or on account of
Retirement) prior to January 1, 1991 and elected to
receive his Account in annual or quarterly
installment payments shall commence receiving such
installment payments as of the first day of the
Plan Year after the Participant or Inactive
Participant incurs 5 consecutive One-Year Breaks in
Service.

(C)    monthly, quarterly or annual installment payments
of a level amount in cash, of his Vested Interest,
if such Vested Interest (without regard to any
amount attributable to rollover contributions and
earnings allocable thereto within the meaning of
Code sections 402(c), 403(a)(4), 403(b)(8),
408(d)(3)(A)(ii) and 457(e)(16), with respect to
distributions made after January 1, 2002) exceeds
$5,000 (or $3,500, with respect to a former
Participant who terminates active participation
under the Plan on or prior to March 30, 1998),
commencing as of the first Business Day of the
first calendar month, quarter or year (as
applicable) commencing after the date of
Retirement, the Disability Date or the date of

GR 001749

- 89 -

other Termination of Service of the Participant or
Inactive Participant and after the appropriate
election has been processed, in which event his
undistributed Vested Interest shall remain in the
Investment Funds in which such interest is invested
on the applicable date and in the ESOP, unless and
until his investment election is changed in
accordance with Sections 5.04 and/or 5.07.

In the event that the Vested Interest of a Participant or
Inactive Participant (without regard to any amount attributable
to rollover contributions and earnings allocable thereto within
the meaning of Code sections 402(c), 403(a)(4), 403(b)(8),
408(d)(3)(A)(ii) and 457(e)(16), with respect to distributions
made after January 1, 2002) equals $5,000 (or $3,500, with
respect to a former Participant who terminates active
participation under the Plan on or prior to March 30, 1998) or
less as of the Business Day coincident with or next following his
Disability Date or date of Retirement or other Termination of
Service, the Participant's entire Vested Interest shall be
distributed as soon as practicable after his Disability Date or
the Date of his Retirement or other Termination of Service, as
the case may be, in the form of a single lump sum payment in
cash, unless such Participant or Inactive Participant elects to
defer receipt of such a single lump sum payment until the first
Business Day of the Plan Year next following the Plan Year in
which his Retirement, Disability Date or other Termination of
Service occurred. In either case, the value of the single lump
sum distributed to the Participant shall be equal to the value of
his Vested Interest determined as of the Business Day on which
the Recordkeeper processes his distribution election for.

- 90 -

8.02    <u>Death</u>

If a Participant, Inactive Participant or former
Participant shall die before the distribution of his
entire Vested Interest has commenced or been completed,
the balance of such Vested Interest determined as of the
Business Day on which the Recordkeeper processes the
applicable distribution form following the Participant's
date of death shall be distributed as soon as practicable
thereafter to his beneficiary as provided in Section 8.03.

8.03    Except as provided below, each Participant, Inactive
Participant, or former Participant shall designate a
person or persons as his beneficiary or beneficiaries to
receive the death benefits provided in Section 8.02.  Such
designation shall be made by written notice to the
Administrative Committee, and may be changed in similar
manner.  In the event that no beneficiary shall have been
designated or the last designated beneficiary shall not be
living at the time that death benefits become payable, the
death benefits will be paid to the estate of the
Participant, Inactive Participant or former Participant.
Notwithstanding any other provision of the Plan, effective
August 23, 1984, in the case of a Participant, Inactive
Participant, or former Participant who is married at the
time of his death, such beneficiary shall automatically be
his spouse (and no other person designated by him shall be
entitled to any benefits in respect of him under the
Plan), unless another beneficiary or an additional
beneficiary is named with the consent of such spouse.

- 91 -

8.04    If the value of a Participant's or Inactive Participant's
        Vested Interest (without regard to any amount attributable
        to rollover contributions and earnings allocable thereto
        within the meaning of Code sections 402(c), 403(a)(4),
        403(b)(8), 408(d)(3)(A)(ii) and 457(e)(16), with respect
        to distributions made after January 1, 2002) determined as
        of the Business Day coincident with or next following the
        date of his Termination of Service exceeds $5,000 (or
        $3,500, with respect to a former Participant who
        terminates active participation under the Plan on or prior
        to March 30, 1998) and his Account is immediately
        distributable, the former Participant or Inactive
        Participant must consent to any distribution of his
        Account.  For purposes of this Section 8.04, an Account is
        immediately distributable if any part of such Account
        could be distributed before a Participant or Inactive
        Participant attains age 65.  The consent of the former
        Participant or Inactive Participant shall be obtained
        within the 90-day period ending on the annuity starting
        date.  The annuity starting date is the first day of the
        first period for which an amount is paid as an annuity or
        any other form.  The Administrative Committee shall, not
        less than 30 days and not more than 90 days prior to the
        annuity starting date, notify a Participant or Inactive
        Participant of the right to defer the distribution of his
        Account until the last day of the Plan Year in which the
        Participant or Inactive Participant attains age 70-1/2.
        However, distribution may commence less than 30 days after
        the notice described in the preceding sentence is given,
        provided the Administrative Committee clearly informs the
        Participant or Inactive Participant that he has a right to

- 92 -

a period of at least 30 days after receiving the notice to
consider the decision of whether or not to elect a
distribution (and, if applicable, a particular
distribution option), and the Participant or Inactive
Participant (with any applicable spousal consent) after
receiving the notice, affirmatively elects a distribution;
provided that such a distribution shall commence no
earlier than 7 days after such notice is provided.  A
former Participant who has made an election to defer the
distribution of his Account under this Section 8.04 may
elect to receive a distribution of his Account as a single
lump sum payment in cash or in annual or quarterly
installments as of a date earlier than the applicable
dates described in the sentence before the preceding
sentence.  In this event, any such former Participant who
elects a single lump sum payment in cash shall receive the
value of his Vested Interest determined as of the Business
Day on which the Recordkeeper processes his distribution
election, with actual payment to be made as soon as
practicable thereafter.  Alternatively, any such former
Participant who elects annual or quarterly installments
shall receive the first such installment, based on the
value of his Vested Interest determined as of the first
Business Day of the first calendar quarter after his
election to receive an earlier distribution is received by
the Administrative Committee, with actual payment to be
made as soon as practicable thereafter.  The remaining
Vested Interest of such former Participant shall be valued
as of the first Business Day of each subsequent calendar
quarter (or, in the case of an annual installment, as of
the first Business day of that calendar quarter which is

- 93 -

one year after the previous installment), and the amount
of the installment payment shall equal the value of such
remaining Vested Interest multiplied by a fraction, the
numerator of which is 1 and the denominator of which is
the number of remaining installment payments to be made
(including the installment payment in question).

8.05    A Participant, Inactive Participant, or beneficiary, who
receives a single lump sum payment may elect to receive
that portion of his Vested Interest in the Grace Common
Stock Fund and, for periods after June 30, 1989, the value
of his ESOP Account, in the aggregate, payable to him in
whole shares of Grace Stock plus cash for any fractional
share.

8.06    Except as otherwise provided under regulations of the
Internal Revenue Service, and subject to Section 8.04 of
the Plan, the payment of benefits under the Plan to a
former Participant shall be made or commence, as the case
may be, not later than the 60th day after the close of the
latest of three Plan Years: (1) the Plan Year in which the
Participant attains age 65, (2) the Plan Year in which the
tenth anniversary of the Participant's commencement of
participation in the Plan occurs, and (3) the Plan Year in
which the Participant has a Termination of Service.

Notwithstanding any other provision of the Plan, any
benefit payable to a Participant or former Participant who
terminates service other than by death shall be paid, or
commence to be paid, not later than April 1 of the
calendar year following the later of (i) the calendar year

GR 001754

- 94 -

in which he attains age 70-1/2, or (ii) the calendar year
in which he terminates service (for non 5% owners), and
shall be payable over the period of his life or the lives
of him and a designated beneficiary, or a period not
extending beyond his life expectancy or their life
expectancies, and the benefit, if any, payable after his
death shall be payable at least as rapidly as under the
method of distribution then applicable at the time of the
Participant's death.  If the Participant dies before
benefits commence under the Plan, such benefits shall be
payable within 5 years after the death of the Participant,
or over the life of a designated beneficiary, or over a
period not extending beyond the life expectancy of a
designated beneficiary, and such benefits shall commence
within one year after the Participant's death, but need
not commence before the date that the Participant would
have attained age 70-1/2, in the case of a designated
beneficiary who is the Participant's spouse.  Upon the
death of such spouse, the foregoing rules shall apply as
if such spouse were the Participant.

Notwithstanding any other provisions of the Plan, with
respect to distributions under the Plan made on or after
September 1, 2001 for calendar years beginning on or after
January 1, 2001, the Plan will apply the minimum
distribution requirements of section 401(a)(9) of the
Internal Revenue Code in accordance with the regulations
under section 401(a)(9) that were proposed on January 17,
2001 (the 2001 Proposed Regulations).  If the total amount
of required minimum distributions made to a Participant
for 2001 prior to September 1, 2001 are equal to or

GR 001755

- 95 -

greater than the amount of the required minimum
distributions determined under the 2001 Proposed
Regulations, then no additional distributions are required
for such Participant for 2001 on or after such date. If
the total amount of required minimum distributions made to
a Participant for 2001 prior to September 1, 2001 are less
than the amount determined under the 2001 Proposed
Regulations, then the amount of required minimum
distributions for 2001 on or after such date will be
determined so the total amount of required minimum
distributions for 2001 is the amount determined under the
2001 Proposed Regulations. This amendment shall continue
in effect until the last calendar year beginning before
the effective date of the final regulations under section
401(a)(9) or such other date as my be published by the
Internal Revenue Service.

8.07    Notwithstanding the other provisions of Section 8 of the
Plan, a Participant or Inactive Participant may change an
election under Section 8.01 of the Plan with respect to
the form or timing of the distribution of his Vested
Interest one time during the period after the date of his
Retirement, his Disability Date, or the date of his other
Termination of Service (except by death) and prior to the
date as of which his Vested Interest is to be paid or
commence to be paid.  Such change of an election may be
made at such time, with such effective date, and on such
form as may be prescribed by the Administrative Committee.
 In addition, a former Participant or Inactive Participant
who has commenced receiving a distribution of his Vested
Interest in the form of installment payments may

- 96 -

accelerate the distribution of such Vested Interest by electing to receive a single lump sum payment in cash equal to the value of such remaining Vested Interest determined on the Business Day on which the Recordkeeper processes his distribution election.

8.08    Notwithstanding any other provision of the Plan, a distribution made on account of the following may only be made in the form of a lump sum:

(1)    on account of the sale or other disposition by the Company, or any corporation or other entity regarded as under common control with the Company pursuant to Code section 414(b)(1), of substantially all of the assets (within the meaning of section 409(d)(2) of the Code) used by the Company or other such entity in a trade or business, with respect to an individual who continues employment with the corporation acquiring such assets; or

(2)    on account of the sale or other disposition by the Company or other such entity of the Company's or other such entity's interest in a subsidiary (within the meaning of section 409(d)(3) of the Code) with respect to an individual who continues employment with such subsidiary.

8.09    Eligible Rollover Distributions

(A)    This Section applies to distributions made on or

GR 001757

- 97 -

after January 1, 1993. Notwithstanding any
provision of the Plan to the contrary that would
otherwise limit a distributee's election under the
Plan, a distributee may elect, at the time and in
the manner prescribed by the Administrative
Committee, to have any portion of an eligible
rollover distribution that is equal to at least
$500 paid directly to an eligible retirement plan
specified by the distributee in a direct rollover.

(B)    Eligible Rollover Distribution:  An eligible
rollover distribution is any distribution of all or
any portion of the balance to the credit of the
distributee, except that any eligible rollover
distribution does not include:  any distribution
that is (or is treated as under Treasury Regulation
1.402(c)-2T) one of a series of substantially equal
periodic payments (not less frequently than
annually) made for the life (or life expectancy) of
the distributee or the joint lives (or joint life
expectancies) of the distributee and the
distributee's designated beneficiary, or for a
specified period of ten years or more; any
distribution to the extent such distribution is
required under section 401(a)(9) of the Code; the
portion of any other distribution(s) that is not
includible in gross income (determined without
regard to the exclusion for net unrealized
appreciation with respect to employer securities);
any other distribution(s) that is reasonably
expected to total less than $200 during a year; and

GR 001758

- 98 -

any hardships withdrawal made after December 31,
1998. For distributions made on or after January 1,
2002, a portion of a distribution shall not fail to
be an eligible rollover distribution merely because
the portion consists of amounts that are not
includable in gross income.  However, such portion
may be transferred only to an individual retirement
account or annuity described in Code section 408(a)
or (b), or to a qualified defined contribution plan
described in Code section 401(a) or 403(a) that
shall separately account for the portion of such
distribution which is includible in gross income
and the portion of such distribution which is not
so includible.

(C)    Eligible retirement plan:  An eligible retirement
plan is an individual retirement account described
in section 408(a) of the Code, an individual
retirement annuity described in section 408(b) of
the Code, an annuity plan described in section
403(a) of the Code, or a qualified trust described
in section 401(a) of the Code, that accepts the
distributee's eligible rollover distribution. For
distributions made on or after January 1, 2002, an
eligible retirement plan shall also mean an annuity
contract described in Code section 403(b) and an
eligible plan under Code section 457(b) which is
maintained by a state, or any agency or
instrumentality of a state or political subdivision
of a state and which agrees to separately account
for amounts transferred into such plan from this

- 99 -

Plan.  Notwithstanding any other provision of this
Section 8.09, for distributions made on or after
January 1, 2002, the definition of eligible
retirement plan shall also apply in the case of a
distribution to a surviving spouse, or to a former
spouse who is the alternate payee under a qualified
domestic relations, as defined in Code section
414(q). For distributions made before January 1,
2002, in the case of an eligible rollover
distribution to the surviving spouse, an eligible
retirement plan is an individual retirement account
or individual retirement annuity.

(D)    Distributee:  A distributee includes an employee or

former employee.  In addition, the employee's or

former employee's surviving spouse and the

employee's or former employee's spouse or former

spouse who is the alternate payee under a qualified

domestic relations order, as defined in section

414(p) of the Code, are distributees with regard to

the interest of the spouse or former spouse.

(E)    Direct rollover:  A direct rollover is a payment by

the Plan to the eligible retirement plan specified

by the distributee.

- 100 -

8.10 Distributions to former Participants of the Grace Drilling
Money Purchase Pension Plan ("Grace Drilling Plan") and the
HOMCO International, Inc. Employees' Profit Sharing
Investment Savings and Retirement Plan ("HOMCO Plan").

Notwithstanding any other provisions of this Section 8, a
Plan Participant whose Account includes amounts transferred
from the Grace Drilling Plan or the HOMCO Plan (hereinafter
referred to as the "Grace Drilling Transferred Amount" and
"HOMCO Transferred Amount" respectively and as the
"Transferred Amounts," collectively), may elect (in addition
to the other options available under this Section 8) at any
time prior to his or her Disability Date, or the date of his
or her Retirement or other Termination of Service, whichever
occurs first, to receive that portion of his or her Vested
Interest in the Grace Drilling Transferred Amount or HOMCO
Transferred Amount, plus earnings on either, in any one of
the following forms of benefit described below, with respect
to the applicable transferred amount.

(a) Participants Entitled to a Grace Drilling Transferred
Amount.  For purposes of this Section 8.10, a
Participant with such a Transferred Amount will be
deemed to have reached Normal Retirement Age with
respect to the Grace Drilling Transferred Amount, and
earnings thereon, as of (i) the first day of any month
after attainment of age 60 or (ii) as of the first day
of any month following the attainment of age 55 and
completion of ten years of service, whichever occurs
first.

- 101 -

Unless an optional form of benefit is selected pursuant to a qualified election within the 90-day period ending on the annuity starting date, a married Participant's vested Grace Drilling Transferred Amount and earnings thereon will be paid in the form of a qualified joint and survivor annuity and an unmarried Participant's vested Grace Drilling Transferred Amount and earnings thereon will be paid in the form of a life annuity.

A Participant with a Grace Drilling Transferred Amount may elect to receive that portion of his or her Vested Interest representing the Grace Drilling Transferred Amount, plus earnings thereon, in any one of the following optional forms of benefit as described below:

    (1)  A lump sum distribution, provided that if the Participant is married, his or her spouse must consent to this form of distribution.

    (2)  Installment distributions, provided that if the Participant is married, his or her spouse must consent to this form of distribution. With such consent, the Participant may elect monthly or annual installments, where the installment payments will be equal payments over a 5, 10 or 15 year period, as selected by the Participant. If the Participant dies after the installment payments have commenced, any remaining payments due will be paid to the Participant's beneficiary. Installment payments will commence as soon as

- 102 -

administratively practicable, but in no event
more that one year following the
Participant's Disability Date, Retirement or
other Termination of Service, whichever
occurs first.

(3)   Optional Annuity Forms.  A Participant may
elect to have the Grace Drilling Transferred
Amount, plus earnings thereon, converted to a
life annuity, provided that if the
Participant is married, his or her spouse
must consent to this form of distribution.
With such consent, the following forms of
annuity are available to the Participant:

(i)   Monthly payments for the Participant's
life, with no death benefits.

(ii)  Monthly payments for the Participant's
life with payments guaranteed for a
period of 5, 10, or 15 years as the
Participant selects.  If the Participant
dies before the end of the period
selected, payments will continue to the
designated beneficiary until the end of
that period.

(iii) Monthly payments for the Participant's
life, with 100%, 75%, 66-2/3%, or 50%
(selected by the Participant) of the
payment continuing after the

GR 001763

- 103 -

Participant's death for the rest of the
life of the designated beneficiary.

(b)  Participants entitled to a HOMCO Transferred
Amount. Unless an optional form of benefit is
selected pursuant to a qualified election within
the 90-day period ending on the annuity starting
date, a married Participant's vested HOMCO
Transferred Amount and earnings thereon will be
paid in the form of a qualified joint and survivor
annuity and an unmarried Participant's vested
HOMCO Transferred Amount and earnings thereon will
be paid in the form of a life annuity.

A Participant may elect to have his or her HOMCO
Transferred Amount, plus earnings thereon,
distributed as a lump sum distribution, provided
that if the Participant is married, his or her
spouse must consent to this form of distribution.

(c)  Qualified Joint and Survivor Annuity or Pre-Retirement
Survivor Annuity.  Notwithstanding any other provisions
of the Plan, the following provisions shall apply with
respect to distributions of Transferred Amounts and
earnings thereon made under this section 8.10.

Should a Participant die, while married, prior to the
starting date of the distribution of benefits but on or
after the earliest retirement age, then for the
purposes of determining eligibility for the Joint and
Survivor Annuity benefits stated above, the starting

GR 001764