# PART 4

- 104 -

date of distribution of benefits shall be deemed to
have occurred one day prior to his date of death.

Notwithstanding the above, the Participant may elect,
subject to the consent of his spouse, in accordance
with the following procedures not to receive a
Qualified Joint and Survivor Annuity(or life annuity if
the Participant is not married or the consent of his
spouse is not required), in which case the manner of
distribution shall be other than a Qualified Joint and
Survivor Annuity:  No less than thirty days nor more
than ninety days before the starting date of any
payment of Accrued Benefits to the Participant under
the Plan in satisfaction of the Qualified Joint and
Survivor Annuity requirement, the Plan Administrator
shall provide the Participant with notification, in
non-technical terms, of the availability of a Qualified
Joint and Survivor Annuity, and on request, with a
dollar amount of the annuity payment with and without
election.  The written notification initially given to
the Participant shall include a written explanation of
(i) the terms and conditions of the Qualified Joint and
Survivor Annuity,  (ii) the Participant's right to
make, and the effect of an election to waive the
Qualified Joint and Survivor Annuity benefit, (iii)
the rights of the Participant's spouse as to the
election, and (iv)  the rights to make , and the effect
of, a revocation of such an election.  During said
thirty to ninety day period, the Participant shall be
provided with a period in which to elect in writing not
to receive a Qualified Joint and Survivor Annuity.

- 105 -

Such election may be changed by the Participant during the election period.

(1)  Notwithstanding the provisions of Section 8, Transferred Amounts and earnings hereon will be distributed to the Participant in the Form of a Qualified Pre-Retirement Survivor Annuity to the extent that such benefits are distributed on account of the Participant's death and the Participant was married at the time of his or her death.

Notwithstanding the above, the Participant may elect, subject to the consent of his or her spouse, in accordance with the following procedures, not to receive a Qualified Pre-Retirement Survivor Annuity: no later than the first day of the Plan Year in which the Participant attains the age of thirty-two and ending the with the close of the Plan Year preceding the Plan Year in which the Participant attains the age of thirty-five, a written explanation with respect to the Qualified Pre-Retirement Survivor Annuity comparable to that required for the Qualified Joint And Survivor Annuity shall be provide to the Participant.  If an individual is not a Participant in the Plan during the time prescribed in the preceding sentence, the Participant shall be provided with a written explanation of the Qualified Pre-Retirement Survivor Annuity not later than the

- 106 -

date he or she becomes a Participant in the Plan,
in accordance with the applicable Treasury
Regulations.  Beginning with the first day of the
Plan Year in which the Participant attains the age
of thirty-five and ending on the date of the
Participant's death, the Participant shall have
the right to elect to decline the Qualified Pre-
Retirement Survivor Annuity, subject to consent of
his or her spouse. Notwithstanding the preceding
sentence, the Plan may permit an earlier waiver
(subject to consent of spouse), provided that a
written explanation of the Qualified Pre-
Retirement Survivor Annuity is given to the
Participants and such waiver becomes invalid upon
the beginning of the Plan Year in which the
Participant attains the age of thirty-five.
During the "applicable election period," which
begins on the first day of the plan year in which
the Participant attains age 35 and ends on the
date of his/her death, the Participant may revoke
a previously made waiver at any time and any
number of times; provided, however, that the last
election made prior to the date of the
Participant's death shall be irrevocable.

(2)  When "consent of spouse" is required under this
section, the spouse of the Participant must
consent in writing to the applicable election, and
must acknowledge the effect of the election, and
the consent and acknowledgment must be witnessed
by a member of the Administrative Committee or a

- 107 -

notary public.  The consent of the spouse shall
not be necessary if it is established to the
satisfaction of the Administrative Committee that
there is no spouse, that spouse cannot reasonably
located, or for such other reasons as Treasury
Regulations may prescribe.  The consent of the
spouse or reasons for not requiring such consent
shall be applicable only to the spouse. If the
spouse o of a Participant becomes locatable or if
a Participant marries or remarries it shall be the
duty of the Participant to bring that fact to the
attention of the Administrative Committee.  If a
Participant so notifies the Administrative
Committee, the Administrative Committee shall
then, if applicable, proceed to make available to
such spouse the consent procedures described in
this section.

(3)  The benefit to the surviving spouse under the
Qualified Pre-Retirement Survivor Annuity shall
begin within a reasonable time, but in any event,
no later than 90 days, after the Participant's
death.

(d)  Definitions.  Notwithstanding any other provision of the
Plan, the following definitions shall apply for the
purposes of this Section 8.10:

(1)  Qualified Joint and Survivor Annuity is an annuity
for the life of the Participant with a survivor
annuity for the life of the spouse, which is equal

GR 001768

- 108 -

to one-half of the amount of the annuity payable during the joint lives of the participant and his spouse, the actuarial equivalent of the vested Transferred Amount plus earnings thereon of the Participant.

(2) Qualified Pre-Retirement Survivor Annuity is a survivor annuity for the life of the surviving spouse of the Participant which is the actuarial equivalent of the vested Transferred Amount plus earnings thereon of the Participant.

This provision shall be effective for Drilling Participants as of December 1, 1994; and effective for HOMCO Participants as of December 1, 1993.

- 109 -

## Section 9

## Withdrawals During Employment

9.01 (1)   The provisions of Section 9 shall apply to
            Participants and Inactive Participants who have not
            incurred a Termination of Service.

      (2)   With respect to a Participant's or Inactive
            Participant's Vested Interest other than the
            portion of his Account attributable to Before Tax
            Contributions and to Company contributions subject
            to the restrictions of Section 9.01(5)(f), a
            Participant or Inactive Participant may withdraw
            all or part thereof as of the Business Day on which
            the Recordkeeper processes his withdrawal request.

      (3)   With respect to the portion of a Participant's or
            Inactive Participant's Account attributable to
            Before Tax Contributions, a Participant or Inactive
            Participant who satisfies the requirements of
            Section 9.05 may withdraw all or part thereof as of
            the Business Day on which the Recordkeeper
            processes his withdrawal request.  Notwithstanding
            the foregoing, any earnings on Before Tax
            Contributions which are credited to a Participant's
            Account after December 31, 1988 may not be
            withdrawn on account of hardship as defined in
            Section 9.05.

      (4)   Partial withdrawals may only be made in multiples

- 110 -

of $100.  Any withdrawal under the Plan is subject
to a minimum withdrawal amount of $500.  No
withdrawal of any contributions or earnings may
exceed the value of the Account attributable
thereto, if less, on the Business Day on which the
Recordkeeper processes the Participant's
withdrawal request form.

(5)    Withdrawals under Section 9.01(2) shall be made
only in the following order of priority, and only
after the funds of a higher priority have been
completely withdrawn shall funds of the next
following priority be withdrawn:

(a)    Supplemental Contributions and Rollover
Contributions made prior to January 1, 1992,
and earnings, up to the Non-Taxable Balance

(b)    Rollover Contributions made on or after
December 31, 1992 and earnings, up to the
Non-Taxable Balance

(c)    After Tax Contributions made on or before
December 31, 1986, up to the Non-Taxable
Balance

(d)    At the election of the Participant or
Inactive Participant having a Supplemental
Contribution and/or Rollover Contribution
balance (including earnings thereon) in
excess of the Non-Taxable Balance, either (i)
Supplemental Contributions and/or Rollover
Contributions, and earnings thereon, if any
or (ii) After Tax Contributions made on or

GR  001771

- 111 -

after January 1, 1987 and earnings thereon, if any

(e) After Tax Contributions made on or before December 31, 1986 and earnings thereon, in excess of the Non-Taxable Balance

(f) Company contributions under Section 4.01 and earnings thereon, if any; provided, however, that no such Company contributions under Section 4.01 may be withdrawn until such Company contributions under Section 4.01 have remained in the plan for at least twenty-four (24) months after the Business Day on which such Company contributions were credited to his Account.

A Participant or Inactive Participant covered under (d) above may elect to receive an amount withdrawn under (i) or (ii). In the event that no election is made, (i) shall apply. In the event that the amount withdrawn exceeds the amount withdrawn under (i) or (ii) (whichever is elected), the balance shall be taken from (i) or (ii) (whichever was not elected).

9.02 Amounts withdrawn pursuant to Section 9.01 will be paid as soon as practicable after the Recordkeeper receives the Participant's or Inactive Participant's withdrawal request. In the case of withdrawals from the Grace Common Stock Fund and the ESOP, distributions shall be made in cash unless the Participant or Inactive Participant elects to receive in lieu thereof whole

- 112 -

shares of Grace Stock, plus cash for any fractional
share.

9.03    Each Participant or Inactive Participant withdrawing
funds pursuant to Section 9.01(2) shall be ineligible to
receive Company contributions under Section 4.01 of the
Plan for the following periods after the effective date
of such withdrawal (but nevertheless shall remain
eligible to make After Tax Contributions or Before Tax
Contributions, or both, during such periods):

| Category of Withdrawal | Proportion | Period During Which Company Contributions under Section 4.01 Are Suspended |
|---|---|---|
| Supplemental Contributions and Earnings Thereon | All or Part | None |
| After Tax Contributions and Earnings Thereon | All or Part | 3 months |
| Company Contributions under Section 4.01 and Earnings Thereon (subject to the restrictions of Section 9.01(5)(f)) | All or Part | None |

9.04    Amounts withdrawn with respect to a category of
contributions and earnings thereon pursuant to Section
9.01(2) or (3) shall be deducted from the Investment
Funds and the ESOP in the following order of priority,
and only when amounts invested in Investment Funds of a
higher priority have been completely withdrawn shall

GR 001773

- 113 -

amounts invested in Investment Funds of the next
following priority be withdrawn:

(1)     Fidelity Contrafund
(2)     Fidelity OTC Portfolio
(3)     Fidelity Blue Chip Growth Fund
(4)     Fidelity Growth & Income Portfolio
(5)     Fidelity Balanced Fund
(6)     Fidelity Investment Grade Bond Fund
(7)     Fidelity US Bond Index Fund
(8)     PIMCO Total Return Fund
(9)     INVESCO Equity Income Fund
(10)    Spartan US Equity Index Fund
(11)    Franklin Small Cap Growth Fund-A
(12)    JP Morgan Institutional US Small Company Fund
(13)    American Century International Growth Fund
(14)    Spartan International Index Fund
(15)    Templeton Foreign Fund A
(16)    Fidelity Freedom Income Fund
(17)    Fidelity Freedom 2000 Fund
(18)    Fidelity Freedom 2010 Fund
(19)    Fidelity Freedom 2020 Fund
(20)    Fidelity Freedom 2030 Fund
(21)    Fidelity Low-Priced Stock Fund
(22)    Spartan Extended Market Index Fund
(23)    Spartan Total Market Index Fund
(24)    Fidelity Diversified International Fund
(25)    Fidelity Europe Fund
(26)    Fidelity Equity-Income Fund
(27)    Fixed Income Fund
(28)    Grace Common Stock Fund

- 114 -

(29)    ESOP

The amount of a withdrawal will be based on the value of
the amount attributable to such category of contributions
and earnings credited to the Participant or Inactive
Participant in each such Investment Fund within the
Savings Plan and the ESOP on the Business Day on which
the Recordkeeper processes the Participant's or Inactive
Participant's withdrawal request.

9.05    Amounts may be withdrawn pursuant to Section 9.01(3) only
(i) where a Participant or Inactive Participant has
attained at least age 59-1/2, or (ii) where a Participant
or Inactive Participant incurs a hardship; provided that
such amounts may be withdrawn in the case of hardship
only after all available amounts have first been
withdrawn pursuant to Section 9.01(2) and only to the
extent that they are necessary to satisfy the hardship
after the Participant or Inactive Participant has applied
all other financial resources reasonably available to him
(if any) to satisfy such hardship.  For purposes of this
Section 9.05, a distribution is on account of hardship if
the distribution is for any of the following reasons:

    (a)    Expenses for medical care (within the
           meaning of Section 213 of the Code) that
           (i) were previously incurred by the
           Participant or Inactive Participant, his
           spouse or dependents and which are not
           reimbursed by insurance or otherwise, or

- 115 -

(ii) are necessary for such individuals to obtain such medical care; or

(b)   Costs directly related to the purchase of a principal residence for the Participant or Inactive Participant (excluding mortgage payments); or

(c)   Payment of tuition and related educational expenses for the next twelve (12) months of post-secondary education for the Participant or Inactive Participant, his spouse, children or dependents; or

(d)   Payments necessary to prevent the eviction of the Participant or Inactive Participant from his principal residence or foreclosure on the mortgage of the principal residence of the Participant or Inactive Participant; or

(e)   Any other reason which, in the Administrative Committee's determination, has produced an immediate and heavy financial need.

Any Participant or Inactive Participant who suffers a hardship, as defined in this Section 9.05, may request a withdrawal pursuant to Sections 9.01(3) and (4) by written notice to the Administrative Committee setting forth the amount requested and the facts establishing the

- 116 -

existence of the hardship; provided that, effective
January 1, 2004, such Participant must request such a
withdrawal by written notice to Fidelity.  Upon receipt
of a withdrawal request on account of hardship, the
Administrative Committee (or Fidelity, as appropriate)
shall determine whether a financial hardship exists.  If
the Administrative Committee (or Fidelity, as
appropriate) determines that such a hardship does exist,
it shall further determine what portion of the amount
requested, if any, is required to meet the need created
by the hardship.  The determination of the existence of a
financial hardship and the amount necessary to meet the
need created by such hardship shall be made by the
Administrative Committee (or Fidelity, as appropriate) in
accordance with uniform and non-discriminatory standards
and on the basis of all relevant facts and circumstances.
 In the event that a Participant or Inactive Participant
requests a hardship withdrawal for any reason other than
those set forth in (a) through (d) above, or the
Administrative Committee (or Fidelity, as appropriate) is
unable to determine that the amount requested for
withdrawal is necessary to satisfy a financial hardship
that is described in (a) through (d) above, based on the
supporting documentation, including written
certifications, furnished to it by the Participant or
Inactive Participant, then (i) the Participant's Before
Tax Contributions and After Tax Contributions will be
suspended for a period of six months (twelve (12) months
for hardship distributions before January 1, 2002),
beginning with the first day of the month immediately
following the date of the withdrawal payment, (ii) the

GR 001777

- 117 -

Participant shall be ineligible to receive Company contributions under Section 4.01 for such period and (iii) the Participant's Before Tax Contributions for his taxable year immediately following the taxable year of the hardship withdrawal shall be limited to $7,000 (as automatically adjusted for increases in the cost of living as prescribed by the Secretary of the Treasury for such next taxable year) less the amount of the Participant's Before Tax Contributions for the taxable year of the hardship withdrawal.

If, after January 1, 2004, Fidelity is unable or unwilling to make the hardship determinations specified above, or if there is any appeal of such a Fidelity determination, then the Administrative Committee shall decide each such determination, and its determinations shall be final and binding on all parties.

9.06    Notwithstanding any other provision of Section 9 to the contrary, a Participant that is subject to taxes on personal income under the laws of any country (other than the United States), including, but not limited to, the United Kingdom, shall be permitted to give an undertaking that would restrict his ability to receive an in-service withdrawal under the provisions of this Section 9 with respect to any portion of the Company contributions and Before Tax Contributions made to the Plan on his behalf, if, and to the extent that, such an undertaking is necessary in order to assure that the Participant will not be subject to tax by that country on those contributions.  Any such undertaking shall be effective

GR  001778

- 118 -

as of the date that the Plan Administrator agrees to observe the terms of such undertaking; and, as of that date, the undertaking shall be incorporated as part of the Plan by this reference.

9.07    Withdrawals By Former Participants

(a)    The provisions of this Section 9.07 shall apply to any former Participant who has elected to defer the distribution of his Account in accordance with Section 8.04.  With respect to such a former Participant's Vested Interest in his Account (other than the portion of his Account attributable to Before Tax Contributions, and to Company contributions that have not been in the Plan for at least two full Plan Years after the Plan Year for which such Company contributions are made and earnings on such contributions), such a former Participant may withdraw all or part thereof as of the Business Day on which the Recordkeeper processes his withdrawal request. Such a former Participant shall be permitted to withdraw all or a portion of his Before Tax Contributions if he has attained age 59-1/2. Notwithstanding the foregoing, a former Participant shall not be permitted to make any withdrawal:  (i) on account of hardship as defined in Section 9.05 or (ii) if he is receiving installment payments from the Plan.

(b)    Amounts withdrawn pursuant to Section 9.07 will be

- 119 -

paid as soon as practicable after the Recordkeeper
receives the former Participant's withdrawal
request.  In the case of withdrawals from the
Grace Common Stock Fund and the ESOP,
distributions shall be made in cash unless the
former Participant elects to receive in lieu
thereof whole shares of Grace Stock, plus cash for
any fractional share.

GR 001780

- 120 -

## Section 10

Payment of Benefits

10.01   If the Administrative Committee receives evidence
        satisfactory to it that a person entitled to receive any
        benefit under the Plan is physically or mentally
        incompetent to receive such benefit and to give a valid
        release therefore, or is a minor, and that another person
        or an institution is then maintaining or has custody of
        such person, unless claim shall have been made therefor
        by a duly appointed guardian, committee or other legal
        representative, the Administrative Committee may
        authorize payment of such benefit to such other person or
        institution and the release of such other person or
        institution shall be a valid and complete discharge for
        the payment of such benefit.

10.02   Every person before becoming entitled to any benefits
        under the Plan shall furnish the Administrative Committee
        with such information as it may require, including, but
        not limited to, proof of age relating to himself and any
        person named as a beneficiary.

10.03   The benefits under the Plan shall be payable solely from
        the Trust Fund and each Participant, Inactive Participant
        or former Participant or other person who shall claim the
        right to any payment under the Plan shall be entitled to
        look only to that fund for such payment.  No liability
        for the payment of benefits or any other payments under
        the Plan shall be imposed upon the Investment Committee,

- 121 -

the Administrative Committee, the Company, or the officers, directors or stockholders of the Company.

10.04    Except as expressly provided in the Plan, no Participant, Inactive Participant, former Participant or other person entitled to benefits may withdraw or receive any monies from the Trust Fund.

10.05    Effective July 1, 1993, any check that is not cashed within six months of its issuance will be cancelled, and the assets attributable thereto shall be used to offset plan expenses; provided, however, that a new check shall be reissued if and when the original check is presented for payment.

GR  001782

- 122 -

Section 11

Re-Employment

11.01   In the event a former Participant shall resume employment
        (within the meaning of the Department of Labor Regulation
        section 2530.203-3) by an Employing Unit in a status
        covered by the Plan after having previously terminated
        employment by Retirement or otherwise, any distribution
        or installment payment to be made to him as of a Business
        Day occurring on or after the date he resumes such
        employment shall not be made to him except upon
        subsequent application of the provisions of Section 8.

11.02   In the event of Termination of Service of an Employee and
        subsequent re-employment by an Employing Unit in a status
        covered by the Plan, Years of Service and Hours of
        Service before and after such termination shall be
        aggregated for purposes of determining eligibility.  Such
        aggregation shall occur on the date of re-employment.

11.03   Upon re-employment by an Employing Unit in a status
        covered by the Plan prior to a One-Year Break in Service
        (in the case of re-employment prior to January 1, 1985)
        or prior to 5 consecutive One-Year Breaks in Service (in
        the case of re-employment on or after January 1, 1985), a
        former Participant or Inactive Participant whose service
        was terminated prior to January 1, 1989 and before
        attaining a 100% Vested Interest in his Account may
        reinstate the dollar value (at the time of the
        forfeiture) of the shares of Grace Stock (or, if such

- 123 -

forfeiture occurred prior to May 25, 1988, the dollar
value of the shares of common stock of Grace Connecticut)
(or other amount) in the Former Fund C or the Grace
Common Stock Fund which was forfeited upon such
Termination of Service, or upon the valuation of his
Account in the case of a deferred lump sum distribution,
by repaying in cash the total dollar value of the actual
distribution (other than Rollover Contributions)
previously made to him (including the value of any Grace
Stock (or, if such distribution occurred prior to May 25,
1988, the total value of the shares of common stock of
Grace Connecticut)) distributed to him, within five years
after the date of re-employment.  In the event of such
repayment, there shall be credited to the Participant or
Inactive Participant (as of the Business Day on which the
repayment is received by the Trustee):

   (i)   an amount in the Fixed Income Fund equal to the
         dollar amount previously held in the Investment
         Funds (except the Grace Common Stock Fund) or the
         Former Funds A, B, C or D attributable to After
         Tax, Before Tax, Supplemental, or Company
         contributions pursuant to Section 4.01 repaid by
         the Participant;

   (ii)  an amount in the Grace Common Stock Fund within
         the Savings Plan equal to the dollar value (at the
         time of forfeiture) of the Grace Stock (or, if
         such forfeiture occurred prior to May 25, 1988,
         the dollar value of the shares of common stock of
         Grace Connecticut) (or other amount) forfeited by

- 124 -

the Participant.

11.04  In the event of re-employment by an Employing Unit in a
status covered by the Plan of a former Participant who
terminated service prior to attaining a 100% Vested
Interest in his Account, elected to receive installment
payments, and incurred a One-Year Break in Service (in
the case of re-employment prior to January 1, 1985) or 5
consecutive One-Year Breaks in Service (in the case of
re-employment on or after January 1, 1985), no
reinstatement of the dollar amount forfeited by him upon
such Breaks in Service shall be permitted and the balance
standing to his credit upon re-employment shall
constitute a separate account in which he is fully
vested.

11.05  If a Participant commences U.S. military service (in 1994
or thereafter), including service with the National
Guard, and he applies to become reemployed by the Company
within a specified time after that service ends (see
below), he will be permitted to make contributions to the
Plan to account for the period that he was in the service
("Make-Up Contributions"), which will be in addition to
the contributions that he may make under the other
provisions of the Plan.  The Make-Up Contributions shall
not be in excess of the amount which the Participant
would otherwise have been permitted to make to the Plan
if he was continuously employed by the Company while he
was in the service.  Any Make-Up Contributions must be
made within the period that begins on the date the
Participant commences reemployment with the Company and

GR 001785

- 125 -

ends 5 years later. (However, if the Participant's period
of service was less than 1 2/3 years, then the period for
Make-Up Contributions will commence on the date he
commences reemployment but the period's length will only
be 3 times the length of the period of his military
service.)

In order for this provision to apply, the Participant
must apply for reemployment with the Company within the
period specified as follows:

| Period Of Military Service | Required Reemployment Application Date |
|---|---|
| Less than 31 days | The beginning of next regularly scheduled work period after military service ends |
| 31 to 180 days | Within 14 days of the date military service ended |
| More than 180 days | Within 90 days of the date military service ended |

Also, this provision shall not apply to an individual who
serves in the U.S. military service for greater than 5
years.

Notwithstanding any provision of the Plan to the
contrary, contributions, benefits, and service credit
with respect to qualified military service will be
provided in accordance with Code section 414(u).

GR 001786

- 126 -

## Section 12

## Administration of the Plan

12.01   A Trust Fund shall be established by a Trustee or
        Trustees appointed from time to time by the Board of
        Directors.  All assets of the Plan shall be deposited in
        the Trust Fund.  The corpus and income of the Trust Fund
        shall be used to provide benefits under the Plan and to
        defray the reasonable expenses of Plan administration and
        no part thereof shall be used for or diverted to purposes
        other than for the exclusive benefit of Participants,
        Inactive Participants and their beneficiaries, except as
        provided in Section 4.04.  Effective July 1, 1989, the
        Trustee of the Plan was appointed as the Trustee of the
        ESOP portion of the Trust Fund.

12.02   The Trustee or Trustees shall have sole authority to
        purchase or sell Grace Stock required for the purposes of
        the Plan from or to any person, including the Company,
        except that (i) no such stock shall be purchased from or
        sold to the Company for the account of the Grace Common
        Stock Fund and (ii) no commission shall be charged with
        respect to a purchase of Grace Stock from the Company for
        the account of the ESOP.  The Trustee or Trustees also
        shall take all action necessary to implement any
        investment determinations of the Investment Committee or
        of the Investment Manager(s) and shall conform to
        procedures established by the Administrative Committee
        for disbursement of funds of the Plan.  The Trustee or
        Trustees shall not be liable for any act performed while

GR 001787

- 127 -

subject to directions of the Investment Committee, the
Investment Manager(s) or the Administrative Committee
made in accordance with the terms of the Plan.

12.03   An Investment Committee (or any appropriate designee of
that Committee) shall be appointed from time to time by
the Board of Directors (or its designee) to serve at its
pleasure. The Investment Committee may authorize any
member of the Investment Committee or any agent or other
designee to execute or deliver any instrument or make any
payment on its behalf and/or to take other actions on its
behalf; and the Committee (or such member, agent or other
designee) may employ counsel and agents and such
clerical, accounting and actuarial services as any of
them may require.  A majority of the members of the
Investment Committee shall constitute a quorum for the
transaction of business, and the action of a majority of
the members present at a meeting shall constitute the
action of the Investment Committee.  In lieu thereof the
action of a majority of the members of the Investment
Committee expressed in writing without a meeting shall
constitute the action of the Investment Committee.
Effective June 14, 1995, the Investment Committee shall
be the Investment and Benefits Committee as created by
the Board of Directors as of that date.

12.04   (a)    The Investment Committee shall have the authority
and discretion to manage that portion of the assets of
the Trust Fund comprising Fixed Income Fund except that
it may appoint one or more Investment Managers (as
defined by ERISA section 3(38)) who shall have the

- 128 -

authority and discretion to manage that portion of the
assets of the Trust Fund comprising the Fixed Income
Fund.  In exercising the authority and discretion
contained in this subsection, the Investment Committee
and Investment Manager(s) shall be limited only to the
extent provided in Section 5.01 for the investment of the
Fixed Income Fund.  The Investment Committee shall also
have the authority to select and change the Investment
Funds available hereunder.  The Investment Committee
shall not retain the authority to manage the Grace Stock
Fund, to the extent that an Independent Investment
Manager has been retained to manage that Fund, in
accordance with Section 12.04(b).

(b)    The Investment Committee shall also have the
authority to appoint one or more Independent Investment
Managers who shall have the authority and discretion to
manage the Grace Stock Fund, provided that any proceeds
from Grace Stock sold from the Fund at the direction of
the Independent Investment Manager shall be allocated to
the Fixed Income Fund and the Independent Investment
Manager shall not have any authority or discretion to
manage those proceeds upon such allocation.
Notwithstanding any other provision of the Plan to the
contrary, during any such appointment, the Independent
Investment Manager shall have the following authority and
duties:

    (i)    the continuous authority and duty to
        determine the extent that the continued
        retention of shares of Grace Stock within

- 129 -

the Grace Stock Fund is not consistent with
the applicable provisions of the Employee
Retirement Income Security Act ("ERISA"),
and to take actions in this regard that it
deems appropriate; including the authority
to dispose of Grace Stock held within the
Grace Stock Fund and to close the Grace
Stock Fund to participant trading;

(ii)    the authority to direct trades of Grace
Stock through dealers or firms that it
selects; and

(iii)   the duty and authority to vote the Grace
Stock within the Grace Stock Fund in a
manner it decides is appropriate in its sole
discretion, in the event of a tender offer
(as defined in Section 17.01) or other event
that would have substantially the same
effect as a disposition of substantially all
of the assets of Grace, but only to the
extent it determines that failure to
exercise such authority would be
inconsistent with the applicable provisions
of ERISA.

The Investment Committee shall also have the authority to
amend the Trust, and enter into any other agreements it
deems necessary to effectuate an appointment of an
Independent Investment Manager for the Grace Stock Fund.
 If any provision of this Plan is inconsistent with any
provision of the Trust, as amended to effectuate the

GR 001790

- 130 -

retention of an Independent Investment Manager, the Trust provision shall control.

12.05   Grace shall have prepared annually for the Investment Committee and the Board of Directors a report giving a summary of the assets and liabilities of the Plan and a brief account of the operation of the Plan for the preceding year, and any further information which the Investment Committee may deem advisable or which either Board of Directors may require.

12.06   The general administration of the Plan and the responsibility for carrying out its provisions (excluding any decisions as to investment and reinvestment of the Trust Fund) shall be placed in an Administrative Committee (or any appropriate designee of that Committee) consisting of not less than three persons who shall be appointed from time to time by the Board of Directors of Grace (or its designee) to serve at its pleasure. The Administrative Committee may authorize any member of the Administrative Committee or any agent or other designee to make any payment on its behalf and/or to take other actions on its behalf; or to execute or deliver any instrument or do any act on its behalf; and may employ counsel and agents and such clerical, accounting and actuarial services as any of them may require. Effective June 14, 1995, the Administrative Committee shall be the Investment and Benefits Committee as created by the Board of Directors as of that date.

- 131 -

12.07  The Administrative Committee shall hold meetings upon
       such notice, at such place and at such time as it may
       determine.  A majority of the members of the
       Administrative Committee shall constitute a quorum for
       the transaction of business, and the action of a majority
       of the members present at a meeting shall constitute the
       action of the Administrative Committee.  In lieu thereof,
       the action of a majority of the members of the
       Administrative Committee expressed in writing without a
       meeting shall constitute the action of the Administrative
       Committee.

12.08  Subject to the limitations of the Plan, the
       Administrative Committee from time to time shall adopt
       administrative rules and regulations and prescribe such
       processes, forms and applications as are appropriate to
       the administration of the Plan.  The Administrative
       Committee (or its designee) shall have full and exclusive
       authority to construe the terms of the Plan, to determine
       entitlement to allocations of contributions and to
       distributions of benefits to Participants, Inactive
       Participants, Beneficiaries and all other persons and to
       adjudicate all disputed claims for benefits filed under
       the Plan.  Every finding, decision and determination made
       by the Administrative Committee (or its designee) shall,
       to the full extent permitted by law, be final and binding
       upon all parties, except to the extent found by a court
       of competent jurisdiction to constitute an abuse of
       discretion.

- 132 -

12.09    The Administrative Committee shall determine the
         procedures to be followed in connection with the
         disbursement of the funds of the Plan.

12.10    The Investment Committee, the Administrative Committee
         and any Company, and any member, director, officer or
         employee thereof, shall be entitled to rely conclusively
         on all tables, valuations, certificates, opinions and
         reports which shall be furnished by any expert who shall
         be employed or engaged by Grace, the Investment Committee
         or the Administrative Committee.

12.11    The Administrative Committee (or its designee), in
         accordance with DOL Reg. §2560.503-1, has the authority
         to determine eligibility for participation and the
         amount and kind of benefits payable to any Participant,
         Spouse, or beneficiary, and interpretation of the Plan.

         (a)    Each person who claims entitlement to any right or
                benefit under the Plan, or his duly authorized
                representative (a "Claimant"), may submit a claim
                for benefits under the Plan.  All claims shall be
                submitted in writing to the Administrative Committee
                and shall be accompanied by such information and
                documentation as the Administrative Committee
                determines is required to make a ruling on the
                claim.  Upon receipt of a claim hereunder, the
                Administrative Committee shall consider the claim
                and shall render a decision and communicate the same
                to the Claimant:

GR 001793

- 133 -

    (1)   the specific reason(s) for the adverse determination;

    (2)   reference to the specific Plan provisions on which the determination is based;

    (3)   a description of any additional material or information necessary for the Claimant to perfect the claim and an explanation of why such material or information is necessary; and

    (4)   a description of the Plan's appeal procedures and the time limits applicable to such procedures, including a statement of the Claimant's right to bring a civil action under Section 502(a) of ERISA following an adverse benefit determination on review.

(b)   <u>Appeals Procedure</u>.  When there is an adverse benefit determination of a claim, the Claimant or duly authorized representative shall have the right to file an appeal with the Administrative Committee as provided in ERISA §503 and DOL Reg. §2560.503-1.

- 134 -

## Section 13

## Certain Rights and Obligations

13.01   It is the intention that the Plan continue and that
        contributions be made regularly each year, but all
        contributions under the Plan shall be voluntary, and not
        a legal obligation.

13.02   The Plan may be terminated at any time by the Board of
        Directors.  Upon termination, partial termination or
        complete discontinuance of contributions, the rights of
        all Participants and Inactive Participants (as to whom
        the Plan has terminated in the case of a partial
        termination) to the amounts credited to their Accounts
        shall be fully vested and nonforfeitable.

13.03   (a)     In the event of the divestment (as defined
                hereafter) of a Company or an Employing Unit (and,
                consequently, the employees of such Company or
                Employing Unit), the authorization of such Company
                or Employing Unit to participate in the Plan shall
                be automatically withdrawn.  For purposes of
                Section 13.03, a divestment of a Company or an
                Employing Unit occurs when (1) substantially all
                the assets of such Company or such Employing Unit
                are sold or transferred to an entity which is not
                treated as the same "employer" as Grace under
                either section 414(b) or (c) of the Code, or (2) a
                Company is merged into an entity which is not
                treated as the same "employer" as Grace under

GR 001795

- 135 -

either section 414(b) or (c) of the Code, or (3) all or part of the stock of (or other equity interest in) a Company is sold or transferred with the consequence that the Company is no longer treated as the same "employer" as Grace under either section 414(b) or (c) of the Code.  In the event of such a divestment, the Employees of such Company or Employing Unit shall cease to be Participants in the Plan and shall be deemed to have incurred a Termination of Service as of the date of such divestment.

(b)    Any Company may, with the consent of the Board of Directors, withdraw from the Plan at any time, and the Board of Directors may in its discretion at any time withdraw the authorization of any Company or any Employing Unit to participate in the Plan.  In the event of such a withdrawal, the Employees of such Company or Employing Unit shall cease to be eligible to participate in the Plan as of the date of the withdrawal.

13.04  In the case of any merger or consolidation with, or transfer of assets or liabilities of the Plan to any other plan, each Participant will be entitled to receive (if the Plan then terminated) a benefit immediately after the merger, consolidation, or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before such merger, consolidation, or transfer (if the Plan had then terminated).

GR 001796

- 136 -

13.05    The establishment of the Plan shall not be construed as
        conferring any legal rights upon an Employee or any
        person for a continuation of employment, nor shall it
        interfere with the rights of the Company to discharge any
        Employee and to treat him without regard to the effect
        which such treatment might have upon him under the
        provisions of the Plan.

- 137 -

## Section 14

### Amendments

14.01    Grace reserves the right at any time and from time to
time by action of its Board of Directors or its designee
to modify or amend in whole or in part any or all of the
provisions of the Plan; provided, that no modification or
amendment may be made which will deprive any Participant,
Inactive Participant, former Participant or other person
receiving a benefit, of any benefit under the Plan to
which he would otherwise be entitled by reason of the
accumulated funds held under the Plan on his account at
that time, and provided that no such modification or
amendment shall make it possible for any part of the
funds of the Plan to be used for, or diverted to,
purposes other than the exclusive benefit of
Participants, Inactive Participants, former Participants
and other persons entitled to benefits under the Plan
(except as provided in Section 4.04).  Notwithstanding
the foregoing, any modification or amendment of the Plan
which is deemed necessary or appropriate to bring the
plan into conformity with the Code or regulations
thereunder may be made (retroactively if necessary) in
order to qualify the Plan under the Code and regulations
thereunder.

GR  001798

- 138 -

## Section 15

### Non-Alienation of Benefits

15.01   No benefit under the Plan shall be subject in any manner
        to anticipation, alienation, sale, transfer, assignment,
        pledge, encumbrance or charge, and any attempt so to
        anticipate, alienate, sell, transfer, assign, pledge,
        encumber or charge the same shall be void; nor shall any
        such benefit be in any manner liable for or subject to
        the debts, contracts, liabilities, engagements or torts
        of the person entitled to such benefit.  Notwithstanding
        the foregoing, the Plan shall comply with a valid Federal
        tax levy which is enforced against a Participant's or
        Inactive Participant's Account under section 6331 of the
        Code and shall not be liable in any manner to any person
        for effectuating such compliance.

15.02   If any Participant, Inactive Participant, former
        Participant or any other person entitled to benefits
        under the Plan becomes bankrupt or makes an assignment
        for the benefit of creditors, or in any way suffers a
        lien or judgment against his personal assets to exist or
        attempts to anticipate, alienate, sell, transfer, assign,
        pledge, encumber or charge any benefit under the Plan,
        then such benefit shall, in the discretion of the
        Administrative Committee, cease and terminate, and in
        that event the Administrative Committee may hold or apply
        the same or any part thereof to or for the benefit of
        such Participant, Inactive Participant or former
        Participant, his spouse, descendants (including any