# PART 5

- 139 -

person adopted by such person or his descendants, and descendants of such adopted persons), other dependents, other persons or any of them, in such manner and in such proportion as the Administrative Committee may think proper.

15.03    Notwithstanding the provisions of Section 15.01 and 15.02, the Administrative Committee shall comply with the provisions of any qualified domestic relations order described in section 414(p) of the Code and shall establish a procedure to determine the qualified status of domestic relations orders and to administer distributions under qualified domestic relations orders. Specifically, in the event that a qualified domestic relations order requires the immediate distribution of any portion of a Participant's or Inactive Participant's Account to an alternate payee prior to the earlier of the date on which the Participant or Inactive Participant incurs a Termination of Service or the date on which he attains the "earliest retirement age," as defined in section 414(p)(4)(B) of the Code, the Administrative Committee shall comply with such order.  Furthermore, in the event that a qualified domestic relations order requires the division of a Participant's or Inactive Participant's Account for the benefit of an alternate payee, a separate Account shall be established for such alternate payee and such alternate payee shall thereafter be subject to all of the provisions of the Plan including the provisions of Sections 5.04 and 5.07 regarding transfers among the Plan's investment funds and Section 9 regarding withdrawals, as if the alternate payee were an

GR 001800

- 140 -

Inactive Participant, except that such alternate payee shall not be eligible to receive a distribution under Section 8 of the Plan until the earlier of the date on which the Participant or Inactive Participant incurs a Termination or Service or the date on which he attains the "earliest retirement age," as defined in section 414(p)(4)(B) of the Code.

GR 001801

- 141 -

## Section 16

### Top-Heavy Provisions

16.01   If the Plan becomes top-heavy (as defined in Section
        416(g) of the Code) with respect to any Plan Year on
        account of the accrued benefits of key employees (as
        defined in section 416(i) of the Code), then the
        provisions set forth in Section 16.06, 16.07, 16.08 and
        16.09 shall become applicable.

16.02   The Plan is required to be aggregated for purposes of
        Section 16 with (i) each other plan maintained by the
        Company in which a key employee participates, and (ii)
        each other plan maintained by the Company which enables
        any plan in which a key employee participates to meet the
        requirements of section 401(a)(4) or section 410 of the
        Code.

16.03   As elected by the Company, the Plan is permitted to be
        aggregated for purposes of Section 16 with one or more
        other plans maintained by the Company which satisfy the
        requirements of section 401(a)(4) and section 410 of the
        Code when considered together with the Plan and those
        other plans required to be aggregated under Section
        16.02.

16.04   The determination date with respect to a Plan Year is (i)
        the last day of the preceding Plan Year, or (ii) in the
        case of the first Plan Year, the last day of such Plan
        Year.

GR  001802

- 142 -

16.05   For purposes of Section 16, the present value of an
accrued benefit is the sum of the account balance as of
the most recent valuation date occurring within a
12-month period ending on the determination date and an
adjustment for contributions due as of the determination
date as described in the section 416 regulations.

16.06   If the Plan is deemed top-heavy with respect to a Plan
Year, the following provisions shall apply to Company
contributions (excluding salary reduction contributions
prior to January 1, 1985, but including such
contributions on and after January 1, 1985) under the
Plan in respect of such a Plan Year for a Participant who
is not a key employee and who is employed by the Company
on the last day of the Plan Year and for an Employee of
an Employing Unit who is not a key employee, is eligible
to participate in the Plan, and has elected not to
participate in the Plan:  such Company contributions (and
forfeitures) shall be equal to the greater of (i) the
Company contributions (and forfeitures) which would
otherwise be made without regard to Section 16, or (ii)
3% of his compensation from the Company paid during such
Plan Year (or lesser percentage contributed for a key
employee determined under the section 416 regulations).
For Plan Years beginning on or after January 1, 2002,
employer matching contributions shall be taken into
account for purposes of satisfying the minimum
contribution requirements of Code section 416(c)(2) and
the Plan.  The preceding sentence shall apply with
respect to matching contributions under the Plan or if

GR  001803

- 143 -

the Plan provides that a minimum contribution requirement shall be met in another plan, such other Plan. Employer matching contributions that are used to satisfy the minimum contribution requirements shall be treated as matching contributions for purposes of the actual contribution percentage test and other requirements of Code section 401(m). If such a Participant is also a participant in a defined benefit plan maintained by the Company which is also top-heavy, Section 16.06 shall not apply, and instead the top-heavy provisions of such defined benefit plan shall apply to him.

16.07   For Plan Years beginning before 1989, if the Plan is deemed top-heavy with respect to a Plan Year, compensation taken into account under the Plan shall not exceed the amount determined under section 416(d) of the Code; provided, however, that no benefit accrued prior to a Plan Year in which the Plan was top-heavy shall be reduced by virtue of the limitation herein.

16.08   If the Plan is deemed top-heavy with respect to a Plan Year beginning prior to January 1, 2000, the denominators of the defined benefit and defined contribution fractions applicable with respect to a Participant under section 415(e) of the Code shall be determined by substituting the factor "1.0" for the factor "1.25" therein, and by substituting the amount "$41,500" for the amount "$51,875" in the denominator of the defined contribution fraction in the event that the transition fraction under section 415(e)(6) of the Code is used. Notwithstanding the foregoing, the accrued benefit of a Participant as of

- 144 -

the end of the Plan Year prior to the Plan Year in which the Plan is deemed top-heavy shall not be reduced on account of Section 16.08.

16.09   For purposes of Section 16, the Company includes any other corporation, trade, or business treated as the same "employer" as the Company under section 414(b),(c), or (m) of the Code.

- 145 -

## Section 17

### Tender Offers

17.01    The provisions of this Section 17 shall apply in the
event that any entity, either alone or in conjunction
with others, makes a tender or exchange offer for, a
request or invitation for tenders of, or otherwise offers
to purchase or solicits offers to sell Grace Stock, which
offer, request, invitation or solicitation is made to
holders of Grace Stock generally (herein jointly and
severally referred to as a "tender offer"); except to the
extent that the provisions of Section 12.04(b) are
applicable to the tender offer.

17.02    The Trustee may not take any action in response to a
tender offer except as otherwise provided in this Section
17.  The Trustee shall promptly furnish to each
Participant and Inactive Participant who has shares of
Grace Stock credited to his Account notice of any tender
offer, including instructions as to how the Participant
or Inactive Participant is to give directions to the
Trustee in response to such tender offer.  Each
Participant and Inactive Participant may, at any time and
from time to time during the pendency of a tender offer,
(i) direct the Trustee to sell, offer to sell, exchange
or otherwise dispose of all or any portion of the Grace
Stock credited to such Participant's or Inactive
Participant's Account or (ii) withdraw or revoke any such
direction, in accordance with the terms of such tender
offer and the provisions of this Section 17; provided,

GR  001806

- 146 -

however, that such directions from any individual
Participant or Inactive Participant shall be confidential
and shall not be divulged by the Trustee to anyone,
including the Company or any director, officer, employee
or agent of the Company, it being the intent of this
provision of this Section 17.02 to ensure that the
Company (and its directors, officers, employees and
agents) cannot determine the direction given by any
Participant or Inactive Participant.  Such directions
shall be in such form and shall be filed in such manner
and at such time as the Trustee may reasonably prescribe
in accordance with the terms of such tender offer.

17.03   The Trustee shall, in the manner and within the time
prescribed by the terms of the tender offer, tender,
sell, offer to sell, submit for exchange or otherwise
dispose of the Grace Stock credited to Participant or
Inactive Participant Accounts in accordance with the
directions given (and not withdrawn or revoked) under
Section 17.02.  The proceeds of a disposition directed by
a Participant or Inactive Participant from his Account
under this Section 17 shall continue to be held in his
Account and be governed by the provisions of Section
17.05 and other applicable provisions of the Plan.  Such
proceeds may, in the discretion of the Trustee,
constitute one or more separate investment funds under
the Plan governed, nevertheless, by the provisions of
Section 17.05 and other applicable provisions of the
Plan.

GR 001807

- 147 -

17.04    To the extent to which a Participant or Inactive
        Participant does not direct the Trustee, or issues
        invalid directions to the Trustee, pursuant to Section
        17.02, such Participant or Inactive Participant shall be
        deemed to have directed the Trustee that such shares
        remain invested in Grace Stock subject to all provisions
        of the Plan.

17.05    Grace may direct the substitution of new employer
        securities for Grace Stock or for the proceeds of any
        disposition of Grace Stock to the extent provided in the
        Plan.  Pending the substitution of new employer
        securities or the termination of the Plan and Trust, the
        Trust Fund may be invested in such securities as Grace
        (or other fiduciary identified by Grace for such purpose)
        may from time to time direct; provided, however, in the
        absence of any direction from Grace or other fiduciary,
        the Trustee may invest the cash proceeds in short-term
        securities issued by the United States of America or any
        agency or instrumentality thereof or any other
        investments of a short-term nature, including corporate
        obligations or participations therein and interim
        collective or common investment funds.

17.06    In the case of Grace Stock held within the Trust Fund
        that has not been credited to Participant or Inactive
        Participant Accounts, the Trustee shall, in the manner
        and within the time prescribed by the terms of the tender
        offer, tender, sell, offer to sell, submit for exchange
        or otherwise dispose of only that number of shares of
        such stock that bears the same ratio to the total number

- 148 -

of such shares as the number of shares credited to
Participant and Inactive Participant Accounts for which
the Trustee has received valid directions (which have not
been withdrawn or revoked) from Participants and Inactive
Participants pursuant to Section 17.02 bears to the total
number of shares credited to Participant and Inactive
Participant Accounts.  The proceeds of a disposition of
Grace Stock made under this Section 17.06 pursuant to a
tender offer shall be held by the Trustee subject to the
provisions of the trust instrument, the Plan and any
applicable loan agreement.

GR 001809

- 149 -


## Section 18


Loans

18.01   A Participant may apply, pursuant to the procedure
        established in accordance with Section 18.04 for a loan
        from his Account.  Loans shall be made available to all
        Participants on a reasonably equivalent basis, subject to
        the following:

    (1)    Each loan shall be evidenced by a negotiable
           promissory note;

    (2)    Each loan shall bear a reasonable rate of interest;

    (3)    Each loan shall be adequately secured; provided that
           no loan may be secured, in whole or in part, by
           property other than the Participant's Account;

    (4)    No loan to a Participant shall exceed the value of
           the vested Account balance of the Participant at the
           time the loan is made;

    (5)    No loan to any Participant can be made to the extent
           that such loan when added to the outstanding balance
           of all other loans to the Participant would exceed
           the lesser of (a) $50,000 reduced by the excess, if
           any, of the highest outstanding balance of loans
           during the one-year period ending on the day before
           the loan is made, over the outstanding balance of
           loans from the Plan on the date the loan is made; or

GR 001810

- 150 -

  (b) one-half the present value of the Participant's nonforfeitable accrued benefit under the Plan or, if greater, the total accrued benefit up to $10,000; and for purposes of this clause (5), all loans from all plans qualified under Code section 401(a) of the Company or an affiliate of the Company shall be aggregated;

(6) Each loan must, by its terms, require that repayment of principal and interest be amortized in level payments, not less frequently than quarterly, over a period not extending beyond five years from the date of the loan; provided that the repayment term may be extended to a period not exceeding 20 years if the loan is used to acquire a dwelling unit which within a reasonable time (determined at the time the loan is made) will be used as the principal residence of the Participant; and

(7) No loan, shall be made available to "highly compensated employees" (as defined by Code section 414(q) and the regulations thereunder) in an amount greater than the amount made available to other Employees.

GR 001811

- 151 -

18.02  (1)    If a Participant requests a loan, the funds to be
              loaned shall be taken from the accounts, and the
              Investment Funds, in the order specified below:

1.  before-tax savings account          1.  Fidelity Contrafund

2.  Company contribution account        2.  Fidelity OTC Portfolio

3.  after-tax savings made              3.  Fidelity Blue Chip
    after December 31, 1986                 Growth Fund
    and related earnings

4.  after-tax savings made              4.  Fidelity Growth &
    before January 1, 1987 and              Income Portfolio
    related earnings

5.  rollover account                    5.  Fidelity Balanced Fund

6.  supplemental account                6.  Fixed Income Fund

                                        7.  ADS Fund

                                        8.  Grace Stock Fund

                                        9.  Company Contribution
                                            Fund

       (2)    Loan repayments (including interest) shall be
              credited to the Participant's Account in the
              following order:

              1.  supplemental account

              2.  rollover account

              3.  after-tax savings made before January 1, 1987

              4.  after-tax savings made after December 31, 1986

GR  001812

- 152 -

     5.  Company contribution account

     6.  before-tax savings account

18.03  The promissory note executed by the Participant shall be held by the Trustee as an asset of the Account.  Any loss caused by default on a Participant's loan obligation shall be borne solely by that Account.  Anything herein to the contrary notwithstanding, in the event of such a default, foreclosure on the promissory note and attachment of security will not occur until a distributable event occurs under the Plan with respect to the Participant involved.

18.04  The Administrative Committee shall prepare a written document setting forth the following information regarding loans from the Plan and such other information as the Administrative Committee deems relevant:

(1)   The identity of the person or positions authorized to administer the loan program;

(2)   A procedure for applying for loans;

(3)   The basis on which loans will be approved or denied;

(4)   Limitations (if any) on the types and amount of loans offered;

(5)   The procedure under the program for determining a reasonable rate of interest;

(6)   The events constituting default and the steps that

GR 001813

- 153 -

will be taken to preserve Plan assets in the event
of such default; and

(7)    The minimum loan amount.

The provisions of that document are incorporated herein by
this reference; provided, however, that if any provision
of that document conflicts with any other provision of the
Plan, the other Plan provision shall control.

18.05  Following a Participant's death, the provisions of this
       Section 18 shall apply to the Participant's beneficiary as
       if the beneficiary were the Participant, but only if that
       beneficiary is a "party in interest" (as defined in
       section 3(14) of ERISA).

18.06  The provisions of this Section 18 shall apply to a former
       Participant as if that former Participant were a
       Participant, but only if that former Participant is a
       "party in interest" (as defined in section 3(14) of
       ERISA).

EXHIBIT A

Following is a list of transactions suspended during the Transition Period:

1) Transfers of existing Account balances between Funds (and, if applicable, the ESOP);

2) Changes with regard to the allocation of contributions among the Funds;

3) Distributions of lump-sum distributions; and

4) Distributions of installment payments.

The following provisions are effective for the period after the Transition Period and prior to the commencement of the Conversion Period:

The sum of Before Tax Contributions and After Tax Contributions to a Participant's Savings Plan Account (and, separately the Rollover Contributions to a Participant's or Inactive Participant's Savings Plan Account) shall initially be invested in whole or in part (in multiples of 5%) in Former Fund A, Former Fund B, Former Fund C, or Former Fund D within the Savings Plan and, in the case of Rollover Contributions only, in the ESOP portion of the Trust Fund, pursuant to the election of the Participant. Such election shall continue until changed by the Participant.

GR 001815

A Participant may change any election pursuant to this paragraph on any Business Day to another election permitted under this paragraph effective on the Business Day on which the Participant notifies the Recordkeeper of such change by telephonic instruction, if such notice is received by the Recordkeeper before the latest time of day agreed to by Grace and the Recordkeeper for same day processing; otherwise, such change will be effective on the immediately succeeding Business Day.

A Participant, Inactive Participant, or a former Participant who has incurred a Termination of Service may, on any Business Day, elect to transfer all or a portion (in multiples of 5%, or in whole dollar amounts) of the existing balance of his Account in Former Fund A, Former Fund B, Former Fund C, or Former Fund D within the Savings Plan, among any of the other Former Funds within the Savings Plan attributable to the following categories of contributions separately: (i) Before Tax Contributions and After Tax Contributions, in the aggregate, and (ii) Supplemental Contributions and Rollover Contributions, in the aggregate. Such transfer shall occur on the Business Day on which the Participant, Inactive Participant, or former Participant notifies the Recordkeeper of such transfer election by telephonic instruction, if such notice is received by the

Recordkeeper before the latest time of day agreed to by Grace and the Recordkeeper for same day processing; otherwise, such change will be effective on the immediately succeeding Business Day.

A Participant or Inactive Participant who has attained age 50, may, one time during each Plan Year, elect to transfer to Former Funds A, B, C and/or D within the Savings Plan all or a portion (in multiples of 5% or in whole dollar amounts) of his Account Balance invested in the ESOP and Former Fund C, in the aggregate, which is attributable to Company contributions pursuant to Section 4.01 (as effective after the Transition Period but before the Conversion Period), and/or to transfer all or a portion (in multiples of 5% or in whole dollar amounts) of his Account Balance invested in Former Fund A, Former Fund B and/or Former Fund D within the Savings Plan as a result of a previous investment transfer from the ESOP and Former Fund C to any of the other Former Funds within the Savings Plan (except Former Fund C) and/or to the ESOP. Any such transfer will occur on the Business Day on which the Participant notifies the Recordkeeper of such transfer election by telephonic instruction, if such notice is received by the Recordkeeper before the latest time of day agreed to by Grace and the Recordkeeper for same day processing; otherwise, such change will be effective on the immediately succeeding Business Day. The foregoing

GR 001817

provisions of this paragraph shall also apply to a former Participant who has incurred a Termination of Service, regardless of attained age, except that any such former Participant may make investment transfer elections on any Business Day without regard to the once per year limitation set forth above.

GR 001818

<u>EXHIBIT B</u>

Following is a list of transactions suspended during the Conversion Period:

1) Transfers of existing Account balances between Former Funds and/or Investment Funds (and/or, if applicable, the ESOP);

2) Distributions of lump-sum distributions; and

3) Distributions of withdrawals.