**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| KERI EVANS, et al., )<br><br>Plaintiffs, )<br><br>v. )<br><br>JOHN F. AKERS, et al., )<br><br>Defendants. )<br>_____)<br>LAWRENCE W. BUNCH, et al., )<br><br>Plaintiffs, )<br><br>v. )<br><br>W. R. GRACE & CO., et al., )<br><br>Defendants. )<br>_____) | **Consolidated Under**<br>**Case No. 04-11380-WGY** |

**GRACE DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO**
**DISMISS THE BUNCH PLAINTIFFS' FIRST AMENDED COMPLAINT**

Defendants W. R. Grace & Co. ("Grace"), W. R. Grace & Co. Investment and Benefits Committee, John F. Akers, H. Furlong Baldwin, Ronald C. Cambre, Marye Anne Fox, John J. Murphy, Paul J. Norris, Thomas A. Vanderslice, Fred E. Festa, and Robert M. Tarola (collectively, "Grace Defendants"), by and through their undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6), submit this memorandum in support of their motion to dismiss the Bunch Plaintiffs' First Amended Class Action Complaint against them.

**I.    INTRODUCTION**

At the hearing held on December 20, 2006, on the Grace Defendants' first motion to dismiss the claims brought by the Bunch Plaintiffs, the Court decided to allow the Bunch

Plaintiffs to amend their original complaint by adding specific allegations linking the Grace

Defendants to Plaintiffs' self-dealing allegations against State Street Bank and Trust Company

and State Street Global Advisors (collectively, "State Street").  The Court did not give Plaintiffs

blanket permission to completely start anew or ignore the parameters of the case to which they

had previously (and repeatedly) committed, *i.e.*, a case that was limited to a self-dealing claim.

Nor did Plaintiffs seek the Court's permission to add entirely new claims, as would be required

in a case pending for as long as this case has been pending.  Nevertheless, Plaintiffs have now

filed an Amended Complaint containing several new counts against the Grace Defendants that

are completely unrelated to any alleged self-dealing on the part of State Street.  Thus, the

Amended Complaint should be dismissed in its entirety.

In addition to the Plaintiffs trying to stretch the Court's allowance, they also fail utterly to

state a cognizable claim against the Grace Defendants.  The shortcomings of the Amended

Complaint are many and varied – they range from an inability to include factual allegations

necessary to establish elements of the claims pleaded, to the assertion of claims that are

unrecognizable under, or even contrary to, ERISA.  The Grace Defendants therefore respectfully

request that this Court dismiss the Amended Complaint against them.

## II.    FACTUAL BACKGROUND

### A.    Allegations in the First Amended Class Action Complaint

Plaintiffs are current and former employees of W. R. Grace & Co. ("Grace") and

participants in the W. R. Grace & Co. Employees Savings and Investment Plan ("Plan"), which

is a defined contribution plan commonly known as a 401(k) plan.  Am. Compl. ¶¶ 12-14, 32.[1]

---

[1] These facts are taken from the Amended Complaint.  Solely for purposes of this motion to dismiss, the Grace Defendants assume, as they must, that the factual allegations in the Amended Complaint are true, except where they are inconsistent with other allegations or are contradicted by documents to which Plaintiffs refer and on which they rely.

The Plan offered the participants a variety of funds in which they could invest their contributions, including a fund containing Grace stock ("Grace Stock Fund").  Am. Compl. ¶ 36. In April 2003, Grace closed the Grace Stock Fund to new investments, and in December 2003, it appointed State Street as the independent investment manager of the Grace Stock Fund, with "responsibility for deciding whether to sell or hold the shares of Grace stock owned by the Plan." Am. Compl. ¶ 43.

By April 2004, State Street had sold all the Grace stock held by the Plan, including a block of 7.2 million shares sold for $3.50 per share.  Am. Compl. ¶ 46.  At about the same time, State Street allegedly began to acquire a significant volume of Grace stock.  Am. Compl. ¶ 59. The value of Grace stock increased nearly 300% in the following months, reaching a closing price of $13.61 per share by the end of 2004.  Am. Compl. ¶ 57.

### B.    Plaintiffs' Representations on the Parameters of their Claims

This entire case concerns State Street's sale of Company stock from the Plan in early 2004, after State Street became the independent investment manager of the Grace Stock Fund. There have been three court hearings during which Plaintiffs made perfectly clear that their only claim is against State Street for allegedly engaging in self-dealing when it sold the stock.

The first representation was made at the very first hearing held in this case, on March 2, 2006.  In response to this Court's question whether Plaintiffs were claiming that State Street's decision to sell the stock was improper, Plaintiffs responded:  "we are *solely* looking at what appears to be an increase in State Street's holding after they were – after they took the position to divest the Grace stock fund."  Exhibit A (Transcript of Hearing on State Street's Motion to Dismiss and Scheduling Conference, Mar. 2, 2006, at 7-8 ) (emphasis added).  On September 28, 2006, a hearing was held on Plaintiffs' motion for class certification.  At this hearing, Plaintiffs

again declared that their case was limited to a self-dealing claim against State Street.  Exhibit B

(Transcript of Hearing on Class Certification Motions, Sept. 28, 2006), at 12-13.

Because Plaintiffs' original complaint did not contain any allegations linking the Grace

Defendants to any supposed self-dealing on the part of State Street, the Grace Defendants moved

to dismiss the complaint as against them.  On December 20, 2006, at the hearing on Grace's

motion to dismiss the original complaint, Plaintiffs again asserted their position that their only

claim against State Street was for self-dealing, but then, for the first time, told this Court that

they were alleging that the Grace Defendants had liability for State Street's alleged self-dealing

either through their duty to monitor State Street or through co-fiduciary liability:

> BUNCH COUNSEL:  We think the complaint's sufficient even in the context of
> self-dealing.  . . .
>
>              \*   \*   \*
>              \*   \*   \*
>
> Once you assign away your, if you're a fiduciary, the law says, I believe, if you're
> a fiduciary and you assign it away, a certain aspect of your responsibility, you
> maintain your responsibility to the beneficiaries to the plan participants to make
> certain to monitor the person that you appointed to do a certain task.  And if in
> fact self-dealing is the sin of State Street, then we allege that monitoring State
> Street by Grace in its process of delegation is in fact a component of the harm that
> was caused . . .
>
>              \*   \*   \*
>
> We are saying that they have responsibility as co-fiduciaries.
>
>              \*   \*   \*
>
> [I]t's co-fiduciary liability, that is, liability of a fiduciary to be responsible if it
> conceals the acts of somebody it's appointed.  And we have alleged very
> specifically that they did two things, that is, Grace did two things that are in
> violation of its fiduciary duty to the participants under ERISA.  Number one, it
> said to the plan participants you may not speak . . . to State Street under any
> circumstances, no communications.
>
>              \*   \*   \*

> And the second thing that we allege Grace did as part of its responsibility and thereby co-fiduciary liability is that it said to the plan participants, basically we allege a cover-up, it's an imprudent investment and that's why it was sold.

Exhibit C (Transcript of Hearing on Grace Defendants' Motion to Dismiss, Dec. 20, 2006), at 6-9.

The Court then granted Plaintiffs an opportunity to amend their complaint to add the new allegations against the Grace Defendants that they had just made in open court:

> THE COURT:  *  *  *  [A]mendments are freely to be allowed.  Why don't I give them 30 days to spiff up this complaint and he can put in the complaint, assuming he can do it consistent with Rule 11, *what he's just told me*.

*Id.* at 10 (emphasis added).

On January 16, 2007, Plaintiffs filed the Amended Complaint, alleging self-dealing by State Street, breach of co-fiduciary duty by the Grace Defendants, as well as a violation of their duty to monitor State Street, and four additional counts:  (1) breach of fiduciary duty by the Grace Defendants and State Street for improperly divesting the Plan of Grace stock; (2) breach of fiduciary duty by the Grace Defendants and State Street for selling Grace stock from the Plan at an unreasonably low price; (3) promissory estoppel against the Grace Defendants; and (4) breach of fiduciary duty by the Grace Defendants and State Street for making misrepresentations. Am. Compl. ¶¶ 60-121.

## III.    ARGUMENT

### A.    Standard of Review

A complaint should be dismissed for failure to state a claim under Rule 12(b)(6) if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In determining whether a claim has been stated, the Court need not credit "bald assertions, unsupportable

conclusions, and opprobrious epithets." *Chongris v. Bd. of Appeals*, 811 F.2d 36, 37 (1st Cir. 1987) (citation omitted). "Conclusions that are not supported by the facts that are alleged in the complaint 'deserve no deference.' More particularly, summary legal conclusions that are contradicted or 'belied by the facts alleged' may be disregarded." *Mass. Laborers' Health and Welfare Fund v. Philip Morris, Inc.*, 62 F. Supp. 2d 236, 240 (D. Mass. 1999) (citation omitted) (quoting *In re Lane,* 937 F.2d 694, 698 n.7 (1st Cir. 1991)).

> **B.     Plaintiffs Are Judicially Estopped From Making any Claim That Is Unrelated to a Self Dealing Claim Against State Street.**

The doctrine of judicial estoppel prevents a litigant from pressing a claim that is inconsistent with a position taken by that litigant either in a prior legal proceeding or in an earlier phase of the same legal proceeding. *Pegram v. Herdrich*, 530 U.S. 211, 227 n. 8 (2000); *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 32-33 (1st Cir. 2004); *InterGen N.V. v. Grina*, 344 F.3d 134, 144 (1st Cir. 2003). "The doctrine's primary utility is to safeguard the integrity of the courts by preventing parties from improperly manipulating the machinery of the judicial system." *Alternative Sys. Concepts*, 374 F.3d at 33; *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001); *United States v. Levasseur*, 846 F.2d 786, 792 (1st Cir. 1988). Put differently, "courts typically invoke judicial estoppel when a litigant is 'playing fast and loose with the courts.'" *Alternative Sys. Concepts*, 374 F.3d at 33 (citation omitted).

There is no mechanical test for the application of the doctrine; each case tends to turn on its own facts. *Alternative Sys. Concepts,* 374 F.3d at 33 (citing *New Hampshire*, 532 U.S. at 750-51; *Patriot Cinemas*, *Inc. v. Gen. Cinemas Corp.,* 834 F.2d 208, 212 (1st Cir. 1987). It is widely agreed, however, that two conditions must be satisfied before judicial estoppel can attach: (1) the two positions must be directly inconsistent; and (2) the court must have accepted the prior position. *Alternative Sys. Concepts, Inc.*, 374 F.3d at 33 (citing *Faigin v. Kelly*, 184 F.3d 67, 82

(1st Cir. 1999); *Levasseur*, 846 F.2d at 794).  In addition, courts sometimes also consider whether the party gained an advantage from its previous position or the opposing party would suffer harm from the change.  *Id.; Lydon v. Boston Sand & Gravel Co*., 175 F.3d 6, 13 (1st Cir. 1999); *Fieldwork Boston, Inc. v. United States,* 344 F. Supp. 2d 257, 267 (D. Mass. 2004).

All three factors are present in this case.  At the prior hearings, Plaintiffs advised this Court unequivocally that they were proceeding only on a self-dealing claim against State Street. Yet in their Amended Complaint, Plaintiffs include several new claims that are completely unrelated to any alleged self-dealing by State Street.  In fact, only one of the seven counts in the Amended Complaint is based on self-dealing.  For example, contrary to what they told this Court at the December 20 hearing, even Plaintiffs' "duty to monitor" claim against the Grace Defendants is based entirely on the allegation that the Plan's Grace stock was sold at an "artificially low price" and is not connected to any supposed self-dealing by State Street.  Am. Compl. ¶¶ 96-99.  These are obviously inconsistent positions on the part of the Plaintiffs. "While 'holding a litigant to his stated intention not to pursue certain claims is different from the "classic" case of judicial estoppel,' such inconsistencies may present an even '*stronger* argument than do the classic cases for application of the doctrine.'"  *Alternative Sys. Concepts,* 374 F.3d at 34 (quoting *Patriot Cinemas*, 834 F.2d at 214) (emphasis in original).

There can be no question but that this Court accepted Plaintiffs' representations about the limited claims it was pursuing.  At the hearing on Plaintiffs' Motion for Class Certification, the Court stated:  "it looks to me in the Bunch case that a class from February to April should be certified on a self-dealing claim only.  That's it.  Nothing else."  Exhibit B (Transcript of Hearing on Class Certification Motions, Sept. 28, 2006), at 21.  And the Court left unresolved the portions of State Street's Motion to Dismiss the original complaint that were directed at claims

and issues other than self-dealing, obviously in reliance on Plaintiffs' assurances that self-dealing was the only claim they were pursuing against State Street. Memorandum and Order treating State Street's Motion to Dismiss as Motion for Summary Judgment and Denying Summary Judgment, Docket # 83, Apr. 5, 2006.

Allowing Plaintiffs to change their theory of the litigation at this stage of the case would prejudice the Grace Defendants. The parties have already gone through the entire class certification process, where the Grace Defendants had to evaluate whether and how to use the limited discovery afforded in this case for purposes of discovering issues pertinent to certification and whether and on what grounds to oppose class certification. These decisions were based on the information they had at the time, and the nature of the claims as they then understood them. Had they known that claims other than self-dealing were involved, the Grace Defendants may well have made different decisions. *See generally Alternative Sys. Concepts,* 374 F.3d at 34 (plaintiff judicially estopped from bringing materially different claim after discovery because to allow plaintiff to "go forward with its revisionist claim . . . would have been sanctioning what amounted to a sneak attack").[2]

This Court should, accordingly, prohibit Plaintiffs from straying from their repeated representations that they were proceeding only on a self-dealing claim against State Street. All counts in their Amended Complaint that are based on a theory other than self-dealing – every count except Count III – should be dismissed. And since the Grace Defendants are not included in Count III, the entire Amended Complaint should be dismissed as to them.

---

[2] It bears noting that this is not a situation where the Plaintiffs are seeking to amend their complaint on the basis of newly-discovered evidence. Indeed, the Plaintiffs had all of the information they needed to determine the nature of their claims a long time ago. In July 2006, in preparation for the mediation attended by the parties, the Grace Defendants voluntarily produced 10,124 pages of documents to Plaintiffs per their requests, and they had earlier produced 2,120 pages of documents in their voluntary disclosures under Fed. R. Civ. P 26(a).

**C.      The Amended Complaint Violates Fed. R. Civ. P. 15(a).**

Even if Plaintiffs' claims against the Grace Defendants are not barred by the doctrine of judicial estoppel, they must nevertheless be stricken unless and until this Court gives Plaintiffs permission to file them.

Where, as here, Defendants have served responsive pleadings, an amended complaint can be filed "only by leave of court or by written consent of the adverse party."  Fed. R. Civ. P. 15(a); *Leonard v. Parry*, 219 F.3d 25, 30 (1st Cir. 2000).  During the hearing on the Grace Defendants' Motion to Dismiss, the Court granted Plaintiffs *limited* leave to amend their complaint, to add allegations consistent with the statements they had made at the hearing supposedly linking the Grace Defendants to State Street's alleged self-dealing.  Exhibit C (Transcript of Hearing on Grace Defendants' Motion to Dismiss, Dec. 20, 2006), at 9.  But this Court did not give Plaintiffs *carte blanche* to amend; they have to file a motion under Rule 15 to obtain that authority.

Because their Amended Complaint goes far beyond the leave afforded them and Plaintiffs did not move for leave under Rule 15 to broaden the scope of their claims so expansively, the Amended Complaint must be dismissed as to the Grace Defendants.

**D.      Plaintiffs Have Failed to State any Cognizable Claim for Breach of Fiduciary Duty Against the Grace Defendants.**

**1.      Plaintiffs have failed to plead any of their fiduciary breach claims with sufficient specificity.**

Throughout their Amended Complaint, Plaintiffs allege that unspecified "Defendants" breached a variety of unspecified fiduciary duties.  Such bare-bone allegations do not satisfy even the general notice pleading requirements set forth in Fed. R. Civ. P. 8(a), let alone what is necessary to plead a claim of breach of fiduciary duty, which requires specific allegations with

respect to fiduciary status, the nature and extent of the authority of each fiduciary, and the connection between that authority and the claimed harm.  *In re Providian Fin. Corp*., No. C01-05027, 2002 WL 31785044, at *1 (N.D. Cal. Nov. 14, 2002).

Under ERISA, a person is a fiduciary only "to the extent" that he or she (1) exercises discretionary authority or control respecting management of the plan or management or disposition of its assets; (2) renders or has authority or responsibility to render investment advice for a fee; or (3) has discretionary authority or responsibility in the administration of the plan.  29 U.S.C. § 1002(21)(A).  Under this "functional definition," fiduciary status attaches not to a person generally, but only to discretionary acts for which a person is responsible, *i.e.,* the tasks and responsibilities relating to the management of the plan or its assets as to which the person exercises discretionary control.  *See Mertens v. Hewitt Assoc.,* 508 U.S. 248, 251 (1993); *Kling v. Fid. Mgmt. Trust Co.*, 323 F. Supp. 2d 132, 143, 146 (D. Mass. 2004).

Consequently, to survive a motion to dismiss, Plaintiffs must allege facts that would, if proven, establish that each of the Grace Defendants was a fiduciary by virtue of his or her discretion relating to some specific aspect of the management of the Plan or its assets.  They must also link those specific responsibilities to the conduct complained of in the Amended Complaint.  *Stein v. Smith,* 270 F. Supp. 2d 157, 168 (D. Mass. 2003) ("in order to survive a . . . motion to dismiss, [Plaintiffs] must sufficiently allege that each defendant had the status of a fiduciary" and "that such alleged fiduciaries breached their duties with respect to some aspect of the [Plan] that was within their discretion or control"); *see also Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12, 18 (1st Cir. 1998) ("fiduciary liability arises in specific increments correlated to the vesting or performance of particular fiduciary functions in service of the plan, not in broad, general terms").  Plaintiffs' Amended Complaint fails to make any such allegations.

Plaintiffs' rote allegations that each and every one of the individual Grace Defendants was an officer or director of Grace who "exercised discretionary authority or control with respect to the management of the Plan and authority or control respecting the disposition of its assets" (Am. Compl. ¶¶ 19-27) are insufficient to support a finding of their fiduciary status.  An individual is not an ERISA fiduciary solely by virtue of his or her position as a corporate officer, director, or manager.  *Stein*, 270 F. Supp. 2d at 169.  And mere assertions that a defendant is a fiduciary by alleging that he or she falls within ERISA's definition of a fiduciary do not properly state a claim.  *Id.* at 170; *see also In re Calpine Corp. ERISA Litig*., No. C-03-1685, 2005 WL 1431506, at *3 (N.D. Cal. Mar. 31, 2005) (mimicking statutory definition of fiduciary insufficient); *In re SmithKline Beecham Clinical Labs., Inc. Lab. Test Billing Practices Litig.*, 108 F. Supp. 2d 84, 103 (D. Conn. 1999) (same); *Torchetti v. IBM Corp*., 986 F. Supp. 49, 51 (D. Mass. 1997) (same).  These insufficient allegations of fiduciary status alone are enough to require dismissal of the Amended Complaint as to all the individual Grace Defendants.

In addition, Plaintiffs make no attempt to connect specific fiduciary duties of any of the Grace Defendants with the factual allegations in the Amended Complaint.  They merely allege that "the Defendants" breached certain general statutory fiduciary duties.  Broad, conclusory allegations that fail to identify who did what, where, and when cannot survive a motion to dismiss:

> [P]laintiffs have lumped the various classes of defendants into an undifferentiated mass and alleged that all of them violated all of the asserted fiduciary duties.  The resulting cause of action is so general that it fails to put the various defendants on notice of the allegations against them.

*In re Providian Fin. Corp.,* 2002 WL 31785044, at *1; *see also In re McKesson HBOC, Inc. ERISA Litig.,* No. C00-2003ORMW, 2002 WL 31431588, at *15 (N.D. Cal. Sept. 30, 2002) ("Defendants properly object to the complaint's grouping all of the [defendants] together, and

alleging that all of them violated all of the asserted fiduciary duties"). The Amended Complaint should, therefore, be dismissed against all the Grace Defendants.

> **2.     Counts I and II should be dismissed as to the Grace Defendants because Grace did not sell the Plan's Grace stock.**

Counts I and II of the Amended Complaint concern the actual sale of the Plan's Grace stock. The Grace Defendants cannot be liable under these counts because, as Plaintiffs acknowledge, they did not sell the stock; State Street did. Indeed, the Amended Complaint itself boldly announces that "State Street Divests the Plan of its Grace Holdings" and that "State Street Divested the Plan of Grace Stock." Am. Compl. at 13, 15. Counts I and II cannot be brought against Defendants who did not sell the stock; therefore, they should be dismissed as to all the Grace Defendants.

> **3.     Count IV does not state a viable claim for breach of a duty to monitor State Street.**

Plaintiffs allege that the Grace Defendants breached a duty to monitor State Street by failing to "prevent State Street from making the sale." Am Compl. ¶ 98. Plaintiffs simultaneously allege, correctly, that State Street was appointed as the independent investment manager of the Grace Stock Fund to avoid a potential conflict of interest. Am. Compl. ¶ 43. These two allegations are inherently inconsistent and cannot form the basis for a failure to monitor claim.

It is beyond dispute that a reasonable and appropriate way to deal with a potential conflict of interest on the part of a fiduciary is to appoint an independent fiduciary to manage the plan's investments. *See, e.g., Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 300-01 (5th Cir. 2000) ("[e]ngaging the services of an independent, outside advisor may . . . reliev[e] the fiduciary of any taint of a potential conflict"); *In re Ferro Corp. ERISA Litig.,* 422 F. Supp. 2d 850, 865-66

(N.D. Ohio 2006) (one way to ameliorate a potential conflict of interest is to appoint an independent fiduciary).  In fact, Plaintiffs themselves admit in their Amended Complaint that a fiduciary that is facing a potential conflict of interest must "seek independent, unconflicted advice."  Am. Compl. ¶ 66(c).

A fiduciary cannot be required to appoint an independent fiduciary to manage investments in order to avoid a potential conflict of interest on the one hand and, at the same time, have a duty to monitor the appointed independent fiduciary that requires it nevertheless to approve, prevent, or be involved in the manager's investment decisions, as Plaintiffs are alleging. That would undermine the very purpose of having appointed the independent fiduciary in the first place.  (In fact, the Grace Defendants have not been able to locate even a single case in which a fiduciary who appointed an independent fiduciary due to a potential conflict of interest was later charged with a duty to monitor the investment decisions of the independent fiduciary.)

Even assuming, moreover, that the Grace Defendants had an obligation to monitor State Street's investment decisions, that duty would entail, at most, "the duty to take action upon discovery that the appointed fiduciaries are not performing properly."  *Kling*, 323 F. Supp. 2d at 142 (quoting *Liss v. Smith,* 991 F. Supp. 278, 311 (S.D.N.Y. 1998)).  But Plaintiffs never allege that the Grace Defendants had knowledge of State Street's alleged self-dealing at any time, much less in time to "prevent State Street from making the sale."  Am. Compl. ¶ 98.  Without any allegations that Grace became aware of State Street's supposed self-dealing in time to take action to address it, there can be no claim against the Grace Defendants for a supposed failure to prevent State Street from selling the stock.  Accordingly, Count IV of the Amended Complaint should be dismissed for failure to state a cognizable claim for relief.

**4.    Count V does not state a viable claim for co-fiduciary liability.**

ERISA provides that a co-fiduciary can be held liable for an investment manager's fiduciary breach only if it had *actual knowledge* of the breach and either *actively participated* in it or *actively concealed* it from others.  ERISA provides:

> If an investment manager or managers have been appointed under § 402(c)(3) [29 U.S.C. § 1102(c)(3)], then, notwithstanding subsections (a)(2) and (3) and subsection (b), no trustee shall be liable for the acts or omissions of such investment manager or managers, or be under an obligation to invest or otherwise manage any asset of the plan which is subject to the management of such investment manager.

29 U.S.C. § 1105(d)(1).  Thus, a co-fiduciary is not responsible for an investment manager's fiduciary breach if it merely enabled the breach (29 U.S.C. § 1105(a)(2)) (Am. Compl. ¶ 104(c)), failed to remedy the breach (29 U.S.C. § 1105(a)(3)) (Am. Compl. ¶ 104(b)), or failed to prevent the breach (29 U.S.C. § 1105(b)(1)(A)) (Am. Compl. ¶ 98)).

The only allegation in the Amended Complaint that even arguably could subject the Grace Defendants to co-fiduciary liability under 29 U.S.C. § 1105(d)(1), therefore, is the claim that "Grace discouraged Plan participants from making any inquiry of State Street concerning the sale of Grace stock, and thus, Grace participated in the concealment of the breach."  Am. Compl. ¶ 104(a).  But even that allegation fails miserably.

First, Plaintiffs make no specific allegation identifying which of the Grace Defendants supposedly discouraged the participants from contacting State Street, when it happened, or what allegedly was said, as is required.  Courts regularly dismiss co-fiduciary claims for being too conclusory.  *See, e.g., In re Sprint Corp. ERISA Litig.,* 388 F. Supp. 2d 1207, 1230-31 (D. Kan. 2004) (co-fiduciary claim dismissed because too conclusory); *In re Syncor ERISA Litig.,* 351 F. Supp. 2d 970, 988 (C.D. Cal. 2004) (same); *Herrington v. Household Int'l, Inc.,* No. 02 C 8257,

2004 WL 719355, at *10 (N.D. Ill. Mar. 31, 2004) (same); *In re McKesson HBOC, Inc. ERISA Litig.,* 2002 WL 31431588, at *17-18  (same).

Second, any "knowing concealment" claim against the Grace Defendants must include an allegation that they actually knew that State Street's actions constituted a fiduciary breach. Although Plaintiffs claim that "State Street, with the knowledge and approval of Grace, sold the Plan's entire holdings of Grace" (Am. Compl. ¶ 77), there is no claim anywhere in the Amended Complaint that the Grace Defendants ever knew that State Street allegedly engaged in self-dealing when it sold the Plan's Grace stock, an omission that is fatal to their claim. *Stein,* 270 F. Supp. 2d at 175 (co-fiduciary claims dismissed due to inadequate allegations of actual knowledge of fellow fiduciary's breach); *see also Donovan v. Cunningham*, 716 F.2d 1455, 1475 (5th Cir. 1983) ("Section 405 does not impose vicarious liability – it requires actual knowledge by the co-fiduciary.").

Finally, any co-fiduciary liability on the part of the Grace Defendants for actively participating in a fiduciary breach by State Street necessarily requires that State Street committed the breach.  But Plaintiffs have fallen far short of sufficiently stating a self-dealing claim against State Street.  Plaintiffs allege that at the time State Street sold the Plan's Grace stock, the stock was significantly undervalued (Am. Compl. ¶ 56), yet they fail to identify a single material fact that was known to State Street (or any of the Defendants) that had not been disclosed to investors generally.  In fact, Plaintiffs specifically rely on disclosures Grace had made *in public filings* to support their claim that the stock was undervalued.  Am. Compl. ¶  45(c).  Such blatantly inconsistent allegations, which are contrary to accepted economic theory, cannot support either a self-dealing claim against State Street or a dependent participation claim against the Grace Defendants.  *See Summers v. State Street*, 453 F.3d 404 (7th Cir. 2006).

Consequently, Plaintiffs' Amended Complaint fails to state a viable co-fiduciary claim against the Grace Defendants.  Count V should, therefore, be dismissed.

### 5.    Count VI is preempted by ERISA.

Plaintiffs cannot maintain a common law claim for promissory estoppel against the Grace Defendants for the simple reason that it is preempted.  ERISA supersedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ."  29 U.S.C. § 1144(a).  The term "State law" includes all laws, decisions, rules, regulations, or other state action having the effect of law, of any State.  29 U.S.C. § 1144(c)(1).

"[A] law 'relates to' an employee benefit plan … if it has a connection with or reference to such a plan."  *Carlo v. Reed Rolled Thread Die Co.*, 49 F.3d 790, 793 (1st Cir. 1995) (citing *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983)).  "Under this 'broad common-sense meaning,' a state law may 'relate to' a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect."  *Id.* (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987)).  This Court has held that ERISA preempts state promissory estoppel claims, *Joyce v. John Hancock Fin. Servs., Inc.*, No. CIV.A.05 11428 WGY, 2006 WL 3378470, at *18 (D. Mass. Nov. 22, 2006) ("ERISA preempts all state-law claims - such as [plaintiff's] claims for unjust enrichment and promissory estoppel - that affect an ERISA plan"), as have numerous others.  *E.g., Griggs v. E.I. DuPont de Nemours & Co.,* 237 F.3d 371 (4th Cir. 2001); *McNeil v. Time Ins. Co.,* 205 F.3d 179 (5th Cir. 2000); *Degnan v. Publicker Indus.*, Inc., 83 F.3d 27 (1st Cir. 1996); *Plummer v. Consol. City of Indianapolis,* No. 1:03-CV-00567, 2004 WL 2278740 (S.D. Ind. Aug. 17, 2004); *Parks v. Fin. Fed. Savs. Bank,* 345 F. Supp. 2d 889 (W.D. Tenn  2004).  Accordingly, Plaintiffs' promissory estoppel claim should be dismissed.

6.    **Count VII fails to state a viable claim for misrepresentation against the Grace Defendants.**

Plaintiffs' claim that the Grace Defendants "failed to disclose important material information to Plan participants who comprise the Class" can be disposed of easily.   The "important material information" in question was the fact that Grace "would transfer" the investment management to an entity that "would prevent" participants from continuing to own Grace stock through the Plan.  Am. Compl. ¶ 115.  However, earlier in the Amended Complaint, the Plaintiffs specifically reference a March 17, 2003 communication to Plan participants that does, in fact, disclose that Grace was considering hiring an independent fiduciary for the Grace Stock Fund, and that this independent fiduciary would have the discretion to sell the Plan's Grace stock.  (Am. Compl. ¶ 41).  In the document referred to in Paragraph 41 of the Amended Complaint (and attached here to as Exhibit D),[3] Grace announced:

> We will continue to evaluate how best to manage the Grace Stock Fund and the Company Contribution Fund.  One approach being seriously considered is the appointment of an independent non-Grace entity (known as an independent fiduciary) to directly manage these two Funds.  Such an appointment would avoid any possible conflict of interest between Grace management's and the Grace Board's role negotiating a plan of reorganization, and their role as fiduciaries of the Funds.
>
> *    *    *    The independent fiduciary would have sole discretion, based on its analysis, to continue the Grace Stock Fund and Company Contribution Fund or to sell Grace shares within those Funds and transfer the proceeds to other funds of your choice, or take other action.

Thus, the Plaintiffs' later allegation in Paragraph 115 of the Amended Complaint that Grace failed to make such a disclosure is not only wrong, it is disturbing.  Because Plaintiffs' misrepresentation claim against the Grace Defendants is directly contradicted by a document

---

[3] When considering a motion to dismiss, the Court may permissibly review documents, such as this one, which are expressly linked to allegations in a complaint, without converting the motion to dismiss to a motion for summary judgment.  *Bedall,* 137 F.3d at 16-17.

they specifically refer to in their Amended Complaint, it should be dismissed.  *See, e.g., Clorox Co. P. R. v. Proctor & Gamble Commercial Co.,* 228 F.3d 24, 32 (1st Cir. 2000) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations") (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 454 (7th Cir. 1998)).

> Further, cases alleging misrepresentation must be pleaded with specificity.

> Cases alleging fraud – and for this purpose, misrepresentation is considered a species of fraud – . . . 'shall be stated with particularity.'  In such cases, the pleader usually is expected to specify the who, what, where, and when of the allegedly false or fraudulent representation.

*Alternative Sys. Concepts,* 374 F.3d at 29 (quoting Fed. R. Civ P. 9(b)); *see also Torchetti*, 986 F. Supp. at 55 ("in order to satisfy 9(b) the plaintiffs must aver specific facts related to time, place, and content of an alleged false representation"); *Vartanian v. Monsanto Co.,* 880 F. Supp. 63, 70 (D. Mass. 1995) (evidence of ERISA misrepresentation claim must be pleaded with particularity under Rule 9(b)).  And under Rule 9(b), "[i]f a claim involves multiple defending parties, a claimant may not usually group all claimed wrongdoers together in a single set of allegations.  Rather, the claimant must make specific and separate allegations against each defendant."  *Archdiocese of San Salvador v. FM Int'l, LLC*, No. 05-CV-237-JD, 2006 WL 2583262, at *6 (D.N.H. Sept. 7, 2006) (citing *Archdiocese of San Salvador v. FM Int'l, Inc.*, Civil No. 05-CV-237-JD, 2006 WL 437493, at *7 (D. N.H. Feb. 23, 2006) (quoting 2 James Wm. Moore et al., *Moore's Fed. Practice* § 9.039[1][b], at 9-25 (footnote omitted))).

Here, Plaintiffs fail to plead a sufficient claim for misrepresentation or non-disclosure in every respect.  The Amended Complaint fails to allege:  (1) which Defendant(s) supposedly made what alleged misrepresentations or had a duty to make disclosures that were not made; (2) when the misrepresentations were made or disclosures should have been made; (3) how Plaintiffs

reasonably relied on any purported misrepresentation(s) or non-disclosure(s) to their detriment; or (4) the nexus between any alleged misrepresentation(s) or non-disclosure(s) and any alleged harm or loss to Plaintiffs.[4]  Given these gross insufficiencies, Plaintiffs have not, as a matter of law, adequately pleaded a misrepresentation claim against the Grace Defendants.[5]

### IV.    CONCLUSION

For all the foregoing reasons, the Grace Defendants respectfully request that the Court dismiss the Amended Complaint in its entirety as to them.

Dated:  February 2, 2007                Respectfully submitted,


                                        /s/ Matthew C. Hurley_____
                                        William W. Kannel (BBO# 546724)
                                        (wkannel@mintz.com)
                                        Matthew C. Hurley (BBO# 643638)
                                        (mchurley@mintz.com)
                                        MINTZ, LEVIN, COHN, FERRIS, GLOVSKY and
                                        POPEO, P.C.
                                        One Financial Center
                                        Boston, MA 02111
                                        Telephone:  (617) 542-6000
                                        Facsimile:  (617) 542-2241

---

[4] Nor can Plaintiffs save their misrepresentation count by claiming that they were only giving an example of one of several misrepresentations on the part of the Grace Defendants.  ("Grace, *for example* … failed to disclose that it would transfer the investment management to an entity that likely would divest the Plan of its holdings in Grace."  Am. Compl. ¶ 115 (emphasis added)).  "To satisfy Rule 9(b), a pleading must specify the time, place and content of *each* alleged false representation."  *Laker v. Freid*, 854 F. Supp. 923, 931 (D. Mass. 1994) (quoting *Bio-Vita, Ltd. v. Rausch,* 759 F. Supp. 33, 37 (D. Mass. 1991)) (emphasis in original).

[5] To the extent Plaintiffs claim that their misrepresentation count is supported by their allegation that on January 26, 2004, the Grace Defendants represented to Plan participants that owning Company stock was volatile and risky, which was allegedly contrary to what they reasonably could have believed (Am. Comp. ¶ 45), they are yet again misconstruing documents upon which they rely.  The January 26, 2004 document Plaintiffs refer to was from State Street, not the Grace Defendants.  (A copy of the January 26, 2004 communication between State Street and the participants, which is specifically referred to in the Amended Complaint, is attached hereto as Exhibit E)  Obviously, a representation by State Street cannot support a misrepresentation claim against the Grace Defendants.

- and -

Carol Connor Flowe
Nancy S. Heermans
Caroline Turner English
Jeff Ruzal
Valerie N. Webb
ARENT FOX LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone:  (202) 857-6054
Facsimile:  (202) 857-6395

*Counsel for W. R. Grace & Co., Investments and Benefits
Committee, John F. Akers, Ronald C. Cambre, Marye Anne
Fox, John J. Murphy, Paul J. Norris, Thomas A.
Vanderslice, H. Furlong Baldwin, Fred E. Festa, and
Robert M. Tarola*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **KERI EVANS, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **JOHN F. AKERS, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | **Consolidated Under** |
| ) | **Case No. 04-11380-WGY** |
| **LAWRENCE W. BUNCH, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **W. R. GRACE & CO., et al.,** ) | |
| ) | |
| **Defendants.** ) | |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on February 2, 2007, I filed Grace Defendants' Memorandum in Support of Their Motion to Dismiss the Amended Bunch Complaint through the ECF system. It was sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies were sent to those indicated as non-registered participants on February 2, 2007.

/s/ Matthew C. Hurley