# Exhibit 1



STATE STREET GLOBAL ADVISORS

**SSgA**

**REDACTED**

**Fiduciary Committee Meeting**

| | |
|---|---|
| **Date:** | December 11, 2003 |
| **Subject:** | W.R. Grace – Retention of State Street |
| **Committee Members:** | Kelly Driscoll, Shawn Johnson, John Kirby, Peter Leahy, Mitch Shames |
| **Attendees:** | Monet Ewing, Sydney Marzeotti, Melissa Smith<br>Daniel Bayston and Paul Trost, Financial Advisor– Duff & Phelps ("D&P")<br>Dan Glosband, John Cleary, Jeff Hadden, Shepard Remis, Legal Counsel – Goodwin, Procter ("GP") |

**W.R. Grace**

**History:**
- W.R. Grace ("Grace") has been in bankruptcy for two years.
- As of April 2003, the W.R. Grace retirement savings plan (the "Plan") began prohibiting transfers and employee/employer contributions into the stock fund and only allowing distributions out of the fund.
- Fidelity is both recordkeeper and trustee of the Plan and the company stock fund is a share accounting fund, not unitized.
- Effective December 15, 2003, State Street will be retained as Investment Manager for the company stock fund in the Plan.
- Grace stock is currently trading at $2.30 a share and is quite volatile. The stock price has, since bankruptcy, tended to move in response to news regarding the pending asbestos litigation and related legislative developments.
- There is no decision by the Company at this time to liquidate the stock fund.
- Grace has until February, 2004 to file a plan of re-organization; however it will most likely receive an extension.
- The Independent Fiduciary Group, working with D&P and GP, has already completed substantial due diligence with respect to Grace.

**Discussion:** State Street's role will be to determine if it is appropriate and consistent with ERISA for the Plan to continue to hold the Grace stock. If it is not prudent to hold the stock, then the implementation of a sale program will be necessary.

In particular, State Street will need to immediately implement a process for ongoing review of the Grace stock. D&P, as independent financial advisor, will provide an estimated value for the stock. In particular, it will produce a share value range based on both the value of the operating business and the likely outcome of the various asbestos litigations and other contingencies. D. Bayston summarized D&P's preliminary presentation to the Committee. He highlighted the following points (i) Grace has been in the news lately due to poor corporate

LIBB/1268451.2

SSBT-000682
Confidential - Subject to Protective Order - For Mediation Purposes Only

governance; (ii) stock trades were headed down prior to bankruptcy; however the price rose last spring, apparently in response to activity on the legislative front; (iii) stock price has been in the range of $1.48 to $5.52; (iv) 38.5% of Grace is owned by institutions; and (v) D&P looked at other companies in asbestos bankruptcies as well as certain insurance companies that have significant exposure to asbestos-related liabilities. D&P will review all of the relevant factors affecting valuation and provide a share value range based on a probability analysis.

S. Remis reported that Grace's general counsel has projected the number of potential asbestos personal injury claims to be approximately 380,000 claims. There were about 130,000 claims pending at time of bankruptcy but that figure has been increased to include expected additional claims. Using an estimate of a $3,000 - $4,000 payout per claim, the aggregate liability exposure with respect to these claims would be approximately $1.1 to $1.5 billion. Grace has about $250 million remaining available from its insurance coverage.

A major factor affecting the valuation of Grace is the foregoing personal injury claims as well as the other ongoing asbestos litigation. The ZAI (attic insulation) litigation and the asbestos bodily injury claims present the most significant risks to Grace at this time. With respect to ZAI, the potential exposure is approximately $150 billion dollars (EPA's estimate) with a potential to settle. Other estimates of this potential liability are substantially lower. In order to accommodate settlement discussions, the court continued the "science" trial (which would determine liability from a science perspective) until February 2004. If the science trial goes forward and an unfavorable finding of liability is reached, the financial impact could put Grace out of business. No bar date has been set in the bankruptcy proceeding for filing asbestos personal injury claims; this matter is currently on hold due to a conflict of interest issue with the presiding judge and a motion to disqualify him. Another very significant factor is the potential for future legislation regarding asbestos claims. Legislation was introduced by Senator Hatch that would no longer allow asbestos claims to be prosecuted against individual companies but rather all such claims would be funded by a national trust. If the proposed legislation is adopted, Grace's cost could be $530 million over 27 years. Until these factors are resolved, Grace is unable to emerge from bankruptcy.

S. Johnson raised a concern with respect to State Street's responsibility to communicate with plan participants. M. Ewing stated that, as investment manager under the current Engagement Agreement, State Street has the obligation to communicate with participants. Grace has sent out an initial communication to participants informing them of State Street's involvement and that future communications would come directly from State Street. The Committee authorized the IFG to prepare a participant communication from State Street reminding participants of the volatile nature of the Grace stock, the lack of diversification in the company stock fund and each participant's ongoing right to shift all or any portion of his holding out of the fund at any time.

J. Kirby inquired as to whether there was any union involvement. J. Cleary stated that he was unsure whether a union was involved, but will report back to the IFG on this point.

The Committee requested from the IFG a summary presentation supporting its initial recommendation and a list of legal and financial events that would impact the stock and cause the Committee to reconvene to discuss.

LIBB/1268451.2

SSBT-000683
Confidential - Subject to Protective Order - For Mediation Purposes Only

Page 3

**Recommendation**: Subject to its ongoing monitoring and further analysis and evaluation, IFG is recommending that State Street not override the Plan documentation. Therefore, if this recommendation is approved, the Plan will continue to hold Grace stock.

LIBB/1268451.2

SSBT-000684
Confidential - Subject to Protective Order - For Mediation Purposes Only