**Unpublished Authority Part 1 or 3**

Westlaw.

Slip Copy
Slip Copy, 2006 WL 1716910 (W.D.Tenn.)
(Cite as: Slip Copy)

Page 1

C
Briefs and Other Related Documents
In re Accredo Health, Inc. Securities LitigationW.D.Tenn.,2006.Only the Westlaw citation is currently available.
United States District Court,W.D. Tennessee, Western Division.
In re ACCREDO HEALTH, INC. SECURITIES LITIGATION
No. 03-2216 DP.

April 19, 2006.

Douglas F. Halijan, Jef Feibelman, Burch Porter & Johnson, Memphis, TN, Jeffrey A. Kershaw, John H. Goselin, Kelly C. Wilcove, Oni A. Holley, Peter Q. Bassett, Scott N. Sherman, Alston & Bird, LLP, Atlanta, GA, for Accredo Health, Inc.

ORDER ADOPTING REPORT AND RECOMMENDATION
DONALD, J.
*1 This Document Relates To: ALL ACTIONS

Before the Court is a Motion for Class Certification, filed by Plaintiffs Louisiana School Employees' Retirement System ("LSERS") and Debra Swiman on July 22, 2005, (Dkt # 147). Defendants Accredo Health, Inc., David Stevens, Joel Kimbrough, John Gow, and Thomas Bell (collectively "Accredo") filed a response in opposition on September 23, 2005. Plaintiffs filed a reply on October 13, 2005. The matter was referred to the Magistrate Judge for a Report and Recommendation on February 27, 2006, and the Magistrate Judge issued a Report and Recommendation on March 7, 2006.

The Court has conducted a *de novo* review of the motion for class certification and the Response in Opposition thereto, and the Magistrate Judge's Report and Recommendation.

The Court finds that the Report is well reasoned and supported by the case law and Rules. Accordingly, the Court hereby adopts the Report and Recommendation of the Magistrate Judge.

IT IS HEREBY ORDERED that Plaintiffs' Motion for Class Certification is GRANTED. It is further ordered that Lead Plaintiffs LSERS and Debra Swiman are certified as class representatives. The Court further orders that the law firms of Bernstein, Litowitz, Berger and Grossman LLP and Lerach, Coughlin, Stoia, Geller, Rudman and Robbins LLP are appointed as Co-Lead Class Counsel. Finally, the Court orders that the law firm of Glassman, Edwards, Wade, and Wyatt, P.C. are named Liaison Class Counsel.

IT IS SO ORDERED.

REPORT AND RECOMMENDATION
PHAM, Magistrate J.
Before the court is a Motion for Class Certification, filed by plaintiffs Louisiana School Employees' Retirement System ("LSERS") and Debra Swiman on July 22, 2005 (dkt # 147). Defendants Accredo Health, Inc., David Stevens, Joel Kimbrough, John Gow, and Thomas Bell (collectively "Accredo") filed a response in opposition on September 23, 2005. Plaintiffs filed a reply on October 13, 2005. The matter was referred to the Magistrate Judge for a report and recommendation on February 27, 2006. On March 2, the court held oral argument on the motion. Counsel for LSERS, Swiman and Accredo were present and heard. The court also received the deposition transcripts of Debra Swiman and Warren Ponder. For the reasons below, the court recommends that plaintiffs' motion be GRANTED.

I. PROPOSED FINDINGS OF FACT

Plaintiffs bring this action based on claims arising under sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5. Pl.'s Mem. at 1. Plaintiffs allege that on June 16, 2002, defendants began issuing a series of false and misleading statements to the public about the financial condition of Accredo and its acquisition of Gentiva Health Services, Inc.'s Specialty Pharmaceutical Services Division. *Id.* at 3. Plaintiffs specifically point to Accredo's alleged announcements in press releases, analyst conference calls, and SEC filings that Accredo had amassed record financial results in the fourth quarter and year ending June 30, 2002, first quarter of 2003, and second quarter of 2003. *Id.* at 3-4. Plaintiffs contend that these allegedly false statements caused Accredo stock to trade at artificially inflated prices between

Slip Copy                                                                       Page 2
Slip Copy, 2006 WL 1716910 (W.D.Tenn.)
**(Cite as: Slip Copy)**

June 16, 2002 and April 7, 2003 ("the class period"). *Id.* at 4.

*2 In this motion, plaintiffs LSERS and Swiman seek to represent a class of all persons and entities who acquired Accredo securities on the open market during the class period.[FN1] LSERS is a public pension fund system organized for the benefit of current and retired Louisiana public school employees. *Id.* During the class period, LSERS purchased 13,600 shares of Accredo common stock. *Id.* Debra Swiman is an individual investor who purchased and held 22,000 shares of Accredo common stock during the class period. *Id.* at 5. LSERS, through its General Counsel Warren Ponder, and Swiman have provided the court with a joint declaration in which each declare that they have actively supervised and monitored the litigation and will continue to actively participate in its prosecution. *Id.* at 4-5; Joint Dec. at 2-3.

>   FN1. Specifically, LSERS and Swiman seek to represent:
>   All persons and entities who acquired Accredo Health, Inc. ("Accredo" or the "Company") securities on the open market between June 16, 2002 and April 7, 2003 (the "Class Period"). Excluded from the Class are: the defendants named in the Consolidated Complaint For Violations Of The Federal Securities Laws ("Complaint"); members of the families of each of the Individual Defendants; any parent, subsidiary, affiliate, partner, officer, executive or director of any defendant; any entity in which any such excluded person has a controlling interest; and the legal representatives heirs, successors and assigns of any such excluded person or entity.
>   Pl.'s Mem. at 1.

Accredo opposes this motion on two grounds. It argues that LSERS and Swiman have not demonstrated that their claims are typical of the claims of the class because neither relied on the integrity of the market when purchasing their Accredo stock. Def.'s Mem. at 10-11. Accredo further contends that plaintiffs have failed to demonstrate that questions of law or fact common to the members of the proposed class predominate over any questions affecting over individual members, as required by Fed.R.Civ.P. 23(b)(3). *Id.* at 4-9.

II. PROPOSED CONCLUSIONS OF LAW

Federal Rule of Civil Procedure 23 governs the certification of a class in federal court. A class will be certified only if, after conducting a "rigorous analysis," the court finds that all of the following requirements are met:
(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a); *Castillo v. Envoy Corp.,* 206 F.R.D. 464, 467-68 (M.D.Tenn.2002) (quoting *Gen. Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). In addition to these requirements, a proposed class must also show that one of the following Rule 23(b) factors is present:(1) there must be a risk of either incompatible standards of conduct or a risk that interests of prospective class members would be impaired by an adjudication of others' claims; (2) the party opposing the class has acted towards members of the class in a non-uniform way or (3) issues common to the class predominate over issues that are not common to the class and the best method of trying the suit is as a class action.

*Eddleman v. Jefferson County,* No. 95-5394, 1996 U.S.App. LEXIS 25298, at *15-16 (6th Cir. Aug. 29, 1996) (unpublished); Fed.R.Civ.P. 23(b)(1)-(3). To succeed in the present motion, plaintiffs bear the burden of proving that all of the elements and requirements of Rule 23 have been met. *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir.1996).

A. Rule 23(a) Requirements

1. Typicality

*3 Federal Rule of Civil Procedure 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). To meet this requirement, the claims of the representative parties need not be identical to those of the absent members. *Lehocky v. Tidel Tech., Inc.,* 220 F.R.D. 491, 499 (S.D.Tex.2004). "Rather, typicality may be satisfied where the representative plaintiffs' claims arise out of the same event or course of conduct as the other

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-11380-WGY   Document 146   Filed 02/02/2007   Page 4 of 10

Slip Copy                                                                                          Page 3
Slip Copy, 2006 WL 1716910 (W.D.Tenn.)
(Cite as: Slip Copy)

members' claims and are based on the same legal theory." *Id.* The focus of the court's typicality inquiry is whether the named plaintiff is subject to unique defenses that will "usurp a significant portion of the litigant's time and energy" and endanger absent class members from receiving appropriate representation due to the named plaintiff's preoccupation with defenses unique to it. Bentley v. Honeywell Int'l, Inc., 223 F.R.D. 471, 484 (S.D.Ohio 2004); Porter v. NationsCredit Consumer Disc. Co., 229 F.R.D. 497, 499 (E.D.Pa.2005). Here, the court submits that plaintiffs' claims arise out of the same course of conduct, defendant's material misstatements, and are based on the same legal theory, violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5. Furthermore, the court submits that neither Swiman nor LSERS are subject to any unique defenses that render them atypical and unable to represent the class.

Accredo argues that plaintiffs have not demonstrated that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3); Def.'s Mem. at 10. Accredo contends that representatives Swiman and LSERS did not rely on the integrity of the market in deciding to purchase Accredo stock. The court will address Accredo's argument with respect to each representative in turn below.

a. Debra Swiman

Accredo points to the following portion of Swiman's deposition testimony in support of its argument:
Q: Do you think [stock prices] are more or less honestly set on the NASDAQ exchange?
A: No.
Q: I gather you agree with me that stock prices are things that can be and have been, at least apparently for the most part, can be manipulated?
A. Absolutely.

Swiman Dep. at 112. Accredo argues that this testimony demonstrates that Swiman did not rely on the integrity of the NASDAQ in deciding to purchase Accredo stock. The court disagrees. Swiman specifically testified that she purchased Accredo stock because she believed that the market had accurately priced its stock and that published information concerning Accredo suggested that the company would perform well:Q: Tell me every reason why you bought Accredo stock on or around January 21, 2003.
A: We had researched the company and felt like it was going to be a good investment for us to invest our money in.
Q: Who had researched the company?
*4 A: My husband and myself.
Q: What did you do in researching the company? What did you look at, what do you remember seeing, and what do you remember knowing about the company, what was good about it, what was bad about it, those kinds of things?
....
A: We went on the Internet. My husband gets Investors Business Daily. He reads the Wall Street Journal. He reads the Star Ledger on occasion. And he goes on, I guess, the MSG, whatever it is, the screens, where it shows this and that value.
....
Q: Where did you think the price was when you bought it ... did you think that the price that you bought it at was the price that it should have been at and that it wasn't going up or down, or that it wasn't worth more or less?
A: Maybe that it was a fair price.
Q: Did you think that it was a fair price?
A: Yes.
Q: Why did you think that?
A: Because of the information that we had read about the solid company, and about what their intentions were going forward.

Swiman Dep. at 67-68, 110-111. Thus, reading Swiman's deposition transcript in its entirety, the court concludes that the portion of Swiman's deposition quoted by Accredo was taken out of context. The court submits that Swiman will not be subject to unique defenses at trial that renders her atypical or otherwise unable to represent the class.

b. LSERS

Accredo also points to the following deposition testimony from LSERS's general counsel, Warren Ponder, as support for its argument:
Q: So you're telling me that as far as you know, it has always been the custom and practice of LSERS to rely upon the investment advisors to make investment decisions about which stock and bonds to buy, provided that the investment advisors act within the parameters of the applicable investment policy and guidelines. Is that correct?
A: Yes, sir.
Q: So you can't say as the 30(b)(6) representative of LSERS what it was that the investment advisor who purchased or sold Accredo stock for LSERS was relying on when the investment advisor made those

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 1716910 (W.D.Tenn.)
**(Cite as: Slip Copy)**

Page 4

decisions. Is that correct?
A: That is correct.

Ponder Dep. at 46. Based on this testimony, Accredo contends that LSERS is subject to a unique defense because LSERS relied on the advice of its investment managers in deciding to purchase Accredo stock.

The Private Securities Litigation Reform Act of 1995 ("PSLRA"), designed to "increase the likelihood that institutional investors will serve as lead plaintiffs," creates a presumption that the plaintiff with the largest financial interest and who otherwise satisfies the requirements of Rule 23 should serve as the lead plaintiff. *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 282 (S.D.N.Y.2003); *see also* S.Rep. No. 104-98, at 11 (1995); HR Conf. Rep. No 104-369, at 6 (1995). Such institutional investors are likely to use investment managers, and reliance on these managers does not disqualify an institutional investor from serving as lead plaintiff. *In re WorldCom*, 219 F.R.D. at 282; *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 132 (S.D.N.Y.2001) (reliance on manager is not disqualifying where manager relies on public information or efficient market). To hold otherwise would contravene Congress's intent in passing the PSLRA.

*5 Moreover, the court's concern in its typicality analysis is whether the named plaintiff is subject to any unique defense at trial. As discussed in greater detail below, LSERS is presumed to have relied upon public information and the integrity of the market in making its purchase decision, which is typical of the class. "[W]here plaintiffs are privy to non-public information not available to other investors, they may be subject to unique reliance defenses making them atypical and inadequate class representatives." *In re Indep. Energy Holdings PLC, Sec. Litig.*, 210 F.R.D. 476, 481 (S.D.N.Y.2002). That, however, is not the case here. There is simply no indication that LSERS will be subject to a unique defense at trial that renders it atypical and unfit to serve as the lead plaintiff in this case.

2. Numerosity, Commonality, and Adequacy Requirements

In addition to its typicality requirement, Rule 23 also requires that "the class must be so numerous that joinder of all members is impracticable," "questions of law or fact common to the class must exist," and "the representative parties must fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a).

Accredo does not dispute that plaintiffs have met these requirements, and the court likewise finds that plaintiffs have satisfied these requirements of Rule 23(a). During the class period, Accredo had more than 47 million shares of common stock issued and outstanding, and the average weekly trading volume of Accredo common stock was 5.2 million shares. Nettesheim Decl. ¶ 16. It is undisputed that there are in excess of a thousand class members, and therefore, the class is numerous. Due to the large number and geographical disbursement of potential plaintiffs involved in securities actions, "the prerequisite expressed in Rule 23(a)(1) is generally assumed to have been met in class action suits involving nationally traded securities." *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1039 (5th Cir.1981). In this case, which involves a nationally traded security, the court submits that the number of potential plaintiffs is so substantial that joinder would be impracticable.

Likewise, the court submits that questions of law and fact are common to the class. This class action arises under sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5. The trier of fact will have to decide issues such as whether defendants misrepresented or misstated facts concerning Accredo's business and whether these statements or representations were material. These "[q]uestions of misrepresentation, materiality, and scienter are 'the paradigmatic common question[s] of law or fact in a securities fraud class action.'" *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 372 (D.Del.1990) (quoting *Moskowitz v. Lopp*, 128 F.R.D. 624, 629 (E.D.Pa.1989)).

Finally, the court submits that Swiman and LSERS will fairly and adequately protect the interests of the class. The Sixth Circuit has set forth two criteria for determining adequacy of representation: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re American Medical Sys.*, 75 F.3d 1069, 1083 (6th Cir.1996). Here, Swiman and LSERS have interests that are common to and co-extensive with the interests of unnamed class members. Further, both Swiman and LSERS made substantial investments in Accredo stock that provide them with a significant incentive to pursue this action. The court, therefore, submits that plaintiffs have satisfied all of Rule 23(a)'s requirements.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 1716910 (W.D.Tenn.)
(Cite as: Slip Copy)

Page 5

B. Rule 23(b) Requirements

1. Predominance

*6 Reliance is an essential element to securities fraud claims brought under § 10(b) and Rule 10b-5 that must be pleaded and proven by plaintiffs. *Freeman v. Laventhol & Horvath,* 915 F.2d 193, 197 (6th Cir.1990). This reliance requirement "provides the requisite causal connection between a defendant's misrepresentation and a plaintiff's injury." *Basic, Inc. v. Levinson,* 485 U.S. 224, 243, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). In order to avoid proof of individualized reliance from each member of a proposed class, plaintiffs alleging that a defendant made material misrepresentations concerning a security traded in an efficient market can satisfy this element by raising a rebuttable presumption of reliance using the fraud on the market theory. *Basic,* 485 U.S. at 242; *Freeman,* 915 F.2d at 197. The fraud on the market theory provides a "practical resolution to the problem of balancing the substantive requirement of proof of reliance in securities cases against the procedural requisites of Fed.R.Civ.P. 23." *Basic,* 485 U.S. at 242. The absence of such a presumption effectively forecloses the use of the class action device, as individual issues of fact would overwhelm and predominate questions of fact and law common to the members of the class. *Id.*

"The fraud on the market theory rests on the assumption that the price of an actively traded security in an open, well-developed, and efficient market reflects all the available information about the value of the company." *Freeman,* 915 F.2d at 197 (citing *Peil v. Speiser,* 806 F.2d 1154, 1160 (3d Cir.1986)). In order to invoke the fraud on the market presumption of reliance, a purported class action plaintiff must prove the following five elements:
(1) that the defendants made public misrepresentations, (2) that the misrepresentations were material, (3) that the stock was traded on an efficient market, (4) that the misrepresentations would induce a reasonable, relying investor to misjudge the value of the stock, and (5) that the plaintiff traded in the stock between the time the misrepresentations were made and the time the truth was revealed.

*Freeman,* 915 F.2d at 197-198. Accredo contends that plaintiffs cannot invoke the fraud on the market reliance presumption because they have not established that the market in which Accredo's stock traded was efficient.[FN2]

FN2. In *Freeman,* the Sixth Circuit explained its rationale for the efficient market requirement:
The fraud on the market theory cannot be applied logically to securities that are not traded in efficient markets. An inefficient market, by definition, does not incorporate into its price all the available information about the value of a security. Investors, therefore, cannot be presumed to rely reasonably on the integrity of the market price of a security that is traded in such a market.
*Freeman,* 915 F.2d at 198 (internal citations omitted).

In *Freeman,* the Sixth Circuit considered the issue of whether a primary market for newly issued tax-exempt municipal bonds is an efficient market. The *Freeman* court outlined five factors for courts to consider in determining whether a particular security is traded in an efficient market:
(1) a large weekly trading volume; (2) the existence of a significant number of reports by securities analysts; (3) the existence of market makers and arbitrageurs in the security; (4) the eligibility of the company to file an S-3 Registration Statement; and (5) a history of immediate movement of the stock price caused by unexpected corporate events or financial releases.

*7 *Id.* at 199 (citing *Cammer v. Bloom,* 711 F.Supp. 1264, 1286-87 (D.N.J.1989)). The Sixth Circuit noted further that "it appears that securities traded in national secondary markets such as the New York Stock Exchange ... are well suited for application of the fraud on the market theory. The high level of trading activity ensures that information from many sources is disseminated into the marketplace and consequently is reflected in the market price." *Freeman,* 915 F.2d at 199.

Considering these five factors, this court submits that the market in which Accredo stock traded during the class period was efficient. First, Accredo's stock was traded on the NASDAQ stock exchange during the entire class period. Pl.'s Reply at 2. During this period, Accredo had more than 47 million shares of common stock issued and outstanding. Pl.'s Mem. at 8; Nettesheim Decl. ¶ 16. The weekly trading volume of Accredo common stock was 5.2 million shares, representing 11% of shares outstanding.[FN3] Pl.'s Mem. at 16; Nettesheim Decl. ¶ 16. Second, the

Slip Copy
Slip Copy, 2006 WL 1716910 (W.D.Tenn.)
(Cite as: Slip Copy)

Page 6

company was followed actively by securities analysts at major brokerage firms, including A.G. Edwards & Sons, Credit Suisse First Boston Corporation, JP Morgan Americas, SunTrust Robinson Humphrey Capital Markets, Morgan Keegan & Compnay, Raymond James & Associates, Smith Barney Citigroup, and UBS Warburg. Pl.'s Mem. at 16; Nettesheim Decl. ¶ 20. Third, the number of active market makers trading Accredo's stock averaged 37 during the class period, more than double the average number of market maker positions per security during this span. Nettesheim Decl. ¶ 23. The court submits that this number strongly supports a finding of market efficiency. See Lehocky, 220 F.R.D. at 509 (finding that 20-25 makers, of whom four to five were active in stock at issue, is "seemingly neutral, if not tipping towards a finding of market efficiency"); Castillo, 206 F.R.D. at 470 (finding number sufficient where the number of market makers willing to trade in stock at issue exceeded both the minimum threshold for listing on the NASDAQ system and the average number of market makers for other securities listed on NASDAQ); Cammer, 711 F.Supp. at 1283 n. 30 (finding this factor sufficient where stock at issue had eleven market makers). Fourth, Accredo filed a Form S-3 Registration statement in January, 2003.[FN4] Nettesheim Decl. ¶ 25.

FN3. Courts have found that there is a "substantial presumption of an efficient market if the securities' average weekly trading volume is 1% or more of the total outstanding shares and an even greater presumption of market efficiency if the percentage is 2%. Lehocky, 220 F.R.D. at 508; see also Krogman v. Sterritt, 202 F.R.D. 467, 474 (N.D.Tex.2001); Cammer, 711 F.Supp. at 1277.

FN4. An S-3 Statement is an abbreviated disclosure form that can only be used by "corporations whose stocks are actively traded and widely followed." Castillo, 206 F.R.D. at 470 n. 3 (quoting O'Neil v. Appel, 165 F.R.D. 479, 502 (W.D.Mich.1995)). A company's ability to file an S-3 Registration Statement is "an important factor" because "eligibility to file the S-3 form is predicated upon the SEC's belief that the market for the company's stock already operates efficiently and that further disclosure is unnecessary, as the market price has already accounted for relevant information." O'Neil, 165 F.R.D. at 502. "Only corporations whose stock is actively traded and widely followed are allowed to use Form S-3." Lehocky, 220 F.R.D. at 509.

As to the fifth factor, plaintiffs offer the declaration of its expert, Jane Nettesheim, who opines that "material new information resulted in an immediate response in Accredo's stock price." Nettesheim Decl. ¶ 28. Nettesheim describes one example: On an April 8, 2003 conference call, Accredo's Chief Financial Officer declared that approximately $60 million of its net receivables were still outstanding as of December 31, 2002. Id. at ¶ 27. Accredo thereafter lowered its 2003 earnings estimates $.13 per share and its revenue estimates from $1.45 billion to $1.37 billion. Id. Market analysts responded by downgrading their rating for Accredo, and Accredo's stock price dropped 43.7%. Id.

*8 Based on the entire record, the court submits that all of the Freeman factors support plaintiffs' claim that Accredo's stock was traded in an efficient market.

Moreover, based on this court's research, the overwhelming case authority holds that securities listed on the NASDAQ trade in an efficient market. See, e.g., In re Ravisent Techs., Inc. Sec. Litig., No. 00-1014, 2005 U.S. Dist. LEXIS 6680 (E.D. Pa. April 19, 2005) (unpublished) ("Plaintiffs are entitled to a presumption of reliance under a 'fraud on the market' theory because during the class period, Ravisent common stock was listed on NASDAQ, a highly efficient market, had a trading volume in the range of hundreds of thousand of shares per day, and was required to file periodic public reports with the SEC."); In re Initial Pub. Offering Sec. Litig., 227 F.R.D. 65, 107 n. 324 (S.D.N.Y.2004) ("Federal courts have repeatedly held that a listing on NASDAQ or a similar national market is a good indicator of efficiency."); Bovee v. Coopers & Lybrand, 216 F.R.D. 596, 606-607 (S.D.Ohio 2003) ("Courts and commentators have noted that certain markets, such as the NYSE, are particularly efficient.... Because [the stock] was traded on the NYSE during the class period, the Court is satisfied that plaintiffs have established, for purposes of the motion to certify, that the fraud on the market theory will be available to them."); McNamara v. Bre-X Minerals, Ltd., No. 97-159, 2003 U.S. Dist. LEXIS 25641, at *70 (E.D.Tex. Mar. 31, 2003) (unpublished) ("The Court concludes that Plaintiffs have established that [the stock's] shares traded on an efficient NASDAQ market, and are entitled to the presumptions deriving from the fraud-on-the-market

Case 1:04-cv-11380-WGY   Document 146   Filed 02/02/2007   Page 8 of 10

Slip Copy
Slip Copy, 2006 WL 1716910 (W.D.Tenn.)
(Cite as: Slip Copy)

Page 7

doctrine."); *Levine v. SkyMall, Inc.*, No. 99-166, 2001 U.S. Dist. LEXIS 24705, at *13-14 (D.Ariz. May 24, 2001) (unpublished) ("Although not dispositive, the fact that SkyMall stock is traded on the NASDAQ stock market's National Market System also contributes to finding that the market is efficient."); *Stevelman v. Alias Research Inc.*, No. 91-682, 2000 U.S. Dist. LEXIS 9115, at *12-13 (D. Conn. June 22, 2000) (unpublished) ("The rebuttable presumption created by this so-called fraud-on-the-market theory presupposes that in an efficient capital market like NASDAQ, all information about a publicly-traded company such as Alias is accurately reflected in the stock's trading price."); *Berti v. VideoLan Techs.*, No. 97-296, 1998 U.S. Dist. LEXIS 18066, at *7-8 n. 4 (W.D. Ky. June 10, 1998) (unpublished) ("The Court takes judicial notice of the fact that the NASDAQ is an efficient stock market, permitting the assumption that all public information is reflected in the price of stocks traded on that exchange."); *In re Tricord Sys. Sec. Litig.*, No. 94-746, 1996 U.S. Dist. LEXIS 20943, at *22 (D. Minn. April 5, 1996) (unpublished) ("Here, Tricord stock was traded on the NASDAQ exchange-a nationwide, developed, and open market, from which 'efficiency' can easily be inferred."); <u>Deutschman v. Beneficial Corp., 132 F.R.D. 359, 368 (D.Del.1990)</u> ("[A] well-developed and impersonal market, such as the New York or Pacific stock exchanges, will instantaneously incorporate all publicly available information about a given security into the market price of that security.").

*9 Accredo contends that plaintiffs have not established that the market in which Accredo stock traded during the class period was efficient. First, Accredo argues that Nettesheim's analysis of a single episode in which the market reacted to news regarding Accredo's financial health is insufficient proof of market efficiency. Accredo points to the Fourth Circuit's decision in *Gariety v. Grant Thornton, LLP,* in which the court concluded that a single example of a stock price dropping in response to bad news, *standing alone*, did not provide adequate evidence that the stock traded in an efficient market. *Gariety v. Grant Thornton, LLP, 368 F.3d 356, 368 (4th Cir.2004)*(emphasis added). Plaintiffs in this case, however, have offered far more evidence of market efficiency than the plaintiffs in *Gariety*. In *Gariety,* the stock at issue was unlisted for half of the class period, and thereafter listed only in the "Pink Sheets" and the NASDAQ OTC Bulletin Board. *Id.* at 364. During the class period, there were only 244 trades, with an average of 2.5 trades per day. *Id.* In contrast, Accredo was listed on the NASDAQ for the entire class period, and the average weekly reported trading volume for Accredo stock was 5.2 million shares. Nettesheim Decl. ¶ 16. Plaintiffs, therefore, have provided much more than a single indicator of market efficiency.

In further support of its argument, Accredo offers the declaration of its expert, Professor Meir Statman. Statman performed a "cause-and-effect" analysis of Accredo's stock for all trading days in 2002 and 2003, and concluded that "Accredo's stock did not trade in an efficient market during 2002 and 2003." Statman Decl. at 3. Specifically, Statman contends that the market for Accredo stock was inefficient because there were "days with significant changes in the price of Accredo's stock in the absence of news, days with significant changes in the price of Accredo's stock when the news is neutral, and days with positive news but declines in the price of Accredo's stock and overreaction of the price of Accredo's stock to news." Statman Decl. at 14. The court submits, however, that Statman's opinion provides an insufficient basis for this court to conclude that the market for Accredo stock was inefficient.

First, the standard by which Statman measures the efficiency of the Accredo market is more demanding than is required for purposes of class certification. Statman defines the term "efficient market" as follows: "The market for a stock is 'efficient' when the price of a stock reflects its fundamental value. The fundamental value of a stock ... is the present value of logically expected cash flows, such as dividends, discounted by a rate that reflects the risk of these cash flows." Statman Decl. at 3. Accredo, however, in its brief and at oral argument could not cite any case that has accepted this fundamental value analysis for market efficiency.

To the contrary, the few cases that have addressed this issue have squarely rejected this fundamental value approach. See <u>In re PolyMedica Corp. Sec. Litig., 432 F.3d 1, 14 (1st Cir.2005)</u>; <u>In re Xcelera.com Sec. Litig., 430 F.3d 503, 510 (1st Cir.2005)</u>; <u>In re Verifone Sec. Litig., 784 F.Supp. 1471, 1479 n. 7 (N.D.Cal.1992)</u> ("[T]he fraud-on-the-market theory does not require proof that the market correctly reflects some 'fundamental value' of the security. To apply the fraud-on-the-market theory, it is sufficient that the market for a security be 'efficient' only in the sense that market prices reflect the available information about the security."). In *In re Xcelera.com,* the First Circuit rejected the argument that a market is only efficient when the price of a stock reflects its fundamental value. The

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 1716910 (W.D.Tenn.)
(Cite as: Slip Copy)

Page 8

court opined that *Basic v. Levinson* only requires a showing that the relevant market is "informationally efficient," concluding that "an efficient market is one in which the market price of the stock fully reflects all publicly available information." Thus, the availability of the fraud on the market presumption of reliance "does not depend on the accuracy of the market and whether it 'mirrors the best possible estimates, in light of all available information, of the actual economic values of securities in terms of their expected risks and returns.'" *In re Xcelera.com*, 430 F.3d at 510 (quoting *In re PolyMedica*, 432 F.3d at 15)).[FN5]

> FN5. The First Circuit explained the difference between the two competing standards of market efficiency as follows: informational efficiency focuses on "whether market prices respond rapidly to new information, such that prices impound all publicly available information...." *In re Xcelera.com Sec. Litig.*, 430 F.3d at 508. Fundamental value efficiency, however, requires that in an efficient market "stock prices rapidly *and accurately* reflect all publicly available information." *Id.* (emphasis added).

*10 The court observed that the "informational efficiency" definition is the prevailing meaning of "efficient market" among most circuits. See *In re PolyMedica Corp. Sec. Litig.*, 432 F.3d at 11-13. Moreover, as noted in *In re PolyMedica*, the Sixth Circuit applies a similar description of market efficiency. See *Levinson v. Basic, Inc.*, 786 F.2d 741, 750 (6th Cir.1986) (stating that "the fraud on the market theory is based on two assumptions: first, that in an efficient market the price of stock *will reflect all information available to the public* ... and, second, that an individual relies on the integrity of the market price when dealing in that stock") (emphasis added); *In re PolyMedica*, 432 F.3d at 12; see also *Freeman*, 915 F.2d at 199 (observing that "[a]n efficient market is one which rapidly reflects new information in price").

The distinction between informational efficiency and fundamental value efficiency is important, as "[d]etermining whether a market is fundamental value efficient is a much more technical inquiry than determining informational efficiency." *In re PolyMedica*, 432 F.3d at 15. As fundamental value efficiency is generally a more comprehensive concept, "a market can be information efficient without also being fundamental value efficient." *Id.* at 15-16. Thus, Statman's opinion that the market for Accredo was not fundamental value efficient-even if accepted as true by the court-does not in and of itself necessarily mean that the market was informationally inefficient.

Moreover, even assuming, *arguendo,* that the court accepts Statman's opinion that there was no cause and effect relationship between news of Accredo's financial condition and its stock price, the court submits that this alone would not negate the efficiency of the market. In order for the court to conclude that a market is efficient, "it is not necessary that a stock satisfy all five factors." *Simpson v. Specialty Retail Concepts, Inc.*, 823 F.Supp. 353, 355 (M.D.N.C.1993); see also *Lehocky*, 220 F.R.D. at 509; *Cammer*, 711 F.Supp. at 1287. Rather than apply the factors as a checklist, they are to be used as an analytic tool by the court to assist in its market efficiency determination. *Unger v. Patterson*, 401 F.3d 316, 325 (5th Cir.2005). Here, as discussed above, Accredo's stock was traded in a national security market that is widely regard as efficient, see, e.g., *In re Ravisent Techs.*, 2005 U.S. Dist. LEXIS 6680, at *19 (finding plaintiff entitled to presumption of reliance because, inter alia, "stock was listed on NASDAQ, a highly efficient market"); had a total trading volume of 221.2 million shares during the class period; and was the subject of more than 200 reports published by market analysts during the class period. Nettesheim Decl. ¶¶ 17, 20 n. 14. In addition, Accredo was permitted to file a Form S-3 with the SEC during the class period. *Id.* at ¶ 25. Moreover, at the class certification stage, the question is whether common questions of fact "warrant [ ] certification of the proposed class, not whether the evidence will ultimately be persuasive; a district court should therefore refrain from 'weighing conflicting expert evidence or engaging in 'statistical dueling' of experts.'" *Fogarazzo v. Lehman Bros., Inc.*, No. 03-5194, 2005 U.S. Dist. LEXIS 15570, at *38 (S.D.N.Y. July 27, 2005) (unpublished) (quoting *Wal-Mart Stores, Inc. v. Visa USA Inc.*, 280 F.3d 124, 135 (2d Cir.2001)). The court submits that, for purposes of class certification, there is sufficient evidence to support a finding that the market for Accredo stock was efficient during the class period.

*11 Finally, the court notes that the presumption of reliance under the fraud on the market theory may be rebutted at trial. *Basic, Inc.*, 485 U.S. 224, 248, 108 S.Ct. 978, 99 L.Ed.2d 194 ("Any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or

his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance."); *In re PolyMedica*, 432 F.3d at 17 ("It is important to remember that the application of the fraud-on-the-market presumption only establishes just that-a presumption of reliance. That reliance can be rebutted at trial."); *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 415 (finding the presumption "is rebuttable, and where the facts properly considered by the district court reflect that the information in question did not affect the price of the stock then the district court may properly deny fraud-on-the-market based recovery"); *Lehocky*, 220 F.R.D. at 505 n. 16 (stating that "at [the class-certification] stage of the proceedings, the Court need only inquire whether the stock traded in an efficient market and not examine the merits of the case.... Thus, the Court will not address whether Defendants can rebut the presumption of reliance"); *Cammer*, 711 F.Supp. at 1290 (stating that "if it were concluded after a hearing [that] the market appeared efficient, and [that] plaintiffs could proceed under the rebuttable presumption, [the defendant] would be entitled to prove to a jury that the market was inefficient, thereby rebutting the presumption"). However, for purposes of this motion for class certification, the court submits that plaintiffs may avail themselves to the presumption of reliance, and thus submits that questions of law or fact common to the members of the class predominate over any questions affecting individual members.

### 2. Superior Method

In addition to its predominance requirement, Federal Rule of Civil Procedure 23(b)(3) requires that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). "It is well-recognized that class actions are a particularly appropriate means for resolving securities fraud actions." *Bovee*, 216 F.R.D. at 607. Furthermore, Accredo does not dispute that a class action is the superior method of obtaining an efficient disposition of these claims. As the proposed class potentially involves thousands of investors from across the country, and the legal claims are limited to whether defendants committed securities fraud violations, the court submits that a class action is the most fair and efficient manner to resolve this dispute.

### III. RECOMMENDATION

For the reasons above, the court recommends that plaintiffs' Motion for Class Certification be GRANTED. The court further recommends that Lead Plaintiffs LSERS and Debra Swiman be certified as class representatives. The court further recommends that the law firms of Bernstein, Litowitz, Berger & Grossmann LLP and Lerach, Coughlin, Stoia, Geller, Rudman & Robbins LLP be appointed Co-Lead Class Counsel. The court further recommends that the law firm of Glassman, Edwards, Wade & Wyatt, P.C. be named Liason Class Counsel.

*12 Respectfully Submitted.

W.D.Tenn.,2006.
In re Accredo Health, Inc. Securities Litigation
Slip Copy, 2006 WL 1716910 (W.D.Tenn.)

Briefs and Other Related Documents (Back to top)

• 2:03cv02216 (Docket) (Apr. 8, 2003)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.