# Unpublished Authority Part 3 or 3

LEXSEE 1996 U.S. DIST. LEXIS 20943


Caution
As of: Feb 02, 2007

In re Tricord Systems, Inc., Securities Litigation

Civil No. 3-94-746

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA,
THIRD DIVISION

*1996 U.S. Dist. LEXIS 20943*

**April 5, 1996, Decided
April 5, 1996, FILED**

**DISPOSITION:** [*1] Plaintiffs' Motion for Class Certification (Doc. No. 22) GRANTED IN PART AND DENIED IN PART. Defendants' Motion for Judgment on the Pleadings or in the Alternative to Dismiss (Doc. No. 25) DENIED in part and GRANTED in part.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff shareholders filed a motion for class certification, pursuant to *Fed. R. Civ. P. 23(b)(3)*. Defendant corporation and defendant individuals opposed the motion for certification and filed a motion for judgment on the pleadings under *Fed. R. Civ. P. 12(c)* or, alternatively, to dismiss.

**OVERVIEW:** Shareholders filed suit pursuant to the Securities and Exchange Act of 1934 § 10(b), codified at *15 U.S.C.S. § 78j*, and *17 C.F.R. § 240.10b-5*, alleging the price at which they bought stock was artificially inflated during a certain period because of materially false and misleading statements made by the corporation and individuals. Subsequently, the shareholders sought to certify a class consisting of all individuals and entities who purchased the common stock of the corporation from October 20, 1993 through July 1, 1994. The corporation and individuals opposed certification and contended they were entitled to judgment on the pleadings under *Fed. R. Civ. P. 12(c)*, or, in the alternative, dismissal of the complaint for failure to plead fraud with particularity under *Fed. R. Civ. P. 9(b)*. The court conditionally ordered certification of a class and shortened the class period because the shareholders pleaded fraud with sufficient particularity for the period from April 20, 1994, to July 1, 1994. In addition, the court granted the motion for judgment on the pleadings as to the allegations of primary violations of *17 C.F.R. § 240.10b-5* by certain individuals.

**OUTCOME:** The motion for class certification was granted conditionally. The motion for judgment on the pleadings was denied except to the extent it concerned violations alleged in the first count of the complaint by certain individuals.

**LexisNexis(R) Headnotes**

*Civil Procedure > Class Actions > Certification
Civil Procedure > Class Actions > Prerequisites > General Overview*
[HN1] A court must make a decision regarding class certification as soon as practicable after the commencement of an action brought as a class action. *Fed. R. Civ. P. 23(c)(1)*.

*Civil Procedure > Parties > Joinder > General Overview
Civil Procedure > Class Actions > Certification
Civil Procedure > Class Actions > Class Members > General Overview*
[HN2] *Fed. R. Civ. P. 23(a)* provides one or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous

1996 U.S. Dist. LEXIS 20943, *

that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*Civil Procedure > Class Actions > Class Members > General Overview*
*Civil Procedure > Class Actions > Prerequisites > General Overview*
[HN3] *Fed. R. Civ. P. 23(b)(3)* allows a class action to be maintained if the prerequisites contained in R. 23(a) are satisfied, and the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. In making the R. 23(b)(3) findings, the court is directed to consider (1) the interest of potential class members in individually controlling their own actions, (2) the extent and nature of litigation already commenced in the matter, (3) the desirability of concentrating the litigation of the claims in the particular forum, and (4) the difficulties likely to be encountered in the management of a class action. *Fed. R. Civ. P. 23(b)(3)*.

*Civil Procedure > Class Actions > Prerequisites > Commonality*
*Civil Procedure > Class Actions > Prerequisites > Numerosity*
*Civil Procedure > Class Actions > Prerequisites > Typicality*
[HN4] There are six requirements which plaintiffs seeking class certification must satisfy numerosity, commonality, typicality, adequacy of representation, predominance, and superiority. These factors are construed liberally.

*Civil Procedure > Class Actions > Prerequisites > Numerosity*
[HN5] Where joinder is impracticable, the numerosity requirement of *Fed. R. Civ. P. 23(a)(1)* is satisfied.

*Civil Procedure > Class Actions > Prerequisites > General Overview*
[HN6] Typicality exists when the claims of the named plaintiffs emanate from the same events or are based on the same legal theory as the claims of the other class members. Each representative's claim must be sufficiently similar to those of the class to permit a court to conclude the representative will adequately protect class interests and there are no antagonistic interests between the representatives and the class.

*Civil Procedure > Class Actions > Certification*
*Civil Procedure > Class Actions > Judicial Discretion*
[HN7] *Fed. R. Civ. P. 23(c)(1)* provides an order certifying a class may be conditional, and may be altered or amended before the decision on the merits.

*Civil Procedure > Pretrial Judgments > Judgment on the Pleadings*
*Securities Law > Liability > Securities Act of 1933 Actions > Civil Liability > General Overview*
[HN8] *17 C.F.R. § 240.10b-5* makes it unlawful to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

*Civil Procedure > Pretrial Judgments > Judgment on the Pleadings*
[HN9] *Fed. R. Civ. P. 12(c)* provides, after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If matters outside the pleadings are considered, with some exceptions, the motion shall be treated as one for summary judgment under R. 56.

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Fraud Claims*
[HN10] *Fed. R. Civ. P. 9(b)* provides that in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > General Overview*
[HN11] Circumstances constituting fraud that must be pled with particularity include the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was being obtained or given up thereby.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > General Overview*
*Civil Procedure > Pretrial Judgments > Judgment on the Pleadings*

[HN12] A motion for judgment on the pleadings is decided under the same standard as a motion to dismiss under *Fed. R. Civ. P. 12(b)(6)*. On a motion to dismiss, the pleadings are construed in the light most favorable to the plaintiff, and the allegations in the complaint are taken as true. In addition, the court must resolve any ambiguities concerning the sufficiency of the claims in favor of the plaintiffs, and give them the benefit of every reasonable inference drawn from the well-pleaded facts and allegations in the complaint. The court may only dismiss counts of the complaint if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.

*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Express Liabilities > Misleading Statements > General Overview*
*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Elements of Proof > Materiality > Predictions of Future Performance*
*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Elements of Proof > Materiality > Statements of Opinion*
[HN13] Misrepresentations and omissions are actionable under 17 C.F.R. § 240.10(b)-5; blatant lies are not required. A plaintiff must offer provable facts in support of its assertion that the representation was fraudulent, and may not rely on soft or puffing statements lacking materiality.

*Environmental Law > Litigation & Administrative Proceedings > Toxic Torts*
*Securities Law > Liability > Disclosures > Bespeaks Caution Doctrine*
*Securities Law > Liability > Securities Act of 1933 Actions > Civil Liability > Fraudulent Interstate Transactions > General Overview*
[HN14] The so-called "bespeaks caution" doctrine posits that when a company's public statements about its future are qualified and accompanied by sufficient cautionary language, the statements are usually not actionable as securities fraud.

*Securities Law > Liability > Disclosures > Bespeaks Caution Doctrine*
*Securities Law > Liability > Securities Act of 1933 Actions > Civil Liability > Fraudulent Interstate Transactions > General Overview*
[HN15] The bespeaks caution doctrine is not triggered by any use of cautionary language. The language must relate directly to that on which investors claim to have relied.

*Securities Law > Liability > Securities Act of 1933 Actions > Civil Liability > Fraudulent Interstate Transactions > General Overview*
*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Elements of Proof > Scienter > Recklessness*
[HN16] Although scienter need not be alleged with great specificity, a complaint must adduce specific facts which give rise to a strong inference of fraudulent intent. A finding of scienter may be premised on reckless disregard for the truth.

*Securities Law > Liability > Securities Act of 1933 Actions > Civil Liability > Fraudulent Interstate Transactions > General Overview*
[HN17] Absent direct evidence of scienter, there are two methods by which plaintiffs may adequately allege its existence. Plaintiffs may plead scienter by alleging facts establishing a motive to commit fraud and an opportunity to do so, or alleging facts constituting circumstantial evidence of either reckless or conscious misbehavior.

*Securities Law > Liability > Secondary Liability > Controlling Persons > General Overview*
[HN18] A control-person relationship exists whenever the alleged control person actually exercised control over the general operations of the primary violator and the alleged control person possessed but did not necessarily exercise the power to determine the specific acts or omissions upon which the underlying violation is predicated. The control person doctrine requires only some indirect means of discipline or influence short of actual direction to hold a controlling person liable.

*Criminal Law & Procedure > Criminal Offenses > Miscellaneous Offenses > Abuse of Public Office > Illegal Gratuities > Elements*
*Securities Law > Liability > Secondary Liability > Controlling Persons > General Overview*
[HN19] Where corporate officers are charged with the day-to-day operations of a public corporation, it is presumed that they have the power to control or influence particular transactions and other instances of corporate behavior.

**COUNSEL:** For PETER ROEBEL, plaintiff: Robert Arthur Minish, Popham Haik Schnobrich & Kaufman, Mpls, MN. Richard A Lockridge, Lockridge Grindal

Nauen & Holstein, Mpls, MN. Michael J Freed, Much Shelist Freed Denenberg Ament & Eiger, Chicago, IL. Charles J Piven, Piven Law Office, Baltimore, MD. Ann D White, Mager Liebenberg & White, Philadephia, PA. For RAJOO SHARMA, on behalf of themselves and all others similarly situated, plaintiff: Robert Arthur Minish, (See above). For JOHN J DELUCA, plaintiff: Samuel D Heins, Stacey L Mills, Heins Mills & Olson, Mpls, MN. Steven J Toll, Cohen Milstein Hausfeld & Toll, Seattle, WA. For GEORGE W BIRSIC, plaintiff: Samuel D Heins, (See above), Stacey L Mills, (See above). Steven J Toll, (See above). For SCOTT HANDLER ASSOCIATES, INC. DEFINED BENEFITS PENSION PLAN, plaintiff: Arnold Levin, Levin Fishbein Sedran & Berman, Philadelphia, PA. Samuel D Heins, (See above), Stacey L Mills, (See above). Lawrence G Metzger, Metzger Law Office, [*2] Philadelphia, PA. Harris J Sklar, Sklar Law Office, Philadelphia, OA. For CORNEL SPEIGLER, plaintiff: Arnold Levin, (See above). Samuel D Heins, (See above), Stacey L Mills, (See above). For ARTHUR SCHWARTZ, plaintiff: Mark Gardy, Abbey Gardy & Squitieri, New York, NY. Samuel D Heins, (See above), Stacey L Mills, (See above). For CHARLES DAHL, plaintiff: Jack L Chestnut, Karl L Cambronne, Sandra J McGoldrick-Kendall, Chestnut & Brooks, Mpls, MN. For MURRAY TOLL, plaintiff: Jack L Chestnut, (See above), Karl L Cambronne, (See above), Sandra J McGoldrick-Kendall, (See above). For MOHAN LAL, plaintiff: Jack L Chestnut, (See above), Karl L Cambronne, (See above), Sandra J McGoldrick-Kendall, (See above). For RICHARD THIELE, plaintiff: Jack L Chestnut, (See above), Karl L Cambronne, (See above). Jeffrey G Smith, Neil L Zola, Wolf Haldenstein Adler Freeman & Herz, New York, NY. Charles J Piven, (See above). For WILLIAM J. WILSON, plaintiff: Mark Reinhardt, Gavin S Wilkinson, Reinhardt & Anderson, St Paul, MN. Michael J Freed, (See above). For PAUL J WILSON, plaintiff: Mark Reinhardt, (See above), Gavin S Wilkinson, (See above). Michael J Freed, (See above). For LOIS FLOOD, plaintiff: Robert [*3] Arthur Minish, (See above). For MICHAEL F CAFFERTY, plaintiff: Marvin A Miller, Chertow & Miller, Chicago, IL. Moshe Balsam, Mark Levine. Samuel D Heins, (See above), Stacey L Mills, (See above). For SAMUEL SPRINGER, plaintiff: Marvin A Miller, (See above). Moshe Balsam, Mark Levine. Samuel D Heins, (See above), Stacey L Mills, (See above). For GARY SIEGEL, plaintiff: Marvin A Miller, (See above). Moshe Balsam, Mark Levine. Samuel D Heins, (See above), Stacey L Mills, (See above). For KOWIT INVESTMENT ASSOCIATES, plaintiff: Mark Reinhardt, (See above), Gavin S Wilkinson, (See above). Deborah R Gross. For THOMAS R WASMER, plaintiff: Richard A Lockridge, (See above), Gregg M Fishbein, Lockridge Grindal Nauen & Holstein, Mpls, MN. Mark Reinhardt, (See above), Gavin S Wilkinson, (See above).

For TRICORD SYSTEMS INC, defendant: Lowell E Sachnoff, Sarah R Wolff, Joel M Neuman, Arnold A Pagniucci, Sachnoff & Weaver, Chicago, IL. For JAMES D EDWARDS, defendant: Lowell E Sachnoff, (See above), Sarah R Wolff, (See above), Joel M Neuman, (See above), Arnold A Pagniucci, (See above). For GREGORY T BARNUM, defendant: Craig W Gagnon, Michael E Keyes, Peter R Bisio, Oppenheimer Wolff & Donnelly, [*4] Mpls, MN. Wendy J Wildung, Lawrence C Brown, Faegre & Benson, Mpls, MN. Lowell E Sachnoff, (See above), Sarah R Wolff, (See above), Joel M Neuman, (See above), Arnold A Pagniucci, (See above). Jodeen A Kozlak, Greene Espel, Mpls, MN. For JOHN H CRAWFORD, defendant: Craig W Gagnon, (See above), Michael E Keyes, (See above), Peter R Bisio, (See above). Wendy J Wildung, (See above), Lawrence C Brown, (See above). Jodeen A Kozlak, (See above). For JOHN P GUIDER, defendant: Craig W Gagnon, (See above), Michael E Keyes, (See above), Peter R Bisio, (See above). Wendy J Wildung, (See above), Lawrence C Brown, (See above). Jodeen A Kozlak, (See above).

For COOPERS & LYBRAND, movant: Robert R Weinstine, Laura A Pfeiffer, Winthrop & Weinstine, St Paul, MN.

**JUDGES:** RICHARD H. KYLE, United States District Judge

**OPINION BY:** RICHARD H. KYLE

**OPINION:**

**MEMORANDUM OPINION AND ORDER**

**Introduction**

In this securities fraud action brought pursuant to Section 10(b) of the Securities and Exchange Act of 1934, codified at *15 U.S.C. § 78j*, and Rule 10b-5 promulgated thereunder, two motions are before the Court: 1) Plaintiffs' Motion for Class Certification, pursuant to *Federal Rule of Civil Procedure 23(b)(3)*; [*5] and 2) Defendants' Motion for Judgment on the Pleadings or in the Alternative to Dismiss. Plaintiffs seek to certify a class consisting of all individuals and entities who purchased the common stock of Tricord Systems, Inc. ("Tricord") from October 20, 1993 through July 1, 1994. Defendants (Tricord and four individual directors and officers) oppose certification and contend that they are entitled to judgment on the pleadings under Rule 12(c), or, in the alternative, dismissal of the Amended Complaint for failure to plead fraud with particularity under Rule 9(b).

**Background**

Defendant Tricord is incorporated in Delaware and has its principal place of business in Plymouth, Minnesota. Am. Compl. P 14. Tricord manufactures computer network superservers, devices which control the flow of information through complex computer networks. Id. The Amended Complaint also names four individuals as Defendants: James D. Edwards, President, Chief Executive Officer, and a member of Tricord's Board of Directors; Gregory T. Barnum, Senior Vice-President of Finance and Administration, Chief Financial Officer, and Secretary of the Board; John H. Crawford, Senior Vice-President of Sales and Marketing; [*6] and John P. Guider, Senior Vice-President of Operations and Chief Technical Officer. Id. PP 15-18.

Plaintiffs seek to represent persons who purchased Tricord common stock on the NASDAQ market between October 20, 1993, and July 1, 1994. Id. P 1. Proposed class representatives are Beverly Deutsch ("Deutsch"), Gary Siegel ("Siegel"), and Donald Thiemann ("Thiemann"). Id. P 13.

Deutsch purchased shares of Tricord common stock at over $ 24 per share on January 21, 1994; she sought legal representation after the stock dropped to $ 5.125 per share on July 1, 1994. Id.; Bisio Aff., Ex. A (Deutsch Dep.), at 74-77. Siegel bought 400 shares of Tricord on February 2, 1994 at $ 22 per share, another 400 shares on March 22, 1994 at $ 14.50 per share, and 500 shares on April 21, 1994 at $ 13.25 per share, based on his broker's recommendations. Bisio Aff., Ex. B (Siegel Dep.), at 26-43. He later called a lawyer, as suggested by his broker. Id. at 50-53. Thiemann purchased 500 shares of stock on June 7, 1994, at a price of $ 13.50 per share; after the stock dropped, he sought legal representation on the advice of his broker. Bisio Aff., Ex. C (Thiemann Dep.), at 118-19, 140-44. [*7]

Plaintiffs allege that the price at which they bought stock was artificially inflated during this period because of materially false and misleading statements made by Defendants. Am. Compl. P 34. The misrepresentations affecting the stock price primarily consist of statements made by Defendants about Tricord's relationship with Sequent Computer Systems, Inc. ("Sequent"), another equipment manufacturer. n1

---

n1 In addition, after sales to Sequent dropped in 1994, the Amended Complaint charges that Defendants made grossly misleading statements when they claimed that the loss of revenues from Sequent would be made up by other sources. Id. P 83.

---

Sequent had agreed to purchase Tricord's products from 1993 to 1995, but only if Tricord continued to manufacture products of sufficient quality. Id. PP 40-41. In 1993, sales to Sequent accounted for nearly thirty percent of Tricord's revenues. Id. P 39. The Amended Complaint charges that, sometime during the class period, Sequent advised Tricord that it had been [*8] "experiencing significant quality and manufacturing problems with the products it was receiving from Tricord." Id. P 86. Further,

> Sequent was so overstocked with [Tricord] inventory that it discussed with Tricord the Company's taking back the product or helping Sequent unload the product. Tricord was aware that Sequent's inability to sell additional Tricord products had become so pronounced that Sequent fired or reassigned members of its sales force who were dedicated to selling Tricord products.

Id. P 88.

The Amended Complaint offers a chronology of allegedly fraudulent communications, the most pertinent of which will be summarized briefly here. On October 20, 1993, Tricord representatives conducted a conference call with securities analysts, in which they projected substantial growth in 1994, and emphasized the continued strength of Tricord's relationship with Sequent. Id. P 47. Plaintiffs allege that the analysts passed on this information to the public through various publications in late 1993 and early 1994, supported by Defendants' subsequent statements. Id. PP 48-53, 60-61. Also on this date, Tricord issued a press release showing vastly improved [*9] performance in the third quarter of 1993. Id. P 46. This is the commencement date of the proposed class period.

Tricord released its third quarter report on or about November 12, 1993, signed by Defendant Barnum. Id. P 49. Noting that sales to Sequent accounted for approximately 33.5% of Tricord's third quarter revenue, the report anticipated that Sequent would order significant numbers of Tricord's new superserver models. Id. P 50. The report also contained language warning that if the Tricord/Sequent relationship floundered, Tricord's ability to achieve its objectives would be reduced, "and its results of operations could be materially adversely affected." Id.

The Amended Complaint also documents comments by Defendant Edwards in the January 1994 edition of Corporate Report Minnesota, to the effect that the Se-

quent relationship was an "excellent distribution opportunity" and was "working very well." Id. P 53.

In a March 1, 1994, analyst's report, Defendant Barnum and "Company spokesmen" were reported as saying that Tricord's business remained strong and that the Sequent relationship was "fine" with no new positive or negative developments. Id. P 63. [*10]

On March 30, 1994, Tricord filed its year-end report with the Securities and Exchange Commission, noting that Sequent accounted for approximately 28.8% of its revenue in 1993, and observing that the termination of its relationship with Sequent and "key resellers" could have a material adverse impact on the company's financial performance. Id. PP 69-70.

Defendant Edwards conducted a telephone conference call on April 20, 1994 with securities analysts, during which he stated that Tricord anticipated revenues of $ 10 million to $ 12 million from Sequent in 1994, but emphasized that these figures were consistent with earlier estimates by Tricord, and consistent with Tricord's plan to diversify. n2 "Edwards further dismissed as 'incorrect' speculative thoughts' that Sequent revenue was 'way down' leading to the 'inaccurate speculation' that Tricord would not make its year-end street expectations," which were in the $ 120 million to $ 125 million range. Id. P 72. Edwards did not mention that Tricord had sold no servers to Sequent in the second quarter of 1994. Id. In the days following this conference call, analysts reported that Sequent revenues would be down, resulting from [*11] Tricord's desire to diversify (and not from Sequent's dissatisfaction with Tricord's products, as Plaintiffs allege); it was reported that the drop in Sequent revenue would be made up by virtue of new agreements with other equipment manufacturers. Id. PP 73-76.

---

n2 This prediction proved correct: Tricord received approximately $ 10.3 million from Sequent in 1994. Bisio Aff., Ex. E (Tricord 1994 Annual Report), at 11.

---

On May 14, 1994, Tricord filed its quarterly report, in which it noted that Sequent revenues would continue to decrease because of "slower than expected market acceptance of Windows NT [a software package used by Tricord's systems]." Id. P 77. The report noted, however, that Tricord reached an agreement with Sequent in April 1994 regarding the marketing and support of superservers utilizing the Windows NT software. It did not mention that Tricord had failed to make any sales to Sequent in the second quarter. Id.

Tricord announced on May 20, 1994, that its Board had authorized members [*12] of management to purchase up to 1 million shares of Tricord stock, as, according to Defendant Edwards, the lowered price of the stock made a buy back program attractive. Id. P 78. The Amended Complaint notes that, during the class period, the four individual Defendants sold over $ 5 million worth of Tricord stock. Id. P 90.

On July 1, 1994, Tricord announced that it was expecting 1994 revenues of $ 90 million, $ 30 million to $ 35 million below estimates. Id. P 81. "The primary reason given for the shortfall in revenues was that Tricord had not sold any servers to Sequent in the second quarter." Id. (emphasis in original). This announcement caused the stock price to drop 47.7% on that day, from $ 10.75 per share to $ 5.125 per share. Id. P 84. Plaintiffs contend that, since no other contracts were lost during this period, Tricord's reduction of earnings estimates demonstrate that Tricord had placed great reliance on its sales to Sequent. Id. P 83.

The gravamen of the Amended Complaint is that the relationship between Sequent and Tricord had been faltering during this period. Sequent had been experiencing quality problems with Tricord products, and had advised [*13] Tricord of this fact. Amended Compl. PP 86-89. Tricord did not sell any products to Sequent in the second quarter of 1994. Id. PP 72, 77, 81. Defendants adhered to unrealistic projections, even when they knew that Sequent revenues would be down. Plaintiffs allege that Tricord's stock price was artificially inflated based on these misrepresentations, causing them injury when they bought their stock.

Jurisdiction is proper under *28 U.S.C. § 1331*.

The Court will address Plaintiffs' Motion first; [HN1] a decision regarding class certification must be made "as soon as practicable after the commencement of an action brought as a class action." *Fed. R. Civ. P. 23(c)(1)*. In *Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974)*, the Supreme Court stated:

> We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. . . . The procedure is directly contrary to the command of subdivision (c)(1) that the court determine whether a suit denominated as a class action may be maintained as such "as [*14] soon as practicable after the commencement of [the] action."

*417 U.S. at 177-78, 94 S. Ct. at 2152-53.*

**Plaintiffs' Motion for Class Certification**

**I. Standards**

Plaintiffs seek an order of this Court certifying a class of all persons who purchased Tricord common stock from October 20, 1993 through July 1, 1994 and were damaged thereby. Plaintiffs seek certification under *Federal Rules of Civil Procedure 23(a)* and *23(b)(3)*. [HN2] Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

[HN3] Rule 23(b)(3) allows a class action to be maintained if the four prerequisites above are satisfied, and:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class [*15] action is superior to other available methods for the fair and efficient adjudication of the controversy.

In making the Rule 23(b)(3) findings, the Court is directed to consider: 1) the interest of potential class members in individually controlling their own actions; 2) the extent and nature of litigation already commenced in the matter; 3) the desirability of concentrating the litigation of the claims in the particular forum; and 4) the difficulties likely to be encountered in the management of a class action. *Fed. R. Civ. P. 23(b)(3)*.

Thus, [HN4] there are six requirements which Plaintiffs must satisfy, which may be conveniently labeled as: numerosity; commonality; typicality; adequacy of representation; predominance; and superiority. "In light of the importance of the class action device in securities fraud suits, these factors are to be construed liberally." *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 179 (2d Cir. 1990)*, cert. denied, *498 U.S. 1025, 111 S. Ct. 675, 112 L. Ed. 2d 667 (1991)*. The Court will address each element in turn.

**II. Numerosity**

Defendants concede that the numerosity requirement is satisfied, [*16] as the number of people buying Tricord common stock during this period will number in the thousands. See Defs.' Mem. in Opp'n to Pls.'Mot. for Class Cert. 10. [HN5] Where joinder is impracticable, the numerosity requirement of Rule 23(a)(1) is satisfied, as it is here. See, e.g., In re Endotronics, [1987-1988 Transfer Binder]*Fed. Sec. L. Rep. (CCH) P 93,664* (D. Minn. Jan. 28, 1988), at 98,045-46.

**III. Commonality**

Defendants also do not dispute that there exist questions of law or fact common to the class. Defs.' Mem. in Opp'n 10. It is apparent that Plaintiffs' fraud claims require application of the same federal law; it is equally apparent that several weighty issues of common fact exist, including: whether Defendants distributed misleading material information; the effect of that information on the price of Tricord stock; the intent of Defendants to deceive Plaintiffs and/or the market; and whether purchasers of Tricord stock sustained damages due to the conduct of Defendants. In re Scimed Sec. Litig., [1993-1994 Transfer Binder]*Fed. Sec. L. Rep. (CCH) P 98,080* (D. Minn. Sept. 29, 1993), at 98,678.

**IV. Typicality and Lack of Conflict**

Plaintiffs [*17] assert that the claims of their named representatives are typical of the claims of the class. *Fed. R. Civ. P. 23(a)(3)*. [HN6] Typicality exists when the claims of the named plaintiffs emanate from the same events or are based on the same legal theory as the claims of the other class members. *DeBoer v. Mellon Mortgage Co., 64 F.3d 1171, 1174-75 (8th Cir. 1995)*, pet. for cert. filed, *64 U.S.L.W. 3593* (Feb. 20, 1996). Each representative's claim must be sufficiently similar to those of the class to permit a court to conclude that: 1) the representative will adequately protect class interests; and 2) there are no antagonistic interests between the representatives and the class. *In re Potash Antitrust Litig., 159 F.R.D. 682, 690 (D. Minn. 1995)* (citing *In re Wirebound Boxes Antitrust Litig., 128 F.R.D. 268, 270 (D. Minn. 1989)*).

The Court's analysis must be based on an examination of the elements of a Rule 10b-5 securities fraud claim. In this Circuit, those elements are: 1) a misleading statement of material fact made by defendants or attributable to them; 2) scienter; 3) justifiable reliance by plaintiffs; 4) causation; and 5) damages. See *Harris v.*

*Union Elec. Co.*, 787 [*18] *F.2d 355, 361 (8th Cir.)*, cert. denied, *479 U.S. 823, 107 S. Ct. 94, 93 L. Ed. 2d 45 (1986)*. Defendants allege that damages, reliance, materiality of the misleading statements and proximate cause are not elements common to each class member's claim; thus, the proposed representatives' claims are not typical of those of the class, and the proposed representatives will not adequately protect the interests of the class.

### A. Conflicts Within the Proposed Class

Defendants point to two conflicts which allegedly make the named representatives atypical of the proposed class. First, Defendants visualize a conflict between the representatives, who held their Tricord stock during the entire class period (labeled "retention plaintiffs") and other members of the proposed class who sold their stock at some time during the class period (labeled "in/out plaintiffs"). Second, Defendants claim there exists a substantial conflict between the proposed representatives, who continue to hold their shares, and those class members who no longer own Tricord stock. n3

> n3 Antagonism between the representatives and other members of the proposed class may be just as easily addressed in conjunction with Rule 23(a)(4), in a discussion of whether the representatives will adequately protect the interests of the class. Since both parties address the issue in their debate over typicality, the Court will do so as well.

[*19]

### 1. Retention and In/Out Plaintiffs

With regard to the first conflict, Defendants emphasize that retention plaintiffs and in/out plaintiffs have different incentives in this litigation because their damages are calculated differently. Retention plaintiffs will seek to maximize the amount of price inflation that existed on the day they bought their stock; multiplying the number of shares owned by the amount of inflation will result in a simple calculation of damages. In/out plaintiffs, on the other hand, will seek to minimize the amount of price inflation on the day that they sold their stock, since their damages are reduced by the amount of price inflation existing on that day. Since the named representatives are all retention plaintiffs, Defendants contend that their claims are not typical of the class, and that they will be predisposed to ignore the interests of the in/out plaintiffs. Defendants also predict adverse effects for the other necessary elements of a class action, including the predominance of common issues and the superiority of the class action as an adjudicative device. Defendants' argument relies upon In re Seagate Technology II Securities [*20] *Litigation, 843 F. Supp. 1341, 1359-62 (N.D. Cal. 1994)*, which recognizes this tension in detail. See also *Ballan v. Upjohn Co., 159 F.R.D. 473, 482-85 (W.D. Mich. 1994)* (discussing Seagate II with approval).

Courts have consistently recognized that damages must be independently determined in securities fraud cases, so this factor does not favor certification. See generally 4 Herbert B. Newberg and Alba Conte, Newberg on Class Actions, § 22.32 at 22-137-140 (3d ed. 1992). However, the Court notes that while the damages suffered by the separate categories of Plaintiffs will differ, all investors who sold their shares before the close of the class period were injured. See *Nelsen v. Craig-Hallum, Inc., 659 F. Supp. 480, 489 (D. Minn. 1987)* (citing *Blackie v. Barrack, 524 F.2d 891 (9th Cir. 1975)*, cert. denied, *429 U.S. 816, 97 S. Ct. 57, 50 L. Ed. 2d 75 (1976))*.

The parties dispute whether the elements of reliance, materiality, and causation weigh in favor of or against certification. Plaintiffs' burden of proving reliance of Defendants' alleged misrepresentations has been lessened by the Supreme Court's adoption of the fraud-on-the-market theory in [*21] *Basic, Inc. v. Levinson, 485 U.S. 224, 108 S. Ct. 978, 99 L. Ed. 2d 194 (1988)*. A plurality of the Supreme Court accepted the proposition in Basic that misleading statements may in some cases be assumed to inflate the price of a stock, obviating the necessity of proving individual reliance on the misrepresentations. The fraud-on-the-market theory is premised upon the efficient capital market hypothesis, which posits that any material misrepresentation made by an issuer of securities will quickly and accurately be reflected in the market price of those securities in a market that processes information efficiently. *Seagate II, 843 F. Supp. at 1355*. An investor is additionally presumed to reasonably rely on the market price of that security, and since an investor can be presumed to have traded in a security based on its market price, the investor can be deemed to have relied on the misrepresentation itself. Id. n4 The adoption of the fraud-on-the-market theory makes reliance a common question, instead of an individual question. Id. at 1357-58; see also In re Scorpion Tech., Inc. Sec. Litig., [1994-1995 Transfer Binder]*Fed. Sec. L. Rep.* P 98,600 (N.D. [*22] Cal. Aug. 10, 1994). n5

> n4 For the fraud-on-the-market theory to apply, and for the presumption of reliance to attach, the market must be an "efficient" one. An "efficient" market incorporates into the price of the security all available information about the value of that security. See, e.g., *Freeman v. Laventhol & Horwath, 915 F.2d 193, 198 (6th Cir. 1990)*. Here, Tricord stock was traded on the NASDAQ

exchange--a nationwide, developed, and open market, from which "efficiency" can easily be inferred.

n5 Plaintiffs argue that any foray into reliance, materiality and causation issues would inevitably conclude with a discussion of the merits of their case. At the class certification stage, such a path is apparently forbidden by *Eisen, 417 U.S. at 177-78, 94 S. Ct. at 2152-53.* See also *Basic, Inc. v. Levinson, 485 U.S. at 249 n.29, 108 S. Ct. at 993 n.29.* However, at least some courts have recently asserted that the utilization of the fraud-on-the-market theory makes a preliminary inquiry into the merits necessary. See, e.g., *Seagate II, 843 F. Supp. at 1366-67.* In this case, it is primarily a discussion of applicable law, and not of this case's particular facts, which is necessary to an informed determination of whether to certify a class.

[*23]

The Seagate II court believes, however, that proving price inflation has become the "linchpin" of a Rule 10b-5 case, since the fraud-on-the-market theory allows the presumption that the misrepresentation inflated the market price. Since the retention and in/out plaintiffs will conflict over the crucial issue of the amount of price inflation, this conflict will implicate issues of materiality, reliance, and causation. The conflict, therefore, is "pervasive enough to threaten to preclude satisfaction of the adequacy of representation element," barring certification under this provision of the Federal Rules. See *Seagate II, 843 F. Supp. at 1358-59; O'Neil v. Appel, 165 F.R.D. 479, 1996 WL 88586 (W.D. Mich. Feb. 29, 1996)* (adopting reasoning of Seagate II). n6

n6 The Seagate II court's discussion of this conflict in the context of adequacy instead of typicality illuminates the interplay between these two factors.

This Court remains unpersuaded that this potential conflict relates in [*24] a meaningful way to any element other than damages. See, e.g., *Blackie, 524 F.2d at 909-10.* Notwithstanding the adoption of the fraud-on-the-market doctrine, "it is the existence and materiality of a misstatement or omission that is central, and from it, price inflation and reliance are presumed." In re Regal Communications Corp. Sec. Litig., [1995 Transfer Binder]*Fed. Sec. L. Rep. (CCH) P 98,871 at 93,234* (E.D. Pa. Sept. 25, 1995). As stated by the Regal Communications court:

So long as plaintiffs rely upon the same legal theory and their claims arise from the same course of conduct, the typicality requirement is satisfied. Potential conflicts regarding damages do not make a plaintiff's claims atypical or antagonistic to the rest of the class. Any differences in interests among class members in demonstrating the amount of price inflation on a given day are secondary to the predominant interests shared in proving the existence of materially misleading statements and omissions.

Id. n7

n7 Numerous other courts have rejected the proposition that the analysis in Seagate II warrants denial of class certification; many have done so largely because of the precedential force of Blackie v. Barrack. See, e.g., In re AST Research Sec. Litig., [1994-1995 Transfer Binder]*Fed. Sec. L. Rep. (CCH) P 98,466* (C.D. Cal. Nov. 8, 1994); Yamner v. Boich, [1994-1995 Transfer Binder]*Fed. Sec. L. Rep. (CCH) P 98,427* (N.D. Cal. Sept. 15, 1994); *Scorpion Technologies, Fed. Sec. L. Rep. P 98,600;* In re Proxima Corp. Sec. Litig., [1994-1995 Transfer Binder]*Fed. Sec. L. Rep. (CCH) P 98,236* (S.D. Cal. May 3, 1994); *Welling v. Alexy, 155 F.R.D. 654 (N.D. Cal. 1994).*

[*25]

The potential conflict over damages does not preclude certification here. In this situation, as many other courts have determined, "a plaintiff who has acquired and retained securities can thoroughly and adequately represent parties who purchased securities and then sold them, and vice versa." 4 Newberg on Class Actions, § 22.32 at 22-137-140; see also *In re Endotronics, Fed. Sec. L. Rep. P 93,664, at 98,048.*

**2. Plaintiffs and Members Who No Longer Own Stock**

Defendants advance a second conflict under the rubric of typicality--they claim that the proposed representatives' interests conflict with the interests of class members who no longer own Tricord stock. All three proposed representatives continue to hold Tricord shares. The Seagate II court noted that those who still own stock have divided loyalties, since they wish for recovery for

themselves, but they also wish to minimize the overall liability of the company. *Seagate II, 843 F. Supp. at 1362.* Yet no case cited by the parties or found by this Court has based a denial of class certification on this ground. Tellingly, in a later opinion in the Seagate II litigation, this possible conflict was found [*26] to be inadequate to deny certification. *In re Seagate Technology II, 156 F.R.D. 229, 231 (N.D. Cal. 1994);* see also *Ziemack v. Centel Corp., 164 F.R.D. 477, 479, 1995 WL 783045* at *6 (N.D. Ill. 1995)*, ("Further, the exclusion of equity holders from securities fraud suits would be an unwarranted back door method for virtually eliminating the private right of action under the securities laws."). This Court finds no significant conflict here. n8

n8 The concern expressed by Defendants that those who continue to hold equity interests in Tricord will work against those who have sold their stock arises from doubtful assumptions. The possibility of conflict is largely insubstantial, as an investor's stock holdings would have to be massive to allow his or her personal interest in recovery to be outweighed by his equity interest in the company. See, e.g., *Herbst v. International Tel. & Tel. Corp., 495 F.2d 1308, 1314-15 (2d Cir. 1974); In re Consumers Power Co. Sec. Litig., 105 F.R.D. 583, 604 (E.D. Mich. 1985).*

[*27]

**B. Similarity of Claims Based on Purchase Date**

Defendants then move on to challenge the particular circumstances surrounding Siegel's and Thiemann's purchases of Tricord stock, depicting them as atypical since they each bought some Tricord shares after April 20, 1994, the date when Defendant Edwards accurately estimated that Sequent sales for 1994 would lie in the $ 10 million to $ 12 million range. Defendants claim that Siegel and Thiemann will have to argue that statements other than those concerning the relationship with Sequent caused at least part of the price inflation. In fact, it is only Siegel and Thiemann who are proper class representatives, based on the Court's finding that the class period properly begins on April 20, 1994. See infra. Deutsch purchased her shares before what the Court has determined is the relevant period (April 20, 1994, to July 1, 1994). Am. Compl. P 13. In any case, "a strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences." *Potash, 159 F.R.D. at 690* (citing *Appleyard v. Wallace, 754 F.2d 955, 958 (11th Cir. 1985)).*

**C. Reliance on a Broker**

Finally, Defendants claim [*28] that Thiemann is atypical because he relied on non-public information in purchasing his shares--it is contended that Thiemann's heavy reliance on information given him by his broker disqualifies Thiemann as a class representative. In conjunction with the fraud-on-the-market theory, an investor is presumed to rely upon the market price of the security. Reliance on a broker, however, does not defeat typicality under the circumstances presented to the Court. See, e.g., Regal Communications, P 98,871 at 93,232 (and cases cited therein). Defendants, in arguing that the presumption of reliance on the market price of a security should not be applied to Thiemann, must show that Thiemann knew of the falsity of the public statements prior to buying his stock, or that he would have bought the stock even had he known of the artificially high price. See, e.g., In re SciMed, P 98,080, at 98,679. Defendants have not done so. Indeed, Thiemann did not rely solely on his broker but on a number of reports from analysts and information made public by Tricord. Cambronne Aff., Ex. E (Thiemann Dep.), at 50-69. Naming Thiemann a class representative on this basis is not improper.

**V. Adequacy [*29] of Representation**

In order to satisfy the requirement that they will "fairly and adequately protect the interests of the class," Plaintiffs must show that: 1) the representatives and their attorneys are able and willing to prosecute the action competently and vigorously; and 2) each representative's interests are sufficiently similar to those of the class that it is unlikely that the goals of the representatives and the goals of the class will diverge. *Potash, 159 F.R.D. at 692* (citations omitted). "Adequate representation turns upon the qualifications and experience of plaintiffs' counsel to conduct the litigation and whether the plaintiffs have any interest antagonistic to the class." *In re Catfish Antitrust Litig., 826 F. Supp. 1019, 1037 (N.D. Miss. 1993).* Due to the technical nature of securities class actions, it is the skill and experience of plaintiffs' counsel which becomes the primary question.

Defendants do not attack the qualifications of Plaintiffs' counsel here, but instead opt to highlight the proposed representatives' deficiencies of knowledge about the litigation. They emphasize that Deutsch and Siegel have done nothing to monitor the actions of their [*30] attorneys, and plan to allow their lawyers to determine the scope of their involvement in the litigation, that all proposed representatives have demonstrated their lack of involvement by not contacting numerous lawyers, and that all proposed representatives are unaware of certain events in the litigation. See Defs.' Mem. in Opp'n 33-34. Of course, a representative should not allow class counsel unfettered discretion. See, e.g., *Kassover v. Computer*

*Depot, Inc.*, 691 F. Supp. 1205, 1214 (D. Minn. 1987), aff'd, 902 F.2d 1571 (8th Cir. 1990).

Yet in a securities fraud action, class representatives are expected to rely heavily on the advice of their counsel, and this Court will not require the named representatives to possess extensive knowledge of securities law. Certainly, the named representatives could know more about the case. But, given that they are represented by competent counsel, "they need only have a basic understanding of the outline of the case, at least minimal interest in the action and ability to assist in litigation decisions." *SciMed*, P 98,080, at 98,679 (citing *Craig-Hallum*, 659 F. Supp. at 488).

The proposed class representatives here were not [*31] solicited by counsel, nor has their character been questioned. After a careful review of the deposition transcripts submitted by both parties, the Court has concluded that all three named representatives understand the basis for the action and the allegations in the Complaint, that they have prepared themselves for and are familiar with the duties of class representatives, and that they will be able to maintain the interests of the class. See Cambronne Aff., Ex. E (Thiemann Dep.), at 8 (familiar with Complaint), 63-68 (familiar with allegations of stock sell-offs by Tricord officials), 149 (familiar with basic claims, but admitting no personal knowledge of numerous allegations in Complaint), 150-53 (basic understanding of nature of class action lawsuit), 158-163 (basic understanding of rights and duties of class representative); id., Ex. F (Siegel Dep.), at 5 (reviewed Complaint), 56 (numerous telephone conversations with counsel), 61-64 (basic understanding of allegations in Complaint), 69 (same), 81-82 (minimal understanding of class representative duties), 84 (has reviewed documents and consulted with counsel); id., Ex. G (Deutsch Dep.), at 5 (reviewed Complaint), 37-38 [*32] (same), 40-43 (basic understanding of claims), 53-57 (basic understandings of duties of class representative).

Defendants' objections to the representatives on the grounds of divergent goals and viewpoints have been addressed in the previous section. They do not bar certification, and the Court is satisfied that the representatives will adequately protect the interests of the class.

## VI. Predominance

In determining whether common questions predominate over individual questions for the purposes of Rule 23(b)(3), predominance will be found where generalized evidence may prove or disprove elements of a claim, since such proof obviates the need to examine the elements individually. *Potash*, 159 F.R.D. at 693 (citing *In re Workers' Compensation*, 130 F.R.D. 99, 108 (D. Minn. 1990)). Defendants argue that the conflict between retention plaintiffs and in/out plaintiffs affects the materiality of the misstatements, reliance by individual investors, causation, and damages. Yet, as the Court has previously observed, the only element of a 10b-5 fraud claim which is significantly affected by this tension is the damages element, and this is not enough to defeat predominance. Indeed, [*33] there are numerous methods by which the Court may resolve individual damage questions. See, e.g., id. at 698 (citing 4 Newberg, Newberg on Class Actions § 4.26 at 4-91-97 (3d ed. 1992)). The substantive allegations of the Amended Complaint are susceptible to common proof, and predominate over individual questions. E.g., In re Endotronics, P 93,664, at 98,048 ("Courts, however, have found that common issues predominate 'when the alleged fraudulent representations constitute a common course of conduct' despite the existence of some individual issues among class members.") (citations omitted).

## VII. Superiority

A class action here is by far the most efficient and convenient method to resolve this controversy. As this Court has observed:

> Separate proceedings would produce duplicate efforts, unnecessarily increase the costs of litigation, impose an unwarranted burden on this Court and other courts throughout the country, and create the risk of inconsistent results for similarly situated parties. Additionally, the cost associated with individual claims may require claimants with potentially small claim amounts to abandon otherwise valid claims simply because [*34] pursuing those claims would not be economical.

*Potash*, 159 F.R.D. at 699. The interest of potential class members in controlling their own actions are clearly subordinate to the benefits of a class action.

Therefore, the Court will conditionally order certification of a class. However, as described in the next section, the class period must be shortened due to deficiencies in the Amended Complaint. n9

n9 [HN7] *Federal Rule of Civil Procedure 23(c)(1)* grants this Court the power to conditionally certify a class: "An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits." As a technical matter, to comply with Eisen's instruc-

tion to make certification decisions without reference to the merits, the Court's decision may be seen as conditionally certifying a class, and then proceeding to modify the class period based on the issues of the merits raised by Defendants' Motion.

**Defendants' Motion for Judgment on the Pleadings or To Dismiss**

Plaintiffs' [*35] main claim is based on [HN8] *17 C.F.R. § 240.10b-5*, enacted pursuant to Section 10(b) of the Securities Act of 1934 (codified at *15 U.S.C. § 78j*), which makes it unlawful "to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." Defendants characterize Plaintiffs' case as alleging "fraud by hindsight." They move for judgment on the pleadings, pursuant to *Federal Rule of Civil Procedure 12(c)*, n10 and, alternatively, seek dismissal of the Amended Complaint as Plaintiffs have failed to plead fraud with particularity as required by Rule 9(b). n11

n10 [HN9] Rule 12(c) provides, in relevant part: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." If matters outside the pleadings are considered, with some exceptions, the motion shall be treated as one for summary judgment under Rule 56.

n11 [HN10] Rule 9(b) states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

[*36]

**I. Standards of Review**

**A. Rule 9(b)**

[HN11] Circumstances constituting fraud that must be pled with particularity include "the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was being obtained or given up thereby." *Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co., 48 F.3d 1066, 1069 (8th Cir. 1995)* (citations omitted). n12 Courts in this district have applied the particularity requirement strictly in securities fraud cases in order to deter frivolous suits. *Weisburgh v. St. Jude Medical, Inc., 158 F.R.D. 638, 641-42 (D. Minn. 1994)*, aff'd, *62 F.3d 1422 (8th Cir. 1995)*; *In re Lifecore Biomedical, Inc. Sec. Litig., 159 F.R.D. 513, 516 (D. Minn. 1993)*.

n12 The Ninth Circuit has held that a pleading is sufficient under Rule 9(b) in a securities fraud action if it identifies the circumstances of the alleged fraud so that the defendant can prepare an adequate answer. *Fecht v. Price Co., 70 F.3d 1078, 1082 (9th Cir. 1995)*, pet. for cert. filed, *64 U.S.L.W. 3593* (Feb. 20, 1996). Defendants have answered in this action. A pleading that fails to comply with Rule 9(b), however, may be dismissed even at the summary judgment stage, according to the Eighth Circuit. *Murr Plumbing, 48 F.3d at 1069-70*.

[*37]

**B. Rule 12(c)**

[HN12] A motion for judgment on the pleadings is decided under the same standard as a motion to dismiss under Rule 12(b)(6). *Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990)* (citations omitted). On a motion to dismiss, the pleadings are construed in the light most favorable to the plaintiff, and the allegations in the Complaint must be taken as true. *Dover Elevator Co. v. Arkansas State Univ., 64 F.3d 442, 445 (8th Cir. 1995)* (citing *Ruge v. City of Bellevue, 892 F.2d 738, 739 (8th Cir. 1989)*); see also *Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993)* (and cases cited therein). In addition, this Court must resolve any ambiguities concerning the sufficiency of the claims in favor of Plaintiffs, and give them the benefit of "every reasonable inference" drawn from the "well-pleaded" facts and allegations in the Amended Complaint. *Ossman, 825 F. Supp. at 880* (quoting *Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6, 83 S. Ct. 1461, 1465 n.6, 10 L. Ed. 2d 678 (1963)*). The Court may only dismiss counts of the Amended Complaint if "it is clear that no relief could be granted under any set of facts that could [*38] be proved consistent with the allegations." Id. (quoting *Fusco v. Xerox Corp., 676 F.2d 332, 334 (8th Cir. 1982)*).

Defendants contend that Plaintiffs have not pled fraud with the requisite particularity, meriting dismissal under Rule 9(b). Defendants also claim that, even taking the allegations in the Amended Complaint as true, Plaintiffs have not put forth a cause of action under Rule 10b-5, on the grounds that the statements recounted in the Amended Complaint: 1) were not material (and thus did not cause Plaintiffs' damages in the form of a lower stock price); 2) were cured by accompanying materials that "bespoke caution" with regard to their statements; and 3)

1996 U.S. Dist. LEXIS 20943, *

do not demonstrate the possibility of scienter or bad faith.

As the Seventh Circuit has recently noted, Defendants' alternative arguments "are inherently intertwined because pleading fraud with specificity is both an element of the SEC Rule 10b-5 cause of action and a pleading requirement of the Federal Rules." *In re HealthCare Compare Corp. Sec. Litig., 75 F.3d 276, 280-81 (7th Cir. 1996)*. It makes sense to determine first if fraud has been sufficiently pled. Plaintiffs' duty also extends to adequately alleging [*39] circumstances indicating that the statements identified in the Complaint violated Rule 10b-5. See *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., 75 F.3d 801, 813 (2d Cir. 1996)*. If Plaintiffs are successful in meeting this threshold standard, then the Court will consider whether: 1) the alleged statements were material; 2) Defendants sufficiently "bespoke caution" with regard to them; and 3) fraudulent intent may be properly inferred from them. See *id. at 812-14*.

## II. Fraud and Particularity

### A. April 20, 1994 to July 1, 1994

The Amended Complaint alleges that, in the April 20, 1994, conference call, Defendant Edwards made specific positive characterizations about their relationship with Sequent when in fact no sales were made to Sequent in the second quarter of 1994. Am. Compl. PP 72, 77, 81. Taken as true, the allegations support an inference that Edwards' statements were false. This is not the common "fraud by hindsight" claim, where plaintiffs' theory is that since bad news was announced on a certain date, the company "must have necessarily known" about that news beforehand. See, e.g., *Lifecore Biomedical, 159 F.R.D. at 517*. Unlike [*40] Lifecore Biomedical, Plaintiffs have offered facts concerning misrepresentations of the health of a vital relationship and have showed why projections, adopted by Defendants, may have lacked a "reasonable basis in fact." *In re Healthcare Compare Corp. Sec., 75 F.3d at 281; Arazie v. Mullane, 2 F.3d 1456, 1466 (7th Cir. 1993)*. In short, the Amended Complaint sufficiently shows, for Rule 9(b) purposes, that Edwards' description of Tricord's prospects on April 20, 1994, may have been materially false or misleading. See *Greenstone v. Cambex Corp., 975 F.2d 22, 25 (1st Cir. 1992)*. The issue here is not whether Plaintiffs have proven their case, but whether they have adequately alleged it. They have, with respect to the period after and including April 20, 1994. n13

---

n13 The closing date for the class period is the date on which public information counteracted or cured the allegedly misleading statements. See *In re Endotronics, P 93,664, at 98,047*. Here, July 1, 1994, is the obvious closing date.

[*41]

### B. October 20, 1993 to April 19, 1994

However, the period after April 20, 1994, stands in contrast to the period before this date with respect to the sufficiency of the Amended Complaint's allegations. n14 A brief review of the Amended Complaint's primary allegations during this period demonstrates their insufficiency.

---

n14 Defendants ask for Rule 12(c) judgment on the pleadings with respect to the time period before April 20, 1994. Defs.' Mem. of Law in Supp. of Mot. for J. on Pleadings or to Dismiss 12. Under Rule 56, partial summary judgment is available only if it disposes of an entire claim; it is not available when its application would only remove a portion of a claim. *City of Wichita v. United States Gypsum Co., 828 F. Supp. 851, 869 (D. Kan. 1993)*, aff'd in part and rev'd in part on other grounds, *72 F.3d 1491 (10th Cir. 1996)* (and cases cited therein). In the same manner, one court has held, "partial judgment on the pleadings is not possible in federal pleading unless it disposes entirely of one or more counts of the complaint." *In re Amica, Inc., 130 B.R. 792, 796 (Bankr. N.D. Ill. 1991)* (citations omitted). It does not appear that partial judgment on the pleadings is appropriate--the matter however, is largely one of nomenclature, as this Court is not confined to Plaintiffs' suggested dates in fashioning a class period.

[*42]

It is claimed that "Tricord representatives spoke with analysts" about third quarter 1993 results on October 20 and "advised analysts of the continued strength of Tricord's relationship with Sequent." Am. Compl. P 47. The Amended Complaint also contains allegations that a Smith Barney report, issued on October 21, 1993, stated that Sequent's business should remain strong throughout 1994 "based on information provided by the Company." Id. P 48. In the January 1994 edition of Corporate Report Minnesota, Edwards claimed the Sequent relationship was working very well. Id. P 53. In a March 1, 1994, analyst's report, "company spokesmen" were reported as saying that the Tricord relationship was "fine" with no new positive or negative developments. Id. P 63.

Regarding this time frame, "Plaintiffs have made no showing that defendants' descriptions" of Tricord's relationship with Sequent "were not based on the facts available to the company at the time the statements were made." *San Leandro, 75 F.3d at 813.* Plaintiffs' allegations that the Sequent relationship was deteriorating to the point of collapse contain absolutely no indication of when these problems were known to [*43] Defendants. Am. Compl. PP 86-89. In San Leandro, the plaintiffs alleged that, although the defendants represented to the market that retail sales were strong, retail sales were declining at a rate of 8.3 percent, a much steeper decline than the previously reported rate of 2.5 percent. The court stated:

> Plaintiffs allege no circumstances to support their allegation that the allegedly false statements, made at least three weeks before the 8.3 percent figure was announced, were false at the time made. Plaintiffs' unsupported general claim of the existence of confidential company sales reports that revealed the larger decline in sales is insufficient to survive a motion to dismiss.

*75 F.3d at 812-13* (citing *Serabian, 24 F.3d at 365*, n15 and *Arazie, 2 F.3d at 1467*).

> n15 In Serabian, the plaintiffs alleged that defendants' statement that the bank's loan portfolio was "excellent" constituted fraud. However, plaintiffs provided no information about the health the bank's loan portfolio at the time, and failed to cite any specific loans that were in trouble. The First Circuit consequently found "no actionable, particularized allegation of fraud" in that portion of the complaint. *24 F.3d at 362.*

[*44]

Here, Plaintiffs allege similar internal information springing from contacts between Sequent and Tricord. Neither the time of contact, which is crucial in determining falsity here, nor the people involved in the communication are alleged. Without these specifics, Plaintiffs have failed to adequately plead fraud with respect to the period of October 20, 1993, to April 19, 1994. n16

> n16 Plaintiffs allege scienter by pointing to stock sales by the individual Defendants during this earlier period. As described in the next section, scienter may be alleged by showing both a motive and an opportunity to commit fraud. As corporate insiders, Defendants' opportunity to inflate Tricord's stock price cannot be seriously questioned. The motive is as obvious: to sell shares of stock at an inflated price. The Amended Complaint specifically sets out sales of Tricord stock by the individual Defendants totaling over $ 5 million dollars during the class period. Am. Compl. P 90. The huge majority of sales came in late November 1993 and early February 1994. Id.

> It is of course true that "insider trading in suspicious amounts or at suspicious times is probative of bad faith and scienter." *In re Apple Computer Sec. Litig., 886 F.2d 1109, 1117 (9th Cir. 1989).* Yet the question of whether Plaintiffs have adequately alleged scienter is separate from, and secondary to, whether Plaintiffs have adequately alleged a misstatement or omission by Rule 10b-5 standards. See *San Leandro, 75 F.3d at 812-13.* Plaintiffs concede that insider trading during the putative class period "may support an inference of fraudulent intent, but, by itself, fails to support an inference of fraud itself." Pls.' Mem. in Opp'n to Defs.' Mot. for J. on Pleadings or to Dismiss 21 (citing *Berliner v. Lotus Dev. Corp., 783 F. Supp. 708 (D. Mass. 1992)*). With regard to the period before April 20, 1994, Plaintiffs' allegations fall short of pleading fraud with the requisite particularity, so the allegations of insider trading do not aid them.

[*45]

Given that Plaintiffs have pled fraud with sufficient particularity for the period from April 20, 1994, to July 1, 1994, this Court turns to Defendants' claims that the statements laid out in the Amended Complaint: 1) were not material; 2) were accompanied by statements "bespeaking caution"); and 3) were not made with the requisite scienter.

### III. Materiality

At the outset, the Court observes that [HN13] misrepresentations and omissions are actionable under Rule 10b-5; blatant lies are not required. 17 C.F.R. § 240.10(b)-5. The overly optimistic opinions and rosy economic forecasts of insiders, when made in the face of facts which contradict those predictions, may serve as misrepresentations of material fact in a securities fraud action. *Virginia Bankshares, Inc. v. Sandberg, 501 U.S. 1083, 1091-92, 111 S. Ct. 2749, 2757, 115 L. Ed. 2d 929 (1991).* A plaintiff must offer "provable facts" in support of its assertion that the representation was fraudulent, *501 U.S. at 1093-94, 111 S. Ct. at 2758-59,* and may not

Case 1:04-cv-11380-WGY    Document 146-3    Filed 02/02/2007    Page 16 of 19

Page 15
1996 U.S. Dist. LEXIS 20943, *

rely on "soft" or "puffing" statements alone, as these comments lack materiality. *Raab v. General Physics Corp.*, 4 F.3d 286, 289 (4th Cir. 1993) (citations omitted). [*46]

A fatal defect in many actions brought under Rule 10b-5 is that the plaintiffs can refer to "no document, meeting, or transaction which could have, or should have, alerted" the company that their growth predictions were so overly optimistic as to constitute fraud. *Weisburgh, 158 F.R.D. at 643* (quoting *Arazie, 2 F.3d at 1466-67*). In this case, however, Plaintiffs have specifically pointed to the lack of transactions with Sequent, beginning in the second quarter of 1994, as the cause of the significant drop in revenue estimates. From April 20, 1994, to July 1, 1994, revenue estimates for 1994 dropped $ 30-$ 35 million, with one of the primary reasons being the decline in sales to Sequent.

Tricord's relationship with Sequent and other distributors, as Tricord noted in its annual report and SEC filings, was crucial to Tricord's success. See Second Bisio Aff., Ex. I (Form 10-Q Report dated Nov. 11, 1993), at 6-7; id., Ex. J (1993 Annual Report), at 11. n17 Yet, in the conference call conducted on April 20, 1994, Defendant Edwards told the analysts that he felt "comfortable" with earlier street estimates which had been based on the "strong" relationship between Tricord [*47] and Sequent, although no second-quarter sales had been made to Sequent. With regard to this conference call, then, Plaintiffs have sufficiently alleged that Tricord had information within its grasp i.e., that no sales had been made to Sequent in the second quarter of 1994) that would suggest the falsity of the estimates which were adopted. n18

---

n17 The language in both sources is the same:

> The Company's ability to meet its objectives for future periods will be substantially influenced by the success of the Sequent OEM relationship. If this relationship is not successful, the Company's ability to achieve its objectives will be reduced, and its results of operations could be materially adversely affected.

n18 Indeed, Prudential Securities noted in a report released on February 9, 1994, that sales to Sequent "have a huge impact on Tricord's earnings," and without those sales, Tricord's estimated 1994 revenues would be $ 92.6 million instead of $ 129.3 million. Am. Compl. P 60. Four months later, after sales to Sequent had sharply dropped, Tricord noted that estimates of $ 125 million to $ 130 million in revenue were unrealistic, and that a more accurate prediction would be $ 90 million. Id. P 81. Tricord's numbers mirror Prudential's, suggesting that the impact of the loss of Sequent sales was known and roughly quantifiable on April 20, 1994.

---

[*48]

Defendants attempt to distance themselves from analysts' revenue projections alleged in the Amended Complaint, claiming that they cannot be held responsible for the misconceptions and erroneous projections of the analysts. Generally, a company will not be held responsible for the projections of market analysts absent an indication that the company was "responsible for the projections or in a position to influence or control them." *Weisburgh, 158 F.R.D. at 644* (citing Raab).

Here, however, the Amended Complaint has specifically pleaded an instance where statements by an individual Defendant led to the dissemination of erroneous information through an analyst. It specifically links the conference call conducted by Defendant Edwards on April 20, 1994, in which he agreed with projections of $ 120 to $ 125 million in 1994 revenues and dismissed as "incorrect speculation" that difficulties in the Sequent relationship would drive down revenues, with four reports issued by major brokerage houses on April 20 and 21. Am. Compl. PP 72-76. The reports echoed the earlier revenue estimates supported by Edwards, noting that, while Sequent revenues were declining, new relationships with [*49] other manufacturers were on the horizon. Id. PP 73-76.

As to this incident, then, Plaintiffs have sufficiently pleaded additional facts which warrant an allegation that Defendants Tricord and Edwards are responsible for the statements made by analysts. The Court finds Plaintiffs have stated facts with sufficient particularity to show both how Defendants adopted the previous estimates and why Defendants may have lacked a reasonable basis to believe the projections would come true. Materiality exists.

## IV. "Bespeaks Caution" Doctrine

Defendants also claim that their statements are not actionable because any misleading projections or statements were accompanied by cautionary language, thus "bespeaking caution" about the potential for growth and high revenues. Simply stated, [HN14] the "bespeaks cau-

tion" doctrine posits that when a company's public statements about its future are qualified and accompanied by sufficient cautionary language, the statements are usually not actionable as securities fraud. *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 371 (3d Cir. 1993), cert. denied, 510 U.S. 1178, 114 S. Ct. 1219, 127 L. Ed. 2d 565 (1994). The Eighth Circuit has applied the [*50] substance of the doctrine in a securities fraud case, although the "bespeaks caution" doctrine was not explicitly identified. See *Moorhead v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 949 F.2d 243, 245-46 (8th Cir. 1991).

Defendants point to statements in their SEC filings and their annual report for 1993 that stated: "If this relationship [with Sequent] is not successful, [Tricord's] ability to achieve its objectives will be reduced, and its results of operations could be materially adversely affected." See Amended Compl. P 50; Second Bisio Aff., Ex. I, at 6-7; id., Ex. J, at 11. n19

> n19 Defendants' argument relies to some extent on information outside of the pleadings. Yet "when a district court decides a motion to dismiss a complaint alleging securities fraud, it may review and consider public disclosure documents required by law to be and which actually have been filed with the SEC . . . ." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).

[HN15] The "bespeaks caution" [*51] doctrine is not triggered by any use of cautionary language--the language must relate directly to that on which investors claim to have relied. *Kline v. First Western Gov't Sec. Inc.*, 24 F.3d 480, 489 (3d Cir. 1994), cert. denied, U.S.   , 115 S. Ct. 613 (1995). Here, Plaintiffs allege that Defendants knowingly made misrepresentations about the existing condition of the Sequent relationship and the unreasonableness of 1994 revenue projections. Assertions that the Sequent relationship was continuing as planned, and that no negative impact on revenues was expected, operate to eliminate much of the effect of the cautionary language in its publications. As the Fifth Circuit has succinctly put it: "To warn that the untoward may occur when the event is contingent is prudent; to caution that it is only possible for the unfavorable events to happen when they have already occurred is deceit." *Huddleston v. Herman & MacLean*, 640 F.2d 534, 544 (5th Cir. 1981), rev'd in part on other grounds, 459 U.S. 375, 103 S. Ct. 683, 74 L. Ed. 2d 548 (1983). Defendants' written words of caution were effectively nullified by Edwards' statements. The "bespeaks caution" doctrine [*52] does not apply to defeat Plaintiffs' allegations at this stage of the proceedings.

## V. Scienter

Defendants argue that dismissal is warranted because Plaintiffs have failed to adequately allege scienter, a necessary element of a Rule 10b-5 claim. [HN16] "Although scienter need not be alleged with great specificity, a complaint must adduce specific facts which give rise to a 'strong inference' of fraudulent intent." *Lifecore Biomedical*, 159 F.R.D. at 516 (quoting *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990). n20 In the Eighth Circuit, a finding of scienter may be premised on reckless disregard for the truth. *Van Dyke v. Coburn Enters., Inc.*, 873 F.2d 1094, 1100 (8th Cir. 1989).

> n20 The Court recognizes that the Ninth Circuit has lessened the burden on the plaintiffs in proving scienter, holding that plaintiffs "need simply say that scienter existed to satisfy the requirements of Rule 9(b)." *Fecht*, 70 F.3d at 1082. District courts in Minnesota have followed the Second Circuit in securities fraud actions. See *Lifecore Biomedical*, 159 F.R.D. at 516 (citing cases). Mindful of the purposes of Rule 9(b), one of which is to deter unmeritorious suits, this Court will apply the stricter standard. See *TCF Banking & Sav., F.A. v. Arthur Young & Co.*, 706 F. Supp. 1408, 1411 (D. Minn. 1988).

[*53] [HN17]

Absent direct evidence of scienter, there are two methods by which Plaintiffs may adequately allege its existence. "Plaintiffs may plead scienter by alleging 'facts establishing a motive to commit fraud and an opportunity to do so,' or alleging 'facts constituting circumstantial evidence of either reckless or conscious misbehavior.'" *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 53 (2d Cir. 1995) (quoting *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 268-69 (2d Cir. 1993)). If the second avenue is chosen, Plaintiffs must offer a basis for inferring that Defendants knew of, or recklessly disregarded, the deteriorating relationship at the time these earlier statements were made. See *Serabian v. Amoskeag Bank Shares, Inc.*, 24 F.3d 357, 361-62 (1st Cir. 1994). If Plaintiffs can establish a contrast between what Defendants were hearing from Sequent and "what the company was telling the public at the same time," the allegations must be considered sufficient. *Id.* at 365 (emphasis added).

It is reasonable to infer that Defendants would have known about the failing relationship on April 20, 1994, as sales to Sequent were allegedly nonexistent in the second quarter. Even though [*54] Edwards predicted $

10-$ 12 million in Sequent revenues for 1994, which was accurate, Plaintiffs have demonstrated that they may be able to prove that Edwards' "comforting" statements about revenue projections were made without a reasonable basis in fact. See *Healthcare Compare Corp., 75 F.3d at 281-82*. In other words, as to the time period after and including April 20, 1994, Plaintiffs have alleged circumstantial evidence of conscious misbehavior on the part of Edwards and Tricord sufficient to give rise to an inference of scienter.

Thus, a class shall be certified for the period from April 20, 1994, to July 1, 1994. Deutsch is not a proper representative of this class, since she purchased all her shares before April 20, 1994.

### VI. Individual Defendants

Defendants claim that the Amended Complaint impermissibly lumps together Tricord and the individual Defendants, thereby giving the individual Defendants insufficient notice of the allegations specifically directed against them. Defendants argue that Plaintiffs have not sufficiently alleged scienter on the part of the individual Defendants, nor have they matched the alleged misrepresentations with particular defendants; [*55] thus, dismissal of the individual Defendants is supposedly warranted under Rule 9(b). Plaintiffs respond that the individual Defendants, who are all members of senior management, are jointly and severally responsible for the alleged fraud.

A distinction should be made between Counts I and II of the Amended Complaint. Count I charges all individual Defendants with being primary violators under Rule 10b-5, while Count II of the Amended Complaint charges the individual Defendants with "control person" liability under Section 20(a) of the Securities and Exchange Act of 1934. See Amended Compl. PP 106-07.

#### A. Primary Violations

Count I alleges that each individual Defendant violated 10b-5. Generally, Plaintiffs must connect these allegations of fraud to each individual defendant. See *Serabian v. Amoskeag Bank Shares, Inc., 24 F.3d 357, 367-68 (1st Cir. 1994); DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242 (2d Cir. 1987)*. Under the "group publishing" doctrine, adopted by Ninth Circuit, and to some extent by courts in the Second Circuit, securities fraud plaintiffs may rely on a presumption that these statements are the collective work of those individuals [*56] within the company with direct day-to-day involvement. See *Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1440 (9th Cir. 1987); Protter v. Nathan's Famous Sys., Inc., 904 F. Supp. 101, 106 (E.D.N.Y. 1995); Parnes v. Mast Property Investors, Inc., 776 F. Supp. 792, 796 (S.D.N.Y. 1991)*.

In this case, all of the individual Defendants are appropriately characterized as Tricord "insiders," as members of senior management. Yet even if it could be applied in the Eighth Circuit, the group pleading presumption is not available for oral statements made by individual defendants. Oral statements are not properly considered "group-published" information, as it is not reasonable to presume that they are the product of collective action. *In re Gupta Corp. Sec. Litig., 900 F. Supp. 1217, 1239-40 (N.D. Cal. 1994)* (and cases cited therein). Thus, Edwards' statements on April 20, 1994, do not result in primary violator liability for the other Defendants.

Two additional allegations in the Amended Complaint attempt to provide a basis upon which the other Defendants may be held liable as primary violators. Plaintiffs allege that Tricord's report for the first quarter of 1994 was misleading [*57] when it was filed on May 14, 1994. Am. Compl. P 77. That report stated that "the Company expects that Sequent revenues will continue to decrease both in dollars and as a percentage of total revenues in 1994"; the reason given was slower-than-expected market performance of the software, while Plaintiffs allege the drop was due to Tricord's substandard products. Id. Plaintiffs fault the report for failing to note that no sales had been made to Sequent in the second quarter of 1994 so far. Id.

Second, Plaintiffs contend that on May 20, 1994, Tricord announced the authorization of a stock buy-back program because the stock had fallen enough so that repurchasing shares would be profitable, but did not expect to follow through on the program, as evidenced by the sale of over $ 350,000 by a Tricord director (not named as an individual Defendant) two weeks before the announcement. Id. PP 79-80.

These allegations are insufficient. The quarterly report clearly "bespoke caution" directly with regard to the Sequent relationship; further, no actionable omission occurred merely because the report did not state that no sales had yet been made to Sequent in the second quarter of 1994. [*58] Plaintiffs also have not adequately pled that the buy-back announcement was false or misleading when made. Moreover, Defendants may well have thought that the lowered stock price was favorable, while another director disagreed--scienter cannot be inferred as to this particular incident.

Thus, Plaintiffs have only specifically connected Edwards to purportedly illegal conduct during the period of April 20, 1994, to July 1, 1994. As to Count I, the other individual Defendants are not liable.

#### B. Secondary Violations

As to "control person" liability under Count II, the Eighth Circuit has held that:

Case 1:04-cv-11380-WGY    Document 146-3    Filed 02/02/2007    Page 19 of 19

Page 18
1996 U.S. Dist. LEXIS 20943, *

[HN18] a control-person relationship exists whenever (i) the alleged control person actually exercised control over the general operations of the primary violator and (ii) the alleged control person possessed--but did not necessarily exercise--the power to determine the specific acts or omissions upon which the underlying violation is predicated.

*Farley v. Henson, 11 F.3d 827, 835 (8th Cir. 1993),* (citing *Metge v. Baehler, 762 F.2d 621, 631 (8th Cir. 1985),* cert. denied, *474 U.S. 1057, 106 S. Ct. 798, 88 L. Ed. 2d 774 (1986),* and cert. denied, *474 U.S. 1072,* [*59] *106 S. Ct. 832, 88 L. Ed. 2d 804 (1986)).* The "control person" doctrine requires only some indirect means of discipline or influence short of actual direction to hold a "controlling person" liable. Id. at 836 (quoting *Myzel v. Fields, 386 F.2d 718, 738 (8th Cir. 1967),* cert. denied, *390 U.S. 951, 88 S. Ct. 1043, 19 L. Ed. 2d 1143 (1968)).*

From the allegations in Plaintiffs' Amended Complaint, the individual Defendants are positioned to control the flow of information from Tricord to the public. [HN19] Where corporate officers are charged with the day-to-day operations of a public corporation, it is presumed that they have the power to control or influence particular transactions and other instances of corporate behavior. See *In re Marion Merrell Dow Inc. Sec. Litig., Fed. Sec. L. Rep. (CCH) P 97,776 (W.D. Mo. Oct. 4, 1993)* (citing *Maywalt v. Parker & Parsley Petroleum Co., 808 F. Supp. 1037, 1054 (S.D.N.Y. 1992))* (finding "controlling person" liability with regard to inside directors, but not outside directors). Count II of the Complaint is adequately pled against all individual Defendants and will not be dismissed.

**Conclusion**

Accordingly, on the basis of the [*60] foregoing and all of the records, files, and proceedings herein, **IT IS ORDERED** that:

1) Plaintiffs' Motion for Class Certification (Doc. No. 22) is **GRANTED IN PART AND DENIED IN PART** as set forth below; and

2) Defendants' Motion for judgment on the Pleadings or in the Alternative to Dismiss (Doc. No. 25) is **DENIED**, except to the extent it concerns primary violations of Rule 10b-5 (Count I of the Complaint) by individual Defendants Gregory T. Barnum, John H. Crawford, and John P. Guider, as to which the Motion is **GRANTED**.

**IT IS FURTHER ORDERED** that the following class is **CERTIFIED** in this action:

> All persons or entities who purchased the common stock of Tricord Corporation from April 20, 1994 through July 1, 1994 and were damaged thereby. Excluded from the class are each defendant and each of his, her or its subsidiaries, affiliates, directors and officers, and members of the immediate family of each of the individual defendants and the heirs, successors and assigns of any defendant.

**IT IS FURTHER ORDERED** that Plaintiffs Gary Siegel and Donald E. Thiemann are **CERTIFIED** as representatives of the above class.

Counsel for Plaintiffs [*61] and Defendants are to confer regarding the form of the notice required under *Federal Rule of Civil Procedure 23(c)(2).* On or before May 1, 1996, the parties are to submit to the Court an agreed form of notice, or if the parties are unable to agree, each side shall submit a proposed form of notice.

April 5, 1996

RICHARD H. KYLE

United States District Judge