**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

KERI EVANS,

                              Plaintiff,

v.

JOHN F. AKERS, *et al.*

                              Defendants.

_____

LAWRENCE W. BUNCH, *et al.*

                              Plaintiffs,

v.

W.R. GRACE & CO., *et al.*

                              Defendants.

Consolidated as:
Case No. 04-11380-WGY

**MEMORANDUM IN SUPPORT OF STATE STREET BANK AND TRUST**
**COMPANY'S MOTION TO DISMISS PLAINTIFFS'**
**FIRST AMENDED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.   ARGUMENT ....................................................................................................... 2

      A.    The Standard of Review.................................................................................. 2

      B.    The Amended Complaint Far Exceeds The Scope Of The Court's Leave
            To Amend And Asserts Claims Previously Disavowed By Plaintiffs.................. 4

      C.    The Amended Complaint Fails To State Any Viable Claims For Improper
            Or Imprudent Sale Of The Grace Stock.............................................................. 7

      D.    Plaintiffs' Revised Self-Dealing Claim, And The Alleged "Conflict Of
            Interest" Underlying It, Fails To State A Claim Under ERISA.......................... 15

      E.    Plaintiffs' "Misrepresentations and Nondisclosures" Count Fails to State a
            Claim and Violates the Requirements of Fed. R. Civ. P. 9(b)............................ 18

III.  CONCLUSION.................................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

Page

*A.M. Capen's Co., Inc. v. American Trading and Prod. Corp.*,
  202 F.3d 469 (1st Cir. 2000)..............................................................................5

*In re Accredo Health, Inc. Securities Litigation*,
  2006 WL 1716910 (W.D.Tenn. Apr. 19, 2006).................................................9

*Alternative System Concepts*,
  374 F.3d 23 (1st Cir. 2004)................................................................................6

*Alves v. Harvard Pilgrim Health Care, Inc.*,
  204 F. Supp. 2d 198 (D. Mass., 2002) ..............................................15, 16, 17

*Barry v. Trustees of Intern Ass'n Full-Time Salaried Officers and Employees of
  Outside Unions and Dist. Counsels,*
  404 F.Supp 2d at 145 (D. D.C. 2005) .............................................................16

*Beddall v. State Street Bank and Trust Co.*,
  137 F.3d 12 (1st Cir. 1998)....................................................................3, 11, 17

*Berti v. VideoLan Techs.*,
  Case No. 97-296, 1998 U.S. Dist. LEXIS 18066 (W.D. Ky. June 10, 1998)....................9

*Deutschman v. Beneficial Corp.*,
  132 F.R.D. 359 (D.Del.1990) ...........................................................................9

*DiFelice v. U.S. Airways, Inc.*,
  397 F. Supp. 2d 758, 2005 U.S. Dist. LEXIS 2914 (E. D. Va. Oct. 19, 2005)................15

*Donahue v. City of Boston*,
  371 F.3d 7 (1st Cir. 2004)...................................................................................5

*Forsythe v. Sun Life Finance, Inc.*,
  417 F. Supp. 2d 100 (D. Mass. 2006) ...............................................................3

*Greebel v. FTP Software, Inc.*,
  194 F.3d 185 (1st Cir. 1999)...........................................................................3, 8

*Hughes Aircraft Co. v. Stanley Jacobson*,

# TABLE OF AUTHORITIES
## (continued)

Page

525 U.S. 432 (1999) ................................................................................................16

*In re Initial Public Offering Sec. Litigation,*
227 F.R.D. 65 (S.D.N.Y.2004) ..............................................................................9

*Keach v. U. S. Trust Company, N.A.,*
313 F. Supp. 2d 818 (C.D. Ill. 2004) ..................................................................15

*In re: Lernout & Hauspie Securities Litigation v. Lernout,*
286 B.R. 33 (Bankr. D. Mass. 2002) ...............................................................3, 12

*Massachusetts Laborers' Health and Welfare Fund v. Philip Morris, Inc.,*
62 F. Supp. 2d 236 (D. Mass. 1999) ............................................................2, 3, 14

*Metzler v. Graham,*
112 F.3d 207 (5th Cir. 1997) ..............................................................................15

*Pegram v. Herdrich,*
530 U.S. 211 (2000) ............................................................................................17

*Pimental v. Wachovia Mortgage Corp.,*
411 F. Supp. 2d 32 (D. Mass. 2006) .....................................................................3

*Romani v. Shearson Lehman Hutton,*
929 F.2d 875 (1st Cir. 1991) .............................................................................3, 4

*Shaw v. Digital Equip. Corp.,*
82 F.3d 1194 (1st Cir. 1996) .................................................................................3

*Simas v. Quaker Fabric Corp.,*
6 F.3d 849, 855 (1st Cir. 1993) ..........................................................................18

*Stein v. Smith,*
270 F. Supp. 2d 157 (D. Mass. 2003) .................................................................19

*Summers v. State Street,*
453 F.3d 404 (7th Cir. 2006) .........................................................................10, 11

# TABLE OF AUTHORITIES
## (continued)

Page

*In re Tricord System Sec. Litigation*,
    Case No. 94-746, 1996 U.S. Dist. LEXIS 20943 ...............................................9

*Vartanian v. Monsanto*,
    131 F.3d 264, 269 (1st Cir. 1997)..............................................................16, 19

*Vartanian v. Monsanto Co.*,
    80 F. Supp. 63 (D. Mass. 1995)                                                4, 18

## STATUTES

29 U.S.C. § 1001(5) ....................................................................................15, 17

29 U.S.C. § 1103(c)(1)..................................................................................1, 18

ERISA § 401(5) ................................................................................................18

ERISA § 403(c)(1) ......................................................................................16 17

ERISA § 404(a)(1)(A) ......................................................................................16

## RULES

Fed. R. Civ. P. 9(b) ................................................................................. *passim*

Fed. R. Civ. P. 12(b)(6)................................................................................1, 2, 11

## I.    **INTRODUCTION AND SUMMARY OF ARGUMENT**

Defendants State Street Bank and Trust and State Street Global Advisors (collectively, "State Street") respectfully move pursuant to Fed. R. Civ. P. 12(b)(6) for an Order dismissing all claims against them in the First Amended Class Action Complaint (the "Amended Complaint") filed by Plaintiffs Lawrence W. Bunch, Jerry L. Howard, Sr., and David Mueller.  The Amended Complaint should be dismissed on several grounds:

First, the claims in the Amended Complaint far exceed the scope of the Court's leave to amend and violate Plaintiffs' repeated representations (relied upon by the Court in prior rulings) disclaiming any challenge to the decision to divest W. R. Grace & Co. ("Grace") common stock ("Grace stock") from the W.R. Grace & Co. Employees Savings and Investment Plan (the "Plan").

Second, the Plaintiffs' new allegations state no claim under the Employee Retirement Income Security Act ("ERISA").  They distort and contradict the very documents on which they are based – documents that were produced in confidential mediation and thus have been asserted in the Amended Complaint in violation of the parties' mediation agreement, the protective order entered in this case and the Local Rules of this Court.  They ignore the laws of market economics by hypothesizing a "true value" for the publicly-traded Grace stock – a value supposedly "known" only to Defendants and not to the efficient securities market in which Grace stock is traded – although the Amended Complaint fails to cite a single *fact* that State Street or anyone else possessed that was not public knowledge at the time State Street sold the Grace stock from the Plan.  The efficient market principle, and ERISA case law, teach that, absent concealment of material fact, the "true value" of a publicly-traded stock is the actual value placed on that stock by the market, and a fiduciary cannot be held liable for making an investment decision acting based on the actual market price.  Indeed, the Plan's Grace stock was sold at a price *above* the

prevailing market price at the time. Plaintiffs' attack based on the subsequent rise in Grace stock is nothing more than 20-20 hindsight stating no claim under ERISA. This claim, which is a species of the securities law "fraud on the market" theory, also fails because it is subject to, but utterly fails to comply with, the rigorous pleading requirements of Fed. R. Civ. P. 9(b).

Plaintiffs further assert an alleged "conflict of interest," unsupported by any case law, apparently based on the proposition that no investment manager can advise ERISA plan investments when it or an affiliate also manages other, non-ERISA funds that hold similar investments. If accepted, this claimed "conflict" would automatically disqualify the nation's retirement plans from retaining the most experienced and capable firms to manage their investments. ERISA explicitly provides otherwise.

Finally, the Amended Complaint's new allegations that the Defendants made misrepresentations and nondisclosures, without specifying the alleged representations, how they were misleading, or how the Plaintiffs relied on them to their detriment, fails to state a claim and also violates the pleading requirements of Fed. R. Civ. P. 9(b). The claim is also wholly dependent on Plaintiffs' fatally flawed "true value" argument, and must be rejected for the same reasons.

## II.    ARGUMENT

### A.    The Standard of Review.

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a court must take all well-pleaded facts as true, but it need not credit a complaint's 'bald assertions or legal conclusions.'" *Massachusetts Laborers' Health and Welfare Fund v. Philip Morris, Inc.*, 62 F. Supp. 2d 236, 240 (D. Mass. 1999), *quoting Shaw v. Digital Equip. Corp.*, 82 F. 3d 1194, 1216 (1st Cir. 1996). "Conclusions that are not supported by the facts that are alleged in the complaint

'deserve no deference.' More particularly, summary legal conclusions that are contradicted or 'belied by the facts alleged' may be disregarded." *Id.* (internal citations omitted); *see also Pimental v. Wachovia Mortgage Corp.*, 411 F. Supp. 2d 32, 39 (D. Mass. 2006) (dismissing Plaintiff's "speculative" allegation because the Court "need not accept unreasonable inferences based upon conjecture or speculation.") (internal quotation omitted); *Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100, 114 (D. Mass. 2006) ("Additionally, in evaluating a motion to dismiss for failure to state a claim a court must 'eschew any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets.'") (*quoting Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 68 (1st Cir. 2004)).

"When, as now, a complaint's factual allegations are expressly linked to – and admittedly dependent upon – a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it deciding a motion to dismiss under Rule 12(b)(6)." *Beddall v. State Street Bank and Trust Co.*, 137 F. 3d 12, 17 (1st Cir. 1998). Moreover, on a motion to dismiss, the Court can appropriately take judicial notice of public filings made with the SEC. *In re: Lernout & Hauspie Secs. Litig. v. Lernout*, 286 B.R. 33, 37 (Bankr. D. Mass. 2002) ("This Court may take judicial notice of this SEC filing pursuant to Fed. R. Evid. 201, which Defendants had the opportunity to address.").

Plaintiffs' claims that Defendants, but not the market, knew the "true value" of the Grace stock are a species of securities fraud that must be stated with particularity under Fed. R. Civ. P. 9(b). The First Circuit "has been notably strict and rigorous in applying the Rule 9(b) standard in securities fraud actions." *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 193 (1st Cir. 1999), *citing Maldonado v. Dominguez*, 137 F.3d 1, 9 (1st Cir. 1998); *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1223 (1st Cir. 1996) (similar); *Romani v. Shearson Lehman Hutton*, 929 F.2d 875,

-3-

878 (1st Cir. 1991) ("We have been especially rigorous in demanding . . . factual support in the securities context . . . .").

Finally, Plaintiffs' ERISA misrepresentation claims are also subject to the heightened pleading standards of Fed. R. Civ. P. 9(b).  *Vartanian v. Monsanto Co.,* 880 F. Supp. 63, 70 (D. Mass. 1995) (evidence of ERISA misrepresentation claim must be pleaded with particularity under Rule 9(b)).

Applying these standards against the Amended Complaint, it is clear that Plaintiffs fail to state any viable claim against State Street.

**B.    The Amended Complaint Far Exceeds The Scope Of The Court's Leave To Amend And Asserts Claims Previously Disavowed By Plaintiffs.**

As an initial matter, the Amended Complaint should be dismissed because it represents a late-hour – and unauthorized – attempt to vastly expand the scope of the litigation (to State Street's prejudice), and to include theories expressly disclaimed by the Plaintiffs after the Court and the parties have taken positions in reliance on those representations.

**1.    Plaintiffs Had No Leave to Expand Their Claims Against State Street, and State Street Was Given No Opportunity to Oppose Such a Prejudicial Amendment.**

Plaintiffs filed the original complaint in this action more than two years ago.  In December, in response to a motion to dismiss filed by the other Defendants named in that complaint (the "Grace Defendants"), this Court granted Plaintiffs leave to amend to explicitly state that the lone allegation of "self-dealing" asserted against State Street in the original complaint also asserted claims against the Grace Defendants for "failure to monitor" and "co-

fiduciary liability" under ERISA.[1]  Instead, Plaintiffs have filed a 35-page, 134+-paragraph

Amended Complaint asserting seven causes of action, four of which are directed at State Street.[2]

The proceedings on the Grace Defendants' motion to dismiss did not give State Street a full and

fair opportunity to object to such a wholesale amendment by Plaintiffs to launch entirely new

claims against State Street.[3]  Nothing about the Court's ruling on the Grace Defendants' motion

to dismiss permitted Plaintiffs to bring new claims against State Street – all based on facts that

were known or available to Plaintiffs when they filed the original complaint two years and three

months ago, and two of which are based on the theory, expressly disclaimed by Plaintiffs in

repeated representations to the Court, that the sale of the Grace stock from the Plan was

imprudent and improper under ERISA.  State Street respectfully requests that the Court treat the

Amended Complaint as an overbroad motion to amend, and deny that motion as improper and

contrary to the interests of justice.  *Donahue v. City of Boston*, 371 F.3d 7, 17 (1st Cir. 2004),

*cert. den.* 543 U.S. 987 (2004) (affirming district court's discretion to preclude additional claims

not raised in the plaintiff's original complaint and exceeding the court's order of leave to amend).

Moreover, this Court has the inherent discretion to issue appropriate rulings to control its docket

and prevent abuses of the process of the sort displayed by Plaintiffs here.  S*ee generally A.M.

Capen's Co., Inc. v. American Trading and Prod. Corp.,* 202 F.3d 469, 472 n.4 (1st Cir. 2000)

("We review case management decisions for abuse of discretion.").

---

[1]    *See* Transcript of Hearing on Grace Defendants' Motion to Dismiss at 10.

[2]    The Fourth, Fifth, and Sixth Causes of Action are asserted only against the Grace
       Defendants.

[3]    Indeed, State Street filed a pleading on Grace's Motion to Dismiss precisely for the purpose
       of confirming and clarifying what the claims against State Street were.  Ct. File No. 124.
       Plaintiffs filed no response to that pleading.

### 2.    Plaintiffs Are Estopped From Resuscitating their Abandoned "Imprudent Divestment" Claim.

This Court will recall that, in multiple pleadings and hearings, Plaintiffs have repeatedly disavowed any claim against Defendants challenging as improper or imprudent under ERISA the decision by State Street to sell the Grace stock in the Plan. *See, e.g.,* Transcript of Proceedings on State Street's First Motion to Dismiss (March 2, 2006) at 7:15-8:12 (emphasis added) ("THE COURT: [] Are your allegations in this case directed to the alleged repurchase of shares . . . or do you claim that their decision to divest additionally was improper? MS. WALKER: [W]e are solely looking at what appears to be an increase in State Street's holdings *after* they were – after they took the position to divest the Grace stock fund.").

The parties have conducted the litigation pursuant to the scope of the claims as represented by the Plaintiffs, and the Court and the parties have relied on those representations on many occasions.[4]  The Amended Complaint's First and Section Causes of Action, challenging as improper and imprudent the decision to sell the Grace stock from the Plan are precisely the claims that Plaintiffs have previously and repeatedly disavowed.  For the reasons discussed at length in the Grace Defendants' Memorandum In Support Of Their Motion To Dismiss The Bunch Plaintiffs' First Amended Complaint, Plaintiffs are judicially estopped from asserting these claims now. *Alternative Sys. Concepts*, 374 F.3d 23, 33 (1st Cir. 2004).[5]

---

[4]    For example, the Court relied upon these representations when it evaluated Plaintiffs' class certification motion. *See* Transcript of Proceedings on Motion to for Class Certification (September 28, 2006).

[5]    The First Cause of Action (that ERISA bars the Defendants from "eliminating" the Grace Stock Fund from the Plan) should also be dismissed for the reasons stated in State Street's First Motion to Dismiss – *i.e.*, the proposition states no claim under ERISA.  Courts have held that in appropriate cases where prudence dictates fiduciaries must override both express

**C.     The Amended Complaint Fails To State Any Viable Claims For Improper Or Imprudent Sale Of The Grace Stock.**

In addition to being unauthorized and barred, the new counts asserted against State Street attacking the decision to divest the Grace stock fail to state any claim under ERISA.

**1.     Plaintiffs' Contentions That Defendants Improperly Sold "Undervalued" Stock Fail to State a Claim.**

Two principal – and faulty – arguments underlie all of the "imprudent divestment" claims in the Amended Complaint.  First, Plaintiffs assert that the New York Stock Exchange (the public securities market on which Grace stock is traded) lacked material information regarding W.R. Grace & Co. ("Grace") and, as a result, the market's price for the stock failed to reflect its "true value."  *See, e.g.,* Amended Complaint ¶¶ 5, 6, 54, 56, 76, 77, 79, 97, 98 and 119.  Second, Plaintiffs contend that the Defendants were in possession of this unidentified material information and improperly took advantage of it.  These are securities claims in ERISA clothing, and fatally unspecific ones at that.  Fed. R. Civ. P. 9(b) mandates that they be dismissed. Moreover, on their face, these assertions fail to state a claim because the only "facts" identified by the Amended Complaint as pertinent to the "true value" of the Grace stock were Grace's *publicly-filed disclosures* regarding its asbestos liability.  Under the well-accepted principle of efficient markets, Grace's stock price correctly reflected all information contained in Grace's public filings, and ERISA imposes no liability on fiduciaries (including Defendants here) who make investment decisions based on the price assigned to a publicly-traded stock by the efficient market.  Any other rule would impose liability based purely on 20/20 hindsight.  Cases routinely reject such claims.  Finally, Plaintiffs' contentions about the "true value" of Grace's stock are

---

plan terms and the investment elections of the participants and divest the plan of company stock.  *See* State Street's First Motion to Dismiss at 18-19 and cases cited therein.

directly contradicted by the very documents cited and relied upon in the Amended Complaint.
All of the claims against State Street depend on these faulty contentions and must be dismissed.

As noted, throughout the Amended Complaint, Plaintiffs contend that State Street and the other Defendants "understood" or "knew" that Grace was an undervalued stock, but improperly sold it anyway. *See, e.g.,* Amended Complaint ¶ 5. This is a species of securities fraud and must be pled with particularity. *See generally, Greebel v. FTP Software, Inc.*, 194 F.3d at 193. The First Circuit has interpreted Fed. R. Civ. P. 9(b) to require, in securities fraud cases, "specification of the time, place, and content of an alleged false representation." *Id.*, 194 F.3d at 193 *quoting McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir. 1980). By failing to specify precisely what facts State Street possessed that were not known to the market, who knew those facts, and how they acted upon them, Plaintiffs violate Rule 9(b) and their claims must be dismissed on that ground alone.

The closest Plaintiffs come to identifying any *facts* that they allege materially affected the "true value" of the Grace stock are the assertions that Grace "had quantified and capped its potential outstanding asbestos liability" and thus the "investment in Grace stock was no longer speculative." *See, e.g.,* Amended Complaint ¶¶ 45(c), 56 and 76. Specifically, Plaintiffs assert that, at the time State Street commenced sale of the Grace stock from the Plan in February 2004, the Defendants "knew" that the "true value" of shares of Grace common stock was not around $3.00 (the prevailing market price at the time), but rather $13.79. Thus, when State Street sold most of the Plan's Grace stock in a block sale for $3.50 – *i.e.,* for *more* than the prevailing market price – "State Street and Grace certainly knew that $3.50 was grossly below the value of the stock." Amended Complaint ¶ 56. These allegations are false and contradicted by the

documents on which they are based, as explained below.  Accepting, *arguendo*, that the facts are

true, they fail to state a claim.

Plaintiffs' cited basis for these allegations is Grace's March 2004 Form 10-K SEC filing

("March 2004 10-K") – *a publicly-issued document.  See* Amended Complaint ¶ ¶ 56, 76.

Plaintiffs' "undervalued stock" hypothesis is thus completely refuted by the well-accepted

principle that, in an efficient market such as the New York Stock Exchange, the market price of a

security instantaneously and accurately reflects all information known to the public.  *See, e.g.,*

*Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 368 (D.Del.1990) ("[A] well-developed and

impersonal market, such as the New York or Pacific stock exchanges, will instantaneously

incorporate all publicly available information about a given security into the market price of that

security.").  This is a matter about which this Court can take judicial notice.[6]  Put another way,

Plaintiffs' assertion that State Street or any other Defendant "knew" that the prevailing market

price of Grace's publicly-traded stock did not reflect its "true value" cannot possibly be correct

when the supposed "fact" establishing that the stock was "undervalued" (that Grace had

"capped" its future asbestos liability and thus was no longer a risky investment) had been

disclosed to the market in Grace's public securities filings and thus had already been

---

[6]    *See Berti v. VideoLan Techs.*, Case No. 97-296, 1998 U.S. Dist. LEXIS 18066, at *7-8 n. 4
(W.D. Ky. June 10, 1998) (unpublished) ("The Court takes judicial notice of the fact that the
NASDAQ is an efficient stock market, permitting the assumption that all public information
is reflected in the price of stocks traded on that exchange.").  *See also In re Accredo Health,
Inc. Securities Litigation*, Case No. 03-2216 DP, 2006 WL 1716910, *8 (W.D.Tenn. Apr. 19,
2006) ("Moreover, based on this court's research, the overwhelming case authority holds that
securities listed on the NASDAQ trade in an efficient market."); *In re Initial Pub. Offering
Sec. Litig.*, 227 F.R.D. 65, 107 n. 324 (S.D.N.Y.2004) ("Federal courts have repeatedly held
that a listing on NASDAQ or a similar national market is a good indicator of efficiency."); *In
re Tricord Sys. Sec. Litig.*, Case No. 94-746, 1996 U.S. Dist. LEXIS 20943, at *22 (D. Minn.
April 5, 1996) (unpublished) ("Here, Tricord stock was traded on the NASDAQ exchange-a
nationwide, developed, and open market, from which 'efficiency' can easily be inferred.").

incorporated by the market into the price of the stock. And nowhere does the Amended

Complaint allege that State Street sold the Grace stock for *less* than the established market price

at the time. Thus, Plaintiffs' assertion based on an alleged "true value" for the Grace stock states

no claim, under ERISA or any other legal doctrine.

Moreover, it is absolutely settled that ERISA will not impose liability on a fiduciary for

basing an investment decision on the *actual price* of a publicly-traded security as set by the

efficient market. Judge Posner succinctly explained why in *Summers v. State Street*, 453 F.3d

404 (7th Cir. 2006). In *Summers,* a class of United Airlines employees sued several alleged

fiduciaries (including State Street) of the UAL Corporation Employee Stock Ownership Plan

("ESOP") asserting that the defendants imprudently managed the ESOP's assets by failing to sell

the United stock held by the plan as the market price for the stock fell prior to United's

bankruptcy filing. *Id*. at 405-406. The Plaintiffs specifically alleged that the fiduciaries should

have sold the United stock in the ESOP immediately after United released a letter to its

employees detailing its financial hardships. *Id*. at 408. The Plaintiffs argued that as soon as this

letter was released, the fiduciaries should have known "United was going in the tank." *Id*. The

Plaintiffs claimed that even though the letter was public information, the fiduciaries should have

known that the value of United stock would continue to fall over the course of the next year.

Judge Posner held that this argument "is wrong," reasoning that as soon as the letter was

released, the stock market "read" the letter and incorporated it into the appropriate valuation of

the company. Because of a public market's ability to internalize this sort of information, "at

*every* point in the long slide of United's stock price, that price was the best estimate available

either to State Street or to the Committee of the company's value, and so neither fiduciary was

required to act on the assumption that the market was overvaluing United." *Id*. (emphasis in

-10-

original) (internal citation omitted).  Thus, State Street was permitted to take the market price for

United stock as "the best estimate available to State Street" of the value of the stock.  *Id.*  Indeed

– and this is the critical point for an ERISA fiduciary seeking to evaluate the prudence of an

investment in public company stock – Judge Posner observed that "it would be *hubris* for a trust

company like State Street to think it could predict [a public company's] future more accurately

than the market could."  *Id.*  ERISA does not impose liability on a fiduciary for acting on the

basis of the *actual value* of a publicly-traded security as set by an efficient market.

As in *Summers,* the information cited by Plaintiffs here for the assertion that State Street

"knew better" already was known to the market and was reflected in Grace's stock price.  As

Judge Posner reasoned, State Street would have been "wrong" not to take the market price as the

best estimate of the value of the stock, and State Street was not "required to act on the

assumption that the market was [under]valuing [Grace]."

Finally, the very disclosures alleged to have put the Defendants (but apparently not the

efficient market) on notice that better times lay ahead for Grace cannot support Plaintiffs'

characterizations of those disclosures.  Plaintiffs allege Grace's March 2004 10-K revealed that

Grace "had quantified and capped its potential outstanding asbestos liability" and thus that "an

investment in Grace stock was no longer speculative."[7]  What the document actually says is far

different.  First, it must be noted – as Grace clearly does in the 10-K filing – that the reserves

---

[7]    Because Plaintiffs link their allegations in the Amended Complaint to certain documents,
including Grace's securities filings, the Court can consider those documents without
converting this motion to one for summary judgment.  *Beddall v. State Street Bank and Trust
Co.*, 137 F. 3d 12, 17 (1st Cir. 1998) ("When, as now, a complaint's factual allegations are
expressly linked to – and admittedly dependent upon – a document (the authenticity of which
is not challenged), that document effectively merges into the pleadings and the trial court can
review it deciding a motion to dismiss under Rule 12(b)(6).").

being set aside by the company for asbestos liability claims were *estimates* of *future liability,* including for many cases that had not yet been filed or adjudicated. *See* Financial Supplement to the W. R. Grace & Co. Annual Report on Form 10-K for the Year Ended December 31, 2003 filed on March 5, 2004 at F-17 ("Grace's obligations with respect to present and *future* claims *will be determined* through proceedings in the Bankruptcy Court and negotiations with each of the official committees appointed in the Chapter 11 Cases and a legal representative of *future* asbestos claimants, which negotiations are *expected to provide* the basis for a plan of reorganization.") (emphasis added).[8] Second, Plaintiffs entirely omit from their characterizations the critical *caveat* in the filing that, while Grace had set its asbestos liability reserve for 2003 at $973.2 million, "due to the [Grace Bankruptcy] Filing and the uncertainties of asbestos-related litigation, actual amounts *could differ materially* from the recorded liability." *Id. See* Exhibit 1 to Motion for Judicial Notice. Of course, it was precisely the uncertain nature of Grace's unliquidated, future asbestos liabilities and the bankruptcy filing precipitated by those liabilities that led State Street to consider the Grace stock such a volatile investment in the first place.[9]

---

[8]   The Grace March 2004 10-K is attached as Exhibit 1 to State Street's Motion for Judicial Notice filed contemporaneously with this Motion to Dismiss. On a motion to dismiss, the Court can appropriately take judicial notice of public filings made with the SEC, without converting the motion to one for summary judgment. *In re: Lernout & Hauspie Secs. Litig. v. Lernout*, 286 B.R. 33, 37 (Bankr. D. Mass. 2002) ("This Court may take judicial notice of this SEC filing pursuant to Fed. R. Evid. 201, which defendants had the opportunity to address.").

[9]   Plaintiffs "support" their allegation that State Street "knew" that $13.79 was "true value" of the Grace stock by mischaracterizing yet another document. *See* Amended Complaint, ¶ 54 ("[State Street's retained financial advisor] Duff & Phelps concluded that each share of Grace had a value of $13.79."). The cited portion of this document was filed with the Court by Plaintiffs in opposition to the Grace Motion to Dismiss. *See* Ct. File No. 129. The pertinent page is attached as Exhibit 2 to this Memorandum. What the document actually says is that "Grace's equity value per share is *highly sensitive* to the ultimate liability the Company experiences. For example, *if the Company's current estimate of less the $1 billion*

-12-

Because there is no allegation that State Street sold the Grace stock for anything less than the actual price set by the efficient market and the very documents relied upon by Plaintiffs flatly refute their characterization of the Grace stock as "undervalued" and free from risk, Plaintiffs' improper divestment claims must be dismissed.

### 2.     Plaintiffs' Allegations That State Street "Ignored" the Recommendations of the Independent Fiduciary Group Are False.

Plaintiffs now allege that the Plan's fiduciaries "ignored the recommendation" of "State Street's hand picked Independent Fiduciary Group that the [Plan] retain its 8 million shares of Grace common stock." Amended Complaint ¶ 1.  In the same paragraph, Plaintiffs selectively quote from the minutes of the December 11, 2003 meeting of the SSgA Independent Fiduciary Committee, conducted at the very outset of State Street's engagement as investment manager for the Grace stock fund in the Plan.  *See, e.g.,* Amended Complaint ¶ 43 (State Street was retained as investment manager "effective December 15, 2003").  Throughout the pleading, Plaintiffs repeat the assertion that State Street "ignored the recommendation of the Independent Fiduciary Group" to hold the Grace stock in the plan.  *See, e.g.,* Amended Complaint ¶¶ 4, 5, 6, 53, 54, 55, 68, 77 and 116.  On this basis, the Plaintiffs allege that the Defendants violated ERISA by improperly and imprudently divesting the Grace stock from the Plan.

The assertion is false.  It is based on a selective mis-quoting of the December 11, 2003 IFG minutes, which directly contradict the claim.  A copy of those minutes, numbered SSBT-000682 through SSBT-000684, is attached as Exhibit 1 to this Memorandum in Support.  The

---

*of asbestos liabilities holds true,* it could lead to a higher equity value per share." SSBT-000209.  The document then provides a range of possible equity values, from a high of $13.79 to a low of zero.  Given the uncertain nature of Grace's actual asbestos liabilities, this document fully *supports* State Street's decision to sell the stock under ERISA's prudence requirements.

full quotation (with the portion omitted by Plaintiffs in bold) is: "**Subject to its ongoing monitoring and further analysis and evaluation**, IFG is recommending that State Street not override the Plan documentation. Therefore, if this recommendation is approved, the Plan will continue to hold Grace stock." December 11 Minutes at SSBT-000684 (emphasis added).[10] The minutes make clear that this was an "initial recommendation" and notes that, going forward, "State Street will need to immediately implement a process for ongoing review of the Grace stock." Id. at SSBT-000682 and SSBT-000683. The committee further noted the potential volatility of the Grace stock by stating that "[a] major factor affecting the valuation of Grace [are the] personal injury claims [against Grace] as well as the other ongoing asbestos litigation." SSBT-000683. It was precisely as a result of its "ongoing monitoring and further analysis and evaluation" that *the Independent Fiduciary Group itself* ultimately recommended, three months later, that the Grace stock be divested. The summary assertions that State Street or anyone else "ignored the recommendation" of the Independent Fiduciary Group are directly contradicted by the document on which they are based and should be disregarded. "Summary legal conclusions that are contradicted or 'belied by the facts alleged' may be disregarded." *Mass. Laborers' Health and Welfare Fund v. Philip Morris, Inc.*, 62 F. Supp. 2d 236, 240 (D. Mass. 1999) (citing *In re Lane,* 937 F.2d 694, 698 n.7 (1st Cir. 1991)).

Without Plaintiffs' mischaracterizations here, there is nothing left to their claims challenging the prudence of the sale, except the mere fact that Grace stock went up in the weeks

---

[10]    State Street has redacted certain portions of this document that reflect attorney- client communications. State Street is redacting the version attached here to avoid the necessity of filing the document under seal. If the Court would prefer that State Street file an unredacted version of the document under seal, State Street will do so.

after the sale was completed.[11]  But ERISA does not recognize an imprudence claim based on the mere fact the value of an investment has risen since the date of divestment.[12]

### D.  Plaintiffs' Revised Self-Dealing Claim, And The Alleged  "Conflict Of Interest" Underlying It, Fails To State A Claim Under ERISA.

In addition to resurrecting their long-abandoned imprudent divestment claim, Plaintiffs have re-cast their "self-dealing" claim against State Street.  (Amended Complaint at 23, Third Cause of Action.).  Based on their assertion that State Street "knew" that the "true value" of Grace stock was higher than the prevailing market price, Plaintiffs concoct a theory that State Street sought to appropriate that value for its other clients by selling the Grace stock while advising its other clients to buy it.  Plaintiffs assert that this is a "conflict of interest" and a violation of ERISA's self-dealing provisions.  Of course, as already demonstrated, the Amended Complaint fails to plead the threshold claim that Grace's stock price was distorted because the market lacked information known to the Defendants.  Because the Amended Complaint fails credibly to allege that State Street or Grace "knew" the Grace stock was undervalued, or even that it was undervalued in the first instance, the Plaintiffs have failed to establish any predicate

---

[11]  *See* Amended Complaint ¶ 57 ("The actual trading experience of Grace stock, after State Street sold the Plan's holdings, demonstrates that Grace and State Street failed to exercise their fiduciary duties to protect members of the class").

[12]  *See e.g., Metzler v. Graham*, 112 F.3d 207, 209 (5th Cir. 1997) ("Prudence is evaluated at the time of the investment without the benefit of hindsight."); *DiFelice v. U.S. Airways, Inc.*, 397 F. Supp. 2d 758, (E. D. Va. Oct. 19, 2005) ("ERISA fiduciaries with responsibility for selecting and terminating plan investment options for plan participants are required to exercise investment judgment in the context of constantly changing, complex financial markets.  In doing so, these fiduciaries are entitled to substantial latitude and their judgment must not be assessed using 20/20 hindsight."); *Keach v. U. S. Trust Company, N.A.*, 313 F. Supp. 2d 818, 867 (C.D. Ill. 2004) ("Again, the fiduciary's duty of care requires prudence, not prescience, and the appropriateness of an investment is to be determined from the perspective of the time of the investment was made, not from hindsight.") (internal citations and quotations omitted).

for alleged "self dealing" by State Street.  This alone is sufficient reason to dismiss the Third

Cause of Action.  *Alves v. Harvard Pilgrim Health Care, Inc.*, 204 F. Supp. 2d 198, 209 (D.

Mass., 2002), aff'd 316 F.3d 215 (1st Cir.  2003) (rejecting an ERISA self-dealing claim because

there was no evidence that any defendant sought personal gain or advantage – even indirectly –

from its use of plan assets).

Moreover, Plaintiff's new self-dealing claim fails on its face.  In order to state a claim for

breach of duty of loyalty under ERISA Sections 403(c)(1) or 404(a)(1)(A), the Plaintiffs must

plead that State Street, while functioning as a fiduciary with respect to the Plan, failed to hold

plan assets "for the exclusive purpose of providing benefits to participants in the plan and their

beneficiaries" (Section 403(c)(1)) or failed to "discharge [its] duty with respect to the plan solely

in the interest of the participants and beneficiaries and for the exclusive purpose of providing

benefits to participants and their beneficiaries" (Section 404(a)(1)(A)).  The Plaintiffs assert that

State Street violated these principles when it became an ERISA fiduciary with respect to the

Grace stock in the Plan because, during the same period, as an investment manager for other

accounts, State Street funds held and acquired small amounts of Grace stock.  Amended

Complaint at ¶ 85 ("After State Street assumed investment management responsibilities it

created an inherent conflict of interest by acting both purchaser and seller of Grace Stock.").

However, ERISA explicitly sanctions such arrangements.  It is well-established that

ERISA fiduciaries may conduct other activity that relates to or impacts upon a plan, completely

free of ERISA regulation.  *See e.g., Hughes Aircraft Co. v. Stanley Jacobson*, 525 U.S. 432, 443-

46 (1999) (Employer's decision to amend pension plan does not implicate fiduciary duty, which

is limited to administering the plan's assets, even though he may inure an "incidental benefit"

-16-

from amendment).[13]  That State Street carried out its regular business activity by continuing to manage investments for other clients, including investments in Grace stock, while also serving as a fiduciary to the Plan cannot, in and of itself, state a claim for breach of fiduciary duty under ERISA.

Furthermore, Plaintiffs fail entirely to identify what "interest" or "benefit" State Street allegedly served or obtained at the expense of Plan participants when it liquidated the Plan's Grace stock.  Certainly the alleged purchase, by other funds managed by State Street affiliates, of small amounts of Grace stock on the open market (for the market price) confers no special "benefit" that belonged to the Plan.  And it states no claim for "conflict of interest."  Were this so, investment managers who, on a daily basis, acquire and dispose of the same stock for different portfolios would be subject to ERISA self-dealing claims, and no ERISA plan in the country would be able to retain the expertise of the very firms and managers qualified to offer it.  Absent any specific allegation that State Street managed plan assets for a purpose other than the benefit of the plan and its participants, the claim must be dismissed.  *See e.g., Alves*, 204 F. Supp. at 215.

Finally, the assertion in the Amended Complaint that State Street is liable under ERISA Section 403(c)(1) for "inuring an unlawful benefit" (Amended Complaint ¶ 90) fails on an even more fundamental level.  ERISA provides that "the *assets of a plan* shall never inure to the

---

13    *See also Pegram v. Herdrich*, 530 U.S. 211, 225 (2000) (fiduciary who provides services to an ERISA plan may have interests or financial incentives adverse to plan beneficiaries and thus may wear "two hats"); *Beddall* 137 F.3d at 14 (bank's activity judged against ERISA only to the extent that it functions as a fiduciary); *Alves v. Harvard Pilgrim Healthcare Inc.*, 204 F. Supp 2d 198, 210 ("[The] mere fact that an entity is an ERISA fiduciary 'does not restrict it from pursuing reasonable business  behavior'") (quoting *Vartanian v. Monsanto*, 131 F.3d 264, 268 (1st Cir. 1997)).

benefit *of any employer* […]." 29 U.S.C. § 1103(c)(1) (emphasis added).  ERISA defines an

employer as "any person acting directly as an employer, or indirectly in the interest of an

employer, in relation to an employee benefit plan."  ERISA § 401(5), 29 U.S.C. § 1001(5).  *See*

*generally, Simas v. Quaker Fabric Corp.*, 6 F.3d 849, 855 (1st Cir. 1993) (holding that a

corporation that took control of an employer is an ERISA employer because the Court took the

language of § 1002(5) "to mean that, if the plan provides ERISA-type benefits to the employees,

the paymaster is classified as an 'employer' so long as it is connected to the employer and is

acting in the employer's interest. In our view, any payments made by the control transferee are

'in the interest of' the employer.")).  Of course, State Street is not the "employer" in the context

of the Plan, and the Amended Complaint makes absolutely no allegation that, in divesting the

Grace Stock assets from the Plan, State Street benefited Grace.  Thus, the anti-inurement

provisions of ERISA do not apply to State Street.   Plaintiffs' Third Cause of Action must be

dismissed.

### E.    Plaintiffs' "Misrepresentations and Nondisclosures" Count Fails to State a Claim and Violates the Requirements of Fed. R. Civ. P. 9(b).

Finally, the Seventh Cause of Action, generally asserting that the Defendants failed to

disclose material information to Plan participants, must be dismissed.  Just as the Plaintiffs fail to

plead their securities-based claim with the specificity required by Fed. R. Civ. P. 9(b), so too do

they fail to plead their allegations of misrepresentation and nondisclosure with the requisite

specificity.  *Vartanian v. Monsanto Co.,* 880 F. Supp. at 70  (ERISA misrepresentation claims

must be "spelled out precisely" with the specificity required by Rule 9(b)).  As a threshold

matter, Plaintiffs have failed to allege that State Street or Grace possessed any material

nonpublic information concerning the Grace stock when State Street liquidated the Plan's stock

position. *Supra*. Moreover, Plaintiffs fail to establish, through the pleading of specific facts, the basic elements of a misrepresentation claim. As Plaintiffs acknowledge, ERISA imposes on fiduciaries a duty to disclose certain information to "reduce the disparity in access to company information that exists between the fiduciaries and the participants and their beneficiaries." Amended Complaint at ¶ 64. However, the Plaintiffs do not plead any such information "disparity." Indeed, the alleged "misrepresentations" and "nondisclosures" catalogued in the Seventh Cause of Action are nothing more than bald descriptions of Plaintiffs' unsupported allegations and liability theories dressed up as "nondisclosures." *See, e.g.,* Amended Complaint ¶¶ 115-117. Moreover, Plaintiffs fatally fail to plead precisely how these alleged "nondisclosures" adversely affected any *investment decisions* by the participants. To plead a cognizable claim for misrepresentation or nondisclosure under ERISA, the Plaintiffs must credibly allege that State Street, acting in its fiduciary capacity, failed to "fully inform employees . . . of facts [they] knew or should have known, and *which could have been material to the Plan participants making investment decisions*." *Stein v. Smith*, 270 F. Supp 2d 157, 173 (D. Mass. 2003) (emphasis added); *see also Vartanian v. Monsanto Co.*, 131 F.3d 264, 270-71 (1st Cir. 1997).

Even a brief review reveals the inadequacy of the allegations in the Seventh Cause of Action. Plaintiffs allege that State Street failed to "disclose that it intended to function simultaneously as a seller and investor." *Id.* at ¶ 116. This claim basically restates the invalid assertion that State Street acted in a conflict of interest. Even if this were true (it is not), the fact that State Street funds and fund managers acquire and dispose of stock as part of their regular business is a matter of public record, and certainly had no adverse bearing on State Street's position as investment manager for the Plan. Indeed, one would expect nothing less from the

-19-

Grace company fiduciaries than to retain an *experienced* independent fiduciary to evaluate the Grace stock investments in the Plan.  Plaintiffs fail to allege how this information, if "disclosed" would affect the investment decisions of any individual participant.  Plaintiffs also allege that State Street (i) failed to disclose the "real reasons" it sold the Plan's Grace stock; (ii) failed to disclose that the Independent Fiduciary Group initially recommended maintaining the stock position; and (iii) "misrepresented the ability of Grace to answer questions concerning the liquidation."  *Id.* at ¶ 116.  Of course, each of these assertions presupposes what the Amended Complaint fails credibly to allege – that State Street knew some fact, material to the price of the stock, and unknown to the efficient market, and exploited that information for its own benefit.  Plaintiffs' derivative "misrepresentation" and "nondisclosure" claims thus fail for the same reasons as their imprudence claims.  The Seventh Cause of Action must be dismissed.

## III.    <u>CONCLUSION</u>

For the foregoing reasons, State Street respectfully requests that all claims against it in Amended Complaint be dismissed with prejudice.

Dated:  February 2, 2007                    Respectfully submitted,

                                            STATE STREET BANK AND TRUST COMPANY

                                            By its counsel,


                                            ___/s/ Sean T. Carnathan_____
                                            Sean T. Carnathan (BBO #636889)
                                            (scarnathan@ocmlaw.net)
                                            O'CONNOR, CARNATHAN, MACK LLC
                                            8 New England Executive Park, Suite 310
                                            Burlington, MA 01803
                                            Telephone: (781) 359-9000
                                            Facsimile: (781) 359-9001

                                            -and-

                                            Scott M. Flicker
                                            (scottflicker@paulhastings.com)
                                            PAUL, HASTINGS, JANOFSKY & WALKER LLP
                                            875 15th Street, NW
                                            Washington, DC 20005
                                            Telephone: (202) 551-1700
                                            Facsimile: (202) 551-1705


LEGAL_US_E # 74121274.2