## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KERI EVANS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JOHN F. AKERS, et al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

| | |
|---|---|
| | ) |
| LAWRENCE W. BUNCH, et al. | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| W. R. GRACE & CO., et al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

Consolidated
Case No. 04-11380-WGY

### OPPOSITION OF BUNCH PLAINTIFFS TO MOTIONS TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT SUBMITTED BY THE W.R. GRACE & CO. DEFENDANTS AND THE STATE STREET DEFENDANTS

**TABLE OF CONTENTS**

                                                                                    Page

INTRODUCTION ........................................................................................... 2

ALLEGATIONS OF FIRST AMENDED COMPLAINT .......................................... 3

ARGUMENT ................................................................................................. 5

I.     PLAINTIFFS' FIRST AMENDED COMPLAINT PROPERLY PLEADS
       CAUSES OF ACTION ............................................................................ 5

       A.     The record does not support Defendants' primary theories in support
              of dismissal ................................................................................. 6

       B.     Plaintiffs acted in good faith when they amended their complaint and
              are not estopped form pursuing their claims ....................................... 7

       C.     Plaintiffs provided sufficient specificity in their Amended Complaint ............ 9

              1.     Plaintiffs adequately identified the roles of each individual Grace
                     defendants and linked the defendants' roles to their injuries. ................... 9

              2.     Plaintiffs adequately pled that the Grace Defendants sold the
                     Plan's assets. ........................................................................... 10

              3.     Plaintiffs adequately have pled a claim for the Grace Defendants'
                     failure to monitor. ..................................................................... 11

              4.     Plaintiffs have alleged a viable claim for the Grace Defendants'
                     co-fiduciary liability ................................................................. 12

              5.     Plaintiffs have alleged a viable claim for misrepresentation .................... 14

              6.     Plaintiffs have alleged a viable claim for Promissory Estoppel ................ 15

       D.     Defendants by depriving the Participant of their holdings in Grace
              without evidence that the investment was in imminent danger violated
              their fiduciary duty ...................................................................... 16

       E.     The State Street Defendants' remaining arguments do not support
              dismissal of their action ................................................................ 18

1.  The Court already rejected State Street's motion to dismiss
    Plaintiffs' claims of self-dealing................................................................. 18

2.  Plaintiffs' allegations that State Street ignored the
    recommendations of the Independent Fiduciary Group
    remain valid ............................................................................................... 19

3.  Plaintiffs adequately pled misrepresentation claims against
    State Street ................................................................................................. 19

CONCLUSION.................................................................................................................... 20

## TABLE OF AUTHORITIES

Page

*Alternative System Concepts, Inc. v. Synopsis, Inc.*, 374 F.3d 22 (1st Cir. 2004) ........................ 8

*Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 23 (1st Cir. 1998) ................................ 13

*Chambless v. Masters, Mates & Pilots Pension Plan*, 772 F.2d 1032, 1039
(2d Cir. 1985), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1189, 89 L.Ed.2d 304 (1986) ............... 15

*Fieldwork Boston, Inc. v. United States*, 344 F. Supp.2d 257 (D. Mass. 2004) ......................... 9

*Gridley v. Cleveland Pneumatic Co.*, 924 F.2d 1310, 1318-19 (3d Cir.),
*cert. denied,* 501 U.S. 1232, 111 S.Ct. 2856, 115 L.Ed.2d 1023 (1991) .................................... 15

*Jackson v. Truck Drivers' Union Local 42,* 933 F.Supp. 1124 (D. Mass. 1996) ....................... 11, 12

*Richard Langbecker v. Electronic Data Systems Corp.,* --- F.3d ----, 2007 WL 117465
(5th Cir. January 18, 2007) ............................................................................................ 16, 17, 18

*Schonholz v. Long Island Jewish Medical Center*, 87 F.3d 72, 78 (2nd Cir. 1996) .................... 15

*In re Sprint Corporation ERISA Litigation*, 388 F.Supp.2d 1207, 1231-32
(D. Kan. 2004) ............................................................................................................................ 12

*Summers v. State Street,* 453 F.3d 404 (7th Cir. 2006) ................................................................ 16

*Woods v. Southern Co.*, 396 F.Supp.2d 1351 (N.D. Ga. 2005) ................................................. 12, 13, 14

### STATUTES

29 C.F.R. §2509.75-8, FR-17 ...................................................................................................... 12

29 U.S.C. §1104(c) .................................................................................................................. 3, 8

29 U.S.C. §1104(c)(1)(B) ............................................................................................................ 3

ERISA Section 404(c) ........................................................................................................ 3, 8, 17

ERISA Section 404(c)(1)(B) ....................................................................................................... 3

## INTRODUCTION

This action is intended to recover the loss that Participants in the W.R. Grace & Co. Employees Savings and Investment Plan (the "Plan") sustained when Defendants liquidated Plaintiffs' holdings in the Grace Stock Fund. The basis for this action has remained constant: Grace and State Street's imprudent activities regarding the Participants' investment in Grace stock and State Street's self-dealing. The Grace Defendants, in their motion to dismiss, acknowledged that Plaintiffs always have focused on the liquidation of Grace stock.

> This entire case concerns State Street's sale of Company stock from the Plan in early 2004, after State Street became the independent investment manager of the Grace Stock Fund.[1]

Plaintiffs at the invitation of the Court and consistent with the claims in their original complaint and their arguments at the December 20, 2006 hearing amended their Complaint. The First Amended Complaint, similar to the original complaint, seeks to hold Grace and State Street liable for selling the Plan's entire holdings in Grace common stock.  Plaintiffs allege that Defendants breached their ERISA duties *inter alia* by representing that Grace was an imprudent investment. In reality, Grace stock was a sound investment that Plaintiffs had the right to retain.

Plaintiffs readily admit that their review of Defendants' produced documents revealed important additional facts that further support Plaintiffs' claims. Although Plaintiffs' believe that their additional claims remain true to their original theories and factual allegations, to the extent that the Court might find that the claims have expanded from Plaintiffs' initial complaint, the Court consistent with the liberal right to amend under the Federal Rules of Civil Procedure, nonetheless, should permit the claims to proceed.

---

[1] Grace Motion to Dismiss at 3.

## ALLEGATIONS OF FIRST AMENDED COMPLAINT

This action involves a Grace sponsored Retirement Plan that **required** Plan Participants to exercise complete investment discretion over their 401(k) accounts. The Grace Plan permitted participants to "choose to invest in Company stock through the Grace Stock Fund or they could invest in a variety of mutual funds and similar accounts."[2] Once a Participant invested in the Grace Stock Fund, the Plan conferred upon the Participant unfettered discretion to move his/her investment from the Stock Fund into any other of the many investment options that Grace created for Plan Participants. "Grace structured the Plan to permit Plan Participants to immediately transfer their investments from the Grace Stock Fund into other investment options."[3]

Grace devised the Plan as an ERISA Section 404(c) participant directed plan. The purpose of seeking 404(c) status was to immunize Grace and its Co-Fiduciaries from liability related to the investments made by Plan Participants. Accordingly, Plan Participants and not Grace or State Street assumed the entire burden of acting prudently with respect to their investments.[4]

Despite representing to Plan Participants that they had the ultimate control over their investments, Grace and State Street in violation of their fiduciary duties took control away from Participants. "Grace deprived the Plan Participants of their right and ability to exercise independent judgment as to the type of investment vehicle and amount of their contribution to

---

[2] First Amended Complaint at ¶ 37.
[3] First Amended Complaint at ¶ 40.
[4] 29 U.S.C. §1104(c). Under ERISA Section 404(c)(1)(B), 29 U.S.C. §1104(c)(1)(B), a "person who is otherwise a fiduciary" is not liable for losses to the plan resulting from the participant's selection of investments in his own account, provided that [the] participant . . . exercised control over the assets in his account (as determined under regulations of the Secretary)." Id. at §1104(c) (1). The Grace Defendants in their previous answers in this case have asserted that the Grace Retirement Plan complied with 404(c). See Grace Answer to Bunch Plaintiffs' original complaint in their Fifteenth Affirmative Defense. ("The plaintiffs' claims are barred, in whole or in part, by ERISA § 404(c), 29 U.S.C. §1104(c).")

the Grace Stock Fund by transferring all decisions to State Street."[5] The "Company expressly induced class members to participate in the Plan by claiming that the Plan only would invest in Grace common stock. Yet the Company allowed State Street to suspend the ability of class members to use their Plan participation as a means to trade in Company stock."[6]

In addition to breaching their fiduciary duty by wrongfully interfering with the Plan Participants' investment decisions, Defendants failed to act prudently when they divested the Plan of its holdings in Grace. Defendants knew that Grace was **not** a house of cards that was destined to collapse. To the contrary, Grace told Participants "the price of Grace stock no longer reflects the Company's solid operating results."[7] In fact, as the Amended Complaint alleges by "the time Grace engaged State Street, internal Grace reports and studies demonstrated that an investment in Grace stock was no longer speculative. Indeed, as Grace was delegating responsibility to State Street, Grace in public filings represented that it had quantified and capped its potential outstanding asbestos liability."[8]

State Street also knew that the Participants' investment in Grace was not in imminent danger of collapse. State Street, as part of the process of accepting responsibility as the Plan's investment manager, created an Independent Fiduciary Group ("IFG") to determine whether State Street should sell the Plan's Grace portfolio. After completing substantial due diligence, State Street's IFG recommended that the Plan retain the stock.[9]

State Street also engaged Duff & Phelps, a financial analyst, to review the potential value of Grace stock. Duff & Phelps' reports reveal that Grace was not on the verge of collapse and

---

[5] First Amended Complaint at ¶ 16(d).
[6] First Amended Complaint at ¶ 44.
[7] First Amended Complaint at ¶ 41.
[8] First Amended Complaint at ¶ 45(c). *See* First Amended Complaint at ¶ 56 ("Prior to the block sale, in March of 2004 Grace, in a Form 10-K SEC filing, disclosed that it had a reasonable basis for believing that it could cap its asbestos liability exposure at $1 billion.")
[9] First Amended Complaint at ¶ 53.

that each share of Grace "had a value of $13.79."[10] Additionally, a willing and informed buyer, D.E. Shaw, offered to purchase the Plan's remaining Grace holdings for $3.50 a share. By selling the stock to a sophisticated investor, State Street must have recognized that market participants believed that the stock was not in imminent danger of becoming worthless.[11]

To add insult to injury, State Street appears to have directly benefited through its self-dealing from the sale of Grace from the Plan. At approximately the same time as it was selling the Grace common stock, State Street began to buy Grace common stock. According to an initial Form 13F filed by State Street for period ending June 30, 2004, State Street increased its ownership in Grace by approximately 8 million shares. A year and a half later in October of 2005, after the filing of this action, State Street amended its Form 13F filing and reduced its holdings in Grace to approximately 2 million shares. Nonetheless, aside from the suspicious amendment, State Street still had increased its holdings by almost 1 million shares.[12]

As a practical matter, the liquidation of the Plan's holdings of Grace common stock directly damaged the Plan and its Participants. "Immediately after the liquidation, the value of the Grace stock increased nearly 300% in less than 120 days. By the end of 2004, the stock closed at $13.61."[13] Consistent with Grace's strong core business and its ability to cap its asbestos liability, the stock has continued to climb.

## ARGUMENT

I.   **PLAINTIFFS' FIRST AMENDED COMPLAINT PROPERLY PLEADS CAUSES OF ACTION.**

---

[10] First Amended Complaint at ¶ 54.
[11] *See* First Amended Complaint at ¶ 56 (State Street sold approximately 7 million shares of Grace for $3.50 a share).
[12] First Amended Complaint at ¶ 59.
[13] First Amended Complaint at ¶ 57.

## A.    The record does not support Defendants' primary theories in support of dismissal.

Plaintiffs consistently have sought to hold Grace and State Street accountable for violating their fiduciary duties by selling the Grace common stock held by Participants in the Grace Stock Fund. Defendants seek to escape liability by claiming that Plaintiffs have abandoned this theory and have deceived this Court. Defendants further assert that they are immune from liability because the market price of Grace stock at all times reflects the value of the common stock.

Neither of the reasons justifies dismissal. To the contrary, Plaintiffs amended their complaint in good faith and remained loyal to the fundamental premise of this action— Defendants breached their ERISA fiduciary duty by overriding the Participants' investment choices and selling the Plan's entire holdings of Grace. Additionally, the law provides that Participants in a 404(c) retirement plan are entitled to retain their investment options unless the Plan fiduciaries have clear knowledge that the investment will become worthless. Here, the evidence and allegations are opposite. The Grace Stock Plan was not in imminent danger of losing everything. Instead, the market price actually establishes that Plaintiffs are entitled to judgment as a matter of law because the market reflected a stock that was performing as well if not better than accepted benchmarks.[14]

---

[14] The following chart demonstrates that Grace actually performed as well if not better than the traditional indexes against which stock performance typically is measured.

## B.    Plaintiffs acted in good faith when they amended their complaint and are not estopped from pursuing their claims.

Plaintiffs admit that in earlier proceedings their counsel told the Court that this action, although predicated on the liquidation of the Grace Stock Fund, primarily focused on State Street's "self-dealing".[15] Public filings together with Defendants' documents reveal that Defendants' divestment violated the Participants' right to exercise dominion over their Retirement accounts, prevented Plan Participants from enjoying the stock's rapid appreciation, and violated ERISA's self-dealing prohibitions.

Interestingly, neither the Grace Defendants nor the State Street Defendants argue that Plaintiffs' claim of self-dealing is inconsistent or incompatible with the additional claims that they have included in their First Amended Complaint. Instead, Defendants seek to preclude Plaintiffs from pursuing their amended complaint by contending that Plaintiffs amendment somehow affects the "integrity of the courts" through the improper manipulation of the



http://moneycentral.msn.com/investor/charts/chartdl.aspx?PT5
[15] *See* Transcript of Proceedings (March 2, 2006) at 7:15-8:12 attached to Grace Defendants' Motion to Dismiss.

"machinery of the judicial system."[16] Defendants further assert that Plaintiffs' amendment creates prejudice because the claims were not included at the class certification hearing.[17]

Despite Defendants' assertions, Plaintiffs never played "fast and loose." After the earlier hearings, Plaintiffs continued to investigate this case. Based on Defendants' Answers to Plaintiffs' initial complaint, Defendants obviously recognized that fiduciary issues concerning the appropriateness of their divestment of Grace Stock Plan were in play. Defendants in their answers pled that Plaintiffs' claims are barred by ERISA §404(c), 29 U.S.C. §1104(c).[18] By pleading this affirmative defense, Defendants explicitly acknowledged that this case involves issues related to the discretionary nature of Participants' investments in the Grace Stock Fund. The First Amended Complaint merely identifies the §404(c) issues and places them in the context of ERISA causes of action.

Under these circumstances, Defendants' estoppel arguments lack merit. Although the First Circuit in *Alternative System Concepts, Inc. v. Synopsis, Inc.*[19] held that taking two mutually inconsistent positions justified invoking estoppel, Plaintiffs in this case are not taking mutually inconsistent positions. At the earlier hearing on State Street's motion to dismiss, Plaintiffs stated that the complaint as it was drafted contained a claim for self dealing and that Plaintiffs, at the time of the motion, were not advancing a claim related to the divestment of the stock plan. Plaintiffs never represented that the facts in their complaint did not support additional claims or that they never would seek to amend their complaint to include additional claims based on Defendants' divestment of the Plan's holdings of Grace.

---

[16] *See* Grace Defendants' Motion to Dismiss at 6.
[17] *See* Grace Defendants' Motion to Dismiss at 7; State Street Defendants' Motion to Dismiss at 6, fn. 5.
[18] *See* Grace Defendants' Answer to Bunch Complaint (Doc. No. 55, filed 01/24/2006) at 13, Fifteenth Affirmative Defense, State Street Defendants' Answer to Bunch Complaint (Doc. No. 87, filed 04/17/2006) at 17, Twelfth Affirmative Defense.
[19] 374 F.3d 22 (1st Cir. 2004).

This case, therefore, materially differs from the cases that Defendants' principally rely. This case is more like *Fieldwork Boston, Inc. v. United States*.[20] In *Fieldwork*, the court refused to apply the Doctrine of Estoppel because the court found that the positions advanced by the United States were not totally inconsistent.[21] In *Fieldwork*, the court explained that totally inconsistent means "directly contradicting."[22] Here, the statements made at the hearing on the motion to dismiss are not directly contradicting the allegations in the First Amended Complaint.

Additionally, Defendants have failed to identify any meaningful unfair advantage that Plaintiffs have secured. All of the Defendants have suggested that Plaintiffs have prejudiced their rights because the Court has heard argument on class certification and that the argument was based on the original complaint.[23]

Simply hearing a class certification argument based on an earlier complaint does not rise to a level of prejudice or unfair advantage necessary to invoke estoppel. First, Defendants are not prejudiced because the Court has yet to issue its class certification order. Second, Plaintiffs' amended complaint continues to include the claims of self-dealing that the parties discussed at the hearing. Third, although Plaintiffs do not believe that the Court should convene a new class certification hearing, if the Court believes that that the filing of an amended complaint entitles Defendants to an additional class certification hearing, Plaintiffs, of course, will follow the court's directions.

**C.    Plaintiffs provided sufficient specificity in their Amended Complaint.**

**1.    Plaintiffs adequately identified the roles of each individual Grace defendant and linked the defendants' roles to their injuries.**

---

[20] 344 F. Supp.2d 257 (D. Mass. 2004).
[21] 344 F. Supp.2d at 268.
[22] 344 F.Supp.2d at 268.
[23] *See* Grace Defendants' Motion to Dismiss at 7; State Street Defendants' Motion to Dismiss at 6, fn. 5.

In their Amended Complaint, Plaintiffs named several individual Defendants and claimed that each individual Defendant "**exercised discretionary authority or control** with respect to the **management of Plan** authority or control **respecting the disposition of its assets** and **is a fiduciary** to the Plan under the terms of ERISA."[24] (Emphasis added.) Thus, Plaintiffs have identified individual Grace Defendants and alleged that the defendants had authority concerning the disposition of the Plan's assets. Defendants' cannot dispute that Plaintiffs claim that the unlawful disposition of the Plan's assets forms the subject matter of this case. These allegations, therefore, identify the individual Defendants' duties and the fact that the Defendants breached their duties with respect to an area under their control. The Grace Defendants, moreover, have admitted that the Defendant Investment and Benefits Committee "was charged with certain defined fiduciary duties under the Plan relating to the investment of Plan assets…"[25] Plaintiffs certainly have pled sufficient facts that connect the violation of specific fiduciary duties to the injuries for which Plaintiffs seek compensation.

### 2.     Plaintiffs adequately pled that the Grace Defendants sold the Plan's assets.

Plaintiffs, in their Amended Complaint, allege that the Grace Defendants "delegated the duty to manage the Plan's assets to State Street…"[26] Plaintiffs also allege that Grace sought to justify State Street's inevitable sale of the Plan's investment in Grace…"[27] Plaintiffs further claim that "State Street with the approval of Grace, violated the express purpose of the Plan and sold the Plan's remaining holdings in Grace at a grossly discounted price…"[28] Plaintiffs also describe Grace's role in the sale of the Plan's Grace holdings as follows: "By January of 2004,

---

[24] First Amended Complaint at ¶¶ 19-27.
[25] Grace Answer to Complaint at ¶ 25 (Doc. No. 55, Filed 01/24/2006).
[26] First Amended Complaint at ¶ 43.
[27] First Amended Complaint at ¶ 45.
[28] First Amended Complaint at ¶ 56.

Grace sought to delegate responsibility for management of the Plan's assets to State Street. Although Grace claims to have delegated responsibilities to State Street, Grace continued to owe a fiduciary duty to Plan participants and continued to exercise control over certain aspects of the Plan."[29] These allegations clearly establish a valid claim that Grace is liable for the unlawful sale of the Participants' investment in Grace.

### 3. Plaintiffs adequately have pled a claim for the Grace Defendants' failure to monitor.

Plaintiffs allege that the Grace Defendants had prior knowledge that State Street would liquidate the Grace Stock Plan and that the sale was not prudent.[30]   Despite this knowledge, Grace failed to take any action. These allegations sufficiently allege a claim for failing to monitor.

Courts that have addressed similar situations involving the attempted delegation of fiduciary duty have held that an ERISA fiduciary has a continuing obligation to monitor or supervise tasks delegated to another person or entity. In *Jackson v. Truck Drivers' Union Local 42*,[31] a medical plan ERISA fiduciary sought to delegate administrative functions to another party. The administrator of the health and welfare fund subsequently denied medical benefits. A plan participant pursued an ERISA claim against the fund, the trustees, and the transferee trust. In particular, the plaintiff alleged that the Plan Trustees' failed to monitor the people to whom it had delegated fiduciary responsibilities.

In *Jackson*, the court concluded that the delegation of fiduciary responsibilities does not immunize an ERISA fiduciary from liability. To the contrary, an ERISA fiduciary retains the obligation to monitor and prevent the delegated fiduciary from injuring plan participants.

---

[29] First Amended Complaint at ¶ 96.
[30] First Amended Complaint at ¶¶ 97 and 98.
[31] 933 F.Supp. 1124 (D. Mass. 1996).

According to the *Jackson* court, "Notwithstanding a proper delegation of fiduciary duties, therefore, a delegating fiduciary retains an obligation to oversee and monitor the activities of his delegate."[32] Indeed, prior to holding that a fiduciary has a duty to monitor, the *Jackson* court held that a "fiduciary can be held liable for the acts or omissions of his delegate, if *inter alia*, 'he has knowledge of a breach by such other fiduciary [or delegate], unless he makes reasonable efforts under the circumstances to remedy the breach.'"[33]

Similarly, the Northern District of Georgia in *Woods v. Southern Co.*[34] also held that a fiduciary has a duty to monitor other fiduciaries to whom the fiduciary has delegated responsibility. The court in *Woods* concluded that Plaintiffs had met their burden and emphasized the duty of fiduciaries to monitor the activities of people to whom the fiduciary has delegated authority. The court emphasized that this principal is settled.[35] The court's analysis, moreover, is consistent with the analysis of other courts. "[C]ourts have widely held that an appointing fiduciary has an ongoing duty to monitor its fiduciary appointees."[36] Plaintiffs, therefore, certainly have alleged sufficient facts to establish that Grace is liable for failing to monitor State Street.

### 4.    Plaintiffs have alleged a viable claim for the Grace Defendants' co-fiduciary liability.

The Grace Defendants primarily seek to avoid co-fiduciary liability by focusing only on Plaintiffs' claims related to self-dealing and ignoring Plaintiffs' allegations that Grace closed

---

[32] 933 F.Supp. at 1141.
[33] 933 F.Supp. at 1141.
[34] 396 F.Supp.2d 1351 (N.D. Ga. 2005).
[35] 396 F.Supp.2d at 1373.
[36] *In re Sprint Corporation ERISA Litigation*, 388 F.Supp.2d 1207, 1231-32 (D. Kan. 2004). *See* 29 C.F.R. § 2509 .75-8, FR-17 (the duty to monitor requires that:
> [a]t reasonable intervals the performance of ⋯ fiduciaries should be reviewed by the appointing fiduciary in such a manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan.)

its eyes to State Street's inevitable divestment of Plaintiffs' Grace stock. According to Grace, "there is no claim anywhere in the Amended Complaint that the Grace Defendants allegedly engaged in self dealing when it sold the Plan's Grace stock."[37] Of course, relying only on a single claim does not permit Grace to avoid co-fiduciary liability.

The United States Court of Appeals for the First Circuit succinctly articulated when co-fiduciary liability exists.[38] According to the First Circuit, Grace is liable if State Street violated its fiduciary duty in any of the following circumstances:

> ERISA renders a fiduciary vulnerable to liability for breaches committed by other fiduciaries in three situations:
>
> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
>
> (2) if, by his failure to comply with ⋯ the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.[39]

In this case, the Amended Complaint makes sufficient allegations to permit the Court to hold Grace liable. Aside from self-dealing, the Grace Defendants participated in State Street's violations when it failed to take any action after learning that State Street intended to divest the Plan of its holdings in Grace. In addition, Plaintiffs allege that Grace failed to transfer material financial information to State Street.[40]

In *Woods v. Southern Co.*,[41] a United States District Court denied a motion, similar to the pending motion, to dismiss. In *Woods*, a plaintiff brought a class action alleging that Plan

---

[37] Grace Defendants' Memorandum in Support of Motion to Dismiss at 15.
[38] See *Beddall v. State Street Bank and Trust Co.* 137 F.3d 12, 23 (1st Cir. 1998).
[39] 137 F.3d at 23.
[40] First Amended Complaint at ¶104.
[41] 396 F.Supp.2d 1351 (N.D. Ga. 2005).

fiduciaries violated their duties regarding investments. The Plaintiff also alleged that the Plan fiduciaries violated ERISA by failing to monitor appointees and also were subject to ERISA co-fiduciary liability. Defendants sought to dismiss the complaint.

The court in *Woods* concluded that Plaintiffs had met their burden and emphasized that Plaintiffs properly pled a breach of co-fiduciary duty when they pled prior knowledge of the breach.

> Plaintiff has detailed Defendants' alleged fiduciary breaches, and has alleged their knowledge of other fiduciaries' unlawful acts along with facts (including, at the most basic level, knowledge that the enduring investment in Mirant was extremely ill-advised) that would tend to support such an averment...No more is required of them to survive a motion.[42]

Similar to the Plaintiff in *Woods*, the Bunch Plaintiffs have satisfied their pleading burden. Plaintiffs claim that Grace had knowledge of State Streets' pending sale of stock but failed to take any corrective action. Additionally, Grace took action to prevent Plan Participants from discovering the truth. Grace simply washed its hands of any responsibility to the Plan Participants and walked away – violating its obligations under ERISA to the Plan Participants. Accordingly, Grace is liable under ERISA for failure to monitor and under theories of co-fiduciary liability.

### 5.    Plaintiffs have alleged a viable claim for misrepresentation.

The Grace Defendants choose to ignore significant portions of Plaintiffs' Amended Complaint. The Amended Complaint provides a roadmap of Grace's unlawful conduct. Plaintiffs' misrepresentation claim is just a single example of the Grace Defendants running from the truth.

---

[42] 396 F.Supp.2d at 1379.

In the Amended Complaint, Plaintiffs describes several detailed examples of Grace's misrepresentations. Grace, however, in its motion does not discuss any of the examples. The examples include false statements concerning the volatile and risky nature of owning Grace stock.[43] Plaintiffs also allege that State Street with Grace's assistance omitted information and made misrepresentations to make certain that Plan Participants "remained powerless to understand the reasons for the sale, to understand their rights, and to block the effect of the transfer of management even though all of the money belonged to the participants."[44] Additionally, Grace misrepresented the ability of Plan Participants to control their investment accounts.[45]

Each named Grace Defendant bears responsibility for the misrepresentations and omissions. Plaintiffs allege that each Defendant exercised control over the Plan. Accordingly, each Defendant failed to correct the misrepresentations or omissions or each Defendant ratified the offending conduct. In either event, each Defendant bears legal responsibility.

### 6.    Plaintiffs have alleged a viable claim for Promissory Estoppel.

The Grace Defendants challenge Plaintiffs' promissory estoppel claim by arguing that ERISA preempts the claim. Defendants do not challenge whether Plaintiffs Amended Complaint satisfies the necessary elements to make a claim for promissory estoppel. The problem with Defendants' argument, however, is that Defendants fail to understand that many courts have found that ERISA includes a claim for promissory estoppel.[46] Thus, the Court does not need to

---

[43] First Amended Complaint at ¶ 45.

[44] First Amended Complaint at ¶ 49.

[45] First Amended Complaint at ¶ 115. *See* First Amended Complaint at ¶ 37, First Amended Complaint at ¶ 40.

[46]    *See Schonholz v. Long Island Jewish Medical Center*, 87 F. 3d 72, 78 (2nd Cir. 1996) ("We have previously held that the principles of estoppel can apply in ERISA cases under extraordinary circumstances."). *See also Chambless v. Masters, Mates & Pilots Pension Plan*, 772 F.2d 1032, 1039 (2d Cir.1985), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1189, 89 L.Ed.2d 304 (1986);*Gridley v. Cleveland Pneumatic Co.*, 924 F.2d 1310, 1318-19 (3d Cir.) (claim for equitable estoppel available under § 502(a)(3) in "extraordinary circumstances"), *cert. denied*, 501 U.S. 1232, 111 S.Ct. 2856, 115 L.Ed.2d 1023 (1991).

address the preemption issue.

**D.** **Defendants by depriving the Participants of their holdings in Grace without evidence that the investment was in imminent danger violated their fiduciary duty.**

Despite recognizing in their answers to Plaintiffs' original complaint that this action involves the Participants' exercise of investment discretion, neither the Grace Defendants nor the State Street Defendants chose to discuss this aspect of Plaintiffs' First Amended Complaint. Defendants' usurpation of the Participants' investment authority, however, represents a significant component of the pending claims. The issue, therefore, is whether Defendants' breached their fiduciary responsibility by interfering, as they admit, with the Participants' right to control their retirement accounts.

This case materially is different from the typical case where Plaintiffs challenge whether plan fiduciaries breached their duty by causing participants to invest in an imprudent investment.[47] Indeed, this case appears to be a case of first impression. Here, Plaintiffs admit that the Grace Stock Plan was a prudent investment. Plaintiffs claim that the forced divestiture of a prudent investment when the Participants had the right and responsibility to control their investments constitutes the breach.

By creating a participant controlled retirement plan, Grace gave Participants and not the plan fiduciaries the authority to decide whether to buy, hold or sell an investment. Under these circumstances, a plan fiduciary only should eliminate an investment option if it has knowledge that the investment is destined to fail. In *Richard Langbecker v. Electronic Data Systems Corp.*,[48] the Fifth Circuit addressed the rights and responsibilities of plan fiduciaries and plan participants in the context of an ERISA 404(c) participant controlled retirement plan.

---

[47] *See e.g., Summers v. State Street*, 453 F.3d 404 (7th Cir. 2006) (Case cited by State Street involving a suit by participants who sued fiduciaries because the fiduciaries **failed to sell company stock**.) (Emphasis added.)
[48] --- F.3d ----, 2007 WL 117465 (5th Cir. January 18, 2007).

In *Langbecker*, plan participants brought, on behalf of their retirement plan, a class action. The participants claimed that the defendant fiduciaries breached their duty by retaining distressed company stock as an investment option in an ERISA 404(c) participant directed plan.

In *Langbecker*, the United States Court of Appeals for the Fifth Circuit reviewed the respective roles of fiduciaries and plan participants and held that plan participants and not plan fiduciaries possesses the ultimate responsibility and duty to determine whether to abandon distressed company stock. The *Langbecker* court understood that plan participants fully are capable of and are expected to make intelligent investment decisions.

> ...§404(c) recognizes that participants are not helpless victims of every error. Participants have access to information about the Plan's investments, pursuant to DOL regulations, and they are furnished with risk-diversified investment options. In some situations, as happened here, many of the Participants will react to the company's bad news by buying *more* of its stock. Other Participants will...trade their way to profit no matter the calamity that befell the stock. Section 404(c) contemplates an individual, transactional defense in these situations, which is another way of saying that in participant-directed plans, the plan sponsor cannot be a guarantor of outcomes for participants.[49]

Based on the ability of plan participants to make informed and reasonable investment decisions, the *Langbecker* Court, reasoned that plan fiduciaries should eliminate company stock as an investment option if the fiduciary knows that the company stock likely will become worthless.

> [T]here is no inconsistency between this harmonization and the courts' decisions **in the Enron and WorldCom cases, because in those cases, where the company's stock value ultimately rested on a financial house of cards,** no trading strategy in the company's stock could have salvaged a participants' company stock ownership.[50] (Emphasis added.)

---

[49] 2007 WL 117465 at *8.
[50] 2007 WL 117465 at *9.

The logic of *Langbecker* applies to this case. Since Grace and State Street, by virtue of ERISA Section 404(c), seek to hold the Plan Participants accountable for the Participants' investment elections, Plan Participants have the right to hold Grace and State Street legally responsible when the fiduciaries interfere with the Participants' prudent investment choice.

Here, the undisputed facts demonstrate that the Grace Stock Plan was not in imminent peril, and a reason did not exist to void the Participants' investment. Unlike Enron and WorldCom, Grace, by its own admission, was experiencing solid operating results. From 2002 until the time of the liquidation, Grace stock performed as well if not better than the market,[51] and informed and educated investors were willing to pay a premium for the stock. Under these circumstances, the facts are painfully obvious that the Participants' investment in Grace was not a "house of cards." Accordingly, the Grace and the State Street Defendants breached their fiduciary duties by intentionally interfering with the investment election made by Plan Participants who selected Grace stock as an investment election. The decision to divest and abandon the Participants' chosen strategy was imprudent.

**E.    The State Street Defendants' remaining arguments do not support dismissal of this action.**

**1.    The Court already rejected State Street's motion to dismiss Plaintiffs' claims of self-dealing.**

In their Amended Complaint, Plaintiffs essentially repled the same allegations that they made in their original complaint concerning self-dealing. Based on those allegations, this Court denied State Street's attempt at dismissal. Accordingly, the Court should deny the motion to dismiss for the second time.

---

[51] *See* n. 14, *Supra.*

2.    **Plaintiffs' allegations that State Street ignored the recommendations of the Independent Fiduciary Group remains valid.**

Defendants do not dispute that the Independent Fiduciary Group recommended that the State Street honor the plan documents. Instead, the Defendants simply seek to challenge the factual accuracy of Plaintiffs' characterization of the recommendation. The importance of the recommendation rests not only on the ultimate decision to liquidate but also focuses on the recognition by State Street that Plan Participants, based on the Plan documents, had the right to manage their own investments. By ultimately overriding this right without a reasonable basis for believing that an investment in Grace was destined to fail, State Street violated its fiduciary obligations. Additionally, the remaining portions of the document that State Street references fails to refute the fact that State Street lacked any basis for believing that Plan Participants would lose their investment in Grace unless State Street immediately liquidated their positions. Of course, at this stage of the litigation, Plaintiffs are entitled to all favorable inferences and, therefore, even if State Street is correct, State Street is not entitled to a dismissal.

3.    **Plaintiffs adequately pled misrepresentation claims against State Street.**

The State Street Defendants always understood that they had an obligation to communicate truthfully with Plan Participants and their failure to communicate in an honest manner would injure the Participants.[52] Plaintiffs allege that the State Street Defendants violated their obligation by failing to inform Participants that State Street was acting as buyer and seller of Grace stock, by discouraging Participants from contacting Grace and, therefore, limiting the ability of Plan Participant to pressure Grace to stop the divestment, and by representing that Grace was an imprudent investment.[53] State Street, of course, had evidence that Grace was not

---

[52] First Amended Complaint at ¶ 47.
[53] First Amended Complaint at ¶ 116.

likely to collapse but instead was likely to increase in value.[54] These facts demonstrate that State Street made these misrepresentations with the intent to manipulate the Plan Participants and to prevent Plan Participants from exercising control over their accounts. By stifling dissent, State Street assisted itself to self-deal. Plaintiffs further allege that the misrepresentations caused injury to the Participants by artificially depressing the price of Grace when State Street divested the Grace Stock Plan. "As a consequence...participants who comprise the Class suffered damages and loss."[55] The First Amended Complaint, therefore, alleges specific misrepresentations that caused foreseeable injury to Plan Participants and satisfies the necessary pleading requirements.

## CONCLUSION

For the reasons contained in this Memorandum, the Court should deny the Motions to Dismiss filed by the Grace Defendants and the State Street Defendants.

---

[54] First Amended Complaint at ¶ ¶ 54-55.
[55] First Amended Complaint at ¶ 119.

Respectfully submitted,

**BERMAN DEVALERIO PEASE TABACCO
BURT & PUCILLO**

*/s/ Jeffrey C. Block*
Jeffrey C. Block
One Liberty Square
Boston, Massachusetts 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194
Email: jblock@bermanesq.com


**WAITE, SCHNEIDER, BAYLESS
& CHESLEY CO., L.P.A.**

*/s/ Jane H. Walker*
James R. Cummins
Jane H. Walker
1513 Fourth & Vine Tower
One West Fourth Street
Cincinnati, Ohio 45202
Telephone: (513) 621-0267
Facsimile: (513) 381-2375
E-mail jcummins@wsbclaw.com
E-mail: janehwalker@wsbclaw.com

*Counsel for Lawrence W. Bunch, Jerry L. Howard, Sr. and
David Mueller, Both Individually and Behalf of All Others
Similarly Situated*

Dated:     February 16, 2007

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KERI EVANS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JOHN F. AKERS, et al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

| | |
|---|---|
| | ) |
| LAWRENCE W. BUNCH, et al. | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| W. R. GRACE & CO., et al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

Consolidated
Case No. 04-11380-WGY

### CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2007, I filed Bunch Plaintiffs' Opposition to the Grace Defendants' and the State Street' Defendants Motions to Dismiss through the ECF system. It was sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies were sent to those indicated as non-registered participants on February 16, 2007.

/s/ Jane H. Walker