**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| KERI EVANS, | |
|         Plaintiff, | |
| v. | Consolidated as: |
| JOHN F. AKERS, *et al.* | Case No. 04-11380-WGY |
|         Defendants. | |
| LAWRENCE W. BUNCH, *et al.* | |
|         Plaintiffs, | |
| v. | |
| W.R. GRACE & CO., *et al.* | |
|         Defendants. | |

**REPLY BRIEF IN SUPPORT OF STATE STREET BANK AND TRUST COMPANY'S**
**MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT............................................ 1

II.   ARGUMENT ............................................................................................................. 2

    A.    The First Cause of Action Does Not State an ERISA Claim Against State
        Street, Because Plaintiffs Attack Settlor, Not Fiduciary, Actions ....................... 2

    B.    The Second Cause of Action, That the Defendants Imprudently Sold the
        Grace Stock for Less than "Reasonable Value," Is Nothing More than an
        Improper Hindsight Attack on the Divestment Decision and is Refuted by
        the Very Documents on which it is Based........................................................... 6

    C.    Plaintiffs' New Self-Dealing Claim (Third Cause of Action) Fails to State
        a Claim Against State Street ............................................................................. 12

    D.    Plaintiffs' "Misrepresentations and Nondisclosures" Claim (Seventh
        Cause of Action) Count Fails to State a Claim or Meet the Requirements
        of Fed. R. Civ. P. 9(b) ..................................................................................... 13

III.  CONCLUSION ...................................................................................................... 14

# TABLE OF AUTHORITIES

## CASES

*Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12 (1st Cir. 1998) ......................... 3

*In re CMS Energy ERISA Litigation*, 312 F. Supp. 2d 898 (E.D. Mich. 2004) .............. 10

*Campbell v. BankBoston, N.A.*, 327 F.3d 1 (1st Cir. 2003) ............................................... 3

*DeMoulis v. Sullivan*, 1993 WL. 81500 (D. Mass. 1993) .................................................. 7

*Degnan v. Publicker Industries, Inc.*, 42 F. Supp. 2d 113 (D. Mass. 1999) ..................... 3

*DiFelice v. Fiduciary Counselors, Inc.*, 398 F. Supp. 2d 453 (E.D. Va. 2005) ................ 8

*DiFelice v. U.S. Airways, Inc.*, 397 F. Supp. 2d 758 (E.D. Va. 2005)............................... 8

*Donovan v. Cunningham*, 716 F.2d 1455 (5th Cir. 1983), *cert. denied,* 467 U.S. 1251 (1984)........................................................................................................... 7

*In re Dynegy, Inc. ERISA Litigation*, 309 F. Supp. 2d 861 (S.D. Tex. 2004) ................... 7

*Franklin v. First Union Corp.*, 84 F. Supp. 2d 720 (E.D. Va. 2000)................................. 4

*Hughes Aircraft Company, et al. v. Jacobsen*, 525 U.S. 432 (1999)................................. 3

*Jorge v. Rumsfeld*, 404 F.3d 556 (1st Cir. 2005) .............................................................. 9

*Koch v. Dwyer*, 1999 WL. 528181 (S.D.N.Y. July 22, 1999).......................................... 9

*Langbecker v. Electronic Data Systems, Corp.*, ___ F.3d ___, Case No. 04-41760, 2007 WL. 117465 (5th Cir. Jan. 18, 2007)............................................................. 5,6

*Lockheed Corp. v. Spink*, 517 U.S. 882 (1996) ............................................................... 3

*Lynch v. J.P. Stevens & Co., Inc.*, 758 F. Supp. 976 (D. N.J. 1991) ................................ 8

*Meyer v. Berkshire Life Insurance Co.*, 250 F. Supp. 2d 544 (D. Md. 2003)................... 7

*Reich v. King*, 861 F. Supp. 379 (D. Md. 1994) ............................................................... 7

*Riccio v. Ford Motor Co.*, 238 F.R.D. 44 (D. Mass 2006) ............................................... 9

*Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915 (8th Cir. 1994) .................................. 7

*Stein v. Smith*, 270 F. Supp. 2d 157 (D. Mass. 2003) ..................................................... 13

*Summers v. State Street*, 453 F.3d 404 (7th Cir. 2006), *cert. denied,* ___ U.S. ___ (2007) ................................................................................................ 9

*Thompson v. Avondale Industries, Inc.*, C.A No. 99-3439, 2003 U.S. Dist. LEXIS 2318 (E.D. La. Feb. 14, 2003) ................................................................ 4

*In re Unisys Sav. Plan Litigation*, 74 F.3d 420 (3rd Cir. 1996) ....................... 7

*Vartanian v. Monsanto Co.*, 131 F.3d 264 (1st Cir. 1997) ............................. 13

## STATUTES

29 U.S.C. § 1102(18) ..................................................................................... 9

29 U.S.C. § 1104(a)(1) ................................................................................... 4

29 U.S.C. § 1104(c)(1)(B) .............................................................................. 5

Fed. R. Civ. P. 9(b) ..................................................................................7,9,13

Final Regulations Regarding Particular Directed Individual Account Plans (ERISA § 404(c) plans) 57 Fed. Reg. 46906 ............................................. 5

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

The Amended Complaint filed by Plaintiffs Lawrence W. Bunch, Jerry L. Howard, Sr., and David Mueller constitutes an improper attempt by Plaintiffs to plead around their own representations to the Court regarding the scope of this action.  More fundamentally, the Amended Complaint fails to state *any* valid claims against Defendants State Street Bank and Trust and State Street Global Advisors (collectively, "State Street") under the Employee Retirement Income Security Act ("ERISA"):

➢    Plaintiffs' First Cause of Action, attacking the Defendants for "drastically and inalterably chang[ing]" the W.R. Grace Savings and Investment Plan  (the "Plan") by depriving plaintiffs of their "right" to invest their retirement savings in Grace stock states no claim against the Defendants under ERISA.  The Plan's terms were amended specifically to authorize the sale of the Plan's Grace stock holdings.  It is settled law that any complaint about the amendment of retirement plan terms is directed to settlor, not fiduciary, functions and states no claim for fiduciary breach under ERISA.  Of course, State Street was not involved in any settlor functions, and there is no allegation to that effect.  Notwithstanding Plaintiffs' attempt in their consolidated Opposition ("Opposition") (Ct. File No. 148) to base a cause of action on the affirmative *defense* provided to fiduciaries under ERISA section 404(c), neither the statute nor this Plan confers any "right" on participants to invest in company stock through a retirement plan.

➢    Plaintiffs' Second Cause of Action, which seeks to base a claim of imprudent investment on the allegation that the Defendants sold the Grace stock for less than adequate value, similarly fails.  The assertion in the Amended Complaint that the Defendants possessed a report establishing a higher value for the Grace stock is false.  The report placed a *lower* valuation on Grace stock than the price at which the stock was sold, and in fact supported State Street's determination to sell the stock at that time.  Plaintiffs' attempt to posit a "hidden value"

-1-

for the Grace stock that was not reflected in its price on the New York Stock Exchange fails because the Amended Complaint points to no *facts* known only to Defendants that, if known to the market, would have resulted in a higher share price for Grace stock. The Opposition certainly offers none. The other documents cited by the Plaintiffs (including the minutes of the initial deliberations of State Street's internal Independent Fiduciary Group) also contradict Plaintiffs' characterizations and establish beyond any dispute that State Street followed a detailed and deliberate process in carrying out its duties as independent investment manager for the Grace Stock Fund. It is this prudent *process* that ERISA requires of plan fiduciaries, and any attempt to attack the *outcome* of such a deliberative decision is "20/20 hindsight" regularly rejected by courts as the basis for an ERISA imprudence claim.

> ➢ Finally, the Opposition fails to address the substance of State Street's arguments that the Amended Complaint's new "self-dealing" claim (Third Cause of Action) and its generalized "misrepresentation" claim against State Street (Seventh Cause of Action) state no valid causes of action under ERISA.

## II.    ARGUMENT

### A.    The First Cause of Action Does Not State an ERISA Claim Against State Street, Because Plaintiffs Attack Settlor, Not Fiduciary, Actions.

The First Cause of Action in the Amended Complaint purports to assert claims of fiduciary breach against State Street and the Grace defendants for allegedly "discontinuing the *right* of participants to use the retirement plan to invest in Grace stock" and "drastically and inalterably chang[ing] the Plan by liquidating the Plan's holdings in Grace stock." Amended Complaint ¶ 68 (emphasis added).

There are two fatal defects in this claim. First, the Plan did not afford Plaintiffs' the "right" to invest in Grace stock. By the time the Grace stock was sold from the Plan, the Plan

had been amended expressly to authorize the Plan's fiduciaries to liquidate the stock should they deem it prudent to do so. *See* Exhibit 1 hereto. (Plan provisions authorizing the suspension of participant trading and the liquidation of company stock from the Grace Stock Fund) (Ct. File No. 53-3 and 53-5).[1]

Plaintiffs' complaint about their "right" to invest in Grace stock does not state a claim against the Plan *fiduciaries* (including State Street) for carrying out the Plan's terms, but rather criticizes the Plan's sponsors (which do not include State Street) for structuring and amending the Plan in this manner. It is well-settled that complaints about the structure, terms or amendment of a retirement plan do not state claims of breach of fiduciary duty under ERISA. *See Hughes Aircraft Company, et al. v. Jacobsen*, 525 U.S. 432, 443 (1999) ("Plan sponsors who alter the terms of a plan do not fall in the category of fiduciaries.") (quotations omitted); *Lockheed Corp. v. Spink,* 517 U.S. 882, 891 (1996) ("[T]he act of amending a pension plan does not trigger ERISA's fiduciary provisions."); *Campbell v. BankBoston, N.A.,* 327 F.3d 1, 6 (1st Cir. 2003) ("The act of amending the terms of a plan is not one to which a fiduciary duty applies."); *see also Degnan v. Publicker Industries, Inc.,* 42 F.Supp.2d 113, 119 (D. Mass. 1999) ("Plaintiff's problem here is that ERISA's definition of a fiduciary . . . does not include the establishment and amendment of benefit plans."). Of course, no such claim can be made against State Street, which exercised no authority to design or amend the terms of the Plan.

Second, Plaintiffs' claimed unfettered "right" to a Grace stock investment option in the Plan finds no support under ERISA. Section 404(a)(1) of ERISA imposes on a fiduciary the obligation to discharge his duties "with the care, skill, prudence, and diligence under the

---

[1] Because the Amended Complaint quotes and links its allegations to the Plan documents, this Court can consider those documents without converting this motion to one for summary judgment. *Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998). The Plan documents are in the Court's record, attached as exhibits to the Amended Complaint filed by plaintiffs Keri Evans and Timothy Whipps. (Ct. File No. 53.).

circumstances that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and aims," including "by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so." 29 U.S.C. § 1104(a)(1)(B)&(C). The Department of Labor has asserted that this provision requires plan fiduciaries, in appropriate cases, to *override* the investment elections of participants and perhaps even express plan terms to divest a retirement plan of its company stock.[2] Plaintiffs attempt to impose exactly the *opposite* requirement under ERISA – that fiduciaries are actually *prohibited* from divesting company stock in most circumstances. State Street is aware of no case that has so held, and Plaintiffs cite none. In fact, several courts have flatly rejected this type of claim. For example, in *Franklin v. First Union Corp.,* 84 F. Supp. 2d 720 (E.D. Va. 2000) participants in a 401(k) plan alleged that defendants breached ERISA fiduciary duties by amending the retirement plan to change the available investment options and transferring participants' accounts into new investment vehicles. On cross motions for summary judgment, the district court rejected the participants' claim, holding that, under ERISA, "the plan fiduciary has the responsibility for selecting investment alternatives and, by definition, has authority to remove alternatives." 84 F. Supp. 2d at 732. The court then granted summary judgment for the defendants, stating, "Plaintiffs do not have a vested right to their past investment choices under the Signet Plan that could not be overridden by a valid plan amendment." *Id.* at 733.[3] This reasoning applies here, and the Court should dismiss the First Cause of Action for failure to state a claim under ERISA.

---

[2] *See* Amended Brief of the Secretary of Labor as Amicus Curiae Opposing the Motion to Dismiss, *In re: Enron Corp., Securities, Derivative & ERISA Litigation (Tittle v. Enron Corp.)*, C.A. H-01-3913 (S.D. Tex. Aug. 30, 2002). The Secretary of Labor's *amicus* brief was attached to State Street's initial motion to dismiss. Ct. File No. 56.

[3] *See also Thompson v. Avondale Industries, Inc.*, C.A No. 99-3439, 2003 U.S. Dist. LEXIS 2318 at *34 (E.D. La. Feb. 14, 2003) (rejecting claim that defendants breached their fiduciary

Plaintiffs' invocation, in their Opposition, of ERISA section 404(c) does not cure this defect in their claim.  That provision provides a *defense* against some claims of fiduciary breach, stating that fiduciaries shall not be liable "for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control."  29 U.S.C. § 1104(c)(1)(B).  This provision does not purport to address whether the sponsors in designing a plan, or the fiduciaries in selecting the menu of investments available to participants under the Plan, must maintain an "employer stock" option under all circumstances.  Indeed, it is the position of the Department of Labor that Section 404(c) does not override Section 404(a)'s requirement that fiduciaries are liable for prudently selecting and maintaining the investment options available to participants in the plan:  "[T]he act of limiting or designating investment options which are intended to constitute all or part . . . of an ERISA § 404(c) plan is a fiduciary function which . . . is not a direct or necessary result of any participant's direction of such plan."  Final Regulations Regarding Particular Directed Individual Account Plans (ERISA § 404(c) plans) 57 Fed. Reg. 46906, 46924-225, n.27 (General Preamble, n.27).

In their Opposition, Plaintiffs cite *Langbecker v. Electronic Data Systems, Corp.*, ___ F.3d ___, Case No. 04-41760, 2007 WL 117465 (5th Cir. Jan. 18, 2007) to support their assertion that Section 404(c) bars fiduciaries from "interfering" with the investment elections of plan participants.  The case says no such thing.  In *Langbecker* the Fifth Circuit explicitly noted that "we are not holding that a plan fiduciary's duties do not include the selection and monitoring of plan investment alternatives."  *Id.* at *8.  In that case, the issue was whether, by virtue of Section 404(c), certification of a class action was inappropriate because assessment of the claimed damages suffered by each purported class member from alleged fiduciary breaches

---

duties by selling company stock out of an Employee Stock Ownership Plan and holding that "contrary to Plaintiffs' assertions, neither ERISA nor the Plan required the Committee to have a 'compelling reason' to sell Avondale stock.").

would require "thousands of mini-trials" based on each participant's investment decision. The Fifth Circuit affirmed the district court's denial of class certification, holding that "Section 404(c) contemplates an individual transactional defense in these situations, which is another way of saying that in participant-directed plans, the plan sponsor cannot be a guarantor of outcomes for participants." *Id.* Whatever might be the impact of *Langbecker* on certification of a class in this action, the case does not stand for the proposition that the "transactional defense" in Section 404(c) confers on plan participants a "right" to invest in company stock.

At the end of the day, Plaintiffs are reduced to the argument that the defendants should be held liable under ERISA for selling the Grace stock from the Plan without knowledge that the stock was in danger of imminent collapse. *See* Opposition at 16. This, of course, is just another way of alleging that the sale was not prudent under ERISA. *See id.* at 18 ("The decision to divest and abandon the Participants' chosen strategy was imprudent."). This claim thus merges with the Amended Complaint's Second Cause of Action for imprudent divestment. It states no separate claim under ERISA.

**B.    The Second Cause of Action, That the Defendants Imprudently Sold the Grace Stock for Less than "Reasonable Value," Is Nothing More than an Improper Hindsight Attack on the Divestment Decision and is Refuted by the Very Documents on which it is Based.**

Plaintiffs' imprudence claim, premised on allegations that the Grace Stock was sold for an "unreasonably low price," also fails for at least two reasons. First, it improperly attacks the divestment decision, not for lack of a prudent process, but rather because it resulted in the sale of a volatile asset that subsequently increased in value. This is classic "20/20 hindsight" of the sort that courts evaluating ERISA imprudence claims have repeatedly rejected. Second, in an attempt to manufacture a claim of fiduciary breach, plaintiffs allege a species of "fraud on the market" whereby which State Street sold an asset that it "knew" to be grossly undervalued in order to

derive some unspecified benefit for other accounts under its management.  Plaintiffs' allegations

of fraud do not come close to meeting the pleading requirements of Fed. R. Civ. P. 9(b).  They

fail to specify any benefit State Street might have derived from the alleged conduct.  The three

documents cited as "support" for the claim *contradict* the claims.  The documents demonstrate

that, at the time, the Grace stock was a volatile investment, with a broad range of potential future

valuations, dependent on facts unknown and unknowable.  Absolutely nothing alleged in the

Amended Complaint states a claim of imprudence under ERISA, and the Second Cause of

Action must be dismissed.

### 1.    ERISA Prudence is Judged Based on the Process and Methods Undertaken to Reach an Investment Decision, Not on the Outcome.

ERISA's prudence standard is an objective one, and when applied to investment

decisions requires the fiduciary to "(1) employ proper methods to investigate, evaluate and

structure the investment; (2) act in a manner as would others who have a capacity and familiarity

with such matters; and (3) exercise independent judgment when making investment decisions."

*Meyer v. Berkshire Life Ins. Co.*, 250 F. Supp. 2d 544, 564 (D. Md. 2003) (quoting *Reich v.

King*, 861 F.Supp. 379, 384 (D. Md. 1994)).  Thus, attacks on the prudence of a fiduciary's

decision to divest a plan of an asset must be based on the quality of the inquiry undertaken to

reach that decision, and not whether, in hindsight, the decision resulted in a gain or a loss for the

plan.  *DeMoulis v. Sullivan*, 1993 WL 81500, *1 (D. Mass. 1993) (court looks to the conduct of

the fiduciary, not the success or failure of the investment decision).[4]

The Amended Complaint is devoid of any allegations that the process or methodology

undertaken by State Street was inadequate under ERISA.  Indeed, the documents cited in the

---

[4] *See also In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 434 (3rd Cir. 1996); *Donovan v.
Cunningham*, 716 F.2d 1455, 1467 (5th Cir. 1983), *cert. denied,* 467 U.S. 1251 (1984); *Roth v.
Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 817-18 (8th Cir. 1994); *In re Dynegy, Inc. ERISA
Litig.*, 309 F. Supp. 2d 861, 875 (S.D. Tex. 2004).

Amended Complaint reveal a careful process, in which State Street established an Independent

Fiduciary Group ("IFG") to evaluate the Grace Stock investment, retained an independent

valuation expert (Duff & Phelps) to review public information about Grace and produce a

valuation report for the IFG, and conducted careful deliberations before deciding to divest.

Courts do not hesitate to dismiss ERISA imprudence claims that fail to specify how the process

undertaken by the fiduciary fell short of the statute's "reasonable man" standard.  *See Lynch v.*

*J.P. Stevens & Co.*, Inc., 758 F. Supp. 976, 1013 (D. N.J. 1991) (dismissing as "vague" an

allegation that an investment was "speculative" and thus "improper"); *DiFelice v. Fiduciary*

*Counselors, Inc.*, 398 F. Supp. 2d 453, 469 (E.D. Va. 2005) (dismissing an ERISA imprudence

action for failure to state a claim where fiduciary's conduct was "well within the range of

prudent conduct expected of a fiduciary" based on facts reflected in the complaint).

Thus, the appropriate focus for determining whether State Street has met ERISA's

standard of prudence has nothing to do with whether the investment decision turned out to be

"correct" or the most profitable for the plan with the benefit of hindsight.  As the U.S. District

Court for the Eastern District of Virginia held in *DiFelice v. U.S. Airways, Inc.*, 397 F. Supp. 2d

758 (E.D. Va. 2005), "ERISA fiduciaries with responsibility for selecting and terminating plan

investment options for plan participants are required to exercise investment judgment in the

context of a constantly changing, complex financial markets.  In doing so, these fiduciaries are

entitled to substantial latitude and their judgments must not be assessed using 20/20 hindsight" in

an action for breach of fiduciary duty.  397 F.Supp.2d at 773.

**2.    Plaintiffs' Vague Claim That State Street Deliberately Sold The Grace Stock for Less than its "Reasonable Value" is Not Adequately Pled and is Directly Contradicted by the Documents on Which it is Based.**

Plaintiffs have attempted to construct a theory, based on certain documents, that State

Street "knew" that the market price for Grace stock was too low at the time State Street divested

-8-

that stock from the Plan. However, as explained in State Street's opening brief, this theory is directly contradicted by the documents upon which Plaintiffs rely. This Court can and should dismiss these allegations. *See Jorge v. Rumsfeld,* 404 F.3d 556, 559 (1st Cir. 2005) (affirming dismissal of claim where documents relied upon in complaint contradict plaintiffs' characterization of facts); *Riccio v. Ford Motor Co.,* 238 F.R.D. 44, 46-47 (D. Mass 2006) (dismissing a claim based on an allegation contradicted by document attached to complaint) ("[t]he court will exempt those 'facts' which have since been conclusively contradicted by plaintiffs' concession or otherwise") (internal citations omitted).

As an initial matter, these claims, premised on an alleged deliberate scheme by State Street to benefit in some unspecified way from the sale of undervalued securities, sound in fraud and must be pled with specificity under Fed. R. Civ. P. 9(b). *See, e.g., Koch v. Dwyer,* 1999 WL 528181 at *6 (S.D.N.Y. July 22, 1999) (claim alleging that fiduciaries acted to conceal fiduciary breaches and used fraudulently inflated numbers to value company stock contributed to the plan sounded in fraud and was subject to Rule 9(b) standards). Plaintiffs in their Opposition do not mention, much less address, this requirement. The Amended Complaint offers no coherent, specific allegations that the Grace stock was undervalued by the public markets, or that State Street or Grace were in possession of any material nonpublic information. Without any support for their "less than reasonable value" allegations, Plaintiffs' imprudence claims fail. As Judge Posner held in *Summers v. State Street,* 453 F.3d 404, 408 (7th Cir. 2006), *cert. denied,* ___ U.S. ___ (2007), an ERISA fiduciary is entitled to consider the New York Stock Exchange price for a stock as the "best estimate" of its value. Indeed, "it would be *hubris* for State Street to think it could predict [a public company's] future more accurately than the market could." *Id.*[5]

---

[5] ERISA specifically provides that "adequate consideration," when ascertaining whether securities held by the plan have been sold to a party-in-interest for an appropriate value, means

Perhaps more importantly, Plaintiffs' entire claim that the public markets were undervaluing Grace's stock is premised on a pure fiction -- that Duff & Phelps, State Street's independent valuation experts, "concluded that each share of Grace had a value of $13.79." Amended Complaint ¶ 54. State Street addressed in its opening brief how that assertion flatly mischaracterizes the excerpt of the Duff & Phelps report (as well as Grace's public 10-K filings) on which Plaintiffs' rely.[6] But Plaintiffs' mischaracterization of the Duff & Phelps report is so great, and the effects on the Amended Complaint of the true implications of that report are so substantial, that State Street has attached to this reply, as Exhibit 2, a complete copy of the document excerpted by the Plaintiffs.[7] What the document clearly shows, at page 30 and reproduced here, is that Duff & Phelps actually valued shares of Grace Stock at a *high* of $1.65 and a *low* of $ - 0.64 per share:

---

"the price of the security prevailing on a national securities exchange which is registered under section 6 of the Securities Exchange Act of 1934." 29 U.S.C. § 1102(18). The New York Stock Exchange ("NYSE") is such a "national securities exchange." *In re CMS Energy ERISA Litigation*, 312 F.Supp.2d 898, 917 (E.D. Mich. 2004) (dismissing a complaint in part because the price set by the NYSE was "adequate consideration" pursuant to 29 U.S.C. § 1102(18)).

[6] *See* Memorandum in Support of State Street Bank & Trust Company's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint at 8-13, *and see particularly id.* at 12 n.9.

[7] Plaintiffs have possessed a copy of the full report since as early as July of 2006.

| W.R. Grace & Company Equity Valuation Summary ($millions) | | | |
|---|---|---|---|
| | Market Value | | |
| | Low | Midpoint | High |
| Enterprise Value | $1,800 | $1,875 | $1,950 |
| Plus: Cash | 300 | 300 | 300 |
| Plus: Sealed Air and Fresenius Settlement Proceeds | 891 | 891 | 891 |
| Plus: Asbestos Insurance Receivable | 272 | 272 | 272 |
| Less: Asbestos Liabilities | 1,871 | 1,871 | 1,871 |
| Less: Debt, Pre-petition, Plus Accrued Interest | 548 | 548 | 548 |
| Less: Income Taxes | 238 | 238 | 238 |
| Less: Environmental Remediation[1] | 284 | 284 | 284 |
| Less: Post-retirement Benefits Other than Pension | 139 | 139 | 139 |
| Less: Special Pension Arrangements | 77 | 77 | 77 |
| Less: Retained Obligations of Divested Businesses | 58 | 58 | 58 |
| Less: Future Bankruptcy Costs[2] | 90 | 90 | 90 |
| Equity Value | ($42) | $33 | $108 |
| Common Shares Outstanding (millions) | 65.56 | 65.56 | 65.56 |
| Value per Share | ($0.64) | $0.50 | $1.65 |

Notes:
1) Environmental remediation costs are estimated to be $40 million higher than Company's provision for the liability on the 9/30/03 balance sheet.
2) Bankruptcy costs are estimated to be approximately $2 million for one quarter (equivalent to the expenses during the third quarter of 2003) and $8 million per quarter for the remainder of the assumed 3-year bankruptcy period.

The $13.79 number cited by Plaintiffs appears at page 36 of the document in a section entitled "Sensitivity of Equity Value per Share to Asbestos Liabilities." *Id.* at 36. That analysis showed that Grace's *future* share price could swing from low teens to *negative* based on the "ultimate liability" that Grace experiences from asbestos claims – something that was *unknown* and *unknowable* at the time. In other words, the document relied upon by Plaintiffs for their imprudence claims proves precisely the *opposite* point: that State Street engaged an independent financial expert to conduct a careful evaluation of the Grace stock, and that expert reached the same conclusion as did the market: that Grace stock at the time was a volatile asset with a largely unpredictable future value.[8]   Regardless of whether or not the stock price increased after

---

[8] Plaintiffs' carefully-worded "response" to State Street's Motion for Judicial Notice (Ct. File No. 149-1) and the Declaration of Frank C. Torchio ("Torchio Decl.") filed in support of it (Ct. File No. 149-2) actually *support* this point fully.  Mr. Torchio opines that Grace stock was trading on the NYSE "more like an option."  Torchio Decl. ¶ 24.  In other words, the open market had efficiently built into the price the information, reflected in Grace's SEC filings, that Grace's future asbestos liability exposure remained unknown.  Further, the logic of plaintiffs' central theme -- that Grace's stock was undervalued because the market did not know the "fact"

its sale from the Plan, State Street's decision to sell the Grace stock certainly comported with the duty of prudence here. The Second Cause of Action, premised entirely on a flat mischaracterization of the documents, must be dismissed.[9]

**C.      Plaintiffs' New Self-Dealing Claim (Third Cause of Action) Fails to State a Claim Against State Street.**

In the Opposition, Plaintiffs seek to avoid this Court's examination of their Third Cause of Action by asserting that they have "essentially repled the same allegations that they made in their original complaint concerning self-dealing." Opposition at 18. This is simply not correct. Most significantly, the Amended Complaint no longer alleges that State Street sold the shares of Grace stock held in the Plan to itself or "an affiliate."[10] Instead, the Amended Complaint alleges that State Street had "an inherent conflict of interest" because while it was recommending divesture of the Grace stock from the Plan, "State Street dramatically changed the amount of Grace stock that it held in its accounts." Amended *Bunch* Complaint, ¶ 85; *see also* Amended *Bunch* Complaint, ¶ 87 ("At the same time as it was selling Grace stock, State Street and/or companies and entities affiliated with State Street began to acquire a significant position in Grace stock."). Thus, the *Bunch* plaintiffs' new self-dealing claim is not that State Street violated

_____

that "better times" lay ahead for Grace -- presupposes some degree of market efficiency. Mr. Torchio's declaration, which adds nothing to Plaintiffs' allegations, has no place in the Court's consideration of State Street's motion to dismiss and should be disregarded.

[9] Plaintiffs' attempt (Opposition at 19) to salvage their allegation that State Street "ignored the recommendation" of the IFG simply makes no sense. As State Street explained in its opening memorandum, Plaintiffs' allegation is directly refuted by the document they cite, which makes clear that the IFG was merely recommending, in the opening days of State Street's engagement, that the stock not be sold *pending further review* by the IFG of the stock, including the Duff & Phelps analysis.

[10] The Plaintiffs originally alleged, that the Defendants "transferred all management of the Grace Stock Fund to State Street, whereafter upon information and belief, the stock was sold not to a disinterested third party but rather to State Street or an affiliate." Original Complaint ¶ 58 (Ct. File No. 1). *See also* Original Complaint at 16 ("A short time later, however, through a related party transaction, State Street or State Street Global or an affiliate became the owner of millions of shares of Grace stock.").

ERISA by actually buying the Grace stock that was *in the* Plan, but that State Street violated

ERISA by having accounts under its management buy Grace stock on the open market. Of

course, this is a very different claim, and, for the reasons detailed in State Street's opening

memorandum (and entirely unrebutted by Plaintiffs in their Opposition) it finds absolutely no

support in ERISA. In addition, Plaintiffs fail to allege self-dealing because they do not identify

what it was – whether an "opportunity" belonging to the Plan or any material, nonpublic

information regarding Grace – that State Street allegedly exploited for its benefit. Plaintiffs'

conclusory allegations relating to the "hidden value" should not be permitted to survive. This

claim must be dismissed.

### D.     Plaintiffs' "Misrepresentations and Nondisclosures" Claim (Seventh Cause of Action) Count Fails to State a Claim or Meet the Requirements of Fed. R. Civ. P. 9(b).

Plaintiffs' Opposition merely restates the same generalized allegations recounted in the

Amended Complaint, which fail to state a claims or comport with the requirements of Fed. R.

Civ. P. 9(b). As State Street noted in its opening memorandum, Plaintiffs' "misrepresentation"

claims simply restate their defective claims as alleged "nondisclosures." Plaintiffs also fail to

allege how these purported "nondisclosures" adversely affected any *investment decisions* by the

participants. *Stein v. Smith*, 270 F. Supp 2d 157, 173 (D. Mass. 2003) (To plead a cognizable

claim for misrepresentation or nondisclosure under ERISA, the Plaintiffs must credibly allege

that State Street, acting in its fiduciary capacity, failed to "fully inform employees . . . of facts

[they] knew or should have known, and *which could have been material to the Plan participants*

*making investment decisions.*") (emphasis added); *see also Vartanian v. Monsanto Co.*, 131 F.3d

264, 270-71 (1st Cir. 1997). Here, State Street exercised its fiduciary responsibility by selling

the Grace stock in the Plan. Thus, even if State Street had failed to make any required disclosure

to the participants (the Amended Complaint identifies no such required disclosure), the Plaintiffs

-13-

nowhere explain how this failure would have had any effect on the participant's accounts. For these reasons Plaintiffs' misrepresentation claims must fail.

III. **CONCLUSION**

For the foregoing reasons, State Street respectfully requests that this Court grant its motion to dismiss with prejudice all claims against State Street in the Amended Complaint.

Dated: February 23, 2007          Respectfully submitted,

                                 STATE STREET BANK AND TRUST COMPANY

                                 By its counsel,


                                     /s/ Sean T. Carnathan
                                 Sean T. Carnathan (BBO #636889)
                                 (scarnathan@ocmlaw.net)
                                 O'CONNOR, CARNATHAN, MACK LLC
                                 8 New England Executive Park, Suite 310
                                 Burlington, MA 01803
                                 Telephone: (781) 359-9000
                                 Facsimile: (781) 359-9001

                                 -and-

                                 Scott M. Flicker
                                 (scottflicker@paulhastings.com)
                                 PAUL, HASTINGS, JANOFSKY & WALKER LLP
                                 875 15th Street, NW
                                 Washington, DC 20005
                                 Telephone: (202) 551-1700
                                 Facsimile: (202) 551-1705

-14-

## <u>CERTIFICATE OF SERVICE</u>

   I here certify that this Motion and the documents filed in support of it through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 23, 2006.

  __February 23, 2006_____     __/s/ Sean T. Carnathan_____
Date               Sean T. Carnathan