# UNPUBLISHED AUTHORITY

Westlaw.

Not Reported in F.Supp.                                                    Page 1

Not Reported in F.Supp., 1993 WL 81500 (D.Mass.)
**(Cite as: Not Reported in F.Supp.)**

C
Briefs and Other Related Documents
DeMoulis v. SullivanD.Mass.,1993.Only the
Westlaw citation is currently available.
United States District Court, D. Massachusetts.
Evanthea DEMOULIS; Fotene Demoulis; Evan G.
Demoulas; Diana Merriam; Arthur S. Demoulas;
and Lynn Martin, Secretary of the United States
Department of Labor
v.
D. Harold SULLIVAN; Telemachus A. Demoulas;
Arthur T. Demoulas; and the Demoulas Profit
Sharing Plan and Trust
**Civ. A. No. 91-12533-Z.**

Feb. 26, 1993.

Kevin J. O'Dea, Boston, MA, J.A. Galbraith,
Williams & Connolly, Washington, DC, Margaret
H. Raymond, U.S. Dept. of Labor, Boston, MA, for
plaintiffs.
Jeffrey B. Rudman, James D. St. Clair, Ann K.
Bernhardt, Hale & Dorr, Michael S. Gardener,
Jerome Gotkin, Nancy L. Walsh, Timothy J.
Langella, Mintz, Levin, Cohn, Ferris, Glovsky &
Popeo, P.C., Boston, MA, for defendants.

MEMORANDUM OF DECISION
ZOBEL, District Judge.
**\*1** This action is before the Court on defendants'
motions to dismiss the amended complaint and, in
the alternative, to strike portions of the amended
complaint. For reasons stated more fully below,
both motions are denied.

**\*1** Plaintiffs are participants and beneficiaries of the
Demoulis Profit Sharing Plan and Trust ("the Plan"
). Defendants are fiduciaries of the Plan under the
Employee Retirement Income Security Act ("ERISA
"), 29 U.S.C. § 1001 *et seq..* Defendant D. Harold
Sullivan ("H. Sullivan") is alleged to be the Plan
administrator. The twelve counts of the amended
complaint assert that defendants: (1) violated the

prudent man standard of care in 29 U.S.C.A. §
1104(a) (West 1985 & Supp.1992); (2) engaged in
transactions prohibited by 29 U.S.C.A. § 1106
(West 1985); and (3) failed to file a proper
financial statement pursuant to 29 U.S.C.A. §
1023(b) (West 1985). Defendants argue that the
entire complaint should be dismissed for failure to
state a claim upon which relief may be granted.
Fed.R.Civ.P. 12(b)(6).

**\*1** When considering a motion to dismiss under
Rule 12(b)(6) a court must accept the factual
allegations of the complaint as true. *Hishon v. King
& Spalding,* 467 U.S. 69, 73 (1984). "A court may
dismiss a complaint only if it is clear that no relief
could be granted under any set of facts that could be
proved consistent with the allegations." *Id.* (citing
*Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).
Plaintiffs are not required to plead a specific legal
theory; all that is necessary is that the facts, if
proved, would entitle the party to relief under some
viable theory. *Fitzgerald v. Codex Corp.,* 882 F.2d
586, 589 (1st Cir.1989).

*I. Breach of the "Prudent Man Standard of Care."*

**\*1** Plaintiffs first plead that defendants have
violated ERISA's strict duty of care, codified in 29
U.S.C.A. § 1104(a) (West 1985 & Supp.1992).[FN1]
Specifically, plaintiffs charge that defendants: (1)
have discharged their duties for purposes other than
to benefit the Plan (Counts III, VII); have acted
imprudently (Counts II, III, IV, V, VI, VII, VIII,
IX); and have failed to diversify Plan assets
(Counts I, IV, VI, VII, IX).

A. Section 1104(a)(1)(A).

**\*1** Defendants argue, first, that the complaint fails
to establish that they acted other than for the
exclusive benefit of Plan participants. ERISA
imposes a strict standard upon fiduciaries, requiring

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1993 WL 81500 (D.Mass.)
**(Cite as: Not Reported in F.Supp.)**

them "to make decisions with single-minded devotion to a plan's participants and beneficiaries." *Cooke v. Lynn Sand & Stone Co.,* 673 F.Supp. 14, 18 (D.Mass.1986) (quoting *Morse v. Stanley,* 732 F.2d 1139, 1145 (2d Cir.1984)). "This is a salutary rule because at the slightest suggestion that any action taken was with other than the beneficiaries in mind, a trustee is subject to liability for resulting injury that the beneficiaries may suffer." *Id.; see also Lanka v. O'Higgins,* No. 88-CV-922, slip op. (N.D.N.Y. Nov. 6, 1992).

**\*1** In evaluating a claim for breach of fiduciary duty under ERISA, a court should consider the conduct of the fiduciary rather than the success or failure of the investment. *GIW Indus., Inc. v. Trevor, Stewart, Burton & Jacobsen, Inc.,* No. CV188-90, slip op. (S.D.Ga. Mar. 10, 1989). Count III of the amended complaint alleges that defendant H. Sullivan engaged in two transactions not solely in the interests of the Plan: (1) as managing partner of the Cherokee Group, he purchased seven condominium units at below-market prices from a development, Carter Green, whose construction was financed by a partnership in which a Plan debtor, Whitecliff Manor Realty Trust ("Whitecliff"), was a partner; and (2) he invested Plan assets in loans to his cousins, R. Sullivan and K. Sullivan, to finance their purchase of additional Carter Green units at a time when the units were not selling well due to poor market conditions.

**\*2** Although H. Sullivan did not purchase the seven units with Plan assets, plaintiffs allege that the below-market sale harmed the partnership, and thus the partners, including Whitecliff, who had financed their construction. By harming Whitecliff, plaintiffs reason, H. Sullivan also harmed the Plan to whom Whitecliff owed in excess of seven million dollars at the end of 1990. Thus, although the relationship between the Plan and H. Sullivan's purchase is somewhat attenuated, the pleaded facts, if proved, suggest that H. Sullivan put his personal interests above the interests of the Plan. Plaintiffs' allegation that Plan funds were used to finance the sale of Carter Green units to the Sullivan cousins establishes a more direct benefit to H. Sullivan because the sale of the additional units was likely to add to the value of the seven units owned by the

Cherokee Group. Again, if this relationship were proved at trial, a reasonable jury could grant relief for any losses plaintiffs sustained as a result.

**\*2** In Count VII plaintiffs allege that defendants further violated § 1104(a)(1)(A) by making a loan to the Tamposi family in order to help that family with "cash flow problems" rather than in the sole interests of the Plan beneficiaries. In support of this allegation, plaintiffs assert that the Tamposi family was experiencing financial difficulties at the time the loan was made and that defendants have a long history of business dealings with the family. Plaintiffs also assert that the loan was secured by property owned by Terra Verde, a New Hampshire partnership in which the Tamposi family and " Telemachus A. Demoulas and/or Arthur T. Demoulas" each held a fifty percent ownership interest. Plaintiffs suggest that the loan is presently undersecured because the land cannot be developed due to the fact that its wetlands exemption has been revoked. The above facts, if proved, tend to establish that the Tamposi family loan was not made in the sole interest of the Plan beneficiaries. Counts III and VII thus allege sufficient facts to state a claim under § 1104(a)(1)(A).[FN2]

### B. Section 1104(a)(1)(B).

**\*2** Plaintiffs next contend that defendants made investment decisions that were imprudent under the circumstances then prevailing. 29 U.S.C.A. § 1104(a)(1)(B) (West 1985). Prudence is measured by the objective standard developed in the common law of trusts. *GIW Indus., Inc. v. Trevor, Stewart, Burton & Jacobsen, Inc.,* No. CV188-90, slip op. (S.D.Ga. Mar. 10 1989); *Donovan v. Walton,* 609 F.Supp. 1221 1228 (S.D.Fla.1985), *aff'd sub nom. Brock v. Walton,* 794 F.2d 586 (11th Cir.1986). Although prudence is a "flexible standard" to be evaluated according to the circumstances of each case, *Donovan v. Cunningham,* 716 F.2d 1455, 1467 (5th Cir.1983), *cert. denied,* 467 U.S. 1251 (1984), courts frequently consider whether the fiduciary executed a proper investigation, acted as would others familiar with such matters, and exercised independent judgment. *See Jones v. O'Higgins,* No. 87-CV-1002, slip op. (N.D.N.Y.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1993 WL 81500 (D.Mass.)
**(Cite as: Not Reported in F.Supp.)**

Sept. 1 1989).

**\*3** The investment decisions of a fiduciary should be evaluated as of the time they were made. *GIW Indus.,* No. CV188-90, slip op. (S.D.Ga. Mar. 10, 1989). That is not to say, however, that a decision to *maintain* funds in a given investment is never imprudent. The duty of care includes a duty to administer plan investments with reasonable skill and caution. *See, e.g., Katsaros v. Cody,* 744 F.2d 270, 276 (2d Cir.), *cert. denied,* 469 U.S. 1072 (1984); *Lanka v. Wright,* No. 88-CV-922, slip op. (N.D.N.Y. Nov. 6, 1992); *see also Restatement (Third) of Trusts* § 229 (1990).

**\*3** In Counts II, III, IV, V, VI, VII, VIII and IX plaintiffs allege that defendants have acted imprudently by investing over seventy percent of Plan assets in loans secured by real estate located in New England. In support they assert that the assets are primarily demand loans; that the value of real property in the region has dropped severely; and that defendants have not only failed to call the loans but have dangerously increased the Plan's exposure by agreeing to roll outstanding interest into the principal amount of each loan.

**\*3** More specifically, plaintiffs challenge defendants' decision to invest and maintain Plan funds in loans to individuals or organizations whose personal financial status (Counts III, IV, V, VII) or failure to pay taxes on the underlying properties (Counts IV, VIII) make repayment unlikely. Plaintiffs also challenge the decision of the trustees to invest and maintain Plan funds in loans secured by New England real estate at a time when the value of such properties was generally in decline. (Counts IV, V, VI, VII, VIII, IX, X). Plaintiffs further allege that some loans are undersecured because important steps were not taken to preserve the value of the collateral. For example, they claim that one property was not developed before its wetlands exemption expired. (Count VII). Other properties are in danger of being seized by local governments in settlement of tax debts. (Counts IV, VIII).

**\*3** Defendants argue that the foregoing conditions are irrelevant unless they existed at the time the investments were made. Where a plaintiff alleges, however, that reasonable inquiry by an ERISA trustee would have revealed "red flags" indicating that the value of Plan assets was in jeopardy, but that the trustee failed to make such an inquiry or take other steps to maintain the integrity of the Plan portfolio, a claim is made for breach of the duty of care. *See, e.g., Katsaros,* 744 F.2d at 276. In each count of the amended complaint plaintiffs describe circumstances which, if proved, would establish the existence of such "red flags" in this case. I conclude, therefore, that the allegations of imprudence are sufficient to put defendants on notice of the claims against them and that the complaint sets forth actionable claims.

### C. Section 1104(a)(1)(C).

**\*3** With respect to several investments, plaintiffs contend that defendants acted not only imprudently but also in violation of the duty to diversify Plan assets. 29 U.S.C.A. § 1104(a)(1)(C) (West 1985). There is no precise percentage requirement for diversification of ERISA plans; the acceptable level of risk must be evaluated in light of the circumstances of each case. *See Lanka,* No. 88-CV-922, slip op. (N.D.N.Y. Nov. 6, 1992); *Jones v. O'Higgins,* No. 87-CV-1002, slip op. (N.D.N.Y. Sept. 1, 1989); *GIW Indus., Inc. v. Trevor, Stewart, Burton & Jacobsen, Inc.,* No. CV188-90, slip op. (S.D.Ga. Mar. 10, 1989).

**\*4** Plaintiffs bear the initial burden of establishing that Plan assets are not diversified. Factors to be considered include: (1) the purpose and size of the plan; (2) financial and industrial conditions; (3) the type of investment, "whether mortgages, bonds or shares of stock or otherwise"; (4) industrial and geographical distribution; and (5) dates of maturity. H.R.Rep. No. 93-1280, 93d Cong., 2d Sess. 304 (1974), *reprinted in* 1974 U.S.C.C.A.N. 5038, 5084-85; *Lanka,* No. 88-CV-922, slip op. (N.D.N.Y. Nov. 6, 1992). Once plaintiffs show lack of diversification, the burden shifts to defendants to demonstrate that the investments " were clearly prudent under the circumstances." *Lanka,* No. 88-CV-922, slip op. (N.D.N.Y. Nov. 6, 1992).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 4

Not Reported in F.Supp., 1993 WL 81500 (D.Mass.)
**(Cite as: Not Reported in F.Supp.)**

**\*4** Plaintiffs assert in Counts I, IV, VI, VII and IX that defendants failed to diversify Plan assets by: (1) investing more than seventy percent of Plan assets in mortgage loans secured by real estate located in New England; and (2) approving unjustifiably large loans to certain individuals in the Sullivan (Count IV) and Tamposi (Counts VII & IX) families. Specifically, plaintiffs allege that defendants violated § 1104(a)(1)(C) by making new loans or expanding existing loans at a time when Plan assets were already heavily concentrated in New England mortgages. With respect to Plan exposure to the individual debtors named in Counts IV, VII and IX, plaintiffs assert that the loans represent excessive concentration in light of their size and the financial instability of the borrowers.

**\*4** In sum, plaintiffs allege that as a result of defendants' actions the Plan is excessively vulnerable to both the vagaries of the New England real estate market and the financial well-being of certain individual Plan debtors. Defendants counter that New England is so large, and the loans to individual debtors so small, that as a matter of law the investments cannot be found to have exposed the Plan to undue risk. Risk, however, must be assessed on an *ad hoc* basis in light of the circumstances of each case; at this stage it cannot be said that plaintiffs will be unable to prove that the level of diversification found in the portfolio leaves Plan assets excessively vulnerable. Dismissal is accordingly inappropriate.

II. *Execution of Prohibited Transactions.*

**\*4** Plaintiffs next charge that the transactions described in Count III of the amended complaint violate ERISA's prohibitions on transactions between a plan: (1) and a party in interest, 29 U.S.C.A. § 1106(a)(1)(D); or (2) a fiduciary. 29 U.S.C.A. § 1106(b)(1) (West 1985). For reasons discussed *supra* in section I.A. of this memorandum, I conclude that the complaint sets forth sufficient facts to state a claim that H. Sullivan personally benefitted from the use of Plan funds to finance purchases of Carter Green units by the Sullivan cousins.

**\*4** Defendants contend, however, that the benefits identified in the complaint are too remote to make out a claim under § 1106(a)(1). The assertion is not well-taken. Section 1106(a)(1) specifically applies to both direct and indirect benefits. 29 U.S.C.A. § 1106(a)(1) (West 1985). Defendants' also state:

**\*5** If, despite the provisions of [§ 1106(a) ], the mere fact of receipt of such a remote benefit could constitute a violation of [§ 1106(b)(1) ], then Congress was engaging in [a] futile act when it considered, debated and enacted Section [1106(a)(1) ] of ERISA.

**\*5** This argument is equally unavailing. It is certainly possible that a transaction could violate (b) and not (a); nevertheless each addresses a different set of prohibited transactions.

**\*5** Plaintiffs contend, and defendants deny, that the transactions described in Count III violate both §§ 1106(a)(1) and 1106(b)(1). At the heart of the dispute are the factual questions of whether H. Sullivan received a benefit and whether he should have known that the transaction would benefit him at the time it was completed. These questions cannot be resolved by this Court on a motion to dismiss. *Hishon*, 467 U.S. at 73. Plaintiffs' claims must therefore stand.

III. *Failure to File a Proper Financial Statement.*

**\*5** Finally, Counts X, XI and XII of the amended complaint allege that defendants filed an inaccurate Form 5500 in violation of 29 U.S.C.A. § 1023(b) (West 1985). In particular, plaintiffs charge that defendant H. Sullivan, as Plan administrator: (1) improperly represented that the current value of all mortgage loans was equal to their cost when acquired (Count X); (2) failed to identify all true parties in interest (Count XI); and (3) failed to report that certain debtors had not made timely interest payments on notes owned by the Plan (Count XII). Although plaintiffs do not reiterate facts in support of these counts under their respective subheadings, the complaint contains multiple allegations of misidentified parties in interest, overvalued collateral, and unpaid interest

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                          Page 5

Not Reported in F.Supp., 1993 WL 81500 (D.Mass.)
**(Cite as: Not Reported in F.Supp.)**

obligations rolled over into the principal amount of the loans. The complaint is certainly not a "model of clarity"; I conclude, however, that the pleading taken as a whole is sufficient to put defendants on notice of the charges against them.

**\*5** Defendants contend that Counts X, XI and XII should nevertheless be dismissed because H. Sullivan is not the Plan administrator and the Form 5500 does not require the identification of "true parties in interest." First, whether H. Sullivan is or is not the administrator is a disputed question of fact which must be resolved in favor of plaintiffs for purposes of this motion to dismiss. Second, defendants offer no authority for their assertion that the duty to "identify borrowers" does not include identification of parties in interest of whose existence the administrator is aware.

**\*5** Defendants' ultimate argument is that the complaint is so lacking in facts that it represents no more than an attempt by plaintiffs to "discover" a claim through abuse of pretrial procedures. As the Supreme Court has made clear, however, Rule 12(b)(6) simply does not require the sort of specificity for which defendants here search:
**\*5** [T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.... Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pretrial procedures.

**\*6** *Conley v. Gibson,* 355 U.S. 41, 47 (1957) (footnote omitted). Although plaintiffs are not entitled to abuse discovery in order to search for a grievance, they are entitled to use pretrial procedures to discover the details relating to each claim. *See Strong v. Quinn,* No. 82-0173-MA, slip op. (D.Mass. May 20, 1982). I conclude that plaintiffs have satisfied the minimal requirements of Rule 12(b)(6). Defendants' motion to dismiss the complaint is therefore denied.

**\*6** Defendants move, in the alternative, to strike the reference to the "unsavory business activities" of

Stephen Minasian in Count VIII of the complaint as impertinent and scandalous under Federal Rule of Civil Procedure 12(f). Although federal courts possess substantial discretion in disposing of a motion to strike, the motions are generally disfavored and "will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Strong v. Quinn,* No. 82-0173-MA, slip op. (D.Mass. May 20, 1982).

**\*6** Plaintiffs here allege that Minasian's reputation bears upon the prudence of defendants' decision to invest Plan assets in loans to an organization of which Minasian was treasurer. Reputation is clearly a factor to consider when evaluating whether an ERISA trustee acted prudently under § 1104(a)(1)(B). 29 U.S.C.A. § 1104(a)(1)(B) (West 1985). Whether or not Minasian in fact had a poor reputation is thus a question to be resolved at trial. Defendants do not allege that they are prejudiced by inclusion of the statement. The motion to strike is accordingly denied.

**\*6** Because plaintiffs have pleaded sufficient facts to put defendants on notice of their ERISA claims, the motion to dismiss (# 29) is denied. Because the disputed statement in Count VIII is pertinent to plaintiffs' claim under § 1104(a)(1)(B), the motion to strike (# 33) is also denied.

> FN1. 29 U.S.C.A. § 1104(a)(1) (West 1985 & Supp.1992) provides:
> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and-
> (A) for the exclusive purpose of:
> (i) providing benefits to participants and their beneficiaries; and
> (ii) defraying reasonable expenses of administering the plan;
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                      Page 6

Not Reported in F.Supp., 1993 WL 81500 (D.Mass.)
**(Cite as: Not Reported in F.Supp.)**

    (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so....

    FN2. Defendants have also moved to dismiss Count III of the amended complaint for failure to plead fraud with specificity as required by Fed.R.Civ.P. 9(b) . I conclude, however, that plaintiffs state with sufficient specificity the facts underlying their claim for breach of fiduciary duty.

D.Mass.,1993.
DeMoulis v. Sullivan
Not Reported in F.Supp., 1993 WL 81500 (D.Mass.)

Briefs and Other Related Documents (Back to top)

• 1:91cv12533 (Docket) (Sep. 30, 1991)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

--- F.3d ----                                                                                    Page 1

--- F.3d ----, 2007 WL 117465 (C.A.5 (Tex.)), 39 Employee Benefits Cas. 2352
**(Cite as: --- F.3d ----)**

C
Briefs and Other Related Documents
Langbecker v. Electronic Data Systems Corp.C.A.5
(Tex.),2007.Only the Westlaw citation is currently
available.
United States Court of Appeals,Fifth Circuit.
Richard LANGBECKER, et al.,
Plaintiffs-Appellees,
v.
ELECTRONIC DATA SYSTEMS CORP., et al.,
Defendants,
Electronic Data Systems Corp., et al.,
Defendants-Appellants.
No. 04-41760.

Jan. 18, 2007.

**Background:** Current and former employees who
participated in company's 401(k) defined
contribution plan, and their beneficiaries, filed class
complaint under Employee Retirement Income
Security Act (ERISA) against executives charged
with monitoring committees running plan and
members of Benefits Administration and Investment
Committees, alleging, inter alia, breaches of
fiduciary duties associated with offering of
company stock as plan investment option and
requesting reimbursement for "make good" losses on
behalf of plan and injunctive relief either to remove
stock fund as optional investment or to replace
current fiduciaries with one or more independent
fiduciaries. The United States District Court for the
Eastern District of Texas, Leonard E. Davis, J.,
adopted participant's characterization of their suit as
derivative suit and certified class for those claims
which, as framed, included up to 85,000 members.
Defendants were granted interlocutory review.

**Holdings:** The Court of Appeals, Edith H. Jones,
Chief Judge, joined by Emilio M. Garza, Circuit
Judge, held that:

(1) plan-wide fiduciary duties existed with respect

to 401(k) participant-directed plans, and claims for
breach of fiduciary duty could be brought on behalf
of plan;

(2) district court incorrectly eliminated defense
under ERISA subsection relieving plan fiduciaries
of liability for any loss or breach resulting from a
participant's or beneficiary's exercise of control over
the assets in his or her account from its evaluation
of suitability of allegations on appeal for class
treatment;

(3) impact of releases signed by up to 9000
potential class members should not have been
excluded from district court's certification analysis;

(4) fact that one of named plaintiffs continued to
trade in company stock after adverse disclosures did
not disable him from being a typical class
representative;

(5) substantial conflicts existed among class
members, raising questions about adequacy of lead
plaintiffs' ability to represent class, and on remand
district court had to more fully consider whether
they were adequate representatives in light of
inherent intraclass conflicts;

(6) class action was not maintainable on ground that
party opposing class had acted or refused to act on
grounds generally applicable to class, thereby
making appropriate final injunctive relief or
corresponding declaratory relief with respect to
class as whole; and

(7) certification rule was unclear as to
maintainability of class action on basis of risk of
inconsistent or varying adjudications with respect to
individual class members.

Vacated and remanded.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                    Page 2

--- F.3d ----, 2007 WL 117465 (C.A.5 (Tex.)), 39 Employee Benefits Cas. 2352
(Cite as: --- F.3d ----)

Reavley, Circuit Judge, filed dissenting opinion.

**[1] Federal Courts 170B ☞817**

170B Federal Courts
　　170BVIII Courts of Appeals
　　　　170BVIII(K) Scope, Standards, and Extent
　　　　　　170BVIII(K)4 Discretion of Lower Court
　　　　　　　　170Bk817 k. Parties; Pleading. Most
Cited Cases
Court of Appeals reviews district court's
certification decision for abuse of its discretion,
which must be exercised within boundaries of class
certification rule. Fed.Rules Civ.Proc.Rule 23, 28
U.S.C.A.

**[2] Federal Courts 170B ☞812**

170B Federal Courts
　　170BVIII Courts of Appeals
　　　　170BVIII(K) Scope, Standards, and Extent
　　　　　　170BVIII(K)4 Discretion of Lower Court
　　　　　　　　170Bk812 k. Abuse of Discretion.
Most Cited Cases
Where district court rests its legal analysis on
erroneous understanding of governing law, it has
abused its discretion.

**[3] Federal Civil Procedure 170A ☞171**

170A Federal Civil Procedure
　　170AII Parties
　　　　170AII(D) Class Actions
　　　　　　170AII(D)2 Proceedings
　　　　　　　　170Ak171 k. In General; Certification
in General. Most Cited Cases
Although federal courts cannot assess merits of case
at class certification stage, they must evaluate with
rigor claims, defenses, relevant facts and applicable
substantive law in order to make meaningful
determination of certification issues. Fed.Rules
Civ.Proc.Rule 23, 28 U.S.C.A.

**[4] Federal Civil Procedure 170A ☞172**

170A Federal Civil Procedure
　　170AII Parties

　　　　170AII(D) Class Actions
　　　　　　170AII(D)2 Proceedings
　　　　　　　　170Ak172 k. Evidence; Pleadings and
Supplementary Material. Most Cited Cases
Party seeking class certification bears the burden of
meeting all the requirements of federal civil rule.
Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[5] Labor and Employment 231H ☞475**

231H Labor and Employment
　　231HVII Pension and Benefit Plans
　　　　231HVII(C) Fiduciaries and Trustees
　　　　　　231Hk475 k. Duties in General. Most
Cited Cases
ERISA does not distinguish fiduciary duties
according to type of employee investment or
pension plans at issue. 29 U.S.C.(2000 Ed.) § 1104.

**[6] Labor and Employment 231H ☞489**

231H Labor and Employment
　　231HVII Pension and Benefit Plans
　　　　231HVII(C) Fiduciaries and Trustees
　　　　　　231Hk487 Investments and Expenditures
　　　　　　　　231Hk489 k. Prudent Person Standard.
Most Cited Cases
Under ERISA, the prudence of investments or
classes of investments offered by a plan must be
judged individually. Employee Retirement Income
Security Act of 1974, § 2 et seq., 29 U.S.C.A. §
1001 et seq.

**[7] Labor and Employment 231H ☞643**

231H Labor and Employment
　　231HVII Pension and Benefit Plans
　　　　231HVII(K) Actions
　　　　　　231HVII(K)3 Actions to Enforce
Statutory or Fiduciary Duties
　　　　　　　　231Hk643 k. In General. Most Cited
Cases
Possibility of suit for breach of fiduciary duty on
behalf of retirement plan as whole was not
eliminated simply by fact that any recovery would
have to be allocated among 401(k) accounts of large
number of individual plan participants. Employee
Retirement Income Security Act of 1974, §§ 409(a),
502(a)(2), 29 U.S.C.A. §§ 1109(a), 1132(a)(2); 29

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                              Page 3

--- F.3d ----, 2007 WL 117465 (C.A.5 (Tex.)), 39 Employee Benefits Cas. 2352
**(Cite as: --- F.3d ----)**

U.S.C.(2000 Ed.) § 1104(a).

## [8] Labor and Employment 231H ⟨⟨⟩⟩491(1)

231H Labor and Employment
 231HVII Pension and Benefit Plans
  231HVII(C) Fiduciaries and Trustees
   231Hk487 Investments and Expenditures
    231Hk491 Investments in Securities or
Property of Sponsor
     231Hk491(1) k. In General. Most
Cited Cases
Defense under ERISA subsection relieving plan
fiduciaries of liability for any loss or breach
resulting from participant's or beneficiary's exercise
of control over the assets in his or her account
applied in relation to causes of action for recovery
on behalf of plan as whole, and where district court
incorrectly eliminated that defense from its
evaluation of suitability of allegations on appeal for
class treatment, remand was warranted for further
consideration of extent to which participant
decisions undermined feasibility of class action
treatment. Employee Retirement Income Security
Act of 1974, § 502(a)(2), 29 U.S.C.A. § 1132(a)(2);
29 U.S.C.(2000 Ed.) § 1104(c).

## [9] Administrative Law and Procedure 15A⟨⟨⟩⟩ 413

15A Administrative Law and Procedure
 15AIV Powers and Proceedings of
Administrative Agencies, Officers and Agents
  15AIV(C) Rules and Regulations
   15Ak412 Construction
    15Ak413 k. Administrative
Construction. Most Cited Cases
Rule that *Chevron* deference is due to agency
interpretation of its own regulation only applies if
the regulation was ambiguous.

## [10] Federal Civil Procedure 170A ⟨⟨⟩⟩184.5

170A Federal Civil Procedure
 170AII Parties
  170AII(D) Class Actions
   170AII(D)3 Particular Classes Represented
    170Ak184 Employees
     170Ak184.5 k. In General. Most

Cited Cases

## Federal Courts 170B ⟨⟨⟩⟩947

170B Federal Courts
 170BVIII Courts of Appeals
  170BVIII(L) Determination and Disposition
of Cause
   170Bk943 Ordering New Trial or Other
Proceeding
    170Bk947 k. Further Evidence,
Findings or Conclusions. Most Cited Cases
Impact of broad releases discharging "all claims or
demands" against their employer which were signed
by up to 9000 potential class members should not
have been excluded in analysis of whether to certify
class action under ERISA and district court had to
consider those releases more thoroughly on remand.
Fed.Rules Civ.Proc.Rule 23(a)(3), 28 U.S.C.A.;
Employee Retirement Income Security Act of 1974,
§ 502(a)(2), 29 U.S.C.A. § 1132(a)(2).

Impact of broad releases discharging "all claims or
demands" against their employer which were signed
by up to 9000 potential class members should not
have been excluded in analysis of whether to certify
class action under ERISA and district court had to
consider those releases more thoroughly on remand.
Fed.Rules Civ.Proc.Rule 23(a)(3), 28 U.S.C.A.;
Employee Retirement Income Security Act of 1974,
§ 502(a)(2), 29 U.S.C.A. § 1132(a)(2).

## [11] Federal Civil Procedure 170A ⟨⟨⟩⟩161.1

170A Federal Civil Procedure
 170AII Parties
  170AII(D) Class Actions
   170AII(D)1 In General
    170Ak161.1 k. Factors, Grounds,
Objections, and Considerations in General. Most
Cited Cases
The numerosity, commonality, typicality and
representativeness requirements of class
certification rule cannot be waved away by artful
characterization. Fed.Rules Civ.Proc.Rule 23(a), 28
U.S.C.A.

## [12] Federal Civil Procedure 170A ⟨⟨⟩⟩184.5

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----, 2007 WL 117465 (C.A.5 (Tex.)), 39 Employee Benefits Cas. 2352
**(Cite as: --- F.3d ----)**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)3 Particular Classes Represented
            170Ak184 Employees
               170Ak184.5 k. In General. Most
Cited Cases
In putative ERISA class action for breach of
fiduciary duty relating to loss on investments in
company stock through imprudent management of
401(k) plan, fact that one of named plaintiffs
continued to trade in company stock after adverse
disclosures did not disable him from being a typical
class representative, although it might signify
intraclass conflict of interest and cut against his
attempt to avert defense under ERISA subsection
relieving plan fiduciaries of liability for any loss or
breach resulting from participant's or beneficiary's
exercise of control over the assets in his or her
account. Fed.Rules Civ.Proc.Rule 23(a)(3), 28
U.S.C.A.

**[13] Federal Civil Procedure 170A ☞164**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)1 In General
            170Ak164 k. Representation of Class;
Typicality. Most Cited Cases
Key typicality inquiry is whether a class
representative would be required to devote
considerable time to rebut defendants' claims.
Fed.Rules Civ.Proc.Rule 23(a)(3), 28 U.S.C.A.

**[14] Federal Civil Procedure 170A ☞164**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)1 In General
            170Ak164 k. Representation of Class;
Typicality. Most Cited Cases
In addition to measuring competence of class
counsel and the class representatives' willingness
and ability to bear costs, adequacy of representation
inquiry for class certification also uncovers conflicts
of interest between named plaintiffs and class they
seek to represent. Fed.Rules Civ.Proc.Rule

23(a)(1), 28 U.S.C.A.

**[15] Federal Civil Procedure 170A ☞164**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)1 In General
            170Ak164 k. Representation of Class;
Typicality. Most Cited Cases
Intraclass conflicts may negate adequacy of
representation requirement for class certification.
Fed.Rules Civ.Proc.Rule 23(a)(4), 28 U.S.C.A.

**[16] Federal Civil Procedure 170A ☞165**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)1 In General
            170Ak165 k. Common Interest in
Subject Matter, Questions and Relief; Damages
Issues. Most Cited Cases
Certification of class may not be permitted where
many members have nothing to gain from
injunction, and declaratory relief sought serves only
to facilitate the award of damages.

**[17] Federal Civil Procedure 170A ☞184.5**

170A Federal Civil Procedure
   170AII Parties
      170AII(D) Class Actions
         170AII(D)3 Particular Classes Represented
            170Ak184 Employees
               170Ak184.5 k. In General. Most
Cited Cases
ERISA class action was not maintainable on ground
that party opposing class had acted or refused to act
on grounds generally applicable to class, thereby
making appropriate final injunctive relief or
corresponding declaratory relief with respect to
class as whole; absent class members' inability to
receive notice of suit or have opportunity to opt out
was extremely troubling in light of real problems
caused by conflicts between potential members, and
resolution of claims would require complex
individualized determinations. Fed.Rules
Civ.Proc.Rule 23(b)(2), 28 U.S.C.A.; Employee

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                    Page 5

--- F.3d ----, 2007 WL 117465 (C.A.5 (Tex.)), 39 Employee Benefits Cas. 2352
**(Cite as: --- F.3d ----)**

Retirement Income Security Act of 1974, §§ 409(a), 502(a)(2), 29 U.S.C.A. §§ 1109(a), 1132(a)(2); 29 U.S.C.(2000 Ed.) § 1104(a).

**[18] Federal Courts 170B ☜951.1**

170B Federal Courts
   170BVIII Courts of Appeals
     170BVIII(L) Determination and Disposition of Cause
       170Bk951 Powers, Duties and Proceedings of Lower Court After Remand
       170Bk951.1 k. In General. Most Cited Cases
Class certification rule was conceptually unclear as to maintainability of ERISA class action on basis of risk of inconsistent or varying adjudications with respect to individual members, and if district court eventually reached analysis of maintainability on remand, it was to consider the extent to which due process concerns inherent in Fifth Circuit's *Allison* decision applied to class and whether class could be maintained if damages were primary remedy sought. U.S.C.A. Const.Amend. 14; Fed.Rules Civ.Proc.Rule 23(b)(1)(A), 28 U.S.C.A.; Employee Retirement Income Security Act of 1974, §§ 409(a), 502(a)(2), 29 U.S.C.A. §§ 1109(a), 1132(a)(2); 29 U.S.C.(2000 Ed.) § 1104(a).

Barry Craig Barnett (argued), Jonathan Bridges, Ryan Laurence Nelson, Gretchen Sims Sween, Susman Godfrey, Dallas, TX, for Langbecker, ERISA, Vanderlip, Smith and Florer.
Joseph W. Wolfe, Wolfe, Clark, Henderson, Tidwell & McCoy, Sherman, TX, for Langbecker.
Ron Kilgard, Keller Rohrback, Phoenix, AZ, for Langbecker, ERISA, Vanderlip, Smith, Florer and Barnes.
Robert A. Izard, Jr., Schatz & Nobel, Hartford, CT, Jeffrey S. Abraham, Abraham Fruchter & Twersky, New York City, for ERISA.
James D. Baskin, III, The Baskin Law Firm, Austin, TX, for ERISA and Barnes.
Lynn Lincoln Sarko, Elizabeth A. Leland, Keller Rohrback, Seattle, WA, Gary A. Gotto, Keller Rohrback, Phoenix, AZ, for ERISA, Vanderlip and Smith.
Earl Glenn Thames, Jr., Potter Minton, Tyler, TX, for Vanderlip.

Brian Paul Sanford, Sheils, Winnubst, Sanford & Bethune, Richardson, TX, for Florer.
Howard Shapiro (argued), Robert Wilkinson Rachal, René E. Thorne, Proskauer Rose, New Orleans, LA, Otis W. Carroll, Deborah Johnson Race, Ireland, Carroll & Kelley, Tyler, TX, for Defendants-Appellants.
Timothy Francis Gavin, Fletcher L. Yarbrough, Michael Allen Birrer, Carrington, Coleman, Sloman & Blumenthal, Dallas, TX, for EDS Comp. & Ben. Com., Gray, Groves and Kidder.
Caroline Montrose Brown, John M. Vine, Joseph Zambuto, Jr., Covington & Burling, Washington, DC, for ERISA Industry Com., Am. Benefits Council, and ESOP Ass'n, Amici Curiae.
William J. Kilberg, Paul Blankenstein, Gibson, Dunn & Crutcher, Eugene Scalia, Acting Sol., U.S. Dept. of Labor, Washington, DC, for Business Roundtable, Chamber of Commerce of U.S. and Nat. Ass'n of Manufacturers, Amici Curiae.
Jeffrey G. Lewis, Claire Kennedy-Wilkins, Lewis, Feinberg, Renaker & Jackson, Oakland, CA, Robert Edward McKnight, Jr., Murphy & McKnight, New Orleans, LA, for Nat. Emp. Lawyers Ass'n, Amicus Curiae.
Mary Ellen Signorille, Michael Robert Schuster, American Ass'n of Retired Persons, Washington, DC, for AARP, Amicus Curiae.
Bruce F. Rinaldi, Cohen, Milstein, Hausfeld & Toll, John P. Holtz, Pension Rights Center, Washington, DC, Norman Stein, Tuscalousa, AL, Marc I. Machiz, Cohen, Milstein, Hausfeld & Toll, Philadelphia, PA, for Pension Rights Center, Amicus Curiae.
Elizabeth Hopkins (argued), U.S. Dept. of Labor, Washington, DC, for Chao, Secretary of Dept. of Labor, Amicus Curiae.

Appeal from the United States District Court for the Eastern District of Texas.

Before JONES, Chief Judge, and REAVLEY and GARZA, Circuit Judges.
EDITH H. JONES, Chief Judge, joined by EMILIO M. GARZA, Circuit Judge:
*1 Although legal remedies exist for the alleged wrongs committed by Electronic Data Systems (" EDS") and its associated defendants for allegedly mismanaging the company's 401(k) Retirement

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                        Page 6

--- F.3d ----, 2007 WL 117465 (C.A.5 (Tex.)), 39 Employee Benefits Cas. 2352
(Cite as: --- F.3d ----)

Plan, the Rule 23(b)(1) or (b)(2) class action certified by the district court is not among them. The district court erroneously interpreted the impact, inter alia, of intraclass conflicts and fact-specific defenses arising from ERISA § 404(c) and individual releases. Rule 23(b)(2) is unsuited to provide classwide relief, and Rule 23(b)(1) is conceptually unclear. As a result, we must VACATE and REMAND the class certification for further consideration.

## I. BACKGROUND

**\*1** Plaintiffs are current and former employees of EDS[FN1] who participated in the company's 401(k) defined contribution Retirement Plan ("Plan").[FN2] Like many employers, EDS offers its employees a menu of retirement options and agrees to match a portion of each employee's annual contribution to his 401(k) account. Participants then select their individual portfolios and decide when and whether to change the mix of investments. Participant accounts, commingled for management purposes, become the assets of the Plan. The Plan's trustees, who are subject to the rigorous fiduciary requirements of ERISA, manage the Plan, select and monitor the investment options, and handle each Participant's account. Significantly, the Plan also invokes ERISA § 404(c), which relieves plan fiduciaries of liability for any loss or breach "which results from such participant's or beneficiary's exercise of control [over the assets in his account]." 29 U.S.C. § 1104(c). The tension between the fiduciary obligations and the employee-directed nature of the accounts provides the backdrop to the instant case.

**\*1** During the class period, EDS offered Plan Participants between thirteen and eighteen investment options, including an EDS Stock Fund. [FN3] Plan documents discussed the different funds, explained that employees could direct contributions to a fund or funds of their choice, and rated the fund options on a scale of one to five for risk (one being the least risky and five being the riskiest). Plan documents rated the EDS Stock Fund as "5+" on the risk scale and warned Participants that investing in only one stock violated the diversification

principle of portfolio management.[FN4] The Plan documents also explained that EDS agreed to match up to twenty-five percent of each employee's annual investment, up to six percent of salary, with an investment in the EDS Stock Fund. The matched investments had to remain in the Stock Fund for two years, after which the employee could move the funds as he chose.

**\*1** On September 18, 2002, EDS published an earnings warning, which precipitated a substantial drop in its stock price (from $36.46 to $17.20 a share). Although the stock price rebounded somewhat in the short term and more in the longer term, a flurry of lawsuits commenced.[FN5]

**\*1** This case, while predicated on the same accounting and business irregularities as the securities actions, is brought on behalf of Participants in the Plan. (Participants may be members of the securities lawsuit class as well as the alleged Plan class.) The operative Class Complaint alleges three ERISA fiduciary violations relevant on appeal. In Count I, the Participants allege that the EDS Appellants[FN6] breached their fiduciary duties of prudence when, despite knowledge of EDS's financial problems, Appellants continued to offer company stock as a Plan investment option; directed and approved investment in the stock rather than in safer alternatives; invested matching funds in EDS stock; failed to take adequate steps to prevent the Plan from suffering losses from its EDS stock investment; and failed to implement a strategy to compensate for the high risk of EDS stock as a Plan investment. Count II alleges that Appellants breached their fiduciary duties by failing to monitor the Benefits Administration Committee and Investment Committee members who supervised the Plan and by failing to provide the committees with accurate information about company problems. Count IV[FN7] alleges breach of their duties of loyalty to the Plan because the Appellants failed to act solely in the Participants' interests and for the exclusive purpose of providing Plan benefits. All three Counts proceed under ERISA § 409 and § 502(a)(2) (29 U.S.C. § 1109(a) and § 1132(a)(2)). The crux of the allegations is the imprudence of company stock as a retirement offering.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                    Page 7

--- F.3d ----, 2007 WL 117465 (C.A.5 (Tex.)), 39 Employee Benefits Cas. 2352
**(Cite as: --- F.3d ----)**

**\*2** Participants request reimbursement to "make good" the losses on behalf of the Plan, but they concede such damages must eventually be allocated among the Participants' accounts. They also seek injunctive relief either to remove the EDS Stock Fund as an optional investment or to replace the current fiduciaries with one or more independent fiduciaries. The district court certified a Fed.R.Civ.P. 23(b)(2) class for these claims consisting of all Plan participants and their beneficiaries, excluding the Defendants, for whose accounts the Plan made or maintained investments in EDS stock through the EDS Stock Fund between September 7, 1999, and October 9, 2002. As framed, the Class includes up to eighty-five thousand members.[FN8]

**\*2** Appellants sought and were granted interlocutory review pursuant to Fed.R.Civ.P. 23(f).

**\*2** A summary of the district court's closely reasoned opinion regarding certification of these claims is essential to further analysis. Several of the court's legal rulings underpin its conclusion that these claims are amenable to class certification. If the court erred in any of its threshold decisions, the class certification is put at risk.

**\*2** First, the court rejected Appellants' contention that Appellees' claim should be characterized as individual claims for "other appropriate equitable relief" to redress breaches of fiduciary duty under ERISA § 502(a)(3).[FN9] *See Varity Corp. v. Howe,* 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). Instead, the court adopted the Participants' contention that theirs is a "derivative" suit brought on behalf of the Plan pursuant to ERISA § 502(a)(2), in which recovery must "inure[ ] to the benefit of the plan as a whole," *Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 140, 105 S.Ct. 3085, 3089, 87 L.Ed.2d 96 (1985).

**\*2** Fastening on the derivative suit characterization, the court then ruled that ERISA § 404(c), which relieves fiduciaries of liability where loss results from a participant's exercise of direction and control of his own account, is inapplicable to a suit on " behalf of the plan as a whole." Finally, the court determined that post-employment releases of claims executed by up to nine thousand potential class members not only did not release claims for the Appellants' breached fiduciary duties but in any event were irrelevant to the maintenance of a classwide claim for derivative relief to the Plan.

**\*3** Turning to the class action rule, the court emphasized and discussed in tandem the typicality and adequacy factors,[FN10] which bear on the qualification of class representatives. Because of its focus on the derivative nature of the claims, the court did not consider as stumbling blocks to adequacy and typicality two circumstances arguably at odds with the single-minded focus required of class representatives. First, one of the representatives, Mizell, was a day-trader in EDS stock who continued to buy and sell, to his occasional profit, throughout the tumultuous period following the September 19 price decline. Yet both Mizell and Smith, who also traded in EDS stock short-term, now contend, as putative class representatives, that Appellants should have withdrawn EDS stock as a permissible investment option for all Plan Participants during the class period. Second, the court discounted, also on its overarching derivative suit construct, the highly individual nature of class members' stock trading patterns. In a securities fraud suit,[FN11] class members seek recovery for specific transactions affected by fraud. Here, in contrast, the EDS Participants are joined as class members irrespective whether they bought or sold any EDS stock during the relevant period; irrespective whether they traded at a profit in shares that other Participants (fellow class members) sold for a loss simultaneously; and irrespective that some class cutoff dates would be vastly more profitable for some Participants than others. Further, thousands of class members remained invested in EDS stock notwithstanding allegations that it was imprudent to offer or invest in EDS stock during the class period. The court held that because this is a derivative suit on the Plan's behalf for losses "to the Plan as a whole," the class representatives are not asserting claims for losses to individual accounts. Thus, the derivative characterization superseded conflicts among class members or between the class representatives and the class itself.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                    Page 8

--- F.3d ----, 2007 WL 117465 (C.A.5 (Tex.)), 39 Employee Benefits Cas. 2352
**(Cite as: --- F.3d ----)**

**\*3** To the extent that the releases of claims might raise individual defenses, the court, while acknowledging this possibility, reiterated that a plan-wide lawsuit need not be defeated by the peculiarities of individual participants' claims. Similarly, the court attempted to reconcile the ERISA § 404(c) defense with the derivative ERISA § 502(a)(2) action by concluding that (1) the defense is inapplicable to a fiduciary duty breach consisting of imprudent plan management and selection of investment options, and (2) the defense, being personal and transactional to a participant, cannot be applied where claims are made on behalf of the plan.

**\*3** Having disposed of objections to the maintenance of a "derivative" suit for the Plan and to class action treatment, the court concluded that certification under Rules 23(b)(1) and (2) was appropriate.

**\*4** Respecting Rule 23(b)(1), the court held that because the claims are asserted on behalf of the Plan as a whole the Appellants are "obligated to treat class members alike via their treatment of the Plan itself." Further, the court foresaw a risk of inconsistent adjudication if multiple separate § 502(a)(2) cases were pursued against the Plan.

**\*4** The court justified its Rule 23(b)(2) certification reasoning that (1) the complaint seeks " predominantly" injunctive relief, i.e., removal of the EDS Stock Fund as an investment option and/or removal of the current fiduciaries, and (2) the monetary relief requested is a "group remedy" and " subservient" to the injunctive relief. In a footnote attached to this paragraph, the court acknowledged that a fiduciary would have to be appointed to oversee allocation of any monetary recovery among Plan Participants. Neither a Rule 23(b)(1) or (2) class action requires notice to class members or the option to opt-out.

## II. DISCUSSION

**\*4** [1][2][3] This court reviews the district court's certification decision for abuse of discretion. *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100, 101 S.Ct.

2193, 2200, 68 L.Ed.2d 693 (1981). The district court's discretion must be exercised within the boundaries of Rule 23. *Id.* Where a district court rests its legal analysis on an erroneous understanding of governing law, it has abused its discretion. *Unger v. Amedisys Inc.,* 401 F.3d 316, 320 (5th Cir.2005). Although federal courts cannot assess the merits of the case at the certification stage, they must evaluate with rigor "the claims, defenses, relevant facts and applicable substantive law in order to make a meaningful determination of the certification issues." *Id.* at 321 (quoting *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 744 (5th Cir.1996)).

**\*4** [4] The party seeking class certification bears the burden of meeting all the Rule 23 requirements. *Berger v. Compaq Computer Corp.,* 257 F.3d 475, 479-80 (5th Cir.2001). As was alluded to above, the requirements fall into two general groups: the four 23(a) requirements (numerosity, commonality, typicality, and representativeness), which must be met by all proposed class actions; and the three groups of Rule 23(b) requirements, one of which must be met by the proposed class.[FN12]

**\*4** Courts should not confuse rulings on the merits of claims with the class certification decision. As noted above, however, the district court's threshold legal rulings are essential to its conclusion that this case may be maintained as a class action. We must accordingly consider briefly whether (1) ERISA § 502(a)(2) entitled Plan Participants to seek derivative relief for "the plan as a whole" to recover "plan losses" that allegedly resulted from Appellants' fiduciary duty breaches; and (2) whether either ERISA § 404(c) or the releases executed by about nine thousand Participants bar class cert ification.

### A. Section 502(a)(2).

**\*5** An ERISA fiduciary must act with prudence, loyalty and disinterestedness, requirements carefully delineated in the statute. *See generally* 29 U.S.C. § 1104(a)[FN13]. ERISA § 502(a)(2) authorizes any plan participant or beneficiary to sue on behalf of the plan to remedy a breach of these duties, to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                Page 9

--- F.3d ----, 2007 WL 117465 (C.A.5 (Tex.)), 39 Employee Benefits Cas. 2352
(Cite as: --- F.3d ----)

require the fiduciaries personally to "make good" any "losses to the plan" so caused, or to replace the fiduciaries.[FN14] 29 U.S.C. § 1132(a)(2); § 1109(a). Appellants strenuously contend that this suit, which alleges that Appellants breached fiduciary duties by failing to limit the Plan's offering of and investment in EDS stock, cannot proceed under § 502(a)(2) because the Plan consists of individual Participant-directed investments. More precisely, Appellants contend that since any recovery of monetary damages would have to be allocated among up to eighty-five thousand class members based on each Participant's widely divergent stock trading and holding strategy, no Plan-wide relief can be fashioned.

*5 [5] To the extent Appellants' contention is that no plan-wide fiduciary duties exist with respect to 401(k) participant-directed plans, it is clearly overbroad. ERISA does not distinguish fiduciary duties according to the type of employee investment or pension plans at issue. The Supreme Court described Congress's concern about "the possible misuse of plan assets, and with remedies that would protect the entire plan," also without limitation concerning the type of plan. *Russell,* 473 U.S. at 142, 105 S.Ct. at 3090. Certain fiduciary duty breaches can injure 401(k) participants generally and indiscriminately: theft from the plan; mapping; [FN15] noncompliance with ERISA-mandated duties to inform; engaging in transactions that involve conflicts of interest; and setting unreasonable blackouts are among the possibilities.[FN16] Allegations that ERISA fiduciaries promoted company stock to prop up its value or misled participants could also state plan-wide breaches of fiduciary duties. [FN17]

*5 [6][7] In this case, however, the description and indeed existence of a Plan-wide fiduciary breach are elusive at this preliminary stage of the case. The key contention is that the fiduciaries "knew" EDS stock was too risky to be offered or allowed as an investment by any Participant (or the vast bulk of them) in the 401(k) Plan during the period in question. This contention challenges the fiduciaries' judgment that EDS was or remained a prudent investment for the Plan to offer.[FN18] Hindsight is easy in a case like that of Worldcom, a company so

infected by over-extension and fraud that it collapsed, and its stock became worthless. EDS, despite its alleged failings, is not in that category. From the facts adduced at the class determination stage, it is far from clear that EDS stock became too risky to be a permissible 401(k) offering or the basis for the employer-matching contribution. Thousands of Plan Participants continued to purchase EDS stock regularly after the company's adverse disclosures and after the price dropped. Thousands held on to their EDS stock rather than sell. The stock price has slowly but steadily rebounded. Given these facts, plus the long-term horizon of retirement investing and the favored status Congress has granted to employee stock investments in their own companies, ascribing a Plan-wide fiduciary failure to Appellants seems fraught with uncertainty.[FN19] Nevertheless, at this preliminary stage, we cannot rule out Appellees' theories as a matter of law. Correlatively, the possibility of a suit on behalf of the Plan as a whole is not eliminated simply by the fact that any recovery would have to be allocated among individual Participants' 401(k) accounts.[FN20]

### B. Section 404(c) Defense.

*6 [8] While a brief look at the Participants' theories confirms the district court's conclusion that § 502(a)(2) claims could be brought on behalf of the Plan, the same cannot be said for the court's rejection of § 404(c) as a defense to the derivative claims. Just as ERISA's fiduciary duties may be breached on a plan-wide basis, so, too, must the § 404(c) defense be considered in its relation to the causes of action for recovery on behalf of a plan as a whole. Section 404(c) relieves a fiduciary from liability "for any loss" or "by reason of any breach" if the plan is an individual account plan and the loss "results from" a participant's exercise of control over assets in his account. [FN21] This provision places responsibility for the success or failure of a participant's investments on his own choices among the portfolio offered in the plan. The defense does not apply to all plans, however. The Department of Labor is charged with defining the term "exercises control." In its regulations, the Department implemented the Congressional purpose to qualify

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                    Page 10

--- F.3d ----, 2007 WL 117465 (C.A.5 (Tex.)), 39 Employee Benefits Cas. 2352
**(Cite as: --- F.3d ----)**

plans for this defense only if, *inter alia*, they offer a diversified array of investments; provide adequate information concerning the investments to the participants; and authorize flexible and autonomous control by the participants. *See* 29 C.F.R. § 2550.404c-1 (2005). EDS's Plan claims to fulfill the § 404(c) criteria for purposes of the allegations at issue in this appeal. Nevertheless, the district court held that "[a]s a separate entity, the Plan should not be subject to a defense that can only apply to particular participants and particular transactions." We disagree with this conclusion.

*6 Neither ERISA's remedy provision, § 502(a)(2), nor § 404(c) articulates an exception to the availability of the § 404(c) defense when a plaintiff sues on behalf of a plan. It is the courts' duty to harmonize statutory provisions, not, as the district court did, to eliminate one for the sake of crafting a more expansive remedy. In any event, the provisions do not conflict. The EDS 401(k) Plan is by definition the sum of the investment choices of its participants. If plan fiduciaries violate their duties, § 502(a)(2), as noted above, often affords a classwide remedy. Determining whether the fiduciary is relieved of liability because of § 404(c) is merely part of the statutory calculus.

*6 A simple example will suffice to demonstrate how the provisions can work together. Suppose Plan fiduciaries neglected to credit 401(k) plan accounts with stock dividends that had been received. A Participant could sue under § 502(a)(2) to recover the amount of the dividends and allocate them among accounts. The § 404(c) defense would play no role, because losses were unconnected to the Participant's exercise of control over his individual account.

*6 This case raises a more complex interpretive question whether the losses "result from" the participants' exercise of control pursuant to § 404(c). The losses here could not have occurred but for two separate acts: the fiduciary's inclusion of " bad" stocks into the pot, and the participants' choices to invest in those "bad" stocks with full § 404(c) disclosure. When there are two actual causes of the loss, assuming the plan complies with § 404(c) regulations, how does a court determine

whether the loss "results from" the participants' exercise of control, which in turn determines whether the defense applies? Section 404(c) appears to leave the question open. Accordingly, the Department of Labor regulations come into play.

*6 The Department has decided that § 404(c) may be a defense to liability when the loss is *"the direct and necessary result* of that participant's or beneficiary's exercise of control." 29 C.F.R. § 2550.404c-1(d)(2)(i) (emphasis added). The DOL's regulation gives the statutory term "result from" a narrow construction, but it is consistent with the statutory language-no liability when the losses " *result from* such participant's or beneficiary's exercise of control." *See* 29 U.S.C. § 1104(c)(1)(A)(ii) (emphasis added).

*7 An explanatory footnote to the regulation, however, narrows the statutory language even more in cases where the allegation is that the fiduciary was imprudent in its designation of investment options:
*7 [T]he Department points out that the act of limiting or designating investment options which are intended to constitute all or part of the investment universe of an ERISA § 404(c) plan is a fiduciary function which, whether achieved through fiduciary designation or express plan language, is not a direct or necessary result of any participant's direction of such plan.

*7 Final Regulations Regarding Particular Directed Individual Account Plans (ERISA § 404(c) plans), 57 Fed.Reg. 46906, 46924-225, n. 27 (General Preamble, n. 27). The DOL as amicus, the dissent and the Appellees take this footnote to mean that when a plan loses money by reason of the fiduciary's inclusion of an imprudent investment option, none of the loss is the direct and necessary result of the participant's exercise of control. If the footnote is correct, it bars § 404(c) as a defense to EDS's alleged breach in such cases.

*7 [9] Because application of the standard of judicial deference owed to the agency's footnote is not determinative, we assume arguendo that the more demanding *Chevron* standard applies.[FN22] The issue then becomes whether the DOL's footnote

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----, 2007 WL 117465 (C.A.5 (Tex.)), 39 Employee Benefits Cas. 2352
**(Cite as: --- F.3d ----)**

reasonably interprets § 404(c) under *Chevron* Step II. We conclude it is not reasonable. Most important, the footnote does not reasonably interpret § 404(c) itself, because it contradicts the governing statutory language in cases where an individual account plan fully complies with the regulations' disclosure, diversification and participant-control provisions, and loss is caused, notwithstanding some other fiduciary duty breach, by the participants' investment decisions. The DOL footnote would render the § 404(c) defense applicable only where plan managers breached no fiduciary duty, and thus only where it is unnecessary. Similarly, the footnote is in tension with the actual DOL regulation, which does no more than narrowly construe § 404(c) to authorize the defense for a fiduciary when a loss is a "direct and necessary result" of a participant's exercise of control. *See* 29 C.F.R. § 2550.404c-1(d)(2)(i). The regulation also stresses that, "whether a participant .. . has exercised independent control in fact with respect to a transaction depends on the facts and circumstances of the particular case." 29 C.F.R. § 2550.404c-1(c)(2). The footnote is at odds with these provisions by appearing to eliminate a § 404(c) defense altogether, rather than determining its scope on a transactional, case-by-case basis.

**\*7** While various courts have deferred to the footnote with little or no discussion, the only circuit court to address § 404(c) found its meaning tolerably plain and explained that the provision " allows a fiduciary, who is shown to have committed a breach of duty in making an investment decision, to argue that despite the breach, it may not be held liable because the alleged loss resulted from a participant's exercise of control." *In re Unisys Sav. Plan Litig.,* 74 F.3d 420, 445 (3rd Cir.1996). *Unisys* predated the DOL regulations but embodies a common sense interpretation of the statute. ^[FN23]

**\*8** Disregarding the footnote and relying solely on the statute and the regulation does not, as the district court and Appellees fear, leave plan participants without a remedy for the type of fiduciary duty breaches alleged here. Instead, it correlates the potential recovery with the sum of participants' decisions regarding their individual accounts. The Plan "as a whole" is not entitled to

recover money damages for breach where an individual participant, suing on his own behalf, could not recover. The district court implicitly recognized this limitation in holding that with respect to the misrepresentation claims, which it did not certify for class treatment, § 404(c) affords an individual a transactionally oriented defense. Put otherwise, the § 404(c) defense is no different from a limitations defense in a class action. A classwide claim may be stated, but the potential recovery is limited to those class members whose claims have not prescribed. Moreover, § 404(c) in no way limits the recovery of equitable relief.

**\*8** The dissent fears that if a § 404(c) defense applies, Plan participants and beneficiaries will be left "at the mercy of the wisdom of whoever made these limited [plan investment] choices." The dissent is also concerned that no duty of prudence will attach to the selection and monitoring of plan investment choices if § 404(c) is applied as written. These fears are both overblown and misdirected. Principally, we are not holding that a plan fiduciary's duties do not include the selection and monitoring of plan investment alternatives. The question, rather, is how to harmonize the enforcement of the fiduciary's duty with the § 404(c) defense when a § 502(a)(2) action is pursued "on behalf of the plan." A plan fiduciary may have violated the duties of selection and monitoring of a plan investment, but § 404(c) recognizes that participants are not helpless victims of every error. Participants have access to information about the Plan's investments, pursuant to DOL regulations, and they are furnished with risk-diversified investment options. In some situations, as happened here, many of the Participants will react to the company's bad news by buying *more* of its stock. Other Participants will, like Mizell, trade their way to profit no matter the calamity that befell the stock. Section 404(c) contemplates an individual, transactional defense in these situations, which is another way of saying that in participant-directed plans, the plan sponsor cannot be a guarantor of outcomes for participants.

**\*8** If the Appellees' negation of § 404(c) prevails, then the EDS fiduciaries would be liable not just for *losses* in individual accounts, but also for failures to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----

Page 12

--- F.3d ----, 2007 WL 117465 (C.A.5 (Tex.)), 39 Employee Benefits Cas. 2352
**(Cite as: --- F.3d ----)**

realize gains (measured against some entirely speculative standard) and even for catch-up amounts where participants *bought into* a declining EDS stock value.

**\*9** The harmonization of § 502(a)(2) actions with the § 404(c) defense, however, limits the amount of "plan losses" for which a fiduciary may be held liable. This harmonization also bears on the susceptibility of this case to class action treatment, because § 404(c) individualizes the consequences of fiduciary duty violations. Finally, there is no inconsistency between this harmonization and the courts' decisions in the Enron and Worldcom cases, because in those cases, where the company's stock value ultimately rested on a financial house of cards, no trading strategy in the company's stock could have salvaged a participants' company stock ownership.[FN24]

**\*9** Because the district court incorrectly eliminated the § 404(c) defense from its evaluation of the suitability of the allegations on appeal for class treatment, we must vacate and remand for further consideration of the extent to which § 404(c) decisions by participants undermine the feasibility of class action treatment.

### C. Participant Releases.

**\*9** [10] While conceding that ordinarily the fact that up to nine thousand potential class members have signed releases of claims against EDS would defeat typicality and preclude class certification, the district court found a distinction here for two reasons. First, the court determined that the releases (which are otherwise quite broad, discharging "all claims or demands" against EDS) authorize the instant suit as one for "benefits."[FN25] Appellants contend, with some force, that this exception only permits suits under ERISA § 502(a)(1)(B) to recover specific benefits owed a participant under the terms of an employee plan. As the Supreme Court explained in *Russell,* ERISA § 502(a)(1)(B) allows a beneficiary to recover plan "benefits," whereas § 502(a)(2) allows recovery that inures to the benefit of the plan as a remedy for breach of fiduciary duties. *Russell,* 473 U.S. at 146-47, 105

S.Ct. at 3093; *see also Rhorer v. Raytheon Eng'rs & Constructors, Inc.,* 181 F.3d 634, 639 (5th Cir.1999) (noting the numerous differences between causes of action under §§ 502(a)(1)(B) and 502(a)(2)). On the other hand, a release does not ordinarily preclude claims based on subsequent conduct. The enforceability of the releases presents difficult questions.

**\*9** Additionally, the district court refused to consider individual releases pertinent to the maintenance of a derivative suit on behalf of the Plan. For the reasons stated in regard to the § 404(c) defense, however, this conclusion is untenable. The impact of the releases should not have been excluded from the district court's certification analysis.

**\*9** Without commenting further on the enforceability of the releases or application of the " benefits" exception, we note that holders of releases could become a subclass if a class action is otherwise deemed appropriate. Contrary to the dissent, we are not holding that the releases foreclose any § 502(a)(2) suit on behalf of the Plan or foreclose any class certification. We do stress, however, that the status of perhaps nine thousand claimants is not a trifle-either to the Appellants or the claimants themselves. The district court must consider the releases more thoroughly on remand. [FN26]

### D. Class Action Issues.

**\*10** Applying the § 404(c) defense and factoring in the nine thousand releases may well change the district court's decision to certify a class action. Nevertheless, we must also address the two Rule 23(a) class certification issues challenged directly by Appellants-typicality of the representative Plaintiffs' claims and adequacy of their representation-as well as the court's ultimate authorization of a Rule 23(b)(1) and (2) no-notice, no-opt-out class action. We conclude that Smith and Mizell hold sufficiently typical claims, but the court must reconsider whether they are adequate representatives in light of inherent intraclass conflicts. Finally, various difficulties demonstrate

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----

Page 13

--- F.3d ----, 2007 WL 117465 (C.A.5 (Tex.)), 39 Employee Benefits Cas. 2352
**(Cite as: --- F.3d ----)**

the impropriety of maintaining a Rule 23(b)(2) class action and the court's superficial analysis of the Rule 23(b)(1) alternative.

*1. Typicality.*

**\*10** [11] Rule 23(a) requires that the named representatives' claims be typical of those of the class. Appellants question whether Smith's and Mizell's claims are typical because Mizell continued to invest in EDS stock even after it declined following the September 18th disclosures, and Smith actually made money on his EDS investments (although not as much as he thinks he should have). The district court ruled these inquiries inappropriate since the representatives' derivative claims on behalf of the Plan transcend individual claim variations. On the contrary, the requirements of Rule 23(a) cannot be waved away by artful characterization. Even if the typicality requirement did not apply, Smith and Mizell would have the burden to prove, as derivative representatives of the Plan, that their claims fairly represent those of the absent Participants.

**\*10** [12][13] Stated broadly, the representatives' claims are typical of those of the class. Smith and Mizell both allege that they suffered harm as Participants who lost money on EDS stock investments through the Appellants' imprudent Plan management. The fact that Mizell continued to trade in EDS stock after the company's adverse disclosures may signify an intraclass conflict of interest and may cut against his attempt to avert a § 404(c) defense, but it does not disable him from being a typical class representative. This court recently noted that "the key typicality inquiry is whether a class representative would be required to devote considerable time to rebut Defendants' claims." *Feder,* 429 F.3d at 138 (quoting *Lehocky v. Tidel Techs.,* 220 F.R.D. 491, 501-02 (S.D.Tex.2004)). *Feder* went on to join numerous decisions which have held that securities class action plaintiffs are not categorically precluded from asserting typical claims despite their own post-disclosure trading in the target defendant's stock. *Id.* Such trading becomes harmless where, after the company has made adverse disclosures, the stock price reverts to valuation based on an efficient market. The analogy between securities fraud and ERISA fiduciary violation plaintiffs is inexact, as Appellants point out, in the face of Mizell's contentions that even after the September 18th disclosures, EDS stock remained an imprudent Plan investment. A trading strategy adopted for Mizell's personal benefit is, however, distinguishable from the Plan fiduciaries' execution of their duties. Similar reasoning vindicates Smith's claim to typicality, reducing Appellants' complaint over his profit to questions of damages and the § 404(c) defense.

*2. Adequacy.*

**\*11** [14] In addition to measuring the competence of class counsel and the class representatives' willingness and ability to serve, neither of which criteria are challenged here, the Rule 23 adequacy inquiry also uncovers " 'conflicts of interest between the named plaintiffs and the class they seek to represent.' " *Berger v. Compaq Computer Corp.,* 257 F.3d 475, 479-80 (5th Cir.2001) (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625, 117 S.Ct. 2231, 2236, 138 L.Ed.2d 689 (1997) ).

**\*11** Substantial conflicts exist among the class members, raising questions about the adequacy of the lead Plaintiffs' ability to represent the class. Even after the EDS earnings warning and the drop in its stock price, thousands of Plan Participants (would-be class members), including Mizell, continued to direct money *into* the EDS Stock Fund. Over forty-four thousand Participants maintained investments in EDS stock as of February, 2004. This aggregate conduct seriously undermines the claim that the EDS Stock Fund was an imprudent investment that Appellants should not have offered in the first place. The intraclass conflict is exacerbated because Appellants seek injunctive relief that would dissolve the EDS Stock Fund;[FN27] the Fund cannot be partially shut down for the litigating Plaintiffs and remain open for absent class members who desire this investment option.

**\*11** Additionally, Plan Participants were affected by

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                          Page 14

--- F.3d ----, 2007 WL 117465 (C.A.5 (Tex.)), 39 Employee Benefits Cas. 2352
**(Cite as: --- F.3d ----)**

the drop in price in dramatically different ways. Class discovery revealed that Smith and sixteen thousand absent class members made money on their stock fund investments, while others, including Mizell, lost money. Further conflicts exist among those who lost money. According to David Ross's report, for 17,890 class members, maximum recovery would inure to the Plan (and eventually be allocated to their accounts) if February 4, 2000, is established as the date on which the stock fund became an imprudent investment. For 37,689 class members, maximum recovery would be attained if November 27, 2001, were the designated date. Appellees dismiss these concerns by asserting that all Plan Participants share the goal of attaining maximum payment to the Plan, regardless of the designated date. This is true as a general matter and surely promotes the interest of the class representatives and their counsel. Appellees gloss over the inconvenient fact that these conflicts have implications not only for dividing the pie at recovery but also for discovery and preparation for trial. Unlike a securities fraud lawsuit, in which class members have a uniform purpose in proving material misrepresentations by company defendants at specific points in time, here the goal is to second-guess judgments made by the Appellants involving a multitude of considerations over a period of years. The facts, once known, may bear out different legitimate theories as to when EDS Stock Fund became an imprudent investment; each theory will have different consequences for class members' recovery.

**\*11** **[15]** Numerous courts have held that intraclass conflicts may negate adequacy under Rule 23(a)(4). *See Valley Drug Co. v. Geneva Pharmaceuticals, Inc.,* 350 F.3d 1181, 1189-92 (11th Cir.2003) (finding class representatives inadequate where their economic interests and objectives conflicted substantially with those of absent class members); *Pickett v. Iowa Beef Processors,* 209 F.3d 1276, 1280 (11th Cir.2000)(representation inadequate where class includes those "who claim harm from the very acts from which other class members benefitted").

**\*12** The trial court too readily succumbed to Appellees' minimization of the intraclass problems

in this case.[FN28] That the court recognized a fiduciary would need to be appointed to allocate recovery among Plan Participants concedes at least the possibility of intraclass apportionment problems. The problem goes to the heart of proving the allegations of fiduciary imprudence. On remand, the district court must more fully consider the implications of the proven intraclass conflicts for the adequacy of representation by Smith and Mizell. If a class is certified, the court may have to consider certifying subclasses to represent the participants with conflicting interests.

### 3. The Allison Rule 23(b)(2) Inquiry.

**\*12** With little difficulty, the district court concluded that because Plaintiffs' derivative lawsuit was filed on behalf of the Plan and sought " predominately" equitable remedies, it should be certified as a class pursuant to Rule 23(b)(2). The court did not afford absent class members the option of notice or self-exclusion from the class. Certification of a class under Rule 23(b)(2) is appropriate where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). The district court cited this court's decision in *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402 (5th Cir.1998), which held that " monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief." *Id.* at 415. This *Allison* (b)(2) predominance requirement, "by focusing on uniform relief flowing from defendants' liability, ' serves essentially the same functions as the procedural safeguards and efficiency and manageability standards mandated in (b)(3) class actions.' " *In re Monumental Life Ins. Co.,* 365 F.3d 408, 417 (5th Cir.2004) (quoting *Allison,* 151 F.3d at 414-15).[FN29]

**\*12** *Allison* also imposed standards for determining whether monetary relief sought in a Rule 23(b)(2) class action is truly incidental, or whether such relief is the true pursuit of the class action:
**\*12** Ideally, incidental damages should be only

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----

Page 15

--- F.3d ----, 2007 WL 117465 (C.A.5 (Tex.)), 39 Employee Benefits Cas. 2352
**(Cite as: --- F.3d ----)**

those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established. That is, the recovery of incidental damages should typically be concomitant with, not merely consequential to, class-wide injunctive or declaratory relief. Moreover, such damages should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances. Liability for incidental damages should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations.

**\*13** *Allison,* 151 F.3d at 415 (internal citations omitted). *Allison*'s test has been cited in connection with other ERISA class action determinations. *See Nelson v. IPALCO Enters. Inc.,* No. 1P02-477CHK, 2003 WL 23101792 (S.D.Ind. Sept. 30, 2003) (unpublished).

**\*13** [16][17] Two considerations persuade us that the district court got it backwards. The court has refused to permit certification of a class where many members "have nothing to gain from an injunction, and the declaratory relief they seek serves only to facilitate the award of damages." *Bolin v. Sears, Roebuck & Co.,* 231 F.3d 970, 978 (5th Cir.2000). As just noted, many potential class members have voted with their investments to remain in the EDS Stock Fund and, inferably, do not want it closed; other potential class members profited from stock swings caused by the alleged fiduciary violations; and still other potential class members would gain or lose damages based on the breach date selected by the court. In light of these real, not simply alleged, problems caused by such conflicts, the inability of absent class members to receive notice of this suit or have an opportunity to opt out is extremely troubling.

**\*13** Second, to effectuate Appellees' principal goal-reimbursement into the individual accounts of each Plan Participant-numerous individualized hearings would be required. Final resolution of class members' claims will involve "new and substantial legal and factual issues," *Allison,* 151

F.3d at 415, including the § 404(c) defense, whether an individual class member was actually harmed by the purported breaches of fiduciary duty, and the releases. Resolution of these claims will require " complex individualized determinations," *Allison,* 151 F.3d at 415. Again, the district court's acknowledgment that a fiduciary would have to sort out the claims of individual class members demonstrates how little the "incidental damages" (which would total many millions of dollars) will " be more in the nature of a group remedy," as *Allison* intended. *See id.*

**\*13** The inappropriateness of Rule 23(b)(2) in this case is strongly supported by the court's decision in *Nelson,* which states:
**\*14** Relief will depend on individualized calculations for each account. As noted, individual claimants may present issues of causation and reliance, so that a classwide determination that defendants violated ERISA's requirements would not necessarily lead to an award in favor of a particular claimant. Also, defendants may be able to raise individual defenses regarding each class member. Thus, monetary relief here would not " flow directly from liability to the class as a whole." Certification under Rule 23(b)(2) is not available here.

**\*14** *Id.* at \*11.

**\*14** It may be objected that because Plaintiffs' suit is characterized as a derivative action on behalf of the Plan, resort to the Rule 23 class action requirements is not mandated, and Rule 23(b)(2) best represents a compromise between the derivative nature of the claims and the ultimate relief that may be granted in individual Participants' accounts. Lower court cases are in fact divided over which provision of Rule 23 applies. *Compare Piazza v. EBSCO Indus., Inc.,* 273 F.3d 1341, 1352-53 (11th Cir.2001) (abuse of discretion for the district court to certify a(b)(3) class) *with Coan v. Kaufman,* 349 F.Supp.2d 271 (D.Conn.2004)("... Courts ... have nonetheless applied the procedural safeguards of either Rule 23 or Rule 23.1 in order to protect the plan and absent participants.") (citing cases). Perhaps no general procedural rule can be enunciated. In this case, we are confident that the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                                    Page 16

--- F.3d ----, 2007 WL 117465 (C.A.5 (Tex.)), 39 Employee Benefits Cas. 2352
**(Cite as: --- F.3d ----)**

subtlety of the fiduciary claims alleged, the intraclass conflicts and the individualized nature of potential defenses mandated that the case proceed as a class action and equally mandated, on the facts before us, against the propriety of a Rule 23(b)(2) class. On remand, after further consideration, the court may adduce sufficient grounds to approve a class pursuant to the standards this court has developed.

### 4. Rule 23(b)(1).

**\*14** The district court also purported to certify a class under Rule 23(b)(1). Although certification must be reversed under Rule 23(a), we point out the court's cursory Rule 23(b)(1) analysis in the interest of judicial efficiency and to provide guidance on remand. *See United States v. Murillo-Lopez*, 444 F.3d 337, 339 & n. 5 (5th Cir.2006).

**\*14** [18] Numerous courts, like the district court, have conclusionally declared that a(b)(1) class is appropriate in an ERISA lawsuit "on behalf of the plan." Of course, a Rule 23(b)(1)(B) limited fund class action is plainly not appropriate. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999). What the court evidently meant was a certification under Rule 23(b)(1)(A), which authorizes a class action where the party opposing the class would be subject to " incompatible standards" if separate actions were brought. Such a remedy has some intuitive appeal to the extent that Plaintiffs here seek equitable relief: A judgment removing the fiduciaries in one lawsuit would be inconsistent with a judgment in another permitting them to stay. On the other hand, as even the dissent recognizes, achieving injunctive relief is not the principal goal of this litigation.[FN30] The focus on monetary damages would set this case apart from the examples of classic Rule 23(b)(1) class actions, which are based on situations "in which different results in separate actions would impair the opposing party's ability to pursue a uniform course of conduct." C.Wright, A.Miller, & M.Kane, 7A Federal Practice & Procedure § 1773, at 16 (2005 ed.).

**\*14** If the district court eventually reaches a Rule

23(b) analysis, it should consider the extent to which the due process concerns inherent in *Allison* apply to a (b)(1)(A) class and whether a (b)(1)(A) class can be maintained if damages are the primary remedy sought. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1193-95 (9th Cir.2001). The resolution of these issues is still uncertain in the Fifth Circuit. What seems fairly clear is that depriving tens of thousands of EDS shareholders of notice and opt-out protections, where there are undeniable intraclass conflicts pertinent to significant monetary outcomes, would create an unacceptable risk of unfair treatment of class members.[FN31]

### III. CONCLUSION

**\*15** For the foregoing reasons, the class certification by the district court is VACATED and REMANDED. The court may reconsider its class certification pursuant to the standards discussed herein.

**\*15** VACATED AND REMANDED.

REAVLEY, Circuit Judge, dissenting:
**\*15** I would affirm the order certifying the class action. The majority decides that plaintiffs must return to the district court for further pondering of whether Title 29 U.S.C. § 1104(c)(1) relieves the fiduciary of liability, that certification under Rule 23(b)(2) would be inappropriate because of conflict between members of the class, and that Rule 23(b)(1) is "conceptually unclear." As I understand the opinion, it misapplies § 1104(c)(1), reflects an incorrect view of conflict, and ignores the unique applicability of Rule 23(b)(1) in this case.

### A. *Control Over Assets*

**\*15** EDS employees could choose among a dozen or more options, including an EDS stock fund, for investment of their plan contributions. Matching plan contributions made by the company on the employees' behalf were mandatorily invested in the EDS stock fund, where they were required to remain for two years. In this suit, the employees

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                    Page 17

--- F.3d ----, 2007 WL 117465 (C.A.5 (Tex.)), 39 Employee Benefits Cas. 2352
**(Cite as: --- F.3d ----)**

who selected the EDS stock fund sue for fiduciary imprudence in affording them that option, but the majority holds that the statute and regulations count the employee selection of the EDS stock fund to be control of assets that absolves the fiduciary of liability.

**\*15** Title 29 § 1104(c)(1) (also ERISA § 404(c)[FN1]) provides in relevant part that "[i]n the case of a pension plan which provides for individual accounts and permits a participant or beneficiary to exercise control over the assets in his account, if a participant or beneficiary exercises control over the assets in his account [then] no person who is otherwise a fiduciary shall be liable [ ] for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control." The statute further provides that the circumstances in which a participant or beneficiary is considered to have exercised independent control over assets in his account as contemplated by § 404(c) are to be determined under regulations of the Secretary of the Department of Labor ("DOL"). *Id.* at (c)(1). The agency's regulations describing those circumstances, and the consequences of a participant's or beneficiary's exercise of control are set forth at 29 C.F.R. § 2550.404c-1. Under these regulations, in order to qualify for relief from fiduciary liability, plans must meet certain general requirements, including provision of sufficient investment information and disclosure of material facts. 29 C.F.R. §§ 2550.404c-1(b)(2)(B), (c)(2)(ii) (2004). The EDS plan's full compliance with these requirements is, at this stage, undetermined.

**\*15** For present purposes, we need not consider questions about what information the law requires a fiduciary to give participants about investments in a selected stock option, but I would hold that imprudent designation of an option for participants to choose constitutes grounds for fiduciary liability, and falls outside the scope of participant control envisaged by § 404(c). That is the position of the Department of Labor, of the commentators, and of the case law.

**\*16** The DOL regulation provides that a plan fiduciary will not be liable for any loss that "is the direct and necessary result of [a] participant's or

beneficiary's exercise of control." 29 C.F.R. § 2550.404c-1(d)(2)(i)(2004). The DOL has made clear that § 404(c) does not relieve fiduciaries of their prudence duty in selecting and monitoring plan investment options. *See Final Regulation Regarding Participant Directed Individual Account Plans (ERISA Section 404(c) Plans),* 57 Fed.Reg. 46906-01, 1992 WL 277875 (Oct. 13, 1992). (General preamble, n. 27) ("[T]he Department points out that the act of limiting or designating investment options which are intended to constitute all or part of the investment universe of an ERISA 404(c) plan is a fiduciary function which, whether achieved through fiduciary designation or express plan language, *is not a direct or necessary result of any participant direction of such plan.*") (emphasis added). The DOL has consistently reiterated this interpretation.[FN2]

**\*16** An agency's reasonable interpretation of its own regulation is entitled to the highest deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).[FN3] The majority says the DOL's preamble is entitled to deference only to the extent it has power to persuade, citing *Louisiana Environmental Action Network v. EPA,* 382 F.3d 575 (5th Cir.2004), where we held that an interpretation set forth in the preamble of a *proposed* regulation, which had not yet been subjected to formal notice-and-comment rulemaking, was entitled to less than *Chevron,* deference. *Id.* at 583. But here the statute expressly delegated to the agency the task of promulgating a regulation governing when a participant will be viewed as having exercised independent control over the assets in his or her account for the purposes of § 404(c) relief from fiduciary liability. *See* 29 U.S.C. § 1104(c)(1).

**\*16** The DOL's interpretation, as quoted above, was contained in the preamble to a revised version of the proposed § 404(c) regulation, which was promulgated and noticed in March 1991. *See Participant Directed Individual Account Plans,* 56 Fed.Reg. 10724-01, 1991 WL 301434 (Mar. 31, 1991). This version of the regulation was the subject of further comment, and the final regulation, containing the same interpretative passage in the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----    Page 18

--- F.3d ----, 2007 WL 117465 (C.A.5 (Tex.)), 39 Employee Benefits Cas. 2352
**(Cite as: --- F.3d ----)**

preamble, was adopted in October 1992. *See Final Regulation Regarding Participant Directed Individual Account Plans (ERISA Section 404(c) Plans),* 57 Fed.Reg. 46906-01, 1992 WL 277875 (Oct. 13, 1992). The DOL's interpretation of the final notice-and-comment regulation as preserving the fiduciary's duty to prudently select and monitor the plan investment options, which was published in the federal register and uniformly adhered to in numerous public pronouncements, is entitled to controlling weight to the extent that it is reasonable.

**\*16** The DOL's interpretation of its own § 404(c) regulation is reasonable. Section 404(c) need not be read to shield fiduciaries from liability for including an imprudent investment option on the investment menu in a self-directed plan. By allowing plans to limit their universe of investment choices and still be considered 404(c) plans, the DOL left participants and their beneficiaries at the mercy of the wisdom of whoever made these limiting choices. There should be some assurance that these limited investment choices will be prudently selected. If no duty of prudence attaches to selection of investment options, plan fiduciaries could imprudently select a full menu of unsound investments, among which participants would be free to choose at their peril, while the fiduciaries remain insulated from responsibility. The DOL was within its delegated authority in deciding not to offer relief for the decision to offer a plan investment option.

**\*17** All commentators recognize that § 404(c) does not shift liability for a plan fiduciary's duty to ensure that each investment option is and continues to be a prudent one.[FN4] Further, the majority of courts that have considered the issue have held that, even if a plan otherwise qualifies as a § 404(c) plan, the fiduciary retains the duty to prudently select and monitor investment options such that § 404(c) does not provide an absolute defense to breach claims. [FN5]

**\*17** The majority relies heavily on the Third Circuit's decision *In re Unisys Sav. Plan Litigation,* 74 F.3d 420 (3d Cir.1996), for its conclusion to the contrary. *Unisys* concerned events occurring before the DOL's § 404(c) regulation became effective. Although some of the *Unisys* court's conclusions

regarding the scope of the authorizing ERISA statute, 29 U.S.C. § 1104(c), are similar to those contained in the § 404(c) regulation, neither that regulation nor the DOL's interpretation were directly addressed. 74 F.3d at 444 n. 21 ("As the regulation [29 C.F.R. § 2550.404c-1] was not in effect when the transactions at issue occurred, it does not apply or guide our analysis in this case."). As courts have recognized, *Unisys* and subsequent opinions that rely upon it should not be considered controlling, particularly in light of the DOL's consistent contrary interpretation. *See e.g., Difelice v. U.S. Airways, Inc.,* 404 F.Supp.2d 907, 909-10 (E.D.Va.2005) (finding *Unisys* unpersuasive and noting that "every court to consider this issue with the benefit of the DOL regulation" had agreed with the DOL interpretation).

**\*17** Holding plan fiduciaries responsible for imprudent choice of a limited set of options does not, as EDS suggests, make it a guarantor of participant investment returns. Plaintiffs allege here that EDS stock had defects beyond mere riskiness and that it was imprudent to offer it as an investment option for anyone. Whether or not plaintiffs can prove that allegation remains to be seen, but that is not before us at this stage. Of course, it cannot be disputed that § 404(c) provides no shield for the fiduciaries' investment and mandatory two-year retention of the matching contributions in company stock, a decision guided by no participant direction whatsoever.[FN6]

### B. Intra-class Conflict

**\*18** Beyond the § 404(c) dispute, I do not believe the fact that a portion of the plan participants signed general releases upon departing the company's employ precludes class certification. I find no fault with the district court's conclusion that these releases do not extend to the plan participants' right to recoup plan benefits and agree that, even if this conclusion is incorrect, no individual participant can unilaterally release the rights of other participants to derivatively seek recovery on behalf of the plan under § 502(a)(2). *See, e.g., Bowles v. Reade,* 198 F.3d 752, 759-61 (9th Cir.1999) (rejecting the argument that settlement of a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.