--- F.3d ----                                                                                                      Page 19

--- F.3d ----, 2007 WL 117465 (C.A.5 (Tex.)), 39 Employee Benefits Cas. 2352
**(Cite as: --- F.3d ----)**

participant's breach of fiduciary claims against a defendant released the plan's claims against that defendant). The dispute over the breadth of the release can be resolved on a class-wide basis and, whether or not these releases preclude the relatively small percentage of signing participants from receiving allocation of any recovered plan assets, this does not deny class certification.

**\*18** Further, the fact that some individual participants may gain from allocation of any recouped plan assets and some may not does not present a conflict. All courts that have considered the issue, including this one, have rejected arguments that a § 502(a)(2) ERISA action must allege harm to all of a plan's individual participants.[FN7] To hold that variances among allocation present a class conflict is a back-door avoidance of this universal conclusion. In short, the possibility that individualized benefit determinations will be required is insufficient to bar class certification.

**\*18** Further, because the plaintiffs are suing under section 502(a)(2) on behalf of the plan, it is not material whether or not individuals lost money or had access to investment information regarding EDS stock that might have prevented them from doing so. The loss causation issue is whether the defendants caused *a loss to the plan* (ERISA § 409(a), 29 U.S.C. § 1109(a)) by including EDS stock as a plan option, regardless of whether or not individuals like plaintiff Mizell "traded [his] way to profit," as the majority states, by continuing to invest in allegedly imprudent employer securities. *See In re Enron Corp. Sec. Derivative & "ERISA" Litig.,* No. MDL 1446, Civ. A. H-01-3913, 2006 WL 1662596, \*3-4 (S.D.Tex. June 7, 2006); *DiFelice v. U.S. Airways, Inc.,* 235 F.R.D. 70, 78-79, 83 (E.D.Va.2006). We have already implicitly ruled against the defendants' argument-and the majority's position-on this front in affirming the class in the parallel EDS securities fraud suit. *See Feder v. Electronic Data Systems Corp.,* 429 F.3d 125, 138 (5th Cir.2005) ("We reject the argument that a proposed class representative in a fraud-on-the-market securities suit is as a matter of law categorically precluded from meeting the requirements of Rule 23(a) simply because of a post-disclosure purchase of the defendant company's stock.").

**\*18** Finally, our disposition of this appeal is not affected by the fact that some participants may not agree with the request for injunctive relief in the form of removing the EDS stock fund as a plan option. While prudence will be evaluated as of the time of the alleged fiduciary breach, the value of injunctive relief will be measured as of the current status quo. That some class members may not want EDS stock removed as an investment alternative does not present a conflict. Rather, the district court will decide what is best for the plan and, accordingly, will weigh the fact that members continue to invest in and hold the company stock in that determination.

**\*19** For all of these reasons, I do not see either intra-class conflicts or lack of typicality on the part of the named plaintiffs that would preclude class certification under the prerequisites of Rule 23(a).

C. *The District Court's Certification and Rule 23(b).*

**\*19** The majority's primary focus on class action Rule 23(b)(2) is misplaced because certification was also ordered under Rule 23(b)(1), and that rule is particularly suited to this litigation. Rule 23(b)(1) provides that:

**\*19** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

**\*19** (1) the prosecution of separate actions by or against individual members of the class would create a risk of

**\*19** (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

**\*19** (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

**\*19** Fed.R.Civ.P. 23(b)(1).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                                    Page 20

--- F.3d ----, 2007 WL 117465 (C.A.5 (Tex.)), 39 Employee Benefits Cas. 2352
(Cite as: --- F.3d ----)

**\*19** Although ERISA's civil enforcement rules allow a single plaintiff to sue for plan-wide relief, much of today's ERISA litigation is maintained on a class action basis. The fiduciary duty of prudence at issue is owed to the entire class and separate actions would create the risk of establishing inconsistent standards under ERISA. Were the individual class members each left to bring separate § 502(a)(2) actions on behalf of the plan, each case could conceivably result in different courts reaching conflicting decisions regarding not only the ultimate prudence of investment in EDS stock, but also the applicability of the various defenses the defendants seek to interpose. *See In re CMS Energy ERISA Litig.*, 225 F.R.D. at 543 (certifying class under Rule 23(b)(1) in face of allegations similar to this case to avoid risk of inconsistent rulings concerning fiduciary status and materiality of alleged omissions where the "single overriding common issue is whether CMS stock was an imprudent investment for the Plan"). Contradictory rulings as to the appropriateness of injunctive relief would also place incompatible demands on the defendants.[FN8] In keeping with this rationale, a number of courts have certified ERISA fiduciary breach suits under Rule 23(b)(1).[FN9] I would follow this lead and affirm the district court's certification order under Rule 23(b)(1).

**\*19** The parties have devoted much of their extensive briefing to discussion bearing on the merits of plaintiffs' claims. While plaintiffs may face factual obstacles on the way to proving their claim, such matters are not before us at this stage. For example, the fact that, as the majority opinion observes, EDS stock has recovered in large measure is not relevant. We have recognized that prudence is a test which measures the fiduciary's conduct at the time of the decision, rather than the success or failure of his or her course of action. *Metzler v. Graham*, 112 F.3d 207, 209 (5th Cir.1997) ("Prudence is to be evaluated at the time of the investment without benefit of hindsight."). Class certification is appropriate regardless of the ultimate outcome on the merits because the Rule 23 prerequisites have been met as the district court correctly determined.

**\*20** It appears to me that the majority's view of the effects of section 404(c) and the general releases, and how they affect all aspects of the class action certification, controls the matter, and I have difficulty seeing how it leaves the district court any room for certification on remand. In addition to prolonging an already over-lengthy process, the majority's disposition presents the district court with a futile exercise.

FN1. The Plaintiffs-Appellees include both participants in the EDS Plan and their beneficiaries. They are referenced collectively as Participants in our discussion. The named Plaintiffs include Jeffrey Clay Smith and Richard Mizell.

FN2. More American employees now participate in defined contribution plans such as 401(k) plans than in defined benefit plans. U.S. Department of Labor, Bureau of Labor Statistics, Employee Participation in Defined Benefit and Defined Contribution Plans, 1985-2000, http:// www.bls.gov/opub/cwc /cm20030325tb01.htm (last visited Apr. 27, 2006).

FN3. Whether or to what extent the EDS Stock Fund qualified as an employee stock ownership plan or an eligible individual account plan exempt from certain fiduciary duties pursuant to, for example, 29 U.S.C. §§ 1104(a)(2), 1107(b), is not at issue in this appeal.

FN4. As its name implies, the EDS Stock Fund could invest up to ninety-nine percent of its assets in company stock.

FN5. This court recently upheld Rule 23(b)(3) class certification in a consolidated securities fraud suit brought against EDS concerning the same events and alleging that the Defendants' actions concealed accounting problems and improperly inflated the value of EDS stock. *Feder v. Elec. Data Sys. Corp.*, 429

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                      Page 21
--- F.3d ----, 2007 WL 117465 (C.A.5 (Tex.)), 39 Employee Benefits Cas. 2352
**(Cite as: --- F.3d ----)**

F.3d 125 (5th Cir.2005).

FN6. The Defendants-Appellants include, inter alia, EDS executives charged with monitoring the committees running the Plan, as well as members of the Benefits Administration Committee and the Investment Committee.

FN7. Count III, another fiduciary duty claim based on misrepresentation under ERISA § 502(a)(3) (29 U.S.C. § 1132(a)(3)), was not certified as a class action by the district court, after it concluded that this claim rested on disparate individual fact issues. The Plaintiffs have not cross-appealed this ruling.

FN8. Appellants' expert David Ross calculated about eighty-five thousand class members through the Appellees' original class cutoff date of February 24, 2004. Since the class as certified cuts off in October, 2002, the actual number is probably lower.

FN9. The court did, however, conclude that the claims for misrepresentation by the fiduciaries were more properly brought under § 502(a)(3) because of the reliance element.

FN10. In order to merit class action treatment, the allegations of a complaint must initially demonstrate numerosity, commonality of issues, typicality of the class representatives' claims among those of the class, and the adequacy of the representatives and their counsel. See Fed.R.Civ.P. 23(a); *Feder,* 429 F.3d at 129. Neither numerosity nor commonality is at issue here, as the district court noted.

FN11. It is undisputed that the Plan Participants who bought or sold EDS stock are members of the class certified in *Feder, supra.*

FN12. *E.g., Stirman v. Exxon Corp.,* 280 F.3d 554, 558-59 (5th Cir.2002).

FN13. These duties under the statute include, "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.* § 1104(a)(1)(B). The DOL's regulation under § 404(a)(1)(B) says that a fiduciary must "give[ ] appropriate consideration to those facts and circumstances that, given the scope of such fiduciary's investment duties, the fiduciary knows or should know are relevant to the particular investment or investment course of action involved ..." and must act accordingly. 29 C.F.R. § 2550.404a-1(b)(1)(i)-(ii). Appropriate consideration includes "[a] determination by the fiduciary that the particular investment or investment course of action is reasonably designed, as part of the portfolio, ... to further the purposes of the plan, taking into consideration the risk of loss and the opportunity for gain (or other return) associated with the investment or investment course of action." *Id.* § 2550.404a-1(b)(2)(i). For a non-§ 404(c) plan, the fiduciary's selecting an investment (as provided in § 404(a)(1)(B)) is not only like a fiduciary's selecting an investment option, but also like a participant's investing in an option under § 404(c).

FN14. In this "comprehensive and reticulated statute," *Nachman Corp. v. Pension Benefit Guar. Corp.,* 446 U.S. 359, 361, 100 S.Ct. 1723, 1726, 64 L.Ed.2d 354 (1980), ERISA § 502 (29 U.S.C. § 1132) authorizes two other types of remedial actions. Section 502(a)(1) enables beneficiaries to sue for plan "benefits." Section 502(a)(2), as noted above, provides for suits against fiduciaries on behalf of the plan. Section

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                                                         Page 22
--- F.3d ----, 2007 WL 117465 (C.A.5 (Tex.)), 39 Employee Benefits Cas. 2352
**(Cite as: --- F.3d ----)**

502(a)(3) is a "catchall" provision entitling a beneficiary to "other appropriate equitable relief" for fiduciary duty breaches. *See Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 221 & n. 5, 122 S.Ct. 708, 718, 151 L.Ed.2d 635 (2002).

FN15. When employee funds are transferred from one plan to another, some companies use a process called "mapping." With "mapping," each of the displaced investment options is compared to the new options. During conversion, amounts are automatically transferred or "mapped" from the displaced option to the most comparable new option. *See Wiseman v. First Citizens Bank & Trust Co.,* 212 F.R.D. 482, 484 (W.D.N.C.2003).

FN16. This opinion does not concern, and we do not opine on the subjects covered in the recent opinion, *Milofsky v. American Airlines,* 418 F.3d 429 (5th Cir.2005), *vacated en banc,* 442 F.3d 311 (5th Cir.2006).

FN17. To the extent allegations of nondisclosure were made against Appellants in this case, the district court ruled that individual reliance issues precluded certification of a § 502(a)(2) class.

FN18. Under ERISA, the prudence of investments or classes of investments offered by a plan must be judged individually. *See In re Unisys Sav. Plan Litig.,* 74 F.3d 420, 438-41 (3d Cir.1996).

FN19. The Third Circuit wisely balanced the competing policies of ERISA fiduciary duties with statutory exemptions to those duties crafted by Congress to encourage employees' investments in their companies' stocks. *See Moench v. Robertson,* 62 F.3d 553, 568-73 (3d Cir.1995). The *Moench* standard was adopted by the Sixth Circuit, *see Kuper v. Iovenko,* 66 F.3d 1447, 1458-59 (6th Cir.1995), and favorably commented on by the Ninth Circuit, *Wright v. Oregon Metallurgical Corp.,* 360 F.3d 1090, 1097-98 (9th Cir.2004).

FN20. We note that Participants would not be eligible to pursue relief under § 502(a)(3) for "other equitable relief" under *Great-West* because the damages they seek do not restore to them specific funds that were inequitably kept in the Defendants' possession. At best, their action would seem to be one for legal restitution, which is not cognizable under § 502(a)(3). *See Great-West,* 534 U.S. at 214, 122 S.Ct. at 714-15.

FN21. ERISA § 404(c), 29 U.S.C. § 1104(c), entitled "Control over assets by participant or beneficiary," reads in full:
(1) In the case of a pension plan which provides for individual accounts and permits a participant or beneficiary to exercise control over the assets in his account, if a participant or beneficiary exercises control over the assets in his account (as determined under regulations of the Secretary)
(A) such participant or beneficiary shall not be deemed to be a fiduciary by reason of such exercise, and
(B) no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control.
(2) In the case of a simple retirement account established pursuant to a qualified salary reduction arrangement under section 408(p) of Title 26, a participant or beneficiary shall, for purposes of paragraph (1), be treated as exercising control over the assets in the account upon the earliest of-
(A) an affirmative election among investment options with respect to the initial investment of any contribution,
(B) a rollover to any other simple retirement account or individual retirement

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                                    Page 23
--- F.3d ----, 2007 WL 117465 (C.A.5 (Tex.)), 39 Employee Benefits Cas. 2352
**(Cite as: --- F.3d ----)**

plan, or
(C) one year after the simple retirement account is established.
No reports, other than those required under section 1021(g) of this title, shall be required with respect to a simple retirement account established pursuant to such a qualified salary reduction arrangement.

FN22. There is much disagreement over whether the DOL's footnote is entitled to *Chevron* deference. It can be asserted that the footnote itself was subject to notice and comment rulemaking and therefore is subject to the *Chevron* steps. The "Final Regulation Regarding Participant Directed Individual Account Plans" includes the footnote, even though it is not in the actual "Code of Federal Regulations." 57 F.R. 46906-01. This is because the CFR never publishes the preambles of the Final Regulations, even though the preambles were part of the notice and comment process. The final rule in its entirety, including the preamble, is published only in the Federal Register. For an explanation of what portions of regulations are published in certain books, *see* www.11sdc.org/source book/fed-reg-cfr.htm. In this case, footnote 27 was included in the original notice, *see* 52 F.R. 33508, and received comments before final passage.
Nevertheless, the footnote constitutes at best a comment on the regulations, and is not itself a regulation. Thus, an alternative argument can be made that neither *Chevron* nor *Auer* deference is owed. *See Auer v. Robbins,* 519 U.S. 452, 461, 117 S.Ct. 905, 911, 137 L.Ed.2d 79 (1997); *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984). The dissent asserts that the footnote represents an "interpretation" of the DOL regulation, to which *Chevron* deference is due. What the dissent overlooks, however, is that this rule only applies if the regulation was *ambiguous.* *See Wells Fargo Bank of Texas v. James,* 321 F.3d 488, 494 (5th Cir.2003); *Christensen v. Harris County,* 529 U.S. 576, 585, 120 S.Ct. 1655, 1663, 146 L.Ed.2d 621 (2000). Neither the dissent nor any of the authorities it cites points to an ambiguity in the regulation.

FN23. *See also, Wiseman, supra,* where the court noted that individual assessments of § 404(c) defenses were required where, despite plan managers' alleged fiduciary duty breach, some participants had made deliberate decisions to hold onto declining stocks.

FN24. Finally, contrary to the dissent, while we "agree that § 404(c) provides no shield" for the two-year retention of matching contributions in EDS stock, that match cannot be the subject of any ERISA fiduciary duty violation if the requirement embodied a settlor decision, not a decision subject to the fiduciaries' discretion. The issue has not been briefed before us, the district court did not decide it, and we do not speculate on its resolution.

FN25. The pertinent language in the releases states:
This Release does not include, however, a release of Employee's right, if any, to benefits he/she is entitled to under any EDS plan qualified under Section 401(a) of the Internal Revenue Code, including the EDS Retirement Plan and the EDS 401(k) Plan, and COBRA benefits pursuant to Internal Revenue Code section 4980B.

FN26. Even if, as the dissent suggests, the effect of the releases may be considered on a classwide basis, the named Plaintiffs may not be adequate representatives of those class members who did sign them. *See* Jayne E. Zanglein & Susan J. Stabile, Erisa Litigation 479-80 (2d ed. 2005) ("[C]ourts have regularly found standing, typicality,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                                                  Page 24
--- F.3d ----, 2007 WL 117465 (C.A.5 (Tex.)), 39 Employee Benefits Cas. 2352
(Cite as: --- F.3d ----)

or adequacy lacking where the defense of a release of claims was not shared by the named plaintiffs and the purported class .... [I]f none of the named plaintiffs signed releases, they are inadequate representatives because none of them would have any need to litigate or interest in litigating the release issue.")

FN27. More pointedly, even if Appellees prevail without receiving an injunction, their assertion that the mere existence of the EDS Stock Fund violated a fiduciary duty under ERISA will have won the day. It is hard to imagine that the Fund would continue to exist after such a finding.

FN28. Indeed, intraclass problems can present problems of constitutional magnitude. *See Hansberry v. Lee,* 311 U.S. 32, 43-44, 61 S.Ct. 115, 119-120, 85 L.Ed. 22 (1940). The dissent's suggestion that although "some members may not want EDS stock removed as an investment alternative [this] does not present a conflict" is not far from saying that the fact that the Hansberry family did not want to enforce the covenant barring blacks from living in their neighborhood does not present a class conflict with those who sought, through a class action judgment, to enforce the covenant against them. A few class members cannot hijack litigation "on behalf of the plan" to pursue their preference at the expense of others who are not given notice of this purported representation. The interests of all class members must be fundamentally consistent.

FN29. "*Allison* reflects our concern that Plaintiffs may attempt to shoehorn damage actions into the Rule 23(b)(2) framework, depriving class members of notice and opt-out protections." *Bolin v. Sears, Roebuck & Co.,* 231 F.3d 970, 976 (5th Cir.2000).

FN30. The dissent contends that no intraclass conflict exists with respect to the class members' competing views on injunctive relief since the propriety of injunctive relief will be determined at the end of litigation and an injunction may be unnecessary.

FN31. The Eleventh Circuit decision in *Piazza v. Ebsco Indus., Inc.,* 273 F.3d 1341 (11th Cir.2001), certified a Rule 23(b)(1)(A) class action to redress fiduciary duty breaches to an ERISA plan pursuant to § 502(a)(2), but no intraclass conflicts were asserted against the maintenance of the class or as a basis for questioning the denial of notice and opt-out.

FN1. The majority and many writers use the ERISA § 404(c) designation and I will do so hereafter.

FN2. *See, e.g.,* DOL Advisory Opinion No. 98-04A, 1998 WL 326300, at *1, *3 n. 1 (May 28, 1998); DOL Advisory Letter, 1997 WL 1824017, at *2 (Nov. 26, 1997), amicus briefs in this case and in *In re Enron Corp. Securities, Derivative & ERISA Litig.,* 284 F.Supp.2d 511 (S.D.Tex.2003) and *In re Schering-Plough Corp. ERISA Litig.,* 420 F.3d 231 (3d Cir.2005).

FN3. *See Auer v. Robbins,* 519 U.S. 452, 457, 117 S.Ct. 905, 909, 137 L.Ed.2d 79 (1997); *Wells Fargo Bank of Texas N.A. v. James,* 321 F.3d 488, 494-95 (5th Cir.2003).

FN4. *See, e.g.,* 1 Michael J. Canan, Qualified Retirement Plans § 16.28 (2006 ed.) ("[T]o some degree, fiduciary liability remains for selection of the investment choices."); Paul J. Donahue, *Plan Sponsor Fiduciary Duty for the Selection of Options in Participant-Directed Defined Contribution Plans and the Choice Between Stable Value and Money Market,* 39 Akron L. Rev. 9, 12 (2006) ("Selection

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                                                          Page 25
--- F.3d ----, 2007 WL 117465 (C.A.5 (Tex.)), 39 Employee Benefits Cas. 2352
**(Cite as: --- F.3d ----)**

of a [directed contribution] Plan's investment options remains a fiduciary function, and Plan Sponsors must choose those investment options knowledgeably and thoughtfully."); 1 Ronald J. Cooke, ERISA Practice and Procedures § 6:30 (2d ed. 1996 & Supp.2004)( "ERISA Section 404(c) does not relieve plan fiduciaries of the responsibility for determining whether it is appropriate to offer employer stock as an investment option under the Plan."); Michael B. Snyder, 3 Compensation & Benefits (HR Series) § 33.138 (2006) (" Plan fiduciaries of ERISA § 404(c) plans remain responsible for ... prudently selecting and monitoring plan investment alternatives."); Debra A. Davis, *Do-it-Yourself-Retirement: Allowing Employees to Direct the Investment of Their Retirement Savings,* 8 U. Pa. J. Lab. & Emp. L.-353, 377 (2006) (recognizing that plan "fiduciaries remain responsible for prudently selecting and monitoring investments" even if the plans comply with section 404(c)); David W. Powell, *The Public Company ESOP in 2004,* 30 J. Pension Planning & Compliance 70 (Sept. 30, 2004) ("[T]he fiduciary will remain responsible for whether it is prudent for the investment in question to be offered."); Kathleen Sheil Scheidt & David L. Wolfe, *Prudence and Diversification Revisited-ERISA Section 404(c) Protection in the Wake of Enron,* Emp. Benefits J. (March 2003) ("Even if a plan fully complies with ERISA Section 404(c), the plan fiduciaries retain responsibility for selecting the investment alternatives to be offered under the plan and monitoring the performance and costs of those alternatives to ensure that they remain prudent investment alternatives. This includes periodic analysis of the prudence of retaining employer stock as an investment alternative it is available under the plan."); 1 Jeffrey D. Mamorsky, Employee Benefits Law § 12.05 (2002) ("It is important to note, however, that even if Section 404(c) applies, the mere selection of an investment alternative in a plan which limits options is a fiduciary decision and accordingly the fiduciary will remain potentially liable for the selection of the investment alternatives."); Morton A. Harris, *Working with Participant Directed Investments Under ERISA § 404(c),* SG008 ALI-ABA (July 2001) ("ERISA section 404(c) does not relieve a fiduciary from liability in choosing the investment alternatives made available to participants and beneficiaries under the plan nor in determining whether or not to retain existing investment alternatives. In other words, a plan fiduciary can never avoid potential liability for negligence in picking the investments which constitute the 'menu' of investment alternatives made available to participants ..."); Steven J. Sacher, Employee Benefits Law 696 (2d ed.2000) (selection of investment alternatives remains a fiduciary function in a 404(c) plan); Frederick Reish and Bruce L. Ashton, *ERISA Section 404(c): Shifting Fiduciary Liability in Participant-Directed Retirement Plans,* Pension & Benefits Week Newsletter, Vol. 4, No. 3, January 12, 1998 ("[T]he responsibility for choosing and monitoring the investment options-as opposed to participants choosing among a pre-selected menu of investment options-cannot be transferred to the employees .... In selecting the investment options, the responsible fiduciary must act prudently and is liable for losses resulting from an imprudent decision .... In addition to the initial selection of the investment options, the responsible fiduciary must monitor the options to ensure that they continue to be a prudent choice for the plan.") (internal quotation and citation omitted); RIA Pens. Analysis P 54,204 (2006) ("[F]iduciaries are not relieved of other obligations in dealing with § 404(c) plans. For example, fiduciaries must continue (subject to liability for failure) to [inter alia] prudently select investment alternatives ...").

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                            Page 26

--- F.3d ----, 2007 WL 117465 (C.A.5 (Tex.)), 39 Employee Benefits Cas. 2352
**(Cite as: --- F.3d ----)**

FN5. *See, e.g., DiFelice v. U.S. Airways, Inc.,* 397 F.Supp.2d 758, 774-78 (E.D.Va.2005); *In re Dynegy, Inc. ERISA Litig.,* 309 F.Supp.2d 861, 893-94 (S.D.Tex.2004); *In re Enron Corp. Securities, Derivative & ERISA Litig.,* 284 F.Supp.2d 511, 574-79 (S.D.Tex.2003); *Rankin v. Rots,* 278 F.Supp.2d 853, 873 (E.D.Mich.2003); *In re Worldcom, Inc. ERISA Litig.,* 263 F.Supp.2d 745, 763-65 (S.D.N.Y.2003); *Franklin v. First Union Corp.,* 84 F.Supp.2d 720, 732 (E.D.Va.2000) (holding that plan fiduciaries are responsible for selecting and removing their plans' investment options when the plans comply with section 404(c)).

FN6. I could not equate the mandatory retention as a settlor decision free of fiduciary responsibility. In this specific regard, the DOL has clearly stated that " the act of limiting or designating investment options which are intended to constitute all or part of the investment universe of an ERISA 404(c) plan is a fiduciary function which, whether achieved through fiduciary designation or express plan language, is not a direct or necessary result of any participant direction of such plan." 57 Fed.Reg. 46,906 at 46,924 n. 27. The DOL has consistently maintained its position that plan fiduciaries have the duty to decline to follow the terms of the plan documents where those terms require them to invest participants' funds in an imprudent investment vehicle-even, and perhaps especially, where that required investment is in company stock. *See, e.g.,* DOL Amicus Brief in *Kirschbaum v. Reliant,* Case No. 06-20157 (appeal pending 5th Cir.2006); DOL Op. Letter No. 90-05A, 1990 WL 172964, *3 (Mar. 29, 1990).

Indeed, we have recognized that, even in the context of ESOPs, which are designed to be primarily invested in employer securities, "ESOP fiduciaries remain subject to the general requirements of [s]ection 404." *Donovan v. Cunningham,* 716 F.2d 1455, 1467 (5th Cir.1983). Those requirements include the duty to reconsider a potentially imprudent investment option, even if it is specified in the plan documents. *See* ERISA § 404(a)(1)(B) (requiring that plan fiduciaries exercise prudence "solely in the interest of the participants and beneficiaries "), and ERISA § 404(a)(1)(D) (stating that a fiduciary may only follow plan terms to the extent that the terms are consistent with ERISA).

Most courts to address the issue have recognized that fiduciaries for plans that hold employer stock (both ESOPs and non-ESOP plans) are therefore obligated to consider whether it continues to be prudent to invest in employer stock, and they may continue to follow plan terms requiring such investment only if prudent to do so. *See, e.g., Laborers Nat'l Pension Fund v. Northern Trust Quantitative Advisors, Inc.,* 173 F.3d 313, 322 (5th Cir.1999); *Kuper v. Iovenko,* 66 F.3d 1447, 1457 (6th Cir.1995); *Fink v. Nat'l Sav. & Trust Co.,* 772 F.2d 951, 954-55 (D.C.Cir.1985); *Agway, Inc. Employees' 401(k) Thrift Investment Plan v. Magnuson,* No. 5:03-CV-1060, 2006 WL 2934391 at *18 (N.D.N.Y. Oct. 12, 2006); *Merck & Co., Inc. Sec. Derivative & ERISA Litig.,* No. 05-2369, 2006 WL 2050577 at *7 (D.N.J. July 11, 2006); *In re Ferro Corp. ERISA Litig.,* 422 F.Supp.2d 850, 859 (N.D.Ohio 2006) ("a fiduciary is not required to blindly follow the terms of a plan if doing so would be imprudent."); *In re CMS Energy ERISA Litig.,* 312 F.Supp.2d 898, 907-08 (E.D.Mich.2004); *In re Polaroid ERISA Litig.,* 362 F.Supp.2d 461 473 (S.D.N.Y.2005); *In re Sprint Corp. ERISA Litig.,* 388 F.Supp.2d 1207, 1218-25 (D.Kan.2004); *In re Xcel Energy, Inc. Sec. Derivative & "ERISA" Litig.,* 312 F.Supp.2d 1165, 1181 (D.Minn.2004); *In re WorldCom,* 263 F.Supp.2d 745, 764-65 (S.D.N.Y.2003); *In re Enron Corp. Sec. Derivative & "ERISA" Litig.,* 284

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----                                                                                                    Page 27

--- F.3d ----, 2007 WL 117465 (C.A.5 (Tex.)), 39 Employee Benefits Cas. 2352
**(Cite as: --- F.3d ----)**

F.Supp.2d 511, 548-49 (S.D.Tex.2003); *In re Ikon Office Solutions, Inc. Sec. Litig.,* 86 F.Supp.2d 481, 492-93 (E.D.Pa.2000); *Canale v. Yegen,* 789 F.Supp. 147, 154 (D.N.J.1992); *Ershick v. Greb X-Ray Co.,* 705 F.Supp. 1482, 1486-87 (D.Kan.1989).

FN7. *See Milofsky v. American Airlines, Inc.,* 442 F.3d 311, 313 (5th Cir.2006) (subset of participants not precluded from bringing breach of fiduciary duty claims under ERISA sections 502(a)(2) and 409(a) where remedy would not benefit all participants); *In re Schering-Plough Corp. ERISA Litig.,* 420 F.3d 231, 239-41 (3d Cir.2005) (derivative action under § 502(a)(2) was available to a subset of participants to recover losses sustained to plan by breaches of fiduciary duty); *Kuper v. Iovenko,* 66 F.3d 1447, 1452-53 (6th Cir.1995); *In re CMS ERISA Litig.,* 225 F.R.D. 539, 543 (E.D.Mich.2004); *Woods v. Southern Co.,* 396 F.Supp.2d 1351, 1361-62 (N.D.Ga.2005)(rejecting argument that a participant cannot be said to seek redress for losses to the plan unless every participant in the Plan was affected by the challenged breach of fiduciary duty).

FN8. The risk of inconsistency encompasses but is not, as the majority implies, limited to injunctive considerations. Further, I do not acknowledge, as the majority states, that injunctive relief is not at issue here, only that the appropriateness of such relief will be determined (1) as to the good of the plan (rather than the individuals), and (2) at a different point than that fixed for determination of monetary damages.

FN9. *See, e.g., In re Tyco Int'l, Ltd.,* No. MD-02-1335-PB, 2006 WL 2349338, *7-8 (D. New Hampshire, Aug. 15, 2006) (certifying class suing on behalf of plan under Rule 23(b)(1)(B)); *In re Enron Corp. Sec. Derivative & "ERISA" Litig.,* No. MDL 1446, Civ. A. H-01-3913, 2006 WL 1662596, *13-15 (S.D.Tex. June 7, 2006) (certifying a class suing on behalf of a plan under Rule 23(b)(1), finding both subsections (A) and (B) applicable); *Rogers v. Baxter Int'l, Inc.,* No. 04 C 6476, 2006 WL 794734, *11 (N.D.Ill. Mar.22, 2006) (same); *Summers v. UAL Corp. ESOP Comm.,* 2005 WL 1323262 (N.D.Ill. Feb.17, 2005); *In re Williams Companies ERISA Litig.,* 231 F.R.D. 416, 424-25 (N.D.Okla.2005) (same); *In re ADC Telecommunications ERISA Litig.,* No. Civ. 03-2989ADMFLN, 2005 WL 2250782, *4-5 (D.Minn. Sept.15, 2005) (same); *Baker v. Comprehensive Employee Solutions,* 227 F.R.D. 354, 360 (D.Utah 2005); *Rankin v. Rots,* 220 F.R.D. 511 (E.D.Mich.2004); *In re WorldCom, Inc. ERISA Litig.,* 2004 WL 2211664 at *3 (S.D.N.Y. Oct. 4, 2004) ("[C]ertification is appropriate under Rule 23(b)(1)(B). Any adjudication with respect to individual members of the class will as a practical matter be dispositive of the interests of the other members of the class."); *In re Ikon Office Solutions,* 191 F.R.D. 457, 464 (E.D.Pa.2000); *Bunnion v. Consol. Rail Corp.,* 1998 WL 372644 (E.D.Pa.1998); *Gruby v. Brady,* 838 F.Supp. 820, 828 (S.D.N.Y.1993); *Specialty Cabinets & Fixtures, Inc. v. Am. Equitable Life Ins. Co.,* 140 F.R.D. 474, 479 (S.D.Ga.1991)(" Because individuals may bring class actions to remedy breaches of fiduciary duty only on behalf of the plan, rather than themselves, the court cannot allow absent participants or beneficiaries to opt out of this class. The right to recovery, after all, belongs to the plan.") (citation omitted).

C.A.5 (Tex.),2007.
Langbecker v. Electronic Data Systems Corp.
--- F.3d ----, 2007 WL 117465 (C.A.5 (Tex.)), 39 Employee Benefits Cas. 2352

Briefs and Other Related Documents (Back to top)

• 04-41760 (Docket) (Dec. 29, 2004)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

LEXSEE


Analysis
As of: Feb 23, 2007

HARRY L. THOMPSON, JR., ET AL VERSUS AVONDALE INDUSTRIES, INC., ET AL

CIVIL ACTION NO: 99-3439 SECTION: "D"(4)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA

2003 U.S. Dist. LEXIS 2318; 29 Employee Benefits Cas. (BNA) 2865

February 14, 2003, Decided
February 14, 2003, Filed, Entered

**DISPOSITION:** [*1] Judgment entered in favor of Defendants. Plaintiffs' claims against Defendants dismissed at Plaintiffs' costs.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff employees sued defendants, as members of the employee stock ownership plan (ESOP) administrative committee or as members of the management team, for the alleged breach of their Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.S. § 1001 et seq., fiduciary duties in connection with two sales of company stock by the ESOP to the public.

**OVERVIEW:** According to the employees, when employees began to attend annual shareholders' meetings presenting resolutions disadvantageous to management, management planned to drastically reduce the ESOP as a shareholder of the company in order to silence the employees as ESOP participants, and thus eliminate union influence. The employees contended that the company's management team caused the ESOP to sell large portions of the ESOP's stock despite compelling reasons to retain the stock. Because of the diminution in the number of voting shares the employees believed they lost significant leverage in having input into company management and the union's efforts to organize production workers was thwarted. Inter alia, the court held that the employees failed to prove that defendants breached their fiduciary duties under ERISA, because: (1) the plan contained both an ESOP component and a stock bonus component, which allowed the ESOP Administrative Committee to diversify by selling company stock held in the ESOP; and (2) the sales were prudent means of diversification and were undertaken in the best interests of the plan's participants and beneficiaries.

**OUTCOME:** The court entered judgment in favor of all defendants, dismissing the employee's claims.

**CORE TERMS:** stock, fiduciary, shareholder, dutch auction, fair market value, common stock, bonus, valuation, beneficiary, diversify, employee stock ownership plan, Amendment Number, market price, secondary, offering, outstanding, projections, diversification, premium, bid, invest, advice, prudent, publicly traded, marketplace, stamped, prudent man, ownership, underwriting, selling

**LexisNexis(R) Headnotes**

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > General Overview*
[HN1] See 29 U.S.C.S. § 1132(a).

*Governments > Fiduciary Responsibilities*
*Pensions & Benefits Law > Employee Benefit Plans > General Overview*

Page 1

Case 1:04-cv-11380-WGY   Document 151-7   Filed 02/23/2007   Page 11 of 19

2003 U.S. Dist. LEXIS 2318, *; 29 Employee Benefits Cas. (BNA) 2865

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > General Overview*
[HN2] Title I of the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.S. § 1001 et seq., is a comprehensive remedial statute designed to protect the interests of participants in employee benefit plans by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans. 29 U.S.C.S. §§ 1001, 1001(b). One of the declared purposes of Congress in adopting ERISA was to increase the likelihood that participants and beneficiaries under employee benefit plans would receive their full benefits. 29 U.S.C.S. §§ 1001, 1001b(c)(3).

*Pensions & Benefits Law > Employee Benefit Plans > Employee Stock Ownership Plans*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > General Overview*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Prohibited Transactions > Employer Securities*
[HN3] See 29 U.S.C.S. § 1107(d)(6)(A).

*Pensions & Benefits Law > Employee Benefit Plans > Employee Stock Ownership Plans*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > General Overview*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Prohibited Transactions > Employer Securities*
[HN4] Under the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., "qualifying employer securities" are typically shares of stock in the employer creating the plan. 29 U.S.C.S. § 1107(d)(5)(A).

*Contracts Law > Negotiable Instruments > Enforcement > Joint & Several Instruments*
*Governments > Fiduciary Responsibilities*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > General Overview*
[HN5] Under the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., an employee stock ownership plan shall be established and maintained pursuant to a written instrument. 29 U.S.C.S. § 1102(a). Further, such instrument shall provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan.

*Governments > Fiduciary Responsibilities*
*Pensions & Benefits Law > Employee Benefit Plans > General Overview*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > Fiduciary Responsibilities > General Overview*
[HN6] Establishment of standards of fiduciary responsibility in the employee benefit context was one of the primary objectives of the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq. Congress ultimately adopted a "prudent man standard of care" which requires that a fiduciary acting on behalf of an employee benefit plan must, inter alia, discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and: (1) for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan; (2) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; (3) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly imprudent not to do so; and (3) in accordance with documents and instruments governing the plan. 29 U.S.C.S. § 1104 (a)(1)(A-D).

*Governments > Fiduciary Responsibilities*
*Pensions & Benefits Law > Employee Benefit Plans > Employee Stock Ownership Plans*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Prohibited Transactions > Employer Securities*
[HN7] To encourage employees' ownership of their employer company, a fiduciary of an employee stock ownership plan (ESOP) is specifically exempted from the diversification requirement when qualifying employer securities (again, typically employer stock) are acquired or held. 29 U.S.C.S. §§ 1104(a)(2) & 1107(d)(3), (5). Nevertheless, a plan provision that completely prohibits diversification of ESOP assets necessarily violates the goal of the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., of ensuring the proper management and soundness of employee benefit plans.

*Governments > Fiduciary Responsibilities*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > General Overview*

Case 1:04-cv-11380-WGY    Document 151-7    Filed 02/23/2007    Page 12 of 19

2003 U.S. Dist. LEXIS 2318, *; 29 Employee Benefits Cas. (BNA) 2865

*Torts > Negligence > Standards of Care > Appropriate Standard > Objectivity*
[HN8] Section 404 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. § 1001 et seq., imposes upon all fiduciaries overlapping duties of loyalty and care. Fiduciaries consistently meet their duty of loyalty if their decisions are made with an eye single to the interests of the participants and beneficiaries taking all steps necessary to prevent conflicting interests from entering into the decision-making process. In addressing compliance with the fiduciary's duty of care (prudent man standard), the United States Court of Appeals for the Fifth Circuit instructs: courts objectively assess whether the fiduciary, at the time of the transaction, utilized proper methods to investigate, evaluate and structure the investment; acted in a manner as would others familiar with such matters; and exercised independent judgment when making investment decisions. ERISA's test of prudence is one of conduct, and not a test of the result of the performance of the investment.

*Governments > Fiduciary Responsibilities*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > Fiduciary Responsibilities > General Overview*
[HN9] The presence of conflicting interests imposes on the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., fiduciaries the obligation to take precautions to ensure that their duty of loyalty is not compromised. According to the United States Court of Appeals for the Fifth Circuit, the level of precaution necessary to relieve a fiduciary of the taint of a potential conflict should depend on the circumstances of the case and the magnitude of the potential conflict. To ensure that actions are in the best interests of plan participants and beneficiaries, fiduciaries under certain circumstances may have to "at a minimum" undertake an intensive and scrupulous independent investigation of the fiduciary's options. If a proper investigation has been conducted, a fiduciary does not violate his duties of loyalty and care simply because an action it determines best promotes participants' and beneficiaries' interests incidentally benefits the corporation.

*Pensions & Benefits Law > Employee Benefit Plans > Employee Stock Ownership Plans*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Participation & Vesting > Qualified Domestic Relations Orders*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Plan Establishment*
[HN10] An employer setting up an employee stock ownership plan will execute a written document to define the terms of the plan and the rights of beneficiaries under it. 29 U.S.C.S. § 1102 (a).

*Governments > Fiduciary Responsibilities*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Participation & Vesting > Qualified Domestic Relations Orders*
[HN11] The act of amending a plan is a sponsor function that does not trigger the fiduciary provisions of the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq.

*Governments > Fiduciary Responsibilities*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Statutes of Limitations*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > Fiduciary Responsibilities > General Overview*
[HN12] A claim for breach of fiduciary duty under the Employee Retirement Income Security Act (ERISA), 29 U.S.C.S. § 1001 et seq., begins to run six years after the breach or three years after the plaintiff had "actual knowledge" of the breach or violation. 29 U.S.C.S. § 1113. "Actual knowledge" is knowledge of all material facts necessary to understand that some claim exists, which facts could include necessary opinions of experts, knowledge of a transaction's harmful consequences, or even actual harm. "Actual knowledge" requires a showing that plaintiffs actually knew not only of the events that occurred which constitute the breach or violation but also that those events supported a claim for breach of fiduciary duty or violation under ERISA.

*Governments > Fiduciary Responsibilities*
*Pensions & Benefits Law > Employee Benefit Plans > Employee Stock Ownership Plans*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > General Overview*
[HN13] While employee stock ownership plans (ESOP) are exempted from the diversification requirement of the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., ESOP fiduciaries are not required to have a compelling reason to diversify. Rather, they are always required to act pursuant to their duties of loyalty and care in deciding whether or not to diversify (when the language of the plan gives them the discretion to diversify).

*Governments > Fiduciary Responsibilities*

Case 1:04-cv-11380-WGY    Document 151-7    Filed 02/23/2007    Page 13 of 19

2003 U.S. Dist. LEXIS 2318, *; 29 Employee Benefits Cas. (BNA) 2865

*Pensions & Benefits Law > Employee Benefit Plans > Employee Stock Ownership Plans*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > General Overview*
[HN14] While an employee stock ownership plan (ESOP) fiduciary is statutorily exempted from diversification, an ESOP fiduciary may nevertheless be sued for an imprudent decision not to diversify because an ESOP fiduciary is still required to prudently discharge his duties solely in the interests of the plan participants and beneficiaries. While an ESOP fiduciary who invests the assets in employer stock is entitled to a presumption that it acted consistently with Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., that presumption may be overcome by showing that the fiduciary abused its discretion by investing in employer stock.

*Governments > Fiduciary Responsibilities*
*Pensions & Benefits Law > Employee Benefit Plans > Employee Stock Ownership Plans*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > Fiduciary Responsibilities > Prudence*
[HN15] The employee stock ownership plan fiduciaries' main responsibility in making investments is to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. 29 U.S.C.S. § 1104(a)(1)(B). Under the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., courts have focused the inquiry under the "prudent man" rule on a review of the fiduciary's independent investigation of the merits of a particular investment, rather than on an evaluation of the merits alone. According to the United States Court of Appeals for the Fifth Circuit, the test of prudence-the Prudent Man Rule-is one of conduct, and not a test of the result of the investment. The focus of the inquiry is how the fiduciary acted in his selection of the investment, and not whether his investments succeeded or failed. Further, conducting an investigation that is structured to remove the taint associated with conflicting interests goes a long way toward satisfying the duty of loyalty. And the level of precaution necessary to relieve a fiduciary of the taint of a potential conflict should depend on the circumstances of the case and the magnitude of the potential conflict.

*Governments > Fiduciary Responsibilities*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > Fiduciary Responsibilities > General Overview*
[HN16] The reference in 29 U.S.C.S. § 1104(a)(1)(B) to a prudent man "familiar with such matters" does not create a "prudent expert" under the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., and prudent fiduciaries are entitled to rely on the advice they obtain from independent experts. On the other hand, subjective good faith--a pure heart and an empty head--is not enough. Rather, the prudent man rule is a flexible standard: the adequacy of a fiduciary's investigation is to be evaluated in light of the "character and aims" of the particular type of plan he serves. In order to rely on an expert's advice, a fiduciary must (1) investigate the expert's qualifications, (2) provide the expert with complete and accurate information, and (3) make certain that reliance on the expert's advice is reasonably justified under the circumstances. A determination whether a fiduciary's reliance on an expert advisor is justified is informed by many factors, including the expert's reputation and experience, the extensiveness and thoroughness of the expert's investigation, whether the expert's opinion is supported by relevant material, and whether the expert's methods and assumptions are appropriate to the decision at hand. The goal is not to duplicate the expert's analysis, but to review that analysis to determine the extent to which any emerging recommendation can be relied upon.

*Governments > Fiduciary Responsibilities*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > Fiduciary Responsibilities > General Overview*
*Tax Law > Federal Taxpayer Groups > S Corporations > Basis (IRC secs. 1361, 1367)*
[HN17] An Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., fiduciary need not be any smarter than the marketplace and need not second guess what the marketplace is factoring into the company value.

*Governments > Fiduciary Responsibilities*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > Fiduciary Responsibilities > General Overview*
[HN18] Title 29 U.S.C.S. § 1108(c)(3) specifically allows officers and others connected with the employer to serve as plan fiduciaries; given that Congress clearly contemplated the administration of Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., plans by employers, if Congress had intended to impose a requirement that plan administrators consult outside coun-

Case 1:04-cv-11380-WGY    Document 151-7    Filed 02/23/2007    Page 14 of 19

2003 U.S. Dist. LEXIS 2318, *; 29 Employee Benefits Cas. (BNA) 2865

sel in the course of their administration, it would have made this intention clear in the statute.

*Governments > Fiduciary Responsibilities*
*Pensions & Benefits Law > Employee Benefit Plans > Pension Benefit Plans*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > Fiduciary Responsibilities > General Overview*
[HN19] By authorizing the employer to act as plan fiduciary in the first place, 29 U.S.C.S. § 1002(2)(A), the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., has surely absolved the employer of the lesser conflict of using a single lawyer (or its in-house counsel) to advise it in both capacities.

*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > Fiduciary Responsibilities > General Overview*
[HN20] For an Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., fiduciary, although there is generally a presumption that potentially significant publicly disseminated information is reflected in the price of stock traded on an efficient market, the presumption is rebuttable.

*Contracts Law > Consideration > General Overview*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Prohibited Transactions > Employer Securities*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Prohibited Transactions > Exemptions*
[HN21] When a party-in-interest purchases stock from an employee stock ownership plan (ESOP), the ESOP has to receive "adequate consideration" or the sale is a prohibited transaction. 29 U.S.C.S. § 1106(a)(1)(A); 29 U.S.C.S. § 1108(e). Section 3(A) of the Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., defines "adequate consideration" in the case of a security for which there is a generally recognized market as either (i) the price of the security prevailing on a national securities exchange which is registered under 15 U.S.C.S. § 78f, or (ii) if the security is not traded on such a national securities exchange, a price not less favorable to the plan than the offering price for the security as established by the current bid and asked prices quoted by persons independent of the issuer and of any party in interest. 29 U.S.C.S. § 1002(18)(A).

*Governments > Fiduciary Responsibilities*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > General Overview*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Prohibited Transactions > Parties in Interest*
[HN22] See 29 U.S.C.S. § 1108(c)(3).

*Governments > Fiduciary Responsibilities*
*Pensions & Benefits Law > Employee Benefit Plans > Employee Stock Ownership Plans*
*Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Fiduciaries > Fiduciary Responsibilities > General Overview*
[HN23] The Employee Retirement Income Security Act, 29 U.S.C.S. § 1001 et seq., recognizes and approves of corporate managers serving as employee stock ownership plan fiduciaries.

**COUNSEL:** For HARRY L THOMPSON, JR, RAYMOND R YOUNG, SR, PETER J HILL, plaintiffs: Robert T. Myers, Young, Richaud & Myers, New Orleans, LA.

For HARRY L THOMPSON, JR, RAYMOND R YOUNG, SR, PETER J HILL, plaintiffs: Gary D. Greenwald, Shayne & Greenwald, Columbus, OH.

For AVONDALE INDUSTRIES, INC., ALBERT L BOSSIER, JR, THOMAS M KITCHEN, KENNETH B DUPONT, defendants: Robert B. Bieck, Jr., R. Patrick Vance, Laura Leigh Blackston, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, LA.

For ALBERT L BOSSIER, JR, THOMAS M KITCHEN, KENNETH B DUPONT, defendants: Amy L. Glovinsky, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, LA.

For BLANCHE S BARLOTTA, EUGENE E BLANCHARD, JR, RODNEY J DUHON, JR, ERNEST F GRIFFIN, JR, defendants: [*2] Kyle Potts, Adams & Reese, Howard Louis Murphy, Deutsch, Kerrigan & Stiles, New Orleans, LA.

For BLANCHE S BARLOTTA, EUGENE E BLANCHARD, JR, RODNEY J DUHON, JR, ERNEST F GRIFFIN, JR, defendants: Nancy G. Ross, Noel M. Johnston, McDermott, Will & Emery, Chicago, IL.

For BLANCHE S BARLOTTA, EUGENE E BLANCHARD, JR, RODNEY J DUHON, JR, ERNEST F GRIFFIN, JR, defendants: Melvin White, Diane Long Cafritz, McDermott, Will & Emery, Washington, DC.

Case 1:04-cv-11380-WGY   Document 151-7   Filed 02/23/2007   Page 15 of 19

2003 U.S. Dist. LEXIS 2318, *; 29 Employee Benefits Cas. (BNA) 2865

For R DEAN CHURCH, defendant: Barbara Malik Weller, Matt J. Farley, Thomas Matthew Beh, Krebs, Farley & Pelleteri, LLC, New Orleans, LA.

**JUDGES:** A.J. McNAMARA, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** A.J. McNAMARA

**OPINION:**

### ORDER AND REASONS

The **Trial** of this matter was held before this court, without a jury, on Monday, September 9, 2002, through Wednesday, September 18, 2002, and Post-Trial briefing was completed on December 17, 2002. After considering the parties' Stipulations (Doc. Nos. 138 and 198) and the evidence, assessing the credibility of the witnesses, and reviewing the parties' Post-Trial memoranda and applicable law, the court now rules.

### I. Background

#### The Parties

At all times relevant to this litigation, [*3] Plaintiffs Harry L. Thompson, Jr., Raymond Young, Sr. and Peter J. Hill were employees of Avondale, Industries, Inc. (Avondale) and participants in the Avondale Employee Stock Ownership Plan (ESOP). Defendant Avondale was a publicly traded Louisiana corporation engaged in the business of military and commercial shipbuilding.

Defendants Blanche S. Barlotta, R. Dean Church, Rodney J. Duhon, Jr., Ernest F. Griffin, Jr. and Eugene E. Blanchard, Jr. were employees of Avondale and members of the Administrative Committee for the ESOP. Defendant Church was the Chair of the ESOP Committee and he also served as Corporate Vice President and Chief Administrative Officer of Avondale.

Defendants Albert L. Bossier, Jr., Thomas M. Kitchen, and Kenneth Dupont were Directors and Executive Officers of Avondale. Mr. Bossier was Chairman of the Board, the Chief Executive Officer and the President; Mr. Kitchen was the Corporate Vice President, the Chief Financial Officer, and the Secretary; and Mr. Dupont was the Vice President of Commercial and Offshore Programs.

#### The Early History of the ESOP

The court incorporates by reference the parties' Joint Stipulation of Uncontested Facts, [*4] **Numbers 1-49,** contained in Doc. No. 198.

#### The Committee and Trustees

The court incorporates by reference the parties' Joint Stipulation of Uncontested Facts, **Numbers 50-55,** contained in Doc. No. 198.

#### The 1988 IPO

The court incorporates by reference the parties' Joint Stipulation of Uncontested Facts, **Numbers 56-58,** contained in Doc. No. 198.

#### The 1989 ESOP Secondary Offering

The court incorporates by reference the parties' Joint Stipulation of Uncontested Facts, **Numbers 59-63,** contained in Doc. No. 198.

#### Navy Reprioritization

The court incorporates by reference the parties' Joint Stipulation of Uncontested Facts, **Numbers 64-67,** contained in Doc. No. 198.

#### Union Election Campaign

The court incorporates by reference the parties' Joint Stipulation of Uncontested Facts, **Numbers 68-85,** contained in Doc. No. 198.

#### The 1994 Annual Shareholders' Meeting

The court incorporates by reference the parties' Joint Stipulation of Uncontested Facts, **Numbers 86-150,** contained in Doc. No. 198.

#### The Stockholder Protection Rights Agreement

The court incorporates [*5] by reference the parties' Joint Stipulation of Uncontested Facts, **Numbers 151-154,** contained in Doc. No. 198.

#### The 1994 Stock Sale

The court incorporates by reference the parties' Joint Stipulation of Uncontested Facts, **Numbers 155-160,** contained in Doc. No. 198.

#### The 1995 Annual Shareholders' Meeting

The court incorporates by reference the parties' Joint Stipulation of Uncontested Facts, **Numbers 161-226,** contained in Doc. No. 198.

#### The 1996 Stock Sale

The court incorporates by reference the parties' Joint Stipulation of Uncontested Facts, **Numbers 227-252,** contained in Doc. No. 198.

#### The 1996 Annual Shareholders' Meeting

The court incorporates by reference the parties' Joint Stipulation of Uncontested Facts, **Numbers 253-267,** contained in Doc. No. 198.

#### The 1997 Aborted Stock Sale

Case 1:04-cv-11380-WGY   Document 151-7   Filed 02/23/2007   Page 16 of 19

2003 U.S. Dist. LEXIS 2318, *; 29 Employee Benefits Cas. (BNA) 2865

The court incorporates by reference the parties' Joint Stipulation of Uncontested Facts, **Numbers 268-273**, contained in Doc. No. 198.

### *The 1997 Annual Shareholders' Meeting*

The court incorporates by reference the parties' Joint Stipulation of Uncontested Facts, **Numbers 274-293**, [*6] contained in Doc. No. 198.

### *The 1998 Stock Sale*

The court incorporates by reference the parties' Joint Stipulation of Uncontested Facts, **Numbers 294-308**, contained in Doc. No. 198.

### *The 1998 Annual Shareholders' Meeting*

The court incorporates by reference the parties' Joint Stipulation of Uncontested Facts, **Numbers 309-330**, contained in Doc. No. 198.

### *The Management Defendants' Stock Sales*

The court incorporates by reference the parties' Joint Stipulation of Uncontested Facts, **Numbers 331-335**, contained in Doc. No. 198.

### *The Merger of Avondale and Litton Industries, Inc.*

The court incorporates by reference the parties' Joint Stipulation of Uncontested Facts, **Numbers 354-362**, contained in Doc. No. 198.

### II. Plaintiffs' Claims

In this matter, Plaintiffs' claims are intertwined with Union disputes at Avondale. According to Plaintiffs, when employees began to attend annual shareholders' meetings presenting resolutions disadvantageous to management, Avondale's Management planned to drastically reduce the Avondale Employee Stock Ownership Plan (ESOP) as a shareholder of Avondale in order to silence [*7] the employees as ESOP participants, and thus eliminate Union influence. Plaintiffs contend that to accomplish this goal, Avondale's Management team caused the ESOP Committee to sell large portions of the ESOP's Avondale stock in **1996** and **1998** despite compelling reasons to retain the stock.

Plaintiffs contend that in **February 1996**, Avondale Management (for its own purposes) exercised control over the ESOP Administrative Committee and directed the Committee members to sell to the public approximately 3.5 million shares of the ESOP's Avondale stock at a gross price of $ 15.75/share (net $ 14.84). When that sale was completed, the ESOP stock ownership in Avondale Industries was reduced from approximately 47.2% to approximately 22% of all Avondale shares issued and outstanding.

Plaintiffs further contend that in **June 1998**, Avondale Management directed the ESOP Administrative Committee to tender over 1 million of the ESOP's shares in Avondale Industries to the company through a "dutch auction" cash tender offer at a price of $ 28.875/share. n1 As a result of the dutch auction, the ESOP stock ownership in Avondale Industries was reduced from approximately 19.4% to [*8] approximately 13.4% of all Avondale shares issued and outstanding.

n1 *See* definition of "dutch auction" in fn. 19, *infra*.

Because of the diminution in the number of voting shares in the ESOP, Plaintiffs believe that the employees lost significant leverage in having input into company management and the union's efforts to organize production workers was thwarted. Further, when Avondale ultimately merged with Litton in August 1999, Avondale shareholders were paid $ 39.50 for each share of Avondale common stock, and Plaintiffs see this value as significantly more than the amount for which the Avondale stock was sold by the ESOP in either the 1996 secondary offering or the 1998 dutch auction.

On November 11, 1999, Plaintiffs filed this suit as ERISA participants and on behalf of the Avondale ESOP as a whole. n2 Plaintiffs sue Defendants (either as members of the ESOP Administrative Committee or as members of the Management Team) for the alleged breach of their fiduciary duties in connection with both the [*9] **1996 sale** of over 3.5 million shares of Avondale stock by the ESOP to the public (i.e., the secondary offering), and the **1998 sale** of over 1 million shares of Avondale stock by the ESOP to Avondale (i.e., the Dutch Auction). *See* Amended Complaint, Doc. No. 4, Counts 2 & 3. n3

n2 ERISA § 502(a), 29 U.S.C. § 1132(a), provides that:

[HN1] A civil action may be brought-

(1) by a participant or beneficiary-

(A) for the relief provided for in subsection (c) of this section, or

(2) to recover benefits due to him under the terms of his

Case 1:04-cv-11380-WGY    Document 151-7    Filed 02/23/2007    Page 17 of 19

2003 U.S. Dist. LEXIS 2318, *; 29 Employee Benefits Cas. (BNA) 2865

> plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
>
> (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
>
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan ...

Here, Plaintiffs state claims for breach of fiduciary duty on behalf of the ESOP as a whole, rather than for individual claims for benefits under 29 U.S.C. § 1132(a)(1)(B). They do not assert their ERISA claims as a class action. (*See* December 3, 2001, Minute Entry, Doc. No. 158, discussing Plaintiffs' right to bring their claims on behalf of the ESOP as a whole).

[*10]

n3 Initially, Plaintiffs also asserted a violation of Section 10(b) of the Securities Exchange Act of 1943 against Defendant Avondale. (*See* Amended Complaint, Count 1). But the court ultimately granted Defendant Avondale's Motion to Dismiss that claim (*see* Minute Entry, Doc. No. 33), and the Plaintiffs elected not to further amend their Complaint to allege a securities fraud claim against the individual Defendants.

Defendants deny that they breached any fiduciary duty imposed by ERISA. Further, the ESOP Committee members maintain that Avondale's management did not influence their decisions to engage in the 1996 and 1998 transactions, and that both transactions were undertaken not to defeat the Union, but to diversify and decrease the risk of loss given the historical high volatility of Avondale stock.

### III. Legal Analysis

[HN2] Title I of the Employment Retirement Income Security Act of 1974, as amended (ERISA), 29 U.S.C. § 1001 *et seq.*, is a comprehensive remedial statute designed "to protect the interests of participants in employee benefit plans .. [*11] . by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans". 29 U.S.C. § § 1001, 1001(b).

One of the declared purposes of Congress in adopting ERISA was to increase the likelihood that participants and beneficiaries under employee benefit plans would "receive their full benefits". 29 U.S.C. § § 1001 & 1001b(c)(3).

One type of employee benefit plan subject to the provisions of ERISA is an "employee stock ownership plan" (ESOP). [HN3] An ESOP is an individual account plan that--

> is a stock bonus plan which is qualified, or a stock bonus plan and money purchase plan both of which are qualified, under section 401 of Title 26, and **which is designed to invest primarily in qualifying employer securities** ...

29 U.S.C. § 1107(d)(6)(A) (emphasis added).

[HN4] "**Qualifying employer securities**" are typically shares of stock in the employer creating the plan. *Id.* at § 1107(d)(5)(A).

An ESOP is seen as both "a device for expanding the national capital base among employees--an effective merger of the roles of capitalist and worker" [*12] and "a device for achieving a variety of objectives for its corporate sponsor, such as financing of acquisitions or divestitures, or for the sponsor's major shareholders as an estate and planning tool." *Donovan v. Cunningham, 716 F.2d 1455, 1458 & n. 2 (5th Cir. 1983)*(citations omitted). n4

n4 The concept of employee ownership is a goal in and of itself for an ESOP. In passing the Tax Reform Act of 1976, Congress explicitly stated its concern that courts should refrain from erecting barriers that would interfere with that goal:

> The Congress is deeply concerned that the objectives sought by [the

Case 1:04-cv-11380-WGY    Document 151-7    Filed 02/23/2007    Page 18 of 19

2003 U.S. Dist. LEXIS 2318, *; 29 Employee Benefits Cas. (BNA) 2865

series of laws encouraging ESOPs] will be unattainable by regulations and rulings which treat employee stock ownership plans as conventional retirement plans, which reduce the freedom of the employee trusts and employers to take the necessary steps to implement the plans, and which otherwise block the establishment and success of these plans.

Tax Reform Act of 1976, Pub.L.No. 94-455, § 803(h), 90 Stat. 1590 (1976), *quoted* in *Donovan v. Cunningham,* 716 F.2d at 1466 n. 24 (5th Cir.1983)).

[*13]

[HN5] Under ERISA, an ESOP "shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a). Further, "such instrument shall provide for one or more named **fiduciaries** who jointly or severally shall have authority to control and manage the operation and administration of the plan." *Id.* (emphasis added).

[HN6] Establishment of standards of fiduciary responsibility in the employee benefit context was one of the primary objectives of ERISA. *Donovan,* 716 F.2d at 1463 & n. 13 . Congress ultimately adopted a **"prudent man standard of care"** which requires that a fiduciary acting on behalf of an employee benefit plan must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" and:

(1) **for the exclusive purpose of providing benefits to participants** and their beneficiaries and defraying reasonable expenses of administering the plan;

(2) **with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man** acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like [*14] character and with like aims;

(3) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly imprudent not to do so; and

(3) **in accordance with documents and instruments governing the plan.**

ERISA, 29 U.S.C. § 1104 (a)(1)(A-D) (emphasis added).

However, [HN7] to encourage employees' ownership of their employer company, *a fiduciary of an ESOP is specifically exempted from the diversification requirement* when qualifying employer securities (again, typically employer stock) are acquired or held. 29 U.S.C. § § 1104(a)(2) & 1107(d)(3) & (5). Nevertheless, a plan provision that completely prohibits diversification of ESOP assets necessarily violates the ERISA's goal of ensuring the proper management and soundness of employee benefit plans. *Kuper v. Iovenko,* 66 F.3d 1447, 1457 (6th Cir. 1995). n5

n5 *See also* fn. 14, *infra.*

[HN8] ERISA, § 404 imposes upon all [*15] fiduciaries overlapping duties of loyalty and care. *Donovan,* 716 F.2d at 1464; *Bussian v. RJR Nabisco, Inc.,* 223 F.3d 286, 299 (5th Cir. 2000). Fiduciaries consistently meet their duty of loyalty if "their decisions [are] made with an eye single to the interests of the participants and beneficiaries ... taking all steps necessary to prevent conflicting interests from entering into the decision-making process." *Bussian,* 223 F.3d at 298.

In addressing compliance with the fiduciary's duty of care (prudent man standard), the Fifth Circuit instructs:

courts objectively assess whether the fiduciary, at the time of the transaction, utilized proper methods to investigate, evaluate and structure the investment; acted in a manner as would others familiar with such matters; and exercised independent judgement when making investment decisions. [ERISA's] test of prudence ... is one of conduct, and not a test of the result of the performance of the investment.

*Id.* at 299.

[HN9] "The presence of conflicting interests imposes on fiduciaries the obligation to take precautions to ensure that their duty of loyalty is [*16] not compromised." *Id.* As the Fifth Circuit has explains:

Case 1:04-cv-11380-WGY   Document 151-7   Filed 02/23/2007   Page 19 of 19

2003 U.S. Dist. LEXIS 2318, *; 29 Employee Benefits Cas. (BNA) 2865

"the level of precaution necessary to relieve a fiduciary of the taint of a potential conflict should depend on the circumstances of the case and the magnitude of the potential conflict." To ensure that actions are in the best interests of plan participants and beneficiaries, fiduciaries under certain circumstances may have to "at a minimum" undertake an "intensive and scrupulous independent investigation of [the fiduciary's] options."

*Id.* quoting *Metzler v. Graham*, 112 F.3d 207, 213 (5th Cir. 1997) and *Leigh v. Engle*, 727 F.2d 113, 125-26 (7th Cir. 1986).

If a proper investigation has been conducted, a fiduciary does not violate his duties of loyalty and care "simply because an action it determines best promotes participants' and beneficiaries' interests 'incidentally benefits the corporation.'" 223 F.3d at 302.

Here, Plaintiffs primarily contend that "the ESOP Defendants breached their ERISA fiduciary duties by undertaking the diversification of plan assets, through the bulk Stock Sales in 1996 and 1998, without first scrupulously examining the available investment options—particularly [*17] the option of retaining or even expanding the ESOP's Avondale common stock holdings." (*See* Doc. No., Plaintiffs' Post-Trial Brief at 4).

Plaintiffs also argue that the ESOP Defendants breached their fiduciary duties because the 1996 and 1998 stock sales reduced the ESOP's holdings to significantly less than a "primary investment" in employer securities. Although the ESOP Defendants claimed that they sold the stock to diversify and thereby decrease the risk of loss, Plaintiffs argue that there is a legal presumption favoring the ESOP's retention of employer securities, and Defendants failed to overcome this presumption because there was no compelling reason to diversify.

Further, although the Avondale Plan (as amended by Amendment No. 3) divided the Plan into an employee stock ownership portion and a stock bonus portion, Plaintiffs postulate the Plan nevertheless remained an ESOP subject (in Plaintiffs' opinion) to a presumption against diversification. Finally, Plaintiffs avow that the ESOP Defendants breached their fiduciary duties to the ESOP by selling the ESOP's Avondale stock (in both 1996 and 1998) for less than its fair market value.

With regard to the Management Defendants, [*18] Plaintiffs claim that they should be held liable as both named fiduciaries and co-fiduciaries pursuant to the language of the Avondale Employee Stock Plan, as well as *de facto* fiduciaries because they directed the ESOP Committee (either directly or indirectly) to dispose of the ESOP's assets with the specific goal of eliminating Union influence at Avondale.

As discussed below, the court concludes that Plaintiffs failed to prove that any of the Defendants breached their fiduciary duties under ERISA, because: (1) the Plan (as amended by Amendment No. Three) contained both an ESOP component and a stock bonus component, which allowed the ESOP Administrative Committee to diversify by selling Avondale stock held in the ESOP; and (2) the 1996 and 1998 sales were prudent means of diversification and were undertaken in the best interests of the Plan's participants and beneficiaries.

**A. Amendment Number Three Allowed the ESOP Committee to Sell and Diversify.**

*1. Avondale's ESOP Plan (Before Amendment Number Three)*

[HN10] An employer setting up an ESOP will execute a written document to define the terms of the plan and the rights of beneficiaries under it. 29 U.S.C. § 1102(a). [*19] Here, the Avondale ESOP (as it existed before Amendment Number Three), stated in its Preamble:

> The purpose of the Plan ... is to encourage employees to make and continue careers with Avondale Industries, Inc. and certain related employers by allowing employees to obtain beneficial interests in the common stock of Avondale Industries, Inc., to provide an effective means for employees to accumulate funds for their own retirement, and to enable employees to share in the appreciation and depreciation of the common stock of Avondale Industries, Inc. accumulated by the Plan. The Plan is designed to invest primarily in common stock of Avondale Industries, Inc.
>
> The Plan and its related Trust are intended to qualify as an employee stock ownership plan and trust under Sections 401(a), 501(a) and 4975(e)(7) of the Internal Revenue Code of 1986, as amended.

*See* Trial Exhibit 3, Bates stamped page AVDL 25434.

Article V, § 5.1 defined "Participant Accounts" as: