## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KERI EVANS, et al.,  )<br>  )<br>           Plaintiffs,  )<br>  )<br>           v.  )<br>  )<br>JOHN F. AKERS, et al.,  )<br>  )<br>           Defendants.  )<br>_____ )<br>  )<br>LAWRENCE W. BUNCH, et al.,  )<br>  )<br>           Plaintiffs,  )<br>  )<br>           v.  )<br>  )<br>W. R. GRACE & CO., et al.,  )<br>  )<br>           Defendants.  )<br>_____ ) | **Consolidated Under**<br>**Case No. 04-11380-WGY** |

### GRACE DEFENDANTS' OPPOSITION TO THE EVANS PLAINTIFFS' MOTION FOR LEAVE TO AMEND CONSOLIDATED AMENDED COMPLAINT TO ADD MARK SIAMIS AS A CLASS REPRESENTATIVE OR, IN THE ALTERNATIVE, TO INTERVENE PLAINTIFF MARK SIAMIS

Defendants W. R. Grace & Co. ("Grace"), W. R. Grace & Co. Investment and Benefits Committee, W. R. Grace & Co. Administrative Committee, John F. Akers, H. Furlong Baldwin, Ronald C. Cambre, Marye Anne Fox, John J. Murphy, Paul J. Norris, Thomas A. Vanderslice, Fred E. Festa, Robert M. Tarola, Eileen Walsh, David Nakashige, Elyse Napoli, Martin Hunter, Ren Lapidario, Brenda Gottlieb, W. Brian McGowan, and Michael Piergrossi (collectively, the "Grace Defendants"), by and through their undersigned counsel, hereby oppose the motion by Keri Evans and Timothy Whipps (the "Evans Plaintiffs") for leave to amend the First Amended Complaint to add

Mark Siamis as a class representative or, in the alternative, for Mark Siamis to intervene in this action (the "Evans Motion").

## I. PRELIMINARY STATEMENT

Under this Court's September 12, 2006 Order, the deadline for the parties to amend their pleadings and/or join new parties in this action was April 5, 2007. The Evans Plaintiffs missed that deadline by almost two months, with no explanation. Their failure to timely join Mr. Siamis in this action could not be because they were unaware that they may need to add a new plaintiff. Indeed, the Grace Defendants challenged the standing of the Evans Plaintiffs over a year ago, and it has been more than six months since this Court dismissed their claims for lack of standing. Now, fact discovery has closed, expert discovery is well under way, and the parties are scheduled for a trial in this complex ERISA action in less than four months. Under these circumstances, the prejudice that would befall the remaining parties by allowing the Evans Plaintiffs to resurrect their claims at this late date is undeniable.

## II. BACKGROUND

Nearly three years ago, on June 17, 2004, the Evans Plaintiffs filed their initial complaint in the District of Massachusetts generally alleging that some of the Grace Defendants and others had violated their fiduciary obligations under the Employee Retirement Income Security Act of 1974 ("ERISA") to members of a putative class of participants in the W. R. Grace Savings and Investment Plan (the "Plan"). On October 26, 2004, plaintiffs Lawrence W. Bunch, Jerry L. Howard, Sr., and David Mueller (collectively, the "Bunch Plaintiffs") filed a class action in the United States District Court for the Eastern District of Kentucky against some of the Grace Defendants and

2

others, likewise alleging violations of fiduciary obligations under ERISA on behalf of a putative class of Plan participants. Although the theories of recovery espoused by the Evans Plaintiffs and Bunch Plaintiffs were different, and some of the Defendants were different, the claims were brought pursuant to the same sections of ERISA, and were based upon the same set of operative facts relating to the Plan and, specifically, the company stock fund, which was an investment option in the Plan. Consequently, on motion by the Grace Defendants, the Bunch Plaintiffs' case was transferred to the District of Massachusetts, and this Court then ordered the cases consolidated on August 23, 2005.

On May 15, 2006, the Evans Plaintiffs and Bunch Plaintiffs moved for class certification. On May 30, 2006, the Grace Defendants opposed the Evans class certification on the grounds that, among other things, the two named plaintiffs were former participants in the Plan and therefore lacked standing to pursue any claims on behalf of themselves or a class.[1] While the class certification motions were pending, the parties obtained a brief stay of the litigation in order to participate in mediation in August 2006. After the mediation concluded unsuccessfully, *all parties* – the Bunch Plaintiffs, the Grace Defendants, the State Street Defendants, *and* the Evans Plaintiffs – negotiated and submitted a proposed schedule to govern discovery and the remainder of the case. That schedule was accepted and entered by the Court on September 12, 2006 (the "September Scheduling Order"). *See* Ex. A, September 12, 2006 Order.

The September Scheduling Order provided for six months of discovery, which was to commence "upon the earlier of (a) the expiration of 60 days; or (b) immediately

---

[1] The standing defense was also put forth as an affirmative defense in the Answer filed by the Grace Defendants on January 24, 2006. Contrary to the contention of the Evans Plaintiffs, the fact that the Grace Defendants filed an answer rather than a motion to dismiss in no way constituted an implicit acknowledgement or concession of the legal adequacy of their complaint.

3

upon the Court's ruling on the Class Certification Motions . . . ." *See Id.* Pursuant to this provision, fact discovery in the case commenced as of November 13, 2006, and was due to close on May 14, 2007. This deadline for the close of discovery was subsequently extended until June 1, 2007. *See* Ex. B, May 2, 2007 Scheduling Order.

On September 28, 2006, the Court held a hearing on the Evans and Bunch Plaintiffs' motions for class certification. After hearing argument on the issue of the Evans Plaintiffs' standing, the Court took the issue under advisement. On December 6, 2006, the Court ruled that the Evans Plaintiffs lacked standing, and thus it denied the Evans Plaintiffs' motion for class certification and dismissed their claims.[2] This ruling had the further effect of dismissing nine defendants from the case – eight individuals and the Administrative Committee – parties sued only by the Evans Plaintiffs and not by the Bunch Plaintiffs. No motion was made at the time of this dismissal, or at any point during the pendency of Grace's opposition to the Evans class certification motion, for Mr. Siamis or any other putative class member with standing to join or intervene in the case.

Subsequent to the Evans Plaintiffs' dismissal in December 2006, the remaining parties – the Bunch Plaintiffs, the State Street Defendants, and the Grace Defendants who were sued by the Bunch Plaintiffs – moved forward with discovery. The Bunch Plaintiffs' class was certified on March 1, 2007, following the filing of an Amended

---

[2] The Evans Plaintiffs subsequently appealed this ruling, both as an interlocutory matter pursuant to Fed. R. Civ. P. 23(f), and as a final judgment pursuant to 28 U.S.C. § 1291. The First Circuit denied the Evans Plaintiffs' Rule 23(f) petition on April 9, 2007. The § 1291 appeal remains pending; the appellants' opening brief is due June 29, 2007. The First Circuit has specifically requested that the parties address in their briefs whether the dismissal of the Evans Plaintiffs' claims from this case constituted a "final judgment" subject to an immediate appeal pursuant to § 1291.

Complaint and additional motions briefing. Millions of pages of potentially relevant electronic and paper documents were then reviewed and hundreds of thousands of pages produced, interrogatories were served and answered, and, beginning on April 30, eleven depositions have been taken. The Evans Plaintiffs participated in none of these events.

The Court's deadline for amending pleadings and/or joining additional parties also passed without word from the Evans Plaintiffs. Pursuant to the September 12, 2006 Scheduling Order – negotiated with the Evans Plaintiffs – the deadline for adding new parties was April 5, 2007, 120 days after the Court's ruling on class certification. *See* Ex. A. At that point, fact discovery was still ongoing and no depositions had yet been taken.

The Evans Plaintiffs filed their motion to insert a new plaintiff into this case and resurrect their claims on May 30, 2007 – nearly two months after the deadline, and just two days shy of the close of fact discovery. At this juncture, the parties are now heavily engaged in expert discovery, with initial reports (six in total) already having been exchanged. Expert discovery closes July 18, 2007. Dispositive motions are due in August 2007; the pretrial conference is scheduled for September 4, 2007; and the case is scheduled for trial in October 2007.

### III. ARGUMENT

#### A. The Motion to Amend the Complaint to Add a New Plaintiff Should Be Denied.

##### 1. The Evans Plaintiffs Have Not Demonstrated the Requisite Good Cause for Filing Their Motion Out of Time.

The Evans Motion focuses on Rule 15(a) and its provision for liberal allowance of amendments: "leave [to amend] shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). This is the wrong rule. The standard applicable here is not the "freely

5

given" Rule 15(a) standard, but the more stringent "good cause" standard under Rule 16(b).

Rule 16(b) requires that the district court enter a scheduling order setting the deadlines for proceedings in the litigation, including deadlines for amending the pleadings and joining additional parties, and prohibits variation from those deadlines "except upon a showing of good cause." Fed. R. Civ. P. 16(b)(1). The purpose of limiting the period for amending the pleadings is to assure "that at some point both the parties and the pleadings will be fixed." *O'Connell v. Hyatt Hotels of P. R.*, 357 F.3d 152, 154 (1st Cir. 2004) (citing Advisory Committee Notes to the 1983 Amendments to Rule 16(b)). The First Circuit and the District of Massachusetts have made clear that a motion to amend or join new parties that is filed after the deadline set by a scheduling order is governed by Rule 16(b)'s "good cause" standard. *See, e.g., id.*; *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004) ("As a case progresses, and the issues are joined, the burden on a plaintiff seeking to amend a complaint becomes more exacting . . . . Once a scheduling order is in place, the liberal default rule is replaced by the more demanding 'good cause' standard of Fed. R. Civ. P. 16(b)") (citation omitted); *Riofrio Anda v. Ralston Purina, Co.*, 959 F.2d 1149, 1154-55 (1st Cir. 1992) (affirming denial of motion to amend filed after expiration of scheduling order deadline because allowing amendment would be inconsistent with purposes of Rule (16(b)); *Berwind Prop. Group Inc. v. Envtl. Mgmt. Group Inc.*, 233 F.R.D. 62, 66 (D. Mass. 2005) ("[T]he more stringent 'good cause' standard of Fed. R. Civ. P. 16(b), not the 'freely given' standard of Rule 15(a) . . . governs motion to amend after a scheduling order is in place.") (citation omitted).

Unlike Rule 15(a)'s "freely given" standard, which focuses on the bad faith of the moving party and the prejudice to the opposing party, Rule 16(b) focuses on the diligence of the party seeking the amendment. *O'Connell*, 357 F.3d at 155 ("Indifference by the moving party seals off this avenue of relief irrespective of prejudice because such conduct is incompatible with the showing of diligence necessary to establish good cause.") (internal quotations omitted) (citation omitted); *see also Steir*, 383 F.3d at 12 ("Regardless of the context, the longer a plaintiff delays, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, *is itself sufficient reason for the court to withhold permission to amend*.") (emphasis added) (citing *Acosta-Mestre v. Hilton Int'l of P.R., Inc.*, 156 F.3d 49, 52-53 (1st Cir. 1998)).

Neither the First Circuit nor the District of Massachusetts have hesitated to deny motions to amend where lengthy periods have elapsed between the initial filing of the complaint and the filing of the motion and there is no showing of good cause for the delay; this is especially true in situations where the motion fails to comply with a scheduling order, or is filed after the expiration of discovery. *See, e.g., Acosta-Mestre*, 156 F.3d at 52 (affirming denial of motion to amend filed fifteen months after initial complaint filed, when discovery was almost closed, and "nearly all the case's pre-trial work was complete"); *Grant v. News Group Boston, Inc.*, 55 F.3d 1, 6 (1st Cir. 1995) (affirming denial of a motion to amend that had been submitted 14 months after the filing of the initial complaint and after the close of discovery); *Quaker State Oil Refining Corp. v. Garrity Oil Co., Inc.*, 884 F.2d 1510, 1518 (1st Cir. 1989) (affirming denial of moving party's motion to amend where "only two months remained in an already extended

discovery period," "[a] great deal of discovery had taken place without reference to [the moving party's claim] thus prejudicing [the opposing party]"); *Resnick v. Copyright Clearance Ctr.*, 422 F. Supp. 2d 252, 256 (D. Mass. 2006) (plaintiffs' motion to amend complaint denied where three years passed since dismissal of original claim, "discovery proceeded and the parties litigated two substantive motions").

Here, in accordance with Rule 16(b), the Court entered its Scheduling Order on September 12, 2006. The schedule set by the September 12, 2006 Order – to which all parties including the Evans Plaintiffs had agreed and which the Court had entered as an Order – allowed the parties until April 5, 2006 to amend pleadings and/or join new parties. The Evans Motion was filed eight weeks late, on May 30, 2007, without any excuse or justification offered as to why they did not meet this Court's deadline.

But it is not only the failure to meet the scheduled deadline that tells the story here. The Evans Plaintiffs' lack of diligence in making sure their claims would be litigated began over a year ago. The Evans Plaintiffs were first made aware of the challenge to their standing that ultimately led to the denial of class certification and dismissal of their claims when the Grace Defendants asserted lack of standing as an affirmative defense in their Answer, filed in January 2006. *See Espinosa v. Sisters of Providence Health Sys.*, 227 F.R.D. 24, 27 (D. Mass. 2005) (citing 6A Charles Alan Wright, et al., *Federal Practice & Procedure* § 1488 (2003)) (motions to amend "should be made as soon as the necessity for altering the pleading becomes apparent"). Then, on May 30, 2006, in opposition to Evans' motion for class certification, the Grace Defendants set forth in detail their meritorious legal arguments as to why the Evans Plaintiffs lacked standing to pursue their claims, either on their own or on behalf of a

8

putative class. Clearly then, the Evans Plaintiffs knew that their ability to represent this class was in serious jeopardy. A motion to join an additional potential class representative – one that was still participating in the Plan and thus had unquestionable standing – would have been appropriate at that time. But the Evans Plaintiffs made no effort to join Mr. Siamis or any other current Plan participant with standing.

The Court heard oral arguments on the standing issue at the class certification hearing held on September 28, 2006. Despite the warning signs then, that the Court was taking the standing challenge very seriously and was taking the matter under advisement, again no motion to join an additional plaintiff with standing was made. On December 6, 2006, the Court issued its ruling denying class certification for lack of standing and dismissing the Evans Plaintiffs' claims. At this juncture, the Evans Plaintiffs knew with certainty that they no longer had any class representatives remaining in the case to pursue their claims as the litigation continued in the District Court. But yet again, no mention of any motion to join was made at that time.

The litigation then proceeded without any involvement or participation by any putative member of the Evans class; no Evans claims were pursued any further. Four months later, the April 5, 2007 deadline for motions to amend and join new parties came and went without any action from the Evans Plaintiffs or their putative class.

The Evans Plaintiffs and putative class members have sat idly by, knowing full well that the litigation was proceeding without them and that critical deadlines were passing. They had months upon months of opportunities to join a new plaintiff with standing to keep their claims alive and in the case. Time and time again, with the passage of filings, hearings, and a final ruling, they never moved. Now, almost three years after

9

they filed their initial complaint, more than a year after they knew their class representatives were in jeopardy of dismissal, six months after their claims were dismissed, and nearly two months after the Court-ordered deadline for adding new parties, they are quite simply too late. There can be no "good cause" for their having waited so long. And, indeed, the Evans Motion offers absolutely no reason for their delay. *See O'Connell*, 357 F.3d at 155 (holding that where a lengthy delay in moving went unexplained, it "vindicate[d] the district court's conclusion that plaintiffs were not diligently pursuing this litigation"); *Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1178 n.11 (1st Cir. 1995) (amendments to pleadings even under Rule 15(a) are "frown[ed] upon . . . particularly if no legitimate justification for the delay is forthcoming"); *Quaker State,* 884 F.2d at 1518 (1st Cir. 1989) (among multiple factors in support of court's denial of defendant's motion to amend pleadings, the "most important [is that] defendant never proffered a satisfactory reason for its delay").

> **2. Allowing Joinder of a New Plaintiff at this Juncture Would Severely Prejudice the Grace Defendants.**

While Rule 16(b) does not focus on the prejudice to the opposing party resulting from an untimely motion to amend, prejudice is nevertheless an appropriate factor for a court to consider. *O'Connell*, 357 F.3d at 155 ("Prejudice to the opposing party remains relevant but it is not the dominant criterion."). "Particularly disfavored are motions to amend whose timing prejudices the opposing party by requiring a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy." *Steir*, 383 F.3d at 12 (citing *Acosta-Mestre*, 156 F.3d at 52). Here, the prejudice is palpable.

The Evans Motion was filed just two days before fact discovery concluded. The parties to the Bunch Complaint thus had conducted six months of intense discovery on this complex ERISA case without any involvement by the Evans Plaintiffs or any members of their putative class. Interrogatories were exchanged, millions of pages of documents were reviewed and hundreds of thousands of pages of documents in both electronic and paper form were produced. Eleven depositions were taken. Obviously none of this discovery covered Mr. Siamis's adequacy to serve as a class representative and none of it was targeted at the merits of the Evans Plaintiffs' claims to the extent they might have evidentiary needs distinct from the claims pursued by the Bunch Plaintiffs. Had the Evans Plaintiffs met this Court's April 5 deadline, they could have participated in fact discovery and attended all of the depositions, which did not begin until April 30.

And it is not only the Evans Plaintiffs and the Evans claims that have been missing from these past six months of litigation. The Grace Defendants who were named only in the Evans Complaint and not in the Bunch Complaint – nine of them in total – also have not been participating. Naturally, when the Evans claims were dismissed, those particular defendants were dismissed from the case as well.

Expert discovery is now underway and initial expert reports have already been exchanged. The Scheduling Order requires dispositive motions to be filed in August, and has set pre-trial proceedings for September, and a trial to be held in October – just four months away. If Mr. Siamis were allowed to join this case now, the Grace Defendants would be required to re-analyze their discovery and defense strategy, new experts would have to be identified and new reports obtained to address the separate issues raised by the Evans' claims, and additional burdens would be placed on the executives of Grace, who

have already been through six months of discovery while also managing substantial issues in the company's bankruptcy. But how could the Grace Defendants be expected to defend the Evans claims at trial without having been permitted fact and expert discovery specific to them? On the other hand, how can it be fair to permit a new plaintiff to join so late that discovery efforts must be entirely re-thought and re-drawn? Even if the schedule is amended to allow for additional time to address the new Evans Plaintiff's claims, the Grace Defendants will be prejudiced by being forced to duplicate effort, time, and expenses incurred in the discovery and litigation efforts already conducted to date.[3]

### B. The Evans Plaintiffs' Alternative Request to Intervene Mr. Siamis Should Be Denied as Prejudicial and Untimely.

A motion to intervene in an action, just like a motion to join additional parties, must be timely made. The timeliness requirement applies whether an applicant seeks to intervene as of right pursuant to Rule 24(a) or by permission pursuant to Rule 24(b). *In re Sonus Networks, Inc.*, 229 F.R.D. 339, 347 (D. Mass. 2005) ("Threshold to both permissive intervention and intervention of right is timeliness."). "In deciding whether to grant a motion to intervene, '*the timeliness requirement is of first importance.*'" *Id.* at 345 (emphasis added) (citations omitted); *see also Banco Popular de P. R. v. Greenblatt*, 964 F.2d 1227, 1230 (1st Cir. 1992) ("Timeliness stands as a sentinel at the gates whenever intervention is requested and opposed.").

---

[3] Perhaps the greatest prejudice to ensue from Mr. Siamis's joinder at this time would be if the Grace Defendants were forced to litigate against the Evans and Bunch Plaintiffs on different schedules, notwithstanding the Court's prior conclusion that the cases should be consolidated because they arise from the same set of operative facts and involve similar legal issues. Accordingly, if this Court allows joinder at this time, the Grace Defendants respectfully request that it place appropriate restrictions on the Evans Plaintiffs' discovery rights so that the cases would still be tried together.

The First Circuit has specified four factors a court should consider in evaluating the timeliness of a motion to intervene:

> (i) the length of time the applicant knew or reasonably should have known that its interest was imperiled before it moved to intervene; (ii) the foreseeable prejudice to existing parties if the intervention is granted; (iii) the foreseeable prejudice to the applicant if intervention is denied; and (iv) idiocratic circumstances which, if fairly viewed, militate for or against intervention.

*Id.* at 1231 (citing *Culbreath v. Dukakis*, 630 F.2d 15, 20-24 (1st Cir. 1980)).  Generally, "parties having knowledge of the pendency of litigation which *may* affect their interest sit idle at their peril." *Caterino v. Barry*, 922 F.2d 37, 41 (1st Cir. 1990) (quoting *Narragansett Indian Tribe v. Ribo, Inc.*, 868 F.2d 5, 7 (1st Cir. 1989) (emphasis in original).  When a potential intervening plaintiff learns that there is some "measurable risk" that his interests are not being adequately protected by the existing parties in a case, he has a duty to step in "reasonably promptly." *Banco Popular de P. R.*, 964 F.2d at 1231.  At that point, the "tempo of the count accelerates" and the plaintiff cannot sit back, expecting that he will be permitted to intervene whenever it suits him to finally take action.  *Id.; see also Harvey v. Veneman*, 222 F.R.D. 213, 215 (D. Me. 2004) ("the law contemplates that a party must move to protect its interest no later than when it gains some actual knowledge that a measurable risk exists") (citation omitted).

It was clear at least a year ago that the representatives named for the putative class were in jeopardy of having their claims dismissed for lack of standing.  Mr. Siamis, however, did not seek to intervene at that juncture to ensure that either his interests or the interests of the class would be protected.  This Court then denied class certification and the claims were dismissed in December 2006 – six months ago.  But still Mr. Siamis did

13

not seek intervention. Instead, he waited an additional six months to move to intervene – two months after this Court's deadline for adding additional parties passed.

His joinder now would cause undeniable prejudice to the parties who have been moving forward in earnest and with all due diligence, completing fact discovery without any indication from Mr. Siamis that he wanted to participate. This case has been pending for three years. Motions practice has been extensive, as has discovery. Six expert witnesses have been retained by the parties and their reports exchanged. To require a re-opening of discovery at this juncture, thereby requiring additional and duplicative expenditures of time and resources simply because Mr. Siamis sat on his hands for so long would be patently unfair.

On the other hand, any prejudice to Mr. Siamis's alleged rights that may result from denying his motion to intervene is a result of his own inaction and should therefore be disregarded. This is especially appropriate in light of the fact that Mr. Siamis has offered no reason whatsoever for why he waited until the case was winding to a conclusion before seeking to participate. *See Sonus Networks*, 229 F.R.D. at 346 ("memorandum in support of [intervening party's] motion [] is materially incomplete and misleading because it does not even mention, let alone address, why relief should be granted from the court ordered [] deadline for moving to intervene"); *see also Jacobson v. Raytheon Aircraft Co.*, No. Civ. 98-248-P-H, 1999 WL 33117136, at *2-4 (D. Me. Mar. 17, 1999) (denying motion for permissive intervention to be untimely and unduly prejudicial where motion was made after motion deadline, discovery deadline and extensive discovery had already been undertaken).

14

Mr. Siamis simply waited too long to intervene in this case – far too long. The prejudice that would now befall the existing parties is great. And the harm, if any, to his own rights, is purely of his own making.

## IV.     CONCLUSION

For all the foregoing reasons, the Grace Defendants respectfully request that the Court deny the Evans Motion.

Dated:  June 20, 2007                               Respectfully submitted,


/s/ Matthew C. Hurley_____
William W. Kannel (BBO# 546724)
(wkannel@mintz.com)
Matthew C. Hurley (BBO# 643638)
(mchurley@mintz.com)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY and
        POPEO, P.C.
One Financial Center
Boston, MA 02111
Telephone:  (617) 542-6000
Facsimile:  (617) 542-2241

        - and -

Carol Connor Flowe
(flowe.carol@arentfox.com)
Nancy S. Heermans
(heermans.nancy@arentfox.com)
Caroline Turner English
(english.caroline@arentfox.com)
Jeffrey H. Ruzal
(ruzal.jeff@arentfox.com)
ARENT FOX LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone:  (202) 857-6054
Facsimile:  (202) 857-6395
*Counsel for W. R. Grace & Co., Investments and Benefits Committee, Administrative Committee,*

15

*John F. Akers, Ronald C. Cambre, Marye Anne Fox, John J. Murphy, Paul J. Norris, Thomas A. Vanderslice, H. Furlong Baldwin, Fred E. Festa, Robert M. Tarola, Eileen Walsh, David Nakashige, Elyse Napoli, Martin Hunter, Ren Lapidario, Brenda Gottlieb, W. Brian McGowan, and Michael Piergrossi*

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of June, 2007, a copy of the foregoing *Opposition to the Evans Plaintiffs' Motion for Leave to Amend Consolidated Amended Complaint to Add Mark Siamis as a Class Representat*ive *Or, in the Alternative, To Intervene Plaintiff Mark Siamis* was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed via U.S. Mail to all parties who are not served via the Court's electronic filing system.

/s/  Matthew C. Hurley_____
Matthew C. Hurley