# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| KERI EVANS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Consolidated Under |
| | ) | Case No. 04-11380-WGY |
| JOHN F. AKERS, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| LAWRENCE W. BUNCH, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| W. R. GRACE & CO., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF GRACE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................... 1

II.     FACTUAL BACKGROUND ............................................................... 2

     A.      Grace and Its Bankruptcy Filing ............................................. 2

     B.      The Plan and the Appointment of State Street as Independent Fiduciary for the Grace Stock Fund ............................................................... 3

     C.      State Street's decision to sell the Plan's Grace stock .............................. 5

III.    ARGUMENT ..................................................................................... 6

     A.      Amending the Plan to Allow for State Street's Appointment Was a Lawful Settlor Function, Not a Fiduciary Function ............................................ 6

     B.      The Grace Defendants Are Entitled to Judgment on the Claims Against Them if the Court Concludes that State Street Did Not Commit a Fiduciary Breach ................................................................................. 10

     C.      Denial of Summary Judgment for State Street Does Not Preclude Summary Judgment for the Grace Defendants ....................................... 11

          1.      The Grace Defendants Satisfied Their Duty to Monitor ........................... 11

          2.      The Grace Defendants Have No Co-fiduciary Liability ............................ 15

          3.      The IBC Is Entitled to Summary Judgment on All Claims ....................... 19

IV.     CONCLUSION .................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Agway Inc. Employees' 401(k) Thrift Investment Plan v. Magnuson*,
409 F. Supp. 2d 136 (N.D.N.Y. 2005) ................................................................. 9

*Alessi v. Raybestos-Manhattan, Inc.*,
451 U.S. 504 (1981) ........................................................................................... 7

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................................................................... 6

*Armstrong v. LaSalle Bank National Association*,
446 F.3d 728 (7th Cir. 2006) ............................................................................. 17

*Beddall v. State Street Bank & Trust Co.*,
137 F.3d 12 (1st Cir. 1988) ............................................................................... 15

*Boucher v. Williams*,
13 F. Supp. 2d 84 (D. Me. 1998) ....................................................................... 20

*Campbell v. BankBoston, N.A.*,
327 F.3d 1 (1st Cir. 2003) ............................................................................... 7-8

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........................................................................................... 6

*Curtiss-Wright Corp. v. Schoonejongen*,
514 U.S. 73 (1995) .......................................................................................... 7-8

*Diduck v. Kaszycki & Sons Contractors, Inc.*,
974 F.2d 270 (2d Cir. 1992) ............................................................................. 18

*DiFelice v. U.S. Airways, Inc.*,
No. 06-1892, 2007 WL 2192896 (4th Cir. Aug. 1, 2007) ................................ 8, 9

*Henry v. Champlain Enterprises, Inc.*,
288 F. Supp. 2d 202 (N.D.N.Y. 2003) ................................................... 16, 18, 19

*Hughes Aircraft Co. v. Jacobson*,
525 U.S. 432 (1999) ........................................................................................... 7

*In re Coca-Cola Enterprises, Inc. ERISA Litigation*,
No. 1:06-CV-0953, 2007 WL 1810211 (N.D. Ga. June 20, 2007) ..................... 10

## TABLE OF AUTHORITIES
### (Con't)

**Page(s)**

*In re Polaroid ERISA Litigation*,
   362 F. Supp. 2d 461 (S.D.N.Y. 2005).................................................................. 12

*In re Sprint Corp. ERISA Litigation*,
   No. 03-2202-JWL, 2004 WL 2182186 (D. Kan. Sept. 24, 2004)............................................ 11

*In re Syncor ERISA Litigation*,
   410 F. Supp. 2d 904 (C.D. Cal. 2006) .................................................................. 10

*In re Unisys Savings Plan Litigation*,
   74 F.3d 420 (3d Cir. 1996)........................................................................... 17

*Kling v. Fidelity Management Trust Co.*,
   323 F. Supp. 2d 132 (D. Mass. 2004) .................................................................. 11

*LaLonde v. Textron, Inc.*,
   369 F.3d 1 (1st Cir. 2004)............................................................................ 8

*Langbecker v. Electronic Data Systems Corp.*,
   476 F.3d 299 (5th Cir. 2007) ......................................................................... 8

*Leigh v. Engle*,
   727 F.2d 113 (7th Cir. 1984) ..................................................................... 11, 12

*Lockheed Corp. v. Spink*,
   517 U.S. 882 (1996)................................................................................... 7

*Martin v. Harline*,
   No. Civ. A. 87-NC-115J, 0092 WL 12151138 (D. Utah Mar. 30, 1992) ................................ 12

*Mertens v. Hewitt Associates*,
   508 U.S. 248 (1993)................................................................................ 8, 9

*Riley v. HMO Louisiana, Inc.*,
   No. Civ. A. 00-0046, 2002 WL 59400 (E.D. La. Jan. 16, 2002)............................................ 16

*Rochholz v. Farrar*,
   547 F.2d 63 (8th Cir. 1976) ......................................................................... 17

*Stein v. Smith*,
   270 F. Supp. 2d 157 (D. Mass. 2003) .............................................................. 8, 16

## TABLE OF AUTHORITIES
### (Con't)

**Page(s)**

*Tatum v. R.J. Reynolds Tobacco Co.*,
No. 1:02CV000373, 2007 WL 1612580 (M.D.N.C. May 31, 2007).......................................... 20

*Terrydale Liquidating Trust v. Barnes*,
   611 F. Supp. 1006 (S.D.N.Y. 1984)...................................................................................... 16

*Willett v. Blue Cross & Blue Shield of Alabama*,
   953 F.2d 1335 (11th Cir. 1992) ........................................................................................... 18

## FEDERAL REGULATIONS

29 C.F.R. § 2509.75-8..................................................................................................... 11, 12

## LEGISLATIVE HISTORY

H.R. Conf. Rep. 93-533 (1973), *reprinted in* 1974 U.S.C.C.A.N. 4639 ....................................... 7

H.R. Conf. Rep. 93-1280 (1974), *reprinted in* 1974 U.S.C.C.A.N. 5038 ................................... 16

## MISCELANEOUS

DOL *amicus* brief in *Agway Inc. Employees' 401(k)*
   *Thrift Inv. Plan*, 409 F. Supp. 2d 136 (N.D.N.Y. 2005) available at
     http://www.dol.gov/sol/media/briefs/agway(A)-6-18-2004.htm. ............................... 9

Form 10-K of W. R. Grace & Co. for the Fiscal Year
   Ended December 31, 2006, at pp. 5-6, available at
   http://www.sec.gov/Archives/edgar/
     data/1045309/000110465907015932/a07-6889_110k.htm. ...................................... 2

*In re Worldcom, Inc. ERISA Litig.*,
   Master File No. 02 Civ. 4816 (DLC), available at
     http://www.dol.gov/sol/media/briefs/WorldCom-1-16-04.pdf................................ 13

## I.    INTRODUCTION

The primary thrust of Plaintiffs' claims is their allegation that State Street Bank and Trust Company ("State Street"), the appointed independent investment manager for the Grace Stock Fund held by the W. R. Grace & Co. Employees Savings and Investment Plan ("Plan"), breached its fiduciary duties by selling the Grace stock held by the Plan. The claims against the Grace Defendants are secondary. The Plaintiffs concede that the decision to appoint an independent fiduciary for the Grace Stock Fund was prudent, that the process by which State Street was selected was appropriate, and that State Street itself was eminently qualified to serve in this capacity. Nevertheless, Plaintiffs claim that Grace violated ERISA by amending the Plan to permit the appointment of an independent fiduciary with complete discretion to sell the Grace stock, and also that the Grace fiduciaries failed to monitor State Street in the performance of its appointed duties. They further contend that the Grace Defendants are liable as co-fiduciaries for State Street's alleged breach of its duties.

The amendment of a plan does not implicate any fiduciary duties and thus no claim against the Grace Defendants can arise from this occurrence. And as State Street demonstrates in its motion for summary judgment, Plaintiffs' claims against State Street, which amount to nothing more than Plaintiffs seeking inappropriately to second-guess the judgment of State Street and its professional advisors, are entirely without merit. Inasmuch as the claims against the Grace Defendants are derivative of those claims, they are equally without merit.

But the Grace Defendants are entitled to summary judgment even if the Court determines that State Street is not. The undisputed facts plainly demonstrate that the Grace fiduciaries fully satisfied their obligation to monitor State Street, as they were aware of the diligent and thorough process that State Street put in place (complete with analyses and evaluations performed by legal

and financial experts), they stayed in contact with State Street as they undertook that process, and they assisted in ensuring that Plan participants received adequate notice of State Street's actions. The only step the Grace Defendants did not take was to second-guess State Street's decision to sell the stock, which, under the circumstances, was certainly not required and would have been improper.

The Grace Defendants also cannot be held liable as co-fiduciaries. There is no evidence in the record from which it could be determined that the Grace Defendants knew that State Street's decision constituted a fiduciary breach (if the Court should now conclude that it was). Nor is there any evidence that Grace took affirmative steps to participate along with State Street in any alleged breach, or to conceal such a breach.

Because there are no disputes of material facts and the Grace Defendants are entitled to judgment as a matter of law on the duty to monitor and co-fiduciary liability claims asserted by the Plaintiffs, summary judgment should be entered in favor of the Grace Defendants.[1]

## II.    FACTUAL BACKGROUND

### A.    Grace and Its Bankruptcy Filing

Grace has long been a defendant in asbestos-related lawsuits alleging claims of property damage and personal injury relating to products it had previously sold. Starting in 2000, the number of asbestos-related claims against the Company increased substantially, leading Grace to file for protection under Chapter 11 of the Bankruptcy Code on April 2, 2001. Grace continues to operate its business as a debtor-in-possession. *See generally* Form 10-K of W. R. Grace & Co. for the Fiscal Year Ended December 31, 2006, at pp. 5-6, available at http://www.sec.gov/Archives/edgar/data/1045309/000110465907015932/a07-6889_110k.htm.

---

[1] The Grace Defendants do not concede that all of the Grace defendants are fiduciaries with respect to the matters alleged by the Plaintiffs. However, because they believe they are entitled to summary judgment in any event for the reasons set forth below, for purposes of this motion only they are not contesting their alleged fiduciary status.

### B.    The Plan and the Appointment of State Street as Independent Fiduciary for the Grace Stock Fund

Since at least 1976, Grace has sponsored the Plan, a defined contribution plan commonly known as a 401(k) plan.  (SMF ¶ 1.)[2]  Grace matched 100% of each participant's contribution to the Plan up to 6% of the participant's salary.  (SMF ¶ 1.)

Robert Tarola, Grace's Chief Financial Officer, and Brian McGowan, its Senior Vice President of Administration, served as the Plan's Investment and Benefits Committee ("IBC"), which was responsible for selecting and changing the investment options offered under the Plan. (SMF ¶ 2.)  The IBC's goal was to select funds appropriate for a retirement plan generally and that would provide participants with a wide variety of options, having various risk and reward characteristics, from which they could create a diversified portfolio.  (SMF ¶ 3.)

The Plan offered participants a broadly-diversified menu of 28 different investment options, one of which was the Grace Stock Fund, which was invested in Grace stock.  (SMF ¶ 4.)[3]  Until April 21, 2003, Plan participants were responsible for deciding where to invest their contributions and Grace's matching contributions, and could transfer the amounts in their individual accounts between and among the various funds.  (SMF ¶ 5.)  Effective April 21, 2003, the Plan was amended to provide that participants could no longer direct any new contributions into the Grace Stock Fund, nor could they transfer money into the Grace Stock Fund from other funds.  (SMF ¶ 6.)  McGowan notified the participants of this impending change on March 17, 2003, also advising them that the Grace fiduciaries were "seriously consider[ing]" appointing an independent fiduciary to manage the Grace Stock Fund in order to avoid any potential conflict of interest between the fiduciaries' responsibility to the participants in the Plan, on the one hand,

---

[2]  The undisputed facts material to the claims against the Grace Defendants are set forth in the Grace Defendants' Rule 56.1 Statement of Undisputed Material Facts ("SMF ¶ __") filed concurrently herewith.
[3]  The facts set forth are, except where otherwise expressly noted, the facts that existed during the class period, *i.e.*, April 14, 2003 through April 30, 2004.

and their upcoming role in negotiating a plan of reorganization in Grace's bankruptcy, on the

other.  (SMF ¶ 8.)  Grace later explained this potential conflict in a pleading seeking bankruptcy

court authorization to hire an independent fiduciary:

> As the Debtors' chapter 11 cases progress, the Corporate Fiduciaries may be inhibited from applying the standards under ERISA with respect to decisions regarding Grace Stock within the Savings Plan.  Specifically, it may be difficult for the Corporate Fiduciaries to discharge fiduciary duties under ERISA section 404(a) with regard to (a) whether and to what extent Grace Stock should be retained within the Savings Plan at the same time certain Corporate Fiduciaries are participating in the negotiation and formation of a plan of reorganization and (b) sharing or acting upon information regarding the plan or reorganization process, which may not be public information, but which may be material to investment decisions regarding Grace Stock within the Savings Plan.

(SMF ¶ 9.)  The participants were advised that if an independent fiduciary were appointed, it

"would perform its own analysis of the company's situation and the prospects for Grace's stock,"

and "would have sole discretion, based on its analysis, to . . . sell Grace shares . . . ."  (SMF ¶ 8.)

Grace amended the Plan to give the IBC the authority to appoint an independent

investment manager for the Grace Stock Fund and to make clear that "[t]he [IBC] shall not retain

the authority to manage the Grace Stock Fund, to the extent that an Independent Investment

Manager has been retained to manage that Fund . . . . ."  (SMF ¶ 10.)  After a deliberate and

careful process (SMF ¶¶ 12-19), the Grace fiduciaries selected State Street to serve as the

independent fiduciary for the Grace Stock Fund.  (SMF ¶ 20.)  Plaintiffs' expert described State

Street as one of the top 10 companies in the nation with expertise in providing investment

management services for company stock funds in ERISA plans.  (SMF ¶ 21.)

McGowan notified the participants about State Street's retention on December 8, 2003,

describing State Street's qualifications and reiterating that "this arrangement allows Grace

management to avoid potential conflicts that may arise as a result of the Chapter 11 bankruptcy

process by delegating the duty to manage the Grace Stock Fund to an independent expert acting solely in the best interests of participants and beneficiaries." (SMF ¶¶ 22-23.)

State Street was hired as investment manager of the Grace Stock Fund effective December 15, 2003, with the authority to sell the stock in the Fund "if, and only if, State Street determines that the continued holding of such Common Stock is not consistent with the provisions of ERISA (within the meaning of Section 404(a)(1)(D) of ERISA) . . . ." (SMF ¶ 25.)

### C.     State Street's decision to sell the Plan's Grace stock

State Street hired Duff & Phelps, LLC and Goodwin Procter LLP as its financial and legal advisors, respectively, for the Grace engagement. (SMF ¶ 27.) Members of the IBC, other senior Grace executives, and Senior Benefits Counsel John Forgach met with representatives of the State Street team on several occasions, and had several telephone calls with them, to answer their questions on such matters as Grace's bankruptcy proceedings, finances, asbestos liabilities, and available insurance. (SMF ¶ 28.) They also supplied State Street with numerous documents, including Plan-related documents and participant communications. (SMF ¶ 29.) State Street was careful, however, to request and receive only publicly-available information from Grace. (SMF ¶ 30.)

After completing their due diligence, reviewing the advisors' analyses and reports, and considering the matter pursuant to a thorough process that had been described in advance to the Grace fiduciaries (SMF ¶ 19), State Street determined in February 2004 that the Plan's holding of Grace stock was inconsistent with ERISA, *i.e.*, imprudent. (SMF ¶ 32.) State Street gave Grace advance notice of its decision to begin selling the Plan's Grace Stock and also notified participants of its decision and advised them that it would continue to monitor the situation and could decide to discontinue the selling program. (SMF ¶¶ 32, 35.) The Grace fiduciaries did not

ask State Street the basis for its decision; in fact, Tarola believed that it was "off limits" for him to ask State Street about it because of the potential conflict of interest he and McGowan faced. (SMF ¶¶ 36-37.)

A month or two later, State Street received an inquiry from an entity seeking to buy the Plan's remaining block of stock. (SMF ¶ 38.) State Street called Tarola, advised him of the inquiry, and asked him if there was anything they should know about Grace before they made a decision whether to sell the remaining stock. (SMF ¶ 39.) Tarola responded that all material information about Grace was in the public domain. *Id.*

State Street sold substantially all of the remaining shares of Grace stock in the Plan to D.E. Shaw on April 12, 2004, at a price of $3.50 per share. (SMF ¶ 41.) The market value of the stock at that time was $2.96. *Id.* State Street notified the Plan participants of the sale. (SMF ¶ 43.)[4] The few remaining shares in the Grace Stock Fund were sold to D.E. Shaw on April 19, 2004. (SMF ¶ 41.)

III. **ARGUMENT**

Summary judgment in a party's favor should be entered when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A. **Amending the Plan to Allow for State Street's Appointment Was a Lawful Settlor Function, Not a Fiduciary Function**

Plaintiffs claim that amending the Plan to allow for the appointment of an investment manager with authority to sell the Grace stock held by the Plan constituted a breach of fiduciary

---

[4] McGowan and Forgach reviewed and commented on State Street's communications with the participants throughout its engagement and worked with Fidelity to ensure that the communications were appropriately distributed. (SMF ¶¶ 31, 42, 43.)

duty.[5]  Amending a plan is not, however, a fiduciary function; indeed, it is expressly permissible

under ERISA, all applicable case law, and even according to Plaintiffs' own experts.  Thus, the

Grace Defendants are entitled to summary judgment on this claim.

ERISA does not require employers to offer their employees any particular kind of benefit

plan or, indeed, any benefit plan at all.  *See Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996).

When an employer chooses to sponsor a plan, ERISA prescribes only minimal requirements,

such as the naming of fiduciaries to manage the operation of the plan (§ 402(a)), the provision of

a funding policy (§ 402(b)(1)), and the establishment of a trust to hold the plan assets (§ 403).

*See Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 512 (1981) (ERISA merely creates a set

of "outer bounds" on permissible pension practices).  Beyond these basic requirements, the plan

sponsor is free to design a plan however it chooses, and it also can amend the plan at any time to

change its features.  H.R. Rep. No. 93-533 (1973), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4647

(Congress recognized that providing employers with the freedom to design their own pension

plans was "vital" to the willingness of employers to provide such plans, and therefore sought to

preserve "flexibility in the design and operation of . . . pension programs.").

Decisions made by a plan sponsor in designing and modifying a plan are referred to as

"settlor" functions, and do not trigger any fiduciary duties or potential liabilities.  *See, e.g.,*

*Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 444 (1999) (amending plan to change design

does not implicate fiduciary duties or liability); *Curtiss-Wright Corp. v. Schoonejongen*, 514

U.S. 73, 78 (1995) ("plan sponsors are generally free under ERISA, for any reason at any time,

to adopt, modify, or terminate welfare [or pension] plans"); *Campbell v. BankBoston, N.A.,* 327

---

[5] Although there is no count in Plaintiffs' amended complaint pleading a claim of this nature, Plaintiffs asserted the claim in their Interrogatory Answers. Ex. 43, Interrog. Answer No. 20 ("The Grace Defendants first breached their fiduciary duty  . . . when they amended the Plan to allow the Independent Fiduciary to exercise unsupervised discretion to liquidate the Grace Stock Fund.")

F.3d 1, 6 (1st Cir. 2003) (amending plan is a settlor, not a fiduciary, function); *Stein v. Smith,* 270 F. Supp. 2d 157, 170 (D. Mass. 2003) (no fiduciary liability for plan design).

Grace structured its Plan to permit participants to exercise control over their retirement assets; they could choose to invest their money in any one or more of 28 investment options in the Plan, one of which was the Grace Stock Fund. Grace was not required to structure the Plan in this way, nor was it required to offer Grace stock as an investment option. As the Plaintiffs' experts in this case have conceded, Grace could have legally amended the Plan at any time to change this structure, or to add or eliminate certain investment options, including the Grace Stock Fund. (Ex. 6, Mulligan Dep. 149-50; Ex. 7, Schaff Dep. 103-04.)

But Grace chose not to amend the Plan to eliminate the Grace Stock Fund entirely; instead, it left it to the Plan's fiduciaries to determine whether the continued holding of Grace stock was prudent. Unlike the limited requirements ERISA places upon a plan sponsor in designing or modifying a plan, ERISA imposes more exacting requirements on the fiduciaries charged with managing a plan. ERISA § 404. Plan fiduciaries "are assigned a number of detailed duties and responsibilities, which include the proper management, administration and investment of plan assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251-52 (1993) (internal quotation marks and alterations omitted).

With respect to plans that hold employer stock, the courts almost uniformly agree that fiduciaries have a continuing obligation to determine whether the plan's retention of that stock is consistent with the provisions of ERISA. *See*, *e.g.*, *LaLonde v. Textron, Inc.*, 369 F.3d 1, 5 n.7 (1st Cir. 2004); *DiFelice v. U.S. Airways, Inc.*, No. 06-1892, 2007 WL 2192896 at *10-11 (4th Cir. Aug. 1, 2007); *Langbecker v. Electronic Data Sys. Corp.*, 476 F.3d 299, 307 (5th Cir.

2007).[6]  For this reason, there came a time when the Grace fiduciaries believed they were facing

a potential conflict of interest.  Their upcoming role in negotiating a plan of reorganization in

Grace's bankruptcy would necessarily entail negotiations affecting the Company's ultimate

equity value, yet at the same time, as fiduciaries, they were charged with making decisions

regarding the Plan's holding of Grace stock that would be in the best interest of participants.

Accordingly, the fiduciaries decided that the best course of action was to appoint an investment

manager to exercise independent control over the Grace Stock Fund – an action expressly

permitted by ERISA § 402(c)(3) and the Plan document, and arguably required under the

circumstances.  *See Mertens*, 508 U.S. at 251-52 (duties of a fiduciary include avoiding conflicts

of interest).[7]

      In order to effectuate the decision of the Plan fiduciaries, Grace amended the Plan

document effective December 15, 2003 to authorize the appointment of an independent

investment manager.  The amendment provided, in pertinent part:

> [T]he Independent Investment Manager shall have the following authority and
> duties:
>
> (i)  the continuous authority and duty to determine the extent that the continued
> retention of shares of Grace Stock within the Grace Stock Fund is not consistent
> with the applicable provisions of [ERISA], and to take actions in this regard that it
> deems appropriate; including the authority to dispose of Grace Stock held within
> the Grace Stock Fund and to close the Grace Stock Fund to participant trading.

---

[6] The Department of Labor, the agency responsible for the interpretation and enforcement of the fiduciary provisions
of ERISA, agrees.  *See, e.g.*, DOL *amicus* brief in *Agway Inc. Employees' 401(k) Thrift Inv. Plan*, 409 F. Supp. 2d
136 (N.D.N.Y. 2005) (available at http://www.dol.gov/sol/media/briefs/agway(A)-6-18-2004.htm).  Indeed, this
principle applies even in a § 404(c) plan.  *See, e.g., DiFelice*, 2007 WL 2192896 at *12 n.3 ("[A]lthough section
404(c) does limit a fiduciary's liability for losses that occur when participants make poor choices from a satisfactory
menu of options, it does not insulate a fiduciary from liability for assembling an imprudent menu in the first
instance.").

[7] *See also DiFelice*, 2007 WL 2192896 at *8 ("[A]lthough appointment of an independent fiduciary does not
'whitewash' a prior fiduciary's actions, timely appointment of an independent fiduciary, prompted by concerns
about the continued prudence of holding company stock under an ERISA plan, does provide some evidence of
'procedural' prudence and proper monitoring during the relevant period.").

(SMF ¶ 11.)  As is clear from the case law cited above, this amendment was entirely lawful, and implicated no fiduciary duties or liability whatsoever.  Indeed, the Plaintiffs concede that the Grace fiduciaries had the right to appoint an investment manager (Ex. 43, Interrog. Answer No. 13), and Plaintiffs' experts concede that appointing an investment manager to avoid a potential conflict of interest is both appropriate and prudent.  Ex. 7, Schaff Dep. 113 ("avoiding a conflict of interest is a perfectly reasonable cause for delegating") & 120-22 (delegating fiduciary duty in order to avoid a conflict of interest is appropriate and beneficial to plan participants); Ex. 6, Mulligan Dep. 156 (appointing an independent fiduciary to avoid a potential conflict of interest is prudent).  And there is nothing in ERISA's minimal requirements that proscribe an amendment authorizing the investment manager to sell the Grace stock.  The Grace Defendants are, therefore, entitled to judgment as a matter of law on Plaintiffs' fiduciary breach claim premised on the Plan amendment.

     **B.**     **The Grace Defendants Are Entitled to Judgment on the Claims Against Them if the Court Concludes that State Street Did Not Commit a Fiduciary Breach**

The thrust of the Plaintiffs' remaining claims are aimed at State Street's performance as the appointed investment manager and its ultimate decision to sell the Plan's Grace stock.  The only claims pleaded against the Grace Defendants in the Amended Complaint – breach of the duty to monitor and co-fiduciary liability – are derivative of the fiduciary breach claims against State Street.  Thus, if State Street is entitled to summary judgment, the Grace Defendants are as well.  *See In re Coca-Cola Enters., Inc. ERISA Litig.*, No. 1:06-CV-0953 (TWT), 2007 WL 1810211, at *16 (N.D. Ga. June 20, 2007) (duty to monitor and co-fiduciary liability claims can lie against an appointing fiduciary only when there is a primary breach of fiduciary duties); *In re Syncor ERISA Litig.*, 410 F. Supp. 2d 904, 913 (C.D. Cal. 2006) (because duty to monitor claim

is derivative of prudence claim, failed prudence claim resulted in failed duty to monitor claim);

*In re Sprint Corp. ERISA Litig.*, No. 03-2202-JWL, 2004 WL 2182186, at *4 (D. Kan. Sept. 24, 2004) ("A necessary predicate for co-fiduciary liability under [§ 405] is of course that another fiduciary must have committed a breach of fiduciary duty.").

### C.    Denial of Summary Judgment for State Street Does Not Preclude Summary Judgment for the Grace Defendants

Even if the Court should determine that there are genuine issues of material fact precluding summary judgment in State Street's favor, the Grace Defendants are nevertheless entitled to judgment on the claims against them.  The undisputed material facts demonstrate unequivocally that the Grace Defendants fully satisfied their duty to monitor State Street's performance and neither knowingly participated in nor concealed any purported breach by State Street.

### 1.    The Grace Defendants Satisfied Their Duty to Monitor

The undisputed facts demonstrate that the Grace Defendants met any duty to monitor State Street that the law might impose upon them.

A named fiduciary to a plan that delegates fiduciary functions to an appointee typically retains a duty to follow and stay apprised of the actions being taken by the appointee in the exercise of those delegated functions.  *Kling v. Fidelity Mgmt. Trust Co.*, 323 F. Supp. 2d 132, 142 (D. Mass. 2004) (citing *Leigh v. Engle*, 727 F.2d 113, 134-35 (7th Cir. 1984); 29 C.F.R. § 2509.75-8, FR-17).  This duty to monitor serves essentially as an added layer of protection designed to ensure that the Plan is operated in the best interests of the participants; the monitoring fiduciary should be sufficiently aware of the actions of the appointed fiduciary such that a malfeasance, should one occur, might be discovered and timely addressed.  *See Leigh*, 727 F.2d at 135-36.

In order to satisfy the duty to monitor, an appointing fiduciary must periodically review the performance of appointees "in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan." 29 C.F.R. § 2509.75-8, FR-17. The precise contours of the duty to monitor an appointed fiduciary vary, however, "in accordance with the nature of the plan and other facts and circumstances." *Id*. For example, if the appointee were relatively inexperienced, the duty to monitor is greater than in a situation where the appointee was a professional organization with years of relevant experience, which is routinely engaged to perform such functions. *See, e.g., Martin v. Harline*, No. Civ. A. 87-NC-115J, 0092 WL 12151138, at *11 (D. Utah Mar. 30, 1992) (heightened duty to monitor where appointee was untutored and inexperienced).

The courts have been clear, however, that while ongoing monitoring is required (at levels depending upon the facts and circumstances), in no event is an appointing fiduciary charged with *directly overseeing* the actions of its appointees or *scrutinizing or approving* their decisions. The duty is one to *monitor* – not to scrutinize, approve, or second-guess. *See Leigh*, 727 F.2d at 135; *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 477 (S.D.N.Y. 2005). The goal is a cross-check on the appointment to maximize the protection to the plan participants. But it is just that – a cross-check – not more. If the named fiduciary were obligated to become involved in the appointee's decision-making, there would hardly be any point to the delegation in the first place.

Like the courts, the Department of Labor ("DOL") – the entity charged with interpreting and enforcing Title I of ERISA – has made clear its view that the duty to monitor does not require the appointing fiduciary "to second-guess every decision of its appointee, or to guarantee the wisdom of the appointee's decision." Brief of the Secretary of Labor as Amicus Curiae in

Opposition to Motion to Dismiss, Jan. 16, 2004, *In re Worldcom, Inc. ERISA Litig.*, Master File

No. 02 Civ. 4816 (DLC), available at http://www.dol.gov/sol/media/briefs/WorldCom-1-16-

04.pdf.  According to DOL, while the appointing fiduciary needs to ensure a prudent *process* is

being followed, "appointing fiduciaries are not charged with directly overseeing the investments

and thus duplicating the responsibilities of the investment fiduciaries whom they appoint."  *Id.*

The undisputed facts in this case make clear that the Grace fiduciaries were sufficiently

aware of State Street's experience and qualifications, and the process it followed as investment

manager of the Grace Stock Fund, to discharge fully their duty to monitor:

- they were aware that State Street was a very competent organization – a leader in the field of managing company stock funds in retirement plans – and had adequate financial backing (SMF ¶¶ 20-21)

- they were aware of the detailed process State Street would follow in discharging its responsibilities (SMF ¶¶ 18-19)

- they were aware that State Street had hired qualified financial and legal analysts and experts to assist with the engagement (SMF ¶ 27)

- they were aware that State Street immediately began collecting appropriate information about the Plan and Grace's financial circumstances, including the Company's financial condition, asbestos liabilities, available insurance, and bankruptcy proceedings, and repeatedly came back to them with requests for additional documents and other information concerning these areas and others (SMF ¶¶ 28-29)

- they were aware that State Street was about to decide to start selling some of the Plan's Grace stock on the open market (SMF ¶ 32)

- they were aware that State Street took appropriate steps to comply with the securities laws in its selling program (SMF ¶ 34)

- they were aware that State Street was considering selling the Plan's entire Grace stock to D.E. Shaw at an above-market price (SMF ¶ 39)

- they were aware that State Street kept participants informed of its appointment as independent fiduciary of the Grace Stock Fund, that it had decided to start selling some stock, and that it was selling all the Plan's stock in a block sale,

and assisted in ensuring that these communications were accurate and complete (SMF ¶¶ 26, 31, 33, 35, 43)

- they were aware that State Street was working with Fidelity to ensure that the proceeds of the block sale were appropriately credited to participants' accounts (SMF ¶ 42)

Based on these undisputed facts, no reasonable factfinder could conclude that the Grace Defendants violated any fiduciary duty. This is not a case where the Grace fiduciaries appointed State Street as investment manager of the Grace Stock Fund and simply washed their hands of the matter. Plaintiffs might have a valid failure-to-monitor claim if, for example, there were evidence that the Grace fiduciaries never again heard from State Street after its appointment, or that they had been informed that State Street was planning to sell the Plan's stock for a fraction of its market value, yet did nothing. But the facts are otherwise.

Moreover, the Grace fiduciaries' duty to monitor here was limited by the potential conflict of interest they faced. It is undisputed that a potential conflict of interest prompted the Grace Defendants to appoint State Street as independent investment manager. A delegation of duties for this reason necessarily involves a more limited duty to monitor, the bounds of which depend on the particular facts and circumstances involved.

The very purpose of delegating fiduciary duties to an independent entity in a conflict of interest situation is to remove any possible taint of bias in the decision-making process. If a fiduciary has to step back from his duties because he is conflicted, he cannot then be required to insert himself into the appointee's processes in such a way that his conflicted views could taint the appointee's decisions. Just as it would be improper for a judge who has recused himself due to a conflict of interest to then get involved in the rulings of the replacement judge, it would be improper for an appointing fiduciary to inject himself into his appointee's decision-making.

14

But even if the Court were to conclude that the scope of the Grace fiduciaries' monitoring duty was unaffected by the reason for State Street's appointment (the potential conflict), the duty was plainly met, as is demonstrated by the material facts summarized above.  Even though the Grace fiduciaries did not insert themselves into State Street's decision-making process or second-guess its conclusions, those actions are not required and, in this case, would have been highly improper, if not flatly unlawful.  The Grace Defendants are, accordingly, entitled to judgment as a matter of law on Count 4 of the Amended Complaint for breach of the duty to monitor.

### 2.    The Grace Defendants Have No Co-fiduciary Liability

The Plaintiffs also claim that the Grace Defendants are liable as "co-fiduciaries" under ERISA § 405 for State Street's alleged breach.  The undisputed facts that are material to the elements of a co-fiduciary liability claim against the Grace Defendants compel judgment in their favor as a matter of law on this count as well.

The Plaintiffs allege that the Grace Defendants are liable as co-fiduciaries because they knowingly participated in or concealed State Street's breach, and/or they enabled State Street to commit a breach, and/or they learned about State Street's breach and failed to remedy it.  (Am. Compl. ¶¶ 103-04.)  While it is true that these three types of co-fiduciary claims are provided for in ERISA § 405(a), not all are applicable where, as here, an investment manager has been appointed.  ERISA § 405(d) applies in that situation, which makes a co-fiduciary liable for an investment manager's breach *only* in the situation presented by § 405(a)(1), where the co-fiduciary "participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach."  *See Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12, 23 (1st Cir. 1988).

15

In order to establish a co-fiduciary's liability under § 405(a)(1), two essential elements (among others) must be satisfied. First, the co-fiduciary must have had *actual knowledge* of the primary breach and, second, he must have actively *participated in* or acted to *conceal* that breach. Here, there are absolutely no facts – disputed or undisputed – from which the existence of either of these two critical elements can be inferred.

The "actual knowledge" prong of a co-fiduciary claim pertains to knowledge not just of the underlying facts, but actual knowledge that those facts *amount to a breach*. *Stein v. Smith,* 270 F. Supp. 2d at 175 (§ 405(a)(1) requires actual knowledge of the breach on the part of the co-fiduciary); *Henry v. Champlain Enters., Inc.,* 288 F. Supp. 2d 202, 224-25 (N.D.N.Y. 2003) (same); H.R. Conf. Rep. 93-1280, at 5080 (1974), *reprinted in* 1974 U.S.C.C.A.N. 5038, 5080 ("Under this rule, the fiduciary must know . . . that the other person . . . participated in the act that constituted a breach, and must know that it was a breach.").

The nature of the alleged wrong necessarily impacts the analysis of whether the co-fiduciary had actual knowledge of the breach. The analysis is relatively straightforward in a situation where, for example, the primary breach is an obvious malfeasance such as a theft of assets. In that case, when appointing fiduciaries learn of the theft, they also automatically know that it constitutes a fiduciary breach. But in other cases, the action does not necessarily equate to a breach at the time it is revealed. *See Riley v. HMO Louisiana, Inc.*, No. Civ. A. 00-0046, 2002 WL 59400, at *5 (E.D. La. Jan. 16, 2002) (knowledge that payment was late was not sufficient to show knowledge of a fiduciary breach); *Terrydale Liquidating Trust v. Barnes*, 611 F. Supp. 1006, 1027-31 (S.D.N.Y. 1984) (knowledge of sale price of trust property was not sufficient to show knowledge of a fiduciary breach even though price later determined to be unreasonable). Imprudence falls into this latter category.

Where the alleged breach is an imprudent decision, knowledge of the decision does not necessarily constitute knowledge of a fiduciary breach. The very notion of prudence, and what constitutes a prudent decision is, after all, a judgment call that depends on all the facts and circumstances. *See, e.g.*, *Armstrong v. LaSalle Bank Nat'l Ass'n*, 446 F.3d 728, 733 (7th Cir. 2006) (prudence "involves a balancing of competing interests under conditions of uncertainty"); *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 434-35 (3d Cir. 1996) (a prudence analysis is "flexible"); *Rochholz v. Farrar*, 547 F.2d 63, 66 (8th Cir. 1976) (reasonable and prudent persons can subscribe to materially different understandings).

This is exactly the situation presented here. To establish actual knowledge, it is not enough for Plaintiffs to show that the Grace fiduciaries were aware of State Street's decision to sell the Grace stock; they must show that the Grace fiduciaries knew that State Street's decision to sell the stock constituted a fiduciary breach. This they cannot do.

It is undisputed that State Street's conclusion that the Grace Stock Fund was an imprudent investment, whether right or wrong, came as a result of a lengthy and thorough process of expert analysis and evaluation. *See* Memorandum in Support of State Street Bank and Trust Company's Motion for Summary Judgment. It is also undisputed, as demonstrated above, that the Grace fiduciaries were fully aware of that process. At the same time, there is no evidence in the record that any of the Grace Defendants believed that State Street's decision was unlawful or that they disagreed with it. To the contrary, Tarola testified that after they learned of State Street's sale to D.E. Shaw, "there was . . . feeling among the leadership within Grace that this gave the participants a chance to get some cash and move on from what was a real speculative situation." (SMF ¶ 40.)

Just as importantly, even if there were some evidence pointing to a difference in views between the Grace Defendants and State Street over the prudence of maintaining the Grace Stock Fund – indeed, even if every single Grace fiduciary disagreed with State Street's ultimate decision – that *still* would not mean that they knew a *breach of fiduciary duty* had occurred. Reasonable people, after reasonable investigation and analysis, can reach different conclusions – and as Plaintiffs' experts admit (Ex. 6, Mulligan Dep. 156; Ex. 7, Schaff Dep. 108-09), that does not mean that one conclusion is necessarily correct and one is necessarily incorrect, or, for that matter, a fiduciary breach. The issue of prudence is a judgment call, and the Grace fiduciaries knew that State Street's judgment had been made after months of independent review and analysis. *See Henry*, 288 F. Supp. 2d at 225 (lack of evidence of the defendants' "subjective intent or knowledge" with respect to the decision alleged to constitute a breach precludes co-fiduciary liability).

Not only can the Plaintiffs not meet their burden to show that the Grace Defendants had actual knowledge of a breach, they also cannot establish a second element required for a claim for co-fiduciary liability – that the Grace Defendants knowingly participated in or concealed a breach by State Street. This element requires a showing of *some affirmative action* by the Grace Defendants, *i.e.*, that they took active steps that were intended to further the breach, as opposed to simply retaining some passive knowledge of the breach. *See Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 284 (2d Cir. 1992) ("[o]ne participates in a fiduciary's breach if he or she affirmatively assists [or] helps conceal"); *Willett v. Blue Cross & Blue Shield of Ala.*, 953 F.2d 1335, 1342 (11th Cir. 1992) (co-fiduciary liability for concealment of a breach exists if the co-fiduciary "chose to misrepresent affirmatively" the pertinent facts); *Henry,* 288 F. Supp.

2d at 224-25 (mere knowledge that the company's valuation and income projection did not match up was insufficient to show knowing participation or concealment).

Here, far from pointing to any *affirmative* acts by the Grace fiduciaries to support knowing participation in or concealment of a breach, the Plaintiffs instead point only to things the Grace fiduciaries allegedly did *not* do.  In response to Interrogatory No. 4, for example, which asked Plaintiffs to identify specific instances of active participation or concealment on the part of the Grace Defendants, they point out (erroneously) that the Grace Defendants "refus[ed] to be accessible to Plan Participants," "never took any action to assure themselves that State Street properly had determined that retention of the Grace Stock Fund violated ERISA," and "allow[ed] State Street . . . to keep secret the rationale for liquidating the Grace Stock Fund." Ex. 43, Interrog. Answer No. 4.  These allegations, even if all were true – and they are not – do not constitute affirmative action by the Grace Defendants.  Nor can Plaintiffs survive summary judgment on the basis of their further allegations that "State Street declared that it would refuse to answer questions and concerns" and "directed the participants to contact Grace but discouraged making the inquiry by asserting that the contact was nothing more than a waste of time." *Id.*  Obviously, allegations setting forth *State Street's* conduct cannot constitute action by the *Grace Defendants* that is necessary to prevail on this claim.

Because Plaintiffs have not and cannot show that the Grace Defendants had actual knowledge of a breach by State Street or actively participated in or took steps to conceal that breach from the Plan participants, there is no claim for co-fiduciary liability that can proceed to trial.  The Grace Defendants are entitled to judgment as a matter of law on Count 5 of the Amended Complaint.

### 3.    The IBC Is Entitled to Summary Judgment on All Claims

The IBC is entitled to summary judgment for an additional reason – because it is a committee, not a "person" capable of being sued for breach of fiduciary duty under ERISA. Liability is imposed under ERISA § 409(a) on any "*person* who is a fiduciary with respect to the plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries." (emphasis added).  The term "person" is defined in ERISA § 3(9), and conspicuously absent from that definition are committees, such as the IBC.  Given the comprehensive nature of ERISA, "the omission of 'committee' from that definition cannot be considered simply a drafting oversight.  Committees are, therefore, not properly subject to ERISA breach of fiduciary duty claims."  *Tatum v. R.J. Reynolds Tobacco Co.*, No. 1:02CV000373, 2007 WL 1612580, at *8 (M.D.N.C. May 31, 2007) (citing, *e.g.*, *Boucher v. Williams*, 13 F. Supp. 2d 84, 93 (D. Me. 1998)).  This is consistent with the legal status of committees, which are not, by themselves, legal entities capable of suing or being sued.  *Id.* (citation omitted).  The IBC must, therefore, be dismissed from this suit altogether.

## IV.    CONCLUSION

For the foregoing reasons, the Grace Defendants submit that they are entitled to judgment as a matter of law on all claims against them.

Dated: August 17, 2007                        Respectfully Submitted,


                                                              /s/ Carol Connor Cohen_____
                                                              William W. Kannel (BBO# 546724)
                                                              (wkannel@mintz.com)
                                                              Matthew C. Hurley (BBO# 643638)
                                                              (mchurley@mintz.com)
                                                              MINTZ, LEVIN COHN, FERRIS, GLOVSKY and
                                                              POPEO, P.C.
                                                              One Financial Center
                                                              Boston, MA 02111
                                                              Telephone:  (617) 542-6000
                                                              Facsimile:  (617) 542-2241

- and -

Carol Connor Cohen
(cohen.carol@arentfox.com)
Nancy S. Heermans
(heermans.nancy@arentfox.com)
Caroline Turner English
(english.caroline@arentfox.com)
ARENT FOX LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
Telephone:  (202) 857-6054
Facsimile:  (202) 857-6395

*Counsel for Defendants W. R. Grace & Co., W. R. Grace & Co. Investment and Benefits Committee, John F. Akers, H. Furlong Baldwin, Ronald C. Cambre, Marye Anne Fox, John J. Murphy, Paul J. Norris, Thomas A. Vanderslice, Fred E. Festa and Robert M. Tarola*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **KERI EVANS, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **JOHN F. AKERS, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | **Consolidated Under** |
| ) | **Case No. 04-11380-WGY** |
| **LAWRENCE W. BUNCH, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **W. R. GRACE & CO., et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 2, 2007, I filed the Memorandum in Support of Grace Defendants' Motion for Summary Judgment through the ECF system. It was sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies were sent to those indicated as non-registered participants on August 17, 2007.

/s/ Carol Conner Cohen