# EXHIBIT Q

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W. R. GRACE & CO., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | | Re: Docket Nos. 4299, 4383 & 4401 |

**DEBTORS' RESPONSE TO THE OBJECTIONS OF (A) THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND (B) THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS TO THE APPLICATION OF THE DEBTORS FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 327(A) AND 328(A) AND FED. R. BANKR. P. 2014(A), 2016 AND 5002 AUTHORIZING, BUT NOT REQUIRING, THE EMPLOYMENT AND RETENTION OF STATE STREET BANK AND TRUST COMPANY TO ACT AS INVESTMENT MANAGER AND FIDUCIARY OF THE GRACE STOCK WITHIN THE GRACE SAVINGS & INVESTMENT PLAN**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby submit this response (the "Response") to the objections (each an "Objection" and together, the "Objections") of the Official Committee of Unsecured Creditors (the "Unsecured Committee") and the official committee of Equity Security Holders (the "Equity Committee" and, together with the Unsecured Committee, the "Committees") to the Application of the Debtors for Entry of an Order Pursuant to 11 U.S.C. §§ 327(A) and 328(A) and Fed. R. Bankr. P. 2014(A), 2016 and 5002 Authorizing, but not Requiring, the Employment and Retention of State Street Bank and Trust Company to Act as Investment Manager and Fiduciary of the Grace Stock within the Grace Savings & Investment Plan (the "Application"). The Debtors respectfully represent as follows:

91100-001\DOCS_DE:78761.1

GR007929

### Introduction

1.     On August 18, 2003, the Debtors filed the Application seeking to retain State Street[1] to provide Fiduciary Services for the Grace Stock held by the Trust funding the Savings Plan, as more fully described in the Application. The retention of State Street is necessary to establish an independent fiduciary that can perform its fiduciary obligations regarding Grace Stock within the Grace Savings Plan, without encountering the potential for competing duties and legal obligations to others, including to the Debtors, the Debtors' creditors and other equity holders; and to protect the Debtors and the Debtors' Board of Directors and management from any potential liability which could arise from such competing duties and obligations. Consistent with the marketplace and to preserve employee morale, the Debtors believe that it is necessary to have the estates directly pay the expenses of State Street's retention. Any other outcome could have a detrimental impact on the Debtors' estates.

### Background

2.     Presently, the Debtors' Board of Directors (the "Grace Board") and the Grace Investment & Benefits Committee (the "Investment Committee") have responsibility for providing the Fiduciary Services (the "Corporate Fiduciaries"). The Investment Committee is currently comprised of two members of the senior management team of the Debtors who are also key participants in the day to day management of the Debtors' chapter 11 cases and are expected to be active participants in chapter 11 plan negotiations.

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Application.

3.      In February 2003, the Debtors' Board of Directors asked the Debtors' management to pursue hiring an independent fiduciary to manage the Grace Stock within the Savings Plan (the "Independent Fiduciary"). The Grace Board concluded that the Corporate Fiduciaries should be relieved of further responsibility for decisions regarding Grace Stock within the Savings Plan, in order to avoid the potential for a conflict between the Corporate Fiduciaries obligations to the Savings Plan and its participants and their obligations under federal securities law and the Bankruptcy Code. The Debtors determined that retaining a party unrelated to the Debtors to provide the Fiduciary Services would be the appropriate method of replacing the Corporate Fiduciaries with respect to the Grace Stock.

### Selection of State Street

4.      In conjunction with selecting an Independent Fiduciary, the Debtors contacted at least five entities that would likely consider providing the necessary fiduciary services. (McGowan Aff. at ¶ 3).[2] The entities included AON Fiduciary Counselors ("AON FC"), State Street, U.S. Trust, The Northern Trust Company and Fidelity Trust Company. (McGowan Aff. at ¶ 3). Of the entities contacted with respect to performing the Fiduciary Services, only AON FC and State Street expressed any interest. (McGowan Aff. at ¶ 3). The Debtors evaluated the potential retention of AON FC and State Street based upon financial and legal sophistication, experience, cost and financial resources. (McGowan Aff. at ¶ 4). In May 2003, the Debtors' Board of Directors approved the retention of State Street as the Independent Stock Fiduciary for Grace Stock. (McGowan Aff. at ¶ 5). In June 2003, the Debtors began to

---

[2] A copy of the Affidavit of W. Brian McGowan is attached hereto as Exhibit A.

negotiate terms of an arrangement with State Street. (McGowan Aff. at ¶ 5). A final agreement of all terms between the Debtors and State Street was concluded in August, pending Court approval. (McGowan Aff. at ¶ 5). State Street represented to the Debtors that the final terms included a fixed annual fee that was significantly below what State Street has charged other clients in the same context. (McGowan Aff. at ¶ 6).

### Need for an Independent Fiduciary

5.   As the Debtors' chapter 11 cases progress, the Corporate Fiduciaries may be inhibited from applying the standards under ERISA with respect to decisions regarding Grace Stock within the Savings Plan. Specifically, it may be difficult for the Corporate Fiduciaries to discharge fiduciary duties under ERISA section 404(a) with regard to (a) whether and to what extent Grace Stock should be retained within the Savings Plan at the same time certain Corporate Fiduciaries are participating in the negotiation and formation of a plan of reorganization and (b) sharing or acting upon information regarding the plan of reorganization process, which may not be public information, but which may be material to investment decisions regarding Grace Stock within the Savings Plan.[3]

6.   Retention of State Street at this time to provide the Fiduciary Services (a) will allow the Debtors' management to address future issues in the chapter 11 cases without the limitations imposed by the fiduciary responsibilities under ERISA (regarding Grace Stock), and (b) will protect the interests of participants in the Savings Plan by having a fiduciary focused

---

[3] The recent decision in Rankin v Rots, E.D. Mich. (02-CV-71045, August 20, 2003) is instructive on the difficulties of reconciling the potential conflict of interest. The Rankin court refused to dismiss an action against directors and officers of KMart Corp. for breach of fiduciary duties involving company stock within a 401(k) plan. The Rankin court found that ERISA may require such fiduciaries to disclose "nonpublic" information. Retention of an Independent Fiduciary addresses this potential conflict between ERISA, the Bankruptcy Code and federal securities laws.

on the requirements of ERISA, independent of the interests of the Debtors its creditors and other equity holders.

7. The appointment of an independent fiduciary for the Savings Plan should not be delayed because there are several significant events that will occur in the near future regarding the Debtors' chapter 11 cases that may impact the market price for Grace Stock. These issues include: (a) the resolution of the ZAI Science Trial and (b) the progress of asbestos personal injury legislation through Congress. In addition, conversations and negotiations regarding potential plans of reorganization will likely become more intense within the next several months. These events will need to be considered by the fiduciary that manages the Grace Stock within the Savings Plan.

8. It is appropriate to have in place an Independent Fiduciary as soon as possible who: (a) can evaluate the impact of these events vis-à-vis Grace Stock within the Savings Plan, solely in the interests of plan participants and considering the other requirements of ERISA, (b) does not have to be concerned with the potential obligation to disclose non-public information and (c) who is independent of the burden and potential liability generated by the influence of potentially conflicting interests of the Debtors and others.

### Independent Fiduciaries for Other Companies

9. The Debtors are not the only corporation to attempt to address these issues through the retention of an independent fiduciary. At the time that the Debtors began considering such a retention, the following corporations had already retained Independent Fiduciaries: (a) Federal Mogul retained AON FC after filing bankruptcy; (b) United Airlines retained AON FC prior to filing bankruptcy; and (c) American Airlines retained U.S. Trust.

### The Payment of the Independent Fiduciary by the Debtors is Supported by Reasonable Business Judgment

10. Section 105(a) of the Bankruptcy Code "permits the court to issue any order that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 363(b) of the Bankruptcy Code provides, in relevant part, that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." A court has the statutory authority to authorize a debtor to use property of the estate pursuant to section 363(b)(1) of the Bankruptcy Code when such use is an exercise of the debtor's sound business judgment and when the use of the property is proposed in good faith. In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983); see also Fulton State Bank v. Schipper, 933 F.2d 513, 515 (7th Cir. 1991) (a debtor's decision must be supported by "some articulated business justification"); Stephen Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) (adopting the "sound business purpose" standard for sales proposed pursuant to section 363(b)); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999); In re Ernst Home Center, Inc., 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).

11. Under section 363(b) of the Bankruptcy Code, a debtor has the burden to establish that it has a valid business purpose for using estate property outside the ordinary course of business. See Lionel Corp., 722 F.2d at 1070-71. Once the debtor has articulated such a valid business purpose, however, a presumption arises that the debtor's decision was made on an informed basis, in good faith and in the honest belief that the action was in the debtor's best interest. See In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992). A party in

91100-001\DOCS_DE:78761.1        6        GR007934

interest seeking to challenge the debtor's valid business purpose must "produce some evidence supporting its objections." Montgomery Ward, 242 B.R. at 155.

12. The Debtors respectfully submit that the payment of State Street's fees by the Debtors is a sound business judgment that is standard practice and is necessary to maintain the morale of the Debtors' employees. (McGowan Aff. at ¶ 7). According to Monet Ewing, a principal of State Street, the standard practice in the independent fiduciary industry is for the company or plan sponsor to pay the fees and expenses of an independent fiduciary. (Ewing Aff. at ¶ 4).[4] It is rare for an independent fiduciary's fees and expenses (including its advisors' fees and expenses) to be paid from plan assets. (Ewing Aff. at ¶ 4). An independent fiduciary is generally hired to perform a fiduciary function that was previously the responsibility of the company, its board of directors, or a board-designated committee of officers, when these fiduciaries are conflicted or are otherwise unable to fulfill their ERISA responsibilities. (Ewing Aff. at ¶ 4). Because the independent fiduciary performs necessary services ordinarily performed by the corporate sponsor, the corporate sponsor is required to pay for them. (Ewing Aff. at ¶ 4). In substantially all the cases in which State Street has been engaged as an independent fiduciary in the past nine years, State Street has been paid by the company or plan sponsor. (Ewing Aff. at ¶ 5).

13. In _the_ context of these Chapter 11 Cases, with all of the attendant uncertainty that inevitably arises during any chapter 11 process, placing the additional burden of State Street's fees on the Debtors' employees through deductions from a Savings Plan, which

---

[4] A copy of the Affidavit of Monet T. Ewing is attached hereto as Exhibit B.

91100-001\DOCS_DE:78761.1              7

GR007935

was already ravaged by the Debtors' bankruptcy, likely would be interpreted negatively by the plan participants[5] and all of the Debtors' employees. (McGowan Aff. at ¶ 8). The Debtors believe that avoidance of the detrimental impact to the morale of the Debtors' employees justifies the costs of the Fiduciary Services being borne by the Debtors and not by the Savings Plan. (McGowan Aff. at ¶ 10). Based upon the Debtors' evaluation of their circumstances—including the significant efforts the Debtors have taken throughout these Chapter 11 Cases to maintain employee morale and enhance employee retention—the Debtors believe that the costs of the Fiduciary Services simply cannot be placed on the Debtors' employees through the Savings Plan. (McGowan Aff. at ¶ 11). Indeed, in the Debtors' judgment, contrary to wasting the Debtors' assets, retaining State Street plays a key part in preserving them. (McGowan Aff. at ¶ 12).

14. The fees and expenses being charged by State Street are reasonable. State Street charges an annual fee between $500,000 and $1,500,000, plus fees and expenses of its advisors, for investment manager and independent fiduciary services in bankruptcy cases. (Ewing Aff. at ¶ 6). Thus, the proposed annual fee of $530,000 to be paid by the Debtors for the Fiduciary Services is well within the range of fees normally charged by State Street for similar engagements. (Ewing Aff. at ¶ 6).

15. In conclusion, the Debtors, in their reasonable business judgment, believe that, for all the reasons discussed herein, the benefit to the Debtors of the Retention far outweighs the cost of the Retention.

---

[5] Plan participants represent about 83% of the Debtors' approximately 3300 domestic employees. (McGowan Aff. at ¶ 9).

## Conclusion

For the foregoing reasons and the reasons set forth in the Motion, the Debtors respectfully request entry of an order (i) authorizing, but not requiring, the Debtors to implement the Retention and (ii) overruling the Objections.

Dated: September 11, 2003

KIRKLAND & ELLIS LLP
James H.M. Sprayregen
Janet S. Baer
James W. Kapp III
Christian J. Lane
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

And

PACHULSKI, STANG, ZIEHL, YOUNG, JONES
& WEINTRAUB P.C.

*/s/ Paula A. Galbraith*

Laura Davis Jones (Bar No. 2436)
Scotta McFarland (Bar No. 4184)
Paula Galbraith (Bar No. 4258)
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:   (302) 652-4100
Facsimile:    (302) 652-4400

Co-Counsel for the Debtors and Debtors in Possession