# EXHIBIT 4

C O N F I D E N T I A L

1

               UNITED STATES DISTRICT COURT
2             FOR THE DISTRICT OF MASSACHUSETTS

3

4    ***************************
     LAWRENCE W. BUNCH, et al,   )
5                    Plaintiff,  )
                                 )Consolidated as
6       VS.                      )Case No.:04-11380-WGY
                                 )
7    W.R. GRACE & CO., et al,    )
                     Defendant.  )
8    ***************************

9

10

11      **DEPOSITION OF SHAWN JOHNSON**, a witness called

12   on behalf of the Plaintiffs, taken pursuant to

13   the provisions of the Federal Rules of Civil

14   Procedure, before Lisa W. Starr, a Registered

15   Professional Reporter/Certified Realtime Reporter

16   and Notary Public in and for the Commonwealth of

17   Massachusetts, at the offices of State Street

18   Bank & Trust Company, One Lincoln Street, Boston,

19   Massachusetts, on May 23, 2007, commencing at

20   9:06 a.m.

21

22

23

24

Page 73

1   Q. Do you know who had the initial contact
2 with W.R. Grace on behalf of State Street?
3   A. I don't know that.
4   Q. This time line indicates June 23. Do you
5 see that?
6   A. Yes.
7   Q. It is a projected time line, but it
8 discussed in-person interviews with Grace
9 management. Do you see that?
10   A. Yes.
11   Q. Was that something you would participate
12 in?
13   A. No.
14   Q. Did you ever meet with anybody from
15 Grace?
16   A. I don't believe so, no. In fact, I don't
17 think I've met you guys until today.
18      MS. HEERMANS: That's correct.
19      MR. FLICKER: Don't make them talk.
20      THE WITNESS: I'm new at this.
21   Q. Is this, assuming that you have never
22 seen this document before, do you know whether
23 it's standard practice for the Independent
24 Fiduciary Group, if that's who does this -- let

Page 74

1 me ask this question.
2      Who would have prepared this document, if
3 you know, referring to the entity as opposed to a
4 particular person?
5      MR. FLICKER: Only if you know.
6 Don't speculate.
7   A. I don't know. In fact, I have no idea.
8   Q. I may have asked this question a moment
9 ago. Who was the contact, if you know, the
10 initial contact between State Street and Grace?
11   A. I don't know.
12   Q. Is there a general protocol that the
13 Independent Fiduciary Group should follow if it
14 has a contact regarding potential assignment with
15 a client?
16      MR. FLICKER: Objection.
17   A. Can you restate that? I'm sorry, I was
18 reading something.
19   Q. Are there guidelines that exist or
20 policies in terms of how the Independent
21 Fiduciary Group, what it should undertake before
22 committing to an assignment?
23   A. Yeah, general process, which is, Kelly
24 would review, is it something that we do or can

Page 75

1 do. It would then come to me. There would be a
2 decision either with me or above me, which we
3 talked about earlier, as to whether or not this
4 is an engagement we would want to pursue. Then
5 there is a process that we follow to get an
6 Engagement Letter written, and there's generally
7 outside counsel involved to do the Engagement
8 Letter.
9   Q. Is there certain due diligence that State
10 Street needs to undertake before agreeing to
11 enter into an Engagement Letter?
12   A. Yeah, there can be, depending upon what
13 we're being asked to do. We might say, what is
14 that or what is the company or some general
15 understanding of what is being asked of us and
16 those kinds of things.
17   Q. And in connection with an assignment such
18 as this with W.R. Grace & Co., where it was to
19 take responsibility for the Grace stock fund, is
20 there a particular due diligence that you would
21 expect the Independent Fiduciary Group to
22 undertake before entering into an Engagement
23 Letter?
24   A. They probably would have reviewed the

Page 76

1 stock, meaning, hey, what if we put this through
2 our normal guidelines or something. But I can't
3 recall specifically. As I said, the first time I
4 seem to recall was a meeting we sat down and said
5 we've been engaged. That's kind of my first
6 recollection.
7   Q. You said a moment ago that, you used the
8 word "guidelines" in connection with the stock,
9 normal guidelines.
10   A. As we had discussed before, you have a
11 company stock where you're following it every
12 day. You have criteria which you would put the
13 company stock through.
14   Q. Can you identify those criteria for me,
15 please?
16   A. I don't have that off the top of my head,
17 no.
18      (Bates numbers 001267
19 through 1296 were marked as Johnson Exhibit No. 2
20 for identification).
21   Q. Mr. Johnson, I'm handing to you what the
22 court reporter has just marked as Johnson Exhibit
23 No. 2. I will represent to you it's a file
24 captioned Engagement Letter with Bates stamp at

## Page 77

1  Q. Have you had any discussions with Ms.
2 Driscoll regarding the W.R. Grace account after
3 the sale of the stock to D.E. Shaw?
4  A. Not that I recall, no.
5  Q. Have you had any conversations with
6 anybody from W.R. Grace?
7  A. No, I have not.
8  Q. Have you spoken to any plan participant,
9 or has any plan participant tried to communicate
10 with you?
11  A. No.
12  Q. All right.
13       MR. GOODMAN: Mr. Johnson, I don't
14 have any further questions at this time. I
15 appreciate your cooperation, and thank you.
16       MR. FLICKER: I have nothing for the
17 witness.
18       MR. RUZAL: No.
19       (Whereupon the deposition
20 concluded at 1:00 p.m.)

## Page 78

1 COMMONWEALTH OF MASSACHUSETTS )
2 SUFFOLK COUNTY, ss.                )
3
4       I, SHAWN JOHNSON, the witness herein,
5 having read the foregoing testimony of the pages
6 of this deposition, do hereby certify it to be a
7 true and correct transcript, subject to the
8 corrections, if any, shown on the attached page.
9                oOo
10
11
12       _____
13       SHAWN JOHNSON
14
15
16
17 Subscribed and sworn to before me
18 this_____day of_____, 2007.
19 _____.

## Page 79

1 COMMONWEALTH OF MASSACHUSETTS )
2 SUFFOLK COUNTY, ss.                )
3   I wish to make the following changes, for the
4 following reasons:
5 PAGE LINE
6 ____ ____     CHANGE: _____
7       REASON: _____
8 ____ ____     CHANGE: _____
9       REASON: _____
10 ____ ____    CHANGE: _____
11      REASON: _____
12 ____ ____    CHANGE: _____
13      REASON: _____
14 ____ ____    CHANGE: _____
15      REASON: _____
16 ____ ____    CHANGE: _____
17      REASON: _____
18 ____ ____    CHANGE: _____
19      REASON: _____
20 ____ ____    CHANGE: _____
21      REASON: _____
22 ____ ____    CHANGE: _____
23      REASON: _____

## Page 80

1           CERTIFICATE
2 COMMONWEALTH OF MASSACHUSETTS )
  SUFFOLK COUNTY, ss.                )
3
4      I, LISA W. STARR, a Registered
  Professional Reporter and Notary Public within
  the Commonwealth of Massachusetts, do hereby
5 certify:
6      That SHAWN JOHNSON, the witness whose
  testimony is hereinbefore set forth, was properly
7 identified and duly sworn by me.
8      That the foregoing proceedings were taken
  down by me stenographically and thereafter
9 transcribed under my direction and supervision,
  and that the within transcript is a true record
10 of such proceedings.
11      I further certify that I am not related
  to any of the parties to this action by blood or
12 marriage, and that I am in no way interested in
  the cause or outcome of this action.
13
     IN WITNESS WHEREOF, I have hereunto set
14 my hand this 31st day of May, 2007.
15
16      _____
17      LISA W. STARR
       Registered Professional Reporter
       Certified Realtime Reporter
18
   My Commission Expires: May 9, 2008
19
   THE FOREGOING CERTIFICATION OF THIS TRANSCRIPT
20 DOES NOT APPLY TO ANY REPRODUCTION OF THE SAME BY
   ANY MEANS UNLESS UNDER THE DIRECT CONTROL AND/OR
21 DIRECTION OF THE CERTIFYING REPORTER.