**EXHIBIT 9A**

W. R. GRACE & CO.

SAVINGS AND INVESTMENT PLAN

(formerly, W.R. Grace & Co. Savings and

Investment Plan for Salaried Employees)

AS ADOPTED AND CONTINUED BY

W. R. GRACE & CO.,

A CONNECTICUT CORPORATION,

EFFECTIVE SEPTEMBER 1, 1976

---

AS ADOPTED AND CONTINUED BY

W. R. GRACE & CO.,

A NEW YORK CORPORATION,

EFFECTIVE MAY 25, 1988

---

AS ADOPTED AND CONTINUED BY

W. R. GRACE & CO.,

A DELAWARE CORPORATION,

EFFECTIVE SEPTEMBER 27, 1996

---

AS ADOPTED AND CONTINUED BY

W. R. GRACE & CO.,

A DELAWARE CORPORATION,

EFFECTIVE JANUARY 1, 1997

(reflecting the merger, effective at the beginning of the Plan Year

commencing January 1, 2002, of the W.R. Grace & Co. Savings and

Investment Plan for Hourly Employees)

---

AMENDED THROUGH JULY 1, 2004

Approved by IRS

Plan No.:    123

N.Y. File No.:    130004403

Current File No.: 650044691



EXHIBIT
32
TAROLA

GR 001654

## W. R. GRACE & CO.
## SAVINGS AND INVESTMENT PLAN

The W. R. Grace & Co. Salaried Employees Savings and
Investment Plan (the "Plan") was originally established by W. R.
Grace & Co., a Connecticut corporation ("Grace Connecticut"), as
of September 1, 1976. The Plan was amended effective July 1,
1983 in order for Participants to elect the salary deferrals
permitted under section 401(k) of the Code. The Plan was amended
from time to time thereafter by Grace Connecticut, the last such
amendments being effective as of January 1, 1987 and July 1,
1987.

As a result of a corporate reorganization whereby Grace
Connecticut became a subsidiary of W. R. Grace & Co., a New York
corporation ("Grace New York") (and was renamed "W. R. Grace &
Co.-Conn."), Grace Connecticut amended the Plan effective May 25,
1988 and Grace New York adopted the Plan, as amended, with
respect to its eligible employees and assumed the sponsorship of
the Plan on behalf of itself and its participating subsidiaries
as of such date.

Grace New York thereafter amended the Plan effective
January 1, 1989 and effective July 1, 1989, to, among other
things, establish an employee stock ownership plan (within the
meaning of section 4975(e)(7) of the Internal Revenue Code of
1986, as amended) which forms a portion of the Plan. Grace New
York again amended the Plan effective July 1, 1990, January 1,
1992, June 30, 1993, and January 1, 1994.

The Plan has also been amended to, among other things,
comply with the provisions of the Tax Reform Act of 1986 and
subsequent legislation.

Effective September 27, 1996, as a result of a transaction whereby National Medical Care, Inc. became part of Fresenius Medical Care AG ("Fresenius"), Grace New York also became part of Fresenius, and the Plan became sponsored by a Delaware corporation, renamed W. R. Grace & Co. ("Grace-I").

To reflect the changes indicated in the immediately preceding paragraph, Grace further amended the Plan, effective as of September 27, 1996 (or such other date as provided in an applicable Benefits Committee Request or other date provided in the Plan).

Grace further amended the Plan, as set forth herein, effective January 1, 1997 (or such other date as provided in an applicable Benefits Committee Request or other date provided in the Plan), unless otherwise expressly provided in the Plan; which amendments are intended to (among other things) comply with the Small Business Job Protection Act of 1996 ("SBJPA") and the Uniformed Service Employment and Reemployment Rights Act of 1994 ("USERRA").

Effective March 31, 1998, as a result of a transaction whereby the Cryovac business of Grace-I became part of Sealed Air Corporation, Grace I also became part of Sealed Air Corporation and the Plan became sponsored by a Delaware corporation, renamed W. R. Grace & Co. ("Grace").

To reflect the changes indicated in the immediately preceding paragraph, Grace further amended the Plan, as set forth herein, effective as of March 31, 1998 (or such other date as provided in an applicable Benefits Committee Request or other date provided in the Plan).

To reflect changes associated with the "Closing Agreement" between Grace and the Internal Revenue Service (involving the Grace Drilling Plan and the HOMCO Plan), Grace further amended the Plan, as set forth herein, on April 20, 2000, with effective dates as set forth herein.

To reflect changes related to changes in eligibility, matching contributions and ability to reallocate Company contributions, Grace further amended the Plan, as set forth herein, effective October 1, 2000.

To reflect changes related to company match provisions, Grace further amended the Plan, effective, January 1, 2001, as set forth herein.

To reflect the adoption of the new minimum distribution rules, under the January 17, 2000 IRS proposed regulations, Grace further amended the Plan, effective September 1, 2001, as set forth herein.

To reflect the adoption of amendments to comply in good faith with certain provisions of the Economic Growth and Tax Relief Reconciliation Act of 2001, the Plan is further amended as set forth herein, effective for Plan Years beginning after December 31, 2001 (or such other date as provided herein).

Effective at the beginning of the Plan Year commencing January 1, 2002, the W.R. Grace & Co. Savings and Investment Plan for Hourly Employees is being merged into the W.R. Grace & Co. Savings and Investment Plan for Salaried Employees, and the name of the Plan is changed to the W.R. Grace & Co. Savings and Investment Plan for Salaried Employees to the W.R. Grace & Co.

Savings & Investment Plan, effective immediately after such merger.

As specified above, the Plan is amended and restated, as set forth herein, to comply with changes in the law applicable to tax-qualified pension plans, including but not limited to SBJPA and USERRA, effective January 1, 1997 (or such other date as provided herein) and to reflect the merger of the W.R. Grace & Co. Savings and Investment Plan for Hourly Employees into the W.R. Grace & Co. Savings and Investment Plan for Salaried Employees and the new name of the Plan, effective at the beginning of the Plan Year commencing January 1, 2002.

The Plan was further amended and restated, as set forth herein, effective on the dates noted below, to effectuate the following:

April 9, 2003                    Credit cash in Grace Stock Fund
                                 and Company Contribution Fund
                                 (the "Stock Funds") to the
                                 Fixed Income Fund, and allocate
                                 to participants' accounts on a
                                 pro-rata basis regarding the
                                 individual participant's
                                 interest in the Stock Funds.

April 10, 2003                   Commencing April 10, 2003, and
                                 ending April 11, 2003, suspend
                                 transactions within, and
                                 involving the Stock Funds, the
                                 order to (1) merge the Stock
                                 Funds (the merged Fund is named
                                 the "Grace Stock Fund") and (2)

|  | institute "real time" trading with respect to shares within the Grace Stock Fund. |
|---|---|
| April 14, 2003 | Reopen the Grace Stock Fund to execute participant orders to buy and sell shares allocated to their accounts, on a "real time" trading basis. |
| April 16, 2003 | Redirect to the Fixed Income Fund any payroll contributions directed by participants to the Grace Stock Fund. |
| April 17, 2003 | Cease all participant allocations to the Grace Stock Fund; but continue to permit participant allocations from the Grace Stock Fund. |

The Plan was further amended and restated, as set forth herein, effective January 1, 2003, to change the provisions of Sections 3.10 and 4.11, as agreed with the IRS, in order to receive a favorable IRS determination letter.

The Plan was further amended and restated, as set forth herein, effective December 8, 2003, to permit the Investment Committee to appoint an independent "investment manager", as defined by ERISA section 3(38), with respect to the Grace Stock Fund, and to provide the terms applicable to such appointment.

The Plan was further amended and restated, or set forth herein, effective January 1, 2004, to allow post-employment installment payments of up to 20 years, and to transfer to

Fidelity certain administrative responsibility for making
hardship withdrawal determinations.

The Plan was further amended and restated, as set forth
herein, effective July 1, 2004, to permit before and after tax
deferrals up to (but not to exceed) 25% of compensation, in
total.

GR 001660

## TABLE OF CONTENTS

Section                                                                     Page

Purpose of the Plan-------------------------------------     --

1      Definitions-------------------------------------     1

2      Participation----------------------------------     22

3      Employee Contributions-------------------------     29

4      Company Contributions--------------------------     42

5      Investment Provisions--------------------------     68

6      Valuation of Accounts--------------------------     82

7      Vesting----------------------------------------     84

8      Distribution of Vested Interest----------------     86

9      Withdrawals During Employment------------------    109

10     Payment of Benefits----------------------------    120

11     Re-Employment----------------------------------    122

12     Administration of the Plan---------------------    126

13     Certain Rights and Obligations-----------------    134

14     Amendments-------------------------------------    137

15     Non-Alienation of Benefits---------------------    138

16     Top-Heavy Provisions---------------------------    141

17     Tender Offers----------------------------------    145

18     Loans------------------------------------------    149

GR 001661

- 1 -

## Section 1

### Definitions

The following words and phrases used herein shall have the following meanings unless a different meaning is plainly required by the context.

1.01    Account:

> The account reflecting the interest of each
> Participant, Inactive Participant and former
> Participant in the Plan, which, effective July 1,
> 1989, is comprised of both a Savings Plan Account
> and an ESOP Account.

1.02    Administrative Committee:

> The Administrative Committee provided for in
> Section 12.06 of the Plan (including such
> Committee's designee).

1.03    After Tax Contribution(s):

> The sum of (i) contributions made by a Participant
> as provided in Section 3.03 of the Plan, and (ii)
> Basic Contributions.

GR 001662

- 2 -

1.04    Basic Contribution(s):

The contributions made by a Participant prior to
July 1, 1983 under Section 3.01 of the Plan as in
effect prior thereto.

1.05    Before Tax Contribution(s):

The contributions made by the Company in accordance
with the election of the Participant as provided in
Section 3.02 of the Plan.

1.06    Board of Directors:

The Board of Directors of Grace.

1.07    Business Day:

Each day that the New York Stock Exchange is open
for business.

1.08    Code:

Internal Revenue Code of 1986, as amended.

1.09    Company:

Grace, Grace Connecticut, and any other corporation
or other trade or business (owned or controlled by
Grace New York prior to September 27, 1996; or

GR 001663

- 3 -

owned or controlled by Grace Connecticut prior to
May 25, 1988) one or more divisions or departments
of which from time to time shall be authorized by
the Board of Directors to participate in the Plan
(or which were authorized by Grace Connecticut to
participate in the Plan prior to May 25, 1988) and
which shall have adopted the Plan.

1.10   Compensation:

(1)   Compensation is defined as wages and salaries for
personal services actually rendered in the course
of employment with the Company to the extent that
the amounts are includable in gross income
(including, but not limited, to commissions paid
salesmen, compensation for services on the basis of
a percentage of profits, incentive compensation,
tips and bonuses (but excluding long-term incentive
bonuses and retention bonuses)).  Compensation
shall exclude reimbursements or other expense
allowances, fringe benefits, moving expenses,
deferred compensation, welfare benefits, and the
Company's cost for any employee benefit plan,
including the Plan.  Compensation shall also
exclude the following:

(a)   Employer contributions to a plan of deferred
compensation which are not includable in the
employee's gross income for the taxable year
in which contributed, or employer
contributions under a simplified employee

GR 001664

- 4 -

pension to the extent such contributions are
deductible by the employee, or any
distributions from a plan of deferred
compensation;

(b)     Amounts realized from the exercise of a non-
qualified stock option, or when restricted
stock (or property) held by the employee
either becomes freely transferable or is no
longer subject to a substantial risk of
forfeiture;

(c)     Amounts realized from the sale, exchange or
other disposition of stock acquired under a
qualified stock option; and

(d)     other amounts which received special tax
benefits, or contributions made by the
employer (whether or not under a salary
reduction agreement) towards the purchase of
an annuity contract described in section
403(b) of the Code (whether or not the
contributions are actually excludable from
the gross income of the employee).

Notwithstanding anything herein to the contrary,
Compensation shall include any amount contributed by
the Company pursuant to a salary reduction agreement
and which is not includable in the gross income of the
employee under sections 125, 402(e)(3), 402(h), or

- 5 -

403(b)(or under section 132(f) for Plan Years on and
after January 1, 2001) of the Code.

(2)   In the case of a Foreign Based Eligible Employee,
compensation shall be determined by the Administrative
Committee using as a guideline to be uniformly and
consistently applied that compensation which would have
been received by a Participant if his services had been
performed in a similar position in the United States
for Grace or Grace Connecticut.

(3)  Effective January 1, 1989, Compensation taken into
account under the Plan with respect to any Employee for
a Plan Year shall not exceed $200,000 (as automatically
adjusted for increases in the cost of living as
prescribed by the Secretary of the Treasury).
Effective January 1, 1994, compensation taken into
account under the Plan with respect to a Plan Year
shall not exceed $150,000 (as adjusted by the
Commissioner for increases in the cost of living in
accordance with section 401(a)(17)(B) of the Internal
Revenue Code). Effective January 1, 2002, Compensation
taken into account under the Plan with respect to any
Employee for a Plan Year shall not exceed $200,000 (as
automatically adjusted for increase in the cost of
living as prescribed by the Secretary of Treasury). For
Plan Years before January 1, 1997, in determining the
Compensation of a Participant for purposes of this
limitation, the rules of section 414(g)(6) of the Code
shall apply, except in applying such rules, the term
"family" shall include only the spouse of the

- 6 -

Participant and any lineal descendants of the
Participant who have not attained age 19 before the
close of the Plan Year.

1.11    Continuous Employment:

Any period of employment with the Company, or any
corporation or other trade or business controlled by Grace
(or, prior to September 27, 1996, W. R. Grace & Co., a New
York corporation; or, prior to May 25, 1988, by Grace
Connecticut) pursuant to Section 414(b) or (c) of the Code
or any other entity affiliated with the Company, or
required to be aggregated with the Company pursuant to
section 414(m) or section 414(o) of the Code, respectively
(during the period of such controlled status, affiliation
or required aggregation), commencing on the Employee's
date of hire.

1.12    Conversion Period:

The period beginning on June 30, 1993 and ending on July
16, 1993 during which certain Plan transactions were
suspended as a result of transferring the assets of the
Trust Fund to Fidelity Management Trust Company and
changing the investment options available under the Plan.
A description of these suspended transactions is attached
hereto as Exhibit B).

GR 001667

- 7 -

1.13    Cryovac Disposition

The transaction whereby control of the Cryovac business such business, the "Cryovac Business") was separated from control of substantially all of the other businesses conducted by Grace-I, and whereby Grace commenced control and ownership, directly or indirectly, of all of the Non-Cryovac Businesses of Grace-I.

1.14    Disability Date:

(1)    The earlier of (i) the date on which a Participant or Inactive Participant receives a disability award under the Social Security Act, or (ii) the date on which a Participant or Inactive Participant is certified as disabled under a long term disability income plan maintained by the Company.

(2)    In all other cases, the date on which the Administrative Committee determines that a Participant or Inactive Participant is unable to perform the customary duties of his regular job with the Company, and will continue to be unable to so perform for a period of time which is expected to be protracted, due to a physical or mental disability.  This determination is to be made only after the Participant or Inactive Participant has submitted himself to an examination by a physician provided by or acceptable to the Administrative Committee.

- 8 -

(3)     For purposes of Section 402(e)(4)(A) of the Code, a
        Participant or Inactive Participant shall be
        considered to have separated from service on his
        Disability Date.

1.15    Early Retirement Date:

        The date of the Participant's or Inactive Participant's
        Termination of Service, provided it occurs on or after
        his 55th birthday and prior to his 65th birthday, or on
        or after his 50th birthday in the case of Participants
        and Inactive Participants who are subject to the early
        retirement provisions of section 5.14 or Section 5.15 of
        the W. R. Grace & Co. Retirement Plan for Salaried
        Employees or section 3.14 of the W. R. Grace & Co.
        Supplemental Executive Retirement Plan.

1.16    Effective Date of the Plan:

        (1)     The Effective Date of this amended and restated
                Plan is January 1, 1997 (or such other date as
                provided herein).   The Effective Date of the Plan
                as originally adopted by Grace Connecticut is
                September 1, 1976.

        (2)     The Effective Date of the Plan for each Employing
                Unit authorized to participate in the Plan after
                September 1, 1976 shall be the effective date of such
                participation.

GR 001669

- 9 -

1.17   Eligible Employee:

An Employee eligible to participate in the Plan as
provided in Section 2.01.

1.18   Employee:

Any person who is employed by the Company or any other
entity required to be aggregated with the Company under
sections 414(b), (c), (m) or (o) of the Code.

For purposes of the requirements of section 414(n)(3) of
the Code, a "leased employee" who is not excluded under
the safe harbor provisions of section 414(n)(5) of the
Code shall be treated as an Employee, but any such "leased
employee" shall not be an Eligible Employee unless
specifically so designated by the Company.  A "leased
employee" is any person (other than an employee of the
Company) who pursuant to an agreement between the Company
and any other person (leasing organization) has performed
services for the Company (or for the Company and related
persons determined in accordance with §414(n)(6) of the
Code) on a substantially full-time basis for a period of
at least one year, and such services are performed under
the primary direction or control of a Company (for Plan
Years beginning prior to January 1, 1997, are of a type
historically performed by employees in the business field
of a Company).

- 10 -

1.19   Employing Unit:

A division or department of the Company authorized by the
Board of Directors to participate in the Plan (including
any division or department of the Company authorized by
Grace Connecticut to participate in the Plan prior to May
25, 1988).

1.20   ESOP:

Effective July 1, 1989, the stock bonus portion of the
Plan which constitutes an employee stock ownership plan
under section 4975(e)(7) of the Code.

1.21   ESOP Account:

Prior to April 9, 2003, the amounts credited to each
Participant, Inactive Participant or former Participant
under the ESOP, separately reflecting Company
contributions made after June 30, 1989 and before January
1, 2001 under Section 4.01 (including Company
contributions that were transferred from Former Fund C
within the Savings Plan to the ESOP in accordance with
Section 5.01), and Supplemental Contributions, After-Tax
Contributions, Before-Tax Contributions and Rollover
Contributions that were invested in Former Fund C within
the Savings Plan and subsequently transferred to the ESOP
in accordance with Section 5.01, each with any earnings,
interest and dividends, and profits and losses, realized
or unrealized thereon. Effective April 9, 2003, amounts
credited to the ESOP Account shall be allocated to the

- 11 -

ESOP portion of the Grace Stock Fund, and such portion shall be regarded as the "ESOP Account", and shall continue to constitute the ESOP, as of and after that date.

1.22   Foreign Based Eligible Employee:

An Employee eligible to participate in the Plan as provided in Section 2.01(2).

1.23   Foreign Subsidiary:

Any foreign entity in which the Company directly or through one or more entities has at least a 10% interest in the voting stock or profits thereof and with respect to which the Company has entered into an agreement with the U.S. Secretary of the Treasury or his delegate as defined in section 3121(1) of the Code providing social security coverage of U.S. citizens and U.S. resident employees.

1.24   Former Funds:

The available investment options under the Plan prior to the commencement of the Conversion Period, including Former Funds A, B, C and D.

1.25   Grace:

W. R. Grace & Co., a Delaware corporation.

- 12 -

1.26    Grace Connecticut:

W. R. Grace & Co.-Conn., a Connecticut corporation, which
is a subsidiary of Grace.  All references herein to
"Grace Connecticut" which relate to periods prior to
May 25, 1988, shall mean W. R. Grace & Co., a Connecticut
corporation.

1.27    Grace Stock:

Shares of common stock of Grace, including fractional
shares.

1.28    Grace Stock Fund:  As defined in Sections 5.11 and 5.12.

Hour of Service:

With respect to each Plan Year (or other applicable
computation period) an Employee will be credited with an
Hour of Service for the following:

(1)    Each hour for which an Employee is paid or entitled
       to payment by the Company for the performance of
       duties.

(2)    Each hour up to a maximum of 501 hours for which an
       Employee is paid or entitled to payment by the
       Company on account of a period of time during which
       no duties are performed due to vacation, holiday,
       illness, incapacity (including disability), layoff,
       jury duty, military duty or leave of absence.

- 13 -

(3)     Each hour not otherwise credited for which back
        pay, irrespective of mitigation of damages, has
        been either awarded or agreed to by the Company.

Notwithstanding the foregoing, the Hours of Service of a
salaried Employee exempt from the overtime provisions of
the Fair Labor Standards Act shall be calculated, for
purposes of determining a Year of Service and a One-Year
Break in Service, by crediting him with 45 Hours of
Service for any calendar week in which he has at least one
Hour of Service.  This provision shall be effective as of
May 1, 1979 with respect to all relevant computation
periods (before or after such date) for exempt salaried
Employees who terminate, retire or are re-employed on or
after such date.

The foregoing shall be determined in accordance with the
provisions of Labor Department Regulations Sections
2530.200(b)-2(b) and (c) and Section 2530.200(b)-3(e)(6),
where applicable.

Hours of Service for purposes of determining eligibility
and a One-Year Break in Service shall include hours during
any period of Continuous Employment.

1.29    Inactive Participant:

(1)     Any Participant who ceases to be an Eligible
        Employee but whose Continuous Employment has not
        been terminated.

GR 001674

- 14 -

    (2)   Any Participant who is not currently making After Tax
         Contributions and is not currently electing to have
         Before Tax Contributions made on his behalf.

    (3)   Unless otherwise expressly provided in the Plan, the
         term "Inactive Participant" shall include an
         alternate payee for whom an Account is required to be
         established and maintained within the Plan by the
         terms of a qualified domestic relations order
         described in section 414(p) of the Code.

1.30    Independent Investment Manager:

An "investment manager", defined by ERISA section 3(38),
with no affiliation to the Company, that has been retained
by the Investment Committee to manage the Grace Stock
Fund, pursuant to Section 12.04(b).

1.31    Investment Committee:

The Investment Committee as provided in Section 12.03
(including such Committee's designee).

1.32    Investment Funds:

The available investment options under the Plan after the
commencement of the Conversion Period (but not including
the ESOP), which are described in Section 5.

GR 001675

- 15 -

1.33    Investment Manager:

An "investment manager", as defined by ERISA section
3(38), and as provided in Section 12.04(a).

1.34    NMC Disposition:

The transaction whereby control of the business conducted
by Grace's National Medical Care, Inc. subsidiary (such
businesses, the "NMC Businesses") was separated from
control of substantially all of the other businesses
conducted by W. R. Grace & Co. (a New York corporation),
which included a distribution, with respect to each share
of its common stock, of one share of Grace, which directly
or indirectly owns or controls the Non-NMC Businesses.

1.35    Non-Taxable Balance:

The amount of a Participant's contributions to the Plan
(not previously withdrawn) in which he has a cost basis
for tax purposes, as of December 31, 1986.

1.36    One-Year Break in Service:

Any Plan Year during which an Employee fails to complete
more than 500 Hours of Service due to a Termination of
Service.  A One-Year Break in Service shall occur at the
close of business on the last day of any such Plan Year.

For purposes of determining a One-Year Break in Service in
the case of an absence commencing on or after January 1,

- 16 -

1985, an Employee shall also be credited with a number of
Hours of Service equal to such Employee's normal working
hours (or 8 hours per workday if this cannot be
determined) (up to a maximum of 501 hours) during which
the Employee was absent from work on account of pregnancy,
childbirth, adoption, or related child care (as described
in sections 410(a)(5)(E) and 411(a)(6)(E) of the Code).
Such hours shall be credited in the Plan Year in which
such absence begins if such hours are needed to prevent a
One-Year Break in Service in such Plan Year.   Otherwise
such hours shall be credited in the next succeeding Plan
Year.

1.37   Participant:

Any person participating in the Plan as provided in
Section 2.

1.38   Plan:

W. R. Grace & Co. Savings and Investment Plan   (for
periods before January 1, 2002, W. R. Grace & Co.
Salaried Employees Savings and Investment Plan) as set
forth herein and as from time to time amended.

- 17 -

1.39    Plan Year:

The twelve-month period commencing on each January 1st
and terminating on the following December 31st, except
that the first Plan Year shall be the four-month period
commencing on September 1, 1976 and terminating on
December 31, 1976.

1.40    Qualified Domestic Subsidiary:
A domestic corporation:

(1)    Eighty (80) percentum or more of the outstanding
voting stock of which is owned by the Company;

(2)    Ninety-five (95) percentum or more of its gross
income for the 3 year period immediately preceding
the close of its taxable year which ends on or
before the close of the taxable year of the Company
(or for such part of such period during which the
Corporation was in existence) was derived from
sources outside the United States; and

(3)    Ninety (90) percentum or more of its gross income
for such period (or such part) was derived from the
active conduct of a trade or business.

1.41    Recordkeeper:

The entity retained by Grace as of January 1, 1992 to
maintain the books and records of the Plan and to make

GR 001678

- 18 -

distributions of Plan benefits, and any successor(s) thereto.

1.42    Retirement:

Termination of Service (other than by death) on an Early Retirement Date or a Retirement Date.

1.43    Retirement Date:

The date of the Participant's or Inactive Participant's Termination of Service, provided it occurs on or after his 65th birthday.

1.44    Rollover Contribution(s):

The contributions made by a Participant as described in Section 3.13 of the Plan.

1.45    Savings Plan:

The portion of the Plan that does not constitute an employee stock ownership plan under section 4975(e)(7) of the Code.   Prior to July 1, 1989, the Plan was comprised entirely of the Savings Plan.

1.46    Savings Plan Account:

The amounts credited to each Participant, Inactive Participant, or former Participant under the Savings Plan, separately reflecting Supplemental Contributions,

- 19 -

After Tax Contributions, Before Tax Contributions,
Rollover Contributions and Company contributions made to
the Plan after December 31, 2000, each with any earnings,
interest and dividends, and profits or losses, realized
or unrealized, thereon (other than any such amounts that
were invested in Former Fund C and subsequently
transferred from the Savings Plan to the ESOP in
accordance with Section 5.01).

1.47    Supplemental Contributions:

The contributions made by a Participant prior to July 1,
1983 under Section 3.02 of the Plan as in effect prior
thereto, and the contributions transferred from the W. R.
Grace & Co. Retirement Plan for Salaried Employees as
described in Section 3.14.

1.48    Termination of Service:

Termination of Continuous Employment as determined by the
Company from its service records.

Notwithstanding any different treatment provided under a
parallel provision of any other employee benefit plan
maintained by the Company, in the event that an Employee
ceases to render actual services to the Company (and any
affiliate thereof), no amount paid to him (whether in a
lump sum or in periodic installments) on or after
cessation of services on account of severance shall be
regarded as compensation under the Plan (except to the
extent otherwise required by law).

- 20 -

1.49    Three Months of Service:

Three consecutive, full calendar months, beginning with
the first day of the calendar month following (or
coincident with) the Employee's date of hire, during
which the Employee has completed at least 250 Hours of
Service.

1.50    Transition Period:

The period beginning on December 31, 1991 and ending on
April 1, 1992 during which certain Plan transactions were
suspended as a result of the transfer of the books and
records of the Plan from Grace (and its designees) to the
Recordkeeper. (A list of these suspended transactions
and a description of certain other matters related to the
Transition Period is attached hereto as Exhibit A.)

1.51    Trust Fund:

The fund established under Section 12.01.

1.52    Trustee:

The Trustee or Trustees provided for in Section 12.01.

GR 001681

- 21 -

1.53   Vested Interest:

That portion of an Account in which a participant has a
fully vested and nonforfeitable right, as provided in
Section 7.

1.54   Year of Service:

The consecutive twelve-month period beginning on the
Employee's date of hire or any Plan Year subsequent to
such date of hire (beginning with the Plan Year which
includes the first anniversary of the Employee's date of
hire) in which the Employee has completed at least 1,000
Hours of Service.

1.55   Effective July 1, 1989, where a provision in the text of
the Plan is intended to apply to the entire Plan, the term
"Plan" is used.  Where a provision is intended to apply to
one portion of the Plan, but not the other, the term
"ESOP" or "Savings Plan", as the case may be, is used.

1.56   Masculine pronouns used herein shall refer to men or
women or both and nouns and pronouns when stated in the
singular shall include the plural and when stated in the
plural shall include the singular, wherever appropriate.

1.57   Any reference in the Plan to a "Section" shall refer to a
Section of the Plan unless otherwise specified.

GR 001682

- 22 -

## Section 2

### Participation

2.01    An Eligible Employee is:

(1)      Any salaried Employee of an Employing Unit, or any
salesman paid on a commission basis by an Employing
Unit, who has completed Three Months of Service
(or, for periods prior to October 1, 2000, one Year
of Service), other than an Employee with respect to
whom compensation, retirement benefits, hours of
work or conditions of employment are determined
through good faith bargaining with a recognized
bargaining agent (subject to collective bargaining)
or an Employee actively participating in another
savings and investment plan maintained or
contributed to by the Company or any subsidiary of
the Company.

With respect to any Eligible Employee who has
completed Three Months of Service (but not one Year
of Service) on or prior to October 1, 2000, such
Eligible Employee shall be eligible to commence
participation in the Plan, as of October 1, 2000.

Notwithstanding the forgoing, for periods
commencing on or after October 1, 2000, any
salaried Employee of an Employing Unit, or any
salesman paid on a commission basis by an Employing
Unit, other than an Employee with respect to whom

GR 001683

- 23 -

compensation, retirement benefits, hours of work or
conditions of employment are determined through
good faith bargaining with a recognized bargaining
agent (subject to collective bargaining) or an
Employee actively participating in another savings
and investment plan maintained or contributed to by
the Company or any subsidiary of the Company, who
does not satisfy the requirements of either of the
first two paragraphs of this Section 2.01(1) prior
to completing one Year of Service, shall be an
Eligible Employee when he or she has completed one
Year of Service.

The limitations of this Section 2.01(1) with
respect to the exclusion of hourly Employees from
participation in the Plan shall not apply to those
hourly Employees who, as a result of the merger of
the Hourly Plan (as defined in Section 2.11) with
this Plan, become Participants or Inactive
Participants in this Plan as the result of such
merger, as more fully described in Section 2.11.

(2)    Any citizen or resident of the United States who is
a salaried Employee or salesman paid on a
commission basis of (1) a Foreign Subsidiary or (2)
a Qualified Domestic Subsidiary, as described
respectively in sections 406(a) and 407(a) of the
Code, and for whom no contributions under a funded
plan of deferred compensation are provided by the
Foreign Subsidiary, Qualified Domestic Subsidiary,

- 24 -

or any other person with respect to the
remuneration paid by such Foreign Subsidiary or
Qualified Domestic Subsidiary, and who has
completed one Year of Service.

Notwithstanding the foregoing, an individual who is
not a Participant in the Plan at the time he is
hired by a foreign subsidiary or qualified domestic
subsidiary is not an Eligible Employee.

(3)     Notwithstanding Section 2.01(1), effective at the
        beginning of the Plan Year commencing January 1,
        2002, any hourly Employee of an Employing Unit
        (other than an Employee actively participating in
        another savings and investment plan maintained or
        contributed to by the Company or any subsidiary of
        the Company) who has completed Three Months of
        Service shall be an Eligible Employee. The
        designation of an Employing Unit may restrict
        eligibility to those hourly Employees thereof who
        are covered under a specified collective
        bargaining agreement, or who are not covered under
        any such agreement.

        Any hourly Employee of an Employing Unit, who does
        not satisfy the requirements of the preceding
        paragraph prior to completing one Year of Service,
        shall be an Eligible Employee when he or she has
        completed one Year of Service.

- 25 -

2.02    Each Employee eligible to participate in the Plan shall be
        so notified by the Company and shall elect to participate
        or not to participate by signing such forms as the
        Administrative Committee may require which forms shall be
        delivered to the Administrative Committee within 30 days
        after such notice of eligibility.   Failure to elect
        affirmatively to participate in the Plan within 30 days
        after such notice of eligibility shall be an election not
        to participate.

2.03    Any Employee who becomes eligible to participate and who
        elects to participate within the time provided shall
        become a Participant as of the first day of the month
        coincident with or next following his eligibility date.

2.04    Each Eligible Employee who elects not to become a
        Participant when first eligible may at any time after his
        eligibility date elect to become a Participant by signing
        such forms as the Administrative Committee may require.
        Such an Eligible Employee shall become a Participant (by
        electing to have the Company make Before Tax Contributions
        on his behalf under Section 3.02 or otherwise) as of the
        first day of the month which follows by at least 30 days
        the date such forms as the Administrative Committee may
        require are delivered to that Committee.

2.05    Any other provision of the Plan to the contrary
         notwithstanding:

- 26 -

    (i)      each Eligible Employee who is not a Participant as of May 24, 1993, may elect to become a Participant effective July 1, 1993, provided that the Eligible Employee makes that election by submitting the appropriate form to the Administrative Committee on or after May 24, 1993, but before June 19, 1993 (the "Open Enrollment Period:); and

    (ii)    each Participant may elect to have the Company start to make, or increase, Before Tax Contributions on his behalf under Section 3.02, effective July 1, 1993, provided that the Participant makes that election by submitting the appropriate form to the Administrative Committee during the Open Enrollment Period.

2.06 If a Participant terminates his Continuous Employment for any reason, his participation shall terminate.

2.07 Notwithstanding Section 2.06, an interruption in service in case of an authorized leave of absence, will not be considered a Termination of Service for purposes of the Plan, but no After Tax Contributions or Before Tax Contributions may be made during the periods of absence unless the Participant receives Compensation during such periods.

- 27 -

2.08   If a Participant is transferred to service with a division
       of the Company or any of its subsidiaries or affiliates
       not covered by the Plan or is transferred to an employment
       status not covered by the Plan, he shall be considered an
       Inactive Participant, and no After Tax Contributions or
       Before Tax Contributions may be made until he again
       becomes an Eligible Employee.

2.09   In the event that the Company shall acquire the control of
       any organization by purchase of assets or stock, merger,
       amalgamation, consolidation or any other similar event,
       the Board of Directors (or its Benefits Committee or any
       officer of Grace who has been authorized to acquire such
       organization by the Board of Directors) may authorize such
       organization to participate in the Plan upon agreement
       that contributions shall be made as required under the
       Plan, shall determine to what extent, if any, credit for
       service with such organization shall be granted as to the
       employees of such organization for the purpose of
       determining eligibility hereunder, whether a plan
       maintained by such organization shall be merged into the
       Plan and the treatment of assets of such plan in
       connection with such merger.

2.10   The former Dearborn Chemical Company Salaried Employees
       Savings and Investment Plan (and the assets and account
       balances thereunder) was merged into this Plan effective
       July 5, 1989.  The former HOMCO International, Inc. Profit
       Sharing, Investment Savings, and Retirement Plan; Grace
       Offshore Company Employees Profit Sharing Plan; and Grace
       Energy Corporation Employees Savings and Investment Plan

GR 001688

- 28 -

(and the assets and account balances under each) were
merged into this Plan effective December 31, 1993.   The
former Grace Drilling Co. Money Purchase Plan (and the
assets and account balances thereunder) was merged into
this Plan effective October 1, 1994.

2.11    The former W.R. Grace & Co. Hourly Employees Savings and
        Investment Plan ("Hourly Plan") was merged into this Plan
        effective at the beginning of the Plan Year commencing
        January 1, 2002.  An individual who is a participant,
        inactive participant or former participant under the
        Hourly Plan as of the time of such merger shall become a
        Participant, Inactive Participant or former Participant,
        as applicable, under this Plan as of the time of such
        merger.  Provided, however, that an individual whose
        rights to benefits payable under the Hourly Plan have,
        prior to January 1, 2002, commenced, been paid in full
        (either directly or by distribution of an appropriate
        annuity contract from an insurer) or been forfeited to the
        extent not paid shall have his benefits determined under
        the Hourly Plan as in effect at the time of distribution,
        except as otherwise specifically provided in this Plan.

- 29 -

## Section 3

#### Employee Contributions

3.01 Each Participant shall elect to have the Company make Before
Tax Contributions on his behalf in accordance with Section
3.02, or shall elect to make After Tax Contributions to the
Plan in accordance with Section 3.03, or both.

Effective for Plan Years commencing on or after January 1,
2002, Participants eligible to make elective deferrals under
this Plan and who have attained age 50 before the close of
the Plan Year shall be eligible to make catch-up
contributions in accordance with, and subject to the
limitations of, section 414(v) of the Code. Such catch-up
contributions shall not be taken into account for purposes
of the provisions of the Plan implementing the required
limitations of Section 402(g) and 415 of the Code. The Plan
shall not be treated as failing to satisfy the provisions of
the Plan implementing the requirements of Section 401(k)(3),
401(k)(11), 401(k)(12), 410(b), or 461 of the Code, as
applicable, by reason of the making of such catch-up
contributions.

3.02 During a period specified by the Administrative Committee
prior to the later of (1) the beginning of each Plan Year or
(2) the date that an Eligible Employee first becomes a
Participant under Section 2 (subject to Section 2.04) or
Section 11.02 (upon reemployment), a Participant may request
that the Company reduce his Compensation in respect of
periods during such Plan Year that he is a Participant in

- 30 -

the Plan by an amount equal to a whole percentage, between 2% and 25% inclusive, of such Compensation and contribute such amount to his Account under the Plan as a Before Tax Contribution. Notwithstanding the foregoing, such Before Tax Contributions under this Plan and all other plans, contracts, or arrangements of the Company shall not exceed $7,000 (as automatically adjusted for increases in the cost of living as prescribed by the Secretary of the Treasury) for a Plan Year (determined without regard to certain amounts paid in 1987 in respect of 1986 services). In the event that a Participant participates in more than one cash or deferred arrangement under section 401(k) of the Code (or other elective deferral arrangement covered under section 402(g)(3) of the Code) and contributions under all such arrangements exceed the foregoing limitation, he shall so inform the Administrative Committee and shall indicate the amount of his Before Tax Contributions to be refunded to him from the Plan as an Excess Deferral no later than March 1 of the Plan Year next following the Plan Year in which such Before Tax Contributions were made, and such refund of such Before Tax Contributions (and earnings, if any, thereon) shall be made to him no later than April 1 of such Plan Year.

Amounts refunded as Excess Deferrals pursuant to this Section 3.02 shall be adjusted for income or loss. The income or loss allocable to the Excess Deferrals is equal to the sum of the following: (i) the income or loss for the taxable year of the individual allocable to the Participant's Before Tax Contributions multiplied by a fraction, the numerator of which is such Participant's

GR 001691

- 31 -

Excess Deferral for the taxable year, and the denominator is equal to the sum of the Participant's account balance attributable to Before Tax Contributions as of the beginning of the taxable year, plus the Participant's Before Tax Contributions for the taxable year, and (ii) 10% of the amount determined under (i) above multiplied by the number of whole calendar months between the end of the Plan Year and the date of distribution, counting the month of distribution if distribution occurs after the 15th of such month.

3.03 A Participant who has elected to have the Company make Before Tax Contributions on his behalf under Section 3.02 may also elect to contribute as After Tax Contributions an amount equal to a whole percentage of his Compensation between 1% and 25% inclusive, not in excess of the amount by which 25% exceeds the percentage of his Compensation represented by Before Tax Contributions for the Plan Year. A Participant who has not elected to have the Company make Before Tax Contributions on his behalf under Section 3.02 may elect to contribute as After Tax Contributions an amount equal to a whole percentage of his Compensation between 2% and 25% inclusive.

3.04 Subject to Section 3.02 of the Plan, a Participant may elect to increase or decrease his rate of Before Tax Contributions as of the first date of any month (but not more frequently than once every 3 months) with no changes during a Plan Year that are effective after September 1. Such elections shall be effective on the first day of the month next following the date that the Administrative Committee receives notice

- 32 -

from him.  Notwithstanding the foregoing, the provisions of
this Section 3.04 shall not apply to any suspension of
Before Tax Contributions which result from a withdrawal made
pursuant to Section 9.01(3) on account of hardship (as
defined in Section 9.05).

3.05 Subject to Section 3.03 of the Plan, a Participant may elect
to increase or decrease his rate of After Tax Contributions
effective on the first day of any month, provided that the
Administrative Committee receives prior notice from him in
writing, and provided further that such increase or decrease
cannot be made more frequently than once every three months,
except that the foregoing restriction shall not extend
beyond the end of any Plan Year.  Notwithstanding the
foregoing, a Participant may suspend his After Tax
Contributions effective the last day of any month by giving
written notice to the Administrative Committee at any time
prior to such effective date.  If a Participant has
suspended his After Tax Contributions, he may resume his
After Tax Contributions on the first day of any month which
is at least three full calendar months after the date the
suspension commenced (except that the foregoing restriction
shall not extend beyond the end of any Plan Year) by giving
written notice to the Administrative Committee as determined
by the date such notice is received by the Administrative
Committee.  For purposes of this Section 3.05, an Eligible
Employee who does not become a Participant in the Plan when
first eligible shall not be deemed to have made an election
with respect to After Tax Contributions until the
Administrative Committee receives notice from him in writing
of such an election.

GR 001693

- 33 -

3.06  After Tax Contributions shall be deducted by the Company
      from the Compensation of each Participant.  Before Tax
      Contributions shall be withheld by the Company from the
      Compensation of each Participant, subject to Section 3.10.

3.07  A Participant shall be an Inactive Participant during a
      period when (1) no Before Tax Contributions are being made
      on his behalf and (2) he is not currently making After Tax
      Contributions.

3.08  During the period prior to the beginning of each Plan Year,
      or from time to time thereafter, or both, the Company shall
      make estimated calculations, as set forth below, with
      respect to such Plan Year required by section 401(k) of the
      Code, and after the end of such Plan Year, shall make exact
      calculations, as set forth below:

      (a)  Each Eligible Employee shall be classified as either a
           (i) "highly compensated employee" or an (ii) "other
           employee".  For purposes hereof, a "highly compensated
           employee" means any Eligible Employee who performs
           service for the Company during the Plan Year and (A)
           who during the twelve (12) month period immediately
           preceding the Plan Year of reference received
           compensation from the Company in excess of $80,000 (as
           adjusted pursuant to the Code) or (B) who during such
           preceding Plan Year, or the Plan Year of reference,
           owned 5% or more of the equity of the Company.  In
           applying this definition, the special rules of section
           414(q) of the Code and the aggregation rules of

GR 001694

- 34 -

sections 414(b), (c), (m) and (o) of the Code shall be taken into account.  For purposes hereof, "compensation" means compensation as set forth in Section 4.05 of the Plan (with the modifications set forth in section 414(q) of the Code).  For purposes hereof, an "other employee" means any Eligible Employee who is not classified as a highly compensated employee.

(b)  For each Eligible Employee who is classified as an other employee, a deferral ratio shall be calculated equal to his Before Tax Contributions for the Plan Year preceding the Plan Year of reference (for Plan Years prior to January 1, 1997, the Plan Year of reference) (zero in the case of an Eligible Employee for whom no Before Tax Contributions are being made) divided by his Compensation for such Plan Year. Notwithstanding the foregoing, effective for Plan Years beginning on or after January 1, 2001, for purposes of this Section 3.08(b), the deferral ratio shall be the ratio for the Plan Year of reference.

(c)  For each Eligible Employee, who is classified as a highly compensated employee, a deferred ratio shall be calculated equal to his Before Tax Contributions for the Plan Year of reference (zero in the case of an Eligible Employee for whom no Before Tax Contributions are being made) divided by his compensation for the Plan Year of reference.  An actual deferral percentage shall be calculated equal to the average of the deferral ratios for all such Eligible Employees.

- 35 -

3.09    For each Plan Year, the actual deferral percentage of the
         Eligible Employees who are classified as highly
         compensated employees (determined under Section 3.08(c),
         which considers contributions and Compensation for the
         Plan Year of reference) shall not exceed the greater of
         (A) or (B) below (and any necessary adjustments shall be
         made as set forth in Section 3.10):

    (A)    The actual deferral percentage for the prior Plan
           Year (for Plan Years prior to January 1, 1997, the
           Plan Year of reference) of the Eligible Employees
           who are classified as other employees (determined
           under Section 3.08(b)), multiplied by 1.25, or

    (B)    The lesser of:

           ( i)    the actual deferral percentage for the prior
                   Plan Year (for Plan Years prior to January 1,
                   1997, the Plan Year of reference) of the
                   Eligible Employees who are classified as
                   other employees (determined under Section
                   3.08(b)), multiplied by 2, or

           (ii)    the actual deferral percentage for the prior
                   Plan Year (for Plan Years prior to January 1,
                   1997, the Plan Year of reference) of the
                   Eligible Employees who are classified as
                   other employees (determined under Section
                   3.08(b)), plus 2%.

- 36 -

Notwithstanding the foregoing, effective for Plan Years beginning on or after January 1, 2001, for purposes of this Section 3.09, the actual deferral percentage for Eligible Employees who are classified as other employees shall be the actual deferral percentage for the Plan Year of reference.

3.10    In the event that the actual deferral percentage of the Eligible Employees who are classified as highly compensated employees for the Plan Year exceeds the maximum percentage permitted under Section 3.09 (less such additional percentage as may be determined by the Administrative Committee) based on estimated or exact calculations, a leveling method shall be applied under which the requested or actual Before Tax Contribution for the Plan Year of the Eligible Employee(s) who are classified as highly compensated employees and who are deferring the greatest dollar amount as Before Tax Contributions for the Plan Year shall be reduced, in total, by the amount of the Excess Before Tax Contributions. For purposes of this Section 3.10, "Excess Before Tax Contributions" shall mean, with respect to any Plan Year, the excess of (a) the aggregate amount of Before Tax Contributions actually taken into account in computing the actual deferral percentage of highly compensated employees for such Plan Year, over (b) the maximum amount of such contributions permitted by the actual deferral percentage test of Section 3.09 (determined by hypothetically reducing Before Tax Contributions made on behalf of highly compensated employees in order of their actual deferral percentages, beginning with the highest of such percentages, and

- 37 -

continuing this process until the actual deferral
percentage test is satisfied). For purposes of reducing
the Before Tax Contributions of any highly compensated
employee, the amount of Excess Before Tax Contributions
will be allocated first to the Before Tax Contributions of
the highly compensated employee with the highest actual
dollar amount of Before Tax Contributions, to equal the
dollar amount of the Before Tax Contributions of the
highly compensated employee with the next highest dollar
amount; however, a lesser reduction will be applied if
such lesser reduction results in an allocation of the
total Excess Before Tax Contributions. This process will
continue in descending order until all the Excess Before
Tax Contributions have been allocated.

3.11    Any amount by which a Participant's requested or actual
Before Tax Contribution is reduced for a Plan Year shall
be treated in the manner set forth below as elected by
such Participant. A Participant may elect to receive such
amount in cash as part of his current Compensation or may
elect to have such amount considered as an After Tax
Contribution as determined under Section 3.03 of the Plan.
In the event that a Participant elects to receive the
amount by which his Before Tax Contributions are required
to be reduced in cash, such amount shall not be
contributed to the Plan, or if contributed, shall be
refunded with any earnings allocable thereto as an Excess
Contribution (and any Company contribution associated with
such refunded Excess Contribution, including any earnings
allocable thereto, shall be forfeited). Before Tax
Contributions which are to be refunded or considered as an

- 38 -

After Tax Contribution under this Section 3.11 shall be so
refunded or considered in accordance with section
401(k)(8) of the Code and Treasury Regulations promulgated
thereunder no later than the end of the Plan Year after
the Plan Year in which such amount was contributed to the
Plan (and if possible, no later than March 15 of the Plan
Year after the Plan Year in which such amount was
contributed). Before Tax Contributions which are
considered as an After Tax Contribution under this Section
3.11 will continue to be regarded as Before Tax
Contributions for purposes of Section 9 of the Plan
regarding withdrawals.

Amounts refunded as Excess Contributions and Company
contributions forfeited pursuant to this Section 3.11
shall be adjusted for income or loss. The income or loss
allocable to an Excess Contribution is equal to the sum of
the following: (i) the income or loss allocable to the
Participant's Before Tax Contributions for the Plan Year
multiplied by a fraction, the numerator of which is such
Participant's Excess Contribution for the year, and the
denominator is equal to the sum of the Participant's
account balance attributable to Before Tax Contributions
as of the beginning of the Plan Year, plus the
Participant's Before Tax Contributions for the Plan Year,
and (ii) 10% of the amount determined under (i) above
multiplied by the number of whole calendar months between
the end of the Plan Year and the date of the distribution,
counting the month of distribution if distribution occurs
after the 15th of such month. The income or loss
allocable to forfeited Company contributions shall be

- 39 -

determined in a similar manner, substituting the term
"Company contributions" wherever "Before Tax
Contributions" appears.

3.12    No contributions may be made by a Participant who

(1)    is not receiving Compensation,

(2)    is no longer an Eligible Employee, or

(3)    is an Inactive Participant.

3.13    A Participant or Inactive Participant (and, effective
July 19, 1993, an Employee who would be an Eligible Employee
except that he has not yet completed the eligibility
requirements of Section 2.01) may at any time file with the
Administrative Committee a request to permit him to make a
Rollover Contribution (as defined below).

The Administrative Committee shall have the sole discretion
(which shall be exercised in a non-discriminatory manner) as
to whether to permit such a Rollover Contribution, and may,
as a condition of its approval, require the Participant or
Inactive Participant or other individual to furnish such
evidence as the Administrative Committee deems appropriate
that the amount to be paid qualifies as a Rollover
Contribution under the law. A Rollover Contribution means a
contribution to the Plan of an amount constituting a
"rollover amount" or "rollover contribution" under sections
402(a)(5), 408(d)(3), or 403(a)(4) of the Code.
Notwithstanding the foregoing, a Participant may not include
in a Rollover Contribution any "qualified voluntary employee
contribution" as defined in section 219(e)(2) of the Code as

- 40 -

in effect on December 31, 1986.  Effective January 1, 2002,
subject to sections 401(a)(31) and 402 of the Code, a
Rollover Contribution shall include (A) a direct rollover
from (1) a qualified plan described in section 401(a) or
403(a) of the Code, including after-tax contributions; (2)
an annuity contract described in section 403(b) of the Code,
excluding after-tax contributions; (3) an eligible plan
under section 457(b) of the Code which is maintained by a
state, political subdivision of a state, or any agency or
instrumentality of a state or political subdivision of a
state; (B) a Rollover Contribution (other than a direct
rollover) shall include a Participant contribution of an
eligible rollover distribution from (1) a qualified plan
described in section 401(a) or 403(a) of the Code; (2) an
annuity contract described in section 403(b) of the Code;
(3) an eligible plan under section 457(b) of the Code which
is maintained by a state, political subdivision of a state,
or any agency or instrumentality of a state or political
subdivision of a state; and (C) the Plan shall accept a
participant rollover contribution from an individual
retirement account described in section 408(a) or 408(b) of
the Code that is eligible to be rolled over and would
otherwise be includible in gross income.  The Plan shall
separately account for any portion of a Rollover
Contribution consisting of after-tax contributions.

Effective January 1, 2002, subject to the provisions of
section 402(c)(9) of the Code, if a distribution
attributable to an Eligible Employee is paid to the spouse
of such employee after his death, this Section 3.13 shall
apply to such distribution in the same manner as if the

- 41 -

spouse were the employee.

A Participant's Rollover Contribution shall be 100% vested
and nonforfeitable at all times. A Rollover Contribution
shall be credited to a Participant's Account and shall be
invested in such Investment Fund and/or, for periods after
June 30, 1989, in the ESOP, as the Participant may
designate.

3.14 In the event that an Employee who was a "participant" in
the W. R. Grace & Co. Retirement Plan for Salaried
Employees elected to transfer to the Plan the amount of his
"accumulated contributions" and "interest" thereunder
pursuant to section 5.11 of such plan (or section 5.08 of
the W. R. Grace & Co. Retirement Plan for Clerical Hourly
Employees of Lake Charles Plant), the amount of his
"accumulated contributions" is considered as Supplemental
Contributions to his Account as of the "valuation date"
coincident with or next following the date of such transfer
(except for purposes of Sections 4.06 and 4.07 of the Plan)
and the amount of his "interest" is considered as earnings
on Supplemental Contributions in his Account as of such
"valuation date," and both amounts are 100% vested and
nonforfeitable at all times, are invested in such
Investment Fund(s) within the Savings Plan as the Employee
designated, and are subject to the provisions of the Plan
relating to Supplemental Contributions, and earnings
thereon, respectively.

- 42 -

## Section 4

### Company Contributions

4.01    Subject to the other provisions of Section 4, for each
month during which the Plan is in effect, the Company
shall contribute to the Trust Fund an amount which when
added to forfeitures, if any, will be equal to 100% (and
for periods prior to January 1, 2001, 75%; and for periods
prior to October 1, 2000, 50%) of the lesser of (A) the
aggregate amount of each Participant's After Tax
Contributions and Before Tax Contributions, or (B) 6% of
such Participant's Compensation, for the corresponding
month.    No contributions will be made with respect to
Participants' other contributions or his Compensation in
excess of such 6%.    The amount of Before-Tax Contributions
and Company contributions pursuant to this Section 4.01
shall not exceed the maximum amount deductible under
section 404 of the Code.

For periods after January 1, 2001, all Company
contributions shall be made to the Savings Plan portion of
the Trust Fund.    With respect to Company contributions
made to a Participant's Account after that date, Company
contributions shall be allocated to Investment Funds in
accordance with the Participant's investment election with
regard to the Participant's Before Tax contributions, or
if no such elections is effective, in accordance with the
investment election with regard to the Participant's After
Tax contributions.

- 43 -

For periods after June 30, 1989, but before January 1,
2001, all Company contributions shall be made to the ESOP
portion of the Trust Fund, subject to the provisions of
Section 4.12. Such contributions may be made in cash or
in Grace Stock; provided, however, that Company
contributions shall be made in Grace Stock, to the extent
that the Company incurs an "immediate allocation loan" or
loans described in section 133(b)(1)(B) of the Code to
finance its contributions to the ESOP, in which event, the
Grace Stock acquired with the proceeds of such loan or
loans shall be transferred to the ESOP within 30 days of
the date on which interest begins to accrue on such loans.
The Trustee may apply cash contributions made by the
Company towards the purchase of Grace Stock from the
Company or any other source for the account of the ESOP;
provided, however, that in no event shall a commission be
charged with respect to a purchase of Grace Stock from the
Company for the account of the ESOP. In the event that
the Company shall make a contribution of Grace Stock that
is treasury stock or authorized but unissued stock to the
ESOP portion of the Trust Fund or the Trustee shall
purchase Grace Stock from the Company for the account of
the ESOP and Grace Stock is then traded on a national
securities exchange, the value of such shares shall be the
average of the closing prices of Grace Stock, as reported
on the New York Stock Exchange composite tape, for the 20
consecutive trading days immediately preceding the date of
the contribution or purchase. Grace Stock contributed to
or purchased by the Plan under this Section 4.01 shall be
valued in good faith by an independent appraiser selected
by the Trustee as of the date of the contribution or

- 44 -

purchased in the event that shares of Grace Stock are not
then traded on a national securities exchange.

4.02    The Company also shall contribute during each Plan Year
        such amounts as are reinstated pursuant to Section 11.03.

4.03    In addition to the contributions to be made pursuant to
        Sections 4.01 and 4.02, the Company shall pay all expenses
        reasonably incurred in administering the Plan, to the
        extent such expenses are not paid by the Trust Fund.

4.04    All contributions made to the Plan by the Company shall be
        irrevocable, except that contributions made by a mistake
        of fact or that are not deductible under section 404 of
        the Code shall be returned to the Company, without
        interest, within one year after the payment of the
        contribution, or the disallowance of the deduction (to the
        extent disallowed), whichever is applicable.
        Contributions shall be held in the Trust Fund to be used
        in accordance with the provisions of the Plan in providing
        the benefits and defraying the reasonable expenses of Plan
        administration, and neither such contributions nor any
        income therefrom shall be used for or diverted to purposes
        other than for the exclusive benefit of Participants,
        Inactive Participants, and former Participants and their
        beneficiaries under the Plan except as provided above, and
        except that any forfeitures arising under Section 7.02 on
        account of a Termination of Service that occurred prior to
        January 1, 1989 were used or shall be used to reduce
        Company contributions otherwise payable, in accordance
        with Sections 4.01 and 4.02.

- 45 -

4.05    Annual Additions (as defined below) to the Account of a
        Participant or Inactive Participant for a Plan Year shall
        not exceed the lesser of:

    (1)     $30,000 (or, for Plan Years beginning prior to
            January 1, 1995, 25% of the dollar limitation
            applicable to defined benefit plans under section
            415(b)(1)(A) of the Code, if greater), each as
            automatically adjusted to reflect increases in the
            cost of living as prescribed by the Secretary of
            the Treasury, or effective for Plan Years beginning
            on or after January 1, 2002, $40,000, as adjusted
            for increases in the cost of living under Section
            415(d) of the Code; or

    (2)     25% of the total section 415 "compensation" (as
            defined below) of such Participant or Inactive
            Participant from the Company and effective for Plan
            Years beginning on or after January 1, 2002, 100%
            of the section 415 "compensation" of the
            Participant or Inactive Participant of the Company.

        Annual Additions (with respect to a Plan Year beginning
        on or after January 1, 1987) means the sum of (i) Company
        contributions (including forfeitures under Section 7.02
        in lieu thereof) pursuant to Section 4.01, (ii) Before
        Tax Contributions, (except, for limitation years
        beginning after December 31, 2001, to the extent
        permitted under Section 3.01 of the Plan relating to
        catch up contributions and Section 414(v) of the Code)

- 46 -

(iii) After Tax Contributions, and (iv) amounts described
in sections 415(1)(1) and 419A(d)(2) of the Code.
Effective for Plan Years beginning on or after January 1,
2002, the limit in section 4.05(2) of the Plan shall not
apply to any contribution for medical benefits after
separation from service (within the meaning of section
401(h) or section 419A(f)(2) of the Code) which is
otherwise treated as an annual addition.

For purposes hereof, compensation means a participant's
wages and salaries for personal services actually rendered
in the course of employment with the Company to the extent
that the amounts are includable in gross income
(including, but not limited, to commissions paid salesmen,
compensation for services on the basis of a percentage of
profits, incentive compensation, tips and bonuses (but
excluding long-term incentive bonuses)).In addition,
effective for Plan Years beginning on or after January 1,
1998, compensation shall include any amount contributed by
the Company pursuant to a salary reduction agreement and
which is not includible in gross income under sections
125, 402(g)(3), 402(h), or 403(b), or effective January 1,
2001, section 132(f), and effective January 1, 2002,
414(v).  Other amounts not included in compensation for
purposes of this Section include:

(a)     Employer contributions to a plan of deferred
        compensation (except as otherwise provided above)
        which are not includable in the employee's gross
        income for the taxable year in which contributed,
        or employer contributions under a simplified

- 47 -

employee pension to the extent such contributions
are deductible by the employee, or any
distributions from a plan of deferred compensation;

(b)    Amounts realized from the exercise of a non-
qualified stock option, or when restricted stock
(or property) held by the employee either becomes
freely transferable or is no longer subject to a
substantial risk of forfeiture;

(c)    Amounts realized from the sale, exchange or other
disposition of stock acquired under a qualified
stock option; and

(d)    other amounts which received special tax benefits,
or contributions made by the employer (whether or
not under a salary reduction agreement) towards the
purchase of an annuity contract described in
section 403(b) of the Internal Revenue code
(whether or not the contributions are actually
excludable from the gross income of the employee).

4.06    If the Annual Additions limitation set forth in Section
4.05 would be exceeded with respect to a Participant, such
Participant's After Tax Contributions, if any, with
respect to such Plan Year shall be reduced and refunded
and deemed not to have been made, to the extent necessary
to satisfy the limitations of Section 4.05.

If such limitation would then still be exceeded, such
Participant's Before Tax Contributions, if any, with

GR 001708

- 48 -

respect to such Plan Year shall be reduced and refunded
and deemed not to have been made, to the extent necessary
to satisfy the limitations of Section 4.05.

If such limitation would then still be exceeded, the
Company contribution allocated to such Participant
pursuant to Section 4.01 for such Plan Year shall be
reduced so that it does not exceed the maximum allocation
permitted by Section 4.05.  Such excess amount in a
Participant's Account shall be used to reduce Company
contributions for the next limitation year (and succeeding
limitation years, as necessary) for such Participant if he
is a Participant as of the end of such limitation year,
but if he is not, such excess amount shall be held
unallocated in an Annual Additions suspense account for
such limitation year and reallocated in the next
limitation year to the remaining Participants in
accordance with the regular allocation provisions of the
Plan and shall reduce Company contributions for such
limitation year.

The resolution of the Board of Directors (or, prior to
May 25, 1988, the board of directors of Grace Connecticut)
adopting this Plan as amended shall be deemed to be a
resolution adopting the Plan Year as the "limitation year"
(as defined in Internal Revenue Service Regulation section
1.415-2) for purposes of the Plan.

4.07    In the event that any Participant or Inactive Participant
        is also covered under another qualified defined
        contribution plan sponsored by the Company or an

GR 001709

- 49 -

affiliated corporation or other trade or business
(defined, for this purpose only, in accordance with
section 415(h) of the Code), the foregoing limitations
shall be applied to each plan separately and on an
aggregate basis.

4.08    This Section 4.08 shall only be effective for Plan Years
commencing before December 31, 1999, and shall have no
effect for Plan Years beginning after that date.   In the
event any Participant or Inactive Participant is also
covered by the W. R. Grace & Co. Retirement Plan for
Salaried Employees, the limitations set forth in section
415(e) of the Code shall be applied in accordance with the
provisions of such plan.   In the event any Participant or
Inactive Participant is also covered under a qualified
defined benefit retirement plan (other than the W. R.
Grace & Co. Retirement Plan for Salaried Employees)
sponsored by the Company (which shall also include an
affiliated corporation or other trade or business as
defined in accordance with section 415(h) of the Code),
then the sum of (a) and (b) below shall not exceed 100%:

    (a)    The percentage attributable to all qualified
defined benefit retirement plans sponsored by the
Company determined by dividing (i) the Company
provided portion of the projected annual benefit of
the Participant or Inactive Participant under all
such defined benefit retirement plans (whether or
not terminated), determined as of the close of the
Plan Year, by (ii) the lesser of (A) the product of
1.25, multiplied by the dollar limitation in effect

- 50 -

under section 415(b)(1)(A) of the Code for such
Plan Year, or (B) the product of 1.4, multiplied by
the amount which may be taken into account under
section 415(b)(1)(B) of the Code with respect to
such Participant or Inactive Participant for such
Plan Year.

(b)     The percentage determined by dividing (i) the sum
        of the Annual Additions (as currently and
        previously defined in Section 4.05) under all
        defined contribution plans (whether or not
        terminated) sponsored by the Company as of the
        close of the Plan Year, by (ii) the sum, (a) for
        such Plan Year and for each prior Plan Year of
        service with the Company ending after December 31,
        1982, of the lesser of (A) the product of 1.25,
        multiplied by the dollar limitation in effect under
        section 415(c)(1)(A) of the Code for such Plan Year
        (determined without regard to section 415(c)(6) of
        the Code) or (B) the product of 1.4, multiplied by
        the amount which may be taken into account under
        section 415(c)(1)(B) of the Code with respect to
        such Participant for such Plan Year, and (b) for
        prior Plan Years of service with the Company ending
        on or before December 31, 1982, the maximum amount
        of Annual Additions which could have been made to
        the Account of such Participant or Inactive
        Participant under section 415(c) of the Code (as in
        effect as of December 31, 1982) for the Plan Year
        ended December 31, 1982, multiplied by a
        "transition fraction" whose numerator is the lesser

- 51 -

of (I) $51,875 or (II) 1.4 multiplied by 25% of the
total section 415 "compensation" (as defined in
Section 4.05) of such Participant or Inactive
Participant for the Plan Year ended December 31,
1981, and whose denominator is the lesser of (I)
$41,500 or (II) 25% of the total section 415
"compensation" (as defined in Section 4.05) of such
Participant or Inactive Participant for the Plan
Year ended December 31, 1981.

In the event that the 100% limit specified herein is
exceeded for any Participant or Inactive Participant, the
Company contributions pursuant to Section 4.01 (including
forfeitures in lieu thereof), Before Tax Contributions,
and After Tax Contributions shall be reduced to comply
with such limits in the order and manner specified in
Section 4.06.

Notwithstanding the provisions of this Section 4.08, in
the event that the sum of a Participant's percentages
under (a) and (b) above exceeds 100% as of December 31,
1982, and as of December 31, 1986, an amount shall be
subtracted from the numerator of the fraction under (b)
above (not exceeding such numerator) in accordance with
Internal Revenue Service regulations so that such sum does
not exceed 100% with respect to Plan Years beginning on
and after January 1, 1983 and January 1, 1987,
respectively.

4.09   During the period prior to the beginning of each Plan
       Year, or from time to time thereafter, or both, the

GR 001712

- 52 -

Company shall make estimated calculations, as set forth
below, with respect to such Plan Year required by section
401(m) of the Code, and after the end of such Plan Year,
shall make exact calculations, as set forth below:

(a)     Each Eligible Employee shall be classified as
        provided in Section 3.08(a).

(b)     The calculations under this Section 4.09 shall take
        into account the "401(m) contributions" for such
        Eligible Employee.  For purposes of this Section
        4.09, "401(m) contributions" shall mean (i) for the
        ESOP, (A) for each Plan Year commencing after
        December 31, 1988 and prior to January 1, 2001, the
        amount of Company contributions made under Section
        4.01, and (B) for each Plan Year commencing after
        December 31, 2000, zero; and (ii) for the Savings
        Plan, (A) for each Plan Year commencing after
        December 31, 1988 and prior to January 1, 2001, the
        amount of the Eligible Employee's After Tax
        Contributions, and (B) for each Plan Year
        commencing after December 31, 2000, the sum of the
        amount of the Eligible Employee's After Tax
        Contributions and the amount of Company
        contributions made under Section 4.01

(c)     For each Plan Year commencing after December 31,
        1988 and prior to January 1, 2001, a separate
        contribution percentage shall be calculated under
        the ESOP and the Savings Plan for each Eligible
        Employee.  For each Plan Year commencing after

- 53 -

December 31, 2000, a contribution percentage shall
not be calculated for the ESOP. With respect to
each Eligible Employee, who is classified as an
other employee, for each Plan Year for which a
separate contribution percentage is calculated for
the ESOP: the ESOP contribution percentage shall
be equal to (i) for Plan Years commencing prior to
January 1, 1997, the amount of the 401(m)
contributions with respect to the Eligible Employee
for the Plan Year of reference (zero in the case of
an Eligible Employee for whom no such contributions
are being made) divided by his Compensation for the
Plan Year of reference, and (ii) for Plan Years
commencing on or after January 1, 1997, the amount
of the 401(m) contributions with respect to the
Eligible Employee for the Plan Year preceding the
Plan Year of reference (zero in the case of an
Eligible Employee for whom no such contributions
are being made) divided by his Compensation for the
Plan Year preceding the Plan Year of reference.
With respect to each Eligible Employee, who is
classified as a highly compensated employee, for
each Plan Year for which a separate contribution
percentage is calculated for the ESOP: the ESOP
contribution percentage shall be equal to the
amount of the 401(m) contributions with respect to
the Eligible Employee for the Plan Year of
reference (zero in the case of an Eligible Employee
for whom no such contributions are being made)
divided by his Compensation for the Plan Year of
reference. With respect to each Eligible Employee,

- 54 -

who is classified as an other employee:   the
Savings Plan contribution percentage shall be equal
to (i) for Plan Years commencing prior to January
1, 1997, the amount of the 401(m) contributions
with respect to the Eligible Employee for the Plan
Year of reference (zero in the case of an Eligible
Employee for whom no such contributions are being
made) divided by his Compensation for the Plan Year
of reference, and (ii) for Plan Years commencing on
or after January 1, 1997, the amount of the
Eligible Employee's 401(m) contributions (zero in
the case of an Eligible Employee who is not making
After Tax Contributions) for the Plan Year
preceding the Plan Year of reference divided by his
Compensation for the Plan Year preceding the Plan
Year of reference.   With respect to each Eligible
Employee, who is classified as a highly compensated
employee:   the Savings Plan contribution percentage
shall be equal to the amount of the Eligible
Employee's 401(m) contributions (zero in the case
of an Eligible Employee who is not making After Tax
Contributions) for the Plan Year of reference
divided by his Compensation for the Plan Year of
reference.

- 55 -

(d)     For each Plan Year commencing after December 31,
        1988, a separate contribution percentage shall be
        calculated under the ESOP and the Savings Plan for
        the Eligible Employees who are classified as highly
        compensated employees which shall be equal to the
        average of the contribution percentages, as
        determined in (c) above, for all such Eligible
        Employees under the ESOP for the Plan Year of
        reference and the average of the contribution
        percentages, as determined in (c) above, for all
        such Eligible Employees under the Savings Plan for
        the Plan Year of reference.  A contribution
        percentage shall not be calculated under the ESOP
        for a Plan Year beginning on or after January 1,
        2001.

(e)     For each Plan Year commencing after December 31,
        1988, a separate contribution percentage shall be
        calculated under the ESOP and the Savings Plan for
        the Eligible Employees who are classified as other
        employees which shall be equal to the average of
        the contribution percentages, as determined in (c)
        above for such Plan Year, for all such Eligible
        Employees under the ESOP for the Plan Year and the
        average of the contribution percentages, as
        determined in (c) above for such Plan Year, for all
        such Eligible Employees under the Savings Plan for
        the Plan Year.  A contribution percentage shall not
        be calculated under the ESOP for a Plan Year
        beginning on or after January 1, 2001.

- 56 -

For purposes of this Section 4.09 and Section 4.10, if an Eligible Employee who is classified as a highly compensated employee participates in more than one plan providing matching contributions or after tax contributions maintained by the Company or an entity under common control with the Company (under section 414(b) or (c) of the Code), the contributions made under all such plans shall be aggregated; provided, however, that in no event shall Company contributions made to the ESOP portion of the Trust Fund after June 30, 1989 with respect to any such highly compensated employee be aggregated with any other matching contributions or after-tax contributions made to such other plan unless such other plan is an employee stock ownership plan (as defined in section 4975(e)(7) of the Code).

With respect to Plan Years commencing after December 31, 1986 and ending prior to January 1, 1989, the requirements of section 401(m) of the Code only applied to the Savings Plan. The contribution percentage of each Eligible Employee during such period was equal to his After Tax Contributions and Company contributions under Section 4.01 made with respect to him (zero in the case of an Eligible Employee for whom no such contributions were being made) divided by his Compensation for the Plan Year.

In the event this Plan is aggregated with another plan or plans for purposes of Sections 401(a)(4) and 410(b) of the Code (other than the Average Benefits Test of Section 410(b)(2)(A)(ii) of the Code), all Before Tax Contributions made under such plans shall be treated as

GR 001717

- 57 -

made under a single plan for purposes of the actual deferral percentage test of Section 401(k)(3) of the Code and all After Tax Contributions and Company contributions (as set forth in Section 4.01) made under such plans shall be treated as made under a single plan for purposes of the actual contribution percentage test of Section 401(m)(2) of the Code. In the event this Plan is permissively aggregated with another plan or plans for purposes of Section 401(k) or 401(m) of the Code, such aggregated plans must also satisfy Sections 401(a)(4) and 410(b) of the Code as if such aggregated plans were a single plan. Notwithstanding the foregoing, the ESOP and Non-ESOP portions of the Plan may not be aggregated.

Notwithstanding the foregoing, effective for Plan Years beginning on or after January 1, 2001, for purposes of this Section 4.09, the contribution percentage for Eligible Employees who are classified as other employees shall be the Plan Year of reference.

4.10   For each Plan Year, the contribution percentage of the Eligible Employees who are classified as highly compensated employees (determined under Section 4.09(c), which considers contributions and Compensation for the Plan Year of reference) shall not exceed the greater of (A) or (B) below (and any necessary adjustments shall be made as set forth in Section 4.11):

    (A)    The contribution percentage for the prior Plan Year of the Eligible Employees who are classified as

- 58 -

other employees (determined under Section 4.09(d)),
multiplied by 1.25, or

(B)    The lesser of:

( i) the contribution percentage for the prior Plan
Year of the Eligible Employees who are
classified as other employees (determined
under Section 4.09(d)), multiplied by 2, or

(ii) the contribution percentage for the prior Plan
Year of the Eligible Employees who are
classified as other employees (determined
under Section 4.09(d)), plus 2%.

Notwithstanding the foregoing, effective for Plan Years
beginning on or after January 1, 2001, for purposes of
this Section 4.10, the contribution percentage for
Eligible Employees who are classified as other employees
shall be the Plan Year of reference.

4.11    In the event that the contribution percentage under the
Savings Plan of the Eligible Employees who are classified
as highly compensated employees for the  Plan Year exceeds
the maximum percentage permitted under Section 4.10 (less
such additional percentage as may be determined by the
Administrative Committee) based on estimated or exact
calculations, a leveling method shall be applied under
which the requested or actual 401(m) contributions for the
Plan Year of the Eligible Employee(s) who are classified

GR 001719

as highly compensated employees and who have the greatest
dollar amount of 401(m) contributions for the Plan Year
shall be reduced, in total, by the amount of the Excess
401(m) Contributions.  For purposes of this Section 4.11,
"Excess 401(m) Contributions" shall mean, with respect to
any Plan Year, the excess of (a) the aggregate amount of
401(m) contributions actually taken into account in
computing the numerator of the contribution percentage of
highly compensated employees for the Savings Plan for such
year, over (b) the maximum amount of such contributions
permitted by the contribution percentage test of Section
4.10 for the Savings Plan (determined by hypothetically
reducing 401(m) contributions made on behalf of highly
compensated employees in order of their contribution
percentages, beginning with the highest of such
percentages, and continuing this process until the
contribution percentage test is satisfied).  For purposes
of reducing the 401(m) contributions of any highly
compensated employee, the amount of Excess 401(m)
Contributions will be allocated first to the 401(m)
contributions of the highly compensated employee with the
highest actual dollar amount of 401(m) contributions, to
equal the dollar amount of the 401(m) contributions of the
highly compensated employee with the next highest dollar
amount; however, a lesser reduction will be applied if
such lesser reduction results in an allocation of the
total Excess 401(m) Contributions.  This process will
continue in descending order until all the Excess 401(m)
Contributions with respect to the Savings Plan have been
allocated.

- 60 -

In the event that the contribution percentage under the
ESOP of the Eligible Employees who are classified as
highly compensated employees for the Plan Year exceeds the
maximum percentage permitted under Section 4.10 (less such
additional percentage as may be determined by the
Administrative Committee) based on estimated or exact
calculations, a leveling method will be applied under
which the requested or actual 401(m) contributions for the
Plan Year of the Eligible Employee(s) who are classified
as highly compensated employees and who have the greatest
dollar amount of 401(m) contributions for the Plan Year
shall be reduced by the amount of the Excess ESOP 401(m)
Contributions.  For purposes of this Section 4.11, "Excess
ESOP 401(m) Contributions" shall mean, with respect to any
Plan Year, the excess of (a) the aggregate amount of
401(m) contributions actually taken into account in
computing the numerator of the contribution percentage of
highly compensated employees for the ESOP for such Plan
Year, over (b) the maximum amount of such contributions
permitted by the contribution percentage test of Section
4.10 for the ESOP (determined by hypothetically reducing
401(m) contributions made on behalf of highly compensated
employees in order of their contribution percentages,
beginning with the highest of such percentages, and
continuing this process until the contribution percentage
test is satisfied).  For purposes of reducing the 401(m)
contributions of any highly compensated employee, the
amount of Excess ESOP 401(m) Contributions will be
allocated first to the 401(m) contributions of the highly
compensated employee with the highest actual dollar amount
of 401(m) contributions, to equal the dollar amount of the

- 61 -

401(m) contributions of the highly compensated employee
with the next highest dollar amount; however, a lesser
reduction will be applied if such lesser reduction results
in an allocation of the total Excess ESOP 401(m)
Contributions.  This process will continue in descending
order until all the Excess ESOP 401(m) Contributions with
respect to the ESOP have been allocated.

The provisions of this Section 4.11 shall be applied in
such a manner as to require a reduction of unmatched After
Tax Contributions prior to a reduction of matched After
Tax Contributions and Company contributions. Additionally,
Company contributions shall be reduced or distributed
prior to After Tax Contributions which are eligible for
matching under Section 4.01.

Notwithstanding the foregoing, in no event shall the
Company fail to make any matching contribution to the Plan
required under Section 4.01.

4.12    Any amount by which a Participant's requested or actual
        After Tax Contribution or projected or actual Company
        contribution is reduced for a Plan Year shall not be
        contributed to the Plan, or if contributed, shall be
        refunded to him as an Excess Aggregate Contribution with
        any earnings allocable thereto no later than the end of
        the Plan Year after the Plan Year in which such amount was
        contributed to the Plan (and if possible, no later than
        March 15 of the Plan Year after the Plan Year in which
        such amount was contributed.  Amounts required to be
        refunded under this Section 4.12 shall be refunded in

- 62 -

accordance with the provisions of section 401(m)(6) of the
Code and Treasury Regulations promulgated thereunder.

Notwithstanding anything herein to the contrary, effective
July 1, 1989 and for Plan Years beginning prior to January
1, 2001, projected Company contributions which would
otherwise be made to the ESOP portion of the Trust Fund
but which are required to be reduced in accordance with
Section 4.11 shall, to the extent possible, be contributed
to the Savings Plan portion of the Trust Fund.  In such
event, the calculation of the Savings Plan contribution
percentage of each Eligible Employee who is classified as
a highly compensated employee under Section 4.10(c) and
who is affected by such reduction shall be modified so as
to equal the sum of his After Tax Contributions and that
portion of Company contributions under Section 4.01 made
with respect to him which cannot be contributed to the
ESOP as a result of the limitations imposed under Section
4.10 (zero in the case of an Eligible Employee for whom no
such contributions are being made) divided by his
Compensation for the Plan Year.  In addition, the
provisions of Section 4.11 shall be applied to such
modified Savings Plan contribution percentage in such a
manner as to require a reduction of unmatched After Tax
Contributions prior to a reduction of matched After Tax
Contributions and Company contributions.

Amounts refunded as Excess Aggregate Contributions
pursuant to this Section 4.12 shall be adjusted for income
or loss.  Subject to Sections 4.09(c) and (d) of the Plan,
the income or loss allocable to Excess Aggregate

- 63 -

Contributions is equal to the sum of the following:   (i)
the income or loss allocable to 401(m) contributions under
the Savings Plan and 401(m) contributions under the ESOP,
as applicable, for the Plan Year multiplied by a fraction,
the numerator of which is such Participant's Excess
Aggregate Contributions for the Plan Year, and the
denominator is equal to the sum of the Participant's
account balance attributable to 401(m)contributions under
the Savings Plan and 401(m) contributions under the ESOP,
as applicable, as of the beginning of the Plan Year plus
the Participant's After Tax Contributions under the
Savings Plan and 401(m) contributions under the ESOP, as
applicable, for the Plan Year, and (ii) 10% of the amount
determined under (i) above multiplied by the number of
whole calendar months between the end of the Plan Year and
the date of distribution, counting the month of
distribution if distribution occurs after the 15th of such
month.

4.13   The following provisions of the Plan shall be applied in
the following order:

> (i)    Section 3.02,3.03 and 4.01 of the Plan;
> (ii)   Sections 4.06, 4.07 and 4.08 of the Plan;
> (iii)  Sections 3.10 and 3.11 of the Plan;
> (iv)   Sections 4.11 and 4.12 of the Plan.

4.14   For each Plan Year commencing after December 31, 1988 and
prior to January 1, 2002, and subject to the sunset
provisions of Section 901(a) of the Economic Growth and
Tax Relief Reconciliation Act of 2001, except as the

- 64 -

effect of such sunset provisions may be modified by
subsequent law, during which (i) the actual deferral
percentage of the Eligible Employees who are classified as
highly compensated employees (determined under Section
3.08(c)) exceeds 1.25 multiplied by the actual deferral
percentage of the Eligible Employees who are classified as
other employees (determined under Section 3.08(d)), and
(ii) the contribution percentage of the Eligible Employees
who are classified as highly compensated employees
(determined under Section 4.09(c)) exceeds 1.25 multiplied
by the contribution percentage of the Eligible Employees
who are classified as other employees (determined under
Section 4.09(d)), the sum of the actual deferral
percentage and the contribution percentage of the Eligible
Employees who are classified as highly compensated
employees (determined under Section 3.08(c) and Section
4.09(c), respectively) shall not exceed the sum of (A) and
(B) below (after any necessary adjustments have been made
as set forth in Sections 3.10 and 3.11 and Sections 4.11
and 4.12, respectively):

(A)    1.25, multiplied by the greater of:

    (i) the actual deferral percentage of the Eligible
       Employees who are classified as other
       employees (determined under Section 3.08(d)),
       or

    (ii) the contribution percentage of the Eligible
       Employees who are classified as other

GR 001725

- 65 -

employees (determined under Section 4.09(d)),
plus

(B)    The lesser of:

(i) 2%, plus the lesser of (a) the actual deferral
percentage of the Eligible Employees who are
classified as other employees (determined
under Section 3.08(d)), or (b) the
contribution percentage of the Eligible
Employees who are classified as other
employees (determined under Section 4.09(d)),
or

(ii) 2, multiplied by the lesser of (a) the actual
deferral percentage of the Eligible Employees
who are classified as other employees
(determined under Section 3.08(d)) or (b) the
contribution percentage of the Eligible
Employees who are classified as other
employees (determined under Section 4.09(d)).

The provisions of this Section 4.14 shall be applied
separately to (i) the sum of the actual deferral
percentage under the Savings Plan and the contribution
percentage under the ESOP of the Eligible Employees who
are classified as highly compensated employees and (ii)
the sum of the actual deferral percentage and the
contribution percentage under the Savings Plan of such
highly compensated employees.

4.15    In the event that the sum of the actual deferral
        percentage under the Savings Plan and the contribution
        percentage under the ESOP of the Eligible Employees who
        are classified as highly compensated employees for any
        Plan Year commencing after December 31, 1988 exceeds the
        maximum aggregate percentage permitted under Section 4.14,
        based on estimated or exact calculations, then the
        following provisions of the Plan will be applied in the
        following order to the extent necessary to satisfy the
        requirements of that section:

                (i)  Sections 3.10 and 3.11;
                (ii) Sections 4.11 and 4.12.

        In the event that the sum of the actual deferral
        percentage and the contribution percentage under the
        Savings Plan of the Eligible Employees who are classified
        as highly compensated employees for any Plan Year
        commencing after December 31, 1988 exceeds the maximum
        aggregate percentage permitted under Section 4.14 based on
        estimated or exact calculations, then the following
        provisions of the Plan will be applied in the following
        order to the extent necessary to satisfy the requirements
        of that section:

                (i)   Sections 4.11 and 4.12, as they relate to
                      After-Tax Contributions;
                (ii)  Sections 3.10 and 3.11 (except to the extent
                      that Before Tax Contributions are considered
                      as an After Tax Contribution under Section
                      3.11 and are thus included in (i) above;

GR 001727

- 67 -

(iii)  Sections 4.11 and 4.12, as they relate to
       Company contributions.

GR 001728

- 68 -

## Section 5

Investment Provisions

5.01    The Trustee has established the following Investment Funds
        for investment of contributions under the Savings Plan, in
        accordance with the directions of the Investment
        Committee:

        Fixed Income Fund, which is invested in fixed income
        securities or obligations, interest bearing bank accounts,
        or in guaranteed income funds established or maintained by
        insurance companies.

        Fidelity Blue Chip Growth Fund, which is a mutual fund
        managed by Fidelity Management & Research Company
        ("FMRC").

        Grace Common Stock Fund, which is invested only in Grace
        Stock or, pending investment in such stock, in investments
        of a short-term nature, subject to Section 5.11.

        Fidelity Balanced Fund, which is a mutual fund managed by
        FMRC;

        Fidelity Growth and Income Portfolio, which is a mutual
        fund managed by FMRC;

        Fidelity Contrafund, which is a mutual fund managed by
        FMRC;

- 69 -

Fidelity OTC Portfolio, which is a mutual fund managed by FMRC;

Fidelity Investment Grade Bond Fund which is a mutual fund managed by FMRC;

Fidelity US Bond Index Fund which is a mutual fund managed by FMRC;

PIMCO Total Return Fund, which is a mutual fund managed by Pacific Investment Management Company;

INVESCO Equity Income Fund, which is a mutual fund managed by INVESCO Funds Group, Inc.;

Spartan US Equity Index Fund which is a mutual fund managed by FMRC;

Franklin Small Cap Growth Fund-A, which is a mutual fund managed by Franklin Advisors, Inc.;

JP Morgan Institutional US Small Company Fund, which is a mutual fund managed by JP Morgan;

American Century International Growth Fund, which is a mutual fund managed by American Century Investment Management, Inc.;

Spartan International Index Fund which is a mutual fund managed by FMRC;

- 70 -

Templeton Foreign Fund A, which is a mutual fund managed
by Templeton Global Advisors Limited;

Fidelity Freedom Income Fund which is a mutual fund
managed by FMRC;

Fidelity Freedom 2000 Fund which is a mutual fund managed
by FMRC;

Fidelity Freedom 2010 Fund which is a mutual fund managed
by FMRC;

Fidelity Freedom 2020 Fund which is a mutual fund managed
by FMRC;

Fidelity Freedom 2030 Fund which is a mutual fund managed
by FMRC;

Fidelity Low-Priced Stock Fund which is a mutual fund
managed by FMRC;

Spartan Extended Market Index Fund which is a mutual fund
managed by FMRC;

Spartan Total Market Index Fund which is a mutual fund
managed by FMRC;

Fidelity Diversified International Fund which is a mutual
fund managed by FMRC;

- 71 -

Fidelity Europe Fund which is a mutual fund managed by
FMRC;

Fidelity Equity-Income Fund which is a mutual fund managed
by FMRC.

Any other Investment Fund properly authorized for
investment of contributions under the Saving Plan.

Effective July 1, 1989, Grace New York has established the
ESOP for the investment of (i) Company contributions made
to the Plan after June 30, 1989 and before January 1,
2001, (ii) the portion of each Participant's and Inactive
Participant's Savings Plan Account attributable to Company
contributions that is invested in the Former Fund C on
June 30, 1989 and transferred as of July 1, 1989 to the
ESOP portion of the Trust Fund, and (iii) the portion of
each Participant's and Inactive Participant's Savings Plan
Account attributable to Supplemental Contributions,
Before-Tax Contributions, After-Tax Contributions and
Rollover Contributions that was invested in the Former
Fund C on December 31, 1988 and any subsequent dates that
may from time to time be designated by the Investment
Committee and transferred to the ESOP portion of the Trust
Fund.   The Trustee shall invest the assets of the ESOP
portion of the Trust Fund primarily in of Grace Stock.
The Trustee may also invest the assets of the ESOP portion
of the Trust Fund in such other investments as the
Investment Committee deems appropriate or desirable or
such assets may be held temporarily in cash.   The
Investment Committee may direct the Trustee to invest and

GR 001732

- 72 -

hold up to 100% of the assets of the ESOP portion of the Trust Fund in Grace Stock.

5.02    After the Conversion Period, Before Tax Contributions, After Tax Contributions and Rollover Contributions shall each be invested in multiples of 5% in the Investment Funds and, in the case of Rollover Contributions only, in the ESOP portion of the Trust Fund, pursuant to the election of the Participant.  Such election shall continue until changed by the Participant.  Effective January 1, 2001, Company contributions shall be invested in multiples of 5% in the Investment Funds pursuant to the election of the Participant, which election shall continue until changed by the Participant.

5.03    After the Conversion Period, a Participant may change any election pursuant to Section 5.02 on any Business Day to another election permitted under Section 5.02 effective on the Business Day on which the Participant notifies the Recordkeeper of such change by telephonic instruction, if such notice is received by the Recordkeeper before the latest time of day agreed to by Grace and the Recordkeeper for same day processing; otherwise, such change will be effective on the immediately succeeding Business Day.

5.04    After the Conversion Period, a Participant, Inactive Participant, or a former Participant who has incurred a Termination of Service may, on any Business Day, elect to transfer all or a portion (in multiples of 5%, or in whole dollar amounts) of the existing balance of his Account in an Investment Fund among any of the other Investment Funds

- 73 -

attributable to the following categories of contributions
separately: (i) Before Tax Contributions, (ii) After Tax
Contributions, (iii) Supplemental Contributions, (iv)
Rollover Contributions, and effective January 1, 2001,
Company contributions.  Such transfer shall occur on the
Business Day on which the Participant, Inactive
Participant, or former Participant notifies the
Recordkeeper of such transfer election by telephonic
instruction, if such notice is received by the
Recordkeeper before the latest time of day agreed to by
Grace and the Recordkeeper for same day processing;
otherwise, such change will be effective on the
immediately succeeding Business Day.

5.05    Cash dividends and the cash proceeds of any other
        distributions received on Grace Stock held in the Grace
        Common Stock Fund within the Savings Plan shall be
        invested in Grace Stock.  For periods after June 30, 1989,
        cash dividends paid on Grace Stock that is credited to
        Participant and Inactive Participant ESOP Accounts shall
        be applied by the Trustee towards the purchase of
        additional shares of Grace Stock or held in cash reserves,
        unless the Board of Directors shall direct that such
        dividends be paid to Participants and Inactive
        Participants (i) by the Company or (ii) by the Plan within
        90 days after the end of the Plan Year in which the
        dividends are received on Grace Stock held within the ESOP
        portion of the Trust Fund.

5.06    Except to the extent that the provisions of Section
        12.04(b) are applicable to a tender offer, each

- 74 -

Participant and Inactive Participant may direct the
Trustee as to the manner in which Grace Stock credited to
his Account is to be voted.  Before each annual or special
meeting of its shareholders, Grace shall furnish to each
Participant and Inactive Participant who has a balance in
the Grace Common Stock Fund and/or, for periods after
June 30, 1989, an ESOP Account notice of the date and
purpose of such meeting, such notice to be given at the
time and in substantially the manner such notice is given
to Grace shareholders generally.  Grace shall request from
each such Participant and Inactive Participant
instructions as to the voting at that meeting of the Grace
Stock credited to the Participant's or Inactive
Participant's Account, which instructions shall be totaled
by or on behalf of Grace and forwarded to the Trustee.  If
the Participant or Inactive Participant furnishes such
instructions within the time specified in the notice, the
Trustee shall vote such Grace Stock in accordance with the
Participant's or Inactive Participant's instructions.  All
Grace Stock credited to Participant and Inactive
Participant Accounts as to which the Trustee does not
receive instructions as specified above shall be voted by
the Trustee in the manner, and in the proportion, as it
votes Grace Stock as to which it has received instructions
from Participants and Inactive Participants, as specified
above.  A Participant or Inactive Participant shall be
deemed to have given instructions for purposes of this
Section 5.06 if such Participant or Inactive Participant
signs, but does not otherwise mark, a form of proxy,
provided that the form of proxy specifies the manner in

GR 001735

- 75 -

which the Grace Stock covered by a signed but unmarked form of proxy shall be voted.

5.07 With respect to periods prior to October 1, 2000 (see Section 5.11 below), after the Conversion Period, a Participant or Inactive Participant who has attained age 50, may, one time during each Plan Year, elect to transfer to one or more of the Investment Funds within the Savings Plan all or a portion (in multiples of 5% or in whole dollar amounts) of his Account balance invested in the ESOP and Grace Common Stock Fund which is attributable to Company contributions pursuant to Section 4.01. Any such transfer will occur on the Business Day on which the Participant notifies the Recordkeeper of such transfer election by telephonic instruction, if such notice is received by the Recordkeeper before the latest time of day agreed to by Grace and the Recordkeeper for same day processing; otherwise, such change will be effective on the immediately succeeding Business Day. The foregoing provisions of this Section 5.07 shall also apply to a former Participant who has incurred a Termination of Service, regardless of attained age, except that any such former Participant may make investment transfer elections on any Business Day without regard to the once per year limitation set forth above.

5.08 Effective as of July 1, 1993 (i.e., the commencement of the Conversion Period), the Account balances credited to the Former Funds shall be transferred to the Investment Funds in accordance with the following:

- 76 -

(1)     Former Fund A transferred to Fixed Income Fund;

(2)     Former Fund B transferred to Fidelity Blue Chip
        Growth Fund;

(3)     Former Fund C transferred to Grace Common Stock
        Fund;

(4)     Former Fund D transferred to Fidelity Balanced
        Fund.

5.09    Effective immediately after (and as a result of) the NMC
        Disposition in September 1996:

        (a)     With respect to each Participant's, Inactive
                Participant's and former Participant's interest in
                Grace Stock credited to the ESOP, the Trustee shall
                receive a certain number of shares of American
                Depository Shares of Fresenius Medical Care
                ("ADS's") and of shares of Fresenius National
                Medical Care preferred stock ("Preferred").  Those
                shares shall be sold by the Trustee within 90 days
                after they are received and the proceeds shall be
                reinvested in Grace Stock, which shall be credited
                to the Participant's, Inactive Participant's or
                former Participant's (as the case may be) interest
                in the ESOP.

        (b)     With respect to each Participant's, Inactive
                Participant's and former Participant's interest in
                Grace Stock credited to the Grace Common Stock

GR 001737

- 77 -

Fund, the Trustee shall receive a certain number of
ADS's and shares of Preferred.  The shares of
Preferred shall be sold by the Trustee within 90
days after they are received and the proceeds shall
be reinvested in Grace Stock, which shall be
credited to the Participant's, Inactive
Participant's or former Participant's (as the case
may be) interest in the Grace Common Stock Fund.
The ADS's shall be credited to the ADS Fund within
the account of the Participant, Inactive
Participant or former Participant (as the case may
be), which shall be an additional Investment Fund
under the Savings Plan.  The Participant, Inactive
Participant or former Participant shall have the
same elections with respect to the ADS Fund, as
with other Investment Funds, specified in Section
5.03 and 5.04; except that (i) the Participant,
Inactive Participant or former Participant shall
not be permitted to direct that any amounts be
credited to the ADS Fund from any other Investment
Fund (including, but not limited to, amounts in any
other Investment Fund attributable to amounts
previously transferred from the ADS Fund to any
other Investment Fund) or from any contributions
made to the Plan by or on behalf of the
Participant, and (ii) the ADS Fund shall be
terminated as of December 31, 1998 and all ADS's
remaining therein shall be liquidated, and any
amount remaining in that Fund on that date shall be
transferred to the Fixed Income Fund for the

GR 001738

- 78 -

Participant, Inactive Participant or former
Participant.

5.10       Effective immediately after (and as a result of)
           the Cryovac Disposition in March 1998:

   (a)     With respect to each Participant's, Inactive
           Participant's and former Participant's interest in
           Grace Stock credited to the ESOP, the Trustee shall
           receive a certain number of shares of Sealed Air
           Corporation ("SAC Common Stock") and of shares of
           Sealed Air Corporation preferred stock ("SAC
           Preferred").  Those shares shall be sold by the
           Trustee within 90 days after they are received and
           the proceeds shall be reinvested in Grace Stock,
           which shall be credited to the Participant's,
           Inactive Participant's or former Participant's (as
           the case may be) interest in the ESOP.

   (b)     With respect to each Participant's, Inactive
           Participant's and former Participant's interest in
           Grace Stock credited to the Grace Common Stock
           Fund, the Trustee shall receive a certain number of
           SAC Common Stock shares and shares of SAC
           Preferred. The shares of SAC Common Stock shall be
           credited to the SAC Common Stock Fund, and the
           shares of SAC Preferred shall be credited to the
           SAC Preferred Stock Fund, within the account of the
           Participant, Inactive Participant or former
           Participant (as the case may be), which shall be an
           additional Investment Fund under the Savings Plan.

- 79 -

The Participant, Inactive Participant or former
Participant shall have the same elections with
respect to the SAC Common Stock Fund and SAC
Preferred Stock Fund, as with other Investment
Funds, specified in Section 5.03 and 5.04; except
that (i) the Participant, Inactive Participant or
former Participant shall not be permitted to direct
that any amounts be credited to the SAC Common
Stock Fund or the SAC Preferred Stock Fund from any
other Investment Fund (including, but not limited
to, amounts in any other Investment Fund
attributable to amounts previously transferred from
the SAC Common Stock Fund or the SAC Preferred
Stock Fund to any other Investment Fund) or from
any contributions made to the Plan by or on behalf
of the Participant, and (ii) the SAC Common Stock
Fund and the SAC Preferred shall be terminated as
of (or as soon as practicable after) December 31,
2000 and all SAC Common Stock and SAC Preferred
Stock remaining therein shall be liquidated, and
any amount remaining in either Fund after such
liquidation shall be transferred to the Fixed
Income Fund for the Participant, Inactive
Participant or former Participant.

5.11        Effective October 1, 2000, a Participant or
Inactive Participant may, on any Business Day
during a Plan Year, elect to transfer to one or
more of the Investment Funds within the Savings
Plan all or a portion (in multiples of 5% or in
whole dollars amounts) of his Account Balance

- 80 -

invested in the ESOP and Grace Common Stock Fund
which is attributable to Company contributions
pursuant to Section 4.01. Any such transfer will
occur on the Business Day on which the Participant
notifies the Recordkeeper of such transfer election
by telephonic instruction, if such notice is
received by the Recordkeeper before the latest time
of day agreed to by Grace and the Recordkeeper for
same day processing; otherwise, such change will be
effective on the immediately succeeding Business
Day. The foregoing provisions of this Section 5.11
shall also apply to a former Participant who has
incurred a Termination of Service.

Effective as of the close of business April 9,
2003, the short term investments in the Grace
Common Stock Fund and the ESOP shall be liquidated
and the proceeds immediately transferred to the
Fixed Income Fund, and credited to each Savings
Plan Account, on a pro-rata basis, in accordance
with the interest in those Funds of each affected
Participant, Inactive Participant or former
Participant, as of that date. Effective April 10,
2003, all transactions involving the Grace Common
Stock Fund and the ESOP shall be suspended. During
such suspension, these two Funds shall be merged
into one fund, called the "Grace Stock Fund".

5.12    The "Grace Stock Fund" shall be comprised of only
Grace Stock, and no short-term investments. The
Grace Stock Fund shall account separately for the

- 81 -

portion of the Fund attributable to the ESOP and earnings and losses thereon.

5.13      As of April 14, 2003, the suspension specified in Section 5.11 shall end and all transactions involving Grace Stock within the Grace Stock Fund initiated on and after that date (including all transactions initiated by Participants) shall be executed directly to the open market, in accordance with the rules and procedures established by the Trustee (or its designee), including the application of brokerage commissions to such transitions.

5.14      Effective April 17, 2003, the Grace Stock Fund shall cease to accept any contributions or allocations to that Fund, whether or not such contribution or allocation is directed by a Participant, Inactive Participant or former Participant, and whether or not such a contribution or allocation is directed to the ESOP Account within the Fund or the other portion of the Fund. As of that date, all contributions designated for, or directed to, the Grace Stock Fund shall be redirected to the Fixed Income Fund.

GR 001742

- 82 -

## Section 6

### Valuation of Accounts

6.01    As of December 31, 1991, the dollar value of the balance
        of the Account of each Participant, Inactive Participant,
        former Participant or beneficiary in the Former Funds A,
        B, C and D within the Savings Plan and the ESOP shall be
        determined based upon the provisions of Section 6 of the
        Plan then in effect.

6.02    After December 31, 1991, the balances of Participants,
        Inactive Participants, former Participants or
        beneficiaries in each Former Fund and Investment Fund and
        in the ESOP shall be valued on each Business Day.    The
        value of each such balance on each Business Day shall
        equal the unit price established for the Investment Fund
        (or the ESOP) multiplied by the units credited to that
        balance.

        On each Business Day, the Trustee will establish a
        separate unit price for each Investment Fund and the ESOP
        by dividing the total market value of each Investment Fund
        and the ESOP by the total number of units outstanding in
        that Fund or the ESOP.    In the event that any shares of
        Grace Stock held in the ESOP portion of the Trust Fund are
        not traded on a national securities exchange on a
        particular Business Day, such shares shall be valued in
        good faith by an independent appraiser selected by the
        Trustee.

GR 001743

- 83 -

6.03    The Administrative Committee shall deliver or mail to each
        person in respect of whom an Account is maintained a
        statement setting forth the balance of the Savings Plan
        Account of such person in the Investment Funds not less
        frequently than once in each Plan Year.  After June 30,
        1989, such statement shall include the balance of such
        person's ESOP Account.

GR 001744

- 84 -

## Section 7

Vesting

7.01    Each Participant and Inactive Participant shall be fully
        and immediately vested in that portion of his Account
        which is attributable to his Before Tax, After Tax, Basic,
        Supplemental, and Rollover Contributions and to Company
        contributions pursuant to Section 4.01.

7.02    Notwithstanding the provisions of Section 7.01 relating to
        the fully vested status of Company contributions, Company
        contributions made with respect to periods prior to
        January 1, 1987 became fully vested after the expiration
        of two full Plan Years following the close of the Plan
        Year for which such Company contributions were made.

        In the event that a Participant or Inactive Participant
        terminated service prior to January 1, 1989 and before
        attaining a 100% Vested Interest in his Account and
        received a single lump sum payment of his Account, any
        non-vested portion of his Account was forfeited as of the
        last day of the month coincident with or next following
        the date of such termination.  If any such Participant or
        Inactive Participant elected to defer receiving a single
        lump sum distribution of his Account until the first day
        of the Plan Year next following his Termination of
        Service, any non-vested portion of his Account was
        forfeited as of the last day of the Plan Year in which his
        Termination of Service occurred (unless such Participant
        or Inactive Participant was re-employed by an Employing

- 85 -

Unit in a status covered by the Plan prior to such last
day). If any such Participant or Inactive Participant
elected to receive installment payments of his Account,
any non-vested portion of his Account was forfeited, or
will be forfeited, as of the last day of the Plan Year
coincident with the fifth consecutive One-Year Break in
Service (unless such Participant or such Inactive
Participant was re-employed, or is re-employed, by an
Employing Unit in a status covered by the Plan prior to
such fifth consecutive One-Year Break in Service). Any
amount forfeited hereunder was used, or will be used, to
reduce Company contributions under Section 4.01.

GR 001746

- 86 -

## Section 8

### Distribution of Vested Interest

#### 8.01    Retirement, Disability or Other Termination of Service

Upon his Disability Date or on the date of Retirement or
other Termination of Service, a Participant or Inactive
Participant who is not eligible to elect or who does not
elect to defer the distribution of his Account in
accordance with Section 8.04 may elect, at any time prior
to his Disability Date or the date of his Retirement or
other Termination of Service, to receive his Vested
Interest in any one of the following forms of benefit:

(a)    a single lump sum payment in cash equal to the
        value of his Vested Interest determined as of the
        Business Day on which the Recordkeeper processes
        his distribution election form, which date is on or
        after his Disability Date or the date of his
        Retirement or other Termination of Service, as the
        case may be, with actual payment to be made as soon
        as practicable thereafter.

(b)    annual or quarterly installment payments in cash of
        his Vested Interest, if such Vested Interest
        (without regard to any amount attributable to
        rollover contributions and earnings allocable
        thereto within the meaning of Code sections 402(c),
        403(a)(4), 403(b)(8), 408(d)(3)(A)(ii) and
        457(e)(16), with respect to distributions made

- 87 -

after January 1, 2002) exceeds $5,000 (or $3,500,
with respect to a former Participant who terminates
active participation under the Plan on or prior to
March 30, 1998) over a period that shall not exceed
twenty years (or such other period as may have been
designated under a designation by an Employee prior
to January 1, 1984 (satisfying any requirements of
the Internal Revenue Service) of a method of
distribution which complies with the provisions of
the Code as in effect on December 31, 1983),
commencing as of the first Business Day of the
first calendar quarter commencing after the date of
Retirement, the Disability Date or the date of
other Termination of Service of the Participant or
Inactive Participant, in which event his Vested
Interest shall remain in the Investment Funds in
which such interest is invested on the applicable
date and in the ESOP, unless and until his
investment election is changed in accordance with
Sections 5.04 and/or 5.07. In such event the value
of the first installment payment shall be
determined on the first Business Day of the first
calendar quarter commencing after the former
Participant's Retirement, Disability Date or other
Termination of Service occurred. The remaining
Vested Interest shall be valued as of the first
Business Day of each subsequent calendar quarter
(or, in the case of an annual installment, as of
the first Business Day of that calendar quarter
which is one year after the previous installment),
and the amount of the installment payment shall

GR 001748

- 88 -

equal the value of such remaining Vested Interest multiplied by a fraction the numerator of which is 1 and the denominator of which is the number of remaining installment payments to be made (including the installment payment in question). Notwithstanding the foregoing, any Participant or Inactive Participant who terminated service (other than on a Disability Date or on account of Retirement) prior to January 1, 1991 and elected to receive his Account in annual or quarterly installment payments shall commence receiving such installment payments as of the first day of the Plan Year after the Participant or Inactive Participant incurs 5 consecutive One-Year Breaks in Service.

(C)     monthly, quarterly or annual installment payments of a level amount in cash, of his Vested Interest, if such Vested Interest (without regard to any amount attributable to rollover contributions and earnings allocable thereto within the meaning of Code sections 402(c), 403(a)(4), 403(b)(8), 408(d)(3)(A)(ii) and 457(e)(16), with respect to distributions made after January 1, 2002) exceeds $5,000 (or $3,500, with respect to a former Participant who terminates active participation under the Plan on or prior to March 30, 1998), commencing as of the first Business Day of the first calendar month, quarter or year (as applicable) commencing after the date of Retirement, the Disability Date or the date of

- 89 -

> other Termination of Service of the Participant or
> Inactive Participant and after the appropriate
> election has been processed, in which event his
> undistributed Vested Interest shall remain in the
> Investment Funds in which such interest is invested
> on the applicable date and in the ESOP, unless and
> until his investment election is changed in
> accordance with Sections 5.04 and/or 5.07.

In the event that the Vested Interest of a Participant or
Inactive Participant (without regard to any amount attributable
to rollover contributions and earnings allocable thereto within
the meaning of Code sections 402(c), 403(a)(4), 403(b)(8),
408(d)(3)(A)(ii) and 457(e)(16), with respect to distributions
made after January 1, 2002) equals $5,000 (or $3,500, with
respect to a former Participant who terminates active
participation under the Plan on or prior to March 30, 1998) or
less as of the Business Day coincident with or next following his
Disability Date or date of Retirement or other Termination of
Service, the Participant's entire Vested Interest shall be
distributed as soon as practicable after his Disability Date or
the Date of his Retirement or other Termination of Service, as
the case may be, in the form of a single lump sum payment in
cash, unless such Participant or Inactive Participant elects to
defer receipt of such a single lump sum payment until the first
Business Day of the Plan Year next following the Plan Year in
which his Retirement, Disability Date or other Termination of
Service occurred. In either case, the value of the single lump
sum distributed to the Participant shall be equal to the value of
his Vested Interest determined as of the Business Day on which
the Recordkeeper processes his distribution election for.

- 90 -

8.02    Death

    If a Participant, Inactive Participant or former
Participant shall die before the distribution of his
entire Vested Interest has commenced or been completed,
the balance of such Vested Interest determined as of the
Business Day on which the Recordkeeper processes the
applicable distribution form following the Participant's
date of death shall be distributed as soon as practicable
thereafter to his beneficiary as provided in Section 8.03.

8.03    Except as provided below, each Participant, Inactive
Participant, or former Participant shall designate a
person or persons as his beneficiary or beneficiaries to
receive the death benefits provided in Section 8.02. Such
designation shall be made by written notice to the
Administrative Committee, and may be changed in similar
manner. In the event that no beneficiary shall have been
designated or the last designated beneficiary shall not be
living at the time that death benefits become payable, the
death benefits will be paid to the estate of the
Participant, Inactive Participant or former Participant.
Notwithstanding any other provision of the Plan, effective
August 23, 1984, in the case of a Participant, Inactive
Participant, or former Participant who is married at the
time of his death, such beneficiary shall automatically be
his spouse (and no other person designated by him shall be
entitled to any benefits in respect of him under the
Plan), unless another beneficiary or an additional
beneficiary is named with the consent of such spouse.

GR 001751

- 91 -

8.04    If the value of a Participant's or Inactive Participant's
        Vested Interest (without regard to any amount attributable
        to rollover contributions and earnings allocable thereto
        within the meaning of Code sections 402(c), 403(a)(4),
        403(b)(8), 408(d)(3)(A)(ii) and 457(e)(16), with respect
        to distributions made after January 1, 2002) determined as
        of the Business Day coincident with or next following the
        date of his Termination of Service exceeds $5,000 (or
        $3,500, with respect to a former Participant who
        terminates active participation under the Plan on or prior
        to March 30, 1998) and his Account is immediately
        distributable, the former Participant or Inactive
        Participant must consent to any distribution of his
        Account.  For purposes of this Section 8.04, an Account is
        immediately distributable if any part of such Account
        could be distributed before a Participant or Inactive
        Participant attains age 65.  The consent of the former
        Participant or Inactive Participant shall be obtained
        within the 90-day period ending on the annuity starting
        date.  The annuity starting date is the first day of the
        first period for which an amount is paid as an annuity or
        any other form.  The Administrative Committee shall, not
        less than 30 days and not more than 90 days prior to the
        annuity starting date, notify a Participant or Inactive
        Participant of the right to defer the distribution of his
        Account until the last day of the Plan Year in which the
        Participant or Inactive Participant attains age 70-1/2.
        However, distribution may commence less than 30 days after
        the notice described in the preceding sentence is given,
        provided the Administrative Committee clearly informs the
        Participant or Inactive Participant that he has a right to