**EXHIBIT 9B**

- 92 -

a period of at least 30 days after receiving the notice to
consider the decision of whether or not to elect a
distribution (and, if applicable, a particular
distribution option), and the Participant or Inactive
Participant (with any applicable spousal consent) after
receiving the notice, affirmatively elects a distribution;
provided that such a distribution shall commence no
earlier than 7 days after such notice is provided.  A
former Participant who has made an election to defer the
distribution of his Account under this Section 8.04 may
elect to receive a distribution of his Account as a single
lump sum payment in cash or in annual or quarterly
installments as of a date earlier than the applicable
dates described in the sentence before the preceding
sentence.  In this event, any such former Participant who
elects a single lump sum payment in cash shall receive the
value of his Vested Interest determined as of the Business
Day on which the Recordkeeper processes his distribution
election, with actual payment to be made as soon as
practicable thereafter.  Alternatively, any such former
Participant who elects annual or quarterly installments
shall receive the first such installment, based on the
value of his Vested Interest determined as of the first
Business Day of the first calendar quarter after his
election to receive an earlier distribution is received by
the Administrative Committee, with actual payment to be
made as soon as practicable thereafter.  The remaining
Vested Interest of such former Participant shall be valued
as of the first Business Day of each subsequent calendar
quarter (or, in the case of an annual installment, as of
the first Business day of that calendar quarter which is

GR 001753

- 93 -

one year after the previous installment), and the amount
of the installment payment shall equal the value of such
remaining Vested Interest multiplied by a fraction, the
numerator of which is 1 and the denominator of which is
the number of remaining installment payments to be made
(including the installment payment in question).

8.05    A Participant, Inactive Participant, or beneficiary, who
receives a single lump sum payment may elect to receive
that portion of his Vested Interest in the Grace Common
Stock Fund and, for periods after June 30, 1989, the value
of his ESOP Account, in the aggregate, payable to him in
whole shares of Grace Stock plus cash for any fractional
share.

8.06    Except as otherwise provided under regulations of the
Internal Revenue Service, and subject to Section 8.04 of
the Plan, the payment of benefits under the Plan to a
former Participant shall be made or commence, as the case
may be, not later than the 60th day after the close of the
latest of three Plan Years: (1) the Plan Year in which the
Participant attains age 65, (2) the Plan Year in which the
tenth anniversary of the Participant's commencement of
participation in the Plan occurs, and (3) the Plan Year in
which the Participant has a Termination of Service.

Notwithstanding any other provision of the Plan, any
benefit payable to a Participant or former Participant who
terminates service other than by death shall be paid, or
commence to be paid, not later than April 1 of the
calendar year following the later of (i) the calendar year

GR 001754

- 94 -

in which he attains age 70-1/2, or (ii) the calendar year
in which he terminates service (for non 5% owners), and
shall be payable over the period of his life or the lives
of him and a designated beneficiary, or a period not
extending beyond his life expectancy or their life
expectancies, and the benefit, if any, payable after his
death shall be payable at least as rapidly as under the
method of distribution then applicable at the time of the
Participant's death. If the Participant dies before
benefits commence under the Plan, such benefits shall be
payable within 5 years after the death of the Participant,
or over the life of a designated beneficiary, or over a
period not extending beyond the life expectancy of a
designated beneficiary, and such benefits shall commence
within one year after the Participant's death, but need
not commence before the date that the Participant would
have attained age 70-1/2, in the case of a designated
beneficiary who is the Participant's spouse. Upon the
death of such spouse, the foregoing rules shall apply as
if such spouse were the Participant.

Notwithstanding any other provisions of the Plan, with
respect to distributions under the Plan made on or after
September 1, 2001 for calendar years beginning on or after
January 1, 2001, the Plan will apply the minimum
distribution requirements of section 401(a)(9) of the
Internal Revenue Code in accordance with the regulations
under section 401(a)(9) that were proposed on January 17,
2001 (the 2001 Proposed Regulations). If the total amount
of required minimum distributions made to a Participant
for 2001 prior to September 1, 2001 are equal to or

greater than the amount of the required minimum
distributions determined under the 2001 Proposed
Regulations, then no additional distributions are required
for such Participant for 2001 on or after such date. If
the total amount of required minimum distributions made to
a Participant for 2001 prior to September 1, 2001 are less
than the amount determined under the 2001 Proposed
Regulations, then the amount of required minimum
distributions for 2001 on or after such date will be
determined so the total amount of required minimum
distributions for 2001 is the amount determined under the
2001 Proposed Regulations. This amendment shall continue
in effect until the last calendar year beginning before
the effective date of the final regulations under section
401(a)(9) or such other date as my be published by the
Internal Revenue Service.

8.07    Notwithstanding the other provisions of Section 8 of the
        Plan, a Participant or Inactive Participant may change an
        election under Section 8.01 of the Plan with respect to
        the form or timing of the distribution of his Vested
        Interest one time during the period after the date of his
        Retirement, his Disability Date, or the date of his other
        Termination of Service (except by death) and prior to the
        date as of which his Vested Interest is to be paid or
        commence to be paid. Such change of an election may be
        made at such time, with such effective date, and on such
        form as may be prescribed by the Administrative Committee.
        In addition, a former Participant or Inactive Participant
        who has commenced receiving a distribution of his Vested
        Interest in the form of installment payments may

- 96 -

accelerate the distribution of such Vested Interest by
electing to receive a single lump sum payment in cash
equal to the value of such remaining Vested Interest
determined on the Business Day on which the Recordkeeper
processes his distribution election.

8.08    Notwithstanding any other provision of the Plan, a
distribution made on account of the following may only be
made in the form of a lump sum:

(1)    on account of the sale or other disposition by the
Company, or any corporation or other entity
regarded as under common control with the Company
pursuant to Code section 414(b)(1), of
substantially all of the assets (within the meaning
of section 409(d)(2) of the Code) used by the
Company or other such entity in a trade or
business, with respect to an individual who
continues employment with the corporation acquiring
such assets; or

(2)    on account of the sale or other disposition by the
Company or other such entity of the Company's or
other such entity's interest in a subsidiary
(within the meaning of section 409(d)(3) of the
Code) with respect to an individual who continues
employment with such subsidiary.

8.09    Eligible Rollover Distributions

(A)    This Section applies to distributions made on or

- 97 -

after January 1, 1993.  Notwithstanding any
provision of the Plan to the contrary that would
otherwise limit a distributee's election under the
Plan, a distributee may elect, at the time and in
the manner prescribed by the Administrative
Committee, to have any portion of an eligible
rollover distribution that is equal to at least
$500 paid directly to an eligible retirement plan
specified by the distributee in a direct rollover.

(B)     Eligible Rollover Distribution:  An eligible
rollover distribution is any distribution of all or
any portion of the balance to the credit of the
distributee, except that any eligible rollover
distribution does not include:  any distribution
that is (or is treated as under Treasury Regulation
1.402(c)-2T) one of a series of substantially equal
periodic payments (not less frequently than
annually) made for the life (or life expectancy) of
the distributee or the joint lives (or joint life
expectancies) of the distributee and the
distributee's designated beneficiary, or for a
specified period of ten years or more; any
distribution to the extent such distribution is
required under section 401(a)(9) of the Code; the
portion of any other distribution(s) that is not
includible in gross income (determined without
regard to the exclusion for net unrealized
appreciation with respect to employer securities);
any other distribution(s) that is reasonably
expected to total less than $200 during a year; and

GR 001758

- 98 -

any hardships withdrawal made after December 31,
1998. For distributions made on or after January 1,
2002, a portion of a distribution shall not fail to
be an eligible rollover distribution merely because
the portion consists of amounts that are not
includable in gross income.  However, such portion
may be transferred only to an individual retirement
account or annuity described in Code section 408(a)
or (b), or to a qualified defined contribution plan
described in Code section 401(a) or 403(a) that
shall separately account for the portion of such
distribution which is includible in gross income
and the portion of such distribution which is not
so includible.

(C)    Eligible retirement plan:  An eligible retirement
plan is an individual retirement account described
in section 408(a) of the Code, an individual
retirement annuity described in section 408(b) of
the Code, an annuity plan described in section
403(a) of the Code, or a qualified trust described
in section 401(a) of the Code, that accepts the
distributee's eligible rollover distribution. For
distributions made on or after January 1, 2002, an
eligible retirement plan shall also mean an annuity
contract described in Code section 403(b) and an
eligible plan under Code section 457(b) which is
maintained by a state, or any agency or
instrumentality of a state or political subdivision
of a state and which agrees to separately account
for amounts transferred into such plan from this

- 99 -

Plan.   Notwithstanding any other provision of this
Section 8.09, for distributions made on or after
January 1, 2002, the definition of eligible
retirement plan shall also apply in the case of a
distribution to a surviving spouse, or to a former
spouse who is the alternate payee under a qualified
domestic relations, as defined in Code section
414(q). For distributions made before January 1,
2002, in the case of an eligible rollover
distribution to the surviving spouse, an eligible
retirement plan is an individual retirement account
or individual retirement annuity.

(D)     Distributee:   A distributee includes an employee or
        former employee.   In addition, the employee's or
        former employee's surviving spouse and the
        employee's or former employee's spouse or former
        spouse who is the alternate payee under a qualified
        domestic relations order, as defined in section
        414(p) of the Code, are distributees with regard to
        the interest of the spouse or former spouse.

(E)     Direct rollover:   A direct rollover is a payment by
        the Plan to the eligible retirement plan specified
        by the distributee.

GR 001760

8.10 Distributions to former Participants of the Grace Drilling
Money Purchase Pension Plan ("Grace Drilling Plan") and the
HOMCO International, Inc. Employees' Profit Sharing
Investment Savings and Retirement Plan ("HOMCO Plan").

Notwithstanding any other provisions of this Section 8, a
Plan Participant whose Account includes amounts transferred
from the Grace Drilling Plan or the HOMCO Plan (hereinafter
referred to as the "Grace Drilling Transferred Amount" and
"HOMCO Transferred Amount" respectively and as the
"Transferred Amounts," collectively), may elect (in addition
to the other options available under this Section 8) at any
time prior to his or her Disability Date, or the date of his
or her Retirement or other Termination of Service, whichever
occurs first, to receive that portion of his or her Vested
Interest in the Grace Drilling Transferred Amount or HOMCO
Transferred Amount, plus earnings on either, in any one of
the following forms of benefit described below, with respect
to the applicable transferred amount.

(a) Participants Entitled to a Grace Drilling Transferred
Amount. For purposes of this Section 8.10, a
Participant with such a Transferred Amount will be
deemed to have reached Normal Retirement Age with
respect to the Grace Drilling Transferred Amount, and
earnings thereon, as of (i) the first day of any month
after attainment of age 60 or (ii) as of the first day
of any month following the attainment of age 55 and
completion of ten years of service, whichever occurs
first.

Unless an optional form of benefit is selected pursuant to a qualified election within the 90-day period ending on the annuity starting date, a married Participant's vested Grace Drilling Transferred Amount and earnings thereon will be paid in the form of a qualified joint and survivor annuity and an unmarried Participant's vested Grace Drilling Transferred Amount and earnings thereon will be paid in the form of a life annuity.

A Participant with a Grace Drilling Transferred Amount may elect to receive that portion of his or her Vested Interest representing the Grace Drilling Transferred Amount, plus earnings thereon, in any one of the following optional forms of benefit as described below:

  (1)  A lump sum distribution, provided that if the Participant is married, his or her spouse must consent to this form of distribution.

  (2)  Installment distributions, provided that if the Participant is married, his or her spouse must consent to this form of distribution. With such consent, the Participant may elect monthly or annual installments, where the installment payments will be equal payments over a 5, 10 or 15 year period, as selected by the Participant. If the Participant dies after the installment payments have commenced, any remaining payments due will be paid to the Participant's beneficiary. Installment payments will commence as soon as

- 102 -

administratively practicable, but in no event
more that one year following the
Participant's Disability Date, Retirement or
other Termination of Service, whichever
occurs first.

(3)   Optional Annuity Forms.  A Participant may
elect to have the Grace Drilling Transferred
Amount, plus earnings thereon, converted to a
life annuity, provided that if the
Participant is married, his or her spouse
must consent to this form of distribution.
With such consent, the following forms of
annuity are available to the Participant:

(i)   Monthly payments for the Participant's
life, with no death benefits.

(ii)  Monthly payments for the Participant's
life with payments guaranteed for a
period of 5, 10, or 15 years as the
Participant selects.  If the Participant
dies before the end of the period
selected, payments will continue to the
designated beneficiary until the end of
that period.

(iii) Monthly payments for the Participant's
life, with 100%, 75%, 66-2/3%, or 50%
(selected by the Participant) of the
payment continuing after the

Participant's death for the rest of the
life of the designated beneficiary.

(b)  Participants entitled to a HOMCO Transferred
Amount. Unless an optional form of benefit is
selected pursuant to a qualified election within
the 90-day period ending on the annuity starting
date, a married Participant's vested HOMCO
Transferred Amount and earnings thereon will be
paid in the form of a qualified joint and survivor
annuity and an unmarried Participant's vested
HOMCO Transferred Amount and earnings thereon will
be paid in the form of a life annuity.

A Participant may elect to have his or her HOMCO
Transferred Amount, plus earnings thereon,
distributed as a lump sum distribution, provided
that if the Participant is married, his or her
spouse must consent to this form of distribution.

(c)  Qualified Joint and Survivor Annuity or Pre-Retirement
Survivor Annuity. Notwithstanding any other provisions
of the Plan, the following provisions shall apply with
respect to distributions of Transferred Amounts and
earnings thereon made under this section 8.10.

Should a Participant die, while married, prior to the
starting date of the distribution of benefits but on or
after the earliest retirement age, then for the
purposes of determining eligibility for the Joint and
Survivor Annuity benefits stated above, the starting

- 104 -

date of distribution of benefits shall be deemed to
have occurred one day prior to his date of death.

Notwithstanding the above, the Participant may elect,
subject to the consent of his spouse, in accordance
with the following procedures not to receive a
Qualified Joint and Survivor Annuity(or life annuity if
the Participant is not married or the consent of his
spouse is not required), in which case the manner of
distribution shall be other than a Qualified Joint and
Survivor Annuity:  No less than thirty days nor more
than ninety days before the starting date of any
payment of Accrued Benefits to the Participant under
the Plan in satisfaction of the Qualified Joint and
Survivor Annuity requirement, the Plan Administrator
shall provide the Participant with notification, in
non-technical terms, of the availability of a Qualified
Joint and Survivor Annuity, and on request, with a
dollar amount of the annuity payment with and without
election.   The written notification initially given to
the Participant shall include a written explanation of
(i) the terms and conditions of the Qualified Joint and
Survivor Annuity,   (ii) the Participant's right to
make, and the effect of an election to waive the
Qualified Joint and Survivor Annuity benefit, (iii)
the rights of the Participant's spouse as to the
election, and (iv)  the rights to make , and the effect
of, a revocation of such an election.  During said
thirty to ninety day period, the Participant shall be
provided with a period in which to elect in writing not
to receive a Qualified Joint and Survivor Annuity.

GR 001765

- 105 -

Such election may be changed by the Participant during
the election period.

(1)   Notwithstanding the provisions of Section 8,
      Transferred Amounts and earnings hereon will be
      distributed to the Participant in the Form of a
      Qualified Pre-Retirement Survivor Annuity to the
      extent that such benefits are distributed on
      account of the Participant's death and the
      Participant was married at the time of his or her
      death.

      Notwithstanding the above, the Participant may
      elect, subject to the consent of his or her
      spouse, in accordance with the following
      procedures, not to receive a Qualified Pre-
      Retirement Survivor Annuity: no later than the
      first day of the Plan Year in which the
      Participant attains the age of thirty-two and
      ending the with the close of the Plan Year
      preceding the Plan Year in which the Participant
      attains the age of thirty-five, a written
      explanation with respect to the Qualified Pre-
      Retirement Survivor Annuity comparable to that
      required for the Qualified Joint And Survivor
      Annuity shall be provide to the Participant.   If
      an individual is not a Participant in the Plan
      during the time prescribed in the preceding
      sentence, the Participant shall be provided with a
      written explanation of the Qualified Pre-
      Retirement Survivor Annuity not later than the

GR 001766

date he or she becomes a Participant in the Plan,
in accordance with the applicable Treasury
Regulations.  Beginning with the first day of the
Plan Year in which the Participant attains the age
of thirty-five and ending on the date of the
Participant's death, the Participant shall have
the right to elect to decline the Qualified Pre-
Retirement Survivor Annuity, subject to consent of
his or her spouse. Notwithstanding the preceding
sentence, the Plan may permit an earlier waiver
(subject to consent of spouse), provided that a
written explanation of the Qualified Pre-
Retirement Survivor Annuity is given to the
Participants and such waiver becomes invalid upon
the beginning of the Plan Year in which the
Participant attains the age of thirty-five.
During the "applicable election period," which
begins on the first day of the plan year in which
the Participant attains age 35 and ends on the
date of his/her death, the Participant may revoke
a previously made waiver at any time and any
number of times; provided, however, that the last
election made prior to the date of the
Participant's death shall be irrevocable.

(2)   When "consent of spouse" is required under this
section, the spouse of the Participant must
consent in writing to the applicable election, and
must acknowledge the effect of the election, and
the consent and acknowledgment must be witnessed
by a member of the Administrative Committee or a

- 107 -

notary public.  The consent of the spouse shall
not be necessary if it is established to the
satisfaction of the Administrative Committee that
there is no spouse, that spouse cannot reasonably
located, or for such other reasons as Treasury
Regulations may prescribe.  The consent of the
spouse or reasons for not requiring such consent
shall be applicable only to the spouse. If the
spouse o of a Participant becomes locatable or if
a Participant marries or remarries it shall be the
duty of the Participant to bring that fact to the
attention of the Administrative Committee.  If a
Participant so notifies the Administrative
Committee, the Administrative Committee shall
then, if applicable, proceed to make available to
such spouse the consent procedures described in
this section.

(3)  The benefit to the surviving spouse under the
Qualified Pre-Retirement Survivor Annuity shall
begin within a reasonable time, but in any event,
no later than 90 days, after the Participant's
death.

(d)  Definitions.  Notwithstanding any other provision of the
Plan, the following definitions shall apply for the
purposes of this Section 8.10:

(1)  Qualified Joint and Survivor Annuity is an annuity
for the life of the Participant with a survivor
annuity for the life of the spouse, which is equal

- 108 -

to one-half of the amount of the annuity payable during the joint lives of the participant and his spouse, the actuarial equivalent of the vested Transferred Amount plus earnings thereon of the Participant.

(2)  Qualified Pre-Retirement Survivor Annuity is a survivor annuity for the life of the surviving spouse of the Participant which is the actuarial equivalent of the vested Transferred Amount plus earnings thereon of the Participant.

This provision shall be effective for Drilling Participants as of December 1, 1994; and effective for HOMCO Participants as of December 1, 1993.

GR 001769

- 109 -

## Section 9

Withdrawals During Employment

9.01   (1)   The provisions of Section 9 shall apply to
             Participants and Inactive Participants who have not
             incurred a Termination of Service.

       (2)   With respect to a Participant's or Inactive
             Participant's Vested Interest other than the
             portion of his Account attributable to Before Tax
             Contributions and to Company contributions subject
             to the restrictions of Section 9.01(5)(f), a
             Participant or Inactive Participant may withdraw
             all or part thereof as of the Business Day on which
             the Recordkeeper processes his withdrawal request.

       (3)   With respect to the portion of a Participant's or
             Inactive Participant's Account attributable to
             Before Tax Contributions, a Participant or Inactive
             Participant who satisfies the requirements of
             Section 9.05 may withdraw all or part thereof as of
             the Business Day on which the Recordkeeper
             processes his withdrawal request.  Notwithstanding
             the foregoing, any earnings on Before Tax
             Contributions which are credited to a Participant's
             Account after December 31, 1988 may not be
             withdrawn on account of hardship as defined in
             Section 9.05.

       (4)   Partial withdrawals may only be made in multiples

- 110 -

of $100.  Any withdrawal under the Plan is subject
to a minimum withdrawal amount of $500.  No
withdrawal of any contributions or earnings may
exceed the value of the Account attributable
thereto, if less, on the Business Day on which the
Recordkeeper processes the Participant's
withdrawal request form.

(5)   Withdrawals under Section 9.01(2) shall be made
only in the following order of priority, and only
after the funds of a higher priority have been
completely withdrawn shall funds of the next
following priority be withdrawn:

(a)   Supplemental Contributions and Rollover
Contributions made prior to January 1, 1992,
and earnings, up to the Non-Taxable Balance

(b)   Rollover Contributions made on or after
December 31, 1992 and earnings, up to the
Non-Taxable Balance

(c)   After Tax Contributions made on or before
December 31, 1986, up to the Non-Taxable
Balance

(d)   At the election of the Participant or
Inactive Participant having a Supplemental
Contribution and/or Rollover Contribution
balance (including earnings thereon) in
excess of the Non-Taxable Balance, either (i)
Supplemental Contributions and/or Rollover
Contributions, and earnings thereon, if any
or (ii) After Tax Contributions made on or

- 111 -

                      after January 1, 1987 and earnings thereon, if any

    (e)   After Tax Contributions made on or before December 31, 1986 and earnings thereon, in excess of the Non-Taxable Balance

    (f)   Company contributions under Section 4.01 and earnings thereon, if any; provided, however, that no such Company contributions under Section 4.01 may be withdrawn until such Company contributions under Section 4.01 have remained in the plan for at least twenty-four (24) months after the Business Day on which such Company contributions were credited to his Account.

A Participant or Inactive Participant covered under (d) above may elect to receive an amount withdrawn under (i) or (ii). In the event that no election is made, (i) shall apply. In the event that the amount withdrawn exceeds the amount withdrawn under (i) or (ii) (whichever is elected), the balance shall be taken from (i) or (ii) (whichever was not elected).

9.02    Amounts withdrawn pursuant to Section 9.01 will be paid as soon as practicable after the Recordkeeper receives the Participant's or Inactive Participant's withdrawal request. In the case of withdrawals from the Grace Common Stock Fund and the ESOP, distributions shall be made in cash unless the Participant or Inactive Participant elects to receive in lieu thereof whole

- 112 -

shares of Grace Stock, plus cash for any fractional
share.

9.03    Each Participant or Inactive Participant withdrawing
        funds pursuant to Section 9.01(2) shall be ineligible to
        receive Company contributions under Section 4.01 of the
        Plan for the following periods after the effective date
        of such withdrawal (but nevertheless shall remain
        eligible to make After Tax Contributions or Before Tax
        Contributions, or both, during such periods):

|                                                    |              | Period During Which Company Contributions under Section 4.01 |
| Category of Withdrawal                             | Proportion   | Are Suspended                                                |
| -------------------------------------------------- | ------------ | ------------------------------------------------------------ |
| Supplemental Contributions and Earnings Thereon    | All or Part  | None                                                         |
| After Tax Contributions and Earnings Thereon       | All or Part  | 3 months                                                    |
| Company Contributions under Section 4.01 and Earnings Thereon (subject to the restrictions of Section 9.01(5)(f)) | All or Part | None |

9.04    Amounts withdrawn with respect to a category of
        contributions and earnings thereon pursuant to Section
        9.01(2) or (3) shall be deducted from the Investment
        Funds and the ESOP in the following order of priority,
        and only when amounts invested in Investment Funds of a
        higher priority have been completely withdrawn shall

- 113 -

amounts invested in Investment Funds of the next
following priority be withdrawn:

(1)     Fidelity Contrafund
(2)     Fidelity OTC Portfolio
(3)     Fidelity Blue Chip Growth Fund
(4)     Fidelity Growth & Income Portfolio
(5)     Fidelity Balanced Fund
(6)     Fidelity Investment Grade Bond Fund
(7)     Fidelity US Bond Index Fund
(8)     PIMCO Total Return Fund
(9)     INVESCO Equity Income Fund
(10)    Spartan US Equity Index Fund
(11)    Franklin Small Cap Growth Fund-A
(12)    JP Morgan Institutional US Small Company Fund
(13)    American Century International Growth Fund
(14)    Spartan International Index Fund
(15)    Templeton Foreign Fund A
(16)    Fidelity Freedom Income Fund
(17)    Fidelity Freedom 2000 Fund
(18)    Fidelity Freedom 2010 Fund
(19)    Fidelity Freedom 2020 Fund
(20)    Fidelity Freedom 2030 Fund
(21)    Fidelity Low-Priced Stock Fund
(22)    Spartan Extended Market Index Fund
(23)    Spartan Total Market Index Fund
(24)    Fidelity Diversified International Fund
(25)    Fidelity Europe Fund
(26)    Fidelity Equity-Income Fund
(27)    Fixed Income Fund
(28)    Grace Common Stock Fund

- 114 -

(29)   ESOP

The amount of a withdrawal will be based on the value of the amount attributable to such category of contributions and earnings credited to the Participant or Inactive Participant in each such Investment Fund within the Savings Plan and the ESOP on the Business Day on which the Recordkeeper processes the Participant's or Inactive Participant's withdrawal request.

9.05   Amounts may be withdrawn pursuant to Section 9.01(3) only (i) where a Participant or Inactive Participant has attained at least age 59-1/2, or (ii) where a Participant or Inactive Participant incurs a hardship; provided that such amounts may be withdrawn in the case of hardship only after all available amounts have first been withdrawn pursuant to Section 9.01(2) and only to the extent that they are necessary to satisfy the hardship after the Participant or Inactive Participant has applied all other financial resources reasonably available to him (if any) to satisfy such hardship. For purposes of this Section 9.05, a distribution is on account of hardship if the distribution is for any of the following reasons:

> (a)   Expenses for medical care (within the meaning of Section 213 of the Code) that (i) were previously incurred by the Participant or Inactive Participant, his spouse or dependents and which are not reimbursed by insurance or otherwise, or

GR 001775

- 115 -

(ii) are necessary for such individuals to obtain such medical care; or

(b)  Costs directly related to the purchase of a principal residence for the Participant or Inactive Participant (excluding mortgage payments); or

(c)  Payment of tuition and related educational expenses for the next twelve (12) months of post-secondary education for the Participant or Inactive Participant, his spouse, children or dependents; or

(d)  Payments necessary to prevent the eviction of the Participant or Inactive Participant from his principal residence or foreclosure on the mortgage of the principal residence of the Participant or Inactive Participant; or

(e)  Any other reason which, in the Administrative Committee's determination, has produced an immediate and heavy financial need.

Any Participant or Inactive Participant who suffers a hardship, as defined in this Section 9.05, may request a withdrawal pursuant to Sections 9.01(3) and (4) by written notice to the Administrative Committee setting forth the amount requested and the facts establishing the

- 116 -

existence of the hardship; provided that, effective
January 1, 2004, such Participant must request such a
withdrawal by written notice to Fidelity. Upon receipt
of a withdrawal request on account of hardship, the
Administrative Committee (or Fidelity, as appropriate)
shall determine whether a financial hardship exists.    If
the Administrative Committee (or Fidelity, as
appropriate) determines that such a hardship does exist,
it shall further determine what portion of the amount
requested, if any, is required to meet the need created
by the hardship.  The determination of the existence of a
financial hardship and the amount necessary to meet the
need created by such hardship shall be made by the
Administrative Committee (or Fidelity, as appropriate) in
accordance with uniform and non-discriminatory standards
and on the basis of all relevant facts and circumstances.

  In the event that a Participant or Inactive Participant
requests a hardship withdrawal for any reason other than
those set forth in (a) through (d) above, or the
Administrative Committee (or Fidelity, as appropriate) is
unable to determine that the amount requested for
withdrawal is necessary to satisfy a financial hardship
that is described in (a) through (d) above, based on the
supporting documentation, including written
certifications, furnished to it by the Participant or
Inactive Participant, then (i) the Participant's Before
Tax Contributions and After Tax Contributions will be
suspended for a period of six months (twelve (12) months
for hardship distributions before January 1, 2002),
beginning with the first day of the month immediately
following the date of the withdrawal payment, (ii) the

GR 001777

Participant shall be ineligible to receive Company
contributions under Section 4.01 for such period and
(iii) the Participant's Before Tax Contributions for his
taxable year immediately following the taxable year of
the hardship withdrawal shall be limited to $7,000 (as
automatically adjusted for increases in the cost of
living as prescribed by the Secretary of the Treasury for
such next taxable year) less the amount of the
Participant's Before Tax Contributions for the taxable
year of the hardship withdrawal.

If, after January 1, 2004, Fidelity is unable or
unwilling to make the hardship determinations specified
above, or if there is any appeal of such a Fidelity
determination, then the Administrative Committee shall
decide each such determination, and its determinations
shall be final and binding on all parties.

9.06    Notwithstanding any other provision of Section 9 to the
contrary, a Participant that is subject to taxes on
personal income under the laws of any country (other than
the United States), including, but not limited to, the
United Kingdom, shall be permitted to give an undertaking
that would restrict his ability to receive an in-service
withdrawal under the provisions of this Section 9 with
respect to any portion of the Company contributions and
Before Tax Contributions made to the Plan on his behalf,
if, and to the extent that, such an undertaking is
necessary in order to assure that the Participant will
not be subject to tax by that country on those
contributions.   Any such undertaking shall be effective

- 118 -

as of the date that the Plan Administrator agrees to
observe the terms of such undertaking; and, as of that
date, the undertaking shall be incorporated as part of
the Plan by this reference.

9.07    Withdrawals By Former Participants

(a)    The provisions of this Section 9.07 shall apply to
any former Participant who has elected to defer
the distribution of his Account in accordance with
Section 8.04.  With respect to such a former
Participant's Vested Interest in his Account
(other than the portion of his Account
attributable to Before Tax Contributions, and to
Company contributions that have not been in the
Plan for at least two full Plan Years after the
Plan Year for which such Company contributions are
made and earnings on such contributions), such a
former Participant may withdraw all or part
thereof as of the Business Day on which the
Recordkeeper processes his withdrawal request.
Such a former Participant shall be permitted to
withdraw all or a portion of his Before Tax
Contributions if he has attained age 59-1/2.
Notwithstanding the foregoing, a former
Participant shall not be permitted to make any
withdrawal:  (i) on account of hardship as defined
in Section 9.05 or (ii) if he is receiving
installment payments from the Plan.

(b)    Amounts withdrawn pursuant to Section 9.07 will be

- 119 -

paid as soon as practicable after the Recordkeeper
receives the former Participant's withdrawal
request.  In the case of withdrawals from the
Grace Common Stock Fund and the ESOP,
distributions shall be made in cash unless the
former Participant elects to receive in lieu
thereof whole shares of Grace Stock, plus cash for
any fractional share.

GR 001780

- 120 -

## Section 10

### Payment of Benefits

10.01   If the Administrative Committee receives evidence
        satisfactory to it that a person entitled to receive any
        benefit under the Plan is physically or mentally
        incompetent to receive such benefit and to give a valid
        release therefore, or is a minor, and that another person
        or an institution is then maintaining or has custody of
        such person, unless claim shall have been made therefor
        by a duly appointed guardian, committee or other legal
        representative, the Administrative Committee may
        authorize payment of such benefit to such other person or
        institution and the release of such other person or
        institution shall be a valid and complete discharge for
        the payment of such benefit.

10.02   Every person before becoming entitled to any benefits
        under the Plan shall furnish the Administrative Committee
        with such information as it may require, including, but
        not limited to, proof of age relating to himself and any
        person named as a beneficiary.

10.03   The benefits under the Plan shall be payable solely from
        the Trust Fund and each Participant, Inactive Participant
        or former Participant or other person who shall claim the
        right to any payment under the Plan shall be entitled to
        look only to that fund for such payment.  No liability
        for the payment of benefits or any other payments under
        the Plan shall be imposed upon the Investment Committee,

- 121 -

the Administrative Committee, the Company, or the
officers, directors or stockholders of the Company.

10.04   Except as expressly provided in the Plan, no Participant,
Inactive Participant, former Participant or other person
entitled to benefits may withdraw or receive any monies
from the Trust Fund.

10.05   Effective July 1, 1993, any check that is not cashed
within six months of its issuance will be cancelled, and
the assets attributable thereto shall be used to offset
plan expenses; provided, however, that a new check shall
be reissued if and when the original check is presented
for payment.

GR 001782

- 122 -

## Section 11

Re-Employment

11.01   In the event a former Participant shall resume employment
        (within the meaning of the Department of Labor Regulation
        section 2530.203-3) by an Employing Unit in a status
        covered by the Plan after having previously terminated
        employment by Retirement or otherwise, any distribution
        or installment payment to be made to him as of a Business
        Day occurring on or after the date he resumes such
        employment shall not be made to him except upon
        subsequent application of the provisions of Section 8.

11.02   In the event of Termination of Service of an Employee and
        subsequent re-employment by an Employing Unit in a status
        covered by the Plan, Years of Service and Hours of
        Service before and after such termination shall be
        aggregated for purposes of determining eligibility.  Such
        aggregation shall occur on the date of re-employment.

11.03   Upon re-employment by an Employing Unit in a status
        covered by the Plan prior to a One-Year Break in Service
        (in the case of re-employment prior to January 1, 1985)
        or prior to 5 consecutive One-Year Breaks in Service (in
        the case of re-employment on or after January 1, 1985), a
        former Participant or Inactive Participant whose service
        was terminated prior to January 1, 1989 and before
        attaining a 100% Vested Interest in his Account may
        reinstate the dollar value (at the time of the
        forfeiture) of the shares of Grace Stock (or, if such

$- 123 -$

forfeiture occurred prior to May 25, 1988, the dollar
value of the shares of common stock of Grace Connecticut)
(or other amount) in the Former Fund C or the Grace
Common Stock Fund which was forfeited upon such
Termination of Service, or upon the valuation of his
Account in the case of a deferred lump sum distribution,
by repaying in cash the total dollar value of the actual
distribution (other than Rollover Contributions)
previously made to him (including the value of any Grace
Stock (or, if such distribution occurred prior to May 25,
1988, the total value of the shares of common stock of
Grace Connecticut)) distributed to him, within five years
after the date of re-employment. In the event of such
repayment, there shall be credited to the Participant or
Inactive Participant (as of the Business Day on which the
repayment is received by the Trustee):

   (i)   an amount in the Fixed Income Fund equal to the
         dollar amount previously held in the Investment
         Funds (except the Grace Common Stock Fund) or the
         Former Funds A, B, C or D attributable to After
         Tax, Before Tax, Supplemental, or Company
         contributions pursuant to Section 4.01 repaid by
         the Participant;

   (ii)  an amount in the Grace Common Stock Fund within
         the Savings Plan equal to the dollar value (at the
         time of forfeiture) of the Grace Stock (or, if
         such forfeiture occurred prior to May 25, 1988,
         the dollar value of the shares of common stock of
         Grace Connecticut) (or other amount) forfeited by

GR 001784

the Participant.

11.04 In the event of re-employment by an Employing Unit in a status covered by the Plan of a former Participant who terminated service prior to attaining a 100% Vested Interest in his Account, elected to receive installment payments, and incurred a One-Year Break in Service (in the case of re-employment prior to January 1, 1985) or 5 consecutive One-Year Breaks in Service (in the case of re-employment on or after January 1, 1985), no reinstatement of the dollar amount forfeited by him upon such Breaks in Service shall be permitted and the balance standing to his credit upon re-employment shall constitute a separate account in which he is fully vested.

11.05 If a Participant commences U.S. military service (in 1994 or thereafter), including service with the National Guard, and he applies to become reemployed by the Company within a specified time after that service ends (see below), he will be permitted to make contributions to the Plan to account for the period that he was in the service ("Make-Up Contributions"), which will be in addition to the contributions that he may make under the other provisions of the Plan. The Make-Up Contributions shall not be in excess of the amount which the Participant would otherwise have been permitted to make to the Plan if he was continuously employed by the Company while he was in the service. Any Make-Up Contributions must be made within the period that begins on the date the Participant commences reemployment with the Company and

- 125 -

ends 5 years later. (However, if the Participant's period
of service was less than 1 2/3 years, then the period for
Make-Up Contributions will commence on the date he
commences reemployment but the period's length will only
be 3 times the length of the period of his military
service.)

In order for this provision to apply, the Participant
must apply for reemployment with the Company within the
period specified as follows:

| Period Of Military Service | Required Reemployment Application Date |
|---|---|
| Less than 31 days | The beginning of next regularly scheduled work period after military service ends |
| 31 to 180 days | Within 14 days of the date military service ended |
| More than 180 days | Within 90 days of the date military service ended |

Also, this provision shall not apply to an individual who
serves in the U.S. military service for greater than 5
years.

Notwithstanding any provision of the Plan to the
contrary, contributions, benefits, and service credit
with respect to qualified military service will be
provided in accordance with Code section 414(u).

- 126 -

## Section 12

### Administration of the Plan

12.01   A Trust Fund shall be established by a Trustee or
Trustees appointed from time to time by the Board of
Directors.   All assets of the Plan shall be deposited in
the Trust Fund.   The corpus and income of the Trust Fund
shall be used to provide benefits under the Plan and to
defray the reasonable expenses of Plan administration and
no part thereof shall be used for or diverted to purposes
other than for the exclusive benefit of Participants,
Inactive Participants and their beneficiaries, except as
provided in Section 4.04.   Effective July 1, 1989, the
Trustee of the Plan was appointed as the Trustee of the
ESOP portion of the Trust Fund.

12.02   The Trustee or Trustees shall have sole authority to
purchase or sell Grace Stock required for the purposes of
the Plan from or to any person, including the Company,
except that (i) no such stock shall be purchased from or
sold to the Company for the account of the Grace Common
Stock Fund and (ii) no commission shall be charged with
respect to a purchase of Grace Stock from the Company for
the account of the ESOP.   The Trustee or Trustees also
shall take all action necessary to implement any
investment determinations of the Investment Committee or
of the Investment Manager(s) and shall conform to
procedures established by the Administrative Committee
for disbursement of funds of the Plan.   The Trustee or
Trustees shall not be liable for any act performed while

- 127 -

subject to directions of the Investment Committee, the
Investment Manager(s) or the Administrative Committee
made in accordance with the terms of the Plan.

12.03    An Investment Committee (or any appropriate designee of
that Committee) shall be appointed from time to time by
the Board of Directors (or its designee) to serve at its
pleasure. The Investment Committee may authorize any
member of the Investment Committee or any agent or other
designee to execute or deliver any instrument or make any
payment on its behalf and/or to take other actions on its
behalf; and the Committee (or such member, agent or other
designee) may employ counsel and agents and such
clerical, accounting and actuarial services as any of
them may require. A majority of the members of the
Investment Committee shall constitute a quorum for the
transaction of business, and the action of a majority of
the members present at a meeting shall constitute the
action of the Investment Committee.   In lieu thereof the
action of a majority of the members of the Investment
Committee expressed in writing without a meeting shall
constitute the action of the Investment Committee.
Effective June 14, 1995, the Investment Committee shall
be the Investment and Benefits Committee as created by
the Board of Directors as of that date.

12.04    (a)      The Investment Committee shall have the authority
and discretion to manage that portion of the assets of
the Trust Fund comprising Fixed Income Fund except that
it may appoint one or more Investment Managers (as
defined by ERISA section 3(38)) who shall have the

- 128 -

authority and discretion to manage that portion of the
assets of the Trust Fund comprising the Fixed Income
Fund.    In exercising the authority and discretion
contained in this subsection, the Investment Committee
and Investment Manager(s) shall be limited only to the
extent provided in Section 5.01 for the investment of the
Fixed Income Fund.    The Investment Committee shall also
have the authority to select and change the Investment
Funds available hereunder.    The Investment Committee
shall not retain the authority to manage the Grace Stock
Fund, to the extent that an Independent Investment
Manager has been retained to manage that Fund, in
accordance with Section 12.04(b).

(b)    The Investment Committee shall also have the
authority to appoint one or more Independent Investment
Managers who shall have the authority and discretion to
manage the Grace Stock Fund, provided that any proceeds
from Grace Stock sold from the Fund at the direction of
the Independent Investment Manager shall be allocated to
the Fixed Income Fund and the Independent Investment
Manager shall not have any authority or discretion to
manage those proceeds upon such allocation.
Notwithstanding any other provision of the Plan to the
contrary, during any such appointment, the Independent
Investment Manager shall have the following authority and
duties:

(i)    the continuous authority and duty to
determine the extent that the continued
retention of shares of Grace Stock within

- 129 -

the Grace Stock Fund is not consistent with
the applicable provisions of the Employee
Retirement Income Security Act ("ERISA"),
and to take actions in this regard that it
deems appropriate; including the authority
to dispose of Grace Stock held within the
Grace Stock Fund and to close the Grace
Stock Fund to participant trading;

(ii)      the authority to direct trades of Grace
Stock through dealers or firms that it
selects; and

(iii)     the duty and authority to vote the Grace
Stock within the Grace Stock Fund in a
manner it decides is appropriate in its sole
discretion, in the event of a tender offer
(as defined in Section 17.01) or other event
that would have substantially the same
effect as a disposition of substantially all
of the assets of Grace, but only to the
extent it determines that failure to
exercise such authority would be
inconsistent with the applicable provisions
of ERISA.

The Investment Committee shall also have the authority to
amend the Trust, and enter into any other agreements it
deems necessary to effectuate an appointment of an
Independent Investment Manager for the Grace Stock Fund.

If any provision of this Plan is inconsistent with any
provision of the Trust, as amended to effectuate the

- 130 -

retention of an Independent Investment Manager, the Trust
provision shall control.

12.05   Grace shall have prepared annually for the Investment
Committee and the Board of Directors a report giving a
summary of the assets and liabilities of the Plan and a
brief account of the operation of the Plan for the
preceding year, and any further information which the
Investment Committee may deem advisable or which either
Board of Directors may require.

12.06   The general administration of the Plan and the
responsibility for carrying out its provisions (excluding
any decisions as to investment and reinvestment of the
Trust Fund) shall be placed in an Administrative
Committee (or any appropriate designee of that Committee)
consisting of not less than three persons who shall be
appointed from time to time by the Board of Directors of
Grace (or its designee) to serve at its pleasure.   The
Administrative Committee may authorize any member of the
Administrative Committee or any agent or other designee
to make any payment on its behalf and/or to take other
actions on its behalf; or to execute or deliver any
instrument or do any act on its behalf; and may employ
counsel and agents and such clerical, accounting and
actuarial services as any of them may require.   Effective
June 14, 1995, the Administrative Committee shall be the
Investment and Benefits Committee as created by the Board
of Directors as of that date.

- 131 -

12.07   The Administrative Committee shall hold meetings upon
        such notice, at such place and at such time as it may
        determine.  A majority of the members of the
        Administrative Committee shall constitute a quorum for
        the transaction of business, and the action of a majority
        of the members present at a meeting shall constitute the
        action of the Administrative Committee.  In lieu thereof,
        the action of a majority of the members of the
        Administrative Committee expressed in writing without a
        meeting shall constitute the action of the Administrative
        Committee.

12.08   Subject to the limitations of the Plan, the
        Administrative Committee from time to time shall adopt
        administrative rules and regulations and prescribe such
        processes, forms and applications as are appropriate to
        the administration of the Plan.  The Administrative
        Committee (or its designee) shall have full and exclusive
        authority to construe the terms of the Plan, to determine
        entitlement to allocations of contributions and to
        distributions of benefits to Participants, Inactive
        Participants, Beneficiaries and all other persons and to
        adjudicate all disputed claims for benefits filed under
        the Plan.  Every finding, decision and determination made
        by the Administrative Committee (or its designee) shall,
        to the full extent permitted by law, be final and binding
        upon all parties, except to the extent found by a court
        of competent jurisdiction to constitute an abuse of
        discretion.

GR 001792

- 132 -

12.09   The Administrative Committee shall determine the
        procedures to be followed in connection with the
        disbursement of the funds of the Plan.

12.10   The Investment Committee, the Administrative Committee
        and any Company, and any member, director, officer or
        employee thereof, shall be entitled to rely conclusively
        on all tables, valuations, certificates, opinions and
        reports which shall be furnished by any expert who shall
        be employed or engaged by Grace, the Investment Committee
        or the Administrative Committee.

12.11   The Administrative Committee (or its designee), in
        accordance with DOL Reg. §2560.503-1, has the authority
        to determine eligibility for participation and the
        amount and kind of benefits payable to any Participant,
        Spouse, or beneficiary, and interpretation of the Plan.

        (a)   Each person who claims entitlement to any right or
              benefit under the Plan, or his duly authorized
              representative (a "Claimant"), may submit a claim
              for benefits under the Plan.  All claims shall be
              submitted in writing to the Administrative Committee
              and shall be accompanied by such information and
              documentation as the Administrative Committee
              determines is required to make a ruling on the
              claim.  Upon receipt of a claim hereunder, the
              Administrative Committee shall consider the claim
              and shall render a decision and communicate the same
              to the Claimant:

- 133 -

(1) the specific reason(s) for the adverse determination;

(2) reference to the specific Plan provisions on which the determination is based;

(3) a description of any additional material or information necessary for the Claimant to perfect the claim and an explanation of why such material or information is necessary; and

(4) a description of the Plan's appeal procedures and the time limits applicable to such procedures, including a statement of the Claimant's right to bring a civil action under Section 502(a) of ERISA following an adverse benefit determination on review.

(b) Appeals Procedure. When there is an adverse benefit determination of a claim, the Claimant or duly authorized representative shall have the right to file an appeal with the Administrative Committee as provided in ERISA §503 and DOL Reg. §2560.503-1.

GR 001794

- 134 -

## Section 13

Certain Rights and Obligations

13.01  It is the intention that the Plan continue and that
       contributions be made regularly each year, but all
       contributions under the Plan shall be voluntary, and not
       a legal obligation.

13.02  The Plan may be terminated at any time by the Board of
       Directors.  Upon termination, partial termination or
       complete discontinuance of contributions, the rights of
       all Participants and Inactive Participants (as to whom
       the Plan has terminated in the case of a partial
       termination) to the amounts credited to their Accounts
       shall be fully vested and nonforfeitable.

13.03  (a)    In the event of the divestment (as defined
              hereafter) of a Company or an Employing Unit (and,
              consequently, the employees of such Company or
              Employing Unit), the authorization of such Company
              or Employing Unit to participate in the Plan shall
              be automatically withdrawn.  For purposes of
              Section 13.03, a divestment of a Company or an
              Employing Unit occurs when (1) substantially all
              the assets of such Company or such Employing Unit
              are sold or transferred to an entity which is not
              treated as the same "employer" as Grace under
              either section 414(b) or (c) of the Code, or (2) a
              Company is merged into an entity which is not
              treated as the same "employer" as Grace under

GR 001795

- 135 -

either section 414(b) or (c) of the Code, or (3)
all or part of the stock of (or other equity
interest in) a Company is sold or transferred with
the consequence that the Company is no longer
treated as the same "employer" as Grace under
either section 414(b) or (c) of the Code. In the
event of such a divestment, the Employees of such
Company or Employing Unit shall cease to be
Participants in the Plan and shall be deemed to
have incurred a Termination of Service as of the
date of such divestment.

(b)     Any Company may, with the consent of the Board of
        Directors, withdraw from the Plan at any time, and
        the Board of Directors may in its discretion at
        any time withdraw the authorization of any Company
        or any Employing Unit to participate in the Plan.
         In the event of such a withdrawal, the Employees
        of such Company or Employing Unit shall cease to
        be eligible to participate in the Plan as of the
        date of the withdrawal.

13.04   In the case of any merger or consolidation with, or
        transfer of assets or liabilities of the Plan to any
        other plan, each Participant will be entitled to receive
        (if the Plan then terminated) a benefit immediately after
        the merger, consolidation, or transfer which is equal to
        or greater than the benefit he would have been entitled
        to receive immediately before such merger, consolidation,
        or transfer (if the Plan had then terminated).

GR 001796

- 136 -

13.05   The establishment of the Plan shall not be construed as
        conferring any legal rights upon an Employee or any
        person for a continuation of employment, nor shall it
        interfere with the rights of the Company to discharge any
        Employee and to treat him without regard to the effect
        which such treatment might have upon him under the
        provisions of the Plan.

GR 001797

- 137 -

## Section 14

Amendments

14.01    Grace reserves the right at any time and from time to
         time by action of its Board of Directors or its designee
         to modify or amend in whole or in part any or all of the
         provisions of the Plan; provided, that no modification or
         amendment may be made which will deprive any Participant,
         Inactive Participant, former Participant or other person
         receiving a benefit, of any benefit under the Plan to
         which he would otherwise be entitled by reason of the
         accumulated funds held under the Plan on his account at
         that time, and provided that no such modification or
         amendment shall make it possible for any part of the
         funds of the Plan to be used for, or diverted to,
         purposes other than the exclusive benefit of
         Participants, Inactive Participants, former Participants
         and other persons entitled to benefits under the Plan
         (except as provided in Section 4.04). Notwithstanding
         the foregoing, any modification or amendment of the Plan
         which is deemed necessary or appropriate to bring the
         plan into conformity with the Code or regulations
         thereunder may be made (retroactively if necessary) in
         order to qualify the Plan under the Code and regulations
         thereunder.

- 138 -

## Section 15

### Non-Alienation of Benefits

15.01    No benefit under the Plan shall be subject in any manner
to anticipation, alienation, sale, transfer, assignment,
pledge, encumbrance or charge, and any attempt so to
anticipate, alienate, sell, transfer, assign, pledge,
encumber or charge the same shall be void; nor shall any
such benefit be in any manner liable for or subject to
the debts, contracts, liabilities, engagements or torts
of the person entitled to such benefit.  Notwithstanding
the foregoing, the Plan shall comply with a valid Federal
tax levy which is enforced against a Participant's or
Inactive Participant's Account under section 6331 of the
Code and shall not be liable in any manner to any person
for effectuating such compliance.

15.02    If any Participant, Inactive Participant, former
Participant or any other person entitled to benefits
under the Plan becomes bankrupt or makes an assignment
for the benefit of creditors, or in any way suffers a
lien or judgment against his personal assets to exist or
attempts to anticipate, alienate, sell, transfer, assign,
pledge, encumber or charge any benefit under the Plan,
then such benefit shall, in the discretion of the
Administrative Committee, cease and terminate, and in
that event the Administrative Committee may hold or apply
the same or any part thereof to or for the benefit of
such Participant, Inactive Participant or former
Participant, his spouse, descendants (including any

- 139 -

person adopted by such person or his descendants, and
descendants of such adopted persons), other dependents,
other persons or any of them, in such manner and in such
proportion as the Administrative Committee may think
proper.

15.03   Notwithstanding the provisions of Section 15.01 and
15.02, the Administrative Committee shall comply with the
provisions of any qualified domestic relations order
described in section 414(p) of the Code and shall
establish a procedure to determine the qualified status
of domestic relations orders and to administer distribu-
tions under qualified domestic relations orders.
Specifically, in the event that a qualified domestic
relations order requires the immediate distribution of
any portion of a Participant's or Inactive Participant's
Account to an alternate payee prior to the earlier of the
date on which the Participant or Inactive Participant
incurs a Termination of Service or the date on which he
attains the "earliest retirement age," as defined in
section 414(p)(4)(B) of the Code, the Administrative
Committee shall comply with such order.   Furthermore, in
the event that a qualified domestic relations order
requires the division of a Participant's or Inactive
Participant's Account for the benefit of an alternate
payee, a separate Account shall be established for such
alternate payee and such alternate payee shall thereafter
be subject to all of the provisions of the Plan including
the provisions of Sections 5.04 and 5.07 regarding
transfers among the Plan's investment funds and Section 9
regarding withdrawals, as if the alternate payee were an

- 140 -

Inactive Participant, except that such alternate payee shall not be eligible to receive a distribution under Section 8 of the Plan until the earlier of the date on which the Participant or Inactive Participant incurs a Termination or Service or the date on which he attains the "earliest retirement age," as defined in section 414(p)(4)(B) of the Code.

GR 001801

- 141 -

## Section 16

### Top-Heavy Provisions

16.01  If the Plan becomes top-heavy (as defined in Section
       416(g) of the Code) with respect to any Plan Year on
       account of the accrued benefits of key employees (as
       defined in section 416(i) of the Code), then the
       provisions set forth in Section 16.06, 16.07, 16.08 and
       16.09 shall become applicable.

16.02  The Plan is required to be aggregated for purposes of
       Section 16 with (i) each other plan maintained by the
       Company in which a key employee participates, and (ii)
       each other plan maintained by the Company which enables
       any plan in which a key employee participates to meet the
       requirements of section 401(a)(4) or section 410 of the
       Code.

16.03  As elected by the Company, the Plan is permitted to be
       aggregated for purposes of Section 16 with one or more
       other plans maintained by the Company which satisfy the
       requirements of section 401(a)(4) and section 410 of the
       Code when considered together with the Plan and those
       other plans required to be aggregated under Section
       16.02.

16.04  The determination date with respect to a Plan Year is (i)
       the last day of the preceding Plan Year, or (ii) in the
       case of the first Plan Year, the last day of such Plan
       Year.

16.05   For purposes of Section 16, the present value of an
        accrued benefit is the sum of the account balance as of
        the most recent valuation date occurring within a
        12-month period ending on the determination date and an
        adjustment for contributions due as of the determination
        date as described in the section 416 regulations.

16.06   If the Plan is deemed top-heavy with respect to a Plan
        Year, the following provisions shall apply to Company
        contributions (excluding salary reduction contributions
        prior to January 1, 1985, but including such
        contributions on and after January 1, 1985) under the
        Plan in respect of such a Plan Year for a Participant who
        is not a key employee and who is employed by the Company
        on the last day of the Plan Year and for an Employee of
        an Employing Unit who is not a key employee, is eligible
        to participate in the Plan, and has elected not to
        participate in the Plan:   such Company contributions (and
        forfeitures) shall be equal to the greater of (i) the
        Company contributions (and forfeitures) which would
        otherwise be made without regard to Section 16, or (ii)
        3% of his compensation from the Company paid during such
        Plan Year (or lesser percentage contributed for a key
        employee determined under the section 416 regulations).
        For Plan Years beginning on or after January 1, 2002,
        employer matching contributions shall be taken into
        account for purposes of satisfying the minimum
        contribution requirements of Code section 416(c)(2) and
        the Plan.   The preceding sentence shall apply with
        respect to matching contributions under the Plan or if

GR 001803

- 143 -

the Plan provides that a minimum contribution requirement shall be met in another plan, such other Plan. Employer matching contributions that are used to satisfy the minimum contribution requirements shall be treated as matching contributions for purposes of the actual contribution percentage test and other requirements of Code section 401(m). If such a Participant is also a participant in a defined benefit plan maintained by the Company which is also top-heavy, Section 16.06 shall not apply, and instead the top-heavy provisions of such defined benefit plan shall apply to him.

16.07  For Plan Years beginning before 1989, if the Plan is deemed top-heavy with respect to a Plan Year, compensation taken into account under the Plan shall not exceed the amount determined under section 416(d) of the Code; provided, however, that no benefit accrued prior to a Plan Year in which the Plan was top-heavy shall be reduced by virtue of the limitation herein.

16.08  If the Plan is deemed top-heavy with respect to a Plan Year beginning prior to January 1, 2000, the denominators of the defined benefit and defined contribution fractions applicable with respect to a Participant under section 415(e) of the Code shall be determined by substituting the factor "1.0" for the factor "1.25" therein, and by substituting the amount "$41,500" for the amount "$51,875" in the denominator of the defined contribution fraction in the event that the transition fraction under section 415(e)(6) of the Code is used. Notwithstanding the foregoing, the accrued benefit of a Participant as of

- 144 -

the end of the Plan Year prior to the Plan Year in which
the Plan is deemed top-heavy shall not be reduced on
account of Section 16.08.

16.09   For purposes of Section 16, the Company includes any
        other corporation, trade, or business treated as the same
        "employer" as the Company under section 414(b),(c), or
        (m) of the Code.

GR 001805

- 145 -

## Section 17

Tender Offers

17.01   The provisions of this Section 17 shall apply in the
        event that any entity, either alone or in conjunction
        with others, makes a tender or exchange offer for, a
        request or invitation for tenders of, or otherwise offers
        to purchase or solicits offers to sell Grace Stock, which
        offer, request, invitation or solicitation is made to
        holders of Grace Stock generally (herein jointly and
        severally referred to as a "tender offer"); except to the
        extent that the provisions of Section 12.04(b) are
        applicable to the tender offer.

17.02   The Trustee may not take any action in response to a
        tender offer except as otherwise provided in this Section
        17.  The Trustee shall promptly furnish to each
        Participant and Inactive Participant who has shares of
        Grace Stock credited to his Account notice of any tender
        offer, including instructions as to how the Participant
        or Inactive Participant is to give directions to the
        Trustee in response to such tender offer.  Each
        Participant and Inactive Participant may, at any time and
        from time to time during the pendency of a tender offer,
        (i) direct the Trustee to sell, offer to sell, exchange
        or otherwise dispose of all or any portion of the Grace
        Stock credited to such Participant's or Inactive
        Participant's Account or (ii) withdraw or revoke any such
        direction, in accordance with the terms of such tender
        offer and the provisions of this Section 17; provided,

- 146 -

however, that such directions from any individual
Participant or Inactive Participant shall be confidential
and shall not be divulged by the Trustee to anyone,
including the Company or any director, officer, employee
or agent of the Company, it being the intent of this
provision of this Section 17.02 to ensure that the
Company (and its directors, officers, employees and
agents) cannot determine the direction given by any
Participant or Inactive Participant. Such directions
shall be in such form and shall be filed in such manner
and at such time as the Trustee may reasonably prescribe
in accordance with the terms of such tender offer.

17.03  The Trustee shall, in the manner and within the time
prescribed by the terms of the tender offer, tender,
sell, offer to sell, submit for exchange or otherwise
dispose of the Grace Stock credited to Participant or
Inactive Participant Accounts in accordance with the
directions given (and not withdrawn or revoked) under
Section 17.02. The proceeds of a disposition directed by
a Participant or Inactive Participant from his Account
under this Section 17 shall continue to be held in his
Account and be governed by the provisions of Section
17.05 and other applicable provisions of the Plan.  Such
proceeds may, in the discretion of the Trustee,
constitute one or more separate investment funds under
the Plan governed, nevertheless, by the provisions of
Section 17.05 and other applicable provisions of the
Plan.

- 147 -

17.04    To the extent to which a Participant or Inactive
         Participant does not direct the Trustee, or issues
         invalid directions to the Trustee, pursuant to Section
         17.02, such Participant or Inactive Participant shall be
         deemed to have directed the Trustee that such shares
         remain invested in Grace Stock subject to all provisions
         of the Plan.

17.05    Grace may direct the substitution of new employer
         securities for Grace Stock or for the proceeds of any
         disposition of Grace Stock to the extent provided in the
         Plan.  Pending the substitution of new employer
         securities or the termination of the Plan and Trust, the
         Trust Fund may be invested in such securities as Grace
         (or other fiduciary identified by Grace for such purpose)
         may from time to time direct; provided, however, in the
         absence of any direction from Grace or other fiduciary,
         the Trustee may invest the cash proceeds in short-term
         securities issued by the United States of America or any
         agency or instrumentality thereof or any other
         investments of a short-term nature, including corporate
         obligations or participations therein and interim
         collective or common investment funds.

17.06    In the case of Grace Stock held within the Trust Fund
         that has not been credited to Participant or Inactive
         Participant Accounts, the Trustee shall, in the manner
         and within the time prescribed by the terms of the tender
         offer, tender, sell, offer to sell, submit for exchange
         or otherwise dispose of only that number of shares of
         such stock that bears the same ratio to the total number

GR 001808

- 148 -

of such shares as the number of shares credited to
Participant and Inactive Participant Accounts for which
the Trustee has received valid directions (which have not
been withdrawn or revoked) from Participants and Inactive
Participants pursuant to Section 17.02 bears to the total
number of shares credited to Participant and Inactive
Participant Accounts.  The proceeds of a disposition of
Grace Stock made under this Section 17.06 pursuant to a
tender offer shall be held by the Trustee subject to the
provisions of the trust instrument, the Plan and any
applicable loan agreement.

- 149 -

Section 18

Loans

18.01    A Participant may apply, pursuant to the procedure
         established in accordance with Section 18.04 for a loan
         from his Account.  Loans shall be made available to all
         Participants on a reasonably equivalent basis, subject to
         the following:

    (1)    Each loan shall be evidenced by a negotiable
           promissory note;

    (2)    Each loan shall bear a reasonable rate of interest;

    (3)    Each loan shall be adequately secured; provided that
           no loan may be secured, in whole or in part, by
           property other than the Participant's Account;

    (4)    No loan to a Participant shall exceed the value of
           the vested Account balance of the Participant at the
           time the loan is made;

    (5)    No loan to any Participant can be made to the extent
           that such loan when added to the outstanding balance
           of all other loans to the Participant would exceed
           the lesser of (a) $50,000 reduced by the excess, if
           any, of the highest outstanding balance of loans
           during the one-year period ending on the day before
           the loan is made, over the outstanding balance of
           loans from the Plan on the date the loan is made; or

- 150 -

(b) one-half the present value of the Participant's nonforfeitable accrued benefit under the Plan or, if greater, the total accrued benefit up to $10,000; and for purposes of this clause (5), all loans from all plans qualified under Code section 401(a) of the Company or an affiliate of the Company shall be aggregated;

(6)   Each loan must, by its terms, require that repayment of principal and interest be amortized in level payments, not less frequently than quarterly, over a period not extending beyond five years from the date of the loan; provided that the repayment term may be extended to a period not exceeding 20 years if the loan is used to acquire a dwelling unit which within a reasonable time (determined at the time the loan is made) will be used as the principal residence of the Participant; and

(7)   No loan, shall be made available to "highly compensated employees" (as defined by Code section 414(q) and the regulations thereunder) in an amount greater than the amount made available to other Employees.

GR 001811

- 151 -

18.02  (1)  If a Participant requests a loan, the funds to be
            loaned shall be taken from the accounts, and the
            Investment Funds, in the order specified below:

| | | | |
|---|---|---|---|
| 1. | before-tax savings account | 1. | Fidelity Contrafund |
| 2. | Company contribution account | 2. | Fidelity OTC Portfolio |
| 3. | after-tax savings made after December 31, 1986 and related earnings | 3. | Fidelity Blue Chip Growth Fund |
| 4. | after-tax savings made before January 1, 1987 and related earnings | 4. | Fidelity Growth & Income Portfolio |
| 5. | rollover account | 5. | Fidelity Balanced Fund |
| 6. | supplemental account | 6. | Fixed Income Fund |
| | | 7. | ADS Fund |
| | | 8. | Grace Stock Fund |
| | | 9. | Company Contribution Fund |

  (2)  Loan repayments (including interest) shall be
       credited to the Participant's Account in the
       following order:

       1.  supplemental account
       2.  rollover account
       3.  after-tax savings made before January 1, 1987
       4.  after-tax savings made after December 31, 1986

- 152 -

    5.  Company contribution account

    6.  before-tax savings account

18.03  The promissory note executed by the Participant shall be
held by the Trustee as an asset of the Account. Any loss
caused by default on a Participant's loan obligation shall
be borne solely by that Account. Anything herein to the
contrary notwithstanding, in the event of such a default,
foreclosure on the promissory note and attachment of
security will not occur until a distributable event occurs
under the Plan with respect to the Participant involved.

18.04  The Administrative Committee shall prepare a written
document setting forth the following information regarding
loans from the Plan and such other information as the
Administrative Committee deems relevant:

    (1)    The identity of the person or positions authorized
to administer the loan program;

    (2)    A procedure for applying for loans;

    (3)    The basis on which loans will be approved or denied;

    (4)    Limitations (if any) on the types and amount of
loans offered;

    (5)    The procedure under the program for determining a
reasonable rate of interest;

    (6)    The events constituting default and the steps that

- 153 -

will be taken to preserve Plan assets in the event
of such default; and

(7)   The minimum loan amount.

The provisions of that document are incorporated herein by
this reference; provided, however, that if any provision
of that document conflicts with any other provision of the
Plan, the other Plan provision shall control.

18.05   Following a Participant's death, the provisions of this
Section 18 shall apply to the Participant's beneficiary as
if the beneficiary were the Participant, but only if that
beneficiary is a "party in interest" (as defined in
section 3(14) of ERISA).

18.06   The provisions of this Section 18 shall apply to a former
Participant as if that former Participant were a
Participant, but only if that former Participant is a
"party in interest" (as defined in section 3(14) of
ERISA).

GR 001814

## EXHIBIT A

Following is a list of transactions suspended during the Transition Period:

1) Transfers of existing Account balances between Funds (and, if applicable, the ESOP);

2) Changes with regard to the allocation of contributions among the Funds;

3) Distributions of lump-sum distributions; and

4) Distributions of installment payments.

The following provisions are effective for the period after the Transition Period and prior to the commencement of the Conversion Period:

The sum of Before Tax Contributions and After Tax Contributions to a Participant's Savings Plan Account (and, separately the Rollover Contributions to a Participant's or Inactive Participant's Savings Plan Account) shall initially be invested in whole or in part (in multiples of 5%) in Former Fund A, Former Fund B, Former Fund C, or Former Fund D within the Savings Plan and, in the case of Rollover Contributions only, in the ESOP portion of the Trust Fund, pursuant to the election of the Participant. Such election shall continue until changed by the Participant.

GR 001815

A Participant may change any election pursuant to this
paragraph on any Business Day to another election permitted
under this paragraph effective on the Business Day on which
the Participant notifies the Recordkeeper of such change by
telephonic instruction, if such notice is received by the
Recordkeeper before the latest time of day agreed to by
Grace and the Recordkeeper for same day processing;
otherwise, such change will be effective on the immediately
succeeding Business Day.

A Participant, Inactive Participant, or a former Participant
who has incurred a Termination of Service may, on any
Business Day, elect to transfer all or a portion (in
multiples of 5%, or in whole dollar amounts) of the existing
balance of his Account in Former Fund A, Former Fund B,
Former Fund C, or Former Fund D within the Savings Plan,
among any of the other Former Funds within the Savings Plan
attributable to the following categories of contributions
separately: (i) Before Tax Contributions and After Tax
Contributions, in the aggregate, and (ii) Supplemental
Contributions and Rollover Contributions, in the aggregate.
Such transfer shall occur on the Business Day on which the
Participant, Inactive Participant, or former Participant
notifies the Recordkeeper of such transfer election by
telephonic instruction, if such notice is received by the

Recordkeeper before the latest time of day agreed to by
Grace and the Recordkeeper for same day processing;
otherwise, such change will be effective on the immediately
succeeding Business Day.

A Participant or Inactive Participant who has attained age
50, may, one time during each Plan Year, elect to transfer
to Former Funds A, B, C and/or D within the Savings Plan all
or a portion (in multiples of 5% or in whole dollar amounts)
of his Account Balance invested in the ESOP and Former
Fund C, in the aggregate, which is attributable to Company
contributions pursuant to Section 4.01 (as effective after
the Transition Period but before the Conversion Period),
and/or to transfer all or a portion (in multiples of 5% or
in whole dollar amounts) of his Account Balance invested in
Former Fund A, Former Fund B and/or Former Fund D within the
Savings Plan as a result of a previous investment transfer
from the ESOP and Former Fund C to any of the other Former
Funds within the Savings Plan (except Former Fund C) and/or
to the ESOP.  Any such transfer will occur on the Business
Day on which the Participant notifies the Recordkeeper of
such transfer election by telephonic instruction, if such
notice is received by the Recordkeeper before the latest
time of day agreed to by Grace and the Recordkeeper for same
day processing; otherwise, such change will be effective on
the immediately succeeding Business Day.  The foregoing

provisions of this paragraph shall also apply to a former
Participant who has incurred a Termination of Service,
regardless of attained age, except that any such former
Participant may make investment transfer elections on any
Business Day without regard to the once per year limitation
set forth above.

GR 001818

EXHIBIT B


Following is a list of transactions suspended during the
Conversion Period:

1)    Transfers of existing Account balances between Former
      Funds and/or Investment Funds (and/or, if applicable,
      the ESOP);

2)    Distributions of lump-sum distributions; and

3)    Distributions of withdrawals.