**EXHIBIT 43**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KERI EVANS, et al., )<br><br>Plaintiffs, )<br><br>v. )<br><br>JOHN F. AKERS, et al., )<br><br>Defendants. )<br>————————————————— )<br>LAWRENCE W. BUNCH, et al., )<br><br>Plaintiffs, )<br><br>v. )<br><br>W. R. GRACE & CO., et al., )<br><br>Defendants. ) | **Consolidated Under<br>Case No. 04-11380-WGY** |

### BUNCH PLAINTIFFS' ANSWERS TO
### DEFENDANTS' INTERROGATORIES

Plaintiffs Lawrence W. Bunch, Jerry L. Howard, Sr., and David Mueller ("Bunch Plaintiffs") objects and answers Defendants' Interrogatories as follows:

### GENERAL OBJECTIONS

The following general objections are made to each Request. Where a specific objection is asserted in any response, that assertion does not waive other objections as to that Request.

1.      Bunch Plaintiffs object to the Requests to the extent they seek documents that are not relevant to the subject matter of this litigation or not reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b).

2.      Bunch Plaintiffs object to the Requests to the extent they seek information that is privileged by statute or common law, including privileged communications between attorney and

client or attorney work product. Fed. R. Civ. P. 26(b)(3). Such material or information will not be produced, and any inadvertent disclosure of such protected material or information is not intended and should not be construed to constitute a waiver, either generally or specifically, with respect to such information or material, or its subject matter. By making these responses, Bunch Plaintiffs are not waiving or failing to assert any privilege.

3.     Bunch Plaintiffs object to the Interrogatories to the extent they are unduly burdensome, harassing, oppressive or overbroad. Fed. R. Civ. P. 26(c).

4.     Bunch Plaintiffs object to the Interrogatories to the extent they are vague or ambiguous, or contain terms or phrases that are undefined and subject to varying interpretations or meanings, and may, therefore, make responses misleading or incorrect.

5.     Bunch Plaintiffs object to the Definitions and Instructions to the extent they purport to impose obligations beyond the requirements of the Federal Rules of Civil Procedure.

6.     Bunch Plaintiffs object to the Definitions and Instructions to the extent they are argumentative, lack foundation or incorporate allegations and assertions that are in dispute. Any information provided by Bunch Plaintiffs is not and shall not be deemed to be an admission or acknowledgement by Bunch Plaintiffs as to the truth or accuracy of the allegations or assertions contained in the Definitions, Instructions, or Interrogatories.

7.     Bunch Plaintiffs object to the Interrogatories to the extent they seek non-public, confidential trade secret, business or financial information about Bunch Plaintiffs or personal financial or other private information. Any responsive information agreed to be provided will be provided only pursuant to the Protective Order entered in this action.

8.     Bunch Plaintiffs reserve the right at any time to revise, correct, add to or clarify its objections or responses to Defendants' Interrogatories, and the failure to make any general or specific objection shall not be deemed a waiver of any such objection.

9.    All of Bunch Plaintiffs' General Objections shall be continuing throughout the responses to the specific Requests set forth below, even when not further referred to in those responses.

## INTERROGATORIES

1.    Identify all persons who are likely to have personal knowledge of any fact alleged in the Complaint or any information revealed in the process of responding to these Interrogatories, including but not limited to all individuals and/or organizations who answered, or were consulted concerning the preparation of answers to these Interrogatories and all persons who may be called to testify in any proceeding in this Action, whether orally or by affidavit or declaration.  For all persons identified, describe the subject matter of the personal knowledge possessed by each such person, the information provided, and/or the testimony anticipated.

**ANSWER:**

Counsel for Plaintiffs, based on their investigation provided information used in answering the interrogatories. Additionally, the named Plaintiffs possessed information concerning their investments in the Plan and their selection to participate in the Grace Stock Fund. It is premature based on the current record and state of discovery to identify any specific individuals who may provide testimony in this matter.  However, Plaintiffs anticipate testimony from the named defendants, the members of the Investment and Benefits Committee, the individuals at State Street who served on the Independent Fiduciary Committee and the named Plaintiffs.

2.    Separately for each individual Grace Defendant identified in Paragraphs 19 through 27 of the Complaint, identify the following information:  (a) the specific discretion or control the individual had or exercised with respect to the Plan between January 1999 and May 2004; and (b) each specific action the individual took or failed to take between January 1999 and May 2004 that allegedly constituted a fiduciary breach.  Please identify all material facts, circumstances, and documents that support your answer.

**ANSWER:**

Plaintiffs note that Defendants have not provided all discovery and that discovery is ongoing. Each of the Grace Defendants' actions has set in motion the circumstances for which Plaintiffs complain. Plaintiffs allege and believe that each Grace Defendant exercised discretionary authority over the Plan and the Investment Committee during the Class Period. For example, the individual Grace Defendants were directors of Grace during the relevant period. These directors may have served on the Compensation Committee of the Board. Based on the documents Plaintiffs have reviewed, Plaintiffs understand that the Compensation Committee actively was involved in the decision to engage an Investment Manager for the Grace Stock Fund and the hiring of State Street. Additionally, each of the named Defendants served on the Board of Directors. According to Section 14.01 of the Plan, the Board has responsibility for Amendments to the Plan. The Plan Amendment that allowed State Street unilaterally to liquidate the Grace Stock Fund is a specific action and exercise of control over the plan that contributed to Defendants' breach of fiduciary duty. Additionally, this request is premature in that Plaintiffs anticipate learning additional details during discovery that further identify the actions taken by each Grace Defendant.

3.     Separately for each Grace Defendant, identify specifically when and through what means each Grace Defendant acquired actual knowledge that State Street was engaging in self-dealing, was acting imprudently, or was otherwise breaching its fiduciary duties with respect to the Plan, and state the basis for the contention that each Grace Defendant had actual knowledge of State Street's breach(es).

**ANSWER:**

All Grace Defendants knew that Plan documents created a participant directed plan. The 2003 Summary Plan description, for example, states that "you choose how to invest your savings under the plan…" To permit Plan Participants to choose how to invest their retirement savings, the Grace Defendants, through its Investment and Benefits Committee, established a diversified menu of investment options. The menu consisted of approximately 27 different choices. To the best of Plaintiffs' knowledge, Grace provided all Participants with standard and uniform information concerning their investment choices. The information accurately reflected the risks associated with the investments. The information sought to educate Plan Participants of the need to diversity their investments. For example, in the 2003 Summary Plan description, Grace told participants that "[y]ou decide how to invest your savings and company contributions. Keep in mind that each available investment option has risks and benefits." Similarly, the Grace Defendants through W. Brian McGowen in a March 17, 2003 letter to Plan Participants emphasized the need for each Participant to evaluate whether retention of Grace common stock through the Grace Stock Plan was consistent with his/her investment strategy.

Finally, as a general rule, if you have invested in the Grace Stock Fund or the Company Contribution Fund, you should evaluate the appropriateness of Grace Stock in your investment portfolio, given market conditions, Grace's Chapter 11 status and your own personal risk tolerance.

On January 26, 2004, State Street told Plan Participants, consistent with what Grace Defendant previously told Plan Participants, that it could be prudent for Plan Participants to continue to hold Grace common stock through the Grace Stock Fund. However, consistent with Mr. McGowen's March 17, 2003 correspondence to all Plan Participants, State Street, after conducting substantial due diligence, urged the Plan Participants to consider the known risks associated with ownership of Grace common stock. In particular, State Street stated:

Finally, as a reminder, each participant should continue to consider carefully the advisability of his or her continued investment in the Grace Stock Fund, particularly given the high degree of risk and potential volatility of an investment in stock of accompany that is in the middle of a bankruptcy reorganization proceeding. Each participant should carefully evaluate whether the investment of his or her accounts in the Grace Stock Fund adequately reflects these risks and, in light of his her or her particular situation, provides adequate diversification from an investment perspective.

Plaintiffs assume that each individual Grace Defendant saw this correspondence. Accordingly, Plan Participants, without question understood the risks associated with retention of Grace common stock through the Grace Stock Fund and had the recognized ability to make intelligent and individual investment decisions concerning whether to invest in the Grace Stock Fund or one of the other 27 investments available in the Plan.

Plaintiffs in this action do not allege that any Grace Defendant or any Grace employee possessed any inside nonpublic material information. Plaintiffs do not allege that the Grace Defendants knew material facts that were unknown to Plan Participants or that the Grace Defendants engaged in securities fraud. Accordingly, each Grace Defendant understood that each Plan Participant was capable of making his/her own investment decision regarding whether to retain Grace common stock through the Grace Stock Plan.

All Grace Defendants knew that they owed a fiduciary to duty to Plan Participants. In fact, Grace does not dispute that it and its officers and directors owed a fiduciary duty to the Plan Participants. In the 2003 Summary Plan description it represented to participants that:

In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your plan, called "fiduciaries" of the plan, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries.

In approximately April or May of 2003, all individual Grace Defendants as Members of the Board of Directors knew that Grace had decided to engage the services of an independent

fiduciary to review and manage the Grace Stock Fund. Based on documents including the 2003 Summary Plan description, Grace sought to hire Aon to serve as the independent fiduciary.

> Aon Fiduciary Counselors Inc. is the independent fiduciary for the Grace stock held under the S&I plan. This means that Aon Fiduciary Counselors Inc. is responsible for the operation of the Grace Stock Fund.

For some currently unknown reason, Plaintiffs understand that Aon never became the independent fiduciary. The Grace Board of Directors, with the approval of the Bankruptcy Court, hired the State Street Defendants to serve as the independent fiduciary of the Grace Stock Fund. All Grace Defendants knew that State Street's specific assignment was to determine whether the retention of the Grace Stock Fund was consistent with the applicable provisions of the Employee Retirement Income Security Act ("ERISA").

At approximately the same time that Grace was hiring State Street, Paul Norris during a March 13, 2003 conference and/or conference call stated that the position of Grace and all Grace Defendants constantly has been and would remain that the bankruptcy would not cause Grace stock to become worth zero. During the conference and/or conference call, Mr. Norris emphasized that Grace had "fairly sized" its asbestos liability. Indeed all Grace Defendants knew in a Form 10K filing, that Grace had disclosed that it had a reasonable basis for believing that it could cap its asbestos liability exposure at $1 billion. All Grace Defendants knew that based on Grace's fairly sized asbestos liability, the value of Grace stock for the shareholders including the Grace Stock Fund "would be substantial." Grace Representative Dave Siegel confirmed this sentiment at the March 13, 2003 conference and/or conference call.

At the same time, Grace when it was in the process of hiring an independent fiduciary also told Plan Participants that Grace stock had value. According to a March 17, 2003 letter to Plan Participants from Grace, "…the price of Grace stock no longer reflects the Company's solid operating results."

All Defendants knew when Grace announced to Plan Participants on or about December 8, 2003 the hiring of State Street that State Street might eliminate the Grace Stock Fund. According to a December 8, 2003 letter sent by W. Brian McGowen to all Plan Participants, Grace was pre-approving the liquidation of the Grace Stock Fund.

> Beginning December 15, 2003, State Street rather than Grace will have the responsibility to determine whether the continued investment in Grace stock is consistent with the law governing retirement plans, the Employee Retirement Income Security Act of 1974 (ERISA)…State Street could determine in the future that all or a portion of the grace stock within the Grace Stock Fund should be sold, regardless of the election of the S&I Plan Participants.

On January 26, 2004 Grace sought to justify State Street's inevitable sale of the Plan's investment in Grace by claiming that the pending bankruptcy made ownership in Grace volatile and risky. When it made this statement, Grace and all Grace Defendants reasonably could not have believed that the liquidation of the Plan's entire holdings in Grace was consistent with an investment advisor's fiduciary role or with ERISA:

(a)     Throughout the bankruptcy proceedings, Grace continued to encourage Plan Participants to participate in the Grace Stock Fund. Indeed, Grace continually represented that an investment in Grace Stock could reap significant benefits. If Grace had believed that bankruptcy made Grace stock a risky investment and that the investment advisor had the inherent right to change investment vehicles, why did Grace permit the Plan to continue to hold and to purchase Grace stock before and during the bankruptcy?

(b)     Grace, based on its earlier representations to Plan participants and in public disclosures, understood that the market was failing to reflect the value of its stock and that Grace was achieving solid operating results;

(c)     By the time Grace engaged State Street, Grace understood that an investment in Grace stock had a potential upside and reflected substantial value. Indeed, during the period that Grace was delegating responsibility to State Street, Grace in public filings and presentations represented that it had quantified and capped its potential outstanding asbestos liability.

By February 27, 2004 all Grace Defendants certainly knew that State Street had initiated the liquidation process. On that date, State Street mailed a letter to Plan Participants apprising them of the sale. In the letter, State Street directly stated that Grace executives Brian McGowen and John Forgach had knowledge of the sale.

Despite the above referenced knowledge and the additional knowledge of all Defendants that Plaintiffs expect to learn as discovery continues, all Grace Defendants acquiesced in State Street's sale of Grace Stock. By transferring total discretion to State Street and by admittedly failing to monitor and question State Street, all Grace Defendants abdicated their individual and collective fiduciary duty. At a minimum, all Grace Defendants, in their capacity as fiduciaries, should have questioned State Street as to why State Street had determined that the continued investment in Grace stock by the Grace Stock Plan was inconsistent with ERISA. Each Grace Defendant should have sought an answer as to why Plan Participants suddenly lacked the capacity to "carefully evaluate whether the investment of his or her accounts in the Grace Stock Fund adequately reflects these risks and, in light of his her or her particular situation, provides adequate diversification from an investment perspective."

Grace failed to make these inquiries. This required monitoring and questioning did not occur. All Grace Defendants, therefore, breached their fiduciary duty and are liable as co-fiduciaries.

Moreover, all Grace Defendants certainly understood that the liquidation of the Grace Stock Plan was inconsistent with Plan documents and was inconsistent with prudent investment theory and their individual and collective fiduciary duties. Indeed, if uncertainty and risk of company stock is considered imprudent, why did Grace continue to maintain the Grace Stock Fund when greater bankruptcy uncertainty existed from 2001 until 2003? Additionally, all Grace Defendants knew that the Grace Stock Fund represented a substantial value and that the Grace Stock Fund was only one of several investment options available to Plan Participants. Furthermore, during the four months that State Street served a fiduciary to the Grace Stock Fund,

nothing materially changed at Grace that rendered Grace a prudent investment before the appointment and an imprudent investment after the appointment. Accordingly, Grace had implicit and explicit knowledge that State Street, by liquidating the Grace Stock Fund, was acting imprudently.

All Grace Defendants knew by at least May 13, 2004 that State Street appeared to be acquiring a substantial amount of Grace common stock. For the period ending December 31, 2003, State Street and/or its affiliates controlled approximately 1 million shares of Grace common stock. (*See* State Street Form 13F-HR filed February 6, 2004.) However, on May 13, 2004, State Street reported in its Form 13F-HR that State Street and/or its affiliates controlled approximately 9 million shares of Grace common stock. The difference of eight million shares directly corresponds to the number of shares of Grace common stock in the Grace stock plan. Despite this knowledge, the Grace Defendants failed to take any action to investigate or to require State Street to return the stock. State Street's apparent acquisition of eight million shares of Grace stock at the same time it was claiming that retention of eight million shares by the Grace Stock Plan was imprudent.

4.   Separately for each Grace Defendant, identify specifically when and how each Grace Defendant actively participated in or actively concealed State Street's breach of its fiduciary duties with respect to the Plan, and state the basis for the contention that each Grace Defendant actively participated in and/or actively concealed State Street's breach(es).

**ANSWER:**

Please see Plaintiffs' answer to Interrogatory Number 3. In addition, each Grace Defendant aided the breach and helped conceal the breach by refusing to be accessible to Plan Participants. Despite their ongoing fiduciary responsibility to Plan Participants, the Grace Defendants represented to all Plan Participants that "…State Street has the authority to determine at any time that all or a portion of the shares of Grace held in the Grace Stock Fund should be sold…" Based on the Plan language, State Street only had this ability and authority if retention of the Grace Stock Fund violated ERISA. As outlined above, retention by the Plan of the Grace Stock Fund did not violate ERISA. To the best of Plaintiffs' knowledge, the Grace Defendants never took any action to assure themselves that State Street properly had determined that retention of the Grace Stock Fund violated ERISA.

The Grace Defendants compounded the breach of fiduciary duties by allowing State Street as a fiduciary to the Plan and Plan Participants to keep secret the rationale for liquidating the Grace Stock Fund. In a February 27, 2004 notice to participants, State Street declared that it would refuse to answer questions and concerns. "As investment manager, State Street does not accept direct inquiries from participants nor can participants direct State Street…to stop selling Grace stock in the Grace Stock Fund." To the extent Plan participants had questions, State Street directed the participants to contact Grace but discouraged making the inquiry by asserting that the contact was nothing more than a waste of time. "You may contact Brian McGowen or John Forgach at W.R. Grace. However, keep in mind, they will only have access to the same

information that has already been provided to you." Through their effort to stifle dissent and inquiry, the Grace Defendants and State Street had made certain that the participants in the Plan remained powerless to understand the reasons for the sale, to understand their rights, and to block the effect of the transfer of management even though all of the money belonged to the participants. This admitted secrecy was unfair to Plan Participants and constituted a breach of fiduciary duty.

5.    Separately for each Grace Defendant, identify specifically when, to whom, and through what means each Grace Defendant made any misrepresentation to Plan participants or failed to disclose information to participants that they had a duty to disclose, identifying the substance of the misrepresentation or information that was required to be, but was not, disclosed.

**ANSWER:**

Plaintiffs object to this interrogatory because it is not likely to lead to the discovery of admissible evidence in light of the agreed dismissal of Count Seven of Plaintiffs' First Amended Complaint. Notwithstanding this objection, Plaintiffs direct Defendants to Plaintiffs' Response to Interrogatory Numbers 3 and 4.

6.    State the basis for your contention in Paragraphs 44 and 68 of the Complaint that the delegation to State Street of the fiduciary responsibility to manage the Grace stock, and the ultimate decision by State Street to sell the Grace stock, was "contrary to the clear language of the plan."

**ANSWER:**

Grace structured the Plan to permit Plan Participants to make their own investment decisions. Obviously, the elimination of an important option materially affected the intent and language of the Plan. Additionally, the amendment to the Plan only permits State Street to sell the Grace Stock from the Grace Stock Plan if the Plan's retention of Grace common stock was inconsistent with ERISA. (*See* page 128-29 of the Plan which provides that Independent Investment Manager shall have the authority and "...duty to determine the extent that the continued retention of shares of Grace Stock within the Grace Stock fund is not consistent with the applicable provisions of ...ERISA..."). Here, the retention of Grace Stock within the Grace Stock fund was consistent with ERISA, and therefore, sale of Grace stock was "clearly contrary to the clear language of the plan."

9

7.     State the basis for your contention in Paragraph 45 of the Complaint that "Grace reasonably could not have believed that the liquidation of the Plan's entire holdings in Grace was consistent with an investment advisor's fiduciary role."

**ANSWER:**

Please see Plaintiffs' answer to Interrogatory Number 3, 4 and 6. In summary, however, Grace understood that it had a reasonable basis for believing that the stock held by the Grace Stock Fund represented a substantial value and that nothing materially had changed during the four months that State Street had served as an independent fiduciary to convert the decision to allow the Grace Stock Fund to hold Grace common stock from a prudent investment option into an imprudent investment option.

8.     State the basis for your contention in Paragraph 54 of the Complaint that "the sale of Grace stock was imprudent."

**ANSWER:**

Please see Plaintiffs' answer to Interrogatory Number 3, 4, 6, and 7. In summary, reasonable investment theory considers the retention of company stock to be part of a prudent investment strategy.

9.     Separately for each Defendant, state the basis for your allegations that each Defendant knew that "the price of Grace [stock] had reached the low point and was ready to rebound," that the selling price of $3.50 per share of Grace stock was "grossly below the value of the stock," and that "the market price for Grace stock was below the fair value of the stock and that the stock likely would experience a significant increase in price," as set forth in Paragraphs 54, 56, and 97 of the Complaint.

**ANSWER:**

Please see Plaintiffs' answer to Interrogatory Number 3, 4, 6, and 7. In summary, each Grace Defendant understood that Grace had an understanding of its outstanding asbestos liability and that the Company was achieving solid operating results. As a result, each Grace Defendant understood that Grace stock at its current price represented a substantial value.

10.     State the basis for your contention in Paragraph 56 of the Complaint that "State Street, with the approval of Grace . . . sold the Plan's remaining holdings in Grace at a grossly

discounted price when compared to the intrinsic value of the stock," including in your response

what you believe the "intrinsic value of the stock" was at that time, how that "intrinsic value" is

derived or calculated, and how State Street and Grace should have known what that "intrinsic

value" was.

**ANSWER:**

Please see Plaintiffs' answer to Interrogatory Number 3, 4, 6, 7 and 8. Both Grace and State Street understood from public comments made by Grace that it believed that the stock was undervalued and represented a substantial value. Additionally, the Duff & Phelps study commissioned by State Street indicated that the value of Grace Stock was approximately $17 a share if Grace's asbestos liability was less than one billion dollars. At the time that Duff & Phelps made this analysis, Grace had publicly represented in it 10K filings that it believed that its asbestos liability was approximately one billion dollars.

11.     State the basis for your contention in Paragraphs 57-58 of the Complaint that

State Street "benefited, at least indirectly" from the increase in value of Grace stock on the New

York Stock Exchange 120 days after Grace stock was sold from the Plan, and the contention in

Paragraph 90 that State Street violated its ERISA fiduciary duty "by inuring an unlawful benefit

from the sale of the Plan's portfolio of Grace stock."

**ANSWER:**

Please see Plaintiffs' answer to Interrogatory Number 3. Additionally, the fact that State Street appears to have acquired approximately 8 million shares of rapidly appreciating Grace common stock after claiming that the stock represented an imprudent investment and after State Street affirmatively sold 8 million shares of Grace common stock from the Grace Stock Fund demonstrates that State Street violated its fiduciary duty by acquiring stock that corresponded directly with stock that it sold.

12.     State the basis for your contention in Paragraph 76 of the Complaint that Grace

had "a sound basis for knowing the extent of its potential asbestos liability."

**ANSWER:**

Grace reported in its 10K fillings that it believed that its asbestos liability was approximately one billion dollars. Additionally, Paul Norris responded to questions on March 13, 2003 that Grace's position was that its asbestos liability was "fairly sized."

13.    State whether you contend that the Grace Defendants breached their fiduciary duties by delegating the responsibility to manage the Plan's assets to State Street and, if so, state the basis for this contention.

**ANSWER:**

Plaintiffs do contend that the Grace Defendants breached their fiduciary duty by delegating the complete responsibility to manage the Plan's assets to State Street. Although Grace had the right to appoint State Street to serve as an independent consultant to assess issues related to the Grace Stock Plan, it did not have the right to abdicate its responsibility to monitor State Street to determine whether State Street was acting in the best interests of Plan Participants. Indeed, Plaintiffs believe that Grace had provided accurate information to Plan Participants concerning Grace common stock. Grace, therefore, unlike other plan sponsors, i.e. Enron and World Com, did not engage in securities fraud that created an inherent conflict of interest. The Grace Defendants essentially violated their fiduciary duties by completely delegating their responsibilities to State Street without serving as a cross check to make certain that State Street was serving the best interests of Plan Participants.

14.    Separately for each Grace Defendant, identify and explain all fiduciary duties you believe each Grace Defendant retained after the responsibility to manage the Plan's assets was delegated to State Street, and state the basis for your contention that each of them retained each such duty.

**ANSWER:**

Please see Plaintiffs' answer to Interrogatory Number 3 and 13. Additionally, each Grace Defendant had the fiduciary duty to monitor State Street and to make certain that State Street acted reasonably when it determined that continued retention of Grace stock in the Grace Stock Fund violated ERISA. Clearly, State Street's correspondence to Plan Participants demonstrates that the Grace Defendants did not monitor and did not understand the basis for State Street concluding that retention of the Grace Stock Fund violated ERISA. In its letter State Street told Plan Participants that they could contact Grace but discouraged Participants from making the inquiry by asserting that the contact was nothing more than a waste of time. "You may contact Brian McGowen or John Forgach at W.R. Grace. However, keep in mind, they will only have access to the same information that has already been provided to you." Thus, State Street admitted that it did not consult with or communicate with any of the Grace Defendants regarding the liquidation and that none of the Grace Defendants made an effort to understand the basis for liquidating the Grace Stock Fund.

15.    State the basis for your contention in Paragraph 90 of the Complaint that "the simultaneous sale and purchase of Grace stock by State Street violates State Street's ERISA's fiduciary duty by placing the interests of itself and its affiliates over the interest of Plan participants and by inuring an unlawful benefit from the sale of the Plan's portfolio of Grace stock."

**ANSWER:**

Plaintiffs interpret Interrogatory Number 15 as seeking the same information that is requested in Interrogatory Number 3. Accordingly, please see Plaintiffs' answer to Interrogatory Number 3.

16.    Separately for each Grace Defendant, identify specifically when, to whom, and through what means each Grace Defendant "discouraged Plan participants from making any inquiry of State Street concerning the sale of Grace stock," as set forth in Paragraph 104(a) of the Complaint.

**ANSWER:**

Each Grace Defendant understood that Grace was abdicating its responsibility to State Street concerning the Grace Stock Fund. Grace also should have understood that State Street refused to answer any Participant questions. (*See* February 27, 2004 notice of State Street to participants.)

17.    Separately for each Grace Defendant, identify specifically what "relevant and material information" each Grace Defendant failed to provide that "could impact State Street's decision-making process," as set forth in Paragraph 104(c) of the Complaint.

**ANSWER:**

Each Grace Defendant had access to the information that Mr. Norris, Mr. McGowen and Mr. Siegel had when they suggested that Grace common stock represented a substantial value. State Street based on its conduct apparently lacked access to this information.

18.    State the basis for your contention in Paragraph 104(c) of the Complaint that "State Street likewise failed to investigate Grace's true situation and Grace's calculations and

plans with respect to its reorganization," including a description of all facts and circumstances that a sufficient investigation would have revealed that were unknown to State Street.

**ANSWER:**

Plaintiffs interpret Interrogatory Number 18 as the reverse of Interrogatory Number 17.and seeks the same information. Accordingly, please see Plaintiffs' answer to Interrogatory Number 17.

19.    State whether you contend that the Grace Defendants should have prevented State Street from selling the Grace stock and, if so, state the basis for this contention, including a description of what steps each Grace Defendant should have taken, but failed to take, to prevent the sale, and when.

**ANSWER:**

Plaintiffs do contend that the Grace Defendants should have prevented State Street from selling Grace stock. The basis for this answer is contained in several preceding answers to interrogatories 3, 4, 6, 7 and 8. Please review those answers. Additionally, as soon as Grace learned that State Street intended to sell Grace Stock--each Grace Defendant certainly knew in February of 2004 that State Street intended to sell stock from the Grace Stock Fund because State Street notified Plan Participants in February of 2004 of the sale--each Grace Defendant should have sought the reason why retention of the Grace common stock by the Grace Stock Fund suddenly violated ERISA when retention of Grace common stock by the Grace Stock Fund did not violate ERISA two months earlier. Indeed, each Grace Defendant certainly understood that retention of Grace stock, although risky, could represent a reasonable investment in a diversified portfolio especially since Grace represented that it believed that Grace common stock could represent a substantial value.

20.    Separately for each Defendant, state the earliest date, and the action taken on that date, on which you allege that each Defendant breached their fiduciary duty to the Plan.

**ANSWER:**

The Grace Defendants first breached their fiduciary duty on or about December 8, 2003 when they amended the Plan to allow the Independent Fiduciary to exercise unsupervised discretion to liquidate the Grace Stock Fund. The State Street Defendants first violated their Fiduciary duty in February of 2004 when they commenced the sale of Grace common stock from the Grace Stock Fund. Of course, Plaintiffs contend that all Defendants continued to breach their fiduciary duties throughout the class period.

21.    Identify and describe, on a transaction by transaction basis, each purchase or sale of stocks, bonds, mutual funds or other investments vehicles made by you, on your behalf, or with funds to which you are or will be entitled, including a description of the reasons for each transaction, from 1999 to the present.

**ANSWER:**

As requested in Defendants' document requests, Plaintiffs are producing available documents that reflect these investments. Please see the documents.

22.    Identify and describe with specificity each and every item of relief you claim entitlement to in this Action, whether on behalf of yourself individually or on behalf of the Plan, whether economic, non-economic, compensatory, punitive, or other, showing specifically the quantification and basis for calculation of each item.

**ANSWER:**

This request is premature in that Plaintiffs need to continue to investigate to determine the full extent of their damages and the damages sustained by the Plan. Notwithstanding the premature nature of this interrogatory, Plaintiffs are seeking recovery to the Plan of the damages that the Plan sustained. One reasonable measure of damages is the return to the Plan of the approximate eight million shares of Grace common stock that State Street and Grace sold when they liquidated the Grace Stock Fund. Additionally, Plaintiffs seek damages from State Street for the benefit that it received if it apparently acquired the eight million shares of Grace common stock that the Grace Stock Fund sold. In the event that Defendants are unable for legal reasons to replace the 8 million shares of Grace common stock, Plaintiffs for the benefit of the Plan and indirectly for their own benefit seek damages that would permit the Plan to recover the money that it would have earned if the Defendants did not breach their fiduciary duties. Plaintiffs are in the process of making this calculation. Plaintiffs are also are seeking all damages recoverable under ERISA including attorneys fees and prejudgment, post judgment interest and any other recoverable litigation expense. Again, Plaintiffs currently do not know the value of this amount and will not know until the litigation concludes.

Dated: April 19th, 2007                Respectfully submitted,

                                       BERMAN DEVALERIO PEASE TABACCO
                                       BURT & PUCILLO

                                       /s/ Jeffrey C. Block
                                       Jeffrey C. Block
                                       One Liberty Square
                                       Boston, Massachusetts 02109
                                       Telephone: (617) 542-8300
                                       Facsimile: (617) 542-1194
                                       Email:

                                       WAITE, SCHNEIDER, BAYLESS
                                        & CHESLEY CO., L.P.A.

                                       /s/ James R. Cummins
                                       James R. Cummins
                                       Terrence L. Goodman
                                       Jane H. Walker
                                       1513 Fourth & Vine Tower
                                       One West Fourth Street
                                       Cincinnati, Ohio 45202
                                       Telephone: (513) 621-0267
                                       Facsimile: (513) 381-2375
                                       E-mail jcummins@wsbclaw.com
                                       E-mail: terrygoodman@wsbclaw.com
                                       E-mail: janehwalker@wsbclaw.com

                                       *Counsel for Lawrence W. Bunch, Jerry L. Howard,
                                       Sr. and David Mueller, Both Individually and
                                       Behalf of All Others Similarly Situated*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of April, 2007, the foregoing was sent by email

and U.S. Mail, postage prepaid, to:

                 Scott M. Flicker, Esq.
                 PAUL, HASTING, JANOFSKY & WALKER, LLP
                 1299 Pennsylvania Avenue, N.W.
                 Washington, DC 20004
                 Telephone: (202) 551-1700
                 Facsimile: (202) 551-1705
                 Email: scottflicker@paulhastings.com

and

Sean T. Carnathan
O'CONNOR, CARNATHAN, AND MACK LLC
8 New England Executive Park, Suite 310
Burlington, MA 01803
Telephone: (781) 359-9000
Facsimile: (781) 359-9001
Email: scarnathan@ocmlaw.net

*Counsel for Defendants State Street Bank &*
*Trust Company and State Street Global Advisors*


Carol Connor Flowe, Esq.
Nancy S. Heermans
Caroline Turner English, Esq.
Jeff Ruzal
Valerie N. Webb
ARENT FOX PLLC
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5339
Telephone: (202) 857-6054
Facsimile: (202) 857-6395
Email: Flowe.Carol@arentfox.com

*Counsel for Defendants John F. Akers, Ronald*
*C. Cambre, Marye Anne Fox, John J. Murphy,*
*Paul J. Norris, Thomas A. Vanderslice, H. Furlong*
*Baldwin, Investments and Benefits Committee,*
*Administrative Committee, Brenda Gottlieb, W. Brian*
*McGowan, Michael Piergrossi, Robert M. Tarola,*
*Eileen Walsh, David Nakashige, Elyse Napoli, Martin*
*Hunter, Ren Lapadario, W.R. Grace & Co.,*
*W.R. Grace Investment and Benefits Committee,*
*and Fred E. Festa.*


Dated: April 19th, 2007                    _____
                                           Jane H. Walker

17

## **VERIFICATION**

I have reviewed the above Answers to Interrogatories, and verify that they are true and correct to the best of my knowledge.

*Lawrence W. Bunch*
Lawrence W. Bunch

STATE OF OHIO )
) SS.
COUNTY OF HAMILTON )

SWORN TO AND SUBSCRIBED before me this 19 day of April ,

2007 by LAWRENCE W. BUNCH who is personally known to me.

*Lois A. Herzog*
(Notary Signature)

(NOTARY SEAL)

LOIS A. HERZOG
Notary Public, State of Ohio
My Commission Expires
September 30, 2008

(Notary Name Printed)
NOTARY PUBLIC
Commission No. _____

## **VERIFICATION**

I have reviewed the above Answers to Interrogatories, and verify that they are true and correct to the best of my knowledge.

_____
Jerry L. Howard, Sr.

STATE OF OHIO          )
                       ) SS.
COUNTY OF HAMILTON )

SWORN TO AND SUBSCRIBED before me this 19 day of _____April_____,
2007 by JERRY L. HOWARD _____ who is personally known to me.

_____
(Notary Signature)

(NOTARY SEAL)

**LOIS A. HERZOG**
Notary Public, State of Ohio
My Commission Expires
September 30, 2008

(Notary Name Printed)
NOTARY PUBLIC
Commission No. _____

## **VERIFICATION**

I have reviewed the above Answers to Interrogatories, and verify that they are true and correct to the best of my knowledge.

_(signature)_
_____
David Mueller

STATE OF Ky   )
        ) SS.
COUNTY OF Kenton )

SWORN TO AND SUBSCRIBED before me this 19 day of April _____,

2007 by DAVID Mueller _____ who is personally known to me.

_(signature)_
_____
(Notary Signature)

(NOTARY SEAL)

_____
(Notary Name Printed)
NOTARY PUBLIC
Commission No. _____

LINDA BATCHLER
Notary Public, Kentucky State at Large
My Commission Exp. August 18, 2009