## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KERI EVANS,<br><br>                Plaintiff,<br><br>v.<br><br>JOHN F. AKERS, et al.<br><br>                Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| LAWRENCE W. BUNCH, et al.,<br><br>                Plaintiffs,<br><br>v.<br><br>W. R. GRACE & CO., et al.<br><br>                Defendants. | )   Consolidated<br>)   Case No. 04-11380-WGY<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### BUNCH PLAINTIFS' STATEMENT OF UNCONTESTED
### FACTS PURSUANT TO LOCAL RULE 56.1

### INTRODUCTION

Plaintiffs make this submission in conjunction with their Motion for Summary Judgment against all Defendants. The following undisputed facts have been referenced and described in greater detail in Plaintiffs Memorandum in Support of Summary Judgment.

## UNDISPUTED FACTS AND SUPPORT

1.      The Defendants in this action Fred E. Festa, Robert M. Tarola, John F. Akers, Henry Furlong Baldwin, Ronald C. Cambre, Marye Anne Fox, John J. Murphy, Thomas A. Vanderslice, Paul J. Norris, W. R. Grace Investment and Benefits Committee, and W. R. Grace & Co. (the "Grace Defendants" or "Grace"), and State Street Bank and Trust Company and State Street Global Advisors ("State Street" and "State Street Global Advisors" collectively referred to as "State Street").

2.      Between February 2004 and April 2004, improperly sold approximately 7.2 million shares of Grace common stock from the Grace Stock Fund. Driscoll Deposition at 187-88.

3.      Grace common stock traded in an efficient market that included in the market price any uncertainty of future events. Statement of Grace General Counsel David Siegel at Town Hall meeting, March 13, 2003, GRA-B2 006089, attached as Exhibit "A" to Plaintiffs' Motion for Summary Judgment. All Exhibit denominations have been attached to Plaintiffs' Motion for Summary Judgment. Shawn Johnson deposition transcript at 84, attached as Exhibit "R"; Kelly Driscoll deposition transcript at 110 and 152, attached as Exhibit "S"; State Street's Motion to take Judicial Notice, filed February 2, 2007, Doc. No. 145.

4.      The daily closing price of Grace common stock during the class period remained above $2.00 and occasionally exceeded $5.00 a share. During State Street's tenure, the daily closing price ranged between $2.54 on December 22, 2003 and $3.70 on January 12, 2004. Chart of Grace daily closing prices attached hereto as Exhibit "C".

5.    Grace represented to the investing public that it would survive the reorganization and that its shareholders would receive equity. Letter from Paul Norris, May 5, 2004, http://svco0053/reorganize/, attached as Exhibit "D"; Memorandum from Goodwin & Procter to State Street, at SSBT-0003056, attached as Exhibit "E".

6.    Grace further represented that the bankruptcy was not diminishing its strength. "Over the past five years, Grace has remained a financially strong enterprise. The company has continued to invest in its business and make small, easily integrated acquisitions with the support of the creditors committee and the Bankruptcy Court." GraceFinancial Reorganization, 2006, http://www.grace.com/About/Reorganization.aspx, attached as Exhibit "F".

7.    Grace told Plan Participants that it expected to survive with equity. in response to questions concerning the continued holding of shares, that shareholders could receive "substantial" value at the end of the reorganization. Statement of Grace General Counsel David Siegel at Town Hall meeting, March 13, 2003, GRA-B2 006089, attached as Exhibit "A"; Statement of Grace CEO and Chairman Paul Norris at Town Hall Meeting, March 13, 2003, GRA-B2 006092, attached as Exhibit "A".

8.    On January 29, 2004 Grace announced its fourth quarter 2003 results and year end results and the results were positive. Grace Form 8-K, filed January 29, 2004, attached as Exhibit "G".

9.    Grace continued to have financial success throughout the class period. On April 20, 2004 Grace announced its first quarter results. Grace Press Release, April 20, 2004, GR008800, attached as Exhibit "H"; Tarola deposition at 79, attached as Exhibit "I".

10.     Grace possessed cash assets of over $400 million and access to a $250 million line of credit and could continue to operate throughout the bankruptcy. Grace Form 10-Q for Period ending March 31, 2004 at I-29, attached as Exhibit "J".

11.     The Plan permitted class members, on a daily basis, to change investments. The W.R. Grace Savings and Investment Plan Summary Plan Description ("Plan") at 26, GR 000268.   Relevant Portions of the Summary Plan Description, attached as Exhibit "K".

12.     Each class member was fully and immediately vested.  Plan at 84, GR 001745, attached as Exhibit "L".

13.     Plan Participants made their own investment decisions, and the Plan complied with §404 (c) of ERISA. Summary Plan Description GR 000267, attached as Exhibit "E".

14. The Plan allowed participants to create a diversified portfolio from approximately 28 diverse options including the Stock Fund that in the aggregate provided appropriate risk and returns. Deposition of W. Brian McGowan at 31, attached as Exhibit "M"; Deposition of Robert Tarola at 101.  A copy of relevant portions of Mr. Tarola's deposition are attached as Exhibit "I"; Investment Policy Statement at 1, GR006600, attached as Exhibit "N"; Deposition of W. Brian McGowan at 124-25, attached as Exhibit "M"; The W.R. Grace Savings and Investment Plan at 68-71, GR 001729. Copies of relevant portions of the Plan are attached as Exhibit "L".

15. The Plan documents specifically identify the Grace Stock Fund as one of the Plan's investment options. W.R. Grace Savings and Investment Plan at 79, Sections 5.11-12, relevant portions of the Plan are attached as Exhibit "L"; Engagement

4

Agreement between Grace and State Street attached as Exhibit 'B', Exhibit II to the
Agreement at SSBT-001278.

16.    The Grace Stock Fund represented only four percent of the Plan's assets,
but Participants, through their investment of capital, held 12% of the Company's
outstanding shares, with the accompanying right to vote the shares. GR 005314, attached
as Exhibit "O".

17.    Grace and State Street repeatedly advised class members of the risk of
retaining company stock in the Plan. January 26, 2004 Notice to Plan Participants at
SSBT-003245, attached as Exhibit "P".

18.    Grace, without question, always believed that the Grace Stock Fund was
an investment opportunity that satisfied the requirements of ERISA. Deposition of W.
Brian McGowan at 61-62, 71-72, attached as Exhibit "M"; Deposition of Robert Tarola
at 131-32, attached as Exhibit "I".

19.    Grace and its directors along with Mr. McGowan ("Grace"), acknowledge
that they are fiduciaries to the Plan. Deposition of W. Brian McGowan at 13, attached as
Exhibit "M"; Bankruptcy filing, GR 007930, attached as Exhibit "Q".

20.    State Street knew that Grace traded in an efficient market. Johnson
deposition transcript at 84, attached as Exhibit "R"; Driscoll deposition transcript at 110
and 152, attached as Exhibit "S".

21.    State Street ignored the market and "determined that the market price of
the W.R. Grace stock is not a good indication of its long term value..." Fiduciary
Committee Meeting Minutes, February 23, 2004, SSBT-000713-000715 at 000714,

attached as Exhibit "J"; Johnson deposition testimony at 25-27. Relevant portions of the Johnson deposition are attached as Exhibit "R".

22.    State Street did not know when or the exact probability of when Grace Stock would lose substantial value. Johnson deposition at 110, relevant portions of the Johnson deposition are attached as Exhibit "R".

23.    State Street's responsibility for the Grace Stock Fund commenced on December 15, 2003 and ended approximately April 15, 2004. Engagement Agreement between Grace and State Street attached as Exhibit 'B". In particular, *see* Exhibit II to the Agreement at SSBT-001278.

24.    During the relevant period, the Grace Stock Fund represented only 4% of the Plan's $476 million portfolio. McGowen deposition at 118, attached as Exhibit "M".

25. Grace always believed that the Grace Stock Fund remained an appropriate investment. Tarola deposition at 128-29. A copy of the Tarola deposition is attached as Exhibit "I"; McGowan deposition at 28, attached as Exhibit "M".

26.    State Street ignored the Plan's investment options other than the Grace Stock Fund. Johnson deposition at 110. Relevant portions of the Johnson deposition are attached as Exhibit "R"; Driscoll deposition at 75-76. Relevant portions of the Driscoll deposition are attached as Exhibit "S".

27.    State Street was unaware that: (1) the Grace Stock Fund constituted only 4% of the assets of the Plan, (2) Plan participants voluntarily assumed the risk of investing in the Grace Stock Fund, that State Street, (3) how Grace made its matching 401(k) contributions and whether it used Grace stock to make the match (it did not), and

(4) the Plan provided participants the right to vote the Grace common shares in the Grace Stock Fund. Driscoll deposition at 76-77, attached as Exhibit "S".

28.    State Street possessed significant nonpublic information that a major and sophisticated hedge fund investor, D. E. Shaw, was eager to pay _above_ the market price to purchase over 6 million shares of Grace common stock from the Grace stock fund. Johnson deposition, Volume 2, at 51, 53.

29.    No one at State Street sought to determine why a sophisticated investor was willing to pay a "premium" for 6.2 million shares in the Grace Stock Fund. Johnson deposition, Volume 2, at 54-55, attached as Exhibit "R"; Driscoll deposition transcript at 169, attached as Exhibit "S".

30.    When Grace hired State Street, Grace knew that the Grace Stock Fund was a prudent investment consistent with ERISA.  Deposition of W. Brian McGowan at 71-72, 140, attached as Exhibit "M".

31.    As part of its prudence and ERISA analysis, in continuing to hold Grace stock in the Fund, the Committee extensively considered Grace's asbestos liability and its impact on its stock. McGowan deposition at 81, attached as Exhibit "M".

32    During the four months that State Street served as investment manager, Grace's financial condition was improving--not deteriorating--and Grace was confident that it understood the extent of its asbestos liability.  Tarola deposition at 78-79, attached as Exhibit "I.

33.    Grace never monitored State Street to determine the reason that the Grace Stock Fund suddenly became inconsistent with ERISA. Tarola deposition at 121, attached as Exhibit "I"; McGowan deposition at 157, attached as Exhibit "M".

34.     Grace did not avoid its monitoring responsibility because of a conflict of interest because an actual conflict of interest never existed during the four months that State Street served as Investment Manager.  Tarola deposition at 126, attached as Exhibit "I".

Respectfully submitted,

WAITE, SCHNEIDER, BAYLESS
  & CHESLEY CO., L.P.A.

/s/ James R. Cummins
Stanley M. Chesley
James R. Cummins
Jane H. Walker
Terrence L. Goodman
1513 Fourth & Vine Tower
One West Fourth Street
Cincinnati, Ohio  45202
Telephone:  (513) 621-0267
Facsimile:  (513) 381-2375
E-mail:  jcummins@wsbclaw.com
E-mail:  janehwalker@wsbclaw.com

and

BERMAN DEVALERIO PEASE TABACCO
BURT & PUCILLO

/s/ Jeffrey C. Block
Jeffrey C. Block
One Liberty Square
Boston, Massachusetts 02109
Telephone:  (617) 542-8300
Facsimile:  (617) 542-1194
Email:  jblock@bermanesq.com

**Counsel for Lawrence W. Bunch, Jerry L. Howard, Sr. and David Mueller, Both Individually and Behalf of All Others Similarly Situated**

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2007, I filed Bunch Plaintiffs' Local Rule 56.1 Statement of Uncontested Facts through the ECF system. It was sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies were sent to those indicated as non-registered participants on August 17, 2007.

Respectfully submitted,
WAITE, SCHNEIDER, BAYLESS
 & CHESLEY CO., L.P.A.

*/s/ Jane H. Walker*
James R. Cummins
Jane H. Walker
Terrence L. Goodman
1513 Fourth & Vine Tower
One West Fourth Street
Cincinnati, Ohio 45202
Telephone: (513) 621-0267
Facsimile: (513) 381-2375
E-mail: jcummins@wsbclaw.com
E-mail: janehwalker@wsbclaw.com
E-mail: terrygoodman@wsbclaw.com

9