# U.S. Gypsum (USG)

## BUSINESS DESCRIPTION

- USG Corporation is a manufacturer and distributor of building materials and produces a range of products for use in new residential, new non-residential and repair and remodel construction, as well as products used in certain industrial processes.
- Its operations are organized into three operating segments: North American Gypsum, which manufactures wallboard and related products in the United States, Canada and Mexico; Worldwide Ceilings, which manufactures ceiling tile and ceiling grid in the United States, Canada, Europe and the Asia-Pacific region; and Building Products Distribution, which distributes gypsum wallboard, drywall metal, ceiling products, joint compound and other building products throughout the United States.
- On June 25, 2001, the Company and 10 of its United States subsidiaries filed voluntary petitions for reorganization under chapter 11 of the United States bankruptcy code due to asbestos related liabilities.

### LTM STOCK PRICE PERFORMANCE



## BANKRUPTCY AND ASBESTOS RELATED ISSUES

- In August of 2001, the Company announced intentions to file a plan of reorganization, but has filed none as of the present date nor has it given an estimation as to when it plans to emerge from bankruptcy. The Company stated that the key element to the plan is the creation of a 524(g) trust.
- In February of 2003, a judge ruled that the Company would have to pay undisputed cancer patients first before any other claimants receive compensation.
- As of December 2003, the Company had 190,000 asbestos related claims outstanding and an estimated asbestos liability of approximately $1.1 billion.

### FINANCIAL DATA ($ IN MILLIONS)

- LTM Sales: $3,666.0
- EV/LTM Sales: NM
- EV/LTM EBITDA: NM
- Current Ratio: 3.6
- Total Assets/Total Asbestos Liabilities: 3.7
- (EBITDA –Cap Ex)/Total Interest: 36.2
- Current Market Cap: $774.1

**DUFF & PHELPS, LLC**

D-4

SSBT-003013
CONFIDENTIAL

**Declaration of Daniel D. Bayston Exhibit 2**



# FORM 10-Q

## W R GRACE CO – GRA

Filed: November 10, 2003 (period: September 30, 2003)

Quarterly report which provides a continuing view of a company's financial position

# Table of Contents

PART II.

OTHER INFORMATION
ITEM 2.  MANAGEMENT'S DISCUSSION AND ANALYSIS OF RESULTS OF OPERATIONS AND
ITEM 3.  QUANTITATIVE AND QUALITATIVE DISCLOSURES ABOUT MARKET RISK
ITEM 4.  CONTROLS AND PROCEDURES
ITEM 1.  LEGAL PROCEEDINGS
ITEM 6.  EXHIBITS AND REPORTS ON FORM 8-K
SIGNATURE
EXHIBIT INDEX
EX-15 (Letter regarding unaudited interim financial information)

EX-31.1 (Certifications required under Section 302 of the Sarbanes-Oxley Act of 2002)

EX-31.2 (Certifications required under Section 302 of the Sarbanes-Oxley Act of 2002)

EX-32 (Certifications required under Section 906 of the Sarbanes-Oxley Act of 2002)

---

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

FORM 10-Q

(Mark One)

[X]   QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d)
      OF THE SECURITIES EXCHANGE ACT OF 1934

      FOR THE QUARTERLY PERIOD ENDED SEPTEMBER 30, 2003

                         OR

[ ]   TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d)
      OF THE SECURITIES EXCHANGE ACT OF 1934

Commission File Number 1-13953

W. R. GRACE & CO.

| Delaware | 65-0773649 |
|---|---|
| (State of Incorporation) | (I.R.S. Employer Identification No.) |

7500 Grace Drive
Columbia, Maryland 21044
(410) 531-4000

(Address and phone number of principal
executive offices)

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.

          Yes  X                    No
             ------                    ------

Indicate by check mark whether the registrant is an accelerated filer (as defined in Rule 12b-2 of the Exchange Act).

          Yes  X                    No
             ------                    ------

65,558,510 shares of Common Stock, $0.01 par value, were outstanding at October 31, 2003.

---

Source: W R GRACE & CO, 10-Q, November 10, 2003

W. R. GRACE & CO. AND SUBSIDIARIES

Table of Contents

|  |  | Page No. |
|---|---|---|
| PART I. | FINANCIAL INFORMATION |  |
| Item 1. | Financial Statements |  |
|  | Report of Independent Accountants | I - 1 |
|  | Consolidated Statements of Operations | I - 2 |
|  | Consolidated Statements of Cash Flows | I - 3 |
|  | Consolidated Balance Sheets | I - 4 |
|  | Consolidated Statements of Shareholders' Equity (Deficit) | I - 5 |
|  | Consolidated Statements of Comprehensive Income (Loss) | I - 5 |
|  | Notes to Consolidated Financial Statements | I - 6 to I - 21 |
| Item 2. | Management's Discussion and Analysis of Results of Operations and Financial Condition | I - 22 to I - 36 |
| Item 3. | Quantitative and Qualitative Disclosures About Market Risk | I - 37 |
| Item 4. | Controls and Procedures | I - 37 |
| PART II. | OTHER INFORMATION |  |
| Item 1. | Legal Proceedings | II - 1 |
| Item 6. | Exhibits and Reports on Form 8-K | II - 1 |

REPORT OF INDEPENDENT ACCOUNTANTS

To the Shareholders and Board of
Directors of W. R. Grace & Co.:

We have reviewed the accompanying consolidated balance sheet of W. R. Grace & Co. and its subsidiaries as of September 30, 2003, and the related consolidated statements of operations and of comprehensive income (loss) for each of the three-month and nine-month periods ended September 30, 2003 and September 30, 2002, and the consolidated statements of shareholders' equity (deficit) for the three-month and nine-month periods ended September 30, 2003 and the consolidated statements of cash flows for the nine-month periods ended September 30, 2003 and September 30, 2002. These interim financial statements are the responsibility of the Company's management.

We conducted our review in accordance with standards established by the American Institute of Certified Public Accountants. A review of interim financial information consists principally of applying analytical procedures and making inquiries of persons responsible for financial and accounting matters. It is substantially less in scope than an audit conducted in accordance with generally accepted auditing standards, the objective of which is the expression of an opinion regarding the financial statements taken as a whole. Accordingly, we do not express such an opinion.

Based on our review, we are not aware of any material modifications that should be made to the accompanying consolidated interim financial statements for them to be in conformity with accounting principles generally accepted in the United States of America.

The accompanying consolidated interim financial statements have been prepared assuming that the Company will continue as a going concern. As discussed in Note 1 to the consolidated interim financial statements, on April 2, 2001, the Company and substantially all of its domestic subsidiaries voluntarily filed for protection under Chapter 11 of the United States Bankruptcy Code, which raises substantial doubt about the Company's ability to continue as a going concern in its present form. Management's intentions with respect to this matter are also described in Note 1. The accompanying consolidated interim financial statements do not include any adjustments that might result from the outcome of this uncertainty.

We previously audited in accordance with auditing standards generally accepted in the United States of America, the consolidated balance sheet as of December 31, 2002, and the related consolidated statements of operations, of cash flows, of shareholders' equity (deficit) and of comprehensive loss for the year then ended (not presented herein). Our report, which was modified as to a matter raising substantial doubt about the Company's ability to continue as a going concern, was dated January 29, 2003. In our opinion, the information set forth in the accompanying consolidated balance sheet as of December 31, 2002, is fairly stated in all material respects in relation to the consolidated balance sheet from which it has been derived.

/s/ PricewaterhouseCoopers LLP

Baltimore, Maryland
October 23, 2003

I-1

| W. R. GRACE & CO. AND SUBSIDIARIES<br>CONSOLIDATED STATEMENTS OF OPERATIONS (UNAUDITED) | THREE MONTHS ENDED<br>SEPTEMBER 30, | | NINE MONTHS ENDED<br>SEPTEMBER 30, | |
|---|---|---|---|---|
| Dollars in millions, except per share amounts | 2003 | 2002 | 2003 | 2002 |
| Net sales | $ 521.0 | $ 480.0 | $ 1,469.2 | $ 1,365.0 |
| Other income | 3.1 | 9.0 | 11.0 | 19.8 |
| | 524.1 | 489.0 | 1,480.2 | 1,384.8 |
| Cost of goods sold, exclusive of depreciation and amortization shown separately below | 336.5 | 300.0 | 962.9 | 854.1 |
| Selling, general and administrative expenses, exclusive of net pension expense shown separately below | 90.0 | 88.6 | 276.4 | 255.7 |
| Depreciation and amortization | 26.1 | 24.6 | 76.1 | 70.8 |
| Research and development expenses | 11.9 | 13.5 | 40.2 | 39.6 |
| Net pension expense | 13.2 | 5.0 | 39.9 | 14.6 |
| Interest expense and related financing costs | 4.1 | 4.8 | 12.4 | 15.2 |
| Provision for environmental remediation | 50.0 | 13.4 | 52.5 | 19.2 |
| | 531.8 | 449.9 | 1,460.4 | 1,269.2 |
| Income (loss) before Chapter 11 expenses, income taxes, and minority interest | (7.7) | 39.1 | 19.8 | 115.6 |
| Chapter 11 expenses, net | (2.2) | (8.6) | (11.7) | (21.4) |
| Provision for income taxes | (0.7) | (15.1) | (14.0) | (44.3) |
| Minority interest in consolidated entities | 0.7 | (1.4) | 0.2 | (2.3) |
| NET (LOSS) INCOME | $ (9.9) | $ 14.0 | $ (5.7) | $ 47.6 |
| BASIC (LOSS) EARNINGS PER COMMON SHARE | $ (0.15) | $ 0.21 | $ (0.09) | $ 0.73 |
| Average number of basic shares | 65.6 | 65.5 | 65.5 | 65.4 |
| DILUTED (LOSS) EARNINGS PER COMMON SHARE | $ (0.15) | $ 0.21 | $ (0.09) | $ 0.73 |
| Average number of diluted shares | 65.6 | 65.5 | 65.5 | 65.5 |

The Notes to Consolidated Financial Statements are an integral part of these statements.

I-2

Source: W R GRACE & CO, 10-Q, November 10, 2003

W. R. GRACE & CO. AND SUBSIDIARIES
CONSOLIDATED STATEMENTS OF CASH FLOWS (UNAUDITED)

Dollars in millions

| | NINE MONTHS ENDED SEPTEMBER 30, | |
|---|---|---|
| | 2003 | 2002 |
| **OPERATING ACTIVITIES** | | |
| Income before Chapter 11 expenses, income taxes, and minority interest | $ 19.8 | $ 115.6 |
| Reconciliation to net cash provided by operating activities: | | |
| Depreciation and amortization | 76.1 | 70.8 |
| Interest accrued on pre-petition debt subject to compromise | 8.5 | 11.0 |
| Loss (gain) on disposals of assets | 1.0 | (1.9) |
| Provision for environmental remediation | 52.5 | 19.2 |
| Net income from life insurance policies | (4.1) | (5.3) |
| Changes in assets and liabilities, excluding effect of businesses acquired/divested and foreign currency translation: | | |
| Increase in working capital items | (55.5) | (20.9) |
| Contributions to defined benefit pension plans | (32.8) | -- |
| Expenditures for asbestos-related litigation | (8.1) | (8.2) |
| Proceeds from asbestos-related insurance | 11.0 | 10.8 |
| Expenditures for environmental remediation | (7.4) | (14.0) |
| Expenditures for postretirement benefits | (8.8) | (17.7) |
| Expenditures for retained obligations of discontinued operations | (2.9) | (3.7) |
| Changes in accruals and other non-cash items | 45.4 | 20.0 |
| NET CASH PROVIDED BY OPERATING ACTIVITIES BEFORE INCOME TAXES AND CHAPTER 11 EXPENSES | 94.7 | 175.7 |
| Chapter 11 expenses paid, net | (14.4) | (13.3) |
| Income taxes paid, net of refunds | (16.4) | (20.7) |
| NET CASH PROVIDED BY OPERATING ACTIVITIES | 63.9 | 141.7 |
| **INVESTING ACTIVITIES** | | |
| Capital expenditures | (65.7) | (55.4) |
| Businesses acquired in purchase transactions, net of cash acquired | (3.6) | (28.5) |
| Investment in life insurance policies | (11.4) | (16.2) |
| Proceeds from life insurance policies | 10.0 | 13.8 |
| Proceeds from sales of investments | -- | 0.9 |
| Proceeds from disposals of assets | 3.7 | 4.6 |
| NET CASH USED FOR INVESTING ACTIVITIES | (67.0) | (80.8) |
| **FINANCING ACTIVITIES** | | |
| Net payments of loans secured by cash value of life insurance policies | (2.6) | (4.2) |
| Borrowings under credit facilities, net of repayments | 6.5 | (0.8) |
| Borrowings under debtor-in-possession facility, net of fees | 46.7 | 19.1 |
| Repayments of borrowings under debtor-in-possession facility | (50.0) | (20.0) |
| NET CASH PROVIDED BY (USED FOR) FINANCING ACTIVITIES | 0.6 | (5.9) |
| Effect of currency exchange rate changes on cash and cash equivalents | 18.8 | 7.1 |
| INCREASE IN CASH AND CASH EQUIVALENTS | 16.3 | 62.1 |
| Cash and cash equivalents, beginning of period | 283.6 | 191.9 |
| Cash and cash equivalents, end of period | $ 299.9 | $ 254.0 |

The Notes to Consolidated Financial Statements are an integral part of these statements.

I-3

Source: W R GRACE & CO, 10-Q, November 10, 2003

| W. R. GRACE & CO. AND SUBSIDIARIES<br>CONSOLIDATED BALANCE SHEETS (UNAUDITED) | SEPTEMBER 30,<br>2003 | DECEMBER 31,<br>2002 |
|---|---|---|
| Dollars in millions, except par value and shares | | |
| **ASSETS** | | |
| **CURRENT ASSETS** | | |
| Cash and cash equivalents | $ 299.9 | $ 283.6 |
| Accounts and other receivables, net | 361.7 | 316.6 |
| Inventories | 208.9 | 173.6 |
| Deferred income taxes | 40.4 | 28.0 |
| Other current assets | 23.6 | 35.9 |
| TOTAL CURRENT ASSETS | 934.5 | 837.7 |
| Properties and equipment, net of accumulated depreciation and amortization of $1,170.3 (2002- $1,071.7) | 635.1 | 622.2 |
| Goodwill | 69.6 | 65.2 |
| Cash value of life insurance policies, net of policy loans | 90.5 | 82.4 |
| Deferred income taxes | 567.1 | 566.7 |
| Asbestos-related insurance receivable | 271.6 | 282.6 |
| Other assets | 253.3 | 234.9 |
| TOTAL ASSETS | $ 2,821.7 | $ 2,691.7 |
| **LIABILITIES AND SHAREHOLDERS' EQUITY (DEFICIT)** | | |
| **LIABILITIES NOT SUBJECT TO COMPROMISE** | | |
| **CURRENT LIABILITIES** | | |
| Debt payable within one year | $ 10.9 | $ 4.3 |
| Accounts payable | 109.0 | 100.3 |
| Income taxes payable | 12.6 | 11.4 |
| Other current liabilities | 131.4 | 131.3 |
| TOTAL CURRENT LIABILITIES | 263.9 | 247.3 |
| Deferred income taxes | 34.4 | 30.5 |
| Other liabilities | 312.4 | 301.4 |
| TOTAL LIABILITIES NOT SUBJECT TO COMPROMISE | 610.7 | 579.2 |
| LIABILITIES SUBJECT TO COMPROMISE - NOTE 2 | 2,385.1 | 2,334.7 |
| TOTAL LIABILITIES | 2,995.8 | 2,913.9 |
| COMMITMENTS AND CONTINGENCIES | | |
| **SHAREHOLDERS' EQUITY (DEFICIT)** | | |
| Common stock issued, par value $0.01; 300,000,000 shares authorized; outstanding: 2003 - 65,558,510 (2002 - 65,466,725) | 0.8 | 0.8 |
| Paid-in capital | 432.1 | 433.0 |
| Accumulated deficit | (121.4) | (115.7) |
| Treasury stock, at cost: shares: 2003 - 11,421,250 (2002 - 11,513,035) | (135.9) | (137.0) |
| Accumulated other comprehensive loss | (349.7) | (403.3) |
| TOTAL SHAREHOLDERS' EQUITY (DEFICIT) | (174.1) | (222.2) |
| TOTAL LIABILITIES AND SHAREHOLDERS' EQUITY (DEFICIT) | $ 2,821.7 | $ 2,691.7 |

The Notes to Consolidated Financial Statements are an integral part of these statements.

I-4

Source: W R GRACE & CO, 10-Q, November 10, 2003

W. R. GRACE & CO. AND SUBSIDIARIES
CONSOLIDATED STATEMENTS OF SHAREHOLDERS' EQUITY (DEFICIT) (UNAUDITED)

| Dollars in millions | Common Stock and Paid-in Capital | Accumulated Deficit | Treasury Stock | Accumulated Other Comprehensive Loss | TOTAL SHAREHOLDERS' EQUITY (DEFICIT) |
|---|---|---|---|---|---|
| BALANCE, JUNE 30, 2003 | $ 432.9 | $ (111.5) | $ (136.0) | $ (353.9) | $ (168.5) |
| Net loss | -- | (9.9) | -- | -- | (9.9) |
| Stock plan activity | -- | -- | 0.1 | -- | 0.1 |
| Other comprehensive income | -- | -- | -- | 4.2 | 4.2 |
| BALANCE, SEPTEMBER 30, 2003 | $ 432.9 | $ (121.4) | $ (135.9) | $ (349.7) | $ (174.1) |
| BALANCE, DECEMBER 31, 2002 | $ 433.8 | $ (115.7) | $ (137.0) | $ (403.3) | $ (222.2) |
| Net loss | -- | (5.7) | -- | -- | (5.7) |
| Stock plan activity | (0.9) | -- | 1.1 | -- | 0.2 |
| Other comprehensive income | -- | -- | -- | 53.6 | 53.6 |
| BALANCE, SEPTEMBER 30, 2003 | $ 432.9 | $ (121.4) | $ (135.9) | $ (349.7) | $ (174.1) |

W. R. GRACE & CO. AND SUBSIDIARIES
CONSOLIDATED STATEMENTS OF COMPREHENSIVE INCOME (LOSS) (UNAUDITED)

| Dollars in millions | THREE MONTHS ENDED SEPTEMBER 30, | | NINE MONTHS ENDED SEPTEMBER 30, | |
|---|---|---|---|---|
| | 2003 | 2002 | 2003 | 2002 |
| NET (LOSS) INCOME | $ (9.9) | $ 14.0 | $ (5.7) | $ 47.6 |
| OTHER COMPREHENSIVE INCOME (LOSS): | | | | |
| Foreign currency translation adjustments | 4.2 | (9.5) | 53.6 | 22.9 |
| COMPREHENSIVE INCOME (LOSS) | $ (5.7) | $ 4.5 | $ 47.9 | $ 70.5 |

The Notes to Consolidated Financial Statements are an integral part of these statements.

I-5

Source: W R GRACE & CO, 10-Q, November 10, 2003

W. R. GRACE & CO. AND SUBSIDIARIES
NOTES TO CONSOLIDATED FINANCIAL STATEMENTS
(UNAUDITED)

---

1. BASIS OF PRESENTATION AND SUMMARY OF SIGNIFICANT ACCOUNTING AND
FINANCIAL REPORTING POLICIES

---

W. R. Grace & Co., through its subsidiaries, is engaged in specialty chemicals and specialty materials businesses on a worldwide basis. These businesses consist of catalyst and silica products ("Davison Chemicals") and construction chemicals, building materials and sealants and coatings ("Performance Chemicals").

W. R. Grace & Co. conducts substantially all of its business through a direct, wholly owned subsidiary, W. R. Grace & Co.-Conn. ("Grace-Conn."). Grace-Conn. owns substantially all of the assets, properties and rights of W. R. Grace & Co., either directly or through subsidiaries.

As used in these notes, the term "Company" refers to W. R. Grace & Co. The term "Grace" refers to the Company and/or one or more of its subsidiaries and, in certain cases, their respective predecessors.

VOLUNTARY BANKRUPTCY FILING: In response to a sharply increasing number of asbestos-related bodily injury claims, on April 2, 2001 (the "Filing Date"), W. R. Grace & Co. and 61 of its United States subsidiaries and affiliates, including Grace-Conn. (collectively, the "Debtors"), filed voluntary petitions for reorganization (the "Filing") under Chapter 11 of the United States Bankruptcy Code ("Chapter 11" or the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The cases were consolidated and are being jointly administered under case number 01-01139 (the "Chapter 11 Cases"). Grace's non-U.S. subsidiaries and certain of its U.S. subsidiaries were not included in the Filing.

During 2000 and the first quarter of 2001, Grace experienced several adverse developments in its asbestos-related litigation, including: a significant increase in bodily injury claims, higher than expected costs to resolve bodily injury and certain property damage claims, and class action lawsuits alleging damages from a former attic insulation product. (These claims are discussed in more detail in Note 3 to the Consolidated Financial Statements.) After a thorough review of these developments, the Board of Directors of Grace concluded on April 2, 2001 that a federal court-supervised Chapter 11 process provided the best forum available to achieve predictability and fairness in the claims settlement process.

By filing under Chapter 11, Grace expects to be able to both obtain a comprehensive resolution of the claims against it and preserve the inherent value of its businesses. Under Chapter 11, the Debtors expect to continue to operate their businesses as debtors-in-possession under court protection from their creditors and claimants, while using the Chapter 11 process to develop and implement a plan for addressing the asbestos-related claims against them.

Consequence of Filing - As a consequence of the Filing, pending litigation against the Debtors for pre-petition matters is generally stayed (subject to certain exceptions in the case of governmental authorities), and no party may take action to realize its pre-petition claims except pursuant to an order of the Bankruptcy Court.

The Debtors intend to address all of their pending and future asbestos-related claims and all other pre-petition claims in a plan of reorganization. Such a plan of reorganization may include the establishment of a trust through which all pending and future asbestos-related claims would be channeled for resolution. However, it is currently impossible to predict with any degree of certainty the amount that would be required to be contributed to the trust, how the trust would be funded, how other pre-petition claims would be treated or what impact any reorganization plan may have on the shares of common stock of the Company. The interests of the Company's shareholders could be substantially diluted or cancelled under a plan of reorganization. The formulation and implementation of the plan of reorganization is expected to take a significant period of time.

Status of Chapter 11 Proceedings - Since the Filing, all motions necessary to conduct normal business activities have been approved by the Bankruptcy Court. In addition, the Debtors have received approval from the Bankruptcy Court to pay or otherwise honor certain of its pre-petition obligations in the ordinary course of business, including employee wages and benefits, customer programs, shipping charges, and a limited amount of claims of essential trade creditors.

As provided by the Bankruptcy Code, the Debtors had the exclusive right to propose a plan of reorganization for a 120-day period following the Filing Date. The Debtors have received extensions of their exclusivity

Source: W R GRACE & CO, 10-Q, November 10, 2003

period during which to file a plan of reorganization through February 1, 2004, and extensions of the Debtors' exclusive rights to solicit acceptances of a reorganization plan through April 1, 2004.

Three creditors' committees, two representing asbestos claimants and the third representing other unsecured creditors, and a committee representing shareholders have been appointed in the Chapter 11 Cases. These committees will have the right to be heard on all matters that come before the Bankruptcy Court and, together with a legal representative of future asbestos claimants (whom Grace expects to be appointed by the Bankruptcy Court in the future), are likely to play important roles in the Chapter 11 Cases. The Debtors are required to bear certain of the committees' and the future asbestos claimants representative's costs and expenses, including those of their counsel and financial advisors.

The Debtors' Chapter 11 cases have been assigned to Judge Alfred M. Wolin, a senior federal judge who sits in Newark, New Jersey. Judge Wolin is presiding over asbestos bodily injury matters and the fraudulent conveyance litigation described below. He has assigned the Debtors' other bankruptcy matters to Judge Judith Fitzgerald, a U.S. bankruptcy judge from the Western District of Pennsylvania, sitting in Wilmington, Delaware.

Claims Filings - The Bankruptcy Court established a bar date of March 31, 2003 for claims of general unsecured creditors, asbestos-related property damage claims and medical monitoring claims related to asbestos. The bar date did not apply to asbestos-related bodily injury claims or claims related to Zonolite(R) attic insulation ("ZAI"), which will be dealt with separately.

Approximately 15,000 proofs of claim were filed by the bar date. Of these claims, approximately 10,000 were non-asbestos related, approximately 4,000 were for asbestos-related property damage, and approximately 1,000 were for medical monitoring. In addition, approximately 400 proofs of claim were filed after the bar date. The discussion below refers to claims filed before the bar date.

Approximately 7,000 of the 10,000 non-asbestos related claims involve claims by employees or former employees for future retirement benefits such as pension and retiree medical coverage. Grace views these claims as contingent and does not plan to address them until a later date in the Chapter 11 Cases. The other non-asbestos related claims include claims for payment for goods and services; taxes; product warranties; principal plus interest under pre-petition credit facilities; amounts due under leases; contracts rejected in the Bankruptcy Court; environmental remediation; indemnification or contribution from actual or potential co-defendants in asbestos-related and other litigation; pending non-asbestos related litigation; and non-asbestos related personal injury.

The Debtors' preliminary analysis indicated that many claims are duplicates, represent the same claim filed against more than one of the Debtors, lack any supporting documentation, or provide insufficient supporting documentation. As of September 30, 2003, the Debtors had filed with the Bankruptcy Court approximately 1,100 objections with respect to such claims, most of which were non-substantive (duplicates, no supporting documentation, late filed claims, etc.). The Debtors expect to file a substantial number of additional objections, most of which will be substantive, as analysis and evaluation of the claims progresses.

As claims are resolved, Grace will make adjustments to the liabilities recorded on its financial statements as appropriate. Any such adjustments could be material to the Company's consolidated financial position and results of operations. Because of the uncertainties of the Chapter 11 process, the in-progress state of the Debtors' investigation of submitted claims, and the lack of documentation submitted in support of many claims, Grace, at this time, is not able to estimate the value of the claims that may ultimately be determined and allowed by the Bankruptcy Court.

Litigation Proceedings in Bankruptcy Court - In July 2002, the Bankruptcy Court approved special counsel to represent the ZAI claimants, at the Debtors' expense, in a proceeding to determine certain threshold scientific issues regarding ZAI. The court has set a litigation schedule that would result in pretrial hearings on these issues in November of 2003. (See Note 3 for background information.)

On November 29, 2002, Sealed Air Corporation ("Sealed Air") and Fresenius Medical Care AG ("Fresenius") each announced that they had reached agreements in principle with the Official Committee of Asbestos Personal Injury Claimants and the Official Committee of Asbestos Property Damage Claimants to settle asbestos and fraudulent conveyance claims related to the 1998 transaction involving Grace's former packaging business and Sealed Air, and the 1996 transaction involving Grace's former medical care business and Fresenius, respectively. Under the

I-7

terms of the Fresenius settlement, as subsequently revised and subject to certain conditions, Fresenius would contribute $115.0 million to the Grace estate. In July 2003, the Fresenius settlement was approved by the Bankruptcy Court. Under the terms of the proposed Sealed Air settlement, Sealed Air would make a payment of $512.5 million (plus interest at 5.5% per annum, commencing on December 21, 2002) and nine million shares of Sealed Air common stock, valued at $425.1 million as of September 30, 2003, as directed by the Bankruptcy Court upon confirmation of Grace's plan of reorganization. The Sealed Air settlement remains subject to the approval of the Bankruptcy Court and the fulfillment of specified conditions. Grace is unable to predict how these settlements may ultimately affect its plan of reorganization.

Impact on Debt Capital - All of the Debtors' pre-petition debt is in default due to the Filing. The accompanying Consolidated Balance Sheet as of September 30, 2003 reflects the classification of the Debtors' pre-petition debt within "liabilities subject to compromise."

The Debtors have entered into a debtor-in-possession post-petition loan and security agreement with Bank of America, N. A. (the "DIP facility") in the aggregate amount of $250 million. The term of the DIP facility, originally set to expire April 1, 2003, has been extended for up to an additional three years through April 1, 2006.

Accounting Impact - The accompanying Consolidated Financial Statements have been prepared in accordance with Statement of Position 90-7 ("SOP 90-7"), "Financial Reporting by Entities in Reorganization Under the Bankruptcy Code," promulgated by the American Institute of Certified Public Accountants. SOP 90-7 requires that financial statements of debtors-in-possession be prepared on a going concern basis, which contemplates continuity of operations, realization of assets and liquidation of liabilities in the ordinary course of business. However, as a result of the Filing, the realization of certain Debtors' assets and the liquidation of certain Debtors' liabilities are subject to significant uncertainty. While operating as debtors-in-possession, the Debtors may sell or otherwise dispose of assets and liquidate or settle liabilities for amounts other than those reflected in the Consolidated Financial Statements. Further, a plan of reorganization could materially change the amounts and classifications reported in the Consolidated Financial Statements, which do not currently give effect to any adjustments to the carrying value or classification of assets or liabilities that might be necessary as a consequence of a plan of reorganization.

Pursuant to SOP 90-7, Grace's pre-petition liabilities that are subject to compromise are required to be reported separately on the balance sheet at an estimate of the amount that will ultimately be allowed by the Bankruptcy Court. As of September 30, 2003, such pre-petition liabilities include fixed obligations (such as debt and contractual commitments), as well as estimates of costs related to contingent liabilities (such as asbestos-related litigation, environmental remediation, and other claims). The recorded amounts of such liabilities generally reflect accounting measurements as of the Filing Date, adjusted as warranted for changes in facts and circumstances and/or rulings under Grace's Chapter 11 proceedings subsequent to the Filing. (See Note 2 to the Consolidated Financial Statements for detail of the liabilities subject to compromise as of September 30, 2003, and December 31, 2002.) Obligations of Grace subsidiaries not covered by the Filing continue to be classified on the Consolidated Balance Sheets based upon maturity dates or the expected dates of payment. SOP 90-7 also requires separate reporting of certain expenses, realized gains and losses, and provisions for losses related to the Filing as reorganization items.

BASIS OF PRESENTATION: The interim Consolidated Financial Statements presented herein are unaudited and should be read in conjunction with the Consolidated Financial Statements presented in the Company's 2002 Annual Report on Form 10-K. Such interim Consolidated Financial Statements reflect all adjustments that, in the opinion of management, are necessary for a fair presentation of the results of the interim periods presented; all such adjustments are of a normal recurring nature. Potential accounting adjustments discovered during normal reporting and accounting processes are evaluated on the basis of materiality, both individually and in the aggregate, and are recorded in the accounting period discovered, unless a restatement of a prior period is necessary. All significant intercompany accounts and transactions have been eliminated.

The results of operations for the three-month and nine-month interim periods ended September 30, 2003 are not necessarily indicative of the results of operations for the year ending December 31, 2003.

RECLASSIFICATIONS: Certain amounts in prior years' Consolidated Financial Statements have been reclassified to conform to the 2003 presentation.

Source: W R GRACE & CO, 10-Q, November 10, 2003

EFFECT OF NEW ACCOUNTING STANDARDS: In January 2003, the Financial Accounting Standards Board ("FASB") issued FASB Interpretation No. 46, "Consolidation of Variable Interest Entities" ("FIN 46"). Grace early adopted the provisions of FIN 46 in the fourth quarter of 2002. The adoption of FIN 46 required Grace to consolidate Advanced Refining Technologies LLC, a joint venture between Grace and Chevron Products Company. The impact of this consolidation was not material.

In December 2002, the FASB issued Statement of Financial Accounting Standards ("SFAS") No. 148, "Accounting for Stock-Based Compensation - Transition and Disclosure, an amendment of SFAS Statement No. 123." SFAS No. 148 amends SFAS No. 123 to provide alternative methods of transition for a voluntary change to the fair value based method of accounting for stock-based compensation. In addition, SFAS No. 148 amends the disclosure requirements of SFAS No. 123 to require prominent disclosures in both annual and interim financial statements about the method of accounting for stock-based employee compensation and the effect of the method used on reported results. The disclosure provisions of SFAS No. 148, which Grace adopted in December 2002, are incorporated below.

In November 2002, the FASB issued FASB Interpretation No. 45, "Guarantor's Accounting and Disclosure Requirements of Guarantees, Including Indirect Guarantees of Indebtedness of Others" ("FIN 45"). Grace adopted FIN 45 in the first quarter of 2003. FIN 45 did not have a material effect on the Consolidated Financial Statements. (See Note 13 for required disclosures.)

In July 2002, the FASB issued SFAS No. 146, "Accounting for Costs Associated with Exit or Disposal Activities." SFAS No. 146 addresses significant issues relating to the recognition, measurement, and reporting of costs associated with exit and disposal activities, including restructuring activities. Grace adopted SFAS No. 146 in the first quarter of 2003. SFAS No. 146 did not have a material effect on the Consolidated Financial Statements.

In August 2001, the FASB issued SFAS No. 143, "Accounting for Asset Retirement Obligations." SFAS No. 143 requires the accrual of asset retirement obligations by increasing the initial carrying amount of the related long-lived asset, and systematically expensing the cost of such obligations over the asset's useful life. Grace adopted SFAS No. 143 in the first quarter of 2003. SFAS No. 143 did not have a material effect on the Consolidated Financial Statements.

STOCK INCENTIVE PLANS: SFAS No. 123 permits the Company to follow the measurement provisions of Accounting Principles Board Opinion No. 25, "Accounting for Stock Issued to Employees," and not recognize compensation expense for its stock-based incentive plans. Had compensation cost for the Company's stock-based incentive compensation plans been determined based on the fair value at the grant dates of awards under those plans, consistent with the fair value methodology prescribed by SFAS No. 123, the Company's net (loss) income and related (loss) earnings per share for the three-month and nine-month periods ended September 30, 2003 and 2002 would have been reduced to the pro forma amounts indicated below:

| PRO FORMA EARNINGS UNDER SFAS NO. 123 (Dollars in millions, except per share amounts) | THREE MONTHS ENDED SEPTEMBER 30, | | NINE MONTHS ENDED SEPTEMBER 30, | |
|---|---|---|---|---|
| | 2003 | 2002 | 2003 | 2002 |
| Net (loss) income, as reported | $ (9.9) | $ 14.0 | $ (5.7) | $ 47.6 |
| Deduct: Total stock-based employee compensation expense determined under fair value based method for all awards, net of related tax effects | (0.4) | (1.0) | (1.1) | (3.1) |
| Pro forma net (loss) income (1) | $ (10.3) | $ 13.0 | $ (6.8) | $ 44.5 |
| Basic (loss) earnings per share: | | | | |
| As reported | $ (0.15) | $ 0.21 | $ (0.09) | $ 0.73 |
| Pro forma net (loss) income (1) | $ (0.16) | $ 0.20 | $ (0.10) | $ 0.68 |
| Diluted (loss) earnings per share: | | | | |
| As reported | $ (0.15) | $ 0.21 | $ (0.09) | $ 0.73 |
| Pro forma net (loss) income (1) | $ (0.16) | $ 0.20 | $ (0.10) | $ 0.68 |

(1) These pro forma amounts may not be indicative of future income (loss) and earnings (loss) per share due to Grace's Chapter 11 Filing.

Source: W R GRACE & CO, 10-Q, November 10, 2003

Source: W R GRACE & CO, 10-Q, November 10, 2003

To determine compensation cost under SFAS No. 123, the fair value of each option is estimated on the date of grant using the Black-Scholes option pricing model, with the following historical weighted average assumptions applied to grants in 2001 and 2000:

| OPTION VALUE ASSUMPTIONS | 2001 | 2000 |
|---|---|---|
| Dividend yield | --% | --% |
| Expected volatility | 61% | 59% |
| Risk-free interest rate | 5% | 7% |
| Expected life (in years) | 4 | 4 |

I-9

To determine compensation cost under SFAS No. 123, the fair value of each option is estimated on the date of grant using the Black-Scholes option pricing model, with the following historical weighted average assumptions applied to grants in 2001 and 2000:

| OPTION VALUE ASSUMPTIONS | 2001 | 2000 |
|---|---|---|
| Dividend yield | --% | --% |
| Expected volatility | 61% | 59% |
| Risk-free interest rate | 5% | 7% |
| Expected life (in years) | 4 | 4 |

I-9

Based upon the above assumptions, the weighted average fair value of each option granted was $1.28 per share for 2001 and $6.86 per share for 2000.

USE OF ESTIMATES: The preparation of financial statements in conformity with U.S. generally accepted accounting principles requires that management make estimates and assumptions affecting the assets and liabilities reported at the date of the Consolidated Financial Statements, and the revenues and expenses reported for the periods presented. Actual amounts could differ from those estimates. Changes in estimates are recorded in the period identified. Grace's accounting measurements that are most affected by management's estimates of future events are:

- Contingent liabilities such as asbestos-related matters, environmental remediation, income taxes, and retained obligations of divested businesses.
- Pension and postretirement liabilities that depend on assumptions regarding discount rates and/or total returns on invested funds.
- Depreciation and amortization periods for long-lived assets, including property and equipment, intangible, and other assets.
- Realization values of various assets such as trade receivables, inventories, insurance receivables, income taxes, and goodwill.

The accuracy of these and other estimates may also be materially affected by the uncertainties arising under the Chapter 11 Cases.

## 2. CHAPTER 11 RELATED FINANCIAL INFORMATION

As a result of the Filing, Grace's Consolidated Balance Sheet separately identifies the liabilities that are "subject to compromise" as a result of the Chapter 11 proceedings. In Grace's case, "liabilities subject to compromise" represent pre-petition liabilities as determined under U.S. generally accepted accounting principles. Changes to the recorded amount of such liabilities will be based on developments in the Chapter 11 Cases and management's assessment of the claim amounts that will ultimately be allowed by the Bankruptcy Court. Changes to pre-petition liabilities subsequent to the Filing Date reflect: 1) cash payments under approved court orders; 2) the accrual of interest on pre-petition debt at the pre-petition contractual rate; 3) accruals for employee-related programs; and 4) changes in estimates related to pre-petition contingent liabilities and assets.

Components of liabilities subject to compromise are as follows:

| (Dollars in millions) (Unaudited) | SEPTEMBER 30, 2003 | December 31, 2002 |
|---|---|---|
| Debt, pre-petition plus accrued interest | $ 547.5 | $ 538.8 |
| Asbestos-related liability | 964.6 | 973.2 |
| Income taxes | 238.3 | 227.8 |
| Environmental remediation | 244.4 | 201.1 |
| Postretirement benefits other than pension | 139.0 | 147.2 |
| Special pension arrangements | 76.5 | 74.9 |
| Retained obligations of divested businesses | 57.6 | 55.3 |
| Accounts payable | 32.2 | 32.4 |
| Other accrued liabilities | 85.0 | 84.0 |
| | $ 2,385.1 | $ 2,334.7 |

Set forth below is a reconciliation of the changes in pre-filing date liability balances for the period from the Filing Date through September 30, 2003.

| (Dollars in millions) | Cumulative Since Filing |
|---|---|
| Balance, Filing Date | $ 2,366.0 |
| Cash disbursements and/or reclassifications under Bankruptcy Court orders: | |
|   Freight and distribution order | (5.7) |
|   Trade accounts payable order | (9.1) |
| Other court orders including employee wages and benefits, sales and use tax, and customer programs | (167.9) |
| Expense/(income) items: | |
|   Interest on pre-petition debt | 44.0 |
|   Current period employee-related accruals | 25.8 |
|   Change in estimate of environmental contingencies | 129.0 |
|   Change in estimate of income tax | |

Source: W R GRACE & CO, 10-Q, November 10, 2003

```
     contingencies..............................     26.7
Balance sheet reclassifications................    (23.7)
                                                 ----------
Balance, end of period.......................  $  2,385.1
                                                 ==========
```

Source: W R GRACE & CO, 10-Q, November 10, 2003