Source: W R GRACE & CO, 10-Q, November 10, 2003

2002. Grace's recorded liability for postretirement benefits of $139.0 million at September 30, 2003 is stated at net present value discounted at 6.75%. The continuing payment of these benefits has been approved by the Bankruptcy Court; however, the program would still be subject to the terms of a Chapter 11 reorganization plan.

RETAINED OBLIGATIONS OF DIVESTED BUSINESSES

The principal obligations of divested businesses retained by Grace are contractual indemnification and contingent liabilities not passed on to the new owners. At September 30, 2003, Grace had recorded $57.6 million, to satisfy such obligations. Most of these matters are now subject to the automatic stay of the Bankruptcy Court and are expected to be resolved as part of Grace's Chapter 11 proceedings.

TAX MATTERS

Grace has received the examination report from the Internal Revenue Service (the "IRS") on tax periods 1993 through 1996 asserting, in the aggregate, approximately $114.0 million of proposed tax adjustments. The most significant contested issue addressed in such report concerns corporate-owned life insurance ("COLI") policies and is discussed below. Other proposed IRS tax adjustments include Grace's tax position regarding research and development credits, the reporting of certain divestitures and other miscellaneous proposed adjustments. The tax audit for the 1993 through 1996 tax period is under the jurisdiction of the IRS Office of Appeals, where Grace has filed a protest. Grace's federal tax returns covering periods 1997 and forward are either under examination by the IRS or open for future examination. Grace believes that the impact of probable tax return adjustments would not have a material adverse effect upon Grace's financial position. Any cash payment would be subject to Grace's Chapter 11 proceedings.

In 1988 and 1990, Grace acquired COLI policies on the lives of certain of its employees as part of a strategy to fund the cost of postretirement employee health care benefits and other long-term liabilities. COLI premiums have been funded in part by loans issued against the cash surrender value of the COLI policies. The IRS is challenging deductions of interest on loans secured by COLI policies for years prior to 1999. In 2000, Grace paid $21.2 million of tax and interest related to this issue for tax years 1990 through 1992. Subsequent to 1992, Grace deducted approximately $163.2 million in interest attributable to COLI policy loans. Although Grace continues to believe that the deductions were legitimate, the IRS has successfully challenged interest deductions claimed by other corporations with respect to broad-based COLI policies in three out of four litigated cases. Given the level of IRS success in COLI cases, Grace requested and was granted early referral to the IRS Office of Appeals for consideration of possible settlement alternatives of the COLI interest deduction issue.

On September 23, 2002, Grace filed a motion in its Chapter 11 proceeding requesting that the Bankruptcy Court authorize Grace to enter into a settlement agreement with the IRS with respect to Grace's COLI interest deductions. The tax years at issue are 1989 through 1998. Under the terms of the proposed settlement, the government would allow 20% of the aggregate amount of the COLI interest deductions and Grace would owe federal income tax and interest on the remaining 80%. Grace has accrued for the potential tax and interest liability related to the disallowance of all COLI interest deductions and continues to accrue interest as part of its quarterly income tax provision. On October 22, 2002, the Bankruptcy Court issued an order authorizing Grace to enter into settlement discussions with the IRS consistent with the aforementioned terms and further ordered that any final agreement would be subject to Bankruptcy Court approval. Grace is currently in negotiations with the IRS concerning the proposed settlement, and the possible termination of the COLI policies.

The IRS has assessed additional federal income tax withholding and Federal Insurance Contributions Act taxes plus interest and related penalties for calendar years 1993 through 1995 against a Grace subsidiary that formerly operated a temporary staffing business for nurses and other health care personnel. The assessments, aggregating $21.8 million, were made in connection with a meal and incidental expense per diem plan for traveling health care personnel, which was in effect through 1999. The IRS contends that certain per diem reimbursements should have been treated as wages subject to employment taxes and federal income tax withholding. Grace contends that its per diem and expense allowance plans were in accordance with statutory and regulatory requirements, as well as other published guidance from the IRS. The IRS has issued assessments aggregating $40.1 million for the 1996 through 1998 tax periods and Grace expects the IRS will make additional assessments for the 1999 tax period. The matter is currently pending in the United States Court of Claims. Grace is currently in discussions with the Department of Justice concerning possible settlement options.

Source: W R GRACE & CO, 10-Q, November 10, 2003

## LIQUIDITY AND CAPITAL RESOURCES

### CASH RESOURCES AND AVAILABLE CREDIT FACILITIES

At September 30, 2003, Grace had $390.4 million in cash and cash-like assets on hand ($299.9 million in cash and cash equivalents and $90.5 million in net cash value of life insurance). In addition, Grace had access to committed credit facilities aggregating $250.0 million under the DIP facility, of which $215.7 million (net of borrowings, letters of credit, and holdback provisions) was available at September 30, 2003. The term of the DIP facility, originally set to expire on April 1, 2003, has been extended for up to an additional three years through April 1, 2006. Grace believes that these funds and credit facilities will be sufficient to finance its business strategy while in Chapter 11.

### CASH FLOW

For the nine months ended September 30, 2003, Grace's net cash flow provided by core operations before investing was $114.2 million, compared with $205.8 million for the nine months ended September 30, 2002. Total capital expenditures for the nine months ended September 30, 2003 and 2002 were $65.7 million and $55.4 million, respectively. A substantial portion of these expenditures was directed toward the business segments for routine capital replacements and construction of new catalyst production capacity at the Lake Charles, Louisiana site. Acquisition investments, net of cash acquired, were $3.6 million and $28.5 million for the nine months ended September 30, 2003 and 2002, respectively. For the same periods, pre-tax income from core operations before depreciation and amortization was $173.5 million and $214.1 million, respectively. Grace expects to continue to invest excess cash flow and/or other available capital resources in its core business base. These investments are likely to be in the form of added plant capacity, product line extensions, geographic market expansions and acquisitions. Investments that are outside the ordinary course of business may be subject to Bankruptcy Court approval and Chapter 11 creditor committee review.

The pre-tax cash outflow from noncore activities for the nine months ended September 30, 2003 and 2002 was $16.2 million and $26.3 million, respectively. Expenditures for environmental remediation were lower in the first nine months of 2003, due to the completion of remediation work at certain sites. Postretirement benefits were lower, reflecting higher cost sharing by retirees.

Net cash flows used for investing activities for the nine months ended September 30, 2003 and 2002 were $67.0 million and $80.8 million, respectively. Net cash outflows for investing activities in the first nine months of 2003 consisted primarily of $65.7 million for capital expenditures. Net cash outflows used for investing activities in the first nine months of 2002 consisted primarily of $28.5 million for acquisitions, $55.4 million for capital expenditures, and net investments in life insurance policies of $2.4 million.

Net cash provided by financing activities in the first nine months of 2003 was $0.6 million and net cash used for financing activities in the first nine months of 2002 was $5.9 million. In 2003, net cash inflows were principally composed of $6.5 million of borrowings under the non-debtor and pre-petition credit facilities net of repayments, offset by $3.3 million of fees related to renewal and unused line fees under the DIP facility and $2.6 million in net repayments for loans secured by the cash value of life insurance policies. In 2002, net cash outflows principally consisted of net repayments for loans secured by the cash value of life insurance policies.

The Debtors have received Bankruptcy Court approval to make $48.5 million of contributions to their defined benefit pension plans to address the underfunded status of such plans. Through September 30, 2003, the Debtors contributed a total of $32.8 million to such plans. The Debtors expect to contribute an additional $15.7 million during the fourth quarter of 2003.

### DEBT AND OTHER CONTRACTUAL OBLIGATIONS

Total debt outstanding at September 30, 2003 was $558.4 million, including $46.3 million of accrued interest on pre-petition debt. As a result of the Filing, Grace is now in default on $501.2 million of pre-petition debt, which, together with accrued interest thereon, has been included in "liabilities subject to compromise" as of September 30, 2003. The automatic stay provided under the Bankruptcy Code prevents Grace's lenders from taking any action to collect the principal amounts, as well as related accrued interest. However, Grace will continue to accrue and report interest on such debt during the Chapter 11 proceedings (unless further developments lead management to conclude that it is probable that such interest will be compromised).

Source: W R GRACE & CO, 10-Q, November 10, 2003

At September 30, 2003, Grace had gross financial assurances issued and outstanding of $249.4 million, comprised of $135.0 million of gross surety bonds issued by various insurance companies, and $114.4 million of standby letters of credit and other financial assurances issued by various banks. Of the standby letters of credit, $19.0 million act as collateral for surety bonds, thereby reducing Grace's overall obligations under its financial assurances to a net amount of $230.4 million. These financial assurances were established for a variety of purposes, including insurance and environmental matters, asbestos settlements and appeals, trade-related commitments and other matters. Of the net amount of $230.4 million of financial assurances, $9.4 million were issued by non-Debtor entities and $221.0 million were issued by the Debtors. Of the amounts issued by the Debtors, $192.5 million were issued before the Filing Date, with the remaining $28.5 million being issued subsequent to the Filing, of which $25.8 million was issued under the DIP facility.

FORWARD-LOOKING STATEMENTS

The forward-looking statements contained in this document are based on current expectations regarding important risk factors. Actual results may differ materially from those expressed. In addition to the uncertainties referred to in Management's Discussion and Analysis of Results of Operations and Financial Condition, other uncertainties include: the impact of worldwide economic conditions; pricing of both Grace's products and raw materials; customer outages and customer demand; factors resulting from fluctuations in interest rates and foreign currencies; the impact of competitive products and pricing; the continued success of Grace's process improvement initiatives; the impact of tax, legislation and other regulations in the jurisdictions in which Grace operates; and developments in and the outcome of the Chapter 11 proceedings discussed above. Also, see "Introduction and Overview - Projections and Other Forward-Looking Information" in Item 1 of Grace's current Annual Report on Form 10-K.

Source: W R GRACE & CO, 10-Q, November 10, 2003

ITEM 3. QUANTITATIVE AND QUALITATIVE DISCLOSURES ABOUT MARKET RISK
------------------------------------------------------------------

Grace had no outstanding derivative financial instruments on September 30, 2003. For further information concerning Grace's quantitative and qualitative disclosures about market risk, refer to Notes 13 and 15 in the Consolidated Financial Statements in Grace's 2002 Annual Report on Form 10-K.

ITEM 4. CONTROLS AND PROCEDURES
--------------------------------

GENERAL STATEMENT OF RESPONSIBILITY

The management of Grace is responsible for the preparation, integrity and objectivity of the Consolidated Financial Statements and the other information included in this report. The financial statements have been prepared in conformity with accounting principles generally accepted in the United States of America and accordingly include certain amounts that represent management's best estimates and judgments. Actual amounts could differ from those estimates. Management maintains internal control systems to assist it in fulfilling its responsibility for financial reporting. These systems include business, accounting and reporting policies and procedures, selection of personnel, segregation of duties and an internal audit function. In 2002, a Disclosure Committee was established to oversee Grace's public financial reporting process and key managers are required to confirm their compliance with Grace's policies and internal control systems. While no system can ensure elimination of all errors and irregularities, Grace's systems, which are reviewed and modified in response to changing conditions, have been designed to provide reasonable assurance that assets are safeguarded, policies and procedures are followed, transactions are properly executed and reported, and appropriate disclosures are made. The concept of reasonable assurance is based on the recognition that there are limitations in all systems of internal control and that the costs of such systems should not exceed their benefits.

EVALUATION OF DISCLOSURE CONTROLS AND PROCEDURES

As of September 30, 2003, Grace evaluated the effectiveness of the design and operation of its disclosure controls and procedures pursuant to Rule 13a-15 under the Securities Exchange Act of 1934, as amended (the "Exchange Act"). Based upon that evaluation, Grace's Chief Executive Officer and Chief Financial Officer concluded that the Company's disclosure controls and procedures are effective in ensuring that information required to be disclosed in the Company's periodic filings under the Exchange Act is accumulated and communicated to such officers to allow timely decisions regarding required disclosures. There was no change in the Company's internal control over financial reporting during the third quarter of 2003 that has materially affected, or is reasonably likely to materially affect, the Company's internal control over financial reporting.

Source: W R GRACE & CO, 10-Q, November 10, 2003

PART II. OTHER INFORMATION

ITEM 1. LEGAL PROCEEDINGS
---------------------------------------------------------------------------

Notes 1, 3 and 12 to the interim consolidated financial statements in Part I of this Report are incorporated herein by reference.

ITEM 6. EXHIBITS AND REPORTS ON FORM 8-K
---------------------------------------------------------------------------

(a) Exhibits. The following is a list of Exhibits filed as part of this Quarterly Report on Form 10-Q:

15    Accountants' Awareness Letter

31.1  Certification of Periodic Report by Chief Executive Officer under Section 302 of the Sarbanes-Oxley Act of 2002

31.2  Certification of Periodic Report by Chief Financial Officer under Section 302 of the Sarbanes-Oxley Act of 2002

32    Certification of Periodic Report by Chief Executive Officer and Chief Financial Officer under Section 906 of the Sarbanes-Oxley Act of 2002

(b) Reports on Form 8-K. The following reports on Form 8-K were filed during the third quarter of 2003:

July 23, 2003 - Press release announcing Grace's financial results for the second quarter of 2003.

II-1

Source: W R GRACE & CO, 10-Q, November 10, 2003

SIGNATURE

In accordance with the requirements of the Securities Exchange Act of 1934, the Registrant caused this Report to be signed on its behalf by the undersigned, thereunto duly authorized.

                                          W. R. GRACE & CO.
                                              (Registrant)

Date: November 10, 2003        By /s/ Paul J. Norris
                                              Paul J. Norris
                                              Chairman, President and
                                              Chief Executive Officer

Date: November 10, 2003        By /s/ Robert M. Tarola
                                              Robert M. Tarola
                                              Senior Vice President and
                                              Chief Financial Officer
                                              (Principal Accounting Officer)

Source: W R GRACE & CO, 10-Q, November 10, 2003

EXHIBIT INDEX
---------------

| EXHIBIT NO. | DESCRIPTION OF EXHIBIT |
|---|---|
| 15 | Accountants' Awareness Letter |
| 31.1 | Certification of Periodic Report by Chief Executive Officer under Section 302 of the Sarbanes-Oxley Act of 2002 |
| 31.2 | Certification of Periodic Report by Chief Financial Officer under Section 302 of the Sarbanes-Oxley Act of 2002 |
| 32 | Certification of Periodic Report by Chief Executive Officer and Chief Financial Officer under Section 906 of the Sarbanes-Oxley Act of 2002 |

II-3

```
</TEXT>
</DOCUMENT>
```

EXHIBIT 15

November 10, 2003

Securities and Exchange Commission
450 Fifth Street, N.W.
Washington, D.C. 20549

Commissioners:

We are aware that our report dated October 23, 2003 on our review of interim financial information of W. R. Grace & Co. (the "Company") for the three-month and nine-month periods ended September 30, 2003 and September 30, 2002, and included in the Company's Quarterly Report on Form 10-Q for the quarter then ended, is incorporated by reference in its Registration Statements on Form S-8 (Nos. 333-37024, 333-49083, 333-49507, 333-49509, 333-49511, 333-49513, 333-49515, 333-49703, and 333-49705).

Very truly yours,

/s/ PricewaterhouseCoopers LLP

Baltimore, Maryland

</TEXT>
</DOCUMENT>

EXHIBIT 31.1

CERTIFICATION OF PERIODIC REPORT UNDER SECTION 302 OF
THE SARBANES-OXLEY ACT OF 2002

I, Paul J. Norris, certify that:

1. I have reviewed this quarterly report on Form 10-Q of W. R. Grace & Co.;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4. The registrant's other certifying officers and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

    (a) designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    (b) evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    (c) disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officers and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

    (a) all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

    (b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date:  November 10, 2003

/s/ Paul J. Norris
-------------------------
Paul J. Norris
Chairman, President and
Chief Executive Officer

```
</TEXT>
</DOCUMENT>
```

EXHIBIT 31.2

CERTIFICATION OF PERIODIC REPORT UNDER SECTION 302 OF
THE SARBANES-OXLEY ACT OF 2002

I, Robert M. Tarola, certify that:

1. I have reviewed this quarterly report on Form 10-Q of W. R. Grace & Co.;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4. The registrant's other certifying officers and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

    (a) designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

    (b) evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

    (c) disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officers and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

    (a) all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

    (b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Date:  November 10, 2003

/s/ Robert M. Tarola
-----------------------------------
Robert M. Tarola
Senior Vice President and
Chief Financial Officer

</TEXT>
</DOCUMENT>

EXHIBIT 32

CERTIFICATION UNDER SECTION 906 OF THE SARBANES-OXLEY ACT OF 2002

Pursuant to Section 906 of the Sarbanes-Oxley Act of 2002 (18 U.S.C. Section 1350), the undersigned certifies that (1) this Quarterly Report of W. R. Grace & Co. (the "Company") on Form 10-Q for the period ended September 30, 2003, as filed with the Securities and Exchange Commission on the date hereof (this "Report"), fully complies with the requirements of Sections 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended, and (2) the information contained in this Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

/s/ Paul J. Norris
-----------------------------
Chairman, President and Chief Executive Officer

/s/ Robert M. Tarola
-----------------------------
Senior Vice President and Chief Financial Officer

Date: November 10, 2003

A signed original of this written statement required by Section 906 has been provided to the Company and will be retained by the Company and furnished to the Securities and Exchange Commission or its staff upon request.

```
</TEXT>
</DOCUMENT>
```

Created by 10KWizard   www.10KWizard.com

**Declaration of Daniel D. Bayston Exhibit 3**

2/17/2004

W.R. Grace & Company
Equity Valuation Summary as of 2/17/04
($millions)

|  | Market Value | | |
|---|---|---|---|
|  | Low | Midpoint | High |
| Enterprise Value | $1,800 | $1,875 | $1,950 |
| Plus: Excess Cash | 293 | 293 | 293 |
| Plus: Sealed Air and Fresenius Settlement Proceeds | 849 | 849 | 849 |
| Plus: Asbestos Insurance Receivable[1] | 570 | 570 | 570 |
| Less: Estimated Asbestos Liabilities | 1,900 | 1,900 | 1,900 |
| Less: Debt, Pre-petition, Plus Accrued Interest | 550 | 550 | 550 |
| Less: Income Taxes | 218 | 218 | 218 |
| Less: Environmental Remediation[2] | 314 | 314 | 314 |
| Less: Post-retirement Benefits Other than Pension | 139 | 139 | 139 |
| Less: Special Pension Arrangements | 77 | 77 | 77 |
| Less: Retained Obligations of Divested Businesses | 58 | 58 | 58 |
| Less: Pre-petition Accounts Payable and Other Accrued Liabilities | 117 | 117 | 117 |
| Less: Future Bankruptcy Costs[3] | 91 | 91 | 91 |
| Equity Value[4] | $48 | $123 | $198 |
| Common Shares Outstanding (millions) | 65.56 | 65.56 | 65.56 |
| Value per Share | $0.73 | $1.88 | $3.02 |

Notes:
1) Estimated to be 30 percent of the projected asbestos-related liabilities.
2) Environmental remediation costs are estimated to be $70 million higher than Company's provision for the liability on the 9/30/03 balance sheet based on the most recent Company information.
3) Bankruptcy costs are estimated to be approximately $3 million for one quarter (equivalent to the expenses during the fourth quarter of 2003) and $8 million per quarter for the remainder of the assumed 3-year bankruptcy period.
4) Certain nonoperating assets and liabilities are estimated from the unaudited 12/31/03 balance sheet in the 1/27/04 earnings release.

SSBT-002898
CONFIDENTIAL

<b>Exhibit 14</b>

# Calculated Beta of Portfolio Including W. R. Grace & Co. Common Stock Fund

Source: Bloomberg; Fixed Income Fund Return Data; GR005754 – GR005756

| Fund | Ticker | Beta [1] | Portfolio Allocations as of 3/31/04 |
|---|---|---|---|
| Grace Stock Fund | GRA | 0.75 | 4.26% |
| American Century International Growth Fund | TWIEX | 0.71 | 0.23% |
| Fidelity Balanced Fund | FBALX | 0.60 | 6.03% |
| Fidelity Blue Chip Growth Fund | FBGRX | 1.02 | 11.86% |
| Fidelity Contrafund | FCNTX | 0.66 | 8.44% |
| Fidelity Diversified International Fund | FDIVX | 0.58 | 0.81% |
| Fidelity Equity-Income Fund | FEQIX | 0.94 | 0.60% |
| Fidelity Europe Fund | FIEUX | 0.98 | 0.31% |
| Fidelity Freedom 2000 Fund | FFFBX | 0.22 | 0.02% |
| Fidelity Freedom 2010 Fund | FFFCX | 0.42 | 0.29% |
| Fidelity Freedom 2020 Fund | FFFDX | 0.66 | 0.27% |
| Fidelity Freedom 2030 Fund | FFFEX | 0.78 | 0.12% |
| Fidelity Freedom 2040 Fund | FFFFX | 0.87 | 0.04% |
| Fidelity Freedom Income Fund | FFFAX | 0.16 | 0.15% |
| Fidelity Growth & Income | FGRIX | 0.80 | 5.42% |
| Fidelity Investment Grade Bond Fund | FBNDX | -0.06 | 0.33% |
| Fidelity Low-Priced Stock Fund | FLPSX | 0.73 | 2.78% |
| Fidelity OTC Portfolio | FOCPX | 1.25 | 4.49% |
| Fidelity U.S. Bond Index Fund | FBIDX | -0.07 | 0.37% |
| Fixed Income Fund [2] |  | 0.00 | 50.65% |
| Franklin Small-Mid Cap Growth Fund | FRSGX | 1.11 | 0.52% |
| Invesco Core Equity Fund | FIIIX | 0.90 | 0.10% |
| JP Morgan Institutional U.S. Small Co. Fund [3] | JSCSX | 0.94 | 0.21% |
| PIMCO Total Return Fund - Adm. Class | PTRAX | -0.06 | 0.46% |
| Spartan Extended Market Index Fund | FSEMX | 0.92 | 0.19% |
| Spartan International Index Fund | FSIIX | 0.79 | 0.17% |
| Spartan Total Market Index Fund | FSTMX | 0.97 | 0.17% |
| Spartan U.S. Equity Index Fund | FUSEX | 1.00 | 0.48% |
| Templeton Foreign Fund - Class A | TEMFX | 0.65 | 0.23% |
|  |  | **Portfolio Beta:** | **0.40** |

[1] Betas are calculated for each fund (excluding Fixed Income Fund and JP Morgan Institutional U.S. Small Co. Fund) using weekly returns from 4/6/01 – 4/16/04.

[2] The beta of the Fixed Income Fund is calculated using weekly returns for the Fixed Income Fund regressed on the S&P 500. The beta is calculated over the period 4/6/01 – 4/16/04. The beta of the Fixed Income Fund is statistically insignificant from zero at the 95% confidence level and is therefore assumed to be zero.

[3] The beta for the JP Morgan Institutional U.S. Small Co. Fund is calculated using weekly returns from 9/14/01 – 4/16/04. No earlier data are available.

**Exhibit 15**

# Calculated Beta of Portfolio Excluding
# W. R. Grace & Co. Common Stock Fund

Source: Bloomberg; Fixed Income Fund Return Data; GR005754 – GR005756

| Fund | Ticker | Beta [1] | Allocations assuming Grace Fund Allocated to: [2] | |
|---|---|---|---|---|
| | | | Fixed Income Fund (Scenario 1) [3] | Portfolio Allocation (Scenario 2) [4] |
| American Century International Growth Fund | TWIEX | 0.71 | 0.23% | 0.24% |
| Fidelity Balanced Fund | FBALX | 0.60 | 6.03% | 6.29% |
| Fidelity Blue Chip Growth Fund | FBGRX | 1.02 | 11.86% | 12.39% |
| Fidelity Contrafund | FCNTX | 0.66 | 8.44% | 8.81% |
| Fidelity Diversified International Fund | FDIVX | 0.58 | 0.81% | 0.85% |
| Fidelity Equity-Income Fund | FEQIX | 0.94 | 0.60% | 0.63% |
| Fidelity Europe Fund | FIEUX | 0.98 | 0.31% | 0.33% |
| Fidelity Freedom 2000 Fund | FFFBX | 0.22 | 0.02% | 0.02% |
| Fidelity Freedom 2010 Fund | FFFCX | 0.42 | 0.29% | 0.30% |
| Fidelity Freedom 2020 Fund | FFFDX | 0.66 | 0.27% | 0.28% |
| Fidelity Freedom 2030 Fund | FFFEX | 0.78 | 0.12% | 0.13% |
| Fidelity Freedom 2040 Fund | FFFFX | 0.87 | 0.04% | 0.04% |
| Fidelity Freedom Income Fund | FFFAX | 0.16 | 0.15% | 0.15% |
| Fidelity Growth & Income | FGRIX | 0.80 | 5.42% | 5.66% |
| Fidelity Investment Grade Bond Fund | FBNDX | -0.06 | 0.33% | 0.35% |
| Fidelity Low-Priced Stock Fund | FLPSX | 0.73 | 2.78% | 2.91% |
| Fidelity OTC Portfolio | FOCPX | 1.25 | 4.49% | 4.69% |
| Fidelity U.S. Bond Index Fund | FBIDX | -0.07 | 0.37% | 0.39% |
| Fixed Income Fund [5] | | 0.00 | 54.91% | 52.91% |
| Franklin Small-Mid Cap Growth Fund | FRSGX | 1.11 | 0.52% | 0.54% |
| Invesco Core Equity Fund | FIIIX | 0.90 | 0.10% | 0.11% |
| JP Morgan Institutional U.S. Small Co. Fund [6] | JSCSX | 0.94 | 0.21% | 0.22% |
| PIMCO Total Return Fund - Adm. Class | PTRAX | -0.06 | 0.46% | 0.48% |
| Spartan Extended Market Index Fund | FSEMX | 0.92 | 0.19% | 0.20% |
| Spartan International Index Fund | FSIIX | 0.79 | 0.17% | 0.17% |
| Spartan Total Market Index Fund | FSTMX | 0.97 | 0.17% | 0.17% |
| Spartan U.S. Equity Index Fund | FUSEX | 1.00 | 0.48% | 0.50% |
| Templeton Foreign Fund - Class A | TEMFX | 0.65 | 0.23% | 0.24% |
| **Portfolio Beta:** | | | **0.37** | **0.39** |

[1] Betas are calculated for each fund (excluding Fixed Income Fund and JP Morgan Institutional U.S. Small Co. Fund) using weekly returns from 4/6/01 – 4/16/04.

[2] All allocations are based on the portfolio weighting reported as of 3/31/04.

[3] Fixed Income Allocation assumes all proceeds from the Grace stock sales are transferred to the Fixed Income Fund.

[4] Portfolio Allocation assumes that the proceeds from the Grace stock fund are reallocated into the portfolio based on the weights of the remaining investment alternatives calculated after removing the Grace Stock fund from the Plan.

[5] The beta of the Fixed Income Fund is calculated using weekly returns for the Fixed Income Fund regressed on the S&P 500. The beta is calculated over the period 4/6/01 – 4/16/04. The beta of the Fixed Income Fund is statistically insignificant from zero at the 95% confidence level and is therefore assumed to be zero.

[6] The beta for the JP Morgan Institutional U.S. Small Co. Fund is calculated using weekly returns from 9/14/01 – 4/16/04. No earlier data are available.

Exhibit 16

# Grenadier Damages Using a Corrected Methodology

Source: Bloomberg; *Stocks, Bonds, Bills, and Inflation 2005 Yearbook*; Fixed Income Fund Return Data; GR005754 — GR005756; April 16 2004 Plan 89994 Statement.pdf

| Beta of Portfolio with Grace Fund [1],[2] | Beta of Portfolio Assuming Grace Stock Fund Allocated to: [3] | | Expected Foregone Returns Based on: [4] | | Total Portfolio Value [7] | Foregone Proceeds As Of 6/11/07 [8] | |
|---|---|---|---|---|---|---|---|
| | Fixed Income Fund | Portfolio | Fixed Income Allocation (Scenario 1) [5] | Portfolio Allocation (Scenario 2) [6] | | Fixed Income Allocation (Scenario 1) [5] | Portfolio Allocation (Scenario 2) [6] |
| 0.40 | 0.37 | 0.39 | 0.27% | 0.13% | $483,144,654 | $4,195,105 | $2,023,778 |

**Foregone Proceeds:    $2,023,778 – $4,195,105**

[1] Betas are calculated for each fund (excluding the Fixed Income Fund) using weekly returns from 4/6/01 – 4/16/04. For the JP Morgan Institutional U.S. Small Co. Fund, the beta is calculated using weekly returns from 9/14/01 – 4/16/04. No earlier data are available for this fund.
[2] The beta of the Fixed Income Fund is calculated using weekly returns for the Fixed Income Fund regressed on the S&P 500. The beta is calculated over the period 4/6/01 – 4/16/04. The beta of the Fixed Income Fund is statistically insignificant from zero at the 95% confidence level and is therefore assumed to be zero.
[3] All allocations are based on the portfolio weighting reported as of 3/31/04. Source: GR005754 — GR005756
[4] Expected Foregone Returns = ($\beta_{Portfolio\ with\ Grace\ Fund}$ - $\beta_{Portfolio\ without\ Grace\ Fund}$)*Equity Risk Premium. Equity Risk Premium is the short-horizon expected equity risk premium [large company stock total returns - U.S. Treasury bill total returns] and is 8.6%. The expected risk premium for equities are based on the differences of historical arithmetic mean returns from 1926 – 2004. Source: *Stocks, Bonds, Bills, and Inflation 2005 Yearbook*
[5] Fixed Income Allocation assumes all proceeds from the Grace stock sales are transferred to the Fixed Income Fund and remain in this allocation through the entire period (4/16/04 – 6/11/07).
[6] Portfolio Allocation assumes that the proceeds from the Grace stock fund are reallocated into the portfolio based on the weights of the remaining investment alternatives calculated after removing the Grace Stock fund from the Plan and remain in this allocation through the entire period (4/16/04 – 6/11/07).
[7] Total Portfolio Value is as of 4/15/04. Source: April 16 2004 Plan 89994 Statement.pdf
[8] Foregone Proceeds are calculated for the period 4/16/04 – 6/11/07.