- 89 -

of his Vested Interest determined as of the Business Day
on which the Recordkeeper processes his distribution
election form.

SSBT-002184
CONFIDENTIAL

- 90 -

8.02    Death

    If a Participant, Inactive Participant or former Participant shall die before the distribution of his entire Vested Interest has commenced or been completed, the balance of such Vested Interest determined as of the Business Day on which the Recordkeeper processes the applicable distribution form following the Participant's date of death shall be distributed as soon as practicable thereafter to his beneficiary as provided in Section 8.03.

8.03    Except as provided below, each Participant, Inactive Participant, or former Participant shall designate a person or persons as his beneficiary or beneficiaries to receive the death benefits provided in Section 8.02. Such designation shall be made by written notice to the Administrative Committee, and may be changed in similar manner. In the event that no beneficiary shall have been designated or the last designated beneficiary shall not be living at the time that death benefits become payable, the death benefits will be paid to the estate of the Participant, Inactive Participant or former Participant. Notwithstanding any other provision of the Plan, effective August 23, 1984, in the case of a Participant, Inactive Participant, or former Participant who is married at the time of his death, such beneficiary shall automatically be his spouse (and no other person designated by him shall be entitled to any benefits in respect of him under the Plan), unless another beneficiary or an additional beneficiary is named with the consent of such spouse.

SSBT 002185
CONFIDENTIAL

- 91 -

8.04    If the value of a Participant's or Inactive Participant's Vested Interest (without regard to any amount attributable to rollover contributions and earnings allocable thereto within the meaning of Code sections 402(c), 403(a)(4), 403(b)(8), 408(d)(3)(A)(ii) and 457(e)(16), with respect to distributions made after January 1, 2002) determined as of the Business Day coincident with or next following the date of his Termination of Service exceeds $5,000 (or $3,500, with respect to a former Participant who terminates active participation under the Plan on or prior to March 30, 1998) and his Account is immediately distributable, the former Participant or Inactive Participant must consent to any distribution of his Account.  For purposes of this Section 8.04, an Account is immediately distributable if any part of such Account could be distributed before a Participant or Inactive Participant attains age 65.  The consent of the former Participant or Inactive Participant shall be obtained within the 90-day period ending on the annuity starting date.  The annuity starting date is the first day of the first period for which an amount is paid as an annuity or any other form.  The Administrative Committee shall, not less than 30 days and not more than 90 days prior to the annuity starting date, notify a Participant or Inactive Participant of the right to defer the distribution of his Account until the last day of the Plan Year in which the Participant or Inactive Participant attains age 70-1/2.  However, distribution may commence less than 30 days after the notice described in the preceding sentence is given, provided the Administrative Committee clearly informs the

SSBT-002186
CONFIDENTIAL

- 92 -

Participant or Inactive Participant that he has a right to a period of at least 30 days after receiving the notice to consider the decision of whether or not to elect a distribution (and, if applicable, a particular distribution option), and the Participant or Inactive Participant (with any applicable spousal consent) after receiving the notice, affirmatively elects a distribution; provided that such a distribution shall commence no earlier than 7 days after such notice is provided. A former Participant who has made an election to defer the distribution of his Account under this Section 8.04 may elect to receive a distribution of his Account as a single lump sum payment in cash or in annual or quarterly installments as of a date earlier than the applicable dates described in the sentence before the preceding sentence. In this event, any such former Participant who elects a single lump sum payment in cash shall receive the value of his Vested Interest determined as of the Business Day on which the Recordkeeper processes his distribution election, with actual payment to be made as soon as practicable thereafter. Alternatively, any such former Participant who elects annual or quarterly installments shall receive the first such installment, based on the value of his Vested Interest determined as of the first Business Day of the first calendar quarter after his election to receive an earlier distribution is received by the Administrative Committee, with actual payment to be made as soon as practicable thereafter. The remaining Vested Interest of such former Participant shall be valued as of the first Business Day of each subsequent calendar quarter (or, in the case of an annual installment, as of

SSBT-002187
CONFIDENTIAL

- 93 -

the first Business day of that calendar quarter which is one year after the previous installment), and the amount of the installment payment shall equal the value of such remaining Vested Interest multiplied by a fraction, the numerator of which is 1 and the denominator of which is the number of remaining installment payments to be made (including the installment payment in question).

8.05    A Participant, Inactive Participant, or beneficiary, who receives a single lump sum payment may elect to receive that portion of his Vested Interest in the Grace Common Stock Fund and, for periods after June 30, 1989, the value of his ESOP Account, in the aggregate, payable to him in whole shares of Grace Stock plus cash for any fractional share.

8.06    Except as otherwise provided under regulations of the Internal Revenue Service, and subject to Section 8.04 of the Plan, the payment of benefits under the Plan to a former Participant shall be made or commence, as the case may be, not later than the 60th day after the close of the latest of three Plan Years: (1) the Plan Year in which the Participant attains age 65, (2) the Plan Year in which the tenth anniversary of the Participant's commencement of participation in the Plan occurs, and (3) the Plan Year in which the Participant has a Termination of Service.

Notwithstanding any other provision of the Plan, any benefit payable to a Participant or former Participant who terminates service other than by death shall be paid, or commence to be paid, not later than April 1 of the

SSBT-002188
CONFIDENTIAL

- 94 -

calendar year following the later of (i) the calendar year in which he attains age 70-1/2, or (ii) the calendar year in which he terminates service (for non 5% owners), and shall be payable over the period of his life or the lives of him and a designated beneficiary, or a period not extending beyond his life expectancy or their life expectancies, and the benefit, if any, payable after his death shall be payable at least as rapidly as under the method of distribution then applicable at the time of the Participant's death.  If the Participant dies before benefits commence under the Plan, such benefits shall be payable within 5 years after the death of the Participant, or over the life of a designated beneficiary, or over a period not extending beyond the life expectancy of a designated beneficiary, and such benefits shall commence within one year after the Participant's death, but need not commence before the date that the Participant would have attained age 70-1/2, in the case of a designated beneficiary who is the Participant's spouse.  Upon the death of such spouse, the foregoing rules shall apply as if such spouse were the Participant.

Notwithstanding any other provisions of the Plan, with respect to distributions under the Plan made on or after September 1, 2001 for calendar years beginning on or after January 1, 2001, the Plan will apply the minimum distribution requirements of section 401(a)(9) of the Internal Revenue Code in accordance with the regulations under section 401(a)(9) that were proposed on January 17, 2001 (the 2001 Proposed Regulations).  If the total amount of required minimum distributions made to a Participant

SSBT-002189
CONFIDENTIAL

- 95 -

for 2001 prior to September 1, 2001 are equal to or greater than the amount of the required minimum distributions determined under the 2001 Proposed Regulations, then no additional distributions are required for such Participant for 2001 on or after such date. If the total amount of required minimum distributions made to a Participant for 2001 prior to September 1, 2001 are less than the amount determined under the 2001 Proposed Regulations, then the amount of required minimum distributions for 2001 on or after such date will be determined so the total amount of required minimum distributions for 2001 is the amount determined under the 2001 Proposed Regulations. This amendment shall continue in effect until the last calendar year beginning before the effective date of the final regulations under section 401(a)(9) or such other date as my be published by the Internal Revenue Service.

8.07    Notwithstanding the other provisions of Section 8 of the Plan, a Participant or Inactive Participant may change an election under Section 8.01 of the Plan with respect to the form or timing of the distribution of his Vested Interest one time during the period after the date of his Retirement, his Disability Date, or the date of his other Termination of Service (except by death) and prior to the date as of which his Vested Interest is to be paid or commence to be paid. Such change of an election may be made at such time, with such effective date, and on such form as may be prescribed by the Administrative Committee. In addition, a former Participant or Inactive Participant who has commenced receiving a distribution of his Vested

SSBT-002190
CONFIDENTIAL

- 96 -

Interest in the form of installment payments may accelerate the distribution of such Vested Interest by electing to receive a single lump sum payment in cash equal to the value of such remaining Vested Interest determined on the Business Day on which the Recordkeeper processes his distribution election.

8.08    Notwithstanding any other provision of the Plan, a distribution made on account of the following may only be made in the form of a lump sum:

(1)    on account of the sale or other disposition by the Company, or any corporation or other entity regarded as under common control with the Company pursuant to Code section 414(b)(1), of substantially all of the assets (within the meaning of section 409(d)(2) of the Code) used by the Company or other such entity in a trade or business, with respect to an individual who continues employment with the corporation acquiring such assets; or

(2)    on account of the sale or other disposition by the Company or other such entity of the Company's or other such entity's interest in a subsidiary (within the meaning of section 409(d)(3) of the Code) with respect to an individual who continues employment with such subsidiary.

8.09    Eligible Rollover Distributions

SSBT-002191
CONFIDENTIAL

- 97 -

(A)     This Section applies to distributions made on or
        after January 1, 1993.  Notwithstanding any
        provision of the Plan to the contrary that would
        otherwise limit a distributee's election under the
        Plan, a distributee may elect, at the time and in
        the manner prescribed by the Administrative
        Committee, to have any portion of an eligible
        rollover distribution that is equal to at least
        $500 paid directly to an eligible retirement plan
        specified by the distributee in a direct rollover.

(B)     Eligible Rollover Distribution:  An eligible
        rollover distribution is any distribution of all or
        any portion of the balance to the credit of the
        distributee, except that any eligible rollover
        distribution does not include:  any distribution
        that is (or is treated as under Treasury Regulation
        1.402(c)-2T) one of a series of substantially equal
        periodic payments (not less frequently than
        annually) made for the life (or life expectancy) of
        the distributee or the joint lives (or joint life
        expectancies) of the distributee and the
        distributee's designated beneficiary, or for a
        specified period of ten years or more; any
        distribution to the extent such distribution is
        required under section 401(a)(9) of the Code; the
        portion of any other distribution(s) that is not
        includible in gross income (determined without
        regard to the exclusion for net unrealized
        appreciation with respect to employer securities);
        any other distribution(s) that is reasonably

SSBT-002192
CONFIDENTIAL

- 98 -

expected to total less than $200 during a year; and any hardships withdrawal made after December 31, 1998. For distributions made on or after January 1, 2002, a portion of a distribution shall not fail to be an eligible rollover distribution merely because the portion consists of amounts that are not includable in gross income. However, such portion may be transferred only to an individual retirement account or annuity described in Code section 408(a) or (b), or to a qualified defined contribution plan described in Code section 401(a) or 403(a) that shall separately account for the portion of such distribution which is includible in gross income and the portion of such distribution which is not so includible.

(C)    Eligible retirement plan:  An eligible retirement plan is an individual retirement account described in section 408(a) of the Code, an individual retirement annuity described in section 408(b) of the Code, an annuity plan described in section 403(a) of the Code, or a qualified trust described in section 401(a) of the Code, that accepts the distributee's eligible rollover distribution. For distributions made on or after January 1, 2002, an eligible retirement plan shall also mean an annuity contract described in Code section 403(b) and an eligible plan under Code section 457(b) which is maintained by a state, or any agency or instrumentality of a state or political subdivision of a state and which agrees to separately account

SSBT-002193
CONFIDENTIAL

- 99 -

for amounts transferred into such plan from this Plan. Notwithstanding any other provision of this Section 8.09, for distributions made on or after January 1, 2002, the definition of eligible retirement plan shall also apply in the case of a distribution to a surviving spouse, or to a former spouse who is the alternate payee under a qualified domestic relations, as defined in Code section 414(q). For distributions made before January 1, 2002, in the case of an eligible rollover distribution to the surviving spouse, an eligible retirement plan is an individual retirement account or individual retirement annuity.

(D)    Distributee:  A distributee includes an employee or former employee.  In addition, the employee's or former employee's surviving spouse and the employee's or former employee's spouse or former spouse who is the alternate payee under a qualified domestic relations order, as defined in section 414(p) of the Code, are distributees with regard to the interest of the spouse or former spouse.

(E)    Direct rollover:  A direct rollover is a payment by the Plan to the eligible retirement plan specified by the distributee.

SSBT 002194
CONFIDENTIAL

- 100 -

8.10 Distributions to former Participants of the Grace Drilling Money Purchase Pension Plan ("Grace Drilling Plan") and the HOMCO International, Inc. Employees' Profit Sharing Investment Savings and Retirement Plan ("HOMCO Plan").

Notwithstanding any other provisions of this Section 8, a Plan Participant whose Account includes amounts transferred from the Grace Drilling Plan or the HOMCO Plan (hereinafter referred to as the "Grace Drilling Transferred Amount" and "HOMCO Transferred Amount" respectively and as the "Transferred Amounts," collectively), may elect (in addition to the other options available under this Section 8) at any time prior to his or her Disability Date, or the date of his or her Retirement or other Termination of Service, whichever occurs first, to receive that portion of his or her Vested Interest in the Grace Drilling Transferred Amount or HOMCO Transferred Amount, plus earnings on either; in any one of the following forms of benefit described below, with respect to the applicable transferred amount.

(a) Participants Entitled to a Grace Drilling Transferred Amount. For purposes of this Section 8.10, a Participant with such a Transferred Amount will be deemed to have reached Normal Retirement Age with respect to the Grace Drilling Transferred Amount, and earnings thereon, as of (i) the first day of any month after attainment of age 60 or (ii) as of the first day of any month following the attainment of age 55 and completion of ten years of service, whichever occurs first.

SSBT-002195
CONFIDENTIAL

- 101 -

Unless an optional form of benefit is selected pursuant
to a qualified election within the 90-day period ending
on the annuity starting date, a married Participant's
vested Grace Drilling Transferred Amount and earnings
thereon will be paid in the form of a qualified joint
and survivor annuity and an unmarried Participant's
vested Grace Drilling Transferred Amount and earnings
thereon will be paid in the form of a life annuity.

A Participant with a Grace Drilling Transferred Amount
may elect to receive that portion of his or her Vested
Interest representing the Grace Drilling Transferred
Amount, plus earnings thereon, in any one of the
following optional forms of benefit as described below:

    (1)   A lump sum distribution, provided that if the
        Participant is married, his or her spouse
        must consent to this form of distribution.

    (2)   Installment distributions, provided that if
        the Participant is married, his or her spouse
        must consent to this form of distribution.
        With such consent, the Participant may elect
        monthly or annual installments, where the
        installment payments will be equal payments
        over a 5, 10 or 15 year period, as selected
        by the Participant.  If the Participant dies
        after the installment payments have
        commenced, any remaining payments due will be
        paid to the Participant's beneficiary.
        Installment payments will commence as soon as

SSBT-002196
CONFIDENTIAL

- 102 -

administratively practicable, but in no event
more that one year following the
Participant's Disability Date, Retirement or
other Termination of Service, whichever
occurs first.

(3)   Optional Annuity Forms.  A Participant may
elect to have the Grace Drilling Transferred
Amount, plus earnings thereon, converted to a
life annuity, provided that if the
Participant is married, his or her spouse
must consent to this form of distribution.
With such consent, the following forms of
annuity are available to the Participant:

(i)   Monthly payments for the Participant's
life, with no death benefits.

(ii)  Monthly payments for the Participant's
life with payments guaranteed for a
period of 5, 10, or 15 years as the
Participant selects.  If the Participant
dies before the end of the period
selected, payments will continue to the
designated beneficiary until the end of
that period.

(iii) Monthly payments for the Participant's
life, with 100%, 75%, 66-2/3%, or 50%
(selected by the Participant) of the
payment continuing after the

SSBT-002197
CONFIDENTIAL

- 103 -

Participant's death for the rest of the life of the designated beneficiary.

(b)  Participants entitled to a HOMCO Transferred Amount. Unless an optional form of benefit is selected pursuant to a qualified election within the 90-day period ending on the annuity starting date, a married Participant's vested HOMCO Transferred Amount and earnings thereon will be paid in the form of a qualified joint and survivor annuity and an unmarried Participant's vested HOMCO Transferred Amount and earnings thereon will be paid in the form of a life annuity.

A Participant may elect to have his or her HOMCO Transferred Amount, plus earnings thereon, distributed as a lump sum distribution, provided that if the Participant is married, his or her spouse must consent to this form of distribution.

(c)  Qualified Joint and Survivor Annuity or Pre-Retirement Survivor Annuity.  Notwithstanding any other provisions of the Plan, the following provisions shall apply with respect to distributions of Transferred Amounts and earnings thereon made under this section 8.10.

Should a Participant die, while married, prior to the starting date of the distribution of benefits but on or after the earliest retirement age, then for the purposes of determining eligibility for the Joint and

SSBT-002198
CONFIDENTIAL

- 104 -

Survivor Annuity benefits stated above, the starting date of distribution of benefits shall be deemed to have occurred one day prior to his date of death.

Notwithstanding the above, the Participant may elect, subject to the consent of his spouse, in accordance with the following procedures not to receive a Qualified Joint and Survivor Annuity(or life annuity if the Participant is not married or the consent of his spouse is not required), in which case the manner of distribution shall be other than a Qualified Joint and Survivor Annuity:  No less than thirty days nor more than ninety days before the starting date of any payment of Accrued Benefits to the Participant under the Plan in satisfaction of the Qualified Joint and Survivor Annuity requirement, the Plan Administrator shall provide the Participant with notification, in non-technical terms, of the availability of a Qualified Joint and Survivor Annuity, and on request, with a dollar amount of the annuity payment with and without election.  The written notification initially given to the Participant shall include a written explanation of (i) the terms and conditions of the Qualified Joint and Survivor Annuity, (ii) the Participant's right to make, and the effect of an election to waive the Qualified Joint and Survivor Annuity benefit, (iii) the rights of the Participant's spouse as to the election, and (iv) the rights to make , and the effect of, a revocation of such an election.  During said thirty to ninety day period, the Participant shall be provided with a period in which to elect in writing not

SSBT-002199
CONFIDENTIAL

- 105 -

to receive a Qualified Joint and Survivor Annuity.
Such election may be changed by the Participant during
the election period.

(1)   Notwithstanding the provisions of Section 8,
      Transferred Amounts and earnings hereon will be
      distributed to the Participant in the Form of a
      Qualified Pre-Retirement Survivor Annuity to the
      extent that such benefits are distributed on
      account of the Participant's death and the
      Participant was married at the time of his or her
      death.

      Notwithstanding the above, the Participant may
      elect, subject to the consent of his or her
      spouse, in accordance with the following
      procedures, not to receive a Qualified Pre-
      Retirement Survivor Annuity: no later than the
      first day of the Plan Year in which the
      Participant attains the age of thirty-two and
      ending the with the close of the Plan Year
      preceding the Plan Year in which the Participant
      attains the age of thirty-five, a written
      explanation with respect to the Qualified Pre-
      Retirement Survivor Annuity comparable to that
      required for the Qualified Joint And Survivor
      Annuity shall be provide to the Participant.  If
      an individual is not a Participant in the Plan
      during the time prescribed in the preceding
      sentence, the Participant shall be provided with a
      written explanation of the Qualified Pre-

SSBT-002200
CONFIDENTIAL

- 106 -

Retirement Survivor Annuity not later than the date he or she becomes a Participant in the Plan, in accordance with the applicable Treasury Regulations.  Beginning with the first day of the Plan Year in which the Participant attains the age of thirty-five and ending on the date of the Participant's death, the Participant shall have the right to elect to decline the Qualified Pre-Retirement Survivor Annuity, subject to consent of his or her spouse. Notwithstanding the preceding sentence, the Plan may permit an earlier waiver (subject to consent of spouse), provided that a written explanation of the Qualified Pre-Retirement Survivor Annuity is given to the Participants and such waiver becomes invalid upon the beginning of the Plan Year in which the Participant attains the age of thirty-five. During the "applicable election period," which begins on the first day of the plan year in which the Participant attains age 35 and ends on the date of his/her death, the Participant may revoke a previously made waiver at any time and any number of times; provided, however, that the last election made prior to the date of the Participant's death shall be irrevocable.

(2)    When "consent of spouse" is required under this section, the spouse of the Participant must consent in writing to the applicable election, and must acknowledge the effect of the election, and the consent and acknowledgment must be witnessed

SSBT-002201
CONFIDENTIAL

- 107 -

by a member of the Administrative Committee or a notary public. The consent of the spouse shall not be necessary if it is established to the satisfaction of the Administrative Committee that there is no spouse, that spouse cannot reasonably located, or for such other reasons as Treasury Regulations may prescribe. The consent of the spouse or reasons for not requiring such consent shall be applicable only to the spouse. If the spouse o of a Participant becomes locatable or if a Participant marries or remarries it shall be the duty of the Participant to bring that fact to the attention of the Administrative Committee. If a Participant so notifies the Administrative Committee, the Administrative Committee shall then, if applicable, proceed to make available to such spouse the consent procedures described in this section.

(3) The benefit to the surviving spouse under the Qualified Pre-Retirement Survivor Annuity shall begin within a reasonable time, but in any event, no later than 90 days, after the Participant's death.

(d) Definitions. Notwithstanding any other provision of the Plan, the following definitions shall apply for the purposes of this Section 8.10:

(1) Qualified Joint and Survivor Annuity is an annuity for the life of the Participant with a survivor

SSBT-002202
CONFIDENTIAL

- 108 -

annuity for the life of the spouse, which is equal to one-half of the amount of the annuity payable during the joint lives of the participant and his spouse, the actuarial equivalent of the vested Transferred Amount plus earnings thereon of the Participant.

(2)  Qualified Pre-Retirement Survivor Annuity is a survivor annuity for the life of the surviving spouse of the Participant which is the actuarial equivalent of the vested Transferred Amount plus earnings thereon of the Participant.

This provision shall be effective for Drilling Participants as of December 1, 1994; and effective for HOMCO Participants as of December 1, 1993.

SSBT-002203
CONFIDENTIAL

- 109 -

## Section 9

Withdrawals During Employment

9.01  (1)  The provisions of Section 9 shall apply to Participants and Inactive Participants who have not incurred a Termination of Service.

(2)  With respect to a Participant's or Inactive Participant's Vested Interest other than the portion of his Account attributable to Before Tax Contributions and to Company contributions subject to the restrictions of Section 9.01(5)(f), a Participant or Inactive Participant may withdraw all or part thereof as of the Business Day on which the Recordkeeper processes his withdrawal request.

(3)  With respect to the portion of a Participant's or Inactive Participant's Account attributable to Before Tax Contributions, a Participant or Inactive Participant who satisfies the requirements of Section 9.05 may withdraw all or part thereof as of the Business Day on which the Recordkeeper processes his withdrawal request.  Notwithstanding the foregoing, any earnings on Before Tax Contributions which are credited to a Participant's Account after December 31, 1988 may not be withdrawn on account of hardship as defined in Section 9.05.

(4)  Partial withdrawals may only be made in multiples

SSBT-002204
CONFIDENTIAL

- 110 -

of $100.  Any withdrawal under the Plan is subject
to a minimum withdrawal amount of $500.  No
withdrawal of any contributions or earnings may
exceed the value of the Account attributable
thereto, if less, on the Business Day on which the
Recordkeeper processes the Participant's
withdrawal request form.

(5)    Withdrawals under Section 9.01(2) shall be made
only in the following order of priority, and only
after the funds of a higher priority have been
completely withdrawn shall funds of the next
following priority be withdrawn:

(a)    Supplemental Contributions and Rollover
       Contributions made prior to January 1, 1992,
       and earnings, up to the Non-Taxable Balance

(b)    Rollover Contributions made on or after
       December 31, 1992 and earnings, up to the
       Non-Taxable Balance

(c)    After Tax Contributions made on or before
       December 31, 1986, up to the Non-Taxable
       Balance

(d)    At the election of the Participant or
       Inactive Participant having a Supplemental
       Contribution and/or Rollover Contribution
       balance (including earnings thereon) in
       excess of the Non-Taxable Balance, either (i)
       Supplemental Contributions and/or Rollover
       Contributions, and earnings thereon, if any
       or (ii) After Tax Contributions made on or

SSBT-002205
CONFIDENTIAL

- 111 -

after January 1, 1987 and earnings thereon, if any

(e) After Tax Contributions made on or before December 31, 1986 and earnings thereon, in excess of the Non-Taxable Balance

(f) Company contributions under Section 4.01 and earnings thereon, if any; provided, however, that no such Company contributions under Section 4.01 may be withdrawn until such Company contributions under Section 4.01 have remained in the plan for at least twenty-four (24) months after the Business Day on which such Company contributions were credited to his Account.

A Participant or Inactive Participant covered under (d) above may elect to receive an amount withdrawn under (i) or (ii). In the event that no election is made, (i) shall apply. In the event that the amount withdrawn exceeds the amount withdrawn under (i) or (ii) (whichever is elected), the balance shall be taken from (i) or (ii) (whichever was not elected).

9.02 Amounts withdrawn pursuant to Section 9.01 will be paid as soon as practicable after the Recordkeeper receives the Participant's or Inactive Participant's withdrawal request. In the case of withdrawals from the Grace Common Stock Fund and the ESOP, distributions shall be made in cash unless the Participant or Inactive Participant elects to receive in lieu thereof whole

SSBT-002206
CONFIDENTIAL

– 112 –

shares of Grace Stock, plus cash for any fractional share.

9.03     Each Participant or Inactive Participant withdrawing funds pursuant to Section 9.01(2) shall be ineligible to receive Company contributions under Section 4.01 of the Plan for the following periods after the effective date of such withdrawal (but nevertheless shall remain eligible to make After Tax Contributions or Before Tax Contributions, or both, during such periods):

| Category of Withdrawal | Proportion | Period During Which Company Contributions under Section 4.01 Are Suspended |
|---|---|---|
| Supplemental Contributions and Earnings Thereon | All or Part | None |
| After Tax Contributions and Earnings Thereon | All or Part | 3 months |
| Company Contributions under Section 4.01 and Earnings Thereon (subject to the restrictions of Section 9.01(5)(f)) | All or Part | None |

9.04     Amounts withdrawn with respect to a category of contributions and earnings thereon pursuant to Section 9.01(2) or (3) shall be deducted from the Investment Funds and the ESOP in the following order of priority, and only when amounts invested in Investment Funds of a higher priority have been completely withdrawn shall amounts invested in Investment Funds of the next

SSBT-002207
CONFIDENTIAL

- 113 -

following priority be withdrawn:

| | |
|---|---|
| (1) | Fidelity Contrafund |
| (2) | Fidelity OTC Portfolio |
| (3) | Fidelity Blue Chip Growth Fund |
| (4) | Fidelity Growth & Income Portfolio |
| (5) | Fidelity Balanced Fund |
| (6) | Fidelity Investment Grade Bond Fund |
| (7) | Fidelity US Bond Index Fund |
| (8) | PIMCO Total Return Fund |
| (9) | INVESCO Equity Income Fund |
| (10) | Spartan US Equity Index Fund |
| (11) | Franklin Small Cap Growth Fund-A |
| (12) | JP Morgan Institutional US Small Company Fund |
| (13) | American Century International Growth Fund |
| (14) | Spartan International Index Fund |
| (15) | Templeton Foreign Fund A |
| (16) | Fidelity Freedom Income Fund |
| (17) | Fidelity Freedom 2000 Fund |
| (18) | Fidelity Freedom 2010 Fund |
| (19) | Fidelity Freedom 2020 Fund |
| (20) | Fidelity Freedom 2030 Fund |
| (21) | Fidelity Low-Priced Stock Fund |
| (22) | Spartan Extended Market Index Fund |
| (23) | Spartan Total Market Index Fund |
| (24) | Fidelity Diversified International Fund |
| (25) | Fidelity Europe Fund |
| (26) | Fidelity Equity-Income Fund |
| (27) | Fixed Income Fund |
| (28) | Grace Common Stock Fund |
| (29) | ESOP |

SSBT-002208
CONFIDENTIAL

- 114 -

The amount of a withdrawal will be based on the value of the amount attributable to such category of contributions and earnings credited to the Participant or Inactive Participant in each such Investment Fund within the Savings Plan and the ESOP on the Business Day on which the Recordkeeper processes the Participant's or Inactive Participant's withdrawal request.

9.05    Amounts may be withdrawn pursuant to Section 9.01(3) only (i) where a Participant or Inactive Participant has attained at least age 59-1/2, or (ii) where a Participant or Inactive Participant incurs a hardship; provided that such amounts may be withdrawn in the case of hardship only after all available amounts have first been withdrawn pursuant to Section 9.01(2) and only to the extent that they are necessary to satisfy the hardship after the Participant or Inactive Participant has applied all other financial resources reasonably available to him (if any) to satisfy such hardship.  For purposes of this Section 9.05, a distribution is on account of hardship if the distribution is for any of the following reasons:

> (a)    Expenses for medical care (within the meaning of Section 213 of the Code) that (i) were previously incurred by the Participant or Inactive Participant, his spouse or dependents and which are not reimbursed by insurance or otherwise, or (ii) are necessary for such individuals to obtain such medical care; or

SSBT-002209
CONFIDENTIAL

- 115 -

(b)     Costs directly related to the purchase of a principal residence for the Participant or Inactive Participant (excluding mortgage payments); or

(c)     Payment of tuition and related educational expenses for the next twelve (12) months of post-secondary education for the Participant or Inactive Participant, his spouse, children or dependents; or

(d)     Payments necessary to prevent the eviction of the Participant or Inactive Participant from his principal residence or foreclosure on the mortgage of the principal residence of the Participant or Inactive Participant; or

(e)     Any other reason which, in the Administrative Committee's determination, has produced an immediate and heavy financial need.

Any Participant or Inactive Participant who suffers a hardship, as defined in this Section 9.05, may request a withdrawal pursuant to Sections 9.01(3) and (4) by written notice to the Administrative Committee setting forth the amount requested and the facts establishing the existence of the hardship.  Upon receipt of a withdrawal request on account of hardship, the Administrative

SSBT-002210
CONFIDENTIAL

- 116 -

Committee shall determine whether a financial hardship exists. If the Administrative Committee determines that such a hardship does exist, it shall further determine what portion of the amount requested, if any, is required to meet the need created by the hardship. The determination of the existence of a financial hardship and the amount necessary to meet the need created by such hardship shall be made by the Administrative Committee in accordance with uniform and non-discriminatory standards and on the basis of all relevant facts and circumstances.

 In the event that a Participant or Inactive Participant requests a hardship withdrawal for any reason other than those set forth in (a) through (d) above, or the Administrative Committee is unable to determine that the amount requested for withdrawal is necessary to satisfy a financial hardship that is described in (a) through (d) above, based on the supporting documentation, including written certifications, furnished to it by the Participant or Inactive Participant, then (i) the Participant's Before Tax Contributions and After Tax Contributions will be suspended for a period of six months (twelve (12) months for hardship distributions before January 1, 2002), beginning with the first day of the month immediately following the date of the withdrawal payment, (ii) the Participant shall be ineligible to receive Company contributions under Section 4.01 for such period and (iii) the Participant's Before Tax Contributions for his taxable year immediately following the taxable year of the hardship withdrawal shall be limited to $7,000 (as automatically adjusted for increases in the cost of living as prescribed by the

SSBT-002211
CONFIDENTIAL

– 117 –

Secretary of the Treasury for such next taxable year)
less the amount of the Participant's Before Tax
Contributions for the taxable year of the hardship
withdrawal.

9.06    Notwithstanding any other provision of Section 9 to the
contrary, a Participant that is subject to taxes on
personal income under the laws of any country (other than
the United States), including, but not limited to, the
United Kingdom, shall be permitted to give an undertaking
that would restrict his ability to receive an in-service
withdrawal under the provisions of this Section 9 with
respect to any portion of the Company contributions and
Before Tax Contributions made to the Plan on his behalf,
if, and to the extent that, such an undertaking is
necessary in order to assure that the Participant will
not be subject to tax by that country on those
contributions.  Any such undertaking shall be effective
as of the date that the Plan Administrator agrees to
observe the terms of such undertaking; and, as of that
date, the undertaking shall be incorporated as part of
the Plan by this reference.

9.07    Withdrawals By Former Participants

(a)    The provisions of this Section 9.07 shall apply to
any former Participant who has elected to defer
the distribution of his Account in accordance with
Section 8.04.  With respect to such a former
Participant's Vested Interest in his Account
(other than the portion of his Account

SSBT-002212
CONFIDENTIAL

– 118 –

attributable to Before Tax Contributions, and to Company contributions that have not been in the Plan for at least two full Plan Years after the Plan Year for which such Company contributions are made and earnings on such contributions), such a former Participant may withdraw all or part thereof as of the Business Day on which the Recordkeeper processes his withdrawal request. Such a former Participant shall be permitted to withdraw all or a portion of his Before Tax Contributions if he has attained age 59-1/2. Notwithstanding the foregoing, a former Participant shall not be permitted to make any withdrawal:  (i) on account of hardship as defined in Section 9.05 or (ii) if he is receiving installment payments from the Plan.

(b)    Amounts withdrawn pursuant to Section 9.07 will be paid as soon as practicable after the Recordkeeper receives the former Participant's withdrawal request.  In the case of withdrawals from the Grace Common Stock Fund and the ESOP, distributions shall be made in cash unless the former Participant elects to receive in lieu thereof whole shares of Grace Stock, plus cash for any fractional share.

SSBT-002213
CONFIDENTIAL

- 119 -

## Section 10

### Payment of Benefits

10.01   If the Administrative Committee receives evidence satisfactory to it that a person entitled to receive any benefit under the Plan is physically or mentally incompetent to receive such benefit and to give a valid release therefore, or is a minor, and that another person or an institution is then maintaining or has custody of such person, unless claim shall have been made therefor by a duly appointed guardian, committee or other legal representative, the Administrative Committee may authorize payment of such benefit to such other person or institution and the release of such other person or institution shall be a valid and complete discharge for the payment of such benefit.

10.02   Every person before becoming entitled to any benefits under the Plan shall furnish the Administrative Committee with such information as it may require, including, but not limited to, proof of age relating to himself and any person named as a beneficiary.

10.03   The benefits under the Plan shall be payable solely from the Trust Fund and each Participant, Inactive Participant or former Participant or other person who shall claim the right to any payment under the Plan shall be entitled to look only to that fund for such payment.  No liability for the payment of benefits or any other payments under the Plan shall be imposed upon the Investment Committee,

SSBT-002214
CONFIDENTIAL

- 120 -

the Administrative Committee, the Company, or the officers, directors or stockholders of the Company.

10.04    Except as expressly provided in the Plan, no Participant, Inactive Participant, former Participant or other person entitled to benefits may withdraw or receive any monies from the Trust Fund.

10.05    Effective July 1, 1993, any check that is not cashed within six months of its issuance will be cancelled, and the assets attributable thereto shall be used to offset plan expenses; provided, however, that a new check shall be reissued if and when the original check is presented for payment.

SSBT-002215
CONFIDENTIAL

- 121 -

## Section 11

Re-Employment

11.01   In the event a former Participant shall resume employment
        (within the meaning of the Department of Labor Regulation
        section 2530.203-3) by an Employing Unit in a status
        covered by the Plan after having previously terminated
        employment by Retirement or otherwise, any distribution
        or installment payment to be made to him as of a Business
        Day occurring on or after the date he resumes such
        employment shall not be made to him except upon
        subsequent application of the provisions of Section 8.

11.02   In the event of Termination of Service of an Employee and
        subsequent re-employment by an Employing Unit in a status
        covered by the Plan, Years of Service and Hours of
        Service before and after such termination shall be
        aggregated for purposes of determining eligibility.  Such
        aggregation shall occur on the date of re-employment.

11.03   Upon re-employment by an Employing Unit in a status
        covered by the Plan prior to a One-Year Break in Service
        (in the case of re-employment prior to January 1, 1985)
        or prior to 5 consecutive One-Year Breaks in Service (in
        the case of re-employment on or after January 1, 1985), a
        former Participant or Inactive Participant whose service
        was terminated prior to January 1, 1989 and before
        attaining a 100% Vested Interest in his Account may
        reinstate the dollar value (at the time of the
        forfeiture) of the shares of Grace Stock (or, if such

SSBT-002216
CONFIDENTIAL

- 122 -

forfeiture occurred prior to May 25, 1988, the dollar value of the shares of common stock of Grace Connecticut) (or other amount) in the Former Fund C or the Grace Common Stock Fund which was forfeited upon such Termination of Service, or upon the valuation of his Account in the case of a deferred lump sum distribution, by repaying in cash the total dollar value of the actual distribution (other than Rollover Contributions) previously made to him (including the value of any Grace Stock (or, if such distribution occurred prior to May 25, 1988, the total value of the shares of common stock of Grace Connecticut)) distributed to him, within five years after the date of re-employment.  In the event of such repayment, there shall be credited to the Participant or Inactive Participant (as of the Business Day on which the repayment is received by the Trustee):

(i)    an amount in the Fixed Income Fund equal to the dollar amount previously held in the Investment Funds (except the Grace Common Stock Fund) or the Former Funds A, B, C or D attributable to After Tax, Before Tax, Supplemental, or Company contributions pursuant to Section 4.01 repaid by the Participant;

(ii)   an amount in the Grace Common Stock Fund within the Savings Plan equal to the dollar value (at the time of forfeiture) of the Grace Stock (or, if such forfeiture occurred prior to May 25, 1988, the dollar value of the shares of common stock of Grace Connecticut) (or other amount) forfeited by

SSBT-002217
CONFIDENTIAL

- 123 -

the Participant.

11.04   In the event of re-employment by an Employing Unit in a
status covered by the Plan of a former Participant who
terminated service prior to attaining a 100% Vested
Interest in his Account, elected to receive installment
payments, and incurred a One-Year Break in Service (in
the case of re-employment prior to January 1, 1985) or 5
consecutive One-Year Breaks in Service (in the case of
re-employment on or after January 1, 1985), no
reinstatement of the dollar amount forfeited by him upon
such Breaks in Service shall be permitted and the balance
standing to his credit upon re-employment shall
constitute a separate account in which he is fully
vested.

11.05   If a Participant commences U.S. military service (in 1994
or thereafter), including service with the National
Guard, and he applies to become reemployed by the Company
within a specified time after that service ends (see
below), he will be permitted to make contributions to the
Plan to account for the period that he was in the service
("Make-Up Contributions"), which will be in addition to
the contributions that he may make under the other
provisions of the Plan.  The Make-Up Contributions shall
not be in excess of the amount which the Participant
would otherwise have been permitted to make to the Plan
if he was continuously employed by the Company while he
was in the service.  Any Make-Up Contributions must be
made within the period that begins on the date the
Participant commences reemployment with the Company and

SSBT-002218
CONFIDENTIAL

- 124 -

ends 5 years later. (However, if the Participant's period
of service was less than 1 2/3 years, then the period for
Make-Up Contributions will commence on the date he
commences reemployment but the period's length will only
be 3 times the length of the period of his military
service.)

In order for this provision to apply, the Participant
must apply for reemployment with the Company within the
period specified as follows:

| Period Of Military Service | Required Reemployment Application Date |
|---|---|
| Less than 31 days | The beginning of next regularly scheduled work period after military service ends |
| 31 to 180 days | Within 14 days of the date military service ended |
| More than 180 days | Within 90 days of the date military service ended |

Also, this provision shall not apply to an individual who
serves in the U.S. military service for greater than 5
years.

Notwithstanding any provision of the Plan to the
contrary, contributions, benefits, and service credit
with respect to qualified military service will be
provided in accordance with Code section 414(u).

SSBT-002219
CONFIDENTIAL

- 125 -

## Section 12

## Administration of the Plan

12.01    A Trust Fund shall be established by a Trustee or
Trustees appointed from time to time by the Board of
Directors.  All assets of the Plan shall be deposited in
the Trust Fund.  The corpus and income of the Trust Fund
shall be used to provide benefits under the Plan and to
defray the reasonable expenses of Plan administration and
no part thereof shall be used for or diverted to purposes
other than for the exclusive benefit of Participants,
Inactive Participants and their beneficiaries, except as
provided in Section 4.04.  Effective July 1, 1989, the
Trustee of the Plan was appointed as the Trustee of the
ESOP portion of the Trust Fund.

12.02    The Trustee or Trustees shall have sole authority to
purchase or sell Grace Stock required for the purposes of
the Plan from or to any person, including the Company,
except that (i) no such stock shall be purchased from or
sold to the Company for the account of the Grace Common
Stock Fund and (ii) no commission shall be charged with
respect to a purchase of Grace Stock from the Company for
the account of the ESOP.  The Trustee or Trustees also
shall take all action necessary to implement any
investment determinations of the Investment Committee or
of the Investment Manager(s) and shall conform to
procedures established by the Administrative Committee
for disbursement of funds of the Plan.  The Trustee or
Trustees shall not be liable for any act performed while

SSBT-002220
CONFIDENTIAL

- 126 -

subject to directions of the Investment Committee, the Investment Manager(s) or the Administrative Committee made in accordance with the terms of the Plan.

12.03    An Investment Committee (or any appropriate designee of that Committee) shall be appointed from time to time by the Board of Directors (or its designee) to serve at its pleasure. The Investment Committee may authorize any member of the Investment Committee or any agent or other designee to execute or deliver any instrument or make any payment on its behalf and/or to take other actions on its behalf; and the Committee (or such member, agent or other designee) may employ counsel and agents and such clerical, accounting and actuarial services as any of them may require.  A majority of the members of the Investment Committee shall constitute a quorum for the transaction of business, and the action of a majority of the members present at a meeting shall constitute the action of the Investment Committee.  In lieu thereof the action of a majority of the members of the Investment Committee expressed in writing without a meeting shall constitute the action of the Investment Committee. Effective June 14, 1995, the Investment Committee shall be the Investment and Benefits Committee as created by the Board of Directors as of that date.

12.04    The Investment Committee shall have the authority and discretion to manage that portion of the assets of the Trust Fund comprising Fixed Income Fund except that it may appoint one or more Investment Managers who shall have the authority and discretion to manage that portion

SSBT-002221
CONFIDENTIAL

- 127 -

of the assets of the Trust Fund comprising the Fixed
Income Fund.   In exercising the authority and discretion
contained in this Section, the Investment Committee and
Investment Manager(s) shall be limited only to the extent
provided in Section 5.01 for the investment of the Fixed
Income Fund.   The Investment Committee shall also have
the authority to select and change the Investment Funds
available hereunder.

12.05   Grace shall have prepared annually for the Investment
Committee and the Board of Directors a report giving a
summary of the assets and liabilities of the Plan and a
brief account of the operation of the Plan for the
preceding year, and any further information which the
Investment Committee may deem advisable or which either
Board of Directors may require.

12.06   The general administration of the Plan and the
responsibility for carrying out its provisions (excluding
any decisions as to investment and reinvestment of the
Trust Fund) shall be placed in an Administrative
Committee (or any appropriate designee of that Committee)
consisting of not less than three persons who shall be
appointed from time to time by the Board of Directors of
Grace (or its designee) to serve at its pleasure.   The
Administrative Committee may authorize any member of the
Administrative Committee or any agent or other designee
to make any payment on its behalf and/or to take other
actions on its behalf; or to execute or deliver any
instrument or do any act on its behalf; and may employ
counsel and agents and such clerical, accounting and

SSBT-002222
CONFIDENTIAL

- 128 -

actuarial services as any of them may require.   Effective
June 14, 1995, the Administrative Committee shall be the
Investment and Benefits Committee as created by the Board
of Directors as of that date.

12.07    The Administrative Committee shall hold meetings upon
such notice, at such place and at such time as it may
determine.   A majority of the members of the
Administrative Committee shall constitute a quorum for
the transaction of business, and the action of a majority
of the members present at a meeting shall constitute the
action of the Administrative Committee.   In lieu thereof,
the action of a majority of the members of the
Administrative Committee expressed in writing without a
meeting shall constitute the action of the Administrative
Committee.

12.08    Subject to the limitations of the Plan, the
Administrative Committee from time to time shall adopt
administrative rules and regulations and prescribe such
processes, forms and applications as are appropriate to
the administration of the Plan.   The Administrative
Committee (or its designee) shall have full and exclusive
authority to construe the terms of the Plan, to determine
entitlement to allocations of contributions and to
distributions of benefits to Participants, Inactive
Participants, Beneficiaries and all other persons and to
adjudicate all disputed claims for benefits filed under
the Plan.   Every finding, decision and determination made
by the Administrative Committee (or its designee) shall,
to the full extent permitted by law, be final and binding

SSBT-002223
CONFIDENTIAL

- 129 -

upon all parties, except to the extent found by a court of competent jurisdiction to constitute an abuse of discretion.

12.09 The Administrative Committee shall determine the procedures to be followed in connection with the disbursement of the funds of the Plan.

12.10   The Investment Committee, the Administrative Committee and any Company, and any member, director, officer or employee thereof, shall be entitled to rely conclusively on all tables, valuations, certificates, opinions and reports which shall be furnished by any expert who shall be employed or engaged by Grace, the Investment Committee or the Administrative Committee.

12.11      The Administrative Committee (or its designee), in accordance with DOL Reg. §2560.503-1, has the authority to determine eligibility for participation and the amount and kind of benefits payable to any Participant, Spouse, or beneficiary, and interpretation of the Plan.

SSBT-002224
CONFIDENTIAL

- 130 -

(a)     Each person who claims entitlement to any right or benefit under the Plan, or his duly authorized representative (a "Claimant"), may submit a claim for benefits under the Plan. All claims shall be submitted in writing to the Administrative Committee and shall be accompanied by such information and documentation as the Administrative Committee determines is required to make a ruling on the claim. Upon receipt of a claim hereunder, the Administrative Committee shall consider the claim and shall render a decision and communicate the same to the Claimant:

(1)     the specific reason(s) for the adverse determination;

(2)     reference to the specific Plan provisions on which the determination is based;

(3)     a description of any additional material or information necessary for the Claimant to perfect the claim and an explanation of why such material or information is necessary; and

(4)     a description of the Plan's appeal procedures and the time limits applicable to such procedures, including a statement of the Claimant's right to bring a civil action under Section 502(a) of ERISA following an adverse benefit determination on review.

(b)     <u>Appeals Procedure</u>. When there is an adverse benefit determination of a claim, the Claimant or duly authorized representative shall have the right to file an appeal with the Administrative Committee as provided in ERISA §503 and DOL Reg. §2560.503-1.

SSBT-002225
CONFIDENTIAL

- 131 -

## Section 13

### Certain Rights and Obligations

13.01   It is the intention that the Plan continue and that contributions be made regularly each year, but all contributions under the Plan shall be voluntary, and not a legal obligation.

13.02   The Plan may be terminated at any time by the Board of Directors.  Upon termination, partial termination or complete discontinuance of contributions, the rights of all Participants and Inactive Participants (as to whom the Plan has terminated in the case of a partial termination) to the amounts credited to their Accounts shall be fully vested and nonforfeitable.

13.03   (a)      In the event of the divestment (as defined hereafter) of a Company or an Employing Unit (and, consequently, the employees of such Company or Employing Unit), the authorization of such Company or Employing Unit to participate in the Plan shall be automatically withdrawn.  For purposes of Section 13.03, a divestment of a Company or an Employing Unit occurs when (1) substantially all the assets of such Company or such Employing Unit are sold or transferred to an entity which is not treated as the same "employer" as Grace under either section 414(b) or (c) of the Code, or (2) a Company is merged into an entity which is not treated as the same "employer" as Grace under

SSBT-002226
CONFIDENTIAL

– 132 –

either section 414(b) or (c) of the Code, or (3) all or part of the stock of (or other equity interest in) a Company is sold or transferred with the consequence that the Company is no longer treated as the same "employer" as Grace under either section 414(b) or (c) of the Code. In the event of such a divestment, the Employees of such Company or Employing Unit shall cease to be Participants in the Plan and shall be deemed to have incurred a Termination of Service as of the date of such divestment.

(b)    Any Company may, with the consent of the Board of Directors, withdraw from the Plan at any time, and the Board of Directors may in its discretion at any time withdraw the authorization of any Company or any Employing Unit to participate in the Plan. In the event of such a withdrawal, the Employees of such Company or Employing Unit shall cease to be eligible to participate in the Plan as of the date of the withdrawal.

13.04   In the case of any merger or consolidation with, or transfer of assets or liabilities of the Plan to any other plan, each Participant will be entitled to receive (if the Plan then terminated) a benefit immediately after the merger, consolidation, or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before such merger, consolidation, or transfer (if the Plan had then terminated).

SSBT-002227
CONFIDENTIAL

~ 133 ~

13.05  The establishment of the Plan shall not be construed as conferring any legal rights upon an Employee or any person for a continuation of employment, nor shall it interfere with the rights of the Company to discharge any Employee and to treat him without regard to the effect which such treatment might have upon him under the provisions of the Plan.

SSBT-002228
CONFIDENTIAL

- 134 -

## Section 14

Amendments

14.01   Grace reserves the right at any time and from time to
time by action of its Board of Directors or its designee
to modify or amend in whole or in part any or all of the
provisions of the Plan; provided, that no modification or
amendment may be made which will deprive any Participant,
Inactive Participant, former Participant or other person
receiving a benefit, of any benefit under the Plan to
which he would otherwise be entitled by reason of the
accumulated funds held under the Plan on his account at
that time, and provided that no such modification or
amendment shall make it possible for any part of the
funds of the Plan to be used for, or diverted to,
purposes other than the exclusive benefit of
Participants, Inactive Participants, former Participants
and other persons entitled to benefits under the Plan
(except as provided in Section 4.04).  Notwithstanding
the foregoing, any modification or amendment of the Plan
which is deemed necessary or appropriate to bring the
plan into conformity with the Code or regulations
thereunder may be made (retroactively if necessary) in
order to qualify the Plan under the Code and regulations
thereunder.

SSBT-002229
CONFIDENTIAL

- 135 -

## Section 15

### Non-Alienation of Benefits

15.01    No benefit under the Plan shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge, and any attempt so to anticipate, alienate, sell, transfer, assign, pledge, encumber or charge the same shall be void; nor shall any such benefit be in any manner liable for or subject to the debts, contracts, liabilities, engagements or torts of the person entitled to such benefit.  Notwithstanding the foregoing, the Plan shall comply with a valid Federal tax levy which is enforced against a Participant's or Inactive Participant's Account under section 6331 of the Code and shall not be liable in any manner to any person for effectuating such compliance.

15.02    If any Participant, Inactive Participant, former Participant or any other person entitled to benefits under the Plan becomes bankrupt or makes an assignment for the benefit of creditors, or in any way suffers a lien or judgment against his personal assets to exist or attempts to anticipate, alienate, sell, transfer, assign, pledge, encumber or charge any benefit under the Plan, then such benefit shall, in the discretion of the Administrative Committee, cease and terminate, and in that event the Administrative Committee may hold or apply the same or any part thereof to or for the benefit of such Participant, Inactive Participant or former Participant, his spouse, descendants (including any

SSBT-002230
CONFIDENTIAL

- 136 -

person adopted by such person or his descendants, and descendants of such adopted persons), other dependents, other persons or any of them, in such manner and in such proportion as the Administrative Committee may think proper.

15.03    Notwithstanding the provisions of Section 15.01 and 15.02, the Administrative Committee shall comply with the provisions of any qualified domestic relations order described in section 414(p) of the Code and shall establish a procedure to determine the qualified status of domestic relations orders and to administer distributions under qualified domestic relations orders. Specifically, in the event that a qualified domestic relations order requires the immediate distribution of any portion of a Participant's or Inactive Participant's Account to an alternate payee prior to the earlier of the date on which the Participant or Inactive Participant incurs a Termination of Service or the date on which he attains the "earliest retirement age," as defined in section 414(p)(4)(B) of the Code, the Administrative Committee shall comply with such order.  Furthermore, in the event that a qualified domestic relations order requires the division of a Participant's or Inactive Participant's Account for the benefit of an alternate payee, a separate Account shall be established for such alternate payee and such alternate payee shall thereafter be subject to all of the provisions of the Plan including the provisions of Sections 5.04 and 5.07 regarding transfers among the Plan's investment funds and Section 9 regarding withdrawals, as if the alternate payee were an

SSBT-002231
CONFIDENTIAL

- 137 -

Inactive Participant, except that such alternate payee
shall not be eligible to receive a distribution under
Section 8 of the Plan until the earlier of the date on
which the Participant or Inactive Participant incurs a
Termination or Service or the date on which he attains
the "earliest retirement age," as defined in section
414(p)(4)(B) of the Code.

SSBT-002232
CONFIDENTIAL

- 138 -

## Section 16

### Top-Heavy Provisions

16.01    If the Plan becomes top-heavy (as defined in Section 416(g) of the Code) with respect to any Plan Year on account of the accrued benefits of key employees (as defined in section 416(i) of the Code), then the provisions set forth in Section 16.06, 16.07, 16.08 and 16.09 shall become applicable.

16.02    The Plan is required to be aggregated for purposes of Section 16 with (i) each other plan maintained by the Company in which a key employee participates, and (ii) each other plan maintained by the Company which enables any plan in which a key employee participates to meet the requirements of section 401(a)(4) or section 410 of the Code.

16.03    As elected by the Company, the Plan is permitted to be aggregated for purposes of Section 16 with one or more other plans maintained by the Company which satisfy the requirements of section 401(a)(4) and section 410 of the Code when considered together with the Plan and those other plans required to be aggregated under Section 16.02.

16.04    The determination date with respect to a Plan Year is (i) the last day of the preceding Plan Year, or (ii) in the case of the first Plan Year, the last day of such Plan Year.

SSBT-002233
CONFIDENTIAL

- 139 -

16.05   For purposes of Section 16, the present value of an
accrued benefit is the sum of the account balance as of
the most recent valuation date occurring within a
12-month period ending on the determination date and an
adjustment for contributions due as of the determination
date as described in the section 416 regulations.

16.06   If the Plan is deemed top-heavy with respect to a Plan
Year, the following provisions shall apply to Company
contributions (excluding salary reduction contributions
prior to January 1, 1985, but including such
contributions on and after January 1, 1985) under the
Plan in respect of such a Plan Year for a Participant who
is not a key employee and who is employed by the Company
on the last day of the Plan Year and for an Employee of
an Employing Unit who is not a key employee, is eligible
to participate in the Plan, and has elected not to
participate in the Plan:  such Company contributions (and
forfeitures) shall be equal to the greater of (i) the
Company contributions (and forfeitures) which would
otherwise be made without regard to Section 16, or (ii)
3% of his compensation from the Company paid during such
Plan Year (or lesser percentage contributed for a key
employee determined under the section 416 regulations).
For Plan Years beginning on or after January 1, 2002,
employer matching contributions shall be taken into
account for purposes of satisfying the minimum
contribution requirements of Code section 416(c)(2) and
the Plan.  The preceding sentence shall apply with
respect to matching contributions under the Plan or if

SSBT-002234
CONFIDENTIAL

- 140 -

the Plan provides that a minimum contribution requirement shall be met in another plan, such other Plan.  Employer matching contributions that are used to satisfy the minimum contribution requirements shall be treated as matching contributions for purposes of the actual contribution percentage test and other requirements of Code section 401(m).  If such a Participant is also a participant in a defined benefit plan maintained by the Company which is also top-heavy, Section 16.06 shall not apply, and instead the top-heavy provisions of such defined benefit plan shall apply to him.

16.07   For Plan Years beginning before 1989, if the Plan is deemed top-heavy with respect to a Plan Year, compensation taken into account under the Plan shall not exceed the amount determined under section 416(d) of the Code; provided, however, that no benefit accrued prior to a Plan Year in which the Plan was top-heavy shall be reduced by virtue of the limitation herein.

16.08   If the Plan is deemed top-heavy with respect to a Plan Year beginning prior to January 1, 2000, the denominators of the defined benefit and defined contribution fractions applicable with respect to a Participant under section 415(e) of the Code shall be determined by substituting the factor "1.0" for the factor "1.25" therein, and by substituting the amount "$41,500" for the amount "$51,875" in the denominator of the defined contribution fraction in the event that the transition fraction under section 415(e)(6) of the Code is used.  Notwithstanding the foregoing, the accrued benefit of a Participant as of

SSBT-002235
CONFIDENTIAL

- 141 -

the end of the Plan Year prior to the Plan Year in which
the Plan is deemed top-heavy shall not be reduced on
account of Section 16.08.

16.09    For purposes of Section 16, the Company includes any
other corporation, trade, or business treated as the same
"employer" as the Company under section 414(b),(c), or
(m) of the Code.

SSBT-002236
CONFIDENTIAL

- 142 -

Section 17

Tender Offers

17.01  The provisions of this Section 17 shall apply in the
       event that any entity, either alone or in conjunction
       with others, makes a tender or exchange offer for, a
       request or invitation for tenders of, or otherwise offers
       to purchase or solicits offers to sell Grace Stock, which
       offer, request, invitation or solicitation is made to
       holders of Grace Stock generally (herein jointly and
       severally referred to as a "tender offer").

17.02  The Trustee may not take any action in response to a
       tender offer except as otherwise provided in this Section
       17.  The Trustee shall promptly furnish to each
       Participant and Inactive Participant who has shares of
       Grace Stock credited to his Account notice of any tender
       offer, including instructions as to how the Participant
       or Inactive Participant is to give directions to the
       Trustee in response to such tender offer.  Each
       Participant and Inactive Participant may, at any time and
       from time to time during the pendency of a tender offer,
       (i) direct the Trustee to sell, offer to sell, exchange
       or otherwise dispose of all or any portion of the Grace
       Stock credited to such Participant's or Inactive
       Participant's Account or (ii) withdraw or revoke any such
       direction, in accordance with the terms of such tender
       offer and the provisions of this Section 17; provided,
       however, that such directions from any individual
       Participant or Inactive Participant shall be confidential

SSBT-002237
CONFIDENTIAL

- 143 -

and shall not be divulged by the Trustee to anyone, including the Company or any director, officer, employee or agent of the Company, it being the intent of this provision of this Section 17.02 to ensure that the Company (and its directors, officers, employees and agents) cannot determine the direction given by any Participant or Inactive Participant. Such directions shall be in such form and shall be filed in such manner and at such time as the Trustee may reasonably prescribe in accordance with the terms of such tender offer.

17.03   The Trustee shall, in the manner and within the time prescribed by the terms of the tender offer, tender, sell, offer to sell, submit for exchange or otherwise dispose of the Grace Stock credited to Participant or Inactive Participant Accounts in accordance with the directions given (and not withdrawn or revoked) under Section 17.02. The proceeds of a disposition directed by a Participant or Inactive Participant from his Account under this Section 17 shall continue to be held in his Account and be governed by the provisions of Section 17.05 and other applicable provisions of the Plan. Such proceeds may, in the discretion of the Trustee, constitute one or more separate investment funds under the Plan governed, nevertheless, by the provisions of Section 17.05 and other applicable provisions of the Plan.

17.04   To the extent to which a Participant or Inactive Participant does not direct the Trustee, or issues invalid directions to the Trustee, pursuant to Section 17.02, such

SSBT 002238
CONFIDENTIAL

– 144 –

Participant or Inactive Participant shall be deemed to have
directed the Trustee that such shares remain invested in
Grace Stock subject to all provisions of the Plan.

17.05  Grace may direct the substitution of new employer
securities for Grace Stock or for the proceeds of any
disposition of Grace Stock to the extent provided in the
Plan.  Pending the substitution of new employer
securities or the termination of the Plan and Trust, the
Trust Fund may be invested in such securities as Grace
(or other fiduciary identified by Grace for such purpose)
may from time to time direct; provided, however, in the
absence of any direction from Grace or other fiduciary,
the Trustee may invest the cash proceeds in short-term
securities issued by the United States of America or any
agency or instrumentality thereof or any other
investments of a short-term nature, including corporate
obligations or participations therein and interim
collective or common investment funds.

17.06  In the case of Grace Stock held within the Trust Fund
that has not been credited to Participant or Inactive
Participant Accounts, the Trustee shall, in the manner
and within the time prescribed by the terms of the tender
offer, tender, sell, offer to sell, submit for exchange
or otherwise dispose of only that number of shares of
such stock that bears the same ratio to the total number
of such shares as the number of shares credited to
Participant and Inactive Participant Accounts for which
the Trustee has received valid directions (which have not
been withdrawn or revoked) from Participants and Inactive

SSBT 002239
CONFIDENTIAL

- 145 -

Participants pursuant to Section 17.02 bears to the total number of shares credited to Participant and Inactive Participant Accounts.  The proceeds of a disposition of Grace Stock made under this Section 17.06 pursuant to a tender offer shall be held by the Trustee subject to the provisions of the trust instrument, the Plan and any applicable loan agreement.

SSBT-002240
CONFIDENTIAL

– 146 –

Section 18

Loans

18.01    A Participant may apply, pursuant to the procedure
         established in accordance with Section 18.04 for a loan
         from his Account.  Loans shall be made available to all
         Participants on a reasonably equivalent basis, subject to
         the following:

         (1)    Each loan shall be evidenced by a negotiable
                promissory note;

         (2)    Each loan shall bear a reasonable rate of interest;

         (3)    Each loan shall be adequately secured; provided that
                no loan may be secured, in whole or in part, by
                property other than the Participant's Account;

         (4)    No loan to a Participant shall exceed the value of
                the vested Account balance of the Participant at the
                time the loan is made;

         (5)    No loan to any Participant can be made to the extent
                that such loan when added to the outstanding balance
                of all other loans to the Participant would exceed
                the lesser of (a) $50,000 reduced by the excess, if
                any, of the highest outstanding balance of loans
                during the one-year period ending on the day before
                the loan is made, over the outstanding balance of
                loans from the Plan on the date the loan is made; or

SSBT-002241
CONFIDENTIAL

– 147 –

(b) one-half the present value of the Participant's nonforfeitable accrued benefit under the Plan or, if greater, the total accrued benefit up to $10,000; and for purposes of this clause (5), all loans from all plans qualified under Code section 401(a) of the Company or an affiliate of the Company shall be aggregated;

(6)    Each loan must, by its terms, require that repayment of principal and interest be amortized in level payments, not less frequently than quarterly, over a period not extending beyond five years from the date of the loan; provided that the repayment term may be extended to a period not exceeding 20 years if the loan is used to acquire a dwelling unit which within a reasonable time (determined at the time the loan is made) will be used as the principal residence of the Participant; and

(7)    No loan, shall be made available to "highly compensated employees" (as defined by Code section 414(q) and the regulations thereunder) in an amount greater than the amount made available to other Employees.

SSBT-002242
CONFIDENTIAL

- 148 -

18.02  (1)    If a Participant requests a loan, the funds to be
              loaned shall be taken from the accounts, and the
              Investment Funds, in the order specified below:

| | |
|---|---|
| 1. before-tax savings account | 1. Fidelity Contrafund |
| 2. Company contribution account | 2. Fidelity OTC Portfolio |
| 3. after-tax savings made after December 31, 1986 and related earnings | 3. Fidelity Blue Chip Growth Fund |
| 4. after-tax savings made before January 1, 1987 and related earnings | 4. Fidelity Growth & Income Portfolio |
| 5. rollover account | 5. Fidelity Balanced Fund |
| 6. supplemental account | 6. Fixed Income Fund |
| | 7. ADS Fund |
| | 8. Grace Stock Fund |
| | 9. Company Contribution Fund |

(2)    Loan repayments (including interest) shall be
       credited to the Participant's Account in the
       following order:

1. supplemental account
2. rollover account
3. after-tax savings made before January 1, 1987
4. after-tax savings made after December 31, 1986

SSBT-002243
CONFIDENTIAL

– 149 –

    5.   Company contribution account

    6.   before-tax savings account

18.03   The promissory note executed by the Participant shall be held by the Trustee as an asset of the Account. Any loss caused by default on a Participant's loan obligation shall be borne solely by that Account. Anything herein to the contrary notwithstanding, in the event of such a default, foreclosure on the promissory note and attachment of security will not occur until a distributable event occurs under the Plan with respect to the Participant involved.

18.04   The Administrative Committee shall prepare a written document setting forth the following information regarding loans from the Plan and such other information as the Administrative Committee deems relevant:

(1)   The identity of the person or positions authorized to administer the loan program;

(2)   A procedure for applying for loans;

(3)   The basis on which loans will be approved or denied;

(4)   Limitations (if any) on the types and amount of loans offered;

(5)   The procedure under the program for determining a reasonable rate of interest;

(6)   The events constituting default and the steps that

SSBT-002244
CONFIDENTIAL