STATE STREET GLOBAL ADVISORS



FIDUCIARY COMMITTEE MEETING MINUTES

| | |
|---|---|
| Date: | Fiduciary Committee Meeting of January 29, 2004 |
| Subject: | W.R. Grace |
| Committee Members Present: | Kelly Driscoll, Shawn Johnson, John Kirby, Mitch Shames |
| Attendees: | Monet Ewing, Melissa Smith, - SSgA<br>Jack Cleary, Dan Glosband, Legal Counsel – Goodwin & Procter ("G&P")<br>Dan Bayston, Paul Trost, Financial Advisors – Duff & Phelps ("D&P") |

**W.R. Grace**

Discussion:   D. Bayston presented D&P's financial and valuation analysis of W.R. Grace ("Grace") to the Committee. D. Bayston explained that D&P established reasonable operation values absent of contingent factors as a starting point, then adjusted that figure for contingent factors, including, probabilities, sensitivities and driving factors. Grace's first quarter earnings have increased and the stock is currently trading at $3.48 a share. Its current trading activity is similar to other asbestos bankrupt companies. D. Bayston described the multiples that were examined and the comparable companies that were used. Grace sold two companies, Sealed Air and Fresenis, prior to the bankruptcy filing, however, there is charge of fraud in the transactions. The four week trading volume is 2.6 million shares and the equity value per share is highly sensitive to the liability that Grace experiences. Due to the bankruptcy filing, analysts currently do not cover the Company.

A settlement has been reached with the insurance company regarding asbestos costs for approximately $217 million which is 30% of the estimated cost. S. Johnson asked whether the insurance companies are viable entities. D.Bayston stated that they were comfortable with the carriers and their ability to pay. J. Cleary inquired if there would be more money awarded, D. Bayston stated that could happen and if so, that would impact Grace's share price. Company has reserved $70 million for environmental liability.

Grace has three liabilities outstanding. The first liability is the bodily injury claim which is their most high profile liability. D&P anticipates more ongoing cases. This could be preempted by the upcoming FAIR Act legislation (the "Act"). The Act will set up a trust to manage the asbestos liabilities of all manufactures. If the Act is passed as proposed, Grace's projected liability could be $300 million over 27 years. S. Johnson expressed concern regarding the actual funding needed to fund any general trust. D&P agreed that the correct figure



SSBT-000675
CONFIDENTIAL



Page 2

is still uncertain but that it doubled Grace's expected liability as a conservative estimate. This amount is still substantially less then what Grace's liability would be if the Act is not passed. There has been some opposition to the Act, including a mixed response from the Unions. Grace's second liability is in connection with the Zonolite Attic Insulation product ("ZAI") and represents a much larger liability to Grace. Grace estimates its liability to be approximately $3 billion, plaintiff's estimate that figure to be closer to $40 billion and the EPA estimates it at $150 billion.

It is yet to be determined if the ZAI product contained asbestos materials. G&P believes that there is a possibility that this will be settled. If settled, then the amount would be in the somewhere in the middle between plaintiffs' figure and Graces' figure. If Grace were to lose the ZAI litigation, then the company would lose all value. The third outstanding liability is the asbestos bodily injury claims which are not yet subject to a bar date. There are currently 130,000 claims against Grace. Progress has been delayed due to attempts to disqualify the judge. The Act, as proposed, would address the bodily injury claims.

In analyzing the contingent factors listed above, D&P examined several potential outcomes and scenarios, such as if the ZAI litigation goes to trial and Grace loses, or it wins, ZAI settles with favorable terms to Grace and/or the passage of the Fair Act. The best scenario would be Grace wining ZAI and the Fair Act passing.

State Street currently holds one million shares of the Grace stock. The Committee examined if the holding raises the question of whether State Street should reduce it shares. Goodwin Procter explained that the action State Street takes would depend on what capacity State Street is holding the shares. What is a prudent investment for one entity may or may not be for another. If State Street is required to sell shares in one instance, this does not mandate that the same action for all its holdings in any capacity.

J. Kirby asked D&P if the ZAI claims were affecting the stock price. D. Bayston replied that the ZAI claim is not as high profile as the bodily injury claim and such, doesn't seem to have much impact, even though it is a greater liability. D. Glosband updated the Committee generally with respect to other companies in bankruptcy due to asbestos claims. Grace and Usg are the only two companies to date not eliminating equity. Others have indicated publicly that there will be no equity going forward.

Committee discussed the risks involved in both holding and selling the Grace Stock. K. Driscoll reminded the Committee that it was important to consider how long it would take to sell the block, especially since the plan holds a block of over 10% of the outstanding stock. K. Driscoll also pointed out that State Street can discontinue the selling program at anytime. The Committee discussed generally past instances when it became necessary to override the plan document. One such instance was when there was an imminent threat of bankruptcy. In the case of WR Grace, the company is already in bankruptcy.

SSBT-000676
CONFIDENTIAL



Page 3

M. Shames requested that the IFG provide the Committee with the factors supporting the initiation of a selling program for the stock. Once this has been provided to the Committee, then the matter will be brought forth for a vote.

Monet Ewing informed the Committee that a communication had been sent out to the plan participants highlighting the nature and risk of the investment.

D. Glosband provided an update on the asbestos claims to the Committee and informed the Committee that the company's period for filing a plan of reorganization has been continued for another six months. The issue of whether or not someone should sit on the Equity Committee to represent the block of Grace stock was discussed. D. Glosband stated that at this time, he would see no added value since we have access currently to all public information. The Committee discussed that they wouldn't be opposed to having someone sit on the Equity Committee, if it was deemed appropriate in the future. Such person would be required to participant on an isolated basis and would not be allowed to participate in the Fiduciary Committee process. D. Glosband reiterated that the information is already available to us and State Street would not have any more input by sitting on the Equity Committee.

SSBT-000677
CONFIDENTIAL