

# M E M O R A N D U M

| | |
|---|---|
| To | Kelly Driscoll<br>Monet Ewing<br>Randall J Carrigan<br>Daniel D. Bayston |
| CC | John J. Cleary, P.C.<br>Shepard M. Remis, P.C<br>Jeffrey C. Hadden, P.C.<br>U. Gwyn Williams<br>Peter D. Bilowz<br>Courtney A. Clark |
| From | Daniel M. Glosband, P.C. |
| Re | W. R. Grace & Co. |
| Date | November 21, 2003 |

This memorandum is to provide the context and focus for Goodwin Procter's portion of the W.R. Grace & Co. ("Grace") diligence in the pending jointly administered chapter 11 case of Grace and 61 of its U.S. subsidiaries and affiliates. It does not address the implications of proposed legislative changes which would materially alter the analysis. Chapter 11 is designed to permit a debtor to deal with liabilities that arose from the debtor's actions prior to the date of filing the chapter 11 petition (here, April 2, 2001). Because Grace has significant asbestos-related liabilities, its plan of reorganization ("POR") will invoke the asbestos-specific provisions of §524(g) of the Bankruptcy Code.

Our task is to assess the potential treatment in a plan of reorganization of Grace's approximately 65.6 million outstanding common shares. For example if the POR is likely to eliminate the old common shares with no distribution to shareholders (as often happens in chapter 11 and as has happened in many asbestos-related cases), then sale of the shares while the market still attributes value to them would be advisable. In an ordinary, non-asbestos chapter 11, prospects for common shares would be a function of the range of likely enterprise value, the type, amount and treatment of pre-petition debt and any number of objective and subjective factors that bear upon the goals and negotiating leverage of the various parties. In an asbestos case which invokes §524(g) there is an additional set of specified criteria which, if satisfied, direct all asbestos-

SSBT-003234
CONFIDENTIAL

related claims to a trust and otherwise enjoin all asbestos-related actions against the debtor and other specified parties. There is also a negotiating dynamic among the debtor company and each of its stakeholder constituencies, with the asbestos bodily injury claimants playing the leading role. Insights into negotiations, the positions taken by the various constituencies and the potential outcome will be as important to a determination of shareholder prospects as the traditional valuation issues. They will also be harder to come by.

As in all chapter 11 cases, the fundamental question for common shareholders is whether the company's fair enterprise value exceeds its estimated liabilities. If value reaches the shareholder level, then shareholders must receive this value (unless they vote to accept less) under the requirements for confirmation of a chapter 11 POR. If value does not reach this level, then shareholders can be eliminated. There obviously is potential for disagreement over valuing assets and liabilities and deals are often struck to avoid litigating valuation.

If there is a credible possibility that Grace is solvent, then the common shareholders will have a right to participate in the distribution of value under a POR. If Grace is clearly insolvent, then shareholders have no absolute right to participate, have limited negotiating leverage and will be exposed to elimination. We understand that our role in this part of the diligence is to assist in valuing or estimating Grace's liabilities, including its asbestos exposure.

Grace's disclosures concerning its liabilities are a starting point but clearly do not fully evaluate asbestos-related exposure. The liabilities to be addressed are those that will be affected by the chapter 11 proceedings. These are categorically identified as "liabilities subject to compromise", which is the terminology applied by AICPA Statement of Position 90-7, "Financial Reporting by Entities in Reorganization under the Bankruptcy Code"("SOP 90-7"). The following is Grace's discussion of SOP 90-7 from its 10Q for 9/30/03 (filed 11/10/03):

*Pursuant to SOP 90-7, Grace's pre-petition liabilities that are subject to compromise are required to be reported separately on the balance sheet at an estimate of the amount that will ultimately be allowed by the Bankruptcy Court. As of September 30, 2003, such pre-petition liabilities include fixed obligations (such as debt and contractual commitments), as well as estimates of costs related to contingent liabilities (such as asbestos-related litigation, environmental remediation, and other claims). The recorded amounts of such liabilities generally reflect accounting measurements as of the Filing Date, adjusted as warranted for changes in facts and circumstances and/or rulings under Grace's Chapter 11 proceedings subsequent to the Filing.*

The liabilities subject to compromise as disclosed in the latest 10Q are as follows;

| (Dollars in millions) (Unaudited) | SEPTEMBER 30, 2003 | December 31, 2002 |
|---|---|---|
| Debt, pre-petition plus accrued interest............ | $    547.5 | $    538.8 |
| Asbestos-related liability | 964.6 | 973.2 |

1844375-1

SSBT-003235
CONFIDENTIAL

| | | |
|---|---:|---:|
| Income taxes................... | 238.3 | 227.8 |
| Environmental remediation..... | 244.4 | 201.1 |
| Postretirement benefits other than pension ......... | 139.0 | 147.2 |
| Special pension arrangements ............... | 76.5 | 74.9 |
| Retained obligations of divested businesses ........ | 57.6 | 55.3 |
| Accounts payable ............. | 32.2 | 32.4 |
| Other accrued liabilities .... | 85.0 | 84.0 |
| | $ 2,385.1 | $ 2,334.7 |

Grace currently estimates these liabilities for SOP 90-7 purposes as totaling $2,385.1 million, of which $964.6 million are asbestos-related. This not likely to be even close to the amount that will be claimed once a bar date is set. The bar date for most categories of claims (including asbestos property damage claims other than those arising from the so-called Zonolite Attic Insulation ["ZAI"] litigation) has passed and Grace is beginning to review filed claims. However, no bar date has been set for asbestos bodily injury claims or the ZAI claims

In addition to the traditional valuation analysis, we should consider both the technical requirements of §524(g) and the practical implications of the negotiating demands, strengths and weaknesses of the various constituencies. These two factors may be difficult to evaluate without access to material non-public information but we may be able to pick up clues from the public information. The question presented by §524(g) is what the reorganized company will look like, what parts of it will be severed and protected from exposure to asbestos-related claims, what parts will be used to fund the trust and specifically what "securities" will be included in the funding for the trust. To invoke §524(g) and its broad injunctive protections, the POR must provide for a trust that (a) assumes the debtor's asbestos-related liabilities, (b) is funded in whole or in part by "securities" of one or more debtors and by their obligations to make future payments, (c) is to own, or have a contingent right to own, a majority of the voting shares of each such debtor, its parent or a subsidiary which is a debtor and (d) is to use its (the trust's) assets or income to pay claims and demands.

The arcane set of rules, the negotiation environment and the myriad possible permutations for entity division and structure preclude any useful predictions as to which entities will have to contribute what securities to the trust and what will be set aside for which other stakeholders. In practice, the issue will be negotiated primarily between the company and representatives of the asbestos claimants (including the representative to be appointed to represent future claimants). The company has given no hints of the state of play in its public filings. The following is the discussion from the recent 10Q:

1844375-1

SSBT-003236
CONFIDENTIAL

*The Debtors intend to address all of their pending and future asbestos-related claims and all other pre-petition claims in a plan of reorganization. Such a plan of reorganization may include the establishment of a trust through which all pending and future asbestos-related claims would be channeled for resolution. However, it is currently impossible to predict with any degree of certainty the amount that would be required to be contributed to the trust, how the trust would be funded, how other pre-petition claims would be treated or what impact any reorganization plan may have on the shares of common stock of the Company. The interests of the Company's shareholders could be substantially diluted or cancelled under a plan of reorganization. The formulation and implementation of the plan of reorganization is expected to take a significant period of time.*

In this context, the following information would be helpful, to the extent that it can be determined without disclosure of material non-public information:

1. Status of negotiations with asbestos claimants?
    a. Will asbestos property damage claims and ZAI claims be treated separately from bodily injury claims? Will all be included in the trust in some way?
    b. Anticipated timing for POR relative to current exclusivity deadline of 2/1/04?
    c. Have asbestos claimants taken positions in the chapter 11 case that would provide insight into level of demand? ... into POR/entity structure?

2. Status of appointment of representative of persons who may make future demands?
    a. Implications and expectations concerning opposition to initial candidate?

3. Anticipated establishment of bar date for asbestos bodily injury claims, ZAI claims?
    a. Status of science trial for ZAI claims; magnitude of exposure if Grace loses science trial?

4. Grace's preliminary thinking on POR structure, trust funding?
    a. Will company be divided, portion to asbestos trust, portion to other claimants, stakeholders? What will wind up where?
    b. Grace's thinking on solvency, enterprise value, liabilities. Have them review and comment on "liabilities subject to compromise" as reported.

5. Any sources of public information on these topics other than SEC filings, chapter 11 pleadings?

6. Implications and expectations concerning efforts to disqualify Judge Wolin

1844375-1

SSBT-003237
CONFIDENTIAL

7. Role, position of Equity Committee thus far
     a. Any pronouncements on valuation issues; any other issues which would provide or enhance negotiating leverage?
8. Status of Sealed Air settlement; why hasn't it been approved yet by the bankruptcy court?

1844375-1

SSBT-003238
CONFIDENTIAL