Westlaw.

2004 WL 3522250                                                    Page 1
2004 WL 3522250 (N.D.N.Y.)


For opinion see 39 Employee Benefits Cas. 1232, 2006 WL 436065, 409 F.Supp.2d 136

United States District Court, N.D. New York.
AGWAY INC. Employees' 401 (k) Thrift Investment Plan, et al., Plaintiffs,
v.
MAGNUSON, et al., Defendants.
**No. 5:03-CV-1060 (HGM/GJD).**
June 18, 2004.


Brief of the Secretary of Labor as Amicus Curiae in Opposition to Motions to
Dismiss


Howard M. Radzely, Solicitor of Labor, Timothy D. Hauser, Associate Solicitor, Plan
Benefits Security Division, Elizabeth Hopkins, Counsel for Appellate and Special
Litigation, Plan Benefits Security Division, Susan J. Luken, Trial Attorney, U.S.
Department of Labor, Office of the Solicitor, Plan Benefits Security Division, P.O.
Box 1914, Washington, DC 20013, Phone: (202) 693-5600.

TABLE OF CONTENTS

TABLE OF AUTHORITIES ... iii

INTRODUCTION ... 1

ARGUMENT ... 2

 I. STANDARD OF REVIEW ... 2

 II. FIDUCIARY STATUS AND FIDUCIARY DUTIES UNDER ERISA ... 4

  A. ERISA Fiduciaries, In General ... 4

  B. A Named Fiduciary Is Not a Fiduciary for All Purposes ... 5

  C. ERISA's Fiduciary Duties, In General ... 6

 III. THE AMENDED COMPLAINT STATES CLAIMS AGAINST THE COMMITTEE DEFENDANTS ... 7

  A. The Investment Committee Defendants ... 7

   1. Plan Language and Allegations Regarding the Investment Committee ... 7

   2. Plan Language Does Not Abrogate Fiduciary Duties With Respect to Investment
in Company Stock ... 9

   3. The Moench/Kuper Presumption Does Not Apply ... 12

  B. The Administration Committee Defendants ... 16

   1. Plan Language and Allegations Regarding the Investment Committee ... 16

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 3522250                                                    Page 2
2004 WL 3522250 (N.D.N.Y.)

  2. Fiduciary Duty Not to Make Misrepresentations and to Provide Information ... 18

  3. The Federal Securities Laws Do Not Shield Plan Fiduciaries ... 22

 IV. PLAINTIFFS STATE A CLAIM AGAINST BOSTON SAFE ... 26

 V. THE AMENDED COMPLAINT STATES A CLAIM AGAINST THE DIRECTOR DEFENDANTS ... 28

  A. Under ERISA Section 409, Members of a Board of Directors May Be Individually Liable For Breaches of Fiduciary Duty ... 28

  B. Directors Who Appoint Have a Duty To Monitor ... 29

 VI. COFIDUCIARY LIABILITY ... 34

CONCLUSION ... 36

TABLE OF AUTHORITIES

Cases

Anderson v. Coughlin, 700 F.2d 37 (2d Cir. 1983) ... 3

Ballone v. Eastman Kodak Co., 109 F.3d 117 (2d Cir. 1997) ... 18

Becker v. Eastman Kodak Co., 120 F.3d 5 (2d Cir. 1997) ... 19

Beddall v. State Street Bank & Trust Co., 137 F.3d 12 (1st Cir. 1998) ... 32

Berlin v. Mich. Bell Tel. Co., 858 F.2d 1154 (6th Cir. 1988) ... 18

Boston v. Stanton, 450 F. Supp. 1049 (W.D. Mo. 1978) ... 3

Bridgeway Corp. v. Citibank, N.A., 132 F. Supp. 2d 297 (S.D.N.Y. 2001) ... 3

Bussian v. RJR Nabisco, Inc., 223 F.3d 286 (5th Cir. 2000) ... 2

Canale v. Yegan, 789 F. Supp. 147 (D.N.J. 1992) ... 10

Central States, Southeast & Southwest Areas Pension Fund v. Central Transp. Inc., 472 U.S. 559 (1985) ... 6, 9

Central Trust Co., N.A. v. American Avents Corp., 771 F. Supp. 871 (S.D. Ohio 1989) ... 10

Chance v. Armstrong, 143 F.3d 698 (2d Cir. 1998) ... 3

Chao v. Hall Holding Co., 285 F.3d 415 (6th Cir. 2002) ... 28

Chicago Hous. Auth. v. J.A. Hannah Inv. Advisory Serv. Inc., Civ. No. 95 C 5251, 1996 WL 328033 (N.D. Ill. May 9, 1996) ... 35

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 3522250
2004 WL 3522250 (N.D.N.Y.)

Page 3

Condus v. Howard Sav. Bank, 781 F. Supp. 1052 (D.N.J. 1992) ... 24

Conley v. Gibson, 355 U.S. 41 (1957) ... 3

Cooper v. Parsky, 140 F.3d 433 (2d Cir. 1998) ... 3

Crowley v. Coming, Inc., 234 F. Supp. 2d 222 (W.D.N.Y. 2002) ... 21, 22

Crowley v. Coming, Inc., No. 02-CV-6172 CJS, 2004 WL 763873 (W.D.N.Y. Jan. 14, 2004) ... 32

Daniels v. Nat'l Employee Benefit Servs., Inc., 858 F. Supp. 684 (N. D. Ohio 1994) ... 32

Davis v. Bowman Apple Prods. Co., No. CIV.A. 5:00CV00033, 2002 WL 535068 (W.D. Va. Mar. 29, 2002), aff'd, 50 Fed. Appx. 138 (4th Cir 2002) ... 20

Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76 (2d Cir. 2001) ... 18, 19

Dirks v. SEC, 463 U.S. 646 (1983) ... 25

Donovan v. Bierwirth, 680 F.2d 263 (2d Cir. 1982) ... 2, 6

Donovan v. Cunningham, 716 F.2d 1455 (5th Cir. 1983) ... 13, 28

Eaves v. Penn, 587 F.2d 453 (10th Cir. 1978) ... 10

EEOC v. Staten Island Sav. Bank, 207 F.3d 144 (2d Cir. 2000) ... 3

Ershick v. Greb X-Ray Co., 705 F. Supp. 1482 (D. Kan. 1989), aff'd, 948 F.2d 660 (10th Cir. 1991) ... 10

Fink v. Nat'l Sav. Bank & Trust Co., 772 F.2d 951 (D.C. Cir. 1985) ... 9

Fischer v. Phila. Elec. Co., 994 F.2d 130 (3d Cir. 1993) ... 18

Franklin v. First Union Corp., 84 F. Supp. 720 (E.D. Va. 2000) ... 19

Griggs v. E.I. DuPont de Nemours & Co., 237 F.3d 371 (4th Cir. 2001) ... 20

Hernandez v. Coughlin, 18 F.3d 133 (2d Cir. 1994) ... 3

Howard v. Shay, 100 F.3d 1484 (9th Cir. 1996) ... 28

Hudson v. Gen. Dynamics Corp., 118 F. Supp. 2d 226 (D. Conn. 2000) ... 20

Hull v. Policy Mgmt. Sys. Co., No. CIV A 3:00-778-17, 2001 WL 1836286 (D.S.C. Feb. 9, 2001) ... 25, 28, 33

In re Bidermann Indus. U.S.A., Inc., 241 B.R. 76 (Bankr. S.D.N.Y. 1999) ... 19

In re CMS Energy ERISA Litig., 312 F. Supp. 2d 898 (E.D. Mich. 2004) ... passim

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

In the Matter of Cady, Roberts & Co., No. 8-3925, 1961 WL 60638, 40 SEC 907,
Release No. 6668 (Nov. 8, 1961) ... 23, 24

In re Duke Energy ERISA Litig., 281 F. Supp. 2d 786 (W.D.N.C. 2003) ... 16

In re Dynegy, Inc. ERISA Litig., 309 F. Supp, 2d 861 (S.D. Tex. 2004) ... 16

In re Electronic Data Sys. Corp ERISA Litig., 305 F. Supp. 2d 658 (E.D. Tex. 2004)
... passim

In re Enron Corp. Sec., Derivative & ERISA Litig., 284 F. Supp. 2d 511 (S.D. Tex.
2003) ... passim

In re McKesson HBOC, Inc. ERISA Litig., No. C00-200308RMW, 2002 WL 31431588, (N.D.
Cal. Sept. 30, 2002) ... 25

In re Sears, Roebuck & Co. ERISA Litig., No. 02 C 8324, 2004 WL 407007, (N.D. Ill.
Mar. 3, 2004) ... 32

In re Sprint Corp. ERISA Litig., No. 03-2202-JWL, 2004 WL 1179371, (D. Kan. M ay
27, 2004) ... 12, 15, 32

In re Unisys Savings Plan Litig., 173 F.3d 145 (3d Cir. 1999) ... 14

In re Unisys Corp. Retiree Med. Benefit ERISA Litig., 57 F.3d 1255 (3d Cir. 1995)
... 19

In re Williams Co. ERISA Litig., 271 F. Supp. 2d 1328 (N.D. Okla. 2003) ... 1, 33

In re WorldCom, Inc., 263 F. Supp. 2d 745 (S.D.N.Y. 2003) ... 11

In re XCEL Energy, Inc. Secur., Derivative & ERISA Litig., 2004 WL 758990 (D.
Minn. M arch 10, 2004) ... 15, 22, 23

Jackson v. Truck Drivers' Union Local 42 Health & Welfare Fund, 933 F. Supp. 1124
(D. M ass. 1996) ... 35

Keach v. U.S. Trust Company, 240 F. Supp. 2d 832 (C.D. Ill. 2002) ... 28

Kerns v. Benefit Trust & Life Ins. Co., 992 F.2d 214 (8th Cir. 1993) ... 32

Koch v. Dwyer, No. 98 Civ. 5519 (RPP), 1999 WL 528181 (S.D.N.Y. 1999), clarified on
other grounds, 2000 WL 174945 (S.D.N.Y. Feb. 15, 2000) ... 26

Kuper v. lovenko, 66 F.3d 1447 (6th Cir. 1995) ... 10, 12-16

Laborer's Nat'l Pension Fund v. Northern Trust Quantitative Advisors, Inc., 173
F.3d 313 (5th Cir. 1999) ... 10

LaLonde v. Textron, Inc., Nos. 03-2033, 03-2039, 2004 WL 1039844 (1st Cir. May 7,
2004) ... 16

LaLonde v. Textron, Inc., 270 F. Supp. 2d 272 (D.R.I. 2003), overruled in part,

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 3522250                                        Page 5
2004 WL 3522250 (N.D.N.Y.)

Nos. 03-2033, 03-2039, 2004 WL 1002986 (1st Cir. May 7, 2004) ... 15, 32

Landry v. Air Line Pilots Ass'n Inter. AFL-CIO, 901 F.2d 404 (5th Cir. 1990) ... 29

Lee v. Burkhart, 991 F. 2d 1001 (2d Cir. 1993) ... 34

Leigh v. Engle, 727 F.2d 113 (7th Cir. 1984) ... 6, 31, 33

Liss v. Smith, 991 F. Supp. 278 (S.D.N.Y. 1998) ... 31

Lopresti v. Terwilliger, 126 F.3d 34 (2d Cir. 1997) ... 27

Martin v. Feilen, 965 F.2d 660 (8th Cir. 1992) ... 31

Martin v. Schwab, No. CIV.A.91-5059-CVSW-1, 1992 WL 266531 (W.D. Mo. Aug. 11, 1992) ... 29

Mehling v. New York Life Ins. Co., 163 F. Supp. 2d 502 (E.D. Pa. 2001) ... 31, 32

Moench v. Robertson, 62 F.3d 553 (3d Cir. 1995) ... 10, 12-16, 29

Mullins v. Pfizer, 23 F.3d 663 (2d Cir. 1994) ... 18, 20

Phelps v. Kapnolas, 308 F.3d 180 (2d Cir. 2002) ... 3

Phillip v. Univ. of Rochester, 316 F.3d 291 (2d Cir. 2003) ... 3

Rankin v. Rots, 278 F. Supp. 2d 853 (E.D. Mich. 2003) ... 11, 22, 23

Reich v. Lancaster, 55 F.3d 1034 (5th Cir. 1995) ... 27

Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774 (2d Cir. 1984) ... 3

Silverman v. Mut. Benefit Life Ins. Co., 138 F.3d 98 (2d Cir 1998) ... 34

Simeon v. Mt. Sinai Med. Ctr., 150 F. Supp. 2d 598 (S.D.N.Y. 2001) ... 19

Stein v. Smith, 270 F. Supp. 2d 157 (D. Mass. 2003) ... 5, 15, 16, 22

Stewart v. Thorpe Holding Co. Profit Sharing Plan, 207 F.3d 1143 (9th Cir. 2000) ... 29

Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002) ... 3, 4, 16

Ulico Casualty Co. v. Clover Capital Mgmt., Inc., 217 F. Supp. 2d 311 (N.D.N.Y. 2002) ... 2

Varity Corp. v. Howe, 516 U.S 489, 506 (1996) ... 19, 21

Vivien v. WorldCom, No. C02-01329 WHA, 2002 WL 31640557 (N.D. Cal. July 26, 2002) ... 22

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 3522250
2004 WL 3522250 (N.D.N.Y.)

Wright v. Oregon Metalurgical Corp., 222 F. Supp. 2d 1224 (D. Ore. 2002) ... 16

Statutes

29 U.S.C. § 1001 ... 1

29 U.S.C. § 1002(9) ... 29

29 U.S.C. § 1002(21) ... passim

29 U.S.C. § 1102(a) ... 4

29 U.S.C. § 1104(a) ... passim

29 U.S.C. § 1104(b) ... 5

29 U.S.C. § 1105 ... 5, 30, 34

29 U.S.C. § 1109 ... 29

Other Authority

29 C.F.R. § 2509.75-8 ... passim

29 C.F.R. § 2510.3-21(c)(1) ... 26, 27

DOL Opinion Letter 76-65A, 1976 WL 5090 (June 7, 1976) ... 27

DOL Opinion Letter 83-6A, 1983 WL 22495 (Jan. 24, 1983) ... 10

DOL Opinion Letter 90-05A, 1990 WL 172964 (March 29, 1990) ... 10

H.R. Rep. No. 93-533 (1973), reprinted in 1974 U.S.C.C.A.N. 4639 ... 7

Restatement (Second) of Trusts § 184 (1987 App.) ... 34

Rule 8, Fed. R. Civ. P ... 16, 20

Rule 9, Fed. R. Civ. P. ... 20, 21

S. Rep. No. 93-127 (1973), reprinted in 1974 U.S.C.C.A.N. 4639 ... 6

## INTRODUCTION

Beginning in 1997, Agway, Inc. operated under an expanding burden of debt. Amended Complaint at ¶ ¶ 90-91. [FN1] To meet the increasingly drastic demands of their senior lenders, made in response to Agway's repeated violations of financial covenants of the outstanding loans, Agway was required to place a large amount of subordinated debt with non-institutional investors. Id. at ¶ ¶ 92-94. The plaintiffs in this case - Agway Employees' 401(k) Thrift Plan (the "Plan") and State Street Bank & Trust Co. ("State Street"), an independent fiduciary to the Plan's Company Security Fund - allege that the Plan bought and held increasingly imprudent amounts of Agway securities during the period in which Agway's financial

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 3522250                                                          Page 7
2004 WL 3522250 (N.D.N.Y.)

condition was rapidly deteriorating. Plaintiffs seek to hold the Plan's fiduciaries
liable under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §
1001, et seq., for failing to take any action to protect the Plan and its
participants and beneficiaries.

    FN1. For the purpose of addressing these Motions to Dismiss, the Secretary
    accepts the allegations of the Amended Complaint as true, as the Court is required
    to do by Rule 12(b)(6) of the Federal Rules of Civil Procedure.

As discussed at length below, the Amended Complaint alleges that the Defendant
fiduciaries failed to consider the prudence of Plan investment in Agway securities,
failed to properly determine the value of those securities and thus repeatedly paid
more than appropriate, improperly touted investment in, and failed to disclose
material information about, Agway securities to the Plan's participants and
beneficiaries, and failed to monitor the fiduciaries they appointed. These
allegations state claims under ERISA upon which relief can be granted against the
members of the Plan's Administration Committee and Investment Committee (the
"Committee Defendants"), the Plan's trustee, Boston Safe Trust & Deposit Co.
("Boston Safe") and the Agway, Inc. board of directors (the "Director Defendants")
(collectively, the "Moving ERISA Defendants"). [FN2]

    FN2. The Secretary does not address all of the arguments raised by the motions
    to dismiss. The decision to address some, but not all arguments, should not be
    construed as reflecting on the merits of the arguments that are not addressed.

In their memoranda, the Moving ERISA Defendants collectively suggest that none of
them had any responsibility for the Plan's assets, that none of them had any
responsibility to the Plan's participants to ensure that the investment options
made available were prudent, and that none of them should or even could have
provided the participants with information regarding the true value of Agway
securities, and of Agway's and the Plan's financial condition. These positions are
untenable. Each Moving ERISA Defendant was an ERISA fiduciary to the Plan, with
specific responsibilities relating to the conduct that is the basis for Plaintiffs'
allegations. ERISA's fiduciary duties are among the "highest known to the law." See
Donovan v. Bierwirth, 680 F.2d 263, 272 n.2 (2d Cir. 1982); Ulico Casualty Co. v.
Clover Capital Mgmt., Inc., 217 F. Supp. 2d 311, 315 (N.D.N.Y. 2002); Bussian v.
RJR Nabisco, Inc., 223 F.3d 286, 294 (5th Cir. 2000). They do not permit
fiduciaries to ignore grave risks to plan assets and abdicate their
responsibilities to plan participants. The allegations of the Amended Complaint are
sufficient to withstand motions to dismiss, and the Plaintiffs should be allowed to
conduct discovery to prove those allegations.

                              ARGUMENT


I. STANDARD OF REVIEW

 A complaint should not be dismissed pursuant to Rule 12(b)(6) of the Federal Rules
of Civil Procedure for failure to state a claim upon which relief can be granted
"unless it appears beyond doubt that the plaintiff can prove no set of facts in
support of his claim which would entitle him to relief" Conley v. Gibson, 355 U.S.
41, 45-46 (1957); Phillip v. Univ. of Rochester, 316 F.3d 291, 293 (2d Cir. 2003);
Cooper v. Parsky, 40 F.3d 433, 440 (2d Cir. 1998); Bridgeway Corp. v. Citibank,
N.A., 132 F. Supp. 2d 297, 302-03 (S.D.N.Y. 2001). In deciding whether a complaint

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 3522250                                                    Page 8
2004 WL 3522250 (N.D.N.Y.)

states a claim, a court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiffs favor. EEOC v. Staten Island Say. Bank, 207 F.3d 144, 148 (2d Cir. 2000); Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994).

A court's task "in ruling on a Rule 12(b)(6) motion 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof' " Cooper, 140 F.3d at 440 (quoting Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984)). Thus, the fundamental issue at the dismissal stage " 'is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.' " Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998) quoted in Phelps v. Kapnolas, 308 F.3d 180, 184-85 (2d Cir. 2002).

The notice pleading principles embodied in Rules 8 and 12 of the Federal Rules of Civil Procedure are intended to remove technical obstacles impeding access to the federal courts. Anderson v. Coughlin, 700 F.2d 37, 43 (2d Cir. 1983); Boston v. Stanton, 450 F. Supp. 1049, 1053 (W.D. Mo. 1978). A complaint need only "give the defendant fair notice of what the plaintiffs claim is and the grounds upon which it rests." Conley, 355 U.S. at 47; see Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512 (2002). Thus, the federal rules allow simple pleadings and "rel[y] on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Swierkiewicz, 534 U.S. at 512.

II. FIDUCIARY STATUS AND FIDUCIARY DUTIES UNDER ERISA

A. ERISA Fiduciaries, in General

ERISA section 404(a)(1) imposes broad obligations on ERISA fiduciaries for the protection of plan participants and beneficiaries. 29 U.S.C. § I 104(a)(1). ERISA section 402 requires that every plan have at least one "named fiduciary." 29 U.S.C. § 1102(a) ("Every employee benefit plan shall ... provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan."). In this case, the Plan names the Board of Directors and both Committees as named fiduciaries. See Plan at § 5.03 (attached as Exhibit A to the Amended Complaint); Amended Complaint at ¶¶ 9-11. In addition, individuals serving in certain positions, such as trustees, are always fiduciaries. See 29 C.F.R. § 2509.75-8 at D-2. Thus, all the Moving ERISA Defendants were fiduciaries to the Plan.

In this case, and as will be discussed at length below, the Plan divides the fiduciary obligations among the named fiduciaries: the Investment Committee has responsibility for managing the assets of the Plan, the Administration Committee has responsibility for all other aspects of the administration of the Plan, and the Director Defendants appoint the Committees and the trustee. The Plan's trustee is responsible for inter alia, investing the Company Security Fund and valuing its assets. See Plan at §§ 15.01-15.03; Amended Complaint at ¶¶ 9-11, 12. These designated responsibilities correspond to the fiduciary breaches alleged by Plaintiffs: failure to consider prudence of Agway securities and determine their proper value and price (Investment Committee Defendants and Boston Safe), failure to provide complete and non-misleading information to Plan participants

2004 WL 3522250
2004 WL 3522250 (N.D.N.Y.)

(Administration Committee Defendants), and failure to monitor the Committees
(Director Defendants). In addition, ERISA section 405 permits fiduciaries to be
held liable for fiduciary breaches committed by their co-fiduciaries if they
partake in or conceal the breach, cause the breach by their own actions, or have
knowledge of the breach and do nothing. 29 U.S.C. § 1105(a). Plaintiffs have
alleged that the Moving ERISA Defendants are all liable for each other's breaches
under section 405(a). Amended Complaint at ¶ ¶ 163-64, 187-88, 207-09, 236.

B. A Named Fiduciary Is Not A Fiduciary For All Purposes

 The Secretary does not agree with Plaintiffs' assertion that a named fiduciary is
necessarily a fiduciary for all purposes. See Plaintiffs' Memorandum at 24- 31.

 ERISA contains provisions for dividing fiduciary functions among various
fiduciaries. Section 404(b)(2) requires a plan to "describe any procedure under the
plan for the allocation of responsibilities for the operation and administration of
the plan." 29 U.S.C. § 1104(b)(2); e.g., ERISA § 3(21)(A)(i) and (iii), 29 U.S.C.
§ 1002(21)(A)(i) and (iii) (a person not otherwise named as a fiduciary is
nonetheless a fiduciary "to the extent" he engages in fiduciary activities). Thus,
in a regulation at 29 C.F.R. 2509.75-8 D-13 and 14, the Secretary has stated that,
if the plan allocates responsibilities among named fiduciaries, they will not be
liable for acts and omissions of other named fiduciaries in carrying out fiduciary
responsibilities which have been allocated to them, except for co-fiduciary
liability under ERISA section 405(a).

 As noted in the preceding section, the Plan allocates responsibility among its
named fiduciaries, with the Investment Committee responsible for managing the
assets of the Plan, the Administration Committee responsible for all other aspects
of the administration of the Plan, and the Director Defendants responsible for
appointing and monitoring the Committees and the trustee. See Plan at § § 14.01,
15.01-15.03; Amended Complaint at ¶ ¶ 9-11, 12. Thus, despite the fact that each
named fiduciary is not subject to blanket liability for all aspects of the Plan,
Plaintiffs have stated claims upon which relief can be granted against all the
Moving ERISA Defendants for both direct and co-fiduciary liability, as discussed
below.

C. ERISA's Fiduciary Duties, In General

 ERISA section 404(a)(1)(A) and (B) provides:

  [A] fiduciary shall discharge his duties with respect to a plan solely in the
interest of the participant and beneficiaries and --

  (A) for the exclusive purpose of:

   (i) providing benefits to participants and their beneficiaries; and

   (ii) defraying reasonable expenses of administering the plan;

  (B) with the care, skill, prudence, and diligence under the circumstances then
prevailing that a prudent man acting in a like capacity and familiar with such
matters would use in the conduct of an enterprise of a like character and with like
aims.

                    ©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 3522250
2004 WL 3522250 (N.D.N.Y.)

29 U.S.C. § 1104(a)(1)(A) and (B). Section 404(a)(1)(A)'s "duty of loyalty"
requires fiduciaries to act with "complete and undivided loyalty to the
beneficiaries of the trust" and with an "eye single to the interests of the
participants and beneficiaries." Donovan v. Bierwirth, 680 F.2d at 271; see, e.g.,
Leigh v. Engle, 727 F.2d 113, 123 (7th Cir. 1984).

ERISA's "duty of care" requires each fiduciary to act with the "care, skill,
prudence, and diligence under the circumstances then prevailing that a prudent man
acting in a like capacity and familiar with such matters" would employ. 29 U.S.C. §
1104(a)(1)(B). These duties originate in the common law of trusts, to which
Congress specifically looked when legislating ERISA's fiduciary duties. Central
States, Southeast & Southwest Areas Pension Fund v. Central Transp. Inc., 472 U.S.
559, 571 n.10 (1985) (citing S. Rep. No. 93-127, p. 29 (1973), reprinted in 1974
U.S.C.C.A.N. 4639, 4865 (" 'The fiduciary responsibility section, in essence,
codifies and makes applicable to these fiduciaries certain principles developed in
the evolution of the law of trusts.' "); H.R. Rep. No. 93-533, p. 11 (1973),
reprinted in 1974 U.S.C.C.A.N. 4639, 4649 (identical language).

III. THE AMENDED COMPLAINT STATES CLAIMS AGAINST THE COMMITTEE DEFENDANTS

A. The Investment Committee Defendants

1. Plan Language and Allegations Regarding the Investment Committee

Section 15.02 of the Plan grants to the Investment Committee broad responsibility:
"the responsibility for the management of the assets of the Plan shall be placed
with the Investment Committee." See also Plan § 15.06 ("[T]he Investment Committee
shall be responsible for managing the assets under the Plan."). The Plan itself
recognizes that, in managing the Plan's assets, the Investment Committee was acting
as a fiduciary subject to ERISA's fiduciary duties:

The members of the Committees shall use that degree of care, skill, prudence, and
diligence under the circumstances then prevailing that a prudent person acting in a
like capacity and familiar with such matters would use in the conduct of an
enterprise of a like character and with like aims in accordance with the documents
and instruments governing the Plan and Title I of [ERISA].

Id. at § 15.08. The Investment Committee Defendants' claim that they only had the
duty to provide direction to the trustee and hire investment managers, see
Committee Defendants' Memorandum at 7, conflicts starkly with the terms of the
Plan. In any case, in the context of this motion, the allegations of the Amended
Complaint, drawn from the Plan language itself, must prevail.

The Amended Complaint alleges two interrelated fiduciary breaches by the
Investment Committee: the failure to adequately determine the value of Agway
securities, both before and after purchase, and the failure to even consider, at
any point, the prudence of Plan investment in Agway securities. At all relevant
times, the Plan purchased and held Agway preferred stock and debt instruments
called "money market certificates" ("MMCs") at prices set by Agway. Amended
Complaint at ¶ 42. Plaintiffs allege that the Investment Committee (along with
Boston Safe, as discussed below) was responsible for the Plan's investments in
Agway securities. Id. at ¶ ¶ 38-59. Plaintiffs allege that the prices paid by the

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 3522250
2004 WL 3522250 (N.D.N.Y.)

Plan (par value for the preferred stock and face principal value for MMCs) were substantially higher than the securities' fair market value. Id. at ¶ ¶ 46-47. Plaintiffs assert that the difference between the price paid and value arose from factors that increased the risk of investing in Agway securities to a level that the market normally correlates with lower prices and/or a higher rate of return than provided by the Agway securities. Id. at ¶ 47. Those risks, which Plaintiffs allege the Investment Committee failed to consider, included the following:

- Agway was in a precarious financial condition, and its cash flow was insufficient to meet its debt obligations;

- The securities were unsecured instruments, subordinated to Agway's burgeoning debt; and

- There was no public trading market for Agway securities, the Plan had no right to put the securities back to Agway, and Agway's "repurchase practice," by its terms, could be terminated at any time (as it was on June 14, 2002) and was, in any case, not applicable to approximately half of the MMCs held by the Plan.

Id. Plaintiffs further allege that the Investment Committee compounded this fiduciary breach by carrying Agway securities on the Plan's books at the inflated face value, rather than fair market value, as was required by the Plan. Id. at ¶ ¶ 50-53, 65-67.

Plaintiffs also allege that the Investment Committee failed to consider the prudence of investing Agway in securities at any price. They allege that Agway's earnings had plunged from $41 million in 1998 to-$98 million in 2002, that Agway had repeatedly violated debt covenants with its lenders, and that its worsening financial condition called into question Agway's ability to maintain its repurchase practice for certain securities, which Plan fiduciaries had relied upon in accepting the face value of Agway securities in the Plan. Id. at ¶ ¶ 91-94. The Amended Complaint alleges that the Investment Committee members knew of these problems. Id. at ¶ ¶ 96-98. Plaintiffs contend that, despite these serious warning signs, the Investment Committee failed to investigate the prudence of Plan investment in Agway securities. Id.

2. Plan Language Does Not Abrogate Fiduciary Duties With Respect to Investment in Company Stock

The Plan states that the Company Security Fund shall be invested in Agway securities and that Agway contributions shall be invested in the Company Security Fund. Plan at § § 4.01, 7.01. From this, the Investment Committee Defendants argue, "[n]o breach of fiduciary duty claim can be made against a fiduciary for failing to overrule the terms of a plan," and that "plaintiffs cannot argue that the Committee Defendants had a duty to overrule settlor decisions regarding investment options under the Plan." Committee Defendants' Memorandum at 15-16, 19; see also Director Defendants' Memorandum at 13-15. This argument misapprehends the Investment Committee's duties under ERISA.

ERISA section 404(a)(1)(D) requires fiduciaries to follow the terms of the plan document only "insofar as such documents and instruments are consistent with the provisions of [title I] and title IV" of ERISA. 29 U.S.C. § 1 104(a)(1)(D). Thus, fiduciaries have a duty under section 404(a)(1)(D) to decline to follow the terms

2004 WL 3522250                                                    Page 12
2004 WL 3522250 (N.D.N.Y.)

of the plan document where those terms require them to act imprudently in violation
of ERISA section 404(a)(1)(B). <u>Central States, Southeast & Southwest Areas Pension
Fund v. Central Transp. Inc.</u>, 472 U.S. at 568 ("trust documents cannot excuse
trustees from their duties under ERISA"); <u>Fink v. Nat'l Say. Bank & Trust Co.</u>, 772
<u>F.2d 951, 955-56 (D.C. Cir. 1985)</u> (ERISA's prudence and loyalty requirements apply
to all investment decisions made by employee benefit plans, including those made by
plans that may invest 100% of their assets in employer stock). Accordingly, plan
fiduciaries are obligated to act prudently and solely in the interest of the
participants and beneficiaries in deciding whether to purchase or retain employer
securities despite plan language requiring the plan to purchase employer securities.
See, e.g., <u>Laborer's Nat'l Pension Fund v. Northern Trust Quantitative Advisors,
Inc.</u>, 173 F.3d 313, 322 (5th Cir. 1999) (investment manager must disregard plan if
investing plan assets as required by plan would violate its duty of prudence);
<u>Kuper v. Iovenko, 66 F.3d 1447, 1457 (6th Cir. 1995)</u>; <u>Moench v. Robertson, 62 F.3d
553, 569 (3d Cir. 1995)</u>; see also DOL Opinion Letter No. 90-05A, <u>1990 WL 172964, at
*3 (Mar. 29, 1990)</u> (despite plan provisions to contrary, it is responsibility of
fiduciaries to determine, based on all the relevant facts and circumstances, the
prudence of investing large percentage of plan assets in qualifying employer
securities); DOL Opinion Letter No. 83-6A, <u>1983 WL 22495, at **1-2 (Jan. 24, 1983)</u>
(same).

  Thus, while a fiduciary "may be released from certain Per se violations on
investments in employer securities ... in making an investment decision of whether
or not a plan's assets should be invested in employer securities, an ESOP
fiduciary, just as fiduciaries of other plans, is governed by the 'solely in the
interest' and 'prudence' tests of § § 404(a)(1)(A) and (B)." <u>Eaves v. Penn, 587
F.2d 453, 459-60 (10th Cir. 1978)</u>; see also <u>Canale v. Yegan, 789 F. Supp. 147, 154
(D.N.J. 1992)</u>; <u>Ershick v. Greb X-Ray Co., 705 F. Supp. 1482, 1486-87 (D. Kan. 1989)</u>
(plan terms authorizing ESOP fiduciary to invest up to 100% of plan assets in
employer stock could be followed only if the investment decision was prudent),
aff'd, <u>948 F.2d 660 (10th Cir. 1991)</u>; <u>Central Trust Co., N.A. v. American Avents
Corp.</u>, 771 F. Supp. 871, 874-76 (S.D. Ohio 1989) (ESOP trustee properly ignored
pass-through voting provisions that would have prevented sale of an ESOP's stock
where the trustee determined that such a sale would be prudent).

  Numerous recent cases recognize that, under section 404(a)(1)(D), ERISA's
requirement of prudence takes precedence over plan language. While some of these
cases involve plans that permitted, but did not require, investment in employer
stock, as the Investment Committee Defendants argue, Committee Defendants'
Memorandum at 17-18, the courts' decisions did not turn on this fact, but generally
recognized the broader principle that section 404(a)(1)(D) requires fidelity to
ERISA's requirements over conflicting plan language. See <u>In re WorldCom, Inc., 263
F. Supp. 2d 745, 764 (S.D.N.Y. 2003)</u>; <u>In re Williams Co. ERISA Litig., 271 F. Supp.
2d 1328, 1343 (N.D. Okla. 2003)</u>; <u>Rankin v. Rots, 278 F. Supp. 2d 853, 857 (E.D.
Mich. 2003)</u>; <u>In re Enron Corp. Sec., Derivative & ERISA Litig., 284 F. Supp. 2d
511, 549 n.51, 656 (S.D. Tex. 2003)</u>.

  In this case, Plaintiffs allege that the Investment Committee caused the Plan to
acquire risky Agway securities at prices more appropriate for much safer
instruments. They allege that, after acquisition, the Investment Committee accepted
and reported the securities' face amounts as fair market value, although an
investigation would have revealed that the value was far lower than the face
amount. Plaintiffs also allege that the Investment Committee was aware of numerous

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 3522250
2004 WL 3522250 (N.D.N.Y.)

red flags highlighting Agway's deteriorating financial condition. Amended Complaint
at ¶ ¶ 91-98. Plaintiffs allege that, despite these serious warning signs, the
Investment Committee failed to investigate the prudence of Plan investment in Agway
securities. Id. As the authorities above establish, ERISA section 404(a)(1)(D)
permits plan fiduciaries to follow plan language only to the extent it is
consistent with ERISA's prudence requirements. The Investment Committee cannot hide
behind the Plan's language. [FN3] Plaintiffs' Count II states a claim against the
Investment Committee.

   FN3. Defendants counter that plan amendment is a non-fiduciary, settlor
function. See Committee Defendants Memorandum at 15; see also Director Defendants'
Memorandum at 14-15. Plaintiffs, however, do not allege that the Plan should have
been amended. Instead, they allege that the Plan's fiduciaries were required under
ERISA section 404(a)(1)(D) to determine whether the Plan's terms were consistent
with ERISA's fiduciary duties - i.e., whether continued investment in Agway
securities was prudent. In In re CMS Energy ERISA Litig., 312 F. Supp. 2d 898, 907-
08 (E.D. Mich. 2004), the court recently rejected a similar argument:

   Although the court agrees with the defendants' position that an amendment of
the Plan would not be a fiduciary act, it appears that plaintiffs' claim ... does
not solely complain of a lack of Plan amendment, as defendants suggest. Rather,
plaintiffs complain about the lack of any action taken by Plan fiduciaries, which
might include other measures to protect participants' assets, such as suspension of
investment in CMS stock funds, or requiring investments in the ESOP to be held in
cash until an assessment of the prudence of the CMS stock investment could be made.
Therefore ... the court will not dismiss Count I for failure to state a claim.

   (emphasis in original); see also In re Sprint Corp. ERISA Litig., No. 03-2202-
JWL, 2004 WL 1179371, at *8 (D. Kan. May 27, 2004). Likewise, Plaintiffs in this
case do not contend that a plan amendment was needed, but rather allege that the
Investment Committee Defendants failed to consider the prudence of investment in
Agway securities or to diversify the Company Security Fund when holding Agway
securities became imprudent, in accordance with ERISA section 404(a)(1)(D). Amended
Complaint at ¶ ¶ 91-98.

3. The Moench/Kuper Presumption Does Not Apply

 The Investment Committee Defendants also argue that they are entitled to a
presumption that investment in Agway securities was prudent, and that Plaintiffs
were obligated to plead specific facts overcoming such a presumption. See Committee
Defendants' Memorandum at 22-25 (citing Moench v. Robertson, 62 F.3d 553, 569 (3d
Cir. 1995) and Kuper v. Iovenko, 66 F.3d 1447, 1457 (6th Cir. 1995)). Defendants'
arguments are unavailing, because the Moench/Kuper presumption does not apply in
the circumstances alleged by Plaintiffs and, in any case, is not properly
considered at this stage of the proceedings.

 In Moench, a plan participant sued an employee stock ownership plan  ("ESOP")
committee for breach of fiduciary duty based on the committee's decision to invest
solely in employer stock during a period in which the employer's financial
condition deteriorated. 62 F.3d at 558-59. The plaintiff alleged that, although
various corporate insiders/committee members began to have doubts about the wisdom
of concentrating the plan's investments in employer stock, they collectively did
nothing. Id. The Third Circuit confirmed that fiduciaries of ESOPs (which by

2004 WL 3522250                                                        Page 14
2004 WL 3522250 (N.D.N.Y.)

definition hold company securities) must act prudently and solely in the interest
of the participants and beneficiaries in deciding whether to purchase or retain
employer securities. Id. at 569. This decision is in accord with the weight of
authority, as cited above. See supra at 10-11. Thus, while finding that an ESOP
fiduciary that invested plan assets in employer stock is entitled to a presumption
that he acted consistently with ERISA, the Third Circuit held that the presumption
can be overcome by establishing that the fiduciary abused his discretion. 62 F.3d
at 571. The court held that the factors Moench alleged (precipitous drop in stock
prices, committee members' knowledge of the impending collapse, and their
conflicted loyalties as corporate insiders and fiduciaries), if proven, could
overcome the presumption, and reversed summary judgment for the defendants. Id. at
572. The court also recognized the paramount importance of "vigorously enforcing
standards of fiduciary responsibility." Moench, 62 F.3d at 569 (quoting Donovan v.
Cunningham, 716 F.2d 1455, 1466 (5th Cir. 1983)). The Sixth Circuit subsequently
adopted the Moench court's reasoning in Kuper, 66 F.3d at 1457.

 Moench does not support the Investment Committee Defendants' contention that the
Plaintiffs are required to plead specific facts to overcome a presumption of
prudence. First, Moench's presumption of prudence does not apply when the
fiduciaries have made no attempt to determine whether it is prudent for the plan to
retain and continue to purchase employer stock. Absent evidence that the fiduciary
actually deliberated or discussed the issue in any formal way, the fiduciary will
not be entitled to deferential review. 62 F.3d at 567. The ESOP committee in Moench
made no attempt to determine whether the plan or ERISA required it to diversify the
plan's investment in employer stock. Id. at 567-68. In the absence of such actions,
the fiduciaries' decisions were not entitled to deference. In this case, Plaintiffs
allege that the Investment Committee completely failed to investigate the prudence
of investing in Agway securities, or even what fair market value of those
securities was. Amended Complaint at ¶ 46-47, 91-98. Accepting those allegations
as true for purposes of Defendants' motions to dismiss, the Investment Committee
Defendants are not entitled to a presumption under Moench and Kuper.

 Further, by its terms, Moench is limited to ESOPs. ESOPs are only one type of
"eligible individual account plan" ("EIAP"), as defined in ERISA section
407(d)(3)(A), 29 U.S.C. § 1107(d)(3)(A). In a more recent case, the Third Circuit
has indicated that its holding in Moench was limited to ESOPs:

 We were careful to point out in Moench, however, that our holding was limited to
the specific type of plan involved in that case, an Employee Stock Ownership Plan
("ESOP"). Here, of course, the Unisys Plan was not an Employee Stock Ownership
Plan. Furthermore, Moench specifically held its analysis was in "complete harmony
with the prudent man standard of care obligations imposed by 29 U.S.C. § 1104 on
fiduciaries, as our holding implicates only the standard of review of the conduct
of a fiduciary and not the standards governing that conduct,"... as is the case
here.

 In re Unisys Savings Plan Litig., 173 F.3d 145, 155 (3d Cir. 1999) (emphasis in
original) (citations omitted). Like the Unisys plan, the Agway Plan is not an ESOP,
and the applicability of the Moench presumption here is therefore questionable.

 Moreover, it is premature, and contrary to Rule 8(a), to consider the Moench/Kuper
presumption on a motion to dismiss. Neither addressed the requirements to survive a
motion to dismiss under Rule 12. Moench involved a review of a summary judgment, 62

2004 WL 3522250
2004 WL 3522250 (N.D.N.Y.)

F.3d at 556, 572; Kuper involved review of a judgment, 66 F.3d at 1452. Instead, Moench and Kuper addressed the type of evidence a plaintiff needed to rebut the presumption of prudence. Moench, 62 F.3d at 571 (presumption can be overcome by "establishing that the fiduciary abused its discretion by investing in employer securities") (emphasis added). To rebut the presumption, "[P]laintiff may introduce evidence that 'owing to circumstances not known to the settlor and not anticipated by him [the making of such investment] would defeat or substantially impair the ... purposes of the trust.' " Id. (quoting Restatement (Second) of Trusts § 227 comment g) (emphasis added). By its nature, a presumption involves a shifting of a burden of proof-an evidentiary matter - not a pleading requirement. There is no logical reason to insert Moench or Kuper into the pleading stages of the litigation, and numerous cases have refused to do so. See In re Electronic Data Sys. Corp. ERISA Litig, 305 F. Supp.2d 658, 670 (E.D. Tex. 2004) ("EDS") ("The Court holds that requiring Plaintiffs to affirmatively plead facts overcoming the ESOP presumption violates Rule 8(a)'s notice pleading requirement. ... Thus the Court rejects ... Defendants' argument that Plaintiffs must plead facts rebutting the ESOP presumption."); In re XCEL Energy, Inc. Secur., Derivative & ERISA Litig., 2004 WL 758990, at *8 (D. Minn. March 10, 2004); Stein v. Smith, 270 F. Supp. 2d 157, 172 (D. Mass. 2003); see In re Sprint Corp. ERISA Litig., No. 03-2202-JWL, 2004 WL 1179371, at **11-12 (D. Kan. May 27, 2004).

One of the cases cited by Defendants, LaLonde v. Textron, Inc., 270 F. Supp. 2d 272 (D.R.I. 2003), was recently overruled in relevant part by the First Circuit. LaLonde v. Textron, Inc., Nos. 03-2033, 03-2039, 2004 WL 1039844 (1st Cir. May 7, 2004). [FN4] The First Circuit rejected the district court's application of the Moench/Kuper presumption on a motion to dismiss. 2004 WL 1039844, at *3. The court cautioned against "the very high risk of error" inherent in application at the pleading stage of a hard-and-fast rule about what constitutes fiduciary breach. Id. Similarly, in this case, Plaintiffs' allegations against the Investment Committee are sufficient to survive a motion to dismiss. [FN5]

    FN4. The other district court decisions cited by Defendants erred by applying the presumption at the Rule 12(b)(6) stage. See In re Duke Energy ERISA Litig., 281 F. Supp. 2d 786 (W.D.N.C. 2003); Wright v. Oregon Metalurgical Corp., 222 F. Supp. 2d 1224 (D. Ore. 2002).

    FN5. Defendants also protest that the allegations of the Amended Complaint are too conclusory to meet the requirements of Rule 8. Committee Defendants' Memorandum at 20-21; Director Defendants' Memorandum at 15-16. Because pleadings are only required to give notice of a claim, Federal Rule of Civil Procedure 8 generally does not require plaintiffs to plead every fact that ultimately they must prove. Sweirkiewicz, 534 U.S. at 513-14. Instead, Rule 8(a) only requires a "short and plain" statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a). "ERISA does not have heightened pleading requirements." In re Dynegy, Inc. ERISA Litig., 309 F. Supp. 2d 861, 867 (S.D. Tex. 2004). If the defendants cannot understand the claims against them, which appears doubtful given their lengthy motions to dismiss, they should move for a more definite statement under Rule 12(e), not to dismiss. Sweirkiewicz, 534 U.S. at 514; Stein, 270 F. Supp. 2d at 157; EDS, 305 F. Supp. 2d at 674.

B. The Administration Committee Defendants

1. Plan Language and Allegations Regarding the Administration Committee

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 3522250
2004 WL 3522250 (N.D.N.Y.)

The Plan gives the Administration Committee broad discretion over all aspects of Plan administration other than management of Plan assets. E.g., Plan at § § 15.01 ("The responsibility for carrying out all phases of the administration of the Plan, except those phases connected with the management of assets, shall be placed with the Administration Committee."); 15.07 (Administration Committee has "exclusive authority and control to interpret, construe and apply all terms of the Plan, including any uncertain or disputed term or provision in the Plan"); 6.01 (Administration Committee to determine in what increments participants could allocate their contributions); 6.02 (Administration Committee responsible for implementing participants' changes in investment options); 6.04 (Administration Committee responsible for implementing transfers of participants' investments in the Plan). As noted above, the Plan requires that in fulfilling these duties the members of the Administration Committee act as ERISA fiduciaries. See Plan at § 15.08 ("The members of the Committees shall use that degree of care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims in accordance with the documents and instruments governing the Plan and Title I of [ERISA].").

Most importantly, the Administration Committee was responsible for providing Plan participants with information regarding their investment options and implementing the choices they made based on such information. Consistent with the Plan's language, Plaintiffs allege that the Administration Committee was responsible for, inter alia, "timely communicating material information about the Plan and its assets to Participants," and "ensuring that all communications to Participants regarding the Plan and its assets were factually accurate and not materially misleading." See Amended Complaint at ¶ 153. Despite playing down the Administration Committee's responsibilities, the Administration Committee Defendants implicitly concede this point. See Committee Defendants' Memorandum at 12 ("[T]he authority of the Administration Committee concerns enrolling participants in the Plan [and] providing a mechanism for Participant investment election").

Plaintiffs allege that the Plan's fiduciaries breached their duties to the Plan's participants and beneficiaries by misrepresenting the risks of the Company Security Fund and by failing to disclose material information regarding Agway and its securities. Amended Complaint at ¶ 72-87. Specifically, they allege that the Administration Committee affirmatively provided false information to the participants about the risks of investment in Agway securities for the purpose of inducing them to allocate their contributions to the Company Security Fund, by, inter alia:

• describing the Company Security Fund's returns as "competitive with bonds" (id. at ¶ ¶ 73, 75);

• minimizing the risks of the Company Security Fund by comparing it to a cash fund, stating "Like the Cash Fund, the Company Security Fund is highly unlikely to have negative returns over any short or intermediate time period..." (id.); and

• stating that the Company Security Fund had a greater growth potential than the Cash Fund and less risks than the Bond Fund (id. at ¶ ¶ 77-78).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 3522250
2004 WL 3522250 (N.D.N.Y.)

Plaintiffs allege that these statements were false, and that the Administrative Committee either knew they were false or failed to investigate their truth. Id. at ¶ ¶ 74, 79-80. In addition, Plaintiffs allege that the Administration Committee failed to inform Plan participants regarding the increasing risk of investment in Agway securities resulting from Agway's deteriorating financial condition, and failed to correct misrepresentations made by others. Id. at ¶ ¶ 80-81, 84.

2. Fiduciary Duty Not to Make Misrepresentations and to Provide Information

ERISA imposes upon plan fiduciaries a duty to provide truthful information to participants and beneficiaries. A fiduciary's duty of loyalty to plan participants under ERISA includes an obligation not to materially mislead plan participants and beneficiaries. See, e.g., Devlin v. Empire Blue Cross & Blue Shield, 274 F.3d 76, 88 (2d Cir. 2001) (a fiduciary has " 'a duty to deal fairly and honestly with its beneficiaries' ") (quoting Ballone v. Eastman Kodak Co., 109 F.3d 117, 123-24 (2d Cir. 1997); Mullins v. Pfizer, 23 F.3d 663, 669 (2d Cir. 1994) (" 'when a plan administrator speaks, it must speak truthfully' ") (quoting Fischer v. Phila. Elec. Co., 994 F.2d 130, 135 (3d Cir. 1993)); Berlin v. Mich. Bell Tel. Co., 858 F.2d 1154, 1163 (6th Cir. 1988). This duty includes a prohibition against lying: "[L]ying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in section 404(a)(1) of ERISA." Varity Corp. v. Howe, 516 U.S 489, 506 (1996) (citation omitted). Fiduciaries can also violate their duty of loyalty by misleading participants and beneficiaries, whether through action, inaction or silence. See, e.g., Devlin, 274 F.3d at 88-89 (trial court must be permitted to determine whether defendants either made affirmative, misrepresentations or failed to provide completely accurate plan information) (citing In re Unisys Corp. Retiree Mcd. Benefit ERISA Litig., 57 F.3d 1255, 1264 (3d Cir. 1995) ("[W]hen a plan administrator affirmatively misrepresents the terms of a plan or fails to provide information when it knows that its failure to do so might cause harm, the plan administrator has breached its fiduciary duty.")); Becker v. Eastman Kodak Co., 120 F.3d 5, 9 (2d Cir. 1997) (because summary plan description and benefits counselor's advice together amounted to materially misleading information, fiduciary breached its duty to provide participants with complete and accurate information); Simeon v. Mt. Sinai Med. Ctr., 150 F. Supp. 2d 598, 604 (S.D.N.Y. 2001); In re Bidermann Indus. U.S.A., Inc., 241 BR. 76, 90 (Bankr. S.D.N.Y. 1999).

In fact, ERISA fiduciaries are charged with more than the duty to refrain from misleading plan participants or to correct their own misstatements. They also have a duty to protect plan participants from misleading information. Thus, if a fiduciary is aware that participants have been misinformed about facts that implicate the stability of their retirement assets, he must take action to protect the participants. In some circumstances, this duty of loyalty may require the fiduciary to correct the inaccurate or misleading information so that the participants and beneficiaries will not be injured as a result of it. See Franklin v. First Union Corp., 84 F. Supp. 2d 720, 735 (E.D. Va. 2000) (fiduciary had "a duty to notify the plaintiffs of the changes in the investment funds in such a manner as to prevent any misinformation to and misleading of the plaintiffs regarding their options"); Hudson v. Gen. Dynamics Corp., 118 F. Supp. 2d 226, 256 (D. Conn. 2000) (recognizing a " 'duty to correct,' in the face of a statement demonstrating a material misunderstanding of benefits information, on plan fiduciaries in certain situations"); Mullins v. Pfizer, Inc., 899 F. Supp. at 77 ("If such misrepresentations were made and defendant knew of them, defendant had an affirmative duty to correct material misrepresentations that it knew or should have

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 3522250
2004 WL 3522250 (N.D.N.Y.)

known plaintiff would rely on."). An "ERISA fiduciary that knows or should know
that a beneficiary labors under a material misunderstanding of plan benefits that
will inure to his detriment cannot remain silent - especially when that
misunderstanding was fostered by the fiduciary's own material representations or
omissions." Griggs v. E.I. DuPont de Nemours & Co., 237 F.3d 371, 381 (4th Cir.
2001) (citation omitted); see also Davis v. Bowman Apple Prods. Co., No. CIV.A.
5:00CV00033, 2002 WL 535068, at **6-7 (WD. Va. Mar. 29, 2002) (citing Griggs for
"duty to correct"), aff'd, 50 Fed. Appx. 138 (4th Cir 2002).

  The Administration Committee Defendants do not dispute these duties. Instead, they
simply claim that Plaintiffs' allegations of affirmative misrepresentations and
failures to inform are "conclusory" and do not meet the requirements of Rule 8(a)
and 9(b) of the Federal Rules of Civil Procedure. Committee Defendants' Memorandum
at 20-21. As discussed above, however, Rule 8(a) requires only a comprehensible
description of the claims made. Rule 8(a) does not require Plaintiffs to state, for
each alleged misrepresentation, "who made the representations, what specific
representations were made, how the Committee Defendants obtained knowledge
pertaining to the substance of the alleged misrepresentations, and when they
obtained specific knowledge." Committee Defendants' Memorandum at 21 (emphasis in
original). Moreover, in any event, the Amended Complaint identifies specific,
written communications to participants by date, specifies why the statements were
false, and alleges that the Administration Committee knew or should have known of
the false representations. See Amended Complaint at ¶ ¶ 72-87. Plaintiffs also
allege that the Administration Committee failed to notify participants regarding
the increasing risk of investment in Agway securities resulting from Agway's
deteriorating financial condition, id. at ¶ ¶ 80-81, 84, and failed to correct misrepresentations made by
others, id. at ¶ ¶ 80-81, 84, and identifies the "red flags" known to the
Administrative Committee members that should have alerted them to the increased
risks, id. at ¶ 91-94, 96-98.

  The Administration Committee Defendants' suggestion that Rule 9(b) applies to
Plaintiffs' claims is also mistaken. Committee Defendants' Memorandum at 20- 21.
Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances
constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P.
9(b). An ERISA fiduciary duty claim based on misrepresentations or a failure to
provide truthful information does not sound in fraud, however. See, e.g., Crowley
v. Corning, Inc., 234 F. Supp. 2d 222, 230-31 (W.D.N.Y. 2002) (allegations that
plan fiduciary breached its duty by failing to provide truthful information to
participants is fiduciary claim, not fraud claim, and not subject to Rule 9(b)'s
requirements). Instead, any such claim is grounded, not in generalized principles
of detrimental reliance, but in the specific duties of prudence and loyalty that an
ERISA fiduciary owes plan participants and beneficiaries under section 404 of
ERISA. 29 U.S.C. § § 1104(a)(1)(A) and (B); Varity, 516 U.S at 506.

  Thus, ERISA breach of duty claims for misrepresentations to participants and
beneficiaries are not based, like fraud, on the general duty to refrain from
harming others, but rather in the affirmative duty to protect and serve plan
participants with prudence and loyalty as set forth in the text of ERISA. In EDS,
the court held:

  In this case, Plaintiffs have alleged breach of a fiduciary duty to inform. The
sole basis of Defendants' potential liability is a breach of that fiduciary duty,
not a common law or statutory fraud theory. Although fraud and breach of fiduciary

2004 WL 3522250
2004 WL 3522250 (N.D.N.Y.)

duty to inform may both involve an omission, the Court does not find that every breach of a fiduciary duty to inform is a scheme to defraud. Thus, <u>Rule 9(b)</u> does not apply to these proceedings.

<u>305 F. Supp. 2d at 672.</u> Even in cases in which plaintiffs allege underlying corporate fraud, the fiduciary breach claims are not held to <u>Rule 9(b)</u>'s standards. See e.g., <u>XCEL, 2004 WL 758990, at *6</u> ("Here plaintiffs' breach of fiduciary duty claims are premised on defendants' failure to act in light of the adverse circumstances that were hidden by fraudulent conduct. Defendants' duty to act arose as a result of the adverse conditions, not the alleged fraud."); <u>In re CMS Energy ERISA Litig., 312 F. Supp. 2d 898, 909 (E.D. Mich. 2004)</u>; <u>Rankin, 278 F. Supp. 2d at 866</u> ("The heightened pleading requirement under <u>Rule 9(b)</u> will not be imposed where the claim is for a breach of fiduciary duty under ERISA."); <u>Stein v. Smith, 270 F. Supp. 2d 157, 167 (D. Mass. 2003)</u> (holding that <u>Rule 8(a)</u>'s lenient pleading standard and not <u>Rule 9(b)</u>'s standard applies to claim that defendant had fiduciary duty to monitor and evaluate performance of company stock). To the extent that courts have treated fiduciary claims based on misrepresentations as fraud claims, they have been in error. <u>Crowley, 234 F. Supp. 2d at 230-31</u>; <u>Vivien v. WorldCom, No. C02-01329 WHA, 2002 WL 31640557, at **6-7 (N.D. Cal. July 26, 2002)</u>. In any case, as described above, the detailed allegations of the Amended Complaint sufficiently identify the misrepresentations made to meet the requirements of <u>Rule 9(b)</u>, even if it applied.

3: The Federal Securities Laws Do Not Shield Plan Fiduciaries

The Committee Defendants (and Director Defendants) argue that if they had made the disclosures sought by the Plaintiffs, they would have violated the federal securities laws. See Committee Defendants Memorandum at 25-27. Similarly, the Director Defendants argue that, as fiduciaries, the board had no obligation to disclose "general information about business activity or the financial health of the employer." Director Defendants' Memorandum at 17. They further argue that the only information that would have been useful to an investor-participant, was "by definition," material non-public information that they could not have selectively disclosed to participants. Director Defendants' Memorandum at 16-19. Essentially the Defendants suggest that their ERISA fiduciary duties described above are somehow subsumed by, or inconsistent with, the federal securities laws. Defendants are wrong.

First, Plaintiffs allege not only a failure to disclose, but also affirmative misrepresentations by the Administration Committee Defendants. Amended Complaint at ¶ ¶ 73-80. Defendants cannot claim that the federal securities laws compelled them to lie.

Even with respect to the claim based on the Defendants' failure to disclose, the argument made by Defendants has been rejected in numerous recent ERISA cases involving corporate malfeasance. In Enron, Judge Harmon held:

As a matter of public policy, the statutes should be interpreted to require that persons follow the laws, not undermine them. They should be construed not to cancel out the disclosure obligations under both statutes or to mandate concealment, which would only serve to make the harm more widespread; the statutes should be construed to require, as they do, disclosure by [company] officials and plan fiduciaries of [the company's] concealed, material financial status to the investing public

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 3522250
2004 WL 3522250 (N.D.N.Y.)

generally, including plan participants, whether "impractical" or not ...

284 F. Supp. 2d at 265-66; accord Rankin, 278 F. Supp. 2d at 877; EDS, 305 F. Supp. 2d at 673; XCEL, 2004 WL 758990, at *9; CMS, 312 F. Supp. 2d. 915-16.

As the Secretary argued in Enron, the securities laws simply impose a "duty to abstain" from trading on material, non-public information. In the Matter of Cady, Roberts & Co., No. 8-3925, 1961 WL 60638, 40 SEC 907, Release No. 6668 (Nov. 8, 1961). There were numerous steps Defendants could have taken to protect Plan participants from the implosion of Agway, none of which were prohibited by the securities laws. First and foremost, Defendants could have simply disclosed the information to other shareholders and the public at large, or forced Agway to do so. See Cady, Roberts, 1961 WL 60638, at *3. The duty to disclose the relevant information to the plan participants and beneficiaries, which the Plaintiffs assert these Defendants owed as ERISA fiduciaries, is entirely consistent with the premise of the insider trading rules: that corporate insiders owe a fiduciary duty to disclose material nonpublic information to the shareholders and trading public. See id. (incorporating common law rule that insiders should reveal material inside information before trading).

Second, it would have been consistent with the securities law to have eliminated the Company Security Fund as an investment option for participants. The insider trading rules require corporate insiders to refrain from buying (or selling) stock if they have material, nonpublic information about the stock. Thus, the "disclose or abstain" securities law rule is consistent with, and indeed contemplates, a decision not to purchase a particular stock. See Condus v. Howard Say. Bank, 781 F. Supp. 1052, 1056 (D.N.J. 1992) (it is perfectly legal to retain stock based on inside information; violation of insider trading requires buying or selling of stock). It would have been entirely consistent with the securities laws for the fiduciaries to have eliminated the Company Security Fund as a participant option.

Another option would have been to alert the appropriate regulatory agencies, such as the SEC and the Department of Labor, to the misstatements.

The duty to "disclose or abstain" under the securities laws does not immunize Defendants from a claim that they failed in their conduct as ERISA fiduciaries. To the contrary, while their Securities Act and ERISA duties may conflict in some respects, they are congruent in others, and there are numerous steps Defendants could have taken that would have satisfied both duties to the benefit of the plans.

Of the two cases cited by Defendants, one is distinguishable, and the other is not to the contrary of the position the Secretary advocates. In Hull v. Policy Mgmt. Sys. Co., No. CIV A 3:00-778-17, 2001 WL 1836286, at *2 (D.S.C. Feb. 9, 2001), the court noted that the plaintiffs did not allege that the fiduciaries had any knowledge of any misinformation concerning the company stock or that they participated in the dissemination of information they knew or should have known was misleading. In this case, Plaintiffs explicitly allege that Defendants knew of, and took part in, the dissemination of misleading information. See Amended Complaint at ¶ ¶ 69, 71-87. Moreover, to the extent that the Hull court suggested that fiduciaries of employee benefit plans holding employer stock might be in violation of securities laws if they refrained from additional purchases, the decision is simply wrong. Dirks v. SEC, 463 U.S. 646 (1983) (viewing the Cady, Roberts rule as requiring insiders to disclose the insider information or refrain from trading the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 3522250                                                    Page 21
2004 WL 3522250 (N.D.N.Y.)

stock). On the other hand, the court in In re McKesson HBOC, Inc. ERISA Litig., No. C00-200308RMW, 2002 WL 31431588, at *6-8 (N.D. Cal. Sept. 30, 2002), held that while ERISA would not require the defendants to violate the insider trading laws by divesting company stock, it did not preclude an action based on the plan's continued investment in the stock. The McKesson decision is thus consistent with the notion that the securities laws permit a fiduciary to abstain from purchasing stock or allowing the purchase of stock.

In sum, Defendants had several options available to them to protect plan participants and beneficiaries, none of which violated the securities laws. Rather than taking or even considering any of these options, Plaintiffs allege that Defendants did nothing, and thereby allowed the Plan to continue to offer the Company Security Fund as an investment option, resulting in millions of dollars in losses to the accounts of Plan participants and beneficiaries. The prohibition against selling the Plan's Agway securities without full market disclosure is irrelevant to the other courses of action that Defendants eschewed. Defendants were neither allowed under ERISA nor required under securities law to do nothing.

IV. PLAINTIFFS STATE A CLAIM AGAINST BOSTON SAFE

Defendant Boston Safe argues that, as a directed trustee, it had no fiduciary responsibilities with respect to the Plan, and cannot be held liable for any fiduciary breaches. See Boston Safe's Memorandum at 6-20. If, as Plaintiffs allege, Boston Safe was responsible for valuing the Agway securities as part of the investment fiduciary's process of buying and holding, it may be a discretionary trustee, rather than a directed trustee. See 29 U.S.C. § 1002(21)(a) (a person is a fiduciary if "he renders investment advice for a fee"); 29 C.F.R. § 2510.3-21 (c)(1) (a person renders investment advice for a fee if he "renders advice to the plan as to the value of securities or other property" on a regular basis and pursuant to an agreement that "such services will serve as a primary basis for investment decisions with respect to plan assets."). Thus, on this basis alone, Plaintiffs have stated a claim upon which relief may be granted against Boston Safe. [FN6]

FN6. The dispute over Boston Safe's status as a directed fiduciary obviates the need to consider its argument that a directed trustee must follow instructions unless it is "clear on its face" that the instructions violate ERISA or the plan. See Boston Safe's Memorandum at 14-15. Nonetheless, the Secretary notes that she agrees with Judge Harmon's decision in Enron, rejecting this exact argument. 284 F. Supp. 2d at 585-593 (citing Koch v. Dwyer, No. 98 Civ. 5519 (RPP), 1999 WL 528181, at *10 (S.D.N.Y. 1999) (neither the statute nor the case law uses a "clear on their face" test; directed trustee can be held liable for following a direction that he knew was imprudent), clarified on other grounds, 2000 WL 174945 (S.D.N.Y. Feb. 15, 2000)).

Plaintiffs allege that the Boston Safe (along with the Investment Committee) was responsible for valuing the Plan's investments in Agway securities. Amended Complaint at ¶¶ 43-44. As discussed above, Plaintiffs allege that the prices paid by the Plan were substantially higher than the securities' fair market value, as the result of various risks that Boston Safe failed to consider. Id. at ¶¶ 46-47. Plaintiffs further allege that Boston Safe compounded this fiduciary breach by continuing to value and report the Agway securities at the inflated face value, rather than fair market value, as was required by the Plan. Id. at ¶¶ 51-59, 65,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 3522250                                                          Page 22
2004 WL 3522250 (N.D.N.Y.)

67-68.

 Boston Safe argues that, pursuant to the Trust Agreement, it was a directed
trustee with "little authority" who cannot be liable for breaches of fiduciary duty
with respect to the valuation of Plan assets. Boston Safe's Memorandum at 7-9.
Boston Safe also argues that it did not have the duty to value the Plan assets.
Plaintiffs cite to section 1.16 of the Plan, which provides that the trustee was
obligated to "appraise at 'fair market value' any investment in the [plan] that was
not listed, dealt in any exchange, or quoted by a reputable dealer in such
securities." Amended Complaint at ¶ 12. Similarly, Plaintiffs allege, Article
Tenth of the Trust Agreement (attached to the Amended Complaint as Exhibit B)
requires the trustee to render to the Investment Committee a "statement of the
Trust assets and their values." Id. Boston Safe, however, highlights sections of
the Trust Agreement that purportedly insulate Boston Safe from liability. Boston
Safe's Memorandum at 7-9 (citing Articles Fourth, Ninth and Eleventh of the Trust
Agreement). Thus, Boston Safe argues that the language of the Plan relied upon by
Plaintiffs conflicts with the language of the Trust Agreement. Id. at 9. Even
without such conflict, Boston Safe suggests the word "render" in Article Tenth of
the Trust Agreement merely requires "reporting" the value of the Agway securities,
rather than "determining" such value. Boston Safe's Memorandum at 8-9. Neither
argument can prevail at this stage of the litigation. The question whether a
trustee is in fact a directed trustee, and conflicts between the Plan and Trust
Agreement and disputed interpretation of terms, cannot be resolved on a motion to
dismiss. E.g., Lopresti v. Terwilliger, 126 F.3d 34, 39 (2d Cir. 1997); Reich v.
Lancaster, 55 F.3d 1034, 1044 (5th Cir. 1995).

 Boston Safe also argues that valuation of Plan assets is not a fiduciary act,
citing Keach v. U.S. Trust Company, 240 F. Supp. 2d 832 (C.D. Ill. 2002), and DOL
Advisory Opinion 76-65A, 1976 WL 5090 (June 7, 1976). Boston Safe's Memorandum at
27. Although merely rendering a valuation opinion is not necessarily a fiduciary
act, even if other fiduciaries may consider the opinion in making investment
decisions, if an entity has the authority to make the ultimate determination as to
the price at which an asset will be bought, held or sold, this authority is
fiduciary in nature. See 29 C.F.R. § 2510.3- 21(c)(1) (giving advice to plan as to
the value of securities may render one a fiduciary); e.g., Chao v. Hall Holding
Co., 285 F.3d 415, 429-34 (6th Cir. 2002) (defendants breached their fiduciary duty
when determining the price at which ESOP would purchase company stock); Howard v.
Shay, 100 F.3d 1484, 1487-90 (9th Cir. 1996) (same); Cunningham, 716 F.2d at 1467-
72 (same). At this stage of the proceedings, Plaintiffs have adequately alleged
that Boston Safe had a broad duty to value the Agway securities that may have
established the prices at which the investment fiduciaries and participants bought,
sold or held Agway securities, as well as other plan assets. Amended Complaint at ¶
¶ 12, 43-44.

V. THE AMENDED COMPLAINT STATES A CLAIM AGAINST THE DIRECTOR DEFENDANTS

A. Under ERISA Section 409, Members of a Board of Directors May Be Individually
Liable For Breaches of Fiduciary Duty

 The Director Defendants argue that the Agway Board of Directors is a "body," and
that the individual directors themselves cannot be held individually liable.
Although they cite Hull, 2001 WL 1836286, at *6, for this proposition, they also
concede that the Hull court did not rule on the issue. Director Defendants'

2004 WL 3522250                                                          Page 23
2004 WL 3522250 (N.D.N.Y.)

Memorandum at 8.

The Director Defendants argument is contrary to the text of ERISA, which expressly assigns fiduciary responsibility to any "person ... to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). Because the statute defines "person" to include an "individual" as well as a corporation, ERISA § 3(9), 29 U.S.C. § 1002(9), it is clear that individuals who meet the definition of fiduciaries are liable as such if they breach their duties. See also ERISA § 409, 29 U.S.C. § 1109 (imposing individual liability on any breaching fiduciary). Thus, numerous cases have recognized that members of boards of directors or committees that were fiduciaries may themselves be sued as individuals. See Stewart v. Thorpe Holding Co. Profit Sharing Plan, 207 F.3d 1143, 1156 (9th Cir. 2000) (where "Committee or entity is named as fiduciary, the corporate officers of trustees who carry out the fiduciary functions are themselves fiduciaries and cannot be shielded from liability by the company"); Landry v. Air Line Pilots Ass'n Inter. AFL-CIO, 901 F.2d 404, 408 (5th Cir. 1990); Moench, 62 F.3d at 560 (plan's individual committee members were fiduciaries); Enron, 284 F. Supp. 2d at 569.

The Secretary has successfully brought such claims against individual members of a fiduciary board of directors. E.g., Martin v. Feilen, 965 F.2d 660, 669 (8th Cir. 1992); Martin v. Schwab, No. CIV.A.91-5059-CVSW-1, 1992 WL 296531, at ** 3-4 (W.D. Mo. Aug. 11, 1992). In Schwab, the director defendants argued, inter alia, that "they were not fiduciaries because, individually, they did not have discretionary authority to appoint" members of the committee. 1992 WL 296531, at *3. The court disagreed, stating, "Defendants' contention that they have no individual exposure as fiduciaries is clearly at odds with the language of the statute [section 409] ...Thus, it makes no difference that defendants were fiduciaries by reason of their status as Board directors." Id. at ** 3-4 (emphasis in original).

B. Directors Who Appoint Have a Duty To Monitor

In this case, Plaintiffs allege that the Director Defendants were responsible for appointing and monitoring the performance of the committee members and the trustee. Amended Complaint at ¶ ¶ 11, 34, 194, 196. The Plan itself specifically states that the members of the Investment Committee, Administration Committee and the trustee are to be appointed by, and serve at the pleasure of, the board. Plan at § § 14.01, 15.01, 15.02. The Amended Complaint alleges that the board failed to adequately monitor and supervise those they appointed. Id. at ¶ ¶ 196-98, 207. Specifically, Plaintiffs allege that "the Board Defendants had actual or constructive knowledge of the [Investment Committee's and Boston Safe's ] purchases and retention of Agway Securities at inflated prices and the Plan's reporting the values of the Agway Securities at their inflated Face Amounts but, despite this knowledge, failed to take any corrective measures." Id. at ¶ 71. Similarly, Plaintiffs allege that "the Board Defendants had actual or constructive knowledge of the material misrepresentations and other failures of the Committee Defendants but, despite this knowledge, failed to take corrective measures." Id. at ¶ 87.

The Director Defendants argue, however, that "as a matter of law, they cannot be held liable for any alleged breach of fiduciary duty relating to the monitoring of the Committees, Trustee, the Plan, or its assets or investments; the disclosure of information to participants; the duty to investigate or independently value Agway

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 3522250                                           Page 24
2004 WL 3522250 (N.D.N.Y.)

securities; or otherwise opine on whether it was prudent to invest in the Company
Security Fund." Director Defendants' Memorandum at 10. They rely on ERISA section
3(21), 29 U.S.C. § 1002(21), which provides that one is a fiduciary only "to the
extent" he has or exercises fiduciary authority. The Director Defendants concede,
however, that, under the Plan and the Trust Agreement, the board had the authority
to appoint and remove the trustee and the committee members, and it in fact
exercised the authority. Director Defendants' Memorandum at 2 (citing Plan § §
14.01, 15,01, 15.02, other citations omitted).

 The Secretary has long recognized that those responsible for appointing other
fiduciaries have fiduciary responsibility with regard to the selection and
retention of their appointees. See 29 C.F.R. § 2509.75-8 at D-4. [FN7] The
Secretary has further addressed the "ongoing responsibilities of a fiduciary who
has appointed trustees or other fiduciaries with respect to these appointments" and
concluded that:

    FN7. As noted above, ERISA section 405(c)(2) provides that a plan may permit
named fiduciaries to allocate their fiduciary responsibilities (other than trustee
duties) to others. 29 U.S.C. § 1 105(c)(2). If the plan so permits, a board of
directors that has the duty to appoint, remove and monitor other fiduciaries may,
for example, allocate the monitoring responsibility to select directors, thereby
relieving the other directors. It is not clear whether the Agway Plan permitted
such allocation. See Plan at ¶ 15.05 (permitting Committees to allocate their
duties under the Plan). Furthermore, even without a formal delegation under section
405(c)(2), a board member who, for instance, relied upon monitoring reports from
other members may have acted prudently, and accordingly may be able to defend a
fiduciary breach claim on such basis.

 At reasonable intervals the performance of trustees and other fiduciaries should
be reviewed by the appointing fiduciary in such manner as may be reasonably
expected to ensure that their performance has been in compliance with the terms of
the plan and statutory standards, and satisfies the needs of the plan. No single
procedure will be appropriate in all cases; the procedure adopted may vary in
accordance with the nature of the plan and other facts and circumstances relevant
to the choice of the procedure.

 29 C.F.R. § 2509.75-8 at FR-17.

 This interpretation is in line with well-established case law recognizing the
ongoing duties of appointing fiduciaries. The courts have long recognized that
"[t]he power to appoint and remove trustees carries with it the concomitant duty to
monitor those trustees' performance." Liss v. Smith, 991 F. Supp. 278, 311
(S.D.N.Y. 1998); accord Leigh, 727 F.2d at 135; Martin v. Feilen, 965 F.2d 660,
669-70 (8th Cir. 1992); Mehling v. New York Life Ins. Co., 163 F. Supp. 2d 502, 510
(E.D. Pa. 2001). "[I]mplicit in [the appointing fiduciary's] power to select the
Plans' named fiduciaries is the duty to monitor the fiduciaries' actions, including
their investment of Plan assets." Mehling, 163 F. Supp. 2d at 510 (citing Leigh,
727 F.2d at 134-35).

 A number of more recent cases have also upheld the Secretary's position with
respect to the duty to monitor fiduciaries after they are appointed. In the Enron
litigation, Judge Harmon held that the plaintiffs had stated claims against the
corporate defendants for having, inter alia, "exercised, but in specific cases not

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 3522250                                                    Page 25
2004 WL 3522250 (N.D.N.Y.)

well, their explicit duties to select and appoint fiduciaries ... and failed to monitor or remove their appointees for incompetence." 284 F. Supp. 2d at 659-61; see also Sprint, 2004 WL 117937, at *19; CMS, 312 F. Supp. 2d at 916-17; EDS, 305 F. Supp. 2d at 670-71; In re Sears, Roebuck & Co. ERISA Litig, No.02 C 8324, 2004 WL 407007, at *8 (N.D. Ill. Mar. 3, 2004). [FN8]

  FN8. The Director Defendants also argue that individual directors who were not board members at the time of the appointment of the trustee or committee members should be dismissed. Director Defendants Memorandum at n.5. Because the Board retained a duty to monitor the performance of appointees, as discussed above, all those who served on the board during the relevant time could be liable. Discovery is necessary to determine who served at what times.

  Thus, the Director Defendants' contention that "the courts have routinely held that the board's fiduciary duties cannot extend beyond the acts set forth in the plan," Director Defendants' Memorandum at 10-11, misses the mark. The weight of precedent supports the Secretary's view that the duty to monitor appointed fiduciaries is part and parcel of the power and authority to appoint, retain and remove those fiduciaries. Most of the cases cited by the Director Defendants stand only for the unremarkable proposition that a fiduciary can be liable only for matters over which he serves as a fiduciary. LaLonde v. Textron, Inc., 270 F. Supp. 2d at 281; Beddall v. State Street Bank & Trust Co., 137 F.3d 12, 18 (1st Cir. 1998); Kerns v. Benefit Trust & Life Ins. Co., 992 F.2d 214, 216 (8th Cir. 1993); Crowley v. Coming, Inc., No. 02-CV-6172 CJS, 2004 WL 763873 (W.D.N.Y. Jan. 14, 2004); Daniels v. Nat'l Employee Benefit Servs., Inc., 858 F. Supp. 684, 690 (N. D. Ohio 1994). In this case, Plaintiffs' claims are premised upon the specific Plan language authorizing the board to appoint and remove the committee members and trustee.

  Only one district court opinion cited by the Director Defendants holds that the duty to appoint and remove ERISA fiduciaries does not implicate a concomitant duty to monitor those appointed. See Williams, 271 F. Supp. 2d at 1339. [FN9] The decision is simply wrong on this point. As recognized by the authority cited above, absent a sensible process for monitoring their appointees, the appointing fiduciaries would have no basis for concluding that their appointees were faithfully and effectively performing their obligations, or for deciding whether to retain or remove them. See Leigh, 727 F.2d at 135 (fiduciaries cannot "abdicate their duties under ERISA merely through the device of giving their [appointees] primary responsibility for day-to-day administration of the trust" but were "obligated to act with appropriate prudence and reasonableness in overseeing" the appointees' performance).

  FN9. Hull v. Policy Mgmt. Sys. Corp., 2001 WL 1836286, at **6-7, the other case cited by the Director Defendants, did not hold that there is no duty to monitor. Instead, the court assumed that there was such a duty encompassed in the duty to appoint, retain and remove (although the court expressed some skepticism on this point), but held that there were "simply no allegations in the complaint adequate to support a claim for failure to supervise the Committee." Id. at *7.

  The scope of the duty to monitor is dependant on the applicable facts and circumstances; as the Secretary noted in the regulation at 29 C.F.R. § 2509.75-8 at FR-17, the facts and circumstances will determine what procedure for monitoring will be appropriate. See Enron, 284 F. Supp. 2d at 514; e.g., EDS, 305 F. Supp. 2d

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 3522250                                                    Page 26
2004 WL 3522250 (N.D.N.Y.)

at 670 ("at this stage of the proceedings [a motion to dismiss] the Court will not
endeavor to define the duty to monitor's outer edges with no factual record to
indicate how far this case may or may not push those edges").

   In this case, the Plan gives the board the authority to appoint and replace the
trustee and members of the Committees. Plan at § § 14.01, 15.01, 15.02. As
discussed at length above, Plaintiffs allege that Boston Safe and the Committee
Defendants breached their fiduciary duties to the Plan by, inter alia, failing to
properly value the Agway securities purchased by the plan, by failing to even
consider the prudence of making such an investment, and by materially misleading
Plan participants and beneficiaries about the risks of the Company Security Fund.
Plaintiffs further allege that the Board Defendants knew of these breaches and
failed to take corrective action. Amended Complaint at ¶ ¶ 71, 87. These
allegations state a claim against the Director Defendants.

VI. CO-FIDUCIARY LIABILITY

   In addition to alleging that the Moving ERISA Defendants were directly liable for
their own breaches of fiduciary duty, Plaintiffs allege that each is liable for
participating in the other Defendants' breaches. See Amended Complaint at ¶ ¶ 163-
64, 187-88, 207-09, 236. Such allegations state a claim upon which relief can be
granted, and Plaintiffs' co-fiduciary breach claims should not be dismissed.

   Under ERISA section 405(a), 29 U.S.C. § 1105(a), a fiduciary is responsible for
his co-fiduciaries' breaches if he knowingly participated in or concealed knowledge
of a breach by the other fiduciaries, unless he made reasonable efforts under the
circumstances to remedy the breach. See Silverman v. Mut. Benefit Life Ins. Co.,
138 F.3d 98, 103-04 (2d Cir. 1998); Lee v. Burkhart, 991 F.2d 1004, 1010 (2d Cir.
1993). Fiduciaries have a duty to "use reasonable care to prevent a co-trustee from
committing a breach of trust or to compel a co-trustee to redress a breach of
trust." Restatement (Second) of Trusts § 184 (1987 App.). A fiduciary's inaction
and failure to act promptly to halt another fiduciary's breach can give rise to co-
fiduciary liability. See, e.g., Chicago Hous. Auth. v. J.A. Hannah Inv. Advisory
Serv. Inc., No. 95 C 5251, 1996 WL 328033, at *5 (N.D. Ill. May 9, 1996) (rejecting
investment advisor's argument that it cannot be liable for another fiduciary's
theft from plans, which advisor knew about for months; advisor may have enabled
fiduciary breach); Jackson v. Truck Drivers' Union Local 42 Health & Welfare Fund,
933 F. Supp. 1124, 1141 (D. Mass. 1996) ("A fiduciary who becomes aware that a co-
fiduciary has breached a fiduciary duty to plan beneficiaries may not escape
liability by simply casting a blind eye toward the breach.").

   The Moving ERISA Defendants' arguments against the co-fiduciary liability claims
echo their arguments regarding direct liability under sections 404 and 409. First,
they each claim that the were not fiduciaries with respect to the actions and
inactions alleged, and thus cannot be liable as co-fiduciaries. See Director
Defendants' Memorandum at 19-22; Committee Defendants' Memorandum at 27-28; Boston
Safe's Memorandum at 18-20. As discussed above, the Amended Complaint adequately
alleges, and the Plan establishes, that each of the Moving ERISA Defendants was a
fiduciary to the Plan under ERISA.

   The Moving ERISA Defendants also claim that the co-fiduciary allegations are too
conclusory to survive a motion to dismiss. Id. The Committee Defendants resurrect
their "who, where, when and why" formulation. Committee Defendants' Memorandum at

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004 WL 3522250
2004 WL 3522250 (N.D.N.Y.)

29. For reasons stated above, Defendants' attempt to impose a summary judgment standard on a motion to dismiss should be rejected. Further, Defendants misconstrue the Plaintiffs' allegations. For example, the Director Defendants claim the Plaintiffs "merely allege, in a conclusory manner, that '[t]he Director Defendants knowingly participated in, concealed, enabled, failed to remedy, and/or abetted one or more breaches committed by their co-fiduciaries, including without limitations the other ERISA Defendants.' " Director Defendants' Memorandum at 21 (citing Amended Complaint at ¶ 208). This argument overlooks numerous other allegations by Plaintiffs against the Director Defendants alleging co-fiduciary liability. See Amended Complaint at ¶ 71 ("The Board Defendants had actual or constructive knowledge of the Plan's purchases and retention of Agway Securities at their inflated Face Amounts, but despite this knowledge, failed to take any corrective measures."); id. at ¶ 87 ("The Board Defendants had actual or constructive knowledge of the material misrepresentations and other failures of the Committee Defendants, but despite this knowledge, failed to take any corrective measures."); id. at ¶ ¶ 95, 207- 09. Plaintiffs' co-fiduciary allegations are sufficient to survive a motion to dismiss.

CONCLUSION

 For the reasons stated above, the Secretary urges the court to deny the motions to dismiss.

END OF DOCUMENT

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.