# EXHIBIT O

STATE STREET BANK AND TRUST COMPANY

November 24, 2003

Investment and Benefits Committee of W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

Ladies and Gentlemen:

    This letter constitutes an Engagement Agreement (the "Engagement Agreement") by and among State Street Bank and Trust Company ("State Street"), the Investment and Benefits Committee of W. R. Grace & Co. (the "Committee"), and W. R. Grace & Co., et al[1] (the "Company"). Pursuant to this Engagement Agreement, State Street will provide such professional services as are appropriate and consistent with its fiduciary responsibilities (as set forth herein) by reason of its appointment, effective as of December 1, 2003, as an investment manager (in such capacity, the "Investment Manager") with respect to the shares of common stock of W.R. Grace & Co. (the "Company Stock") that are held under the Company Stock investment option that is maintained under the W. R. Grace Savings and Investment Plan Trust (the "Trust") on behalf of the W. R. Grace Savings and Investment Plan (the "Plan"). State Street, as Investment Manager, will determine, pursuant to the terms and conditions of this Engagement Agreement, the appropriateness of the Trust's retention or sale of the respective shares of Company Stock, all within the context of, and subject to, the Investment Guidelines attached hereto as Exhibit II and the other provisions of this Agreement.

    The Company Stock in the Trust will be segregated by the trustee of the Trust, acting solely in its capacity as directed trustee of the Trust (the "Trustee"), in a separate account under the Trust (such account, adjusted to reflect all future income and proceeds thereon, additions thereto and withdrawals therefrom, is hereinafter referred to as the "Account"). Notwithstanding the foregoing, all cash proceeds received by the Trust upon the disposition of any Company Stock will be excluded from the Account and will not be subject to this Agreement except as otherwise provided herein with respect to the payment of State Street's fees and expenses.

---

[1] W.R. Grace & Co., et al are debtors and debtors-in-possession in proceedings under chapter 11 of the United States Bankruptcy Code pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), Case No. 01-01139 (JKF), Jointly Administered (the "Bankruptcy Cases"). A list of the 62 debtor entities is attached hereto as Exhibit I.

CONFIDENTIAL

GR 001298

Investment and Benefits Committee of W.R. Grace & Co.
W.R. Grace & Co.
November 24, 2003
Page 2

In entering into this Agreement, State Street is relying upon the Company's representation that the Plan is qualified under Sections 401(a) of the Internal Revenue Code of 1986, as amended (the "Code"), and that the Trust is tax-exempt under Section 501(a) of the Code.

Appointment as Investment Manager

The Committee represents and warrants that it is a "named fiduciary" with respect to the control or management of the assets of the Plan, and that it has authority under the Plan and the Trust documents to appoint an investment manager to manage (including the power to acquire and dispose of) the assets of the Account. The Committee hereby appoints State Street as the Investment Manager of the assets credited to the Account effective as of December 1, 2003. As Investment Manager, State Street will have full discretionary authority to direct the investment and reinvestment of the assets credited to the Account (including without limitation the acquisition or disposition thereof) but only to the extent that any such exercise of discretionary authority is consistent with the terms and conditions of this Engagement Agreement including the provisions of the Investment Guidelines attached hereto as Exhibit II.

State Street represents and warrants that it is a bank as defined in the Investment Advisors Act of 1940. State Street acknowledges that, in acting under this Agreement as an investment manager, it will be acting as a fiduciary within the meaning of Section 3(21)(A) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), with respect to the Account. In such capacity, State Street will exercise independent discretionary judgment in the performance of its obligations hereunder in accordance with the fiduciary requirements set forth in Part 4 of Subtitle B of Title I of ERISA. State Street also represents and acknowledges that it is independent, and not an affiliate or subsidiary (as defined in the Securities Act of 1933, as amended), of the Company.

The Company agrees to cause the Trustee and any committee that controls either the Plan, the Trust or the Account to establish such procedures and approve such amendments (including, but not limited to, amendments to the Plan and the Trust documents including any amendments required to authorize the appointment of an investment manager with respect to the Account) or to cause the Plan and Trust documents to be consistent with the Investment Guidelines as may be required in order to permit State Street to carry out its responsibilities under this Engagement Agreement in an efficient and prudent manner. The Company represents, warrants, and covenants on behalf of the Plan and the Trust that the Plan is, and as long as this Engagement Agreement is in effect will continue to be, an "eligible individual account plan" within the meaning of Section 407 of ERISA. Upon execution of this Engagement Agreement and upon State Street's reasonable request in the future, the Company will provide State

CONFIDENTIAL

GR 001299

Investment and Benefits Committee of W.R. Grace & Co.
W.R. Grace & Co.
November 24, 2003
Page 3

Street with the percentage of outstanding shares of its outstanding stock that the Company Stock held in the Account represents. Additionally, the Company agrees at all times that this Engagement Agreement is in effect (a) to file on a timely basis all current, quarterly and annual reports required to be filed by it pursuant to Section 13, Section 15(d) or Section 16(a) of the Securities Exchange Act of 1934, as amended, (b) to provide State Street with a draft of each communication relating to the Company Stock held in the Account at least five business days prior to the distribution of such communication and (c) to provide State Street with a copy of each communication from the Company to its common stockholders at the same time as such communication is provided to such stockholders.

State Street, as Investment Manager, will have full authority, (1) to use computer programming services to assist in achieving the duties set forth herein and (2) to trade directly through such dealers, commission merchants, brokers or other persons or firms as State Street may select, including any affiliate of State Street for its usual commission to the extent permitted by applicable law. State Street shall be without responsibility for delays or errors in transmission of orders or data due to breakdown or failure of transmission or communication facilities and without liability for the acts or omissions of any unrelated third parties; provided, however, that this sentence shall not relieve State Street of any responsibility or liability for its own negligence, gross negligence, recklessness or willful misconduct.

State Street, as Investment Manager, will have the authority to instruct the Trustee (i) to deliver securities and other property against payment to the Account and (ii) to transfer assets and funds to such brokerage accounts as State Street may designate, all consistent with the powers, authorities and limitations set forth in this Engagement Agreement. State Street shall not at any time have any responsibility with respect to the collection of income, or for the physical acquisition or safekeeping of the assets and funds of the Account. All such duties of collection, physical acquisition or safekeeping will be the sole obligation of the Trustee.

State Street, as Investment Manager, will not have any authority, responsibility or obligation to vote any of the shares of Common Stock held in the Account, it being understood that all such shares will be voted by the Trustee as directed by the participants in the Plan in accordance with the applicable provisions of the Plan and Trust. Notwithstanding the foregoing, in the event that a vote relates to a proposed merger or other transaction the approval of which would have substantially the same effect as a sale or other disposition of substantially all of the assets of the Company or of the shares of Common Stock held in the Account, State Street, as Investment Manager, shall have discretionary authority to direct the Trustee to vote all shares of Common Stock held in the Account in favor of such merger or other transaction, but only if such direction is consistent with the Investment Guidelines. The Company

CONFIDENTIAL

GR 001300

Investment and Benefits Committee of W.R. Grace & Co.
W.R. Grace & Co.
November 24, 2003
Page 4

agrees to cause the Plan and Trust documents to be amended to be consistent with the preceding sentence.

In addition, State Street, as Investment Manager, will take such other actions, or cause others to act on its behalf (including but not limited to legal and financial advisors), as it deems necessary or appropriate to assist in connection with its engagement hereunder, and to satisfy its fiduciary obligations in a timely fashion consistent with the scope of its duties and responsibilities hereunder at the time. In particular, State Street may independently engage legal counsel to represent it in connection with the performance of its obligations hereunder. State Street and/or its legal counsel will be entitled to timely periodic payment by the Company for all reasonable fees and expenses of its legal counsel. The Company will pay all such outstanding fees and expenses promptly after its receipt of an invoice therefor. It is understood by the Company that legal counsel engaged by State Street will report to and consult solely with State Street and that the attorney-client privilege will be solely between such legal counsel and State Street. Because the time sheets and billing records of counsel engaged by State Street are protected by the attorney-client privilege or may be attorney work product protected by the attorney-client privilege, State Street will review the billing records of its counsel and certify to the Company, as appropriate, that the fees and expenses incurred by counsel are reasonable. However, time sheets and billing records of counsel will not be reviewed by, disclosed to or distributed to the Plan, the Trust, or the Company or to any person or entity other than State Street, except as required by applicable law.

Fees and Expenses

As compensation for services to be performed by State Street pursuant to this Engagement Agreement and in recognition of the services required of State Street, the Company will pay to State Street an annual fee equal to $530,000 (the "annual fee amount") for its services as Investment Manager which annual fee amount will be payable in arrears in equal monthly installments. Each monthly payment will be made by wire transfer to State Street in accordance with the wire instructions attached hereto within thirty (30) days of receipt by the Company of an invoice therefor.

State Street will also be entitled to payment by the Company for State Street's reasonable out-of-pocket expenses incurred while performing services hereunder including reasonable expenses incurred for the services of such legal, financial and other advisors as it reasonably deems necessary or appropriate to enable it to perform services hereunder. Such reimbursable expenses shall include reasonable expenses incurred by State Street (i) prior to the date hereof or (ii) subsequent to the date hereof but prior to December 1, 2003, in either case in connection with its engagement hereunder or in preparation for performing the services contemplated hereunder on and

CONFIDENTIAL

GR 001301

Investment and Benefits Committee of W.R. Grace & Co.
W.R. Grace & Co.
November 24, 2003
Page 5

after December 1, 2003. The Company will pay for all such out-of-pocket expenses within thirty (30) days after receipt of an invoice therefor.

All fees and expenses that are payable as described herein will be paid by the Company, regardless of the decisions made by State Street in its capacity as Investment Manager. The fee is solely for the purpose of compensating State Street for the exercise of its responsibilities in connection with the performance of its obligations hereunder and will be in addition to fees and expenses for State Street's service in any other capacity agreed to among State Street and the Company which fees and expenses will be established by the mutual agreement of Company and State Street. In the event that the parties reasonably determine that State Street's engagement hereunder has caused or required it or its legal counsel to perform special services that are extraordinary in nature and above and beyond the services contemplated by the parties, including but not limited to evaluating, defending, initiating, pursuing or other involvement in connection with litigation (other than the Bankruptcy Cases) or government investigation involving the Company, the Plan, the Trust, the Company Stock or the decisions made by State Street hereunder, State Street shall be entitled to such additional compensation as is mutually agreed upon by the Company and State Street and the limits set forth in Exhibit III shall not apply.

State Street's expenses may include, but are not limited to, disbursements and advancements incurred or made by it in accordance with this Engagement Agreement (including the reasonable compensation and the reasonable expenses and disbursements of its financial advisors and legal counsel), and out-of-pocket expenses, such as travel expense, special forms and supplies, telephone, mail and contract delivery charges. If and to the extent that W.R. Grace & Co. is financially unable (including, without limitation, by reason of the Bankruptcy Cases) to pay any fee or expense incurred by State Street hereunder, the Company hereby agrees to cause the Trust to pay all such unpaid fees and expenses. The Committee hereby represents that the Trust and Plan documents permit the payment of State Street's fees and expenses in the manner described herein.

Notwithstanding the foregoing, except to the extent that the limits set forth in Exhibit III do not apply, reimbursement of State Street's expenses hereunder shall be limited as specified on Exhibit III.

Limits on Duties

State Street will be responsible only for managing the Account, in good faith and in accordance with the duties stated herein, and will have no responsibility whatsoever for, and will incur no liability on account of: (i) the acquisition and retention of Company Stock by the Trust prior to December 1, 2003 or the investigation, consideration or prosecution of any potential claims relating thereto; (ii) the value attributed to the Company Stock by the Company or the Trustee at any time; (iii) selection or retention of

CONFIDENTIAL

GR 001302

Investment and Benefits Committee of W.R. Grace & Co.
W.R. Grace & Co.
November 24, 2003
Page 6

the Investment Guidelines for the Account; (iv) administration of the Plan and Trust; (v) losses arising from the acts or omissions of the Committee or any of its respective affiliates or agents in its capacity as named fiduciary with respect to the Plan and Trust; (vi) losses arising from the acts or omissions of the Trustee or the Company, or any of their respective officers, directors, affiliates, agents or employees; (vii) filing of any returns or forms with the Securities and Exchange Commission (the "SEC") or with the Internal Revenue Service, except for the form(s) required to be filed with the SEC in regard to any sale of the Company Stock at the direction of State Street, as Investment Manager; or (viii) losses or liabilities related to the management, advice, direction, investment or reinvestment of the other assets of the Plan or the Trust. The Company shall maintain the status of the Plan as a qualified retirement plan exempt from taxation and in compliance with ERISA.

Provision of Information

The Company will furnish to State Street and to State Street's financial advisors, if any, all current and historical financial and other information regarding the Company and all current and historical financial and other information regarding the Plan and the Trust, as requested by State Street or its financial advisors that is necessary for State Street to perform its obligations hereunder; provided, however, that nothing herein shall require the Company to provide, nor shall the Company provide, any non-public information to State Street or its advisors. Specifically, the Company agrees to direct the Trustee to provide to State Street a Statement of Investments for the Account on a monthly basis, or on a more frequent basis if reasonably requested by State Street. In addition, at least once on an annual basis and, if so requested by State Street, during a time period when the Company's Chief Executive Officer is permitted to buy and sell Company Stock in the public market, the Company shall provide State Street with access to senior management of the Company to review and discuss such information and the status of the Company's business. The Company represents that the information that it provides (or causes to be provided) to State Street will be accurate and complete in all material respects. It is understood by the Company that State Street will rely on the accuracy of such information to carry out its responsibilities pursuant to this Agreement. State Street agrees to keep any information concerning the Plan, the Trust or the Account confidential, except to the extent the disclosure of such information is required by applicable law, rule or regulation.

Indemnification

As a material, non-severable part of the consideration for State Street's agreement to furnish its services hereunder, the Company agrees to indemnify State Street and hold it harmless pursuant to the terms of the Indemnification Agreement attached hereto and by this reference incorporated herein. The terms of the Indemnification Agreement shall survive the termination of this Engagement

CONFIDENTIAL

GR 001303

Investment and Benefits Committee of W.R. Grace & Co.
W.R. Grace & Co.
November 24, 2003
Page 7

Agreement. Notwithstanding any provision to the contrary elsewhere herein or in the Indemnification Agreement, if and to the extent that W.R. Grace & Co. is financially unable (including, without limitation, by reason of the Bankruptcy Cases) to satisfy its obligations under the Indemnification Agreement, the Company hereby agrees to cause the Trust to satisfy all such obligations to the maximum extent permitted by ERISA; provided, however, that nothing herein (including any such payment by the Trust) will relieve the Company of its obligations under the Indemnification Agreement. The Committee hereby represents that the Plan and Trust documents permit the payment of any such indemnification obligations in the manner described herein.

Confidentiality

All terms and conditions of this Engagement Agreement (including the terms and conditions of the Indemnification Agreement) shall at all times be treated in strictest confidence and as confidential information, and as such shall not be released or disclosed to third parties, except as may be required by law, rule or regulation or upon prior written approval of the other parties to this Engagement Agreement. This confidentiality provision shall survive the termination of this Engagement Agreement for a period of twelve months.

Non-Exclusive Contract

It is expressly understood between the parties hereto that State Street also acts as an advisor and/or fiduciary to other clients in other contexts and, accordingly, State Street may give advice or take action with respect to any of such clients or on its own accounts which may differ from the actions taken by State Street, in its capacity as Investment Manager, hereunder.

Severability

The parties agree that, in the event a court of competent jurisdiction holds that any part of this Agreement is invalid or unenforceable, the remaining provisions of this Agreement shall remain in full force and effect as if the provisions held invalid or unenforceable were never a part hereof.

Entire Agreement/Amendment

This Engagement Agreement (including Exhibits I, II and III hereto) and the Indemnification Agreement constitute the entire agreement of the parties with respect to the responsibilities of State Street with respect to the Company Stock and the Account. This Engagement Agreement may only be amended by a written instrument signed on behalf of each of the parties hereto.

CONFIDENTIAL

GR 001304

Investment and Benefits Committee of W.R. Grace & Co.
W.R. Grace & Co.
November 24, 2003
Page 8

### Governing Law

Except as provided by ERISA, this Engagement Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts applicable to agreements made and to be performed in Massachusetts, without regard to the principles thereof regarding choice or conflicts of law.

### Termination

This Engagement Agreement may be terminated by State Street or by the Company upon delivery of thirty (30) days' prior written notice to the other parties hereto. In addition, this Engagement Agreement may be terminated by State Street upon five (5) days prior written notice to such parties if the Approval Order (as defined below) has not become a final order by January 1, 2004. Upon any such termination, the Company shall pay State Street any and all amounts due and payable in accordance with the terms of this Engagement Agreement.

### Bankruptcy Court Approval

This Engagement Agreement is being entered into by the Company in the ordinary course of its business as permitted by Sections 1108 and 363 of the United States Bankruptcy Code. Notwithstanding the foregoing, the parties intend to seek the entry of a final order by the Bankruptcy Court in the Bankruptcy Cases pursuant to Sections 105(a) and 363 of the United States Bankruptcy Code, authorizing the execution and performance by the Company of the Engagement Agreement and the Indemnification Agreement (the "Approval Order"). The Company agrees that it will promptly file a motion with the Bankruptcy Court requesting entry of the Approval Order. Additionally, the Company hereby represents and warrants that no further consents or approvals of or filings or registrations with any other court or governmental authority or third-party are necessary in connection with the execution and delivery by the Company, the Committee or the Trustee of this Agreement and the related Indemnification Agreement.

Very truly yours,

State Street Bank and Trust Company

By: /s/ Paul Ewing
Its: Vice President

CONFIDENTIAL

GR 001305

Investment and Benefits Committee of W.R. Grace & Co.
W.R. Grace & Co.
November 24, 2003
Page 9


Acknowledged and Agreed to:


Investment and Benefits Committee of W.R. Grace & Co.


By: *W B McDown* (signature)
Its: *Member*


W.R. Grace & Co., et al


By: *W B McDown* (signature)
Its: *Senior Vice President*


LIDB/1197865.5

CONFIDENTIAL

GR  001306

## Exhibit I

### List of Debtors

1. In re W. R. Grace & Co., Case No. 01-01139
2. In re W. R. Grace & Co.-Conn., Case No. 01-01140
3. In re A-1 Bit Tool Co., Inc., Case No. 01-01141
4. In re Alewife Boston Ltd., Case No. 01-01142
5. In re Alewife Land Corporation, Case No. 01-01143
6. In re Amicon, Inc., Case No. 01-01144
7. In re CB Biomedical, Inc., Case No. 01-01145
8. In re CCHP, Inc., Case No. 01-01146
9. In re Coalgrace, Inc., Case No. 01-01147
10. In re Coalgrace II, Inc., Case No. 01-01148
11. In re Creative Food 'N Fun Company, Case No. 01-01149
12. In re Darex Puerto Rico, Inc., Case No. 01-01150
13. In re Del Taco Restaurants, Inc., Case No. 01-01151
14. In re Dewey and Almy, LLC, Case No. 01-01152
15. In re Ecarg, Inc., Case No. 01-01153
16. In re Five Alewife Boston Ltd., Case No. 01-01154
17. In re G C Limited Partners I, Inc., Case No. 01-01155
18. In re G C Management, Inc., Case No. 01-01156
19. In re GEC Management Corporation, Case No. 01-01157
20. In re GN Holdings, Inc., Case No. 01-01158
21. In re GPC Thomasville Corp., Case No. 01-01159
22. In re Gloucester New Communities Company, Inc., Case No. 01-01160
23. In re Grace A-B Inc., Case No. 01-01161
24. In re Grace A-B II Inc., Case No. 01-01162
25. In re Grace Chemical Company of Cuba, Case No. 01-01163
26. In re Grace Culinary Systems, Inc., Case No. 01-01164
27. In re Grace Drilling Company, Case No. 01-01165
28. In re Grace Energy Corporation, Case No. 01-01166
29. In re Grace Environmental, Inc., Case No. 01-01167
30. In re Grace Europe, Inc., Case No. 01-01168
31. In re Grace H-G Inc., Case No. 01-01169
32. In re Grace H-G II Inc., Case No. 01-01170
33. In re Grace Hotel Services Corporation, Case No. 01-01171
34. In re Grace International Holdings, Inc., Case No. 01-01172
35. In re Grace Offshore Company, Case No. 01-01173
36. In re Grace PAR Corporation, Case No. 01-01174
37. In re Grace Petroleum Libya Incorporated, Case No. 01-01175
38. In re Grace Tarpon Investors, Inc., Case No. 01-01176
39. In re Grace Ventures Corporation, Case No. 01-01177
40. In re Grace Washington, Inc., Case No. 01-01178
41. In re W. R. Grace Capital Corporation, Case No. 01-01179
42. In re W. R. Grace Land Corporation, Case No. 01-01180
43. In re Gracoal, Inc., Case No. 01-01181
44. In re Gracoal II, Inc., Case No. 01-01182
45. In re Guanica-Caribe Land Development Corporation, Case No. 01-01183
46. In re Hanover Square Corporation, Case No. 01-01184
47. In re Homco International, Inc., Case No. 01-01185
48. In re Kootenai Development Company, Case No. 01-01186
49. In re L B Realty, Inc., Case No. 01-01187
50. In re Litigation Management, Inc., Case No. 01-01188
51. In re Monolith Enterprises, Inc., Case No. 01-01189
52. In re Monroe Street, Inc., Case No. 01-01190
53. In re MRA Holdings Corporation, Case No. 01-01191
54. In re MRA Intermedco, Inc., Case No. 01-01192
55. In re MRA Staffing Systems, Inc., Case No. 01-01193
56. In re Remedium Group, Inc., Case No. 01-01194
57. In re Southern Oil, Resin & Fiberglass, Inc., Case No. 01-01195
58. In re Water Street Corporation, Case No. 01-01196
59. In re Axial Basin Ranch Company, Case No. 01-01197
60. In re CC Partners, Case No. 01-01198
61. In re Hayden-Gulch West Coal Company, Case No. 01-01199
62. In re H-G Coal Company, Case No. 01-01200

CONFIDENTIAL

GR 001307

EXHIBIT II

Investment Guidelines

The Plan provides that all assets held in the Grace Stock Fund (the "Company Stock Fund") under the Plan are to be invested in shares of Common Stock. In addition, each Plan participant having an interest in the Company Stock Fund is entitled to transfer all or any portion of such interest to one or more of the other investment funds available under the Plan at any time. As investment manager with respect to the Company Stock Fund, State Street is required by Section 404(a)(1)(D) of ERISA to act in accordance with such provisions of the Plan except to the extent that State Street determines that such provisions of the Plan are not consistent with the provisions of ERISA. Accordingly, State Street shall instruct the Trustee to sell Common Stock held in the Company Stock Fund if, and only if, State Street determines that the continued holding of such Common Stock is not consistent with the provisions of ERISA (within the meaning of Section 404(a)(1)(D) of ERISA) and, in such event, only to the extent that such sales are permitted under applicable securities laws or any other applicable federal law. Any shares of Common Stock sold at the direction of State Street shall be withdrawn pro rata from the accounts of each participant having an interest in the Company Stock Fund and the net proceeds of such sale shall be withdrawn from the Company Stock Fund and reinvested in accordance with the applicable provisions of the Plan.

LIBB/1197859.4

CONFIDENTIAL

GR 001308

## EXHIBIT III

### Certain Fee Limits

State Street and the Company have agreed that the Company shall not be required to reimburse State Street's expenses for its legal counsel fees to the extent such fees for services rendered during each of the periods specified below exceed the "Applicable Limit" with respect to such period.

### Legal Counsel

Startup period (through 12/31/03)           No greater than $125,000

Next 11 months of engagement            No greater than $25,000 per month

In applying the foregoing limits, the reasonable out-of-pocket expenses of State Street's legal counsel will be disregarded. Such out-of-pocket expenses shall be reimbursed without regard to the limits set forth on this Exhibit III. The foregoing limits do not apply to any periods other than the periods specified above and in no way limit State Street's entitlement to reimbursement of legal fees incurred during such other periods.

LIBB/1197879.4

CONFIDENTIAL

GR 001309

## INDEMNIFICATION AGREEMENT

This Indemnification Agreement is referred to in that certain engagement agreement, dated November 24, 2003 (the "Engagement Agreement") between W.R. Grace & Co, et al[1] (collectively, the "Indemnitor") and State Street Bank and Trust Company ("State Street") as the Investment Manager as described in the Engagement Agreement. Unless otherwise specifically indicated, all terms used in this Indemnification Agreement shall have the meaning set forth in the Engagement Agreement.

A.   As a material part of the consideration for the agreement of State Street to perform services under the Engagement Agreement, the Indemnitor agrees to indemnify, defend, reimburse and hold harmless State Street and each past, present and future officer, director, employee, and controlling person of State Street within the meaning of either Section 15 of the Securities Act of 1933, as amended or Section 20 of the Securities Exchange Act of 1934, as amended (collectively, the "Indemnified Parties") to the fullest extent lawful from and against any and all losses, claims, damages, liabilities, costs and expenses (or actions in respect thereof) joint or several, arising out of any actions taken or omitted to be taken by an Indemnified Party in connection with services performed under the Engagement Agreement ("Covered Losses"), subject to the provisions of Paragraph D below. Without limiting the foregoing, but subject to the provisions of Paragraph D below, the Indemnitor agrees to pay any legal or other expenses incurred by the Indemnified Parties in respect to Covered Losses, including but not limited to reasonable costs of investigation and preparation and reasonable attorneys' fees, disbursements and other charges, and the aggregate amount paid in connection with, incident to, or in settlement or compromise of any actions, suits, or other legal proceedings, or governmental investigations (collectively, "Proceedings"), or claims to which an Indemnified Person may become subject under any statute or common law or otherwise; provided, however, that the Indemnitor shall not be liable for any amounts paid in settlement or compromise which have not been previously authorized and approved in writing by the Indemnitor (which authorization and approval shall not be unreasonably withheld). The Indemnitor further agrees that State Street shall have no liability to the Indemnitor, or any other person, for any losses, claims, damages, liabilities, costs or expenses relating to the engagement, except as provided in Paragraph D.

B.   The Indemnitor hereby agrees that, in the event a court of competent jurisdiction holds that indemnification pursuant to this Indemnification Agreement is unavailable to any Indemnified Party or insufficient to fully indemnify, defend, reimburse and hold harmless any Indemnified Party against all Covered Losses, the Indemnitor shall contribute to the aggregated Covered Losses such amount as shall be consistent with the Indemnitor's obligation set forth in this Indemnification Agreement to indemnify fully the Indemnified Parties, but taking into account the basis for the denial of full indemnity by the court.

---

[1]  W.R.Grace & Co., et al are debtors and debtors-in-possession in proceedings under chapter 11 of the United States Bankruptcy Code pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), Case No. 01-01139(JKF), Jointly Administered (the "Bankruptcy Cases"); a list of the 62 debtor entities ("Debtors") is attached hereto as Schedule 1.

CONFIDENTIAL

GR 001310

C.  In the event any Proceeding shall be instituted involving any Indemnified Party, State Street or such Indemnified Party shall promptly notify the Indemnitor of the commencement thereof although failure to do so will not relieve the Indemnitor from any liability it has hereunder or otherwise, except to the extent the Indemnitor is prejudiced by such failure. Thereafter, the Indemnitor will be entitled to participate therein and, to the extent that it may wish, to assume the defense of the Proceeding, with counsel reasonably satisfactory to such Indemnified Person.

In the event that the Indemnitor assumes the defense of any Proceeding, the Indemnitor will pay all reasonable costs and expenses of the defense and preparation for such Proceeding as such costs and expenses are incurred.

Notwithstanding the foregoing, an Indemnified Party shall have the right to employ its own counsel in any Proceeding, and the reasonable fees and expenses of one such counsel for each Indemnified Party shall be paid by the Indemnitor as they are incurred, if (i) such Indemnified Party has been advised by such counsel that there are legal defenses available to it that it reasonably believes it will assert as a part of its defense which are different from or in addition to defenses available to an Indemnitor and such legal defenses conflict with the defenses available to the Indemnitor, in which event the Indemnitor shall not have the right to assume the defense of the Proceeding on behalf of such Indemnified Party; (ii) such Indemnified Party has been advised by such counsel that there is or could reasonably be expected to be a conflict of interest by reason of having common counsel in any such Proceeding, in which event the Indemnitor shall not have the right to assume the defense of the Proceeding on behalf of such Indemnified Party; (iii) the Indemnitor shall not have assumed the defense of the Proceeding and employed counsel reasonably satisfactory to such Indemnified Party within fifteen (15) days after the receipt by the Indemnitor of notice of commencement of the Proceeding; or (iv) the employment of such counsel has been authorized in writing by an officer of the Indemnitor in connection with the defense of the Proceeding.

D.  The Indemnitor shall not be liable under the Indemnification Agreement or any other agreement or arrangement for any losses, claims, damages, liabilities, costs or expenses which are finally judicially determined to have resulted primarily from the negligence, gross negligence, recklessness or willful misconduct of any Indemnified Party or any agent or advisor of State Street. For the purposes of this Indemnification Agreement, the term "negligence" means a departure from standards of ordinary care applicable to a person with demonstrated expertise in rendering professional services similar to the services to be performed by State Street as set forth in the Engagement Agreement or by its agent or advisor, whichever is applicable. In regard to determining whether the losses, claims, damages, liabilities, costs or expenses were caused by the negligence, gross negligence, recklessness or willful misconduct of the Indemnified Party, the expenses related thereto (including attorneys' fees related thereto) will be borne by the losing party.

E.  The Indemnitor agrees that, in the event any government or private department, bureau, commission or regulatory authority, including without limitation any agency of the

CONFIDENTIAL

GR 001311

United States of America or of any state, a committee of the Congress of the United States of America or of the legislature of any state, or a stock exchange or other entity having similar investigative or regulatory authority, shall (i) investigate any Indemnified Party or (ii) require any Indemnified Party to respond to procedures designed to discover information (hereinafter referred to as "Investigation"), in either case in connection with (a) the performance of services rendered by the Indemnified Party pursuant to the Engagement Agreement or (b) the actions or omissions of the Company, the Committee or the Trustee, or any of their respective employees, officers, directors, agents or affiliates with respect to the Plan, the Trust or the Company Stock, the Indemnified Party shall have the right to employ separate counsel in connection therewith, and the reasonable fees and expenses of such counsel shall be paid by Indemnitor as they are incurred. To the extent that any such Investigation relates to the Plan and Trust and to other specific plans and trusts for which State Street performs, or has performed, services (the "Other Clients"), the Indemnitor shall be required to pay only a portion of the reasonable fees and expenses of the separate counsel retained by State Street to represent it in connection with such Investigation, such portion to be determined by multiplying the aggregate amount of all such fees and expenses by a fraction the numerator of which is "1" and the denominator of which is "n+1", where "n" is the number of Other Clients involved in such Investigation.

F.    The provisions contained in this Indemnification Agreement shall survive the completion of professional services rendered by State Street or termination of services of State Street under the Engagement Agreement, and shall be in addition to any other liability which the Indemnitor may otherwise have to State Street and shall inure to the benefit of the heirs, personal representatives, successors and assigns of each Indemnified Party.

G.    The parties agree that, in the event a court of competent jurisdiction holds that any part of this Indemnification Agreement is invalid or unenforceable, the remaining provisions of this Indemnification Agreement shall remain in full force and effect as if the provisions held invalid or unenforceable were never a part hereof.

H.    The Indemnitor shall not effect any settlement or release from liability in connection with any matter for which an Indemnified Party would be entitled to indemnification from the Indemnitor, unless such settlement or release contains a release of the Indemnified Parties reasonably satisfactory in form and substance to State Street. The Indemnitor shall not be required to indemnify any Indemnified Party for any amount paid or payable by such party in the settlement or compromise of any claim or action without the Indemnitor's prior written consent.

I.    Prior to entering into any agreement or arrangement with respect to, or effecting, any (i) merger, statutory exchange or other business combination or proposed sale, exchange, dividend or other distribution or liquidation of all or a significant portion of its assets, or (ii) significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of the Indemnitor set forth in the Engagement Agreement, the Indemnitor will notify State Street in writing thereof ( unless the Indemnitor reasonably believes State Street is otherwise

CONFIDENTIAL

GR 001312

aware of such circumstances including, in particular, the fact that such obligations will not be assumed) and, if requested by State Street, shall arrange in connection therewith alternative means of providing for the obligations of the Indemnitor set forth herein, including the assumption of such obligations by another party, or insurance or surety bonds, or the creation of an escrow, in each case in an amount and upon terms and conditions reasonably satisfactory to State Street.

J.   The Indemnitor further agrees that neither State Street nor any other Indemnified Party shall have any liability, regardless of the legal theory advanced, to the Indemnitor (including the Indemnitor's equity holders and creditors) related to or arising out of State Street's engagement, except for any liability for losses, claims, damages, liabilities or expenses incurred by the Indemnitor which are finally judicially determined to have resulted primarily from the negligence, gross negligence, recklessness or willful misconduct of any Indemnified Party. The indemnity, reimbursement, contribution and other obligations and agreements of the Indemnitor set forth herein shall be joint and several, shall apply to any modifications of this Indemnification Agreement, shall be in addition to any liability which the Indemnitor may otherwise have, and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Indemnitor and each Indemnified Party. The foregoing provisions shall survive the consummation of any transaction and any termination of the relationship established by the Engagement Agreement.

K.   This Indemnification Agreement may not be amended except by an instrument in writing signed on behalf of each of the parties hereto.

L.   This Indemnification Agreement shall be governed and construed in accordance with the laws of the Commonwealth of Massachusetts applicable to agreements made and to be performed in the Commonwealth of Massachusetts, without regard to the principles thereof regarding choice (or conflicts) of law.

State Street Bank and Trust Company

Dated: 11/24/03

By: [signature] Paul Emery
Its: Vice-President

W.R. Grace & Co., et al

Dated: 12/15/03

By: [signature]
Its: Senior Vice President

LIBB/1197864.5

CONFIDENTIAL

GR 001313