# EXHIBIT W

■ 311 SOUTH WACKER DRIVE, SUITE 4200 ■ CHICAGO, ILLINOIS 60606 ■ 312-697-4600 ■ FAX 312-697-0115

## DUFF & PHELPS, LLC

November 24, 2003

State Street Bank and Trust Company,
   as Investment Manager of the
   W. R. Grace & Co. Retirement Plan
2 International Place
Boston, MA 02110

Investment and Benefits Committee of
W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

W.R. Grace & Co.
7500 Grace Drive
Columbia, MD 21044

Attention: Monet T. Ewing

Dear Investment Manager:

This letter confirms the basis of engagement (the "Agreement") between and among W. R. Grace & Co., et al[1] ("W. R. Grace" or the "Company"); the Investment and Benefit Committee of W.R. Grace & Co. (the "Committee"); State Street Bank and Trust Company, as the Investment Manager (the "Investment Manager") with respect to the shares of common stock of W.R. Grace & Co. (the "Company Stock") that are held under the Company Stock investment option that is maintained under the W.R. Grace Savings and Investment Plan Trust (the "Trust") on behalf of W. R. Grace Savings and Investment Plan (the "Plan") and Duff & Phelps, LLC ("D&P") for independent financial advisory services. It is our understanding that the Investment Manager has investment management oversight for the Company Stock held by the Plan subject to the provisions of its engagement agreement, including the investment guidelines attached thereto. Further, it is our understanding that on April 2, 2001, W. R. Grace filed voluntary petitions for reorganization under chapter 11 of the United State Bankruptcy Court for the District of Delaware ("Bankruptcy Proceedings"). The terms of the engagement are as follows:

---

[1] W.R. Grace & Co., et al are debtors and debtors-in-possession in proceedings under chapter 11 of the United States Bankruptcy Code pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), Case No. 01-01139 (JFK), Jointly Administered (the "Bankruptcy Cases"). A list of the 62 debtor entities is attached hereto as Exhibit I.

*Corporate Advisors Since 1932*

SSBT-001284
CONFIDENTIAL

- State Street Bank and Trust Company,
  as Investment Manager of the
  W. R. Grace & Co. Retirement Plan

November 24, 2003
Page 2

1. D&P is engaged as independent financial advisor to the Investment Manager to review the fundamental and financial outlook for the common stock of the Company held by the Plan ("Initial Financial Analysis"). As part of this review, D&P will examine the current market price of the stock, taking into account third party assessments of any liabilities and potential obligations that may have contributed to the current Bankruptcy Proceedings. It is understood that D&P will not be conducting an independent financial assessment of these liabilities and obligations. As part of its Initial Financial Analysis, D&P will also examine the pricing trends of publicly-traded companies deemed comparable in whole or part to W. R. Grace and will provide its opinion on the fair market value of the Company Stock as of the date of the Initial Financial Analysis. D&P will provide the Initial Financial Analysis to the Investment Manager by November 17, 2003 or any other date mutually agreed to by D&P and the Investment Manager.

   D&P is also engaged to provide periodic update analyses ("Update Financial Analyses") to the Investment Manager and such ongoing financial advisory services as may be reasonably requested, subsequent to the Initial Financial Analysis described above. It is anticipated that any formal meetings to discuss subsequent Update Financial Analyses will occur no more frequently than on a monthly basis.

2. D&P is engaged by and solely responsible to the Investment Manager. D&P is not acting as a fiduciary on behalf of the Plan, but is advising the Investment Manager in its fiduciary capacity.

3. D&P agrees to provide a written report and supporting analysis to the Investment Manager of the Plan in connection with the Initial Financial Analysis and any subsequent Update Financial Analyses (together, the "Reports"). The Reports will include a description of the principal materials reviewed by D&P, the assumptions and qualifications upon which D&P has relied, and such other matters as D&P in its sole discretion deems appropriate.

4. The Company agrees to furnish, or use its best efforts to cause to be furnished, to D&P all reasonably requested data and information concerning the Company and all such other data, material and information as D&P shall reasonably request; provided, however, that nothing herein shall require the Company to provide, nor shall the Company provide, any non-public information to D&P. The Company represents and warrants that, to its knowledge, all of the information furnished to D&P will be accurate and complete in all material respects and will not contain any untrue statement of a material fact or fail to state a material fact necessary to make the statements therein not misleading in light of the circumstances under which they are made. The Company further warrants and represents that any projections provided by it to D&P will have been prepared in good faith and will be based upon assumptions which, in light of the circumstances under which they are made, are reasonable. The Investment Manager and Company acknowledge and agree that in rendering its services hereunder D&P will be using and relying on the information provided by and on behalf of the Investment Manager and the Company without

SSBT-001285
CONFIDENTIAL

- State Street Bank and Trust Company,
    as Investment Manager of the
    W. R. Grace & Co. Retirement Plan
November 24, 2003
Page 3

      independent verification thereof by D&P. D&P assumes no responsibility for the accuracy or completeness of any information provided by or on behalf of the Company.

      Industry information and other economic, investment and financial data used as background for our analysis and review will be obtained from publicly available industry and investment sources, without independently verifying the accuracy thereof.

5. D&P agrees to maintain the confidentiality of all terms and conditions of this Agreement and all Reports and to disclose such information only as contemplated by this Agreement, authorized by the Company and the Investment Manager, or required by law.

6. Except as required by law, court order or regulatory agency, the Investment Manager and the Company agree that it will not permit any summary of or excerpt from the Reports or any written materials prepared by D&P and provided to the Investment Manager to be given to anyone who is not a party to this Agreement other than each of their respective legal counsel. Such Reports and written materials shall be used only for the purposes described in the Agreement. Except as required by law, court order or regulatory agency, no public reference to the Reports or this Agreement may be made by D&P or the Company, without the express written consent of the other party, which shall not be unreasonably withheld; provided, however, that after delivery of the Reports by D&P, the Investment Manager, the Company and D&P shall not be required to obtain such consent with respect to advertisements in financial and other newspapers or marketing materials that describe the services provided by D&P to the Investment Manager.

7. The Company agrees to pay D&P a professional fee of $50,000 for the Initial Financial Analysis described in this Agreement, payable as follows: (i) $25,000 upon execution of the Agreement; and (ii) $25,000 upon the delivery of the initial Report. In addition, the Company agrees to pay D&P a monthly professional retainer fee of $25,000, for the two month period of December 2003 and January 2004, for providing the Investment Manager periodic Update Financial Analyses and any other financial advisory services that may reasonably be requested. Thereafter, if D&P is requested by the Investment Manager to provide additional Update Financial Analyses, the Company and D&P agree that they will negotiate, in good faith, the terms of additional compensation to D&P. The monthly retainer fees shall be paid to D&P by the 15th of each month, beginning December 15, 2003. D&P agrees that the Investment Manager shall not be responsible or liable for any such professional fees or reimbursement of expenses as provided below. No portion of the fees are contingent upon the conclusions reached by D&P. If and to the extent the Company is financially unable (including, without limitation, by reason of the Bankruptcy Cases) to pay any fee incurred by D&P hereunder, the Company hereby agrees to cause the Trust to pay all such unpaid fees. The Committee hereby represents that the Trust and Plan documents permit the payment of D&P's fees in the manner descried herein.
In the event that the responsibilities of D&P, as required to complete the engagement described herein, are expanded significantly beyond the scope contemplated by this

SSBT-001286
CONFIDENTIAL

- State Street Bank and Trust Company,
    as Investment Manager of the
    W. R. Grace & Co. Retirement Plan
November 24, 2003
Page 4

Agreement due to circumstances which arise subsequent to the date of this Agreement, including any review and analysis of any proposed Plan of Reorganization related to the Bankruptcy Proceeding, the Company and D&P agree that they will negotiate, in good faith, the terms of additional compensation to D&P.

Either of the Investment Manager or D&P may terminate this Agreement at any time upon thirty days prior written notice, without liability or continuing obligation, except as set forth in the remainder of this paragraph. Neither the termination nor completion of this engagement shall affect: (i) except as provided below, any compensation earned by D&P up to the date of termination or completion; (ii) the reimbursement of reasonable expenses incurred by D&P up to the date of termination or completion; (iii) the indemnification provisions; and (iv) the provisions relating to successors and assigns in paragraph 9 hereof. If this engagement is terminated by the Investment Manager prior to the issuance of the initial Report, D&P will be entitled to retain $25,000 plus reimbursement of its reasonable out-of-pocket expenses; however, if D&P has substantially completed its analysis in connection with the initial Report, D&P shall be entitled to the total fees provided for herein.

8. The Company agrees to periodically reimburse D&P for reasonable out-of-pocket expenses, including travel, lodging, telephone, document reproduction, telecopying, and computer database charges incurred in connection with advising the Investment Manager. These fees shall exclude any legal fees incurred by D&P, which legal fees shall be paid for by the Company solely to the extent provided in paragraph 10 hereof and the related Indemnification Agreement. If and to the extent the Company is financially unable (including, without limitation, by reason of the Bankruptcy Cases) to pay any expense incurred by D&P hereunder, the Company hereby agrees to cause the Trust to pay all such unpaid expenses. The Committee hereby represents that the Trust and Plan documents permit the payment of D&P's expenses in the manner described herein.

9. The Agreement shall inure to the benefit of the respective successors and permitted assigns of the parties hereto and of the indemnified parties hereunder and their respective successors and assigns and representatives, and the obligations and liabilities assumed in this Agreement by the parties hereto shall be binding upon their respective successors and assigns. For the convenience of the parties, any number of counterparts of this Agreement may be executed by the parties hereto. Each such counterpart shall be, and shall be deemed to be, an original instrument, but all such counterparts taken together shall constitute one and the same Agreement. This Agreement may not be modified or amended except in writing signed by the parties hereto.

10. In connection with D&P's performance under this Agreement, the Company agrees to the terms of the Indemnification Agreement attached hereto for all services provided under this Agreement. In the event of a termination of this Agreement, the Indemnification Agreement shall remain in full force for all services provided by D&P under the

SSBT-001287
CONFIDENTIAL

State Street Bank and Trust Company,
   as Investment Manager of the
    W. R. Grace & Co. Retirement Plan
November 24, 2003
Page 5

Agreement. Notwithstanding any provision to the contrary elsewhere herein or in the Indemnification Agreement, if and to the extent the Company is financially unable (including, without limitation, by reason of the Bankruptcy Cases) to satisfy its obligations under the Indemnification Agreement, the Company hereby agrees to cause the Trust to satisfy all such obligations to the maximum extent permitted by ERISA; provided, however, that nothing herein (including any such payment by the Trust) will relieve the Company of its obligations under the Indemnification Agreement. The Committee hereby represents that the Plan and Trust documents permit the payment of any such indemnification obligations in the manner described herein.

11. If D&P is required to render other services not directly incidental to the delivery of the Reports and supporting analysis, including services relating to administrative investigations or judicial proceedings relating to the Plan, the Company agrees to compensate D&P, in addition to the other fees provided for herein, on a per diem basis at the rates of D&P then in effect, plus reimbursement for reasonable out-of-pocket expenses.

This Agreement is being entered into by W.R. Grace in the ordinary course of its business as permitted by Sections 1108 and 363 of the United States Bankruptcy Code. Notwithstanding the foregoing, the parties intend to seek the entry of a final order by the Bankruptcy Court in the Bankruptcy Cases pursuant to Sections 105(a) and 363 of the United States Bankruptcy Code, authorizing the execution and performance by W.R. Grace of the Agreement and the Indemnification Agreement (the "Approval Order"). The Company agrees that it will promptly file a motion with the Bankruptcy Court requesting entry of the Approval Order. Additionally, the Company hereby represents and warrants that no further consents or approvals of or filings or registrations with any other court or governmental authority or third-party are necessary in connection with the execution and delivery by the Company, the Committee or the Trustee of this Agreement and the related Indemnification Agreement.

If the foregoing terms are acceptable to you, we request that you arrange to have this letter and the attached Indemnification Agreement fully executed and returned to us.

Sincerely,


DUFF & PHELPS, LLC

By: _____
    Daniel D. Bayston
    Managing Director

SSBT-001288
CONFIDENTIAL

State Street Bank and Trust Company,
   as Investment Manager of the
     W. R. Grace & Co. Retirement Plan
November 24, 2003
Page 6

**AGREED TO AND ACCEPTED:**

State Street Bank and Trust Company,
   Investment Manager of the W. R. Grace & Co.
   Salaried Employees Savings and Investment Plan

By: *[signature]*       Date: 11/24/03
Its: Vice President

W. R. Grace & Co.

By: *W B McGowan*       Date: 12/15/03
Its: Senior Vice President

Investment and Benefits Committee of W.R. Grace & Co.

By: *W B McGowan*       Date: 12/15/03
Its: Member

SSBT-001289
CONFIDENTIAL

State Street Bank and Trust Company,
   as Investment Manager of the
   W. R. Grace & Co. Retirement Plan
November 24, 2003
Page 7

## Exhibit I

### List of Debtors

1. In re W. R. Grace & Co., Case No. 01-01139
2. In re W. R. Grace & Co.-Conn., Case No. 01-01140
3. In re A-1 Bit Tool Co., Inc., Case No. 01-01141
4. In re Alewife Boston Ltd., Case No. 01-01142
5. In re Alewife Land Corporation, Case No. 01-01143
6. In re Amicon, Inc., Case No. 01-01144
7. In re CB Biomedical, Inc., Case No. 01-01145
8. In re CCHP, Inc., Case No. 01-01146
9. In re Coalgrace, Inc., Case No. 01-01147
10. In re Coalgrace II, Inc., Case No. 01-01148
11. In re Creative Food 'N Fun Company, Case No. 01-01149
12. In re Darex Puerto Rico, Inc., Case No. 01-01150
13. In re Del Taco Restaurants, Inc., Case No. 01-01151
14. In re Dewey and Almy, LLC, Case No. 01-01152
15. In re Ecarg, Inc., Case No. 01-01153
16. In re Five Alewife Boston Ltd., Case No. 01-01154
17. In re G C Limited Partners I, Inc., Case No. 01-01155
18. In re G C Management, Inc., Case No. 01-01156
19. In re GEC Management Corporation, Case No. 01-01157
20. In re GN Holdings, Inc., Case No. 01-01158
21. In re GPC Thomasville Corp., Case No. 01-01159
22. In re Gloucester New Communities Company, Inc., Case No. 01-01160
23. In re Grace A-B Inc., Case No. 01-01161
24. In re Grace A-B II Inc., Case No. 01-01162
25. In re Grace Chemical Company of Cuba, Case No. 01-01163
26. In re Grace Culinary Systems, Inc., Case No. 01-01164
27. In re Grace Drilling Company, Case No. 01-01165
28. In re Grace Energy Corporation, Case No. 01-01166
29. In re Grace Environmental, Inc., Case No. 01-01167
30. In re Grace Europe, Inc., Case No. 01-01168
31. In re Grace H-G Inc., Case No. 01-01169
32. In re Grace H-G II Inc., Case No. 01-01170
33. In re Grace Hotel Services Corporation, Case No. 01-01171
34. In re Grace International Holdings, Inc., Case No. 01-01172
35. In re Grace Offshore Company, Case No. 01-01173
36. In re Grace PAR Corporation, Case No. 01-01174
37. In re Grace Petroleum Libya Incorporated, Case No. 01-01175
38. In re Grace Tarpon Investors, Inc., Case No. 01-01176
39. In re Grace Ventures Corporation, Case No. 01-01177
40. In re Grace Washington, Inc., Case No. 01-01178
41. In re W. R. Grace Capital Corporation, Case No. 01-01179
42. In re W. R. Grace Land Corporation, Case No. 01-01180
43. In re Gracoal, Inc., Case No. 01-01181
44. In re Gracoal II, Inc., Case No. 01-01182
45. In re Guanica-Caribe Land Development Corporation, Case No. 01-01183
46. In re Hanover Square Corporation, Case No. 01-01184
47. In re Homco International, Inc., Case No. 01-01185
48. In re Kootenai Development Company, Case No. 01-01186
49. In re L B Realty, Inc., Case No. 01-01187
50. In re Litigation Management, Inc., Case No. 01-01188
51. In re Monolith Enterprises, Inc., Case No. 01-01189
52. In re Monroe Street, Inc., Case No. 01-01190
53. In re MRA Holdings Corporation, Case No. 01-01191
54. In re MRA Intermedco, Inc., Case No. 01-01192
55. In re MRA Staffing Systems, Inc., Case No. 01-01193
56. In re Remedium Group, Inc., Case No. 01-01194
57. In re Southern Oil, Resin & Fiberglass, Inc., Case No. 01-01195
58. In re Water Street Corporation, Case No. 01-01196
59. In re Axial Basin Ranch Company, Case No. 01-01197
60. In re CC Partners, Case No. 01-01198
61. In re Hayden-Gulch West Coal Company, Case No. 01-01199
62. In re H-G Coal Company, Case No. 01-01200

SSBT-001290
CONFIDENTIAL

State Street Bank and Trust Company,
   as Investment Manager of the
   W. R. Grace & Co. Retirement Plan
November 24, 2003
Page 8

SCHEDULE A

## INDEMNIFICATION AGREEMENT

This Indemnification Agreement is referred to in that certain engagement agreement, dated November 24, 2003 (the "Engagement Agreement") between and among W.R. Grace & Co, et al[1] (collectively, the "Indemnitor"), the Committee (as defined therein), the Investment Manager (as defined therein) and Duff & Phelps, LLC ("D&P") as the independent financial advisor as described in the Engagement Agreement. Unless otherwise specifically indicated, all terms used in this Indemnification Agreement shall have the meaning set forth in the Engagement Agreement.

  A. As a material part of the consideration for the agreement of D&P to perform services under the Engagement Agreement, the Indemnitor agrees to indemnify, defend, reimburse and hold harmless D&P and each past, present and future officer, director, employee, and controlling person of D&P within the meaning of either Section 15 of the Securities Act of 1933, as amended or Section 20 of the Securities Exchange Act of 1934, as amended (collectively, the "Indemnified Parties") to the fullest extent lawful from and against any and all losses, claims, damages, liabilities, costs and expenses (or actions in respect thereof) joint or several, arising out of any actions taken or omitted to be taken by an Indemnified Party in connection with services performed under the Engagement Agreement ("Covered Losses"), subject to the provisions of Paragraph D below. Without limiting the foregoing, but subject to the provisions of Paragraph D below, the Indemnitor agrees to pay any legal or other expenses incurred by the Indemnified Parties in respect to Covered Losses, including but not limited to reasonable costs of investigation and preparation and reasonable attorneys' fees, disbursements and other charges, and the aggregate amount paid in connection with, incident to, or in settlement or compromise of any actions, suits, or other legal proceedings, or governmental investigations (collectively, "Proceedings"), or claims to which an Indemnified Person may become subject under any statute or common law or otherwise; provided, however, that the Indemnitor shall not be liable for any amounts paid in settlement or compromise which have not been previously authorized and approved in writing by the Indemnitor (which authorization and approval shall not be unreasonably withheld). The Indemnitor further agrees that D&P shall have no liability to the Indemnitor, or any other person, for any losses,

---

[1] W.R.Grace & Co., et al are debtors and debtors-in-possession in proceedings under chapter 11 of the United States Bankruptcy Code pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") , Case No. 01-01139(JKF), Jointly Administered (the "Bankruptcy Cases"); a list of the 62 debtor entities ("Debtors") is attached hereto as Schedule 1.

SSBT-001291
CONFIDENTIAL

State Street Bank and Trust Company,
   as Investment Manager of the
   W. R. Grace & Co. Retirement Plan
November 24, 2003
Page 9

        claims, damages, liabilities, costs or expenses relating to the engagement, except as provided in Paragraph D.

B.    The Indemnitor hereby agrees that, in the event a court of competent jurisdiction holds that indemnification pursuant to this Indemnification Agreement is unavailable to any Indemnified Party or insufficient to fully indemnify, defend, reimburse and hold harmless any Indemnified Party against all Covered Losses, the Indemnitor shall contribute to the aggregated Covered Losses such amount as shall be consistent with the Indemnitor's obligation set forth in this Indemnification Agreement to indemnify fully the Indemnified Parties, but taking into account the basis for the denial of full indemnity by the court.

C.    In the event any Proceeding shall be instituted involving any Indemnified Party, D&P or such Indemnified Party shall promptly notify the Indemnitor of the commencement thereof although failure to do so will not relieve the Indemnitor from any liability it has hereunder or otherwise, except to the extent the Indemnitor is prejudiced by such failure. Thereafter, the Indemnitor will be entitled to participate therein and, to the extent that it may wish, to assume the defense of the Proceeding, with counsel reasonably satisfactory to such Indemnified Person.

In the event that the Indemnitor assumes the defense of any Proceeding, the Indemnitor will pay all reasonable costs and expenses of the defense and preparation for such Proceeding as such costs and expenses are incurred.

Notwithstanding the foregoing, an Indemnified Party shall have the right to employ its own counsel in any Proceeding, and the reasonable fees and expenses of one such counsel for each Indemnified Party shall be paid by the Indemnitor as they are incurred, if (i) such Indemnified Party has been advised by such counsel that there are legal defenses available to it that it reasonably believes it will assert as a part of its defense which are different from or in addition to defenses available to an Indemnitor and such legal defenses conflict with the defenses available to the Indemnitor, in which event the Indemnitor shall not have the right to assume the defense of the Proceeding on behalf of such Indemnified Party; (ii) such Indemnified Party has been advised by such counsel that there is or could reasonably be expected to be a conflict of interest by reason of having common counsel in any such Proceeding, in which event the Indemnitor shall not have the right to assume the defense of the Proceeding on behalf of such Indemnified Party; (iii) the Indemnitor shall not have assumed the defense of the Proceeding and employed counsel reasonably satisfactory to such Indemnified Party within fifteen (15) days after the receipt by the Indemnitor of notice of commencement of the Proceeding; or (iv) the employment of such counsel has been authorized in

SSBT-001292
CONFIDENTIAL

State Street Bank and Trust Company,
   as Investment Manager of the
     W. R. Grace & Co. Retirement Plan
November 24, 2003
Page 10

        writing by an officer of the Indemnitor in connection with the defense of the Proceeding.

D.    The Indemnitor shall not be liable under the Indemnification Agreement or any other agreement or arrangement for any losses, claims, damages, liabilities, costs or expenses which are finally judicially determined to have resulted primarily from the negligence, gross negligence, recklessness or willful misconduct of any Indemnified Party or any agent or advisor of D&P. For the purposes of this Indemnification Agreement, the term "negligence" means a departure from standards of ordinary care applicable to a person with demonstrated expertise in rendering professional services similar to the services to be performed by D&P as set forth in the Engagement Agreement or by its agent or advisor, whichever is applicable. In regard to determining whether the losses, claims, damages, liabilities, costs or expenses were caused by the negligence, gross negligence, recklessness or willful misconduct of the Indemnified Party, the expenses related thereto (including attorneys' fees related thereto) will be borne by the losing party.

E.    The Indemnitor agrees that, in the event any government or private department, bureau, commission or regulatory authority, including without limitation any agency of the United States of America or of any state, a committee of the Congress of the United States of America or of the legislature of any state, or a stock exchange or other entity having similar investigative or regulatory authority, shall (i) investigate any Indemnified Party or (ii) require any Indemnified Party to respond to procedures designed to discover information (hereinafter referred to as "Investigation"), in either case in connection with (a) the performance of services rendered by the Indemnified Party pursuant to the Engagement Agreement or (b) the actions or omissions of the Company, the Committee or the Trustee, or any of their respective employees, officers, directors, agents or affiliates with respect to the Plan, the Trust or the Company Stock, the Indemnified Party shall have the right to employ separate counsel in connection therewith, and the reasonable fees and expenses of such counsel shall be paid by Indemnitor as they are incurred. To the extent that any such Investigation relates to the Plan and Trust and to other specific plans and trusts for which D&P performs, or has performed, services (the "Other Clients"), the Indemnitor shall be required to pay only a portion of the reasonable fees and expenses of the separate counsel retained by D&P to represent it in connection with such Investigation, such portion to be determined by multiplying the aggregate amount of all such fees and expenses by a fraction the numerator of which is "1" and the denominator of which is "n+1", where "n" is the number of Other Clients involved in such Investigation.

F.    The provisions contained in this Indemnification Agreement shall survive the completion of professional services rendered by D&P or termination of services

SSBT-001293
CONFIDENTIAL

State Street Bank and Trust Company,
   as Investment Manager of the
     W. R. Grace & Co. Retirement Plan
November 24, 2003
Page 11

        of D&P under the Engagement Agreement, and shall be in addition to any other liability which the Indemnitor may otherwise have to D&P and shall inure to the benefit of the heirs, personal representatives, successors and assigns of each Indemnified Party.

G.    The parties agree that, in the event a court of competent jurisdiction holds that any part of this Indemnification Agreement is invalid or unenforceable, the remaining provisions of this Indemnification Agreement shall remain in full force and effect as if the provisions held invalid or unenforceable were never a part hereof.

H.    The Indemnitor shall not effect any settlement or release from liability in connection with any matter for which an Indemnified Party would be entitled to indemnification from the Indemnitor, unless such settlement or release contains a release of the Indemnified Parties reasonably satisfactory in form and substance to D&P. The Indemnitor shall not be required to indemnify any Indemnified Party for any amount paid or payable by such party in the settlement or compromise of any claim or action without the Indemnitor's prior written consent.

I.    Prior to entering into any agreement or arrangement with respect to, or effecting, any (i) merger, statutory exchange or other business combination or proposed sale, exchange, dividend or other distribution or liquidation of all or a significant portion of its assets, or (ii) significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of the Indemnitor set forth in the Engagement Agreement, the Indemnitor will notify D&P in writing thereof ( unless the Indemnitor reasonably believes D&P is otherwise aware of such circumstances including, in particular, the fact that such obligations will not be assumed) and, if requested by D&P, shall arrange in connection therewith alternative means of providing for the obligations of the Indemnitor set forth herein, including the assumption of such obligations by another party, or insurance or surety bonds, or the creation of an escrow, in each case in an amount and upon terms and conditions reasonably satisfactory to D&P.

J.    The Indemnitor further agrees that neither D&P nor any other Indemnified Party shall have any liability, regardless of the legal theory advanced, to the Indemnitor (including the Indemnitor's equity holders and creditors) related to or arising out of D&P's engagement, except for any liability for losses, claims, damages, liabilities or expenses incurred by the Indemnitor which are finally judicially determined to have resulted primarily from the negligence, gross negligence, recklessness or willful misconduct of any Indemnified Party. The indemnity, reimbursement, contribution and other obligations and agreements of the Indemnitor set forth herein shall be joint and several, shall apply to any modifications of this Indemnification Agreement, shall be in addition to any

SSBT-001294
CONFIDENTIAL

State Street Bank and Trust Company,
   as Investment Manager of the
    W. R. Grace & Co. Retirement Plan
November 24, 2003
Page 12

liability which the Indemnitor may otherwise have, and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Indemnitor and each Indemnified Party. The foregoing provisions shall survive the consummation of any transaction and any termination of the relationship established by the Engagement Agreement.

K.   This Indemnification Agreement may not be amended except by an instrument in writing signed on behalf of each of the parties hereto.

L.   This Indemnification Agreement shall be governed and construed in accordance with the laws of the State of Illinois applicable to agreements made and to be performed in the State of Illinois, without regard to the principles thereof regarding choice (or conflicts) of law.

Duff & Phelps, LLC

Dated: 11/24/03    By: _Daniel D. Boyden_ (signature)
                      Its: MANAGING DIRECTOR

W.R. Grace & Co., et al

Dated: 12/15/03    By: _W B McGowan_ (signature)
                      Its: Senior Vice President

SSBT-001295
CONFIDENTIAL

State Street Bank and Trust Company,
   as Investment Manager of the
      W. R. Grace & Co. Retirement Plan
November 24, 2003
Page 13

Schedule 1

## List of Debtors

1. In re W. R. Grace & Co., Case No. 01-01139
2. In re W. R. Grace & Co.-Conn., Case No. 01-01140
3. In re A-1 Bit Tool Co., Inc., Case No. 01-01141
4. In re Alewife Boston Ltd., Case No. 01-01142
5. In re Alewife Land Corporation, Case No. 01-01143
6. In re Amicon, Inc., Case No. 01-01144
7. In re CB Biomedical, Inc., Case No. 01-01145
8. In re CCHP, Inc., Case No. 01-01146
9. In re Coalgrace, Inc., Case No. 01-01147
10. In re Coalgrace II, Inc., Case No. 01-01148
11. In re Creative Food 'N Fun Company, Case No. 01-01149
12. In re Darex Puerto Rico, Inc., Case No. 01-01150
13. In re Del Taco Restaurants, Inc., Case No. 01-01151
14. In re Dewey and Almy, LLC, Case No. 01-01152
15. In re Ecarg, Inc., Case No. 01-01153
16. In re Five Alewife Boston Ltd., Case No. 01-01154
17. In re G C Limited Partners I, Inc., Case No. 01-01155
18. In re G C Management, Inc., Case No. 01-01156
19. In re GEC Management Corporation, Case No. 01-01157
20. In re GN Holdings, Inc., Case No. 01-01158
21. In re GPC Thomasville Corp., Case No. 01-01159
22. In re Gloucester New Communities Company, Inc., Case No. 01-01160
23. In re Grace A-B Inc., Case No. 01-01161
24. In re Grace A-B II Inc., Case No. 01-01162
25. In re Grace Chemical Company of Cuba, Case No. 01-01163
26. In re Grace Culinary Systems, Inc., Case No. 01-01164
27. In re Grace Drilling Company, Case No. 01-01165
28. In re Grace Energy Corporation, Case No. 01-01166
29. In re Grace Environmental, Inc., Case No. 01-01167
30. In re Grace Europe, Inc., Case No. 01-01168
31. In re Grace H-G Inc., Case No. 01-01169
32. In re Grace H-G II Inc., Case No. 01-01170
33. In re Grace Hotel Services Corporation, Case No. 01-01171
34. In re Grace International Holdings, Inc., Case No. 01-01172
35. In re Grace Offshore Company, Case No. 01-01173
36. In re Grace PAR Corporation, Case No. 01-01174
37. In re Grace Petroleum Libya Incorporated, Case No. 01-01175
38. In re Grace Tarpon Investors, Inc., Case No. 01-01176
39. In re Grace Ventures Corporation, Case No. 01-01177
40. In re Grace Washington, Inc., Case No. 01-01178
41. In re W. R. Grace Capital Corporation, Case No. 01-01179
42. In re W. R. Grace Land Corporation, Case No. 01-01180
43. In re Gracoal, Inc., Case No. 01-01181
44. In re Gracoal II, Inc., Case No. 01-01182
45. In re Guanica-Caribe Land Development Corporation, Case No. 01-01183
46. In re Hanover Square Corporation, Case No. 01-01184
47. In re Homco International, Inc., Case No. 01-01185
48. In re Kootenai Development Company, Case No. 01-01186
49. In re L B Realty, Inc., Case No. 01-01187
50. In re Litigation Management, Inc., Case No. 01-01188
51. In re Monolith Enterprises, Inc., Case No. 01-01189
52. In re Monroe Street, Inc., Case No. 01-01190
53. In re MRA Holdings Corporation, Case No. 01-01191
54. In re MRA Intermedco, Inc., Case No. 01-01192
55. In re MRA Staffing Systems, Inc., Case No. 01-01193
56. In re Remedium Group, Inc., Case No. 01-01194
57. In re Southern Oil, Resin & Fiberglass, Inc., Case No. 01-01195
58. In re Water Street Corporation, Case No. 01-01196
59. In re Axial Basin Ranch Company, Case No. 01-01197
60. In re CC Partners, Case No. 01-01198
61. In re Hayden-Gulch West Coal Company, Case No. 01-01199
62. In re H-G Coal Company, Case No. 01-01200

SSBT-001296
CONFIDENTIAL