# EXHIBIT X

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

LAWRENCE W. BUNCH, et al.,     )
          Plaintiffs,     )
          vs.                     ) Case No. 04-11380-WGY
W.R. GRACE & CO., et al.,      )
          Defendants.     )

ORIGINAL

      The 30(b)(6) deposition of Duff & Phelps, LLC, by DANIEL D. BAYSTON, called for examination, taken pursuant to the Federal Rules of Civil Procedure of the United States District Courts pertaining to the taking of depositions, before ANDREA L. CARTER, CSR No. 84-3722, a Notary Public within and for the County of Cook, State of Illinois, and a Certified Shorthand Reporter of said state, at Suite 3700, 35 West Wacker Drive, Chicago, Illinois, on the 31st day of May, A.D. 2007, at 9:34 a.m.

1    Q.    The liabilities -- certain of the
2 liabilities of Grace had real significance to the
3 financial health and strength of W.R. Grace,
4 correct?
5    MR. BOWERS:  Objection, form.
6 BY THE WITNESS:
7    A.    That is correct.
8 BY MR. CUMMINS:
9    Q.    While all liabilities are important to
10 consider for the purposes of this examination, would
11 you agree that asbestos-related liabilities were a
12 very important component of an analysis of the
13 financial future of W.R. Grace?
14    MR. BOWERS:  Objection, form.
15 BY THE WITNESS:
16    A.    Yes, I do.  I will now wait one full
17 second before I respond.
18 BY MR. CUMMINS:
19    Q.    That's how we advise our clients.  All
20 right.
21        How was it you envisioned in November of
22 2003 that Duff & Phelps would gain an understanding
23 of the extent and scope and amount of the asbestos
24 liabilities or potential liabilities facing W.R.

1  Grace at that time?
2      MR. BOWERS:  Objection, form.
3  BY THE WITNESS:
4      A.   We would review independent third-party
5  assessments of the asbestos liability issue in
6  general and review independent third-party
7  assessments of those asbestos liability issues that
8  might affect W.R. Grace specifically.
9  BY MR. CUMMINS:
10     Q.   So there would be general third-party
11 assessments of asbestos liability industry-wide and
12 specific -- and review of specific analysis by
13 third-parties of those affecting W.R. Grace.  There
14 are two; is that right?
15     MR. BOWERS:  Objection, form.
16 BY THE WITNESS:
17     A.   To the extent that that was information
18 that we could -- that we deemed to be relevant to
19 W.R. Grace specifically, we would utilize that
20 information in our overall assessment of the
21 asbestos liability exposure related to W.R. Grace.
22 BY MR. CUMMINS:
23     Q.   Okay.  And what were the third-party
24 assessments that Duff & Phelps ultimately reviewed

1  and relied upon in its work?
2       MR. BOWERS:  Objection, compound.
3  BY THE WITNESS:
4       A.   There were many third-party assessments
5  and providers of information.  There were numerous
6  news stories with respect to the asbestos liability
7  issue.  There were equity analysts reports on
8  companies that have asbestos liability.  There were
9  industry reports that specifically dealt with
10 various industry exposures to the asbestos industry
11 whether it be manufacturing companies or whether it
12 be insurance companies.
13      We also examined a comprehensive report
14 that was prepared specifically for evaluating
15 asbestos liability exposure that was prepared by the
16 Rand Institute in 2002.
17 BY MR. CUMMINS:
18      Q.   Now, are any of the ones of the items
19 that you have described specifically related to the
20 liability -- asbestos liability of W.R. Grace?
21      A.   None of the analyses or third-party
22 reports that were reviewed specifically dealt with
23 W.R. Grace alone.  They were dealing with the
24 asbestos issue in a much more general -- general

1  manner.
2      Q.   Did you review any other third-party
3  assessments of liabilities of W.R. Grace -- asbestos
4  liabilities of W.R. Grace?
5      A.   We certainly were provided with
6  information from Goodwin Procter with respect to
7  their analysis of the various issues that would
8  impact the ultimate liability that might be subject
9  to W.R. Grace in this particular issue.
10     Q.   And let's talk about this.
11          With respect to the Goodwin Procter
12 information, was that conveyed to you in writing
13 or --
14     A.   It was provided both in writing and
15 through conversations.
16     Q.   With respect to writing, what is it that
17 you were provided with on the liability amount for
18 W.R. Grace's asbestos -- possible exposure?
19     MR. BOWERS:   Objection, form.
20 BY THE WITNESS:
21     A.   I don't believe I testified that Goodwin
22 Procter provided us with specific amounts with
23 respect to the liability exposure.  I think they
24 provided us information with respect to the various