UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KERI EVANS, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>JOHN F. AKERS, et al.,<br><br>    Defendants. | Consolidated Under<br>Case No. 04-11380-WGY |
| LAWRENCE W. BUNCH, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>W. R. GRACE & CO., et al.,<br><br>    Defendants. | |

**THE GRACE DEFENDANTS' OPPOSITION TO THE
BUNCH PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

In the entirety of their twenty page motion, Plaintiffs devote but a single page to their claims against the Grace Defendants. In this single page, the sole claim on which Plaintiffs seek summary judgment against the Grace Defendants is an alleged breach of their duty to monitor State Street.

Plaintiffs contend that they are entitled to judgment on their failure to monitor claim based exclusively on two "undisputed facts:" (1) Robert Tarola's deposition testimony that he did not believe that he had "responsibility with respect to State Street's decision on its handling of the Grace stock fund" once State Street was appointed as the independent fiduciary; and (2)

that the Grace Defendants did not take steps to learn why State Street decided to sell the stock. Neither of these assertions entitle Plaintiffs to judgment.

As a threshold matter, Tarola's testimony is perfectly justified and reasonable under the circumstances. As a Plan fiduciary, he believed – and rightly so – that he needed to "avoid[] conflicts of interest" in order to manage the Plan in the participants' best interests. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 252 (1993). So when he was faced with a potential conflict of interest (borne of his upcoming role in the company's reorganization where he would be involved in negotiations that would affect equity value), he and his fellow fiduciaries took appropriate action to avert that conflict by appointing an independent fiduciary to oversee the Grace Stock Fund.[1] And after State Street was appointed and went forward with its evaluation, Tarola was appropriately wary of injecting himself into State Street's decision-making. Indeed, as the Grace Defendants argued in the Memorandum in Support of Grace Defendants' Motion for Summary Judgment ("Summary Judgment Brief" at 14-15), it would have been highly improper, perhaps even unlawful, for him to have done so. Tarola's testimony that he believed that he needed to step back from the responsibility he had delegated to State Street was not only

---

[1] Plaintiffs do not dispute that the reason for appointing an independent fiduciary in the first place was to avoid a conflict of interest (and their expert conceded both that this was the case, and that it was appropriate). Nevertheless, included in Plaintiffs' Statement of Uncontested Facts is the statement that "an actual conflict of interest never existed during the four months that State Street served as Investment Manager." Bunch Plaintiffs' Statement of Uncontested Facts Pursuant to Local Rule 56.1, No. 34. Plaintiffs cite to Tarola's deposition testimony (at pp. 126-27) in support. Tarola's belief that there was no actual conflict is hardly surprising, however, in light of the fact that the appointment of State Street did away with the possibility that an actual conflict might arise. Indeed, Tarola testified unequivocally that, in his opinion, the conflict situation was eliminated "[w]hen the fiduciary obligations were assumed by a third party [State Street]." (Ex. 8 to the Decl. of Counsel in Support of Grace Defendants' Mot. for Summary Judgment, Tarola Tr. 106.) In any event, the Grace Defendants should not be penalized for taking appropriate action to avoid the potential of a conflict of interest.

2

justified, it was arguably required in order to avoid any actual or potential conflict of interest – the reason State Street was retained in the first place.

That said, however, testimony as to what Tarola *believed* his obligations were is actually beside the point. His personal belief as to what the governing legal obligations were is not a "fact" at all. The relevant and undisputed facts are what he and the other fiduciaries who had a duty to monitor *did* – not what they *thought*. In other words, even assuming *arguendo* that Tarola was unaware of the extent of his monitoring obligations under ERISA after State Street was appointed, it is not his knowledge or beliefs that are relevant here.[2] The question is whether he and the other fiduciaries, by their actions, actually complied with their legal obligations. Fiduciary liability is based on what a fiduciary *does* (or fails to do), not on what he *believes*. *See generally Farm King Supply, Inc. v. Edward D. Jones & Co*., 884 F.2d 288, 292 (7th Cir. 1989) (where the issue was fiduciary status, holding that "it matters not that the person may subjectively believe that he or she is not a fiduciary as long as the requirements under the regulations are met"); *Ulico Cas. Co. v. Clover Capital Mgmt., Inc.*, 335 F. Supp. 2d 335, 340 (N.D.N.Y. 2004) ("the fiduciary's subjective, good faith *belief* in an investment does not insulate him from charges that he *acted* imprudently" (emphasis added); "ERISA's test of prudence is one of conduct."); *Stephenson v. United Air Lines, Inc.,* No. C-97-4476-VRW, 2002 WL 654093, at *9 (N.D. Cal. Apr. 17, 2002) (employer in fact engaged in required interactive process with employee "although [it was] unsure or unaware of its responsibilities under the ADA"). Whether

---

[2] Even if Tarola's beliefs about the required legal obligations were relevant, the Grace Defendants note that the Bunch Plaintiffs claim that Grace, the IBC, and nine separate individual Grace officers and directors had fiduciary obligations to monitor State Street and failed to properly execute those duties. It should go without saying that what one individual may have believed about his legal obligations cannot be imputed to the other defendants.

3

Tarola knew specifically what the law required is simply irrelevant – all that matters is that he and the other Plan fiduciaries actually *did* what the law required.

Notably, Plaintiffs make no reference to any of the many monitoring activities that actually occurred, all of which were disclosed in discovery and are part of the factual record in this case. Plaintiffs ignore the numerous meetings, telephone calls, and emails with State Street that Grace fiduciaries participated in, exchanging information, assisting with participant notices, and the like. They make no mention of any of those activities, and have never disputed that they in fact occurred. As is fully demonstrated in the Grace Defendants' Summary Judgment Brief (pp. 13-14), the Grace fiduciaries, including Tarola, *did* all that the law required of them in monitoring State Street.[3]

Nor are Plaintiffs entitled to summary judgment on their failure to monitor claim on the second basis they proffer – that the Grace Defendants failed to delve into the reasons for State Street's decision to sell the Grace stock in the Plan. Plaintiffs themselves offer no explanation and cite no authority supporting the proposition that this was required. As the Grace Defendants explained in their Summary Judgment Brief (pp. 11-14), the general duty to monitor carries with it the responsibility to stay sufficiently apprised of what the delegate is doing so that the appointing party can be comfortable that the delegate is employing a prudent process and that it would likely discover a fiduciary breach if one occurred. *See, e.g., Kling v. Fidelity Mgmt. Co.,*

---

[3] Furthermore, Tarola is neither a lawyer nor an expert on the law. The deposition questions Plaintiffs' counsel asked him about his legal obligations improperly sought to elicit legal opinion testimony. Counsel for the Grace Defendants thus appropriately objected, and continue to maintain those objections here. Under Fed. R. Evid. 701, this testimony is inadmissible because it is based on "specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701; *see, e.g. Freedom Wireless, Inc. v. Boston Commc'ns Group, Inc.,* 369 F. Supp. 2d 155, 157 (D. Mass. 2005) ("Rule 701 explicitly bars lay witnesses from giving opinions based on . . . specialized knowledge."); *Applera Corp. v. MJ Research, Inc.*, 220 F.R.D. 13, 19 (D. Conn. 2004) (same). Summary judgment plainly cannot be entered on the basis of such "evidence."

4

323 F. Supp. 2d 132, 142 (D. Mass. 2004). It does *not* make appointing fiduciaries responsible for approving or second-guessing the decisions made by an independent fiduciary.

Moreover, the duty to monitor "var[ies] in accordance with the nature of the plan and other facts and circumstances." 29 C.F.R. § 2509.75-8 (FR-17). It is undisputed that the Grace Defendants appointed State Street as the independent fiduciary of the Grace Stock Fund to avoid a potential conflict of interest.[4] The Grace Defendants' responsibilities under the duty to monitor could not have been at odds with their overarching fiduciary duty under ERISA to "avoid[] . . . conflicts of interest." *Mertens,* 508 U.S. at 252. In other words, the Grace Defendants could not have been required to take any action that would jeopardize State Street's independence. Plaintiffs would require that they do just that by prying into the reasons for State Street's decision and then stopping it from selling the Grace stock to effectuate that decision. Plaintiffs cite no support for such an incredible result, nor can they.

The only other argument made in Plaintiffs' motion that arguably implicates the Grace Defendants is their request for a declaration by this Court on the appropriate theory to measure damages, should they be awarded summary judgment.[5] In response to this argument, the Grace

---

[4] *See* n. 1, *supra*.

[5] Although Plaintiffs do not move for summary judgment on the co-fiduciary liability claim asserted against the Grace Defendants in their complaint – indeed, they do not even mention or reference that claim at all – they do make one allusion in their brief that arguably invokes a theory of co-fiduciary liability. In addressing the duty to monitor claim, Plaintiffs cite *Jackson v. Truck Drivers' Union Local 42 Health and Welfare Fund,* 933 F. Supp. 1124, 1140-41 (D. Mass. 1996), for the proposition that "[a] fiduciary can be held liable for the acts or omissions of his delegate if, *inter alia,* 'he has knowledge of a breach by such other fiduciary [or delegate], unless he makes reasonable efforts under the circumstances to remedy the breach.'" The type of liability being referred to by the *Jackson* court in this quote is, of course, co-fiduciary liability under ERISA § 405(a), not liability for a breach of a duty to monitor. And as the Grace Defendants point out in their Summary Judgment Brief (p. 15), this type of co-fiduciary liability does not apply in a situation where, as here, an investment manager has been appointed. ERISA § 405(d); *Beddall v. State Street Bank & Trust Co.,* 137 F.3d 12, 23 (1st Cir. 1998).

5

Defendants hereby incorporate by reference the arguments against the Plaintiffs' unusual request set forth in State Street's opposition brief.[6]

For all the foregoing reasons, the Grace Defendants respectfully request that this Court deny Plaintiffs' motion for summary judgment.

Dated: August 31, 2007            Respectfully Submitted,

/s/ Matthew C. Hurley_____
William W. Kannel (BBO# 546724)
(wkannel@mintz.com)
Matthew C. Hurley (BBO# 643638)
(mchurley@mintz.com)
MINTZ, LEVIN COHN, FERRIS, GLOVSKY and POPEO, P.C.
One Financial Center
Boston, MA 02111
Telephone: (617) 542-6000
Facsimile: (617) 542-2241

- and -

Carol Connor Cohen
(cohen.carol@arentfox.com)
Nancy S. Heermans
(heermans.nancy@arentfox.com)
Caroline Turner English
(english.caroline@arentfox.com)
Jeffrey H. Ruzal
(ruzal.jeffrey@arentfox.com)
Valerie N. Webb
(webb.valerie@arentfox.com)
ARENT FOX LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 857-6054
Facsimile: (202) 857-6395

---

[6] It bears repeating that a viable duty to monitor claim by Plaintiffs against the Grace Defendants is dependent on their having a successful fiduciary breach claim against State Street. *See* Grace Defendants' Summary Judgment Brief at 10-11. In other words, if this Court grants summary judgment for State Street, the Grace Defendants are entitled to summary judgment as well. *See In re Syncor ERISA Litigation*, 410 F. Supp. 2d 904, 913 (C.D. 2006).

*Counsel for Defendants W. R. Grace & Co., W. R. Grace & Co. Investment and Benefits Committee, John F. Akers, H. Furlong Baldwin, Ronald C. Cambre, Marye Anne Fox, John J. Murphy, Paul J. Norris, Thomas A. Vanderslice, Fred E. Festa and Robert M. Tarola*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **KERI EVANS, et al.,**  )<br>  )<br>           **Plaintiffs,**  )<br>  )<br>v.  )<br>  )<br>**JOHN F. AKERS, et al.,**  )<br>  )<br>           **Defendants.**  )<br>_____)<br>  )<br>**LAWRENCE W. BUNCH, et al.,**  )<br>  )<br>           **Plaintiffs,**  )<br>  )<br>v.  )<br>  )<br>**W. R. GRACE & CO., et al.,**  )<br>  )<br>           **Defendants.**  )  | **Consolidated Under**<br>**Case No. 04-11380-WGY** |

## CERTIFICATE OF SERVICE

   I hereby certify that on August 31, 2007, I filed *The Grace Defendants' Opposition to the Bunch Plaintiffs' Motion For Summary Judgment* through the ECF system. It was sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies were sent to those indicated as non-registered participants on August 31, 2007.

                                                                        /s/ Matthew C. Hurley