## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

KERI EVANS,

                Plaintiff,

v.

JOHN F. AKERS, *et al.*

                Defendants.

LAWRENCE W. BUNCH, *et al.*

                Plaintiffs,

v.

W.R. GRACE & CO., *et al.*

                Defendants.

Consolidated as:
Case No. 04-11380-WGY

## STATE STREET BANK AND TRUST COMPANY'S OPPOSITION TO MOTION OF THE BUNCH PLAINTIFFS FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ............................................. 1

    A.    State Street Properly Identified and Considered All Material Factors .................. 4

        1.    The Fact That Grace Was, During The Relevant Period A "Vibrant Company," Says Nothing About The Prudence of Grace's Common Stock As A Plan Investment ...................................................... 4

        2.    The Issue Was Equity Value, Not Operating Results .............................. 5

        3.    Grace Consistently Warned Of Risk To Equity ...................................... 6

    B.    The Fact That Grace Stock Traded In An Efficient Market Did Not Render The Stock "Per Se" Prudent Under ERISA ...................................................... 10

    C.    ERISA Required That State Street Consider The Prudence of the Grace Stock Standing Alone ............................................................................ 14

    D.    Plaintiffs' Proffered Damages Formulation Rests On Improper Factual Assumptions And Is Not Appropriate For Summary Judgment ........................ 16

II.    CONCLUSION ................................................................................................. 19

# TABLE OF AUTHORITIES

**Page**

## CASES

Beddall v. State Street Bank & Trust Co.,
    137 F.3d 12 (1st Cir. 1998) ............................................................................ 15

DiFelice v. U.S. Airways,
    2007 WL. 2192896 ....................................................................................... 15

DiFelice v. U.S. Airways, Inc.,
    397 F. Supp. 2d 758 (E.D. Va. 2005) ............................................................ 3

DiFelice v. U.S. Airways, Inc.,
    2007 WL 2192896 (4th Cir. Aug. 1, 2007) ............................................. 11, 13

Felber v. Estate of Regan,
    117 F.3d 1084 (8th Cir. 1997) ...................................................................... 18

Home Placement Service, Inc. v. Providence Journal Co.,
    739 F.2d 671 (1st Cir. 1984) ........................................................................ 17

Kuper v. Iovenko,
    66 F.3d 1447 (6th Cir. 1995) ........................................................................ 18

LaLonde v. Textron, Inc.,
    369 F.3d 1 (1st Cir. 2004) ............................................................................ 16

Langbecker v. Electronic Data Systems Corp.,
    476 F.3d 299 (5th Cir. 2007) .................................................................. 15, 19

Metzler v. Graham,
    112 F.3d 207 (5th Cir. 1997) ......................................................................... 3

Summers v. State Street Bank & Trust Co.,
    453 F.3d 404 (7th Cir. 2006) .................................................................. 11, 12

Ulico, supra,
    335 F. Supp. 2d at 340 .................................................................................. 3

In re Unisys Sav. Plan  Litigation,
    74 F.3d 420 (3d Cir. 1996) .............................................................. 15, 16, 18

Williams Cos. ERISA Lit.,
    271 F. Supp. 2d 1328 (N.D. Okla. 2003) ..................................................... 16

## TABLE OF AUTHORITIES
### (continued)

Page

### STATUTES

29 C.F.R. § 2550.404(b) ........................................................................................ 15

29 U.S.C. § 1002(18) ............................................................................................ 11

29 U.S.C. § 1109(a) .............................................................................................. 18

Fed. R. Civ. P. 56 ............................................................................................. 1, 17

State Street Bank & Trust Company and State Street Global Advisors (collectively, "State Street") oppose the Plaintiffs' motion for summary judgment.

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs' motion for summary judgment is remarkable for what it does *not* say. Specifically, Plaintiffs do *not* contest that State Street was fully qualified to act as independent investment manager of the company stock fund of the W. R. Grace & Co. 401(k) plan (the "Plan"). Plaintiffs do *not* dispute the substantial record evidence showing that State Street undertook a comprehensive and detailed process to review the Plan's Grace stock investment. Plaintiffs do *not* pursue (or make any reference to) their original claims of self-dealing or conflict of interest against State Street. Finally, Plaintiffs make *no* claim that the Grace stock was sold for anything other than fair market value.

Instead, Plaintiffs seek to have the Court second-guess the outcome of a prudent process and re-weigh, in hindsight, the factors considered by State Street. Plaintiffs' motion should be denied. First, Plaintiffs propose as a legal standard – incorrect under ERISA – that the Court conduct a *de novo* review and decide for itself whether the Grace stock should have been retained in the Plan. Second, the motion is based on a selective reading and reinterpretation of certain isolated facts and circumstances that were properly identified and considered by State Street. Last, Plaintiffs request a declaration regarding the purported test for the calculation of damages that fails to meet the standard for summary judgment under Fed. R. Civ. P. 56 and rests on flawed and unsubstantiated assumptions. Accordingly, State Street respectfully requests that Plaintiffs' motion for summary judgment be denied in its entirety, and that the Defendants' motions for summary judgment be granted.

Plaintiffs' motion for summary judgment fails – indeed, their claims of ERISA breach fail – because the undisputed facts establish that State Street satisfied its duty to the participants by employing appropriate methods to investigate the merits of holding versus selling the Grace stock. State Street retained qualified legal and financial advisors to analyze Grace's financial situation and the Grace stock. Supported by the professionals in State Street's own Independent Fiduciary Group, the State Street Fiduciary Committee (itself consisting of highly-qualified investment professionals) properly identified and considered the material factors affecting the value of the Grace stock and its suitability as an investment for the Plan, including:

- the market price for Grace stock;

- information regarding the Grace Plan;

- the Grace bankruptcy;

- the financial performance and outlook of the company and other companies in its industry sector;

- factors affecting the future value of Grace stock;

- Grace's unliquidated, contingent asbestos liabilities;

- insurance coverage for those liabilities;

- SEC requirements and restrictions pertaining to sale of the company stock;

- communications made to the Plan participants; and

- the risks generally to the Plan of both holding and selling the Grace stock.[1]

Having employed appropriate methods and considered appropriate factors, State Street's Fiduciary Committee voted to sell the Grace stock from the Plan, and commenced a measured selling program. All of the stock, which is freely traded on the New York Stock Exchange, was

---

[1] *See* Statement of Undisputed Facts in Support of State Street Bank & Trust Company's Motion for Summary Judgment (Ct. File No. 185) ("State Street SOF") ¶ 44.

sold at or above the market price (and the vast majority was sold at a premium to the market). State Street SOF ¶¶ 69, 86-87.

Critically, Plaintiffs are not arguing that State Street failed to consider any source of material public information bearing on the Grace stock. Instead, Plaintiffs selectively isolate certain information admittedly considered by State Street and argue essentially that State Street misinterpreted that information. This type of second-guessing in hindsight is precisely what the courts have held is improper for reviewing the investment decisions of ERISA fiduciaries. "ERISA fiduciaries with responsibility for selecting and terminating plan investment options for plan participants are required to exercise investment judgment in the context of constantly changing, complex financial markets. In doing so, these fiduciaries are entitled to substantial latitude and their judgments must not be assessed using 20/20 hindsight." *DiFelice v. U.S. Airways, Inc.,* 397 F. Supp. 2d 758, 773 (E.D. Va. 2005) (citing *Ulico, supra,* 335 F. Supp. 2d at 340), *aff'd* 2007 WL 2192896, No. 06-1892 (4th Cir. Aug. 1, 2007). See also *Metzler v. Graham,* 112 F.3d 207, 209 (5th Cir. 1997) (because ERISA fiduciaries must act "with the care, skill, prudence, and diligence under the circumstances then prevailing," 29 U.S.C. § 1104(a)(1)(B), their actions are to be "evaluated at the time of the investment without the benefit of hindsight").

Plaintiffs' have not pointed to a single material factor that State Street failed to consider in its analysis; rather, they have taken issue only with how State Street assessed certain factors before it. As the case law set forth above makes clear, that kind of second-guessing is inappropriate under ERISA.

A.     **State Street Properly Identified and Considered All Material Factors.**

As noted, the appropriate standard for this Court to review Plaintiffs' claim is whether State Street satisfied its duty to the participants by employing appropriate methods to investigate the merits of holding versus selling the Grace stock.  Plaintiffs improperly seek a *de novo* review of State Street's decision and pick out isolated factors from among the many identified and considered by State Street as purportedly supporting a different outcome.  However, the undisputed record demonstrates amply not only that State Street considered all material factors in deciding that continuing to hold the Grace stock was not consistent with ERISA, but also that it assessed those factors properly in making its determination.  Thus, even if the Court were to undertake its own analysis of the merits of State Street's decision, there would be no basis for overruling State Street's judgment.

1.     **The Fact That Grace Was, During The Relevant Period A "Vibrant Company," Says Nothing About The Prudence of Grace's Common Stock As A Plan Investment.**

Plaintiffs first contend that State Street "ignored" information that Grace, which had filed for Chapter 11 bankruptcy on April 2, 2001, "remained a vibrant company" with positive operating results.  Pl. Mem. at 2-5.  State Street did not "ignore" Grace's enterprise value or its economic results.  It just did not, in the final analysis, give that factor as much weight as the Plaintiffs would have liked.  It is undisputed that State Street retained a qualified independent valuation firm, Duff & Phelps LLC, to conduct an assessment of Grace's operations, its enterprise value, and its financial information.  *See* State Street SOF ¶ 31.  Among the information considered by State Street were the public statements of Grace's management

regarding the prospects for the company in bankruptcy.[2]  As those public statements make clear, there is a vast distinction between positive operating results for a company in bankruptcy and the question of whether the company's common stock will retain value at the end of that process. State Street's evaluation properly took into account *all* of the public information material to the Plan's Grace stock investment, not simply whether Grace as a *company* would survive the bankruptcy process.

**2.    The Issue Was Equity Value, Not Operating Results.**

Retained to serve as Independent Investment Manager of the Grace Stock Fund, State Street was called upon to discharge a singular obligation:  to decide whether the Grace Stock Fund's continued holding of Grace stock was prudent under ERISA.  The suitability of Grace stock as a retirement plan investment turned in large measure on the material risk that, in the ultimate resolution of the Grace bankruptcy, the common stock might be diluted or cancelled outright to satisfy the contingent asbestos liabilities facing the company.  To assess this risk, State Street and its advisors evaluated a variety of complex factors, such as the enterprise value of the company, the potential size of the company's asbestos liabilities, the impact and timing of a number of contingent developments that could affect those liabilities (including litigation and legislative outcomes), and the anticipated timing of the plan of reorganization.

The facts and circumstances that State Street identified and considered more than adequately supported the conclusion that State Street reached:  that adverse outcomes with respect to one or more of those contingencies would likely result in a very substantial decline in

---

[2] As Plaintiffs acknowledge, State Street and its advisors also interviewed company executives, including Grace's General Counsel David Siegel, the executive principally responsible for addressing Grace's asbestos liabilities.  See Exhibit "E" to Pl. Mem. (November 26, 2003 Memorandum from Daniel Glosband of Goodwin Procter).

the value of Grace stock, perhaps to zero. And, if that occurred, given the size of its holdings of

Grace stock, the Plan would likely not be able to react quickly to any change in circumstances.

State Street SOF ¶ 61. In other words, State Street had more than sufficient grounds to conclude

that there was an unacceptable risk that the Grace Stock Fund would be unable to liquidate its

significant holdings of common stock in the event of an adverse development. Based on this

evaluation, State Street decided in its discretion that the stock should be sold while the prevailing

market price still allowed the Fund to obtain fair value for that investment. Whether Grace *as a*

*company* would retain value post-bankruptcy was not, as Plaintiffs suggest, the relevant question.

The issue for State Street was whether the *Grace common stock* would survive bankruptcy in

sufficiently undiluted form to make continued holding of that stock prudent. And on that

question, the record is overwhelming: the Grace common stock faced severe risk.

The Department of Labor's ERISA regulations make clear that the "prudence"

requirements of the statute "*are satisfied* if the fiduciary: (i) [h]as given "appropriate

consideration to those facts and circumstances that, given the scope of such fiduciary's

investment duties, the fiduciary knows or should know are relevant to the particular investment

or investment course of action involved," and "(ii) [h]as acted accordingly." 29 C.F.R. §

2550.404a-1(b)(1) (emphasis added). Plaintiffs' attempt to have this Court second-guess State

Street's considered evaluation of these facts and circumstances must fail as a matter of law.

### 3.    Grace Consistently Warned Of Risk To Equity.

Plaintiffs' assertion that Grace management "always represented to the investing public

… that its shareholders would receive equity" at the conclusion of the bankruptcy process (Pl.

Mem. at 3) is simply incorrect. Grace's pronouncements consistently distinguished between

management's expectations for the prospects of company as a whole versus that of the equity

holders.  At all times Grace's management was extremely careful *not* to predict any positive

outcome for the holders of Grace's common stock, including the Plan.  Precisely the opposite

was true.

In its first quarterly report released after filing for bankruptcy, Grace's management

stated that, by filing for bankruptcy, "Grace expects to be able to both obtain a comprehensive

resolution of the claims against it and preserve the inherent value of its businesses."  But Grace's

management expressed no such expectation for its common stock:

> As a consequence of the Filing, all pending litigation against the
> Debtors is stayed and no party may take any action to realize its
> pre-petition claims except pursuant to order of the Bankruptcy
> Court.  It is the Debtors' intention to address all of their pending
> and future asbestos-related claims and all other pre-petition claims
> in a plan of reorganization.  *However, it is currently impossible to*
> *predict with any degree of certainty how the plan will treat*
> *asbestos and other pre-petition claims and the impact the Filing*
> *and any reorganization plan may have on the shares of common*
> *stock of Grace.*  The formulation and implementation of a plan of
> reorganization could take a significant period of time.

W. R. Grace & Co. Form 10-Q, Filed May 15, 2001 (for the period ending March 31, 2001) at I-

6 attached as Exhibit 4 to the Declaration of Scott M. Flicker in Support of State Street Bank and

Trust Company's Opposition to Motion of the Bunch Plaintiffs for Summary Judgment ("Flicker

Declaration"); the Flicker Declaration is attached hereto as Exhibit 2.[3]

---

[3]  In the letter cited by Plaintiffs (Pl. Mem. at 3), Grace's CEO, Paul Norris, expressed no views
about the impact of bankruptcy on shareholders' equity.  *See* Letter from Paul Norris, Exhibit
"D" to Pl. Mem.  Plaintiffs are also incorrect about the date of that letter.  It was not issued, as
Plaintiffs contend, "almost simultaneous with" State Street's sale of the Grace stock in February-
April 2004.  Pl. Mem. at 3.  As the context of the letter makes clear, it was written and released
at the time of Grace's bankruptcy filing, in April 2001, not in May 2004 as the Plaintiffs contend.
*See* Declaration of Eric Eller in Support of Opposition to Plaintiffs' Motion for Summary
Judgment (attached hereto as Exh. 1).

- 7 -

Plaintiffs rely on the transcript of a March 19, 2003 "Town Hall Meeting" presentation by Mr. Norris and Mr. Siegel as accurately conveying the company's expectations regarding the fate of the common stock and the impact on the stock of Grace's asbestos liabilities in bankruptcy.[4]  State Street agrees.  The document paints a candid picture of management's views, in the months leading up to State Street's engagement.  In that presentation, management repeatedly distinguished between the ongoing business prospects for Grace (positive) and the prospects for the Grace stock (uncertain).  Thus, Mr. Norris stated:

▪    As I said many times during our conversations, unfortunately our stock no longer trades on the fundamentals of our business performance, *it trades on people's speculation as to the outcome of the Chapter 11 performance, specifically on how we're going to manage[] our liabilities and the size of the liabilities, specifically the size of our asbestos liabilities.*  Pl. Mem., Exh. "A" at GRA-B2 006086 (emphasis added).

▪    And the reason we're doing it [restricting new investment in the Plan's Grace Stock Fund] is several-fold.  One is the continuance and sort of *speculative nature of our stock based on the liabilities and Chapter 11 process.*  And secondly is [the] fact that we hope and expect that during the next year we're going to get into very serious discussions about our reorganization plan.  *And the consequence of that plan on shareholders is really undetermined.*  As I said, it [could] be very good for shareholders, *or it could end up with our shareholders having no equity in the new company.  And there isn't any way for us to [predict] the outcome at this time.*  Pl. Mem., Exh. "A" at GRA-B2 006087 (emphasis added).

▪    I'd like to reiterate.  The Chapter 11 process protects the businesses, and as such protects the employees, because it allows us to have funding, to continue to operate as normal.  *What happens at the end is the decision about whether our equity belongs to our shareholders, or whether our equity needs to go to our creditors in order to satisfy our obligation[s], either our asbestos obligations, our bank obligations or trade obligations.*  Pl. Mem., Exh. "A" at GRA-B2 006095 (emphasis added).

---

[4] *See* Exhibit "A" to Pl. Mem.  The document bears the date of March 13, 2003, but the correct date of the meeting was March 19, 2003.  This difference is not material.

In the meeting, Mr. Siegel, the General Counsel, also addressed the impact of the

bankruptcy process on shareholders in other cases and the expectation for Grace stock:

> ▪ The most likely result in an asbestos-related bankruptcy is that the plan [of reorganization] is going to include something called the 524G Trust. … Under 524G, [at least] 50 percent of the [debtor] Company's stock has to be at risk. And what that means is that the value has to be available to pay asbestos liability in the future if it's needed. ***What's happened in other asbestos bankruptcies that have gone through is that at least 50 percent of the stock has actually just been owned by the trust. In fact, in most cases it's been closer to 100 percent, or it has been 100 percent; shareholders got nothing.*** Pl. Mem., Exh. "A" at GRA-B2 006089 (emphasis added).

> ▪ Now, every one of these situation[s] is different. ***Our situation is different. Our stock currently reflects the uncertainty. It's trading at a fraction of what the value would be if it didn't have asbestos liability and we weren't in bankruptcy. But the big question in trying to figure out what the stock is worth is the one Paul mentioned before. It's how big are our liabilities?*** And we're first now starting on the process of figuring out how big those liabilities are and challenging them as part of the bankruptcy process. If we're very successful and we get the liabilities down to where we think they are, there could be value for shareholders that would be substantial. ***If we're not successful, the shares could be worth again, nothing, or next to nothing. At this point it's very, very speculative because we probably have a better view of what our liabilities are than anybody in the world, and we don't know where this is going to come out. So when outside investors make this call and they try to figure it out, they're guessing, and essentially gambling. And that makes it a very speculative investment, and unfortunately the stock price at this point doesn't really reflect our effort in running the businesses and how well we do.*** So until we get to the point where we have a process for evaluating the liabilities, we put some definition around that, we use that to negotiate a plan that our creditors will vote on and support, ***we really won't have a good feel for what shareholders are going to get.*** Pl. Mem., Exh. "A" at GRA-B2 006089-90 (emphasis added).

There can be no dispute, given Plaintiffs' reliance on this document, as to Grace's

expressed views regarding the bankruptcy, the company's asbestos liabilities, and the potential

impact of these factors on the Grace stock.[5]  State Street properly considered these factors in its evaluation of the prudence of the Grace stock as a Plan investment.

**B.** **The Fact That Grace Stock Traded In An Efficient Market Did Not Render The Stock "Per Se" Prudent Under ERISA.**

Plaintiffs next contend that, as a matter of law, the fact that the Grace stock traded in an efficient market "establishes that retention of the Grace stock fund was consistent with ERISA." Pl. Mem. at 11.  Plaintiffs thus posit a blanket exception to ERISA's general rule of prudence for certain classes of company stock purportedly trading in an efficient market.  As discussed at length in support of State Street's motion for summary judgment, this theory runs directly counter to ERISA, the Department of Labor's regulations and guidance, and decades of ERISA case law, imposing on fiduciaries an active obligation to ensure that all Plan investments within the scope of their discretion are prudent.  *See* Memorandum in Support of State Street Bank & Trust Co.'s Motion for Summary Judgment (Ct. File No. 184) ("State Street Mem.") at 15-17.

Moreover, efficient trading of the Grace stock, by itself, says nothing about the prudence of the stock as an investment for an ERISA-governed retirement plan, particularly an individual account plan under which participants could invest *all* of their retirement assets in the Grace Stock Fund.  As noted, ERISA and the Department of Labor's regulations require that fiduciaries give "adequate consideration" to the relevant "facts and circumstances," only one of which is (in the case of a publicly-traded security) the current market price for the stock.  State Street acted well within its discretion and in full accord with ERISA's prudence requirements in concluding,

---

[5] By the time of State Street's engagement in 2003, Grace's warnings about the impact of bankruptcy on shareholders' equity had grown even stronger:  "*The interests of the Company's shareholders could be substantially diluted or cancelled under a plan of reorganization.*  The formulation and implementation of the plan of reorganization is expected to take a significant period of time."  *See* W. R. Grace & Co. Form 10-Q, Filed November 10, 2003 (for the period ending Sept. 30, 2003) at I-6 (emphasis added) attached as Exhibit 5 to the Flicker Declaration.

- 10 -

after obtaining information on Grace's fundamental value and the contingencies affecting the

stock price, that the current New York Stock Exchange price offered more than fair value for the

Grace stock and commencing a program to sell that investment at or above the market price.[6]

The fact that the Grace stock was subject to trading meant only that, at the time, some

investors assigned a non-zero future value to the shares.  But as Grace's General Counsel David

Siegel stated at the March 19, 2003 "Town Hall" meeting, when outside investors were trying to

determine whether Grace's stock price would rise or fall after the company's asbestos liabilities

were assessed and a plan of reorganization entered, "they're guessing, and essentially gambling."

Far from trying to "second-guess the market," as Plaintiffs contend, State Street prudently

determined, in its discretion, that these investment conditions were inappropriate for the Grace

Stock Fund under ERISA, and it acted accordingly by divesting the Plan of the Grace stock.

Neither case cited by Plaintiffs (*Summers v. State Street Bank & Trust Co.,* 453 F.3d 404

(7th Cir. 2006) and *DiFelice v. U.S. Airways, Inc.,* 2007 WL 2192896, No. 06-1892 (4th Cir.

Aug. 1, 2007)) supports their "per se" prudence argument here.  Instead, the particular facts and

circumstances involved in those cases underscore the importance of evaluating the specific plan

language and the actions of the party accused of fiduciary breach in determining whether

ERISA's prudence requirements have been met.

*Summers* involved an employee stock ownership plan ("ESOP") for United Air Lines, the

terms of which required that the plan invest "exclusively in Company Stock."  453 F.3d at 405.

---

[6] Whether the market price for the stock reflects all available information is an inquiry that is relevant to ensuring that the price at which the investment is sold constitutes "adequate consideration" under ERISA.  *See* 29 U.S.C. § 1002(18).  Plaintiffs do not challenge the adequacy of the price obtained by State Street for the Grace shares, which were all sold at or above the then-prevailing New York Stock Exchange price.

State Street was a directed trustee with no discretionary authority over the company stock investment. *Id.* The plaintiffs argued that, in the wake of the events of September 11, 2001 and as the price of United's stock was falling, ERISA required that State Street, as trustee, sell the company stock out of the ESOP. The district court granted summary judgment to State Street, and the Seventh Circuit affirmed. The question before the court was whether State Street, a directed trustee duty-bound to follow the terms of the plan and the proper directions of the named fiduciary, nonetheless was required under ERISA to ignore the plan's requirements and the fiduciary's directions to hold the trust assets in the form of company stock. *Id.* In the context of that plan and State Street's nondiscretionary role, the Seventh Circuit held that State Street had no *obligation* in discharging its duties to try to out-guess the market and sell the company stock. 453 F.3d at 408. In other words, the Court held that it would not second-guess State Street's judgment that continuing to hold the company stock was not inconsistent with ERISA. The same standard should apply here. Nothing in *Summers* or the nature of the public market for Grace stock justifies Plaintiffs' attempt to second-guess the outcome of State Street's decision in this case.

In *DiFelice,* U.S. Airways, the named fiduciary responsible for all the investment options in the U.S. Airways 401(k) plan, was accused of breaching ERISA by allowing the company stock to remain as a plan investment option during the post-September 11 period, when the company experienced a severe financial downturn and eventually slid into bankruptcy. The Fourth Circuit affirmed the district court's verdict that U.S. Airways did not violate ERISA by holding the stock and thereafter retaining an independent investment advisor, who shut the stock fund to new investment and, after U.S. Airways filed for bankruptcy, directed that the stock fund

be closed. *DiFelice,* 2007 WL 2192896 at *3-4.[7]  As was the case here, throughout the period of their analysis, the U.S. Airways fiduciaries constantly tracked the company's stock price. However, neither the Fourth Circuit nor the district court cited the fact that the U.S. Airways shares traded in the public markets as sufficient justification for retaining that stock as an investment for the retirement plan.  Instead, both courts properly focused on whether U.S. Airways "engaged in a reasoned decisionmaking process, consistent with that of a 'prudent man acting in like capacity.'" *Id. at* *7 (quoting 29 U.S.C. § 1104(a)(1)(B)).  There, as here, the fiduciary "monitored the performance of the Company Fund, and evaluated its continued suitability." *Id.*  There, as here, the fiduciaries met formally and informally a number of times, and engaged qualified outside advisors.  *Id.*  And the courts did not focus on the outcome of the fiduciaries' decision (*i.e.,* whether the decision to retain or sell the stock turned out to be, in hindsight, the most profitable for the plan).  Rather, the inquiry was whether U.S. Airways "met its fiduciary duty to engage in a reasoned, 'prudent' decisionmaking process, using 'appropriate methods to investigate the merits' of retaining the Company Fund as an investment option." *DiFelice, Id at* *8.  The courts found there (as is the case here), that the standard was readily met.[8]

---

[7] Notably, by the time the independent investment advisor closed the company stock fund, the U.S. Airways Group shares were worthless and the plan participants received nothing for them. *Id at* *4.

[8] The Fourth Circuit did not hold, as Plaintiffs contend, that "premature elimination of a company stock fund is dangerous, causes injury to plan participants and is an action that is not in the best interest of plan participants."  Pl. Mem. at 12-13.  The court of appeals found that U.S. Airways harbored a "'well-founded' belief" that the company would avoid bankruptcy (a belief that turned out, in hindsight, to be incorrect) and thus met its duty of loyalty to the participants by acting on that belief in holding the shares.  *DiFelice,* 2007 WL 2192896 at *8.  Here, State Street concluded, after a reasonable investigation, that the risk to Grace's equity value was sufficient to warrant selling the shares.  In so doing, State Street acted solely in the best interests of the plan participants.

C.    **ERISA Required That State Street Consider The Prudence of the Grace Stock Standing Alone.**

Again citing *DiFelice*, Plaintiffs contend that State Street breached its fiduciary duty by considering prudence of the Grace stock fund in isolation, rather than in the context of the Plan's other investment options.  In other words, Plaintiffs contend, no matter how risky the Grace Stock Fund might have been when considered in isolation, under Modern Portfolio Theory, as part of a well-diversified portfolio, offering the Grace stock was prudent as a matter of law, and State Street was not permitted to sell it.  As State Street explained in support of its motion for summary judgment (State Street Mem. at 17-19), both ERISA and the Fourth Circuit in *DiFelice* soundly reject Plaintiffs' position.[9]

As an initial matter, the Department of Labor's prudence regulation refutes entirely Plaintiffs' argument that State Street was required to evaluate the Grace Stock Fund in the context of the entire Grace Plan portfolio.  As Independent Investment Manager for the Grace Stock Fund (as opposed to the entire Grace Plan portfolio), State Street's mandate was to give

---

[9] Two of Plaintiffs' assertions on this point can be readily dispatched.  First, Shawn Johnson of State Street's Fiduciary Committee did not, as Plaintiffs contend, "acknowledge[] that if State Street had considered the Plan's entire portfolio, State Street would have determined that the Grace Stock Fund was consistent with ERISA." Pl. Mem. at 8.  In the Fiduciary Committee meeting minutes cited by Plaintiffs (Exhibit "T" to their motion), Mr. Johnson was *contrasting* the Grace Stock Fund's large, concentrated holding of Grace stock, which the Committee determined in February 2004 was an imprudent investment for the Plan, with unrelated investment funds that held small amounts of Grace shares from among *2000 to 3000 different stocks* in so-called "index funds" designed to replicate the Russell 2000 or 3000 indices, of which Grace is a component.  *See, e.g.,* http://www.russell.com/indexes/pdf/membership/R2000.pdf.  In no case was Mr. Johnson or the Fiduciary Committee observing that the Grace Stock Fund, when considered among the other fund options offered by the Plan, "would be" prudent.  Second, Ms. Driscoll did not testify, as Plaintiffs assert, that "State Street was unaware" of the percentage of the Plan that was invested in Grace stock or the other investment features of the Plan.  Pl. Mem. at 8.  The portion of the deposition transcript cited by Plaintiffs established only that *at the time the deposition was conducted,* more than three years after the Fiduciary Committee conducted its evaluation, Ms. Driscoll could not recall those specific facts or whether they were a factor in the Committee's decision.  *See* Deposition Excerpts, attached as Exhibit "S" to Plaintiffs' motion, at 76:14-77:22.

"appropriate consideration to those facts and circumstances that, *given the scope of such fiduciary's investment duties,* the fiduciary knows or should know are relevant *to the particular investment or investment course of action involved,* including the role the investment or investment course of action plays in *that portion of the plan's investment portfolio with respect to which the fiduciary has investment duties*…." 29 C.F.R. § 2550.404(b) (emphasis added). As a fiduciary with investment duties for the Grace Stock Fund only, State Street's obligation was to evaluate only the prudence of "that portion of the plan's investment portfolio," a duty State Street discharged in strict accordance with ERISA. *See Beddall v. State Street Bank & Trust Co.,* 137 F.3d 12, 18 (1st Cir. 1998) (a person is a plan fiduciary "only 'to the extent' that he possesses or exercises the requisite discretion and control" over the plan or its assets) (quoting 29 U.S.C. § 1002(21)(A)).

Thus, the scope of State Street's investment duties for the Grace Stock Fund can be contrasted with that of the fiduciaries in *DiFelice,* where, as noted, U.S. Airways had responsibilities for *all* of the investment opportunities in the 401(k) plan. But even in that circumstance, as the Fourth Circuit in *DiFelice* held, Plaintiffs' "prudent portfolio" argument is unavailing. "[T]he prudence of investments or classes of investments offered by a plan must be judged individually." *DiFelice v. U.S. Airways,* 2007 WL 2192896 at *10 (citing *Langbecker v. Electronic Data Systems Corp.,* 476 F.3d 299, 308 n.18 (5th Cir. 2007) and citing *In re Unisys Sav. Plan Litig.,* 74 F.3d 420, 438-41 (3d Cir. 1996)). "That is, a fiduciary must initially determine, and continue to monitor, the prudence of *each* investment option available to plan participants. Here the relevant 'portfolio' that must be prudent is *each* available Fund considered on its own, including the Company Fund, not the full menu of Plan funds." *Id.* The Fourth Circuit reasoned that "a fiduciary cannot free himself from his duty to act as a prudent man

simply by arguing that other funds, which individuals may *or may not* elect to combine with a company stock fund, could theoretically, in combination, create a prudent portfolio." *Id.* To adopt the alternative view, the court held, "would mean that any single-stock fund, in which that stock existed in a state short of certain cancellation without compensation, would be prudent if offered alongside other, diversified Funds. Any participant-driven 401(k) plan structured to comport with section 404(c) of ERISA would be prudent, then, so long as a fiduciary could argue that a participant could, and should, have further diversified his risk." *Id.* (citations omitted). This result, the court found, "would be perverse in light of the Department of Labor's direction that selection of prudent plan *options* falls within the fiduciary duties of a plan administrator." *Id.*[10]

## D. Plaintiffs' Proffered Damages Formulation Rests On Improper Factual Assumptions And Is Not Appropriate For Summary Judgment.

Finally, Plaintiffs seek "a Summary Judgment that holds that the proper measure of damages is to determine the value of the Plan if it had retained the Grace Stock Fund." Pl. Mem. at 20. Plaintiffs' request is improper. Under Fed. R. Civ. P. 56(c), summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is

---

[10] Plaintiffs are simply wrong when they state (Pl. Mem. at 13) that "[t]he law is settled that retention of company stock in a retirement plan is presumed consistent with ERISA." The First Circuit, in reviewing the so-called "ESOP presumption" cases, refused to accept any such "hard-and-fast rule" in this "important and complex area of law[.]" *LaLonde v. Textron, Inc.,* 369 F.3d 1, 6 (1st Cir. 2004). Moreover, for the reasons elaborated by the Fourth Circuit in *DiFelice, supra,* the Department of Labor has consistently required that fiduciaries for *all* ERISA-governed retirement plans (whether they are ESOPs or, as is the case here, individual account 401(k) plans) must evaluate the prudence of company stock offerings within the plan. *See also Williams Cos. ERISA Lit.,* 271 F. Supp. 2d 1328, 1343 (N.D. Okla. 2003) (a plan fiduciary with the duty to decide or present its views on the wisdom of investment options, may breach its fiduciary duty by failing to address the need to eliminate, or at least to consider eliminating plan sponsor stock as one of the investment alternatives). In other words, whether or not such a "presumption" would be accepted in this Circuit, it cannot supplant the exercise of judgment that State Street applied in this case.

entitled to [summary] judgment as a matter of law." But determination of damages is inherently "a mixed question of fact and law." *Home Placement Service, Inc. v. Providence Journal Co.*, 739 F.2d 671, 679 (1st Cir. 1984). And embedded in Plaintiffs' proffered formulation are substantial factual issues on which Plaintiffs carry the burden and for which they have adduced *zero* evidence. Specifically, Plaintiffs contend in their motion that this Court should decide, as a matter of law, that damages are properly measured as "the value of the shares of Grace common stock that State Street sold as of the date of judgment less the proceeds that the Plan received from the sale." Pl. Mem. at 19.

As an initial matter, this formulation must be rejected because it fails to account (as it must) for the investment returns earned by participants on the proceeds of the Grace stock sale. But more importantly, Plaintiffs' formulation erroneously assumes that *all* of the shares of Grace stock that were in the Plan between February 2004 and April 2004 would still be there at the time of trial, more than three years later. That predicate rests on several material issues of disputed fact, including (i) absent the divestment of the Grace stock, what percentage of the participants would have sold Grace stock from the Plan before trial, and at what prices; (ii) how many participants cashed out of the Plan altogether in the three years between State Street's engagement and trial; and (iii) how many participants re-allocated the Grace stock sale proceeds from the Fixed Income Fund to other investment options within the Plan, and what return did they earn on those funds[11] Each of these factual issues, which Defendants have placed in issue in response to Plaintiffs' damages calculations, is material to the question of how much Grace stock

---

[11] Also material is the question of mitigation, particularly what opportunity the participants who disagreed with State Street's decision took to mitigate the effects of the sale, including acquiring shares of Grace stock outside the Plan. One of the named plaintiffs, David Mueller, did just this, by borrowing money and purchasing Grace stock outside the Plan. *See* Mueller Dep., at 105 and 113-115, attached as Exhibit 2 to the Flicker Declaration.

would be in the Plan absent State Street's decision to sell it in 2004. *See* Deposition of Chris James at 142-144, attached as Exhibit 1 to the Flicker Declaration. Yet in their motion, Plaintiffs proffer no *facts,* disputed or otherwise, to support their formulation.

Moreover, Plaintiffs' damages formulation must be rejected on other grounds. Under ERISA, a fiduciary is responsible *only* for those losses actually resulting from that fiduciary's breach of duty. 29 U.S.C. § 1109(a). If no loss results, there is no liability. *See, e.g., Felber v. Estate of Regan*, 117 F.3d 1084 (8th Cir. 1997); *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 445 (3d Cir. 1996); *Kuper v. Iovenko*, 66 F.3d 1447 (6th Cir. 1995). Here, Plaintiffs' proffered damage formulation could result in an inappropriate "windfall" because participants in this case suffered no actual damage as a result of the sale of Grace stock at prices equal to or above the prevailing market price. Participant accounts whose holdings were transferred out of the Grace Stock Fund as a result of these sales were credited with an equivalent value of units in the Plan's Fixed Income Option. State Street SOF ¶ 88. There is no dispute in this case that the Fixed Income Option was a prudent investment alternative. Participants were free to reallocate those funds to any of the other available investment options within the Plan. State Street SOF ¶ 88. A participant who did nothing and merely left his or her account invested in the Fixed Income Option from March/April 2004 to June 2007 would have earned a significant, positive return during that period. SOF ¶ 89. Where plan participants did not suffer a loss but merely "fail[ed] to realize gains (measured against some entirely speculative standard)" or seek "catch-up amounts where participants *bought into* a declining" investment, a damage award might well be improper. *Langbecker v. Electronic Data Systems Corp.*, 476 F.3d 299, 312 (5th Cir. 2007). To award damages based on Plaintiffs' proffered formulation could result in an improper windfall. Accordingly, Plaintiffs' request for summary judgment on this formulation must be rejected.

II.    **CONCLUSION**

For the foregoing reasons, State Street respectfully requests that Plaintiffs' motion for

summary judgment be denied, and that summary judgment be granted on State Street's motion

dismissing all claims against it in First Amended Complaint, Court File No. 138.

Dated:  August 31, 2007                Respectfully submitted,

STATE STREET BANK AND TRUST COMPANY
By its counsel,

    /s/ Sean T. Carnathan
Sean T. Carnathan (BBO #636889)
(scarnathan@ocmlaw.net)
O'CONNOR, CARNATHAN, MACK LLC
8 New England Executive Park, Suite 310
Burlington, MA 01803
Telephone: (781) 359-9000
Facsimile: (781) 359-9001
-and-
Scott M. Flicker
(scottflicker@paulhastings.com)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th Street, NW
Washington, DC 20005
Telephone: (202) 551-1700
Facsimile: (202) 551-1705

## <u>CERTIFICATE OF SERVICE</u>

       I here certify that this Opposition and the documents filed in support of it through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on August 31, 2007.

    __August 31, 2007_____            __/s/ Sean T. Carnathan_____

Date                                   Sean T. Carnathan