**EXHIBIT 1 TO FLICKER DECLARATION**

```
        IN THE UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF MASSACHUSETTS


- - - - - - - - - - - - - - - -+
                                |
KERI EVANS,                     |
                                |
          Plaintiff,            |
                                |
   vs.                          |
                                |
JOHN F. AKERS, et al,           |
                                |
          Defendants.           |
                                |
- - - - - - - - - - - - - - - -+   Consolidated Case
                                |   No. 04-11380-WGY
LAWRENCE W. BUNCH, et al,       |
                                |
          Plaintiffs,           |
                                |
   vs.                          |
                                |
W.R. GRACE & CO., et al,        |
                                |
          Defendants.           |
--------------------------------x
```

Deposition of Christopher M. James, Ph.D.

Washington, D.C.

July 23rd, 2007

9:30 a.m.

Job No. 1-107695

Pages 1 - 174

Reported by: Laurie Bangart-Smith

1  whether State Street looked at any of the holding of
2  other institutions and the changes in those holdings?
3     A   I'm aware of some memos that the fiduciary
4  committee considered State Street's other holdings in
5  Grace stock.
6     Q   I think I didn't make the question clear
7  enough. Is there anything that you came across in
8  your work that indicated State Street was taking into
9  account in its decision-making process what other
10 institutional fiduciaries were doing?
11    A   Well, I think you need to be careful here.
12 You're taking a step -- some of these holders may
13 be -- some of the holdings in which the advisors or
14 institutional owners are listed here may be in
15 accounts where they are acting in some fiduciary role;
16 okay? My recollection is -- putting that aside, was
17 State Street aware of other institutional holding --
18 other institutional owners of Grace stock? Yes,
19 because they're listed in the Duff & Phelps report.
20    Q   Assume, if you will, that the law, as it was
21 related to you by a lawyer, required that the court
22 award damages to the plaintiffs in this case on what
23 the plan would have earned if the plan had continued
24 to maintain the Grace stock; okay? How would you
25 calculate the award of damages as instructed by -- on

1  that specific description of the law?

2          MS. COHEN:  Object to the form of the

3      question.

4          Go ahead and answer.

5          THE WITNESS:  So my understanding is you

6      want me to assume that the judge has directed me

7      to calculate damages using a particular

8      methodology that I may not agree with or think

9      that is economically sound.

10 BY MR. CUMMINS:

11      Q    Correct.

12      A    And the methodology that the judge directs

13 me to use is to determine what planholders would have

14 earned if they remained in the stock fund?

15      Q    Yes.

16      A    If I were given that direction, the first

17 question I would say is:  Is it reasonable to assume

18 that they would have remained in the stock fund simply

19 because they had a stock fund investment in 2004?  And

20 I presume the court would say, under those

21 circumstances, we need you to determine what the

22 holdings would likely have been for various plan

23 participants at various points in time and to also

24 look and not speculate as to what alternative

25 investments they went into.  So I would hope that the

```
 1  court would direct me not to speculate.
 2       Q   I think the court -- if you want to work
 3  through the assumption with me, I'll be happy to do
 4  that.  Assume that the court directs you in this way.
 5  There is literature that says -- economic literature
 6  that says plan participants tend to buy and hold the
 7  security, as do other investors.  Assume that that
 8  instruction is given as well.  Now what will you do?
 9       A   I would say to the court, you have evidence
10  available to you that you don't need to speculate as
11  to what a typical 401-K holder might do, that you can
12  look at historically what these 401-K holders did.  I
13  would also instruct the court to be very cautious
14  speculating on what these individuals would do,
15  because there are a number of other studies and
16  analysis that I've done, say in the context of Janus
17  Funds, that demonstrates that the turnover in 401-K
18  holding for a specific fund are fairly high, that -- I
19  would begin by cautioning the court not to speculate,
20  and that what you're asking -- I would tell the court,
21  you're asking me to engage in an exercise of
22  speculation that I deem unwarranted, that there is a
23  vestment -- there is information out there that would
24  lead the court to conclude with a reasonable degree of
25  certainty that perhaps the majority of the holders
```

1  would have divested themselves of a portion of the
2  Grace stock based on the historical sales.
3        I would also ask the court to consider such
4  things as the demographic profile of each holder to
5  determine whether it is correct to assume that they
6  would hold Grace shares from 2004 and 2007.  I would
7  ask the court to review carefully the proportion of
8  holders that cashed out of the plan over time, and I
9  would try, as an initial matter, to inform the court
10 as to why, using hindsight and using, you know, plan
11 holdings at the initiation, is incorrect.  If the
12 court were to direct me contrary to what I think sound
13 economic principles and my professional advice would
14 be to say, no, I want you to calculate -- assume the
15 value of the shares held as of 12/31/2003 and that
16 those shares would have been held through June 11th,
17 even for individuals who have regrettably passed away
18 and other things, I could provide them a number.  I
19 wouldn't think that it would be an economically valid
20 measure of damages, but I could certainly do it.
21    Q    And you didn't do that in this case?
22    A    No, because I don't think it's an
23 economically valid measure of damages, and even if the
24 court were to determine that that measure of damage
25 were appropriate, it would be sheer speculation to

1  assume that an individual holder, as of September or
2  April of 2004, December of 2003, would be holding the
3  same number of shares in June.
4  Q    And Mr. Grenadier --
5  A    Of 2007.
6  Q    Mr. Grenadier did do that?
7  A    Yes.
8  Q    Now, working through this a bit further,
9  your Putnam-proposed Plan of Distribution --
10 A    My Putnam?
11 Q    Janus?  Which one were you the IDC on?
12 A    Janus.
13 Q    Your Janus-proposed Plan of Distribution is
14 publicly available, correct?
15 A    Yes.
16 Q    And is it my understanding that it requires
17 a knowledge of each individual member of that class
18 investment profile?
19 A    Yes, it did.  It took into account their
20 holdings as of the date on which there were -- there
21 was trading by the 13 frequent traders that were
22 identified as -- someone referred to them as "market
23 timers."
24 Q    And did you do an event study in connection
25 with that work?  Let me go back.  Are you familiar