**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

KERI EVANS, *et al.*

                    Plaintiffs,

v.

JOHN F. AKERS, *et al.*

                    Defendants.

_____

LAWRENCE W. BUNCH, *et al.*

                    Plaintiffs,

v.

W. R. GRACE & CO., *et al.*

                    Defendants.

Consolidated as:
Case No. 04-11380-WGY

**DEFENDANTS' JOINT RESPONSES**
**TO PLAINTIFFS' RULE 56.1 STATEMENT OF UNDISPUTED FACTS**

Defendants W. R. Grace & Co. ("Grace" or "Company"), W. R. Grace & Co. Investment and Benefits Committee, John F. Akers, H. Furlong Baldwin, Ronald C. Cambre, Marye Anne Fox, John J. Murphy, Paul J. Norris, Thomas A. Vanderslice, Fred E. Festa, and Robert M. Tarola (collectively, the "Grace Defendants") and State Street Bank and Trust Company and State Street Global Advisors ("State Street") (collectively, "Defendants") jointly submit the

-1-

following responses to the "Bunch Plaintiffs' Statement of Uncontested Facts Pursuant to Local

Rule 56.1" submitted by Plaintiffs in support of their cross-motion for summary judgment.

Many of Plaintiffs' "undisputed facts and support" are not material to their motion for

summary judgment, mischaracterize and/or ignore the documents or deposition testimony that

they cite in support, or contain legal conclusions that do not accurately reflect an underlying fact.

Accordingly, while Defendants dispute the accuracy of some of Plaintiffs' "statements of fact,"

these disputes do not create a genuine issue of material fact that would preclude summary

judgment on behalf of State Street or the Grace Defendants.

PLAINTIFFS' STATEMENT OF FACT:

1.      *The Defendants in this action [sic] Fred E. Festa, Robert M. Tarola, John F. Akers, Henry Furlong Baldwin, Ronald C. Cambre, Marye Anne Fox, John J. Murphy, Thomas A. Vanderslice, Paul J. Norris, W.R. Grace Investment and Benefits Committee, and W.R. Grace & Co. (the "Grace Defendants" or "Grace"), and State Street Bank and Trust Company and State Street Global Advisors ("State Street" and "State Street Global Advisors" collectively referred to as "State Street").*

RESPONSE:

Undisputed, except to note that State Street Global Advisors is an unincorporated

division of State Street Bank and Trust Company and is not a juridical person capable of suing or

being sued.

PLAINTIFFS' STATEMENT OF FACT:

2.      *Between February 2004 and April 2004, [sic] improperly sold approximately 7.2 million shares of Grace common stock from the Grace Stock Fund.  Driscoll Deposition at 187-88.*

RESPONSE:

Undisputed that between February 2004 and April 2004, State Street sold approximately

7.2 million shares of Grace common stock from the Grace Stock Fund.  Defendants object to

2

Plaintiffs' characterization of State Street's sale as "improper" as it is a legal conclusion not appropriate in a Rule 56.1 Statement of Material Facts. That characterization is also disputed.

To the contrary, State Street contends that the sale was both proper and prudent. The U.S. Department of Labor, charged with enforcing ERISA, has promulgated regulations interpreting ERISA's "prudence" standard in the context of investment determinations by fiduciaries:

> With regard to an investment or investment course of action taken by a fiduciary of an employee benefit plan pursuant to his investment duties, the requirements of section 404(a)(1)(B) of the Act … are satisfied if the fiduciary (i) has given appropriate consideration to those facts and circumstances that, given the scope of such fiduciary's investment duties, the fiduciary knows or should know are relevant to the particular investment or investment course of action involved, including the role the investment or investment course of action plays in that portion of the plan's investment portfolio with respect to which the fiduciary has investment duties; and (ii) has acted accordingly.

29 C.F.R. § 2550.404a-1(b)(1).

The record is undisputed that State Street undertook a careful, thorough process in evaluating the prudence of the Grace stock investment. State Street retained qualified legal and financial advisors. Supported by the professionals in State Street's own Independent Fiduciary Group, the State Street Fiduciary Committee (itself consisting of highly-qualified investment professionals) properly identified and considered the material factors affecting the value of the Grace stock and its suitability as an investment for the Plan. Having given appropriate consideration to these factors, State Street acted accordingly. *See* Memorandum in Support of State Street Bank and Trust Company's Motion for Summary Judgment.

PLAINTIFFS' STATEMENT OF FACT:

    *3.    Grace common stock traded in an efficient market that included in the market price any uncertainty of future events. Statement of Grace General Counsel David Siegel at Town Hall meeting, March 13, 2003, GRA-B2 006089, attached as Exhibit "A" to Plaintiffs'*

3

*Motion for Summary Judgment. All Exhibit denominations have been attached to Plaintiffs'*
*Motion for Summary Judgment. Shawn Johnson deposition transcript at 84, attached as Exhibit*
*"R"; Kelly Driscoll deposition transcript at 110 and 152, attached as Exhibit "S"; State Street's*
*Motion to take Judicial Notice, filed February 2, 2007, Doc. No. 145.*

RESPONSE:

Undisputed that Grace stock traded in an efficient market during State Street's review

period and that all publicly-available information was reflected in its price. The Defendants

dispute that the market price of Grace stock included "any uncertainty of future events" to the

extent that Plaintiffs intend that phrase to mean something different than that the stock price

reflected expectations as to the future prospects of Grace.

PLAINTIFFS' STATEMENT OF FACT:

*4.     The daily closing price of Grace common stock during the class period remained*
*above $2.00 and occasionally exceeded $5.00 a share. During State Street's tenure, the daily*
*closing price ranged between $2.54 on December 22, 2003 and $3.70 on January 12, 2004.*
*Chart of Grace daily closing prices attached hereto as Exhibit "C."*

RESPONSE:

Undisputed.

PLAINTIFFS' STATEMENT OF FACT:

*5.     Grace represented to the investing public that it would survive the reorganization*
*and that its shareholders would receive equity. Letter from Paul Norris, May 5, 2004,*
*http://svco0053/reorganize/, attached as Exhibit "D;" Memorandum from Goodwin & Proctor*
*to State Street, at SSBT-0003056, attached as Exhibit "E."*

RESPONSE:

Undisputed that Grace represented to the investing public that it would survive its

reorganization. Defendants dispute that the referenced Paul Norris letter was dated May 5, 2004.

It was actually issued on or before April 9, 2001, almost three years before State Street

determined that continued holding of the Grace stock by the Plan was not consistent with

ERISA. *See* Declaration of Eric Eller, attached as Exhibit 1 to State Street's Opposition to the

Motion of the Bunch Plaintiffs for Summary Judgment.  Those 2001 statements are not material

to State Street's decision in February 2004 regarding the Grace stock.  Defendants further

dispute that Grace represented to the investing public that "shareholders would receive equity."

To the contrary, Grace's Annual Report for 2003 (filed March 5, 2004) sets forth an

accurate statement of Grace's representations to the investing public regarding the expected

value of shareholder equity post-bankruptcy, for the period during which State Street was

evaluating the suitability of the Plan's Grace stock investment under ERISA.  In that filing,

Grace stated:

> It is *currently impossible to predict with any degree of certainty*
> the amount that would be required to be contributed to the trust [to
> be established in bankruptcy for Grace's asbestos liabilities], how
> the trust would be funded, how other pre-petition claims would be
> treated or what impact any reorganization plan may have on the
> shares of common stock of Grace.  *The interests of Grace's*
> *shareholders could be substantially diluted or cancelled under a*
> *plan of reorganization.*  The value of Grace common stock
> following a plan of reorganization, and the extent of any recovery
> by non-asbestos-related creditors, will depend principally on the
> ultimate value assigned to Grace's asbestos-related claims, which
> will be addressed through the Bankruptcy Court proceedings.

W. R. Grace & Co Form 10-K (Year 2003) (hereinafter "2003 Form 10-K"), at Part I, p. 3 State

Street's Statement of Material Fact ("SOF") ¶ 8 (emphasis added).

PLAINTIFFS' STATEMENT OF FACT:

6.    *Grace further represented that the bankruptcy was not diminishing its strength.*
*"Over the past five years, Grace has remained a financially strong enterprise.  The company has*
*continued to invest in its business and make small, easily integrated acquisitions with the support*
*of the creditors committee and the Bankruptcy Court."  Grace Financial Reorganization, 2006,*
*http://www.grace.com/About/Reorganization.aspx, attached as Exhibit F*

RESPONSE:

Defendants object to the first sentence as an improper characterization not appropriate in

a Rule 56.1 Statement of Material Facts.  The second and third sentences are undisputed but

immaterial.  In evaluating the suitability of the Plan's Grace stock investment under ERISA,

State Street was aware of, and considered, the financial performance of Grace's core business

during the fourth quarter and year-end of 2003.  But, like Grace itself (as well as the investing

public), State Street determined, with the assistance of its financial and legal advisors, that

Grace's stock was not trading on the basis of the fundamental business performance of Grace.

Rather, the continued uncertainty as to Grace's contingent, undetermined asbestos liabilities was

a dominant factor driving the stock price.  As Grace indicated in its 2003 Annual Report, in

addressing those liabilities in the bankruptcy, "the interests of Grace's shareholders could be

substantially diluted or cancelled . . . ."  *See* Response to Plaintiffs' Statement of Fact No. 5,

*supra.*

PLAINTIFFS' STATEMENT OF FACT:

> 7.    *Grace told Plan Participants that it expected to survive with equity in response to questions concerning the continued holding of shares, that shareholders could receive "substantial" value at the end of the reorganization.  Statement of Grace General Counsel David Siegel at Town Hall meeting, March 13, 2003, GRA-B2 006089, attached as Exhibit "A;" Statement of Grace CEO and Chairman Paul Norris at Town Hall Meeting, March 13, 2003, GRA-B2 006092, attached as Exhibit "A."*

RESPONSE:

Undisputed.  However, Plaintiffs mischaracterize these statements by omitting to explain

that David Siegel and Paul Norris *also* told Plan participants at Grace's Town Hall Meeting

(which actually took place on March 19, 2003), that Grace's equity could be worth nothing.

Thus, Mr. Norris stated:

> Today all of the conversations that we've had with personal injury, asbestos and ourselves has been [] that our liability has been fairly sized, we'll leave equity, and their position is [] that there is no equity because personal injury asbestos overwhelms everything else … *We haven't made any real progress in the courts on this issue* … So it's not a question of us knowing more or feeling differently than we did two years ago.  It's a recognition of all of

the other issues and the fact that we're going to get into position where we will know more.

Statement of Grace CEO and Chairman Paul Norris at Town Hall Meeting, March 19, 2003,

GRA-B2 006092, Plaintiffs' Exhibit "A" (emphasis added).  And Mr. Siegel stated:

> It's how big are our liabilities?  And we're first now starting on the process of figuring out how big those liabilities are and challenging them as part of the bankruptcy process.  If we're very successful and we get the liabilities down to where we think they are, there could be value for shareholders that would be substantial.  *If we're not that successful, the shares could be worth again, nothing, or next to nothing.*  At this point it's very, very speculative because we probably have a better view of what our liabilities are than anybody in the world, and we don't know where this is going to come out.

Statement of Grace General Counsel David Siegel at Town Hall Meeting, March

13, 2003, GRA-B2 006089, Plaintiffs' Exhibit "A" (emphasis added).

PLAINTIFFS' STATEMENT OF FACT:

8.    *On January 29, 2004, Grace announced its fourth quarter 2003 results and year end results and the results were positive.  Grace Form 8-K, filed January 29, 2004, attached as Exhibit "G."*

RESPONSE:

Undisputed but immaterial.  In evaluating the suitability of the Plan's Grace stock investment under ERISA, State Street was aware of, and considered, the financial performance of Grace's core business during the fourth quarter and year-end of 2003.  But, like Grace itself (as well as the investing public), State Street determined, with the assistance of its financial and legal advisors, that Grace's stock was not trading on the basis of the fundamental business performance of Grace.  Rather, the continued uncertainty as to Grace's contingent, undetermined asbestos liabilities was a dominant factor driving the stock price.  As Grace indicated in its 2003 Annual Report, in addressing those liabilities in the bankruptcy, "the interests of Grace's

7

shareholders could be substantially diluted or cancelled  . . . ."  *See* Response to Plaintiffs'

Statement of Fact No. 5, *supra*.

PLAINTIFFS' STATEMENT OF FACT:

9.     *Grace continued to have financial success throughout the class period.  On April 20, 2004, Grace announced its first quarter results.  Grace Press Release, April 20, 2004, GR-008800, attached as Exhibit "H;" Tarola deposition at 79, attached as Exhibit "I."*

RESPONSE:

Undisputed that on April 20, 2004, Grace announced its first quarter 2004 financial

results.  Defendants object to the first sentence as an improper characterization not appropriate in

a Rule 56.1 Statement of Material Facts.  It is immaterial, however.  In evaluating the suitability

of the Plan's Grace stock investment under ERISA, State Street was aware of, and considered,

the positive financial performance of Grace's core business during the fourth quarter and year-

end of 2003.  But, like Grace itself (as well as the investing public), State Street determined, with

the assistance of its financial and legal advisors, that Grace's stock was not trading on the basis

of the fundamental business performance of Grace.  Rather, the continued uncertainty as to

Grace's contingent, undetermined asbestos liabilities was a dominant factor driving the stock

price.  As Grace indicated in its 2003 Annual Report, in addressing those liabilities in the

bankruptcy, "the interests of Grace's shareholders could be substantially diluted or cancelled . . .

. "  *See* Response to Plaintiffs' Statement of Fact No. 5, *supra*.

PLAINTIFFS' STATEMENT OF FACT:

10.     *Grace possessed cash assets of over $400 million and access to a $250 million line of credit and could continue to operate throughout the bankruptcy.  Grace Form 10-Q for Period ending March 31, 2004 at I-29, attached as Exhibit "J."*

RESPONSE:

Undisputed but immaterial.  In evaluating the suitability of the Plan's Grace stock investment under ERISA, State Street was aware of, and considered, the financial performance of Grace's core business during the fourth quarter and year-end of 2003.  But, like Grace itself (as well as the investing public), State Street determined, with the assistance of its financial and legal advisors, that Grace's stock was not trading on the basis of the fundamental business performance of Grace.  Rather, the continued uncertainty as to Grace's contingent, undetermined asbestos liabilities was a dominant factor driving the stock price.  As Grace indicated in its 2003 Annual Report, in addressing those liabilities in the bankruptcy, "the interests of Grace's shareholders could be substantially diluted or cancelled . . . ."  *See* Response to Plaintiffs' Statement of Fact No. 5, *supra*.

PLAINTIFFS' STATEMENT OF FACT:

11.    *The Plan permitted class members, on a daily basis, to change investments.  The W.R. Grace Savings and Investment Plan Summary Plan Description ("Plan") at 26, GR-000268.  Relevant Portions of the Summary Plan Description, attached as Exhibit "K."*

RESPONSE:

Undisputed, to the extent "daily basis" means "on any Business Day" as set forth in ¶¶ 5.03 and 5.04 of the Plan.

PLAINTIFFS' STATEMENT OF FACT:

12.    *Each class member was fully and immediately vested.  Plan at 84, GR-001745, attached as Exhibit "L."*

RESPONSE:

Undisputed.

PLAINTIFFS' STATEMENT OF FACT:

*13.    Plan Participants made their own investment decisions, and the Plan complied with §404(c) of ERISA. Summary Plan Description GR-000267, attached as Exhibit "E."*

RESPONSE:

Undisputed that Plan Participants made their own investment decisions and that the Plan was "intended to be a participant-directed plan, as described in Section 404(c) of [] ERISA and applicable federal regulations." Summary Plan Description, Ex. 10 to the Decl. of Counsel in Support of Grace Defendants' Motion for Summary Judgment, at 25. Defendants object to Plaintiffs' statement that "the Plan complied with § 404(c) of ERISA" as § 404(c) compliance is a question of law and thus not appropriate in a Rule 56.1 Statement of Material Facts.

PLAINTIFFS' STATEMENT OF FACT:

*14.    The Plan allowed participants to create a diversified portfolio from approximately 28 diverse options including the Stock Fund that in the aggregate provided appropriate risk and returns. Deposition of W. Brian McGowan at 31, attached as Exhibit "M;" Deposition of Robert Tarola at 101. A copy of relevant portions of Mr. Tarola's deposition are attached as Exhibit "I;" Investment Policy Statement at 1, GR-006600, attached as Exhibit "N;" Deposition of W. Brian McGowan at 124-25, attached as Exhibit "M;" The W.R. Grace Savings and Investment Plan at 68-71, GR-001729. Copies of relevant portions of the Plan are attached as Exhibit "L."*

RESPONSE:

Undisputed, except to note that in February 2004 State Street determined that continued holding of Grace stock by the Grace Stock Fund in the Plan was not consistent with ERISA. *See* State Street's SOF ¶¶ 60-66.

PLAINTIFFS' STATEMENT OF FACT:

*15.    The Plan documents specifically identify the Grace Stock Fund as one of the Plan's investment options. W.R. Grace Savings and Investment Plan at 79, Sections of 5.11-12, relevant portions of the Plan are attached as Exhibit "L;" Engagement Agreement between Grace and State Street attached as Exhibit "B," Exhibit II to the Agreement at SSBT-001278.*

RESPONSE:

Undisputed.

PLAINTIFFS' STATEMENT OF FACT:

16.    *The Grace Stock Fund represented only four percent of the Plan's assets, but Participants, through their investment of capital, held 12% of the Company's outstanding shares, with the accompanying right to vote the shares.  GR-005314, attached as Exhibit "O."*

RESPONSE:

Undisputed that between December 31, 2003 and March 31, 2004, approximately 4% of the allocated assets of the Plan were held in the Grace Stock Fund, the Plan's holdings of Grace stock represented approximately 12% of the outstanding issued shares of Grace common stock, and the Plan provided that voting rights would be exercisable by the participants who held units of the Grace stock fund in proportion to their individual account holdings of those units.

PLAINTIFFS' STATEMENT OF FACT:

17.    *Grace and State Street repeatedly advised class members of the risk of retaining company stock in the Plan.  January 26, 2004 Notice to Plan Participants at SSBT-003245, attached as Exhibit "P."*

RESPONSE:

Undisputed.

PLAINTIFFS' STATEMENT OF FACT:

18.    *Grace, without question, always believed that the Grace Stock Fund was an investment opportunity that satisfied the requirements of ERISA.  Deposition of W. Brian McGowan at 61-62, 71-72, attached as Exhibit "M;" Deposition of Robert Tarola at 131-32, attached as Exhibit "I."*

RESPONSE:

Undisputed that the members of the IBC believed that the Grace Stock Fund was an appropriate investment option for the Plan between 2001 and 2003.  Defendants dispute that either McGowan or Tarola testified that Grace "always" believed that the Grace Stock Fund was

11

an investment opportunity that satisfied the requirements of ERISA, *see* McGowan Tr., at 61-62, 71-72, Plaintiffs' Exhibit "M" to their Motion for Summary Judgment; *see also* Tarola Tr., at 131-32, Plaintiffs' Exhibit "I" to their Motion for Summary Judgment.  This dispute is immaterial, however, because it is undisputed that reasonable fiduciaries can reach different conclusions about the prudence of an investment without one being wrong, and the issue in this case is not what "Grace" believed, but rather State Street's actions in determining that Grace stock held in the Plan should be sold.

PLAINTIFFS' STATEMENT OF FACT:

19.     *Grace and its directors along with Mr. McGowan ("Grace"), acknowledge that they are fiduciaries to the Plan.  Deposition of W. Brian McGowan at 13, attached as Exhibit "M;" Bankruptcy filing, GR-007930, attached as Exhibit "Q."*

RESPONSE:

Undisputed that Brian McGowan acknowledged that he believed himself to be a fiduciary with respect to the Plan.  Defendants dispute that Grace itself or any member of its Board of Directors ever acknowledged being a fiduciary to the Plan between December 2003 and April 2004, or with respect to the matters at issue in this case.  Defendants further object to this statement as it constitutes a legal conclusion not appropriate in a Rule 56.1 Statement of Material Facts.

PLAINTIFFS' STATEMENT OF FACT:

20.     *State Street knew that Grace traded in an efficient market.  Johnson deposition transcript at 84, attached as Exhibit "R;" Driscoll deposition transcript at 110 and 152, attached as Exhibit "S."*

RESPONSE:

Undisputed.

PLAINTIFFS' STATEMENT OF FACT:

   21.    *State Street ignored the market and "determined that the market price of the W.R. Grace stock is not a good indication of its long term value . . . ." Fiduciary Committee Meeting Minutes, February 23, 2004, SSBT-000713-000715 at 000714, attached as Exhibit "J;" Johnson deposition testimony at 25-27. Relevant portions of the Johnson deposition are attached as Exhibit "R."*

RESPONSE:

   Undisputed that State Street's Independent Fiduciary Group "determined that the market price of the W. R. Grace stock is not a good indication of its long term value because of the speculative and volatile nature of stock valuations of companies undergoing a bankruptcy proceeding involving significant contingencies such as asbestos litigation and potential asbestos litigation faced by W. R. Grace." February 23, 2004 State Street Fiduciary Committee Meeting Minutes, Plaintiffs' Exhibit "T" to their Motion for Summary Judgment. Disputed that State Street "ignored the market."

   To the contrary, State Street considered the market price along with information regarding the Grace Plan; the Grace bankruptcy; the financial performance and outlook of the company and its industry sector; factors affecting the Grace stock; Grace's unliquidated, contingent asbestos liabilities; insurance coverage for those liabilities; SEC requirements and restrictions pertaining to sale of the company stock; communications made to the Plan participants; the prospect of having State Street appoint a representative to the equity holders' committee in the Grace bankruptcy; and the risks generally to the Plan of both holding and selling the Grace stock. *See, e.g.,* State Street's SOF ¶ 44. Based on the information provided at the time, State Street concluded that (i) the stock price was somewhat above the appropriate valuation range as determined by Duff & Phelps; (ii) both the current stock price and Duff & Phelps' valuation range were driven to a significant extent by several factors that were highly

speculative at the time (factors pertaining to Grace's unknown contingent asbestos liabilities);

and (iii) that the outcome of these factors were necessarily subject to a significant degree of

uncertainty. Adverse outcomes with respect to one or more of those contingencies would likely

result in a very substantial decline in the value of Grace stock, perhaps to zero, and, if that

occurred, given the size of its holdings of Grace stock, the Plan would likely not be able to react

quickly to any change in circumstances. State Street's SOF ¶¶ 61-65.

PLAINTIFFS' STATEMENT OF FACT:

*22.     State Street did not know when or the exact probability of when Grace Stock
would lose substantial value. Johnson deposition at 110, relevant portions of the Johnson
deposition are attached as Exhibit "R."*

RESPONSE:

Undisputed.

PLAINTIFFS' STATEMENT OF FACT:

*23.     State Street's responsibility for the Grace Stock Fund commenced on December
15, 2003 and ended approximately April 15, 2004. Engagement Agreement between Grace and
State Street attached as Exhibit "B." In particular, see Exhibit II to the Agreement at SSBT-
001278.*

RESPONSE:

Undisputed, except to note that State Street sold the remainder of the Grace stock from

the Plan on April 19, 2004.

PLAINTIFFS' STATEMENT OF FACT:

*24.     During the relevant period, the Grace Stock Fund represented only 4% of the
Plan's $476 million portfolio. McGowen deposition at 118, attached as Exhibit "M."*

RESPONSE:

Undisputed that, as of December 31, 2003, the Grace Stock Fund represented

approximately four percent of the Plan's $476 million portfolio.  *See* McGowan Tr., at 118,

Plaintiffs' Exhibit "M" to their Motion for Summary Judgment.

PLAINTIFFS' STATEMENT OF FACT:

 25. *Grace always believed that the Grace Stock Fund remained an appropriate*
*investment.  Tarola deposition at 128-29.  A copy of the Tarola deposition is attached as Exhibit*
*"I;" McGowan deposition at 28, attached as Exhibit "M."*

RESPONSE:

Disputed.  See Defendants' Response to Plaintiffs' Statement of Fact Number 18.

PLAINTIFFS' STATEMENT OF FACT:

 26. *State Street ignored the Plan's investment options other than the Grace Stock*
*Fund.  Johnson deposition at 110.  Relevant portions of the Johnson deposition are attached as*
*Exhibit "R;" Driscoll deposition at 75-76.  Relevant portions of the Driscoll deposition are*
*attached as Exhibit "S."*

RESPONSE:

Undisputed that State Street did not evaluate the prudence of the Grace Stock Fund in

combination with the other investment options available to Plan participants, but rather evaluated

the prudence of the Grace Stock Fund on its own, in determining whether continued retention of

Grace stock in the Grace Stock Fund was inconsistent with ERISA.  The prudence of the other

investment options available to Plan participants was immaterial to State Street's evaluation.

State Street was retained *only* to manage the Grace Stock Fund.  The Engagement Agreement

provides in pertinent part:

> Pursuant to this Engagement Agreement, State Street will provide
> such professional services consistent with its fiduciary
> responsibilities … as an investment manager with respect to the
> shares of common stock of W. R. Grace & Co. that are held under
> the Company Stock investment option that is maintained under the

W. R. Grace Savings and Investment Plan Trust on behalf of the
W. R. Grace Savings and Investment Plan.

November 24, 2003 Engagement Agreement by and among State Street, Grace and the Grace

Investment and Benefits Committee, Plaintiffs' Exhibit "B" to their Motion for Summary

Judgment.

PLAINTIFFS' STATEMENT OF FACT:

27.   State Street was unaware that: (1) the Grace Stock Fund constituted only 4% of
*the assets of the Plan, (2) Plan participants voluntarily assumed the risk of investing in the
Grace Stock Fund, that State Street [sic], (3) how Grace made its matching 401(k) contributions
and whether it used Grace stock to make the match (it did not), and (4) the Plan provided
participants the right to vote the Grace common shares in the Grace Stock Fund.  Driscoll
deposition at 76-77, attached as Exhibit "S."*

RESPONSE:

Disputed.  Ms. Driscoll's testimony reflects only that she did not recall these details at

her deposition which was conducted three years after the fact:

> Q:   Do you have an understanding as to what percentage of the
> plan's assets the Grace stock fund comprised?
>
> A:   *I don't recall.*
>
> Q:   Was that a factor [in making State Street's decision to sell]?
>
> A:   *Not that I recall*, no.
>
> Q:   [W]ere plan participants obligated to participate in the
> Grace stock fund?
>
> A:   *I don't recall.*
>
> Q:   Was whether Grace participants were obligated to
> participate in the Grace stock fund a consideration that the
> committee and State Street analyzed in connection with its
> decision whether retention of the company stock fund was
> consistent with ERISA?
>
> A:   *I don't recall* that being a factor or a consideration.

16

Q:    Were any of the plan participants matching funds or company match given to participants in the form of company stock?

A:    *I don't recall.*

*See* Driscoll Tr., at 76-77, Plaintiffs' Exhibit "S" to their Motion for Summary Judgment.

PLAINTIFFS' STATEMENT OF FACT:

28.    *State Street possessed significant nonpublic information that a major and sophisticated hedge fund investor, D.E. Shaw, was eager to pay* <u>above</u> *the market price to purchase over 6 million shares of Grace common stock from the Grace stock fund. Johnson deposition, Volume 2, at 51, 53.*

RESPONSE:

Defendants object to this statement as an improper characterization not appropriate in a Rule 56.1 Statement of Material Facts. The undisputed facts are as follows: On April 2, 2004, State Street received an unsolicited contact from Lehman Brothers, acting on behalf of a party interested in purchasing the remaining block of Grace stock held by the Grace Stock Fund, an amount that represented approximately 85% of the Plan's original position. State Street subsequently learned that the interested party was a hedge fund established by D.E. Shaw & Co. State Street's SOF ¶ 71. The price offered by D.E. Shaw was $3.50 per share, representing an 8% premium over the April 1 closing price of $3.24 per share. *Id.* There are no facts in the record to suggest that D.E. Shaw was "eager" to make this purchase or that D.E. Shaw's interest in purchasing the stock constituted "significant non-public information."

PLAINTIFFS' STATEMENT OF FACT:

29.    *No one at State Street sought to determine why a sophisticated investor was willing to pay a "premium" for 6.2 millions shares in the Grace Stock Fund. Johnson deposition, Volume 2, at 54-55, attached as Exhibit "R;" Driscoll deposition transcript at 169, attached as Exhibit "S."*

RESPONSE:

Disputed.  On April 6, 2004, State Street met with its advisors, Duff & Phelps LLC and Goodwin Procter to discuss the D.E. Shaw offer and recent developments.  State Street's SOF ¶ 75.  On April 7, 2004, the State Street Fiduciary Committee met and discussed whether D.E. Shaw possessed additional information regarding the value of the Grace stock and D.E. Shaw's possible motivations for purchasing the Grace stock.  State Street's SOF ¶ 83.  In deposition, Ms. Driscoll testified that:

> In general, I do remember that we thought about what else might be motivating D. E. Shaw or what other information they might have that we didn't have, and one of those reasons we turned to our advisors was to see was there some additional information that we had not considered that was publicly available or known to our advisors.

*See* Driscoll Tr., at 169, Plaintiffs' Exhibit "S" to their Motion for Summary Judgment.  In addition, a representative from State Street contacted Mr. Tarola after it had received the inquiry from D.E. Shaw and asked him whether there was anything State Street should know about Grace before it made a decision; Mr. Tarola responded that all material information about Grace was in the public domain.  Grace Defendants SMF ¶ 39.

PLAINTIFFS' STATEMENT OF FACT:

*30.    When Grace hired State Street, Grace knew that the Grace Stock Fund was a prudent investment consistent with ERISA.  Deposition of W. Brian McGowan at 71-72, 140, attached as Exhibit "M."*

RESPONSE:

Disputed.  See Defendants' Response to Plaintiffs' Statement of Fact Number 18.

PLAINTIFFS' STATEMENT OF FACT:

*31.    As part of its prudence and ERISA analysis, in continuing to hold Grace stock in the Fund, the Committee extensively considered Grace's asbestos liability and its impact on its stock.  McGowan deposition at 81, attached as Exhibit "M."*

RESPONSE:

Undisputed.

PLAINTIFFS' STATEMENT OF FACT:

32.    *During the four months that State Street served as investment manager, Grace's financial condition was improving –not deteriorating – and Grace was confident that it understood the extent of its asbestos liability.  Tarola deposition at 78-79, attached as Exhibit "I."*

RESPONSE:

Undisputed that during the four months that State Street served as investment manager, certain aspects of Grace's financial condition were improving, but others were not.  Defendants dispute that during this time Grace was confident that it understood the extent of its asbestos liability and further dispute that Mr. Tarola testified that "Grace was confident that it understood the extent of its asbestos liability."  *See* Tarola Tr., at 78-79, Plaintiffs' Exhibit "I" to their Motion for Summary Judgment.

To the contrary,  Mr. Tarola testified that the amount of Grace's asbestos liability during the relevant time was dependent on "significant rulings that [Grace] asked the Bankruptcy Court to make about compensable claims and cost per claims that the Bankruptcy Court has yet to make, so we still don't know the parameters under which these [asbestos] obligations will be resolved."  Tarola Tr. 66-67 attached as Exhibit 3 to the Declaration of Scott M. Flicker in Support of State Street Bank and Trust Company's Opposition to Motion of the Bunch Plaintiffs for Summary Judgment.

PLAINTIFFS' STATEMENT OF FACT:

33.    *Grace never monitored State Street to determine the reason that the Grace Stock Fund suddenly became inconsistent with ERISA.  Tarola deposition at 121, attached as Exhibit "I;" McGowan deposition at 157, attached as Exhibit "M."*

19

RESPONSE:

Defendants do not dispute that the Grace fiduciaries never asked State Street the basis for its decision to sell the Grace stock, but dispute that they failed in any way to comply with their duty to monitor under ERISA.

PLAINTIFFS' STATEMENT OF FACT:

34.    *Grace did not avoid its monitoring responsibility because of a conflict of interest because an actual conflict of interest never existed during the four months that State Street served as Investment Manager.  Tarola deposition at 126, attached as Exhibit "I."*

RESPONSE:

Undisputed that Grace did not avoid its monitoring responsibility or that an actual conflict of interest did not exist during the four months that State Street served as Investment Manager because the appointment of State Street eliminated the possibility that an actual conflict of interest could arise.

Dated:  August 31, 2007              Respectfully submitted,

                                     State Street Bank & Trust Company

                                     By its counsel,

                                     /s/ Sean T. Carnathan_____
                                     Sean T. Carnathan (BBO # 636889)
                                     (scarnathan@ocmlaw.net)
                                     O'CONNOR, CARNATHAN, MACK LLC
                                     8 New England Executive Park, Suite 310
                                     Burlington, MA 01803
                                     Telephone: (781) 359-9000
                                     Facsimile: (781) 359-9001

                                            -and-

                                     Scott M. Flicker
                                     (scottflicker@paulhastings.com)
                                     Thomas A. Rust
                                     (thomasrust@paulhastings.com)
                                     PAUL, HASTINGS, JANOFSKY & WALKER LLP
                                     875 15th Street

                                     20

Washington, DC 20005
Telephone: (202) 551-1700
Facsimile: (202) 551-1705

Respectfully Submitted,

W. R. Grace & Co., W. R. Grace &
Co. Investment and Benefits
Committee, John F. Akers, H. Furlong
Baldwin, Ronald C. Cambre, Marye Anne
Fox, John J. Murphy, Paul J. Norris,
Thomas A. Vanderslice, Fred E. Festa and
Robert M. Tarola

By its counsel,

/s/ Matthew C. Hurley_____
William W. Kannel (BBO# 546724)
(wkannel@mintz.com)
Matthew C. Hurley (BBO# 643638)
(mchurley@mintz.com)
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY and POPEO, P.C.
One Financial Center
Boston, MA 02111
Telephone:  (617) 542-6000
Facsimile:  (617) 542-2241

- and -

Carol Connor Cohen
(cohen.carol@arentfox.com)
Caroline Turner English
(english.caroline@arentfox.com)
Nancy S. Heermans
(heermans.nancy@arentfox.com)
Jeffrey H. Ruzal
(ruzal.jeff@arentfox.com)
ARENT FOX LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
Telephone:  (202) 857-6054
Facsimile:  (202) 857-6395