THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                    )
**KERI EVANS,**                     )
                                    )
                **Plaintiff,**      )
                                    )
v.                                  )
                                    )
**JOHN F. AKERS, et al.**           )
                                    )
                **Defendants.**     )
_____ )


_____
                                    )   **Consolidated**
**LAWRENCE W. BUNCH, et al.,**      )   **Case No. 04-11380-WGY**
                                    )
                                    )   **ORAL ARGUMENT**
                **Plaintiffs,**     )   **REQUESTED**
                                    )
v.                                  )
                                    )
**W. R. GRACE & CO., et al.**       )
                                    )
                **Defendants.**     )
_____ )


**THE BUNCH PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT AGAINST THE
GRACE DEFENDANTS AND THE STATE STREET DEFENDANTS**

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................1

BACKGROUND ...................................................................................................2

    UNDISPUTED FACTS THAT ESTABLISH PLAINTIFFS'
    ENTITLEMENT TO SUMMARY JUDGMENT ..................................................2

    State Street Engaged In A Flawed Process...............................................................2

    State Street Admits Through Its Conduct As An ERISA Fiduciary
    On Behalf Of The United Airways Retirement Plan That Retention
    Of Grace Company Stock Is Consistent With ERISA..............................................4

    Grace Never Possessed Material Information during State Street's
    Tenure That Created A Conflict That Prevented Grace From Monitoring
    State Street .................................................................................................................5

ARGUMENT.............................................................................................................6

    I. PLAINTIFFS' ARE ENTITLED TO SUMMARY JUDGMENT
       AGAINST STATE STREET BECAUSE STATE STREET USED
       A DEFECTIVE PROCESS TO DETERMINE WHETHER THE
       GRACE STOCK FUND WAS CONSISTENT WITH ERISA..........................6

       A. State Street's Process Was Fundamentally Flawed Because It
          Inappropriately Second-Guessed An Efficient Market.................................6

       B. State Street Is Unable To Overcome The Presumption That
          Retention of Company Stock Is Prudent........................................................9

       C. State Street's Process Was Flawed Because It Admittedly Failed
          To Understand The Plan And Its Investment Options................................11

    II. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT
        AGAINST THE GRACE DEFENDANTS BECAUSE GRACE
        LACKED ANY LEGAL JUSTIFICATION FOR FAILING TO
        MONITOR...............................................................................................14

    A.  Grace Failed To Take Any Action To Keep Itself Apprised As To What State Street Was Doing As The Delegated Investment Manager ................................................................................................... 14

    B.  Grace Did Not Have Any Conflict That Prevented Grace From Monitoring State Street ............................................................................... 15

III.  PLAINTIFFS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW REGARDING THE MANNER TO CALCULATE DAMAGES ....... 15

CONCLUSION .............................................................................................................. 16

CERTIFICATE OF SERVICE ...................................................................................... 17

**INTRODUCTION**

Both the State Street Defendants and the Grace Defendants defend against summary judgment by taking positions that are inconsistent with their conduct and the law. State Street, for example, cannot reconcile its long-standing position that the market is the best means to value Grace's long-term prospects with its conclusion that the market was "not a good indication of its long-term value."[1] Similarly, Grace cannot reconcile its position that it lacked an obligation to monitor State Street to determine whether the elimination of the Grace Stock Fund furthered the purpose of the W.R. Grace Savings and Retirement Plan in light of Grace's belief that the Stock Fund was a prudent investment that was consistent with ERISA.[2]

Under these circumstances, where the company stock thrives after the sale, the Plan Participants have the right to bring an action and recover damages for breach of fiduciary duty. "[I]f the fiduciary, in what it regards as an exercise of caution, does not maintain the investment in employer securities, it may face liability for that caution, particularly if the employer's securities thrive."[3]

The fundamental issue for this Court to decide is whether retention of the Grace Stock Fund remained consistent with ERISA during the four months that State Street

---

[1] *See,* Defendants' Response to Plaintiffs' Rule 56.1 Statement of Uncontested Facts (Doc. No. 194) to Statement No. 21.
[2] *See,* Defendants' Response to Plaintiffs' Rule 56.1 Statement of Uncontested Facts (Doc. No. 194) to Statement No. 18.
[3] *Moench v. Robertson*, 62 F.3d 553, 572 (3rd Cir. 1995) cert. denied 516 U.S. 115 (1996).

1

served as the Fund's Investment Manager.[4] The basis for this motion is that State Street, as an ERISA Investment Manager and fiduciary, implemented a fundamentally flawed process and violated its duty by relying on speculation and conjecture when it eliminated the Grace Stock Fund. Grace is liable because if failed to take any meaningful action to determine if State Street's performance was in compliance with the terms of the plan and statutory standards and whether its performance satisfied the needs of the plan.[5]

Specifically, the undisputed facts establish that State Street is liable because: (1) State Street believed that it could value the price of Grace common stock better than an efficient market priced Grace common stock; (2) State Street failed to establish any basis for overcoming the presumption that retention of company stock is prudent; and (3) State Street ignored important attributes of the W.R. Grace Retirement and Savings Plan (the "Plan"). The undisputed facts also establish that Grace failed to monitor State Street and "wiped its hands" of any role in connection with the Stock Fund after it delegated responsibility to State Street.

## BACKGROUND

### UNDISPUTED FACTS THAT ESTABLISH PLAINTIFFS' ENTITLEMENT TO SUMMARY JUDGMENT

#### State Street Engaged In A Flawed Process

State Street's sole assignment and responsibility was to determine whether the "continued holding of [Grace common stock in the Grace Stock Fund] is not consistent

---

[4] *See,* Engagement Agreement between Grace and State Street, attached as Exhibit "B" to Plaintiffs' Motion for Summary Judgment. In particular, *see,* Exhibit II to the Agreement at SSBT-001278 (Grace hired State Street for the specific purpose of determining whether the "continued holding of [Grace common stock in the Grace Stock Fund] is not consistent with ERISA (within the meaning of Section 404(a)(1)(D) of ERISA").

[5] *See,* 29 C.F.R. § 2509.75, FR-17 (regulation requires delegating ERISA fiduciary to monitor State Street to ensure that State Street's "performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan").

with ERISA (within the meaning of Section 404(a)(1)(D) of ERISA."[6] Within two months of its engagement, State Street decided to sell the Fund's holdings of Grace common stock. According to State Street, it sold because it believed that Grace faced an uncertain future and the stock *could* lose value.[7] When it sold, State Street "did not know when or the exact probability of when Grace stock would lose substantial value."[8]

Despite the lack of precision in determining when and if Grace common stock could lose appreciable value, State Street eliminated the Grace stock fund. Yet, State Street always understood that Grace common stock traded in an efficient market and that the stock's price reflected the market's "expectations as to the future prospects of Grace."[9] State Street also understood that "the market is the best determinant on any day as to what the shares are worth."[10] Despite this understanding, State Street admittedly "second-guessed" the market and decided to sell by determining that "the **market price of the W.R. Grace stock is not a good indication of its long term value…**"[11] (Emphasis added.)

Additionally, State Street admits that it rejected the market's efficiently determined price, and instead, accepted a Duff & Phelps valuation that was lower than the prevailing market price. "Based on the information provided at the time, State Street

---

[6] Engagement Agreement between Grace and State Street, attached as Exhibit 'B" to Plaintiffs' Motion for Summary Judgment. In particular, *see,* Exhibit II to the Agreement at SSBT-00127.
[7] Defendants' Response to Plaintiffs' Rule 56.1 Statement of Uncontested Facts (Doc. No. 194) to Statement No. 21.
[8] Defendants' Response to Plaintiffs' Rule 56.1 Statement of Uncontested Facts (Doc. No. 194) to Statement No. 22.
[9] Defendants' Response to Plaintiffs' Rule 56.1 Statement of Uncontested Facts (Doc. No. 194) to Statement No. 3.
[10] *See,* Defendants' Response to Plaintiffs' Rule 56.1 Statement of Uncontested Facts (Doc. No. 194) to Statement No. 3 (testimony of Shawn Johnson at 84, attached as Exhibit "R" to Plaintiffs' Memorandum in Support of Summary Judgment) (Doc. No. 180).
[11] Defendants' Response to Plaintiffs' Rule 56.1 Statement of Uncontested Facts (Doc. No. 194) to Statement No. 21.

concluded that (1) the stock price was somewhat above the appropriate valuation range as determined by Duff & Phelps…"[12]

During State Street's tenure, State Street lacked any evidence that Grace was facing imminent collapse.[13] To the contrary, Grace was experiencing improved earnings and operational results.[14] Additionally, the market was positively valuing Grace common stock.[15]

Despite some minor disagreement, State Street admits that it never evaluated the Plan's goals and objectives and the interrelationship between the Grace Stock Fund and the remainder of the Plan.[16] The lack of knowledge is impressive considering that State Street failed to consider that the Grace Stock Fund represented only 4% of the Plan's assets, that Grace did not use company stock as the means to provide the company match, and that the Participants voluntarily invested in the fund.[17]

### State Street Admits Through Its Conduct As An ERISA Fiduciary On Behalf Of The United Airways Retirement Plan That Retention Of Grace Company Stock Is Consistent With ERISA

Prior to serving as investment manager for Grace, State Street had a similar role as a Directed Trustee for the United Airways retirement plan. Ms. Kelly Driscoll had the same role in each engagement — she headed the Independent Fiduciary Group and was a

---

[12] Defendants' Response to Plaintiffs' Rule 56.1 Statement of Uncontested Facts (Doc. No. 194) to Statement No. 21.
[13] *See,* testimony of Thomas Hogan, expert retained by State Street, attached as Exhibit "I" to Plaintiffs' Reply to Defendants' Rule 56.1 Statements of Uncontested Facts (Doc. No. 189).
[14] *See,* Defendants' Response to Plaintiffs' Rule 56.1 Statement of Uncontested Facts (Doc. No. 194) to Statement Nos. 6, 8,9, 10 and 32.
[15] *See,* Defendants' Response to Plaintiffs' Rule 56.1 Statement of Uncontested Facts (Doc. No. 194) to Statement No. 4.
[16] *See,* Defendants' Response to Plaintiffs' Rule 56.1 Statement of Uncontested Facts (Doc. No. 194) to Statement No.26.
[17] *See,* Defendants' Response to Plaintiffs' Rule 56.1 Statement of Uncontested Facts (Doc. No. 194) to Statement No.26.

4

member of the Fiduciary Committee.[18] Although State Street served as a Directed Trustee for United Airlines, Ms. Driscoll testified that State Street undertakes and performs the same analysis whether it serves as an Investment Manager or as a Directed Trustee.[19]

During its service with United Airways, State Street controlled United Airways common stock in the Company's retirement stock fund. State Street continued to hold despite the fact that the Company announced that it might have to enter into bankruptcy, stock had plummeted, and the Company stock fund had lost approximately two billion dollars.[20] State Street justified its decision to retain company stock by arguing that sufficient indications existed that United Airways could survive.[21]

### Grace Never Possessed Material Information During State Street's Tenure That Created A Conflict that Prevented Grace From Monitoring State Street

Grace retained State Street because a hypothetical conflict might arise where Grace had competing obligations to disclose material financial information.[22] However, an actual conflict never arose during the four months that State Street served as Investment Manager because Grace never possessed any material financial information that it did not publicly disclose.[23] Additionally, Grace did not begin to develop its Plan of Reorganization until late 2004, well after State Street ceased performing its role as Investment Manager.[24]

---

[18] *See*, Driscoll Deposition at 16, relevant portions of the deposition are attached as Exhibit "A".
[19] *See,* Driscoll Deposition at 36-37, relevant portions of the deposition are attached as Exhibit "A".
[20] *Summers v. UAL Corp.*, 005 WL 2648670 (N.D.Ill.), 36 Employee Benefits Cas. 1019 (N.D. Ill. October 5, 2005), a copy of the decision is attached as Exhibit "B".
[21] *Summers v. UAL Corp.*, 005 WL 2648670 at 6.
[22] Tarola Deposition at 104, relevant portions of the deposition are attached as Exhibit "C".
[23] Tarola Deposition at 110 143-44, relevant portions of the deposition are attached as Exhibit "C".
[24] Tarola Deposition at 143-44, relevant portions of the deposition are attached as Exhibit "C".

# ARGUMENT

I. **PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT AGAINST STATE STREET BECAUSE STATE STREET USED A DEFECTIVE PROCESS TO DETERMINE WHETHER THE GRACE STOCK FUND WAS CONSISTENT WITH ERISA.**

   A. **State Street's Process Was Fundamentally Flawed Because It Inappropriately Second-Guessed An Efficient Market.**

Throughout this litigation, State Street repeatedly has acknowledged that Grace common stock traded in an efficient market, and the market price fully reflected the company's long-term prospects.[25] Plaintiffs, consistent with State Street's position, cited, in their memorandum in support of summary judgment, the Seventh Circuit Court of Appeals decision in *Summers v. United Airlines*.[26] In *Summers*, United Airlines retirees challenged State Street's decision to retain United Airlines stock in a company stock fund. The Court of Appeals affirmed the trial court's summary judgment in favor State Street and emphasized in its holding that an efficient market always positively valued the stock. The *Summers'* Court, in fact, held that State Street would have acted improperly if it had "second-guessed" the market when deciding whether to retain company stock in retirement plan.

> Some investors, it is true, consistently beat the market, but few of them are trustees; **it would be *hubris* for a trust company like State Street to think it could predict United's future more accurately than the market could**…[27] (Emphasis added.)

Interestingly, State Street does not deny nor does the record permit it to deny that it believed that it was capable of predicting Grace's future better than an efficient market

---

[25] Defendants' Response to Plaintiffs' Rule 56.1 Statement of Uncontested Facts (Doc. No. 194) to Statement No. 3.
[26] 453 F.3d 404 (7th Cir. 2006).
[27] 453 F.3d at 408.

6

could predict the future. In fact, State Street proudly admits, that as an intricate component of its process, it determined that "the **market price of the W.R. Grace stock is not a good indication of its long term value…**"[28] (Emphasis added.)

As further evidence of State Street's disrespect for the market, State Street admits that it disregarded the actual market price of Grace common stock in favor of a speculative value range developed by its outside consultant Duff & Phelps.[29] State Street further admits that it reached its decision despite lacking any precision concerning the probability that Grace stock would lose substantial value and/or when the stock would lose value.[30]

Clearly, where State Street has acknowledged that Grace traded in an efficient market, it cannot challenge the law and reasoning in *Summers*. State Street, however, realizing that it's "second-guessing" of an efficient market inevitably must result in its liability, seeks to avoid responsibility by trying to limit *Summers*. According to State Street, the *Summers'* Court protects State Street from assuming an obligation to "out-guess the market and sell the company stock."[31] Plaintiffs agree that a fiduciary such as State Street never should make a decision by trying to "out-guess" the market. However, the Seventh Circuit's opinion is much broader. In *Summers*, the court held that it would be "hubris" for State Street to believe that it was capable of "out-guessing" the market and that second guessing the market to predict the future price of a company's stock is an

---

[28] Defendants' Response to Plaintiffs' Rule 56.1 Statement of Uncontested Facts (Doc. No. 194) to Statement No. 21.
[29] Defendants' Response to Plaintiffs' Rule 56.1 Statement of Uncontested Facts (Doc. No. 194) to Statement No. 21.
[30] Defendants' Response to Plaintiffs' Rule 56.1 Statement of Uncontested Facts (Doc. No. 194) to Statement No. 22.
[31] State Street's Opposition to Motion for Summary Judgment (Doc. No. 192) at 12.

inappropriate exercise. Yet, this is exactly what State Street admits to doing with the Grace Stock Fund.

Additionally, State Street suggests that *Summers* may not apply because State Street was a Directed Trustee when it performed services on behalf of the United Airways' stock plan as opposed to serving as an investment manager for the Grace Stock Fund.[32] Again, State Street's analysis is flawed. Kelly Driscoll, State Street's supervisor in *Summers* and its supervisor in connection with the Grace Stock Fund, admitted that State Street's responsibilities and analysis are the same whether it is serving as Directed Trustee or as an Investment Manager.

> I would say the process in overseeing the investments from an investment perspective are the same whether we serve as an Investment Manager, Director Trustee or independent fiduciary. So the procedures we follow in monitoring those investments are the same.[33]

Accordingly, State Street cannot avoid responsibility for rejecting an efficient market simply by suggesting that it was providing a different function in connection with *Summers* than it provided in the instant matter.

Based on State Street's decision to use a process that abandoned an efficient market, Plaintiffs are entitled to summary judgment. Indeed, State Street is incapable of reconciling its long-standing position that the market is the best means to value a company's long-term prospects with its action of concluding that the market was "not a good indication of its long-term value."[34]

---

[32] State Street's Opposition to Motion for Summary Judgment (Doc. No. 192) at 12.
[33] Driscoll Deposition at 36-37, relevant portions of the deposition are attached as Exhibit "A".
[34] Defendants' Response to Plaintiffs' Rule 56.1 Statement of Uncontested Facts (Doc. No. 194) to Statement No. 21.

**B.    State Street Is Unable To Overcome The Presumption That Retention Of Company Stock Is Prudent.**

State Street does not deny that several courts have found that ERISA includes a presumption that retention of company stock is prudent. *See e.g., Kuper v. Iovenko,*[35] *Moench v. Robertson,*[36] 62 F.3d 553 (3rd Cir.1995), and *In re: Duke Energy ERISA Litigation.*[37] In fact, State Street, when it benefited from the presumption in the *Summers'* litigation, successfully argued that courts should apply the presumption.

> An investment fiduciary's decision to follow the plan sponsor's instruction and remain invested in company stock is entitled to a presumption of reasonableness. *Moench*, 62 F.3d at 571; *Kuper*, 66 F.3d at 1457-59. The "*Moench* presumption" can only be overcome upon a showing that the plan fiduciary had "knowledge of [the] impending collapse of the company. *See* Moench, 62 F.3d at 572.[38]

Instead of honoring its previous position, State Street hopes to avoid the presumption by asserting that the United States First Circuit Court of Appeals in *LaLonde v. Testron, Inc.*[39] has refused to accept the standard.[40] State Street implies that the First Circuit has rejected the presumption. State Street is wrong. To the contrary, the First Circuit merely has deferred ruling until it is able to address the issue with a more fully developed record.[41]

---

[35] 66 F.3d 1447, 1458 (6th Cir.1995).
[36] 62 F.3d 553 (3rd Cir.1995).
[37] 281 F.Supp.2d 786 (W.D.N.C.2003).
[38] Memorandum of Law in Support of State Street Bank & Trust Company's Motion for Summary Judgment in *Summers v. UAL Corporation* (Doc. No. 125), Case No. 03 C 1537 (N.D. Ill. April 8, 2005) at 13, a copy of the Motion is attached as Exhibit "D". *See also*, Memorandum at 1-2 (courts must presume "that a fiduciary's decision to remain invested in employer securities was reasonable").
[39] 369 F.3d 1 (1st Cir. 2004).
[40] State Street Opposition to Plaintiffs'' Motion for Summary Judgment (Doc. No. 192) at 16, n. 10.
[41] *See, LaLonde v. Testron, Inc*., 418 F.Supp.2d 16, 18 (D. R.I. 2006) ("This Court previously dismissed the entire action because it believed the practice of investing in company stock through an employee stock ownership plan ("ESOP") could not, except in dire circumstances, make out a violation of the fiduciary obligations owed by a Plan to its beneficiaries under ERISA.) *See also, LaLonde v. Textron, Inc.,* 270 F.Supp.2d 272 (D.R.I.2003) (The Court of Appeals for the First Circuit declined to adopt this Court's view "leaving the question for another day").

In this case, the imposition of the presumption is consistent with ERISA's policy of favoring company stock funds.[42] By adopting the presumption, courts act consistently with goal of Congress to encourage retention of employer stock.

> Congress, however, has chosen to follow a "strong policy and preference in favor of investment in employer stock." *Fink v. Nat'l Sav. & Trust Co.,* 772 F.2d 951, 956 (D.C.Cir.1985) (internal quotation marks omitted); *see also Martin,* 965 F.2d at 664 (noting dual purpose of an ESOP as "both an employee retirement benefit plan and a technique of corporate finance that would encourage employee ownership" (internal quotation marks omitted)). Apparently, Congress considered the possible benefits to employees and employers from undiversified investments in employer stock and found them to out-weigh the risks inuring from such strategy.[43]

Of course, plan participants and plan fiduciaries can overcome the presumption in appropriate cases by establishing that a company's stock is experiencing a precipitous decline in price and that the company is on the verge of collapse.[44]

Here, the record is clear that Grace common stock was not in a freefall.[45] The record further is clear that Grace never was on the verge of imminent collapse.[46] Based on the undisputed record, the imposition of the presumption is logical and consistent with ERISA. Indeed, as State Street argued and the United States District Court found in the U.S. Airways litigation, an ERISA fiduciary only should eliminate a company stock fund when it has credible evidence that an imminent collapse will occur.

---

[42] *See,* State Street Memorandum in Support of Summary Judgment (Doc. No. 184) at 17 (Congress has a "strong policy and preference in favor of investment in employer stock."), attached as Exhibit "E"; *see also, In re Williams Cos. ERISA Litig.,* 271 F.Supp.2d 1328, 1331-32 (N.D.Okla.2003).

[43] *DiFelice v. U.S. Airways, Inc.*, 2007 WL 2192896 at *11 (4th Cir. Aug. 1, 2007).

[44] *See,* Plaintiffs' Memorandum in Support of Summary Judgment (Doc. No. 180 ) at 13-14.

[45] Defendants' Response to Plaintiffs' Rule 56.1 Statement of Uncontested Facts (Doc. No. 194) to Statement No. 4.

[46] Defendants' Response to Plaintiffs' Rule 56.1 Statement of Uncontested Facts (Doc. No. 194) to Statement Nos. 5, 6, 8, 9 and 10.

> Such information generally consists of "public indicators" that show "an imminent collapse, as opposed to long-term indicators that could, for example, forecast a company's future obsolescence."[47]

Consistent with this analysis, the Untied States District Court for the Northern District of Georgia in *In re: Coca-Cola Enterprises Inc., ERISA Litigation*,[48] held that a fiduciary only should eliminate a company stock fund when strong evidence exists that the company is on the verge of collapse and participants lack any incentive to participate.[49]

### C. State Street's Process Was Flawed Because It Admittedly Failed To Understand The Plan And Its Investment Options.

In its opposition to Plaintiffs' Motion for Summary Judgment, State Street highlights the importance of understanding the Plan, the available investment options, and how Participants allocated their investments. In its opposition, State Street claims that "efficient trading of the Grace stock, by itself, says nothing about the prudence of the stock as an investment…particularly an individual account plan under which participants could invest **all** of their retirement assets in the Grace Stock Fund."[50] (Emphasis in original). If State Street, however, had considered the Plan, the investment options, and the Plan's asset allocation, State Street would have understood that Plan Participants did not and could not invest all of their retirement assets in the Grace Stock Fund. First, Grace, prior to engaging State Street, closed the Fund to new investments.[51] Second, the

---

[47] *Summers v. UAL Corp.*, 005 WL 2648670 (N.D.Ill.) at *4, 36 Employee Benefits Cas. 1019 (N.D. Ill. October 5, 2005), a copy of the decision is attached as Exhibit "B" *aff'd* 453 F.3d 404 (7th Cir. 2006). *See,* State Street's Memorandum in Support of Summary Judgment in *Summers* at 8, attached as Exhibit "D" (to prove that retention is inconsistent with ERISA proof must exist "without 20/20 hindsight that reliable contemporaneous, publicly available information call[ed] into serious question" the company's short-term viability as an ongoing company).
[48] 2007 WL 1810211 (N.D. Ga., June 20, 2007).
[49] 2007 WL 1810211 at *10.
[50] State Street Opposition to Plaintiffs' Motion for Summary Judgment (Doc. No. 192) at 10.
[51] Rule 56. 1 Statement of Undisputed Facts of Grace Defendants (Doc. No. 179) Fact No. 6.

Plan Participants only allocated 4% of their assets to the Grace Stock Fund.[52] Plan Participants who chose to invest in the Grace Stock Fund only invested 7% of their assets in the Fund.[53] Third, the Plan provided Participants with the opportunity, even including, the Grace Stock Fund, to create a diversified portfolio.[54] However, State Street failed to understand these facts, and therefore, certainly failed to understand how an efficient market taken in conjunction with the facts and circumstances supported retention of the Grace Stock Fund.

State Street's references to 29 C.F.R. § 2550.404a-1(b) (1) and to *DiFelice v. U.S. Airways, Inc.*,[55] do not support State Street's contention that it was entitled to ignore everything except the Grace Stock Fund. First, even State Street's retained expert, Thomas Hogan, testified that a fiduciary should consider Participants' investment practices.

> Q.   Do you have an understanding as to the reason why it would be necessary to review participant activity post petition?
>
> MR. FLICKER:  Objection.
>
> THE WITNESS:  I think you want to always look at what the participants have been doing to get a feel for what's going on in the plan and what's been going on in the plan, what redemptions, what investments, those kinds of things, so I don't think that's anything out of the ordinary.
>
> Q.   What would be the reason you would want to get a feel for what the participants are doing?
>
> A.   I think you would want to see how many people have invested in the company.  Since they are responsible for the company stock fund, you

---

[52] Defendants' Response to Plaintiffs' Rule 56.1 Statement of Uncontested Facts (Doc. No. 194) to Statement No. 16.
[53] *See,* Mulligan Deposition at 66, relevant portions of the deposition are attached as Exhibit "E".
[54] Defendants' Response to Plaintiffs' Rule 56.1 Statement of Uncontested Facts (Doc. No. 194) to Statement No. 14.
[55] 436 F.Supp.2d 756, 782 (E.D. 2006) *affirmed* --- F.3d ----, at *8, 2007 WL 2192896 (4th Cir. August 1, 2007).

would want to see monies that had gone into the company stock fund and monies that had gone out.[56]

Second, 29 C.F.R. § 2550.404a-1(b) (1) does not prevent, as State Street suggests, an ERISA fiduciary from considering other Plan investments when deciding whether retention of a company stock fund is consistent with ERISA. To the contrary, if as Mr. Hogan opined, the investment history is a relevant fact and circumstance, 29 C.F.R. § 2550.404a-1(b) (1) would require State Street, as a Plan fiduciary, to review the investment history.

Third, State Street's discussion of *DiFelice v. U.S. Airways, Inc.*[57] fails to recognize that the United States Court of Appeals for the Fourth Circuit highlighted the importance of understanding the Plan and the available options when deciding whether to retain a company stock fund. Indeed, in *DiFelice*, the court expressly held that an ERISA fiduciary should consider the totality of the circumstances.

> In determining whether U.S. Airways has done so here we examine the totality of the circumstances, including, but not limited to: the **plan structure and aims**, the **disclosures made to participants** regarding the general and specific risks associated with investment in company stock, and the nature and extent of challenges facing the company that would have an effect on stock price and viability.[58] (Emphasis added.)

Instead of focusing on known facts, the plan's structure and aims and the disclosures that Grace made to Plan Participants, State Street emphasized the unmeasured possibility that Grace common stock might lose value. According to *DiFelice*, this type of speculation does not justify elimination of the stock fund.[59]

---

[56] *See,* Plaintiffs' Reply to Defendants' Rule 56.1 Statements of Uncontested Facts, Counter Statement of Fact No. 17 (Doc. No. 189), Hogan Deposition at 159-60, attached as Exhibit I.
[57] 2007 WL 2192896 (4th Cir. Aug. 1, 2007).
[58] 2007 WL 2192896 at *5.
[59] *See, DiFelice,* 2007 WL 2192896 at *12 (retention of company stock fund does not violate ERISA merely because the fiduciary held the company stock fund "during a time of grave uncertainty for the company, no matter how significant the Employees' ultimate financial losses").

## II. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT AGAINST THE GRACE DEFENDANTS BECAUSE GRACE LACKED ANY LEGAL JUSTIFICATION FOR FAILING TO MONITOR.

### A. Grace Failed To Take Any Action To Keep Itself Apprised As To What State Street Was Doing As The Delegated Investment Manager.

The basis for the Bunch Plaintiffs' motion for summary judgment is that Grace admits that it failed to take any meaningful action to determine whether State Street's was performing its role in a manner that complied with the plan's terms and needs and statutory standards.[60] Instead, Grace "wiped its hands" and relied on State Street's representations as to how State Street might perform its job. Grace, in fact, never sought any information from State Street concerning the basis for eliminating the Grace Stock Fund. Yet, two months before State Street eliminated the Fund, Grace believed that the Stock Fund was consistent with ERISA.[61]

Although Grace contends that it performed some monitoring,[62] the Bunch Plaintiffs' note that Grace's alleged monitoring activities primarily occurred before the engagement or were initiated by State Street.[63] In any event, Grace admits that it never took any action to ascertain why State Street had decided to eliminate the Stock Fund.[64] Certainly, Grace had the responsibility to at least inquire regarding the reason that the Stock Fund suddenly became inconsistent with ERISA. Without such an inquiry, Grace was incapable of learning whether State Street performed its role in manner that complied with the terms of the Plan, with the Plan's needs and with statutory standards. Of course,

---

[60] DOL Reg. §2509.75-8, 29 CFR §2509.75-8(FR-17).
[61] Defendants' Response to Plaintiffs' Rule 56.1 Statement of Uncontested Facts (Doc. No. 194) to Statement No. 18.
[62] *See,* Grace Defendants' Opposition to Motion to Dismiss (Doc. No. 190) at 4.
[63] Plaintiffs' Reply to Defendants' Rule 56.1 Statements of Uncontested Facts, Counter Statement of Fact Nos. 1,2, and 8 (Doc. No. 189).
[64] Defendants' Response to Plaintiffs' Rule 56.1 Statement of Uncontested Facts (Doc. No. 194) to Statement No. 33.

this inquiry does not in anyway inject Grace into the decision making process, but is necessary to permit Grace to fulfill its duty to monitor.

### B. Grace Did Not Have Any Conflict That Prevented Grace From Monitoring State Street.

Grace, in its response to Plaintiffs' Rule 56.1 Uncontested Statement of Facts, claims that the reason that a hypothetical conflict did not exist was because Grace delegated the responsibility to State Street.[65] Grace is wrong. Its Chief Financial Officer and Senior Member of the Investment and Benefits Committee, Robert Tarola, testified that the reason a hypothetical conflict never arose was because Grace did not possess undisclosed material financial information and because Grace did not work on the Plan of Reorganization during the four months that State Street served as Investment Manager.[66] Accordingly, a potential conflict of interest did not pose any barrier to Grace to fully and completely monitor State Street.

### III. PLAINTIFFS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW REGARDING THE MANNER TO CALCULATE DAMAGES

Defendants do not dispute that the proper measure of damages is what the Plan would have earned had Defendants exercised their discretionary authority with respect to its investment and allocation decisions in accordance with its fiduciary duties under ERISA."[67] Although certain questions may exist regarding the variables, Defendants, through their damage expert acknowledge that Plaintiffs' expert applied the proper analysis to determine the difference in the value of the Plan if the Plan continued to hold

---

[65] Defendants' Response to Plaintiffs' Rule 56.1 Statement of Uncontested Facts (Doc. No. 194) to Statement No. 34.
[66] Tarola Deposition at 110, 143-44, relevant portions of the deposition are attached as Exhibit "C".
[67] *Harris Trust and Savings Bank v. John Hancock Mutual Life Insurance Co.*, 302 F.3d 18, 34 (2nd Cir. 2002). *See also, Donovan v. Bierwirth,* 754 F.2d 1049, 1056 (2nd Cir. 1985).

the Grace Stock Fund.[68] Accordingly, Plaintiffs are entitled to summary judgment on the method of calculating damages.

## CONCLUSION

For the reasons contained in Plaintiffs' Motion and Memorandum in Support of Summary Judgment and other related pleadings, including this Reply Memorandum, Plaintiffs request summary judgment on liability against both Defendants and an Order that holds that the proper measure of damages is a determination of the value of the Plan if it had retained the Grace Stock Fund.

Dated:  September 10, 2007        Respectfully submitted,

                                                                      WAITE, SCHNEIDER, BAYLESS
                                                                      & CHESLEY CO., L.P.A.

/s/ *James R. Cummins*_____
James R. Cummins
Jane H. Walker
Terrence L. Goodman
1513 Fourth & Vine Tower
One West Fourth Street
Cincinnati, Ohio  45202
Telephone:  (513) 621-0267
Facsimile:  (513) 381-2375
E-mail:  jcummins@wsbclaw.com
E-mail:  janehwalker@wsbclaw.com
E-mail: terrygoodman@wsbclaw.com

                                                               and

---

[68] *See,* James Deposition at 144-45, relevant portions of the deposition are attached as Exhibit "F".

                    BERMAN DEVALERIO PEASE
                    TABACCO BURT & PUCILLO

/s/ *Jeffrey C. Block*_____
Jeffrey C. Block
One Liberty Square
Boston, Massachusetts 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194
Email: jblock@bermanesq.com

*Counsel for Lawrence W. Bunch, Jerry L. Howard, Sr. and David Mueller, Both Individually and Behalf of All Others Similarly Situated*

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2007, I filed the Bunch Plaintiffs' Reply Memorandum of Law in Support of the Motions for Summary Judgment Against the Grace Defendants and the State Street Defendants through the ECF system. It was sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies were sent to those indicated as non-registered participants on September 10, 2007.

                    Respectfully submitted,

                    WAITE, SCHNEIDER, BAYLESS
                     & CHESLEY CO., L.P.A.

/s/ *Jane H. Walker*_____
James R. Cummins
Jane H. Walker
Terrence L. Goodman
1513 Fourth & Vine Tower
One West Fourth Street
Cincinnati, Ohio 45202
Telephone: (513) 621-0267
Facsimile: (513) 381-2375
E-mail: jcummins@wsbclaw.com
E-mail: janehwalker@wsbclaw.com
E-mail: terrygoodman@wsbclaw.com

17