IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KERI EVANS,<br><br>                Plaintiff,<br><br>v.<br><br>JOHN F. AKERS, *et al.*<br><br>                Defendants.<br><br>―――――――――――――――――<br><br>LAWRENCE W. BUNCH, *et al.*<br><br>                Plaintiffs,<br><br>v.<br><br>W.R. GRACE & CO., *et al.*<br><br>                Defendants. | Consolidated as:<br>Case No. 04-11380-WGY |

**REPLY BRIEF IN SUPPORT OF
STATE STREET BANK AND TRUST COMPANY'S
MOTION FOR SUMMARY JUDGMENT**

     All parties have moved for summary judgment on essentially the same set of undisputed facts. Those facts establish that Defendants State Street Bank & Trust Co. and State Street Global Advisors (collectively, "State Street") are entitled to a judgment dismissing the claims against them.[1]

---

[1] The Defendants in this action are State Street, W. R. Grace & Co. ("Grace") and numerous individuals (with Grace, the "Grace Defendants") who are alleged to have been fiduciaries of the W. R. Grace & Co. Employees Savings and Investment Plan (the "Grace Plan" or the "Plan"). The Grace Defendants have filed a separate motion for summary judgment. (Ct. File No. 177)

I. **THE MATERIAL FACTS ARE UNDISPUTED, AND STATE STREET IS ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIMS ASSERTED BY PLAINTIFFS AGAINST IT.**

Plaintiffs contend that State Street, in its capacity as an independent investment manager to the company stock fund of the Grace Plan, violated the prudent investment requirements of ERISA when it decided, after a thorough evaluation, to divest the Plan of what State Street concluded was a volatile and risky investment: the common stock of Grace, a company in bankruptcy facing massive potential liabilities for asbestos litigation claims. Discovery having closed and the material facts having been established, State Street is entitled to summary judgment.

Plaintiffs have raised no substantive dispute as to the key facts supporting State Street's motion,[2] which include:

1.   In 2001 Grace filed for bankruptcy, citing large contingent asbestos liabilities and warning that "[t]he interests of Grace's shareholders could be substantially diluted or cancelled under a plan of reorganization." (State Street SOF ¶¶ 5-9)

2.   In 2003, the Grace Plan fiduciaries retained State Street as independent investment manager for the Grace Stock Fund with "the continuous authority and duty to determine the extent that the continued retention of shares of Grace Stock within the Grace Stock Fund is not consistent with the applicable provisions of [ERISA], and to take actions in this regard that it deems appropriate; including the authority to dispose of Grace Stock held with in

---

[2] *See* Statement of Undisputed Facts in Support of State Street Bank and Trust Company's Motion for Summary Judgment (Ct. File No. 185) ("State Street SOF"), filed in accordance with Local Rule 56.1.

the Grace Stock Fund and to close the Grace Stock Fund to participant trading[.]" (State Street SOF ¶¶ 4, 14)

3.  State Street had substantial, industry-leading experience in providing investment advice to ERISA-governed company stock funds and employed a formal committee structure and procedures for evaluating company stock investments that are consistent with industry standards. (State Street SOF ¶¶ 19-30)

4.  State Street retained qualified, independent legal advisors (Goodwin Procter LLP) and financial advisors (Duff & Phelps, LLC) experienced in the fields of ERISA, bankruptcy and asbestos litigation to assist State Street in evaluating the prudence of the Fund's Grace stock investment. (State Street SOF ¶¶ 31-37)

5.  Prior to the effective date of its engagement in December 2003 and thereafter, State Street and its advisors gathered and evaluated information regarding the market for Grace stock; the financial performance and outlook for Grace; the Grace bankruptcy proceedings; the documentation and structure of the Plan; Grace's contingent asbestos liabilities and factors that could affect those liabilities; Grace's insurance coverage; Securities and Exchange Commission restrictions on sales by the Grace Stock Fund of its holdings; and risks to the Plan of both holding and selling the Grace stock. (State Street SOF ¶¶ 38-47)

6.  In February 2004, after several meetings, and based on the due diligence and analysis conducted by the State Street team and its advisors, State Street's Fiduciary Committee concluded that the Grace Stock Fund's continued holding of its large block of Grace stock was not consistent with ERISA, and it voted to commence a program to sell shares in the open

market, so long as the price did not fall below the mid-point of an equity value range provided by Duff & Phelps.  (State Street SOF ¶¶ 60-66)

7.     After State Street began selling Grace stock, it continued to monitor the market for Grace stock and received updates from Duff & Phelps and Goodwin Procter on the financial, legal and political factors affecting Grace.  (State Street SOF ¶¶ 67, 75)

8.     In April 2004, after having sold just over 10% of the Grace Stock Fund's holdings of Grace stock in open-market transactions, State Street received an unsolicited offer from D. E. Shaw, a hedge fund with no relationship to State Street, for the remaining block of Grace stock held by the Grace Stock Fund, at a premium over the market price.  (State Street SOF ¶¶ 71-74)

9.     The State Street team and its advisors met to discuss the D. E. Shaw offer and other recent developments regarding the Grace stock.  (State Street SOF ¶¶ 75-76)

10.    Thereafter, State Street's Fiduciary Committee met and evaluated the D. E. Shaw offer, reviewing the bases for its original determination that the Grace stock was an imprudent investment for the Plan; the status of the Grace bankruptcy; the uncertainty that equity holders would receive value for the stock in reorganization; the possible motivations for D. E. Shaw's offer (including whether there was any material public information about Grace of which State Street was unaware); and whether it was in the best interests of the Grace Plan participants and beneficiaries for State Street to accept or reject D.E. Shaw's offer.  (State Street SOF ¶¶ 78, 80-84)

11.     The Fiduciary Committee voted to accept the offer, and sold the Grace Stock Fund's remaining holdings of Grace stock to D. E. Shaw for a premium of approximately 18% above the market price. (State Street SOF ¶¶ 85-87)

As noted, Plaintiffs do not contest these facts in any manner material to this motion.[3] The undisputed facts establish that State Street fully complied with the prudence requirements of ERISA. In evaluating whether a fiduciary acted prudently under ERISA, "the court should inquire whether the fiduciaries 'at the time they engaged in the challenged transaction, employed the appropriate methods to investigate the merits of the investment and to structure the investment.'" *Ulico Casualty Co. v. Clover Capital Mgmt., Inc.,* 335 F. Supp. 2d 335, 340 (N.D.N.Y. 2004) (quoting *Katsaros v. Cody,* 744 F.2d 270, 279 (2d Cir. 1984), *cert. denied sub nom, Cody v. Donovan,* 469 U.S. 1072 (1984)). "ERISA's test of prudence is one of *conduct*, and not a test of the result of performance of [the] action taken by the fiduciary. The focus of the inquiry is what steps the fiduciary took before making the decision to act, and not whether the action succeeded or failed." *Ulico,* 335 F. Supp. 2d at 340 (emphasis added) (citing *Donovan v. Cunningham,* 716 F.2d 1455, 1467 (5th Cir. 1983) (internal quotation and citation omitted), *cert.*

---

[3] Plaintiffs filed a "Reply" to the Defendants Rule 56.1 statements (Ct. File No. 189), but did not particularly controvert the vast majority of State Street's statements of undisputed fact, which are therefore deemed admitted. *See* Local Rule 56.1. Plaintiffs asserted "Objections" to seven of State Street's statements, but raised only immaterial (indeed, trivial) issues. *See e.g.,* Plaintiffs' response to State Street SOF 43 ("dispute" as to whether the first meeting of State Street's Fiduciary Committee occurred before or after the effective date of State Street's engagement); *see also* response to State Street SOF 46 ("dispute" because statement is allegedly "vague and unclear as to the time period involved"). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. For the purposes of summary judgment, genuine means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a material fact is one which might affect the outcome of the suit under the governing law." *Mulloy v. Acushnet Co.,* 460 F.3d 141, 145 (1st Cir. 2006) (internal quotations and citations omitted) (emphasis in original). *See* Defendants' Joint Response to Plaintiffs' Rule 56.1 Counterstatement of Uncontested Facts.

*denied,* 467 U.S. 1251 (1984)). "The right inquiry, therefore, is whether the fiduciary, prior to making the challenged transactions, employed appropriate methods to investigate the merits [] of the actions to be taken." *Id.* (citing *Donovan v. Mazzola,* 716 F.2d 1226 (9th Cir. 1983), *cert. denied,* 464 U.S. 1040 (1984)). State Street is entitled to summary judgment because the undisputed facts show that State Street satisfied its duty to the participants by employing appropriate methods to investigate the merits of holding versus selling the Grace stock.

## II. **PLAINTIFFS RAISE NO VALID ISSUE FOR TRIAL AND THE FACTS FAIL TO ESTABLISH ANY VIOLATION OF ERISA BY STATE STREET.**

In opposition to State Street's motion for summary judgment (as in their own motion for summary judgment), Plaintiffs advance theories that are flatly contradicted by ERISA and selectively mischaracterize or distort the record in an effort to manufacture purported admissions or factual disputes. Plaintiffs' tactics neither withstand scrutiny nor suffice to raise a valid issue for trial by the Court.

### A. **State Street Has Fully Addressed Plaintiffs' Claims That State Street "Ignored" the Plan's Structure and "Second-Guessed" the Market for Grace Stock.**

In their Opposition, Plaintiffs contend that State Street's decision to sell Grace stock from the Plan was *per se* imprudent because State Street "ignore[d] the Plan's structure and [] second-guess[ed] an efficient market[.]"[4] As explained fully in State Street's opening memorandum, and in State Street's opposition to Plaintiffs' motion, these contentions reduce to nothing more than an improper request that this Court conduct a *de novo* review, in hindsight, of the prudence of the Grace stock and substitute its own conclusion for that validly reached by State Street.

---

[4] Bunch Plaintiffs' Opposition to Motions of the Grace Defendants and the State Street Defendants for Summary Judgment (Ct. File No. 191) ("Pl. Opp.") at 2.

Specifically State Street did not, as the Plaintiffs conclusorily assert, "second-guess" the efficient market in deciding to sell the Grace stock.  State Street was engaged to determine the prudence of the Grace stock as an investment for the Plan.  In carrying out this engagement, State Street was required to evaluate the risk that, in the reorganization process, the common stock of Grace would be rendered worthless, or at least worth substantially less than its current trading price.  The then-current market price for Grace stock was a factor – but only one factor – considered by State Street in this evaluation.  State Street also considered the potential size of Grace's asbestos liabilities and the prospect that subsequent events in the Grace bankruptcy could render those liabilities to be fixed at an amount greater than the available equity value of the company.[5]  State Street retained qualified legal and financial advisors to assist it in evaluating those factors and concluded that the risks to the Plan of continuing to hold the stock were sufficiently large to render the investment imprudent.

As State Street explained in detail in its other briefs, Plaintiffs would have this Court rule that a fiduciary always violates ERISA by selling any efficiently-traded stock that has a positive market value, even if the fiduciary, after a thorough investigation, concludes that the stock is no longer a prudent investment for the plan.  Such a "*per se*" rule simply does not comport with ERISA, the Department of Labor's regulations and guidance, nor applicable case law.  *See, e.g.,* State Street's Opening Memorandum at 15-17; State Street's Opposition at 10-11.

---

[5] Grace's own executives made clear in a March 2003 presentation to employees that even they could not predict how the company's asbestos liabilities would affect the ultimate value of the common stock in the bankruptcy process: "At this point it's very, very speculative because we probably have a better view of what our liabilities are than anybody in the world, and we don't know where this is going to come out.  So when outside investors make this call and they try to figure it out, they're guessing, and essentially gambling.  And that makes it a very speculative investment, and unfortunately the stock price at this point doesn't really reflect our effort in running the business and how well we do. … [W]e really won't have a good feel for what shareholders are going to get." *See* Exh. A to Plaintiffs' Motion for Summary Judgment, at GRA-B2 006089-90.

Plaintiffs' other oft-repeated assertion – that State Street "ignored" the Plan's structure and in particular the ability of participants to transfer their Grace stock holdings to other investment options under the Plan -- was thoroughly addressed in State Street's Opening Memorandum at 17-19 (as well as State Street's Opposition at 14-16).  In summary, as independent investment manager solely for the Grace Stock Fund, State Street acted fully in accordance with the DOL's regulations providing that ERISA's prudence requirement is met where the fiduciary gives "appropriate consideration" to those facts and circumstances relevant to "*the particular investment or investment course of action involved*, including the role the investment or investment course of action plays *in that portion of the plan's investment portfolio with respect to which the fiduciary has investment duties*…." 29 C.F.R. § 2550.404(b) (emphasis added).  As the Fourth Circuit recently held in *DiFelice v. U.S. Airways Corp.,* ___ F.3d ___, 2007 WL 2192896, No. 06-1892 (4th Cir. Aug. 1, 2007), "the relevant 'portfolio' that must be prudent is *each* available Fund considered on its own, including the Company Fund, not the full menu of Plan funds." *Id.* at *10 (emphasis in original).  Here, State Street had investment responsibilities solely for the Grace Stock Fund, and Plaintiffs' effort to fault State Street's process for evaluating the prudence of the Grace Stock Fund on its own simply raises no issue of fiduciary breach under ERISA.

B. **Plaintiffs Cannot Defeat Summary Judgment By Distorting the Testimony of Defendants' Prudence Expert.**

Plaintiffs try to manufacture the appearance of a triable issue by selectively citing the testimony of Thomas Hogan, Defendants' expert witness, pertaining not to the process and steps taken by State Street in this case, but to other cases and companies having nothing to do with Grace or the Grace Stock Fund at issue.  In essence, Plaintiffs assert that because fiduciaries have, in other instances, elected to hold rather than sell company stock when those companies

faced financial distress, ERISA could not have required that State Street sell the Grace stock in this case.

Plaintiffs' position is fundamentally misguided because it would have this Court focus on the *result* of a fiduciary's investment decision (whether or not to sell company stock) rather than on the appropriateness of the fiduciary's *process* in reaching that decision. As noted above, ERISA's prudent person standard "is one of conduct, and not a test of the result of performance of action taken by the fiduciary." *Ulico,* 335 F. Supp. 2d at 340 (citing *Donovan v. Cunningham,* 716 F.2d 1455, 1467 (5th Cir. 1983) (internal quotation and citation omitted), *cert. denied,* 467 U.S. 1251 (1984)). Given ERISA's focus on a prudent *process,* Plaintiffs raise no relevant point by arguing that neither Mr. Hogan, while serving as a fiduciary for the company stock fund of a distressed bank, nor the Grace Investment Committee, while it retained discretion for the Grace Stock Fund, elected to sell the company stock. Those different *results,* reached under different facts and circumstances, say *nothing* about whether State Street undertook a prudent process to evaluate the Grace stock in this case.[6]

Nor do Plaintiffs raise any valid issue in citing State Street's actions and Mr. Hogan's opinions in a completely different case. *In re: Polaroid ERISA Litigation*, 362 F. Supp. 2d 461 (S.D.N.Y. 2005). As an initial matter, Plaintiffs simply misstate Mr. Hogan's testimony regarding his opinion in *Polaroid*. Mr. Hogan did not testify, as Plaintiffs contend, that State Street "was correct in holding the Polaroid stock" during the period that the stock was declining prior to bankruptcy. Pl. Opp. at 6. Rather, Mr. Hogan stated that State Street followed a prudent *process* in deciding to divest the company's retirement plan of its Polaroid stock following the

---

[6] Moreover, as Plaintiffs' own expert concedes, reasonable fiduciaries can reach different conclusions even about the same investment. Mulligan Tr. at 156, Exhibit D to Declaration of Counsel in Support of Defendants' Joint Response to Plaintiffs' Counterstatement.

bankruptcy.[7] Thus, to the extent that Mr. Hogan's opinions in *Polaroid* are at all related to his opinions this case, they are wholly consistent.

### C. Plaintiffs Present No Dispute of Material Fact Preventing Summary Judgment on Their "Self-Dealing" Claim Against State Street.

Having reached the close of discovery, Plaintiffs muster but one sentence in support of their ever-shifting claim of "self-dealing" against State Street, now contending that "State Street benefited from the sale of Grace common stock because it made more shares of Grace available for purchase." Pl. Opp. at 13. Plaintiffs cite not even a *shred* of evidence that State Street's decision to sell the Grace Stock Funds shares to unrelated parties was in whole or in part motivated by a desire to make Grace shares "available" for purchase by other investment funds under State Street's management. Nor is there any evidence in the record that Grace shares were unavailable for purchase in the open market. Indeed, given Plaintiffs' assertions throughout its brief that the market for Grace stock was efficient and freely trading, Plaintiffs' latest self-dealing contentions simply make no sense at all. Of course, as State Street has noted all along, the mere fact that other funds under management by State Street held Grace stock as part of large, diversified index funds has no bearing on the propriety of State Street's actions as independent investment manager for the Grace Stock Fund and implicates no fiduciary duty under ERISA whatsoever. *See* Memorandum in Support of State Street's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint, at 15-18 (Ct. File No. 147). The undisputed evidence establishes definitively that in deciding to sell the Grace stock State Street acted solely in the interests of the participants and beneficiaries of the Grace Plan.

---

[7] Hogan Dep. 81:15-85:1, attached as Exhibit I to Plaintiffs' "Counterstatement of Uncontested Facts in Response to Defendants' Rule 56.1 Facts."

### III. CONCLUSION.

For the foregoing reasons, State Street respectfully requests that summary judgment be granted in its favor on all claims against it in First Amended Complaint (Ct. File No. 138).

Dated:  September 10, 2007               Respectfully submitted,

                                         STATE STREET BANK AND TRUST COMPANY
                                         By its counsel,

                                         ___/s/ Sean T. Carnathan_____
                                         Sean T. Carnathan (BBO #636889)
                                         ([scarnathan@ocmlaw.net](scarnathan@ocmlaw.net))
                                         O'CONNOR, CARNATHAN, MACK LLC
                                         8 New England Executive Park, Suite 310
                                         Burlington, MA 01803
                                         Telephone: (781) 359-9000
                                         Facsimile: (781) 359-9001


                                         -and-


                                         Scott M. Flicker
                                         ([scottflicker@paulhastings.com](scottflicker@paulhastings.com))
                                         PAUL, HASTINGS, JANOFSKY & WALKER LLP
                                         875 15th Street, NW
                                         Washington, DC 20005
                                         Telephone: (202) 551-1700
                                         Facsimile: (202) 551-1705

**CERTIFICATE OF SERVICE**

      I here certify that this Reply and the documents filed in support of it through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on September 10, 2007.

| | |
|---|---|
| __September 10, 2007__ | __/s/ Sean T. Carnathan_____ |
| Date | Sean T. Carnathan |