**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| KERI EVANS, *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> JOHN F. AKERS, *et al.* <br><br> Defendants. <br><br> ———————————————— <br><br> LAWRENCE W. BUNCH, *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> W. R. GRACE & CO., *et al.* <br><br> Defendants. | Consolidated as: <br> Case No. 04-11380-WGY |

**DEFENDANTS' JOINT RESPONSE TO PLAINTIFFS'**
**RULE 56.1 COUNTERSTATEMENT OF UNCONTESTED FACTS**

Defendants W. R. Grace & Co. ("Grace"), W. R. Grace & Co. Investment and Benefits Committee, John F. Akers, H. Furlong Baldwin, Ronald C. Cambre, Marye Anne Fox, John J. Murphy, Paul J. Norris, Thomas A. Vanderslice, Fred E. Festa, and Robert M. Tarola (collectively, the "Grace Defendants") and State Street Bank and Trust Company and State Street Global Advisors ("State Street") (collectively, "Defendants") jointly submit the following response to the "Bunch Plaintiffs' Rule 56.1 Counterstatement of Uncontested Facts":

1.  Plaintiffs admit 40 of the 43 facts set forth by the Grace Defendants, and 86 of the 93 facts submitted by State Street. And they do not really "dispute" most of the 10 facts to which they have lodged objections; rather, Plaintiffs simply raise trivial issues (*e.g.,* that State Street's due diligence on the Grace stock investment started before its official retention date, and that a vote of the Fiduciary Committee to sell the stock was not "unanimous" because one member did not vote at all) or complain, for example, that the statements of fact are "vague and unclear as to the time period involved" or are "incomplete." These types of "objections" are insufficient to create a material factual issue for trial. Moreover, as explained in the Defendants' respective reply briefs, the remaining 126 undisputed material facts form more than a sufficient basis on which to grant summary judgment in favor of all the Defendants.

2.  In addition, however, Plaintiffs have submitted a new set of 33 "uncontested facts." Doing so at this stage of the proceedings is wholly inappropriate. Plaintiffs set forth "undisputed material facts" in their initial Rule 56.1 Statement and then had the opportunity to dispute the material facts in Defendants' Rule 56.1 Statements. This is all the rules allow. Consequently, the Court may simply disregard this improper submission.

3.  But Plaintiffs' purported additional "uncontested facts" are insufficient in any event to defeat Defendants' entitlement to summary judgment. The 33 "facts" all fall within one of several categories: (i) they are uncontested (and consistent with summary judgment for Defendants); (ii) they are not facts at all but instead constitute inappropriate legal conclusions; (iii) they simply repeat portions of Plaintiffs' initial Rule 56.1 Statement; (iv) the record citations submitted to support the purported "facts" do not do so on their face, represent a mischaracterization of the substance of the cited documents, or both; or (v) the "facts" are taken out of context and are inconsistent with the record evidence as a whole.

4.      Defendants do not dispute the following of Plaintiffs' new "uncontested facts":  6, 7, 10, 11, 12, 13, 14, 22, 23, 24, 26, 27, 28, 31.[1]

5.      Defendants object to, and therefore dispute, the following of Plaintiffs' new "uncontested facts" as inappropriate legal conclusions:  1, 17, 33.

6.      The following of Plaintiffs' purportedly new "uncontested facts" simply repeat portions of their initial Rule 56.1 Statement:  18 is virtually identical to Numbers 26 and 27 of Plaintiffs' initial Rule 56.1 Statement; and 25 is identical to Number 21 of Plaintiffs' initial Rule 56.1 Statement.  Defendants incorporate by reference their responses to those initial Statements.

7.      Defendants dispute the following of Plaintiffs' new "uncontested facts" as not supported by the cited documents or testimony, based on a mischaracterization of those record cites, or both:  2, 3, 4, 9, 15, 21, 32.

8.      Defendants dispute the following of Plaintiffs' new "uncontested facts" as taken out of context and mischaracterizing the record evidence as a whole:  5, 8, 16, 19, 20, 29, 30.  As such, these assertions raise no genuine issue for trial, as shown in the following explanation:

   a.    **Uncontested Fact Number 5:**  *"The reason that Grace hired State Street was to protect members of the Investment and Benefits Committee (McGowan and Tarola) from potential liability."*  (Tarola Tr., at 124, Exhibit "A.")

   **Response:**  Mr. Tarola testified that the "only reason" the Grace fiduciaries hired State Street to be independent fiduciary of the Grace Stock Fund was the potential conflict of interest they faced, which conflict exposed them to legal liability:

---

[1] Plaintiffs "Uncontested Fact" No. 24 provides that "Defendants understood that D.E. Shaw was a hedge fund that utilized sophisticated investment tools." Defendants do not contest that D.E. Shaw was a sophisticated investor; however, Plaintiffs provide no support for the assertion that any Defendant other than State Street, through its representative Shawn Johnson, was aware of what kind of investment tools it utilized.

3

> Q. Okay. Other than the conflict that Mr. Norris described and we've talked about in a previous exhibit, was there any other reason that you – that was the basis for your decision to hire State Street to do this work?
> A. Other than that hypothetical conflict?
> Q. Yes.
> A. No. That's the only reason.
>    *  *  *
> Q. Did you think that you would have some liability, some responsibility in a legal way . . . if you didn't take this State Street step?
>    *  *  *
> A. Yes, I thought I did have legal liability if we didn't take this step.
> Q. So as I understand what happened – and tell me if I'm wrong – in order to keep you and Mr. McGowan safe from some legal liability, you allowed State Street to make its decision on eliminating this option' is that correct?
>    *  *  *
> A. That's correct.

(Tarola Tr. 122-24, attached to Declaration of Counsel in Support of Defendants' Joint Response to Plaintiffs' Counterstatement as Exhibit E.) And Mr. Tarola was absolutely right: ERISA imposed on him and the other Grace fiduciaries the responsibility to "avoid[] . . . conflicts of interest." *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 252 (1993).

      b.    **Uncontested Fact Number 8:** *"The Chairman of the Investment [sic] Benefits Committee and Grace's Chief Financial Officer [Tarola] believed that Grace did not provide information to State Street and that State Street acquired everything it needed from the internet."* (Tarola Tr., at 49-50, 149, Exhibit "A.")

      **Response:** Tarola was well aware that Grace provided information to State Street, and he participated in that process. He testified to his involvement in a "due diligence" meeting between representatives of State Street and Grace in late December 2003 (Tarola Tr. at 139-40, attached to Declaration of Counsel in Support of Defendants' Joint Response to Plaintiffs' Counterstatement as Exhibit E), as well as conversations he personally had with representatives of the State Street team (*Id*. at 47-48, attached to Declaration of Counsel in

4

Support of Defendants' Joint Response to Plaintiffs' Counterstatement as Exhibit E). In fact, Tarola testified unequivocally that while he could not remember the specific names of the people he spoke with, "I do recall talking to the State Street team before they assumed the independent fiduciary obligation and periodically as they were performing that job . . . ." (*Id*. at 53-54, attached to Declaration of Counsel in Support of Defendants' Joint Response to Plaintiffs' Counterstatement as Exhibit E).

        c.      **Uncontested Fact Number 16:**  *"Defendants' retained expert Thomas Hogan testified that a fiduciary fails to perform a proper process unless the fiduciary considers all facts and circumstances."*

        **Response**: The testimony of Mr. Hogan to which Plaintiffs cite was given in response to the question whether a conclusion by State Street that it was "more likely than not that they could receive more for the shares now than they might be able to in the future" was "in and of itself a sufficient basis for a fiduciary to sell stock from a company stock fund." When specifically asked "[w]hat do you understand 'facts and circumstances' to mean," Mr. Hogan responded "[a]ll the information that is available **and relevant** to the fiduciary at a point in time." (Hogan Tr. 209-10, attached to Declaration of Counsel in Support of Defendants' Joint Response to Plaintiffs' Counterstatement as Exhibit B (emphasis added).)

        d.      **Uncontested Fact Number 19:**  *"The uncertainty surrounding a company in bankruptcy is less than a company that faces imminent bankruptcy."* (Johnson Tr. Vol I, at 131, Exhibit "D.")

        **Response:** Mr. Johnson testified that the fact that Grace was already in bankruptcy at the time of State Street's appointment "was simply a factor" that State Street considered as independent fiduciary of the Grace Stock Fund. He also testified that although there may be "less known" in the case of an imminent bankruptcy, whether the stock price rises or falls when a company actually files for bankruptcy "depends on the fact and circumstances.

5

Sometimes it's already factored in, so the stock goes up." (Johnson Tr. Vol I, at 131-32, attached to Declaration of Counsel in Support of Defendants' Joint Response to Plaintiffs' Counterstatement as Exhibit C.)

  e.  **Uncontested Fact Number 20:** *"Duff & Phelps was making its 'best guess' when it provided an analysis."* (Johnson Tr. Vol.I, at 146-47, Exhibit "D.")

  **Response:** Mr. Johnson did not testify that Duff & Phelps' analysis of the Grace stock was simply its "best guess." Instead, he testified that "[t]here had been a lot of analysis done," **some of which** involved "lots of uncertainty . . . , meaning you have to make best guesses at **some of these things**, which is what the market would do as well." (Johnson Tr. Vol. I, at 137, 146-47, attached to Declaration of Counsel in Support of Defendants' Joint Response to Plaintiffs' Counterstatement as Exhibit C [emphasis added]). And the record reflects that Duff & Phelps undertook a reasoned and thorough analysis of Grace and its stock:

> [Duff & Phelps] would review independent third-party assessments of the asbestos liability issue in general and review independent third-party assessments of those asbestos liability issues that might affect W. R. Grace specifically. * * * [We would review] equity . . . analysts reports on companies that have asbestos liability. There were also industry reports that specifically dealt with various industry exposures to the asbestos industry * * * We also examined a comprehensive report that was prepared specifically for evaluating asbestos liability exposure that was prepared by the Rand Institute in 2002. * * * [We were] provided with information from Goodwin Procter with respect to their analysis of the various issues that would impact the ultimate liability that might be subject to W. R. Grace on this particular issue. * * * We spoke with [Grace's] general counsel and chief restructuring officer, we spoke with the chief financial officer, and we spoke with an executive in charge of administration. * * * We . . . went through a financial analysis that looked at both the historical financials as well as projections that were put forth by – projections of the company's earnings and cash flow going forward. * * * [W]e conducted analyses [of the insurance coverage available to W. R. Grace to cover its asbestos liability].

6

(Bayston Tr., at 36-38, 41, 45, attached to Declaration of Counsel in Support of Defendants' Joint Response to Plaintiffs' Counterstatement as Exhibit A.)

        f.    **Uncontested Fact Number 29:**  *"Duff & Phelps performed its analysis by depending on third party analysis and not based on first hand information concerning Grace."*  (D&P Engagement Ltr. at SSBT001285, Exhibit "W;" Bayston Dep. at 35-38, Exhibit "X.")

        **Response**:  Plaintiffs' use of the phrase "first hand information" is vague and unclear, and Defendants dispute its accuracy to the extent it does not encompass, for instance, in-person meetings between Duff & Phelps people and Grace executives.  Daniel D. Bayston, a Managing Director at Duff & Phelps, personally met with Grace executives in the course of his engagement with State Street.  (Ewing Ex. 7 (previously submitted); Bayston Tr., at 41, attached to Declaration of Counsel in Support of Defendants' Joint Response to Plaintiffs' Counterstatement as Exhibit A; Tarola Tr., at 47-48, attached to Declaration of Counsel in Support of Defendants' Joint Response to Plaintiffs' Counterstatement as Exhibit E).  The materials Duff & Phelps prepared for State Street's Fiduciary Committee Meetings describe the information Duff & Phelps' gathered and evaluated in substantial detail.  (Bayston Exs. 4, 7, 13 (previously submitted).)

        g.    **Uncontested Fact Number 30:**  *State Street decided to sell the remaining 6.2 million shares to D.E. Shaw based on the belief that the $3.50 per share offer was greater than the price that State Street could sell the stock at some unknown future time.*  (Driscoll Tr., at 180, Exhibit "Q").

        **Response:**  The undisputed record shows that State Street decided to sell the remaining shares to D.E. Shaw because State Street had previously determined, after several months of analysis, that the Grace stock was an imprudent investment, a decision that State Street again confirmed at its April 7th, 2004 Fiduciary Committee Meeting, and the $3.50 per share price represented a premium over the current market price and was above the valuation range that Duff & Phelps helped set.  (Johnson Ex. 19 (previously submitted).)

7

September 10, 2007

Respectfully submitted,

State Street Bank & Trust Company

By its counsel,

/s/ Sean T. Carnathan_____
Sean T. Carnathan (BBO # 636889)
(scarnathan@ocmlaw.net)
O'CONNOR, CARNATHAN, MACK LLC
8 New England Executive Park, Suite 310
Burlington, MA 01803
Telephone: (781) 359-9000
Facsimile: (781) 359-9001

-and-

Scott M. Flicker
(scottflicker@paulhastings.com)
Thomas A. Rust
(thomasrust@paulhastings.com)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th Street
Washington, DC 20005
Telephone: (202) 551-1700
Facsimile: (202) 551-1705

Respectfully Submitted,

W. R. Grace & Co., W. R. Grace &
Co. Investment and Benefits
Committee, John F. Akers, H. Furlong
Baldwin, Ronald C. Cambre, Marye Anne
Fox, John J. Murphy, Paul J. Norris,
Thomas A. Vanderslice, Fred E. Festa and
Robert M. Tarola

By its counsel,

/s/ Matthew C. Hurley_____
William W. Kannel (BBO# 546724)
(wkannel@mintz.com)
Matthew C. Hurley (BBO# 643638)
(mchurley@mintz.com)
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY and POPEO, P.C.

One Financial Center
Boston, MA 02111
Telephone: (617) 542-6000
Facsimile: (617) 542-2241

- and -

Carol Connor Cohen
(cohen.carol@arentfox.com)
Caroline Turner English
(english.caroline@arentfox.com)
Nancy S. Heermans
(heermans.nancy@arentfox.com)
Jeffrey H. Ruzal
(ruzal.jeff@arentfox.com)
ARENT FOX LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 857-6054
Facsimile: (202) 857-6395

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of September 2007, a copy of the foregoing Defendants' Joint Response to Plaintiffs' Rule 56.1 Counterstatement of Uncontested Facts was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed via U.S. Mail to all parties who are not served via the Court's electronic filing system.

                                            /s/ Valerie N. Webb
                                               Valerie N. Webb