# EXHIBIT A

```
                IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS
LAWRENCE W. BUNCH, et al.,        )
                Plaintiffs,       )
         vs.                      ) Case No. 04-11380-WGY
W.R. GRACE & CO., et al.,         )
                Defendants.       )
```

The 30(b)(6) deposition of Duff & Phelps, LLC, by DANIEL D. BAYSTON, called for examination, taken pursuant to the Federal Rules of Civil Procedure of the United States District Courts pertaining to the taking of depositions, before ANDREA L. CARTER, CSR No. 84-3722, a Notary Public within and for the County of Cook, State of Illinois, and a Certified Shorthand Reporter of said state, at Suite 3700, 35 West Wacker Drive, Chicago, Illinois, on the 31st day of May, A.D. 2007, at 9:34 a.m.

```
 1  Grace at that time?
 2       MR. BOWERS:  Objection, form.
 3  BY THE WITNESS:
 4       A.   We would review independent third-party
 5  assessments of the asbestos liability issue in
 6  general and review independent third-party
 7  assessments of those asbestos liability issues that
 8  might affect W.R. Grace specifically.
 9  BY MR. CUMMINS:
10       Q.   So there would be general third-party
11  assessments of asbestos liability industry-wide and
12  specific -- and review of specific analysis by
13  third-parties of those affecting W.R. Grace.  There
14  are two; is that right?
15       MR. BOWERS:  Objection, form.
16  BY THE WITNESS:
17       A.   To the extent that that was information
18  that we could -- that we deemed to be relevant to
19  W.R. Grace specifically, we would utilize that
20  information in our overall assessment of the
21  asbestos liability exposure related to W.R. Grace.
22  BY MR. CUMMINS:
23       Q.   Okay.  And what were the third-party
24  assessments that Duff & Phelps ultimately reviewed
```

1 and relied upon in its work?
2         MR. BOWERS: Objection, compound.
3 BY THE WITNESS:
4     A.    There were many third-party assessments
5 and providers of information. There were numerous
6 news stories with respect to the asbestos liability
7 issue. There were equity analysts reports on
8 companies that have asbestos liability. There were
9 industry reports that specifically dealt with
10 various industry exposures to the asbestos industry
11 whether it be manufacturing companies or whether it
12 be insurance companies.
13        We also examined a comprehensive report
14 that was prepared specifically for evaluating
15 asbestos liability exposure that was prepared by the
16 Rand Institute in 2002.
17 BY MR. CUMMINS:
18     Q.    Now, are any of the ones of the items
19 that you have described specifically related to the
20 liability -- asbestos liability of W.R. Grace?
21     A.    None of the analyses or third-party
22 reports that were reviewed specifically dealt with
23 W.R. Grace alone. They were dealing with the
24 asbestos issue in a much more general -- general

1  manner.
2      Q.   Did you review any other third-party
3  assessments of liabilities of W.R. Grace -- asbestos
4  liabilities of W.R. Grace?
5      A.   We certainly were provided with
6  information from Goodwin Procter with respect to
7  their analysis of the various issues that would
8  impact the ultimate liability that might be subject
9  to W.R. Grace in this particular issue.
10     Q.   And let's talk about this.
11          With respect to the Goodwin Procter
12  information, was that conveyed to you in writing
13  or --
14     A.   It was provided both in writing and
15  through conversations.
16     Q.   With respect to writing, what is it that
17  you were provided with on the liability amount for
18  W.R. Grace's asbestos -- possible exposure?
19     MR. BOWERS:  Objection, form.
20  BY THE WITNESS:
21     A.   I don't believe I testified that Goodwin
22  Procter provided us with specific amounts with
23  respect to the liability exposure.  I think they
24  provided us information with respect to the various

1    MR. BOWERS: Objection.
2  BY THE WITNESS:
3    A.   We never made an assessment, nor was
4  there any information that we provided that would
5  have led us to any conclusion that they had a
6  material misstatement in their financials.
7  BY MR. CUMMINS:
8    Q.   During the course of your work at State
9  Street, did anyone at Duff & Phelps have occasion to
10 review or ask questions of Grace employees?
11   A.   Yes, we did.
12   Q.   Did you make -- have occasion to ask any
13 questions of Grace employees?
14   A.   Yes, I did.
15   Q.   And who did you speak with at Grace?
16   A.   I recall we spoke with the general
17 counsel and chief restructuring officer, we spoke
18 with the chief financial officer, and we spoke with
19 an executive in charge of administration.
20   Q.   Okay. And with respect to the CFO, what
21 were those discussions about?
22   A.   Our discussions with the CFO focused
23 principally on the outlook for the various
24 businesses and the financial performance of the

```
 1  were put forth by -- projections of the company's
 2  earnings and cash flow going forward.
 3  BY MR. CUMMINS:
 4       Q.   And who provided those projections of the
 5  company's earnings?
 6       A.   I don't recall.  We did some analysis
 7  ourself with respect to what we felt the projected
 8  earnings of the company would be.
 9       Q.   So in the course of Duff & Phelps making
10  projections of the company's earnings, are you
11  saying that W.R. Grace provided no budgets or its
12  forecasts to -- for you to analyze?
13       MR. BOWERS:  Objection, form.
14  BY THE WITNESS:
15       A.   Not that I recall.
16  BY MR. CUMMINS:
17       Q.   So you didn't know what the budgets were
18  of W.R. Grace at the time you made this analysis; is
19  that right?
20       A.   That is correct.
21       Q.   Is there anyone at Duff & Phelps that has
22  had a -- any experience with a company having
23  asbestos exposure liability?
24       A.   Yes.
```

| | |
|---|---|
| 1 | IN THE UNITED STATES DISTRICT COURT |
| 2 | FOR THE DISTRICT OF MASSACHUSETTS |
| 3 | LAWRENCE W. BUNCH, et al.,   ) |
| 4 | Plaintiffs,   ) |
| 5 | vs.   )Case No. 04-11380-WGY |
| 6 | W.R. GRACE & CO., et al.,   ) |
| 7 | Defendants.   ) |
| 8 | I hereby certify that I have read the |
| 9 | foregoing transcript of my deposition given at the |
| 10 | time and place aforesaid, consisting of Pages 1 to |
| 11 | 154, inclusive, and I do again subscribe and make |
| 12 | oath that the same is a true, correct and complete |
| 13 | transcript of my deposition so given as aforesaid, |
| 14 | and includes changes, if any, so made by me. |
| 15 | |
| 16 | |
| 17 | DANIEL D. BAYSTON |
| 18 | |
| 19 | |
| 20 | |
| 21 | SUBSCRIBED AND SWORN TO before me |
| 22 | this       day of              , A.D. 200 . |
| 23 | |
| 24 | Notary Public |