# EXHIBIT E

1

```
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MASSACHUSETTS
 2      - - - - - - - - - - - - - - - -+
                                        |
 3      KERI EVANS,                     |
                                        |
 4                 Plaintiff,            |
                                        |
 5        vs.                            |
                                        |
 6      JOHN F. AKERS, et al.,          |   Consolidated as
                                        |
 7                 Defendants.           |   Case No.:
                                        |
 8      - - - - - - - - - - - - - - - -+   04-11380-WGY
                                        |
 9      LAWRENCE W. BUNCH, et al.,      |
                                        |
10                 Plaintiffs,           |
                                        |
11      vs.                             |
                                        |
12      W.R. GRACE & CO., et al.,       |
                                        |
13                 Defendants.           |
                                        |
14      --------------------------------x
15              Non-Confidential Testimony of
16           Deposition of ROBERT M. TAROLA, CPA
17                    Washington, D.C.
18                     May 10th, 2007
19                      10:00 a.m.
20      Job No. 1-102403
21      Pages 1 - 174
22      Reported by:  Laurie Bangart-Smith
```



L.A.D. REPORTING & DIGITAL VIDEOGRAPHY

1100 Connecticut Avenue, NW • Suite 850, Washington, D.C. 20036
Tel: 202.861.3410 • 800.292.4789 • Fax: 202.861.3425
Web: ladreporting.com • E-mail: lisa@ladreporting.com
Additional Offices: Rockville, MD • Baltimore, MD • Greenbelt, MD • McLean, VA

available that is accessible depends on the actual claims that are presented, correct?

A   Yes.

Q   Okay.  Now let me skip forward a second, and I'm taking this out of order, but I think it may make some sense here.

Are you aware that State Street hired a firm called Duff & Phelps to assist it in the performance of its duties?

A   Yes, I am.

Q   Are you aware that Duff & Phelps attempted to make some analysis of certain values of the W.R. Grace & Co common stock over projections and other calculations?

A   No, I'm not.

Q   At no time during the period January 1, 2003, to the present day were you aware that Duff & Phelps was calculating certain numbers relative to the projected value of W.R. Grace common stock?

A   No.

Q   Have you ever had any conversations with any representative of Duff & Phelps?

48

1  A    I recall a few conversations, yes.

2  Q    Did you know -- let me go back. What were
3  those occasions?

4  A    To the best of my recollection, it was the
5  time just before and the time -- the time just before
6  accepting the role of independent fiduciary for State
7  Street Bank, and I may have talked to them again at
8  the time State Street was considering various
9  decisions around those holdings.

10 Q    And with whom did you speak?

11 A    I don't recall.

12 Q    Was it a man or a woman?

13 A    I believe a man, but I don't recall.

14 Q    Was it an in-person meeting?

15 A    No.

16 Q    It was over the telephone or some other
17 means?

18 A    It depends. Frankly, I don't remember. I
19 only remember that they were involved in the process.
20 I don't remember anyone's name or even recall a face.

21 Q    And with respect to those communications
22 with representatives of Duff & Phelps, what was the

DEPOSITION OF ROBERT M. YAROLA, CPA
CONDUCTED ON THURSDAY, MAY 10, 2007

53

1  was made "based on historical facts and circumstances
2  prior to April 2nd, 2001."
3      Q    And then the sentence that follows indicates
4  that as of March 5, 2004, Grace does not expect to
5  adjust this estimate unless certain developments occur
6  in the Chapter 11 proceeding.  Is that generally what
7  that sentence means?
8      A    Correct.
9      Q    Okay.  I think you wanted to clarify a
10 second point.
11     A    Yes.  Around the questioning just before we
12 broke about what I may have said to people at Duff &
13 Phelps, I just wanted to say that I don't recall any
14 names or any persons specifically.  I did have
15 conversations with people that were part of the State
16 Street team, and therefore when you asked for specific
17 Duff & Phelps, I don't recall.
18     Q    Okay, so can I just summarize what I think
19 you've just said?  You don't recall any contacts with
20 Duff & Phelps representatives; is that correct?
21     A    No.  I said I don't know who they
22 represented.  I do recall -- I do recall conversations

54

1  with the State Street team. I don't know at the time

2  if they were State Street or Duff & Phelps.

3      Q    I understand, and do you have a recollection

4  of when that discussion occurred?

5      A    Well, I do recall talking to the State

6  Street team before they assumed the independent

7  fiduciary obligation and periodically as they were

8  performing that job, just as I would talk to any other

9  significant investor.

10     Q    You did not disclose to the State Street

11 team any non-public information, did you?

12     A    That's correct.

13     Q    So everything that was public you discussed,

14 or you could discuss, correct?

15     A    Correct.

16     Q    Nothing that was non-public was discussed by

17 you with State Street or, as you characterized it,

   "the State Street team"; is that correct?

19     A    That's correct.

20     Q    It's fair to say that you did have, in the

21 normal course of the discharge of your duties,

22 non-public information at that time, correct?

                                                                122

1   by someone?

2           MS. FLOWE:  Now I object.

3           MR. CUMMINS:  Sorry.

4           MS. FLOWE:  You're getting into

5   attorney/client privilege now.

6   BY MR. CUMMINS:

7       Q   All right.  Other than communications with

8   your counsel, did someone tell you that you would have

9   no responsibility to the plan participants if you

10  simply hired State Street to do whatever they were

11  hired to do?

12      A   You mean anybody?

13      Q   Anybody other than your counsel.  Were you

14  told that by anybody other than your counsel?

15      A   Yes.

16      Q   Who?

17      A   I believe Mr. McGowan told me that, and

18  Mr. Norris told me that, and Mr. -- well, I'll stop

19  there.

20      Q   Okay.  Other than the conflict that

21  Mr. Norris described and we've talked about in a

22  previous exhibit, was there any other reason that

123

1  you -- that was the basis for your decision to hire
2  State Street to do this work?
3        A    Other than that hypothetical conflict?
4        Q    Yes.
5        A    No. That's the only reason.
6        Q    Who would be liable -- sorry. What harm
7  would be caused to the plan participants if you had a
8  conflict?
9             MS. FLOWE: I'm going to object. That
10 really is looking for a legal conclusion.
11            MR. CUMMINS: Let me do it another way.
12 BY MR. CUMMINS:
13       Q    Did you think that you would have some
14 liability, some responsibility in a legal way -- you,
15 without telling me who you conferred with -- if you
16 didn't take this State Street step?
17            MS. FLOWE: Same objection.
18            You can answer it.
19            THE WITNESS: Yes, I thought I did have
20 legal liability if we didn't take this step.
21 BY MR. CUMMINS:
22       Q    So as I understand what happened -- and tell

Case 1:04-cv-11380-WGY    Document 198-7    Filed 09/10/2007    Page 9 of 12
DEPOSITION OF ROBERT M. TAROLA, CPA
CONDUCTED ON THURSDAY, MAY 10, 2007

124

1   me if I'm wrong -- in order to keep you and
2   Mr. McGowan safe from some legal liability, you
3   allowed State Street to make its decision on
4   eliminating this option; is that correct?
5           MS. FLOWE:  Same objection.
6           You can answer.
7   BY MR. CUMMINS:
8       Q   Is that correct?
9       A   That's correct.
10          (Discussion was held off the record.)
11          MS. FLOWE:  Do you want to break for lunch?
12          MR. CUMMINS:  Yes.
13          MS. FLOWE:  How much more time do you think
14  you're going to have?
15          MR. CUMMINS:  An hour.
16          (Whereupon, the lunch recess was taken.)
17          MR. CUMMINS:  Did you want to make a
18  statement?
19          MS. FLOWE:  Oh, yes.  I'm sorry.  Bob did
20  want to actually clarify something from his testimony.
21  BY MR. CUMMINS:
22      Q   Go ahead.

139

1  A  Yes, I see that.

2  Q  The reason I showed this to you is a
3  question that relates to Page 7 of the document.  I
4  understand you haven't seen it.  The sixth bullet
5  point --

6  A  Seven in the little box?

7  Q  Yes.  Sorry.  Seven.  There's a bullet point
8  that reads as follows:  "December 24th, due diligence
9  meeting with senior management of Grace."  Do you see
10  that?

11  A  Yes.

12  Q  This is Christmas Eve on December 2003.  Did
13  you meet with any representative of State Street on or
14  about December 24, 2003?

15  A  I recall a meeting that would have been in
16  and around this time, yes.

17  Q  What did State Street ask in that meeting,
18  ask about?  Did they -- let me withdraw.  Did anybody
19  from State Street ask any questions to those
20  assembled?

21  A  I don't recall the meeting very vividly.  My
22  best recollection is I would characterize it as a

140

1  meeting with potential investors.  We often had
2  meetings with portfolio managers and the like who
3  would ask questions, all within the relevant domain of
4  public information, and my recollection is that was
5  the nature of the meeting.
6      Q    Who else attended on behalf of Grace?
7      A    Again I don't recall vividly, but normally
8  those meetings were attended by Mr. Norris, myself,
9  Mr. Siegel, and maybe our investor relations director.
10     Q    Did Mr. McGowan generally attend those
11 meetings?
12     A    No.
13     Q    Now, at the time you attended that meeting
14 you were a member of the benefits committee, correct?
15     A    Yes.
16          (Exhibit No. 31 was marked for
17      identification and attached to the deposition
18      transcript.)
19 BY MR. CUMMINS:
20     Q    I'm handing you what has been now been
21 marked for identification as Deposition Exhibit Number
22 31.  Have you had a chance to generally familiarize

DEPOSITION OF ROBERT M. TAROLA, CPA
CONDUCTED ON THURSDAY, MAY 10, 2007

171

ACKNOWLEDGEMENT OF WITNESS

I, ROBERT M. TAROLA, CPA, do hereby acknowledge that I have read and examined the foregoing testimony, and the same is a true, correct and complete transcription of the testimony given by me, and any corrections appear on the attached Errata sheet signed by me.

_25 June 2007_        _Robert M. Tarola_
(DATE)                (SIGNATURE)