UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

APRIL H. YOUNG, ALONZO YOUNG,
MICHAEL MATTHEWS and RICK A.
JENNINGS, individually and on behalf of all
others similarly situated,

                    Plaintiffs,

      -against-

GENERAL MOTORS INVESTMENT
MANAGEMENT CORPORATION and STATE
STREET BANK AND TRUST COMPANY,

                Defendants.

---

Civil Action No. 07-1994 (BSJ)

ECF Case

## DEFENDANT STATE STREET BANK AND TRUST COMPANY'S MEMORANDUM

## OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT

ANDREW B. KRATENSTEIN
McDermott Will & Emery LLP
340 Madison Avenue
New York, NY 10173
212.547.5400

WILBER H. BOIES, P.C.
NANCY G. ROSS
CHRIS C. SCHEITHAUER
McDermott Will & Emery LLP
227 W. Monroe Street
Chicago, IL 60606
312.984.7686
Counsel for Defendant
State Street Bank and Trust Company

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................ 1

II.   STATEMENT OF FACTS ......................................................................... 3

      A.    The Plans .................................................................................... 3

      B.    Named Fiduciaries Under The Plans And State Street's Role As Trustee ........... 6

      C.    State Street's Role Under The Investment Management Agreement ................... 7

III.  ARGUMENT ............................................................................................ 8

      A.    Plaintiffs' Claims Are Barred By ERISA's Three-Year Statute Of
            Limitations ................................................................................... 8

      B.    Plaintiffs Lack Standing To Assert Claims Concerning Two Plans In
            Which They Were Not Participants .................................................. 10

      C.    State Street Cannot Be Held Liable For Breach Of Fiduciary Duty
            Because It Had No Discretion To Eliminate The Single Equity Funds ............... 12

            1.    The Decision To Include The Single Equity Funds Was A Plan
                  Design Decision, Not A Fiduciary Act ...................................... 12

            2.    The Plan Documents Required State Street To Maintain The Single
                  Equity Funds And State Street Did Not Have Discretionary
                  Authority To Eliminate Or Diversify The Funds ....................... 13

            3.    Single Equity Funds In The Plans Complied With ERISA ............... 18

            4.    Plaintiffs Cannot Establish The Necessary Causation To Plead An
                  ERISA Violation .................................................................. 21

            5.    Plaintiffs Cannot Plead An ERISA Claim To Recover Better
                  Investment Results Than The Stock Market ............................. 23

IV.   CONCLUSION ........................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

Acosta v. Pacific Enterprises,
    950 F.2d 611 (9th Cir. 1991) ...................................................................................11

Adams v. Avondale Industries, Inc.,
    905 F.2d 943 (6th Cir. 1990), cert. denied, 498 U.S. 984, 11 S.Ct. 517 (1990) ...............13

Akers v. Palmer,
    71 F.3d 226 (6th Cir. 1995) ...................................................................................12

Amron v. Morgan Stanley Investment Advisors, Inc.,
    464 F.3d 338 (2nd Cir. 2006)................................................................................22

Beddall v. State Street Bank and Trust Co.,
    137 F.3d 12 (1st Cir. 1998)..........................................................................3, 15, 16

Bell Atlantic Corp., v. Twombly,
    550 U.S. __ (May 21, 2007) .................................................................................20

Blanck v. Consolidated Edison Retirement Plan,
    2006 U.S. Dist. LEXIS 2460 (S.D.N.Y. 2006)......................................................11

Bouboulis v. Transport Workers Union of Greater New York,
    2006 U.S. Dist. LEXIS 74238 (S.D.N.Y. 2006).....................................................23

In re Cardinal Health, Inc. ERISA Litigation, ,
    2006 U.S. Dist. LEXIS 15050 (S.D. Ohio 2006)....................................................16

Carey v. IBEW Local 363 Pension Plan,
    201 F.3d 44 (2nd Cir. 1999), citing Wilson v. Garcia, 471 U.S. 261 (1985) ...............8

Chambers v. Time Warner, Inc.,
    282 F.3d 147 (2nd Cir. 2002)..................................................................................3

Chase Manhattan Bank, N.A. v. Celotex Corp.,
    56 F.3d 343 (2d Cir. 1995)...................................................................................18

Curtiss-Wright Corp. v. Schoonejongen,
    514 U.S. 73 (1996)...............................................................................................12

D&F Corp. v. Board of Pattern & Model Makers Association,
    795 F. Supp. 825 (E.D. Mich., 1992)....................................................................11

DiFelice v. U.S. Airways,
    436 F. Supp. 2d 756 (E.D. Va. 2006) ...................................................................20

Dickerson v. Feldman,
    426 F. Supp. 2d 130 (S.D.N.Y. 2006)...................................................................10

Diduck v. Kaszycki,
    974 F.2d 270 (2nd Cir. 1992)................................................................................22

Downes v. J.P. Morgan Chase & Co.,
    2004 U.S. Dist. LEXIS 10510 (S.D.N.Y. 2004).......................................................8

# TABLE OF AUTHORITIES
(continued)

Page

Ershick v. United Missouri Bank of Kansas,
948 F.2d 660 (10th Cir. 1991) ...................................................16

Frommert v. Xerox Corp.,
472 F. Supp. 2d 452 (W.D.N.Y. 2007)....................................11

Ganino v. Citizens Utilities Co.,
228 F.3d 154 (2nd Cir. 2000)...................................................22

In re General Motors ERISA Litigation,
2006 U.S. Dist. LEXIS 16782 (E.D. Mich. 2006) .........................2, 17

Grimes v. Navigant Consulting, Inc.,
185 F. Supp. 2d 906 (N.D. Ill. 2002) ...................................22

Grindstaff v. Green,
133 F.3d 416 (6th Cir. 1998) ...........................................13, 16

Hargrave v. TXU Corp.,
392 F. Supp. 2d 785 (N.D. Tex. 2005) ..................................11

Harris Trust & Sav. Bank v. John Hancock Mutual Life Insurance Co.,
302 F.3d 18 (2nd Cir. 2002)...........................................14, 16

Hecker v. Deere & Company,
2007 U.S. Dist. LEXIS 45275 (W.D. Wisc. June 20, 2007)...............17

Herman v. NationsBank Trust Co.,
126 F.3d 1354 (11th Cir. 1997), cert. denied, 525 U.S. 816 (1998) .........16

Hoblock v. Albany County Board of Elections,
422 F.3d 77 (2d Cir. 2005) ...........................................18

Hughes Aircraft Co. v. Johnson,
525 U.S. 432 (1999)...............................................12, 18

Hunter v. Caliber System, Inc.,
220 F.3d 702 (6th Cir. 2000) .......................................12

Izzarelli v. Rexene Products Co.,
24 F.3d 1506 (5th Cir. 1994) .......................................16

In re J.P. Morgan Chase Cash Balance Litigation,
2007 U.S. Dist. LEXIS 38766 (S.D.N.Y. 2007).....................10

Jones v. O'Higgins,
1989 U.S. Dist. LEXIS 10537 (N.D.N.Y. 1989) ..................19

Kramer v. Time Warner, Inc.,
937 F.2d 767 (2nd Cir. 1991)........................................3

Kuper v. Quantum Chemical,
66 F.3d 1447 (6th Cir. 1995) ...................................21, 22

**TABLE OF AUTHORITIES**
(continued)

**Page**

Lalonde v. Textron,
    418 F. Supp. 2d 16 (D.R.I. 2006) ...................................................................11

Lockheed Corp. v. Spink,
    517 U.S. 882 (1996)......................................................................................12

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992).....................................................................................10

Maniace v. Commerce Bank of Kansas City,
    40 F.3d 264 (8th Cir. 1994) .........................................................................16

Mertens v. Hewitt Associates,
    508 U.S. 248 (1993)......................................................................................13

Nechis v. Oxford Health Plans, Inc.,
    421 F.3d 96 (2nd Cir. 2005)........................................................................11

O'Shea v. Littleton,
    414 U.S. 488 (1974).....................................................................................10

Pegram v. Herdrich,
    530 U.S. 211 (2000)................................................................................14, 15

Pietrangelo v. NUI Corp.,
    2005 U.S. Dist. LEXIS 40832 (D.N.J. 2005) ..............................................12

In re RCN Litigation,
    2006 U.S. Dist. LEXIS 12929 (D.N.J. 2006) ..............................................16

Sandoval v. Simmons,
    622 F. Supp. 1174 (C.D. Ill. 1985) ..............................................................19

Summers v. State Street Bank,
    453 F.3d 404 (7th Cir. 2006) ................................................................19, 23

Summers v. UAL Corp.,
    2005 U.S. Dist. LEXIS 23918 (N.D. Ill. 2005), affirmed 453 F.3d 404 (7th Cir.
    2006) ............................................................................................................16

Taylor v. Vermont Department of Education,
    313 F.3d 768 (2nd Cir. 2002).........................................................................3

In re Worldcom, Inc. ERISA Litigation,
    354 F. Supp. 2d 423 (S.D.N.Y. 2005)....................................................16, 21

Wright v. Oregon Metallurgical Corp.,
    360 F.3d 1090 (9th Cir. 2004) .................................................13, 16, 21, 23

Yancy v. American Petrofina,
    768 F.2d 707 (5th Cir. 1958) .......................................................................11

**TABLE OF AUTHORITIES**
(continued)

Page

**FEDERAL STATUTES**

29 C.F.R. § 2509.75-8................................................................................14

29 C.F.R. § 2550.404(a)-1(b)......................................................................21

29 U.S.C. § 1002(21)................................................................................14

29 U.S.C. § 1103(a) ...............................................................................6, 13

29 U.S.C. § 1104(a)(1)(C) .....................................................................15, 19

29 U.S.C. § 1113.......................................................................................8

29 U.S.C. § 1132(a) .................................................................................11

**MISCELLANEOUS**

Restatement (Second) of Contracts § 203(a) ...............................................15

## I.    INTRODUCTION

Plaintiffs have sued State Street Bank and Trust Company ("State Street") on the theory that State Street imprudently allowed certain assets of four ERISA plans sponsored by General Motors Corporation and its subsidiary Saturn (collectively the "Plans") to be invested in funds that held single equities ("Single Equity Funds") as opposed to funds that held many equities. Plaintiffs allege that the Single Equity Funds violated ERISA's diversification requirements. Plaintiffs' basic claim is that ERISA precludes offering Single Equity Funds as an investment option because such a fund is an "extremely risky and volatile investment." [Compl., ¶ 64] Plaintiffs are wrong. As a matter of law, ERISA does not bar Single Equity Funds and instead looks to the diversification of the entire plan. As a matter of fact (and as the Complaint recognizes), the Plans as a whole were diversified and offered many different investment options for participants to choose from, including diversified mutual funds with varying risk and investment features (e.g., short-term bonds, aggressive growth, overseas equities, etc.) [See Compl. ¶ 38 (Plans offered investments "in one or more of over **thirty funds.**")(emphasis added)]

Plaintiffs' complaint suffers from a number of legal deficiencies that cannot be cured and require dismissal without leave to amend:

1.    All of plaintiffs' claims are barred by the three year statute of limitations for an ERISA fiduciary duty claim. The Single Equity Funds were established between 1996 and 2003, and the plan documents distributed to participants, including the Prospectuses, disclosed the Single Equity Funds and allowed participants to move to other investment options. Plaintiffs' complaint is clearly time barred.

2.    According to the Complaint, none of the four named plaintiffs was a participant in the Income Security Plan or the Saturn Plan. As a result, plaintiffs lack standing under both Article III of the United States Constitution and ERISA § 502(a) to sue about the Income Security Plan and the Saturn Plan.

3.    Plaintiffs' complaint also has apparent – and fatal – defects on the merits.  To
begin with, the decision for the Plans to include the Single Equity Funds was not a fiduciary act
by State Street, but rather a "plan sponsor" decision by General Motors Corporation.  The Plans
were designed to include Single Equity Funds and State Street had no role – fiduciary or
otherwise – in that decision.

4.    Similarly, the plan documents **required** State Street to maintain the Single Equity
Funds, and State Street did not have the alleged discretionary authority to eliminate or diversify
those funds.  Rather, the plan documents obligated State Street to establish accounts for holding
the Single Equity Funds and to allocate the Plans' assets to those Funds as directed by the Plans'
named fiduciaries.

5.    Plaintiffs' claim that State Street had a fiduciary responsibility to override the
terms of the Plans and eliminate the allegedly imprudent Single Equity Funds is a repackaged
claim that was recently rejected by the United States District Court for the Eastern District of
Michigan in In re General Motors ERISA Litigation, 2006 U.S. Dist. LEXIS 16782 (E.D. Mich.
2006) (dismissing State Street).  In that case, several GM Plan participants sued State Street for
breach of fiduciary duty under ERISA on the theory that State Street should have known that a
single equity stock fund (the GM Company Stock Fund) was an imprudent investment and that
State Street should have ignored the terms of the plan documents and diversified or eliminated
that fund.  The district court found that State Street did not have discretion to diversify the fund.
Id. at * 66 ("Under the Plans, the Trust, and the [Investment Management] Agreement, State
Street simply had no discretion to act in the way that Plaintiffs suggest it should have.")  This
Court should protect State Street from duplicative litigation by applying the Second Circuit's
doctrine of virtual representation, adopting the Eastern District of Michigan General Motors
decision and dismissing State Street from this case.

6.    As a matter of law, plaintiffs are simply wrong in their contention that holding
ERISA plan assets in single equity funds violates ERISA's diversification requirement.  It is well
established that ERISA's diversification requirement applies to a benefit plan as a whole, and not

- 2 -

to individual funds or holdings. Plaintiffs' own allegations demonstrate that the Plans offered diversified investment options. [See Compl. ¶ 38 (offered investments "in one or more of over **thirty funds**.")(emphasis added)] Moreover, notwithstanding plaintiffs' elaborate and enormously long complaint, none of their allegations pleads facts suggesting that State Street should have determined that holding these Single Equity Funds violated ERISA. A properly diverse portfolio will necessarily have some more risky investments and some less risky investments. Nor does it violate ERISA to hold stocks that have a period where they are outperformed by other securities. The fact that some investments happen to do better than others in a given period of time does not require State Street to compensate participants when investments decline.

Simply put, plaintiffs have pled themselves out of court. Their myriad allegations actually establish that they do not have a viable claim for breach of fiduciary duty under ERISA.

## II.    STATEMENT OF FACTS[1]

### A.    The Plans

This lawsuit involves four defined contribution plans sponsored by General Motors Corporation ("GM") or its wholly owned subsidiary Saturn Corporation ("Saturn"), which are collectively referred to as the "Plans: (1) the General Motors Savings-Stock Purchase Program for Salaried Employees ("Salaried Plan"); (2) the General Motors Personal Savings Plan for Hourly Rate Employees ("Hourly Plan"); (3) the General Motors Income Security Plan for

---

[1] This Statement of Facts addresses matters alleged in the Complaint, as well as matters set forth in the relevant plan documents, Prospectuses, Trust and Investment Manager Agreements. Because these instruments are referenced and quoted from in the Complaint, or are otherwise alleged to give rise to State Street's fiduciary responsibility and therefore liability, they are properly considered in connection with this motion to dismiss. [See, e.g., Compl., ¶ 1] In deciding a Rule 12(b)(6) motion, the Second Circuit has instructed that a district court may consider documents that are referenced in the complaint, documents that the plaintiffs relied on in bringing suit and that are either in plaintiffs' possession or that plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2nd Cir. 2002); Taylor v. Vermont Dept. of Educ., 313 F.3d 768, 776 (2nd Cir. 2002); Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2nd Cir. 1991). There is an important reason for this consideration of documents. See Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) (consideration of such documents prevents party from avoiding dismissal through artful pleading that mischaracterizes the very documents on which plaintiffs' case depends).

Hourly-Rate Employees ("Income Plan"); and (4) the Saturn Individual Savings Plan for Represented Members ("Saturn Plan").[2] [Compl., ¶ 2] The Plans are defined contribution plans in which separate accounts are maintained for each participant, and the benefits each participant will receive are based on the amount of employer and employee contributions to the participant's account and the investment performance of those contributions. [Compl., ¶¶ 37-38] Plans like these are commonly referred to as 401(k) plans.

Under the Plans, participants (GM employees or Saturn employees) could authorize salary deductions to be contributed into the account of the plan in which they participated. Subject to certain restrictions, participants could then allocate the assets in their plan accounts, on a daily basis, among a variety of investment options offered through the Plan. The Salaried Plan, for example, provided that a portion of the employee's and employer's contributions to the plan had to be invested in the plan sponsor's Common Stock Funds (i.e., GM common stock or GM Class H common stock) and that 50% of an employee's contributions had to be invested in "one of over thirty funds, most of which are mutual funds." [Compl., ¶ 38] The Salaried Plan lists **at least 69 diverse funds** from which a participant could choose to invest his or her contributions to the plan, including mutual funds with varying risk and investment features (e.g., short-term bonds, aggressive growth, overseas equities, etc.). [See, e.g., Salaried Plan (Exh. A), pp. 11-12]

In addition to the diverse set of mutual fund options, the Plans were required to offer certain specified investment funds as a matter of Plan design. As plaintiffs allege, for example, through "December 23, 2003, the Plans offered the GM Class H Stock Fund, which invested primarily in GM Class H stock, as an investment option." [Compl., ¶ 43] Plaintiffs further allege that, as a result of corporate sales, mergers, acquisitions and spin-offs, certain of the required GM Class H stock became the stock of Raytheon Corp., DIRECTV and News Corp. New funds were created in the Plans to reflect this changed stock, including the Raytheon

---

[2] The Plans are attached as Exhibits A (Salaried Plan), B (Hourly Plan), C (Income Plan) and D (Saturn Plan).

Common Stock Fund ("Raytheon Fund"), DIRECTV Fund ("DIRECTV Fund") and the News

Corp. Non-Voting Common Stock Fund ("News Corp. Fund"). [Compl., ¶ 44]

Plaintiffs allege that two additional GM common stock funds underwent similar

transformations as a result of GM restructuring.  GM Class E common stock was replaced with

shares of Electronic Data Systems ("EDS") when EDS was spun-off from General Motors in

1996.  As a result of the Plans receiving EDS stock in exchange for the GM Class E common

stock, the Plans assets in the GM Class E Common Stock Fund were converted to the EDS

Common Stock Fund ("EDS Fund").  [Compl., ¶ 45; see e.g., Salaried Plan (Exh. A) p. 12]

Similarly, plaintiffs allege that GM spun off its Delphi subsidiary in 1999 and, pursuant

to this transaction, Delphi common stock was exchanged for certain GM common stock.  As a

result, certain assets in the Plans' GM $1-2/3 par value Common Stock Fund were converted to a

Delphi Common Stock Fund ("Delphi Fund").  [Compl., ¶ 46; see Salaried Plan (Exh. A), p. 12]

Plaintiffs refer collectively to these new funds resulting from the conversion of GM common

stock during the corporate transactions as Single Equity Funds because the new funds held assets

primarily in the stock of the new corporations.

While the Plans required that the available investment options include Single Equity

Funds for holding the common stock of the new companies, the plaintiffs and other individual

participants were not required to maintain any investment in particular funds.  The Plans did not

permit any further contributions or exchanges into those funds after the funds were established.

[See Salaried Plan (Exh. A) Article I, § 5(A) (requiring investment in Corporation's Common

Stock Funds, EDS Fund, Raytheon Fund, Delphi Fund); see also Prospectuses,[3] Exh. E at 25-27

and Exh. F at 23-25]  **Every participant in the Plans (including the plaintiffs) retained his or**

**her own discretion to exchange assets out of those Single Equity Funds for any of the other**

**diverse set of funds offered by the Plans at any time.**  [See, e.g., Salaried Plan (Exh. A)

---

[3] Exhs. E and F are plan Prospectuses, dated February 1, 2004.  These documents are among those expressly relied
upon by plaintiffs in the Complaint.  [See Compl., p. 1]

Article II, § 2 ("A Participant may elect to exchange assets held in the [Single Equity Funds] to any of the investment options specified under Article I, Section 5(A)"); Hourly Plan (Exh. B), §§ 7.03(b), 7.04(b), 7.05(b)]

    **B.**    <u>Named Fiduciaries Under The Plans And State Street's Role As Trustee</u>

The Investment Funds Committee of the GM Board is designated as the Named Fiduciary of the Plans and General Motors Investment Management Corporation ("GMIMCo") is designated as the Named Fiduciary of the Plans for purposes of Plan investments. [See, e.g., Salaried Plan (Exh. A), Article IV, § 1] Moreover, the participants in the Plans have the authority to direct the investments of their own accounts and, therefore, "have been designated under the respective Plans as a 'named fiduciary'" and are authorized to direct the trustee as to how to invest their own accounts. [Master Trust (Exh. G), pp. 3-4; Salaried Plan (Exh. A), Art. IV, § 19; Hourly Plan (Exh. B), Art. VIII, § 8.07]

    Under ERISA, benefit plan assets must be held in trust for the benefit of participants pursuant to a written instrument. 29 U.S.C. § 1103(a). All assets in the GM Plans are maintained in trust pursuant to a General Motors Savings Plans Master Trust Agreement (the "Master Trust"), attached hereto as Exhibit G, under which State Street is the trustee. [Compl., ¶ 39] The Trust requires State Street to establish and change investment funds at the direction of the Plans' Named Fiduciary for Investments, GMIMCo:

> Fourth: <u>SEPARATE INVESTMENT FUNDS</u>. GMIMCo, from time to time, shall direct the Trustee to establish one or more separate investment accounts within the Trust Fund (an "Investment Fund"). Each Investment Fund may consist of one or more investment companies… The Trustee shall, before the commencement of business on each day, transfer to an Investment Fund such portion of the assets of the Trust Fund as the Plan Administrator or the Record keeper directs, to the extent that it maintains custody over such funds.

[Master Trust (Exh. G), p. 8] Such daily direction is a function of individual directions given by plan participants with regard to their accounts; for that purpose, the Trust also requires State Street to follow the investment directions of the plan participants themselves – who are "named

fiduciaries." [See Master Trust (Exh. G), pp.3-4][4] All of State Street's relevant powers under the Master Trust are "subject to the limitations set forth [in the Master Trust] with respect to direction by GMIMCo, and Investment Manager or by Participants … ." [Master Trust (Exh. G), p. 14] Any failure by State Street to invest the Plans' assets in the Single Equity Funds as directed would have subjected State Street to liability. Id., p. 38 (providing that State Street would be held liable, and was responsible to indemnify any other Plan fiduciaries for claims alleging that State Street failed to follow the directions of a participant, the recordkeeper, or the plan administrator).

### C.    State Street's Role Under The Investment Management Agreement

In addition to its asset holder role as Plan trustee, State Street was retained as an investment manager pursuant to an Investment Management Agreement (the "Agreement"), attached hereto as Exhibit H.  Pursuant to the Agreement, State Street was required to manage the Investment Accounts as directed in the Agreement.  Specifically, the Agreement with GMIMCo required State Street to maintain separate Investment Accounts "which shall consist of the applicable class of common stock" of GM's various classes of common stock, Delphi, Raytheon and EDS.  [Agreement (Exh. H), ¶, 1; see also Exhibit A to the Agreement, p. 11 (outlining Investment Accounts to be maintained by State Street, including the GM Common Stock Fund, GM Class H Stock Fund, Raytheon Stock Fund, EDS Stock Fund and Delphi Stock Fund)]

The Agreement limits State Street's authority and discretion as investment manager consistent with the very purpose of the various Single Equity Funds – i.e., to maintain an investment fund that invests in a particular stock.  The Agreement specifically provides that State Street's discretionary authority in managing the Investment Accounts, and the powers to be

---

[4] This active role for participants is consistent with the Plan's other terms. See e.g., Salaried Plan, pp. 12-13 (allowing employees to change allocation of contributions on any business day of the month by so directing the recordkeeper); Hourly Plan, pp. 36-37 (providing that amounts contributed to the trust shall be allocated among the investment options as elected by participants, and allowing participants to change elections on any business day by so directing the recordkeeper).

exercised in that connection, were at all times "SUBJECT TO THE TRUST AGREEMENT

AND THE WRITTEN FUND POLICY FOR EACH INVESTMENT ACCOUNT." [Agreement

(Exh. H), §§ 3-4 at 2 (emphasis in original)]

## III.     ARGUMENT

### A.     Plaintiffs' Claims Are Barred By ERISA's Three-Year Statute Of Limitations

Statutes of limitations serve several important public policies, including rapid resolution

of disputes, repose for those against whom a claim could be brought, and avoidance of litigation

involving lost evidence or distorted testimony of witnesses. Carey v. IBEW Local 363 Pension

Plan, 201 F.3d 44, 47 (2nd Cir. 1999), citing Wilson v. Garcia, 471 U.S. 261 (1985). In enacting

ERISA, Congress determined that a breach of fiduciary duty claim must be brought before the

earlier of: (1) six years after the date of the last action which constituted the breach; or (2) three

years after the earliest date on which the plaintiff had actual knowledge of the breach or

violation. ERISA § 413, 29 U.S.C. § 1113.

ERISA § 413 also provides that in the case of "fraud or concealment," the statute of

limitations does not expire until six years after the date of discovery of the fraud or concealment.

This exception is not applicable to this case, as plaintiffs have not alleged fraud or concealment

by State Street. To the contrary, plaintiffs simply allege that it was a breach of fiduciary duty to

even *offer* the Single Equity Funds, particularly after "the S&P 500" began to outperform those

funds in the year 2000. [Compl. ¶ 61 (the S&P performed substantially better), ¶ 92 ("The

Plans' investments in the Single Equity Funds were not diversified and not suitable retirement

plan investments")] Since plaintiffs claim that the very existence in the Plans of Single Equity

Funds that invest primarily in one stock was a breach of fiduciary duty, the statute of limitations

for that claim began to run when plaintiffs were on notice of the inclusion of Single Equity

Funds in the Plans. See Downes v. J.P. Morgan Chase & Co., 2004 U.S. Dist. LEXIS 10510, *

10-11 (S.D.N.Y. 2004) (plaintiff's ERISA breach of fiduciary duty claim accrued at time

plaintiff knew he was wrongly classified as an "independent contractor").

There can be no dispute that plaintiffs had actual knowledge of the Plans' use of Single Equity Funds more than three years prior to the filing of the Complaint. Plaintiffs concede in their Complaint that some of their assets in the Plans were held in Single Equity Funds "[f]or many years," [Compl., ¶ 4] and, indeed, that all of the investments in the Single Equity Funds were made prior to 2004: plaintiffs' complaint specifically alleges that the EDS Fund was established in 1996, the Raytheon Fund in 1997, the Delphi Fund in 1999, and the News Corp and DIRECTV Funds in late 2003. [Compl., ¶¶ 43-46] The February 1, 2004 Prospectuses on which plaintiffs relied in their Complaint [see Compl., p. 1] plainly disclose that the Single Equity Funds were undiversified investments holding the stock of a single company. [Prospectuses, Exh E at 25-27 and Exh. F at 23-25] The 1999 Plan documents on their face also disclose the use of Single Equity Funds. [See, e.g., Salaried Plan (Exh. A), pp. 12-13; Hourly Plan (Exh. B), § 2.13, 2.15, , 2.17, 2.35, 6.05, 7.03—7.05] Despite all of this past history, plaintiffs waited until March 2007 to bring a lawsuit challenging whether Single Equity Funds constitute a breach of fiduciary duty. ERISA flatly bars such stale claims.

To the extent plaintiffs allege that the Single Equity Funds became imprudent when the S&P 500 began to perform better than the Single Equity funds in the year 2000 [Compl., ¶61], such claims are also time barred. If plaintiffs wanted to bring a breach of fiduciary duty lawsuit claiming that their accounts would have appreciated better had they been in a different fund, they should have done so by the year 2003 (three years after they were invested in Single Equity Funds that did not perform as well as the S & P 500 in 2000). Suing to bring that claim seven years after the fact is barred by ERISA.

That bar is not only required by ERISA, it is entirely fair in a setting where plaintiffs were free to change their investments and chose not to do so. The Plans prohibited any new money being placed in Single Equity Funds [see Prospectuses, Exh E at 25-27 and Exh. F at 23-25]. The Plans also expressly allowed the participants themselves to transfer their money out of those funds, but plaintiffs chose not to do so. [Salaried Plan (Exh. A), Article II, § 2 ("A Participant may elect to exchange assets held in the [Single Equity Funds] to any of the

investment options specified under Article I, Section 5(A)"); <u>see</u> <u>e.g.</u>, Hourly Plan (Exh. B), §§ 7.03(b), 7.04(b), 7.05(b) ]

    B.    <u>**Plaintiffs Lack Standing To Assert Claims Concerning Two Plans In Which They Were Not Participants**</u>

In order to bring an ERISA action, a plaintiff must satisfy both constitutional and ERISA standing requirements – otherwise the Court lacks jurisdiction. <u>See</u> <u>In re J.P. Morgan Chase Cash Balance Litig.</u>, 2007 U.S. Dist. LEXIS 38766 (S.D.N.Y. 2007) (setting forth requirements for standing under Article III and ERISA). The standing requirement applies fully to class action lawsuits; if a named plaintiff suing on behalf of a putative class lacks standing to bring a certain claim, the entire claim fails for lack of subject matter jurisdiction. <u>Dickerson v. Feldman</u>, 426 F. Supp. 2d 130, 134 (S.D.N.Y. 2006) (citing <u>O'Shea v. Littleton</u>, 414 U.S. 488 (1974)). ("In other words, if the named plaintiffs are without standing, the entire class action fails.") <u>Id</u>. At 134

Plaintiffs have sued in connection with four ERISA plans: (1) the Salaried Plan; (2) the Hourly Plan; (3) the Income Security Plan; and (4) the Saturn Plan. The complaint alleges that plaintiffs Michael Matthews and Rick Jennings were participants in the Salaried Plan and that plaintiffs April Young and Alonzo Young were participants in the Hourly Plan [Compl., ¶¶ 13-16] The complaint does not allege that **any** of the named plaintiffs was a participant in the Income Security Plan or the Saturn Plan. Accordingly, plaintiffs lack both Article III and ERISA standing to assert claims as to the Income Security Plan and the Saturn Plan, and all claims involving those two plans must be dismissed for lack of subject matter jurisdiction.

To establish Article III standing, the potential plaintiff must (1) have suffered an injury in-fact, (2) demonstrated a causal connection between the injury and the objectionable conduct; and (3) demonstrate that the injury will be remedied by the requested relief. <u>In re J.P. Morgan Chase Cash Balance Litig.</u>, 2007 U.S. Dist. LEXIS 38766 * 8 (S.D.N.Y. 2007) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992)). Here, plaintiffs cannot meet any of the three factors necessary for Article III standing in connection with claims relating to the Income Security Plan or the Saturn Plan.

Plaintiffs also lack standing under the stringent statutory requirements of ERISA to bring claims relating to the Income Security Plan or the Saturn Plan.[5] A civil action for statutory relief under ERISA's may only be brought by (1) the Secretary of Labor, (2) plan participants and beneficiaries, and (3) fiduciaries of plans. ERISA § 502(a), 29 U.S.C. § 1132(a); Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 101 (2nd Cir. 2005) (listing cases holding that ERISA strictly limits the universe of who may bring civil actions to these three classes of persons and dismissing claims of one plaintiff because she was no longer a participant in the plan at the time she filed suit); see also Blanck v. Consolidated Edison Retirement Plan, 2006 U.S. Dist. LEXIS 2460, * 3 (S.D.N.Y. 2006) ("The Second Circuit applies strictly the provisions of ERISA ... that identify the parties authorized to bring civil actions under the statute."). Here, the plaintiffs are certainly not the Secretary of Labor and do not allege that they are themselves fiduciaries or participants or beneficiaries of the Insurance Security or Saturn Plans.[6]

It is not enough for plaintiffs to allege that they participate in other related plans. The recent case of Frommert v. Xerox Corp., 472 F. Supp. 2d 452 (W.D.N.Y. 2007) is directly on point. There, the court held that the plaintiff who was not a participant in the plan at issue lacked standing to assert claims as to that plan, even though he was a participant in another Xerox plan that allegedly had the same problems. Id. at 466-67 ("It is axiomatic that only plan participants and beneficiaries may sue" as to the plan at issue) (citations omitted).

The Ninth Circuit's decision in Acosta v. Pacific Enterprises, 950 F.2d 611 (9th Cir. 1991) reached the same conclusion:

> With respect to the plans in which he does not participate, [plaintiff] does not claim that he specifically qualifies as one of the expressly designated persons

---

[5] As one Court explained, ERISA narrows the field of parties that may bring suits even further that Article III: "In drafting ERISA ... [Congress] elected" to "restrict the scope of the standing doctrine by choosing not to expand the concept to the full extent allowed by Article III." D&F Corp. v. Bd. of Pattern & Model Makers Assn., 795 F. Supp. 825, 833 (E.D. Mich., 1992).

[6] "The requirement that a claimant be a 'participant' is a subject matter jurisdiction requirement as well as a standing issue." Lalonde v. Textron, 418 F. Supp. 2d 16, 19 (D.R.I. 2006). A participant or beneficiary is defined as an employee or former employee who may be eligible to receive a benefit under the plan. Hargrave v. TXU Corp., 392 F.Supp.2d 785, 787 (N.D. Tex. 2005) (citing Yancy v. American Petrofina, 768 F.2d 707, 708 (5th Cir. 1958)).

permitted to sue a fiduciary for breach of fiduciary duty.... If any individual does not participate in a specific plan, the fiduciaries of that plan generally have no fiduciary duty to him. The fact that a fiduciary maintains or administers several plans does not automatically give each participant entitlements in every other plan. [While plaintiff] has standing under ERISA to bring an action for breach of fiduciary duty in the administration of [the plan in which he participates, he] ... lacks standing to sue regarding the administration of the remaining plans, in which he does not participate.

Id. at 617. See also Pietrangelo v. NUI Corp., 2005 U.S. Dist. LEXIS 40832 *48-49 (D.N.J. 2005) ("Plaintiff does not have standing to seek relief on behalf of the Salaried Plan under [ERISA] because he participated only in the CBE Plan").

C.    **State Street Cannot Be Held Liable For Breach Of Fiduciary Duty Because It Had No Discretion To Eliminate The Single Equity Funds**

1.    **The Decision To Include The Single Equity Funds Was A Plan Design Decision, Not A Fiduciary Act**

Plaintiffs allege a fiduciary breach concerning the decision to include and maintain Single Equity Funds in the Plans. [See Compl., ¶ 5 ("caused the Plans to maintain investments in the Single Equity Funds, which were undiversified and imprudent as investments for retirement income savings"); Id., ¶ 92 (Single Equity Funds were "not suitable retirement plan investments")] That was a plan design decision by General Motors (not by State Street) that is immune from claims of breach of fiduciary duty. The United States Supreme Court has repeatedly emphasized that making decisions regarding the design of an ERISA plan is a "settlor" function that does not implicate fiduciary duties under ERISA. Hughes Aircraft Co. v. Johnson, 525 U.S. 432, 443-45 (1999); Lockheed Corp. v. Spink, 517 U.S. 882, 890-92 (1996); Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 78 (1996). Also see Akers v. Palmer, 71 F.3d 226, 230-32 (6th Cir. 1995) (decision to fund ERISA plan with stock from company is a settlor function "immune from scrutiny"); Hunter v. Caliber Sys., Inc., 220 F.3d 702, 719-23 (6th Cir. 2000) (decisions regarding the form of assets to transfer to a 401(k) plan, when to diversify a plan and a limit on plan ownership of a particular stock were all matters of plan design).

As is evident from the Complaint [See Compl., ¶ 44-46], the decisions to establish and maintain the Single Equity Funds in the Plans were decisions by General Motors as the plan

- 12 -

sponsor in connection with corporate transactions in which GM business subsidiaries were "spun off" as public companies. State Street cannot be held liable for those GM corporate decisions.

A corollary to the rule that plan design is not a fiduciary duty is the rule that plan amendment is also not a fiduciary duty. It is black letter law that a defendant does "not act in a fiduciary capacity when deciding to amend or terminate an ERISA benefits plan." Grindstaff v. Green, 133 F.3d 416, 424 (6th Cir. 1998); Adams v. Avondale Industries, Inc., 905 F.2d 943, 947 (6th Cir. 1990), cert. denied, 498 U.S. 984, 11 S.Ct. 517 (1990). Here, in designing the plan, the sponsor of the Plans (General Motors) – not State Street – chose certain investment options. Any decision to change the Plan requirements for the Single Equity Funds would have required an amendment to the Plans, which is not a fiduciary function. Wright v. Oregon Metallurgical Corp., 360 F.3d 1090, 1102 (9th Cir. 2004) (decision "not to amend the plan to permit further diversification" is not a fiduciary function, "but was rather a plan design or settlor function"). In short, plaintiffs' claim about creating and maintaining the Single Equity Funds is not a viable breach of fiduciary duty claim against anyone – and certainly not against State Street.

> 2. **The Plan Documents Required State Street To Maintain The Single Equity Funds And State Street Did Not Have Discretionary Authority To Eliminate Or Diversify The Funds**

Plaintiffs' particular claim against State Street seems to be that State Street somehow had a duty to override the terms of the Plans. It is apparent from the documents referred to in plaintiffs' Complaint that State Street had no such role, duty or discretion. **This is an issue that has been resolved for defendants generally by the Supreme Court and the Second Circuit – and recently decided against other GM Plan participants suing State Street about its alleged abuse of discretion under the same GM Plan documents.**

ERISA is a "comprehensive and reticulated statute" that governs employee benefit plans. Mertens v. Hewitt Assocs., 508 U.S. 248, 251 (1993). In enacting ERISA's regulatory scheme, Congress required that all assets of an ERISA plan be held in trust by a trustee. ERISA § 403(a), 29 U.S.C. § 1103(a). By necessity, therefore, each 401(k) plan must have a trustee, which typically is some entity other than the named fiduciary. Id. (trustee must be "appointed by

- 13 -

person who is named fiduciary"). In keeping with this statutory requirement, many employers have placed plan assets with an outside institutional trustee such as State Street, delegating to that trustee the necessary custodial tasks such as periodic valuation, reporting of plan assets and payment of plan benefits. At the same time, employers desiring to maintain control over the type and level of investment of plan assets significantly limit the authority and discretion of that trustee.

Acting as an institutional trustee for ERISA plan assets is not an open-ended assumption of responsibility about those assets. In every ERISA case charging breach of fiduciary duty, the "threshold question" as to each defendant is whether that defendant was "acting as a fiduciary (that is, performing a fiduciary function) when taking the action subject to complaint." Pegram v. Herdrich, 530 U.S. 211, 226 (2000). ERISA, and federal regulations interpreting it, impose fiduciary responsibility only "to the extent" a person has discretion or control with respect to the particular matter in dispute. See 29 U.S.C. § 1002(21)(A); 29 C.F.R. § 2509.75-8, FR-16 (liability of fiduciary limited "to the extent" of the particular fiduciary functions performed); 29 C.F.R. § 2509.75-8, FR-13 (fiduciaries will not be liable for acts or omissions delegated to other fiduciaries). The Second Circuit has observed that "a person may be an ERISA fiduciary with respect to certain matters but not others, for he has that status only 'to the extent' that he has or exercises the described authority or responsibility." Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co., 302 F.3d 18, 28 (2nd Cir. 2002).

In this case, State Street's fiduciary responsibility, and therefore its exposure to liability, is alleged to arise by virtue of its duties under the terms of the Master Trust and Agreement. [Compl., ¶ 18 (served as trustee and investment manager); ¶¶ 23, 27, 31, 35 ("State Street is the Investment Manager and Trustee for the Single Equity Fund investments"). A review of these plan instruments, however, demonstrates that **State Street had no authority or discretion in the matters complained of** – i.e., the decision to design a plan including the Single Equity Funds in the Plans as well as the continued maintenance of those funds in the Plans.

Under the Plans, the Trust, the Agreement and other documents, State Street was

- 14 -

**required** to maintain certain funds in the Plans (including the Single Equity Funds) as directed by the plan documents, and to invest assets in those funds pursuant to the direction of the named fiduciaries. [See, e.g., Salaried Plan (Exh. A) Art. 2, § 2 (The Trustee is to invest in the following instruments... Corporation's Common Stock Funds [including GM Class H stock]... EDS Common Stock Fund ... Raytheon Common Stock Fund ... Delphi Common Stock Fund...); Master Trust (Exh. G) at p. 8 ("SEPARATE INVESTMENT FUNDS. GMIMCo, from time to time, shall direct the Trustee to establish one or more separate investment accounts..."), pp. 11-12] Once funds were deposited in the Single Equity Funds, the Trust and Agreement make clear that it is State Street's contractual obligation to invest those funds in applicable common stock. [See Agreement (Exh. H) at 2 ("Each Investment Account **shall** consist of the applicable class of common stock of the Corporation ... Delphi... Raytheon... EDS...") (emphasis added)] [7]

Under ERISA and general trust law principles, State Street was **required** to maintain the Single Equity Funds as dictated by the governing plan documents. 29 U.S.C. § 1104(a)(1)(D) (a fiduciary must act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with [ERISA]"). Any attempt by plaintiffs to argue that State Street had general discretion to diversify or eliminate those funds is simply a construction contrary to the terms of the plan documents. See Restatement (Second) of Contracts § 203(a) and (c) (1981) (instruments must be construed to give effect to all provisions, to render provisions consistent with each other, and so that specific terms control the interpretation of general language); see also Beddall v. State Street Bank and Trust Co, 137 F.3d 12, 17 (1st Cir. 1998) (court may construe plan agreements on motion to dismiss).

_____

[7] There is one very narrow exception to these obligations, which cannot be the basis for imposing liability on State Street in this case. Under the Agreement, State Street was given discretion to estimate the liquidity needs of the Funds for loans, exchanges and distributions (ordinarily not to exceed 1% of the Funds' net asset value), and manage liquidity so as to minimize trading expenses of the Plan. [Agreement (Exh. H), p. 2] Plaintiffs' claims do not challenge the prudence of State Street's actions in this regard and, therefore, the very narrow discretion that was conferred under the Agreement is not a basis for liability. Pegram, 530 U.S. at 226.

Plaintiffs' head-on collision with the plan documents on this central issue is fatal to their claims. The Second Circuit has squarely held that adherence to the terms of the governing plan documents cannot constitute a breach of fiduciary duty where this is no grant of discretionary authority to the fiduciary to act. Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co., 302 F.3d 18, 29 (2nd Cir. 2002). Applying Harris Trust, the claims against State Street fail as a matter of law because State Street's role in acquiring and holding Single Equity Funds was required by the plan documents, was purely ministerial and was subject to the direction of the named fiduciaries,.

Other Courts of Appeal decisions have reached the same conclusion. See Grindstaff v. Green, 133 F.3d 416, 426 (6th Cir. 1998) (affirming Rule 12 dismissal of trustee); Wright v. Oregon Metallurgical Corp., 360 F.3d 1090, 1103 (9th Cir. 2004) (trustee obligated to follow proper directions which were made in accordance with the terms of the Plan and which were not contrary to ERISA); Beddall v. State Street Bank and Trust Co, 137 F.3d 12, 16-21 (1st Cir. 1998) (same); Herman v. NationsBank Trust Co., 126 F.3d 1354, 1361 (11th Cir. 1997), *cert. denied,* 525 U.S. 816 (1998) (same); Izzarelli v. Rexene Prods. Co., 24 F.3d 1506, 1525 n. 34 (5th Cir. 1994) (same); Maniace v. Commerce Bank of Kansas City, 40 F.3d 264, 267-68 (8th Cir. 1994) (trustee had no discretion, and therefore could not breach fiduciary duties, with regard to stock fund); Ershick v. United Missouri Bank of Kansas, 948 F.2d 660, 665 (10th Cir. 1991) (trustee not required to weigh the merits of stock fund).

A leading district court decision on this issue is the Southern District opinion by Judge Cote in In re Worldcom, Inc. ERISA Litigation, 354 F. Supp. 2d 423, 449 (S.D.N.Y. 2005) (trustee not liable for failing to diversify fund because it did not have discretion to do so and public indicators did not reveal extraordinary circumstances requiring trustee to disregard plan documents). Also see In re RCN Litig., 2006 U.S. Dist. LEXIS 12929 (D.N.J. 2006) (granting trustee's motion to dismiss); Summers v. UAL Corp., 2005 U.S. Dist. LEXIS 23918 (N.D. Ill. 2005) (granting State Street summary judgment on claim that it should have sold stock in single equity fund), affirmed 453 F.3d 404 (7th Cir. 2006); In re Cardinal Health, Inc. ERISA Litig.,

- 16 -

2006 U.S. Dist. LEXIS 15050, * 80-97 (S.D. Ohio 2006) (granting motion to dismiss because trustee was under no obligation to disregard plan terms and diversify stock fund); Hecker v. Deere & Company, 2007 U.S. Dist. LEXIS 45275, * 21-22 (W.D. Wisc. June 20, 2007) (granting motion to dismiss Fidelity Trust with prejudice holding that Fidelity could not be liable for allegedly imprudent investment choice because the plan documents demonstrated that Deere & Company – not Fidelity – had responsibility for selection of plan investment options).

Most importantly, **this issue was already decided in State Street's favor on a motion to dismiss in a prior lawsuit about the same plans** - in In re General Motors ERISA Litigation, 2006 U.S. Dist. LEXIS 16782 (E.D. Mich. 2006). That complaint on behalf of the same putative class of plaintiffs about the same General Motors Plans alleged that, just as here, State Street breached its fiduciary duties by not diversifying the Salaried Plan and the Hourly Plan out of a single equity stock fund (the GM company stock fund). In considering that virtually identical claim, Judge Edmunds conducted a detailed analysis of the governing plan documents, including the same Master Trust and Agreement at issue here. Id. at * 57-60 ("There are two principal documents governing State Street's responsibilities and authority as a fiduciary ... the Master Trust Agreement ... [and] and Investment Management Agreement"). The General Motors court granted State Street's motion to dismiss and held as a matter of law that State Street could not be liable for failing to diversify the single equity fund:

> State Street's discretion as both a directed trustee and as an investment manager was extremely limited. Under the Plans, the Trust and the Agreement, State Street simply had no discretion to act in the way that Plaintiff suggests it should have.

Id. at * 65-66. Notably, plaintiffs' counsel in General Motors chose not to appeal that decision.

Both efficient judicial administration and basic fairness to State Street are completely undercut when different participants in the same GM plans go to another courthouse to try their luck with the same failed claim. Here, just as in General Motors, plaintiffs "ignore that if State Street was to diversify [the single equity funds], it would be inconsistent with other terms and conditions of the plans..." Id. at * 63. The reasoning that led the district court in Michigan to dismiss the prior lawsuit should be used by this Court to dismiss this lawsuit against State Street.

This Court should dismiss State Street as a defendant by applying the Second Circuit's doctrine of virtual representation. The Second Circuit has instructed that:

> [under the] doctrine of virtual representation, a person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative. We have endorsed this doctrine, observing that claim preclusion may bar non-parties to earlier litigation when the interests involved in the prior litigation are virtually identical to those in later litigation.

Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 90 (2d Cir. 2005) (quoting Chase Manhattan Bank, N.A. v. Celotex Corp., 56 F.3d 343, 345 (2d Cir. 1995)). As the Second Circuit explained, "the key seems to be that [the] interests [of the non-party] have been adequately represented by others who have litigated the matter and have lost." Chase Manhattan, 56 F.3d at 345 (quoting Allan D. Vestal, Res Judicata/Preclusion, at p. 128 (1969)). That key fits the facts in this case, and the doctrine applies as an additional basis for dismissing the claims against State Street.

### 3. Single Equity Funds In The Plans Complied With ERISA

The basic premise of plaintiffs' complaint is the erroneous assertion that a single equity fund offered as one of a diverse set of investment options violates ERISA's diversification requirements. [See, e.g., Compl., ¶ 92 ("The Plans' investments in the Single Equity Funds were not diversified and not suitable retirement plan investments.")] Plaintiffs are asking this Court to create new law – overturning decades of ERISA jurisprudence – and hold that an ERISA plan may not offer a single equity fund as one of its investment options. ERISA does not so provide, and this Court should not create a new legal requirement. See Hughes Aircraft Co. v Jacobson, 525 U.S. 432, 447 (1999) (ERISA is "enormously complex and detailed" and courts should "be loath" to include requirements not found in the text).

There is nothing legally improper or contrary to ERISA when an ERISA plans offer non-diversified single equity funds as options in conjunction with many diversified investment options. Plaintiffs repeatedly cite in their complaint to ERISA § 404(a)(1)(C) to support their faulty premise that single equity funds are an improper investment option in an ERISA plan. [See Compl., ¶¶ 63, 77, 80 and 92] However, ERISA § 404(a)(1)(C) actually shows the

- 18 -

erroneous nature of plaintiffs assertion that a plan cannot offer a single equity fund. ERISA §
404(a)(1)(C) provides that a fiduciary shall discharge his duties:

> (C) by diversifying the investments **of the plan** so as to minimize the risk of
> large losses, unless under the circumstances it is clearly prudent to do so…

ERISA § 404(a)(1)(C), 29 U.S.C. § 1104(a)(1)(C) (emphasis added). Under this provision, it is
the investments of **the plan** that must be diverse – not the investments of each individual fund
within the plan.

The Seventh Circuit Court of Appeals recently recognized this exact point in affirming a
district court's ruling in favor of State Street in Summers v. State Street Bank, 453 F.3d 404 (7th
Cir. 2006). The plaintiffs in Summers alleged that State Street had breached its fiduciary duty by
not diversifying a single equity stock fund holding plan assets solely in stock of the plan sponsor
(United Air Lines) even as the stock "was going into the tank" before United Air Lines went
bankrupt. Id. at 407-408. Judge Posner explained that whether a single fund is diversified is not
the issue – the issue is the overall portfolio, because a prudently diverse portfolio will include
funds of various risk levels. Id. at 409 (not important that single holding was very risky where
overall portfolio is diverse "because the risks of the various components of such a portfolio tend
to cancel out; that is the meaning and objective of diversification."); see also Id. at 411 (it is the
riskiness of the overall portfolio, "not of a particular asset in the portfolio" that is important).

Other ERISA decisions make the same key point that plaintiffs' complaint misses –
ERISA's diversification requirement applies to the plan as a whole and not to individual funds or
holdings. See e.g., Sandoval v. Simmons, 622 F. Supp. 1174, 1211 (C.D. Ill. 1985) ("ERISA
measures diversification by considering the assets of the trust as a whole, not by the assets of
particular funds."). In Sandoval, the court concluded that a fiduciary had not violated ERISA's
diversification requirements when 18.5% of the trust's total market value had been invested in
one corporation, approximately 11% in another, and nearly 14% in a third corporation. Id. at
1199, 1208, 1211-12. See also Jones v. O'Higgins, 1989 U.S. Dist. LEXIS 10537 (N.D.N.Y.
1989) (no rule prohibiting concentration of ERISA plans assets in a single security; however,

"although the fiduciary may be authorized to invest in individual stocks," he should not invest a disproportionate amount of the assets in a single security); DiFelice v. U.S. Airways, 436 F. Supp. 2d 756, 786 (E.D. Va. 2006) ("As the portfolio management theory instructs, ... high-risk, high-yield securities are an important investment as part of a diversified portfolio.").

What plaintiffs have done in their complaint is to focus on and describe in detail the Single Equity Funds and their investment results and jump to the conclusion that maintaining those funds was a breach of fiduciary duty. But jumping to the conclusion that the Single Equity Funds were contrary to ERISA does not state a claim. The Supreme Court recently emphasized that Rule 8 requires a plaintiff to plead plausible factual grounds for his claims and that the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp., v. Twombly, 550 U.S. __ (May 21, 2007).

Plaintiffs have fallen short of that standard and have not alleged **any** facts demonstrating that the Plans' Single Equity Funds violated ERISA § 404(a)(1)(C) on diversification. Although plaintiffs allege that the individual Single Equity Funds at issue were not diversified, that is not the legal issue and cannot be the factual basis for a viable ERISA claim. Plaintiffs do not allege that that **Plans' assets as a whole** were not diversified. To the contrary, plaintiffs affirmatively allege that the Plans' overall assets were invested in "over thirty funds." [Compl. ¶ 38][8] Plaintiffs also do not – and cannot – allege any facts demonstrating that any of the Single Equity Funds at issue accounted for a disproportionate percentage of the Plans' overall holdings. Indeed, the Single Equity Funds combined never accounted for more than 5% of the assets held by the Master Trust at the end of any fiscal year, and most of the Single Equity Funds individually accounted for less than 1 or 2% of the assets. [Exh. I][9]

---

[8] In fact, the number of options was even higher. See, e.g., Salaried Plan (Exh. A), pp. 11-12 (listing at least 69 diverse funds from which a participant could choose to invest his or her contributions to the plan).
[9] Exhibit I is a compilation of excerpts from the Forms 11-K filed by GM for the Salary and Hourly Plans for the years December 31, 1996 through December 31, 2005 that show the amounts of the assets held by each of the Plans and the Master Trust's holdings in the Single Equity Funds as of December 31st of each year. These documents are also relied by plaintiffs' in their Complaint. [Compl., p. 1]

Moreover, plaintiffs assert no factual allegations supporting their general assertion that State Street should have known that the individual stocks held by the Single Equity Funds became so imprudent that it would violate ERISA as a matter of law to continue investing a portion of the Plan's diverse assets in those stocks. The best that plaintiffs can do is to allege that, during part of a post-2000 time period, some of the Single Equity Funds lost money. [Compl., ¶ 48] That is neither surprising nor a violation of ERISA. See, e.g., In re Worldcom Inc. ERISA Litigation, 354 F. Supp. 2d 423, 447 (S.D.N.Y. 2005) (because "stock prices 'fluctuate as a matter of course, even a steep drop in a stock's price'" would not necessarily indicate that holding the stock violated ERISA). See also 29 C.F.R. § 2550.404(a)-1(b) (setting forth safe-harbor regulation insulating fiduciary where investment was part of plan's overall diverse investment strategy).

As Judge Cote noted in Worldcom, another case about benefit plan stock funds, the stock market in general had a very difficult period during the recession in 2000 and especially after September 11: "By March 2001, the economy had entered a downturn that was being labeled as a 'recession' by many economists. This recession became more severe following the events of September 11, 2001. The recession was marked by significant declines in stock market indices... Between February 2000 and July 2002, the Nasdaq lost almost 53% of its value." 354 F. Supp. 2d at 437; see also Wright v. Oregon Metallurgical Corp., 360 F.3d 1090, 1099 (9th Cir. 2004) ("It is common knowledge that the stock market suffered dramatic losses during 2000 and 2001, but the Plaintiffs **fail to allege any facts** that would indicate that [the fiduciaries] should have had reason to think the decline in the price in [company] stock was anything unusual...") (emphasis in original).

### 4.    Plaintiffs Cannot Establish The Necessary Causation To Plead An ERISA Violation

Plaintiffs' complaint suffers from another obvious legal defect – a complete failure to plead causation. See, e.g., Kuper v. Quantum Chemical, 66 F.3d 1447 (6th Cir. 1995) (plaintiffs must show a causal link between the failure of the ERISA fiduciary to act and the harm allegedly

suffered); Amron v. Morgan Stanley Investment Advisors, Inc., 464 F.3d 338, 343-44 (2nd Cir. 2006) (where loss causation is element of plaintiff's claim, complaint must allege facts sufficient to establish that element). In order to establish this causal link, as the Kuper court explains:

> Plaintiffs must also demonstrate a causal link, specifically, that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident.

Kuper at 1459; see also Diduck v. Kaszycki, 974 F.2d 270 (2nd Cir. 1992) (plaintiffs could not show that the funds were "worse off" as a result of trustee's alleged breach of fiduciary duty and it was speculative to assume the fund would have done better had the fiduciaries acted). Here, the diverse composition of the GM Plans portfolio of investment options is a complete answer to any allegation that a more thorough investigation by State Street would have caused State Street to determine the funds were imprudent and then take steps to close the funds.

Nor can plaintiffs allege facts, beyond mere speculation, to show that the elimination of the funds would have resulted in alternative investments with higher returns. Notably, plaintiffs assert no facts alleging when State Street should have broken with the requirements in the Plans and sold the stock or what information should have prompted such an extreme action. The best plaintiffs can do as an assertion that State Street should be held liable for following the plan documents and maintaining the Single Equity Funds because "the S&P 500 has performed substantially better" than some of those funds. [Compl., ¶ 61] Legal deficiency of that claim aside, some of the stocks at issue have had periods of incredible growth and the participants would have lost significant returns had State Street sold the stock at the wrong time. For example, Raytheon stock's price has gone from under $20 in 2000 to over $58 per share in 2007.[10] But relative performance is not the basis for a claim of breach of fiduciary duty. Plaintiffs' attempt to look back and hold State Street liable for alleged underperformance of certain securities during a cherry-picked period of time defies ERISA.

---

[10] The Court may take judicial notice of well-publicized stock prices. See Ganino v. Citizens Utilities Co., 228 F.3d 154, 166 n. 8 (2nd Cir. 2000); Grimes v. Navigant Consulting, Inc., 185 F. Supp. 2d 906, 913 (N.D. Ill. 2002).

5.    **Plaintiffs Cannot Plead An ERISA Claim To Recover Better Investment Results Than The Stock Market**

Plaintiffs essentially ask this Court to treat State Street as an insurance policy guaranteeing participants that, if another part of the market outperforms **any of** the investments in the Plans, then participants will get the difference. That is not how ERISA, or the real world, works. As an initial matter, a trustee of a benefit plan is under no obligation to seek the maximum returns or to outperform the market. See Wright v. Oregon Metallurgical Corp., 360 F.3d 1090, 1100 (9th Cir. 2004) ("ERISA 'does not create an exclusive duty to maximize pecuniary benefits.'"). Moreover, a properly diverse portfolio will necessarily have some more risky investments and some less risky investments. Summers, 453 F.3d at 409 ("that is the meaning of diversification"). The fact that some investments happen to do better than others in a given period of time does not make State Street liable to compensate participants for those investments that have a down period.

There is an important public policy at stake in this case and about this claim. Congress did not design ERISA's fiduciary principles to create a statutory insurance policy against every stock drop. ERISA fiduciaries are not expected to predict the direction and magnitude of future stock movements. See, e.g., Bouboulis v. Transp. Workers Union of Greater New York, 2006 U.S. Dist. LEXIS 74238, * 11-12 (S.D.N.Y. 2006) (Second Circuit does not require an ERISA fiduciary to be prescient as to the future) (citing Mulins v. Pfizer, Inc., 23 F.3d 663, 669 (2nd Cir. 1994)); Wright v. Oregon Metallurgical Corp., 360 F.3d 1090, 1099 (9th Cir. 2004) (affirming dismissal of defendants for alleging investing in imprudent stock, finding that ERISA only requires that a fiduciary act reasonably, but "does not require them to act in a extraordinarily prescient manner" by diversifying a fund when they think the stock price may drop). The market naturally prices stocks at what the market considers they are worth, and ERISA does not require State Street to do better than the market at predicting what the market will do in the future. See Summers v. State Street Bank & Trust, 453 F.3d 404, 408 (7th Cir. 2006) ("it would be *hubris* for a trust company like State Street to think it could predict [a company's] future more accurately than the market could...").

- 23 -

There are simply no facts about the Single Equity Funds that placed State Street on notice that continuing to follow the terms of the Plans by holding assets in the Single Equity Funds was contrary to ERISA. Indeed, the facts alleged demonstrate the legally appropriate diversification of the GM Plans. Plaintiffs complain about State Street not overriding the GM Plans and not selling the Single Equity Funds simply because those funds were not diversified and because of movements in the stock market. That sort of active investment management by corporate trustees is neither the intent nor the mandate of ERISA and certainly not the basis for a viable claim of breach of fiduciary duty against State Street.

## IV.    CONCLUSION

For all of the foregoing reasons, defendant State Street respectfully requests that the Court dismiss the complaint with prejudice.

Dated: June 25, 2007                    Respectfully submitted,

STATE STREET BANK AND TRUST COMPANY

By its attorneys,

WILBER H. BOIES, P.C.
NANCY G. ROSS
CHRIS C. SCHEITHAUER
McDermott Will & Emery, LLP
227 W. Monroe Street
Chicago, IL  60606
312.984.7686

ANDREW B. KRATENSTEIN (AK-3910)
McDermott Will & Emery LLP
340 Madison Avenue
New York, NY  10173
212.547.5400
*Counsel for Defendant*
*State Street Bank and Trust Company*

ORC 416134-2.030790.0275