# EXHIBIT A

```
 1              IN THE UNITED STATES DISTRICT COURT

 2            FOR THE DISTRICT OF MASSACHUSETTS

 3   LAWRENCE W. BUNCH, et al.,      )

 4                  Plaintiffs,      )

 5              vs.                   )Case No. 04-11380-WGY

 6   W.R. GRACE & CO., et al.,       )

 7                  Defendants.      )

 8

 9              The 30(b)(6) deposition of Duff & Phelps,

10   LLC, by DANIEL D. BAYSTON, called for examination,

11   taken pursuant to the Federal Rules of Civil

12   Procedure of the United States District Courts

13   pertaining to the taking of depositions, before

14   ANDREA L. CARTER, CSR No. 84-3722, a Notary Public

15   within and for the County of Cook, State of

16   Illinois, and a Certified Shorthand Reporter of said

17   state, at Suite 3700, 35 West Wacker Drive, Chicago,

18   Illinois, on the 31st day of May, A.D. 2007, at 9:34

19   a.m.

20

21

22

23

24
```

ORIGINAL

1      A.    No, that's incorrect.  I do recall that

2  the D.E. Shaw offer was discussed on or about this

3  time period at this meeting.

4      Q.    And you participated in the discussion

5  about the Shaw offer or inquiry?

6      A.    That's how I found out about the inquiry.

7      Q.    Did you express a view as to whether or

8  not State Street should anticipate selling or should

9  participate in selling the block to D.E. Shaw?

10      MR. BOWERS:  Objection, form.

11  BY THE WITNESS:

12      A.    We did not.

13  BY MR. CUMMINS:

14      Q.    Did you express a view at all of whether

15  State Street should sell the block?

16      A.    No, we provided State Street information

17  so that they could make their own independent

18  decision.

19      Q.    And at that time that that discussion

20  occurred on or about April 6th, they had received

21  your April 5th e-mail that we have marked as Exhibit

22  15, right?

23      MR. BOWERS:  Objection.

24

DANIEL D. BAYSTON - MAY 31, 2007

1  BY MR. CUMMINS:

2     Q.    Is that right?

3     A.    I think it's fair to assume since my

4  e-mail is dated April 5th and their committee

5  meeting is April 6th that they received it prior to

6  their meeting.

7     Q.    Did you discuss the content of your

8  e-mail, particularly the second paragraph with

9  representatives of State Street?

10    A.    I don't recall the specific discussions

11 about this particular update.

12    Q.    Well, the second paragraph of Exhibit 15

13 expressed your view that the events of the past

14 several weeks and the coming weeks and months are

15 important to evaluate any conclusions on the current

16 stock price, right?

17    A.    That's what the e-mail says, correct.

18    Q.    Did you say that to representatives of

19 State Street at the April 6th meeting?

20    A.    As I said, I don't recall specific

21 conversations, but it would not have been unusual

22 for us to discuss the issues that were laid out in

23 the e-mail of April 5th.

24    Q.    Did you take -- knowing -- in light of

1  your position that the events of the past several

2  weeks prior to April 5th are important to evaluate

3  the conclusions on the current stock price, did you

4  ever take the position on behalf of Duff & Phelps

5  that State Street should wait somehow to see your

6  revised analysis before making a decision as to

7  whether to sell the stock?

8      A.    We provided --

9      MR. BOWERS:  Objection.

10 BY THE WITNESS:

11     A.    We provided State Street with

12 information, and they were to make their own

13 independent decision.

14     MR. CUMMINS:  If we could take about a

15 five-minute break, I am going to look over a couple

16 of pieces of paper, and I think I am finished, but I

17 just want to look.

18                  (WHEREUPON, a recess was had at

19                  1:06 p.m. until 1:12 p.m.)

20 BY MR. CUMMINS:

21     Q.    Let's go back on the record.  I just have

22 one question.

23            The last exhibit we looked at is the

24 record of an April 6th meeting.