

2007 WL 3146371                                                                                                                                       Page 1
--- F.Supp.2d ----, 2007 WL 3146371 (D.N.J.)
**(Cite as: 2007 WL 3146371 (D.N.J.))**

Only the Westlaw citation is currently available.

United States District Court,
D. New Jersey.
Gary NOA, Elmer Arthur Kaler, Joseph Yaniak, and Julia Holden, on behalf of
themselves and all others similarly situated,
Plaintiffs,
v.
Craig D. KEYSER, Judy Fisher, Trump Hotels & Casino Resorts, Inc., Trump Taj
Mahal Associates, Trump Marina Associates, Trump Plaza Associates, Trump
Indiana, Inc., Frederick Cunningham, Theresa Glebocki, Francis Y. Mccarthy,
Daniel McFadden, Stephen Oskiera, and Loretta Pickus, Defendants.
**Civil Action No. 05-CV-776 (JEI).**

Oct. 30, 2007.
Trujillo Rodriguez & Richards, LLC by Lisa J. Rodriguez, Haddonfield, NJ, for Plaintiffs.

McElroy, Deutsch, Mulvaney & Carpenter, LLP by Florina A. Moldovan, Esq., Francis X. Dee, Esq., Morristown, NJ, for Defendants.

### OPINION

IRENAS, Senior District Judge.

**\*1** Plaintiffs commenced this class action against Defendants on February 8, 2005. [FN1] Plaintiffs assert three claims: (1) Defendants breached their fiduciary duties to Plaintiffs under section 404 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1104, by forcing the sale of all Trump Hotels & Casino Resorts, Inc. ("THCR") common stock in Plaintiffs' 401(k) plans, causing them significant monetary loss; (2) alternatively, in the event this Court holds that any Defendants are not fiduciaries, such Defendants are liable under section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), as non-fiduciaries who knowingly participated in the other Defendants' breach of their fiduciary duties; [FN2] and (3) Defendant Trump Taj Mahal Associates ("Taj Mahal") is liable for breach of contract. [FN3] (2d Amended Comp., Counts I-III). Before the Court is Defendants' motion for summary judgment dismissing Plaintiffs' claims. (Docket No. 35). For the reasons set forth below, because Defendants did not breach their fiduciary duties to Plaintiffs, the motion for summary judgment will be granted.

FN1. Class certification was granted on April 5, 2006. (Docket No. 23). The class was defined as, "All persons who were or are participants in, or beneficiaries of, the Trump Capital Accumulation Plan, and held shares of Employer stock as of October 28, 2004." Jonathan Bruccoleri, Julia Holden, Elmer Arthur Kaler, Gary L. Noa, and Joseph W. Yaniak, Jr. were certified as Class Representatives (collectively, "Plaintiffs").

FN2. The Court has jurisdiction over the ERISA claims pursuant to 28 U.S.C. § 1331. *See also* 29 U.S.C. § 1132(e)(1). Venue is proper under 28 U.S.C. § 1391(b)(2) and 29 U.S.C. § 1132(e)(2).

FN3. Plaintiffs concede that their breach of contract claim is 3 preempted by ERISA. (Pls. Br. at 27 n. 15); *see generally Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41 (1987). Thus, the claim will be dismissed from this action.

### I.

Defendants THCR, Taj Mahal, Trump Marina Associates, Trump Plaza Associates, and Trump Indiana, Inc. (collectively, "Trump Companies") were participating employers of the Trump Capital Accumulation Plan (the "Plan" or "401(k) Plan"). (Dfs. R. 56.1 Stat. ¶ 1). [FN4] Taj Mahal was the Plan sponsor. (Moldovan Cert. I, Ex. 1 at 29-30). The Plan was administered by an Administrative Committee (the "Committee"), whose members comprised various high-level employees of Trump Companies. [FN5] (Dfs. R. 56.1 Stat. ¶¶ 2- 3). Each of the individually named Defendants were members of the Committee, except for Judy Fisher, who provided assistance in her capacity as Executive Director of Human Resources Administration for Trump Entertainment Resorts. (*Id.* ¶¶ 2-3). Plaintiffs were employees of Trump Companies who participated in the Plan. (*Id.* ¶ 4). As required by the class definition, Plaintiffs held varying amounts of THCR common stock ("Employer Stock") in the Plan as of October 28, 2004. (*Id.*).

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

2007 WL 3146371                                                                                                       Page 2
--- F.Supp.2d ----, 2007 WL 3146371 (D.N.J.)
**(Cite as: 2007 WL 3146371 (D.N.J.))**

FN4. "R. 56.1 Stat." is the statement setting forth "material facts as to which there exists or does not exist a genuine issue," as required by L.Civ.R. 56.1.

FN5. The Plan specifically named the Committee and Taj Mahal as fiduciaries. (Moldovan Cert. I, Ex. 10 § 15.1; *see also id.* § 2, "Definitions"). The members of the Committee were Craig D. Keyser, Francis McCarthy, Frederick Cunningham, Theresa Glebocki, Daniel McFadden, Stephen Oskiera, and Loretta Pickus. (Dfs. R. 56.1 Stat. ¶ 2).

The Plan was a "defined contribution plan," pursuant to section 401(k) of the Internal Revenue Code and ERISA, [FN6] created for the benefit of the Trump Companies' employees. (*Id.* ¶ 5). Employee participants in the 401(k) Plan maintained personal control over the assets in their accounts, choosing whether to invest in Employer Stock and a number of other funds. [FN7] (Moldovan Cert. I, Ex. 1 at 4-10, App. A). The Committee had the "responsibility and authority to control the operation and administration of the Plan," and was given "all powers necessary to enable it to carry out its duties in that respect." (*Id.,* Ex. 10 § § 13.3, 15.4(c)). In particular, the Committee was charged with "monitor[ing] the suitability of acquiring and holding Employer Stock under the fiduciary duty rules ... of ERISA." (*Id.* § 14.4(b)).

FN6. ERISA states: "The term ... 'defined contribution plan' means a pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34).

FN7. Examples of other fund investments included the PIMCO Total Return Fund, Davis New York Venture Fund, and Delaware Trend Fund I. (Moldovan Cert. I, Ex. 1 at App. A-4 to -6). Contrary to Plaintiffs' contention that Employer Stock did not constitute a "fund," the 401(k) Plan Document unambiguously states that "Employer Stock transactions shall be effected through the Employer Stock *Fund.*"

(*Id.,* Ex. 10 § 14.4) (emphasis added).

**\*2** This case arises from a series of events that occurred in the latter part of 2004, and that ultimately resulted in the Committee's decision to force the sale of all Employer Stock held in Plaintiffs' 401(k) Plans. In early August, 2004, THCR contemplated a planned, prepackaged bankruptcy due to financial difficulties. (Moldovan Cert. I, Ex. 2 at 31:2-21). On August 9, 2004, THCR publicly disclosed a proposed Chapter 11 bankruptcy involving DLJ Merchant Banking Partners III, L.P. ("DLJ"), [FN8] the goal of which was "to restructure the Company's public indebtedness and to recapitalize the Company." [FN9] (*Id.,* Ex. 12 at 1).

FN8. DLJ is a private equity fund of Credit Suisse First Boston.

FN9. Following this announcement, the THCR stock price fell from $1.85/share on August 9, to $0.36/share on August 10. (Pls. Ex. 101, Preston Rep. Ex. C at 4). The stock price fluctuated significantly through November 30, falling as low as $0.19/share and reaching as high as $1.30/share, but only exceeding $0.87/share for two days in late October. (*Id.* at 4-6).

During a meeting held the same day, the Committee discussed the impending bankruptcy and whether to retain Employer Stock as an investment option for Plan participants. (*Id.,* Ex. 7 at 37:20-38:6). Paul Chan, Esq., who was retained by the Committee to provide guidance as to their fiduciary obligations, was also present at the meeting. (*Id.,* Ex. 13 at 29:1-30:21). A significant topic of discussion was that the New York Stock Exchange ("NYSE") was going to immediately de-list THCR stock because of the prepackaged bankruptcy. [FN10] (*Id.; see also* Ex. 14).

FN10. The NYSE officially announced the de-listing of the stock on August 10, 2004. (Moldovan Cert. I, Ex. 18).

After Mr. Chan advised the Committee of their fiduciary duties, and after considering the impending bankruptcy and NYSE de-listing, the Committee adopted a Plan resolution, which stated: "Effective August 9, 2004, Employer Stock shall no longer be an investment option available to Participants." (*Id.,* Ex. 13 at 36:11-24; Ex. 14; Ex. 15). The Committee made no decision about Employer Stock already held in participants' 401(k) Plans as of August 9. On

2007 WL 3146371                                                                                                                                Page 3
--- F.Supp.2d ----, 2007 WL 3146371 (D.N.J.)
**(Cite as: 2007 WL 3146371 (D.N.J.))**

August 10 Ms. Fisher advised the Plan's trustee, Merrill Lynch, [FN11] and all Trump Companies' employees of the Committee's decision. (*Id.,* Ex. 17). Ms. Fisher sent a second mailing on August 14, again informing employees that Employer Stock would no longer be a Plan investment option, but also stating that employees were permitted to attempt to sell any shares they already owned. (*Id.,* Ex. 20).

> FN11. Around the same time, for reasons not entirely clear from the record, the Committee was investigating possible successors to Merrill Lynch. (Moldovan Cert. I, Ex. 7 at 54:12-55:8). During another Committee meeting held on September 10, 2004, Fidelity Investments was chosen as the Plan's new trustee, effective January 1, 2005. (Pls. Ex. 53; Ex. 105 at 43:14-44:11).

On September 22, 2004, THCR issued a news release indicating that the prepackaged bankruptcy with DLJ was terminated and that THCR was pursuing alternatives to restructure and recapitalize the company. (*Id.,* Ex. 21). Approximately one month later, on October 21, another news release announced that a comprehensive restructuring plan was approved. [FN12] (*Id.,* Ex. 22). Under this reorganization, it was expected that "unaffiliated stockholders [who included 401(k) Plan participants] would retain their interests in their current common stock (which would be diluted to 0.05% of the total equity interests of the recapitalized Company ... ). The existing unaffiliated stockholders would also receive one-year warrants upon consummation of the [Restructuring] Plan to purchase common stock at the same per share purchase price as Mr. Trump's investment." (*Id.* at 4).

> FN12. This reorganization plan involved an agreement between THCR, Donald J. Trump, the company's Chairman and Chief Executive Officer, and holders of various company notes due 2006 and 2010. (Moldovan Cert. I, Ex. 22 at 1). As part of the plan, Mr. Trump intended to invest approximately $71.4 million into the recapitalized company. (*Id.* at 2).

*\*3* Following this announcement, the Committee met again on October 25, to discuss the 401(k) Plan. (Dfs. R. 56.1 Stat. ¶ 26). All of the individually named Defendants, as well as outside counsel, Mr. Chan, were present at the meeting. (*Id.*) The meeting concluded with a decision by the Committee to "advise [401(k) Plan] participants that if they have not yet sold their [Employer Stock], effective November 15th 2004, the stock will be sold by Merrill Lynch." (Moldovan Cert. I, Ex. 23). Ms. Fisher sent an e-mail on October 28, attached to which was a letter informing Trump Companies' employees of the Committee's decision. (*Id.,* Ex. 24). The letter to the employees stated that the forced sale would take place over a three-day period, November 15 through November 17, but that employees would "continue to be able to sell shares [they] currently own[ed] at any time prior to November 15." (*Id.*)

Based on the record, no single reason was dispositive of the Committee's decision. (*See* Pls. R. 56.1 Stat. ¶ 32). Committee members testified at their depositions that reasons for the forced sale included: warrants potentially being issued at some time in the future [FN13] (Pls. Ex. 111 at 65:22-66:9); THCR's anticipated default on a $90 million bond payment due on November 28, which might negatively impact the Employer Stock (Moldovan Cert. I, Ex. 3 at 34:16-36:11; Ex. 9 at 91:6-19); Mr. Chan's advice that a sale was legally required [FN14] (Pls. Ex. 104 at 40:11-23; Ex. 106 at 58:3-59:5; Ex. 108 at 123:9-125:2); the collapse of the prepackaged bankruptcy with DLJ (Pls. Ex. 107 at 69:8-70:12); and general concern for the future value of the stock (Pls. Ex. 109 at 58:15-59:4). It is also clear from the record that the NYSE's de-listing the Employer Stock was a factor in the Committee's decision. (*See* Pls. Ex. 107 at 72:12-14; Moldovan Cert. I, Ex. 23).

> FN13. Fidelity Investments expressed its concern, as future trustee of the Plan, that an ERISA plan could not legally retain warrants issued to holders of Employer Stock if THCR's restructuring plan succeeded. (Pls.Ex.38).

> FN14. Plaintiffs contest the fact that Mr. Chan provided any "advice" to the Committee. They base this assertion on Mr. Chan's deposition statement that "I'm not sure I advised them [about selling the Employer Stock] as opposed to not objecting." (Pls. Ex. 103 at 71:8-9). However, Mr. Chan later stated in his deposition that he did affirmatively "advise [ ] them that they had the authority to sell the stock." (*Id.* at 79:17- 19). He also "certainly participated in discussions about selling the stock." (*Id.* at 79:12-16). The Court finds that this clearly constitutes the type of advice that Mr. Chan was hired to provide. While the decision whether to approve the

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

2007 WL 3146371                                                                                                              Page 4
--- F.Supp.2d ----, 2007 WL 3146371 (D.N.J.)
**(Cite as: 2007 WL 3146371 (D.N.J.))**

forced sale of the Employer Stock was the Committee's alone, Mr. Chan was hired to provide advice on the Committee's *authority* to sell the Employer Stock in light of their fiduciary obligations to the Plan participants.

The sale of all remaining Employer Stock held by the Plan proceeded as scheduled between November 15 and November 17, 2004. (Pls. R. 56.1 Stat. ¶ 37). The Employer Stock was sold at an average of $0.57/share. (*Id.*). On November 21, 2004, THCR and its subsidiaries filed for bankruptcy and announced that the company's restructuring plan would be implemented. [FN15] (*Id.*). Plaintiffs contend that THCR's restructuring plan was a success and that the resulting common stock in the recapitalized company and the warrants issued in May, 2005, proved to have significant value. (*Id.* ¶ 38). Plaintiffs claim that the Committee's decision to force the sale of Employer Stock in mid-November, 2004, constituted a breach of their fiduciary duties that caused the class members to collectively lose over $2.3 million. (*Id.*).

> FN15. Plaintiffs allege that "[t]his news caused the stock price to sore, reaching $2.04/share by December 6, 2004," more than two weeks after the announcement. (Pls. R. 56.1 Stat. ¶ 37). However, after December 6, the stock dropped again to as low as $1.19/share by December 10. (Pls. Ex. 101, Preston Rep. Ex. C at 6). The stock price continued to fluctuate until the end of 2004, reaching as high as $2.03/share on December 29. (*Id.*). Given the stock price's volatility, it is impossible to determine that THCR's bankruptcy and restructuring plan alone "caused the stock price to sore."

### II.

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (quoting Fed.R.Civ.P. 56(c)).

**\*4** In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the nonmoving party. *Pollock v. Am. Tel. & Tel. Long Lines,* 794 F.2d 860, 864 (3d Cir.1986). " 'With respect to an issue on which the nonmoving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'--that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case.' " *Conoshenti v. Pub. Serv. Elec. & Gas,* 364 F.3d 135, 145-46 (3d Cir.2004) (quoting *Celotex,* 477 U.S. at 325). The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

### III.

Plaintiffs' primary claim is that Defendants breached their fiduciary duties under section 404 of ERISA, which states, in pertinent part:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

29 U.S.C. § 1104(a)(1)(B) (ERISA's "prudence requirement"). ERISA goes on to define "fiduciary," stating in part:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Thus, as the parties correctly argue, a determination by the Court as to which Defendants were ERISA fiduciaries is a threshold issue. *See Pegram v. Herdrich,* 530 U.S. 211, 226 (2000) (stating that "[i]n every case charging breach of ERISA fiduciary duty, ... the threshold question is ... whether [a] person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint").

In this case, there can be no dispute that each of the Defendant Committee members and Taj Mahal were specifically named fiduciaries under the Plan. *See supra* n. 5. Furthermore, the Committee members satisfy the statutory definition of fiduciaries because they exercised authority and control over the disposition of the Plan's assets when they decided to force the sale of all remaining Employer Stock. It is unclear from the record, however, the full extent to which the remaining Defendants [FN16] exercised

2007 WL 3146371                                                                                                                Page 5
--- F.Supp.2d ----, 2007 WL 3146371 (D.N.J.)
**(Cite as: 2007 WL 3146371 (D.N.J.))**

discretionary authority, control or responsibility with respect to the 401(k) Plan. Nonetheless, contrary to Defendants' assertion, enough evidence is presented in the record to allow the Court to infer, for purposes of the present motion, that Ms. Fisher and the other corporate entities were fiduciaries.

> FN16. These Defendants are Ms. Fisher, THCR, Trump Marina Associates, Trump Plaza Associates, and Trump Indiana, Inc.

**\*5** With regard to Ms. Fisher, the parties present her deposition testimony indicating her participation in Committee meetings, memoranda drafted and distributed by her regarding the Plan, and e-mail correspondence she sent to Committee members and outside counsel. (*See, e.g.,* Moldovan Cert. I, Ex. 9; Ex. 16; Pls. Ex. 20; Ex. 35). As to the other corporate entities, Defendants themselves present evidence of the strong connections between the entities and the individual Committee members who administered the Plan. For example, Mr. Cunningham served as Vice President for Legal Affairs for Trump Plaza Associates, and Mr. McFadden served as Vice President of Finance for Trump Marina Associates. (*See* Moldovan Cert I, Ex. 4 at 4:4-19; Ex. 6 at 9:12-16). Given this evidence, and drawing all inferences in favor of Plaintiffs, the Court holds for purposes of this motion that all Defendants are fiduciaries with respect to the 401(k) Plan. [FN17]

> FN17. It is important to note that even if the Court held that Ms. Fisher and the other corporate entities were not fiduciaries, such a finding would still not provide sufficient grounds for the Court to dismiss them from this case. In their Complaint, Plaintiffs allege an alternative claim under section 502(a)(3) of ERISA, which permits holding a non-fiduciary party liable because the section "itself imposes certain duties ... [and] does not depend on whether ERISA's substantive provisions impose a specific duty on the party being sued." *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.,* 530 U.S. 238, 245 (2000). However, the success of Plaintiffs' alternative claim would be contingent on a finding that a non-fiduciary party " 'knowing[ly] participat[ed]' in a fiduciary's violation" of section 404. *See Harris Trust,* 530 U.S. at 247-49 (quoting 29 U.S.C. § 1132(l)(1)(B)). Since the Court finds, as a matter of law, that none of the Defendants breached their fiduciary duties to Plaintiffs under section 404, there necessarily could not be a knowing participation in a fiduciary's violation by any non-fiduciary party. Therefore, Plaintiffs' alternative ERISA claim under section 502(a)(3) will be dismissed.

Accordingly, the Court must decide whether Defendants breached their fiduciary duties to Plaintiffs under section 404 of ERISA by violating that section's prudence requirement. The Court finds that they did not. "[C]ourts measure section [404](a)(1)(B)'s 'prudence' requirement according to an objective standard, focusing on a fiduciary's conduct in arriving at an investment decision, not on its results, and asking whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment." *In re Unisys Sav. Plan Litig.,* 74 F.3d 420, 434 (3d Cir.1996) (citations omitted); *see also Di Felice v. U.S. Airways, Inc.,* 497 F.3d 410, 420 (4th Cir.2007) (stating that, in evaluating the prudence requirement, "a court must ask whether the fiduciary engaged in a reasoned decisionmaking process, consistent with that of a 'prudent man acting in a like capacity' " (quoting 29 U.S.C. § 1104(a)(1)(B))); *Olsen v. Hegarty,* 180 F.Supp.2d 552, 569 (D.N.J.2001) ("[T]his Court must examine and analyze the particular behavior and decision-making processes that account for these investments and determine whether these actions or omissions were so imprudent as to constitute a violation of ERISA § 404(a)(1)(B) [.]").

The Court will begin by analyzing the one-year warrants that were going to issue to holders of Employer Stock if THCR's second proposed restructuring plan went through. ERISA states, "A plan may not acquire or hold-(A) any employer security which is not a qualifying employer security...." 29 U.S.C. § 1107(a)(1)(A). ERISA goes on to provide that a "qualifying employer security" includes stock, a marketable obligation, and an interest in a publicly traded partnership. *Id. § 1107(d)*(5). The statute also includes a comprehensive definition of "marketable obligations ." *Id. § 1107(e)*. Applying these statutory definitions to warrants, the Department of Labor ("DOL") stated in an advisory opinion that "warrants to purchase employer securities generally would not constitute 'qualifying employer securities' under section 407(d)(5) of ERISA since they are neither stock nor marketable obligations." DOL, Advisory Opinion at n. 4, 94-31A ERISA Section 401(b), Sept. 9, 1994.

**\*6** Defendants argue that the DOL's opinion makes

clear that holding warrants in an ERISA plan is a statutorily prohibited transaction since they are not "qualifying employer securities." Therefore, according to Defendants, the Committee made a prudent decision by deciding to force the sale of all remaining Employer Stock in the Plan since warrants were going to be issued to holders of Employer Stock under the terms of THCR's second restructuring plan. Rather than challenging the fact that holding warrants in an ERISA plan is a prohibited transaction, Plaintiffs make two counter-arguments. First, they assert that the warrants had not been issued as of late October, 2004, and that the warrants would not be issued for several months given the various mechanisms of bankruptcy. In other words, at the time of the Committee's decision there was no statutory violation occurring that required the forced sale of the Plan's remaining Employer Stock. Second, Plaintiffs contend that the eventual issuance of warrants did not necessitate the forced sale because the Plan's trustee could have simply applied for a Prohibited Transaction Exemption from the DOL. According to Plaintiffs, such an exemption is "routinely granted" by the DOL.

The Court is not convinced by either of Plaintiffs' contentions. Plaintiffs' first argument is completely contrary to the purpose of ERISA's prudence requirement. ERISA requires fiduciaries to engage in a reasoned, prudent decision-making process when evaluating investment options to specifically *avoid* entering prohibited transactions. *See In re WorldCom, Inc. ERISA Litigation,* 354 F.Supp.2d 423, 445 (S.D.N.Y.2005) ("A [fiduciary] must discharge its own duties in conformity with the prudent man standard of care, and avoid prohibited transactions."). It is hardly prudent for a fiduciary to wait until an ERISA plan has actually engaged in a statutorily prohibited transaction before deciding whether to divest the plan of that investment or seek a DOL exemption. This is particularly true when the fiduciary knows well in advance that the prohibited transaction will likely occur. Yet, this is essentially what Plaintiffs argue that Defendants should have done.

Furthermore, Plaintiffs' second argument, that the Committee could have obtained a DOL exemption, introduces a level of speculation and risk that an objective prudent person standard cannot permit. By its very name, seeking a Prohibited Transaction Exemption indicates an applicant's personal knowledge that a particular transaction is generally not statutorily permitted-hence the need for an *exemption.* Regardless of how frequently the DOL grants exemptions, there cannot be a 100% guarantee that an exemption will be granted. Otherwise, there would be no need for the DOL to require such an application. It is certainly prudent for a fiduciary to consider that holding an investment may lead to future ownership of a prohibited investment in deciding whether to hold or divest that investment.

*7 Contrary to Plaintiffs' arguments that Defendants failed to act prudently, the Committee met just four days after the second proposed restructuring plan was announced to discuss the Plan's continued holding of Employer Stock. It had already been advised by its recently named trustee for 2005, Fidelity Investments, that holding warrants in the Plan could present a legal problem. *See supra* n. 13. In addition, at least one Committee member, Loretta Pickus, expressed concern about the future issuance of warrants. (Pls. Ex. 111 at 65:22-66:17). There is no question that the Committee met in a timely manner to address the management of the Plan, and specifically the Employer Stock, in light of THCR's latest proposed restructuring. All of the Committee members were present at the meeting, including the Committee's outside counsel, Mr. Chan, who was hired to advise them of their fiduciary duties. Given the Committee's knowledge of the legal problem associated with holding warrants in an ERISA Plan, and their timely meeting to discuss that problem, the Court cannot find that it was imprudent for the Committee to consider that factor when deciding whether to force the sale of the Employer Stock before THCR declared bankruptcy and the restructuring plan went forward.

While the warrant issue alone might be a sufficient basis for the Court to grant Defendants' motion for summary judgment, the record provides far more support for a finding that Defendants employed the appropriate methods to investigate and determine the merits of forcing the sale of Employer Stock. First, Defendants hired independent counsel to advise them of their fiduciary duties under ERISA. "Although plainly independent advice is not a 'whitewash,' ... it does provide 'evidence of a thorough investigation.' " *DiFelice,* 497 F.3d at 421 (citations omitted). The record makes clear that Mr. Chan was qualified to serve the Committee in this capacity, as he has experience "representing employers, including casinos, in establishing and operating 401(k) Plans," and "Pension Plans" are one of his specific areas of legal practice. (Moldovan Cert. II, Ex. 1). As evidence of the Committee's thorough investigation, Mr. Chan was present at all meetings involving discussions of the Plan and Employer Stock, he

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

reviewed and responded to memoranda and e-mails that were products of those meetings, and he actively participated in discussions about selling the Employer Stock.

Moreover, it is important to recall the language of ERISA section 404(a)(1)(B), which requires that a fiduciary prudently discharge his duties "under the circumstances then prevailing." From early August through late October of 2004, the period during which Plaintiffs allege that Defendants breached their fiduciary duties, it is more than fair to say that THCR faced an uncertain future. Over that three-month period, it is undisputed that: THCR faced significant financial difficulty, which resulted in a proposed prepackaged bankruptcy with DLJ; as a result of the announced bankruptcy, the NYSE de-listed THCR stock; following the de-listing, the stock price dropped as low as $0.19/share and only reached as high as $1.30/share for one day; the prepackaged bankruptcy with DLJ fell through and THCR had to develop a second restructuring plan to attempt to recapitalize the company; and THCR knew that it was going to default on a $90 million bond payment due in late November, 2004.

**\*8** Under the circumstances then prevailing, Defendants did not just stand idly by to see how things might turn out for THCR and the Employer Stock. Instead, they actively engaged in a reasoned decision-making process, which included: two formal meetings immediately following the NYSE de-listing and the second proposed restructuring, respectively, the purpose of which was to discuss the viability of the Plan's continued holding of Employer Stock; regular consultation with independent counsel, as well as present and future Plan trustees; and extensive e-mail correspondence and memoranda discussing the prudence of continuing to hold Employer Stock. The record makes clear that this process was approached by Defendants with the primary goal of acting "solely in the interest of the [Plan] participants and beneficiaries," as required by section 404 of ERISA. An objective evaluation of these circumstances, and Defendants' subsequent response, leads the Court to conclude that Defendants acted prudently.

At its core, Plaintiffs' assertion that Defendants breached their fiduciary duties amounts to nothing more than a claim based on perfect hindsight. THCR's second proposed restructuring proved to be relatively successful as of May, 2005, and Plaintiffs allege that the forced sale of Employer Stock in November, 2004, cost them $2.3 million. However, the law is clear--"[H]indsight cannot play a role in determining whether a fiduciary's actions were prudent." *In re Unisys Sav. Plan Litig.,* No. 91-3067, 1997 WL 732473, at \*23 (E.D.Pa. Nov. 24, 1997), aff'd, 173 F.3d 145 (3d Cir.1999). Between August and late October, 2004, the relevant time period for measuring Defendants' actions, the Plan was prepared to enter into a statutorily prohibited transaction involving the issuance of warrants, THCR faced an uncertain future, and the financial markets responded accordingly to that uncertainty. Faced with THCR's tenuous position, Defendants engaged in a reasoned decision-making process and employed appropriate investigative methods before deciding to force the sale of the Plan's remaining Employer Stock. This is precisely what the law requires. Therefore, the Court holds that on this record there is insufficient evidence for a finder of fact to conclude that Defendants breached their fiduciary duties of prudence under section 404 of ERISA. [FN18]

> FN18. Before concluding, it is worth noting the facts of this case as compared to other cases involving claims of breach of fiduciary duties, and, in particular, breach of ERISA's prudence requirement. Here, as described in detail above, THCR was facing an uncertain financial future and a near certain bankruptcy. In light of these circumstances, and after extensive consideration, Defendants elected to *force the sale* of all remaining Employer Stock in the 401(k) Plan. Yet in most cases involving similar claims and similar financial uncertainty, fiduciaries reached the opposite decision. In other words, despite their knowledge that a company was in financial trouble, thereby potentially leading to a decline in value of the company stock held in an ERISA plan, fiduciaries elected to *maintain the employer stock* in the plan. Then the financial difficulties caused the employer stock to lose significant value, often resulting in the ERISA plan losing significant value. Subsequently, a class of employees brought a claim of breach of ERISA fiduciary duties alleging, *inter alia,* that a prudent fiduciary would not have maintained the employer stock in the ERISA plan given the company's financial uncertainty; i.e., that a prudent fiduciary would have forced the sale of the employer stock.
> Under the latter set of circumstances, courts have generally scrutinized to a greater degree the prudence of decisions reached by

ERISA fiduciaries. *See, e.g., In re Schering-Plough Corp. ERISA Litig.,* 420 F.3d 231, 233, 241-42 (3d Cir.2005) (holding that complaint stated a claim under ERISA for breach of fiduciary duty of, among other things, prudence where Defendants continued to offer a company stock fund as a pension plan alternative when they knew that the stock price was unlawfully and artificially inflated); *Moench v. Robertson,* 62 F.3d 553, 572 (3d Cir.1995) (remanding case for further proceedings where, in the context of Employee Stock Ownership Plans ("ESOPs"), court found that a fiduciary's continuing investment in company stock despite substantial financial difficulties could be sufficient to overcome the presumption of prudence that applies to ESOPs); *DiFelice v. U.S. Airways, Inc.,* 397 F.Supp.2d 758, 773-74 (E.D.Va.2005) (holding that factors such as the possibility of U.S. Airways' bankruptcy throughout the class period, the company's known cash flow problems, and its unresolved long-term financial problems following an unsuccessful merger were "sufficient to allow a jury to question the prudence of the decision to continue to allow the Plan to invest in [U.S. Airways' parent company's] stock"). While this contrast of facts does not *necessarily* lead to the conclusion that the opposite decision reached by Defendants--to force the sale of Employer Stock given THCR's financial difficulties--is prudent as a matter of law, it does provide additional support for the Court's holding that Defendants did not violate ERISA's prudence requirement given the facts in the record.

### IV.

For the reasons set forth above, the Court will grant Defendants' motion for summary judgment dismissing Plaintiffs' claims. The Court will issue an appropriate Order.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** (Docket No. 35)

IRENAS, Senior District Judge:

This matter appeared before the Court on Defendants' Motion for Summary Judgment (Docket No. 35). The Court having considered the submissions of the parties, and for the reasons set forth in an opinion issued by this Court on even date herewith, and for good cause appearing;

**IT IS** on this 30th day of October, 2007,

**\*9 ORDERED THAT:**

(1) Defendants' Motion for Summary Judgment dismissing Plaintiffs' claims (Docket No. 35) is hereby **GRANTED.**

(2) The Clerk of Court is hereby directed to **CLOSE** this case.

--- F.Supp.2d ----, 2007 WL 3146371 (D.N.J.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.