UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                  )
LAURENCE W. BUNCH,                )
JERRY L. HOWARD, SR., DAVID MUELLER,  )
AND OTHER SIMILARLY SITUATED PERSONS,  )
                                  )
            Plaintiffs,           )
                                  )
            v.                    )   CIVIL ACTION
                                  )   NO. 04-11380-WGY
W.R. GRACE & CO.,                 )
STATE STREET BANK AND TRUST CO.,  )
ROBERT M. TAROLA, W.R. GRACE      )
INVESTMENT AND BENEFITS COMMITTEE,  )
JOHN F. AKERS, THOMAS A. VANDERSLICE,  )
RONALD C. CAMBRE, JOHN J. MURPHY,  )
FRED E. FESTA, PAUL J. NORRIS,    )
MARYE ANNE FOX, AND H. FURLONG BALDWIN,  )
                                  )
            Defendants.           )
                                  )
```

FINDINGS AND RULINGS

YOUNG, D.J.                                    January 30, 2008

## 1.    INTRODUCTION

These findings and rulings, entered pursuant to Federal Rule
of Civil Procedure 52(a), address the remaining claims of these
two consolidated cases, Evans v. Akers and Bunch v. W.R. Grace &
Co. The Court has dismissed Keri Evans, individually and on
behalf of a similarly situated class (collectively, "the Evans
plaintiffs") [Doc. No. 127], and has certified a class of
plaintiffs (collectively, "the Bunch plaintiffs") [Doc. No. 152].
The Court here considers cross motions for summary judgment
brought by the remaining parties: the Bunch plaintiffs [Doc. No.

176], State Street Bank and Trust Co. ("State Street") [Doc. No. 182], and Robert M. Tarola, W. R. Grace Investment and Benefits Committee, John F. Akers, Thomas A. Vanderslice, Ronald C. Cambre, John J. Murphy, Fred E. Festa, W.R. Grace & Co. ("Grace"), Paul J. Norris, Marye Anne Fox, and H. Furlong Baldwin (collectively, "the Grace defendants") [Doc. No. 177]. The parties have agreed to treat these motions as a case stated.

2.    **PROCEDURAL POSTURE**

The Evans plaintiffs filed a class action complaint against the Grace defendants on June 17, 2004 [Doc. No. 1]. On November 16, 2004, the Court administratively closed the case because of a pending bankruptcy action against Grace, In re W.R. Grace et al., in the U.S. Bankruptcy Court for the District of Delaware [Doc. No. 9]. The Court granted defendants' motion to re-open [Doc. No. 10] on February 10, 2005.

On October 26, 2004, the Bunch plaintiffs filed a class action against the Grace defendants in the Eastern District of Kentucky. On August 2, 2005, that case was transferred to the District of Massachusetts [05-CV-11602 Doc. No. 31]. The Grace defendants moved to consolidate both cases on August 5, 2005 [Doc. No. 26]. The Court consolidated the cases on August 22, 2005.

On October 24, 2005, the Evans plaintiffs filed a stipulation dismissing Fidelity from their action [Doc. No. 47]

and on December 19, 2005 filed an amended complaint [Doc. No. 53].  On January 24, 2006, State Street filed a motion to dismiss against both groups of plaintiffs [Doc. No. 56].  On the same day, Fidelity filed a motion to dismiss as to the Bunch plaintiffs [Doc. Nos. 58-59].  On February 21, 2006, the Evans plaintiffs stipulated to a dismissal without prejudice of State Street from their action [Doc. No. 67].  On February 22, 2006, the Bunch plaintiffs stipulated to a dismissal without prejudice of Fidelity from their case [Doc. No. 74].

On April 5, 2006, this Court denied the motion to dismiss as to the Bunch plaintiffs [Doc. No. 83], but on December 6, 2006, the Court dismissed the case brought by the Evans plaintiffs [Doc. No. 127].  On March 1, 2007, the Court certified a class of "all W.R. Grace Stock Plan participants and entities who owned shares of W.R. Grace's publicly traded common stock through the Grace Stock Plan at any time from April 14, 2003 through April 30, 2004." Bunch, et al. v. W.R. Grace & Co., et al., No. 04-11380-WGY, slip op. at 2 (D. Mass. Mar. 1, 2007).

Since then, all parties have filed summary judgment motions [Doc. Nos. 176-77, 182].  On September 27, 2007, the Court held a motion hearing during which the parties agreed to treat this matter as a case stated.  The Court held the case stated hearing held on November 11, 2007.

3.    **FEDERAL JURISDICTION**

The Court has jurisdiction pursuant to ERISA, 29 U.S.C. § 1132(e)(1).

**4.    FINDINGS OF FACT**

Since at least 1976, Grace has sponsored a defined contribution plan commonly known as a 401(k) plan ("the Plan"). Grace's State. Mat. Facts [Doc. No. 179] ¶ 1.  The Plan offered participants an opportunity to invest wages in an effort to prepare for retirement.  Bunch's Mem. Supp. Mot. Summ. J. [Doc. No. 180] at 5.  The Plan was administered by the Investment and Benefits Committee ("IBC"), which was composed of Grace officers. Grace's State. Mat. Facts ¶ 2.  The IBC was responsible for selecting and changing investment options offered under the Plan. Id. ¶ 3.  Each plan member, however, had the power to determine in which funds to invest at any given period.  Bunch's Mem. Supp. Mot. Summ. J. at 5.

The Plan offered participants a menu of twenty-eight different investment options including the Grace Stock Fund, which invested in Grace stock.  Id.  The Grace Stock Fund contributed just four percent of the Plan's assets, but participants owned 12% of Grace's outstanding shares.  Id. at 5-6.  On April, 21, 2003, the IBC modified the Plan to prevent any new contributions into the Grace Stock Fund or any transfers of money invested in other funds into the Grace Stock Fund.  Grace's State. Mat. Facts ¶ 6.

Brian McGowan, a member of the IBC, informed plan participants on March 17, 2003 that Grace fiduciaries were "seriously consider[ing]" naming an independent fiduciary to operate the Grace Stock Fund in order to avoid any potential conflicts of interest arising out of the reorganization plan in Grace's bankruptcy.  Id. ¶ 8.  Through an amendment to the Plan, Grace gave the IBC power to select an independent investment manager for the Grace Stock Fund, and the IBC subsequently selected State Street to serve as the independent fiduciary.  Id. ¶¶ 10, 20.

On December 15, 2003, State Street became the investment manager of the Grace Stock Fund.  Id. ¶ 24.  The goal of the delegation to State Street was to determine whether the fund's retention or sale of Grace stock was appropriate.  Id.  As noted in the investment guidelines included with its engagement letter, State Street could sell the Grace stock only if it determined that the continued holding of the stock was inconsistent with ERISA.  Id. ¶ 25.

State Street retained Duff & Phelps, LLC as its financial advisor and Goodwin Procter LLP as its legal advisor for the Grace engagement.  Id. ¶ 27.  After determining, in February 2004, that the Plan's inclusion of Grace stock was inconsistent with ERISA and, therefore, imprudent, State Street gave Grace notice of its decision to begin selling the Plan's Grace stock.

Id. ¶ 32.  It then notified participants of the decision and advised them that it would "continue to monitor the situation" and might decide to end the sales effort.  Id. ¶¶ 32, 35.  The fiduciaries at Grace did not ask State Street why it decided to sell, in part because Robert Tarola ("Tarola"), another IBC member, thought it was "off limits" for him to ask State Street about it.  Id. ¶¶ 36-37.

A month or two later, a third party inquired of State Street, seeking to buy the Plan's remaining Grace stock.  Id. ¶ 38.  On April 12, 2004, State Street sold a substantial block of the remaining Grace stock to D.E. Shaw at $3.50 per share, though the stock's market value at the time was $2.96.  Id. ¶ 41.  State Street notified the Plan members of the sale.  Id. ¶ 43.  D.E. Shaw purchased the remainder of the Grace shares on April 19, 2004.  Id. ¶ 41.

## 5.  DISCUSSION

### a.  Standard for analysis

The Court reviews this case as a case stated; therefore, the parties have stipulated to all material facts.  It remains for the Court to review the record, draw such inferences as are reasonable, apply governing law, and enter the appropriate judgment.  Stating the case is especially applicable when there are cross motions for summary judgment before the court.  The advantage of the case stated procedural device is that the Court

is relieved of drawing all inferences against each moving party, instead drawing such inferences as are reasonable to resolve the case. United Cos. Lending Corp. v. Sargeant, 20 F. Supp. 2d 192, 195 (D. Mass. 1998); see Continental Grain Co. v. Puerto Rico Maritime Shipping Auth., 972 F.2d 426, 429 n.7 (1st Cir. 1992) (noting that submission of matter to court as case stated increases judicial efficiency); Boston Five Cents Sav. Bank v. Sec'y of Dep't of Hous. & Urban Dev., 768 F.2d 5, 11-12 (1st Cir. 1985) (discussing case stated procedure).

### b.  Efficient Market

The Bunch plaintiffs are pursuing this case because State Street allegedly violated its fiduciary duties as investment manager by selling Grace common stock improperly. Bunch's Mem. Supp. Mot. Summ. J. at 1. The Bunch plaintiffs argue that: (1) Grace's stock traded in an efficient market and thus State Street ought have relied more heavily on the market prediction of the stock's value, (2) State Street should have retained Grace's stock absent evidence of an eminent collapse of the stock price, (3) State Street failed to consider Grace's solid potential in the future when making its decision to sell the Grace stock, and (4) factual issues remain to be decided with respect to the self-dealing claims against State Street. Id. at 11, 14, 16-17; Bunch's Opp. Defs.' Mot. Dismiss [Doc. No. 148] at 5.

7

The first step in Bunch's argument is that the efficient market theory establishes that the only action consistent with ERISA is retention of the Grace stock.  Bunch's Mem. Supp. Mot. Summ. J. at 11.  The defendants do not dispute that Grace's stock traded in an efficient market.  Defs.' Joint Resp. State. Mat. Facts [Doc. 194] at 12.  There being no dispute, the Court accepts that Grace's stock traded in an efficient market and, therefore, the market was the best indicator of the stock's *present* value.  According to the efficient market theory, a company's stock price is the best reflection of its potential, as well as its risks and liabilities.  In fact, courts have held that "a trustee is not imprudent to assume that a major stock market provides the best estimate of the value of the stocks traded on it that is available to him." Summers v. State St. Bank & Trust Co., 453 F.3d 404, 409 (7th Cir. 2006). Accordingly, the Bunch plaintiffs argue that because Grace common stock traded in an efficient market, putting a different price into the valuation process constituted "second guessing" the market.  Bunch's Mem. Supp. Mot. Summ. J. at 12.

Grace and State Street argue, however, that the current market price of Grace stock was only one of the factors they needed to consider to meet the prudent person standard of ERISA. State Street's Opp. Summ. J. [Doc. 192] at 10-11.  The problem with the Bunch plaintiffs' argument is that the efficient market

is not the standard by which State Street's actions are to be measured. ERISA does not require that a fiduciary maximize the value of investments provided to participants or follow a detailed step by step process to analyze investment options. <u>See</u> <u>Roth</u> v. <u>Sawyer-Cleator Lumber Co.</u>, 16 F.3d 915, 917-18 (8th Cir. 1994) (indicating prudent person standard not concerned with results). ERISA explicitly requires that a fiduciary act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). It also requires that "a fiduciary shall discharge his duties . . . solely in the interest of the participants and beneficiaries . . . ." 29 U.S.C. § 1104(a)(1). Thus, in common parlance, ERISA fiduciaries owe participants duties of prudence and loyalty. <u>See</u> <u>Moench</u> v. <u>Robertson</u>, 62 F.3d 553, 561 (3d Cir. 1995) (stating duties arising under ERISA). To enforce these duties, "the court focuses not only on the merits of [a] transaction, but also on the thoroughness of the investigation into the merits of [that] transaction." <u>Howard</u> v. <u>Shay</u>, 100 F.3d 1484, 1488 (9th Cir. 1996). Thus, the Bunch plaintiffs' contention that the market price of Grace stock sufficiently established its congruence with the duties ERISA imposes fails.

In fact, when other courts faced with allegations of a breach of fiduciary duty, they have looked at the totality of the circumstances involved in the particular transaction.  See, e.g., DiFelice v. U.S. Airways, Inc., 497 F.3d 410, 418 (4th Cir. 2007); Keach v. U.S. Trust Co., 419 F.3d 626, 637 (7th Cir. 2005); Rogers v. Baxter Int'l Inc., No. 04-C-6476, 2007 WL 2908829, at *2 (N.D. Ill. Oct. 4, 2007).  The DeFelice court stated:

> we examine the totality of the circumstances, including, but not limited to: the plan structure and aims, the disclosures made to participants regarding the general and specific risks associated with investment in company stock, and the nature and extent of challenges facing the company that would have an effect on stock price and viability.

DeFelice, 497 F.3d at 418.

The relevant query in this case is, therefore, not whether the market price was the best predictor of share value, but whether State Street took into account all relevant information in performing its fiduciary duty under ERISA.

This factual inquiry begins with the Bunch plaintiffs' initial allegation that State Street relied too heavily on the Duff & Phelps financial reports in making the divestment decision.  See Bunch's Opp. Defs.' Mot. Summ. J. [Doc. No. 191] at 9.  State Street, however, did consider various factors including: the market price of the stock, information about the plan, the bankruptcy proceeding, the financial outlook of the

company, and the asbestos liability.  State Street's State. Mat.
Facts [Doc. No. 183] ¶ 45.  Also State Street's Fiduciary
Committee met regularly and monitored the trend of Grace stock at
each of these meetings.  See id. ¶¶ 44-62.  The Bunch plaintiffs
indicate that a factor that State Street may have overlooked when
performing its evaluation of the Grace stock was the availability
of other less risky investment options that could provide
diversification and compensate for the high risk of keeping the
Grace Stock Fund.  See Bunch's Mem. Supp. Mot. Summ. J. at 16.

    This indentified omission fails to persuade the Court that
State Street is liable under ERISA for two reasons.  First, Grace
engaged State Street and charged it with the single goal of
determining the appropriateness of the retention of Grace stock.
See Grace's State. Mat. Facts ¶ 24.  Thus, State Street had no
discretion to make decisions about the remaining investment
options still available for the plan.  Second, the Bunch
plaintiffs' argument fails because "[u]nder ERISA, the prudence
of investments or classes of investments offered by a plan must
be judged individually."  Langbecker v. Elect. Data Sys. Corp.,
476 F.3d 299, 309 n.18 (5th Cir. 2007); see also In re Unisys
Sav. Plan Litig., 74 F.3d 420, 438-41 (3d Cir. 1996).  That is, a
fiduciary initially must determine and continue to monitor the
prudence of each investment option available to plan
participants.  Here "the relevant 'portfolio' that must be

11

prudent is *each* available Fund considered on its own, including the Company Fund, not the full menu of Plan funds." DiFelice, 497 F.3d at 423 (emphasis in original).  As the DiFelice court explained:

> this is so because a fiduciary cannot free himself from his duty to act as a prudent man simply by arguing that other funds, which individuals may or *may not* elect to combine with a company stock fund, could theoretically, in combination, create a prudent portfolio.  To adopt the alternative view would mean that any single-stock fund, in which that stock existed in a state short of certain cancellation without compensation, would be prudent if offered alongside other, diversified Funds.

Id. at 423-24 (emphasis in original).

### c.  Retention of Grace's stock was not prudent

The Bunch plaintiffs next argue that the law presumes retention of company stock is consistent with ERISA.  Bunch's Mem. Supp. Mot. Summ. J. at 13.  Numerous courts have acknowledged this presumption.  See Kuper v. Iovenko, 66 F.3d 1447, 1459 (6th Cir. 1995) (noting that in a review of the fiduciary's decision to invest in an employer's securities, there is a presumption that the fiduciary's decision to remain invested was reasonable); In re Polaroid ERISA Litig., 362 F. Supp. 2d 461, 475 (S.D.N.Y. 2005) (noting a presumption of prudence in the investment of company stock).  The Bunch plaintiffs recognize that most, if not all, of the authority that has addressed the presumption did so in cases where the price of the company stock fell ("stock drop" cases) and plaintiffs alleged that the ERISA

12

fiduciaries should have sold the stock.  The logic behind the
presumption, however, applies equally in this case where the
Bunch plaintiffs allege that the fiduciaries should have retained
the company stock.

The presumption of prudence is, however, destroyed by
evidence showing "(1) that there was a 'precipitous decline' in
the price of the stock and (2) that the fiduciary had 'knowledge
of its impending collapse.'"  In re Polaroid ERISA Litigation,
362 F. Supp. 2d at 475, (quoting Moench, 62 F.3d at 572).  In
this case, it is the second evidentiary showing that persuades
the Court.  Despite the allegations of the Bunch plaintiffs, the
Court nevertheless concludes that State Street's analysis showed
a potential for loss of value of the Grace stock comparable to
knowledge of an impeding collapse.

The Bunch plaintiffs argue that during the class period
Grace stock was not falling, the company's financial results were
positive, and Grace "publicly announced that it expected to
survive the reorganization intact." Bunch's Mem. Supp. Mot.
Summ. J. at 14.  These facts only gain special emphasis from the
fact that the Grace stock actually rose after divestment.  This,
however, is viewed with hindsight.  At the time State Street
performed its valuation, it had only limited information to
consider.  It took into account several factors such as the
current stock price, the Grace bankruptcy, the financial

13

performance and outlook of the company and its industry sector, Grace's potential asbestos liability and SEC requirements.  <u>See</u> Defs.' Joint Resp. State. Mat. Facts at 13-14.[1]

   The Bunch plaintiffs point out, in response, that during the class period the market price of Grace remained steady and healthy.  Bunch's Opp. Defs.' Mot. Summ. J. at 3.  During State Street's service, the price of Grace's stock never fell below $2.54 per share, and subsequent to Grace's bankruptcy, the price of the company's common stock increased by 16.1%.  <u>Id.</u>  Since this market price reflects the market's reaction to the company's risks and liabilities, the Bunch plaintiffs argue that State Street ought never have reached the conclusion that any lesser value was appropriate for the company.  <u>Id.</u> at 8-9.  As the Court

---

[1]As the defendants noted:
> Based on the information provided at the time, State Street concluded that (i) the stock price was somewhat above the appropriate valuation range as determined by Duff & Phelps; (ii) both the current stock price and Duff & Phelps' valuation range were driven to a significant extent by several factors that were highly speculative at the time (factors pertaining to Grace's unknown contingent asbestos liabilities); and (iii) that the outcome of these factors were necessarily subject to a significant degree of uncertainty. Adverse outcomes with respect to one or more of those contingencies would likely result in a very substantial decline in the value of Grace stock, perhaps to zero, and, if that occurred, given the size of the stock fund's holdings of Grace stock, the Plan would likely not be able to react quickly to any change in circumstances.

Defs.' Joint Resp. State. Mat. Facts at 13-14.

has noted, State Street took into consideration the totality of circumstances surrounding the Grace stock in order to make its divestment decision. As mentioned, State Street looked at different factors, hired a financial expert as well as legal counsel, and after performing a thorough analysis of the different factors, made its decision to divest the Plan of Grace stock. The fact that the final valuation that State Street gave the Grace stock was *lower* than the market price at the time only enhances State Street's position that it was important to sell before the price dropped. This is not a case where the Bunch plaintiffs can argue that they were tricked into losing huge amounts of money as a result of an alleged breach of fiduciary duty. In this case all the shares in question were sold at a price above the then-existing market price. The most the Bunch plaintiffs can argue, therefore, is that they could have earned *more* money had State Street decided not to sell.

Other courts have held that "the prudent person standard is not concerned with results; rather it is a test of how the fiduciary acted viewed from the perspective of the time of the challenged decision." <u>DiFelice</u>, 497 F.3d at 424. Accordingly, as mentioned above, the test is not whether State Street got the best possible return on the investment, but whether it considered all relevant factors in deciding the prudence of divesting the investment. Despite the Bunch plaintiffs' effort to argue

otherwise, the record is clear that State Street's thorough analysis led it to think that keeping the Grace stock was imprudent for the Plan.

### d.  State Street's alleged failure to consider Grace's solid potential

The Bunch plaintiffs argue that during the relevant period, Grace remained a vibrant company, showing positive results, and that State Street failed to consider important facts and circumstances when it decided to eliminate the Grace Stock Fund from the Plan.  In support of this argument, the Bunch plaintiffs introduce into evidence letters (written while State Street was a fiduciary) in which Grace's officers continuously represented that it would survive the bankruptcy reorganization and that shareholders would likely receive substantial equity.  <u>See</u> Bunch's Mem. Supp. Mot. Summ. J. at 3 (citing letters and exhibits).  As State Street correctly argued, however, the relevant question was not whether Grace as a company would retain value, but rather whether Grace common stock would survive bankruptcy in a sufficiently undiluted form to make it prudent for the Plan to retain it.  In fact, State Street points out that Grace's management never explicitly represented with any certainty any positive prospect for Grace common stock.  State Street's Opp. Summ. J. at 5.  State Street "repeatedly distinguished between the ongoing business prospects for Grace

16

(positive) and the prospects for the Grace stock (uncertain)."
Id. at 8.

It is irrelevant that Grace was doing well as a company and
that its officers were saying so to the public.  As the
Department of Labor regulations make clear, ERISA's prudence
requirements "are satisfied if the fiduciary: (i) [h]as given
appropriate consideration to those facts and circumstances that,
given the scope of such fiduciary's investment duties, the
fiduciary knows or should know are relevant to the particular
investment or investment course of action involved," and "(ii)
[h]as acted accordingly."  29 C.F.R. §2550.404a-1(b)(1).  Since
this Court is satisfied that State Street took the important
factors into account when it made its decision, the Bunch
plaintiffs' third argument also fails.

    **e.  Self-dealing**

The Bunch plaintiffs alleged that during the months that
State Street was manager of the Grace Stock Fund, "it also was
managing a number of index funds and other investment vehicles
that owned Grace common stock."  Bunch's Opp. Defs.' Mot. Summ.
J. at 13.

In order to prevail upon a claim for breach of duty of
loyalty under ERISA section 403(c)(1), 29 U.S.C. § 1103(c)(1), or
404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), the Bunch plaintiffs
must prove that State Street, while functioning as a fiduciary

17

with respect to the Plan, failed to hold plan assets "for the exclusive purpose of providing benefits to participants in the plan and their beneficiaries," 29 U.S.C. § 1103(c)(1), or failed to "discharge [its] duty with respect to the plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A).

Under ERISA, it is well-established that a fiduciary does not breach its duty of loyalty solely by conducting other activities that relate to or impact the Plan. See Hughes Aircraft Co. v. Stanley Jacobson, 525 U.S. 432, 443-46 (1999) (employer's decision to amend pension plan does not implicate fiduciary duty, which is limited to administering the plan's assets, even though an "incidental benefit" may inure to employer from amendment). That State Street carried out its regular business activity by continuing to manage investments for other clients, including investments in Grace stock, while also serving as a fiduciary to the Plan does not, in and of itself, breach its fiduciary duty under ERISA to the Plan beneficiaries. The Bunch plaintiffs entirely fail to identify what "interest" or "benefit" State Street allegedly served or obtained at the expense of Plan participants when it liquidated the Plan's Grace stock. The alleged purchase by other funds managed by State Street affiliates of small amounts of Grace stock on the open market

18

(for the market price) confers no special "benefit" that belonged to the Plan.  Nor does it evidence any "conflict of interest." Absent any specific proof that State Street managed plan assets for a purpose other than the benefit of the plan and its participants, this claim must be denied.  See Alves v. Harvard Pilgrim Health Care, Inc., 204 F. Supp. 2d 198, 214 (D. Mass. 2002)(Saris, J), aff'd 316 F.3d 290 (1st Cir. 2003) (rejecting an ERISA self-dealing claim because there was no evidence that any defendant sought personal gain or advantage from its use of plan assets).

        f.    W.R. Grace

        Since this Court has found that State Street did not commit a breach of its fiduciary duties, Grace prevails as well since the claims against it are derivative of the claims against State Street.  If State Street did not commit a breach, then Grace did not fail in the discharge of its duty to select and monitor State Street.  See In re Coca-Cola Enter., Inc. ERISA Litig., No. 1:06-CV-0953 (TWT), 2007 WL 1810211, at *16 (N.D. Ga. June 20, 2007) (duty to monitor and co-fiduciary liability claims can lie against an appointing fiduciary only when there is a primary breach of fiduciary duties); In re Syncor ERISA Litig., 410 F. Supp. 2d 904, 913 (C.D. Cal. 2006) (duty to monitor claims are derivative of prudence claim, therefore, failed prudence claim result in failed duty to monitor claim); In re Sprint Corp. ERISA

Litig., No. 03-2202-JWL, 2004 WL 2182186, at *4 (D. Kan. Sept. 24, 2004) (co-fiduciary liability may only lie under Section 405 of ERISA if another fiduciary committed a breach).

**3.    CONCLUSION**

For the reasons stated above, this Court holds that State Street and Grace did not breach their fiduciary duties when making the decision to divest the Plan of the Grace Stock Fund. Judgment shall enter for the Defendants.

So ordered.

/s/ William G. Young
_____
DISTRICT JUDGE
WILLIAM G. YOUNG