# United States Court of Appeals
## For the First Circuit

No. 07-1140

KERI EVANS, on behalf of herself and a class of all others
similarly situated; TIMOTHY WHIPPS, on behalf of himself and a
class of all others similarly situated,

Plaintiffs, Appellants,

LAWRENCE BUNCH, individually and on behalf of all others
similarly situated and on behalf of the W.R. Grace & Co. Employee
Savings and Investment Plan and the Grace Stock Fund; JERRY L.
HOWARD, SR.; DAVID MUELLER, individually and on behalf of all
others similarly situated, and on behalf of the W.R. Grace & Co.
Employee Savings and Investment Plan and the Grace Stock Fund,

Plaintiffs,

v.

JOHN F. AKERS; RONALD C. CAMBRE; MARYE ANNE FOX; JOHN J. MURPHY;
PAUL J. NORRIS; THOMAS A. VANDERSLICE; H. FURLONG BALDWIN;
INVESTMENTS AND BENEFITS COMMITTEE; ADMINISTRATIVE COMMITTEE;
BRENDA GOTTLIEB; W. BRIAN MCGOWAN; MICHAEL PIERGROSSI; ROBERT M.
TAROLA; EILEEN WALSH; DAVID NAKASHIGE; ELYSE NAPOLI; MARTIN
HUNTER; REN LAPADARIO,

Defendants, Appellees,

FIDELITY MANAGEMENT TRUST COMPANY; STATE STREET BANK AND TRUST
COMPANY; UNKNOWN FIDUCIARY DEFENDANTS 1-100; STATE STREET GLOBAL
ADVISORS; W.R. GRACE & CO.; W.R. GRACE INVESTMENT AND BENEFITS
COMMITTEE; FRED E. FESTA,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Torruella, <u>Circuit Judge</u>,
Wallace,* <u>Senior Circuit Judge</u>,
and Lipez, <u>Circuit Judge</u>.

Edward W. Coilko, with whom Joseph H. Meltzer, Katherine B. Bornstein, Schiffrin Barroway Topaz & Kessler, LLP, David Pastor, and Gilman and Pastor, LLP were on brief, for appellants.

Carol Connor Cohen, with whom Nancy S. Heermans, Caroline Turner English, Valerie N. Webb, and Arent Fox LLP were on brief, for appellees.

Jonathan Hammer, with whom Elizabeth Hopkins, Counsel for Appellate and Special Litigation, Jonathan L. Snare, Acting Solicitor of Labor, Timothy D. Hauser, Associate Solicitor, and Nathaniel I. Spiller, Counsel for Appellate and Special Litigation, were on brief, for Secretary of Labor Elaine L. Chao, amicus curiae.

July 18, 2008

---

*Of the Ninth Circuit, sitting by designation.

**LIPEZ, Circuit Judge.**  This case requires us to decide whether former employees who have received lump-sum distributions of the entire balance in their employer's defined contribution plan may sue on behalf of the plan to recover for alleged fiduciary breaches that diminished the value of their accounts.  The question turns on whether they are "participants" within the relevant statutory definition in the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1002(7), 1132.  After careful consideration, we hold that former employees who allege that fiduciary breaches reduced their lump-sum distribution from a defined contribution plan have standing to sue as "participants" under the ERISA statute.

## I.

Plaintiffs Keri Evans and Timothy Whipps are former employees of W.R. Grace & Co. ("Grace"), a large manufacturing company.  While employed at Grace, the plaintiffs participated in the W.R. Grace & Co. Savings and Investment Plan (the "Plan"), a "defined contribution" plan under ERISA § 3(34), 29 U.S.C. § 1002(34).  Evans and Whipps, who terminated their employment with Grace on August 30, 2002 and April 27, 2001, respectively, received lump-sum distributions of the balance of their Plan accounts shortly after leaving the company.  They do not intend to return to employment at Grace.

-2-

A defined contribution plan provides an individual account for each participant into which the participant and the employer make contributions. Upon retirement, the participant's pension benefit under this type of plan is the balance of the individual account; the amount of the benefit is directly dependent on the performance of the investments made with the contributions. See 29 U.S.C. § 1002(34). In this case, the Plan offered, as one choice on the menu of investment options available to Plan participants, the Grace Common Stock Fund (the "Fund"), a fund invested primarily in Grace stock. Additionally, Grace automatically invested all employer contributions in the Fund, and employees were not permitted to move those contributions out of Grace stock and into other investments until they reached age fifty.

On January 1, 2001, with Grace stock becoming an increasingly risky investment due to mounting financial pressures from asbestos-related product-liability litigation, the Plan stopped investing employer contributions in the Fund and began allocating them instead in accordance with participants' investment elections. At this time, the Plan also permitted, but did not advise or require, participants to move past matching contributions out of the Fund and into other Plan investments. Despite these changes in the employer contribution policy, the Fund remained open to participants as one of the investment options for their own

-3-

contributions under the Plan. Grace and its subsidiaries filed for bankruptcy protection on April 2, 2001.

On April 17, 2003, the Fund ceased accepting any new contributions, but past contributions were not transferred to other funds unless a participant expressly changed her investment options. Then, on February 27, 2004, Plan fiduciaries announced their conclusion that investment in Grace stock was "clearly imprudent." The Fund's investment manager, State Street Bank & Trust Company, subsequently embarked on a program to sell the Grace stock and dissolve the Fund. The Fund ceased to exist on April 19, 2004.

The plaintiffs filed a putative class action suit (the "Evans action") against various Plan fiduciaries, alleging that they "breached their fiduciary duties by (1) continuing to offer Grace common stock as a Plan investment option for participant contributions; (2) utilizing Grace securities for employer contributions to the Plan; and (3) maintaining the Plan's pre-existing heavy investment in Grace securities when the stock was no longer a prudent investment." Evans v. Akers, 466 F. Supp. 2d 371, 374 (D. Mass. 2006). The plaintiffs also alleged that other fiduciaries had breached their duty to monitor their co-fiduciaries and advise Plan participants. Id. They brought these claims on behalf of the Plan to recover alleged losses to the Plan pursuant to ERISA § 502(a)(2), which permits the Secretary of Labor,

-4-

participants, beneficiaries, or fiduciaries to file suit to hold fiduciaries personally liable for fiduciary breaches. 29 U.S.C. §§ 1109, 1132(a)(2). The plaintiffs' proposed class included all participants and beneficiaries of the Plan between July 1, 1999 and April 19, 2004.

Another suit challenging the actions of Plan fiduciaries, which originally had been filed in Kentucky, was later consolidated with the Evans action. That suit, led by plaintiff Lawrence Bunch (the "Bunch action"), alleged fiduciary breaches against a different set of fiduciaries and asserted a diametrically opposed theory of liability. It claimed that the Plan fiduciaries had imprudently divested the Plan of its holdings in Grace common stock despite the company's solid potential to emerge from bankruptcy with substantial value for shareholders. Following the transfer of the Bunch action to Massachusetts, the dockets for the two cases were combined and the two sets of plaintiffs worked together on various pretrial discovery and scheduling matters in the district court. However, the actions otherwise proceeded separately, maintaining separate complaints and seeking certification of distinct classes.

On December 6, 2006, the district court denied the motion by Evans and Whipps seeking class certification for their claims and dismissed the Evans action, concluding that the plaintiffs lacked standing and that, as a result, the court lacked subject

-5-

matter jurisdiction over the suit.  In the district court's view, Evans and Whipps were asserting claims for compensatory damages, rather than for additional Plan benefits, and thus had failed to meet the statutory definition of "participants" entitled to bring suit.  With the aid of recent decisions by three of our sister circuits[1] - issued after the district court had dismissed the Evans action - and helpful briefing by the Secretary of Labor as amicus curiae,[2] we conclude that Evans and Whipps are "participants" with standing to sue and reverse the dismissal.

## II.

As a threshold matter, the appellees argue that the Evans action was consolidated with the Bunch action "for all purposes," and that, as a result, the district court's dismissal order is not a final judgment over which we have jurisdiction pursuant to 28 U.S.C. § 1291.  See Global Naps, Inc. v. Verizon New England, Inc., 396 F.3d 16, 22 (1st Cir. 2005) ("[D]isposition of one case in a consolidated action is a final and appealable judgment unless the cases were consolidated 'for all purposes.'").  This argument has no merit.  We see no evidence in the record that the Evans and

[1]See Bridges v. American Elec. Power Co., Inc., 498 F.3d 442 (6th Cir. 2007); Graden v. Conexant Sys. Inc., 496 F.3d 291 (3d Cir. 2007); Harzewski v. Guidant Corp., 489 F.3d 799 (7th Cir. 2007).

[2]The parties dispute whether the Secretary's position is entitled to deference.  We do not have to resolve that issue for the purpose of deciding this case.  We simply treat the Secretary's brief as another source of helpful analysis.

Bunch actions were consolidated "for all purposes." Moreover, given that the plaintiffs in each action were pursuing conflicting theories of fiduciary liability, we think it far more plausible that the cases were consolidated for purposes of judicial efficiency in pretrial matters and were not intended to be consolidated for "all purposes." Indeed, judicial efficiency and economy was the stated purpose of the defendants' request for consolidation. Thus, the dismissal of the Evans action is a final judgment from which the plaintiffs are entitled to appeal.[3]

## III.

We review de novo the district court's dismissal for lack of subject matter jurisdiction, accepting the plaintiffs' well-pleaded facts as true and making all reasonable inferences on the plaintiffs' behalf. Dominion Energy Brayton Point, LLC v. Johnson, 443 F.3d 12, 16 (1st Cir. 2006). As in any case of statutory construction, we begin our analysis with the plain language of the statute. Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 438 (1999).

Evans and Whipps brought suit under § 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), which provides that "[a] civil action may

---

[3]Relatedly, we note that the Bunch action was certified as a class action on March 1, 2007. The parties filed cross-motions for summary judgment. Following a hearing, judgment was entered in favor of the defendants in the Bunch action on January 30, 2008. A separate appeal of that disposition is pending. See Bunch, et al. v. W.R. Grace & Co., No. 08-1406, docketed on April 2, 2008.

be brought by the Secretary [of Labor], or by a participant,
beneficiary or fiduciary for appropriate relief under section 1109
of this title." Section 1109, in turn, specifies the following
remedies for breaches of the fiduciaries' duties:

> [(1)] mak[ing] good to such plan any losses to
> the plan resulting from each such breach, . .
> . [(2)] . . . restor[ing] to such plan any
> profits of such fiduciary which have been made
> through use of assets of the plan by the
> fiduciary, and [(3)] . . . such other
> equitable or remedial relief as the court may
> deem appropriate, including removal of such
> fiduciary.

29 U.S.C. § 1109(a); see also Graden v. Conexant Sys. Inc., 496 F.3d
291, 295 (3d Cir. 2007).

The appellants contend that they are entitled to bring
suit on behalf of the Plan[4] because they are "participants" within
the statutory definition. Section 3(7) of ERISA, 29 U.S.C. §
1002(7), defines "participant" to include "any . . . former
employee . . . who is or may become eligible to receive a benefit
of any type from an employee benefit plan." The Supreme Court has
interpreted this provision to include a former employee who has "a
colorable claim that . . . she will prevail in a suit for
benefits." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117

---

[4]Suits brought pursuant to this provision are derivative in
nature; those who bring suit do so on behalf of the plan and the
plan takes legal title to any recovery. Mass. Mut. Life Ins. Co.
v. Russell, 473 U.S. 134, 141 (1985). The recovery then inures to
the benefit of the plan's participants and beneficiaries. Graden,
496 F.3d at 295.

(1989); see also Crawford v. Lamantia, 34 F.3d 28, 32 (1st Cir. 1994) (applying Firestone analysis to determine standing of former employee to sue under ERISA). The appellees concede that this is the applicable definition of "participant," but they contend that the appellants have not stated a claim for "benefits." Rather, they maintain that the relief sought is "damages" and that plaintiffs thus fall outside the scope of the Firestone definition of participant.

The Third, Sixth, and Seventh Circuits have each recently rejected this very argument. See Bridges v. Am. Elec. Power Co., Inc., 498 F.3d 442, 445 (6th Cir. 2007) (adopting the Seventh Circuit's analysis); Graden, 496 F.3d at 299 ("[W]e cannot endorse the distinction . . . between benefits and damages."); Harzewski v. Guidant Corp., 489 F.3d 799, 804, 807 (7th Cir. 2007) (rejecting view of courts that have "strain[ed] to distinguish between 'benefits' and 'damages'"). We fully agree with their analyses and rely on their thoughtful discussions in explaining our own reasoning.

In this context, the term "benefits" denotes "the money to which a person is entitled under an ERISA plan." Graden, 496 F.3d at 297 (quoting a dictionary definition of "benefit" as a "payment or service provided for under an annuity, pension plan, or insurance policy."). A defined contribution plan "promises the participant the value of an individual account at retirement."

LaRue v. DeWolff, Boberg & Assocs., Inc., 128 S. Ct. 1020, 1023 n.1 (2008). This value is a function of the employee's contributions, plus vested employer matching contributions and investment gains, minus investment losses and any allocable expenses. 29 U.S.C. § 1002(34); see also Graden, 496 F.3d at 297; Harzewski, 489 F.3d at 804-05. Under ERISA, a participant is also promised that the funds in her individual account will be managed prudently by the plan fiduciary. 29 U.S.C. § 1104; see also Graden, 496 F.3d at 297. Consequently, the full "benefit" to which the participant is entitled by a defined contribution plan is "the value of [her] account unencumbered by any fiduciary impropriety." Graden, 496 F.3d at 297. Put differently, the "benefit" in a defined contribution plan is equal to "whatever is in the retirement account when the employee retires or whatever would have been there had the plan honored the employee's entitlement, which includes an entitlement to prudent management." Harzewski, 489 F.3d at 804-05 (emphasis in original).

Plaintiffs' claim fits within this understanding of the statutory language. They were participants in the Plan during the class period and portions of their individual accounts were invested in Grace stock. They allege that fiduciary breaches by the defendants diminished the value of their accounts, such that they received less money on the day they cashed out of the Plan than they would have received in the absence of any fiduciary

-10-

breach.  See Graden, 496 F.3d at 300 ("If the plaintiff colorably claims that under the plan and ERISA he was entitled to more than he received on the day he cashed out, then he presses a claim for vested benefits and must be accorded participant standing.").  In other words, plaintiffs seek only the amount that should have been in their accounts but for the defendants' "fiduciary impropriety." Thus, basic statutory construction supports the plaintiffs' argument that their "benefits" are at stake in this suit. Moreover, drawing all inferences in the plaintiffs' favor, as is appropriate at this stage in the proceedings, the claim meets the Firestone requirement that it be "colorable."

Our conclusion that the appellants have standing to sue as "participants" under ERISA § 502(a)(2) is also supported by our previous cases considering ERISA standing.  In Vartanian v. Monsanto Co., 14 F.3d 697 (1st Cir. 1994), we observed that "Congress intended the federal courts to construe [ERISA's] jurisdictional requirements broadly in order to facilitate enforcement of its remedial provisions." Id. at 702.  That case involved a former employee who was a participant in a defined benefit plan.[5]  Before retiring, the employee asked his employer

_____

[5]Under a defined benefit plan, participants are typically promised a fixed level of retirement income, computed on the basis of a formula contained in the plan documents.  See 29 U.S.C. § 1002(35). The formula generally accounts for an employee's years of service and compensation level at retirement.  Graden, 496 F.3d at 297 n.10.  In contrast with a defined contribution plan, where the amount of benefits is directly related to the investment income

-11-

whether the plan would be altered to provide more generous benefits in the near future. He explained that he would delay his retirement if the plan was going to be changed. The employer assured him that no changes were likely. The employee retired, and the plan was changed less than two months later. We held the administrators of the plan had a fiduciary duty not to mislead Vartanian and that, as a result, his claims fell "squarely within the 'zone of interests' ERISA was designed to protect." Id. at 702. We reasoned that "where the employee shows that in the absence of the employer's breach of fiduciary duty he would have been entitled to greater benefits than those which he received, then his receipt of payment cannot be used to deprive him of 'participant' status and hence, standing to sue under ERISA." Id. at 703.

Seven months after our decision in Vartanian we considered a claim brought by a former employee who had participated in a defined contribution plan. Crawford, 34 F.3d at 30. In Crawford, the plaintiff sued plan fiduciaries for alleged misconduct in a complicated loan transaction that was part of a strategy to take the employer private. We concluded that even if

_____

earned in an individual account, the investment performance of the portfolio held by a defined benefit plan has no effect on the level of benefits to which a participant is entitled, provided that the plan remains solvent. See LaRue, 128 S. Ct. at 1025 ("Misconduct by the administrators of a defined benefit plan will not affect an individual's entitlement to a defined benefit unless it creates or enhances the risk of default by the entire plan.").

the shares purchased by the plan with loaned funds were overvalued, as the plaintiff alleged, the result of proper valuation would have been a smaller loan, not a distribution of excess cash or additional shares to the accounts of participants. Accordingly, we analyzed the plaintiff's claim under Firestone and concluded that he had "failed to show that defendants' alleged breach of fiduciary duty had a direct and inevitable effect on his benefits." Id. at 33 (emphasis in original). Thus, we concluded that the plaintiff did not have standing.

In reviewing these precedents, the district court agreed with the defendants' contention that Crawford meant that Vartanian should be read narrowly because "it create[d] a unique exception to the Firestone definition of participant exclusively in cases where the employee would still be part of the plan (and thus entitled to higher benefit levels) but for the employer's malfeasance." Evans, 466 F. Supp. 2d at 376. The district court then determined that "there is no evidence suggesting that the Plaintiffs' cessation of employment was causally connected to the defendant's alleged misconduct" and that, as a result, the plaintiffs did not fit within the "Firestone exception" created by Vartanian. Id. With no "exception" to Firestone available, the district court proceeded to analyze whether the plaintiffs could, under Firestone, "assert a colorable claim to vested benefits." Id. The district court concluded that the plaintiffs had not done so because they had

-13-

asserted "a claim not for benefits but for damages to the Plan." Id. Accordingly, the district court dismissed the suit for lack of standing.

The defendants assert numerous reasons for embracing this reasoning of the district court. We find none of them persuasive. First, they argue that we should draw a bright line between suits brought under ERISA § 502(a)(1)(B), which permits a participant to bring suit "to recover benefits due to him under the terms of his plan," 29 U.S.C. § 1132(a)(1)(B), and those brought under § 502(a)(2), the provision relied upon here, which enables participants to sue on behalf of the plan to recover for fiduciary breaches. Appellees contend that the former provision authorizes a "suit for benefits" while the latter is an "action for damages." This dichotomy is untenable. The chief difference between an action brought under § 502(a)(1)(B) and § 502(a)(2) is the proper defendant, not the proper plaintiff. Graden, 496 F.3d at 301. Whereas a suit "to recover benefits" under § 502(a)(1)(B) is brought against the plan itself (or the plan administrators in their official capacities), a suit brought under § 502(a)(2) seeks to hold the plan's fiduciaries liable in their personal capacities for breaches of their duty to the plan. Id.

In the context of a defined contribution plan, where all of the plan's money is allocable to plan participants' individual

-14-

accounts, a plaintiff has good reason to bring his claims for additional benefits as § 502(a)(2) claims:

> Using a § [502](a)(1)(B) suit to force the plan to use money already allocated to others' accounts to make good on [the plaintiff's] loss would present a host of difficulties with which few sensible plaintiffs would want to contend. Indeed, it may be that ERISA's fiduciary obligations prevent plans from paying judgments out of funds allocable to other participants, in which case the plan, <u>though liable</u>, would be judgment proof. Thus, for most plaintiffs the sensible route is to use § [502](a)(2) to get the money in the first instance from a solvent party liable to make good on the loss, not from the plan itself.

<u>Graden</u>, 496 F.3d at 301. Bringing the suit under § 502(a)(2) does not "change the underlying nature" of the plaintiffs' claim as one for benefits. It simply provides an avenue for restoring those benefits to the plan coffers so that they may then be allocated to those who were harmed by the fiduciary breach. <u>Id.</u>; <u>see also</u> <u>LaRue</u>, 128 S. Ct. at 1026 (holding that § 502(a)(2) "authorize[s] recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account").

We thus see no merit in appellee's strained distinction between suits for "benefits" and those for "money damages."  <u>But see Sommers Drug Stores Co. Employee Profit Sharing Trust</u> v. <u>Corrigan</u>, 883 F.2d 345 (5th Cir. 1989) (drawing a distinction between "benefits" and "damages" and classifying former employees' claims as falling "between these poles"). Indeed, any claim for

-15-

breach of fiduciary duty is to some extent a claim for damages arising from the breach. Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 210 (2002) ("'Almost invariably . . . suits seeking . . . to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty.'" (quoting Bowen v. Massachusetts, 487 U.S. 879, 918-919 (1988) (Scalia, J., dissenting))). Whether or not they always overlap, the concepts of "benefits" and "damages" are not mutually exclusive. Money damages may -- and here clearly would -- represent additional benefits to which participants are properly entitled under the plan.

The appropriate distinction is not between "benefits" and "damages," but rather between relief to which a participant is entitled under ERISA and relief which is not authorized by that Act. Harzewski, 489 F.3d at 804. As the Seventh Circuit recently explained, the Supreme Court's refusal to allow suits for "damages" does not mean that "monetary relief is excluded, but [that] it must be [monetary] relief to which the plan documents themselves entitle the participant." Id. Thus, ERISA does not authorize suits for what the Seventh Circuit calls "extracontractual damages" - i.e., damages separate from the benefits to which the plan documents entitle the participants - such as emotional distress resulting

-16-

from a plan's failure to honor it obligations, Reinking v. Philadelphia Am. Life Ins. Co., 910 F.2d 1210, 1219-20 (4th Cir. 1990), damages resulting from a plan's failure to advise a participant of an option that would enable him to avoid taxes, Fraser v. Lintas: Campbell-Ewald, 56 F.3d 722, 724-26 (6th Cir. 1995), or consequential damages arising from a delay in processing a benefit claim, Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 148 (1985). Evans and Whipps are not seeking "extracontractual damages"; instead, their claim for fiduciary breach, whether characterized as a suit for money damages or for additional benefits, is expressly contemplated and explicitly authorized by ERISA § 409, which requires fiduciaries who breach their duties "to make good to such plan the losses to the plan resulting from such breach." See 29 U.S.C. §§ 1109(a), 1132(a)(2).

Second, appellees argue that the damages sought by the plaintiffs are too "speculative" and "unascertainable" to be characterized as a claim for "benefits." However, "there is nothing in ERISA to suggest that a benefit must be a liquidated amount in order to be recoverable." Harzewski, 489 F.3d at 807. Losses to a plan from breaches of the duty of prudence may be ascertained, with the help of expert analysis, by comparing the performance of the imprudent investments with the performance of a prudently invested portfolio. Graden, 496 F.3d at 301; see also Cal. Ironworkers Field Pension Trust v. Loomis Sayles & Co., 259

-17-

F.3d 1036, 1046 (9th Cir. 2001). At this early stage in the proceedings, the plaintiffs need not be able to show the precise amount of additional benefits to which they are entitled. Indeed, they need not even state a claim on which they are likely to succeed; they need only state a colorable claim. See Harzewski, 489 F.3d at 807. Evans and Whipps have done so here.

Third, appellees argue that the requirements for constitutional standing are not met here. They claim that the harm suffered by Evans and Whipps is unlikely to be redressed because any relief ordered would be awarded to the Plan rather than to the plaintiffs individually. Therefore, the Plan fiduciaries could decide to allocate the recovery only to the accounts of current employees or to pay current and future Plan expenses, leaving Evans and Whipps without a remedy.

We doubt that such a decision would be consistent with the fiduciaries' duty to act in the interest of participants. Defined contribution plans pursuant to ERISA have their roots in the common law of trusts. Graden, 496 F.3d at 295-96; see also Firestone, 489 U.S. at 110 ("ERISA abounds with the language and terminology of trust law."). These plans are collections of individual accounts, managed for the benefit of the participants and beneficiaries. Unlike shareholder derivative suits, where recovery for a fiduciary breach goes into the coffers of the corporation and is not generally paid out to the shareholders,

-18-

recovery made on behalf of a defined contribution plan must be allocated to the individual accounts injured by the breach. See Graden, 496 F.3d at 296 n.6. Although there may be certain circumstances where the transaction costs of allocating additional benefits to individual plan accounts or to those who have cashed out of the plan would exceed the amount of the recovery itself, we have no reason to think that such circumstances would be present in this case. Instead, if the plaintiffs are ultimately successful in this suit, the fiduciaries should, in accord with their statutory duty of care, strive to allocate any recovery to the affected participants in relation to the impact the fiduciary breaches had on their particular accounts.[6] Thus, the plaintiffs' allegation of fiduciary mismanagement, which at this stage in the proceedings we assume to be true, identifies a concrete injury that is redressable

---

[6]Appellees claim that "pronouncements from the Department of Labor," in the form of a Field Assistance Bulletin ("FAB") issued by the Secretary of Labor in 2006, support their contention that fiduciaries could allocate recovered funds to current participants to the exclusion of former participants. See U.S. Dep't of Labor, Field Assistance Bulletin No. 2006-01 (Apr. 19, 2006), available at https://www.dol.gov/ebsa/pdf/fab_2006-1.pdf. We disagree. The FAB, which concerned only the allocation by plans of proceeds from an SEC settlement with mutual funds involved in certain market timing practices, states that the plan fiduciary should allocate proceeds, "where possible, to the affected participants in relation to the impact the market timing and late trading activities may have had on the particular account." Id. at 8. The FAB acknowledges only that this may not be possible, or may be excessively costly, where, for example, "records are insufficient to reasonably determine the extent to which participants invested in mutual funds during the relevant period." Id. There is no reason to think that the records in this case would be insufficient to afford a remedy to Evans and Whipps for their alleged losses.

-19-

by a court and falls within the scope of Article III standing. See
Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); see
also Graden, 496 F.3d at 295 (describing the distinction between
constitutional, prudential, and statutory standing, and
characterizing a similar ERISA claim as raising no constitutional
standing issue); Harzewski, 489 F.3d at 803 ("Obviously the [former
employee plaintiffs] have standing to sue in the sense of being
entitled to ask for an exercise of the judicial power of the United
States as that term in Article III of the Constitution has been
interpreted, because if they win they will obtain a tangible
benefit.").

        Finally, appellees raise the concern that, by adopting a
broad view of the term "participants" for standing purposes, we
would greatly increase the costs of plan administration by
requiring that costly disclosures, which must routinely be
distributed to each "participant covered under the plan," see 29
U.S.C. § 1021(a), be sent to all former employees who have received
lump-sum distributions of their benefits under the plan.   This
concern is overstated.   Pursuant to 29 C.F.R. § 2510.3-
3(d)(2)(ii)(B), a plan need not send disclosures to individuals who
have "received from the plan a lump-sum distribution or a series of
distributions of cash or other property which represents the
balance of his or her credit under the plan." Plan administrators
could still rely on that regulation because, as the Third Circuit

-20-

explained, "we cannot imagine holding a plan fiduciary liable for failing to provide information to someone who, as far as the fiduciary knows, is cashed out." Graden, 496 F.3d at 302. Although informational obligations may reattach once the administrator is on notice that a former employee is asserting a colorable claim that the lump-sum she received did not, in fact, represent the full balance of her credit under the plan, id. at 302-03, the marginal costs associated with this additional reporting cannot alter our reading of the plain language of the statute itself and of the Supreme Court's definition of "participant" in Firestone.

We perceive far greater risks to the ERISA framework that would flow from denying these plaintiffs standing to sue for breach of fiduciary duty. Such a result would draw arbitrary distinctions between current and former employees: those individuals who had continued their employment with the company and their investment in the plan could recover for fiduciary breaches while those who had, for reasons unconnected with the breach, cashed out their benefits before the breach was discovered could not. Further, as we noted in Vartanian, such a restricted view of standing "would enable an employer to defeat the employee's right to sue for breach of fiduciary duty by keeping his breach a well guarded secret until the employee receives his benefits or[] by distributing a lump sum and terminating benefits before the employee can file suit." 14

F.3d at 702.  Congress, in crafting the protections in ERISA, certainly did not intend such arbitrary and unjust results.  Id.

## IV.

In sum, Evans and Whipps have stated a colorable claim that their benefit payments were deficient on the day they were paid due to fiduciary breaches by the defendants.  As a result, they are "participants" with standing to maintain their suit under ERISA § 502(a)(2).  We therefore vacate the district court's order dismissing the Evans action and remand for further proceedings consistent with this decision.

So ordered.